**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' APPLICATION FOR**
**APPOINTMENT OF KROLL RESTRUCTURING**
**ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby file this application (this "Section 156(c) Application") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Retention Order"), appointing Kroll Restructuring Administration LLC ("Kroll") as claims and noticing agent ("Claims and Noticing Agent") in the Debtors' chapter 11 cases, effective as of November 3, 2024 (the "Petition Date"). In support of the Section 156(c) Application, the Debtors submit the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The

Declaration of Benjamin J. Steele (the "Steele Declaration"), attached hereto as Exhibit B, and respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are 28 U.S.C. § 156(c), section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Local Rule 2002-1(f).

**BACKGROUND**

4.      On the Petition Date, each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

5.      No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").[2]

## **RELIEF REQUESTED**

7.      The Debtors request entry of an order appointing Kroll as the Claims and Noticing Agent for the Debtors and these Chapter 11 Cases, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in these Chapter 11 Cases.  The Debtors' selection of Kroll to act as the Claims and Noticing Agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* (the "Claims Agent Protocol") in that the Debtors have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Kroll's rates are competitive and reasonable given Kroll's quality of services and expertise.  The terms of Kroll's retention are set forth in the Engagement Agreement, dated October 7, 2024, attached hereto as Exhibit C (the "Engagement Agreement"); provided, however, that the Debtors are seeking approval solely of the terms and provisions as set forth in this Section 156(c) Application and the Retention Order attached hereto.

---

[2]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the First Day Declaration.

8.      Although the Debtors have not yet filed their schedules of assets and liabilities, given the scope of the Debtors' businesses, they anticipate that there will be in excess of 200 entities to be noticed.   Local Rule 2002-1(f) provides that "[i]n all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file [a] motion [to retain a claims and noticing agent] on the first day of the case or within seven (7) days thereafter."   In view of the number of anticipated claimants and the complexity and range of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 2002-1(f) and is otherwise in the best interests of both the Debtors' estates and their creditors.

9.      By separate application, the Debtors will seek authorization to retain and employ Kroll as administrative advisor in these Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code because the administration of these Chapter 11 Cases will require Kroll to perform duties outside the scope of 28 U.S.C. § 156(c).

## KROLL'S QUALIFICATIONS

10.     Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.   Kroll's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.   Kroll's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide. Kroll's active and former cases include: NanoString Technologies, Inc., No. 24-10160 (CTG) (Bankr. D. Del. Feb. 4, 2024); PARTS iD, Inc., No. 23-12098 (LSS) (Bankr. D. Del. Dec. 28, 2023); Pennsylvania Real Estate Investment Trust, No. 23-11974 (KBO) (Bankr. D. Del. Dec.

12, 2023); <u>Near Intelligence, Inc.</u>, No. 23-11962 (TMH) (Bankr. D. Del. Dec. 11, 2023); <u>Timber Pharmaceuticals, Inc.</u>, No. 23-11878 (JKS) (Bankr. D. Del. Jan. 3, 2024); <u>Mallinckrodt plc</u>, No. 23-11258 (JTD) (Bankr. D. Del. Aug. 30, 2023); <u>FTX Trading Ltd.</u>, No. 22-11068 (JTD) (Bankr. D. Del. Nov. 22, 2022); <u>Troika Media Group, Inc.</u>, No. 23-11969 (DSJ) (Bankr. S.D.N.Y. Dec. 8, 2023); <u>Mercon Coffee Corporation</u>, No. 23-11945 (MEW) (Bankr. S.D.N.Y. Dec. 13, 2023); <u>SVB Financial Group</u>, No. 23-10367 (MG) (Bankr. S.D.N.Y. Mar. 22, 2023); <u>Genesis Global Holdco, LLC</u>, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Jan. 26, 2023); <u>Endo International plc</u>, No. 22-22549 (JLG) (Bankr. S.D.N.Y. Sept. 9, 2022); <u>Strategic Materials, Inc.</u>, No. 23-90907 (CML) (Bankr. S.D. Tex. Dec. 5, 2023); <u>Genesis Care Pty Limited</u>, No. 23-90614 (MI) (Bankr. S.D. Tex. June 1, 2023); <u>Rite Aid Corporation</u>, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023); and <u>BlockFi Inc.</u>, No. 22-19361 (MBK) (Bankr. D.N.J. Nov. 30, 2022).

11.    By appointing Kroll as the Claims and Noticing Agent in these Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited and the Office of the Clerk of the Bankruptcy Court (the "<u>Clerk</u>") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

## **<u>SERVICES TO BE PROVIDED</u>**

12.    This Section 156(c) Application pertains only to the work to be performed by Kroll under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f).  Any work to be performed by Kroll outside of this scope is not covered by this Section 156(c) Application or by any order granting approval hereof.  Specifically, Kroll will perform the following tasks in its role as Claims and Noticing Agent as well as all quality control relating thereto:

(a)    Prepare and serve required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules

in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

(b)     Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(d)     Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For *all* notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(h)     Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i)     Provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(j)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(k)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(l)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Kroll, not less than weekly;

(m)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(n)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(o)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(p)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(q)     Monitor the Court's docket in these Chapter 11 Cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

(r)     If these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to Kroll of entry of the order converting the cases;

(s)      Thirty (30) days prior to the close of these Chapter 11 Cases, or as soon as reasonably practicable, request that the Debtors submit to the Court a proposed order dismissing Kroll as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

(t)      Within seven (7) days of notice to Kroll of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of these Chapter 11 Cases; and

(u)      At the close of these Chapter 11 Cases, comply with all applicable laws and procedures for disposing and/or archiving of claims and related documents.

13.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Kroll.

