## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO CONTINUE
THEIR INSURANCE POLICIES, INCLUDING THEIR INSURANCE
PREMIUM FINANCE PROGRAM AND TO PAY ALL OBLIGATIONS
IN RESPECT THEREOF, (II) AUTHORIZING THE DEBTORS' BANKS
AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS
AND TRANSFERS RELATED THERETO, AND (III) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors") hereby file this motion (the "Motion") for the entry of interim and final orders,

substantially in the forms attached hereto as Exhibit B (the "Interim Order") and Exhibit C

(the "Final Order," and together with the Interim Order, the "Proposed Orders"), (i) authorizing,

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

but not directing, the Debtors to continue and renew the Insurance Policies (as defined below) and pay the Insurance Obligations (as defined below) arising thereunder or in connection therewith, including prepetition obligations arising in the ordinary course of business, (ii) authorizing the Debtors' banks and other financial institutions (collectively, the "Banks") to honor and process check and electronic transfer requests related thereto, and (iii) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]      Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the First Day Declaration.

3.      The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## BACKGROUND

4.      On November 3, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committee has been appointed in these Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## RELIEF REQUESTED

7.      By this Motion, the Debtors request entry of the Proposed Orders authorizing the Debtors to (i) maintain the Insurance Policies, including, but not limited to, those listed on Exhibit A hereto, on an uninterrupted basis in accordance with their practices and procedures in effect prior to the Petition Date (including by renewing the Insurance Policies or obtaining replacement coverage as needed in the ordinary course of business without further Court approval) and (ii) pay, in their sole discretion, all undisputed premiums,[3] claims, retrospective adjustments,

---

[3]      By this Motion, the Debtors do not seek the authority to pay premiums in connection with their Workers Compensation Insurance Policies.  Such relief is requested in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Certain Prepetition Employment Obligations and Compensation*

administrative and, if needed, broker's fees, Insurance Finance Obligations (as defined below), and all other obligations relating to the Insurance Policies, in each case, that were or are due and payable, whether relating to the period prior to or following the Petition Date (collectively, the "Insurance Obligations").  As of the Petition Date, the Debtors believe that approximately $450,000 is owed on account of Insurance Obligations, all of which is expected to come due within the first twenty-one (21) days of these Chapter 11 Cases.

8.      The Debtors also request that the Court authorize the Banks to receive, honor, process, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors relating to the Insurance Policies or the Insurance Obligations.

## THE INSURANCE POLICIES AND RELATED OBLIGATIONS[4]

### I.      The Insurance Policies

9.      In connection with the operation of their businesses, the Debtors maintain numerous comprehensive insurance policies (each, an "Insurance Policy" and, collectively, the "Insurance Policies") through several different insurance carriers (collectively, the "Insurance Carriers").[5]  The Insurance Policies provide coverage for liabilities relating to, among other things, commercial general liability, property liability, products liability, directors' and officers' liability (including tail coverage), employment practices liability, fiduciary liability, business automobile liability, including uninsured and underinsured motorists liability, flood liability, crime liability,

---

*Obligations and (B) Maintain Employee Benefits Programs and Compensation Obligations and (II) Granting Related Relief* (the "Employee Wage Motion"), filed contemporaneously herewith.

[4]   The descriptions of the Insurance Policies provided herein is intended only as a summary, and the actual terms of the foregoing shall govern in the event of any inconsistency with the descriptions set forth herein.

[5]   A list of the Insurance Policies and Insurance Carriers is attached hereto as Exhibit A.

and cyber liability.  Continuation of the Insurance Policies is essential to the operation of the Debtors' businesses and is necessary to protect the Debtors from various types of liability.

10.    The Debtors are required to pay premiums under the Insurance Policies based upon rates established by the applicable Insurance Carrier.  For the 2023-2024 policy period, the annual premiums for the Insurance Policies totaled approximately $14,000,000.00[6] in the aggregate. Payments made in connection with the Insurance Policies are either paid annually, upon inception, or in installments throughout the year, subject to the payment terms under each Insurance Policy. The Debtors pay such premiums either directly to an Insurance Carrier or, as described in greater detail below, to their Insurance Lender (as defined below) under an insurance premium financing agreement that facilitates the prepayment of the annual premiums associated with certain of their Insurance Policies.  The Debtors believe that, as of the Petition Date, the Debtors owe approximately $450,000 in connection with the Insurance Policies.  The Debtors seek authority to pay any amounts owed in connection with the Insurance Policies, whether arising prior to the Petition Date or postpetition, in the ordinary course of the Debtors' business, and to continue their Insurance Program on a postpetition basis consistent with their past practices.[7]

11.    Moreover, in the ordinary course of business, the Debtors obtain brokerage services from AleraGroup, Inc. (the "Broker").[8]  The Broker assists the Debtors in obtaining comprehensive insurance for the Debtors' operations by, among other things, managing renewal data, assisting the Debtors with the procurement and negotiation of the Insurance Policies, marketing the

---

[6]    This number reflects the premiums owed in connection with the Debtors' 2023-2024 Insurance Policies and differs from the annual premiums listed in Exhibit A due to the timing of the Debtors' insurance renewals.

[7]    Prior to the Petition Date, the Debtors obtained an extension of the termination date for the Insurance Policies expiring at the end of October, through April and October 2025, as applicable.

[8]    GCG Risk Management Consultants LLC ("GCG") was formerly the Debtors' Broker.  GCG joined AleraGroup, Inc. in 2017.

Insurance Policies, enabling the Debtors to obtain such policies on advantageous terms at competitive rates, and providing ongoing support throughout the applicable policy periods. The Debtors do not pay the Broker directly for its services. Instead, in accordance with the relevant Insurance Policy or the Premium Finance Agreement (as defined below), the Broker may receive brokers fees directly from the Insurance Carriers or the Insurance Lender (as defined below). As a result, the Debtors do not have any outstanding prepetition amounts due and owing to the Broker on account of its services in connection with this Motion.[9]

**II.    The Insurance Premium Financing Agreement**

12.    The Insurance Policies are renewed annually on the anniversary of the effective date of coverage. Certain of the Insurance Policies require the Debtors to prepay the full premium amount for the applicable coverage period upon inception of the Insurance Policy. To lessen the financial burden that would be imposed on the Debtors by prepaying the full amount of premiums, the Debtors have historically financed the premiums for certain of their Insurance Policies through FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. (the "Insurance Lender").

13.    Pursuant to that certain *Premium Financing Agreement* with the Insurance Lender, dated October 31, 2024 (the "Premium Finance Agreement"), attached hereto as Exhibit D, the Insurance Lender has agreed to prepay the aggregate annual amount in premiums, taxes, and fees due on account of certain of the Debtors' Insurance Policies—up to $5,472,650.51—in exchange for the Debtors' down payment of $2,050,000.00, which has already been paid, and nine (9) installment payments totaling $3,560,175.00, or $395,575.00 per monthly installment. The

---

[9]    As described in the Employee Wage Motion, the Broker also assists the Debtors with structuring and managing their Health and Welfare Benefits (as defined therein). The Debtors owe the Broker amounts in connection therewith and seek the relief related thereto in the Employee Wage Motion.

monthly installment payments are due on the 30th of each month, commencing on November 30, 2024.

