## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, AND (C) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS; (II) WAIVING CERTAIN OPERATING GUIDELINES; (III) SUSPENDING TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE; AND (IV) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby file this motion (the "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as Exhibit A (the "Interim Order") and Exhibit B (the "Final Order," and, together with the Interim Order, the "Proposed Orders"), (i) authorizing,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

but not directing, the Debtors to (a) continue to maintain their existing cash management system, including bank accounts and business forms, (b) continue intercompany transactions among and between the Debtors in the ordinary course of business, and (c) honor certain prepetition obligations related thereto; (ii) waiving certain operating guidelines; (iii) suspending the time to comply with section 345(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") on an interim basis, to the extent applicable; and (iv) granting related relief.  The Debtors also request that the Court authorize the Banks (as defined below) to continue to maintain, service, and administer the Bank Accounts (as defined below).  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that

---

[2]     Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the First Day Declaration.

it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory and legal predicates for the relief requested herein are sections 105, 345, 363, 503, and 507 of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2015-2 and 9013-1(m).

## BACKGROUND

4.       On November 3, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.       No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.       Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## RELIEF REQUESTED

7.       The Debtors seek entry of the Proposed Orders, pursuant to sections 105, 345, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, (i) authorizing, but not directing, the Debtors to (a) continue to maintain their existing cash management system, including bank accounts and business forms, (b) continue Intercompany Transactions (as defined herein) among and between the Debtors, and (c) honor certain prepetition

obligations related thereto; (ii) waiving certain operating guidelines; (iii) suspending the time to comply with section 345(b) of the Bankruptcy Code; and (iv) granting related relief.

8.      To enable the Debtors to carry out the relief requested, the Debtors also request that the Court authorize the Banks to continue to service and maintain the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor, and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, in accordance with the orders of the Court.

## THE CASH MANAGEMENT SYSTEM

9.      In the ordinary course of business, the Debtors utilize and maintain a cash management system that includes, among other things, store deposit, operating, concentration, and disbursement accounts (collectively, the "Cash Management System").[3]  The Cash Management System is integral to the operation and administration of the Debtors' businesses.  The Cash Management System allows the Debtors to efficiently collect, transfer, and disburse funds generated through the Debtors' operations and to accurately record such collections, transfers, and

---

[3]      References made herein to the "AF Debtors" refer, collectively, to Debtors American Freight FFO, LLC, American Freight Franchising, LLC, Home and Appliance Outlet, LLC, American Freight Outlet Stores, LLC, American Freight Franchisor, LLC, American Freight Group, LLC, American Freight Holdings, LLC, American Freight, LLC, American Freight Management Company, LLC, Franchise Group Newco Intermediate AF, LLC, Franchise Group Intermediate S, LLC, and Franchise Group Newco S, LLC.  References made herein to the "VS Debtors" refer, collectively, to Debtors Valor Acquisition, LLC, Vitamin Shoppe Industries LLC, Franchise Group Intermediate V, LLC, Franchise Group Newco V, LLC, Vitamin Shoppe Global, LLC, Vitamin Shoppe Mariner, LLC, Vitamin Shoppe Procurement Services, LLC, Vitamin Shoppe Franchising, LLC, Vitamin Shoppe Florida, LLC, and Betancourt Sports Nutrition, LLC.  References made herein to the "PSP Debtors" refer, collectively, to Debtors Franchise Group Intermediate PSP, LLC, Franchise Group Newco PSP, LLC, PSP Midco, LLC, Pet Supplies "Plus", LLC, PSP Group, LLC, PSP Service Newco, LLC, WNW Franchising, LLC, WNW Stores, LLC, PSP Stores, LLC, PSP Franchising, LLC, PSP Subco, LLC, and PSP Distribution, LLC.  References made herein to the "Buddy's Debtors" refer, collectively, to Debtors Franchise Group Intermediate B, LLC, Buddy's Newco, LLC, and Buddy's Franchising and Licensing, LLC.  References made herein to the "FRG Debtors" refer, collectively, to Debtors Franchise Group, Inc., Franchise Group New Holdco, LLC, Franchise Group Acquisition TM, LLC, Franchise Group Intermediate Holdco, LLC, Freedom VCM Interco Holdings, Inc., Freedom Receivables II, LLC, Freedom VCM Receivables, Inc., Freedom VCM Interco, Inc., and Freedom VCM, Inc.  References made herein to the "TopCo Debtor" refers to Freedom VCM Holdings, LLC.

disbursements as they are made.  The Cash Management System also allows the Debtors to forecast financial performance, ensure cash availability and liquidity, and pay their financial obligations. The Debtors maintain daily oversight over the Cash Management System, including in connection with Intercompany Transactions (as defined herein).  A schematic illustrating the general flow of funds through the Cash Management System is attached hereto as <u>Exhibit C</u> (the "<u>Cash Flow Schematic</u>").  The main components of the Cash Management System are described below.

## I.    Bank Accounts

10.    The Cash Management System includes 110[4] bank accounts (the "<u>Bank Accounts</u>"), which the Debtors maintain at J.P. Morgan Chase Bank, N.A., Canadian Imperial Bank of Commerce ("<u>CIBC</u>"), KeyBank, Citizens Bank, N.A., Bank of America, N.A., M&T Bank, PNC Bank, Regions Bank, Wells Fargo, N.A., U.S. Bank, N.A., Simmons Bank, Centennial Bank, Equity Bank, First Financial Bank, TD Bank, N.A., Arvest Bank, Fifth Third Bank, N.A., Southern Bank, First Commonwealth Bank, Regions Bank, American Savings Bank, Truist Bank, Prosperity Bank, First Bank, and Axos Bank (each, a "<u>Bank</u>," and, collectively, the "<u>Banks</u>").  All of the Banks are financially stable institutions and are insured by the Federal Deposit Insurance Corporation ("<u>FDIC</u>").

11.    The Debtors' primary Bank Accounts comprise the following:

### AF Bank Accounts

- store deposit accounts, ending in 0258, 1211, 6917, 2211, 0463, 0231, 6732, 9839, 2809, 1890, 0947, 6994, 0474, 7640, 7090, 9422, 9423, and 2864 (collectively, the "<u>AF Store Deposit Accounts</u>"),[5] into which the AF Debtors' customer cash and check receipts are deposited;

---

[4]    Inclusive of two (2) dormant Bank Accounts held at Bank of America, N.A.

[5]    The AF Store Deposit Accounts also include 127 "sub-accounts" (collectively, the "<u>Sub-Accounts</u>") held at KeyBank and at Wells Fargo, N.A., as reflected on <u>Exhibits C</u> and <u>D</u> hereto.  The Sub-Accounts are zero-balance

- customer payment accounts, ending in 2697, 2060, 1411, and 8980 (collectively, the "AF Customer Payment Accounts"), into which credit card receipts are deposited;

- franchisee payment account, ending in 0236 (the "AF Franchisee Payment Account"), into which franchise and related fees are deposited;

- corporate concentration account, ending in 2849 (the "AF Concentration Account"), which receives transfers from other Bank Accounts to fund the AF Debtors' disbursements;[6]

- disbursement account, ending in 3720 (the "AF Disbursement Account"), into which funds from the AF Concentration Account are deposited to fund the AF Debtors' disbursements, such as vendor payments and taxes;

- disbursement account, ending in 5377 (the "AF Payroll Account"), into which funds from the AF Concentration Account are deposited to fund the AF Debtors' payroll;

### VS Bank Accounts

- store deposit accounts, ending in 2237, 2750, 8969, 0048, 5438, 3006, and 8844 (collectively, the "VS Store Deposit Accounts"), into which the VS Debtors' customer receipts are deposited;

- deposit account, ending in 0541 (the "VS Deposit Account"), into which the VS Debtors' customer receipts are deposited and thereafter transferred to the collections account ending in 7733 (the "VS Customer Collections Account");[7]

- collections account, ending in 1261 (the "VS Collection Account"), into which franchisee payments are deposited and thereafter transferred to the concentration account ending in 8778 (the "VS Concentration Account") and (ii) the disbursement account, ending in 6255 (the "VS Disbursement Account"), to fund the VS Debtors' operating disbursements and pay down intercompany payables;[8]

---

accounts, which are swept daily to Bank Accounts ending in 2864, 7090, and 9423, as reflected in the Cash Flow Schematic.

[6] Cash and check receipts from AF Bank Accounts ending in 6994 and 9422 are first deposited into a concentration account ending in 8964 and are thereafter deposited into the AF Concentration Account.

[7] The Debtors use the funds in the VS Deposit Account to satisfy bank fees associated with the VS Debtors' letters of credit.

[8] The VS Debtors also fund operating disbursements through Bank Accounts ending in 3933 and 1849 (collectively with the VS Disbursement Account, the "VS Disbursement Accounts").

