# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Joint Administration Requested) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED PRIMING SUPERPRIORITY POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of Franchise Group, Inc. (the "***Lead Borrower***") and its

affiliated debtors and debtors in possession (collectively, the "***Debtors***") in the above-captioned

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Each capitalized term that is not defined herein shall have the meaning ascribed to such term in the DIP Credit Agreement (as defined below).

chapter 11 cases (the "***Chapter 11 Cases***"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 4001-2 of the Local Rules of Bankruptcy Procedure (the "***Local Bankruptcy Rules***") promulgated by the United States Bankruptcy Court for the District of Delaware (the "***Court***"), seeking entry of an interim order (this "***Interim Order***") and a Final Order (as defined below), among other things:

(a)    authorizing the DIP Loan Parties (as defined below) to obtain postpetition financing on a superpriority priming senior secured basis in the aggregate principal amount of up to $750,000,000, *plus* applicable fees and premiums (the "***DIP Facility***"), on the terms and conditions set forth in this Interim Order and that certain *Senior Secured Super-Priority Priming Term Loan Debtor-In-Possession Credit Agreement*, substantially in the form attached to this Interim Order as **Exhibit 1** (as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "***DIP Credit Agreement***", and, together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, filed and/or delivered in connection therewith, including the Loan Documents (as defined in the DIP Credit Agreement), the Master Consent (as defined in the DIP Credit Agreement), the Fronting Fee Letter (as defined in the DIP Credit Agreement), and the Syndication Procedures (as defined below) (each as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, together with the DIP Credit Agreement, collectively, the "***DIP Loan Documents***")), by and among the Lead Borrower, Franchise Group Newco PSP, LLC, Valor Acquisition, LLC, and Franchise Group Newco Intermediate AF, LLC, as borrowers, (collectively, the "***Borrowers***"), each of the direct and indirect subsidiaries of the Borrowers as secured guarantors (collectively, the "***OpCo Guarantors***"), and each of Freedom VCM Holdings, LLC, Freedom Receivables II, LLC, Freedom VCM Interco Holdings, Inc., and Freedom VCM Receivables, Inc., as secured guarantors solely with respect to the outstanding DIP Obligations in respect of the New Money DIP Loans (each as defined below) (collectively, the "***HoldCo Guarantors***," and together with the OpCo Guarantors, the "***Guarantors***", and together with the Borrowers, the "***DIP Loan Parties***"),[3] Wilmington Trust, National Association, as

---

[3]    For the avoidance of doubt, on an interim basis, Debtors Freedom VCM Interco, Inc. and Freedom VCM, Inc. shall not be DIP Loan Parties (as defined herein). As such, neither Debtor Freedom VCM Interco, Inc. nor Freedom VCM, Inc. shall use, or receive, Cash Collateral of the other Debtors, proceeds from DIP Collateral, or proceeds from the DIP Facility.

administrative agent and as collateral agent (in such capacities, the "***DIP Agent***"), and the lenders from time to time party thereto (collectively, the "***DIP Lenders***", and together with the DIP Agent, the "***DIP Secured Parties***"), comprised of the following:

(i)    a "new money" first-out delayed draw term loan facility in an aggregate principal amount of up to $250,000,000, *plus* applicable fees and premiums (the "***New Money DIP Facility***"; the commitments thereunder, the "***New Money DIP Commitments***", and the term loans extended thereunder, the "***New Money DIP Loans***"), pursuant to which (A) $100 million shall be borrowed in a single borrowing on the Effective Date (as defined in the DIP Credit Agreement) (the "***Interim New Money DIP Loans***"), (B) an aggregate principal amount not to exceed $150 million, as set forth in the Approved Budget and subject to the approval of the Required Lenders, shall be borrowed in a single borrowing on or after the entry of the Final Order, and (C) on or after the entry of the Confirmation Order, if the entire amount of the New Money Term Loan Commitments have not been fully drawn pursuant to the foregoing subclauses (A) and (B), an additional amount in a single borrowing in an aggregate principal amount not to exceed the New Money DIP Commitments, after accounting for the draws under the foregoing subclauses (A) and (B), may be drawn to the extent set forth in the Approved Budget and approved by the Required DIP Lenders in their sole discretion (collectively, together with the Interim New Money DIP Loans, the "***DIP Borrowings***", and, each, a "***DIP Borrowing***"), which New Money DIP Loans that are borrowed on the Effective Date shall initially be provided and funded through the Fronting Lender (as defined in the DIP Credit Agreement) in accordance with the terms of the DIP Loan Documents, on such date set forth in the foregoing clause (A) and, thereafter, such New Money DIP Loans and New Money DIP Commitments shall be assigned by the Fronting Lender in accordance with the Syndication Procedures, in the case of each of the foregoing, subject to the terms and conditions set forth in this Interim Order and in the DIP Loan Documents (including, without limitation, the Approved Budget (as defined below) and any conditions precedent to each of the DIP Borrowings set forth therein)); and

(ii)    (a) the conversion of up to $100,000,000 of the Prepetition First Lien Secured Obligations (as defined below) (together with accrued and unpaid interest thereon) into a second-out tranche of DIP Loans (such conversion, the "***Interim Roll Up***", and such converted amounts, the "***Interim Roll Up DIP Loans***"), pursuant to which, effective immediately upon the completion of the Syndication (as defined in the Syndication Procedures) of the DIP Facility pursuant to the Syndication Procedures substantially in the form attached to this Interim Order as **<u>Exhibit 2</u>** (the "<u>Syndication

Procedures"), on the Syndication Date (as defined in the Syndication Procedures), (a) up to $100,000,000 of the Prepetition First Lien Secured Obligations (together with accrued and unpaid interest thereon) held by the DIP Lenders (or any of their respective designated Approved Funds (as defined in the DIP Credit Agreement)) as of the Syndication Date will be, on the Syndication Date, automatically deemed "rolled up" and converted into the DIP Facility , on a cashless one dollars of Interim Roll Up DIP Loans for every dollar of principal amount of Interim New Money DIP Loans (*i.e.*, $100,000,000), based upon such Person's (or any of its designated Approved Funds) *pro rata* share of principal amount of Interim New Money DIP Loans, and shall automatically be deemed to be substituted and exchanged for, and shall be deemed to be, Interim Roll Up DIP Loans for all purposes hereunder as if originally funded on the Effective Date; and (b) subject to entry of the Final Order providing such relief, the conversion of up to $500,000,000, less any Initial Roll Up DIP Loans incurred prior to the entry of the Final Order, of the Prepetition First Lien Secured Obligations (as defined below) (together with accrued and unpaid interest thereon) into a second-out tranche of DIP Loans (such conversion, the "***Final Roll Up***", and such converted amounts, the "***Final Roll Up DIP Loans***" and together with the Interim Roll Up DIP Loans, the "***Roll Up DIP Loans***"), on a cashless basis of two dollars of Roll-Up DIP Loans for every dollar of the sum of (i) the principal amount of New Money DIP Loans funded on or prior to the Syndication Date and (ii) undrawn New Money DIP Commitments as of the Syndication Date (i.e., $250,000,000)), based upon such Person's (or any of its designated Approved Funds) *pro rata* share of principal amount of funded New Money DIP Loans and undrawn New Money DIP Commitments on the Syndication Date and as set forth in the Syndication Procedures, and shall automatically be deemed to be substituted and exchanged for, and shall be deemed to be, Final Roll Up DIP Loans for all purposes hereunder as if originally funded on the Effective Date;

(b)     authorizing the Borrowers to incur, and the Guarantors to jointly and severally, irrevocably and unconditionally, guarantee, on a super-priority basis, the payment in full in cash of all DIP Obligations (as defined below) (and solely with respect to the HoldCo Guarantors, only those DIP Obligations in respect of the New Money DIP Loans), in each case, in accordance with this Interim Order and the DIP Loan Documents;

(c)     authorizing the DIP Loan Parties to: (i) execute, deliver, and perform under the DIP Credit Agreement and each of the other DIP Loan Documents, including the Master Consent, the Fronting Fee Letter, the Syndication Procedures and any and all other documents related to the fronting or seasoning of the DIP Term Loans, and to perform all such other and further acts as may be required in connection therewith; (ii) incur all loans, advances, extensions of credit and financial accommodations, and pay all principal, interest, premiums or similar amounts, including, without limitation, the Backstop Premium (as defined in the DIP Credit

Agreement), the Commitment Premium (as defined in the DIP Credit Agreement), and the Exit Premium (as defined in the DIP Credit Agreement), fees, including the Fronting Fee (as defined in the DIP Credit Agreement), costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts, including without limitation, all "Secured Obligations" as defined in the DIP Credit Agreement (with respect to the HoldCo Guarantors, solely to the extent of "Secured Obligations" in respect of the New Money DIP Loans), whether or not such obligations arose before or after the Petition Date (as defined below), whenever the same shall become due, whether at stated maturity, by mandatory prepayment, declaration, acceleration or otherwise, in each case, in accordance with the applicable DIP Loan Documents and this Interim Order (collectively, the "***DIP Obligations***"); and (iii) perform such other and further acts as may be necessary, required or desirable to implement and effectuate the terms of this Interim Order, the DIP Loan Documents and the transactions contemplated hereunder and thereunder;

(d)     authorizing the DIP Loan Parties to grant to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, the DIP Liens (as defined below) in all DIP Collateral (as defined below), as set forth in this Interim Order, subject to the Carve Out, and subject to the relative priorities set forth in this Interim Order;

(e)     authorizing the DIP Loan Parties to grant to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, allowed super-priority administrative expense claims against each of the DIP Loan Parties, on a joint and several basis, in respect of all DIP Obligations, subject in each case to the Carve Out, as set forth in this Interim Order;

(f)     authorizing the DIP Loan Parties to use the proceeds of the DIP Facility, the DIP Collateral and the Prepetition Collateral (as defined below), including Cash Collateral (as defined below), in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents, including the Approved Budget, subject to any variances expressly permitted under the DIP Credit Agreement (the "***Permitted Variances***");

(g)     granting adequate protection, as and to the extent set forth herein, to the Prepetition Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their respective Prepetition Liens (as defined below) in the Prepetition Collateral (including Cash Collateral);

(h)     modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise, to the extent necessary, required or desirable to implement and effectuate the terms and provisions of this Interim Order and the DIP Loan Documents, as set forth herein, waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order, and providing for the immediate effectiveness of this Interim Order;

(i)     approving certain stipulations, waivers, and releases by the Debtors with respect to, *inter alia*, (i) the DIP Secured Parties, the DIP Loan Documents, the DIP Liens, and the DIP Obligations, (ii) subject to paragraph 24 hereof, the Prepetition Secured Parties, the Prepetition Loan Documents, the Prepetition Liens and the Prepetition Secured Obligations (each as defined below);

(j)     subject to entry of the Final Order granting such relief, approving the DIP Loan Parties' waiver of the right to surcharge the DIP Collateral as to the DIP Secured Parties, and the Prepetition Collateral as to the Prepetition Secured Parties, pursuant to section 506(c) of the Bankruptcy Code or otherwise, in each case, upon the terms set forth herein;

(k)     subject to entry of the Final Order granting such relief, approving (i) the DIP Loan Parties' waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral as to the DIP Secured Parties and, (ii) the DIP Loan Parties' waiver of the equitable doctrine of "marshaling" and the DIP Loan Parties' waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, with respect to the Prepetition Collateral as to the Prepetition Secured Parties, in each case, upon the terms set forth in this Interim Order; and

(l)     scheduling a final hearing (the "***Final Hearing***") on the Motion to consider entry of a final order (the "***Final Order***") authorizing the relief requested in the Motion on a final basis and approving the form of notice with respect to such Final Hearing, which order shall be in form and substance and on terms and conditions acceptable in all respects to the Required DIP Lenders and the DIP Agent.[4]

The Court, having considered the Motion, the DIP Loan Documents, the exhibits attached thereto, the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15] (the "***First Day Declaration***"), and the *Declaration of Christopher Grubb in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (a) Obtain Senior Secured Priming Superpriority Postpetition Financing and (b) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "***Grubb Declaration***", and together with the

---

[4]    As used herein, the term "***Required DIP Lenders***" means the "Required Lenders" under (and as defined in) the DIP Credit Agreement.

First Day Declaration, the "***DIP Declarations***"), the evidence submitted and arguments proffered or adduced at the interim hearings held before this Court on November 5, 2024 and November 6, 2024 (the "***Interim Hearings***"), and upon the record of the Chapter 11 Cases; and due and proper notice of the Interim Hearings having been given in accordance with Bankruptcy Rules 2002, 4001(b)-(d) and 9014 and all applicable Local Bankruptcy Rules; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearings established just cause for the relief granted herein; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors, represents a sound exercise of the Debtors' business judgment, and is necessary for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]**

A.      *Petition Date*. On November 3, 2024 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

---

[5]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      *Debtors in Possession*. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation*. As of the date hereof, the Office of the United States Trustee (the "***U.S. Trustee***") has not appointed an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "***Official Committee***").

D.      *Jurisdiction and Venue*. This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013 and 9014, and Local Bankruptcy Rules 2002-1, 4001-2 and 9013-1.

E.      *Debtors' Stipulations, Releases and Acknowledgements Regarding DIP Secured Parties.* In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lenders to provide the DIP Facility, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows (subject to paragraph 24 of this Interim Order, solely with respect to the Roll Up DIP Loans):

(a)      *No Control.* None of the DIP Secured Parties control the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted, or is a control person or insider (as defined in the Bankruptcy Code) of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Loan Documents or the transactions contemplated thereunder or hereunder.

(b)      *No Claims, Defenses, or Causes of Action.* As of the date hereof, there exist no claims, defenses or any other Cause of Action[6] of any nature or description whatsoever that may be asserted by the Debtors, their respective estates, predecessors, successors and assigns, against any of the DIP Secured Parties or any of their respective current, former and future affiliates, subsidiaries, funds or managed accounts, officers, directors, managers, members, equity holders, partners, principals, employees, representatives, agents, attorneys, advisors, consultants and other professionals, and the predecessors in interest, successors and assigns of each of the foregoing (collectively, the "***Representatives***"), in their capacities as such, in each case, arising from, in connection with, or related to this Interim Order, the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Loan Documents or the transactions contemplated thereunder or hereunder.

(c)      *Releases.* Effective as of the date of entry of this Interim Order, the Debtors, on behalf of themselves and their respective estates, to the maximum extent permitted by applicable law, hereby absolutely, unconditionally and irrevocably release and forever discharge and acquit the DIP Secured Parties and each of their respective Representatives (in their capacities as such) of and from any and all Causes of Action that the Debtors, their estates, predecessors, successors and assigns at any time had, now have or that their successors and assigns may have against any of the DIP Secured Parties and their respective Representatives for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Interim Order, in each case, arising under, in connection with or related to this Interim Order, the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Loan Documents or the transactions contemplated thereunder or hereunder, including, without limitation, (i) any claim or Cause of Action seeking avoidance, whether under chapter 5 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute, common law or otherwise ("***Avoidance Actions***"), (ii) any so-called "lender liability" or equitable subordination claims or defenses, (iii) any claims or Causes of Action arising under the Bankruptcy Code, (iv) any claims or Causes of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Loan Documents or the transactions contemplated thereunder or hereunder, or (v) any

---

[6]    The term "***Cause of Action***" means any action, cause of action, claim, counter-claim, cross-claim, defense, account, objection, challenge, offset, setoff, demand, liability, responsibility, dispute, remedy, indebtedness, obligation, guaranty, right, interest, indemnity, assertion, allegation, suit, controversy, proceeding, loss, damage, injury, reimbursement obligation, attorneys' fees, costs, expenses or judgments of every type, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, whether assertable directly or derivatively, including, without limitation, all legal and equitable theories of recovery, arising under the Bankruptcy Code or applicable non-bankruptcy law, whether local, state of federal U.S. or foreign common law, statute, law, rule, regulation, or by contract, of every nature or description whatsoever.

claim or Cause of Action with respect to the validity, enforceability, extent, amount, perfection or priority of the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Loan Documents or the transactions contemplated thereunder or hereunder; provided, however, that nothing contained in this subparagraph (c) shall relieve the DIP Secured Parties from fulfilling any of their commitments under, and in accordance with, the DIP Loan Documents.

F.      *Debtors' Stipulations, Releases and Acknowledgements Regarding Prepetition Secured Parties.* In requesting the DIP Facility and the use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lenders to provide the DIP Facility, and in exchange for and in recognition of the priming of the Prepetition Liens and the consent (and/or deemed consent) of the Prepetition Secured Parties to the use of their Cash Collateral, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows (subject to paragraph 24 of this Interim Order) (collectively, the admissions, stipulations, and acknowledgments and agreements set forth in this paragraph F, the "***Stipulations***"):

(a)      *Prepetition ABL Facility*

(i)      *Prepetition ABL Credit Agreement.* Pursuant to that certain *Third Amended and Restated Loan and Security Agreement*, dated as of March 10, 2021 (as amended, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date in accordance with the terms thereof, the "***Prepetition ABL Credit Agreement***", and together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded and/or delivered in connection therewith, including, without limitation, the Financing Agreements (as defined in the Prepetition ABL Credit Agreement) and the Prepetition ABL Intercreditor Agreement (as defined below), collectively, the "***Prepetition ABL Loan Documents***"), by and among the Borrowers, as borrowers (collectively, the "***Prepetition ABL Borrowers***"), certain subsidiaries of the Borrowers, as guarantors (the "***Prepetition ABL Guarantors***", and together with the Prepetition ABL Borrowers, the "***Prepetition ABL Loan Parties***"), JPMorgan Chase Bank, N.A., as agent (in such capacity, the "***Prepetition ABL Agent***"), and the lenders party thereto from time to time (collectively, the "***Prepetition ABL Lenders***", and together with the Prepetition ABL Agent, the "***Prepetition ABL Secured Parties***"), the Prepetition ABL Lenders provided a revolving credit facility (the "***Prepetition ABL Facility***") to the Prepetition ABL Loan Parties. Pursuant to the Prepetition ABL Loan Documents, each of the Prepetition ABL Guarantors, among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition ABL Secured Obligations (as defined below).

(ii)    *Prepetition ABL Secured Obligations.* As of the Petition Date, the Prepetition ABL Loan Parties were justly and lawfully indebted to the Prepetition ABL Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than $261.3 million on account of principal amounts outstanding under the Prepetition ABL Facility (including issued letters of credit), *plus* accrued but unpaid interest (including default interest, if applicable) thereon, *plus* all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Obligations" (as defined in the Prepetition ABL Credit Agreement), and all other amounts that may be due or owing under the Prepetition ABL Loan Documents (collectively, the "***Prepetition ABL Secured Obligations***").

(iii)    *Prepetition ABL Liens.* Pursuant to the Prepetition ABL Loan Documents, each of the Prepetition ABL Loan Parties granted to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, valid and properly perfected continuing liens and security interests in (the "***Prepetition ABL Liens***") substantially all of the assets of the Prepetition ABL Loan Parties, including, without limitation, all "Collateral" (as defined in the Prepetition ABL Credit Agreement) (collectively, the "***Prepetition ABL Collateral***") and the "ABL Priority Collateral" (as defined in the Prepetition ABL Intercreditor Agreement).

