## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>**<u>Hearing Date:</u>**<br>**December 17, 2024 at 11:00 a.m. (ET)**<br><br>**<u>Objection Deadline:</u>**<br>**December 10, 2024, at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR AN
## ORDER (I) APPROVING THE DISCLOSURE STATEMENT;
## (II) APPROVING SOLICITATION AND VOTING PROCEDURES, INCLUDING
## (A) FIXING THE VOTING RECORD DATE, (B) APPROVING THE SOLICITATION
## PACKAGES AND PROCEDURES FOR DISTRIBUTION, (C) APPROVING
## THE FORM OF THE BALLOTS AND SOLICITATION MATERIALS AND
## ESTABLISHING PROCEDURES FOR VOTING, AND (D) APPROVING
## PROCEDURES FOR VOTE TABULATION; (III) SCHEDULING A CONFIRMATION
## HEARING AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES; AND
## <u>(IV) GRANTING RELATED RELIEF</u>

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Disclosure Statement Order"), (i) approving the *Disclosure Statement for the Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 151] (as amended, modified, or supplemented from time to time, the "Disclosure Statement"); (ii) approving solicitation and voting procedures with respect to the *Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 150] (as amended, modified, or supplemented from time to time, the "Plan"),[2] including (a) fixing the Voting Record Date, (b) approving the Solicitation Package (each as defined below) and procedures for distribution, (c) approving the form of the Ballots (as defined below) and solicitation materials and establishing procedures for voting, and (d) approving procedures for vote tabulation; (iii) scheduling the Confirmation Hearing (as defined below) and establishing related notice and objection procedures; and (iv) granting related relief.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or Plan, as applicable.

entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory and legal predicates for the relief requested herein are sections 105(a), 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 3017-1(a) and 3017-1(b).

## BACKGROUND

### I.      General Background

4.       On November 3, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.       No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.       As set forth in the *Declaration of David Orlofsky in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration"), the Debtors entered into the Restructuring Support Agreement with the Consenting First Lien Lenders.  The Debtors commenced the Chapter 11 Cases to enact the restructuring transactions set forth in the Restructuring Support Agreement.

7.     Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the First Day Declaration.

## II.     Plan and Disclosure Statement

8.     On November 1, 2024, the Debtors executed the Restructuring Support Agreement with approximately 80% of holders of Prepetition First Lien Term Loan Claims (i.e., the Consenting First Lien Lenders).  Concurrently with this Motion, the Debtors filed the Plan and the Disclosure Statement.  The Restructuring Support Agreement sets forth the principal terms of the Restructuring Transactions, which are embodied in the Plan, and requires the Consenting First Lien Lenders to vote in favor of and support the Plan.

9.     Pursuant to the Plan, Holders of Claims and Interests against the Debtors shall receive the following treatment as of the Effective Date:

a.     In full satisfaction, settlement, release and discharge of the Allowed DIP Claims, on the Effective Date, (i) if the Plan Equitization Transaction is consummated, (x) first, all Allowed DIP Claims arising from Tranche A DIP Loans (other than those Tranche A DIP Loans that are converted into Reorganized Common Equity pursuant to the DIP Premium Conversion) shall be converted into Take-Back Term Loans, on a dollar-for-dollar basis, (y) second, the Allowed DIP Claims arising from Tranche B DIP Loans shall be converted into Take-Back Term Loans, ratably, on a dollar-for-dollar basis in an amount necessary to cause the Reorganized Debtors to have pro forma net debt of $600 million as of the Effective Date after giving effect to the Restructuring Transactions, and (z) third, any Allowed DIP Claims that remain outstanding after giving effect to the transactions contemplated in clauses (x) and (y) hereof shall be converted into Reorganized Common Equity at a 25% discount to total equity value of the Reorganized Debtors as will be set forth in the Disclosure Statement and/or Plan Supplement (the "DIP Equitization"), or (ii) if a Sale Transaction is consummated, all Allowed DIP Claims shall be indefeasibly paid in full in Cash from Sale Proceeds.  Upon payment in full of all Allowed DIP Claims, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect.

b.     Each Holder of an Allowed Prepetition ABL Loan Claims will receive its *pro rata* share of: (i) in the event the Restructuring Transactions are consummated through

the Plan Equitization Transaction (A) (1) the Liquidation Proceeds resulting from the sale of any ABL Priority Collateral, and (2) (x) proceeds of the Exit ABL Facility, (y) loans under the Amended & Restated ABL Facility in an amount equal to the amount of the Prepetition ABL Loan Claims minus any amounts to be distributed under clause (i)(A)(1) hereunder, or (z) loans under the Take-Back ABL Term Loan Facility in an amount equal to the amount of the Prepetition ABL Loan Claims minus any amounts to be distributed under clause (i)(A)(1) hereunder or (B) at the election of the Required Consenting First Lien Lenders in their sole discretion, the Prepetition ABL Loan Claims shall be reinstated; or (ii) in the event the Restructuring Transactions are consummated through the Sale Transaction, (a) the Liquidation Proceeds resulting from the sale of any ABL Priority Collateral and (b) payment in full in Cash from Sale Proceeds on account of its Allowed Prepetition ABL Loan Claim.

c.  Each Holder of an Allowed Prepetition First Lien Loan Claims will receive its *pro rata* share of: (i) in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, (A) Liquidation Proceeds resulting from the sale of any Term Priority Collateral (as defined in the Existing ABL Intercreditor Agreement) and (B) 100% of the Reorganized Common Equity (subject to dilution by (1) the Management Incentive Plan, (2) the DIP Premium Conversion, and (3) the DIP Equitization); or (ii) in the event the Restructuring Transactions are consummated through the Sale Transaction, payment in full, in Cash on account of its Allowed Prepetition First Lien Loan Claim.

d.  Each Holder of an Allowed Prepetition Second Lien Loan Claims shall receive: (i) in the event the Restructuring Transactions are consummated through a Plan Equitization Transaction, (A) its *pro rata* share of Liquidation Proceeds resulting from the sale of any Term Priority Collateral after payment of the Allowed Prepetition First Lien Loan Claims in full, in Cash, and (B)(1) solely if the Class votes to <u>accept</u> the Plan, the New Warrants, or (2) if the Class votes to <u>reject</u> the Plan, its *pro rata* share of the recovery such claimant would be entitled to receive under section 1129(a)(7) of the Bankruptcy Code; or (ii) in the event the Restructuring Transactions are consummated through the Sale Transaction, (a) its ratable share of Liquidation Proceeds after payment of the Allowed Prepetition First Lien Loan Claims in full, in Cash *plus* (b) its *pro rata* share of the Prepetition Second Lien Lender Distribution. If the proceeds of the Sale Transaction do not result in a Prepetition Second Lien Lender Distribution, then such Holder of a Prepetition Second Lien Loan Claim shall receive no further consideration on account of its Prepetition Second Lien Loan Claim.

e.  Each Holder of an Allowed General Unsecured Claims against Franchise Group, Inc. shall receive: (i) in the event the Restructuring Transactions are consummated through a Plan Equitization Transaction, [•]; or (ii) in the event the Restructuring Transactions are consummated through a Sale Transaction, its *pro rata* share of the OpCo General Unsecured Claims Distribution allocable to Franchise Group, Inc., if any. If the proceeds of the Sale Transaction do not result in a OpCo General Unsecured Claims Distribution, then such Holder of a General Unsecured Claim at

