## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>**December 10, 2024 at 10:00 a.m. (ET)** |
| | **Objection Deadline:**<br>**November 25, 2024 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING
BIDDING PROCEDURES FOR THE SALE OF ALL OR
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) SCHEDULING
AN AUCTION AND A SALE HEARING AND APPROVING THE FORM
AND MANNER OF NOTICE THEREOF, (C) APPROVING ASSUMPTION AND
ASSIGNMENT PROCEDURES, AND (D) GRANTING RELATED RELIEF; AND
(II) (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR
OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby file this motion (the "Motion") for the entry of (I) an order, substantially in the form attached hereto as Exhibit A (the "Bidding Procedures Order"), (a) approving bidding procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures"), to be used in connection with the sale (the "Sale") of all or substantially all of the Debtors' assets (collectively, the "Assets"), (b) scheduling an auction for the Assets (the "Auction"), if necessary, and scheduling a hearing to approve the Sale (the "Sale Hearing"), if necessary, and approving the form and manner of notice of the proposed Bidding Procedures, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Sale Hearing Notice"), (c) authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "Contracts") in connection with the Sale (the "Assumption Procedures"), and approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of (i) the Debtors' calculation of the amount necessary to cure any defaults under the applicable Contract (the "Cure Costs") and (ii) certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale, substantially in the form attached to the Bidding Procedures Order as Exhibit 3 (the "Assumption and Assignment Notice"), and (d) granting related relief; and (II) if applicable, an order of the Court (the "Sale Order")[2] (a) authorizing the sale of the Debtors' Assets free and clear of all liens, claims, interests, and encumbrances, except as provided in the Sale Order, (b) authorizing the assumption and assignment of certain Contracts to the Successful Bidder (as defined below) (such Contracts, the "Assigned Contracts") in connection with the Sale(s), and (c) granting related relief. In support of

---

[2] A proposed Sale Order will be filed in advance of the applicable Sale Hearing.

this Motion, the Debtors rely upon and incorporate by reference the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "<u>First Day Declaration</u>")[3] [Docket No. 15] and the declaration in support of the Motion (the "<u>Declaration</u>"). In further support of this Motion, the Debtors respectfully represent as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 363, 365, and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006(a), and 9017 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rules 2002-1, 6004-1, and 9006-1.

---

[3]      Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Bidding Procedures or First Day Declaration, as applicable.

## BACKGROUND

### I.    General.

4.    On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

### II.    Events Leading to the Sale.

7.    As set forth in greater detail in the First Day Declaration and as will be set forth in the Declaration, the Debtors are a privately held operator and acquirer of franchised and franchisable businesses in a collection of highly recognized and market-leading retail brands.  Over the past several years, the Debtors' business segments, like those of many of their peers, have been negatively impacted by challenges stemming from, among other things, adverse macroeconomic trends and headwinds in the retail industry.  More specifically, the Debtors have experienced operational declines and consolidated losses across their businesses resulting from underperforming retail store locations, inflationary pressure, an overleveraged balance sheet, and rising interest expenses.  These challenges have continued in the months prior to the Petition Date, stymieing the Debtors' ability to meet their near- and long-term liquidity needs.

8.    Among other efforts the Debtors made to address these industry headwinds, the Debtors engaged Willkie Farr & Gallagher LLP ("Willkie"), Young Conaway Stargatt & Taylor,

LLP ("Young Conaway"), Ducera Partners LLC ("Ducera"), AlixPartners, Inc. ("AlixPartners"), and Kroll Restructuring Administration LLC ("Kroll" and, collectively with Willkie, Young Conaway, Ducera, and AlixPartners, the "Restructuring Advisors") to assist with evaluating restructuring and strategic alternatives through both a chapter 11 process and on an out-of-court basis, including by marketing and exploring going concern sales for certain of the Debtors' business segments and soliciting and negotiating proposals for a value-maximizing, holistic restructuring transaction with the Debtors' key lender constituents.

9.      Specifically, in the months leading up to the Petition Date, the Restructuring Advisors conducted a robust marketing process for a sale of substantially all of the assets of American Freight. The Debtors' initial market outreach formally began in September 2024. As part of this process, the Debtors and Ducera reached out to over 80 potential bidders, of which 29 signed confidentiality agreements and received financial and operational diligence materials through the Debtors' virtual data room. While the Debtors' market outreach yielded two initial indications of interest, each as a joint proposal from two or more interested parties, they each proved unactionable. In light of the results from the American Freight marketing process and the liquidity issues associated with maintaining the business line as a going concern, the Debtors and their advisors redirected their efforts to focusing on identifying third-party consultants to evaluate and conduct the Store Closing Sales and to prepare each Store for turnover to the applicable landlords—all on terms that would maximize recoveries for the Debtors' stakeholders.[4]

10.     In addition to marketing American Freight, in the months prior to the Petition Date, the Debtors attempted to reorganize around their other business lines outside of chapter 11.

---

[4]     Further details of the Debtors' store closing sales are set forth in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief*, filed concurrently herewith.

Despite extensive negotiations with the Ad Hoc Group of First Lien Secured Lenders, the Second Lien Term Loan Lenders, and the HoldCo Lenders, it became clear that achieving a comprehensive, consensual out-of-court transaction on the timeline required by the Debtors' liquidity constraints was not feasible. Following this conclusion, the Debtors and the Ad Hoc Group of First Lien Secured Lenders quickly pivoted to negotiating the terms of a restructuring that could be implemented through a chapter 11 process with the support of the Consenting First Lien Lenders. The culmination of the Debtors' prepetition restructuring efforts was their entry into that certain *Restructuring Support Agreement*, dated as of November 1, 2024 (the "Restructuring Support Agreement"), with the Consenting First Lien Lenders. The goal of the transactions set forth in the Restructuring Support Agreement is to reorganize around the Debtors' strongest and most profitable business segments—namely, Buddy's, PSP, and Vitamin Shoppe— in a manner that maximizes value for all stakeholders.

11.     The Debtors' prepetition efforts have laid the foundation to efficiently consummate a value-maximizing transaction for the benefit of their creditors and all other stakeholders. The Restructuring Support Agreement memorializes the Consenting First Lien Lenders' agreement to support a sale process for the purpose of identifying one or a combination of Bidders who propose a value-maximizing transaction that pays off the Debtors' obligations under the DIP Facility, ABL Facility, and First Lien Term Loan Facility in full in cash at the closing of such transaction. If a bid for such a transaction does not materialize within forty-eight (48) hours prior to the date of the Auction, the Debtors will reorganize pursuant to the Plan, under which, among other things, holders of the First Lien Term Loan will receive 100% of the Debtors' reorganized equity (the "Plan Transaction"). This process is structured to efficiently maximize value for the benefit of all stakeholders.

### III.    Need for an Expedited Process.

12.    Time is of the essence for the Debtors, who simply cannot afford a longer process than the one contemplated by the Bidding Procedures.  Any delay in the consummation of a Sale jeopardizes the Debtors' ability to conduct these Chapter 11 Cases and operate their businesses in an efficient manner for the benefit of all creditors, particularly because the Debtors have limited access to postpetition financing under their DIP Facility, which requires the Debtors to consummate a transaction on an agreed-upon timeline that tracks the Restructuring Support Agreement milestones.  The Bidding Procedures balance the Debtors' need to efficiently consummate a Sale of their business with the need to provide adequate notice of the Debtors' postpetition marketing process to parties in interest.

