**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | **Hearing Date: TBD**<br>**Objection Deadline: TBD** |
| | Re: Docket Nos. 192 |

**THE AD HOC GROUP OF FREEDOM LENDER'S <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) ADJOURNING THE SECOND DAY HEARING SET FOR DECEMBER 10, 2024, (II) EXTENDING THE OBJECTION DEADLINES IN CONNECTION WITH THE SECOND DAY HEARING <u>AND (III) GRANTING RELATED RELIEF</u>**

The Ad Hoc Group of Freedom Lenders (the "**Freedom Lender Group**" or the "**Group**"), consisting of certain of the (i) Lenders, as defined in that certain Credit Agreement, dated as of August 21, 2023 (as amended, restated, supplemented or otherwise modified from

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

AMERICAS 128493450

time to time), among Freedom VCM Interco, Inc., Freedom VCM, Inc. (together, the "**HoldCo Debtors**"), and Alter Domus (US) LLC (the "**HoldCo Lenders**") and (ii) Second Lien Lenders, as defined in that certain Second Lien Credit Agreement, dated as of March 10, 2021 (as amended, restated, supplemented or otherwise modified from time to time), among Franchise Group Inc., Franchise Group NewCo PSP, LLC, Valor Acquisition, LLC, Franchise Group NewCo Intermediate AF, LLC (collectively, the "**OpCo Debtors**") and Alter Domus (US) LLC (such lenders, the "**Second Lien OpCo Lenders**"), by and through its undersigned counsel, hereby files this emergency motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), (i) adjourning the matters scheduled for hearing on December 10, 2024 (the "**Second Day Hearing**") until a date that is after the Court's decision on the *Motion of the Ad Hoc Group of Freedom Lenders for Entry of an Order (i) Terminating Exclusivity in the Holdco Debtors' Cases, (ii) Lifting the Automatic Stay in the Holdco Debtors' Cases, or (iii) Appointing a Chapter 11 Trustee for the Holdco Debtors* [D.I. 192] (the "**HoldCo Freedom Motion**"), (ii) extending the objection deadlines in connection with the matters scheduled to be hard at the Second Day Hearing, and (iii) granting related relief. In support of this Motion, the Freedom Lender Group respectfully states as follows:

## PRELIMINARY STATEMENT

1.     This Motion seeks an adjournment of the Second Day hearing, including the final hearing on the Debtors' *Motion to Approve Debtor in Possession Financing* [D.I. 51] (the "**DIP Motion**") and the hearing on the *Debtors' Motion for Entry of Orders (i) (a) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (b) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (c) Approving Assumption and Assignment Procedures, and (d) Granting Related Relief; and (ii) (a) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims,*

*Interests, and Encumbrances, (b) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (c) Granting Related Relief* [D.I. 154] (the "**Bid Procedures Motion**"), currently set for December 10, 2024. Adjournment is appropriate for at least three reasons.[2]

2.  **First**, the Debtors have demonstrated that they will not be able to produce the full record of discovery to the Freedom Lender Group sufficiently before the December 10th hearing date to allow for proper preparation. That fact has nothing to do with any delay by the Freedom Lender Group. To the contrary, the Freedom Lender Group served deposition notices in connection with the DIP Motion on November 4, 2024—over two weeks ago—and document requests and interrogatories in connection with the DIP Motion on November 8, 2024—over 10 days ago. As of the filing of this Motion, the Freedom Lender Group has received only 246 documents, 55 of which are the Debtors' bankruptcy petitions, 54 of which are slipsheets reading "withheld for privilege," 20 of which are duplicates and four of which cannot be opened due to technical issues. The Debtors have not produced a single email to the Freedom Lender Group. Additionally, only this morning did the Debtors finally send the Freedom Lender Group their email search terms, which the Freedom Lender Group requested six days ago. While the Freedom Lender Group continues to review these terms, it is clear that they are severely deficient. Among other things, the Debtors' search terms do not include such obvious terms as "RSA," the apparent project name ("Project Fusion") or domain names for the DIP lender or its financial advisor, meaning that substantial correspondence with those

