IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et. al.,*[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: December 10, 2024 at 10:00 a.m. (ET)<br>Obj. Deadline: November 20, 2024 at 4:00 p.m. (ET) |
| | RE: DI 14 & 177 |

**LIMITED OBJECTION BY DANIEL P. HAGAMAN TO DEBTORS' MOTION
FOR ENTRY OF FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO ASSUME THE CONSULTING AGREEMENT, (II) APPROVING PROCEDURES
FOR STORE CLOSING SALES, AND (III) GRANTING RELATED RELIEF**

Daniel P. Hagaman ("Landlord"), by and through his undersigned counsel, respectfully submits this Limited Objection to *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* (the "Motion"), the related Proposed Final

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

{00040191. }

Order [D.I. 177]("Final Order"), and the Letter Agreement Governing Inventory Disposition attached to the Final Order [DI 177-1](the "Merchant Agreement"),[2] and respectfully states as follows:

## RELEVANT BACKGROUND

1. Landlord and debtor American Freight of Tennessee, Inc. entered into a Lease Agreement dated August 8, 2007 (as amended, the "Lease") for a building located at 6242 Perimeter Drive, Suite 102, Chattanooga, Tennessee 37421 (the "Building"). A true and correct copy of the Lease is attached hereto as **Exhibit A**. In connection with conducting GOB Sales, the Building is identified on Exhibit A (Store List) as #26 under Loc. #28.

2. The current monthly rent for the Building is not less than $16,692 per month.

3. On November 4, 2024, Debtors filed its Motion to retain the Consultant to conduct a going out of business sale (the "GOB Sale") at the Building, among other Store Locations.

## LIMTED OBJECTION

4. Landlord has no objection to the proposed Merchant Agreement or Proposed Final Order except to the extent set forth below:

   **a. Payment of Rent Under the Merchant Agreement Must Remain Subject to Section 365(d)(3).**

5. The Merchant seeks to retain Consultant pursuant to the Merchant Agreement for the purpose of selling Merchandise at the Debtors' store locations including at the Building. The Merchant Agreement describes the Merchant's Undertakings as follows:

---

[2] Unless defined herein, capitalized terms shall have the meanings ascribed to them in the Merchant Agreement.

> "**During the Sale Term**, Merchant shall … (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores …" *See* Merchant Agreement, at Merchant's Undertakings (**emphasis** added).

Presumably, that means Merchant will continue to pay rent and rent-related charges to Landlord. The problem is the qualifier, "[d]uring the Sale Term …" The Sale Term is fluid.[3] The Merchant Agreement should not be read to cut off Merchant's legal obligation to continue to timely pay rent until the effective date of rejection of the Lease if the Lease is rejected.

6.  The Debtors' obligation to pay rent in this case from and after December 1, 2024 is governed by §365(d)(3) which affirmatively requires the Debtor to timely comply with all obligations under the Lease, including the payment of rent when it becomes due. The Third Circuit has construed §365(d)(3) to mean that even if the debtor as tenant remains in a leased premise one or more days after rent becomes due, rent for the entire month is owed. The Merchant Agreement, as a contract, however, does not necessarily comport with §365(d)(3)'s directive. For example, the Sale Term may end mid-month. That cannot override the mandate of §365(d)(3). The Court should not approve the Merchant Agreement unless and until it is clear the Merchant's obligation to pay rent when due is not subject to the Merchant Agreement.

