# EXHIBIT A

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") made and entered into this _8th_ day of ~~July~~ *August* 2007, by and between Daniel P. Hagaman of 5700 Laurel Ridge Rd., Chattanooga, TN 37416 (hereinafter referred to as the "Lessor") and American Freight of Tennessee, Inc., an Ohio corporation, 2748 Lexington Avenue, Lexington, OH 44904 (hereinafter referred to as the "Lessee");

## WITNESSETH:

FOR AND IN CONSIDERATION of the covenants and agreements herein contained, Lessor does hereby lease to Lessee, and Lessee does hereby lease from Lessor a portion of the building located at 6242 Perimeter Drive, Chattanooga, Tennessee 37421 (the "Building") said portion consisting of approximately 41,000 square feet[1] of space (the "Demised Premises" or "Premises"), known as Suite 102 and being shown outlined in red on **Exhibit A** attached hereto and incorporated herein by reference, together with any improvements located on the Premises and Common Areas (as defined below) located on the Property, subject to easements and restrictions of record and subject to the restrictions and regulations of any and all federal, state, county, or municipal authorities having jurisdiction and any amendments or additions thereto. The Building is part of the real property owned by Lessor which is described in **Exhibit B** attached hereto and incorporated herein by reference (the "Property").

The term "Common Areas" as used in this Lease shall be construed to include those facilities located on the Property for the nonexclusive use of Lessee in common with the other authorized users, and shall include, but not be limited to, sidewalks, parking areas, driveways, and any utility lines, pipes, conduits and other similar facilities used in common by all tenants in the Property, planted areas, restrooms, hallways, open means of ingress and egress, and the structure advertising the common name given the Property.

TO HAVE AND TO HOLD the Premises unto Lessee, its successors and assigns, under the terms and subject to the conditions set forth herein.

## ARTICLE 1.
## TERM OF LEASE AND OPTION TO RENEW

1.1    **Term.**    The term of this Lease shall commence on October 1, 2007 (the "Commencement Date") and shall continue for three (3) full Lease Years (as defined below) until September 30, 2010 (the "Primary Term"), unless terminated or extended as provided herein, but Lessee is permitted to occupy the Premises starting August 1, 2007, or sooner, **provided** Lessor's current Tenant has vacated the Demised Premises prior to Lessee's occupancy thereof. Lessor shall use its best efforts to secure the vacancy of the Premises on or before August 1, 2007.

---

[1] Square footage area is approximate and is subject to verification by the parties.

1.2    **Option to Renew.** If Lessee shall, during the whole term of this Lease, faithfully perform all of the covenants and agreements herein contained on its part to be kept and performed, then Lessee shall have the right to renew the lease for two (2) additional three-year terms (the "Renewal Terms"), on the same terms and conditions, excepting rental, provided Lessee gives Lessor notice in writing exercising the Option to Renew the Lease, by registered or certified mail, not less than one hundred eighty (180) days prior to the date of expiration of the Primary Term or the Renewal Term, as applicable. The Primary Term and Renewal Terms, if applicable, are collectively hereinafter referred to as either the "Term of this Lease", "Lease Term" or "Term".

"Lease Year" means the one-year period beginning on the Commencement Date and each anniversary of the Commencement Date; however, if the Commencement Date is a date other than the first day of the month, then each Lease Year will begin on the first day of the month following the Commencement Date. Rent (as hereinafter defined) and any other sums provided in this Lease for which the Lease Year is a factor shall be adjusted and paid on pro rata basis for any partial month prior to the first Lease Year.

## ARTICLE 2.
## PAYMENT OF RENT AND DEPOSITS

2.1    **Security Deposit.** Within five (5) business days following the execution of this Lease Agreement, Lessee shall pay to Lessor a Security Deposit (the "Security Deposit") in the amount of $29,041.66 which shall be held by Lessor throughout the Term of this Lease. One-half ($14,520.83) of the Security Deposit shall be held by Lessor and will be applied toward rent due from Lessee for the final month of the Lease Term (whether the Primary Term or a Renewal Term) upon the expiration or termination of this Lease. The other one-half ($14,520.83) of the Security Deposit will be held by Lessor as security for any damage, waste, clean-up expenses or other expenses resulting from Lessee's actions and reasonably incurred by Lessor, or due from Lessee, upon expiration or termination of the Lease Term. The Security Deposit shall not be used for expenses due to the normal wear and tear of the Demised Premises. The balance of the Security Deposit will be refunded to Lessee within thirty (30) days following such termination. Any interest earned or accrued by the Security Deposit shall inure to the benefit of the Lessor.

2.2    **Rent During Primary Term.** Beginning October 1, 2007, and during the Primary Term of this Lease, Lessee covenants and agrees to pay to Lessor a fixed gross rent ("Gross Rent"), in equal monthly installments on the first day of each and every month in advance, payable to Lessor at the address set forth in Section 18.1 below, or at such other place as Lessor may designate by written notice to Lessee.

| Lease Year | Annual Rent | Payable in Equal Monthly Installments |
|---|---|---|
| 1 | $174,250.00 | $14,520.83 |
| 2 | $174,250.00 | $14,520.83 |
| 3 | $174,250.00 | $14,520.83 |

2.3     **Rent During Renewal Terms.**  In the event Lessee exercises its option to renew as set forth in Section 1.2 above, Lessee covenants and agrees to pay to Lessor as Gross Rent during the Renewal Terms hereof the following amounts:

| Lease Year | Annual Rent | Payable in Equal Monthly Installments |
|---|---|---|
| 4 | $174,250.00 | $14,520.83 |
| 5 | $174,250.00 | $14,520.83 |
| 6 | $174,250.00 | $14,520.83 |
| 7 | $184,500.00 | $15,375.00 |
| 8 | $184,500.00 | $15,375.00 |
| 9 | $184,500.00 | $15,375.00 |

2.4     **Time of the Essence; Service Charge.**  Time is of the essence of this Lease.  The Gross Rent (collectively hereinafter referred to as "Rent") during the Term of this Lease shall be due and payable, without notice or demand, in equal monthly installments in advance on the first day of each month, to Lessor at the address set forth in Section 18.1 below, or at such other place as Lessor may designate by written notice to Lessee.  The Rent for any partial month prior to the first full Lease Year shall be prorated on a per diem basis and shall be due and payable on the Commencement Date.  If any installment of rent is not received on or before the 10th day of the month when due, or if any additional charges that may be due hereunder are not received within thirty (30) days after billing is mailed by Lessor, there shall be a late fee and service charge assessed against Lessee, without waiver of any rights of Lessor to declare a default hereunder, equal to five percent (5%) of such amount due, which charge will be payable immediately by Lessee as additional rent.

**ARTICLE 3.**
**USE AND OCCUPANCY**

3.1     **Lessee's Use of Premises.**  Lessee intends to use the Premises for the following purposes: warehouse, distribution and sales of home and office furnishings, mattresses, carpet and related accessories.  Lessee shall use the Premises only for lawful purposes.  Lessee shall not use or permit the use of the Premises for any use or purpose which would constitute a nuisance, be in violation of any statute, ordinance, regulation, directive, order or other lawful enactment or pronouncement of any federal, state, municipal, county or other lawful authority affecting the Premises, or make void or voidable any policy of insurance required hereunder.  Lessee shall not commit or permit any waste, damage, disfigurement or injury to the Premises or to the improvements from time to time thereon made or fixtures or equipment located thereon, or permit or suffer any overloading of floors.

