# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>December 17, 2024 at 11:00 a.m. (ET)<br><br>**Objection Deadline:**<br>December 10, 2024 at 4:00 p.m. (ET) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE (I) RETENTION OF AP SERVICES, LLC, (II) DESIGNATION OF DAVID ORLOFSKY AS CHIEF RESTRUCTURING OFFICER, EFFECTIVE AS OF THE PETITION DATE, AND (III) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby file this motion (the "Motion"), seeking entry of an order, substantially in

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

the form attached hereto as Exhibit A, authorizing the Debtors to (a) retain and employ AP Services, LLC ("APS"), (b) designate David Orlofsky as Chief Restructuring Officer ("CRO") pursuant to the terms of the engagement letter by and among the Debtors and APS, dated as of October 11, 2024 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit B, in each instance effective as of the Petition Date (as defined herein), and (c) granting related relief. In support of the Motion, the Debtors submit the declaration of David Orlofsky, a Partner and Managing Director of AlixPartners, LLP, and authorized representative of APS (the "Orlofsky Declaration"), attached hereto as Exhibit C.

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b), and pursuant rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2002-1(f).

**BACKGROUND**

4. On November 3, 2024, (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On November 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 188] (the "Committee").

6. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration"), which is incorporated by reference herein.

**RELIEF REQUESTED**

7. By this Motion, the Debtors request entry of the Proposed Order, authorizing the Debtors to (a) retain APS, (b) designate David Orlofsky as CRO pursuant to the terms of the Engagement Letter, and (c) granting related relief.

**APS'S QUALIFICATIONS**

8. The Debtors understand that APS, an affiliate of AlixPartners, LLP ("AlixPartners"), is an internationally recognized restructuring and turnaround firm with substantial experience in providing interim management and financial advisory services and has an excellent reputation for its work in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

9. APS's professionals have provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases. Since its inception in

1981, APS, AlixPartners, its subsidiary affiliates, and its predecessor entities have provided restructuring or crisis management services in numerous large cases in this district.  See, e.g., In re LL Flooring Holdings, Inc., No. 24-11680 (BLS) (Bankr. D. Del. Sept. 11, 2024); In re Vyaire Medical, Inc., No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024); In re MVK FarmCo LLC, No. 23-11721 (LSS) (Bankr. D. Del. Dec. 6, 2023); In re Kidde-Fenwal, Inc., No. 23-10638 (LSS) (Bankr. D. Del. Jul. 10, 2023); In re Aearo Techs. LLC, No. 22-02890 (JJG) (Bankr. S.D. Ind. Oct. 13, 2022); In re Enjoy Tech., Inc., No. 22-10580 (JKS) (Bankr. D. Del. Aug. 2, 2022); In re Salem Harbor Power Development LP (f/k/a Footprint Power Salem Harbor LP), No. 22-10239 (MFW) (Bankr. D. Del. Apr. 19, 2022); In re Nine Point Energy, LLC, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 20, 2021); In re VIP Cinema Holdings, No. 20-10345 (MRW) (Bankr. D. Del. Mar 23, 2020); In re Southland Royalty Co., LLC, No. 20-10158 (KBO) (Bankr. D. Del. Feb. 27, 2020); In re Borden Dairy Co., No. 20-20010 (CSS) (Bankr. D. Del. Feb. 24, 2020); In re Blackhawk Mining LLC, No. 19-11595 (LSS) (Bankr.  D. Del. Aug. 9, 2019); In re FTD Cos., Inc., No. 19-11240 (LSS) (Bankr. D. Del. July 2, 2019); In re CTI Foods, LLC, No. 19-10497 (CSS) (Bankr. D. Del. Apr. 8, 2019).

10. In addition to APS's experience and reputation for providing restructuring services in chapter 11 cases, since July 2024, APS and AlixPartners, an affiliate of APS, have performed significant prepetition work for the Debtors.  Prior to the Petition Date, on July 20, 2024, the Debtors retained AlixPartners to provide various financial advisory services to assist the Debtors in the preparation of these Chapter 11 Cases and evaluating alternative transactions.  Thereafter, the Debtors and APS entered into the Engagement Letter, pursuant to which Mr. Orlofsky agreed to serve as the Debtors' CRO.  During their course of the engagement, APS and AlixPartners have acquired significant knowledge of the Debtors and their businesses, and familiarity with the

Debtors' financial affairs, debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, APS's professionals have worked closely with the Debtors' management and their other advisors. APS has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases. The Debtors submit that the designation of David Orlofsky as CRO and the retention of APS on the terms and conditions set forth herein is necessary and appropriate, in the best interests of the Debtors, their estates, and all parties in interest, and should be granted on the terms proposed.

