## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** |
| | **December 17, 2024 at 11:00 a.m. (ET)** |
| | **Objection Deadline:** |
| | **December 10, 2024 at 4:00 p.m. (ET)** |

### DEBTORS' APPLICATION FOR AN ORDER
### AUTHORIZING THE RETENTION AND EMPLOYMENT OF
### PETRILLO KLEIN + BOXER LLP AS SPECIAL COUNSEL TO THE DEBTORS
### AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") file this application (the "Application") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 327(e) and 328(a)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2014

and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules

2014-1 and 2016-1 of the Local Bankruptcy Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the

retention and employment of Petrillo Klein + Boxer LLP ("PKB" or the "Firm") as counsel for the

Debtors, effective as of the Petition Date (as defined below), to render professional services at the

direction of the independent directors (the "Independent Directors") of the board of directors

(the "Board") of Debtor Franchise Group, Inc. ("FRG") with respect to conducting a review of

certain historical transactions, as requested by the Independent Directors, to assess the viability of

potential related legal claims against the former Chief Executive Officer and/or the current Board

and/or officers of FRG (the "Independent Director Matters").  In support of this Application, the

Debtors rely upon (a) the declaration of Joshua Klein (the "Klein Declaration"), attached hereto as

Exhibit B and (b) the declaration of Chris Meyer (the "Meyer Declaration" and, together with the

Klein Declaration, the "Declarations"), attached hereto as Exhibit C, and respectfully state as

follows:

## **JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing*

*Order of Reference* from the United States District Court for the District of Delaware, dated as of

February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant

to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection

with this Application to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III of

the United States Constitution.

2.        Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The statutory and legal predicates for the relief requested herein are sections 327(e), 328(a), and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

### BACKGROUND

4.        On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

5.        On November 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 188] (the "Committee").

6.        Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration").[2]

### RELIEF REQUESTED

7.        The Debtors request entry of the Proposed Order appointing PKB as special counsel to the Debtors to render professional services in connection with the Independent Director Matters, at the direction of the Independent Directors, in accordance with the terms and conditions set forth

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

in the engagement agreement, dated October 22, 2024 (the "Engagement Agreement"), attached

hereto as Exhibit F.  The Debtors request that the Court approve the retention of PKB to perform

the legal services described herein that will be required during these Chapter 11 Cases.

## BASIS FOR RELIEF REQUESTED

8.      Section 327(e) of the Bankruptcy Code provides that a debtor in possession, subject

to court approval:

> [M]ay employ, for a specified special purpose, other than to represent
> the trustee in conducting the case, an attorney that has represented
> the debtor, if in the best interest of the estate, and if such attorney
> does not represent or hold any interest adverse to the debtor or to the
> estate with respect to the matter on which such attorney is to be
> employed.

9.      Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name
> of the [firm] to be employed, the reasons for the selection, the
> professional services to be rendered, any proposed arrangement for
> compensation, and, to the best of the applicant's knowledge, all of
> the [firm's] connections with the debtor, creditors, any other party in
> interest, their respective attorneys and accountants, the United States
> trustee, or any person employed in the office of the United States
> trustee.

10.     To approve the appointment of special counsel under section 327(e), the Court is

"required to find that: '(1) the representation is in the best interest of the estate, (2) the attorney

represented the debtor in the past, (3) the attorney is for a specific purpose approved by the court,

other than to represent the debtor in conducting the case, and (4) the attorney does not represent or

hold an interest adverse to the debtor or the debtor's estate' with respect to the matter on which the

attorney is to be employed."  In Re Mallinckrodt PLC, Case No. 21-268-LPS, 2022 WL 906462,

at *4 (D. Del. Mar. 28, 2022) (alterations omitted) (quoting Stapleton v. Woodworkers Warehouse,

Inc. (In re Woodworkers Warehouse, Inc.), 323 B.R. 403, 406 (D. Del. 2005)).

