## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>**December 17, 2024 at 11:00 a.m. (ET)** |
| | **Objection Deadline:**<br>**December 10, 2024 at 4:00 p.m. (ET)** |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF DUCERA PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby file this application (the "Application"), seeking entry of an order,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>"), authorizing the retention and employment of Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC (collectively, "<u>Ducera</u>") as investment banker to the Debtors effective as of the Petition Date (as defined below) in accordance with the terms and conditions set forth in that certain engagement letter, dated as of June 27, 2024, as amended by that certain amendment to the engagement letter, dated as of October 24, 2024 (as amended, the "<u>Engagement Letter</u>"), copies of which are attached hereto as <u>Exhibit C</u> and <u>Exhibit D</u>, respectively. In support of this Application, the Debtors submit the declaration of Christopher Grubb, a Partner of Ducera, which is attached hereto as <u>Exhibit B</u> (the "<u>Grubb Declaration</u>") and incorporated herein by reference as of fully set forth herein. In further support of this Application, the Debtors respectfully state as follows:

## <u>JURISDICTION AND VENUE</u>

1. The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory and legal predicates for the relief requested herein are sections 105(a), 327(a), and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-2.

## BACKGROUND

4.    On November 3, 2024, (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the Court (the "Chapter 11 Cases").  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    On November 19, 2024**,** the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 188] (the "Committee").

6.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15].

## RELIEF REQUESTED

7.    By this Application, the Debtors seek entry of the Proposed Order, pursuant to sections 105(a), 327(a), and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, authorizing the retention and employment of Ducera, as investment banker to the Debtors, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Engagement Letter.

## DUCERA'S QUALIFICATIONS

8.      As set forth in the Grubb Declaration, Ducera is an investment banking firm that maintains an office headquartered at 11 Times Square, 36th Floor, New York, New York 10036. Ducera's seasoned professionals, with roots in complex corporate finance, offer impartial and independent strategic advice to stakeholders in a broad range of transactions and industry sectors. Ducera specializes in providing clients with leading-edge capital structure, restructuring, M&A, and financing advice, as well as services in workout and bankruptcy situations.

9.      Ducera and its professionals have extensive experience working with financially distressed companies within a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases.  Founded in 2015, Ducera's business reorganization professionals have served as financial and strategic advisors in a number of recent in-court restructurings, including: In re Acorda Therapeutics, Inc., No. 24-22284 (DSJ) (Bankr. S.D.N.Y. May 30, 2024) [Docket No. 257]; In re Enviva Inc., No. 24-10453 (BFK) (Bankr. E.D. Va. May 29, 2024) [Docket No. 629]; In re Invitae Corporation, No. 24-11362 (MBK) (Bankr. N.J. May 3, 2024) [Docket No. 432]; In re Casa Systems, Inc., No. 24-10695 (KBO) (Bankr. Del. May 1, 2024) [Docket No. 256]; In re Revitalid Pharm. Corp., No. 23-11704 (BLS) (Bankr. D. Del. Nov. 15, 2023) [Docket No. 105]; In re Yellow Corp., No. 23-11069 (CTG) (Bankr. D. Del. Sept. 25, 2023) [Docket No. 648]; In re Diebold Holding Co., LLC, No. 23-90602 (DRJ) (Bankr. S.D. Tex. July 18, 2023) [Docket No. 266]; In re Virgin Orbit Holdings, Inc., No. 23-10405 (KBO) (Bankr. D. Del. May 15, 2023) [Docket No. 261]; In re Core Scientific, Inc., Case No. 22-90341 (DRJ) (Bankr. S.D. Tex. March 13, 2023) [Docket No. 675]; In re Endo Int'l plc., Case No. 22-22549 (JLG) (Bankr. S.D.N.Y. Oct. 25, 2022) [Docket No. 527]; In re GBG USA Inc., Case No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 22, 2021) [Docket No. 230]; In re Mallinckrodt plc, Case No. 20-12522 (JTD) (Bankr. D.

