## **EXHIBIT C**

**Engagement Letter**

# Ducera

Ducera Partners LLC
11 Times Square
36th Floor
New York, NY 10036

June 27, 2024

p (212) 671-9700

DuceraPartners.com

**CONFIDENTIAL**

Franchise Group, Inc.
109 Innovation Court
Suite J
Delaware, OH 43015

Ladies and Gentlemen:

This engagement letter (this "**Agreement**") confirms the understanding and agreement between Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC, (collectively, "**Ducera**") and Franchise Group, Inc. as set forth herein. For purposes of this Agreement, Franchise Group, Inc., including any and all affiliates and subsidiaries, shall be referred to herein collectively as, the "**Company**." This Agreement also confirms the agreement of the Company to perform its obligations, and make applicable acknowledgements, as expressly set forth herein.

**Section 1.    Scope of Engagement and Services**. During the Term (as defined in **Section 8**), Ducera shall provide financial advisory services to the Company, including the Board of Directors of the Company (collectively, the "**Board**"), as the case may be, relating to the services set forth herein:

(a)    *General Financial Advisory Services.* Ducera shall, as requested by the Company: (1) familiarize ourselves with the business, operations, financial condition, financial statements, business plans, forecasts, and capital structure of the Company; (2) assist with the development of financial data and presentations to the Company and the Board, various creditors, and other parties; (3) analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity; (4) assist with the evaluation of the Company's valuation, debt capacity and alternative capital structures in light of its projected cash flow; (5) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by this Agreement, and (6) participate in regular conference calls and/or meetings with the Lenders (as defined in the HoldCo Credit Agreement).[1]

(b)    *Restructuring Services.*[2] Ducera shall: (1) analyze various Restructuring

---

[1]    The Company is obligated to provide access to its financial consultant as set forth in section 5.17(c) of the second amendment to that certain HoldCo Credit Agreement, dated August 21, 2023.

[2]    For purposes of this Agreement, the term "**Restructuring**" shall mean any restructuring, reorganization, modification, rescheduling and/or recapitalization (whether or not pursuant to one or more proceedings voluntarily or involuntarily commenced under chapters 7 or 11 of title 11 of the United States Code, 11 U.S.C. 101–1532 (as amended, the "**Bankruptcy Code**") or any cases converted thereto (the "**Bankruptcy Cases**" and the court having jurisdiction over such cases, the "**Bankruptcy Court**")) of the Company's Existing Obligations (as defined herein) that is achieved through, without limitation, (a) a solicitation of waivers and consents from the holders of Existing Obligations; (b) rescheduling of the maturities of Existing Obligations; (c) a change in interest rates, repurchase, settlement, repayment, or forgiveness of Existing Obligations; (d) a material amendment to the terms of

1

scenarios and the potential impact of these scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring; (2) provide strategic advice with regard to restructuring or refinancing the Company's Existing Obligations including, but not limited to, negotiating interim amendments with holders of Existing Obligations;[3] (3) provide financial advice and assistance to the Company in developing a Restructuring; (4) in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under a Restructuring; and (5) assist the Company and/or participate in negotiations with entities or groups affected by the Restructuring.

        (c)     *Financing Services.*[4] If requested by the Company in writing (email to be

---

Existing Obligations; (e) conversion of all or a portion of Existing Obligations into equity; (f) an exchange offer, or an amend-and-extend involving the issuance of new loans and/or securities in exchange for Existing Obligations (excluding, for the avoidance of doubt, any general forbearance granted by holders of Existing Obligations); or (g) the issuance of new loans and/or securities, or other similar transaction or series of transactions (excluding, for the avoidance of doubt, any issuance of loans and/or securities completed outside of a Restructuring and provided for in a Financing (as defined herein)).

*Notwithstanding anything else contained herein*, a Restructuring shall not include any Excluded Transaction. For purposes of this Agreement, the term "**Excluded Transaction**" shall mean:

- a) The consummation of the proposed fourth amendment to that certain First Lien Credit Agreement, dated as of March 10, 2021, that is being negotiated concurrently with the execution of this Agreement ("**1L Amendment**");
- b) The consummation of the proposed fifth amendment to that certain Second Lien Credit Agreement, dated as of March 10, 2021, that is being negotiated concurrently with the execution of this agreement ("**2L Amendment**");
- c) The consummation of the proposed third amendment to that certain HoldCo Credit Agreement, dated August 21, 2023, that is being negotiated concurrently with the execution of this Agreement ("**HoldCo Amendment**");
- d) The consummation of par, out-of-court debt repayments made from proceeds of: (i) a Pet Supplies Plus securitization, sale or merger or acquisition, (ii) a Vitamin Shoppe merger or acquisition, (iii) a American Freight sale or merger or acquisition, and/or (iv) a Buddy's merger or acquisition; and
- e) The sale of any of the Company's assets pursuant to section 363 of the Bankruptcy Code, including a sale of all or substantially all of the Company's assets, or any liquidation or wind down of the Company (whether in Bankruptcy Court or otherwise).

