# EXHIBIT D

**Amendment to Engagement Letter**

# Ducera

Ducera Partners LLC
11 Times Square
36th Floor
New York, NY 10022

p (212) 671-9700

DuceraPartners.com

October 24, 2024

**CONFIDENTIAL**

Franchise Group, Inc.
109 Innovation Court
Suite J
Delaware, OH 43015

Ladies and Gentlemen:

Reference is made to the engagement letter (the "**Agreement**"), dated June 27, 2024, between Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC, (collectively, "**Ducera**") and Franchise Group, Inc. as set forth herein. All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

**Section 1.** Amendment. The Agreement shall be amended, replaced, and superseded (the "**Amendment**") as set forth herein. Pursuant to the terms and conditions of the Agreement, this Amendment shall affirm the Company's request, and Ducera's consent, to expand the services to be rendered by Ducera to include (a) third-party DIP financing or third-party exit financing as set forth in **Section 1(c)**; and (b) a Transaction involving whole business and/or individual businesses including Pet Supplies Plus, Vitamin Shoppe, Buddy's and American Freight as set forth in **Section 1(d)**.

A. **Section 2(d)** of the Agreement shall be amended, supplemented, and replaced as follows:

(d) For services rendered in accordance with **Section 1(d)**, a transaction fee, which shall be due and payable upon consummation of each Transaction (the "**Transaction Fee**"). The Transaction Fee shall be calculated based on the Transaction Value set forth in the table below, with the applicable percentage applied using a continuous linear sliding scale:[2]

---

[2] For purposes of this Agreement, the term "**Transaction Value**" means the total value of all consideration paid or received or to be paid or received, directly or indirectly, in connection with a Transaction, including: (a) all cash (including escrowed amounts, and other withheld amounts) paid or payable to the Company or its shareholders (including indemnity and net working capital escrow amounts); (b) the fair market value of all securities, notes, debt, and other property issued or delivered or to be issued or delivered to or by the Company or its shareholders (including holders of the Company's or any of its subsidiaries' common stock, preferred stock, options and warrants, and holders of Awards); (c) liabilities, including all debt, pension liabilities and guarantees, plus any amount required to be shown, pursuant to U.S. generally accepted accounting principles, on a consolidated balance sheet of the company as of the most recent quarterly consolidated balance sheet date for capitalized leases, in all cases provided that such liabilities, indebtedness or capital leases are still outstanding as of the closing date of the Transaction and directly or indirectly assumed, refinanced, extinguished or consolidated by the acquiror, and excluding any substitution of a purchaser on bonds issued and outstanding by a surety and working capital items; (d) the amount of all installment payments to be made to the Company or its shareholders; (e) amounts paid or payable to the Company's direct or indirect securityholders and management under consulting, non-compete or similar agreements; (f) the value of any contingent payments if and when earned and paid; (g) if an Transaction includes the disposition of assets, the value of net current assets not sold; (h) the amount of any extraordinary dividends or (….continued)

| Transaction Value Component | Applicable Fee % for Transaction Value Component |
|---|---|
| $100,000,000 or less | 2.000% |
| $200,000,000 | 1.650% |
| $300,000,000 | 1.500% |
| $400,000,000 | 1.400% |
| $500,000,000 | 1.300% |
| $600,000,000 | 1.200% |
| $700,000,000 | 1.150% |
| $800,000,000 | 1.100% |
| $900,000,000 | 1.050% |
| $1,000,000,000 | 1.000% |
| $1,250,000,000 | 0.925% |
| $1,500,000,000 | 0.850% |
| $1,750,000,000 | 0.775% |
| $2,000,000,000 or more | 0.700% |

*Notwithstanding anything else contained herein*, the Company and Ducera each acknowledge and agree that (1) the minimum fee for each and any distinct transaction shall be $2,500,000, *except* for a Buddy's transaction, which will have a minimum fee of $2,000,000; and (2) fifty percent (50%) of the aggregate Transaction Fees shall be credited against any Restructuring Fee.

       B.      **Section 2(e)** of the Agreement shall be amended, supplemented, and replaced as follows:

       (e)      For services rendered in accordance with **Section 1(c)**, a financing fee, which shall be earned and payable upon the closing of a Financing (collectively, "**Financing Fee**"); *provided*, *however*, *for avoidance of doubt*, the Financing Fee shall not be payable in

---

distributions paid to or by the Company's securityholders (including holders of Awards); and (i) if a Transaction takes the form of a recapitalization, restructuring or similar transaction, the fair market value of equity securities retained, directly or indirectly, by the Company's securityholders (including holders of Awards) upon consummation of such an Transaction (such securities and all other securities received by such securityholders being deemed to have been paid to such security holders in such sale transaction). For purposes of computing Transaction Value hereunder, non-cash consideration will be valued as follows: (x) publicly traded securities will be valued at the average of their closing prices (as reported in *The Wall Street Journal* or other reputable source reasonably designated by Ducera if *The Wall Street Journal* does not publish such closing prices) for the five (5) trading days prior to the closing of an Transaction, (y) options will be valued using the treasury stock method without giving effect to tax implications, and (z) the value of any cash held at the company, the value of all installment or any contingent payments to be made to the company or its shareholders in an Transaction (including Awards) or non-cash consideration will be determined in good faith by and between Ducera and the Company.

