## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>**December 17, 2024 at 11:00 a.m. (ET)** |
| | **Objection Deadline:**<br>**December 10, 2024 at 4:00 p.m. (ET)** |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF HILCO REAL ESTATE, LLC AS REAL ESTATE CONSULTANT AND ADVISOR FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE; (II) WAIVING CERTAIN REQUIREMENTS IMPOSED BY LOCAL RULE 2016-2; AND (III) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors"), hereby file this application (the "Application") for entry of an order, substantially

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

in the form of Exhibit A hereto (the "Proposed Order"), (i) authorizing the retention and employment of Hilco Real Estate, LLC ("Hilco") as real estate consultant and advisor to the Debtors in these Chapter 11 Cases (defined below), effective as of the Petition Date (defined below); (ii) waiving certain requirements imposed by Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and (iii) granting related relief.  In support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief sought herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-2.

## BACKGROUND

4.      On November 3, 2024 (the "Petition Date"), the Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The

Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On November 19, 2024**,** the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 188] (the "Committee").

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15].[2]

## RELIEF REQUESTED

7.      By this Application, and pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, the Debtors seek entry of the Proposed Order: (i) authorizing the Debtors to retain and employ Hilco as their real estate consultant and advisor, effective as of the Petition Date, in accordance with the terms and conditions set forth in that certain *Real Estate Consulting and Advisory Services Agreement*, dated November 26, 2024, attached hereto as Exhibit B (the "Engagement Agreement"); (ii) waiving certain time-keeping requirements of Local Rule 2016-2; and (iii) granting related relief.   In support of this Application, the Debtors submit the declaration of Eric W. Kaup, attached hereto as Exhibit C (the "Kaup Declaration").

## HILCO'S QUALIFICATIONS

8.      The Debtors submit this Application because of their need to retain a qualified real estate consultant and advisor to evaluate their real estate portfolio by assessing the current and

---

[2]     Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the First Day Declaration.

projected profitability of certain of the Debtors' stores, current lease terms, and each store's potential for improvement.

9.      Hilco is a diversified real estate consulting and advisory firm that evaluates, restructures, and facilitates the acquisition and disposition of various types of real estate assets both nationally and internationally.  The Debtors seek to retain Hilco in particular because of Hilco's familiarity with the Debtors' lease portfolio, qualifications, and substantial experience in real estate restructuring matters.  Hilco has extensive experience solving complex real estate problems and evaluating, negotiating, and restructuring real estate lease terms.  Moreover, Hilco has an excellent reputation as a leader in the real estate field and an experienced team of real estate brokers, attorneys, and analysts.

10.     Hilco has served as real estate broker and real estate consultant, in a similar capacity as contemplated here, in many complex bankruptcy cases, including in this District.  See, e.g., In re MRRC Hold Co., et al., Case No. 24-11164 (CTG) (Bankr. D. Del June 5, 2024); In re Cano Health, Inc., Case No. 24-10164 (KBO) (Bankr D. Del. May 15, 2024); In re Knotel, Inc., Case No. 21-10146 (MFW) (Bankr. D. Del. Mar. 31, 2021) [Docket No. 439]; In re Town Sports Int'l, LLC, No. 20-12168 (CSS) (Bankr. D. Del. Sep. 14, 2020); In re PGHC Holdings, Inc., Case No. 18-12537 (MFW) (Bankr. D. Del. Nov. 28, 2018) [Docket No. 131]; In re Bertucci's Holdings, Inc., Case No. 18-10894 (MFW) (Bankr. D. Del. May 3, 2018) [Docket No. 161]; and In re Marsh Supermarkets Holding, LLC, Case No. 17-11066 (BLS) (Bankr. D. Del. June 13, 2017) [Docket No. 318].

11.     Hilco's real estate services team executes real estate strategies quickly and efficiently by advising its clients on a range of options and working, as needed, with landlords, investors, buyers, sellers, and lenders to restructure real estate commitments.  Hilco works across

industry sectors and products, serving distressed and healthy companies in the United States and globally, providing services that include real estate portfolio analysis, valuation and strategic real estate planning services, real estate acquisition and disposition services, real estate financing and sale-lease back services, and real estate lease-related services, including negotiation, modification, and termination of leases.

