# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) <br> ) <br> FRANCHISE GROUP, *et al.*,[1] ) <br> ) <br> Debtors. ) <br> ) <br> ──────────────────────── ) <br> ) <br> FRANCHISE GROUP, *et al.*,[2] ) <br> ) <br> Plaintiffs, ) <br> ) <br> BRIAN GALE, MARK NOBLE, ) <br> TERRY PHILIPPAS, LAWRENCE BASS, ) <br> and JOHN DOES 1-20, ) <br> ) <br> Defendants. ) | Chapter 11 <br><br> Case No. 24-12480 (JTD) <br><br> (Jointly Administered) <br><br> Adversary No. 24-___ |

## COMPLAINT OF THE DEBTORS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home and Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] The Plaintiffs in this adversary case are the Debtors listed in footnote one.

Pursuant to Federal Rule of Bankruptcy Procedure 7001 and 11 U.S.C. §§ 105(a) and 362(a), the debtors and debtors-in-possession in the above-captioned cases, (collectively, the "**Debtors**") bring this Adversary Complaint seeking an injunction, enforcement of the automatic stay, and an extension of the scope of the automatic stay to include Andrew M. Laurence ("**Mr. Laurence**"), President, Chief Executive Officer, and Director of certain of the Debtors.[3]  In support of this Adversary Complaint, the Debtors aver as follows:

## NATURE OF THE ACTION

1. This is an adversary proceeding, brought in the above-captioned chapter 11 cases, commenced by the Debtors pursuant to §§ 105(a) and 362(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "**Bankruptcy Code**"), Rule 7001(7) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 65 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable hereto by Bankruptcy Rule 7065, seeking: (i) enforcement of the automatic stay; (ii) extension of the automatic stay under section 362(a) of the Bankruptcy Code; and (iii) injunctive relief under section 105(a) of the Bankruptcy Code and/or Bankruptcy Rule 7065, to enjoin, for the duration of the chapter 11 cases (the "**Injunction Period**"), the above-captioned defendants from asserting claims, commencing or continuing actions, and/or from otherwise attempting to exercise remedies against Mr. Laurence because such

---

[3] Andrew Laurence is the CEO and President of the following Debtors: Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), B. Riley Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group, Inc. (1876), Franchise Group New Holdco, LLC (0444), Franchise Group Acquisition TM, LLC (n/a), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), Franchise Group Intermediate B, LLC (7836), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323). Mr. Laurence is the CEO of Franchise Group Newco S, LLC (1814).

actions threaten to interfere with and impair the administration of the Debtors' reorganization efforts.

2. This relief is necessary because, among other reasons, Defendants Brian Gale, Mark Noble, Terry Philippas, and Lawrence Bass are plaintiffs in an action pending in Delaware Chancery Court captioned *Gale et al. v. Vintage Capital Management, LLC et al.*, Case No. 2024-0726-LWW (Del. Ch. 2024) (the "**Chancery Case**") against several co-defendants, including Mr. Laurence, who is the President, Chief Executive Officer, and/or a Director of certain of the Debtors.

3. The Chancery Case alleges that Franchise Group, Inc.'s ("**Franchise Group**") former Chief Executive Officer, Brian Kahn ("**Mr. Kahn**"), along with his investment vehicle Vintage Capital Management, LLC ("**Vintage**") and certain other Franchise Group parties, took Franchise Group private in August 2023 for a purportedly unfair merger price of $30.00 per share (the "**Take Private Transaction**"). The complaint further alleges that by doing so, Franchise Group's directors, officers, and controlling stockholders, at the time including Mr. Laurence, breached their fiduciary duties to Franchise Group's common stockholders. Any and all allegations against Mr. Laurence arise from his alleged conduct as an officer and director of Franchise Group.

4. In light of the pending chapter 11 cases, the Chancery Case poses an imminent threat of irreparable harm to the Debtors' reorganization efforts. In fact, there are several factors that justify the extension of the automatic stay afforded the Debtors to Mr. Laurence, in addition to granting injunctive relief to enforce the stay. *First*, without a stay of the proceeding against Mr. Laurence, the Chancery Case poses a substantial risk of irreparable harm to the Debtors' reorganization efforts, as the Chancery Case (i) will have the effect of being an action against the

