## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>**January 15, 2025 at 10:00 a.m. (ET)** |
| | **Objection Deadline:**<br>**December 17, 2024 at 4:00 p.m. (ET)** |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP AS TAX, ACCOUNTING AND VALUATION SERVICES PROVIDER, EFFECTIVE AS OF NOVEMBER 3, 2024, AND (II) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby file this application (the "Application"), seeking entry of an order,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>"), (a) authorizing the Debtors to employ and retain Ernst & Young LLP ("<u>EY LLP</u>") effective as of November 3, 2024, pursuant to the terms and conditions set forth in the master services agreement, dated November 1, 2024 (the "<u>Master Services Agreement</u>"), and certain related statements of work, between the Debtors and EY LLP (the "<u>Statements of Work</u>", and together with the Master Services Agreement, the "<u>Engagement Letters</u>"), copies of which are attached as Exhibits A-1 through A-10 to the Hill Declaration (as defined herein) and incorporated by reference herein, and (b) granting related relief.  In support of this Application, the Debtors submit and incorporate by reference the declaration of Andrea Hill, (the "<u>Hill Declaration</u>"), which is attached hereto as <u>Exhibit B</u>.

### **<u>JURISDICTION AND VENUE</u>**

1.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware  (the "<u>Local Rules</u>"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327(a), 328(a), and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"),

Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and Local Rules 2014-1 and 2016-2.

## BACKGROUND

4.      On November 3, 2024 (the "Petition Date"), each of the Debtors filed voluntary

petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The

Debtors are authorized to operate their business and manage their properties as debtors and debtors

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On November 19, 2024, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket

No. 188] (the "Committee").

6.      Additional information regarding the Debtors' business, capital structure, and the

circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of*

*David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No.

15] (the "First Day Declaration").

## RELIEF REQUESTED

7.      By this Application, the Debtors request authority, pursuant to sections 327(a),

328(a), and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules

2014-1 and 2016-2, to employ and retain EY LLP to provide certain tax, accounting and valuation

services to the Debtors, effective as of the Petition Date pursuant to the terms and conditions set

forth in the Engagement Letters.

## EY LLP'S QUALIFICATIONS

8.      EY LLP has significant qualifications and experience as an outside tax, accounting

and valuation services provider.  The firm's related experience is widely recognized, and it

regularly provides such services to large and complex business entities.  Significantly, EY LLP has

extensive experience in delivering such services to debtors who have filed chapter 11 cases.  See,

e.g., In re Yellow Corp., No. 23-11069 (CTG) (Bankr. D. Del. Sept. 18, 2023); In re Clovis

Oncology Inc., et al., No. 2211292 (JKS) (Bankr. D. Del. Mar. 24, 2023); In re Carestream Health,

Inc., et al., No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022); In re Riverbed Tech., Inc., No. 21-

11503 (CTG) (Bankr. D. Del. Jan. 3, 2022); In re EHT US1, Inc., et al., No. 21-10036 (CSS)

(Bankr. D. Del. May 11, 2021); In re MatlinPatterson Glob. Opportunities Partners II L.P., et al.,

No. 21-11255 (DSJ) (Bankr. S.D.N.Y. Aug. 24, 2021); In re Pyxus International, Inc., No. 20-

11570 (LSS) (Bankr. D. Del. Aug. 30, 2020); In re Alpha Entm't LLC, No. 20-10940 (LSS)

(Bankr. D. Del. July 12, 2020); In re LBI Media, Inc., et al., No. 18-12655 (CSS) (Bankr. D. Del.

July  8,  2019);    In re ATD Corp.,    No. 18-12221    (KJC)   (Bankr. D. Del. Nov. 13, 2018);

In re Se. Grocers, LLC, No.  18-10700  (MFW)  (Bankr.  D.  Del.  May  14,  2018);

In re Momentive Performance  Materials  (MPM  Silicones,  LLC),  No.  14-22503  (SDD)

(Bankr. S.D.N.Y. Jun. 26, 2014);    In re GSE Envtl., Inc.,    No.    14-11126    (MFW)

(Bankr. D. Del. Jun.  10,  2014); In re Oncure Holdings, Inc., No. 13-11540  (LSS)  (Bankr. D.

Del. Jul. 23, 2014); and In re Exide Techs., No. 13-11482 (KJC) (Bankr. D. Del. Dec. 17, 2013).

