## EXHIBIT B

**Vineyard Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) | Case No. 24-12480 (JTD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### DECLARATION OF BRADLEY VINEYARD IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF DELOITTE & TOUCHE LLP AS INDEPENDENT AUDITOR EFFECTIVE AS OF THE PETITION DATE

I, Bradley Vineyard, under penalty of perjury, declare as follows:

1.      I am a partner at Deloitte & Touche LLP ("Deloitte & Touche"), which has an office at 650 S. Tryon Street, Suite 1800, Charlotte, North Carolina 28202.  I am duly authorized to make and submit this declaration (this "Declaration") on behalf of Deloitte & Touche, as independent auditor to the debtors in possession in the above-captioned cases (collectively, the "Debtors"), in

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), B. Riley Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home and Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Deloitte & Touche LLP as Independent Auditor Effective as of the Petition Date*, which was filed contemporaneously herewith (the "Application").[2]

2.      The Debtors seek to retain Deloitte & Touche to provide independent audit services pursuant to the terms and conditions set forth in that certain engagement letter, dated October 22, 2024 (the "Engagement Letter"), between Deloitte & Touche and the Debtors, a copy of which is attached hereto as Exhibit 1.

3.      The statements set forth in this Declaration are based upon my personal knowledge, information and belief, and/or client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte & Touche or its affiliates.

## DELOITTE & TOUCHE'S QUALIFICATIONS

4.      Deloitte & Touche is a public accounting firm with offices across the United States. Deloitte & Touche has significant experience in providing audit services in large and complex chapter 11 cases on behalf of debtors throughout the United States, including numerous large chapter 11 cases in this district.  Such experience renders Deloitte & Touche well-qualified and able to provide services to the Debtors.  Deloitte & Touche's services fulfill an important need and are not provided by any of the Debtors' other professionals.

5.      In addition, since approximately September 2019, Deloitte & Touche has provided audit services to the Debtors.  In providing such prepetition professional services to the Debtors, Deloitte & Touche is familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, and related matters.  Having worked with the Debtors' management, Deloitte & Touche has developed relevant experience and knowledge regarding the

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

Debtors that will assist it in providing effective and efficient services for the Debtors. Accordingly, Deloitte & Touche is both well-qualified and able to provide the services for the Debtors in an efficient and timely manner.

## DISINTERESTEDNESS

### A. *Background Information*

6.      Deloitte Touche Tohmatsu Limited ("DTTL") is a UK private company limited by guarantee. DTTL itself does not provide services to clients. Each of the member firms of DTTL (each a "DTTL Member Firm") is a legally separate and distinct entity. The DTTL Member Firms are primarily organized on an individual country or regional basis and operate within the legal and regulatory framework of their particular jurisdiction(s). The DTTL Member Firm structure reflects the fact that the DTTL Member Firms are not affiliates, subsidiaries or branch offices of each other or of a global parent. Rather, they are separate and independent firms that have come together to practice under a common brand and shared methodologies, client service standards, and other professional protocols and guidelines. DTTL Member Firm partners and/or principals are generally the sole owners of their respective DTTL Member Firms. There is no overlap with respect to a partner's or principal's ownership in its respective DTTL Member Firm and any other DTTL Member Firm. Profits are not shared between or among the DTTL Member Firms.

7.      In the United States, Deloitte LLP is a DTTL Member Firm. Like DTTL, Deloitte LLP does not provide services to clients. Rather, Deloitte LLP has operating affiliates that perform services for clients, including Deloitte & Touche, Deloitte Financial Advisory Services LLP ("Deloitte FAS"), Deloitte Consulting LLP ("Deloitte Consulting"), Deloitte Tax LLP ("Deloitte Tax"), and Deloitte Transactions and Business Analytics LLP ("DTBA") (Deloitte LLP and each of the foregoing, and together with their respective direct and indirect subsidiaries, the "Deloitte U.S. Entities"). The partners and/or principals of each operating affiliate of Deloitte LLP are owners of

their respective affiliate along with, directly or indirectly, Deloitte LLP. Generally, each affiliate's respective partners and principals are also partners and principals, as applicable, of Deloitte LLP.

### B. *Conflicts Check Process*

8.      Subject to the foregoing, except as set forth herein and in the attachments hereto, to the best of my information, knowledge, and belief based on reasonable inquiry: (a) neither I, Deloitte & Touche, nor any partner, principal, or managing director of Deloitte & Touche that is anticipated to provide the services for which Deloitte & Touche is to be retained (the "Deloitte & Touche Engagement Partners/Principals/Managing Directors") holds any interest adverse to the Debtors with respect to the matters on which Deloitte & Touche is to be retained in their Chapter 11 Cases; and (b) Deloitte & Touche has no relationship to the Debtors, their significant creditors, certain other parties-in-interest, or to the attorneys that are known to be assisting the Debtors in their Chapter 11 Cases, except as stated herein or in any attachment hereto.

9.      In connection with Deloitte & Touche's retention by the Debtors in these Chapter 11 Cases, Deloitte & Touche undertook searches to determine, and to disclose, whether it or its affiliates, is or has been employed by or has other relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtors (the "Potential Parties-in-Interest"), whose specific names were provided to Deloitte & Touche by the Debtors, listed on Schedule 1 attached hereto. To check upon and disclose possible relationships with significant Potential Parties-in-Interest in these Chapter 11 Cases, Deloitte & Touche researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or significant Potential Parties-in-Interest.

10.     As described herein, for the most part, the conflicts searches conducted by Deloitte

4

& Touche involves checking client and other databases of the Deloitte U.S. Entities.  Given the separateness of the various DTTL Member Firm as described above, the Deloitte U.S. Entities do not have the capability to directly check the client or other databases of any of the non-U.S. DTTL Member Firms or their respective affiliates or subsidiaries.  However, notwithstanding the separateness of the DTTL Member Firms, the Deloitte U.S. Entities' checking procedures in bankruptcy cases do result in the gathering of certain information related to the DTTL Member Firms, as described below.

11.     When any of Deloitte LLP's operating affiliates, such as Deloitte & Touche, is to be the subject of an application to be retained in a chapter 11 case, a process commences regarding checking connections to the debtor, its affiliates, and its parties in interest (as provided by the debtor).  With the assistance of the Deloitte U.S. Entities' conflicts team (the "Conflicts Team"), a series of conflicts checking procedures are undertaken, including checking a number of Deloitte U.S. Entities' databases for their connections.  Additionally, the Conflicts Team performs procedures to identify certain relationships of other DTTL Member Firms, as described below:

   a) With respect to a debtor and its affiliates, the Conflicts Team will:

      i) Initiate cross border check requests to the DTTL Member Firm(s) where the debtor or debtor affiliate is domiciled (i.e., the country of incorporation or the entity's headquarters, as the case may be) based upon information provided by the debtors and research by the Conflicts Team of publicly available information. The DTTL Member Firm(s) will then search applicable local databases to identify client or non-client relationships in their jurisdiction (such as lender, vendors, business relationship entities or third parties associated with a client engagement).

      ii) Perform a search of the cross border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms, which are submitted when a DTTL Member Firm seeks to commence an engagement with or involving a U.S. entity.[3]  This search is conducted to identify whether those prospective engagements involved the debtor or its affiliates domiciled in the U.S. as the engaging client or non-client relationship (such as business

---

[3]     These cross-border conflict check requests are pursuant to a policy adopted by DTTL Member Firms.

relationship entities or third parties associated with a client engagement).

    iii) Perform a search of the database system associated with audit and other related independence requirements (the "<u>Independence Database</u>") to identify possible connections with debtor and debtor affiliates with respect to whom such requirements are actually or potentially implicated. Each DTTL Member Firm is required to input its respective audit and attest clients into the Independence Database, and all DTTL Member Firms have access to the Independence Database.[4] Each entity in the Independence Database has a designated partner who is responsible for approving and monitoring services for entities included in its corporate tree. The Independence Database includes audit and attest clients of the various DTTL Member Firms, as well as certain other non-clients thereof.

  b) With respect to a debtor's parties in interest, the Conflicts Team will:

    i) Perform a search of the cross-border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms (described above) to identify whether those prospective engagements involved a U.S.-domiciled party in interest as a direct attest or litigation client or business relationship entity.

    ii) Perform a search of the Independence Database to determine whether a party in interest is identified therein.

    12.    Deloitte & Touche and/or its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other Potential Parties-in-Interest. Accordingly, Deloitte & Touche and/or its affiliates have or may have provided professional services, may currently provide professional services, and/or may in the future provide professional services in matters unrelated to these Chapter 11 Cases to certain of the Potential Parties-in-Interest. Additionally, certain of these Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte & Touche and/or its affiliates and the Deloitte & Touche Engagement Partners/Principals/Managing Directors in matters unrelated to these Chapter 11 Cases. A listing of parties with such connections to Deloitte & Touche and/or its affiliates is attached to this Declaration

---

[4]    Inputting audit and attest clients into the Independence Database is a policy followed by DTTL Member Firms so that such relationships are tracked in connection with such firms' independence requirements.

as <u>Schedule 2</u>.

