**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>Ref. Docket No. 194 |

**DEBTORS' OBJECTION TO THE AD HOC GROUP OF FREEDOM LENDERS'
<u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) ADJOURNING THE
SECOND DAY HEARING SET FOR DECEMBER 10, 2024, (II) EXTENDING THE
OBJECTION DEADLINES IN CONNECTION WITH THE SECOND DAY HEARING
AND (III) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>") submit this objection (the "<u>Objection</u>") to *The Ad Hoc Group of Freedom Lender's Emergency Motion for Entry of an Order (I) Adjourning the Second Day Hearing Set for December 10, 2024, (II) Extending the Objection Deadlines in Connection with the Second Day Hearing and*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home and Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

*(III) Granting Related Relief* (the "Motion") filed by the Freedom Lender Group (as defined in the Motion). In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Freedom Lender Group cannot show cause for adjourning the hearing scheduled for December 10, 2024 (the "Second Day Hearing") to consider final approval of the Debtors' "first day" motions (the "Final First Day Orders") and "second day" motions and applications (the "Second Day Motions" and collectively with the Final First Day Orders, the "Second Day Relief"). *See* Fed. R. Bankr. P. 9006(b)(1) (permitting enlargement of deadlines "for cause shown"). Among the Second Day Relief is the Debtors' final approval of debtor-in-possession financing (the "DIP Financing"). As the Court itself observed, the Debtors' creditors and vendors need certainty around DIP Financing for the duration of this case. Further delay approving the DIP Financing would prejudice the Debtors, and is needless in light of the Debtors' efforts to respond to the Freedom Lender Group's discovery requests in advance of the Second Day Hearing. To date, the Debtors have been subjected to a series of exhaustive and, in many cases, irrelevant and overbroad discovery demands by the Freedom Lender Group pertaining to the DIP Financing and more. Nevertheless, the Debtors have more than met their discovery obligations, having produced, to date, over 43,000 pages of discovery, including email communications to and from their financial advisor, chief restructuring officer, and CEO. Moreover, the Debtors have agreed to three depositions, including that of the CEO, prior to the date of the Second Day Hearing. Finally, the Debtors were forced to serve discovery on the Freedom Lender Group, to which the Freedom Lender Group has produced nothing in response. Notwithstanding all of this discovery—an extraordinary amount considering that the Second Day Hearing concerns mostly non-controversial Final First Day Orders and Second Day Motions—the

Freedom Lender Group argues that the Second Day Hearing be adjourned because, somehow, all of this discovery is insufficient to allow it to press its objections at the Second Day Hearing. This argument is absurd on its face and should be soundly rejected.

## **BACKGROUND**

2.  On November 5 and 6, 2024, the Court held a hearing to consider interim approval of certain "first day" motions (the "First Day Hearing"). At the First Day Hearing, the Freedom Lender Group raised concerns related to the DIP Financing, including by cross-examining two of the Debtors' witnesses. Specifically, the Freedom Lender Group stated that there was a "difficult question of whether or not" the DIP can "be approved under [ ] 364(d)."[2] Significant evidence was elicited on these points in the First Day Hearing, and Chris Grubb of Ducera Partners LLC, the Debtors' investment banker, and David Orlofsky of AlixPartners, LLP, the Debtors' Chief Restructuring Officer, were questioned extensively by the Freedom Lender Group's counsel about the DIP Financing.

3.  On November 8, 2024, the Freedom Lender Group served sixty-four document requests, twelve interrogatories, and twenty-eight 30(b)(6) deposition topics, along with two Deposition Notices to Mr. Orlofsky and Mr. Grubb, and two Fed. R. Civ. P. 30(b)(6) subpoenas. The Freedom Lender Group sought information over a five-year period prepetition, from November 3, 2019 to the present, and demanded production by November 18, 2024—six business days following service of its Requests.

---

[2] Nov. 6, 2024 Hearing Tr. at 21:1-3; *see also* Nov. 5, 2024 Hearing Tr. at 157:23-158:2 (The Freedom Lender Group stated that "[the DIP] can only be approved if the debtor is unable to otherwise obtain financing and provide adequate protection.").

