**<u>EXHIBIT A</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC.[1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**AD HOC GROUP OF FREEDOM LENDERS' FIRST REQUESTS FOR THE
PRODUCTION OF DOCUMENTS TO THE HOLDCO DEBTORS IN CONNECTION
WITH THE SECOND-DAY MOTIONS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by

Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, certain of the (i)

Lenders, as defined in that certain *Credit Agreement*, dated as of August 21, 2023 among Freedom

VCM Interco, Inc., Freedom VCM, Inc., and Alter Domus (US) LLC (as amended, restated,

supplemented or otherwise modified from time to time) (the "**HoldCo Lenders**") and (ii) Second

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Lien Claimholders, as defined in that certain *Second Lien Credit Agreement*, dated as of March 10, 2021, among Franchise Group Inc., Franchise Group NewCo PSP, LLC, Valor Acquisition, LLC, Franchise Group NewCo Intermediate AF, LLC, and Alter Domus (US) LLC (as amended, restated, supplemented or otherwise modified from time to time) (the "**OpCo 2L Lenders**," and together with the HoldCo Lenders, the "**Ad Hoc Group of Freedom Lenders**") serve their First Requests for the Production of Documents (the "**Requests**" and each, a "**Request**") to Freedom VCM, Inc. and Freedom VCM Interco, Inc. (together, the "**HoldCo Debtors**") in connection with the Second-Day Motions.  Responses to these Requests must be served on **Samuel P. Hershey, White & Case LLP, 1221 Avenue of the Americas, New York, New York, 10020**, counsel to the Ad Hoc Group of Freedom Lenders, immediately on a rolling basis, with production to be completed on or before **November 18, 2024**.

## DEFINITIONS

For the purposes of these Document Requests, the following Definitions shall apply:

1.      "**Ad Hoc Group of First Lien Lenders**" shall have the meaning ascribed to it in the First-Day Declaration.

2.      "**Affiliate**" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

3.      "**Alix Partners**" means AlixPartners, LLP.

4.      "**Bankruptcy Code**" means title 11 of the United States Code, as amended.

5.      "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

6.      "**Board**" means any board of directors, managers, or comparable supervisory body, or any group or committee with the responsibility of, among other things, governing the Debtors or overseeing the activities and operations of the Debtors.

7.    "**Board Materials**" means all documents and materials prepared for, presented to, reviewed by, or distributed to any member of the Board in connection with any Board or committee meeting or action, including but not limited to, meeting minutes, agendas, resolutions, presentations, Board books, reports, and any other documents shared with Board members or committee members for the purpose of decision-making, discussion, or record-keeping related to Board or committee activities.

8.    "**Cash Collateral**" means all cash of the Debtors as defined in the DIP Motion.

9.    "**Cash Management Motion**" means the *Debtors' Motion for Interim and final orders (I) Authorizing the Debtors to (A) Continue to Maintain Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions; (II) Waiving Certain Operating Guidelines; (III) Suspending Time to Comply with Section 345(b) of the Bankruptcy Code; and (IV) Granting Related Relief* [D.I. 9].

10.    "**Chapter 11 Cases**" means the voluntary chapter 11 cases commenced on the Petition Date by the Debtors in the Bankruptcy Court.

11.    "**Communication**" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including without limitation, correspondence, documents, conversations, dialogues, discussions, e-mail, interviews, consultations, agreements, and other understandings.

12.    "**Concerning**," "**regarding**," "**in connection with**," "**relating to**," and/or "**referring to**" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed

3

in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

13.     "**Consenting First Lien Lenders**" shall have the meaning set forth in the First-Day Declaration.

14.     "**Critical Vendor Motion**" means *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers & Logistics Providers, and 503(B)(9) Claimants; and (II) Granting Related Relief* [D.I. 10].

15.     "**Debtors**" means Franchise Group, Inc. and its affiliated debtors, which filed voluntary chapter 11 petitions under the Bankruptcy Code commencing the Chapter 11 Cases, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successors entities; and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

16.     "**Critical Vendors**" means any holder of a prepetition Critical Vendors Claim, Foreign Vendors Claim, Shippers & Logistics Providers Claim, and/or 503(b)(9) Claim, each as defined in the Critical Vendor Motion.

17.     "**Document**" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic mater, in draft or final form, including, but not limited to: any letter, correspondence, or Communication of any sort; photograph; sound recording; video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, or cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, text message, instant message, Bloomberg message, WhatsApp message, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act,

or activity; projection, work paper, or draft; computer or computer network output or input, portable storage devices, e-mail, magnetic and/or optical medias, archived or back up data on any of these medias on the cloud or otherwise, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice, or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, or press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, register, canceled check, deposit slip, charge slip, tax return (income or other), requisition, file, study, graph, or tabulation, and any and all other writings and recordings of whatever nature, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonable usable form; including, without limitation, all things meeting the definition of "documents" or "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definition of "writing" or "recording" set forth in Rule 1001 of the Federal Rules of Evidence. Any document with any marks such as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is a separate document within the meaning of this term.

18.    "**DIP Declaration**" means the *Declaration of Christopher Grubb in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III)*

*Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [D.I. 52].

19.  "**DIP Facility**" shall have the meaning set forth in the First-Day Declaration.

20.  "**DIP Lenders**" shall have the meaning set forth in the First-Day Declaration.

21.  "**DIP Motion**" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [D.I. 51].

22.  "**Ducera**" means Ducera Partners LLC.

23.  "**First-Day Declaration**" means the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15].

24.  "**First-Day Filings**" refers to the filings submitted on November 3 and 4, 2024 and argued during the First-Day Hearing.

25.  "**First-Day Hearing**" refers to the hearing held in the above-captioned matter on November 5 and 6, 2024.

26.  "**HoldCo Debtors**" refers to Freedom VCM, Inc. and Freedom VCM Interco, Inc.

27.  "**Including**" means "including, without limitation" or "including, but not limited to."

28.  "**Independent Investigation**" has the meaning set forth in the First-Day Declaration.

29.     "**Initial DIP Budget**" means the 13-week cash flow forecast statements of the Debtors which the use of Cash Collateral and proceeds of the DIP Facility are subject to as set forth in Exhibit 3 to the DIP Motion.

30.     "**Intercreditor Agreement**" refers to the *Amended and Restated First Lien/Second Lien Intercreditor Agreement*, dated as of November 22, 2021, among JPMorgan Chase Bank, N.A. in multiple capacities, Alter Domus (US) LLC in multiple capacities, and the Franchise Group, Inc.

31.     "**Petition Date**" means November 3, 2024.

32.     "**Prepetition Marketing Process**" refers to the prepetition marketing process described in paragraphs 13-19 of the DIP Declaration.

33.     "**Relate**" and its variants encompass the terms "refer," "reflect," "constitute," "evidence," "in connection with," and "concern" and shall be construed to bring within the scope of the Document Request, as applicable, all documents and information that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Document Request, as applicable, including, but not limited to, all documents and information that reflect, record, memorialize, discuss, evaluate, consider, review, report, or otherwise evidence the existence of the subject matter of the Document Request, as applicable.

34.     "**RSA**" refers to that certain *Restructuring Support Agreement*, dated as of November 1, 2024, attached as Exhibit B to the First-Day Declaration.

35.     "**Special Committee**" shall have the meaning set forth in the First-Day Declaration.

36.     "**Take-Private Transaction**" shall have the meaning set forth in the First-Day Declaration.

37.    "**Willkie**" means Willkie Farr & Gallagher LLP.

38.    "**Young Conaway**" means Young Conaway Stargatt & Taylor, LLP.

39.    "**You**" and "**Your**" means the HoldCo Debtors.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions and for purposes of these Document Requests, the following Instructions shall be followed:

1.    In accordance with Rule 34(a) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, the Document Requests shall be deemed to include any document now or at any time in Your possession, custody, or control, including, but not limited to, documents in the possession, custody, or control of any Your current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entitles and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives, or other person acting or purporting to act on its or their behalf.  A document is deemed to be in Your possession, custody, or control it if is in Your physical custody, or if it is in the physical custody of any other person or entity and You:  (i) own such document in whole or in part; (ii) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (iii) have an understanding, express or implied, that You may use, inspect, examine, or copy such document when You sought to do so, or (iv) as a practical matter, have been able to use, inspect, examine or copy such document on any terms.  If any requested document was, but no longer is, in Your control, state the disposition of each such document.

2.    As the term " possession" pertains to e-mails, the term includes, but is not limited to, e-mails contained in Your electronic e-mail directories containing (i) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such

subdirectories; (ii) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (iii) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

3.      The word "all" shall also include "each of," and vice versa.  The word "any" shall be construed to mean "any and all" where the effect of such construction is to broaden the scope of the Document Request.

4.      In responding to each Document Request, You are to review and search all relevant files of appropriate entities and persons.

5.      All Document Requests shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the documents.

6.      You are to produce the original and all non-identical copies, including all drafts of each document requested.  If You are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.  Any document that cannot be produced in full shall be produced to the fullest extent possible.

7.      In accordance with Rule 34(b) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond with the categories in each Document Request.  The name of the file from which it was produced, the identity of the person from whose file it was produced, and the identity of the present custodian of that file each shall be set forth.  All documents requested herein shall be produced electronically as tagged image file format ("**TIFF**") or portable document format ("**PDF**") files, except that all spreadsheets and accounting and financial data, including

those created with Excel software, shall be produced in a fully functional native form (i.e., in a linked format).

8.      If any responsive document is known to have existed and cannot now be located, or has been destroyed, discarded, or otherwise disposed, set forth a complete statement of the circumstances surrounding such loss, destruction, discarding, or other disposition, including:

      a.      A description of the document, including the date, a summary of its contents and the identity of its author and the persons(s) to whom it was sent or shown:

      b.      The last known custodian;

      c.      Whether the document is missing or lost or was destroyed, discarded, or otherwise disposed;

      d.      The date of loss, destruction, discarding, or other disposition;

      e.      The reason(s) for destruction, discarding, or other disposition;

      f.      The person(s) authorizing or carrying out such destruction, discarding, or other deposition; and

      g.      The efforts made to locate lost or misplaced documents.

9.      In the event You seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, You shall produce as much of the document concerned as to which no claim of privilege or other limitation of discovery is made.  With respect to documents or portions of documents for which a claim of privilege or other limitation of discovery is made, You are instructed to provide a numeral list of the document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation is governed by state law, indicate the state of the privilege rule or other limitation invoked; and (2)

provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected information: (i) the type of document; (ii) the name and capacity of each author and recipient of the document; (iii) the general subject matter of the document in a manner sufficient to support the privilege or other protection claimed; (iv) the date of the document; (v) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production. Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged or protected information should be produced, but that portion of the document for which the privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

10.    Each Definition, Instruction, and Document Request herein shall be construed independently and not with reference to any other Definition, Instruction, or Document Request, for the purposes of limitation.

11.    If any meaning of any term in any Document Request herein is unclear to You, without waiver of the right to seek a full and complete response to the Document Request, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Document Request according to the assumed meaning.

12.     In accordance with Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, objections to any part of these Document Requests shall be stated in full and with specificity.  In the event You interpose an objection to a Document Request, You must produce the documents to which objection is not made or provide testimony or information not objected to.

13.     Each Document Request shall be deemed continuing.  If, after responding, You obtain or become aware of any additional documents or information responsive to these Document Requests, production of such additional documents or information shall be made forthwith.

14.     "Including" shall not be construed to limit the scope of any Document Request.

15.     Whenever necessary to bring within the scope of a Document Request documents or information that might otherwise be construed to be outside its scope:

        a.      The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

        b.      The use of a word in its singular form shall be deemed to include within its use the plural form, and vice versa;

        c.      The use of the masculine form of a noun or pronoun shall include the feminine form, and vice versa; and

        d.      The use of the conjunctive or disjunctive, respectively, shall be construed as necessary to be inclusive rather than exclusive.

16.     Each paragraph, subparagraph, clause, and word therein should be construed independently and not by reference to any other paragraph, subparagraph, clause or word herein for purposes of limitation.

17.     Unless otherwise stated, each Request calls for production of documents from November 3, 2019 through the present.

## DOCUMENT REQUESTS

1.      All Board Materials for the Holdco Debtors.

2.      All Documents and Communications concerning the HoldCo Debtors' consideration of whether to seek chapter 11 protection.

3.      Documents sufficient to identify the names, titles, and positions of the HoldCo Debtors' current and former members, partners, managers, directors, officers, and executives, by entity.

4.      For each of the HoldCo Debtors, please produce the following Documents as of (a) the Petition Date and (b) the close of the last quarter before the Petition Date: (i) unconsolidated balance sheets; (ii) income statements; (iii) trial balances; (iv) accounts payable ledgers; (v) intercompany receivables; (vi) intercompany payables; (vii) tax returns or related tax statements and/or working papers; (viii) schedules of any known tangible and/or intangible assets; and (ix) schedules of any known tangible and/or intangible liabilities.

