## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 51**<br>**Obj. Deadline: December 4, 2024 at 4:00 p.m. (ET)** [2] |

### LIMITED OBJECTION OF CERTAIN LANDLORDS TO MOTION
### OF DEBTORS TO APPROVE POST-PETITION FINANCING

Curbline Properties Corp., First Washington Realty, GCP Boom LLC, JLL Property Management (Franklin Mall), and Regency Centers, L.P. (collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP, submit

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2]      Extended by consent of the Debtors.

this limited objection (the "<u>Limited Objection</u>") to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority PostPetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "<u>DIP Motion</u>")[3] filed by the above-captioned debtors (the "<u>Debtors</u>"). In support of this Limited Objection, Landlords respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.     The Landlords are not fundamentally opposed to the Debtors attempt to obtain post-petition funding for these chapter 11 proceedings, but object to any waiver of the estates' rights under sections 506(c) and 552(b) of the Bankruptcy Code unless the budget provides for payment of all rent and charges related to the Debtors' post-petition use and occupancy of the properties leased by the Debtors from the Landlords.  If the Court is inclined to grant such waivers, all rent and charges accruing post-petition should be paid in the near term directly to the Landlords or funds sufficient to cover the amounts due to all landlords in these cases should be placed in escrow as adequate protection pursuant to sections 363(e) and 361 of the Bankruptcy Code and budgeted to be paid to the Landlords no later than December 15, 2024.

2.     In discussions with counsel, the Debtors indicate that they intend to comply with their post-petition obligations under the Leases, but to date many Landlords have still not received payment of November post-petition Stub Rent (defined below).  The Debtors remitted November rent before the Petition Date to some landlords and sent some payments for Stub Rent after the Petition Date to other Landlords.  Some of the checks sent pre-petition were not honored,

---

[3]     Docket No. 51.  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the DIP Motion.

and many of the checks sent after the Petition Date have not yet been received.  Many, if not all, of the checks sent after the Petition Date to pay Stub Rent that have been received are short by what appears to be one day of rent and charges.  The Landlords are actively working with the Debtors to resolve these issues, but file this Limited Objection to reserve their rights in the case that these issues are not resolved prior to the hearing.

## BACKGROUND

3.      Landlords are the owners or managing agents for the owners of numerous industrial, retail, and shopping center properties located throughout the United States.  The Debtors lease retail space and distribution centers from the Landlords pursuant to written leases (the "Leases") at the Debtors' locations listed on Exhibit 1 (collectively, the "Leased Premises").  Most of the Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code.  *See*, *e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

4.      On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code with this Court.  The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

5.      On November 4, 2024, the Debtors filed the DIP Motion.

6.      On November 7, 2024, following the first-day hearing in these cases, the Court entered an order (the "Interim DIP Order")[4] approving the DIP Motion on an interim basis and scheduling a hearing to consider entry of a final order (the "Final DIP Order") granting the

---

[4]      Docket No. 134.

DIP Motion.  The Interim DIP Order also approved, on an interim basis, the Debtors' DIP

financing budget (the "Budget"), which was attached as Exhibit 3 to Exhibit A of the DIP Motion.

7.     At many locations, the Debtors failed to pay November rent when due,

including the rent and charges that accrued under the Leases for the Debtors' use and occupancy

of the Leased Premises from November 3 through November 30, 2024 (the "Stub Rent").

8.     Through counsel, the Debtors have informed the Landlords that they

remitted payment for pre-petition November rent to certain landlords and submitted payment of

the Stub Rent after the Petition Date to other Landlords.  Some of the pre-petition November rent

checks were not honored, and many of the post-petition Stub Rent checks have either not yet come

in, or appear to be a day short.

