## EXHIBIT A

**Revised Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 11 & 130** |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) PAY CERTAIN
PREPETITION EMPLOYMENT OBLIGATIONS AND COMPENSATION
OBLIGATIONS AND (B) MAINTAIN THE COMPENSATION OBLIGATIONS
AND EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 507(a), and 541 of the Bankruptcy Code, Bankruptcy Rules

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but not otherwise defined in this Final Order shall have the meanings ascribed to them in the Motion.

6003 and 6004, and Local Rule 9013-1, (i) authorizing the Debtors, in their discretion, to (a) pay all Prepetition Workforce Obligations and Compensation Obligations and (b) maintain the Compensation Obligations and Employee Benefits Programs, and honor and continue the Debtors' prepetition programs, policies, and practices as described in the Motion in the ordinary course of business; and (ii) granting certain related relief, all as more fully set forth in the Motion; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1. The Motion is GRANTED on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, in their discretion and business judgment, to (i) pay, maintain, or otherwise honor any and all Prepetition Workforce Obligations and Compensation Obligations, including for the avoidance of doubt, any and all obligations related to the Life/AD&D Insurance Policies[3] and the Workers' Compensation Program,[4] in an

---

[3] For the avoidance of doubt, the term "Life/AD&D Insurance Policies" shall include all accidental death and dismemberment insurance policies issued or providing coverage at any time to the Debtors or their predecessors, whether expired, current or prospective, and any agreements, documents, and instruments related thereto.

[4] For the avoidance of doubt, the term "Workers' Compensation Program" shall include all workers' compensation insurance policies issued or providing coverage at any time to the Debtors or their predecessors, whether expired, current or prospective, and any agreements, documents, and instruments related thereto.

amount not to exceed $28,063,800 in the aggregate on a final basis (the "Cap"); provided, however, that, for the avoidance of doubt, the Cap shall not apply to the Workers' Compensation Program, including any requirement for the Debtors to provide or post collateral or security related to insurance programs including the Workers' Compensation Program; (ii) honor, amend, modify, renew, replace, and continue their programs, policies, and practices described in the Motion that were in effect as of the Petition Date, in the ordinary course of business, and in the same manner and on the same basis as the Debtors honored, amended, modified, renewed, replaced, and continued such programs, policies, and practices before the Petition Date; and (iii) withhold and remit all federal, state, and local taxes relating to the Wages and Employee Benefit Obligations as required by applicable law; provided that in no event shall the Debtors pay any Prepetition Workforce Obligations and Compensation Obligations before such amounts are due and payable, and this Final Order shall not be deemed to allow the Debtors to accelerate any payment of any amounts of Prepetition Workforce Obligations that may be due and owing by the Debtors; provided, further, that the Debtors shall seek Court approval, upon a motion, of any modification that would implicate any portion of section 503(c) of the Bankruptcy Code. For the avoidance of doubt, nothing in this Final Order shall be deemed to authorize any payment, including amounts for bonuses, incentives, or severance, to insiders of the Debtors or that are otherwise subject to sections 503(c)(1) or 503(c)(2) of the Bankruptcy Code.

3. The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise honor the prepetition Compensation Obligations and continue their Compensation Obligations in the ordinary course of business and to pay any accrued, but unpaid amounts due thereunder, notwithstanding that such obligations may have arisen prior to the Petition Date.

4. Notwithstanding any other provision of this Final Order and absent further order of the Court, (i) payments or transfers to, or on behalf of, members of the Workforce on account of Prepetition Workforce Obligations, Compensation Obligations, or other obligations shall be limited by sections 507(a)(4) and (a)(5) of the Bankruptcy Code and capped at the amount afforded priority by those statutory subsections; and (ii) the Debtors are authorized, but not directed, to pay unpaid Paid Leave upon termination/resignation of an Employee in excess of the caps provided by section 507(a)(4) or (a)(5) of the Bankruptcy Code where applicable state law requires such payment.

5. Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is modified, if and to the extent it applies, to permit (a) current and former Employees to proceed with their claims under the Workers' Compensation Program (whether arising before or after the Petition Date) in the appropriate judicial or administrative forum; (b) direct action claims (whether arising before or after the Petition Date) to proceed in the appropriate judicial or administrative forum; (c) the Debtors to continue the Workers' Compensation Program and honor and pay all prepetition and postpetition amounts and other obligations relating thereto in the ordinary course of business; (d) any insurers and third party administrators to handle, administer, defend, settle and/or pay workers' compensation claims and direct action claims; and (e) insurers and third party administrators providing coverage for any workers' compensation or direct action claims to draw on any and all collateral provided by or on behalf of the Debtors therefor, including, but not limited to, if and when the Debtors fail to pay and/or reimburse any insurers and third party administrators for any amounts in relation to such claims. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and direct action claims.

