# EXHIBIT A

**Revised Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket Nos. 14 & 132** |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME THE CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors") for entry of an interim order [Docket No. 132]

(the "Interim Order") and final order (this "Final Order"): (i) authorizing the Debtors to assume

that certain *Letter Agreement Governing Inventory Disposition*, by and between Hilco Merchant

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), B. Riley Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home and Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Consulting Agreement, as applicable.

Resources, LLC (the "Consultant") and American Freight LLC, dated as of November 3, 2024 (as amended, revised, or supplemented from time to time, the "Consulting Agreement"), (ii) authorizing and approving the Store Closing Sales of American Freight's Merchandise by means of "store closings," "sale on everything," "everything must go," or similar themed Sales in American Freight's retail Stores identified in the Consulting Agreement, with such Sales to be free and clear of all liens, claims, and encumbrances, (iii) authorizing the Sale of the furniture, fixtures, and equipment located in the Stores or otherwise under American Freight's control, (iv) approving the Store Closing Procedures for conducting the Store Closing Sales, and (v) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core matter pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having entered the Interim Order on November 6, 2024; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, CONCLUDED, AND DETERMINED THAT:**[3]

A.      The Debtors' decision to enter into, perform under, and make payments required by the Consulting Agreement, a copy of which is attached hereto as <u>Schedule 1</u>, is a reasonable exercise of the Debtors' sound business judgment, consistent with their fiduciary duties, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest.

B.      The Consulting Agreement, and the consideration to be paid thereunder, was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith, and from arm's-length bargaining positions.  The terms and conditions set forth in the Consulting Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.

C.      The Store Closing Procedures, a copy of which is attached hereto as <u>Schedule 2</u>, are reasonable and appropriate, will provide an efficient means for the Debtors to dispose of the Store Closure Assets, and are in the best interest of the Debtors' estates.

D.      The Store Closing Sales, in accordance with the Store Closing Procedures and with the assistance of the Consultant, will provide an efficient means for the Debtors to liquidate and dispose of the Merchandise as quickly and effectively as possible, and are in the best interest of the Debtors' estates.

E.      The Debtors and the Consultant may sell the Store Closure Assets free and clear of all liens, claims, and encumbrances as provided for herein because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those

---

[3]     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

holders of any such encumbrances who did not object, or who withdrew their objections, to the entry of this Final Order are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of any such encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having such encumbrances attach to the Debtors' share of proceeds from the sale of the applicable Store Closure Assets with the same validity and priority and to the same extent and amount that any such Encumbrances had with respect to such Store Closure Assets.

F.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

G.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

H.      The Consultant is not an "insider" of the Debtors as such term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling shareholders exists between the Consultant and the Debtors.

I.      The entry of this Final Order is in the best interest of the Debtors and their estates, creditors, and all other parties in interest herein.

J.      Time is of the essence in effectuating the Consulting Agreement and the Store Closing Sales contemplated therein without interruption.  The conduct of the Store Closing Sales will provide an efficient means for the Debtors to dispose of the Store Closure Assets.  The Store Closing Sales under the Consulting Agreement must be permitted to maximize the value that the Consultant may realize from the Store Closing Sales and the value that the Debtors may realize from assuming the Consulting Agreement.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as provided herein.

2.      The Debtors and the Consultant are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Final Order.

3.      To the extent of any conflict between this Final Order, the Interim Order, the Store Closing Procedures, and the Consulting Agreement, the terms of this Final Order shall control over all other documents and the Store Closing Procedures shall control over the Consulting Agreement.

4.      Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall take effect immediately upon its entry.

**II.      Authority to Assume the Consulting Agreement**

5.      The assumption of the Consulting Agreement, pursuant to this Final Order, by the Debtors pursuant to section 365 of the Bankruptcy Code is approved on a final basis.  The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreement pursuant to sections 363 and 365 of the Bankruptcy Code, including making payments required by the Consulting Agreement, including without limitation the payment of fees (including, without limitation, any applicable base fees, Additional Incentive Compensation, and proceeds of sales of Additional Consultant Goods, if any) and reimbursement of expenses, to the Consultant without the need for any application of the Consultant or a further order of this Court, and such amounts shall be paid free and clear of any and all liens, claims and encumbrances.  Consultant's fees and expenses shall be paid from the gross proceeds of the Store Closing Sales (including proceeds of sales of Additional Consultant Goods, if any), without adherence to any weekly, monthly or aggregate limitation in a cash collateral budget entered in connection with the Chapter 11 Cases, but shall be subject to the terms of the Consulting Agreement itself, including as to any expense budget attached thereto.

6.      Subject to the restrictions set forth in this Final Order and the Store Closing Procedures, the Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Store Closing Sales. Each of the transactions contemplated by the Consulting Agreement and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Store Closing Sales from the Petition Date are hereby approved and ratified.

7.      The Debtors are authorized to amend the Consulting Agreement from time to time in accordance with its terms, including by extending the Sale Term, without further order of this Court.

8.      Notwithstanding anything to the contrary in the Consulting Agreement, including in Section F thereof, the Debtors and their estates shall not indemnify the Consultant for any damages arising primarily out of the Consultant's fraud, willful misconduct, or gross negligence; or the Consultant's breach of the Consulting Agreement.

## III.      Authority to Engage in Store Closing Sales

9.      The Debtors and the Consultant are authorized, on an final basis, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately conduct the Store Closing Sales in accordance with this Final Order, the Store Closing Procedures, and the Consulting Agreement; provided, however, that in the event the Debtors determine to conduct the Store Closing Sales at a Store that is not identified on Exhibit A to the Consulting Agreement, the Debtors shall provide seven (7) days prior notice to the landlord under the Debtors' lease agreement with respect to the Store before commencing the Store Closing Sales.

10.     The Store Closing Procedures are approved in their entirety.

11.     The Debtors are authorized to discontinue operations at the Stores, at the conclusion of the applicable Store Closing Sales, in accordance with this Final Order and the Store Closing Procedures.

12.     All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Final Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

13.     Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Store Closing Sales and to take the related actions authorized herein.

**IV.     Conduct of the Store Closing Sales**

14.     All newspapers and other advertising media in which the Store Closing Sales may be advertised and all landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Store Closing Sales and the sale of Merchandise, FF&E and Additional Consultant Goods pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise, FF&E and Additional Consultant Goods in the manner contemplated by and in accordance with this Final Order, the Store Closing Procedures, and the Consulting Agreement.

15.     The Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closing Sales without necessity of further order of this Court as provided in the Consulting Agreement or the Store Closing Procedures, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," "going out of business" or

similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), and use of sign-walkers and street signage.

16.    Except as expressly provided in the Consulting Agreement, any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the store closings or the Store Closing Sales (including the sale of the Merchandise, FF&E and Additional Consultant Goods), the rejection of leases, abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Store Closing Sales or the store closings.  Breach of any such provisions in these Chapter 11 Cases in conjunction with the store closings or the Store Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; provided that the store closings and the Store Closing Sales are conducted in accordance with the terms of this Final Order and the Store Closing Procedures.  The Debtors, the Consultant, and landlords of the closing locations are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures without further order of this Court, and such Side Letters shall be binding as among the Debtors and any such landlords.  In the event of any conflict between the Store Closing Procedures, this Final Order, and any Side Letter, the terms of such Side Letter shall control.

17.    Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 26 and 27 herein shall apply), no person or entity, including, but not limited to, any landlord, shopping center manager, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the store closings, the Store Closing Sales, or

the sale of Merchandise, FF&E, or Additional Consultant Goods, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such Store Closing Sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, or creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the store closings or the Store Closing Sales and/or (b) instituting any action or proceeding in any court (other than in the Court), or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords, at the Stores that might in any way directly or indirectly obstruct, otherwise interfere with, or adversely affect the conduct of the store closings, the Store Closing Sales or other liquidation sales at the Stores, and/or seek to recover damages for breaches of covenants or other provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

18.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment, and other assets of American Freight for the purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Final Order.

19.     All Sales of Store Closure Assets and Additional Consultant Goods shall be "as is" and final.  However, as to the Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

20.     The Consultant shall not be liable for sales taxes except with respect to the Additional Consultant Goods and except as otherwise expressly provided in the Consulting Agreement and the payment of any and all sales taxes (except with respect to the Additional Consultant Goods or as expressly provided in the Consulting Agreement) is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due; provided that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultant shall collect, remit to the Debtors, and account for sales taxes as, and to the extent provided in, the Consulting Agreement.  This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

21.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Store Closure Assets, and all Sales of Store Closure Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests; provided, however, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the Sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

22.     To the extent that the Debtors propose to sell or abandon FF&E which may contain personal and/or confidential information about American Freight's employees and/or customers (the "Confidential Information"), American Freight shall remove the Confidential Information from such items of FF&E before such sale or abandonment.

23.     The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets and Additional Consultant Goods among the Stores. The Consultant is hereby authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement; provided that the Consultant and the Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law.

24.     Notwithstanding anything to the contrary in this Final Order or the Consulting Agreement, the Debtors shall not sell or abandon any property that the Debtors know is not owned by a Debtor without the owner's consent; provided that the Debtors will work in good faith with the owner of any such property to arrange for the return of the property to the owner; provided further, that the Debtors may abandon property owned by any landlord at the applicable Store in accordance with the terms of this Final Order; provided further, that the Debtors shall not abandon any property against which the Debtors know a third party has asserted a lien without providing notice to such party.

25.     Notwithstanding this or any other provision of this Final Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Consulting Agreement pursuant to an agency agreement or

otherwise ("Additional Assets").  Nothing contained in this Final Order shall be deemed to prohibit the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law.

## V.    Dispute Resolution Procedures with Governmental Units

26.    Nothing in this Final Order, the Consulting Agreement, or the Store Closing Procedures, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Consulting Agreement, or the Store Closing Procedures shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code.  The store closings and the Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").    Nothing in this Final Order, the Consulting Agreement, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Final Order, or otherwise,

12

pursuant to paragraph 30 herein. Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

27.    Provided that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Consulting Agreement, and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, to the extent that the sale of Store Closure Assets is subject to any Liquidation Sale Laws, including any federal, state, or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or fast pay laws, bulk sale laws, including laws restricting safe, professional, and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Store Closing Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the Debtors and the Consultant will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Final Order and the Store Closing Procedures without the necessity of further showing compliance with any Liquidation Sale Laws.

28.    To the extent that a dispute arising from or related to the Store Closing Sales, this Final Order, the Consulting Agreement, or the Store Closing Procedures, which disputes relate to any Liquidation Sales Laws, the following Dispute Resolution Procedures shall apply:

(i)    Within three (3) business days after entry of this Final Order, the Debtors will serve by first-class mail copies of this Final Order, the Consulting Agreement, and the

Store Closing Procedures on the following: (A) the Attorney General's office for each state where the Store Closing Sales are being held, (B) the county consumer protection agency or similar agency for each county where the Store Closing Sales are being held, (C) the division of consumer protection for each state where the Store Closing Sales are being held, (D) the chief legal counsel for the local jurisdiction, and (E) the landlords for the Stores (collectively, the "<u>Dispute Notice Parties</u>").

(ii)    To the extent that there is a dispute arising from or relating to the Store Closing Sales or this Final Order, as applicable, the Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "<u>Reserved Dispute</u>"), the Court shall retain jurisdiction to resolve the Reserved Dispute.  Any time within ten (10) days following entry of the Final Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (the "<u>Dispute Notice</u>"), explaining the nature of the dispute to: (A) proposed counsel to the Debtors, (i) Willkie Farr & Gallagher, LLP, 787 7th Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com), Betsy L. Feldman (bfeldman@willkie.com), and Joseph R. Brandt, Esq. (jbrandt@willkie.com), and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Edmon L. Morton, Esq. (emorton@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), and Allison S. Mielke, Esq. (amielke@ycst.com); (B) the Consultant, Attn: (i) c/o Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax:  847-849-0859, Attn: T. Kellan Grant; and (ii) (1) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox (sfox@riemerlaw.com), and (2) Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com); (C) the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"), J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); (D) counsel to the official committee appointed in these Chapter 11 Cases (the "<u>Committee</u>"), Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th  floor, Wilmington, Delaware 19801, Attn:  Bradford J. Sandler (bsandler@pszjlaw.com) and Colin R. Robinson (crobinson@pszjlaw.com); and (E) the landlord of any Store related to the Reserved Dispute, including their counsel of record, if known.  If the Debtors, the Consultant and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "<u>Dispute Resolution Motion</u>").

(iii)    In the event that a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of this Final Order nor the conduct of the Debtors pursuant to this Final Order violates such Liquidation Sale Laws.

Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Final Order, absent further order of the Court.  Upon the entry of this Final Order, the Court grants authority for the Debtors and the Consultant to conduct the Store Closing Sales pursuant to the terms of this Final Order, the Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(iv)    If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (ii) and (iii) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

29.    Subject to paragraphs 26 and 27 above, each and every federal, state, or local agency, departmental or Governmental Unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Store Closing Sales.

