## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 14 & 132** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
THE CONSULTING AGREEMENT, (II) APPROVING PROCEDURES
FOR STORE CLOSING SALES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors") for entry of an interim order [Docket No. 132]

(the "Interim Order") and final order (this "Final Order"): (i) authorizing the Debtors to assume

that certain *Letter Agreement Governing Inventory Disposition*, by and between Hilco Merchant

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), B. Riley Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home and Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Consulting Agreement, as applicable.

Resources, LLC (the "Consultant") and American Freight LLC, dated as of November 3, 2024 (as amended, revised, or supplemented from time to time, the "Consulting Agreement"), (ii) authorizing and approving the Store Closing Sales of American Freight's Merchandise by means of "store closings," "sale on everything," "everything must go," or similar themed Sales in American Freight's retail Stores identified in the Consulting Agreement, with such Sales to be free and clear of all liens, claims, and encumbrances, (iii) authorizing the Sale of the furniture, fixtures, and equipment located in the Stores or otherwise under American Freight's control, (iv) approving the Store Closing Procedures for conducting the Store Closing Sales, and (v) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core matter pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having entered the Interim Order on November 6, 2024; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, CONCLUDED, AND DETERMINED THAT:**[3]

A.      The Debtors' decision to enter into, perform under, and make payments required by the Consulting Agreement, a copy of which is attached hereto as <u>Schedule 1</u>, is a reasonable exercise of the Debtors' sound business judgment, consistent with their fiduciary duties, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest.

B.      The Consulting Agreement, and the consideration to be paid thereunder, was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith, and from arm's-length bargaining positions.  The terms and conditions set forth in the Consulting Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.

C.      The Store Closing Procedures, a copy of which is attached hereto as <u>Schedule 2</u>, are reasonable and appropriate, will provide an efficient means for the Debtors to dispose of the Store Closure Assets, and are in the best interest of the Debtors' estates.

D.      The Store Closing Sales, in accordance with the Store Closing Procedures and with the assistance of the Consultant, will provide an efficient means for the Debtors to liquidate and dispose of the Merchandise as quickly and effectively as possible, and are in the best interest of the Debtors' estates.

E.      The Debtors and the Consultant may sell the Store Closure Assets free and clear of all liens, claims, and encumbrances as provided for herein because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those

---

[3]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

holders of any such encumbrances who did not object, or who withdrew their objections, to the entry of this Final Order are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of any such encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having such encumbrances attach to the Debtors' share of proceeds from the sale of the applicable Store Closure Assets with the same validity and priority and to the same extent and amount that any such Encumbrances had with respect to such Store Closure Assets.

F.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

G.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

H.      The Consultant is not an "insider" of the Debtors as such term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling shareholders exists between the Consultant and the Debtors.

I.      The entry of this Final Order is in the best interest of the Debtors and their estates, creditors, and all other parties in interest herein.

J.      Time is of the essence in effectuating the Consulting Agreement and the Store Closing Sales contemplated therein without interruption.  The conduct of the Store Closing Sales will provide an efficient means for the Debtors to dispose of the Store Closure Assets.  The Store Closing Sales under the Consulting Agreement must be permitted to maximize the value that the Consultant may realize from the Store Closing Sales and the value that the Debtors may realize from assuming the Consulting Agreement.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as provided herein.

2.      The Debtors and the Consultant are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Final Order.

3.      To the extent of any conflict between this Final Order, the Interim Order, the Store Closing Procedures, and the Consulting Agreement, the terms of this Final Order shall control over all other documents and the Store Closing Procedures shall control over the Consulting Agreement.

4.      Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall take effect immediately upon its entry.

