**<u>EXHIBIT A</u>**

**Revised Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket No. 154** |

**ORDER (I) (A) APPROVING BIDDING
PROCEDURES FOR THE SALE OF ALL OR
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) SCHEDULING
AN AUCTION AND A SALE HEARING AND APPROVING THE FORM
AND MANNER OF NOTICE THEREOF, (C) APPROVING ASSUMPTION
AND ASSIGNMENT PROCEDURES, AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession in the above-

captioned cases (collectively, the "Debtors") for entry of an order (this "Order") (I) (a) authorizing

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures, the Restructuring Support Agreement, or the First Day Declaration, as applicable.

and approving the bidding procedures, as revised and attached hereto as <u>Exhibit 1</u> (the "<u>Bidding</u>

<u>Procedures</u>") for the sale of all or substantially all of the Debtors' Assets, (b) scheduling an Auction

and a Sale Hearing and approving the form and manner of notice of the Auction, the Sale, and the

Sale Hearing (the "<u>Sale Hearing Notice</u>"), (c) establishing procedures for the assumption and

assignment of Contracts and approving the form and manner of notice (the "<u>Assumption and</u>

<u>Assignment Notice</u>") to each relevant non-debtor counterparty to a Contract of (i) the Debtors'

calculation of the amount necessary to cure any defaults under an applicable Contract (the "<u>Cure</u>

<u>Costs</u>") and (ii) certain other information regarding the potential assumption and assignment of

Contracts in connection with the Sale, and (d) granting related relief, and (II) (a) approving the

sale of the Debtors' assets free and clear of liens, claims, interests, and encumbrances,

(b) approving the assumption and assignment of executory contracts and unexpired leases, and

(c) granting related relief (I (a)-(d) and II (a)-(c), collectively, the "<u>Sale Process</u>"); and upon the

*Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day*

*Pleadings*; and upon the Declaration in further support of the Motion; and upon the record of the

hearing of the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having

been adequate and appropriate under the circumstances; and it appearing that the relief requested

is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after

due deliberation and sufficient cause appearing therefor,

**THE COURT FINDS THAT:**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.     The bases for the relief requested in the Motion are: (i) sections 105, 363, and 365 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014; and (iii) Local Rule 6004-1.

D.     The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) as applicable, schedule the Auction and Sale Hearing (to consider granting the other relief requested in the Motion); (iii) approve the forms and manner of the Sale Hearing Notice, the Auction of the Assets (if any), and the Sale Hearing; and (iv) approve the procedures for the assumption and assignment of the Contracts, including the Assumption and Assignment Notice of proposed Cure Costs to each relevant counterparty to a Contract and certain other information regarding the potential assumption and assignment of Assigned Contracts in connection with the Sale of the Assets.  The best interests of the Debtors, their estates, creditors, and other parties in interest will be served by such approval and authorization.

E.      The Bidding Procedures are fair, appropriate, and reasonably designed to promote active bidding at and participation in the Auction (if held) to ensure that the highest or otherwise best value is generated for the Assets.  The Bidding Procedures are designed to continue the Debtors' robust and extensive marketing and sale process during these Chapter 11 Cases following entry of this Order in order to solicit the highest or otherwise best value for the Assets.  The Bidding Procedures represent the best method for maximizing the realizable value of the Assets for the benefit of the Debtors' estates.

F.      The Sale Hearing Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (if held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; and (iv) a general description of the Sale as being free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds.  No other or further notice of the Sale shall be required.

G.      The Assumption and Assignment Notice, substantially in the form attached hereto as <u>Exhibit 3</u>, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the list of executory contracts and unexpired leases that may be assumed by the Debtors and assigned to the Qualified Bidder(s) (as defined in the Bidding Procedures) that submit the Successful Bid (such Qualified Bidder, the "<u>Successful Bidder</u>") (if any), including with respect to Cure Costs.  No other or further notice of the Assumption and Assignment of the Assigned Contracts shall be required.

4

H.      The Assumption and Assignment Procedures set forth herein are fair, reasonable, appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

I.      The Motion and this Order are reasonable and appropriate, and the Bidding Procedures comply with the requirements set forth by Local Rule 6004-(1)(c).

J.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are hereby overruled.

**I.      Important Dates and Deadlines.**

3.      The Debtors are authorized to proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures (subject to the terms thereof) in accordance with the following timeline:

| Deadline | Event |
| --- | --- |
| **December 11, 2024** | Entry of Bidding Procedures Order |
| **Two (2) Business Days after the entry of the Bidding Procedures Order, or as soon as practicable after entry of the Bidding Procedures Order** | Deadline for Debtors to publish Sale Hearing Notice |
| **Two (2) Business Days after the entry of the Bidding Procedures Order, or as soon as practicable thereafter** | Deadline for Debtors to file and serve Sale Hearing Notice |

| Deadline | Event |
|---|---|
| **December 20, 2024 at 5:00 p.m. (ET)** | Deadline to file and serve Assumption and Assignment Notice |
| **December 23, 2024 at 5:00 p.m. (ET)** | Deadline for Acceptable Bidders to submit non-binding Indications of Interest |
| **4:00 p.m. (ET) on January 3, 2025** | Sale Objection Deadline |
| **4:00 p.m. (ET) on the date that is fourteen (14) days after service of the Assumption and Assignment Notice** | Deadline to object to the Assumption and Assignment Notice |
| **February 3, 2025 at 5:00 p.m. (ET)** | Bid Deadline |
| **Twenty-four (24) hours after the Bid Deadline for delivery via email, or as soon as reasonably practicable thereafter**<br><br>**One (1) business day after the Bid Deadline for delivery via first class mail, or as soon as reasonably practicable thereafter** | Deadline to deliver adequate assurance of future performance to requesting contract counterparties |
| **No later than 48 hours prior to Auction, if applicable** | Deadline to designate Qualified Bidders |
| **Seven (7) days after delivery of adequate assurance of future performance information** | Deadline to object to adequate assurance of future performance under Assigned Contracts (if any) |
| **February 7, 2025 at 10:00 a.m. (ET)** | Auction, solely in the event the Debtors receive at least one Qualified Bid prior to or at the Bid Deadline that constitutes a Sufficient Bid |
| **As soon as practicable after the Auction, if applicable** | Deadline for Debtors to file and serve Notice of Successful Bidder |
| **February 6, 2025 at 4:00 p.m. (ET), if no Auction is held** | Subsequent Sale Objection Deadline[3] |

---

[3]    "Subsequent Sale Objection" shall mean any and all objections (a) to specific terms of the Sale or specific provisions of the Asset Purchase Agreement or the Sale Order that could not have been raised based on the Motion

| Deadline | Event |
|---|---|
| **February 10, 2025 at 4:00 p.m. (ET), if an Auction is held** | |
| **February 8, 2025, at 5:00 p.m. (ET), if no Auction is held** <br><br> **February 13, 2025, at 12:00 p.m. (ET), if an Auction is held** | Deadline to Reply to Sale Objections, Cure Objections, and Subsequent Sale Objections |
| **At the Sale Hearing, if no Auction is held** <br><br> **February 13, 2025, at 12:00 p.m. (ET), if an Auction is held** | Deadline to Reply to Adequate Assurance Objections |
| **February 10, 2025 at [●] a.m./p.m. (ET), subject to the availability of the Court** <br><br> **February 14, 2025 at [●] a.m./p.m. (ET), subject to the availability of the Court** | Sale Hearing, if no Auction is held <br><br> Sale Hearing, if an Auction is held |

## II.    Bidding Procedures and Related Relief

4.      The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are hereby approved in their entirety, are incorporated herein by reference, and shall govern the submission, receipt, and analysis of all Bids and the proceedings related to the Sale of the Assets and the Auction (if any).  Any party desiring to bid on the Assets or a portion thereof shall comply with the Bidding Procedures and this Order in all respects.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures (subject in all respects to the terms thereof).

5.      The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a "Qualified Bid," are fair, reasonable, and appropriate, and are

---

alone, (b) related to the identity of the Successful Bidder(s) or Backup Bidder (as applicable) (other than with respect to executory contracts and unexpired leases), or (c) to the conduct of the Auction (if applicable).

designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

6.      The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of any such provision, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

7.      In connection with any Sale and notwithstanding anything to the contrary in the Bidding Procedures, until the Bid Deadline, any Acceptable Bidder (i) holding a valid and perfected security interest in any of the Assets and (ii) having the right under applicable non-bankruptcy law to credit bid claims secured by such security interest (any such Acceptable Bidder satisfying clauses (i) and (ii), a "Secured Party"), may seek to credit bid any portion and up to the full amount of the value of such Secured Party's claims with respect to any individual Asset, portion of the Assets, or all Assets, in each case constituting such Secured Party's collateral by which such claims are secured (the "Credit Bid Right" and, such bid, the "Credit Bid"); provided, however, that, anything in the Bidding Procedures to the contrary notwithstanding, the Senior Secured Lenders (including any agent or other representative for any of the Senior Secured Lenders) shall not be required to submit a Bid, including any Credit Bid, until the later of (x) six (6) hours prior to the commencement of the Auction (if held) and (y) twenty-four (24) hours after the Debtors designate Qualified Bidders.

8.      A "Secured Party" shall be deemed to include any of the Senior Secured Lenders (including any agent or other representative for any of the Senior Secured Lenders) with respect to the full amount of the Senior Secured Claims.

9.      If a Bid (including a Credit Bid) is submitted by, or on behalf of, the Senior Secured Lenders, (a) such Bid shall be deemed a Qualified Bid (as defined herein) in all respects, (b) the Senior Secured Lenders and/or the person or entity submitting the Bid on their behalf (including any agent or other representative for the Senior Secured Lenders) shall be deemed a Qualified Bidder (as defined herein), (c) the Senior Secured Lenders and/or the person or entity submitting the Bid on their behalf (including any agent or other representative for the Senior Secured Lenders) shall not be required to provide a deposit, (d) the value of the Senior Secured Claims that are the subject of any such Credit Bid shall be the full face value of such Claims, (e) in the event the Senior Secured Lenders submit a Credit Bid for Combined Assets, any such Credit Bid may include Senior Secured Claims that are included in any other Credit Bid, and (f) at the conclusion of any Auction, any Credit Bid selected as the Successful Bid may include Senior Secured Claims that were included in any other previously submitted Credit Bid solely if such other Credit Bid was not identified by the Debtors as the Successful Bid prior to the conclusion of the Auction at which such Credit Bid was submitted.

10.     Any Bid submitted by, or on behalf of, the Senior Secured Lenders (including any Bid submitted by any agent or other representative for the Senior Secured Lenders) need only be a written notice that specifies (either specifically or generally) the amount of the Senior Secured Claims and/or other consideration that are the subject of such Bid and the Assets that are the subject of such Bid.  The Senior Secured Lenders (including any agent or other representative for any of the Senior Secured Lenders) shall be permitted to submit a Bid (including a Credit Bid) with respect to any individual Asset, portion of the Assets, or all or substantially all of the Assets even if another Bid that is a Sufficient Bid has been submitted for such individual Asset, portion of the Assets, or all or substantially all of the Assets, as applicable.  Any Credit Bid submitted by, or on

9

behalf of, the Senior Secured Lenders (including any Credit Bid submitted by any agent or other representative for the Senior Secured Lenders) may be combined with, supplemented by, or replaced with, a cash Bid at any time by any Senior Secured Lenders and/or any person or entity submitting a Bid on their behalf (including any agent or other representative for the Senior Secured Lenders), including any Bid submitted before or during the Auction. The provisions of this paragraph and the immediately preceding paragraph shall apply to any Bid (including any Credit Bid) that is submitted by, or on behalf of, the Senior Secured Lenders, at any time, including any Bid submitted before or during the Auction.

11.     Upon consummation of a Sale pursuant to the exercise of the Credit Bid Right or any Bid submitted by, or on behalf of, the Senior Secured Lenders, the applicable Secured Party shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets, and such Secured Party shall have the right to designate any person or entity that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are subject to the applicable Credit Bid or Bid.

12.     To the extent that the Senior Secured Lenders (including any agent or other representative of the Senior Secured Lenders) seek to consummate any transaction contemplated by any Credit Bid pursuant to section 363 of the Bankruptcy Code, the Senior Secured Lenders shall provide adequate assurance of future performance in accordance with section 365 of the Bankruptcy Code.

13.     For the avoidance of doubt, and notwithstanding anything to the contrary contained in the Bidding Procedures or herein, the Credit Bid Right shall be subject in all respects to any

conditions or limitations on such right set forth in the Final DIP Order, including without limitation, prior to the expiration of the Challenge Deadline, and section 363(k) of the Bankruptcy Code.

14.     Acceptable Bidders shall have until **5:00 p.m. (prevailing Eastern Time) on December 23, 2024** to submit non-binding indications of interests of the Debtors' Assets.

15.     The deadline by which all Bids for all or any portion of the Debtors' Assets must be *actually received* by the parties specified in the Bidding Procedures is **5:00 p.m. (prevailing Eastern Time) on February 3, 2025** (the "Bid Deadline"); provided, however, that the Senior Secured Lenders shall not be required to submit a Bid (including any Credit Bid) until the later of (x) six (6) hours prior to the commencement of the Auction and (y) twenty-four (24) hours after the Debtors designate Qualified Bidders.

16.     No Bid shall seek to entitle any Acceptable Bidder to any right to receive a break-up fee, topping fee, termination fee or similar type of payment, any compensation, or any expense reimbursement, and the Acceptable Bidder shall waive the right to pursue any administrative expense claim (including under a theory of substantial contribution) under section 503(b) of the Bankruptcy Code related in any way to the submission of such Bid or participation in any Auction.

### III.    Auction.

17.     If the Debtors receive at least one Sufficient Bid at least forty-eight (48) hours prior to the date of the Auction, then the Debtors shall hold an Auction for the Assets that are the subject of such Sufficient Bid unless the Debtors do not receive another Qualified Bid that covers such Assets prior to the later of (x) six (6) hours prior to the commencement of the Auction and (y) twenty-four (24) hours after the Debtors designate Qualified Bidders (in which case, the Debtors shall not hold an Auction with respect to the Assets that are the subject of that Sufficient Bid and

the Debtors shall proceed with such Sufficient Bid). No later than forty-eight (48) hours prior to the commencement of the Auction, the Debtors will notify all Qualified Bidders and the Consultation Parties of the opening Qualified Bid at the Auction (the "Minimum Bid"), which Minimum Bid shall in no event be less than a Sufficient Bid, in accordance with the second paragraph of Article I of the Bid Procedures (other than a Bid submitted by or on behalf of the Senior Secured Lenders), and provide copies of the Asset Sale Bid Documents supporting the Minimum Bid to all Qualified Bidders.

