## EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC.[1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## AD HOC GROUP OF FREEDOM LENDERS' FIRST REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO THE HOLDCO DEBTORS IN CONNECTION WITH THE SECOND-DAY MOTIONS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, certain of the (i) Lenders, as defined in that certain *Credit Agreement*, dated as of August 21, 2023 among Freedom VCM Interco, Inc., Freedom VCM, Inc., and Alter Domus (US) LLC (as amended, restated, supplemented or otherwise modified from time to time) (the "**HoldCo Lenders**") and (ii) Second

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Lien Claimholders, as defined in that certain *Second Lien Credit Agreement*, dated as of March 10, 2021, among Franchise Group Inc., Franchise Group NewCo PSP, LLC, Valor Acquisition, LLC, Franchise Group NewCo Intermediate AF, LLC, and Alter Domus (US) LLC (as amended, restated, supplemented or otherwise modified from time to time) (the "**OpCo 2L Lenders**," and together with the HoldCo Lenders, the "**Ad Hoc Group of Freedom Lenders**") serve their First Requests for the Production of Documents (the "**Requests**" and each, a "**Request**") to Freedom VCM, Inc. and Freedom VCM Interco, Inc. (together, the "**HoldCo Debtors**") in connection with the Second-Day Motions.  Responses to these Requests must be served on **Samuel P. Hershey, White & Case LLP, 1221 Avenue of the Americas, New York, New York, 10020**, counsel to the Ad Hoc Group of Freedom Lenders, immediately on a rolling basis, with production to be completed on or before **November 18, 2024**.

## DEFINITIONS

For the purposes of these Document Requests, the following Definitions shall apply:

1.     "**Ad Hoc Group of First Lien Lenders**" shall have the meaning ascribed to it in the First-Day Declaration.

2.     "**Affiliate**" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

3.     "**Alix Partners**" means AlixPartners, LLP.

4.     "**Bankruptcy Code**" means title 11 of the United States Code, as amended.

5.     "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

6.     "**Board**" means any board of directors, managers, or comparable supervisory body, or any group or committee with the responsibility of, among other things, governing the Debtors or overseeing the activities and operations of the Debtors.

2

7.      "**Board Materials**" means all documents and materials prepared for, presented to, reviewed by, or distributed to any member of the Board in connection with any Board or committee meeting or action, including but not limited to, meeting minutes, agendas, resolutions, presentations, Board books, reports, and any other documents shared with Board members or committee members for the purpose of decision-making, discussion, or record-keeping related to Board or committee activities.

8.      "**Cash Collateral**" means all cash of the Debtors as defined in the DIP Motion.

9.      "**Cash Management Motion**" means the *Debtors' Motion for Interim and final orders (I) Authorizing the Debtors to (A) Continue to Maintain Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions; (II) Waiving Certain Operating Guidelines; (III) Suspending Time to Comply with Section 345(b) of the Bankruptcy Code; and (IV) Granting Related Relief* [D.I. 9].

10.     "**Chapter 11 Cases**" means the voluntary chapter 11 cases commenced on the Petition Date by the Debtors in the Bankruptcy Court.

11.     "**Communication**" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including without limitation, correspondence, documents, conversations, dialogues, discussions, e-mail, interviews, consultations, agreements, and other understandings.

12.     "**Concerning**," "**regarding**," "**in connection with**," "**relating to**," and/or "**referring to**" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed

AMERICAS 126502240

in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

13.    "**Consenting First Lien Lenders**" shall have the meaning set forth in the First-Day Declaration.

14.    "**Critical Vendor Motion**" means *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers & Logistics Providers, and 503(B)(9) Claimants; and (II) Granting Related Relief* [D.I. 10].

15.    "**Debtors**" means Franchise Group, Inc. and its affiliated debtors, which filed voluntary chapter 11 petitions under the Bankruptcy Code commencing the Chapter 11 Cases, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successors entities; and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

16.    "**Critical Vendors**" means any holder of a prepetition Critical Vendors Claim, Foreign Vendors Claim, Shippers & Logistics Providers Claim, and/or 503(b)(9) Claim, each as defined in the Critical Vendor Motion.

