IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 154, 241, 242, 275, 309, 328, & 360** |

**JOINDER OF THE AD HOC GROUP OF FIRST LIEN LENDERS TO THE DEBTORS' REPLY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF ORDERS (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) SCHEDULING AN AUCTION AND A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (D) GRANTING RELATED RELIEF**

The Ad Hoc Group of First Lien Lenders (the "First Lien Group"), by and through its undersigned counsel, hereby files this joinder (this "Joinder") to the *Debtors' Reply in Support of*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

*Debtors' Motion for Entry of Orders (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief* [Docket No. 360] (the "Reply"),[2] and response to the Objections filed by (i) Front Street Kansas City, LLC [Docket No. 241], (ii) Buddy Mac Holdings, LLC [Docket No. 242], (iii) the Freedom Lender Group [Docket No. 275] (the "Freedom Lender Group Obj."), (iv) WPG Legacy, LLC [Docket No. 309], and (v) certain Landlords [Docket No. 328] (collectively, the "Objectors"), and respectfully states as follows:

## JOINDER

1.   The First Lien Group respectfully supports and joins in the Reply and incorporates the Reply as if fully set forth herein.

2.   The Sale Process and the Bidding Procedures, as originally proposed, were already designed to maximize value for the Debtors' estates and for ***all*** stakeholders by providing for a process that, subject to certain conditions, permitted the Debtors' Buddy's, PSP, and Vitamin Shoppe business lines to be sold on either an individual or aggregate basis.

3.   Notwithstanding this, the First Lien Group worked constructively with the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and other parties in interest, to modify the Sale Process with an eye towards even further maximizing the value attainable through a sale. The First Lien Group has made further material concessions to the Bidding Procedures, including: (i) extending the Sale timeline by one and a half weeks, which will provide bidders with additional time to submit their Bids for the Assets; and (ii) promoting Bids on individual business

---

[2]   Capitalized terms used in this Joinder and not defined herein shall have the meanings ascribed to such terms in the Motion or in the Reply, as applicable.

lines by modifying the definition of "Sufficient Bid" to provide a minimum price with respect to each business line (the "Minimum Bid Prices").  The Minimum Bid Prices provide bidders certainty that their bids can go to the Auction, regardless of the Bids on the Debtors' other business lines.  In the aggregate, the Minimum Bid Prices, as proposed, will be materially lower than the thresholds that would be required in order to pay in full all ABL Claims, First Lien Claims, and DIP Claims, though the Consenting First Lien Lenders reserve the right to credit bid for the Assets up to the full amount of their claims.  As a result of these modifications and others, the First Lien Group believes that the Bidding Procedures will even further facilitate a competitive Sale Process and Auction, and that the concerns raised by the Objectors are unwarranted.

4. We note that there is absolutely no justification or basis to grant certain Objectors' request that this Court force the First Lien Group to implement "reserve" prices that would cap the amount that the First Lien Group can credit bid – thus, depriving them of their legal entitlement to credit bid the full amount of their allowed secured claims.  Indeed, it has long been settled law that, absent a showing of cause, a secured creditor's right under section 363(k) of the Bankruptcy Code to credit bid its allowed claim is sacrosanct.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 644 (2012) (finding that under section 363(k) "creditor may credit-bid at the sale, up to the amount of its claim").

5. The Objectors have not shown that cause exists to curtail the First Lien Group's statutory right to credit bid.  Nor can they.  The Objectors have provided no evidence that the First Lien Group has acted in bad faith or engaged in inequitable conduct.  *See e.g.*, *In re: Aeropostale, Inc.*, 555 B.R. 369, 416 (Bankr. S.D.N.Y. 2016) (affirming secured creditor's right to credit bid where there was no evidence of inequitable conduct or inappropriate behavior by creditors, including no allegations of collusion, undisclosed agreements, or any other actions designed to

chill the bidding or unfairly distort the sale process). Additionally, the Objectors have provided no evidence that the First Lien Group's right to credit bid would result in a "freeze" of bidding or ***no*** bidding at all, and mere allegations that the allowance of credit bidding would have a "chilling" effect do not constitute cause. *Cf. In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55, 60 (Bankr. D. Del. 2014) (limiting secured creditor's credit bid where "express and unrebutted" evidence demonstrated that there would be "*no* bidding—not just the chilling of bidding" absent credit bidding limitation) (emphasis in original); *see also In re Thorpe*, 540 B.R. 552, 567-68 (E.D. Pa. 2015) (finding that a secured creditor's lawful behavior in connection with submission of credit bids to purchase real property that secured its claim was no basis for invalidating an auction sale, even assuming that a secured creditor's actions caused other bidders to draw inferences about any value of such property). Indeed, "[t]he ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price." *RadLAX*, 566 U.S. at 644 n.2. The Consenting First Lien Lenders and DIP Lenders, subject to the Debtors making the contemplated draws under the DIP Facility, stand to hold approximately $1.4 billion in secured claims against the Debtors and can and should be permitted to credit bid up to the full amount of their claims.

