# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>**January 15, 2025 at 10:00 a.m. (ET)**<br><br>**Objection Deadline:**<br>**December 27, 2024 at 4:00 p.m. (ET)** |

## DEBTORS' FOURTH OMNIBUS MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a), 365(a), AND 554 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO (I) REJECT CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS, EFFECTIVE AS OF THE REJECTION DATE; AND (II) ABANDON PERSONAL PROPERTY

> **ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND ITS REJECTED LEASE OR EXECUTORY CONTRACT IDENTIFIED ON SCHEDULE 1 OR SCHEDULE 2 TO THE PROPOSED ORDER.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby file this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing, but not directing, the Debtors to (i) reject those certain unexpired leases set forth on Schedule 1 to the Proposed Order (such leases, collectively, the "Rejected Leases") effective as of December 13, 2024 (the "Rejection Date"), (ii) reject those certain executory contracts set forth on Schedule 2 to the Proposed Order (such contracts, together, the "Rejected Executory Contracts", and together with the Rejected Leases, the "Rejected Agreements"), effective as of the Rejection Date, and (iii) abandon, effective as of the Rejection Date, any personal property of the Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "Personal Property") that remains, as of the Rejection Date, on any of the Rejected Premises (as defined below). In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory and legal predicates for the relief sought herein are sections 105(a), 365, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### I. General

4.  On November 3, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On November 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 188] (the "Committee").

6.  Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration").[2]

### II. The Rejected Leases and Rejected Executory Contracts

7.  The Debtors are a privately held operator and acquirer of franchised and franchisable businesses. The Debtors' business segments include a diverse collection of highly recognized, market-leading, and emerging retail brands, including American Freight ("American Freight"), a retail furniture chain selling quality furniture, mattresses, and home appliances. As of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

the Petition Date, the Debtors had approximately 2,200 total retail store locations (including both corporate-owned and franchised locations), 341 of which were operated by American Freight.

8. After careful review, the Debtors identified the Rejected Leases[3] as store spaces that the Debtors no longer occupy or use in the course of their businesses. The Debtors have determined that the Rejected Leases are no longer necessary to the Debtors' business affairs, are not otherwise beneficial to their estates, and present burdensome contingent liabilities.

9. The Debtors have also identified, after consulting their books and records, the Rejected Executory Contracts as non-essential or otherwise uneconomic. Each of the Rejected Executory Contracts would require the Debtors to incur costs on account of services which no longer provide commensurate benefits to the Debtors, leading the Debtors to conclude that the Rejected Executory Contracts are burdensome to their estates.

### III. Abandonment of Any Personal Property at the Rejected Premises

10. In connection with the Rejected Leases, it is possible that some personal property of the Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "Personal Property") will remain on the premises listed on Schedule 1 to the Proposed Order (the "Rejected Premises") as of the Rejection Date. Relative to its value, the Debtors expect that any remaining Personal Property will be difficult or expensive to remove and/or store, such that the economic benefits of removing and/or storing some or all of the Personal Property will be exceeded by the attendant costs thereof. Therefore, in connection with abandoning and

---

[3] The inclusion of any contract, lease, sublease, or other agreement on Schedule 1 or Schedule 2 to the Proposed Order is not intended as, nor shall be deemed to constitute, an admission by the Debtors or their estates that such contract, lease, or other agreement is or is not an executory contract or unexpired lease. The Debtors and their estates reserve any and all rights, claims, and defenses with respect to the characterization of the Rejected Agreements under section 365 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, including, without limitation, any and all rights to argue that the Rejected Agreements do not constitute executory contracts or unexpired leases.

surrendering the Rejected Premises as of the Rejection Date, the Debtors intend to abandon the Personal Property and request the Court's approval to do so effective as of the Rejection Date.

## RELIEF REQUESTED

11. By this Motion, to preserve and maximize the value of their estates, the Debtors, in an exercise of their business judgment, seek to reject: (i) the Rejected Leases, effective as of the Rejection Date; (ii) the Rejected Executory Contracts, effective as of the Rejection Date; and (iii) to abandon the Personal Property that remains, as of the Rejection Date, on the Rejected Premises.

## BASIS FOR RELIEF

**I.    Rejection of the Rejected Agreements as of the Rejection Date Reflects the Debtors' Sound Business Judgment.**

12. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). As courts have held, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993)).

13. The standard applied to determining whether the rejection of an unexpired lease should be authorized is the "business judgment" standard. See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp., 872 F.2d 36, 40 (3d Cir. 1989); In re HQ Global Holdings, Inc., 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"); see also In re Tayfur, 599 F. App'x 44, 49–50 (3d Cir.

