## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>**January 15, 2025 at 10:00 a.m. (ET)** |
| | **Objection Deadline:**<br>**December 27, 2024 at 4:00 p.m. (ET)** |

### MOTION OF DEBTORS FOR ENTRY OF ORDER (A) APPROVING THE PRIVATE SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, WITH SUCH INTERESTS TO ATTACH TO THE PROCEEDS, AND (B) GRANTING RELATED RELIEF

> **PARTIES RECEIVING THIS MOTION SHOULD REVIEW THE COUNTERPARTY NAMES, LEASES, AND PROPOSED CURE AMOUNTS LISTED ON EXHIBIT 1 TO THE PROPOSED ORDER ATTACHED HERETO AS EXHIBIT A TO DETERMINE IF THIS MOTION AFFECTS THEIR LEASE OR THEIR RIGHTS THEREUNDER.**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (a) approving the private sale (the "Private Sale") of certain of American Freight's[2] assets (the "Purchased Assets"), including the Acquired Intellectual Property and Acquired Leases (each as defined herein) to be assumed and assigned as part of the Private Sale, free and clear of liens, claims, and encumbrances, with such interests to attach to the proceeds of the Private Sale, on the terms of the Proposed Order and that certain *Asset Purchase Agreement*, by and between Educate, Inc. and AF Newco I, LLC ("Purchaser"), dated as of December 13, 2024, a copy of which is attached as Exhibit 2 to the Proposed Order (the "Purchase Agreement") and (b) granting related relief.  In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of David Orlofsky in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") [Docket No. 15] and the declarations of Michael S. Piper (the "Piper Declaration") and David Orlofsky (the "Orlofsky Declaration").[3]  In further support of this Motion, the Debtors state as follows:

---

[2]  As used herein, "American Freight" shall mean Debtors Educate, Inc., Franchise Group Newco Intermediate AF, LLC and each of Franchise Group Newco Intermediate AF, LLC's subsidiaries.

[3]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Day Declaration, the Purchase Agreement, or the Store Closing Motion (defined below), as applicable.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases (the "Chapter 11 Cases"), the Debtors and their estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue of these Chapter 11 Cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested in this Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1.

## BACKGROUND

5.      On November 3, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the First Day Declaration.

6.      The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On November 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 188] (the "Committee").

## THE PURCHASE AGREEMENT

8.      As described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 14] (the "Store Closing Motion"), following a robust, but ultimately unsuccessful, prepetition marketing process, the Debtors made the difficult decision to close each of their retail store locations for their American Freight business and liquidate and wind down American Freight through these Chapter 11 Cases. With Court authority, the Debtors have commenced the Store Closing Sales to liquidate American Freight's existing inventory and FF&E.

9.      In parallel with the Store Closing Sales, and to ensure that the Debtors maximize the value of American Freight's assets for their stakeholders, the Debtors and their advisors have solicited interest from potential buyers and acquirors of American Freight's intangible assets that will not be liquidated through the Store Closing Sales. These assets include American Freight's intellectual property and interests in its unexpired real property leases (the "Leases").

10.     Following these efforts, American Freight and Purchaser entered into the Purchase Agreement, subject to this Court's approval, providing for Purchaser's purchase and acquisition of the Purchased Assets, which are composed of the Acquired Intellectual Property (as defined in the Purchase Agreement) and American Freight's interests in the Leases for thirty-one American Freight locations (the "Acquired Leases"). American Freight and Purchaser executed the Purchase Agreement on December 13, 2024, and Purchaser has paid a deposit into escrow. The Purchase Agreement is the product of arms' length, good faith negotiations between American Freight and Purchaser and represents a value-maximizing transaction for the Purchased Assets. Absent the Purchase Agreement, the Acquired Leases would have been rejected on December 31, 2024, leading to substantial potential rejection damage claims against American Freight, and the

4

Acquired Intellectual Property likely would have been abandoned or liquidated as part of the remnant assets of American Freight.

## NEED FOR A PRIVATE SALE PROCESS

11.     The Debtors believe that a private sale of the Purchased Assets to Purchaser pursuant to the terms and conditions of the Purchase Agreement is both appropriate and in the best interest of the Debtors, their estates, and their creditors.

12.     Importantly, the Purchased Assets have already been market tested and, to date, no party, other than the Purchaser, has submitted a formal proposal to purchase the Purchased Assets. As described in the Store Closing Motion, the Debtors and their advisors conducted a prepetition marketing process to sell American Freight's assets, including the Acquired Intellectual Property and Acquired Leases, as a going concern.  While this market outreach yielded several initial indications of interest, no actionable bids materialized.

