# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>**January 15, 2025 at 10:00 a.m. (ET)**<br><br>**Objection Deadline:**<br>**December 30, 2024 at 4:00 p.m. (ET)** |

### DEBTORS' FIFTH OMNIBUS MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a) AND 365(a) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS, EFFECTIVE AS OF THE REJECTION DATE

> **ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND ITS REJECTED EXECUTORY CONTRACT IDENTIFIED ON <u>SCHEDULE 1</u> TO THE PROPOSED ORDER.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby file this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing, but not directing, the Debtors to reject, as of December 16, 2024 (the "Rejection Date"), those certain executory contracts, set forth on Schedule 1 to the Proposed Order (the "Rejected Executory Contracts").[2]  In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and legal predicates for the relief sought herein are sections 105(a) and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2]  The inclusion of any contract or other agreement on Schedule 1 to the Proposed Order is not intended as, nor shall be deemed to constitute, an admission by the Debtors or their estates that such contract, or other agreement is or is not an executory contract.  The Debtors and their estates reserve any and all rights, claims, and defenses with respect to the characterization of the Rejected Executory Contracts under section 365 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, including, without limitation, any and all rights to argue that the Rejected Executory Contracts do not constitute executory contracts.

## BACKGROUND

**I.    General**

4.    On November 3, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    On November 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 188] (the "Committee").

6.    Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration").[3]

**II.    The Rejected Executory Contracts**

7.    The Debtors are a privately held operator and acquirer of franchised and franchisable businesses. The Debtors' business segments include a diverse collection of highly recognized, market-leading, and emerging retail brands, including the Vitamin Shoppe brand, a specialty retailer and wellness lifestyle company offering an assortment of nutritional solutions, including vitamins, minerals, specialty supplements, herbs, sports nutrition, homeopathic remedies, green living products, and natural beauty aids. As of the Petition Date, the Vitamin Shoppe was a party to certain franchise and development agreements with various franchisees.

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

8. After careful review, the Debtors identified, after consulting their books and records, that certain executory contracts—specifically, certain franchise and development agreements for the Debtors' Vitamin Shoppe business—are non-essential or otherwise uneconomic to the Debtors' operations. Each of such Rejected Executory Contracts would require the Debtors to incur costs or honor obligations on account of the Rejected Executory Contracts, which do not provide commensurate benefits to the Debtors, or are not otherwise beneficial to the Debtors' estates, leading the Debtors to conclude that the Rejected Executory Contracts are burdensome to their estates.

## **RELIEF REQUESTED**

9. By this Motion, to preserve and maximize the value of their estates, the Debtors, in an exercise of their business judgment, seek to reject the Rejected Executory Contracts, effective as of the Rejection Date.

## **BASIS FOR RELIEF**

**I. Rejection of the Rejected Executory Contracts as of the Rejection Date Reflects the Debtors' Sound Business Judgment.**

10. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). As courts have held, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993)).

11. The standard applied to determining whether the rejection of an unexpired lease or executory contract should be authorized is the "business judgment" standard. See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp., 872 F.2d 36, 40 (3d Cir. 1989); In re HQ Global Holdings, Inc., 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

12. The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp., 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor-in-possession's business judgment to reject a lease or an executory contract. See, e.g., NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984), superseded by statute on other grounds, Bankruptcy Amendments and Federal Judgeship Act of 1984, sec. 541, § 1113, Pub. L. No. 98-353, 98 Stat. 333 (codified at 11 U.S.C. § 1113); In re Minges, 602 F.2d 38, 43 (2d Cir. 1979); In re Riodizio, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); In re G Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

5

13. Upon finding that the Debtors have exercised their sound business judgment in determining that the rejection of the Rejected Executory Contracts is in the best interests of the Debtors and their estates, the Court should approve the proposed rejection under section 365(a) of the Bankruptcy Code. See, e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. See, e.g., Sharon Steel Corp., 872 F.2d at 39–40. The Debtors have determined that the Rejected Executory Contracts are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates, and may present burdensome contingent liabilities. Accordingly, the Debtors' decision to reject the Rejected Executory Contracts is an exercise of sound business judgment, and therefore should be approved.

14. To avoid potentially paying any unnecessary expenses related to the Rejected Executory Contracts, the Debtors seek to reject the Rejected Executory Contracts effective as of the Rejection Date. Courts in this district have routinely authorized a debtor's executory contracts as of the date of the filing of the applicable rejection motion. See In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004); see also In re Fleming Cos., Inc., 304 B.R. 85, 96 (Bankr. D. Del. 2003) (rejection permitted effective as of the date of the motion or the date the premises surrendered). A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses. See NLRB v. Bildisco & Bildisco, 465 U.S. at 523 (stating that rejection relates back to the petition date); Stonebriar Mall

Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC), 297 B.R. 133, 140 (D. Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject").

15. The facts in these Chapter 11 Cases and the balance of the equities favor the Debtors' rejection of the Rejected Executory Contracts, effective as of the Rejection Date. Without doing so, the Debtors may incur unnecessary administrative charges for agreements that are not necessary to their business affairs or chapter 11 efforts. The Debtors have conducted an analysis of their franchise programs and determined the franchise program associated with the Debtors' Vitamin Shoppe business has never been a profitable business endeavor and has required the Debtors to allocate substantial resources to implement and service such program, thereby draining the Debtors' resources without any commensurate benefit. The Debtors' rejection of the Rejected Executory Contracts will relieve the Debtors of such burdens and will allow the Debtors to focus their resources on supporting the core programs and business segments comprising their go-forward businesses to maximize value for the Debtors' stakeholders. Requiring the Debtors to continue to perform under the Rejected Executory Contracts after the Rejection Date could impose onerous obligations on the Debtors and their estates. Moreover, the Debtors do not derive any meaningful benefit under the Rejected Executory Contracts.

16. The counterparties to the Rejected Executory Contracts will not be unduly prejudiced if the Rejected Executory Contracts are rejected effective as of the Rejection Date because, on or before the Rejection Date, the Debtors (i) informed the affected counterparties of the Debtors' intention to reject the Rejected Executory Contracts; (ii) served this Motion on the affected counterparties and/or their agents or representatives by overnight mail and/or electronic mail, as applicable; and (iii) have concurrently sent communications to such counterparties by

electronic mail, thereby advising such counterparties that the Debtors intend to (a) reject the Rejected Executory Contracts, effective as of the Rejection Date, and (b) terminate the use of the Debtors' intellectual property on a go-forward basis, to the extent applicable, as indicated in the communications with such counterparties.

17. In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Executory Contracts under section 365 of the Bankruptcy Code, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors. Accordingly, entry of the Proposed Order is appropriate.

## **RESERVATION OF RIGHTS**

18. Nothing in the Proposed Order or the Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

19. Nothing in the Proposed Order or this Motion shall be construed to (i) create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of the Petition Date or (ii) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

20. Nothing in the Proposed Order or this Motion shall create, nor is intended to create any rights in favor of or enhance the status of any claim held by any party.

## **NOTICE**

21. Notice of this Motion has been or will be provided to: (i) the U.S. Trustee; (ii) proposed counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel to the HoldCo Lenders; (vii) counsel to DIP Agent; (viii) counsel to the DIP Lenders; and (ix) the counterparties to the Rejected Executory Contracts (by overnight mail and/or electronic mail). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: December 16, 2024
     Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Allison S. Mielke*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Matthew A. Feldman (admitted *pro hac vice*)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*