## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC., *et al.*[1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: January 15, 2025 at 10:00 a.m.** |
| | ) | **Obj. Deadline: January 3, 2025 at 4:00 p.m.** |

### LIMITED OBJECTION OF THE U.S. SECURITIES AND EXCHANGE COMMISSION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT

The U.S. Securities and Exchange Commission ("**SEC**") objects to the approval of the

Disclosure Statement for the Joint Plan of Franchise Group, Inc. and its Affiliated Debtors (the

"**Disclosure Statement**") [Docket Nos. 151, 152] because the Plan impermissibly releases and

enjoins claims by former public shareholders against numerous non-debtor persons and entities.

The release and injunction provisions cannot be approved by the Court for two reasons: (1) a

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

former shareholder's failure to return a form to opt out of a release is insufficient evidence of consent to the release, which consent is now required in light of *Harrington v. Purdue Pharma L.P.*; and (2) the Court lacks Constitutional authority to enter a final order confirming the Plan because the release and enjoining of state law and other non-bankruptcy claims is not integral to the Debtors' restructuring. Accordingly, approval of the Disclosure Statement should be denied unless the third-party release is appropriately revised.

## **BACKGROUND**

1.      The SEC is the federal agency responsible for regulating the U.S. securities markets, protecting investors, and enforcing the federal securities laws. The SEC has standing to appear and be heard in this matter pursuant to Section 1109(a) of the Bankruptcy Code. 11 U.S.C. § 1109(a).

2.      Debtor Financial Group, Inc. ("**Franchise Group**") was a publicly-traded company until August 2023 when it was purchased in a take-private transaction. *See Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**Orlofsky Decl.**") [Docket No. 15], ¶¶ 5-7.

3.      In November 2023, Franchise Group was "suddenly rocked" by allegations that its then-Executive Officer, Brian Kahn, may have been the unnamed associate of the named defendant in a securities fraud complaint filed by the SEC and in an indictment from the U.S. Attorney's Office for the District of New Jersey. Orlofsky Decl., ¶ 9.

4.      On November 3, 2024, Franchise Group and each of its Debtor Affiliates (collectively, the "**Debtors**") filed voluntary petitions under chapter 11 of the Bankruptcy Code.

5.      On November 11, 2024, the Debtors filed their Joint Chapter 11 Plan (the "**Plan**") and Disclosure Statement. [Docket Nos. 150, 151.]

6.      Under the Plan, most classes, including Class 9 Subordinated Claims, are impaired and allowed to vote.  Holders of Section 510(b) Claims are members of Class 9. [*See* Docket No. 150, at p. 20 (defining "Subordinated Claim" as "any prepetition Claim that is subject to subordination pursuant to sections 510(b)–(c) of the Bankruptcy Code or otherwise").] The Plan provides that Section 510(b) claimants will receive nothing under the Plan unless a sale occurs and the sale proceeds are sufficient to satisfy higher priority claims, which appears highly unlikely. [*Id.* at pp. 20, 41.]

7.      The motion seeking approval of the Disclosure Statement and the solicitation procedures provides that Solicitation Packages will be mailed to those "record Holders of Claims and Interests in the Voting Classes."  [Docket No. 152, at p. 20.]  However, the identity of public shareholders who hold their shares in street name is generally non-public and, in many cases, inaccessible to the issuer.[2]  The Debtors do not explain how they plan to contact former Franchise Group shareholders who may be members of Class 9.

8.      Even though former shareholders will receive nothing under the Plan and Debtors have not demonstrated that they will receive notice, they are being required to return an opt-out form—which they may never receive—to avoid releasing a wide range of claims against the Released Parties.  [Docket No. 150 at pp. 18, 73-75.]  Only shareholder claims for actual fraud, willful misconduct, and gross negligence are excluded from the release. *Id.*  In these circumstances, the third-party release is not consensual as to Class 9.

---

[2] Former shareholders Brian Gale, Mark Noble, Terry Philippas, and Lawrence Bass filed an action pending in Delaware Chancery Court captioned *Gale et al. v. Vintage Capital Management, LLC et al.*, Case No. 2024-0726-LWW (Del. Ch. 2024) against several co-defendants, including Andrew M. Laurence, who is the President, Chief Executive Officer, and/or a Director of certain of the Debtors.  The gravamen of the Delaware action is that the defendants breached their fiduciary duty, or aided and abetted such breaches, in connection with the August 2023 management led take-private transaction involving the Franchise Group.

**DISCUSSION**

**A.     The Plan's Third-Party Releases Are Impermissible Because They Are Nonconsensual**

9.      If a disclosure statement describes a plan that cannot be confirmed, the court may refuse to approve it. *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999); *In re Allied Gaming Mgmt., Inc.*, 209 B.R. 201, 202 (Bankr. W.D. La. 1997). Here, the Debtors seek to solicit a Plan that contains non-consensual third-party releases that render it unconfirmable.

10.     The United States Supreme Court, in *Harrington v. Purdue Pharma L.P.*, 219 L. Ed. 2d 721 (2024), has altered the legal landscape in the area of third-party releases. In *Purdue*, the Court identified the question as "whether a court in bankruptcy may effectively extend to nondebtors the benefits of a Chapter 11 discharge usually reserved for debtors." *Id.* at 732 (emphasis in original). The Court answered in the negative.

