## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC., *et al.*[1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Related to Docket No. 435 |

**OBJECTION OF 6001 POWERLINE ROAD, LLC TO MOTION OF DEBTORS FOR ENTRY OF ORDER (A) APPROVING THE PRIVATE SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, WITH SUCH INTERESTS TO ATTACH TO THE PROCEEDS, AND (B) GRANTING RELATED RELIEF**

6001 Powerline Road, LLC ("*6001*" or "*Landlord*") files this Objection to the *Motion of Debtors for Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief* [Docket No 435] (the "*Sale Motion*") filed by the above-captioned Debtors relating to the lease of non-residential real property located at 6001 Powerline Road, Fort

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015

Lauderdale, Florida 33309 (the "*Property*"), between 6001 and, <u>allegedly</u>, American Freight, LLC, one of the Debtors herein ("*AFL*"). In support of this Objection, 6001 hereby states as follows:

1.      6001 is the owner of the Property.

2.      On February 1, 2014, Marble of the World, Inc., 6001's predecessor, entered into a Standard Sub-Lease Agreement  (the "*Lease*") with American Freight of South Florida, LLC ("*AFSF*" or "*Tenant*"), a non-debtor entity. A copy of the Lease is attached hereto as <u>Exhibit A</u>. Marble of the World, Inc. subsequently assigned the Lease to Urso Family Realty, Inc, on September 6, 2019. Urso Family Realty Inc. subsequently sold the Lease to 6001 in or about April, 2021.[2]

3.      Article VI, Paragraph T of the Lease states that:

Tenant shall not assign, mortgage or encumber this Lease nor sublet or suffer or permit the Premises or any part thereof to be used by others with the prior written consent of Landlord, which consent may be withheld at Landlord's reasonable discretion, in each instance. If Tenant is a corporation, any transfer, sale or other disposition of the controlling stock of the Tenants shall be deemed an assignment of this Lease . . . . If this Lease is assigned or if the Premises or any part thereof is sublet or occupied by anyone other than Tenant whether with or without the written consent of Landlord, Landlord may collect Rent from the assignee, sub-tenant or occupant and apply the net amount collected to the Rents herein reserved, but no assignment, subletting, occupancy or collection shall be deemed a waiver of any covenants or be deemed an acceptance of the assignee, sub-tenant or occupant, or a release of Tenant from any liability hereunder. . . .

4.      Allegedly, at some point after April 8, 2021,[3] AFSF assigned its interest in the Lease to AFL. 6001 is unaware of when (or if) that assignment occurred, as neither AFL nor AFSF requested 6001's written consent per the terms of the Lease, nor did 6001 give its consent at any time, written or otherwise.

---

[2] Copies of the transfer documents are available upon request, but are not attached hereto.
[3] AFSF signed a Tenant Estoppel Certificate on April 8, 2021, in connection with the sale of the Lease to 6001, which stated that AFSF was the tenant, and the Lease had not been assigned or subletted.

5.     On November 3, 2024, the Debtors, including AFL, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 cases.

6.     On December 13, 2024, the Debtors filed the Motion and listed the Lease on Exhibit 1 to the proposed form of Order, ostensibly seeking to assume and assign the Lease to the proposed buyer.

7.     The Debtors also listed a cure amount for 6001 on account of AFL's purported obligations under the Lease totaling $1,685.00.

8.     However, the Lease cannot be assumed and assigned. None of the Debtors have any rights under the Lease.

9.     It is generally true that Debtors may assign leases in bankruptcy. 11 U.S.C. § 365(f)(1); *Haggen Holdings, LLC v. Antone Corp.,* 739 Fed. Appx. 153, 155 (3d Cir. 2018). However, Section 365 does not apply here, because the Lease was never assigned to AFL or any other Debtor as a matter of law. Thus, the Lease cannot be assigned by the Debtors to another party under Section 365.

10.    The Tenant on the Lease, AFSF, is not a Debtor or a bankrupt entity. Thus, the original alleged "assignment" from AFSF to AFL was governed by the terms of the Lease and Florida law rather than Section 365. The terms of the Lease and Florida law are clear: this alleged "assignment" from AFSF to AFL never had any legal effect.

