## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*, | Case No. 24-12480 (JTD) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date:**<br>**January 15, 2025 at 10:00 am ET** |
| | **Objection Deadline:**<br>**Dec. 27, 2024 at 4:00 pm ET** |
| | **Re:  Docket No. 435** |

## OBJECTION AND RESERVATION OF RIGHTS OF KIN PROPERTIES INC. AND ITS AFFILIATED LANDLORDS TO MOTION OF DEBTORS FOR ENTRY OF ORDER (A) APPROVING THE PRIVATE SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUBRANCES, WITH SUCH INTERESTS TO ATTACH TO THE PROCEEDS, AND (B) GRANTING RELATED RELIEF

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Kin Properties Inc., Alisan LLC and Roseff LLC (collectively, the "Kin Landlords") hereby file this objection and reservation of rights with respect to the *Motion of Debtors for Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, With Such Interests to Attach to the Proceeds, and (B) Granting Related Relief* [D.I. 435] (the "Motion"), and in support hereof respectfully state as follows.

## BACKGROUND

1. On November 3, 2024 (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") commenced these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in this Court. No trustee or examiner has been appointed and the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The Kin Landlords and Debtor American Freight Outlet Stores, LLC are parties to that certain unexpired lease of nonresidential real property (the "Kin Lease") for the premises located at 12001 Sears Street, Livonia, MI (the "Leased Premises"). The Motion lists a purported cure amount payable in connection with the Kin Lease in the amount of $547.07.

3. On December 13, 2024, the Debtors filed the Motion, in which they seek, *inter alia*, authority to assume and assign the Kin Lease to AF Newco I, LLC (the "Purchaser").

4. The Kin Landlords, Debtors and Purchaser, through counsel, are in discussions regarding a consensual resolution of the Motion as it relates to the Kin Lease and the Leased Premises. While those discussions are ongoing, the Kin Landlords file this objection to preserve all rights and claims.

2

**OBJECTION**

5.    The Kin Landlords object to the Motion to the extent it seeks to limit Landlord's rights and claims under the Kin Lease and applicable law, including without limitation the rights to adequate assurance of future performance under sections 365(b)(1) and (f)(2) of the Bankruptcy Code and adequate protection under section 363(e) of the Bankruptcy Code.

6.    In order to assume and assign the Kin Lease, the Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the Kin Lease, including, without limitation, any and all defaults with respect to rent, insurance requirements under the Kin Lease, real estate taxes and other charges, amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the Kin Lease that remain undetermined as of the date of the proposed assumption (the "Unliquidated Obligations"). Thus, for example, the Debtors are not entitled to assume or assign the Kin Lease by merely curing arrearages in rent. Instead, the Debtors must cure, or provide adequate assurance of promptly curing, all liquidated cure amounts and other Unliquidated Obligations under the Kin Lease, including, without limitation, performing their current and future obligations to maintain the Leased Premises and make repairs and replacements, and to comply with all applicable state and local laws, regulations, orders or ordinances, as a condition to the assumption and assignment of the Kin Lease. *See* 11 U.S.C. § 365(b)(1).

7.      Any assumption or assignment of the Kin Lease must be done, if at all, subject to all of the benefits and burdens of such lease.  Section 365 of the Bankruptcy Code provides only for the assumption or assignment of an executory contract or unexpired lease in its entirety, and debtors may not assume only the favorable parts of a contract or lease and reject parts that they deem unfavorable.  *See Cinicola v. Scharffenberger*, 248 F.3d 110, 19-20 (3d Cir. 2001) ("If the trustee meets the assumption requirements under § 365, it must assume the executory contract entirely.") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984)); *In re G-1 Holdings, Inc.*, 568 B.R. 731, 767 (Bankr. D. N.J. 2017) ("A debtor may not "cherry-pick" the provisions of an assumed contract with which it will comply."); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, *cum onere,* or reject the entire contract, shedding obligations as well as benefits."); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008) ("If the debtor decides to assume a lease, however, it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed. 'The [debtor] may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (quoting *In re Italian Cook Oil Corp.*, 190 F.2d 994, 97 (3d Cir. 1951)); *see also In re Access Beyond Technologies, Inc.*, 237 B.R 32, 47 (Bankr. D. Del. 1999) ("A debtor cannot avoid the requirements of section 365 by saying it is "selling" a lease or executory contract, rather than assuming and assigning it.").

