# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>Related Docket No. 435<br><br>**Objection Deadline:  Dec. 27, 2024, 4:00 p.m. (ET)**<br>**Hearing Date:  January 15, 2024, 10:00 a.m. (ET)** |

## OBJECTION OF BUDDY MAC HOLDINGS, LLC TO THE MOTION OF DEBTORS FOR ENTRY OF ORDER (A) APPROVING THE PRIVATE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, WITH SUCH INTERESTS TO ATTACH TO THE PROCEEDS, AND (B) GRANTING RELATED RELIEF, AND RESERVATION OF RIGHTS

Buddy Mac Holdings, LLC and its subsidiaries (collectively, "BMH") respectfully file this objection and reservation of rights ("Sale Objection") to the sale, and proposed assumption and assignment of executory contracts, pursuant to the *Motion of Debtors for Entry of Order (A) Approving the Private Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, and*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

*Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief* [D.I. 435] (the "American Freight Sale Motion"). In support of the Sale Objection, BMH respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

There are two Franchise Group branded stores in Lubbock, Texas -- an American Freight store and a Buddy's store. The two stores are less than three miles apart. BMH's franchise agreement as franchisee for the Buddy's store required Franchise Group to offer to BMH the right to purchase the American Freight store when Franchise Group acquired it. BMH was never afforded this opportunity. By selling the American Freight store without first offering BMH the option to purchase it, the Debtors will incurably breach BMH's franchise agreement for the Buddy's store. The Debtors may not have it both ways. They may not both sell the American Freight Store in Lubbock to a third party, and also assume and assign the BMH franchise agreement for the Buddy's store that they have incurably breached. The Court should not authorize Franchise Group to sell the American Freight store in Lubbock, Texas to a third party without first offering it to BMH or, in the alternative, the Court should not approve the sale of the Lubbock American Freight store.

## II.
## RELEVANT BACKGROUND

A. **The Bankruptcy Cases**.

1. On November 3, 2024 (the "Petition Date"), the above-captioned Debtors ("Debtors" or "Franchise Group") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (this "Court").

2

2. The Debtors privately hold and operate franchised businesses. Their current collection of brands and business segments include The Vitamin Shoppe ("Vitamin Shoppe"), Pet Supplies Plus ("Pet Supplies"), Buddy's Home Furnishings ("Buddy's"), and American Freight ("American Freight"). According to the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First-Day Pleadings* [D.I. 15] (the "Orlofky Declaration"), the Debtors oversee what is, collectively, an enterprise encompassing approximately 2,200 total retail store locations and 11,900 employees across the United States.

3. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Section 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in these chapter 11 cases.

4. On November 11, 2024, the Debtors filed a motion (the "Bidding Procedures Motion") [D.I. 154] seeking entry of an order approving, among other things, (a) procedures for the solicitation of bids in connection with (i) the proposed sale of substantially all of the Debtors' assets and the assumption of certain liabilities, subject to the submission of higher or otherwise better offers ("Global Asset Sale"), (ii) the proposed sale transaction and (iii) an auction, (b) the form and manner of notice related to the sale transaction, and (c) procedures for the assumption and assignment of contracts and leases in connection with the sale transaction.

5. On December 11, 2024, the Court approved the relief requested in the Bidding Procedures Motion [D.I. 411].

6. None of the American Freight assets are a part of the Global Asset Sale. Instead, the Debtors have proposed to sell certain American Freight assets through a private sale, pursuant to the American Freight Sale Motion.

7. The American Freight Sale Motion does not disclose the ownership, capitalization or management of the purported purchaser, AF Newco I, LLC. Michael S. Piper, who signed the

3

proposed asset purchase agreement on behalf of AF Newco I, LLC, is a former Vice President and CFO of Liberty Tax, Inc., and a former Franchise Group executive.

