**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Hearing Date: February 13, 2025 at 10:00 a.m. (ET)** |
| | ) | **Objection Deadline: January 13, 2025 at 4:00 p.m. (ET)** |
| | ) | |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PERELLA WEINBERG PARTNERS LP AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, EFFECTIVE AS OF NOVEMBER 26, 2024**

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Franchise Group, Inc. and its affiliated debtors and

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

debtors in possession (collectively, the "Debtors") states as follows in support of this application (this "Application"):

## RELIEF REQUESTED

1. By this Application, the Committee seeks entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit B**, authorizing the Committee to retain and employ Perella Weinberg Partners LP ("PWP" or the "Firm") as its investment banker, effective as of November 26, 2024, in accordance with this Application and the terms and conditions set forth in that certain engagement letter between the Committee and PWP, effective as of November 26, 2024 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to the Order and incorporated herein by reference.[2]

2. In support of this Application, the Committee relies upon and incorporates by reference the declaration of Bruce Mendelsohn, Partner at PWP, attached hereto as **Exhibit A** (the "Mendelsohn Declaration") and respectfully submits the following.

## JURISDICTION, VENUE, AND STATUTORY BASES

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, entered February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b). The Committee confirms its consent to the Court's entry of a final order in connection with this Application.

4. Venue is proper pursuant to 28 U.S.C. § 1408 and § 1409.

[2] The summary of the Engagement Letter contained in this Application is provided for informational purposes only. In the event of any inconsistency between the summary contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter, as approved by the Court pursuant to the Order, shall control. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Engagement Letter.

5. The statutory bases for the relief requested herein are sections 328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules").

## BACKGROUND

5. On November 3, 2024 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On November 5, 2024, the Court entered an order directing joint administration of the Chapter 11 Cases [Docket No. 88]. The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[3]

6. On November 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") filed a notice [Docket No. 188] appointing the Committee, which is composed of five members.

7. On November 26, 2024, the Committee selected PWP as its investment banker, subject to Court approval.

## PWP'S QUALIFICATIONS

8. The Committee has determined that it is necessary to engage an investment banker, with knowledge of the Debtors' industry and business and with experience in the chapter 11 process, to advise the Committee with respect to the Debtors' restructuring and the Chapter 11

[3] A more fulsome description of the Debtors, their businesses, and the facts and circumstances supporting this Application and the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of David Orlofsky in support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration"), incorporated by reference herein. Capitalized terms used but not otherwise defined in this Application or the Engagement Letter shall have the meanings ascribed to them in the First Day Declaration.

Cases. The Committee proposes to retain and employ PWP as its investment banker to assist the Committee in evaluating the complex financial and economic issues raised by the Chapter 11 Cases, to maximize recoveries for the Debtors' unsecured creditors, and to effectively fulfill its statutory duties.

9. PWP is a leading global independent advisory firm that provides strategic and financial advice to clients across a range of the most active industry sectors and international markets, with offices in New York, London, Houston, Calgary, Chicago, Denver, Los Angeles, Munich, Paris, and San Francisco. PWP's corporate advisory practice is focused on providing clients with advice related to mergers and acquisitions and financial restructurings. PWP's mergers and acquisitions practice advises both public and private companies. Its financial restructuring practice works with companies, investors, and other parties in interest in turn-around and distressed situations.

10. PWP and its professionals have extensive experience working with financially troubled companies, their lenders, and creditor constituencies across a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Major recent in-court restructurings in which PWP has been involved include: *In re Spirit Airlines, Inc.*, Case No. 24-11988 (SHL) (Bankr. S.D.N.Y.) (retention application pending); *In re Vertex Energy, Inc.*, Case No. 24-90507 (CML) (Bankr. S.D. Tex.); *In re Accuride Corporation*, Case No. 24-12289 (JKS) (Bankr. D. Del.); *In re CorEnergy Infrastructure Trust, Inc.*, Case No. 24-40236 (CAN) (Bankr. W.D. Mis.); *In re American Tire Distributors, Inc.*, Case No. 24-12391 (CTG) (Bankr. D. Del.); *In re Hornblower, Holdings LLC*, Case No. 24-90061 (MI) (Bankr. S.D. Tex.); *In re NanoString Techs. Inc.*, Case No. 24-10160 (CTG) (Bankr. D. Del.); *In re Quotient Ltd.*, Case No. 23-90003 (DRJ) (Bankr. S.D. Tex.); *In re OSG Group Holdings, Inc.*, Case No. 23-90799 (CML) (Bankr.

