## Exhibit A

### Mendelsohn Declaration

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) | Case No. 24-12480 (JTD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DECLARATION OF BRUCE MENDELSOHN IN
## SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
## APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF PERELLA WEINBERG
## PARTNERS LP AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF
## UNSECURED CREDITORS, EFFECTIVE AS OF NOVEMBER 26, 2024

I, Bruce Mendelsohn, pursuant to section 1746 of title 28 of the United States Code, hereby

declare under penalty of perjury that the following is true and correct to the best of my knowledge,

information, and belief:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

1.      I am a Partner at Perella Weinberg Partners LP ("PWP" or the "Firm"), which has its principal office at 767 Fifth Avenue, New York, New York 10153.  PWP is part of a global financial services firm that provides corporate advisory and asset management services.  I submit this Declaration in support of the application (the "Application")[2] of the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Franchise Group, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") for an order authorizing the retention and employment of PWP as investment banker for the Committee, effective as of November 26, 2024, in accordance with the terms and conditions set forth in that certain engagement letter between the Committee and PWP, effective as of November 26, 2024 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to the Order.

2.      I submit this Declaration in compliance with sections 328(a) and 1103 of the Bankruptcy Code and to provide the disclosures required under Rules 2014(a) and 2016 of the Bankruptcy Rules and Rules 2014-1 and 2016-2 of the Local Rules.  Unless otherwise stated, all matters set forth in this Declaration are based on my personal knowledge, my review of relevant documents, information supplied to me by other professionals at PWP, or my views, including as based upon my experience and knowledge of the Debtors' business and financial condition. Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3]

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

[3]    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at the Firm and are based on information provided by them.

## **PWP'S QUALIFICATIONS**

3. PWP is a leading global independent advisory firm that provides strategic and financial advice to clients across a range of the most active industry sectors and international markets, with offices in New York, London, Houston, Calgary, Chicago, Denver, Los Angeles, Munich, Paris and San Francisco. PWP's corporate advisory practice is focused on providing clients with advice related to mergers and acquisitions and financial restructurings. PWP's mergers and acquisitions practice advises both public and private companies. Its financial restructuring practice works with companies, investors, and other parties in interest in turn-around and distressed situations.

4. PWP and its professionals have extensive experience working with financially troubled companies, their lenders, and creditor constituencies across a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Major recent in-court restructurings in which PWP has been involved include: *In re Spirit Airlines, Inc.*, Case No. 24-11988 (SHL) (Bankr. S.D.N.Y.) (retention application pending); *In re Vertex Energy, Inc.*, Case No. 24-90507 (CML) (Bankr. S.D. Tex.); *In re Accuride Corporation*, Case No. 24-12289 (JKS) (Bankr. D. Del.); *In re CorEnergy Infrastructure Trust, Inc.*, Case No. 24-40236 (CAN) (Bankr. W.D. Mis.); *In re American Tire Distributors, Inc.*, Case No. 24-12391 (CTG) (Bankr. D. Del.); *In re Hornblower, Holdings LLC*, Case No. 24-90061 (MI) (Bankr. S.D. Tex.); *In re NanoString Techs. Inc.*, Case No. 24-10160 (CTG) (Bankr. D. Del.); *In re Quotient Ltd.*, Case No. 23-90003 (DRJ) (Bankr. S.D. Tex.); *In re OSG Group Holdings, Inc.*, Case No. 23-90799 (CML) (Bankr. S.D. Tex.); *In re Clovis Oncology, Inc.*, Case No. 22-11292 (JKS) (Bankr. D. Del.); *In re FTX Trading LTD*, Case No. 22-11068 (JTD) (Bankr. D. Del.); *In re Cineworld Grp. Plc*, Case No. 22-90168 (MI) (Bankr. S.D. Tex.); *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr.

S.D.N.Y.); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex.); *In re TPC Group Inc*., Case No. 22-10493 (Bankr. D. Del.); *In re Ion Geophysical Corp*., Case No. 22-30987 (MI) (Bankr. S.D. Tex.); *In re Ector County Energy Ctr. LLC*, Case No. 22-10320 (JTD) (Bankr. D. Del.); *In re Endo Int'l plc*, Case No. 22-22549 (JLG) (Bankr. S.D.N.Y.); *In re Nine Point Energy Holdings, Inc.*, Case No. 21-10570 (MFW) (Bankr. D. Del.); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del.); *In re Limitree Bay Servs., LLC*, Case No. 21-32351 (DRJ) (Bankr. S.D. Tex.); *In re Garrett Motion Inc*., Case No. 20-12212 (MEW) (Bankr. S.D.N.Y.); *In re California Resources Corporation*, Case No. 20-33568 (DRJ) (Bankr. S.D. Tex.); *In re Gulfport Energy Corp*., Case No. 20-35561 (DRJ) (Bankr. S.D. Tex.); *In re Chesapeake Exploration, LLC*, Case No. 20-33239 (DRJ) (Bankr. S.D. Tex.); *In re Diamond Offshore Drilling, Inc*., Case No. 20-32321 (DRJ) (Bankr. S.D. Tex.); *In re Valaris plc*, Case No. 20-34114 (MI) (Bankr. S.D. Tex.); *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del.); *In re Global Eagle Entertainment Inc*., Case No. 20-11835 (JTD) (Bankr. D. Del.); *In re The Hertz Corp*., Case No. 20-11218 (MFW) (Bankr. D. Del.); *In re Avianca Holdings S.A.*, Case No. 20-11133 (MG) (Bankr. S.D.N.Y.); and *In re LATAM Airlines Group S.A*., Case No. 20-11254 (Bankr. S.D.N.Y.). PWP's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including Algeco Group; Blackhawk Mining; Danaos Corporation; International Automotive Components Group; Del Monte; Jack Cooper; Key Energy Services; Ligado Networks; Medical Depot Holdings; Pernix Therapeutics; Proserv; Salt Creek Midstream; Savers; SM Energy Company; Sprint Industrial Holdings; Titan Energy; WeWork Companies; Travel Leaders; Maxeon; United Road; City Brewing LLC; West Marine Inc.; Apex Tool Group LLC; AMC Entertainment Holdings, Inc; EyeCare Partners; EchoStar Corp; Valcour Packaging LLC; and ASP Unifrax Holdings, Inc.

5.      The Committee selected PWP as its investment banker because of PWP's extensive experience, expertise, and knowledge in advising troubled companies, their lenders, and creditor constituencies in connection with chapter 11, out-of-court restructurings and distressed merger and acquisition transactions, as well as its involvement and success in many complex cases.  I believe that PWP will provide substantial value to unsecured creditors in these Chapter 11 Cases.  Accordingly, I understand that the Committee submits this Application because it has deemed it necessary to retain an investment banker to assist in the critical tasks associated with guiding the Committee through the Chapter 11 Cases and maximizing the recoveries of unsecured creditors in these Chapter 11 Cases.

6.      Prior to selecting PWP as the Committee's investment banker, I understand that the Committee interviewed several investment banking firms and reviewed materials submitted by those firms, including PWP. I understand after the interview process, the Committee decided to select PWP as its investment banker, subject to Court approval, based on the Committee's determination that PWP is the best candidate for the services to be provided and that PWP's proposed fee structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of the Chapter 11 Cases.

7.      Pursuant to section 1103(a) of the Bankruptcy Code, an official committee of unsecured creditors or equity holders may retain professional advisors to assist the committee in the chapter 11 case.  In these Chapter 11 Cases, the Committee requires qualified professionals to render these essential investment banking services. As set forth above, PWP has substantial expertise as an investment banker in complex chapter 11 cases and is well qualified to perform these services and to assist the Committee in these Chapter 11 Cases.

### SCOPE OF PWP'S SERVICES

8.      The terms and conditions of the Engagement Letter were negotiated at arm's-length between the Committee and PWP and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.

