**Exhibit B**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) Case No. 24-12480 (JTD) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF PERELLA WEINBERG PARTNERS LP
AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, EFFECTIVE AS OF NOVEMBER 26, 2024**

Upon the application (the "Application")[2] of the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Franchise Group, Inc. and its affiliated debtors and debtors in possession (collectively, the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but not defined herein have the meanings set forth in the Application.

"Debtors") for the entry of an order (the "Order") authorizing and approving the Committee to retain and employ Perella Weinberg Partners LP ("PWP") as its investment banker effective as of November 26, 2024, pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Bankruptcy Local Rules for the District of Delaware (the "Local Rules"), all as more fully set forth in the Application; and upon consideration of the Application and the Mendelsohn Declaration; and the Court having jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. § 1408 and § 1409; and the Court having found based on the representations made in the Application and in the Mendelsohn Declaration that PWP's employment is in the best interests of the Committee and unsecured creditors in these Chapter 11 cases, and PWP (a) does not represent, and does not hold, any interest adverse to the Debtors' estates, (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and (c) has no connection to the Debtors, their creditors, or other parties in interest except as may be disclosed in the Mendelsohn Declaration; and this Court having found that notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Committee is authorized pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-2 to retain and employ PWP as its investment banker, effective as of November 26, 2024, in accordance with the Engagement Letter and this Order, to perform the services described in the Engagement Letter.

2. The Engagement Letter, including, without limitation, the fee and expense structure and the Indemnification Provisions, is approved pursuant to section 328(a) of the Bankruptcy Code, and the Debtors are authorized to pay, reimburse, and indemnify PWP in accordance with the terms and conditions of, and at the times specified in, the Engagement Letter, except as modified by this Order. All fees and out-of-pocket expense reimbursements to be paid to PWP, including without limitation the Monthly Fee and the Transaction Fee, shall be subject to Section 328(a) of the Bankruptcy Code, except as set forth herein.

3. Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, PWP shall file applications for the allowance of compensation and reimbursement of expenses pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders and procedures of this Court; provided, however, that (a) PWP shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code, and PWP's fees and expenses shall not be evaluated under the standard set forth in section 330 of the Bankruptcy Code, except that, notwithstanding any provisions to the contrary in this Order, the Application or any of its attachments, the U.S. Trustee shall retain all rights and be entitled to object to PWP's requests for fees and reimbursement of expenses, including those set forth in applications filed

with the Court, based on the reasonableness standard provided in section 330 of the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or objection to PWP's interim and final fee applications pursuant to section 330 of the Bankruptcy Code and (b) PWP and its professionals will submit, with any interim or final fee application, time records setting forth, in summary format, a description of the services rendered by each professional by project category and the amount of time spent on each date by each such individual in rendering services on behalf of the Committee in one-half (.5) hour increments, but shall be excused from keeping time in tenth-hour increments. PWP will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above. PWP's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter in accordance with any related procedures established by the Court. None of the fees payable to PWP shall constitute a "bonus" or fee enhancement under applicable law.

4. If PWP seeks reimbursement for attorneys' fees and expenses pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such attorneys (which may be redacted to protect confidential information and applicable privileges) shall be included in PWP's own fee applications, both interim and final, and such invoices and time records shall be subject to (a) the U.S. Trustee Guidelines and (b) approval by the Court under sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

5. To the extent the Committee and PWP enter into any supplemental engagement letters, the Committee will file any such supplemental engagement letters with the Court and serve the same upon the applicable notice parties. Absent any objection filed within 14 days after the

filing and service of any such supplemental engagement letter, PWP shall be deemed authorized and approved to provide and be compensated for such additional services pursuant to this Order and the terms of such supplemental engagement letter. To the extent any such parties object to such proposed supplemental engagement letter, the Committee will promptly schedule a hearing before the Court within ten (10) days of receipt of any such objection or as soon thereafter as is practicable. All additional services shall be subject to the provisions of this Order.

