**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) Case No. 24-12480 (JTD) |
|  | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) **Related to Docket No. 487** |
|  | ) |
|  | ) **Obj Deadline: 1/3/2025 by 4:00 p.m. (EST)** |
|  | ) |

**LIMITED RESPONSE OF
STAG INDUSTRIAL HOLDINGS, LLC
TO NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN
CONNECTION WITH SALE, AND RESERVATION OF RIGHTS**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

STAG Industrial Holdings, LLC (the "Landlord"),[2] through its undersigned counsel, respectfully submits this limited response and reservation of rights (this "Limited Response") with respect to the Debtors' *Notice of Possible Assumption or Assignment and Cure Costs with Respect to Executory Contracts and Unexpired Leases* [Docket No. 487] (the "Cure Notice") filed by the Debtors on December 20, 2024, and the Motion of the Debtors to sell substantially all of their assets (Docket No. 154) in furtherance of the Debtors' sale of their business or substantially all of their assets (the "Sale"). In support of this Limited Response, the Landlord respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1. While the Landlord does not as a general matter oppose the Sale or the assumption and assignment of the Lease (as defined below), the Landlord files this Limited Response to seek reimbursement of pecuniary losses and to seek clarification as to the treatment of lease reconciliation and indemnification obligations under its Lease with the Debtors. The proposed form of order approving the Sale (Docket No. 498) (the "Proposed Sale Order") conflates cure of defaults with future performance of lease obligations and attempts to insulate the buyer/assignee from having to perform any lease obligations that have arisen prior to the closing of a sale but are not due or payable until later. These obligations are not defaults to be cured under section 365(b) of the Bankruptcy Code. They are obligations for which the buyer or assignee is required to provide adequate assurance of future performance. In addition, because the ultimate assignee will

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the *Order (REVISED) (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief* [Docket No. 444] (the "Bid Procedures Order").

[3] Capitalized terms used but not otherwise defined in this Preliminary Statement have the meaning given to them in the rest of this Limited Response.

2

not be identified until later in the process, the Landlord reserves all of its rights to object to any proposed assumption and assignment of the Lease on adequate assurance or any other grounds.

## BACKGROUND

**General Background.**

2. On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

3. On December 16, 2024, the Court entered the Bid Procedures Order, pursuant to which the Court established procedures for the Sale.

4. On December 20, 2024, the Debtors filed the Cure Notice, which identifies (i) those leases that may be assumed or assumed and assigned to a Successful Bidder and (ii) the Debtors' proposed cure amounts with respect to such leases. The Cure Notice reflects a proposed cure amount of $0 for the Lease (the "Proposed Cure Amount"). As of December 31, 2024, the Landlord does not dispute the Proposed Cure Amount, subject to Landlord's request for reimbursement of pecuniary losses and clarification regarding Accrued Obligations (as defined below), reconciliations and indemnification. The Landlord reserves its right to update its cure claim to the extent the Debtors fail to pay post-petition rent and charges timely.

**The Lease.**

5. Debtor Vitamin Shoppe Procurement Services, LLC (the "Debtor Tenant") and the Landlord are party to that certain nonresidential real property lease, dated as of December 21, 2016 (as amended, restated, supplemented, or otherwise modified from time to time, the "Lease") for the leased premises located at 925 N. 127th Avenue, Avondale, Arizona (the "Premises"). The Premises consists of approximately 186,643 square feet.

6. The Lease is a triple-net lease. The Debtor Tenant is responsible for paying real estate taxes, insurance, signage, and utilities for, and repairing and maintaining the building and the improvements on the Premises. *See Lease*, Basic Lease Provisions, Sections 6, 7, 8, 9, 11, 12 and 13.

7. By the terms of the Lease, the Debtor Tenant has agreed to indemnify and hold harmless the Landlord on account of claims and losses, including environmental, associated with the Premises. *See id*. §§ 18, 30(d).

8. The Lease provides that the Debtor Tenant will indemnify the Landlord for any attorney's fees incurred arising from or due to any act or omission of Debtor Tenant and in the event of litigation the Landlord is entitled to attorney's fees and costs to the extent it is a prevailing party. *See id*. §§ 18(a), 35(n).

