## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) Case No. 24-12480 (JTD) |
| | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) Related to Docket No. 487 |
| Debtors. | ) |
| | ) Obj. Deadline: 1/3/2025 by 4:00 p.m. EST |

## LIMITED RESPONSE OF
## GARDEN CITY OWNER LLC AND REDSTONE OPERATING LIMITED PARTNERSHIP TO NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT AND CURE COSTS WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE, AND RESERVATION OF RIGHTS

Garden City Owner LLC (the "Garden City Landlord") and Redstone Operating Limited Partnership (the "Redstone Landlord" and, collectively with the Garden City Landlord, the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

"Landlords"),[2] through their undersigned counsel, respectfully submit this limited response and reservation of rights (this "Limited Response") with respect to the Debtors' *Notice of Possible Assumption or Assignment and Cure Costs with Respect to Executory Contracts and Unexpired Leases* [Docket No. 487] (the "Cure Notice"), filed by the Debtors on December 20, 2024, and the Motion of the Debtors to sell substantially all of their assets (Docket No. 154) in furtherance of the Debtors' sale of their business or substantially all of their assets (the "Sale"). In support of this Limited Response, the Landlords respectfully state as follows:

## PRELIMINARY STATEMENT[3]

1. While the Landlords do not as a general matter oppose the Sale or the assumption and assignment of their Leases, the Landlords file this Limited Response to assert their cure claims, seek reimbursement of pecuniary losses and to seek clarification as to the treatment of lease reconciliation and indemnification obligations under its Leases with the Debtors. The proposed form of order approving the Sale (Docket No. 498) (the "Proposed Sale Order") conflates cure of defaults with future performance of lease obligations and attempts to insulate the buyer/assignee from having to perform any lease obligations that have arisen prior to the closing of a sale but are not due or payable until later. These obligations are not defaults to be cured under section 365(b) of the Bankruptcy Code. They are obligations for which the buyer or assignee is required to provide adequate assurance of future performance (under the heightened standard for shopping centers). In addition, because the ultimate assignee will not be identified until later in the process, the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the *Order (REVISED) (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief* [Docket No. 444] (the "Bid Procedures Order").

[3] Capitalized terms used but not otherwise defined in this Preliminary Statement have the meaning given to them in the rest of this Limited Response.

Landlords reserve all of their rights to object to any proposed assumption and assignment of the Leases on adequate assurance or any other grounds.

## BACKGROUND

**General Background.**

2. On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

3. On December 16, 2024, the Court entered the Bid Procedures Order, pursuant to which the Court established procedures for the Sale.

4. On December 20, 2024, the Debtors filed the Cure Notice, which identifies (i) those leases that may be assumed or assumed and assigned to a Successful Bidder and (ii) the Debtors' proposed cure amounts with respect to such leases. The Cure Notice reflects a proposed cure amount of $0 for each of the Leases (the "Proposed Cure Amount"). As of December 31, 2024, the Redstone Landlord does not dispute the Proposed Cure Amount and as set forth below the Garden City Landlord does not agree with the Debtors' Proposed Cure Amount,, provided, that, for both Leases the Landlords' positions are subject to their request for reimbursement of pecuniary losses and clarification regarding Accrued Obligations (as defined below), reconciliations and indemnification.

**The Leases.**

    a. **Cranston, RI.**

5. Debtor PSP Stores LLC (the "Debtor Tenant") and Garden City Landlord are party to that certain nonresidential real property lease, dated as of August 8, 1994 (as amended, restated,

supplemented, or otherwise modified from time to time, the "Garden City Lease") for the leased premises located at Garden City Center in Cranston, Rhode Island (the "Garden City Premises").

6. Under the Garden City Lease, the Debtor Tenant is responsible for, *inter alia*, paying real estate taxes, common area maintenance, insurance, and utilities for, and to repair, the Garden City Premises. *See* Garden City Lease, Sections 5, 6 and 14.

