## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: February 13, 2025, at 10:00 a.m. (ET) |
| | Objection Deadline: January 3, 2025, at 4:00 p.m. (ET) |
| | **Re: Docket No. 154** |

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES WITH RESPECT TO THE DEBTORS' MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) SCHEDULING AN AUCTION AND A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (D) GRANTING RELATED RELIEF; AND (II) (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Indemnity Insurance Company-North America, Federal Insurance Company, Westchester Surplus Lines Insurance Company, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, Pacific Employers Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, Executive Risk Indemnity Inc., Chubb Insurance Company of New Jersey, and each of their respective U.S.-based affiliates, predecessors, and successors (collectively, and solely in their capacities as insurers and/or third party administrators of one or more of the above-captioned debtors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this Reservation of Rights (the "Reservation of Rights") with respect to the *Debtors' Motion for Entry of Orders (I) (A) Approving Bidding Procedures for Approving the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief; and (II) (A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 154] (the "Motion")[2] and in support of the Reservation of Rights, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A.    The Bankruptcy Case

1.    On November 3, 2024 (the "Petition Date"), Franchise Group Inc., and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for bankruptcy relief under

---

[2]    Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.      On November 11, 2024, the Debtors filed the Motion.

3.      Pursuant to the Motion, the Debtors seek entry of (a) an order approving, *inter alia*, the Bidding Procedures and the Assumption and Assignment Procedures; and (b) an order authorizing and approving, *inter alia*, the sale or other transfer of all or substantially all the Debtors' Assets to one or more Successful Bidder(s).

4.      On December 16, 2024, the Bankruptcy Court entered the *Order (I)(A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief* [Docket No. 444] (the "Bidding Procedures Order").

5.      Among other things, the Bidding Procedures Order approves auction procedures that allow for Partial Asset Bids and contemplates that certain Business Segments may be bid on and/or ultimately sold to different Successful Bidder(s).

6.      Pursuant to the Bidding Procedures Order, on December 20, 2024, the Debtors filed the Assumption and Assignment Notice.  No part of the Insurance Programs (as defined below) is listed as a potentially assumable contract on such notice.

7.      The Bidding Procedures Order does not approve a stalking horse agreement or a form of asset purchase agreement.

**B.      The Insurance Policies**

8.      Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors as named insureds.

9.      Prior to the Petition Date, the Chubb Companies and the Debtors also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

10.      Pursuant to certain Policies and Insurance Agreements (the "ACE Insurance Program"), ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company-North America, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, Pacific Employers Insurance Company, and/or certain of their U.S.-based affiliates provide, *inter alia*, certain workers' compensation, excess commercial general liability, commercial general liability, errors and omissions, umbrella excess, automotive liability, accident and death dismemberment, private company, privacy, excess, directors' and officers' liability, environmental, umbrella, professional liability, international advantage, commercial directors' and officers', businessowners, excess directors' and officers' liability, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (collectively, the "ACE Program Obligations").

11.      Pursuant to certain other Policies and any agreements related thereto (collectively, the "Federal Insurance Program," and together with the ACE Insurance Program, the "Insurance

DM3\11132112.3

Programs"),[3] Federal Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, Executive Risk Indemnity Inc., Chubb Insurance Company of New Jersey, and/or certain of their U.S.-based affiliates provide, *inter alia*, certain accident, crime, directors' and officers' liability, fiduciary liability, employment practices liability, kidnap, ransom and extortion liability, automotive liability, workers' compensation, property, package, directors' and officers' excess liability, export package, cargo, umbrella, general liability, accident blanket, excess, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (collectively the "Federal Program Obligations," and together with the ACE Program Obligations, the "Obligations").[4]

12.     The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

13.     Certain of the Obligations are secured by certain collateral, including letters of credit.  The Obligations may also be secured by trusts, escrows, surety bonds, cash collateral, paid loss deposit funds, or other amounts.

---

[3]     The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Insurance Programs.  Reference is made to the Insurance Programs for a complete description of their terms and conditions.

[4]     The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

14.     On December 13, 2024, at 12:00 a.m., certain Policies issued by the Chubb Companies, including a certain general liability insurance policy, certain automobile liability insurance policies, and certain workers' compensation insurance policies, expired by their terms.

## RESERVATION OF RIGHTS

15.     At this time, the Chubb Companies cannot determine or confirm whether any proposed Sale in connection with the Motion contemplates or will contemplate the sale or other transfer of all or a portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder).  The Chubb Companies, therefore, reserve their rights with respect to any Sale to the extent that the Debtors seek to assume and assign or otherwise transfer either or both of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder).

