## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 487** |

## OBJECTION AND RESERVATION OF RIGHTS OF FIFTH & ALTON (EDENS) LLC TO PROPOSED CURE AMOUNTS

Fifth & Alton (Edens) LLC ("Landlord"), by and through its undersigned attorneys, hereby objects (the "Objection") to the proposed cure amounts found in the *Notice of Possible Assumption and Assignment and Cure Costs with Respect to Executory Contracts and Unexpired Leases* filed on December 20, 2024 [D.I. 487] (the "Cure Notice") as it pertains to Landlord and its agreements with certain of the Debtors, and respectfully represents as follows:

## RELEVANT PROCEDURAL BACKGROUND

1.      On November 3, 2024 (the "Petition Date"), Franchise Group, Inc. and its affiliated

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution,

debtors (collectively, the "Debtors") commenced these bankruptcy cases, by filing petitions for relief under Chapter 11 of the United States Bankruptcy Code.

2.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.  No trustee or examiner has been appointed in these chapter 11 cases.

3.      On November 5, 2024, the Court entered its Order Authorizing Joint Administration of the Debtors' Chapter 11 Cases [D.I. 88.]

4.      On November 11, 2024, the Debtors filed the *Debtors Motion for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief; and (II) (A) Approving the Sale of the Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [D.I. 154] (the "Sale Procedures Motion").

5.      On November 19, 2024, the Office of the United States Trustee appointed the Committee of Unsecured Creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I. 188].

6.      On December 11, 2024, the Court entered its *Order (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief* [D.I. 411.]

7.      On December 16, 2024, the Court entered its *Order (REVISED) (I) (A) Approving*

LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC Delaware, Ohio 43015.

*Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief* [D.I. 444] (the "Sales Procedures Order").

8.      On December 20, 2024, Debtors filed the Cure Notice [D.I. 487.]

9.      In the Cure Notice, the Debtors identify two (2) lease agreements Landlord Fifth & Alton (Edens) LLC for potential assumption with Vitamin Shoppe Industries LLC listed as the Debtor counterparty, each stating a total cure amount through the date of the Cure Notice of $1,844.12. These two agreements are identified as a "Lease, dated 09/24/2009, as amended (South Beach)" and "Lease, dated 12/16/2024, as amended (Miami Beach (Relocation))"

### THE LEASE, RELOCATION AGREEMENT, AND CURE AMOUNTS

10.      On November 14, 2008, Landlord's predecessor in interest, AR & J SOBE, LLC and Vitamin Shoppe Industries, Inc. entered into a ten-year lease (the "Original Lease") for improved real property located at 5th and Alton Shopping Center, Miami Beach, Florida. The premises under the Original Lease included approximately 3,547 sq. ft. of leaseable floor area known as Unit #180.

11.      On December 31, 2018, Landlord and Vitamin Shoppe Industries Inc. entered into the First Amendment to Lease (the "Lease Amendment") extending the term of the Original Lease for three (3) years until September 30, 2022 and otherwise modified the terms of the Original Lease as set forth therein.

12.      Pursuant to Section 2 of the Lease Amendment, Rent on the Original Premises for the period of October 1, 2021 through September 30, 2022 consisted of monthly rent in the amount of $22,743.04 plus monthly operating costs, monthly tax charges, and monthly insurance charges (the "Original Premises Rent").

13.     On November 18, 2022, Landlord and Debtor Vitamin Shoppe Industries LLC (the "Tenant Debtor") entered into the Relocation Agreement and Second Amendment to Lease (the "Lease and Relocation Agreement" together with the Original Lease and the Lease Amendment, the "Lease").

14.     The Lease and Relocation Agreement provides, among other items, that the Tenant Debtor shall relocate from Unit #180 (consisting of approximately 3,575 sq. ft) to Unit #140 (the "Relocation Premises") consisting of approximately 2,285 sq. ft.

