**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*[1] | Case No. 24-12480 (JTD) |
| | Jointly Administered |
| Debtors. | RE: D.I. 474 |

**OBJECTION OF THE SETTLEMENT-RELATED LIQUIDATING TRUST 2022-23 TO THE DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF WILLKIE FARR & GALLAGHER LLP AS CO-COUNSEL FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

The Settlement-Related Liquidating Trust 2022-23 (the "Prophecy Trust"), by and through its undersigned counsel, hereby submits its objection (the "Objection") to the *Debtors' Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors, Nunc Pro Tunc to the Petition Date* [D.I. 474] (the "Application").[2] In support of the Objection, the Prophecy Trust respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms that are undefined herein shall have the meanings ascribed to them in the Application.

**PRELIMINARY STATEMENT**

1. Section 327(a) of the Bankruptcy Code allows a debtor-in-possession to hire professionals to assist it with its obligations under the Bankruptcy Code, if those professionals do not hold or represent an interest adverse to the estate and are disinterested persons. 11 U.S.C. § 327(a). As explained more fully below, Willkie Farr & Gallagher, LLP ("Willkie") fails both tests as a result of its longstanding, concurrent and often conflicted representation of Brian Kahn and his affiliated entities, FRG and its affiliated entities, and B. Riley Financial and its affiliated entities and principal, including with regard to transactions the investigations of which should be at the heart of these bankruptcy cases. As such, Willkie is not qualified to represent the Debtors (any of the Debtors) under the standards of Section 327(a).[3]

2. Accordingly, based on the foregoing and for the reasons more fully set forth below, the Prophecy Trust respectfully submits that the Application should be denied.

**BACKGROUND**

3. On November 3, 2024 (the "Petition Date"), Franchise Group, Inc. ("Franchise Group") and numerous affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

4. On November 19, 2024, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). *See* D.I. 188.

**I.    The Application and Supporting Willkie Declaration**

5. Over six weeks after the Petition Date, on December 19, 2024, the Debtors filed the Application and the accompanying Declaration of Matthew A. Feldman in Support of Debtors'

---

[3] For the same reasons, Willkie would no be qualified as special counsel under 11 U.S.C. § 327(e).

Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors, *Nunc Pro Tunc* to the Petition Date (the "Feldman Declaration").

6. As detailed therein, Willkie has represented Franchise Group since at least 2019, providing legal services in connection with corporate, regulatory, transactional, litigation, and other matters. Application, at ¶ 3; Feldman Declaration, at ¶ 19.

7. Willkie likewise and concurrently represented Brian Kahn, the founder and former insider of Franchise Group, and his affiliated entities such as Vintage Capital Management for years pre-petition, if not longer. *Id.* However, neither the Application, the Feldman Declaration, nor any other document accompanying the Application specifies for how many years Willkie has represented Kahn or his affiliated entities. The Debtors do acknowledge in the Application that "Franchise Group was Mr. Kahn's creation and for the first four years of Franchise Group's existence, the company was synonymous with Mr. Kahn." *Id.* at ¶ 2. Since the founding of Franchise Group, Kahn has been its principal shareholder. He was also the chief executive officer of Franchise Group until January 2024.

8. Willkie represented both Franchise Group and Kahn simultaneously until some unspecified time in October 2024, weeks prior to the Petition Date. Willkie also represented other entities closely affiliated with Kahn, including Vintage Capital Management, an investment fund founded by Kahn that was instrumental in the establishment of Franchise Group, as well as other affiliates of Vintage.

9. When issues, disputes, investigations, transactions, and other matters arose in which both Franchise Group and Kahn were involved, Willkie continued its general representations of both Kahn and Franchise Group seamlessly, and seemingly without ever setting

up any kind of ethical wall within the firm. As noted below, this relationship continued until at least mid-October 2024, when Willkie and Kahn sought accommodations from, but misled, the Prophecy Trust about the imminency of the FRG bankruptcy filings.

