# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 24-12480 (JTD)<br>(Jointly Administered)<br><br>**Obj. Deadline: January 3, 2025 at 4:00 p.m. (ET)**<br>**Hearing Date: February 13, 2025 at 10:00 a.m. (ET)**<br><br>Related Docket Nos. 444 & 487 |

**LIMITED OBJECTION OF ACADIA REALTY LIMITED PARTNERSHIP, ARC CPFAYNC001, LLC, ARC MCLVSNV001, LLC, ARC TSKCYMO001, LLC, ARG LSSALMD001, LLC, AZALEA JOINT VENTURE, LLC, BMA SPRINGHURST, LLC, BRIXMOR OPERATING PARTNERSHIP LP, CONTINENTAL REALTY CORPORATION, DEUTSCHE ASSET & WEALTH MANAGEMENT, FEDERAL REALTY OP LP, FR GROSSMONT, LLC, GERRITY GROUP, LLC, PRIME/FRIT MISSION HILLS, LLC, RD MANAGEMENT, LLC, REALTY INCOME CORPORATION, THE MACERICH COMPANY, AND THE STERLING ORGANIZATION, LLC TO DEBTORS' NOTICE OF POSSIBLE**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

**ASSUMPTION AND ASSIGNMENT AND CURE COSTS WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Acadia Realty Limited Partnership, ARC CPFAYNC001,LLC, ARC MCLVSNV001, LLC, ARC TSKCYMO001, LLC, ARG LSSALMD001, LLC, Azalea Joint Venture, LLC, BMA Springhurst, LLC, Brixmor Operating Partnership LP, Continental Realty Corporation, Deutsche Asset & Wealth Management, Federal Realty OP LP, FR Grossmont, LLC, Gerrity Group, LLC, PRIME/FRIT Mission Hills, LLC, RD Management, LLC, Realty Income Corporation, The Macerich Company, and The Sterling Organization, LLC (collectively, the "Landlords"), hereby file this limited objection (the "Objection"), by and through their undersigned counsel, to the *Notice of Possible Assumption and Assignment and Cure Costs With Respect to Executory Contracts and Unexpired Leases* [D.I. 487], as may have been amended by that certain *Notice of Amended Cure Schedule* [D.I. 597] (collectively, the "Cure Notice"),[2] and respectfully represent as follows:

**I.    BACKGROUND**

1.  On November 3, 2024 (the "Petition Date"), Franchise Group, Inc. and its debtor affiliates in the above-captioned chapter 11 cases (the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to operate their

---

[2] Capitalized terms used but not otherwise defined here shall have the meaning given to them in the Bid Procedures Order and accompanying documents or the Cure Notice.

businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. § 1107(a) and 1108.[3]

2.     The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations more fully set forth in the attached **Schedule A**.

3.     The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.     On November 11, 2024, the Debtors filed a motion seeking approval of certain procedures for the sale of the Debtors' assets [D.I. 154] (the "Bidding Procedures"). The Court entered a revised order approving the Bidding Procedures to govern the Sale on December 16, 2024 [D.I. 444] (the "Bid Procedures Order").

5.     On December 20, 2024, the Debtors filed the Cure Notice, which identifies those executory contracts and unexpired leases that may be assumed and assigned to a Successful Bidder in connection with the Sale or other disposition of substantially all of the Debtors' assets, together with the Debtors' proposed cure amounts to be paid in connection with any assumption and assignment of such contracts and leases, including the Leases. The Landlords have not yet received adequate assurance information relating to any Successful Bidder, and reserve all rights to raise other and further objections once a Successful Bidder is identified and Landlords receive adequate assurance of future performance information for any such bidder.

6.     Landlords file this Objection in order to preserve all of their rights with respect to any defaults under their Leases to be cured at the time of any assumption and assignment of their

---

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

Leases to a Successful Bidder, and reserve their rights to raise further and other objections to the assumption and assignment of the Leases, including as to the Successful Bidder's ability to provide adequate assurance of future performance under the Leases, as well as to the final forms of any Sale Order and/or asset purchase agreement ("APA").

II. **ARGUMENT**

7. While Landlords do not generally object to a sale of the Debtors' assets to maximize the value of the estates for the benefit of all creditors, including as to Landlords' Leases, Landlords do object to any proposed assumption and assignment of the Leases unless and until the Debtors and the Successful Bidder comply with all of the requirements of Sections 365 of the Bankruptcy Code. Absent the ability, or willingness, of the Debtors and any proposed assignee to satisfy said requirements, the Court should deny any proposed assumption and assignment of the Leases and Landlords preserve all rights. In addition, the amounts set forth in the Cure Notice for the Leases do not reflect all outstanding balances due and owing to Landlords under the Leases, or account for accruing or accrued, but unbilled charges or obligations under the Leases which may come due in the future.

