**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC. *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |

**OBJECTION, JOINDER AND RESERVATION OF RIGHTS OF**
**PENTEX FRANCHISEES TO NOTICE OF POSSIBLE ASSUMPTION AND**
**ASSIGNMENT AND CURE COSTS WITH RESPECT TO EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES**

Pentex RTO, LLC, EightSixThree RTO, LLC, Pentex Top Left, LLC and Pentex 1848, LLC (individually or collectively, as applicable, "Pentex" or "Franchisee(s)") by and through their undersigned counsel, respectfully submit this objection (this "Objection") to the *Notice of Assumption and Assignment and Cure Costs with Respect to Executory Contracts and Unexpired Leases* [D.I. 487] (the "Cure Notice") filed by the above-captioned Debtors (the "Debtors" or "Franchise Group"). In support of its Objection, Pentex states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); ValorAcquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

**PRELIMINARY STATEMENT**

1.      In connection with their proposed asset sales, the Debtors seek to potentially assume and assign Franchise Agreements (as defined below) entered into between Debtor Buddy's Franchising and Licensing LLC (the "<u>Franchisor</u> "or "<u>Buddy's Franchising</u>") and Pentex[2], which govern the parties' franchisor-franchisee relationship and respective rights and obligations related to seventy-three (73) Buddy's branded stores operated by Pentex.  However, the Debtors are in default under the Franchise Agreements.  These defaults include material incurable breaches of non-competition provisions that are essential elements of Pentex's bargained-for rights under the Franchise Agreements.

2.      Even assuming that the Franchise Agreements could be assumed and assigned notwithstanding these material incurable breaches, the cure amounts set forth in the Cure Notice are incorrect.  The actual cure amounts due to Pentex consist of its Section 7 Claim (as defined below) in the amount of no less than $366,821.06, plus all additional amounts (which Pentex asserts are at least $13 million) that are due as damages based upon the Franchisor's breaches of the Franchise Agreements.  All such cure amounts must be paid before the Debtors may assume and assign the Franchise Agreements.  Additionally, to the extent the Franchise Agreements are assignable, they must be assumed and assigned in their entirety without amendment, and adequate assurance of future performance must be provided.

**RELEVANT BACKGROUND**

3.      On November 3, 2024 (the "<u>Petition Date</u>"), the above-captioned Debtors, including Buddy's Franchising, filed voluntary petitions for relief under chapter 11 of title 11 of

---

[2] The Cure Notice incorrectly indicates that the counterparty to all Pentex Franchise Agreements is Pentex Franchises, LLC.  However, the actual Pentex franchisee entities are Pentex RTO, LLC, EightSixThree RTO, LLC, Pentex Top Left, LLC and Pentex 1848, LLC, each of which is a Franchisee with respect to certain stores.

the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (this "Court").

4.     The Debtors privately hold and operate franchised businesses. Their current collection of brands and business segments include, among others, Buddy's Home Furnishings ("Buddy's") and American Freight ("American Freight").

**A.     The Franchise Agreements with Pentex.**

5.     Pentex is one of the largest franchisees of Buddy's, currently operating seventy-three (73) stores. The rights and obligations of the parties related to sixty-three (63) of those stores are governed by that certain *Franchise Agreement* entered into on December 1, 2017, and that certain *Addendum to the Franchise Agreement* entered into on December 1, 2017 (as may be amended from time to time, the "2017 Franchise Agreement").

6.     The following additional Franchise Agreements, together with all related Addendums, amendments and exhibits, govern the parties' relationship related to the other ten (10) Buddy's stores operated by Pentex: (i) *Franchise Agreement* entered into on June 5, 2019 for Stores 1065, 1067, 1068, 1069, and 1079; (ii) *Franchise Agreement* entered into on August 10, 2020 for Store 368; (iii) *Franchise Agreement* entered into on December 2, 2021 for Store 513 and 445; and (iv) *Franchise Agreement* entered into on March 1, 2022 for Store 106 (collectively, the "Franchise Agreement").[3]

7.     The Franchise Agreement serves as a single franchise agreement for all Retail Businesses (as defined in the Franchise Agreement) owned and operating by Pentex as wells as those subsequently acquired and/or developed by Pentex (collectively, the current and future Retail

---

[3] An additional Franchise Agreement was entered into on July 29, 2021 for Store 105. Store 105 has closed, and the July 2021 Agreement has been terminated. Accordingly, this Franchise Agreement cannot be assumed and assigned.

Businesses owned and operated by Pentex are referred to as the "Pentex Franchised Businesses").[4] *See* 2017 Franchise Agreement, ¶ C.

