# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC.[1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**HOLDCO LENDERS' FIRST REQUESTS FOR THE PRODUCTION OF DOCUMENTS
TO THE HOLDCO DEBTORS IN CONNECTION WITH THE PLAN AND
DISCLOSURE STATEMENT**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by

Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, the Lenders, as defined

in that certain *Credit Agreement*, dated as of August 21, 2023, among Freedom VCM Interco, Inc.,

Freedom VCM, Inc., and Alter Domus (US) LLC (as amended, restated, supplemented or

otherwise modified from time to time) (the "**HoldCo Lenders**") serve, in their capacity as HoldCo

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Lenders, their First Requests for the Production of Documents (the "**Requests**" and each, a "**Request**") to Freedom VCM, Inc. and Freedom VCM Interco, Inc. (together, the "**HoldCo Debtors**") in connection with the Disclosure Statement and Plan.  Responses to these Requests must be served on **Samuel P. Hershey, White & Case LLP, 1221 Avenue of the Americas, New York, New York, 10020**, counsel to the Ad Hoc Group of Freedom Lenders, immediately on a rolling basis, with production to be completed on or before **November 26, 2024**.

## DEFINITIONS

For the purposes of these Document Requests, the following Definitions shall apply:[2]

1.      "**Ad Hoc Group of First Lien Lenders**" shall have the meaning ascribed to it in the First Day Declaration.

2.      "**Affiliate**" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

3.      "**Alix Partners**" means AlixPartners, LLP.

4.      "**Allowed**" shall have the meaning ascribed to it in Section 1.12 of the Plan.

5.      "**American Freight Debtors**" shall have the meaning ascribed to it in Section 1.13 of the Plan.

6.      "**Avoidance Actions**" shall have the meaning ascribed to it in Section 1.19 of the Plan.

7.      "**B. Riley**" means B. Riley Financial, Inc. and its affiliates, including but not limited to the entities referred to in the First Day Declaration such as BRF, BRPI, and BRRII.

8.      "**Bankruptcy Code**" means title 11 of the United States Code, as amended.

---

[2] Capitalized terms not defined herein shall take on the definition provided in the Plan.

9.      "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

10.     "**Board**" means any board of directors, managers, or comparable supervisory body, or any group or committee with the responsibility of, among other things, governing the Debtors or overseeing the activities and operations of the Debtors.

11.     "**Board Materials**" means all documents and materials prepared for, presented to, reviewed by, or distributed to any member of the Board in connection with any Board or committee meeting or action, including but not limited to, meeting minutes, agendas, resolutions, presentations, Board books, reports, and any other documents shared with Board members or committee members for the purpose of decision-making, discussion, or record-keeping related to Board or committee activities.

12.     "**Cash Collateral**" means all cash of the Debtors as defined in the DIP Motion.

13.     "**Cash Management Motion**" means the *Debtors' Motion for Interim and final orders (I) Authorizing the Debtors to (A) Continue to Maintain Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Continue to Perform Intercompany Transactions; (II) Waiving Certain Operating Guidelines; (III) Suspending Time to Comply with Section 345(b) of the Bankruptcy Code; and (IV) Granting Related Relief* [D.I. 9].

14.     "**Causes of Action**" has the meaning set forth in Section 1.30 of the Plan.

15.     "**Commercial Tort Claims**" has the meaning set forth in the Uniform Commercial Code, Section 9-102(a)(13(A) and shall be given its broadest possible definition.

16.     "**Chapter 11 Cases**" means the voluntary chapter 11 cases commenced on the Petition Date by the Debtors in the Bankruptcy Court.

17.      "**Chapter 11 Investigation**" refers to the additional investigation lead by Petrillo and commercial in 2024 into, among other things, potential claims and Causes of Actions the Debtors' estates may have against Mr. Kahn, any other of their other current or former directors and officers, or any other third-parties arising from, or related to, among other things: (i) Franchise Group's sale of Badcock to Conn's in December 2023; (ii) the Take-Private Transaction; (iii) the Receivables Transactions; and (iv) Debtors' historical transactions and relationship with Mr. Kahn, as well as (v) the appropriateness of any releases by the Debtors' estates of their current directors and officers through these Chapter 11 Cases and under the Plan, as described on pages 8 and 9 of the Disclosure Statement.

