## EXHIBIT D

**Engagement Letter**

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036

T   +1 212.872.1000
F   +1 212.872.1002
akingump.com



**Michael S. Stamer**
+1 212.872.1025/fax: +1 212.872.1002
mstamer@akingump.com

December 9, 2024

Michael J. Wartell
Independent Director
Boards of Directors of Freedom VCM Interco, Inc. and Freedom VCM, Inc.
109 Innovation Court, Suite J
Delaware, Ohio 43015
Email: mwartell@blrosellc.com

Re:    Akin Terms of Engagement

Dear Mr. Wartell:

We are pleased to have the opportunity to represent you (the "Client"), in your capacity as independent director (the "Independent Director") and sole member of the conflicts committees (the "Conflicts Committees") of the boards of directors of (i) Freedom VCM Interco, Inc. and (ii) Freedom VCM, Inc. (together, the "Companies") and to render independent legal services at your sole discretion with respect to matters within your delegated authority as Independent Director and member of the Conflicts Committees, and such other matters arising in connection therewith, as the Client may request and Akin Gump Strauss Hauer & Feld LLP ("Akin," "we" or "us") may agree to handle (collectively, the "Matter").

The Companies have agreed to be responsible to Akin for all reasonable and documented legal fees and all reasonable and documented expenses incurred by Akin in connection with the Matter as described in this engagement letter (this "Engagement Letter"). This undertaking by the Companies is made with the express understanding that the sole professional obligation of Akin is to the Client acting as Independent Director and sole member of the Conflicts Committees of the boards of directors of the Companies. Akin is not required to disclose any legal strategy, theory, plan of action, or the like to the Companies or their respective advisors, and the payment of legal fees by the Companies to Akin in no way depends upon such disclosure; provided, however, that subject to any common interest agreement that may be executed between the Companies and the Independent Director, Akin may share Confidential Information (as such term may be defined in any common interest agreement) with the Companies.. In essence, no professional relationship will arise between the Companies and Akin as a result of the rendering of legal services by us to the Client or by the payment of legal fees or expenses by the Companies to us on behalf of the



Freedom VCM Interco, Inc. and Freedom VCM, Inc.
December 9, 2024
Page 2

Client.  In addition, the Independent Director shall control any attorney-client work product or privilege in connection with Akin's work or privileged communications on the Matter.

Akin has agreed to this retention, effective as of December 9, 2024, on the following terms and conditions set forth in this Engagement Letter:

### 1.    SCOPE OF REPRESENTATION

Akin will advise and assist the Independent Director with respect to matters within his delegated authority, and such other matters as the Client may request and Akin may agree to handle.

### 2.    PAYMENT OF PROFESSIONAL AND ANCILLARY SERVICES RENDERED

We refer matters to those lawyers in this firm who in our judgment can perform the highest quality work, in a timely and efficient manner, and at the lowest cost.  We also employ non-lawyer assistants in tasks where lawyers are not necessary, to facilitate the rapid and efficient performance of services.  The firm currently charges for lawyers in the firm at rates between $840 and $2,195 per hour.  Hourly rates for paralegals range from $225 to $530.  Beginning in January 2025, the rate ranges will go up to $895 and $2,495 per hour for lawyers and $255 to $635 per hour for paralegals.  The firm may further change these rates in the future, in which case the new rates will apply to work done after the implementation of those rate changes.  In addition, reasonable and documented expenses that are incurred by us in connection with our engagement and advanced on your behalf or internal charges for administrative services, will be added to the statement rendered for the month in which such expenses or charges are recorded in our billing system.

Our standard practice is to bill on a monthly basis and to include reasonable detail into billable activity, but we may render bills on a more frequent basis.  This allows our clients to monitor both current and cumulative fees and expenses.  We agree to submit our statements for payments in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Estate Professionals* [ECF No. 353] (the "Interim Compensation Order"). We may withdraw from the representation in a manner consistent with applicable ethical standards.

All payments to Akin shall be made without offset, counterclaim, reduction or defense of any kind, and shall be free of, and without deduction for, any taxes or other charges.

By reason of the nature of this engagement, the Companies agree to pay Akin's fees and expenses in accordance with the Interim Compensation Order and as follows:



Freedom VCM Interco, Inc. and Freedom VCM, Inc.
December 9, 2024
Page 3

Akin will provide the Independent Director with a detailed invoice providing a complete and detailed description for all timekeeper entries and a summary of work performed during the billing period. Notwithstanding anything to the contrary herein, Akin, the Client and the Companies agree that any compensation provided for under this Engagement Letter shall be governed by any order of a bankruptcy court authorizing Akin's retention as counsel to the Client and the payment of professionals retained in the applicable chapter 11 cases.

The Companies further agree to take all necessary steps to obtain funding sufficient to pay all fees, expenses and other costs pursuant to this letter, including, without limitation, obtaining proceeds from any postpetition financing in accordance with the terms and conditions of the *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [ECF No. 414] and the order that is entered by the Court approving Akin's retention.

