**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |

**CERTIFICATE OF PUBLICATION**

I, Moheen Ahmad, depose and say that I am employed by Kroll Restructuring Administration LLC ("***Kroll***"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

This Certificate of Publication includes certification verifying that the *Notice of Deadline For The Filing of Proofs of Claim, Including For Claims Asserted Under Section 503(B)(9) Of The Bankruptcy Code*, as conformed for publication, was published on December 31, 2024, in *The New York Times*, as described in the proof of publication attached hereto as **Exhibit A**.

Dated: January 7, 2025

/s/ Moheen Ahmad
Moheen Ahmad

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), B. Riley Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home and Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

**Exhibit A**



The New York Times Company

620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

January 2, 2025

Sworn to me this 2nd day of January, 2025

Deborah Beshaw-Farrell
Notary Public, State of New York
No. 01BE5076617
Qualified in Kings County
Certificate on file in New York County
Commission Expires April 21, 2027

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

12/31/2024, NY/NATL, pg B3

Larnyce Tabron

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: FRANCHISE GROUP, INC., *et al.*,[1] Debtors. | Chapter 11 Case No. 24-12480 (JTD) (Jointly Administered) |
| --- | --- |

**NOTICE OF DEADLINE FOR THE FILING OF PROOFS OF CLAIM, INCLUDING FOR CLAIMS ASSERTED UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE**

**THE GENERAL BAR DATE IS 11:59 P.M. (PREVAILING EASTERN TIME) ON JANUARY 23, 2025.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November 3, 2024 (the "Petition Date"), the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). On December 6, 2024 the Court entered an order [Docket No. 354] (the "Bar Date Order")[2] establishing certain deadlines for the filing of proofs of claim in the chapter 11 cases of the following Debtors (the "Chapter 11 Cases"): **Debtor, Case No., EID# (Last 4 Digits):** Franchise Group, Inc., 24-12480 (JTD), 1876; Freedom VCM Holdings, LLC, 24-12496 (JTD), 1225; Freedom VCM Interco Holdings, Inc., 24-12499 (JTD), 2436; Freedom Receivables II, LLC, 24-12492 (JTD), 4066; Freedom VCM Receivables, Inc, 24-12506 (JTD), 0028; Freedom VCM Interco, Inc., 24-12502 (JTD), 3661; Freedom VCM, Inc., 24-12509 (JTD), 3091; Franchise Group New Holdco, LLC, 24-12528 (JTD), 0444; American Freight FFO, LLC, 24-12511 (JTD), 5743; Franchise Group Acquisition TM, LLC, 24-12524 (JTD), 3068; Franchise Group Intermediate Holdco, LLC, 24-12491 (JTD), 1587; Franchise Group Intermediate L, LLC, 24-12495 (JTD), 9486; Franchise Group Newco Intermediate AF, LLC, 24-12518 (JTD), 8288; American Freight Group, LLC, 24-12490 (JTD), 2066; American Freight Holdings, LLC, 24-12494 (JTD), 8271; American Freight, LLC, 24-12527 (JTD), 5940; American Freight Management Company, LLC, 24-12498 (JTD), 1215; Franchise Group Intermediate S, LLC, 24-12504 (JTD), 5408; Franchise Group Newco S, LLC, 24-12484 (JTD), 1814; American Freight Franchising, LLC, 24-12483 (JTD), 1353; Home & Appliance Outlet, LLC, 24-12514 (JTD), N/A; American Freight Outlet Stores, LLC, 24-12503 (JTD), 9573; American Freight Franchisor, LLC, 24-12487 (JTD), 2123; Franchise Group Intermediate B, LLC, 24-12529 (JTD), 7836; Buddy's Newco, LLC, 24-12516 (JTD), 5404; Buddy's Franchising and Licensing, LLC, 24-12512 (JTD), 9968; Franchise Group Intermediate V, LLC, 24-12511 (JTD), 5958; Franchise Group Newco V, LLC, 24-12489 (JTD), 9746; Franchise Group Intermediate BHF, LLC, 24-12486 (JTD), 8260; Franchise Group Newco BHF, LLC, 24-12515 (JTD), 4123; Valor Acquisition, LLC, 24-12505 (JTD), 3490; Vitamin Shoppe Industries LLC, 24-12521 (JTD), 3785; Vitamin Shoppe Global, LLC, 24-12517 (JTD), 1168; Vitamin Shoppe Mariner, LLC, 24-12523 (JTD), 6298; Vitamin Shoppe Procurement Services, LLC, 24-12532 (JTD), 8021; Vitamin Shoppe Franchising, LLC, 24-12513 (JTD), 8271; Vitamin Shoppe Florida, LLC, 24-12510 (JTD), 6590; Betancourt Sports Nutrition, LLC, 24-12507 (JTD), 0470; Franchise Group Intermediate PSP, LLC, 24-12500 (JTD), 5965; Franchise Group Newco PSP, LLC, 24-12522 (JTD), 2323; PSP Midco, LLC, 24-12488 (JTD), 6507; Pet Supplies "Plus", LLC, 24-12519 (JTD), 5852; PSP Group, LLC, 24-12482 (JTD), 5944; PSP Service Newco, LLC, 24-12493 (JTD), 6414; WNW Franchising, LLC, 24-12525 (JTD), 9398; WNW Stores, LLC, 24-12530 (JTD), 0984; PSP Stores, LLC, 24-12497 (JTD), 9049; PSP Franchising, LLC, 24-12481 (JTD), 4978; PSP Subco, LLC, 24-12501 (JTD), 6489; PSP Distribution, LLC, 24-12526 (JTD), 5242; Franchise Group Intermediate SL, LLC, 24-12508 (JTD), 2695; Franchise Group Newco SL, LLC, 24-12485 (JTD), 7697; Educate, Inc., 24-12520 (JTD), 5722.

Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), no matter how remote or contingent such right to payment or equitable remedy may be, **MUST FILE A PROOF OF CLAIM** on or before 11:59 p.m. (prevailing Eastern Time), on January 23, 2025 (the "General Bar Date"), by sending an original Proof of Claim Form to Kroll Restructuring Administration LLC ("Kroll"), the Debtors' claims agent, (1) (A) by first-class mail to the Claims Agent Franchise Group, Inc. Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, P.O. Box 4850, New York, NY 10163, or (B) by overnight courier or hand delivery to the Claims Agent at Franchise Group, Inc. Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232, or (2) by completing the online Proof of Claim Form available at https://cases.ra.kroll.com/FRG/, so that it is **actually received** on or before the General Bar Date; *provided* that, solely with respect to governmental units (as defined in section 101(27) of the Bankruptcy Code), the deadline for such governmental units to file a proof of claim against the Debtors is May 2, 2025 at 11:59 p.m. (prevailing Eastern Time) (the "Governmental Bar Date").

All entities holding claims against the Debtors arising from the rejection of executory contracts and unexpired leases of the Debtors are required to file proofs of claim by the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, and (b) 11:59 p.m., prevailing Eastern Time, on the date that is thirty (30) days following entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors (the "Rejection Damages Bar Date").

All entities asserting claims against the Debtors that are affected by an amendment or supplement to the Schedules are required to file a proof of claim or amend any previously filed proof of claim in respect of the amended scheduled claim by the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, and (b) 11:59 p.m., prevailing Eastern Time, on the date that is thirty (30) days from the date on which the Debtors mail notice of the amendment to the Schedules (or another time period as may be fixed by the Court) (the "Amended Schedules Bar Date").

Proofs of claim must be sent by overnight mail, courier service, hand delivery, regular mail, or in person, or completed electronically through Kroll's website at https://cases.ra.kroll.com/FRG/. Proofs of Claim sent by facsimile, telecopy, or electronic mail will **not** be accepted and will **not** be considered properly or timely filed for any purpose in these Chapter 11 Cases.

ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE MAY NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR PURPOSES OF VOTING AND DISTRIBUTION.

