## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>**Re: D.I. 474**<br><br>**Hearing Date: Jan. 21, 2025 at 10:00 a.m. (ET)**<br>**adjourned from Jan. 15, 2025**<br>**Obj. Deadline: Jan. 13, 2024 at 4:00 p.m. (ET)**<br>**(extended for U.S. Trustee)** |

### OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF WILLKIE FARR & GALLAGHER LLP AS CO-COUNSEL FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Andrew R. Vara, United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his counsel, files this objection (the "Objection") to the Debtors' application to retain Willke Farr & Gallagher LLP ("Willkie") as Debtors' co-counsel (D.I. 474) (the "Application"). In support thereof, the U.S. Trustee respectfully represents:

## I.    PRELIMINARY STATEMENT

1.    The Debtors seek to retain Willkie as co-counsel to prosecute these chapter 11 cases notwithstanding the firm's material representations of the Debtors' former CEO and Director Brian Kahn ("Mr. Kahn") in matters directly relevant to these chapter 11 estates, including the "Take-Private Transaction" that gave rise to the Debtors' current capital structure, which is presently the subject of pitched litigation.  The Debtors seek to employ Willkie as co-counsel and to utilize Delaware co-counsel Young Conaway Stargatt & Taylor LLP ("YCST") to handle matters on which Willkie is conflicted.  Unfortunately, even able conflicts counsel cannot adequately address the extent of the material adverse interest Willkie holds by virtue of its extensive representation of Mr. Kahn, non-debtor affiliates and other interests which prevent unconflicted, disinterested representation of the Debtors and these estates.

2.    The U.S. Trustee objects to the Application for three overarching  reasons. First, Willkie's disclosures as filed are insufficient to evaluate whether Willkie satisfies the Bankruptcy Code's employment standards (no adverse interest and disinterestedness), even in light of the current detail provided regarding representation of Mr. Kahn.  The incomplete disclosures are a sufficient and independent reason to deny the application.  Of specific concern are two matters where Willkie represented Mr. Kahn and, separately, B. Riley, with respect to matters pertaining to the Debtors that are not specifically identified in the current disclosures, but were of public record.  *See Pels v. Avril*, Case No. 23 CV H 07 0508 (Ohio C.P. 2023)

(representing Mr. Kahn regarding litigation over the Take-Private transaction); *Calenture, LLC v. B. Riley Financial, Inc.*, Case No. 21-cv-6087-MKV (S.D.N.Y. 2021) (representing B. Riley parties in matters relating to the Franchise Group).

3.      The second reason for this Objection is that publicly-available information thus far indicates that Willkie has a disqualifying conflict of interest in light of its past representations of Mr. Kahn and/or is not a disinterested person because the firm represented a target of the estates in the Take-Private Transaction, which is central to the current capital structure of the Debtors and numerous other litigation items in these cases. While ethical walls may be effective in some circumstances, case law still imputes a lack of disinterestedness of partners of a firm to all of its partners, which renders the retention impermissible under sections 327(a) and 101(14). Willkie's close connection with Mr. Kahn, a former director and officer of the Debtors and a current insider due to his equity holdings, renders Willkie too conflicted to counsel the Debtors in these cases. Willkie also has a materially adverse interest to the Subordinated Claims class of creditors under the proposed plan, as those claims are those of the former shareholders of the Franchise Group, Inc. debtor that were squeezed out of their position by the Take-Private Transaction.

4.      Third, Model Rule of Professional Responsibility 1.9, made applicable herein by Del. Bankr. L.R. 9010-1(f), precludes the retention and requires that the firm be disqualified, as Willkie's representation of Mr. Kahn in the Take-Private Transaction is a substantially-related matter where Willkie has not obtained informed consent in writing to represent the Debtors on a matter where they have responsibilities to a former client.

5.      Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014 require that the Debtors' professionals fully disclose all connections that bear on the Debtors and these

cases.  As filed, the Application lacks meaningful disclosure of Willkie's prepetition

engagements by the Debtors and their affiliates and, separately, Mr. Kahn and his affiliates.

Such engagements were concurrent and central to the Debtors' capital structure which is

proposed to be restructured under the RSA or satisfied with proceeds of asset sales.  The U.S.

Trustee, therefore, submitted information requests to Willkie.  Although the U.S. Trustee

received information from Willkie in response, for the reasons above and below, such

supplemental disclosures will not be sufficient to satisfy the requirements of sections 101(14)

and 327.

## II.      JURISDICTION, VENUE AND STANDING

6.      This Court has jurisdiction over the above-captioned cases pursuant to 28

U.S.C. § 1334.  This Court is authorized to hear and determine the Application and this

Objection pursuant to 28 U.S.C. § 157(a, b), and the amended standing order of reference issued

by the United States District Court for the District of Delaware dated February 29, 2012.  Venue

of the cases is proper in this District pursuant to 28 U.S.C. § 1408(1).

7.      Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with

monitoring the federal bankruptcy system.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S.,*

*Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

Specifically, the U.S. Trustee is charged with "monitoring applications filed under section 327 of

title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court

comments with respect to the approval of such applications[.]"  28 U.S.C. § 586(a)(3)(I).

8.      The U.S. Trustee has standing to be heard with respect to the Objection

pursuant to 11 U.S.C. § 307.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re*

*Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest).

