# EXHIBIT A

DocuSign Envelope ID: 7BB4C175-58C8-4E43-8113-5AD204882346



# Appliances & Furniture

109 Innovation Court, Suite J
Delaware, OH 43015

May 30, 2024

SW 17th Street 1010, LLC
Attn: Steven Belford
6649 N. High Street, Suite LL2
Worthington, OH 43085

Re:   Lease Agreement dated November 1, 2014, (the "Lease"), by and between SW 17th Street 1010, LLC ("Landlord") and American Freight, LLC, successor-in-interest to American Freight of Florida, Inc. (Tenant") for the property located at 1010 SW 17th Street, Ocala, FL (the "Premises").

*Sent via UPS Overnight (1Z V52 84V NW 2892 6698)*

### NOTICE OF EXERCISE OPTION TO RENEW

Pursuant to the Lease, you are hereby notified that Tenant has elected to, and does hereby, exercise its right to extend the Lease and the term thereof for a further period of five (5) years, commencing January 1, 2025, and continuing and including December 31, 2029, per the terms of the Lease.

Sincerely,

**AMERICAN FREIGHT, LLC**

By _____
      Jeff Seghi
      Chief Financial Officer

*#006 Ocala, FL*

## LEASE

THIS LEASE ("Lease"), made and entered into at Delaware, Ohio, effective as of November 1, 2014, by and between SW 17TH STREET 1010, LLC, an Ohio limited liability company, hereinafter referred to as "Lessor", and AMERICAN FREIGHT OF FLORIDA, INC., an Ohio corporation, hereinafter referred to as "Lessee".

### W I T N E S S E T H:

1.    Premises. The Lessor, in consideration of the rent to be paid and the covenants to be performed by the Lessee, does hereby let and lease unto the Lessee, the facility and all improvements located thereon located at 1010 SW 17th Street, Ocala, FL, hereinafter referred to as "Premises." Lessor makes no warranties, express or implied, with respect to the condition of the Premises, which is delivered to the Lessee in "AS IS" condition.

2.    Use of Premises. It is understood and agreed that the Premises shall be used for the purpose of the retail sale of furniture, carpet, upholstery, bedding, fabric protection products, case goods, mattresses and other furniture accessories and related goods, as well as the warehousing of same, and any and all operations and business incident and appropriate thereto.

3.    Term. The term of the Lease shall be for a period of ten (10) years and two (2) months, commencing on November 1, 2014, and ending on December 31, 2024 ("Initial Term").

4.    Lessee's Option to Renew. Lessee shall have the right and option, to be exercised as hereinafter provided, to renew the term of this Lease for two (2) additional periods of five (5) years each, commencing upon the expiration of the Initial Term, upon the following terms and conditions:

A.    The renewal term shall be upon the same terms, covenants and provisions as provided in this Lease, with the exception of rent, which shall be determined in accordance with the provisions of Paragraph 5 hereof.

B.    Lessee may exercise its right to renew this Lease only if Lessee is not in default of any terms or conditions in this Lease and only by notifying Lessor in writing of its election to exercise its right of renewal no later than ninety (90) days prior to the expiration of the Initial Term or any subsequent renewal term hereunder. Lessor may waive such notice in its sole discretion.

C.    Upon the giving of the notice of election provided for in Paragraph 4(B), this Lease shall be deemed to be renewed and the term hereof renewed for a period of five (5) years from the date of the expiration of the Initial Term or any subsequent renewal term, without the execution of any further lease or instrument.

5.    Rent. The Lessee hereby covenants and agrees to pay Lessor, as rent for the above described Premises, for Lessee's business operations, together with any parking area surrounding the same, on the first day of each and every month ("Due Date") during the term, in the following amount:

710701445

A.      For the period ending December 31, 2014, the monthly rental shall be ELEVEN THOUSAND SEVEN HUNDRED and 00/100 Dollars ($11,700.00) plus sales tax. For the period ending December 31, 2015, the sum of ONE HUNDRED FORTY THOUSAND FOUR HUNDRED and 00/100 Dollars ($140,400.00) per year plus applicable sales tax for the term of this Lease, payable in equal monthly installments of ELEVEN THOUSAND SEVEN HUNDRED and 00/100 Dollars ($11,700.00) plus applicable sales tax ("Initial Rent"). For the period beginning January 1, 2016 and each successive year thereafter until December 31, 2034 (assuming both renewal terms are exercised) base rent shall increase at a rate of one percent (1%) per year.

B.      If the rent or any other amount due to the Lessor under this Lease is not received within five (5) days of its Due Date ("Late Date"), the Lessor incurs additional expense. As a result, the Lessee shall pay a late charge equal to 5% of the unpaid amounts on the Late Date as additional rent. The Lessee shall also pay interest on all unpaid amounts from the Due Date until the date of payment at an interest rate of the lower of (a) 10% per annum or (ii) the maximum amount permitted by law. Notwithstanding the foregoing, this Section 5B shall not be applicable during any time that Steven Joel Belford is employed by Lessee or one of its affiliates; provided that if Steven Joel Belford is employed by Lessee or one of its affiliates, but is directed by the board of directors of American Freight Group, Inc. not to pay amounts due under this Lease, this Section 5B shall apply.

6.      Maintenance, Repair and Replacement. The Lessee, at its expense, shall maintain and repair the building and structures upon the Premises, both interior and exterior, including, but without limiting the generality thereof, the walls, roofs, floors, plumbing, heating, electrical systems, air conditioning systems and the parking areas, sidewalks and landscaping which are a part of the Premises. Notwithstanding anything to the contrary in this Lease, the Lessor must undertake any maintenance or repairs required to comply with any present or future laws, regulations or ordinances, including building and fire code and zoning, applicable to the Premises; provided that any improvements to the Premises undertaken by Lessee shall comply with any laws, regulations or ordinances, including building and fire code and zoning, applicable to such improvements. The Lessee, at its expense, shall keep the exterior free of snow, ice, rubbish and other obstructions and shall maintain the landscaping around the Premises.

7.      Fixtures and Improvements. All additions, expansions, fixtures, improvements and repairs made upon the Premises by the Lessee shall thereafter be the property of the Lessor, except as they may be mutually agreed upon between the Lessor and the Lessee. The Lessee shall have the right and privilege to make additions, expansions, improvements and repairs to the Premises with the prior consent of the Lessor, which may not be unreasonably withheld, conditioned or delayed. Notwithstanding anything to the contrary hereinabove contained, all fixtures and equipment that Lessee shall install in the Premises, whether permanently fixed or otherwise, may be removed by Lessee before or at the expiration or termination of this Lease. Lessee, in such event, shall, at Lessee's sole cost and expense, repair any injury to the Premises resulting from such removal. Any items installed on the Premises as replacements for Lessor's original installation shall not be removed from the Premises.

8.      Mechanics' Liens. In the event the Lessee erects any alterations or improvements upon the Premises as hereinabove provided, the Lessee hereby agrees to and does indemnify the

Lessor against any mechanics' liens that may be filed against the Premises for labor and/or material furnished, and in the event any such lien is filed, it will immediately pay the same and cause it to be discharged and satisfied of record. Notwithstanding anything in this Lease to the contrary, Lessor hereby acknowledges and agrees that any and all of Lessee's personal property, including, without limitation, supplies, goods, stock, merchandise, furniture, furnishings, trade fixtures and equipment in the Premises may be financed by a third-party lender or lessor (an "Equipment Lienor"). The Lessor agrees to waive any rights to such property and any security interest or liens in such property, including, without limitation, any constitutional or statutory lien rights afforded to Lessor by virtue of this Lease, and Lessor hereby agrees to recognize the rights of any such Equipment Lienor, subject to and in accordance with a commercially reasonable waiver agreement to be entered into by and between Lessor and the Equipment Lienor following request by Lessee.

9.    Utilities. The Lessee shall, during the term hereof, pay all charges for gas, electricity, heat, sewage, trash removal, water, telephone and any and all other utilities used at or supplied to the Premises.

10.    Real Estate Taxes and Assessments. The Lessee shall pay to the public officers charged with the collection thereof, as additional rent, before any fine, penalty, interest or other cost may be added thereto for the nonpayment thereof, all real estate taxes, assessments, license fees, excises and other governmental charges, general and special, ordinary and extraordinary, and unforeseen as well as foreseen, of any kind and nature whatsoever (including, but not limited to, assessment for public improvements or benefits) which, during the term hereby demised, shall be assessed, levied or imposed upon or become due and payable and lien upon the Premises or any part thereof. The Lessor shall promptly send copies of the tax bills that it receives for the Premises to the Lessee.

11.    Insurance.

A.    The Lessee shall, at Lessee's sole cost and expense, keep insured all buildings, structures and improvements on the Premises against loss or damage by fire, lightning, windstorm, explosion, damage from aircraft and vehicles, and water and smoke damage in amounts equal to the full replacement cost. Lessor shall be named loss payee as their interest may appear.

B.    The Lessee, at Lessee's sole cost and expense, , shall maintain general public liability insurance against claims for bodily injury, death or property damage occurring upon, in or about the Premises, in amounts of not less than $2,000,000.00 with respect to any one accident, $2,000,000.00 with respect to any one person, and $1,000,000.00 for property damage. Lessor shall be named additional insured as their interest may appear.

C.    All insurance provided for in this Section 11 shall be effected under valid and enforceable policies issued by insurers rated at least A- VII by A.M. Best. The Lessee shall, from time to time as required by Lessor, furnish valid evidence that the insurance herein required has been obtained and that the premiums therefore are paid. Such policy or policies shall provide for thirty (30) days prior written notice to Lessor of cancellation except 10 days for non-payment of premium.

D.     Notwithstanding anything in this Lease to the contrary, Lessor shall not be entitled to, and Lessee shall not be liable for, any punitive, consequential or special damages or loss of profits under this Lease and Lessor waives any rights it may have to such damages under this Lease in the event of a breach or default by Lessee under this Lease.

12.     <u>Indemnity</u>. The Lessee shall indemnify and hold Lessor harmless from any and all liability for damages to any person or property in, on or about the Premises from any cause whatsoever.

13.     <u>Net-Net-Net Lease</u>. It is the specific intent of this Lease that it be determined to be a triple-net lease and that the rents herein provided for shall be net amounts received by the Lessor, without any deductions of any nature whatsoever.

