# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>Re: D.I. 435, 570, 572, 573, 574, 575, 576, 577, 578, 646, 675, 712 |

**JOINT REPLY OF DEBTORS AND AF NEWCO I, LLC IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF ORDER (A) APPROVING THE PRIVATE SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, WITH SUCH INTERESTS TO ATTACH TO THE PROCEEDS, AND (B) GRANTING RELATED RELIEF**

The debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and AF Newco I, LLC ("Purchaser") hereby submit this joint reply (the "Reply") in support of the Debtors' motion (the "Motion") [D.I. 435] seeking approval of the sale (the "Sale") to Purchaser, by Debtor Educate, Inc. and its direct and indirect Debtor

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

subsidiaries (collectively, "Sellers"), of certain intellectual property assets (the "IP Assets") and Sellers' interests in thirty unexpired leases of nonresidential real estate (the "Acquired Leases" and collectively with the IP Assets, the "Purchased Assets") related to Sellers' American Freight retail furniture and appliance business ("American Freight"), in accordance with the terms and conditions set forth in that certain *Asset Purchase Agreement*, by and between Educate, Inc. and Purchaser, dated as of December 13, 2024 (the "Purchase Agreement"). As and for this Reply, and in further support of the Motion, the Debtors and Purchaser rely upon the supplemental declaration of Michael S. Piper (the "Supplemental Piper Declaration") and declaration of Andrew Behlmann (the "Behlmann Declaration"), each submitted in connection herewith, and respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Before Sellers and Purchaser entered into the Purchase Agreement, American Freight was headed for its demise after nearly fifty-seven years.[2] At the outset of the Chapter 11 Cases, the Debtors filed a motion (the "AF Liquidation Motion") [D.I. 14] seeking to conduct a full-chain liquidation through "going out of business sales" at all 327 American Freight retail stores. The Court granted the AF Liquidation Motion on an interim basis on November 6, 2024 [D.I. 132],[3] setting in process the complete liquidation and wind-down of American Freight. The liquidation concluded on December 31, 2024 and, if not for the Sale and Purchase Agreement, would have resulted in the shuttering of all American Freight stores, the end of the American Freight banner, and the rejection of all of the Debtors' American Freight real estate lease agreements, including the Acquired Leases.

---

[2] The modern-day American Freight is the result of the Debtors' 2020 combination of Sears Outlet, founded in 1968 as Sears Surplus, and American Freight, founded in 1994.

[3] The Court granted the AF Liquidation Motion on a final basis on December 6, 2024. *See* D.I. 351.

2. On December 13, 2024, following extensive negotiations and efforts to reach agreement on the terms of the Sale, Sellers and Purchaser entered into the Purchase Agreement. The Purchase Agreement provides for Purchaser's acquisition of the IP Assets and Sellers' assumption and assignment of the Acquired Leases to Purchaser. The Sale will save the American Freight brand, preserve jobs, and avoid a significant amount of rejection damages claims that would be asserted against the estates if the Acquired Leases were rejected. Specifically, Purchaser intends to operate a new, smaller retail chain under the American Freight banner at an initial thirty locations related to the Acquired Leases and hire a number of Sellers' former employees to assist in its go-forward operations.

3. Nine objections were filed in response to the Motion [D.I. 570, 572, 574, 575, 576, 577, 578, 646, 675] (the "Objections"),[4] all but one of which were filed by certain landlords and relate to the Sellers' proposed assumption and assignment of each such landlord's respective Acquired Lease to the Purchaser.[5] No objections were filed to the Sale transaction generally or to the sale of the IP Assets. Three of the Objections were resolved prior to Debtors' submission of a proposed order under certification of counsel [D.I. 692] approving the Motion and Sale with respect to the IP Assets and Acquired Leases for which the respective landlords did not object (the "Initial Sale Order").

4. On January 10, 2024, the Court entered the Initial Sale Order [D.I. 712]. The Initial Sale Order reserved the Court's consideration of the Sellers' assumption and assignment of the Acquired Leases not approved by the Initial Sale Order, and the Objections related thereto (the "Reserved Objections"), for the hearing on the Motion. On January 13, the Sellers and Purchaser

---

[4] Ten Objections were filed in total, but the Objection filed at D.I. 577 is an amendment of the Objection filed at D.I. 573.