## PROFESSIONAL COMPENSATION

14.     The Debtors respectfully request that the undisputed fees and expenses incurred by Kroll in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Kroll agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

15.     Prior to the Petition Date, the Debtors provided Kroll with an advance in the amount of $40,000, which was received by Kroll on October 25, 2024.  Except as stated in this paragraph, Kroll has not received any payments from the Debtors in the ninety (90) days prior to the Petition Date.  Kroll seeks to, first, reconcile the advance against all prepetition invoices, second, to have the advance replenished to the original advance amount and, finally, to hold the advance under the Engagement Agreement during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

16.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Kroll's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct or as otherwise provided in the Engagement Agreement or Retention Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these Chapter 11 Cases.

## DISINTERESTEDNESS

17.     Although the Debtors do not propose to employ Kroll under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention will be sought by separate application), Kroll has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Steele Declaration, Kroll has represented that it neither holds nor represents any interest

materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

18.     Moreover, in connection with its retention as Claims and Noticing Agent, Kroll represents in the  Steele Declaration, among other things, that:

(a)     Kroll is not a creditor of the Debtors;

(b)     Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(c)     By accepting employment in these Chapter 11 Cases, Kroll waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d)     In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)     Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

(f)     Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Kroll will not intentionally misrepresent any fact to any person;

(h)     Kroll shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Kroll will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Kroll as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

Kroll will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

19.     This Section 156(c) Application complies with the Claims Agent Protocol and substantially conforms to the standard Section 156(c) Application in use in this Court.  To the extent that there is any inconsistency between this Section 156(c) Application, the Retention Order, and the Engagement Agreement, the Retention Order shall govern.

## NOTICE

20.     Notice of this Section 156(c) Application has been or will be provided to:  (i) the U.S. Trustee; (ii) the United States Attorney's Office for the District of Delaware; (iii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates; (iv) counsel to the ABL Lenders; (v) counsel to the Ad Hoc Group of First Lien Lenders; (vi) counsel to the Second Lien Term Loan Lenders; (vii) counsel to the HoldCo Lenders; (viii) counsel to the DIP Agent; (ix) counsel to the DIP Lenders; and (x) the Internal Revenue Service.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Retention Order, substantially in the form attached hereto as Exhibit A, authorizing Kroll to act as Claims and Noticing Agent for the Debtors and granting such other relief as may be appropriate.

Dated: November 3, 2024
      Wilmington, Delaware

                        **Franchise Group, Inc.**

                        */s/ David Orlofsky*
                        David Orlofsky
                        Chief Restructuring Officer

**<u>Exhibit A</u>**

**Proposed Retention Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

**ORDER AUTHORIZING RETENTION**
**AND APPOINTMENT OF KROLL RESTRUCTURING**
**ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT**

Upon consideration of the application (the "Application")[2] of the debtors and debtors in

possession in the above-captioned cases (collectively, the "Debtors") for the retention and

appointment of Kroll Restructuring Administration LLC ("Kroll") as claims and noticing agent

("Claims and Noticing Agent") pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

Code, and Local Rule 2002-1(f) to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtors' Chapter 11 Cases, and (iii) provide such other administrative services—as required by the Debtors—that would fall within the purview of services to be provided by the Clerk's office; and upon the Steele Declaration submitted in support of the Application; and the Debtors having estimated that there are in excess of 200 creditors in these Chapter 11 Cases, many of which are expected to file proofs of claim; and it appearing that the receiving, docketing, and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. § 156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy, and transmit proofs of claim; and the Court being satisfied that Kroll has the capability and experience to provide such services and that Kroll does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged; and good and sufficient notice of the Application having been given and no other or further notice being required; and it appearing that the employment of Kroll is in the best interests of the Debtors, their estates, and creditors; and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      Notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order.

2.      The Debtors are authorized to retain Kroll as Claims and Noticing Agent effective as of the Petition Date under the terms of the Engagement Agreement and Kroll is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases, and all related tasks, all as described in the Application.

3.      Kroll shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Kroll is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

5.      Kroll is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtors are authorized to compensate Kroll in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Kroll and the rates charged for each, and to reimburse Kroll for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Kroll to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Kroll shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the office of the U.S. Trustee, proposed counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; provided that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Kroll under this Order shall be an administrative expense of the Debtors' estates.

10.     Kroll may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount and, thereafter, Kroll may hold its advance under the Engagement Agreement during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Kroll under the terms of the Engagement Agreement, as modified pursuant to this Order.

12.     Kroll shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

13.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Kroll, or provide contribution or reimbursement to Kroll, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Kroll's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Kroll's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible under applicable law; or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Kroll should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

14.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these Chapter 11 Cases, Kroll believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, Kroll must file an application therefor in this Court, and the Debtors may not pay any such amounts to Kroll before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Kroll for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Kroll.  All parties in interest shall retain the right to object to any demand by Kroll for indemnification, contribution, or reimbursement.

15.     The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

16.     In the event Kroll is unable to provide the services set out in this order, Kroll will immediately notify the Clerk and the Debtors' attorney and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

17.     The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Kroll but is not specifically authorized by this Order.

18.     The Debtors and Kroll are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

19.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

20.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

21.     Kroll shall not cease providing claims processing services during these Chapter 11 Cases for any reason, including nonpayment, without an order of the Court.

22.     In the event of any inconsistency between the Engagement Agreement, the Application, and the Order, the Order shall govern.