14.     Payments made in connection with a premium financing agreement (collectively, the "Insurance Finance Obligations") are secured obligations, and the terms of the financing agreement typically grant an insurance lender a security interest in (a) all returned or unearned premiums; (b) all additional cash contributions or collateral amounts assessed by the insurance companies in relation to the financed policies; (c) any credits generated by the financed policies; (d) dividend payments; and (e) loss payments which reduce unearned premiums (collectively, the "Insurance Collateral").   Furthermore, in the event of non-payment, the Insurance Lender is typically appointed as attorney-in-fact for all named insureds under the applicable Insurance Policies, and is granted the authority to, among other things, cancel the applicable Insurance Policies.   Moreover, as a condition to extending financing to the Debtors under the Premium Finance Agreement, the Insurance Lender has required a limited waiver of the automatic stay under section 362 of the Bankruptcy Code upon the occurrence and continuance of an event of default under the Premium Finance Agreement in order to enable the Insurance Lender to exercise any rights and remedies available to it at law or equity.

15.     As of the Petition Date, the Debtors believe that they owe approximately $400,000 to the Insurance Lender under the Premium Finance Agreement.   Through this Motion, the Debtors seek authority, but not direction, to honor any obligations under the Premium Financing Agreement and to financing their Insurance Policies postpetition in the ordinary course of business.

**BASIS FOR RELIEF**

I.    **Cause Exists to Authorize the Continuation of the Debtors' Insurance Policies and the Payment of the Debtors' Insurance Obligations Pursuant to Sections 105(a), 363(c)(1), and 363(b)(1) of the Bankruptcy Code.**

16.    Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors may "enter into transactions . . . in the ordinary court of business" and "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The Debtors' request to continue honoring all obligations under the Insurance Policies on a postpetition basis is consistent with their prepetition practices. Accordingly, the Debtors are permitted to pay all postpetition amounts due pursuant to the Insurance Obligations and to renew or obtain new policies concerning the same, because such actions are in the ordinary course of the Debtors' business.

17.    To the extent that the Debtors' continuation of the Insurance Policies is outside of the ordinary course of business, section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, in the exercise of its sound business judgment and "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under section 363(b), courts in this jurisdiction require only that the debtor "show that a sound business purpose" justifies the proposed use of property. The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). When applying the "business judgment" standard, courts show great deference to the debtor's decision making. See, e.g., Myers v. Martin, 91 F.3d 389, 395 (3d Cir. 1996). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. of Asbestos-Related Litigants v. Johns-Mansville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); see also In re Tower

8

Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task."). Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b) of the Bankruptcy Code.

18.     The Debtors submit that continuing to honor the Insurance Obligations enables them to avoid potentially significant liabilities and, therefore, represents a sound exercise of their business judgment. More specifically, any interruption in coverage would expose the Debtors to a number of operational and financial risks, including potentially: (i) incurring direct liability for the payment of claims that otherwise would have been covered by the Insurance Policies; (ii) incurring material costs and other losses that otherwise would have been reimbursed, such as attorneys' fees for certain covered claims; (iii) being unable to obtain similar types and levels of insurance coverage on equally favorable terms as the present coverage; and (iv) incurring higher costs for re-establishing lapsed Insurance Policies or for obtaining new replacement policies. Accordingly, the Debtors respectfully submit that the requirements of section 363(b) are satisfied.

19.     Furthermore, to the extent that there are prepetition Insurance Obligations outstanding, honoring such obligations is necessary and appropriate. The Debtors respectfully submit that payment of such obligations should be authorized under sections 105(a) and 363(b) of the Bankruptcy Code pursuant to the "doctrine of necessity." Section 105(a) of the Bankruptcy Code provides that a court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. 11 U.S.C. § 105(a). No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. As a result, the Debtors submit that the use of estate funds for payment of the Insurance Obligations is permitted

under sections 105(a) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estates.

20.    The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  See, e.g., In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition employee wages and benefits while recognizing the judicial power to authorize a debtor "to pay prepetition claims where such payment is essential to the continued operation of the debtor"); see also In re Just for Feet, Inc., 242 B.R. 821, 824–25 (Bankr. D. Del. 1999) (holding that section 105(a) "provides a statutory basis for the payment of prepetition claims" under the doctrine of necessity and noting that the Supreme Court, the United States Court of Appeals for the Third Circuit, and the United States District Court for the District of Delaware all accept the authority of the bankruptcy court "to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11"); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation).  The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor."  Ionosphere Clubs, 98 B.R. at 176.

21.    The Debtors submit that the payment of the Insurance Obligations is necessary because, as noted above, continuation of the Insurance Policies is essential to continuing

uninterrupted operations and preserving the value of the Debtors' business, properties, and assets of the estates.  The nature of the Debtors' business and the extent of their operations make it essential for the Debtors to maintain their Insurance Policies on an ongoing and uninterrupted basis.  The non-payment of any premiums or related fees due and owing under the Insurance Policies could result in one or more of the Insurance Carriers terminating the Debtors' existing policies, declining to renew the Debtors' policies, or refusing to enter into new insurance agreements with the Debtors in the future.  The Insurance Policies protect the Debtors and other parties in interest from losses caused by, among other things, casualty or other unforeseen events. If the Insurance Policies are allowed to lapse without renewal, the Debtors could be exposed to substantial liability for damages resulting to persons and property of the Debtors and others. Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Court is empowered to grant the relief requested herein.  Thus, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business.

## II.   Payment of Any Insurance Finance Obligations and Entry into New Premium Financing Agreements During these Chapter 11 Cases Is Proper Pursuant to Section 361, 362(d), 363(e), and 364 of the Bankruptcy Code.

22.     Security interests created by insurance premium financing agreements, such as the Premium Financing Agreement, are generally recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  See St. James Inc. v. Cananwill, Inc. (In re St. James Inc.), 402 B.R. 209, 213 (Bankr. E.D. Mich. 2009); In re JII Liquidating, Inc., 344 B.R. 875, 882-84 (Bankr. N.D. Ill. 2006). Sections 361 and 363(e) of the Bankruptcy Code require that "adequate protection" be given to secured parties to the extent of the diminution in value of such a secured creditor's collateral.  See 11 U.S.C. §§ 361, 363(e).  To the extent of its secured claim, an insurance premium financing counterparty is entitled to seek

adequate protection of the Insurance Collateral, or even to seek relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to cancel the Insurance Policies in accordance with the terms of the applicable premium financing agreement.  See AICCO, Inc. v. Lisowski (In re Silver State Helicopters, LLC), 403 B.R. 849, 861-63 (Bankr. D. Nev. 2009) (recognizing that a default under the financing arrangement justified relief from the automatic stay).

23.    Pursuant to section 362(d)(1) of the Bankruptcy Code, a court shall grant a secured creditor relief from the stay for cause, which includes the lack of adequate protection of such secured creditor's interest in certain collateral.  See 11 U.S.C. § 362(d)(1).  The passage of time and the Debtors' continued use of the Insurance Policies decrease the value of the Insurance Collateral for the Insurance Lenders.  However, this loss in value is accounted for by the Debtors' payment of the Insurance Finance Obligations.  Accordingly, the Insurance Lender is entitled to the continued payment of the Insurance Finance Obligations, if any, because such payments constitute adequate protection of their interests in the Insurance Collateral under sections 361 and 363(e) of the Bankruptcy Code.