- operating concentration account, ending in 1831 (the "VS Operating Concentration Account"), into which funds from all other VS Bank Accounts are deposited to and transferred from to fund the VS Debtors' operating expenses;

- concentration accounts, ending in 9179 and 3967, which are used to (i) receive funds from internationally licensed franchise partners and (ii) transfer funds to the VS Operating Concentration Account and, ultimately, the VS Disbursement Account ending in 3933 to fund the VS Debtors' operating expenses, respectively;

- disbursement account, ending in 1856 (the "VS Payroll Account"), into which funds from the VS Operating Concentration Account are deposited to fund the VS Debtors' payroll;

**Buddy's Bank Accounts**

- store deposit accounts, ending in 7376, 0723, 0749, 3695, 3705, 9347, 5906, and 3478 (collectively, the "Buddy's Store Deposit Accounts"), into which the Buddy's Debtors' customer receipts are deposited;

- operating account, ending in 2638 (the "Buddy's Operating Account"), into which funds are deposited from (i) the Buddy's Store Deposit Account ending in 9347, (ii) the Buddy's Payroll Account (as defined below), (iii) the Buddy's Master Operating Account (as defined below), and (iv) franchisee payments, which is used to make automated clearing house payments ("ACH") and wire transfers to fund the Buddy's Debtors' operating expenses;

- master depository account, ending in 0697 (the "Buddy's Master Depository Account"), into which funds from all Buddy's Store Deposit Accounts with the exception of the Bank Account ending in 9347 are deposited;

- master operating account, ending in 1911 (the "Buddy's Master Operating Account"),[9] into which cash receipts and funds from all other Buddy's Bank Accounts are deposited, which are then deposited to the Bank Account ending in 2521 (the "Buddy's Disbursement Account") and are used to make check payments to fund the Buddy's Debtors' operating expenses;

- operating account, ending in 2737 (the "Buddy's Payroll Account"), into which (i) area development agreement payments and new store fees are deposited and (ii) funds from the Buddy's Operating Account are transferred, which is used to fund the Buddy's Debtors' payroll;

---

[9]    Chargebacks and credit card fees are processed through the Buddy's Master Depository Account.

**PSP and WNW Bank Accounts**

- store deposit accounts, ending in 9304, 8730, 3179, 2833, 6682, and 5621 (collectively, the "<u>PSP Store Deposit Accounts</u>"), into which the PSP Debtors' customer receipts are deposited;

- customer payment accounts, ending in 9529, 9050, into which gift card receipts and revenue from online sales are deposited (collectively, the "<u>PSP Customer Payment Accounts</u>");

- cash deposit accounts, ending in 1101 and 9016, into which cash receipts are deposited (together, the "<u>Brinks Accounts</u>");

- franchisee payment account, ending in 9285 (the "<u>PSP Franchisee Payment Account</u>"), into which franchisee and related fees are deposited and thereafter transferred to the PSP Master Concentration Account (as defined below);

- gift card clearing account, ending in 9312, which is used to move funds between the PSP Debtors' stores when a gift card is purchased at one store location but used to make a purchase at another location;

- disbursement accounts, ending in 9320, 8819, 7386, and 1010 (collectively, the "<u>PSP Disbursement Accounts</u>"), which are used to fund the PSP Debtors' operating expenses;

- depository accounts, ending in 6169 and 8801, into which receipts from Debtor PSP Distribution, LLC are deposited (together, the "<u>PSP Depository Accounts</u>") and thereafter transferred to the PSP Master Concentration Account (as defined below);

- concentration account, ending in 9296 (the "<u>PSP Stores Concentration Account</u>"), into which funds from the PSP Store Deposit Accounts, the PSP Customer Payment Accounts, the Brink Accounts, and customer checks are deposited;

- master concentration account, ending in 2356 (the "<u>PSP Master Concentration Account</u>"), into which funds from the PSP Stores Concentration Account, the PSP Depository Accounts, the WNW Stores Concentration Account (as defined below), and almost all other PSP Bank Accounts are deposited to fund the PSP Debtors' operating disbursements, including intercompany payables;

- distribution account, ending in 6821 (the "<u>PSP Distribution Account</u>"), into which funds are deposited from the PSP Master Concentration and transferred to the Corporate Operating Account (defined below);

- national advertising funding accounts, ending in 3418 and 9787, into which funds from franchisees and participating vendors are deposited and used to pay for the PSP Debtors' advertising expenses;

- disbursement accounts, ending in 8361, 5297, 6300, 7985, and 4431 (collectively, the "PSP Payroll Accounts"), into which funds from several PSP Bank Accounts are deposited to fund the PSP Debtors' payroll;

- letter of credit account, ending in 9916, which is used to hold restricted cash as collateral in support of the PSP Debtors' distribution center lease obligations;

- operating account, ending in 9768 (the "PSP Operating Account"), into which receipts and funds from the PSP Master Concentration Account are deposited and thereafter used to make the PSP Debtors' operating disbursements and pay payroll and taxes;

- customer payment accounts, ending in 1628 and 9839 (together, the "WNW Stores Customer Payment Accounts"), into which funds from credit card receipts and revenue from online sales are deposited;

- disbursement account, ending in 1610 (the "WNW Stores Disbursement Account"), into which funds from the PSP Distribution Account are transferred to pay the PSP Debtors' operating expenses, including taxes and franchisee payments;

- concentration account, ending in 1560 (the "WNW Stores Concentration Account"), into which funds from the WNW Stores Customer Payment Accounts are deposited and, ultimately, transferred to the PSP Master Concentration Account; and

- disbursement account, ending in 1693 (the "WNW Stores Payroll Account"), which is used to fund Debtor WNW Stores, LLC's payroll;

- payroll concentration account, ending in 7212 (the "PSP/WNW Payroll Concentration Account"), into which funds from the PSP Master Concentration Account, the PSP Payroll Accounts, and the WNW Stores Payroll Account are deposited to fund the PSP Debtors' payroll;

**FRG Bank Accounts**

- operating account, ending in 4767 (the "Corporate Operating Account"), which receives transfers from the AF Concentration Account, the VS Operating Concentration Account, Buddy's Master Operating Account, and the PSP Distribution Account to fund corporate disbursements, such as taxes, insurance, and debt-related obligations;

- disbursement account, ending in 4348 (the "FRG Disbursement Account"), which is used to fund certain disbursements, such as state and local taxes, among other things;

9

- disbursement account, ending in 9922 (the "Medical Claims Account"), into which funds are deposited on a monthly basis to fund claims under the Debtors' self-funded employee medical benefits policy;

- savings account, ending in 8497, into which excess funds from the Corporate Operating Account are deposited to generate interest;

- account ending in 9197, into which funds from the Corporate Operating Account were historically transferred to pay interest on secured debt;

- account ending in 7256, into which funds from the Corporate Operating Account are transferred to pay certain taxes;

- account ending in 1715, into which certain securitized receivables are deposited and from which debt servicing payments are made; amd

- account ending in 5388.

12.     A list of the Bank Accounts, as of the Petition Date, is attached hereto as Exhibit D.  These accounts are critical to the Debtors' operations because the Bank Accounts allow the Debtors to, among other things, fund critical disbursements, such as vendor payments and payroll, engage in necessary Intercompany Transactions (defined below), and efficiently maintain the Cash Management System.

### A.  Customer and Franchisee Payments

13.     The Debtors receive funds on account of, among other things, franchising fees and the sales of their products to various third parties, including franchisees and customers.  The Debtors accept various forms of payment, including cash, check, credit card, and wire transfers, which payments are generally deposited into various deposit accounts, including the Store Deposit Accounts,[10] the AF Customer Payment Accounts, the AF Franchisee Payment Account, the VS Deposit Account, the VS Collections Account, the Buddy's Operating Account, the Buddy's Master Operating Account, the Buddy's Payroll Account (which receives new store fees and area

---

[10]   "Store Deposit Accounts" refers, collectively, to the AF Debtors' Store Deposit Accounts, the VS Debtors' Store Deposit Accounts, the Buddy's Debtors' Store Deposit Accounts, and the PSP Debtors' Store Deposit Accounts.

development agreement fees), the PSP Customer Payment Accounts, the Brinks Accounts, the PSP Franchisee Payment Account, the PSP Stores Concentration Account, and the WNW Stores Customer Payment Accounts, as applicable.  The funds received in such accounts are transferred by wire or ACH as follows: (i) in the case of the AF Debtors, the AF Concentration Account or, ultimately, the AF Disbursement Account to fund disbursements; (ii) in the case of the VS Debtors, to the VS Concentration Account, the VS Customer Collections Account, or the VS Operating Concentration Account and, ultimately, to the VS Disbursement Accounts to fund disbursements; (iii) in the case of the Buddy's Debtors, to the Buddy's Operating Account and the Buddy's Master Depository Account and, with respect to the latter, ultimately, to the Buddy's Disbursement Account to fund disbursements; and (iv) in the case of the PSP Debtors, to the PSP Stores Concentration Account or the PSP Operating Account and, ultimately, to the PSP Disbursement Accounts to fund disbursements; with respect to WNW Stores, LLC, to the WNW Stores Customer Payment Accounts, which funds are then transferred to the WNW Stores Concentration Account and, ultimately, through the PSP Master Concentration Account, to the WNW Stores Disbursement Account to fund operating disbursements.  To the extent applicable, as reflected on the Cash Flow Schematic, excess funds are transferred to the Corporate Operating Account and are used for corporate disbursements, such as insurance premiums and debt service obligations.