(b)    *Prepetition First Lien Facility.*

(i)    *Prepetition First Lien Credit Agreement.* Pursuant to that certain *First Lien Credit Agreement*, dated as of March 10, 2021 (as amended by that certain *First Amendment to First Lien Credit Agreement*, dated as of November 22, 2021, as further amended by that certain *Second Amendment to First Lien Credit Agreement*, dated as of August 1, 2022, as further amended by that certain *Third Amendment to First Lien Credit Agreement*, dated as of February 2, 2023, as further modified by that certain *Limited Waiver to First Lien Credit Agreement*, dated as of August 6, 2024, as further amended by that certain *Fourth Amendment to First Lien Credit Agreement*, dated as of August 19, 2024, as further modified by that certain *Agency Assignment & Amendment Agreement*, dated as of October 1, 2024, as further amended by that certain *Fifth Amendment to First Lien Credit Agreement*, dated as of October 15, 2024, and as may be further amended, restated, amended and restated, supplemented or otherwise modified prior to the Petition Date in accordance with the terms thereof, the " ***Prepetition First Lien Credit Agreement***", and together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded and/or delivered in connection therewith, including, without limitation, the Loan Documents (as defined in the Prepetition First Lien Credit Agreement) and the Prepetition Intercreditor Agreements (as defined below), collectively, the "***Prepetition First Lien Loan Documents***"), by and among the Borrowers, as borrowers (collectively, the "***Prepetition First Lien Borrowers***"), certain subsidiaries of the Prepetition First Lien Borrowers, as guarantors (collectively, the "***Prepetition First Lien Guarantors***", and together with the Prepetition First Lien Borrowers, collectively, the "***Prepetition First Lien Loan Parties***"), Wilmington Trust, National Association, as

administrative agent and collateral agent (in such capacities, the "***Prepetition First Lien Agent***"), and the lenders party thereto from time to time (collectively, the "***Prepetition First Lien Lenders***", and together with the Prepetition First Lien Agent, the "***Prepetition First Lien Secured Parties***"), the Prepetition First Lien Lenders provided a term loan credit facility (the "***Prepetition First Lien Facility***") to the Prepetition First Lien Loan Parties. Pursuant to the Prepetition First Lien Loan Documents, each of the Prepetition First Lien Guarantors, among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition First Lien Secured Obligations (as defined below).

(ii)    *Prepetition First Lien Secured Obligations*. As of the Petition Date, the Prepetition First Lien Loan Parties were justly and lawfully indebted to the Prepetition First Lien Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than $1,131.8 million on account of principal amounts (including capitalized interest added thereto) outstanding under the Prepetition First Lien Facility, *plus* accrued but unpaid interest (including default interest, if applicable) thereon, *plus* all fees, costs, expenses (including attorneys' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), including all "Secured Obligations" (as defined in the Prepetition First Lien Credit Agreement) and all other amounts that may be due or owing under the Prepetition First Lien Loan Documents (collectively, the "***Prepetition First Lien Secured Obligations***").

(iii)    *Prepetition First Lien Liens.* Pursuant to the Prepetition First Lien Loan Documents, the Prepetition First Lien Loan Parties granted to the Prepetition First Lien Agent, for the benefit of itself and the other Prepetition First Lien Secured Parties, properly perfected continuing liens and security interests in (collectively, the "***Prepetition First Lien Liens***") substantially all of the assets of the Prepetition First Lien Loan Parties, including, without limitation, all "Collateral" (as defined in the Prepetition First Lien Credit Agreement) (the "***Prepetition First Lien Collateral***") and the "Term Loan Priority Collateral" (as defined in the Prepetition ABL Intercreditor Agreement).

(c)    *Prepetition Second Lien Facility.*

(i)    *Prepetition Second Lien Credit Agreement.* Pursuant to that certain *Second Lien Credit Agreement*, dated as of March 10, 2021 (as amended by that certain *First Amendment to Second Lien Credit Agreement*, dated as of November 22, 2021, as further amended by that certain *Second Amendment to Second Lien Credit Agreement*, dated as of August 1, 2022, as further amended by that certain *Third Amendment to Second Lien Credit Agreement*, dated as of August 21, 2023, as further amended by that certain *Fourth Amendment to Second Lien Credit Agreement*, dated as of December 18, 2023, as further modified by that certain *Limited Waiver to Second Lien Credit Agreement*, dated as of August 6, 2024, as further amended by that certain *Fifth Amendment to Second Lien Credit Agreement*, dated as of August 19, 2024, and as may be further amended, restated, amended and restated, supplemented or otherwise modified prior to the Petition Date in accordance with the terms thereof, the " ***Prepetition Second Lien Credit Agreement***", and

together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded and/or delivered in connection therewith, including, without limitation, the Loan Documents (as defined in the Prepetition Second Lien Credit Agreement) and the Prepetition Intercreditor Agreements (as defined below), collectively, the "***Prepetition Second Lien Loan Documents***"), by and among the Borrowers, as borrowers (collectively, the "***Prepetition Second Lien Borrowers***"), certain subsidiaries of the Prepetition Second Lien Borrowers, as guarantors (collectively, the "***Prepetition Second Lien Guarantors***", and together with the Prepetition Second Lien Borrowers, collectively, the "***Prepetition Second Lien Loan Parties***"), Alter Domus (US) LLC, as administrative agent and collateral agent (in such capacities, the "***Prepetition Second Lien Agent***"), and the lenders party thereto from time to time (collectively, the "***Prepetition Second Lien Lenders***", and together with the Prepetition Second Lien Agent, the "***Prepetition Second Lien Secured Parties***"), the Prepetition Second Lien Lenders provided a term loan credit facility (the "***Prepetition Second Lien Facility***") to the Prepetition Second Lien Loan Parties. Pursuant to the Prepetition Second Lien Loan Documents, each of the Prepetition Second Lien Guarantors, among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition Second Lien Secured Obligations (as defined below).

(ii)     *Prepetition Second Lien Secured Obligations*. As of the Petition Date, the Prepetition Second Lien Loan Parties were justly and lawfully indebted to the Prepetition Second Lien Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than $125.0 million on account of principal amounts outstanding under the Prepetition Second Lien Facility, *plus* $19.5 million outstanding on account of the Prepetition Second Lien Loan Parties' guaranty of the Secured Holdco Guarantee Obligations (as defined in the Prepetition Second Lien Credit Agreement) pursuant to that certain *Supplement No. 1 to the Guarantee Agreement*, dated as of August 19, 2024, and that certain *Fifth Amendment to Second Lien Credit Agreement*, dated as of August 19, 2024, *plus* all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), *plus* accrued but unpaid interest (including default interest, if applicable) thereon; including all "Secured Obligations" (as defined in the Prepetition Second Lien Credit Agreement) and all other amounts that may be due or owing under the Prepetition Second Lien Loan Documents (the "***Prepetition Second Lien Secured Obligations***").

(iii)    *Prepetition Second Lien Liens.* Pursuant to the Prepetition Second Lien Loan Documents, the Prepetition Second Lien Loan Parties granted to the Prepetition Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Secured Parties, properly perfected continuing liens and security interests in (collectively, the "***Prepetition Second Lien Liens***") substantially all of the assets of the Prepetition Second Lien Loan Parties, including, without limitation, all "Collateral" (as defined in the Prepetition Second Lien Credit Agreement) (the "***Prepetition Second Lien Collateral***") and the "Term Loan Priority Collateral" (as defined in the Prepetition ABL Intercreditor Agreement).

(d)      *Prepetition Second Lien Sidecar Facility.*

(i)      *Prepetition Second Lien Sidecar Credit Agreement.* Pursuant to that certain *Sidecar Pari Passu Second Lien Credit Agreement*, dated as of August 21, 2023 (as amended by the *First Amendment to Sidecar Pari Passu Second Lien Credit Agreement*, dated as of December 18, 2023, as further amended by the *Second Amendment to Sidecar Pari Passu Second Lien Credit Agreement*, dated as of August 19, 2024, as further amended by the *Third Amendment to Sidecar Pari Passu Second Lien Credit Agreement*, dated as of October 15, 2024, and as may be further amended, restated, amended and restated, supplemented or otherwise modified prior to the Petition Date in accordance with the terms thereof, the " ***Prepetition Second Lien Sidecar Credit Agreement***", and together with all other agreements, guarantees, pledge, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded and/or delivered in connection therewith, including, without limitation, and the Loan Documents (as defined in the Prepetition Second Lien Sidecar Credit Agreement), collectively, the "***Prepetition Second Lien Sidecar Loan Documents***"), by and among the Borrowers, as borrowers (collectively, the "***Prepetition Second Lien Sidecar Borrowers***"), certain subsidiaries of the Prepetition Second Lien Sidecar Borrowers, as guarantors (collectively, the "***Prepetition Second Lien Sidecar Guarantors***", and together with the Prepetition Second Lien Sidecar Borrowers, collectively, the "***Prepetition Second Lien Sidecar Loan Parties***"), Alter Domus (US) LLC, as administrative agent and collateral agent (in such capacities, the "***Prepetition Second Lien Sidecar Agent***"), and the lenders party thereto from time to time (collectively, the "***Prepetition Second Lien Sidecar Lenders***", and together with the Prepetition Second Lien Sidecar Agent, the "***Prepetition Second Lien Sidecar Secured Parties***"), the Prepetition Second Lien Sidecar Lenders provided a term loan credit facility (the "***Prepetition Second Lien Sidecar Facility***") to the Prepetition Second Lien Sidecar Loan Parties. Pursuant to the Prepetition Second Lien Sidecar Loan Documents, each of the Prepetition Second Lien Sidecar Guarantors, among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition Second Lien Sidecar Secured Obligations (as defined below).

(ii)      *Prepetition Second Lien Sidecar Secured Obligations.* As of the Petition Date, the Prepetition Second Lien Sidecar Loan Parties were justly and lawfully indebted to the Prepetition Second Lien Sidecar Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of $0 on account of all amounts outstanding under the Prepetition Second Lien Sidecar Facility inclusive of all "Secured Obligations" (as defined in the Prepetition Second Lien Sidecar Credit Agreement) and all other amounts that may be due or owing under the Prepetition Second Lien Sidecar Loan Documents (collectively, the "***Prepetition Second Lien Sidecar Secured Obligations***").

(iii)      *Prepetition Second Lien Sidecar Liens.* Pursuant to the Prepetition Second Lien Sidecar Loan Documents, the Prepetition Second Lien Sidecar Loan Parties granted to the Prepetition Second Lien Sidecar Agent, for the benefit of itself and the other Prepetition Second Lien Sidecar Secured Parties, properly perfected continuing liens and security interests in (collectively, the "***Prepetition Second Lien Sidecar Liens***")

substantially all of the assets of the Prepetition Second Lien Sidecar Loan Parties, including, without limitation, all "Collateral" (as defined in the Prepetition Second Lien Sidecar Credit Agreement) (the "***Prepetition Second Lien Sidecar Collateral***") and the "Term Loan Priority Collateral" (as defined in the Prepetition ABL Intercreditor Agreement).

(e)     *Certain Definitions.*

(i)     "***Prepetition Agents***" means the Prepetition ABL Agent, the Prepetition First Lien Agent, the Prepetition Second Lien Agent and the Prepetition Second Lien Sidecar Agent, in their respective capacities as such.

(ii)     "***Prepetition Collateral***" means the Prepetition ABL Collateral, the Prepetition First Lien Collateral, the Prepetition Second Lien Collateral, and the Prepetition Second Lien Sidecar Collateral, respectively.

(iii)     "***Prepetition Liens***" means the Prepetition ABL Liens, the Prepetition First Lien Liens, the Prepetition Second Lien Liens, and the Prepetition Second Lien Sidecar Liens, respectively.

(iv)     "***Prepetition Loan Documents***" means the Prepetition ABL Loan Documents, the Prepetition First Lien Loan Documents, the Prepetition Second Lien Loan Documents, and the Prepetition Second Lien Sidecar Loan Documents, respectively.

(v)     "***Prepetition Loan Parties***" means the Prepetition ABL Loan Parties, the Prepetition First Lien Loan Parties, the Prepetition Second Lien Loan Parties, and the Prepetition Second Lien Sidecar Loan Parties, respectively.

(vi)     "***Prepetition Secured Obligations***" means the Prepetition ABL Secured Obligations, the Prepetition First Lien Secured Obligations, the Prepetition Second Lien Secured Obligations, and the Prepetition Second Lien Sidecar Secured Obligations, respectively.

(vii)     "***Prepetition Secured Parties***" means the Prepetition ABL Secured Parties, the Prepetition First Lien Secured Parties, the Prepetition Second Lien Secured Parties, and the Prepetition Second Lien Sidecar Secured Parties, in their respective capacities as such.

(f)     *Validity and Enforceability of Prepetition Secured Obligations and Prepetition Liens.* As of the Petition Date, (i) the Prepetition Liens in the Prepetition Collateral (A) have been properly recorded and were valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Prepetition Collateral, (B) were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or the financial commitments and other financial accommodations or consideration secured or obtained thereby, and (C) are senior with priority over any and all other liens on or security interests in the Prepetition Collateral, subject only to (1) liens and security interests that

were expressly permitted to be incurred under the Prepetition Loan Documents (solely to the extent such permitted liens and security interests were (x) in existence on the Petition Date, (y) valid, non-avoidable and properly perfected as of the Petition Date (or were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), and (z) senior in priority to the Prepetition Liens (such liens described in this paragraph F(f)(i)(C)(1), the "***Permitted Prior Liens***")),[7] and (2) the relative rights and priorities set forth in the Prepetition Intercreditor Agreements; (ii) the Prepetition Secured Obligations constitute legal, valid, non-avoidable and binding obligations of each of the Prepetition Loan Parties, enforceable in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); (iii) no portion of the Prepetition Liens or the Prepetition Secured Obligations, and no payments made at any time to any of the Prepetition Secured Parties, is subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including, without limitation, any Avoidance Action or any claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or any other claim or Cause of Action of any nature or description, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, any other domestic or foreign statute, law, rule or regulation or otherwise, in each case, that may be asserted by the Debtors, their respective estates or any other person or entity; and (iv) the Prepetition Secured Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code against each of the Prepetition Loan Parties and their respective estates.

(g)    *Enforceability of the Prepetition Intercreditor Agreements.*

(i)    The Prepetition ABL Agent, the Prepetition First Lien Agent, the Prepetition Second Lien Agent and the Prepetition Second Lien Sidecar Agent are party to that certain *Amended and Restated Intercreditor Agreement*, dated as of November 22, 2021 (as amended, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date in accordance with the terms thereof, the "***Prepetition ABL Intercreditor Agreement***"), which sets forth the relative payment and lien priorities and other rights and remedies of the Prepetition ABL Secured Parties, on the one hand, and the Prepetition First Lien Secured Parties, the Prepetition Second Lien Secured Parties and the Prepetition Second Lien Sidecar Secured Parties, on the other hand, with respect to "Common Collateral" (as defined in the Prepetition ABL Intercreditor Agreement). Pursuant to the Prepetition ABL Intercreditor Agreement, the parties thereto

---

[7]    Nothing contained herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing contained herein shall prejudice the rights of any party in interest, including, but not limited to the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, or any Official Committee, in each case, to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien (subject to the terms of this Interim Order). For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Prior Lien.

agreed, among other things: (a) that the Prepetition ABL Liens on the ABL Priority Collateral are senior to the Prepetition First Lien Liens, Prepetition Second Lien Liens, and Prepetition Second Lien Sidecar Liens on such collateral, and (b) that the Prepetition First Lien Liens, Prepetition Second Lien Liens, and Prepetition Second Lien Sidecar Liens on the Term Loan Priority Collateral are senior to the Prepetition ABL Liens on such collateral.

(ii)     The Prepetition First Lien Agent, the Prepetition Second Lien Agent and the Prepetition Second Lien Sidecar Agent are party to that certain *Amended and Restated First Lien/Second Lien Intercreditor Agreement*, dated as of November 22, 2021 (as amended, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date in accordance with the terms thereof, the "***Prepetition 1L/2L Intercreditor Agreement***", and together with the Prepetition ABL Intercreditor Agreement, collectively, the "***Prepetition Intercreditor Agreements***"), which sets forth the relative payment and lien priorities and other rights and remedies of the Prepetition First Lien Secured Parties, on the one hand, and the Prepetition Second Lien Secured Parties and the Prepetition Second Lien Sidecar Secured Parties, on the other hand, with respect to "Common Collateral" (as defined in the Prepetition 1L/2L Intercreditor Agreement).

(iii)    Pursuant to section 510(a) of the Bankruptcy Code, the Prepetition Intercreditor Agreements, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Loan Documents, (A) shall remain in full force and effect, (B) continue to govern the relative obligations, priorities, rights, and remedies of the Prepetition Secured Parties with respect to any shared or common Prepetition Collateral, and (C) shall not be deemed to be amended, altered, or modified by the terms of this Interim Order except to the extent expressly set forth herein.

(h)     *No Claims, Defenses, or Causes of Action.* As of the date hereof, there exist no claims, defenses or any other Cause of Action of any nature or description whatsoever that may be asserted by the Debtors, their respective estates, predecessors, successors and assigns, against any of the Prepetition Secured Parties or any of their respective Representatives, in each case, arising from, in connection with, or related to this Interim Order, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Loan Documents or the Prepetition Collateral.

(i)     *Releases.* Effective as of the date of entry of this Interim Order, the Debtors, on behalf of themselves and their respective estates, to the maximum extent permitted by applicable law, hereby absolutely, unconditionally and irrevocably release and forever discharge and acquit the DIP Secured Parties, the Prepetition First Lien Secured Parties, the Prepetition ABL Secured Parties, and each of their respective Representatives (in their capacities as such) of and from any and all Causes of Action that the Debtors, their estates, predecessors, successors and assigns at any time had, now have or that their successors and assigns may have against any of the Prepetition Secured Parties and their respective Representatives for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Interim Order, in each case, arising under, in connection with or related to this Interim Order, the DIP Facility, the DIP Loan Documents,

the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Prepetition Collateral, the Prepetition Secured Obligations or the Prepetition Loan Documents, the Adequate Protection Liens (as defined below), the Adequate Protection Claims (as defined below), the Adequate Protection Obligations (as defined below), the Prepetition Loan Documents, or the transactions contemplated thereunder or hereunder, including, without limitation, (i) any Avoidance Actions, (ii) any so-called "lender liability" or equitable subordination claims or defenses, (iii) any claims or Causes of Action arising under the Bankruptcy Code, (iv) any claims or Causes of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to the Prepetition Liens, the Prepetition Collateral, the Prepetition Secured Obligations or the Prepetition Loan Documents, or (v) any claim or Cause of Action with respect to the validity, enforceability, extent, amount, perfection or priority of the DIP Facility, the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Collateral or the Prepetition Loan Documents.

(j)     *Cash Collateral.* Any and all of the DIP Loan Parties' cash, whether existing on the Petition Date or thereafter, wherever located (including, without limitation, all cash, cash equivalents and other amounts on deposit or maintained by the DIP Loan Parties in any accounts with any depositary institution), whether as original Prepetition Collateral, arising from the sale or other disposition of Prepetition Collateral, or proceeds of other Prepetition Collateral, or cash, rents, income, offspring, products, proceeds or profits generated from the Prepetition Collateral, constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "***Cash Collateral***").