Franchise Group, Inc. shall receive no consideration on account of its General Unsecured Claim at Franchise Group, Inc.

f.    Each Holder of an Allowed General Unsecured Claims against the American Freight Debtors shall receive the greater of (x) the recovery such claimant would be entitled to receive the greater of (x) the recovery such claimant would be entitled to receive under chapter 7 or section 1129(a)(7) of the Bankruptcy Code (*i.e.*, its *pro rata* share of any residual Liquidation Proceeds), and (y) [•].

g.    Each Holder of an Allowed General Unsecured Claims against the Buddy's Debtors shall receive: (i) in the event the Restructuring Transactions are consummated through a Plan Equitization Transaction, the greater of (x) the recovery such claimant would be entitled to receive under section 1129(a)(7) of the Bankruptcy Code, and (y) [•]; or (ii) in the event the Restructuring Transactions are consummated through the Sale Transaction, its *pro rata* share of the OpCo General Unsecured Claims Distribution allocable to the Buddy's Debtors, if any.  If the proceeds of the Sale Transaction do not result in a OpCo General Unsecured Claims Distribution, then such Holder of a General Unsecured Claim against the Buddy's Debtors shall receive no consideration on account of its General Unsecured Claim against the Buddy's Debtors.

h.    Each Holder of an Allowed General Unsecured Claims against the PSP Debtors shall receive: (i) in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, the greater of (x) the recovery such claimant would be entitled to receive under section 1129(a)(7) of the Bankruptcy Code, and (y) [•]; or (ii) in the event the Restructuring Transactions are consummated through the Sale Transaction, its *pro rata* share of the OpCo General Unsecured Claims Distribution allocable to the PSP Debtors, if any.  If the proceeds of the Sale Transaction do not result in a OpCo General Unsecured Claims Distribution, then such Holder of a General Unsecured Claim against the PSP Debtors shall receive no consideration on account of its General Unsecured Claim against the PSP Debtors.

i.    Each Holder of an Allowed General Unsecured Claims against the Vitamin Shoppe Debtors shall receive: (i) in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, the greater of (x) the recovery such claimant would be entitled to receive under section 1129(a)(7) of the Bankruptcy Code, and (y) [•]; or (ii) in the event the Restructuring Transactions are consummated through the Sale Transaction, its *pro rata* share of the OpCo General Unsecured Claims Distribution allocable to the Vitamin Shoppe Debtors, if any.  If the proceeds of the Sale Transaction do not result in a OpCo General Unsecured Claims Distribution, then such Holder of a General Unsecured Claim against the Vitamin Shoppe Debtors shall receive no consideration on account of its General Unsecured Claim against the Vitamin Shoppe Debtors.

j.    Each Holder of an Allowed Prepetition HoldCo Loan Claims shall receive: (i) in the event the Restructuring Transactions are consummated through the Plan

Equitization Transaction, no consideration on account of its Prepetition HoldCo Loan Claim; or (ii) in the event the Restructuring Transactions are consummated through the Sale Transaction, its *pro rata* share of the Prepetition HoldCo Lender Distribution, if any.  If the proceeds of the Sale Transaction do not result in a Prepetition HoldCo Lender Distribution, then such Holder of a Prepetition HoldCo Loan Claim shall receive no consideration on account of its Prepetition HoldCo Loan Claim.

k.  Except to the extent that a Holder of an Allowed HoldCo General Unsecured Claim agrees to less favorable treatment on account of their claim, each Holder of an Allowed HoldCo General Unsecured Claim shall receive: (i) in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, no distribution or recovery on account of its HoldCo General Unsecured Claim; or (ii) in the event the Restructuring Transactions are consummated through the Sale Transaction, its *pro rata* share of the HoldCo General Unsecured Claims Distribution, if any.  If the proceeds of the Sale Transaction do not result in a HoldCo General Unsecured Claims Distribution, then such Holder of a HoldCo General Unsecured Claims Distribution shall receive no consideration on account of its HoldCo General Unsecured Claim.

l.  Except to the extent that a Holder of a Subordinated Claim agrees to less favorable treatment, each Holder of a Subordinated Claim shall receive: (i) in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, no distribution or recovery on account of its Subordinated Claim; or (ii) in the event the Restructuring Transactions are consummated through the Sale Transaction, its *pro rata* share of the Subordinated Claims Distribution, if any.  If the proceeds of the Sale Transaction do not result in a Subordinated Claims Distribution, then such Holder of a Subordinated Claim shall receive no consideration on account of its Subordinated Claim.

m.  Except to the extent that a Holder of an Allowed Existing TopCo Equity Interest agrees to less favorable treatment, whether the Restructuring Transactions are consummated through the Plan Equitization Transaction or the Sale Transaction, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Existing TopCo Equity Interest shall receive (A) its *pro rata* share of Cash (if any) held by TopCo following the allocation described in Section 3.3(c) of the Plan, or (B) if there is no Cash held at TopCo, no consideration on account of its Allowed Existing TopCo Equity Interest and on the Effective Date, all Allowed Existing TopCo Equity Interest shall be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of Allowed Existing TopCo Equity Interest shall not receive or retain any property or distributions under this Plan on account of such Allowed Existing TopCo Equity Interest.

n.  Whether the Restructuring Transactions are consummated through the Plan Equitization Transaction or the Sale Transaction, each Holder of an Allowed Existing Intercompany Equity Interest shall receive no distribution on account of its Existing Intercompany Equity Interest, which shall, at the election of the

7

Debtors, be (i) extinguished, canceled and/or discharged on the Effective Date, or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Existing Intercompany Equity Interest being left unimpaired; <u>provided</u> that in the event the Restructuring Transactions are consummated through the Plan Equitization Transaction, such election shall be with the consent of Required Consenting First Lien Lenders.

In addition to the foregoing, the Plan shall provide as follows:

a.  Holders of Allowed Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, U.S. Trustee Fees, Other Secured Claims, and Priority Non-Tax Claims shall be paid in full in Cash or receive such other treatment that renders such Claims unimpaired.

b.  In the event of the Plan Equitization Transaction, on or after the Effective Date, (a) any and all Intercompany Claims between and among Franchise Group, Inc. and any of its direct or indirect subsidiaries (including, for the avoidance of doubt, the American Freight Debtors, the Buddy's Debtors, the PSP Debtors, and the Vitamin Shoppe Debtors) shall, at the option of the Debtors and the Required Consenting First Lien Lenders, either be (i) extinguished, canceled and/or discharged on the Effective Date or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired; and (b) any and all Intercompany Claims between and among the HoldCo Debtors shall, at the option of the Debtors, in consultation with the Required Consenting First Lien Lenders, either be (i) extinguished, canceled and/or discharged on the Effective Date or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired.  In the event of a Sale Transaction, any and all Intercompany Claims between and among any Debtors whose equity is not purchased by the Successful Bidder shall, at the option of the Debtors, either be (i) extinguished, canceled and/or discharged on the Effective Date or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (deemed to accept) |
| Class 2 | Other Secured Claims | No | No (deemed to accept) |
| Class 3 | Prepetition ABL Loan Claims | Yes | Yes |
| Class 4 | Prepetition First Lien Loan Claims | Yes | Yes |
| Class 5 | Prepetition Second Lien Loan Claims | Yes | Yes |
| Class 6-A | General Unsecured Claims against Franchise Group, Inc. | Yes | Yes |
| Class 6-B | General Unsecured Claims against American Freight | Yes | Yes |
| Class 6-C | General Unsecured Claims against Buddy's | Yes | Yes |
| Class 6-D | General Unsecured Claims against PSP | Yes | Yes |
| Class 6-E | General Unsecured Claims against Vitamin Shoppe | Yes | Yes |