13.    Subject to the proposed Bidding Procedures and the terms of the Restructuring Support Agreement, the Debtors may evaluate any binding proposal or offer (each, a "Bid") received and may aggregate two or more Qualified Bids into a single consolidated Qualified Bid for purposes of determining whether such Qualified Bids, when aggregated, constitute a Sufficient Bid (as defined in the Bidding Procedures).  If the Debtors receive more than one Sufficient Bid at or prior to forty-eight (48) hours prior to the date of the Auction, they may conduct an Auction to yield the most value-maximizing Sale of the Assets.  Further, pursuant to the terms of the Restructuring Support Agreement, if the Debtors receive only one Sufficient Bid, the Debtors may exercise the "sale toggle" under the Restructuring Support Agreement, name the Sufficient Bid as the Successful Bid, and, subject to Court approval, sell their Assets to the Successful Bidder through a value-maximizing transaction that pays off the Debtors' obligations under the DIP Facility, ABL Facility, and First Lien Term Loan Facility in full in cash at the closing of such transaction.  If the Debtors do not receive a Sufficient Bid at or prior to forty-eight (48) hours prior to the date of the Auction, the Debtors will pursue the Plan Transaction described in the

Restructuring Support Agreement and pursuant to the Debtors' Plan.  A longer in-court process than that set forth in the proposed Bidding Procedures is neither necessary nor the most effective use of the Debtors' limited resources.

## THE BIDDING PROCEDURES

I.     **Overview.**

14.     To optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Debtors have developed and proposed the Bidding Procedures, which are designed to permit a fair, efficient, competitive, and value-maximizing bidding process for the Debtors' Assets.  The Bidding Procedures are designed to encourage all prospective bidders to put their best Bid forward and bring finality to the Debtors' restructuring process.  Pursuant to Local Rule 6004, certain of the key terms of the Bidding Procedures (which are attached to the Bidding Procedures Order) are highlighted in the chart presented below:[5]

| MATERIAL TERMS OF THE BIDDING PROCEDURES AND BIDDING PROCEDURES ORDER | |
|---|---|
| **Provisions Governing Qualification of Bidders and Qualified Bids** Local Rule 6004-1(c)(i)(A)-(B) | Qualified Bid and Qualified Bidder Requirements are set forth in Sections III.A and IV of the Bidding Procedures.<br><br>Requirements to Participate and Obtain Due Diligence<br><br>To participate in the bidding process, a Potential Bidder must deliver to each of the Debtors' advisors the following documents and information:<br><br>1.     an executed confidentiality agreement on terms acceptable to the Debtors and substantially in the form approved by the Consultation Parties (a "<u>Confidentiality Agreement</u>"); and<br><br>2.     written proof by the Potential Bidder of its (a) financial capacity to close the Sale that will be proposed by the Potential Bidder and (b) ability to provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such Potential Bidder in |

---

[5]     This summary is qualified in its entirety by the provisions of the Bidding Procedures.  To the extent that there is any inconsistency between the terms of the Bidding Procedures and this summary, the terms of the Bidding Procedures shall control.  Capitalized terms used but not defined prior to or in this summary shall have the respective meanings given to them later in this Motion or in the Bidding Procedures, as applicable.

| MATERIAL TERMS OF THE BIDDING PROCEDURES<br>AND BIDDING PROCEDURES ORDER | |
|---|---|
| | connection with such Sale, which may include audited financial statements of, or verified financial commitments obtained by, the Potential Bidder that evidence the Potential Bidder's internal financial resources and ability to finance its Bid with cash on hand, available lines of credit, uncalled capital commitments or otherwise available funds (or, if the Potential Bidder is an entity formed for the purpose of acquiring the desired Assets, the party(ies) that will provide the Potential Bidder with the equity and/or debt financing to finance its Bid and bear liability for a breach), the adequacy of which will be assessed by the Debtors and their advisors, in consultation with the Consultation Parties. |

Subject to the proviso in the first paragraph of Article III.C. of the Bidding Procedures and subject to the second paragraph of Article III.C. of the Bidding Procedures, any Bid will be considered a qualified bid only if the Bid is submitted in writing by an Acceptable Bidder by the Bid Deadline and is determined to comply with all of the following in the Debtors' business judgment (after consultation with the Consultation Parties) (such bid, a "<u>Qualified Bid</u>," and, such Acceptable Bidder, a "<u>Qualified Bidder</u>"):

1. *Identity.* The Bid must fully disclose the identity of each person or entity that (a) is bidding for all or any portion of the Assets; (b) is sponsoring (including any equity sponsor) or financing the Bid (including through the issuance of debt, or extension of credit, in connection with such Bid); (c) is participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such Bid) such Bid and the complete terms of any such participation; or (d) will directly or indirectly own and/or control any amount of capital stock, limited liability company interests, partnership interests or other equity, ownership, beneficial or profits interests of such Acceptable Bidder, or any options, warrants or other securities that are convertible into, or exchangeable or exercisable for, any of the foregoing; in each case, including its full legal name, jurisdiction of incorporation or formation, and its location in the Acceptable Bidder's corporate structure. The Bid must also disclose any past or present affiliation, connection or agreement between the Acceptable Bidder or any person or entity described in the immediately preceding sentence, on the one hand, and any Debtor, any other prospective bidder for all or any portion of the Assets, or any officer, director, manager, shareholder, partner, investor or controlling person or entity of any Debtor or any such other prospective bidder, on the other hand.

2. *Purpose; Assets and Liabilities.* The Bid includes an irrevocable and binding offer by the Acceptable Bidder to either purchase some or all of the Assets (identified with specificity). A Bid involving the purchase of some or all of the Assets must clearly identify the following: (a) the Assets, or the portion thereof, to be purchased (including a preliminary list of executory contracts and unexpired leases that may be assumed by the Debtors and assigned to such Acceptable Bidder in connection with the Sale contemplated by such Bid, subject to revision prior to closing); and (b) the Liabilities and obligations to be assumed (including an estimate of indebtedness and applicable cure costs to be assumed or paid, if any).

3. *Purchase Price.* The Bid must clearly set forth the purchase price to be paid in connection with the Sale contemplated by such Bid (the "<u>Purchase Price</u>"), including all cash and non-cash components, if any. The Bid must confirm that all cash components of the Purchase Price are in U.S. Dollars. If the Purchase Price consists

of certain non-cash components, such as a Credit Bid, assumed Liabilities, or any other non-cash consideration, the Bid must specify the form of such non-cash consideration and shall include a detailed analysis of the value of each such non-cash component of such Purchase Price.

4. ***Deposit.***  The Bid must be accompanied by a good faith deposit in the form of cash in an amount equal to ten percent (10%) of the maximum cash component of the Purchase Price of such Bid (the "Deposit") to be held in an escrow account to be established by the Debtors and applied or returned to the Acceptable Bidder, in each case as set forth in Article XVIII of the Bidding Procedures.

5. ***Marked Agreement.***  A Bid for the Assets must include (a) a duly executed, irrevocable, non-contingent asset purchase agreement (which must be based on the Form APA (as defined below) with respect to the acquisition of the applicable Assets and the assumption of the applicable Liabilities necessary to effectuate the Sale contemplated in such Bid, (b) a schedule of Assigned Contracts, (c) a clearly marked-up version of (i) the form of Sale Order (as defined herein) provided by the Debtors to the Acceptable Bidder and (ii) the form of asset purchase agreement provided by the Debtors to the Acceptable Bidder (the "Form APA"), in each case, showing all changes requested by the Acceptable Bidder, and (d) all other material documents integral to such Bid (together with the asset purchase agreement and Sale Order, collectively, the "Asset Sale Bid Documents").

6. ***Committed Financing.***  The Bid must include evidence of the Acceptable Bidder's capacity to consummate the Sale contemplated by such Bid with (a) cash on hand or (b) committed financing documented to the satisfaction of the Debtors, in consultation with the Consultation Parties, that demonstrates that the Acceptable Bidder has received debt and/or equity funding commitments to timely provide the Acceptable Bidder with funds sufficient to pay the Purchase Price set forth in such Bid and all other obligations under such Bid, including providing adequate assurance of future performance under all contracts proposed to be Assigned Contracts by such Bid.  Such funding commitments or other financing must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.  Such funding commitments shall remain outstanding until at least ninety (90) days after entry of the Sale Order applicable to the Bid if such Bid is selected as the Successful Bid (as defined herein) or the Backup Bid (as defined below).  The Bid must disclose the identity and contact information for each entity providing any such funding commitment.  Any such funding commitments that are provided by equity holders or affiliated entities of the Acceptable Bidder must be accompanied by written evidence that such equity holders or other affiliated entities have the resources and ability to fund such commitments on a timely basis.