---

[2] The reasons for adjournment set forth in this Motion pertain solely to the concerns of the Freedom Lender Group. There are, however, several other parties that will be affected by the Debtors' decision to rush forward with a final DIP hearing on December 10th. Among other things, an official committee of unsecured creditors was appointed yesterday. That committee, as a fiduciary for all unsecured creditors, will require time to consider the proposed DIP financing and may seek its own discovery in connection with final DIP approval. Additionally, the Debtors will not have filed schedules until after the December 10th hearing date, meaning that there will be no disclosure of the Debtors' assets and liabilities until after the DIP is approved on a final basis. Finally, the Debtors' 341 meeting has been scheduled to occur three days after the December 10th hearing, meaning that creditors will not have access to basic information about the Debtors until after this Court will have ruled on a final DIP.

parties has likely not been captured. The Freedom Lender Group is also troubled that the Debtors ran these search terms before sharing them with the Freedom Lender Group, in contradiction to Local Rule 7023-3 and despite the Freedom Lender Group's repeated requests. As a result, the email searches that the Debtors are running will need to be restarted. Additionally, the Debtors propose to make their CEO—who the Debtors have designated for half of the 30(b)(6) topics—available on the Monday or Tuesday before Thanksgiving before they are likely to have completed document production. The Debtors have offered two other witnesses to testify in the days leading up to the hearing, meaning that any objection the Freedom Lender Group may file will need to be supplemented.

3. The Debtors have not identified, and cannot identify, any prejudice to them from adjourning the request for final relief at the Second Day Hearing. The Debtors have substantial liquidity, and the Freedom Lender Group has expressed its willingness to agree to a second, interim DIP affording the Debtors access to the same amount of money on similar terms. It appears that the First Lien Group and existing DIP lender is insisting on moving forward with final relief on December 10th.

4. *Second*, the Freedom Lender Group should be afforded the right to receive full discovery before its objection deadline so that it can present a single, comprehensive pleading to the Court. Originally, the Debtors set the Freedom Lender Group's objection deadline for November 19, 2024—three full weeks before the hearing. For days, the Debtors refused to move that objection deadline at all, until finally, on the day before the Freedom Lender Group's objection deadline, the Debtors offered to move that deadline to November 29, 2024. This date, in addition to being the Friday after Thanksgiving (a court holiday), is still 11 days before the Second Day Hearing. There is no need for the Debtors to make the Freedom Lender Group work over a holiday just to keep an arbitrary hearing date.

5.      Additionally, the extension of the Freedom Lender Group's objection deadline was made without prejudice to the Freedom Lender Group's right to seek a further extension or adjournment of the hearing based on subsequent developments.  Those developments came just a few hours after the extension was granted, when the Debtors served responses and objections to the Freedom Lender Group's discovery requests.  In their responses, the Debtors state that they will not produce, among other things, basic financial information like data regarding claims (including intercompany claims) and engagement letters with the Debtors' professionals.  That information is essential for the Freedom Lender Group to understand how its rights are being compromised by the proposed DIP financing and who at the Debtors, if anyone, is representing their interests.  It is not clear when the Freedom Lender Group will receive that information, or whether they will require the Court's assistance in seeking it.  It is also not clear why the Debtors are fighting the Freedom Lender Group over basic, push-button discovery, given that the Group comprises approximately 90% of the HoldCo Debtors' creditors by amount and number.

6.      The Debtors have suggested that the Freedom Lender Group would be permitted to file a supplemental objection after discovery concludes.  Putting aside that supplemental briefing does not work if the Debtors fail (or refuse) to produce discovery, making the Freedom Lender Group file two objections is nonsensical and presents an unnecessary burden on the Court.  It makes no sense for the Group or the Court or its staff to expend time and resources on reviewing an objection that might be resolved or narrowed through discovery.  And it is wasteful and prejudicial to make the Group blindly file an objection at the start of discovery and then re-write that objection following the close of discovery.  Moreover, if the Debtors continue in delaying document discovery, it's unclear that the Freedom Lender Group can take depositions and present a revised objection prior to the December 10th hearing.