**b. The Consultant Should be Contractually Obligated to Leave the Building in Broom Clean Condition.**

7.  The Merchant Agreement at Sale Term also states that Consultant "shall surrender the premises for each Store to Merchant in broom clean condition and in accordance with the lease requirements for such premises …." But that purported mandate is conditioned on Merchant having sufficient funds in its agreed budget between Merchant and Consultant. The Merchant Agreement's directive to leave the Stores in broom clean condition may turn out to be

---

[3] The Sale Term might be through December 29, 2024 or terminated earlier. But it also could be extended past December 29, 2024. *See* Merchant Agreement at "B Sale Term".

a hollow promise if there are insufficient funds. That result is unfair.  Bankruptcy estate funds should be applied ratably among similarly situated creditors; here, the landlords.  If the budget is a limit, then Stores where GOB Sales conclude earlier have a greater likelihood of being left broom clean.  The Stores where the GOB Sales continue longer have a higher chance being left a mess for landlords to clean up.  The Court should not approve the Merchant Agreement unless the covenant to leave the Stores in broom clean condition is moved to "Consultant's Undertakings" enforceable by landlords and not subject to a budget.

      **c. Consultant should be required to Observe the Use and Occupancy and Indemnification Provisions in the Lease.**

8. As noted above, the proposed Merchant Agreement limits Consultant's obligation to surrender the Lease in broom clean condition by available funds.  Further, the "Conduct of the Store Closing Sales" set forth in the Proposed Order contravenes Landlord's bargained-for protections encompassed in the Lease such as limitations on signage and damage to the Building. Lease provisions restricting the manner in which the premises may be used are critical to a landlord's interest in preserving the integrity of its property.  *See In re Joshua Slocum, Ltd*., 922 F.2d 1081, 1091 (3d Cir. 1990) (modification of the rights of contracting parties is not to be taken lightly and the Bankruptcy Court must be sensitive to the rights of the non-debtor contracting party).

9. Landlord recognizes that authority exists supporting the proposition that the Bankruptcy Court has jurisdiction to refrain from strict enforcement of lease clauses prohibiting or impairing GOB sales to the extent that such clauses contravene the overall policy of the Bankruptcy Code of requiring debtors to maximize value available for distribution to creditors. *See, e.g., In re Ames Dept. Stores, Inc*., 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992). However, the

same authorities that permit GOB sales also provide that, consistent with the Bankruptcy Code, reasonable time, place and manner restrictions may be imposed on such sales.

> [Not enforcing anti-GOB Sale clause in a lease] is not to say the Code abrogates all lease provisions and statutes conditioning GOB sales.  11 U.S.C. § 363(e) reserves for bankruptcy courts the discretion to condition the time, place and manner of all GOB sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations.

*Id*. at 359.

10. While the Landlord is cognizant of the fact that Debtors desire to close their stores and use certain premises to liquidate their inventory for the benefit of all creditors, the Court should also give consideration to the rights of Landlord.  In the event that the Court is inclined to grant the Motion, the order should provide that: (a) the signage be in compliance with the Lease and all applicable state and local laws, rules, regulations and mandates; (b) that Merchant and Consultant indemnify and hold Landlord harmless from any and all claims, damages, violations, fines and orders related to Debtors' and/or Consultant's use of the Building and/or in connection with the GOB Sale; (c) Debtor is required to pay Landlord all post-petition rent and additional rent under the terms of the Lease as such obligations become due; (d) Debtor timely comply with and perform any and all non-monetary obligations under the Lease as they come due; and (e) Debtor and/or Consultant remove all of Debtors' property, merchandise and fixtures, furniture and equipment from the Building at the conclusion of the GOB Sale.

## JOINDER IN OBJECTIONS OF OTHER LANDLORDS

11. To the extent not inconsistent with this Objection, Landlord joins in the objections of other landlords.

## CONCLUSION

**WHEREFORE**, Landlord respectfully requests that the Court enter an order (i) requiring Debtors to conduct its GOB Sale in compliance with the terms of the Lease, (ii) Debtor and Consultant indemnify and hold Landlord harmless from any and all claims, damages and/or liabilities related to the GOB Sale, including violations issued by any state or municipal authority; and (iii) granting Landlord such other and further relief as this Court deems just and proper.

Dated: November 20, 2024
       Wilmington, DE

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

/s/ *Frederick B. Rosner*
Frederick B. Rosner (DE 3995)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
(302) 777-1111

*Attorney for the Landlord*