3.2   **Licenses, fees and taxes upon Lessee's Use of Premises.**  Lessee shall obtain and maintain in effect all permits and licenses necessary for the operation of Lessee's business as herein provided.  Lessee shall pay all licenses, fees, and taxes arising out of its business or its use and occupancy of the Premises.

3.3   **Lessee's Obligation to Maintain Exterior Appearance of Premises.**  Lessee covenants and agrees that it will not cause or permit trash, boxes, packaging or packing materials, or other discarded materials to be accumulated on the exterior of the Building.  Lessee will cause all such materials to be collected in an appropriate dumpster or refuse container and will arrange for regular pick-up and removal thereof.

## ARTICLE 4.
## LESSOR'S REPRESENTATIONS

4.1   Lessor hereby represents and warrants the following:

(a)   that it is the true and lawful owner of the Property, and is authorized to grant a leasehold interest in the Premises and all payments relating to any Mortgage which is now a lien upon the Property are current and to date; and

(b)   the Premises are zoned to allow Lessee's use as defined herein; and

(c)   on the Commencement Date, the Property will conform to all applicable federal state and local laws, statutes, regulations and ordinances including without limitation local building codes, and the Americans With Disabilities Act of 1990; and

(d)   on the Commencement Date, the Premises will be in good condition and all mechanicals therein will be in good working order;

(e)   the Property contains no Hazardous Materials (as defined below) and there has been no Release (as defined below) of Hazardous Materials on the Property or into the soil or groundwater under the Property; and

(f)   that he shall not lease any remaining portion of the Building to a direct or indirect competitor of Lessee during the term of this Lease.

4.2   The following terms shall have the following meanings in this Lease:

"Environmental Laws" means all applicable federal, state and local laws, regulations, ordinances and common law relating to public health and safety and protection of the environment.

"Hazardous Materials" includes any toxic substances, hazardous wastes, hazardous substances, or any other pollutants or dangerous substances regulated pursuant to any and all Environmental Laws, and shall include, without limitation, asbestos, urea formaldehyde, polychlorinated biphenyls (PCBs), oil, petroleum products and fractions, underground storage

4

tanks, whether empty, filled or partially filled with any substance (regulated or otherwise), any substance or material the presence of which on the Property is prohibited by any Environmental Laws and any other substance or material which requires special handling or notification of any federal, state or local governmental entity regarding collection, storage, treatment or disposal.

"Release" means spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, disposing or dumping and all other actions defined as a release by 42 U.S.C. Section 9601 (22).

### ARTICLE 5.
### INSURANCE

5.1    Lessor shall obtain insurance policies for the coverages as provided in this Section 5.1, as follows:

A.    Property Insurance on all buildings, building improvements, and personal property owned by Lessor with coverage for perils as set forth under the Causes of Loss-Special Form, with extended coverage for the perils of earthquake, windstorm, hail, explosion, aircraft damage, vehicle damage and smoke damage in an amount equal to the full insurable replacement cost, with such deductibles as Lessor deems advisable; and

B.    Commercial General Liability Insurance, including Contractual Liability Insurance coverage, covering Lessor's operations on the Property, with combined single limits of not less than Two Million and 00/100 Dollars ($2,000,000.00) per occurrence with respect to injury or death to a person or persons, Five Million and 00/100 Dollars ($5,000,000.00) aggregate, and Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) with respect to property damage.

5.2    At all times during the Term of this Lease, Lessee shall, at its sole expense, procure and maintain the following types of insurance coverage:

A.    Comprehensive General Liability Insurance covering Lessee's operations on the Premises, with combined single limits of not less than One Million and 00/100 Dollars ($1,000,000.00) for injuries to or the death of persons in any one accident, and Three Million and 00/100 Dollars ($3,000,000.00) general aggregate, and Two Hundred Fifty Thousand ($250,000.00) for damage to property; and

B.    Insurance adequate in an amount to cover damage to Lessee's trade fixtures, furnishings, inventory, equipment, decorations and other contents.

5.3    All policies of insurance required to be carried by either party shall be written in such form, and by such company or companies, as shall be reasonably acceptable to the other party. The original policies, certified copies thereof or certificates of insurance, together with evidence of the payment of all premiums, shall be delivered to Lessor and Lessee respectively. Not less than thirty (30) days prior to the expiration of any policy, or prior to the due date of any premium of any then current policy, the insuring party shall deliver to the other party any necessary renewal policy, a certified copy thereof, or other evidence satisfactory to that party of

5

the renewal of such insurance and of the payment of such premium. All such policies of insurance shall provide that the same cannot be canceled without at least thirty (30) days prior written notice to all insured loss payees, that the naming of a party as an additional insured shall not obligate such party to pay premiums or to give notice of loss or to any other similar conditions, and that any loss shall be payable notwithstanding any act or negligence of the primary insured which might otherwise result in a forfeiture of the insurance. Notwithstanding the foregoing, the insurance required herein on the part of Lessee may be provided by Lessee through an umbrella policy as long as the coverage thereunder is at least equal to the coverage which would be provided under a separate policy covering only the Premises.

5.4    Lessor and Lessee acknowledge their mutual intent to preserve their business relationship during the Term of this Lease and agree to rely on the protections afforded through insurance rather than prosecuting legal claims against each other for any property damage to their building(s) or personal property. Each party agrees to maintain the insurance coverage on their respective properties and their liability insurance coverage as set forth in this Article 5, and to the extent permitted by their respective insurance carriers, will name the other party as an additional insured on their respective insurance policies. Each party will assume all risk of loss or damage to its own property. Each party hereby waives claims and waives right of recovery and subrogation rights against the other party for any property loss or damage, including any consequential damages and waives claims and right of recovery and subrogation rights in connection with third-party claims for property loss or damage and for personal injury or death. This waiver shall apply regardless of fault, accident, negligence, or willful misconduct of any employees or agents of the parties. Lessee will indemnify Lessor against any third-party claims in connection with Lessee's use and occupancy of the Premises and Lessor will indemnify Lessee from and against any third-party claims in connection with the rest of Lessor's Premises. If any insurance does not expressly allow the insured to waive rights of subrogation before loss, it shall be endorsed with a waiver of subrogation.

## ARTICLE 6.
## REAL ESTATE TAXES AND ASSESSMENTS

Lessor shall pay all real estate taxes and other governmental assessments on the Property.

## ARTICLE 7.
## CONDITION OF DEMISED PREMISES

Prior to Lessee's occupancy of the Demised Premises Lessor shall determine that the Premises are vacant and that all mechanical systems in good working order.

## ARTICLE 8.
## ALTERATIONS, IMPROVEMENTS, MAINTENANCE AND REPAIRS

8.1    Lessee shall not make any alterations, installations, improvements or changes to the Leased Premises at any time for any reason without the prior written consent of Lessor, which consent shall not be unreasonably withheld. Lessor shall not be liable for the cost of any alterations or additions, all of which are hereinafter referred to in this paragraph as "alterations"

6

made by Lessee, and Lessee shall indemnify and save Lessor harmless on account of claims for mechanic's, materialman's or other liens in connection with any alterations made by Lessee, and any such liens shall exist only against Lessee's interest, and not against Lessor's interest, whether in fee or otherwise. Upon Lessor's request, Lessee shall provide Lessor a waiver of lien from any contractor performing work to the Leased Premises. All alterations made by Lessee shall be in full compliance with all applicable building laws, ordinances and regulations. All alterations or installations made by Lessee (excepting Lessee's trade fixtures) shall inure to Lessor's benefit and become a part of the Leased Premises and shall belong to Lessor absolutely as soon as made.