11. David Orlofsky, a Partner and Managing Director of AlixPartners has 25 years of restructuring experience providing both interim management and advisory services to clients, including serving as the Chief Restructuring Officer of Party City, RCS Capital Corporation, Preferred Sands, and Mark IV Industries and the interim Chief Operating Officer and Chief Financial Officer of Malden Mills.

12. The individuals who will work on this matter in addition to the CRO (the "APS Personnel") have substantial expertise in the areas discussed above, and, if approved, will provide services to the Debtors in accordance with the Engagement Letter and applicable orders of the Court. The APS Personnel will work closely with the Debtors' management and professionals throughout the reorganization process, and by virtue of the expertise of its restructuring personnel and the significant prepetition work that AlixPartners and APS performed for the Debtors, APS is well-qualified to provide services to and represent the Debtors' interests in these Chapter 11 Cases.

## SERVICES TO BE PROVIDED

13. Subject to the Court's approval, the Debtors propose to retain APS to provide the Debtors with a CRO and APS Personnel on the terms and conditions set forth in the Engagement Letter. The terms and conditions of the Engagement Letter were negotiated between the Debtors

5

and APS and reflect the parties' mutual agreement as to the substantial efforts that will be required under this engagement.

14. Generally, the CRO and APS shall perform activities and services to assist the Debtors throughout these Chapter 11 Cases. Working collaboratively with the senior management team, the Board of Directors, and the Debtors' other professionals, Mr. Orlofsky will assist the Debtors in evaluating and implementing strategic and tactical options through the restructuring process. The specific services that the CRO and APS Personnel may provide for the Debtors include, among others:

- Overseeing, advising, and recommending decisions to the Debtors' management team and Board of Directors with respect to the Debtors' negotiations amongst its key stakeholders (the First Lien Lenders, Second Lien Term Lenders, HoldCo Lenders, ABL Lenders, and existing equity holders (collectively, the "Key Stakeholders")) regarding a comprehensive restructuring transaction (the "Restructuring Negotiations").
- Providing updates to the Key Stakeholders with respect to the status of the Restructuring Negotiations with other Key Stakeholders.
- Providing 13-Week Cash Flow Forecasts to Key Stakeholders.
- Designing and implementing a contingency plan with respect to the Debtors' American Freight business (including, but not limited to, separation and potential wind down, and/or store-closing and liquidation sales).
- Completing a general unsecured claims analysis with respect to these Chapter 11 Cases.
- Negotiating and assisting the Debtors' advisors in documenting DIP and cash collateral orders.
- Communicating with, and promptly responding to information requests from the Debtors' Key Stakeholders and other parties in interest in these Chapter 11 Cases.
- Evaluating the Debtors' business plan and such other related forecasts as may be required in connection with the restructuring process or needed by the Debtors for other corporate purposes.
- Coordinating and providing administrative support for the Chapter 11 Cases and (as may be necessary) developing with the Debtors' other professionals: (i) a disclosure statement and plan of reorganization; (ii) a liquidation analysis; (iii) statements of financial affairs and schedules of assets and liabilities; (iv) a potential preference analysis; (v) claims analysis; and (vi) monthly operating reports and other regular reporting required by the Court.
- Providing testimony, as requested from time to time, regarding any matters to which APS

is providing services.

- Assisting the Debtors with such other mutually agreeable matters as may be requested by the Debtors and the Ad Hoc Group of First Lien Lenders.

15. When necessary, the AlixPartners Personnel will be assisted by or replaced by various professionals at various levels.

## NO DUPLICATION OF SERVICES

16. AlixPartners understands that the Debtors may retain additional professionals during the term of its engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors. The services provided by APS will complement, and not duplicate, the services to be rendered by other professional retained in these Chapter 11 Cases.

## FEE AND EXPENSE STRUCTURE

17. APS's decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in Schedule 1 of the Engagement Letter (the "Fee and Expense Structure").