11.     Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a). See Meespierson Inc. v. Strategic Telecom Inc., 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.").  Nevertheless, the phrase "does not represent or hold any interest adverse to the debtor or to the estate" requires a determination of "all relevant facts surrounding the debtor's case, including, but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, [and] the expense of replacement counsel . . . ." In re Woodworkers Warehouse, Inc., 323 B.R. 403, 406 (D. Del. 2005).  In general, however, subject to the requirements of sections 327 and 1107, a debtor in possession is entitled to the counsel of its choosing.  In re Vouzianas, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

12.     Moreover, section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment by a debtor in possession under section 327 of the Bankruptcy Code solely because of such person's employment by or representation of the debtor before the commencement of the case.  See 11 U.S.C. § 1107(b).

**PKB'S QUALIFICATIONS**

13.     During these Chapter 11 Cases, the Debtors' restructuring counsel will oversee the general day-to-day administration and prosecution of these Chapter 11 Cases.  The Debtors are seeking to retain PKB to specifically assist the Debtors with the Independent Director Matters.  PKB has expansive experience and knowledge in, among other areas, investigations, complex litigation, and corporate governance matters.  The Firm regularly represents clients in government investigations, civil litigation, and internal investigations, including by private and public company

boards and board committees, special committees, audit committees, and management. The Firm also regularly represents officers, directors, and management in complex civil litigation, chiefly in federal court, and in litigation and investigations brought by various government agencies, including the U.S. Securities and Exchange Commission, Commodity Futures Exchange Commission, and others. The Firm's partners have represented clients in bankruptcy courts, including in investigations and actions brought by the United States Trustee and court-appointed examiners. See In re Revlon, Inc., 2023 WL 2229352 (Bankr. S.D.N.Y. 2023); In re Liquid Holdings Grp., Inc., 2018 WL 6841351 (Bankr. D. Del. 2018); In re Enron Corp., 323 B.R. 857 (Bankr. S.D.N.Y. 2005); In re Refco Inc., 336 B.R. 187 (Bankr. S.D.N.Y. 2006); In re Bernard L. Madoff Inv. Securities LLC, 440 B.R. 243 (Bankr. S.D.N.Y. 2010); In re Lyondell, 2009 WL 1767591 (Bankr. S.D.N.Y. 2009). The partners of the Firm also have extensive government enforcement experience. Mr. Klein, a co-founder of the Firm, served both as an Assistant United States Attorney in the United States Attorney's Office for the Southern District of New York ("SDNY Office") and as counsel with the Enforcement Division of the United States Securities and Exchange Commission. Partners Guy Petrillo and Kevin Puvalowski also served as Assistant United States Attorneys in the SDNY Office. Mr. Petrillo later served as Chief of the Criminal Division of the SDNY Office and Mr. Puvalowski later served as head of the consumer protection and financial enforcement division at the New York State Department of Financial Services. Other Firm partners served, respectively, as Assistant United States Attorneys in the SDNY Office, the Eastern District of New York, and the District of New Jersey.

14.     Moreover, PKB has obtained extensive knowledge of the Debtors and the Independent Director Matters through a prior engagement with the Debtors. In November 2023, the Firm was initially engaged by the Debtors, at the direction of the Board, to investigate certain

matters relating to allegations made in early November 2023 as to FRG's then Chief Executive Officer, Brian Kahn ("Mr. Kahn").[3]  Shortly thereafter, the Debtors retained PKB to conduct an independent investigation (the "Initial Independent Investigation") into whether FRG or any of its directors, officers or employees at the time (aside from Mr. Kahn) were involved in, or had any knowledge of, the Alleged Prophecy Conduct.  During the Initial Independent Investigation, the Firm spent significant time becoming knowledgeable about the Debtors, their financial affairs, and matters that overlap with the Independent Director Matters.  In connection with the Initial Independent Investigation, PKB prepared a preliminary investigative report that was presented to the Board in December 2023.  Following the presentation of its preliminary report, PKB continued working to address various matters ancillary to the Initial Independent Investigation for several months.[4]

15.     In October 2024, the Firm was separately engaged to work under the direction of the Independent Directors in connection with the Independent Director Matters, and began working diligently, under the direction of the Independent Directors, pursuant to the Engagement Agreement.  PKB is continuing to diligently conduct the ongoing investigation.