Del. Mar. 16, 2021) [Docket No. 1741]; In re Superior Energy Servs., Inc., Case No. 20-35812 (DRJ) (Bankr. S.D. Tex. Feb. 2, 2021) [Docket No. 316]; In re Remington Outdoor Co., Case No. 20-81688 (CRJ11) (Bankr. N.D. Ala. Aug. 11, 2020) [Docket No. 283]; In re Imerys Talc Am., Inc., Case No. 19-10289 (LSS) (Bankr. D. Del. Aug. 7, 2019) [Docket No. 927]; In re Paniolo Cable Co., LLC, Case No. 18-01319 (RJF) (Bankr. D. Haw. May 7, 2019) [Docket No. 121]; In re Specialty Retail Shops Holding Corp., Case No. 19-80064 (TLS) (Bankr. D. Neb. Jan. 25, 2019) [Docket No. 185]; In re Sungevity, Inc., Case No. 17-10561 (KG) (Bankr. D. Del. Apr. 10, 2017) [Docket No. 202]; In re Toys "R" Us, Inc., Case No. 17-34665 (KLP) (Bankr E.D. Va. Jan. 26, 2018) [Docket No. 1624]; In re Panda Temple Power, LLC, Case No. 17-10839 (LSS) (Bankr. D. Del. May 25, 2017) [Docket No. 164]; In re Dacco Transmission Parts (NY), Inc., Case No. 16-13245 (MKV) (Bankr. S.D.N.Y. Jan. 17, 2017) [Docket No. 205]; In re Hercules Offshore, Inc., Case No. 16-11385 (KJC) (Bankr. D. Del. Aug. 23, 2016) [Docket No. 334]; In re Illinois Power Generating Co., Case No. 16-36326 (MI) (Bankr. S.D. Tex. Jan. 25, 2017) [Docket No. 169]; and In re Paragon Offshore PLC, Case No. 16-10386 (JKS) (Bankr. D. Del. May 16, 2017) [Docket No. 1503]. Ducera has experience in a variety of industries, providing specialized advice on matters including, but not limited to, restructurings, mergers, acquisitions, financings, capital structure advisory, and chapter 11 sales.

10. As an internationally recognized advisory firm, Ducera has an excellent reputation for advising both debtors and creditors in large and complex chapter 11 cases. The Debtors believe that Ducera and its professionals are well qualified to serve as its investment banker in these Chapter 11 Cases.

## SCOPE OF SERVICES

11.     Consistent with the terms of the Engagement Letter, Ducera will assist the Debtors

with their various operational, administrative, financial, and transaction needs arising in

connection with these Chapter 11 Cases.  More specifically, Ducera's services will include the

following:[2]

(a)     General Financial Advisory Services

    (i)     familiarizing itself with the business, operations, financial condition, financial statements, business plans, forecasts, prospects, and capital structure of the Debtors;

    (ii)     assisting the Debtors with the development of financial data and presentations to the Debtors and their board(s) of directors, various creditors, and other parties;

    (iii)     analyzing the Debtors' liquidity and evaluating alternatives to improve such liquidity;

    (iv)     assisting with the evaluation of the Debtors' valuation, debt capacity and alternative capital structures in light of their projected cash flow;

    (v)     providing such other advisory services as may be agreed upon by Ducera and the Debtors; and

    (vi)     participating in conference calls or meeting with the Debtors' lenders;

(b)     Restructuring Services

    (i)     analyzing various restructuring scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of stakeholders;

    (ii)     providing strategic advice with regard to restructuring or refinancing the Debtors' Existing Obligations including, but not limited to, negotiating interim amendments with holders of Existing Obligations;

    (iii)     providing financial advice and assistance to the Debtors in developing a Restructuring;

---

[2]     To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.  Capitalized terms used but not defined herein shall have the meaning given to them in the Engagement Letter.

(iv) providing financial advice and assistance to the Debtors in structuring any new securities to be issued under a Restructuring; and

(v) assisting the Debtors and/or participating in negotiations with entities or groups affected by the Restructuring;

(c) <u>Financing Services</u>

(i) providing financial advice to the Debtors in connection with the structure and effectuation of a Financing, including the arrangement of third-party DIP financing or third-party exit financing, identifying potential investors and, at the Debtors' request, contacting and soliciting such investors; and

(ii) assisting with the arrangement of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing;

(d) <u>Transaction Services</u>

(i) providing financial advice to the Debtors in structuring, evaluating and effectuating a Transaction involving the Debtors' whole business or individual businesses, including Pet Supplies Plus, Vitamin Shoppe, Buddy's, and American Freight;

(ii) identifying potential Transaction counterparties and, if requested, contacting and soliciting potential counterparties;

(iii) analyzing various Transaction scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of potential stakeholders impacted by the Transaction; and

(iv) assisting with the arrangement and execution of a Transaction, including identifying potential counterparties or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Transaction.