For the avoidance of doubt, any Restructuring distributing or otherwise utilizing the proceeds of one or more transactions described in d) or e) above shall <u>not</u> be an Excluded Transaction.

[3]     For purposes of this Agreement, the term "**Existing Obligations**" shall mean the material outstanding indebtedness of the Company including, but not limited to, bank debt, bond debt, asset backed lending facilities, term loans, credit facilities, trade claims, leases (both on and off-balance sheet), pension obligations, litigation-related claims and obligations, other on and off-balance sheet indebtedness, workers' compensation claims and obligations, and other liabilities.

[4]     For purposes of this Agreement, the term "**Financing**" shall mean a private issuance, sale, or placement of equity, equity-linked instruments, preferred equity (including warrants or hybrid capital), convertible debt, or other financing instruments, obligations, or debt (including, but not limited to, revolving credit and asset backed lending facilities, and debtor-in-possession financing) of the Company with one or more lenders and/or investors, or any other type of equity, loan, financing, debt, or rights offering (each such lender or investor, an

sufficient), Ducera shall: (1) provide financial advice to the Company in connection with the structure and effectuation of a Financing, identify potential Investors and, at the Company's request, contact and solicit such Investors; and (2) assist with the arrangement of a Financing, including identifying potential sources of capital, assisting with the due diligence process, and negotiating the terms of any proposed Financing; *provided*, *however*, it is understood that nothing contained herein shall constitute an express or implied commitment by Ducera to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

(d)    *Transaction Services*.[5]  If requested by the Company in writing (email to be sufficient), Ducera shall: (1) provide financial advice to the Company in structuring, evaluating and effectuating a Transaction, identify potential counterparties and, if requested, contact and solicit potential counterparties; (2) analyze various Transaction scenarios and the potential impact of these scenarios on the value of the Company and the recoveries of potential stakeholders impacted by the Transaction; and (3) assist with the arrangement and execution of a Transaction, including identifying potential counterparties or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Transaction.

(e)    *Generally*. *Notwithstanding anything contained in this Agreement to the contrary*, Ducera shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity or to provide any fairness, valuation, or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities of the Company or any other party.  Ducera makes no representations or warranties about the Company's ability to (1) successfully improve the Company's operations, (2) maintain or secure sufficient liquidity to operate the Company's business, or (3) successfully complete a Restructuring, Financing, and/or Transaction.  Ducera is retained under this Agreement

---

"**Investor**"); *provided*, *however*, the term "**Financing**" shall not include any Financing raised in conjunction with an Excluded Transaction.

[5]    For purposes of this Agreement, the term "**Transaction**" shall mean any transaction or series of transactions (other than a Restructuring or Financing) involving: (a) an acquisition, merger, consolidation, sale, or other business combination pursuant to which the business or a material portion of the assets of another legal entity, individual, or the Company (including, for avoidance of doubt, any material subsidiary thereof) are, directly or indirectly, combined with, or acquired by, another legal entity, individual, or the Company (including, for avoidance of doubt, any material subsidiary thereof; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act or 1934, as amended) of equity interests or options, or any combination hereof, constituting a majority of the then-outstanding stock of the Company (including, for avoidance of doubt, any material subsidiary thereof) or possessing a majority of the then-outstanding voting power of or by the Company (including, for avoidance of doubt, any material subsidiary thereof) ("**Voting Stock**"); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers or a majority of the assets or Voting Stock of or by the Company (including, for avoidance of doubt, any material subsidiary thereof); or (d) the formation of a joint venture partnership or similar entity with the Company (including, for avoidance of doubt, any material subsidiary thereof) or direct investment in the Company (including, for avoidance of doubt, any material subsidiary thereof) for the purposes of effecting a transfer of a majority of the Voting Stock of the Company (including, for avoidance of doubt, any material subsidiary thereof) to a third party, a lease of a material portion of the assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, or any similar transaction; *provided*, *however*, the term "**Transaction**" shall not include an Excluded Transaction unless requested by the Company in writing (email to be sufficient).