2

conjunction with either (i) the Company securitization or any re-syndication of the asset backed lending facility ("ABL") by JP Morgan Chase & Co. or any affiliate thereof, or (ii) any DIP financing or exit financing provided by the lenders under the ABL, that certain First Lien Credit Agreement, dated as of March 10, 2021, that certain Second Lien Credit Agreement, dated as of March 10, 2021, and/or that certain HoldCo Credit Agreement, dated as of August 21, 2023. The Financing Fee shall equal:

(1). 1.50% of the face amount of senior secured debt (including, but not limited to, revolving credit and asset backed lending facilities) Raised;[3] *plus,*

(2). 3.00% of the face amount of any unsecured or junior secured debt Raised; *plus*,

(3). 5.00% of any equity capital, convertible, or hybrid capital, including warrants, or similar contingent equity securities Raised.

C. **Section 2(f)** of the Agreement shall be amended, supplemented, and replaced as follows:

(f) The Company and Ducera acknowledge and agree that the Company is under no obligation to consummate any Restructuring, Financing, and/or Transaction as set forth herein and, in the event the Company is unable or unwilling to do so, the Company will have no obligation or liability (other than the Terms and Conditions set forth in Annex A) to Ducera due up to the date of termination of this Agreement. The Company and Ducera further acknowledge and agree that: (1) hours worked, (2) the results achieved, and (3) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Ducera have taken such factors into account in setting the fees hereunder. To the extent further services are requested by the Company in writing (email to be sufficient), the Company and Ducera acknowledge and agree to negotiate in good faith and to prepare an amendment to this Agreement setting forth a reasonable scope of services and fee structure in connection with any such further services provided by Ducera, depending on the size, scope, and nature of the services to be provided, as well as any discount for payments rendered in connection with the scope of services set forth in Section 1.

---

[3] For purposes of this Agreement, the term "**Raised**" shall mean the total amount committed by an Investor on terms acceptable to the Company, irrespective as to whether or not the Company draws any or all of the amount committed by an Investor, and whether or not the Company applies such amounts to finance any of its obligations or a transaction. *For illustrative purposes*, in connection with any revolving credit or asset backed lending facilities, all fees set forth in **Section 2** shall be calculated based on the total amount of the facility, including any letters of credit, irrespective as to whether the Company is permitted immediately to draw upon the full amount of facility, including any borrowing base, at the time of commitment.

3

D.  **Section 8(c)** of the Agreement shall be amended, supplemented, and replaced as follows:

(c)  In the event of any termination of Ducera's engagement hereunder (other than (1) by Ducera for any reason; or (2) by the Company based on actions taken, or failures to act, by Ducera in bad faith, willful misconduct or gross negligence which actions (x) to the extent remediable, remain unremediated by Ducera within ten (10) business days after written notice from the Company of its intention to terminate this Agreement on the basis of such actions or failure to act specifying in reasonable detail the basis for such termination; and (y) adversely impacts the Company), Ducera shall continue to be entitled to the full amount of the fees set forth in Section 2 (other than the Monthly Advisory Fee) in the event that at any time prior to the expiration of the Tail Period, the Company consummates a Restructuring, Financing, and/or a Transaction.[4]

**Section 2.    Acknowledgement.**  By executing this Amendment, Ducera and the Company: (1) consent to this Amendment and the performance of their obligations hereunder, (2) acknowledge and agree that except as expressly amended by the Amendment, the Agreement and each party's obligations thereunder continue in full force and effect, including, without limitation, the Company's obligations under **Annex A** to the Agreement; and (3) acknowledge and agree that all references to the Agreement from and after the date hereof shall mean, respectively, the Agreement as amended by this Amendment.

**Section 3.    Counterparts, Execution and Delivery.**  This Amendment may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  A facsimile or other reproduction of this Amendment may be executed by the Parties and may be delivered by facsimile or similar electronic transmission device pursuant to which the signature(s) can be seen, and such execution and delivery shall be considered valid, binding, and effective for all purposes.

*    *    *

**[SIGNATURE PAGE FOLLOWS]**

---

[4]  For purposes of this Agreement, the term "**Tail Period**" shall mean any time prior to the expiration of twelve (12) months after any such termination; *provided*, *however*, the Company and Ducera each acknowledge and agree that the Tail Period associated with any applicable Transaction Fee and/or Financing Fee shall be immediately terminated upon consummation of any Restructuring.

4

Please confirm your agreement with the foregoing by signing this Amendment and returning to us one fully signed copy.

Very truly yours,

**DUCERA**:  **DUCERA PARTNERS LLC** *and its affiliates including, where appropriate, Ducera Securities LLC*

By: *Chris Grubb*
Name: Christopher Grubb
Title: Partner

Accepted, Agreed, and Effective as of June 27, 2024 (the "**Effective Date**"):

**THE COMPANY**:  **FRANCHISE GROUP, INC.**

By: *andrew kaminsky*
Name: Andrew Kaminsky
Title: Executive Vice President, Chief Administrative Officer, & Director.

5