12.     Hilco has provided real estate consulting and advisory services to the Debtors since November 2024.  During its engagement, Hilco professionals have worked closely with the Debtors' management and other professionals in, among other things, preparing for these Chapter 11 Cases and have become familiar with the Debtors' business operations, real estate portfolio, and other matters.

13.     For the foregoing reasons, the Debtors believe that Hilco is well qualified to advise the Debtors in an efficient and timely manner, and that the engagement of Hilco is critical to their efforts in these Chapter 11 Cases.  The Debtors also believe that Hilco's retention as real estate consultant and advisor is in the best interests of the Debtors' estates.

## SERVICES TO BE PROVIDED[3]

14.     Hilco has and, subject to the Court's approval, the Debtors anticipate that Hilco will continue to perform the following consulting and real estate advisory services, among others, with respect to the Debtors' non-residential real property leasehold interests (collectively, the "Leases")

---

[3]    The summary of the Engagement Agreement in this Application is qualified in its entirety by reference to the provisions of the Engagement Agreement.  To the extent that there is any discrepancy between the summary contained in the Application and the terms set forth in the Engagement Agreement, the terms of the Engagement Agreement shall govern.  Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Engagement Agreement.

as necessary, appropriate, feasible, and as may be requested by the Debtors, pursuant to the terms

of the Engagement Agreement:

      (a)      meet with the Debtors to ascertain the Debtors' goals, objectives, and financial parameters;

      (b)      mutually agree with the Debtors with respect to a strategic plan for restructuring or terminating the Leases (the "Strategy");

      (c)      negotiate, on the Debtors' behalf, the terms of restructuring and termination agreements with the landlords under the Leases, in accordance with the Strategy;

      (d)      provide written reports periodically to the Debtors regarding the status of such negotiations; and

      (e)      assist the Debtors in closing lease restructuring and termination agreements.

15.      By separate applications, the Debtors are also seeking to employ various other restructuring professionals.  The Debtors do not believe that the services to be rendered by Hilco will be duplicative of the services performed by any other professional, and Hilco will work with the other professionals retained by the Debtors to minimize any duplication of services on behalf of the Debtors.[4]

## PROFESSIONAL COMPENSATION[5]

16.      Subject to the Court's approval, and pursuant to the terms and conditions of the Engagement Agreement, Hilco and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee and Expense Structure"):

---

[4]    On November 6, 2024, the Court entered the *Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 132] (the "GOB Order").  The GOB Order authorized the Debtors to assume that certain *Letter Agreement Governing Inventory Disposition*, by and between Hilco Merchant Resources, LLC, and Debtor American Freight, LLC (the "Consulting Agreement").  Hilco's role as real estate consultant and advisor under the Engagement Agreement is separate and distinct from Hilco Merchant Resources, LLC's role under the Consulting Agreement, including with respect to the lease portfolio associated with the Debtors' American Freight Business.

[5]    Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Engagement Agreement.  The terms the "Company" and the Debtors shall be used synonymously in this section.

(a)　　Compensation.  As compensation for Hilco's Services, the Debtors will pay to Hilco compensation in accordance with section 4 of the Engagement Agreement, as summarized below; provided, that for any Restructured Lease[6] that is rejected during these Chapter 11 Cases, fees shall be due or payable with respect to such Restructured Lease solely to the extent that the Debtors realize the benefit of any Restructured Lease Savings[7] prior to rejection, in which case Hilco's compensation shall be calculated solely based on the Restructured Lease Savings realized by the Debtors prior to rejection.

(b)　　Restructuring.  For each Lease that becomes a Restructured Lease, Hilco shall earn a fee equal to the Restructured Lease Savings Fee.[8]  The amounts payable on account of a Restructured Lease shall be paid in a lump sum upon closing of the transaction having the effect of restructuring the Lease.

(c)　　Termination or Term Shortening.  For each Lease that becomes a Term Shortened Lease,[9] Hilco shall earn a fee equal to the Term Shortened Lease Fee.[10]  The amounts payable on account of a Term Shortened Lease shall be paid in a lump sum upon closing of the transaction that provides the Debtors with an early termination right or has the effect of terminating or otherwise shortening the term of such Lease.