3

Debtors themselves, (ii) will cause significant interference with, and impairment of, the Debtors' efforts to reorganize, (iii) will require Mr. Laurence to devote a portion of his limited time, energy, and resources to defending himself against the Chancery Case at a time when his attention should be on getting the Debtors through bankruptcy, (iv) raises a material risk of resulting in rulings that Defendants or others would argue collaterally estop the Debtors, and (v) could deplete assets that might otherwise be available to the Debtors' estates for the benefit of all stakeholders. This is particularly the case as, insofar as the claims asserted by the Chancery Case Plaintiffs are derivative claims, the claims themselves are property of the estates. *Second*, there is a substantial likelihood that the Debtors will be able to successfully reorganize through the pending chapter 11 proceedings. *Third*, the harm posed to the Debtors substantially outweighs any potential harm to the Defendants, as the requested injunction is limited in scope to Mr. Laurence and in time to the duration of these chapter 11 cases. *Fourth*, injunctive relief will serve the public interest in facilitating an orderly reorganization in which the legal matters concerning the Debtors are heard in a single forum—this Court.

5. As such, the Debtors seek an order enjoining—for the duration of these chapter 11 cases—the Defendants (as defined herein) from commencing or prosecuting any claims against Mr. Laurence in his official capacity as President, CEO, and Director of any of the Debtors. By a motion filed concurrently herewith (the "**Preliminary Injunction Motion**"), the Debtors also seek an Order, after notice and a hearing, preliminarily enjoining such actions.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 because this matter arises in, under, and is related to a pending bankruptcy case.

4

7. This is a core proceeding to be heard by the Court pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. This adversary proceeding is brought pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, as made applicable hereto by Bankruptcy Rules 7001(7) and 7065.

## THE DEBTORS AND RELATED NON-DEBTORS

10. Franchise Group and its Debtor affiliates comprise a corporate enterprise that controls a collection of highly recognized, market-leading, and emerging retail brands.

11. Mr. Laurence is the current President, Chief Executive Officer and member of the Board of Directors of Franchise Group and certain other Debtors.[4] Mr. Laurence previously served as an Executive Vice President of Franchise Group from October 2019 through January 2024 and served on the Board of Directors from September 2018 until May 2021. Mr. Laurence is also a current member of Debtor Freedom VCM Holdings, LLC's Board of Directors.

## THE DEFENDANTS

12. Defendant Brian Gale ("**Gale**") is a plaintiff in the Chancery Case and has alleged that he owned shares of common stock in Franchise Group and has asserted claims related to the Take-Private Transaction.

13. Defendant Mark Noble ("**Noble**") is a plaintiff in the Chancery Case and has alleged that he owned shares of common stock in Franchise Group and has asserted claims related to the Take-Private Transaction.

---

[4] *See supra* at n.3.

14. Defendant Terry Philippas ("**Philippas**") is a plaintiff in the Chancery Case and has alleged that he owned shares of common stock in Franchise Group and has asserted claims related to the Take-Private Transaction.

15. Defendant Lawrence Bass ("**Bass**") is a plaintiff in the Chancery Case and has alleged that he owned shares of common stock in Franchise Group and has asserted claims related to the Take-Private Transaction.

16. John Does 1-20 ("**John Does**"; together, with Gale, Noble, Philippas, and Bass the "**Defendants**") are any and all other persons who may seek to bring claims and/or seek prejudgment remedies against Mr. Laurence, in his official capacity as President, CEO, and Director of any of the Debtors during the Injunction Period, but whose specific identity is currently unknown.

## BACKGROUND

17. On November 3, 2024 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**").

18. The full factual background related to the Debtors' commencement of these chapter 11 cases is set forth in detail in the Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings, filed on November 4, 2024, and incorporated herein by reference. (D.I. 15, Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings) (the "**First Day Declaration**").[5]

---

[5] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

### *1. Events Leading Up To The Commencement Of These Chapter 11 Cases*

19. The Debtors are a privately held operator and acquirer of franchised and franchiseable business. *Id.* at ¶ 5. Their business segments include a diverse collection of highly recognized, market-leading, and emerging retail brands, including The Vitamin Shoppe, Pet Supplies Plus, American Freight, and Buddy's Home Furnishings. *Id.*

20. As more fully described in the First Day Declaration, in recent years, the Debtors' business segments have been negatively impacted from challenges arising from, among other things, adverse macroeconomic trends and headwinds in the retail industry. *Id.* at ¶ 6. Specifically, the Debtors have faced operational declines and losses across their businesses, underperforming retail store locations, inflationary pressure, an overleveraged balance sheet, and rising interest expenses. *Id.*