9.       Accordingly, EY LLP is both well-qualified and able to provide tax services to the

Debtors in these Chapter 11 Cases in an efficient and timely manner.  The Debtors believe that EY

LLP's employment is in the best interests of the Debtors, their estates, and their creditors.

### SERVICES TO BE PROVIDED

10.     As set forth in further detail in the Engagement Letters, EY LLP has agreed to

provide certain tax, accounting and valuation services (the "Services") to the Debtors in

connection with these Chapter 11 Cases. A summary description of each of the Services is summarized below and fully described in the Engagement Letters:[2]

- 2023/2024 Tax Compliance [Exhibit A-2][3]:
  - o Preparation of tax returns for the years ended December 30, 2023 and December 28, 2024, inclusive of extensions and quarterly estimated payments, if required;

- 2024/2025 Tax Provision [Exhibit A-3]:
  - o Preparation of tax provision calculations for 2024 (annual) and 2025 (interim) financial statements;

- IRS Audit and Appeals [Exhibit A-4]:
  - o Manage a 2019 IRS audit and Appeals process for Franchise Group New Holdco, LLC;

- State Notice and State Audit Assistance [Exhibit A-5]:
  - o Assist in analyzing and responding to notices from state and local jurisdictions and support the Debtors through state tax audits, as required;

- Debt Restructuring Tax Assistance [Exhibit A-6]:
  - o Advise Company on tax implications of contemplated restructuring alternatives;

- Routine On-Call advisory [Exhibit A-7]:
  - o Routine on-call advisory for miscellaneous tax questions that arise time to time;

- Valuation Assistance [Exhibit A-8]:
  - o Annual goodwill and long-lived asset impairment testing (ASC 350/ASC 360)
  - o Incremental borrowing rate analysis
  - o Fresh start accounting valuation (ASC 852);

- Accounting Assistance [Exhibit A-9]:
  - o Ad hoc assistance with general and technical accounting and financial reporting matters during the bankruptcy proceedings; and

- Vector Depreciation [Exhibit A-10]:
  - o Compute tax depreciation using EY LLP's Cost Recovery Vector platform ("Vector") for the tax years ending 12/28/2024 and 12/27/2025.

---

[2] The summaries of certain terms of the Engagement Letters herein are qualified in their entirety by reference to the provisions of such Engagement Letters. To the extent there is any discrepancy between the summaries contained in this application and the terms of the Engagement Letters, the terms of the Engagement Letters shall control. Unless otherwise defined, capitalized terms used in these summaries shall have the meanings ascribed to them in the Engagement Letters.

[3] Exhibit A-1 is the Master Services Agreement that governs the specific services that EY LLP will provide under the Statements of Work presented in Exhibits A-2 through A-10.

11.     EY LLP's performance of the Services is critical to the Debtors' ongoing efforts to successfully achieve their chapter 11 objectives and preserve and maximize the value of their estates.  As a result, the Debtors submit that EY LLP is well-qualified and best suited to perform the Services.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

12.     All of the Services will be appropriately directed by the Debtors in an effort to avoid duplication of services among the other professionals retained in these Chapter 11 Cases.  The Debtors believe that the Services will complement, and will not be duplicative of, any services provided by the Debtors' other professionals.

## PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

13.     EY LLP intends to charge the Debtors fees for the Services, as set forth in the Engagement Letters and summarized below.

- 2023/2024 Tax Compliance [Exhibit A-2]:
  - Fixed fee of $640,000 broken out as follows:

    - For short period compliance ended December 30, 2023, the fixed fee is $325,000.  Amount has been fully paid by Debtors.

    - For compliance ending December 28, 2024, the fixed fee is $315,000.