13.     With respect to Deloitte & Touche's conflicts checks conducted in these Chapter 11 Cases, if a database query identified a potential connection between a Potential Party-in-Interest and a Deloitte U.S. Entity or DTTL Member Firm, an email was sent to certain of the Deloitte U.S. Entity's and/or DTTL Member Firm's individuals, as applicable, associated with such Potential Party-in-Interest to confirm whether or not the relationship with such Potential Party-in-Interest related or currently relates to these Chapter 11 Cases.  Responses to these emails were consolidated and subsequently reviewed.  As stated in this Declaration, these processes result in the disclosures that are set forth herein, including the disclosure of certain connections with Potential Parties-in-Interest that do not relate to these Chapter 11 Cases.  The identified potential connections to the Potential Parties-in-Interest are included on <u>Schedule 2</u> appended hereto, and such connections do not relate to these Chapter 11 Cases.

14.     Deloitte & Touche believes that the relationships described herein or reflected on <u>Schedule 2</u> have no bearing on the services for which Deloitte & Touche's retention is being sought by the Debtors in these Chapter 11 Cases.  Furthermore, such relationships do not impair Deloitte & Touche's disinterestedness, and Deloitte & Touche does not represent an adverse interest in connection with these Chapter 11 Cases.

15.     To the best of my knowledge, based on the internal search discussed above, Deloitte & Touche has determined that certain relationships should be disclosed as follows:

> (a)     Deloitte & Touche and/or its affiliates provide services in matters unrelated to these Chapter 11 Cases to certain of the Debtors' largest unsecured creditors and other Potential Parties-in-Interest or their affiliates listed on <u>Schedule 2</u>.
>
> (b)     Law firms identified on <u>Schedule 2</u>, including Davis Polk & Wardwell LLP; Foley & Lardner LLP; Gordon Rees Scully Mansukhani, LLP; Holland & Knight LLP; Latham & Watkins LLP; Morris, Nichols, Arsht & Tunnell LLP; Paul Hastings LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP;

Sheppard Mullin Richter & Hampton LLP; Troutman Pepper Hamilton Sanders LLP; and Willkie Farr & Gallagher LLP, have provided, currently provide, and may in the future provide legal services to Deloitte & Touche or its affiliates in matters unrelated to these Chapter 11 Cases, and/or Deloitte & Touche or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

(c)     In the ordinary course of its business, Deloitte & Touche and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in these Chapter 11 Cases.  For example, from time to time, Deloitte & Touche and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

(d)     Certain financial institutions or their respective affiliates listed on <u>Schedule 2</u>, including; Guggenheim Securities, LLC and JPMorgan Chase Bank, N.A., (i) are lenders to an affiliate of Deloitte & Touche (Deloitte & Touche is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte & Touche and its affiliates.  In addition, certain financial institutions or their respective affiliates (including JPMorgan Chase Bank, N.A.) provide asset management services for, and/or have a similar role with respect to investments of, certain pension, benefit and similar funds sponsored by affiliates of Deloitte & Touche.

(e)     Deloitte & Touche and/or its affiliates provide certain professional services to B. Riley Private Shares 2023-2 QP, LLC, B. Riley Securities, Inc., and BRF Investments, LLC, significant equity holders of the Debtors, in matters unrelated to these Chapter 11 Cases.

(f)     Deloitte Tax provides ordinary course individual tax services to Eric Seeton and Mike Gray, directors of the Debtors, in matters unrelated to these Chapter 11 Cases.

(g)     Certain Potential Parties-in-Interest may be adverse to and/or involved in litigation matters with Deloitte & Touche or its affiliates in connection with matters unrelated to these Chapter 11 Cases.

(h)     Deloitte & Touche has provided and continues to provide audit services to certain Potential Parties-in-Interest and/or their affiliates in matters unrelated to these Chapter 11 Cases.  In its capacity as independent auditor, Deloitte & Touche also provides such clients with ordinary course auditing services and conducts typical audit procedures that may arise from such Potential Parties-in-Interests' business arrangements with the Debtors.

16.     Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte & Touche or its affiliates who are anticipated to provide services to the Debtors and the United States bankruptcy judge presiding in these Chapter 11 Cases, the United States Trustee for Region 3, the Assistant United States Trustee for the District of Delaware, and the attorneys therefor assigned to these Chapter 11 Cases.

17.     Despite the efforts described above to identify and disclose Deloitte & Touche's connections with the Potential Parties-in-Interest in these Chapter 11 Cases, because Deloitte & Touche is a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise, Deloitte & Touche is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Deloitte & Touche discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

18.     Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte & Touche and the Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte & Touche is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

**<u>SCOPE OF SERVICES</u>**[5]

19.     As set forth more fully in the Engagement Letter, Deloitte & Touche has agreed to provide certain independent audit services to the Debtors in accordance with the terms and conditions of the Engagement Letter.  Specifically, Deloitte & Touche will perform an audit in accordance with generally accepted auditing standards the United States of America ("<u>GAAP</u>") and

---

[5] The summary of the Engagement Letter provided for herein is for convenience only.  To the extent that the summary contained herein conflicts with the Engagement Letter, the Engagement Letter shall control in all respects.

express an opinion on whether Debtors Freedom VCM Holdings, LLC's, Freedom VCM, Inc.'s, Franchise Group, Inc.'s, and Pet Supplies Plus, LLC's consolidated financial statements for the fiscal year ending December 28, 2024, are presented fairly, in all material aspects, in accordance with GAAP.

20.     Pursuant to the Engagement Letter, Deloitte & Touche may provide additional audit services and conduct procedures associated with the services described above that are beyond the scope of the base audit procedures that were anticipated to be performed at the respective times the Engagement Letter was signed (collectively, the "Out-of-Scope Services").

21.     In addition to the foregoing, Deloitte & Touche, at the request of the Debtors, may provide additional services deemed appropriate and necessary to benefit the Debtors' estates. Should Deloitte & Touche agree in its discretion to undertake any such matter, Deloitte & Touche and the Debtors may enter into additional engagement letters and statements of work, as is necessary, and will file, for disclosure purposes, such additional engagement letters and statements of work with the Court.  Unless required by the Court, the Debtors and Deloitte & Touche do not intend to seek separate retention orders with respect to any additional engagement letters or statements of work. Instead, any additional engagement letters or statements of work will be appended to a notice that will be filed with the Court and served on applicable notice parties, and, absent any objections filed within ten days after the filing and service of such notice, such additional services will be performed by Deloitte & Touche pursuant to the Proposed Order.

22.     Deloitte & Touche respectfully requests that its retention be made effective as of the Petition Date so that Deloitte & Touche may be compensated for the professional services it has provided before the Application is heard by the Court.  Deloitte & Touche has provided services to the Debtors in advance of approval of the Application in anticipation that its retention would be

approved effective as of the Petition Date.  Deloitte & Touche submits that these circumstances are of a nature warranting retroactive approval.

## PROFESSIONAL COMPENSATION

23.     Deloitte & Touche's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements, set forth in the Engagement Letter.  Pursuant to the Engagement Letter, with respect to the base audit services performed thereunder (excluding the Out-of-Scope Services), the parties agreed that Deloitte & Touche will bill the Debtors a fixed fee for such services in the amount of $2,295,000 (the "Fixed Fee"), which shall be billed on a monthly basis.  Prior to the Petition Date and upon execution of the Engagement Letter, Deloitte & Touche received an advance payment of $450,000 pursuant to the terms of the Engagement Letter, which payment shall count towards the Fixed Fee.

24.     To the extent Deloitte & Touche performs any Out-of-Scope Services for the Debtors, the Debtors and Deloitte & Touche have agreed that the Out-of-Scope Services will be billed to the Debtors at the following hourly rates:

| Professional Level | Hourly Rates |
|---|---|
| Partner / Principal / Managing Director | $980 |
| Senior Manager | $970 |
| Manager | $845 |
| Senior | $740 |
| Staff | $615 |

25.     In addition to the fees set forth above, actual, reasonable, and necessary expenses including, but not limited to, expenses incurred on account of travel and lodging, report production delivery services, and other expenses incurred in providing Deloitte & Touche's services will be

included in the total amount billed and reimbursed by the Debtors in accordance with the terms of the Engagement Letter.

26.     Deloitte & Touche intends to file interim and final fee applications for the allowance of compensation for the services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court and/or any applicable U.S. Trustee Guidelines.

27.     Deloitte & Touche requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter.  I understand that all payments rendered pursuant to Deloitte & Touche's retention by the Debtors must be approved by an order of the Court and based upon the filing by Deloitte & Touche of an appropriate final application for allowance of compensation and reimbursement of expenses.

28.     Deloitte & Touche provided prepetition services to the Debtors.  In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte & Touche approximately $736,000, including the advance amount described above, on account of invoices issued by Deloitte & Touche for services performed and/or to be performed.  As of the Petition Date, approximately $6,400 was outstanding with respect to out-of-pocket expenses incurred by Deloitte & Touche prior to such date.  Subject to the Court's approval of the Application, Deloitte & Touche agrees that it will not seek a recovery on account of such outstanding amounts.

29.     Some services incidental to the tasks to be performed by Deloitte & Touche in these Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte & Touche, such as DTBA, Deloitte FAS, Deloitte Tax, and Deloitte Consulting, and/or their respective subsidiaries, including subsidiaries located outside of the United States.

30.     In particular, Deloitte & Touche may also subcontract a portion of attest services to its indirect subsidiary, Deloitte & Touche Assurance & Enterprise Risk Services India Private

12

Limited ("Deloitte & Touche India").  In such case, a specifically assigned team of personnel from Deloitte & Touche India assists in such services under the supervision, and with the input, of personnel of Deloitte & Touche.  The hourly rates charged to the clients by Deloitte & Touche for services performed by Deloitte & Touche India personnel are comparable to the hourly rates charged for similar services by Deloitte & Touche but do not directly correlate with the rates attributed to such services by Deloitte & Touche India.  The connections of Deloitte & Touche India (along with the connections of Deloitte & Touche and its other affiliates) to parties in interest in these Chapter 11 Cases are set forth on Schedule 2 attached hereto.