4. Among the overbroad and irrelevant information sought by the Freedom Lender Group were requests such as:[3]

   a. "All Documents and Communications concerning any litigations, arbitrations, settlements, investigations, proceedings, or demands for payment, whether threatened, pending, or ongoing, in which any of the OpCo Debtors is a party or identified as a potential party." Ex. A at 13;

   b. "Identify and describe all potential claims and causes of action belonging to any of the HoldCo Debtors, including any potential claims and causes of action against any of the other Debtors." Ex. B. at 9;

   c. "All Documents and Communications between the Debtors, on the one hand, and Brian Kahn and his lawyers or representatives, on the other hand, concerning the matters discussed in paragraphs 9 and 10 of the First-Day Declaration." Ex. A at 16;

   d. "Identify all individuals that are employed at any of the HoldCo Debtors." Ex. B at 9;

   e. "All Documents and Communications, including offering memoranda and solicitation or marketing materials, sent or provided to any potential lenders in connection with the Take-Private Transaction." Ex. A at 17; and

   f. "Identify any contracts, leases, engagement letters, or agreements to which any of the Holdco Entities are a third-party beneficiary." Ex. B at 9.

5. On November 14, 2024, the Debtors met and conferred with the Freedom Lender Group to narrow the scope of discovery to information relevant to the Second Day Hearing and discuss the production deadline. The Freedom Lender Group insisted that all production be completed by November 18, 2024 and made its first request to adjourn the Second Day Hearing. Following the meet-and-confer, the Debtors offered the Freedom Lender Group the opportunity to submit a supplemental objection shortly before the Second Day Hearing, which would incorporate

---

[3] As exemplars, the *Ad Hoc Group of Freedom Lenders' First Requests for the Production of Documents to the HoldCo Debtors in Connection with the Second-Day Motions* (Nov. 8, 2024) is attached as <u>Exhibit A</u>, and the *Ad Hoc Group of Freedom Lenders' First Set of Interrogatories to the HoldCo Debtors in Connection with the Second-Day Motions* (Nov. 8, 2024) is attached as <u>Exhibit B</u>.

any new evidence received in discovery since its initial objection. The Freedom Lender Group refused the Debtors' offer.

6. The Debtors worked expeditiously to produce documents and three witnesses in response to these requests in advance of the Second Day Hearing. The Debtors made their first document production to the Freedom Lender Group on November 15, 2024, and made 8 subsequent productions. In total, the Debtors have produced over 43,000 pages of documents to the Freedom Lender Group, including 790 email communications involving the Debtors, their advisors, and relevant third parties. These documents include board minutes (FRG00035611-FRG00035636), tax documents and financial materials (FRG00008358-FRG00035436), and DIP budgeting materials such as draft budgets and supporting materials (FRG00001972-FRG00003512), as well as documents the Motion asserted would not be produced, such as engagement letters (FRG00003459-FRG00003512) and intercompany transactions and loans (FRG00008425-FRG00008429). The Debtors served responses to the Requests for Interrogatories on November 18, 2024, and have agreed to have three witnesses sit for depositions: Christopher Grubb (the Debtors' investment banker), David Orlofsky (the Debtors' Chief Restructuring Officer), and Andrew Laurence (the Debtors' Chief Executive Officer), on December 6 (for Mr. Grubb and Mr. Orlofsky) and December 9 (for Mr. Laurence).

7. On November 11, 2024, the Debtors served document requests, interrogatories, and a 30(b)(6) deposition notice on the Freedom Lender Group. The Freedom Lender Group responded and objected on November 23, 2024, and have not produced any documents or witnesses in response to these requests.

8. On November 16, 2024, the Freedom Lender Group served an additional sixty-five document requests, thirty interrogatories, and seventy-six topics of deposition across two Requests

for Production, two Requests for Interrogatories, and two 30(b)(6) Deposition Notices. The Freedom Lender Group contended that it sought this discovery in relation to the Plan and Disclosure Statement—two topics not at-issue at the Second Day Hearing—yet demanded the Debtors respond and produce in advance of the Second Day Hearing.[4] The Freedom Lender Group again requested information over a five-year period concerning irrelevant topics such as:[5]

a. "All Documents and Communications concerning [Prophecy Asset Management LP], the Indictment, or the Complaint, including: a. Documents the Debtors have produced to any third party, including the Securities and Exchange Commission, Department of Justice or any plaintiff; b. Documents provided to Petrillo in connection with the Independent Investigation; and c. Documents and Communications between Brian Kahn and any of the Debtors' directors and officers concerning Prophecy, the Indictment, or the Complaint." Ex. C at 18;