5.      Any contracts, leases, engagement letters, and agreements to which any of the HoldCo Debtors are a party, including any engagement letters with Alix Partners, Ducera, Wilkie, and Young Conaway.

6.      All Documents and Communications concerning any litigations, arbitrations, settlements, investigations, proceedings, or demands for payment, whether threatened, pending, or ongoing, in which any of the HoldCo Debtors is a party or identified as a potential party.

7.      Documents sufficient to show (i) all parties invited to participate in the Prepetition Marketing Process and (ii) all parties that executed non-disclosure agreements, as described in paragraphs 15-17 of the DIP Declaration.

8.      Any solicitations, informational materials, and due diligence materials exchanged with third-party financial institutions or the Prepetition ABL Lenders in connection with the Prepetition Marketing Process.

9.      All Documents and Communications concerning any financing proposals made by or to third-party financial institutions or the Prepetition ABL Lenders in connection with the Prepetition Marketing Process.

10.     All Documents and Communications between the Debtors and the Ad Hoc Group of First Lien Lenders concerning the negotiation of the terms of the DIP facility.

11.     All Documents and Communications concerning, analyzing or comparing any of the financing proposals received in the Prepetition Marketing Process, the DIP Facility, or the alternative restructuring proposal from certain Prepetition Second Lien Secured Lenders, as described in paragraph 20 of the DIP Declaration.

12.     All Documents and Communications supporting the Debtors' assertion in paragraph 4 of the DIP Motion that "the DIP Facility represents the best post-petition financing option available to the Debtors."

13.     All Documents and Communications supporting the Debtors' assertion in paragraph 5 of the DIP Motion that "entry into the DIP Facility and continued use of Cash Collateral, on the terms set forth in the Interim Order, are necessary to avoid immediate and irreparable harm and are in the best interests of the Debtors, their estates, and all stakeholders."

14.     All Documents and Communications supporting the Debtors' assertion in paragraph 37 of the DIP Motion that "[t]he terms of the DIP Facility are reasonable under the circumstances and are generally consistent with market terms for debtor-in possession financing."

AMERICAS 126502240

15.     All Documents and Communications supporting the Debtors' assertion in paragraph 61 of the DIP Motion that "the interest, premiums, and fees to be paid under the DIP Facility are consistent with the market and are reasonable and appropriate."

16.     All Documents contained in the database maintained by Ducera regarding "DIP facilities of comparable size, duration, and general scale of cases comparable," as referenced in Mr. Grubb's testimony at the First-Day Hearing.

17.     All Documents and Communications concerning the demonstrative used during Mr. Grubb's testimony during the second day of the First-Day Hearing, including any drafts or prior iterations.

18.     For any witness who will offer testimony regarding whether the terms of the DIP Facility are generally consistent with market terms for debtor-in-possession financing: (i) a complete statement of all opinions the witness will express and the basis and reason for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

19.     All Documents and Communications concerning the preparation and negotiation of the Initial DIP Budget.

20.     All Documents used or relied upon to prepare the Initial DIP Budget.

21.     All Documents and Communication concerning the decision whether to make the HoldCo Debtors unsecured guarantors of the DIP Facility.

22.     All Documents concerning tax filings by the HoldCo Debtors, including tax returns.

23.     All Documents and Communications concerning any proceeds or other benefits of the DIP Facility that are purported to be provided to the HoldCo Debtors.

24.     All account statements for the JP Morgan Chase, N.A. disbursement account of Freedom VCM, Inc. referenced in Exhibit D to the Cash Management Motion, from the opening of the account to the present.

25.     All post-petition Documents and Communications with any vendor to whom the Debtors seek to make payment under the Critical Vendor Motion threatening to terminate service or shipment absent payment of pre-petition amounts outstanding.

26.     All Documents and Communications concerning any report, findings or conclusions in connection with any investigation, including the Independent Investigation, regarding the matters discussed in paragraphs 9 and 10 of the First-Day Declaration, including any report or other written material created by, for or at the direction of the Special Committee.

27.     All Documents and Communications between the Debtors, on the one hand, and Brian Kahn and his lawyers or representatives, on the other hand, concerning the matters discussed in paragraphs 9 and 10 of the First-Day Declaration.

28.     All Documents and Communications with any of the Debtors' insurance carriers regarding any potential claims in connection with the matters discussed in paragraphs 9 and 10 of the First-Day Declaration.

29.     Documents sufficient to identify any D&O coverage available to the Debtors and/or their directors, officers and employees, including the amounts remaining on such policies as of the Petition Date.

30.     All Documents and Communications, including offering memoranda and solicitation or marketing materials, sent or provided to any potential lenders in connection with the Take-Private Transaction.

31.     Documents sufficient to identify any witnesses the Debtors intend to call in connection with any hearing regarding the Second Day Motions.

32.     All Documents the Debtors intend to rely on or introduce into evidence in connection with any hearing regarding the Second Day Motions.

Dated:          November 8, 2024
                New York, New York

                                    */s/ Samuel P. Hershey*_____
                                    **FARNAN LLP**
                                    Brian E. Farnan (Bar No. 4089)
                                    Michael J. Farnan (Bar No. 5165)
                                    919 North Market Street, 12th Floor
                                    Wilmington, DE 19801
                                    Telephone: (302) 777-0300
                                    Facsimile: (302) 777-0301
                                    bfarnan@farnanlaw.com
                                    mfarnan@farnanlaw.com

                                    -and-

                                    **WHITE & CASE LLP**
                                    Thomas E Lauria (admitted *pro hac vice*)
                                    Southeast Financial Center
                                    200 South Biscayne Boulevard, Suite 4900
                                    Telephone: (305) 371-2700
                                    Facsimile: (305) 358-5744
                                    Email: tlauria@whitecase.com

                                    -and-

                                    J. Christopher Shore (admitted *pro hac vice*)
                                    Andrew T. Zatz (admitted *pro hac vice*)
                                    Samuel P. Hershey (admitted *pro hac vice*)
                                    Erin Smith (admitted *pro hac vice*)
                                    Brett Bakemeyer (admitted *pro hac vice*)
                                    1221 Avenue of the Americas
                                    New York, NY 10020
                                    Telephone: (212) 819-8200
                                    Facsimile: (212) 354-8113
                                    Email: cshore@whitecase.com
                                    azatz@whitecase.com
                                    sam.hershey@whitecase.com
                                    erin.smith@whitecase.com
                                    brett.bakemeyer@whitecase.com

                                    *Counsel to the Ad Hoc Group of Freedom
                                    Lenders*

**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC. [1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**AD HOC GROUP OF FREEDOM LENDERS' FIRST SET OF INTERROGATORIES
TO THE HOLDCO DEBTORS IN CONNECTION WITH THE
SECOND-DAY MOTIONS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by

Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, certain of the

(i) Lenders, as defined in that certain *Credit Agreement*, dated as of August 21, 2023 among

Freedom VCM Interco, Inc., Freedom VCM, Inc., and Alter Domus (US) LLC (as amended,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

restated, supplemented or otherwise modified from time to time) (the "**HoldCo Lenders**") and (ii) Second Lien Claimholders, as defined in that certain *Second Lien Credit Agreement*, dated as of March 10, 2021, among Franchise Group Inc., Franchise Group NewCo PSP, LLC, Valor Acquisition, LLC, Franchise Group NewCo Intermediate AF, LLC, and Alter Domus (US) LLC (as amended, restated, supplemented or otherwise modified from time to time) (the "**OpCo 2L Lenders**," together with the HoldCo Lenders, the "**Ad Hoc Group of Freedom Lenders**") serve their First Set of Interrogatories (the "**Interrogatories**" and each, an "**Interrogatory**") to Freedom VCM, Inc. and Freedom VCM Interco Holdings (together, the "**HoldCo Debtors**") relating to the Second-Day Motions.  Responses to these Interrogatories must be served on **Samuel P. Hershey, White & Case LLP, 1221 Avenue of the Americas, New York, New York, 10020**, counsel to the Ad Hoc Group of Freedom Lenders, **on or before November 18, 2024**.

## <u>DEFINITIONS</u>

For the purposes of these Interrogatories, the following Definitions shall apply:

1.      "**Affiliate**" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

2.      "**Bankruptcy Code**" means title 11 of the United States Code, as amended.

3.      "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

4.      "**Board**" means any board of directors, managers, or comparable supervisory body, or any group or committee with the responsibility of, among other things, governing the Debtors or overseeing the activities and operations of the Debtors.

5.      "**Chapter 11 Cases**" means the voluntary chapter 11 cases commenced on the Petition Date by the Debtors in the Bankruptcy Court.

6. "**Concerning**," "**regarding**," "**in connection with**," "**relating to**," and/or "**referring to**" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

7. "**Debtors**" means the Franchise Group, Inc. and its affiliated debtors, which filed voluntary chapter 11 petitions under the Bankruptcy Code commencing the Chapter 11 Cases, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successors entities; and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

8. "**First-Day Declaration**" means the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15].

9. "**HoldCo Debtors**" refers to Freedom VCM, Inc. and Freedom VCM Interco, Inc.

10. "**Including**" means "including, without limitation" or "including, but not limited to."

11. "**Petition Date**" means November 3, 2024.

12. "**Relate**" and its variants encompass the terms "refer," "reflect," "constitute," "evidence," "in connection with," and "concern" and shall be construed to bring within the scope of the Document Request, as applicable, all documents and information that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Document Request, as applicable, including, but not limited to, all documents and information that reflect, record, memorialize, discuss, evaluate,

consider, review, report, or otherwise evidence the existence of the subject matter of the Document

Request, as applicable.

13.     "**You**" and "**Your**" means the HoldCo Debtors.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions and for purposes of these

Interrogatories, the following Instructions shall be followed:

14.     As the term "possession" pertains to e-mails, the term includes, but is not limited

to, e-mails contained in your electronic e-mail directories containing (i) "deleted" e-mails which

have not been permanently deleted, including all subdirectories irrespective of the title of such

subdirectories; (ii) "sent" e-mails, including all subdirectories irrespective of the title of such

subdirectories; and (iii) "received" e-mails, including all subdirectories irrespective of the title of

such subdirectories.

15.     The word "all" shall also include "each of," and vice versa.  The word "any" shall

be construed to mean "any and all" where the effect of such construction is to broaden the scope

of the Interrogatory.

16.     In responding to each of the Interrogatories, You are to review and search all

relevant files of appropriate entities and persons.

17.     If any responsive information or documents is known to have existed and cannot

now be located, or has been destroyed, discarded, or otherwise disposed, set forth a complete

statement of the circumstances surrounding such loss, destruction, discarding, or other disposition,

including:

        a.     A description of the information or documents, including the date, a

summary of its contents and the identity of its author and the Person(s) to whom it was sent

or shown:

4

b.      The last known custodian;

c.      Whether the information or document is missing or lost or was destroyed, discarded, or otherwise disposed;

d.      The date of loss, destruction, discarding, or other disposition;

e.      The reason(s) for destruction, discarding, or other disposition;

f.      The Person(s) authorizing or carrying out such destruction, discarding, or other deposition; and

g.      The efforts made to locate lost or misplaced information or documents.

18.     If there is no information responsive to a specific request, so state in writing.

19.     If You know of any information responsive to a particular request but cannot produce them, so state, produce the information within Your possession, custody or control on the subject matter sought, and identify each Person whom You believe has information responsive to the Interrogatory.

20.     In the event you seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, You shall produce as much of the document concerned as to which no claim of privilege or other limitation of discovery is made.  With respect to information, documents or portions of documents for which a claim of privilege or other limitation of discovery is made, You are instructed to provide a numeral list of the information, document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation is governed by state law, indicate the state of the privilege rule or other limitation invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected

5

information: (i) the type of information or document; (ii) the name and capacity of each author and recipient of the information or document; (iii) the general subject matter of the information or document in a manner sufficient to support the privilege or other protection claimed; (iv) the date of the information or document; (v) such other information as is sufficient to identify the information or document for a subpoena *duces tecum*, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production. Notwithstanding the assertion of any privilege or other protection, any requested information or document that contains responsive, non-privileged or protected information should be disclosed or produced, but that portion of a document for which the privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

21.    Each Definition, Instruction, and Interrogatory herein shall be construed independently and not with reference to any other Definition, Instruction, or Interrogatory, for the purposes of limitation.

22.    If any meaning of any term in any Interrogatory herein is unclear to You, without waiver of the right to seek a full and complete response to the Interrogatory, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Interrogatory according to the assumed meaning.