## LIMITED OBJECTION

**A.          The Debtors Should Not Be Permitted To Waive The Rights Of The Estates
             Under Sections 506(c) And 552(b) Of The Bankruptcy Code**

9.     The Landlords object to the DIP Motion and entry of any final order on the

DIP Motion that includes waivers of sections 506(c) and 552(b) of the Bankruptcy Code without

the approved budget requiring payment of the Stub Rent for the affected landlords.[5] Absent

modification of the budget, the request for waiver of the estates' rights under sections 506(c) and

552(b) of the Bankruptcy Code should be denied.  Section 506(c) of the Bankruptcy Code allows

a debtor to charge the costs of preserving or disposing of a secured lender's collateral to the

collateral itself.  *See* 11 U.S.C. § 506(c).  This provision ensures that the cost of liquidating a

---

[5]     The Landlords also object to (i) any liens being placed directly on the Leases, unless explicitly allowed under
the terms of the Leases, and (ii) any enhanced collateral access rights for the Secured Lenders other than
those allowed under separate agreements with the Landlords, permitted by applicable non-bankruptcy law,
or as approved by the Court pursuant to separate motion and order.  The Interim Order contained language
clarifying these issues and, to the extent such language is carried over to any subsequently entered orders,
the Landlords do not object on those bases.

secured lender's collateral is not paid from unsecured creditor recoveries. *See, e.g.*, *Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3d Cir. 1995) (stating, "section 506(c) is designed to prevent a windfall to the secured creditor"); *Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) (stating, "the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"). Similarly, the "equities of the case" exception in section 552(b) of the Bankruptcy Code allows a debtor, committee, or other party-in-interest to exclude post-petition proceeds from pre-petition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure. *See* 11 U.S.C. § 552(b).

10.     As the Bankruptcy Court for the District of Delaware did in *In re Sports Authority Holding*, the advance waivers of sections 506(c) and 552(b) sought by the Debtors and DIP Lenders should be denied. *In re Sports Authority Holdings*, Case No. 16-10527 (MFW) (Bankr. D. Del. Apr. 26, 2016) [Docket No. 1415] (the "Hearing Transcript"). In that case, the debtors requested approval of a DIP facility that rolled up the entire pre-petition secured debt, proposed to pay off the pre-petition lenders immediately upon an expedited sale, granted the DIP lenders a surcharge waiver, and failed to adequately fund administrative and priority claims, including rent and section 503(b)(9) claims. In denying the surcharge waiver, Judge Walrath ruled:

> But in a case where the landlords and other administrative claims are clearly not budgeted or being paid while the . . . secured lenders' collateral is being liquidated and their secured claim is being paid, I have a serious problem with that. And I think the fix is no 506(c) waiver for anybody. And to the extent that administrative claims are not paid at the end of this case, there will be a claim against the lenders for those costs under 506(c) to the extent they were necessary for the preservation or realization of their collateral.

*See* Hearing Transcript at 195:6-16 (relevant pages attached hereto as Exhibit 2).

11.     The Budget does not appear to provide adequate funds or allow for the immediate payment of the Stub Rent.  Absent sufficient funding in a consensual budget that reserves funds for the payment of all Stub Rent and ensures (i) the immediate payment of the Stub Rent to the Landlords, (ii) administrative solvency, and (iii) a controlled exit from these chapter 11 cases, the Debtors should not be allowed to waive their statutory ability to surcharge the Secured Lenders' collateral and/or recover costs, including Stub Rent, as adequate protection or under the equities of the case.  *See, e.g., In re Mortgage Lenders Network USA, Inc.*, Hearing Transcript (Docket No. 346) at 20-21, Case No. 07-10146 (PJW) (Bankr. D. Del. Mar. 20, 2007) (recognizing that 506(c) waivers require creditor consent); *see also In re Townsends, Inc*., Case No. 10-14092 (CSS) Hearing Transcript (Docket No. 338) at 23-25 (Bankr. D. Del. Jan. 21, 2011) (refusing to approve financing for a sale process that would leave the estate administratively insolvent); *In re NEC Holdings Corp*., Case No. 10-11890 (PJW) Hearing Transcript (Docket No. 224) at 100 (Bankr. D. Del. July 13, 2010) (requiring that secured creditors pay the "freight" of the bankruptcy by ensuring an administratively solvent estate).