6. The Debtors are authorized, but not directed, to reissue payment for the Prepetition Workforce Obligations and Compensation Obligations to replace any inadvertently dishonored or rejected payments. Further, the Debtors are authorized, but not directed, to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a prepetition check.

7. The Debtors are authorized (i) to honor Reimbursable Expenses and continue the Credit Card Programs in the ordinary course, including making ordinary course modifications thereto, (ii) to perform their obligations under the Credit Card Programs, (iii) to request further permission to pay outstanding prepetition expenses arising thereunder, to the extent applicable, and (iv) to pay any postpetition expenses in the ordinary course.

8. The Debtors are authorized, but not directed, to continue to operate under the Credit Card Programs and to pay or reimburse any and all Credit Card Obligations thereunder, whether incurred prepetition or postpetition (including, but not limited, any processing fees incurred in connection with the Credit Card Programs).

9. Nothing in this Final Order or the Motion: (a) alters, amends or modifies the terms and conditions of the Life/AD&D Insurance Policies and the Workers' Compensation Program, including, but not limited to, (i) the obligation, if any, of any insurer or third party administrator to pay any defense costs and amounts within a deductible and the right, if any, of an insurer or third party administrator to seek reimbursement from the Debtors for defense costs and any amounts within a deductible, (ii) the obligation, if any, of the Debtors to reimburse any insurer or third party administrator therefor, and (iii) the right, if any, of any insurer or third party administrator to draw on and apply any collateral (to the extent it has valid, enforceable, perfected and non-avoidable liens and/or security interests on such collateral) to the obligations, if any, under the Life/AD&D Insurance Policies and the Workers' Compensation Program to the extent that the

5

Debtors fail to reimburse the insurer or third party administrator therefor (and, if and to the extent applicable, the automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit such); (b) relieves the Debtors of any of their obligations under the Life/AD&D Insurance Policies and the Workers' Compensation Program; (c) creates or permits a direct right of action against any insurer or third party administrator; or (d) precludes or limits, in any way, the rights of any insurer to contest and/or litigate the existence, primacy and/or scope of available coverage under the Life/AD&D Insurance Policies and the Workers' Compensation Program.

10. The Debtors' banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay Prepetition Workforce Obligations and Compensation Obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date; *provided* that sufficient funds are available in the applicable bank accounts to make such payments. The Debtors' banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order, and any such bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

11. Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates (or the Committee) with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates (or the Committee) with

respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

12. Nothing in this Final Order shall create any obligation by Freedom VCM, Inc. or Freedom VCM Interco, Inc. (together, the "HoldCo Debtors") to pay any amounts in connection with this Final Order, and none of the HoldCo Debtors' assets will be used to satisfy any other Debtors' obligations in connection with this Final Order; provided, that the Debtors reserve the right to request that the Court later determine whether the HoldCo Debtors should satisfy such obligations.

13. Nothing in this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

14. Nothing in this Final Order, nor as a result of any payment made pursuant to this Final Order, shall be deemed or construed as a waiver of the right of Debtors (or the Committee), or shall impair the ability of Debtors (or the Committee), to contest the validity and amount of any payment made pursuant to this Final Order.

15. Nothing in this Final Order shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

16. Notwithstanding anything to the contrary set forth herein, any payment made, or authorization contained, hereunder shall be subject in all respects to the Approved Budget (as such term is defined in the order approving the Debtors' postpetition financing agreements).

17. The Debtors are authorized, but not directed, to take any and all actions necessary to effectuate the relief granted herein.

18. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

19. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

# Exhibit 1

| Compensation | Final Period |
|---|---|
| Gross Wages | $13,610,000 |
| Temporary Employees / Independent Contractors | $140,000 |
| Payroll Processing Services | $216,000 |
| Commissions | $2,162,000 |
| Non-Insider Severance | $115,000 |
| Union Employee Attendance Awards | $150 |
| Withholding Obligations | 4,320,000 |
| Expense Reimbursement | $113,600 |
| Concur / ExpenseWire Administrative Fees | $24,200 |
| FRG Card Program | $329,000 |
| PSP Card Program | $1,966,000 |
| **Employee Benefits Programs** | |
| Benefits Administrators | $35,000 |
| Medical Plans | $2,465,000 |
| Prescription Plan | $350,000 |
| Dental Plan | $141,000 |
| Stop-Loss Policy | $230,000 |
| Flex Spending Account - Employee Deductions | $13,200 |
| Health Savings Account - Employee Deductions | $24,100 |
| Health Savings Account - Employer Contributions | $19,700 |
| Basic Life / AD&D | $94,000 |
| Short-Term - Disability | $135,000 |
| CorVel Claims Administrator | $70,850 |
| Workers' Compensation Program | $1,490,000 |
| **Total:** | **$28,063,800**[1] |

---

[1] For the avoidance of doubt, the Cap shall not apply to the Workers' Compensation Program, including any requirement for the Debtors to provide or post collateral or security related to insurance programs including the Workers' Compensation Program.