30.    Provided that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Consulting Agreement, and the Store Closing Procedures, and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and the Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Final Order and the Store Closing Procedures without the necessity of further showing compliance with any such

Liquidation Sale Laws; provided that the Consultant and the Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law.

31.     Within three (3) business days of entry of this Final Order, the Debtors shall serve copies of this Final Order, the Consulting Agreement, and the Store Closing Procedures via E-mail, facsimile or regular mail, on: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney's Office for the District of Delaware; (iii) those creditors holding (a) the fifty (50) largest unsecured claims against the Debtors' estates, and (b) to the extent not already served pursuant to the foregoing, those creditors holding the twenty (20) largest unsecured claims against the estate of American Freight; (iv) counsel to the ABL Lenders; (v) counsel to the Ad Hoc Group of First Lien Secured Lenders; (vi) counsel to the Second Lien Term Loan Lenders and HoldCo Term Loan Lenders; (vii) counsel to the DIP Agent; (viii) counsel to the DIP Lenders; (ix) counsel to the Committee, (x) the Internal Revenue Service; (xi) the Attorney General's office for each state where the Store Closing Sales are being held; (xii) the division of consumer protection for each state where the Store Closing Sales are being held; (xiii) the chief legal counsel for the local jurisdiction; and (xiii) the landlords for the Stores.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VI.    Other Provisions

32.     The Debtors are authorized, but not directed, to implement and make payments under the Store Bonus Program.  For the avoidance of doubt, no Store Closing Bonuses shall be paid to any executives, directors, or "insiders," as that term is defined in the Bankruptcy Code, absent further Court order.

33.     The Consultant is authorized to supplement the Merchandise in the Stores with Additional Consultant Goods; provided that any such Additional Consultant Goods must be of like

kind and no lesser quality than the Merchandise. The Additional Consultant Goods shall be purchased by the Consultant and delivered to the Stores at the Consultant's sole expense (including as to labor, freight, and insurance relative to shipping such Additional Consultant Goods to the Stores). Sales of Additional Consultant Goods shall otherwise be made in conjunction with the Store Closing Sales and be run through the Debtors' cash register systems; provided, however, that the Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number or in such other manner that shall distinguish the Additional Consultant Goods from the Merchandise. The Consultant and the Debtors shall cooperate to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could distinguish the Additional Consultant Goods from the Merchandise.

34.     All transactions relating to the Additional Consultant Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from the Consultant to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "UCC") and not a consignment for security purposes.

35.     The Consultant shall pay to the Debtors an amount equal to five percent (5%) of the gross proceeds (excluding sales taxes) from the sale of Additional Consultant Goods in the Stores completed during the Sale Term. All remaining amounts from the sale of the Additional Consultant Goods shall be the exclusive property of the Consultant, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their proceeds. At the Consultant's sole cost and expense, the Debtors shall insure the Additional Consultant Goods at the Consultant's request and, if required, promptly file any proofs of loss with regard to the same with the Debtors' insurers. The Consultant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

36.     The Consultant is hereby granted a first-priority security interest in and lien on (a) the Additional Consultant Goods and (b) the Additional Consultant Goods proceeds, which security interest shall be deemed perfected, on a final basis, pursuant to this Final Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties; provided that the Consultant is authorized to deliver any notices and file any financing statements under the applicable UCC and amendments thereof with respect to the Consultant's interest in the Additional Consultant Goods and any proceeds from the sale thereof.

37.     With respect to each Closing Store, at the conclusion of the Sale at the Store, the Consultant shall vacate the Closing Store; provided that Consultant may abandon any FF&E not sold in the Sale at the closing store at the conclusion of the Sale at such Closing Store (the "Termination Date"), without cost or liability of any kind to the Consultant.  The Debtors will have the option to remove the FF&E prior to the Termination Date.  For the avoidance of doubt, as of the Termination Date with respect to each closing store, the Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E.

38.     The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against the Consultant, in each case, other than as expressly provided for in the Consulting Agreement, as modified by this Final Order.

39.     To the extent the Debtors are subject to any state "fast pay" laws in connection with the Store Closing Sales, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of:  (a) American Freight's next regularly scheduled payroll; and (b) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

40.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, other than assumption of the Consulting Agreement; (f) a waiver or limitation of the Debtors' rights or the rights of any other person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

41.     Except as otherwise provided herein with respect to the Consultant's base fees, any Additional Incentive Compensation (if applicable), and Consultant's entitlement to receive the gross proceeds of sales of Additional Consultant Goods (net of any applicable Additional Consultant Goods Fee, if any), nothing herein shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

42.     Except as otherwise provided herein with respect to the Consultant's base fees, any Additional Incentive Compensation (if applicable), and Consultant's entitlement to receive the gross proceeds of sales of Additional Consultant Goods (net of any applicable Additional

Consultant Goods Fee, if any), nothing herein, nor as a result of any payment made pursuant to this Final Order, shall be deemed or construed as a waiver of the right of Debtors, or shall impair the ability of Debtors, to contest the validity and amount of any payment made pursuant to this Final Order.

43.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

44.     Subject to Paragraph 5 hereof, notwithstanding anything to the contrary set forth herein, any payment made, or authorization contained, hereunder shall be subject in all respects to the Approved Budget (as such term is defined in the order approving the Debtors' postpetition financing agreements).

45.     Nothing in this Final Order shall amend, alter, or otherwise modify the terms of the *Final Order (I) Authorizing the Debtors to (a) Obtain Senior Secured Priming Superpriority Postpetition Financing and (b) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, as it relates to any tax reserve established as adequate protection for the Tax Liens of the Texas Taxing Authorities (each as defined therein).

46.     Upon request, which request shall not be made more than once per week, the Debtors shall provide the Committee's professionals with a status update in connection with the Store Closing Sales.

47.     Notwithstanding anything to the contrary in the Interim Order, this Order, the Store Closing Procedures, the Consulting Agreement, or any Side Letter(s): (a) none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one

hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred pursuant to any Store Closing Sale(s) without the express prior written consent of the applicable insurer and/or third-party administrator; and (b) nothing alters or modifies the terms and conditions of any insurance policies or related agreements issued by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their successors, and solely in their roles as insurers).

48.     Notice of the Motion as provided therein is deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the local rules of this Court are satisfied by such notice.

49.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

50.     Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002, to the extent possible.

51.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

52.     This Court shall retain jurisdiction with regard to all issues or disputes relating to this Final Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the store closings or Store Closing Sales, (c) any other disputes related to the store closings or Store Closing Sales, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims,

encumbrances, and other interests.  No such parties or person shall take any action against the Debtors, the Consultant, the landlords, the store closings, or the Store Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

## <u>SCHEDULE 1</u>

**Consulting Agreement**



*Execution Version*

November 3, 2024

<u>*VIA EMAIL*</u>
American Freight, LLC
109 Innovation Court, Suite J
Delaware, OH 43015
Attn: Andrew Kaminsky

Re:   **Letter Agreement Governing Inventory Disposition**

Dear Mr. Kaminsky:

By executing below, subject to section R hereof, this letter shall serve as an agreement (this "<u>Agreement</u>") between Hilco Merchant Resources, LLC, on the one hand ("<u>Consultant</u>" or a "<u>Party</u>"), and American Freight FFO, LLC, Franchise Group Newco Intermediate AF, LLC, and each of Franchise Group Newco Intermediate AF, LLC's subsidiaries on the other hand (collectively, "<u>Merchant</u>" or a "<u>Party</u>" and together with the Consultant, the "<u>Parties</u>"), under which Consultant shall act as the exclusive consultant for the purpose of conducting a sale of certain Merchandise (as defined below) at (i) the Merchant's stores and distribution centers as set forth on <u>Exhibits A and C</u> hereto, respectively, and (ii) any other stores or facilities designated for disposition by Merchant from the date of this Agreement (each a "<u>Store</u>" and collectively, the "<u>Stores</u>") through a "Store Closing", "Going Out of Business", "Everything Must Go", "Everything on Sale" or similar themed sale (the "<u>Sale</u>").

A.   <u>Merchandise</u>

For purposes hereof, "<u>Merchandise</u>" shall mean all goods, saleable in the ordinary course, located in the Stores or in the Distribution Centers (as defined below) on the Sale Commencement Date (as defined below) or received in the Stores during the Sale Term.  "Merchandise" does not mean and shall not include: (1) goods that belong to sublessees, licensees or concessionaires of Merchant; (2) owned furnishings, trade fixtures, equipment and improvements to real property that are located in the Stores (collectively, "<u>FF&E</u>"); (3) damaged or defective merchandise that cannot be sold; or (4) revenue generated from the sale of services such as, but not limited to, warranty protection, home delivery and financing rebates, and profit share fees.  For the avoidance of doubt, "Merchandise" includes scratch and dent appliances and floor model furniture.

B.   <u>Sale Term</u>

For each Store, the Sale shall commence on November 4, 2024 (the "<u>Sale Commencement Date</u>") and conclude no later than December 29, 2024 (the "<u>Sale Termination Date</u>"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Sale at any one or more Stores on a Store-by-Store basis prior to the Sale Termination Date.  The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "<u>Sale Term</u>."  At the conclusion of the Sale, Consultant shall surrender the premises for each Store to Merchant in broom clean condition and in accordance with the lease requirements for such premises; provided, however, that Merchant shall bear all costs and expenses associated with surrendering the premises

in accordance with the lease requirements for such premises according to a budget mutually agreed to between the Consultant and Merchant. At the conclusion of the Sale at each Store, Consultant shall photographically document the condition of each such Store and provide such photographs to Merchant within three (3) business days thereof. Photographs shall reference with specificity each Store by number, name, and location.

**C.** **Project Management**

(i)   Consultant's Undertakings

During the Sale Term, Consultant shall, in collaboration with Merchant, (a) provide qualified supervisors (the "Supervisors") engaged by Consultant to help oversee the management of the Stores and Distribution Centers; (b) recommend appropriate point-of-sale and external advertising for the Stores, approved in advance by Merchant; (c) recommend appropriate discounts of Merchandise, staffing levels for the Stores, and appropriate bonus and incentive programs, if any, for the Stores' employees, all of which shall be approved in advance by Merchant; (d) help oversee display of Merchandise for the Stores and Distribution Centers; (e) to the extent that information is available, evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant, including in accordance with the provisions of any confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (h) assist Merchant with determining the necessity for obtaining any applicable permits and governmental approvals to conduct the Sale, including working with Merchant to obtain each in a timely and orderly fashion and preparing or causing to be prepared all forms necessary to assist in Merchant's securing any applicable permits and governmental approvals necessary to conduct the Sale, the costs and expenses of which shall be paid by Merchant and shall be in addition to the costs and expenses set forth on the Expense Budget; (i) at Merchant's sole discretion, implement Consultant's affiliate CareerFlex program for Merchant's Store level and other employees; (j) meet with Merchant, on a weekly or as needed basis, to review sales, sales reporting, and expenses in an effort to minimize expenses and maximize overall net recovery of the Sale; and (k) provide such other related services deemed necessary or appropriate by Merchant and Consultant.

The Parties expressly acknowledge and agree that Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Consultant's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

(ii)   Merchant's Undertakings

During the Sale Term, Merchant shall (a) be the employer of the Stores' employees, other than the Supervisors; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Consultant and the Supervisors; (f) execute all agreements determined by the Merchant and Consultant to be necessary or desirable for the operation of the Stores during the Sale; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores and any computer servers necessary to operate the Sale; (h) apply for and obtain, with Consultant's

assistance and support, all applicable permits and authorizations (subject to any Approval Order (as defined below), including landlord approvals and consents) for the Sale; (i) at Merchant's sole discretion, assist Consultant with implementing the CareerFlex program for Merchant's Store level and other employees; (j) use commercially reasonable efforts to transfer all Merchandise from the Distribution Centers to the Stores during the Sale Term; and (k) ensure that Consultant has quiet use and enjoyment of the Stores during the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including (without limitation) customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Consultant.

The Parties expressly acknowledge and agree that Consultant shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Consultant.

Merchant or its auditors shall have the right, upon reasonable written notice to Consultant (with email being sufficient), to inspect, at reasonable times and locations, such documentation, records, and equipment that reasonably relate to the services provided for under this Agreement for purposes of ensuring performance of Consultant's obligations under this Agreement.

**D.**    <u>**The Sale**</u>

All sales of Merchandise shall be made on behalf of Merchant.  Consultant does not have, nor shall it have, any right, title or interest in the Merchandise.  All sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant or, as applicable, as ordered by the Bankruptcy Court (as defined below).

**E.**    <u>**Consultant Fee and Expenses in Connection with the Sale**</u>

In consideration of its services under this Agreement, Consultant shall earn a base fee equal to two percent (2.0%) of the Gross Proceeds of Merchandise sold at the Stores and the Distribution Centers.  For purposes of this Agreement, "Gross Proceeds" means gross receipts calculated using the "gross rings" method, net of applicable sales taxes; provided, however, that it is expressly understood and agreed that Gross Proceeds shall not include proceeds of sales made prior to the Sale Commencement Date or after the Sale Termination Date.