**II.      Authority to Assume the Consulting Agreement**

5.      The assumption of the Consulting Agreement, pursuant to this Final Order, by the Debtors pursuant to section 365 of the Bankruptcy Code is approved on a final basis.  The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreement pursuant to sections 363 and 365 of the Bankruptcy Code, including making payments required by the Consulting Agreement, including without limitation the payment of fees (including, without limitation, any applicable base fees, Additional Incentive Compensation, and proceeds of sales of Additional Consultant Goods, if any) and reimbursement of expenses, to the Consultant without the need for any application of the Consultant or a further order of this Court, and such amounts shall be paid free and clear of any and all liens, claims and encumbrances.  Consultant's fees and expenses shall be paid from the gross proceeds of the Store Closing Sales (including proceeds of sales of Additional Consultant Goods, if any), without adherence to any weekly, monthly or aggregate limitation in a cash collateral budget entered in connection with the Chapter 11 Cases, but shall be subject to the terms of the Consulting Agreement itself, including as to any expense budget attached thereto.

6.      Subject to the restrictions set forth in this Final Order and the Store Closing Procedures, the Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Store Closing Sales. Each of the transactions contemplated by the Consulting Agreement and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Store Closing Sales from the Petition Date are hereby approved and ratified.

7.      The Debtors are authorized to amend the Consulting Agreement from time to time in accordance with its terms, including by extending the Sale Term, without further order of this Court.

8.      Notwithstanding anything to the contrary in the Consulting Agreement, including in Section F thereof, the Debtors and their estates shall not indemnify the Consultant for any damages arising primarily out of the Consultant's fraud, willful misconduct, or gross negligence; or the Consultant's breach of the Consulting Agreement.

## III.     Authority to Engage in Store Closing Sales

9.      The Debtors and the Consultant are authorized, on an final basis, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately conduct the Store Closing Sales in accordance with this Final Order, the Store Closing Procedures, and the Consulting Agreement; provided, however, that in the event the Debtors determine to conduct the Store Closing Sales at a Store that is not identified on Exhibit A to the Consulting Agreement, the Debtors shall provide seven (7) days prior notice to the landlord under the Debtors' lease agreement with respect to the Store before commencing the Store Closing Sales.

10.      The Store Closing Procedures are approved in their entirety.

11.     The Debtors are authorized to discontinue operations at the Stores, at the conclusion of the applicable Store Closing Sales, in accordance with this Final Order and the Store Closing Procedures.

12.     All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Final Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

13.     Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Store Closing Sales and to take the related actions authorized herein.

**IV.    Conduct of the Store Closing Sales**

14.     All newspapers and other advertising media in which the Store Closing Sales may be advertised and all landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Store Closing Sales and the sale of Merchandise, FF&E and Additional Consultant Goods pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise, FF&E and Additional Consultant Goods in the manner contemplated by and in accordance with this Final Order, the Store Closing Procedures, and the Consulting Agreement.

15.     The Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Store Closing Sales without necessity of further order of this Court as provided in the Consulting Agreement or the Store Closing Procedures, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," "going out of business" or

similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), and use of sign-walkers and street signage.

16. Except as expressly provided in the Consulting Agreement, any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the store closings or the Store Closing Sales (including the sale of the Merchandise, FF&E and Additional Consultant Goods), the rejection of leases, abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Store Closing Sales or the store closings.  Breach of any such provisions in these Chapter 11 Cases in conjunction with the store closings or the Store Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; provided that the store closings and the Store Closing Sales are conducted in accordance with the terms of this Final Order and the Store Closing Procedures.  The Debtors, the Consultant, and landlords of the closing locations are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures without further order of this Court, and such Side Letters shall be binding as among the Debtors and any such landlords.  In the event of any conflict between the Store Closing Procedures, this Final Order, and any Side Letter, the terms of such Side Letter shall control.

17. Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 26 and 27 herein shall apply), no person or entity, including, but not limited to, any landlord, shopping center manager, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the store closings, the Store Closing Sales, or

the sale of Merchandise, FF&E, or Additional Consultant Goods, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such Store Closing Sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, or creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the store closings or the Store Closing Sales and/or (b) instituting any action or proceeding in any court (other than in the Court), or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords, at the Stores that might in any way directly or indirectly obstruct, otherwise interfere with, or adversely affect the conduct of the store closings, the Store Closing Sales or other liquidation sales at the Stores, and/or seek to recover damages for breaches of covenants or other provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

18.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment, and other assets of American Freight for the purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Final Order.