18.    The Auction, if held, shall take place at **10:00 a.m. (prevailing Eastern Time) on February 7, 2025**, (i) via a virtual meeting, (ii) at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, or (iii) at such later date, time, and location as designated by the Debtors, after providing notice to the Notice Parties and the Consultation Parties. The Debtors shall file a notice identifying the Successful Bidder and Backup Bidder (if selected) as soon as reasonably practicable after closing the Auction, if any, and in any event not more than twenty-four (24) hours following closing the Auction.

19.    If the Debtors do not receive any Sufficient Bids, after consultation with the Consultation Parties, the Debtors shall file with the Court, serve on the Sale Hearing Notice Parties (as defined below), and cause to be published on the website maintained by Kroll Restructuring Administration LLC, the Debtors' claims and noticing agent in these Chapter 11 Cases, located at https://cases.ra.kroll.com/FRG (the "Case Website"), as soon as reasonable practicable after cancelling the Auction, and in any event not more than twenty-four (24) hours following cancellation, a notice containing the following information (as applicable): (a) a statement that the Auction has been adjourned or canceled; (b) if there is a Successful Bidder, the identity of the Successful Bidder and Backup Bidder (if any); (c) if there is a Successful Bidder, a copy of the

Successful Bid or a summary of the material terms of such Bid, including any assumption and assignment of Contracts contemplated thereby, or instructions for accessing the Successful Bid free of charge from the Case Website; (d) if there is a Backup Bidder, a copy of the Backup Bid or a summary of the material terms of such Bid, including any assumption and assignment of Contracts contemplated thereby, or instructions for accessing the Backup Bid free of charge from the Case Website; and (e) the date, time, and location of the adjourned Auction or the Sale Hearing.

20.     Pursuant to Local Rule 6004-1(c)(ii): if an Auction is held, as set forth in the Bidding Procedures (a) each bidder participating at the Auction shall be required to confirm on the record and in writing that it has not engaged in any collusion with respect to the submission of any Bid or the Auction; (b) the Auction shall be conducted openly and all creditors will be permitted to attend (but, unless such creditor is a Qualified Bidder, not participate in) the Auction; and (c) the Auction shall be transcribed by a court reporter or videotaped.

21.     Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction (if held), the Debtors will evaluate all Bids that are timely submitted by the Bid Deadline and, as the Debtors deem appropriate in the exercise of their reasonable judgment, may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.

22.     The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, (a) determine which Acceptable Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids (other than any Credit Bid submitted by, or on behalf of, the Senior Secured Lenders, which shall automatically be deemed a Qualified Bid); (c) determine, consistent with the Bidding Procedures, the Successful Bid and the Backup Bid, if any; (d) reject, in consultation with the Consultation Parties, at any time before entry of an order of this Court approving a Qualified Bid, any Bid (other than a Bid submitted by, or on behalf of, the Senior

13

Secured Lenders) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders; and (e) except as otherwise set forth in the Bidding Procedures, modify, in their reasonable business judgment, after consultation with the Consultation Parties, and subject to the Restructuring Support Agreement, the Bidding Procedures in good faith and in a manner consistent with the Debtors' fiduciary duties to further the goal of attaining the highest or otherwise best offer for the Assets or impose, at or prior to the selection of any Successful Bidder, additional customary terms and conditions on the Sale, including: (1) extending the dates and deadlines set forth in the Bidding Procedures; (2) adjourning the Auction (if held) without further notice; (3) adding or modifying procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction, and/or adjourning the Sale Hearing in open court (if held); (4) rejecting any or all Bids or Qualified Bids; (5) adjusting the applicable minimum Overbid increment; and (6) selecting a draft purchase agreement agreed to by a Qualified Bidder in connection with a Qualified Bid to serve as the purchase agreement that will be executed by the Successful Bidder or Successful Bidders, as applicable and with any necessary adjustments for the Assets and Liabilities being purchased and assumed, upon conclusion of the Auction, if held; provided, however, that nothing herein shall permit the Debtors to modify the Bidding Procedures to reduce the time provided for a party in interest to file an objection.

**IV.    The Sale Hearing.**

23.    The form of the Sale Hearing Notice attached to this Order as Exhibit 2 is approved. Within two (2) Business Days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Hearing Notice on the following parties (or their

respective counsel, if known) by first class mail or email: (a) the Notice Parties; (b) all parties to executory contracts and unexpired leases proposed to be assumed, assigned, or rejected as part of the proposed Sale; (c) all parties who have expressed a written interest in some or all of the Assets within six (6) months prior to entry of the Bidding Procedures Order; (d) all known holders of liens, encumbrances, and other claims secured by the Assets; (e) the Internal Revenue Service; (f) all applicable state and local taxing authorities; (g) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (h) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Hearing Notice Parties").

24.     Two (2) Business Days after the entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall publish the Sale Hearing Notice in *The New York Times* (national edition), or similar nationally circulated publications, and on the Case Website.

25.     Objections, if any, to the Sale (each, a "Sale Objection") must be made no later than 4:00 p.m. (prevailing Eastern Time) on January 3, 2025 (the "Sale Objection Deadline"). Objections must: (a) be in writing and specify the nature of such objection; (b) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** no later than the Sale Objection Deadline by the following parties (the "Objection Notice Parties"):

| Co-Counsel to the Debtors | Co-Counsel to the Debtors |
|---|---|
| Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>Attn.: Debra M. Sinclair, Esq.<br>Matthew A. Feldman, Esq. | Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn.: Edmon L. Morton, Esq. |

| | |
|---|---|
| Betsy Feldman, Esq.<br>Joseph R. Brandt, Esq. | Matthew B. Lunn, Esq.<br>Allison S. Mielke, Esq.<br>Shella Borovinskaya, Esq. |
| **Counsel to the DIP Lenders and the Prepetition First Lien Holders** | **The United States Trustee** |
| Paul Hastings LLP<br>200 Park Avenue<br>New York, New York 10166<br>Attn: Jayme Goldstein, Esq.<br>Jeremy Evans, Esq.<br>Isaac Sasson, Esq.<br><br>and<br><br>Landis Rath & Cobb LLP<br>919 N. Market Street Suite 1800,<br>Wilmington, DE 19317<br>Attn: Adam G. Landis, Esq.<br>Matthew McGuire, Esq. | Office of the United States Trustee<br>for the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Attn.: Timothy J. Fox, Esq. |
| **Counsel to the Committee** | |
| Pachulski Stang Ziehl & Jones LLP<br>780 Third Avenue, 34th Floor<br>New York, New York 10017<br>Attn: Bradford J. Sandler, Esq.<br>Robert J. Feinstein, Esq.<br>Paul J. Labov, Esq.<br>Theodore S. Heckel, Esq. | |

26.     Pursuant to the terms of the Bidding Procedures, all objections (a) to specific terms of the Sale or specific provisions of the Asset Purchase Agreement or the Sale Order that could not have been raised based on the Bidding Procedures Motion alone, (b) related to the identity of the Successful Bidder(s) or Backup Bidder (as applicable) (other than with respect to executory contracts and unexpired leases), or (c) to the conduct of the Auction (if applicable) (the "Subsequent Sale Objection Deadline") must (i) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) be

16

filed with the Court and served on the Objection Notice Parties by no later than (x) **4:00 p.m. on February 6, 2025 (prevailing Eastern Time)**, if no Auction is held or (y) **4:00 p.m. on February 10, 2025 (prevailing Eastern Time)**, if an Auction is held.

27.     Pursuant to the terms of the Bidding Procedures, all non-Debtor counterparties to Contracts shall have an opportunity to object to the adequate assurance of future performance under Assigned Contracts (if any) (the "Adequate Assurance Objection").  Any such objection must (i) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) be filed with the Court and served on the Objection Notice Parties **by no later than seven (7) days after delivery of adequate assurance of future performance information.**

28.     Any party wishing to do so shall file a reply to any Sale Objections, Subsequent Sale Objections, and Cure Objections (as defined herein) by no later than **5:00 p.m. (prevailing Eastern Time) on February 8, 2025**, if no Auction is held, or **12:00 p.m. (prevailing Eastern Time) on February 13, 2025**, if an Auction is held.  Any party wishing to do so shall file a reply to any Adequate Assurance Objection by no later than **at the Sale Hearing**, if no Auction is held, or **12:00 p.m. (prevailing Eastern Time) on February 13, 2025**, if an Auction is held.  Subject to the availability of the Court, the Sale Hearing shall take place on **February 10, 2025 at [●] a.m./p.m. (prevailing Eastern Time)**, if no Auction is held, or on **February 14, 2025, at [●] a.m./p.m. (prevailing Eastern Time)**, if an Auction is held.

29.     Any party failing to timely file a Sale Objection, a Subsequent Sale Objection, or an Adequate Assurance Objection shall be forever barred from objecting and shall be deemed to have consented to each Sale, including the transfer of the Debtors' right, title, and interest in, to, and under the purchased Assets free and clear of any and all liens, claims, interests, and

encumbrances in accordance with the Successful Bidder's purchase agreement (or Backup Bidder's, as applicable).

30.     The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties and in accordance with the Bidding Procedures, from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing (if held).

**V.      Assumption and Assignment Procedures.**

31.     The procedures set forth below regarding the assumption and assignment of the Contracts (each, an "Assigned Contract," and, collectively, the "Assigned Contracts") that may be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to a Successful Bidder (if any) in connection with the Sale contemplated by such Successful Bidder's Successful Bid or Backup Bid (if any), subject to revision prior to the date of the Sale closing (the "Sale Closing") and pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "Assumption and Assignment Procedures") are hereby approved to the extent set forth herein and shall govern the potential assumption and assignment of all of the Debtors' Assigned Contracts that may be assumed and assigned in connection with the Sale, subject to the payment of any amounts necessary to cure any defaults arising under any Assigned Contract (the "Cure Costs"):

(a)     **Assumption and Assignment Notice**.  The form of the Assumption and Assignment Notice attached to this Order as Exhibit 3 is approved.  By December 20, 2024 (the "Assumption and Assignment Service Deadline"), the Debtors shall file and serve the Assumption and Assignment Notice by first class mail or email on each counterparty to the Contracts at the notice address set forth in the Contract (and their respective counsel, if known) that may be assumed by the Debtors and assigned to a Successful Bidder (if any) in connection with the Sale contemplated by such Successful Bidder's Successful Bid.  The Assumption and Assignment Notice shall inform each recipient of (i) the timing and procedures relating to such assumption and assignment, (ii) the title (or an appropriate description), date of the Contract (if available), and, if the Contract is for a real property lease, the store

18

number and physical address of the leased premise, (iii) the name of the non-Debtor counterparty to the Contract, (iv) the Debtors' good faith estimates of the Cure Costs (if any) required in connection with the Contract, and (v) the Cure Objection Deadline; provided, however, that service of an Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract and/or unexpired lease or that any stated Cure Cost constitutes a claim against the Debtors or any Successful Bidder, and all rights with respect thereto are expressly reserved.  Further, the inclusion of a Contract on the Assumption and Assignment Notice is not a guarantee that such Contract will ultimately be assumed and assigned.  Any determination of whether such Contract is an executory contract or can be rejected will be made in accordance with the Bankruptcy Code, the Bankruptcy Rules, and all applicable orders of this Court.

(b)    **Adequate Assurance of Future Performance**.   Any (1) landlord counterparty (and their counsel, if known) and (2) other Contract counterparty (and their counsel, if known) upon request by such counterparty to the Debtors' counsel, delivered not less than twenty-four (24) hours prior to the Bid Deadline, shall be provided with adequate assurance information relevant to the affected counterparty (by email if available or otherwise by first class mail) no later than (a) twenty-four (24) hours after the Bid Deadline for delivery via email, or as soon as reasonably practicable thereafter, and (b) one (1) business day after the Bid Deadline for delivery via first class mail, or as soon as reasonably practicable thereafter.  Such adequate assurance may include: (i) the specific name of the proposed assignee and the proposed name under which the proposed assignee intends to operate the store if not the current trade-name of the Debtors, (ii) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (iii) audited or unaudited financial statements for the past three (3) years, including all supplements or amendments thereto, tax returns for the past two (2) years, bank account statements or annual reports; (iv) a description of the proposed business to be conducted at the premises; (v) the specific name of the proposed assignee/tenant, if not the prospective purchaser, and the proposed name under which the assignee intends to operate the store if not a current trade-name of the Debtors; (vi) the proposed assignee's intended use of the leased premises and a description of the proposed business to be conducted at the premises; (vii) cash flow projections for the proposed assignee, (viii) the proposed assignee's most recent business plan, (ix) all cash flow projections for the lease(s) subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the lease(s), a summary of the proposed assignee's and guarantor's (as applicable) experience operating retail stores; (x) the number of retail stores the proposed assignee and any guarantor operates and all trade names used; (xi) a contact person for the proposed assignee;

19

and/or (xii) any other documentation that the Debtors may further request. The applicable non-Debtor counterparty shall keep such information confidential and shall not disclose such information to any party except in the ordinary course of business in connection with its assessment of the potential assignee as its tenant or Contract counterparty. Any Adequate Assurance Objection must be filed with the Court and served on the Objection Notice Parties **no later than seven (7) days after delivery of adequate assurance of future performance information**. Any Adequate Assurance Objection that includes confidential, non-public adequate assurance information shall be filed under seal without the need to file a separate motion or obtain a further order of this Court to file such objection under seal. Any party filing an Adequate Assurance Objection under seal shall follow the procedures for the same set forth in Local Rule 9018-1(d), including, without limitation, filing a motion to seal confidential and non-public information. The unredacted versions of such Adequate Assurance Objection shall be served upon the Objection Notice Parties; provided that all rights of all parties in interest in these Chapter 11 Cases are reserved to oppose the filing under seal of any such information and to seek any other relief from this Court with respect to such matter.

(c)     **Cure Costs**. The payment of the applicable Cure Costs shall (i) effectuate a cure of all defaults existing under the applicable Assigned Contracts, and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

(d)     **Supplemental Assumption and Assignment Notice**. To the extent the Debtors, at any time after the Assumption and Assignment Service Deadline (i) identify additional Contracts that may be assumed and assigned to the Successful Bidder, if any (the "Additional Contracts"), (ii) remove Contracts from the list of Contracts that may be assumed and assigned in connection with a Sale, and/or (iii) modify the previously stated Cure Cost associated with any Contract, the Debtors will promptly file with this Court and serve by first-class mail or email a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to such Contracts and their counsel of record, if any. Each Supplemental Assumption Notice will include the same information with respect to the listed Contracts as was included in the Assumption and Assignment Notice. The Successful Bidder (if any, and including any Backup Bidder ultimately named a Successful Bidder) may, pursuant to the terms of the asset purchase agreement executed with the Debtors, designate Additional Contracts as Assigned Contracts to be assumed and assigned at any time until five (5) Business Days prior to the Sale Closing, and may remove Assigned Contracts from the list of Contracts at any time until five (5) Business Days prior to the Sale Closing. Counterparties to Additional Contracts or that otherwise receive a Supplemental Assumption Notice shall have until 4:00 p.m. (prevailing Eastern Time) on the date that

20

is fourteen (14) days after the filing and service of the Supplemental Assumption Notice by the Debtors on the counterparty to file a Cure Objection (as defined herein).