17.    "**Document**" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic mater, in draft or final form, including, but not limited to: any letter, correspondence, or Communication of any sort; photograph; sound recording; video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, or cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, text message, instant message, Bloomberg message, WhatsApp message, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act,

4

or activity; projection, work paper, or draft; computer or computer network output or input, portable storage devices, e-mail, magnetic and/or optical medias, archived or back up data on any of these medias on the cloud or otherwise, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice, or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, or press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, register, canceled check, deposit slip, charge slip, tax return (income or other), requisition, file, study, graph, or tabulation, and any and all other writings and recordings of whatever nature, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonable usable form; including, without limitation, all things meeting the definition of "documents" or "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definition of "writing" or "recording" set forth in Rule 1001 of the Federal Rules of Evidence. Any document with any marks such as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is a separate document within the meaning of this term.

18.    "**DIP Declaration**" means the *Declaration of Christopher Grubb in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III)*

*Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [D.I. 52].

19.    "**DIP Facility**" shall have the meaning set forth in the First-Day Declaration.

20.    "**DIP Lenders**" shall have the meaning set forth in the First-Day Declaration.

21.    "**DIP Motion**" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [D.I. 51].

22.    "**Ducera**" means Ducera Partners LLC.

23.    "**First-Day Declaration**" means the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15].

24.    "**First-Day Filings**" refers to the filings submitted on November 3 and 4, 2024 and argued during the First-Day Hearing.

25.    "**First-Day Hearing**" refers to the hearing held in the above-captioned matter on November 5 and 6, 2024.

26.    "**HoldCo Debtors**" refers to Freedom VCM, Inc. and Freedom VCM Interco, Inc.

27.    "**Including**" means "including, without limitation" or "including, but not limited to."

28.    "**Independent Investigation**" has the meaning set forth in the First-Day Declaration.

AMERICAS 126502240

29.     "**Initial DIP Budget**" means the 13-week cash flow forecast statements of the Debtors which the use of Cash Collateral and proceeds of the DIP Facility are subject to as set forth in Exhibit 3 to the DIP Motion.

30.     "**Intercreditor Agreement**" refers to the *Amended and Restated First Lien/Second Lien Intercreditor Agreement*, dated as of November 22, 2021, among JPMorgan Chase Bank, N.A. in multiple capacities, Alter Domus (US) LLC in multiple capacities, and the Franchise Group, Inc.

31.     "**Petition Date**" means November 3, 2024.

32.     "**Prepetition Marketing Process**" refers to the prepetition marketing process described in paragraphs 13-19 of the DIP Declaration.

33.     "**Relate**" and its variants encompass the terms "refer," "reflect," "constitute," "evidence," "in connection with," and "concern" and shall be construed to bring within the scope of the Document Request, as applicable, all documents and information that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Document Request, as applicable, including, but not limited to, all documents and information that reflect, record, memorialize, discuss, evaluate, consider, review, report, or otherwise evidence the existence of the subject matter of the Document Request, as applicable.

34.     "**RSA**" refers to that certain *Restructuring Support Agreement*, dated as of November 1, 2024, attached as Exhibit B to the First-Day Declaration.

35.     "**Special Committee**" shall have the meaning set forth in the First-Day Declaration.

36.     "**Take-Private Transaction**" shall have the meaning set forth in the First-Day Declaration.

AMERICAS 126502240

37.     "**Willkie**" means Willkie Farr & Gallagher LLP.

38.     "**Young Conaway**" means Young Conaway Stargatt & Taylor, LLP.

39.     "**You**" and "**Your**" means the HoldCo Debtors.