6. The Freedom Lender Group is wrong in arguing that the Bidding Procedures give the First Lien Group "excessive" influence over the Sale Process. (*See* Freedom Lender Group Obj. at ¶¶ 36-39.) The Debtors maintain broad fiduciary outs in all instances. (*See* Bidding Procedures at § XVII.) And, the Bidding Procedures provide that the Sale Process is spearheaded by the Debtors' investment banker, Ducera Partners LLC, along with the Debtors' other advisors (*id.* at § V), ***not*** the First Lien Group.

7. The Sale Process here is not being unfairly "truncated." (*See* Freedom Lender Group Obj. at ¶¶ 22, 23.) For years, the Debtors have effectively marketed the PSP business line

4

through their exploration of a possible securitization of the PSP business and potentially raising securitization debt, to no avail. During the months prior to the Petition Date, Jefferies LLC conducted a robust marketing process for the sale of Vitamin Shoppe on behalf of the Debtors, without success. And, the Debtors began marketing the Debtors' assets as soon as they filed the Motion on November 11, 2024. The sale of the Debtors' assets has been long awaited, and is long overdue. In any event, the Freedom Lender Group's concerns about timing have already been materially mitigated because, as discussed above, at the request of the Debtors and the Committee, the Sale timeline has been extended by one and a half weeks.

8. The Freedom Lender Group argues that the Debtors' available liquidity is reason alone to cause a longer Sale Process. But , that argument fails. Having money is not a reason to spend it. Simply because the First Lien Group has committed to funding the Chapter 11 Cases with sufficient cash, does not mean that it must risk degradation in value of the Assets resulting from an unnecessarily drawn-out process and increased administrative expenses. Nor, is there any requirement for the First Lien Group to extend the milestones it, the Debtors, and the Committee negotiated in the DIP Facility, all to appease two out-of-the-money-creditors.

9. To be clear, while the First Lien Group has adequately funded the Chapter 11 Cases, that funding is not infinite. Every day a business operates in bankruptcy is costly and risky, especially in a retail bankruptcy with three distinct operating businesses, approximately 220 locations, and over 12,000 employees. Neither the First Lien Group nor the Debtors can afford a longer Sale Process than is currently contemplated by the Bidding Procedures. (Motion at ¶ 12.) The Freedom Lender Group, for its part, seeks to delay the Sale Process—and thereby consummation of a potentially value-accretive Sale or reorganization—for no demonstrable

benefit, other than to continue its pattern and practice of causing as much disruption to the Chapter 11 Cases as possible.

11. 10. The Debtors have already dedicated considerable time and resources to aggressively marketing the Assets. The Freedom Lender Group's efforts to disrupt this process to exert leverage through destructive litigation tactics needs to come to an end. The Motion should be granted so that the Debtors can focus their attention on administering the value-driven and transparent process pursuant to the Bidding Procedures, and can engage in earnest with competitive market participants.

11. Nothing contained herein shall constitute a waiver of any rights or remedies of the First Lien Group, including, without limitation, the right to: (i) amend, modify, or supplement this Joinder; or (ii) raise any other additional arguments at a later date, including at the hearing.

## **CONCLUSION**

WHEREFORE the First Lien Group respectfully requests that this Court grant the Motion, overrule the Objections, and grant such other and further relief as the Court finds just and appropriate.

[*Remainder of Page Intentionally Left Blank*]

| | |
|---|---|
| Dated: December 6, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>**LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Elizabeth A. Rogers (No. 7335)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>Email: landis@lrclaw.com<br>       mcguire@lrclaw.com<br>       erogers@lrclaw.com<br><br>-and-<br><br>**PAUL HASTINGS LLP**<br><br>Jayme T. Goldstein (admitted *pro hac vice*)<br>Daniel A. Fliman (admitted *pro hac vice*)<br>Jeremy D. Evans (admitted *pro hac vice*)<br>Isaac S. Sasson (admitted *pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 318-6000<br>Facsimile: (212) 319-4090<br>Email: jaymegoldstein@paulhastings.com<br>       danfliman@paulhastings.com<br>       jeremyevans@paulhastings.com<br>       isaacsasson@paulhastings.com<br><br>Nicholas A. Bassett (admitted *pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Telephone: (202) 551-1700<br>Facsimile: (202) 551-1705<br>Email: nicholasbassett@paulhastings.com<br><br>*Counsel to the Ad Hoc Group of First Lien Lenders* |