2015) (extending the standard articulated in *Sharon Steel* to unexpired leases). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

14. The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp., 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor-in-possession's business judgment to reject a lease. See, e.g., NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984), superseded by statute on other grounds, Bankruptcy Amendments and Federal Judgeship Act of 1984, sec. 541, § 1113, Pub. L. No. 98-353, 98 Stat. 333 (codified at 11 U.S.C. § 1113); In re Minges, 602 F.2d 38, 43 (2d Cir. 1979); In re Riodizio, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); In re G Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

15. Upon finding that the Debtors have exercised their sound business judgment in determining that the rejection of the Rejected Agreements is in the best interests of the Debtors and their estates, the Court should approve the proposed rejection under section 365(a) of the Bankruptcy Code. See, e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract

"should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease. See, e.g., Sharon Steel Corp., 872 F.2d at 39-40. The Debtors have determined that the Rejected Agreements are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates, and may present burdensome contingent liabilities. Accordingly, the Debtors' decision to reject the Rejected Agreements is an exercise of sound business judgment, and therefore should be approved.

16. To avoid potentially paying any unnecessary expenses related to the Rejected Agreements, the Debtors seek to reject the Rejected Agreements effective as of the Rejection Date. Courts in this district have routinely authorized a debtor's rejection of unexpired leases and executory contracts as of the date of the filing of the applicable rejection motion. See In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004); see also In re Fleming Cos., Inc., 304 B.R. 85, 96 (Bankr. D. Del. 2003) (rejection permitted effective as of the date of the motion or the date the premises surrendered). Generally, courts have permitted retroactive rejection of an unexpired lease when the non-debtor party to the agreement was given definite notice of the intention to reject. See, e.g., In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 21, 2006). A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses. See NLRB v. Bildisco & Bildisco, 465 U.S. at 523 (stating that rejection relates back to the petition date); Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC), 297 B.R. 133, 140 (D. Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); Constant Ltd. P'ship v.

Jamesway Corp. (In re Jamesway Corp.), 179 B.R. 33, 37-38 (S.D.N.Y. 1995) (affirming bankruptcy court's retroactive approval of lease rejection).

17. The facts in these Chapter 11 Cases and the balance of the equities favor the Debtors' rejection of the Rejected Agreements, effective as of the Rejection Date. Without doing so, the Debtors may incur unnecessary administrative charges for agreements that are not necessary to their business affairs or chapter 11 efforts. The Debtors do not need the leasehold interests created by the Rejected Leases, nor do they need the Rejected Executory Contracts to conduct their go-forward businesses. To the contrary, the Rejected Leases are comprised of leases for closed stores and the Rejected Executory Contracts represent agreements that no longer serve the Debtors' estates, none of which generate any value or benefit for the Debtors. Indeed, requiring the Debtors to continue to perform under the Rejected Agreements after the Rejection Date could impose onerous obligations on the Debtors and their estates. Moreover, the Debtors do not derive any meaningful benefit under the Rejected Agreements. Without rejecting the Rejected Agreements, the Debtors may incur unnecessary administrative expenses and obligations that are not necessary to their ongoing business operations.

18. Moreover, the counterparties to the Rejected Agreements will not be unduly prejudiced if the Rejected Agreements are rejected effective as of the Rejection Date because, on the Rejection Date, the Debtors have served this Motion on the affected counterparties and/or their agents or representatives by overnight mail and/or electronic mail, as applicable, and have concurrently sent communications to such counterparties by electronic mail, thereby advising such counterparties that the Debtors intend to reject the Rejected Agreements effective as of the Rejection Date.

19. In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Agreements under section 365 of the Bankruptcy Code, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors. Accordingly, entry of the Proposed Order is appropriate.

## II. Authorizing the Debtors to Abandon Any Personal Property Remaining at the Rejected Premises as of the Petition Date Is Appropriate.

20. In the event that any Personal Property remains on the Rejected Premises as of the Rejection Date, the Debtors request authority to abandon that Personal Property (collectively, the "Abandoned Personal Property"), pursuant to section 554(a) of the Bankruptcy Code, effective as of the Rejection Date.

21. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare. See In re Midlantic Nat'l Bank, 474 U.S. 494, 501 (1986). Neither of these limitations is relevant in this case.

22. The Debtors submit that the Abandoned Personal Property is of inconsequential value and expensive or burdensome to the Debtors' estates to remove. Among other things, the Debtors believe that the cost of retrieving, storing, marketing, and reselling the Abandoned Personal Property—to the extent there is any—outweighs any recovery that the Debtors and their estates could reasonably hope to attain for such Abandoned Personal Property. Moreover, the Debtors have determined that the Abandoned Personal Property does not pose a threat to public

health or safety. As a result, the Debtors have determined, in their business judgment, that the abandonment of any such Abandoned Personal Property, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors.

## RESERVATION OF RIGHTS

23. Nothing in the Proposed Order or the Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

24. Nothing in the Proposed Order or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

25. Nothing in the Proposed Order or this Motion shall create, nor is intended to create any rights in favor of or enhance the status of any claim held by any party.

## NOTICE

26. Notice of this Motion has been or will be provided to: (i) the U.S. Trustee; (ii) proposed counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel to the HoldCo Lenders; (vii) counsel to DIP Agent; (viii) counsel to the DIP Lenders; and

(ix) the counterparties to the Rejected Agreements (by overnight mail and/or electronic mail).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: December 13, 2024
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Matthew A. Feldman (admitted *pro hac vice*)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*