13.     The Debtors also marketed the Purchased Assets on a postpetition basis. Specifically, the Debtors have engaged Hilco Real Estate, LLC as their real estate advisor in the Chapter 11 Cases to, among other things, solicit potential buyers for the Leases prior to the conclusion of the Store Closing Sales, at which time the Leases will be rejected.  To date, no party other than Purchaser has expressed any interest in the Acquired Leases.  Considering that the Store Closing Sales are expected to conclude prior to the end of this month, at which time the Acquired Leases would be rejected if not assumed and assigned to Purchaser, it is unlikely that the Debtors would receive any other offers, let alone any higher and better offers, for the Acquired Leases.

14.     The Debtors have received no postpetition interest in the Acquired Intellectual Property, either.  Considering that the value of the Acquired Intellectual Property hinges on the future operation of a business under the American Freight brand as a going concern, it is unlikely that the Debtors could sell the Acquired Intellectual Property through any transaction other than

the Private Sale.  This is evidenced by the prepetition marketing process, which did not yield any actionable going concern bid for the business.  Moreover, the Debtors have not received any going concern bid for the business following the Petition Date, other than the Purchase Agreement.  For these reasons, the Debtors have determined, in their business judgment, that the Private Sale reflects the most value maximizing transaction available for the Purchased Assets under the circumstances.

15.     In addition to the economic value provided by the Private Sale, considering the Purchaser's intent to operate the Purchased Assets as a going concern under the American Freight brand, the Private Sale is likely to result in a number of current employees receiving employment offers from the Purchaser.  The Debtors understand that Purchaser intends to make employment offers to certain American Freight employees to assist with the operation of the Purchased Assets under the American Freight banner.  The Private Sale will also preserve the American Freight brand, which has a long history as one of the leading retailers of furniture, mattresses, and appliances.

16.     Accordingly, given the extensive prepetition marketing process of the Purchased Assets, and to avoid incurring the unnecessary expenses of a longer marketing and sale process that is not likely to generate a higher and better offer for the Purchased Assets, the Debtors, in an exercise of their business judgment and subject to their fiduciary duties as debtors in possession, believe that a private sale process is appropriate under the circumstances.

**SUMMARY OF PROPOSED TERMS OF THE PURCHASE AGREEMENT**

17.     The Purchase Agreement contemplates that Purchaser will acquire the following Purchased Assets: the Acquired Intellectual Property; and the assumption and assignment of the Acquired Leases for the following thirty-one (31) locations:

| Store # | Location |
|---------|----------|
| 6 | Ocala, Florida |
| 40 | West Jacksonville, Florida |
| 19 | Fort Lauderdale, Florida |
| 13 | Tallahassee, Florida |
| 22 | North Orlando, Florida |
| 18 | South Orlando, Florida |
| 156 | East Jacksonville, Florida |
| 59 | Melbourne, Florida |
| 71 | Savannah, Georgia |
| 89 | Augusta, Georgia |
| 101 | Columbia, South Carolina |
| 25 | Fort Wayne, Indiana |
| 46 | Warren, Michigan |
| 31 | Livonia, Michigan |
| 11 | Buffalo, New York |
| 9 | Cincinnati, Ohio |
| 15 | North Columbus, Ohio |
| 8 | Massillon, Ohio |
| 23 | Pittsburgh, Pennsylvania |
| 100 | Norfolk, Virginia |
| 67 | Charleston, West Virginia |
| 29 | Morrow, Georgia |
| 42 | Marietta, Georgia |
| 87 | Champaign, Illinois |
| 7 | Louisville, Kentucky |
| 164 | Bowling Green, Kentucky |
| 247 | Elizabethtown, Kentucky |
| 251 | Springfield, Missouri |
| 28 | Chattanooga, Tennessee |
| 143 | Lubbock, Texas |
| N/A | Livonia, Michigan (Warehouse) |

18.    Pursuant to the terms and conditions of the Purchase Agreement, and subject to the Court's approval, the Debtors propose to sell the Purchased Assets to Purchaser free and clear of all liens, claims, encumbrances, and other interests.  The material terms and conditions of the Purchase Agreement are as follows:[4]

---

[4]    The following summary of the Purchase Agreement is qualified in its entirety by reference to the applicable provisions of the Purchase Agreement.