11.     Nothing in the Bankruptcy Code "authorize[s] a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of the affected claimants." *Id.* at 739-40; *see also In re Smallhold, Inc.*, No. 24-10267, 2024 Bankr. LEXIS 2332, *25 (Bankr. D. Del. Sept. 25, 2024) (Goldblatt, J.) (explaining that under *Purdue* "creditors must affirmatively express consent to the release in order to be bound by it.").

12.     After *Purdue*, the only basis for approving a nondebtor release that remains is an adequate showing by the plan proponent that the release is consensual. The *Purdue* court did not express a specific view about what qualifies as a "consensual" release. *Purdue*, 219 L. Ed. 2d at 739-40. But the Court did cite to *In re Specialty Equipment Cos.*, 3 F.3d 1043 (7th Cir. 1993). *See* 219 L. Ed. 2d at 739. In *Specialty Equipment*, the Court found that the release was

4

consensual because "[i]t binds only those creditors voting in favor of the plan of reorganization." 3 F.3d at 1047.  Thus, "consent" required an affirmative act, *e.g.*, voting to accept the plan, and the *Specialty Equipment* court noted that "a creditor who votes to reject the Plan or abstains from voting may still pursue any claims against third-party nondebtors." *Id.*

13.    Since no provision of the Bankruptcy Code authorizes third-party releases, "any such consensual agreement would be governed instead by state law."  *In re Tonawanda Coke Corp.*, No. 18-12156, 2024 Bankr. LEXIS 2032, *4-6 (Bankr. W.D.N.Y. Aug. 27, 2024) (finding that "a failure to opt out will not suffice to bind a creditor").  To infer consent from the nonresponsive creditors and equity holders, the Debtors must "show under basic contract principles that the Court may construe silence as acceptance because (1) the creditors and equity holders accepted a benefit knowing that the Debtors, as offerors, expected compensation; (2) the Debtors gave the creditors and equity holders reason to understand that assent may be manifested by silence or inaction, and the creditors and equity holders remained silent and inactive intending to accept the offer; or (3) acceptance by the creditors and equity holders can be presumed due to previous dealings between the parties."  *In re Emerge Energy Servs. LP*, No. 19-11563, 2019 Bankr. LEXIS 3717, *53-54 (Bankr. D. Del. Dec. 5, 2019) (Owens, J.) (citations omitted).  The Debtors have made no such showing here.

**B.    The Court Lacks Constitutional Authority to Enter a Final Order Confirming a Plan That Releases and Enjoins Shareholder Claims**

14.    If the Court concludes that failure to opt out qualifies as consent, the Court nevertheless lacks constitutional authority to confirm a Plan that releases and enjoins nondebtor claims.  The Court must determine whether the released and enjoined claims fall within the Court's "core" or "non-core" jurisdiction for purposes of 28 U.S.C. §157.  *Patterson v. Mahwah Bergen Retail Group, Inc.*, 636 B.R. 641, 668 (E.D. Va. 2022).  The Plan's contemplated release

includes numerous claims of former shareholders that might exist under state law.  As such, permanently enjoining these non-bankruptcy claims between nondebtors is a non-core proceeding.  *In re Combustion Eng'g*, 391 F.3d 190, 225-26 (3rd Cir. 2004) (defining "core" proceedings as "proceedings arising under title 11, and proceedings arising in a case under title 11").  In this Circuit, a bankruptcy court lacks constitutional authority to enter a final order releasing and enjoining state law (non-core) claims under a plan, unless the debtor shows that the release is integral to the restructuring.  *See In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 135-37 (3rd Cir. 2019).

15.     In this case, the shareholder release includes state law and other non-bankruptcy claims.  Accordingly, under *Millennium Lab*, the Court lacks constitutional authority to release and enjoin these shareholder claims under the Plan unless the Court finds that doing so is integral to the Debtors' restructuring.  The shareholder releases in this case are not integral to the Debtors' restructuring as evidenced by the fact that shareholders are permitted to opt out of the release and confirmation of the Plan does not turn on how many opt-out forms are returned.

## <u>RESERVATION OF RIGHTS</u>

The SEC reserves all rights to object to confirmation of the Plan, including on grounds not raised in this objection, and to supplement this objection prior to the final hearing on the approval of the Disclosure Statement.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for the foregoing reasons, the SEC respectfully requests that the Court deny approval of the Disclosure Statement unless adequate revisions are made to the third-party releases to exclude holders of Section 510(b) Claims and grant such other and further relief that is just and proper.


Dated: December 20, 2024
Atlanta, Georgia

Respectfully submitted,

U.S. SECURITIES AND EXCHANGE
COMMISSION

By:  */s/ William M. Uptegrove*
William M. Uptegrove
Senior Trial Counsel
NY Bar No. 4846622; NJ Bar No. 031602003
950 East Paces Ferry Rd., N.E., Suite 900
Atlanta, GA 30326
Email: uptegrovew@sec.gov
Tel.: (404) 842-5765

## <u>CERTIFICATE OF SERVICE</u>

I certify that I caused a copy of the foregoing Objection to be served upon counsel or parties of record by the Court's CM/ECF system on December 20, 2024.

By: <u>*/s/ William M. Uptegrove*</u>
William M. Uptegrove