11.    First, AFSF never had any right to assign the Lease to AFL under the Lease terms. The terms of Article VI, Paragraph T of the Lease state that "Tenant shall not assign, mortgage or encumber this Lease nor sublet or suffer or permit the Premises or any part thereof to be used by others with the prior written consent of Landlord[.]" However, neither AFSF (nor any other entity)

ever sought permission, written or otherwise, to assign the Lease to AFL. AFSF had no right under the Lease to unilaterally assign it to AFL, so such action was void *ab initio*.

12.     Furthermore, even acceptance of any rent payments made by AFL does not render the alleged assignment valid. The Lease states: "[i]f this Lease is assigned or if the Premises or any part thereof is sublet or occupied by anyone other than Tenant whether with or without the written consent of Landlord, Landlord may collect Rent from the assignee, sub-tenant or occupant and apply the net amount collected to the Rents herein reserved, but no assignment, subletting, occupancy or collection shall be deemed a waiver of any covenants or be deemed an acceptance of the assignee, sub-tenant or occupant[.]" Therefore, even acceptance of rent payments does not render the alleged AFSF-AFL assignment valid.

13.     Under Florida law, lease provisions (such as those quoted above) which require the lessor's consent to assignability are valid.  *See Speedway SuperAmerica, LLC v. Tropic Enters.*, 966 So. 2d 1, 3 (Fl. 2d. App. 2007) ("'under the terms of the lease an assignment thereof could only be made with the written consent of the lessors thereunto formally given' and the 'record fail[ed] to show that such written consent was given by the lessors.'") (quoting the seminal case *Anderson v. Tower Amusement Co.*, 120 Fla. 476, 479 (Fl. 1935)). Therefore, the above-cited Lease provisions restricting assignability are valid. AFSF simply never had any right to assign its Lease to AFL. Therefore, AFL cannot now assign the ill-begotten Lease either.

14.     In addition, the signed Asset Purchase Agreement dated December 13, 2024 (the "*APA*"), attached to the proposed form of Order as Exhibit 2, is between the proposed buyer and Educate, Inc., a different Debtor. Educate, Inc. has absolutely no relationship with 6001, and again, was neither a party to the lease (*i.e.*, AFSF) nor the improperly-alleged assignee (*i.e.*, AFL). To

4

6001's knowledge, Educate, Inc. never even occupied the premises. For the second time in this matter, the Debtors are attempting to execute an assignment for an interest which they do not have.

15.     The Debtors have also provided no adequate assurance of future performance by the proposed buyer. As noted in Section 365, "[t]he [Debtor] may assign an . . . unexpired lease of the debtor only if . . . adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2)(B), *In re Fleming Cos.*, 499 F.3d 300, 305 (3d Cir. 2007) ("The statutory requirement of 'adequate assurance of future performance by the assignee' affords 'needed protection to the non-debtor party because the assignment relieves the trustee and the bankruptcy estate from liability for breaches arising after the assignment.'") Here, no adequate assurance has been provided, and the lease assignment flatly fails this requirement.

16.     This alleged assignment in the Sale Motion must fail.

17.     Should the Court determine that, despite the assigning Debtor or Debtors having no interest in the Lease, and despite having provided no adequate assurance of future performance by the proposed buyer, the Lease can be assumed and assigned, the Debtors must pay the actual cure costs of $6,102.68. This amount includes rent for stub rent for November, plus late fees pursuant to Article IV, Paragraph J of the Lease, and the Debtors' share of property taxes, insurance and Common Area Maintenance ("*CAM*") costs which remain unpaid.

[Remainder of this page intentionally left blank]

WHEREFORE, 6001 respectfully requests that the Court deny the proposed assumption and assignment of the Lease, or alternatively, if the Court is inclined to approve the assumption and assignment of the Lease, require the Debtors to pay the proper cure amount as set forth in this Objection; and grant such other and further relief as this Court deems appropriate under the circumstances.

Dated:  December 26, 2024                 Respectfully submitted,

**GOLDSTEIN & MCCLINTOCK LLLP**

*/s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk (No. 3320)
500 Silverside Road, Suite 65
Wilmington, DE 19809
Tel: (302) 444-6710
Email: marias@goldmclaw.com

*Counsel for 6001 Powerline Road, LLC*