8.      The Kin Landlords object to the Debtors' proposed cure amount, and further object to the extent the Debtors seek authorization for the sale or assignment of the Kin Lease free and clear of any liquidated cure amounts or Unliquidated Obligations under the Kin Lease, including without limitation any obligations to satisfy unbilled taxes or other charges, reconciliations, or

4

adjustments.  Any order approving the assumption and assignment of the Kin Lease should make clear that all liquidated cure amounts must be paid at or prior to assumption and assignment and all Unliquidated Obligations under the Kin Lease shall survive, and that any assignee shall take the Kin Lease subject to all of respective terms of the Kin Lease and undertake to satisfy all monetary and other non-monetary obligations under the Kin Lease, regardless of whether such Unliquidated Obligations could be argued to have existed, occurred, arose, accrued or related to a period prior to the assumption and assignment of the Kin Lease.  Furthermore, any order approving the assumption and assignment of the Kin Lease should, among other things, (i) provide that the transfer of the Kin Lease shall be subject to any easements, reciprocal easement agreements, operating or redevelopment agreements, licenses, permits, dedications, covenants, or other rights applicable to such real estate that run with the land or limit or condition the permitted use of the property, and (ii) specify that the Kin Landlords' setoff, recoupment, indemnification and subrogation rights are preserved, regardless of when such rights accrued.

9.      A statement of liquidated cure amounts known by the Kin Landlords are included in the schedule attached hereto as **Exhibit A** (the "Cure Schedule").  The Cure Schedule further identifies, based on a preliminary property inspection performed on behalf of the Kin Landlords, estimates of certain repair and maintenance items and apparent violations of municipal, county and/or state laws, orders, regulations or ordinances related to the cleanliness, safety, occupation and use of the Leased Premises.  The Kin Landlords are continuing to investigate the situation at the Leased Premises and reserve the right to revise the Cure Schedule and this objection accordingly.

10.      Furthermore, the Cure Schedule does not identify or include Unliquidated Obligations or other cure amounts that may become due and owing after the date hereof and prior

to the time the Kin Lease is actually assumed and assigned, or any amounts that are currently unknown or undetermined by the Kin Landlords.  The Kin Landlords reserve the right to amend or supplement the Cure Schedule as necessary or appropriate under the circumstances, including without limitation to account for further property inspections, reconciliations or adjustments which have not yet been billed or have not yet become due under the terms of the Kin Lease, amounts that become due and owing after the date hereof and prior to the time the Kin Lease is actually assumed and assigned, or amounts that the Kin Landlords become aware of after the date hereof.

## OBJECTION REGARDING ADEQUATE ASSURANCE INFORMATION

11.     Sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code require that adequate assurance of future performance be provided in connection with the assumption or assignment of an unexpired lease.  The Debtors and any proposed assignee have the burden of proving adequate assurance of future performance with respect to the potential assumption and assignment of the Kin Lease.  *See In re Res. Tech. Corp.*, 624 F.3d 376, 385 (7th Cir. 2010); *In re C.W. Mining Co.*, Adv No. 09-2248, 2010 WL 458914, at *9 (Bankr. D. Utah Feb. 10, 2010); *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143, 147 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B. R. 797, 802 - 03 (Bankr. W.D. Tenn. 1990).

12.     The Kin Landlords have not yet received any adequate assurance information related to Purchaser, and expressly reserve their right to amend this objection as necessary or appropriate to the extent that such information is provided.

## RESERVATION OF RIGHTS

13.     The Kin Landlords expressly reserve all of their rights under the Kin Lease and applicable law with respect to any and all obligations of the Debtors and/or any proposed assignee as tenant, including without limitation the Kin Landlords' right to claim any amounts of rent,

charges to compensate for monetary defaults, such as accrued real estate taxes, utility charges that have been assessed against the Leased Premises, unsatisfied liens on the Leased Premises created by the Debtors and/or the proposed assignee and/or insurance premiums, and charges to compensate for non-monetary defaults, including without limitation all maintenance, indemnification and environmental obligations of the Debtors and/or any proposed assignee.  The Kin Landlords further reserve all of their rights under the Kin Lease and applicable law with respect to any violations of municipal, county and/or state laws, orders, regulations or ordinances related to the cleanliness, safety, occupation and use of the Leased Premises.  The Kin Landlords further reserve all rights to raise further objections, as necessary or appropriate under the circumstances, relating to any motion or request to assume or assign the Kin Lease.

### **JOINDER**

14.     The Kin Landlords hereby join in any objections filed by other landlords to the extent not inconsistent with this Objection.

**[SIGNATURE PAGE FOLLOWS]**

WHEREFORE, the Kin Landlords hereby request that any final order entered in connection with the Motion incorporate the objections and other relief requested herein, and that they be granted such other or further relief as is just and appropriate.

Dated: December 27, 2024

**BAYARD, P.A.**

By:      */s/ Ericka F. Johnson*

Ericka F. Johnson (No. 5024)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Email: ejohnson@bayardlaw.com

and

**TAYMAN LANE CHAVERRI LLP**

Jeffrey Rhodes (*pro hac vice*)
2001 L Street, NW, Suite 500
Washington, DC 20036
Telephone:  (202) 921-4080
Email: jrhodes@tlclawfirm.com

*Counsel for Kin Properties Inc., Alisan LLC, and Roseff LLC*