B.     **The Debtors' Franchise and Development Relationship with BMH**.

8.     The Buddy's Home Furnishings concept was founded in 1961 in Tampa, FL and first franchised in 2010.  The branded stores sell home furnishings, electronics, and appliances. Sales are often in the form of rent-to-own contracts, pursuant to which consumers make regular payments until they fully pay off the item.

9.     BMH is the largest franchisee of Buddy's, operating eighty-two (82) Buddy's stores pursuant to Franchise Agreements (each, a "Franchise Agreement" and collectively, the "Franchise Agreements") with Buddy's Franchising and Licensing LLC ("Buddy's Franchising").  For the majority of the stores, each store operates under a separate Franchise Agreement, and each Franchise Agreement creates a territory for the BMH franchisee's operations.

10.     In the Franchise Agreements, Buddy's Franchising and BMH exchanged various promises that are integral to their bargain.  Pertinent to the American Freight Sale Motion, Buddy's Franchising agreed to support BMH's expansion of the Buddy's brand, by offering BMH an option to purchase and right of first refusal in the event that Buddy's Franchising, or an affiliate of Buddy's Franchising, acquired a Competitive Business (as defined in the Franchise Agreements) within a BMH-protected territory.

11.     For example, with respect to the Lubbock, Texas location, the Franchise Agreement provides that in the event that Buddy's Franchising, or an affiliate of Buddy's Franchising, were to acquire a store operating under a different trademark, offering the same, similar or different products and services as those offered by a Buddy's Retail Business (a "Non-System Store") within a BMH-protected territory, Buddy's Franchising agreed that it "shall promptly thereafter deliver to [BMH] a written notice offering [BMH] the opportunity to purchase

such Non-System Store for the purpose of converting it to a Retail Business(each, a "Conversion Notice")", whereupon BMH would have the option to purchase the Non-System Store, exercisable by providing written notice within 30 days after receipt of the Conversion Notice. *See, e.g.*, Franchise Agreement dated December 11, 2019, by and between Buddy's Franchising and BMH-TNM 31, LLC, for Lubbock, Texas (the "Lubbock Franchise Agreement") at §2(e).[2]  Buddy's Franchising also agreed to provide financing in the event that BMH exercised its option. *Id.*

12.     The option to purchase was integral to the Franchise Agreements; both BMH and (in theory) Buddy's Franchising had an interest in promoting the Buddy's brand and expanding the reach of Buddy's franchised locations.

13.     BMH's other Franchise Agreements have the same or similar provisions.

C.     **The Debtors are in Breach of the BMH Agreements**.

14.     Franchise Group has ignored BMH's option rights and right of first refusal.  Now, post-petition, the Debtors have continued to disregard BMH's right of first refusal.  In the American Freight Sale Motion, Educate, Inc. (an affiliate of Buddy's Franchising) seeks approval to sell 31 American Freight Stores in a private sale, including an American Freight store located in Lubbock, Texas (the "Lubbock American Freight Store").

15.     BMH operates a Buddy's store in Lubbock, Texas, pursuant to the Lubbock Franchise Agreement, which it acquired in 2019.  The territory covered by the Lubbock Franchise Agreement is the area within a 3-mile radius of the BMH Buddy's store in Lubbock -- 2014 50th Street, Lubbock, Texas (the "BMH Lubbock Territory").  The Lubbock American Freight Store is located only 2.8 miles from BMH's Buddy's store in Lubbock - within the BMH Lubbock Territory.  The Lubbock American Freight Store is a competitive business and a Non-System Store

---

[2] The Lubbock Franchise Agreement is in the general form of nearly all of the other Franchise Agreements between BMH and Buddy's Franchising.

within the meaning of the Lubbock Franchise Agreement. In or about February of 2020, an affiliate of Buddy's Franchising acquired American Freight. <u>Orlofky Declaration</u> at ¶ 20.