S.D. Tex.); *In re Clovis Oncology, Inc.*, Case No. 22-11292 (JKS) (Bankr. D. Del.); *In re FTX Trading LTD*, Case No. 22-11068 (JTD) (Bankr. D. Del.); *In re Cineworld Grp. Plc*, Case No. 22-90168 (MI) (Bankr. S.D. Tex.); *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y.); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex.); *In re TPC Group Inc*., Case No. 22-10493 (Bankr. D. Del.); *In re Ion Geophysical Corp*., Case No. 22-30987 (MI) (Bankr. S.D. Tex.); *In re Ector County Energy Ctr. LLC*, Case No. 22-10320 (JTD) (Bankr. D. Del.); *In re Endo Int'l plc*, Case No. 22-22549 (JLG) (Bankr. S.D.N.Y.); *In re Nine Point Energy Holdings, Inc.*, Case No. 21-10570 (MFW) (Bankr. D. Del.); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del.); *In re Limetree Bay Servs., LLC*, Case No. 21-32351 (DRJ) (Bankr. S.D. Tex.)' .); *In re Garrett Motion Inc*., Case No. 20-12212 (MEW) (Bankr. S.D.N.Y.); *In re California Resources Corporation*, Case No. 20-33568 (DRJ) (Bankr. S.D. Tex.); *In re Gulfport Energy Corp*., Case No. 20-35561 (DRJ) (Bankr. S.D. Tex.); *In re Chesapeake Exploration, LLC*, Case No. 20-33239 (DRJ) (Bankr. S.D. Tex.); *In re Diamond Offshore Drilling, Inc*., Case No. 20-32321 (DRJ) (Bankr. S.D. Tex.); *In re Valaris plc*, Case No. 20-34114 (MI) (Bankr. S.D. Tex.); *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del.); *In re Global Eagle Entertainment Inc*., Case No. 20-11835 (JTD) (Bankr. D. Del.); *In re The Hertz Corp*., Case No. 20-11218 (MFW) (Bankr. D. Del.); *In re Avianca Holdings S.A.*, Case No. 20-11133 (MG) (Bankr. S.D.N.Y.); and *In re LATAM Airlines Group S.A*., Case No. 20-11254 (Bankr. S.D.N.Y.). PWP's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including Algeco Group; Blackhawk Mining; Danaos Corporation; International Automotive Components Group; Del Monte; Jack Cooper; Key Energy Services; Ligado Networks; Medical Depot Holdings; Pernix Therapeutics; Proserv; Salt Creek Midstream; Savers; SM Energy Company; Sprint Industrial Holdings; Titan Energy; WeWork Companies;

Travel Leaders; Maxeon; United Road; City Brewing LLC; West Marine Inc.; Apex Tool Group LLC; AMC Entertainment Holdings, Inc; EyeCare Partners; EchoStar Corp; Valcour Packaging LLC; and ASP Unifrax Holdings, Inc.

11. The Committee selected PWP as its investment banker because of PWP's extensive experience, expertise, and knowledge in advising troubled companies, their lenders, and creditor constituencies in connection with chapter 11, out-of-court restructurings and distressed merger and acquisition transactions, as well as its involvement and success in many complex cases. The Committee believes that PWP will provide substantial value to unsecured creditors in these Chapter 11 cases. Accordingly, the Committee submits this Application because it has deemed it necessary to retain an investment banker to assist in the critical tasks associated with guiding the Committee through the Chapter 11 Cases and maximizing the recoveries of unsecured creditors in these Chapter 11 Cases.

12. Prior to selecting PWP as the Committee's investment banker, the Committee interviewed several investment banking firms and reviewed materials submitted by those firms, including PWP. After the interview process, the Committee decided to select PWP as its investment banker, subject to Court approval, based on the Committee's determination that PWP is the best candidate for the services to be provided and that PWP's proposed fee structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of the Chapter 11 Cases.