9.      As stated in the Engagement Letter, subject to the Court's approval, PWP will provide the following services to the Committee, to the extent requested by the Committee or Committee's counsel, in consideration for the compensation set forth in the Engagement Letter:[4]

  i.    Familiarize itself with the business, operations, liquidity situation, assets and liabilities, financial condition and prospects of the Debtors;

  ii.   Review, analyze and report to the Committee and Pachulski Stang Ziehl & Jones LLP, the Committee's proposed counsel ("Committee Counsel"), with respect to the Debtors' financial condition and outlook;

  iii.  Evaluate the Debtors' debt capacity in light of projected cash flows;

  iv.   Review and provide an analysis of any valuation of the Debtors' total enterprise value, the Debtors on an entity by entity basis, the Debtors' various lines of business and/or any of the Debtors' assets;

  v.    Review and provide an analysis of any proposed capital structure for the Debtors on a reorganized going concern basis;

  vi.   Advise and attend meetings with the Committee and Committee Counsel related to the Debtors as well as due diligence meetings with the Debtors or other third parties as appropriate;

  vii.  Advise and assist Committee Counsel's evaluation of the Debtors' near-term liquidity including various financing alternatives;

  viii. Review, analyze and advise the Committee and Committee Counsel with respect to the existing debt structure of the Debtors, and refinancing alternatives to existing debt;

---

[4]     To the extent there is any inconsistency between the summary of the services to be provided set forth in this Declaration and the services set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used but not defined in this summary of services set forth herein have the respective meanings ascribed to them in the Engagement Letter.

ix.     Explore alternative strategies for the Debtors as one or more  stand-alone businesses;

x.      Develop, evaluate and assess the financial issues and options concerning any proposed Transaction (as defined in the Engagement Letter);

xi.     Analyze and explain any Transaction to the Committee and Committee Counsel;

xii.    Review potential M&A alternatives;

xiii.   Evaluate potential bids from prospective purchasers of the Debtors' assets;

xiv.    Assist the Committee and Committee Counsel and participate in negotiations with the Debtors on the Committee's behalf;

xv.     Participate in hearings before the Bankruptcy Court with respect to matters upon which PWP has provided advice and/or analysis, including, as relevant, coordinating with Committee Counsel with respect to any fact or expert testimony in connection therewith; and

xvi.    Provide such other investment banking services in connection with this matter that the Committee and Committee Counsel may from time to time reasonably request and which are customarily provided by investment banks in similar situations.

10.     The foregoing services are necessary to enable the Committee to evaluate the complex financial and economic issues raised by the Chapter 11 Cases, to maximize recoveries for the Debtors' unsecured creditors, and to effectively fulfill its statutory duties.

<u>**NO DUPLICATION OF SERVICES**</u>

11.     PWP will work closely with the Committee and its other advisors in an effort to prevent unnecessary duplication of efforts in the course of advising the Committee.  Rather than resulting in any extra expense to the Debtors' estates, it is anticipated that the efficient coordination of efforts by the Committee's professionals will greatly add to the progress and effective administration of the Chapter 11 Cases.

<u>**PROFESSIONAL COMPENSATION**</u>

12.     Investment bankers such as PWP do not customarily charge for their services on an hourly basis. Instead, they charge a monthly advisory fee plus additional fees contingent on the

occurrence of specified transactions or events.  The Engagement Letter follows this fee structure

and provides that PWP will be compensated for its services as follows, subject to Court approval:[5]

| (a) Monthly Advisory Fee | A monthly financial advisory fee of $175,000 (the "Monthly Fee") for each month of the engagement (prorated for any partial month), due and payable on the first day of each month during the engagement; provided that 50% of each Monthly Fee after six (6) Monthly Fees paid under the Engagement Letter shall (to the extent paid and without duplication) be credited against and subtracted from any Transaction Fee (as defined below). |
|---|---|
| (b) Transaction Fee | A Transaction Fee equal to $4,500,000, payable promptly upon consummation of a Transaction (as defined in the Engagement Letter). |

13.     The Engagement Letter also provides that, in addition to PWP's fees for

professional services, the Debtors will reimburse PWP for its actual, reasonable and documented

out-of-pocket expenses incurred in connection with any of the services provided pursuant to and

in accordance with the Engagement Letter, including, but not limited to, professional and legal

fees, charges and disbursements of PWP's legal counsel, any sales, use or similar taxes (including

additions to such taxes, if any) arising in connection with any matter referred to in the Engagement

Letter, travel and hotel expenses, printing costs, data processing and communication charges,

research expenses and courier and postage services.  The Debtors' obligation to reimburse

expenses incurred by PWP in connection with this engagement will survive the completion or

termination of the engagement.  For the avoidance of doubt, the Debtors shall reimburse PWP for

the reasonable fees and expenses of outside counsel retained by PWP in connection with this

engagement without the need for such legal counsel to be retained as a professional in the Chapter

11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C)

of the Bankruptcy Code.

---

[5]    To the extent there is any inconsistency between the summary of the fee and expense structure set forth in this Declaration and the fee and expense structure described in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used but not defined in this summary of the fee and expense structure set forth herein have the respective meanings ascribed to them in the Engagement Letter.

## **TIMEKEEPING OBLIGATIONS OF PWP**

14.     It is not the general practice of investment banking firms—including PWP—to keep detailed time records similar to those customarily kept by attorneys.  PWP does not ordinarily maintain contemporaneous time records in tenth-hour increments or provide or conform to a schedule of hourly rates for its professionals.

15.     The Committee, therefore, respectfully requests that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, other applicable orders of this Court, or any other guidelines regarding the submission and approval of fee applications, PWP be excused from complying with any such requirements in connection with the services to be rendered pursuant to the Engagement Letter.

16.     Notwithstanding the foregoing, PWP will apply to the Court for the allowance of compensation for services rendered and reimbursement of expenses incurred.  Such applications will include time records setting forth, in summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Committee in one-half (.5) hour increments.  PWP will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above.  PWP's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter in accordance with any related procedures established by the Court. Courts in other large chapter 11 cases in this jurisdiction have excused flat-fee professionals from timekeeping requirements under similar circumstances. *See, e.g.*, *In re Accuride Corporation*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 1, 2024); *In re SunPower Corporation*, No. 24-11649 (CTG) (Bankr. D. Del. Sept. 11, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024); *In re Appgate, Inc.*, No. 24-10956 (CTG)

(Bankr. D. Del. June 13, 2024*); In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. June 5, 2024); *In re Sierra, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Mar. 26, 2024). *In re NanoString Technologies, Inc.*, Case No. 24-10160 (CTG) (Bankr. D. Del. Mar. 15, 2024).

## INDEMNIFICATION OF PWP

17.    As a material part of the consideration for which PWP has agreed to provide the services described herein, Annex A to the Engagement Letter[6] provides for certain indemnification obligations (collectively, the "Indemnification Provisions") of the Debtors to PWP and its affiliates and its and their respective officers, directors, partners, members, employees, consultants and agents and each other person, if any, controlling PWP or any of its affiliates (PWP and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities related to or arising out of or in connection with PWP's engagement or any matter referred to in the Engagement Letter, and the Debtors will reimburse each Indemnified Person for all reasonable and documented expenses (including reasonable and documented fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement Letter, whether or not pending or threatened and whether or not any Indemnified Person is a party; provided, however, that the Debtors will not be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of any Indemnified Person.  In the Engagement Letter, the Debtors and the Committee also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract

---

[6]    To the extent there is any inconsistency between the summary of the indemnification, contribution, or exculpation provisions set forth in this Application and the indemnification, contribution, or exculpation provisions set forth in Annex A to the Engagement Letter, the terms of Annex A to the Engagement Letter shall control.

or tort or otherwise) to the Debtors or the Committee, as applicable, for or in connection with the Engagement Letter, except for any such liability for losses, claims, damages or liabilities incurred by the Debtors or the Committee that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Indemnified Person.