6. The Committee shall be bound by the indemnification, contribution, reimbursement, exculpation, and other provisions of the Engagement Letter and will indemnify and hold harmless PWP and each other Indemnified Person in accordance with the terms of the Engagement Letter, subject to the following:

   a. No Indemnified Person (as that term is defined in the Engagement Letter) shall be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

   b. Notwithstanding any provision of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person, for any claim or expense to the extent it is: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from the Indemnified Person's gross negligence, willful misconduct, bad faith, breach of fiduciary duty (if any) or self-dealing; (ii) for a contractual dispute in which the Debtors allege breach of the Indemnified Person's obligations to maintain the confidentiality of nonpublic information, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtors' consent prior to a judicial determination as to the Indemnified Person's gross negligence, willful misconduct, bad faith, or unconsented self-dealing, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnification, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order;

   c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan

        in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, an Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, the Indemnified Person must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Person before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by any Indemnified Person for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, the Indemnified Person. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, or reimbursement; and

    d.    In the event that any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the Engagement Letter, the invoices and supporting time records from such attorneys shall be annexed to PWP's own applications, both interim and final, and such invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 and 328 of the Bankruptcy Code.  All parties in interest shall retain the right to object to any application by PWP or an Indemnified Person for indemnification, contribution, or reimbursement.

7.    PWP will review its files periodically during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, PWP will use reasonable efforts to identify such further developments and will file a supplemental declaration, as required by Fed. R. Bankr. P. 2014(a).

8.    Notwithstanding anything to the contrary in the Engagement Letter, the Application or the Mendelsohn Declaration, to the extent that PWP uses the services of independent contractors or subcontractors (collectively, the "Contractors") in these cases, PWP shall (i) pass through the cost of such Contractors to the Debtors at the same rate that PWP pays the Contractors; (ii) seek

reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for PWP; and (iv) file with this Court such disclosures required by Bankruptcy Rule 2014(a) with respect to such Contractors.

9. To the extent this Order is inconsistent with the Engagement Letter, the Application, or the Mendelsohn Declaration, the terms of this Order shall govern.

10. PWP shall use its reasonable efforts to avoid any duplication of services provided by any of the Committee's other retained professionals in the Chapter 11 Cases.

11. The Committee, the Debtors, and PWP are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

12. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

13. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# Exhibit 1

## Engagement Letter



767 Fifth Avenue
New York, NY 10153

T  212.287.3200
F  212.287.3201
pwpartners.com

December 17, 2024

The Official Committee of Unsecured Creditors of Franchise Group, Inc., *et al.*
c/o Pachulski Stang Ziehl & Jones LLP
Attention: Bradford J. Sandler
780 Third Avenue 34th Floor
New York, NY 10017-2024
Email: bsandler@pszjlaw.com

Dear Ladies and Gentlemen:

   This letter agreement ("Agreement") confirms the terms under which Perella Weinberg Partners LP (together with its affiliates, "Perella Weinberg Partners," "we" or "us") will provide investment banking services to the Official Committee of Unsecured Creditors (the "Committee," "Client", or "you"), appointed in the chapter 11 cases (the "Bankruptcy Cases") of Franchise Group, Inc. and its affiliated debtors and debtors in possession, jointly administered under Case No. 24-12480 (collectively, the "Debtors"),[1] which Bankruptcy Cases are pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

   The matters referred to in this letter constitute our "Engagement." This Agreement shall be effective as of November 26, 2024 ("Engagement Date").

   1.  Services to be Rendered.  If requested by you, we shall perform the following investment banking services:

    (a) Familiarize ourselves with the business, operations, liquidity situation, assets and liabilities, financial condition and prospects of the Debtors;

    (b) Review, analyze and report to you and Pachulski Stang Ziehl & Jones LLP, the Committee's proposed counsel ("Counsel"), with respect to the Debtors' financial condition and outlook;

    (c) Evaluate the Debtors' debt capacity in light of its projected cash flows;

---

[1] It is expressly understood and agreed that all references to obligations of the Debtors under the terms of this Agreement, including all attachments hereto, shall be obligations of the Debtors pursuant to the terms of a Retention Order (as defined herein).