9. In the Cure Notice at Line 121806512, the Debtors misidentify the Lease as being dated May 1, 2017 (instead of December 21, 2016). The reference in that line item is to the Commencement Date Agreement and not the Lease itself and should be corrected. In addition, starting at line item 121806514, the Cure Notice lists five other contracts with Stag Industrial, Inc. that the Landlord cannot identify as follows (the "Unidentified Contracts"):

  a. Lease dated 10/1/2021 as amended with STAG Industrial, Inc. (LDI Lease #66206-1 Avondale)
  b. Lease dated 11/10/2020 as amended with STAG Industrial, Inc. (Avondale – Locus Robotics)
  c. Lease dated 11/25/2020, as amended with STAG Industrial, Inc. (HYG Eq5)
  d. Leased dated 1/1/2024, as amended with STAG Industrial, Inc. (Raymond West – 8765242)
  e. Lease dated 7/2/2023, as amended with STAG Industrial, Inc. (Raymond West Lease)

10. The Landlord requests that the Debtors provide copies of these Unidentified Contracts and amend the Cure Notice to correctly identify the Lease.

**LIMITED RESPONSE**

**Pecuniary Losses.**

11. To the extent the Lease is assumed or assumed and assigned, the Landlord is entitled to reimbursement of actual pecuniary losses in the form of attorney's fees. *See* 11 U.S.C. § 365(b)(1)(B); *see also, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448–49 (2007) (holding that "an otherwise enforceable contract allocating attorney's fees . . . is allowable in bankruptcy except where the Bankruptcy Code provides otherwise"); *In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993) ("Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties.") (collecting cases); *In re Williams*, Case No. 10-11108 BLS, 2011 WL 2533046, at *1 (Bankr. D. Del. June 24, 2011) ("It is beyond cavil that attorneys' fees incurred because of actions taken to enforce the underlying lease or contract may be properly recoverable as part of a cure payment if such lease or contract provides for attorneys' fees."); *In re Beltway Med., Inc.*, 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) ("Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorney's fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation."); *In re Ent., Inc.*, 223 B.R. 141, 152–54 (Bankr. N.D. Ill. 1998) (interest and attorneys' fees must be paid as provided for in the assumed lease).

12. Aggregate attorney's fees and costs incurred by the Landlord in these chapter 11 cases are at least approximately $6,000.00 as of December 31, 2024.

**Ongoing Lease Reconciliation and Indemnification Obligations.**

13. The Proposed Sale Order conflates cure and future performance in an attempt to insulate the buyer/assignee from performing ongoing lease obligations. Specifically, the Proposed Sale Order provides that (i) the assignment to the Buyer of the Lease will not subject the Buyer to any liability whatsoever which may become due or owing under the Lease prior to the Closing Date (Par. 11), (ii) the assignment of the Lease is free and clear of Interests (which includes Claims) (Par 21), (iii) all obligations under the Lease arising or accruing prior to the Closing Date shall be considered cured (Par. 23), and (iv) upon payment of the Cure Costs, no obligations arising prior to the Closing Date shall exist and the Landlord will be barred from enforcing the Lease for acts or occurrences arising prior to the Closing Date or asserting a claim for indemnification (Par. 25). Lease obligations that arise pre-closing, but are not due for payment or performance until post-closing, are not defaults that are required to be cured as a condition to assumption under section 365(b) of the Bankruptcy Code. Instead, they are ongoing obligations to be performed by the Debtor Tenant after assumption or any assignee after assumption and assignment of the Lease.

14. Pursuant to sections 365(b)(1) and (f)(2)(B) of title 11 of the Bankruptcy Code, a debtor may assume or assume and assign a lease only if "adequate assurance of future performance by the [debtor or] assignee of such . . . lease is provided . . . ." Adequate assurance also includes assurance of an assignee's ability to continue to perform monetary and non-monetary obligations under the Master Lease. *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (section 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed).

15. It is well-settled that such contracts must be assumed or rejected in their entirety with all the benefits and burdens. Bankruptcy courts have described the assumption of an unexpired lease (a prerequisite to assignment under § 365(f)(2)(A)) as "an all-or-nothing

proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003); *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). *See also Anytime Fitness v. Thornhill Bros. Fitness, L.L.C. (In re Thornhill Brothers Fitness, L.L.C.)*, 85 F.4th 321, 326 (5th Cir. 2023) ("[a] debtor cannot use § 365 to create a different deal than one it had originally.").

16. In this case, the court should not permit the Debtor Tenant or any assignee to hide behind the language in a sale order to avoid having to pay real estate taxes, utilities, insurance and other costs related to the occupancy of the Premises, or to avoid having to perform non-monetary repair and maintenance obligations, based on an argument that such obligations may have arisen or be attributable to a period prior to the Closing Date, although they will become due or payable after the closing. By assuming and/or taking assignment of the Lease, the Debtor Tenant or any assignee continues or steps into the shoes of the Debtor Tenant under the Lease with whatever obligations, duties and rights the Debtor Tenant has thereunder.