7. By the terms of the Garden City Lease, the Debtor Tenant has agreed to indemnify and hold harmless the Garden City Landlord on account of claims and losses associated with the Garden City Premises. *See id*. §7(g).

8. The Garden City Lease provides that in the event of a default by the Debtor Tenant the Garden City Landlord is entitled to attorney's fees and costs. *See id*. §15. The Garden City Landlord is further entitled to reimbursement of attorney's fees and costs in connection with any assignment of the Garden City Lease. *See id*. §21(c)(6).

9. The Garden City Lease contains a detailed use restriction, including to limit the use of the Premises to a "pet supply store" with an express prohibition against livestock and fresh water fish. *See id*. §7(a).

    **b. Stoneham, MA.**

10. The Debtor Tenant and Redstone Landlord are party to that certain nonresidential real property lease, dated as of June 24, 2009 (as assumed, assigned, amended, restated, supplemented, or otherwise modified from time to time, the "Redstone Lease") for the leased premises located at Redstone Shopping Center, Stoneham, Massachusetts (the "Redstone Premises").

11.     The Redstone Lease is a triple-net lease. The Debtor Tenant is responsible for paying real estate taxes, insurance, and utilities for, and repairing and maintaining the building and the improvements on, the Redstone Premises. *See* Redstone Lease, Articles VII and VIII.

12.     By the terms of the Redstone Lease, the Debtor Tenant has agreed to indemnify the Redstone Landlord on account of claims and losses, including environmental, associated with the Redstone Premises. *See id.* Article XIII, §13..

13.     The Redstone Lease provides that in the event of a bankruptcy or insolvency or in the event of litigation the Redstone Landlord is entitled to attorney's fees and costs. *See id*. ArticleXVIII, §18.1.

14.     The Redstone Lease contains a detailed use restriction, including to limit the use of the Premises to a "first-class, high quality, prototypical" pet super store for the retail sale and display of pet supplies and small animals, including fish and birds (but not cats and dogs), and grooming services for cats and dogs with an express prohibition against livestock and fresh water fish. *See id*. § 1.1(h) and Article 10.

15.     Each Lease is a lease "of real property in a shopping center" within the meaning of section 365(b)(3) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086–87 (3d Cir. 1990).

## <u>LIMITED RESPONSE</u>

**Cure Objection.**

16.     The Cure Notice identifies the Leases as ones to be assumed or assumed and assigned and designates the "Cure" for both as $0.00. The Proposed Cure Amount for the Garden City Lease is incorrect and should be at least $8,596.16 (plus pecuniary losses) as of December 31, 2024. Specifically, the amounts past due under the Garden City Lease as of December 31, 2024, are:

| 7/1/23-12/31/23 SEWER USAGE | $626.27 |
|---|---|
| 2023 CAM | $7,969.89 |

The Debtors should, be directed to cure this amount as a condition to assumption of the Garden City Lease. The Landlords reserve their right to update their cure claims to the extent the Debtors fail to pay post-petition rent and charges timely.

**Pecuniary Losses.**

17. To the extent the Leases are assumed or assumed and assigned, the Landlords are entitled to reimbursement of actual pecuniary losses in the form of attorney's fees. *See* 11 U.S.C. § 365(b)(1)(B); *see also, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448–49 (2007) (holding that "an otherwise enforceable contract allocating attorney's fees . . . is allowable in bankruptcy except where the Bankruptcy Code provides otherwise"); *In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993) ("Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties.") (collecting cases); *In re Williams*, Case No. 10-11108 BLS, 2011 WL 2533046, at *1 (Bankr. D. Del. June 24, 2011) ("It is beyond cavil that attorneys' fees incurred because of actions taken to enforce the underlying lease or contract may be properly recoverable as part of a cure payment if such lease or contract provides for attorneys' fees."); *In re Beltway Med., Inc.*, 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) ("Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorney's fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation."); *In re*

*Ent., Inc.*, 223 B.R. 141, 152–54 (Bankr. N.D. Ill. 1998) (interest and attorneys' fees must be paid as provided for in the assumed lease).