16.     The Chubb Companies assert that (i) the Insurance Programs must each be assumed and assigned, if at all, as a whole, and, in order to be entitled to any of the rights, benefits, interests and/or proceeds under the Insurance Programs, any Successful Bidder(s) must remain liable for the Obligations thereunder; (ii) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder), the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) cannot be assigned or transferred without the consent of the Chubb Companies, which consent has not been sought or given; (iii) the Chubb Companies should not be responsible for determining which entity, as between the Debtors and any Successful Bidder(s), is entitled to coverage and/or the rights, benefits, interests and/or proceeds under the Insurance Programs; (iv) any proposed cure amounts must be evaluated at the time of assumption; and (v) because the Successful Bidder(s) has not yet been identified, the Chubb Companies cannot determine whether any Successful Bidder(s) will intend to seek assignment of the Insurance Programs (and/or the rights, benefits,

DM3\11132112.3

interests and proceeds thereunder) and the Chubb Companies lack adequate assurance of future performance under the Insurance Programs by any Successful Bidder(s).

17.     The Chubb Companies, therefore, reserve their rights with regard to any Sale to any Successful Bidder(s) that proposes to improperly treat the Insurance Programs.

## I.     Each of the Insurance Programs and the Obligations Thereunder Are Indivisible.

18.     It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder.  *See Am. S. Ins. Co. v. DLM, LLC*, No. GLR-16-3628, 2017 U.S. Dist. LEXIS 105716, at *14 (D. Md. July 10, 2017) ("If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."); *Tavenner v. United States (In re Vance)*, 298 B.R. 262, 268 (Bankr. E.D. Va. 2003) ("'[A] debtor may not assume the favorable aspects of a contract [ ] and reject the unfavorable aspects of the same contract. . . [.]'") (citation omitted); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. App'x. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. App'x. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, (plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage.") (citations and quotations omitted) (alterations in original); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding

that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect.") (citations omitted); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences."); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("The [debtor] . . . may not blow hot and cold.  If he accepts the contract he accepts it *cum onere*.  If he receives the benefits he must adopt the burdens.  He cannot accept one and reject the other.") (internal citations and quotations omitted) (alterations in original); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

19.    It is also well-established that courts cannot alter terms of contracts, and must instead enforce them as written.  *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (stating a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012

Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

20.    Accordingly, to the extent any of the Insurance Programs (or the rights, benefits, interests, and/or proceeds thereunder) are sold, assumed and assigned, or otherwise transferred to any Successful Bidder(s), such Successful Bidder(s) must also remain liable for the Obligations thereunder.

21.    Moreover, each of the Insurance Programs, which are integrated insurance programs, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *Allegheny Enters. v. J-W Operating Co.*, No. 10-02539, 2014 U.S. Dist. LEXIS 27998, at *18-19 (M.D. Pa. Mar. 5, 2014) (finding an integrated agreement where several contracts between the same parties govern the parties' relationship as to a particular subject); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non severable agreement" where contracts were between same parties and obligations of each party are mutually dependent on the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating

"two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

22.    Accordingly, any sale or other transfer of only a portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) is improper, and any purported transfer of either of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) to any Successful Bidder(s) must be in its entirety.

23.    The Chubb Companies therefore reserve their rights with respect to any purported assumption and assignment or other transfer of any portion of either of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) in connection with the Motion and any proposed Sale(s) to any Successful Bidder(s).

## II.    The Insurance Programs Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or Given.

24.    To the extent that the Debtors seek to assign the Insurance Programs in connection with the Motion or any Sale(s), such assignment cannot occur without the express written consent of the Chubb Companies.

25.    Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

26.    Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits.  Section 365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

27.    Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment.  11 U.S.C. § 365(c)(1)(A) and (B).

28.    Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it.  *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal prohibition against assignment' to a third party and the non-debtor party to the contract does not consent to assignment.").

29.    Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent.  *See, e.g.*, *Banco Popular v. Kanning*, No. A-13-CV-200 RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (finding that a purported assignment of an insurance policy that did not comply with the express terms of the insurance policy was not enforceable); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, *no pet.*) (where an insurer's express written consent to any transfer of rights under an insurance policy is required by the terms of the policy, failure to evidence the insurer's express written consent renders any purported transfer invalid); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898 at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without

insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

30.     Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs cannot be assigned without the prior written consent of the Chubb Companies.

---

[5]     Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g) nor an assignment under a plan.

31.     Further, as a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Programs, the Debtors and the assignee will be required to execute one or more assumption agreements, in form and substance acceptable to the Chubb Companies.  These agreements have not yet been negotiated, let alone executed.

32.     Accordingly, because the Chubb Companies have not consented to any proposed assignment of the Insurance Programs, the Chubb Companies object to any such assignments without their consent, and reserve their rights with respect to any and all such assignments at this time.

## III.    The Chubb Companies Are Not Required to Make Coverage Determinations Between the Debtors and any Successful Bidder(s).