15.     Pursuant to Section 3(i) of the Lease and Relocation Agreement:

> The date on which the last of the following events occurs shall be referred to as the "Relocation Premises Delivery Date ': (i) Lessor delivers legal possession of the Relocation Premises to Tenant, vacant and free of all rights of any third parties and free of all hazardous materials, with Lessor's Work substantially complete (as described below) in accordance with the Approved Lessor's Plans and in compliance with applicable Laws, provided that Tenant shall not be required to accept possession of the Relocation Premises prior to April 1, 2023, (ii) Tenant receives from Metropolitan Life Insurance Company ("Lender"), the holder of the current financing encumbering the Shopping Center, a non-disturbance agreement ("SNDA") executed by Lender in accordance with Section 20 below, and (iii) the applicable governmental authority(ies) responsible for issuing the building permits for Tenant's Work ("Tenant's Permits") approve~ the application for Tenant's Permits to the extent necessary for Tenant to commence Tenant's Work. Tenant hereby acknowledges and agrees that Tenant has inspected the Relocation Premises and that Tenant agrees to accept the Relocation Premises in its current "as is" condition, except for Lessor's Work, and Lessor makes no representations as to the condition of the Relocation Premises.

16.     Pursuant to Section 3(ii) of the Lease and Relocation Agreement:

> Lessor's Work shall be deemed substantially complete when all of Lessor's Work is complete in accordance with the Approved Lessor's Plans (as modified if required by applicable governmental entities for issuance of Lessor's Permits, subject to the last paragraph of Section 2 above) except for any "Punch List Items" (as hereinafter defined) and a certificate of completion has been issued by the municipality

with respect to Lessor's Work.

17.     Pursuant to Section 3(iii) of the Lease and Relocation Agreement:

On or before the Relocation Premises Delivery Date, Lessor's and Tenant's representatives together shall conduct a walk-through of the Relocation Premises to compile a punch list of the Punch List Items. Tenant shall deliver to Lessor a copy of said punch list within five (5) days after the walk-through. If Lessor does not receive the list of Punch List Items from Tenant within such 5-day period, then Tenant shall be deemed to have waived the right to have Lessor complete any Punch List Items. If Lessor does receive the list of Punch List Items from Tenant within such 5-day period, Lessor shall complete any Punch List Items within ten (10) days after it receives a copy of said punch list, subject to force majeure. . .

18.     Pursuant to Section 3(iv) of the Lease and Relocation Agreement:

As used herein, the term "Punch List Items 'for purposes of determining substantial completion of Lessor's Work shall mean such minor items of a cosmetic nature which, when considered as a whole, do not adversely affect or delay either the performance of Tenant's Work or Tenant's ability to conduct its normal business operations in the Relocation Premises. Tenant and Lessor shall reasonably cooperate in the scheduling of such work ( other than emergency work, if not practicable) and Lessor shall use commercially reasonable efforts to avoid interference with work being performed by Tenant or on behalf of Tenant within the Relocation Premises.

19.     Pursuant to Section 3(v) of the Lease and Relocation Agreement:

Lessor shall provide Tenant with sixty (60) days' prior written notice of the estimated date Lessor expects to deliver possession of the Relocation Premises to Tenant; provided, however, Lessor shall not be in default and Tenant shall not be entitled to any remedy if delivery of possession does not occur on such estimated date.

20.     Pursuant to Section 5 of the Lease and Relocation Agreement:

Surrender of Original Premises. On or before the earlier to occur of : (i) the date which is five (5) days following the date on which Tenant opens for business in the Relocation Premises, or (ii) ninety-five (95) days after the Relocation Premises Delivery Date (the "Surrender Date"), Tenant shall surrender possession and vacate the Original Premises, leaving same in broom-clean condition, free of all moveable trade fixtures, inventory, equipment, and any other