10. The Debtors further state that Willkie represented Kahn in matters "wholly unrelated to these Chapter 11 Cases, including Prophecy-related matters." *Id.* at ¶ 3. However, as detailed below, the "Prophecy-related matters" are hardly unrelated to these Chapter 11 Cases and, similarly, Willkie's representation of Kahn cannot be extricated from its representation of FRG, the entity that was one and the same with Kahn through its first four years of existence. For example, as late as Mid-October 2024, Willkie was asking the Prophecy Trust to provide a support letter for Mr. Kahn to assist him with his government issues and in turn, also help him prevent American Freight from filing for bankruptcy protection. Three weeks later, FRG filed its voluntary petition.

11. Meanwhile, up until that time, Willkie was advising Brian Kahn with regard to other disputes pertaining to the Prophecy Trust and FRG, such has Kahn's refusal to turn over to the Prophecy Trust's 7.5% equity interest in Freedom VCM Holdings, LLC for 11 months until such time that both Kahn and Willkie knew FRG's bankruptcy filing was imminent.

**II.    The Prophecy-Related Matters and the Prophecy Trust**

12. Beginning in January 2015, Prophecy Trading Advisors Master Fund, LP, Prophecy Trading Advisors GP, LLC, Prophecy Trading Advisors International Ltd., Prophecy Trading Advisors, LP, Prophecy Special Opportunities Fund International Ltd., Prophecy Special Opportunities Fund, LP, Prophecy Special Ops GP, LLC, Prophecy Asset Management LP, and Prophecy Portfolio Managers LLC ("Prophecy" or, in reference collectively, "Prophecy Entities,"

or, in reference to the investment funds, "Prophecy Fund") began serving as investment funds for private and institutional investors.

13. On November 2, 2023, the Securities and Exchange Commission ("SEC") filed a complaint against John Hughes ("Hughes"), the President and Chief Compliance Officer of Prophecy, charging Hughes with violating certain antifraud provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940 (the "Complaint"). The Department of Justice ("DOJ"), through the U.S. Attorney's Office for the District of New Jersey, also announced criminal charges against Hughes stemming from the same Prophecy-related activities (the "Indictment"). A copy of the Indictment is attached hereto as Exhibit "A".

14. Kahn was one of two unindicted co-conspirators referred to often in both the Complaint and the Indictment for his alleged involvement in years of fraudulent activities, including the concealment of the Prophecy Fund's losses of hundreds of millions of dollars of the Prophecy investors. *See,* Exhibit A, page 9. The Prophecy Trust was established for the benefit of such investors. As detailer further below, the Prophecy Trust holds both equity interests in and affirmative claims against certain of the Debtors.

15. The Debtors and Willkie represent that, shortly thereafter, on November 7, 2023, Willkie established the first "exclusionary ethical wall between the teams representing Franchise Group, on the one hand, and Mr. Kahn on personal criminal and civil matters, on the other hand." Application, at ¶ 3; Feldman Declaration, at ¶ 23. Presumably, prior to this date, including for the duration of the disputes with Prophecy and the Prophecy Trust, as well as the SEC and DOJ investigations, the Willkie attorneys on such teams had free ability to access and view documents,

correspondence, drafts, and other items related to both representations, and could confer freely with one another regarding the representations.

16.     Willkie says that, after the establishment of the "ethical wall," it continued to represent Kahn "in the Prophecy matter, including in document production to the Office of the United States Attorney[4] and in an arbitration matter involving Prophecy investors" (Feldman Declaration, at ¶ 24) while concurrently continuing its representation of the Franchise Group, Inc.. including its eventual preparation for and filing of these Chapter 11 Cases, in part as a result of "the Prophecy matter." *See* Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings [D.I. 15] (the "<u>First Day Declaration</u>"), at ¶ 11, 12, 34 (explaining the contribution of the allegations made against Kahn and his business association with Prophecy to the financial deterioration of the Debtors).