    **A.    The Debtors' Proposed Cure Amounts Do Not Provide For Payment Of All Obligations Due and Owing Under The Leases.**

8. To assume and assign the Leases, the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee —
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired

> lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

9.     The Landlords' cure, as compared to the Debtors' cure is summarized more fully in Schedule A attached hereto, and those charges comprising the Landlords' cure are more fully detailed in Exhibits 1 through 26, which are attached hereto and incorporated into this Objection by this reference.[4]

10.    In addition, the Debtors' proposed cure amounts do not account for accruing but unbilled charges which may come due in the future, and do not take into account any actual pecuniary losses arising from defaults under the Leases that have been incurred by the Landlords, such as for attorney's fees, costs and interest. The cure amounts set forth by the Debtors must be modified to reflect additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein. Any such assumption of Landlords' Leases must comply with all the requirements of section 365 of the Bankruptcy Code, including that such assumption remain subject to all provisions of the Leases.

---

4  Unless otherwise indicated, Landlords' cures do not include charges that are billed or come due after the filing of the Cure Notice or charges that are billed directly to the Debtors, including in some cases, real estate taxes. In addition, unless otherwise set forth on the exhibits to Schedule A, Landlords' cures do not include charges for January 2025, but Landlords reserve the right to add such charges if they are not timely paid by the Debtors. To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts. The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserves the right to payment (and amend this Objection to the extent necessary) for any amounts that come due under the Leases through the later of the date of any cure payment or effective date of assumption. In addition, unless otherwise indicated, Landlords' cure is exclusive of attorneys' fees, interest and costs that form the basis of the Landlords' actual pecuniary losses. Presently, Landlords estimate that their attorneys' fees incurred to date are in an amount not less than $3,500 per Lease.

11. Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease. As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); accord, In re Valley View Shopping Ctr., L.P., 260 B.R. 10, 25 (Bankr. D. Kan. 2001); In re Mushroom Transp. Co., Inc., 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987). Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened." In re Frontier Properties, Inc., 979 F.2d 1358, 1367 (9th Cir. 1992). Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed. In re Building Block Child Care Centers, Inc., 234 B.R. 762, 765 (9th Cir. BAP 1999); accord, In re Fifth Taste Concepts Las Olas, LLC, 325 B.R. 42, 49 (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults.") (emphasis in original).

12. To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend this Objection to include such amounts. Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." See, e.g., In re Rachels Indus., Inc., 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990), therefore, accrued but not yet due, and obligations that are accruing but not yet billed under the Leases, are not "defaults" that require cure at the time of assumption, but are to be paid when due under the terms of the Leases in the ordinary course. The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserve the right to seek payment (and amend this Objection

to the extent necessary) from the Debtors or any prospective assignee of the Leases for any amounts that come due under the Leases, either as cure as of the time of the assignment of the Leases, or when properly billed under the Leases in accordance with their terms.

13. In addition to the current outstanding rent and other monthly charges due, and not yet paid under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or any assignee, either as cure or when properly billed under the Leases:

    i. *Year-end adjustments and reconciliations; Indemnification Obligations*

14. In addition to the rent and related monthly charges due under the Leases, together with attorneys' fees, costs, and interest, there are some charges for which the Debtors bear responsibility under the Leases that either have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods, or will not be known by the Landlords until after the assumption and assignment of the Leases. By way of example, as is typical in modern commercial leases, the Debtors pay fixed minimum rent, along with their pro-rata share of certain "Operating Expenses," which include but are not limited to such charges as utilities, real property taxes, insurance, common area maintenance expenses ("CAM"), HVAC maintenance expenses, and the like. Certain of these charges are estimated prospectively based on budgeted amounts compared to a base year, billed to and paid by the tenant on a monthly basis during the year, and subject to later reconciliation based on actual expenses incurred, typically after year-end. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (*i.e.*,

year-end reconciliations and adjustments that accrued in 2023 may not yet have been billed, and such charges that are accruing for 2024 will not be billed until 2025). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.

15. Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Leases and, therefore, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time. Nevertheless, Debtors, or any prospective assignee, remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due in the ordinary course under the Leases in accordance with their terms. Therefore, in order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), Debtors (or any potential assignee) must provide Landlords with adequate assurance that such accrued, but unbilled, obligations will be satisfied when billed in the future, irrespective of the period in which they relate, and Landlords' rights and remedies with respect thereto are reserved.