8. The term of the Franchise Agreement is 10 years, which commenced in of December 2017 and would, in the absence of earlier termination due to the Franchisor's breaches, expire in December 2027.

    **1)**    **Non-Compete Provision of the Franchise Agreement**

9. The Franchise Agreement restricts the ability of the Franchisor and its affiliates to open competing business within the Franchisee's established territories. Under the Franchise Agreement, "Territory" means the geographic area assigned to each Pentex Franchised Businesses. *See* 2017 Franchise Agreement, Section 1(g). The Territories of the Pentex Franchised Businesses range from a two to ten mile radius from each store address. *See* 2017 Franchise Agreement, Exhibit A.

10. The Franchise Agreement expressly precludes the Franchisor from establishing "either a company-owned or franchised Buddy's Retail Business location within the Territory under the Trademarks…." *See* Franchise Agreement, Section 2(b). Furthermore, the Franchise Agreement expressly precludes the Franchisor or its affiliates from operating any "Competitive Business" within any of Pentex's Territories. *See* Franchise Agreement, Section 2(d)(ii) ("[Franchisee] acknowledge[s] and agrees that *[Franchisor] and [its] affiliates* may . . . operate and grant to others the right to operate retail businesses or any other business, *other than a Competitive Business*, at any location (including within the Territory) . . ." (emphasis added). "Competitive Business" is defined to include "any rent-to-own, rental purchase, lease purchase or

---

[4] The relevant provisions of the 2017 Franchise Agreement are substantively similar or identical to all of the other Franchise Agreements between Franchisor and Pentex.

other business that leases, rents, sells or distributes home furnishings, electronics or appliances through any channel, including, without limitation, business conducted by means of retail outlets, internet or direct marketing." *See* Franchise Agreement, Section 1(d).

11. Furthermore, pursuant to Section 28(d) of the Franchise Agreement's Addendum, the parties agreed that "neither [Franchisor] nor our subsidiaries, will operate a Competitive Business within the protected territory of any Pentex Franchised Business' Authorized Location."

**2)    Section 7 Claims**

12. The Franchise Agreement provides for a certain amounts to be payable by the Franchisor to Pentex on a quarterly basis. *See* 2017 Franchise Agreement Addendum, Section 7. Franchisor's payment obligation under Section 7 of the Franchise Agreement Addendum (the "<u>Section 7 Claim</u>") is presently due and payable to Pentex in the amount of no less than $366,821.06.

**B.    <u>Franchisor's Breaches of the Franchise Agreements.</u>**

13. In or about February of 2020, an affiliate of Buddy's Franchising acquired American Freight. *See* Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings [D.I. 15] at ¶ 20. As a result, an affiliate of Buddy's Franchising became the owner of numerous American Freight stores within the Territories of numerous Pentex Franchised Businesses. These American Freight stores constituted Competitive Businesses as defined by the Franchise Agreement, resulting in a breach of Section 2(d)(ii) of the Franchise Agreement, which prohibited the Franchisor or its affiliates from operating any Competitive Business within a Pentex Territory.

14. Specifically, Franchisor's affiliates operated at least thirteen (13) American Freight Competitive Businesses within or in proximity to the following Pentex Territories:

    1) Store 104 – 3601 Pecan St., McAllen TX
    2) Store 80 – McAllen TX
    3) Store 91 - Pharr TX
    4) Store 445 - Corpus Christie TX
    5) Store 1045 - San Antonio TX
    6) Store 1063 - San Antonio TX
    7) Store 106 - Bellmead TX
    8) Store 393 - Waco TX
    9) Store 570 - Houston TX
    10) Store 1043 - Houston TX
    11) Store 573 - Houston TX
    12) Store 622 - Mesa AZ
    13) Store 352 - Tacoma WA

15. During these bankruptcy cases, the Franchisor's debtor-affiliates have engaged in store closing and liquidation sales for their American Freight store locations, including those within the Pentex territories. *See Interim Order and Final Orders Approving Procedures for Store Closing Sales* [D.I. 132 and 351]. Pursuant to these liquidation sales, the Franchisor's affiliates have sold competing merchandise of the same type sold by Pentex in its Buddy's stores, for below-cost liquidation values. This competition, in breach of the Franchise Agreement, occurred during the holiday months during which Buddy's stores rely on increased sales.

16. Pentex has been materially damaged by the Franchisor's breaches of the Franchise Agreements. These breaches are continuing.

**C.**    **The Proposed Sale.**

17. On November 11, 2024, the Debtors filed Debtors Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related

Relief; and (II)(A) Approving the Sale of the Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief. [D.I. 154]

18. On December 16, 2024, the Court entered the Order (REVISED) (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief (the "Bidding Procedures Order") [D.I. 444].