18.      "**Communication**" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including without limitation, correspondence, documents, conversations, dialogues, discussions, e-mail, interviews, consultations, agreements, and other understandings.

19.      "**Complaint**" has the meaning set forth in the First Day Declaration.

20.      "**Concerning**," "**regarding**," "**in connection with**," "**relating to**," and/or "**referring to**" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

21.      "**Consenting First Lien Lenders**" has the meaning set forth in the First Day Declaration.

22.    "**Critical Vendors**" means any holder of a prepetition Critical Vendors Claim, Foreign Vendors Claim, Shippers & Logistics Providers Claim, and/or 503(b)(9) Claim, each as defined in the Critical Vendor Motion.

23.    "**Critical Vendor Motion**" means *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers & Logistics Providers, and 503(B)(9) Claimants; and (II) Granting Related Relief* [D.I. 10].

24.    "**Debtors**" means Franchise Group, Inc. and its affiliated debtors, that filed voluntary chapter 11 petitions under the Bankruptcy Code commencing the Chapter 11 Cases, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successors entities; and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

25.    "**Disclosure Statement**" means the *Disclosure Statement for the Joint Chapter 11 Plan of Franchise Group, Inc. and its Affiliated Debtors* [D.I. 151].

26.    "**Document**" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic mater, in draft or final form, including, but not limited to: any letter, correspondence, or Communication of any sort; photograph; sound recording; video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, or cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, text message, instant message, Bloomberg message, WhatsApp message, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act, or activity; projection, work paper, or draft; computer or computer network output or input, portable storage devices, e-mail, magnetic and/or optical medias, archived or back up data on any

of these medias on the cloud or otherwise, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice, or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, or press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, register, canceled check, deposit slip, charge slip, tax return (income or other), requisition, file, study, graph, or tabulation, and any and all other writings and recordings of whatever nature, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonable usable form; including, without limitation, all things meeting the definition of "documents" or "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definition of "writing" or "recording" set forth in Rule 1001 of the Federal Rules of Evidence. Any document with any marks such as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is a separate document within the meaning of this term.

27.    "**Ducera**" means Ducera Partners LLC.

28.    "**Existing Intercompany Equity Interests**" has the meaning set forth in Section 1.101 of the Plan.

29.    "**First Day Declaration**" means the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15].

30.    "**First Day Filings**" refers to the filings submitted on November 3 and 4, 2024 and argued during the First Day Hearing.

31.     "**First Day Hearing**" refers to the hearing held in the above-captioned matter on November 5 and 6, 2024.

32.     "**Franchise Group**" has the meaning set forth in the Disclosure Statement.

33.     "**HoldCo Debtors**" refers to Freedom VCM, Inc. and Freedom VCM Interco, Inc.

34.     "**Including**" means "including, without limitation" or "including, but not limited to."

35.     "**Independent Investigation**" has the meaning set forth in the First Day Declaration.

36.     "**Indictment**" has the meaning set forth in the First Day Declaration.

37.     "**Initial DIP Budget**" means the 13-week cash flow forecast statements of the Debtors that the use of Cash Collateral and proceeds of the DIP Facility are subject to as set forth in Exhibit 3 to the DIP Motion.

38.     "**Insider**" has the meaning set forth in section 101 of the Bankruptcy Code.

39.     "**Intercompany Claims**" has the meaning set forth in Section 1.101 of the Plan.

40.     "**Investigation Related Matters**" has the meaning set forth in Section 1.104 of the Plan.

41.     "**OpCo Debtors**" refers to Franchise Group, Inc. and its direct and indirect subsidiaries.

42.     "**Petition Date**" means November 3, 2024.

43.     "**Petrillo**" means Petrillo Klein Boxer LLP.

44.     "**Plan**" means the *Joint Chapter 11 Plan of Franchise Group, Inc. and its Affiliated Debtors* [D.I. 150].

45.     "**Prepetition Marketing Process**" refers to the prepetition marketing process described in paragraphs 13-19 of the DIP Declaration.

46.     "**Prophecy**" refers to Prophecy Asset Management LP.