The Independent Director may terminate this Engagement Letter at any time upon one (1) business day's written notice to Akin. The Companies acknowledge that the termination of this Engagement Letter shall not relieve them of their obligation to pay all fees and expenses incurred through the effective date of such termination. The Companies acknowledge that nothing herein shall supersede the terms of their agreement with the Independent Director, dated December 9, 2024.

Notwithstanding the Independent Director's or the Companies' obligations herein, Akin's duties hereunder run solely to the Independent Director, and Akin is not authorized, and will not purport to be, an agent of the Companies for any purpose. The Companies have no right to terminate Akin's retention as counsel to the Client. Payment of Akin's fees and expenses by the Companies shall not affect any privileges that may attach to all communications and correspondence between Akin and the Independent Director, or any work product or analyses prepared by Akin for the Independent Director in connection with this engagement.

3. **APPLICABLE LAW AND RULES**

OUR ENGAGEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

New York State has established a Fee Dispute Resolution Program for the resolution of certain fee disputes between attorneys and clients. In some circumstances, the Companies or the Independent Director may be eligible to participate in this program if a fee dispute should arise.



Freedom VCM Interco, Inc. and Freedom VCM, Inc.
December 9, 2024
Page 4


4.    **CERTAIN UNDERSTANDINGS**

The provisions of this Engagement Letter may be modified in a subsequent writing executed by the parties hereto.  This Engagement Letter may be executed in counterparts, which counterparts, when fully executed and considered together, shall constitute our agreement with respect to the subject matter hereof.

Attached to this letter is our Statement of Firm Policies that will apply to this engagement (and is incorporated by reference herein), <u>provided</u>, that to the extent of a conflict between the terms of the Statement of Firm Policies and the terms of this Engagement Letter, the terms of this Engagement Letter shall control.  Please review the Statement of Firm Policies and let me know if you have any questions.  If the foregoing (and the terms of the Statement of Firm Policies) accurately sets forth our agreement, kindly countersign and return a copy of this letter to me.  Upon such execution, this Engagement Letter will supersede all prior understandings regarding the subject matter hereof and will constitute the binding agreement of Akin, the Client and the Companies.

Sincerely,

AKIN GUMP STRAUSS HAUER & FELD LLP

*/s/ Michael S. Stamer*
Michael S. Stamer
Partner


Enclosures



Freedom VCM Interco, Inc. and Freedom VCM, Inc.
December 9, 2024
Page 5

**AGREED:**

**Freedom VCM Interco, Inc. & Freedom VCM, Inc.:**

By: _T.mcmillan-mcwaters_____
      Name: Tiffany McMillan-McWaters
      Title:   Vice President and Treasurer

Date: _1/9/2025_____

**AGREED:**

**Independent Director of Freedom VCM Interco, Inc. & Freedom VCM, Inc.:**

By: _____
      Name: Michael J. Wartell, solely in his capacity as Independent Director of Freedom VCM
            Interco, Inc. & Freedom VCM, Inc.
      Title:  Independent Director

Date: _01/09/2025_____

### STATEMENT OF FIRM POLICIES

Our engagement is limited to the matter identified in the Engagement Letter to which this Statement of Firm Policies is attached.[1]  Except as may be modified by the Engagement Letter, the following summarizes our billing practices and certain other terms that will apply to our engagement by the Client and the Companies' obligations in connection therewith.

### 1.   Determination of Fees

When establishing fees for services that we render, we are guided primarily by the time and labor required, although we also consider other appropriate factors, such as the novelty and difficulty of the legal issues involved; the legal skill required to perform the particular assignment; time-saving use of resources (including research, analysis, data and documentation) that we have previously developed and stored electronically or otherwise in quickly retrievable form; the fee customarily charged by comparable firms for similar legal services; the amount of money involved or at risk and the results obtained; and the time constraints imposed by either the client or the circumstances.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience and reputation of the lawyer or lawyers in our firm who perform the services.  To facilitate this determination, we internally assign to each lawyer an hourly rate based on these factors.  When selecting lawyers to perform services for a client, we generally seek to assign lawyers having the lowest hourly rates consistent with the skills, time demands and other factors influencing the professional responsibility required for each matter.  Of course, our internal allocation of values for lawyer time changes periodically (at least annually) to account for increases in our cost of delivering legal service, other economic factors and the augmentation of a particular lawyer's ability, experience and reputation.  Any such changes in hourly rates are applied prospectively.  We record and bill our time in one-tenth hour (six-minute) increments.

The time for which the Companies will be charged will include, but will not be limited to, telephone and office conferences between client and counsel, witnesses, consultants, court personnel and others; conferences among our legal personnel; factual investigation; legal research; responding to clients' requests for us to provide information to their auditors in connection with reviews or audits of financial invoices; drafting of agreements, contracts, letters, pleadings, briefs and other documents; travel time; waiting time in court; and time in depositions and other discovery proceedings.  In an effort to reduce legal fees, we utilize paralegal personnel.  Time devoted by paralegals to client matters is charged at special billing rates, which also are subject to adjustment from time to time by the firm.  Our current range of hourly rates for lawyers and paralegals is referenced in the Engagement Letter.