A copy of the Bar Date Order and Proof of Claim Form may be obtained by contacting the Debtors' Claims Agent in writing at Franchise Group, Inc. Claims Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232, or online at https://cases.ra.kroll.com/FRG/. The Bar Date Order can also be viewed on the Court's website at www.deb.uscourts.gov. If you have questions concerning the filing or processing of claims, you may contact Kroll by telephone at (844) 285-4564 (Toll-Free) or +1 (646) 937-7751 (International), or by email at FRGInquiries@ra.kroll.com.

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bar Date Order.

ECONOMY | PERSONAL FINANCE

# Carter Warned of Materialism, but It Continued to Grow Unchecked

FROM FIRST BUSINESS PAGE

ing to our better angels, he believed he could inspire in all of us a sense of thrift that would help heal America's ills: environmental degradation, dependence on foreign energy, the power of special interests and political extremism.

For a fleeting moment, Americans listened. Mr. Carter's approval ratings jumped 11 points within hours.

But partisans smeared the address — they almost immediately called it the "malaise speech" — and pilloried Mr. Carter, saying he was blaming Americans for problems that they hadn't created and that presidents were supposed to solve.

Everything that happened after the speech — from persistent inflation to the Iranian hostage crisis — wiped away any warm feelings the voters had. He lost his re-election bid in a landslide to Ronald Reagan 16 months later, at the dawn of a decade that glamorized materialism like few if any that had come before it.

The decades that followed have shown that Mr. Carter had the diagnosis right. Materialism has become epidemic — endemic, even. We mostly fail to ask ourselves one searching, overarching question: How much is enough?

Mr. Carter misread the nation in thinking that we would look within and without and then answer. In fact, there is little about our patterns since his address to suggest that we wish to earn, own and consume less, or that we have awakened to the fact that having, buying and using more may fail to make us happier.

Consider how our children feel after we're mostly done raising and educating them. The Cooperative Institutional Research Program at the University of California, Los Angeles, surveys first-year college students every year. The percentage who named being "very well off financially" as an important goal doubled from 1967 to 2019. Those who wanted to develop a "meaningful philosophy of life" decreased by nearly half.

Research by Tim Kasser and Jean Twenge showed that materialism among 12th graders increased over time, peaking in the late 1980s and early 1990s with Generation X, and then stayed at those historically high levels among millennials.

"There was a trend underway at the time Carter was making this speech, and it basically just amplifies in the next 10 years rather than being sup-

MAO/ASSOCIATED PRESS

A college student at a gas station watched President Jimmy Carter's speech during the height of the nation's energy crisis in July 1979.

pressed," said Mr. Kasser, an emeritus professor of psychology at Knox College and the author of "The High Price of Materialism."

The lingering belief that Mr. Carter's presidency was a failed one casts its own cloud over the "Crisis of Confidence" speech, but whatever ailed the American psyche was mostly not his fault. A nation's character, like its economy, is never the province of a single leader. Nevertheless, Mr. Carter's words were easy political pickings.

Mr. Reagan used Mr. Carter's call for moderation as a kind of anvil to define the sitting president. "Are you better off now than you were four years ago?" Mr. Reagan asked. "Is it easier for you to go and buy things in the stores than it was four years ago?"

As Jonathan Alter wrote in "His Very Best," his excellent biography of Mr. Carter, "The politics of candor were terrible."

Mr. Carter's wise counsel made him an easy mark for anyone inclined to criticize him as a finger-wagging scold.

"If you have concerns about consumption in society, it's very difficult not to sound moralizing and patronizing," said Alison Hulme, associate professor of social and cultural change at the University of Northampton in England and the author of "A Brief History of Thrift."

And so we got the opposite of what Mr. Carter wished for. Yuppies arrived in the 1980s, and the 1990s brought us Hummers to guzzle the gas that people had waited in line for 15 years earlier. In 2001, President George W. Bush wanted us to get back to our daily routines and fly to Disney World after the Sept. 11 attacks. And the Obama administration couldn't bear to slice away at a whopping tax break that makes it much easier for affluent families to spend $400,000 per child on college.