### III.    <u>FACTUAL BACKGROUND</u>

9.    On November 3, 2024, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, (the "<u>Bankruptcy Code</u>," or "<u>Code</u>"), in the United States Bankruptcy Court for the District of Delaware (this "<u>Court</u>"), thereby commencing the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"). The *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings*. D.I. 15 (the "<u>First Day Declaration</u>") describes the Debtors' business(es) and the alleged circumstances leading to the Chapter 11 Cases.

10.    The Debtors continue to operate their business(es) as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

11.    An official committee of unsecured creditors in the Chapter 11 Cases has been appointed.  D.I. 188.

12.    On November 4, 2024, the Debtors filed the First Day Declaration, which (among other things) provided a copy of the Restructuring Support Agreement (the "<u>RSA</u>").  The RSA forms the basis of the Debtors' Plan, which contemplates either a Sale Transaction or a Plan Transaction. First Day Decl. p. 66-67. The RSA was entered into as of November 1, 2024 and is by and among the Debtors and the Consenting First Lien Lenders.  *Id*.  On November 11, 2024, the Debtors filed the Disclosure Statement and the Plan.  D.I. 150 & 151.  The Debtors filed an Amended Plan and Disclosure Statement on January 3, 2025. D.I. 654 & 655 (the "<u>Plan</u>" & "<u>Disclosure Statement</u>").  The Plan contains release provisions and an exculpation, which by

the defined terms therein would provide relief to Willkie.  Plan Art. I.A. 1.170 & 1.171; Plan Art. XII. 12.2, 12.3 & 12.4.

13.     On December 19, 2022, the Debtors filed the Application.  Through the Application, the Debtors seek to employ Willkie as co-counsel to, among other things: (a) "prepare, on behalf of the Debtors, all necessary motions, applications, answers, orders, reports, and papers in connection with the administration of these Chapter 11 Cases;" (b) "provide the Debtors with advice, represent the Debtors and prepare all necessary documents on behalf of the Debtors in the areas of corporate finance, employee benefits, real estate, tax, and bankruptcy law, and commercial litigation, debt restructuring, and asset dispositions in connection with these Chapter 11 Cases;" and (c) "advise the Debtors with respect to actions to protect and preserve the Debtors' estates during the pendency of these Chapter 11 Cases[.]"  Appl. ¶ 16(a), (d) & (e).

14.     The Application contains two declarations, the *Declaration of Matthew A. Feldman in Support of the Debtors' Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors, Nunc Pro Tunc to the Petition Date* (the "Feldman Declaration") and the *Declaration of David Orlofsky in Support of the Debtors' Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors, Nunc Pro Tunc to the Petition Date* (the "Orlofsky Declaration").  D.I. 474-2 & 474-3. The Feldman Declaration contains a discussion of connections to Mr. Kahn, but elides a full and fulsome disclosure of Willkie's representation of Mr. Kahn individually with the firm's concurrent representation of the Debtors, even as public information was available regarding fraud allegations against Mr. Kahn.  Feldman Decl. ¶¶ 21-27.  There were no disclosures or explanation as to how Willkie was selected to provide bankruptcy and restructuring counsel to the Debtors.  Orlofsky Decl. ¶ 7 ("the Debtors

historically utilized Willkie's services with respect to corporate and litigation advice. I

understand that in June 2024, the Debtors' board of directors determined it needed to explore

potential strategic alternatives and, given Willkie's expertise and experience in the areas of

business reorganization and restructuring, the Debtors determined it made sense to engage

Willkie in this regard.")  Nor were there any disclosures regarding who at the Debtors was

involved in the Debtors' selection of Willkie as co-counsel.

15.     Willkie states it received payments in the amount of $7,087,177.90 for

services rendered to the Debtors in the ninety days prior to the Petition Date.  Feldman Decl. ¶

36.  Willkie further asserts it "will waive any outstanding fees and expenses that were owed as of

the Petition Date."  *Id.*  No additional detail was provided as to the amount of that potential

waiver, and notwithstanding the lengthy relationship with the Debtors, no further information

was provided to establish when services were rendered on account of the amounts received.

**Willkie's Connections and Prior Representations of Brian Kahn and Related Entities**

16.     Willkie has acted as counsel to entities controlled by Mr. Kahn since

before August 2018.  Feldman Decl. ¶¶ 14-15.  Willkie's representation of Vintage Capital was

concurrent with, but stated as unrelated to, a Vintage Capital affiliate's acquiring shares of

Liberty Tax, Inc., which was a step toward the current enterprise structure of the Debtors.  *Id.* ¶¶

15, 18 (noting in July 2019 Willkie represented Buddy's Furniture and Vintage Capital in the

Merger with Liberty Tax, which following the transaction the combined company was renamed

"Franchise Group, Inc.").  Vintage Capital is identified in the Application as "Mr. Kahn's

investment fund."  Appl. ¶ 1.  The Application further states that "Franchise Group was Mr.