14.     <u>Damage by Fire or Other Casualty</u>. In the event of any loss causing damage or destruction to the Premises and covered or to be covered by insurance under the terms of this Lease, the Lessee shall promptly give written notice to the Lessor ("Casualty Notice"). Promptly following receipt of the Casualty Notice, Lessor shall ascertain the overall length of time following the date of the loss required to restore the Premises to the condition existing immediately prior to the loss and shall, within ten (10) days of the receipt of the Casualty Notice, advise Lessee in writing of the time so required and the extent of the damage to be repaired. If Lessor states in such notice that the loss can reasonably be expected to be fully repaired within a period of four (4) months or less from the date of the occurrence, Lessor shall, with the insurance proceeds, promptly initiate such repair or rebuilding. If Lessor's notice to Lessee states that the damage or destruction cannot reasonably be expected to be fully repaired or reconstructed within the period of four (4) months from the date of the occurrence, then Lessee shall have the option, to be exercised by written notice to the Lessor not more than fifteen (15) days after receipt of the notice from Lessor to Lessee, to terminate the Lease as of the date of such damage or destruction, and all rentals shall be prorated and Lessee's liability hereunder shall cease as of such termination date. In such event, Lessee shall, within thirty (30) days thereafter, remove all personal property and equipment owned by it from the Premises. In the event the Lessee does not exercise its option to terminate the Lease as herein provided, Lessor shall promptly initiate and prosecute diligently the completion of the repairs or reconstruction. The repairs or reconstruction of such damage or destruction shall be at Lessor's cost and Lessor shall also be entitled to receive the proceeds of the fire and extended coverage insurance upon the structures and buildings upon the Premises.

In the event of damage or destruction of the Premises hereinabove referred to, the rentals shall be abated for the period of time and to the pro-rata extent that the Lessee is deprived of the use and occupancy of the Premises. In the event of partial loss of a nature so that Lessee can reasonably continue its business at the Premises, the abatement and cancellation of such rental shall be that pro-rata part of the rental which the number of square feet of which Lessee is deprived bears to the total number of square feet in the building used by the Lessee.

15.     <u>Eminent Domain</u>. If there shall be a total taking of the Premises in condemnation proceedings or by any right of eminent domain, this Lease and the term and estate hereby granted shall terminate as of the date of taking of possession by the condemning authority and all rent shall be prorated and paid as of such termination date. If there shall be a taking of the

710701445

Premises of such scope that the untaken part of the Premises would in Lessee's reasonable judgment be uneconomic to operate, then Lessee may terminate this Lease and the term and estate granted hereby by giving notice to Lessor within sixty (60) days after the date of taking of possession by the condemning authority. If Lessee shall give a termination notice as aforesaid, then this Lease and the term and estate granted hereby shall terminate as of the date of such notice and all rent shall be prorated and paid as of such termination date. In the event of a taking of the Premises which does not result in the termination of this Lease (i) the term and estate hereby granted with respect to the taken part of the Premises shall terminate as of the date of taking of possession by the condemning authority and all rent shall be appropriately abated for the period from such date to the expiration date and (ii) Lessor shall with reasonable diligence restore the remaining portion of the Premises (exclusive of Lessee's personal property) as nearly as practicable to its condition prior to such taking.

16.     Waste. The Lessee shall not commit or suffer any waste or damage to any building or improvement upon the Premises. Lessee will carry out a commercially reasonable program of regular maintenance and repair of the Premises so as to impede deterioration by ordinary wear and tear.

17.     Inspection. Upon reasonable prior written notice to Lessee, the Lessor or Lessor's representative shall have the right, at all reasonable times, to enter upon and to inspect the Premises to ascertain that Lessee is carrying out the terms, conditions and provisions hereof. Lessor shall not, during its exercise of any rights under this Lease, unreasonably interfere with Lessee's use or occupancy of the Premises for the operation of its business.

18.     Surrender of Possession. The Lessee shall, upon termination of this Lease by lapse of time or otherwise, surrender up and deliver the Premises, together with all improvements made thereon by the Lessee, in as good order and repair as when first received or constructed by it, ordinary wear and tear and damage by fire and the elements excepted.

19.     Assignment and Subletting. It is agreed that this Lease may not be assigned or transferred by the Lessee, or the Premises or any part thereof sublet or underleased without the previous written consent of the Lessor, which will not be unreasonably withheld, conditioned or delayed. Notwithstanding anything herein to the contrary, Lessor's consent shall not be required for (i) an assignment of this Lease to an entity into which Lessee is merged or consolidated or which results from a spin-off, consolidation, reorganization or recapitalization of Lessee, (ii) any initial public offering or sale of Lessee or any parent of Lessee or any other entity that controls Lessee, or (iii) an assignment of this Lease to an entity or individual to which all or substantially all of Lessee's assets or beneficial ownership interests are transferred or to an entity controlled by or which is commonly controlled with Lessee ("Permitted Transferee"), provided such merger, consolidation, or transfer of assets is for a good business purpose and not principally for the purpose of simply transferring Lessee's leasehold estate and the Lessee gives written notice of the transfer to the Lessor. An entity that "controls" or is "controlled by" or "commonly controlled with" Lessee shall mean that the controlling entity possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of the controlled entity; and for such purpose, the ownership, directly or indirectly, of at least fifty-one percent (51%) of the voting securities of, or possession of the right to vote, in the ordinary direction of its affairs,

710701445

at least fifty-one percent (51%) of the voting interest in, any entity shall be presumed to constitute such control.

20.   Default by Lessee. If Lessee defaults in the payment of rent or in the fulfillment of any of the other agreements contained herein, or if waste is committed or unnecessary damage is done to the Premises, then Lessor shall give Lessee written notice of such default. In the event such default, as contained in said written notice, is not remedied within ten (10) days with respect to a monetary default and thirty (30) days for all other defaults after receipt of such written notice (provided, however, that if the nature of Lessee's non-monetary default is such that more than thirty (30) days are reasonably required for its cure, then Lessee shall not be deemed to be in default if Lessee shall commence such cure within said thirty (30) day period and thereafter diligently prosecute such cure to completion), then Lessor, at its option, may either (a) terminate this Lease or (b) re-enter the Premises, expelling Lessee and may re-let the Premises at the market rent obtainable, making commercially reasonable efforts therefore, and receive the rent therefrom, but the Lessee shall remain liable for the equivalent of the amount of all rent payable herein less the amount of rent received from re-letting, if any, after deducting therefrom the reasonable costs of obtaining possession of the Premises and of any repairs and alterations necessary to prepare them for re-letting. Notwithstanding anything contained in this Lease to the contrary, Lessor shall use commercially reasonable efforts to mitigate its damages hereunder in the event of a default.

21.   Subordination to Mortgage. In the event Lessor mortgages the Premises herein demised, Lessee agrees that it will promptly, upon written request, pay any rental due in accordance with any valid assignment; provided that with respect to any such mortgage of the Premises, Lessee shall receive a non-disturbance agreement, in a form reasonably accepted by Lessee, whereby, as a condition to any attornment or subordination by Lessee to such mortgage or other encumbrance, Lessee shall not be disturbed in its possession of the Premises throughout the term or its rights under this Lease terminated so long as Lessee is not in default hereunder, beyond any applicable notice and cure period. Lessor shall in good faith request Lessor's mortgagee to provide Lessee a non-disturbance agreement in form and content reasonably acceptable to Lessee.

22.   Holding Over. In the event the Lessee remains in possession of the Premises after the term of this Lease, it shall be deemed a tenant for month to month only at the 125% of the monthly rental payment provided for in this Lease and governed in all other things, except as to the duration of the term and rent, by the provisions of this Lease.

23.   Parties Bound. The terms, conditions and provisions of this Lease shall inure to and be binding upon the Lessor and the Lessee, or their respective personal representatives, successors and assigns.

24.   Governing Law. This Lease refers to real property located in the State of Florida and has been executed in the State of Ohio ("State"). This Lease shall be deemed to be a contract made under the laws of the State in which the Premises is located and for all purposes shall be governed by and construed in accordance with such laws.

710701445

25.    Estoppel. At any time during the term of this Lease, upon the written request from time to time of the other party, Lessor and Lessee shall, within ten (10) days after receipt of such request, execute and deliver to the other party a standard type of estoppel certification, certifying: (a) the date of commencement and expiration of this Lease; (b) the fact that this Lease is unmodified and in full force and effect (or, if there have been modifications to this Lease, that this lease is in full force and effect, as modified, and stating the date and nature of such modifications); (c) the monthly amounts of rent and any additional rent then due under this Lease and the date to which the rent and other sums payable under this Lease have been paid; (d) the fact that there are no current defaults under this Lease by either Lessor or Lessee except as specified in the statement; and (e) such other factual matters as may be reasonably requested by the party.

26.    Brokers. Each party represents to the other that no broker negotiated this Lease or is entitled to any commission in connection herewith.

27.    Force Majeure. Neither party shall not be deemed in default with respect to any of the terms, covenants and conditions of this Lease, if the obligated party fails to timely perform same and such failure is proximately caused by any event or condition beyond the reasonable control of such party, provided that such obligated party diligently proceeds to perform when able to do so.

28.    Notice. All notices or consents required or authorized under this Lease must be in writing. Such notice or consent is sufficient if (i) delivered personally; (ii) mailed by first class mail, postage prepaid; (iii) delivered by a nationally recognized overnight courier service; or (iv) sent by email with confirmation of receipt, to the principal office of the party. A party may change its address from time to time by a notice to the other party pursuant to this Paragraph 28.

29.    Environmental. Lessee agrees that all operations or activities upon the Premises by Lessee shall be in material compliance with all federal, state and local laws governing the generation, manufacturing, storage or use of any hazardous materials.

30.    Amendment. Except as set forth in Section 31, this Lease may not be amended, modified or supplemented except in writing signed by Lessor and the Lessee.

31.    Capital Lease Treatment. The parties hereto shall work together to ensure this Lease is not treated as a capital lease under U.S. generally accepted accounting principles ("GAAP"). Notwithstanding the foregoing, the Lessee may unilaterally amend this Lease, including by reducing the Initial Term and eliminating any renewal terms, only to the extent necessary to ensure this Lease is not treated as a capital lease under GAAP.

32.    Termination of Existing Lease. By signing this Lease, Lessor and Lessee acknowledge that any previously executed Lease(s) related to the Premises among the Lessor and Lessee is terminated.

710701445

IN WITNESS WHEREOF, the parties have hereunto set their hands to duplicate originals of this Lease on the day and year first above written.