[5] Several landlords also raised informal objections with counsel for the Debtors, but ultimately did not file a formal objection.

closed the Sale with respect to the to the IP Assets and the eighteen Acquired Leases approved by the Initial Sale Order.

5.  Five of the six Reserved Objections were filed by certain landlords and cover nine Acquired Leases (the "Landlord Objections"):[6]

| D.I. | Date | Landlord | Acquired Lease Location |
|---|---|---|---|
| 570 | 12/26/2024 | 6001 Powerline Road, LLC | Fort Lauderdale, FL |
| 572 | 12/27/2024 | 4116 OBT Investments, LLC | Orlando, FL |
|  |  | 1230 Zion, LLC | Morrow, GA |
| 575 | 12/27/2024 | Prologis, L.P. (DCT) | Orlando, FL |
| 577 *(amends D.I. 573)* | 12/27/2024 | SW 17th Street 1010, LLC | Ocala, FL |
|  |  | Niagara Falls 778, LLC | Buffalo, NY |
|  |  | Rodi Road 501, LLC | Pittsburgh, PA |
|  |  | Merchant 33, LLC *(amended)* | Fort Wayne, IN |
| 646 | 1/3/2025 | Daniel P. Hagaman | Chattanooga, TN |

Each of the Landlord Objections asserts a dispute as to the required cure costs for the applicable Acquired Lease, a request for additional adequate assurance of Purchaser's future performance under the applicable Acquired Lease, or both. In addition, the Objection filed by 6001 Powerline Road, LLC (the "Fort Lauderdale Objection") [D.I. 570] asserts that American Freight, LLC, the Debtor tenant under the Acquired Lease for the American Freight store in Fort Lauderdale (the "Fort Lauderdale Lease"), cannot assign the Fort Lauderdale Lease to Purchaser because an initial assignment of the lease from the original tenant to American Freight, LLC was allegedly invalid. This Reply makes clear that this assertion is incorrect. As discussed below, none of the Landlord Objections have merit and all should be overruled.

6.  The sixth and final Reserved Objection (the "BMH Objection") [D.I. 578] was filed

---

[6] As of the date hereof, Purchaser remains engaged in discussions with certain landlords in an effort to consensually resolve as many of the remaining Landlord Objections, as possible. For the reasons set forth below, Purchaser does not believe the Landlord Objections filed by the Belford-affiliated landlords [D.I. 572, 577] can be resolved given the landlords' motives in filing them.

-4-

by Buddy Mac Holdings, LLC ("BMH").  BMH is a franchisee of Buddy's Home Furnishings, a business owned by certain Debtors other than the Sellers and another Debtor in the Chapter 11 Cases.  BMH operates a Buddy's Home Furnishings franchise location near the American Freight store in Lubbock, Texas and, for reasons that are not entirely clear in its Objection, opposes the assumption and assignment of the Acquired Lease for this American Freight store (the "Lubbock Lease") to Purchaser.  However, BMH is not the landlord under the Lubbock Lease and is not (nor does BMH allege that it is) in contractual privity with Sellers in any way.  Thus, BMH lacks standing to assert the BMH Objection, which, in any event, is meritless and should be overruled.

7.  For the reasons set forth below, each of the Reserved Objections should be overruled and the remainder of the Sale should be approved and permitted to close in the interest of preserving jobs and the goodwill associated with the American Freight brand in the markets underlying the Acquired Leases.

**REPLY**

**I.    THE LANDLORD OBJECTIONS SHOULD BE OVERRULED.**

8.  This Reply divides and addresses the Landlord Objections in three categories:

(a)   Resolved Objections:  Two Landlord Objections that have been resolved in principle.

(b)   The Fort Lauderdale Objection:  In addition to objecting on grounds of cure costs and adequate assurance, the Fort Lauderdale Objection incorrectly asserts that the Fort Lauderdale Lease was invalidly assigned to the applicable Seller.