## **EXHIBIT B**

**Steele Declaration**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Joint Administration Requested) |

## DECLARATION OF BENJAMIN J. STEELE IN SUPPORT OF
## DEBTORS' APPLICATION FOR APPOINTMENT OF KROLL
## RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.    I am a Managing Director of Kroll Restructuring Administration LLC ("Kroll"), a chapter 11 administrative services firm whose headquarters are located at 1 World Trade Center, 31st Floor, New York, NY 10007.  Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called and sworn as a witness, I could and would testify competently thereto.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation

2.      This declaration is made in support of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") *Application for Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent*, which was filed contemporaneously herewith (the "Application").[2]

3.      Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Kroll's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Kroll's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide. Kroll's active and former cases include: NanoString Technologies, Inc., No. 24-10160 (CTG) (Bankr. D. Del. Feb. 4, 2024); PARTS iD, Inc., No. 23-12098 (LSS) (Bankr. D. Del. Dec. 28, 2023); Pennsylvania Real Estate Investment Trust, No. 23-11974 (KBO) (Bankr. D. Del. Dec. 12, 2023); Near Intelligence, Inc., No. 23-11962 (TMH) (Bankr. D. Del. Dec. 11, 2023); Timber Pharmaceuticals, Inc., No. 23-11878 (JKS) (Bankr. D. Del. Jan. 3, 2024); Mallinckrodt plc, No. 23-11258 (JTD) (Bankr. D. Del. Aug. 30, 2023); FTX Trading Ltd., No. 22-11068 (JTD) (Bankr. D. Del. Nov. 22, 2022); Troika Media Group, Inc., No. 23-11969 (DSJ) (Bankr. S.D.N.Y. Dec. 8, 2023); Mercon Coffee Corporation, No. 23-11945 (MEW) (Bankr. S.D.N.Y. Dec. 13, 2023); SVB Financial Group, No. 23-10367 (MG) (Bankr. S.D.N.Y. Mar. 22, 2023); Genesis Global Holdco, LLC, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Jan. 26, 2023); Endo International plc, No. 22-22549 (JLG) (Bankr. S.D.N.Y. Sept. 9, 2022); Strategic Materials, Inc., No. 23-90907 (CML) (Bankr. S.D. Tex. Dec. 5,

---

Court, Suite J, Delaware, Ohio 43015.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

2023); <u>Genesis Care Pty Limited</u>, No. 23-90614 (MI) (Bankr. S.D. Tex. June 1, 2023); <u>Rite Aid</u> <u>Corporation</u>, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023); and <u>BlockFi Inc.</u>, No. 22-19361 (MBK) (Bankr. D.N.J. Nov. 30, 2022).

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Kroll will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "<u>Clerk</u>"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical and support services as specified in the Application and the Engagement Agreement.  In performing such services, Kroll will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as <u>Exhibit C</u> to the Application.

5.      Prior to the Petition Date, the Debtors provided Kroll an advance in the amount of $40,000, which was received by Kroll on October 25, 2024.  Except as stated in this paragraph, Kroll has not received any payments from the Debtors in the ninety (90) days prior to the Petition Date.  Kroll seeks to first reconcile the advance against all prepetition invoices and, thereafter, to have the advance replenished to the original advance amount and, thereafter, to hold the advance under the Engagement Agreement during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

6.      Kroll represents, among other things, the following:

(a)      Kroll is not a creditor of the Debtors;

(b)      Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(c)      By accepting employment in these Chapter 11 Cases, Kroll waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d)      In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)     Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

(f)     Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Kroll will not intentionally misrepresent any fact to any person;

(h)     Kroll shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Kroll will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Kroll as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

7.     To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Kroll, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors, or other relevant parties.   Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

8.     Kroll has reviewed its electronic database to determine whether it has any relationships with the list of entities provided by the Debtors.  Based on the results of such search, at this time, Kroll is not aware of any relationship that would present a disqualifying conflict of interest.  Should Kroll discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Kroll will use reasonable efforts to promptly file a supplemental declaration.

9.     Certain of Kroll's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Such

firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher LLP; Jones Day; Shearman & Sterling LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; KPMG LLP; PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc.; and Kurtzman Carson Consultants LLC.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these Chapter 11 Cases were filed.

10.    Kroll is an indirect subsidiary of Kroll, LLC ("Kroll Parent").  Kroll Parent is the world's premier provider of services and digital products related to governance, risk, and transparency.  Within the Kroll Parent corporate structure, Kroll operates independently from Kroll Parent.  As such, any relationships that Kroll Parent and its affiliates maintain do not create an interest of Kroll's that is materially adverse to the Debtors' estates or any class of creditors or security holders. Kroll Parent is not currently identified on the Potential Parties in Interest list, but Kroll makes this disclosure out of an abundance of caution.

11.    Kroll, as well as its personnel, has and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in these Chapter 11 Cases.  Kroll may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

12.    Kroll, and its personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Kroll or its personnel may appear in chapter 11 cases representing the

Debtors or parties in interest.  All engagements where such firms represent Kroll or its personnel in their individual capacities are unrelated to these Chapter 11 Cases.

13.     Kroll further declares that Kroll does not now have nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which Kroll provides, provided, or will provide exclusive access to claims data and/or under which Kroll would be compensated for claims data made available by Kroll.