24.    Even if the Debtors were successful in preventing the Insurance Lender from lifting the automatic stay to pursue their remedies, such litigation likely would be contested and thus, very costly to the estates.  More importantly, if unsuccessful in any automatic stay litigation, the Debtors may be unable to find another carrier willing to provide them similar insurance coverage or a company willing to finance the premiums without charging significantly higher premiums and fees.  Thus, the Debtors respectfully submit that continuation of the Premium Financing Agreement, payment of the Insurance Finance Obligations, and entry into new premium financing

agreements, in each case as applicable, thereunder is proper pursuant to sections 361, 362(d), and 363(e) of the Bankruptcy Code.

25.    The Court may also authorize the Debtors to enter into new premium finance agreements pursuant to section 364(c)(2) of the Bankruptcy Code.  Section 364(c)(2) authorizes, after notice and a hearing, a debtor in possession to obtain debt secured by a lien on property of the estate.  11 U.S.C. § 364(c)(2).  Under any new premium finance agreement, the counterparty would likely require that the Debtors grant a security interest in the unearned premiums under the financed policies.  See generally In re Schwinn Bicycle Co., 200 B.R. 980, 982 (Bankr. N.D. Ill. 1996) (describing insurance premium financing agreements).

26.    Section 364(c) authorizes a debtor, in the exercise of its business judgment, to incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates.  See, e.g., In re General Growth Props., Inc., 412 B.R. 122, 125-26 (Bankr. S.D.N.Y., May 14, 2009) (granting motion for postpetition financing upon finding that a) "no comparable credit [was] available on more favorable terms"; b) that the debtors needed postpetition financing to "to preserve [their] assets and continue their operations; and c) that the terms and conditions of the DIP Documents had been negotiated in good faith); In re Budget Grp., Inc., Case No. 02-12152, 2002 Bankr. LEXIS 1050 (Bankr. D. Del. Aug, 1, 2002) (authorizing funding of acquisition of property on a secured basis where acquired property was necessary to maintain operations and debtor could not obtain such funding on an unsecured basis); In re Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties").  Because a borrowing to maintain essential insurance coverage is in the best

interests of the Debtors' estates, the Court should authorize the Debtors to renew the Premium Finance Agreement and/or execute new premium finance agreements postpetition.

**III.     Maintaining the Insurance Policies Is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines.**

27.     Pursuant to section 1112(b)(4)(c) of the Bankruptcy Code and the operating guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to their Insurance Policies.  Section 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" constitutes "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  Additionally, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the U.S. Trustee.  The Debtors believe that it is essential to their estates, as well as consistent with the Bankruptcy Code and the U.S. Trustee's operating guidelines, that they maintain and continue to make all payments required under their Insurance Policies, and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as necessary, in their business judgment, without further order of the Court.  Accordingly, by this Motion, the Debtors seek authority pursuant to sections 105(a) and 363 of the Bankruptcy Code to honor their Insurance Obligations and continue their Insurance Policies without interruption, as such programs were in effect as of the Petition Date.

**IV.     Authorization for the Banks to Honor and Pay Checks Issued and Electronic Funds Transfers Requested to Pay Insurance Obligations Is Warranted.**

28.     The Debtors further request that this Court authorize and direct the Banks to receive, process, honor, and pay any and all checks drawn or electronic funds transfers requested

14

to pay Insurance Obligations, whether such checks were presented prior to or after the Petition Date; provided, however, that such checks or electronic funds transfers are identified by the Debtors as relating directly to the authorized payment of the Insurance Obligations.  The Debtors also seek authority to issue new postpetition checks, or effect new electronic funds transfers, on account of such claims to replace any prepetition checks or electronic funds transfer requests that may be dishonored or rejected as a result of the commencement of these Chapter 11 Cases.

### SATISFACTION OF BANKRUPTCY RULE 6003

29.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the Petition Date regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

30.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without authorization for the relief requested herein.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

### WAIVER OF BANKRUPTCY RULE 6004

31.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to

preserve value for their estate.  Accordingly, the Debtors respectfully request that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

32.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## RESERVATION OF RIGHTS

33.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.  The Debtors expressly reserve their right to contest any invoice with respect to the Insurance Policies or the Insurance Obligations under applicable non-bankruptcy law.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' right to dispute such claim subsequently.

34.     Nothing in the Proposed Orders or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

35.     Nothing in the Proposed Orders or this Motion shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

**NOTICE**

36.      Notice of this Motion has been or will be provided to:  (i) the U.S. Trustee; (ii) the United States Attorney's Office for the District of Delaware; (iii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates; (iv) counsel to the ABL Lenders; (v) counsel to the Ad Hoc Group of First Lien Lenders; (vi) counsel to the Second Lien Term Loan Lenders; (vii) counsel to the HoldCo Lenders; (viii) counsel to the DIP Agent; (ix) counsel to the DIP Lenders; (x) the Internal Revenue Service; (xi) the Banks; (xii) the Insurance Carriers; and (xiii) the Insurance Lender.  The Debtors will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## <u>CONCLUSION</u>

WHEREFORE, the Debtors request entry of the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: November 3, 2024
      Wilmington, Delaware

                    **YOUNG CONAWAY STARGATT & TAYLOR, LLP**

                    */s/ Shella Borovinskaya*
                    Edmon L. Morton (Del. No. 3856)
                    Matthew B. Lunn (Del. No. 4119)
                    Allison S. Mielke (Del. No. 5934)
                    Shella Borovinskaya (Del. No. 6758)
                    Rodney Square
                    1000 North King Street
                    Wilmington, Delaware 19801
                    Telephone: (302) 571-6600
                    Facsimile: (302) 571-1253
                    emorton@ycst.com
                    mlunn@ycst.com
                    amielke@ycst.com
                    sborovinskaya@ycst.com

                    -and-

                    **WILLKIE FARR & GALLAGHER LLP**
                    Debra M. Sinclair (*pro hac vice* pending)
                    Matthew A. Feldman (*pro hac vice* pending)
                    Betsy L. Feldman (Del. No. 6410)
                    Joseph R. Brandt (*pro hac vice* pending)
                    787 Seventh Avenue
                    New York, New York 10019
                    Telephone:  (212) 728-8000
                    Facsimile:  (212) 728-8111
                    dsinclair@willkie.com
                    mfeldman@willkie.com
                    bfeldman@willkie.com
                    jbrandt@willkie.com

                    *Proposed Co-Counsel to the Debtors*
                    *and Debtors in Possession*