**B.  Operational Payments**

14.     The Debtors make disbursements on account of operational expenses (including payments to vendors, taxing authorities, and freight providers) from the AF Disbursement Account, the VS Disbursement Accounts, the Buddy's Disbursement Account, the Buddy's Operating Account, the PSP Disbursement Accounts, the PSP Operating Account, or the Corporate Operating Account via ACH, check, and wire transfer.  The FRG Disbursement Account, the AF

Disbursement Account, the Buddy's Operating Account, the WNW Stores Disbursement Account, the PSP Operating Account, and the PSP Disbursement Accounts are the Debtors' primary Bank Accounts for processing tax payments.

### C. Payroll

15.    Payroll is processed through each respective Debtor's Payroll Accounts.[11] Corporate payroll is paid using the FRG Disbursement Account, which is funded, as needed, by the Corporate Operating Account.

### D. Medical Claims Account

16.    On a monthly basis, the FRG Debtors initiate ACH transfers from the AF Disbursement Account, the VS Operating Concentration Account, the Buddy's Operating Account, and the PSP Disbursement Account ending in 1010 to the Medical Claims Account in an amount sufficient to satisfy estimated claims under the Debtors' self-funded medical benefits plan. The Medical Claims Account operates as a zero-balance account and the funds held therein are swept daily to the Bank Account ending in 0508 to generate interest.

## II.    Intercompany Transactions

17.    In the ordinary course of business, the Debtors engage in routine arm's-length business relationships among and between each other (the "Intercompany Transactions"). The Intercompany Transactions arise primarily on account of operating expenses and debt service payments, as well as interest, fees, taxes, and other expenses. At times, the FRG Debtors are invoiced for, and pay amounts on behalf of, the other Debtors, or vice-versa.[12]    These

---

[11]    "Payroll Accounts" refers, collectively, to the AF Payroll Account, the VS Payroll Account, the Buddy's Payroll Account, the PSP Payroll Accounts, the WNW Stores Payroll Account, and the PSP/WNW Payroll Account.

[12]    For example, state or local taxes may be paid by the FRG Debtors on behalf of the operating debtors. Additionally, the FRG Debtors utilize certain of the AF Debtors' administrative services, such as payroll software, and reimburse the AF Debtors for such costs without markup.

Intercompany Transactions result in intercompany receivables and payables (the "Intercompany Claims"), which are generally satisfied in cash.

18.    The Debtors generally account for and record all Intercompany Transactions and Intercompany Claims in their respective books and records, the results of which are concurrently recorded on the Debtors' balance sheets and regularly reconciled.  The Debtors maintain strict records of the Intercompany Transactions and can ascertain, trace, and account for all Intercompany Transactions.

19.    If the Intercompany Transactions were discontinued, the Cash Management System and related administrative controls, as well as the Debtors' broader business operations, would be severely disrupted to the detriment of the Debtors, their estates, and their creditors.  Accordingly, the Debtors seek authority, but not direction, to continue the Intercompany Transactions, and request, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, that postpetition Intercompany Claims resulting from ordinary course Intercompany Transactions be accorded administrative priority.

**III.    Bank Fees**

20.    In the ordinary course of business, the Debtors incur periodic service charges and other fees in connection with maintaining the Cash Management System (collectively, the "Bank Fees").  During the past 12 months, the Debtors paid on average approximately $117,000 in Bank Fees each month.  The Debtors seek authority, but not direction, to continue paying the Bank Fees, including any prepetition Bank Fees, in the ordinary course on a postpetition basis, consistent with historical practices.

**IV.    Business Forms**

21.    As part of the Cash Management System, the Debtors utilize various business forms, including checks (the "Business Forms"), in the ordinary course of business.  To minimize

expenses, the Debtors seek authority, but not direction, to continue to use all Business Forms in substantially the form used immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession.  Given the expansive scope of the Debtors' business operations, requiring the Debtors to change their existing Business Forms would impose needless expense on the Debtors' estates.

22.     In accordance with Local Rule 2015-2(a), to the extent that the Debtors exhaust their existing supply of checks during these Chapter 11 Cases and require new checks, each Debtor will update its checks to reflect the designation "Debtor in Possession" and the leading case number of these Chapter 11 Cases; provided that, with respect to checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend and the leading case number on such checks within ten (10) business days of the date of entry of the Interim Order.

**V.     Compliance with U.S. Trustee Guidelines and Bankruptcy Code**

23.     Pursuant to the operating guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee," and such guidelines, the "U.S. Trustee Guidelines"), the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository (an "Authorized Depository") that agrees to comply with the requirements of the U.S. Trustee's office.

24.     Further, section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  Section 345(b) of the Bankruptcy Code requires a debtor's bank to post a bond, unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States."  11 U.S.C. § 345(b).

25.     The majority of the Debtors' financial transactions—including, but not limited to, payroll,[13] tax payments, and the majority of vendor payments—route through the Corporate Operating Account at CIBC, the AF Disbursement Account at KeyBank, the VS Disbursement Accounts at JP Morgan Chase, N.A., the Buddy's Disbursement Account at JP Morgan Chase, N.A., the Buddy's Operating Account at JP Morgan Chase, N.A., the PSP Operating Account at JP Morgan Chase, N.A., the PSP Disbursement Accounts at JP Morgan Chase, N.A., the PSP Operating Account at JP Morgan Chase, N.A., the PSP Disbursement Accounts at JP Morgan Chase, N.A., and the WNW Stores Disbursement Account at JP Morgan Chase, N.A., each of which is an Authorized Depository.  The Debtors' Bank Accounts at Simmons Bank, Centennial Bank, Equity Bank, Arvest Bank, Southern Bank, First Commonwealth, American Savings Bank, Prosperity Bank, and First Bank of Clewiston (collectively, the "Non-UDA Banks") are not Authorized Depositories; however, all such Banks are well capitalized, financially stable, and reputable institutions.  All of the Debtors' Bank Accounts, including those at the Non-UDA Banks, are insured by the FDIC.  Moreover, the Bank Accounts held at the Non-UDA Banks are necessary to maintain the Cash Management System because these Bank Accounts, comprised entirely of Store Deposit Accounts, hold Customer cash and checks that are deposited with the Debtors on a daily basis in the ordinary course of their business, are generally swept to the AF Concentration Account, the VS Operating Concentration Account, and the Buddy's Operating Account, and, accordingly, do not typically hold large amounts of cash at any one time.[14]  The Debtors' Banks,

---

[13]     Payroll is paid through each respective Debtor's Payroll Account at JP Morgan Chase, N.A., CIBC, or Key Bank, as applicable, all of which are Authorized Depositories.

[14]     The Debtors manually sweep the AF Store Deposit Accounts, the Buddy's Store Deposit Accounts, and the VS Store Deposit Accounts at regular intervals to maintain balances below $100,000, $40,000, and $50,000, respectively.

including the Non-UDA Banks, are well-positioned to continue performing depository and cash management functions during these Chapter 11 Cases.

26.     To the extent that any of the Bank Accounts cease to comply with, or do not comply with, the requirements of section 345(b) of the Bankruptcy Code during these Chapter 11 Cases, the Debtors request that the Court grant the Debtors a thirty (30) day suspension, without prejudice to the Debtors' right to seek an additional suspension after the entry of the Interim Order, to either (a) bring the applicable Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or (b) seek appropriate relief from the Court.

**BASIS FOR RELIEF REQUESTED**

**I.     Continued Use and Maintenance of the Cash Management System Is Warranted.**

27.     The Debtors maintain the Cash Management System in the ordinary course of their business operations, which allows them to efficiently administer their cash and financial affairs. Maintenance of the Cash Management System is important for preserving and enhancing the value of the Debtors' business and for administering these Chapter 11 Cases.