G.     **Findings Regarding Corporate Authority.**

(a)     Each of the DIP Loan Parties has all requisite power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

H.     **Findings Regarding DIP Facility and Use of Cash Collateral.**

(a)     *Good Cause*. Good and sufficient cause has been shown for the entry of this Interim Order.

(b)     *Need for Postpetition Financing and Use of Cash Collateral*. The Debtors have an immediate and critical need to use Cash Collateral and to obtain postpetition financing pursuant to the DIP Facility, in each case, on an interim basis, in order to, among other things,

permit the orderly continuation and operation of their businesses, maintain business relationships with customers, vendors and suppliers, make payroll, pay the costs of administering the Chapter 11 Cases and satisfy other working capital and operational needs of the Debtors, in the case of each of the foregoing, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including the Approved Budget (subject to Permitted Variances). The Debtors' access to sufficient working capital and liquidity through the incurrence of loans and other financial accommodations under the DIP Facility and the use of Cash Collateral is necessary and vital to, among other things, preserve and maintain the going concern values of the Debtors. The Debtors and their estates will be immediately and irreparably harmed if the financing under the DIP Facility is not obtained pursuant to the terms of this Interim Order and, as applicable, the DIP Loan Documents, or if the Debtors are unable to use Cash Collateral. Entry of this Interim Order is necessary and appropriate to avoid such harm to the Debtors, their estates, and other parties in interest.

(c)     *No Credit Available on More Favorable Terms.* The Debtors are unable to obtain financing or other financial accommodations from sources other than the DIP Lenders on terms more favorable than those provided under the DIP Facility, the DIP Loan Documents and this Interim Order. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors are also unable to obtain adequate secured credit for money borrowed under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the DIP Loan Parties granting (a) the DIP Liens on all DIP Collateral, (b) the DIP Superpriority Claims, (c) the rights, benefits and protections to the DIP Secured Parties, and (d) the Adequate Protection Liens, Adequate Protection Claims and other Adequate Protection Obligations to the Prepetition Secured Parties, in the case of each of the

foregoing, upon the terms and conditions set forth in this Interim Order and in the DIP Loan Documents. After considering all available alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best source of debtor-in-possession financing available to them at this time and is in the best interests of all of their stakeholders.

(d)     *Use of Proceeds of DIP Facility and Cash Collateral*. As a condition to providing the DIP Facility and their consent to the use of Cash Collateral, each of the DIP Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition First Lien Secured Parties (as applicable) requires, and the Debtors have agreed, that all proceeds of the DIP Loans and all Cash Collateral shall be used and/or applied solely for the purposes expressly permitted in the Approved Budget (subject to Permitted Variances), including, without limitation, (i) to pay the costs of administration of the Chapter 11 Cases, (ii) for general corporate and working capital purposes, (iii) to pay adequate protection payments to the extent set forth herein, and (iv) to pay professional fees and expenses in accordance with this Interim Order, in the case of each of the foregoing, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including the Approved Budget (subject to Permitted Variances).

(e)     *Adequate Protection*. Pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection against any post-petition diminution in value of the Prepetition Secured Parties' respective liens and interests in the Prepetition Collateral (including Cash Collateral) resulting from, among other things, (i) the use, sale or lease by the Debtors of such collateral, (ii) the market value decline of such collateral, (iii) the use of Cash Collateral by each of the Debtors, (iv) the imposition of the automatic stay, (v) the subordination of the Prepetition Liens and Prepetition Secured Obligations to the Carve

Out, the DIP Liens and the DIP Obligations, in each case, as set forth in this Interim Order, and (vi) any other act or omission which causes diminution in the value of their respective liens or interests in the Prepetition Collateral (collectively, the "***Diminution in Value***"), as set forth in this Interim Order and the DIP Loan Documents; provided, however, that nothing in this Interim Order shall (x) be construed as the affirmative consent by any of the Prepetition ABL Secured Parties or the Prepetition First Lien Secured Parties for the use of Cash Collateral or other Prepetition Collateral other than on the terms expressly set forth in this Interim Order (including the Approved Budget), (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the DIP Collateral or the Prepetition Collateral (whether senior, *pari passu* or junior) other than on the terms expressly set forth in this Interim Order, or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties (subject to the Prepetition Intercreditor Agreements) to seek new, different or additional adequate protection after the date hereof or assert the interests of any of the Prepetition Secured Parties. Based on the Motion, the DIP Declarations and the other evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearings, the terms of the adequate protection arrangements and the use of Prepetition Collateral (including Cash Collateral) set forth herein are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

(f)     *Consent*. Certain of the Prepetition Secured Parties have consented to the Debtors' use of Prepetition Collateral (including Cash Collateral) solely to the extent expressly permitted under the Approved Budget (subject to Permitted Variances), the DIP Loan Parties' entry into the DIP Facility, the incurrence of the DIP Liens, the DIP Obligations, the DIP

Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims and the other Adequate Protection Obligations, in each case, in accordance with and subject to the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

(g)     *Limitation on Charging Expenses against Collateral; Section 552(b) Waiver*. As a material inducement to the DIP Lenders' agreement to provide the DIP Facility, and in exchange for (i) the DIP Secured Parties' agreement to subordinate their DIP Liens to the Carve Out and Permitted Prior Liens, (ii) the Prepetition Secured Parties' agreement to subordinate their Prepetition Liens and Adequate Protection Liens to the DIP Liens and the Carve Out to the extent set forth herein, and (iii) certain of the Prepetition Secured Parties' consent to the use of Prepetition Collateral (including Cash Collateral), (a) subject to entry of the Final Order granting such relief, the DIP Loan Parties have waived their right to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Secured Parties, the Prepetition First Lien Secured Parties or the Prepetition ABL Secured Parties upon, the DIP Collateral, the Prepetition ABL Collateral or the Prepetition First Lien Collateral (as applicable), whether pursuant to section 506(c) of the Bankruptcy Code or otherwise, (b) subject to entry of the Final Order granting such relief, the DIP Secured Parties, Prepetition First Lien Secured Parties and the Prepetition ABL Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the Prepetition ABL Collateral or the Prepetition First Lien Collateral (as applicable) (other than with respect to Debtor Freedom VCM Holdings, LLC as specifically set forth in paragraph 33 below), and (c) subject to entry of the Final Order granting such relief, each of the Prepetition First Lien Secured Parties and Prepetition ABL Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and in no event shall the "equities of the case"

exception in section 552(b) of the Bankruptcy Code apply to the Prepetition First Lien Secured Parties, the Prepetition ABL Secured Parties or the Prepetition First Lien Collateral or the Prepetition ABL Collateral, in the case of each of the foregoing, to the extent set forth herein.

(h)     *Proper Exercise of Business Judgment*. Based on the Motion, the DIP Declarations, and the record presented to the Court at the Interim Hearings, (a) the terms of the DIP Facility, (b) the terms of adequate protection granted to the Prepetition Secured Parties hereunder, and (c) the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order, (i) were negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties and the Prepetition Secured Parties, (ii) are fair, reasonable, and the best available to the Debtors under the circumstances, (iii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iv) are supported by reasonably equivalent value and fair consideration. Absent access to the DIP Facility and the ability to continue to use Cash Collateral upon the terms set forth in this Interim Order, the DIP Loan Documents, including the Approved Budget (subject to Permitted Variances), the Debtors, their estates, their creditors and other parties-in-interest will be seriously, immediately and irreparably harmed.

(i)     *Good Faith*. The DIP Facility and the terms of the DIP Loan Documents, the terms on which the Prepetition First Lien Secured Parties and the Prepetition ABL Secured Parties have consented to the Debtors' use of Cash Collateral, and this Interim Order have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, the Prepetition Secured Parties and each of their respective Representatives, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Facility, the DIP Loan Documents and this Interim Order, including, without limitation, all loans, advances,

extensions of credit and other financial accommodations made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents, shall each be deemed to have been extended by the DIP Secured Parties, the Prepetition Secured Parties (as applicable) and each of their respective affiliates, in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by sections 364(e) of the Bankruptcy Code, and each of the claims, liens and security interests, rights, remedies, benefits and protections granted to the DIP Secured Parties and the Prepetition Secured Parties (and each of their successors and assigns thereof) pursuant to this Interim Order and the DIP Loan Documents (including, without limitation, all DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Claims, Adequate Protection Obligations, and adequate protection payments provided under this Interim Order), shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal.

(j) *Initial Budget*. The Debtors have prepared and delivered to the DIP Secured Parties the initial itemized cash flow forecast set forth on **Exhibit 3** attached hereto (the "***Initial Budget***"), reflecting, on a line item, cumulative and aggregate basis, (i) the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures (including debt service costs) expected to be incurred or made, by the Debtors, in each case, for each calendar week during the period from the calendar week ending on the Saturday of the calendar week in which the Petition Date occurs through and including the end of the thirteenth (13th) calendar week thereafter, (ii) the sum of weekly unused availability under the DIP Facility, plus unrestricted cash on hand, (iii) the weekly outstanding principal balance of amounts outstanding under the DIP Facility, and (iv) a professional fee accrual budget with respect to the

anticipated professional fees and expenses to be incurred by each applicable professional advisor during such period. The Initial Budget is an integral part of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties (as applicable) are relying, in part, upon the Debtors' agreement to comply (subject to Permitted Variances) with the Approved Budget, in determining to enter into the DIP Facility and to allow the Debtors' use of proceeds of the DIP facility and Cash Collateral in accordance with the terms of this Interim Order and the DIP Loan Documents.

(k)    *Notice*. Notice of the Motion and the Interim Hearings constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearings or the entry of this Interim Order shall be required.

(l)    *Immediate Entry.* The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and 6003 and the Local Bankruptcy Rules. Unless the relief set forth in this Interim Order is granted, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and the use of Prepetition Collateral (including Cash Collateral) upon the terms set forth in this Interim Order and the DIP Loan Documents are in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) and the Local Bankruptcy Rules. The Motion and this Interim Order comply with the requirements of Bankruptcy Local Rule 4001-1(b).

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the DIP Declarations, the evidence adduced at the Interim Hearings and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      *Motion Granted.* The Motion is hereby granted, on an interim basis, upon the terms and conditions set forth in this Interim Order and the DIP Loan Documents. Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights inconsistent with this Interim Order, are hereby denied and overruled. This Interim Order shall become effective and enforceable immediately upon its entry.

2.      *Authorization of DIP Facility and DIP Loan Documents.*

(a)      *Authorization of DIP Loan Documents.* The DIP Facility is hereby approved on an interim basis. The DIP Loan Parties are hereby authorized to (i) execute, deliver and perform all of their obligations under the DIP Loan Documents and this Interim Order; and (ii) execute, deliver and perform under any and all other instruments, certificates, agreements and other documents (including, without limitation, the execution and/or recordation of collateral, pledge and security documents, mortgages and deeds of trust (if applicable) and financing statements), and perform all such other and further acts that, may be necessary, required or desirable for the Debtors to perform their obligations under the DIP Facility, the DIP Loan Documents and this Interim Order and to implement the transactions contemplated thereunder and hereunder.

(b)      *Authorization to Borrow; Use of Cash Collateral.* The Borrowers are hereby authorized to borrow, and the Guarantors are hereby authorized to guarantee, on a joint and

several basis, up to the principal amount of $100 million (*plus* applicable interest, premiums (including, without limitation, the Backstop Premium and the Commitment Premium), fees (including professional fees and expenses), costs, expenses, charges and other amounts payable hereunder and under the DIP Loan Documents), subject to the terms and conditions (including any conditions precedent to such DIP Borrowing) set forth in the DIP Loan Documents and this Interim Order. The DIP Loan Parties are hereby authorized to use the proceeds of all DIP Borrowings under the DIP Facility and all Cash Collateral solely in the manner and for the purposes expressly permitted in the Approved Budget (subject to Permitted Variances), the DIP Loan Documents and this Interim Order; provided that, notwithstanding anything to the contrary in this Interim Order or in any DIP Loan Document, the guarantees provided by the HoldCo Guarantors shall be limited to an amount not to exceed the outstanding principal balance (together with any interest, fees, reimbursement, indemnity and other amounts owed in respect thereof) of the New Money DIP Loans at any time outstanding.

(c)     *Roll Up DIP Loans.* The Interim Roll Up is hereby approved to the extent set forth herein. Effective immediately upon entry of this Interim Order and the completion of the Syndication on the Syndication Date pursuant to the Syndication Procedures, up to $100,000,000 of the Prepetition First Lien Secured Obligations (together with accrued and unpaid interest thereon) held by the DIP Lenders (or any of their respective designated Approved Funds) as of the Syndication Date will be, on the Syndication Date, automatically deemed "rolled up" and converted into the DIP Facility, on a cashless one dollar of Interim Roll Up DIP Loans for every dollar of principal amount of Interim New Money DIP Loans (i.e., $100,000,000), based upon such Person's (or any of its designated Approved Funds) *pro rata* share of principal amount of Interim New Money DIP Loans, and shall automatically be deemed to be substituted and

exchanged for, and shall be deemed to be, Roll Up DIP Loans for all purposes hereunder, and shall not be subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action of any nature or description whatsoever (other than as set forth in paragraph 24 hereof), and which Roll Up DIP Loans shall be due and payable in accordance with the terms and conditions set forth in the DIP Credit Agreement as if originally funded thereunder on the Effective Date. From and after the Effective Date, the outstanding aggregate amount of Prepetition First Lien Secured Obligations held by each such DIP Lender (or any of its designated Approved Funds) shall be automatically and irrevocably deemed reduced by the amount of the Interim Roll Up DIP Loans held by such DIP Lender (or any of its designated Approved Funds).  Subject to entry of the Final Order providing such relief, the conversion of up to $500,000,000, less any Initial Roll Up DIP Loans incurred prior to the entry of the Final Order, of the Prepetition First Lien Secured Obligations will be, on the date of the entry of the Final Order, automatically deemed "rolled up" and converted into the DIP Facility, on a cashless basis of two dollars of Roll-Up DIP Loans for every dollar of the sum of (i) the principal amount of New Money DIP Loans funded on or prior to the Syndication Date and (ii) undrawn New Money  DIP Commitments as of the Syndication Date (i.e., $250,000,000)), based upon such Person's (or any of its designated Approved Funds) pro rata share of principal amount of New Money DIP Loans and New Money DIP Commitments, and shall automatically be deemed to be substituted and exchanged for, and shall be deemed to be, Roll Up DIP Loans.  From and after the date of the entry of the Final Order, the outstanding aggregate amount of Prepetition First Lien Secured Obligations held by each such DIP Lender (or any of its designated Approved Funds) shall be automatically and irrevocably deemed reduced by the amount of the Final Roll Up DIP Loans held by such DIP Lender (or any of its designated Approved Funds).

(d)    *Syndication; Interim Roll Up Process.* The DIP Loan Parties, the Debtors' claims agent, the DIP Secured Parties and the Prepetition First Lien Agent are authorized and directed to take any and all actions as may be necessary or appropriate to effectuate (i) the Syndication of the DIP Facility pursuant to the Syndication Procedures, and (ii) the Interim Roll Up of a portion of the Prepetition First Lien Secured Obligations held by the DIP Lenders (or any of their respective designated Approved Funds) as of the Syndication Date into the DIP Facility, including, without limitation, the assignment, transfer or designation of such Prepetition First Lien Secured Obligations to be rolled into the Interim Roll Up DIP Loans pursuant to any procedure that facilitates the cancellation of such Prepetition First Lien Secured Obligations in connection with the Interim Roll Up. The DIP Loan Parties, the Debtors' claims agent, the DIP Secured Parties and the Prepetition First Lien Agent are authorized and directed to take such further actions as are necessary or appropriate to implement the Interim Roll Up. In furtherance of the foregoing, the Prepetition First Lien Agent is authorized and directed in connection with the Interim Roll Up to cancel a corresponding amount of the Prepetition First Lien Secured Obligations in the Register (as defined in the Prepetition First Lien Credit Agreement) maintained by it as directed by Lender Advisors.

(e)    *DIP Fees and Expenses; Indemnification.* The DIP Loan Parties are hereby authorized and directed to pay, as and when due, any and all (i) fees, premiums or other payments payable under the DIP Loan Documents (including, without limitation, fees payable under the Syndication Procedures, the Fronting Fee, the Backstop Premium (which shall be paid in kind and added the principal amount of the New Money DIP Loans), the Commitment Premium (which shall be paid in kind and added the principal amount of the New Money DIP Loans), and the Exit Premium (which shall only be earned with respect to New Money DIP Loans funded under the

DIP Credit Agreement)), and in any separate letter agreements between any of the DIP Loan Parties, on the one hand, and the DIP Agent and/or the DIP Lenders, on the other hand, including, without limitation, put option premiums, "seasoning" fees, commitment payments, unused facility payments, early termination, prepayment or exit payments, unused facility payments, administrative agent's, collateral agent's or trustee's fees, or other amounts referred to therein, (ii) amounts due (or that may become due) to the "Indemnitees" (as defined in the DIP Credit Agreement) in respect of the indemnification obligations under the DIP Loan Documents, which are hereby approved, and (iii) costs, expenses and disbursements of the DIP Secured Parties payable under the DIP Loan Documents and this Interim Order, including, without limitation, the reasonable and documented fees and expenses of (A) Seward & Kissel LLP, as counsel to the DIP Agent, (B) one local counsel to the DIP Agent, (C) Paul Hastings LLP, as counsel to the ad hoc group of certain Prepetition First Lien Lenders (the "***Ad Hoc Lender Group***"), (D) Landis Rath & Cobb LLP, as local counsel to the Ad Hoc Lender Group, (F) Lazard Frères & Co., as financial advisor to the Ad Hoc Lender Group, and (G) any other accountants, consultants, attorneys, advisors, appraisers, or other professionals that may be retained by the Ad Hoc Lender Group with the consent of the Borrower, such consent not to be unreasonably withheld or delayed (the foregoing subclauses (C)-(G), the "***Lender Advisors***"), in the case of each of the foregoing clauses (i)-(iii), whether or not such payments, premiums, fees, costs, expenses or other amounts arose before or after the Petition Date and whether or not the transactions contemplated herein or in the DIP Loan Documents are consummated, without the need to file fee or retention applications with the Court, without the need to comply with the U.S. Trustee's fee guidelines, and all such payments, premiums, fees, costs, expenses and other amounts are hereby approved (and, to the extent paid prior to the entry of this Interim Order, ratified in full), shall be

non-refundable and irrevocable, and shall not be subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including any Avoidance Action, or any other claim or Cause of Action seeking the reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, surcharge, recovery, or any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise. In the case of the foregoing clause (iii), any invoices submitted for payment may be in summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be promptly paid by the DIP Loan Parties, on a monthly basis as appropriate, upon receipt of any such invoices, subject to paragraph 11 with respect to fees and expenses incurred after the Effective Date.

3.    *DIP Obligations.*

(a)    Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute valid, binding, enforceable, and non-avoidable obligations of each of the DIP Loan Parties, and shall be fully enforceable against each of the DIP Loan Parties, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of the Chapter 11 Cases or any

such successor cases (collectively, the "***Successor Cases***"), in each case, in accordance with the terms of the DIP Loan Documents and this Interim Order.