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 7 | Prepetition HoldCo Loan Claims | Yes | Yes |
| Class 8 | HoldCo General Unsecured Claims | Yes | Yes |
| Class 9 | Subordinated Claims | Yes | Yes |
| Class 10 | Existing TopCo Equity Interests | Yes | Yes |
| Class 11 | Existing Intercompany Equity Interests | Yes | No (deemed to reject) |

10.     Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan designates five (5) categories of Claims that are entitled to receive Distributions under the Plan, but are not classified for purposes of voting to accept or reject the Plan.  These categories of unclassified claims are (i) DIP Claims, (ii) Administrative Expense Claims, (iii) Fee Claims, (iv) Priority Tax Claims, and (v) U.S. Trustee Fees.

11.     In addition, Claims in Classes 1 and 2 (together, the "Unimpaired Classes") are Unimpaired by the Plan, and Holders of such Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote on the Plan.

12.     Under the Plan, Claims and Interests in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8, 9, and 10 (the "Voting Classes") are Impaired by the Plan and are entitled to vote to accept or reject the Plan.

13.     Interests in Class 11 (collectively with the Unimpaired Classes, the "Non-Voting Classes") are Impaired and are not entitled to receive or retain any property or interests in property under the Plan.  Therefore, the votes of such Holders shall not be solicited.

14.     Article 12 of the Plan contains certain release, injunction, and exculpation provisions, including releases by the Debtors and their Estates of various parties that are subject to the outcome of the Independent Investigation with respect to the Investigation Related Matters. The Plan also includes third-party releases by Holders of Claims or Interests, as described in

Section 12.3 of the Plan, (the "Third Party Releases"). The Third Party Releases bind the "Releasing Parties," which the Plan defines as:

> [C]ollectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8, 9, and 10 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in Article XII, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a release opt-out, or do not file an objection to the releases in Article XII of the Plan prior to the deadline to object to confirmation of the Plan; provided that the Consenting First Lien Lenders shall not opt out of the releases set forth in Article XII of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in Article XII of the Plan on or before the deadline to object to confirmation of the Plan.

Plan § 1.158. The Releasing Parties will be deemed to have forever released the Released Parties from any and all claims and causes of action to the extent provided for in Article 12 of the Plan.

## **RELIEF REQUESTED**

15.     By this Motion, the Debtors request entry of the Disclosure Statement Order, (i) approving the Disclosure Statement, (ii) approving procedures for solicitation and tabulation of votes to accept or reject the Plan, including (a) fixing the Voting Record Date, (b) approving the Solicitation Package and procedures for distribution, (c) approving the form of the Ballots and solicitation materials and establishing procedures for voting, and (d) approving procedures for vote tabulation, (iii) scheduling the Confirmation Hearing and establishing notice and objection procedures, and (iv) granting related relief.

16.     The following table sets forth the proposed dates and deadlines in connection with confirmation of the Plan and the relief requested in the Motion:

| Proposed Dates and Deadlines in Connection with Confirmation | |
|---|---|
| Disclosure Statement Hearing | December 17, 2024 at 11:00 a.m. (ET) |
| Voting Record Date | 1 Business Day before commencement of the Disclosure Statement hearing: December 16, 2024 |
| Solicitation Date | 5 Business Days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter |
| Publication Date | 5 Business Days after entry of the Disclosure Statement Order or as soon as reasonably practicable thereafter |
| Deadline to File Claims Objections for Plan Voting Purposes | January 10, 2025 |
| Deadline to File Plan Supplement | 7 days before Voting Deadline: January 14, 2025 |
| Deadline to File Bankruptcy Rule 3018 Motions for Plan Voting Purposes | January 16, 2025 at 4:00 p.m. (ET) |
| Voting Deadline | January 21, 2025 at 5:00 p.m. (ET) |
| Confirmation Objection Deadline | 16 days before Confirmation Hearing: January 21, 2025 at 5:00 p.m. (ET) |
| Deadline for Solicitation Agent to File Plan Voting Report | January 23, 2025 at 12:00 p.m. (ET) |
| Deadline to Reply to Plan Objections | February 4, 2025 at 12:00 p.m. (ET) |
| Confirmation Hearing | February 6, 2025 (subject to the Court's availability) |

17.     The Debtors believe that the Plan is in the best interests of their Estates and their stakeholders.   The confirmation schedule proposed in the Motion is sufficient under the circumstances and will bring the Chapter 11 Cases to an efficient conclusion without delaying distributions under the Plan.   Accordingly, the Debtors submit that the solicitation and confirmation schedule proposed in the Motion should be approved.

18.    The related exhibits annexed to the proposed Disclosure Statement Order and cited throughout this Motion are as follows:

| Exhibit | Number |
|---------|--------|
| Disclosure Statement Order | Exhibit A |
| Disclosure Statement | Exhibit 1 to the Disclosure Statement Order |
| Confirmation Hearing Notice | Exhibit 2 to the Disclosure Statement Order |
| Ballots<br>-    Form of Class 3 Ballot<br>-    Form of Class 4 Ballot<br>-    Form of Class 5 Ballot<br>-    Form of Class 6 Ballot<br>-    Form of Class 7 Ballot<br>-    Form of Class 8 Ballot<br>-    Form of Class 9 Ballot<br>-    Form of Class 10 Ballot | Exhibit 3-A to the Disclosure Statement Order<br>Exhibit 3-B to the Disclosure Statement Order<br>Exhibit 3-C to the Disclosure Statement Order<br>Exhibit 3-D to the Disclosure Statement Order<br>Exhibit 3-E to the Disclosure Statement Order<br>Exhibit 3-F to the Disclosure Statement Order<br>Exhibit 3-G to the Disclosure Statement Order<br>Exhibit 3-H to the Disclosure Statement Order |
| Notice of Non-Voting Status | Exhibit 4 to the Order |
| Disclosure Statement Hearing Notice | Exhibit B to the Motion |

## BASIS FOR RELIEF REQUESTED

### Disclosure Statement

**I.    Approval of the Disclosure Statement Is Warranted, As It Contains Adequate Information.**

19.    Pursuant to section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims or interests with "adequate information" regarding a debtor's proposed plan.  In that regard, section 1125(a)(1) of the Bankruptcy Code provides:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical

of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1). A disclosure statement should provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision on whether to vote to accept or reject a plan. See Century Glove, Inc. v. First Am. Bank of New York, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."). Congress intended that such informed judgments would be needed both to negotiate the terms of and to vote on a plan of reorganization. Id. Thus, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

20.     Courts will consider the particular facts and circumstances of each case in evaluating whether a disclosure statement provides "adequate information" within the meaning of section 1125 of the Bankruptcy Code. See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of [section] 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); First Am. Bank of New York v. Century Glove, Inc., 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95- 989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case.").