7. ***Certain Conditions and Contingencies Not Permitted.***  The Bid shall not be conditioned on, or have any contingencies with respect to, any (i) financing, including the obtaining or the sufficiency of financing; (ii) internal approvals; (iii) due diligence, including the outcome or review of due diligence; (iv) third party consents or approvals (other than governmental or regulatory approvals or consents that may be required to consummate the proposed Sale contemplated by such Bid, including any antitrust approval that may be required under the HSR Act (as defined below)); (v) the satisfaction or achievement of any financial targets, thresholds, or metrics; or (vi) the

absence of any material adverse effect since a date earlier than the date the Bid was submitted.

8. ***Governmental and Regulatory Approvals.*** The Bid must describe all governmental or regulatory approvals or consents that are required to consummate the proposed Sale contemplated by such Bid (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act")), and the time period within which the Acceptable Bidder expects to receive such approvals or consents. The Bid must include evidence satisfactory to the Debtors of the ability of the Acceptable Bidder to obtain such approvals or consents as soon as reasonably practicable, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents.

9. ***Irrevocable.*** The Bid must be irrevocable and binding; provided that such Bid may be revoked after the Auction if such Bid is not selected as the Successful Bid or Backup Bid.

10. ***Backup Bidder.*** The Bid must contain an agreement for the Acceptable Bidder to be a Backup Bidder if such Acceptable Bidder's Bid is selected as the next highest or next best Bid after the Successful Bid.

11. ***As-Is, Where-Is.*** The Bid must include the following representations and warranties: (a) the Acceptable Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' business and the Assets and Liabilities such Acceptable Bidder proposes to acquire and assume prior to submitting such Bid; and (b) the Acceptable Bidder (i) has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets and Liabilities such Acceptable Bidder proposes to acquire and assume in making such Bid and (ii) did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Assets and Liabilities such Acceptable Bidder proposes to acquire and assume or the accuracy or completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in such Acceptable Bidder's proposed purchase agreement ultimately accepted and executed by the Debtors.

12. ***Authorization.*** The Bid must include evidence that the Acceptable Bidder has obtained authorization or approval from all persons, entities, bodies, and committees that are required to provide such authorization or approval under such Acceptable Bidder's organizational documents (including, to the extent applicable, its board of directors or board of managers (or comparable governing body), its general partner, or its stockholders, members, partners, or other equity holders) acceptable to the Debtors with respect to (a) the submission, execution, and delivery of such Bid and the Asset Sale Bid Documents, (b) participation in the Auction, and (c) closing of the proposed Sale contemplated in such Bid (including any financing that is part of the Bid). The Bid shall further state that any necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith, whether the responsibility of the Acceptable Bidder or the Debtors, shall be made by the Acceptable Bidder.

13. ***Disclaimer of Fees.***  The Bid must not seek to entitle the Acceptable Bidder to any right to receive a break-up fee, topping fee, termination fee or similar type of payment, any compensation, or any expense reimbursement, and the Acceptable Bidder shall waive the right to pursue any administrative expense claim (including under a theory of substantial contribution) under 11 U.S.C. § 503 related in any way to the submission of such Bid or participation in any Auction.  The Acceptable Bidder shall bear its own costs and expenses (including legal fees) in connection with the submission of such Bid, participation in any Auction, and the closing and consummation of any Sale.

14. ***Time Frame for Closing.***  The Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, conditions, experience, and other considerations in the Debtors' business judgment) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, but in any event no later than March 4, 2025.  The Acceptable Bidder must commit to closing the proposed Sale contemplated by such Bid as soon as practicable, and must expressly set forth any potential regulatory issues or approvals that might arise in connection with such Acceptable Bidder's acquisition of the Assets, including such Acceptable Bidder's anticipated timing and proposed approach for resolving any such regulatory issues and obtaining any potential regulatory approvals.

15. ***Employees.***  The Bid must include a statement regarding whether the Acceptable Bidder intends to offer future employment to any of the Debtors' employees (and, if so, specifically identify such employees); <u>provided</u> that such Bid shall not be conditioned on, or have any contingencies with respect to, any acceptance of any such offer of employment.

16. ***Adherence to Bidding Procedures.***  The Bid must include a statement that (a) the Acceptable Bidder has acted in good faith consistent with section 363(m) of the Bankruptcy Code, (b) such Bid constitutes a *bona fide* offer to consummate the proposed Sale embodied therein, and (c) the Acceptable Bidder agrees to be bound by the Bidding Procedures.

17. ***Cooperation.***  The Acceptable Bidder must covenant to cooperate with the Debtors to provide factual information regarding such Acceptable Bidder's assets, liabilities, businesses, and operations upon the Debtors' request.

18. ***No Collusion.***  The Acceptable Bidder must acknowledge in writing that (a) in connection with submitting the Bid, it has not engaged in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids or the Sale, specifying that it did not agree with any Potential Bidders, Acceptable Bidders, or Qualified Bidders to control price; and (b) it agrees not to engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction, or the Sale.

19. ***Acknowledgement of Remedies.***  The Bid shall include a written acknowledgement from the Acceptable Bidder that, in the event of the Acceptable Bidder's breach of, or failure to perform under, the Asset Sale Bid Documents, the Debtors and their estates shall be entitled to pursue all available legal and equitable remedies, including, without limitation, retention of the Deposit (including any Incremental Deposit Amount (as defined below)) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

| MATERIAL TERMS OF THE BIDDING PROCEDURES<br>AND BIDDING PROCEDURES ORDER | |
|---|---|
| | 20. ***Other Information.***  The Bid contains such other information as may be reasonably requested by the Debtors.<br><br>Notwithstanding anything in the Bidding Procedures to the contrary, any Bid that would otherwise constitute a Qualified Bid will cease to be a Qualified Bid if such Bid, taken together with all other Bids that would otherwise constitute a Qualified Bid, does not constitute a Sufficient Bid at least forty-eight (48) hours prior to the date of the Auction**.** |
| **Modification of Bidding Procedures**<br>Local Rule 6004-1(c)(i)(D) | Section VII.B.10 of the Bidding Procedures sets forth the Debtors' rights, in consultation with the Consultation Parties, to (a) announce, at any Auction (if held), modified or additional procedures for conducting the Auction, and (b) otherwise make modifications to the Bidding Procedures; <u>provided, however</u>, that, without the prior written consent of the Required Consenting First Lien Lenders, in no event shall the Debtors make any amendments or modifications, directly or indirectly, to any of the following (including to any of the defined terms used therein):  (i) the second paragraph of Article III.C., (ii) Number 13 in Article IV, (iii) the last paragraph of Article IV, (iv) the second sentence of Article V, (v) the second paragraph of Article VII, (vi) the second paragraph of Section D of Article VII, (vii) the last paragraph of Article VIII, (viii) Article XIII, (ix) Article XVII, (x) Article XIX, (xi) any term or provision of the Bidding Procedures relating to (A) the Senior Secured Lenders' right to submit a Bid (including a Credit Bid) at or at any time prior to the time set forth in the proviso in the first paragraph of Article III.C., and their right to exercise their Credit Bid Right and submit a Credit Bid, (B) any person or entity submitting a Bid (including a Credit Bid) on behalf of the Senior Secured Lenders (including any agent or other representative for the Senior Secured Lenders), (C) the status of any Bid (including a Credit Bid) submitted by, or on behalf of, the Senior Secured Lenders as a Qualified Bid, (D) the status of the Senior Secured Lenders and/or any person or entity submitting a Bid (including a Credit Bid) on their behalf (including any agent or other representative for the Senior Secured Lenders) as a Qualified Bidder, an Acceptable Bidder or a Secured Party, or (E) the consultation rights of, or the rights to receive information or documents by, the Consultation Parties, or (xii) this proviso.  All such modifications and additional rules will be communicated to each of the Acceptable Bidders and Qualified Bidders in advance to the extent reasonably practicable; <u>provided</u> that, to the extent such modifications occur at the Auction (if held), disclosure of such modifications shall be limited to those in attendance at the Auction  All such modifications and additional rules will be communicated to each of the Acceptable Bidders and Qualified Bidders in advance to the extent reasonably practicable; <u>provided</u> that, to the extent such modifications occur at the Auction (if held), disclosure of such modifications shall be limited to those in attendance at the Auction. |
| **Closing with Alternative Back-up Bidders**<br>Local Rule 6004-1(c)(i)(E) | Section VIII of the Bidding Procedures sets forth certain requirements with respect to Backup Bids.<br><br>Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid as compared to the Successful Bid at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, in consultation with the Consultation Parties (the "<u>Backup Bid</u>"), shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated. |