7. ***Third***, the DIP motion should not be heard on a final basis as to the HoldCo Debtors until the Court has a chance to rule on the HoldCo Freedom Motion. With regard to the Freedom Lender Group's request to terminate exclusivity at the HoldCo Debtors, that issue should be determined before the Court is asked to approve a DIP that makes filing a separate plan for the HoldCo Debtors an event of default. With regard to the Freedom Lender Group's request to lift the stay for the HoldCo Debtors, that issue should be decided before the Court is asked to rule on a DIP that makes foreclosing on the HoldCo Debtors' interests an event of default. And with regard to the Freedom Lender Group's request to appoint a trustee for the HoldCo Debtors, if the Court determines that a trustee is appropriate, then the trustee should be the one deciding whether the HoldCo Debtors need a DIP and on what terms. Nor should bid procedures be considered in connection with the HoldCo Debtors' assets before the Court determines whether those assets will be subject to a separate plan, foreclosure following lifting the stay, or a trustee's stewardship.

8. To be clear, if the Debtors want to move forward on an interim basis with an appropriate interim DIP draw while these issues are decided, the Freedom Lender Group has no objection. However, given that the Debtors have so far refused that option, the Freedom Lender Group respectfully requests that the Court grant this Motion and adjourn the Second Day Hearing and related objection deadlines until after the close of discovery and a decision on the HoldCo Freedom Motion.[3] Additionally, the Freedom Lender Group makes this request on an emergency basis in the hope that it can be decided before the Thanksgiving holiday.

---

[3] The Freedom Lender Group reserves the right also to seek an adjournment of the hearing in connection with the Debtors' Disclosure Statement, currently set for December 17, 2024. On November 16, 2024, the Freedom Lender Group served the Debtors with discovery in connection with the Debtors' Disclosure Statement and Plan. To date, the Debtors have not engaged on those requests. In fact, the Debtors have stated on meet and confers that they are not yet conducting plan discovery and are focused on producing only information that they consider relevant to the Second Day Hearing. Given that the Debtors have stated that they intend to seek an extension of their time to file schedules, it is not clear how the Debtors can solicit a plan without having provided their creditors with basic information regarding their assets and liabilities, including scheduled claims.

**JURISDICTION AND VENUE**

9. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue in this District is Proper under 28 U.S.C. §§ 1408 and 1409.

10. The statutory bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 2002 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

11. Pursuant to Local Rule 9013-1(f), the Freedom Lender Group consents to the entry of a final judgment or order with respect the Motion if it is determined that the Court would lack Article III jurisdiction to enter such final judgment or order absent consent of the parties.

**BACKGROUND**

12. On November 3, 2024 (the "**Petition Date**") the above-captioned debtors (the "**Debtors**") filed voluntary petitions under chapter 11 of the Bankruptcy Code.

13. The Freedom Lender Group comprises certain Second Lien OpCo Lenders and about 90% of the HoldCo Debtors' creditors by both amount and number.

14. On November 4, 2024, hours after the Debtors filed their bankruptcy petitions, the Freedom Lender Group served 30(b)(6) deposition notices on the Debtors and requested a deposition before the first day hearing. The Debtors refused to produce any witnesses before the first day hearing on the grounds that the Group had "fail[ed] to provide the minimum seven days of reasonable notice, as required by the Federal Rules of Civil Procedure and the local rules for the United States Bankruptcy Court for the District of Delaware."

15. On November 8, 2024, two days after the first day hearing, the Group served on the Debtors 34 document requests (many of which covered related subject matters), 12 interrogatories and two 30(b)(1) deposition notices in connection with the Debtors' second day motions. This discovery sought basic information regarding the Debtors, such as information regarding the HoldCo Debtors' fiduciaries and the HoldCo Debtors' most recent unconsolidated balance sheets. In the service email, the Freedom Lender Group offered to "work with [the Debtors] to find a way to produce documents and information as efficiently as possible" and to get on a call to "go through the requests and discuss a plan for production." The Freedom Lender Group also informed the Debtors that they were willing to prioritize the HoldCo Debtors' financial information, much of which could be produced with the "push of a button."

16. On November 11, 2024, the Group again asked the Debtors for a meet and confer. The Debtors declined, insisting that a discussion would be "most productive" after the Debtors had provided "responses (and where appropriate, objections) to the RFPs and Interrogatories."[4] Hours later, the Debtors served the Freedom Lender Group with 14 requests for production, eight interrogatories, and a 30(b)(6) deposition notice with seven examination topics.