8.2    Lessor shall maintain the Common Areas, which shall exclude the doors and windows of the Premises, provided that if repairs to such portions of the Common Areas are required due to the gross negligence or wrongful act of Lessee, Lessee's agents, employees or customers, Lessee shall make such repairs or Lessor shall make such repairs at Lessee's expense. In addition, Lessor shall be responsible, at its sole costs and expense, for any capital expenditures and capital repairs to the roof, foundation, exterior walls, pavement, curbing and walkways, and any HVAC systems servicing the Premises and any other portions of the Building.

8.3    Lessee shall, at Lessee's sole cost and expense, keep the Premises and every part thereof (except maintenance to be performed by Lessor pursuant to Section 8.2 above), including, without limitation, any interior plumbing systems, in good and sanitary condition and repair. Lessee's obligation to repair the Premises shall exclude all major repairs and/or replacements to the HVAC system(s) servicing the Premises. Without limiting the generality of the foregoing, Lessee shall replace all broken glass in the Premises with glass of the same size and quality as that broken, and Lessee shall keep the Premises and appurtenances and sidewalks immediately in front of the Premises in a clean and safe condition free of all debris, snow and ice, and shall comply with all applicable laws, regulations and ordinances and the directions of the proper public officers in connection therewith. Through the Term, Lessee shall keep in full force and effect a contract with one or more licensed heating and cooling companies for the routine maintenance of the HVAC system(s) servicing the Premises, which contract shall be subject to the prior approval of Lessor, which approval shall not be unreasonably withheld or delayed. Such contract shall provide, at a minimum, for inspections and maintenance of the HVAC system(s) no less often than once every six (6) months. If Lessee shall fail to maintain such a contract, Lessor may obtain such a contract, and any sums paid by Lessor in obtaining such contract shall be recoverable from Lessee within ten (10) days after receipt of written notice from Lessor. Notwithstanding the foregoing to the contrary, repairs to such portions of the Premises which are required due to the gross negligence or wrongful act of Lessor, Lessor's agents, employees or customers, Lessor shall make such repairs or Lessee shall make such repairs at Lessor's expense.

## ARTICLE 9.
## PUBLIC UTILITY CHARGES

Lessee shall pay or cause to be paid all utility charges for air conditioning, water, steam, gas, electricity, sewer, light, heat or power, telephone or other utility or communication service used, rendered or supplied upon or in connection with the Premises throughout the Term of this Lease. Lessor shall not be liable in damages, consequential or otherwise, nor shall there be any

rent abatement, arising out of any interruption whatsoever in such utility or other services which is due to fire, accident, strike, governmental authority, acts of God or otherwise beyond the reasonable control of Lessor.

## ARTICLE 10.
## CONDEMNATION AND EMINENT DOMAIN

10.1   Except as provided in Sections 10.2 and 10.3 below, if, during the Term of this Lease, all or any part of the Premises shall be damaged by action of public authority or appropriated by eminent domain, whether such appropriation be by agreement or suit, or if Lessor receives substantial compensable damage by reason of anything lawfully done in connection with the Premises pursuant to public authority, and if same, in the sole reasonable opinion of Lessee, materially interferes with the peaceful and profitable occupation of the Premises, Lessee may, at its option, terminate this Lease by giving notice thereof to Lessor, and Rent shall terminate as of the date the Premises are vacated pursuant to such notice.  If only a part of the Premises is taken and the remainder is sufficient, in Lessee's sole reasonable opinion, for Lessee's purposes, Lessor shall, to the extent of severance damages received by Lessor in connection with such condemnation, make such repairs and alterations as may be necessary in order to restore the part not so taken to useful condition, and a just proportion of the rent, determined according to the nature and extent of the damage or appropriation, shall be abated for the remainder of the Lease Term.  Lessee may, at its sole option, pay any amount in excess of such severance damages required to complete such repair.  If Lessee does not terminate this Lease in accordance with the foregoing, this Lease shall remain in full force and effect, except for any Rent adjustment.

10.2   If more than forty percent (40%) of the floor area of the Building located on the Property is damaged by action of public authority or appropriated by eminent domain, and if such damage or appropriation, materially interferes with the peaceful and profitable occupation of the Premises, Lessee may, at its option, terminate this Lease by giving notice thereof to the other party, and Rent shall terminate as of the date the Premises are vacated pursuant to such notice.

10.3   If any part of the parking areas, driveways or sidewalks are damaged by action of public authority or appropriated by eminent domain, this Lease shall not terminate, nor shall the Rent payable hereunder be reduced, except that Lessee may terminate this Lease if the number of square feet in the parking area, driveways and sidewalks after such taking shall be less than sixty percent (60%) of the number of square feet in such parking areas, driveways and sidewalks before such taking.

10.4   Any election to terminate this Lease following condemnation shall be evidenced only by a written notice of termination delivered to the other party within sixty (60) days after the date of which physical possession is taken by the condemning authority.

If this Lease is not terminated as above provided, Lessee and Lessor shall agree upon an equitable reduction of the Rent.  If the parties fail to agree upon such reduction within ninety (90) days from the date of such condemnation, Lessee and Lessor shall each choose one (1) arbitrator and the two (2) arbitrators so chosen shall choose a third arbitrator.  The decision of

8

any two (2) of the arbitrators as to the rental reduction, if any, shall be binding on Lessee and Lessor and any expense of arbitration shall be divided equally between Lessee and Lessor. If no two arbitrators can agree as to the rental reduction, the decision of the arbitrator chosen by the first two arbitrators shall be binding. All such arbitrators must be experienced in matters involving commercial real property in Chattanooga, Tennessee.

10.5    Lessor reserves and retains the right to receive the total award for such damage to or appropriation of the Premises. Lessee hereby grants to Lessor all of Lessee's rights to such award, and covenants to deliver such further assignments thereof as Lessor may from time to time request. Provided, however, that Lessor shall pay Lessee any amount by which such award is increased by reason of additions or improvements made by Lessee which remain the property of Lessee under this Lease or to moving expenses allocated to Lessee.

## ARTICLE 11.
### FIRE OR OTHER DESTRUCTION

11.1    Except as otherwise herein provided, in the event that the Premises, or any portion of the Building that is necessary for Lessee's occupancy, are damaged by fire or other casualty, Lessor shall repair the same (exclusive of the repairs and restorations required to be made by Lessee pursuant to Section 11.2 below) if, in Lessor's reasonable opinion, such damage can be repaired within ninety (90) days and the estimated cost of such repair does not exceed the net amount of Lessor's estimated insurance award in connection with such damage. If, in Lessor's opinion, such damage cannot be repaired within ninety (90) days or the estimated cost of such repair exceeds the net amount of Lessor's estimated insurance award in connection with such damage, Lessor may, upon notice to Lessee within thirty (30) days after the date of such casualty, terminate the Lease. If Lessor does not elect to so terminate this Lease, Lessor shall repair such damage (exclusive of the repairs and restorations required to be made by Lessee pursuant to Section 11.2). Lessee shall give immediate notice to Lessor of any fire, casualty or accident in the Premises or the Property. Such restoration shall be commenced promptly and prosecuted to completion with reasonable diligence, unavoidable delays excepted. The obligation of Lessee to pay Rent hereunder shall be proportionately abated by an amount equal to the square footage of the Premises determined untenantable divided by the total square footage of the Premises. Such abatement shall continue until the Premises are restored to the same or better condition as that immediately prior to such damage or destruction. In the event that the Premises is not restored within one hundred twenty (120) days after the occurrence of the casualty, subject to delays caused by Force Majeure (as defined below), Lessee shall have the right to terminate this Lease. For purposes of this Section, "Force Majeure" shall mean any delay in the repair or restoration of the Premises when such delay is occasioned by causes beyond Lessor's control, including but not limited to work stoppages, boycotts, slowdowns or strikes; shortages of materials, equipment, labor or energy; unusual weather conditions; or acts or omissions of governmental or political bodies.