18. APS's current standard hourly rates for 2024, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Partner/ Partner & Managing Director | $1,200 – $1,495 |
| Senior Vice President/ Director | $825 – $1,125 |
| Vice President | $640 – $810 |
| Analyst/ Consultant | $230 – $625 |

7

19. Effective January 1, 2025, AlixPartners' standard hourly rates will be as follows:

| Title | Hourly Rate |
|---|---|
| Partner/ Partner & Managing Director | $1,225 – $1,540 |
| Senior Vice President/ Director | $850 – $1,150 |
| Vice President | $650 – $835 |
| Analyst/ Consultant | $250 – $640 |

20. Upon approval from the Court, Mr. Orlofsky will serve as CRO in these Chapter 11 Cases. For his dedicated and full-time commitment, Mr. Orlofsky will receive a fixed fee of $175,000 per month. In his capacity as CRO, Mr. Orlofsky will also be supported by APS Personnel whose commitments vary. The APS Personnel will bill for the actual time spent performing services and hourly rates for such APS Personnel range from $895 to $1,225 based on function and experience. The current standard hourly rates of Mr. Orlofsky and the primary APS Personnel presently working on this matter that will be assisting Mr. Orlofsky (among others) include the following:

A. **Interim Management**

| Professional | Function | Fixed Fee | Commitment Full or Part Time |
|---|---|---|---|
| David Orlofsky | CRO | $175,000 per month | Full Time |

B. **Additional Temporary Staff**

| Professional | Function | Hourly Rate | Commitment Full or Part Time |
|---|---|---|---|
| Rodi Blokh | APS Personnel | $1,225 | Part Time |
| Dan Kelsall | APS Personnel | $1,200 | Full Time |
| Swapna Deshpande | APS Personnel | $1,200 | Full Time |

| Professional | Function | Hourly Rate | Commitment Full or Part Time |
|---|---|---|---|
| Jeremy Dioso | APS Personnel | $895 | Full Time |

21. APS reviews and revises its billing rates semi-annually. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

22. To the extent the Debtors request services related to electronic discovery and data collection, certain monthly hosting fees and consulting fees will apply.

23. To the extent APS uses the services of independent contractors (the "Contractors") in these Chapter 11 Cases, APS shall: (a) pass through the cost of such Contractors to the Debtors at the same rate that APS pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for APS; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

24. In addition to compensation for services rendered by APS Personnel, APS will seek reimbursement for reasonable and necessary out-of-pocket expenses incurred in connection with these Chapter 11 Cases, including, but not limited to, travel, lodging, and meals.

25. APS will submit monthly invoices to the Debtors, and the Debtors request authority to pay, in the ordinary course of business, all reasonable amounts invoiced by APS for fees and expenses.

26. Upon approval of the requested relief by the Court permitting the Debtors to retain APS under section 363 of the Bankruptcy Code, APS will not be employed as a professional under section 327 of the Bankruptcy Code, and it will therefore not be required to file fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. APS will, however, file with the Court reports of compensation earned and expenses incurred on a monthly basis and APS will also file

9

staffing reports that will reflect the names of all full- and part-time APS Personnel involved in these Chapter 11 Cases and each individual's hourly billing rate the (the "Staffing and Compensation Reports").  APS will file Staffing and Compensation Reports by the 20th day of each month covering the previous month.

27. APS will provide its Staffing and Compensation Reports to: (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (ii) counsel to the Debtors, and (iii) counsel to the Committee (collectively, the "Notice Parties").  The Notice Parties shall have ten (10) business days after the date each Staffing and Compensation Report is filed to object, and the related compensation and expenses will be subject to Court review in the event an objection is filed.  The Staffing and Compensation Reports and APS's staffing decisions will be subject to review by the Court in the event an objection is filed.

28. APS often works for compensation that includes hourly-based fees and performance-based, contingent incentive compensation earned upon achieving meaningful results. In these Chapter 11 Cases, APS will be compensated for its efforts by the payment of a completion fee (the "Completion Fee").

29. For purposes of describing the Completion Fee, the Debtors have four separate business units: American Freight, which includes Franchise Group Newco Intermediate AF, LLC and its direct and indirect subsidiaries; The Vitamin Shoppe, which includes Franchise Group Intermediate V, LLC and its direct and indirect subsidiaries; Pet Supplies Plus, which includes Franchise Group Intermediate PSP, LLC and its direct and indirect subsidiaries; and Buddy's Home Furnishings, which includes Franchise Group Intermediate B, LLC and its direct and indirect subsidiaries.

30. For purposes hereof, a "Restructuring" shall mean any restructuring, reorganization, rescheduling and/or recapitalization (whether or not implemented through a bankruptcy filing) of all or substantially all of the Debtors' material outstanding indebtedness (including bank debt and any other on and off-balance sheet indebtedness) in each case, other than a liquidation.