16.     For the foregoing reasons, the Debtors believe PKB to be well-suited and well-qualified to represent them in connection with the Independent Director Matters in an efficient and timely manner, particularly given PKB's extensive knowledge of the Debtors and the Independent Director Matters.  Accordingly, the retention of the PKB is necessary and in the best interests of the Debtors, their estates, and their creditors.

---

[3]     A criminal information filed in the District of New Jersey, and a contemporaneous complaint filed by the United States Securities and Exchange Commission, against defendant John Hughes, a former officer of investment firm Prophecy Asset Management LP ("Prophecy"), referred to Mr. Kahn as a participant in an alleged securities fraud involving Prophecy (the "Alleged Prophecy Conduct").

[4]     The additional work performed by PKB did not alter the findings presented in the Firm's preliminary report.

## SERVICES TO BE PROVIDED

17.     The Debtors seek the authority to employ and retain PKB to continue to provide advice and services with respect to the Independent Director Matters in accordance with the terms of the Engagement Agreement.  In this role, PKB will act solely at the direction of the Independent Directors.

18.     PKB has indicated its readiness and willingness to act as the Debtors' special counsel in connection with the Independent Director Matters and render the necessary professional services as special counsel to the Debtors acting at the direction of the Independent Directors.  The services to be provided by the Firm will be complementary, rather than duplicative, of the services to be performed by bankruptcy counsel.  The Debtors are mindful of the need to avoid duplication of services, and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of PKB's role as special counsel in connection with the Independent Director Matters.

## PROFESSIONAL FEES

19.     The professional services of the Firm are necessary to ensure that all matters involving the Independent Director Matters, as related to these Chapter 11 Cases, are handled in an efficient, diligent, and expeditious manner.  The Firm has advised the Debtors that, subject to the Court's allowance of compensation and reimbursement of expenses in accordance with applicable general orders and fee guidelines of the Court, sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other or further orders of the Court, it will charge the Debtors for its legal services on an hourly basis in accordance with its ordinary and customary rates for matters of this type in effect on the date such services are rendered, and for reimbursement of certain costs and expenses incurred in connection with these Chapter 11 Cases,

as set forth in the Klein Declaration filed concurrently herewith.

20.    The hourly rates set forth herein and in the Klein Declaration are PKB's standard hourly rates in effect for 2024, which are set at a level designed to fairly compensate the Firm for its work and routine overhead expenses.  The current standard hourly rates for attorneys who may work on this matter range from $675 to $1,385.  The hourly rates for non-legal personnel who may work on this matter range from $295 to $335.  These rates are subject to periodic adjustment to reflect economic and other conditions,[5] and historically have been subject to revision on an annual basis.  The Firm has not agreed to any variations from, or alternatives to, its standard billing arrangements for this engagement.  The following attorneys are currently expected to have primary responsibility for representing the Debtors:

| **Name** | **Year Admitted to the New York Bar** | **Current Hourly Rate** |
|---|---|---|
| Joshua Klein | 1994 | $1,340 |
| Caelyn Stephens | 2016 | $1,075 |
| Cara Hume | 2021 | $785 |

Other lawyers and paraprofessionals will be utilized or consulted and may appear on behalf of the Debtors in these Chapter 11 Cases, as necessary.  None of the professionals included in this engagement vary their rate based on the geographic location of these Chapter 11 Cases.

21.    Additionally, it is the Firm's policy to charge its clients for certain expenses incurred in connection with the client's case or transaction, subject to any modification to such

---

[5]    The Firm, like other law firms, typically increases the hourly billing rate of attorneys and paraprofessionals once a year, which increase includes (i) ordinary step increases related to the advancing seniority or promotion of an attorney or paraprofessional (a "Step Increase") and (ii) periodic rate increases with respect to each level of seniority. The Step Increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines")).

policies that the Firm may be required to make to comply with the applicable general orders of the Court and the U.S. Trustee Guidelines, sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any further order of the Court.  In addition to the Firm's hourly fees, services to be charged may also reflect charges for expenses, such as, if necessary, travel expenses, duplicating costs (only if substantial); messenger and delivery services; overnight mail; staff overtime; and on-line legal research.  The Firm is authorized under the Engagement Agreement to incur all such costs that are reasonable and necessary to this engagement, which may include PKB's engagement of a third-party document and discovery vendor to store and process electronic data and to provide services pursuant to the Firm's direction.  The expenses related to any such third-party service provider, absent subsequent agreement, are to be invoiced to the Debtor in the same manner as the other services.  To the extent that the Firm deems it appropriate to retain the services of one or more expert consultants and thereafter obtains the Debtors' approval, the Firm will invoice expenses from such experts in the same manner.  The Firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients.