12. Notwithstanding anything contained in the Application or the Engagement Letter to the contrary, Ducera shall have no responsibility for designing or implementing any initiatives to improve the Debtors' operations, profitability, cash management or liquidity or to provide any fairness, valuation, or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities of the Debtors or any other party. Ducera makes no representations or warranties about the Debtors' ability to (a) successfully improve the Debtors' operations, (b) maintain or secure sufficient liquidity to operate the Debtors' business, or (c) successfully

complete a Restructuring, Financing, and/or Transaction. Ducera has been retained solely to provide advice and services regarding the transactions contemplated by the Engagement Letter. Ducera's engagement does not encompass providing "crisis management." The advisory services and compensation arrangements set forth in the Engagement Letter do not encompass any investment banking services or transactions that may be undertaken by Ducera at the request of the Debtors, or any other specific services not set forth in the Engagement Letter, including, without limitation, valuation, fairness, or solvency opinion related services. The terms and conditions of such investment banking services, including compensation and arrangements, would be set forth in a separate written letter agreement between Ducera and the Debtors.

## NO DUPLICATION OF SERVICES

13.     The services that Ducera will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the services will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 Cases. Specifically, Ducera will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

14.     Investment bankers such as Ducera do not typically charge for their services on an hourly basis. Instead, they customarily charge periodic retainer fees plus additional fees that are contingent upon the occurrence of a specified type of transaction. The compensation arrangements that have been negotiated between Ducera and the Debtors are highly beneficial to the Debtors as they provide certainty and proper inducement for Ducera to act expeditiously and prudently with respect to the matters for which it will be employed. Accordingly, because the Debtors are seeking

to retain Ducera under section 328(a) of the Bankruptcy Code, the Debtors believe that Ducera's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code, and such compensation does not constitute a "bonus" or fee enhancement under applicable law.

15.     In consideration of the services to be provided by Ducera, and as more fully described in the Engagement Letter, subject to the Court's approval, the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, the Debtors have agreed to pay Ducera the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"), which may be summarized as follows:

(a)     **Monthly Advisory Fee**: A monthly fee in the amount of $175,000 per month, commencing as of June 15, 2024, which shall be due and payable until the termination of Ducera's services pursuant to the Engagement Letter; *provided*, that the Company shall receive a discount of $87,500 per month against any Transaction Fee for each month the Monthly Advisory Fee is paid commencing after payment of the third (3rd) full Monthly Advisory Fee (the "Ducera Discount"); *provided*, *further*, however, that the Ducera Discount shall only apply if any and all outstanding invoices for Monthly Advisory Fees have been paid before, or in connection with, the consummation of a Transaction.

(b)     **In-Court Restructuring Fee**:  For Restructuring Services rendered to the Debtors in accordance with Section 1(b) of the Engagement Letter, an In-Court Restructuring Fee, which shall be earned and payable upon the consummation of a Restructuring.  The In-Court Restructuring Fee shall equal 75.0 basis points of the principal amount of Existing Obligations subject to the Restructuring.

(c)     **Transaction Fee**: For Transaction Services rendered in accordance with Section 1(d) of the Engagement Letter, a Transaction Fee, which shall be due and payable upon consummation of each Transaction involving the Debtors' whole business and/or individual businesses, including Pet Supplies Plus, Vitamin Shoppe, Buddy's, and American Freight. The Transaction Fee shall be calculated based on the Transaction Value set forth

in the table below, with the applicable percentage applied using a continuous linear sliding scale:[3]

| Transaction Value Component | Applicable Fee % for Transaction Value Component |
|:---:|:---:|
| $100,000,000 or less | 2.000% |
| $200,000,000 | 1.650% |
| $300,000,000 | 1.500% |
| $400,000,000 | 1.400% |
| $500,000,000 | 1.300% |
| $600,000,000 | 1.200% |
| $700,000,000 | 1.150% |
| $800,000,000 | 1.100% |