3

solely to provide advice and services regarding the transactions contemplated by this Agreement. Ducera's engagement does not encompass providing "crisis management." The advisory services and compensation arrangements set forth in this Agreement do not encompass investment banking services or transactions that may be undertaken by Ducera at the request of the Company, or any other specific services not set forth in this Agreement, including, without limitation, valuation, fairness, or solvency opinion related services. The terms and conditions of such investment banking services, including compensation and arrangements, would be set forth in a separate written letter agreement between Ducera and the Company.

**Section 2.** **Compensation**. Subject to **Section 8**, in consideration of Ducera's services set forth in **Section 1**, the Company agrees to pay Ducera:

(a) A nonrefundable monthly cash fee of $175,000 (the "**Monthly Advisory Fee**"). The Monthly Advisory Fee shall commence as of June 15, 2024, and shall be due and payable on each month thereafter until the termination of Ducera's services pursuant to this Agreement. The Company shall receive a discount of $87,500 per month against any transaction fee set forth herein for each month the Monthly Advisory Fee is paid commencing after payment of the third (3rd) full Monthly Advisory Fee (the "**Ducera Discount**"); *provided*, *however*, the Ducera Discount shall only apply if any and all outstanding invoices for Monthly Advisory Fee have been paid before, or in connection with, the consummation of a transaction; *plus,*

(b) For services rendered in accordance with **Section 1(b)**, a restructuring fee, which shall be earned and payable upon consummation of an Out-of-Court Restructuring (the "**Out-of-Court Restructuring Fee**").[6] The Out-of-Court Restructuring Fee shall equal: (x) 37.5 basis points of the principal amount of Existing Obligations subject to the Restructuring that require 50.1% or less consents; and (y) 75.0 basis points of principal amount of Existing Obligations subject to the Restructuring that require greater 50.1% consents.

(c) Solely in the event of a Bankruptcy Case, for services rendered in accordance with **Section 1(b)**, a restructuring fee, which shall be earned and payable upon consummation of a Restructuring (the "**In-Court Restructuring Fee**").[7] The In-Court Restructuring Fee shall equal 75.0 basis points of the principal amount of Existing Obligations subject to the Restructuring.

(d) For services rendered in accordance with **Section 1(c)** and/or **Section 1(d)**,

---

[6] For purposes of this Agreement, the term "**Out-of-Court Restructuring**" shall mean a Restructuring that takes place other than through case(s) voluntarily commenced under the Bankruptcy Code in Bankruptcy Court; provided, however, the term "**Out-of-Court Restructuring**" shall not include an Excluded Transaction. For purposes of this Agreement, an Out-of-Court Restructuring shall be deemed to have been consummated upon the closing of the applicable transaction by which the Existing Obligations of the Company are to be restructured or refinanced (including, for avoidance of doubt, a payment in full of the Existing Obligations).

[7] For purposes of this Agreement, the term "**In-Court Restructuring**" shall mean a Restructuring that is achieved through case(s) voluntarily commenced under the Bankruptcy Code in Bankruptcy Court, including any pre-arranged bankruptcy; provided, however, the term "**In-Court Restructuring**" shall not include an Excluded Transaction. For purposes of this Agreement, an In-Court Restructuring shall be deemed to have been consummated upon the date that the applicable Chapter 11 plan of reorganization becomes effective in accordance with the terms and conditions thereof.

4

if any, the Company and Ducera each acknowledge and agree to negotiate in good faith a reasonable fee structure, reflecting the size, scope, and nature of services rendered or to be rendered.

(e) The Company and Ducera acknowledge and agree that the Company is under no obligation to consummate any Restructuring, Financing, and/or Transaction as set forth herein and, in the event the Company is unable or unwilling to do so, the Company will have no obligation or liability (other than the Terms and Conditions set forth in **Annex A**) to Ducera other than the payment of the Monthly Advisory Fee due up to the date of termination of this Agreement. The Company and Ducera further acknowledge and agree that: (1) hours worked, (2) the results achieved, and (3) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Ducera have taken such factors into account in setting the fees hereunder. To the extent further services are requested by the Company in writing (email to be sufficient), the Company and Ducera acknowledge and agree to negotiate in good faith and to prepare an amendment to this Agreement setting forth a reasonable scope of services and fee structure in connection with any such further services provided by Ducera, depending on the size, scope, and nature of the services to be provided, as well as any discount for payments rendered in connection with the scope of services set forth in Section 1.