---

[6]　As defined in the Engagement Agreement, "Restructured Lease" means any Lease for which the Company enters into a written agreement with the applicable landlord that has the effect of modifying the terms of such Lease.

[7]　As defined in the Engagement Agreement, "Restructured Lease Savings" means an amount equal to the net savings created by a Restructured Lease, including (without limitation) the sum of (x) the aggregate reduction of base rent, percentage rent, CAM, real estate taxes, insurance, and deferred maintenance or maintenance obligations (including clean up) payable under a lease (exclusive of term shortening), and (y) the aggregate amount of any tenant improvement allowance dollars secured, minus any restructuring, termination or similar fees paid by the Company to the counterparty to the leased property, or any other party, in connection with the Restructured Lease.  Where term is extended and the rent during such extended period is not specifically fixed or calculable within a leased property, Restructured Lease Savings shall be based on the last year's rent immediately prior to the extended period under a leased property.

[8]　As defined in the Engagement Agreement, "Restructured Lease Savings Fee" means, for any Restructured Lease, an amount equal to a base fee of $1,000 plus the aggregate Restructured Lease Savings multiplied by four and one-quarter percent (4.25%).

[9]　As defined in the Engagement Agreement, "Term Shortened Lease" means any Lease for which the Company enters into a written agreement with the applicable landlord that has the effect of (i) terminating the Lease, or (ii) providing the Company with an early termination right, regardless of whether the Company ever exercises such right, or otherwise has the effect of shortening the term of such Lease.

[10]　As defined in the Engagement Agreement, "Term Shortened Lease Fee" means, for any Term Shortened Lease where the Company is provided with an early termination right or the term of the Lease is otherwise shortened, an amount equal to three-quarters (0.75) of one month of gross rent under such Term Shortened Lease.  To the extent a Lease is both a Restructured Lease and a Term Shortened Lease, any lease savings attributable to the shortening of a Restructured Lease term shall be excluded from the calculation of the applicable Restructured Lease Savings Fee, and Hilco shall only be entitled to receive the applicable Term Shortened Lease Fee on account of such Restructured Lease term shortening.

(d) <u>Term Extension</u>. For each Lease that becomes a Term Extended Lease,[11] Hilco shall earn a fee equal to the Term Extended Lease Fee.[12] The amounts payable on account of a Term Extended Lease shall be paid in a lump sum upon closing of the transaction that has the effect of extending the term of such Lease.

(e) <u>Sales</u>. For each Lease that becomes a Sold Lease,[13] Hilco shall earn a fee equal to the Sold Lease Fee.[14] The amounts payable on account of a Sold Lease shall be paid in a lump sum upon closing of the transaction having the effect of selling the Lease, as the case may be.

(f) <u>Sublets</u>. For each Lease that becomes a Sublet Lease,[15] Hilco shall earn a fee equal to the Sublet Lease Fee.[16] The amounts payable on account of a Sublet Lease shall be paid in a lump sum upon closing of the transaction having the effect of subletting all or a portion of the premises under the Lease.

(g) <u>Free and Clear</u>. All fees payable to Hilco hereunder shall be free and clear of any liens, claims and encumbrances, including the liens of any secured parties.

(h) <u>Expenses</u>. All Expenses[17] shall be borne by the Debtors and Hilco shall be entitled to reimbursement for any such Expenses. Billing shall be monthly,

---

[11] As defined in the Engagement Agreement, "Term Extended Lease" means any Lease for which the Company enters into a written agreement with the applicable landlord that provides the Company with a right to extend the term of such Lease, regardless of whether the Company ever exercises such right, or otherwise has the effect of extending the term of such Lease.

[12] As defined in the Engagement Agreement, "Term Extended Lease Fee" means, for any Term Extended Lease, an amount equal to three-quarters (0.75) of one month of gross rent under such Term Extended Lease. To the extent a Lease is both a Restructured Lease and a Term Extended Lease, any costs attributable to the extending of a Restructured Lease term shall not be offset from the calculation of the applicable Restructured Lease Savings Fee.