21. In August 2023, Franchise Group, then still a publicly traded company, effectuated the Take Private Transaction, which was led by Mr. Kahn. *Id.* at ¶ 7. The transaction was financed by, among others, B. Riley Principal Investments, LLC (and certain of its affiliates), and Irradiant Partners, and was predicated on reducing the burdens associated with being a public company and addressing some of the challenges described above, as well as the relatively rapid deleveraging of the Debtors through monetization transactions involving the various Franchise Group business segments. *Id.*

22. In the months leading up to the Petition Date, the Debtors and their Restructuring Advisors explored numerous restructuring and strategic alternatives, including marketing and pursuing going concern sales for certain of the Debtors' business segments, and soliciting and negotiating proposals for a value maximizing and holistic restructuring transaction with the

Debtors' key lender constituents, through both a chapter 11 process and on an out-of-court basis. *Id.* at ¶ 13.

23. Despite these efforts, the Debtors were unable to achieve a comprehensive, consensual out-of-court transaction on the timeline required by the Debtors' liquidity constraints. *Id.* at ¶ 78. As a result, the Debtors quickly pivoted to negotiating the terms of a comprehensive restructuring that could be implemented through a chapter 11 process, with the support of certain of their First Lien Term Loan Lenders.

24. The culmination of the Debtors' prepetition restructuring efforts was their entry into the Restructuring Support Agreement with the Consenting First Lien Lenders. On the Petition Date, the Debtors commenced these chapter 11 cases to implement the restructuring transactions set forth in the Restructuring Support Agreement.

### 2. *Actual And Imminent Litigation Against Andrew Laurence*

25. In August 2023, Franchise Group completed the Take-Private Transaction. As further described in the First Day Declaration, pursuant to the Take-Private Transaction, Franchise Group's common shareholders, other than Mr. Kahn and certain other shareholders of Franchise Group that agreed to "roll-over" their Franchise Group equity through the transaction, received $30.00 in cash for each share of Franchise Group's common shares that they held. First Day Declaration at ¶ 33. This represented a premium of 31.9% to Franchise Group's unaffected closing common stock price on March 17, 2023, the last trading day before Franchise Group announced the receipt of the unsolicited proposal for the Take-Private Transaction. *Id.* Moreover, Franchise Group's preferred stock was redeemed in cash for a redemption price equal to $25.00 per share, plus any accrued and unpaid dividends thereon. As a result of the Take-Private Transaction,

Franchise Group's common stock and preferred stock ceased trading and were delisted from the Nasdaq Global Select Market. *Id.*

26. Mr. Laurence is one of five co-defendants in the Chancery Case, brought by the Defendants and concerning the Take-Private Transaction. Specifically, on July 12, 2024, Defendants Gale, Noble, Philippas, and Bass brought the Chancery Case, a class action lawsuit, on behalf of themselves and other similarly situated former Franchise Group stockholders against Vintage Capital Management, LLC, Mr. Kahn, Mr. Laurence, Matthew Avril, and B. Riley Financial, Inc. (together, the "**Chancery Case Defendants**").

27. The Chancery Case challenges the fairness of the Take-Private Transaction to the former Franchise Group stockholders, alleging that the Chancery Case Defendants, including Mr. Laurence, mishandled the Take-Private Transaction and breached their fiduciary duties to the former stockholders, resulting in an unfair merger process that failed to properly compensate the former stockholders for their shares.

### 3. *The Debtors' Financial Obligations to Mr. Laurence*

28. The Debtors have agreed to indemnify Mr. Laurence against all litigation costs and judgments arising in connection with his service to the Debtors. For example, section 8 of Debtor Franchise Group, Inc.'s Amended and Restated By-Laws provides that "[t]he Corporation shall indemnify any and all of its directors or officers, including former directors or officers, and any employee, who shall serve as an officer or director of any corporation at the request of this Corporation, to the fullest extent permitted under and in accordance with the laws of the State of Delaware." Article VII of Debtor Franchise Group, Inc.'s Third Amended and Restated Certificate of Incorporation provides similar protections, stating that "[t]he Corporation shall indemnify and hold harmless . . . any person . . . who was or is made or is threatened to be made a party . . . in

any [proceeding] . . . by reason of the fact that he or she . . . is or was a director or officer of the Corporation or while a director or officer of the Corporation . . . against all liability and loss suffered and expenses (including attorneys' fees) reasonably incurred." Similarly, section 5.9(a) of Debtor Freedom VCM Holdings, LLC's Second Amended and Restated Limited Liability Company Agreement provides that "[n]o Director or Officer in his capacity as such . . . shall be liable to the Company or any Member for monetary damages arising from any actions taken, or actions failed to be taken, in his or her capacity as such except for (i) liability for acts that involve fraud, willful misconduct or bad faith and (ii) liability with respect to any transaction from which such Person derived a personal benefit in violation of this Agreement."