- 2024/2025 Tax Provision [Exhibit A-3]
  - Based on the actual time that EY LLP's professionals spend performing the services, billed at the following agreed upon rates for each level:

| Level | Rate |
|---|---|
| Partner/Principal | $900 |
| Managing Director | $875 |
| Senior Manager | $750 |
| Manager | $625 |
| Senior | $410 |
| Staff | $275 |

- IRS Audit and Appeals [Exhibit A-4]:
  - o Based on the actual time that EY LLP's professionals spend performing the services, billed at the following agreed upon rates for each level:

| Level | Rate |
|---|---|
| Partner/Principal | $900 |
| Managing Director | $875 |
| Senior Manager | $750 |
| Manager | $625 |
| Senior | $410 |
| Staff | $275 |

- State Notice and State Audit Assistance [Exhibit A-5]:
  - o Based on the actual time that EY LLP's professionals spend performing the services, billed at the following agreed upon rates for each level:

| Level | Standard Rate | National/State Desk Rate |
|---|---|---|
| Partner/Principal | $750 | $900 |
| Managing Director | $750 | $875 |
| Senior Manager | $650 | $750 |
| Manager | $500 | $625 |
| Senior | $300 | $410 |
| Staff | $225 | $275 |

- Debt Restructuring Tax Assistance [Exhibit A-6]:
  - o Based on the actual time that EY LLP's professionals spend performing the services, billed at the following agreed upon rates for each level:

| Level | Rate |
|---|---|
| Partner/Principal | $1,250 |
| Managing Director | $1,150 |
| Senior Manager | $950 |
| Manager | $850 |
| Senior | $600 |
| Staff | $400 |

- Routine On-Call advisory [Exhibit A-7]:
  - o Based on the actual time that EY LLP's professionals spend performing the services, billed at the following agreed upon rates for each level:

| Compliance Rate Card | | Consulting Rate Card | |
|---|---|---|---|
| Level | Rate | Level | Rate |
| Partner/Principal | $750 | Partner/Principal | $900 |

| Managing Director | $750 | Managing Director | $875 |
|---|---|---|---|
| Senior Manager | $650 | Senior Manager | $750 |
| Manager | $500 | Manager | $625 |
| Senior | $300 | Senior | $410 |
| Staff | $225 | Staff | $275 |

The nature of the specific projects under this statement of work are such that the expected fees associated with professional time incurred for each individual project is not to exceed $25,000.

- Valuation Assistance [Exhibit A-8]:
  - o Based on the actual time that EY LLP's professionals spend performing the services, billed at the following agreed upon rates for each level:

| Level | Rate |
|---|---|
| Partner/Principal | $750 |
| Managing Director | $700 |
| Senior Manager | $600 |
| Manager | $500 |
| Senior | $400 |
| Staff | $250 |

- Accounting Assistance [Exhibit A-9]:
  - o Based on the actual time that EY LLP's professionals spend performing the services, billed at the following agreed upon rates for each level:

| Level | Rate |
|---|---|
| Partner/Principal | $750 |
| Managing Director | $700 |
| Senior Manager | $600 |
| Manager | $500 |
| Senior | $400 |
| Staff | $250 |

- Vector Depreciation [Exhibit A-10]:
  - o Fixed fee of $25,000-$28,000 per processing run.

14. EY LLP's fees are exclusive of taxes or similar charges, as well as customs, duties, or tariffs imposed in respect of the Services, all of which the Debtors shall pay (other than taxes imposed on EY LLP's income generally).

15.     In addition to the fees set forth above, the Debtors shall reimburse EY LLP for any direct expenses incurred in connection with EY LLP's retention in these Chapter 11 Cases and the performance of the Services set forth in the Engagement Letters, including all taxes, including sales taxes, and other indirect taxes.  EY LLP's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations, and other expenses (including any fees or reasonable expenses of EY LLP's legal counsel) related to the Services.

16.     On or about September 20, 2024, the Debtors paid a retainer of $100,000 for tax and accounting services to EY LLP.  As of the Petition Date, the balance of the Retainer was approximately $59,516.  EY LLP shall apply the remaining balance of the Retainer toward postpetition fees and expense reimbursements that the Debtors are authorized to pay to EY LLP during these Chapter 11 Cases.

17.     During the ninety days before the Petition Date, the Debtors paid approximately $552,701 to EY LLP, of which approximately $100,000 constituted the Retainer.

18.     As of the Petition Date, EY LLP was not owed any money by the Debtors in respect of services provided by EY LLP prior to the Petition Date.

19.     If EY LLP is requested or authorized by the Debtors, or is required by government regulation, subpoena, or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the Engagement Letters, the Debtors would, so long as EY LLP is not a party to the proceeding in which the information is sought, reimburse EY LLP for its professional time and expenses, as well as the fees and expenses of EY LLP's counsel, incurred in responding to such requests.