31.    Deloitte & Touche has received no promises regarding compensation in these Chapter 11 Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration.  Deloitte & Touche has no agreement with any non-affiliated or unrelated entity to share any compensation earned in these Chapter 11 Cases.

## **EFFORTS TO AVOID DUPLICATION OF SERVICES**

32.    Deloitte & Touche understands that the Debtors have retained and may retain additional professionals during the term of the Engagement Letter, and Deloitte & Touche agrees to work cooperatively with the Debtors to avoid unnecessary duplication of services.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.


Date:    December 3, 2024

*/s/ Bradley Vineyard*
Bradley Vineyard
Partner
Deloitte & Touche LLP

13

## **Schedule 1**

**Potential Parties-in-Interest List**

**Franchise Group, Inc.**
**Parties In Interest List**

**Debtor Entities & Related Subsidiaries**
American Freight FFO, LLC
American Freight Franchising, LLC
American Freight Franchisor, LLC
American Freight Group, LLC
American Freight Holdings, LLC
American Freight Management Company, LLC
American Freight Outlet Stores, LLC
American Freight, LLC
B. Riley Receivables II, LLC
Betancourt Sports Nutrition, LLC
Buddy's Franchising and Licensing LLC
Buddy's New Co, LLC
Educate, Inc.
Franchise Group Acquisition TM, LLC
Franchise Group Intermediate AF, LLC
Franchise Group Intermediate B, LLC
Franchise Group Intermediate BHF LLC
Franchise Group Intermediate Holdco, LLC
Franchise Group Intermediate L, LLC
Franchise Group Intermediate PSP, LLC
Franchise Group Intermediate S, LLC
Franchise Group Intermediate SL, LLC
Franchise Group Intermediate V, LLC
Franchise Group New Holdco, LLC
Franchise Group Newco BHF, LLC
Franchise Group Newco PSP, LLC
Franchise Group Newco S, LLC
Franchise Group Newco SL, LLC
Franchise Group Newco V, LLC
Franchise Group, Inc.
Freedom VCM Holdings, LLC
Freedom VCM Interco Holdings, Inc.
Freedom VCM Interco, Inc.
Freedom VCM Receivables, Inc.
Freedom VCM, Inc.
Home & Appliance Outlet LLC
Pet Supplies "Plus", LLC
PSP Distribution, LLC
PSP Franchising, LLC
PSP Group, LLC
PSP Midco, LLC
PSP Service Newco, LLC

PSP Stores, LLC (Ohio)
PSP Subco, LLC
Valor Acquisition, LLC
Vitamin Shoppe Florida, LLC
Vitamin Shoppe Franchising, LLC
Vitamin Shoppe Global, LLC
Vitamin Shoppe Industries LLC
Vitamin Shoppe Mariner, LLC
Vitamin Shoppe Procurement Services, LLC
W.S. Badcock Corporation
WNW Franchising, LLC
WNW Stores, LLC

**5% or Greater Equity Holders**
B. Riley Private Shares 2023-2 QP, LLC
B. Riley Securities, Inc.
BRF Investments, LLC
Brian Kahn and Lauren Kahn Joint Tenants by Entirety
Vintage Opportunity Partners, L.P.

**Directors and Officers**
Aaron Granger
Alissa Ahlman
Andrew Kaminsky
Andrew Laudato
Andrew M. Laurence
Anthony Block-Belmonte
Brian Hoke
Bryant R. Riley
Chris Meyer
Christopher Rowland
Daniel McNamara
Eric Seeton
Jacob Jones
Jeff Van Orden
Jeffrey Seghi
Jemma Lawrance
John Hartmann
Kenneth Miles Tedder
Lee Wright
Michael Bennett
Mike Gray
Muriel Gonzalez

Neal Panza
Norman McLeod
Peter Corsa
Philip Etter
Teresa Orth
Tiffany McMillan-McWaters
Todd Arden
Todd Evans

**Administrative and Collateral Agents**
Alter Domus (US) LLC
JPMorgan Chase Bank, N.A.

**Significant Suppliers and Vendors**
A Team Sales LLC
Affordable Furniture Mfg Inc
Alani Nutrition
American Agco (ADMC)
Animal Supply Co Lone Star
Animal Supply Co Wholesome
Ashley Furniture Industries Inc
Brodnax Printing Company I, LLC dba
Brodnax 21c Printers
California Pet Partners LLC
Capstone Nutrition
CRAMCO
Crown Mark Imports Inc
DAS LABS LLC
Elytus Ltd
Enterprise FM Trust
Flexport
Florida State Games Inc.
Garden of Life
Generis Tek Inc
Ghost, LLC.
Gorilla Mind
KFM247 LTD
Kith Furniture
Korber Supply Chain US, Inc.
Lumisource, LLC
Marcone Appliance Parts Company
Mars Petcare
Media Works, Ltd.
Merrick Pet Foods Inc
Meta Platforms, Inc.
MMXXI Investments LLC

Nutrivo, LLC
ODP Business Solutions, LLC (Office Depot)
One Stop Facilities Maintenance Corp
Optimum Nutrition
Origin
Peak Living
Phillips Lansing Facility
Planitretail LLC
Prime Hydration LLC
Pro-Form Laboratories
Quest Nutrition, LLC
Raw Sport Supplement Company
REDCON 1
Royal Canin
Ryse Up Sports Nutrition LLC
Seaboard International Forest Products LLC
Sealy Mattress Company
Seminole Furniture
Steve Silver Company
Uber Freight US LLC
Velosio LLC
Vitality Works, Inc.
WEX Bank

**Top Unsecured Creditors (as of 10.10.24)**
Albany Industries Inc
Alphia Inc
Aquatic & Reptile - Central Garden & Pet
Arizona Nutritional Supplement
Assurant Inc.
Champion Petfoods USA
Climatic Home Products
Coyote Logistics
Delta Furniture
Earth Animal Ventures
Ehplabs LLC
Elanco US Inc
Elements International Group LLC
EMA Electrolux/Frigidaire
Force Factor Brands LLC
GE Appliances
GE General Electric-Haier US Appliance
Google
Hartz Mountain - VMX
Hill's Pet Nutrition

Kong Company
Living Style (Singapore) Pte. Limited
Lowes Companies Inc
M I Industries Inc
Madix Inc
Midwestern Pet Foods
Muebles Briss S.A. De C.V.(Marby)
Natural Balance Pet Foods Inc
Nestle Purina Petcare Company
Open Farm Inc
Order Groove Inc
O'Rourke Bros., Inc.
O'Rourke Sales Company
Peak Living, Inc.
Phillips Feed and Pet Supply
Premier Nutrition Company, LLC
Radio Systems Corporation
Sealy Mattress Manufacturing Company
Simmons Pet Food Inc
Solstice Sleep Company
Spectrum Brands Pet LLC
Standard Furniture MFG Co Inc
Stella and Chewys LLC
Surest/UnitedHealthcare Inc.
Titanic Furniture
Transform Holdco LLC (3PL)
UPS (Ocean Freight)
Vitamin Well USA LLC
Wellness Pet LLC
Weruva International Inc
Whirlpool
Zinatex Imports, Inc

**Landlords & Lessors**
103rd Street 6024, LLC
1210 Morena West LLC
1230 Zion, LLC
1700 Eubank, LLC
1997 GRP Limited Partnership
2151 Highland Partners, LLC
2885 Gender Road, LLC
30X30 34th Street Lubbock Partners, LLC
3200 Hwy 13, LLC
4100 Tomlynn Street-Rebkee, LLC and
Tomlynn Street-Fountainhead, LLC
4116 OBT Investments, LLC

425 Broadway RE Holdings LLC & 431
Broadway RE Holdings LLC
4801 Washtenaw LLC
5737-5848 North Elizabeth Street Holdings,
LLC
6001 Powerline, LLC
65 Holmes Investment Partners LLC
6588 LLC
7000 S May Ave, LLC
801 South Ft. Hood, LLC
900-71, LLC
A. Roland Kimbrell Trust
Acorn Ridge Properties LLC, JDM Capital,
LLC, MO Partners LLC, Confluence
Investment LLC
Afreight Holdings, LLC
AJDC 2, LLC
Albany Plaza Shopping Center LLC
Alisan LLC and Roseff LLC
All American Association, LLC and Yvonne
Keff
Allentex, LP
Amerco Real Estate Company
AMG Properties Inc.
Amplify Credit Union
Anderson Plaza, LLC
Arch Village Management Realty LLC
Ares Holdings, L.L.C.
Arizona Mills Mall, LLC
AR-Park Shopping Center, LLC and JSP-
Park Shopping Center, LLC
Atlanta Industrial TT, LLC
B.J. McCord d/b/a McCord Business Center
B33 Broadview Village LLC
Baldwin Gardens, Inc.
Bane Holdings of Tallahassee, LLC
Banner Partners, LLC
Bardstown S.C., LLC
BC Airport, LLC
Bell-51st, LLC
Belt 98, Inc.
Berryessa Plaza LLC
BG Plaza, LLC
Boatlanding Development Co., Inc.
Bostick Development, L.C.
BRC Hendersonville, LLC