b. "Any Board Materials, solicitations, informational and marketing materials, fairness opinions, and proposals concerning strategic initiatives pursued and evaluated by the Debtors since January 2023 as described on pages 13 and 14 of the Disclosure Statement, including, without limitation, the potential securitization financing of the Debtors' PSP business, potential monetization of The Vitamin Shoppe and Buddy's businesses, and the marketing of American Freight on a going concern basis." Ex. C at 17;

c. "Identify the date that on which each of the Debtors, their directors and their officers became aware of the SEC and DOJ's pending investigation into Mr. Kahn." Ex. D at 12;

d. "Regarding the Take-Private Transaction, all Documents and Communications concerning: a. the formation, composition, advisors to, and mandate of the Take-Private Transaction Committee; b. the Take-Private Transaction Committee's (a) "review of Mr. Kahn's take-private proposal and other strategic alternatives that were available to Franchise Group, including the potential sale of the Vitamin Shoppe" and (b) determination that "Mr. Kahn's proposal was in the best interests of Franchise Group and its public shareholders" as described on pages 5 and 6 of the Disclosure Statement; c. all reports, findings, summaries, or conclusions created

---

[4] This is despite the Freedom Lender Group's tacit admission in its Motion that Plan and Disclosure Statement is irrelevant to the issues in the Second Day Hearing. *See Motion* at ¶ 8 n.3 (reserving rights to object in the future to Plan and Disclosure Statement discovery in advance of the hearing set for December 17, 2024).

[5] As exemplars, the *HoldCo Lenders' First Requests for the Production of Documents to the HoldCo Debtors in Connection with the Plan and Disclosure Statement* (Nov. 16, 2024) is attached as Exhibit C, and the *Ad Hoc Group of Freedom Lenders' First Set of Interrogatories to the OpCo Debtors in Connection with the Plan and Disclosure Statement* (Nov. 16, 2024) is attached as Exhibit D.

      by, for, or at the direction of the Take-Private Transaction Committee, including any Board Materials; d. all valuations, analyses, reports, or estimates concerning the Debtors' solvency before, after or because of the Take-Private Transaction; e. all tax analyses or reports concerning the Take-Private Transaction; and f. any fairness opinions conducted in connection with the Take-Private Transaction." Ex. C at 15-16.

    e. "Identify and describe the categories of Documents and Communications that the Debtors and their advisors either have reviewed or intend to review in connection with the Independent Investigation and the Chapter 11 Investigation." Ex. D at 13.

9. On November 18, 2024, the Debtors made another offer to the Freedom Lender Group to move their objection date to November 29, 2024, and permit a supplemental objection before the Second Day Hearing that incorporates new discovery received since the initial objection on November 29, 2024. The Freedom Lender Group agreed to this offer.

10. Just one day later, on the evening on November 19, 2024, the Freedom Lender Group demanded that the Debtors extend the final DIP hearing, bid procedures hearing, and disclosure statement hearing by 30 days, lest they file for emergency relief before the opening of business on November 20, 2024. The basis for seeking such relief was that the Debtors unremarkably served responses and objections to the Second Day Hearing Requests on November 18, 2024, the date set by the Freedom Lender Group to do so.[6] The Debtors refused, and the Freedom Lender Group subsequently filed its Motion.

11. Since making this Motion, on November 26, 2024, the Debtors provided responses to the Freedom Lender Group's Plan and Disclosure Statement interrogatories. On November 27, 2024, the Debtors served 30(b)(6) deposition notices on members of the Freedom Lender Group – Irradiant Partners LP and Pacific Investment Management Company LLC – and deposition notices

---

[6] *See Motion* at ¶ 5 ("Additionally, the extension of the Freedom Lender Group's objection deadline was made without prejudice to the Freedom Lender Group's right to seek a further extension or adjournment of the hearing based on subsequent developments. Those developments came just a few hours after the extension was granted, when the Debtors served responses and objections to the Freedom Lender Group's discovery requests.").

for Jon Levinson, Seth Zeleznik, and Gabriel Goldstein, in connection with the Freedom Lender Group's *Motion of the Ad Hoc Group of Freedom Lenders for Entry of an Order (i) Terminating Exclusivity in the HoldCo Debtors' Cases, (ii) Lifting the Automatic Stay in the HoldCo Debtors' Cases, or (iii) Appointing a Chapter 11 Trustee for the HoldCo Debtors* [D.I. 192]. The Freedom Lender Group responded on December 2, 2024, and the Debtors and the Freedom Lender Group met-and-conferred on December 3, 2024. The Freedom Lender Group refused to make any witnesses available, other than their investment banker with respect to their bidding procedures objection, and did not confirm whether they would offer a witness to testify as to a limited number of 30(b)(6) topics in connection with their affirmative motions.