23.    In accordance with Rule 33 of the Federal Rules of Civil Procedure, as incorporated by Rules 7033 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, objections

to any part of these Interrogatories shall be stated in full and with specificity.  In the event You interpose an objection to an Interrogatory, You must respond to each part of the Interrogatory which objection is not made or provide testimony or information not objected to, as the case may be.

24.    If You cannot respond to any part of the Interrogatories in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have concerning the portion to which You do not respond.

25.    The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Interrogatories based on the knowledge or information that You possess at the time You respond to these Interrogatories.  If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Interrogatory, so state in your response to that Interrogatory.

26.    Each Interrogatory shall be deemed continuing so as to require You to promptly supplement Your response if You obtain, generate, or discover additional documents or information, as required by Rule 26 of the Federal Rules of Civil Procedure, as incorporated by Rules 7026 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable.

27.    "Including" shall not be construed to limit the scope of any Interrogatory.

28.    Whenever necessary to bring within the scope of an Interrogatory information that might otherwise be construed to be outside its scope:

      a.    The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

7

b.      The use of a word in its singular form shall be deemed to include within its use the plural form, and vice versa;

c.      The use of the masculine form of a noun or pronoun shall include the feminine form, and vice versa; and

d.      The use of the conjunctive or disjunctive, respectively, shall be construed as necessary to be inclusive rather than exclusive.

29.     Each paragraph, subparagraph, clause, and word therein should be construed independently and not by reference to any other paragraph, subparagraph, clause or word herein for purposes of limitation.

30.     Unless another time period is specified, the relevant time period for these Interrogatories is the time period from November 3, 2019 to the date that you respond to these Interrogatories.

## <u>INTERROGATORIES</u>

1.      Identify the names and positions of each Board Member of each of the HoldCo Debtors.

2.      For each HoldCo Debtor, identify the most recent prepetition:

a.      Unconsolidated balance sheet;

b.      Income statement;

c.      Trial balance;

d.      Accounts payable ledger;

e.      Intercompany receivables and payables;

f.      Schedules or projections of any known tangible and/or intangible assets; and

g.      Schedules or projections of any known tangible and/or intangible liabilities.

8

3.      Identify any projected or anticipated professional fees allocable to the HoldCo Debtors during the pendency of the Chapter 11 Cases.

4.      Identify any projected or anticipated expenses allocable to the HoldCo Debtors during the pendency of the Chapter 11 Cases, excluding projected professional fees.

5.      Identify any projected or anticipated administrative expenses allocable to the HoldCo Debtors during the pendency of the Chapter 11 Cases.

6.      Identify all liabilities allocable to the HoldCo Debtors.

7.      State whether any liabilities of the HoldCo Debtors, whether incurred prior to the Petition Date or expected to incur during the pendency of the Chapter 11 Cases, were incurred directly by the HoldCo Debtors or allocated to the HoldCo Debtors by their Debtor Affiliates.

8.      Identify any contracts, leases, engagement letters, or agreements to which any of the HoldCo Debtors are a party.

9.      Identify any contracts, leases, engagement letters, or agreements to which any of the Holdco Entities are a third-party beneficiary.

10.      Identify all individuals that are employed at any of the HoldCo Debtors.

11.      Identify all independent contractors that have agreements with any of the HoldCo Debtors.

12.      Identify and describe all potential claims and causes of action belonging to any of the HoldCo Debtors, including any potential claims and causes of action against any of the other Debtors.

Dated:  November 8, 2024
     New York, New York

        */s/ Samuel P. Hershey*

        **FARNAN LLP**
        Brian E. Farnan (Bar No. 4089)
        Michael J. Farnan (Bar No. 5165)
        919 North Market Street, 12th Floor
        Wilmington, DE 19801
        Telephone: (302) 777-0300
        Facsimile: (302) 777-0301
        bfarnan@farnanlaw.com
        mfarnan@farnanlaw.com

        -and-

        **WHITE & CASE LLP**
        Thomas E Lauria (admitted *pro hac vice*)
        Southeast Financial Center
        200 South Biscayne Boulevard, Suite 4900
        Telephone: (305) 371-2700
        Facsimile: (305) 358-5744
        Email: tlauria@whitecase.com

        -and-

        J. Christopher Shore (admitted *pro hac vice*)
        Andrew T. Zatz (admitted *pro hac vice*)
        Samuel P. Hershey (admitted *pro hac vice*)
        Erin Smith (admitted *pro hac vice*)
        Brett Bakemeyer (admitted *pro hac vice*)
        1221 Avenue of the Americas
        New York, NY 10020
        Telephone: (212) 819-8200
        Facsimile: (212) 354-8113
        Email: cshore@whitecase.com
        azatz@whitecase.com
        sam.hershey@whitecase.com
        erin.smith@whitecase.com
        brett.bakemeyer@whitecase.com

        *Counsel to the Ad Hoc Group of Freedom Lenders*

**EXHIBIT C**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC.[1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**HOLDCO LENDERS' FIRST REQUESTS FOR THE PRODUCTION OF DOCUMENTS
TO THE HOLDCO DEBTORS IN CONNECTION WITH THE PLAN AND
DISCLOSURE STATEMENT**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by

Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, the Lenders, as defined

in that certain *Credit Agreement*, dated as of August 21, 2023, among Freedom VCM Interco, Inc.,

Freedom VCM, Inc., and Alter Domus (US) LLC (as amended, restated, supplemented or

otherwise modified from time to time) (the "**HoldCo Lenders**") serve, in their capacity as HoldCo

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Lenders, their First Requests for the Production of Documents (the "**Requests**" and each, a "**Request**") to Freedom VCM, Inc. and Freedom VCM Interco, Inc. (together, the "**HoldCo Debtors**") in connection with the Disclosure Statement and Plan.  Responses to these Requests must be served on **Samuel P. Hershey, White & Case LLP, 1221 Avenue of the Americas, New York, New York, 10020**, counsel to the Ad Hoc Group of Freedom Lenders, immediately on a rolling basis, with production to be completed on or before **November 26, 2024**.

**DEFINITIONS**

For the purposes of these Document Requests, the following Definitions shall apply:[2]

1.     "**Ad Hoc Group of First Lien Lenders**" shall have the meaning ascribed to it in the First Day Declaration.

2.     "**Affiliate**" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

3.     "**Alix Partners**" means AlixPartners, LLP.

4.     "**Allowed**" shall have the meaning ascribed to it in Section 1.12 of the Plan.

5.     "**American Freight Debtors**" shall have the meaning ascribed to it in Section 1.13 of the Plan.

6.     "**Avoidance Actions**" shall have the meaning ascribed to it in Section 1.19 of the Plan.

7.     "**B. Riley**" means B. Riley Financial, Inc. and its affiliates, including but not limited to the entities referred to in the First Day Declaration such as BRF, BRPI, and BRRII.

8.     "**Bankruptcy Code**" means title 11 of the United States Code, as amended.

---

[2] Capitalized terms not defined herein shall take on the definition provided in the Plan.

9. "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

10. "**Board**" means any board of directors, managers, or comparable supervisory body, or any group or committee with the responsibility of, among other things, governing the Debtors or overseeing the activities and operations of the Debtors.

11. "**Board Materials**" means all documents and materials prepared for, presented to, reviewed by, or distributed to any member of the Board in connection with any Board or committee meeting or action, including but not limited to, meeting minutes, agendas, resolutions, presentations, Board books, reports, and any other documents shared with Board members or committee members for the purpose of decision-making, discussion, or record-keeping related to Board or committee activities.

12. "**Cash Collateral**" means all cash of the Debtors as defined in the DIP Motion.

13. "**Cash Management Motion**" means the *Debtors' Motion for Interim and final orders (I) Authorizing the Debtors to (A) Continue to Maintain Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions; (II) Waiving Certain Operating Guidelines; (III) Suspending Time to Comply with Section 345(b) of the Bankruptcy Code; and (IV) Granting Related Relief* [D.I. 9].

14. "**Causes of Action**" has the meaning set forth in Section 1.30 of the Plan.

15. "**Commercial Tort Claims**" has the meaning set forth in the Uniform Commercial Code, Section 9-102(a)(13(A) and shall be given its broadest possible definition.

16. "**Chapter 11 Cases**" means the voluntary chapter 11 cases commenced on the Petition Date by the Debtors in the Bankruptcy Court.

17.     "**Chapter 11 Investigation**" refers to the additional investigation lead by Petrillo and commercial in 2024 into, among other things, potential claims and Causes of Actions the Debtors' estates may have against Mr. Kahn, any other of their other current or former directors and officers, or any other third-parties arising from, or related to, among other things: (i) Franchise Group's sale of Badcock to Conn's in December 2023; (ii) the Take-Private Transaction; (iii) the Receivables Transactions; and (iv) Debtors' historical transactions and relationship with Mr. Kahn, as well as (v) the appropriateness of any releases by the Debtors' estates of their current directors and officers through these Chapter 11 Cases and under the Plan, as described on pages 8 and 9 of the Disclosure Statement.

18.     "**Communication**" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including without limitation, correspondence, documents, conversations, dialogues, discussions, e-mail, interviews, consultations, agreements, and other understandings.

19.     "**Complaint**" has the meaning set forth in the First Day Declaration.

20.     "**Concerning**," "**regarding**," "**in connection with**," "**relating to**," and/or "**referring to**" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

21.     "**Consenting First Lien Lenders**" has the meaning set forth in the First Day Declaration.

22.     "**Critical Vendors**" means any holder of a prepetition Critical Vendors Claim, Foreign Vendors Claim, Shippers & Logistics Providers Claim, and/or 503(b)(9) Claim, each as defined in the Critical Vendor Motion.

23.     "**Critical Vendor Motion**" means *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers & Logistics Providers, and 503(B)(9) Claimants; and (II) Granting Related Relief* [D.I. 10].

24.     "**Debtors**" means Franchise Group, Inc. and its affiliated debtors, that filed voluntary chapter 11 petitions under the Bankruptcy Code commencing the Chapter 11 Cases, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successors entities; and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

25.     "**Disclosure Statement**" means the *Disclosure Statement for the Joint Chapter 11 Plan of Franchise Group, Inc. and its Affiliated Debtors* [D.I. 151].

26.     "**Document**" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic mater, in draft or final form, including, but not limited to: any letter, correspondence, or Communication of any sort; photograph; sound recording; video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, or cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, text message, instant message, Bloomberg message, WhatsApp message, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act, or activity; projection, work paper, or draft; computer or computer network output or input, portable storage devices, e-mail, magnetic and/or optical medias, archived or back up data on any

5

of these medias on the cloud or otherwise, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice, or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, or press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, register, canceled check, deposit slip, charge slip, tax return (income or other), requisition, file, study, graph, or tabulation, and any and all other writings and recordings of whatever nature, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonable usable form; including, without limitation, all things meeting the definition of "documents" or "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definition of "writing" or "recording" set forth in Rule 1001 of the Federal Rules of Evidence. Any document with any marks such as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is a separate document within the meaning of this term.

27.     "**Ducera**" means Ducera Partners LLC.

28.     "**Existing Intercompany Equity Interests**" has the meaning set forth in Section 1.101 of the Plan.

29.     "**First Day Declaration**" means the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15].

30.     "**First Day Filings**" refers to the filings submitted on November 3 and 4, 2024 and argued during the First Day Hearing.

31.     "**First Day Hearing**" refers to the hearing held in the above-captioned matter on November 5 and 6, 2024.

32.     "**Franchise Group**" has the meaning set forth in the Disclosure Statement.

33.     "**HoldCo Debtors**" refers to Freedom VCM, Inc. and Freedom VCM Interco, Inc.

34.     "**Including**" means "including, without limitation" or "including, but not limited to."

35.     "**Independent Investigation**" has the meaning set forth in the First Day Declaration.

36.     "**Indictment**" has the meaning set forth in the First Day Declaration.

37.     "**Initial DIP Budget**" means the 13-week cash flow forecast statements of the Debtors that the use of Cash Collateral and proceeds of the DIP Facility are subject to as set forth in Exhibit 3 to the DIP Motion.

38.     "**Insider**" has the meaning set forth in section 101 of the Bankruptcy Code.

39.     "**Intercompany Claims**" has the meaning set forth in Section 1.101 of the Plan.

40.     "**Investigation Related Matters**" has the meaning set forth in Section 1.104 of the Plan.

41.     "**OpCo Debtors**" refers to Franchise Group, Inc. and its direct and indirect subsidiaries.

42.     "**Petition Date**" means November 3, 2024.

43.     "**Petrillo**" means Petrillo Klein Boxer LLP.

44.     "**Plan**" means the *Joint Chapter 11 Plan of Franchise Group, Inc. and its Affiliated Debtors* [D.I. 150].

45.     "**Prepetition Marketing Process**" refers to the prepetition marketing process described in paragraphs 13-19 of the DIP Declaration.

46.     "**Prophecy**" refers to Prophecy Asset Management LP.