**B.        The Landlords Are Entitled To Adequate Protection Under Sections 363(e) And 361 Of The Bankruptcy Code**

12.     Section 363(e) of the Bankruptcy Code guarantees adequate protection to any party with an interest in property used by a debtor during the debtor's bankruptcy proceedings who makes a request for adequate protection:

> "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

11 U.S.C. § 363(e).

13. Section 363(e) is straightforward and non-discretionary.  If a creditor with an "interest" in property used by the Debtors makes a request for adequate protection, then the court "shall" prohibit or condition the use of such property on the provision of adequate protection. 11 U.S.C. § 363(e); *see Worldcom,* 304 B.R. 611; *see also In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary…").

14. The U.S. Supreme Court has held that the term "interest" "is the most general term that can be employed to denote a right, claim, title, or legal share in something." *Russello v. U.S.*, 464 U.S. 16, 21 (1983).

15. Section 363(e) is not limited to secured creditors.  A landlord undeniably holds an interest in the property that it owns and leases to a debtor, as well as an interest in the lease itself, the rents due under that lease, and the proceeds of the lease.  *See In re Ames Department Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) ("Section 363(e) of the Bankruptcy Code reserves for bankruptcy courts the discretion to condition the time, place and manner of store closing sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations").  A landlord's interests in its lease and the premises it leases to a debtor are further evidenced by the allowance of landlords' stub rent claims in other cases pursuant to section 503(b) of the Bankruptcy Code.  *See, e.g., In re Goody's Family Clothing Inc.*, 401 B.R. 656, 665 (D. Del. 2009) (affirming the allowance of stub rent claims under section 503(b)(1) of the Bankruptcy Code).  Thus, with an interest in property being used by the Debtors, and the request made herein, the Landlords are entitled to receive adequate protection.

16. The plain language of section 361 of the Bankruptcy Code states that adequate protection may take one of three forms – a debtor may (i) tender an upfront cash payment

or periodic cash payments, (ii) grant replacement liens, or (iii) grant other related relief (other than an administrative claim under section 503(b)(1) of the Bankruptcy Code) amounting to the indubitable equivalent of the protected party's interest in the property.  Section 361(3) is also clear that adequate protection *may not* take the form of a deferred administrative claim.  Under section 361 of the Bankruptcy Code, only a contemporaneous transfer of value satisfies the requirements of adequate protection.

17.     The Landlords recognize that the Debtors or their Lenders may not be willing to make immediate payment of Stub Rent.  The Landlords are willing to work with the Secured Lenders regarding an acceptable timeline for the payment of the Stub Rent in the short term that will not force the Landlords to bear the risk of non-payment if a plan is not confirmed or these cases are administratively insolvent.

## JOINDER

18.     The Landlords hereby join the objections by other landlords to the DIP Motion to the extent that such objections are not inconsistent with the relief sought herein.

## RESERVATION OF RIGHTS

19.     The Landlords reserve their rights to amend and/or supplement this Limited Objection and to raise any additional objections to the DIP Motion at the final hearing.

## <u>CONCLUSION</u>

**WHEREFORE**, Landlords respectfully request that the Court enter an order (i) modifying the relief requested in the DIP Motion as requested herein; and (ii) granting such other and further relief as this Court deems just and proper.

Dated:  December 4, 2024

**LAW OFFICE OF SUSAN E. KAUFMAN, LLC**

*/s/ Susan E. Kaufman*
Susan E. Kaufman (DE Bar No. 3381)
919 N. Market Street, Suite 460
Wilmington, DE 19801
Tel: (302) 472-7420
Fax: (302) 792-7420
Email: skaufman@skaufmanlaw.com

-and-

**KELLEY DRYE & WARREN LLP**
Robert L. LeHane
Jennifer D. Raviele
Allison B. Selick
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
Email: rlehane@kelleydrye.com
        jraviele@kelleydrye.com
        aselick@kelleydrye.com