In addition to the base fee, and not in lieu of the base fee, the Consultant shall be entitled to, from Gross Proceeds, an additional fee based upon the Gross Recovery Percentages achieved as set forth in the following table (the "<u>Additional Incentive Compensation</u>").  The Additional Incentive Compensation shall be equal to the aggregate sum of the percentages set forth in the "Additional Incentive Compensation" column of the table (e.g., calculated back to first dollar) for the corresponding Gross Recovery Percentage achieved.  It is understood and agreed that no Additional Incentive Compensation shall be earned or payable where the Gross Recovery Percentage is less than 114.0%:

3

| Gross Recovery Percentage | Additional Incentive Compensation |
|---|---|
| Between 114.0% and 115.50% | An additional 0.25% of Gross Proceeds (total fee equal to 2.25% of Gross Proceeds) |
| Above 115.50% | An additional 0.25% of Gross Proceeds (total fee equal to 2.50% of Gross Proceeds) |

For purposes of the Additional Incentive Compensation:

"**Cost Value**" with respect to each item of Merchandise sold shall mean the lower of (i) the lowest per unit vendor cost in the File or the Merchant's books and records, maintained in the ordinary course consistent with historic practices; or (ii) the Retail Price.

"**File**" shall mean those spreadsheets provided by Merchant and labeled "10.05.24 Inventory by SKU & Location & Bucket.xlsx."

"**Gross Recovery Percentage**" shall mean the Gross Proceeds divided by the sum of the aggregate Cost Value of all of the Merchandise.

"**Retail Price**" shall mean with respect to each item of Merchandise sold, the retail price reflected at the register for such item, excluding the discount granted in connection with such sale.

Merchant shall be responsible for all expenses of the Sale, including (without limitation) all Store-level operating expenses, all costs and expenses related to Merchant's other retail store operations, Merchant's costs for operating the Distribution Centers, and Consultant's other reasonable and documented out of pocket expenses. To control expenses of the Sale, Merchant and Consultant have established an appropriate budget (the "Expense Budget") of certain delineated expenses, including (without limitation) payment of the costs of supervision (including (without limitation) Supervisors' wages, fees, travel, and deferred compensation) and advertising costs (including signage and the shipping, freight, and sales tax related thereto where applicable). The Expense Budget for the Sale is attached hereto as Exhibit B. The Expense Budget may only be modified by mutual agreement of Consultant and Merchant. The costs of supervision set forth on Exhibit B include, among other things, industry-standard deferred compensation.

All accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Consultant) shall be reconciled on every Wednesday for the prior week. All fees, reasonable expenses, or other reasonable amounts reimbursable or payable to Consultant shall be paid, in accordance with the approved Expense Budget, within seven (7) days after each such weekly reconciliation, upon Merchant's receipt and review of a reasonably detailed invoice. The Parties shall complete a final reconciliation and settlement of all amounts payable to Consultant and contemplated by this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty five (45) days following the Sale Termination Date for the last Store.

Upon execution of this Agreement, the Merchant shall pay by wire transfer to the Consultant an advance payment of costs and expenses delineated in the Expense Budget of $3,300,000 (the "Expense Advance"). The Expense Advance shall be held by Consultant and applied towards

Expense Budget items as incurred.  Any portion of the Expense Advance not so used shall be returned to Merchant within three days following the final reconciliation.

**F.**    **Indemnification**

    (i)    Merchant's Indemnification

Merchant shall indemnify, defend, and hold Consultant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, principals, affiliates, and Supervisors (collectively, "Consultant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Consultant Indemnified Parties) against Consultant or a Consultant Indemnified Party, except claims arising from Consultant's negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Consultant's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law.

    (ii)    Consultant's Indemnification

Consultant shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, principals, and affiliates (other than the Consultant or the Consultant Indemnified Parties) (collectively, "Merchant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Consultant or the Consultant Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Consultant; (c) any liability or other claims made by Consultant's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Consultant's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Consultant or any of the Consultant Indemnified Parties and (e) any claims made by any party engaged by Consultant as an employee, agent, representative or independent contractor arising out of such engagement.

**G.**    **Insurance**

    (i)    Merchant's Insurance Obligations

Merchant shall maintain throughout the Sale Term, on such terms and conditions as are consistent with Merchant's ordinary course operations, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability

insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Consultant to be named an additional insured with respect to all such policies. At Consultant's request, Merchant shall provide Consultant with a certificate or certificates evidencing the insurance coverage required hereunder and that Consultant is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements.

(ii)     Consultant's Insurance Obligations

Consultant shall maintain, throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least Two Million dollars ($2,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and property in or in connection with Consultant's provision of services at the Stores. Consultant shall name Merchant as an additional insured and loss payee under such policy, and upon execution of this Agreement provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder. In addition, Consultant shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements. Further, should Consultant employ or engage third parties to perform any of Consultant's undertakings with regard to this Agreement, Consultant will ensure that such third parties are covered by Consultant's insurance or maintain all of the same insurance as Consultant is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

## H.     **Representations, Warranties, Covenants and Agreements**

(i)     Merchant warrants, represents, covenants and agrees that (a) Merchant is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein, (c) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices; (d) all normal course hard markdowns on the Merchandise have been, and will be, taken consistent with customary Merchant's practices, and (e) the Stores will be operated in the ordinary course of business in all respects, other than those expressly agreed to by Merchant and Consultant.

(ii)     Consultant warrants, represents, covenants and agrees that (a) Consultant is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform the Consultant's obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Consultant and this Agreement constitutes a valid and binding obligation of Consultant enforceable against Consultant in accordance with its terms and conditions, and the

consent of no other entity or person is required for Consultant to fully perform all of its obligations herein, (c) Consultant shall comply with and act in accordance with any and all applicable state and local laws, rules, and regulations, and other legal obligations of all governmental authorities, (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, and (e) Consultant will not take any disciplinary action against any employee of Merchant.

## I.    Furniture, Fixtures and Equipment

Consultant shall sell the FF&E in the Stores from the Stores themselves.  Merchant shall be responsible for all reasonable and documented costs and expenses incurred by Consultant in connection with the sale of FF&E, which costs and expenses shall be incurred pursuant to a budget or budgets to be established from time to time by mutual agreement of the Parties.  Consultant shall have the right to abandon at the Stores any unsold FF&E. Consultant shall also sell the FF&E located in the Merchant's distribution centers identified on Exhibit C hereto (the "Distribution Centers").

In consideration for providing the services set forth in this section I, Consultant shall be entitled to a commission from the sale of the FF&E equal to fifteen percent (15.0%) of the Gross Proceeds of the sale of the FF&E.

Consultant shall remit to Merchant all Gross Proceeds from the sale of FF&E.  During each weekly reconciliation described in section E above, Consultant's FF&E fee shall be calculated, and Consultant's calculated FF&E fee, along with any reasonable FF&E costs and expenses then incurred, shall be paid within seven (7) days after each such weekly reconciliation, upon Merchant's receipt and review of a reasonably detailed invoice by the Merchant in accordance with the terms of this Agreement.

## J.    Termination

The following shall constitute "Termination Events" hereunder:

(a)    Merchant's or Consultant's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured ten (10) days after receipt of written notice thereof to the defaulting Party; provided, that if either Party's performance of any such obligations is prevented by reason of any cause(s) beyond such Party's reasonable control, such shall not constitute a Termination Event, unless such failure to perform cannot be remedied within the Sale Term;

(b)    Any representation or warranty made by Merchant or Consultant is untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(c)    the Sale is terminated or materially interrupted or impaired for any reason other than (i) an event of default by Consultant or Merchant, or (ii) any cause(s) beyond the Parties' reasonable control.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing fourteen (14) business days' written notice

thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default. If this Agreement is terminated, Merchant shall be obligated to pay Consultant all amounts due under this Agreement through and including the termination date.

**K.**    **Notices**

All notices, certificates, approvals, and payments provided for herein shall be sent by fax or by recognized overnight delivery service as follows: (a) To Merchant: at the address listed above; with copy to Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, New York 10019, Attn: Debra M. Sinclair, Esq., at dsinclair@willkie.com, Betsy L. Feldman, Esq., at bfeldman@willkie.com, and Joseph R. Brandt, Esq., at jbrandt@willkie.com; (b) To Consultant: c/o Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax:  847- 849-0859, Attn: T. Kellan Grant; or (c) such other address as may be designated in writing by Merchant or Consultant.

**L.**    **Independent Consultant**

Consultant's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect. No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement. Merchant shall have no control over the hours that Consultant or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Consultant is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**M.**    **Non-Assignment**

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party; provided, however, that Consultant may syndicate this transaction to one or more of the national liquidation firms upon prior written notice thereof to Merchant. In the event of such syndication, Consultant shall remain responsible for all obligations under this Agreement and the fees, expenses, or other amounts owed to Consultant under this Agreement shall not increase on account of the syndication. No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

**N.**    **Severability**

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable. If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**O.** **Governing Law, Venue, Jurisdiction and Jury Waiver**

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of Delaware (without reference to the conflicts of laws provisions therein) and, as applicable, the Bankruptcy Code (as defined below). Merchant and Consultant waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross-complaint in any action, proceeding and/or hearing brought by either Consultant against Merchant or Merchant against Consultant on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and Consultant, any claim of injury or damage or the enforcement of any remedy under any law, statute or regulation, emergency or otherwise, now or hereafter in effect.

In the event of Merchant's filing under chapter 11 of the Bankruptcy Code, any legal action, suit, or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Merchant (the "Bankruptcy Court"), and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or *forum non conveniens*.

**P.** **Entire Agreement**

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement. All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

**Q.** **Execution**

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

**R.** **Bankruptcy**

In the event of Merchant's filing under chapter 11 of the Bankruptcy Code, the effectiveness of this Agreement is subject to and contingent upon the entry of an order of the Bankruptcy Court, in form and substance reasonably acceptable to Consultant, authorizing the Merchant's entry into and approval of this Agreement (the "Approval Order"). As soon as reasonably practicable after the filing, Merchant shall prepare and file a motion seeking entry of the Approval Order (the "Motion"). Prior to filing the Motion, the Merchant shall share the Motion, proposed Approval Order and all related documents with Consultant. The Merchant shall use the Merchant's best efforts to ensure that the Approval Order shall specifically provide, among other things: (i) the approval of the payment of all

fees and reimbursement of expenses hereunder to Consultant without further order of the Bankruptcy Court and free and clear of all liens, claims and encumbrances; (ii) that all such payments of fees and reimbursement of expenses shall be made on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with this Agreement; (iii) that the payment of all fees and reimbursement of expenses to Consultant related to such Approval Order shall be included in any approved debtor-in-possession, cash collateral, or other post-petition financing budget as a condition to the assumption of this Agreement, but shall be payable pursuant to the Approval Order on a timely basis as an administrative expense regardless of their inclusion in such budgets; (iv) authorization to conduct the Sale without the necessity of complying with applicable state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise restrict the implementation of the Sale; (v) authorization to conduct the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; (vi) authorization to conduct the sale of Additional Consultant Goods in accordance with the terms and conditions of this Agreement; and (vii) authorization to take all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.

**S**.    **Additional Consultant Goods**

(i)    Exercisable in its reasonable discretion, Consultant shall have the right to supplement the Merchandise in the Sale with additional goods procured by Consultant which are of like kind, and no lesser quality to the Merchandise in the Sale ("Additional Consultant Goods"). The purchase of any Additional Consultant Goods shall be made by Consultant at Consultant's sole expense. Sales of Additional Consultant Goods shall otherwise be made in conjunction with the Sale, and Additional Consultant Goods shall be run through Merchant's cash register systems, so long as Consultant has marked the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise. Consultant and Merchant shall also cooperate to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods as non-Merchandise. Additionally, Consultant shall provide signage in the Stores notifying customers that the Additional Consultant Goods have been included in the Sale.

(ii)    Consultant shall pay to the Merchant an amount equal to five percent (5%) of the gross proceeds (excluding sales taxes) from the sale of Additional Consultant Goods completed during the Sale Term and Consultant shall retain all remaining amounts from the sale of the Additional Consultant Goods. Consultant and the Merchant intend that the transactions relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from Consultant to the Merchant in all respects and not a consignment for security purposes. Subject solely to Consultant's obligations to pay to the Merchant the Additional Consultant Goods fee described in this Agreement, at all times and for all purposes the Additional Consultant Goods and their proceeds shall be the exclusive property of Consultant, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their proceeds. At Consultant's sole cost and expense, the Merchant shall insure the Additional Consultant Goods and, if required, promptly file any proofs of loss with regard to same with the Merchant's insurers. Consultant shall be responsible for payment of any

10

deductible under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

(iii)    The Merchant acknowledges that the Additional Consultant Goods shall be consigned to the Merchant as a true consignment under Article 9 of the Code.  The Approval Order shall contain provisions reasonable acceptable to Consultant governing the treatment and sale of Additional Consultant Goods.