19.     All Sales of Store Closure Assets and Additional Consultant Goods shall be "as is" and final.  However, as to the Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

20.     The Consultant shall not be liable for sales taxes except with respect to the Additional Consultant Goods and except as otherwise expressly provided in the Consulting Agreement and the payment of any and all sales taxes (except with respect to the Additional Consultant Goods or as expressly provided in the Consulting Agreement) is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due; provided that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultant shall collect, remit to the Debtors, and account for sales taxes as, and to the extent provided in, the Consulting Agreement.  This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

21.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Store Closure Assets, and all Sales of Store Closure Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests; provided, however, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the Sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

22.     To the extent that the Debtors propose to sell or abandon FF&E which may contain personal and/or confidential information about American Freight's employees and/or customers (the "Confidential Information"), American Freight shall remove the Confidential Information from such items of FF&E before such sale or abandonment.

23.     The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets and Additional Consultant Goods among the Stores. The Consultant is hereby authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement; provided that the Consultant and the Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law.

24.     Notwithstanding anything to the contrary in this Final Order or the Consulting Agreement, the Debtors shall not sell or abandon any property that the Debtors know is not owned by a Debtor without the owner's consent; provided that the Debtors will work in good faith with the owner of any such property to arrange for the return of the property to the owner; provided further, that the Debtors may abandon property owned by any landlord at the applicable Store in accordance with the terms of this Final Order; provided further, that the Debtors shall not abandon any property against which the Debtors know a third party has asserted a lien without providing notice to such party.

25.     Notwithstanding this or any other provision of this Final Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Consulting Agreement pursuant to an agency agreement or

otherwise ("Additional Assets").  Nothing contained in this Final Order shall be deemed to prohibit the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law.

## V.      Dispute Resolution Procedures with Governmental Units

26.      Nothing in this Final Order, the Consulting Agreement, or the Store Closing Procedures, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, the Consulting Agreement, or the Store Closing Procedures shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code.  The store closings and the Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").   Nothing in this Final Order, the Consulting Agreement, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Final Order, or otherwise,

pursuant to paragraph 30 herein.  Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

27.    Provided that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Consulting Agreement, and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, to the extent that the sale of Store Closure Assets is subject to any Liquidation Sale Laws, including any federal, state, or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or fast pay laws, bulk sale laws, including laws restricting safe, professional, and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Store Closing Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the Debtors and the Consultant will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Final Order and the Store Closing Procedures without the necessity of further showing compliance with any Liquidation Sale Laws.

28.    To the extent that a dispute arising from or related to the Store Closing Sales, this Final Order, the Consulting Agreement, or the Store Closing Procedures, which disputes relate to any Liquidation Sales Laws, the following Dispute Resolution Procedures shall apply:

(i)    Within three (3) business days after entry of this Final Order, the Debtors will serve by first-class mail copies of this Final Order, the Consulting Agreement, and the

Store Closing Procedures on the following: (A) the Attorney General's office for each state where the Store Closing Sales are being held, (B) the county consumer protection agency or similar agency for each county where the Store Closing Sales are being held, (C) the division of consumer protection for each state where the Store Closing Sales are being held, (D) the chief legal counsel for the local jurisdiction, and (E) the landlords for the Stores (collectively, the "<u>Dispute Notice Parties</u>").