(e)    **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Cost proposed with respect thereto (each, a "Cure Objection"), must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Cost, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon the Objection Notice Parties, so as actually to be received on or before the date that is fourteen (14) days after the filing and service of the Assumption and Assignment Notice or Supplemental Assumption Notice by the Debtors, as applicable (each, a "Cure Objection Deadline").  For the avoidance of doubt, a timely filed and properly served Cure Objection will reserve the counterparty's rights relating to the Contract, but will not be deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sale.

(f)    **Dispute Resolution**. In the event that a non-Debtor contract counterparty files a timely Cure Objection and the Debtors and such counterparty cannot resolve such objection, the objection shall be heard at the Sale Hearing or such later date on at least seven (7) days' notice to the applicable non-Debtor contract counterparty, or such date as the parties agree, subject to the Court's calendar; provided, however, that (i) any Assigned Contract that is the subject of a Cure Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection, (ii) the Debtors, in consultation with the parties to any Contract that is subject to a Cure Objection, may adjourn a Cure Objection, and (iii) the Successful Bidder (if any) shall pay any undisputed Cure Cost in accordance with the terms of its asset purchase agreement with the Debtors on or before the Sale Closing and shall appropriately reserve funding for the disputed portion of the Cure Costs.  Upon resolution of such Cure Objection, the Successful Bidder shall pay the remaining Cure Cost to the applicable Contract counterparty upon the later of (1) the Sale Closing and (2) seven (7) calendar days following such resolution.  If such objection has not been resolved prior to the Sale Closing (whether by an order of the Court or by agreement with the counterparty), the Successful Bidder (if any) may elect, in its sole discretion, to: (x) treat such counterparty's Contract (the "Disputed Contract") as an excluded Contract (pursuant to the terms of the Successful Bidder's asset purchase agreement with the Debtors) or (y) temporarily treat such counterparty's Contract as an excluded Contract, proceed to the Sale Closing, and determine whether to treat the Disputed Contract as an Assigned Contract or an excluded Contract within five (5)

business days after resolution of such objection (whether by order of the Court or by agreement with the counterparty).

(g) **Contract Assumption**. No Assigned Contract shall be deemed assumed and assigned through these Bidding Procedures until the later of (i) the date the Court has entered an order assuming and assigning such Assigned Contracts (which, for the avoidance of doubt, may be the Sale Order) and (ii) the Sale Closing.

32.     Any party failing to timely file an objection to the Cure Cost or the proposed assumption and assignment of a Contract, Additional Contract, or Assigned Contract listed on the Assumption and Assignment Notice or any Supplemental Assumption Notice is deemed to have consented to (a) such Cure Cost, (b) the assumption and assignment of such Assigned Contract or Additional Contract, (c) the related relief requested in the Motion, and (d) the Sale.  Such party shall be forever barred and estopped from objecting to the Cure Costs, the assumption and assignment of the Assigned Contract or Additional Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder (if any), for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and or Successful Bidder (if any), with respect to such party's Assigned Contract or Additional Contract.

33.     The Assumption and Assignment Procedures are appropriate and fair to all counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The Assumption and Assignment Notice is: (a) reasonably calculated to (i) provide sufficient, effective notice to all counterparties and any other affected parties of the Debtors' ability to assume and assign to any Successful Bidder some or all of the Contracts listed therein and (ii) afford the counterparties the opportunity to exercise any rights affected by the

Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006; and (b) hereby approved.

**V.    Miscellaneous.**

34.    All persons and entities that participate in the Auction (if held) or bidding for the Assets during the Sale process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction (if held), or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction (if held), or any other relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction (if held), or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

35.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow any Successful Bidder to (i) deliver any notice provided for in any executed asset purchase agreement, including, without limitation, a notice terminating any executed purchase agreement in accordance with the terms thereof, and (ii) take any and all actions permitted under any executed asset purchase agreement in accordance with the terms and conditions thereof.

36.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

37.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

39.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## Exhibit 1

**Bidding Procedures**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES

On November 3, 2024, Franchise Group, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

On November 11, 2024, the Debtors filed the *Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 150] (as amended, supplemented, or otherwise modified from time to time, the "Plan").

On [●], 2024, the Court entered an order [Docket No. ●] (the "Bidding Procedures Order"),[2] authorizing the Debtors to (a) solicit bids for a sale or disposition (the "Sale") of all or

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Except as set forth in the second paragraph of Article I, terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Motion for Entry of Orders (I) (A) Approving Bidding Procedures*

substantially all of the Debtors' assets (collectively, the "Assets"),[3] free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363 of the Bankruptcy Code, and (b) conduct a related auction, if needed (the "Auction"), in each case in accordance with the following procedures (these "Bidding Procedures").

These Bidding Procedures set forth, among other things, the process through which a person or entity interested in any of the Assets (each, a "Potential Bidder") may submit a binding proposal or offer (each, a "Bid") pursuant to which the Potential Bidder proposes to, among other things, purchase, acquire, and take assignment and delivery of some or all of the Assets and assume certain liabilities (the "Liabilities") of the Debtors. This process is intended to obtain Bids that are in the best interests of the Debtors, their creditors, and their equity holders.

**ANY PARTY INTERESTED IN SUBMITTING A BID FOR ALL OR ANY PORTION OF THE ASSETS SHOULD CONTACT THE DEBTORS' ADVISORS, AS FOLLOWS:**

| | | |
|---|---|---|
| Ducera Partners LLC<br>11 Times Square<br>36th Floor<br>New York, NY 10036<br>Attn: Christopher Grubb<br>(cgrubb@ducerapartners.com);<br>Kishan Patel<br>(kpatel@ducerapartners.com); and<br>FRG.Ducera<br>(FRGMA.Ducera@ducerapartners.com) | Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Attn: Debra M. Sinclair<br>(dsinclair@willkie.com);<br>Matthew A. Feldman<br>(mfeldman@willkie.com);<br>Betsy Feldman<br>(bfeldman@willkie.com); and<br>Joseph R. Brandt<br>(jbrandt@willkie.com) | Young Conaway Stargatt &<br>Taylor, LLP<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attn: Edmon L. Morton<br>(emorton@ycst.com);<br>Matthew B. Lunn<br>(mlunn@ycst.com);<br>Allison S. Mielke<br>(amielke@ycst.com); and<br>Shella Borovinskaya<br>(SBorovinskaya@ycst.com) |

## I.  DESCRIPTION OF THE ASSETS.

The Debtors intend to sell all or substantially all of the Assets, which, for the avoidance of doubt, may include the equity interests of any Debtor.[4]  The Debtors will, in consultation with the

---

*for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief; and (II) (A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "Bidding Procedures Motion"), the Bidding Procedures Order, or the Restructuring Support Agreement (as defined in the Bidding Procedures Motion), as applicable.

[3]  The Debtors are simultaneously pursuing store closing sales with respect to their American Freight business pursuant to the *Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief.*  The term "Assets," as used herein, does not refer to any assets, contracts or interests subject to the American Freight store closing sales.

[4]  For the avoidance of doubt, the Debtors are not selling (i) any commercial tort claims and all such commercial tort claims are excluded from any sale pursuant to these Bidding Procedures and (ii) any claims or causes of action pursuant to 11 U.S.C. §§ 547 and 548 and all state law equivalents, in each case solely to the extent that such claims or causes of action are not (a) in respect of vendors continuing to supply goods or perform services for any Buyer or (b) related to a transferred Asset and/or any employees, business or operations relating to such transferred Asset.

Consultation Parties (as defined below), review all Bids for any Asset and, therefore, it is not necessary that any single Bid encompass all the Assets; provided that the Debtors shall not consummate the Sale contemplated by any Bid (other than a Bid submitted by or on behalf of the Senior Secured Lenders) unless such Bid is a Sufficient Bid and a Successful Bid (as defined below).

Anything in these Bidding Procedures to the contrary notwithstanding, the term "Sufficient Bid" shall have the meaning given to such term in the Restructuring Support Agreement; provided, that for purposes of these Bidding Procedures (i) solely with respect to a Bid for the Assets of the PSP Debtors (as defined in the Plan) and not any other Debtors, clause (c) of the definition of "Sufficient Bid" (as such term is defined in the Restructuring Support Agreement) shall be deemed to be modified to allow a Qualified Bid that provides for receipt by the Debtors of aggregate Cash consideration at the closing of the Sale contemplated by such Qualified Bid of at least $900.0 million and otherwise constitutes a Sufficient Bid, (ii) solely with respect to a Bid for the Assets of the Buddy's Debtors (as defined in the Plan) and not any other Debtors, clause (c) of the definition of "Sufficient Bid" shall be deemed to be modified to allow a Qualified Bid that provides for receipt by the Debtors of aggregate Cash consideration at the closing of the Sale contemplated by such Qualified Bid of at least $60.0 million and otherwise constitutes a Sufficient Bid and (iii) solely with respect to a Bid for the Assets of the Vitamin Shoppe Debtors (as defined in the Plan) and not any other Debtors, clause (c) of the definition of "Sufficient Bid" shall be deemed to be modified to allow a Qualified Bid that provides for receipt by the Debtors of aggregate Cash consideration at the closing of the Sale contemplated by such Qualified Bid of at least $200.0 million and otherwise constitutes a Sufficient Bid.

Any Potential Bidder may submit a Bid for all or a portion of the Assets, subject to the conditions set forth herein.

The ability to undertake and consummate a sale of the Assets shall be subject to competitive bidding, as set forth herein, and approval by the Court.

## II.   KEY DATES AND DEADLINES.

| Deadline | Event |
|---|---|
| **December 11, 2024** | Entry of Bidding Procedures Order |
| **Two (2) Business Days after the entry of the Bidding Procedures Order, or as soon as practicable after entry of the Bidding Procedures Order** | Deadline for Debtors to publish Sale Hearing Notice |
| **Two (2) Business Days after the entry of the Bidding Procedures Order, or as soon as practicable thereafter** | Deadline for Debtors to file and serve Sale Hearing Notice |

| Deadline | Event |
|---|---|
| **December 20, 2024 at 5:00 p.m. (ET)** | Deadline to file and serve Assumption and Assignment Notice |
| **December 23, 2024 at 5:00 p.m. (ET)** | Deadline for Acceptable Bidders to submit non-binding Indications of Interest |
| **4:00 p.m. (ET) on January 3, 2025** | Sale Objection Deadline |
| **4:00 p.m. (ET) on the date that is fourteen (14) days after service of the Assumption and Assignment Notice** | Deadline to object to the Assumption and Assignment Notice |
| **February 3, 2025 at 5:00 p.m. (ET)** | Bid Deadline |
| **Twenty-four (24) hours after the Bid Deadline for delivery via email, or as soon as reasonably practicable thereafter**<br><br>**One (1) Business Day after the Bid Deadline for delivery via first class mail, or as soon as reasonably practicable thereafter** | Deadline to deliver adequate assurance of future performance to requesting contract counterparties |
| **No later than 48 hours prior to Auction, if applicable** | Deadline to designate Qualified Bidders (as defined below) |
| **Seven (7) days after delivery of adequate assurance of future performance information** | Deadline to object to adequate assurance of future performance under Assigned Contracts (if any) |
| **February 7, 2025 at 10:00 a.m. (ET)** | Auction, solely in the event the Debtors receive at least one Qualified Bid prior to or at the Bid Deadline that constitutes a Sufficient Bid |
| **As soon as practicable after the Auction, if applicable, and, in any event, not more than twenty-four (24) hours following closing the Auction** | Deadline for Debtors to file and serve Notice of Successful Bidder |
| **February 6, 2025 at 4:00 p.m. (ET), if no Auction is held** | Subsequent Sale Objection Deadline[5] |

---

[5]   "Subsequent Sale Objection" shall mean any and all objections (a) to specific terms of the Sale or specific provisions of the Asset Purchase Agreement or the Sale Order that could not have been raised based on the Motion

| Deadline | Event |
|---|---|
| **February 10, 2025 at 4:00 p.m. (ET), if an Auction is held** | |
| **February 8, 2025, at 5:00 p.m. (ET), if no Auction is held**<br><br>**February 13, 2025, at 12:00 p.m. (ET), if an Auction is held** | Deadline to Reply to Sale Objections, Cure Objections, and Subsequent Sale Objections |
| **At the Sale Hearing, if no Auction is held**<br><br>**February 13, 2025, at 12:00 p.m. (ET), if an Auction is held** | Deadline to Reply to Adequate Assurance Objections |
| **February 10, 2025 at [●] a.m./p.m. (ET), subject to the availability of the Court** | Sale Hearing, if no Auction is held |
| **February 14, 2025 at [●] a.m./p.m. (ET), subject to the availability of the Court** | Sale Hearing, if an Auction is held |

## III.    PARTICIPATION REQUIREMENTS.

### A. Potential Bidders.

To participate in the bidding process, a Potential Bidder must deliver to each of the Debtors' advisors the following documents and information:

1.    an executed confidentiality agreement on terms acceptable to the Debtors and substantially in the form approved by the Ad Hoc Group Advisors (a "Confidentiality Agreement"); and

2.    written proof by the Potential Bidder of its (a) financial capacity to close the Sale that will be proposed by the Potential Bidder and (b) ability to provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such Potential Bidder in connection with such Sale, which may include audited financial statements of, or verified financial commitments obtained by, the Potential Bidder that evidence the Potential Bidder's internal financial resources and ability to finance its Bid with cash on hand, available lines of credit, uncalled capital commitments or otherwise available funds (or, if the Potential Bidder is an entity formed for the purpose of acquiring

---

alone, (b) related to the identity of the Successful Bidder(s) or Backup Bidder (as applicable) (other than with respect to executory contracts and unexpired leases), or (c) to the conduct of the Auction (if applicable).

the desired Assets, the party(ies) that will provide the Potential Bidder with the equity and/or debt financing to finance its Bid and bear liability for a breach), the adequacy of which will be assessed by the Debtors and their advisors, in consultation with the Consultation Parties.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors and their advisors regarding the financial capacity and ability of such Potential Bidder, as applicable, with respect to the matters described in Sections 2(a) and 2(b) above in this Article III.A.  Upon receipt of any such information from Potential Bidders, the Debtors shall promptly provide a copy of same to the Consultation Parties.  Any party who wishes to make reasonable requests for information from Potential Bidders shall submit such requests only through the Debtors and their advisors and, for the avoidance of doubt, shall not be permitted to directly contact any Potential Bidder and/or its respective advisor(s) prior to the Auction regarding the Sale.