<u>**INSTRUCTIONS**</u>

The preceding Definitions apply to each of these Instructions and for purposes of these Document Requests, the following Instructions shall be followed:

1.      In accordance with Rule 34(a) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, the Document Requests shall be deemed to include any document now or at any time in Your possession, custody, or control, including, but not limited to, documents in the possession, custody, or control of any Your current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entitles and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives, or other person acting or purporting to act on its or their behalf.  A document is deemed to be in Your possession, custody, or control it if is in Your physical custody, or if it is in the physical custody of any other person or entity and You:  (i) own such document in whole or in part; (ii) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (iii) have an understanding, express or implied, that You may use, inspect, examine, or copy such document when You sought to do so, or (iv) as a practical matter, have been able to use, inspect, examine or copy such document on any terms.  If any requested document was, but no longer is, in Your control, state the disposition of each such document.

2.      As the term " possession" pertains to e-mails, the term includes, but is not limited to, e-mails contained in Your electronic e-mail directories containing (i) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such

AMERICAS 126502240

subdirectories; (ii) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (iii) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

3.      The word "all" shall also include "each of," and vice versa.  The word "any" shall be construed to mean "any and all" where the effect of such construction is to broaden the scope of the Document Request.

4.      In responding to each Document Request, You are to review and search all relevant files of appropriate entities and persons.

5.      All Document Requests shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the documents.

6.      You are to produce the original and all non-identical copies, including all drafts of each document requested.  If You are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.  Any document that cannot be produced in full shall be produced to the fullest extent possible.

7.      In accordance with Rule 34(b) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond with the categories in each Document Request.  The name of the file from which it was produced, the identity of the person from whose file it was produced, and the identity of the present custodian of that file each shall be set forth.  All documents requested herein shall be produced electronically as tagged image file format ("**TIFF**") or portable document format ("**PDF**") files, except that all spreadsheets and accounting and financial data, including

those created with Excel software, shall be produced in a fully functional native form (i.e., in a linked format).

8.      If any responsive document is known to have existed and cannot now be located, or has been destroyed, discarded, or otherwise disposed, set forth a complete statement of the circumstances surrounding such loss, destruction, discarding, or other disposition, including:

a.      A description of the document, including the date, a summary of its contents and the identity of its author and the persons(s) to whom it was sent or shown:

b.      The last known custodian;

c.      Whether the document is missing or lost or was destroyed, discarded, or otherwise disposed;

d.      The date of loss, destruction, discarding, or other disposition;

e.      The reason(s) for destruction, discarding, or other disposition;

f.      The person(s) authorizing or carrying out such destruction, discarding, or other deposition; and

g.      The efforts made to locate lost or misplaced documents.

9.      In the event You seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, You shall produce as much of the document concerned as to which no claim of privilege or other limitation of discovery is made.  With respect to documents or portions of documents for which a claim of privilege or other limitation of discovery is made, You are instructed to provide a numeral list of the document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation is governed by state law, indicate the state of the privilege rule or other limitation invoked; and (2)

AMERICAS 126502240

provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected information: (i) the type of document; (ii) the name and capacity of each author and recipient of the document; (iii) the general subject matter of the document in a manner sufficient to support the privilege or other protection claimed; (iv) the date of the document; (v) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production. Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged or protected information should be produced, but that portion of the document for which the privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

10.     Each Definition, Instruction, and Document Request herein shall be construed independently and not with reference to any other Definition, Instruction, or Document Request, for the purposes of limitation.

11.     If any meaning of any term in any Document Request herein is unclear to You, without waiver of the right to seek a full and complete response to the Document Request, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Document Request according to the assumed meaning.

AMERICAS 126502240

12.     In accordance with Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, objections to any part of these Document Requests shall be stated in full and with specificity.  In the event You interpose an objection to a Document Request, You must produce the documents to which objection is not made or provide testimony or information not objected to.

13.     Each Document Request shall be deemed continuing.  If, after responding, You obtain or become aware of any additional documents or information responsive to these Document Requests, production of such additional documents or information shall be made forthwith.

14.     "Including" shall not be construed to limit the scope of any Document Request.