| Local Rule 6004-1 Disclosure | Terms of the Purchase Agreement |
|---|---|
| **Seller** | Educate, Inc. |
| **Purchaser** | AF Newco I, LLC |
| **Property Being Sold** | The Purchased Assets include the Acquired Intellectual Property and the Acquired Leases (including all security deposits thereunder). Purchaser shall assume all liabilities arising from and after the closing in connection Purchased Assets. |
| **Purchase Price** | The consideration to be paid for the Purchased Assets shall be $1,120,000 plus payment of Cure Costs in respect of the Acquired Leases. |
| **Sale to Insider** | The Purchaser is not an insider of the Debtors. |
| **Agreements with Management** | None |
| **Releases** | None |
| **Private Sale / No Competitive Bidding** | The Debtors are seeking approval of a private sale, without an auction process. |
| **Closing and Other Deadlines** | A date to be mutually agreed to by the Debtors and the Purchaser that is on or before January 28, 2025 (subject to Court Approval as soon as reasonably practicable under Fed. R. Bankr. P. 2002 and any applicable Local Bankruptcy Rules) |
| **Good Faith Deposit** | Upon execution of the Purchase Agreement, Purchaser paid to the Debtors deposit of $112,000 (the "Deposit"). The Deposit will be credited against the Purchase Price paid at the closing. |
| **Interim Arrangements with Proposed Purchaser** | None |
| **Use of Proceeds** | The Debtors will use the proceeds of the sale in accordance with their debtor-in-possession financing and final order approving debtor-in-possession financing [Docket No. 414]. |
| **Tax Exemption** | None |
| **Record Retention** | Until the later of the closing of the Chapter 11 Cases and the liquidation and winding up of the American Freight estates (but in no event later than six years after the closing date except, in the case of tax matters, until thirty days following the expiration of the period of any applicable statute of limitations). |
| **Sale of Avoidance Actions** | None |

| Local Rule 6004-1 Disclosure | Terms of the Purchase Agreement |
|---|---|
| **Requested Findings as to Successor Liability** | Customary findings that Purchaser is not a successor to or mere continuation of the Debtors and does not bear successor liability for any obligation of the Debtors other than an Assumed Liability. |
| **Sale Free and Clear of Unexpired Leases** | The Purchased Assets shall be transferred to the Purchaser free and clear of all liens, claims, encumbrances, and interests (other than any permitted exceptions under the Purchase Agreement), with all such liens, claims, encumbrances, and interests to attach to the proceeds of the sale in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto. |
| **Relief from Bankruptcy Rule 6004(h)** | The Proposed Order provides for a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h). |

## BASIS FOR RELIEF

**I.      The Debtors Have Demonstrated a Sound Business Justification for the Private Sale.**

19.      The Debtors submit that ample authority exists for approval of the Private Sale contemplated by this Motion.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing In re Schipper, 933 F.2d 513 (7th Cir. 1991)); In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); Stephen Indus., Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986); Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983).

20.      Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale;

(b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  See In re Decora Indus., Inc., No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991)).  Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).

21.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders.  See, e.g., In re Abbotts Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d at 1063; In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997) (recognizing the paramount goal of any proposed sale of property of estate is to maximize value).

22.    A strong business justification exists for the Private Sale of the Purchased Assets. Outside of the Private Sale, the Debtors face the realistic prospect of realizing no value at all for the Purchased Assets.  The Private Sale will also save the American Freight brand and potentially jobs, and will also avoid a significant amount of rejection damages claims that would otherwise arise in the event that the Acquired Leases are rejected upon the conclusion of the Store Closing Sales.  Accordingly, the Debtors have determined that entry into the Purchase Agreement is in the best interests of their estates and creditors.

23.    The Debtors have also determined that the Purchase Price is the highest and best price that could be achieved for the Purchased Assets under the circumstances.  The Purchase

10

Agreement was negotiated at arm's length and reflects customary, reasonable market terms.

## II.    Selling the Purchased Assets by Private Sale Is Appropriate.

24.    Pursuant to Bankruptcy Rule 6004(f)(1), sales of property may be by private sale or public auction.  See, e.g., In re 160 Royal Palm, LLC, 600 B.R. 119, 127–28 (S.D. Fla., 2019) ("private sales are not unheard of in bankruptcy and in fact are expressly contemplated by the rules.  See Fed. R. Bankr. P. 6004(f)(1)."); see also Bankruptcy Rule 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction.").