16. Yet, Franchise Group has never sent a Conversion Notice to BMH in connection with the Lubbock American Freight Store (or any other store). Failure to send the Conversion Notice for the Lubbock American Freight Store is a breach of the Lubbock Franchise Agreement with BMH. Instead, Franchise Group proposes to sell the Lubbock American Freight Store to a third party.

17. Moreover, if the sale is consummated, Franchise Group will never be able to cure the breach of the Lubbock Franchise Agreement with BMH for failure to issue the Conversion Notice.

18. The inability to cure this default under the Lubbock Franchise Agreement may have a negative impact on the estate, as the Lubbock Franchise Agreement is currently being offered as part of Buddy's line of business in the Global Asset Sale.

19. BMH Franchise Agreements were breached in other ways, which shall be the subject of a separate objection to the Global Asset Sale. Among other things, Franchise Group purchased and operated competitive businesses in 22 other protected BMH territories, without honoring BMH's options to purchase under its Franchise Agreements. BMH reserves all rights with respect to the breaches of the Franchise Agreements and its Development Agreement, including the right to argue that such defaults preclude assumption and assignment of its executory contracts.[3]

---

[3] For example, the leases for at least two American Freight stores, as to which BMH should have received Conversion Notices, have been rejected. These rejections, without BMH ever having been given the opportunity to purchase those locations as provided for pursuant to its option and right of first refusal, have caused the BMH Franchise Agreements for the nearby Buddy's stores to have been incurably breached

# III.
# LEGAL ARGUMENT

A.    **Assumption of Executory Contracts**.

20.    Section 365(a) authorizes a debtor to assume or reject an executory contract, subject to the court's approval. 11 U.S.C. § 365(a). Where there has been a default in an executory contract, it may not be assumed unless, at the time of assumption, the trustee or debtor:

> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

21.    Courts generally apply the "business judgment" standard when considering whether the proposed contract assumption or rejection is in the best interest of the estate. *In re Extraction Oil & Gas*, 622 B.R. 608, 614 n. 4 (Bankr. D. Del. 2020) (listing cases applying business judgment standard).

22.    A bankruptcy assignment may not modify the terms of the contract. "[A]n assignment is intended to change only who performs an obligation, not the obligation to be performed." *In re Fleming Companies, Inc.*, 499 F.3d 300, 308 (3d Cir. 2007) (quotation omitted). If the prospective assignee cannot perform the material obligations of the contract, on account of

the debtor's past actions or otherwise, the contract may not be assumed and assigned. *Id.* (holding that contract could not be assigned because the debtor had rejected a separate lease, which was necessary to fulfil an integral term of the contract).

23. The standard is not whether a term is "economically material" but, rather, whether the term is important within the overall bargain struck between the parties (i.e., is material) and whether the performance of that term is necessary to ensure that the party receives the full benefit of its bargain (i.e., is economically significant). *Fleming*, at 306.

24. In *Fleming*, the United States Court of Appeals for the Third Circuit gave examples of provisions that go to the very essence of contracts and bargained for exchanges, one of which is a right of first refusal. *See Fleming*, 499 F.3d at 306 (also citing cases recognizing the essential nature of minimum annual sales provisions (*In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990), time of the essence clauses (*In re New Breed Realty Enter. Inc.*, 278 B.R. 314, 324025 (Bankr. E.D.N.Y. 2002); and applicable standards of contractual performance (*In re Southern Biotech, Inc.*, 37 B.R. 311, 317 (Bankr. M.D.Fla. 1983)).

B. **The Breach of the BMH Lubbock Franchise Agreement Will Be Material**.

25. Prior to the 2005 amendments to the Bankruptcy Code, there was a split of authority as to whether, under section 365, non-monetary defaults had to be cured at all. *See In re Empire Equities Capital Corp.*, 405 B.R. 687, 690 (Bankr. S.D.N.Y. 2009) (comparing pre-2005 cases which held that debtors were relieved from curing non-monetary defaults altogether, with cases requiring that non-monetary defaults be cured and absent cure, could not be assumed).