13. Pursuant to section 1103(a) of the Bankruptcy Code, an official committee of unsecured creditors or equity holders may retain professional advisors to assist the committee in the chapter 11 case. In these Chapter 11 Cases, the Committee requires qualified professionals to render essential investment banking services. As set forth above, PWP has substantial expertise as

an investment banker in complex chapter 11 cases and is well qualified to perform these services and to assist the Committee in these Chapter 11 Cases.

**SCOPE OF PWP's SERVICES**

14. The terms and conditions of the Engagement Letter were negotiated at arm's-length between the Committee and PWP and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.

15. As stated in the Engagement Letter, subject to the Court's approval, PWP will provide the following services to the Committee, to the extent requested by the Committee or Committee's counsel, in consideration for the compensation set forth in the Engagement Letter:

i. Familiarize itself with the business, operations, liquidity situation, assets and liabilities, financial condition and prospects of the Debtors;

ii. Review, analyze and report to the Committee and Pachulski Stang Ziehl & Jones LLP, the Committee's proposed counsel ("Committee Counsel"), with respect to the Debtors' financial condition and outlook;

iii. Evaluate the Debtors' debt capacity in light of projected cash flows;

iv. Review and provide an analysis of any valuation of the Debtors' total enterprise value, the Debtors on an entity by entity basis, the Debtors' various lines of business and/or any of the Debtors' assets;

v. Review and provide an analysis of any proposed capital structure for the Debtors on a reorganized going concern basis;

vi. Advise and attend meetings with the Committee and Committee Counsel related to the Debtors as well as due diligence meetings with the Debtors or other third parties as appropriate;

vii. Advise and assist Committee Counsel's evaluation of the Debtors' near-term liquidity including various financing alternatives;

viii. Review, analyze and advise the Committee and Committee Counsel with respect to the existing debt structure of the Debtors, and refinancing alternatives to existing debt;

ix. Explore alternative strategies for the Debtors as one or more stand-alone businesses;

x. Develop, evaluate and assess the financial issues and options concerning any proposed Transaction (as defined in the Engagement Letter);

xi. Analyze and explain any Transaction to the Committee and Committee Counsel;

xii. Review potential M&A alternatives;

xiii. Evaluate potential bids from prospective purchasers of the Debtors' assets;

xiv. Assist the Committee and Committee Counsel and participate in negotiations with the Debtors on the Committee's behalf;

xv. Participate in hearings before the Bankruptcy Court with respect to matters upon which PWP has provided advice and/or analysis, including, as relevant, coordinating with Committee Counsel with respect to any fact or expert testimony in connection therewith; and

xvi. Provide such other investment banking services in connection with this matter that the Committee and Committee Counsel may from time to time reasonably request and which are customarily provided by investment banks in similar situations.

16. The foregoing services are necessary to enable the Committee to evaluate the complex financial and economic issues raised by the Chapter 11 Cases, to maximize recoveries for the Debtors' unsecured creditors, and to effectively fulfill its statutory duties.

**NO DUPLICATION OF SERVICES**

17. The Committee believes that the services provided by PWP will not duplicate the services that other professionals will be providing to the Committee in the Chapter 11 Cases. Specifically, PWP will carry out unique functions and will use reasonable efforts to coordinate with the Committee and the other professionals retained in the Chapter 11 Cases to avoid the unnecessary duplication of services.

**PROFESSIONAL COMPENSATION**

18. Investment bankers such as PWP do not customarily charge for their services on an hourly basis. Instead, they charge a monthly advisory fee, plus additional fees contingent on the occurrence of specified transactions or events. The Engagement Letter follows this fee structure

and provides that PWP will be compensated for its services as follows, subject to the Court's approval:[4]

| | |
|---|---|
| **(a) Monthly Advisory Fee** | A monthly financial advisory fee of $175,000 (the "Monthly Fee") for each month of the engagement (prorated for any partial month), due and payable on the first day of each month during the engagement; provided that 50% of each Monthly Fee after six (6) Monthly Fees paid under the Engagement Letter shall (to the extent paid and without duplication) be credited against and subtracted from any Transaction Fee (as defined below). |
| **(b) Transaction Fee** | A Transaction Fee equal to $4,500,000, payable promptly upon consummation of a Transaction (as defined in the Engagement Letter). |