18.     If the indemnification provided for in <u>Annex A</u> to the Engagement Letter is, for any reason, not available to an Indemnified Person or is insufficient to hold an Indemnified Person harmless in respect of any losses, claims, damages or liabilities referred to therein, then, to the extent permitted by applicable law, in lieu of indemnifying such Indemnified Person thereunder, the Debtors shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (a) in such proportion as is appropriate to reflect the relative benefits to PWP, on the one hand, and the Debtors, on the other hand, of the Engagement Letter or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of each of PWP and the Debtors, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall PWP's aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by PWP under the Engagement Letter.[7]

19.     The indemnity, contribution, and other obligations and agreements of the Debtors set forth in <u>Annex A</u> and the Engagement Letter to which it is attached (a) shall apply to any

---

[7]     The Engagement Letter provides that the relative benefits to PWP and the Debtors under the Engagement Letter shall be deemed to be in the same proportion as (i) the fees paid or to be paid to PWP under the Engagement Letter, bears to (ii) the total value paid or contemplated to be paid to or received or contemplated to be received by the Debtors or their stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement Letter, whether or not any such transaction is consummated.

services provided by PWP in connection with the Engagement Letter prior to the date of the Engagement Letter, and (b) shall survive the completion or termination of the engagement.

20.     As described in the Application, I understand that the indemnification, exculpation, and contribution provisions are customary and reasonable terms of consideration for investment bankers such as PWP for engagements both out of court and in chapter 11, and, as modified by the Order, reflect the qualifications and limitations on indemnification provisions that are customary in chapter 11 cases in this district and other jurisdictions. Such provisions, viewed in conjunction with the other terms of PWP's proposed retention, are reasonable and in the best interest of the Committee and unsecured creditors in these Chapter 11 Cases, in light of the fact that the Committee requires PWP's services.  I also understand that similar indemnification provisions have been approved and implemented in other large chapter 11 cases in this jurisdiction. *See, e.g.*, *In re Accuride Corporation*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 1, 2024); *In re SunPower Corporation*, No. 24-11649 (CTG) (Bankr. D. Del. Sept. 11, 2024); *In re Vyaire Med., Inc*., No. 24-11217 (BLS) (Bankr. D. Del. July 30, 2024); *In re Appgate, Inc*., No. 24-10956 (CTG) (Bankr. D. Del. June 13, 2024); *In re Express, Inc*., No. 24-10831 (KBO) (Bankr. D. Del. June 5, 2024); *In re Sientra, Inc*., No. 24-10245 (JTD) (Bankr. D. Del. Mar. 26, 2024); *In re NanoString Technologies, Inc*., Case No. 24-10160 (CTG) (Bankr. D. Del. Mar. 15, 2024).

**PRIOR COMPENSATION RECEIVED BY PWP FROM THE DEBTORS**

21.     Pursuant to section 504 of the Bankruptcy Code, PWP has informed the Committee that there is no agreement or understanding between PWP and another entity or person, other than employees of PWP, for the sharing of compensation received or to be received for services rendered in connection with these Chapter 11 Cases.

## PWP'S DISINTERESTEDNESS

A.     **PWP's Review Protocol**

22.     The following disclosures provide a summary of the Firm's businesses and structure:

> a.     The Firm provides corporate advisory, research and sales services to clients and investors around the world (collectively, the "Clients"). The corporate advisory practice (the "Advisory Practice") provides Clients with M&A advisory services, debt advisory services, capital markets advisory services, restructuring advisory services, private placement services, and underwriting, as applicable which are collectively referred to herein as the "Advisory Services". The Firm does not engage in proprietary sales and trading activities, and as of December 31, 2023, the Firm does not engage in any trading services on behalf of clients. Accordingly, pursuant to U.S. securities law, no material non-public, confidential, and proprietary information concerning the Debtors will be used by the Firm in trading securities. As described more fully below, the Firm also has a research and sales business ("Research"). In addition, a company related to the Firm ("AmCo") provides asset management services offering multiple investment vehicles to Clients (the "Investment Services"). The Advisory Practice encompasses all legal entities within the PWP firm (including affiliated entities) that engage in advisory services globally, including PWP.

> b.     The Firm maintains internal procedures designed to preclude the dissemination of material non-public, confidential, and proprietary information from PWP's principals, partners, members, or professionals (collectively, the "Professionals") who are providing Advisory Services on the one hand, to Professionals providing services for the Firm's other businesses (the "Confidentiality Procedures"). Perella Weinberg Partners Group LP ("PWP Group") is the parent company of PWP, and PWP Group's Global Policies on Use of Confidential Information (the "Information Barrier Policies") apply equally to each subsidiary of PWP Group, including PWP. Pursuant to the Information Barrier Policies, PWP has established and maintains internal information barrier policies and procedures between its Advisory Practice and its other business units. All Professionals, including those individuals directly providing services to the Committee (collectively, the "Deal Team") (i) work in offices that are physically separated from and restricted by key card access to the Investment Services and the Research businesses; (ii) may not directly or indirectly share any material, non-public, confidential and proprietary information generated by, received from or relating to any Advisory Services Clients, including the Committee or these Chapter 11 Cases, with any employees, representatives or agents solely involved in the Investment

Services or Research businesses; and (iii) receive training with respect to the Information Barrier Policies and are required to certify annually that they have read, understood and complied with the Information Barrier Policies. PWP Group's Legal and Compliance Department periodically monitors a sampling of emails (including those of PWP Professionals advising the Committee in these Chapter 11 Cases) for, among other things, compliance with the Information Barrier Policies. The Information Barrier Policies are designed to prevent the sharing of information between Professionals who will directly provide services to the Committee in these Chapter 11 Cases and Professionals of the Investment Services and Research businesses. For the avoidance of doubt, the Professionals directly providing services to the Committee in these Chapter 11 Cases are not involved in any of the activities of the Investment Services or Research businesses.

c.      Notwithstanding the foregoing, the Professionals advising the Committee in these Chapter 11 Cases may share information with (i) certain senior management of the Firm who, due to their duties and responsibilities, have a legitimate need to know such information such as in the case of clearing conflicts for a new matter, provided that such individuals (x) otherwise comply with the Information Barrier Policies described in the previous paragraph of this Declaration and (y) use such information solely in connection with their managerial responsibilities, (ii) regulatory and other similar authorities, and Legal, Compliance, Finance, Accounting, HR and other shared internal control functions within PWP Group that need to know such information for purposes of carrying out their functions. Such information sharing is conducted at all times in accordance with the Information Barrier Policies, which are designed to ensure that use of the information is limited to the narrowly tailored reasons for which it was shared.