(d) Review and provide an analysis of any valuation of the Debtors' total enterprise value, the Debtors on an entity by entity basis, the Debtors' various lines of business and/or any of the Debtors' assets;

(e) Review and provide an analysis of any proposed capital structure for the Debtors on a reorganized going concern basis;

(f) Advise and attend meetings with you and Counsel related to the Debtors as well as due diligence meetings with the Debtors or other third parties as appropriate;

(g) Advise and assist Counsel's evaluation of the Debtors' near-term liquidity including various financing alternatives;

(h) Review, analyze and advise you and Counsel with respect to the existing debt structure of the Debtors, and refinancing alternatives to existing debt;

(i) Explore alternative strategies for the Debtors as one or more stand-alone businesses;

(j) Develop, evaluate and assess the financial issues and options concerning any proposed Transaction (as defined below);

(k) Analyze and explain any Transaction to you and Counsel;

(l) Review potential M&A alternatives;

(m) Evaluate potential bids from prospective purchasers of the Debtors' assets;

(n) Assist you and Counsel and participate in negotiations with the Debtors on your behalf;

(o) Participate in hearings before the Bankruptcy Court with respect to matters upon which Perella Weinberg Partners has provided advice and/or analysis, including, as relevant, coordinating with Counsel with respect to any fact or expert testimony in connection therewith; and

(p) Provide such other investment banking services in connection with this matter that you and Counsel may from time to time reasonably request and which are customarily provided by investment banks in similar situations.

As used herein, the term "Transaction" means the consummation of any of the following, whether through one transaction or a series of transactions:

(i) The confirmation of a chapter 11 plan of reorganization or liquidation for the Debtors (a "Chapter 11 Plan") in connection with the Bankruptcy Cases under title 11 of the United States Code (the "Bankruptcy Code");

(ii) Any merger, consolidation, reorganization, recapitalization, business combination or other transaction pursuant to which the Debtors is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders) (collectively, a "Purchaser");

(iii) The acquisition, directly or indirectly, by a Purchaser (or by one or more persons acting together with a Purchaser pursuant to a written agreement or otherwise) outside the ordinary course of the Debtors' business, in a single transaction or a series of transactions, of (x) all or substantially all of the assets or operations of the Debtors; or (y) all or substantially all of outstanding or newly issued shares of the Debtors' capital stock (or any securities convertible into, or options, warrants or other rights to acquire such capital stock);

(iv) Any other sale, transfer and assumption of all or substantially all of the assets or liabilities of the Debtors (including, without limitation, any consolidation or merger involving the Debtors); and/or

(v) The issuance, whether public or private, of debt and/or equity securities for the Debtors or such other financing of any type raised to complete any transaction, to the extent the proceeds from such financing(s) are used to repay or refinance (in full or in part) the Debtors' unsecured claims.

Notwithstanding anything contained in this Agreement to the contrary, we shall have no responsibility for designing or implementing any initiatives to improve the Debtors' operations, profitability, cash management or liquidity or to provide any fairness, valuation or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities of the Debtors or any other party. We make no representations or warranties about the Debtors' ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Transaction. We are retained under this Agreement solely to provide advice and services regarding the transactions contemplated by this Agreement. Our Engagement does not encompass providing "crises management."

The advisory services and compensation arrangements set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by us at the request of the Client, as the case may be, or any other specific services not set forth in this Agreement. The terms and conditions of such investment banking services, including compensation and arrangements, would be set forth in a separate written agreement between us and the Client, as the case may be.