17. Any order of the Court approving the assumption or assumption and assignment of the Lease should expressly state that the Debtor Tenant or, if the Lease is assigned, the assignee(s) shall continue to be liable for the payment and performance of all obligations under the Lease that become due for payment or performance from and after the date of assumption or the closing of the Sale, including, without limitation, any real estate taxes, utilities, insurance and repair and maintenance obligations, rent-true up amounts, and other reconciliations that may later be billed by the Landlord, regardless of whether such obligations arose or are attributable to the period prior to the closing of the sale (the "Accrued Obligations"). It is up to the Debtors and, if the Lease is assigned, the assignee(s), and not the Landlord, to make whatever adjustments to the purchase

price are needed to reflect the allocation as between them of these ongoing responsibilities for payment and performance of Accrued Obligations. The fact that the Debtor Tenant is attempting to assign the Lease to a buyer or will be assuming the Lease should not give the Debtor Tenant or assignee a free pass for Accrued Obligations thereunder.

18.     Similarly, the Lease provides that the Debtors must indemnify and hold harmless or save the Landlord from and against any losses or claims arising out of or related to, *inter alia*, environmental laws, hazardous materials, remediation, personal injury, and property damage. Accordingly, any order approving the assumption or assumption and assignment of the Lease should expressly state that the Debtors, or if the Lease is assigned, the assignee(s) will remain liable to pay and perform any and all indemnification obligations as, and when, they become due and payable under the Lease, regardless of whether they arose or are attributable to the period prior to the assumption or the closing of the sale.

## RESERVATION OF RIGHTS

19.     As of the date hereof, the Debtors have not identified any potential assignee of the Lease or provided any adequate assurance information. Bankruptcy Code section 365(b)(1)(C) provides that a debtor may assume or assume and assign a lease only if "adequate assurance of future performance" is provided.  The Landlord expressly reserves the right to object on adequate assurance of future performance grounds with respect to the Debtors or any potential assignee.

20.     The Landlord reserves its right to supplement this Limited Response with additional lease obligations that may arise or become due under the Lease, or become known to the Landlord prior to the effective date of any assumption or assignment of the Lease, or are not paid timely post-petition and prior to the effective date of any Lease assumption or assignment. Nothing herein shall be interpreted as consent by the Landlord to the assumption or assignment of

the Lease. All of the Landlord's objections and defenses to any request by the Debtors to assume or assume and assign the Lease are expressly preserved.

## **JOINDER**

21. In addition to the foregoing, the Landlord further joins in the other objections filed by parties in interest to the Cure Notice, the Sale, any asset purchase agreement, and any proposed form of sale order to the extent that such objections are not inconsistent with the relief requested in this Limited Response (or any subsequent resolution of this Limited Response).

**WHEREFORE**, the Landlord respectfully requests that the Court: (i) award and direct the reimbursement to the Landlord of at least, approximately, $6,000.00 in attorneys' fees, and expenses incurred through December 31, 2024 (plus any additional attorneys' fees, expenses, and costs incurred thereafter), as pecuniary losses reimbursable under the terms of the Lease and section 365(b)(1)(B); (ii) require the Debtors and any proposed assignee(s) of the Lease to demonstrate adequate assurance of future performance under section 365(b)(1)(C) of the Bankruptcy Code; (iii) include in any assumption or sale order appropriate reconciliation and indemnification protections as requested herein; and (iv) grant to the Landlord such other and further relief as this Court deems just and proper.

Dated: January 2, 2025　　　　　　　　RESPECTFULLY SUBMITTED,

　　　　　　　　　　　　　　　　　　/s/ *Karen C. Bifferato*
　　　　　　　　　　　　　　　　　　Karen C. Bifferato, Esq. (DE 3279)
　　　　　　　　　　　　　　　　　　**CONNOLLY GALLAGHER LLP**
　　　　　　　　　　　　　　　　　　1201 North Market Street, 20th Floor
　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　Telephone: (302) 757-7300
　　　　　　　　　　　　　　　　　　Email: kbifferato@connollygallagher.com

　　　　　　　　　　　　　　　　　　- and -

　　　　　　　　　　　　　　　　　　Douglas B. Rosner, Esq. (*pro hac vice* pending)
　　　　　　　　　　　　　　　　　　**GOULSTON & STORRS PC**
　　　　　　　　　　　　　　　　　　One Post Office Square
　　　　　　　　　　　　　　　　　　Boston, MA 02109
　　　　　　　　　　　　　　　　　　Telephone: (617) 482-1776
　　　　　　　　　　　　　　　　　　Email: drosner@goulstonstorrs.com

　　　　　　　　　　　　　　　　　　*Counsel to STAG Industrial Holdings, LLC*