18. Aggregate attorney's fees and costs incurred by the Landlords in these chapter 11 cases are at least approximately $8,000.00 as of December 31, 2024.

**Ongoing Lease Reconciliation and Indemnification Obligations.**

19. The Proposed Sale Order conflates cure and future performance in an attempt to insulate the buyer/assignee from performing ongoing lease obligations. Specifically, the Proposed Sale Order provides that (i) the assignment to the Buyer of the Lease will not subject the Buyer to any liability whatsoever which may become due or owing under the Lease prior to the Closing Date (Par. 11), (ii) the assignment of the Lease is free and clear of Interests (which includes Claims) (Par 21), (iii) all obligations under the Lease arising or accruing prior to the Closing Date shall be considered cured (Par. 23), and (iv) upon payment of the Cure Costs, no obligations arising prior to the Closing Date shall exist and the Landlord will be barred from enforcing the Lease for acts or occurrences arising prior to the Closing Date or asserting a claim for indemnification (Par. 25). Lease obligations that arise pre-closing, but are not due for payment or performance until post-closing, are not defaults that are required to be cured as a condition to assumption under section 365(b) of the Bankruptcy Code. Instead, they are ongoing obligations to be performed by the Debtor Tenant after assumption or any assignee after assumption and assignment of the Leases.

20. Pursuant to sections 365(b)(1) and (f)(2)(B) of title 11 of the Bankruptcy Code, a debtor may assume or assume and assign a lease only if "adequate assurance of future performance by the [debtor or] assignee of such . . . lease is provided . . . ." Adequate assurance also includes assurance of an assignee's ability to continue to perform monetary and non-monetary obligations under the Master Lease. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996)

(section 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed).

21. It is well-settled that such contracts must be assumed or rejected in their entirety with all the benefits and burdens. Bankruptcy courts have described the assumption of an unexpired lease (a prerequisite to assignment under § 365(f)(2)(A)) as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003); *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). *See also Anytime Fitness v. Thornhill Bros. Fitness, L.L.C. (In re Thornhill Brothers Fitness, L.L.C.)*, 85 F.4th 321, 326 (5th Cir. 2023) ("[a] debtor cannot use § 365 to create a different deal than one it had originally.").

22. In this case, the court should not permit the Debtor Tenant or any assignee to hide behind the language in a sale order to avoid having to pay real estate taxes, utilities, insurance and other costs related to the occupancy of the Garden City or Redstone Premises, or to avoid having to perform non-monetary repair and maintenance obligations, based on an argument that such obligations may have arisen or be attributable to a period prior to the Closing Date, although they will become due or payable after the closing. By assuming and/or taking assignment of the Leases, the Debtor Tenant or any assignee continues or steps into the shoes of the Debtor Tenant under the Leases with whatever obligations, duties and rights the Debtor Tenant has thereunder.

23. Any order of the Court approving the assumption or assumption and assignment of the Leases should expressly state that the Debtor Tenant or, if the Leases are assigned, the assignee(s) shall continue to be liable for the payment and performance of all obligations under the Leases that become due for payment or performance from and after the date of assumption or

the closing of the Sale, including, without limitation, percentage rent for the current lease year, any real estate taxes, utilities, insurance and repair and maintenance obligations, rent-true up amounts, and other reconciliations that may later be billed by the Landlords, regardless of whether such obligations arose or are attributable to the period prior to the closing of the sale (the "**Accrued Obligations**"). It is up to the Debtors and, if the Leases are assigned, the assignee(s), and not the Landlords, to make whatever adjustments to the purchase price are needed to reflect the allocation as between them of these ongoing responsibilities for payment and performance of Accrued Obligations. The fact that the Debtor Tenant is attempting to assign the Leases to a buyer or will be assuming the Leases should not give the Debtor Tenant or assignee a free pas for Accrued Obligations thereunder.