33.     As of the date hereof, it is not clear what, if any, portions of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) the Debtors intend to transfer to any Successful Bidder(s) pursuant to the Motion.

34.     While it is improper, as discussed above, to split the Insurance Programs themselves, or to split the rights, benefits, interests and/or proceeds under the Insurance Programs from the Obligations thereunder, any transfer of only a certain (as yet unspecified) portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) in connection with any Sale is likely to result in coverage disputes between any Successful Bidder(s) and the Debtors.

35.     To the extent any portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) is assigned in connection with any Sale(s), the Chubb Companies should not be put in the position of determining, as between the Debtors and any Successful Bidder(s), which entity is entitled to coverage under the Insurance Programs in

connection with a particular claim.  Similarly, the Chubb Companies should not be put in the position of determining, as between the Debtors and any Successful Bidder(s), which entity is entitled to any of rights, benefits, interests and/or proceeds under the Insurance Programs.

## IV.    Cure Amounts Must Be Evaluated At The Time Of Assumption.

36.    To the extent the Debtors seek to assume and assign all or a portion of either or both of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) pursuant to any Sale, the Debtors must assume and assign each of the Insurance Programs in its entirety.  Further, as more particularly described in the Insurance Programs, the Debtors are required to pay the Obligations, and, therefore, amounts may become due and owing under the Insurance Programs either prior to or after the assumption thereof.

37.    Such Obligations include, but are not limited to, certain outstanding premiums in the total aggregate amount of not less than $104,719.00, the posting of additional collateral in the form of a letter of credit in the total aggregate amount of not less than $628,708.00, certain installment payments that may be currently due and/or may become due in the future, and certain upcoming post-petition premiums that may become due (collectively, the "Currently Due Obligations").[6]

38.    The Chubb Companies also have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Programs and the Obligations.  By way of example and not limitation, premiums may be payable at audit under the terms of the

---

[6]    The premium payments are based on the gross amounts due and owing to the Chubb Companies.  Certain portions of premium payments may be attributable to amounts owing on commissions or other amounts accrued under the Insurance Programs, which may reduce the net amounts due and owing to the Chubb Companies. The Currently Due Obligations calculation is based upon the best information available at the time the Chubb Companies are filing this Reservation of Rights. As noted below, however, the Obligations may vary from day to day, and are subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies.

Insurance Programs, based upon factors as they exist throughout the coverage period.  Therefore, the Chubb Companies have contingent, unliquidated claims against the Debtors for any additional premium that may become due upon completion of audit(s).  By way of further example, as insured claims develop, amounts payable in relation thereto arise at various points in time; so it is common for amounts to arise in the future with respect to insured claims where the date of loss was prior to the Petition Date.

39.     The amounts owed by the Debtors on account of the Obligations may vary from day to day, and are subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies.

40.     Accordingly, any cure amounts must be determined at the time of assumption and, further, as a condition for the assignment of the Insurance Programs, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations, which includes the Currently Due Obligations), whether now existing or hereafter arising, under the Insurance Programs, including, without limitation, paying the Obligations as they become due.

**V.      Any Successful Bidder(s) Must Provide Adequate Assurance of Future Performance.**

41.      It is currently unknown what entity(ies) may be the Successful Bidder(s), and the Chubb Companies have therefore not yet been definitively advised as to whether any Successful Bidder(s) intends to seek the assignment of either of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder).

42.     Pursuant to § 365(f)(2) of the Bankruptcy Code, any assignee of a contract must provide adequate assurance of future performance.

43.      Considering the fact that the Successful Bidder(s) is not yet known, the Chubb Companies do not have, and the Debtors have not supplied, any information—much less sufficient information or a reasonable amount of time—to determine if any Successful Bidder(s) would be

15

capable of providing adequate assurance of future performance and whether any Successful Bidder(s) would satisfy the Chubb Companies' credit and underwriting criteria. Accordingly, the Chubb Companies are unable, at this time, to assess whether any Successful Bidder(s) would satisfy those criteria and reserve all rights with regard to same.

WHEREFORE, the Chubb Companies reserve all of their rights with respect to the Insurance Programs, the Motion, any proposed Sale in connection therewith, and/or any documents relating thereto.

Dated: January 3, 2025

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Drew S. McGehrin*
Drew S. McGehrin, Esq. (DE 6508)
1201 North Market Street, Suite 501
Wilmington, DE 19801
Phone: (302) 657-4900
Fax: (303) 657-4901
Email: DSMcGehrin@duanemorris.com

and

Wendy M. Simkulak, Esquire
Jessica Kenney Bonteque, Esquire
1540 Broadway
New York, NY 10036-4086
Telephone: (212) 692-1036
Fax: (212) 954-5310
Email: wmsimkulak@duanemorris.com
Email: JBonteque@duanemorris.com

*Counsel for the Chubb Companies*

DM3\11132112.3