property, excepting only Tenant's permanent leasehold improvements, which may remain in place. Tenant shall be entitled to occupy the Original Premises and shall perform all of Tenant's obligations with respect thereto, in accordance with the terms and conditions of the Lease, through the Surrender Date. Notwithstanding anything in this Agreement to the contrary, including but not limited to the provisions of Section 6 below, should Tenant fail to surrender possession of the Original Premises on or before the Surrender Date, Tenant shall be a tenant at sufferance occupying the Original Premises and Tenant shall be obligated, in addition to any other remedies available to Lessor under the Lease and/or Florida law, to continue paying Rent pursuant to the Lease for the period of any such tenancy at sufferance in the Original Premises, in addition to Rent on the Relocation Premises, which Tenant shall be obligated to pay in accordance with Section 9 of this Agreement, regardless of whether Tenant has surrendered possession of the Original Premises. The terms, conditions and obligations set forth in the preceding sentence shall survive any expiration of the Lease, and/or any release of liability of Tenant with respect to the Original Premises.

21.     Pursuant to Section 7 of the Lease and Relocation Agreement:

<u>Relocation Commencement Date and Rent on Original Premises.</u> Tenant shall commence paying Rent applicable to the Relocation Premises on the earlier of (i) ninety (90) days following the Relocation Premises Delivery Date; or (ii) the date on which Tenant first opens for business in the Relocation Premises (the "Relocation Commencement Date'). Notwithstanding anything in the Lease or this Agreement to the contrary, so long as Tenant timely surrenders possession of the Original Premises in accordance with Section 5 above, Tenant shall continue paying Rent on the Original Premises at the rates set forth in the Lease through and including the day immediately prior to the Relocation Commencement Date.

22.     The Lease and Relocation Agreement extended the term of the Lease for seven (7) years from the day immediately preceding the "Relocation Commencement Date".

23.     Pursuant to Section 9 of the Lease and Relocation Agreement, Rent for the first year of the Relocation Premises consists of $15,479.23 (the "Relocation Premises Rent" together with the Original Premises Rent, the  "Rent"), including $11,425 in monthly rent, plus monthly operating costs, monthly tax charges, and monthly insurance charges.

**Landlord Delivered Relocation Premises**

24.     On August 1, 2024, Landlord delivered physical access and legal possession of the Relocation Premises to Tenant Debtor. Upon delivery, Landlord's Work was complete and Tenant Debtor could begin preparing the space for its use. Landlord's August 1, 2024 delivery of the Relocation Premises and work completion was confirmed by written notice to Tenant Debtor dated August 5, 2024. Landlord provided Tenant Debtor a copy of the Certificate of Occupancy.

25.     On August 7, 2024, the walkthrough contemplated pursuant to Section 3(iii) of the Lease and Relocation Agreement was conducted. Tenant Debtor did not provide any Punch List Items.

26.     As Tenant Debtor was entitled to sixty (60) days' advance notice of the estimated delivery date pursuant to Section 3(v) of the Lease and Relocation Agreement, the actual delivery of access and possession on August 1, 2024 constituted the 60-day notice. Therefore, the Relocation Premises Delivery Date was established as September 30, 2024. Landlord turned over responsibility for the utilities at the Relocation Premises, including electric, no later than September 30, 2024.

27.     Pursuant to Section 5 of the Lease and Relocation Agreement, the Surrender Date is ninety-five (95) days after the Relocation Premises Delivery Date , or January 3, 2025.

28.     Therefore, effective January 3, 2025, the Tenant Debtor is currently occupying and in possession of both the Original Premises and the Relocation Premises and is responsible for all Rent including the Original Premises Rent and the Relocation Premises Rent.

**Objection to the Cure Amount**

29.     First, the Cure Notice does not adequately identify the Lease. Though Landlord assumes the references to the Landlord are intended to reference the Lease, as amended, the descriptions of the specific agreements do not adequately identify the contract(s) subject to

assumption and cure. Additionally, the Cure Notice lists two leases with the Landlord, it is also unclear as to whether the Debtors view the Lease, as amended, and the Lease and Relocation Agreement as separate contracts or leases to be assumed and assigned. The Lease and all amendments, including the Lease and Relocation Agreement, constitutes a single contract and must be assumed in its entirety. The Debtors should therefore be required to adequately describe the Lease to the extent it is subject to assumption and assignment.