17.     Notably, neither the Debtors nor Willkie, through the Feldman Declaration, address whether Willkie was representing Kahn with regard to the SEC and DOJ investigations preceding the Complaint and Indictment—though Willkie acknowledges its assistance in representing Kahn after the release of the Complaint and Indictment and establishment of an "ethical wall." This unanswered question is relevant because Franchise Group, which was a client of Willkie, and to which Willkie owed a fiduciary duty, seemingly (and somewhat unbelievably, as explained below) did not know about the allegations against its founder and CEO until November 2023, when the SEC filed its Complaint, and the DOJ announced its Indictment. *See* First Day Declaration, at ¶ 9 (stating that "[o]n November 2, 2023, in the midst of its efforts to divest Badcock and address its related liquidity challenges, Franchise Group was suddenly rocked by the allegations that its then-Chief Executive Officer, Brian Kahn [], was involved in the demise of Prophecy Asset

---

[4] The United States Attorney is not a party to the Prophecy arbitration. Presumably this relates to ongoing investigations by the Department of Justice and Securities and Exchange Commission.

Management LP []" via the SEC's filing of the Complaint and the DOJ's announcement of criminal charges against another individual and two unindicted co-conspirators, one of which Franchise Group learned was Kahn"); Application, at ¶ 2 ("The relationship between Mr. Kahn and Franchise Group suddenly changed in November 2023, when Franchise Group learned of criminal and civil allegations against Mr. Kahn related to his alleged involvement in the demise of Prophecy . . . .").

18. Notably, these questions are further exacerbated (and FRG's lack of knowledge of Kahn's Prophecy issues before November 2023 seem even more unbelievable) because the Debtors' current CEO (and previous CRO), Andrew Laurence, was at relevant times including in 2023, Kahn's partner at Vintage Capital Management, which in addition to being a Willkie client, was also one of the Kahn affiliated entities accused of wrongdoing with regard to Prophecy. These undisputable facts give rise to legitimate questions about Willkie's knowledge and involvement in many of these issues, as well as how FRG, under Laurence's oversight, could engage special counsel that concluded FRG had no knowledge of Kahn's Prophecy issues.

19. In January 2024, as a result of the fallout from the public release of the Complaint and Indictment, Kahn resigned from his roles as: (i) a member of the Boards of Directors of Franchise Group and Freedom VCM Holdings, LLC ("Freedom Topco") and (ii) Chief Executive Officer of Franchise Group, and he also relinquished certain governance rights. Application, at ¶ 26.

20. Meanwhile, and as noted above and below, Willkie continued with its representation of Kahn and his entities with regard to his Prophecy issues into mid-October 2024.

### III. The Take-Private Transaction Handled by Willkie Prior to Any "Ethical Wall"

21. The Debtors state in the Application that "Mr. Kahn, as then-Chief Executive Officer, led the growth of Franchise Group through a series of transactions, including the completion of a take-private transaction in August 2023." *Id.* ¶ 1.

22. Between March and August 2023, prior to the establishment of any ethical wall, Willkie represented Kahn in the Take-Private Transaction and related ancillary matters. Feldman Declaration at ¶ 21. Pursuant to the Take-Private Transaction, and with the guidance of Willkie's legal counsel, Kahn and his affiliates took private control of Franchise Group.

23. B. Riley Financial, Inc. ("<u>BRF</u>") is one of the parties that provided equity financing for the Take-Private Transaction. Willkie has disclosed in the Feldman Declaration that it currently represents BRF in connection with "certain ongoing litigation matters, including securities class action lawsuits," which it says are "unrelated to the Debtors and these Chapter 11 Cases." Feldman Declaration, at ¶ 28.[5] "BRF is an affiliate of the entity B. Riley Principal Investments, which is the majority equity holder of Freedom VCM Holdings, LLC" *Id.* Willkie also acknowledges that other B. Riley entities, specifically B. Riley FBR and B. Riley Securities, are former clients of Willkie (Feldman Declaration, Schedule 2) and continues to represent BRF, B. Riley Principal Investments, LLC, and two other B. Riley entities (Feldman Declaration, Schedule 3). BRF also happens to be one of Kahn's largest creditors, second only, on information and belief to the Prophecy Trust.