16. The Debtors (or any successor) assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under the Leases.[5] Any sale order should clearly state that the Debtors (or the assignee) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment. In addition, any provision in a sale order that purports to release the Debtors (or successor) of further liability based

---

[5] Any ability to assume and assign the Leases is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Leases.

upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

17. Landlords, therefore, request that any order approving the assumption and assignment of any of their Leases specifically provide that the assignee of the Leases shall be responsible for all unpaid year-end adjustments when such charges become due in accordance with the terms of the Leases, whether accruing prior to or after the effective date of assumption and assignment of the Leases. If the assignee will not agree to incur the potential cost (or benefit) of such year-end adjustments and reconciliations, any order approving the assumption and assignment of the Leases should require that the Debtors establish an escrow equal to 150% of the average year-end adjustments and reconciliations for the prior three (3) years for each Lease to assure that any amounts due will be available to Landlords when the year-end adjustments are actually billed and due pursuant to the terms of the respective Lease.

18. Similarly, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims, which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors or their agents. Again, any assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption and assignment of the Leases. Nothing in any sale order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the

Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

    *ii.*    *Attorneys' fees, costs and interest*

19.    Where, as here, there are defaults under leases sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play, and the Landlords are entitled not only to a cure of any defaults but also compensation for their actual pecuniary losses resulting from such defaults.  See 11 U.S.C. § 365(b)(1)(A) and (B).  The principle is well-recognized.  In re LCO Enters., 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).  Each of the Leases contain provisions for the recovery of attorneys' fees, costs and interest in the event of defaults or to otherwise compel compliance with the terms of the Leases.  Bankruptcy courts have held that attorneys' fees incurred in the enforcement of the obligations, covenants and conditions of a lease are proper components of a cure claim, and recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) upon assumption and assignment of a lease if the underlying lease provides for them.  In re Entm't, Inc., 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998).  "[T]here is no logical distinction, for purposes of § 365, between claims for attorney's fees in connection with pre-petition defaults and such claims in connection with post-petition defaults.").  Id. at 154.  The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay).  Id. at 152; see also, In re Crown Books Corp., 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail

Properties v. Loews Cineplex Entm't Corp., et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Casualty & Surety Co. Of Am. v. Pac. Gas & Elec., 127 S. Ct. 1199, 1206 (2007).

20.     Here, Landlords have incurred attorneys' fees enforcing their rights under the Leases and, pursuant to the Leases, are entitled to recover those attorneys' fees from the Debtors as cure as an obligation under the Leases.  Landlords estimate their attorneys' fees and costs through any hearing on the assumption and assignment of their Leases to be approximately $3,500 per Lease.  Landlords reserve the right to supplement their response to provide such further attorneys' fees information as may be requested by Debtors, and to amend or reconcile such fees to the actual fees incurred at the time of the assumption and assignment of their Leases.

**B.     The Cure Amounts Serve Only As Estimates.**

21.     Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend this Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases as of the time of the filing of this Objection.

**III.     JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS**

22. To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

**IV.     RESERVATION OF RIGHTS**

23. Landlords reserve their rights to further object to any proposed assumption or assignment of the Leases on additional grounds including, without limitation, Debtors' or a prospective assignee's showing of adequate assurance of future performance as required by Bankruptcy Code section 365(b)(1)(C) and (f)(2)(B), consistent with the Bidding Procedures Order, and any other objections to the proposed assumption and assignment of the Leases based upon any new information provided by Debtors or a proposed assignee or upon any different relief requested by Debtors.

**V.     CONCLUSION**

WHEREFORE, Landlords respectfully request that the Court enter an order consistent with the foregoing Objection and for such other and further relief as may be just and proper under all of the circumstances.

| | |
|---|---|
| Dated: January 3, 2025<br>Wilmington, Delaware | */s/ Leslie C. Heilman*<br>Leslie C. Heilman (DE No. 4716)<br>Laurel D. Roglen (DE No. 5759)<br>Margaret A. Vesper (DE No. 6995)<br>**BALLARD SPAHR LLP**<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail: heilmanl@ballardspahr.com<br>     roglenl@ballardspahr.com<br>     vesperm@ballardspahr.com<br><br>-and-<br><br>Dustin P. Branch, Esquire<br>Michael S. Myers, Esquire<br>Nahal Zarnighian, Esquire<br>Sara Shahbazi, Esquire<br>**BALLARD SPAHR LLP**<br>2029 Century Park East, Suite 1400<br>Los Angeles, California 90067-2915<br>Telephone: (424) 204-4400<br>Facsimile: (424) 204-4350<br>E-mail: branchd@ballardspahr.com<br>     myersm@ballardspahr.com<br>     zarnighiann@ballardspahr.com<br>     shahbazis@ballardspahr.com<br><br>*Counsel to Acadia Realty Limited Partnership, ARC CPFAYNC001,LLC, ARC MCLVSNV001, LLC, ARC TSKCYMO001, LLC, ARG LSSALMD001, LLC, Azalea Joint Venture, LLC, BMA Springhurst, LLC, Brixmor Operating Partnership LP, Continental Realty Corporation, Deutsche Asset & Wealth Management, Federal Realty OP LP, FR Grossmont, LLC, Gerrity Group, LLC, PRIME/FRIT Mission Hills, LLC, RD Management, LLC, Realty Income Corporation, The Macerich Company, and The Sterling Organization, LLC* |