19. On December 20, 2024, in accordance with the Bidding Procedures Order, the Debtors filed the Cure Notice, which indicates that the Debtors may potentially seek to assume and assign the Pentex Franchise Agreement related to each of the Buddy's stores operated by Pentex. *See* Cure Notice, Exhibit A-4, pp. 12-15.

## ARGUMENT

### I. The Franchise Agreements Cannot be Assumed and Assigned Due to Incurable Material Defaults.

20. The Franchise Agreements cannot be assumed and assigned due to the existence of incurable material defaults. Pursuant to 11 U.S.C. § 365(b)(1)(A), a debtor-in-possession must cure, or provide adequate assurance of the prompt cure of any default, in order to assume an executory contract. However, material nonmonetary defaults must also be cured, and if such defaults are incurable—as is the case with past events that cannot be changed—they preclude the debtor-in-possession from assuming an executory contract. *See In re Vitanza*, Case No. 98-19611DWS, 1998 Bankr. LEXIS 1497, at *82-84 (Bankr. E.D. Pa. Nov. 13, 1998); *In re New Breed Realty Enters.*, 278 B.R. 314, 320 (Bankr. E.D.N.Y. 2002); *In re Lee West Enterprises, Inc.*, 179 B.R. 204, 208 (Bankr. C.D. Cal. 1995); *In re Fleming Companies, Inc.*, 499 F.3d 300, 302 (3d

Cir. 2007) (affirming bankruptcy court's decision to deny a request to excise a provision which would have required the assignee to supply groceries to the non-debtor from a specific location).

21. In the instant case, the Franchisor breached the Franchise Agreement's non-competition provision due to the Franchisee Group's operation of competing American Freight stores within Pentex's Territories. In entering into the Franchise Agreements, the Franchisor and Pentex agreed that in exchange for Pentex's payment of franchise and royalty fees and other performance of its obligations, the Franchisor and its affiliates would abide by their obligations, including the critical obligation not to damage the Franchisee's business by operating Competitive Businesses within Pentex's Territory. These protections afforded by Franchisee in the Franchise Agreement go to the very essence of the parties' relationship.

22. By the plain meaning of 11 U.S.C. § 365(b)(1)(A), an executory contract in which the debtor committed an incurable default may not be assumed. Additionally, case law confirms that an incurable non-monetary default acts as a bar to assumption when such default is material or caused substantial economic detriment. *See In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990).

> As discussed by the court in *In re New Breed Enterprises, Inc.*—
>
> [T]he Third Circuit articulated a standard which may be applied to determine whether the existence of an incurable non-monetary default precludes assumption of an executory contract or unexpired lease. [In *Joshua Slocum*], the court noted with approval the concept that "the [bankruptcy] court does retain some discretion in determining that lease provisions . . . may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets." *Joshua Slocum,* 922 F.2d at 1092 (*citing In re Mr. Grocer, Inc.,* 77 B.R. 349, 354 (Bankr. D.N.H.1987)). The Third Circuit found in *Joshua Slocum* that a provision in a shopping center lease, allowing for the termination of the lease if certain minimum sales figure were not realized, was "material in the sense that it goes to the very essence of the contract, i.e., the bargained for exchange," and that it was "also reflective of the economic

> terms of the lease agreement governing occupancy." *Joshua Slocum,* 922 F.2d at 1092.

278 B.R. at 321-22.

23. The Franchisor's breaches of the non-competition provision of the Franchise Agreement Territory Provision and Purchase Option are "historical facts" and constitute incurable defaults that preclude assumption and assignment under Section 365 of the Bankruptcy Code. *See id*. Pre-petition, the Franchisor has materially, incurably, breached the Franchise Agreements by permitting its' affiliates operation of Competitive Businesses in the Pentex Territories. Pentex has been damaged by the Debtors' violation of the Territory Provision and Purchase Option. Therefore, the assumption and assignment of the Franchise agreements must be denied.

## II. Even if the Debtors Could Assume and Assign the Franchise Agreements, the Debtors Owe a Cure Amount Related to the Section 7 Claim and Other Damages.

24. Even if this Court allows the Debtors to assume and assign the Franchise Agreements despite the Debtors' breaches, the Debtors, pursuant to Section 365(b)(1) of the Bankruptcy Code, must cure all outstanding amounts owed under the assumed Franchise Agreements in full and provide adequate assurance of future performance prior to assuming such contracts. *See In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 318 (2003) ("In other words, the debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement.").