47.     "**Relate**" and its variants encompass the terms "refer," "reflect," "constitute," "evidence," "in connection with," and "concern" and shall be construed to bring within the scope of the Document Request, as applicable, all documents and information that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Document Request, as applicable, including, but not limited to, all documents and information that reflect, record, memorialize, discuss, evaluate, consider, review, report, or otherwise evidence the existence of the subject matter of the Document Request, as applicable.

48.     "**RSA**" refers to that certain *Restructuring Support Agreement*, dated as of November 1, 2024, attached as Exhibit B to the First Day Declaration.

49.     "**Special Committee**" has the meaning set forth in the First Day Declaration.

50.     "**Take-Private Transaction**" has the meaning set forth in the First Day Declaration.

51.     "**Take-Private Transaction Committee**" refers to the "independent committee" described on pages 5 and 6 of the Disclosure Statement.

52.     "**TopCo**" has the meaning set forth in the Disclosure Statement.

53.     "**Willkie**" means Willkie Farr & Gallagher LLP.

54.     "**Young Conaway**" means Young Conaway Stargatt & Taylor, LLP.

55.     "**You**" and "**Your**" means the HoldCo Debtors.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions and for purposes of these Document Requests, the following Instructions shall be followed:

1.      In accordance with Rule 34(a) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, the Document Requests shall be deemed to include any document now or at any time in Your possession, custody, or control, including, but not limited to, documents in the possession, custody, or control of any Your current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entitles and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives, or other person acting or purporting to act on its or their behalf.  A document is deemed to be in Your possession, custody, or control it if is in Your physical custody, or if it is in the physical custody of any other person or entity and You:  (i) own such document in whole or in part; (ii) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (iii) have an understanding, express or implied, that You may use, inspect, examine, or copy such document when You sought to do so, or (iv) as a practical matter, have been able to use, inspect, examine or copy such document on any terms.  If any requested document was, but no longer is, in Your control, state the disposition of each such document.

2.      As the term " possession" pertains to e-mails, the term includes, but is not limited to, e-mails contained in Your electronic e-mail directories containing (i) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (ii) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (iii) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

3.      The word "all" shall also include "each of," and vice versa.  The word "any" shall be construed to mean "any and all" where the effect of such construction is to broaden the scope of the Document Request.

4.      In responding to each Document Request, You are to review and search all relevant files of appropriate entities and persons.

5.      All Document Requests shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the documents.

6.      You are to produce the original and all non-identical copies, including all drafts of each document requested.  If You are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.  Any document that cannot be produced in full shall be produced to the fullest extent possible.

7.      In accordance with Rule 34(b) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond with the categories in each Document Request.  The name of the file from which it was produced, the identity of the person from whose file it was produced, and the identity of the present custodian of that file each shall be set forth.  All documents requested herein shall be produced electronically as tagged image file format ("**TIFF**") or portable document format ("**PDF**") files, except that all spreadsheets and accounting and financial data, including those created with Excel software, shall be produced in a fully functional native form (i.e., in a linked format).

8.      If any responsive document is known to have existed and cannot now be located, or has been destroyed, discarded, or otherwise disposed, set forth a complete statement of the circumstances surrounding such loss, destruction, discarding, or other disposition, including:

a.      A description of the document, including the date, a summary of its contents and the identity of its author and the persons(s) to whom it was sent or shown:

b.      The last known custodian;

c.      Whether the document is missing or lost or was destroyed, discarded, or otherwise disposed;

d.      The date of loss, destruction, discarding, or other disposition;

e.      The reason(s) for destruction, discarding, or other disposition;

f.      The person(s) authorizing or carrying out such destruction, discarding, or other deposition; and

g.      The efforts made to locate lost or misplaced documents.

9.      In the event You seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, You shall produce as much of the document concerned as to which no claim of privilege or other limitation of discovery is made.  With respect to documents or portions of documents for which a claim of privilege or other limitation of discovery is made, You are instructed to provide a numeral list of the document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation is governed by state law, indicate the state of the privilege rule or other limitation invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected information: (i) the type of

document; (ii) the name and capacity of each author and recipient of the document; (iii) the general subject matter of the document in a manner sufficient to support the privilege or other protection claimed; (iv) the date of the document; (v) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production. Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged or protected information should be produced, but that portion of the document for which the privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

10.     Each Definition, Instruction, and Document Request herein shall be construed independently and not with reference to any other Definition, Instruction, or Document Request, for the purposes of limitation.