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Engagement Letter.

## 2. Expenses

In addition to legal fees, our statements will include reasonable and documented out-of-pocket costs and expenses that we have advanced on your behalf and/or have been incurred in connection with our representation of the Client, as well as our internal charges for certain support activities. Advanced reasonable and documented costs generally will include such items as travel expenses and fees for postage, filing, recording, certification, registration and the like. Our internal charges typically cover such items as long distance telephone calls, facsimile transmissions, messenger services, overnight courier services, terminal time for computer research and complex document production, secretarial and paralegal overtime and photocopying or printing materials sent to the client or third parties or required for our use.

During the course of our representation of the Client, it may be appropriate or necessary to hire third parties to provide services to the Client. These services may include such things as consulting or testifying experts, investigators, providers of computerized litigation support, court reporters, providers of filing services and searches of governmental records and filings, and local counsel. Because of the legal "work product" protection afforded to services that an attorney requests from third parties, in certain situations, our firm may assume responsibility for retaining the appropriate service providers. If we do so, the Companies will be responsible for paying all reasonable and documented fees and expenses of such service providers directly to the service providers or reimbursing us for these costs.

## 3. Billings

We bill monthly (or weekly or bi-weekly) throughout the engagement for a particular matter, and our monthly statements will be due and payable in accordance with the procedures set forth in the Interim Compensation Order. The Companies shall be jointly and severally liable for our reasonable and documented fees and expenses. Our statements contain a concise summary of each matter for which legal services were rendered and a fee was charged.

If any statement is not paid within sixty (60) calendar days from the date of the original statement, we may, by written notice to you on a subsequent statement or otherwise, declare the overdue account to be delinquent. We have no obligation to declare any account delinquent.

## 4. Scope of Engagement

We will provide services of a strictly legal nature of the kind generally described in the Engagement Letter. It is understood that none of the Companies or the Client is relying on us for business, investment or accounting decisions, or to investigate the character or credit of persons with whom the Companies or the Client may be dealing, or to advise about changes in the law that might affect the Companies or the Client unless otherwise specified in the Engagement Letter. We will keep the Client advised of developments as necessary to perform our services and will consult with the Client as necessary to ensure the timely, effective and efficient completion of our work. Attorneys in the firm typically have several client matters pending and are required to coordinate the scheduling of activities required for each pending client matter.

### 5.  Necessary Information

We anticipate that the Companies, the Client and any applicable Company entities will furnish us promptly with all information that we deem to be required to perform the services described in the Engagement Letter, including financial statements from qualified accountants and auditors, as appropriate, and documents prepared by other legal counsel employed by you in connection with prior or other matters.  The Client will make such business or technical decisions or determinations as are appropriate to carry out our engagement.

### 6.  Disagreements Regarding Fees

If agreement cannot be reached with respect to the amount owed under any statement, you agree to pay promptly the non-disputed portion of our statement and submit the disputed portion for resolution by the appropriate committee of the organized bar of the city where our office rendering such services is located; provided, that if insolvency proceedings are commenced by the Companies, the resolution of such dispute shall be determined by the court with jurisdiction of such case or proceeding.  If no organized bar exists in that city, then you can submit to the Committee on Arbitration Relating to Fee Disputes (or similar committee) of the regulatory body governing the practice of law in the state or jurisdiction where our office rendering such services is located.

### 7.  Governing Law

OUR ENGAGEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK AND, EXCEPT FOR DISAGREEMENTS REGARDING FEES SUBMITTED TO ARBITRATION PURSUANT TO PARAGRAPH 6 ABOVE, VENUE FOR ANY OTHER ACTION HEREUNDER SHALL BE IN THE STATE OR FEDERAL COURTS LOCATED IN THE BOROUGH OF MANHATTAN, IN THE CITY OF NEW YORK, NEW YORK; PROVIDED, THAT DURING THE PENDENCY OF A COURT PROCEEDING BY THE COMPANIES PURSUANT TO TITLE 11 OF THE UNITED STATES CODE, 11 U.S.C. §§ 101 ET. SEQ., THE BANKRUPTCY COURT ADMINISTRATING SUCH PROCEEDING SHALL HAVE EXCLUSIVE JURISDICTION OVER SUCH DISPUTE.

### 8.  Miscellaneous

This Statement of Firm Policies and the Engagement Letter constitute our entire understanding and agreement with respect to the terms of our engagement and supersede any prior understandings and agreements, written or oral.  In the event of any inconsistencies between the Engagement Letter and the Statement of Firm Policies, the Engagement Letter shall control. If any provision of our agreement evidenced in this Statement of Firm Policies and the Engagement Letter to which it is attached is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect.  The Engagement Letter may only be amended in writing by the parties thereto.

Your agreement to the Engagement Letter constitutes your acceptance of the foregoing terms and conditions and the terms and conditions contained in such letter.