Since then, the rise of social media has been marked, among other dreadful things, by lifestyle braggadocio and algorithms fine-tuned to serve scarily relevant ads. And then a man who named a gold-tinged tower after himself became our president.

Rarely has there been an acute need for collective financial sacrifice during these last few decades, or much of any other kind of national sacrifice for that matter. When a test has arrived, we haven't exactly passed with flying colors.

A considerable minority of Americans resented staying home and wearing masks during the early, uncertain stages of the coronavirus pandemic, amid ongoing protestations of a so-called loss of freedom.

"The tying together of rights with consumption is absolutely rife," said Dr. Hulme, whose academic research focuses on both of those topics. "This drives me insane," she added.

Mr. Kasser watched these developments with a sense of foreboding, because his research has shown that higher levels of materialism are associated with societal instability. The pandemic only turned up the heat on a roiling cauldron of social problems: growing economic inequality, horrific episodes of racism, worsening political divides and a deep mistrust in the legitimacy of our elections.

"And it's not like advertising let up," he said.

We will be tested again. Next time it may be a climate-related catastrophe, driven in part by the very patterns of consumption that Mr. Carter warned against in his speech. He called for turning down the thermostat in the winter and for 20 percent of the nation's energy to come from solar power by 2000 — all these years later, we've done neither.

"I think in Carter's mind there was some hope," said Kevin Mattson, a professor of history at Ohio University and the author of a book about Mr. Carter's speech, "What the Heck Are You Up To, Mr. President?" "But I think there is profound doubt that we can muster the strength to do something about a problem that could destroy the planet."

It seems unlikely that politicians today would give a speech anything like Mr. Carter's address. That would violate the vague but powerful principle that American exceptionalism should not be questioned — that the answer to every national problem of any import is blunt-force innovation.

But it really isn't always the answer, and Mr. Carter knew it. After voters determined that he was not the kind of president they wanted, he demonstrated a mostly humble form of public service: As he maintained an international diplomatic profile, he led Bible study sessions and built houses with Habitat for Humanity.

"Maybe seeing the kind of work that he did after his presidency is another sign of hope," Professor Mattson said. "That someone can make an impact by being a citizen activist rather than by being president."

We as individuals cannot block the sun or bridge the racial wealth gap. But we can do something — 5 or 10 or 20 percent more than we have done before. Individually, it won't move the needle much, but change can be catching.

"I think of the knock-on effects it can have," Dr. Hulme said. "It's more about a kind of culture change that can potentially lead to larger groups of people questioning their own lifestyle."

One way to begin is with a redefinition of thrift, a word that comes from similar root words as thrive. What if we cast it, as the author Ramit Sethi does, as a relentless focus on spending well on a few things that make us happiest and then radically paring back on the things that matter less?

"I want people to change the way they live because it might be nicer for them," Dr. Hulme said.

Eventually, we're going to have to try. And the longer we wait, the harder it will be.

# *Worried About Stock Market Turmoil Under Trump? Look to the Past for Clues.*

FROM FIRST BUSINESS PAGE

behavior, but they can inform ours.

Let's rewind to the coronavirus pandemic, when most of the economy ground to a halt — a situation that easily qualified as a "this time is different" moment. The market reacted in kind: The S&P 500 plunged 34 percent in late March 2020 after hitting a high on Feb. 19.

Vanguard studied what happened to thousands of its retail investors who panicked during that moment, just as the pandemic unfolded. Fewer than 1 percent of those people fled stocks for cash, but of those who did, the vast majority, or 86 percent, earned lower returns during the three and a half months that followed than if they had just remained invested, according to its analysis, which looked at the period from Feb. 19 to May 31, 2020. That included the 34 percent market plunge, and subsequent 36 percent rise, which these investors missed.

Ultimately, the S&P 500 gained 16 percent by the end of that first pandemic year, and soared more than 25 percent in 2021.