Kahn's creation and for the first four years of Franchise Group's existence, the company was

synonymous with Mr. Kahn." *Id.*

17.    Willkie states that it represented Franchise Group in acquisitions of The Vitamin Shoppe, Sears Hometown Outlet Stores Inc., and American Freight in 2019 and 2020, with Sears Hometown Outlet Stores Inc. combining with American Freight.  Feldman Decl. ¶¶ 19(a, b).  Willkie subsequently also represented Franchise Group in acquisitions of Pet Supplies Plus, Sylvan Learning and W.S. Badcock in 2021, and further represented Franchise Group in sale and leaseback transactions of W.S. Badcock real estate in 2022, contribution of W.S. Badcock to Conn's, Inc. in 2023, and sale of Sylvan Learning in 2024.  *Id.* ¶¶ 19(c, d).  Willkie further states that it generally represented Franchise Group and its subsidiaries on substantially all financing transactions since 2019, including secured debt financing, and equity financings, including while Franchise Group was publicly traded.  *Id.* ¶ 19(e).  Willkie represented Franchise Group on an "early 2023" "limited inquiry" from U.S. DOJ and the SEC, but the firm does not state additional details regarding that inquiry beyond indicating that Mr. Kahn was represented by separate counsel and that Willkie did not represent any other parties with respect to that inquiry.  *Id.* ¶ 19(h).

18.    Willkie, notwithstanding its representation of Mr. Kahn individually in the Take-Private Transaction, is currently representing Franchise Group in a pending class action suit relating to the Take-Private transaction pending in the Delaware Court of Chancery.  *Id.* at ¶ 19(i) (identifying *Gale et al. v. Vintage Capital Management, LLC et al.*, Case No. 2024-0726-LWW (Del. Ch. 2024)).  The *Gale* complaint filed July 12, 2024, asserts "numerous additional investment ties between Kahn, Vintage, and B. Riley . . . were never disclosed to Franchise Group stockholders in the Proxy."  *Gale* Compl. ¶ 6.  The *Gale* complaint further asserts that Mr. Kahn sold over $64 million of his Franchise Group shares to B. Riley following the Take-Private Transaction closing.  *Id.* ¶ 12.  The *Gale* complaint also identifies that *Wall Street Journal*

reporting in January of 2023, identified Mr. Kahn as "spearhead[ing]" the Take-Private

Transaction, notwithstanding the reporting being omitted from the Proxy. *Compare Gale*

Compl. ¶ 62, *with* Discl. Stmt. p. 5 (identifying the Take-Private Transaction being occasioned

by an "unsolicited proposal" from B. Riley). The *Gale* litigation is subject of a Stipulation

approved by order of the Bankruptcy Court on January 7, 2025, enjoining further litigation

against "Mr. Andrew Laurence" in the Chancery Case until March 31, 2025. *Franchise Group v.*

*Gale*, Case No. 24-50237 (JTD) (D.I. 11).

19.     Willkie states the firm represented Mr. Kahn in connection with the Take-

Private Transaction "[b]etween March and August of 2023" and that representation covered

"related ancillary matters" which are not otherwise disclosed or defined. Feldman Decl. ¶ 21.

Willkie does not specifically disclose that it represented Mr. Kahn in connection with litigation

in the Court of Common Pleas Delaware County, Ohio, with respect to the Take-Private

Transaction. *See Pels v. Avril*, Case No. 23 CV H 07 0508 (Ohio C.P. 2023) (Defendant Brian R

Kahn's Memorandum in Opposition to Plaintiffs Motion for Preliminary Injunction filed August

9, 2023, attached hereto as Exhibit A).

20.     Willkie discloses that only after November 7, 2023, when it learned of

allegations against Mr. Kahn relating to securities fraud at Prophecy Asset Management LP, that

Willkie erected an ethical wall between personnel at the firm representing Franchise Group on

one hand, and Mr. Kahn on personal criminal and civil matters on the other hand. Feldman Decl.

¶¶ 22-23.

21.     While leading with the implementation of the ethical wall, Willkie

continued representing Mr. Kahn individually through October 2024 in the Prophecy matter,

despite the Debtors determining strategic alternatives for the Debtors needed to be explored in

June of 2024. *Compare* Feldman Decl. ¶¶ 23-24 *with* Orlofsky Decl. ¶ 7. The Feldman

Declaration does not state affirmatively when in October 2024 Willkie transitioned all

substantive work regarding the Prophecy matter to Libby Hoopes Brooks & Mulvey. Feldman

Decl. ¶ 24.

22.    The Petrillo firm was engaged to conduct the Independent Investigation

sometime after November 7, 2023, Willkie "provided documentary assistance to facilitate" the

same, and there is nothing to identify that Willkie's conduct in individual representations of Mr.

Kahn was similarly scrutinized. Feldman Decl. ¶ 25. The Independent Investigation initially

concluded in January 2024, lasting a portion of 3 months in total. *Id.* ¶ 26.

23.    Willkie rendered further assistance to Mr. Kahn individually in his

separation from Franchise Group, including holding funds that were released to Mr. Kahn in

January 2024, but not otherwise detailing the substance of that representation, other than to note

the disbursement of funds occurred around the conclusion of that representation. Feldman Decl.

¶ 26.

24.    Paragraph 27 of the Feldman Declaration asserts that the ethical wall is

still in place, and that Willkie "has not and will not represent Mr. Kahn and his affiliates (other

than the Debtors) in connection with the Debtors or these Chapter 11 Cases. Feldman Decl. ¶ 27.

**Willkie's Connections and Concurrent Representations of B. Riley Entities.**

25.    In addition to the numerous connections to Mr. Kahn and his affiliated

entities, Willkie also currently represents B. Riley Financial in ongoing litigation matters,

including "securities class action lawsuits." One such "ongoing litigation matter" involves an

affiliate of the majority equity holder of the Freedom VCM Holdings, LLC Debtor, B. Riley

Principal Investments, LLC.  Feldman Decl. ¶ 28.  As part of the proposed Plan of

Reorganization, matters relating to transactions among the Debtors, B. Riley Principal

Investments, LLC, B. Riley Financial, Inc., or any of their current and former affiliates, are

"Investigation Related Matters" which are the subject of further work of the Petrillo firm.  Plan

Art. I.A. 1.116.  B. Riley Financial' s "unsolicited proposal" in March 2023 was central to the

Take-Private Transaction.  Discl. Stmt. p. 5.