LESSEE:

AMERICAN FREIGHT OF FLORIDA, an Ohio corporation

By: _____
Name: Steve Belford_____
Title: President_____
Email: Steve@americanfreight.us_____
Address: 680 Sunbury Rd._____
            Delaware, OH  43015_____
            _____

LESSOR:

SW 17TH STREET 1010, LLC, an Ohio limited liability company

By: _____
Name: Steve Belford_____
Title: Member_____
Email: Steve@americanfreight.us_____
Address: 680 Sunbury Road_____
            Delaware, OH  43015_____
            _____

710701445

# EXHIBIT B

DocuSign Envelope ID: CBC750F5-432C-4FA4-B37F-7516865C686F

## 🇦🇫 AMERICAN FREIGHT
# FURNITURE · MATTRESS · APPLIANCE

109 Innovation Court, Suite J
Delaware, OH 43015
740.363.2222 ph
740.480.1663 fax

July 26, 2023

Niagara Falls 778, LLC
6649 N. High Street, Suite LL2
Worthington, Ohio 43085
steve@mlmrose.com

Re:    Lease Agreement dated November 1, 2014 (the "Lease"), by and between NIAGARA
FALLS 778, LLC ("Landlord") and AMERICAN FREIGHT, LLC successor in interest to
American Freight of Western New York, Inc. as assigned or amended, ("Tenant") for the
property located at 778 Niagara Falls Blvd., North Tonawanda, New York, (the
"Premises").

*Sent via Electronic Mail and UPS Overnight (Tracking Number 1ZV5284V1326963237 )*

### NOTICE OF EXERCISE OPTION TO RENEW

Pursuant to Section 4 of the Lease, you are hereby notified that Tenant has elected to, and does
hereby, exercise its option to renew and right to extend the Lease and the term thereof for a
further period of five (5) years, commencing January 1, 2024, and continuing and including
December 31, 2028, per the terms of the Lease.

Sincerely,

**AMERICAN FREIGHT, LLC**

By _Jeff Seghi_____
        Jeff Seghi
        Chief Financial Officer

**LEASE**

THIS LEASE ("Lease"), made and entered into at Delaware, Ohio, effective as of November 1, 2014, by and between NIAGARA FALLS 778, LLC, an Ohio limited liability company, hereinafter referred to as "Lessor", and AMERICAN FREIGHT OF WESTERN NEW YORK, INC., an Ohio corporation, hereinafter referred to as "Lessee".

**W I T N E S S E T H :**

1.    Premises. The Lessor, in consideration of the rent to be paid and the covenants to be performed by the Lessee, does hereby let and lease unto the Lessee, the facility and all improvements located thereon located at 778 Niagara Falls Boulevard, North Tonawanda, NY, hereinafter referred to as "Premises." Lessor makes no warranties, express or implied, with respect to the condition of the Premises, which is delivered to the Lessee in "AS IS" condition.

2.    Use of Premises. It is understood and agreed that the Premises shall be used for the purpose of the retail sale of furniture, carpet, upholstery, bedding, fabric protection products, case goods, mattresses and other furniture accessories and related goods, as well as the warehousing of same, and any and all operations and business incident and appropriate thereto.

3.    Term. The term of the Lease shall be for a period of nine (9) years and two (2) months, commencing on November 1, 2014, and ending on December 31, 2023 ("Initial Term").

4.    Lessee's Option to Renew. Lessee shall have the right and option, to be exercised as hereinafter provided, to renew the term of this Lease for two (2) additional periods of five (5) years each, commencing upon the expiration of the Initial Term, upon the following terms and conditions:

A.    The renewal term shall be upon the same terms, covenants and provisions as provided in this Lease, with the exception of rent, which shall be determined in accordance with the provisions of Paragraph 5 hereof.

B.    Lessee may exercise its right to renew this Lease only if Lessee is not in default of any terms or conditions in this Lease and only by notifying Lessor in writing of its election to exercise its right of renewal no later than ninety (90) days prior to the expiration of the Initial Term or any subsequent renewal term hereunder. Lessor may waive such notice in its sole discretion.

C.    Upon the giving of the notice of election provided for in Paragraph 4(B), this Lease shall be deemed to be renewed and the term hereof renewed for a period of five (5) years from the date of the expiration of the Initial Term or any subsequent renewal term, without the execution of any further lease or instrument.

5.    Rent. The Lessee hereby covenants and agrees to pay Lessor, as rent for the above described Premises, for Lessee's business operations, together with any parking area surrounding the same, on the first day of each and every month ("Due Date") during the term, in the following amount:

710701445

A.     For the period ending December 31, 2014, the monthly rental shall be FOURTEEN THOUSAND and 00/100 Dollars ($14,000.00). For the period ending December 31, 2015, the sum of ONE HUNDRED SIXTY EIGHT THOUSAND and 00/100 Dollars ($168,000.00) per year for the term of this Lease, payable in equal monthly installments of FOURTEEN THOUSAND and 00/100 Dollars ($14,000.00) ("Initial Rent"). For the period beginning January 1, 2016 and each successive year thereafter until December 31, 2033 (assuming both renewal terms are exercised) base rent shall increase at a rate of one percent (1%) per year.

B.     If the rent or any other amount due to the Lessor under this Lease is not received within five (5) days of its Due Date ("Late Date"), the Lessor incurs additional expense. As a result, the Lessee shall pay a late charge equal to 5% of the unpaid amounts on the Late Date as additional rent. The Lessee shall also pay interest on all unpaid amounts from the Due Date until the date of payment at an interest rate of the lower of (a) 10% per annum or (ii) the maximum amount permitted by law. Notwithstanding the foregoing, this Section 5B shall not be applicable during any time that Steven Joel Belford is employed by Lessee or one of its affiliates; provided that if Steven Joel Belford is employed by Lessee or one of its affiliates, but is directed by the board of directors of American Freight Group, Inc. not to pay amounts due under this Lease, this Section 5B shall apply.

6.     Maintenance, Repair and Replacement. The Lessee, at its expense, shall maintain and repair the building and structures upon the Premises, both interior and exterior, including, but without limiting the generality thereof, the walls, roofs, floors, plumbing, heating, electrical systems, air conditioning systems and the parking areas, sidewalks and landscaping which are a part of the Premises. Notwithstanding anything to the contrary in this Lease, the Lessor must undertake any maintenance or repairs required to comply with any present or future laws, regulations or ordinances, including building and fire code and zoning, applicable to the Premises; provided that any improvements to the Premises undertaken by Lessee shall comply with any laws, regulations or ordinances, including building and fire code and zoning, applicable to such improvements. The Lessee, at its expense, shall keep the exterior free of snow, ice, rubbish and other obstructions and shall maintain the landscaping around the Premises.

7.     Fixtures and Improvements. All additions, expansions, fixtures, improvements and repairs made upon the Premises by the Lessee shall thereafter be the property of the Lessor, except as they may be mutually agreed upon between the Lessor and the Lessee. The Lessee shall have the right and privilege to make additions, expansions, improvements and repairs to the Premises with the prior consent of the Lessor, which may not be unreasonably withheld, conditioned or delayed. Notwithstanding anything to the contrary hereinabove contained, all fixtures and equipment that Lessee shall install in the Premises, whether permanently fixed or otherwise, may be removed by Lessee before or at the expiration or termination of this Lease. Lessee, in such event, shall, at Lessee's sole cost and expense, repair any injury to the Premises resulting from such removal. Any items installed on the Premises as replacements for Lessor's original installation shall not be removed from the Premises.

8.     Mechanics' Liens. In the event the Lessee erects any alterations or improvements upon the Premises as hereinabove provided, the Lessee hereby agrees to and does indemnify the Lessor against any mechanics' liens that may be filed against the Premises for labor and/or

material furnished, and in the event any such lien is filed, it will immediately pay the same and cause it to be discharged and satisfied of record. Notwithstanding anything in this Lease to the contrary, Lessor hereby acknowledges and agrees that any and all of Lessee's personal property, including, without limitation, supplies, goods, stock, merchandise, furniture, furnishings, trade fixtures and equipment in the Premises may be financed by a third-party lender or lessor (an "Equipment Lienor"). The Lessor agrees to waive any rights to such property and any security interest or liens in such property, including, without limitation, any constitutional or statutory lien rights afforded to Lessor by virtue of this Lease, and Lessor hereby agrees to recognize the rights of any such Equipment Lienor, subject to and in accordance with a commercially reasonable waiver agreement to be entered into by and between Lessor and the Equipment Lienor following request by Lessee.

9.    Utilities. The Lessee shall, during the term hereof, pay all charges for gas, electricity, heat, sewage, trash removal, water, telephone and any and all other utilities used at or supplied to the Premises.

10.    Real Estate Taxes and Assessments. The Lessee shall pay to the public officers charged with the collection thereof, as additional rent, before any fine, penalty, interest or other cost may be added thereto for the nonpayment thereof, all real estate taxes, assessments, license fees, excises and other governmental charges, general and special, ordinary and extraordinary, and unforeseen as well as foreseen, of any kind and nature whatsoever (including, but not limited to, assessment for public improvements or benefits) which, during the term hereby demised, shall be assessed, levied or imposed upon or become due and payable and lien upon the Premises or any part thereof. The Lessor shall promptly send copies of the tax bills that it receives for the Premises to the Lessee.

11.    Insurance.

A.    The Lessee shall, at Lessee's sole cost and expense, keep insured all buildings, structures and improvements on the Premises against loss or damage by fire, lightning, windstorm, explosion, damage from aircraft and vehicles, and water and smoke damage in amounts equal to the full replacement cost. Lessor shall be named loss payee as their interest may appear.

B.    The Lessee, at Lessee's sole cost and expense, , shall maintain general public liability insurance against claims for bodily injury, death or property damage occurring upon, in or about the Premises, in amounts of not less than $2,000,000.00 with respect to any one accident, $2,000,000.00 with respect to any one person, and $1,000,000.00 for property damage. Lessor shall be named additional insured as their interest may appear.

C.    All insurance provided for in this Section 11 shall be effected under valid and enforceable policies issued by insurers rated at least A- VII by A.M. Best. The Lessee shall, from time to time as required by Lessor, furnish valid evidence that the insurance herein required has been obtained and that the premiums therefore are paid. Such policy or policies shall provide for thirty (30) days prior written notice to Lessor of cancellation except 10 days for non-payment of premium.

710701445

D.    Notwithstanding anything in this Lease to the contrary, Lessor shall not be entitled to, and Lessee shall not be liable for, any punitive, consequential or special damages or loss of profits under this Lease and Lessor waives any rights it may have to such damages under this Lease in the event of a breach or default by Lessee under this Lease.

12.    <u>Indemnity</u>. The Lessee shall indemnify and hold Lessor harmless from any and all liability for damages to any person or property in, on or about the Premises from any cause whatsoever.

13.    <u>Net-Net-Net Lease</u>. It is the specific intent of this Lease that it be determined to be a triple-net lease and that the rents herein provided for shall be net amounts received by the Lessor, without any deductions of any nature whatsoever.