(c)   "Takeback" Objections:  Objections by landlords that do not actually assert what they believe the appropriate cure costs for their respective Acquired Leases to be, but rather simply state that they do not agree with the Debtors' proposed amounts.  Upon Purchaser's information and belief, and based in part on the identities of the principals of these landlords, these objections are merely an attempt to seize control of properties that are subject to below-market, long-term leases, or for other parochial reasons.

**A.     Resolved Objections**

9.     Landlord Objections were filed by Prologis, L.P. (the "Prologis Objection") [D.I. 575] and Daniel P. Hagaman (the "Hagaman Objection") [D.I. 646]. The Prologis Objection and the Hagaman Objection have been resolved in principle, subject to documentation, and the Debtors anticipate filing a supplemental proposed order approving the sale of the related Acquired Leases. Accordingly, this Reply does not address those Landlord Objections but the Sellers and Purchaser reserve all rights with respect thereto in the event the agreed-upon resolutions are not consummated. To the extent any other Objections raised objections on the basis of adequate assurance, the balance of this section responds thereto.

**B.     The Fort Lauderdale Objection**

    **i.     Cure Amount**

10.     The Motion sets forth a cure amount for the American Freight location at 6001 Powerline Road, Fort Lauderdale, Florida 33309 of $1,685. The Fort Lauderdale Objection asserts a larger cure amount of $6,102.68 for the Fort Lauderdale Lease. In the interest of resolving the Fort Lauderdale Objection, Purchaser will agree to and pay that greater amount as the total cure costs for the Fort Lauderdale Lease.

    **ii.     Purchaser is a Solvent, Creditworthy Tenant Capable of Performing Under Each of the Acquired Leases.**

11.     Purchaser is a newly formed Delaware limited liability company with $35 million of committed capital from three individuals and two institutions, each described in the Supplemental Piper Declaration. Purchaser is in the process of hiring members of American Freight's former management team, bringing to bear substantial industry savvy, operational expertise, and institutional knowledge.

12.     Purchaser has already purchased nearly $10 million (cost value) of inventory from

Sellers at the conclusion of Sellers' going-out-of-business sales, has paid $1.12 million to the Debtors at the closing of the Sale (plus cure costs owed to landlords for the Acquired Leases that were approved by the Initial Sale Order), pre-funded January rent for all of the Acquired Leases, and has over $8 million of cash and no debt as of the Sale closing. A pro forma post-closing balance sheet for Purchaser is annexed to the Supplemental Piper Declaration as **Exhibit A**.

13. Post-closing operating projections for Purchaser have been provided to certain objecting landlords and will be made available for *in camera* inspection at the hearing on the Motion unless the Court otherwise directs.

### iii. American Freight, LLC Is the Valid Tenant Under the Fort Lauderdale Lease.

14. The Fort Lauderdale Objection also asserts that Sellers cannot assign the Fort Lauderdale Lease because American Freight, LLC ("AFL"), the current Debtor tenant under the lease, was originally an unpermitted assignee thereof. *See* Fort Lauderdale Objection at 2. That assertion is incorrect.

15. The Fort Lauderdale Objection correctly states that American Freight of South Florida, LLC ("AFSF") was the original tenant under the Fort Lauderdale Lease, *see id.*, but incorrectly claims that AFSF thereafter assigned the Fort Lauderdale Lease to AFL. AFSF never assigned the Fort Lauderdale Lease to AFL or anyone else. Rather, through a series of conversions and a merger, AFSF *became* AFL:

- September 16, 2005: AFSF was formed as a Florida LLC. *See* Behlmann Declaration, Ex. A.[7]

- February 1, 2014: AFSF entered into the Fort Lauderdale Lease. *See* Fort

---

[7] All of the corporate documents cited herein are a matter of public record, of which Purchaser hereby requests that the Court take judicial notice pursuant to Fed. R. Evid. 201. Copies are attached to the Behlmann Declaration in compliance with Fed. R. Evid. 201(c)(2).

Lauderdale Objection at 2.

- January 1, 2015:  AFSF converted to a Delaware LLC.  *See* Behlmann Declaration, Ex. B.

- October 1, 2017:  AFSF merged with, and into, American Freight, Inc. ("<u>AFI</u>").  *See* Behlmann Declaration, Ex. C.