14.     Based on the foregoing, I believe that Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.  Moreover, to the best of my knowledge and belief, neither Kroll nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Kroll is to be engaged.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on November 3, 2024

/s/ Benjamin J. Steele
Benjamin J. Steele
Managing Director
Kroll Restructuring Administration LLC
1 World Trade Center, 31st Floor
New York, NY 10007

## Exhibit 1

**List of Potential Parties in Interest**

**Franchise Group, Inc.**
**Parties In Interest List**

**Debtor Entities & Related Subsidiaries**
American Freight FFO, LLC
American Freight Franchising, LLC
American Freight Franchisor, LLC
American Freight Group, LLC
American Freight Holdings, LLC
American Freight Management Company, LLC
American Freight Outlet Stores, LLC
American Freight, LLC
B. Riley Receivables II, LLC
Betancourt Sports Nutrition, LLC
Buddy's Franchising and Licensing LLC
Buddy's New Co, LLC
Educate, Inc.
Franchise Group Acquisition TM, LLC
Franchise Group Intermediate AF, LLC
Franchise Group Intermediate B, LLC
Franchise Group Intermediate BHF LLC
Franchise Group Intermediate Holdco, LLC
Franchise Group Intermediate L, LLC
Franchise Group Intermediate PSP, LLC
Franchise Group Intermediate S, LLC
Franchise Group Intermediate SL, LLC
Franchise Group Intermediate V, LLC
Franchise Group New Holdco, LLC
Franchise Group Newco BHF, LLC
Franchise Group Newco PSP, LLC
Franchise Group Newco S, LLC
Franchise Group Newco SL, LLC
Franchise Group Newco V, LLC
Franchise Group, Inc.
Freedom VCM Holdings, LLC
Freedom VCM Interco Holdings, Inc.
Freedom VCM Interco, Inc.
Freedom VCM Receivables, Inc.
Freedom VCM, Inc.
Home & Appliance Outlet LLC
Pet Supplies "Plus", LLC
PSP Distribution, LLC
PSP Franchising, LLC
PSP Group, LLC
PSP Midco, LLC
PSP Service Newco, LLC

PSP Stores, LLC (Ohio)
PSP Subco, LLC
Valor Acquisition, LLC
Vitamin Shoppe Florida, LLC
Vitamin Shoppe Franchising, LLC
Vitamin Shoppe Global, LLC
Vitamin Shoppe Industries LLC
Vitamin Shoppe Mariner, LLC
Vitamin Shoppe Procurement Services, LLC
W.S. Badcock Corporation
WNW Franchising, LLC
WNW Stores, LLC

**5% or Greater Equity Holders**
B. Riley Private Shares 2023-2 QP, LLC
B. Riley Securities, Inc.
BRF Investments, LLC
Brian Kahn and Lauren Kahn Joint Tenants by Entirety
Vintage Opportunity Partners, L.P.

**Directors and Officers**
Aaron Granger
Alissa Ahlman
Andrew Kaminsky
Andrew Laudato
Andrew M. Laurence
Anthony Block-Belmonte
Brian Hoke
Bryant R. Riley
Chris Meyer
Christopher Rowland
Daniel McNamara
Eric Seeton
Jacob Jones
Jeff Van Orden
Jeffrey Seghi
Jemma Lawrance
John Hartmann
Kenneth Miles Tedder
Lee Wright
Michael Bennett
Mike Gray
Muriel Gonzalez

Neal Panza
Norman McLeod
Peter Corsa
Philip Etter
Teresa Orth
Tiffany McMillan-McWaters
Todd Arden
Todd Evans

**Administrative and Collateral Agents**
Alter Domus (US) LLC
JPMorgan Chase Bank, N.A.

**Significant Suppliers and Vendors**
A Team Sales LLC
Affordable Furniture Mfg Inc
Alani Nutrition
American Agco (ADMC)
Animal Supply Co Lone Star
Animal Supply Co Wholesome
Ashley Furniture Industries Inc
Brodnax Printing Company I, LLC dba
Brodnax 21c Printers
California Pet Partners LLC
Capstone Nutrition
CRAMCO
Crown Mark Imports Inc
DAS LABS LLC
Elytus Ltd
Enterprise FM Trust
Flexport
Florida State Games Inc.
Garden of Life
Generis Tek Inc
Ghost, LLC.
Gorilla Mind
KFM247 LTD
Kith Furniture
Korber Supply Chain US, Inc.
Lumisource, LLC
Marcone Appliance Parts Company
Mars Petcare
Media Works, Ltd.
Merrick Pet Foods Inc
Meta Platforms, Inc.
MMXXI Investments LLC

Nutrivo, LLC
ODP Business Solutions, LLC (Office Depot)
One Stop Facilities Maintenance Corp
Optimum Nutrition
Origin
Peak Living
Phillips Lansing Facility
Planitretail LLC
Prime Hydration LLC
Pro-Form Laboratories
Quest Nutrition, LLC
Raw Sport Supplement Company
REDCON 1
Royal Canin
Ryse Up Sports Nutrition LLC
Seaboard International Forest Products LLC
Sealy Mattress Company
Seminole Furniture
Steve Silver Company
Uber Freight US LLC
Velosio LLC
Vitality Works, Inc.
WEX Bank

**Top Unsecured Creditors (as of 10.10.24)**
Albany Industries Inc
Alphia Inc
Aquatic & Reptile - Central Garden & Pet
Arizona Nutritional Supplement
Assurant Inc.
Champion Petfoods USA
Climatic Home Products
Coyote Logistics
Delta Furniture
Earth Animal Ventures
Ehplabs LLC
Elanco US Inc
Elements International Group LLC
EMA Electrolux/Frigidaire
Force Factor Brands LLC
GE Appliances
GE General Electric-Haier US Appliance
Google
Hartz Mountain - VMX
Hill's Pet Nutrition