## EXHIBIT A

**List of Insurance Contracts**

| INSURANCE PROGRAM | INSURANCE CARRIER | LAST FOUR DIGITS OF POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE | APPROXIMATE ANNUAL PREMIUM[1] |
|---|---|---|---|---|---|
| Business Automobile Liability | Chubb | 6051 | 10/23/23 | 12/10/24 | $457,055.00 |
| Business Automobile Liability | Chubb | 6105 | 10/23/23 | 12/10/24 | $177, 161.00 |
| General Liability | Chubb | 6538 | 10/23/23 | 12/10/24 | $793,540.00 |
| International/Foreign Liability | The Hartford | 4392 | 10/23/23 | 10/23/25 | $2,696.00 |
| Umbrella Liability | Navigators Insurance Company | NEIV | 10/23/23 | 12/10/24 | $1,208,371.00 |
| Excess Umbrella Liability | Chubb | 7004 | 10/23/23 | 12/10/24 | $545,661.00 |
| Second Layer Excess Umbrella Liability | CNA | 5600 | 10/23/23 | 12/10/24 | $458,354.00 |
| Third Layer Excess Umbrella Liability | Great American Assurance Company | 0565 | 10/23/23 | 12/10/24 | $271,500.00 |
| Fourth Layer Excess Umbrella Liability | American Guarantee and Liability Insurance Company | 7402 | 10/23/23 | 12/10/24 | $257,480.00 |
| Fifth Layer Excess Umbrella Liability | Liberty Mutual Insurance Underwriters Inc. | 0705 | 10/23/23 | 12/10/24 | $190,100.00 |
| Directors & Officers Liability | AIG | 2824 | 8/21/23 | 4/30/25 | $156,110.00 |

---

[1]   Premiums included herein may include applicable taxes and fees.  As set forth in the Motion, certain of the premiums included herein are with respect to the Debtors' 2023-2024 Insurance Policies.  The Debtors are currently in the process of renewing their Insurance Policies at the best available price structure under the circumstances and, in connection therewith, have extended the expiration dates for several of the Insurance Policies.  Accordingly, the expiration dates, policy numbers, and annual premiums reflected herein may differ from the Insurance Policies.

| INSURANCE PROGRAM | INSURANCE CARRIER | LAST FOUR DIGITS OF POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE | APPROXIMATE ANNUAL PREMIUM[1] |
|---|---|---|---|---|---|
| Excess Directors & Officers Liability | Markel American Insurance Company | 1065 | 8/21/23 | 4/30/25 | $94,872.00 |
| Second Layer Excess Directors & Officers Liability | Westchester | 4001 | 8/21/23 | 4/30/25 | $65,353.00 |
| Third Layer Excess Directors & Officers Liability | Berkshire Hathaway Specialty Insurance | 8101 | 8/21/23 | 4/30/25 | $45,742.00 |
| Fourth Layer Excess Directors & Officers Liability | Allianz Global Rusk US Insurance Company | 2623 | 8/21/23 | 4/30/25 | $33,357.00 |
| Fifth Layer Excess Directors & Officers Liability (Side A) | Allied World Insurance Company | 9683 | 8/21/23 | 4/30/25 | $29,690.00 |
| Sixth Layer Excess Directors & Officers Liability (Side A) | Endurance American Insurance Company | 9900 | 8/21/23 | 4/30/25 | $27,875.00 |
| Employment Practices Liability | Axis Insurance Company | 6601 | 10/30/24 | 10/30/25 | $311,070.00 |
| Excess Employment Practices Liability | AIG | 7882 | 10/30/24 | 10/30/25 | $119,538.00 |
| Fiduciary Liability | AIG | 9062 | 10/30/24 | 10/30/25 | $20,275.00 |
| Excess Fiduciary Liability | Axis Insurance Company | 1704 | 10/30/24 | 10/30/25 | $17,500.00 |

| INSURANCE PROGRAM | INSURANCE CARRIER | LAST FOUR DIGITS OF POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE | APPROXIMATE ANNUAL PREMIUM[1] |
|---|---|---|---|---|---|
| E&O Liability | Zurich American Insurance Company | 6714 | 10/30/24 | 10/30/25 | $85,013.00 |
| Crime Liability | Axis Insurance Company | 6001 | 10/30/24 | 10/30/25 | $90,361.00 |
| Cyber Liability | Westchester | 9005 | 10/30/24 | 10/30/25 | $108,330.00 |
| Cyber Liability | At-Bay Specialty Insurance Company | 3002 | 10/30/24 | 10/30/25 | $22,083.00 |
| Property Liability | Travelers Excess and Surplus Lines Company | 9523 | 10/23/24 | 10/23/25 | $2,350.692.00 |
| Property Liability | Cincinnati Insurance Companies | 4795 | 1/31/24 | 1/31/25 | $335,105.00 |
| Property Liability | Lloyds of London | 4601 | 4/1/24 | 4/1/25 | $129,154.00 |
| Excess Property Liability | Evanston Insurance Company | 0929 | 4/1/24 | 4/1/25 | $28,354.00 |
| Property – Wind/Hail | Lloyds of London | 7701 | 4/1/24 | 4/1/25 | $73,500.00 |

| INSURANCE PROGRAM | INSURANCE CARRIER | LAST FOUR DIGITS OF POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE | APPROXIMATE ANNUAL PREMIUM[1] |
|---|---|---|---|---|---|
| Property - Terrorism | Lloyds of London | 4124 | 4/1/24 | 4/1/25 | $1,575.00 |
| Excess Property Liability | Lloyds of London | 7985 | 10/23/24 | 10/23/25 | $362,952.00 |
| Terrorism Liability | Lloyds of London | 5723 | 10/23/24 | 10/23/25 | $23,730.00 |
| Product Liability | Scottsdale | 0212 | 10/23/23 | 10/23/25 | $16,206.00 |
| Product Liability | Navigators | 5ZBL | 3/1/24 | 3/1/25 | $181,000.00 |
| Product Liability | Lloyds of London | 9971 | 3/1/24 | 3/1/25 | $190,051.00 |
| Excess Product Liability | Everest | 7241 | 3/1/24 | 3/1/25 | $129,675.00 |
| Excess Product Liability | CNA | 8583 | 3/1/24 | 3/1/25 | $121,012.00 |
| Excess Product Liability | Ironshore | G004 | 3/1/24 | 3/1/25 | $189,000.00 |

| INSURANCE PROGRAM | INSURANCE CARRIER | LAST FOUR DIGITS OF POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE | APPROXIMATE ANNUAL PREMIUM[1] |
|---|---|---|---|---|---|
| Excess Product Liability | Lloyds of London | 0601 | 3/1/24 | 3/1/25 | $97,650.00 |
| Excess Product Liability | Lloyds of London | 2953 | 3/1/24 | 3/1/25 | $78,750.00 |
| Excess Product Liability | Lloyds of London | 3904 | 3/1/24 | 3/1/25 | $78,750.00 |
| Excess Product Liability | Lloyds of London | 9970 | 3/1/24 | 3/1/25 | $38,325.00 |
| Flood Liability | Wright National Flood Insurance Services[2] | 3702 | 9/10/24 | 9/10/25 | $1,876.00 |
| | | 9710 | 9/27/23 | 9/27/25 | $2,658.00 |
| | | 5702 | 9/29/24 | 9/29/25 | $1,404.00 |
| | | 5802 | 9/29/24 | 9/29/25 | $4.141.00 |
| | | 1501 | 10/13/24 | 10/13/25 | $6,270.00 |
| | | 8501 | 10/13/24 | 10/13/25 | $697.00 |
| | | 6001 | 10/23/24 | 10/23/25 | $1,114.00 |
| | | 9104 | 10/28/24 | 10/28/25 | $924.00 |
| | | 4401 | 11/12/23 | 11/12/24 | $927.00 |
| | | 8501 | 12/1/23 | 12/1/24 | $835.00 |
| | | 7304 | 1/26/24 | 1/26/25 | $1,127.00 |
| | | 3704 | 2/6/24 | 2/6/25 | $675.00 |
| | | 2604 | 2/20/24 | 2/20/25 | $874.00 |
| | | 7801 | 3/17/24 | 3/17/25 | $1,127.00 |
| | | 3804 | 3/20/24 | 3/20/25 | $1,224.00 |
| | | 3604 | 3/20/24 | 3/20/25 | $1,010.00 |