28.     As described herein, any disruption to the Cash Management System would have an immediate adverse impact on the Debtors' business and would impair the Debtors' ability to successfully administer these Chapter 11 Cases.  Continued maintenance of the Cash Management System is necessary to, among other things, ensure that the Debtors may (a) honor obligations that accrued or any payments that were made or issued prepetition, but that remain outstanding as of the Petition Date (to the extent authorized by the Court), and (b) avoid any unnecessary interruption of their Cash Management System, including the flow of funds among and between the Debtors.  It would be time-consuming, difficult, and costly for the Debtors to establish an entirely new system of accounts and a new cash management system, and particularly impractical given that the Debtors anticipate moving through these Chapter 11 Cases as expeditiously as

16

possible.  The attendant delays from revising cash management procedures, redirecting receipts and implementing new payment protocols would create unnecessary pressure on the Debtors at this critical juncture.

29.     Allowing the Debtors to utilize and maintain the Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business, without notice or a hearing."  11 U.S.C. § 363(c)(1).  Section 363(c)(1) is intended to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business.  See, e.g., In re Roth Am., Inc., 975 F.2d 949, 952 (3d Cir. 1992); see also In re Nellson Nutraceutical, Inc., 369 B.R. 787, 796 (Bankr. D. Del. 2007).  Included within the purview of section 363(c) is a debtor's ability to continue the routine transactions necessitated by its cash management system.  See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996).

30.     Courts in this District have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993).  The Third Circuit has agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring affiliated debtors to maintain all accounts separately.  Columbia Gas Sys., 997 F.2d at 1061; see also In re Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining existing cash management system allows debtor "to administer more effectively and efficiently its financial operations and assets").

31.     The Court may also exercise its equitable powers to grant the relief requested herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); see also In re Combustion Eng'g, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings"); In re Nixon, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad."); In re Nortel Networks, Inc., 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to 'craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.'").

32.     Accordingly, to minimize the disruption caused by the filing of these Chapter 11 Cases and maximize the value of the Debtors' estates, the Debtors request authority to continue to utilize the Cash Management System during the pendency of these Chapter 11 Cases.  The Debtors have each used their respective Cash Management System for many years.  Parties in interest will not be harmed by the Debtors' continued maintenance of the Cash Management System, including the Bank Accounts, because the Debtors will implement appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date.  Specifically, with the assistance of their professionals and consistent with prior practice, the Debtors will continue to maintain detailed records of all transfers of cash, if any, and record all transactions on applicable accounts.  Therefore, the Debtors should be permitted to maintain their

cash and transfer funds among the Bank Accounts, if needed, in accordance with the Cash Management System.

**II.     The Court Should Authorize the Debtors to Maintain the Bank Accounts.**

33.     The U.S. Trustee Guidelines require that the debtor in possession open new bank accounts and close all existing accounts.  This requirement was designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and to help protect against the inadvertent payment of prepetition claims and payments.  The U.S. Trustee Guidelines also require opening a separate operating account and a special tax payment account into which all funds that may be collected and/or payable during the pendency of a debtor's case will be deposited.  This requirement is meant to provide cash collateral for, and ensure payment of, certain priority tax claims such as federal and state payroll taxes and sales taxes.

34.     To avoid disruption to the Debtors' operations, the Debtors request that they be permitted to continue to maintain the existing Bank Accounts.  Allowing the Debtors to maintain the Bank Accounts will assist the Debtors in accomplishing a smooth transition to operations under chapter 11.  Moreover, through their internal controls, the Debtors can distinguish between prepetition and postpetition obligations and payments without closing the Bank Accounts and opening new ones.  In addition, the Banks at which the Debtors maintain Bank Accounts have been or are in the process of being advised not to honor checks, advises, drafts, or other requests for payment issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and as directed by the Debtors.  Therefore, the goals of the U.S. Trustee Guidelines can be satisfied, and the Debtors' creditors can be protected, without closing the Bank Accounts.

35.     Although the Debtors are requesting a waiver of the requirement that they close all Bank Accounts, the Debtors may determine, in their business judgment, that opening new bank accounts and/or closing existing Bank Accounts is in the best interests of the estates.  Nothing

contained herein should prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate.  Any new bank account opened by the Debtors will be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee, at one of the Debtors' existing Banks, or is willing to immediately execute a Uniform Depository Agreement.  The Debtors will promptly provide notice of any new bank account, including the account number and applicable Bank as well as the purpose for such bank account, to counsel to the DIP Lenders.

36.     As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments.  The Debtors' tax obligations can be paid out of the Bank Accounts, and the U.S. Trustee can adequately monitor the flow of funds into, among, and out of the accounts, through the Debtors' required reporting.  Moreover, the creation of a new debtor in possession account designated solely for tax obligations would be unnecessary and inefficient.

## III.    The Court Should Authorize the Debtors to Pay Prepetition Amounts Related to Bank Fees.

37.     In connection with the Cash Management System, the Debtors request authorization to continue to pay, honor, or deduct from the appropriate account certain Bank Fees. Payment of the Bank Fees will minimize disruption to the Debtors' operations and is therefore in the best interests of their estates.  Absent payment of the Bank Fees, the Banks might assert setoff rights against the funds in the Bank Accounts, freeze the Bank Accounts, and/or refuse to provide banking services to the Debtors.   Accordingly, the Debtors should be permitted, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, to pay and/or reimburse the Banks in the ordinary course of business for any Bank Fees arising prior to or after the Petition Date.

**IV.    The Debtors Should Be Authorized to Use Existing Check Stock and Related Business Forms.**

38.    Local Rule 2015-2(a) provides: "[w]here the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation 'Debtor-in-Possession' and the corresponding bankruptcy number on all such checks."  Del. Bankr. L.R. 2015-2(a).

39.    As discussed above, the Debtors utilize various Business Forms in the ordinary course of their business.  In order to minimize expenses to their estates, the Debtors request authority to continue using their existing prepetition Business Forms without reference to their status as debtors in possession or any other alteration.  As noted above, most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession.  A failure to permit the Debtors to maintain and utilize their existing check stock and related Business Forms as set forth herein would:  (i) disrupt the ordinary financial affairs and business operations of the Debtors; (ii) delay the administration of the Debtors' estates; (iii) compromise the Debtors' internal controls and accounting system; and (iv) require the estates to unnecessarily spend money to create new Business Forms.  Accordingly, the requested relief is warranted under the circumstances.

40.    Further, in accordance with Local Rule 2015-2(a), to the extent that the Debtors exhaust their existing supply of checks during these Chapter 11 Cases and require new checks, each Debtor will update its checks to reflect the designation "Debtor in Possession" and the leading case number of these Chapter 11 Cases; <u>provided</u> that, with respect to checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend

and the leading case number on such checks within ten (10) business days of the date of entry of the Interim Order.

**V.      The Court Should Authorize the Banks to Continue to Service and Administer the Debtors' Bank Accounts.**

41.      In connection with the foregoing, the Debtors respectfully request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors, as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized (i) to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (ii) to provide that the Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such Banks having no liability to any party for relying on such representations by the Debtors provided for herein); and (iii) to authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

42.      The Debtors respectfully request that the Court authorize the Banks to receive, process, honor, and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, whether such checks, drafts, wires, or ACH payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; provided, however, that any check, advise, draft, or other notification that the Debtors advised the Banks to have drawn, issued, or otherwise

presented prior to the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

43.     The Debtors also request that, to the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion either (i) at the direction of the Debtors; (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item honored postpetition.

44.     Both as part of this Motion and in other motions that have been concurrently filed, the Debtors are requesting authority, but not direction, to pay certain prepetition obligations.  With respect to some of these obligations, the Debtors may have issued checks prior to the Petition Date that have yet to clear the banking system.  In other instances, the Debtors will create the relevant check once the Court enters an order permitting the Debtors to do so.  The Debtors intend to inform the Banks which checks should be so honored.  Therefore, the Debtors request that the Banks be authorized to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

**VI.     A Suspension of Time to Comply with the Requirements of Section 345(b) of the Bankruptcy Code Is Warranted.**

45.     Pursuant to section 345(b) of the Bankruptcy Code, any deposit or other investment made by a debtor, except those insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United

States, must be secured by a bond in favor of the United States that is secured by the undertaking

of a corporate surety approved by the U.S. Trustee or by the deposit of securities of the kind

specified in 31 U.S.C. § 9303.  See 11 U.S.C. § 345(b).  Section 345(b) provides further, however,

that a bankruptcy court may allow the use of alternatives to these approved investment guidelines

"for cause."  Id.; see also In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

Moreover, Local Rule 2015-2 provides that, if a motion for suspension of the section 345

requirements is filed on the first day of a chapter 11 case in which there are more than 200 creditors,

the Court may grant an interim suspension of the section 345 requirements until such motion is

heard.  See Local Rule 2015-2.