(b)     Upon execution and delivery of the DIP Loan Documents, the DIP Loan Parties shall be jointly and severally liable for all DIP Obligations, including, without limitation, all loans, advances, extensions of credit, financial accommodations, principal, interest, premiums or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts (including without limitation, all "Secured Obligations" as defined in the DIP Credit Agreement), whether or not such obligations arose before or after the Petition Date, whenever the same shall become due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, in each case, which may now or from time to time be owing by any of the DIP Loan Parties to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, or any of the DIP Lenders under the DIP Loan Documents or this Interim Order. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease, on the DIP Termination Date (as defined below) (subject to paragraph 21(b) hereof), and without limiting the foregoing, the use of Cash Collateral shall also automatically cease upon the occurrence of the Cash Collateral Termination Date (subject to paragraph 21(f) hereof).

(c)     All obligations incurred, payments made, and transfers or grants of security and liens set forth in this Interim Order and the DIP Loan Documents by the DIP Loan Parties are granted to or for the benefit of the DIP Secured Parties or Prepetition Secured Parties for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby. No obligation, payment, transfer, or grant of liens and security interests under this Interim Order or

the DIP Loan Documents to the DIP Secured Parties or the Prepetition Secured Parties (including, without limitation, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Obligations, or any adequate protection payments provided hereunder) shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including any Avoidance Action or any other claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise (in each case in accordance with and subject to the fee review procedures set forth in paragraph 11 hereof).

4.       *No Obligation to Extend Credit.* The DIP Lenders shall have no obligation to make any loan or advance under the applicable DIP Loan Documents unless all of the conditions precedent to the making of such loan or advance by the applicable DIP Lenders under the applicable DIP Loan Documents and this Interim Order have been satisfied in full (or waived) in accordance with the terms of the DIP Loan Documents and this Interim Order, as applicable. Notwithstanding anything contained in this Interim Order or the DIP Loan Documents to the contrary, in no event shall (i) the aggregate principal amount of the DIP Loans available or outstanding under the DIP Credit Agreement at any time (after giving effect to all DIP Borrowings previously made or requested) exceed the total Term Commitments (as defined in the DIP Credit Agreement), or (ii) the aggregate principal amount of the DIP Loans from any

DIP Lender exceed such DIP Lender's Term Commitment (as defined in the DIP Credit Agreement).

5.      *No Duty to Monitor Compliance*. None of the DIP Secured Parties or the Prepetition Secured Parties shall have any obligation or responsibility to monitor the DIP Loan Parties' use of DIP Collateral, Prepetition Collateral or Cash Collateral, and each of the DIP Secured Parties and Prepetition Secured Parties may rely upon the Debtors' representations that the use of DIP Collateral, Prepetition Collateral and Cash Collateral complies with and is in accordance with the requirements of this Interim Order and the DIP Loan Documents.

6.      *DIP Liens.*

(a)      *DIP Liens.* Effective upon entry of this Interim Order, and without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreements or other action to take possession or control of any DIP Collateral), as security for the prompt and complete payment and performance of all DIP Obligations (with respect to the HoldCo Guarantors, solely to the extent of DIP Obligations in respect of the New Money DIP Loans) when due (whether at stated maturity, by acceleration or otherwise), the DIP Agent, for the benefit of itself and the other DIP Secured Parties, is hereby granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "***DIP Liens***") in all DIP Collateral, subject and subordinate to the Carve Out and Permitted Prior Liens (as defined below), and subject to the relative priorities set forth in paragraph 6(c) and **Exhibit 4** of this Interim Order.

(b)    The term "***DIP Collateral***"[8] means all assets and properties of each of the DIP Loan Parties and their estates, of any kind or nature whatsoever, whether tangible or intangible, real, personal or mixed, whether now owned or consigned by or to, or leased from or to, or hereafter acquired by, or arising in favor of, any of the DIP Loan Parties (including under any trade names, styles or derivations thereof), whether prior to or after the Petition Date, and wherever located, including, without limitation, (i) all of the DIP Loan Parties' rights, title and interests in all "Collateral" (as defined in the DIP Credit Agreement), Prepetition Collateral (including Cash Collateral), ABL Priority Collateral and Term Loan Priority Collateral (each as defined in the Prepetition ABL Intercreditor Agreement), (ii) all money, cash and cash equivalents, all funds in any deposit accounts, securities accounts, commodities accounts or other accounts (together with any and all money, cash and cash equivalents, instruments and other property deposited therein or credited thereto from time to time), all accounts receivable and other receivables (including those generated by intercompany transactions), all rights to payment, contracts and contract rights, all instruments, documents and chattel paper, all securities (whether or not marketable), all goods, furniture, machinery, plants, equipment, vehicles, inventory and fixtures, all real property interests, all interests in leaseholds, all franchise rights, all patents, tradenames, trademarks, copyrights, licenses and all other intellectual property, all general intangibles, tax or other refunds, or insurance proceeds, all equity interests, capital stock, limited liability company interests, partnership interests and financial assets, all investment property, all supporting obligations, all letters of credit and letter of credit rights, all commercial tort claims (including, for the avoidance of doubt, any Cause of Action related thereto), all books and records

---

[8]    For the avoidance of doubt, DIP Collateral shall include the proceeds of the Debtors' real property leasehold interests but shall not include the leasehold interests themselves, and no liens granted pursuant to this Interim Order shall attach to the Debtors' leasehold interests.

(including, without limitation, customers lists, credit files, computer programs, printouts and other computer materials and records), and all rents, products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, each of the foregoing, including any and all proceeds of any insurance (including any business interruption and property insurance), indemnity, warranty or guaranty payable to any DIP Loan Party from time to time with respect to any of the foregoing, and (iii) subject to entry of the Final Order, all proceeds of and property that is recovered from or becomes unencumbered as a result of, whether by judgment, settlement or otherwise, Avoidance Actions ("***Avoidance Action Proceeds***").  Notwithstanding anything to the contrary set forth herein, security deposits of landlords with respect to non-residential real property leases shall not be subject to the DIP Liens or Adequate Protection Liens to the extent that such deposits sit outside of the DIP Loan Parties' bankruptcy estates; <u>provided</u> that such DIP Liens and Adequate Protection Liens shall attach to any reversionary interest of a DIP Loan Party in such security deposit in accordance with the priorities set forth on **Exhibit 4** hereto.

  (c) *Priority of DIP Liens.* The DIP Liens shall have the following ranking and priorities (subject in all cases to the Carve Out):

    (i) *First Priority Liens on Unencumbered Property.* Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected first priority liens and security interests in all DIP Collateral that is not subject to Permitted Prior Liens, including, for the avoidance of doubt, subject to entry of the Final Order, Avoidance Action Proceeds (collectively, the "***Unencumbered Property***").

    (ii) *Priming DIP Liens and Junior DIP Liens.* Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected liens and security interests in all DIP Collateral (other than as described in subparagraph (c)(i) of this paragraph 6), which DIP Liens (A) shall be subject and subordinate to (1) Permitted Prior Liens, and (2) solely with respect to ABL Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) and DIP Collateral of a type that would otherwise constitute ABL Priority Collateral (the "***ABL Priority DIP Collateral***"), the

ABL Adequate Protection Liens (as defined below) and the Prepetition ABL Liens, (B) shall be subject to the priorities set forth in **Exhibit 4** attached hereto, and (C) shall be senior to any and all other liens and security interests in the DIP Collateral, including, without limitation, all liens and security interests in the Term Loan Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) or any DIP Collateral that would otherwise constitute Term Loan Priority Collateral (including, without limitation, any ABL Adequate Protection Liens, Prepetition ABL Liens, First Lien Adequate Protection Liens (as defined below), Prepetition First Lien Liens, Second Lien Adequate Protection Liens (as defined below), Second Lien Sidecar Adequate Protection Liens (as defined below), Prepetition Second Liens or Prepetition Second Lien Sidecar Liens in Term Loan Priority Collateral).

(iii)    *DIP Liens Senior to Other Liens.* Except to the extent expressly permitted hereunder, the DIP Liens and the DIP Superpriority Claims (as defined below) shall not be made subject or subordinate to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, including any lien, security interest or claim granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties, (B) any lien or security interest that is avoided and preserved for the benefit of the DIP Loan Parties and their estates under section 551 of the Bankruptcy Code or otherwise, (C) any intercompany or affiliate claim, lien or security interest of the DIP Loan Parties or their affiliates, or (D) any other lien, security interest or claim arising under section 363 or 364 of the Bankruptcy Code granted on or after the date hereof.

(d)    To the fullest extent permitted by the Bankruptcy Code, any provision of any lease, license, contract or other agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person or entity, in order for any DIP Loan Party to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest, or proceeds thereof or other collateral related thereto, shall have no force or effect with respect to the transactions granting the DIP Liens or the Adequate Protection Liens in any such fee, leasehold, interest, or other collateral, or in the proceeds of any assignment and/or sale thereof by any DIP Loan Party in favor of the DIP Secured Parties or the Prepetition Secured Parties in accordance with the DIP Loan Documents and this Interim Order. Notwithstanding the foregoing,

nothing in this paragraph shall apply to a required landlord consent or related payment of fees under a non-residential real property lease.

(e)     Subject to entry of this Interim Order and solely with respect to Freedom VCM Holdings, LLC subject to paragraph 33 below, the DIP Obligations, at the option of the Required DIP Lenders, to be exercised in their sole and absolute discretion, may be repaid (i) *first*, from the DIP Collateral comprising Unencumbered Property, and (b) *second*, from all other DIP Collateral, subject to the relative priorities set forth on **Exhibit 4** hereto.

7.      *DIP Superpriority Claims.* Pursuant to sections 364(c)(1) and 364(e) of the Bankruptcy Code, the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the DIP Loan Parties in each of their respective Chapter 11 Cases and any Successor Cases on account of the DIP Obligations, with priority over any and all other administrative expense claims and all other claims against the DIP Loan Parties, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, the Adequate Protection Claims and all administrative expense claims of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "***DIP Superpriority Claims***"). The DIP Superpriority Claims shall (x) for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and (y) be subject to the priorities set forth in **Exhibit 4** attached hereto. The DIP Superpriority Claims shall be payable by each of the DIP Loan Parties, on a joint and several basis, and shall have recourse to all DIP Collateral, subject only to the Carve Out. The DIP Superpriority Claims shall

be entitled to the full protection of section 364(e) of the Bankruptcy Code, including in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal.

8.      *Use of DIP Collateral, Prepetition Collateral and Cash Collateral.*

(a)      The DIP Loan Parties are hereby authorized to use the proceeds of DIP Loans and all Cash Collateral solely to the extent permitted under the Approved Budget (subject to Permitted Variances) and subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order. Except on the terms and conditions of this Interim Order and the DIP Documents, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

(b)      Without the prior written consent of the Required DIP Lenders, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so), except as permitted by the DIP Loan Documents. All collection and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Loan Documents (subject to paragraph 37 hereof and the priorities set forth on **Exhibit 4** hereto). Except as may be provided in the DIP Loan Documents, and subject to the terms of the Prepetition Intercreditor Agreements and the priorities set forth on **Exhibit 4** hereto, the Debtors are authorized and directed, upon the closing of a sale of any of the DIP Collateral, to immediately pay all proceeds of any such sale to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, to satisfy the DIP Obligations in accordance with this Interim Order and the DIP Loan Documents until the DIP Obligations are

Paid in Full,[9] and any order approving the sale of such DIP Collateral shall provide that the sale is conditioned upon such payment of DIP Obligations (except to the extent otherwise agreed in writing by the Required DIP Lenders).  For the avoidance of doubt, nothing herein abrogates or modifies the rights of the Prepetition ABL Secured Parties under the Prepetition ABL Intercreditor Agreement or under section 363 of the Bankruptcy Code in connection with any sale, lease, use, or other disposition of ABL Priority Collateral or ABL Priority DIP Collateral, including, without limitation, any objection rights or rights to request additional adequate protection at the Final Hearing.

9.      *Budget and Variance Reporting.*

(a)      The Initial Budget sets forth, on a line item, cumulative and aggregate basis, (i) the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures (including debt service costs) expected to be incurred or made, by the Debtors, in each case, for each calendar week during the period from the calendar week ending on the Friday of the calendar week in which the Petition Date occurs through and including the end of the thirteenth (13th) calendar week thereafter, (ii) the sum of weekly unused availability under the DIP Facility, plus unrestricted cash on hand, (iii) the weekly outstanding principal balance of amounts outstanding under the DIP Facility, and (iv) a professional fee accrual budget with respect to the anticipated professional fees and expenses to be incurred by each applicable professional advisor during such period.

---

[9]    The term "***Paid in Full***" or "***Payment in Full***" means the indefeasible payment in full in cash of all DIP Obligations or Prepetition Secured Obligations, as the case may be, other than contingent indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder have been terminated or expired.

(b)      *Updated Budgets*.  No later than 5:00 p.m. (New York City time) on every fourth Thursday following the Petition Date (each such Thursday, the "***Updated Budget Deadline***"), the DIP Loan Parties shall deliver to the DIP Agent, the Lender Advisors and the DIP Lenders a supplement to the Initial Budget (each, an "***Updated Budget***"), covering the then-upcoming 13-week period that commences with Saturday of the calendar week immediately preceding such Updated Budget Deadline, in each case consistent with the form and detail set forth in the Initial Budget and including a forecasted unrestricted cash balance as well as a line-item report setting forth the estimated fees and expenses to be incurred by each professional advisor on a weekly basis; provided, however, that (x) (i) the Updated Budget will be deemed, in each case, conditionally approved unless the Required DIP Lenders provide written notice of their objection to such Updated Budget (which notice may be provided by one of the Lender Advisors on their behalf via email) within four(4) Business Days of the delivery of such Updated Budget, and during such period, the Initial Budget or most recent Approved Budget, as applicable, shall remain in effect (the "***Interim Approval Period***"), (ii) following the Interim Approval Period, if no objection is received from the Required DIP Lenders pursuant to clause (i), the Updated Budget shall be deemed the Approved Budget, shall be in full force and effect and shall constitute the "Approved Budget" (which Approved Budget shall be the Initial Budget until superseded by an approved Updated Budget), provided, that the Required DIP Lenders may, at any time after such Interim Approval Period and until the date that is seven (7) Business Days after delivery of the Updated Budget (each such date, an "***Objection Deadline***"), object to such Updated Budget, and upon receipt of such objection, the Initial Budget or the most recent Approved Budget shall be deemed the Approved Budget and (y) if the Required DIP Lenders do not provide written notice of their objection to such Updated Budget (which notice of objection may be provided by one the Lender

Advisors on their behalf via email) by the applicable Objection Deadline, the Updated Budget shall be in full force and effect and shall constitute the Approved Budget for all purposes hereunder; (iii) the Required DIP Lenders shall not have any obligation to approve any Updated Budget, and (iv) no modification to the Initial Budget or any Updated Budget, any reforecasting of any information relating to any period covered thereby or the inclusion of new line items in any Updated Budget, as the case may be, shall in any event be effective without the affirmative written consent of the Required DIP Lenders (which may be provided by one of the Lender Advisors on their behalf via email).

(c)     No later than 5:00 p.m. (New York City time) every Thursday, commencing with the first Thursday immediately following the first full week after the calendar week in which the Petition Date occurs (each such Thursday, the "*Variance Report Deadline*"), the DIP Loan Parties shall deliver to the DIP Agent and the Lender Advisors a variance report, each in form, detail and substance satisfactory to the Required DIP Lenders in their sole discretion (each, a "*Variance Report*"), setting forth the difference between, on a line-by-line and aggregate basis, (i) actual operating receipts and budgeted operating receipts as set forth in the Approved Budget, as the case may be (the "*Receipts Variance*"), and (ii) actual operating disbursements and budgeted operating disbursements as set forth in the Approved Budget, as the case may be (the "*Disbursements Variance*"), in each case, for the applicable period, together with a reasonably detailed explanation of such Receipts Variance and Disbursements Variance for such applicable period.

10.     *Adequate Protection*. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e) and 507 of the Bankruptcy Code, to adequate protection of their respective Prepetition Liens in Prepetition Collateral (including Cash Collateral), as follows (the

liens, security interests, payments and other obligations set forth in this paragraph 10, are collectively referred to herein as the "***Adequate Protection Obligations***"):

(a)    *Adequate Protection for Prepetition ABL Secured Parties.* The Prepetition ABL Secured Parties are hereby granted the following adequate protection of their Prepetition ABL Liens in the Prepetition ABL Collateral (including Cash Collateral):

(i)    *ABL Adequate Protection Claims.* The Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, is hereby granted, to the extent and in the amount of any Diminution in Value of the Prepetition ABL Liens in the Prepetition ABL Collateral (including Cash Collateral), superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the DIP Loan Parties in each of their respective Chapter 11 Cases and any Successor Cases (the "***ABL Adequate Protection Claims***"), which shall be payable by each of the DIP Loan Parties, on a joint and several basis, and shall have recourse to all DIP Collateral. The ABL Adequate Protection Claims shall be (a) subject and subordinate to the Carve Out and the DIP Superiority Claims and *pari passu* with the First Lien Adequate Protection Claims (as defined below), (b) subject to the relative priorities set forth in **Exhibit 4** attached hereto, and (c) senior to any and all other administrative expense claims and all other claims against the DIP Loan Parties and their estates, now existing or hereafter arising, of any kind or nature whatsoever.

(ii)    *ABL Adequate Protection Liens.* The Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, is hereby granted, effective and automatically perfected as of the Petition Date, and without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreement or other action to take possession or control of any DIP Collateral), to the extent and in the amount of any Diminution in Value of the Prepetition ABL Liens in the Prepetition ABL Collateral, valid, binding, enforceable and perfected post-petition liens and security interests in all DIP Collateral (the "***ABL Adequate Protection Liens***"). The ABL Adequate Protection Liens (a) shall be subject to the Carve Out and Permitted Prior Liens, (b) shall be subject to the relative priorities set forth in **Exhibit 4** attached hereto, and (c) shall be senior to any and all other liens and security interests in the DIP Collateral.

(b)    *Additional Adequate Protection for Prepetition ABL Secured Parties.* As additional adequate protection of the Prepetition ABL Liens in the Prepetition ABL Collateral (including Cash Collateral), the Debtors are hereby authorized to provide, and the Prepetition ABL Secured Parties are hereby granted, additional adequate protection in the form of the following:

(i)      *Interest Due Under Prepetition ABL Credit Agreement.* The Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, shall receive (x) promptly upon the entry of this Interim Order, all interest due (at the non-default rate) under the Prepetition ABL Credit Agreement that accrued but was unpaid as of the Petition Date, payable in cash, and (y) thereafter, all interest due (at the non-default rate) under the Prepetition ABL Credit Agreement, as and when due thereunder, payable in cash.  For the avoidance of doubt, nothing herein constitutes a waiver or compromise of, or limitation on, any entitlement of the Prepetition ABL Secured Parties to interest, fees, costs and charges under section 506(b) of the Bankruptcy Code, or of any party in interest to object to any such amounts.