21.     Courts have broad discretion in determining the adequacy of the information contained in a disclosure statement. See, e.g., In re Lower Bucks Hosp., 571 Fed. Appx. 139, 142

(3d Cir. Pa. 2014) (noting that "the determination under 11 U.S.C. § 1125(a) 'is subjective and made on a case by case basis [and] . . . is largely within the discretion of the bankruptcy court'") (quoting In re Tex. Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988)); In re PC Liquidation Corp., 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court."); In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995) (same).  Because the information required to be disclosed in a disclosure statement varies according to the facts of each case, there is no mandatory list of requirements for adequacy.  See In re Phoenix Petroleum, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

22.     Nonetheless, factors considered by a court evaluating the adequacy of a disclosure statement may include:  (a) the events leading to the filing of a bankruptcy petition; (b) a description of the available assets and their value; (c) the anticipated future of the company; (d) the source of information stated in the disclosure statement; (e) a disclaimer that typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; (f) the present condition of the debtor while in chapter 11; (g) claims asserted against the debtor; (h) the estimated return to creditors under a chapter 7 liquidation; (i) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (j) the future management of the debtor; (k) the chapter 11 plan or a summary thereof; (l) the estimated administrative expenses; (m) the collectability of any accounts receivable; (n) financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan; (o) information relevant to the risks posed to creditors under the plan; (p) the actual or projected realizable value from

recovery of preferential or otherwise voidable transfers; (q) litigation likely to arise in a non-bankruptcy context; (r) tax attributes of the debtor; and (s) the relationship of the debtor with its affiliates.  See, e.g., In re U.S. Brass Corp., 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); In re Scioto Valley Mortg. Co., 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988); In re Oxford Homes, 204 B.R. 264 (Bankr. D. Me. 1997) (using similar list).  A plan proponent need not include disclosure with respect to each of the above topics in every case.  Phoenix Petroleum, 278 B.R. at 393 (making use of similar list but cautioning that "no one list of categories will apply in every case").

23.     The Disclosure Statement contains adequate information to allow Holders of Claims or Interests in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, but not limited to, descriptions and summaries of:

a.      the terms of the Plan (Articles IV and V);

b.      certain events preceding the Chapter 11 Cases (Article III);

c.      the prepetition indebtedness of the Debtors (Article II.C);

d.      estimates of the Claims and Interests asserted, or to be asserted, against the Debtors' Estates and the estimated value of the Distributions to be received by Holders of Allowed Claims or Interests (Article V);

e.      risk factors affecting the Plan (Article VIII);

f.      the feasibility of the Plan (Article XV.D);

g.      certain tax consequences of the Plan (Article X);

h.      the provisions providing for the release of claims and causes of action by the Debtors and Holders of Claims or Interests (Article XII); and

i.      a liquidation analysis setting forth the estimated recovery that Holders of Claims or Interests would receive if these Chapter 11 Cases were converted

to cases under chapter 7 of the Bankruptcy Code (Article VII and Exhibit B to the Disclosure Statement).

24.     Accordingly, the Debtors submit that the Disclosure Statement contains all or substantially all of the information typically considered by courts and respectfully request that the Court approve the Disclosure Statement as it meets the requirements of section 1125 of the Bankruptcy Code.

25.     The Disclosure Statement additionally provides sufficient notice of the injunction, exculpation, and release provisions in the Plan.  Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and entities subject to the injunction.  Fed. R. Bankr. P. 3016(c).

26.     Article 12 of the Plan describes the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  The injunction, exculpation, and release provisions of the Plan are in bold font, making them conspicuous to anyone who reads the Plan. Additionally, the injunction, exculpation, and release provisions have been included in Article 12 of the Disclosure Statement.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined by the Plan.

## II.     Approval of the Disclosure Statement Hearing Notice Complies with the Requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

27.     Bankruptcy Rule 3017(a) requires that creditors and other parties in interest receive twenty-eight (28) days' notice of the hearing to consider a proposed disclosure statement and, additionally, Bankruptcy Rule 2002(b) requires that creditors and other parties in interest have twenty-eight (28) days' notice of the deadline to object to a proposed disclosure statement.  Fed. R. Bankr. P. 3017(a) and 2002(b).  However, Local Rule 3017-1(a) expands upon the notice period

provided by the Bankruptcy Rules and requires thirty-five (35) days' notice of the hearing to consider a proposed disclosure statement.  Del. Bankr. L.R. 3017-1(a).

28.    In accordance with the Bankruptcy Rules and Local Rules, in connection with the hearing on the Disclosure Statement, the Debtors will serve, or cause to be served, (i) all known creditors and (ii) all parties requesting notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 with the notice annexed as Exhibit B hereto (the "Disclosure Statement Hearing Notice").  Additionally, in accordance with Bankruptcy Rule 3017(a), the Debtors also will serve, or cause to be served, (a) the U.S. Trustee; (b) the United States Attorney's Office for the District of Delaware; (c) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates; (d) counsel to the ABL Lenders; (e) counsel to the Ad Hoc Group of First Lien Lenders; (f) counsel to the Second Lien Term Loan Lenders; (g) counsel to the HoldCo Lenders; (h) counsel to the DIP Agent; (i) counsel to the DIP Lenders; and (j) any party who requested, in writing, a copy of the Plan and Disclosure Statement, with the Disclosure Statement Hearing Notice.  The Disclosure Statement Hearing Notice identifies:  (x) the date, time, and place of the Disclosure Statement Hearing; (y) the manner in which a copy of the Disclosure Statement (and exhibits thereto, including the Plan) can be obtained; and (z) the deadline and procedures for filing objections to the approval of the Disclosure Statement.

29.    For the above-stated reasons, the Debtors respectfully request that the Court approve the Disclosure Statement Hearing Notice itself as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

### Solicitation and Voting Procedures

### I.      Fixing the Voting Record Date.

30.     Bankruptcy Rule 3017(d) provides that, for purposes of soliciting votes in connection with the confirmation of a chapter 11 plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

31.     In accordance with these Bankruptcy Rules, the Debtors request that the Court set December 16, 2024 as the Voting Record Date (the "Voting Record Date") for purposes of determining:

a.      the Holders of Claims or Interests in the Voting Classes who are entitled to receive a Solicitation Package and vote to accept or reject the Plan;

b.      the Holders of Claims and Interests in the Non-Voting Classes who will receive a Notice of Non-Voting Status (as defined herein) and are not entitled to vote to accept or reject the Plan;

c.      the amount of each Holder's Claim or Interest for solicitation and voting purposes (except as otherwise provided in this Motion); and

d.      whether Claims or Interests have been properly and timely assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e), such that the assignee (and not the original Claim Holder) can vote to accept or reject the Plan as the Holder of a Claim or Interest.