| MATERIAL TERMS OF THE BIDDING PROCEDURES<br>AND BIDDING PROCEDURES ORDER | |
|---|---|
| | As a condition to remaining the Backup Bidder, any Backup Bidder shall wire to the Debtors, in immediately available funds, its Incremental Deposit Amount, if applicable, no later than one (1) Business Day following the date on which the Notice of Winning Bidder is served.<br><br>The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors at the conclusion of any Auction (if held) at the same time the Debtors announce the identity of the Successful Bidder.<br><br>The Backup Bid(s) shall remain binding on the Backup Bidder until the earlier of (a) the closing of the Sale contemplated by the Successful Bid with the Successful Bidder, and (b) ninety (90) days after the date of the entry of the Sale Order applicable to such Backup Bid. If a Successful Bidder fails to consummate the Sale contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.<br><br>The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid of a Backup Bidder without further order of the Court or notice to any party.<br><br>Anything in the Bidding Procedures to the contrary notwithstanding, if the Bid (including a Credit Bid) submitted by or on behalf of the Senior Secured Lenders (including any agent or other representative for the Senior Secured Lenders) is a) the Successful Bid or (b) the Backup Bid (in the event the Successful Bidder fails to consummate the Sale contemplated by its Successful Bid), in either such case the Senior Secured Lenders may elect to consummate the Successful Bid or the Backup Bid, as applicable, through the Plan Transaction in accordance with the terms of the Restructuring Support Agreement; <u>provided</u> that, to the extent any portion of the Successful Bid or the Backup Bid submitted by or on behalf of the Senior Secured Lenders (including any agent or other representative for the Senior Secured Lenders) consists of any consideration in excess of the amount of the Senior Secured Lenders' Credit Bid, then the Plan Transaction shall be modified solely to the extent necessary to account for any such excess consideration. |
| **Provisions Governing the Auction**<br>Local Rule 6004-1(c)(ii) | Section VII of the Bidding Procedures sets forth the procedures governing the Auction.<br><br>Subject to the proviso in the first paragraph of Article III.C. of the Bidding Procedures and subject to the second paragraph of Article III.C. of the Bidding Procedures, only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline shall be eligible to participate in the Auction, if held. Qualified Bidders participating in any Auction held must appear in person (or through a duly authorized representative), telephonically, or through a video teleconference, as determined by the Debtors, in consultation with the Consultation Parties. If held, any Auction will be conducted openly and all creditors may be permitted to attend; <u>provided</u> that the Debtors may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or creditor at the Auction. Any creditor and its advisors wishing to attend the Auction (if held) must contact the Debtors' advisors no later than one (1) Business Day prior to the start of any Auction; <u>provided</u> that (i) the Committee, if any, and (ii) any Secured Party and, in each case, their respective advisors (including the Consultation Parties), shall be permitted to attend the Auction, if held, with prior notice to the Debtors' advisors no later than the later of (x) twenty-four (24) hours prior to the commencement of the Auction (if held) and (y) twenty-four (24) hours after the Debtors designate Qualified Bidders. |

| |
|---|
| **MATERIAL TERMS OF THE BIDDING PROCEDURES AND BIDDING PROCEDURES ORDER** |

If the Debtors do not receive a Sufficient Bid at least forty-eight (48) hours prior to the date of the Auction, then (i) the Debtors shall not hold the Auction, and (ii) the Debtors shall immediately terminate the process to consummate a Sale and shall exclusively pursue the Plan Transaction in accordance with the terms of the Restructuring Support Agreement.

If the Debtors receive more than one Sufficient Bid at least forty-eight (48) hours prior to the date of the Auction and decide to hold an Auction, no later than forty-eight (48) hours prior to the commencement of the Auction, the Debtors will notify all Qualified Bidders and the Consultation Parties of the opening Qualified Bid at the Auction (the "Minimum Bid"), which Minimum Bid shall in no event be no less than a Sufficient Bid, and provide copies of the Asset Sale Bid Documents supporting the Minimum Bid to all Qualified Bidders.

The Auction, if held, shall take place **at 10:00 a.m. (prevailing Eastern Time) on January 28, 2025**, (i) via a virtual meeting, (ii) at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, or (iii) at such later date, time, and location as designated by the Debtors, after providing notice to the Notice Parties and the Consultation Parties.

If held, the Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment:

1.  *Minimum Bid*. Bidding shall commence at the amount of the Minimum Bid.

2.  *Minimum Overbid*. Qualified Bidders may submit successive Bids with a Purchase Price that is higher than the Purchase Price for the previous Bid, based on and increased from the Minimum Bid (each such Bid, an "Overbid"). Any Overbid shall be made in increments of at least $1,000,000.00 in cash, cash equivalents, the Credit Bid, or such other consideration that the Debtors deem equivalent. The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, announce increases or reductions to initial or subsequent minimum incremental Overbids at any time during the Auction (if held).

3.  *Highest or Best Offer*. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the Bid that they believe in their reasonable business judgment, in consultation with the Consultation Parties, to be the highest or otherwise best offer for the Assets (the "Leading Bid"), and describe the material terms thereof to each participating Qualified Bidder. Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent Bid with full knowledge of the Leading Bid. To the extent not previously provided (as determined by the Debtors, in consultation with the Consultation Parties), a Qualified Bidder submitting a subsequent Bid must submit, as part of its subsequent Bid, written evidence (in the form of financial disclosure or credit quality support information or enhancement reasonably acceptable to the Debtors, in consultation with the Consultation Parties) demonstrating such Qualified Bidder's ability to close the Sale at the Purchase Price contemplated by such subsequent Bid.

15

| MATERIAL TERMS OF THE BIDDING PROCEDURES AND BIDDING PROCEDURES ORDER |
|---|

4.  *Incremental Deposit*.  Upon the submission by a Qualified Bidder of its Bid at the Auction (if held), it must commit on the record to pay promptly following the Auction, if such Bid were to be the Successful Bid or the Backup Bid, the incremental amount of its Deposit calculated based on the increased Purchase Price of such Bid, if applicable (the "Incremental Deposit Amount").

5.  *Rejection of Bids*.  The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, at any time before entry of an order of the Court approving a Qualified Bid, reject any Bid (other than a Bid submitted by, or on behalf of, the Senior Secured Lenders) that the Debtors determine is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

6.  *No Late Bids*.  The Debtors shall not consider any Bids submitted after the conclusion of any Auction (if held), and any and all such Bids shall be deemed untimely and shall under no circumstances constitute a Bid or an Overbid.