17. On November 12, 2024, the Debtors identified three witnesses for the second day hearing—David Orlofsky, Christopher Grubb, and Andrew Laurence—and proposed dates for their depositions. The Debtors' proposed dates all fell during the first and second weeks of December—that is, one week before the second day hearing and more than two weeks after the Freedom Lender Group's objection deadline. Moreover, the Debtors stated that Andrew Laurence, the Debtors' CEO, was available only on November 25 or 26—that is, before the

---

[4] The Debtors served responses and objections to the Freedom Lender Group's document requests and interrogatories on November 18, 2024.

Freedom Lender Group will have all the documents necessary to depose him—or on December 9, 2024—the day before the Second Day Hearing.

18. The Group reiterated its request for a meet and confer, and the Debtors agreed. The Group requested the following morning (November 13), but the Debtors stated they were not available. Accordingly, on November 14, 2024, the Freedom Lender Group and the Debtors met and conferred. Among other things, the Group requested an extension of its objection deadline, noting that it was inappropriate for its objection deadline to fall a full three weeks before the second day hearing and well before the completion of discovery. The Debtors stated that they would revert on this point before the end of the day. They did not do so.

19. Additionally, on the meet and confer, the Freedom Lender Group identified certain priority documents that it believed could be produced immediately. This list was also provided to the Debtors by email, in the form copied below:

- Unconsolidated balance sheets and other financial statements for each of the Debtors (understand you may not have these as of the petition date, so please send the most recent that you have)
- Intercompany claims matrix
- Tax returns
- D&O policies
- Engagement letters
- Bank account statements
- Backup for DIP budget
- Take-private marketing materials (likely held in a data room)
- Board members by entity
- Board minutes and presentations
- Ducera DIP database

The Debtors still have not produced virtually any of this information. Certain of these materials, such as information about claims (including intercompany claims) belonging to the HoldCo Debtors and engagement letters, the Debtors have stated they will not produce, even though they are, presumably, readily available.

20. The next morning (Friday, November 15), counsel for the Freedom Lender Group emailed Debtors' counsel to follow up on the request for an extension. After receiving no response, and with the weekend approaching, counsel sent another email that afternoon.

21. That evening, Debtors' counsel responded. The Debtors refused to grant any extension of the Group's objection deadline, and instead suggested that the Group file a supplemental objection after the close of discovery. The Group's counsel reiterated that that proposal was unacceptable and asked the Debtors to reconsider.

22. The following day (Saturday, November 16), the Debtors confirmed that they would not offer any extension of the Group's objection deadline.

23. Finally, on the morning of November 18, 2024, the Debtors changed their position, stating that they would consent to moving the objection deadline to November 29, 2024—the Friday after Thanksgiving. However, to date, the Freedom Lender Group still has not received basic financial information regarding the HoldCo Debtors, including unconsolidated financial statements for the HoldCo Debtors, a breakdown of the HoldCo Debtors' booked assets and liabilities, and projections regarding the HoldCo Debtors' financial needs. The Freedom Lender Group does not know when it will receive this information. Moreover, the Debtors have served responses and objections on the Freedom Lender Group, which state that they will not provide some of the basic information the Group seeks, such as information regarding the HoldCo Debtors' claims or pending litigations, even though that information could presumably be produced with zero time and expense.

24. On November 19, 2024, the Freedom Lender Group held a meet and confer with the Debtors regarding the Debtors' responses and objections. At the meet and confer, the Debtors stated that they had created and implemented search terms without first sharing them with the Freedom Lender Group, in contradiction to Local Rule 7023-3 and despite the Freedom Lender Group's request for those search terms the week before. Additionally, the

Debtors confirmed that they refused to search certain documents that the Freedom Lender Group had requested, including information regarding certain assets of the HoldCo Debtors. Debtors only sent search terms to the Freedom Lender Group this morning despite the Freedom Lender Group requesting them repeatedly starting six days ago. The search terms do not include such obvious terms as "RSA," the apparent project name ("Project Fusion"), or domain names for the DIP lender or its financial advisor.