11.2    In the event that the Premises are damaged by fire or other casualty, unless this Lease is otherwise terminated pursuant to the provisions of this Article 11, Lessee shall, at its sole cost and expense, forthwith repair and restore its furnishings, trade fixtures, equipment and contents therein and all improvements installed or constructed by Lessee.

## ARTICLE 12.
### INDEMNIFICATION

12.1     Except with respect to insured claims governed by Article 5 of this Lease, Lessee shall indemnify, defend and hold harmless Lessor against and from any and all claims arising from the conduct or management of, or from any work or thing whatsoever done by or on behalf of Lessee on or in the Premises, and will further indemnify, defend and hold harmless Lessor against and from any and all claims arising, during the Term of this Lease, from any breach or default on the part of Lessee and the performance of any covenant or agreement to be performed by Lessee pursuant to the terms of this Lease, or arising from any act or omission of Lessee, or any of its agents, contractors, servants, employees, visitors or licensees, or any sublessee, or any agent, contractor, servant, employee, visitor or licensee of any sublessee, or arising from any accident, injury or damage whatsoever caused to any person, firm or corporation by Lessee or any of its agents, contractors, servants, employees, visitors or licensees, or any sublessee, or any agent, contractor servant, employee, visitor or licensees of any sublessee occurring during the Term of this Lease in the Premises, and from and against all costs, reasonable attorneys' fees, expenses and liabilities occurred in or about any such claim or action or proceeding brought thereon.  In the event any action or proceeding be brought against Lessor by reason of any such claims, Lessee, upon demand of Lessor, covenants to defend such action or proceeding by counsel reasonably satisfactory to Lessor.  Lessor shall have the right, if it sees fit, to participate in such defense at its own expense.  Notwithstanding the foregoing, Lessee shall have no obligation to indemnify and hold harmless Lessor against and from claims arising from Lessor's own conduct or that of its agents, contractors, servants, employees, visitors, licensees or other adjoining tenants or subtenants  (if any) and their respective agents, contractors, servants, employees, visitors or licensees.

12.2     Except with respect to insured claims governed by Article 5 of this Lease, Lessor shall indemnify, defend and hold harmless Lessee against and from any and all claims arising from the occupancy of, or from any work or thing whatsoever done in, on or about the Premises and/or Common Areas by or at the request of Lessor, or any breach of any of Lessor's representations in Article 4 of this Lease and will further indemnify, defend and hold harmless Lessee against and from any and all claims arising, during the Term of this Lease, from any condition of the Premises, including any improvement thereto, or any of the vaults, passageways or spaces therein or appurtenant thereto, or arising from any breach or default on the part of Lessor and the performance of any covenant or agreement to be performed by Lessor pursuant to the terms of this Lease, or arising from any act or omission of Lessor, or any of its agents, contractors, servants, employees, or arising from any accident, injury or damage whatsoever caused to any person, firm or corporation occurring during the Term of this Lease in, on or about the Premises or in on, or about any improvements thereto, and from and against all costs, reasonable attorneys' fees, expenses and liabilities occurred in or about any such claim or action or proceeding brought thereon.  In the event any action or proceeding be brought against Lessee by reason of any such claims, Lessor, upon demand of Lessee, covenants to defend such action or proceeding by counsel reasonably satisfactory to Lessee.  Lessee shall have the right, if it sees fit, to participate in such defense at its own expense.  Notwithstanding the foregoing, Lessor shall have no obligation to indemnify and hold harmless Lessee against and from claims arising from Lessee's own conduct or that of its agents, contractors, servants, employees, visitors or licensees.

## ARTICLE 13.
### DEFAULT

13.1    The following events shall constitute a default of this Lease:

A.    The Rent or any part thereof is at any time in arrears and unpaid for ten (10) days after written notice from Lessor;

B.    Lessee has failed to keep and perform any of the other covenants and agreements on its part to be kept and performed, and such failure has not been cured within thirty (30) days after written notice thereof by Lessor; provided, however, that if such default is curable, and if and so long as Lessee is proceeding with due diligence to cure the default, such period will be extended to whatever reasonable period is required to permit Lessee to cure the default;

C.    Lessee abandons the Premises during the Term hereof, without providing for minimal upkeep and payment of expenses as herein required;

D.    Lessee or any assignee of this Lease makes any assignment for the benefit of its creditors;

E.    Lessee is adjudicated bankrupt;

F.    Lessee files an application in federal court for a reorganization seeking a compromise or settlement of its indebtedness;

G.    The interest of Lessee is sold under execution or other legal process; or

H.    A receiver or trustee is appointed for the property of Lessee or any assignee of this Lease.

13.2    Upon the occurrence of any one or more of such events constituting a default of this Lease, Lessor, at its option, may do any one or more or all of the following:

A.    Declare the balance of all rentals and all amounts due hereunder immediately due and payable, and upon such declaration the same, plus the aggregate amounts of any installments of Rent and other sums then accrued and unpaid, shall be due and payable immediately;

B.    Terminate this Lease and re-enter into and upon the Premises and again have, repossess, and enjoy the same with all the improvements then located thereon as if this Lease had not been made, in which event this Lease and everything herein contained on the part of Lessor to be kept and performed shall cease and be utterly void, without prejudice, however, to Lessor's right of action for arrears of Rent and breach of covenant; or

11

C.  Relet the Premises upon such terms as Lessor may from time to time elect and apply the net proceeds toward Lessee's obligation hereunder, without prejudice, however, to Lessor's right of action for arrears of Rent and breach of covenant.

13.3  Lessee shall pay and indemnify Lessor against all legal costs and charges, including counsel fees lawfully and reasonably incurred in obtaining possession of the Premises after a default of Lessee or after Lessee's default in surrendering possession upon the expiration or earlier termination of the Term of this Lease or enforcing any covenant of Lessee in this Lease.

## ARTICLE 14.
## LESSOR'S DEFAULT; LESSEE'S REMEDIES

If Lessor shall (a) fail to carry out any duties imposed by this Lease; or (b) fail to carry out any duties imposed by law or (c) fail to pay when due the debt service on any mortgage indebtedness encumbering the Premises, or (d) fail to discharge any mechanic's liens which could give rise to a foreclosure, or (e) fail to pay when due any taxes and insurance premiums required to be paid by Lessor under this Lease, then Lessor shall be in default of this Lease. Failure of Lessor to cure such default prior to the expiration of any applicable grace period constitutes an Event of Default, **provided**, that such failure shall not be an Event of Default if Lessor is proceeding in good faith to cure the default. Upon the Event of Default, Lessee shall have all remedies accorded to lessees under common law, including, without limitation, the right to declare a constructive eviction and terminate this Lease abating Rent as of the date of such declaration, or payment of Rent into escrow pending a determination of Lessor and Lessee's rights.

## ARTICLE 15.
## ACCESS TO PREMISES

Lessor and its representatives shall be permitted to enter the Premises during usual business hours after reasonable prior notice to Lessee (except in an emergency, no prior notice need be given), for the purpose of inspecting the same, posting and maintaining notices of nonresponsibility under any mechanic's lien law, exhibiting the Premises for sale, lease or mortgage financing, or making any repairs or performing any other work that may be necessary or that Lessee has requested, or that Lessor may deem necessary to prevent waste or deterioration.