31. Subject to Court approval, APS shall be entitled to receive a Completion Fee as follows:

   a. A Completion Fee in the amount of $2.0 million upon the consummation of a Restructuring in which all of the Debtors' entities commence voluntary chapter 11 cases and the Court confirms a chapter 11 plan within 90 days of the commencement date;

   b. A Completion Fee in the amount of $1.5 million upon the consummation of a Restructuring in which all of the Debtors' entities commence voluntary chapter 11 cases and the Court confirms a chapter 11 plan within 91-180 days of the commencement date; or

   c. A Completion Fee in the amount of $1.0 million upon the consummation of a Restructuring in which all of the Debtors' entities commence voluntary chapter 11 cases and the Court confirms a chapter 11 plan within 181 or more days of the commencement date.

32. For the avoidance of doubt, APS shall only be entitled to one Completion Fee.

33. On July 31, 2024, and pursuant to the Engagement Letter, APS and affiliates received a retainer in the amount of $200,000.00 from the Debtors (the "Retainer"). According to APS's books and records, during the ninety (90)-day period prior to the Petition Date, the Debtors paid APS and affiliates $6,649,956.50 in the aggregate for professional services performed and expenses incurred, including advanced payments and excluding the Retainer.

34. APS requests that any balance of the Retainer will constitute an evergreen retainer as security for postpetition services and expenses. An evergreen retainer is appropriate in these Chapter 11 Cases. First, evergreen retainer agreements reflect normal business terms in the

marketplace. See In re Insilco Techs., Inc., 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[I]t is not disputed that the taking of evergreen retainers is a practice now common in the marketplace[.] [. . .] [T]he practice in this district has been engaged in since at least the early 1990's. . . ."). Second, APS and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length. As such, the Debtors respectfully request that approval of the proposed evergreen retainer is warranted.

35. Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to, the Petition Date, APS may have incurred fees and reimbursable expenses related to the prepetition period which remain unpaid. Approval is sought from the Court for APS to apply the Retainer and/or advanced payments to these unpaid amounts. Upon entry of an order approving the relief requested herein, APS will apply the Retainer and/or advanced payments to the unpaid amounts, and the Debtors will not owe APS any sums for prepetition services.

36. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by APS and other comparable firms that render similar services. The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate APS fairly for its work, and to cover fixed and routine expenses.

## APS'S DISINTERESTEDNESS

37. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Orlofsky Declaration, APS: (a) has no connection with the Debtors, their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or U.S. Trustee or any person employed in the Office of the U.S. Trustee and (b) does not hold any interest adverse to the Debtors' estates.

38. Although the Debtors respectfully submit that the retention of APS is not governed by section 327 of the Bankruptcy Code, the Orlofsky Declaration discloses certain connections with creditors, equity security holders, and other parties in interest in these Chapter 11 Cases. APS does not believe that any of these connections represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases. Thereby, the Debtors submit that APS is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

39. In the event that APS learns of additional connections not reflected in the Orlofsky Declaration, APS will use reasonable efforts to promptly file a supplemental declaration.

## INDEMNIFICATION

40. Notwithstanding the Engagement Letter, the Debtors and APS have agreed that the Debtors will not indemnify APS, its affiliates, or non-officer employees of APS. The Debtors have agreed to indemnify those persons serving as corporate officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' directors and officers insurance policy (the "D&O Policy") for APS employees and agents serving as directors or officers of the Debtors for the duration of these Chapter 11 Cases.

## BASIS FOR RELIEF

41. The Debtors seek to employ and retain APS and appoint Mr. Orlofsky as CRO pursuant to sections 105 and 363 of the Bankruptcy Code, effective as of the Petition Date. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of

the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); see also Armstrong World, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); Ionosphere Clubs, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); In re Phx. Steel Corp., 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).

42. Additionally, section 105(a) of the Bankruptcy Code provides the Court with the power to grant the relief requested herein. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

43. In view of the foregoing, the Debtors submit that the decision to retain APS and employ Mr. Orlofsky as CRO should be authorized because it is a sound exercise of the Debtors' business judgment. As set forth above, Mr. Orlofsky has extensive experience as a senior officer and advisor for many companies undertaking restructuring efforts, and the APS Personnel are well qualified and equipped to assist in CRO duties. APS, Mr. Orlofsky in his capacity as CRO, and the APS Personnel, will provide services that are in the best interests of all parties in interest in these Chapter 11 Cases.

**NOTICE**

44. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) proposed counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of

First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel to the HoldCo Lenders; (vii) counsel to the DIP Agent; (viii) counsel to the DIP Lenders; (ix) the Internal Revenue Service; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: November 26, 2024
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Matthew A. Feldman (admitted *pro hac vice*)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*