22.    PKB has advised the Debtors that it intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges, costs, and expenses incurred in these Chapter 11 Cases.  No promises have been received by the Firm, or any member, counsel, or associate of the Firm, as to payment or compensation in connection with these Chapter 11 Cases other than in accordance with Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Fee Guidelines.

23.    Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and the Proposed Order, the Debtors propose to compensate

PKB for services rendered at its customary hourly rates that are in effect from time to time, as set forth in Klein Declaration, and to reimburse the Firm according to its customary reimbursement policies. The Debtors respectfully submit that the Firm's rates and policies as set forth in the Klein Declaration are reasonable.

### COMPENSATION RECEIVED BY PKB

24.     On October 24, 2024, PKB received an advanced payment retainer in the amount of $75,000 (the "Retainer") in connection with this engagement. At no point did the fees due and owing to PKB exceed the balance of the Retainer. PKB performed a reconciliation of the Retainer against the amount of its prepetition invoice, totaling $67,740. As of the Petition Date, no additional amounts relating to the prepetition period were owing to the Firm from the Debtors. The Firm continues to hold the balance of the Retainer, which will constitute a general retainer as security for any postpetition services and expenses of the Firm. Other than the Retainer and a payment received on August 22, 2024 in connection with the Initial Independent Investigation, as reflected on Exhibit E, the Firm did not receive any other payments from the Debtors during the ninety (90) days immediately preceding the Petition Date.

25.     Pursuant to Bankruptcy Rule 2016(b), PKB has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, counsel, associates, and contract attorneys associated with the Firm or (b) any compensation another person or party has received.

### BEST INTERESTS OF THE DEBTORS

26.     The Debtors have selected PKB as their special counsel to assist them in the Independent Director Matters because of the Firm's substantial experience in investigations and litigation and its  familiarity with the Debtors' businesses and the Independent Director Matters.

The Debtors respectfully submit that retaining the services of the Firm is appropriate and in the best interests of the Debtors to advance these Chapter 11 Cases in an efficient and competent manner.  The Debtors believe that PKB is well qualified to serve as special counsel for the Independent Director Matters.

27.     Accordingly, for the reasons set forth herein, and in the Declarations, the Debtors believe that PKB is well qualified to represent the Debtors as special counsel in these Chapter 11 Cases, and that the retention of the Firm is in the best interests of the Debtors, their estates, and their creditors.

## OTHER PROFESSIONAL RELATIONSHIPS

28.     As PKB is the proposed special counsel for the purpose of advising, assisting, and representing the Debtors on the Independent Director Matters, section 327(e) of the Bankruptcy Code does not require that the Firm be a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.  Rather, section 327(e) of the Bankruptcy Code only requires that the Firm not represent or hold any interest adverse to the Debtors or the estates with respect to the matters on which the Firm is to be employed.

29.     Except as set forth herein, in the Klein Declaration, the partners, counsel, and associates of PKB (i) do not have any connection with any of the Debtors, their affiliates, their creditors, or any other parties in interest, or their respective attorneys and accountants, and (ii) do not hold or represent any interest adverse to the Debtors or their estates with respect to the matters on which the Firm is to be employed.

30.     The Firm will periodically review its files during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, PKB will use reasonable efforts to identify

such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## NOTICE

31.     Notice of this Application has been or will be provided to: (i) the U.S. Trustee; (ii) proposed counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel to the HoldCo Lenders; (vii) counsel to the DIP Agent; (viii) counsel to the DIP Lenders; and (ix) any party that has requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as is just and proper.

Wilmington, Delaware
Dated:  November 26, 2024

*/s/ Christopher P. Meyer*
Christopher P. Meyer
Independent Director of Franchise Group, Inc.
and Freedom VCM Holdings, LLC