---

[3]    For the purposes of the Engagement Letter, the term "**Transaction Value**" means the total value of all consideration paid or received or to be paid or received, directly or indirectly, in connection with a Transaction, including: (a) all cash (including escrowed amounts, and other withheld amounts) paid or payable to the Company or its shareholders (including indemnity and net working capital escrow amounts); (b) the fair market value of all securities, notes, debt, and other property issued or delivered or to be issued or delivered to or by the Company or its shareholders (including holders of the Company's or any of its subsidiaries' common stock, preferred stock, options and warrants, and holders of Awards); (c) liabilities, including all debt, pension liabilities and guarantees, plus any amount required to be shown, pursuant to U.S. generally accepted accounting principles, on a consolidated balance sheet of the company as of the most recent quarterly consolidated balance sheet date for capitalized leases, in all cases provided that such liabilities, indebtedness or capital leases are still outstanding as of the closing date of the Transaction and directly or indirectly assumed, refinanced, extinguished or consolidated by the acquiror, and excluding any substitution of a purchaser on bonds issued and outstanding by a surety and working capital items; (d) the amount of all installment payments to be made to the Company or its shareholders; (e) amounts paid or payable to the Company's direct or indirect securityholders and management under consulting, non-compete or similar agreements; (f) the value of any contingent payments if and when earned and paid; (g) if an Transaction includes the disposition of assets, the value of net current assets not sold; (h) the amount of any extraordinary dividends or distributions paid to or by the Company's securityholders (including holders of Awards); and (i) if a Transaction takes the form of a recapitalization, restructuring or similar transaction, the fair market value of equity securities retained, directly or indirectly, by the Company's securityholders (including holders of Awards) upon consummation of such an Transaction (such securities and all other securities received by such securityholders being deemed to have been paid to such security holders in such sale transaction). For purposes of computing Transaction Value hereunder, noncash consideration will be valued as follows: (x) publicly traded securities will be valued at the average of their closing prices (as reported in *The Wall Street Journal* or other reputable source reasonably designated by Ducera if *The Wall Street Journal* does not publish such closing prices) for the five (5) trading days prior to the closing of an Transaction, (y) options will be valued using the treasury stock method without giving effect to tax implications, and (z) the value of any cash held at the company, the value of all installment or any contingent payments to be made to the company or its shareholders in an Transaction (including Awards) or non-cash consideration will be determined in good faith by and between Ducera and the Company.

| | |
|---|---|
| $900,000,000 | 1.050% |
| $1,000,000,000 | 1.000% |
| $1,250,000,000 | 0.925% |
| $1,500,000,000 | 0.850% |
| $1,750,000,000 | 0.775% |
| $2,000,000,000 or more | 0.700% |

*Notwithstanding anything else contained herein,* the minimum Transaction Fee for each and any distinct Transaction shall be $2,500,000, *except* for a Transaction involving the Debtors' Buddy's Home Furnishings business, for which the minimum Transaction Fee shall be $2,000,000. Fifty percent (50%) of the aggregate Transaction Fees payable to Ducera shall be credited against any In-Court Restructuring Fee.

(d)  **Financing Fee**: For Financing Services rendered to the Debtors in accordance with Section 1(c) of the Engagement Letter, a Financing Fee, which shall be earned and payable upon the closing of a Financing; *provided, however, for the avoidance of doubt*, a Financing Fee shall not be earned nor payable in conjunction with either (i) a securitization transaction involving the Debtors' Pet Supplies Plus business or any re-syndication of the asset backed lending facility ("ABL") by JP Morgan Chase & Co. or any affiliate thereof, or (ii) any DIP financing or exit financing provided by the lenders under the ABL, that certain First Lien Credit Agreement, dated as of March 10, 2021, that certain Second Lien Credit Agreement, dated as of March 10, 2021, and/or that certain HoldCo Credit Agreement, dated as of August 21, 2023.

The Financing Fee shall equal:

  i.  1.50% of the face amount of senior secured debt (including, but not limited to, revolving credit and asset backed lending facilities) Raised;[4] *plus*

  ii.  3.00% of the face amount of any unsecured or junior secured

---

[4]  For purposes of the Engagement Letter, the term "**Raised**" shall mean the total amount committed by an Investor on terms acceptable to the Debtors, irrespective as to whether or not the Debtors draw any or all of the amount committed by an Investor, and whether or not the Debtors apply such amounts to finance any of their obligations or a transaction. *For illustrative purposes*, in connection with any revolving credit or asset backed lending facilities, all fees set forth in Section 2 of the Engagement Letter shall be calculated based on the total amount of the facility, including any letters of credit, irrespective as to whether the Debtors are permitted immediately to draw upon the full amount of facility, including borrowing base, at the time of commitment.

debt Raised; *plus*

    iii.    5.00% of any equity capital, convertible, or hybrid capital, including warrants, or similar contingent equity securities Raised.