**Section 3.    Expenses and Payments**. In addition to the fees set forth in **Section 2**, the Company agrees upon request to promptly reimburse Ducera for its reasonable and documented out-of-pocket expenses up to $25,000 (absent the prior consent of the Company), including, but not limited to, travel and transportation expenses incurred at the request of the Company, third party research and telecommunication expenses, printing costs, courier and other shipping and mailing costs, as well as the reasonable expenses of Ducera's external legal counsel, other professional advisors (where prior written consent to Ducera's engagement of such external legal counsel and/or other professional advisors has been granted by the Company) and other expenses incurred in connection with Ducera's engagement or the performance of services hereunder or any other assignments undertaken by Ducera at the Company's request; *provided*, *however*, (1) that any expenses in excess of $15,000 shall require the Company's prior written consent (email to be sufficient); (2) that payment of any expenses shall in no way affect the Company's obligations as set forth in **Annex A** hereto; and (3) that any expenses not directly incurred in connection with this Agreement, including Ducera's selling, general and administrative expenses, will not be reimbursed by the Company. All payments due under this Agreement (including under **Section 2** and **Section 3** hereof) shall be made in U.S. dollars in immediately available funds, free and clear of any set off, claim and applicable taxes (with appropriate gross up for any taxes withheld).

**Section 4.    Information and Announcements**.

(a) Ducera's advice hereunder is intended solely for the benefit of the Company, and for the use by the Board and the Company (including its officers and employees, in their respective capacities as directors, officers and employees of the Company and not in their individual capacities) and such advice may not be used or relied upon for any other purpose or by any other person, including any security holder (in its capacity as such), employee or creditor of the Company. No advice rendered by Ducera, whether formal or informal, may be disclosed or described, in whole or in part, or otherwise publicly referred to, without Ducera's prior written

consent (which consent may not be unreasonably withheld, conditioned or delayed), *except*: (1) to the Company's affiliates and other professional advisors (who may not further disclose such information or use it in any way other than in connection with the services contemplated by this Agreement); or (2) as Legally Required.[8] In addition, the terms of this Agreement may not be publicly disclosed or described, in whole or in part, or otherwise referred to without Ducera's prior written consent (which consent may not be unreasonably withheld, conditioned or delayed), *except*: (x) to the Company's other professional advisors (who may not further disclose such information or use it in any way other than in connection with the services or transactions contemplated by this Agreement; or (y) as Legally Required, including in connection with the filing of any retention application with the Bankruptcy Court seeking authority for the Company to retain Ducera in any Bankruptcy Cases.  The Company shall be solely responsible for the accuracy and completeness of, and Ducera shall have no liability with respect to, any materials required to be disclosed by the Company to third parties or submitted by, or at the direction of, the Company to any regulatory authorities in connection with any services contemplated by this Agreement.

(b)     The Company shall provide Ducera with (1) all information and data relating to the Company as Ducera may reasonably request for the purposes of rendering the services set forth in **Section 1**; (2) reasonable access to the Company's officers, directors, employees, counsel, accountants and consultants solely for the purpose of carrying out the services set forth in **Section 1**; and (3) all assistance reasonably necessary to Ducera's performance under this Agreement. The Company recognizes and confirms that in performing its services hereunder, Ducera shall: (x) be entitled to rely without investigation upon all available information, including information supplied to it by or on behalf of the Company (including any public disclosures), any counterparty or their respective officers, directors, employees, accountants, counsel and other representatives; (y) not be responsible for the accuracy or completeness of, or have any obligations to verify, such information received from the Company and its advisors or from potential investors, whether or not Ducera makes any independent verification thereof; and (z) be entitled to assume, without investigation, that any and all projections (financial or otherwise) provided to Ducera pursuant hereto will have been prepared in good faith and will be based upon assumptions that are, in the Company's business judgment, reasonable.  Ducera will not conduct any appraisal of assets or liabilities of any party to a transaction or evaluate the solvency thereof under any state or federal bankruptcy, insolvency, or similar law.  The Company further represents and warrants to Ducera that, all written information made available to Ducera pursuant hereto will, to the Company's knowledge, be complete and correct in all material respects and will not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, unless otherwise clearly noted thereon or the materials are of such a nature as Ducera would or should

---

[8]     For purposes of this Agreement, the term "**Legally Required**" shall mean as requested by any governmental agency, regulatory authority (including, any self-regulatory organization claiming to have jurisdiction), or any bank examiner or for evidentiary purposes in any action, proceeding or arbitration related to the Transactions or the Confidential Information to which the Recipient or its Representatives is a party or required by law, judicial authority, regulation, rule, legal process, governmental agency or other regulatory authority (including, without limitation, any stock exchange or self-regulatory organization), action, investigation or proceeding (including, without limitation, as part of any interrogatory, court order, subpoena, administrative proceeding, civil investigatory demand, in each case whether oral or written, or any other legal, governmental or regulatory process or inquiry).

have known that they were incomplete or otherwise subject to significant uncertainties and contingencies.