[13] As defined in the Engagement Agreement, "Sold Lease" means any Lease for which the Company enters into a written agreement that has the effect of selling the Lease for cash value paid to the Company; provided, however, that notwithstanding anything herein to the contrary, any Lease that is sold to a purchaser of all or substantially all of the Company's or a business segment of the Company's assets shall not be considered a Sold Lease.

[14] As defined in the Engagement Agreement, "Sold Lease Fee" means, for any Sold Lease, an amount equal to five percent (5%) of any cash value paid to the Company for the Lease.

[15] As defined in the Engagement Agreement, "Sublet Lease" means any Lease for which the Company enters into a written agreement that has the effect of subleasing all or a portion of the premises under the Lease.

[16] As defined in the Engagement Agreement, "Sublet Lease Fee" means, for any Sublet Lease, an amount equal to the Lease Savings multiplied by five percent (5%).

[17] As defined in the Engagement Agreement, "Expenses" means all reasonable, documented (through receipts or invoices) out-of-pocket expenses incurred by Hilco in connection with its performance of its Services hereunder, including, without limitation: reasonable expenses of advertising, marketing, coach travel and transportation, including the cost of out-of-town travel and postage and courier/overnight express fees and other mutually agreed upon expenses incurred in connection with performing the services required by the Engagement Agreement.

and invoices are due no later than thirty (30) days after the Company's receipt of the invoice. Expenses shall not exceed $1,000 per month without the Company's prior written approval.

17.     Due to the transactional nature of the services that Hilco provides, its professionals do not bill clients on an hourly basis while performing such services. Hilco's real estate restructuring expertise was an important factor in determining the Fee and Expense Structure, and the Debtors believe that the ultimate benefit to their estates resulting from Hilco's services hereunder could not be measured by reference to the number of hours to be expended by Hilco's professionals in the performance of such services.

18.     During the 90 days before the Petition Date, Hilco did not receive any payments.

19.     The Debtors believe that the Fee and Expense Structure is reasonable and market based. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Hilco and the fee structures typically utilized by leading real estate consulting firms of similar stature to Hilco for comparable engagements, both in and out of court. The Fee and Expense structure is consistent with Hilco's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. In determining the level of compensation to be paid to Hilco and the reasonableness of such compensation, the Debtors compared Hilco's fee structure and the amount of the fees to similar real estate engagements in other chapter 11 cases.

20.     The Debtors respectfully submit that the Fee and Expense Structure has been agreed upon by the parties on an arm's-length basis in anticipation that a substantial commitment of professional time and effort will be required of Hilco and its professionals hereunder and in light of the fact that (a) such commitment may foreclose other opportunities for Hilco and (b) the actual time and commitment required of Hilco and its professionals to perform its services hereunder may vary substantially from week to week and month to month.

21.    To the best of the Debtors' knowledge, information, and belief, other than as set forth herein, Hilco has not received any promises as to compensation in connection with these Chapter 11 Cases other than as outlined in the Engagement Agreement.  Hilco has no agreement with any other entity to share any compensation received with any person other than the principals and the employees of Hilco.

### WAIVER OF COMPLIANCE WITH TIME DETAIL REQUIREMENTS

22.    Consistent with its ordinary practice and the practice of real estate advisors in other chapter 11 cases whose fee arrangements are not based on hourly fees, Hilco does not typically maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  In exchange for its services, Hilco will receive compensation as set forth in the Engagement Agreement, which is not determined by hourly rates but rather based on a percentage of savings and other value realized by the Debtors and their estates.  The detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements of Local Rule 2016-2 would require the expenditure of unnecessary time and fees in compiling time records and preparing fee applications and could hinder Hilco from providing services as efficiently as possible.  Given the foregoing and that Hilco's compensation is based on the savings to be achieved from restructuring, selling, assigning, and terminating the Leases, the Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any other guideline regarding the submission and approval of fee applications, Hilco's professionals be excused from (a) submitting monthly and interim fee applications as set forth in Bankruptcy Rule 2016 and (b) maintaining time records as set forth in Local Rule 2016-2 in connection with the services to be rendered pursuant to the Engagement Agreement; *provided* that Hilco shall (i) file a final fee application with a summary of fees earned

and expenses incurred along with a summary of what fees and expenses have been paid, and (ii) submit invoices to the Debtors and the U.S. Trustee for the payment of compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases in accordance with the Engagement Agreement when such compensation becomes due and owing and such expenses are incurred.