29. These indemnification obligations, which shall remain in effect during the bankruptcy proceeding, mean that the Debtors will face a financial burden that will threaten the Debtors' estates if the Chancery Case is permitted to proceed against Mr. Laurence.

30. Furthermore, the Debtors are the owners of certain director and officer insurance policies (the "**D&O Policies**") that cover the defense or payment of judgment for litigation arising in connection with a director's or officer's work on behalf of the Debtors. The annual limits of these D&O policies are eroded by the cost of defending against defense costs. As the current President, CEO, and Director of certain of the Debtors, Mr. Laurence is insured under the Debtors' D&O Policies. As a result, continued litigation against Mr. Laurence may require the Debtors to rely on these D&O Policies to fund Mr. Laurence's defense and pay any potential judgment, which would erode the policy limits and diminish the Debtors' estates.

### 4. *Additional Burdens On The Debtors*

31. In addition, allowing the Defendants to pursue claims against Mr. Laurence would significantly burden the Debtors in several ways. *First,* it would pose a substantial risk of

irreparable harm to the Debtors' reorganization efforts, as the Chancery Case (i) will have the effect of being an action against the Debtors themselves, (ii) will cause significant interference with, and impairment of, the Debtors' efforts to reorganize, (iii) will require Mr. Laurence to devote a portion of his limited, time, energy, and resources to defending himself against the Chancery Case at a time when his attention should be on getting the Debtors through bankruptcy, (iv) raises a material risk of result in potentially preclusive rulings that Defendants or others would argue collaterally estop the Debtors, and (v) could deplete assets that might otherwise be available to the Debtors' estates for the benefit of all stakeholders.  This is particularly the case as, insofar as the claims asserted by the Chancery Case Plaintiffs are derivative claims, the claims themselves are property of the estates.  *Second*, there is a substantial likelihood that the Debtors will be able to successfully reorganize through the pending chapter 11 proceedings.  *Third*, the harm posed to the Debtors substantially outweighs any potential harm to the Defendants, as the requested injunction is limited in scope to Mr. Laurence and in time to the duration of these Bankruptcy Cases.  *Fourth*, injunctive relief will serve the public interest in facilitating an orderly reorganization in which the legal matters concerning the debtors are heard in a single forum—this Court.

## COUNT I
## DECLARATORY RELIEF AGAINST ALL DEFENDANTS UNDER SECTION 362(a)

32.   The Debtors repeat and reallege the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

33.   Section 362(a)(1) of the Bankruptcy Code operates as a stay

> applicable to all entities, of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before commencement of the case under this title.

11

11 U.S.C. § 362(a)(1).

34.     Section 362(a)(3) of the Bankruptcy Code, in turn, operates as a stay "applicable to all entities" of "any act to obtain property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Further, section 362(a)(6) of the Bankruptcy Code prohibits "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title."

35.     Because Debtors Franchise Group and Freedom VCM Holdings, LLC owe broad indemnification obligations to Mr. Laurence, a judgment against Mr. Laurence would adversely affect the Debtors' estates and prospects for successful reorganization.

36.     Additionally, because Mr. Laurence is covered under the Debtors' D&O Policy, litigation against Mr. Laurence would require the Debtors to rely on insurance to pay for Mr. Laurence's defense as well as any potential judgment, which would further diminish the Debtors' estates and adversely impact their prospects for successful reorganization.

37.     As discussed above, circumstances exist justifying the extension of the automatic stay to Mr. Laurence.  Specifically, the Chancery Case would give rise to costly indemnification claims against the Debtors, would require extensive participation by the Debtors, and would create a risk of collateral estoppel or inconsistent rulings.

38.     Moreover, actions against Mr. Laurence would divert his resources and attention from the Debtors' reorganization at this critical time.

39.     Finally, the claims asserted in the Chancery Case against Mr. Laurence are derivative claims that constitute property of the estate.  Allowing these claims against Mr. Laurence to continue in the Chancery Case would therefore directly violate the automatic stay.