**CERTAIN OTHER TERMS OF THE ENGAGEMENT LETTERS**

20.     EY LLP's provision of Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters.  Included among the terms and conditions set forth in the Engagement Letters is language substantially similar to the following:

> Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Client or its subsidiaries or of EY) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits.  The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made.  If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 1 to this Agreement.  Judgment on any arbitration award may be entered in any court having proper jurisdiction.  The foregoing is binding upon Client, EY and any all successors and assigns thereof.

21.     The Engagement Letters may be terminated by EY LLP or the Debtors in accordance with their terms, but in any event the Engagement Letters will expire upon the effective date of the Debtors' confirmed chapter 11 plan, or the liquidation of the Debtors' assets under chapter 11 or 7 of title 11 of the Bankruptcy Code, or otherwise.  Notwithstanding such termination, however, the Debtors' estates will remain obligated to pay all accrued fees and expenses as of the effective date of such termination.  Moreover, certain other terms of the

Engagement Letters will continue (either indefinitely or for a specified period of time) following termination.

## EY LLP'S DISINTERESTEDNESS

22.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Hill Declaration, EY LLP:  (a) does not hold or represent an interest adverse to the Debtors or their estates; and (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.  To the extent that EY LLP discovers any new relevant facts or relationships bearing on the matters described herein during the period of its retention, EY LLP will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## BASIS FOR RELIEF

**A.      The Bankruptcy Code Permits the Employment and Retention of EY LLP on the Terms of the Engagement Letters.**

23.     Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons."    11 U.S.C. § 327(a).    For the reasons discussed above and in the Hill Declaration, EY LLP satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.

24.     Additionally, section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a).    Accordingly, section 328 permits the compensation of

professionals, including tax, accounting and valuation services providers, on more flexible terms that reflect the nature of their services and market conditions.

25.     The Debtors respectfully submit that the terms and conditions of the Engagement Letters are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code given the numerous issues that EY LLP may be required to address in the performance of the Services and the market prices for EY LLP's services for engagements of this nature.

26.     As set forth above, EY LLP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

**B.      The Indemnification Provision in the Engagement Letters Is Appropriate.**

27.     The Debtors and EY LLP believe that the indemnification provision in the Engagement Letters, as modified by the Order, is customary and reasonable for tax engagements both out-of-court and in chapter 11 cases.  See United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.), 315 F.3d 217, 234 (3d Cir. 2003).

28.     The indemnification provision was negotiated between the Debtors and EY LLP at arm's-length and in good faith.  The Debtors respectfully submit that the indemnification provision is reasonable and in the best interests of the Debtors, their estates, and stakeholders.  Accordingly, the Debtors respectfully submit that the terms of the indemnification provision are reasonable and customary and should be approved.

**C.**         **The Retention of EY LLP Is Critical to the Debtors' Success.**

29.     Denial of the relief requested herein will deprive the Debtors of the assistance of a skilled tax, valuation and accounting services provider in these Chapter 11 Cases.  The Debtors submit that the employment and retention of EY LLP effective as of the Petition Date is warranted by the circumstances of these Chapter 11 Cases.  The Third Circuit has ruled that a bankruptcy court may grant an application of employment and retention effective as of the Petition Date where the services performed by the applicant "were necessary under the circumstances." In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986).  Factors such as "whether the applicant was under time pressure to begin service" and absence of prejudice favor the granting of such an application. Id. The Debtors respectfully submit that EY LLP's Services "were necessary under the circumstances" since they have been critical to the Debtors' efforts to undertake these Chapter 11 Cases.  Further, the Debtors believe that no party in interest can be prejudiced by the employment and retention of EY LLP effective as of the Petition Date because EY LLP's Services will benefit the Debtors' estates as a whole.

30.     Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and employ EY LLP in these Chapter 11 Cases on the terms described in the Engagement Letters.

## <u>NOTICE</u>

31.     Notice of this Application has been or will be provided to: (i) the U.S. Trustee; (ii) proposed counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel to the HoldCo Lenders; (vii) counsel to the DIP Agent; (viii) counsel to the DIP Lenders; and

(ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully entry of the Order, substantially in the form attached hereto as Exhibit A, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated: December 3, 2024
         Wilmington, Delaware

**Franchise Group, Inc., et al.,**
**Debtors and Debtors in Possession**

*/s/ David Orlofsky*
David Orlofsky
Chief Restructuring Officer