BRE Mariner Venice Shopping Center LLC
BRE Retail NP Festival Centre Owner LLC
Brierwood Village LLC
Brighton Landmark, LLC
Brixmor Holdings 8 SPE, LLC
Brixmor SPE 5 LLC
Brixton Rogue, LLC
Brookhill V Acquisition, LLC
Brooksville Commercial Properties, LLC
and Oak Tree Lane, LLC
Brown Deer Mall, LLC
Bruce Howe Trust
BSW/DMW Properties LLC
Cafaro Leasing Company, LTD.
Candler RD Plaza GA LLC
Cedar Golden Triangle, LLC
Centerpoint 550, LLC
Centerview Plaza, LLC
Central Mall Port Arthur Realty Holding,
LLC
Certified Capital, LP, Horowitz Holdings,
LLC, Asset Acquisitions, LLC, and 3610
Partners, GP
CETA Group Limited Partnership
Chapel Hills Realty LLC, Chapel Hills CH
LLC, and Chapel Hills Nassim LLC
Charleigh Davis and TCCB Properties
Chicago Title & Trust Company, As Trustee
Under Trust Agreement Dated 10/10/1984
and Known as Trust No. 1086065
Chillicothe Shopping Center, LP
Chris McCarty Company, LLC
Cielo Paso Las Tiendas, L.P.
Circle City Property Group Inc.
Citimark Charleston, LLC
CJM Limited Liability Limited Partnership
Clear Creek Brothers - CV, LLC
Clear Lake Center, L.P.
Clendenin Partners
CLPF-Essex Green, LLC
Cobblestone Square Company, Ltd.
ColFin 2015-2 Industrial Owner, LLC
Colony Mills Enterprises, LLC
Combined Properties Limited Partnership
Commercial Properties Associates, LLP
Concord Retail Investment Group, LLC

Core MR Westview, LLC
Costco-Innevol Owner LLC
Costco-Innevol Properties LLC
Creekstone/Juban I, LLC
Crossing Point LLC
Crossroads Centre II, LLC
Crossroads Plaza, LLC
Crossroads Sunset Holdings, LLC
Cuyahoga Investments, LLC
CWP/Arlington LLC
D3 New Albany, LLC
Daniel G. Kamin Wadsworth Enterprises
Daniel P. Hagaman
Danville Riverside Partners, LLC
Daytona Commons, LLC
DCT Presidents Drive LLC
DDR Carolina Pavilion LP
Dennis R. Phillips Revocable Trust
Derby Improvements, LLC
DES 2015, LLC and CJCM, LLC-Series
CV505
Dixie Manor, LLC
Donna M. Rainwater & Larry J. Rainwater
Donna Rainwater Reece, Larry J. Rainwater,
R. Bryan Whitmire and Karla J. Whitmire
Douglas C. Foyt and Trailers for Sale or
Rent, Inc.
Dyn Sycamore Investments, L.L.C.
E & L Investments LLC
E.W. Thompson, Inc.
Eagle Water, LLC
Eagle-North Hills Shopping Centre LP
Eastlake Edison LLC and Eastlake Milford
LLC
Economy Square, Inc.
Ellis Chai LLC
Esue LLC
Ethan Conrad Properties, Inc.
Excel Realty Partners, L.P.
Exchange Right Value-Add Portfolio 2
Master Lessee, LLC
F.M.K., LLC
Fairview Heights Realty, LLC and Fairview
Nassim LLC
Fall River Shopping Center North, LLC
Faye Gross

Fiddler's Run, LLC
Fivel Family, LLC
Fox Jr. Development Inc.
Franklin Mills Associates Limited
Partnership
Franklin Towne Plaza LLC
Frayer Enterprises, LLC
Fredric Singer
Front Street Kansas City, LLC
FSC West Covina, LLC
FSH Galleria Plaza, LLC
G&I X Industrial IN LLC
Gamble Brothers, LLC
Gary Mehan, DBA G.M. Properties
Gateway Retail Partner III, LLC
Gateway South, LLC #1
GBUZZ, LLC
GCP Boom, LLC
Giuffre IV, LLC
GKI Industrial Dallas, LLC
Glendale Galleria Center, LLC
GLL BVK Properties, L.P.
Gosula Holdings Ltd.
Gravois Bluffs East 8-A, LLC
Greater Orlando Aviation Authority
Greenfield Plaza LLC
Greenlight Development, LLC
GRH Goodyear LLC, Gaston Holdings
LLC, and MRH Venture Capital LLC
Gridley Square Property, LLC
GS Centennial LLC
Gulson Retail LLC
Halltown Farms, LLC
Hankins Real Estate Partnership
Hart & Hart Corp.
Henry Fine Trust
Hidden Hill Road Associates, LLC
High Cotton Palisades, LLC, High Cotton
Shoals, LLC and Pharo Palisades I, LLC
Himaloy Taylor LLC
HM Peachtree Corners I LLC
Hogan Holdings 56, LLC
HV Center LLC, HV Center TIC 1 LLC,
and HV Center TIC 2 LLC
IH 35 Loop 340 Investors, LTD.
IH-10 Hayden, Ltd.

Indian Trail Square, LLC
Inland Commercial Real Estate Services
LLC
Innovation Realty IN, LLC
Integra CRE, LLC
IRC Park Center Plaza, L.L.C.
Ireland Corner, LLC
Isador Schreiber & Associates, LLC
J & F Gainesville Properties, LLC
J&L Development Company, LLC
Jackson Street Group, LLC
Jeffnan U.S.A. Inc.
JHG Properties, LLC
JMK5 Winchester, LLC
JMW Hebron, LLC
Joe Amato East End Centre, LP
JRF Texas Properties, LLC
JSM Land Group, LLC
Kelley Commercial Realty, LLC and
Stephanie D. Kelley
Keyser Oak Investors, LLC
KGI Military LLC
Kin Properties Inc.
Kings Mountain Investments
Kingsport Green AC Managing Company,
LLC
Kinsman Investors
Kitty Wells, Inc.
KMD, LLC
KRG Houston Royal Oaks Village II, LLC
KRG Plaza Green, LLC
L.W. Miller Holding Company
Laurie Industries, Inc., Kinpark Associates
and Fundamentals Company
Lawrence F. Kolb & Catherine M. Kolb,
Trustees of The Lawrence F. Kolb and
Catherine M. Kolb JLRT U/A/D April 12,
2018 and 2233 & 2235 MO Blvd, LLC
LBD Properties, LLC
LCRF, LLC
LDC Silvertree, LLC
Leland J3, LLC
Leveraged Holdings, L.L.C.
Lexington 2770, LLC
Lichtefeld Development Trust
Lidl US Operations, LLC

Lincoln Associates
LIT-ENVP Limited Partnership
LoLo Enterprises, LLC
Lovell 2.5, LLC
LU Candlers Station Holdings, LLC
Lynch Butler
M3 Ventures, LLC
Macon Center, LLC
Malco T.I.C.
Mall at Potomac Mills, LLC
Marathon Management, LLC
Marc NaperW LLC and NaperW, LLC
MarketFair North, LLC
McRae Mortgage & Investments, LLC
Meditrina Properties, LLC
Melvin C. McClung, Trustee of the Tommie
Louise McClung Family Trust
Menard, Inc.
Merchant 33 LLC
Merchant's Investors, LLC
Meredith, Inc.
Midwest Commercial Funding, LLC
Missouri Boulevard Investment Company,
LLC
Mobile Highway 4500, LLC
Mojack Holdings, LLC
Mongia Capital Michigan, LLC
Moon Village, LLC
Morningside Plaza, L.P.
MR Stealth LLC
Muenchens Unlimited, LLC
NDF III MJ Crossing, LLC
New Bern Development LLC
New Plaza Management, LLC
Newport Crossing Investors, LLC
Niagara Falls 778, LLC
North County Columbia Realty, LLC
Northern McFadden Limited Partnership
Northside Village Conyers, LLC
Northtowne Center Investors, LLC
Oak Forest Group, LTD
Okee Realty Associates, LLC
Old Orchard, LLC
One Home Realty, Inc.
One Land Company, LLC
One Oak Investments, LLC

Osborne Properties Limited Partnership
Oxford Street Huntsville
P & S Axelrod, L.L.C.
P&H Investments, LLC
Pacifica Muskegon, LLC
Parker-Anderson, LLC
Parkway Mall, LLC
PCRIF Spring Park Holdings, LLC
Pensacola Corners LLC
PFIILP - Parr Boulevard, LLC
Pilchers Summit Limited Partnership
Pinellas Park Square, LLC
Piqua Investment Partners, LLC
PK II El Camino North L.P.
Plaza North Shopping Center, LLC
Polk County Partners, LLC
Port St. Lucie Plaza I, II, III, LLC
Prattville Partners, Limited Partnership
Prologis Targeted U.S. Logistics Fund, L.P.
Pullman Square Associates
Rainbow Investment Co.
Randall M. Schulz
Ravi Randal Investment Group, LLC
RE Pecan, LLC
Realty Income Corporation
Regions Bank as Trustee of the Thomas H.
Willings Jr. Family Trust
Repwest Insurance Company
Richard Briggs and John Nathan Briggs, as
Trustees of the Stephanie R. Briggs
Irrevocable Trust dated October 15, 2009;
and Stephanie R. Briggs and John Nathan
Briggs, as Trustees of the Richard M. Briggs
Irrevocable Trust dated October 15, 2009
Ridgewater Commerce LLC
Rini Realty Company
River Oaks Properties, Ltd.
Riverdale Center North, LLC
Riverplace Shopping Center, LLC
Rock N Roll Development, LLC
Rockhill Center, LLC
Rodi Road 501, LLC
Rogers Commercial Properties, LLC
Rose & Rose, LLC
RPI Ridgmar Town Square, Ltd.
RRG LLC