12. On November 29, 2024, the Freedom Lender Group requested the Debtors move its objection deadline from November 29, 2024 to end of day on December 2, 2024. The Debtors and the Freedom Lender Group consensually agreed to move the Freedom Lender Group's objection deadline to noon on December 2, 2024. The Freedom Lender Group filed its objection on December 2, 2024.

## ARGUMENT

### I. The Freedom Lender Group Cannot Show Cause Because Second Day Hearing Discovery Will Be Completed Before The Second Day Hearing

13. The concerns raised by the Freedom Lender Group in its Motion have proven to be meritless. Since the Freedom Lender Group made its Motion, discovery has proceeded apace without the need for this Court's involvement.

14. To the extent the Freedom Lender Group believes discovery has not completed, that is simply due to its excessive and overly broad discovery requests into matters that are irrelevant to the Second Day Motions. Section 364(d)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") presents two straightforward requirements to

authorize DIP financing subject to a lien: that (A) the debtor "is unable to obtain such credit otherwise" and "(B) there is adequate protection of the interest of the holder of the lien . . . on which such senior or equal lien is proposed to be granted."[7]

15.     Despite these straightforward requirements, the Freedom Lender Group has served overly broad and irrelevant discovery requests that do not pertain to the DIP Financing, or any other topics set for argument at the Second Day Hearing.  For example, the Debtors are not seeking any relief with respect to the Take-Private Transaction at the Second Day Hearing, and the Freedom Lender Group's requests concerning the Take-Private Transaction – which closed over 15 months before the Debtors filed for bankruptcy – are not appropriate for the Second Day Hearing.

16.     In addition, the Freedom Lender Group has demanded the Debtors expand their search terms, and has proposed terms that would require the Debtors to review over 50,000 additional documents within the span of a few days.[8]  The Freedom Lender Group has taken the position that terms such as "financing" or "facility," even when used in documents or communications that never use the terms DIP, 2L, Holdco, or DIP Budget, should be reviewed.[9] This is far in excess of what is required to resolve the two questions at-issue during the Second Day Hearing, and is certainly not "basic, push-button discovery."[10]  What is worse, many of the terms that the Freedom Lender Group demands to be used are totally irrelevant to the Second Day

---

[7]   *See* 11 U.S.C. § 364(d)(1).

[8]   *See* Exhibit E, Debtors' Search Protocol for Second Day Hearing Discovery (showing original Ad Hoc Group proposed terms with Debtors' revisions).

[9]   *See* Exhibit F, Email from E. Smith, RE: RE: RE: In re Franchise Group, Inc., et al.; Case No. 24-12480 (JTD) (Discovery Responses and Objections), Nov. 25, 2024.

[10]  *See* Motion at ¶ 5.

Hearing and concern matters more appropriate for Plan discovery.[11]  Expansive searching into matters unrelated to the Second Day Hearing cannot be a basis for adjournment.[12]  Moreover, the Debtors *are* working on responding to the Freedom Lender Group's Plan and Disclosure Statement discovery.  The Debtors have responded to the Freedom Lender Group's Requests for Interrogatories, are actively searching for relevant, non-privileged documents responsive to its Requests for Production, and will produce all requisite discovery in advance of a future hearing concerning the Plan.

17. In contrast to the Debtors' efforts to produce over 43,000 documents to the Freedom Lender Group, and meet their compressed production deadlines in advance of the Second Day Hearing, the Freedom Lender Group has not produced any documents in response to the Debtors' November 11, 2024 discovery requests.  The Freedom Lender Group's request for an extension due to concerns about the Debtors' production rings hollow given the Freedom Lender Group itself has not produced anything.

18. Finally, the Freedom Lender Group's contention that the Debtors would not be prejudiced by adjourning the Second Day Hearing is false.  The Freedom Lender Group asserts, without evidence, that the Debtors will not be prejudiced as they "have substantial liquidity" and the Freedom Lender Group has a "willingness" to provide an alternative interim DIP "on *similar* terms" (emphasis added), though they have not made any such proposal to the Debtors.[13]  As this

---

[11] *See Motion* at ¶ 8 n.3.