47.     "**Relate**" and its variants encompass the terms "refer," "reflect," "constitute," "evidence," "in connection with," and "concern" and shall be construed to bring within the scope of the Document Request, as applicable, all documents and information that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Document Request, as applicable, including, but not limited to, all documents and information that reflect, record, memorialize, discuss, evaluate, consider, review, report, or otherwise evidence the existence of the subject matter of the Document Request, as applicable.

48.     "**RSA**" refers to that certain *Restructuring Support Agreement*, dated as of November 1, 2024, attached as Exhibit B to the First Day Declaration.

49.     "**Special Committee**" has the meaning set forth in the First Day Declaration.

50.     "**Take-Private Transaction**" has the meaning set forth in the First Day Declaration.

51.     "**Take-Private Transaction Committee**" refers to the "independent committee" described on pages 5 and 6 of the Disclosure Statement.

52.     "**TopCo**" has the meaning set forth in the Disclosure Statement.

53.     "**Willkie**" means Willkie Farr & Gallagher LLP.

54.     "**Young Conaway**" means Young Conaway Stargatt & Taylor, LLP.

55.     "**You**" and "**Your**" means the HoldCo Debtors.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions and for purposes of these Document Requests, the following Instructions shall be followed:

1.      In accordance with Rule 34(a) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, the Document Requests shall be deemed to include any document now or at any time in Your possession, custody, or control, including, but not limited to, documents in the possession, custody, or control of any Your current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entitles and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives, or other person acting or purporting to act on its or their behalf.  A document is deemed to be in Your possession, custody, or control it if is in Your physical custody, or if it is in the physical custody of any other person or entity and You:  (i) own such document in whole or in part; (ii) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (iii) have an understanding, express or implied, that You may use, inspect, examine, or copy such document when You sought to do so, or (iv) as a practical matter, have been able to use, inspect, examine or copy such document on any terms.  If any requested document was, but no longer is, in Your control, state the disposition of each such document.

2.      As the term " possession" pertains to e-mails, the term includes, but is not limited to, e-mails contained in Your electronic e-mail directories containing (i) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (ii) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (iii) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

3.      The word "all" shall also include "each of," and vice versa.  The word "any" shall be construed to mean "any and all" where the effect of such construction is to broaden the scope of the Document Request.

4.      In responding to each Document Request, You are to review and search all relevant files of appropriate entities and persons.

5.      All Document Requests shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the documents.

6.      You are to produce the original and all non-identical copies, including all drafts of each document requested.  If You are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.  Any document that cannot be produced in full shall be produced to the fullest extent possible.

7.      In accordance with Rule 34(b) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond with the categories in each Document Request.  The name of the file from which it was produced, the identity of the person from whose file it was produced, and the identity of the present custodian of that file each shall be set forth.  All documents requested herein shall be produced electronically as tagged image file format ("**TIFF**") or portable document format ("**PDF**") files, except that all spreadsheets and accounting and financial data, including those created with Excel software, shall be produced in a fully functional native form (i.e., in a linked format).

8.      If any responsive document is known to have existed and cannot now be located, or has been destroyed, discarded, or otherwise disposed, set forth a complete statement of the circumstances surrounding such loss, destruction, discarding, or other disposition, including:

a.      A description of the document, including the date, a summary of its contents and the identity of its author and the persons(s) to whom it was sent or shown:

b.      The last known custodian;

c.      Whether the document is missing or lost or was destroyed, discarded, or otherwise disposed;

d.      The date of loss, destruction, discarding, or other disposition;

e.      The reason(s) for destruction, discarding, or other disposition;

f.      The person(s) authorizing or carrying out such destruction, discarding, or other deposition; and

g.      The efforts made to locate lost or misplaced documents.

9.      In the event You seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, You shall produce as much of the document concerned as to which no claim of privilege or other limitation of discovery is made.  With respect to documents or portions of documents for which a claim of privilege or other limitation of discovery is made, You are instructed to provide a numeral list of the document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation is governed by state law, indicate the state of the privilege rule or other limitation invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected information: (i) the type of

document; (ii) the name and capacity of each author and recipient of the document; (iii) the general subject matter of the document in a manner sufficient to support the privilege or other protection claimed; (iv) the date of the document; (v) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production. Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged or protected information should be produced, but that portion of the document for which the privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

10.     Each Definition, Instruction, and Document Request herein shall be construed independently and not with reference to any other Definition, Instruction, or Document Request, for the purposes of limitation.

11.     If any meaning of any term in any Document Request herein is unclear to You, without waiver of the right to seek a full and complete response to the Document Request, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Document Request according to the assumed meaning.

12.     In accordance with Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, objections to any part of these Document Requests shall be stated in full and with specificity.  In the event

You interpose an objection to a Document Request, You must produce the documents to which objection is not made or provide testimony or information not objected to.

13.     Each Document Request shall be deemed continuing.  If, after responding, You obtain or become aware of any additional documents or information responsive to these Document Requests, production of such additional documents or information shall be made forthwith.

14.     "Including" shall not be construed to limit the scope of any Document Request.

15.     Whenever necessary to bring within the scope of a Document Request documents or information that might otherwise be construed to be outside its scope:

   a. The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

   b. The use of a word in its singular form shall be deemed to include within its use the plural form, and vice versa;

   c. The use of the masculine form of a noun or pronoun shall include the feminine form, and vice versa; and

   d. The use of the conjunctive or disjunctive, respectively, shall be construed as necessary to be inclusive rather than exclusive.

16.     Each paragraph, subparagraph, clause, and word therein should be construed independently and not by reference to any other paragraph, subparagraph, clause or word herein for purposes of limitation.

17.     Unless otherwise stated, each Request calls for production of documents from November 3, 2019 through the present.

### DOCUMENT REQUESTS

*Valuation*

13

1.      All Documents and Communications concerning the valuation of the HoldCo Debtors, the OpCo Debtors, or any of the Debtors' former business segments, including any (a) total enterprise value or fair market valuation; (b) valuation of the assets; and (c) valuation of any property including foreclosure or liquidation value of any property, including, but not limited to, any valuations in connection with the Take-Back Transaction, any other potential or consummated transactions, and the store-closings, liquidation sales and wind-down of the American Freight Debtors.

2.      All financial statements, projections, balance sheets, business plans, and solvency opinions for any of the HoldCo Debtors, OpCo Debtors, or any of the Debtors' former business segments.

3.      All Documents and Communications concerning the exhibits to the Disclosure Statement, including the Liquidation Analysis and Financial Projections, and any underlying data, assumptions, models and other related materials, such as any entity-specific liquidation analyses and entity-specific financial projections.

4.      All Documents and Communications concerning the Plan Supplement materials, including underlying data, assumptions, models and other related materials for each of the Plan Supplement materials/

5.      Documents sufficient to show any tax attributes of the Debtors (and their consolidated group), including any net operating losses, and projections of such attributes that are expected to be available following each transaction proposed in the Disclosure Statement, taking into account the utilization of such attributes to reduce the tax liability of the Debtors (and their consolidated group) with respect to such transactions and any reduction in such attributes by reason of Section 108(b) of the Internal Revenue Code of 1986, as amended.

6.    Documents sufficient to show the amount of gain expected to be recognized by the Debtors (and their consolidated group) with respect to each transaction proposed in the Disclosure Statement and the expected quantum of U.S. federal, state, and local income tax with respect thereto, taking into account any tax attributes of the Debtors (and their consolidated group) expected to be available to reduce the tax liability of the Debtors (and their consolidated group) with respect to such transactions.

7.    Any other existing tax analyses or reports concerning the transactions proposed in the Disclosure Statement.

8.    All Documents and Communications concerning the Debtors' projected cashflows and liquidity through emergence from the Chapter 11 Cases.

***Take-Private Transaction***

9.    All Documents and Communications between the Debtors and B. Riley concerning the transaction proposals described on page 5 of the Disclosure Statement.

10.    All Documents and Communications between the Debtors and B. Riley concerning B. Riley's determination that "it was interested in providing financing to facilitate a transaction but would need to do so in a manner that would not result in BRF controlling or consolidating Franchise Group," as described on page 5 of the Disclosure Statement.

11.    Regarding the Take-Private Transaction, all Documents and Communications concerning:

   a.    the formation, composition, advisors to, and mandate of the Take-Private Transaction Committee;

   b.    the Take-Private Transaction Committee's (a) "review of Mr. Kahn's take-private proposal and other strategic alternatives that were available to Franchise Group, including the potential sale of the Vitamin Shoppe" and

15

(b) determination that "Mr. Kahn's proposal was in the best interests of Franchise Group and its public shareholders" as described on pages 5 and 6 of the Disclosure Statement;

c.  all reports, findings, summaries, or conclusions created by, for, or at the direction of the Take-Private Transaction Committee, including any Board Materials;

d.  all valuations, analyses, reports, or estimates concerning the Debtors' solvency before, after or because of the Take-Private Transaction;

e.  all tax analyses or reports concerning the Take-Private Transaction; and

f.  any fairness opinions conducted in connection with the Take-Private Transaction.

12.    All Documents and Communications concerning the creation of TopCo and the HoldCo Debtors in connection with the Take-Private Transaction as described on page 6 of the Disclosure Statement.

***Other Transactions and Strategic Alternatives Considered***

13.    All Documents and Communications between the Debtors and B. Riley concerning the negotiation and terms of the Receivables Transactions described in pages 6 and 7 of the Disclosure Statement, including:

a.     the Tranche 1 Receivables;

b.     the Pathlight Credit Facility and its repayment in June 2024;

c.     the Receivables Acquisition;

d.     the Promissory Note and its cancellation in October 2024;

e.     the Tranche 2 Receivables and Freedom II's obligations to deliver to Conn's;

  f.  the Funding Agreement; and

  g.  the Deferred Accrual and its payment in October 2024.

14. All Documents and Communications concerning the Badcock Transaction, including:

  a. the Debtors' consideration of and efforts to find alternative financing models for Badcock or a potential sale of or business combination with Badcock prior to the Take-Private Transaction;

  b. the negotiation and terms of the Badcock combination with Conn's;

  c. the negotiation and terms of the sale and leaseback transactions described on page 13 of the Disclosure Statement; and

  d. Communications between the Debtors, on the one hand, and Conn's or B. Riley, on the other hand, concerning Conn's financial condition, solvency and chapter 11 cases.

15. All Documents and Communications concerning the negotiation and terms of the Sylvan Learning sale.

16. Any Board Materials, solicitations, informational and marketing materials, fairness opinions, and proposals concerning strategic initiatives pursued and evaluated by the Debtors since January 2023 as described on pages 13 and 14 of the Disclosure Statement, including, without limitation, the potential securitization financing of the Debtors' PSP business, potential monetization of The Vitamin Shoppe and Buddy's businesses, and the marketing of American Freight on a going concern basis.

17. All Documents and Communications concerning (a) the "strategy" of the Franchise Group which "included the potential for rapid deleveraging of the Debtors through monetization

transactions involving the various business segments of the Franchise Group," as described on page 6 of the Disclosure Statement, and (b) the Debtors' statement on page 6 of the Disclosure Statement that this strategy "did not materialize due to . . . allegations made against Mr. Kahn regarding his alleged business association with Prophecy Asset Management LP."

***Investigations***

18.     All Documents and Communications concerning Prophecy, the Indictment, or the Complaint, including:

> a.   Documents the Debtors have produced to any third party, including the Securities and Exchange Commission, Department of Justice or any plaintiff;
>
> b.   Documents provided to Petrillo in connection with the Independent Investigation; and
>
> c.   Documents and Communications between Brian Kahn and any of the Debtors' directors and officers concerning Prophecy, the Indictment, or the Complaint.

19.     All Documents and Communications concerning the Independent Investigation, including:

> a.   Documents concerning the retention of advisors, including Petrillo, to conduct the Independent Investigation;
>
> b.    Documents concerning the scope, mandate, and timeline of the Independent Investigation;
>
> c.    Engagement letters with Petrillo to conduct the Independent Investigation;
>
> d.   Any Board Materials, reports, findings, summaries, presentations, or conclusions in connection with the Independent Investigation; and

    e.   Documents that support Petrillo's "findings" in connection with the independent Investigation and described on page 8 of the Disclosure Statement.

20.    All Documents and Communications concerning the Chapter 11 Investigation including:

    a.   Documents concerning the retention of advisors, including Petrillo, to conduct the Chapter 11 Investigation;

    b.   Documents concerning the scope, mandate, and timeline of the Chapter 11 Investigation;

    c.   Documents concerning the HoldCo Debtors oversight of the Chapter 11 Investigation;

    d.   Engagement letters with Petrillo to conduct the Chapter 11 Investigation;

    e.   Documents produced to Petrillo in connection with the Chapter 11 Investigation; and

    f.   Any Board Materials, reports, findings, summaries, presentations, or conclusions in connection with the Chapter 11 Investigation, including any Board Materials about the Chapter 11 Investigation.