*         *         *

If this Agreement is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity—we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

*Kellan Grant*
_____
By:  T. Kellan Grant
Its:   EVP Commercial Counsel

**AGREED AND ACCEPTED as of the 3rd day**
**of November, 2024**

AMERICAN FREIGHT FFO, LLC, FRANCHISE GROUP NEWCO INTERMEDIATE AF, LLC, AND EACH OF FRANCHISE GROUP NEWCO INTERMEDIATE AF, LLC'S SUBSIDIARIES

_____
By: Andrew Kaminsky
Its: Authorized Signatory

If this Agreement is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity—we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

_____

By:  T. Kellan Grant
Its:   EVP Commercial Counsel

**AGREED AND ACCEPTED as of the 3rd day
of November, 2024**

AMERICAN FREIGHT FFO, LLC, FRANCHISE GROUP NEWCO INTERMEDIATE AF, LLC, AND EACH OF FRANCHISE GROUP NEWCO INTERMEDIATE AF, LLC'S SUBSIDIARIES

_____

By: Andrew Kaminsky
Its: Authorized Signatory

# EXHIBIT A

**Stores**

**American Freight**
**Exhibit A**

Store List

| Count | Loc # | Concept/Banner | Name | Address | Address2 | | City | State | Zip | Territory | District | Gross Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | AFF | Lima OH | 3650 Fort Shawnee Industrial Dr. | | - | Lima | OH | 45805 | Northeast | Delaware | 29,653 |
| 2 | 2 | AFF | Evansville IN | 2800 Lynch Ave | | - | Evansville | IN | 47711 | Central | Louisville | 32,000 |
| 3 | 3 | AFF | Lexington OH | 2770 Lexington Ave. | | - | Lexington | OH | 44904 | Northeast | Parma | 22,800 |
| 4 | 4 | AFF | Mishawaka IN | 1217 E. McKinley Ave. | | - | Mishawaka | IN | 46545 | Central | Indianapolis | 31,000 |
| 5 | 5 | AFF | Terre Haute IN | 1800 Fort Harrison Rd Ste 4 | | - | Terre Haute | IN | 47804 | Central | Peoria | 20,858 |
| 6 | 6 | AFF | Ocala FL | Store Location1010 S.W. 17th Street | | - | Ocala | FL | 34471 | Southeast | Orlando | 40,000 |
| 7 | 7 | AFF | Louisville KY | 1920 Watterson Trail | | - | Louisville | KY | 40299 | Central | Florence | 38,480 |
| 8 | 8 | AFF | Massillon OH | 4345 Lincoln Way East | | - | Massillon | OH | 44646 | Northeast | Parma | 40,000 |
| 9 | 9 | AFF | Cincinnati - Muhlhauser Rd OH | 4782 Muhlhauser Rd | | - | West Chester | OH | 45011 | Northeast | Cincinnati | 56,250 |
| 10 | 10 | AFF | East Columbus OH | 5055 E. Main Street | | - | Columbus | OH | 43213 | Northeast | Delaware | 39,100 |
| 11 | 11 | AFF | Buffalo NY | 778 Niagara Falls Blvd. | | - | North Tonawanda | NY | 14120 | Northeast | Buffalo | 30,000 |
| 12 | 12 | AFF | Lexington KY | 272 W. New Circle Rd | | - | Lexington | KY | 40506 | Central | Florence | 31,000 |
| 13 | 13 | AFF | Tallahassee FL | 3170 W. Tharpe St. | | - | Tallahassee | FL | 32303 | Southeast | Orlando | 32,000 |
| 14 | 15 | AFF | North Columbus OH | 900 Morse Rd. | | - | Columbus | OH | 43229 | Northeast | Delaware | 35,460 |
| 15 | 16 | AFF | Akron OH | 2655 S. Arlington Rd. | | - | Akron | OH | 44319 | Northeast | Parma | 31,193 |
| 16 | 18 | AFF | South Orlando FL | 2193 Viscount Row | | - | Orlando | FL | 32809 | Southeast | Miami | 27,110 |
| 17 | 19 | AFF | Fort Lauderdale FL | 6001 Powerline Rd. | | - | Fort Lauderdale | FL | 33309 | Southeast | Miami | 25,825 |
| 18 | 20 | AFF | Florence KY | 7102 Turfway Rd. | | - | Florence | KY | 41042 | Central | Florence | 21,630 |
| 19 | 21 | AFF | Miami FL | 5240 NW 167th St. | | - | Miami | FL | 33014 | Southeast | Miami | 23,507 |
| 20 | 22 | AFF | North Orlando FL | 4116 N. Orange Blossom Trail | | - | Orlando | FL | 32804 | Southeast | Orlando | 22,614 |
| 21 | 23 | AFF | Pittsburgh PA | 503 Rodi Rd. | | - | Pittsburgh | PA | 15235 | Northeast | Pittsburgh | 36,000 |
| 22 | 24 | AFF | Tampa FL | 4535 S. Dale Mabry Hwy | | - | Tampa | FL | 33611 | Southeast | Tampa | 17,760 |
| 23 | 25 | AFF | Fort Wayne IN | 4515 Merchant Rd. | | - | Fort Wayne | IN | 46818 | Central | Indianapolis | 35,000 |
| 24 | 26 | AFF | Grand Rapids | 3125 Lake Eastbrook Blvd. S.E. | | - | Grand Rapids | MI | 49512 | Northeast | Livonia | 28,000 |
| 25 | 27 | AFF | Port Orange FL | 3350 S Ridgewood Ave. | | - | Port Orange | FL | 32129 | Southeast | Orlando | 27,400 |
| 26 | 28 | AFF | Chattanooga TN | 6242 Perimeter Dr. | | - | Chattanooga | TN | 37421 | Southeast | Nashville | 42,000 |
| 27 | 29 | AFF | Morrow GA | 1230 Mt. Zion Rd. | | - | Morrow | GA | 30260 | Southeast | Morrow | 37,096 |
| 28 | 31 | AFF | Livonia MI | 28300 Schoolcraft Rd. | | - | Livonia | MI | 48150 | Northeast | Livonia | 24,000 |
| 29 | 33 | AFF | Syracuse NY | 2410 Erie Blvd. East | | - | Syracuse | NY | 13224 | Northeast | Buffalo | 12,000 |
| 30 | 34 | AFF | Ann Arbor MI | 4801 Washtenaw Ave. | | - | Ann Arbor | MI | 48108 | Northeast | Livonia | 19,550 |
| 31 | 36 | AFF | St Petersburg FL | 4400 34th Street North | | - | St Petersburg | FL | 33714 | Southeast | Tampa | 19,400 |
| 32 | 37 | AFF | Norcross GA | 6796-A Jimmy Carter Blvd. | | - | Norcross | GA | 30071 | Southeast | Morrow | 23,707 |
| 33 | 39 | AFF | Winter Park FL | 1544 FL 436 | | - | Winter Park | FL | 32792 | Southeast | Orlando | 24,424 |
| 34 | 40 | AFF | West Jacksonville FL | 6024 103rd Street | | - | West Jacksonville | FL | 32210 | Southeast | Jacksonville | 32,000 |
| 35 | 41 | AFF | South Indianapolis IN | 5750 Kopetsky Dr. | | - | Indianapolis | IN | 46217 | Central | Indianapolis | 23,700 |
| 36 | 42 | AFF | Marietta GA | 1075 Cobb Parkway SE | | - | Marietta | GA | 30060 | Southeast | Morrow | 20,509 |
| 37 | 43 | AFF | Northfield OH | 10333 Northfield Rd. Unit 110 | | - | Northfield | OH | 44067 | Northeast | Parma | 23,800 |
| 38 | 44 | AFF | North Indianapolis IN | 8920 Corporation Dr | | - | Indianapolis | IN | 46256 | Central | Indianapolis | 27,200 |
| 39 | 46 | AFF | Warren MI | 32880 Dequindre Rd. | | - | Warren | MI | 48092 | Northeast | Livonia | 33,634 |
| 40 | 47 | AFF | Gainesville FL | 4222 NW 13th St | | - | Gainesville | FL | 32609 | Southeast | Orlando | 20,785 |
| 41 | 48 | AFF | West Palm Beach/Riviera Beach | 6688 N. Military Trail | | - | Rivierabeach | FL | 33407 | Southeast | Miami | 20,000 |
| 42 | 49 | AFF | Erie PA | 2411 W. 12th St | | - | Erie | PA | 16505 | Northeast | Buffalo | 19,840 |
| 43 | 50 | AFF | Parma OH | 6767 Brookpark Rd. | | - | Parma | OH | 44129 | Northeast | Parma | 22,753 |
| 44 | 51 | AFF | Nashville TN | 3041 Owen Dr. | | - | Antioch | TN | 37013 | Southeast | Nashville | 29,952 |
| 45 | 52 | AFF | Knoxville TN | 737 Lovell Rd. | | - | Knoxville | TN | 37932 | Southeast | Nashville | 22,000 |
| 46 | 53 | AFF | Panama City FL | 2116 South Highway 77 | | - | Lynn Haven | FL | 32444 | Southeast | Montgomery | 14,940 |
| 47 | 54 | AFF | Dayton OH | 2800 Springboro Pike | | - | Dayton | OH | 45439 | Northeast | Cincinnati | 39,000 |
| 48 | 56 | AFF | Pensacola FL | 4500 Mobile Highway | | - | Pensacola | FL | 32506 | Southeast | Montgomery | 19,754 |
| 49 | 57 | AFF | Fort Myers FL | 13080 Metro Parkway | | - | Fort Myers | FL | 33966 | Southeast | Tampa | 24,000 |
| 50 | 58 | AFF | Lakeland FL | 2210 Commerce Point Dr. | | - | Lakeland | FL | 33801 | Southeast | Tampa | 35,750 |
| 51 | 59 | AFF | Melbourne FL | 7619 Ellis Rd. | | - | Melbourne | FL | 32904 | Southeast | Miami | 22,500 |
| 52 | 60 | AFF | Madison WI | 4301 Kinsman Blvd. | | - | Madison | WI | 53704 | Central | Milwaukee | 23,554 |
| 53 | 61 | AFF | Lafayette IN | 3233 Teal Rd. | | - | Lafayette | IN | 47905 | Central | Peoria | 21,340 |
| 54 | 62 | AFF | Mobile AL | 3404 Moffett Rd. Unit-B | | - | Mobile | AL | 36607 | Southeast | Montgomery | 25,000 |
| 55 | 63 | AFF | South Milwaukee WI | 3804 South 27th St. | | - | Milwaukee | WI | 53221 | Central | Milwaukee | 30,446 |
| 56 | 65 | AFF | Lansing MI | 1475 Lake Lansing Rd. | | - | Lansing | MI | 48912 | Northeast | Livonia | 30,000 |
| 57 | 66 | AFF | St Paul MN | 717 Prior Ave N | | - | St Paul | MN | 55104 | Central | Milwaukee | 35,272 |
| 58 | 67 | AFF | Charleston | 6330 Maccorkle Ave. | | - | St. Albans | WV | 25177 | Northeast | Cincinnati | 48,000 |
| 59 | 68 | AFF | Clarksville | 2231 B Madison St. | | - | Clarksville | TN | 37043 | Southeast | Nashville | 27,568 |
| 60 | 70 | AFF | Harrisburg | 6305 Allentown Blvd. | | - | Harrisburg | PA | 17112 | Northeast | Pittsburgh | 33,600 |
| 61 | 71 | AFF | Savannah | 15000 Abercorn St. | | - | Savannah | GA | 31419 | Southeast | Jacksonville | 27,413 |
| 62 | 72 | AFF | Montgomery | 231 N. Eastern Blvd./Bypass Whs #3 | | - | Montgomery | AL | 36117 | Southeast | Montgomery | 30,000 |
| 63 | 74 | AFF | Douglasville | 5834 Fairburn Rd. | | - | Douglasville | GA | 30134 | Southeast | Morrow | 35,000 |
| 64 | 76 | AFF | Boardman | 6224 South Ave. | | - | Boardman | OH | 44512 | Northeast | Pittsburgh | 19,306 |
| 65 | 77 | AFF | Portage | 501 Mall Dr. | | - | Portage | MI | 49024 | Central | Indianapolis | 23,000 |
| 66 | 80 | AFF | Memphis | 7859 Highway 64 | | - | Memphis | TN | 38133 | Central | Little Rock | 48,403 |