(ii)     To the extent that there is a dispute arising from or relating to the Store Closing Sales or this Final Order, as applicable, the Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "<u>Reserved Dispute</u>"), the Court shall retain jurisdiction to resolve the Reserved Dispute. Any time within ten (10) days following entry of the Final Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (the "<u>Dispute Notice</u>"), explaining the nature of the dispute to: (A) proposed counsel to the Debtors, (i) Willkie Farr & Gallagher, LLP, 787 7th Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com), Betsy L. Feldman (bfeldman@willkie.com), and Joseph R. Brandt, Esq. (jbrandt@willkie.com), and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Edmon L. Morton, Esq. (emorton@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), and Allison S. Mielke, Esq. (amielke@ycst.com); (B) the Consultant, Attn: (i) c/o Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax: 847-849-0859, Attn: T. Kellan Grant; and (ii) (1) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox (sfox@riemerlaw.com), and (2) Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com); (C) the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"), J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); (D) counsel to the official committee appointed in these Chapter 11 Cases (the "<u>Committee</u>"), Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th floor, Wilmington, Delaware 19801, Attn: Bradford J. Sandler (bsandler@pszjlaw.com) and Colin R. Robinson (crobinson@pszjlaw.com); and (E) the landlord of any Store related to the Reserved Dispute, including their counsel of record, if known. If the Debtors, the Consultant and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "<u>Dispute Resolution Motion</u>").

(iii)    In the event that a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of this Final Order nor the conduct of the Debtors pursuant to this Final Order violates such Liquidation Sale Laws.

14

Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Final Order, absent further order of the Court.  Upon the entry of this Final Order, the Court grants authority for the Debtors and the Consultant to conduct the Store Closing Sales pursuant to the terms of this Final Order, the Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

(iv)    If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (ii) and (iii) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

29.    Subject to paragraphs 26 and 27 above, each and every federal, state, or local agency, departmental or Governmental Unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Store Closing Sales.

30.    Provided that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Consulting Agreement, and the Store Closing Procedures, and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and the Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Final Order and the Store Closing Procedures without the necessity of further showing compliance with any such

Liquidation Sale Laws; provided that the Consultant and the Debtors are not authorized to abandon, and are directed to remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law.

31.    Within three (3) business days of entry of this Final Order, the Debtors shall serve copies of this Final Order, the Consulting Agreement, and the Store Closing Procedures via E-mail, facsimile or regular mail, on: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney's Office for the District of Delaware; (iii) those creditors holding (a) the fifty (50) largest unsecured claims against the Debtors' estates, and (b) to the extent not already served pursuant to the foregoing, those creditors holding the twenty (20) largest unsecured claims against the estate of American Freight; (iv) counsel to the ABL Lenders; (v) counsel to the Ad Hoc Group of First Lien Secured Lenders; (vi) counsel to the Second Lien Term Loan Lenders and HoldCo Term Loan Lenders; (vii) counsel to the DIP Agent; (viii) counsel to the DIP Lenders; (ix) counsel to the Committee, (x) the Internal Revenue Service; (xi) the Attorney General's office for each state where the Store Closing Sales are being held; (xii) the division of consumer protection for each state where the Store Closing Sales are being held; (xiii) the chief legal counsel for the local jurisdiction; and (xiii) the landlords for the Stores.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VI.    Other Provisions

32.    The Debtors are authorized, but not directed, to implement and make payments under the Store Bonus Program.  For the avoidance of doubt, no Store Closing Bonuses shall be paid to any executives, directors, or "insiders," as that term is defined in the Bankruptcy Code, absent further Court order.

33.    The Consultant is authorized to supplement the Merchandise in the Stores with Additional Consultant Goods; provided that any such Additional Consultant Goods must be of like

kind and no lesser quality than the Merchandise. The Additional Consultant Goods shall be purchased by the Consultant and delivered to the Stores at the Consultant's sole expense (including as to labor, freight, and insurance relative to shipping such Additional Consultant Goods to the Stores).  Sales of Additional Consultant Goods shall otherwise be made in conjunction with the Store Closing Sales and be run through the Debtors' cash register systems; provided, however, that the Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number or in such other manner that shall distinguish the Additional Consultant Goods from the Merchandise. The Consultant and the Debtors shall cooperate to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could distinguish the Additional Consultant Goods from the Merchandise.

34.    All transactions relating to the Additional Consultant Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from the Consultant to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "UCC") and not a consignment for security purposes.