**B.  Obtaining Due Diligence.**

Only Potential Bidders that have executed Confidentiality Agreements and have provided evidence satisfactory to the Debtors, in consultation with the Consultation Parties, with respect to the matters described in Sections 2(a) and 2(b) in Article III.A. (each such Potential Bidder, an "<u>Acceptable Bidder</u>") shall be eligible to receive due diligence information, access to the Debtors' electronic data room established for the Sale, and any additional non-public information regarding the Debtors and/or the Assets.  For the avoidance of doubt, in the event that the ABL Lenders, the Senior Secured Lenders,[6] and/or Second Lien Lenders exercise their respective Credit Bid Rights in accordance with Article III.C., such Secured Party shall be deemed an Acceptable Bidder.  The Consultation Parties shall be provided with all due diligence information provided to Potential Bidders and will have access to the Debtors' electronic data room(s) established for the Sale.  Due diligence information shall be deemed provided to the Consultation Parties if such information has been posted to the Debtors' electronic data room(s) established for the Sale in locations in such data room that are accessible to the Consultation Parties.

The Debtors and their advisors shall coordinate responses to all reasonable requests from Acceptable Bidders for additional information and due diligence access; <u>provided</u> that (i) the Debtors shall have the right to withhold information and/or access from any Acceptable Bidder, or modify information to be provided to any Acceptable Bidder, that the Debtors determine is sensitive or otherwise not appropriate for disclosure to, and/or access by, such Acceptable Bidder and (ii) the Debtors may decline to provide such information and/or access to any Acceptable Bidder who, at such time and in the Debtors' reasonable business judgment, has not established, or who has raised doubt, that such Acceptable Bidder intends in good faith to consummate the proposed Sale.  The Debtors shall inform the Consultation Parties as to whether or not they withheld information and/or access from, or modified any information provided to, an Acceptable Bidder, and the reason(s) therefor.

---

[6]    As used herein, "Senior Secured Lenders" means, individually or collectively (as the context may require), the DIP Lenders and the First Lien Lenders.

The due diligence period will end on the Bid Deadline (as defined below) and, subsequent to the Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information or access. Additional due diligence information or access will not be provided after the Bid Deadline, unless otherwise deemed appropriate by the Debtors in consultation with the Consultation Parties. The Debtors and their representatives and advisors are not responsible for, and will bear no liability with respect to, any information obtained by any Acceptable Bidder in connection with these Bidding Procedures or any Sale.

**C. Right to Credit Bid.**

In connection with any Sale and notwithstanding anything to the contrary, until the Bid Deadline, any Acceptable Bidder (i) holding a valid and perfected security interest in any of the Assets and (ii) having the right under applicable non-bankruptcy law to credit bid claims secured by such security interest (any such Acceptable Bidder satisfying clauses (i) and (ii), a "Secured Party"), may seek to credit bid any portion and up to the full amount of the value of such Secured Party's claims with respect to any individual Asset, portion of the Assets, or all Assets, in each case constituting such Secured Party's collateral by which such claims are secured (the "Credit Bid Right" and, such bid, the "Credit Bid"); provided, however, that, anything in these Bidding Procedures to the contrary notwithstanding, the Senior Secured Lenders (including any agent or other representative for any of the Senior Secured Lenders) shall not be required to submit a Bid, including any Credit Bid, until the later of (x) six (6) hours prior to the commencement of the Auction (if held) and (y) twenty-four (24) hours after the Debtors designate Qualified Bidders. Anything in these Bidding Procedures to the contrary notwithstanding, a "Secured Party" shall be deemed to include any of the Senior Secured Lenders (including any agent or other representative for any of the Senior Secured Lenders) with respect to the full amount of the Senior Secured Claims.[7] For the avoidance of doubt, and notwithstanding anything to the contrary contained herein or in the Bidding Procedures Order, the Credit Bid Right shall be subject in all respects to any conditions or limitations on such right set forth in the Final DIP Order, including without limitation, prior to the expiration of the Challenge Deadline (as defined in the Final DIP Order), and section 363(k) of the Bankruptcy Code.

Anything in these Bidding Procedures to the contrary notwithstanding, if a Bid (including a Credit Bid) is submitted by, or on behalf of, the Senior Secured Lenders, (a) such Bid shall be deemed a Qualified Bid (as defined herein) in all respects, (b) the Senior Secured Lenders and/or the person or entity submitting the Bid on their behalf (including any agent or other representative for the Senior Secured Lenders) shall be deemed a Qualified Bidder (as defined herein), (c) the Senior Secured Lenders and/or the person or entity submitting the Bid on their behalf (including any agent or other representative for the Senior Secured Lenders) shall not be required to provide a deposit, (d) the value of the Senior Secured Claims that are the subject of any such Credit Bid shall be the full face value of such Claims, (e) in the event the Senior Secured Lenders submit a Credit Bid for Combined Assets (as defined herein), any such Credit Bid may include Senior Secured Claims that are included in any other Credit Bid, and (f) at the conclusion of any Auction, any Credit Bid selected as the Successful Bid may include Senior Secured Claims that were included in any other previously submitted Credit Bid solely if such other Credit Bid was not

---

[7]   As used herein, "Senior Secured Claims" means, individually or collectively (as the context may require), the DIP Claims and the First Lien Claims.

identified by the Debtors as the Successful Bid prior to the conclusion of the Auction at which such Credit Bid was submitted. Anything in these Bidding Procedures to the contrary notwithstanding, any Bid submitted by, or on behalf of, the Senior Secured Lenders (including any Bid submitted by any agent or other representative for the Senior Secured Lenders) need only be a written notice that specifies (either specifically or generally) the amount of the Senior Secured Claims and/or other consideration that are the subject of such Bid and the Assets that are the subject of such Bid. Anything in these Bidding Procedures to the contrary notwithstanding, the Senior Secured Lenders (including any agent or other representative for any of the Senior Secured Lenders) shall be permitted to submit a Bid (including a Credit Bid) with respect to any individual Asset, portion of the Assets, or all or substantially all of the Assets even if another Bid that is a Sufficient Bid has been submitted for such individual Asset, portion of the Assets, or all or substantially all of the Assets, as applicable. Anything in these Bidding Procedures to the contrary notwithstanding, any Credit Bid submitted by, or on behalf of, the Senior Secured Lenders (including any Credit Bid submitted by any agent or other representative for the Senior Secured Lenders) may be combined with, supplemented by, or replaced with, a cash Bid at any time by any Senior Secured Lenders and/or any person or entity submitting a Bid on their behalf (including any agent or other representative for the Senior Secured Lenders), including any Bid submitted before or during the Auction. The provisions of this paragraph shall apply to any Bid (including any Credit Bid) that is submitted by, or on behalf of, the Senior Secured Lenders, at any time, including any Bid submitted before or during the Auction.

Upon consummation of a Sale pursuant to the exercise of the Credit Bid Right or any Bid submitted by, or on behalf of, the Senior Secured Lenders, the applicable Secured Party shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets, and such Secured Party shall have the right to designate any person or entity that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are subject to the applicable Credit Bid or Bid.

Notwithstanding anything to the contrary contained herein, to the extent that the Senior Secured Lenders (including any agent or other representative of the Senior Secured Lenders) seek to consummate any transaction contemplated by any Credit Bid pursuant to section 363 of the Bankruptcy Code, the Senior Secured Lenders shall provide adequate assurance of future performance in accordance with section 365 of the Bankruptcy Code.

## IV.    REQUIREMENTS FOR QUALIFIED BIDS.

Subject to the proviso in the first paragraph of Article III.C. and subject to the second paragraph of Article III.C., any Bid will be considered a qualified bid only if the Bid is submitted in writing by an Acceptable Bidder by the Bid Deadline and is determined to comply with all of the following in the Debtors' business judgment (after consultation with the Consultation Parties) (such bid, a "Qualified Bid," and, such Acceptable Bidder, a "Qualified Bidder"):

1.    ***Identity***. The Bid must fully disclose the identity of each person or entity that (a) is bidding for all or any portion of the Assets; (b) is sponsoring (including any equity sponsor) or financing the Bid (including through the

issuance of debt, or extension of credit, in connection with such Bid); (c) is participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such Bid) such Bid and the complete terms of any such participation; and/or (d) will directly or indirectly own and/or control any amount of capital stock, limited liability company interests, partnership interests or other equity, ownership, beneficial or profits interests of such Acceptable Bidder, or any options, warrants or other securities that are convertible into, or exchangeable or exercisable for, any of the foregoing; in each case, including its full legal name, jurisdiction of incorporation or formation, and its location in the Acceptable Bidder's corporate structure.  The Bid must also disclose any past or present affiliation, connection or agreement between the Acceptable Bidder or any person or entity described in the immediately preceding sentence, on the one hand, and any Debtor, any other prospective bidder for all or any portion of the Assets, or any officer, director, manager, shareholder, partner, investor or controlling person or entity of any Debtor or any such other prospective bidder, on the other hand.

2.   ***Purpose; Assets and Liabilities***.  The Bid includes an irrevocable and binding offer by the Acceptable Bidder to either purchase some or all of the Assets (identified with specificity).  A Bid involving the purchase of some or all of the Assets must clearly identify the following: (a) the Assets, or the portion thereof, to be purchased (including a preliminary list of executory contracts and unexpired leases that may be assumed by the Debtors and assigned to such Acceptable Bidder in connection with the Sale contemplated by such Bid, subject to revision prior to closing); and (b) the Liabilities and obligations to be assumed (including an estimate of indebtedness and applicable cure costs to be assumed or paid, if any).

3.   ***Purchase Price***.  The Bid must clearly set forth the purchase price to be paid in connection with the Sale contemplated by such Bid (the "Purchase Price"), including all cash and non-cash components, if any.  The Bid must confirm that all cash components of the Purchase Price are in U.S. Dollars. If the Purchase Price consists of certain non-cash components, such as a Credit Bid, assumed Liabilities, or any other non-cash consideration, the Bid must specify the form of such non-cash consideration and shall include a detailed analysis of the value of each such non-cash component of such Purchase Price.

4.   ***Deposit***.  The Bid must be accompanied by a good faith deposit in the form of cash in an amount equal to ten percent (10%) of the maximum cash component of the Purchase Price of such Bid (the "Deposit") to be held in an escrow account to be established by the Debtors and applied or returned to the Acceptable Bidder, in each case as set forth in Article XVIII of these Bidding Procedures.

5.  ***Marked Agreement***.  A Bid for the Assets must include (a) a duly executed, irrevocable, non-contingent asset purchase agreement (which must be based on the Form APA (as defined below)) with respect to the acquisition of the applicable Assets and the assumption of the applicable Liabilities necessary to effectuate the Sale contemplated in such Bid, (b) a schedule of Assigned Contracts, (c) a clearly marked-up version of (i) the form of Sale Order (as defined in the Bidding Procedures Motion) provided by the Debtors to the Acceptable Bidder and (ii) the form of asset purchase agreement provided by the Debtors to the Acceptable Bidder (the "<u>Form APA</u>"), in each case, showing all changes requested by the Acceptable Bidder, and (d) all other material documents integral to such Bid (together with the asset purchase agreement and Sale Order, collectively, the "<u>Asset Sale Bid Documents</u>").

6.  ***Committed Financing***.  The Bid must include evidence of the Acceptable Bidder's capacity to consummate the Sale contemplated by such Bid with (a) cash on hand or (b) committed financing documented to the satisfaction of the Debtors, in consultation with the Consultation Parties, that demonstrates that the Acceptable Bidder has received debt and/or equity funding commitments to timely provide the Acceptable Bidder with funds sufficient to pay the Purchase Price set forth in such Bid and all other obligations under such Bid, including providing adequate assurance of future performance in accordance with section 365 of the Bankruptcy Code (to the extent applicable) under all contracts proposed to be Assigned Contracts by such Bid, in a form that would permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such contract(s), which such adequate assurance information may include: (i) the specific name of the proposed assignee and the proposed name under which the proposed assignee intends to operate the store if not the current trade-name of the Debtors, (ii) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (iii) audited or unaudited financial statements for the past three (3) years, including all supplements or amendments thereto, tax returns for the past two (2) years, bank account statements or annual reports, (iv) a description of the proposed business to be conducted at the premises, (v) the specific name of the proposed assignee/tenant, if not the prospective purchaser, and the proposed name under which the assignee intends to operate the store if not a current trade-name of the Debtors, (vi) the proposed assignee's intended use of the leased premises and a description of the proposed business to be conducted at the premises, (vii) cash flow projections for the proposed assignee, (viii) the proposed assignee's most recent business plan, (ix) all cash flow projections for the lease(s) subject to the assignment request, any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the lease(s), and a summary of the proposed assignee's and guarantor's (as applicable) experience operating retail stores; (x) the number of retail stores the proposed assignee and any guarantor operates and all trade names used, (xi) a contact person for the proposed assignee, and/or (xii) any other documentation that the Debtors may further request.

Such funding commitments or other financing must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors. Such funding commitments shall remain outstanding until at least ninety (90) days after entry of the Sale Order applicable to the Bid if such Bid is selected as the Successful Bid or the Backup Bid (as defined below). The Bid must disclose the identity and contact information for each entity providing any such funding commitment. Any such funding commitments that are provided by equity holders or affiliated entities of the Acceptable Bidder must be accompanied by written evidence that such equity holders or other affiliated entities have the resources and ability to fund such commitments on a timely basis.

7.     ***Certain Conditions and Contingencies Not Permitted***.  The Bid shall not be conditioned on, or have any contingencies with respect to, any (i) financing, including the obtaining or the sufficiency of financing; (ii) internal approvals; (iii) due diligence, including the outcome or review of due diligence; (iv) third party consents or approvals (other than governmental or regulatory approvals or consents that may be required to consummate the proposed Sale contemplated by such Bid, including any antitrust approval that may be required under the HSR Act (as defined below)); (v) the satisfaction or achievement of any financial targets, thresholds, or metrics; or (vi) the absence of any material adverse effect since a date earlier than the date the Bid was submitted.

8.     ***Governmental and Regulatory Approvals***.  The Bid must describe all governmental or regulatory approvals or consents that are required to consummate the proposed Sale contemplated by such Bid (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "<u>HSR Act</u>")), and the time period within which the Acceptable Bidder expects to receive such approvals or consents. The Bid must include evidence satisfactory to the Debtors of the ability of the Acceptable Bidder to obtain such approvals or consents as soon as reasonably practicable, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents.