15.     Whenever necessary to bring within the scope of a Document Request documents or information that might otherwise be construed to be outside its scope:

       a.     The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

       b.     The use of a word in its singular form shall be deemed to include within its use the plural form, and vice versa;

       c.     The use of the masculine form of a noun or pronoun shall include the feminine form, and vice versa; and

       d.     The use of the conjunctive or disjunctive, respectively, shall be construed as necessary to be inclusive rather than exclusive.

16.     Each paragraph, subparagraph, clause, and word therein should be construed independently and not by reference to any other paragraph, subparagraph, clause or word herein for purposes of limitation.

AMERICAS 126502240

17.    Unless otherwise stated, each Request calls for production of documents from November 3, 2019 through the present.

## DOCUMENT REQUESTS

1.    All Board Materials for the Holdco Debtors.

2.    All Documents and Communications concerning the HoldCo Debtors' consideration of whether to seek chapter 11 protection.

3.    Documents sufficient to identify the names, titles, and positions of the HoldCo Debtors' current and former members, partners, managers, directors, officers, and executives, by entity.

4.    For each of the HoldCo Debtors, please produce the following Documents as of (a) the Petition Date and (b) the close of the last quarter before the Petition Date: (i) unconsolidated balance sheets; (ii) income statements; (iii) trial balances; (iv) accounts payable ledgers; (v) intercompany receivables; (vi) intercompany payables; (vii) tax returns or related tax statements and/or working papers; (viii) schedules of any known tangible and/or intangible assets; and (ix) schedules of any known tangible and/or intangible liabilities.

5.    Any contracts, leases, engagement letters, and agreements to which any of the HoldCo Debtors are a party, including any engagement letters with Alix Partners, Ducera, Wilkie, and Young Conaway.

6.    All Documents and Communications concerning any litigations, arbitrations, settlements, investigations, proceedings, or demands for payment, whether threatened, pending, or ongoing, in which any of the HoldCo Debtors is a party or identified as a potential party.

7.    Documents sufficient to show (i) all parties invited to participate in the Prepetition Marketing Process and (ii) all parties that executed non-disclosure agreements, as described in paragraphs 15-17 of the DIP Declaration.

13

8.      Any solicitations, informational materials, and due diligence materials exchanged with third-party financial institutions or the Prepetition ABL Lenders in connection with the Prepetition Marketing Process.

9.      All Documents and Communications concerning any financing proposals made by or to third-party financial institutions or the Prepetition ABL Lenders in connection with the Prepetition Marketing Process.

10.     All Documents and Communications between the Debtors and the Ad Hoc Group of First Lien Lenders concerning the negotiation of the terms of the DIP facility.

11.     All Documents and Communications concerning, analyzing or comparing any of the financing proposals received in the Prepetition Marketing Process, the DIP Facility, or the alternative restructuring proposal from certain Prepetition Second Lien Secured Lenders, as described in paragraph 20 of the DIP Declaration.

12.     All Documents and Communications supporting the Debtors' assertion in paragraph 4 of the DIP Motion that "the DIP Facility represents the best post-petition financing option available to the Debtors."

13.     All Documents and Communications supporting the Debtors' assertion in paragraph 5 of the DIP Motion that "entry into the DIP Facility and continued use of Cash Collateral, on the terms set forth in the Interim Order, are necessary to avoid immediate and irreparable harm and are in the best interests of the Debtors, their estates, and all stakeholders."

14.     All Documents and Communications supporting the Debtors' assertion in paragraph 37 of the DIP Motion that "[t]he terms of the DIP Facility are reasonable under the circumstances and are generally consistent with market terms for debtor-in possession financing."

15.    All Documents and Communications supporting the Debtors' assertion in paragraph 61 of the DIP Motion that "the interest, premiums, and fees to be paid under the DIP Facility are consistent with the market and are reasonable and appropriate."

16.    All Documents contained in the database maintained by Ducera regarding "DIP facilities of comparable size, duration, and general scale of cases comparable," as referenced in Mr. Grubb's testimony at the First-Day Hearing.