25.    A private sale of the Purchased Assets under the terms and conditions of the Purchase Agreement—as opposed to a lengthy auction process—will allow the Debtors to avoid incurring operating and lease expenses associated with the Stores, thereby preserving value for the Debtors' estates and stakeholders.

26.    To date, no party other than Purchaser has submitted any formal offers to acquire the Purchased Assets.  Considering that the Store Closing Sales are expected to conclude prior to the end of this month, it is unlikely that the Debtors would receive any other offers, let alone any higher and better offers, for the Acquired Leases, which would otherwise be rejected upon the conclusion of the sales.  Moreover, considering that the value of the Acquired Intellectual Property hinges on the continuation of the American Freight business at a going concern, it is unlikely that the Debtors could sell the Acquired Intellectual Property through any transaction other than the Private Sale.  Despite a robust prepetition marketing process and subsequent postpetition marketing efforts, the Debtors did not receive any actionable going concern bids for the American Freight business.  Thus, the Debtors' advisors do not believe that there is a sufficient likelihood of attracting other bids, such that incurring the additional expenses of a more expansive sale process would be justified.

### III.   The Purchased Assets Should Be Sold Free and Clear of Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

27.    The Debtors submit that the Purchased Assets should be sold free and clear of any and all liens, claims, interests and other encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests and encumbrances attaching to the proceeds of the applicable sale.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if any one of the following conditions is satisfied:

     a.    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

     b.    such entity consents;

     c.    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

     d.    such interest is in bona fide dispute; or

     e.    such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); see also In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

28.    Section 363(f) of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry

out the provisions of [the Bankruptcy Code].").  The sale of the Purchased Assets free and clear of all liens, claims, interests and encumbrances will satisfy one or more of the requirements under section 363(f) of the Bankruptcy Code.  Moreover, the Debtors will send notice of the Private Sale to purported lienholders.  If such lienholders do not object to the proposed private sale, then their consent should be presumed.  Accordingly, the Debtors request that, unless a party asserting a prepetition lien, claim, or encumbrance on any of the Purchased Assets timely objects to this Motion, such party shall be deemed to have consented to the sale of the Purchased Assets.  See Hargave v. Twp. of Pemberton, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to a sale motion, a creditor is deemed to consent to the relief requested therein).  Accordingly, the Debtors request that the Court authorize the sale of the Purchased Assets free and clear of any liens, claims, interests and encumbrances, in accordance with section 363(f) of the Bankruptcy Code, subject to such liens, claims, interests and encumbrances attaching to the proceed thereof in the same order of relative priority, with the same validity, force and effect as prior to such.

## IV.    Purchaser Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.

29.    Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) of the Bankruptcy Code states the following:

> The reversal or modification on appeal of an authorization under [section 363(b) of the Bankruptcy Code] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) of the Bankruptcy Code fosters the "policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to

those orders and judgments upon which third parties rely." In re Abbotts Dairies, 788 F.2d at 147;

see also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . .

provides that good faith transfers of property will not be affected by the reversal or modification

on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal.").

30.     While the Bankruptcy Code does not define "good faith," the Third Circuit has held

that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" In re Abbotts

Dairies, 788 F.2d at 147 (to constitute lack of good faith, a party's conduct in connection with the

sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee,

or an attempt to take grossly unfair advantage of other bidders); see also In re Bedford Springs

Hotel, Inc., 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); In re Perona Bros., Inc., 186 B.R. 833, 839

(D.N.J. 1995).  Due to the absence of a bright-line test for good faith, the determination is based

on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the

sale proceedings." In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re

Rock Indus. Mach. Corp., 572 F.2d 1195, 1998 (7th Cir. 1978)).

31.     In other words, a party would have to show fraud or collusion between prospective

bidders, or between the Debtors and prospective bidders, to demonstrate a lack of good faith.  See

Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d

269, 276 (2d Cir. 1997) ("[t]ypically, the misconduct that would destroy a [buyer]'s good faith

status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the

trustee, or an attempt to take grossly unfair advantage of other bidders").  Neither is present here.

32.     The Debtors submit that Purchaser is a "good faith purchaser" within the meaning

of section 363(m) of the Bankruptcy Code.  The Debtors and Purchaser, and their respective

advisors, have entered into the Purchase Agreement without collusion, in good faith, and after

extensive arm's-length negotiations.  There is no evidence of fraud or collusion in the terms of the Purchase Agreement and the Debtors do not expect any as it relates to the Purchase Agreement. To the best of the Debtors' knowledge, information and belief, no party has engaged in any conduct that would cause or permit Purchaser to be set aside under section 363(m) of the Bankruptcy Code.