26. When Congress amended the Bankruptcy Code in 2005, it provided a limited exception to the cure requirement for non-monetary defaults, applicable to non-monetary obligations under an unexpired real property lease. *Id.* at 691. By making an exception only for

unexpired real property leases, Congress made clear its intention that non-monetary defaults in executory contracts must be cured.  *Id*.

27.   Further, a material, non-monetary default under an executory contract that cannot be cured precludes assumption of the executory contract, making it impossible for the contract to be assigned.  *Id.  See also Fleming*, 499 F.3d at 302 (affirming bankruptcy court's decision to deny a request to excise a provision which would have required the assignee to supply groceries to the non-debtor from a specific location); *In re Eagle Creek Subdivision, LLC*, 397 B.R. 758, 763-64 (Bankr. E.D.N.C. 2008) (debtor's failure to complete lots by the contractual deadline was a material, non-monetary default that could not be cured, and accordingly, the contracts could not be assumed); *In re Escarent Entities, L.P.*, 423 Fed. Appx. 462, 465 (5th Cir. Apr. 28, 2011) (failure of seller to close by the specified date in the contract was a material breach that could not be cured, preventing assumption of the contract); *Ring v. Ted's Jumbo Red Hots, Inc*., 2022 WL 465075 *5 (W.D.N.Y. Feb. 15, 2022) (violation of non-disparagement clause was a non-monetary default that could not be cured, affirming the bankruptcy court's denial of motion to assume executory contract).

28.   In *Empire Equities*, the executory contract in question was an option contract, and the deadline for exercising the option had expired.  The Court found that the failure to exercise the option by the deadline was a material and incurable default that would have precluded assumption, had the debtor not been able to extend the deadline under section 108 of the Bankruptcy Code.  *Id*. at 691.

29.   Franchise Group failed to send a Conversion Notice to BMH as required under the BMH Lubbock Franchise Agreement.  BMH objects to the sale of the Lubbock American Freight Store because BMH should have received a Conversion Notice and been given the opportunity to purchase the store.  Moreover, in the event that the store is permitted to be sold, Franchise Group's

failure to send the Conversion Notice for that store will be an incurable breach of BMH's Lubbock Franchise Agreement, thereby rendering the BMH Lubbock Franchise Agreement unassignable.

30. The Debtors may not have it both ways – they may not both sell the Lubbock American Freight Store without sending a Conversion Notice to BMH (and affording BMH the opportunity to buy the store), and also assume and assign the BMH Lubbock Franchise Agreement once it has been incurably breached.

## RESERVATION OF RIGHTS

31. BMH does not waive (and expressly reserves) its right to amend, modify and supplement this objection at or prior to the conclusion of the hearing to consider the American Freight Sale Motion, including but not limited to, asserting additional objections to the sale and assumption and/or assignment of any contracts or leases. BMH further expressly reserves all of its rights on account of every breach of its Franchise Agreements, including rights that relate to breaches not discussed in this objection, which make its Franchise Agreements incapable of assignment and/or which will require payment of cure in the amount of potentially tens of millions of dollars.

WHEREFORE, for all of the foregoing reasons, BMH respectfully requests the entry of an Order (i) denying approval of the sale of the American Freight Lubbock store, and (ii) granting such further relief as may be just and proper.

|  |  |
|---|---|
|  | **WOMBLE BOND DICKINSON (US) LLP** |
| Dated: December 27, 2024<br>Wilmington, Delaware | By: */s/ Lisa Bittle Tancredi*<br>Matthew P. Ward (Del. Bar No. 4471)<br>Lisa Bittle Tancredi (Del. Bar No. 4657)<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Facsimile: (302) 252-4330<br>Email: matthew.ward@wbd-us.com<br>         lisa.tancredi@wbd-us.com<br><br>*Counsel for Buddy Mac Holdings, LLC and Subsidiaries* |