19. The Engagement Letter also provides that, in addition to PWP's fees for professional services, the Debtors will reimburse PWP for its actual, reasonable and documented out-of-pocket expenses incurred in connection with any of the services provided pursuant to and in accordance with the Engagement Letter, including, but not limited to, professional and legal fees, charges and disbursements of PWP's legal counsel, any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in the Engagement Letter, travel and hotel expenses, printing costs, data processing and communication charges, research expenses and courier and postage services. The Debtors' obligation to reimburse expenses incurred by PWP in connection with this engagement will survive the completion or termination of the engagement. For the avoidance of doubt, the Debtors shall reimburse PWP for the reasonable fees and expenses of outside counsel retained by PWP in connection with this engagement without the need for such legal counsel to be retained as a professional in the Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

4 To the extent there is any inconsistency between the summary of the fee and expense structure set forth in this Application and the fee and expense structure described in the Engagement Letter, the terms of the Engagement Letter shall control.

**TIMEKEEPING OBLIGATIONS OF PWP**

20. It is not the general practice of investment banking firms—including PWP—to keep detailed time records similar to those customarily kept by attorneys. PWP does not ordinarily maintain contemporaneous time records in tenth-hour increments or provide or conform to a schedule of hourly rates for its professionals.

21. The Committee, therefore, respectfully requests that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, other applicable orders of this Court, or any other guidelines regarding the submission and approval of fee applications, PWP be excused from complying with any such requirements in connection with the services to be rendered pursuant to the Engagement Letter.

22. Notwithstanding the foregoing, PWP will apply to the Court for the allowance of compensation for services rendered and reimbursement of expenses incurred. Such applications will include time records setting forth, in summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Committee in one-half (.5) hour increments. PWP will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above. PWP's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter in accordance with any related procedures established by the Court. Courts in other large chapter 11 cases in this jurisdiction have excused flat-fee professionals from timekeeping requirements under similar circumstances. *See, e.g.*, *In re Accuride Corporation*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 1, 2024); *In re SunPower Corporation*, No. 24-11649 (CTG) (Bankr. D. Del. Sept. 11, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024); *In re Appgate, Inc.*, No. 24-10956 (CTG)

(Bankr. D. Del. June 13, 2024*); In re Express, Inc*., No. 24-10831 (KBO) (Bankr. D. Del. June 5, 2024); *In re Sientra, Inc*., No. 24-10245 (JTD) (Bankr. D. Del. Mar. 26, 2024); *In re NanoString Technologies, Inc*., Case No. 24-10160 (CTG) (Bankr. D. Del. Mar. 15, 2024).

**INDEMNIFICATION OF PWP**

23. As a material part of the consideration for which PWP has agreed to provide the services described herein, Annex A to the Engagement Letter[5] provides for certain indemnification obligations (collectively, the "Indemnification Provisions") of the Debtors to PWP and its affiliates and its and their respective officers, directors, partners, members, employees, consultants and agents and each other person, if any, controlling PWP or any of its affiliates (PWP and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities related to or arising out of or in connection with PWP's engagement or any matter referred to in the Engagement Letter, and the Debtors will reimburse each Indemnified Person for all reasonable and documented expenses (including reasonable and documented fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement Letter, whether or not pending or threatened and whether or not any Indemnified Person is a party; provided, however, that the Debtors will not be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of any Indemnified Person. In the Engagement Letter, the Debtors and the Committee also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract

[5] To the extent there is any inconsistency between the summary of the indemnification, contribution, or exculpation provisions set forth in this Application and the indemnification, contribution, or exculpation provisions set forth in Annex A to the Engagement Letter, the terms of Annex A to the Engagement Letter shall control.

or tort or otherwise) to the Debtors or the Committee, as applicable, for or in connection with the Engagement Letter, except for any such liability for losses, claims, damages or liabilities incurred by the Debtors or the Committee, as applicable, that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Indemnified Person.