d.      In connection with Investment Services, parties related to PWP may currently or in the future serve as general partners for and manage a number of investment vehicles (collectively, the "PWP Funds"). The investors in the PWP Funds invest as limited partners. The limited partners in the PWP Funds will be principally unrelated third parties (and may include Parties in Interest), but also may include affiliates of PWP and various of its Professionals. The investors in the PWP Funds are overwhelmingly outside third-party investors. PWP Professionals, in the aggregate, currently hold less than 2% of the interests in the PWP Funds and the remaining over 98% is held by unrelated third parties. As described below, none of the PWP Professionals directly involved in this engagement are investors in the PWP Funds. Among other things, the PWP Funds may, directly or indirectly, be (i) passive investors in other investment vehicles (the "Investment Funds"), or (ii) active, direct investors in various securities, financial instruments (including options, derivatives, and debt instruments), and businesses or assets (including real estate) (collectively, the "Equity Funds"). It is

possible that companies in which the PWP Funds may, directly or indirectly, own securities, or which the PWP Funds may, directly or indirectly, engage in discussions regarding a possible investment or transaction in connection with the PWP Funds, may have a relationship with the Debtors or otherwise be a Party in Interest. These relationships are unrelated to the services PWP intends to provide in these Chapter 11 Cases. As would be the case with respect to a mutual fund investment, none of PWP, its affiliates, the PWP Funds, or the Deal Team will have any control over the investments made by the Investment Funds in which the PWP Funds are invested, including purchases, sales, and the timing of such activities, nor will they have day-to-day knowledge of investment decisions of the PWP Funds. The historical investments of the PWP Funds are periodically reported in public filings. Typically, such filings disclose the investments of the PWP Funds for the prior quarter. However, such historical investments may have no bearing to the current investments of the PWP Funds. This is because the PWP Funds trade on a day-to-day basis and therefore the historical investments that are reported on a quarterly basis in public filings may differ from the current investments of the PWP Funds. The Professionals directly involved in this engagement have no knowledge of the current investments of the PWP Funds. AmCo maintains investment control over the Equity Funds that could (x) have Parties in Interest as investors, (y) purchase the securities or assets of Parties in Interest, or (z) conduct business with Parties in Interest in the ordinary course of operation. To the best of my knowledge, none of these business relationships constitute or will constitute interests adverse to the Debtors' estates. As described above, the Firm and AmCo maintain Confidentiality Procedures to preclude the dissemination of material non-public, confidential, and proprietary information from its Professionals assigned to these Chapter 11 Cases to the Professionals assigned to the PWP Funds.

e.      PWP is a publicly-traded company (Nasdaq: PWP) and is required to file periodic reports with the SEC. PWP's shares trade on a day-to-day basis, and the Professionals directly involved in this engagement have no knowledge of the current investments of PWP's stockholders or those stockholders' potential connections with any of the Parties in Interest listed on **Schedule 1**.

24.     In connection with its proposed retention by the Committee in these Chapter 11 Cases, PWP reviewed relationships between it and the individuals and entities that PWP has been informed by the Debtors may have an interest in the Chapter 11 Cases (the "Parties in Interest"), and the results of such review are listed on **Schedule 2** annexed hereto. PWP reviewed connections between PWP and the Parties in Interest listed on **Schedule 1**.

25.     Specifically, PWP performed the following research and inquiries to determine whether it, or any of its Professionals, had any present or former connections with Parties in Interest:

a.      Database. PWP searched its databases (consisting of entities for which it has in the recent past been or is currently engaged to provide Advisory Services and entities that are currently or have in the recent past provided goods or services to PWP or its affiliates) against the list of Parties in Interest looking back a period of at least three years.  The results of that search are reflected on **Schedule 2** hereto.  Where PWP's search of its databases identified connections with entities with names similar to names of Parties in Interest, PWP investigated whether such entities were related to such Parties in Interest and, if so, reflected such connection on **Schedule 2** hereto.  PWP has disclosed any known connections to the Parties in Interest.  To the best of my knowledge, no relationships identified in such searches constitute interests adverse to the Debtors' estates with respect to the services to be performed pursuant to the Engagement Letter.

b.      Employee Database. PWP searched its databases of current directorships held by its Professionals against the list of Parties in Interest.  Except as otherwise disclosed herein, PWP's search of directorships indicated no relationship between any such directorships when compared to the Parties in Interest.

c.      Confidentiality Agreements. PWP searched its databases of executed confidentiality agreements with third parties (other than confidentiality agreements with vendors to PWP executed in the ordinary course of business).  To the best of my knowledge, no confidentiality agreement business relationship constitutes an interest adverse to the Debtors' estates with respect to the services to be performed pursuant to the Engagement Letter.

d.      Professionals Inquiry. PWP inquired among Professionals in PWP's Advisory Practice whether they were aware of any actual conflict that would arise as a result of this engagement as investment banker for the Committee, and sought information regarding other potential connections with the Debtors and the Chapter 11 Cases.  This inquiry was in the form of a firm-wide email which sought information regarding any connections or relationships with the Debtors, the Bankruptcy Judges for the District of Delaware, or the United States Trustee or any person employed by the Office of the United States Trustee.  As of December 18, 2024, no person contacted responded with any information regarding any such connections or conflicts.  In addition, PWP made an additional inquiry in the form of an email to the Deal Team, which sought information regarding any known connections or relationships with any of the Parties in Interest.  As of

December 18, 2024, no person contacted responded with any information regarding any such connections or conflicts. PWP will file an amended declaration if any member of the Deal Team responds with any additional information regarding any such connections or conflicts.

e.  <u>PWP Professional Investments</u>. PWP searched its databases of current direct investments held by PWP Professionals in PWP's Advisory Practice against the list of Parties in Interest to identify any known investments by such PWP Professionals in any Parties in Interest. PWP's search of direct investments held by such PWP Professionals indicated investments in the following Parties in Interest and/or their affiliates: Ares; Assurant; Central Garden & Pet Co; CostCo; Evercore; Fidelity; JPMorgan Chase; Lazard; Lowes; Meta; Oaktree; Origin; UnitedHealth; Uber; and UPS. All such investments were in amounts representing less than 0.1% of any issuer and six of such investments were held by PWP Professionals working on the Debtors' Chapter 11 Cases.

**B.    PWP's Disclosures**

26.    Based on the results of PWP's review, to date, to the best of my knowledge, none of myself, PWP, nor any of PWP's Professionals (including the Deal Team members), insofar as I have been able to ascertain based on the procedures employed in PWP's review (i) have any connection with the Debtors, any of the Parties in Interest, or the U.S. Trustee, or any person employed in the Office of the U.S. Trustee, except as disclosed herein, or (ii) represents an interest that is adverse to the interests of the Debtors' estates, with respect to the services to be performed pursuant to the Engagement Letter.

27.    Further, to the best of my knowledge, and based on the results of PWP's review, PWP is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that neither PWP nor any of its Professionals:

a.  are creditors of the Debtors, equity security holders of the Debtors, or "insiders" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code;

b.  are or have been, within two years before the date of the filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtor; and

c.  have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

28.  As part of PWP's diverse business, PWP appears or may appear in cases, proceedings, and transactions involving attorneys, accountants, investment bankers, and financial consultants, some of which may represent claimants and Parties in Interest in the Chapter 11 Cases. Further, PWP (including its Professionals prior to their employment with the Firm) has in the past, and may in the future, be represented by several attorneys and law firms in the legal community, some of whom may be involved in the Chapter 11 Cases.  In addition, PWP (including its Professionals prior to their employment with the Firm) has in the past and will likely in the future be working with or against other professionals involved in the Chapter 11 Cases in matters unrelated to the Chapter 11 Cases.  To the best of my knowledge, none of these relationships relate to the Debtors or the Chapter 11 Cases nor constitute interests adverse to the Debtors' estates with respect to the services to be performed pursuant to the Engagement Letter.

29.  PWP (including its Professionals prior to their employment with the Firm) may have in the past represented, may currently represent, and likely in the future will represent, Parties in Interest in connection with matters unrelated to the Debtors and the Chapter 11 Cases (except as described below).  The parties listed on __**Schedule 2**__ annexed hereto and identified thereon as such have been identified as Clients of PWP's Advisory Services business who are also Parties in Interest.