2. Compensation. As compensation for our services, the Debtors agrees to pay us in cash, by wire transfer of immediately available funds when due, the following fees (individually or collectively, "Fees"):

3

(a) <u>Monthly Advisory Fee</u>.  A monthly advisory fee of $175,000 for each month of the Engagement ("<u>Monthly Fee</u>"), prorated for any partial month, due and payable in advance commencing on the Engagement Date; provided, that an amount equal to 50% of each Monthly Fee after six (6) Monthly Fees paid hereunder shall (to the extent paid and without duplication) be credited against and subtracted from any Transaction Fee (as defined below); plus

(b) <u>Transaction Fee</u>.  A transaction fee (the "<u>Transaction Fee</u>") of $4,500,000, payable promptly upon consummation of such Transaction.

3. <u>Expenses</u>.  In addition to our Fees for professional services, the Debtors will be promptly reimbursed for all of our expenses ("<u>Expenses</u>"), including, but not limited to, professional and legal fees, charges and disbursements of our legal counsel, any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in this letter, travel and hotel expenses, printing costs, data processing and communication charges, research expenses and courier and postage services.  The Debtors' obligation to reimburse Expenses incurred by us in connection with the Engagement will survive confirmation of a Chapter 11 Plan and/or the completion or termination of the Engagement.

4. <u>Payment</u>.  We shall invoice the Debtors for fees and expenses under this Agreement in accordance with the fee procedures ordered by the Bankruptcy Court.  We acknowledge that all Fees and Expenses to be paid under this Agreement will be subject to the Bankruptcy Court's review and approval, and that none of the Committee, its individual members, its counsel or its other advisors will be liable for any such amounts.

The Committee acknowledges that in light of our experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by us in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the market rate for professionals of our stature in the restructuring market generally, the Fees are just and reasonable and fairly compensate us for our services performed hereunder.

5. <u>Indemnification</u>.  The Committee acknowledges and the Debtors shall or shall be deemed to acknowledge that we have been retained hereunder solely as an independent contractor and that nothing in this Agreement or the nature of our services shall be deemed to create a fiduciary or agency relationship between us, the Committee, any member of the Committee, the Debtors or their equity holder(s), employees or creditors.  In order to induce us to accept the Engagement, the Committee agrees to the exculpation provisions, and the Debtors shall or be deemed to agree to the indemnity, exculpation provisions and other matters set forth in Annex A, which forms a part of and is incorporated by reference into the Agreement.  Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations the Debtors set forth in Annex A, the Debtors will notify us in writing thereof (if not previously so notified) and, if requested by us, shall arrange in connection therewith alternative means of providing for the obligations of the Debtors set forth in Annex A, including the

assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case, in an amount and upon terms and conditions reasonably satisfactory to us and the Debtors.  The terms and provisions of this paragraph 5 and of Annex A shall survive the completion or termination of the Engagement.

      6.      <u>Court Approval</u>.  The Committee shall use commercially reasonable efforts to promptly apply to the Bankruptcy Court for the entry of an order approving, pursuant to sections 1103 and 328 of the Bankruptcy Code, (a) this Agreement and (b) Perella Weinberg Partners' retention by the Committee under the terms of this Agreement, subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review, including under section 330 of the Bankruptcy Code.  Perella Weinberg Partners shall have no obligation to provide any services under this Agreement unless Perella Weinberg Partners' retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court that is no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Perella Weinberg Partners in all respects (the "<u>Retention Order</u>").  Perella Weinberg Partners acknowledges that in the event that the Bankruptcy Court approves its retention by the Committee, Perella Weinberg Partners' Fees and Expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and applicable fee and expense guideline orders.  If the Retention Order authorizing the employment of Perella Weinberg Partners is not obtained, or is later reversed, modified or set aside for any reason, Perella Weinberg Partners may terminate this Agreement, and the Debtors' estates shall, to the full extent permitted by law, promptly reimburse Perella Weinberg Partners for all Fees and Expenses due hereunder, including any Fees due or that become due under the Tail Period (as defined below).  The terms of this Section 6 are solely for the benefit of Perella Weinberg Partners, and may be waived, in whole or in part, only by Perella Weinberg Partners.