24. Similarly, the Leases provide that the Debtors must indemnify and hold harmless or save the Landlords from and against any losses or claims arising out of or related to, *inter alia*, environmental laws, hazardous materials, remediation, personal injury, and property damage. Accordingly, any order approving the assumption or assumption and assignment of the Leases should expressly state that the Debtors, or if the Leases are assigned, the assignee(s) will remain liable to pay and perform any and all indemnification obligations as, and when, they become due and payable under the Leases, regardless of whether they arose or are attributable to the period prior to the assumption or the closing of the sale.

## **RESERVATION OF RIGHTS**

25. As of the date hereof, the Debtors have not identified any potential assignee of the Leases. The Landlords expressly reserve the right to object on adequate assurance of future performance grounds with respect to any potential buyer or potential assignee (including the Debtors if the Lease is assumed but not assigned).

26.     The Leases are shopping center leases and therefore entitled to heightened adequate assurance requirements under section 365(b)(3) of the Bankruptcy Code. Bankruptcy Code sections 365(b)(1)(C) and (f)(2)(B) provide that a debtor may assume or assume and assign a lease only if "adequate assurance of future performance" is provided. Under section 365(b)(3), adequate assurance of future performance under a shopping center lease includes adequate assurance –

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption and assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

27.     To date, no adequate assurance information has been provided. At a minimum, the Landlords are entitled to financial projections, confirmation of the intended use of the leases Premises and confirmation that sale volumes and percentage rent payable under the Leases will remain consistent with (or be better than) historical performance. The Landlords expressly reserve the right to object on adequate assurance of future performance grounds with respect to the Debtors or any potential assignee.

28.     The Landlords reserve their rights to supplement this Limited Response with additional lease obligations that may arise or become due under the Leases, or become known to

the Landlords prior to the effective date of any assumption or assignment of the Leases. Nothing herein shall be interpreted as consent by the Landlords to the assumption or assignment of the Leases. All of the Landlords' objections and defenses to any request by the Debtors to assume or assume and assign the Leases are expressly preserved.

## JOINDER

29. In addition to the foregoing, the Landlords further join in the other objections filed by parties in interest to the Cure Notice, the Sale, any asset purchase agreement, and any proposed form of sale order to the extent that such objections are not inconsistent with the relief requested in this Limited Response (or any subsequent resolution of this Limited Response).

**WHEREFORE**, the Landlords respectfully requests that the Court: (i) direct the Debtors to pay the cure amount owed under the Garden City Lease as a condition to assumption or assumption and assignment (subject to the Debtors remaining current through the effective date of the Lease assumptions and any assignment); (ii) award and direct the reimbursement to the Landlords of at least, approximately, $8,000.00 in attorneys' fees, and expenses incurred through December 31, 2024 (plus any additional attorneys' fees, expenses, and costs incurred thereafter), as pecuniary losses reimbursable under the terms of the Leases and section 365(b)(1)(B); (iii) require the Debtors and any proposed assignee(s) of the Leases to demonstrate adequate assurance of future performance under section 365(b)(3) of the Bankruptcy Code; (iii) include in any assumption or sale order appropriate reconciliation and indemnification protections as requested herein; and (iv) grant to the Landlords such other and further relief as this Court deems just and proper.

Dated: January 2, 2025

RESPECTFULLY SUBMITTED,

*/s/ Karen C. Bifferato*
Karen C. Bifferato, Esq. (DE 3279)
**CONNOLLY GALLAGHER LLP**
1201 North Market Street, 20th Floor
Wilmington, DE 19801
Telephone: (302) 757-7300
Email: kbifferato@connollygallagher.com

- and -

Douglas B. Rosner, Esq. (*pro hac vice* pending)
**GOULSTON & STORRS PC**
One Post Office Square
Boston, MA 02109
Telephone: (617) 482-1776
Email: drosner@goulstonstorrs.com
          tdias@goulstonstorrs.com

*Counsel to the Landlords*