30.     Second, the Lease is a lease "of real property in a shopping center" as that term is used in Bankruptcy Code § 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990). Landlord is entitled to the protections that Bankruptcy Code § 365(b)(3) grants to landlords of shopping centers.

31.     Third, Tenant Debtor has remained in possession of the Original Premises since the Petition Date and has had possession of the Relocation Premises since August 1, 2024. Rent on the Relocation Premises begins effective January 3, 2025.

32.     While Landlord does not object to the proposed assumption and assignment of the Lease at this juncture, Landlord does object to the Debtors' proposed cure amounts and reserves all rights as to the Rent due going forward on both the Original and Relocation Premises.

33.     As reflected on Exhibit "A" to the Cure Notice, the Debtors assert that the "cure cost" for the Lease is $1,844.12, (the "Proposed Cure Amount").

34.     Landlord objects to the Proposed Cure Amount as there are pre-petition and post-petition arrearages as of January 3, 2025 in the amount of $29,041.15 (the **"Actual Cure Amount"**). A copy of the Tenant Debtor's ledger for the Lease as of January 3, 2025 is annexed hereto and incorporated by reference as **Exhibit A**.

35.     Landlord further asserts that it is entitled to be reimbursed as part of the Actual Cure

Amount for all of its pecuniary losses, including, but not limited to, attorneys' fees and costs expended with regard to the Debtors' bankruptcy cases, the Tenant Debtor's default and potential assumption and/or assignment of the Lease.

36.     Landlord submits that additional amounts may also be due with regard to the Actual Cure Amount, such as year-end adjustments to certain items, including, but not limited to, real estate taxes and common area maintenance charges pursuant to the terms of the Lease, as well as deferred rent arrears under the terms of the Lease.   Landlord expressly reserves the right to assert all year-end adjustments or other amounts that are due and payable under the Lease, regardless of their accrual or billing date, and amounts not yet known as of the date of this Objection.  As some of these charges may be payable in arrears, the amounts due cannot be calculated at this time.   Nevertheless, the Tenant Debtor is liable for all such charges as they become due under the Lease.

**Reservation of Rights Regarding the Tenant Debtor's Rent Obligations on Both Premises**

37.     In addition to the Landlord's objection to the Cure Amount, Landlord further objects to the assumption and assignment of the Lease, including the Lease and Relocation Agreement, that does not provide for the cure payment of any rents for the Tenant Debtor's occupation of both the Original Premises and the Relocation Premises, effective January 3, 2025. Tenant Debtor is also potentially liable under the Lease for any additional damages suffered by Landlord due to Tenant Debtor's failure to vacate the Original Premises, which is subject to re-letting to another party.

38.     To the extent the Tenant Debtor disputes that the Relocation Premises Delivery Date has not yet occurred, this is not true.

39.     On August 7, 2024, the walkthrough contemplated pursuant to Section 3(iii) of the Lease and Relocation Agreement was conducted. Tenant Debtor did not provide any Punch List Items. Pursuant to Section 3(iii), if the Tenant Debtor does not provide the list of Punch List Items to

Landlord within five (5) days of the walkthrough, then Tenant Debtor shall be deemed to have waived the right to have Landlord complete any Punch List Items. Furthermore, certain cosmetic damage to the Relocation Premises has likely been caused by Tenant Debtor's failure to pay for the Relocation Premises's electricity bill and maintain the Relocation Premises utilities.

40.    Additionally, permitting related to the Relocation Premises Delivery Date are only required to the extent they are necessary for Tenant Debtor to commence the "Tenant's Work" under the Lease and Relocation Agreement. While there are certain permits pending before Miami-Dade County, the "Tenant's Work" could have proceeded without said permits and were not necessary under the Lease and Relocation Agreement.