24. In the First Day Declaration, David Orlofsky, the Chief Restructuring officer of Debtors Freedom TopCo and Franchise Group since October 11, 2024, represented that "a

---

[5] Willkie and the Debtors have indicated that they believe "Prophecy-related matters" to be unrelated to these Chapter 11 Cases, so it is unclear whether Willkie is representing BRF in connection with the same Prophecy-related matters raised in the Complaint and Indictment.

transaction proposal materialized whereby Mr. Kahn and his affiliates would take private control of Franchise Group, with the transaction being financed, in part, with equity financing provided by various investors, including BRF . . . ." First Day Declaration, at ¶ 31.

25. Thus, to summarize the breadth of Willkie's conflicts in this case, the Take-Private Transaction that "materialized" and preceded Franchise Group's descent into bankruptcy was one in which Kahn (an existing client of Willkie at that time) and his affiliates (also Willkie clients), took control of Franchise Group (another existing client of Willkie at that time), with equity financing of BRF (which is currently a client of Willkie, but cannot be determined to have or have not been a client of Willkie at that time because of the limitations of Willkie's disclosures on that subject). This is notable and should be considered by the Court regardless of the fact that Willkie only "formally" represented Kahn with regard to the Take-Private Transaction. What is clear is that, perverting the spirit of the late Justice Louis Brandeis, Willkie through its entangled engagement acted as counsel for the "situation."

26. Moreover, even though Willkie represented Kahn in the Take-Private Transaction, Willkie is now representing Franchise Group in its capacity as a non-party in a class action lawsuit pending in the Delaware Court of Chancery captioned *Gale et al. v. Vintage Capital Management, LLC et al.*, Case No. 2024-0726-LWW (Del. Ch. 2024), which was filed against Kahn, among other parties, as a result of the Take-Private Transaction. *Id.* at ¶ 19(i). And although Franchise Group is not a party in the litigation, it may potentially have indemnification obligations as a result of the liability of former officers and directors, including Kahn, for the Take-Private Transaction. *Id.* Thus, Willkie is attempting to represent Franchise Group in its capacity as the party that could potentially be asked to indemnify Kahn for his actions in the Take-Private Transaction, which Kahn took on the legal counsel of Willkie.

27. Issues related to the Take-Private Transaction have already been raised in these Chapter 11 Cases in the filings of the Ad Hoc Group of Freedom Lenders. *See, e.g.*, Motion of the Ad Hoc Group of Freedom Lenders for Entry of an Order (I) Terminating Exclusivity in the HoldCo Debtors' Cases, (II) Lifting the Automatic Stay in the HoldCo Debtors' Cases or (III) Appointing a Chapter 11 Trustee for the HoldCo Debtors [D.I. 192].

28. Additionally, the Committee has served Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) upon Kahn, BRF, and B. Riley Principal Investments, LLC. related to the Take-Private Transaction. *See* D.I. 602 & 603.

29. After completion of the Take-Private Transaction, Willkie was intimately involved with all of the following agreements and transactions leading to these Chapter 11 Cases, having primary control over the rollover agreement that converted Franchise Group equity into equity in Freedom Topco, and—on information and belief—representing multiple parties and/or controlling documents in the rollover agreement, related investor agreements, and notes. All of these transactions and agreements changed the relationships between interested parties and changed the value of such parties' claims against debtors in these Chapter 11 Cases. As a result, Willkie is incurably conflicted in a manner that requires denial of the Application.

30. Concurrently, Willkie was also representing Kahn and his affiliated entities with regard to Kahn's breaches of his agreements with the Prophecy Trust – including the breach related to the Take-Private Transaction and Kahn's subsequent refusal to turnover to the Prophecy Trust its 7.5% ownership interest in VCM Freedom Holdco LLC – which representation continued to at least mid-October 2024, mere weeks before the commencement of these cases.

31. A high level review of the Feldman affidavit effectively shows that Willkie was concurrently representing Kahn and his affiliates and FRG and its affiliates while all of FRG's growth by acquisition took place, including purchase of The Vitamin Shoppe, Sears Hometown Outlet Stores Inc., Pet Supplies Plus, Sylvan Learning, W.S. Badcock and of course, through the Take-Private Transaction.  This gives rise to the specter of more conflicts and investigations of these Willkie led FRG/Kahn related transactions.