**SCHEDULE A**

| STORE NO. | CENTER | LOCATION | DEBTORS' CURE | LANDLORDS' CURE[6] | EXHIBIT NO. |
|---|---|---|---|---|---|
| **ACADIA REALTY LIMITED PARTNERSHIP** | | | | | |
| 9043 | Branch Plaza (Pet Supplies Plus) | Smithtown, NY | $0.00 | Agree | n/a |
| 385 | Palm Coast Landing (The Vitamin Shoppe) | Palm Coast, FL | $0.00 | $754.08 | 1 |
| 666 | Roosevelt Galleria (The Vitamin Shoppe) | Chicago, IL | $0.00 | $2,021.78 | 2 |
| **ARC CPFAYNC001,LLC** | | | | | |
| 160 | Cross Pointe Centre (The Vitamin Shoppe) | Fayetteville, NC | $0.00 | $3,366.69 | 3 |
| **ARC MCLVSNV001, LLC** | | | | | |
| 640 | Montecito Crossing (The Vitamin Shoppe) | Las Vegas, NV | $0.00 | $3,353.41 | 4 |
| **ARC TSKCYMO001, LLC** | | | | | |
| 460 | Tiffany Springs Market Center (The Vitamin Shoppe) | Kansas City, MO | $46.81 | Agree | n/a |
| **ARG LSSALMD001, LLC** | | | | | |
| 295 | Lord Salisbury Center (The Vitamin Shoppe) | Salisbury, MD | $0.00 | $5,350.28 | 5 |
| **AZALEA JOINT VENTURE, LLC** | | | | | |
| 653 | Azalea Regional Shopping Center (The Vitamin Shoppe) | South Gate, CA | $0.00 | $2,816.91 | 6 |
| **BMA SPRINGHURST, LLC** | | | | | |
| 590 | Springhurst Towne Center (The Vitamin Shoppe) | Louisville, KY | $0.00 | Confirming | To be provided if do not agree |
| **BRIXMOR OPERATING PARTNERSHIP, LP** | | | | | |
| 128 | Annex of Arlington (The Vitamin Shoppe) | Arlington Heights, IL | $0.00 | $2,350.75 | 7 |
| 4439 | Bennetts Mills Plaza (Pet Supplies Plus) | Jackson, NJ | $0.00 | Agree | n/a |
| 4152 | Berkshire Crossing (Pet Supplies Plus) | Pittsfield, MA | $0.00 | Agree | n/a |

---

[6] Amounts are exclusive of attorneys' fees, costs and interests (among other charges), which fees, costs and interests shall be reconciled and added to the cure at the time of any assumption and assignment of the Leases consistent with the points raised in the Objection.