25. The Initial Cure Notice lists the "Cure Amount" as $0.00 for each Franchise Agreement listed therein. As of the date of filing this Objection, the Franchisor is obligated to Pentex for its Section 7 Claim of not less than $366,821.06. In addition, to the extent that the Court finds that the Franchise Agreement can be assumed and assigned notwithstanding material incurable breaches, then such default must be cured through the payment of money damages. Pentex asserts that its damages resulting from Franchisor's breach of the Franchise Agreement are

at least $13,000,000, which amount consists of its estimates of direct damages, consequential damages and lost profits due to the impermissible Competing Businesses operated by Franchise group within Pentex's Territories.

26.     These amounts, as well as all other amount owing to Pentex that accrue through the date of assumption, must be paid in full in connection with any permitted assumption and assignment of the Franchise Agreement.

### III.     To the Extent the Franchise Agreements are Assignable, They Must be Assumed and Assigned in Their Entirety Without Amendment, and Adequate Assurance of Future Performance Must be Provided.

27.     In the event that the Court finds that the Franchise Agreements can be assumed and assigned, which Pentex disputes, the Franchise Agreements must be assumed and assigned in their entirety without amendment. A decision to assume or reject an executory contract is "an all or nothing proposition." *Schlumberger Resource Management Serv., Inc. v. Cellnet Data Sys., Inc. (In re Cellnet Data Sys., Inc.)*, 327 F.2d 242, 249 (3d Cir. 2003). Thus, if a debtor assumes a contract, it must do so with all the benefits, as well as the burdens. *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 183 (Bankr. E.D. Pa. 2010) (holding that the debtor "must either assume the whole contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits"). The assumption and assignment of an executory contract does not give the debtor or the assignee the ability or the right to modify the terms of the agreement being assumed and assigned. *See e.g. Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001); *see also In re Federal-Mogul Global, Inc.*, Case No. 05-2423, 2007 U.S. App. LEXIS 6120, at *9 (3d Cir. Mar. 15, 2007) (explaining that the debtor is not able to modify obligations in contract assumed and assigned pursuant to Section 365 of the Bankruptcy Code). Accordingly, if the

Debtors seek to assume or assign the Franchise Agreements, they must do so in their entirety, without amendment.

28. Further, Pentex demands adequate assurance of future performance once the Debtors identify any buyer of the Debtors' assets.

## JOINDER

29. Pentex joins in the *Objection of Buddy Mac Holdings, LLC to Notice of Possible Assumption and Assignment and Reservation of Rights* [D.I. 644] and any other contract counter-party's objection to the Cure Notice to the extent such objection is applicable to Pentex and not inconsistent with its objections herein.

## RESERVATIONS OF RIGHTS

30. Pentex reserves the right to amend or supplement this Objection in all respects, including (i) to assert all additional amounts become owed to it between the date hereof and the date of any assumption or assumption and assignment of the Franchise Agreements that otherwise must be cured under Section 365(b)(1)(A) of the Bankruptcy Code; (ii) to supplement with respect to facts subsequently discovered; or (iii) to assert any buyer-specific objections.

31. Pentex is also a sub-tenant under the *Second Amended and Restated Master Lease Agreement* dated November 3, 2015, and entered into by Store Master Funding IV, LLC, as landlord/lessor, and Buddy's Northwest, LLC as lessee/sub-landlord. Pentex's relationship as sub-tenant of Buddy's Northwest, LLC is memorialized through a *Sublease Agreement* dated December 1, 2017, and a *Consent to Sublease Agreement* dated February 20, 2018. These agreements are not included among the contracts and leases listed in the Cure Notice, and therefore the Debtors (who are not contract counterparties) do not appear to be seeking any relief related to these agreements. However, to the extent that the Debtors seek any relief related to the aforementioned master lease or sublease, Pentex reserves all of its rights and objections.

32.     Pentex reserves all rights to raise additional objections to any attempt to have the Franchise Agreements assigned at a later date.  Pentex further reserves all rights it has under the Franchise Agreements, the orders related to any proposed sale of the Debtors' assets including the Franchise Agreements, and applicable law, including, but not limited to, its rights to seek adequate protection and/or relief from the automatic stay.

## CONCLUSION

**WHEREFORE,** Pentex respectfully requests that this Court enter an Order:  (a) sustaining this Objection; (b) modifying any order, schedule or other operative document approving or implementing the sale of the Debtors' assets to provide that the Pentex Franchise Agreements are not assumed and assigned; and (c) Granting such other, further, and different relief as this Court deems just and proper.

Dated:  January 8, 2025            **BURR & FORMAN LLP**

 */s/ J. Cory Falgowski*
 J. Cory Falgowski (No. 4546)
 222 Delaware Avenue, Suite 1030
 Wilmington, DE 19801
 Telephone:  302-830-2312
 Email:  jfalgowski@burr.com

*Counsel for Pentex Franchisees*