11.     If any meaning of any term in any Document Request herein is unclear to You, without waiver of the right to seek a full and complete response to the Document Request, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Document Request according to the assumed meaning.

12.     In accordance with Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, objections to any part of these Document Requests shall be stated in full and with specificity.  In the event

You interpose an objection to a Document Request, You must produce the documents to which objection is not made or provide testimony or information not objected to.

13.    Each Document Request shall be deemed continuing.  If, after responding, You obtain or become aware of any additional documents or information responsive to these Document Requests, production of such additional documents or information shall be made forthwith.

14.    "Including" shall not be construed to limit the scope of any Document Request.

15.    Whenever necessary to bring within the scope of a Document Request documents or information that might otherwise be construed to be outside its scope:

   a.    The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

   b.    The use of a word in its singular form shall be deemed to include within its use the plural form, and vice versa;

   c.    The use of the masculine form of a noun or pronoun shall include the feminine form, and vice versa; and

   d.    The use of the conjunctive or disjunctive, respectively, shall be construed as necessary to be inclusive rather than exclusive.

16.    Each paragraph, subparagraph, clause, and word therein should be construed independently and not by reference to any other paragraph, subparagraph, clause or word herein for purposes of limitation.

17.    Unless otherwise stated, each Request calls for production of documents from November 3, 2019 through the present.

## DOCUMENT REQUESTS

*Valuation*

13

1.      All Documents and Communications concerning the valuation of the HoldCo Debtors, the OpCo Debtors, or any of the Debtors' former business segments, including any (a) total enterprise value or fair market valuation; (b) valuation of the assets; and (c) valuation of any property including foreclosure or liquidation value of any property, including, but not limited to, any valuations in connection with the Take-Back Transaction, any other potential or consummated transactions, and the store-closings, liquidation sales and wind-down of the American Freight Debtors.

2.      All financial statements, projections, balance sheets, business plans, and solvency opinions for any of the HoldCo Debtors, OpCo Debtors, or any of the Debtors' former business segments.

3.      All Documents and Communications concerning the exhibits to the Disclosure Statement, including the Liquidation Analysis and Financial Projections, and any underlying data, assumptions, models and other related materials, such as any entity-specific liquidation analyses and entity-specific financial projections.

4.      All Documents and Communications concerning the Plan Supplement materials, including underlying data, assumptions, models and other related materials for each of the Plan Supplement materials/

5.      Documents sufficient to show any tax attributes of the Debtors (and their consolidated group), including any net operating losses, and projections of such attributes that are expected to be available following each transaction proposed in the Disclosure Statement, taking into account the utilization of such attributes to reduce the tax liability of the Debtors (and their consolidated group) with respect to such transactions and any reduction in such attributes by reason of Section 108(b) of the Internal Revenue Code of 1986, as amended.

6.      Documents sufficient to show the amount of gain expected to be recognized by the Debtors (and their consolidated group) with respect to each transaction proposed in the Disclosure Statement and the expected quantum of U.S. federal, state, and local income tax with respect thereto, taking into account any tax attributes of the Debtors (and their consolidated group) expected to be available to reduce the tax liability of the Debtors (and their consolidated group) with respect to such transactions.

7.      Any other existing tax analyses or reports concerning the transactions proposed in the Disclosure Statement.

8.      All Documents and Communications concerning the Debtors' projected cashflows and liquidity through emergence from the Chapter 11 Cases.

***Take-Private Transaction***

9.      All Documents and Communications between the Debtors and B. Riley concerning the transaction proposals described on page 5 of the Disclosure Statement.

10.     All Documents and Communications between the Debtors and B. Riley concerning B. Riley's determination that "it was interested in providing financing to facilitate a transaction but would need to do so in a manner that would not result in BRF controlling or consolidating Franchise Group," as described on page 5 of the Disclosure Statement.