Indeed, the difficulty that follows fear-based selling is figuring out when exactly it is "safe" to get back into the water. Most people end up waiting too long, similar to the investors Vanguard studied, and miss out when the market bounces back.

That can cost investors dearly, even those who eventually return.

Consider three hypothetical retirees with identical $500,000 portfolios, consisting of 60 percent stock funds and 40 percent bonds — a fairly common allocation for Vanguard retirees heading into 2020.

Let's say each of them reacted differently to the pandemic plunge. Here's what their portfolios would have looked like on Oct. 31, 2024, assuming they reinvested all dividends:

**Investor 1.** She stayed invested throughout the zigs and zags of the pandemic.

Projected portfolio balance: **$741,670**

**Investor 2.** He panicked and sold on March 16, 2020, one of the peak moments of volatility. He remained in cash, missing out on all gains had he reinvested.

Projected portfolio balance: **$471,514**

**Investor 3.** She also panicked, selling entirely to cash at the peak of volatility, but reinvested as the market rebounded in late May.

Projected portfolio balance: **$625,843**

"The costs of panicking to cash in 2020 would have been significant — generating lost wealth well into the six figures," said Andy Reed, head of investor behavior research in Vanguard's investment strategy group. He ran the numbers using its market hindsight tool, which lets investors run portfolio simulations, using actual market events, that illustrate what would happen if they were to move to cash or reinvest.

KATE DEHLER

"We find people tend to be out of the market longer than they anticipated," he added.

Selling can feel like the right thing to do in moments of uncertainty. And if you do need the money in the short term — for college tuition in a few years, for example — much of it probably shouldn't be invested in the markets anyway.

There are actions you can and should take. Check your investment portfolio to ensure that the mix of stock and bonds is where you expect it to be.

"You may have originally set up a thoughtful 60/40 portfolio," Mr. Reed said, referring to the percentage of money held in stock and bonds, "but because of market movements it may now be 80/20."

Suddenly, you're in a much riskier position than you had thought, even more so since you're probably closer to needing the money than when you last checked your allocation.

If you're working with a financial planner on an ongoing basis or using a robo-adviser, either one should be regularly rebalancing your retirement portfolio back to its original stock and bond mix. But the start of a new year is a good excuse to take a fresh look and consult with a professional (fiduciary only) adviser if you have questions about whether you're too exposed to stocks.

Trimming back your exposure isn't your only option, either. Milo Benningfield, a certified financial planner in San Francisco, suggested creating a cash cushion — a minimum of one year's worth of expenses, if you possibly can — to serve as a financial and emotional buffer between you and the fluctuating markets. Having more cash outside the retirement portfolio, he said, enables retirees to take more risk inside the portfolio.

"In general, we're fans of ample cash reserves, at all times, since they're a lot more effective for insulating retiree finances than trying to dial back stocks," he said.

Retirees who have a lot riding on the markets' performing well in order to meet their goals might want to consider purchasing an immediate annuity, where you make a lump-sum payment to an insurance company in exchange for a guaranteed stream of lifetime income.

"There are ways to create diverse income streams that make a plan much stronger," Mr. Benningfield said, "both financially and psychologically."

Families who are invested in college savings plans like 529s should check their investments, too. Target-enrollment mutual funds are often used in those accounts — a mix of stock and bonds that automatically becomes more conservative as enrollment day approaches — but their risk levels can vary.

A 12-year-old aiming to enter college in 2030 would have 42.6 percent in stocks if the money were invested in Vanguard's 2030 target enrollment fund, but 52.5 percent in stocks at T. Rowe Price.