26.     While B. Riley is represented by separate counsel in these chapter 11

cases, D.I. 59, Willkie does not state any further screening or ethical walls have been established

with respect to BRF matters.

27.     Willkie does not disclose it represented B. Riley with respect to *Calenture,*

*LLC v. B. Riley Financial, Inc.*, Case No. 21-cv-6087-MKV (S.D.N.Y. 2021).  That case

included a complaint premised upon Section 16(b) of the Securities Exchange Act of 1934.  In

the *Calenture* complaint, the plaintiff alleged that B. Riley profited from insider information

related to Franchise Group; the allegations involved B. Riley's ownership of then-publicly-traded

shares of Franchise Group, Inc.  *Calenture* Compl.

## IV. <u>ARGUMENT</u>

28.     As discussed more fully below, the U.S. Trustee objects to the Application

because Willkie fails to make full disclosure on numerous key points, especially the extent of

Willkie's prepetition relationship and service to Mr. Kahn and his affiliated entities.  The U.S.

Trustee also objects to the Application, as even on the information presently available, Willkie

has a disqualifying conflict or is not disinterested and, by extension, is ineligible for retention

under section 327(a).  Lastly, Willkie's duties to former clients under Model Rule of Professional

Responsibility 1.9, made applicable herein by Del. Bankr. L.R. 9010-1(f), precludes the retention

and requires that the firm be disqualified as the Debtors are materially adverse to Mr. Kahn, and

Willkie has not established that Mr. Kahn has given informed consent, confirmed in writing, to

Willkie's representation of the Debtors.

**A. The Application Should Be Denied Because Willkie Has Not Fully Disclosed Its Connections.**

29.     The Application should be denied because Willkie has not fully disclosed

its connections as required by section 327(a) of the Bankruptcy Code and Federal Rule of

Bankruptcy Procedure (the "Bankruptcy Rule[s]") 2014(a).  Section 327(a) provides that the

trustee or debtor in possession may employ, with court approval, professionals who are

disinterested and who do not hold or represent interests adverse to the estate.  11 U.S.C. § 327(a).

Bankruptcy Rule 2014 imposes a complementary duty of disclosure so that courts and parties can

determine whether a professional to be employed satisfies section 327's requirements.  Said

differently, Bankruptcy Rule 2014 has one primary purpose—to facilitate compliance with

section 327.  Bankruptcy Rule 2014(a) requires that employment applications include, among

other disclosures, "a verified statement of the person to be employed setting forth the person's

connections with the debtor, creditors, any other party in interest, their respective attorneys and

accountants, the United States trustee, or any person employed in the office of the United States

trustee."  Fed. R. Bankr. P. 2014(a).  "Under Bankruptcy Rule 2014, 'all connections' that are

not so remote as to be *de minimis* must be disclosed."  *In re Leslie Fay Cos., Inc.,* 175 B.R. 525,

536 (Bankr. S.D.N.Y. 1994).  "Bankruptcy Rule 2014 disclosure is not optional; it's mandatory."

*In re Dickson Properties, LLC*, No. 11-11656-BFK, 2012 WL 2026760, *8 (Bankr. E.D. Va.

June 5, 2012); *see also In re Granite Partners LP*, 219 B.R. 22, 45 (Bankr. S.D.N.Y. 1998)

("The trustee broke the cardinal principle of Rule 2014(a).  He arrogated to himself a disclosure decision that the court must make.").

30.     The disclosure requirement of Bankruptcy Rule 2014(a) is "considered sacrosanct because the complete and candid disclosure by a [professional] seeking employment is indispensable to the court's discharge of its duty to assure the [professional's] eligibility for employment . . . and to make an informed decision on whether the engagement is in the best interest of the estate." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (Walrath, C.J.) (citations omitted).  Under Bankruptcy Rule 2014(a), professionals are required to disclose "*all connections* with parties in interest in the case, rather than furnishing only those which appear to implicate 'disinterestedness' or 'adverse interest' concerns." *Id.* at 190 (emphasis in original, citations omitted).  Additionally, under 11 U.S.C. § 328(c), this Court has the power to deny allowance of compensation and reimbursement of expenses to a professional if, "at any time during the professional person's employment," the professional holds an interest adverse to the estate with respect to the matter on which such professional person is employed.  Accordingly, the duty to disclose under Bankruptcy Rule 2014(a) is a continuing obligation to facilitate this Court's critical role in ensuring that impermissible conflicts of interest are rooted out.  *See Rome v. Braunstein*, 19 F.3d 54, 57-58 (1st Cir. 1994); *In re Granite Partners*, 219 B.R. at 35; *In re CF Holding Corp.*, 164 B.R. 799, 804-05 (Bankr. D. Conn. 1994).