14.    <u>Damage by Fire or Other Casualty</u>. In the event of any loss causing damage or destruction to the Premises and covered or to be covered by insurance under the terms of this Lease, the Lessee shall promptly give written notice to the Lessor ("Casualty Notice"). Promptly following receipt of the Casualty Notice, Lessor shall ascertain the overall length of time following the date of the loss required to restore the Premises to the condition existing immediately prior to the loss and shall, within ten (10) days of the receipt of the Casualty Notice, advise Lessee in writing of the time so required and the extent of the damage to be repaired. If Lessor states in such notice that the loss can reasonably be expected to be fully repaired within a period of four (4) months or less from the date of the occurrence, Lessor shall, with the insurance proceeds, promptly initiate such repair or rebuilding. If Lessor's notice to Lessee states that the damage or destruction cannot reasonably be expected to be fully repaired or reconstructed within the period of four (4) months from the date of the occurrence, then Lessee shall have the option, to be exercised by written notice to the Lessor not more than fifteen (15) days after receipt of the notice from Lessor to Lessee, to terminate the Lease as of the date of such damage or destruction, and all rentals shall be prorated and Lessee's liability hereunder shall cease as of such termination date. In such event, Lessee shall, within thirty (30) days thereafter, remove all personal property and equipment owned by it from the Premises. In the event the Lessee does not exercise its option to terminate the Lease as herein provided, Lessor shall promptly initiate and prosecute diligently the completion of the repairs or reconstruction. The repairs or reconstruction of such damage or destruction shall be at Lessor's cost and Lessor shall also be entitled to receive the proceeds of the fire and extended coverage insurance upon the structures and buildings upon the Premises.

In the event of damage or destruction of the Premises hereinabove referred to, the rentals shall be abated for the period of time and to the pro-rata extent that the Lessee is deprived of the use and occupancy of the Premises. In the event of partial loss of a nature so that Lessee can reasonably continue its business at the Premises, the abatement and cancellation of such rental shall be that pro-rata part of the rental which the number of square feet of which Lessee is deprived bears to the total number of square feet in the building used by the Lessee.

15.    <u>Eminent Domain</u>. If there shall be a total taking of the Premises in condemnation proceedings or by any right of eminent domain, this Lease and the term and estate hereby granted shall terminate as of the date of taking of possession by the condemning authority and all rent shall be prorated and paid as of such termination date.  If there shall be a taking of the

710701445

Premises of such scope that the untaken part of the Premises would in Lessee's reasonable judgment be uneconomic to operate, then Lessee may terminate this Lease and the term and estate granted hereby by giving notice to Lessor within sixty (60) days after the date of taking of possession by the condemning authority. If Lessee shall give a termination notice as aforesaid, then this Lease and the term and estate granted hereby shall terminate as of the date of such notice and all rent shall be prorated and paid as of such termination date. In the event of a taking of the Premises which does not result in the termination of this Lease (i) the term and estate hereby granted with respect to the taken part of the Premises shall terminate as of the date of taking of possession by the condemning authority and all rent shall be appropriately abated for the period from such date to the expiration date and (ii) Lessor shall with reasonable diligence restore the remaining portion of the Premises (exclusive of Lessee's personal property) as nearly as practicable to its condition prior to such taking.

16.    Waste. The Lessee shall not commit or suffer any waste or damage to any building or improvement upon the Premises. Lessee will carry out a commercially reasonable program of regular maintenance and repair of the Premises so as to impede deterioration by ordinary wear and tear.

17.    Inspection. Upon reasonable prior written notice to Lessee, the Lessor or Lessor's representative shall have the right, at all reasonable times, to enter upon and to inspect the Premises to ascertain that Lessee is carrying out the terms, conditions and provisions hereof. Lessor shall not, during its exercise of any rights under this Lease, unreasonably interfere with Lessee's use or occupancy of the Premises for the operation of its business.

18.    Surrender of Possession. The Lessee shall, upon termination of this Lease by lapse of time or otherwise, surrender up and deliver the Premises, together with all improvements made thereon by the Lessee, in as good order and repair as when first received or constructed by it, ordinary wear and tear and damage by fire and the elements excepted.

19.    Assignment and Subletting. It is agreed that this Lease may not be assigned or transferred by the Lessee, or the Premises or any part thereof sublet or underleased without the previous written consent of the Lessor, which will not be unreasonably withheld, conditioned or delayed. Notwithstanding anything herein to the contrary, Lessor's consent shall not be required for (i) an assignment of this Lease to an entity into which Lessee is merged or consolidated or which results from a spin-off, consolidation, reorganization or recapitalization of Lessee, (ii) any initial public offering or sale of Lessee or any parent of Lessee or any other entity that controls Lessee, or (iii) an assignment of this Lease to an entity or individual to which all or substantially all of Lessee's assets or beneficial ownership interests are transferred or to an entity controlled by or which is commonly controlled with Lessee ("Permitted Transferee"), provided such merger, consolidation, or transfer of assets is for a good business purpose and not principally for the purpose of simply transferring Lessee's leasehold estate and the Lessee gives written notice of the transfer to the Lessor. An entity that "controls" or is "controlled by" or "commonly controlled with" Lessee shall mean that the controlling entity possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of the controlled entity; and for such purpose, the ownership, directly or indirectly, of at least fifty-one percent (51%) of the voting securities of, or possession of the right to vote, in the ordinary direction of its affairs,

710701445

at least fifty-one percent (51%) of the voting interest in, any entity shall be presumed to constitute such control.

20.    Default by Lessee. If Lessee defaults in the payment of rent or in the fulfillment of any of the other agreements contained herein, or if waste is committed or unnecessary damage is done to the Premises, then Lessor shall give Lessee written notice of such default. In the event such default, as contained in said written notice, is not remedied within ten (10) days with respect to a monetary default and thirty (30) days for all other defaults after receipt of such written notice (provided, however, that if the nature of Lessee's non-monetary default is such that more than thirty (30) days are reasonably required for its cure, then Lessee shall not be deemed to be in default if Lessee shall commence such cure within said thirty (30) day period and thereafter diligently prosecute such cure to completion), then Lessor, at its option, may either (a) terminate this Lease or (b) re-enter the Premises, expelling Lessee and may re-let the Premises at the market rent obtainable, making commercially reasonable efforts therefore, and receive the rent therefrom, but the Lessee shall remain liable for the equivalent of the amount of all rent payable herein less the amount of rent received from re-letting, if any, after deducting therefrom the reasonable costs of obtaining possession of the Premises and of any repairs and alterations necessary to prepare them for re-letting. Notwithstanding anything contained in this Lease to the contrary, Lessor shall use commercially reasonable efforts to mitigate its damages hereunder in the event of a default.

21.    Subordination to Mortgage. In the event Lessor mortgages the Premises herein demised, Lessee agrees that it will promptly, upon written request, pay any rental due in accordance with any valid assignment; provided that with respect to any such mortgage of the Premises, Lessee shall receive a non-disturbance agreement, in a form reasonably accepted by Lessee, whereby, as a condition to any attornment or subordination by Lessee to such mortgage or other encumbrance, Lessee shall not be disturbed in its possession of the Premises throughout the term or its rights under this Lease terminated so long as Lessee is not in default hereunder, beyond any applicable notice and cure period. Lessor shall in good faith request Lessor's mortgagee to provide Lessee a non-disturbance agreement in form and content reasonably acceptable to Lessee.

22.    Holding Over. In the event the Lessee remains in possession of the Premises after the term of this Lease, it shall be deemed a tenant for month to month only at the 125% of the monthly rental payment provided for in this Lease and governed in all other things, except as to the duration of the term and rent, by the provisions of this Lease.

23.    Parties Bound. The terms, conditions and provisions of this Lease shall inure to and be binding upon the Lessor and the Lessee, or their respective personal representatives, successors and assigns.

24.    Governing Law. This Lease refers to real property located in the State of New York and has been executed in the State of Ohio ("State"). This Lease shall be deemed to be a contract made under the laws of the State in which the Premises is located and for all purposes shall be governed by and construed in accordance with such laws.

710701445

25.    Estoppel.  At any time during the term of this Lease, upon the written request from time to time of the other party, Lessor and Lessee shall, within ten (10) days after receipt of such request, execute and deliver to the other party a standard type of estoppel certification, certifying: (a) the date of commencement and expiration of this Lease; (b) the fact that this Lease is unmodified and in full force and effect (or, if there have been modifications to this Lease, that this lease is in full force and effect, as modified, and stating the date and nature of such modifications); (c) the monthly amounts of rent and any additional rent then due under this Lease and the date to which the rent and other sums payable under this Lease have been paid; (d) the fact that there are no current defaults under this Lease by either Lessor or Lessee except as specified in the statement; and (e) such other factual matters as may be reasonably requested by the party.

26.    Brokers.  Each party represents to the other that no broker negotiated this Lease or is entitled to any commission in connection herewith.

27.    Force Majeure.  Neither party shall not be deemed in default with respect to any of the terms, covenants and conditions of this Lease, if the obligated party fails to timely perform same and such failure is proximately caused by any event or condition beyond the reasonable control of such party, provided that such obligated party diligently proceeds to perform when able to do so.

28.    Notice.  All notices or consents required or authorized under this Lease must be in writing.  Such notice or consent is sufficient if (i) delivered personally; (ii) mailed by first class mail, postage prepaid; (iii) delivered by a nationally recognized overnight courier service; or (iv) sent by email with confirmation of receipt, to the principal office of the party.  A party may change its address from time to time by a notice to the other party pursuant to this Paragraph 28.

29.    Environmental.  Lessee agrees that all operations or activities upon the Premises by Lessee shall be in material compliance with all federal, state and local laws governing the generation, manufacturing, storage or use of any hazardous materials.

30.    Amendment.  Except as set forth in Section 31, this Lease may not be amended, modified or supplemented except in writing signed by Lessor and the Lessee.

31.    Capital Lease Treatment.  The parties hereto shall work together to ensure this Lease is not treated as a capital lease under U.S. generally accepted accounting principles ("GAAP").  Notwithstanding the foregoing, the Lessee may unilaterally amend this Lease, including by reducing the Initial Term and eliminating any renewal terms, only to the extent necessary to ensure this Lease is not treated as a capital lease under GAAP.

32.    Termination of Existing Lease.  By signing this Lease, Lessor and Lessee acknowledge that any previously executed Lease(s) related to the Premises among the Lessor and Lessee is terminated.

710701445

IN WITNESS WHEREOF, the parties have hereunto set their hands to duplicate originals of this Lease on the day and year first above written.