- February 25, 2020:  AFI converted to a Delaware LLC, AFL.  *See* Behlmann Declaration, Ex. D.

16.     The anti-assignment provision in the Fort Lauderdale lease only purports to prohibit outright assignments by AFSF.  *See* Fort Lauderdale Objection at 2 ("Tenant shall not assign . . . this Lease . . . without the prior written consent of Landlord").  However, that provision does not prohibit or even reference assignments by operation of law, such as a merger.  Contracts that purport to prohibit assignment, without expressly referencing "assignment by operation of law," are at best ambiguous and such antitransfer clauses are generally not enforced by Delaware courts in the context of a merger, absent evidence that the parties intended the antitransfer clause to apply in such context.  *See, e.g.*, *MTA Can. Royalty Corp. v. Compania Minera Pangea, S.A. de C.V.*, No. N19C-11-228 AML CCLD, 2020 Del. Super. LEXIS 2780, at *8–9 (Del. Super. Sept. 16, 2020).

17.     The Delaware Court of Chancery has set forth the following test for evaluating whether a general anti-assignment clause intends to include assignments by operation of law, such as a merger:

> [W]here an antitransfer clause in a contract does not explicitly prohibit a transfer of property rights to a new entity by a merger, and where performance by the original contracting party is not a material condition and the transfer itself creates no unreasonable risks for the other contracting parties, the court should not presume that the parties intended to prohibit the merger.

*Id.* at *9 (quoting *Star Cellular Tel. Co., Inc. v. Baton Rouge CGSA, Inc.*, No. CIV. A. 12507 (JBJ)

1993 Del. Ch. LEXIS 158, at *25 (Del. Ch. Aug. 2, 1993)) (modification in original).

18. Here, performance by AFSF was not a material condition of the Fort Lauderdale Lease. The merger of AFSF into AFI did not create unreasonable risks for the landlord because all of the assets of pre-merger AFSF became part of post-merger AFI. If anything, the merger *reduced* the landlord's counterparty risk because AFI was a larger enterprise with greater assets than AFSF, as the merger consolidated a number of regional American Freight subsidiaries, like AFSF, into AFI. That is further evidenced by the fact that post-merger AFI, and then post-conversion AFL, continued to perform as the tenant under the Fort Lauderdale Lease for over ten years. Accordingly, the merger of AFSF into AFI was not prohibited by the anti-assignment language in the Fort Lauderdale Lease and AFL remains the proper tenant under the Fort Lauderdale Lease.

19. In addition, the current landlord under the Fort Lauderdale Lease has been aware of the merger of AFSF into AFI for at least six years, and likely longer. On January 8, 2019, AFI provided a Tenant Estoppel Certificate (the "2019 Estoppel Certificate") to the lender for the landlord under the Fort Lauderdale Lease at the landlord's request. That estoppel certificate described AFI as "the successor by merger to the original tenant, American Freight of Southern Florida, LLC," identified AFI as the signatory on the signature page, and included as an exhibit the Certificate of Merger of AFSF and various other entities into AFI.[8] Despite the landlord's protestations that AFSF somehow surreptitiously assigned the Fort Lauderdale Lease without its knowledge or its consent (which was not required anyway), the landlord has had notice of the merger for years but has chosen to say nothing while continuing to collect rent from AFI, and later AFL.

---

[8] A true and correct copy of the 2019 Estoppel Certificate is annexed to the Behlmann Declaration as Exhibit E.