Kong Company
Living Style (Singapore) Pte. Limited
Lowes Companies Inc
M I Industries Inc
Madix Inc
Midwestern Pet Foods
Muebles Briss S.A. De C.V.(Marby)
Natural Balance Pet Foods Inc
Nestle Purina Petcare Company
Open Farm Inc
Order Groove Inc
O'Rourke Bros., Inc.
O'Rourke Sales Company
Peak Living, Inc.
Phillips Feed and Pet Supply
Premier Nutrition Company, LLC
Radio Systems Corporation
Sealy Mattress Manufacturing Company
Simmons Pet Food Inc
Solstice Sleep Company
Spectrum Brands Pet LLC
Standard Furniture MFG Co Inc
Stella and Chewys LLC
Surest/UnitedHealthcare Inc.
Titanic Furniture
Transform Holdco LLC (3PL)
UPS (Ocean Freight)
Vitamin Well USA LLC
Wellness Pet LLC
Weruva International Inc
Whirlpool
Zinatex Imports, Inc

**<u>Landlords & Lessors</u>**
103rd Street 6024, LLC
1210 Morena West LLC
1230 Zion, LLC
1700 Eubank, LLC
1997 GRP Limited Partnership
2151 Highland Partners, LLC
2885 Gender Road, LLC
30X30 34th Street Lubbock Partners, LLC
3200 Hwy 13, LLC
4100 Tomlynn Street-Rebkee, LLC and
Tomlynn Street-Fountainhead, LLC
4116 OBT Investments, LLC

425 Broadway RE Holdings LLC & 431
Broadway RE Holdings LLC
4801 Washtenaw LLC
5737-5848 North Elizabeth Street Holdings,
LLC
6001 Powerline, LLC
65 Holmes Investment Partners LLC
6588 LLC
7000 S May Ave, LLC
801 South Ft. Hood, LLC
900-71, LLC
A. Roland Kimbrell Trust
Acorn Ridge Properties LLC, JDM Capital,
LLC, MO Partners LLC, Confluence
Investment LLC
Afreight Holdings, LLC
AJDC 2, LLC
Albany Plaza Shopping Center LLC
Alisan LLC and Roseff LLC
All American Association, LLC and Yvonne
Keff
Allentex, LP
Amerco Real Estate Company
AMG Properties Inc.
Amplify Credit Union
Anderson Plaza, LLC
Arch Village Management Realty LLC
Ares Holdings, L.L.C.
Arizona Mills Mall, LLC
AR-Park Shopping Center, LLC and JSP-
Park Shopping Center, LLC
Atlanta Industrial TT, LLC
B.J. McCord d/b/a McCord Business Center
B33 Broadview Village LLC
Baldwin Gardens, Inc.
Bane Holdings of Tallahassee, LLC
Banner Partners, LLC
Bardstown S.C., LLC
BC Airport, LLC
Bell-51st, LLC
Belt 98, Inc.
Berryessa Plaza LLC
BG Plaza, LLC
Boatlanding Development Co., Inc.
Bostick Development, L.C.
BRC Hendersonville, LLC

BRE Mariner Venice Shopping Center LLC
BRE Retail NP Festival Centre Owner LLC
Brierwood Village LLC
Brighton Landmark, LLC
Brixmor Holdings 8 SPE, LLC
Brixmor SPE 5 LLC
Brixton Rogue, LLC
Brookhill V Acquisition, LLC
Brooksville Commercial Properties, LLC
and Oak Tree Lane, LLC
Brown Deer Mall, LLC
Bruce Howe Trust
BSW/DMW Properties LLC
Cafaro Leasing Company, LTD.
Candler RD Plaza GA LLC
Cedar Golden Triangle, LLC
Centerpoint 550, LLC
Centerview Plaza, LLC
Central Mall Port Arthur Realty Holding,
LLC
Certified Capital, LP, Horowitz Holdings,
LLC, Asset Acquisitions, LLC, and 3610
Partners, GP
CETA Group Limited Partnership
Chapel Hills Realty LLC, Chapel Hills CH
LLC, and Chapel Hills Nassim LLC
Charleigh Davis and TCCB Properties
Chicago Title & Trust Company, As Trustee
Under Trust Agreement Dated 10/10/1984
and Known as Trust No. 1086065
Chillicothe Shopping Center, LP
Chris McCarty Company, LLC
Cielo Paso Las Tiendas, L.P.
Circle City Property Group Inc.
Citimark Charleston, LLC
CJM Limited Liability Limited Partnership
Clear Creek Brothers - CV, LLC
Clear Lake Center, L.P.
Clendenin Partners
CLPF-Essex Green, LLC
Cobblestone Square Company, Ltd.
ColFin 2015-2 Industrial Owner, LLC
Colony Mills Enterprises, LLC
Combined Properties Limited Partnership
Commercial Properties Associates, LLP
Concord Retail Investment Group, LLC

Core MR Westview, LLC
Costco-Innevol Owner LLC
Costco-Innevol Properties LLC
Creekstone/Juban I, LLC
Crossing Point LLC
Crossroads Centre II, LLC
Crossroads Plaza, LLC
Crossroads Sunset Holdings, LLC
Cuyahoga Investments, LLC
CWP/Arlington LLC
D3 New Albany, LLC
Daniel G. Kamin Wadsworth Enterprises
Daniel P. Hagaman
Danville Riverside Partners, LLC
Daytona Commons, LLC
DCT Presidents Drive LLC
DDR Carolina Pavilion LP
Dennis R. Phillips Revocable Trust
Derby Improvements, LLC
DES 2015, LLC and CJCM, LLC-Series
CV505
Dixie Manor, LLC
Donna M. Rainwater & Larry J. Rainwater
Donna Rainwater Reece, Larry J. Rainwater,
R. Bryan Whitmire and Karla J. Whitmire
Douglas C. Foyt and Trailers for Sale or
Rent, Inc.
Dyn Sycamore Investments, L.L.C.
E & L Investments LLC
E.W. Thompson, Inc.
Eagle Water, LLC
Eagle-North Hills Shopping Centre LP
Eastlake Edison LLC and Eastlake Milford
LLC
Economy Square, Inc.
Ellis Chai LLC
Esue LLC
Ethan Conrad Properties, Inc.
Excel Realty Partners, L.P.
Exchange Right Value-Add Portfolio 2
Master Lessee, LLC
F.M.K., LLC
Fairview Heights Realty, LLC and Fairview
Nassim LLC
Fall River Shopping Center North, LLC
Faye Gross