---

[2]   The Insurance Carrier under the Insurance Policy ending in 1966 is Lloyds of London and the Insurance Carrier under the Insurance Policies ending in 2020 and 2019 is The Hartford.  The remainder of the flood Insurance Policies are underwritten by Wright National Flood Insurance Services.

| INSURANCE PROGRAM | INSURANCE CARRIER | LAST FOUR DIGITS OF POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE | APPROXIMATE ANNUAL PREMIUM[1] |
|---|---|---|---|---|---|
| | | 5601 | 3/28/24 | 3/28/25 | $1,903.00 |
| | | 2401 | 3/28/24 | 3/28/25 | $925.00 |
| | | 4904 | 4/6/24 | 4/6/25 | $901.00 |
| | | 5004 | 4/23/24 | 4/23/25 | $722.00 |
| | | 1966 | 4/25/24 | 4/25/25 | $11,283.00 |
| | | 2020 | 4/25/24 | 4/25/25 | $2,153.00 |
| | | 4201 | 5/24/24 | 5/24/25 | $1,030.00 |
| | | 9202 | 6/18/24 | 6/18/25 | $728.00 |
| | | 3402 | 7/5/24 | 7/5/25 | $1,668.00 |
| | | 6704 | 7/8/24 | 7/8/25 | $1,052.00 |
| | | 6604 | 7/8/24 | 7/8/25 | $731.00 |
| | | 6504 | 7/8/24 | 7/8/25 | $952.00 |
| | | 6404 | 7/8/24 | 7/8/25 | $839.00 |
| | | 6304 | 7/8/24 | 7/8/25 | $1,647.00 |
| | | 6204 | 7/8/24 | 7/8/25 | $935.00 |
| | | 6104 | 7/8/24 | 7/8/25 | $1,154.00 |
| | | 5804 | 7/8/24 | 7/8/25 | $873.00 |
| | | 6302 | 8/21/24 | 8/21/25 | $1,409.00 |
| | | 2019 | 9/9/24 | 9/9/25 | $1,971.00 |

## **EXHIBIT B**

### **Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ___ |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE
THEIR INSURANCE POLICIES, INCLUDING THEIR INSURANCE PREMIUM
FINANCE PROGRAM, AND PAY ALL OBLIGATIONS IN RESPECT THEREOF,
(II) AUTHORIZING THE DEBTORS' BANKS AND OTHER FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS
RELATED THERETO, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors-in-possession

in the above-captioned chapter 11 cases (collectively, the "Debtors") for the entry of interim and

final orders, pursuant to sections 105, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

6003 and 6004, (i) authorizing, but not directing, the Debtors to continue and, to the extent necessary, renew the Insurance Policies, the Premium Finance Agreement, and pay the Insurance Obligations arising thereunder or in connection therewith, including prepetition obligations arising in the ordinary course of business, (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto, and (iii) granting related relief; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      A final hearing on the relief sought in the Motion shall be conducted on **[_____], 2024 at [_____] (ET)** (the "<u>Final Hearing</u>").  Any party-in-interest objecting to the relief sought at the Final Hearing or in the Final Order shall file and serve a written objection, which objection shall be served upon (i) proposed co-counsel for the Debtors, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com) and Betsy L. Feldman, Esq. (bfeldman@willkie.com), and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Edmon L. Morton, Esq. (emorton@ycst.com) and Matthew B.

2

Lunn, Esq. (mlunn@ycst.com); (ii) counsel to any official committee appointed in these Chapter 11 Cases; (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox (timothy.fox@usdoj.gov); (iv) counsel to the DIP Agent, Attn: Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Gregg Bateman, Esq. (bateman@sewkis.com), Sagar Patel, Esq. (patel@sewkis.com), and Michael Danenberg, Esq.(danenberg@sewkis.com); (v) counsel to the DIP Lenders and Ad Hoc Group of First Lien Secured Lenders, (a) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (b) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com); (vi) counsel to the ABL Lenders, Attn: Attn: Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com); (vii) counsel to the Second Lien Term Loan Lenders, White & Case LLP, 200 S Biscayne Blvd, Miami, FL 33131, Attn:  Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100, Chicago, IL 60606, Attn:  Bojan Guzina, Esq. (bojan.guzina@whitecase.com); and (viii) counsel to the HoldCo Lenders at the address set forth in (vii) above,  in each case no later than _____, 2024 at 4:00 p.m. (ET).  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3

3.      The Debtors shall serve a copy of the Motion and this Interim Order on each Insurance Carrier listed on <u>Exhibit A</u> to the Motion within five business days after the date this Interim Order is entered.

4.      The Debtors are authorized, but not directed, in their discretion, to pay all Insurance Obligations that were or are due and payable, whether relating to the period prior to or following the Petition Date; provided, that, payments on account of prepetition Insurance Obligations shall not exceed $450,000.00 in the aggregate pending entry of the Final Order.

5.      The Debtors are hereby authorized, but not directed, to maintain their Insurance Policies without interruption, on the same basis, and in accordance with the same practices and procedures that were in effect prior to the Petition Date, in their business judgment and at their sole discretion, without further application to this Court.

6.      The Debtors are hereby authorized, but not directed, to renew their Insurance Policies, and to obtain replacement coverage, as needed, in the ordinary course of business without further application to this Court.

7.      The Debtors are hereby authorized, but not directed, to honor any prepetition or postpetition obligations under the Premium Financing Agreement, as needed, in the ordinary courts of business without further application to this Court. The Debtors are further authorized, but not directed, to renew the Premium Finance Agreement, and to extend or obtain a replacement premium finance agreement, as needed, in the ordinary course of businesses without further application to this Court.

8.      The Banks are hereby authorized to receive, process, honor, and pay any checks presented for payment and electronic transfer requests made by the Debtors related to the payment of the Insurance Obligations approved herein, and the costs and expenses incident thereto, whether

such checks were presented or such electronic transfer requests were submitted before or after the Petition Date, to the extent funds are available in the Debtors' accounts; provided, however, that such checks or electronic funds transfers are identified by the Debtors as relating directly to the payment of the Insurance Obligations, or the costs and expenses incident thereto, approved herein.

9.      The Banks are further authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Interim Order.  In no event shall any such bank or other financial institution that takes any such action either (i) at the direction of the Debtors, (ii) in the good faith belief that the Court has authorized such action consistent with the implementation of reasonable item handling procedures or (iii) as a result of an innocent mistake made despite the implementation of reasonable item handling procedures, be deemed in violation of this Interim Order or have liability in connection therewith.

10.     The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Interim Order and is not cleared by the applicable bank or other financial institution.

11.     Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

12.     Nothing in this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or

(b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

13.     Nothing in this Interim Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as a waiver of the right of Debtors, or shall impair the ability of Debtors, to contest the validity and amount of any payment made pursuant to this Interim Order.

14.     Nothing in this Interim Order shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

15.     Notwithstanding anything to the contrary set forth herein, any payment made, or authorization contained, hereunder shall be subject in all respects to the Approved Budget (as such term is defined in the order approving the Debtors' postpetition financing agreements).