46.     In Service Merchandise, the court identified the following factors for determining whether cause exists to suspend the requirements of Bankruptcy Code section 345(b):

> (a)     the sophistication of the debtor's business;
>
> (b)     the size of the debtor's business operations;
>
> (c)     the amount of investments involved;
>
> (d)     the bank ratings of the financial institutions where the debtor's funds are held;
>
> (e)     the complexity of the case;
>
> (f)     the safeguards in place within the debtor's own business for insuring the safety of the funds;
>
> (g)     the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
>
> (h)     the benefit to the debtor of current practices;
>
> (i)     the harm, if any, to the estate; and
>
> (j)     the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case.

Service Merchandise, 240 B.R. at 896.  Examining these factors, the Service Merchandise court

concluded that "cause" existed in that case because the debtors were "large, sophisticated

[companies] with a complex cash management system," with the ability to shift money as needed

to insure the safety of their funds.  Id.  Moreover, the benefits to the debtor of suspending the

section 345(b) requirements far outweighed any potential harm to the estate, and the failure to suspend the requirements "would needlessly handcuff this debtor's reorganization efforts."  Id. at 896–97.

47.     As in Service Merchandise, the Debtors operate a sophisticated enterprise with a complex Cash Management System–indeed, several complex systems within their Cash Management System–that provides the Debtors with the ability to transfer funds rapidly to ensure their safety.  In light of the Service Merchandise factors and the safety of the institutions that the Debtors propose to utilize as a continuation of their prepetition practices, the Debtors believe that sufficient cause exists to allow deviation from the investment guidelines set forth in section 345(b) of the Bankruptcy Code.  Satisfaction of those requirements would impose needless costs on the Debtors' estates and the process of satisfying those requirements would lead to inefficiencies in the management of the Debtors' business.

48.     Given the national scope of the Debtors' operations and cash management requirements, it will prove difficult to consolidate all cash activities to the narrow group of financial institutions approved in the U.S. Trustee Guidelines.  Furthermore, any effort to reconfigure the Debtors' entire Cash Management System could have significant tax or regulatory impacts in numerous jurisdictions and will require extensive time and resources of the Debtors' estates, to the detriment of all creditors.  The Debtors' estates and creditors, however, will not be harmed by the Debtors' maintenance of the status quo as modified by the relief requested herein because of the relatively safe and prudent practices already utilized by the Debtors.

49.     Moreover, the Debtors submit that they are in substantial compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines with respect to the Debtors' Bank Accounts at all Banks other than the Non-UDA Banks.  Pursuant to the U.S. Trustee Guidelines,

the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office. Aside from the Bank Accounts held at the Non-UDA Banks, all other Bank Accounts are held at Authorized Depositories and are FDIC insured up to $250,000 (including the Bank Accounts at the Non-UDA Banks) on an aggregate basis and, therefore, comply with section 345(b) of the Bankruptcy Code. As set forth in further detail above, while the Bank Accounts at the Non-UDA Banks are not held at Authorized Depositories, such Banks are nonetheless FDIC insured and are well-capitalized, financially stable, and reputable institutions. Such financial institutions are well-positioned to perform the depository and cash management functions during these Chapter 11 Cases. In addition, the Debtors maintain relatively small balances in each of the accounts maintained at the Non-UDA Banks, reducing any risk with respect to such cash. Consequently, the Debtors believe that they can maintain the Bank Accounts at the Non-UDA Banks pending entry of the Final Order without jeopardizing any parties in interest.

50.     As a result, to the extent that the requirements of section 345 of the Bankruptcy Code are inconsistent, or otherwise conflict, with the Debtors' Cash Management System or any action taken by the Debtors in accordance with an order of this Court, the Debtors respectfully request a thirty (30) day (or such longer period as the Debtors may request) suspension of time to address any questions that the U.S. Trustee may have regarding the Cash Management System and the Debtors' compliance with section 345(b) of the Bankruptcy Code to allow the Debtors to continue their existing cash management practices. The Debtors will work in good faith with the U.S. Trustee to address any concerns regarding the continued use of the Debtors' Bank Accounts on a postpetition basis and, should the U.S. Trustee have concerns regarding the Bank Accounts,

make such arrangements as are acceptable to the U.S. Trustee (without prejudice to the Debtors'
right to request further suspensions of time by motion in this Court).

**VII.    Cause Exists to Permit Continued Use of Intercompany Transactions.**

51.    As described above, the Debtors enter into certain Intercompany Transactions in
the ordinary course of business that are essential to the operations of the Debtors' business.  If the
Intercompany Transactions were to be discontinued, the Debtors' operations, Cash Management
System, and related administrative controls would be disrupted causing irreparable harm to the
Debtors.

52.    The continuation of the Intercompany Transactions will not prejudice the Debtors'
estates or their creditors.  Among other things, the Intercompany Transactions are part of the
normal course of operation of the Debtors' business, which allows the Debtors' enterprise to
function more effectively and efficiently as a whole, thereby benefitting all of the Debtors'
stakeholders.  Further, the Debtors maintain strict records of transfers of cash and can ascertain,
trace, and account for all such Intercompany Transactions.  Accordingly, the Debtors believe that
the continuation of the Intercompany Transactions is in the best interest of the Debtors' estates and
creditors.

53.    Because the Debtors engage in Intercompany Transactions on a regular basis and
such transactions are common among similar enterprises, the Debtors believe that the
Intercompany Transactions are ordinary course transactions within the meaning of section
363(c)(1) of the Bankruptcy Code and therefore, do not require the Court's approval.  Yet,
precisely because of their routine nature, the continuation of such transactions is integral to the
Debtors' ability to operate their business.  Accordingly, out of an abundance of caution, the
Debtors are seeking express authority to engage in Intercompany Transactions postpetition.  The

continued performance of the ordinary course Intercompany Transactions are integral to ensuring the Debtors' ability to operate their business.

54.     To ensure that each individual Debtor will not fund, at the expense of its own creditors, the operations of another Debtor, the Debtors respectfully request that, pursuant to 503(b)(1), 507(b), and 364(a) of the Bankruptcy Code, all Intercompany Claims be granted administrative expense status.  If all Intercompany Claims against the Debtors are accorded administrative expense priority status, each entity will continue to bear the ultimate payment responsibility for such ordinary course transactions.

## SATISFACTION OF BANKRUPTCY RULE 6003

55.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

56.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without authorization of the relief requested herein.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

57.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve the value of their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

58.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## RESERVATION OF RIGHTS

59.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.  Nothing in the Proposed Orders or this Motion shall be construed (a) to create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.  Nothing in the Proposed Orders or this Motion shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.  The Debtors and the Required Consenting First Lien Lenders (as defined in the Restructuring Support Agreement) reserve all rights with respect to the payment and allocation of any fees or expenses (including any director, officer, and manager fees, to the extent applicable) allocable to the TopCo

Debtor and as to an agreed-upon allocation with respect thereto as between the TopCo Debtor and the other Debtors.

## NOTICE

60.     Notice of this Motion has been or will be provided to:  (i) the U.S. Trustee; (ii) the United States Attorney's Office for the District of Delaware; (iii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates; (iv) counsel to the ABL Lenders; (v) counsel to the Ad Hoc Group of First Lien Lenders; (vi) counsel to the Second Lien Term Loan Lenders; (vii) counsel to the HoldCo Lenders; (viii) counsel to the DIP Agent; (ix) counsel to the DIP Lenders; (x) the Internal Revenue Service; and (xi) the Banks.  The Debtors will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter the Proposed Orders, granting the relief requested herein and such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: November 3, 2024
       Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (*pro hac vice* pending)
Matthew A. Feldman (*pro hac vice* pending)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, AND (C) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS; (II) WAIVING CERTAIN OPERATING GUIDELINES; (III) SUSPENDING TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE; AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors in possession

in the above-captioned cases (the "Debtors") for the entry of interim and final orders, pursuant to

sections 105, 345, 363, 364, 503, and 507 of the Bankruptcy Code, (i) authorizing, but not

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2]     Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Motion.

directing, the Debtors to (a) continue to maintain their existing Cash Management System, including their Bank Accounts and Business Forms, (b) honor certain prepetition obligations related thereto, and (c) continue to perform Intercompany Transactions in the ordinary course of business; (ii) waiving certain operating guidelines; (iii) suspending the time to comply with section 345(b) of the Bankruptcy Code on an interim basis, to the extent applicable; and (iv) granting related relief; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

   **IT IS HEREBY ORDERED THAT**:

   1.     The Motion is GRANTED on an interim basis as set forth herein.

   2.     A final hearing on the relief sought in the Motion shall be conducted on **_____, 2024 at _____ (ET)** (the "Final Hearing").  Any party-in-interest objecting to the relief sought at the Final Hearing or in the Final Order shall file and serve a written objection, which objection shall be served upon (i) proposed co-counsel for the Debtors, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com) and Betsy L. Feldman, Esq. (bfeldman@willkie.com), and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE

19801, Attn: Edmon L. Morton, Esq. (emorton@ycst.com) and Matthew B. Lunn, Esq. (mlunn@ycst.com); (ii) counsel to any official committee appointed in these Chapter 11 Cases; (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); (iv) counsel to the DIP Agent, Attn: Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Gregg Bateman, Esq. (bateman@sewkis.com), Sagar Patel, Esq. (patel@sewkis.com), and Michael Danenberg, Esq.(danenberg@sewkis.com); (v) counsel to the DIP Lenders and Ad Hoc Group of First Lien Lenders, (a) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (b) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com); (vi) counsel to the ABL Lenders, Attn: Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com); (vii) counsel to the Second Lien Term Loan Lenders, White & Case LLP, 200 S Biscayne Blvd, Miami, FL 33131, Attn: Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100, Chicago, IL 60606, Attn: Bojan Guzina, Esq. (bojan.guzina@whitecase.com); and (viii) counsel to the HoldCo Lenders at the address set forth in (vii) above, in each case no later than _____, 2024 at 4:00 p.m. (ET). If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.     The Debtors are authorized, but not directed, to: (i) continue to maintain and use the Cash Management System as described in the Motion; (ii) honor certain prepetition obligations related thereto; (iii) continue the Intercompany Transactions in the ordinary course; and (iv) continue to pay the Bank Fees, including those that arose prepetition; provided that in the case of each of (i) through (iv), such action is taken in the ordinary course of business and consistent with prepetition practices.

4.     The Debtors are further authorized, but not directed, to (i) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date; (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (iii) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, ACH Payments, wire transfers, and other debits; and (iv) perform their obligations under the documents governing the Bank Accounts; provided that in the case of each of (i) through (iv), such action is taken in the ordinary course of business and consistent with past practice.

5.     The Banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor, and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that any check drawn or issued by the Debtors before the Petition Date may be honored by the Banks if specifically authorized by order of this Court.

6.     Notwithstanding any other provision of this Interim Order, if any Bank honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (i) at the direction of the Debtors; (ii) in good-faith belief that the Court has authorized such prepetition

4

check or item to be honored; or (iii) as the result of an innocent mistake made despite implementation of reasonable item-handling procedures, such Bank shall not be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

7.     The Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further order of this Court for: (i) all Bank Fees, provided that such fees and charges are authorized under the applicable account agreement with the Debtors, and provided, further, that nothing set forth herein shall authorize the Banks to debit any claim or charges not in the ordinary course of business and not permitted under the applicable account agreements; (ii) all checks, items, and other payment orders drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of these Chapter 11 Cases; and (iii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtors' Bank Accounts with such Bank prior to the filing of these Chapter 11 Cases which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of these Chapter 11 Cases. The liens on any of the Bank Accounts granted to creditors (if any) will not have priority over such fees and charges of the respective Bank at which the Bank Account is located.

8.     As soon as possible, the Debtors shall (i) serve a copy of this Interim Order on each Bank; (ii) contact the Banks; (iii) provide the Banks with the Debtors' employer identification numbers (if applicable) and the case numbers of these Chapter 11 Cases; (iv) identify for the Banks each of the Bank Accounts held at the Banks as being held by a debtor in possession in these

Chapter 11 Cases; and (v) request that each Bank internally code each of the Bank Accounts as "debtor in possession" accounts.

9.      The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate consistent with prepetition business practices; provided that the Debtors shall (i) only open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement; (ii) serve a copy of this Interim Order upon any bank at which the Debtors open a new bank account immediately upon opening of the new account, and (iii) promptly serve notice of any new bank account, including the account number and the bank, on counsel to the DIP Lenders.

10.      To the extent that any of the Debtors' Bank Accounts (including any investment accounts) are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have thirty (30) days, without prejudice to seeking an additional suspension, to come into compliance with section 345(b) of the Bankruptcy Code, as ordered by this Court.

11.      The requirement to establish separate accounts for cash collateral and/or tax payments is hereby suspended without prejudice, as applicable.

12.      The Debtors shall calculate quarterly fees payable pursuant to 28 U.S.C. § 1930(a)(6) based on the disbursements of each debtor, regardless of who pays those disbursements.

13.      Despite the use of a consolidated Cash Management System, the Debtors shall maintain accurate and detailed records of all transfers, including the Intercompany Transactions and any transactions among the TopCo Debtor and the other Debtors in accordance with their

prepetition practices, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.  The Debtors shall provide a summary of all Intercompany Transactions occurring between the TopCo Debtor and any other Debtor, in any calendar month to counsel to the Required Consenting First Lien Lenders (as defined in the Restructuring Support Agreement) and the ABL Agent (as defined in the First Day Declaration) within twenty-one (21) days of the end of such calendar month; provided, that to the extent that no such Intercompany Transactions are made in any calendar month, no related summary is required to be provided for such calendar month.  The Debtors and the Required Consenting First Lien Lenders (as defined in the Restructuring Support Agreement) reserve all rights with respect to the payment and allocation of any fees or expenses (including any director, officer, and manager fees, to the extent applicable) allocable to the TopCo Debtor and as to an agreed-upon allocation with respect thereto as between the TopCo Debtor and the other Debtors.

14.     Pursuant to section 503(b)(1) of the Bankruptcy Code, all postpetition payments on account of any Intercompany Transaction, including any interest and fees related thereto, made by a Debtor to another Debtor, upon net transfers, shall in each case be accorded administrative expense status.

15.     For Banks at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall request that the Banks execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Order.

16.     Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive,

or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

17.     Nothing in this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity that existed as of the Petition Date.

18.     Nothing in this Interim Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as a waiver of the right of Debtors, or shall impair the ability of Debtors, to contest the validity and amount of any payment made pursuant to this Interim Order.

19.     Nothing in this Interim Order shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

20.     Notwithstanding anything to the contrary set forth herein, any payment made, or authorization contained, hereunder shall be subject in all respects to the Approved Budget (as such term is defined in the order approving the Debtors' postpetition financing agreements).

21.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

22.     The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

23.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

24.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## **EXHIBIT B**

**Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. ___ & ___** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, AND (C) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS; (II) WAIVING CERTAIN OPERATING GUIDELINES; (III) SUSPENDING TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE; AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") for the entry of interim and final orders, pursuant to sections 105, 345, 363, 364, 503, and 507 of the Bankruptcy Code, (i) authorizing, but

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Motion.

not directing, the Debtors to (a) continue to maintain their existing Cash Management System, including their Bank Accounts and Business Forms, (b) honor certain prepetition obligations related thereto, and (c) continue to perform Intercompany Transactions in the ordinary course of business; (ii) waiving certain operating guidelines; (iii) suspending the time to comply with section 345(b) of the Bankruptcy Code; and (iv) granting related relief; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to: (i) continue to maintain and use the Cash Management System as described in the Motion; (ii) honor certain prepetition obligations related thereto; (iii) continue the Intercompany Transactions in the ordinary course; and (iv) continue to pay the Bank Fees, including those that arose prepetition; provided that in the case of each of (i) through (iv), such action is taken in the ordinary course of business and consistent with prepetition practices.

3.      The Debtors are further authorized, but not directed, to (i) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date; (ii) treat the Bank

2

Accounts for all purposes as accounts of the Debtors as debtors in possession; (iii) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, ACH Payments, wire transfers, and other debits; and (iv) perform their obligations under the documents governing the Bank Accounts; provided that in the case of each of (i) through (iv), such action is taken in the ordinary course of business and consistent with past practice.

4.      The Banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that any check drawn or issued by the Debtors before the Petition Date may be honored by the Banks if specifically authorized by order of this Court.

5.      Notwithstanding any other provision of this Final Order, if any Bank honors a prepetition check or other item drawn on any account that is the subject of this Final Order (i) at the direction of the Debtors; (ii) in good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake made despite implementation of reasonable item-handling procedures, such Bank shall not be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

6.      The Banks are authorized to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further order of this Court for: (i) all Bank Fees, provided that such fees and charges are authorized under the applicable account agreement with the Debtors, and provided, further, that nothing set forth herein shall authorize the Banks to debit any claim or

charges not in the ordinary course of business and not permitted under the applicable account agreements; (ii) all checks, items, and other payment orders drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of these Chapter 11 Cases; and (iii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtors' Bank Accounts with such Bank prior to the filing of these Chapter 11 Cases which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of these Chapter 11 Cases. The liens on any of the Bank Accounts granted to creditors (if any) will not have priority over such fees and charges of the respective Bank at which the Bank Account is located.