(ii)     *Fees and Expenses.* The Debtors are authorized and directed to pay, without the necessity of filing formal fee applications or compliance with the U.S. Trustee's fee guidelines, the out-of-pocket costs and expenses of the Prepetition ABL Agent, whether arising prior to or after the Petition Date, including, without limitation, the reasonable and documented fees and expenses of (A) Latham & Watkins LLP, as counsel to the Prepetition ABL Agent, (B) M-III Partners, LP, as financial advisor to the Prepetition ABL Agent, (C) one local counsel to the Prepetition ABL Agent, and (D) Choate Hall & Stewart LLP as counsel to certain Prepetition ABL Lenders (collectively, the "***ABL Advisors***"), in each case, as follows: (1) promptly following the entry of this Interim Order, the Debtors shall pay in full in cash all costs and expenses of the Prepetition ABL Agent, including the reasonable and documented fees and expenses of the ABL Advisors (collectively, the "***ABL Fees and Expenses***") arising on or prior to the Petition Date, (2) upon the Effective Date, the Debtors shall pay in full in cash all ABL Fees and Expenses arising through the Effective Date, and (3) thereafter, subject in the case of professional fees to the procedures set forth in paragraph 11 of this Interim Order, the Debtors shall pay in full in cash all ABL Fees and Expenses that arise following the Effective Date.

(iii)    *Reporting.* The Debtors shall provide the Prepetition ABL Agent (and the ABL Advisors) with all reports, documents and other information required to be delivered to the DIP Secured Parties under the DIP Loan Documents and this Interim Order contemporaneously with the delivery of such information to the DIP Secured Parties. The Debtors shall provide the Prepetition ABL Agent with all other reporting required under the Prepetition ABL Credit Agreement when due in accordance with its terms, except with respect to the reporting of the Cash Collateral Borrowing Base, which shall be in accordance with paragraph 10(b) of this Interim Order.

(iv)     *Cash Management Covenant.* The Debtors shall maintain their cash management arrangements in a manner consistent with those described in the applicable "first day" order, which shall be in form and substance reasonably acceptable to the Prepetition ABL Agent.

(v)      *[Reserved.]*

(vi)     *ABL Cash Collateral Borrowing Base.*  The definition of "Borrowing Base" used in the determination of any Availability Event or Borrowing Base

Shortfall (each as defined below) shall be the "Borrowing Base" as defined in, and determined in accordance with, the Prepetition ABL Credit Agreement and set forth in the most recent Borrowing Base Certificate (as defined in the Prepetition ABL Credit Agreement) delivered prior to the Petition Date but modified as provided below herein (the "***Cash Collateral Borrowing Base***"), which, for the avoidance of doubt, shall give effect to the applicable Net Recovery Percentages (as defined in the Prepetition ABL Credit Agreement) set forth in the (i) Addendum, dated September 25, 2024, to the Gordon Brothers appraisal report for Pet Supply Plus, LLC, dated May 13, 2024; (ii) Addendum, dated July 9, 2024, to the Gordon Brothers appraisal report for Franchise Group, Inc. (American Freight Group, Inc.), dated May 15, 2024; and (iii) Addendum, dated July 9, 2024, to the Gordon Brothers appraisal report for Franchise Group, Inc. (Vitamin Shoppe), dated April 30, 2024, and in each case, as adjusted pursuant to a Permitted Re-Appraisal (defined below); provided, further, that notwithstanding anything to the contrary in the Prepetition ABL Credit Agreement, (x) the Cash Collateral Borrowing Base shall not otherwise reflect any new reserves or any modifications of eligibility criteria (except those eligibility criteria that automatically change pursuant to the application of any formula or numerical calculation as in effect on the Petition Date), (y) the Cash Collateral Borrowing Base will be calculated using any updated Borrowing Base Certificates (as defined in the ABL Credit Agreement) as and when required to be delivered pursuant to paragraph 10(a)(vii) below, and (z) the Cash Collateral Borrowing Base shall be increased (on a dollar-for-dollar basis) by the amount of cash then held in the Adequate Protection Account (as defined herein).  For the avoidance of doubt, the Cash Collateral Borrowing Base shall not include any amounts deposited in the Professional Fees Account pursuant to paragraph 23(b) hereof.

(vii)    *Borrowing Base Reporting*.  The Debtors shall deliver to the Prepetition ABL Agent, with copies to the DIP Agent, a Borrowing Base Certificate, with all the information required to be provided in connection therewith, in each case in the format customarily delivered with each Borrowing Base Certificate delivered prior to the Petition Date, setting forth the Cash Collateral Borrowing Base (i) calculated as of the last day of the immediately preceding calendar week (with weeks, for purpose of the Borrowing Base Certificate, beginning on Sunday and ending on Saturday) on Thursday of each week commencing on November 14, 2024 for the week ending November 9, 2024, and each Thursday thereafter; and (ii) calculated as of the last Business Day of the immediately preceding fiscal month, promptly, but in no event later than December 20, 2024 with respect to the fiscal month ended November 30, 2024, and twenty calendar days (or, if such day is not a Business Day, the next Business Day) following the end of each subsequent fiscal month, which monthly Borrowing Base Certificates shall reconcile all weekly inventory roll forwards.  The Borrowing Base Certificates will include weekly back up information consistent with the Prepetition ABL Credit Agreement, including, but not limited to, an inventory summary report by category as determined by Borrowers in accordance with their current and prior inventory management policies and a letter of credit inventory summary, and identifying where such inventory is located.

(viii)    *Appraisals*.  Notwithstanding anything to the contrary in the Prepetition ABL Credit Agreement, the Prepetition ABL Agent will not be entitled to request access for and/or request any new inspections, appraisals and field examinations

(including, without limitation, with respect to ABL Priority Collateral). Notwithstanding the foregoing, the Prepetition ABL Agent shall be permitted to request access for and/or request any new inspections, appraisals, and field examinations from time to time, at the Prepetition ABL Agent's own expense, for valuation purposes only, which (i) do not impact the calculation of the Cash Collateral Borrowing Base and (ii) do not unreasonably interfere with the ordinary course activities and operations of the Debtors as in effect at such time, *provided* that, on or after the "Outside Date" under and as defined in the DIP Credit Agreement, if the Prepetition ABL Loan Parties have not emerged from chapter 11, the Prepetition ABL Agent may conduct one appraisal, inspection, and field examination consistent with past practice, and may adjust the valuations used to calculate the Borrowing Base in accordance with the terms of the Prepetition ABL Credit Agreement based on such appraisal, inspection, or field examination (a "***Permitted Re-Appraisal***").

(ix)     *Adequate Protection Account*. If the Borrower delivers a weekly Borrowing Base Certificate to the Prepetition ABL Agent that provides a Borrowing Base that is less than the sum of (a) the Prepetition ABL Obligations plus (b) $32,000,000 (an "***Availability Event***," and the amount of such shortfall, the "***Borrowing Base Shortfall***"), the Borrower shall, by the end of the second Business Day thereafter, deposit cash in an amount equal to the Borrowing Base Shortfall into a controlled segregated reserve account maintained by the Prepetition ABL Agent (the "***Adequate Protection Account***"), with all funds held in the Adequate Protection Account deemed ABL Priority Collateral and deemed not DIP Collateral, *provided* that the Borrowing Base shall be adjusted on a dollar-for-dollar basis by the amount of cash then held in the Adequate Protection Account and shall be reflected in Borrowing Base Certificates, *provided further* that, for the avoidance of doubt, the DIP Liens shall extend to the Debtors' reversionary interest in the Adequate Protection Account. The Borrower may withdraw cash from the Adequate Protection Account at any time so long as such withdrawal, delivery of the most recent Borrowing Base Certificate would not have resulted in an Availability Event.

(c)     *Adequate Protection for Prepetition First Lien Secured Parties.* The Prepetition First Lien Secured Parties are hereby granted the following adequate protection of their Prepetition First Lien Liens in the Prepetition First Lien Collateral (including Cash Collateral):

(i)     *First Lien Adequate Protection Claims.* The Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, is hereby granted, to the extent and in the amount of any Diminution in Value of the Prepetition First Lien Liens in the Prepetition First Lien Collateral (including Cash Collateral), superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the DIP Loan Parties in each of their respective Chapter 11 Cases and any Successor Cases (the "***First Lien Adequate Protection Claims***"), which shall be payable by each of the DIP Loan Parties, on a joint and several basis, and shall have recourse to all DIP Collateral. The First Lien Adequate Protection Claims shall be (a) subject and subordinate to the Carve Out and the DIP Superpriority Claims, (b) subject to the relative priorities set forth in **Exhibit 4** attached hereto, and (c) senior to any and all other

administrative expense claims and all other claims against the DIP Loan Parties and their estates, now existing or hereafter arising, of any kind or nature.

(ii)     *First Lien Adequate Protection Liens.* The Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, is hereby granted, effective and automatically perfected as of the Petition Date, and without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreement or other action to take possession or control of any DIP Collateral), to the extent and in the amount of any Diminution in Value of the Prepetition First Lien Liens in the Prepetition First Lien Collateral, valid, binding, enforceable and perfected post-petition liens and security interests in all DIP Collateral (the "***First Lien Adequate Protection Liens***"). The First Lien Adequate Protection Liens shall be (a) subject to the Carve Out, the DIP Liens, and Permitted Prior Liens, and with respect to ABL Priority Collateral, the ABL Adequate Protection Liens and the Prepetition ABL Liens, (b) subject to the relative priorities set forth in **Exhibit 4** attached hereto, and (c) senior to any and all other liens and security interests in the DIP Collateral.

(d)     *Additional Adequate Protection for Prepetition First Lien Secured Parties.*

As additional adequate protection of the Prepetition First Lien Liens in the Prepetition First Lien Collateral (including Cash Collateral), the Debtors are hereby authorized to provide, and the Prepetition First Lien Secured Parties are hereby granted, additional adequate protection in the form of the following:

(i)     *Interest Due Under Prepetition First Lien Credit Agreement.* The Prepetition First Lien Agent, on behalf of the Prepetition First Lien Lenders, shall receive (x) promptly upon the entry of this Interim Order, all interest due (at the non-default rate) under the Prepetition First Lien Credit Agreement that accrued but was unpaid as of (but through and including) the Petition Date (such amount being $34,500,420.17), payable in kind on the Petition Date by adding the aggregate amount thereof to the outstanding principal balance of the Prepetition First Lien Facility on such date, and (y) thereafter, all interest due (at the non-default rate) under the Prepetition First Lien Credit Agreement, as and when due thereunder, payable in cash. For the avoidance of doubt, any interest capitalized pursuant to clause (x) above shall be for the benefit of the Prepetition First Lien Lenders as of the date that it is capitalized.

(ii)     *Fees and Expenses.* The Debtors are authorized and directed to pay, without the necessity of filing formal fee applications or compliance with the U.S. Trustee's fee guidelines, whether arising prior to or after the Petition Date, (A) the out-of-pocket fees, costs and expenses of the Prepetition First Lien Agent, including, without limitation, the reasonable and documented fees and expenses of (x) Seward &

Kissel LLP, as counsel to the Prepetition First Lien Agent, and (y) a single firm as local counsel to the Prepetition First Lien Agent (collectively, the "***First Lien Agent Fees and Expenses***"), and (B) the out-of-pocket fees and expenses of the members of the Ad Hoc Lender Group, including, without limitation, the reasonable and documented fees and expenses of the Lender Advisors (collectively, the "***Ad Hoc Lender Group Fees and Expenses***", and together with the First Lien Agent Fees and Expenses, the "***First Lien Fees and Expenses***"), in each case, as follows: (1) promptly following the entry of this Interim Order, the Debtors shall pay in full in cash all First Lien Fees and Expenses arising on or prior to the Petition Date, (2) upon the Effective Date, the Debtors shall pay in full in cash all First Lien Fees and Expenses arising through the Effective Date, and (3) thereafter, subject in the case of professional fees to the procedures set forth in paragraph 11 of this Interim Order, the Debtors shall pay in full in cash all First Lien Fees and Expenses that arise following the Effective Date.

(iii)    *Reporting.* The Debtors shall provide the Prepetition First Lien Agent and the Lender Advisors with all reports, documents and other information required to be delivered to the DIP Secured Parties and the Prepetition ABL Secured Parties under the DIP Loan Documents and the Prepetition ABL Loan Documents, respectively, and this Interim Order contemporaneously with the delivery of such information to the DIP Secured Parties to the Prepetition ABL Secured Parties, as applicable.

(iv)    *Cash Management Covenant.* The Debtors shall maintain their cash management arrangements in a manner consistent with those described in the applicable "first day" order, which shall be in form and substance reasonably acceptable to the Ad Hoc Lender Group.

(e)    *Adequate Protection for Prepetition Second Lien Secured Parties.* The Prepetition Second Lien Secured Parties are hereby granted the following adequate protection of their Prepetition Second Lien Liens in the Prepetition Second Lien Collateral (including Cash Collateral):

(i)    *Second Lien Adequate Protection Claims.* The Prepetition Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Lenders, is hereby granted, to the extent and in the amount of any Diminution in Value of the Prepetition Second Lien Liens in the Prepetition Second Lien Collateral (including Cash Collateral), superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the DIP Loan Parties in each of the Chapter 11 Cases and any Successor Cases (the "***Second Lien Adequate Protection Claims***"), which shall be payable by each of the DIP Loan Parties, on a joint and several basis, and shall have recourse to all DIP Collateral. The Second Lien Adequate Protection Claims shall be (a) subject and subordinate to the Carve Out and the DIP Superpriority Claims, (b) subject to the relative priorities set forth in **Exhibit 4** attached hereto, and (c) senior to any and all other administrative expense claims and all other claims against the DIP Loan Parties and their estates, now existing or hereafter arising, of any kind or nature whatsoever.

(ii)    *Second Lien Adequate Protection Liens.* The Prepetition Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Lenders, is hereby granted, effective and perfected as of the Petition Date, without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreement or other act to take possession or control of any DIP Collateral), to the extent and in the amount of any Diminution in Value of the Prepetition Second Lien Liens in the Prepetition Second Lien Collateral, valid, binding, enforceable and automatically perfected post-petition liens and security interests in all DIP Collateral (the "***Second Lien Adequate Protection Liens***"), which Second Lien Adequate Protection Liens shall be (a) subject to the Carve Out, the DIP Liens and the Permitted Prior Liens and with respect to ABL Priority Collateral, the ABL Adequate Protection Liens and the Prepetition ABL Liens, (b) subject to the relative priorities set forth in **Exhibit 4** attached hereto, and (c) shall be senior to any and all other liens and security interests in the DIP Collateral.

       (f)    *Adequate Protection for Prepetition Second Lien Sidecar Secured Parties.*

The Prepetition Second Lien Sidecar Secured Parties are hereby granted the following adequate protection of their Prepetition Second Lien Sidecar Liens in the Prepetition Second Lien Sidecar Collateral (including Cash Collateral):

(i)    *Second Lien Sidecar Adequate Protection Claims.* The Prepetition Second Lien Sidecar Agent, for the benefit of itself and the Prepetition Second Lien Sidecar Lenders, is hereby granted, to the extent and in the amount of any Diminution in Value of the Prepetition Second Lien Sidecar Liens in the Prepetition Second Lien Sidecar Collateral (including Cash Collateral), superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against each of the DIP Loan Parties in each of the Chapter 11 Cases and any Successor Cases (the "***Second Lien Sidecar Adequate Protection Claims***", and together with the ABL Adequate Protection Claims, the First Lien Adequate Protection Claims and the Second Lien Adequate Protection Claims, the "***Adequate Protection Claims***"), which shall be payable by each of the DIP Loan Parties, on a joint and several basis, and shall have recourse to all DIP Collateral. The Second Lien Sidecar Adequate Protection Claims shall be (a) subject and subordinate to the Carve Out and the DIP Superpriority Claims, (b) subject to the relative priorities set forth in **Exhibit 4** attached hereto, and (c) senior to any and all other administrative expense claims and all other claims against the DIP Loan Parties and their estates, now existing or hereafter arising, of any kind or nature whatsoever.

(ii)    *Second Lien Sidecar Adequate Protection Liens.* The Prepetition Second Lien Sidecar Agent, for the benefit of itself and the Prepetition Second Lien Sidecar Lenders, is hereby granted, effective and perfected as of the Petition Date, without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title

for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreement or other act to take possession or control of any DIP Collateral), to the extent and in the amount of any Diminution in Value of the Prepetition Second Lien Sidecar Liens in the Prepetition Second Lien Sidecar Collateral, valid, binding, enforceable and automatically perfected post-petition liens and security interests in all DIP Collateral (the "***Second Lien Sidecar Adequate Protection Liens***", and together with the ABL Adequate Protection Liens, the First Lien Adequate Protection Liens and the Second Lien Adequate Protection Liens, the "***Adequate Protection Liens***"), which Second Lien Sidecar Adequate Protection Liens shall be (a) subject to the Carve Out, the DIP Liens and the Permitted Prior Liens and with respect to ABL Priority Collateral, the ABL Adequate Protection Liens and the Prepetition ABL Liens, (b) subject to the relative priorities set forth in **Exhibit 4** attached hereto, and (c) shall be senior to any and all other liens and security interests in the DIP Collateral.

11.     *Adequate Protection Fees and Expenses.* The invoices with respect to the professional fees and expenses payable under paragraphs 2, 10(b)(ii)(3) and 10(d)(ii)(3) of this Interim Order shall not be required to comply with the U.S. Trustee guidelines, nor shall the applicable professionals be required to file fee applications with the Court with respect to any fees or expenses payable hereunder, and all invoices therefor may be in summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall, by email, be provided to counsel to the Debtors, counsel to any Official Committee and the U.S. Trustee (the "***Fee Notice Parties***"); provided, however, if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten (10) Business Days after delivery of such invoices (the "***Fee Objection Period***"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any event, no later than three (3) Business Days after

expiration of the Fee Objection Period; provided, further, however, if a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, the undisputed portion shall promptly be paid by the Debtors, and in any event, no later than three (3) Business Days after expiration of the Fee Objection Period, and the disputed portion shall only be paid upon resolution of such objection by the applicable parties or by order of the Court. Any hearing on an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice shall be limited to reasonableness of the fees, costs and expenses that are the subject of such objection. Subject to this paragraph 11, none of the adequate protection payments required to be made pursuant to this Interim Order shall be subject to claim, counterclaim, challenge, setoff, subordination, recharacterization, defense, avoidance or disgorgement in the Chapter 11 Cases or any Successor Cases.

12.     *Adequate Protection Reservation of Rights of Prepetition Secured Parties.* Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant to this Interim Order shall not be deemed an admission that the interests of such Prepetition Secured Parties are indeed adequately protected, and is without prejudice to the right of the Prepetition Secured Parties (subject to the Prepetition Intercreditor Agreements) to seek additional relief with respect to the use of Prepetition Collateral (including Cash Collateral), or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Secured Parties under the Prepetition Loan Documents, the Prepetition Intercreditor Agreements, or under applicable law, and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies

whether now existing or hereafter arising under the Prepetition Loan Documents and applicable law. Without limiting the foregoing, nothing contained in this Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Prepetition Secured Parties for any Diminution in Value during the Chapter 11 Cases.

13.    *Reservation of Rights.* Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Secured Parties or the Prepetition Secured Parties (subject to the Prepetition Intercreditor Agreements and this Interim Order) to seek any other or supplemental relief in respect of the Debtors; (b) subject to the Prepetition Intercreditor Agreements, the rights of the DIP Secured Parties or the Prepetition Secured Parties under the DIP Loan Documents or the Prepetition Loan Documents (including the Prepetition Intercreditor Agreements), the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers; or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties (in each case, subject to the Prepetition Intercreditor Agreements). Notwithstanding anything contained herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party in interest's right to oppose (on an emergency basis if need

be) any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Interim Order and subject to the Prepetition Intercreditor Agreements.