32.     The Debtors request that, with respect to any transferred Claim or Interest, the transferee shall be entitled to receive (if applicable) a Solicitation Package and cast a Ballot on account of such Claim or Interest only if all actions necessary to effectuate the transfer of the Claim or Interest pursuant to Bankruptcy Rule 3001(e) have been completed on or before the Voting Record Date.  In the event a Claim or Interest is transferred after the Voting Record Date, the

transferee of such Claim or Interest shall be bound by any vote on the Plan made by the holder of such Claim or Interest as of the Voting Record Date.  Furthermore, where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim or Interest may be treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code.  In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim or Interest partially reject and partially accept the Plan, such Ballots may not be counted, in the Debtors' discretion.

33.     For the avoidance of doubt, a Holder will only be entitled to receive solicitation materials on account of a claim based on rejection of Executory Contracts and Unexpired Leases if the Proof of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases is filed by the Voting Record Date.

**II.     Approving the Solicitation Package and Procedures for Distribution Thereof.**

34.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization:

> Upon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1)     the plan or a court-approved summary of the plan;
> (2)     the disclosure statement approved by the court;
> (3)     notice of the time within which acceptances and rejections of such plan may be filed; and
> (4)     any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

> In addition, notice of the time fixed for filing objections and the hearing on
> confirmation shall be mailed to all creditors and equity security holders in
> accordance with [Bankruptcy] Rule 2002(b), and a form of ballot
> conforming to the appropriate Official Form shall be mailed to creditors and
> equity security holders entitled to vote on the plan . . . .

Fed. R. Bankr. P. 3017(d).

35.     On or before five (5) business days after entry of the Disclosure Statement Order or as soon as reasonably practicable thereafter (the "Solicitation Date"), the Debtors will mail, or cause to be mailed, the following materials (the "Solicitation Package") to those record Holders of Claims and Interests in the Voting Classes: (i) the Disclosure Statement, including the Plan and all other exhibits annexed to the Disclosure Statement; (ii) the Disclosure Statement Order (excluding exhibits); (iii) the applicable Ballot and voting instructions (the "Voting Instructions"); (iv) a pre-addressed, pre-paid return envelope; and (v) the Confirmation Hearing Notice (as defined herein).

36.     Furthermore, consistent with sections 1126(f) and (g) of the Bankruptcy Code, the Debtors propose to distribute, or cause to be distributed, by first-class mail, to all Holders of Claims or Interests in the Non-Voting Classes a Non-Voting Package (as defined herein).

37.     The Solicitation Package, excluding a Ballot, will also be mailed to: (i) the U.S. Trustee; (ii) the Internal Revenue Service; and (iii) those parties requesting notice pursuant to Bankruptcy Rule 2002.

38.     For purposes of serving the Solicitation Package and the Non-Voting Package (as defined below), the Debtors seek authority for the Solicitation Agent (as defined below) to rely on the address information maintained by the Debtors and provided to the Solicitation Agent as of the Voting Record Date.  The Debtors anticipate that some of the notices served in these Chapter 11 Cases, including, but not limited to, the Disclosure Statement Hearing Notice, may be returned by the United States Postal Service as undeliverable without a forwarding address.  The Debtors believe that it would be costly and wasteful to distribute a Solicitation Package or Non-Voting

Package to the same addresses to which undeliverable Disclosure Statement Hearing Notices were distributed. Therefore, the Debtors seek the Court's approval for a departure from the strict notice rule, excusing the Debtors from distributing a Solicitation Package or Non-Voting Package to those entities listed at such addresses, unless the Debtors are provided with accurate addresses for such entities prior to the Voting Record Date. The Debtors further propose that they be excused from attempting to find better addresses for entities as to whom a Solicitation Package or Non-Voting Package was returned by the United States Postal Service as undeliverable without a forwarding address. The Debtors further request that the Court waive (a) any requirement to re-mail undeliverable Solicitation Packages, Non-Voting Packages, or other undeliverable solicitation-related notices that were returned marked "undeliverable," "moved—no forwarding address," or otherwise returned unless an updated address is provided to the Solicitation Agent by the Voting Record Date, and (b) any obligation for the Debtors or the Solicitation Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages, or Non-Voting Packages, or other undeliverable solicitation related notices.

     39.     Moreover, the Debtors request that the Court authorize (but not require) the Debtors to distribute, or cause to be distributed, the Disclosure Statement (together with all exhibits thereto, including the Plan) and the Disclosure Statement Order (excluding exhibits) to the Voting Classes in electronic format on a USB flash drive in lieu of paper format. The Confirmation Hearing Notice, Ballots, and return envelopes contained in the Solicitation Package will be provided in paper format. Holders of Claims and Interests in the Voting Classes that receive solicitation materials in electronic format may request such materials in paper format, at the Debtors' expense, upon request to the Solicitation Agent.

40.     Because the Voting Record Date will precede the General Bar Date, the Debtors seek to permit any creditor or interest holder that files a valid proof of claim or interest after the Voting Record Date but on or before the date that is ten (10) calendar days before the Voting Deadline that falls within one of the Voting Classes to vote on the Plan on account of such Claim or Interest.  The Solicitation Agent will transmit the appropriate Solicitation Package to such creditors and interest holders as soon as reasonably practicable after the proof of claim or interest that gives rise to the creditor's or interest holder's eligibility vote is filed, provided that, if the Solicitation Agent previously provided such creditor or interest holder with a Ballot on account of a scheduled claim or interest or a previously filed proof of claim or interest, the Solicitation Agent shall update the creditor's or interest holder's voting amount based on the amended proof of claim or interest, as filed, but will not be obligated to, and need not, send another Solicitation Package and/or new Ballot to such creditor or interest holder.[3]

41.     The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures.

### III.    Approving Form of Ballots and Establishing Procedures for Voting on the Plan.

i.    <u>Approving Form of Ballots and Notice of Non-Voting Status, and Distribution Thereof.</u>

a.    *The Voting Classes*

42.     Pursuant to Bankruptcy Rule 3017(d), the Debtors propose to distribute to Holders of Claims or Interests in the Voting Classes ballots substantially in the form attached to the Disclosure Statement Order as <u>Exhibit 3</u> (the "<u>Ballots</u>").  The form of the Ballots is based upon Official Form No. 14, but has been modified to address the particular aspects of these Chapter 11

---

[3]    Because of the time required to process and document Claims and Interests filed prior to the General Bar Date, the Solicitation Agent has set an administrative deadline of ten (10) days prior to the Voting Deadline as the date by which creditors and interest holders must file a Claim to be included in the solicitation.

Cases and to include certain additional information that the Debtors believe is relevant and appropriate.

### b. The Non-Voting Classes

43.     Pursuant to section 1126(f) of the Bankruptcy Code, unimpaired creditors are conclusively presumed to have accepted the Plan and solicitation of acceptance with respect to such Classes is not required.  11 U.S.C. § 1126(f).  Furthermore, pursuant to section 1126(g) of the Bankruptcy Code, impaired creditors that will not receive or retain any property under the Plan are deemed to have rejected the Plan and are not entitled to vote on the Plan.  Therefore, solicitation of acceptance with respect to such classes of impaired creditors is not required.  11 U.S.C. § 1126(g).  Accordingly, the Debtors propose that they not be required to transmit a Solicitation Package to the Non-Voting Classes.