7.  *No Round-Skipping*.  Round-skipping, as described herein, is explicitly prohibited.  To remain eligible to participate in the Auction (if held), in each round of bidding, (i) each Qualified Bidder must submit a Bid before the end of such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to Bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment, in consultation with the Consultation Parties, such Qualified Bidder shall be disqualified from continuing to participate in any Auction (if held) without the consent of the Debtors; provided that, notwithstanding anything to the contrary herein, a Qualified Bidder that is bidding on all or substantially all of the Assets shall not be required to participate in any Auction or round thereof (if held) for less than all or substantially all of the Assets.

8.  *Auction Sequence*.  In the event the Debtors receive Qualified Bids for less than all or substantially all of the Assets (such Qualified Bids, "Partial Asset Bids"), the Debtors shall start the Auction with such Partial Asset Bids (and, for the avoidance of doubt, any Qualified Bidder for all or substantially all of the Assets shall not be required to participate in such Auction) to determine which Partial Asset Bid is the highest or otherwise best Bid for the Assets in question (such Bid, the "Prevailing Partial Asset Bid").  Upon determination of the Prevailing Partial Asset Bid for each of the Assets, the Debtors shall conduct an Auction with respect to Bids for all or substantially all of the Assets (such Bids, "All Asset Bids," and, the highest or otherwise best such Bid, the "Prevailing All Asset Bid").  To the extent the Debtors determine that the Prevailing Partial Asset Bid(s) is/are not higher or otherwise better than the Prevailing All Asset Bid, then the Prevailing Partial Asset Bid bidders shall be required to submit Bids that are higher or otherwise better than the Prevailing All Asset Bid.  To the extent the

| MATERIAL TERMS OF THE BIDDING PROCEDURES AND BIDDING PROCEDURES ORDER | | |
|---|---|---|
| | | Debtors determine that the Prevailing Partial Asset Bid(s) is/are higher or otherwise better than the Prevailing All Asset Bid, then the Prevailing All Asset Bid bidder shall be required to submit a Bid that is higher or otherwise better than the Prevailing Partial Asset Bid(s). |
| | 9. | *Additional Information*.  The Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's (other than any Secured Party that is a Qualified Bidder) financial and other capabilities to consummate the Sale contemplated by its Bid and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction (if held). |
| | 10. | *Modification of Procedures*.  The Debtors may, in consultation with the Consultation Parties, (a) announce, at any Auction (if held), modified or additional procedures for conducting the Auction, and (b) otherwise make modifications to the Bidding Procedures; provided, however, that, without the prior written consent of the Required Consenting First Lien Lenders, in no event shall the Debtors make any amendments or modifications, directly or indirectly, to any of the following (including to any of the defined terms used therein):  (i) the second paragraph of Article III.C., (ii) Number 13 in Article IV, (iii) the last paragraph of Article IV, (iv) the second sentence of Article V, (v) the second paragraph of Article VII, (vi) the second paragraph of Section D of Article VII, (vii) the last paragraph of Article VIII, (viii) Article XIII, (ix) Article XVII, (x) Article XIX, (xi) any term or provision of the Bidding Procedures relating to (A) the Senior Secured Lenders' right to submit a Bid (including a Credit Bid) at or at any time prior to the time set forth in the proviso in the first paragraph of Article III.C., and their right to exercise their Credit Bid Right and submit a Credit Bid, (B) any person or entity submitting a Bid (including a Credit Bid) on behalf of the Senior Secured Lenders (including any agent or other representative for the Senior Secured Lenders), (C) the status of any Bid (including a Credit Bid) submitted by, or on behalf of, the Senior Secured Lenders as a Qualified Bid, (D) the status of the Senior Secured Lenders and/or any person or entity submitting a Bid (including a Credit Bid) on their behalf (including any agent or other representative for the Senior Secured Lenders) as a Qualified Bidder, an Acceptable Bidder or a Secured Party, or (E) the consultation rights of, or the rights to receive information or documents by, the Consultation Parties, or (xii) this proviso.  All such modifications and additional rules will be communicated to each of the Acceptable Bidders and Qualified Bidders in advance to the extent reasonably practicable; provided that, to the extent such modifications occur at the Auction (if held), disclosure of such modifications shall be limited to those in attendance at the Auction. |

15.    Importantly, the Bidding Procedures recognize and comply with the Debtors' fiduciary obligations to maximize sale value, and the Debtors have the ability to consider all Qualified Bid proposals.  Subject to the terms set forth therein, the Bidding Procedures preserve

the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

## II.    Key Dates and Deadlines.

16.    Pursuant to the Bidding Procedures, the Debtors will solicit Bids according to the following proposed schedule, subject to Court approval and availability, which the Debtors believe is appropriate in light of the circumstances of these Chapter 11 Cases.

| Deadline | Event |
|---|---|
| **December 11, 2024** | Entry of Bidding Procedures Order |
| **As soon as practicable after entry of the Bidding Procedures Order** | Deadline for Debtors to publish Sale Hearing Notice |
| **Two Business Days after the entry of the Bidding Procedures Order, or as soon as practicable thereafter** | Deadline for Debtors to file and serve Sale Hearing Notice |
| **4:00 p.m. (ET) on the date that is fourteen (14) days after service of the Sale Hearing Notice** | Sale Objection Deadline |
| **December 16, 2024 at 5:00 p.m. (ET)** | Deadline for Acceptable Bidders to submit non-binding Indications of Interest |
| **December 20, 2024** | Deadline to file and serve Assumption and Assignment Notice |
| **4:00 p.m. (ET) on the date that is fourteen (14) days after service of the Assumption and Assignment Notice** | Deadline to object to the Assumption and Assignment Notice |
| **January 23, 2025 at 5:00 p.m. (ET)** | Bid Deadline |
| **No later than 48 hours prior to Auction, if applicable** | Deadline to Designate Qualified Bidders |
| **Twenty-four (24) hours following publication of the Notice of Successful Bidder, if no Auction is held** | Deadline to object to adequate assurance of future performance under Assigned Contracts (if any) |

| Deadline | Event |
|---|---|
| **January 28, 2025 at 10:00 a.m. (ET)** | Auction, solely in the event the Debtors receive more than one Qualified Bid prior to or at the Bid Deadline that constitutes a Sufficient Bid |
| **As soon as practicable after the Auction, if applicable** | Deadline for Debtors to file and serve Notice of Successful Bidder |
| **January 30, 2025 at 4:00 p.m. (ET), if an Auction is held** | Deadline to object to (i) conduct at Auction (if any) and (ii) adequate assurance of future performance under Assigned Contracts (if any) |
| **January 28, 2025, at 5:00 p.m. (ET), if no Auction is held**<br><br>**February 2, 2025, at 12:00 p.m. (ET), if an Auction is held** | Deadline to Reply to Sale Objections |
| **January 30, 2025 at [●] a.m./p.m. (ET), subject to the availability of the Court** | Sale Hearing, if no Auction is held |
| **February 3, 2025 at [●] a.m./p.m. (ET), subject to the availability of the Court** | Sale Hearing, if an Auction is held |

### III.    Sale Noticing and Objection Procedures.

17.    The Debtors seek approval of the following sale noticing and objection procedures, which the Debtors respectfully submit are reasonably calculated to provide interested parties with notice of the Sale and Sale Hearing and an opportunity to respond accordingly.

| | |
|---|---|
| **Service of Sale Hearing Notice** | Within two (2) Business Days after entry of the Bidding Procedures Order, or as soon as practicable thereafter, the Debtors shall serve the Sale Hearing Notice on: (a) the Notice Parties; (b) all parties to executory contracts and unexpired leases proposed to be assumed, assigned, or rejected as part of the proposed Sale; (c) all parties who have expressed a written interest in some or all of the Assets within six (6) months prior to entry of the Bidding Procedures Order; (d) all known holders of liens, encumbrances, and other claims secured by the Assets; (e) the Internal Revenue Service; (f) all applicable state and local taxing authorities; (g) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (h) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. |

| | |
|---|---|
| **Publication of Sale Hearing Notice** | As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall publish the Sale Hearing Notice, with any modifications necessary for ease of publication, in *The New York Times* (national edition), or similar nationally circulated publications, to provide notice to any other potentially interested parties. |