25. Also on November 19, 2024, the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases.

26. On November 20, 2024, the Debtors filed the HoldCo Freedom Motion, seeking either (i) the termination of the HoldCo Debtors' exclusivity period to permit the Freedom Lender Group to propose and solicit its own plan for the HoldCo Debtors, (ii) lifting the automatic stay to permit the HoldCo Lenders to exercise their non-bankruptcy remedies or (iii) appointment of a chapter 11 trustee as an independent fiduciary to the HoldCo Debtors.

27. On November 19, 2024, the Freedom Lender Group asked the Debtors whether they would consent to an adjournment of the Second Day Hearing for the reasons raised in this Motion. The Debtors refused. Accordingly, the Freedom Lender Group submits this Motion, which they respectfully request to be heard before the Thanksgiving holiday.

## RELIEF REQUESTED

28. The Freedom Lender Group respectfully requests that the Court enter an order substantially in the form of the Proposed Order (i) adjourning the Second Day Hearing until after a decision on the Freedom Lender Group Motion, (ii) extending the objection deadlines in connection with the Second Day Hearing, and (iii) granting related relief.

## BASIS FOR RELIEF

29. Bankruptcy Code section 105(a) authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

§ 105(a). Bankruptcy Rule 9006(b) authorizes courts to enlarge the time periods within which certain actions must be taken, and states, in pertinent part, that:

> When an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of the court, the court for cause shown may at any time in its discretion… with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order.

Fed. R. Bankr. P. 9006(b).

30. Cause exists for the Court to adjourn the Second Day Hearing for at least three reasons.

31. ***First***, despite the fact that the Freedom Lender Group served all DIP discovery in the first week of the case, the Debtors have produced hardly any discovery in response. As of the filing of this Motion, the Freedom Lender Group has received only 246 documents, 55 of which are the Debtors' bankruptcy petitions, 54 of which are slipsheets reading "withheld for privilege," 20 of which are duplicates and four of which cannot be opened due to technical issues. The Debtors have not produced a single email to the Freedom Lender Group. Additionally, only this morning did the Debtors finally send the Freedom Lender Group their email search terms, which the Freedom Lender Group requested six days ago. While the Freedom Lender Group continues to review these terms, it is clear that they are severely deficient. Among other things, the Debtors' search terms do not include such obvious terms as "RSA," the apparent project name ("Project Fusion") or domain names for the DIP lender or its financial advisor, meaning that substantial correspondence with those parties has likely not been captured. The Freedom Lender Group is also troubled that the Debtors ran these search terms before sharing them with the Freedom Lender Group, in contradiction to Local Rule 7023-3 and despite the Freedom Lender Group's repeated requests. As a result, the email searches that the Debtors are running will need to be restarted. Nor have the Debtors produced witnesses for depositions that were requested 16 days ago. Rather, the Debtors propose to

make their CEO—who the Debtors have designated for half of the 30(b)(6) topics—available on the Monday or Tuesday before Thanksgiving before they've committed to complete any document production. And the Debtors' two other witnesses are being offered in the days leading up to the hearing. The Freedom Lender Group cannot effectively present its position at the Second Day Hearing if the Debtors have failed to meet their discovery obligations.

32. The Debtors have not identified any prejudice to them from adjourning the Second Day Hearing—because there is none. The Debtors have substantial liquidity, and the Freedom Lender Group has expressed its willingness to agree to a second, interim DIP affording the Debtors access to the same amount of money on similar terms.

33. **Second**, the Freedom Lender Group should receive full discovery before its objection deadline so that it can present a single, comprehensive pleading to the Court. Originally, the Debtors set the Freedom Lender Group's objection deadline for November 19, 2024—three full weeks before the hearing. After substantial back-and-forth, the Debtors offered to move that deadline to November 29, 2024. This date, in addition to being the Friday after Thanksgiving (a court holiday), is still 11 days before the Second Day Hearing.[5] There is no need to force the Freedom Lender Group to work over the Thanksgiving holiday to file a preliminary brief, rather than allowing the Group to file a final brief once all discovery is received.