## ARTICLE 16.
## QUIET ENJOYMENT

Upon paying the rents and other charges and observing and performing the covenants, agreements and conditions of this Lease on its part to be kept, Lessee shall lawfully and quietly hold, occupy and enjoy the Premises during the Term of this Lease without hindrance or molestation by Lessor or any person or persons claiming under Lessor.

## ARTICLE 17.
### WAIVER - AMENDMENT

17.1    The failure of Lessor to insist in any one or more cases upon the strict performance of any of the covenants of this Lease or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future performance or exercise of such covenant or option.  A receipt by Lessor of Rent or other sums, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by Lessor of any provision of this Lease shall be deemed to have been made unless expressed in writing and signed by Lessor.

17.2    This Lease embodies the entire agreement between Lessor and Lessee, and can be amended, modified or changed only by an instrument in writing executed by the then holders of the respective interests of Lessor and Lessee.

## ARTICLE 18.
### NOTICE

18.1    All notices, demands and requests which may be or are required to be given by either party to the other, shall be in writing and shall be sent by (i) United States mail, registered or certified, return receipt requested, postage prepaid, or (ii) recognized overnight delivery service with receipted delivery, or (iii) by any other electronic means, with a confirmed delivery receipt, addressed as follows:

If to Lessor:  Mr. Daniel P. Hagaman, 5700 Laurel Ridge Road, Chattanooga, TN 37416 or to such other place as Lessor may from time to time designate in a written notice to Lessee;

If to Lessee:   American Freight, Inc., ATTN:  Mr. Steve Belford, 2748 Lexington Avenue, Lexington, OH 44904, or to such other place as Lessee may from time to time designate in a written notice to Lessor; or

If to any leasehold mortgagee or beneficiary under leasehold deed of trust or any other secured party of the Premises, such party shall be served at the Premises or at such other place as such mortgagee or beneficiary may from time to time designate in a written notice to Lessor or Lessee.

18.2    Notices, demands, and requests which shall be served in the manner aforesaid shall be deemed sufficiently served or given when deposited in the United States mail as aforesaid at a point within the continental limits of the United States.  However, the time period in which response to any such notice, demand or request must be given or within which action must or may be taken pursuant thereto shall commence to run from the date of receipt on the return receipt of the notice, demand or request by the addressee thereof.  Rejection or other refusal to accept or the inability to deliver at the address so designated because of changed address of which no notice was given or because of failure to provide procedures for the delivery of mail at such address shall be deemed to be receipt of the notice, demand, or request sent.

13

## ARTICLE 19.
## SURRENDER OF PREMISES

On the expiration or prior termination of this Lease, the Premises and all improvements, alterations, and additions, in, on or about the Premises (but excluding trade fixtures) shall be the absolute property of Lessor without payment therefore by Lessor and shall be surrendered to Lessor in good and sanitary order, condition and repair except for ordinary wear and tear, and free of subleases, liens, charges, restrictions or encumbrances. Lessee shall execute any and all deeds, bills of sale, assignments and other documents which, in Lessor's sole judgment, may be necessary or appropriate to transfer or evidence clear title to the Premises and such improvements, alterations, additions and fixtures in or to Lessor.

## ARTICLE 20.
## MECHANIC'S LIENS

20.1    Lessee shall not suffer or permit any liens to be filed against the Premises, against Lessee's leasehold interest, or against any part thereof, by reason of work, labor, services or materials supplied or claimed to been supplied to Lessee or to any one holding the Premises or any part of or interest in the Premises. If any such lien shall at any time be filed, Lessee shall cause the same to be discharged of record within twenty (20) days after the date of filing, and if Lessee shall fail to discharge any such lien or to give notice to Lessor of Lessee's intent to contest pursuant to paragraph (2) of this Article within that period then, in addition to any other right or remedy of Lessor, Lessor may, but shall not be obligated to, discharge the same by paying the amount claimed to be due without inquiry into the validity of the claim. Lessee shall reimburse Lessor upon demand for any amount so paid by Lessor and all reasonable and incidental costs and expenses of Lessor, including all reasonable attorneys' fees, together with interest thereon at the rate of twelve percent (12%) per annum.

20.2    Lessee, however, shall have the right to contest any such lien or liens provided that, within sixty (60) days after any such lien is filed or recorded, Lessee shall give notice to Lessor of Lessee's intention to contest the lien, specifying the amount of the lien or liens to be contested.

## ARTICLE 21.
## ESTOPPEL CERTIFICATES

Lessee and Lessor shall each, at any time and from time to time, upon not less than ten (10) days prior written request by the other, execute, acknowledge and deliver to the other party a statement certifying:

A.    That this Lease is unmodified and in full force and effect, or, if there have been modifications, that the Lease is in full force and effect as modified and stating the modification;

B.    The dates to which the Rent and other charges have been paid in advance, if any; and

C.     The nature and extent or absence of any defaults by Lessor or Lessee, it being intended that any such statement delivered pursuant to this Article may be relied upon by any prospective purchaser, mortgagee or beneficiary under deed of trust of Lessee's interest hereunder or of Lessor's fee interest and by any prospective assignee of any such mortgagee or beneficiary.

The statements so delivered by Lessee to any prospective mortgagee or beneficiary under deed of trust of Lessor's fee interest or prospective assignee of any such mortgagee or beneficiary shall include Lessee's written undertaking, for the benefit of such prospective beneficiary, mortgagee or assignee, not to pay any Rent or other sum payable hereunder to Lessor more than thirty (30) days prior to accrual.

**ARTICLE 22.**
**SUBORDINATION AND ATTORNMENT**

This Lease may, at the request of Lessor be subordinated to all mortgages placed on or affecting the Premises and all renewals, modifications, consolidations, replacements, substitutions, additions and extensions of any of those mortgages and other mortgage now or in the future affecting the Premises or any interest in the Premises (collectively, "Mortgages"). In confirmation of this subordination, Lessee promptly shall execute and deliver any subordination agreement that Lessor may reasonably request, if such Agreement also provides that such Mortgagee will not disturb Lessee's leasehold while Lessee is not in default hereunder.  In the event any proceedings are brought for the foreclosure of any Mortgage, Lessee shall attorn to the purchaser or transferee upon foreclosure, and recognize the purchaser or transferee as Lessor under this Lease to the same extent and effect as the original Lessor.  Lessee agrees to execute and deliver upon the request of Lessor, or any purchaser or transferee, any instrument necessary or desirable to evidence this attornment.

**ARTICLE 23.**
**RIGHT OF FIRST REFUSAL ON ADJOINING SPACE**

Lessee shall have and is hereby granted as part of this Lease, the right of first refusal to lease the premises immediately adjoining the Premises (the "Adjoining Space") on negotiated terms and conditions hereinafter set forth in this Article.  In the event Lessor receives a good faith offer for the lease of the Adjoining Space during the Lease Term including any extension or renewal thereof, Lessor shall promptly deliver a copy of the proposed lease to Lessee.  Lessee shall have a period of seven (7) days after receipt of such document in which to notify Lessor of its desire to lease such Adjoining Space at the same rent and on the same conditions as had been offered to Lessor in such document.  If Lessee notifies Lessor that it does not desire to rent such Adjoining Space or if Lessee fails to notify Lessor within such seven (7) day period, Lessor may proceed to lease such Adjoining Space for the rent and upon the terms as specified in such offer; provided, however, that if such lease described in the document delivered to Lessee is not consummated within the time provided for in such document, then such right of first refusal by Lessee to lease such Adjoining Space as may thereafter be vacant shall continue during the Lease Term including any extension or renewal hereof.