(e)    **Expense Reimbursement**: The Debtors shall reimburse Ducera at cost for its reasonable and documented out-of-pocket expenses including, but not limited to, travel and transportation expenses, third party research and telecommunication expenses, printing costs, courier and other shipping and mailing costs incurred in connection with providing the services described herein and in the Engagement Letter, including the reasonable and documented expenses of Ducera's external legal counsel; *provided*, *however*, that the out-of-pocket expenses shall not exceed $25,000 in the aggregate without the prior consent of the Debtors and any expenses in excess of $15,000 will require prior written consent of the Debtors (email to be sufficient); *provided*, *further*, that the foregoing shall be expressly subject to the Terms and Conditions set forth in Annex A to the Engagement Letter and shall not limit any obligations of the Debtors to Ducera thereunder.

16.    The Debtors and Ducera acknowledge and agree that the Debtors are under no obligation to consummate any Restructuring, Financing, and/or Transaction as set forth in the Engagement Letter and, in the event the Debtors are unable or unwilling to do so, the Debtors will have no obligation or liability (other than the Terms and Conditions set forth in Annex A to the Engagement Letter) to Ducera due up to the date of termination of this Agreement. The Debtors and Ducera further acknowledge and agree that: (a) hours worked, (b) the results achieved, and (c) the ultimate benefit to the Debtors of the work performed, in each case, in connection with this engagement, may be variable, and that the Debtors and Ducera have taken such factors into account in setting the fees under the Engagement Letter. To the extent further services are requested by the Debtors, the Debtors and Ducera acknowledge and agree to negotiate in good faith a reasonable scope of services and fee structure in connection with any such further services provided by Ducera, depending on the size, scope, and nature of the services to be provided.

17.     Ducera will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases.

**THE FEE AND EXPENSE STRUCTURE IS APPROPRIATE AND REASONABLE**

18.     The Debtors believe that the Fee and Expense Structure summarized above and described more fully in the Engagement Letter is comparable to compensation arrangements entered into by Ducera and other comparable firms rendering similar services under similar circumstances and is reasonable, market-based, and merited by Ducera's expertise.  The Debtors submit that the Fee and Expense Structure is designed to compensate Ducera fairly for its work and to cover customary expenses.

19.     The Fee and Expense Structure summarized above and described more fully in the Engagement Letter is consistent with Ducera's normal and customary billing practices for comparably sized and complex cases and transactions, both in- and out-of-court, involving the services to be provided in connection with these Chapter 11 Cases.

20.     Other than as set forth in this Application or in the Engagement Letter, there is no proposed arrangement between the Debtors and Ducera for compensation to be paid in these Chapter 11 Cases.  Ducera has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

21.     Ducera is not a creditor of the Debtors' estates and has been fully paid by the Debtors for all prepetition services rendered by Ducera to the Debtors.

**RECORD KEEPING AND APPLICATIONS FOR COMPENSATION**

22.     The Debtors respectfully request that Ducera's professionals only be required to maintain records (in summary format) of the services rendered to the Debtors, including (a) summary descriptions of those services, (b) the approximate time expended in providing those

13

services in half-hour (0.5) increments, and (c) the identity of the professionals who provided those services.  Consistent with industry practice, investment banking firms—including Ducera—do not maintain time records on a "project category" basis similar to those customarily kept by attorneys and required by Local Rule 2016-2(d).  Pursuant to Local Rule 2016-2(h), Ducera should be excused from compliance with such information requirements set forth in Local Rule 2016-2(d) with respect to Ducera's professional fees only.  Ducera should be required to maintain time records in half-hour (0.5) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

23.    The Debtors further respectfully request that Ducera's professionals not be required to keep time records on a "project category" basis, and that its non-investment banking professionals and personnel in administrative departments not be required to maintain time records.  To the extent that Ducera would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court modify such requirements.

24.    Ducera will file its own fee applications for its respective fees and expenses and, in connection therewith, Ducera will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services in accordance with its past practice.  Ducera will present such records to the Court in its fee applications.  Ducera's applications for compensation and expense reimbursement will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with Local Rule 2016-2(e) and any applicable procedures established by the Court.