(c) Ducera shall keep confidential any non-public, confidential or propriety information of, or with respect to the business of, the Company and its respective affiliates, made available to Ducera in connection with this Agreement, any advice rendered to the Company in connection with this engagement, and the terms of this Agreement, whether before or after the date of this Agreement, for a period of twenty-four (24) months from the expiration or termination of this Agreement; _provided_, _however_, that such confidential information shall not include: (1) any information already available to or in the possession of Ducera on a non-confidential basis prior to the date of its disclosure to Ducera by or on behalf of the Company; (2) any information that is or becomes generally available to the public without the breach of this **Section 4(b)** by Ducera; or (3) any information which becomes available to Ducera on a non-confidential basis from a third party who is not known by Ducera (after reasonable inquiry) to be bound by a confidentiality obligation to maintain the confidentiality of such information; and _provided_, _further_, that such confidential information may be disclosed: (x) on a need-to-know basis to Ducera's members, officers, managers, directors, employees, agents and advisors in connection with this Agreement who shall be informed of the confidential nature of the information and that such information is subject to a confidentiality agreement (and whose breaches of such confidentiality Ducera shall be fully responsible for); (y) to any person with the prior written consent of the Company; or (z) as Legally Required, in which case reasonable prior notice shall be provided to the Company in advance of such disclosure, if legally permitted, and Ducera shall use its best efforts and work diligently (at the Company's expense) with the Company to narrow the scope of such disclosure and/or seek confidential treatment thereof ("**Confidential Information**").  Ducera agrees that it will use any information received by or on behalf of the Company solely for the purposes of this engagement, and not for any other purpose.

**Section 5.**    **Terms and Conditions**.  Because Ducera will be acting as an independent contractor to the Company in connection with this Agreement, and in consideration of the benefits that the Company shall receive from Ducera's advice, the Company and Ducera agree to the Terms and Conditions contained in **Annex A** (the "**Terms and Conditions**"), which **Annex A** is incorporated by reference into this Agreement and is an integral part hereof.

**Section 6.**    **Acknowledgements and Waivers**.

(a). The Company acknowledges and agrees that Ducera has been retained solely to act as financial advisor with respect to the services described under **Section 1** and that no fiduciary or agency relationship between the Company and Ducera has been created in respect of any transaction or Ducera's engagement hereunder, regardless of whether Ducera has advised or is advising the Company on other matters.  In connection with the engagement, Ducera is acting as an independent contractor, with obligations owing solely to the Company and not in any other capacity.  Except as expressly contemplated by the Terms and Conditions set forth in **Annex A**, neither the engagement nor this Agreement is intended to confer rights upon any persons not a party hereto (including security holders, employees, or creditors of the Company).

(b). This Agreement shall be binding upon and inure to the benefit of the Company, Ducera, and their respective successors and assigns.  No party hereto may assign or

delegate any of its rights or obligations without the prior written consent of the other parties. If any term, provision, covenant or restriction herein (including the Terms and Conditions as set forth in **Annex A**) is held by a judgment of a court of competent jurisdiction to be invalid, void, or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be modified or invalidated, and the unenforceable provision shall be deemed modified to the limited extent required to permit its enforcement in a manner most closely representing the intention of the Parties as expressed in this Agreement.

(c). Ducera and its affiliates and certain of their respective members, officers, managers, directors, and employees, as well as certain funds in which they may have financial interests, may from time to time acquire, hold or make direct or indirect investments in, or otherwise finance, a wide variety of companies, including parties that may constitute counterparties to the Company. In the event that Ducera becomes aware of any direct material investment or financing arrangement in a counterparty to a proposed transaction of Ducera or any of its employees on the coverage team (excluding any funds managed by third parties which are not known to have accumulated significant positions in securities issued by such counterparties) or actual material conflict of interest arising from Ducera's representation of another person or entity, Ducera shall promptly inform the Company of such investment or financing arrangement.