## INDEMNIFICATION OF HILCO

23.    The Engagement Agreement provides for mutual indemnification between the Debtors and Hilco.  Specifically, the Debtors have agreed to indemnify Hilco and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by Hilco, including without limitation, reasonable legal expenses, arising from, related to, or in any way connected with (a) the Debtors' material breach of or failure to comply with any of its agreements, covenants, representations, or warranties contained in the Engagement Agreement and (b) the fraud, negligence (including omissions) or willful misconduct of the Debtors, their officers, directors, employees, agents, or representatives.  Hilco has agreed to the same indemnification provision of the Debtors.

## HILCO'S DISINTERESTEDNESS

24.    Hilco has informed the Debtors that, as of the date hereof, except as set forth in the Kaup Declaration, (a) Hilco has no connection with the Debtors, their creditors, equity security holders, or other parties in interest in these Chapter 11 Cases; (b) Hilco does not have or represent any interest adverse to the Debtors' estates; and (c) Hilco (i) is not a creditor, equity security holder, or an insider of any of the Debtors and (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the Hilco professionals expected to assist the Debtors in these Chapter 11 Cases are related or connected to

any United States Bankruptcy Judge for the District of Delaware, the U.S. Trustee, or any person employed by the U.S. Trustee.  To the best of the Debtors' knowledge, information, and belief, Hilco is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and therefore, Hilco's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

25.    If the Debtors or Hilco are made aware of any new material facts or relationships, Hilco will provide the Court with supplemental disclosures detailing, among other things, any new potential conflicts between the Debtors and Hilco, or other significant parties in interest.

## **BASIS FOR RELIEF REQUESTED**

26.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval, "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title."  11 U.S.C. § 327(a).

27.    Additionally, under section 328(a) of the Bankruptcy Code, the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Furthermore, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

28.     The Debtors submit that for all the reasons stated above and in the Kaup Declaration, the Debtors' retention and employment of Hilco as their real estate advisors is necessary and in the best interests of the Debtors and their estates.  The terms of the Engagement Agreement were negotiated in good faith and at arm's length between the Debtors and Hilco and reflect the Debtors' evaluation of the extensive work and substantial commitment to be undertaken by Hilco during these Chapter 11 Cases.  In addition, given the numerous issues that Hilco may be required to address in performing its services for the Debtors pursuant to the Engagement Agreement, Hilco's commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Hilco's services for engagements of this nature, the Debtors submit that the terms and conditions of the Engagement Agreement are fair, reasonable, and market based under the standards set forth in section 328(a) of the Bankruptcy Code.  The Debtors also believe that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Hilco's services, (b) Hilco's substantial experience with respect to real estate consulting services and (c) the fee structures typically utilized by Hilco and other real estate consultants and advisors.

29.     The Debtors believe that employment of Hilco effective as of the Petition Date is warranted under the circumstances of these Chapter 11 Cases, as Hilco has provided and will continue to provide valuable real estate consulting services to the Debtors' estates.

30.     Based on the foregoing, the Debtors submit that the relief requested herein is appropriate.

<u>**NOTICE**</u>

31.     The Debtors will provide notice of this Application to: (i) the U.S. Trustee; (ii) proposed counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel

to the HoldCo Lenders; (vii) counsel to the DIP Agent; (viii) counsel to the DIP Lenders; and (ix) any party that has requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and (ii) grant such other and further relief as is just and proper.

Respectfully Submitted,

Dated: November 26, 2024
  Wilmington, Delaware

**Franchise Group, Inc., *et al.*,**
**Debtors and Debtors in Possession**

*/s/ David Orlofsky*
David Orlofsky
Chief Restructuring Officer