40. Accordingly, the Debtors are entitled to an Order extending the automatic stay under section 362(a) to enjoin all Defendants, for the duration of the Injunction Period, from pursuing any claims against Mr. Laurence, commencing or continuing any action against Mr. Laurence, or maintaining prejudgment remedies against Mr. Laurence.

41. Further, the controversy between the Debtors and Defendants by reason of Defendants' actions to date against Mr. Laurence threatens to irreparably harm the Debtors' reorganization efforts. Accordingly, declaratory judgment under 28 U.S.C. § 2001 is appropriate.

WHEREFORE, for all the above-stated reasons, the Debtors respectfully request that the Court enter an Order enforcing the automatic stay under § 362(a) of the Bankruptcy Code, declaring that the applicable Defendants' litigation commenced against Mr. Laurence violates the automatic stay, and granting such other relief as the Court deems just.

## COUNT II
## INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS UNDER SECTION 105(a) AND/OR BANKRUPTCY RULE 7065

42. The Debtors repeat and reallege the allegations contained in paragraphs 1 through 40 above as if fully set forth herein.

43. Section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 relief is particularly appropriate where, as here, it is essential to ensure the Debtors' ability to successfully pursue and confirm a plan of reorganization.

44. The Debtors are entitled to an injunction under section 105(a) of the Bankruptcy Code enjoining the Defendants from proceeding against Mr. Laurence for the duration of the chapter 11 cases because circumstances exist here justifying such an injunction, such as the unity of interest between Mr. Laurence and the Debtors.

45. In addition to potentially depleting the assets of the estates, allowing claims against the Mr. Laurence to proceed would divert Mr. Laurence's attention from the Debtors' reorganization efforts, potentially imperiling the reorganization efforts.

46. Any supposed harm suffered by the Defendants by having their enforcement efforts against Laurence temporarily enjoined is vastly outweighed by the potential harm to be suffered by the Debtors were the actions against Mr. Laurence allowed to proceed. The requested injunctive relief will merely delay the Defendants' claims against Mr. Laurence, rather than dispose of Defendants' claim against Mr. Laurence. Thus, the harm of temporarily enjoining the Chancery Case, as well as any other actions brought against Mr. Laurence, is minimal.

47. The Debtors are also entitled to an injunction pursuant to Federal Rule 65, made applicable to this Adversary Proceeding by Bankruptcy Rule 7065, because: (i) the Debtors have a substantial likelihood of successfully reorganizing; (ii) there is a substantial risk of irreparable harm to the Debtors if further prosecution of the Chancery Case as it relates to Mr. Laurence is not enjoined; (iii) the harm to the Debtors substantially outweighs the potential harm to the Defendants resulting from a temporary delay in pursuing their claims; and (iv) injunctive relief would serve the public interest by increasing the likelihood of the Debtors' successful reorganization and would promote judicial economy by consolidating all related actions before the Bankruptcy Court, as contemplated by the Bankruptcy Code.

WHEREFORE, for all the foregoing reasons, the Debtors respectfully request entry of an Order granting an injunction enjoining, for the duration of the Injunction Period, Defendants from commencing or continuing any action or legal proceeding, including but not limited to any direct claim, counterclaim, crossclaim, appeal, or any other action, and granting the Debtors such other relief as the Court deems just.

**PRAYER FOR RELIEF**

WHEREFORE, the Debtors respectfully request that the Court: (i) declare that automatic stay is extended to Mr. Laurence for any actions arising out of his official capacity as President, Chief Executive Officer, or Director of any of the Debtors; (ii) declare that any actions against Mr. Laurence arising out of his official capacity as President, Chief Executive Officer, or Director of any of the Debtors should be temporarily stayed pursuant to section 362(a) of the Bankruptcy Code; (iii) enter an injunction pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065 enjoining, for the Injunction Period (as defined above), the commencement or continuation of any action or proceeding of any nature whatsoever by Defendants against Mr. Laurence arising out of his official capacity as President, Chief Executive Officer, or Director of any of the Debtors; and (iv) award such other legal and equitable relief as the Court deems just and proper.

*[Signature Page Follows]*

Dated: November 27, 2024
      Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Edmon L. Morton*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

**WILLKIE FARR & GALLAGHER LLP**

James C. Dugan
(admitted *pro hac vice*)
Stuart R. Lombardi
(admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
jdugan@willkie.com
slombardi@willkie.com

*Proposed Attorneys for the Debtors and Debtors-in-Possession*