Sabatine BK Development, LLC
Saia Family Limited Partnership
Sarabara Corp.
Sav 15000 Abercorn, LLC
Sears Authorized Hometown Stores, LLC
SEK 7753, LLC
Shrewsbury Village Limited Partnership
Sissel Juliano
SJN Realty Holdings, LLC
Slidell Athletic Club Property, L.L.C.
Somera Road - Athens Georgia II, LLC
South Tulsa Storage, LLC
Southern Hills Center, Ltd.
Southgate Properties, LLC
Southtown Plaza Realty LLC and
Southtown Nassim LLC
Southview Dothan Investors, LLC
Space For Lease of Tennessee
State Road 4201, LLC
Stature High Ridge, LLC
Sterling Equities II, LLC
Stewart & Hamilton Properties, LLC
Stone Mountain Square Shopping
Center, LLC
SVR Investments, LLC
SW 17th Street 1010, LLC
Sylvan Park Apartments, LLC
T.B.R. Property Group, LLC
T18 Investments, LLC
Tanglewood Venture, LLC
TB Garrett Creek, LLC
TBF Group Battle Creek, LLC
TCP Enterprise Parkway, LLC
Tejas Center, LTD.
Tenalok, LLC
Texas Main Street, LLC
The Collins Investment Trust
TKC CCXXXIX, LLC
TKG Colerain Towne Center, LLC
TKG Cranston Development, L.L.C.
TKG Fairhaven Commons, LLC
TLP 4782 Muhlhauser LLC
Tops Holding, LLC
Town Real Estate Enterprises, LLC
Tucson Speedway Square, LLC
Tumon Bay Resort & Spa, LLC

Turfway Baceline, LLC
Two by Two Properties, LLC
Tycer Heirs Separate Property, LLC
University Realty Associates, LLC
US Investments
Victory River Square, LLC
Vishal Kalmia Plaza, LLC
W.H. Warehouse, L.L.C.
Wal-Austin, LLC
Warner Robins Perlmix, LLC
Watson Village Retail, LLC
Waverly Plaza Shopping Center, Inc.
West County Investors, LLC
Weston SCIP 2 LLC
Westphal Leasing, LLC
Westside Village Shopping Center of Rome,
Inc.
WFD Investments, L.L.C.
White Lane, LLC
Whitehall Crossing D, LLC
William Shane Courtney
Woodcrest Akers, LLC
Woodforest Mini-City Partners, LP and
JLCM Partners, LP, TIC
Wylds 1708, LLC
YEK #9, LLC
York Realty Investment, LLC

**Significant Counterparties to Material Agreements**
Capturis
Engie Resources LLC

**Significant Litigation Matters**
Charles Knight
Health Advocate
Gale et al [Class Action]
Joseph F Gazzo III
Matthew Giffuni
Quadre Investment Advisors LLC
Buddy's Mac Holdings, LLC

**Professionals**
AlixPartners LLP
Davis Polk & Wardwell LLP
Deloitte & Touche LLP

Ducera Partners LLC
Ernst & Young
Evercore LP
Foley & Lardner LLP
Gordon Rees Scully Mansukhani, LLP
Gordon Brothers Asset Advisors, LLC
Grant Thornton LLP
Guggenheim Securities, LLC
Hilco Merchant Resources, LLC
Hilco Real Estate, LLC
Holland & Knight, LLP
Kroll Restructuring Administration LLC
Landis Rath & Cobb LLP
Latham & Watkins LLP
Lazard Group LLC
M3 Advisory Partners, LP
Morris, Nichols, Arsht & Tunnell LLP
Paul Hastings LLP
Paul, Weiss, Rifkind, Whaton & Garrison
LLP
Petrillo Klein & Boxer LLP
Porter Wright Morris & Arthur LLP
Ryan, LLC
Sheppard Mullin Richter & Hampton LLP
Troutman Pepper Hamilton Sanders LLP
White & Case LLP
Willkie Farr & Gallagher LLP
Young Conaway Stargatt & Taylor, LLP

**Other Parties**
BCDC Portfolio Owners LLC
BCHQ Owner LLC
National Retail Properties, LP

**DE - Judges**
Chan, Ashely M.
Dorsey, John T.

Goldblatt, Craig T.
Horan, Thomas M.
Owens, Karen B.
Shannon, Brendan L.
Silverstein, Laurie Selber
Stickles, J. Kate
Walrath, Mary F.

**DE – Office of the United States Trustee**
Andrew R. Vara
Benjamin Hackman
Christine Green
Diane Giordano
Dion Wynn
Edith A. Serrano
Elizabeth Thomas
Fang Bu
Hannah M. McCollum
Holly Dice
James R. O'Malley
Jane Leamy
Jonathan Lipshie
Jonathan Nyaku
Joseph Cudia
Joseph McMahon
Lauren Attix
Linda Casey
Linda Richenderfer
Malcolm M. Bates
Michael Girello
Nyanquoi Jones
Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch
Timothy J. Fox, Jr.

## Schedule 2

Potential Parties-in-Interest or their affiliates for whom Deloitte & Touche LLP or its affiliates has provided or is currently providing services in matters unrelated to these Chapter 11 Cases, except as set forth above, or with whom such parties have other relationships, including banking relationships.

Alani Nutrition
AlixPartners LLP
Alter Domus (US) LLC
Amerco Real Estate Company
American Freight FFO, LLC
American Freight Franchising, LLC
American Freight Franchisor, LLC
American Freight Group, LLC
American Freight Holdings, LLC
American Freight Management Company, LLC
American Freight Outlet Stores, LLC
American Freight, LLC
Animal Supply Co.
Ares Holdings, L.L.C.
Arizona Nutritional Supplement
Ashley Furniture Industries Inc.
Asset Acquisitions, LLC
Assurant Inc.
B. Riley Private Shares 2023-2 QP, LLC
B. Riley Receivables II, LLC
B. Riley Securities, Inc.
Betancourt Sports Nutrition, LLC
BRE Mariner Venice Shopping Center LLC
BRE Retail NP Festival Centre Owner LLC
BRF Investments, LLC
Brixmor Holdings 8 SPE, LLC
Brixmor SPE 5 LLC
Buddy's Franchising and Licensing LLC
Buddy's Mac Holdings, LLC
Buddy's New Co, LLC
Capstone Nutrition
Central Garden & Pet Company
Champion Petfoods USA
Chapel Hills CH LLC
Chapel Hills Nassim LLC
Chapel Hills Realty LLC

Chicago Title & Trust Company, As Trustee Under Trust Agreement Dated 10/10/1984 and Known as Trust No. 1086065
CJM Limited Liability Limited Partnership
ColFin 2015-2 Industrial Owner, LLC
Coyote Logistics
Crossroads Centre II, LLC
Crossroads Plaza, LLC
Crossroads Sunset Holdings, LLC
D3 New Albany, LLC
Davis Polk & Wardwell LLP
Ducera Partners LLC
Educate, Inc.
Elanco US Inc
Elements International Group LLC
Elytus Ltd
EMA Electrolux/Frigidaire
Engie Resources LLC
Eric Seeton
Ernst & Young
Evercore LP
Excel Realty Partners, L.P.
Fairview Heights Realty, LLC
Flexport Inc.
Foley & Lardner LLP
Franchise Group Acquisition TM, LLC
Franchise Group Intermediate AF, LLC
Franchise Group Intermediate B, LLC
Franchise Group Intermediate BHF LLC
Franchise Group Intermediate Holdco, LLC
Franchise Group Intermediate L, LLC
Franchise Group Intermediate PSP, LLC
Franchise Group Intermediate S, LLC
Franchise Group Intermediate SL, LLC
Franchise Group Intermediate V, LLC
Franchise Group New Holdco, LLC
Franchise Group Newco BHF, LLC
Franchise Group Newco PSP, LLC

Franchise Group Newco S, LLC
Franchise Group Newco SL, LLC
Franchise Group Newco V, LLC
Franchise Group, Inc.
Freedom VCM Holdings, LLC
Freedom VCM Interco Holdings, Inc.
Freedom VCM Interco, Inc.
Freedom VCM Receivables, Inc.
Freedom VCM, Inc.
Garden of Life Products
GE Appliances
GE General Electric-Haier US Appliance
Ghost, LLC.
GLL BVK Properties, L.P.
Google
Gordon Brothers Asset Advisors, LLC
Gordon Rees Scully Mansukhani, LLP
Gorilla Mind LLC
Gosula Holdings Ltd.
Greater Orlando Aviation Authority
Guggenheim Securities, LLC
Gulson Retail LLC
Hartz Mountain Corp
Health Advocate Inc
Hilco Merchant Resources, LLC
Hilco Real Estate, LLC
Hill's Pet Nutrition
Holland & Knight, LLP
Holly Dice
Home & Appliance Outlet LLC
Jackson Street Group, LLC
JDM Capital, LLC
JPMorgan Chase Bank, N.A.
JRF Texas Properties, LLC
JSP-Park Shopping Center, LLC
KMD, LLC
Kong Company
Korber Supply Chain US, Inc.
KRG Houston Royal Oaks Village II, LLC
KRG Plaza Green, LLC
Kroll Restructuring Administration LLC
Latham & Watkins LLP
Lazard Group LLC
Lidl US Operations, LLC