[12] The Freedom Lender Group contends that the Debtors' creation and implementation of search terms, prior to sharing them, is "in contradiction to Local Rule 702[6]-3." *Motion* at ¶ 24.  There is no such requirement under Rule 7026-3.  Rather, Rule 7026-3 provides that "the parties shall disclose any restrictions as to scope and method" affecting an electronic search, and that the "parties shall confer and in good faith attempt to reach agreement [concerning] the method of searching, and the words, terms, and phrases to be searched ..." Local Rule 7026-3(e).  This is has occurred, and in the spirit of compromise, the Debtors have reviewed 1,377 additional documents in response to the Freedom Lender Group's additional search requests.

[13] *See Motion* at ¶ 32.

Court stated at the First Day Hearing, the Debtors' creditors and vendors need to be "comfortable with what's going to happen with this case," and "that there's going to be funding available to pay them in order for the debtors to receive the materials that they need to continue in operation."[14] Such concerns are particularly warranted here, "where we have retail credit – or retail debtors who need to have the goods that they need to sell."[15] Even if the Freedom Lender Group provided a second, *identical* interim DIP, the Debtors cannot provide the requisite assurances to their vendors and creditors by continuing to agree to a series of interim DIP agreements.

19. The only explanation for the Freedom Lender Group's overbroad and irrelevant discovery, artificially short turnaround times for production, initial refusal to agree to a supplemental objection, demand for Disclosure Statement and Plan discovery to be completed before the Second-Day Hearing, and the present Motion, is that the Freedom Lender Group's real aim is to increase litigation costs, delay the Second Day Hearing, and pressure the Debtors to give in to its demands, which extend far beyond the matters in dispute in connection with the DIP Financing. The Court should not find cause on these bases, and should deny the Freedom Lender Group's request to extend.

II. **The Freedom Lender Group Cannot Show Cause Because It Agreed To A Consensual Extension To Its Objection Deadline And Its Related Concerns Are Moot**

20. On November 18, 2024, the Freedom Lender Group agreed to the Debtors' proposal to file its initial objection on November 29, 2024, and file a supplemental objection closer to the Second Day Hearing.[16] To the extent that "requiring the Freedom Lender Group to file two

---

[14] Nov. 6, 2024 Hearing Tr. at 125:23-126:4.

[15] *Id*. at 126:4-7.

[16] *See* Motion at ¶ 33 n.5.

11

objections is nonsensical and presents an unnecessary burden on the Court," the Freedom Lender Group agreed to do so and its concerns are not well taken.[17]

21. The Debtors have already agreed to a consensual extension of the Freedom Lender Group's objection deadline to noon on December 2, 2024, well in advance of the Second Day Hearing, and the Freedom Lender Group filed its objections in advance of that deadline. The Debtors have produced all relevant documents in advance of the Second Day Hearing, deposition dates for the Debtors' three witnesses have been agreed, and the Freedom Lender Group has had adequate opportunity to object. The Freedom Lender Group's remaining concerns about judicial efficiency were further mooted by the Court's scheduling this Motion to be heard on December 10, 2024, immediately preceding the Second Day Hearing. The Court should not find cause on this basis to adjourn the Second Day Hearing.

### III. The Freedom Lender Group Cannot Show Cause Because The Freedom Lender Motion Hearing Will Occur With The Second Day Hearing And Its Related Concerns Are Moot

22. The remaining basis for its Motion, that the Freedom Lender Group's *Motion of the Ad Hoc Group of Freedom Lenders for Entry of an Order (i) Terminating Exclusivity in the HoldCo Debtors' Cases, (ii) Lifting the Automatic Stay in the HoldCo Debtors' Cases, or (iii) Appointing a Chapter 11 Trustee for the HoldCo Debtors* [D.I. 192] be heard in advance of the Second Day Hearing, was mooted by the Court's scheduling its motion to be heard at the Second Day Hearing.

### CONCLUSION

---

[17] *Id.* at ¶ 35.

23. This Court should not reward the Freedom Lender Group's efforts to needlessly delay these proceedings. The Debtors have met their discovery obligations and produced over 43,000 pages of responsive documents in advance of the Second Day Hearing, and all outstanding discovery relevant to the Second Day Hearing will be completed before the hearing date. The Freedom Lender Group's remaining concerns – that making a supplemental objection was not efficient, and that its motion to terminate exclusivity be heard before the Second Day Hearing – have been mooted. The Debtors respectfully request that the Court deny the Motion and proceed with the Second Day Hearing as planned on December 10, 2024.

*[Remainder of Page Intentionally Left Blank]*

Dated: December 3, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
James C. Dugan (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
jdugan@willkie.com
slombardi@willkie.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*