21.    All Documents and Communications concerning potential or designated Investigation Related Matters.

22.    All Documents and Communications concerning the prepetition bonus program described in footnote 2 of the First Day Declaration.

23.     Documents sufficient to show any transfers (excluding wages and health benefits) made by any of the Debtors to any of their insiders from two years prior to the Petition Date, including any incentive, retention, or bonus payments.

24.     Documents sufficient to show all intercompany activity for the Debtors, including outstanding balances among the Debtors.

25.     All intercompany agreements between the HoldCo Debtors and any OpCo Debtors.

***RSA and Plan***

26.     All Documents and Communications concerning the formation, composition, advisors, and mandate of the Special Committee, including any work or analysis the Special Committee did with respect to the HoldCo Debtors in particular.

27.     All Documents and Communications concerning any of the (i) Causes of Action, (ii) Intercompany Claims, (iii) Chapter 5 Claims; or (iv) Avoidance Actions belonging to the HoldCo Debtors or the OpCo Debtors and their estates that are or might be retained, released, waived, abandoned, or extinguished under the RSAs and/or the Chapter 11 Plans.

28.     All Documents and Communications concerning Commercial Tort Claims held by any of the HoldCo Debtors.

29.     Documents sufficient to identify:

   a.   All Commercial Tort Claims that are encumbered under any security agreement held by any of the HoldCo Debtors;

   b.   All Commercial Tort Claims that are not encumbered under any security agreement held by any of the Debtors; and

   c.   All of the Debtors involved in each of the foregoing.

30.     Documents concerning any valuation, litigation risk, or estimated damages concerning any Commercial Tort Claims held by the HoldCo Debtors.

31.    All Documents and Communications, including Communications with the Consenting First Lien Lenders, concerning:

    a.    the negotiation and terms of the RSA, the Disclosure Statement, and the Plan;

    b.    waiving, moving, or extending any milestones under the RSA or Plan;

    c.    the Releases, Injunctions, and Exculpation provisions pursuant to the Plan, including the exceptions to those Plan provisions;

    d.    the classification and treatment of Claims and Interests in Article IV and V of the Plan;

    e.    the identification of any holders of Class 8 Claims and which Debtors the Class 8 Claims may be held against;

    f.    the treatment of the Intercompany Claims and Existing Intercompany Equity Interests under the Plan, including the treatment of any Intercompany Claims any of the HoldCo Debtors may have against the OpCo Debtors;

    g.    the terms of Section 6.6 of the Plan; and

    h.    the Chapter 11 Investigation.

32.    All Documents and Communications supporting Your contention on page 20 of the Disclosure Statement that "the Plan is in the best interests of the Debtors, their Estates, and all of its stakeholders, including the voting Classes," particularly Classes 7 and 8.

Dated:          November 16, 2024
                New York, New York

                                        */s/ Samuel P. Hershey*
                                        **FARNAN LLP**
                                        Brian E. Farnan (Bar No. 4089)
                                        Michael J. Farnan (Bar No. 5165)
                                        919 North Market Street, 12th Floor
                                        Wilmington, DE 19801
                                        Telephone: (302) 777-0300
                                        Facsimile: (302) 777-0301
                                        bfarnan@farnanlaw.com
                                        mfarnan@farnanlaw.com

                                        -and-

                                        **WHITE & CASE LLP**
                                        Thomas E Lauria (admitted *pro hac vice*)
                                        Southeast Financial Center
                                        200 South Biscayne Boulevard, Suite 4900
                                        Telephone: (305) 371-2700
                                        Facsimile: (305) 358-5744
                                        Email: tlauria@whitecase.com

                                        -and-

                                        J. Christopher Shore (admitted *pro hac vice*)
                                        Andrew T. Zatz (admitted *pro hac vice*)
                                        Samuel P. Hershey (admitted *pro hac vice*)
                                        Erin Smith (admitted *pro hac vice*)
                                        Brett Bakemeyer (admitted *pro hac vice*)
                                        1221 Avenue of the Americas
                                        New York, NY 10020
                                        Telephone: (212) 819-8200
                                        Facsimile: (212) 354-8113
                                        Email: cshore@whitecase.com
                                        azatz@whitecase.com
                                        sam.hershey@whitecase.com
                                        erin.smith@whitecase.com
                                        brett.bakemeyer@whitecase.com

                                        *Counsel to the Ad Hoc Group of Freedom
                                        Lenders*

**EXHIBIT D**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC. [1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**AD HOC GROUP OF FREEDOM LENDERS' FIRST SET OF INTERROGATORIES TO THE OPCO DEBTORS IN CONNECTION WITH THE PLAN AND DISCLOSURE STATEMENT**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, the Ad Hoc Group of Freedom Lenders (the "**Freedom Lenders Group**") consisting of certain of the (i) Lenders, as defined in that certain *Credit Agreement*, dated as of August 21, 2023 (as amended, restated,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

supplemented or otherwise modified) among Freedom VCM Interco, Inc., Freedom VCM, Inc., and Alter Domus (US) LLC (the "**HoldCo Lenders**") and (ii) Second Lien Lenders, as defined in that certain *Second Lien Credit Agreement*, dated as of March 10, 2021 (as amended restated, supplemented or otherwise modified), among Franchise Group Inc., Franchise Group NewCo PSP, LLC, Valor Acquisition, LLC, Franchise Group NewCo Intermediate AF, LLC, and Alter Domus (US) LLC (the "**OpCo 2L Lenders**"), serve their First Set of Interrogatories on Franchise Group, Inc. and its direct and indirect subsidiaries (together, the "**OpCo Debtors**") in connection with the Disclosure Statement and Plan.  Responses to these Interrogatories must be served on **Samuel P. Hershey, White & Case LLP, 1221 Avenue of the Americas, New York, New York, 10020**, counsel to the Freedom Lenders Group, by **November 26, 2024**.

## DEFINITIONS

For the purposes of these Interrogatories, the following Definitions shall apply:[2]

1.    "**Ad Hoc Group of First Lien Lenders**" shall have the meaning ascribed to it in the First Day Declaration.

2.    "**Affiliate**" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

3.    "**Alix Partners**" means AlixPartners, LLP.

4.    "**Allowed**" shall have the meaning ascribed to it in Section 1.12 of the Plan.

5.    "**American Freight Debtors**" shall have the meaning ascribed to it in Section 1.13 of the Plan.

6.    "**Avoidance Actions**" shall have the meaning ascribed to it in Section 1.19 of the Plan.

---

[2] Capitalized terms not defined herein shall take on the definition provided in the Plan.

7.        "**B. Riley**" means B. Riley Financial, Inc. and its affiliates, including but not limited to the entities referred to in the First Day Declaration such as BRF, BRPI, and BRRII.

8.        "**Bankruptcy Code**" means title 11 of the United States Code, as amended.

9.        "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

10.        "**Board**" means any board of directors, managers, or comparable supervisory body, or any group or committee with the responsibility of, among other things, governing the Debtors or overseeing the activities and operations of the Debtors.

11.        "**Board Materials**" means all documents and materials prepared for, presented to, reviewed by, or distributed to any member of the Board in connection with any Board or committee meeting or action, including but not limited to, meeting minutes, agendas, resolutions, presentations, Board books, reports, and any other documents shared with Board members or committee members for the purpose of decision-making, discussion, or record-keeping related to Board or committee activities.

12.        "**Cash Collateral**" means all cash of the Debtors as defined in the DIP Motion.

13.        "**Cash Management Motion**" means the Debtors' Motion for Interim and final orders (I) Authorizing the Debtors to (A) Continue to Maintain Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions; (II) Waiving Certain Operating Guidelines; (III) Suspending Time to Comply with Section 345(b) of the Bankruptcy Code; and (IV) Granting Related Relief [D.I. 9].

14.        "**Causes of Action**" has the meaning set forth in Section 1.30 of the Plan.

15.        "**Chapter 11 Cases**" means the voluntary chapter 11 cases commenced on the Petition Date by the Debtors in the Bankruptcy Court.

16.     "**Chapter 11 Investigation**" refers to the additional investigation lead by Petrillo and commenced in 2024 into, among other things, potential claims and Causes of Actions the Debtors' estates may have against Mr. Kahn, any other of their other current or former directors and officers, or any other third-parties arising from, or related to, among other things: (i) Franchise Group's sale of Badcock to Conn's in December 2023; (ii) the Take-Private Transaction; (iii) the Receivables Transactions; and (iv) Debtors' historical transactions and relationship with Mr. Kahn, as well as (v) the appropriateness of any releases by the Debtors' estates of their current directors and officers through these Chapter 11 Cases and under the Plan, as described on pages 8 and 9 of the Disclosure Statement.

17.     "**Concerning**," "**regarding**," "**in connection with**," "**relating to**," and/or "**referring to**" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

18.     "**Consenting First Lien Lenders**" has the meaning set forth in the First Day Declaration.

19.     "**Critical Vendors**" means any holder of a prepetition Critical Vendors Claim, Foreign Vendors Claim, Shippers & Logistics Providers Claim, and/or 503(b)(9) Claim, each as defined in the Critical Vendor Motion.

20.     "**Critical Vendor Motion**" means *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers & Logistics Providers, and 503(B)(9) Claimants; and (II) Granting*

4

*Related Relief* [D.I. 10].

21.     "**Debtors**" means Franchise Group, Inc. and its affiliated debtors, that filed voluntary chapter 11 petitions under the Bankruptcy Code commencing the Chapter 11 Cases, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successors entities; and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

22.     "**Disclosure Statement**" means the *Disclosure Statement for the Joint Chapter 11 Plan of Franchise Group, Inc. and its Affiliated Debtors* [D.I. 151].

23.     "**Ducera**" means Ducera Partners LLC.

24.     "**Existing Intercompany Equity Interests**" has the meaning set forth in Section 1.101 of the Plan.

25.     "**First Day Declaration**" means the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15].

26.     "**First Day Hearing**" refers to the hearing held in the above-captioned matter on November 5 and 6, 2024.

27.     "**Franchise Group**" has the meaning set forth in the Disclosure Statement.

28.     "**HoldCo Debtors**" refers to Freedom VCM, Inc. and Freedom VCM Interco, Inc.

29.     "**Including**" means "including, without limitation" or "including, but not limited to."

30.     "**Independent Investigation**" has the meaning set forth in the First Day Declaration.

31.     "**Indictment**" has the meaning set forth in the First Day Declaration.

32.     "**Initial DIP Budget**" means the 13-week cash flow forecast statements of the

Debtors that the use of Cash Collateral and proceeds of the DIP Facility are subject to as set forth in Exhibit 3 to the DIP Motion.

33.     "**Insider**" has the meaning set forth in section 101 of the Bankruptcy Code.

34.     "**Intercompany Claims**" has the meaning set forth in Section 1.101 of the Plan.

35.     "**Investigation Related Matters**" has the meaning set forth in Section 1.104 of the Plan.

36.     "**OpCo Debtors**" refers to Franchise Group, Inc. and its direct and indirect subsidiaries.

37.     "**Petition Date**" means November 3, 2024.

38.     "**Petrillo**" means Petrillo Klein Boxer LLP.

39.     "**Plan**" means the Joint Chapter 11 Plan of Franchise Group, Inc. and its Affiliated Debtors [D.I. 150].

40.     "**Prepetition ABL Loan Claims**" shall have the meaning ascribed to it in Section 1.135 of the Plan.

41.     "**Prepetition Marketing Process**" refers to the prepetition marketing process described in paragraphs 13-19 of the DIP Declaration.

42.     "**Prophecy**" refers to Prophecy Asset Management LP.

43.     "**Relate**" and its variants encompass the terms "refer," "reflect," "constitute," "evidence," "in connection with," and "concern" and shall be construed to bring within the scope of the Document Request, as applicable, all documents and information that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Document Request, as applicable, including, but not limited to, all documents and information that reflect, record, memorialize, discuss, evaluate,

consider, review, report, or otherwise evidence the existence of the subject matter of the Document Request, as applicable.

44.     "**RSA**" refers to that certain *Restructuring Support Agreement*, dated as of November 1, 2024, attached as Exhibit B to the First Day Declaration.

45.     "**Special Committee**" has the meaning set forth in the First Day Declaration.

46.     "**Take-Back ABL Term-Loan Facility**" shall have the meaning ascribed to it in Section 1.187 of the Plan.

47.     "**Take-Private Transaction**" has the meaning set forth in the First Day Declaration.

48.     "**Take-Private Transaction Committee**" refers to the "independent committee" described on pages 5 and 6 of the Disclosure Statement.

49.     "**TopCo**" has the meaning set forth in the Disclosure Statement.