**American Freight**
**Exhibit A**

Store List

| Count | Loc # | Concept/Banner | Name | Address | Address2 | | City | State | Zip | Territory | District | Gross Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 67 | 81 | AFF | Newport News | 451A Oriana Rd | | - | Newport News | VA | 23608 | Northeast | Richmond | 33,472 |
| 68 | 82 | AFF | Decatur | 1291 E. Pershing Road | | - | Decatur | IL | 62526 | Central | Peoria | 20,204 |
| 69 | 83 | AFF | Birmingham AL | 3260 Morrow Rd. | | - | Trussville | AL | 35235 | Central | Birmingham | 28,000 |
| 70 | 85 | AFF | Goodlettsville | 309 N. Main St. | | - | Goodlettsville | TN | 37072 | Southeast | Nashville | 20,800 |
| 71 | 87 | AFF | Champaign | 2002 Glenn Park Drive Suite B | | - | Champaign | IL | 61821 | Central | Peoria | 32,000 |
| 72 | 89 | AFF | Augusta | 1708 Wylds Rd. | | - | Augusta | GA | 30909 | Southeast | N Charleston | 40,550 |
| 73 | 90 | AFF | North Charleston SC | 4750 Goer Dr. Suite C | | - | North Charleston | SC | 29406 | Southeast | N Charleston | 22,159 |
| 74 | 91 | AFF | Huntsville | 2518 Memorial Parkway NW | | - | Huntsville | AL | 35810 | Central | Birmingham | 20,000 |
| 75 | 93 | AFF | Palmetto FL | 1201 10th Street East | | - | Palmetto | FL | 34221 | Southeast | Tampa | 25,198 |
| 76 | 94 | AFF | Burnsville | 3200 Highway 13 West | | - | Burnsville | MN | 55337 | Central | Milwaukee | 21,326 |
| 77 | 97 | AFF | St Louis MO | 9801 Page Ave. | | - | St Louis | MO | 63132 | Central | Kansas City | 33,552 |
| 78 | 98 | AFF | Baton Rouge LA | 8560 Florida Blvd. | | - | Baton Rouge | LA | 70815 | Southeast | Montgomery | 25,490 |
| 79 | 99 | AFF | Altoona | 516 West Plank Rd. Suite #22 | | - | Altoona | PA | 16602 | Northeast | Pittsburgh | 33,280 |
| 80 | 100 | AFF | Norfolk | 6359 East Virginia Beach Blvd. | | - | Norfolk | VA | 23502 | Northeast | Richmond | 35,000 |
| 81 | 101 | AFF | Columbia | 1424 Atlas Road | | - | Columbia | SC | 29209 | Southeast | N Charleston | 30,800 |
| 82 | 103 | AFF | Monroe | 630 N. Telegraph Rd. | | - | Monroe | MI | 48162 | Northeast | Livonia | 27,000 |
| 83 | 104 | AFF | Rome GA | 2502 Shorter Ave. NW | | - | Rome | GA | 30165 | Central | Birmingham | 30,000 |
| 84 | 105 | AFF | Muncie IN | 4201 N. Old State Rd. 3 | | - | Muncie | IN | 47303 | Central | Indianapolis | 22,000 |
| 85 | 106 | AFF | Shreveport LA | 336 Montgomery St. | | - | Shreveport | LA | 71107 | West | Tulsa | 34,000 |
| 86 | 107 | AFF | Albany NY | 76 Fuller Rd | | - | Albany | NY | 12205 | Northeast | Buffalo | 23,480 |
| 87 | 109 | AFF | Metairie LA | 3409 N I-10 Service Rd W. | | - | Metairie | LA | 70002 | Southeast | Montgomery | 23,400 |
| 88 | 111 | AFF | San Antonio TX | 639 Lanark Dr. | | - | San Antonio | TX | 78218 | West | Houston | 43,529 |
| 89 | 112 | AFF | Hagerstown MD | 17627 Virginia Ave. | | - | Hagerstown | MD | 21740 | Northeast | Richmond | 28,000 |
| 90 | 114 | AFF | Helena MT | 4600 Highway 52 | | - | Helena | AL | 35080 | Central | Birmingham | 43,000 |
| 91 | 115 | AFF | West Richmond VA | 9131 Midlothian Turnpike | | - | Richmond | VA | 23236 | Northeast | Richmond | 28,926 |
| 92 | 116 | AFF | Loves Park IL | 1502 E. Riverside Blvd. | | - | Loves Park | IL | 61111 | Central | Chicago | 26,500 |
| 93 | 117 | AFF | Myrtle Beach SC | 1049B Glenforest Rd | | - | Myrtle Beach | SC | 29579 | Southeast | N Charleston | 22,037 |
| 94 | 118 | AFF | Green Bay WI | 2490 Main St. | | - | Green Bay | WI | 54311 | Central | Milwaukee | 24,000 |
| 95 | 119 | AFF | Indianapolis West IN | 5615 38th St. Unit A | | - | Indianapolis | IN | 46254 | Central | Indianapolis | 22,247 |
| 96 | 120 | AFF | Huntington | 3116 US Route 60 | | - | Huntington | WV | 25705 | Northeast | Cincinnati | 18,975 |
| 97 | 121 | AFF | Waco TX | 1002 TX-340 Loop | | - | Bellmead | TX | 76705 | West | West Dallas | 30,000 |
| 98 | 123 | AFF | Roanoke VA | 4496 Electric Rd. | | - | Roanoke | VA | 24018 | Southeast | Raleigh | 35,364 |
| 99 | 124 | AFF | Columbus | 1627 South Lumpkin Rd. | | - | Columbus | GA | 31903 | Southeast | Jacksonville | 44,000 |
| 100 | 125 | AFF | Grand Prairie TX | 1825 Westpark Dr. | | - | Grand Prairie | TX | 75050 | West | West Dallas | 43,754 |
| 101 | 126 | AFF | Macon GA | 2525 Pio Nono Ave Suite 1100 | | - | Macon | GA | 31206 | Southeast | Jacksonville | 23,562 |
| 102 | 127 | AFF | Dallas TX | 2964 W. Wheatland Rd. | | - | Dallas | TX | 75237 | West | West Dallas | 26,040 |
| 103 | 129 | AFF | Stone Mountain GA | 5370 U.S. Highway 78 Suite 400 | | - | Stone Mountain | GA | 30087 | Southeast | Morrow | 32,000 |
| 104 | 130 | AFF | Saginaw MI | 4345 Bay Road | | - | Saginaw | MI | 48603 | Northeast | Livonia | 31,274 |
| 105 | 131 | AFF | Corpus Christi TX | 5568 Ayers St. | | - | Corpus Christi | TX | 78415 | West | Houston | 20,640 |
| 106 | 132 | AFF | Oklahoma City OK | 2825 W I-240 Service Rd. | | - | Oklahoma City | OK | 73159 | West | Oklahoma City | 32,044 |
| 107 | 134 | AFF | Greenville | 2600 Anderson Rd. | | - | Greenville | SC | 29611 | Southeast | N Charleston | 26,010 |
| 108 | 136 | AFF | McAllen TX | 1001 E. Highway 83 | | - | McAllen | TX | 78501 | West | Houston | 33,898 |
| 109 | 138 | AFF | Spartanburg | 473 East Blackstock Road | Unit 1 | - | Spartanburg | SC | 29301 | Southeast | N Charleston | 29,800 |
| 110 | 139 | AFF | Cranston | 1808 Plainfield Pike | | - | Cranston | RI | 02921 | Northeast | Newington | 20,045 |
| 111 | 141 | AFF | North Charlotte NC | 7201 Smith Corners Blvd. | | - | Charlotte | NC | 28269 | Southeast | Charlotte | 21,700 |
| 112 | 142 | AFF | El Paso TX | 11330 James Watt Dr. | | - | El Paso | TX | 79936 | West | Houston | 20,500 |
| 113 | 143 | AFF | Lubbock TX | 4426 34th St. Suite B | | - | Lubbock | TX | 79410 | West | Oklahoma City | 33,382 |
| 114 | 147 | AFF | West Charlotte NC | 1526-A Alleghany St | | - | Charlotte | NC | 28208 | Southeast | Charlotte | 23,383 |
| 115 | 149 | AFF | Port St Lucie FL | 7121 US-1 | | - | Port St Lucie | FL | 34952 | Southeast | Miami | 21,126 |
| 116 | 150 | AFF | Albuquerque NM | 1700 Eubank Blvd. NE | | - | Albuquerque | NM | 87112 | West | Phoenix | 20,000 |
| 117 | 151 | AFF | Glendale AZ | 4961 W. Bell Rd. Suite B-3 | | - | Glendale | AZ | 85308 | West | Phoenix | 25,700 |
| 118 | 154 | AFF | Mesa AZ | 4422 E. University Dr. Suite 101 | | - | Mesa | AZ | 85205 | West | Phoenix | 23,660 |
| 119 | 155 | AFF | Eastlake OH | 34700 Vine Street Suite 200 | | - | Eastlake | OH | 44095 | Northeast | Parma | 43,714 |
| 120 | 156 | AFF | East Jacksonville FL | 8661 Old Kings Rd. South Unit 2 | | - | East Jacksonville | FL | 32217 | Southeast | Jacksonville | 24,450 |
| 121 | 157 | AFF | East Phoenix AZ | 3144 E. Thomas Rd. | | - | East Phoenix | AZ | 85016 | West | Phoenix | 25,000 |
| 122 | 158 | AFF | Sanford FL | 3818 S. Orlando Dr. | | - | Sanford | FL | 32773 | Southeast | Orlando | 21,755 |
| 123 | 159 | AFF | Topeka KS | 3333 S. Kansas Ave | | - | Topeka | KS | 66611 | Central | Kansas City | 28,450 |
| 124 | 160 | AFF | Delaware | 1141 S. Columbus Pike | | - | Delaware | OH | 43015 | Northeast | Delaware | 19,054 |
| 125 | 161 | AFF | Broken Arrow OK | 3301 S. Elm Place | | - | Broken Arrow | OK | 74012 | West | Tulsa | 18,487 |
| 126 | 163 | AFF | Bryan TX | 3125 S. Texas Ave #1500 | | - | Bryan | TX | 77802 | West | Houston | 26,770 |
| 127 | 164 | AFF | Bowling Green KY | 101 Clay St | | - | Bowling Green | KY | 42101 | Central | Louisville | 37,000 |
| 128 | 165 | AFF | Columbia MO | 2900 Paris Rd. Suite 200 | | - | Columbia | MO | 65202 | Central | Kansas City | 35,200 |
| 129 | 167 | AFF | Independence MO | 2210 S. St. Rt. 291 Hwy. Suite B | | - | Independence | MO | 64057 | Central | Kansas City | 25,392 |
| 130 | 172 | AFF | Davenport IA | 1010 E. Kimberly Rd. Suite #1 | | - | Davenport | IA | 52807 | Central | Peoria | 35,488 |
| 131 | 174 | AFF | Dothan GA | 2131 Ross Clark Circle | | - | Dothan | AL | 36301 | Southeast | Montgomery | 45,736 |
| 132 | 175 | AFF | Decatur GA | 1960 B Candler Rd | | - | Decatur | GA | 30032 | Southeast | Morrow | 25,052 |