35.    The Consultant shall pay to the Debtors an amount equal to five percent (5%) of the gross proceeds (excluding sales taxes) from the sale of Additional Consultant Goods in the Stores completed during the Sale Term.  All remaining amounts from the sale of the Additional Consultant Goods shall be the exclusive property of the Consultant, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their proceeds.  At the Consultant's sole cost and expense, the Debtors shall insure the Additional Consultant Goods at the Consultant's request and, if required, promptly file any proofs of loss with regard to the same with the Debtors' insurers. The Consultant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

36.     The Consultant is hereby granted a first-priority security interest in and lien on (a) the Additional Consultant Goods and (b) the Additional Consultant Goods proceeds, which security interest shall be deemed perfected, on a final basis, pursuant to this Final Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties; provided that the Consultant is authorized to deliver any notices and file any financing statements under the applicable UCC and amendments thereof with respect to the Consultant's interest in the Additional Consultant Goods and any proceeds from the sale thereof.

37.     With respect to each Closing Store, at the conclusion of the Sale at the Store, the Consultant shall vacate the Closing Store; provided that Consultant may abandon any FF&E not sold in the Sale at the closing store at the conclusion of the Sale at such Closing Store (the "Termination Date"), without cost or liability of any kind to the Consultant.  The Debtors will have the option to remove the FF&E prior to the Termination Date.  For the avoidance of doubt, as of the Termination Date with respect to each closing store, the Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E.

38.     The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against the Consultant, in each case, other than as expressly provided for in the Consulting Agreement, as modified by this Final Order.

39.     To the extent the Debtors are subject to any state "fast pay" laws in connection with the Store Closing Sales, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of:  (a) American Freight's next regularly scheduled payroll; and (b) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

40.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, other than assumption of the Consulting Agreement; (f) a waiver or limitation of the Debtors' rights or the rights of any other person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

41.     Except as otherwise provided herein with respect to the Consultant's base fees, any Additional Incentive Compensation (if applicable), and Consultant's entitlement to receive the gross proceeds of sales of Additional Consultant Goods (net of any applicable Additional Consultant Goods Fee, if any), nothing herein shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

42.     Except as otherwise provided herein with respect to the Consultant's base fees, any Additional Incentive Compensation (if applicable), and Consultant's entitlement to receive the gross proceeds of sales of Additional Consultant Goods (net of any applicable Additional

Consultant Goods Fee, if any), nothing herein, nor as a result of any payment made pursuant to this Final Order, shall be deemed or construed as a waiver of the right of Debtors, or shall impair the ability of Debtors, to contest the validity and amount of any payment made pursuant to this Final Order.

43.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

44.     Subject to Paragraph 5 hereof, notwithstanding anything to the contrary set forth herein, any payment made, or authorization contained, hereunder shall be subject in all respects to the Approved Budget (as such term is defined in the order approving the Debtors' postpetition financing agreements).

45.     Nothing in this Final Order shall amend, alter, or otherwise modify the terms of the *Final Order (I) Authorizing the Debtors to (a) Obtain Senior Secured Priming Superpriority Postpetition Financing and (b) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, as it relates to any tax reserve established as adequate protection for the Tax Liens of the Texas Taxing Authorities (each as defined therein).

46.     Upon request, which request shall not be made more than once per week, the Debtors shall provide the Committee's professionals with a status update in connection with the Store Closing Sales.

47.     Notwithstanding anything to the contrary in the Interim Order, this Order, the Store Closing Procedures, the Consulting Agreement, or any Side Letter(s): (a) none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one

hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred pursuant to any Store Closing Sale(s) without the express prior written consent of the applicable insurer and/or third-party administrator; and (b) nothing alters or modifies the terms and conditions of any insurance policies or related agreements issued by ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with each of their successors, and solely in their roles as insurers).

48.     Notice of the Motion as provided therein is deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the local rules of this Court are satisfied by such notice.

49.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

50.     Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002, to the extent possible.

51.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

52.     This Court shall retain jurisdiction with regard to all issues or disputes relating to this Final Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the store closings or Store Closing Sales, (c) any other disputes related to the store closings or Store Closing Sales, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims,

encumbrances, and other interests.  No such parties or person shall take any action against the Debtors, the Consultant, the landlords, the store closings, or the Store Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

**Dated: December 6th, 2024**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**