9.     ***Irrevocable***.  The Bid must be irrevocable and binding; <u>provided</u> that such Bid may be revoked after the Auction if such Bid is not selected as the Successful Bid or Backup Bid.

10.    ***Backup Bidder***.  The Bid must contain an agreement for the Acceptable Bidder to be a Backup Bidder if such Acceptable Bidder's Bid is selected as the next highest or next best Bid after the Successful Bid.

11.   ***As-Is, Where-Is***.  The Bid must include the following representations and warranties: (a) the Acceptable Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' business and the Assets and Liabilities such Acceptable Bidder proposes to acquire and assume prior to submitting such Bid; and (b) the Acceptable Bidder (i) has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets and Liabilities such Acceptable Bidder proposes to acquire and assume in making such Bid and (ii) did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Assets and Liabilities such Acceptable Bidder proposes to acquire and assume or the accuracy or completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in such Acceptable Bidder's proposed purchase agreement ultimately accepted and executed by the Debtors.

12.   ***Authorization***.  The Bid must include evidence that the Acceptable Bidder has obtained authorization or approval from all persons, entities, bodies, and committees that are required to provide such authorization or approval under such Acceptable Bidder's organizational documents (including, to the extent applicable, its board of directors or board of managers (or comparable governing body), its general partner, or its stockholders, members, partners, or other equity holders) acceptable to the Debtors with respect to (a) the submission, execution, and delivery of such Bid and the Asset Sale Bid Documents, (b) participation in the Auction, and (c) closing of the proposed Sale contemplated in such Bid (including any financing that is part of the Bid).  The Bid shall further state that any necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith, whether the responsibility of the Acceptable Bidder or the Debtors, shall be made by the Acceptable Bidder.

13.   ***Disclaimer of Fees***.  The Bid must not seek to entitle the Acceptable Bidder to any right to receive a break-up fee, topping fee, termination fee or similar type of payment, any compensation, or any expense reimbursement, and the Acceptable Bidder shall waive the right to pursue any administrative expense claim (including under a theory of substantial contribution) under 11 U.S.C. § 503 related in any way to the submission of such Bid or participation in any Auction.  The Acceptable Bidder shall bear its own costs and expenses (including legal fees) in connection with the submission of such Bid, participation in any Auction, and the closing and consummation of any Sale.

14.   ***Time Frame for Closing***.  The Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, conditions, experience, and other considerations in the Debtors' business judgment) to

- 12 -

be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, but in any event no later than March 11, 2025 unless further extended by mutual agreement between the Debtors and the Required Consenting First Lien Lenders.  The Acceptable Bidder must commit to closing the proposed Sale contemplated by such Bid as soon as practicable, and must expressly set forth any potential regulatory issues or approvals that might arise in connection with such Acceptable Bidder's acquisition of the Assets, including such Acceptable Bidder's anticipated timing and proposed approach for resolving any such regulatory issues and obtaining any potential regulatory approvals.

15.     ***Employees***.  The Bid must include a statement regarding whether the Acceptable Bidder intends to offer future employment to any of the Debtors' employees (and, if so, specifically identify such employees); <u>provided</u> that such Bid shall not be conditioned on, or have any contingencies with respect to, any acceptance of any such offer of employment.

16.     ***Adherence to Bidding Procedures***.  The Bid must include a statement that (a) the Acceptable Bidder has acted in good faith consistent with section 363(m) of the Bankruptcy Code, (b) such Bid constitutes a *bona fide* offer to consummate the proposed Sale embodied therein, and (c) the Acceptable Bidder agrees to be bound by these Bidding Procedures.

17.     ***Cooperation***.  The Acceptable Bidder must covenant to cooperate with the Debtors to provide factual information regarding such Acceptable Bidder's assets, liabilities, businesses, and operations upon the Debtors' request.

18.     ***No Collusion***.  The Acceptable Bidder must acknowledge in writing that (a) in connection with submitting the Bid, it has not engaged in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids or the Sale, specifying that it did not agree with any Potential Bidders, Acceptable Bidders, or Qualified Bidders to control price; and (b) it agrees not to engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction, or the Sale.

19.     ***Acknowledgement of Remedies***.   The Bid shall include a written acknowledgement from the Acceptable Bidder that, in the event of the Acceptable Bidder's breach of, or failure to perform under, the Asset Sale Bid Documents, the Debtors and their estates shall be entitled to pursue all available legal and equitable remedies, including, without limitation, retention of the Deposit (including any Incremental Deposit Amount (as defined below)) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

20.   ***Other Information***.   The Bid contains such other information as may be reasonably requested by the Debtors.

Notwithstanding anything herein to the contrary, any Bid (other than a Bid submitted by or on behalf of the Senior Secured Lenders) that would otherwise constitute a Qualified Bid will cease to be a Qualified Bid if such Bid, taken together with all other Bids that would otherwise constitute a Qualified Bid, if applicable, does not constitute a Sufficient Bid at least forty-eight (48) hours prior to the date of the Auction.

## V.   BID DEADLINE.

An Acceptable Bidder that desires to make a Bid must transmit via email (in .pdf or similar format) or deliver written copies of its Bid to the following parties so as to be received not later than **5:00 p.m. (prevailing Eastern Time) on February 3 , 2025** (the "Bid Deadline"): (i) counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn:  Debra M. Sinclair, email: dsinclair@willkie.com, Matthew A. Feldman, email: mfeldman@willkie.com, Betsy L. Feldman, email: bfeldman@willkie.com, and Joseph R. Brandt, email: jbrandt@willkie.com; (ii) Delaware counsel to the Debtors, Young Conaway Stargatt and Taylor, LLP, 1000 North King Street, Wilmington, DE, 19801, Attn: Edmon L. Morton, email: emorton@ycst.com; Matthew B. Lunn, email: mlunn@ycst.com; and Allison S. Mielke, email: amielke@ycst.com; and (iii) the Debtors' investment banker, Ducera Partners LLC, 11 Times Square, Floor 36, New York, NY 10036, Attn: Christopher Grubb, email: cgrubb@ducerapartners.com; Kishan Patel, email: kpatel@ducerapartners.com; and FRG.Ducera, email: FRGMA.Ducera@ducerapartners.com.  The Debtors shall promptly deliver (a) unredacted copies of any and all Bids received by the Debtors or any of their advisors to the Consultation Parties on a professional eyes only basis, (b) anonymized summaries of any and all Bids received by the Debtors or any of their advisors to the Consenting First Lien Lenders (which shall be delivered to the Ad Hoc Group Advisors to transmit to such Consenting First Lien Lenders), if such Consenting First Lien Lenders, or any person or entity acting on behalf of such Consenting First Lien Lenders, in each case, in its capacity as such, (x) has not submitted a Bid or, (y) if such Consenting First Lien Lenders or any person or entity acting on behalf of such Consenting First Lien Lenders have/has submitted a Bid, unequivocally revokes its Bid, (c) anonymized summaries of any and all Bids received by the Debtors or any of their advisors to the members of the Freedom Lender Group[8] (solely in their capacity as holders of Second Lien Secured Obligations) (which shall be delivered to the Second Lien Advisors (as defined below) to transmit to such members of the Freedom Lender Group), so long as members of the Freedom Lender Group, or any person or entity acting on behalf of the Freedom Lender Group, in each case, (x) have/has not submitted a Bid or participated in any Bid (including by providing any financing in connection with any such Bid) or, (y) if such members of the Freedom Lender Group or any person or entity acting on behalf of the Freedom Lender Group have/has submitted a Bid or participated in any Bid, unequivocally revokes its Bid or unequivocally revokes its participation with any such Bid, and (d) anonymized summaries of any and all Bids received by the Debtors or any of their advisors to the members of the Committee (as defined below) (which shall be delivered to counsel to the Committee to

---

[8]   The "Freedom Lender Group" shall refer to the ad hoc group of holders of Second Lien Secured Obligations and Holdco Loans set forth in that certain *Verified Statement of the Ad Hoc Group of Freedom Lenders Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 229].

transmit to such members of the Committee), if such members of the Committee, or any person or entity acting on behalf of such members of the Committee, (x) has not submitted a Bid or, (y) if such members of the Committee or any person or entity acting on behalf of such members of the Committee have/has submitted a Bid, unequivocally revokes its Bid.

## VI.    QUALIFIED BIDDERS.

No later than forty-eight (48) hours prior to the commencement of the Auction (if held), the Debtors shall notify each Acceptable Bidder whether such party is a Qualified Bidder and, if such Qualified Bidder submitted more than one Bid, which of such Bids are Qualified Bids.  If any Bid is determined by the Debtors not to be a Qualified Bid after consultation with the Consultation Parties, the Debtors will refund such Acceptable Bidder's Deposit with respect to such Bid on or before the date that is five (5) Business Days after the Bid Deadline.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction (if held), the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the prior written consent of the Debtors (with email being sufficient) after consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction (if held) as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Qualified Bidder to consummate the Sale contemplated by its Qualified Bid.  Failure by a Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer a Qualified Bidder or that a Bid made by such bidder is not a Qualified Bid.  The Debtors shall inform the Consultation Parties of any bidder the Debtors no longer deem a Qualified Bidder.

## VII.    THE AUCTION.

Within two (2) Business Days after entry of the Bidding Procedures Order, or as soon as practicable thereafter, the Debtors shall serve a notice of the potential Auction and Sale (the "Sale Hearing Notice") on:  (a) the Notice Parties (as defined below); (b) all parties to executory contracts and unexpired leases proposed to be assumed, assigned, or rejected as part of the proposed Sale; (c) all parties who have expressed a written interest in some or all of the Assets within six (6) months prior to entry of the Bidding Procedures Order; (d) all known holders of liens, encumbrances, and other claims secured by the Assets; (e) the Internal Revenue Service; (f) all applicable state and local taxing authorities; (g) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (h) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall publish the Sale Hearing Notice, with any modifications necessary for ease of publication, in *The*

*New York Times* (national edition), or similar nationally circulated publications, to provide notice to any other potentially interested parties.

Anything in these Bidding Procedures to the contrary notwithstanding, if the Debtors do not receive a Sufficient Bid at least forty-eight (48) hours prior to the date of the Auction, then (i) the Debtors shall not hold the Auction, and (ii) the Debtors shall immediately terminate the process to consummate a Sale and shall exclusively pursue the Plan Transaction in accordance with the terms of the Restructuring Support Agreement.

If the Debtors receive at least one Sufficient Bid at least forty-eight (48) hours prior to the date of the Auction, then the Debtors shall hold an Auction for the Assets that are the subject of such Sufficient Bid unless the Debtors do not receive another Qualified Bid that covers such Assets prior to the later of (x) six (6) hours prior to the commencement of the Auction and (y) twenty-four (24) hours after the Debtors designate Qualified Bidders (in which case, the Debtors shall not hold an Auction with respect to the Assets that are the subject of that Sufficient Bid and the Debtors shall proceed with such Sufficient Bid). No later than forty-eight (48) hours prior to the commencement of the Auction, the Debtors will notify all Qualified Bidders and the Consultation Parties of the opening Qualified Bid at the Auction (the "Minimum Bid"), which Minimum Bid shall in no event be less than a Sufficient Bid, in accordance with the second paragraph of Article I of these Bid Procedures (other than a Bid submitted by or on behalf of the Senior Secured Lenders), and provide copies of the Asset Sale Bid Documents supporting the Minimum Bid to all Qualified Bidders.

The Auction, if held, shall take place **at 10:00 a.m. (prevailing Eastern Time) on February 7, 2025**, (i) via a virtual meeting, (ii) at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, or (iii) at such later date, time, and location as designated by the Debtors, after providing notice to the Notice Parties and the Consultation Parties.

## A. Participants and Attendees.

The Debtors and their advisors shall direct and preside over the Auction (if held). At the start of any Auction, the Debtors shall describe the terms of the Minimum Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of any Auction held and of all Bids made and announced at any Auction, including the Minimum Bid, all Overbids, and the Successful Bid.

Subject to the proviso in the first paragraph of Article III.C. and subject to the second paragraph of Article III.C., only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline shall be eligible to participate in the Auction, if held. Qualified Bidders participating in any Auction held must appear in person (or through a duly authorized representative), telephonically, or through a video teleconference, as determined by the Debtors, in consultation with the Consultation Parties. If held, any Auction will be conducted openly and all creditors may be permitted to attend; provided that the Debtors may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or creditor at the Auction. Any creditor and its advisors wishing to attend the Auction (if held) must contact the Debtors' advisors no later than one (1) Business Day prior to

the start of any Auction; provided that (i) the Committee, if any, and (ii) any Secured Party and, in each case, their respective advisors (including the Consultation Parties), shall be permitted to attend the Auction, if held, with prior notice to the Debtors' advisors no later than twenty four (24) hours prior to the commencement of the Auction (if held).

Each Qualified Bidder participating in the Auction, if held, will be required to confirm in writing and on the record at any Auction that (i) it has not engaged in any collusion with respect to the submission of any Bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith, and *bona fide* offer to purchase the Assets identified in such Qualified Bid.

**B.  Auction Procedures.**

If held, the Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment, in consultation with the Consultation Parties:

1.  ***Minimum Bid***.  Bidding shall commence at the amount of the Minimum Bid.

2.  ***Minimum Overbid***.  Qualified Bidders may submit successive Bids with a Purchase Price that is higher than the Purchase Price for the previous Bid, based on and increased from the Minimum Bid (each such Bid, an "Overbid").  Any Overbid shall be made in increments of at least $1,000,000.00 in cash, cash equivalents, the Credit Bid, or such other consideration that the Debtors deem equivalent.  The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, announce increases or reductions to initial or subsequent minimum incremental Overbids at any time during the Auction (if held).

3.  ***Highest or Best Offer***.  After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the Bid that they believe in their reasonable business judgment, in consultation with the Consultation Parties, to be the highest or otherwise best offer for the Assets (the "Leading Bid"), and describe the material terms thereof to each participating Qualified Bidder.  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent Bid with full knowledge of the Leading Bid.  To the extent not previously provided (as determined by the Debtors, in consultation with the Consultation Parties), a Qualified Bidder submitting a subsequent Bid must submit, as part of its subsequent Bid, written evidence (in the form of financial disclosure or credit quality support information or enhancement reasonably acceptable to the Debtors, in consultation with the Consultation Parties) demonstrating such Qualified Bidder's ability to close the Sale at the Purchase Price contemplated by such subsequent Bid.