17.    All Documents and Communications concerning the demonstrative used during Mr. Grubb's testimony during the second day of the First-Day Hearing, including any drafts or prior iterations.

18.    For any witness who will offer testimony regarding whether the terms of the DIP Facility are generally consistent with market terms for debtor-in-possession financing: (i) a complete statement of all opinions the witness will express and the basis and reason for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

19.    All Documents and Communications concerning the preparation and negotiation of the Initial DIP Budget.

20.    All Documents used or relied upon to prepare the Initial DIP Budget.

21.    All Documents and Communication concerning the decision whether to make the HoldCo Debtors unsecured guarantors of the DIP Facility.

22.    All Documents concerning tax filings by the HoldCo Debtors, including tax returns.

23.    All Documents and Communications concerning any proceeds or other benefits of the DIP Facility that are purported to be provided to the HoldCo Debtors.

24.    All account statements for the JP Morgan Chase, N.A. disbursement account of Freedom VCM, Inc. referenced in Exhibit D to the Cash Management Motion, from the opening of the account to the present.

25.    All post-petition Documents and Communications with any vendor to whom the Debtors seek to make payment under the Critical Vendor Motion threatening to terminate service or shipment absent payment of pre-petition amounts outstanding.

26.    All Documents and Communications concerning any report, findings or conclusions in connection with any investigation, including the Independent Investigation, regarding the matters discussed in paragraphs 9 and 10 of the First-Day Declaration, including any report or other written material created by, for or at the direction of the Special Committee.

27.    All Documents and Communications between the Debtors, on the one hand, and Brian Kahn and his lawyers or representatives, on the other hand, concerning the matters discussed in paragraphs 9 and 10 of the First-Day Declaration.

28.    All Documents and Communications with any of the Debtors' insurance carriers regarding any potential claims in connection with the matters discussed in paragraphs 9 and 10 of the First-Day Declaration.

29.    Documents sufficient to identify any D&O coverage available to the Debtors and/or their directors, officers and employees, including the amounts remaining on such policies as of the Petition Date.

AMERICAS 126502240

30.     All Documents and Communications, including offering memoranda and solicitation or marketing materials, sent or provided to any potential lenders in connection with the Take-Private Transaction.

31.     Documents sufficient to identify any witnesses the Debtors intend to call in connection with any hearing regarding the Second Day Motions.

32.     All Documents the Debtors intend to rely on or introduce into evidence in connection with any hearing regarding the Second Day Motions.

AMERICAS 126502240

Dated:  November 8, 2024
     New York, New York

             */s/ Samuel P. Hershey*
             **FARNAN LLP**
             Brian E. Farnan (Bar No. 4089)
             Michael J. Farnan (Bar No. 5165)
             919 North Market Street, 12th Floor
             Wilmington, DE 19801
             Telephone: (302) 777-0300
             Facsimile: (302) 777-0301
             bfarnan@farnanlaw.com
             mfarnan@farnanlaw.com

             -and-

             **WHITE & CASE LLP**
             Thomas E Lauria (admitted *pro hac vice*)
             Southeast Financial Center
             200 South Biscayne Boulevard, Suite 4900
             Telephone: (305) 371-2700
             Facsimile: (305) 358-5744
             Email: tlauria@whitecase.com

             -and-

             J. Christopher Shore (admitted *pro hac vice*)
             Andrew T. Zatz (admitted *pro hac vice*)
             Samuel P. Hershey (admitted *pro hac vice*)
             Erin Smith (admitted *pro hac vice*)
             Brett Bakemeyer (admitted *pro hac vice*)
             1221 Avenue of the Americas
             New York, NY 10020
             Telephone: (212) 819-8200
             Facsimile: (212) 354-8113
             Email: cshore@whitecase.com
             azatz@whitecase.com
             sam.hershey@whitecase.com
             erin.smith@whitecase.com
             brett.bakemeyer@whitecase.com

             *Counsel to the Ad Hoc Group of Freedom*
             *Lenders*

AMERICAS 126502240