33.     Accordingly, the Debtors seek a finding in the Proposed Order that Purchaser is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

**V.      Purchaser Should Be Entitled to the Protections of Section 363(n) of the Bankruptcy Code.**

34.     The Debtors submit that the terms and conditions of the Private Sale have been extensively negotiated by the Debtors and Purchaser, as applicable, at arm's length and in good faith, with the assistance of their respective professional advisors, and that the parties did not engage in any conduct that would cause or permit the Private Sale to be avoided under section 363(n) of the Bankruptcy Code.

35.     Based on the foregoing, the Debtors submit that they have demonstrated that the Private Sale is a sound exercise of their business judgment and should be approved as a good faith transaction.

**VI.     Assumption and Assignment of the Leases Should Be Authorized.**

36.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease.  See, e.g., In re Market Square Inn, Inc., 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court"); In re HQ

Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that a debtor's decision to assume or reject executory contract is governed by business judgment standard and may only be overturned if decision is product of bad faith, whim, or caprice).  The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of a lease benefits the estate.  See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 40 (3d Cir. 1989).

37.    Any assumption of the Acquired Leases is an exercise of the Debtors' sound business judgment because the transfer of such Acquired Leases is necessary to the Debtors' ability to obtain the best value for the Acquired Leases and the other Purchased Assets.  Moreover, given that consummation of the Private Sale is critical to the Debtors' efforts to maximize value for their estates and stakeholders, the Debtors' assumption and assignment of the Acquired Leases Lease is an exercise of sound business judgment and, therefore, should be approved.

38.    The consummation of any private sale involving the assignment of the Acquired Leases will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code.  Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Acquired Leases to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured.

39.    The Debtors' assumption and assignment of the Acquired Leases will be contingent upon payment of the cure amounts and effective only upon the closing of the private sale or any later applicable date of assumption and assignment of such Acquired Leases.  Each counterparty to the Acquired Leases that the Debtors seek to assume and assign to Purchaser will be served with this Motion, including **Exhibit 2** attached to the Proposed Order, which identifies the Acquired Leases that the Debtors seek to assume and assign to Purchaser as well as the proposed cure amount

(the "Cure Amounts") necessary to cure defaults thereunder as required by section 365 of the Bankruptcy Code.  Under the Purchase Agreement, Purchaser is responsible for paying all Cure Amounts with respect to the Acquired Leases.

40.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  In re Fleming Cos., 499 F.3d 300, 307 (3d Cir. 2007); see also Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) (finding that, "[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance").  Among other things, adequate assurance may be provided by evidencing the assignee's financial health and experience in managing the type of enterprise or property assigned.  See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when the prospective assignee of a lease has financial resources and has expressed willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

41.     The Debtors believe that Purchaser is able to demonstrate adequate assurance of future performance to the counterparties of the Acquired Leases.  In the event that such counterparties object on adequate assurance of future performance grounds and such objections cannot be resolved before the hearing on this Motion the Debtors will present facts at the hearing

to show the financial wherewithal, willingness, and ability of Purchaser to perform under the Acquired Leases.

## **WAIVER OF BANKRUPTCY RULES 6004(A), 6004(H), AND 6006(D)**

42.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

43.     The Debtors believe that the Private Sale should be consummated as soon as practicable to preserve and maximize value.  Accordingly, the Debtors request that the Proposed Order approving the sale of the Purchased Assets and the assumption and assignment of the Leases be effective immediately upon entry of such order and that the fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

## **NOTICE**

44.     Notice of this Motion will be provided to: Notice of this Motion has been or will be provided to:  (i) the U.S. Trustee; (ii) proposed counsel to the Committee; (iii)  counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Ad Hoc Group of Freedom Lenders; (vi) counsel to the DIP Agent; (vii) counsel to the DIP Lenders; (viii) all parties known by the Debtors to assert a lien or encumbrance on any of the Purchased Assets; (ix) all persons known or reasonably believed to have asserted an interest in or claim to any of the Purchased Assets; (x) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Purchased Assets within the one (1) year prior to the Petition Date; (xi) counterparties to the Leases; and (xii) all parties entitled to notice pursuant to

Bankruptcy Rule 2002-1.  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice of this Motion is required.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, and grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: December 13, 2024
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Allison S. Mielke*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (*pro hac vice* pending)
Matthew A. Feldman (*pro hac vice* pending)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*