24. If the indemnification provided for in Annex A to the Engagement Letter is, for any reason, not available to an Indemnified Person or is insufficient to hold an Indemnified Person harmless in respect of any losses, claims, damages or liabilities referred to therein, then, to the extent permitted by applicable law, in lieu of indemnifying such Indemnified Person thereunder, the Debtors shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (a) in such proportion as is appropriate to reflect the relative benefits to PWP, on the one hand, and the Debtors, on the other hand, of the Engagement Letter or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of each of PWP and the Debtors, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall PWP's aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by PWP under the Engagement Letter.[6]

25. The indemnity, contribution, and other obligations and agreements of the Debtors set forth in Annex A and the Engagement Letter to which it is attached (a) shall apply to any

---

[6] The Engagement Letter provides that the relative benefits to PWP and the Debtors under the Engagement Letter shall be deemed to be in the same proportion as (i) the fees paid or to be paid to PWP under the Engagement Letter, bears to (ii) the total value paid or contemplated to be paid to or received or contemplated to be received by the Debtors or their stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement Letter, whether or not any such transaction is consummated.

services provided by PWP in connection with the Engagement Letter prior to the date of the Engagement Letter, and (b) shall survive the completion or termination of the engagement.

26. The indemnification, exculpation, and contribution provisions are customary and reasonable terms of consideration for investment bankers such as PWP for engagements both out of court and in chapter 11, and, as modified by the Order, reflect the qualifications and limitations on indemnification provisions that are customary in chapter 11 cases in this district and other jurisdictions. Such provisions, viewed in conjunction with the other terms of PWP's proposed retention, are reasonable and in the best interests of the Committee and unsecured creditors in these Chapter 11 Cases, in light of the fact that the Committee requires PWP's services. Similar indemnification provisions have been approved and implemented in other large chapter 11 cases in this jurisdiction. *See, e.g.*, *In re Accuride Corporation*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 1, 2024); *In re SunPower Corporation*, No. 24-11649 (CTG) (Bankr. D. Del. Sept. 11, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024); *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. June 13, 2024*); In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. June 5, 2024); *In re Sientra, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Mar. 26, 2024); *In re NanoString Technologies, Inc.*, Case No. 24-10160 (CTG) (Bankr. D. Del. Mar. 15, 2024).

27. Accordingly, as part of the Application, the Committee requests that the Court approve the Indemnification Provisions and the obligations contained therein.

**PWP'S PREPETITION COMPENSATION**

28. Pursuant to section 504 of the Bankruptcy Code, PWP has informed the Committee that there is no agreement or understanding between PWP and another entity, other than employees

of PWP, for the sharing of compensation received or to be received for services rendered in connection with the Chapter 11 Cases.

**PWP'S DISINTERESTEDNESS**

29. As described in more detail in the Mendelsohn Declaration, PWP reviewed its client databases and records to determine whether it represents or has represented or otherwise has connections with the Committee or parties in interest that the Debtors identified to PWP . Except as otherwise disclosed in the Mendelsohn Declaration, any such representations are unrelated to the Committee, the Debtors or the Chapter 11 Cases.

30. To the best of the Committee's knowledge, information, and belief, (a) other than as set forth in the Mendelsohn Declaration, PWP has no connection with the Debtors, their creditors, the Committee and the members thereof, or other parties in interest, or their respective attorneys or other professionals, the U.S. Trustee or any person employed in the Office of the U.S. Trustee, in any matter related to the Debtors and their estates, (b) PWP does not hold any interest adverse to the Debtors' estates, and (c) PWP believes it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

31. Accordingly, the Committee believes that PWP does not hold or represent an interest adverse to the Debtors' estates and that PWP is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code. Given the large number of parties-in-interest in the Chapter 11 Cases, and despite the efforts to identify and disclose PWP's relationships with parties in interest in the Chapter 11 Cases, PWP is unable to state with certainty that every client relationship or other connection has been disclosed in the Mendelsohn Declaration. If any new relevant facts or relationships are discovered or otherwise arise during the pendency of the

Chapter 11 Cases, PWP will use reasonable efforts to identify such further relevant facts or relationships and will file a supplemental declaration as required by Bankruptcy Rule 2014(a).