30.  In addition, PWP makes the following specific disclosures:

a.  Some Professionals have assets managed by financial advisors or hold mutual funds that are managed by third party fund managers.  Neither the Firm nor its Professionals have any control over the investments in such funds, including investment purchases, sales, and the timing of such activities.  Securities of the Debtors or Parties in Interest may be held through the foregoing investments.  In addition, certain Professionals may

hold securities of Parties in Interest or their affiliates in the ordinary course. To the best of my knowledge after reasonable inquiry, none of the Professionals have or hold investments in the Debtors, except as otherwise set forth herein.

b.      The parties listed on **Schedule 2** annexed hereto and identified thereon as such have been identified as Advisory Services Clients who are also Parties in Interest.  As set forth above, the Firm has not conducted (and could not conduct) an inquiry of its Investment Services and Research businesses because of the integrity of the Information Barrier Policies.  Other Advisory Services, Investment Services and Research Clients of PWP may also have a business relationship or potential business relationship with Parties in Interest or their affiliates that have not been made known to the Firm.

c.      As described above, the Firm also operates a Research business.  As part of these regular business operations, such business engages in research and sales activities with institutional clients, some of which may be creditors, equity holders or other Parties in Interest in the Chapter 11 Cases.  Some of these Clients may now or in the future hold debt or equity securities of the Debtors or other Parties in Interest in the Chapter 11 Cases.  In addition, Professionals in the Research business may make statements or investment recommendations or publish reports regarding the Debtors or any other Parties in Interest.  As noted above, such Research Professionals are separated by information barriers from those Professionals advising the Committee in the Chapter 11 Cases.

d.      The Firm has a large and diverse Advisory Practice. Accordingly, PWP and its Professionals may have in the past represented, may currently represent, and may in the future represent, in matters unrelated to the Chapter 11 Cases, numerous entities, some of which may be Parties in Interest and which, from time to time, may invest in securities of the Debtors.  The parties listed on **Schedule 2** annexed hereto and identified thereon as such have been identified as Parties in Interest who are or within the last three years have been Clients of the Firm's Advisory Practice.  PWP has not represented, does not represent, and, if PWP's retention is approved by the Court, will not represent any entity's separate interest in this case.  Moreover, PWP may have in the past represented, may currently represent, and may in the future represent, in matters unrelated to the Chapter 11 Cases, potential Parties in Interest in confidential matters that cannot be publicly disclosed.  Accordingly, PWP does not believe that any relationship it may have with any Party in Interest will interfere with or impair its representation of the Committee in the Chapter 11 Cases.

e.      The Debtors may supply services to or be creditors of one or more companies that may be Clients or in which the PWP Funds may invest.  The Debtors may also purchase goods or services from and be obligors to one or more companies that may be Clients or in which the PWP Funds may

invest.  However, as set forth above PWP has not conducted an inquiry of the Investment Services business or the PWP Funds because of the integrity of the Information Barrier Policies.

f.      The son-in-law of an independent director of PWP is employed by Meta Platforms, Inc., which is a Party in Interest in these Chapter 11 Cases.  To the best of my knowledge, this connection does not constitute an interest adverse to the Debtors' estates with respect to the services to be performed pursuant to the Engagement Letter.

31.      Except as otherwise disclosed herein, PWP has not been retained to assist any entity or person other than the Committee on matters relating to, or in connection with, the Chapter 11 Cases.  If the Court approves the proposed retention and employment of PWP by the Committee, PWP will not accept any engagement or perform any services in relation to the Chapter 11 Cases for any entity or person other than the Committee.  PWP will, however, continue to provide professional services to entities or persons that may be creditors of the Debtors or Parties in Interest in this case or their affiliates; *provided, however*, that such services do not directly relate to, or have any direct connection with, the Debtors and the Chapter 11 Cases.

32.      To the best of my knowledge based on PWP's review, neither PWP nor its Professionals that are to perform the services set forth in the Engagement Letter (i) have any connections with any Parties in Interest except as otherwise set forth herein, or (ii) represent an interest that is materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, with respect to the services to be performed pursuant to the Engagement Letter.

33.      In light of the extensive number of the Debtors' creditors, Parties in Interest, and potential unknown additional parties in interest, neither I nor PWP are able conclusively to identify all potential relationships at this time, and we reserve the right to supplement this disclosure as additional relevant relationships come to our attention.  In particular, among other things, the Firm may have relationships with persons who are beneficial owners of Parties in Interest and persons

whose beneficial owners include Parties in Interest or persons who otherwise have relationships with Parties in Interest.  Moreover, PWP employees may have relationships with Parties in Interest, persons that may become parties in interest in the Chapter 11 Cases, or persons that have business relationships with the Debtors, are competitors of the Debtors, or are customers of the Debtors.  If any new relevant facts or relationships are discovered or arise in the future, PWP will use reasonable efforts to identify such further relevant facts or relationships and will file a supplemental declaration, as required by Bankruptcy Rule 2014.

34.     Based on PWP's review conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (i) PWP is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, (ii) does not hold or represent an interest adverse to the Debtors' estates, and (iii) PWP has no connection to the Debtors, their creditors, or related parties, except as may be disclosed herein.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed on:  December 27, 2024
New York, NY

*/s/ Bruce Mendelsohn*
Bruce Mendelsohn
Partner
Perella Weinberg Partners LP

**Schedule 1**

**Potential Parties in Interest List**

**Franchise Group, Inc.**
**Parties In Interest List**

**Debtor Entities & Related Subsidiaries**
American Freight FFO, LLC
American Freight Franchising, LLC
American Freight Franchisor, LLC
American Freight Group, LLC
American Freight Holdings, LLC
American Freight Management Company,
LLC
American Freight Outlet Stores, LLC
American Freight, LLC
B. Riley Receivables II, LLC
Betancourt Sports Nutrition, LLC
Buddy's Franchising and Licensing LLC
Buddy's New Co, LLC
Educate, Inc.
Franchise Group Acquisition TM, LLC
Franchise Group Intermediate AF, LLC
Franchise Group Intermediate B, LLC
Franchise Group Intermediate BHF LLC
Franchise Group Intermediate Holdco, LLC
Franchise Group Intermediate L, LLC
Franchise Group Intermediate PSP, LLC
Franchise Group Intermediate S, LLC
Franchise Group Intermediate SL, LLC
Franchise Group Intermediate V, LLC
Franchise Group New Holdco, LLC
Franchise Group Newco BHF, LLC
Franchise Group Newco PSP, LLC
Franchise Group Newco S, LLC
Franchise Group Newco SL, LLC
Franchise Group Newco V, LLC
Franchise Group, Inc.
Freedom VCM Holdings, LLC
Freedom VCM Interco Holdings, Inc.
Freedom VCM Interco, Inc.
Freedom VCM Receivables, Inc.
Freedom VCM, Inc.
Home & Appliance Outlet LLC
Pet Supplies "Plus", LLC
PSP Distribution, LLC
PSP Franchising, LLC
PSP Group, LLC
PSP Midco, LLC
PSP Service Newco, LLC

PSP Stores, LLC (Ohio)
PSP Subco, LLC
Valor Acquisition, LLC
Vitamin Shoppe Florida, LLC
Vitamin Shoppe Franchising, LLC
Vitamin Shoppe Global, LLC
Vitamin Shoppe Industries LLC
Vitamin Shoppe Mariner, LLC
Vitamin Shoppe Procurement Services, LLC
W.S. Badcock Corporation
WNW Franchising, LLC
WNW Stores, LLC

**5% or Greater Equity Holders**
B. Riley Private Shares 2023-2 QP, LLC
B. Riley Securities, Inc.
BRF Investments, LLC
Brian Kahn and Lauren Kahn Joint Tenants
by Entirety
Vintage Opportunity Partners, L.P.