      7.      <u>Expertise</u>.  The Committee acknowledges and agree that Perella Weinberg Partners' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of our Engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Committee of our services hereunder could not be measured merely by reference to the number of hours to be expended by our professionals in the performance of such services.  The Committee also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of us and our professionals hereunder over the life of the Engagement, and in light of the fact that such commitment may foreclose other opportunities for us and that the actual time and commitment required of us and our professionals to perform their services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.  In addition, given the numerous issues which we may be required to address in the performance of our services hereunder, our commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for our services for engagements of this nature the Committee agrees that all of the fee arrangements specified herein are commercially reasonable.

    8. <u>Information; Cooperation</u>.  In connection with the Engagement, the Committee acknowledges that we will need the cooperation of the Debtors and their professionals to provide us with access to the Debtors' officers, directors, employees, accountants, legal advisors, and other representatives (collectively, "<u>Representatives</u>"), and to furnish us and cause their Representatives to furnish us with such information as we believe appropriate for the Engagement (all such information so furnished, the "<u>Information</u>").  The Committee recognizes and confirms that we (i) will use and rely primarily on the Information and on information available from generally recognized public sources in performing its services without having independently verified the same and (ii) do not assume responsibility for the accuracy or completeness of the Information and such other information.  The Committee acknowledges and agrees that the Debtors and their Representatives will be solely responsible for ensuring that any Information provided by the Debtors and their Representatives, when delivered, will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  The Committee will promptly notify us if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to us.

    9. <u>Work Product</u>.  All documents, materials or information of any kind created by us in connection with the Engagement, including, without limitation, any written reports, memoranda, analyses, work papers or status summaries, whether or not delivered to Counsel or the Committee, are work product (collectively, "<u>Work Product</u>").  All Work Product shall be owned and maintained by us.  The Committee agrees not to use any Work Product except in connection with any transaction contemplated by this Agreement or otherwise within the scope of the Engagement, and not for any other purpose.  Our Work Product may not be relied upon by any other person including, but not limited to, any security holder, the Debtors, or any of their employees or creditors, and may not be used or relied upon for any other purpose.  The Committee may not publicly disclose, summarize, excerpt from or otherwise refer to any Work Product rendered by us, whether formal or informal, without our prior written consent.

    10. <u>Confidentiality</u>.  The Committee may not publicly disclose, summarize, excerpt from or otherwise refer to any advice rendered by us, whether formal or informal, without our prior written consent; provided, however, that the foregoing shall not apply to any advice that becomes publicly available other than as a result of the breach by the Committee of the undertakings hereunder, or that the Committee or the Debtors are required to disclose by judicial or administrative process in connection with any action, suit, proceeding or claim including in connection with the Bankruptcy Cases. The Committee's obligations under this section will survive the completion or termination of the Engagement.

    We will not be providing the Committee with, and the Committee will not look to us for, tax, legal, accounting or other similar advice and we agree that nothing in this Agreement is intended to impose any conditions of confidentiality within the meaning of Section 6111 of the Internal Revenue Code of 1986, as amended, or US Treasury Regulation Section 1.6011-4.  The Committee may disclose to any and all persons, without limitation of any kind, the United States tax treatment (federal, state and local) and tax structure of any transaction and all materials of any kind relating to such tax treatment and tax structure.

11. <u>Termination</u>.  Our services hereunder may be terminated upon thirty (30) days written notice with or without cause by the Committee or by us at any time and without liability or continuing obligation to you or to us.  No termination of our Engagement or this Agreement shall modify or affect (i) the Debtors' obligations to pay the Fees and to pay or reimburse Expenses through the effective date of termination under Sections 2 and 3 of this Agreement, respectively, and (ii) the obligations under paragraphs 4, 5, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, all of which shall survive the termination of our Engagement; <u>provided</u>, <u>however</u>, that in the case of termination by the Committee we shall be entitled to be paid the full amount of our Fees if, during the term or within two years of such termination, (x) any Transaction is effected, or (y) the Debtors agree to a Transaction which is subsequently effected, at any time.