41.    Accordingly, all conditions under the Lease and Relocation Agreement have been met and the Surrender Date occurred effective January 3, 2025.

## ARGUMENT

42.    Section 365(b)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract of lease, the trustee-
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default;

11 U.S.C. § 365(b)(1).

43.    Pursuant to section 365(b)(3) of the Bankruptcy Code, adequate assurance of future performance of a lease of real property in a shopping center includes, but is not limited to, assumption of a lease subject to all the provisions of the lease.  *See* 11 U.S.C. § 365(b)(3).

44.    Based on the above, the Debtors must first pay Landlord the Actual Cure Amount, plus any and all additional unpaid charges incurred under the Lease through the effective date of assumption as a condition to such assumption, and the Debtors must provide adequate assurance of performance of all provisions and obligations of the Lease, including payment to Landlord for any and all unbilled charges whether those charges cover pre-petition or pre-assumption periods of time.

45.    Further, additional amounts may have accrued or will accrue with regard to the pre-petition and post-petition periods, such as year-end adjustments to various items including, but not limited to, real estate taxes and common area maintenance expenses and deferred rent.  Section 365(b) requires that a debtor cure all defaults in conjunction with lease assumption.  Accordingly, any Order approving the assumption of the Lease must provide that, in addition to payment of the Actual Cure Amount, Tenant Debtor: (a) shall be liable for any and all unbilled charges even if those charges related to pre-petition or pre-assumption periods; (b) shall pay any and all year-end adjustments and other charges when due pursuant to the terms of the Lease regardless of when the charges accrued; and (c) Tenant Debtor shall pay for all Rent for the Tenant Debtor's occupancy of both the Original Premises and the Relocation Premises until such time that the Tenant Debtor surrenders the Original Premises.

46.    Additionally, Section 49 of the Original Lease contains indemnity provisions, as follows:

> Tenant shall indemnify Lessor from all causes, claims, demands, losses, liabilities, damages and reasonable expenses (including reasonable attorneys' fees at all tribunal levels) arising as a result of or in connection with Tenant's use or occupancy of the Premises, or Tenant's breach of its obligations under tills Lease.

47.    Thus, any Order approving the assumption of the Lease must provide that the Tenant Debtor, or the Successful Bidder, will remain subject to the terms of the Lease, including that the

Tenant Debtor or the Successful Bidder will continue to be responsible for all such indemnification obligations, regardless of when they arose.

## <u>RESERVATION OF RIGHTS</u>

48.     Landlord hereby reserves all of its rights to amend and/or supplement this Objection, and to make such other and further objections as Landlord may deem necessary or appropriate, including, but not limited to, assumption and/or assumption and assignment of the Lease.  Landlord reserves the right to further object to any modifications or amendments made to the Proposed Cure Amount by the Debtors and to increase or further reconcile the cure claims set forth herein, including Rent related to both the Original and Relocation Premises.

49.     This Objection shall not constitute a waiver, discharge, or disallowance of any rights, claims, causes of action or defenses Landlord has asserted or may assert against the Debtors.

WHEREFORE, for all of the foregoing reasons, Landlord respectfully requests that any Order entered by this Court authorizing the assumption of the Lease be consistent with this Objection and grant Landlord such other and further relief as the Court deems just and proper.

Dated: January 3, 2025

**COOCH AND TAYLOR, P.A.**

   /s/ *R. Grant Dick IV*
R. Grant Dick IV (No. 5123)
Kevin D. Levitsky (No. 7228)
1000 N. West Street, Suite 1500
Wilmington, DE  19801
Telephone:  (302) 984-3800
Facsimile:  (302) 984-3989
Email: gdick@coochtaylor.com
          klevitsky@coochtaylor.com

*Counsel for Fifth & Alton (Edens) LLC*