IV. **The Prophecy Trust's Claims Against the Debtors**

32. The Prophecy Trust holds an approximately 7.5% interest (Series A) in Freedom VCM Holdings, LLC.

33. The Prophecy Trust also holds claims against some combination of FRG entities, including those referred to in the vernacular as "Opcos" arising out of:

   a. The issuance of $150,000,000 of fake preferred securities in Buddy's by FRG (and its affiliates), which issuance was used by Kahn to "cover" his losses with Prophecy (*see,* Exhibit A, page 9-10);

   b. Claims arising out of Kahn's improper use of Prophecy and its funds to leverage and grow FRG's business (all during time periods when Willkie was concurrently representing Kahn and his affiliates, and FRG and its affiliates); and

   c. Claims arising out of Kahn's diversion of funds promised to, and due Prophecy from FRG-related companies which funds were ultimately used to satisfy other FRG-related obligations.

## ARGUMENT

34. The Debtors should not be permitted to retain Willkie as their legal counsel in these Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code because Willkie is not disinterested and holds interests directly adverse to the Debtor, their creditors and estates.

### I. Willkie Cannot Be Retained because it is Not Disinterested And Has Interests Adverse to the Debtors' Estates

35. Pursuant to section 327(a) of the Bankruptcy Code, the Debtors "may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons" to represent them in these Chapter 11 Cases. 11 U.S.C. § 327; *see In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d Cir. 2002) (debtor in possession may, with bankruptcy court approval, employ one or more attorneys to represent it and to assist it in fulfilling its duties).

36. Section 327(a) "restricts retention of lawyers and other professionals to those who do not hold or represent an interest adverse to the estate and are disinterested." *In re Congoleum Corp.*, 426 F.3d 675, 688-89 (3d Cir. 2005).

37. The Third Circuit has held that section 327 "mandates disqualification when there is an actual conflict of interest, allows for it when there is a potential conflict, and precludes it based solely on an appearance of conflict." *In re First Jersey Sec., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999); *see also In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 477 (3d Cir. 1998) (Section 327(a) "presents a per se bar to the appointment of a law firm with an actual conflict, and gives the district court wide discretion in deciding whether to approve the appointment of a law firm with a potential conflict."); *In re Pillowtex, Inc.*, 304 F.3d 246, 251-52 (3d Cir. 2002); *In re BH & P, Inc.*, 949 F.2d 1300, 1316-17 (3d Cir. 1991).

38. The Bankruptcy Code does not define "actual conflict of interest" (*see Pillowtex*, 304 F.3d at 251) and the Third Circuit "eschew[s] bright-line rules in the determination whether a

given arrangement constitutes an actual or potential conflict of interest." *In re Jade Management Services*, 386 Fed.Appx. 145, 149 (3d Cir. 2010).

39. Rather, the existence of an "actual conflict of interest" has been determined by courts on a case-by-case evaluations basis. *See id.* "Pragmatically, a conflict is actual when the specific facts before the bankruptcy court suggest that 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest.'" *In re Boy Scouts of America*, 35 F.4th 149, 158 (3d Cir. 2022) (quoting *In re BH & P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991)); see *also In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016) ("An actual conflict of interest is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'") (quoting cases). The determination of whether a conflict is actual or potential is within the Court's discretion. *See In re Woodworkers Warehouse, Inc.*, 303 B.R. 740, 742 (Bankr. D. Del. 2004); *Pillowtex*, 304 F.3d at 251.

40. Bankruptcy Courts should generally disapprove retentions involving a potential conflict of interest. *See In re BH & P, Inc.*, 949 F.2d at 1316; *see also In re Woodworkers Warehouse, Inc.*, 303 B.R. at 742 ("In most instances a potential conflict should be the basis for disqualification[.]") (citing *Marvel*, 140 F.3d at 476). They should permit retention despite a potential conflict of interest only if every competent professional in the field is already employed in the case, or if the likelihood that the potential conflict will become actual is remote and there are "particularly compelling" reasons to approve the retention. *See In re BH & P, Inc.*, 949 F.2d at 1316 ("We do not find error in the bankruptcy court's articulation of the standard governing conflict of interest applicable to professionals.").