| | | | | | |
|---|---|---|---|---|---|
| 861 | Burlington Square (The Vitamin Shoppe) | Burlington, MA | $0.00 | $398.80 | 8 |
| 152 | Clearwater Mall (The Vitamin Shoppe) | Clearwater, FL | $1,034.84 | $17,383.89 | 9 |
| 233 | Delhi Shopping Center (Pet Supplies Plus) | Cincinnati, OH | $0.00 | Agree | n/a |
| 235 | Florence Square (Pet Supplies Plus) | Florence, KY | $0.00 | Agree | n/a |
| 889 | The Freedom Square (The Vitamin Shoppe) | Naples, FL | $0.00 | Agree | n/a |
| 234 | Harpers Station (Pet Supplies Plus) | Cincinnati, OH | $0.00 | $456.50 | 10 |
| 4078 | Lunenberg Crossing (Pet Supplies Plus) | Lunenberg, MA | $0.00 | $1,418.92 | 11 |
| 3022 | Maple Village (Wag N Wash) | Ann Arbor, MI | $0.00 | $271.89 | 12 |
| 0054 | Ridge Plaza (Pet Supplies Plus) | Arlington Heights, IL | $0.00 | Agree | n/a |
| 694 | Roosevelt Mall (The Vitamin Shoppe) | Philadelphia, PA | $0.00 | $11,031.47 | 13 |
| 4265 | Roseville Center (Pet Supplies Plus) | Roseville, MN | $0.00 | $5,136.55 | 14 |
| 4249 | Sunshine Square (Pet Supplies Plus) | Medford, NY | $0.00 | $4,533.02 | 15 |
| Unknown | Townshire (Buddy's Home Furnishings) | Bryan, TX | Unknown | $5,419.59 | 16 |
| 882 | Whitehall Square (The Vitamin Shoppe) | Whitehall, PA | $488.31 | $6,313.37 | 17 |
| 9012 | Wilkes-Barre Township Marketplace (Pet Supplies Plus) | Wilkes-Barre Township, PA | $0.00 | $922.52 | 18 |
| **CONTINENTAL REALTY CORPORATION** | | | | | |
| 29 | Mango Plaza (Buddy's Home Furnishings) | Seffner, FL | $435.09 | $7,693.34 | 19 |
| 238 | Oakland Plaza (The Vitamin Shoppe) | Troy, MI | $0.00 | $7,624.44 | To be provided |
| **DEUTSCHE ASSET & WEALTH MANAGEMENT** | | | | | |
| 317 | City Place at The Promenade (The Vitamin Shoppe) | Edgewater, NJ | $0.00 | Agree | n/a |
| 411 | Highlands Ranch (The Vitamin Shoppe) | Flower Mound, TX | $0.00 | $20,282.83 | 20 |

| 4069 | The Market at Parmer Lane (Pet Supplies Plus) | Austin, TX | $0.00 | Agree | n/a |
|---|---|---|---|---|---|
| 224 | Wicker Park Commons (Pet Supplies Plus) | Chicago, IL | $0.00 | Agree | n/a |
| **FEDERAL REALTY OP, LP** | | | | | |
| 504 | Bala Cynwyd Shopping Center (The Vitamin Shoppe) | Bala Cynwyd, PA | $33.36 | Agree | n/a |
| 9070 | Langhorne Square (Pet Supplies Plus) | Levittown, PA | $0.00 | Agree | n/a |
| **FR GROSSMONT, LLC** | | | | | |
| 183 | Grossmont Center (The Vitamin Shop) | La Mesa, CA | $0.00 | Agree | n/a |
| **GERRITY GROUP, LLC** | | | | | |
| 182 | Marketplace at Birdcage (The Vitamin Shoppe) | Citrus Heights, CA | $64.10 | Agree | n/a |
| 673 | Santa Rita Plaza (The Vitamin Shoppe) | Salinas, CA | $0.00 | $102.58 | 21 |
| **PRIME/FRIT MISSION HILLS, LLC** | | | | | |
| 859 | Olivo at Mission Hills (The Vitamin Shoppe) | Mission Hills, CA | $0.00 | Agree | n/a |
| **RD MANAGEMENT, LLC** | | | | | |
| 32 | Seminole Centre (Buddy's Home Furnishings) | Seminole, FL | $491.75 | $7,515.71 | 22 |
| 9076 | Target Shopping Center (Pet Supplies Plus) | Glenville, NY | $13,790.05 | $17,155.02 | 23 |
| **REALTY INCOME CORPORATION** | | | | | |
| 7250 | Distribution Center (The Vitamin Shoppe) | Ashland, VA | $0.00 | Agree | n/a |
| 593 | 2501 W 95th Street (The Vitamin Shoppe) | Evergreen Park, IL | $3,139.78 | $3,340.09 | 24 |
| 0043 | 26230 Hoover Road (Pet Supplies Plus) | Warren, MI | $0.00 | Agree | n/a |
| Unknown | Woodbury Lakes (The Vitamin Shoppe) | St. Paul, MN | Unknown | $16,155.00 | 25 |
| **THE MACERICH COMPANY** | | | | | |
| 0057 | Green Acres (The Vitamin Shoppe) | Valley Stream, NY | $0.00 | Agree | n/a |
| 606 | Lakewood Center (The Vitamin Shoppe) | Lakewood, CA | $0.00 | Agree | n/a |
| **THE STERLING ORGANIZATION, LLC** | | | | | |
| 328 | Park North (The Vitamin Shoppe) | San Antonio, TX | $0.00 | $6,183.61 | 26 |

| 4061 | Red Top Plaza (Pet Supplies Plus) | Libertyville, IL | $0.00 | Agree | n/a |
| 4101 | State Road Plaza North (Pet Supplies Plus) | Oak Lawn, IL | $0.00 | Agree | n/a |