11.     Regarding the Take-Private Transaction, all Documents and Communications concerning:

  a.   the formation, composition, advisors to, and mandate of the Take-Private Transaction Committee;

  b.   the Take-Private Transaction Committee's (a) "review of Mr. Kahn's take-private proposal and other strategic alternatives that were available to Franchise Group, including the potential sale of the Vitamin Shoppe" and

(b) determination that "Mr. Kahn's proposal was in the best interests of Franchise Group and its public shareholders" as described on pages 5 and 6 of the Disclosure Statement;

c. all reports, findings, summaries, or conclusions created by, for, or at the direction of the Take-Private Transaction Committee, including any Board Materials;

d. all valuations, analyses, reports, or estimates concerning the Debtors' solvency before, after or because of the Take-Private Transaction;

e. all tax analyses or reports concerning the Take-Private Transaction; and

f. any fairness opinions conducted in connection with the Take-Private Transaction.

12. All Documents and Communications concerning the creation of TopCo and the HoldCo Debtors in connection with the Take-Private Transaction as described on page 6 of the Disclosure Statement.

***Other Transactions and Strategic Alternatives Considered***

13. All Documents and Communications between the Debtors and B. Riley concerning the negotiation and terms of the Receivables Transactions described in pages 6 and 7 of the Disclosure Statement, including:

a. the Tranche 1 Receivables;

b. the Pathlight Credit Facility and its repayment in June 2024;

c. the Receivables Acquisition;

d. the Promissory Note and its cancellation in October 2024;

e. the Tranche 2 Receivables and Freedom II's obligations to deliver to Conn's;

      f.      the Funding Agreement; and

      g.      the Deferred Accrual and its payment in October 2024.

14.    All Documents and Communications concerning the Badcock Transaction, including:

    a.  the Debtors' consideration of and efforts to find alternative financing models for Badcock or a potential sale of or business combination with Badcock prior to the Take-Private Transaction;

    b.  the negotiation and terms of the Badcock combination with Conn's;

    c.  the negotiation and terms of the sale and leaseback transactions described on page 13 of the Disclosure Statement; and

    d.  Communications between the Debtors, on the one hand, and Conn's or B. Riley, on the other hand, concerning Conn's financial condition, solvency and chapter 11 cases.

15.    All Documents and Communications concerning the negotiation and terms of the Sylvan Learning sale.

16.    Any Board Materials, solicitations, informational and marketing materials, fairness opinions, and proposals concerning strategic initiatives pursued and evaluated by the Debtors since January 2023 as described on pages 13 and 14 of the Disclosure Statement, including, without limitation, the potential securitization financing of the Debtors' PSP business, potential monetization of The Vitamin Shoppe and Buddy's businesses, and the marketing of American Freight on a going concern basis.

17.    All Documents and Communications concerning (a) the "strategy" of the Franchise Group which "included the potential for rapid deleveraging of the Debtors through monetization

transactions involving the various business segments of the Franchise Group," as described on page 6 of the Disclosure Statement, and (b) the Debtors' statement on page 6 of the Disclosure Statement that this strategy "did not materialize due to . . . allegations made against Mr. Kahn regarding his alleged business association with Prophecy Asset Management LP."

***Investigations***

18.    All Documents and Communications concerning Prophecy, the Indictment, or the Complaint, including:

      a.   Documents the Debtors have produced to any third party, including the Securities and Exchange Commission, Department of Justice or any plaintiff;

      b.   Documents provided to Petrillo in connection with the Independent Investigation; and

      c.   Documents and Communications between Brian Kahn and any of the Debtors' directors and officers concerning Prophecy, the Indictment, or the Complaint.

19.    All Documents and Communications concerning the Independent Investigation, including:

      a.   Documents concerning the retention of advisors, including Petrillo, to conduct the Independent Investigation;

      b.    Documents concerning the scope, mandate, and timeline of the Independent Investigation;

      c.    Engagement letters with Petrillo to conduct the Independent Investigation;

      d.   Any Board Materials, reports, findings, summaries, presentations, or conclusions in connection with the Independent Investigation; and

     e.  Documents that support Petrillo's "findings" in connection with the independent Investigation and described on page 8 of the Disclosure Statement.