COMMERCIAL REAL ESTATE BUSINESS OPPORTUNITIES

BUSINESS / FRANCHISE OPPORTUNITIES

Restrnts., Bars & Clubs 3440

BUSINESS FOR SALE
98 YEAR OLD FAMILY OWNED RESTAURANT SPECIALIZING IN APPLEWOOD SMOKED BARBEQUE. LOCATED IN NE PA ON A BUSY HIGHWAY. TURN KEY OPERATION WITH CURRENT OWNER AVAILABLE FOR CONSULTING. BUSINESS EXPANSION IS POSSIBLE. OWNER FINANCING AVAILABLE FOR THE RIGHT CANDIDATE. SERIOUS INQUIRES ONLY. PLEASE TEXT 1-272-447-8630 WITH QUESTIONS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: FRANCHISE GROUP, INC., *et al.*,[1] Debtors. | Chapter 11<br>Case No. 24-12480 (JTD)<br>(Jointly Administered) |
|---|---|

**NOTICE OF DEADLINE FOR THE FILING OF PROOFS OF CLAIM, INCLUDING FOR CLAIMS ASSERTED UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE**

**THE GENERAL BAR DATE IS 11:59 P.M. (PREVAILING EASTERN TIME) ON JANUARY 23, 2025.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On November 3, 2024 (the "Petition Date"), the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). On December 6, 2024 the Court entered an order [Docket No. 354] (the "Bar Date Order")[2] establishing certain deadlines for the filing of proofs of claim in the chapter 11 cases of the following Debtors (the "Chapter 11 Cases"): **Debtor, Case No., EID# (Last 4 Digits):** Franchise Group, Inc., 24-12480 (JTD), 1876; Freedom VCM Holdings, LLC, 24-12496 (JTD), 1225; Freedom VCM Interco Holdings, Inc., 24-12499 (JTD), 2436; Freedom Receivables II, LLC, 24-12492 (JTD), 4066; Freedom VCM Receivables, Inc, 24-12506 (JTD), 0028; Freedom VCM Interco, Inc., 24-12502 (JTD), 3661; Freedom VCM, Inc., 24-12509 (JTD), 3091; Franchise Group New Holdco, LLC, 24-12528 (JTD), 0444; American Freight FFO, LLC, 24-12531 (JTD), 5743; Franchise Group Acquisition TM, LLC, 24-12524 (JTD), 3068; Franchise Group Intermediate Holdco, LLC, 24-12491 (JTD), 1587; Franchise Group Intermediate L, LLC, 24-12495 (JTD), 9486; Franchise Group Newco Intermediate AF, LLC, 24-12518 (JTD), 8288; American Freight Group, LLC, 24-12490 (JTD), 2066; American Freight Holdings, LLC, 24-12494 (JTD), 8271; American Freight, LLC, 24-12527 (JTD), 5940; American Freight Management Company, LLC, 24-12498 (JTD), 1215; Franchise Group Intermediate S, LLC, 24-12504 (JTD), 5408; Franchise Group Newco S, LLC, 24-12484 (JTD), 1814; American Freight Franchising, LLC, 24-12483 (JTD), 1353; Home & Appliance Outlet, LLC, 24-12514 (JTD), N/A; American Freight Outlet Stores, LLC, 24-12503 (JTD), 9573; American Freight Franchisor, LLC, 24-12487 (JTD), 2123; Franchise Group Intermediate B, LLC, 24-12529 (JTD), 7836; Buddy's Newco, LLC, 24-12516 (JTD), 5404; Buddy's Franchising and Licensing, LLC, 24-12512 (JTD), 9968; Franchise Group Intermediate V, LLC, 24-12511 (JTD), 5958; Franchise Group Newco V, LLC, 24-12489 (JTD), 9746; Franchise Group Intermediate BHF, LLC, 24-12486 (JTD), 8260; Franchise Group Newco BHF, LLC, 24-12515 (JTD), 4123; Valor Acquisition, LLC, 24-12505 (JTD), 3490; Vitamin Shoppe Industries LLC, 24-12521 (JTD), 3785; Vitamin Shoppe Global, LLC, 24-12517 (JTD), 1168; Vitamin Shoppe Mariner, LLC, 24-12523 (JTD), 6298; Vitamin Shoppe Procurement Services, LLC, 24-12532 (JTD), 8021; Vitamin Shoppe Franchising, LLC, 24-12513 (JTD), 8271; Vitamin Shoppe Florida, LLC, 24-12510 (JTD), 6590; Betancourt Sports Nutrition, LLC, 24-12507 (JTD), 0470; Franchise Group Intermediate PSP, LLC, 24-12500 (JTD), 5965; Franchise Group Newco PSP, LLC, 24-12522 (JTD), 2323; PSP Midco, LLC, 24-12488 (JTD), 6507; Pet Supplies "Plus", LLC, 24-12519 (JTD), 5852; PSP Group, LLC, 24-12482 (JTD), 5944; PSP Service Newco, LLC, 24-12493 (JTD), 6414; WNW Franchising, LLC, 24-12525 (JTD), 9398; WNW Stores, LLC, 24-12530 (JTD), 0984; PSP Stores, LLC, 24-12497 (JTD), 9049; PSP Franchising, LLC, 24-12481 (JTD), 4978; PSP Subco, LLC, 24-12501 (JTD), 6489; PSP Distribution, LLC, 24-12526 (JTD), 5242; Franchise Group Intermediate SL, LLC, 24-12508 (JTD), 2695; Franchise Group Newco SL, LLC, 24-12485 (JTD), 7697; Educate, Inc., 24-12520 (JTD), 5722.

Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), no matter how remote or contingent such right to payment or equitable remedy may be, **MUST FILE A PROOF OF CLAIM** on or before 11:59 p.m. (prevailing Eastern Time), on January 23, 2025 (the "General Bar Date"), by sending an original Proof of Claim Form to Kroll Restructuring Administration LLC ("Kroll"), the Debtors' claims agent, (1) (A) by first-class mail to the Claims Agent Franchise Group, Inc. Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, P.O. Box 4850, New York, NY 10163, or (B) by overnight courier or hand delivery to the Claims Agent at Franchise Group, Inc. Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232, or (2) by completing the online Proof of Claim Form available at https://cases.ra.kroll.com/FRG/, so that it is **actually received** on or before the General Bar Date; *provided* that, solely with respect to governmental units (as defined in section 101(27) of the Bankruptcy Code), the deadline for such governmental units to file a proof of claim against the Debtors is May 2, 2025 at 11:59 p.m. (prevailing Eastern Time) (the "Governmental Bar Date").

All entities holding claims against the Debtors arising from the rejection of executory contracts and unexpired leases of the Debtors are required to file proofs of claim by the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, and (b) 11:59 p.m., prevailing Eastern Time, on the date that is thirty (30) days following entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors (the "Rejection Damages Bar Date").

All entities asserting claims against the Debtors that are affected by an amendment or supplement to the Schedules are required to file a proof of claim or amend any previously filed proof of claim in respect of the amended scheduled claim by the later of (a) the General Bar Date or the Governmental Bar Date, as applicable, and (b) 11:59 p.m., prevailing Eastern Time, on the date that is thirty (30) days from the date on which the Debtors mail notice of the amendment to the Schedules (or another time period as may be fixed by the Court) (the "Amended Schedules Bar Date").

Proofs of claim must be sent by overnight mail, courier service, hand delivery, regular mail, or in person, or completed electronically through Kroll's website at https://cases.ra.kroll.com/FRG/. Proofs of Claim sent by facsimile, telecopy, or electronic mail will **not** be accepted and will **not** be considered properly or timely filed for any purpose in these Chapter 11 Cases.

ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE MAY NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR PURPOSES OF VOTING AND DISTRIBUTION.

A copy of the Bar Date Order and Proof of Claim Form may be obtained by contacting the Debtors' Claims Agent in writing at Franchise Group, Inc. Claims Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232, or online at https://cases.ra.kroll.com/FRG/. The Bar Date Order can also be viewed on the Court's website at www.deb.uscourts.gov. If you have questions concerning the filing or processing of claims, you may contact Kroll by telephone at (844) 285-4564 (Toll-Free) or +1 (646) 937-7751 (International), or by email at FRGInquiries@ra.kroll.com.

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bar Date Order.