31.     The disclosure requirements of Bankruptcy Rule 2014(a) have been construed strictly by the courts in furtherance of the Rule's protective function.  *See In re Jore Corp.*, 298 B.R. 703, 725 (Bankr. D. Mont. 2003).  Accordingly, any and all information which has any bearing on a professional's eligibility for employment must be disclosed.  *See id.*  (the disclosure requirements of Rule 2014(a) "do not give the attorney the right to withhold

13

information because it is not apparent to him or her that a conflict exists"); *In re Southmark Corp.*, 181 B.R. 291, 296 (Bankr. N.D. Tex. 1995) ("The professional person must disclose and continue to disclose all connections that may effect [sic] employment eligibility" (citation omitted)); *Leslie Fay Cos.*, 175 B.R. at 533 (Bankr. S.D.N.Y. 1994) ("All facts that may have any bearing on the disinterestedness of a professional must be disclosed"); *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992) (in complying with disclosure obligations, professionals are not free to "pick and choose which connections are irrelevant and trivial").  This Court is under no obligation to sift through the record for the purposes of policing professional conflicts of interest—under Bankruptcy Rule 2014(a), it is the professional's exclusive duty to bring the requisite information to the Court's attention.  *See In re BH & P, Inc.*, 949 F.2d 1300, 1317-18 (3d Cir. 1991); *see also In re Hathaway Ranch P'ship*, 116 B.R. 208, 219-20 (Bankr. C.D. Cal. 1990) ("A negligent failure to disclose all facts required by Bankruptcy Rule 2014(a) does not relieve the professional of the consequences of failing to make a complete disclosure.") (citations omitted); *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988)); ("Negligent omissions do not vitiate the failure to disclose.") (citations omitted).

32.    Willkie's disclosures are deficient in several areas.[2]

33.    The U.S. Trustee has identified two concluded matters of public record, *Pels v. Avril*, Case No. 23 CV H 07 0508 (Ohio C.P. 2023) (Willkie represented Mr. Kahn regarding litigation over the Take-Private transaction) and *Calenture, LLC v. B. Riley Financial*,

---

[2] The U.S. Trustee's informal inquiry also sought information regarding the prepetition payments received by Willkie disclosed in Paragraph 36 of the Feldman Declaration.  The U.S. Trustee contends that Willkie's current disclosures do not adequately address *In re Pillowtex, Inc.*, 304 F.3d 246 (3d Cir. 2002). 304 F.3d at 255 ("We hold that when there has been a facially plausible claim of a substantial preference, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination of the preference issue").  The U.S. Trustee reserves all rights regarding this issue given the current status of the record.

*Inc.*, Case No. 21-cv-6087-MKV (S.D.N.Y. 2021) (Willkie represented B. Riley parties in matters relating to the Franchise Group), where Willkie represented parties in interest in matters relating to the Debtors and/or these chapter 11 cases.  In short, statements in paragraphs 8 and 9 of the Feldman Declaration regarding Willkie's matters for clients listed on Schedules 2 and 3 to the Feldman Declaration being "unrelated to the Debtors and these Chapter 11 Cases" are, as the *Pels* and *Calenture* matters demonstrate, incorrect.  These nondisclosures are especially troubling given concerns about claims the estates may have against Mr. Kahn or B. Riley and their affiliates, which are potentially key assets of the Debtors' estates and are the subject of past and ongoing investigations.  This disclosure failure is serious and ought to inform the Court's evaluation of conflicts or adversity present for Willkie in its proposed role as co-counsel.

34.     Beyond those specific failures, the Application elides and obscures connections to the Debtors, other directors and officers of the Debtors.  Willkie also fails to give a full and fulsome accounting of services rendered to Mr. Kahn, even in matters related to the Debtors, that occurred within a year of the Petition Date.

35.     For example, the Application acknowledges that Mr. Kahn was synonymous with the Franchise Group for several years after the company's creation, but omits discussion of who selected Willkie to serve in its current capacity as co-counsel, while Willkie continued to serve Mr. Kahn in his individual capacity, in matters that are as of yet still under investigation by multiple parties, including the Debtors themselves.  *Compare* Feldman Decl. ¶¶ 23-24 *with* Orlofsky Decl. ¶ 7.  Nor does the Application disclose whether the same attorneys at Willkie represented Mr. Kahn in the Take-Private transaction also provided services to the Debtors prior to the stated implementation of the ethical wall in November 2023.

36.     Given the context of these cases, and the multiple investigations that are already ongoing and that will need to be performed in the future, full disclosure about Willkie's prepetition roles with the Debtors, Mr. Kahn, and other related parties is absolutely necessary and relevant.  *See In re Granite Partners,* 219 B.R. at 38; *see also In re NNN 400 Capitol Center 16 LLC*, No. 21-3013, 2022 WL 17831445 at *4 (3d Cir. Dec. 21, 2022) ("Courts must be able to rely on full and true disclosures to do their job properly.  And while all parties are entitled to have their claims fairly heard, courts have scarce resources to meet the many pressing demands put on them.  We expect attorneys to appreciate these realities.").

37.     The U.S. Trustee and other parties in interest will need to review any to-be-filed supplemental disclosure before commenting on same and/or supplementing this Objection.