LESSEE:

AMERICAN FREIGHT OF WESTERN NEW YORK, INC., an Ohio corporation

By: _____
Name: Steve Belford
Title: President
Email: Steve@americanfreight.us
Address: 680 Sunbury Road
Delaware, OH 43015
_____

LESSOR:

NIAGARA FALLS 778, LLC, an Ohio limited liability company

By: _____
Name: Steve Belford
Title: Member
Email: Steve@americanfreight.us
Address: 680 Sunbury Road
Delaware, OH 43015
_____

710701445

# EXHIBIT C

DocuSign Envelope ID: EAF3FD59-AA05-41ED-9CB8-48BBA2CBC555



### Appliances & Furniture

109 Innovation Court, Suite J
Delaware, OH 43015

May 29, 2024

Rodi Road 501, LLC
Attn: Mr. Steven J. Belford
6649 N. High Street, Suite LL2,
Worthington, OH 43085

Re:   Lease Agreement dated November 1, 2014 (the "Lease"), by and between Rodi Road 501,
      LLC ("Landlord") and American Freight, LLC, successor-in-interest to American Freight of
      Southern Ohio, Inc. ("Tenant") for the property located at 503 Rodi Road, Pittsburgh, PA
      (the "Premises").

*Sent via UPS Overnight (1Z V52 84V NW 2892 6698)*

### NOTICE OF EXERCISE OPTION TO RENEW

Pursuant to the Lease, you are hereby notified that Tenant has elected to, and does hereby,
exercise its right to extend the Lease and the term thereof for a further period of five (5) years,
commencing January 1, 2025, and continuing and including December 31, 2029, per the terms
of the Lease.

Sincerely,

**AMERICAN FREIGHT, LLC**

By. _____
      Jeff Seghi
      Chief Financial Officer

*#23 Pittsburgh, PA*

# LEASE

THIS LEASE ("Lease"), made and entered into at Delaware, Ohio, effective as of November 1, 2014, by and between RODI ROAD 501, LLC, an Ohio limited liability company, hereinafter referred to as "Lessor", and AMERICAN FREIGHT OF SOUTHERN OHIO, INC., an Ohio corporation, hereinafter referred to as "Lessee".

## WITNESSETH:

1.     Premises. The Lessor, in consideration of the rent to be paid and the covenants to be performed by the Lessee, does hereby let and lease unto the Lessee, the facility and all improvements located thereon located at 503 Rodi Road, Pittsburgh, PA, hereinafter referred to as "Premises." Lessor makes no warranties, express or implied, with respect to the condition of the Premises, which is delivered to the Lessee in "AS IS" condition.

2.     Use of Premises. It is understood and agreed that the Premises shall be used for the purpose of the retail sale of furniture, carpet, upholstery, bedding, fabric protection products, case goods,  mattresses and other furniture accessories and related goods, as well as the warehousing of same, and any and all operations and business incident and appropriate thereto.

3.     Term. The term of the Lease shall be for a period of ten (10) years and two (2) months, commencing on November 1, 2014, and ending on December 31, 2024 ("Initial Term").

4.     Lessee's Option to Renew. Lessee shall have the right and option, to be exercised as hereinafter provided, to renew the term of this Lease for two (2) additional periods of five (5) years each, commencing upon the expiration of the Initial Term, upon the following terms and conditions:

A.     The renewal term shall be upon the same terms, covenants and provisions as provided in this Lease, with the exception of rent, which shall be determined in accordance with the provisions of Paragraph 5 hereof.

B.     Lessee may exercise its right to renew this Lease only if Lessee is not in default of any terms or conditions in this Lease and only by notifying Lessor in writing of its election to exercise its right of renewal no later than ninety (90) days prior to the expiration of the Initial Term or any subsequent renewal term hereunder. Lessor may waive such notice in its sole discretion.

C.     Upon the giving of the notice of election provided for in Paragraph 4(B), this Lease shall be deemed to be renewed and the term hereof renewed for a period of five (5) years from the date of the expiration of the Initial Term or any subsequent renewal term, without the execution of any further lease or instrument.

5.     Rent. The Lessee hereby covenants and agrees to pay Lessor, as rent for the above described Premises, for Lessee's business operations, together with any parking area surrounding the same, on the first day of each and every month ("Due Date") during the term, in the following amount:

710701445

A.     For the period ending December 31, 2014, the monthly rental shall be THIRTEEN THOUSAND SIX HUNDRED TWENTY FIVE and 00/100 Dollars ($13,625.00). For the period ending December 31, 2015, the sum of ONE HUNDRED SIXTY THREE THOUSAND FIVE HUNDRED and 00/100 Dollars ($163,500.00) per year for the term of this Lease, payable in equal monthly installments of THIRTEEN THOUSAND SIX HUNDRED TWENTY FIVE and 00/100 Dollars ($13,625.00) ("Initial Rent"). For the period beginning January 1, 2016 and each successive year thereafter until December 31, 2034 (assuming both renewal terms are exercised) base rent shall increase at a rate of one percent (1%) per year.

B.     If the rent or any other amount due to the Lessor under this Lease is not received within five (5) days of its Due Date ("Late Date"), the Lessor incurs additional expense. As a result, the Lessee shall pay a late charge equal to 5% of the unpaid amounts on the Late Date as additional rent. The Lessee shall also pay interest on all unpaid amounts from the Due Date until the date of payment at an interest rate of the lower of (a) 10% per annum or (ii) the maximum amount permitted by law. Notwithstanding the foregoing, this Section 5B shall not be applicable during any time that Steven Joel Belford is employed by Lessee or one of its affiliates; provided that if Steven Joel Belford is employed by Lessee or one of its affiliates, but is directed by the board of directors of American Freight Group, Inc. not to pay amounts due under this Lease, this Section 5B shall apply.

6.     Maintenance, Repair and Replacement. The Lessee, at its expense, shall maintain and repair the building and structures upon the Premises, both interior and exterior, including, but without limiting the generality thereof, the walls, roofs, floors, plumbing, heating, electrical systems, air conditioning systems and the parking areas, sidewalks and landscaping which are a part of the Premises. Notwithstanding anything to the contrary in this Lease, the Lessor must undertake any maintenance or repairs required to comply with any present or future laws, regulations or ordinances, including building and fire code and zoning, applicable to the Premises; provided that any improvements to the Premises undertaken by Lessee shall comply with any laws, regulations or ordinances, including building and fire code and zoning, applicable to such improvements. The Lessee, at its expense, shall keep the exterior free of snow, ice, rubbish and other obstructions and shall maintain the landscaping around the Premises.

7.     Fixtures and Improvements. All additions, expansions, fixtures, improvements and repairs made upon the Premises by the Lessee shall thereafter be the property of the Lessor, except as they may be mutually agreed upon between the Lessor and the Lessee. The Lessee shall have the right and privilege to make additions, expansions, improvements and repairs to the Premises with the prior consent of the Lessor, which may not be unreasonably withheld, conditioned or delayed. Notwithstanding anything to the contrary hereinabove contained, all fixtures and equipment that Lessee shall install in the Premises, whether permanently fixed or otherwise, may be removed by Lessee before or at the expiration or termination of this Lease. Lessee, in such event, shall, at Lessee's sole cost and expense, repair any injury to the Premises resulting from such removal. Any items installed on the Premises as replacements for Lessor's original installation shall not be removed from the Premises.

8.     Mechanics' Liens. In the event the Lessee erects any alterations or improvements upon the Premises as hereinabove provided, the Lessee hereby agrees to and does indemnify the Lessor against any mechanics' liens that may be filed against the Premises for labor and/or

material furnished, and in the event any such lien is filed, it will immediately pay the same and cause it to be discharged and satisfied of record. Notwithstanding anything in this Lease to the contrary, Lessor hereby acknowledges and agrees that any and all of Lessee's personal property, including, without limitation, supplies, goods, stock, merchandise, furniture, furnishings, trade fixtures and equipment in the Premises may be financed by a third-party lender or lessor (an "Equipment Lienor"). The Lessor agrees to waive any rights to such property and any security interest or liens in such property, including, without limitation, any constitutional or statutory lien rights afforded to Lessor by virtue of this Lease, and Lessor hereby agrees to recognize the rights of any such Equipment Lienor, subject to and in accordance with a commercially reasonable waiver agreement to be entered into by and between Lessor and the Equipment Lienor following request by Lessee.

9.    Utilities. The Lessee shall, during the term hereof, pay all charges for gas, electricity, heat, sewage, trash removal, water, telephone and any and all other utilities used at or supplied to the Premises.

10.    Real Estate Taxes and Assessments. The Lessee shall pay to the public officers charged with the collection thereof, as additional rent, before any fine, penalty, interest or other cost may be added thereto for the nonpayment thereof, all real estate taxes, assessments, license fees, excises and other governmental charges, general and special, ordinary and extraordinary, and unforeseen as well as foreseen, of any kind and nature whatsoever (including, but not limited to, assessment for public improvements or benefits) which, during the term hereby demised, shall be assessed, levied or imposed upon or become due and payable and lien upon the Premises or any part thereof. The Lessor shall promptly send copies of the tax bills that it receives for the Premises to the Lessee. Lessee shall be liable only for its proportionate share of these expenses, which, for purposes of this Lease, is 72.5%.

11.    Insurance.

A.    The Lessee shall, at Lessee's sole cost and expense, keep insured all buildings, structures and improvements on the Premises against loss or damage by fire, lightning, windstorm, explosion, damage from aircraft and vehicles, and water and smoke damage in amounts equal to the full replacement cost. Lessor shall be named loss payee as their interest may appear.

B.    The Lessee, at Lessee's sole cost and expense, , shall maintain general public liability insurance against claims for bodily injury, death or property damage occurring upon, in or about the Premises, in amounts of not less than $2,000,000.00 with respect to any one accident, $2,000,000.00 with respect to any one person, and $1,000,000.00 for property damage. Lessor shall be named additional insured as their interest may appear.

C.    All insurance provided for in this Section 11 shall be effected under valid and enforceable policies issued by insurers rated at least A- VII by A.M. Best. The Lessee shall, from time to time as required by Lessor, furnish valid evidence that the insurance herein required has been obtained and that the premiums therefore are paid. Such policy or policies shall provide for thirty (30) days prior written notice to Lessor of cancellation except 10 days for non-payment of premium.

710701445

D.     Notwithstanding anything in this Lease to the contrary, Lessor shall not be entitled to, and Lessee shall not be liable for, any punitive, consequential or special damages or loss of profits under this Lease and Lessor waives any rights it may have to such damages under this Lease in the event of a breach or default by Lessee under this Lease.

12.     Indemnity. The Lessee shall indemnify and hold Lessor harmless from any and all liability for damages to any person or property in, on or about the Premises from any cause whatsoever.

13.     Net-Net-Net Lease. It is the specific intent of this Lease that it be determined to be a triple-net lease and that the rents herein provided for shall be net amounts received by the Lessor, without any deductions of any nature whatsoever.