20. Even if the landlord's consent was required for the 2014 merger, the limitations period for asserting a breach of contract claim arising therefrom has long expired. Del. Code Ann. tit. 6 2A-506(1) ("An action for default under a lease contract . . . must be commenced within 4 years after the cause of action accrued."); *id.* § 2A-506(2) ("A cause of action for default accrues when the act or omission on which the default . . . is based is or should have been discovered by the aggrieved party, or when the default occurs, whichever is later."). The merger occurred on February 1, 2014. Even if the January 8, 2019 estoppel certificate was the first time the landlord learned of the merger (which, upon information and belief, it was not), the limitations period to bring any breach of contract claim arising therefrom expired more than two years ago, on January 8, 2023. In addition, the doctrines of laches, equitable estoppel, or both would bar the landlord from bringing any claims after sitting on its hands and continuing to collect rent from AFI, and later AFL, for more than ten years after the merger and more than six years after accepting the 2019 Estoppel Certificate expressly identifying AFI as successor by merger to AFSF. *Cf. EUREKA VIII, LLC v. Niagara Falls Holdings, LLC*, 899 A.2d 95, 108 n.25 (Del. Ch. 2006) (noting that a situation in which a contract party "misinterpreted the contract as not requiring its consent . . . could constitute an instance where 'a party may be precluded by its own act or omission from asserting a right to which it *otherwise would have been entitled*'") (quoting *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12 (Del. 2000)) (emphasis in original).

21. Accordingly, AFL, a Debtor, is the valid tenant under the Fort Lauderdale Lease with the capacity under section 365 of the Bankruptcy Code to assume the Fort Lauderdale Lease and assign it to Purchaser. This aspect of the Fort Lauderdale Objection should be overruled in its entirety.

### C. "Takeback" Objections

22. The Takeback Objections were filed by (i) 4116 OBT Investments, LLC and 1230 Zion, LLC [D.I. 572] and (ii) SW 17th Street 1010, LLC, Niagara Falls 778, LLC, Rodi Road 501, LLC Merchant 33, LLC [D.I. 577]. Upon Purchaser's information and belief, the landlords asserting the Takeback Objections are owned or managed, directly or indirectly, by the founder of American Freight and one of his family members. Upon Purchaser's further information and belief, the founder of American Freight intends to use those locations to start his own competing furniture and appliance retail chain, and thus the Takeback Objections are merely a pretext to attempt to force rejection of the relevant Acquired Leases.

23. The Takeback Objections (which are nearly identical to one another) assert, with no backup detail or other supporting documentation, that the landlords "suspect there will be damages requiring repair." *See* Takeback Objections ¶ 9. Neither of the Takeback Objections explains what those supposed damages might be, but the landlords' mere conjecture is insufficient to satisfy their burden of proving that their cure amounts are any more than the figures set forth in the Motion. One of the Takeback Objections asserts cure amounts of $37,655.64 and $447,718.00 for two Acquired Leases, and "TBD" for two others, without any explanation of what those substantial amounts relate to. *See* D.I. 577, Ex. A. These vague and unsupported assertions also fall woefully short of satisfying the landlords' burden to demonstrate what their cure amounts are, if different from the figures set forth in the Motion.

24. For the foregoing reasons, the Takeback Objections are baseless and should be overruled.

## II. THE BMH OBJECTION SHOULD BE OVERRULED BECAUSE BMH LACKS STANDING TO OBJECT TO THE MOTION, AND BECAUSE IT IS MERITLESS.

25. The BMH Objection seeks to prevent Sellers' assumption and assignment of the

Lubbock Lease to Purchaser.  The purported basis for this objection is the Debtors' alleged breach of a purported right of first refusal (ROFR) in a franchisee agreement (the "BMH Lubbock Franchisee Agreement") between BMH and Buddy's Franchising and Licensing LLC and Buddy's Newco, LLC (together, "Buddy's"), which BMH alleges required the Debtors to first offer any rights in the Lubbock Lease to BMH when the Debtors acquired the American Freight business in 2020 (the "Purported ROFR").

26. To be clear: (i) BMH is not the landlord under or otherwise a party to the Lubbock Lease; (ii) the Purported ROFR is not a provision in the Lubbock Lease but rather, is allegedly a provision in the BMH Lubbock Franchisee Agreement, which none of the Sellers are a party to; (iii) the Debtors are not attempting to assume and assign the BMH Lubbock Franchisee Agreement through the Motion, Sale, or Purchase Agreement; and (iv) BMH has not established or even alleged any contractual privity with the Sellers in any way that would afford BMH any rights against them.  On this basis alone, the BMH Objection must be overruled, as BMH lacks standing to object to Sellers' assumption and assignment of the Lubbock Lease to Purchaser.