Fiddler's Run, LLC
Fivel Family, LLC
Fox Jr. Development Inc.
Franklin Mills Associates Limited Partnership
Franklin Towne Plaza LLC
Frayer Enterprises, LLC
Fredric Singer
Front Street Kansas City, LLC
FSC West Covina, LLC
FSH Galleria Plaza, LLC
G&I X Industrial IN LLC
Gamble Brothers, LLC
Gary Mehan, DBA G.M. Properties
Gateway Retail Partner III, LLC
Gateway South, LLC #1
GBUZZ, LLC
GCP Boom, LLC
Giuffre IV, LLC
GKI Industrial Dallas, LLC
Glendale Galleria Center, LLC
GLL BVK Properties, L.P.
Gosula Holdings Ltd.
Gravois Bluffs East 8-A, LLC
Greater Orlando Aviation Authority
Greenfield Plaza LLC
Greenlight Development, LLC
GRH Goodyear LLC, Gaston Holdings LLC, and MRH Venture Capital LLC
Gridley Square Property, LLC
GS Centennial LLC
Gulson Retail LLC
Halltown Farms, LLC
Hankins Real Estate Partnership
Hart & Hart Corp.
Henry Fine Trust
Hidden Hill Road Associates, LLC
High Cotton Palisades, LLC, High Cotton Shoals, LLC and Pharo Palisades I, LLC
Himaloy Taylor LLC
HM Peachtree Corners I LLC
Hogan Holdings 56, LLC
HV Center LLC, HV Center TIC 1 LLC, and HV Center TIC 2 LLC
IH 35 Loop 340 Investors, LTD.
IH-10 Hayden, Ltd.

Indian Trail Square, LLC
Inland Commercial Real Estate Services LLC
Innovation Realty IN, LLC
Integra CRE, LLC
IRC Park Center Plaza, L.L.C.
Ireland Corner, LLC
Isador Schreiber & Associates, LLC
J & F Gainesville Properties, LLC
J&L Development Company, LLC
Jackson Street Group, LLC
Jeffnan U.S.A. Inc.
JHG Properties, LLC
JMK5 Winchester, LLC
JMW Hebron, LLC
Joe Amato East End Centre, LP
JRF Texas Properties, LLC
JSM Land Group, LLC
Kelley Commercial Realty, LLC and Stephanie D. Kelley
Keyser Oak Investors, LLC
KGI Military LLC
Kin Properties Inc.
Kings Mountain Investments
Kingsport Green AC Managing Company, LLC
Kinsman Investors
Kitty Wells, Inc.
KMD, LLC
KRG Houston Royal Oaks Village II, LLC
KRG Plaza Green, LLC
L.W. Miller Holding Company
Laurie Industries, Inc., Kinpark Associates and Fundamentals Company
Lawrence F. Kolb & Catherine M. Kolb, Trustees of The Lawrence F. Kolb and Catherine M. Kolb JLRT U/A/D April 12, 2018 and 2233 & 2235 MO Blvd, LLC
LBD Properties, LLC
LCRF, LLC
LDC Silvertree, LLC
Leland J3, LLC
Leveraged Holdings, L.L.C.
Lexington 2770, LLC
Lichtefeld Development Trust
Lidl US Operations, LLC

Lincoln Associates
LIT-ENVP Limited Partnership
LoLo Enterprises, LLC
Lovell 2.5, LLC
LU Candlers Station Holdings, LLC
Lynch Butler
M3 Ventures, LLC
Macon Center, LLC
Malco T.I.C.
Mall at Potomac Mills, LLC
Marathon Management, LLC
Marc NaperW LLC and NaperW, LLC
MarketFair North, LLC
McRae Mortgage & Investments, LLC
Meditrina Properties, LLC
Melvin C. McClung, Trustee of the Tommie
Louise McClung Family Trust
Menard, Inc.
Merchant 33 LLC
Merchant's Investors, LLC
Meredith, Inc.
Midwest Commercial Funding, LLC
Missouri Boulevard Investment Company,
LLC
Mobile Highway 4500, LLC
Mojack Holdings, LLC
Mongia Capital Michigan, LLC
Moon Village, LLC
Morningside Plaza, L.P.
MR Stealth LLC
Muenchens Unlimited, LLC
NDF III MJ Crossing, LLC
New Bern Development LLC
New Plaza Management, LLC
Newport Crossing Investors, LLC
Niagara Falls 778, LLC
North County Columbia Realty, LLC
Northern McFadden Limited Partnership
Northside Village Conyers, LLC
Northtowne Center Investors, LLC
Oak Forest Group, LTD
Okee Realty Associates, LLC
Old Orchard, LLC
One Home Realty, Inc.
One Land Company, LLC
One Oak Investments, LLC