16.     The relief granted herein is without prejudice to the Debtors' ability to request further relief related to the Insurance Policies and Insurance Obligations.

17.     The Debtors are authorized, but not directed, to take any and all actions necessary to effectuate the relief granted herein.

18.     The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

19.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

20.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>EXHIBIT C</u>**

**Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket Nos. ___ & ___ |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE THEIR INSURANCE POLICIES, INCLUDING THEIR INSURANCE PREMIUM FINANCE PROGRAM, AND PAY ALL OBLIGATIONS IN RESPECT THEREOF, (II) AUTHORIZING THE DEBTORS' BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED THERETO, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors-in-possession

in the above-captioned chapter 11 case (collectively, the "Debtors") for the entry of interim and

final orders, pursuant to sections 105, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

6003 and 6004, (i) authorizing, but not directing, the Debtors to continue and, to the extent necessary, renew the Insurance Policies, the Premium Finance Agreement, and pay the Insurance Obligations arising thereunder or in connection therewith, including prepetition obligations arising in the ordinary course of business, (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto, and (iii) granting related relief; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors shall serve a copy of the Motion and this Final Order on each Insurance Carrier listed on <u>Exhibit A</u> to the Motion within five business days after the date this Final Order is entered.

3.      The Debtors are authorized, but not directed, in their discretion, to pay all Insurance Obligations that were or are due and payable, whether relating to the period prior to or following

2

the Petition Date; provided, that, payments on account of prepetition Insurance Obligations shall not exceed $450,000.00 in the aggregate.

4.       The Debtors are hereby authorized, but not directed, to maintain their Insurance Policies without interruption, on the same basis, and in accordance with the same practices and procedures that were in effect prior to the Petition Date, in their business judgment and at their sole discretion, without further application to this Court.

5.       The Debtors are hereby authorized, but not directed, to renew their Insurance Policies, and to obtain replacement coverage, as needed, in the ordinary course of business without further application to this Court.

6.       The Debtors are hereby authorized, but not directed, to honor any prepetition or postpetition obligations under the Premium Financing Agreement, as needed, in the ordinary courts of business without further application to this Court.  The Debtors are further authorized, but not directed, to renew the Premium Finance Agreement, and to extend or obtain a replacement premium finance agreement, as needed, in the ordinary course of businesses without further application to this Court.

7.       The Banks are hereby authorized to receive, process, honor, and pay any checks presented for payment and electronic transfer requests made by the Debtors related to the payment of the Insurance Obligations approved herein, and the costs and expenses incident thereto, whether such checks were presented or such electronic transfer requests were submitted before or after the Petition Date, to the extent funds are available in the Debtors' accounts; provided, however, that such checks or electronic funds transfers are identified by the Debtors as relating directly to the payment of the Insurance Obligations, or the costs and expenses incident thereto, approved herein.

8.      The Banks are further authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Final Order.  In no event shall any such bank or other financial institution that takes any such action either (i) at the direction of the Debtors, (ii) in the good faith belief that the Court has authorized such action consistent with the implementation of reasonable item handling procedures or (iii) as a result of an innocent mistake made despite the implementation of reasonable item handling procedures, be deemed in violation of this Final Order or have liability in connection therewith.

9.      The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Final Order and is not cleared by the applicable bank or other financial institution.

10.     Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates;  or (iii) shall be construed as a promise to pay a claim.

11.     Nothing in this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

12.     Nothing in this Final Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as a waiver of the right of Debtors, or shall impair the

ability of Debtors, to contest the validity and amount of any payment made pursuant to this Final Order.

13.     Nothing in this Final Order shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

14.     Notwithstanding anything to the contrary set forth herein, any payment made, or authorization contained, hereunder shall be subject in all respects to the Approved Budget (as such term is defined in the order approving the Debtors' postpetition financing agreements).

15.     The relief granted herein is without prejudice to the Debtors' ability to request further relief related to the Insurance Policies and Insurance Obligations.

16.     The Debtors are authorized, but not directed, to take any and all actions necessary to effectuate the relief granted herein.

17.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon their entry.

18.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## **EXHIBIT D**

**Premium Finance Agreement**

**LENDER:**

450 Skokie Blvd, Ste 1000

# PREMIUM FINANCE AGREEMENT

Northbrook, IL 60062-7917
P:(800) 837-3707 F:(800) 837-3709
www.firstinsurancefunding.com

**FIRST INSURANCE®**
FUNDING
A WINTRUST COMPANY

☐ Personal   ☑ Commercial   ☐ Additional Premium

**Quote #: 72361694**

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy)<br>Franchise Group, Inc<br>109 Innovation Ct<br>Ste J<br>Delaware, OH 43015-7538 | | (Name and Business Address)<br>GCG RISK MANAGEMENT CONSULTANTS LLC<br>THREE PARKWAY NORTH<br>SUITE 500<br>DEERFIELD, IL 60015 |

## LOAN DISCLOSURE

| Total Premiums, Taxes, and Fees | Down Payment | Unpaid Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 5,472,650.51 | 2,050,000.00 | 3,422,650.51 | 0.00 | 3,422,650.51 | 137,524.49 | 3,560,175.00 | 6.500 % |

*YOUR PAYMENT SCHEDULE WILL BE:*   *Mail Payments to: FIRST INSURANCE Funding, PO Box 7000, Carol Stream, IL 60197-7000*

| Number of Payments | Amount of Each Payment | **First Installment Due** | 11/30/2024 |
|---|---|---|---|
| 9 | 395,575.00 | **Installment Due Dates** | 30th (Monthly) |

Certain information contained in the Loan Disclosure section may change in accordance with Section 19 of this Agreement.

**INSURED'S AGREEMENT:**

**1. SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST INSURANCE Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a first priority lien on and security interest in the financed policies and any additional premium required under the financed policies listed in the Schedule of Policies, including (a) all returned or unearned premiums, (b) all additional cash contributions or collateral amounts assessed by the insurance companies in relation to the financed policies and financed by LENDER hereunder, (c) any credits generated by the financed policies, (d) dividend payments, and (e) loss payments which reduce unearned premiums (collectively, the "Financed Policies"). If any circumstances exist in which premiums related to any Financed Policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

**2. FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the Financed Polices. The finance charge is computed using a 365-day calendar year.

**3. LATE PAYMENT.** For commercial loans, a late charge will be assessed on any installment at least 5 days in default, and the late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less. For personal loans, a late charge will be assessed on any installment 10 days in default, and the late charge will be the lesser of $10 or 5% of the delinquent installment.

**4. PREPAYMENT.** If Insured prepays the loan in full, Insured is entitled to a refund of the unearned finance charge computed according to the Rule of 78s.

### SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00198-AXIS INSURANCE COMPANY<br>G02754-RT SPECIALTY, LLC<br>[ME:25.000 %, CX:0]      [90%PR] | CRME | 12 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 90,476.00<br>0.00<br>0.00 |
| TBD | C00198-AXIS INSURANCE COMPANY<br>G02754-RT SPECIALTY, LLC<br>[ME:25.000 %, CX:0]      [90%PR] | LIAB FIDUC | 12 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 17,500.00<br>0.00<br>0.00 |
| (Policies continued on next page.) | | | | **TOTAL** | 5,472,650.51 |

Q# 72361694, PRN: 103024, CFG: 0% AAInternal - No Restrictions, RT: 0Internal - Base, DD: 30, BM: Invoice, Qtd For: A00117 Original, Memo 0

**5. PROMISE TO PAY.** In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies (or their authorized representative) or the Agent or Broker listed above, Insured unconditionally promises to pay LENDER, the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, subject to all the provisions of this Agreement.