7.      As soon as possible, the Debtors shall (i) serve a copy of this Final Order on each Bank; (ii) contact the Banks; (iii) provide the Banks with the Debtors' employer identification numbers (if applicable) and the case numbers of these Chapter 11 Cases; (iv) identify for the Banks each of the Bank Accounts held at the Banks as being held by a debtor in possession in these Chapter 11 Cases; and (v) request that each Bank internally code each of the Bank Accounts as "debtor in possession" accounts.

8.      The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate consistent with prepetition business practices; provided that the Debtors shall (i) only open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement; (ii) serve a copy of this Final Order upon any bank at which the Debtors open a new bank account immediately upon opening of the new account, and

(iii) promptly serve notice of any new bank account, including the account number and the bank, on counsel to the DIP Lenders.

9.      To the extent that any of the Debtors' Bank Accounts (including any investment accounts) are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have thirty (30) days, without prejudice to seeking an additional suspension, to come into compliance with section 345(b) of the Bankruptcy Code, as ordered by this Court.

10.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby suspended without prejudice, as applicable.

11.     The Debtors shall calculate quarterly fees payable pursuant to 28 U.S.C. § 1930(a)(6) based on the disbursements of each debtor, regardless of who pays those disbursements.

12.     Despite the use of a consolidated Cash Management System, the Debtors shall maintain accurate and detailed records of all transfers, including the Intercompany Transactions and any transactions among the TopCo Debtor and the other Debtors in accordance with their prepetition practices, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.  The Debtors shall provide a summary of all Intercompany Transactions occurring between the TopCo Debtor and any other Debtor, in any calendar month to counsel to the Required Consenting First Lien Lenders (as defined in the Restructuring Support Agreement) and the ABL Agent (as defined in the First Day Declaration) within twenty-one (21) days of the end of such calendar month; provided, that to the extent that no such Intercompany Transactions are made in any calendar month, no related summary is required to be provided for such calendar month.  The Debtors and the Required

Consenting First Lien Lenders reserve all rights with respect to the payment and allocation of any fees or expenses (including any director, officer, and manager fees, to the extent applicable) allocable to the TopCo Debtor and as to an agreed-upon allocation with respect thereto as between the TopCo Debtor and the other Debtors.

13.     Pursuant to section 503(b)(1) of the Bankruptcy Code, all postpetition payments on account of any Intercompany Transaction, including any interest and fees related thereto, made by a Debtor to another Debtor, upon net transfers, shall in each case be accorded administrative expense status.

14.     For Banks at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall request that the Banks execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Order.

15.     Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii)  shall be construed as a promise to pay a claim.

16.     Nothing in this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity that existed as of the Petition Date.

17.     Nothing in this Final Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as a waiver of the right of Debtors, or shall impair the ability of Debtors, to contest the validity and amount of any payment made pursuant to this Final Order.

18.     Nothing in this Final Order shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

19.     Notwithstanding anything to the contrary set forth herein, any payment made, or authorization contained, hereunder shall be subject in all respects to the Approved Budget (as such term is defined in the order approving the Debtors' postpetition financing agreements).

20.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

21.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

22.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

23.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

# **EXHIBIT C**

## **Cash Flow Schematic**



# FRG and Freedom VCM Cash Schematic

# American Freight Cash Schematic



### American Freight Store Depository Accounts

| | |
|---|---|
| Key Bank 9 Accounts [1] | Wells Fargo 50 Accounts [2] |
| Wells Fargo 68 Accounts [3] | PNC Bank x6994 [4] |
| US Bank x9422 [4] | Southern Bank x0463 |
| First Commonwealth Bank x0231 | M&T Bank x6732 |
| Centennial Bank x9839 | Arvest Bank x2809 |
| Equity Bank x1890 | First Financial Bank x0947 |
| Fifth Third x6917 | Regions x0474 |
| Simmons Bank x7640 | JP Morgan x0258 |
| Bank of America x2211 | Citizens x1211 |

(1) Nine Store Depository Accounts at Key Bank sweep to Key Bank Concentration Account x2864; (2) 50 outlet Store Depository Accounts at Wells Fargo sweep to Wells Fargo Store Concentration Account x7090; (3) 68 legacy Store Depository Accounts at Wells Fargo sweep to Wells Fargo Store Concentration Account x9423; and (4) Store Depository Accounts PNC Bank x6994 and US Bank x9422 sweep to Citizens Store Concentration Account x8964

**Key**

American Freight Outlet Stores, LLC

American Freight LLC

Third Parties

3rd party cash movement

Intercompany cash movement

Affiliated Debtor Account

Depository Account

Concentration Account

Operating / Disbursement Account

# Buddy's Cash Schematic



**Store Depository Accounts**

- ADA Payments / New Store Fees
- Operating Account JP Morgan x2737 → Payroll
- Franchise Group New Holdco Operating Account CIBC x4767
- Bank of America x0723
- Bank of America x3695
- Bank of America x7376
- Bank of America x0749
- Bank of America x3705
- Master Depository Account Bank of America x0697
- Prosperity Bank x9347
- First Bank of Clewiston x5906
- TD Bank x3478
- Secondary Operating Account JP Morgan x2638
- ACH / Wire Payments / Taxes
- Franchisee/ Affiliate Payments
- Credit Card Fees / Chargebacks
- Master Operating Account JP Morgan x1911
- Receipts
- Disbursement Account JP Morgan x2521 → Check Payments
- Franchise Group New Holdco Benefits Disbursement Account CIBC x9922
- Bank of America x4171 (Dormant)



**Key**

- Buddys Newco, LLC
- Buddys Franchising & Licensing, LLC
- Third Parties
- 3rd party cash movement
- Intercompany cash movement
- Affiliated Debtor Account
- Depository Account
- Concentration Account
- Operating / Disbursement Account

# The Vitamin Shoppe Cash Schematic



# Pet Supplies Plus Cash Schematic



## **EXHIBIT D**

### **Bank Accounts**

| Bank Name | Debtor | Type of Account | Last 4 Digits |
|---|---|---|---|
| CIBC Bank USA | Franchise Group New Holdco, LLC | Business Sweep Account | x0508 |
| CIBC Bank USA | Franchise Group Inc. | Disbursement Account | x4348 |
| CIBC Bank USA | Franchise Group New Holdco, LLC | Operating Account | x4767 |
| CIBC Bank USA | Franchise Group New Holdco, LLC | Savings Deposit Account | x8497 |
| CIBC Bank USA | Franchise Group New Holdco, LLC | Benefits Disbursement Account | x9922 |
| JPMorgan Chase, N.A. | Franchise Group New Holdco, LLC | Miscellaneous Account | x0025 |
| JPMorgan Chase, N.A. | Freedom VCM Holdings, LLC | Miscellaneous Account | x5388 |
| JPMorgan Chase, N.A. | Freedom VCM Receivables, Inc. | Miscellaneous Account | x6296 |
| JPMorgan Chase, N.A. | Freedom VCM Interco Holdings, Inc. | Disbursement Account | x7256 |
| JPMorgan Chase, N.A. | Freedom VCM, Inc. | Disbursement Account | x9197 |
| Axos Bank | B Riley Receivables II LLC | Passthrough Account | x1715 |
| Arvest Bank | American Freight, LLC | Store Depository Account | x2809 |
| Bank of America, N.A. | American Freight, LLC | Store Depository Account | x2211 |
| Centennial Bank | American Freight, LLC | Store Depository Account | x9839 |
| Citizens Bank, N.A. | American Freight, LLC | Store Depository Account | x1211 |
| Citizens Bank, N.A. | American Freight, LLC | Store Concentration Account | x8964 |
| Citizens Bank, N.A. | American Freight, LLC | Collections Account | x8980 |
| Equity Bank | American Freight, LLC | Store Depository Account | x1890 |
| Fifth Third Bank | American Freight, LLC | Store Depository Account | x6917 |
| First Commonwealth Bank | American Freight, LLC | Store Depository Account | x0231 |
| First Financial Bank | American Freight, LLC | Store Depository Account | x0947 |
| JPMorgan Chase, N.A. | American Freight, LLC | Store Depository Account | x0258 |
| JPMorgan Chase, N.A. | American Freight Outlet Stores, LLC | Collections Account | x2060 |
| JPMorgan Chase, N.A. | American Freight, LLC | Collections Account | x2697 |
| Keybank National Association | American Freight, LLC | Franchise Collections Account | x0236 |
| Keybank National Association | American Freight, LLC | Store Depository Account | x0662 |
| Keybank National Association | American Freight, LLC | Store Depository Account | x0670 |
| Keybank National Association | American Freight, LLC | Store Depository Account | x0779 |
| Keybank National Association | American Freight, LLC | Store Depository Account | x0837 |
| Keybank National Association | American Freight, LLC | Store Depository Account | x0894 |
| Keybank National Association | American Freight, LLC | Store Depository Account | x0902 |
| Keybank National Association | American Freight, LLC | Store Depository Account | x0910 |
| Keybank National Association | American Freight, LLC | Collections Account | x1411 |
| Keybank National Association | American Freight, LLC | Concentration Account | x2849 |
| Keybank National Association | American Freight, LLC | Store Depository Account | x2856 |
| Keybank National Association | American Freight, LLC | Store Concentration Account | x2864 |
| Keybank National Association | American Freight, LLC | Disbursement Account | x3720 |
| Keybank National Association | American Freight, LLC | Payroll Account | x5377 |
| Keybank National Association | American Freight, LLC | Financing Collections Account | x6684 |
| Keybank National Association | American Freight, LLC | Store Depository Account | x8931 |
| M&T Bank | American Freight, LLC | Store Depository Account | x6732 |
| PNC Bank, N.A. | American Freight, LLC | Store Depository Account | x6994 |
| Regions Financial Corporation | American Freight, LLC | Store Depository Account | x0474 |
| Simmons Bank | American Freight, LLC | Store Depository Account | x7640 |
| Southern Bank | American Freight, LLC | Store Depository Account | x0463 |
| US Bank | American Freight, LLC | Store Depository Account | x9422 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Concentration Account | *7090 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Concentration Account | *9423 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x0956 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x0964 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x1601 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x1643 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x1668 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x1692 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x1999 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x2389 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x3152 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x3533 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x3685 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x3920 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x3950 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x3968 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4035 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4035 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4043 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4050 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4068 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4076 |