14.   *Amendments.* Without the need for further notice or approval of this Court, the Debtors are authorized to execute, deliver and perform under, one or more amendments, waivers, consents, or other modifications (including, for the avoidance of doubt, the payment of any amendment fee, consent fee, waiver fee or similar fee paid or payable in connection therewith) to and under the DIP Loan Documents, in each case, in accordance with the provisions of the DIP Credit Agreement governing amendments thereto (and otherwise in form and substance acceptable to the Required DIP Lenders); provided, however, that any amendment that (a) shortens the maturity of the extensions of credit thereunder; (b) increases the aggregate commitments thereunder; or (c) increases the rate of interest or any fee (other than any amendment fee, consent fee, waiver fee or similar fee paid or payable in connection with such amendment) payable thereunder (each, a "***Material DIP Amendment***") shall be provided (which may be by electronic mail) to counsel for any Official Committee, counsel to the Prepetition ABL Agent, the U.S. Trustee and to any other party that has filed a request for notice in the Chapter 11 Cases and filed with the Court no later than five (5) Business Days prior to the anticipated date of effectiveness of any such Material DIP Amendment (or such shorter period if authorized by the Court following the filing of a motion to shorten notice), and if no formal objection to the Material DIP Amendment is made by the U.S. Trustee, the Prepetition ABL Agent, any Official Committee, or any other party-in-interest within such five (5) Business Day period, then, without further notice or order of the Court, such Material DIP Amendment shall automatically be deemed approved and effective; provided, however, if a formal objection is made by the U.S. Trustee, Prepetition ABL Agent, any

Official Committee, or any party-in-interest within such five (5) Business Day period, then such Material DIP Amendment shall be subject to approval of the Court.

15.     *Modification of Automatic Stay.* The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, without further notice to or order of this Court, to permit (in each case, subject to the Prepetition Intercreditor Agreements): (a) the DIP Loan Parties to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may request to assure the perfection and priority of the DIP Liens; (b) the DIP Loan Parties to incur all liabilities and obligations, including all of the DIP Obligations, to the DIP Secured Parties as contemplated under this Interim Order and the DIP Loan Documents; (c) the DIP Loan Parties to grant the Adequate Protection Liens and the Adequate Protection Claims, and to perform such acts as the Prepetition Agents may request to assure the perfection and priority of the Adequate Protection Liens; (d) the DIP Loan Parties to incur all liabilities and obligations, including all Adequate Protection Obligations, to the Prepetition Secured Parties as contemplated under this Interim Order and the Prepetition Loan Documents; (e) the DIP Loan Parties to pay all amounts required hereunder and under the DIP Loan Documents; (f) the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments made in accordance with the terms of this Interim Order, the Prepetition Intercreditor Agreements, the Prepetition ABL Loan Documents, and the DIP Loan Documents; (g) subject to paragraph 21(b) and/or 21(f) of this Interim Order (as applicable), the DIP Secured Parties and the Prepetition Secured Parties to exercise, upon the occurrence and during the continuance of any DIP Termination Event (as defined below), all rights and remedies provided for in this Interim Order, the DIP Loan Documents or applicable law; (h) to perform under this Interim Order and the DIP Loan Documents, and to take any and all other actions that may be required, necessary, or desirable

for the performance by the Debtors under this Interim Order and the DIP Loan Documents and the implementation of the transactions contemplated hereunder and thereunder; and (i) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Loan Documents.

16.      *Perfection of DIP Liens and Adequate Protection Liens*.

(a)      This Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted hereunder and under the DIP Loan Documents, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, lockbox or control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any DIP Collateral), to attach, validate, perfect or prioritize such liens and security interests, or to entitle the DIP Secured Parties and the Prepetition Secured Parties to the priorities granted herein (each, a "***Perfection Act***") (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect or prioritize such liens).

(b)      Without in any way limiting the automatically effective perfection of the liens granted hereunder and the DIP Loan Documents (including, without limitation, the DIP Liens and the Adequate Protection Liens), the DIP Agent, at the direction of the Required DIP Lenders, and the Prepetition Agents (acting at the direction of the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents, as applicable), respectively, are hereby authorized, but not required, in the case of the DIP Agent, at the direction of the applicable Required DIP

Lenders, and in the case of the Prepetition Agents, (acting at the direction of the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents, as applicable) as they may determine for any reason, to execute, file and record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of submission, to the maximum extent permitted under applicable law) or otherwise effectuate any Perfection Act or to take any other action in order to attach, validate, perfect, preserve and enforce the liens and security interests granted to them hereunder or under the DIP Loan Documents to otherwise evidence such liens and security interests in all DIP Collateral; provided, however, that, whether or not the DIP Agent, at the direction of the Required DIP Lenders, or the Prepetition Agents determine (acting at the direction of the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents, as applicable), to execute, file, record or otherwise effectuate any Perfection Act with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to objection, challenge, dispute, avoidance, recharacterization or subordination as of the entry of this Interim Order. Upon the request of the DIP Agent, at the direction of the Required DIP Lenders, without any further consent of any party, the DIP Agent and the Debtors are authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent, for the benefit of itself and the DIP Lenders, to further validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the entry of this Interim Order.

(c)     A certified copy of this Interim Order may, as to the DIP Agent, at the direction of the Required DIP Lenders, or as to the Prepetition Agents (acting at the direction of the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents, as

applicable), be (but need not be) filed with or recorded in filing or recording offices in addition to or in lieu of any security documents, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent, at the direction of the Required DIP Lenders, or the Prepetition Agents to take all actions, as applicable, referenced in this paragraph.

17. *Protection of DIP Lenders' Rights.*

(a)     Until the DIP Obligations are Paid in Full, the Prepetition Secured Parties, and subject to the terms of the Prepetition ABL Intercreditor Agreement and the terms hereof with respect to the Prepetition ABL Secured Parties, shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens or security interests granted to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents or this Interim Order or otherwise seek to exercise or enforce any rights or remedies against any DIP Collateral, Prepetition Collateral or Prepetition Loan Party (as applicable), including, without limitation, any exercise of setoff or recoupment; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens or claims on, such DIP Collateral or and the proceeds thereof, to the extent such transfer, disposition, sale, or release is authorized hereunder, under the applicable DIP Loan Documents; or (iii) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii), any of the applicable DIP Secured Parties have filed financing statements or other documents in respect of the liens granted pursuant to this Interim Order or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or securities interests as of the Petition Date;

or (iv) deliver or cause to be delivered, at the Debtors' cost and expense (for which the Prepetition Agents shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases and/or assignments in favor of the DIP Agent and the DIP Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of DIP Collateral subject to any sale or disposition authorized hereunder or under the DIP Loan Documents. No Prepetition Secured Party may, directly or indirectly, (A) contest, or support any other Person in contesting, in any proceeding, the extent, validity, attachment, priority, or enforceability of any DIP Lien held by or on behalf of any of the DIP Secured Parties in the DIP Collateral (or the extent, validity, allowability, or enforceability of any DIP Obligations secured thereby or purported to be secured thereby) or the provisions of the DIP Loan Documents or this Interim Order, (B) take any action that would restrain, hinder, limit, delay or otherwise interfere with the exercise of any rights or remedies by any of the DIP Secured Parties, or (C) contest, object to or support any other Person in contesting or objecting to the manner in which any DIP Secured Party seeks to enforce or collect the DIP Obligations, the DIP Superpriority Claims or the DIP Liens or any amendment, waiver or modification of any DIP Loan Document (including **Exhibit 4** attached hereto).

(b)      Except with respect to Prepetition ABL Secured Parties and the Prepetition ABL Intercreditor Agreement solely as provided herein, to the extent any Prepetition Secured Party has been noted as a secured party on any security document or otherwise has possession of or control with respect to any Prepetition Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent, for the benefit of itself and the other DIP Secured Parties, and the DIP Lenders, and such Prepetition Secured Party shall

comply with the instructions of the DIP Agent, at the direction of the Required DIP Lenders, with respect to the exercise of such possession or control, subject to the priorities set forth on **Exhibit 4**.

(c)      Notwithstanding anything to the contrary herein, (i) so long as there are any Prepetition ABL Secured Obligations (including the ABL Adequate Protection Claims) outstanding and prior to the Payment in Full of the Prepetition ABL Secured Obligations (including the ABL Adequate Protection Claims), in each case solely with respect to the ABL Priority Collateral, the enforcement rights of the DIP Secured Parties or Prepetition Secured Parties (other than the Prepetition ABL Secured Parties) with respect to ABL Priority Collateral and ABL Priority DIP Collateral shall be subject to the terms of the Prepetition ABL Intercreditor Agreement as if the DIP Agent was party thereto as a First Lien Term Loan Representative (as defined in the Prepetition ABL Intercreditor Agreement), and (ii) so long as there are any DIP Obligations or Prepetition First Lien Secured Obligations (including the First Lien Adequate Protection Claims) outstanding and prior to the Payment in Full of the DIP Obligations and Prepetition First Lien Secured Obligations (including the First Lien Adequate Protection Claims), in each case solely with respect to the Term Loan Priority Collateral, the enforcement rights of the Prepetition Secured Parties (other than the Prepetition First Lien Secured Parties) with respect to Term Loan Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreements, as applicable, as if the DIP Agent was party thereto as a First Lien Term Loan Representative.

(d)      Except with respect to Prepetition ABL Secured Parties and Prepetition ABL Intercreditor Agreement solely as provided herein, in the event that any person or entity that holds a lien on or security interest in DIP Collateral that is junior or otherwise subordinate to the

DIP Liens receives any DIP Collateral or proceeds of DIP Collateral, or receives any payment on account of such lien or security interest in the DIP Collateral, (whether in connection with the exercise of any right or remedy (including setoff), payment or distribution from the Debtors, mistake, or otherwise), prior to the Payment in Full of all DIP Obligations, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Secured Parties, and shall immediately turn over all such proceeds to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, in the same form as received, with any necessary endorsements, for application in accordance with the DIP Loan Documents and this Interim Order. The DIP Agent, at the direction of the Required DIP Lenders, is hereby authorized to make any such endorsement as agent for each of the Prepetition Agents or any Prepetition Secured Party. This authorization is coupled with an interest and is irrevocable.

(e)    Except as expressly provided herein or in the DIP Loan Documents, no claim or lien having a priority senior to or *pari passu* with those granted to any of the DIP Secured Parties or Prepetition Secured Parties by this Interim Order shall be granted or permitted while any of the DIP Obligations, Adequate Protection Obligations or the Prepetition Secured Obligations, respectively, remain outstanding. Except as expressly provided in this Interim Order or the DIP Loan Documents, each of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Claims: (A) shall not be made junior or subordinated to or *pari passu* with (i) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, whether under section 364(d) of the Bankruptcy Code or otherwise, (ii) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, (iii) any lien arising after the Petition Date including, without limitation, any lien or security interests granted in favor of any

federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, or (iv) any intercompany or affiliate lien or claim; and (B) shall not be subject to sections 506(c) (subject to entry of the Final Order granting such relief), 510, 549, 550 or 551 of the Bankruptcy Code.

18.     *Maintenance of DIP Collateral.* Until such time as all DIP Obligations are Paid in Full (or as otherwise agreed in writing by the Required DIP Lenders) and all Prepetition ABL Obligations are Paid in Full (or as otherwise agreed in writing by the Prepetition ABL Agent), the Debtors shall continue to maintain all property, operational, and other insurance as required and as specified in the DIP Loan Documents, the Prepetition First Lien Loan Documents and Prepetition ABL Loan Documents. Upon the entry of this Interim Order, subject to, with respect to any applicable lease, the terms of the Debtors' leases for such non-residential real property (to the extent applicable), the DIP Agent, for the benefit of itself and the other DIP Secured Parties, shall automatically be deemed to be named as additional insured and lender loss payee under each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral (including all property damage and business interruption insurance policies of the Debtors, whether expired, currently in place, or to be put in place in the future), and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, at the direction of the Required DIP Lenders, *first*, to the Payment in Full of all DIP Obligations, and *second*, to the payment of the Prepetition Secured Obligations (subject to the terms and conditions of the Prepetition Intercreditor Agreements), subject, in the case of each of the immediately preceding two clauses, to paragraph 37 hereof; provided, that the rights or liens granted hereunder shall not interfere with any rights held by a landlord to insurance proceeds for damages to a landlord's property for which the landlord is the insured or loss payee thereunder. Notwithstanding the

foregoing, the Debtors and/or the Prepetition Agents shall take any actions reasonably requested by the DIP Agent, at the direction of the Required DIP Lenders, to have the DIP Agent, on behalf of itself and the other DIP Secured Parties, added as an additional insured and lenders loss payee on each such insurance policy.

19.      *Cash Management.* Until such time as all DIP Obligations and Prepetition Secured Obligations are Paid in Full, the Debtors shall maintain the cash management system in effect as of the Petition Date, as modified by this Interim Order and any order of the Court authorizing the continued use of the cash management system that is acceptable to the Required DIP Lenders, the DIP Agent and the Prepetition ABL Agent. The Debtors shall not open any new deposit or securities account that is not subject to the liens and security interests of each of the DIP Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition First Lien Secured Parties (in which case they shall be subject to the lien priorities and other provisions set forth in this Interim Order).

20.      *Reporting; Access to Records.* The Debtors shall provide the DIP Lenders and Lender Advisors with all reporting, management calls, access to books and records and other information required to be provided to any of the DIP Secured Parties under the DIP Loan Documents. Without limiting the requirements contained herein or in the DIP Loan Documents, the Debtors shall (a) provide the DIP Agent (and its advisors), the Required DIP Lenders, the Ad Hoc Lender Group and any Official Committee (and each of their respective advisors) with (i) all reports, documents, and information required to be delivered under the DIP Loan Documents (contemporaneously when the same is required to be delivered thereunder), and (ii) reasonable access, upon reasonable notice and during regular business hours, to the Debtors' books and records, assets and properties, for purposes of monitoring the Debtors' businesses and operations

and the value of the DIP Collateral, and (b) reasonably cooperate and consult with, and provide information reasonably requested by the DIP Agent, at the direction of the Required DIP Lenders, the Required DIP Lenders, the Ad Hoc Lender Group or any Official Committee (and their respective advisors) concerning the Debtors' businesses, financial condition, properties, business operations and assets.

21.     *DIP Termination Events; Exercise of Remedies.*

(a)     *DIP Termination Events.* The occurrence of any of the following shall constitute a "DIP Termination Event" under this Interim Order (each a "***DIP Termination Event***", and the date upon which such DIP Termination Event occurs, the "***DIP Termination Date***"), unless waived in writing by the Required DIP Lenders: (i) the occurrence of an "Event of Default" under and as defined in the DIP Credit Agreement; (ii) the occurrence of the "Maturity Date" under and as defined in the DIP Credit Agreement; (iii) any of the Debtors seeks authorization from the Court for (or the Court enters an order authorizing or approving) any amendment, modification, or extension of this Interim Order or the DIP Loan Documents without the prior written consent of the Required DIP Lenders (and no such consent shall be implied by any other action or inaction of any of the DIP Secured Parties); (iv) the failure of the Debtors to make any payment required under this Interim Order or the DIP Loan Documents to any of the DIP Secured Parties or the Prepetition First Lien Secured Parties as and when due and payable hereunder or thereunder; (v) the failure by any of the Debtors to timely perform or comply in any material respect, with any of the other terms, provisions, conditions or other obligations under this Interim Order; or (vi) the occurrence of any Cash Collateral Termination Event.

(b)     *Remedies Upon DIP Termination Event.* Upon the occurrence and during the continuation of a DIP Termination Event, without further notice to, hearing, or order from the

Court, the automatic stay provisions of Section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Agent, acting at the direction of the Required DIP Lenders, to, subject to the terms of the Prepetition Intercreditor Agreements (if applicable): (i) deliver to the Lead Borrower a notice declaring the occurrence of a DIP Termination Event; (ii) declare the termination, reduction or restriction of the commitments under the DIP Facility (to the extent any such commitment remains); (iii) declare the DIP Obligations then outstanding to be due and payable; (iv) declare the termination of the DIP Facility and the DIP Loan Documents as to any further liability or obligation thereunder, but without affecting the DIP Liens or the DIP Obligations; (v) declare the reduction or restriction on the DIP Facility or the DIP Loan Documents; (vi) declare the termination, restriction or revocation of the ability of the Debtors to use Cash Collateral; (vii) charge interest at the default rate under the DIP Facility; (viii) freeze all monies or balances in any deposit accounts of the Debtors; (ix) immediately exercise any and all rights of set-off; (x) exercise any right or remedy against the DIP Collateral, including, without limitation, the disposition of DIP Collateral for application towards the DIP Obligations; or (xi) take any other action or exercise any other right or remedy permitted under the DIP Loan Documents, this Interim Order or applicable law; <u>provided</u> that, in the case of the enforcement of rights against the DIP Collateral pursuant to clauses (vi), (vii), (viii), (ix), (x) and (xi) of this paragraph 21(b), the DIP Agent, acting at the direction of the Required DIP Lenders, shall provide counsel to the Debtors, the Prepetition ABL Agent and ABL Advisors, counsel to any Official Committee and the U.S. Trustee five (5) days' prior written notice (the "***Remedies Notice***")[10] (which may be provided by email or other electronic means),

---

[10] For the avoidance of doubt, the Remedies Notice, or any other notice contemplated under this paragraph 21 may be included in the Carve Out Trigger Notice.

and during such five (5) day notice period (the "***Remedies Notice Period***"), the Debtors, any Official Committee or any other party in interest shall be permitted to request an emergency hearing before the Court (which request must be made prior to the conclusion of the Remedies Notice Period, and shall seek consideration of such request on an expedited basis) to consider any appropriate relief, including, without limitation, the Debtors' non-consensual use of Cash Collateral; provided, however, that, during the Remedies Notice Period, the Debtors are permitted to use Cash Collateral solely to fund expenses critically necessary to preserve the value of the Debtors' businesses, as determined by the Required DIP Lenders, and the Carve Out Reserves.

(c)     Unless the Court orders otherwise, following the expiration of the Remedies Notice Period, without further notice to, hearing or order from the Court, the automatic stay of section 362 of the Bankruptcy Code shall automatically be vacated and modified for the purposes of permitting the DIP Secured Parties to exercise any and all rights and remedies available to them under this Interim Order, the DIP Loan Documents, and applicable law (including, without limitation, the enforcement of rights against DIP Collateral pursuant to clauses (vi), (vii), (viii), (ix), (x) and (xi) of paragraph 21(b), subject to the Prepetition Intercreditor Agreements, as applicable). Notwithstanding the foregoing, the DIP Secured Parties may only enter upon a leased premises of the Debtors' after a DIP Termination Event in accordance with (i) a separate written agreement among the DIP Secured Parties and the applicable landlord for the leased premises, (ii) pre-existing rights of the DIP Secured Parties under applicable non-bankruptcy law, (iii) written consent of the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving such access to the leased premises after notice and an opportunity to be heard for the applicable landlord for the leased premises.