44.     Rather, the Debtors propose to distribute to the Non-Voting Classes a package (the "Non-Voting Package"), which shall consist of (a) the Confirmation Hearing Notice; and (b) a notice of non-voting status, substantially in the form annexed to the Disclosure Statement Order as Exhibit 4 (the "Notice of Non-Voting Status"), which sets forth, among other things:  (i) the Non-Voting Classes under the Plan; (ii) a summary of the proposed treatment for the Non-Voting Classes under the Plan; (iii) the date and time of the Confirmation Hearing (as defined herein); and (iv) the deadline and procedures for filing objections to the Plan, and, for parties in Non-Voting Classes, challenging the status of their Claims or Interests for voting purposes.  The Notice of Non-Voting Status indicates that those Holders of Claims or Interests in the Non-Voting Classes may obtain a copy of the Plan and Disclosure Statement on the dedicated webpage maintained by Kroll Restructuring Administration LLC, the Debtors' proposed solicitation agent ("Kroll" or the "Solicitation Agent").

    ii. <u>Establishing Voting Deadline for Receipt of Ballots.</u>

  45. Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of claims or equity interests may accept or reject a plan.  The Debtors propose that, in order to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and submitted to the Solicitation Agent (a) via online submission through a dedicated e-balloting portal (the "<u>E-Ballot Portal</u>") accessible at the Debtor's restructuring website maintained by the Solicitation Agent at https://cases.ra.kroll.com/FRG (as set forth below), <u>or</u> (b) in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, overnight courier, or hand delivery at the below address so as to be actually received by the Solicitation Agent no later than **<u>January 21, 2025 at 5:00 p.m. (ET)</u>** (the "<u>Voting Deadline</u>"), unless extended by the Debtors:

Franchise Group, Inc.
Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

(To arrange hand-delivery, email FRGBallots@ra.kroll.com (with "<u>FRG Ballot Delivery</u>" in the subject line) at least 24 hours before arrival at the Kroll address above and provide the anticipated date and time of delivery).

  46. The Debtors submit that such solicitation period is a sufficient period within which Holders of Claims or Interests in the Voting Classes can make an informed decision to accept or reject the Plan.

  47. Any failure to follow the voting instructions included with the Ballot may disqualify a Ballot and vote.

  48. The Debtors seek authorization for the Solicitation Agent to accept Ballots submitted via electronic, online transmission, solely through a customized online balloting portal accessible on the Debtors' case website to be maintained by the Solicitation Agent (the "<u>E-Ballot

Portal"). Holders entitled to vote on the Plan may cast an electronic Ballot and electronically sign

and submit the Ballot instantly by utilizing the E-Ballot Portal (which allows a Holder to submit

an electronic signature). The encrypted data and audit trail created by such electronic submission

shall become part of the record of any Ballots submitted in this manner and the creditor's electronic

signature will be deemed to be immediately legally valid and effective. Ballots may be submitted

online via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided in the

Ballots and at the website landing page so as to be actually received by the Solicitation Agent no

later than the Voting Deadline. The E-Ballot Portal will be the only acceptable means of electronic

Ballot submission. Ballots submitted by electronic mail or facsimile, or any other means of

electronic submission (other than via the E-Ballot Portal) will not be accepted. Any failure to

follow the voting instructions included with the Ballot may disqualify a Ballot and vote.

49.     Creditors who cast a Ballot via the E-Ballot Portal should <u>NOT</u> also submit the

paper original of their Ballot.

### IV.     Approving Procedures for Vote Tabulation.

50.     The Debtors propose that each Holder of a Claim or Interest in the Voting Classes

shall be entitled to vote the amount of its Claim or Interest as of the Voting Record Date.

Accordingly, solely for purposes of voting on the Plan, and not for the purpose of making

Distributions on account of a Claim or Interest, and without prejudice to the rights of the Debtors

or any other proper party in interest in any other context, including claims objections and adversary

proceedings, with respect to all Holders of Claims or Interests in the Voting Classes against the

Debtors, the Debtors propose that the temporarily allowed amount of a Claim or Interest used to

tabulate acceptance or rejection of the Plan should be as follows:

> a.     The amount of the Claim or Interest listed in the Debtors' Schedules;
> <u>provided</u> that (i) such Claim or Interest is not scheduled as contingent,
> unliquidated, undetermined, disputed, or in the amount of $0.00, <u>provided</u>,

however, that if a Claim or Interest for which no Proof of Claim or Proof of Interest has been timely filed is listed on the Schedules as contingent, unliquidated, or disputed, or if no Claim or Interest amount is specified, such Claim or Interest shall be disallowed for voting purposes only; provided, further, that, if the applicable Bar Date has not yet passed such Claim will be entitled to vote in the amount of $1.00 or 1 equity interest, as applicable, (ii) no Proof of Claim or Interest has been timely filed by the applicable Bar Date (or otherwise deemed timely filed under applicable law), (iii) such Claim or Interest has not been satisfied by the Debtors, or (iv) such Claim or Interest has not been resolved pursuant to a stipulation or order entered by the Court.

b.   The undisputed, non-contingent, unpaid, and liquidated amount specified in a Proof of Claim or Interest against the Debtors, timely filed with the Court or the Solicitation Agent by the applicable Bar Date (or otherwise deemed timely filed by the Court under applicable law) to the extent such Proof of Claim or Interest has not been amended or superseded by another Proof of Claim or Interest and is not the subject of an objection filed by January 10, 2025 (or, if such Claim or Interest has been resolved pursuant to a stipulation or order entered by the Court, the amount set forth in such stipulation or order).

c.   If applicable, the amount temporarily allowed by the Court for voting purposes pursuant to Bankruptcy Rule 3018.  Any motion pursuant to Bankruptcy Rule 3018 seeking to temporarily allow a Claim or Interest for voting purposes must be filed and served in accordance with the Disclosure Statement Order.

d.   Except as otherwise provided in subsection (c) hereof, a Ballot cast by an alleged Creditor who has timely filed a Proof of Claim or Interest in a wholly unliquidated, unknown, blank, or uncertain amount or in the amount of $0.00 that is not the subject of a claim objection filed by January 10, 2025 shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, and shall be ascribed a value of one dollar ($1.00) for voting purposes only.

e.   Except as otherwise provided in subsection (c) hereof, with respect to a Ballot cast by an alleged Creditor who has timely filed a Proof of Claim or Interest, but the Claim or Interest is the subject of a claim or interest objection filed by January 10, 2025, the Debtors request, in accordance with Bankruptcy Rule 3018(a), that the Ballot not be counted for voting purposes.

f.   Notwithstanding subsection (e) hereof and except as otherwise provided in subsection (c) hereof, if the Debtors have requested that a Claim or Interest be reclassified, estimated, and/or allowed in a fixed, reduced amount pursuant to a claim or interest objection or estimation proceeding to such

Claim or Interest, the Ballot of the Holder of such Claim or Interest shall be counted in the reduced amount requested by the Debtors and/or in the requested classification.  After the Voting Deadline, no Ballot may be withdrawn or amended without the written consent of the Debtors, with the grant of such consent, absent a contrary order of the Court, being a matter of the Debtors' sole discretion.

g.      Notwithstanding anything to the contrary contained herein, to the extent that a Holder holds duplicate Claims or Interests in the same Voting Class (by virtue of one or more timely-filed proofs of claim or interest, the Schedules (or a combination of both) or the purchase of duplicate Claims or Interests), such Holder shall be deemed to hold a single Claim or Interest in such Voting Class and may be provided only one Solicitation Package and one Ballot for voting a single Claim or Interest in such Class, regardless of whether the Debtors have objected to such duplicate Claims or Interests.

h.      Notwithstanding anything to the contrary contained herein, with respect to loan Claims in Classes 3, 4, 5, and 7, the Claim amounts for voting purposes only will be established based on the amounts of the applicable positions held by each claimant, as of the Voting Record Date, as evidenced by the applicable books and records maintained by the Debtors, and/or the applicable administrative agent under the applicable credit facility, with the register of such claimants to be provided to the Solicitation Agent by the Debtors or administrative agent(s), as applicable, in electronic Microsoft Excel format no later than one (1) Business Day after the Voting Record Date.