## IV.    Assumption Procedures.

18.    The Debtors seek approval of the Assumption Procedures to facilitate the fair and orderly assumption and assignment of the Assigned Contracts in connection with the Sale.

| | |
|---|---|
| **Assumption and Assignment Notice** | By December 20, 2024 (the "Assumption and Assignment Service Deadline"), the Debtors shall serve the Assumption and Assignment Notice by first class mail or email on each non-debtor counterparty to the Contracts that may be assumed and assigned as part of the proposed Sale (or their respective counsel, if known) that may be assumed by the Debtors and assigned to a Successful Bidder (if any) in connection with the Sale contemplated by such Successful Bidder's Successful Bid.<br><br>The Assumption and Assignment Notice shall inform each recipient of (i) the timing and procedures relating to such assumption and assignment, (ii) the title (or an appropriate description) and date of the Contract (if available), (iii) the name of the non-Debtor counterparty to the Contract, (iv) the Debtors' good faith estimates of the Cure Costs (if any) required in connection with the Contract, and (v) the Cure Objection Deadline; provided, however, that service of an Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract and/or unexpired lease or that any stated Cure Cost constitutes a claim against the Debtors or any Successful Bidder, and all rights with respect thereto are expressly reserved.<br><br>Service of an Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract or unexpired lease or that any stated Cure Cost constitutes a claim against the Debtors, and all rights with respect thereto are expressly reserved.  Further, the inclusion of a Contract on the Assumption and Assignment Notice is not a guarantee that such Contract will ultimately be assumed and assigned.  Any determination of whether such Contract is an executory contract or an unexpired lease or can be rejected will be made in accordance with the Bankruptcy Code, the Bankruptcy Rules, and all applicable orders of the Court. |
| **Cure Costs** | The payment of the applicable Cure Costs shall (i) effect a cure of all defaults existing under the Applicable Assigned Contracts, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption to the Assigned Contracts by the Debtors and the assignment of the Assigned Contracts to any Successful Bidder, constitute adequate assurance of future performance thereof.<br><br>In the event that an auction is held, objections to adequate assurance of future performance of the Assigned Contracts by any Successful Bidder must be filed |

| | |
|---|---|
| | with the Court and served on the Objection Notice Parties no later than **January 30, 2025 at 4:00 p.m. (ET).** |
| **Supplemental Contract Assumption Notice** | To the extent the Debtors, at any time after the Assumption and Assignment Service Deadline (i) identify additional Contracts that may be assumed and assigned to the Successful Bidder, if any (the "<u>Additional Contracts</u>"), (ii) remove Contracts from the list of Contracts that may be assumed and assigned in connection with a Sale, and/or (iii) modify the previously stated Cure Cost associated with any Contract, the Debtors will promptly file with this Court and serve by first-class mail or email a supplemental notice of contract assumption (a "<u>Supplemental Assumption Notice</u>") on each of the counterparties to such Contracts and their counsel of record, if any.<br><br>Each Supplemental Assumption Notice will include the same information with respect to the listed Contracts as was included in the Assumption and Assignment Notice.<br><br>The Successful Bidder (if any, and including any Backup Bidder ultimately named a Successful Bidder) may, pursuant to the terms of the asset purchase agreement executed with the Debtors, designate Additional Contracts as Assigned Contracts to be assumed and assigned at any time until five (5) Business Days prior to the Sale Closing, and may remove Assigned Contracts from the list of Contracts at any time until five (5) Business Days prior to the Sale Closing.<br><br>Counterparties to Additional Contracts or that otherwise receive a Supplemental Assumption Notice shall have until 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after the filing and service of the Supplemental Assumption Notice by the Debtors on the counterparty to file a Cure Objection (as defined below). |
| **Objections** | Objections, if any, to the proposed assumption and assignment or the Cure Cost proposed with respect thereto (each, a "<u>Cure Objection</u>"), must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Cost, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon the Objection Notice Parties, so as actually to be received on or before the date that is fourteen (14) days after the filing and service of the Assumption and Assignment Notice or Supplemental Assumption Notice by the Debtors, as applicable (each, a "<u>Cure Objection Deadline</u>"). |
| **Dispute Resolution** | In the event that a non-Debtor contract counterparty files a timely Cure Objection and the Debtors and such counterparty cannot resolve such objection, the objection shall be heard at the Sale Hearing or such later date that the Debtors determine, subject to the Court's calendar; <u>provided</u>, <u>however</u>, that (i) any Assigned Contract that is the subject of a Cure Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection, (ii) the Debtors, in consultation with the parties to any Contract that is subject to a Cure Objection, may adjourn a Cure Objection, and (iii) the Successful Bidder (if any) shall pay any undisputed Cure Cost in |

| | accordance with the terms of its asset purchase agreement with the Debtors on or before the Sale Closing and shall appropriately reserve funding for the disputed portion of the Cure Costs.<br><br>If such objection has not been resolved prior to the Sale Closing (whether by an order of the Court or by agreement with the counterparty), the Successful Bidder (if any) may elect, in its sole discretion, to: (x) treat such counterparty's Contract (the "Disputed Contract") as an excluded Contract (pursuant to the terms of the Successful Bidder's asset purchase agreement with the Debtors) or (y) temporarily treat such counterparty's Contract as an excluded Contract, proceed to the Sale Closing, and determine whether to treat the Disputed Contract as an Assigned Contract or an excluded Contract within five (5) business days after resolution of such objection (whether by order of the Court or by agreement with the counterparty).<br><br>If a timely objection is not received as to the adequate assurance of future performance with respect to a Contract, Additional Contract, or Assigned Contract listed on the Assumption and Assignment Notice or any Supplemental Assumption Notice or any Supplemental Assumption Notice, the non-Debtor party to such Assigned Contract shall be deemed to have consented to have consented to (a) such Cure Cost, (b) the assumption and assignment of such Assigned Contract, (c) the related relief requested in the Motion, and (d) the Sale, and shall be forever barred and estopped from asserting or claiming that any conditions to such assumption, assignment, and/or transfer must be satisfied under such applicable Assigned Contract or that any related right or benefit under such applicable Assigned Contract cannot or will not be available to the proposed assignee. |
|---|---|
| **Contract Assumption** | No Assigned Contract shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Assigned Contracts or (ii) the Sale Closing. |

## **RELIEF REQUESTED**

19.     The Debtors seek entry of the Bidding Procedures Order, substantially in the form attached hereto as Exhibit A:

    (a)     authorizing and approving the Bidding Procedures;

    (b)     scheduling (i) an Auction (if necessary) and (ii) a Sale Hearing (if necessary) to consider approval of the proposed Sale, and approving the Sale Hearing Notice;

    (c)     approving the Assumption Procedures, and approving the Assumption and Assignment Notice; and

    (d)     granting related relief.

## BASIS FOR RELIEF REQUESTED

I.   **The Bidding Procedures Are in the Best Interests of the Debtors and Their Stakeholders.**

   A.   **The Bidding Procedures Are Reasonable, Appropriate, and Will Maximize Value.**

20.    The Bidding Procedures were formulated with the goal of maximizing the value of the Debtors' estates for the benefit of their creditors and other stakeholders.  Courts have made clear that a debtor has a fiduciary duty to maximize the value of the estate at hand.  In re Food Barn Stores, Inc., 107 F.3d 558, 564–65 (8th Cir. 1997) (citing In re Midway Airlines, Inc., 6 F.3d 492, 494 (7th Cir. 1993)); see In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets").  To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by a debtor's estate.  See, e.g., In re Integrated Res., Inc., 147 B.R. 650, 659 (S.D.N.Y. 1990) (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); In re Fin. News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates"); In re Dura Auto. Sys., No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *253 (Bankr. D. Del. Aug. 15, 2007) ("Bidding procedures should be approved when they provide a benefit to the estate by maximizing the value of the assets.").