34. Additionally, the Debtors have told the Freedom Lender Group that they will not produce, among other things, basic financial information like data regarding the HoldCo Debtors' claims or litigations, and engagement letters with the Debtors' professionals. That information is essential for the Freedom Lender Group to understand how its rights are being compromised by the proposed DIP financing and who at the Debtors, if anyone, is representing

---

[5] The Debtors agreed that this extension was without prejudice to the HoldCo Debtors' right to seek a further extension or adjournment of the Second Day Hearing.

their interests. This is basic, push-button discovery that the Debtors should willingly give to the Freedom Lender Group, given that it comprises approximately 90% of the HoldCo Debtors' creditors by amount and number. Instead, it appears the Freedom Lender Group will have to fight for this discovery, which will cause further delay necessitating adjournment.

35. The Debtors do not deny that the Freedom Lender Group will not have full discovery by their objection deadline. Rather, the Debtors take the position that the Freedom Lender Group would be permitted to file a supplemental objection after discovery concludes. Requiring the Freedom Lender Group to file two objections is nonsensical and presents an unnecessary burden on the Court. It makes no sense for the Group or the Court or its staff to expend time and resources on reviewing an objection that might be resolved or narrowed through discovery. And it is wasteful and prejudicial to make the Group blindly file an objection at the start of discovery and then re-write that objection following the close of discovery. Additionally, despite the Freedom Lender Group's request for search terms, the Debtors have conducted discovery searches without providing the Freedom Lender Group the search terms first, meaning that the document review that the Debtors have conducted may need to be re-run, causing further delay. Moreover, if the Debtors continue in delaying document discovery, it's unclear that the Freedom Lender Group can take depositions and present a revised objection prior to the December 10th hearing.

36. *Third*, the DIP motion should not be heard on a final basis as to the HoldCo Debtors until the Court has a chance to rule on the HoldCo Freedom Motion. With regard to the Freedom Lender Group's request to terminate exclusivity at the HoldCo Debtors, that issue should be determined before the Court is asked to approve a DIP that makes filing a separate plan for the HoldCo Debtors an event of default. With regard to the Freedom Lender Group's request to lift the stay for the HoldCo Debtors, that issue should be decided before the Court is asked to rule on a DIP that makes foreclosing on the HoldCo Debtors' interests an event of

default.  And with regard to the Freedom Lender Group's request to appoint a trustee for the HoldCo Debtors, if the Court determines that a trustee is appropriate, then the trustee should be the one deciding whether the HoldCo Debtors need a DIP and on what terms.[6]

37. For these reasons, the Freedom Lender Group respectfully requests that the Court adjourn the Second Day Hearing and extend the objection deadlines.

## NOTICE

38. The Freedom Lender Group will provide notice of this Motion to the following parties: (i) the Debtors; (ii) the U.S. Trustee; (iii) the DIP Lenders; (iv) the IRS; and (v) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

39. The Freedom Lender Group has not previously requested the relief sought herein in this Court or any other Court.

## CONCLUSION

**WHEREFORE**, the Freedom Lender Group respectfully requests that the Court (i) adjourn the Second Day Hearing until after a decision on the HoldCo Freedom Motion, (ii) extend the objection deadlines in connection with the Second Day Hearing, and (iii) grant such other relief as the Court deems just and proper.

[*Remainder of this page intentionally left blank*]

---

[6] Nor should bid procedures be considered in connection with the HoldCo Debtors' assets before the Court determines whether those assets will be subject to a separate plan, foreclosure following lifting the stay, or a trustee's stewardship.

Dated: November 20, 2024
       Wilmington, Delaware

Respectfully submitted,

**FARNAN LLP**

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Email: bfarnan@farnanlaw.com
         mfarnan@farnanlaw.com

-and-

**WHITE & CASE LLP**

Thomas Lauria (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: tlauria@whitecase.com

-and-

J. Christopher Shore (admitted *pro hac vice*)
Andrew Zatz (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
Erin Smith (admitted *pro hac vice*)
Brett Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: cshore@whitecase.com
       azatz@whitecase.com
       sam.hershey@whitecase.com
       erin.smith@whitecase.com
       brett.bakemeyer@whitecase.com

*Counsel for the Ad Hoc Group of Freedom Lenders*