15

## ARTICLE 24.
## COMMISSION

Lessor agrees to pay Cumberland Realty Group, c/o Tom DuPre, Broker ("Lessor's Agent") for assisting with this Lease, a commission pursuant to the terms of a separate agreement, which commission shall be due upon full execution of this Lease. Each party represents to the other that, except for Lessor's Agent, it has not dealt with any real estate broker or other entity acting in a similar capacity that might be entitled to a commission or finder's fee in this transaction. Each party hereby indemnifies the other and agrees to hold harmless from any commission, finder's fee or similar claims, and any liability, damages, judgments, and costs related thereto, including reasonable attorneys fees and costs, arising through actions of the indemnifying party in contravention of the representations contained herein.

## ARTICLE 25.
## MISCELLANEOUS

25.1    Signs. Lessee may, at its own expense, install two (2) signs on the exterior of the Building (side and front) for its business purposes, the size, shape and logo of which shall conform to the sign specifications provided for on **Exhibit C** attached hereto and made a part hereof. Such signs and installation thereof shall conform to all applicable laws and regulations and shall remain the property of Lessee. Upon termination of this Lease, Lessee shall remove the signs and shall repair any damage caused by the installation or removal thereof.

25.2    Successors and Assigns. Subject to the express terms of this Lease, the covenants and agreements herein contained shall bind and inure to the benefit of Lessor and Lessee and their respective heirs, successors and assigns. Lessee may assign this lease or sublease rights under this Lease to any third party with the prior written consent of Lessor, which shall not be unreasonably withheld or delayed. Lessee may assign or sublease rights under this Lease to an affiliate corporation or entity without such prior consent, so long as Lessee remains liable to Lessor under this Lease.

25.3    Partial Invalidity.  If any term, covenant, or condition of this Lease or the application thereof to any part, person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease or the application of such term, covenant or condition shall be valid and shall be enforced to the fullest extent permitted by law.

25.4    Captions. The captions of this Lease are for convenience and reference only and in no way define, limit or describe the scope or intent of this Lease or of any provision thereof.

25.5    Applicable Law. This Lease shall be construed and enforced in accordance with the laws of the State of Tennessee.

25.6    Memorandum of Lease. Upon request of either party, Lessor and Lessee agree to execute, acknowledge and deliver a Memorandum or Short Form of Lease for the purpose of recording the same. It is further agreed by Lessor and Lessee that only such Memorandum or Short Form of Lease shall be recorded, and not the within Agreement of Lease.

25.7    Counterparts.    This Lease may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement.    The signature of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.

25.8    Facsimile Signature.    The facsimile transmission of any signed documents including this Lease shall be the same as delivery of an original.    At the request of either party, the party delivering a document for facsimile will confirm facsimile transmission by signing and delivering a duplicate original document.

25.9    Electronic Transactions.    Notwithstanding any other provision of this Lease, the parties hereto agree that the execution of this Lease and any amendments hereto may be conducted by electronic means as provided by the Uniform Electronic Transactions Act (T.C.A. §§47-10-101, et seq.

*[The Remainder of this Page is Intentionally Left Blank]*

The parties have hereunto set their hands on the day and year first above written.

LESSOR:

LESSEE:
AMERICAN FREIGHT
  OF TENNESSEE, INC.
an Ohio corporation

By: _____

DANIEL P. HAGAMAN

Steve Belford, President


STATE OF TENNESSEE    )
COUNTY OF HAMILTON    )

On this the ___10th___ day of ~~July~~, 2007, before me personally appeared Daniel P. Hagaman, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

_____
Notary Public
My Commission Expires: 6-11-11


STATE OF OHIO          )
COUNTY OF RICHLAND     )

Before me, a Notary Public of the state and county aforesaid, personally appeared Steve Belford, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be President of American Freight of Tennessee, Inc., the within named bargainor, a corporation, and that such person, as such officer, executed the foregoing instrument for the purpose therein contained, by personally signing the name of the corporation as President.

Witness my hand and seal at office this ___8th___ day of ___August___, 2007. .

_____
Notary Public
My Commission Expires _____

JASON B.
MURRAY
Attorney At Law
NOTARY PUBLIC,
STATE OF OHIO
My Commission Has
No Expiration Date
Section 147.03 O.R.C.

18

## EXHIBIT A

### SITE PLAN OF DEMISED PREMISES



**EXHIBIT B**

LEGAL DESCRIPTION OF THE PROPERTY

IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE: Lot Four (4), Corrective Plat, Perimeter Park Subdivision, as shown by plat of record in Plat Book 47, Page 323, in the Register's Office of Hamilton County, Tennessee.

SUBJECT TO restrictive covenants contained in document of record in Book 2498, Page 535, in the Register's Office of Hamilton County, Tennessee, and in document of record in Book 3909, Page 926, in the Register's Office of Hamilton County, Tennessee.

SUBJECT TO reservations, easement rights, etc. set out in deed from Home Depot U.S.A., Inc., to Russell W. Lloyd, of record in Book 3909, Page 926, in the Register's Office of Hamilton County, Tennessee.

SUBJECT TO right-of-way easement to South Central Bell Telephone Company, recorded in Book 2596, Page 333, in the Register's Office of Hamilton County, Tennessee, aforesaid records.

SUBJECT TO 5-foot drainage easement, 10-foot drainage easement, drainage impound area and anchor easement all as shown on plat of Perimeter Place Subdivision, recorded in Plat Book 32, Page 86, as revised in Plat Book 47, Page 301, and in Plat Book 47, Page 323, in the Register's Office of Hamilton County, Tennessee, aforesaid records.

SUBJECT TO Governmental zoning and subdivision ordinances or regulations in effect thereon.

BEING THE same property conveyed to Daniel P. Hagaman by deed of record at Book 3931, Page 985, Register's Office of Hamilton County, Tennessee.

## EXHIBIT C

### LESSEE'S SIGN SPECIFICATIONS

Subject to any requirements and limitations imposed by the Sign Ordinance of the City of Chattanooga, the Lessee may place signs as set forth below on the exterior walls of front and the side of the Demised Premises:

Front of Premises:

| | |
|---|---|
| Shape: | Rectangular |
| Description: | Shown below |

Side of Premises:

| | |
|---|---|
| Shape: | Rectangular |
| Description: | Shown below |

All attached signs must comply with applicable provisions of the Chattanooga City Code relating to the regulation of on-premise signs.



# American Freight of Tennessee, Inc.
2748 Lexington Ave.
Lexington, OH 44904
(419) 884-6178
(419) 884-6183 (fax)

VIA CERTIFIED MAIL

March 25, 2010

Mr. Daniel P. Hagaman
5700 Laurel Ridge Road
Chattanooga, TN 37416

RE:    American Freight Lease- 6242 Perimeter Drive, Chattanooga, TN

Dear Mr. Hagaman,

This letter is to confirm our conversation that American Freight of Tennessee, Inc. ("American Freight") will exercise its option to lease the Premises at 6242 Perimeter Drive, Chattanooga, TN, for an additional three year term.

I would also like to confirm that you have granted American Freight a rent concession of $2,000 per month for the months of April through December 2010.

Thank you for your cooperation, and please contact me if you have any questions.

Sincerely,

Steve Belford
President, American Freight of Tennessee, Inc.