**INDEMNIFICATION**

25.     The Engagement Letter provides for indemnification and limitation of liability (the "Indemnification Provisions") with respect to Ducera and its professionals relating to the above summarized services which are reasonable and necessary under the circumstances.

26.     Consistent with the practice in this jurisdiction, the Debtors request that the Court approve the Indemnification Provisions reflected in the Engagement Letter, subject to the following modifications:

(a)     No Indemnified Person (as defined in the Engagement Letter) shall be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b)     The Debtors shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from such Indemnified Person's bad faith, gross negligence, willful misconduct, fraud, breach of fiduciary duty, if any, or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of Ducera's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible under applicable law; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the Order; and

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 Cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and reimbursement obligations under the Engagement Letter (as modified by the Proposed Order), including, without limitation, the advancement of defense costs, Ducera must file an application therefor in the Court, and the Debtors may not pay any such amounts to Ducera before the entry of an order by the Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by

Ducera and the other Indemnified Persons for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Persons. All parties in interest, including, for the avoidance of doubt, the United States Trustee, shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, or reimbursement.

27.    The Debtors and Ducera believe that the Indemnification Provisions contained in the Engagement Letter are customary and reasonable for financial and investment advisory engagements, both in- and out-of-court, and, as modified by the Proposed Order, reflect customary qualifications and limitations on indemnification provisions.

28.    The terms and conditions of the Engagement Letter were negotiated by the Debtors and Ducera at arm's length and in good faith. The Debtors respectfully submit that the Indemnification Provisions and other provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Ducera's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors.

## NO DUPLICATION OF SERVICES

29.    Ducera's services are intended to complement, and not duplicate, the services to be rendered by any other professional retained by the Debtors in these Chapter 11 Cases. Ducera has informed the Debtors that it understands that the Debtors have retained, and may retain, additional professionals during the term of the engagement and Ducera will use its reasonable efforts to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## BASIS FOR RELIEF

30.    The Debtors seek authority to retain and employ Ducera as their investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are

disinterested persons, to represent or assist the [Debtors] in carrying out [their] duties under this title." See 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." See 11 U.S.C. § 1107(b).

31.     In addition, the Debtors seek approval of the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." See 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial and transaction advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (citations omitted), cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC), 383 B.R. 869, 874 (S.D.N.Y.

17

2008).  Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.  See, e.g., In re Sequential Brands Group, Inc., Case No. 21-11194 (JTD) (Bankr. D. Del. Oct. 4, 2021); In re Chaparral Energy, Inc., Case No. 16-11144 (LSS) (Bankr. D. Del. June 10, 2016); In re Energy & Exp. Partners, Inc., Case No. 15-44931 (RFN) (Bankr. N.D. Tex. Feb. 8, 2016).

32.    Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).  This change makes clear that the Debtors are able to retain a professional on a fixed or percentage fee basis, with bankruptcy court approval.

33.    Accordingly, the Debtors believe that Ducera's retention on the terms and conditions proposed herein is appropriate.

## DUCERA'S DISINTERESTEDNESS

34.    As noted above, Ducera has provided prepetition financial and restructuring services to the Debtors.  Prior to the commencement of these Chapter 11 Cases, Ducera has received $1,058,522.51 from the Debtors for payment of services performed and reimbursement of expenses incurred prior to the Petition Date.

35.    To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Grubb Declaration: (a) Ducera is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does

not hold or represent an interest materially adverse to the Debtors' estates; and (b) Ducera has no connection to the Debtors, their creditors, or other parties in interest in these Chapter 11 Cases.

36.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Ducera's retention are discovered or arise, Ducera will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## NOTICE

37.     Notice of this Application has been or will be provided to: (i) the U.S. Trustee; (ii) proposed counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel to the HoldCo Lenders; (vii) counsel to the DIP Agent; (viii) counsel to the DIP Lenders; and (ix) any party that has requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court: (a) enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein; and (b) grant such other and further relief as the Court deems appropriate under the circumstances.

Dated: November 26, 2024
        Wilmington, Delaware

        **Franchise Group, Inc.,** *et. al.*
        **Debtors and Debtors in Possession**

        */s/ David Orlofsky*
        David Orlofsky
        Chief Restructuring Officer