(d). Subject to **Section 6(c)**, the Company acknowledges and agrees that Ducera and its affiliates may be engaged in a broad range of transactions involving interests that differ from those of the Company, and that Ducera has no obligation to disclose such interests and transactions to the Company. The Company waives, to the fullest extent permitted by law, any claims it may have based on any actual or potential conflicts of interest that may arise or result from Ducera's engagement by the Company hereunder (to the extent disclosed to the Company prior to the date hereof), or any claims it may have against Ducera for breach of fiduciary duty or alleged breach of fiduciary duty by reason of such actual or potential conflicts of interest and agrees that Ducera shall have no liability (whether direct or indirect) to the Company in respect of such a fiduciary duty claim or to any person asserting a fiduciary duty claim on behalf of or in right of the Company, including the Company's security holders, employees, or creditors. The Company understands that Ducera is not undertaking to provide any legal, regulatory, compliance, accounting, or tax advice in connection with the engagement, and that Ducera's role in any due diligence will be limited solely to performing such review as it deems advisable to support its own analysis and shall not be on behalf of or for the benefit of the Company.

(e). To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each entity or person that engages Ducera's services. Pursuant to such requirements, Ducera may from time-to-time request copies of documents that would be necessary to comply with the foregoing federal law. The Company further acknowledges and agrees, in accordance with 31 CFR § 1010.230 and, to the extent applicable and as Legally Required, to complete the Certification Regarding Beneficial Owners of Legal Entity Customers in connection with the execution of this Agreement.

**Section 7.** **Governing Law; Submission to Jurisdiction; Waiver of Jury Trial**. All aspects of the relationship created by this Agreement and any other agreements relating to Ducera's

engagement, and all claims and counterclaims arising out of or related to this engagement, shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein and, in connection therewith and as to disputes arising between Ducera, on the one hand, and the Company, on the other hand, the parties hereto consent to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County or the United States District Court for the Southern District of New York and agree to venue in such courts; *provided, however*, that if the Company becomes a debtor under chapter 11 of the Bankruptcy Code, any dispute or claim relating to or arising out of this Agreement shall be heard and determined by the Bankruptcy Court (as defined herein).  Notwithstanding the foregoing, solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim relating to or arising out of Ducera's engagement is brought by or against any Indemnified Person.  DUCERA AND THE COMPANY (ON THEIR OWN BEHALF AND, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ON BEHALF OF THEIR RESPECTIVE SECURITY HOLDERS AND CREDITORS) EACH HEREBY AGREE TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR DUCERA'S ENGAGEMENT.

**Section 8.** **Termination**.

(a) Ducera's engagement hereunder shall commence on the date hereof and shall continue until the terminated by either party hereto upon ten (10) business days' prior written notice to the other party (the "**Term**").

(b) In the event of any termination of Ducera's engagement hereunder, any fees set forth in **Section 2** paid or due to be paid prior to termination shall remain the property of Ducera. No termination of Ducera's engagement hereunder shall affect the Company's obligations pursuant to the Terms and Conditions or its obligations to reimburse Ducera for fees and expenses, payable or incurred in accordance with **Section 2** and/or **Section 3** prior to the termination of this Agreement, and the Terms and Conditions set forth in **Annex A** shall survive any termination of this Agreement.

(c) In the event of any termination of Ducera's engagement hereunder (other than (1) by Ducera for any reason; or (2) by the Company based on actions taken, or failures to act, by Ducera in bad faith, willful misconduct or gross negligence which actions (x) to the extent remediable, remain unremediated by Ducera within ten (10) business days after written notice from the Company of its intention to terminate this Agreement on the basis of such actions or failure to act specifying in reasonable detail the basis for such termination; and (y) adversely impacts the Company), Ducera shall continue to be entitled to the full amount of the fees set forth in **Section 2** (other than the Monthly Advisory Fee) in the event that at any time prior to the expiration of the Tail Period, the Company consummates a Restructuring, Financing, and/or a Transaction.[9]

**Section 9.** **Bankruptcy Court Approval**.  In the event that the Company is or becomes a debtor under the Bankruptcy Code, whether voluntarily or involuntarily, the Company

---

[9] For purposes of this Agreement, the term "**Tail Period**" shall mean any time prior to the expiration of twelve (12) months after any such termination.