Lincoln Associates
Lowes Companies Inc
Marcone Appliance Parts Company
Mars Petcare
Media Works, Ltd.
Meditrina Properties, LLC
Menard, Inc.
Meredith, Inc.
Meta Platforms, Inc.
Mike Gray
MO Partners LLC
Morris, Nichols, Arsht & Tunnell LLP
National Retail Properties, LP
Natural Balance Pet Foods Inc
Nestle Purina Petcare Company
ODP Business Solutions, LLC (Office Depot)
Old Orchard, LLC
Open Farm Inc
Origin
O'Rourke Bros., Inc.
O'Rourke Sales Company
Osborne Properties Limited Partnership
Paul Hastings LLP
Paul, Weiss, Rifkind, Whaton & Garrison LLP
Pet Supplies "Plus", LLC
Premier Nutrition Company, LLC
Prologis Targeted U.S. Logistics Fund, L.P.
PSP Distribution, LLC
PSP Franchising, LLC
PSP Group, LLC
PSP Midco, LLC
PSP Service Newco, LLC
PSP Stores, LLC (Ohio)
PSP Subco, LLC
Quest Nutrition, LLC
Radio Systems Corporation
Rainbow Investment Co.
Realty Income Corporation
Regions Bank as Trustee of the Thomas H. Willings Jr. Family Trust
Repwest Insurance Company
River Oaks Properties, Ltd.
Royal Canin Pet Food
RRG LLC

Ryan, LLC
Sealy Mattress Company
Sealy Mattress Manufacturing Company
Sears Authorized Hometown Stores, LLC
SEK 7753, LLC
Seminole Furniture
Sheppard Mullin Richter & Hampton LLP
Simmons Pet Food Inc
Southtown Plaza Realty LLC
Spectrum Brands Pet LLC
Stella and Chewys LLC
Sterling Equities II, LLC
Tops Holding, LLC
Transform Holdco LLC
Troutman Pepper Hamilton Sanders LLP
UPS
US Investments
Valor Acquisition, LLC
Velosio LLC

Vitality Works, Inc.
Vitamin Shoppe Florida, LLC
Vitamin Shoppe Franchising, LLC
Vitamin Shoppe Global, LLC
Vitamin Shoppe Industries LLC
Vitamin Shoppe Mariner, LLC
Vitamin Shoppe Procurement Services, LLC
Vitamin Well USA LLC
W.S. Badcock Corporation
Wellness Pet LLC
Westside Village Shopping Center of Rome, Inc.
WEX Bank
Whirlpool Corporation
Willkie Farr & Gallagher LLP
WNW Franchising, LLC
WNW Stores, LLC
York Realty Investment, LLC

## <u>Exhibit 1</u>

**Engagement Letter**



**Deloitte & Touche LLP**
Suite 820
901 East Byrd Street
Richmond, VA 23219
USA

Tel:  1 804 697 1500
Fax:  1 804 697 1825
www.deloitte.com

October 22, 2024

Mr. Eric F. Seeton
Chief Financial Officer
Freedom VCM Holdings, LLC
109 Innovation Court Suite J
Delaware, OH 43015

Dear Mr. Seeton:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as independent auditors for the entities listed in Appendix F (each, the "Company"; collectively, the "Companies" or "you" or "your"). Mr. Brad Vineyard will be responsible for the services that we perform for the Companies hereunder.

In addition to the audit services we are engaged to provide under this engagement letter, we would also be pleased to assist the Companies on issues as they arise throughout the year.

Hence, we hope that you will call Mr. Vineyard whenever you believe D&T can be of assistance.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices. Such terms and conditions shall be effective as of the date of the commencement of such services.

## Audits of Financial Statements

Our engagement is to perform audits in accordance with auditing standards generally accepted in the United States of America ("generally accepted auditing standards"). The objective of an audit conducted in accordance with generally accepted auditing standards is to express an opinion on whether the Company's consolidated financial statements for the fiscal year ending listed in Appendix F (the "financial statements"), are presented fairly, in all material respects, in accordance with accounting principles generally accepted in the United States of America ("generally accepted accounting principles").

Appendix A contains a description of the auditor's responsibilities and the scope of an audit in accordance with generally accepted auditing standards.

## D&T Reports

We expect to issue written reports upon the completion of our audits. Our ability to express any opinion or to issue any report as a result of this engagement and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our reports. If, for any

Mr. Eric F. Seeton, Chief Financial Officer
Freedom VCM Holdings, LLC
October 22, 2024
Page 2

reason, we are unable to complete our audits or are unable to form or have not formed any opinion, we may decline to express any opinion or decline to issue any report as a result of this engagement. If we are unable to complete our audits, or if any report to be issued by D&T as a result of this engagement requires modification, the reasons for this will be discussed with the Board of Directors of Freedom VCM Holdings, LLC (the "Board of Directors") and the Company's management.

Freedom VCM Holdings, LLC, confirms that it has the power and authority to execute this engagement letter, including the appendices attached hereto, on behalf of, and to bind, the Companies.

## Management's Responsibilities

Appendix B describes management's responsibilities.

## Communications with the Board of Directors

Appendix C describes various matters that we are required by generally accepted auditing standards to communicate with the Board of Directors and management.

## Fees

We estimate that our fees for this engagement will be $2,295,000, plus expenses. This fee will be due monthly in advance from October 2024 through March 2025.

This estimate does not include any fee for the 1) B Riley Receivables II, LLC ("BR2") entity, the Badcock securitized accounts receivable and corresponding secured borrowing, or any transactions regarding BR2 and Badcock, 2) any adjustments related to potential debt restructuring or reorganizations or 3) any adjustments related to potential goodwill and intangible asset impairment, which will be billed on a time and materials basis.

We will issue a statement to you upon execution hereof in the amount of $450,000, which must be paid by you in advance of the commencement of the services hereunder.  Thereafter, we anticipate sending statements monthly and payments of the amounts noted thereon are due upon receipt.  Engagement-related expenses, such as travel, and technology- and administrative-related charges will be billed in addition to the fees and will be stated separately and will not exceed 10% of the total fee.

Our continued service on this engagement is dependent upon payment of these statements in accordance with these terms. Our estimated fees are based on certain assumptions, including (1) timely and accurate completion of the requested entity participation schedules and additional supporting information, (2) no inefficiencies during the audit process or changes in scope caused by events that are beyond our control, (3) the effectiveness of internal control over financial reporting throughout the period under audit, (4) a minimal level of audit adjustments (recorded or unrecorded), and (5) no changes to the timing or extent of our work plans. We will notify you promptly of any circumstances we encounter that could significantly affect our estimate and discuss with you any additional fees, as necessary.

Mr. Eric F. Seiler
Freedom VCM Holdings, LLC
October 22, 2024
Page 3

## Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites

If the Company intends to publish or otherwise reproduce in any document any report issued as a result of this engagement, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements (e.g., in a periodic filing with a regulator, in an annual report, in a debt or equity offering circular, or in a private placement memorandum), thereby associating D&T with such document, the Company agrees that its management will provide D&T with a draft of the document to read and obtain our approval for the inclusion or incorporation by reference of any of our reports, or the reference to D&T, in such document before the document is printed and distributed. The inclusion or incorporation by reference of any of our reports in any such document would constitute the reissuance of such reports. The Company also agrees that its management will notify us and obtain our approval prior to including any of our reports on an electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Company. Any request by the Company to reissue any report issued as a result of this engagement, to consent to any such report's inclusion or incorporation by reference in an offering or other document, or to agree to any such report's inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. The estimated fees outlined herein do not include any procedures that would need to be performed in connection with any such request. Should D&T agree to perform such procedures, fees for such procedures would be subject to the mutual agreement of the Company and D&T.

* * * * *

The parties acknowledge and agree that D&T is being engaged under this engagement letter to provide only the services described herein. Should the Companies or the Board of Directors request, and should D&T agree to provide, services (including audit services) beyond those described herein, such services will constitute a separate engagement and will be governed by a separate engagement letter.

This engagement letter, including Appendices A through F attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

Mr. Eric F. Cauchi and Mr. Michael Domini
Freedom VCM Holdings, LLC
October 22, 2024
Page 4


If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*

Accepted and agreed to by Freedom VCM Holdings, LLC, on behalf of the Companies:


By: __*Eric Sexton*_____

Title: __CFO_____

Date: __28-Oct-2024 | 10:53:40 AM PDT___

cc:  the Board of Directors of Freedom VCM Holdings, LLC

# APPENDIX A

# AUDITOR'S RESPONSIBILITIES AND SCOPE OF AN AUDIT IN ACCORDANCE WITH GENERALLY ACCEPTED AUDITING STANDARDS

This Appendix A is part of the engagement letter dated October 22, 2024, between Deloitte & Touche LLP and Freedom VCM Holdings, LLC, on behalf of the Companies.

## Auditor's Responsibilities

Our responsibilities under generally accepted auditing standards include forming and expressing an opinion about whether the financial statements that have been prepared by management with the oversight of the Board of Directors are presented fairly, in all material respects, in accordance with generally accepted accounting principles. The audits of the financial statements do not relieve management or the Board of Directors of their responsibilities.

## Scope of an Audit

Generally accepted auditing standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with generally accepted auditing standards will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements can arise from fraud or error and are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the financial statements.

An audit performed in accordance with generally accepted auditing standards, includes the following:

- Exercising professional judgment and maintaining professional skepticism throughout the audit.