50.     "**Willkie**" means Willkie Farr & Gallagher LLP.

51.     "**Young Conaway**" means Young Conaway Stargatt & Taylor, LLP.

52.     "**You**" and "**Your**" means the HoldCo Debtors.

## <u>INSTRUCTIONS</u>

The preceding Definitions apply to each of these Instructions and for purposes of these Interrogatories, the following Instructions shall be followed:

1.     As the term "possession" pertains to e-mails, the term includes, but is not limited to, e-mails contained in your electronic e-mail directories containing (i) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (ii) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (iii) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

7

2.      The word "all" shall also include "each of," and vice versa.  The word "any" shall

be construed to mean "any and all" where the effect of such construction is to broaden the scope

of the Interrogatory.

3.      In responding to each of the Interrogatories, You are to review and search all

relevant files of appropriate entities and persons.

4.      If any responsive information or documents is known to have existed and cannot

now be located, or has been destroyed, discarded, or otherwise disposed, set forth a complete

statement of the circumstances surrounding such loss, destruction, discarding, or other disposition,

including:

       a.      A description of the information or documents, including the date, a

summary of its contents and the identity of its author and the Person(s) to whom it was sent

or shown:

       b.      The last known custodian;

       c.      Whether the information or document is missing or lost or was destroyed,

discarded, or otherwise disposed;

       d.      The date of loss, destruction, discarding, or other disposition;

       e.      The reason(s) for destruction, discarding, or other disposition;

       f.      The Person(s) authorizing or carrying out such destruction, discarding, or

other deposition; and

       g.      The efforts made to locate lost or misplaced information or documents.

5.      If there is no information responsive to a specific request, so state in writing.

6.      If You know of any information responsive to a particular request but cannot

produce them, so state, produce the information within Your possession, custody or control on the

subject matter sought, and identify each Person whom You believe has information responsive to the Interrogatory.

7.    In the event you seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, You shall produce as much of the document concerned as to which no claim of privilege or other limitation of discovery is made. With respect to information, documents or portions of documents for which a claim of privilege or other limitation of discovery is made, You are instructed to provide a numeral list of the information, document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation is governed by state law, indicate the state of the privilege rule or other limitation invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected information: (i) the type of information or document; (ii) the name and capacity of each author and recipient of the information or document; (iii) the general subject matter of the information or document in a manner sufficient to support the privilege or other protection claimed; (iv) the date of the information or document; (v) such other information as is sufficient to identify the information or document for a subpoena *duces tecum*, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production. Notwithstanding the assertion of any privilege or other protection, any requested information or document that contains responsive, non-privileged or protected information should be disclosed or

produced, but that portion of a document for which the privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

8.      Each Definition, Instruction, and Interrogatory herein shall be construed independently and not with reference to any other Definition, Instruction, or Interrogatory, for the purposes of limitation.

9.      If any meaning of any term in any Interrogatory herein is unclear to You, without waiver of the right to seek a full and complete response to the Interrogatory, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Interrogatory according to the assumed meaning.

10.     In accordance with Rule 33 of the Federal Rules of Civil Procedure, as incorporated by Rules 7033 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, objections to any part of these Interrogatories shall be stated in full and with specificity.  In the event You interpose an objection to an Interrogatory, You must respond to each part of the Interrogatory which objection is not made or provide testimony or information not objected to, as the case may be.

11.     If You cannot respond to any part of the Interrogatories in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have concerning the portion to which You do not respond.

12.     The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Interrogatories based on the knowledge or information that You possess at the time You respond to these Interrogatories.  If an investigation

is continuing or discovery is not complete with respect to the matter inquired into by any Interrogatory, so state in your response to that Interrogatory.

13.     Each Interrogatory shall be deemed continuing so as to require You to promptly supplement Your response if You obtain, generate, or discover additional documents or information, as required by Rule 26 of the Federal Rules of Civil Procedure, as incorporated by Rules 7026 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable.

14.     "Including" shall not be construed to limit the scope of any Interrogatory.

15.     Whenever necessary to bring within the scope of an Interrogatory information that might otherwise be construed to be outside its scope:

        a.      The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

        b.      The use of a word in its singular form shall be deemed to include within its use the plural form, and vice versa;

        c.      The use of the masculine form of a noun or pronoun shall include the feminine form, and vice versa; and

        d.      The use of the conjunctive or disjunctive, respectively, shall be construed as necessary to be inclusive rather than exclusive.

16.     Each paragraph, subparagraph, clause, and word therein should be construed independently and not by reference to any other paragraph, subparagraph, clause or word herein for purposes of limitation.

17.     Unless another time period is specified, the relevant time period for these Interrogatories is the time period from November 3, 2019 to the date that you respond to these Interrogatories.

## <u>INTERROGATORIES</u>

1.      Identify all current, retrospective, or prospective valuations, working valuation models, working financial projections, models, and working liquidation analysis models of the Debtors, performed by the Debtors or the Debtors advisors, or any other party, including, but not limited to, any valuations in connection with the Take-Private Transaction, any other potential or consummated sale, combination or other transaction, and the wind-down of the American Freight Debtors.

2.      Identify all business plans, forecasts, projections, or solvency opinions presented to any stakeholders, including but not limited to, any in connection with the Take-Private Transaction, any other potential or consummated sale, combination or other transaction, and the wind-down of the American Freight Debtors.

3.      Identify all unencumbered assets of the Debtors, including any Commercial Tort Claims that are not encumbered under any security agreement.

4.      Identify the individuals who received prepaid retention bonuses and the amount of each individual received in connection with the prepetition retention bonus programs described in footnote 2 of the First Day Declaration.

5.      Identify the names and positions of each member of, and advisor to, the Take-Private Transaction Committee.

6.      Identify and describe each of the strategic initiatives proposed or evaluated by the Debtors or their advisors since January 2023.

7.      Identify the date that on which each of the Debtors, their directors and their officers became aware of the SEC and DOJ's pending investigation into Mr. Kahn.

8.      Identify by name and position each of the individuals interviewed as part of the Independent Investigation and each the individuals who have been or may be interviewed as part

12

of the Chapter 11 Investigation.

9.      Identify the individual who was primarily responsible for the (i) the projections in connection with the Plan and (ii) the valuation of the Debtors in connection with the Plan.

10.     Identify the individual who was primarily responsible for the valuation of the Debtors in connection with the Take-Private Transaction.

11.     Identify all findings and conclusions of the Independent Investigation, to whom they were provided and the format in which they were provided.

12.     Identify and describe the categories of Documents and Communications that the Debtors and their advisors either have reviewed or intend to review in connection with the Independent Investigation and the Chapter 11 Investigation.

13.     Identify the date on which the Debtors and their advisors began the Chapter 11 Investigation and the date by which the Debtors and their advisors expect that the Chapter 11 Investigation will be substantially completed.

14.     Identify and describe all Causes of Actions (including, but not limited to, Avoidance Actions, Intercompany Claims, and Chapter 5 Claims) belonging to any of the Debtors and their estates that are or might be retained, released, waived, abandoned, or extinguished under the RSA and/or the Plan.

15.     Identify and describe all Causes of Actions (including, but not limited to, Avoidance Actions and Intercompany Claims) belonging to any of the Debtors and their estates that are or might be retained, released, waived, abandoned, or extinguished under the RSA and/or the Plan.

16.     Identify any "good and valuable" consideration provided to the Debtors by the Released Parties and Exculpated Parties.

13

17.    Identify all Documents and Board Materials concerning any actual or potential value of any Causes of Action belonging to the HoldCo Debtors and their estates against the OpCo Debtors and their estates.

18.    Identify all directors and officers ("D&O") liability insurance coverage available to the Debtors as of the Petition Date, including the amount of coverage available under any applicable policies.

19.    Identify all valuations and analyses underlying the agreement to have the Take-Back ABL Term-Loan Facility equate to an aggregate principal amount equal to the Allowed amount of the Prepetition ABL Loan Claims.

20.    Identify all analysis regarding the liquidation value and collateral value of the American Freight Debtors.

21.    Identify all intercompany agreements, intercompany transactions, intercompany loans, movements of intercompany cash, and intercompany accounts payable and accounts receivables on any accounting records of the Debtors between the HoldCo Debtors and the OpCo Debtors.

22.    Identify the taxable year of the Debtors and their consolidated group for U.S. federal, state, and local income tax purposes.

Dated:        November 16, 2024
              New York, New York

                                    */s/ Samuel P. Hershey*

                                    **FARNAN LLP**
                                    Brian E. Farnan (Bar No. 4089)
                                    Michael J. Farnan (Bar No. 5165)
                                    919 North Market Street, 12th Floor
                                    Wilmington, DE 19801
                                    Telephone: (302) 777-0300
                                    Facsimile: (302) 777-0301
                                    bfarnan@farnanlaw.com
                                    mfarnan@farnanlaw.com

                                    -and-

                                    **WHITE & CASE LLP**
                                    Thomas E Lauria (admitted *pro hac vice*)
                                    Southeast Financial Center
                                    200 South Biscayne Boulevard, Suite 4900
                                    Telephone: (305) 371-2700
                                    Facsimile: (305) 358-5744
                                    Email: tlauria@whitecase.com

                                    -and-

                                    J. Christopher Shore (admitted *pro hac vice*)
                                    Andrew T. Zatz (admitted *pro hac vice*)
                                    Samuel P. Hershey (admitted *pro hac vice*)
                                    Erin Smith (admitted *pro hac vice*)
                                    Brett Bakemeyer (admitted *pro hac vice*)
                                    1221 Avenue of the Americas
                                    New York, NY 10020
                                    Telephone: (212) 819-8200
                                    Facsimile: (212) 354-8113
                                    Email: cshore@whitecase.com
                                    azatz@whitecase.com
                                    sam.hershey@whitecase.com
                                    erin.smith@whitecase.com
                                    brett.bakemeyer@whitecase.com

                                    *Counsel to the Ad Hoc Group of Freedom
                                    Lenders*

15

**EXHIBIT E**

**Debtors' Search Protocol for Second Day Hearing Discovery**

**Chris Grubb: (June 27, 2024- November 6, 2024) and David Orlofsky:[1] (July 29, 2024 - November 6, 2024)**

("Franchise Group" OR "FRG" OR "Fusion") ~~AND~~ w/25 ("DIP" w/10~~25~~ ("2L" or "Second Lien" OR "2nd Lien"))

("Franchise Group" OR "FRG" OR "Fusion") ~~AND~~ w/25 ("DIP" w/10~~25~~ ("HoldCo" OR "hold co" OR "Holdings" OR "Freedom"))

("Franchise Group" OR "FRG" OR "Fusion") w/25 ("DIP Budget" OR ("DIP" w/10~~25~~ "budget") ~~OR "cash flow" OR "projections" OR "13 week" OR "13 wk")~~

~~("Franchise Group" OR "FRG" OR "Fusion") w/25 ("DIP" OR "financing "OR "facility" OR "restructuring OR " out of court" OR "out-of-court" "post petition" OR "post-petition" OR "cash collateral" OR RSA)~~

~~("Franchise Group" OR "FRG" OR "Fusion") AND ([search string with relevant domain names of negotiating parties and their advisors])~~

*all searches exclude solely internal communications

**Laurence**: September 27, 2024 ~~January 1, 2022~~- November 6, 2024

"DIP" ~~OR "financing" OR "facility" OR "restructuring" or "out of court" OR "out-of-court" OR "post petition" or "post-petition" OR "cash collateral" OR "RSA"~~

~~Fusion~~

"DIP budget" ~~OR ("DIP" w/25 "budget") OR "cash flow" or "projections" OR "13 week" or "13 wk"~~

"DIP" w/25 ("HoldCo" OR "hold co" OR "Holdings" OR "Freedom")

"DIP" w/25 ("2L" OR "Second Lien" OR "2nd Lien")

~~A search string to get all communications with the negotiating parties by search for those domain names. For example: (@paulhastings.com OR lazard.com OR [Domain names of the DIP Lenders] OR [Domain names of the ABL Lenders and their advisors])~~

---

[1] Searches of Mr. Orlofsky's emails remain in progress, Debtors reserve all rights.

**EXHIBIT F**

| | |
|---|---|
| **From:** | Smith, Erin |
| **To:** | Sullivan, Brady M.; Grinnell, Kaydene; Hershey, Samuel; Lauria, Thomas E; Shore, Christopher; Zatz, Andrew; Bakemeyer, Brett; Chen, Tony; Chen, Ken; Chemborisov, Gleb; Yoo, Jade; Kates, Paula |
| **Cc:** | Dugan, James; Lombardi, Stuart; Morton, Edmon (External); Lunn, Matthew (External); Mielke, Allison S.; Borovinskaya, Shella; Kass-Gergi, Yara; Sinclair, Debra; FRGWillkie; Michael J. Farnan |
| **Subject:** | RE: RE: RE: In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections) |
| **Date:** | Monday, November 25, 2024 10:13:42 PM |
| **Attachments:** | image001.png |

## *** EXTERNAL EMAIL ***

Brady and Team:

Thank you for getting back to us with a revised proposal and some additional color.  While we would very much like to work with you on a reasonable compromise, we think your proposed solution does not get us there. To that end, we would benefit from some additional context and propose some potential solutions below.