**American Freight**
Exhibit A

Store List

| Count | Loc # | Concept/Banner | Name | Address | Address2 | City | State | Zip | Territory | District | Gross Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 133 | 176 | AFF | Jackson TN | 2151 N. Highland Ave. | - | Jackson | TN | 38305 | Southeast | Nashville | 29,702 |
| 134 | 180 | AFF | Wilmington NC | 5128 Oleander Dr | - | Wilmington | NC | 28403 | Southeast | Raleigh | 18,882 |
| 135 | 182 | AFF | Athens GA | 3190 Atlanta Hwy | - | Athens | GA | 30606 | Southeast | N Charleston | 22,000 |
| 136 | 183 | AFF | Pearland TX | 3267 East Broadway St #16 | - | Pearland | TX | 77581 | West | Houston | 20,776 |
| 137 | 184 | AFF | East Houston TX | 11051 East Freeway | - | East Houston | TX | 77029 | West | Houston | 23,616 |
| 138 | 187 | AFF | Texarkana, TX | 1801 N Robison Rd #1E | - | Texarkana | TX | 75501 | West | Tulsa | 21,499 |
| 139 | 189 | AFF | Cincinnati - Ridge Ave OH | 5375 Ridge Ave | - | Cincinnati | OH | 45213 | Northeast | Indianapolis | 25,489 |
| 140 | 190 | AFF | Rochester, NY | 3333 W. Henrietta Rd Ste 27 | - | Rochester | NY | 14623 | Northeast | Buffalo | 23,432 |
| 141 | 192 | AFF | Dublin, GA | 116B Hillcrest Parkway | - | Dublin | GA | 31021 | Southeast | Jacksonville | 46,479 |
| 142 | 193 | AFF | Bloomington, IN | 3100 W. Susan Dr. | - | Bloomington | IN | 47404 | Central | Indianapolis | 31,465 |
| 143 | 195 | AFF | Gastonia, NC | 1467B E. Franklin Blvd. | - | Gastonia | NC | 28054 | Southeast | Charlotte | 27,210 |
| 144 | 196 | AFF | Anderson, SC | 122 E. Shockley Ferry Rd. | - | Anderson | SC | 29624 | Southeast | N Charleston | 19,028 |
| 145 | 198 | AFF | Tuscaloosa, AL | 2300 McFarland Blvd Suite 4 | - | Northport | AL | 35476 | Central | Birmingham | 23,428 |
| 146 | 199 | AFF | Chillicothe, OH | 110 Consumer Center Dr | - | Chillicothe | OH | 45601 | Northeast | Delaware | 22,000 |
| 147 | 200 | AFF | Wilkes-Barre, PA | 370 East End Centre | - | Wilkes-Barre | PA | 18702 | Northeast | Buffalo | 24,624 |
| 148 | 204 | AFF | Fairhaven, MA | 2 Fairhaven Commons Way | - | Fairhaven | MA | 02719 | Northeast | Newington | 21,422 |
| 149 | 205 | AFF | Lawton, OK | 30 NW Sheridan Rd | - | Lawton | OK | 73505 | West | Oklahoma City | 17,121 |
| 150 | 206 | AFF | Hickory, NC | 2108 US Highway 70 SE | - | Hickory | NC | 28602 | Southeast | Charlotte | 17,000 |
| 151 | 207 | AFF | Clarksville, IN | 511 Little League Blvd Ste B | - | Clarksville | IN | 47129 | Central | Florence | 22,736 |
| 152 | 209 | AFF | Lancaster, PA | 1276 Lititz Pike | - | Lancaster | PA | 17601 | Northeast | Pittsburgh | 18,665 |
| 153 | 210 | AFF | Fredericksburg, VA | 9745 Patriot Hwy | - | Fredericksburg | VA | 22407 | Northeast | Richmond | 30,188 |
| 154 | 211 | AFF | Danville, VA | 3316 Riverside Dr | - | Danville | VA | 24541 | Southeast | Raleigh | 24,500 |
| 155 | 212 | AFF | Elyria, OH | 445 Midway Blvd. | - | Elyria | OH | 44035 | Northeast | Parma | 28,000 |
| 156 | 213 | AFF | Flint, MI | 5038 Miller Rd Ste 2B | - | Flint | MI | 48507 | Northeast | Livonia | 18,930 |
| 157 | 214 | AFF | Birmingham AL | 2012 Verterans Memorial Dr | - | Birmingham | AL | 35214 | Central | Birmingham | 17,500 |
| 158 | 215 | AFF | Conyers GA | 425 Sigman Rd NW Ste 105-106 | - | Conyers | GA | 30012 | Southeast | Morrow | 32,196 |
| 159 | 216 | AFF | Aiken SC | 1680 Richland Ave W | - | Aiken | SC | 29801 | Southeast | N Charleston | 26,238 |
| 160 | 217 | AFF | Clay NY | 4124 NYS 31 | - | Clay | NY | 13041 | Northeast | Buffalo | 21,775 |
| 161 | 218 | AFF | Morganton NC | 118 Fiddler's Run Blvd | - | Morganton | NC | 28655 | Southeast | Charlotte | 24,500 |
| 162 | 219 | AFF | Salem VA | 1357 W. Main St. | - | Salem | VA | 24153 | Southeast | Raleigh | 25,804 |
| 163 | 220 | FFO | Fort Smith AR 1 - Rogers Ave | 8819 Rogers Avenue S-A | - | Fort Smith | AR | 72903 | Central | Northern Arkansas | 26,620 |
| 164 | 221 | FFO | Joplin MO | 1400 E. 32nd Street | - | Joplin | MO | 64804 | Central | Northern Arkansas | 34,000 |
| 165 | 222 | FFO | Jefferson City MO | 2010 Missouri Blvd. | - | Jefferson City | MO | 65109 | Central | Kansas City | 22,129 |
| 166 | 223 | FFO | Sedalia MO | 3200 West Broadway | - | Sedalia | MO | 65301 | Central | Kansas City | 25,435 |
| 167 | 224 | FFO | West Plains MO | 1364 Southern Hills CTR | - | West Plains | MO | 65775 | Central | Northern Arkansas | 15,450 |
| 168 | 225 | FFO | Sherwood AR | 6527 Warden Road | - | Sherwood (N Little Rock) | AR | 72120 | Central | Little Rock | 31,050 |
| 169 | 226 | FFO | Bryant AR | 22401 HWY I-30 | - | Bryant | AR | 72022 | Central | Little Rock | 25,000 |
| 170 | 228 | FFO | Little Rock AR 3 - Shackleford | 280 S Shackleford Rd | - | Little Rock | AR | 72211 | Central | Little Rock | 30,000 |
| 171 | 230 | FFO | Jonesboro AR | 2839 Race Street | - | Jonesboro | AR | 72401 | Central | Northern Arkansas | 26,750 |
| 172 | 231 | FFO | Conway AR | 580 Amity Rd | - | Conway | AR | 72032 | Central | Little Rock | 30,300 |
| 173 | 232 | FFO | Batesville AR | 1 Furniture Lane Batesville | - | Batesville | AR | 72501 | Central | Northern Arkansas | 31,320 |
| 174 | 233 | FFO | Siloam Springs AR | 3758 Hwy 412 E | - | Siloam Springs | AR | 72761 | West | Tulsa | 23,500 |
| 175 | 234 | FFO | Shawnee OK | 4939 N. Union Ave. | - | Shawnee | OK | 74804 | West | Oklahoma City | 23,500 |
| 176 | 235 | FFO | Fort Smith AR 2 - Hwy 71 | 8300 Hwy 71 South | - | South Fort Smith | AR | 72908 | Central | Northern Arkansas | 23,500 |
| 177 | 239 | FFO | Warrensburg MO | 133 Parsons Avenue | - | Warrensburg | MO | 64093 | Central | Kansas City | 20,560 |
| 178 | 240 | FFO | Lawton OK 2 - Sun Blvd | 7420 NW Sun Blvd. | - | Lawton | OK | 73505 | West | Oklahoma City | 23,555 |
| 179 | 241 | FFO | Paducah KY | 3521 James Sanders Blvd | - | Paducah | KY | 42001 | Central | Louisville | 23,505 |
| 180 | 242 | FFO | St. Joseph MO | 3715 N Belt Highway | - | Saint Joseph | MO | 64506 | Central | Kansas City | 35,000 |
| 181 | 243 | FFO | Norman OK | 831 Sonoma Park Drive | - | Norman | OK | 73071 | West | Oklahoma City | 23,700 |
| 182 | 244 | FFO | Owensboro KY | 2512 Calumet Trace | - | Owensboro | KY | 42303 | Central | Louisville | 23,500 |
| 183 | 245 | FFO | New Albany IN | 2300 State Street | - | New Albany | IN | 47150 | Central | Florence | 23,634 |
| 184 | 246 | FFO | Madison IN | 440 E. Clifty Drive | - | Madison | IN | 47250 | Central | Florence | 24,920 |
| 185 | 247 | FFO | Elizabethtown KY | 1705 N. Dixie Highway | - | Elizabethtown | KY | 42701 | Central | Louisville | 26,097 |
| 186 | 249 | FFO | Louisville KY 4 - Preston Highv | 5749 Preston Highway | - | Louisville (south) | KY | 40219 | Central | Louisville | 25,000 |
| 187 | 250 | FFO | Bardstown KY | 223 KY Home Square Shopping Ct | - | Bardstown | KY | 40004 | Central | Louisville | 22,972 |
| 188 | 251 | FFO | Springfield MO | 1434 E Independence St | - | Springfield | MO | 65804 | Central | Northern Arkansas | 31,936 |
| 189 | 252 | FFO | Frankfort KY | 104 Brighton Park Blvd. | - | Frankfort | KY | 40601 | Central | Florence | 20,000 |
| 190 | 253 | FFO | Osage Beach MO | 4573 Us Hwy 54 | - | Osage Beach | MO | 65065 | Central | Northern Arkansas | 26,250 |
| 191 | 254 | FFO | Horn Lake MS | 7258 Interstate Boulevard | - | Horn Lake | MS | 38637 | Central | Little Rock | 23,500 |
| 192 | 257 | FFO | Wichita Falls TX | 3127 Lawrence Rd. | - | Wichita Falls | TX | 76308 | West | Oklahoma City | 20,560 |
| 193 | 258 | AFF | Albany GA | 2304 N. Slappey Blvd. | - | Albany | GA | 31701 | Southeast | Jacksonville | 34,233 |
| 194 | 260 | AFF | Rocky Mount NC | 1980 Stone Rose Dr | - | Rocky Mount | NC | 27804 | Southeast | Raleigh | 24,000 |
| 195 | 261 | AFF | Venice FL | 515 Tamiami Trail S | - | Venice | FL | 34285 | Southeast | Tampa | 23,722 |