4. ***Incremental Deposit***.  Upon the submission by a Qualified Bidder of its Bid at the Auction (if held), it must commit on the record to pay promptly following the Auction, if such Bid were to be the Successful Bid or the Backup Bid, the incremental amount of its Deposit calculated based on the increased Purchase Price of such Bid, if applicable (the "<u>Incremental Deposit Amount</u>").

5. ***Rejection of Bids***.  The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, at any time before entry of an order of the Court approving a Qualified Bid, reject any Bid (other than a Bid submitted by, or on behalf of, the Senior Secured Lenders) that the Debtors determine is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

6. ***No Late Bids***.  The Debtors shall not consider any Bids submitted after the conclusion of any Auction (if held), and any and all such Bids shall be deemed untimely and shall under no circumstances constitute a Bid or an Overbid.

7. ***No Round-Skipping***.  Round-skipping, as described herein, is explicitly prohibited.  To remain eligible to participate in the Auction (if held), in each round of bidding, (i) each Qualified Bidder must submit a Bid before the end of such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to Bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment, in consultation with the Consultation Parties, such Qualified Bidder shall be disqualified from continuing to participate in any Auction (if held) without the consent of the Debtors; <u>provided</u> that, notwithstanding anything to the contrary herein, (a) a Qualified Bidder that is bidding on all or substantially all of the Assets shall not be required to participate in any Auction or round thereof (if held) for less than all or substantially all of the Assets, and (b) a Qualified Bidder that is bidding on any portion of the Assets shall not be required to participate in any Auction or round thereof (if held) for (x) a different portion of the Assets or (y) all or substantially all of the Assets.

8. ***Auction Sequence***.  In the event the Debtors receive Qualified Bids for less than all or substantially all of the Assets (such Qualified Bids, "<u>Partial Asset Bids</u>"), the Debtors shall start the Auction with such Partial Asset Bids (and, for the avoidance of doubt, any Qualified Bidder for all or substantially all of the Assets shall not be required to participate in such Auction) to determine which Partial Asset Bid is the highest or otherwise best Bid for

the Assets in question (such Bid, the "Prevailing Partial Asset Bid"). If the Debtors receive Partial Asset Bids for all or any of (a) the Assets owned by the Buddy's Debtors (the "Buddy's Assets"), (b) the Assets owned by the PSP Debtors (the "PSP Assets"), (c) the Assets owned by the Vitamin Shoppe Debtors (the "Vitamin Shoppe Assets," and together with the Buddy's Assets and the PSP Assets, the "Business Segments"), and/or (d) a combination of two or more Business Segments that is expressly conditioned on the purchase and sale of all such Assets ("Combined Assets"), then the Debtors shall conduct Auctions for such Assets in the following order: (i) first, the Buddy's Assets, (ii) second, the Vitamin Shoppe Assets, (iii) third, the PSP Assets, and (iv) fourth, any Combined Assets; provided that if Qualified Bids for more than one distinct group of Combined Assets exist, the Debtors shall conduct Auctions for each such distinct group of Combined Assets in an order to be mutually agreed upon by the Debtors, the Required Consenting First Lien Lenders, and the Committee. To the extent applicable, the commencement of an Auction for any of the foregoing groups of Assets shall not occur unless and until the Debtors have declared a Prevailing Partial Asset Bid for the group of Assets subject to the immediately prior Auction. If one or more Auctions are held for one or more distinct groups of Combined Assets, the Debtors, in consultation with the Consultation Parties, shall determine whether the applicable Prevailing Partial Asset Bid(s) with respect to the applicable Business Segments covered by such Combined Assets is/are not higher or otherwise better than the Prevailing Partial Asset Bid for such Combined Assets. To the extent the Debtors, in consultation with the Consultation Parties, determine that the applicable Prevailing Partial Asset Bid(s) for the discrete Business Segments is/are not higher or otherwise better than the Prevailing Partial Asset Bid for such Combined Assets, then the Prevailing Partial Asset Bid bidder(s) for the discrete Business Segments shall be required to submit bids that, in sum, are higher or otherwise better than the Prevailing Partial Asset Bid for such Combined Assets. To the extent the Debtors, in consultation with the Consultation Parties, determine that the applicable Prevailing Partial Asset Bid(s) for the discrete Business Segments is/are higher or otherwise better than the Prevailing Partial Asset Bid for such Combined Assets, then the Prevailing Partial Asset Bid bidder for such Combined Assets shall be required to submit a bid that is higher or otherwise better than the sum of the Prevailing Partial Asset Bids for the discrete Business Segments. Upon determination of the Prevailing Partial Asset Bid for each of the Business Segments and/or distinct groups of Combined Assets, as applicable, the Debtors shall conduct an Auction with respect to Bids for all or substantially all of the Assets (such Bids, "All Asset Bids," and the highest or otherwise best such Bid, the "Prevailing All Asset Bid"). To the extent the Debtors, in consultation with the Consultation Parties, determine that the sum of the Prevailing Partial Asset Bid(s) is/are not higher or otherwise better than the Prevailing All Asset Bid, then the Prevailing Partial Asset Bid bidders shall be required to submit Bids that, in

sum, are higher or otherwise better than the Prevailing All Asset Bid.  To the extent the Debtors, in consultation with the Consultation Parties, determine that the Prevailing Partial Asset Bid(s) is/are higher or otherwise better than the Prevailing All Asset Bid, then the Prevailing All Asset Bid bidder shall be required to submit a Bid that is higher or otherwise better than the sum of the Prevailing Partial Asset Bid(s).  In no case shall there be an Auction for the PSP Assets before an Auction for the Buddy's Assets and/or the Vitamin Shoppe Assets without the prior written consent of the Required Consenting First Lien Lenders.

9.     ***Additional Information***.  The Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's (other than any Secured Party that is a Qualified Bidder) financial and other capabilities to consummate the Sale contemplated by its Bid and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction (if held).

10.    ***Modification of Procedures***.  The Debtors may, in consultation with the Consultation Parties, (a) announce, at any Auction (if held), modified or additional procedures for conducting the Auction, and (b) otherwise make modifications to these Bidding Procedures; provided, however, that, (x) without the prior written consent of the Required Consenting First Lien Lenders, in no event shall the Debtors make any amendments or modifications, directly or indirectly, to any of the following (including to any of the defined terms used therein):  (i) the second paragraph of Article I, (ii) the proviso in the first paragraph of Article I., (iii) Article III.C., (iv) Number 13 in Article IV, (v) the last paragraph of Article IV, (vi) the second sentence of Article V, (vii) the second and third paragraphs of Article VII, (viii) Number 8 in Article VII.B., (ix) the second paragraph of Section D of Article VII, (x) the last paragraph of Article VIII, (xi) Article XIII, (xii) Article XVII, (xiii) Article XIX, (xiv) any term or provision of these Bidding Procedures relating to (A) the Senior Secured Lenders' right to submit a Bid (including a Credit Bid) at or at any time prior to the time set forth in the proviso in the first paragraph of Article III.C., and their right to exercise their Credit Bid Right and submit a Credit Bid, (B) any person or entity submitting a Bid (including a Credit Bid) on behalf of the Senior Secured Lenders (including any agent or other representative for the Senior Secured Lenders), (C) the status of any Bid (including a Credit Bid) submitted by, or on behalf of, the Senior Secured Lenders as a Qualified Bid, (D) the status of the Senior Secured Lenders and/or any person or entity submitting a Bid (including a Credit Bid) on their behalf (including any agent or other representative for the Senior Secured Lenders) as a Qualified Bidder, an Acceptable Bidder or a Secured Party, or (E) the consultation rights of, or the rights to receive information or documents by, the Ad Hoc Group Advisors in their capacity as Consultation Parties, or (xv) this proviso; (y) without the prior written consent of the Freedom Lender Group

(solely in their capacity as holders of Second Lien Secured Obligations), in no event shall the Debtors make any amendments or modifications, directly or indirectly, to any of the following (including to any of the defined terms used therein): (i) the second sentence of Article V, (ii) Article XIII, (iii) any term or provision of these Bidding Procedures relating to (A) the Second Lien Lenders' right to submit a Bid (including a Credit Bid) and their right to exercise their Credit Bid Right and submit a Credit Bid, or (B) the consultation rights of, or the rights to receive information or documents by, the Second Lien Advisors in their capacity as Consultation Parties, or (iv) clause (y) of this proviso; and (z) without the prior written consent of the Committee, the consultation rights of, or the rights to receive information or documents by, the Committee in their capacity as Consultation Parties. All such modifications and additional rules will be communicated to each of the Acceptable Bidders and Qualified Bidders in advance to the extent reasonably practicable; provided that, to the extent such modifications occur at the Auction (if held), disclosure of such modifications shall be limited to those in attendance at the Auction.

The Auction shall include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional Bids and make modifications to any prior Qualified Bid or Overbid at the Auction to improve their Bids; provided that any such additional Bid, modified prior Qualified Bid, or Overbid made by a Qualified Bidder (including with respect to any Backup Bid) must remain open and binding on the Qualified Bidder until the earlier of (a) the closing of a Sale for the Assets covered by such Bid pursuant to the Successful Bid and (b) ninety (90) days after the date of the entry of the Sale Order for such Bid. The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, negotiate with any and all Qualified Bidders participating in the Auction.

## C. Adjournment of the Auction.

The Debtors reserve the right, in their reasonable discretion, in consultation with the Consultation Parties, to adjourn the Auction (if held) one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may require to prove that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed Sale at the Purchase Price set forth in such Qualified Bidder's prevailing Bid.

## D. Successful Bidder.

Immediately prior to the conclusion of any Auction (if held), the Debtors shall (a) determine, consistent with these Bidding Procedures and in their reasonable business judgment, in consultation with the Consultation Parties, which Bid, or combination of Bids, constitutes the highest or otherwise best Bid for the applicable Assets (each such Bid, a "Successful Bid"); and (b) notify all Qualified Bidders at the Auction (if held) of the identity of the Qualified Bidder(s)

that submitted the Successful Bid (such Qualified Bidder, the "<u>Successful Bidder</u>") and the Purchase Price and other material terms of the Successful Bid.  As a condition to remaining the Successful Bidder, any Successful Bidder shall be required to wire to the Debtors in immediately available funds the Incremental Deposit Amount, if applicable, calculated based on the cash component of the Purchase Price of the Successful Bid, no later than one (1) Business Day following the date on which the Auction is concluded.

Anything in these Bidding Procedures to the contrary notwithstanding, no Qualified Bid or an aggregate of Qualified Bids (other than any Bid (including a Credit Bid) submitted by, or on behalf of, the Senior Secured Lenders) may be the Successful Bid or the Backup Bid, unless such Qualified Bid or aggregate of Qualified Bids (a) provides for payment of cash consideration at the closing of the Sale contemplated by such Qualified Bid in an amount equal to or greater than the sum of (i) all of the First Lien Claims, (ii) all of the ABL Claims, and (iii) all of the DIP Claims, in each case, including any fees, premiums and accrued but unpaid interest (including postpetition interest at the default contract rate, if applicable) on any of such Claims; <u>provided</u>, that (1) solely with respect to a Qualified Bid for the PSP Assets (and not for any of the other Assets of the Debtors), such Qualified Bid may be a Successful Bid or a Backup Bid if such Qualified Bid provides for receipt by the Debtors of aggregate Cash consideration at the closing of the Sale contemplated by such Qualified Bid of at least $900.0 million, (2) solely with respect to a Qualified Bid for the Buddy's Assets (and not for any of the other Assets of the Debtors), such Qualified Bid may be a Successful Bid or a Backup Bid if such Qualified Bid provides for receipt by the Debtors of aggregate Cash consideration at the closing of the Sale contemplated by such Qualified Bid of at least $60.0 million and (3) solely with respect to a Qualified Bid for the Vitamin Shoppe Assets (and not for any of the other Assets of the Debtors), such Qualified Bid may be a Successful Bid or a Backup Bid if such Qualified Bid provides for receipt by the Debtors of aggregate Cash consideration at the closing of the Sale contemplated by such Qualified Bid of at least $200.0 million, <u>and</u> (b) otherwise constitutes a Sufficient Bid.

The Debtors shall file a notice identifying the Successful Bidder and Backup Bidder (if selected) (such notice, the "<u>Notice of Successful Bidder</u>") as soon as reasonably practicable after closing the Auction, if any, and in any event not more than twenty-four (24) hours following closing the Auction.  The Debtors shall not consider any Bids or Overbids submitted after the Auction has closed, and any and all Bids or Overbids submitted after the conclusion of the Auction shall be deemed untimely and shall under no circumstances constitute a Bid or Overbid.

## VIII.    BACKUP BIDDER.

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid as compared to the Successful Bid at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, in consultation with the Consultation Parties (the "<u>Backup Bid</u>"), shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated.  As a condition to remaining the Backup Bidder, any Backup Bidder shall wire to the Debtors, in immediately available funds, its Incremental Deposit Amount, if applicable, no later than one (1) Business Day following the date on which the Notice of Successful Bidder is served.

The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors at the conclusion of any Auction (if held) at the same time the Debtors announce the identity of the Successful Bidder.

The Backup Bid(s) shall remain binding on the Backup Bidder until the earlier of (a) the closing of the Sale contemplated by the Successful Bid with the Successful Bidder, and (b) ninety (90) days after the date of the entry of the Sale Order applicable to such Backup Bid. If a Successful Bidder fails to consummate the Sale contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.

The Debtors will file a notice with the Court of the election to proceed to close a Sale transaction with a Backup Bidder and request a virtual status conference within three (3) Business Days of filing of such notice, subject to the availability of the Court. At the status conference, if the Court deems a further hearing necessary, an expedited briefing and hearing schedule will be set. Otherwise, the Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid of a Backup Bidder without further order of the Court.

Anything in these Bidding Procedures to the contrary notwithstanding, if the Bid (including a Credit Bid) submitted by or on behalf of the Senior Secured Lenders (including any agent or other representative for the Senior Secured Lenders) is (a) the Successful Bid or (b) the Backup Bid (in the event the Successful Bidder fails to consummate the Sale contemplated by its Successful Bid), in either such case the Senior Secured Lenders may elect to consummate the Successful Bid or the Backup Bid, as applicable, through the Plan Transaction in accordance with the terms of the Restructuring Support Agreement; provided that, to the extent any portion of the Successful Bid or the Backup Bid submitted by or on behalf of the Senior Secured Lenders (including any agent or other representative for the Senior Secured Lenders) consists of any consideration in excess of the amount of the Senior Secured Lenders' Credit Bid, then the Plan Transaction shall be modified solely to the extent necessary to account for any such excess consideration.