**BASIS FOR RELIEF**

32. The Committee respectfully requests authority to retain PWP pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a committee "may employ or authorize the employment of a professional person under section . . .1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions. *See Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum* (*In re Nat'l Gypsum Co.*), 123 F.3d 861, 862 (5th Cir. 1997) ("Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee)."); *see also In re Wash. Mut., Inc.*, Case No. 08-12229 (MFW), 2018 WL 704361, at *4 (Bankr. D. Del. Feb. 2, 2018) (stating that "courts 'must protect agreements and expectations' once they have been found reasonable") (quoting *In re Nat'l Gypsum Co.*, 123 F.3d at 862–63).

33. Section 1103(a) of the Bankruptcy Code provides, in relevant part, that a creditors' committee, with the Court's approval, "may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a). For the reasons set forth herein, the employment of PWP by the Committee is reasonable and in line with the typical terms and conditions for engagements of this size and character.

34. Further, Bankruptcy Rule 2014(a) requires that a retention application disclose the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

35. The Committee submits that for all the reasons stated herein and in the Mendelsohn Declaration, the retention and employment of PWP as the Committee's investment banker pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) is warranted.

36. The Committee submits that the terms of the Engagement Letter were negotiated in good faith and at arm's length between the Committee and PWP and reflect the extensive work and substantial commitment to be undertaken by PWP on behalf of the Committee during the Chapter 11 Cases. The Committee submits that the terms and conditions of the Engagement Letter, including the fee structure, are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code considering (a) the numerous issues that PWP may be required to address in performing its services for the Committee pursuant to the Engagement Letter, (b) PWP's commitment to the variable time requirements and effort necessary to address all such issues as they arise, (c) PWP's substantial experience with respect to investment banking services, (d) the market prices for PWP's services for engagements of this nature, and (e) the fee structures typically utilized by PWP and other investment bankers, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

37. Accordingly, the Committee believes that PWP's compensation should be subject only to the standard of review in section 328(a) and should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

38. Retention of PWP is appropriate and in the best interest of the Committee and unsecured creditors in these Chapter 11 Cases, based on: (a) the necessity of PWP's services for the successful administration of the Chapter 11 Cases; (b) the necessity of PWP's services for the benefit of unsecured creditors in the Chapter 11 Cases; (c) the complexity, importance, and nature of the problems, issues, and tasks facing the Committee that PWP is helping to address; (d) the past experience and successes of PWP's professionals; and (e) the reputations and demonstrated skill and experience in the bankruptcy field of PWP's professionals. For the reasons set forth above, the Committee believes that PWP's retention on the terms of the Engagement Letter is fair, appropriate, in line with the market, and reasonable.

39. The Committee also believes that employment of PWP effective as of November 26, 2024 – the date on which the Committee selected PWP as its investment banker in these Chapter 11 Cases – is warranted under the circumstances of these Chapter 11 Cases. Immediately upon its selection by the Committee, PWP commenced work on several matters and promptly devoted substantial resources to these Chapter 11 Cases, pending approval of this Application. Therefore, the Committee asserts that PWP should be compensated for work performed prior to and after entry of the Order authorizing PWP's retention. *See, e.g., In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)).

40. Based on the foregoing, the Committee submits that it has satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules to support entry of the Order

authorizing the Committee to retain and employ PWP in the Chapter 11 Cases on the terms described herein and in the Engagement Letter.

**WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

41. To implement the foregoing successfully, the Committee requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Committee has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**NOTICE**

42. Notice of this Application will be provided to the following parties (or their counsel): (i) the U.S. Trustee; (ii) counsel to the Debtors; and (iii) all parties requesting service pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Committee submits that no other or further notice is necessary.

WHEREFORE, the Committee requests that the Court enter the Order granting the relief requested in this Application and such other relief as the Court deems appropriate under the circumstances.

Dated: December 27, 2024

*/s/ David G. Byrnes, Jr.*
Name: David G. Byrnes, Jr.
Authorized Representative
NNN REIT, LP (fka National Retail Properties), acting solely in its capacity as Co-Chair of the Official Committee of Unsecured Creditors of Franchise Group, Inc., *et al.*