**Directors and Officers**
Aaron Granger
Alissa Ahlman
Andrew Kaminsky
Andrew Laudato
Andrew M. Laurence
Anthony Block-Belmonte
Brian Hoke
Bryant R. Riley
Chris Meyer
Christopher Rowland
Daniel McNamara
Eric Seeton
Jacob Jones
Jeff Van Orden
Jeffrey Seghi
Jemma Lawrance
John Hartmann
Kenneth Miles Tedder
Lee Wright
Michael Bennett
Mike Gray
Muriel Gonzalez

Neal Panza
Norman McLeod
Peter Corsa
Philip Etter
Teresa Orth
Tiffany McMillan-McWaters
Todd Arden
Todd Evans

**Administrative and Collateral Agents**
Alter Domus (US) LLC
JPMorgan Chase Bank, N.A.

**Significant Suppliers and Vendors**
A TEAM SALES LLC
Affordable Furniture Mfg Inc
Alani Nutrition
American Agco (ADMC)
Animal Supply Co Lone Star
Animal Supply Co Wholesome
Ashley Furniture Industries Inc
Brodnax Printing Company I, LLC dba
Brodnax 21c Printers
California Pet Partners LLC
Capstone Nutrition
CRAMCO
Crown Mark Imports Inc
DAS LABS LLC
Elytus Ltd
Enterprise FM Trust
Flexport
Florida State Games Inc.
Garden of Life
Generis Tek Inc
GHOST, LLC.
Gorilla Mind
KFM247 LTD
KITH FURNITURE
Korber Supply Chain US, Inc.
LUMISOURCE, LLC
Marcone Appliance Parts Company
Mars Petcare
Media Works, Ltd.
Merrick Pet Foods Inc
Meta Platforms, Inc.
MMXXI Investments LLC

Nutrivo, LLC
ODP BUSINESS SOLUTIONS, LLC
(OFFICE DEPOT)
One Stop Facilities Maintenance Corp
Optimum Nutrition
Origin
Peak Living
Phillips Lansing Facility
Planitretail LLC
Prime Hydration LLC
PRO-FORM LABORATORIES
QUEST NUTRITION, LLC
Raw Sport Supplement Company
REDCON 1
Royal Canin
Ryse Up Sports Nutrition LLC
Seaboard International Forest Products LLC
Sealy Mattress Company
SEMINOLE FURNITURE
STEVE SILVER COMPANY
Uber Freight US LLC
Velosio LLC
VITALITY WORKS, INC
WEX BANK

**Top Unsecured Creditors (as of 10.10.24)**
ALBANY INDUSTRIES INC
Alphia Inc
Aquatic & Reptile - Central Garden & Pet
Arizona Nutritional Supplement
Assurant Inc.
Champion Petfoods USA
Climatic Home Products
COYOTE LOGISTICS
DELTA FURNITURE
Earth Animal Ventures
EHPLABS LLC
Elanco US Inc
ELEMENTS INTERNATIONAL GROUP
LLC
EMA Electrolux/Frigidaire
Force Factor Brands LLC
GE Appliances
GE General Electric-Haier US Appliance
GOOGLE
Hartz Mountain - VMX

Hill's Pet Nutrition
Kong Company
Living Style (Singapore) Pte. Limited
Lowes Companies Inc
M I Industries Inc
Madix Inc
Midwestern Pet Foods
Muebles Briss S.A. De C.V.(Marby)
Natural Balance Pet Foods Inc
Nestle Purina Petcare Company
Open Farm Inc
Order Groove Inc
O'Rourke Bros., Inc.
O'Rourke Sales Company
PEAK LIVING, INC.
Phillips Feed and Pet Supply
Premier Nutrition Company, LLC
Radio Systems Corporation
SEALY MATTRESS MANUFACTURING
COMPANY
Simmons Pet Food Inc
SOLSTICE SLEEP COMPANY
Spectrum Brands Pet LLC
STANDARD FURNITURE MFG CO INC
Stella and Chewys LLC
Surest/UnitedHealthcare Inc.
Titanic Furniture
Transform Holdco LLC (3PL)
UPS (Ocean Freight)
Vitamin Well USA LLC
Wellness Pet LLC
Weruva International Inc
Whirlpool
ZINATEX IMPORTS, INC

**Landlords & Lessors**
103rd STREET 6024, LLC
1210 Morena West LLC
1230 Zion, LLC
1700 Eubank, LLC
1997 GRP Limited Partnership
2151 Highland Partners, LLC
2885 Gender Road, LLC
30X30 34th Street Lubbock Partners, LLC
3200 HWY 13, LLC

4100 Tomlynn Street-Rebkee, LLC and
Tomlynn Street-Fountainhead, LLC
4116 OBT Investments, LLC
425 Broadway RE Holdings LLC & 431
Broadway RE Holdings LLC
4801 Washtenaw LLC
5737-5848 North Elizabeth Street Holdings,
LLC
6001 Powerline, LLC
65 Holmes Investment Partners LLC
6588 LLC
7000 S May Ave, LLC
801 South Ft. Hood, LLC
900-71, LLC
A. Roland Kimbrell Trust
Acorn Ridge Properties LLC, JDM Capital,
LLC, MO Partners LLC, Confluence
Investment LLC
Afreight Holdings, LLC
AJDC 2, LLC
Albany Plaza Shopping Center LLC
Alisan LLC and Roseff LLC
All American Association, LLC and Yvonne
Keff
Allentex, LP
Amerco Real Estate Company
AMG Properties Inc.
Amplify Credit Union
Anderson Plaza, LLC
Arch Village Management Realty LLC
Ares Holdings, L.L.C.
Arizona Mills Mall, LLC
AR-Park Shopping Center, LLC and JSP-
Park Shopping Center, LLC
Atlanta Industrial TT, LLC
B.J. McCord D/B/A McCord Business
Center
B33 Broadview Village LLC
Baldwin Gardens, Inc.
Bane Holdings of Tallahassee, LLC
Banner Partners, LLC
Bardstown S.C., LLC
BC Airport, LLC
Bell-51st, LLC
Belt 98, Inc.
Berryessa Plaza LLC

BG Plaza, LLC
Boatlanding Development Co., Inc.
Bostick Development, L.C.
BRC Hendersonville, LLC
BRE Mariner Venice Shopping Center LLC
BRE Retail NP Festival Centre Owner LLC
Brierwood Village LLC
Brighton Landmark, LLC
Brixmor Holdings 8 SPE, LLC
Brixmor SPE 5 LLC
Brixton Rogue, LLC
Brookhill V Acquisition, LLC
Brooksville Commercial Properties, LLC
and Oak Tree Lane, LLC
Brown Deer Mall, LLC
Bruce Howe Trust
BSW/DMW Properties LLC
Cafaro Leasing Company, LTD.
Candler RD Plaza GA LLC
Cedar Golden Triangle, LLC
Centerpoint 550, LLC
Centerview Plaza, LLC
Central Mall Port Arthur Realty Holding,
LLC
Certified Capital, LP, Horowitz Holdings,
LLC, Asset Acquisitions, LLC, and 3610
Partners, GP
CETA Group Limited Partnership
Chapel Hills Realty LLC, Chapel Hills CH
LLC, and Chapel Hills Nassim LLC
Charleigh Davis and TCCB Properties
Chicago Title & Trust Company, As Trustee
Under Trust Agreement Dated 10/10/1984
and Known as Trust No. 1086065
Chillicothe Shopping Center, LP
Chris McCarty Company, LLC
Cielo Paso Las Tiendas, L.P.
Circle City Property Group Inc.
Citimark Charleston, LLC
CJM Limited Liability Limited Partnership
Clear Creek Brothers - CV, LLC
Clear Lake Center, L.P.
Clendenin Partners
CLPF-Essex Green, LLC
Cobblestone Square Company, Ltd.
ColFin 2015-2 Industrial Owner, LLC