12. <u>Other Perella Weinberg Partners Activities</u>.  Perella Weinberg Partners is a financial services firm engaged directly and through its affiliates in investment banking, financial advisory services, investment management, asset management and other advisory services and sponsors special purpose acquisition vehicles.  The Committee understands and acknowledges that in performing the Engagement we will not be under any duty to disclose to the Committee, or use for the benefit of the Committee, any confidential or non-public information obtained by us or our affiliates in the course of providing services to any other person or engaging in any other transaction (including as principal) or business activities.  In the ordinary course of business activities, Perella Weinberg Partners LP or its affiliates or their respective personnel may at any time hold long or short positions, and may trade or otherwise effect transactions, for its or their own accounts or the accounts of customers, in debt or equity or other securities (or related derivative securities) or financial instruments (including bank loans or other obligations) of the Debtors or any other party to a Transaction or any of their respective affiliates.

13. <u>Governing Law</u>.  All aspects of the relationship created by this Agreement (including Annex A) shall be governed by and construed in accordance with the laws of the State of New York, applicable to agreements made and to be performed entirely in such State.  All actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in the Bankruptcy Court, to whose jurisdiction Perella Weinberg Partners, the Debtors, and the Committee hereby irrevocably submit; provided, that such submission shall not limit the Debtors' or the Committee's rights under the law.  The Committee and Perella Weinberg Partners hereby irrevocably waive any defense or objection to the Bankruptcy Court forum designated above.  The Committee and Perella Weinberg Partners waive all right to trial by jury in any action, suit, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the Engagement or the performance by us of the services contemplated by this Agreement.  As used in this paragraph, the law means all laws, rules, regulations, customs, orders, ordinances, policy and interpretive statements, of any governmental or quasi-governmental agencies, self-regulatory organizations, commissions and other authorities, including the Financial Industry Regulatory Authority ("FINRA") (including rights of customers of broker dealers to arbitrate certain provisions pursuant to FINRA administrative rules).

14. <u>Assignment; Severability</u>.  No party hereto may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other parties, such consent not to be unreasonably withheld.  In the event that any term or provision of this

7

Agreement shall be held to be invalid, void or unenforceable by a court of competent jurisdiction (not subject to further appeal), then the remainder of this Agreement shall not be affected, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

15. <u>Public Announcements</u>.  The Committee acknowledges that we may, at our option and expense and after public announcement of a Transaction, place announcements and advertisements or otherwise publicize such Transaction and our role in it (which may include the reproduction of the Debtors' logo and a hyperlink to the Debtor's website) on our internet website, social media, and in such financial and other newspapers and journals as we may choose, stating that we acted as an investment banker as provided hereunder.

16. <u>Regulation Relating to Client Identification</u>.  Federal law and regulations require financial institutions to obtain, verify and record information that identifies each person with whom they do business prior to doing such business and to provide reasonable notice to such persons that the financial institution is verifying such person's identity.  Accordingly, the Committee will provide us, as necessary and upon request, certain identifying information, including, but not limited to, a government-issued identification number (e.g., a U.S. taxpayer identification number) and certain other information or documents necessary to verify identity, such as certified corporate documentation, partnership agreement or trust instrument.

17. <u>Co-Advisors</u>.  It is understood that (a) no Indemnified Person (as defined herein in <u>Annex A</u>) shall have any responsibility or liability to the Committee, its members, the Debtors, their affiliates or any other party in connection with the advice, opinions or actions of Counsel or any other advisor(s) engaged by the Committee or the Debtors, and (b) no Indemnified Person or any such other advisor shall have any responsibility or liability to each other in connection with the advice or opinions rendered by such party in connection with the Engagement.