41. "The requirements of section 327 cannot be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994) (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)).

42. Willkie's pre-petition relationship with and representation of the Debtors, Kahn (the founder and former director and officer of certain of the Debtors) and his affiliated entities, and other parties related to fundamental transactions preceding (and possibly causing) the financial collapse of the Debtors and the filing of these Chapter 11 Cases render Willkie incapable of representing the Debtors under section 327 of the Bankruptcy Code.

43. Willkie holds actual conflicts of interest because it represented Kahn in the Take-Private Transaction that is currently the subject of litigation for which Kahn could seek indemnification by Franchise Group, and Willkie itself could be subject to claims of both Kahn and Franchise Group if Kahn is held liable in such litigation. Moreover, the Take-Private Transaction and Willkie's role therein could be the subject of significant litigation in these Chapter 11 Cases, as evidenced by filings of the Ad Hoc Group of Freedom Lenders and the Committee related thereto. *See supra* ¶¶ 24-25. Similarly, Willkie's involvement in other Kahn led FRG transactions should also give rise to similar investigations.

44. Moreover, Willkie holds additional actual conflicts of interest because the Debtors could hold claims against Willkie stemming from its representation of Kahn at the time of the SEC and DOJ Prophecy-related investigation that led to the Complaint and Indictment—if Willkie was representing Kahn with regarding to investigation prior to the public release of the Complaint and

Indictment—without any warning to Franchise Group of the imminent danger to its business of the pending investigation involving the company's founder, director, officer, and public image.

45. Under Third Circuit law, these actual conflicts of interest mandate denial of the Application. *See In re First Jersey Sec., Inc.*, 180 F.3d at 509; *In re Marvel Entm't Group, Inc.*, 140 F.3d at 477; *In re Pillowtex, Inc.*, 304 F.3d at 251-52; *In re BH & P, Inc.*, 949 F.2d at 1316-17. Despite Willkie's wish to do so, there is no needle with which it sticks the proverbial thread and avoid the ramifications of its past relationships and represent the Debtors in these cases.

46. As such, the Debtors argument that "[t]o the extent Willkie determines that its prior relationship with Mr. Kahn would prevent Willkie from representing the Debtors' interests in a particular aspect of the Chapter 11 Cases, then Willkie will transfer the representation of the Debtors on such particular matter solely to [Young Conaway Stargatt & Taylor LLP]" means nothing, as the conflicts identified herein are retention precluding. Application, at ¶ 30. Section 327 of the Bankruptcy Code and Third Circuit dictates that the presence of an adverse interest is disqualifying. And unlike the common instance where conflicts counsel is used to avoid client-specific conflicts, the conflict at issue here is not client specific. Rather it is specific to Willkie, the law firm that is seeking to be retained under Section 327(a).

47. In light of existing, imminent, and/or potential legal issues and claims against the Debtors, Kahn (a founder and former insider of the Debtors), B. Riley and Willkie itself—arising from actions taken by Kahn and Franchise Group pre-petition with the legal advice of Willkie and/or during concurrent representation by Willkie of both parties, Willkie's conflict precludes them from being engaged in these cases regardless of YCST's future role.

LEGAL\74882387\4

**CONCLUSION**

48. For the reasons set forth above, the Prophecy Trust respectfully requests for this Court to deny the Application.

Dated: January 3, 2025
       Wilmington, Delaware

**COZEN O'CONNOR**

*/s/ Marla S. Benedek*
Marla S. Benedek (No. 6638)
Kaan Ekiner (No. 5607)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
Email: mbenedek@cozen.com
Email: kekiner@cozen.com

-and-

Brian L. Shaw
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 382-3100
Email: bshaw@cozen.com

*Counsel to the Settlement-related Liquidating Trust 2022-23*