20.    All Documents and Communications concerning the Chapter 11 Investigation including:

     a.  Documents concerning the retention of advisors, including Petrillo, to conduct the Chapter 11 Investigation;

     b.  Documents concerning the scope, mandate, and timeline of the Chapter 11 Investigation;

     c.  Documents concerning the HoldCo Debtors oversight of the Chapter 11 Investigation;

     d.  Engagement letters with Petrillo to conduct the Chapter 11 Investigation;

     e.  Documents produced to Petrillo in connection with the Chapter 11 Investigation; and

     f.  Any Board Materials, reports, findings, summaries, presentations, or conclusions in connection with the Chapter 11 Investigation, including any Board Materials about the Chapter 11 Investigation.

21.    All Documents and Communications concerning potential or designated Investigation Related Matters.

22.    All Documents and Communications concerning the prepetition bonus program described in footnote 2 of the First Day Declaration.

23.    Documents sufficient to show any transfers (excluding wages and health benefits) made by any of the Debtors to any of their insiders from two years prior to the Petition Date, including any incentive, retention, or bonus payments.

24.    Documents sufficient to show all intercompany activity for the Debtors, including outstanding balances among the Debtors.

25.    All intercompany agreements between the HoldCo Debtors and any OpCo Debtors.

***RSA and Plan***

26.    All Documents and Communications concerning the formation, composition, advisors, and mandate of the Special Committee, including any work or analysis the Special Committee did with respect to the HoldCo Debtors in particular.

27.    All Documents and Communications concerning any of the (i) Causes of Action, (ii) Intercompany Claims, (iii) Chapter 5 Claims; or (iv) Avoidance Actions belonging to the HoldCo Debtors or the OpCo Debtors and their estates that are or might be retained, released, waived, abandoned, or extinguished under the RSAs and/or the Chapter 11 Plans.

28.    All Documents and Communications concerning Commercial Tort Claims held by any of the HoldCo Debtors.

29.    Documents sufficient to identify:

    a.    All Commercial Tort Claims that are encumbered under any security agreement held by any of the HoldCo Debtors;

    b.    All Commercial Tort Claims that are not encumbered under any security agreement held by any of the Debtors; and

    c.    All of the Debtors involved in each of the foregoing.

30.    Documents concerning any valuation, litigation risk, or estimated damages concerning any Commercial Tort Claims held by the HoldCo Debtors.

31.    All Documents and Communications, including Communications with the Consenting First Lien Lenders, concerning:

      a.   the negotiation and terms of the RSA, the Disclosure Statement, and the Plan;

      b.   waiving, moving, or extending any milestones under the RSA or Plan;

      c.   the Releases, Injunctions, and Exculpation provisions pursuant to the Plan, including the exceptions to those Plan provisions;

      d.   the classification and treatment of Claims and Interests in Article IV and V of the Plan;

      e.   the identification of any holders of Class 8 Claims and which Debtors the Class 8 Claims may be held against;

      f.   the treatment of the Intercompany Claims and Existing Intercompany Equity Interests under the Plan, including the treatment of any Intercompany Claims any of the HoldCo Debtors may have against the OpCo Debtors;

      g.   the terms of Section 6.6 of the Plan; and

      h.   the Chapter 11 Investigation.

32.    All Documents and Communications supporting Your contention on page 20 of the Disclosure Statement that "the Plan is in the best interests of the Debtors, their Estates, and all of its stakeholders, including the voting Classes," particularly Classes 7 and 8.

Dated:          November 16, 2024
                New York, New York

/s/ Samuel P. Hershey

**FARNAN LLP**
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

-and-

**WHITE & CASE LLP**
Thomas E Lauria (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: tlauria@whitecase.com

-and-

J. Christopher Shore (admitted *pro hac vice*)
Andrew T. Zatz (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
Erin Smith (admitted *pro hac vice*)
Brett Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: cshore@whitecase.com
azatz@whitecase.com
sam.hershey@whitecase.com
erin.smith@whitecase.com
brett.bakemeyer@whitecase.com

*Counsel to the Ad Hoc Group of Freedom
Lenders*