**B. The Application Demonstrates a Material Adverse Interest to the Debtors and the Estates, and Willkie is Not Disinterested.**

38.     11 U.S.C. § 327(a) permits the retention of professional persons "that do not hold or represent an interest adverse to the estate . . . and that are disinterested persons." Section § 101(14)(C) provides, in pertinent part, that a disinterested person "does not have an interest materially adverse to the interest of the estate *or of any class of creditors or equity security holders*, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason." (emphasis added)

39.     In evaluating whether a professional "holds or represents an interest adverse to the interest of the estate with respect to the matter on which such professional is employed," it is clear that actual conflicts of interest are *per se* disqualifying. *See In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 475-76 (3d Cir. 1998).  In addition, while potential

conflicts do not disqualify a professional *per se*, they are disfavored.  *See id.* (quoting *In re BH & P, Inc.*, 949 F.2d 1300, 1316-17 (3d Cir. 1991).  In *In re BH & P, Inc.*, 949 F.2d 1300 (3d Cir. 1991), the court affirmed the disqualification of a trustee and proposed counsel where actual conflicts of interest existed between two jointly administered estates.  949 F.2d at 1317.   In its opinion, the court also noted that its ruling applied with equal force to all professionals subject to retention under Section 327 of the Bankruptcy Code: ". . . the conflict of interest principles which we have adopted regarding disqualification of trustees apply with equal force in those situations involving the employment of professionals."  *Id.* at 1316.

40.      In *In re Environdyne Industries, Inc.*, 150 B.R. 1008 (Bankr. N.D. Ill. 1993), in disqualifying proposed counsel for the Debtor, where the firm represented a substantial insider creditor, the Court stated: "This section [327(a)] is plainly concerned with a professional's divided loyalties and ensuring that professionals employed by the estate have no conflicts of interest with the estate."  *Id.* at 1016.   The court restated the accepted definition of "adverse interest":

> However, by judicial definition, "to hold an adverse interest"
> means  (i) to possess or assert any economic interest that would
> tend to lessen the value of the bankruptcy estate or that would
> create either an actual or potential dispute in which the estate is a
> rival claimant; or (ii) to possess a predisposition under the
> circumstances that render such bias against the estate

*Id.* (citations omitted).

41.      Here, Mr. Kahn will undoubtedly be asserting claims against the Debtors' estates – including claims for indemnity – potentially stemming from the Take-Private Transaction, or Mr. Kahn's resignation from the Debtors in January of 2024, on which Willkie represented Mr. Kahn in a matter adverse to the Debtors.  The Take-Private Transaction is the subject of pending litigation in Delaware's Chancery Court; accordingly, Mr. Kahn's assertion of

indemnity and/or other claims stemming from the Take-Private Transaction is probable, not

theoretical.  ¶¶ 18-19, *supra*.  Willkie "assisted Mr. Kahn in connection with his separation from

Franchise Group" and Mr. Kahn could assert claims relating to the resignation and any

agreement related thereto, where Willkie rendered services to Mr. Kahn individually.  *See*

Feldman Decl. ¶ 26.  By the same token, the Debtors' estates may have claims and causes of

action against Mr. Kahn, and questions remain extant regarding (i) Mr. Kahn's use of funding

connected to Prophecy in connection with the Take-Private Transaction, (ii) whether such

funding was properly authorized and/or consistent with investment guidelines on the

Vintage/Prophecy side, and (iii) what Mr. Kahn and his advisors knew about government

investigations into Prophecy (and when).  It is foreseeable that Mr. Kahn could assert an advice

of counsel defense based upon the advice provided by attorneys at Willkie relating to the Take-

Private Transaction or other matters where Willkie represented Mr. Kahn and his affiliates in

matters that affect the Debtors.

    42. Where a conflict involves a matter essential to resolving a case, the use of

other counsel does not resolve the conflict.  *In re Project Orange Assocs, LLC*, 431 B.R. 363,

376 (Bankr. S.D.N.Y. 2010); *see In re WM Distribution, Inc.*, 571 B.R. 866, 873 (Bankr. D.N.M.

2017) ("use of conflicts counsel is not appropriate where the adverse interests of the debtors

represented by the same general bankruptcy counsel are central to the reorganization efforts of

either debtor or to the other resolutions of the chapter 11 case or where the adverse interest are so

extensive that each debtor should have its own independent bankruptcy counsel."); *Git-n-Go,*

*Inc.,* 321 B.R. 54, 61-62 (Bankr. N.D. Okla. 2004) (involving proposed bankruptcy counsel

disqualification although debtor proposed to retain conflicts counsel to provide advice in

connection with creditors represented by proposed bankruptcy counsel).

43.     In *Project Orange Assocs.,* General Electric ("GE") was the largest unsecured creditor in the case, the resolution of whose claim was essential to a successful reorganization.  *Project Orange Assocs.,* 432 B.R. at 365-366.  The Debtor sought to retain DLA Piper (US) ("DLA Piper") as its bankruptcy counsel.  *Id.* at 367-368.  DLA Piper, however, represented affiliates of GE in unrelated matters.  *Id.* at 368.  DLA Piper International, LLP ("DLA Piper International"), a separate affiliate of DLA Piper, also represented an affiliate of GE, General Electric International, Inc. ("GEII"), which was a creditor in the case.  *Id.* at 368.  In claiming that it did not have a disqualifying conflict, DLA Piper asserted, among other things, that (i) the debtor retained another firm to handle all matters DLA Piper could not, *id.* at 369, and (ii) it obtained a conflicts waiver from GE.  *Id.*  The Court denied the retention application.  *Id.* at 379.  In its ruling, the Court held that "where proposed counsel is conflicted from representing a debtor with regards to matters central to the bankruptcy, even the presence of conflicts counsel does not make the retention appropriate."  *Id.* at 376.