14.     Damage by Fire or Other Casualty. In the event of any loss causing damage or destruction to the Premises and covered or to be covered by insurance under the terms of this Lease, the Lessee shall promptly give written notice to the Lessor ("Casualty Notice"). Promptly following receipt of the Casualty Notice, Lessor shall ascertain the overall length of time following the date of the loss required to restore the Premises to the condition existing immediately prior to the loss and shall, within ten (10) days of the receipt of the Casualty Notice, advise Lessee in writing of the time so required and the extent of the damage to be repaired. If Lessor states in such notice that the loss can reasonably be expected to be fully repaired within a period of four (4) months or less from the date of the occurrence, Lessor shall, with the insurance proceeds, promptly initiate such repair or rebuilding. If Lessor's notice to Lessee states that the damage or destruction cannot reasonably be expected to be fully repaired or reconstructed within the period of four (4) months from the date of the occurrence, then Lessee shall have the option, to be exercised by written notice to the Lessor not more than fifteen (15) days after receipt of the notice from Lessor to Lessee, to terminate the Lease as of the date of such damage or destruction, and all rentals shall be prorated and Lessee's liability hereunder shall cease as of such termination date. In such event, Lessee shall, within thirty (30) days thereafter, remove all personal property and equipment owned by it from the Premises. In the event the Lessee does not exercise its option to terminate the Lease as herein provided, Lessor shall promptly initiate and prosecute diligently the completion of the repairs or reconstruction. The repairs or reconstruction of such damage or destruction shall be at Lessor's cost and Lessor shall also be entitled to receive the proceeds of the fire and extended coverage insurance upon the structures and buildings upon the Premises.

In the event of damage or destruction of the Premises hereinabove referred to, the rentals shall be abated for the period of time and to the pro-rata extent that the Lessee is deprived of the use and occupancy of the Premises. In the event of partial loss of a nature so that Lessee can reasonably continue its business at the Premises, the abatement and cancellation of such rental shall be that pro-rata part of the rental which the number of square feet of which Lessee is deprived bears to the total number of square feet in the building used by the Lessee.

15.     Eminent Domain. If there shall be a total taking of the Premises in condemnation proceedings or by any right of eminent domain, this Lease and the term and estate hereby granted shall terminate as of the date of taking of possession by the condemning authority and all rent shall be prorated and paid as of such termination date.  If there shall be a taking of the

710701445

Premises of such scope that the untaken part of the Premises would in Lessee's reasonable judgment be uneconomic to operate, then Lessee may terminate this Lease and the term and estate granted hereby by giving notice to Lessor within sixty (60) days after the date of taking of possession by the condemning authority. If Lessee shall give a termination notice as aforesaid, then this Lease and the term and estate granted hereby shall terminate as of the date of such notice and all rent shall be prorated and paid as of such termination date. In the event of a taking of the Premises which does not result in the termination of this Lease (i) the term and estate hereby granted with respect to the taken part of the Premises shall terminate as of the date of taking of possession by the condemning authority and all rent shall be appropriately abated for the period from such date to the expiration date and (ii) Lessor shall with reasonable diligence restore the remaining portion of the Premises (exclusive of Lessee's personal property) as nearly as practicable to its condition prior to such taking.

16.   Waste. The Lessee shall not commit or suffer any waste or damage to any building or improvement upon the Premises. Lessee will carry out a commercially reasonable program of regular maintenance and repair of the Premises so as to impede deterioration by ordinary wear and tear.

17.   Inspection. Upon reasonable prior written notice to Lessee, the Lessor or Lessor's representative shall have the right, at all reasonable times, to enter upon and to inspect the Premises to ascertain that Lessee is carrying out the terms, conditions and provisions hereof. Lessor shall not, during its exercise of any rights under this Lease, unreasonably interfere with Lessee's use or occupancy of the Premises for the operation of its business.

18.   Surrender of Possession. The Lessee shall, upon termination of this Lease by lapse of time or otherwise, surrender up and deliver the Premises, together with all improvements made thereon by the Lessee, in as good order and repair as when first received or constructed by it, ordinary wear and tear and damage by fire and the elements excepted.

19.   Assignment and Subletting. It is agreed that this Lease may not be assigned or transferred by the Lessee, or the Premises or any part thereof sublet or underleased without the previous written consent of the Lessor, which will not be unreasonably withheld, conditioned or delayed. Notwithstanding anything herein to the contrary, Lessor's consent shall not be required for (i) an assignment of this Lease to an entity into which Lessee is merged or consolidated or which results from a spin-off, consolidation, reorganization or recapitalization of Lessee, (ii) any initial public offering or sale of Lessee or any parent of Lessee or any other entity that controls Lessee, or (iii) an assignment of this Lease to an entity or individual to which all or substantially all of Lessee's assets or beneficial ownership interests are transferred or to an entity controlled by or which is commonly controlled with Lessee ("Permitted Transferee"), provided such merger, consolidation, or transfer of assets is for a good business purpose and not principally for the purpose of simply transferring Lessee's leasehold estate and the Lessee gives written notice of the transfer to the Lessor. An entity that "controls" or is "controlled by" or "commonly controlled with" Lessee shall mean that the controlling entity possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of the controlled entity; and for such purpose, the ownership, directly or indirectly, of at least fifty-one percent (51%) of the voting securities of, or possession of the right to vote, in the ordinary direction of its affairs,

710701445

at least fifty-one percent (51%) of the voting interest in, any entity shall be presumed to constitute such control.

20.     <u>Default by Lessee</u>. If Lessee defaults in the payment of rent or in the fulfillment of any of the other agreements contained herein, or if waste is committed or unnecessary damage is done to the Premises, then Lessor shall give Lessee written notice of such default.  In the event such default, as contained in said written notice, is not remedied within ten (10) days with respect to a monetary default and thirty (30) days for all other defaults after receipt of such written notice (provided, however, that if the nature of Lessee's non-monetary default is such that more than thirty (30) days are reasonably required for its cure, then Lessee shall not be deemed to be in default if Lessee shall commence such cure within said thirty (30) day period and thereafter diligently prosecute such cure to completion), then Lessor, at its option, may either (a) terminate this Lease or (b) re-enter the Premises, expelling Lessee and may re-let the Premises at the market rent obtainable, making commercially reasonable efforts therefore, and receive the rent therefrom, but the Lessee shall remain liable for the equivalent of the amount of all rent payable herein less the amount of rent received from re-letting, if any, after deducting therefrom the reasonable costs of obtaining possession of the Premises and of any repairs and alterations necessary to prepare them for re-letting.  Notwithstanding anything contained in this Lease to the contrary, Lessor shall use commercially reasonable efforts to mitigate its damages hereunder in the event of a default.

21.     <u>Subordination to Mortgage</u>. In the event Lessor mortgages the Premises herein demised, Lessee agrees that it will promptly, upon written request, pay any rental due in accordance with any valid assignment; provided that with respect to any such mortgage of the Premises, Lessee shall receive a non-disturbance agreement, in a form reasonably accepted by Lessee, whereby, as a condition to any attornment or subordination by Lessee to such mortgage or other encumbrance, Lessee shall not be disturbed in its possession of the Premises throughout the term or its rights under this Lease terminated so long as Lessee is not in default hereunder, beyond any applicable notice and cure period.  Lessor shall in good faith request Lessor's mortgagee to provide Lessee a non-disturbance agreement in form and content reasonably acceptable to Lessee.

22.     <u>Holding Over</u>. In the event the Lessee remains in possession of the Premises after the term of this Lease, it shall be deemed a tenant for month to month only at the 125% of the monthly rental payment provided for in this Lease and governed in all other things, except as to the duration of the term and rent, by the provisions of this Lease.

23.     <u>Parties Bound</u>. The terms, conditions and provisions of this Lease shall inure to and be binding upon the Lessor and the Lessee, or their respective personal representatives, successors and assigns.

24.     <u>Governing Law</u>. This Lease refers to real property located in the State of Pennsylvania and has been executed in the State of Ohio ("<u>State</u>"). This Lease shall be deemed to be a contract made under the laws of the State in which the Premises is located and for all purposes shall be governed by and construed in accordance with such laws.

710701445

25.    Estoppel.  At any time during the term of this Lease, upon the written request from time to time of the other party, Lessor and Lessee shall, within ten (10) days after receipt of such request, execute and deliver to the other party a standard type of estoppel certification, certifying: (a) the date of commencement and expiration of this Lease; (b) the fact that this Lease is unmodified and in full force and effect (or, if there have been modifications to this Lease, that this lease is in full force and effect, as modified, and stating the date and nature of such modifications); (c) the monthly amounts of rent and any additional rent then due under this Lease and the date to which the rent and other sums payable under this Lease have been paid; (d) the fact that there are no current defaults under this Lease by either Lessor or Lessee except as specified in the statement; and (e) such other factual matters as may be reasonably requested by the party.

26.    Brokers.  Each party represents to the other that no broker negotiated this Lease or is entitled to any commission in connection herewith.

27.    Force Majeure.  Neither party shall not be deemed in default with respect to any of the terms, covenants and conditions of this Lease, if the obligated party fails to timely perform same and such failure is proximately caused by any event or condition beyond the reasonable control of such party, provided that such obligated party diligently proceeds to perform when able to do so.

28.    Notice.  All notices or consents required or authorized under this Lease must be in writing.  Such notice or consent is sufficient if (i) delivered personally; (ii) mailed by first class mail, postage prepaid; (iii) delivered by a nationally recognized overnight courier service; or (iv) sent by email with confirmation of receipt, to the principal office of the party.  A party may change its address from time to time by a notice to the other party pursuant to this Paragraph 28.

29.    Environmental.  Lessee agrees that all operations or activities upon the Premises by Lessee shall be in material compliance with all federal, state and local laws governing the generation, manufacturing, storage or use of any hazardous materials.

30.    Amendment.  Except as set forth in Section 31, this Lease may not be amended, modified or supplemented except in writing signed by Lessor and the Lessee.

31.    Capital Lease Treatment.  The parties hereto shall work together to ensure this Lease is not treated as a capital lease under U.S. generally accepted accounting principles ("GAAP").  Notwithstanding the foregoing, the Lessee may unilaterally amend this Lease, including by reducing the Initial Term and eliminating any renewal terms, only to the extent necessary to ensure this Lease is not treated as a capital lease under GAAP.

32.    Termination of Existing Lease.  By signing this Lease, Lessor and Lessee acknowledge that any previously executed Lease(s) related to the Premises among the Lessor and Lessee is terminated.

IN WITNESS WHEREOF, the parties have hereunto set their hands to duplicate originals of this Lease on the day and year first above written.