27. Even if the arguments in the BMH Objection were addressed on their merits, they present no legal basis for denying Sellers' assumption and assignment of the Lubbock Lease to Purchaser.  Assuming, *arguendo*, that the assumption and assignment of the Lubbock Lease did violate the Purported ROFR in the BMH Lubbock Franchisee Agreement,[9] BMH might have potential breach claims against Buddy's, its counterparty to the BMH Lubbock Franchisee Agreement.  But BMH cites no legal authority (nor is there any) to support its position that a

---

[9] Nothing contained in this Reply is intended or shall be construed to be an admission by the Debtors with respect to any allegations or claims made in the BMH Objection.  The Debtors reserve all rights with respect to any allegations and claims in the BMH Objection, including but not limited to as they may relate to the *Objection of Buddy Mac Holdings, LLC to Notice of Possible Assumption and Assignment Cure Costs With Respect to Executory Contracts and Unexpired Leases, and Reservation of Rights* [D.I. 644].

violation of the Purported ROFR in the BMH Lubbock Franchisee Agreement would confer any right on BMH to intervene in the Sellers' assumption and assignment to Purchaser, pursuant to section 365 of the Bankruptcy Code, of the Lubbock Lease, under which Buddy's is not the tenant, as to which neither BMH nor Buddy's has contractual privity, and in which BMH has no stake.

28. Each case that BMH relies on in support of its Objection is irrelevant and easily distinguished by the fact that the Debtors, through the Motion and Sale, are not proposing to assume and assign to Purchaser the actual agreement that BMH alleges has been "incurably breached," i.e., the BMH Lubbock Franchisee Agreement. *See* BMH Objection ¶¶ 20–30 (collecting cases where a court declined a debtor's proposed assumption of a contract due to a material and incurable default ***arising under the actual contract that the debtor proposed to assume***). Moreover, whether the BMH Lubbock Franchisee Agreement has been "incurably breached," "thereby rendering the BMH Lubbock Franchise Agreement unassignable," is not an issue that is before the Court at this time and is completely irrelevant to the Motion, the Sale, the Purchase Agreement, and the Sellers' assumption and assignment of the Lubbock Lease to Purchaser. *See* BMH Objection ¶ 29.

29. Finally, even if the Purported ROFR *was* relevant here, BMH's reliance on a provision of the BMH Lubbock Franchisee Agreement to prevent the Sellers' assumption and assignment of the unrelated Lubbock Lease contravenes the rationale behind section 365(f)(1) of the Bankruptcy Code and case law recognizing that bankruptcy courts are empowered to strike anti-assignment provisions, such as rights of first refusal, when such provisions would prevent a debtor from assuming and assigning an executory contract or unexpired lease and preclude the debtor's estate from realizing the value of its assets. *See* 11 U.S.C. § 365(f)(1) ("[N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that

prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease . . . ."); *see also In re Adelphia Commc'ns Corp.*, 359 B.R. 65, 90 (Bankr. S.D.N.Y. 2007) (disallowing right of first refusal); *In re Mr. Grocer, Inc.*, 77 B.R. 349, 353 (Bankr. D.N.H. 1987) (same); *In re Ames Dep't Stores, Inc.*, 316 B.R. 772, 794 (Bankr. S.D.N.Y. 2004) ("Section 365(f) performs an important function for maximizing the value in an estate for creditors. It protects the body of creditors as a whole from provisions . . . that frustrate the estate's ability to convert the economic value in leases into cash that can increase creditor recoveries."). For these reasons, the BMH Objection lacks merit and should be overruled.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors and Purchaser respectfully request that the Court overrule all remaining Objections and grant all relief requested in the Motion that has not previously been granted and all other relief the Court deems just and proper.

Dated: January 17, 2025
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Allison S. Mielke
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Matthew A. Feldman (admitted *pro hac vice*)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KLEIN LLC**

*/s/ Julia B. Klein*
Julia B. Klein (No. 5198)
919 North Market Street
Suite 600
Wilmington, Delaware 19801
Telephone: (302) 438-0456
klein@kleinllc.com

-and-

**LOWENSTEIN SANDLER LLP**
Andrew Behlmann (*pro hac vice* pending)
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
abehlmann@lowenstein.com

*Counsel to Purchaser*