Osborne Properties Limited Partnership
Oxford Street Huntsville
P & S Axelrod, L.L.C.
P&H Investments, LLC
Pacifica Muskegon, LLC
Parker-Anderson, LLC
Parkway Mall, LLC
PCRIF Spring Park Holdings, LLC
Pensacola Corners LLC
PFIILP - Parr Boulevard, LLC
Pilchers Summit Limited Partnership
Pinellas Park Square, LLC
Piqua Investment Partners, LLC
PK II El Camino North L.P.
Plaza North Shopping Center, LLC
Polk County Partners, LLC
Port St. Lucie Plaza I, II, III, LLC
Prattville Partners, Limited Partnership
Prologis Targeted U.S. Logistics Fund, L.P.
Pullman Square Associates
Rainbow Investment Co.
Randall M. Schulz
Ravi Randal Investment Group, LLC
RE Pecan, LLC
Realty Income Corporation
Regions Bank as Trustee of the Thomas H.
Willings Jr. Family Trust
Repwest Insurance Company
Richard Briggs and John Nathan Briggs, as
Trustees of the Stephanie R. Briggs
Irrevocable Trust dated October 15, 2009;
and Stephanie R. Briggs and John Nathan
Briggs, as Trustees of the Richard M. Briggs
Irrevocable Trust dated October 15, 2009
Ridgewater Commerce LLC
Rini Realty Company
River Oaks Properties, Ltd.
Riverdale Center North, LLC
Riverplace Shopping Center, LLC
Rock N Roll Development, LLC
Rockhill Center, LLC
Rodi Road 501, LLC
Rogers Commercial Properties, LLC
Rose & Rose, LLC
RPI Ridgmar Town Square, Ltd.
RRG LLC

Sabatine BK Development, LLC
Saia Family Limited Partnership
Sarabara Corp.
Sav 15000 Abercorn, LLC
Sears Authorized Hometown Stores, LLC
SEK 7753, LLC
Shrewsbury Village Limited Partnership
Sissel Juliano
SJN Realty Holdings, LLC
Slidell Athletic Club Property, L.L.C.
Somera Road - Athens Georgia II, LLC
South Tulsa Storage, LLC
Southern Hills Center, Ltd.
Southgate Properties, LLC
Southtown Plaza Realty LLC and
Southtown Nassim LLC
Southview Dothan Investors, LLC
Space For Lease of Tennessee
State Road 4201, LLC
Stature High Ridge, LLC
Sterling Equities II, LLC
Stewart & Hamilton Properties, LLC
Stone Mountain Square Shopping
Center, LLC
SVR Investments, LLC
SW 17th Street 1010, LLC
Sylvan Park Apartments, LLC
T.B.R. Property Group, LLC
T18 Investments, LLC
Tanglewood Venture, LLC
TB Garrett Creek, LLC
TBF Group Battle Creek, LLC
TCP Enterprise Parkway, LLC
Tejas Center, LTD.
Tenalok, LLC
Texas Main Street, LLC
The Collins Investment Trust
TKC CCXXXIX, LLC
TKG Colerain Towne Center, LLC
TKG Cranston Development, L.L.C.
TKG Fairhaven Commons, LLC
TLP 4782 Muhlhauser LLC
Tops Holding, LLC
Town Real Estate Enterprises, LLC
Tucson Speedway Square, LLC
Tumon Bay Resort & Spa, LLC

Turfway Baceline, LLC
Two by Two Properties, LLC
Tycer Heirs Separate Property, LLC
University Realty Associates, LLC
US Investments
Victory River Square, LLC
Vishal Kalmia Plaza, LLC
W.H. Warehouse, L.L.C.
Wal-Austin, LLC
Warner Robins Perlmix, LLC
Watson Village Retail, LLC
Waverly Plaza Shopping Center, Inc.
West County Investors, LLC
Weston SCIP 2 LLC
Westphal Leasing, LLC
Westside Village Shopping Center of Rome,
Inc.
WFD Investments, L.L.C.
White Lane, LLC
Whitehall Crossing D, LLC
William Shane Courtney
Woodcrest Akers, LLC
Woodforest Mini-City Partners, LP and
JLCM Partners, LP, TIC
Wylds 1708, LLC
YEK #9, LLC
York Realty Investment, LLC

**Significant Counterparties to Material
Agreements**
Capturis
Engie Resources LLC

**Significant Litigation Matters**
Charles Knight
Health Advocate
Gale et al [Class Action]
Joseph F Gazzo III
Matthew Giffuni
Quadre Investment Advisors LLC
Buddy's Mac Holdings, LLC

**Professionals**
AlixPartners LLP
Davis Polk & Wardwell LLP
Deloitte & Touche LLP

Ducera Partners LLC
Ernst & Young
Evercore LP
Foley & Lardner LLP
Gordon Rees Scully Mansukhani, LLP
Gordon Brothers Asset Advisors, LLC
Grant Thornton LLP
Guggenheim Securities, LLC
Hilco Merchant Resources, LLC
Hilco Real Estate, LLC
Holland & Knight, LLP
Kroll Restructuring Administration LLC
Landis Rath & Cobb LLP
Latham & Watkins LLP
Lazard Group LLC
M3 Advisory Partners, LP
Morris, Nichols, Arsht & Tunnell LLP
Paul Hastings LLP
Paul, Weiss, Rifkind, Whaton & Garrison
LLP
Petrillo Klein & Boxer LLP
Porter Wright Morris & Arthur LLP
Ryan, LLC
Sheppard Mullin Richter & Hampton LLP
Troutman Pepper Hamilton Sanders LLP
White & Case LLP
Willkie Farr & Gallagher LLP
Young Conaway Stargatt & Taylor, LLP

**Other Parties**
BCDC Portfolio Owners LLC
BCHQ Owner LLC
National Retail Properties, LP

**DE - Judges**
Chan, Ashely M.
Dorsey, John T.

Goldblatt, Craig T.
Horan, Thomas M.
Owens, Karen B.
Shannon, Brendan L.
Silverstein, Laurie Selber
Stickles, J. Kate
Walrath, Mary F.