**6. POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (a) cancel the Financed Policies in accordance with the provisions contained herein, (b) receive all sums assigned to LENDER, and (c) execute and deliver on behalf of Insured all documents relating to the Financed Policies in furtherance of this Agreement. This right to cancel will terminate only after all of Insured's indebtedness under this Agreement is paid in full. Insured is responsible for repayment of the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, irrespective of whether LENDER exercises this right to cancel the Financed Policies.

**7. SIGNATURE & ACKNOWLEDGEMENT.** Insured has received, reviewed, and signed a copy of this Agreement. By signing below, you certify that you have the requisite authority to (a) enter into this Agreement on behalf of Insured (if applicable, including as agent, trustee, executor, or otherwise in a representative capacity) and any other insureds named on the Financed Policies, and (b) jointly and severally agree on behalf of all insureds named on the Financed Policies to all provisions set forth in this Agreement. **Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.**

**NOTICE TO INSURED: (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) You have the right to prepay the loan in full and receive a refund of any unearned finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.**

DocuSigned by:
*Andrew Kaminsky*
913FEB05E8CD4CC...          10/31/2024

_____          _____          _____          _____
Signature of Insured or Authorized Agent          Date          Signature of Agent          Date

**FIF1122NBP**

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

**8. APPLICATION OF PAYMENTS. (a)** Payments received by LENDER from Insured shall be applied first to installments, then to any unpaid fees. The payment of installments is prioritized over the payment of fees, which means when LENDER receives partial payments or overpayments of any installment(s), amounts previously applied to fees may be reallocated to enable a full installment(s) to be paid. This payment application method may cause fees to reappear as unpaid and owing after the payment period in which the fees were originally assessed and paid, but does not increase or otherwise change the amount of fees that Insured may be required to pay under this Agreement. **(b)** Any returned premium received by LENDER from the Financed Policies will be applied to reduce the total unpaid balance under this Agreement, which shall not relieve Insured of its obligation to pay any remaining installments due but may reduce the amount of such installments.

**9. EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER. LENDER will send a Notice of Acceptance to Insured to confirm this Agreement is effective.

**10. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) the Down Payment, if to be collected by LENDER, or any payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in a cancellation of the Financed Policies, Insured agrees to pay a cancellation charge for commercial loans, which will be the maximum permitted by law. No cancellation charge shall apply to personal loans. If cancellation or default occurs, Insured agrees to pay interest on the unpaid balance due at the contract rate until the balance is paid in full.

**11. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER.**

**12. INSUFFICIENT FUNDS CHARGE.** If Insured's payment is dishonored for any reason and if permitted by law, Insured will pay LENDER an insufficient funds charge equal to the maximum fee permitted by law for commercial loans and $10 for personal loans.

**13. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER. Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation of the Financed Policies will be credited to the balance due with any excess paid to the Insured; the minimum refund is $1.00. Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the Financed Policies.

**14. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

**15. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the Financed Policies or through whom the Financed Policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. Where permissible by law, LENDER may pay some portion of the finance charge or other form of compensation to the Agent or Broker executing this Agreement for aiding in the administration of this Agreement. In NY, the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

**16. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**17. GOVERNING LAW.** The loan terms subject to this Agreement are governed by applicable federal law and Illinois law (to the extent not preempted by federal law), without regard to principles of conflicts of law or choice of law. If any court finds any term herein to be invalid, such finding will not affect the remaining provisions.

**18. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of its knowledge: (a) the Financed Policies are in full force and effect and that the Insured has not and will not assign any interest in the Financed Policies except for the interest of mortgagees and loss payees, (b) the Down Payment and any past due payments have been paid in full to the Agent or Broker or Lender in cash or other immediately available funds, (c) all information provided herein or in connection with the Agreement is true, correct, and not misleading, (d) Insured is not insolvent nor presently involved in any insolvency proceeding, (e) Insured has no indebtedness to the insurance companies issuing the Financed Policies, (f) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of the Financed Policies, and (g) Insured has disclosed if he or she is a covered member of the armed forces or a dependent of a covered member as defined in the Military Lending Act.

**19. ADDITIONAL PREMIUMS. (a)** Insured expressly agrees to (i) fully and timely comply with all audits by the insurance companies issuing the Financed Policies, (ii) timely provide complete and accurate payroll information, if applicable, and (iii) pay to the insurance companies any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. **(b)** Insured, or Agent or Broker, may request that LENDER finance additional policies and/or additional premiums (the "Additional Premiums") for Insured during the term of this Agreement. If LENDER agrees, LENDER will send a Notice of Acceptance to Insured to confirm its approval to finance the Additional Premiums. For commercial loans, this Agreement shall be deemed amended on the date of the Notice of Acceptance to consolidate the Additional Premiums with Financed Policies into a single and indivisible loan transaction subject to this Agreement (with applicable changes to the payment schedule), and the Additional Premiums shall be "Financed Policies" on the date of the Notice of Acceptance. For personal loans, LENDER (or Agent or Broker on LENDER's behalf) will provide a separate Premium Finance Agreement to Insured for any Additional Premiums.

**20. CORRECTIONS.** LENDER may insert the names of insurance companies or policy numbers in the Schedule of Policies, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement.

**21. NON-WAIVER.** Not Applicable.

---

### AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, the signer of this Agreement (whether Insured or its agent) has valid authority to bind Insured and any other insureds named under the Financed Policies to the terms of this Agreement, including the Power of Attorney provision, Insured's signature is genuine, and the Down Payment has been received from Insured (unless the Down Payment was made to Lender), (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the Financed Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, and will promptly reimburse LENDER for any loss or expense incurred in connection with any incidence of fraud or lack of valid authority on behalf of Insured or any other named insureds with respect to the terms of this transaction, the Agreement, or the Financed Policies, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