| Bank Name | Debtor | Type of Account | Last 4 Digits |
|---|---|---|---|
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4118 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4142 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4159 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4167 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4175 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4191 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4200 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4209 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4226 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4259 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4267 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4275 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4283 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x4289 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4291 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4309 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4317 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x4399 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x4423 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x4453 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x4461 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x4479 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x4509 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x5344 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x5351 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x5858 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5873 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5899 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5899 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x5910 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5915 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5923 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5931 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5964 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5965 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5973 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5980 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x5999 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x6072 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x6250 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x6323 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x6377 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x6535 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x6860 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x6878 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x6994 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7005 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7013 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7021 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7039 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7047 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7054 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7062 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7070 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7096 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7108 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7116 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7138 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7146 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7153 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7161 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7179 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7187 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7195 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7203 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7211 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7229 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7237 |

| Bank Name | Debtor | Type of Account | Last 4 Digits |
|---|---|---|---|
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7245 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7252 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7260 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7278 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7284 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7286 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7294 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7302 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7310 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7328 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7344 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7362 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x7372 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x7406 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x7448 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x7455 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7610 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x7628 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x7959 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x8002 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x8201 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x8316 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x8396 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x8404 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x8412 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x8438 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x9013 |
| Wells Fargo Bank, N.A. | American Freight Outlet Stores, LLC | Store Depository Account | x9047 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x9822 |
| Wells Fargo Bank, N.A. | American Freight, LLC | Store Depository Account | x9863 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Industries LLC | Store Depository Account | x0541 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Franchising, LLC | Collections Account | x1261 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Industries LLC | Concentration Account | x1831 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Industries LLC | Disbursement Account | x1849 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Industries LLC | Payroll Account | x1856 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Procurement Services, LLC | Disbursement Account | x3933 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Procurement Services, LLC | Concentration Account | x3967 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Franchising, LLC | Disbursement Account | x6255 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Industries LLC | Collections Account | x7733 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Franchising, LLC | Concentration Account | x8778 |
| JPMorgan Chase, N.A. | Vitamin Shoppe Global, LLC | Concentration Account | x9179 |
| US Bank | Vitamin Shoppe Industries LLC | Store Depository Account | x2237 |
| Bank of America, N.A. | Vitamin Shoppe Industries LLC | Store Depository Account | x8969 |
| Bank of America, N.A. | Valor Acquisition, LLC | Dormant Account | x8570 |
| Regions Financial Corporation | Vitamin Shoppe Industries LLC | Store Depository Account | x5438 |
| PNC Bank, N.A. | Vitamin Shoppe Industries LLC | Store Depository Account | x8844 |
| American Savings Bank | Vitamin Shoppe Industries LLC | Store Depository Account | x2750 |
| Keybank National Association | Vitamin Shoppe Industries LLC | Store Depository Account | x0048 |
| Truist Bank | Vitamin Shoppe Industries LLC | Store Depository Account | x3006 |
| Citizens Bank, N.A. | PSP Stores, LLC | Depository Account | x5621 |
| JPMorgan Chase, N.A. | PSP Group, LLC | Operating Account | x1010 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Depository Account | x1101 |
| JPMorgan Chase, N.A. | WNW Stores, LLC | Concentration Account | x1560 |
| JPMorgan Chase, N.A. | WNW Stores, LLC | Disbursement Account | x1610 |
| JPMorgan Chase, N.A. | WNW Stores, LLC | Depository Account | x1628 |
| JPMorgan Chase, N.A. | WNW Stores, LLC | Payroll Account | x1693 |
| JPMorgan Chase, N.A. | Pet Supplies Plus, LLC | Concentration Account | x2356 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Depository Account | x3179 |
| JPMorgan Chase, N.A. | PSP Franchising, LLC | Operating Account | x3418 |
| JPMorgan Chase, N.A. | PSP Distribution, LLC | Payroll Account | x4431 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Payroll Account | x5297 |
| JPMorgan Chase, N.A. | PSP Franchising, LLC | Operating Account | x6169 |
| JPMorgan Chase, N.A. | PSP Group, LLC | Payroll Account | x6300 |
| JPMorgan Chase, N.A. | Pet Supplies Plus, LLC | Concentration Account | x6821 |
| JPMorgan Chase, N.A. | Pet Supplies Plus, LLC | Concentration Account | x7212 |
| JPMorgan Chase, N.A. | PSP Franchising, LLC | Disbursement Account | x7386 |
| JPMorgan Chase, N.A. | PSP Franchising, LLC | Payroll Account | x7985 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Payroll Account | x8361 |

| Bank Name | Debtor | Type of Account | Last 4 Digits |
|---|---|---|---|
| JPMorgan Chase, N.A. | PSP Service Newco, LLC | Disbursement Account | x8553 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Depository Account | x8730 |
| JPMorgan Chase, N.A. | PSP Distribution, LLC | Depository Account | x8801 |
| JPMorgan Chase, N.A. | PSP Distribution, LLC | Disbursement Account | x8819 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Depository Account | x9016 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Depository Account | x9050 |
| JPMorgan Chase, N.A. | PSP Distribution, LLC | Letter of Credit Account | x9166 |
| JPMorgan Chase, N.A. | PSP Franchising, LLC | Collections Account | x9285 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Concentration Account | x9296 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Depository Account | x9304 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Depository Account | x9312 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Disbursement Account | x9320 |
| JPMorgan Chase, N.A. | PSP Stores, LLC | Depository Account | x9529 |
| JPMorgan Chase, N.A. | PSP Franchising, LLC | Depository Account | x9602 |
| JPMorgan Chase, N.A. | WNW Franchising, LLC | Operating Account | x9768 |
| JPMorgan Chase, N.A. | WNW Franchising, LLC | Collections Account | x9787 |
| JPMorgan Chase, N.A. | WNW Stores, LLC | Depository Account | x9839 |
| Keybank National Association | PSP Stores, LLC | Depository Account | x2833 |
| PNC Bank, N.A. | PSP Stores, LLC | Depository Account | x6682 |
| Bank of America, N.A. | Buddys Newco, LLC | Depository Account | x0697 |
| Bank of America, N.A. | Buddys Newco, LLC | Store Depository Account | x0723 |
| Bank of America, N.A. | Buddys Newco, LLC | Store Depository Account | x0749 |
| Bank of America, N.A. | Buddys Newco, LLC | Store Depository Account | x3695 |
| Bank of America, N.A. | Buddys Newco, LLC | Store Depository Account | x3705 |
| Bank of America, N.A. | Buddys Franchising & Licensing, LLC | Dormant Account | x4171 |
| Bank of America, N.A. | Buddys Newco, LLC | Store Depository Account | x7376 |
| First Bank of Clewiston | Buddys Newco, LLC | Store Depository Account | x5906 |
| JPMorgan Chase, N.A. | Buddys Newco, LLC | Depository Account | x1911 |
| JPMorgan Chase, N.A. | Buddys Newco, LLC | Disbursement Account | x2521 |
| JPMorgan Chase, N.A. | Buddys Newco, LLC | Disbursement Account | x2638 |
| JPMorgan Chase, N.A. | Buddys Newco, LLC | Operating Account | x2737 |
| Prosperity Bank | Buddys Newco, LLC | Store Depository Account | x9347 |
| TD Bank | Buddys Newco, LLC | Store Depository Account | x3478 |