(d)     Following the expiration of the Remedies Notice Period, and following the Payment in Full of all DIP Obligations (unless the Required DIP Lenders otherwise agree in writing), unless otherwise ordered by the Court during the Remedies Notice Period, the automatic stay of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the Prepetition Agents (acting at the direction of the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents) (subject to the Prepetition Intercreditor Agreements), to exercise all rights and remedies available under the Prepetition Loan Documents or applicable law with respect to Prepetition Collateral consistent with this Interim Order.

(e)     The Debtors shall cooperate with the DIP Secured Parties and/or the Prepetition Secured Parties in their efforts to enforce their liens and security interests in the DIP Collateral or the Prepetition Collateral, as applicable, and (other than the right to contest whether a DIP Termination Event has occurred and is continuing) the Debtors shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its rights or remedies in the DIP Collateral or the Prepetition Collateral, as applicable.

(f)     Upon the occurrence of any of the below events (a "***Cash Collateral Termination Event***"), the Prepetition ABL Secured Parties, on not less than five (5) days' notice to the Debtors, the Official Committee (if any), and the DIP Lenders (such five (5) day period, the "***ABL Remedies Notice Period***"), during which ABL Remedies Notice Period the Debtors, the DIP Lenders, any Official Committee or any other party shall be permitted to request an emergency hearing before the Court (which request must be made prior to the conclusion of the ABL Remedies Notice Period, and shall seek consideration of such request on an expedited basis)

to consider any appropriate relief, including, without limitation, the Debtors' non-consensual use of Cash Collateral, may terminate their consent to the Debtors' use of Cash Collateral constituting ABL Priority Collateral (unless otherwise ordered by the Court); provided, however, that during the ABL Remedies Notice Period, the Debtors are permitted to use Cash Collateral solely to fund expenses critically necessary to preserve the value of the Debtors' businesses, as determined by the requisite Prepetition ABL Secured Parties, and the Carve Out Reserves (the date on which the Prepetition ABL Secured Parties' consent to the Debtors' use of Cash Collateral is terminated in accordance with this paragraph 21(f), the "***Cash Collateral Termination Date***"):

(i)      the occurrence and continuance of an Event of Default (as defined in the DIP Credit Agreement) that has not been waived by the Required DIP Lenders pursuant to the DIP Loan Documents or cured for a period of five (5) Business Days;

(ii)      the termination of all commitments under the DIP Facility, other than in accordance with the DIP Documents;

(iii)      the failure of the DIP Lenders to fund a material portion of any properly requested draw under the DIP Facility in violation of the terms of the DIP Loan Documents, which failure has not been remedied within five (5) days after such request;

(iv)      the exercise of remedies by the DIP Agent including, but not limited to, the termination of the consensual use of Cash Collateral or the delivery of a Carve Out Trigger Notice;

(v)      the failure to make any payment of interest owed pursuant to paragraph 10(b)(i) within five (5) Business Days after such payment becomes due;

(vi)      the failure to fund the Adequate Protection Account (as defined herein) in accordance with the terms of this Interim Order within five (5) Business Days of an Availability Event (as defined herein);

(vii)      the filing of any motion or pleading by the Debtors to stay, vacate, reverse, amend or modify this Interim Order or the Final Order in a manner materially adverse to the Prepetition ABL Secured Parties without their consent;

(viii)      the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors;

(ix)    the Debtors shall attempt to invalidate or reduce the Prepetition ABL Obligations;

(x)    the dismissal of any of the Chapter 11 Cases;

(xi)    the effective date of any chapter 11 plan;

(xii)    the conversion of any of the Chapter 11 Cases to a case under chapter 7;

(xiii)    the failure to deliver any Borrowing Base Certificate (as defined herein) within three (3) Business Days after the date which such Borrowing Base Certificate is required to be delivered under this Interim Order; and

(xiv)    the stay, reversal, vacatur, rescission or other modification of this Interim Order or the Final Order in a manner materially adverse to the Prepetition ABL Secured Parties without the consent of the Prepetition ABL Secured Parties.

22.    *No Waiver by Failure to Seek Relief.* The rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties specified herein, are cumulative and not exclusive of any rights or remedies that the DIP Secured Parties or the Prepetition Secured Parties may have under the DIP Loan Documents, the Prepetition Loan Documents, applicable law or otherwise. The failure or delay on the part of any of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Loan Documents, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise. No delay on the part of any party in the exercise of any right or remedy under this Interim Order, the DIP Loan Documents or the Prepetition Loan Documents shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. Except as otherwise set forth in the Prepetition Intercreditor Agreements, none of the rights or remedies of any party under this Interim Order, the DIP Loan Documents and the Prepetition Loan Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the requisite parties under the DIP Loan

Documents and the requisite parties under the Prepetition Loan Documents, as applicable. No consents required hereunder by any of the DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or the Prepetition Secured Parties (as applicable).

23.    *Carve Out.*

(a)    *Carve Out.* As used in this Interim Order, the term "**Carve Out**" means an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in clause (iii) below), (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below), (iii) to the extent allowed by this Court at any time, whether by interim order, procedural order, or otherwise (which order has not been vacated or stayed), all accrued and unpaid fees and expenses (in each case, including any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors to the DIP Loan Parties when and if earned pursuant to the terms and conditions of an engagement letter approved by this Court in these Chapter 11 Cases) (collectively, the "*Allowed Professional Fees*") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "***Debtor Professionals***") and the Official Committee (if appointed) pursuant to section 328 or 1103 of the Bankruptcy Code (the "***Committee Professionals***", and together with the Debtor Professionals, the "***Professional Persons***") at any time before or on the first day following the date of delivery by the DIP Agent, at the direction of the Required DIP Lenders, of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (and in the

case of the Committee Professionals, not to exceed the aggregate amounts set forth for the Committee Professionals in the Approved Budget), and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $4,000,000 incurred after the first day following the date of delivery by the DIP Agent, at the direction of applicable the Required DIP Lenders, of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "***Post-Carve Out Trigger Notice Cap***"); provided, however, that nothing herein shall be construed to impair the ability of any party in interest to object to the fees, expenses, reimbursement, or compensation described in clauses (i) through (iv) of this paragraph 23(a) on any grounds. The "***Carve Out Trigger Notice***" shall mean a written notice delivered by email (or other electronic means) by (x) the DIP Agent (at the direction of the Required DIP Lenders) and/or (y) the Prepetition ABL Agent, in each case, to counsel to the Debtors, the U.S. Trustee and counsel to the Official Committee (if any), which notice may be delivered following the occurrence and during the continuation of a DIP Termination Event (in the case of a Carve-Out Trigger Notice delivered by the DIP Agent) and/or a Cash Collateral Termination Event (in the case of a Carve-Out Trigger Notice delivered by the Prepetition ABL Agent), stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     *Carve Out Reserves.*  The Debtors shall, on a weekly basis, transfer cash proceeds of the DIP Facility or cash on hand into a segregated account (the "***Professional Fees Account***") in an amount equal to the reasonable good faith estimates of Professional Persons of the amount of unpaid fees and expenses incurred during the preceding week by such Professional Persons. The Professional Fees Account, if applicable, shall be held in trust and used solely to satisfy Allowed Professional Fees. On the day on which a Carve Out Trigger Notice is delivered

in accordance with this paragraph 23(b) of this Interim Order, (the "***Termination Declaration Date***"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash (including Cash Collateral) on hand as of such date, including funds in the Professional Fees Account, if applicable, (net of any amounts held on retainer by any Professional Persons) and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees accrued on and prior to the Termination Declaration Date (the "***Pre-Carve Out Trigger Notice Reserve***"). Upon the occurrence of a Termination Declaration Date, Professional Persons shall have two (2) Business Days thereafter to deliver fee statements to the Debtors and the DIP Agent that cover such Professional Persons' reasonable good faith estimate of the Allowed Professional Fees incurred by such Professional Persons through and including the Termination Declaration Date. On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors as of such date to utilize all cash (including Cash Collateral) on hand as of such date (net of any amounts held on retainer by any Professional Persons) and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Trigger Notice Reserve***" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve Out Reserves***"). The Carve Out Reserves shall be deposited in segregated non-interest bearing trust accounts at the DIP Agent, to be held in trust, and used solely to satisfy Allowed Professional Fees benefitting from the Carve Out in accordance with the terms hereof until such Allowed Professional Fees are paid in full. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of paragraph 23(a) (the "***Pre-Carve Out Amounts***"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the

extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent, for the benefit of itself and the other DIP Secured Parties, for application to the DIP Obligations in accordance with the DIP Credit Agreement, unless and until the DIP Obligations are Paid in Full, in which case, any remaining excess shall be paid to the Prepetition Secured Parties (subject to the terms of the Prepetition Intercreditor Agreements) in accordance with their rights and priorities set forth in the Prepetition Intercreditor Agreements, as of the Petition Date (unless the DIP Agent, at the direction of the Required DIP Lenders, and the requisite Prepetition Secured Parties, respectively, have otherwise agreed in writing in respect of the applicable obligations owed to each of them). All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of paragraph 23(a) (the "*Post-Carve Out Amounts*"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent, for itself and for the benefit of the other DIP Secured Parties, for application to the DIP Obligations in accordance with the DIP Credit Agreement, unless and until the DIP Obligations are Paid in Full (unless the Required DIP Lenders have otherwise agreed in writing), in which case, any remaining excess shall be paid to the Prepetition Agents for the benefit of the Prepetition Secured Parties (subject to the terms of the Prepetition Intercreditor Agreements) in accordance with their rights and priorities set forth in the Prepetition Intercreditor Agreements (unless the Required DIP Lenders and the requisite Prepetition Secured Parties, respectively, have otherwise agreed in writing in respect of the applicable obligations owed to each of them). Notwithstanding anything to the contrary in the DIP Loan Documents, the Prepetition Loan Documents or this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 23, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and

Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 23, prior to making any payments to the DIP Agent, for itself and for the benefit of the other DIP Secured Parties, the Prepetition Agents or any of the Debtors' creditors, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents, the Prepetition Loan Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the DIP Agent, at the direction of the Required DIP Lenders, and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but the DIP Liens and the Adequate Protection Liens shall automatically attach to any residual interest in the Carve Out Reserves (which liens shall be deemed automatically perfected senior liens), with any excess paid to the DIP Agent, for itself and for the benefit of the other DIP Secured Parties, unless and until the DIP Obligations are Paid in Full, in which case, any remaining excess shall be paid to the Prepetition Agents for the benefit of the Prepetition Secured Parties (subject to the terms of the Prepetition Intercreditor Agreements) in accordance with their rights and priorities set forth in the Prepetition Intercreditor Agreements (unless the Required DIP Lenders and the requisite Prepetition Secured Parties, respectively, have otherwise agreed in respect of the applicable obligations owed to each of them). Notwithstanding anything to the contrary in this Interim Order, (x) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans or indebtedness under the DIP Loan Documents or the Prepetition Loan Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (y) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (z) nothing contained herein shall constitute

a cap or limitation on the ability of the Professional Persons to assert a claim on account of Allowed Professional Fees that are due and payable by the Debtors.

(c)      *Payment of Allowed Professional Fees Prior to Termination Declaration Date.* Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall reduce the Carve Out on a dollar-for-dollar basis.

(d)      *Payment of Carve Out on or After the Termination Declaration Date*. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis; provided, however, prior to repayment from the Carve Out Reserves, any retainers held by Professional Persons shall be applied to repay the obligations set forth in clauses (iii) and (iv) of paragraph 23(a) prior to repayment of such obligations from the Carve Out Reserves, and, concurrent with such repayment of such obligations using such retainers, the Carve Out shall permanently be reduced on a dollar for dollar basis.

(e)      *No Direct Obligation to Pay Allowed Professional Fees.* None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    *Priority of Carve Out.* For the avoidance of doubt, notwithstanding anything to the contrary in this Interim Order, the Carve Out shall be senior to all liens, security interests, and superpriority claims granted hereunder, under the DIP Loan Documents or the Prepetition Loan Documents.

(g)    *No Carve Out for the Interim Period.*  Notwithstanding anything to the contrary in this Interim Order: (a) the Debtors shall not fund the Professional Fees Account; and (b) the Carve Out shall not prime any liens on the DIP Collateral or be senior in priority to any other administrative claims against the Debtors, in the case of each of (a) and (b), unless a Final Order providing for such relief is entered.

24.    *Effect of the Debtors' Stipulations on Third Parties.*

(a)    The Debtors' Stipulations contained in paragraph F of this Interim Order shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes immediately upon entry of this Interim Order. The Debtors' Stipulations shall be binding upon any Official Committee, all other creditors, and all parties-in-interest and each of their respective successors and assigns, in all circumstances and for all purposes, unless (i) the Official Committee or such party-in-interest (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) obtains requisite standing pursuant to an order of the Court entered prior to the Challenge Deadline (as defined below) and has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "***Challenge Proceeding***") by no later than the Challenge Deadline, (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Loan

Documents, the Prepetition Secured Obligations, the Prepetition Liens or the Prepetition Collateral, or otherwise objecting to or challenging any of the admissions, stipulations, findings or releases included in the Debtors' Stipulations, (B) asserting or prosecuting any so-called "lender liability" claims, Avoidance Actions or any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action seeking reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery with respect to the Prepetition Liens, the Prepetition Secured Obligations or the Prepetition Loan Documents, and (C) asserting or prosecuting any other claim or Cause of Action of any nature or description whatsoever, whether arising under the Bankruptcy Code, applicable law or otherwise, against any of the Prepetition Secured Parties or their Representatives (clauses (A)-(C), collectively, the "**Challenges**", and each, a "**Challenge**"), and (ii) there is entered a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely Challenge in any duly-filed Challenge Proceeding; provided, however, that as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date; provided, further, however, that any pleadings filed in connection with any Challenge Proceeding, including any motion filed with the Court seeking requisite standing and authority to pursue a Challenge, shall include a draft complaint attached thereto and shall set otherwise forth with specificity the basis for each such Challenge, and any Challenge not so specified in a Challenge Proceeding timely and properly filed prior to the Challenge Deadline shall be deemed forever, waived, released and barred.

(b)     If no such Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of the plaintiff in any such Challenge

Proceeding, then, without further notice or order of the Court, (i) each of the admissions, stipulations, findings and releases contained in the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, any Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), (ii) the Prepetition Secured Obligations shall constitute allowed claims against each of the Debtors party to the Prepetition Loan Documents in the Chapter 11 Cases and any Successor Cases, and the Prepetition Liens shall be deemed to be legal, valid, non-avoidable, binding, continuing, perfected and enforceable, as of the Petition Date, against each of the Debtors party to the Prepetition Loan Documents in the Chapter 11 Cases and any Successor Cases, (iii) the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Loan Documents shall not be subject to any other or further Challenge, contest, attack, objection, challenge, defense, claim, counterclaim, reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by any Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), and (iv) all Challenges against any of the Prepetition Secured Parties or any of their Representatives (in their capacities as such) shall be deemed forever waived, released and barred.

(c)        If any such Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on any Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), except to the extent that any of the admissions, stipulations, findings or releases contained in the Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and <u>not</u>, for the avoidance of doubt, any other party-interest).

(d)        The "**_Challenge Deadline_**"means  the  date  that  is  (i)  seventy-five  (75) calendar  days  after  the  entry  of  this  Interim  Order,  (ii) as  to  each  of  the  Prepetition  Loan Documents, such later date as has been agreed to, in writing, by the requisite Prepetition Secured Parties,  as  applicable,  under  the  applicable  Prepetition  Loan  Documents  solely  respect  to  the Challenges pertaining to such Prepetition Loan Document, and (iii) any such later date as has been ordered by the Court, for cause shown, upon a motion filed and served within the time period set forth in clause (i) of this paragraph 24(d).

(e)        For the avoidance of doubt, the Debtors' stipulations, waivers, agreements and releases contained in paragraph E of this Interim Order shall <u>not</u> be subject to Challenge (other than with respect to the Roll Up DIP Loans), and shall be binding upon the Debtors and their estates, and any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or selected in any of the Chapter 11 Cases or any Successor Cases), any Official Committee, all other creditors and all parties-in-interest and each of their

respective successors and assigns, in all circumstances and for all purposes, immediately upon entry of this Interim Order.

(f)     Nothing in this Interim Order vests or confers on any person or entity, including any Official Committee, standing or authority to pursue any Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.  The filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a proposed Challenge, shall extend the Challenge Deadline with respect to that party to the date that is two (2) Business Days after the Court rules on such standing motion, or such other time period ordered by the Court in approving the standing motion.

25.     *Limitations on Use of DIP Collateral, Cash Collateral, Carve Out or Other Funds:* Notwithstanding anything contained in this Interim Order or any other order of the Court to the contrary, no DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out or any other funds may be used (nor shall any professional fees, costs, or expenses be paid or applied in connection therewith) by any of the Debtors, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-interest (including without limitation any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), directly or indirectly:

> (a)     to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, initiate, assert, commence, support or prosecute (or finance the initiation or prosecution of) any claim, counterclaim, cross-claim, Cause of Action, suit, arbitration, proceeding, application, motion, contested matter, objection, defense, adversary proceeding, litigation or other proceeding of any nature or description (whether for monetary, injunctive, affirmative relief or otherwise) against any of the DIP Secured Parties or the Prepetition Secured Parties or their respective Representatives, including, without limitation, (i) any objection or challenge to the amount, validity, enforceability, extent, perfection or priority the DIP Loan Documents, the DIP Obligations (including, for the avoidance of doubt, the Backstop Premium, the

Commitment Premium, the Exit Premium and the Fronting Fee), the DIP Liens, the DIP Collateral, the Adequate Protection Liens, the Adequate Protection Claims and the other Adequate Protection Obligations, the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens or the Prepetition Collateral, (ii) any Avoidance Actions, (iii) any so-called "lender liability" claims, (iv) any claim or Cause of Action seeking the invalidation, reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharging or recovery with respect to the DIP Liens, the DIP Obligations (including, for the avoidance of doubt, the Backstop Premium, the Commitment Premium, the Exit Premium and the Fronting Fee), the DIP Loan Documents, the DIP Collateral, the Adequate Protection Liens, the Adequate Protection Claims and the other Adequate Protection Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Loan Documents or the Prepetition Collateral, (vi) any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, any other domestic or foreign statute, law, rule or regulation or otherwise, against any of the DIP Secured Parties or the Prepetition Secured Parties or their respective Representatives;

(b)      objecting to, appealing or otherwise challenging this Interim Order, the DIP Facility, the DIP Obligations (including, for the avoidance of doubt, the Backstop Premium, the Commitment Premium, the Exit Premium and the Fronting Fee), the DIP Liens, the DIP Loan Documents or the transactions contemplated hereunder or thereunder;

(c)      objecting to or seeking to impair, modify or interfere with any of the rights, remedies, priorities, privileges, protections or benefits granted to the DIP Secured Parties or the Prepetition Secured Parties under this Interim Order or the DIP Loan Documents (other than to contest whether a DIP Termination Event has occurred and is continuing);

(d)      objecting to or seeking to prevent, hinder, interfere with or otherwise delay any of the DIP Secured Parties', Prepetition First Lien Secured Parties' or the Prepetition ABL Secured Parties' assertion, enforcement, exercise of remedies or realization upon any DIP Collateral or Prepetition Collateral (as applicable) in accordance with this Interim Order, the DIP Loan Documents or the Prepetition Loan Documents (as applicable) (other than to contest whether a DIP Termination Event has occurred and is continuing);

(e)      seeking or requesting authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code, or otherwise, unless such financing is sufficient to cause the Payment in Full of all DIP Obligations and Prepetition Secured Obligations contemporaneously with the closing of such financing (or as otherwise agreed in writing by the Required DIP Lenders and the requisite Prepetition Secured Parties, as applicable);

(f)      seeking or requesting authorization to obtain superpriority claims or liens or security interests (other than liens or security interests expressly permitted under the DIP Loan Documents) in any portion of the DIP Collateral that are senior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Liens or the Prepetition Secured Obligations unless all DIP Obligations and Prepetition Secured Obligations have been Paid in Full (or as

otherwise agreed in writing by the Required DIP Lenders or the requisite Prepetition Secured Parties, as applicable); or

(g)        seeking or requesting to use Cash Collateral or sell or otherwise dispose of DIP Collateral (without the prior written consent of the Required DIP Lenders) other than as provided herein and in the DIP Loan Documents;

(h)        seeking to pay any amount on account of any claims arising prior to the commencement of these Chapter 11 Cases, unless such payments are agreed to in writing by the Required DIP Lenders (or are otherwise included in the Approved Budget);

*provided, however*, that no more than $50,000 of the DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out or any other funds may be used for allowed fees and expenses incurred by any Official Committee prior to the Challenge Deadline to investigate (but not to litigate, contest, initiate, assert, join, commence, support or prosecute any claim, Cause of Action or Challenge, including by way of discovery, with respect to), the validity, enforceability, extent, perfection or priority of the Prepetition Liens, the Prepetition Secured Obligations and the Prepetition Loan Documents.