51.      The Debtors further request that the following voting procedures and standard assumptions be used in tabulating the Ballots:

a.      For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims or Interests held by a single Creditor against the Debtors in each Voting Class will be aggregated as if such Creditor held a single Claim or Interest against the Debtors in the Voting Class, and the votes related to those Claims or Interests shall be treated as a single vote on the Plan; provided, however, that separate Claims or Interests held as of the Petition Date by different entities (even if related, affiliated, or properly and timely assigned or transferred prior to the Voting Record Date) shall not be deemed to be held by a single Creditor pursuant to this provision, and the votes with respect to any such Claims or Interests shall be treated as separate votes on the Plan.

b.      Creditors with multiple Claims or Interests within each Voting Class must vote all such Claims or Interests to either accept or reject the Plan, and may not split their vote(s) within the Voting Class.  Accordingly, an individual

Ballot that partially rejects and partially accepts the Plan on account of multiple Claims or Interests within the Voting Class will not be counted.

c.    Each Creditor will be provided a single individual Ballot for all Claims or Interests held by such Creditor in each Voting Class against the Debtors.

d.    If a Claim or Interest is transferred after the Voting Record Date, only the Holder of such Claim or Interest as of the Voting Record Date may execute and submit a Ballot to the Solicitation Agent, the transferee of such Claim or Interest shall be bound by any such vote (and the consequences thereof) made by the Holder of such transferred Claim or Interest as of the Voting Record Date, and no "cause" will exist to permit any vote change under Bankruptcy Rule 3018(a).

e.    The delivery of a Ballot will be deemed made only when the Solicitation Agent actually receives the executed Ballot or a Ballot is received via electronic mail.

f.    Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent properly completed Ballot.  If multiple Ballots are received from the same Holder with respect to the same Claim or Interest prior to the Voting Deadline, the last timely received, properly executed Ballot will be deemed to reflect that Holder's intent and will supersede and revoke any Ballot previously received.

g.    If a Holder of a Claim or Interest casts multiple Ballots on account of the same Claim or Interest, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

h.    Except as otherwise provided in subsection (f) hereof, any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline.  To be valid, a notice of withdrawal must (i) contain the description of the Claims or Interests to which it relates and the aggregate principal amount represented by such Claims or Interests, (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claims or Interests and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be actually received by the Solicitation Agent prior to the Voting Deadline.  The Debtors expressly reserve the right to contest the validity of any such withdrawals of Ballots.

52.    The following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

a.    Any Ballot that fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection, of the Plan;

b.    Any Ballot received after the Voting Deadline, except by order of the Bankruptcy Court or if the Debtors have granted an extension of the Voting Deadline, in writing, with respect to such Ballot;

c.    Any Ballot containing a vote that the Bankruptcy Court determines was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

d.    Any Ballot that is illegible or contains insufficient information to permit the identification of the Claim or Interest Holder;

e.    Any Ballot cast by an Entity that does not hold a Claim or Interest in the Voting Classes;

f.    Any unsigned Ballot; and

g.    Any Ballot submitted by any means other than as set forth herein and in the Ballots, unless approved by the Debtors in writing or otherwise ordered by the Court.

53.    The Debtors also reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be unlawful.  The Debtors further reserve the right to allow for the cure of any defects or irregularities or conditions of delivery as to any particular Ballot.  The interpretation of all balloting rules and procedures (including the Ballot and the respective instructions thereto) by the Solicitation Agent and the Debtors, unless otherwise directed by the Court, will be final and binding on all parties.  Any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determine.  Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed

by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured. Ballots previously furnished (and as to which any irregularities have not theretofore been cured) will be invalidated.

54. Kroll will retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, Kroll is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

55. The Debtors and the Solicitation Agent, without further order of the Court, will determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots, and, absent a contrary order of the Court, such determinations shall be final and binding.

56. Under the Plan, (a) all Holders of Claims deemed to have accepted the Plan (i.e., Holders of Claims in Unimpaired Classes of Claims) and all Holders of Claims or Interests in the Voting Classes that have not filed an objection to the releases in Article 12 of the Plan prior to Voting Deadline, or have not filed an objection prior the objection deadline to object to Confirmation of the Plan, will be deemed to have irrevocably and unequivocally consented to the releases set forth in Article 12 of the Plan and forever released the Released Parties from any and all claims and causes of action to the extent provided for in Article 12 of the Plan.

57. The Debtors request that the Court establish **January 23, 2025 at 12:00 p.m. (ET)** as the deadline for the Solicitation Agent to file a voting report (the "Voting Report"), verifying the results of its voting tabulations reflecting the votes cast to accept or reject the Plan. The Voting

Report will, among other things, describe every Ballot received by the Solicitation Agent that does not conform to the Voting Instructions or that contains any form of irregularity, including, but not limited to, those Ballots that are late, illegible (in whole or in material part), unidentifiable, lacking signatures, lacking necessary information, or damaged.

58.     If any party seeks to challenge the allowance of its Claim or Interest for voting purposes in accordance with the above procedures, the Debtors request that the Court direct such party to serve on the Debtors and file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim or Interest in a different amount or classification for purposes of voting to accept or reject the Plan on or before **4:00 p.m. (ET) on January 16, 2025**.

59.     The Debtors submit that the proposed tabulation rules and other related vote tabulation procedures set forth above will establish a fair and equitable voting process and, therefore, should be approved.

## V.     Waiving the Requirement Under Bankruptcy Rule 3017(d) to Solicit Votes of Holders of Existing Intercompany Equity Interests.

60.     Pursuant to the Plan, Holders of Class 11 Existing Intercompany Equity Interests shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Interests, and all Interests of any kind will be deemed cancelled, released, and extinguished and shall be of no further force or effect.