21.    The Bidding Procedures will promote active bidding, elicit the highest or otherwise best offers available for the Debtors' Assets, and establish a controlled, fair, and open sale process that encourages consummation of a Sale in a timely manner.  Specifically, the Bidding Procedures contemplate an open bidding process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to

submit a timely and well-informed Bid. They provide the Debtors with a robust opportunity to consider competing Bids and select the highest or otherwise best offer for the completion of the Sale.

22.     Accordingly, the Bidding Procedures should be approved. Not only do they appropriately encourage competitive bidding under the standards governing auction proceedings and bidding incentives in bankruptcy cases, but they also are aligned with the circumstances of these Chapter 11 Cases and, if at least one Sufficient Bid is identified, will result in a Sale on fair and reasonable terms (or otherwise, a value-maximizing Plan Transaction). The Bidding Procedures are otherwise reasonable and in the best interests of the Debtors, their estates, and all parties in interest.

**B.     The Form and Manner of the Sale Hearing Notice Should Be Approved.**

23.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with twenty-one (21) days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested herein.

24.     As noted above, within two (2) business days of entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors will serve the Sale Hearing Notice upon the following parties or their respective counsel, if known: (a) the Notice Parties (as defined in the Bidding Procedures); (b) all parties to executory contracts and unexpired leases to be assumed, assigned, or rejected as part of the proposed Sale; (c) all parties who have expressed a written interest in some or all of the Assets in six (6) months prior to entry of the Bidding Procedures Order, which service may be sent by email, if a mailing address for any of such parties is unknown; (d) all known holders of liens, encumbrances, and other claims secured by the Debtors' Assets; (e) the Internal Revenue Service; (f) all applicable state and local taxing

authorities; (g) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (h) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

25.     In addition, as soon as reasonably practicable thereafter, the Debtors will provide notice of the Sale Hearing, with any modifications necessary for ease of publication, through the publication of the Sale Hearing Notice in *The New York Times* (national edition), or similar nationally circulated publications, and on the Debtors' claims agent website, https://cases.ra.kroll.com/FRG.

26.     The Debtors submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Hearing Notice and the Assumption and Assignment Notice, as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and in satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  Accordingly, the Debtors request that this Court approve the form and manner of the Sale Hearing Notice.

## II.     The Sale Should Be Approved as an Exercise of Sound Business Judgment.

27.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. See, e.g., In re Martin, 91 F.3d 389, 395 (3d. Cir. 1996) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . ."); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (same); Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); In re Telesphere Commc's, Inc., 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999).

28.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. See, e.g., In re Decora Indus., Inc., No. 00-4459 (JJF), 2002 WL 32332749, at *2 (Bankr. D. Del. May 20, 2002) (citing In re Delaware & Hudson Ry. Co., 124 B.R. 169 (Bankr. D. Del. 1991)).

29.     Once a debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); In re Filene's Basement, LLC, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted); Integrated Res., 147 B.R. at 656; In re Johns-Manville Corp., 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

A.     **A Sound Business Purpose Exists for the Sale.**

30.     As set forth above and as will be set forth in the Declaration, the Debtors have a sound business justification for selling the Assets to the Successful Bidder, if any.  The sale of the Assets subjects the proposed Plan Transaction with the Consenting First Lien Lenders to competing Bids, enhancing the Debtors' ability to receive the highest or otherwise best value for the Assets.  The Bidding Procedures were designed to facilitate a robust and competitive bidding process and, in turn, provide an appropriate framework for the Debtors to review, analyze, and

compare one or more Bids for the Assets and to engage with Bidders on an arm's length basis to work to improve the quality of their Bids for the benefit of all parties in interest.  Under the proposed Bidding Procedures, if the Debtors receive more than one Sufficient Bid at or prior forty-eight (48) hours prior to the date of the Auction, in accordance with their business judgment, they may conduct an Auction to yield the most value-maximizing sale of the Assets.  Alternatively, if the Debtors receive only one Sufficient Bid at or prior to forty-eight (48) hours prior to the date of the Auction, the Debtors may exercise the "sale toggle" under the Restructuring Support Agreement, constitute the Sufficient Bid as the Successful Bid, and, subject to Court approval, sell their Assets to the Successful Bidder through a value-maximizing transaction that pays off the Debtors' obligations under the DIP Facility, ABL Facility, and First Lien Term Loan Facility in full in cash at the closing of such transaction.  If the Debtors do not receive a Sufficient Bid at or prior forty-eight (48) hours prior to the date of the Auction, the Debtors will pursue the Plan Transaction.  Consequently, if the Debtors ultimately decide to pursue a Successful Bid instead of the Plan Transaction, that Successful Bid will constitute, in the Debtors' reasonable business judgment, the highest or otherwise best offer for the Assets and will provide a greater recovery for their estates than any known or practicably available alternative.  See, e.g., In re Trans World Airlines, Inc., No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. Apr. 2, 2001) (while a "section 363(b) sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction").

31.     If applicable, the Debtors will submit evidence at the Sale Hearing to support these conclusions.  Therefore, the Debtors request that the Court make a finding that the proposed sale of the Assets is a proper exercise of the Debtors' business judgment and is rightly authorized.

**B.      Adequate and Reasonable Notice of the Sale Will Be Provided.**

32.      The Sale Hearing Notice: (a) will be served in a manner that provides parties in interest notice of the date, time, and location of the Sale Hearing; (b) informs parties in interest of the deadlines for objecting to the Sale; and (c) otherwise includes all information relevant to parties interested in or affected by the Sale.  Significantly, the form and manner of the Sale Hearing Notice will have been approved by this Court pursuant to the Bidding Procedures Order, after notice and a hearing, before it is served on parties in interest.

**C.      The Sale and Purchase Price Will Reflect a Fair Value Transaction.**

33.      It is well settled that where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market.  See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 457 (1999); see also In re Trans World Airlines, Inc., No. 01-00056, 2001 WL 1820326, at *4 (while a "section 363(b) sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction").

**D.      The Sale Will Be Proposed in Good Faith and Without Collusion, and the Successful Bidder (if any) Will Constitute a "Good-Faith Purchaser."**

34.      As described herein and as will be described in the Declaration, Ducera will market the Debtors' business and solicit other offers for the Assets on a postpetition basis, consistent with the Bidding Procedures.  The marketing process will include, for example, contacting previously solicited parties, providing Acceptable Bidders with data room access and requested information, considering a variety of alternative transaction structures, and otherwise assisting the Debtors with all efforts to maximize transaction value.  In this way, the number of bidders that are eligible to participate in a competitive bidding process for the Debtors' Assets (if held) will be maximized.

Consequently, the fairness and reasonableness of the consideration for the Assets to be paid by any Successful Bidder ultimately will be demonstrated by adequate "market exposure" and an open and fair auction and sale process—the best means for establishing whether a fair and reasonable price is being paid. Any Successful Bid, or, if no such Bid is identified, the Plan Transaction, will constitute the highest or best offer for the Assets, and may provide a greater recovery for the Debtors' estates than is likely to be provided by any other available alternative. As a result, the Debtors' determination to sell the Assets through a bidding process, as provided for in the Bidding Procedures, is a valid and sound exercise of the Debtors' business judgment.

35.    The Debtors request that the Court find that any Successful Bidder arising from the Auction (if held) is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Assets.

36.    Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. 11. U.S.C. § 363(m).