April 2, 2010

*Sent 4/2/10 via mail*
*DPH*

Mr. Steve Belford

American Freight

2748 Lexington Avenue

Lexington, OH 44904

Dear Steve,

I enjoyed our conversation a few days ago. I am happy to accommodate your needs in these trying times. I am grateful for your business and look forward to many years of success for American Freight going forward.

As discussed we will adjust the rental rate for the remainder of 2010 to give a rent concession of $2000 per month. So rent for the remainder of 2010 will be $12,520.83 per month.

Per our conversation and your letter in hand I understand that we will go forward January 1, 2011 as per the original contract rents of $14,520.83 per month and also, you are renewing your lease to that effect for an additional three year period commencing October 1, 2010 and ending September 30, 2013 as per the original lease agreement.

Thank you for your business and for being so very good to do business with.

Sincerely,

Daniel P. Hagaman

May 1, 2014


Mr. Steve Belford

American Freight Of Tennessee

2748 Lexington Avenue

Lexington, OH 37416

Dear Steve,

Per discussion between you and Chuck yesterday afternoon please note the enclosed amendment to our lease at 6242 Perimeter Dr., Chattanooga, TN 37421.

I have executed both copies. Please, sign, get them notarized and return one original to me while retaining the other for your records.

Thank you for your business!

It is a pleasure working with you and I look forward to many more years!

Thank you,


Daniel P. Hagaman

**American Freight of Tennessee, Inc.**
680 Sunbury Rd.
Delaware, OH  43015
740-363-2222

VIA US POSTAL SERVICE

May 23, 2014

Mr. Daniel P. Hagaman
5700 Laurel Ridge Rd
Chattanooga, TN  37416

RE:    6242 Perimeter Dr., Chattanooga, TN

Dear Mr. Hagaman,

Enclosed, please find one original copy of the Amendment to Existing Lease for the abovementioned property.

Thank you for your attention to this matter, and please let me know if you have any questions.

Sincerely,

Chuck Jennings

Enc.

## AMENDMENT TO EXISTING LEASE

This amendment extends a certain lease dated August 8, 2007  between American Freight Of Tennessee, Inc., an Ohio corporation, ~~2748 Lexington Avenue, Lexington, OH 44904~~ *680 Sunbury Road, Delaware, OH 43015* and Daniel P. Hagaman of 5700 Laurel Ridge Rd., Chattanooga, TN 37416.

It is mutually agreed that the term of the lease is extended from June 1, 2014 to June 30, 2017 at a rental rate of $14,947.50 monthly commencing June 1, 2014.

Other conditions of the lease remain unchanged.

The parties have hereunto set their hands on the day and year first above written.\

LESSOR:                                                LESSEE:

                                                       American Freight Of Tennessee, Inc.

                                                       An Ohio corporation

                                                       By: _____

Daniel P. Hagaman                                      Steve Belford, President

STATE OF ~~TENNESSEE~~ *Georgia*
*Walker*
~~HAMILTON~~ COUNTY  )

Oo this _2_ day of May, 2014, before me personally appeared Daniel P. Hagaman, to me known to be the person described in and who executed the foregoing instrument, and acknowledging that he executed the same as named and deed.

_____
Notary Public                           **My Commission Expires**
                                        **June 3, 2016**

My Commission Expires:_____

STATE OF OHIO          )

2

~~DELAWARE~~
COUNTY OF ~~RICHLAND~~ )

Before me, a notary public of the state and county aforesaid, personally appeared Steve Belford, with whom I am personally acquainted(or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be President Of American Freight Of Tennessee, Inc., the within named bargainor, a corporation, and that such person, as such officer, executed the foregoing instrumentfor the purpose therein contained, by personally signing the name of the corporation as President.

Witness my hand an seal at office this ___22^nd___ day of ___May___, 2014

CHARLES FOX JENNINGS, ATTORNEY AT LAW
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

_____
Notary Public

My Commission Expires____N/A____

3.

## SECOND AMENDMENT OF LEASE

THIS SECOND AMENDMENT OF LEASE ("Second Amendment") dated as of _May 30_____, 2017 by and between DANIEL P. HAGAMAN, and AMERICAN FREIGHT OF TENNESSEE, LLC, a Delaware limited liability company.

### RECITALS

A. Lessor and American Freight of Tennessee, Inc. entered in to that certain Lease dated August 8, 2007 (the "Lease") for a portion of the building located at 6242 Perimeter Drive, Chattanooga, Tennessee 37421 and amended the Lease by the Amendment to Existing Lease (Said lease as heretofore amended is hereinafter referred to as the "Lease").

B. American Freight of Tennessee, Inc. converted from an Ohio corporation to a Delaware limited liability company in 2015.

C. Lessor and Lessee desire to extend the term of the Lease on the conditions set forth in this Second Amendment.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the sufficiency and mutual receipt of which are hereby acknowledged, Lessor and Lessee agree to the following:

1. Lessor and Lessee agreed that the term of the Lease is extended from July 1, 2017 through June 30, 2020 at a rental rate of $15,600 per month commencing July 1, 2017.

2. The recitals are fully incorporated into this Second Amendment by this reference.

3. Except to the extent amended herein, the Lease shall be and remain in full force and effect.

4. This Second Amendment was executed in counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute one instrument, as of the day and year first written above.

IN WITNESS WHEREOF, Lessor and Lessee have signed this Second Amendment as of the date and year first written above.

Lessor:


_____
DANIEL P. HAGAMAN


Lessee:

~~AMERICAN FREIGHT OF TENNESSEE, LLC~~

1

AMERICAN FREIGHT OF TENNESSEE, LLC

By: _____

James Brownell, Chief Operating Officer

2

STATE OF TENNESSEE                )

COUNTY OF Hamilton,               )

On this 10th day of May_____, 2017, before me personally appeared Daniel
P. Hagaman, to me known to be the person described in and who executed the foregoing
instrument, and acknowledged that he executed the same as his free act and deed.

*Brittany M. Clark*

Notary Public

My Commission Expires: _____

My Commission Expires
December 29, 2020

STATE OF OHIO                    )
                                 )
COUNTY OF DELAWARE )

The foregoing instrument was acknowledged before me this 30th day of
May_____, 2017 by JAMES BROWNELL, Chief Operating Officer of AMERICAN
FREIGHT OF TENNESSEE, a Delaware limited liability company, on behalf of the limited
liability company.

*Jane Walsh*

Notary Public

My Commission Expires: *no expiration date*

JANE WALSH
Attorney At Law
NOTARY PUBLIC
STATE OF OHIO
My Commission Has
No Expiration Date
Section 147.03 O.R.C.

1

TELEPHONE: 740 363 2222
FAX: 740 363 8127

# AMERICAN FREIGHT INC.

AMERICAN FREIGHT INC.    •    680 Sunbury Rd.    •    Delaware, OH 43015

May 30, 2017

Mr. Daniel P. Hagaman
5700 Laurel Ridge Road
Chattanooga, TN 37416

RE: 6242 Perimeter Drive, Chattanooga, Tennessee 37421

Dear Mr. Hagaman:

Enclosed is one fully-executed counterpart of the Second Amendment of Lease. It was a pleasure working on this amendment with you.

Thank you for your help.

Very truly yours,

Jane Walsh

JW

Enclosure

## THIRD AMENDMENT OF LEASE

THIS THIRD AMENDMENT OF LEASE ("Third Amendment") dated as of August __, 2019 by and between DANIEL P. HAGAMAN, and AMERICAN FREIGHT, INC., a Delaware corporation.