9

shall use commercially reasonable efforts to seek an order authorizing Ducera's employment pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code and applicable federal and local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code.  In so agreeing to Ducera's retention, the Company acknowledges that it believes that Ducera's general restructuring and liability management experience and expertise, our knowledge of the capital markets, and our merger and acquisition capabilities will inure to the benefit of the Company in pursuing any transaction, that the value to the Company of our services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent fees are reasonable regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.  The Company shall submit Ducera's retention application as soon as practicable following the Company's filing under the Bankruptcy Code, or the entry of an order for relief in any involuntary case filed against the Company and use its reasonable efforts to cause such application to be considered on the most expedited basis.  The retention application and the proposed order authorizing Ducera's employment shall be provided to Ducera as much in advance of any Bankruptcy filing as is practicable and must be acceptable to Ducera in its reasonable discretion. Following entry of the order authorizing Ducera's employment, the Company shall pay all reasonable and documented fees and expenses due pursuant to this Agreement, as approved by the Bankruptcy Court, as promptly as possible in accordance with the terms of this Agreement, the Bankruptcy Code and applicable rules and orders.  Ducera shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Ducera's retention under this Agreement is approved under the Bankruptcy Code by final order of the Bankruptcy Court, which is acceptable to Ducera, and which approves this Agreement in all material respects.  If the order authorizing Ducera's employment is not obtained, or is later reversed, modified, or set aside for any reason, Ducera may terminate this Agreement.

**Section 10.    Entire Agreement; Amendments**. This Agreement, including **Annex A**, constitutes the entire agreement between Ducera and the Company with respect to the engagement and supersedes all other oral and written representations, understandings or agreements relating to this engagement. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement. Executed signature pages may be delivered electronically, by facsimile or by email in portable document format (".pdf") and will be deemed to be original signatures for all purposes.

*       *       *

      We are pleased to accept the engagement and look forward to working with you. Please confirm your agreement with the foregoing (including the attached Terms and Conditions) by signing each of the enclosed copies of this Agreement and returning to us one fully signed copy.

Very truly yours,

**DUCERA PARTNERS LLC** *and its affiliates including, where appropriate, Ducera Securities LLC*

By: *Michael A. Kramer* (DocuSigned)
Name: Michael A. Kramer
Title: Partner

Accepted, Agreed, and Effective as of June 27, 2024 (the "**Effective Date**"):

**FRANCHISE GROUP, INC.**

By: *Andrew Kaminsky* (DocuSigned)
Name: Andrew Kaminsky
Title: Executive Vice President, Chief Administrative Officer & Director

# TERMS AND CONDITIONS – ANNEX A

In consideration of the engagement of Ducera Partners LLC (and its affiliates including, where appropriate, Ducera Securities LLC, "**Ducera**") by Franchise Group, Inc. (collectively with its subsidiaries and affiliates, the "**Company**") pursuant to the Agreement to which these Terms and Conditions are attached, the Company and Ducera hereby agree that these Terms and Conditions shall be incorporated by reference into the Agreement and shall form an integral part thereof. Capitalized terms used but not defined herein shall have the same meanings specified in the Agreement and any references to this Agreement or the engagement shall mean the Agreement together with these Terms and Conditions.

A.  In consideration of the benefits that the Company will receive from Ducera's advice, the Company agrees to indemnify and hold harmless Ducera, its affiliates, the respective members, managers, directors, officers, partners, advisors, representatives, agents and employees of Ducera and its affiliates, and any person controlling Ducera and its affiliates (collectively, "**Indemnified Persons**") from and against, and the Company agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its owners, parents, affiliates, security holders or creditors (in their respective capacities as such) for, any losses, claims, expenses (including reasonable attorneys' fees), damages or liabilities (including actions or proceedings in respect thereof) (collectively, "**Losses**"):

(1)  Related to or arising out of (a) the Company's actions or failures to act (including statements or omissions made or information provided by the Company or its agents) in connection with the engagement; or (b) actions or failures to act by an Indemnified Person in connection with this engagement with the Company's consent, or otherwise in reasonable reliance on the Company's direction, actions, or failures to act in each case in connection with the engagement; or,

(2)  Otherwise related to or arising out of the engagement, Ducera's performance thereof or any other services Ducera is asked to provide to the Company pursuant to this Agreement (in each case, including activities prior to the date hereof), *except* that this **Annex A(A)(2)** shall not apply to any Losses (nor shall the limitation of liability above apply) to the extent related to or arising out of the bad faith, willful misconduct, or gross negligence of an Indemnified Person.

B.  If such indemnification is for any reason not available (other than pursuant to situations covered by **Annex A(A)(2)**), or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses involved in such proportion as is appropriate to reflect the relative benefits (as defined herein) to the Company, on the one hand, and to Ducera, on the other hand, with respect to the engagement; or, if such allocation is determined by a court of competent jurisdiction to be unavailable, in such proportion as is appropriate to reflect equitable considerations such as the relative fault of the Company on the one hand, and of Ducera on the other hand; *provided*, *however*, that, to the extent permitted by applicable law, the Indemnified Persons shall not be responsible for Losses which in the aggregate exceed the amount of all fees actually received by Ducera from the Company in connection with the engagement *except* to the

extent related to or arising out of the bad faith, willful misconduct, or gross negligence of an Indemnified Person.