- Identifying and assessing the risks of material misstatement of the financial statements, whether due to fraud or error, and designing and performing audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding amounts and disclosures in the financial statements.

- Obtaining an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Companies' internal control. Accordingly, no such opinion will be expressed.

- Evaluating the appropriateness of accounting policies used and the reasonableness of

Docusign Envelope ID: 1E76BC46-52E3-43AD-968D-62145750F1CF

significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

- Concluding whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about the Companies' ability to continue as a going concern for a reasonable period of time.

Because of the inherent limitations of an audit, together with the inherent limitations of internal control, an unavoidable risk exists that some material misstatements may not be detected, even though the audit is properly planned and performed in accordance with generally accepted auditing standards. We have no responsibility to plan and perform the audit to obtain reasonable assurance that misstatements, whether due to fraud or error, that are not material to the financial statements as a whole are detected.

# APPENDIX B

# MANAGEMENT'S RESPONSIBILITIES

This Appendix B is part of the engagement letter dated October 22, 2024, between Deloitte & Touche LLP and Freedom VCM Holdings, LLC, on behalf of the Companies.

## Financial Statements

Management is responsible for the preparation, fair presentation, and overall accuracy of the financial statements, including disclosures, in accordance with generally accepted accounting principles. In this regard, management has the responsibility for, among other things:

- Selecting and applying the accounting policies

- Designing, implementing, and maintaining effective internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error

- Identifying and ensuring that the Companies comply with the laws and regulations applicable to their activities and informing us of all instances of identified or suspected noncompliance with such laws or regulations

- Evaluating whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the Companies' ability to continue as a going concern

- Providing us with (1) access to all information of which management is aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, (2) additional information that we may request from management for the purpose of our audits, and (3) unrestricted access to personnel within the Companies from whom we determine it necessary to obtain audit evidence

D&T will use the Companies' internal auditors to perform audit procedures under our direction, supervision, and review ("direct assistance"). In connection therewith, management and the Board of Directors acknowledge and agree that (1) the internal auditors that will provide direct assistance to us will be allowed to follow our instructions, and (2) the Companies will not intervene in the work performed by such internal auditors for us.

## Management's Representations

We will make specific inquiries of the Companies' management about the representations embodied in the financial statements. In addition, we will request that management provide us with the written representations the Companies are required to provide to their independent auditors under generally accepted auditing standards. The responses to those inquiries and the written representations of management are part of the evidential matter that D&T will rely on in forming its opinions on the Companies' financial statements. Because of the importance of

management's representations, the Companies agree to release and indemnify D&T, its subcontractors, and their respective personnel from all claims, liabilities, and expenses relating to our services under this engagement letter attributable to any misrepresentation by management.

# Independence

For purposes of the subsections within this section entitled "Independence," "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu Limited, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu Limited and its member firms; and, in all cases, any successor or assignee.

## *Independence Matters*

In connection with our engagement, D&T, management, and the Board of Directors will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence. D&T will communicate to its partners, principals, and employees that the Companies are attest clients.

Management of the Companies will ensure that the Companies, together with their subsidiaries and other entities that comprise the Companies for purposes of the consolidated financial statements, have policies and procedures in place for the purpose of ensuring that neither the Companies nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that under American Institute of Certified Public Accountants (AICPA) or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Vineyard.

In connection with the foregoing paragraph, the Companies agree to furnish to D&T and keep D&T updated with respect to a corporate tree that identifies the legal names of the Companies' affiliates, as defined in AICPA *Code of Professional Conduct* (e.g., parents, subsidiaries, investors, or investees) ("Companies Affiliates"), together with the ownership relationship among such entities. Such information will be maintained in a database accessible by D&T in connection with their compliance with AICPA or other applicable independence rules.

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees in a key position, as defined in the AICPA *Code of Professional Conduct*. Management of the Companies will ensure that the Companies, together with their subsidiaries and other entities that comprise the Companies for purposes of the consolidated financial statements, also have policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in a key position that would cause a violation of the AICPA *Code of Professional Conduct* or other applicable independence rules. Any employment opportunities with the Companies for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Vineyard before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee.

## APPENDIX C

## COMMUNICATIONS WITH THE BOARD OF DIRECTORS

This Appendix C is part of the engagement letter dated October 22, 2024, between Deloitte & Touche LLP and Freedom VCM Holdings, LLC, on behalf of the Companies.

We are responsible for communicating with the Board of Directors significant matters related to the audits that are, in our professional judgment, relevant to the responsibilities of the Board of Directors in overseeing the financial reporting process.

In connection with the foregoing, we will communicate to the Board of Directors any fraud we identify or suspect that involves (1) management, (2) employees of the Companies who have significant roles in internal control, or (3) other employees of the Companies when the fraud results in a material misstatement of the financial statements. In addition, we will communicate with the Board of Directors any other matters related to fraud that are, in our professional judgment, relevant to their responsibilities. We will communicate to management any fraud perpetrated by lower-level employees of which we become aware that does not result in a material misstatement of the financial statements; however, we will not communicate such matters to the Board of Directors, unless otherwise directed by the Board of Directors.

We will also communicate to the Board of Directors matters involving the Companies' noncompliance with laws and regulations that have come to our attention during the course of our audits, other than when such matters are clearly inconsequential.

We will also communicate in writing to management and the Board of Directors any significant deficiencies or material weaknesses in internal control (as defined in generally accepted auditing standards) that we have identified during the audits, including those that were remediated during the audits.

Generally accepted auditing standards do not require us to design procedures for the purpose of identifying other matters to communicate with the Board of Directors. However, we will communicate to the Board of Directors matters required by AICPA AU-C 260, *The Auditor's Communication with Those Charged with Governance*.

# APPENDIX D

# GENERAL BUSINESS TERMS

This Appendix D is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated October 22, 2024, between Deloitte & Touche LLP and Freedom VCM Holdings, LLC, on behalf of the Companies.

1.  Independent Contractor. D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, fiduciary, or representative of the Companies, or Freedom VCM Holdings, LLC or the Board of Directors.

2.  Survival. The agreements and undertakings of the Companies contained in the engagement letter will survive the completion or termination of this engagement.

3.  Assignment and Subcontracting. Except as provided below, no party may assign any of its rights or obligations (including, without limitation, interests or claims) relating to this engagement without the prior written consent of the other parties. The Companies hereby consent to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be charged as professional fees, and any related expenses shall be charged as expenses, unless otherwise agreed.

4.  Severability. If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5.  Force Majeure. No party shall be deemed to be in breach of the engagement letter as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6.  Confidentiality. To the extent that, in connection with this engagement, D&T comes into possession of any confidential information of the Companies, D&T shall not disclose such information to any third party without the Companies' consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The Companies hereby consent to D&T disclosing such information (1) as may be required by law or regulation, or to respond to governmental inquiries, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; (2) to the extent such information (i) is or becomes publicly available other than as the result of a disclosure in breach hereof, (ii) becomes available to D&T on a nonconfidential basis from a source that D&T believes is not prohibited from disclosing such

information to D&T, (iii) is already known by D&T without any obligation of confidentiality with respect thereto, or (iv) is developed by D&T independently of any disclosures made to D&T hereunder; or (3) to contractors providing administrative, infrastructure, and other support services to D&T, subcontractors providing services in connection with this engagement and Deloitte Entities and their contractors to develop and enhance tools and services of Deloitte Entities, in each case, whether located within or outside of the United States, provided they have agreed to be bound by confidentiality obligations similar to those in this paragraph. Deloitte Entities may also use or disclose any information to provide services or client offerings to current or prospective clients provided that information is not used or disclosed in a way that would permit the Companies to be identified by third parties, without the Companies' consent. "Deloitte Entities" shall mean any member firm of Deloitte Touche Tohmatsu Limited and its affiliates bound by confidentiality terms similar to the paragraph above.

To the extent that any information obtained by D&T from or on behalf of the Companies or their employees in connection with the performance of services under the engagement letter relates to a resident of Massachusetts and constitutes "Personal Information" as defined in 201 CMR 17.02 (as may be amended), D&T shall comply with the obligations of 201 CMR 17.00 et. seq. (as may be amended), entitled "Standards for the Protection of Personal Information of Residents of the Commonwealth," with respect to such information.

7. <u>Data Privacy</u>.

(a) For purposes of these terms, the following definitions apply:

"Personal Information" means any information received from, or on behalf of, the Companies by D&T in its performance of services under the engagement letter (the "services") that is capable of individually identifying a natural person or is otherwise defined as "personal information" under applicable privacy laws.

"Personal Information Breach" means D&T's confirmation of unauthorized access to, or unauthorized use or disclosure of, Personal Information under D&T's possession or control that compromises the security, confidentiality or integrity of such Personal Information.

"Processing" means any operation or set of operations performed on Personal Information, such as accessing, obtaining, storing, retaining, selling, sharing, combining, transmitting, using, maintaining, disclosing or disposing of Personal Information.