First, it would be useful if you could provide a little more context about the number of hits.  You mention that our revisions returned over 50K hits, excluding documents you already have reviewed and produced.  Can you please share with us how many hits Debtors' original search terms returned? How many additional hits are captured by this revised proposal?

Second, we see no justification in your email for cutting certain of the search terms we've proposed, for example, RSA or projections.  We understand the RSA and DIP were negotiated in tandem.  Additionally, the Debtors' financial projections must have been central to the negotiation of the DIP that Debtors are seeking to have approved by the Court.

Third, we are very happy to work with you to brainstorm some exclusions you can run on the search terms or work together to find other solutions.  To take one example, it seems that the false positives with Fusion can be easily addressed by identifying other terms that should screen out the irrelevant uses of Fusion you have identified.  Similarly, while we can understand that "financing" or "facility" could return some false positives, given the relatively short time period, we think it is important that any in or out of court alternatives to the DIP considered by the Debtors be captured in the search terms.  We are concerned that these revised proposed search terms would miss any discussions of DIP alternatives that never use the term "DIP" and iterations of 2L or Holdco or the DIP Budget.  We are open to your suggestions on search terms that would capture communications about DIP alternatives considered by the Debtors.

Fourth, with respect to your refusal to run domain name searches, we don't understand your basis for doing so and ask that you explain.  These emails are not privileged and are all responsive so the burden of gathering and producing them should be minimal.

Fifth, we do not agree to your proposal to start searches of Mr. Laurence's emails on September 27, 2024, nor do we understand the significance of that date.  Instead, we ask that you please pull Mr. Laurence's documents from the time when the Debtors started considering a restructuring, whether in or out of court.  We also reiterate our request that you please run searches from the earliest date Ducera and Alix Partners were discussing a potential engagement with the Debtors, rather than the date the engagement letters were formally executed.  Please confirm on this point.

Sixth, we think there are other relevant project names that should be included: Project Bookshelf, Project Vitality and Project Pluto.

In light of the above, we think the most efficient way to move the conversation forward will be for Debtors to please share with us a hit report on the various proposed terms (with revised time periods) and ask that you please share that with us as soon as possible.

Best,

**Erin Smith** | Associate
**T** +1 212 819 2595   **M** +1 917 833 9134   **E** erin.smith@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095

**From:** Sullivan, Brady M. <BSullivan@willkie.com>
**Sent:** Monday, November 25, 2024 11:51 AM
**To:** Smith, Erin <erin.smith@whitecase.com>; Grinnell, Kaydene <KGrinnell@willkie.com>; Hershey, Samuel <sam.hershey@whitecase.com>; Lauria, Thomas E <tlauria@whitecase.com>; Shore, Christopher <cshore@whitecase.com>; Zatz, Andrew <azatz@whitecase.com>; Bakemeyer, Brett <brett.bakemeyer@whitecase.com>; Chen, Tony <tony.chen@whitecase.com>; Chen, Ken <ken.chen@whitecase.com>; Chemborisov, Gleb <gleb.chemborisov@whitecase.com>; Yoo, Jade <jade.yoo@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>
**Cc:** Dugan, James <jdugan@willkie.com>; Lombardi, Stuart <slombardi@willkie.com>; Morton, Edmon (External) <EMorton@ycst.com>; Lunn, Matthew (External) <mlunn@ycst.com>; Mielke, Allison S. <AMielke@ycst.com>; Borovinskaya, Shella <SBorovinskaya@ycst.com>; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; Sinclair, Debra <DSinclair@willkie.com>; FRGWillkie <FRGWillkie@willkie.com>; Michael J. Farnan <mfarnan@farnanlaw.com>
**Subject:** [EXT] RE: RE: In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections)

Erin,

We write in response to your proposed search protocol for the Ad Hoc Group of Freedom Lenders' First RFPs in Connection with the Second Day Motions.  Please see the attached markup, which sets forth a compromise position that we believe will get you what you need without forcing the Debtors to review tens of thousands of documents, many of which are not remotely relevant to the Second Day Motions.

We would like to provide a little more color on our counterproposal.  As an initial matter, your proposed search parameters resulted in over 50,000 hits, and that is not even including custodial documents the Debtors have already reviewed and produced.  That is one overarching reason why we will not agree to your search parameters.

Another is that the proposed search terms resulted in a number of false hits.  For example, standalone terms like "financing" or "facility" or "restructuring" or "out of court" pull in a large volume of documents that have nothing to do with this proceeding, let alone the Second Day Motions (e.g., SEC filings, finance documents, unrelated Company deals, etc.).  "Fusion" is also driving a lot of false hits.  As just one example, for Laurence, American Freight appears to have a processing system referred to as "Fusion."  We'll note that Fusion also results in false hits for Chris Grubb in connection with an unrelated Ducera engagement.  We will agree to run "Fusion" on the advisors for now because the volume of false hits is manageable, but we reserve rights.  And for the advisors, FRG-related strings with broad proximity terms such as "cash flow" or "projections" are not

tethered to the Second Day Motions.

Part of the problem here also is that your proposed terms are simply unworkable for Mr. Laurence if we keep the date range as January 1, 2022 – November 6, 2024. We have adjusted the date range for his email search to correspond more closely to the Board's consideration of the DIP financing.

With respect to the domain searches, for purposes of the Second Day Hearing, we will not review every single email exchanged with the advisors.

This is all to say we have begun review of the additional documents that hit on the search terms set forth in the revised protocol. We anticipate completing these additional productions reasonably in advance in the scheduled depositions.

You mentioned "technical issues" with respect to four documents listed below. Those were zip files we produced with "technical slipsheets," which is what you are seeing. For the zip files, we extracted all the family members as separate documents and produced those, as members of the same family, which I understand is standard ESI practice.

Regards,
Brady


**Brady M. Sullivan**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8949 | Fax: +1 212 728 8111
bsullivan@willkie.com | vCard | www.willkie.com bio

---

**From:** Smith, Erin <erin.smith@whitecase.com>
**Sent:** Wednesday, November 20, 2024 6:54 PM
**To:** Grinnell, Kaydene <KGrinnell@willkie.com>; Hershey, Samuel <sam.hershey@whitecase.com>; Lauria, Thomas E <tlauria@whitecase.com>; Shore, Christopher <cshore@whitecase.com>; Zatz, Andrew <azatz@whitecase.com>; Bakemeyer, Brett <brett.bakemeyer@whitecase.com>; Chen, Tony <tony.chen@whitecase.com>; Chen, Ken <ken.chen@whitecase.com>; Chemborisov, Gleb <gleb.chemborisov@whitecase.com>; Yoo, Jade <jade.yoo@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>
**Cc:** Dugan, James <jdugan@willkie.com>; Lombardi, Stuart <slombardi@willkie.com>; Morton, Edmon (External) <EMorton@ycst.com>; Lunn, Matthew (External) <mlunn@ycst.com>; Mielke, Allison S. <AMielke@ycst.com>; Borovinskaya, Shella <SBorovinskaya@ycst.com>; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; Sinclair, Debra <DSinclair@willkie.com>; FRGWillkie <FRGWillkie@willkie.com>; Michael J. Farnan <mfarnan@farnanlaw.com>
**Subject:** RE: RE: In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections)

**\*\*\* EXTERNAL EMAIL \*\*\***

Kaydene and Willkie Team:

We write to follow up on the Debtors' proposed search terms and other outstanding items from the parties' meet and confers to date.

**<u>Search Terms</u>**

Consistent with the Debtors obligations under the Rules, the Debtors should have sent the Ad Hoc Group your proposed search terms for review and comment so that we might have reached agreement on the terms <u>before</u> you spent time and money running searches without any input from our Group.  *See* Rule 7026-3(e)("The parties shall confer and in good faith attempt to reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems.").

The search terms you have proposed do not work and we will need to work together efficiently now to address their deficiencies.

<u>First</u>, the Debtors' current search terms are too narrowly drawn and are likely to miss relevant documents and communications. For example:

- "DIP" should be run as a search term without limiting phrases  The Debtors proposed searches would only hit on relevant documents if they refer to a negotiating parties' position (ABL Lender, First Lien, Second Lien) or refer to an alternative plan as such.  and it is unlikely that every communication would include such a reference.

- "DIP Budget" should be run as a search term without limiting phrases.

- "financing proposal" or "restructuring proposal" will likely miss email that refer in shorthand to a "financing" or "facility" or "proposal"

- "2Ls" or 2nd Liens or Second Liens should not be searched for in the plural form only. This term would miss any discussion of a 2L proposal or treatment of 2L holders.

<u>Second</u>, the Debtors' current search terms are missing critical phrases that reflect the language actually used in negotiating a DIP or an alternative financing.  For example:

- Rather than using the term "DIP" alone, we think it likely that negotiating parties may have referred to post-petition financing or out-of court financing alternatives in various terms. At a minimum, the Debtors will need to include other words, for example "post-petition,"  "cash collateral," "financing," " facility" and "out of court" to capture all relevant documents and communications about the DIP or any alternatives considered.

- Debtors' proposed search terms are completely missing search strings to return cash flows, projections, and budgets.  As we have discussed several times, this basic financial information is a priority item for the Freedom Lender Group.

- Debtors proposed search terms do not include negotiations of the RSA which is cross-referenced with the DIP negotiations.

- The Debtors' proposed search terms do not include a single project name.  In the minimal discovery produced to date, we have seen a reference to Project Fusion.  There may be others. Any project names used by the Debtors and their advisors in connection with matters relevant to

the Second Day Hearing should be included.


<u>Third,</u> your search terms do not include the domain names for the parties involved in the relevant negotiations. We think that they should.

- Domain names should include, at minimum, @paulhastings.com @lazard.com; the domain names of the DIP Lenders involved in the negotiations (including @oaktree.com, @guggenheimpartners, etc.) and the domain names of the ABL Lenders and their advisors.


In light of the above, our revisions to the search parameters you circulated are below.  We request that you run these search terms as soon as possible to supplement the Debtors' rolling productions.


## <u>Search Parameters</u>

*Andy Laurence: (January 1, 2022-November 6, 2024)*

1. "DIP" OR "financing" OR "facility" OR "restructuring" or "out of court" OR "out-of-court" OR "post petition" or "post-petition" OR "cash collateral" OR "RSA"

2. Fusion

3. "DIP budget" OR ("DIP" w/25 "budget") OR "cash flow" or "projections" OR "13 week" or "13 wk"

4. "DIP" w/25 ("HoldCo" OR "hold co" OR "Holdings" OR "Freedom")

5. "DIP" w/25 ("2L" OR "Second Lien" OR "2nd Lien")

6. A search string to get all communications with the negotiating parties by search for those domain names. For example: (@paulhastings.com OR lazard.com OR [Domain names of the DIP Lenders] OR [Domain names of the ABL Lenders and their advisors])

*Chris Grubb: (June 27, 2024- November 6, 2024) and David Orlofsky: (July 29, 2024 - November 6, 2024)*

7. ("Franchise Group" OR "FRG" OR "Fusion") w/25 ("DIP" OR "financing "OR "facility" OR "restructuring OR " out of court" OR "out-of-court" "post petition" OR "post-petition" OR "cash collateral" OR RSA)

8. ("Franchise Group" OR "FRG" OR "Fusion" ) w/25 "DIP Budget" OR ("DIP" w/25 "budget") OR "cash flow" OR "projections" OR "13 week" OR "13 wk"

9. ("Franchise Group" OR "FRG" OR "Fusion") AND "DIP w/25 ("HoldCo" Or "hold co" OR "Holdings" OR "Freedom")

10. ("Franchise Group" OR "FRG" OR "Fusion") AND "DIP" w/25 ("2L or "Second Lien" OR "2nd Lien")

11. ("Franchise Group" OR "FRG" OR "Fusion") AND ([search string with relevant domain names of negotiating parties and their advisors])

**Other Follow Up**

We reiterate the request we made during yesterday's meet and confer that the start date for collecting emails from Christopher Grubb and David Orlofsky should be the start of their discussions with FRG and not the date an engagement letter was formally executed. Please confirm that Debtors will do so.