**American Freight**
**Exhibit A**

Store List

| Count | Loc # | Concept/Banner | Name | Address | Address2 | | City | State | Zip | Territory | District | Gross Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 196 | 262 | AFF | Piqua OH | 987 E Ash St Ste 125 | | - | Piqua | OH | 45356 | Northeast | Delaware | 50,000 |
| 197 | 264 | AFF | Winchester TN | 2607 Decherd Blvd | | - | Winchester | TN | 37398 | Southeast | Nashville | 20,563 |
| 198 | 265 | AFF | Brooksville FL | 657 S Broad St | | - | Brooksville | FL | 34601 | Southeast | Tampa | 25,000 |
| 199 | 266 | AFF | Rock Hill SC | 809 Albright Road | | - | Rock Hill | SC | 29730 | Southeast | Charlotte | 31,500 |
| 200 | 267 | AFF | San Angelo, TX | 3315 Sherwood Way  Ste 149 | | - | San Angelo | TX | 76904 | West | West Dallas | 19,117 |
| 201 | 268 | AFF | Ardmore OK | 340 N Commerce St | | - | Ardmore | OK | 73401 | West | Oklahoma City | 25,000 |
| 202 | 269 | AFF | Peoria IL | 5212 N Big Hollow Road | | - | Peoria | IL | 61615 | Central | Peoria | 24,124 |
| 203 | 271 | AFF | Denham Springs LA | 10076 Crossing Way Ste 530 | | - | Denham Springs | LA | 70726 | Southeast | Montgomery | 55,939 |
| 204 | 272 | AFF | China Grove NC | 106 S US 29 Hwy | | - | China Grove | NC | 28023 | Southeast | Charlotte | 30,280 |
| 205 | 273 | AFF | Muskegon MI | 1750 E Sherman Blvd | | - | Muskegon | MI | 49444 | Northeast | Livonia | 34,000 |
| 206 | 274 | AFF | Johnstown PA | 820 Scalp Ave | | - | Johnstown | PA | 15904 | Northeast | Pittsburgh | 22,700 |
| 207 | 275 | AFF | Memphis, TN | 7060 Winchester Rd | | - | Memphis | TN | 38125 | Central | Little Rock | 30,000 |
| 208 | 277 | AFF | Battle Creek MI | 30 Columbia Ave E  Ste H | | - | Battle Creek | MI | 49015 | Northeast | Livonia | 26,992 |
| 209 | 279 | AFF | Lynchburg VA | 3700 Candlers Mountain Rd  Ste 67 | | - | Lynchburg | VA | 24502 | Northeast | Richmond | 25,467 |
| 210 | 280 | AFF | Prattville AL | 1890 E Main St | | - | Prattville | AL | 36066 | Southeast | Montgomery | 24,458 |
| 211 | 281 | AFF | Agawam MA | 890 Suffield St | | - | Agawam | MA | 01001 | Northeast | Newington | 34,500 |
| 212 | 285 | AFF | Butler PA | 100 Pullman Sq | | - | Butler | PA | 16001 | Northeast | Pittsburgh | 41,765 |
| 213 | 287 | AFF | Horseheads NY | 1020 Center Street Ste 1A | | - | Horseheads | NY | 14845 | Northeast | Buffalo | 24,000 |
| 214 | 288 | AFF | Hooksett NH | 1328 Hooksett Rd Ste 13B | | - | Hooksett | NH | 03106 | Northeast | Newington | 22,230 |
| 215 | 289 | AFF | Wadsworth OH | 180 Great Oaks Trail Ste B | | - | Wadsworth | OH | 44281 | Northeast | Parma | 20,276 |
| 216 | 290 | AFF | Niles OH | 5185 Youngstown Warren Rd  Unit 5 | | - | Niles | OH | 44446 | Northeast | Pittsburgh | 25,326 |
| 217 | 291 | AFF | Kingsport TN | 1189 N Eastman Rd | | - | Kingsport | TN | 37664 | Southeast | Charlotte | 22,741 |
| 218 | 293 | AFF | Waterloo IA | 2060 Sovia Dr  Ste #112 | | - | Waterloo | IA | 50702 | Central | Peoria | 18,120 |
| 219 | 294 | AFF | Centennial CO | 9667 E County Line Rd | | - | Centennial | CO | 80112 | West | Colorado | 25,003 |
| 220 | 295 | AFF | Colorado Springs CO | 1680 Briargate Blvd  Ste 100 | | - | Colorado Springs | CO | 80920 | West | Colorado | 44,763 |
| 221 | 296 | AFF | Westminster CO | 9180 Wadsworth Pkwy | | - | Westminster | CO | 80021 | West | Colorado | 35,000 |
| 222 | 297 | AFF | Parkersburg WV | 270 Park Center Dr | | - | Parkersburg | WV | 26101 | Northeast | Delaware | 28,000 |
| 223 | 298 | AFF | Port Arthur | 3100 Highway 365  Ste #114 | | - | Port Arthur | TX | 77642 | West | Houston | 23,000 |
| 224 | 299 | AFF | Medford OR | 1600 N Riverside Ave  Unit 1094 | | - | Medford | OR | 97501 | West | Seattle | 29,853 |
| 225 | 300 | AFF | Layton UT | 2159 Harris Blvd Ste 1 | | - | Layton | UT | 84041 | West | Colorado | 25,000 |
| 226 | 301 | AFF | Ogden UT | 4113 Riverdale Rd | | - | Ogden | UT | 84405 | West | Colorado | 23,046 |
| 227 | 302 | AFF | Pueblo CO | 5737 N Elizabeth St | | - | Pueblo | CO | 81008 | West | Colorado | 23,230 |
| 228 | 303 | AFF | Sherman TX | 2222 Texoma Pkwy Ste 200 | | - | Sherman | TX | 75090 | West | Tulsa | 25,200 |
| 229 | 310 | AFF | | - | | - | - | | 84057 | 0 | 0 | - |
| 230 | 1916 | AFO | McAllen, TX | 700 E Expy 83 Suite 200 | | - | McAllen | TX | 78503 | West | Houston | 30,969 |
| 231 | 4001 | AFO | Kansas City, MO | 3632 Front St | | - | Kansas City | MO | 64120 | Central | Kansas City | 22,520 |
| 232 | 4015 | AFO | Daytona Beach, FL | 1415 S. Nova Rd | | - | Daytona Beach | FL | 32114 | Southeast | Orlando | 30,721 |
| 233 | 4025 | AFO | Amarillo, TX | 7302 SW 34th Ave | | - | Amarillo | TX | 79121 | West | Oklahoma City | 38,925 |
| 234 | 4032 | AFO | Portage, MI | 669 Mall Dr | | - | Portage | MI | 49024 | Central | Indianapolis | 36,459 |
| 235 | 4038 | AFO | Palmdale, CA | 320 West Rancho Vista Blvd | | - | Palmdale | CA | 93551 | West | San Diego | 45,800 |
| 236 | 4058 | AFO | Pensacola, FL | 6235 N Davis Hwy | Ste 101 | - | Pensacola | FL | 32504 | Southeast | Montgomery | 23,700 |
| 237 | 4068 | AFO | Webster, TX | 20750 Gulf Freeway | | - | Webster | TX | 77598 | West | Houston | 32,499 |
| 238 | 4073 | AFO | Lansing, MI | 810 S. Waverly Rd | | - | Lansing | MI | 48917 | Northeast | Livonia | 32,811 |
| 239 | 4076 | AFO | Holland, OH | 6645 Airport Hwy | | - | Holland | OH | 43528 | Northeast | Livonia | 27,878 |
| 240 | 4119 | AFO | Tacoma, WA | 6th Avenue Plaza | 5401 6th Ave. Suite 515 | - | Tacoma | WA | 98406 | West | Seattle | 29,080 |
| 241 | 4185 | AFO | Clearwater, FL | 5251 110th Ave. N. | #120 | - | Clearwater | FL | 33760 | Southeast | Tampa | 43,200 |
| 242 | 4192 | AFO | Sarasota, FL | 8333 Lockwood Ridge Rd. | | - | Sarasota | FL | 34243 | Southeast | Tampa | 14,782 |
| 243 | 4221 | AFO | Tulsa, OK | 6120 E. 71st St. | | - | Tulsa | OK | 74136 | West | Tulsa | 25,000 |
| 244 | 4268 | AFO | Fayetteville, NC | 1240 Ireland Dr | | - | Fayetteville | NC | 28304 | Southeast | Raleigh | 35,310 |
| 245 | 4307 | AFO | Oklahoma City, OK | 2805 SW 29th St | | - | Oklahoma City | OK | 73119 | West | Oklahoma City | 29,900 |
| 246 | 4324 | AFO | Newington, CT | 65 Holmes Rd. | | - | Newington | CT | 06111 | Northeast | Newington | 46,114 |
| 247 | 4333 | AFO | Bridgeville, PA | 1051 Washington Pike | | - | Bridgeville | PA | 15017 | Northeast | Pittsburgh | 36,500 |
| 248 | 4345 | AFO | Orlando FL | 4308 E Colonial Dr | | - | Orlando | FL | 32803 | Southeast | Orlando | 27,118 |
| 249 | 4526 | AFO | West Palm Beach, FL | 2031 Okeechobee Blvd. | | - | West Palm Beach | FL | 33409 | Southeast | Miami | 26,016 |
| 250 | 4583 | AFO | Wauwatosa, WI | 3203 N Mayfair RD | | - | Wauwatosa | WI | 53222 | Central | Milwaukee | 21,285 |
| 251 | 4589 | AFO | Tempe, AZ | 5000 Arizona Mills Circle | Suite 625 | - | Tempe | AZ | 85282 | West | Phoenix | 29,390 |
| 252 | 4599 | AFO | Prince William, VA | 2700 Potomac Mills Circle | Suite #707 | - | Prince William | VA | 22192 | Northeast | Richmond | 33,008 |
| 253 | 4601 | AFO | Voorhees, NJ | 322 S. Burnt Mill Rd. | | - | Voorhees | NJ | 08043 | Northeast | Richmond | 19,600 |
| 254 | 4606 | AFO | Darien, IL | 7415 South Cass Avenue | | - | Darien | IL | 60561 | Central | Chicago | 21,830 |
| 255 | 4611 | AFO | Coon Rapids, MN | 141 85th Avenue NW | | - | Coon Rapids | MN | 55433 | Central | Milwaukee | 38,567 |
| 256 | 4617 | AFO | Carrollton, TX | 1215 Marsh Lane | Suite #180 | - | Carrollton | TX | 75006 | West | West Dallas | 31,161 |
| 257 | 4618 | AFO | Rancho Cordova, CA | 10379 Folsom Blvd. | | - | Rancho Cordova | CA | 95670 | West | Seattle | 25,818 |

**American Freight**
**Exhibit A**

Store List

| Count | Loc # | Concept/Banner | Name | Address | Address2 | City | State | Zip | Territory | District | Gross Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 258 | 4619 | AFO | Fenton, MO | 639 Gravois Bluff Blvd. | Suite A | Fenton | MO | 63026 | Central | Kansas City | 34,500 |
| 259 | 4621 | AFO | Philadelphia, PA | 1357 Franklin Mills Circle | - | Philadelphia | PA | 19154 | Northeast | Richmond | 20,327 |
| 260 | 4650 | AFO | Mesquite, TX | 1418 N. Town East Blvd | Ste 100 | Mesquite | TX | 75150 | West | West Dallas | 27,080 |
| 261 | 4657 | AFO | Lafayette, LA | 2001 NW Evangeline Thruway | | Lafayette | LA | 70501 | Southeast | Montgomery | 25,000 |
| 262 | 4666 | AFO | Phoenix, AZ | 16809 N. 9th St. | | Phoenix | AZ | 85022 | West | Phoenix | 23,500 |
| 263 | 4684 | AFO | Modesto, CA | 1800 Prescott Rd | Suite J | Modesto | CA | 95350 | West | Seattle | 21,250 |
| 264 | 4695 | AFO | Knoxville, TN | 9305 Kingston Pike Ste 110 | | Knoxville | TN | 37922 | Southeast | Nashville | 30,971 |
| 265 | 4790 | AFO | Portage, IN | 6169 US Route 6 | | Portage | IN | 46368 | Central | Chicago | 19,162 |
| 266 | 4794 | AFO | Parma, OH | 7490 Broadview Rd. | | Parma | OH | 44134 | Northeast | Parma | 24,724 |
| 267 | 4820 | AFO | La Mesa, CA | 8805 Murray Drive | | La Mesa | CA | 91941 | West | San Diego | 19,837 |
| 268 | 4823 | AFO | Fall River, MA | 133 Mariano S. Bishop Blvd. | | Fall River | MA | 02721 | Northeast | Newington | 38,190 |
| 269 | 4824 | AFO | Boise, ID | 8033 W. Franklin Road | | Boise | ID | 83709 | West | Colorado | 26,500 |
| 270 | 4952 | AFO | Newark, DE | 49 University Plaza | | Newark | DE | 19702 | Northeast | Richmond | 31,886 |
| 271 | 4958 | AFO | Ontario, CA | 2401 S. Vineyard Ave. | | Ontario | CA | 91761 | West | San Diego | 26,000 |
| 272 | 4962 | AFO | Glendale, AZ | 5734 W Peoria Ave | | Glendale | AZ | 85302 | West | Phoenix | 20,990 |
| 273 | 4989 | AFO | Las Vegas, NV | 4854 W Lone Mountain Rd | | Las Vegas | NV | 89130 | West | Phoenix | 57,000 |
| 274 | 4994 | AFO | Richmond, VA | 4100 Tomlynn St. - Suite "A" | | Richmond | VA | 23230 | Northeast | Richmond | 41,953 |
| 275 | 5060 | AFO | Reynoldsburg, OH | 2885 Gender Rd | | Reynoldsburg | OH | 43068 | Northeast | Delaware | 33,016 |
| 276 | 5207 | AFO | Mchenry, IL | 1750 Richmond Rd | | McHenry | IL | 60050 | Central | Chicago | 21,283 |
| 277 | 5230 | AFO | Livonia, MI | 12001 Sears Ave. | | Livonia | MI | 48150 | Northeast | Livonia | 33,394 |
| 278 | 5233 | AFO | Kettering, OH | 2000 E Dorothy Ln | | Kettering | OH | 45420 | Northeast | Cincinnati | 23,000 |
| 279 | 5264 | AFO | Hixson, TN | 5450 Highway 153 Ste 100 | | Hixson | TN | 37343 | Southeast | Nashville | 25,787 |
| 280 | 5282 | AFO | West Covina, CA | 728 South Orange | | West Covina | CA | 91790 | West | San Diego | 17,310 |
| 281 | 5292 | AFO | Streamwood (Hanover Park), I | 1040 S Barrington Rd | | Streamwood | IL | 60107 | Central | Chicago | 21,656 |
| 282 | 5438 | AFO | Broadview, IL | 1000 Broadview Village Square | | Broadview | IL | 60153 | Central | Chicago | 23,282 |
| 283 | 5446 | AFO | Homewood, AL | 372 Palisades Blvd. | | Birmingham | AL | 35209 | Central | Birmingham | 20,674 |
| 284 | 5630 | AFO | San Diego, CA | 1210 W. Morena BLVD | | San Diego | CA | 92110 | West | San Diego | 28,022 |
| 285 | 5631 | AFO | Santa Ana, CA | 1430 S. Village Way | Suite K | Santa Ana | CA | 92705 | West | San Diego | 22,560 |
| 286 | 5632 | AFO | Cerritos, CA | 18714 Gridley Road | | Cerritos | CA | 90703 | West | San Diego | 22,122 |
| 287 | 6052 | AFO | Tampa, FL | 8245B North Florida Road | | Tampa | FL | 33604 | Southeast | Tampa | 22,008 |
| 288 | 7322 | AFO | Fairview Heights, IL | 55 Ludwig Drive (Space 55) | | Fairview Heights | IL | 62208 | Central | Kansas City | 31,310 |
| 289 | 7349 | AFO | Gilbert, AZ | 857 North Val Vista Drive | | Gilbert | AZ | 85234 | West | Phoenix | 19,329 |
| 290 | 7359 | AFO | Oceanside, CA | 2505-B Vista Way 1 | | Oceanside | CA | 92054 | West | San Diego | 38,902 |
| 291 | 7450 | AFO | North Olmsted, OH | 26662 Brookpark Extension | | North Olmsted | OH | 44070 | Northeast | Parma | 27,030 |
| 292 | 7454 | AFO | Pittsburgh, PA | 2003 Chery Drive | | Pittsburgh | PA | 15237 | Northeast | Pittsburgh | 53,389 |
| 293 | 7487 | AFO | San Antonio, TX | 6157 NW Loop 410 | | San Antonio | TX | 78238 | West | Houston | 38,000 |
| 294 | 7533 | AFO | Greenville, SC | 1117 Woodruff Rd | Suite K. | Greenville | SC | 29607 | Southeast | N Charleston | 28,860 |
| 295 | 7561 | AFO | Taylor, MI | 9860 Telegraph Road | | Taylor | MI | 48180 | Northeast | Livonia | 24,424 |
| 296 | 7564 | AFO | Charlotte, NC | 9575 South Blvd | | Charlotte | NC | 28273 | Southeast | Charlotte | 35,000 |
| 297 | 7593 | AFO | Chesapeake, VA | 2005 South Military Hwy | | Chesapeake | VA | 23320 | Northeast | Richmond | 32,256 |
| 298 | 7601 | AFO | Cincinnati | 10200 Colerain Ave Ste 11 | | Cincinnati | OH | 45251 | Northeast | Cincinnati | 25,000 |
| 299 | 7604 | AFO | North Charleston, SC | 5101 Ashley Phosphate | Suite 136 | N. Charleston | SC | 29418 | Southeast | N Charleston | 40,704 |
| 300 | 7611 | AFO | Florence, KY | 51 Spiral dr | | Florence | KY | 41042 | Central | Florence | 20,257 |
| 301 | 7631 | AFO | Arlington, TX | 401 SOUTHWEST PLZ STE 105 | | Arlington | TX | 76016 | West | West Dallas | 25,200 |
| 302 | 7633 | AFO | Derby CT | 656 New Haven Ave Ste 1 | | Derby | CT | 06418 | Northeast | Newington | 25,000 |
| 303 | 7659 | AFO | Torrance, CA | 3610 Torrance Blvd | | Torrance | CA | 90503 | West | San Diego | 47,328 |
| 304 | 7818 | AFO | Spring, TX | 19750 North Freeway (HI-45N) | | Spring | TX | 77373 | West | Houston | 25,494 |
| 305 | 7920 | AFO | Fort Worth, TX | 1265 Town Square Drive. | | Fort Worth | TX | 76116 | West | West Dallas | 30,577 |
| 306 | 8234 | AFO | Houston, TX | 5901 Griggs Rd. | | Houston | TX | 77023 | West | Houston | 25,328 |
| 307 | 8279 | AFO | Speedway, IN | Spdwy Spr Ctr. | 6022 W. Crawfordsville Rd. | Speedway | IN | 46224 | Central | Indianapolis | 30,825 |
| 308 | 8286 | AFO | Shrewsbury, MA | Shrewsbury Vlg Shpng Ctr.  1000 Boston Trnpk | | Shrewsbury | MA | 01545 | Northeast | Newington | 34,980 |
| 309 | 8346 | AFO | San Leandro, CA | 1936 W. 140th Ave. | | San Leandro | CA | 94577 | West | Seattle | 34,458 |
| 310 | 8412 | AFO | Jacksonville, FL | 11111 San Jose Blvd  Ste 1 | | Jacksonville | FL | 32223 | Southeast | Jacksonville | 28,020 |
| 311 | 8487 | AFO | Nashville, TN | 642 Thompson Ln. | | Nashville | TN | 37204 | Southeast | Nashville | 60,395 |
| 312 | 8495 | AFO | Medley, FL | 8090 NW 77th Court | | Medley | FL | 33166 | Southeast | Miami | 37,000 |
| 313 | 9059 | AFO | Fresno, CA | 4150 Shaw Ave | | Fresno | CA | 93722 | West | Seattle | 29,000 |
| 314 | 9112 | AFO | Shawnee, KS | 6495 Quivira Rd | | Shawnee | KS | 66216 | Central | Kansas City | 25,957 |
| 315 | 9150 | AFO | Corona, CA | 1208 Magnolia Ave | | Corona | CA | 92881 | West | San Diego | 25,047 |
| 316 | 9229 | AFO | Sacramento, CA | 1200 Blumenfeld Dr | Suite C | Sacramento | CA | 95815 | West | Seattle | 43,043 |
| 317 | 9284 | AFO | Austin, TX | 13435 N HIGHWAY 183 STE 101 | | Austin | TX | 78750 | West | Houston | 38,217 |
| 318 | 9411 | AFO | Houston, TX | 11687 Westheimer Rd | | Houston | TX | 77077 | West | Houston | 26,024 |
| 319 | 9486 | AFO | Sparks, NV | 350 Glendale Ave. | | Sparks | NV | 89431 | West | Seattle | 20,089 |