## IX.    ACCEPTANCE OF SUCCESSFUL BID.

The Debtors' presentation of a particular Qualified Bid to the Court for approval as the Successful Bid does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors will be deemed to have accepted a Bid as the Successful Bid only when the Bid has been approved by the Court as the Successful Bid at the Sale Hearing. The Debtors shall seek approval by the Court to consummate a Backup Bid solely in the event the applicable Successful Bidder fails to close the Sale as provided in the Successful Bid and with all rights reserved against the Successful Bidder.

## X.    FREE AND CLEAR OF ANY AND ALL ENCUMBRANCES.

All rights, title, and interest in and to the Assets or any portion thereof shall be sold free and clear of all liens, claims, interests, and encumbrances (if any) (collectively, the "Encumbrances"), subject only to the Assumed Liabilities and Permitted Liens (each as defined in the Successful Bidder's purchase agreement), if any, in accordance with Bankruptcy Code section

363(f), with such Encumbrances to attach to the net proceeds (if any) received by the Debtors from the Sale of the Assets in accordance with the Bankruptcy Code, applicable non-bankruptcy law, and any prior orders of the Court.

## XI.   ASSUMPTION AND ASSIGNMENT PROCEDURES.

The procedures for assuming and assigning Assigned Contracts to the Successful Bidder are set forth in the Bidding Procedures Order.

## XII.   NOTICE PARTIES.

The term "Notice Parties" as used in these Bidding Procedures shall mean (i) the Consenting First Lien Lenders and their counsel; (ii) the U.S. Trustee for the District of Delaware; and (iii) counsel to the official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"), Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, New York NY 10017, 34th Floor (Attn: Bradford J. Sandler, bsandler@pszjlaw.com; Robert J. Feinstein, rfeinstein@pszjlaw.com; Paul J. Labov, plabov@pszjlaw.com; and Theodore S. Heckel, theckel@pszjlaw.com).

## XIII.   CONSULTATION BY THE DEBTORS.

**The Debtors shall consult with the Ad Hoc Group Advisors, the professional advisors to the Freedom Lender Group (solely in their capacity as holders of Second Lien Secured Obligations) (the "Second Lien Advisors") and the professional advisors to the Committee (collectively, the "Consultation Parties" and each, a "Consultation Party") as explicitly provided for in these Bidding Procedures. Each reference in these Bidding Procedures to "consultation" (or similar word) shall mean consultation in good faith.**

**Notwithstanding anything to the contrary herein, (a) during any period in which a Consenting First Lien Lender that is represented by the Ad Hoc Group Advisors or any person or entity acting on behalf of any such Consenting First Lien Lender, in each case, in its capacity as such, has submitted a Qualified Bid with respect to the PSP Assets and has become a Qualified Bidder hereunder with respect to the PSP Assets, the Debtors shall not be required to consult with the Ad Hoc Group Advisors with respect to the sale of PSP Assets, unless and until such Consenting First Lien Lender, or any person or entity acting on behalf of such Consenting First Lien Lender, in each case, in its capacity as such, unequivocally revokes its Bid on the PSP Assets and waives its right to continue to make Bids on the PSP Assets in the Auction process (if held), (b) during any period in which a Consenting First Lien Lender that is represented by the Ad Hoc Group Advisors or any person or entity acting on behalf of any such Consenting First Lien Lender, in each case, in its capacity as such, has submitted a Qualified Bid with respect to the Buddy's Assets and has become a Qualified Bidder hereunder with respect to the Buddy's Assets, the Debtors shall not be required to consult with the Ad Hoc Group Advisors with respect to the sale of Buddy's Assets, unless and until such Consenting First Lien Lender, or any person or entity acting on behalf of such Consenting First Lien Lender, in each case, in its capacity as such, unequivocally revokes its Bid on the Buddy's Assets and waives its right to continue to make Bids on the Buddy's Assets in the Auction process (if held), and (c) during any period in which a Consenting First**

Lien Lender that is represented by the Ad Hoc Group Advisors or any person or entity acting on behalf of any such Consenting First Lien Lender, in each case, in its capacity as such, has submitted a Qualified Bid with respect to the Vitamin Shoppe Assets and has become a Qualified Bidder hereunder with respect to the Vitamin Shoppe Assets, the Debtors shall not be required to consult with the Ad Hoc Group Advisors with respect to the sale of Vitamin Shoppe Assets, unless and until such Consenting First Lien Lender, or any person or entity acting on behalf of such Consenting First Lien Lender, in each case, in its capacity as such, unequivocally revokes its Bid on the Vitamin Shoppe Assets and waives its right to continue to make Bids on the Vitamin Shoppe Assets in the Auction process (if held).

Notwithstanding anything to the contrary herein, during any period in which a member of the Freedom Lender Group or any person or entity acting on behalf of any such member of the Freedom Lender Group, has submitted a Qualified Bid and has become a Qualified Bidder hereunder or is participating in any Bid (including by providing any financing in connection with any such Bid), the Debtors shall not be required to consult with the Second Lien Advisors, unless and until such member of the Freedom Lender Group or any person or entity acting on behalf of such member of the Freedom Lender Group, unequivocally revokes its Bid and waives its right to continue to make Bids in the Auction process (if held) or unequivocally revokes its participation with any such Bid and waives its right to participate in other Bids, as applicable.

Notwithstanding anything to the contrary herein, during any period in which a member of the Committee or any person or entity acting on behalf of any such member of the Committee, has submitted a Qualified Bid and has become a Qualified Bidder hereunder, the Debtors shall not be required to consult with such member (and the Committee shall not include such member in any discussions regarding the Sale or provide such member with any information provided to the Committee in its capacity as a Consultation Party), unless and until such member or any person or entity acting on behalf of such member, unequivocally revokes its Bid and waives its right to continue to make Bids in the Auction process (if held).

XIV.    RESERVATION OF RIGHTS.

Except as otherwise provided in these Bidding Procedures (including, without limitation, the first proviso in Number 10 in Article VII.B. and the proviso in the second paragraph of Article XIX), the Debtors reserve the right, in their reasonable business judgment, after consultation with the Consultation Parties, and subject to the Restructuring Support Agreement, to make modifications to these Bidding Procedures in good faith and in a manner consistent with their fiduciary duties to further the goal of attaining the highest or otherwise best offer for the Assets or impose, at or prior to the selection of any Successful Bidder, additional customary terms and conditions on the Sale, including, without limitation: (a) extending the dates and deadlines set forth in these Bidding Procedures (including, but not limited to, those set forth in Section II hereof); (b) adjourning the Auction (if held) without further notice; (c) adding or modifying procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction, and/or adjourning the Sale Hearing in open court (if held); (d) rejecting any or all Bids or Qualified Bids; (e) adjusting the applicable minimum Overbid increment; and (f) selecting a draft

purchase agreement agreed to by a Qualified Bidder in connection with a Qualified Bid to serve as the purchase agreement that will be executed by the Successful Bidder or Successful Bidders, as applicable and with any necessary adjustments for the Assets and Liabilities being purchased and assumed, upon conclusion of the Auction, if held.  The Debtors shall provide reasonable notice of any such modification to all Qualified Bidders.

## XV.    CONSENT TO JURISDICTION.

All Potential Bidders, Acceptable Bidders, and Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Asset Sale Bid Documents.

## XVI.    SALE HEARING.

A hearing to consider approval of the sale of the Assets (or any portion thereof) to any Successful Bidder or Backup Bidder (if applicable) (the "Sale Hearing") shall be scheduled to take place on either (i) **February 10, 2025, at [●] a.m./p.m. (prevailing Eastern Time)**, or the soonest date the Court is available thereafter, if no Auction is held, or (ii) **February 14, 2025, at [●] a.m./p.m. (prevailing Eastern Time)**, or the soonest date the Court is available thereafter, if an Auction is held.  The Sale Hearing shall be before the Honorable John T. Dorsey, in the United States Court for the District of Delaware, 824 North Market Street, Wilmington, DE 19801, 5th Floor, Courtroom 5.

**The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by filing and sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Successful Bidder and the Backup Bidder must acknowledge on the record at the start of the hearing that in connection with submitting their Bids, they did not engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction (if held), or the Sale, specifying that they did not agree with any Potential Bidders, Acceptable Bidders, or Qualified Bidders to control the price or any other terms of the Sale.

Objections to (i) the Sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code to any Successful Bidder and/or Backup Bidder, as applicable, (ii) any of the relief requested in the Bidding Procedures Motion, and (iii) entry of any order approving the Sale, must (w) be in writing and specify the nature of such objection; (x) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; (y) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (z) be filed with the Court and served on the Objection Notice Parties (as such term is defined in the Bidding Procedures Order) so as to be actually received no later 4:00 p.m. (prevailing Eastern Time) on **January 3, 2025**.

## XVII.    FIDUCIARY OUT AND RESTRUCTURING SUPPORT AGREEMENT.

Nothing in these Bidding Procedures will require a Debtor, the board of directors, board of managers, or such similar governing body of a Debtor, after consulting with outside counsel, to take any action or to refrain from taking any action (including with respect to these Bidding Procedures or the Sale) to the extent, upon advice of counsel, such board of directors, board of managers, or such similar governing body determines, in good faith, that taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law; provided that, in any such case where any Debtor, board of directors, board of managers, or such similar governing body makes any such determination, the Debtors shall be required to comply with Section 8.01 of the Restructuring Support Agreement.  Notwithstanding the foregoing or anything in these Bidding Procedures to the contrary notwithstanding, if any Debtor or board of directors, board of managers, or similar governing body of any Debtor takes any action or refrains from taking any action as a result of any such determination described in the immediately preceding sentence, (i) none of the Consenting First Lien Lenders shall be deemed to have consented or approved any such action or inaction (including, without limitation, any consent referred to in section 363(f) of the Bankruptcy Code), (ii) such action or inaction shall not amend, supplement, waive or otherwise modify, or be deemed or construed to have amended, supplemented, waived or otherwise modified, any of the terms, conditions, milestones, covenants, termination events, termination rights or other provisions in the Restructuring Support Agreement, and (iii) the Debtors and/or the Consenting First Lien Lenders shall be entitled to exercise all of their respective rights and remedies under or relating to the Restructuring Support Agreement, including, without limitation, the right of the Debtors and/or the Required Consenting First Lien Lenders to terminate the Restructuring Support Agreement.

## XVIII.    RETURN OF DEPOSIT.

The Deposit (including any Incremental Deposit Amount) of each Successful Bidder shall be applied to the Purchase Price of the applicable Sale(s) at closing.  The Deposits (including any Incremental Deposit Amount) for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors, in their sole discretion, and shall be returned to the applicable Qualified Bidder (other than the Successful Bidder and the Backup Bidder) on or before the date that is five (5) Business Days after the Auction, if held, or, if no Auction is held, on the date of entry of the applicable Sale Order.  Any Backup Bidder's Deposit (including any Incremental Deposit Amount) shall be held in escrow until the closing of the Sale with the Successful Bidder, whereupon it will be returned to the Backup Bidder.  In the event the Debtors and Successful Bidder fail to consummate the Sale set forth in the Successful Bid and the Debtors opt to pursue the Sale set forth in the applicable Backup Bid, the Backup Bidder's Deposit (including any Incremental Deposit Amount) shall be applied to the Purchase Price of such Sale at closing of the Sale with the Backup Bidder.  In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Successful Bidder's Deposit (including any Incremental Deposit Amount) or Backup Bidder's Deposit (including any Incremental Deposit Amount), as applicable, shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder or Backup Bidder, as applicable, subject to the terms of the Successful Bidder's purchase agreement or the Backup Bidder's purchase agreement, as applicable.

## XIX.     RESTRUCTURING SUPPORT AGREEMENT.

Anything in these Bidding Procedures to the contrary notwithstanding, nothing in these Bidding Procedures (including, without limitation, (i) any consultation rights of the Consultation Parties, (ii) any right of the Debtors with respect to the acceptance or approval of any agreements, documents, information, Bids, or actions, (iii) any right of the Debtors to make decisions, determinations or judgments with respect to the matters contemplated by these Bidding Procedures, (iv) any right of the Debtors to amend or modify these Bidding Procedures, and (v) the exercise of any of the foregoing rights) amends, supplements, waives or otherwise modifies, or shall be deemed or construed to have amended, supplemented, waived or otherwise modified, any of the terms, conditions, milestones, covenants, termination events, termination rights or other provisions in the Restructuring Support Agreement, or any of the rights, remedies or privileges of the Debtors or the Consenting First Lien Lenders arising under or relating to the Restructuring Support Agreement, all of the foregoing shall remain in full force and effect.

Notwithstanding anything to the contrary herein, if the Restructuring Support Agreement is validly terminated in accordance with its terms, the Debtors may amend or modify these Bidding Procedures in their sole discretion following any such termination; provided, however, that, following any such termination, the Debtors shall not, directly or indirectly, amend or modify any of the following (including any of the defined terms used therein) without the consent of the Senior Secured Lenders in their sole discretion:  (i) the second sentence of the first paragraph of Article III.B., (ii) the proviso in the first sentence in the first paragraph of Article III.C., (iii) the second sentence in the first paragraph of Article III.C., (iv) the second paragraph of Article III.C., (v) Number 13 in Article IV, (vi) the second sentence of Article V, (vii) Article XIII, (viii) clause (i) of the second sentence of Article XVII, (ix) the consultation rights of the Consultation Parties, and (x) this paragraph.

**<u>Exhibit 2</u>**

**Sale Hearing Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

## NOTICE OF PROPOSED SALE OF ASSETS,
## BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that, on November 3, 2024 (the "Petition Date"), Franchise Group, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") each filed a voluntary petition for relief (collectively, these "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are seeking to sell (the "Sale") all or substantially all of their assets (the "Assets"), free and clear of all liens, claims, interests, and encumbrances, except as may be provided in any applicable Sale Order.[2]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in, as applicable, the Bidding Procedures or Bidding Procedures Order (each as defined below).

**PLEASE TAKE FURTHER NOTICE** that, by order dated [●], 2024 [Docket No. [●]] (the "Bidding Procedures Order"), the Bankruptcy Court approved certain "Bidding Procedures" that govern the Sale.  All interested parties should carefully read the Bidding Procedures Order and the Bidding Procedures.  Copies of the Bidding Procedures Order, the Bidding Procedures (which are attached to the Bidding Procedures Order as Exhibit 1), and all related pleadings filed in these Chapter 11 Cases are available for download at https://cases.ra.kroll.com/FRG, or upon request to the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, via telephone at (844) 285-4564 (U.S./Canada) or +1 (646) 937-7751 (International), or via email at FRGinfo@ra.kroll.com.

**PLEASE TAKE NOTICE** that a separate notice will be provided to non-Debtor counterparties to the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale.  **Any interested bidder should contact Christopher Grubb (cgrubb@ducerapartners.com) and Kishan Patel (kpatel@ducerapartners.com) of Ducera Partners LLC, the Debtors' investment banking advisor**.