Colony Mills Enterprises, LLC
Combined Properties Limited Partnership
Commercial Properties Associates, LLP
Concord Retail Investment Group, LLC
Core MR Westview, LLC
Costco-Innovel Owner LLC
Costco-Innovel Properties LLC
Creekstone/Juban I, LLC
Crossing Point LLC
Crossroads Centre II, LLC
Crossroads Plaza, LLC
Crossroads Sunset Holdings, LLC
Cuyahoga Investments, LLC
CWP/Arlington LLC
D3 New Albany, LLC
Daniel G. Kamin Wadsworth Enterprises
Daniel P. Hagaman
Danville Riverside Partners, LLC
Daytona Commons, LLC
DCT Presidents Drive LLC
DDR Carolina Pavilion LP
Dennis R. Phillips Revocable Trust
Derby Improvements, LLC
DES 2015, LLC and CJCM, LLC-Series
CV505
Dixie Manor, LLC
Donna M. Rainwater & Larry J. Rainwater
Donna Rainwater Reece, Larry J. Rainwater,
R. Bryan Whitmire and Karla J. Whitmire
Douglas C. Foyt and Trailers for Sale or
Rent, Inc.
Dyn Sycamore Investments, L.L.C.
E & L Investments LLC
E.W. Thompson, Inc.
Eagle Water, LLC
Eagle-North Hills Shopping Centre LP
Eastlake Edison LLC and Eastlake Milford
LLC
Economy Square, Inc.
Ellis Chai LLC
Esue LLC
Ethan Conrad Properties, Inc.
Excel Realty Partners, L.P.
ExchangeRight Value-Add Portfolio 2
Master Lessee, LLC
F.M.K., LLC

Fairview Heights Realty, LLC and Fairview Nassim LLC
Fall River Shopping Center North, LLC
Faye Gross
Fiddler's Run, LLC
Fivel Family, LLC
Fox Jr. Development Inc.
Franklin Mills Associates Limited Partnership
Franklin Towne Plaza LLC
Frayer Enterprises, LLC
Fredric Singer
Front Street Kansas City, LLC
FSC West Covina, LLC
FSH Galleria Plaza, LLC
G&I X Industrial IN LLC
Gamble Brothers, LLC
Gary Mehan, DBA G.M. Properties
Gateway Retail Partner III, LLC
Gateway South, LLC #1
GBUZZ, LLC
GCP Boom, LLC
Giuffre IV, LLC
GKI Industrial Dallas, LLC
Glendale Galleria Center, LLC
GLL BVK Properties, L.P.
Gosula Holdings Ltd.
Gravois Bluffs East 8-A, LLC
Greater Orlando Aviation Authority
Greenfield Plaza LLC
Greenlight Development, LLC
GRH Goodyear LLC, Gaston Holdings LLC, and MRH Venture Capital LLC
Gridley Square Property, LLC
GS Centennial LLC
Gulson Retail LLC
Halltown Farms, LLC
Hankins Real Estate Partnership
Hart & Hart Corp.
Henry Fine Trust
Hidden Hill Road Associates, LLC
High Cotton Palisades, LLC, High Cotton Shoals, LLC and Pharo Palisades I, LLC
Himaloy Taylor LLC
HM Peachtree Corners I LLC
Hogan Holdings 56, LLC

HV Center LLC, HV Center TIC 1 LLC, and HV Center TIC 2 LLC
IH 35 LOOP 340 INVESTORS, LTD.
IH-10 Hayden, Ltd.
Indian Trail Square, LLC
Inland Commercial Real Estate Services LLC
Innovation Realty IN, LLC
Integra CRE, LLC
IRC Park Center Plaza, L.L.C.
Ireland Corner, LLC
Isador Schreiber & Associates, LLC
J & F Gainesville Properties, LLC
J&L Development Company, LLC
Jackson Street Group, LLC
Jeffnan U.S.A. Inc.
JHG Properties, LLC
JMK5 Winchester, LLC
JMW Hebron, LLC
Joe Amato East End Centre, LP
JRF Texas Properties, LLC
JSM Land Group, LLC
Kelley Commercial Realty, LLC and Stephanie D. Kelley
Keyser Oak Investors, LLC
KGI Military LLC
Kin Properties Inc.
Kings Mountain Investments
Kingsport Green AC Managing Company, LLC
Kinsman Investors
Kitty Wells, Inc.
KMD, LLC
KRG Houston Royal Oaks Village II, LLC
KRG Plaza Green, LLC
L.W. Miller Holding Company
Laurie Industries, Inc., Kinpark Associates and Fundamentals Company
LAWRENCE F. KOLB & CATHERINE M. KOLB, TRUSTEES OF THE LAWRENCE F. KOLB AND CATHERINE M. KOLB JLRT U/A/D APRIL 12, 2018 and 2233 & 2235 MO BLVD, LLC
LBD Properties, LLC
LCRF, LLC
LDC Silvertree, LLC

Leland J3, LLC
Leveraged Holdings, L.L.C.
Lexington 2770, LLC
Lichtefeld Development Trust
Lidl US Operations, LLC
Lincoln Associates
LIT-ENVP Limited Partnership
LoLo Enterprises, LLC
Lovell 2.5, LLC
LU Candlers Station Holdings, LLC
Lynch Butler
M3 Ventures, LLC
Macon Center, LLC
Malco T.I.C.
Mall at Potomac Mills, LLC
Marathon Management, LLC
Marc NaperW LLC and NaperW, LLC
MarketFair North, LLC
McRae Mortgage & Investments, LLC
Meditrina Properties, LLC
Melvin C. McClung, Trustee of the Tommie
Louise McClung Family Trust
Menard, Inc.
Merchant 33 LLC
Merchant's Investors, LLC
Meredith, Inc.
Midwest Commercial Funding, LLC
Missouri Boulevard Investment Company,
LLC
Mobile Highway 4500, LLC
Mojack Holdings, LLC
Mongia Capital Michigan, LLC
Moon Village, LLC
Morningside Plaza, L.P.
MR Stealth LLC
Muenchens Unlimited, LLC
NDF III MJ Crossing, LLC
New Bern Development LLC
New Plaza Management, LLC
Newport Crossing Investors, LLC
Niagara Falls 778, LLC
North County Columbia Realty, LLC
Northern McFadden Limited Partnership
Northside Village Conyers, LLC
Northtowne Center Investors, LLC
Oak Forest Group, LTD

Okee Realty Associates, LLC
Old Orchard, LLC
One Home Realty, Inc.
One Land Company, LLC
One Oak Investments, LLC
Osborne Properties Limited Partnership
Oxford Street Huntsville
P & S Axelrod, L.L.C.
P&H Investments, LLC
Pacifica Muskegon, LLC
Parker-Anderson, LLC
Parkway Mall, LLC
PCRIF Spring Park Holdings, LLC
Pensacola Corners LLC
PFIILP - Parr Boulevard, LLC
Pilchers Summit Limited Partnership
Pinellas Park Square, LLC
Piqua Investment Partners, LLC
PK II El Camino North L.P.
Plaza North Shopping Center, LLC
Polk County Partners, LLC
Port St. Lucie Plaza I, II, III, LLC
Prattville Partners, Limited Partnership
Prologis Targeted U.S. Logistics Fund, L.P.
Pullman Square Associates
Rainbow Investment Co.
Randall M. Schulz
Ravi Randal Investment Group, LLC
RE Pecan, LLC
Realty Income Corporation
Regions Bank as Trustee of the Thomas H.
Willings Jr. Family Trust
Repwest Insurance Company
Richard Briggs and John Nathan Briggs, as
Trustees of the Stephanie R. Briggs
Irrevocable Trust dated October 15, 2009;
and Stephanie R. Briggs and John Nathan
Briggs, as Trustees of the Richard M. Briggs
Irrevocable Trust dated October 15, 2009
Ridgewater Commerce LLC
Rini Realty Company
River Oaks Properties, Ltd.
Riverdale Center North, LLC
Riverplace Shopping Center, LLC
Rock N Roll Development, LLC
Rockhill Center, LLC