18. <u>Limitation on Actions</u>.  No action, regardless of form, arising out of or relating to this Engagement, may be brought by the Committee against us more than one year after the cause of action has accrued.

19. <u>Entire Agreement; Amendments</u>.  This Agreement, including <u>Annex A</u>, constitutes the entire agreement between us and the Committee with respect to the Engagement and supersedes all other oral and written representations, understandings or agreements relating to this Engagement.  No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party and approved by the Bankruptcy Court.

20. <u>Authorization</u>.  The Committee acknowledges its agreement with the terms set forth herein, and acknowledges that it has reviewed and, subject to entry of the Retention Order, agreed to be bound by the terms hereof, and it has all requisite power and authority to enter into this letter agreement on behalf of itself and has been duly and validly authorized to do so, as evidenced by the signatures affixed hereto. Facsimile and electronic signatures shall be deemed original, binding signatures.

      We are delighted to accept the Engagement and look forward to working with you on this assignment. Please confirm your agreement to the foregoing by signing and returning to us the enclosed duplicate of this letter.

      Very truly yours,

      PERELLA WEINBERG PARTNERS LP

      By: */s/ Bruce Mendelsohn*
          Name: Bruce Mendelsohn
          Title: Partner

Agreed and Accepted as of
the date set forth above:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS


By:*/s/ David G. Byrnes, Jr.*
   Name: NNN REIT, LP
   Title: Co-Chair

**Annex A**

The Debtors agrees to indemnify and hold harmless Perella Weinberg Partners and its affiliates and its and their respective officers, directors, partners, members, employees, consultants and agents and each other person, if any, controlling Perella Weinberg Partners or any of its affiliates (Perella Weinberg Partners and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities related to, or arising out of or in connection with our engagement or any matter referred to in this letter (the "Engagement"), and will reimburse each Indemnified Person for all expenses (including fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party; provided, however, that the Debtors will not be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of any Indemnified Person.  Each of the Debtors and Client also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Debtors or Client, as applicable, for or in connection with the Engagement, except for any such liability for losses, claims, damages or liabilities incurred by the Debtors or Client, as applicable, that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Indemnified Person.

The Debtors, or any of its affiliates, will not, without Perella Weinberg Partners' prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification, reimbursement or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto), nor will the Debtors or any of its affiliates participate in or facilitate any such settlement, compromise, consent or termination on behalf of the Debtors' board of directors (or similar governing body) unless such settlement, compromise, consent or termination includes a full release of each Indemnified Person from any and all liabilities arising out of such action, claim, suit, investigation or proceeding.  No Indemnified Person seeking indemnification, reimbursement or contribution under this Annex A will, without the Debtors' prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to in the preceding paragraph.

If the indemnification provided for in the first paragraph of this Annex A is, for any reason not available to an Indemnified Person or is insufficient to hold an Indemnified Person harmless in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, the Debtors shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (a) in such proportion as is appropriate to reflect the relative benefits to Perella Weinberg Partners, on the one hand, and the Debtors, on the other hand, of the Engagement or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of each of Perella Weinberg Partners and the Debtors, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall Perella Weinberg Partners' aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by Perella Weinberg Partners under this letter.  For the purposes of this Annex A, the relative benefits to Perella Weinberg Partners and the Debtors of the Engagement shall be deemed to be in the same proportion as (i) the fees paid or to be paid to Perella Weinberg Partners under this letter, bears to (ii) the total value paid or contemplated to be paid to or received or contemplated to be received by the Debtors or its stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement, whether or not any such transaction is consummated. The indemnity, contribution, and other obligations and agreements of the Debtors set forth in this Annex A and the engagement letter to which it is attached  shall apply to any services provided by Perella Weinberg Partners in connection with this Engagement prior to the date hereof.