44.     The holding of the *Project Orange Assocs.* court applies to Willkie's proposed retention in these cases.  The Take-Private Transaction and matters related to Mr. Kahn are central to these Debtors and their estates, and in a step beyond the facts in *Project Orange Assocs,*. Willkie represented Mr. Kahn directly (as opposed to an international affiliate), and Mr. Kahn and the Debtors' estates have claims and causes of action between them.  Willkie cannot cure this situation by relying on general terms of engagement letters or by utilizing YCST as conflicts counsel.  Additionally, the factual posture of these cases has had Willkie negotiate the terms of an RSA, which seeks approval of a plan that would provide Willkie relief from claims relating to its advice rendered to other parties.

45.     While Willkie may also point to the use of the ethical wall implemented after November 7, 2023, as to permit the attorneys currently staffing these cases to represent the Debtors, such an item ignores that disqualification of one attorney representing the debtor, results in disqualification of the entire firm.  *In re NNN 400 Capitol Ctr. 16 LLC*, 632 B.R. 243, 273 (D. Del. 2021), *aff'd sub nom*. *In re NNN 400 Capitol Ctr. 16 LLC.*, No. 21-3013, 2022 WL 17831445 (3d Cir. Dec. 21, 2022) (citing *In re Phila. Athletic Club, Inc.*, 20 B.R. 328, 338 n.11 (E.D. Pa. 1982); *In re Essential Therapeutics, Inc.*, 295 B.R. 203, 209-11 (Bankr. D. Del. 2003) (disqualifying entire Bingham McCutchen global law firm); *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1017-18 (Bankr. N.D. Ill. 1993) ("The 400 plus attorneys at Geary Gottlieb must be considered as one in any conflict of interest analysis."); 1 Collier on Bankruptcy ¶ 8.03[10] (16th ed. 2020) (noting rule of imputed disqualification "applies regardless of the size of the firm")).

46.     Section 101(14)(C) provides another basis for finding Willkie not disinterested on the facts currently presented.  Section 101(14)(C) includes adversity to any class of creditors or equity security holders, "by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, *or for any other reason*," (emphasis added), which is especially important in a case where a defined class of creditors covers former shareholders who now hold "subordinated" claims on account of their former equity interests.  *See* 11 U.S.C. § 510(b); Plan Art. I.A. 1.197.  Despite Willkie personally counseling Mr. Kahn in the Take-Private Transaction, the firm represents the Debtors in a pending litigation matter related to that transaction, *Gale et al. v. Vintage Capital Management, LLC et al.*, Case No. 2024-0726-LWW (Del. Ch. 2024)).  The plaintiff common shareholders in the Gale action are the Subordinated Claims class, Class 10 of the Debtors' Plan.  *Compare* Feldman Decl. ¶ 19 *with* Plan Art. I.A. 1.197, Plan Art. IV. 4.1.  The substance of the *Gale* complaint covers undisclosed investment ties

among Mr. Kahn, Vintage, and B. Riley, transfer of shares from Mr. Kahn to B. Riley, and misstatements or omissions about the genesis of the Take-Private Transaction. *Gale et al. v. Vintage Capital Management, LLC et al.*, Case No. 2024-0726-LWW (Del. Ch. 2024)) Compl. ¶¶ 6, 12 & 62.

47.     Willkie is materially adverse as to those Subordinated Claim Class 10 creditors and, by extension, is therefore not disinterested under section 101(14)(C). *See In re Black & White Stripes, LLC,* 623 B.R. 34, 52 (Bankr. S.D.N.Y. 2020) ("it is particularly concerning where these potential claims would be against the Cushner Firm's former clients in the State Court Action, which raised substantially the same issues.").

**C.  Model Rule of Professional Responsibility Rule 1.9 May Also Separately Disqualify Willkie.**

48.     The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") incorporate by reference the Model Rules of Professional Conduct of the American Bar Association (the "Model Rules").   *See* Local Rule 9010-1(f).   The Bankruptcy Court may rely on the Rules of Professional Conduct to determine if a conflict exists with respect to a law firm's representation of parties in a bankruptcy proceeding.  *In re Star Broadcasting, Inc.*, 81 B.R. 835, 839 (Bankr. D.N.J. 1988).  The Third Circuit has acknowledged that attorneys retained in bankruptcy proceedings must meet "the standards established by professional ethics," in addition to the restrictions imposed by the Bankruptcy Code. *In re Congoleum Corp.*, 426 F.3d 675, 688 (3d Cir. 2005).  In fact, the professional rules of conduct "are often viewed as even more necessary and applicable in bankruptcy cases than in other contexts".  *Id.* at 686.

49.     The Debtors seek to retain Willkie as co-counsel, while Willkie previously represented Mr. Kahn in matters relating to the Debtors, and Vintage Capital, among other

entities relevant to the disposition of these cases.  Feldman Decl. ¶¶ 14-29.  Model Rule 1.9

("Duties to Former Clients") applies when a firm seeks to represent a new client in a

substantially related matter and prohibits the disclosure or use of client confidences.[3]  The Rule

provides as follows:

> (a)      A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

> (b)      A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

>> (1)      whose interests are materially adverse to that person; and

>> (2)      about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

> (c)      A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

>> (1)      use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

>> (2)      reveal information relating to the representation except as these Rules would permit or require with respect to a client.