LESSEE:

AMERICAN FREIGHT OF SOUTHERN OHIO, INC., an Ohio corporation

By: _____

Name: Steve Belford

Title: President

Email: Steve@americanfreight.us

Address: 680 Sunbury Rd.
    Delaware, OH  43015
    _____

LESSOR:

RODI ROAD 501, LLC, an Ohio limited liability company

By: _____

Name: Steve Belford

Title: Member

Email: Steve@americanfreight.us

Address: 680 Sunbury Road
    Delaware, OH  43015
    _____

710701445

# EXHIBIT D

# ⚡ AMERICAN FREIGHT
# FURNITURE · MATTRESS · APPLIANCE

109 Innovation Court, Suite J
Delaware, OH 43015
740.363.2222 ph
740.480.1663 fax

May 19, 2022

**VIA EMAIL (maccabeefarms@gmail.com) AND FIRST CLASS MAIL, POSTAGE PREPAID**

MERCHANT 33, LLC
6649 N. High Street, Suite LL2
Worthington, Ohio 43085

Re:     American Freight Store #0025
Lease dated November 1, 2014 between MERCHANT 33, LLC, ("Landlord") and AMERICAN FREIGHT, LLC, successor-in-interest to AMERICAN FREIGHT OF INDIANA ("Tenant"), as amended, modified and/or assigned (collectively, the "Lease"), for the demised premises as defined in the lease as 4515 Merchant Road, Ft. Wayne, Indiana.

## NOTICE OF EXERCISE OPTION TO RENEW

Pursuant to Section 4 of the Lease, you are hereby notified that Tenant has elected to, and does hereby, exercise its right to extend the Lease and the term thereof for a further period of five (5) years, commencing January 1, 2023, and continuing and including December 31, 2027 per the terms of the Lease.

Sincerely,

**AMERICAN FREIGHT, LLC**

By _____
Ron Allender
Chief Financial Officer

## LEASE

THIS LEASE ("Lease"), made and entered into at Delaware, Ohio, effective as of November 1, 2014, by and between MERCHANT 33, LLC, an Ohio limited liability company, hereinafter referred to as "Lessor", and AMERICAN FREIGHT OF INDIANA, an Indiana corporation, hereinafter referred to as "Lessee".

### WITNESSETH:

1.    Premises. The Lessor, in consideration of the rent to be paid and the covenants to be performed by the Lessee, does hereby let and lease unto the Lessee, the facility and all improvements located thereon located at 4515 Merchant Road, Ft. Wayne, IN, hereinafter referred to as "Premises." Lessor makes no warranties, express or implied, with respect to the condition of the Premises, which is delivered to the Lessee in "AS IS" condition.

2.    Use of Premises. It is understood and agreed that the Premises shall be used for the purpose of the retail sale of furniture, carpet, upholstery, bedding, fabric protection products, case goods, mattresses and other furniture accessories and related goods, as well as the warehousing of same, and any and all operations and business incident and appropriate thereto.

3.    Term. The term of the Lease shall be for a period of eight (8) years and two (2) months, commencing on November 1, 2014, and ending on December 31, 2022 ("Initial Term").

4.    Lessee's Option to Renew. Lessee shall have the right and option, to be exercised as hereinafter provided, to renew the term of this Lease for two (2) additional periods of five (5) years each, commencing upon the expiration of the Initial Term, upon the following terms and conditions:

    A.    The renewal term shall be upon the same terms, covenants and provisions as provided in this Lease, with the exception of rent, which shall be determined in accordance with the provisions of Paragraph 5 hereof.

    B.    Lessee may exercise its right to renew this Lease only if Lessee is not in default of any terms or conditions in this Lease and only by notifying Lessor in writing of its election to exercise its right of renewal no later than ninety (90) days prior to the expiration of the Initial Term or any subsequent renewal term hereunder. Lessor may waive such notice in its sole discretion.

    C.    Upon the giving of the notice of election provided for in Paragraph 4(B), this Lease shall be deemed to be renewed and the term hereof renewed for a period of five (5) years from the date of the expiration of the Initial Term or any subsequent renewal term, without the execution of any further lease or instrument.

5.    Rent. The Lessee hereby covenants and agrees to pay Lessor, as rent for the above described Premises, for Lessee's business operations, together with any parking area surrounding the same, on the first day of each and every month ("Due Date") during the term, in the following amount:

710701445

A.    For the period ending December 31, 2014, the monthly rental shall be TWELVE THOUSAND and 00/100 Dollars ($12,000.00). For the period ending December 31, 2015, the sum of ONE HUNDRED FORTY FOUR THOUSAND and 00/100 Dollars ($144,000.00) per year for the term of this Lease, payable in equal monthly installments of TWELVE THOUSAND and 00/100 Dollars ($12,000.00) ("Initial Rent"). For the period beginning January 1, 2016 and each successive year thereafter until December 31, 2032 (assuming both renewal terms are exercised) base rent shall increase at a rate of one percent (1%) per year.

B.    If the rent or any other amount due to the Lessor under this Lease is not received within five (5) days of its Due Date ("Late Date"), the Lessor incurs additional expense. As a result, the Lessee shall pay a late charge equal to 5% of the unpaid amounts on the Late Date as additional rent. The Lessee shall also pay interest on all unpaid amounts from the Due Date until the date of payment at an interest rate of the lower of (a) 10% per annum or (ii) the maximum amount permitted by law. Notwithstanding the foregoing, this Section 5B shall not be applicable during any time that Steven Joel Belford is employed by Lessee or one of its affiliates; provided that if Steven Joel Belford is employed by Lessee or one of its affiliates, but is directed by the board of directors of American Freight Group, Inc. not to pay amounts due under this Lease, this Section 5B shall apply.

6.    Maintenance, Repair and Replacement. The Lessee, at its expense, shall maintain and repair the building and structures upon the Premises, both interior and exterior, including, but without limiting the generality thereof, the walls, roofs, floors, plumbing, heating, electrical systems, air conditioning systems and the parking areas, sidewalks and landscaping which are a part of the Premises. Notwithstanding anything to the contrary in this Lease, the Lessor must undertake any maintenance or repairs required to comply with any present or future laws, regulations or ordinances, including building and fire code and zoning, applicable to the Premises; provided that any improvements to the Premises undertaken by Lessee shall comply with any laws, regulations or ordinances, including building and fire code and zoning, applicable to such improvements. The Lessee, at its expense, shall keep the exterior free of snow, ice, rubbish and other obstructions and shall maintain the landscaping around the Premises.

7.    Fixtures and Improvements. All additions, expansions, fixtures, improvements and repairs made upon the Premises by the Lessee shall thereafter be the property of the Lessor, except as they may be mutually agreed upon between the Lessor and the Lessee. The Lessee shall have the right and privilege to make additions, expansions, improvements and repairs to the Premises with the prior consent of the Lessor, which may not be unreasonably withheld, conditioned or delayed. Notwithstanding anything to the contrary hereinabove contained, all fixtures and equipment that Lessee shall install in the Premises, whether permanently fixed or otherwise, may be removed by Lessee before or at the expiration or termination of this Lease. Lessee, in such event, shall, at Lessee's sole cost and expense, repair any injury to the Premises resulting from such removal. Any items installed on the Premises as replacements for Lessor's original installation shall not be removed from the Premises.

8.    Mechanics' Liens. In the event the Lessee erects any alterations or improvements upon the Premises as hereinabove provided, the Lessee hereby agrees to and does indemnify the Lessor against any mechanics' liens that may be filed against the Premises for labor and/or

710701445

Lessor against any mechanics' liens that may be filed against the Premises for labor and/or material furnished, and in the event any such lien is filed, it will immediately pay the same and cause it to be discharged and satisfied of record. Notwithstanding anything in this Lease to the contrary, Lessor hereby acknowledges and agrees that any and all of Lessee's personal property, including, without limitation, supplies, goods, stock, merchandise, furniture, furnishings, trade fixtures and equipment in the Premises may be financed by a third-party lender or lessor (an "Equipment Lienor"). The Lessor agrees to waive any rights to such property and any security interest or liens in such property, including, without limitation, any constitutional or statutory lien rights afforded to Lessor by virtue of this Lease, and Lessor hereby agrees to recognize the rights of any such Equipment Lienor, subject to and in accordance with a commercially reasonable waiver agreement to be entered into by and between Lessor and the Equipment Lienor following request by Lessee.

9.    Utilities. The Lessee shall, during the term hereof, pay all charges for gas, electricity, heat, sewage, trash removal, water, telephone and any and all other utilities used at or supplied to the Premises.

10.    Real Estate Taxes and Assessments. The Lessee shall pay to the public officers charged with the collection thereof, as additional rent, before any fine, penalty, interest or other cost may be added thereto for the nonpayment thereof, all real estate taxes, assessments, license fees, excises and other governmental charges, general and special, ordinary and extraordinary, and unforeseen as well as foreseen, of any kind and nature whatsoever (including, but not limited to, assessment for public improvements or benefits) which, during the term hereby demised, shall be assessed, levied or imposed upon or become due and payable and lien upon the Premises or any part thereof. The Lessor shall promptly send copies of the tax bills that it receives for the Premises to the Lessee.

11.    Insurance.

A.    The Lessee shall, at Lessee's sole cost and expense, keep insured all buildings, structures and improvements on the Premises against loss or damage by fire, lightning, windstorm, explosion, damage from aircraft and vehicles, and water and smoke damage in amounts equal to the full replacement cost. Lessor shall be named loss payee as their interest may appear.

B.    The Lessee, at Lessee's sole cost and expense, , shall maintain general public liability insurance against claims for bodily injury, death or property damage occurring upon, in or about the Premises, in amounts of not less than $2,000,000.00 with respect to any one accident, $2,000,000.00 with respect to any one person, and $1,000,000.00 for property damage. Lessor shall be named additional insured as their interest may appear.

C.    All insurance provided for in this Section 11 shall be effected under valid and enforceable policies issued by insurers rated at least A- VII by A.M. Best. The Lessee shall, from time to time as required by Lessor, furnish valid evidence that the insurance herein required has been obtained and that the premiums therefore are paid. Such policy or policies shall provide for thirty (30) days prior written notice to Lessor of cancellation except 10 days for non-payment of premium.

710701445

D.     Notwithstanding anything in this Lease to the contrary, Lessor shall not be entitled to, and Lessee shall not be liable for, any punitive, consequential or special damages or loss of profits under this Lease and Lessor waives any rights it may have to such damages under this Lease in the event of a breach or default by Lessee under this Lease.

12.     Indemnity. The Lessee shall indemnify and hold Lessor harmless from any and all liability for damages to any person or property in, on or about the Premises from any cause whatsoever.

13.     Net-Net-Net Lease. It is the specific intent of this Lease that it be determined to be a triple-net lease and that the rents herein provided for shall be net amounts received by the Lessor, without any deductions of any nature whatsoever.