**DE – Office of the United States Trustee**
Andrew R. Vara
Benjamin Hackman
Christine Green
Diane Giordano
Dion Wynn
Edith A. Serrano
Elizabeth Thomas
Fang Bu
Hannah M. McCollum
Holly Dice
James R. O'Malley
Jane Leamy
Jonathan Lipshie
Jonathan Nyaku
Joseph Cudia
Joseph McMahon
Lauren Attix
Linda Casey
Linda Richenderfer
Malcolm M. Bates
Michael Girello
Nyanquoi Jones
Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch
Timothy J. Fox, Jr.

**<u>EXHIBIT C</u>**

**Engagement Agreement**



## Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of October 7, 2024 between Kroll Restructuring Administration LLC ("***Kroll***") and Franchise Group, Inc. (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

   (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder. The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"); provided, however that Kroll will provide a discount of 20% off the attached hourly rates. The Company agrees to pay for reasonable and documented out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

   (c) Kroll will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

   (d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice. The

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $40,000.  Kroll may use such advance against unpaid fees and expenses hereunder.  Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid by the Company's bankruptcy estate for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

**5.  Property Rights**

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs,



systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "*Property*") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

6.  **Bank Accounts**

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that such accounts or other financial products are provided to the Company, pursuant to Kroll's agreement(s) with financial institutions, Kroll may receive fees and other compensation from such institutions.

7.  **Term and Termination**

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein).  "*Cause*" means (i) gross negligence, bad faith, or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b)  If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(d)  If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8.  **No Representations or Warranties**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

9.  **Indemnification**

(a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "*Indemnified Parties*") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, reasonable and documented counsel fees and out-of-pocket expenses) (collectively, "*Losses*") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include any



liabilities resulting from claims by any third parties against any Indemnified Party related to the Services.

(b) Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's bad faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. **Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's bad faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. **Company Data**

(a) The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the client.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.



    (e) Following the commencement of the Company's chapter 11 case, Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. <u>Integration; Severability; Modifications; Assignment</u>

    (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

    (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

    (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

    (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.



**17.** **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**18.** **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Kroll: | Kroll Restructuring Administration LLC |
|  | 1 World Trade Center, 31st Floor |
|  | New York, NY 10007 |
|  | Attn:    Legal Department |
|  | Tel:     212-257-5450 |
|  | Email:  Legal@kbs.kroll.com |

|  |  |
|---|---|
| If to the Company: | Franchise Group, Inc. |
|  | 109 Innovation CT Suite J |
|  | Delaware, OH 43015 |
|  | Attn: Andrew Kaminsky |
|  | Email: akaminsky@franchisegrp.com |

|  |  |
|---|---|
| With a copy to: | Willkie Farr & Gallagher LLP |
|  | 787 Seventh Avenue |
|  | New York, NY 10019 |
|  | Attn:    Debra Sinclair |
|  |            Betsy Feldman |
|  | Tel:     212-728-8719 |
|  |            212-728-8633 |
|  | Email:  DSinclair@willkie.com |
|  |            BFeldman@willkie.com |

*[Signature page follows]*



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By:  Christina Pullo
Title: Managing Director

**Franchise Group, Inc.**

By: Andrew Kaminsky
Title: Executive Vice President, Chief Administrative Officer, & Director



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claims and Noticing Rates | |
|---|---|
| **TITLE** | **HOURLY RATE** |
| **Analyst**<br>The Analyst processes data, including proofs of claim, ballots and return mail, and executes outgoing mailings with adherence to strict quality control standards. | $35 - $60 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requirements and administers complicated variable data mailings. | $50 - $135 |
| **Consultant/Senior Consultant**<br><br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing claims objections and transfers.<br><br>The Senior Consultant directs the data collection process for the master mailing list, oversees all mailings, performs quality control checks on claim and other data processes, and generates claim and other reports. | $75 - $205 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the engagement and oversees all aspects of the bankruptcy administration, including managing the internal client service team and coordinating among case professionals. | $215 - $265 |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



**R A T E S**

Quality.
Partnership.
Expertise.
Innovation.

| Solicitation, Balloting and Tabulation | |
|---|---|
| **Statements of Financial Affairs/Schedules of Assets and Liabilities** | |
| TITLE | HOURLY RATE |
| Solicitation Consultant; SOFA/Schedule Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications.<br><br>The SOFA/Schedule Consultant directs the data collection process for the SOFAs and Schedules and prepares the official forms. | $235 |
| Solicitation Director; SOFA/Schedule Director<br>The Director of Solicitation is the lead client service contact in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes.<br><br>The SOFA/Schedule Director works closely with the company and advisors to oversee all aspects of collecting SOFA/Schedule data and preparing the official forms. | $275 |

| Managing Directors and Experts | |
|---|---|
| TITLE | HOURLY RATE |
| Managing Director<br>Kroll Restructuring Administration's Managing Directors are expert witnesses or former restructuring attorneys averaging more than 15 years of experience across hundreds or thousands of bankruptcy and other engagements. | $300 |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



**R A T E S**

Quality.
Partnership.
Expertise.
Innovation.

| Printing & Noticing Services | |
|---|---|
| Printing | $0.12 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |
| **Newspaper and Legal Notice Publishing** | |
| Coordinate and publish legal notices | Available on request |
| **Case Website** | |
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| ***Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.*** | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



**R A T E S**

Quality.
Partnership.
Expertise.
Innovation.

| | |
|---|---|
| Virtual Data Rooms | Available on request |
| **Electronic Data Collection Platform** | |
| Electronic claim filing, ballot submission and complex data collection platform | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Payment issuance (check, wire, ACH, digital) and/or Form 1099 | Available on request |
| W-9 solicitation and maintenance of EIN/TIN database | Standard rates |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106