**FIF1122NBP**

# SCHEDULE OF POLICIES

Insured:  Franchise Group, Inc
Quote #: 72361694

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00069-NATIONAL UNION FIRE INS CO PA<br>G02754-RT SPECIALTY, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | LIAB FIDUC | 12 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 20,275.00<br>0.00<br>0.00 |
| TBD | C00069-NATIONAL UNION FIRE INS CO PA<br>G02754-RT SPECIALTY, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | EPLI | 12 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 119,538.00<br>0.00<br>0.00 |
| TBD | C00198-AXIS INSURANCE COMPANY<br>G02754-RT SPECIALTY, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | EPLI | 12 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 311,070.00<br>0.00<br>0.00 |
| TBD | C00241-ZURICH AMERICAN INS CO OF IL<br>G02754-RT SPECIALTY, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | E&O | 12 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 91,376.00<br>0.00<br>913.76 |
| TBD | C03707-AT-BAY SPECIALTY INSURANCE CO.<br>G02754-RT SPECIALTY, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | CY LIAB | 12 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 21,032.00<br>0.00<br>1,051.60 |
| TBD | C00105-WESTCHESTER SURPLUS LINES INC<br>G02754-RT SPECIALTY, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | CY LIAB | 12 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 102,072.00<br>0.00<br>5,103.60 |
| UTS2580870.24 | C01651-CERTAIN UNDERWRITERS AT LLOYDS, LONDON<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | TERR | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 22,600.00<br>0.00<br>1,130.00 |
| TBD | C01760-AXA INSURANCE COMPANY<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | EQPT | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 23,063.00<br>0.00<br>1,153.15 |
| TBD | C01651-CERTAIN UNDERWRITERS AT LLOYDS, LONDON<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP EX | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 345,668.00<br>0.00<br>17,283.40 |
| EXP7001501 | C01381-MITSUI SUMITOMO INS CO OF AMER<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 150,000.00<br>0.00<br>7,500.00 |
| TBD | C00025-LANDMARK AMERICAN INS CO<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 75,000.00<br>0.00<br>3,750.00 |
| TBD | C00305-SCOTTSDALE SURPLUS LINES INS<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 75,000.00<br>0.00<br>3,750.00 |
| PP2402286 | C01651-CERTAIN UNDERWRITERS AT LLOYDS, LONDON<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 663,750.00<br>0.00<br>33,187.50 |
| CPP328991800 | C00503-STEADFAST INSURANCE COMPANY<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 437,500.00<br>0.00<br>21,875.00 |
| TBD | C01764-AXIS SPECIALTY INSURANCE CO<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 187,500.00<br>0.00<br>9,375.00 |
| TBD | C03198-LANCASHIRE INSURANCE CO (UK) LIMITED<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 206,700.00<br>0.00<br>10,335.00 |
| 1000683096 | C00531-IRONSHORE SPECIALTY INS CO<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 225,000.00<br>0.00<br>11,250.00 |
| SLSTPTY12277324 | C00173-STARR SURPLUS LINES INS CO<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 243,000.00<br>0.00<br>12,150.00 |
| 061385361 | C00067-LEXINGTON INSURANCE COMPANY<br>G00004-RT Specialty of Illinois, LLC<br>[ME:25.000 %, CX:0]          [90%PR] | PROP | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 551,200.00<br>0.00<br>27,560.00 |
| ADX30043459900 | C02690-ENDURANCE AMERICAN INS CO<br>G02754-RT SPECIALTY, LLC<br>[ME:100.000 %, CX:0]          [90%PR] | D&O | 12 | 8/21/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 11,636.00<br>0.00<br>0.00 |
| 03139683 | C00201-ALLIED WORLD ASSURANCE CO<br>G02754-RT SPECIALTY, LLC<br>[ME:100.000 %, CX:0]          [90%PR] | D&O | 12 | 8/21/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 12,398.00<br>0.00<br>0.00 |
| USF04502623 | C00379-ALLIANZ GLOBAL RISKS US INS CO<br>G02754-RT SPECIALTY, LLC<br>[ME:100.000 %, CX:0]          [90%PR] | D&O | 12 | 8/21/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 13,956.00<br>0.00<br>0.00 |
| 47EMC33058101 | C02723-BERKSHIRE HATHAWAY SPECIALTY INSURANCE<br>G02754-RT SPECIALTY, LLC<br>[ME:100.000 %, CX:0]          [90%PR] | D&O | 12 | 8/21/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 19,098.00<br>0.00<br>0.00 |

**FIF1122NBP**

## SCHEDULE OF POLICIES

Insured:  Franchise Group, Inc

Quote #: 72361694

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| G47420994001 | C00094-WESTCHESTER FIRE INSURANCE CO<br>G02754-RT SPECIALTY, LLC<br>[ME:100.000 %, CX:0]         [90%PR] | D&O | 12 | 8/21/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 27,358.00<br>0.00<br>0.00 |
| MKLM1MXM001065 | C00034-MARKEL AMERICAN INSURANCE CO<br>G00004-RT Specialty of Illinois, LLC<br>[ME:100.000 %, CX:0]         [90%PR] | D&O | 12 | 8/21/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 39,694.00<br>0.00<br>0.00 |
| 014202824 | C00069-NATIONAL UNION FIRE INS CO PA<br>G02754-RT SPECIALTY, LLC<br>[ME:100.000 %, CX:0]         [90%PR] | D&O | 12 | 8/21/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 65,098.00<br>0.00<br>0.00 |
| WLRC53501540 | C00982-CHUBB<br>[ME:100.000 %, CX:0]         [90%PR] | WC | 2 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 91,955.00<br>0.00<br>0.00 |
| XSLG48596538 | C00982-CHUBB<br>[ME:100.000 %, CX:0]         [90%PR] | GL | 2 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 93,460.00<br>0.00<br>0.00 |
| ISAH10816105 | C00982-CHUBB<br>[ME:100.000 %, CX:0]         [90%PR] | AUTO | 2 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 22,186.00<br>0.00<br>0.00 |
| ISAH10816051 | C00982-CHUBB<br>[ME:100.000 %, CX:0]         [90%PR] | AUTO | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 8,741.00<br>0.00<br>0.00 |
| CH23UMRZ03CNEV | C00157-NAVIGATORS INSURANCE COMPANY<br>[ME:100.000 %, CX:0]         [90%PR] | UMB | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 152,852.00<br>0.00<br>0.00 |
| XCQG71835017004 | C00473-ACE PROPERTY & CASUALTY INS CO<br>[ME:100.000 %, CX:0]         [90%PR] | UMB | 2 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 71,482.00<br>0.00<br>0.00 |
| 6079635600 | C00115-CONTINENTAL INSURANCE CO<br>[ME:100.000 %, CX:0]         [90%PR] | UMB | 2 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 60,136.00<br>0.00<br>0.00 |
| EXC5200565 | C01303-GREAT AMERICAN ASSURANCE CO<br>G00004-RT Specialty of Illinois, LLC<br>[ME:100.000 %, CX:0]         [90%PR] | UMB | 2 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 35,621.00<br>0.00<br>0.00 |
| AEC677617402 | C01861-AMERICAN GUARANTEE & LIAB INS<br>G00004-RT Specialty of Illinois, LLC<br>[ME:100.000 %, CX:0]         [90%PR] | UMB | 2 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 33,782.00<br>0.00<br>0.00 |
| 100037420705 | C00085-LIBERTY INS UNDERWRITERS<br>G00004-RT Specialty of Illinois, LLC<br>[ME:100.000 %, CX:0]         [90%PR] | UMB | 2 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 24,942.00<br>0.00<br>0.00 |
| LSS2000423 | C00089-SCOTTSDALE INSURANCE COMPANY<br>G00045-AMWINS BROKERAGE OF THE MIDWEST<br>[ME:25.000 %, CX:0]         [90%PR] | PROD | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 15,434.00<br>0.00<br>771.50 |
| 83CPGAA4392 | C00293-HARTFORD FIRE INSURANCE CO<br>[CX:0]    [90%PR] | PKG FPKG | 12 | 10/23/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 2,696.00<br>0.00<br>0.00 |
| FEE | C00649-Agency Fees - Refundable<br>[CX:0]    [90%PR] | BROKERF | 12 | 10/30/2024<br>ERN TXS/FEES<br>FIN TXS/FEES | 522,666.00<br>0.00<br>0.00 |

**FIF0214P-SCH**