26.        *Limitation on Charging Expenses.* Except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the DIP Secured Parties, the Prepetition First Lien Secured Parties, or the Prepetition ABL Secured Parties, respectively, upon the DIP Collateral, the Prepetition First Lien Collateral, or the Prepetition ABL Collateral, respectively, shall be charged against or recovered from the DIP Collateral as to DIP Secured Parties, the Prepetition First Lien Collateral as to the Prepetition First Lien Secured Parties, or the Prepetition ABL Collateral as to the Prepetition ABL Secured Parties, whether pursuant to section 506(c) of the Bankruptcy Code, any other legal or equitable doctrine (including unjust enrichment) or otherwise, without the prior written consent of the Required DIP Lenders with respect to the DIP Collateral, the requisite

Prepetition First Lien Secured Parties under the Prepetition First Lien Loan Documents with respect to the Prepetition First Lien Collateral, or the requisite Prepetition ABL Secured Parties under the Prepetition ABL Loan Documents with respect to the Prepetition ABL Collateral, each in their sole discretion, and no such consent shall be implied, directly or indirectly, from anything contained in this Interim Order (including, without limitation, consent to the Carve Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by any of the DIP Secured Parties, any of the Prepetition First Lien Secured Parties, or any of the Prepetition ABL Secured Parties; provided, however, that the foregoing shall be subject to the terms of the Final Order granting such relief.

27.     *No Marshalling; Section 552(b) Waiver.* In no event shall the DIP Secured Parties, the Prepetition First Lien Secured Parties, or the Prepetition ABL Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition First Lien Collateral, the Prepetition First Lien Secured Obligations, the Prepetition ABL Collateral, or the Prepetition ABL Secured Obligations (as applicable) (other than with respect to Debtor Freedom VCM Holdings, LLC as specifically set forth in paragraph 33 below), and all proceeds of the DIP Collateral, the Prepetition First Lien Collateral, and the Prepetition ABL Collateral shall be received and applied in accordance with this Interim Order, the DIP Loan Documents, the Prepetition Intercreditor Agreements, the Prepetition First Lien Loan Documents, and the Prepetition ABL Loan Documents, as applicable; provided, however, that the foregoing shall be subject to the terms of the Final Order granting such relief. Each of the Prepetition First Lien Secured Parties and the Prepetition ABL Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, in no event shall the "equities of the case" exception in

section 552(b) of the Bankruptcy Code apply to the Prepetition First Lien Secured Parties, the Prepetition First Lien Collateral, the Prepetition ABL Secured Parties, or the Prepetition ABL Collateral.

28.     *Right to Credit Bid.* Subject to the terms of the Prepetition Intercreditor Agreements (to the extent applicable), the DIP Agent or its designee (which may be an acquisition vehicle formed by the Required DIP Lenders) (in each case, acting at the direction of the Required DIP Lenders), shall have the unqualified right to credit bid up to the full amount of the applicable DIP Obligations, including, for the avoidance of doubt, the Interim Roll Up DIP Loans, in any sale of all or any portion of DIP Collateral (including, for the avoidance of doubt, any asset for which the DIP Collateral is limited to the proceeds thereof as a result of applicable law prohibiting encumbrances from being attached to such asset) subject to and in accordance with the DIP Loan Documents, and (b) subject to section 363(k) of the Bankruptcy Code, each of the Prepetition Agents or its/their designee(s) (which may be an acquisition vehicle) (in each case, acting at the direction of the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents) shall have the unqualified right to credit bid up to the full amount of the applicable Prepetition Secured Obligations in any sale all or any portion of the Prepetition Collateral (including, for the avoidance of doubt, any asset for which the Prepetition Collateral is limited to the proceeds thereof as a result of applicable law prohibiting encumbrances from being attached to such asset) in accordance with the applicable Prepetition Loan Documents (subject to the Prepetition Intercreditor Agreements), in the case of each of foregoing clauses (a) and (b), without the need for further order of the Court authorizing same, whether in a sale under or pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, a sale or disposition by a chapter 7 trustee for any

of the DIP Loan Parties under section 725 of the Bankruptcy Code, or otherwise. The DIP Agent (acting at the direction of the Required DIP Lenders) and the Prepetition Agents (acting at the direction of the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents), shall each have the absolute right to assign, transfer, sell, or otherwise dispose of their respective rights to credit bid (subject to the Prepetition Intercreditor Agreements and this Interim Order) to any acquisition vehicle formed in connection with such bid or other designee.

29.     *Binding Effect; Successors and Assigns*. Immediately upon entry of this Interim Order, subject to paragraph 24 of this Interim Order, the provisions of the DIP Loan Documents and this Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any Official Committee or any other committee appointed or formed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Cases, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of each of the Debtors, the DIP Secured Parties and the Prepetition Secured Parties and their respective successors and assigns; provided, however, that, for the avoidance of doubt, the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to make any loan, permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

30.     *No Modification of Interim Order.* Until and unless the DIP Obligations and the Prepetition Secured Obligations have been Paid in Full, the Debtors irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the Required DIP Lenders, (i) any modification, stay, vacatur or amendment to this Interim Order, (ii) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the DIP Superpriority Claims (other than the Carve Out), (iii) the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the DIP Liens, except as expressly permitted hereunder or under the DIP Loan Documents, (iv) the entry of any order authorizing the use of DIP Collateral (including Cash Collateral) that is inconsistent with this Interim Order, or (b) without the prior written consent of the Prepetition Agents, acting at the direction of the requisite Prepetition Secured Parties, (i) any modification, stay, vacatur or amendment to this Interim Order that adversely affects the rights, remedies, benefits or protections of the applicable Prepetition Secured Parties, (ii) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the Adequate Protection Claims (other than the Carve Out and the DIP Superpriority Claims), or (iii) the grant of any lien or security interest on any DIP Collateral or Prepetition Collateral with priority equal to or superior to the Adequate Protection Liens, except as expressly permitted hereunder or under the DIP Loan Documents.

31.     *Proceeds of Subsequent Financings.* Without limiting the provisions of the immediately preceding paragraph, if at any time prior to the Payment in Full of all of the DIP Obligations, the Adequate Protection Obligations and the Prepetition Secured Obligations, either the Debtors, the Debtors' estates, any chapter 11 trustee, chapter 7 trustee or examiner with enlarged powers, or any responsible officer subsequently appointed in any of the Chapter 11 Cases

or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Interim Order or the DIP Loan Documents, then, unless otherwise agreed in writing by the Required DIP Lenders, all of the cash proceeds derived from such credit or debt intended to refinance the DIP Obligations shall immediately be turned over to the DIP Agent for further distribution to the DIP Secured Parties on account of their DIP Obligations pursuant to the applicable DIP Loan Documents.

32.     *Preservation of Rights Granted Under Interim Order.*

(a)     *Good Faith Under Section 364(e) of the Bankruptcy Code.* The DIP Secured Parties and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order, the DIP Facility and the DIP Loan Documents, and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and upon the record made at the Interim Hearings and during these Chapter 11 Cases, the DIP Secured Parties and the Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Interim Order or the DIP Loan Documents are hereafter reversed or modified on appeal by any order of this Court or any other court, any such reversal or modification shall not affect (i) the validity of any DIP Obligations incurred hereunder, (ii) the priority of the DIP Liens granted hereunder, or (iii) the validity of the DIP Liens granted hereunder, to the DIP Lenders or DIP Agents, whether or not the DIP Lenders or DIP Agents know of such appeal, unless the authorization to incur the DIP Obligations or the grant of the DIP Liens hereunder is stayed pending appeal. Notwithstanding any such reversal or modification, any such claim, lien, or security interest, right, privilege, remedy or benefit shall be governed in all respects by the original provisions of this Interim Order, the Prepetition Intercreditor Agreements and the DIP Loan Documents.

(b)    *Survival.* Notwithstanding anything contained herein or in the DIP Loan Documents to the contrary, the terms and provisions of this Interim Order and the DIP Loan Documents (including, without limitation, all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the DIP Secured Parties and the Prepetition Secured Parties under this Interim Order and the DIP Loan Documents), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties-in-interest, and shall be governed by the original provisions of this Interim Order and maintain their priorities as set forth in this Interim Order, and shall not be modified, impaired, or discharged by, entry of any order that may be entered (i) confirming any chapter 11 plan in any of the Chapter 11 Cases, (ii) converting any or all of the Chapter 11 Cases to a case (or cases) under chapter 7 of the Bankruptcy Code, (iii) dismissing any or all of the Chapter 11 Cases, (iv) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases, or (v) approving the sale or disposition of any DIP Collateral (except as expressly permitted in the DIP Loan Documents), in each case, until all of the DIP Obligations, the Adequate Protection Obligations and the Prepetition Secured Obligations have been Paid in Full (unless the Required DIP Lenders and/or the requisite Prepetition Secured Parties have otherwise agreed in writing in respect of the applicable obligations owed to each of them).

(c)    *Dismissal/Conversion.* If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Secured Parties and the Prepetition Secured Parties hereunder and under the DIP Loan

Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order and the Prepetition Intercreditor Agreements until all DIP Obligations, Adequate Protection Obligations and Prepetition Secured Obligations have been Paid in Full (and that all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections, notwithstanding such dismissal or conversion, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing this Interim Order, the DIP Loan Documents, the Prepetition Intercreditor Agreements and all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Secured Parties and the Prepetition Secured Parties hereunder or thereunder.

33.    *Debtor Freedom VCM Holdings, LLC.* Notwithstanding anything to the contrary herein, with respect to Debtor Freedom VCM Holdings, LLC, the DIP Obligations shall be repaid, *first,* from DIP Collateral comprised of Unencumbered Property of all DIP Loan Parties (other than Debtor Freedom VCM Holdings, LLC), *second*, from all other DIP Collateral of all DIP Loan Parties (other than Debtor Freedom VCM Holdings, LLC), and *third*, from assets at Debtor Freedom VCM Holdings, LLC.  Payment of any fees or expenses (including any director, officer, and manager fees, to the extent applicable) allocable to Debtor Freedom VCM Holdings, LLC with respect to the restructuring (including the Restructuring Transactions (as defined in the Restructuring Supporting Agreement)) or administration of the Chapter 11 Cases shall be conditioned upon an allocation among Debtor Freedom VCM Holdings, LLC and the other Debtors to be agreed upon in good faith between the Debtors and the Required Consenting First Lien Lenders (as defined in the Restructuring Supporting Agreement) (the "Freedom Allocated Fees and Expenses").  Debtor Freedom VCM Holdings, LLC shall be required to use any cash

(including Cash Collateral) it has on hand to pay its ratable share of such Freedom Allocated Fees and Expenses, if any; provided, that, for the avoidance of doubt, Debtor Freedom VCM Holdings, LLC, shall not otherwise use any of its cash (including Cash Collateral) until an agreement is reached on the Freedom Allocated Fees and Expenses; provided, further, that if the allocation results in Freedom VCM Holdings, LLC holding a claim against another Debtor, such claim shall be entitled to administrative expense priority, which administrative expense priority shall be junior in priority to the DIP Obligations.

34.     *Loss or Damage to Collateral.* So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Loan Documents, (a) the DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne solely by the Debtors.

35.     *Proofs of Claim.* The DIP Secured Parties and the Prepetition Secured Parties shall not be required to file proofs of claim or request for payment of administrative expenses in any of the Chapter 11 Cases or any of the Successor Cases in order to assert claims for payment in respect of the DIP Obligations, the Adequate Protection Obligations or the Prepetition Secured Obligations. The Debtors' Stipulations, acknowledgments and provisions of this Interim Order are deemed sufficient to and do constitute timely filed proofs of claim or request for payment of administrative expenses in respect of such claims arising under the DIP Obligations, the Adequate Protection Obligations and the Prepetition Secured Obligations against each of the applicable Debtors. Any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or

any Successor Chapter 11 Cases shall not apply to the DIP Secured Parties, the Prepetition Secured Parties, the DIP Obligations or the Prepetition Secured Obligations; provided, however, that, notwithstanding any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Agent (on behalf of itself or any of the other DIP Secured Parties), or any of the Prepetition Agents (on behalf of themselves and the applicable Prepetition Secured Parties (as applicable)), in their discretion, may (but are not required to) file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or any Successor Cases, and any such proof of claim may (but is not required to be) filed as one consolidated master proof of claim in the Debtors' lead Chapter 11 Case against all of the DIP Loan Parties, which shall be deemed to have been filed against each and every Debtor. Such consolidated or master proofs of claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable party, which instruments, agreements or other documents will be provided upon reasonable written request to the DIP Agent or the applicable Prepetition Agents, as the case may be. Any proof of claim filed by or on behalf of any of the DIP Secured Parties or the Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

36.    *Limitation of Liability.* Nothing in this Interim Order, the DIP Loan Documents or any documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claim arising from, in connection with or related to the prepetition or postpetition activities

of the Debtors and their respective affiliates in the operation of their businesses, their restructuring efforts or in connection with the administration of these Chapter 11 Cases. In determining to make any loan or extension of credit, or permit the use of Cash Collateral, or in exercising any rights or remedies hereunder, under the DIP Loan Documents or the Prepetition Loan Documents, neither the DIP Secured Parties nor the Prepetition Secured Parties shall (a) be deemed to be in control of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors or their creditors, shareholders or estates, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42, U.S. §§ 9601 et seq., as amended, or any similar federal or state statute).

37.     *Intercreditor Agreements.* Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreements, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Loan Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including, for the avoidance of doubt, with respect to the Adequate Protection Liens) and DIP Secured Parties (as if the DIP Agent was party thereto as a First Lien Term Loan Representative, in the case of the Prepetition ABL Intercreditor Agreement), and (iii) shall not be deemed amended, altered or modified by the terms of this Interim Order, except to the extent expressly set forth herein.

38.     *Payments Free and Clear.* Subject to the Carve Out, any and all payments or proceeds remitted to the DIP Secured Parties or the Prepetition Secured Parties pursuant to the DIP Loan Documents, the Prepetition Intercreditor Agreements, this Interim Order, the Final Order (if

and when entered) or any subsequent order of this Court shall be irrevocable (subject, solely in the case of certain professional fees, the fee review procedures set forth in paragraph 11 of this Interim Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, any claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the Debtors) (subject to paragraph 26 hereof), section 552(b) of the Bankruptcy Code (subject to paragraph 27 hereof) or otherwise.

39.     *Joint and Several Liability.* Nothing in this Interim Order shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for all obligations (including all DIP Obligations and all Adequate Protection Obligations) under this Interim Order and the DIP Loan Documents.

40.     *Third Party Beneficiary.* Except as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

41.     *Interim Order Controls.* In the event of any conflict or inconsistency between or among the terms or provisions of this Interim Order and any of the DIP Loan Documents, unless such term or provision in this Interim Order is phrased in terms of "defined in" or "as set forth in" the DIP Credit Agreement or DIP Loan Documents, the terms and provisions of this Interim Order shall govern and control. Notwithstanding anything contained in any other order entered by this Court to the contrary, any payment made pursuant to, or authorization contained in, any other order entered by this Court shall be consistent with and subject to the requirements set forth in this

Interim Order and the DIP Loan Documents, including, without limitation, the Approved Budget (subject to Permitted Variances).

42.    *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

43.    *Bankruptcy Rules.* The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

44.    *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order. When used in this Interim Order, the word "including" shall not imply limitation.

45.    *Necessary Action.* The Debtors are authorized to take any and all such actions as are necessary, required or appropriate to implement and effectuate the terms of this Interim Order, the DIP Loan Documents and the transactions contemplated hereunder and thereunder.

46.    *Retention of Jurisdiction.* The Court retains jurisdiction to hear, determine and, if applicable, enforce the terms of any and all matters arising from or related to the DIP Facility, the DIP Loan Documents, the Prepetition Intercreditor Agreements and this Interim Order, and the Court's jurisdiction shall survive confirmation and consummation of any chapter 11 plan for any of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

47.    *Final Hearing.* The Final Hearing shall be held on December 10, 2024 at 10:00 a.m. (prevailing Eastern Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than November 19, 2024 at 4:00 p.m. (prevailing Eastern Time) and served upon the following: (i) proposed co-counsel for the Debtors, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com) and Betsy L. Feldman, Esq. (bfeldman@willkie.com), and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:   Edmon L. Morton, Esq. (emorton@ycst.com) and Matthew B. Lunn, Esq. (mlunn@ycst.com); (ii) counsel to any official committee appointed in these Chapter 11 Cases; (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); (iv) counsel to the DIP Agent, Attn: Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Gregg Bateman, Esq. (bateman@sewkis.com), Sagar Patel, Esq. (patel@sewkis.com), and Michael Danenberg, Esq.(danenberg@sewkis.com); (v) counsel to the DIP Lenders and Ad Hoc Group of First Lien Lenders, (a) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (b) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com); (vi) counsel to the ABL Lenders, Attn: Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn:  Jennifer Ezring, Esq.  (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com); (vii) counsel to the

Second Lien Term Loan Lenders, White & Case LLP, 200 S Biscayne Blvd, Miami, FL 33131, Attn: Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100, Chicago, IL 60606, Attn: Bojan Guzina, Esq. (bojan.guzina@whitecase.com); and (viii) counsel to the HoldCo Lenders at the address set forth in (vii) above.

48.    *Notice of Entry of Interim Order.* The Debtors shall promptly serve copies of this Interim Order to the parties that have been given notice of the Interim Hearings, to any party that has filed a request for notices with this Court and to the Official Committee (if appointed).

**Dated: November 7th, 2024**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**