61.     The Debtors request a waiver of the requirement under Bankruptcy Rule 3017(d) to solicit the votes of such Holders on the Plan.  The Debtors have assumed the rejection of the Plan by the Holders of Interests in Class 11 for Plan voting purposes and respectfully request that the Court waive the requirement to solicit the votes of such Holders on the Plan.  The Debtors believe that solicitation of Existing Intercompany Equity Interests is unnecessary and burdensome

given the facts and circumstances of these Chapter 11 Cases.  Since Existing Intercompany Equity Interests are assumed to reject the Plan, it is appropriate under the facts and circumstances of these Chapter 11 Cases to waive the requirement to solicit Holders of Existing Intercompany Equity Interests in Class 11.   Courts in this district have allowed debtors to avoid the solicitation of holders of equity interests even where such holders received property in connection with the chapter 11 plan process.  See e.g., In re Clovis Oncology, Inc., Case No. 22-11292 (JKS) (Bankr. D. Del.); In re JMO Wind Down, Inc., Case No. 16-10682 (BLS) (Bankr. D. Del.); In re MiddleBrook Pharaceuticals, Inc., Case No. 10-11485 (MFW).

> **VI.   Scheduling the Confirmation Hearing and Establishing Notice and Objection Procedures in Respect Thereof.**

>> i.   Setting the Confirmation Hearing.

62.   Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

Fed. R. Bankr. P. 3017(c).

63.   In accordance with Bankruptcy Rule 3017(c), and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors request that the hearing on confirmation of the Plan be scheduled for **February 6, 2025 at [●] (ET)** (the "Confirmation Hearing").   The Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than an announcement in open court of any adjournments or through the filing of hearing agendas.  The proposed timing for the Confirmation Hearing will enable the Debtors to pursue confirmation of the Plan in a timely fashion.

ii.    <u>Establishing Procedures for Notice of the Confirmation Hearing.</u>

64.    Bankruptcy Rules 2002(b) and (d) require not less than twenty-eight (28) days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan.

65.    In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to provide to the members of the Voting Classes and Non-Voting Classes a copy of a notice of the hearing with respect to confirmation of the Plan (the "<u>Confirmation Hearing Notice</u>"), substantially in the form annexed to the Disclosure Statement Order as <u>Exhibit 2</u>, setting forth, among other things, (i) the date of approval of the Disclosure Statement; (ii) the Voting Record Date; (iii) the Voting Deadline; (iv) the time fixed for filing objections to confirmation of the Plan (collectively, the "<u>Plan Objections</u>"); and (v) the time, date, and place for the Confirmation Hearing.  The Debtors will serve, or cause to be served, the Confirmation Hearing Notice on (i) all known Creditors, (ii) the U.S. Trustee, (iii) counsel to the ABL Lenders, (iv) counsel to the Ad Hoc Group of First Lien Lenders, (v) counsel to the Second Lien Term Loan Lenders and HoldCo Lenders, (vi) counsel to the DIP Agent, (vii) counsel to the DIP Lenders, and (viii) any parties requesting notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

66.    Bankruptcy Rule 2002(l) provides that "[t]he court may order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  <u>See</u> Fed. R. Bankr. P. 2002(l).  In addition to including the Confirmation Hearing Notice in the Solicitation Package, the Debtors will cause the Confirmation Hearing Notice, as may be modified for publication, to be published once in the national edition of the *New York Times* or similar nationally-circulated publication no later than five (5) business days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter.

67.     The Debtors believe that service and publication of the Confirmation Hearing Notice as described above will provide sufficient notice to persons who do not otherwise receive the Confirmation Hearing Notice by mail of the Confirmation Hearing, and of the form and manner of, and deadline for, objections to confirmation of the Plan.  Parties in interest, Creditors, and Interest Holders will receive twenty-one (21) days' notice of the Confirmation Objection Deadline (as defined below) and twenty-eight (28) days' notice of the Confirmation Hearing.  The Debtors respectfully submit that the foregoing procedures will provide adequate notice of the Confirmation Hearing and the Confirmation Objection Deadline, and, accordingly, request that the Court approve such notice as adequate.

    iii.    <u>Establishing Procedures for the Filing of Objections to Confirmation of the Plan.</u>

68.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1).  To permit the Debtors adequate time to respond to objections prior to the Confirmation Hearing, the Debtors request that **<u>January 21, 2025 at 5:00 p.m. (ET)</u>** be fixed by the Court as the last date for filing and serving written objections to confirmation of the Plan (including any supporting memoranda) (the "<u>Confirmation Objection Deadline</u>").  The Debtors request that the Court direct that objections to confirmation of the Plan, if any, (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan; and (iv) be filed with the Court, together with proof of service, and served so that they are received on or before the Confirmation Objection Deadline by the following parties (the "<u>Notice Parties</u>"):

    a.    Proposed co-counsel to the Debtors (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com), Betsy L. Feldman, Esq. (bfeldman@willkie.com), and Joseph R. Brandt, Esq, (jbrandt@willkie.com), and (ii) Young

        Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Edmon L. Morton, Esq. (emorton@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), and Allison S. Mielke, Esq. (amielke@ycst.com);

b.      Counsel to any official committee appointed in these Chapter 11 Cases;

c.      The Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov);

d.      Counsel to the DIP Agent, Attn: Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Gregg Bateman, Esq. (bateman@sewkis.com), Sagar Patel, Esq. (patel@sewkis.com), and Michael Danenberg, Esq.(danenberg@sewkis.com);

e.      Counsel to the ABL Lenders, Attn: Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com);

f.      counsel to the DIP Lenders and Ad Hoc Group of First Lien Lenders, (i) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (ii) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com);

g.      Counsel to the Second Lien Term Loan Lenders and HoldCo Lenders, White & Case LLP, 200 S Biscayne Blvd, Miami, FL 33131, Attn: Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100, Chicago, IL 60606, Attn: Bojan Guzina, Esq. (bojan.guzina@whitecase.com).

69.    If Plan Objections are filed, providing sufficient time for the Debtors and other parties in interest in these Chapter 11 Cases to respond in support of the Plan (or, if possible, resolve the Plan Objections) will assist the Court and may expedite the Confirmation Hearing. However, under the proposed confirmation schedule and pursuant to Local Rule 9006-1(d), replies to Plan Objections would be due by 5:00 p.m. (Eastern Time) on the day before the Confirmation Hearing agenda must be filed, giving the Debtors and interested parties a limited time to prepare

replies.  See Del. Bankr. L.R. 9006-1(d).  Accordingly, the Debtors propose a deviation from the requirements of Local Rule 9006-1(d) and propose that the Debtors, or any other party supporting confirmation of the Plan, be afforded an opportunity to file responses to any Plan Objection (or any other pleading in support of confirmation of the Plan) on or **before February 4, 2025 at 12:00 p.m. (ET).**

### NOTICE

70.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney's Office for the District of Delaware; (iii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' Estates; (iv) counsel to the ABL Lenders; (v) counsel to the Ad Hoc Group of First Lien Lenders and DIP Lenders; (vi) counsel to the Second Lien Term Loan Lenders; (vii) counsel to the HoldCo Lenders; (viii) counsel to the DIP Agent; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Accordingly, the Debtors submit that good and sufficient notice of this Motion and the Disclosure Statement Hearing, including as required by Bankruptcy Rule 2002 and Local Rule 3017-1(a), has been provided and no other or further notice need be provided.

*[Remainder of Page Left Intentionally Blank]*

WHEREFORE the Debtors respectfully request entry of the Disclosure Statement Order granting the relief requested herein and such other and further relief as is just.

Dated: November 11, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Matthew A. Feldman (admitted *pro hac vice*)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*