37.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be made. See, e.g., In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 148 (3rd Cir. 1986) ("Typically, the misconduct that would destroy a [buyer's] good faith status

at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); In the Matter of Andy Frain Servs., Inc., 798 F.2d 1113 (7th Cir. 1986) (same); In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

38.    The Debtors submit, and, if applicable, the testimony presented at the Sale Hearing will demonstrate, that the terms and conditions of the Sale will have been negotiated by the Debtors and any Successful Bidder at arm's-length and in good faith, with the assistance of the Debtors' advisors, and that the parties did not engage in any conduct that would cause or permit the Sale to be avoided under section 363(n) or 363(m)[6] of the Bankruptcy Code.    Any asset purchase agreement with a Successful Bidder will be the culmination of a competitive bidding process in which all parties will presumably be represented by counsel and all negotiations will be conducted on an arm's-length, good faith basis.    The Bidding Procedures are designed to ensure that no party is able to exert undue influence over the process.    Furthermore, any Bid(s) that the Debtors ultimately determine to be a Successful Bid will have been evaluated in consultation with their advisors.    Accordingly, the Debtors believe that the Successful Bidder, if any, arising from the Auction (if held) should be entitled to the full protections of section 363(m) of the Bankruptcy Code.

---

[6]    The Debtors believe that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code will be appropriate for any Successful Bidder arising from the Auction.  Pursuant to the Bidding Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bidding Procedures.  In addition, the Debtors will not choose as a Successful Bidder or Backup Bidder (as defined in the Bidding Procedures) any entity whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted, and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.

**E.    The Sale of the Assets Should be Approved "Free and Clear" Under Section 363(f).**

39.    Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if:  (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a *bona fide* dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  See 11 U.S.C. § 363(f).

40.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the Assets free and clear of all interests (i.e., all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be assumed liabilities or permitted liens under the applicable purchase agreement.  See In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

41.    The Debtors submit that any interest that will not be an assumed liability or permitted lien satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto.  The Debtors accordingly request authority to convey the Assets to the Successful Bidder, if any, free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the Sale.

III.   **The Assumption and Assignment of the Assigned Contracts Should Be Approved.**

A.   **The Assumption and Assignment of the Assigned Contracts Reflects the Debtors' Reasonable Business Judgment.**

42.   To facilitate and effectuate the sale of the Assets, the Debtors are seeking authority to assume and assign or transfer executory contracts to any Successful Bidder arising from any Auction (if held), to the extent required by such bidders.  In connection with this process, the Debtors believe it is necessary to establish the Assumption Procedures by which: (a) the Debtors and contract counterparties can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code; and (b) such counterparties can object to the assumption and assignment of the Assigned Contracts and/or related cure amounts.

43.   Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  The Debtors' decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. See, e.g., Grp. of Inst'l Invrs. v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co., 318 U.S. 523 (1943) (applying Bankr. Act section 77(b), predecessor to Bankruptcy Code section 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 40 (3d Cir. 1989) (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the Code."); In re Network Access Sols., Corp., 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule."); In re Exide Techs., 340 B.R. 222, 239 (Bankr.

D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard."); In re Extraction Oil & Gas, 622 B.R. 608, 615 (Bankr. D. Del. 2020) ("Courts generally will not second-guess a debtor's business judgment concerning the rejection of an executory contract or unexpired lease. The "business judgment" test merely requires a showing that rejection will benefit the debtor's estate.").

44.     In the present case, the Court should approve the decision to assume and assign the Assigned Contracts to the relevant Successful Bidder in connection with the Sale as a sound exercise of the Debtors' business judgment.  First, the Assigned Contracts will likely be necessary for any Successful Bidder to operate the Assets and, in turn, conduct business going forward.  As such, the Assigned Contracts are essential to inducing the highest or otherwise best offer for the Assets.  Second, it is unlikely that any purchaser would want to acquire the Assets, unless a significant number of the contracts and leases needed to manage the day-to-day operations were included in the transaction.  Finally, the Assigned Contracts will be assumed and assigned through the process approved by the Court pursuant to the Bidding Procedures Order and, thus, will be reviewed by key constituents in these Chapter 11 Cases.

45.     As set forth in the Bidding Procedures Order, the Debtors also request that any party that fails to object to the proposed assumption and assignment of any Contract be deemed to consent to the assumption and assignment of the applicable Contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along with the cure amounts identified in the Assumption and Assignment Notice. See, e.g., In re Tabone, Inc., 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); In re Gabel, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

46.     The Debtors believe that the Assumption Procedures are fair and reasonable, provide sufficient notice to parties to the Contracts, and provide certainty to all parties in interest regarding their obligations and rights in respect thereof.  Accordingly, the Debtors submit that the assumption and assignment of the Assigned Contracts by way of the Assumption Procedures should be approved as an exercise of their business judgment.

### B.     Defaults Under the Assigned Contracts Will Be Cured Through the Sale.

47.     Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder.  This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." In re Fleming Cos., 499 F.3d 300, 306 (3d Cir. 2007) (citation omitted).

48.     The Debtors' assumption and assignment of any Assigned Contracts will be contingent upon payment of Cure Costs and effective only upon the closing of the Sale.  As set forth above, subject to the Court's approval, the Debtors will file with the Court and serve on each counterparty an Assumption and Assignment Notice setting forth the Debtors' good-faith calculation of relevant Cure Costs for each Contract that may be assumed and assigned in connection with the Sale.  Counterparties will have an opportunity to raise any assignment and cure objection in advance of the Sale Hearing.  Because the Assumption Procedures (once approved) provide a clear process by which to resolve disputes over cure amounts or other defaults,

the Debtors are confident that, if defaults exist that must be cured, such cures will be achieved fairly, efficiently, and properly, consistent with the Bankruptcy Code, the Bidding Procedures, and with due respect to the rights of non-debtor parties.

**C.      Non-Debtor Parties Will Be Adequately Assured of Future Performance.**

49.      Similarly, the Debtors submit that the third requirement of section 365(b) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here.  "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case." In re U.L. Radio Corp., 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982).  Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance." In re Prime Motor Inns, Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  See In re Bygaph, Inc., 56 B.R. 596, 605−06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

50.      The Debtors believe that they can and will demonstrate that the requirements for assumption and assignment of the Assigned Contracts will be satisfied if their Assets are sold to a Successful Bidder arising from the Auction (if held), as the Bidding Procedures require all bidders to provide adequate assurance of their ability to perform under any Assigned Contract.  As required by the Bidding Procedures, the Debtors will evaluate the financial wherewithal of Potential Bidders before designating such party a Qualified Bidder (e.g., financial credibility, willingness, and ability of the interested party to perform under the Assigned Contracts) and will demonstrate

such financial wherewithal, willingness, and ability to perform under the Assigned Contracts assigned to the Successful Bidder, if any, arising from the Auction (if held).  Further, the Assumption Procedures provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of any Successful Bidder arising from the Auction (if held) to provide adequate assurance of future performance and object to the assumption of the Assigned Contracts or proposed Cure Costs.  Accordingly, the Debtors submit that the assumption and assignment of the Assigned Contracts as set forth herein should be approved pursuant to section 365 of the Bankruptcy Code.

**D.      Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.**

51.      Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  The Debtors request that the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

52.      The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 Collier on Bankruptcy ¶ 6004.10 (15th rev. ed. 2006).  Furthermore, if an objection is filed and overruled, and the objecting party informs the

36

court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

53.    To maximize the value received for the Assets, the Debtors seek to close the Sale as soon as possible after the Sale Hearing.  Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## **NOTICE**

54.    Notice of this Motion has been or will be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney's Office for the District of Delaware; (iii) those creditors holding the fifty (50) largest unsecured claims against the Debtors' estates; (iv) counsel to the ABL Lenders; (v) counsel to the Ad Hoc Group of First Lien Secured Lenders; (vi) counsel to the Second Lien Term Loan Lenders; (vii) counsel to the HoldCo Lenders; and (viii) counsel to DIP Agent; and (ix) counsel to the DIP Lenders.  The Debtors will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter the Bidding Procedures Order, attached hereto as <u>Exhibit A</u> and such other and further relief as may be just and proper.

Dated: November 11, 2024
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Allison S. Mielke*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Matthew A. Feldman (admitted *pro hac vice*)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*