### RECITALS

A. Lessor and American Freight of Tennessee, Inc. entered in to that certain Lease dated August 8, 2007 (the "Lease") for a portion of the building located at 6242 Perimeter Drive, Chattanooga, Tennessee 37421 and amended the Lease by the Amendment to Existing Lease dated May 22, 2014 and the Second Amendment of Lease dated May 30, 2017 (Said lease as heretofore amended is hereinafter referred to as the "Lease").

B. Lessee had previously exercised the Renewal Terms set forth in Section 1.2 of the Lease.

C. Effective January 1, 2015, American Freight of Tennessee, Inc. converted from an Ohio corporation into American Freight of Tennessee, LLC, a Delaware limited liability company. Effective October 1, 2017, American Freight of Tennessee, LLC merged into its sole member, American Freight, Inc., a Delaware corporation.

D. Lessor and Lessee desire to modify the terms of the Lease as set forth in this Third Amendment.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the sufficiency and mutual receipt of which are hereby acknowledged, Lessor and Lessee agree to the following:

1. Lessee shall have the right to renew the term of this Lease for two (2) additional five-year terms (each a "Renewal Term"), upon the same terms and conditions, excepting rental, provided that Lessee is not in material breach of this Lease and that Lessee gives Lessor notice in writing exercising the option to renew the Lease no fewer than one hundred eighty (180) days prior to the end of the applicable term of this Lease. Any such notice shall be sent in accordance with Section 18.1(i) or (ii) of the Lease. The Primary Term and Renewal Terms, if applicable, are hereinafter referred to, collectively or singularly, as either the "Term of this Lease", "Lease Term" or Term".

2. In the event Lessee exercises its option to renew as set

the beginning of each Renewal Term by seven percent (7%) over the Gross Rent payable during the preceding Term.

3. Any defined term used in this Third Amendment shall have the meaning ascribed in the Lease unless otherwise defined in this Third Amendment.

4. The recitals are fully incorporated into this Third Amendment by this reference.

5. Except to the extent amended herein, the Lease shall be and remain in full force and effect.

6. This Third Amendment may be executed in counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute one instrument, as of the day and year first written above.

[signature page follows]
1

IN WITNESS WHEREOF, Lessor and Lessee have signed this Third Amendment as of the date and year first written above.

Lessor:

_DP Hagaman_
DANIEL P. HAGAMAN

Lessee:
AMERICAN FREIGHT, INC.

By: _[signature]_ CEO/PRES
Steve Belford, Chief Executive Officer

STATE OF TENNESSEE        )
                          )
COUNTY OF Hamilton )

On this 8th day of August, 2019, before me personally appeared Daniel P. Hagaman, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

_Vickie Bishop_
Notary Public

My Commission Expires
March 13, 2022

STATE OF OHIO            )
                                    )
COUNTY OF DELAWARE )

   The foregoing instrument was acknowledged before me
this _12th_ day of _August_____, 2019 by STEVE
BELFORD, Chief Executive Officer of AMERICAN
FREIGHT, INC., a Delaware corporation, on behalf of the
corporation.

_Jane Walsh_
Notary Public

My        Commission
_no expiration_

**JANE WALSH**
Attorney At Law
NOTARY PUBLIC
STATE OF OHIO
My Commission Has
No Expiration Date
Section 147.03 O.R.C.

My Commission Expires:

2

*TELEPHONE: 740 363 2222*
*FAX: 740 363 8127*

# AMERICAN FREIGHT INC.

AMERICAN FREIGHT INC.    •    680 Sunbury Rd.    •    Delaware, OH 43015

December 18, 2019

Mr. Daniel P. Hagaman
5700 Laurel Ridge Road
Chattanooga, TN 37416

RE:    6242 Perimeter Drive, Chattanooga, Tennessee 37421
       Lease dated August 8, 2007 between Daniel P. Hagaman as landlord and
       American Freight, Inc. as tenant, as heretofore amended

Dear Mr. Hagaman:

In accordance with the Third Amendment dated May 12, 2019, American Freight, Inc. hereby renews the Lease for an additional five-year term. The renewal term will commence on July 1, 2020 and terminate on June 30, 2025.

We look forward to continuing at this location. Happy holidays!

Very truly yours,

Chuck Jennings
Chief Legal Officer

CJ:jw



March 25, 2020

Daniel P Hagaman
5700 LAUREL RDG RD
Chattanooga, TN 37416
Attn: Daniel P Hagaman

Re:     American Freight Store No: 00028
        Building - 6242 PERIMETER DR, Chattanooga, TN

Dear Landlord,

As you are no doubt aware, the Coronavirus (COVID-19) Pandemic is impacting nearly every person and business in the United States. With global cases now over 372,755 and US cases standing at 54,453 at the time of this letter, federal, state and local governments are taking drastic measures to help curb the escalation of this unprecedented outbreak.

Within the last 30 days, the known cases of the virus have increased dramatically, resulting in the closures of businesses, factories, schools, and restaurants. The impact of these closures, coupled with the "social distancing" guidelines suggested by the government, has been catastrophic to our business. Retail traffic in our stores has slowed dramatically and the trickle-down effects of many of our customers being out of work, will impact our stores for the foreseeable future.

We have appreciated and enjoyed partnering with you at this location and hope that you can appreciate that we have been a good tenant with.a great pay history. Due to the devastating effect that COVID-19 is having and will continue to have on our business, we would like to engage in an open dialogue with you regarding mitigating actions such as rent reductions and deferrals to ensure the longer term viability of our relationship once this near term crisis is over.

Based on information currently available to us, we would propose the following: (i) rent deferral for three months (i.e., April through June 2020), with our lease being extended by three months current lease terms, and (ii) a 50% reduction in monthly rental payments for the remainder of 2020. We believe these measures are necessary to ensure our ability to continue operating in this location and to make our monthly rental payments to you post-crisis for the remainder of the lease term. As you know, this situation is constantly evolving and additional changes to these proposed terms may be required. We can quickly prepare a short letter detailing terms once we reach an agreement.

Our representative will be reaching out to you soon to discuss.

Sincerely,

Will Powell
CEO & President

# **AMERICAN FREIGHT**

## <u>IMPORTANT NOTICE ADDRESS CHANGE</u>

December 26, 2023

To: American Freight Real Estate Vendors

RE: American Freight, LLC - Change of Address Notice

Dear Sir/Madam,

This letter shall constitute notice to you that American Freight, LLC are updating addresses for this location. Please replace the addresses for the store referenced above as follows. If possible, electronic submission of monthly invoices and statements is preferred.

**<u>Invoices/Statements:</u>**
Email: invoices@consultasg.com

American Freight Lease Services
752 N. State Street
PMB #878
Westerville, OH 43082

**<u>Notices and W-9's:</u>**
Email: legalnotices@americanfreight.us

American Freight, LLC
109 Innovation Court, Suite J
Delaware, OH  43015
Attn:  Vice President of Real Estate

Additional Copy:
Attn:  Legal Notices
American Freight, LLC
109 Innovation Court, Suite J
Delaware, OH  43015

All other addresses should be deleted from your records. **Phone inquiries concerning outstanding invoices or other amounts due and gross sales reporting, if applicable, should be directed to Asset Strategies Group at (614) 212-5180 effective February 1, 2024.**

If you have any questions, I may be reached at (740) 530-4102.

Sincerely,

AMERICAN FREIGHT, LLC

Donna Taucher
DVP, Real Estate

6242 perimeter Dr.