        C.        The "**Relative Economic Interests**" of the Company, on the one hand, and Ducera, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received or proposed to be received by the Company and its security holders, as the case may be, pursuant to the transaction(s) contemplated by the engagement, whether or not consummated, bears to (2) all fees actually received by Ducera in connection with the engagement. Without limiting the generality of the foregoing, in no event shall the Company have any liability to any Indemnified Person, nor shall any Indemnified Person have any liability to the Company or any of its affiliates or security holders (in their respective capacities as such), in each case, for any consequential, special, exemplary, or punitive damages arising out of the engagement or Ducera's performance thereof (other than such damages which the Company is required to pay to a third party and with respect to Excluded Losses).

        D.        If any Indemnified Person becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including security holders of the Company in connection with or as a result of the engagement hereunder, the Company also agrees to reimburse such Indemnified Persons for their reasonable and documented out of pocket expenses (including, without limitation, reasonable and documented legal fees and other costs and expenses of one counsel (unless otherwise provided herein) incurred in connection with investigating, preparing for and responding to third-party subpoenas or enforcing the engagement) as such reasonable and documented out of pocket expenses are incurred; and, *provided*, *further*, that such party receiving reimbursement of reasonable and documented out of pocket expenses shall return any such reimbursements in the event that a court of competent jurisdiction finally determines that indemnification is unavailable in connection with situations covered by **Annex A(A)** or otherwise giving rise to Excluded Losses.

        E.        Ducera shall not be liable for any settlement of any claim, action, suit, investigation or proceeding effected without its consent (which consent shall not be unreasonably withheld, conditioned, or delayed). The Company will not, without Ducera's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any claim, action, suit, investigation or proceeding in respect of which it is reasonably foreseeable that indemnification may be sought hereunder, whether or not an Indemnified Person is a party thereto, unless such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any liabilities arising out of such claim, action, suit, investigation or proceeding. The Company will not permit any settlement or compromise to include, or consent to the entry of any judgment that includes, a statement as to, or an admission of fault, culpability, or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed). The Company shall not be required to indemnify any Indemnified Person for any settlement effected without the Company's consent (which consent shall not be unreasonably withheld, conditioned, or delayed).

        F.        The Company's obligations pursuant to these Terms and Conditions shall inure to the benefit of any successors, assigns, heirs, and personal representatives of each Indemnified

Person and are in addition to any rights that each Indemnified Person may have at common law or otherwise.

G. Reasonably promptly after receipt by an Indemnified Person of notice of its involvement in any action, claim, suit, investigation or proceeding, Ducera shall, if a claim for indemnification in respect thereof is to be made against the Company under these Terms and Conditions, notify the Company of such involvement to the extent permitted by applicable laws and regulations. Failure by Ducera to so notify the Company, if permitted by applicable laws and regulations, shall relieve the Company from the obligations to indemnify or otherwise to Ducera under these Terms and Conditions only to the extent that the Company suffers actual and material prejudice as a result of such failure. If any Indemnified Person shall be subject to any action or proceeding brought by a third party that is also brought against the Company, the Company, following its acknowledgment of its obligation to indemnify such Indemnified Person, shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Person. No Indemnified Person may settle any such action or proceeding for which indemnification is or will be sought prior to the Company having the reasonable opportunity to assume its defense. Upon assumption by the Company of the defense of any such action or proceeding, the Indemnified Person shall have the right to participate in such action or proceeding and to retain its own counsel, but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Person in connection with the defense thereof unless: (1) the Company has agreed in writing to pay such fees and expenses; (2) the Company shall have failed to employ competent counsel in a timely manner; or (3) the Indemnified Person shall have been advised by counsel that there are actual or potential conflicting interests between the Company and the Indemnified Person, including situations in which there are one or more legal defenses available to the Indemnified Person that are different from or additional to those available to the Company; *provided, however*, that the Company shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Persons including Ducera, *except* to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action or proceeding and *except* as may be required pursuant to **Annex A(G)(3)**.

H. The obligations of the parties hereto pursuant to these Terms and Conditions shall survive any expiration or Term of the Agreement or Ducera's engagement hereunder.