(b) D&T shall comply with the privacy laws applicable to it in connection with the performance of the services. D&T shall only Process Personal Information in connection with its performance of the services, or as otherwise permitted under the engagement letter or these terms or as required by applicable law or professional standards. Taking into account the nature of the Personal Information being Processed, D&T shall have in place reasonable technical and organizational measures designed to (i) provide a level of security appropriate to the risks, and (ii) assist the Companies in responding to consumer rights requests. Upon written request, D&T shall make available information with respect to D&T's Processing of Personal Information to: (i) demonstrate D&T's compliance with its obligations in this paragraph, which may take the form of an independent third-party certificate or audit report, or other relevant documentary information; and (ii) reasonably

cooperate with the Companies in fulfilling its obligations under applicable privacy laws, such as responding to Personal Information requests of individuals, maintaining the security of Personal Information, conducting privacy impact assessments, and consulting with applicable regulatory authorities. Unless otherwise required in connection with the services, D&T agrees that it will not re-identify any de-identified data it receives from or on behalf of the Companies. D&T agrees that, upon written notice, the Companies may take reasonable and appropriate steps to stop and remediate D&T's unauthorized use of Personal Information. D&T will notify the Companies, to the extent required by law, if D&T makes a determination that it can no longer meet its obligations with respect to Personal Information under applicable privacy laws. To the extent required by applicable privacy laws, D&T certifies that it understands and agrees to comply with its privacy obligations set forth herein.

(c)   In the event of a Personal Information Breach, D&T shall promptly and within any timeframe governing D&T's notification obligation under applicable law inform the Companies' primary business contact for the services of such Personal Information Breach and shall provide to the Companies additional information relating to the Personal Information Breach reasonably requested by the Companies, to the extent then known by D&T, including information required for the Companies to provide any notices required by applicable law.

(d)   D&T shall require that its personnel and subprocessors which Process Personal Information are subject to duties of confidentiality consistent with these terms. D&T may not use subprocessors to Process Personal Information without the prior written consent of the Companies. The Companies hereby consent to the Processing of Personal Information by the following subprocessors: (i) subcontractors authorized to provide services under the engagement letter in order to perform the services, and (ii) contractors to the extent necessary, in connection with providing administrative, infrastructure, and other support services to D&T. D&T shall enter into a written contract with each of its subprocessors consistent with the privacy obligations in this paragraph.

(e)   Upon the Companies' written request, D&T shall delete or return Personal Information that it maintains. Notwithstanding the foregoing, D&T shall have the right to retain copies of such Personal Information to the extent required by applicable law or professional standards, provided that D&T complies with the privacy obligations in this paragraph.

(f)   Description of Processing attached hereto as Appendix D: Exhibit 1 sets forth certain details regarding D&T's Processing of Personal Information in connection with this engagement.

8.   <u>Dispute Resolution.</u> Any controversy or claim between the parties arising out of or relating to the engagement letter or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix E and made a part hereof.

## APPENDIX D: EXHIBIT 1

### DESCRIPTION OF PROCESSING

Categories of individuals whose Personal Information is Processed:

- ☒ Employees
- ☒ Clients and customers
- ☒ Vendors or suppliers
- ☒ Dependents, beneficiaries, spouses, and/or domestic partners of employees
- ☒ Board of directors, audit committee, or those charged with governance
- ☐ Other:

Categories of Personal Information Processed:

- ☒ Name
- ☒ Contact information such as telephone number, physical address, email address
- ☒ Employment information such as position, title, job description or personnel number
- ☒ Education information
- ☒ Compensation and tax-related Personal Information
- ☒ Banking and financial account information
- ☒ Date of birth
- ☒ Internet log and tracking information, including cookies, beacons, IP addresses, and web browser and device information
- ☒ Online identifiers such as login and account information, including screen name, password and unique user ID
- ☒ Gender
- ☒ Photos and videos
- ☒ Government-issued unique identifiers
- ☐ Precise geolocation data
- ☐ Immigration status
- ☐ Citizenship information
- ☐ Information from children under 13 years old
- ☐ Other:

Categories of sensitive Personal Information Processed which reveals an individual's:

- ☒ Health or medical-related Personal Information
- ☒ Racial or ethnic origin
- ☒ Criminal convictions and offenses
- ☐ Political opinions

13

☐     Religious or philosophical beliefs

☐     Trade union membership

☐     Genetic or biometric (such as a facial scan, fingerprint, voice print or iris scan) Personal Information

☐     Sex life or sexual orientation

Nature and purpose(s) of the Processing: D&T Processes Personal Information in the context of providing the services.

Duration of Processing: While performing the services and as required by applicable laws and professional standards.

# APPENDIX E

# DISPUTE RESOLUTION PROVISION

This Appendix E is part of the engagement letter dated October 22, 2024, between Deloitte & Touche LLP and Freedom VCM Holdings, LLC, on behalf of the Companies.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of Disputes and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

Mediation: All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

Arbitration Procedures: If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. The Companies, on the one hand, and Deloitte & Touche LLP, on the other hand, shall each designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the laws of the State of New York (without giving effect to its choice of law principles) in connection with the Dispute. The arbitrators shall have no power to award punitive, exemplary or other damages not based on a party's actual damages (and the parties expressly waive their right to receive such damages). The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Docusign Envelope ID: 1E76BC16-52E3-43AD-968D-62745750F1CE

Costs: Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

## APPENDIX F

## LISTING OF COMPANIES TO BE AUDITED

This Appendix F is part of the engagement letter dated October 22, 2024, between Deloitte & Touche LLP and Freedom VCM Holdings, LLC, on behalf of the Companies.

| Sc No. | Entities | Year/ Period Ending |
|---|---|---|
| 1. | Freedom VCM Holdings, LLC | As of and for fiscal year ending December 28, 2024 |
| 2. | Freedom VCM, Inc. | As of and for fiscal year ending December 28, 2024 |
| 3. | Franchise Group, Inc. | As of and for fiscal year ending December 28, 2024 |
| 4. | Pet Supplies Plus, LLC | As of and for fiscal year ending December 28, 2024 |

**DocuSign**

| **Certificate Of Completion** | | |
|---|---|---|
| Envelope Id: 1E76BC1652E343AD968DB2715750F1CF | | Status: Completed |
| Subject: Complete with Docusign: Freedom VCM Holdings LLC - DT Engagement Letter.pdf | | |
| Use Case: Engagement Letter | | |
| Data Classification: Confidential | | |
| WBS (N/A if not available): N/A | | |
| Source Envelope: | | |
| Document Pages: 17 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Zack Weston |
| AutoNav: Enabled | | Two Jericho Plaza 3rd Floor |
| EnvelopeId Stamping: Enabled | | ATTN: Accounts Payable |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | Jericho, NY  11753 |
| | | IP Address: 24.239.176.22 |

| **Record Tracking** | | |
|---|---|---|
| Status: Original | Holder: Zack Weston | Location: DocuSign |
| 10/28/2024 | 12:36 | | |

| **Signer Events** | **Signature** | **Timestamp** |
|---|---|---|
| Eric Seeton | *Eric Seeton* | Sent: 10/28/2024 | 12:45 |
| | | Viewed: 10/28/2024 | 12:53 |
| CFO | | Signed: 10/28/2024 | 12:53 |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 83.240.156.108 | |

**Electronic Record and Signature Disclosure:**
   Accepted: 10/28/2024 | 12:53
   ID: 9a0d66ea-244e-4d37-b3c6-6464fa3875ca
   Company Name: Deloitte

| **In Person Signer Events** | **Signature** | **Timestamp** |
|---|---|---|

| **Editor Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Agent Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Intermediary Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Certified Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Carbon Copy Events** | **Status** | **Timestamp** |
|---|---|---|

| **Witness Events** | **Signature** | **Timestamp** |
|---|---|---|

| **Notary Events** | **Signature** | **Timestamp** |
|---|---|---|

| **Envelope Summary Events** | **Status** | **Timestamps** |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/28/2024 | 12:45 |
| Certified Delivered | Security Checked | 10/28/2024 | 12:53 |
| Signing Complete | Security Checked | 10/28/2024 | 12:53 |
| Completed | Security Checked | 10/28/2024 | 12:53 |

| **Payment Events** | **Status** | **Timestamps** |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 02/27/2020 | 02:43
Parties agreed to: Eric Seeton

## DISCLOSURE

From time to time, Deloitte USA LLP, Deloitte LLP and their respective subsidiaries (collectively, "we", "us" or "Company") may be required by law to provide to you certain written notices or disclosures related to the use of DocuSign and/or electronic signatures ("Disclosures"). Described below are the terms and conditions for providing to you such Disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' checkbox.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.0000 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive Disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required Disclosures only in paper format. How you must inform us of your decision to receive future Disclosures in paper format and withdraw your consent to receive Disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required Disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required Disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper Disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required Disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required Disclosures electronically from us or to sign electronically documents from us.

### All Disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all Disclosures that are required to be provided or made available to you. To reduce the chance of you inadvertently not receiving any Disclosures, we prefer to provide all of the required Disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the Disclosures electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the Disclosures electronically from us.

### How to contact Deloitte:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive Disclosures electronically as follows:

**To advise Deloitte of your new e-mail address**

To let us know of a change in your e-mail address where we should send Disclosures electronically to you, you must send an email message to us at Deloitte Global eSignature Support and in the body of such request you must state: your previous e-mail address and your new e-mail address. We do not require any other information from you to change your email address. In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from Deloitte**

To request delivery from us of paper copies of the Disclosures previously provided by us to you electronically, you must send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number.

**To withdraw your consent with Deloitte**

To inform us that you no longer want to receive future Disclosures in electronic format you may:
i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
ii. send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.

**Required hardware and software**

| | |
|---|---|
| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safari™ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic Disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference

and access. Further, if you consent to receiving Disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.

By checking the 'I agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and
- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and
- Until or unless I notify Deloitte as described above, I consent to receive exclusively through electronic means all Disclosures that are required to be provided or made available to me by Deloitte.