As discussed, there are technical issues with respect to certain documents the Debtors have produced. Please re-produce the documents at the below bates numbers with your next rolling production:

- FRG00000121
- FRG00000424
- FRG00000700
- FRG00000990

Please let us know when Debtors propose a meet and confer on the Disclosure Statement and Plan Discovery we served last weekend. Please also confirm that you will send us your proposed search terms and custodians for that discovery so that we may provide input and attempt to reach agreement on the proper scope of search terms and custodians in compliance with the Rules.

Best,
Erin

**Erin Smith** | Associate
**T** +1 212 819 2595    **M** +1 917 833 9134    **E** erin.smith@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095

**From:** Grinnell, Kaydene <KGrinnell@willkie.com>
**Sent:** Wednesday, November 20, 2024 7:28 AM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>; Lauria, Thomas E <tlauria@whitecase.com>; Shore, Christopher <cshore@whitecase.com>; Zatz, Andrew <azatz@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Bakemeyer, Brett <brett.bakemeyer@whitecase.com>; Chen, Tony <tony.chen@whitecase.com>; Chen, Ken <ken.chen@whitecase.com>; Chemborisov, Gleb <gleb.chemborisov@whitecase.com>; Yoo, Jade <jade.yoo@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>
**Cc:** Dugan, James <jdugan@willkie.com>; Lombardi, Stuart <slombardi@willkie.com>; Morton, Edmon (External) <EMorton@ycst.com>; Lunn, Matthew (External) <mlunn@ycst.com>; Mielke, Allison S. <AMielke@ycst.com>; Borovinskaya, Shella <SBorovinskaya@ycst.com>; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; Sinclair, Debra <DSinclair@willkie.com>; FRGWillkie <FRGWillkie@willkie.com>
**Subject:** [EXT] RE: RE: In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections)

Sam,

As discussed during our meet and confer, please find below the search parameters for our email collection. These email searches were conducted in addition to our collections of specified files such as Board meeting agendas and materials, financial statements, D&O policies, bank statements, DIP

marketing communications and materials, Ducera's internal database, tax filings, and other identifiable sets of responsive documents.

**Search Parameters**

*Andy Laurence: (January 1, 2022-November 6, 2024)*

1. ("financing proposal" OR "restructuring proposal") w/15 ("ABL Lender" OR "third-party")
2. ("First Lien" OR "1st Lien" OR "1L") w/10 DIP
3. ("financing proposal" OR "restructuring proposal") w/15 ("2Ls" or "2nd Liens" OR "Second Liens")
4. "DIP" w/10 (option* OR alternative* OR best OR reasonable)
5. "DIP" w/10 "Cash collateral"
6. (Negotia* OR Prepar*) w/10 "DIP budget"
7. "HoldCo Debtors" AND (("unsecured guarantors" w/5 "DIP") OR proceed* OR benefi*)

*Chris Grubb: (June 27, 2024- November 6, 2024) and David Orlofsky: (*July 29, 2024 *- November 6, 2024)*

1. ("Franchise Group" OR "FRG") w/25 ("financing proposal OR "restructuring proposal") w/15 ("ABL Lender" OR "third-party")
2. ("Franchise Group" OR "FRG") w/25 ("First Lien" OR "1st Lien" OR "1L") w/10 DIP
3. ("Franchise Group" OR "FRG") w/25 ("financing proposal" OR "restructuring proposal") w/15 ("2Ls" or "2nd Liens" OR "Second Liens")
4. ("Franchise Group" OR "FRG") w/25 ("DIP" w/10 (option* OR alternative* OR best OR reasonable))
5. ("Franchise Group" OR "FRG") w/25 ("DIP" w/10 "Cash collateral")
6. ("Franchise Group" OR "FRG") w/25 ((Negotia* OR Prepar*) w/10 "DIP budget")
7. ("Franchise Group" OR "FRG") w/25 ("HoldCo Debtors" AND (("unsecured guarantors" w/5 "DIP") OR proceed* OR benefi*))

Best,

Kaydene

**Kaydene Grinnell**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8463 | Fax: +1 212 728 8111
kgrinnell@willkie.com | vCard | www.willkie.com bio

---

**From:** Hershey, Samuel <sam.hershey@whitecase.com>
**Sent:** Tuesday, November 19, 2024 7:35 AM
**To:** Grinnell, Kaydene <KGrinnell@willkie.com>; Lauria, Thomas E <tlauria@whitecase.com>; Shore, Christopher <cshore@whitecase.com>; Zatz, Andrew <azatz@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Bakemeyer, Brett <brett.bakemeyer@whitecase.com>; Chen, Tony

<tony.chen@whitecase.com>; Chen, Ken <ken.chen@whitecase.com>; Chemborisov, Gleb <gleb.chemborisov@whitecase.com>; Yoo, Jade <jade.yoo@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>

**Cc:** Dugan, James <jdugan@willkie.com>; Lombardi, Stuart <slombardi@willkie.com>; Morton, Edmon (External) <EMorton@ycst.com>; Lunn, Matthew (External) <mlunn@ycst.com>; Mielke, Allison S. <AMielke@ycst.com>; Borovinskaya, Shella <SBorovinskaya@ycst.com>; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; Sinclair, Debra <DSinclair@willkie.com>; FRGWillkie <FRGWillkie@willkie.com>

**Subject:** RE: RE: In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections)

**\*\*\* EXTERNAL EMAIL \*\*\***

Thank you

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699  **M** +1 (914) 582-1628  **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
**WHITE & CASE**

**From:** Grinnell, Kaydene <KGrinnell@willkie.com>
**Sent:** Tuesday, November 19, 2024 7:33 AM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>; Lauria, Thomas E <tlauria@whitecase.com>; Shore, Christopher <cshore@whitecase.com>; Zatz, Andrew <azatz@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Bakemeyer, Brett <brett.bakemeyer@whitecase.com>; Chen, Tony <tony.chen@whitecase.com>; Chen, Ken <ken.chen@whitecase.com>; Chemborisov, Gleb <gleb.chemborisov@whitecase.com>; Yoo, Jade <jade.yoo@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>

**Cc:** Dugan, James <jdugan@willkie.com>; Lombardi, Stuart <slombardi@willkie.com>; Morton, Edmon (External) <EMorton@ycst.com>; Lunn, Matthew (External) <mlunn@ycst.com>; Mielke, Allison S. <AMielke@ycst.com>; Borovinskaya, Shella <SBorovinskaya@ycst.com>; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; Sinclair, Debra <DSinclair@willkie.com>; FRGWillkie <FRGWillkie@willkie.com>

**Subject:** [EXT] RE: RE: In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections)

Hi Sam,

Yes, 3:30 works for us. I will send you a calendar invite.

**Kaydene Grinnell**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8463 | Fax: +1 212 728 8111
kgrinnell@willkie.com | vCard | www.willkie.com bio

**From:** Hershey, Samuel <sam.hershey@whitecase.com>
**Sent:** Tuesday, November 19, 2024 7:11 AM
**To:** Grinnell, Kaydene <KGrinnell@willkie.com>; Lauria, Thomas E <tlauria@whitecase.com>; Shore, Christopher <cshore@whitecase.com>; Zatz, Andrew <azatz@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Bakemeyer, Brett <brett.bakemeyer@whitecase.com>; Chen, Tony <tony.chen@whitecase.com>; Chen, Ken <ken.chen@whitecase.com>; Chemborisov, Gleb <gleb.chemborisov@whitecase.com>; Yoo, Jade <jade.yoo@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>
**Cc:** Dugan, James <jdugan@willkie.com>; Lombardi, Stuart <slombardi@willkie.com>; Morton, Edmon (External) <EMorton@ycst.com>; Lunn, Matthew (External) <mlunn@ycst.com>; Mielke, Allison S. <AMielke@ycst.com>; Borovinskaya, Shella <SBorovinskaya@ycst.com>; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; Sinclair, Debra <DSinclair@willkie.com>; FRGWillkie <FRGWillkie@willkie.com>
**Subject:** RE: RE: In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections)

**\*\*\* EXTERNAL EMAIL \*\*\***

Hi Kaydene, could we do 3:30? Please let us know. If not we will make 2:30 work.

**Samuel P. Hershey**  |  Partner
**T** +1 (212) 819-2699   **M** +1 (914) 582-1628   **E** sam.hershey@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095
**WHITE & CASE**

---

**From:** Grinnell, Kaydene <KGrinnell@willkie.com>
**Date:** Monday, Nov 18, 2024 at 22:25
**To:** Hershey, Samuel <sam.hershey@whitecase.com>, Lauria, Thomas E <tlauria@whitecase.com>, Shore, Christopher <cshore@whitecase.com>, Zatz, Andrew <azatz@whitecase.com>, Smith, Erin <erin.smith@whitecase.com>, Bakemeyer, Brett <brett.bakemeyer@whitecase.com>, Chen, Tony <tony.chen@whitecase.com>, Chen, Ken <ken.chen@whitecase.com>, Chemborisov, Gleb <gleb.chemborisov@whitecase.com>, Yoo, Jade <jade.yoo@whitecase.com>, Kates, Paula <paula.kates@whitecase.com>
**Cc:** Dugan, James <jdugan@willkie.com>, Lombardi, Stuart <slombardi@willkie.com>, Morton, Edmon (External) <EMorton@ycst.com>, Lunn, Matthew (External) <mlunn@ycst.com>, Mielke, Allison S. <AMielke@ycst.com>, Borovinskaya, Shella <SBorovinskaya@ycst.com>, Kass-Gergi, Yara <YKass-Gergi@willkie.com>, Sinclair, Debra <DSinclair@willkie.com>, FRGWillkie <FRGWillkie@willkie.com>
**Subject:** [EXT] RE: In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections)

Sam,

We are available tomorrow at 2:30 pm ET. Please let us know if that works on your end.

**Kaydene Grinnell**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8463 | Fax: +1 212 728 8111
kgrinnell@willkie.com | vCard | www.willkie.com bio

**From:** Hershey, Samuel <sam.hershey@whitecase.com>
**Sent:** Monday, November 18, 2024 10:08 PM
**To:** Grinnell, Kaydene <KGrinnell@willkie.com>; Lauria, Thomas E <tlauria@whitecase.com>; Shore, Christopher <cshore@whitecase.com>; Zatz, Andrew <azatz@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Bakemeyer, Brett <brett.bakemeyer@whitecase.com>; Chen, Tony <tony.chen@whitecase.com>; Chen, Ken <ken.chen@whitecase.com>; Chemborisov, Gleb <gleb.chemborisov@whitecase.com>; Yoo, Jade <jade.yoo@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>
**Cc:** Dugan, James <jdugan@willkie.com>; Lombardi, Stuart <slombardi@willkie.com>; Morton, Edmon (External) <EMorton@ycst.com>; Lunn, Matthew (External) <mlunn@ycst.com>; Mielke, Allison S. <AMielke@ycst.com>; Borovinskaya, Shella <SBorovinskaya@ycst.com>; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; Sinclair, Debra <DSinclair@willkie.com>; FRGWillkie <FRGWillkie@willkie.com>
**Subject:** RE: In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections)

**\*\*\* EXTERNAL EMAIL \*\*\***

Thank you.  Please let us know when you can meet and confer regarding these responses and objections.

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699    **M** +1 (914) 582-1628    **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
**WHITE & CASE**

**From:** Grinnell, Kaydene <KGrinnell@willkie.com>
**Sent:** Monday, November 18, 2024 8:35 PM
**To:** Lauria, Thomas E <tlauria@whitecase.com>; Shore, Christopher <cshore@whitecase.com>; Zatz, Andrew <azatz@whitecase.com>; Hershey, Samuel <sam.hershey@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Bakemeyer, Brett <brett.bakemeyer@whitecase.com>; Chen, Tony <tony.chen@whitecase.com>; Chen, Ken <ken.chen@whitecase.com>; Chemborisov, Gleb <gleb.chemborisov@whitecase.com>; Yoo, Jade <jade.yoo@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>
**Cc:** Dugan, James <jdugan@willkie.com>; Lombardi, Stuart <slombardi@willkie.com>; Morton, Edmon (External) <EMorton@ycst.com>; Lunn, Matthew (External) <mlunn@ycst.com>; Mielke, Allison S. <AMielke@ycst.com>; Borovinskaya, Shella <SBorovinskaya@ycst.com>; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; Sinclair, Debra <DSinclair@willkie.com>; FRGWillkie <FRGWillkie@willkie.com>
**Subject:** [EXT] In re Franchise Group, Inc., et al.; Case No 24-12480 (JTD) (Discovery Responses and Objections)

Counsel,

Please see the attached, sent on behalf of the Debtors in the above captioned proceeding.

Best,
Kaydene

**Kaydene Grinnell**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8463 | Fax: +1 212 728 8111
kgrinnell@willkie.com | vCard | www.willkie.com bio

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

========================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

========================================================================

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

========================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

================================================================

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

================================================================

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

================================================================

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error,

please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

================================================================
===========
This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

================================================================
===========