**American Freight**
**Exhibit A**

Store List

| Count | Loc # | Concept/Banner | Name | Address | Address2 | | City | State | Zip | Territory | District | Gross Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 320 | 9603 | AFO | Huber Heights, OH | 8284 Troy Pike | | - | Huber Heights | OH | 45424 | Northeast | Cincinnati | 28,018 |
| 321 | 9670 | AFO | Naperville, IL | 540 S. Hwy 59 | | - | Naperville | IL | 60540 | Central | Chicago | 33,260 |
| 322 | 9756 | AFO | Tinley Park, IL | 16040 S. Harlem Ave | | - | Tinley Park | IL | 60477 | Central | Chicago | 24,480 |
| 323 | 9796 | AFO | Allen, TX | 109 N Greenville Ave | | - | Allen | TX | 75002 | West | West Dallas | 35,398 |
| 324 | 9849 | AFO | Henderson, NV | 1437 W. Sunset Rd. | | - | Henderson | NV | 89014 | West | Phoenix | 17,500 |
| 325 | 9876 | AFO | Raleigh, NC | 3529 Maitland Dr | | - | Raleigh | NC | 27610 | Southeast | Raleigh | 39,903 |
| 326 | 9881 | AFO | Wichita, KS | 3535 N Rock Road Ste 100 | | - | Wichita | KS | 67226 | West | Tulsa | 39,902 |
| 327 | 9888 | AFO | Clackamas, OR | 10176 SE 82nd AVE | | - | Clackamas | OR | 97086 | West | Seattle | 34,103 |
| 328 | 9897 | AFO | San Antonio, TX | 820 Rector Drive East | Suite 120 | | San Antonio | TX | 78209 | West | Houston | 26,298 |
| 329 | 9974 | AFO | Concord, NC | 545 Concord Pkwy | | - | Concord | NC | 28027 | Southeast | Charlotte | 35,742 |
| **329** | | | | | | | | | | | **Average Sq. Ft.** | **28,150** |

Docusign Envelope ID: 90F1CA5E-C7A8-496E-83E3-2395B1B7158

# **EXHIBIT B**

## **Expense Budget**

**American Freight**
**Exhibit B**

| Expense Budget | | |
|---|---|---|

| | 1st Week | Each Subsequent Week |
|---|---|---|
| **Advertising** | | |
| Digital & Media | 108,070 | 108,070 |
| Signs (2) | 1,344,685 | - |
| Sign Walkers | 155,658 | 155,658 |
| Subtotal Advertising | 1,608,413 | 263,728 |
| | | |
| **Supervision** | | |
| Fees / Wages / Expenses (3) | 615,516 | 370,899 |
| Subtotal Supervision | 615,516 | 370,899 |
| | | |
| **Miscellaneous** | | |
| Miscellaneous /Legal (4) | 50,000 | - |
| Subtotal Miscellaneous | 50,000 | - |
| | | |
| Total Expenses | 2,273,929 | 634,627 |

Notes:

1. This Expense Budget contemplates a sale term of November, 5, 2024 through December 31, 2024.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.

3. Includes Deferred Compensation and Insurance.

4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.

# EXHIBIT C

## Distribution Centers

**American Freight**
**Exhibit C**

## Distribution Centers

| Count | Loc # | Concept/Banner | Name | Address |
|---|---|---|---|---|
| 1 | 4052 | ORDC | New Castle, DE | 700 CENTERPOINT BLVD, New Castle, DE |
| 2 | 4612 | ORDC | Livonia, MI | 12001 SEARS AVE, Livonia, MI |
| 3 | 5236 | ORDC | Reno, NV | 400-450 W PARR BLVD, Reno, NV |
| 4 | 7820 | ORDC | Kansas City, MO | 3630 E FRONT ST, Kansas City, MO |
| 5 | 9240 | ORDC | Tucker, GA | 2301-A MT INDUSTRIAL BLVD, Tucker, GA |
| 6 | 9449 | ORDC | Carrollton, TX | 1215 MARSH LN STE #180, Carrollton, TX |
| 7 | 9889 | ORDC | Houston, TX | 5901 GRIGGS RD STE A, Houston, TX |

## **SCHEDULE 2**

**Store Closing Procedures**

**Store Closing Procedures**[1]

1.      The Store Closing Sales will be conducted during normal business hours or such hours as otherwise permitted by the applicable unexpired lease.

2.      The Store Closing Sales will be conducted in accordance with applicable state and local "Blue Laws," and thus, where such a law is applicable, no Store Closing Sales will be conducted on Sunday unless American Freight has been operating such stores on Sundays.

3.      On "shopping center" property, neither the Debtors nor the Consultant shall distribute handbills, leaflets, or other written materials to customers outside of any Stores' premises, unless permitted by the applicable lease or if distribution is customary in the "shopping center" in which such Store is located; provided that the Debtors and the Consultant may solicit customers in the Stores themselves.  On "shopping center" property, neither the Debtors nor the Consultant shall use any flashing lights or amplified sound to advertise the Store Closing Sales or solicit customers, except as permitted under the applicable lease or agreed in writing by the landlord.

4.      The Debtors and the Consultant shall have the right to use and sell the FF&E.  The Debtors and the Consultant may advertise the sale of the FF&E in a manner consistent with these Store Closing Procedures.  The purchasers of any FF&E sold during the Store Closing Sales shall be permitted to remove the FF&E either through the back or alternative shipping areas at any time, or through other areas after Store business hours; provided, however, that the foregoing shall not apply to *de minimis* FF&E sales made whereby the item can be carried out of the Store in a shopping bag.

5.      The Debtors and the Consultant may, but are not required to, advertise all of the Store Closing Sales as "store closing," "sale on everything," "everything must go," "going out of business" or similarly themed sales.  The Debtors and the Consultant may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Store Closing Procedures.

6.      The Debtors and the Consultant shall be permitted to utilize sign walkers, displays, hanging signs, and interior banners in connection with the Store Closing Sales; provided that such sign walkers, displays, hanging signs, and interior banners shall be professionally produced and hung in a professional manner.  Neither the Debtors nor the Consultant shall use neon or day-glo on its sign walkers, displays, hanging signs, or interior banners if prohibited by the applicable lease or applicable law.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures.  In addition, the Debtors and the Consultant shall be permitted to utilize exterior banners at (a) non-enclosed mall Stores and (b) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such

---

[1]    Capitalized terms used but not defined in these Store Closing Procedures shall have the meanings ascribed to them in the Final Order to which these Store Closing Procedures are attached as **Schedule 2** or the Motion to which, as applicable.

banners shall be located or hung so as to make clear that the Store Closing Sale is being conducted only at the affected Store, and shall not be wider than the storefront of the Store. In addition, the Debtors shall be permitted to utilize sign walkers in a safe and professional manner. Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

7. Neither the Debtors nor the Consultant shall make any alterations to the storefront, roof, or exterior walls of any Stores or shopping centers, or to interior or exterior store lighting, except as authorized by the applicable lease. The hanging of in-Store signage shall not constitute an alteration to a Store.

8. Affected landlords will have the ability to negotiate with the Debtors, or at the Debtors' direction, the Consultant, any particular modifications to the Store Closing Procedures. The Debtors and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, <u>provided</u> that such agreements do not have a material adverse effect on the Debtors or their estates.

9. Conspicuous signs will be posted in each of the affected stores to the effect that all sales are "final."

10. The Debtors will keep store premises and surrounding areas clear and orderly, consistent with past practices.

11. An unexpired nonresidential real property lease will not be deemed rejected by reason of a Store Closing Sale, Store Closing or the adoption of these Store Closing Procedures.

12. The rights of landlords against the Debtors for any damages to a Store shall be reserved in accordance with the provisions of the applicable lease.

13. If and to the extent that the landlord of any Store contends that the Debtors or the Consultant is in breach of or default under these Store Closing Procedures, such landlord shall provide at least five (5) days' written notice, served by E-mail or overnight delivery, on:

    <u>If to the Debtors</u>:

    Franchise Group, Inc.
    109 Innovation Court, Suite J,
    Delaware, Ohio 43015
    Attention: Andrew Kaminsky
    with copies (which shall not constitute notice) to:

    Young Conaway Stargatt & Taylor LLP
    Rodney Square
    1000 N. King St.

Wilmington, DE 19801
Attention:     Edmon L. Morton, Esq. (emorton@ycst.com)
               Matthew B. Lunn, Esq. (mlunn@ycst.com)
               Allison S. Mielke, Esq. (amielke@ycst.com)


<u>and</u>

Willkie Farr & Gallagher LLP
787 Seventh Ave.
New York, New York 10019
Attention:     Debra M. Sinclair (dsinclair@willkie.com)
               Betsy L. Feldman (bfeldman@willkie.com)
               Joseph R. Brandt (jbrandt@willkie.com)


<u>If to the Consultant</u>:

c/o Hilco Merchant Resources, LLC
One Northbrook Place, 5 Revere Drive, Suite 206
Northbrook, IL 60062
Fax:  847-849-0859

Attention: T. Kellan Grant (KGrant@hilcoglobal.com)

With a copy to (which shall not constitute notice):

Riemer & Braunstein LLP
Times Square Tower
Seven Times Square, Suite 2506
New York, NY 10036
Email: sfox@riemerlaw.com


If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by E-mail, or overnight delivery.