- The deadline for the submission of Qualified Bids is **February 3, 2025 at 5:00 p.m. (ET)**.

- Objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection") must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801 **on or before 4:00 p.m. (ET) on January 3, 2025** (the "Sale Objection Deadline"); and (e) be served upon the Objection Notice Parties.  The "Objection Notice Parties" are as follows: are as follows: (i) counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com), Matthew A. Feldman, Esq. (email: mfeldman@willkie.com), and Betsy L. Feldman, Esq. (bfeldman@willkie.com); (ii) co-counsel to the Debtors, Young Conaway Stargatt and Taylor, LLP, 1000 North King Street, Wilmington, DE, 19801, Attn: Edmon L. Morton (emorton@ycst.com), Matthew B. Lunn (mlunn@ycst.com), and Allison S. Mielke (amielke@ycst.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Wilmington, DE 19801, Attn: Timothy J. Fox (timothy.fox@usdoj.gov); (iv) proposed counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, New York NY 10017, 34th Floor, Attn: Bradford J. Sandler (bsandler@pszjlaw.com); Robert J. Feinstein (rfeinstein@pszjlaw.com); Paul J. Labov (plabov@pszjlaw.com); and Theodore S. Heckel (theckel@pszjlaw.com); (v) counsel to the DIP Lenders and Ad Hoc Group of First Lien Secured Lenders, (A) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (B) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com); (vi) counsel to the ABL Secured Parties, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com); (vii) counsel to the Second Lien Secured Parties, White & Case LLP, 200 S Biscayne Blvd,

Miami, FL 33131, Attn: Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100, Chicago, IL 60606, Attn: Bojan Guzina, Esq. (bojan.guzina@whitecase.com); and (viii) counsel to the HoldCo Lenders at the address set forth in (vii) above).

- Objections, if any, to the proposed assumption and assignment or the Cure Cost proposed with respect thereto (such objection, a "Cure Objection") must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Cost, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon the Objection Notice Parties, so as actually to be received on or before the date that is fourteen (14) days after the filing and service of the Assumption and Assignment Notice or Supplemental Assumption Notice by the Debtors, as applicable (each, a "Cure Objection Deadline").

- Any non-Debtor Contract counterparty that wishes to obtain adequate assurance information regarding bidders that will or may participate at the Auction (defined below) must notify, in writing, the proposed counsel to the Debtors not less than twenty-four (24) hours prior to the Bid Deadline: Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com), Betsy L. Feldman, Esq. (bfeldman@willkie.com), Joseph R. Brandt, Esq. (jbrandt@willkie.com), and Jessica D. Graber, Esq. (jgraber@willkie.com) (the "Request for Adequate Assurance"). The Request for Adequate Assurance must include an e-mail or address to which a response to such information request can be sent. Objections, if any, to adequate assurance of future performance of the Assigned Contracts (if any) by the Successful Bidder (if any) must be filed with the Court and served on the Objection Notice Parties **no later than seven (7) days after delivery of adequate assurance of future performance information**.

- An auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on **February 7, 2025 at 10:00 a.m. (ET)** (the "Auction"), either (i) via a virtual meeting, (ii) at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, or (iii) at such later date, time, and location as designated by the Debtors, after providing notice to the Notice Parties and the Consultation Parties (each as defined in the Bidding Procedures Order).

- Objections, if any, (a) to specific terms of the Sale or specific provisions of the Asset Purchase Agreement or the Sale Order that could not have been raised based on the Bidding Procedures Motion alone, (b) related to the identity of the Successful Bidder(s) or Backup Bidder (as applicable) (other than with respect to executory contracts and unexpired leases), or (c) to the conduct of the Auction (if applicable) (the "Subsequent Sale Objection") must (w) be in writing and specify the nature of such objection; (x) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; (y) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (z) be filed with the Court and served on the Objection Notice Parties

so as to be actually received no later than (1) **February 6, 2025 at 4:00 p.m. (ET), if no Auction is held** or (2) **February 10, 2025 at 4:00 p.m. (ET), if an Auction is held.**

- If the Auction is held, the Debtors shall file a reply to any Sale Objections, Cure Objections, Subsequent Sale Objections, and/or objections to adequate assurance by **February 13, 2025 at 12:00 p.m. (ET)**, and the Sale Hearing shall take place on **February 14, 2025 at [●] [a.m./p.m.] (ET)** subject to availability of the Court.

- If no Auction is held, the Debtors shall file a reply to any Sale Objections, Cure Objections, Subsequent Sale Objections, and/or objections to adequate assurance by **February 8, 2025 at 5:00 p.m. (ET)**, and the Sale Hearing shall take place on **February 10, 2025 at [●] [a.m./p.m.] (ET)** subject to availability of the Court.

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

**<u>Exhibit 3</u>**

**Assumption and Assignment Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket No. ___** |

## NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT AND CURE COSTS WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE THAT:**

On November 3, 2024, Franchise Group, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (the "Debtors") filed voluntary petitions (collectively, the "Chapter 11 Cases") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

The Debtors may seek to assume and assign certain of their executory contracts and unexpired leases in connection with the sale or disposition (the "Sale") of substantially all of the

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Debtors' assets (collectively, the "Assets"),[2] free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363 of the Bankruptcy Code.

By order dated [●], 2024 [Docket No. ●] (the "Bidding Procedures Order"),[3] the Court established certain procedures that govern the assumption and assignment of the Debtors' executory contracts and unexpired leases in connection with the Sale, and certain "Bidding Procedures" that govern the sale of the Assets to the highest or otherwise best bidder(s).  Copies of the Bidding Procedures Order, the Bidding Procedures, and any related pleadings filed in these Chapter 11 Cases are available for download at https://cases.ra.kroll.com/FRG, or from the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, via telephone at (844) 285-4564 (U.S./Canada) or (646) 937-7751 (International), or via email at FRGinfo@ra.kroll.com.

You are receiving this notice (the "Cure Notice") because you may be a party to an unexpired lease or an executory contract (including, without limitation, any and all amendments, modifications, side letters, memoranda of understanding, documents incorporated by reference, attachments, and exhibits thereto) (a "Contract") that *may* be assumed and assigned in connection with such Sale (such assumed and assigned contact, an "Assigned Contract").  A list of the Contracts is attached hereto as Exhibit A (the "Cure Schedule").

The Debtors have conducted a review of their books and records and have determined that all unpaid monetary obligations under the Contracts, *as of the date of this Cure Notice*, are as set forth in the Cure Schedule (the "Cure Costs").  To the extent that the Debtors satisfy any portion of the Cure Costs subsequent to the filing of this Cure Notice, the Cure Costs shall be reduced accordingly.  The Cure Costs are the only amounts proposed to be paid upon any assumption and assignment of the Assigned Contracts, in full satisfaction of all amounts outstanding under the Assigned Contracts.

**To the extent that a counterparty to a Contract objects to (i) the possible assumption and assignment of such party's Contract or (ii) the applicable Cure Cost, the counterparty must file and serve an objection (a "Cure Objection").**

**Any Cure Objection shall: (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Cost, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, (iv) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801 on or before 4:00 p.m. (ET) on [●], 2025 (the "Cure Objection Deadline"); and (v) be served upon the Objection Notice Parties (as defined below).  For the avoidance of doubt, a timely filed and properly served Cure Objection will reserve the counterparty's rights relating to the Contract, but will not be**

---

[2]    The Debtors are simultaneously pursuing store closing sales with respect to their American Freight business pursuant to the *Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief*.  The term "Assets," as used herein, does not refer to any assets, contracts or interests subject to the American Freight store closing sales.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Bidding Procedures Order (as defined below).

deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sale.

All parties-in-interest shall also have an opportunity to object (a) to the specific terms of the Sale or specific provisions of the Asset Purchase Agreement or the Sale Order that could not have been raised based on the Motion alone (if applicable), (b) related to the identity of the Successful Bidder(s) or Backup Bidder (as applicable) (other than with respect to executory contracts and unexpired leases), or (c) to the conduct of the Auction (if an Auction is held) (collectively, the "Subsequent Sale Objection"). Any Subsequent Sale Objection must (i) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) be filed with the Court and served on the Objection Notice Parties (as defined below) by no later than (a) **4:00 p.m. on February 10, 2025 (prevailing Eastern Time)**, if an Auction is held, or (b) **4:00 p.m. on February 6, 2025 (prevailing Eastern Time)**, if no Auction is held, but a Successful Bidder is named.

All non-Debtor counterparties to Contracts that may be assumed and assigned in connection with the Sale shall also have an opportunity to object to the adequate assurance of future performance under Assigned Contracts (if any). Any objection to the adequate assurance of future performance must (i) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) be filed with the Court and served on the Objection Notice Parties (as defined below) by no later than seven (7) days after delivery of adequate assurance of future performance information. Any non-Debtor Contract counterparty interested in receiving adequate assurance of future performance shall request such information to the Debtors' counsel not less than twenty-four (24) hours prior to the Bid Deadline. All requesting non-Debtor Contract counterparties shall be provided with adequate assurance information relevant to the affected counterparty (by email if available or otherwise by first class mail) no later than (a) twenty-four (24) hours after the Bid Deadline for delivery via email, or as soon as reasonably practicable thereafter, and (b) one (1) business day after the Bid Deadline for delivery via first class mail, or as soon as reasonably practicable thereafter.

The "Objection Notice Parties" are as follows: (i) counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com), Matthew A. Feldman, Esq. (email: mfeldman@willkie.com), and Betsy L. Feldman, Esq. (bfeldman@willkie.com); (ii) co-counsel to the Debtors, Young Conaway Stargatt and Taylor, LLP, 1000 North King Street, Wilmington, DE, 19801, Attn: Edmon L. Morton, Esq. (emorton@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), and Allison S. Mielke, Esq. (amielke@ycst.com); (ii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Room 2207, Wilmington, DE 19801, Attn: Timothy J. Fox (timothy.fox@usdoj.gov); (iv) proposed counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, New York NY 10017, 34th Floor, Attn: Bradford J. Sandler (bsandler@pszjlaw.com); Robert J. Feinstein (rfeinstein@pszjlaw.com); Paul J. Labov (plabov@pszjlaw.com); and Theodore S. Heckel (theckel@pszjlaw.com); (v) counsel to the DIP Lenders and Ad Hoc Group of First Lien Secured Lenders, (a) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq.

(isaacsasson@paulhastings.com), and (b) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com); (vi) counsel to the ABL Secured Parties, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com); (vii) counsel to the Second Lien Secured Parties, White & Case LLP, 200 S Biscayne Blvd, Miami, FL 33131, Attn:   Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100, Chicago, IL 60606, Attn:  Bojan Guzina, Esq. (bojan.guzina@whitecase.com); and (viii) counsel to the HoldCo Lenders at the address set forth in (vii) above.

**If a Cure Objection or an objection to the proposed assumption and assignment of a Contract or Assigned Contract is not timely received with respect to a Contract or Assigned Contract: (i) the counterparty to such Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder, if any; (ii) any and all defaults under the Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code upon assumption and assignment of the Assigned Contract and payment of the Cure Cost; and (iii) the Cure Cost for such Contract or Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Contract or Assigned Contract, or any other related document, and the counterparty shall be deemed to have consented to the Cure Cost and shall be forever barred from asserting any other claims related to such Contract or Assigned Contract against the Debtors and their estates or the Successful Bidder (if any), or the property of any of them, to the extent such claim existed prior to the entry of the Sale Order.**

**Any party failing to timely file a Subsequent Sale Objection or object to the adequate assurance of future performance under Assigned Contracts shall be deemed to have consented to the assumption, assignment, and/or transfer of the applicable Assigned Contract to the proposed assignee, and shall be forever barred and estopped from asserting or claiming that any conditions to such assumption, assignment, and/or transfer must be satisfied under such applicable Assigned Contract or that any related right or benefit under such applicable Assigned Contract cannot or will not be available to the proposed assignee.**

Subject to the terms of the Bidding Procedures Order, an auction (the "<u>Auction</u>") for the Assets, including the Assigned Contracts, may be held on **February 7, 2025 at 10:00 a.m. (ET)**, either (i) via a virtual meeting, (ii) at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, or (iii) at such later date, time, and location as designated by the Debtors, after providing notice to the Notice Parties (as defined in the Bidding Procedures Order). If held, following the Auction, the Debtors will file and serve a notice that identifies the Successful Bidder for the Assets.

**The Debtors will seek to assume and assign the Assigned Contracts that have been selected by the Successful Bidder at a hearing before the Honorable John T. Dorsey, in the United States Court for the District of Delaware, 824 North Market Street, Wilmington, DE 19801, 5th Floor, Courtroom 5, (a "<u>Sale Hearing</u>") on either (i) <u>February 10, 2025</u>, at [●] a.m./p.m. (prevailing Eastern Time), or the soonest date the Court is available thereafter, if**

**no Auction is held, or (ii) <u>February 14, 2025</u>, at [●] a.m./p.m. (prevailing Eastern Time), or the soonest date the Court is available thereafter, if an Auction is held, or such other date as determined by the Debtors in accordance with the terms of the Bidding Procedures Order, subject to the Court's availability.**

In the event that a non-Debtor contract counterparty files a timely Cure Objection and the Debtors and such counterparty cannot resolve such objection, the objection shall be heard at the Sale Hearing or such later date that the Debtors determine, subject to the Court's calendar; <u>provided</u>, <u>however</u>, that (i) any Assigned Contract that is the subject of a Cure Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection, (ii) the Debtors, in consultation with the parties to any Contract that is subject to a Cure Objection, may adjourn a Cure Objection, and (iii) the Successful Bidder (if any) shall pay any undisputed Cure Cost in accordance with the terms of its asset purchase agreement with the Debtors on or before the Sale Closing and shall appropriately reserve funding for the disputed portion of the Cure Costs.

If such objection has not been resolved prior to the Sale Closing (whether by an order of the Court or by agreement with the counterparty), the Successful Bidder (if any) may elect, in its sole discretion, to: (x) treat such counterparty's Contract (the "<u>Disputed Contract</u>") as an excluded Contract (pursuant to the terms of the Successful Bidder's asset purchase agreement with the Debtors) or (y) temporarily treat such counterparty's Contract as an excluded Contract, proceed to the Sale Closing, and determine whether to treat the Disputed Contract as an Assigned Contract or an excluded Contract within five (5) business days after resolution of such objection (whether by order of the Court or by agreement with the counterparty).

*[Remainder of Page Left Intentionally Blank]*

Dated: [  ], 2024
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Matthew A. Feldman (admitted *pro hac vice*)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Cure Schedule**

[To Come]