Rodi Road 501, LLC
Rogers Commercial Properties, LLC
Rose & Rose, LLC
RPI Ridgmar Town Square, Ltd.
RRG LLC
Sabatine BK Development, LLC
Saia Family Limited Partnership
Sarabara Corp.
Sav 15000 Abercorn, LLC
Sears Authorized Hometown Stores, LLC
SEK 7753, LLC
Shrewsbury Village Limited Partnership
Sissel Juliano
SJN Realty Holdings, LLC
Slidell Athletic Club Property, L.L.C.
Somera Road - Athens Georgia II, LLC
South Tulsa Storage, LLC
Southern Hills Center, Ltd.
Southgate Properties, LLC
Southtown Plaza Realty LLC and
Southtown Nassim LLC
Southview Dothan Investors, LLC
Space For Lease of Tennessee
State Road 4201, LLC
Stature High Ridge, LLC
Sterling Equities II, LLC
Stewart & Hamilton Properties, LLC
Stone Mountain Square Shopping
Center, LLC
SVR Investments, LLC
SW 17th Street 1010, LLC
Sylvan Park Apartments, LLC
T.B.R. Property Group, LLC
T18 Investments, LLC
Tanglewood Venture, LLC
TB Garrett Creek, LLC
TBF Group Battle Creek, LLC
TCP Enterprise Parkway, LLC
Tejas Center, LTD.
Tenalok, LLC
Texas Main Street, LLC
The Collins Investment Trust
TKC CCXXXIX, LLC
TKG Colerain Towne Center, LLC
TKG Cranston Development, L.L.C.
TKG Fairhaven Commons, LLC

TLP 4782 Muhlhauser LLC
Tops Holding, LLC
Town Real Estate Enterprises, LLC
Tucson Speedway Square, LLC
Tumon Bay Resort & Spa, LLC
Turfway Baceline, LLC
Two by Two Properties, LLC
Tycer Heirs Separate Property, LLC
University Realty Associates, LLC
US Investments
Victory River Square, LLC
Vishal Kalmia Plaza, LLC
W.H. Warehouse, L.L.C.
Wal-Austin, LLC
Warner Robins Perlmix, LLC
Watson Village Retail, LLC
Waverly Plaza Shopping Center, Inc.
West County Investors, LLC
Weston SCIP 2 LLC
Westphal Leasing, LLC
Westside Village Shopping Center of Rome,
Inc.
WFD Investments, L.L.C.
White Lane, LLC
Whitehall Crossing D, LLC
William Shane Courtney
Woodcrest Akers, LLC
Woodforest Mini-City Partners, LP and
JLCM Partners, LP, TIC
Wylds 1708, LLC
YEK #9, LLC
York Realty Investment, LLC

**Significant Counterparties to Material
Agreements**
CAPTURIS
Engie Resources LLC

**Significant Litigation Matters**
Charles Knight
Health Advocate
Gale et al [Class Action]
Joseph F Gazzo III
Matthew Giffuni
Quadre Investment Advisors LLC
Buddy's Mac Holdings, LLC

**Professionals**
AlixPartners LLP
Davis Polk & Wardwell LLP
Deloitte & Touche LLP
Ducera Partners LLC
Ernst & Young
Evercore LP
Foley & Lardner LLP
Gordon Rees Scully Mansukhani, LLP
Gordon Brothers Asset Advisors, LLC
Grant Thornton LLP
Guggenheim Securities, LLC
Hilco Merchant Resources, LLC
Hilco Real Estate, LLC
Holland & Knight, LLP
Kroll Restructuring Administration LLC
Landis Rath & Cobb LLP
Latham & Watkins LLP
Lazard Group LLC
M3 Advisory Partners, LP
Morris, Nichols, Arsht & Tunnell LLP
Paul Hastings LLP
Paul, Weiss, Rifkind, Whaton & Garrison
LLP
Petrillo Klein & Boxer LLP
Porter Wright Morris & Arthur LLP
Ryan, LLC
Sheppard Mullin Richter & Hampton LLP
Troutman Pepper Hamilton Sanders LLP
White & Case LLP
Willkie Farr & Gallagher LLP
Young Conaway Stargatt & Taylor, LLP

**Other Parties**
BCDC Portfolio Owners LLC
BCHQ Owner LLC
National Retail Properties, LP

**DE - Judges**

Chan, Ashely M.
Dorsey, John T.
Goldblatt, Craig T.
Horan, Thomas M.
Owens, Karen B.
Shannon, Brendan L.
Silverstein, Laurie Selber
Stickles, J. Kate
Walrath, Mary F.

**DE – Office of the United States Trustee**
Andrew R. Vara
Benjamin Hackman
Christine Green
Diane Giordano
Dion Wynn
Edith A. Serrano
Elizabeth Thomas
Fang Bu
Hannah M. McCollum
Holly Dice
James R. O'Malley
Jane Leamy
Jonathan Lipshie
Jonathan Nyaku
Joseph Cudia
Joseph McMahon
Lauren Attix
Linda Casey
Linda Richenderfer
Malcolm M. Bates
Michael Girello
Nyanquoi Jones
Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch
Timothy J. Fox, Jr.

**Schedule 2**

**Results of Conflicts Check**

| Party in Interest | Relationship to Debtors | Relationship to PWP Advisory, Research, Sales Services |
|---|---|---|
| AlixPartners LLP | Professional | Vendor |
| Davis Polk & Wardwell LLP | Professional | Vendor |
| Deloitte & Touche LLP | Professional | Vendor |
| Ernst & Young | Professional | Vendor |
| Fidelity | Agent and Lender | Advisory Client |
| Fidelity Advisor Series I: Fidelity Advisor Floating Rate High Income Fund | Agent and Lender | Vendor |
| Fidelity Floating Rate High Income Fund | Agent and Lender | Vendor |
| Fidelity Floating Rate High Income Multi-Asset Base Fund | Agent and Lender | Vendor |
| Fidelity Inflation-Focused Fund | Agent and Lender | Vendor |
| Fidelity Life Association, A Legal Reserve Life Insurance Company | Agent and Lender | Vendor |
| Fidelity Merrimack Street Trust: Fidelity Total Bond ETF | Agent and Lender | Vendor |
| Fidelity Qualifying Investor Funds - Fidelity US Loan Fund, | Agent and Lender | Vendor |

| Party in Interest | Relationship to Debtors | Relationship to PWP Advisory, Research, Sales Services |
|---|---|---|
| Fidelity Summer Street Trust: Fidelity Series Floating Rate High Income Fund | Agent and Lender | Vendor |
| Google | Unsecured Creditor | Advisory Client |
| Grant Thornton LLP | Professional | Advisory Client; Vendor |
| Guggenheim Securities, LLC | Professional | Advisory Client |
| Holland & Knight, LLP | Professional | Vendor |
| HPS Investment Partners, LLC | Agent and Lender | Advisory Client |
| JNL/Fidelity Institutional Asset Management Total Bond Fund | Agent and Lender | Vendor |
| JPMorgan Chase Bank, N.A. | Agents and Lenders | Vendor |
| JPMorgan Chase Bank, N.A. | Landlord and Lessor | Advisory Client |
| Latham & Watkins LLP | Professional | Vendor |
| Lazard Group LLC | Professional | Advisory Client |
| Oaktree Opportunities Fund XII, LP | Agent and Lender | Advisory Client |
| ODP BUSINESS SOLUTIONS, LLC (OFFICE DEPOT) | Significant Supplier and Vendor | Advisory Client; Vendor |
| Paul Hastings LLP | Professional | Vendor |

| Party in Interest | Relationship to Debtors | Relationship to PWP Advisory, Research, Sales Services |
|---|---|---|
| Paul, Weiss, Rifkind, Wharton & Garrison LLP | Professional | Vendor |
| Troutman Pepper Hamilton Sanders LLP | Professional | Vendor |
| Uber Freight US LLC | Significant Supplier and Vendor | Vendor |
| UPS (Ocean Freight) | Unsecured Creditor | Vendor |
| Whirlpool | Unsecured Creditor | Advisory Client |
| White & Case LLP | Professional | Vendor |
| Willkie Farr & Gallagher LLP | Professional | Vendor |