50.      A conflict of interest under Model Rule 1.9 exists if (1) the lawyer had an

attorney-client relationship with the former client; (2) the present client's matter is the same or a

"substantially related" matter; (3) the interests of the second client are materially adverse to the

interests of the former client; and (4) the former client did not consent to the representation after

---

[3] The New York Rules of Professional Conduct Rule 1.9 largely tracks the Model Rule 1.9, including the Comments.

consultation. *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, No. CIV. 10-1067-LPS, 2011 WL 2692968, at *5 (D. Del. June 22, 2011).

51.    Courts often focus on the second prong, needing to determine if the matters are "substantially related." Comment 3 to Model Rule 1.9 explains that "[m]atters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.

52.    When determining whether the conflict arises in the "same or a substantially related matter," courts focus on the nature and scope of the prior and current representations and whether information gained from the attorney-client relationship could possibly be used in the current matter to the detriment of the former client. Under Third Circuit precedent, the *mere possibility* that confidential information obtained in the former representation is relevant to the current representation makes the matters substantially related. *See In re Corn Derivatives*, 748 F.2d 157, 162 (3d Cir. 1984). Moreover, "doubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification." *Int'l Bus. Mach. Corp. v. Levin,* 579 F.2d 271, 283 (3d Cir. 1978).

53.    This Court recognizes that "while the risk of a breach of client confidences is a *sufficient* condition for 'relatedness', it is not a *necessary* one." *In re Meridian Auto. Systems-Composite Operations,* 340 B.R. 740, 747 (Bankr. D. Del. 2006) (emphasis in original); *see Miller v. Sun Cap. Partners, Inc.,* 441 B.R. 742, 746 (Bankr. D. Del. 2011) (noting because the court found that the matters on which the law firm previously represented the Debtors were substantially related to the issues in the adversary proceeding where the firm represented

defendants, it was not necessary to identify confidential information obtained from the initial representation.).

54.     The Take-Private Transaction is central to the Debtors' capital structure and to various disputes among the Debtors and creditors of these estates.  Willkie represented Mr. Kahn in that transaction, and now seeks to represent these Debtors when claims relating to Mr. Kahn, B. Riley, and others regarding the representations and warranties of that transaction could form the basis of valuable claims or causes of action for these estates.  Willkie's proposal to use conflicts counsel is an admission that such representation of Mr. Kahn is sufficiently a conflict to merit serious concern.

55.     A similar situation was addressed by this Court in *Meridian Automotive.* There, a secured creditor successfully moved to disqualify a law firm from serving as counsel to an informal committee of first lien lenders.  The Court concluded the secured creditor terminated the attorney-client relationship and analyzed the situation under Model Rule 1.9.  Because the firm's representation of the secured lender and of the informal committee related to the same loan documents, the Court found there were "duty-of-loyalty concerns that are alone sufficient to support a violation of Model Rule 1.9."  *Meridian Automotive,* 340 B.R. at 747.  The *Meridian Automotive* Court also found the firm was in possession of the secured lender's confidential information.   "The duty of confidentiality 'applies not only to matters communicated in confidence by the client but also to *all information* relating to the representation, *whatever its source.*'"  *Id.* at 747 (citation omitted) (emphasis in original).  The law firm's own legal conclusions and advice to the secured lender were viewed as confidential.  *Id.*

56.     Willkie does not state that it obtained informed consent, confirmed in writing from Mr. Kahn as to its representation of the Debtors, and as noted in the Application,

Mr. Kahn was synonymous with Franchise Group for years before his exit from the company, which Willkie also represented him on individually.  Appl. ¶ 1; Feldman Decl. ¶ 26. Willkie's adversity to the Debtors is not the relevant standard – rather, as set forth in comment 9 to Model Rule 1.9, the Rule is for the protection of former clients and can be waived only if the former client provides informed written consent.  Such consent is not present here.

57.     Comment 2 to Model Rule 1.9 provides helpful context on the scope of a "matter" for purposes of the Rule.  "When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited."  The Take-Private Transaction is central to these cases, and Willkie cannot now represent the Debtors when the firm previously represented Mr. Kahn's interests in that transaction.

## V.     RESERVATION OF RIGHTS AND CONCLUSION

58.     The U.S. Trustee reserves all discovery rights in connection with the Application.  Additionally, the U.S. Trustee reserves the right to amend and/or supplement this Objection, including in the event additional disclosures are supplied.

WHEREFORE the U.S. Trustee requests that this Court deny the Application. The U.S. Trustee also asks that the Court grant such other relief as the Court finds just and appropriate.

Dated: January 13, 2025                    Respectfully submitted,

                                           **ANDREW R. VARA**
                                           **UNITED STATES TRUSTEE**
                                           **REGIONS 3 AND 9**

                                     By:   */s/ Timothy J. Fox*
                                           Timothy J. Fox, Jr. (DE Bar No. 6737)
                                           Trial Attorney
                                           United States Department of Justice
                                           Office of the United States Trustee
                                           J. Caleb Boggs Federal Building
                                           844 N. King Street, Room 2207, Lockbox 35
                                           Wilmington, DE 19801
                                           Telephone: (302) 573-6491
                                           Email:   Timothy.Fox@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I, Timothy J. Fox, Jr., hereby certify that on January 13, 2025, I caused to be served a copy of this Objection by electronic service on the registered parties via the Court's CM/ECF system and courtesy copies were sent via email to parties in interest.

Dated: January 13, 2025

*/s/ Timothy J. Fox*
Timothy J. Fox, Jr.