14.     Damage by Fire or Other Casualty. In the event of any loss causing damage or destruction to the Premises and covered or to be covered by insurance under the terms of this Lease, the Lessee shall promptly give written notice to the Lessor ("Casualty Notice"). Promptly following receipt of the Casualty Notice, Lessor shall ascertain the overall length of time following the date of the loss required to restore the Premises to the condition existing immediately prior to the loss and shall, within ten (10) days of the receipt of the Casualty Notice, advise Lessee in writing of the time so required and the extent of the damage to be repaired. If Lessor states in such notice that the loss can reasonably be expected to be fully repaired within a period of four (4) months or less from the date of the occurrence, Lessor shall, with the insurance proceeds, promptly initiate such repair or rebuilding. If Lessor's notice to Lessee states that the damage or destruction cannot reasonably be expected to be fully repaired or reconstructed within the period of four (4) months from the date of the occurrence, then Lessee shall have the option, to be exercised by written notice to the Lessor not more than fifteen (15) days after receipt of the notice from Lessor to Lessee, to terminate the Lease as of the date of such damage or destruction, and all rentals shall be prorated and Lessee's liability hereunder shall cease as of such termination date. In such event, Lessee shall, within thirty (30) days thereafter, remove all personal property and equipment owned by it from the Premises. In the event the Lessee does not exercise its option to terminate the Lease as herein provided, Lessor shall promptly initiate and prosecute diligently the completion of the repairs or reconstruction. The repairs or reconstruction of such damage or destruction shall be at Lessor's cost and Lessor shall also be entitled to receive the proceeds of the fire and extended coverage insurance upon the structures and buildings upon the Premises.

In the event of damage or destruction of the Premises hereinabove referred to, the rentals shall be abated for the period of time and to the pro-rata extent that the Lessee is deprived of the use and occupancy of the Premises. In the event of partial loss of a nature so that Lessee can reasonably continue its business at the Premises, the abatement and cancellation of such rental shall be that pro-rata part of the rental which the number of square feet of which Lessee is deprived bears to the total number of square feet in the building used by the Lessee.

15.     Eminent Domain. If there shall be a total taking of the Premises in condemnation proceedings or by any right of eminent domain, this Lease and the term and estate hereby granted shall terminate as of the date of taking of possession by the condemning authority and all rent shall be prorated and paid as of such termination date. If there shall be a taking of the

Premises of such scope that the untaken part of the Premises would in Lessee's reasonable judgment be uneconomic to operate, then Lessee may terminate this Lease and the term and estate granted hereby by giving notice to Lessor within sixty (60) days after the date of taking of possession by the condemning authority. If Lessee shall give a termination notice as aforesaid, then this Lease and the term and estate granted hereby shall terminate as of the date of such notice and all rent shall be prorated and paid as of such termination date. In the event of a taking of the Premises which does not result in the termination of this Lease (i) the term and estate hereby granted with respect to the taken part of the Premises shall terminate as of the date of taking of possession by the condemning authority and all rent shall be appropriately abated for the period from such date to the expiration date and (ii) Lessor shall with reasonable diligence restore the remaining portion of the Premises (exclusive of Lessee's personal property) as nearly as practicable to its condition prior to such taking.

16.     Waste. The Lessee shall not commit or suffer any waste or damage to any building or improvement upon the Premises. Lessee will carry out a commercially reasonable program of regular maintenance and repair of the Premises so as to impede deterioration by ordinary wear and tear.

17.     Inspection. Upon reasonable prior written notice to Lessee, the Lessor or Lessor's representative shall have the right, at all reasonable times, to enter upon and to inspect the Premises to ascertain that Lessee is carrying out the terms, conditions and provisions hereof. Lessor shall not, during its exercise of any rights under this Lease, unreasonably interfere with Lessee's use or occupancy of the Premises for the operation of its business.

18.     Surrender of Possession. The Lessee shall, upon termination of this Lease by lapse of time or otherwise, surrender up and deliver the Premises, together with all improvements made thereon by the Lessee, in as good order and repair as when first received or constructed by it, ordinary wear and tear and damage by fire and the elements excepted.

19.     Assignment and Subletting. It is agreed that this Lease may not be assigned or transferred by the Lessee, or the Premises or any part thereof sublet or underleased without the previous written consent of the Lessor, which will not be unreasonably withheld, conditioned or delayed. Notwithstanding anything herein to the contrary, Lessor's consent shall not be required for (i) an assignment of this Lease to an entity into which Lessee is merged or consolidated or which results from a spin-off, consolidation, reorganization or recapitalization of Lessee, (ii) any initial public offering or sale of Lessee or any parent of Lessee or any other entity that controls Lessee, or (iii) an assignment of this Lease to an entity or individual to which all or substantially all of Lessee's assets or beneficial ownership interests are transferred or to an entity controlled by or which is commonly controlled with Lessee ("Permitted Transferee"), provided such merger, consolidation, or transfer of assets is for a good business purpose and not principally for the purpose of simply transferring Lessee's leasehold estate and the Lessee gives written notice of the transfer to the Lessor. An entity that "controls" or is "controlled by" or "commonly controlled with" Lessee shall mean that the controlling entity possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of the controlled entity; and for such purpose, the ownership, directly or indirectly, of at least fifty-one percent (51%) of the voting securities of, or possession of the right to vote, in the ordinary direction of its affairs,

710701445

at least fifty-one percent (51%) of the voting interest in, any entity shall be presumed to constitute such control.

20.    <u>Default by Lessee</u>. If Lessee defaults in the payment of rent or in the fulfillment of any of the other agreements contained herein, or if waste is committed or unnecessary damage is done to the Premises, then Lessor shall give Lessee written notice of such default. In the event such default, as contained in said written notice, is not remedied within ten (10) days with respect to a monetary default and thirty (30) days for all other defaults after receipt of such written notice (provided, however, that if the nature of Lessee's non-monetary default is such that more than thirty (30) days are reasonably required for its cure, then Lessee shall not be deemed to be in default if Lessee shall commence such cure within said thirty (30) day period and thereafter diligently prosecute such cure to completion), then Lessor, at its option, may either (a) terminate this Lease or (b) re-enter the Premises, expelling Lessee and may re-let the Premises at the market rent obtainable, making commercially reasonable efforts therefore, and receive the rent therefrom, but the Lessee shall remain liable for the equivalent of the amount of all rent payable herein less the amount of rent received from re-letting, if any, after deducting therefrom the reasonable costs of obtaining possession of the Premises and of any repairs and alterations necessary to prepare them for re-letting. Notwithstanding anything contained in this Lease to the contrary, Lessor shall use commercially reasonable efforts to mitigate its damages hereunder in the event of a default.

21.    <u>Subordination to Mortgage</u>. In the event Lessor mortgages the Premises herein demised, Lessee agrees that it will promptly, upon written request, pay any rental due in accordance with any valid assignment; provided that with respect to any such mortgage of the Premises, Lessee shall receive a non-disturbance agreement, in a form reasonably accepted by Lessee, whereby, as a condition to any attornment or subordination by Lessee to such mortgage or other encumbrance, Lessee shall not be disturbed in its possession of the Premises throughout the term or its rights under this Lease terminated so long as Lessee is not in default hereunder, beyond any applicable notice and cure period. Lessor shall in good faith request Lessor's mortgagee to provide Lessee a non-disturbance agreement in form and content reasonably acceptable to Lessee.

22.    <u>Holding Over</u>. In the event the Lessee remains in possession of the Premises after the term of this Lease, it shall be deemed a tenant for month to month only at the 125% of the monthly rental payment provided for in this Lease and governed in all other things, except as to the duration of the term and rent, by the provisions of this Lease.

23.    <u>Parties Bound</u>. The terms, conditions and provisions of this Lease shall inure to and be binding upon the Lessor and the Lessee, or their respective personal representatives, successors and assigns.

24.    <u>Governing Law</u>. This Lease refers to real property located in the State of Florida and has been executed in the State of Ohio ("<u>State</u>"). This Lease shall be deemed to be a contract made under the laws of the State in which the Premises is located and for all purposes shall be governed by and construed in accordance with such laws.

710701445

25.    Estoppel.  At any time during the term of this Lease, upon the written request from time to time of the other party, Lessor and Lessee shall, within ten (10) days after receipt of such request, execute and deliver to the other party a standard type of estoppel certification, certifying: (a) the date of commencement and expiration of this Lease; (b) the fact that this Lease is unmodified and in full force and effect (or, if there have been modifications to this Lease, that this lease is in full force and effect, as modified, and stating the date and nature of such modifications); (c) the monthly amounts of rent and any additional rent then due under this Lease and the date to which the rent and other sums payable under this Lease have been paid; (d) the fact that there are no current defaults under this Lease by either Lessor or Lessee except as specified in the statement; and (e) such other factual matters as may be reasonably requested by the party.

26.    Brokers.  Each party represents to the other that no broker negotiated this Lease or is entitled to any commission in connection herewith.

27.    Force Majeure.  Neither party shall not be deemed in default with respect to any of the terms, covenants and conditions of this Lease, if the obligated party fails to timely perform same and such failure is proximately caused by any event or condition beyond the reasonable control of such party, provided that such obligated party diligently proceeds to perform when able to do so.

28.    Notice.  All notices or consents required or authorized under this Lease must be in writing.  Such notice or consent is sufficient if (i) delivered personally; (ii) mailed by first class mail, postage prepaid; (iii) delivered by a nationally recognized overnight courier service; or (iv) sent by email with confirmation of receipt, to the principal office of the party.  A party may change its address from time to time by a notice to the other party pursuant to this Paragraph 28.

29.    Environmental.  Lessee agrees that all operations or activities upon the Premises by Lessee shall be in material compliance with all federal, state and local laws governing the generation, manufacturing, storage or use of any hazardous materials.

30.    Amendment.  Except as set forth in Section 31, this Lease may not be amended, modified or supplemented except in writing signed by Lessor and the Lessee.

31.    Capital Lease Treatment.  The parties hereto shall work together to ensure this Lease is not treated as a capital lease under U.S. generally accepted accounting principles ("GAAP").  Notwithstanding the foregoing, the Lessee may unilaterally amend this Lease, including by reducing the Initial Term and eliminating any renewal terms, only to the extent necessary to ensure this Lease is not treated as a capital lease under GAAP.

32.    Termination of Existing Lease.  By signing this Lease, Lessor and Lessee acknowledge that any previously executed Lease(s) related to the Premises among the Lessor and Lessee is terminated.

710701445

IN WITNESS WHEREOF, the parties have hereunto set their hands to duplicate originals of this Lease on the day and year first above written.

LESSEE:

AMERICAN FREIGHT OF INDIANA, INC., an Indiana corporation

By: _____
Name: Steve Belford
Title: President
Email: Steve@americanfreight.us
Address: 680 Sunbury Rd.
          Delaware, OH  43015
          _____

LESSOR:

MERCHANT 33, LLC, an Ohio limited liability company

By: _____
Name: Steve Belford
Title: Member
Email: Steve@americanfreight.us
Address: 680 Sunbury Road
          Delaware, OH  43015

710701445