# EXHIBIT A

**MARBLE OF THE WORLD, INC.**

**STANDARD SUB-LEASE AGREEMENT**

**DATE: February 1, 2014**

*American Freight of SFLA.*

Lease Date:   February 1, 2014

Parties:      Marble of the World Inc., as Landlord,
                        and
              American Freight of South Florida, LLC, as Tenant

                                                                Page
INDEX ....................................................................................................... i-ii

ARTICLE I.  FUNDAMENTAL LEASE PROVISIONS AND EXHIBITS ............... 1
        A. FUNDAMENTAL LEASE PROVISIONS: ...................................... 1
        B. EFFECT OF REFERENCE TO A FUNDAMENTAL LEASE PROVISION.2
        C. EXHIBITS.................................................................................... 2
ARTICLE II.  DEFINITIONS ......................................................................... 2
        A. BASE RENT ............................................................................... 2
        B. ADJUSTED ANNUAL RENT ....................................................... 2
        C. ADDITIONAL RENT ................................................................... 2
        D. COMPLEX.................................................................................. 2
        E. THE PREMISES ......................................................................... 2
        F. LEASABLE AREA ...................................................................... 2
        G. TENANT'S PROPORTIONATE SHARE...................................... 2
        H. COMMON AREAS AND FACILITIES ......................................... 2
ARTICLE III.  TERM OF LEASE.................................................................... 3
        A. TERM ........................................................................................ 3
        B. EFFECTIVE DATE ..................................................................... 3
        C. HOLDING OVER ....................................................................... 3
        D. OPTION TO EXTEND ................................................................ 3
ARTICLE IV.  RENT AND OTHER CHARGES ................................................ 3
        A. BASE RENT ............................................................................... 3
        B. ADJUSTED ANNUAL RENT ....................................................... 3
        C. REAL ESTATE TAXES PAYABLE BY TENANT........................... 3
        D. MANNER OF PAYMENT OF REAL ESTATE TAXES BY TENANT ........ 4
        E. PRORATION OF TAXES ............................................................ 4
        F. INSURANCE .............................................................................. 4
        G. COST OF MAINTENANCE OF COMMON AREAS AND FACILITIES: -
        TENANT TO PAY PROPORTIONATE SHARE OF EXPENSE.................. 4
        H. MANNER OF PAYMENT OF TENANT'S PROPORTIONATE SHARE OF
        COMMON AREA MAINTENANCE CHARGES.................................... 5
        I. UTILITY CHARGES ................................................................... 5
        J. LATE PAYMENT CHARGE ......................................................... 5
        K. REPEATED FAILURE TO PAY RENT WHEN DUE ...................... 6
        L. SECURITY DEPOSIT.................................................................. 6
ARTICLE V.  NET LEASE ............................................................................. 6
        A. NET LEASE INTENDED UNLESS EXPRESSLY PROVIDED
        OTHERWISE ................................................................................... 6
ARTICLE VI.  PREMISES............................................................................... 7
        A. QUIET ENJOYMENT ................................................................. 7
        B. USE OF THE PREMISES............................................................. 7
        C. TRADE NAME ........................................................................... 7
        D. SOLICITATION OF BUSINESS ................................................... 7
        E. PERMITS AND LICENSES ......................................................... 7
        F. FIRE SALES, AUCTIONS, ETC., PROHIBITED............................ 7
        G. BUSINESS OPERATIONS .......................................................... 7
        H. EXAMINATION OF PREMISES .................................................. 7
        I. ACCEPTANCE ........................................................................... 8
        J. MAINTENANCE.......................................................................... 8
        K. ACCESS .................................................................................... 9
        L. EASEMENTS .............................................................................. 9
        M. IMPROVEMENTS ...................................................................... 9
        N. CONTROL OF COMMON AREAS AND FACILITIES BY LANDLORD. 10
        O. LIENS ....................................................................................... 11
        P. COMMON AREAS ...................................................................... 11



Q.  DESTRUCTION ................................................................................12
R.  CONDEMNATION ...........................................................................12
S.  SUBORDINATION ...........................................................................13
T.  ASSIGNMENT .................................................................................13
U.  SURRENDER ...................................................................................14
ARTICLE VII.  LIABILITY ..................................................................................14
A.  INDEMNITY ....................................................................................14
B.  FORCE MAJEURE ...........................................................................15
C.  INSURANCE PROPERTY, LIABILITY AND OTHER INSURANCE ...15
D.  INSURANCE - FIRE AND OTHER INSURANCE .............................16
E.  INSURANCE - MANNER OF PAYMENT OF INSURANCE PREMIUMS
BY TENANT .........................................................................................16
ARTICLE VIII.  PERFORMANCE ......................................................................17
A.  DEFAULT .........................................................................................17
B.  REMEDIES .......................................................................................17
C.  NO WAIVER .....................................................................................18
D.  RIGHT TO CURE .............................................................................18
E.  TIME OF ESSENCE .........................................................................18
F.  NOTICES ..........................................................................................18
G.  SUBMISSION OF LEASE ...............................................................19
H.  RECORDING ....................................................................................19
I.  PARTIAL INVALIDITY ....................................................................19
J.  BROKER'S COMMISSION ..............................................................19
K.  INTERPRETATION .........................................................................19
L.  ENTIRE AGREEMENT ....................................................................19
ARTICLE IX.  HAZARDOUS WASTES ............................................................20
A. ....................................................................................................20
B. ....................................................................................................20
C. ....................................................................................................20
D.  CORRECTIVE ACTION ..................................................................20
E.  TENANT'S INDEMNIFICATION ....................................................20
F.  SURVIVAL .......................................................................................21
ARTICLE X.  RULES AND REGULATIONS ....................................................21
A.  RULES AND REGULATIONS .........................................................21
ARTICLE XI.  MISCELLANEOUS ....................................................................21
A.  GOVERNING LAW ..........................................................................21
B.  MERCHANT'S ASSOCIATION .......................................................21
C.  PLUMBING FACILITIES .................................................................21
D.  EXCLUSIVITY .................................................................................21
E.  WAIVERS ..........................................................................................21
F.  ESTOPPEL CERTIFICATE ..............................................................21
G.  BINDING EFFECT ...........................................................................22
H.  RADON GAS .....................................................................................22
I.  WAIVER OF TRIAL BY JURY .........................................................22
J.  SECURITY MEASURES ...................................................................22
K.  AUTHORITY ....................................................................................22
L.  LIMITATION OF LANDLORD'S LIABILITY .................................22
L.  LIMITATION OF LANDLORD'S LIABILITY .................................23
WAIVER OF LANDLORD'S LIEN ......................................................23
PERMITS AND APPROVALS ..............................................................23
TENANT'S CONDUCT .........................................................................23
EXHIBIT "A" ........................................................................................................25
EXHIBIT "A-2" .....................................................................................................26
EXHIBIT "B-1" .....................................................................................................27
EXHIBIT "B-2" .....................................................................................................28
EXHIBIT "C" ........................................................................................................30
EXHIBIT "D" ........................................................................................................31
EXHIBIT "E" ........................................................................................................32
EXHIBIT "F" ........................................................................................................33

# MARBLE OF THE WORLD, INC.
## STANDARD SUB-LEASE AGREEMENT
### DATE: February 1, 2014

THIS SUB-LEASE AGREEMENT made and entered into the date first appearing above, by and between the below specified Landlord and Tenant (hereinafter the "Lease").

For and in consideration of these Premises, the rents reserved and the agreements and covenants herein contained, the Landlord does hereby lease and demise unto the Tenant, and the Tenant does hereby hire and take from the Landlord, the Premises specified below (hereinafter the "Premises") upon the terms and conditions set forth herein.

## ARTICLE I. FUNDAMENTAL LEASE PROVISIONS AND EXHIBITS

A. FUNDAMENTAL LEASE PROVISIONS:

Landlord Name:   MARBLE OF THE WORLD, INC., a Florida corporation
Address:         6001 Powerline Road
                 Fort Lauderdale, FL 33309

Telephone:       (954) 745-9700    Fax: (954) 745-9701

Tenant Name:     American Freight of South Florida, LLC
                 a Florida Limited Liability Company
Address:         ~~2385 Executive Center Drive, Suite 100~~ 680 Sundury Rd
                 ~~Suite 100~~
                 ~~Boca Raton, Florida 33431~~ Delaware, OH 43015
Telephone:       ~~(561) 985-2576~~    Fax: (740) 363-8127
                 740-363-2222

Tenant Trade Name:   American Freight of South Florida, LLC

*(handwritten margin note: $11,360/mo +$14.  $15.2¹/annum)*

Premises:  Approximately 25,825 square feet consisting of one bay of office and two bays of warehouse space ("*Premises*") located in a multi-tenant building consisting of 155,567 square feet bearing the municipal address 6001 Powerline Road, City of Ft. Lauderdale, County of Broward, Florida 33309 (the "*Building*"), and all other improvements located on the property, including all of the driveways, sidewalks, parking spaces, and the truck loading dock, depicted on Exhibit A and legally described on Exhibit B (the "*Land*") attached hereto and made a part hereof.  (The Land and Building may also be referred to as "Complex").  The square footage of the Premises shall be used, notwithstanding anything to the contrary contained in this Lease, in calculating the Base Rent, Adjusted Annual Rent and Tenant's Percentage of Building Area (all as hereinafter defined).

Initial Term:  120 full calendar months

Tenant's Gross Leased Area:  25,825 ± Square Feet

Tenant's Percentage of Building Area: 16.60 %  *(handwritten: retail sales 4%)*

Permitted Use: Tenant will utilize the Premises for warehouse and storage purposes and for no other purpose.

Prepayment: None

Security Deposit: $20,000.00 paid by Tenant pursuant to previous lease;

Lease Commencement Date:  The Initial Term of this Lease shall begin on February 1, 2014 (the Lease "Commencement Date")

LANDLORD'S INITIALS
TENANT'S INITIALS

**Rent Commencement Date:** The Base Rent (as defined herein) and all Additional Rent (as herein defined) (Base Annual Rent and Additional Rent are sometimes collectively referred to herein as "Rent") shall begin to accrue on the date (the "Rent Commencement Date") which is the Lease Commencement Date. For purposes of this Lease, a "Lease Month" shall be defined as those successive calendar month periods beginning with the Commencement Date and continuing through the Initial Term or any Option Term of this Lease; provided, however, if the Commencement Date is a day other than the first day of a calendar month, then the first Lease Month shall include that period of time from the Commencement Date up to the first day of the next calendar month, and each subsequent Lease Month shall be a calendar month period beginning on the first day of such month. (Commencement Dates are subject to the provisions of Article III, Section B hereof and Exhibit "C")

**B.  EFFECT OF REFERENCE TO A FUNDAMENTAL LEASE PROVISION.** Each reference in this Lease to any of the Fundamental Lease Provisions contained in Article 1.1 shall be constructed to incorporate all of the terms provided under each such Fundamental Lease Provision.

**C. EXHIBITS:** The exhibits hereafter listed in this Section and attached to this Lease are hereby incorporated in and made apart of this Lease:

| | |
|---|---|
| EXHIBIT "A1" | Site Plan |
| EXHIBIT "A2" | Floor Plan - Bay Configuration |
| EXHIBIT "B1" | Landlord's Work |
| EXHIBIT "B2" | Tenant's Work |
| EXHIBIT "C" | Form of Addendum specifying Dates |
| EXHIBIT "D" | Sign Specifications |
| EXHIBIT "E" | Special Provisions (if any) |
| EXHIBIT "F" | Rules and Regulations |

## ARTICLE II. DEFINITIONS

The following definitions shall apply:

**A. BASE RENT:** The Base Rent to be paid by Tenant pursuant to the provisions herein.

**B.  ADJUSTED ANNUAL RENT:** The Base Rent as defined above, hereafter increased in accordance with the provisions hereof (Subject to Article IV, Section B).

**C.  ADDITIONAL RENT:** Tenant's Proportionate Share of Real Estate Taxes, Insurance, Reserves and Common Area Maintenance charges.

**D. COMPLEX:** The Entire Property located at 6001 Powerline Road, Fort Lauderdale, Florida

**E. THE PREMISES:** 25,824 ± square feet of the Complex

**F. LEASABLE AREA:** All space at the building rentable to tenants, whether or not rented or occupied.

**G. TENANT'S PROPORTIONATE SHARE:** 16.60%.

**H. COMMON AREAS AND FACILITIES:** All that part of the Complex not leased to tenants of the complex, intended for the common use of all tenants of the Complex, including, among other facilities, parking areas, private streets and alleys, landscaping, curbs, loading areas, sidewalks and lighting facilities and pylon signs, but excluding space in the Complex (now and hereafter existing) constructed for occupancy by individual users, as the same may exist from time to time, and further excluding streets and alleys maintained by a governmental authority, together with all other common areas, facilities, equipment and installations which are at the time provided or designated (and which may be changed from time to time by Landlord) for the use by or benefit of Tenant, its employees, customers and other invitees in common with others entitled to the use or

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

benefit of such areas, facilities, equipment and installations in the manner and for the purpose permitted by this Lease. Specifically excluded from the Common Areas and Facilities are those portions of the Complex, together with all improvements situated thereon, which are at any time leased or conveyed to third parties by the Landlord.

## ARTICLE III. TERM OF LEASE

**A. TERM:** The Tenant hereby takes and holds the Premises specified under Article I for the entire duration of the Term as specified thereunder.

**B. COMMENCEMENT DATE:** The Term will commence on the date specified under Article I. It is contemplated that the Premises will be ready for occupancy by the Tenant on or prior to the Commencement Date; however, in the event that the Landlord is unable to deliver vacant possession of the Premises to the Tenant on or before said date, then and in such event the Landlord agrees to deliver possession of the Premises to the Tenant as soon as practical thereafter, and the rental under this Lease will be abated proportionately and the Tenant will be relieved of the liability for paying the same during the term prior to the delivery of possession. In no event shall the Tenant have any claim for damages (except for the abatement of rent as herein specified) on account of the failure of the Landlord to deliver possession of the Premises to the Tenant on or before said date.

**C. HOLDING OVER:** Intentionally omitted

**D. OPTION TO EXTEND:**

So long as Tenant is not in default in respect to any provisions of this Lease upon exercise of the Options and at the commencement of the first and second Extended Terms, Tenant shall have the option (the **"Options"**) to extend the Initial Term of the Lease for two (2) additional terms of five (5) years (the **"Option Terms"**), on all of the same terms and conditions set forth herein. To exercise the either Option, Tenant shall notify Landlord in writing at least one hundred and twenty (120) days prior to the expiration of the Initial Term and at least one hundred and twenty (120) days prior to the expiration of the first Option Term that Tenant intends to extend the Initial Term through the first or second Option Term. The base monthly Rent shall increase pursuant to Section 3.5 herein.

## ARTICLE IV. RENT AND OTHER CHARGES

**A. BASE RENT:** Tenant shall pay in advance to the Landlord, without prior demand, in lawful money of the United States, on the first day of each month commencing on the Rent Commencement Date, without any deduction or off-set whatsoever, and continuing monthly thereafter throughout the term of this Lease, the sum of $11,360 per month as Base Rent together with all other Additional Rent and all other sums and charges payable by Tenant hereunder as herein provided, plus any Florida State Sales or Use Tax. Such payment shall be made at the office of the Landlord as set forth in Article I or at such place Landlord may from time to time designate by written notice directed to Tenant at the Premises.

In the event that the Term Commencement Date is other than the first day of the month, then the Tenant shall pay rent for such fractional month prorated on the basis of a thirty day month.

**B.   ADJUSTED ANNUAL RENT:** The Base Rent will increase, commencing on the first anniversary date of the Rent Commencement Date, and continuing annually thereafter during the Term and any Option Term (each anniversary referred to herein as "Adjustment Date"), by adding to the Base Rent: two per cent (2%) on the first and second anniversary date of the Rent Commencement Date and three percent (3%) on the third anniversary date and each year thereafter..

**C. REAL ESTATE TAXES PAYABLE BY TENANT:** The Tenant agrees to pay to Landlord, as Additional Rental, in addition to the rental and other sums due hereunder, during the term of this Lease and any option terms, its Proportionate Share of all Real Estate Taxes, and all assessments which may be levied against the Complex, and all ad valorem taxes for Landlord's personal

LANDLORD'S INITIALS 
TENANT'S INITIALS

- 3 -

property used in connection therewith (hereinafter collectively referred to as "Real Estate Taxes") immediately when first due, together with all costs and expenses (including attorneys' fees and expenses) incurred by Landlord in connection therewith, for such calendar year.

**D. MANNER OF PAYMENT OF REAL ESTATE TAXES BY TENANT:** The amounts payable by Tenant pursuant to the foregoing provision of this Lease shall be estimated by Landlord for such period as Landlord may determine, not exceeding one year, and Tenant agrees to deposit with Landlord such amounts in monthly installments in advance on the first day of each calendar month during such period, such installments to be in addition to all other payments of rent provided for in this Lease. At the end of the period for which such estimated payments have been made, Tenant shall be advised of the actual amount required to be paid under the provisions of this Article and, if necessary, an adjustment shall be made between the parties. If Tenant shall have deposited in excess of such actual amount, the excess shall be refunded by Landlord within a reasonable period of time, not to exceed 30 calendar days. If the amount that Tenant shall have deposited is less than such actual amount, Tenant agrees to pay such extra amount with the next Rent payment due, or if no further Rent payments are due, then forthwith upon demand therefor by Landlord.

**E. PRORATION OF TAXES:** Tenant's Proportionate Share of all Real Estate Taxes required to be paid by Tenant hereunder during the first and last calendar years of the Term of this Lease shall be prorated as of the first and last days of the Term of this Lease, and Landlord shall pay that portion thereof applicable to the periods before the first day and after the last day of the Term hereof, respectively.

**F. INSURANCE:** The Tenant shall pay its Proportionate Share of insurance premiums of insurance policies carried by the Landlord for the Complex. Landlord agrees to carry, or cause to be carried, on the Complex during the Term hereof, Commercial General Liability Insurance (hereinafter, "Landlord's Liability Insurance") with an insurance company who carries a financial rating of not less than "X-10", as designated in the most current Best's Insurance Reports, on the Common Areas and Facilities, naming Tenant as an additional insured, providing coverage of not less than Three Million Dollars ($3,000,000.00) in combined Bodily Injury and Property Damage Liability. Upon written request by Tenant, Landlord shall promptly deliver to Tenant a certificate of Landlord's Liability Insurance. Such Landlord's Liability Insurance shall require Landlord's insurance carrier to notify Tenant at least ten (10) days in advance of the cancellation of Landlord's Liability Insurance. Landlord also agrees to carry, during the Term hereof, all risk property insurance (hereinafter, "Landlord's Property Insurance") covering fire and extended coverage, vandalism and malicious mischief, sprinkler leakage and all other perils of direct physical loss or damage insuring the improvements and betterments located in the Complex, including the Premises and all appurtenances thereto (excluding Tenant's personal property) for the full replacement value thereof. Landlord, upon request, shall furnish Tenant a certificate of such Landlord's Property Insurance.

**G. COST OF MAINTENANCE OF COMMON AREAS AND FACILITIES: - TENANT TO PAY PROPORTIONATE SHARE OF EXPENSE.** In each year of the Term, Tenant will pay to Landlord, in addition to the Base Rent specified in Article I hereof and in addition to Tenant's payments of Real Estate Taxes and Insurance, as Additional Rent, its Proportionate Share of Landlord' s costs and expenses of maintaining, operating and repairing the Common Areas and Facilities (including parking areas) (hereinafter collectively "Common Area Maintenance"), during such year of the Term, including without limitation, the costs and expenses incurred by Landlord in connection with:

    1. Striping, resurfacing and repair, but not replacement, of the parking areas and driveways of the Complex;

    2. Cleaning, including dirt and rubbish removal, garbage and waste collection and disposal and exterior window cleaning;

    3. Traffic control, security, policing and supervising;

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

4. All utilities, including electricity (to the common areas), gas, water, sewer and septic tanks;

5. All personnel including management staff employed to carry out maintenance of the Common Areas and Facilities, including salaries and contributions toward usual fringe benefits, unemployment insurance and similar contributions;

6. Repairs and maintenance and operation of the roofs and structural components of the Complex, the heating, ventilating and air-conditioning systems, if any, serving the Common Areas and Facilities, and including gardening and landscaping maintenance;

7. Repairs and maintenance and operations of signs relating to the Complex, whether owned or rented by Landlord.

8. Exterior painting, sealing, and waterproofing.

The First Year's estimated ~~Common Area Maintenance~~ *Additional Rent* charge is ~~$6,431.64~~ $5,424.54 per month.

Landlord may include in Common Area Maintenance the costs of any capital expenditures or capital improvement to the Common Areas, provided that only the amortized portion of the cost of such Common Area capital expenditures or capital improvement is included in Common Area Maintenance each year and Landlord shall amortize such costs in accordance with generally accepted accounting principles. However, in the event the Landlord's costs and expenses for Common Area Maintenance (as defined above), should increase due to the nature of Tenant's business, then and in that event the Tenant shall pay the entire amount over that which is considered normal or consistent for the Complex, in addition to the Tenant's Proportionate Share as set forth herein, said amounts to be paid forthwith upon demand.

**H. MANNER OF PAYMENT OF TENANT'S PROPORTIONATE SHARE OF COMMON AREA MAINTENANCE CHARGES:** The amounts of which Tenant is to pay its Proportionate Share pursuant to Section G above together with adequate reserves to cover the cost of any such striping, repair and resurfacing of asphalt, repairs of the roofs, and exterior painting, sealing, and waterproofing and repairs of the Common Areas and Facilities shall be estimated by Landlord for such period as Landlord may determine not exceeding one year, except for the hereinafter mentioned reserves which may be set aside for any number of years, and Tenant agrees to pay Landlord such estimated amount of its Proportionate Share of such amounts in monthly installments in advance on the first day of each month together with and in addition to all other rental payments provided for in this Lease. At the end of the period for which such estimated payments have been made, Tenant shall be advised of the actual amount required to be paid under the provisions of Section G and, if necessary, an adjustment shall be made between the parties. If Tenant shall have paid in excess of such actual amount, the excess shall be refunded by Landlord within a reasonable period of time, not to exceed 30 days. If the amount Tenant has paid is less than such actual amount, Tenant agrees to pay such additional amount with the next Rent payment due, or, if no further Rent payments are due, then forthwith upon demand therefor by Landlord.

**I. UTILITY CHARGES:** Tenant shall be solely responsible for and shall promptly pay all charges for water, sewer, gas, refuse removal, electric and all other services. Landlord shall provide electric to the Tenant's Premises at a cost of $300.00 per month; provided, however, Landlord hereby covenants and agrees to provide separate electric to the Tenant's Premises within six months after the Lease Commencement Date. In no event shall Landlord be liable for any interruption or failure in the supply of any such utilities to Tenant or to the leased Premises, nor shall any such failure or interruption constitute an actual or constructive eviction of Tenant from the Premises or result in or give rise to any abatement in any Rent received hereunder. Tenant shall be solely responsible for telephone and other communications services.

**J. LATE PAYMENT CHARGE:** In the event any monthly installment of Rent and/or Additional Rent is not paid on or before the fifth day after the date which it is due and payable as set forth in this Lease, Tenant agrees to pay as a late charge an amount equal to eighteen percent

LANDLORD'S INITIALS ___
TENANT'S INITIALS ___

- 5 -

(18%) of the monthly installment of Rent and/or Additional Rent that is due and payable as compensation to Landlord for its additional administrative expenses in processing late payments.

**K.   REPEATED FAILURE TO PAY RENT WHEN DUE:**  If Tenant fails in any two consecutive months during the term of this Lease to make any Rent and/or Additional Rent payments on or before the date which same shall become due and payable, the Landlord, in order to reduce its administrative costs, may require, by giving written notice to the Tenant (and in addition to any late charge payable under Section J above, as well as any other rights and remedies accruing pursuant to any term, provision or covenant of this Lease or otherwise provided by law or in equity), that the Base and Additional Rent payable pursuant to Article I of the Lease is thereafter to be paid in quarterly installments in advance instead of in monthly installments in advance and/or that all future payments of Rent and Additional Rent are thereafter to be made on or before the due date.  Any acceptance of a monthly Rent payment or of a personal or corporate check thereafter by Landlord shall not be construed as a subsequent waiver of said rights, which may be asserted by Landlord at any time and from time to time during the term of this Lease.

**L.   SECURITY DEPOSIT:**  As security for the faithful performance by Tenant of all the terms and conditions of this Lease, Tenant has deposited with Landlord a sum specified under Article I as the Security Deposit. The Landlord may commingle the Security Deposit with its other funds and, in the event of a sale of the Complex or of the land on which it stands, or a lease of the land or Complex or both, the Landlord shall have the right to transfer the Security Deposit to the Buyer or tenant and the Landlord shall be released from all liability to Tenant for the return of such Security Deposit, and the Tenant shall look only to the new Landlord or Sub-Lessor for the return of the said Security Deposit. The Security Deposit shall not be mortgaged, assigned or encumbered by the Tenant without the written consent of the Landlord, which consent may be reasonably withheld. In the event of a permitted assignment  of this Lease by Tenant, the Security Deposit shall be held by Landlord as a deposit made by the assignee and the Landlord shall have no further liability with respect to the return of said Security Deposit to the assignor. If any of the rents herein, reserves or any other sum payable by Tenant to Landlord shall be overdue and unpaid or should Landlord make payments on behalf of Tenant, or if Tenant shall fail to perform any of the terms of this Lease, then Landlord may, at its option and without prejudice to any other remedy which Landlord may have on account thereof, appropriate and apply said entire deposit or as much thereof as may be necessary to compensate Landlord toward the payment of rent, additional rent, loss or damage sustained by Landlord due to such breach on the part of Tenant; and Tenant shall forthwith upon demand restore said security to the original sum deposited. The Security Deposit shall be returned to the Tenant, without interest, upon the expiration of the Lease Term and any extended Term thereof, provided that Tenant has fully carried out all the terms, covenants and conditions of this Lease.

ARTICLE V.  NET LEASE

**A.  NET LEASE INTENDED UNLESS EXPRESSLY PROVIDED OTHERWISE:**  Tenant acknowledges and agrees that it is intended that this Lease shall be a completely Net Lease to Landlord, that Landlord shall not be responsible during the term of the Lease for any costs, charges, expenses and outlays of any nature whatsoever arising from or relating to the Premises, or the contents thereof, excepting only Landlord's income tax in respect to income received from leasing the Premises, Landlord's corporation franchise tax and any payment to be made by Landlord in connection with any mortgage or mortgages executed by Landlord affecting the Premises, and, Tenant shall pay all charges, impositions, costs and expenses of every nature and kind relating to environmental matters resulting from Tenant's use of the Premises, fire and life safety codes for Tenant's business operations, and the interior, non-structural portions of the Premises and the operation of its business, including, but not limited to electricity, water, gas, telephone, sewage and other utilities furnished to the Premises and Tenant covenants with Landlord accordingly.   Landlord shall not be liable for any interruption whatsoever in utility services.



LANDLORD'S INITIALS
TENANT'S INITIALS

- 6 -

## ARTICLE VI. PREMISES

**A. QUIET ENJOYMENT:** Tenant, upon paying the Rent and Additional Rent and performing all of the promises, covenants, and obligations on its part to be performed, shall peaceably and quietly enjoy the Premises subject, nevertheless, to the terms of this Lease and to any mortgage, ground lease or agreements to which this Lease is subordinated.

**B. USE OF THE PREMISES:** During the entire Lease Term, and all extended terms thereof, the Premises must be used and occupied for the sole use specified under Article I and for no other purpose or purposes without the written consent of the Landlord, which consent may be withheld in Landlord's sole discretion.

**C. TRADE NAME:** Intentionally Omitted.

**D. SOLICITATION OF BUSINESS:** Tenant and Tenant's employees shall not solicit business in the parking areas or other common areas of the Complex, and Tenant shall not distribute any handbills or other advertising matter in or upon automobiles parked in the parking areas or in other common areas of the Complex, nor shall Tenant display any merchandise outside the Leased Premises.

**E. PERMITS AND LICENSES:** Tenant shall procure at its sole expense any and all permits and licenses required for the transaction of business in the Premises and will at all times comply with all applicable laws, ordinances and governmental regulations relating to the business of Tenant conducted at the Premises .

**F. FIRE SALES, SECOND-HAND, ETC., PROHIBITED:** Tenant shall not conduct within or from the Premises any fire, bankruptcy, "going-out-of-business, "lost-our-lease" or similar sales and shall not advertise the same on the Premises ,or operate within the Premises a ~~"factory outlet"~~ ~~store,~~ a "second hand" store or any store conducted in whole or principally for the sale of second-hand goods.

**G. BUSINESS OPERATIONS:** Tenant agrees to comply with all laws, rules and regulations of Landlord and all governmental authorities respecting Tenant's use of and operations and activities on the Premises and in the Complex, including sidewalks, streets approaches, drives, parking areas, and shall not make, suffer or permit any unlawful, improper or offensive use of the Premises or permit any nuisance therein.  Nor shall Tenant maintain any loudspeaker device or any noise making device in such manner as to be audible to anyone outside the Tenant's Premises. No radio or television antenna or other similar device shall be installed without first obtaining in each instance the Landlord's consent in writing which consent may thereafter at the Landlord's discretion be withdrawn. Tenant agrees that it will, in connection with its operations, use only the trademarks, service marks, and trade names of Landlord and Landlord's affiliates in a manner specifically authorized by Landlord. It is further agreed that Landlord may terminate its license to Tenant to use any of said marks or trade names at any time upon notice and that the use of said marks and trade names shall be in accordance with specific standards of quality and controls adopted by Landlord in connection with the use of its marks. Included within the specific standards and quality control are the following provisions:

Tenant will not use said marks and trade names in connection with the conduct of any business except the business conducted on the demised Premises and if the corporate or trade name of Tenant includes any word or name similar to the name of the Complex, Tenant will immediately upon discontinuance of business in the demised Premises cause the name to be changed so as to eliminate such word or name;

**H. EXAMINATION OF PREMISES:** Tenant, having examined the Premises, is familiar with the condition thereof and relying solely on such examination, is not relying on any oral representations made by Landlord, and will take them in their present condition, unless otherwise expressly agreed upon in writing. (See EXHIBIT "B-1" - Landlord's Work)

LANDLORD'S INITIALS
TENANT'S INITIALS

**I.  ACCEPTANCE:**  Tenant agrees to accept the existing improvements in its "as is" condition with all faults except (a) for Hazardous Substances (as defined hereinafter); and (b) the structural and exterior portions of the Premises and the Building, including without limitation the roof (hereinafter, the "Structural Portions"), the plumbing, electrical, and water (hereinafter, the "Utilities") servicing same are in good working, water-tight, condition and order and are in compliance with all existing laws, codes, regulations and ordinances of any governmental authorities, including, without limitation, the compliance of the Complex as a "public accommodation" under Title III of the Americans with Disabilities Act of 1990 for Tenant's intended use of the Premises.  Notwithstanding anything in this Lease to the contrary, if the Utilities or the Structural Portions are not in good working order or not in compliance with all existing laws, codes, regulations and ordinances as of the Lease Commencement Date, Tenant may terminate this Lease.  Upon Tenant's taking possession of the Premises and opening for business to the public, Tenant shall be deemed to have certified to the Landlord and to the holder of any mortgage encumbering all or part of the Landlord's estate, that the Premises have been delivered to it in accordance with the term of this Lease and that possession has been accepted by Tenant, that the term of this Lease and the obligation to pay Rents have commenced, that the Premises and all other portions of the Complex have been completed in accordance with the requirements of this Lease and that there is not then available to Tenant any defense or offset against Rent or any violation of the Lease terms on the part of the Landlord. The foregoing provisions shall be self-operative and no other instrument or certificate shall be required by the Landlord or any mortgagee unless the Landlord or mortgagee shall deem the same appropriate in which event, in confirmation of the foregoing, Tenant shall promptly execute in writing a certificate containing the foregoing. (see EXHIBIT "C" attached hereto)

**J.  MAINTENANCE:**

1.  **By Tenant:**  Tenant shall at all times keep and maintain the interior, non-structual portions of the Premises (including entrances, all glass, windows, moldings and storefronts) and all partitions, doors, fixtures, equipment and appurtenances thereof and improvements thereto (including lighting, heating, ventilation and plumbing fixtures and equipment and wiring and its air conditioning system) in good order, condition and repair (including periodic painting and decoration as determined by the Landlord), including, but not limited to plate glass windows, doors, door closure devices and other exterior openings; window and door frames, molding, locks and hardware; special storefronts; lighting, heating and air conditioning, including all components of such HVAC system, both those located on the exterior of the Premises and those located within the Premises, plumbing and other electrical, mechanical and electromotive installations, equipment and fixtures; signs, placards, decoration or advertising media of any type; and interior painting of the Premises. Landlord shall not be required to make any repairs to the foundation, exterior walls or the roof by reason of Tenant's acts or omissions to act or the act of any of Tenant's employees, agents, customers or invitees. Tenant shall bear the cost of all maintenance and repairs, and if Tenant fails, after notice in accordance with Article VIII.A.2 hereof, to do any such maintenance and repairs, Landlord may do so and Tenant shall pay to the Landlord upon demand, as Additional Rent hereunder, the cost of all such maintenance and repairs plus interest at the maximum contractual rate which could legally be charged in the event of a loan of such payment to the Tenant under the Laws of the State of Florida; such interest to accrue continuously from the date of payment by Landlord until repayment by Tenant.

2.  **By Landlord:**  Subject to the financial responsibility of Tenant as expressed in Article IV G, Landlord covenants and agrees, at its expense without reimbursement or contribution by Tenant, to keep, maintain and replace, if necessary, (i) the structural systems including, without limitation, the roof, roof membrane roof covering (including interior ceiling if damaged by leakage), load-bearing walls and floor slabs and masonry walls and foundations, (ii) the exterior paint, (iii) the plumbing system, (iv) the electrical system, (v) the utility lines and connections to the Premises, and (vi) the sprinkler mains, if any, in good condition and repair.  Furthermore, Landlord shall be responsible to replace and repair the major parts of the heating, ventilating and air conditioning system (the "HVAC") provided that Tenant maintains such system under a maintenance contract. In the event the Premises become or are out of repair and not in good condition due to either the failure of Landlord to comply with the terms of this Article or a latent defect, then Landlord shall perform or cause to be performed any and all repairs necessary to restore the Premises to a state of

LANDLORD'S INITIALS ____
TENANT'S INITIALS ____

- 8 -

good condition and repair. If such repairs are not completed within ten (10) days after Landlord has received written notice from Tenant of such state of disrepair or if such repairs cannot reasonably be completed within ten (10) day period and Landlord shall fail to commence such repairs within ten (10) days after notice and proceed diligently thereafter then Tenant may either (i) terminate this Lease immediately upon delivery of written notice to Landlord or (ii) prosecute such repairs itself, and apply the cost of such repairs against the next maturing monthly installment or installments of Rent due hereunder. Notwithstanding the foregoing in the case of an emergency (such as without limitation a leaky roof or HVAC breakdown), Tenant shall have the right to immediately prosecute any and all necessary repairs and shall deliver contemporaneous notification to Landlord of the emergency and related repairs, and offset the cost of such repairs against the next maturing monthly installment or installments of Rent due hereunder; provided further that if contemporaneous notice is not practicable, as determined by Tenant in its sole judgment, then Tenant shall provide such notice as soon thereafter as reasonably practicable.

**K. ACCESS:** Landlord shall have the right to place, maintain and repair all utility conduits and equipment of any kind, upon and under the Premises as may be necessary for the servicing of the Premises and other portions of the Complex. Landlord shall also have the right to enter the Premises upon 24 hours prior written notice and during Tenant's normal business hours, except in the event of any emergency, to inspect or to exhibit the same to prospective purchasers and, mortgagees and to make such repairs, additions, alterations or improvements as Landlord may deem desirable. Landlord shall be allowed to take all material into and upon said Premises that may be required therefore without the same constituting an eviction of Tenant in whole or in part and the rents reserved shall not abate while said work is in progress by reason of loss or interruption of Tenant's business or otherwise and Tenant shall have no claim for damages. If Tenant shall not be personally present to permit any entry into said Premises when for any reason an entry therein shall be permissible, Landlord may enter the same by a master key or by the use of force without rendering Landlord liable therefor and without in any manner affecting the obligations of this Lease.

*long as does not substantially repair normal business.*

The provisions of this paragraph shall not be construed to impose upon Landlord any obligation whatsoever for the maintenance or repair of the Premises, the Complex or any part thereof except as otherwise herein specifically provided. During the one hundred eighty (180) days prior to the expiration of the Lease or any renewal term, Landlord may place upon the Common Areas signs indicating that the Premises are available for rent or sale.

**L. EASEMENTS:** Landlord reserves all rights to the air space over and under the Premises and the Complex. The site plan schematically portraying the general layout of the Complex and other improvements shall not be deemed to be a warranty or representation that such plan will not be altered from time to time. Landlord reserves the right to make changes, additions and deletions in and to the site plan and the proposed or completed buildings and common areas. Landlord reserves the right to use Common Areas to accommodate future construction activities in, around, over and under the Complex. The attachment of a site plan to this Lease shall not imply any obligation on the part of Landlord to construct the building as shown thereon nor prohibit a future modification thereof.

**M. IMPROVEMENTS:** The Landlord shall improve or has improved the Premises as set forth in Exhibit "B1" ("Landlords Work"). Any improvements to the Premises other than those set forth in Exhibit "B1" shall be constructed by the Tenant, at the sole cost and expense of the Tenant ("Tenant's Work" - Exhibit "B2"). Before any of Tenant's Work is started, Tenant shall submit for Landlord's approval detailed plans and specifications for all Tenant's Work, which must include the extent such work will require mechanical or electrical installations which will be connected to utilities furnished by Landlord or will affect the interior or exterior appearance of the Premises or its structural, mechanical or electrical components.

Tenant is solely responsible to equip the Premises with any and all trade equipment, lighting fixtures, furniture, operating equipment, furnishings, floor coverings and exterior signs and any other equipment necessary for the operation of Tenant's business. All fixtures installed by Tenant shall be new or completely reconditioned. Should Tenant install a cooling tower or other air conditioning equipment on the roof of the Premises, Tenant shall assume primary responsibility for

LANDLORD'S INITIALS ___
TENANT'S INITIALS ___

- 9 -

the maintenance and repair of the roof and such installation, operation and maintenance shall be made in such manner that the right of Landlord under any roofing bond then in force shall not be affected.   In the event Tenant should penetrate the roofing system, Tenant shall only utilize a roofing company authorized to install or repair Landlord's roofing system.

All improvements, additions or fixtures (other than trade fixtures not permanently affixed to the realty) that may be made or installed on the Premises by either party (including floor coverings, cemented or otherwise affixed to the floor) shall, at the sole option of the Landlord, be the property of the Landlord.

Tenant shall not make any alterations in or additions to the Premises without first obtaining the express written consent of the Landlord, which consent of the Landlord will not be unreasonably withheld or delayed if such alterations do not affect the exterior appearance of the Premises, or its structural, mechanical or electrical components. If alterations become necessary because of the application of laws or ordinances or of the directions, rules or regulations of any regulatory body to the business carried on by the Tenant or because of any act of default on the part of the Tenant or because Tenant has overloaded any electrical or other facility, Tenant shall make all interior, non-structural alterations required at it's own cost and expense after first obtaining Landlord's written approval of plans and specifications, and Tenant's furnishing to Landlord such indemnification against liens, costs, damages and expenses as Landlord may reasonably require. All improvements shall be in accordance with all Federal, State and Local regulations and codes and will not commence prior to obtaining all applicable permits.

Tenant shall not place or suffer to be placed or maintained on any exterior door, roof, wall or window of the Complex or Premises including the storefront or any other part of the Premises visible from any part of the Common Area any sign, awning or canopy, or advertising matter or other thing of kind, and will not place or maintain any decoration, lettering or advertising matter on the glass of any window or door of the Premises without first obtaining the proper approval and permits from the City of Fort Lauderdale, County of Broward.   Tenant further agrees to maintain such sign, awning, canopy, decoration, lettering, advertising matter or other thing as may be approved by Landlord in good condition and repair at all times and to remove the same at the end of the term if requested by Landlord to do so.   Upon removal thereof Tenant agrees to repair any damage to the Premises caused by such installation or removal.

Provided Tenant has fulfilled all of its obligations under the Lease upon expiration of the term of this Lease, Tenant shall have the right to and agrees to promptly remove its personal property, trade fixtures and signs, and, upon Tenant's failure to do so, the said trade fixtures, signs and personal property shall be deemed abandoned by Tenant and shall become the property of the Landlord.   The Landlord shall not be liable for trespass, conversion or negligence by reason of its acts or acts of anyone claiming under it or by reason of the negligence of any person with respect to the acquisition and/or disposition of such property.

Tenant agrees that it will repair any damage done to the Premises by the installation and/or removal of any improvements, additions, fixtures, trade fixtures or signs, or by any other reason and, upon failure of Tenant to do so promptly at the end of the Term, Tenant agrees to pay Landlord any cost incurred by Landlord in making such repairs or affecting such removal.

**N.  CONTROL OF COMMON AREAS AND FACILITIES BY LANDLORD:** All Common Area and Facilities from time to time provided by Landlord, including all automobile parking areas, driveways, entrances and exits thereto, and other facilities furnished by Landlord in or near the Premises, including employee parking areas, loading docks, package pick-up stations, pedestrian sidewalks, ramps, landscaped areas, exterior stairways, elevators, escalators, restrooms and other areas and improvements provided by Landlord for the general use in common of tenants of the Complex, their officers, agents, employees and customers, shall at all times be subject to the exclusive control and management of Landlord, and Landlord shall have the right from time to time; to establish, modify and enforce reasonable rules and regulations with respect to all Common Areas and Facilities.   In addition to the rights of Landlord with respect to the Common Areas and Facilities set forth in this Lease, Landlord shall have the right, but not the obligation, to construct, maintain and operate lighting facilities on all Common Areas and Facilities; to police the same

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

from time to time to change the area, level, location and arrangement of parking areas and other Common Areas and Facilities herein above referred to; to restrict parking by tenants, their officers, agents and employees to employee parking areas; to close all or any portion of the Common Areas and Facilities to such extent as may, in the opinion of Landlord's counsel, be legally sufficient to prevent a dedication thereof or the accrual of any rights to any person or to the public therein; to obstruct or close off any or all of the Common Areas and Facilities for the purpose of maintenance and repair; to close temporarily all or any portion of the parking areas or facilities to discourage non-customer parking; and to do and perform such other acts in and to the Common Areas and Facilities or any part thereof, as Landlord shall determine in its sole discretion. However, Landlord shall not be responsible for any personal injury or property damages sustained by Tenant caused by the negligent or intentional acts of third parties and as more specifically provided for in Article VII. Landlord covenants and agrees that it shall maintain, or cause to be maintained, the Common Areas and Facilities in good order and repair. All Common Area Maintenance costs must be based upon competitive charges for similar services and materials available in the general vicinity of the Complex. Landlord shall have the full right and authority, but not the obligation, to employ all personnel and to make all rules and regulations pertaining to and necessary for the proper operation and maintenance of the Common Areas and Facilities.

Landlord agrees to cause the necessary mains, conduits and other facilities to be provided to make water, sewer, phone and electricity available to the Premises and to make available to Tenant water, sewer, phone and electrical services prior to the Commencement Date at Landlord's expense. Tenant shall be solely responsible for, and promptly pay, all charges for the use and consumption of sewer, electricity, water, phone and all other utility services used within the Premises. If Landlord elects to supply water and/or sewer services to Tenant, Tenant shall reimburse Landlord monthly for Tenant's equitable share (based on consumption) of the cost for such services; provided, however, if any portion of the building is used by a tenant with a higher water requirement than the then existing industrial users, such as a restaurant, laboratory, car wash, then Landlord will install an individual sub-meter on those spaces and such consumption excluded from the calculation of Tenant's equitable share. All charges for utilities will be billed at rates competitive with the public utility. Landlord shall provide a service for collection of refuse and garbage, and Tenant shall pay its proportionate share, provided the cost thereof is competitive with an identical service available to Tenant.

**O. LIENS:** Tenant agrees that it will make a prompt payment when due, of all costs and expenses incurred in carrying out its agreement herein and of all costs and expenses of any repairs, constructions or installations which are the responsibility of Tenant hereunder. Tenant agrees to indemnify and save Landlord harmless from and against any/all liabilities incurred by Tenant including any mechanics, materialmen's, or laborers' liens asserted or claimed against the Premises or any part thereof on account of work, labor or materials used in the Premises or in any improvement or change thereof made at the request of, or upon the order of, or to discharge the obligation of Tenant. Should any mechanic's or other lien be filed against the Premises or any part thereof for any reason whatsoever, Tenant shall cause the same to be cancelled and discharged of record by bond or otherwise within 20 days after the date of such filing. In no event shall anything contained in this paragraph or elsewhere in the Lease be deemed to subject Landlord's interest in the Premises to the lien of any person doing work or furnishing materials at the instance and request of Tenant. Tenant has no authority or power to cause or permit any lien or encumbrance of any kind whatsoever, whether created by act of Tenant, operation of law or otherwise, to attach to or be placed upon Landlord's title or interest in the Premises, any and all liens and encumbrances created by Tenant shall attach to Tenant's interest only.

**P. COMMON AREAS:** In addition to the Premises, Tenant shall have the right to the non-exclusive use, in common with the Landlord and others to whom Landlord may grant similar rights, of automobile parking areas, driveways, malls and footways, and such loading facilities and other facilities as may be located and designated from time to time by Landlord subject to the terms and conditions of this Lease. The Common Areas shall be subject to the exclusive control and management of Landlord and Landlord shall have the right to establish, modify, change and enforce rules and regulations with respect to the Common Areas, and Tenant agrees to abide by and conform with such rules and regulations, provided such rules and regulations do not increase Tenant's obligations or diminish Tenant's rights as established under this Lease. Tenant agrees

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 11 -

that it and its officers and employees will park their automobiles only in such areas as Landlord from time to time designates for employee parking, which areas may be within or without the Complex. Tenant agrees that it will, within ten (10) days after written request therefor by Landlord, furnish Landlord with state automobile license numbers assigned to its cars and of all its employees cars. Tenant shall not park any truck or delivery vehicle in the parking areas, nor permit delivery of merchandise at any place or at any time other than that designated by Landlord. In the event it is deemed necessary to prevent the acquisition of public rights, Landlord may from time to time temporarily close portions of the Common Areas and may erect private boundary markers or take such steps as deemed appropriate for this purpose.  Such actions shall not be considered an eviction or disturbance of Tenant's quiet possession of the Premises.

Notwithstanding anything in this Lease to the contrary, no public telephones, newspaper machines, vending machines or signage shall be affixed by, or on behalf of, Landlord or any other tenant on the exterior walls of the Premises or placed on the sidewalks in front of, or surrounding, the Premises. All garbage and refuse receptacles will be moved and maintained out of the line of sight from the entry to the Premises.

**Q.  DESTRUCTION:**

1.  Partial Damage.  "Partial Damage" means damage or destruction to the building of which the Premises are a part to the extent that the cost of repair is less than fifty percent (50%) of the fair market value of the building immediately prior to such damage or destruction.  If at any time during the Term there is damage which falls within the classification of Partial Damage, Landlord will repair such damage within ten months of the date of such damage, and this Lease shall continue in full force and effect.

2.  Total Destruction.  "Total Destruction" means damage or destruction to the building of which the Premises are a part to the extent that the cost of repair is fifty percent (50%) or more of the fair market value of the building immediately prior to such damage or destruction.  If at any time during the Term there is damage which falls into the classification of Total Destruction, (i) Landlord may, at Landlord's option, repair such damage within ten (10) months of the date of such damage, in which event this Lease shall continue in full force and effect, or (ii) either Landlord or Tenant may terminate this Lease as of the date of such Total Destruction.

3.  Abatement of Rent.  If Landlord repairs or restores the Premises pursuant to the provisions of this Section Q, the rent payable hereunder for the period during which such damage, repair or restoration continues shall be abated in proportion to the degree to which Tenant's use of the Premises is impaired. Except for abatement of rent, if any, Tenant shall have no claim against Landlord as a result of any such damage.  Furthermore, notwithstanding anything above to the contrary, Tenant shall not be entitled to any rent abatement if such damage is in any way caused by Tenant, or its agents or employees.

**R.  CONDEMNATION:**  If title to all of the Premises is taken for any public or quasi-public use by eminent domain or by private purchase in lieu thereof, or if title to so much of the Premises or the Complex is taken so that a reasonable amount of reconstruction thereof will not in Landlord's sole discretion result in the Premises or the Complex being a practical improvement and reasonably suitable for use for the purpose for which they are designed, then, in either event, this Lease shall terminate at the option of either party on the date that title vests in the condemning authority.

If this Lease is terminated under the provisions of this paragraph, Rent shall be apportioned and adjusted as of the date of termination. Tenant shall have no claim against Landlord or against the condemning authority for the value of its leasehold estate or for the value of the unexpired term of the Lease. If there is a partial taking of the Premises or the Complex and this Lease is not thereby terminated under the provisions of this paragraph, then this Lease shall remain in full force and effect, and the Landlord shall, within a reasonable time, thereafter, repair and restore the remaining portion of the Premises, should they be affected, to the extent necessary to render the same suitable for the purposes for which the Premises where leased, and shall repair and reconstruct the remaining portion of the Complex to the extent necessary to make the same a complete

LANDLORD'S INITIALS _____ 
TENANT'S INITIALS _____

- 12 -

architectural unit; provided that such work shall not exceed the scope of the work required to be done by Landlord in originally constructing such Complex or the Premises and the Landlord shall not be required to expend more than the net proceeds of the condemnation award which are paid to Landlord in complying with its obligations hereunder. All compensation awarded or paid upon a total or partial taking of the Premises or the Complex shall belong to and be the property of the Landlord without any participation by Tenant. Nothing herein shall be construed to preclude Tenant from prosecuting any claims directly against the condemning authority for loss of business, damage to, and cost of removal of trade fixtures, furniture and other personal property belonging to Tenant. After any partial taking of the Premises which does not result in the termination of this Lease, the Base Rent and Additional Rent for the remainder of the term of this Lease shall be reduced by the same percentage that the floor area of the space taken bears to the floor area of the Premises.

**S. SUBORDINATION:** Tenant agrees that this Lease shall be subordinate to any mortgages, now or hereafter encumbering the Complex or any part or component thereof, and to all advances made upon the security thereof. This shall be self-operative and no further instrument of subordination shall be required by any mortgage. However, the Tenant, upon request of any party in interest shall execute promptly such instruments or certificates to carry out the intent hereof as shall be required by the Landlord.

Tenant shall, in the event any proceedings are brought for the foreclosure of or in the event of exercise of the power of sale under any mortgage made by the Landlord covering the Premises, or the Complex or any part thereof, in the event of a termination of any lease under which Landlord may hold title, attorn to the purchaser of the encumbered interest or the Landlord as the case may be, and recognize such person as the Landlord under this Lease. Landlord and Tenant agree that notwithstanding that this Lease is expressly subject and subordinate to any mortgages, any mortgagee, its successors and assigns or other holder of a mortgage or a note secured thereby, may sell the Complex in the manner provided in the mortgage and may, at the option of such mortgagee, its successors and assigns or other holder of the mortgage or the note secured thereby make such sale of the Complex subject to this Lease.

If Landlord fails to perform any obligation under this Lease and such failure continues for 30 days after notice from Tenant, then Tenant may, in addition to any other remedies it may have at law or equity, by notice to Landlord: (a) cure the default and offset the cost of such cure against subsequent monthly installment(s) of Rent and other sums due hereunder, (b) Tenant may enforce the provisions of this Lease and may enforce and protect the rights of Tenant hereunder by a suit or suits in equity or at law for the specific performance of any covenant or agreement contained herein, including, but not limited to, the recovery of any damages incurred by Tenant in connection with such default, including, but not limited to, in the event of a termination of this Lease, the unamortized portion of the total cost of construction of Tenant's improvements as determined in accordance with generally accepted accounting principles as shown on the financial statements (or, if no such financial statement exists, then the cost shown on the books) of Tenant or (c) terminate this Lease without liability to Tenant if the failure of Landlord to cure its default shall materially and adversely affect Tenant's quiet use and enjoyment of the Premises.

**T. ASSIGNMENT:** Tenant shall not assign, mortgage or encumber this Lease nor sublet or suffer or permit the Premises or any part thereof to be used by others without the prior written consent of Landlord, which consent may be withheld at Landlord's reasonable discretion, in each instance. If Tenant is a corporation, any transfer, sale or other disposition of the controlling stock of the Tenants shall be deemed an assignment of this Lease provided, however, that if the stock of such corporation is regularly traded on any recognized securities market; the transfer of stock will not be prohibited hereby. If this Lease is assigned or if the Premises or any part thereof is sublet or occupied by anyone other than Tenant whether with or without the written consent of Landlord, Landlord may collect Rent from the assignee, sub-tenant or occupant and apply the net amount collected to the Rents herein reserved, but no assignment, subletting, occupancy or collection shall be deemed a waiver of any covenants or be deemed an acceptance of the assignee, sub-tenant or occupancy, or a release of Tenant from any liability hereunder.

LANDLORD'S INITIALS _____ 
TENANT'S INITIALS _____

If the Landlord's written consent is given to a subletting, the Tenant and any guarantors shall nevertheless remain liable for the performance of all covenants and conditions hereof. If Landlord shall consent to an assignment of this Lease, no further or additional assignments may be made without the prior written consent of the Landlord, at Landlord's sole discretion.

**U. SURRENDER:** Upon the expiration of the term hereof Tenant shall surrender the Premises to Landlord in as good order and condition as they were in at the commencement of the Term (except for ordinary wear and tear) together with all additions, alterations and improvements which may have been made in or to the Premises pursuant to this Lease. Landlord may, at its option, require the Tenant to remove, at or prior to expiration of the term, all such alterations and additions and to restore the Premises to the condition they were in when originally delivered to Tenant, save ordinary wear and tear. In the event Tenant continues to occupy the Premises after the expiration of the Term, without being given or being entitled to a renewal or new lease, such occupancy shall be considered a tenancy from month-to-month at a monthly rental equal to two hundred percent 125% (~~200%~~) of the rent payment due for the last full month of the lease term. This provision shall not give Tenant any right to continue occupancy following the expiration of this Lease, except with the consent of Landlord, which consent may be withheld at Landlord's sole discretion. Tenant shall be liable to Landlord for all damages occasioned by such holding over, including claims by any succeeding Tenant of the Premises for such delay.

## ARTICLE VII. LIABILITY

a. **INDEMNITY:**

   i.   **Tenant:** Tenant will indemnify, defend, and hold Landlord and its officers, employees, agents, directors, shareholders, and partners harmless against any loss, liability, damage, fine or other governmental penalty, cost, or expense (including reasonable attorneys' fees and costs of litigation), or any claim therefor, resulting from: (i) noncompliance with or violation of any Law applicable to Tenant or the Premises or the use and occupancy of the Premises; (ii) the use, generation, storage, treatment, or transportation, or the disposal or other release into the environment, of any "Hazardous Substance" by Tenant or its employees, agents, or contractors during Tenant's use and occupancy of the Premises; and (iii) injury to persons or loss or damage to property to the extent caused by any negligent or wrongful act or omission of Tenant or its employees, agents, invitees, and contractors, but only to the extent the loss or damage is not covered by property and casualty insurance as required to be carried by Tenant pursuant to this Lease. The term "Hazardous Substance" shall mean any waste, substance or material identified in Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as the same may be amended from time to time (herein called "CERCLA"), or determined to be hazardous, toxic, a pollutant or contaminant, under any applicable federal, state or local statute, law, ordinance, rule, regulation or judicial or administrative order or decision, as same may be amended from time to time, including, but not limited to, petroleum and petroleum products. The term "release" shall have the meaning given to such term in Section 101(22) of CERCLA.

   2.   **Landlord:** Landlord will indemnify, defend, and hold Tenant and its officers, employees, agents, directors, shareholders, and partners harmless against any loss, liability, damage, fine or other governmental penalty, cost, or expense (including reasonable attorneys' fees and costs of litigation), or any claim therefor, resulting from: (i) Landlord's noncompliance with or violation of any law applicable to Landlord, but only to the extent that compliance with such law is expressly provided by this Lease to be the responsibility of Landlord, (ii) the use, generation, storage, treatment, or transportation, or the disposal or other release into the environment, of any Hazardous Substance by Landlord or its employees, agents, or contractors, and (iii) injury to persons or loss or damage to property to the extent caused by any negligent or wrongful act or omission of Landlord or its employees, agents, and contractors, but only to the extent the loss or damage would not be covered by property and casualty insurance of the type and amount required to be carried by Tenant pursuant to this Lease (whether or not actually so carried).

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 14 -

3.   **Limitations on Liability:** Notwithstanding anything to the contrary in this Lease, Landlord and Tenant agree that:

(a)   Landlord will not be liable (whether in the event of a Landlord Default or in any other circumstance whatsoever), and Tenant hereby waives and releases all claims, causes of action, or other rights of recovery it may ever have against Landlord for: (i) any negligent or other acts or omissions by parties other than Landlord and its agents; (ii) personal injury to or death of any person resulting from any negligent or other act or omission of Landlord or its employees, agents, or contractors relating to the security of the Property or to Landlord's failure to provide security; (iii) any loss of business or profits of Tenant or other consequential damages; or (iv) exemplary, punitive, or other special damages of any kind.

(b)   Landlord, ~~notwithstanding any~~ <ins>unless due to</ins> negligence on its part, shall not be liable for any loss of or damage to property of Tenant or others by theft or otherwise, nor for any loss or damage whatsoever to any property which Tenant could remove at the end of the Term. Landlord shall not be liable for damage to property or to the interior of the Premises resulting from fire, flood, explosion, falling plaster, gas, electricity, water, rain or snow or leaks from any part of the Premises or from the pipes, appliances, or plumbing works or from the roof, street, or subsurface or from any other place or by dampness or by any other cause of whatsoever nature.

(c)   None of Tenant's or Landlord's officers, employees, agents, directors, shareholders, or partners (the "Released Parties") will ever have any personal liability under or in connection with this Lease, and Tenant and Landlord hereby waives and releases all claims, causes of action, or other rights of recovery it may ever have against the Released Parties under or in connection with this Lease. Tenant agrees to look solely to Landlord's interest in the Property for the recovery of any damages or other sums of money that Landlord may ever owe Tenant under or in connection with this Lease, and Landlord will never be personally liable for payment of any such damages or other sums of money, or any judgment therefor. Landlord agrees to look solely to Tenant for all Rent, damages, and other sums as Tenant may ever owe Landlord under or connection with this Lease.

**B. FORCE MAJEURE:** Both Landlord and Tenant shall be excused for the period of any delay in the performance of any obligations hereunder, except monetary obligations, when prevented from so doing by cause or causes beyond such parties control which shall include, without limitation, all labor disputes, civil commotion, war, war-like operations,  invasion, rebellion, hostilities, military or usurped power, sabotage, governmental regulations or controls, fire or other casualty, inability to obtain any material, services or financing or through acts of God.

**C. INSURANCE PROPERTY, LIABILITY AND OTHER INSURANCE:** Tenant shall maintain at its own cost and expense (with coverage to commence at the time Tenant enters the Premises to install equipment, etc., or at the Commencement Date of the Term of this Lease, whichever occurs earlier):

1.     Tenant agrees to carry Commercial General Liability ("Tenant's Liability Insurance") insurance on the Premises during the Term hereof naming Landlord as an additional insured, with companies reasonably satisfactory to Landlord and giving Landlord and Tenant a minimum of ten (10) days written notice by the insurance company prior to cancellation, termination or change in such insurance. Such insurance shall be for limits of not less than One Million Dollars ($1,000,000.00) combined Bodily Injury and Property Damage Liability.

2.     Tenant further agrees to carry all risk property insurance (hereinafter, "Tenants Property Insurance") covering, fire and extended coverage, vandalism and malicious mischief, sprinkler leakage and all other perils of direct physical loss or damage for at least eighty percent (80%) of the replacement value, all of Tenant's personal property and improvements located on or within the Premises. Tenant shall provide Landlord certificates evidencing that Tenant's Property

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 15 -

Insurance is in full force and effect.  Landlord agrees that it shall not have any right, title or interest in and to Tenant's Property Insurance, or any proceeds therefrom.

3.       Landlord and Tenant, and all parties claiming under them, mutually release and discharge each other from all claims and liabilities arising from, or caused by, any casualty or hazard, covered, or required hereunder to be covered, in whole or in part by insurance on the Premises or the Complex or in connection with property on, or activities conducted on, the Premises or the Complex, and waive any right of subrogation which might otherwise exist in, or accrue to, any person on account thereof.

4.       Tenant shall be responsible for the maintenance of the plate glass in or on the Premises.

In the event Tenant fails to obtain or maintain the insurance required herein, Landlord may obtain same and any cost incurred by Landlord in connection therewith shall be deemed additional rent to be paid by Tenant and is payable as such.

Any insurance procured by Tenant as herein required must be issued by a company licensed to do business in the State of Florida and with a current Best's rating of no lower than "A-VIII" and shall contain endorsements that; (1) such insurance may not be  cancelled or amended without thirty (30) days written notice by registered mail to Landlord by the insurance company; (2) Tenant shall be solely responsible for payment of premiums and Landlord shall not be required to pay any premiums for such insurance; and (3) any liability insurance policies herein required to be procured by Tenant shall contain an express waiver of any right or subrogation by the insurance company against Landlord. The original policy or policies (or true copies of such policy or policies) and certificates of insurance shall be delivered to Landlord prior to delivery of possession of the Premises to Tenant, and thereafter, such original policies (or true copies of such policy or policies) and certificates shall be delivered to Landlord within thirty (30) days prior to the expiration of each such policy.

Tenant shall not stock, use or sell any article or do anything in or about the Premises which may be prohibited by Landlord's insurance policies or any endorsements or forms attached thereto, or which will increase any insurance rates or premiums on the Premises, the building of which they are a part of all other building in the Complex. Tenant shall pay on demand any increase in premiums for Landlord's insurance that may be charged on such insurance carried by Landlord resulting from Tenant's use, occupancy or vacancy of the Premises. A schedule issued by the organization making the fire insurance, extended coverage, vandalism and malicious mischief, special extended coverage or any all-risk insurance rates for said Premises or any rule books issued by the rating organizations or similar bodies or by rating procedures or rules of Landlord's insurance companies shall be conclusive evidence of the several items and charges which make up the insurance rates and premiums on the Premises and the Complex. If, due to the occupancy, abandonment or Tenant's failure to occupy the Premises as herein provided, any insurance shall be cancelled by the insurance carrier, or if the premiums for any such insurance shall be increased, then, in any of such events, Tenant shall indemnify and hold Landlord harmless and shall pay on demand the increased cost of such insurance. Tenant also shall pay in such events any increased premium on the rent insurance that may be carried by Landlord for its protection against rent loss through fire or other casualty.

**D.  INSURANCE - FIRE AND OTHER INSURANCE:**  [NOTE: repeats Article IV.F, modify to extent provisions are not duplicative]

**E.    INSURANCE - MANNER OF PAYMENT OF INSURANCE PREMIUMS BY TENANT:** The Proportionate Share of insurance premiums payable by Tenant pursuant to the foregoing provision of this Lease may, at the option of Landlord, be estimated by Landlord for such period in advance as Landlord may determine not exceeding one (1) year, and Tenant agrees, upon the request of the Landlord, to deposit with Landlord such amounts in monthly installments in advance on the first day of each calendar month during such period, such installments to be in addition to all other payments of Rent provided for in this Lease. At the end of the period for which such estimated payments have been made, Tenant shall be advised of the actual amount required to

LANDLORD'S INITIALS
TENANT'S INITIALS

- 16 -

be paid under the foregoing provision of this Lease and if necessary an adjustment shall be made between the parties. If Tenant's deposit is in excess of such actual amount, the excess shall be refunded by Landlord within a reasonable period of time, not to exceed 30 days. If the amount Tenant shall have deposited is less than such actual amount, Tenant agrees to pay  such extra amount with the next Rent payment due, or if no further  Rent payments are due then forthwith upon demand therefor by Landlord.

## ARTICLE VIII. PERFORMANCE

**A.  DEFAULT:**  The following events shall be deemed to be events of default by Tenant under this Lease: If

    1.  Tenant shall fail to pay any installment of Rent and Additional Rent hereby reserved and such failure shall continue for a period of three (3) days after notice or demand.

    2.  Tenant shall fail to comply with any term, provision or covenant of this Lease, other than payment of Rent and shall not cure such failure within thirty (30) days after written notice thereof to Tenant (or, if such non-monetary default cannot reasonably be cured within such thirty (30) day period, then during such additional time as may be reasonably necessary to cure such default so long as Tenant is diligently proceeding to obtain such cure).

    3.  Tenant or Guarantor shall become insolvent or shall make a transfer in fraud of creditors or shall make an assignment for the benefit of creditors.

    4.  Tenant or Guarantor shall file a petition under any section or chapter of the National Bankruptcy Act, as amended, or under any similar law or statute of the United States or any State thereof, or there shall be filed against Tenant a petition in bankruptcy or insolvency or a similar proceeding and any such proceedings shall not have been dismissed within thirty (30) days after its commencement, or Tenant shall be adjudged bankrupt or insolvent in proceeding filed against Tenant thereunder.

    5.  A receiver or Trustee shall be appointed for the Premises or for all or substantially all the assets of Tenant.

    6.  Tenant shall do or permit to be done anything which creates a lien upon the Premises, or the Complex or any portion thereof.

**B.  REMEDIES:**  Upon the occurrence of any such events of default, Landlord shall have the option, without any notice or demand whatsoever to pursue any one or more of the following described remedies in addition to all other rights and remedies provided at law or in equity or provided elsewhere herein:

    1.  Landlord may terminate this Lease and the term created hereby, in which event Landlord may forthwith repossess the Premises and be entitled to recover forthwith as damages all remaining sums due under this Lease which may be accelerated by Landlord and be deemed to be due Landlord upon Tenant's default; or ~~use reasonable efforts~~

    2.  Landlord may terminate Tenant's right of possession and may repossess the Premises by forcible entry and detainer suit, by taking peaceful possession or otherwise, without terminating this Lease, in which event Landlord may ~~but shall be under no obligation~~ to relet the same for the account of Tenant, for such rent and upon such terms as shall be satisfactory to Landlord. For the purpose of such reletting, Landlord is authorized to make any repairs. If Landlord shall fail to relet the Premises, Tenant shall pay to Landlord as damages a sum equal to the amount of the rent reserved in this Lease for the balance of its term. If the Premises are relet and a sufficient sum shall not be realized from such reletting after paying all of the costs and expenses of repairs and the expenses of such reletting and of the collection of the rent accruing therefrom to satisfy the rent provided for in this Lease, Tenant shall satisfy and pay any such deficiency upon demand therefor from time to time. Tenant agrees that Landlord may file suit to recover any sums falling due under the terms of this Section from time to time and that no suit or recovery of any portion due Landlord



LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

hereunder shall be any defense to any subsequent action brought for any amount not theretofore reduced to judgment in favor of Landlord.

**C. NO WAIVER:** Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any Rent due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any of the terms, provisions and covenants herein contained. No action taken by or on behalf of Landlord shall be construed to be an acceptance or a surrender of this Lease. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. In determining the amount of loss or damage which Landlord may suffer by reason of termination of this Lease or the deficiency arising by reason of any reletting of the Premises by Landlord as above provided, allowance shall be made for the expense of repossession, any repairs undertaken by Landlord following repossession and brokerage commissions. Tenant agrees to pay to Landlord all costs and expenses incurred by Landlord in the enforcement of this Lease, including all reasonable fees of Landlord's attorneys when such attorneys are employed by Landlord to effect collection of any sums due hereunder or to enforce any right or remedy of Landlord, regardless of whether the attorney's fees and costs are incurred prior to filing suit, subsequent to filing suit, during trial or on appeal.

The failure of the Landlord to insist, in any one or more instances upon strict performance of any of the covenants or agreements in this Lease, or to exercise any option herein contained, shall not be construed as a waiver or a relinquishment for the future of such covenant, agreement or option, but the same shall continue and remain in full force and effect. The receipt by Landlord of Rent, with knowledge of the breach of any covenant or agreement thereof, shall not be deemed a waiver of such breach and no waiver by the Landlord of any provision hereto shall be deemed to have been made unless expressed in writing and signed by Landlord.

**D. RIGHT TO CURE:** If Tenant defaults under this Lease, Landlord may, at its option, immediately or at any time thereafter, without waiving any claim for breach of agreement and without notice to Tenant, cure such default for the account of Tenant. If Landlord shall institute an action or summary proceeding against Tenant based upon such default, or if the Landlord shall cure such default or defaults for the account of Tenant, then the Tenant will pay all costs and expenses incurred by Landlord in curing such default, including reasonable attorney's fees, at the trial and appellate levels which sums, together with interest, at the highest rate allowable by law, shall be due and payable upon demand, and shall be deemed to be Additional Rent. Landlord shall not be responsible to Tenant for any loss or damage resulting in any manner by reason of its undertaking any acts in accordance with the provisions of this Lease.

**E. TIME OF ESSENCE:** Time is of the essence of this Lease and each and every provision hereof.

**F. NOTICES:** All notices required by law and by this Lease to be given to Tenant may be given by any one of the following methods:

    1. By personal delivery, addressed to Tenant, at the Leased Premises;

    2. By mailing same, certified mail, return receipt requested, addressed to the Tenant, in care of the Lease Premises; or

    3. Such other address as the Tenant may designate in writing to Landlord.

All notices given to the Landlord shall be by personal delivery or certified mail, return receipt requested, directed to Landlord at the address set out in Article I hereof, or such other address as the Landlord may designate, in writing, to the Tenant.

All notices transmitted by mail shall be effective one business day after the date of the deposit of same in the U.S. Post Office with the required postage affixed to the transmittal

LANDLORD'S INITIALS 
TENANT'S INITIALS

- 18 -

envelope. All notices by personal delivery at the Leased Premises shall be effective as of the date and time of delivery.

**G.  SUBMISSION OF LEASE:**  Submission of this Lease for examination does not constitute an option for the Premises and becomes effective as a lease only upon execution and delivery thereof by Landlord to Tenant. If any provisions contained in a rider are inconsistent with the printed provision of this Lease, the provision contained in said rider shall supersede said printed provision. The captions, numbers and index appearing herein are inserted only as a matter of convenience and are not intended to define, limit, construe or describe the scope or intent of any paragraph, nor in any way affect this Lease.

**H.  RECORDING:**  Tenant shall not record this Lease or a memorandum thereof without the written consent of Landlord.

**I.  PARTIAL INVALIDITY:**  If any provision of this Lease or application thereof to any person or circumstance to any extent be invalid, the remainder of this Lease or the application of such provision to persons or circumstances other than those as to which it  is held invalid shall not be affected thereby and each provision of  this Lease shall be valid and enforced to the fullest extent permitted by law.

**J.  BROKER'S COMMISSION:**  Tenant represents and warrants that there are no claims for brokerage commissions or finder's fees in connection with the execution of this Lease.  Tenant agrees to indemnify Landlord against and hold it harmless from all liabilities arising from any such claims, including reasonable attorney's fees at the trial and appellate levels.

**K.  INTERPRETATION:**  The covenants and agreements herein contained shall bind and the benefits and advantages hereof shall inure to the respective heirs, legal representatives, successors and assigns of the parties hereto. Whenever used, the singular number shall include the plural, the plural shall include the singular and the use of any gender shall include all genders. This Lease may not be changed orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification or discharge is sought. The marginal notes and headings of this Lease are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of intent or otherwise affect in any way this Lease. This agreement shall create the relationship of Landlord and Tenant between the parties hereto. No estate shall pass out of Landlord. Tenant shall have only an interest not subject to levy and sale and not subject to assignment except in accordance with the provisions hereof.   Should any of the printed provisions of this Lease require judicial interpretation, it is agreed that the court interpreting or construing the same shall not apply a presumption that the terms of any such printed provision shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who itself or through its agent prepared the same it being agreed that the agents of all parties have participated in the preparation of this Lease and that all terms were negotiable.

**L.  ENTIRE AGREEMENT:**  Notwithstanding anything herein contained or contained in any other writings concerning the Premises by either of the parties hereto, the parties hereto agreeing hereby that all such other writings are hereby superseded and/or merged into this Lease which shall be the entire agreement of the parties concerning said Premises.  This Lease shall not become binding as such upon Landlord unless all preliminary conditions required to be performed by Tenant are so performed.  Tenant acknowledges that Landlord makes no representations as to its ability to build or Tenant's ability to conduct the business intended to be conducted on the Premises under said zoning laws and the rules and regulations of said public authority having jurisdiction.

Tenant acknowledges that Landlord (including Landlord's agents and employees) has not made any statement, promise or agreement or taken upon itself any engagement whatsoever, verbally or in writing, in conflict with the terms of this Lease, or that in any way modifies, varies, alters, enlarges or invalidates any of its provisions and that no obligation of the Landlord shall be implied in addition to the obligations herein expressed.



LANDLORD'S INITIALS
TENANT'S INITIALS

## ARTICLE IX. HAZARDOUS WASTES

**A.** Tenant shall not bring upon the Premises or any of the Complex and shall not deposit on or in the Premises or Complex any (i) Polychlorinated Biphenyls (PCB's); (ii) wastes or materials which would qualify as hazardous wastes under the Resource Conservation Recovery Act, Federal Water Pollution Control Act, National Environmental Policy Act or under any statute, law, ordinance or code of the federal, state, county, city or other governmental or quasi-governmental subdivision having jurisdiction of the Complex or any rules, regulation or directives thereof; or (iii) hazardous substances as defined in the Comprehensive Environmental Response Compensation and Liability Act or rules, regulations, or directives adopted thereunder, except in each case in quantities and concentrations routinely occurring in nature (cumulatively "Hazardous Wastes")

**B.** In the event Tenant breaches any of its representations, warranties, or covenants and agreements contained in this paragraph, then such breach shall be deemed a default under this Lease and Landlord shall have all rights and remedies available to it, including, but not limited to, the right to terminate this Lease or initiate a clean-up of the Premises, in which case Landlord shall be reimbursed by Tenant for, and indemnified by Tenant from, any and all costs, expenses, losses, and liabilities incurred in connection with such clean-up of the Premises (including all reasonable attorneys' and paralegal's fees at trial and all appellate levels and other engineering and consultant fees). In the alternative, Landlord may require Tenant to clean-up the Premises and to fully indemnify and hold Landlord harmless from any and all losses, liabilities, expenses (including, but not limited to, reasonable attorneys' and paralegal's fees at trial and all appellate levels and other engineering and consultant fees), and costs incurred by Landlord in connection with Tenant's clean-up action. Notwithstanding anything herein, Tenant agrees to pay, and shall indemnify Landlord from and against, any and all losses, claims, liabilities, costs, and expenses (including reasonable attorneys' and paralegal's fees at trial and all appellate levels and other engineering and consultant fees) incurred by Landlord as a result of any breach by Tenant of this paragraph, and/or as a result of any contamination of the Premises due to Tenant's use of hazardous or toxic substances on the Premises. This paragraph shall survive the termination or expiration of this Lease.

~~**C.** Tenant shall test the condition of the Premises for the presence of Hazardous Wastes no later than 180 days before expiration of this Lease, and shall furnish Landlord with copies of all environmental reports and analytical data resulting therefrom. The purpose of this testing is to establish the environmental condition of the Premises as of the expiration or termination of this Lease. If Landlord determines from the data that the environmental condition of the Premises shows the presence of Hazardous Wastes that may require Corrective Action as provided herein, Tenant shall undertake the Corrective Action.~~

**D. CORRECTIVE ACTION** means investigation, active remediation, passive remediation, or monitoring or any combination of these activities. Any Corrective Action performed by Tenant will be performed in accordance with applicable regulatory requirements. Tenant shall perform the Corrective Action before the expiration or termination of this Lease.

**E. TENANT'S INDEMNIFICATION** In addition to the indemnity provided for in Article VII, Section A., Tenant shall defend, indemnify, pay, and reimburse Landlord for all claims, expenses (including reasonable attorneys' fees), losses, and liabilities arising from:

    1. any third party claims relating to contamination that arises out of Tenant's use of the Premises;

    2. any costs of Corrective Action ordered after expiration of this Lease by any governmental authority having jurisdiction over the matter that arose out of Tenant's use of the Premises; and

    3. any damages or any contamination caused by Tenant's access to and use of the Premises for Corrective Action.

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

*New for one (1) year. JM*

**F.   SURVIVAL** The terms and provisions of this Article IX will survive the expiration or termination of this Lease. The Tenant agrees to execute any documents, in recordable form, necessary to evidence each party's release and indemnification commitments under this Article IX.

## ARTICLE X. RULES AND REGULATIONS

**A. RULES AND REGULATIONS:** Tenant agrees to observe and comply, and agrees to use its best efforts to control its agents and employees to comply, with the Rules and Regulations and such other and further Rules and Regulations as Landlord may from time to time deem needful and prescribe for the reputation, safety, care and cleanliness of the Complex and the preservation of good order therein and the comfort, quiet, and convenience of other occupants of the Complex, which Rules and Regulations shall be deemed terms and conditions of this Lease. Landlord shall not be liable to Tenant for the violation of any of the said Rules and Regulations by any other Tenant or person. The current Rules and Regulations are attached hereto as Exhibit "F".

## ARTICLE XI. MISCELLANEOUS

**A. GOVERNING LAW:** This Lease shall be construed in accordance with and governed by the Laws of the State of Florida.

**B. MERCHANT'S ASSOCIATION:** Intentionally deleted.

**C. PLUMBING FACILITIES:** The plumbing facilities in the Leased Premises shall not be used for any other purpose than that for which they are intended, and no foreign substances of any kind shall be placed or thrown therein; the expense of any breakage, stoppage or damage resulting from a violation of this provision shall be borne by Tenant.

**D. EXCLUSIVITY:** Landlord covenants and agrees that, during the Term, Tenant shall have the exclusive right (hereinafter, "Tenant's Exclusive Right") in the Complex (or any property contiguous or adjacent to the Complex), owned or leased by Landlord (or any affiliate of Landlord), or in which Landlord (or any affiliate of Landlord) has an interest, directly or indirectly, to sell furniture, mattresses, or both (hereinafter, collectively "Tenant's Exclusive Items"); provided, however, Tenant's Exclusive Items do not include outdoor patio furniture This covenant and Tenant's Exclusive Right shall run with the land on which the Complex is located and on any property contiguous or adjacent to the Complex owned or leased by Landlord (or any affiliate of Landlord), or in which Landlord (or any affiliate of Landlord) has an interest, directly or indirectly, during the Term of this Lease. Landlord agrees to enforce Tenant's Exclusive Right against other tenants in the Complex using all reasonable legal means. This Article XI.D shall not apply to DMI Broward LLC (the "Existing Tenants") which has written and executed leases with Landlord as of the date hereof; however, to the extent Landlord has control over any change in use by such Existing Tenants or the consent to any assignment, transfer, or subletting of any Existing Tenants, then Landlord shall exercise such control to the extent possible in order to prevent a violation of the use restrictions set forth in this Article XI.D.

**E. WAIVERS:** The waiver by Landlord of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of Rent hereunder by Landlord shall not be deemed to be a waiver or any preceding breach by Tenant of any term, covenant or condition of this Lease, other than the failure of Tenant to pay the particular rental so accepted, regardless of Landlord's knowledge of such preceding `breach at the time of acceptance of such Rent. No covenant, term or condition of this Lease shall be deemed to have such waiver be in writing by been waived by Landlord, unless Landlord.

**F. ESTOPPEL CERTIFICATE:** The Tenant agrees from time to time, upon not more than 20 days prior request by Landlord that the Tenant, or Tenant's duly authorized representative having knowledge of the following facts, will delivery to Landlord a statement in writing certifying:

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 21 -

1.  That this Lease is unmodified and in full force and effect (or if there have been modifications, that the Lease as modified is in full force and effect);

2.  The date on which Tenant began paying rent and that no rent has been paid in advance;

3.  That neither the Tenant nor the Landlord is in default under any provision of the Lease, or, if in default, the nature thereof in detail;

4.  That Tenant has no existing defenses or offsets to the enforcement of the Lease, or if any, specifying same;

5.  Provided the Commencement Date has occurred, the Tenant has accepted and occupied the Premises, and that the Premises have been completed in accordance with the terms hereof.

6.  Any additional information reasonably requested by Landlord.

It is intended that any such statement may be relied upon by any prospective purchaser, mortgagee, or assignee of any mortgagee, or prospective mortgagee, or any prospective assignee of any mortgagee, affecting the Premises. Tenant shall execute and deliver whatever instruments may be required for such purposes, and in the event Tenant fails to do so within 20 days after demand in writing, then Tenant shall be considered in default under this Lease.

**G. BINDING EFFECT:** The terms, provisions and covenants contained in this Lease shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors-in-interest and legal representatives except as otherwise expressly provided herein.

**H. RADON GAS:** In 1988, the Florida legislature passed a provision that requires the following notification to be provided on at least one document, form or application executed at the time of or prior to the Contract for Sale and Purchase of any building or execution of a rental agreement for any building:

> "RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit."

**I. WAIVER OF TRIAL BY JURY.** It is mutually agreed by and between Landlord and Tenant that the respective parties hereto shall and hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matter arising out of or in any way connected with this Lease.

**J. SECURITY MEASURES.** Tenant hereby acknowledges that the rental payable to Landlord hereunder does not include the cost of guard service or other security measures, and that Landlord shall have no obligation whatsoever to provide same. Tenant assumes all responsibility for the protection of Tenant, its employees, agents and invitees from acts of third parties.

**K. AUTHORITY.** If Tenant is a corporation, trust or general or limited partnership, each individual executing this Lease on behalf of such entity represents and warrants that he or she is duly authorized to execute and deliver this Lease on behalf of said entity. If Tenant is a corporation, trust or partnership, tenant shall, prior to or simultaneous with execution of this Lease, deliver to Landlord evidence of such authority satisfactory to Landlord.

**L. LIMITATION OF LANDLORD'S LIABILITY.** The obligations of Landlord under this Lease do not constitute personal obligations of Landlord or the individual partners, shareholders, directors, officers, employees or agents of Landlord, and Tenant shall look solely to Landlord's then existing interest in the Premises and Complex, and to no other assets of Landlord, for satisfaction of any liability in respect of this Lease, and will not seek recourse against the

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 22 -

individual partners, shareholders, directors, officers, employees, property managers or agents of Landlord or any of their personal assets for such satisfaction.

**M. LANDLORD DEFAULT.** If Landlord fails to perform any obligation under this Lease and such failure continues for 30 days after notice from Tenant, or such longer period of time as may be reasonably necessary to cure the default provided Landlord commences to cure the default within such 30-day period and thereafter diligently pursues to completion the cure of said default, then Tenant may, in addition to any other remedies it may have at law or equity, by notice to Landlord: (a) cure the default and offset the cost of such cure against subsequent monthly installment(s) of Rent and other sums due hereunder, (b) Tenant may enforce the provisions of this Lease and may enforce and protect the rights of Tenant hereunder by a suit or suits in equity or at law for the specific performance of any covenant or agreement contained herein, or (c) terminate this Lease without liability to Tenant if the failure of Landlord to cure its default shall materially and adversely affect Tenant's quiet use and enjoyment of the Premises.

**N. PROHIBITED USES IN COMPLEX.** Tenant has entered into this Lease in reliance upon representations by Landlord that the Complex is, and will remain, retail in character and, further, that no part of the Complex shall be used for (i) a theater, (ii) an auditorium, meeting hall, or other place of public assembly, (iii) a bar, (iv) an off-track betting business, (v) a billiard or pool hall, (vi) for bingo or similar games of chance, (vii) a massage parlor, (viii) a game arcade, (ix) a bowling alley, (x) a skating rink, (xi) a car wash, car repair or car rental agency, (xii) a night club, or (xiv) an adult book or adult video tape store (which are defined as stores in which any portion of the inventory is not available for sale or rental to children under 18 years old because such inventory explicitly deals with or depicts human sexuality).

**O. WAIVER OF LANDLORD'S LIEN.** Landlord hereby waives any contractual, statutory or other Landlord's lien on Tenant's furniture, fixtures, supplies, equipment and inventory.

**P. PERMITS AND APPROVALS.** If Tenant, using reasonably diligent efforts, is unable to secure all required licenses, permits and approvals from applicable governmental authorities necessary for it to perform Tenant's improvements and operate its business in the Premises (the "Permits"), then Tenant may terminate this Lease upon written notice to Landlord. Upon Tenant opening for business to the public, this condition will be deemed satisfied and Tenant's right to terminate the Lease pursuant to this Article XI.P will expire.

**Q. TENANT'S CONDUCT.** Notwithstanding anything herein to the contrary, nothing herein shall be construed as an obligation for Tenant to open or operate its business in the Premises. Tenant shall have the right to remove its property and cease operations in the Premises at any time and at Tenant's sole discretion. However, the right to cease to operate its business shall not affect Tenant's obligation to pay all amounts due hereunder and to perform all covenants and obligations hereunder.

*[The remainder of this page intentionally left blank]*

LANDLORD'S INITIALS 
TENANT'S INITIALS

IN WITNESS WHEREOF, this Lease has been duly executed by the parties hereto, under seal, as of the day and year first above.

Signed, sealed and delivered
in the presence of:

LANDLORD:

By: _____

Print Name: _Lianne Day_

Print Name: CHARLES A URSO

Print Name: _JEFFREY POWTIOUX_

Date: _1/23/2014_

Signed, sealed and delivered
in the presence of:

TENANT: _____ PRESIDENT   AMERICAN FREILA OF SOUTH FLDRA LLC.

By: _____

Print Name: _Chuck Tenajaul_

Print Name: STEVE BELFORD

Print Name: _Susan L Beltram_

Date: _1/28/14_

(PLACE CORPORATE SEAL HERE)

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 24 -

EXHIBIT "A"

SITE PLAN

LANDLORD'S INITIALS ___
TENANT'S INITIALS ___

## EXHIBIT "A-2"

### FLOOR PLAN - BAY CONFIGURATION

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

## EXHIBIT "B-1"

### LANDLORD'S WORK

Lease dated February 1, 2014 between Marble of the World, Inc., as Landlord, and American Freight of South Florida, LLC, as Tenant:

*Landlord will customize bathroom(s) to Tenants satisfaction.*
*Landlord will repair/restore all overhead doors and man doors.*

On the Lease Commencement Date the Premises are being delivered to Tenant in "as is" condition.

All improvements shall be performed by Tenant, at Tenant's sole cost and expense, in accordance with Lease EXHIBIT "B-2" - Tenant's Work.

Signed, sealed and delivered
in the presence of:

LANDLORD:

By: _____

Print Name: _Liane Day_

Print Name: CHARLES A URSO

Print Name: _JEFFREY PONTIOUS_

Date: 1/23/2014

Signed, sealed and delivered
in the presence of:

TENANT: _____ PRESIDENT   AMERICAN FREIGHT OF SOUTH FLORIDA LLC.

By: _____

Print Name: _PAUL JENNINGS_

Print Name: STEVE BELFORD

Print Name: _Susan L Belham_

Date: 1/28/14

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 27 -

## EXHIBIT "B-2"

## TENANT'S WORK

Lease dated February 1, 2014 between: between: Marble of the World, Inc., as Landlord, and American Freight of South Florida, LLC, as Tenant:

Unless specified otherwise in this Lease, all Tenant improvements shall be performed by Tenant at Tenant's sole cost and expense.

Tenant's construction of improvements in and about the Premises shall be subject to Lease Article VI, Section M, and the following conditions:

A. Prior to commencement of Tenant's Work:

(1) Tenant shall submit for Landlord's approval detailed plans and specifications for all Tenant's Work, which must include the extent such work will require mechanical or electrical installations which will be connected to utilities furnished by Landlord or will affect the interior or exterior appearance of the Premises or its structural, mechanical or electrical components.

(2) Contractor must provide Landlord with a Certificate of Insurance, naming Landlord as an additional insured, with minimum limits and coverage equivalent to that specified to be carried by the Tenant under Lease Article VII, Section C. All contractor's employed by Tenant must be reasonably acceptable to Landlord.

B. Tenant shall give Landlord, not less than five (5) days prior to commencement of construction, the following: (i) a description and schedule for the work to be performed; (ii) the names and addresses of all contractors, subcontractors and material suppliers; (iii) copies of all licenses and permits required in connection with the performance of the work; and (iv) certificates of insurance from all employed in pursuit of the work naming Landlord and Architect as additional insured and with policy limits, and instruments of indemnification against all claims, costs, expenses, damages, suits, fines, penalties, actions, causes of action and liabilities which may arise in connection with such work.

All the foregoing shall be subject to Landlord's approval.

C. Landlord will not be liable for any injury to person or damage to property of Tenant, or of Tenant's employees, agents, contractors, workers, mechanics, suppliers, licensees or invitees, from any cause whatsoever occurring upon or about the Premises, and Tenant will indemnify and save Landlord harmless from any and all liability and claims arising out of or connected with any such injury or damage except for the active negligence or misconduct of Landlord or its agent.

D. Tenant agrees that it is liable to Landlord for any damage to the Premises or any portion of the work in or out of the Premises caused by Tenant or any of Tenant's employees, agents, contractors, workers, mechanics, suppliers, licensees or invitees.

E. Tenant shall be responsible for the lien-free completion of all work in a workmanlike manner in accordance with the plans and specifications approved by Landlord and all applicable laws, regulations and ordinances. Tenant shall promptly pay to Tenant's contractors, when due, the cost of all such work.

F. Quality of Improvements: All of the work to be performed by Tenant shall be done in a workmanlike manner, supervised by a registered architect or Florida licensed general contractor, and shall be in compliance with all governmental rules, orders, licenses, zoning and building requirements applicable thereto. All materials shall be new and of first-class quality. Promptly after the completion of the work in and about Tenant's leased Premises, Tenant shall clear the Premises, inside and outside, of all material and debris and put the sidewalks and adjoining areas in good condition and repair.

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 28 -

G.  Upon completion of the construction, Tenant shall deliver to Landlord evidence of payment, contractor's affidavits and full and final waivers of all liens for labor, services and materials. Tenant shall defend and hold Landlord and the Premises harmless from all costs, damages, liens and expenses related to such work.

H.  Tenant shall deliver to Landlord a copy of the Certificate of Occupancy (C.O.) for the Premises, covering all work performed on behalf of Tenant along with a set of drawings generated and filed with the local authority for purposes of obtaining permits and the C.O.

I.  If Tenant shall take possession of any parts of the Premises prior to the Commencement Date, (which Tenant may not do without Landlord's prior written consent), all of the covenants and conditions of this Lease shall be binding upon the parties hereto with respect to such part of the Premises; the same as if the Commencement Date had been fixed as of the date when the Tenant entered such possession and Tenant shall pay to Landlord Rent for the period of such occupancy. Under no circumstances shall the occurrence of any of the events hereunder referred to be deemed to accelerate or defer the Termination Date.

**TENANT AGREES TO PERFORM ALL WORK AT TENANT'S EXPENSE IN ACCORDANCE WITH EXHIBIT "B-2".**

Signed, sealed and delivered
in the presence of:

LANDLORD:

By: _____

Print Name: Gianna Day

Print Name: CHARLES AURSO

Print Name: JEFFREY PONTIOUS

Date: 1/23/2014

Signed, sealed and delivered
in the presence of:

TENANT: AMERICAN FREIGHT OF SOUTH FLORIDA LLC.

By: _____ PRESIDENT

Print Name: _____ JUANA 61

Print Name: STEVE BELFORD

Print Name: Susan L Beltram

Date: 1/28/14

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

EXHIBIT "C"

DATES

Addendum to Lease dated ___*1/28/14*___ between: between: Marble of the World, Inc., as Landlord, and American Freight of South Florida, LLC,, as Tenant:

Pursuant to Article III, Section B of the above-referenced Lease, Landlord and Tenant hereby acknowledge and agree, each to the other, that:

The Lease Term has commenced or shall commence on February 1, 2014__;("Lease Commencement Date");

The Rent has commenced or shall commence on February 1, 2014 ("Rent Commencement Date)

The Lease Term shall expire on January 31, 2024, a date which is 10 years and 0 months from the "Lease Commencement Date"); and;

Tenant is in possession of the Premises and is paying the Rent and all other charges hereunder, and that Tenant has no claim, defenses, set-off or counterclaims against Landlord.

Signed, sealed and delivered
in the presence of:

LANDLORD:

By: _____

Print Name: *Liann Day*

Print Name: CHARLES A URSO·

Print Name: *JEFFREY PONITIOUS*

Date: 1/23/2014·

Signed, sealed and delivered
in the presence of:

TENANT: *AMERICAN FREIGHT OF SOUTH FLORIDA LLC.*

By: _____ *PRESIDENT*

Print Name: *CHOCK TSUNAMI*

Print Name: STEVE BELFORD

Print Name: *Susan L Beibaum*

Date: 1/28/14

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 30 -

EXHIBIT "D"

SIGN SPECIFICATIONS

Lease dated February 1, 2014 between: between: Marble of the World, Inc., as Landlord, and American Freight of South Florida, LLC, as Tenant:

*5B*

*Except for existing signage, which Landlord acknowledged and approves,*
It is hereby understood and agreed upon by Landlord and Tenant that Tenant shall submit to Landlord, for approval at Landlord's sole discretion, Tenant's written plans for signage at the Premises. All permitted signage shall be in accordance with applicable governmental codes and/or restrictions and work performed in accordance with requirements as set forth in Lease EXHIBIT "B-2" - Tenant's Work.

Signed, sealed and delivered
in the presence of:

LANDLORD:

By: _____

Print Name: _Lianne Day_

Print Name: _CHARLES A URSO_

Print Name: _JEFFREY PONTIOUS_

Date: _1/23/2014_

Signed, sealed and delivered
in the presence of:

TENANT:    AMERICAN FREIGHT
OF SOUTH FLORIDA LLC.

By: _____    PRESIDENT

Print Name: _STEVE BELFORD_

Print Name: _CHUCK Jennings_

Print Name: _Diana L. Bettтом_

Date: _1/28/14_

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 31 -

## EXHIBIT "E"

### SPECIAL PROVISIONS

Lease dated February 1, 2014 between: between: Marble of the World, Inc., as Landlord, and American Freight of South Florida, LLC, as Tenant:

The following terms and conditions are understood and agreed upon between the Landlord and Tenant as a part of the Lease:

NONE

Signed, sealed and delivered
in the presence of:

LANDLORD:

By: _____

Print Name: _CIanae Clay_

Print Name: CHARLES A URSO

Print Name: _JEFFREY PONTIOUS_

Date: 1/23/2014

Signed, sealed and delivered
in the presence of:

TENANT: AMERICAN FREIGHT OF SOUTH FLORIDA LLC.

By: _____ PRESIDENT

Print Name: _CHUCK BONILLA_

Print Name: STEVE BELFORD

Print Name: _Susan L. Bo Hram_

Date: 1/28/14

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 32 -

## EXHIBIT "F"

### RULES AND REGULATIONS

Lease dated February 1, 2014 between: between: Marble of the World, Inc., as Landlord, and American Freight of South Florida, LLC, as Tenant:

**A. GARBAGE, REFUSE AND SANITATION:** All garbage and refuse shall be deposited in secure garbage bags and/or containers as shall be approved by Landlord, in Landlord's sole discretion, which bags and/or containers shall not allow for any seepage or spillage, and, the same shall be placed outside of the Premises prepared for collection in the manner and at the times and places specified by Landlord. Landlord shall designate a service for picking up refuse and garbage. Tenant shall use the same and pay the cost thereof as reasonably determined by the Landlord as part of the Common Area Maintenance. Tenant shall not burn any trash or garbage of any kind, in or about the Premises and the Property. Failure of Tenant to specifically comply with the terms and provisions of this paragraph within one (1) day after notice from Landlord of a violation of this paragraph, shall be and constitute an Event of Default under the Lease, entitling Landlord to exercise all rights, remedies and privileges provided to Landlord in the event of a default by Tenant under the Lease.

**B. RADIO AND TELEVISION ANTENNAE:** No exterior antennas, electric wires, telegraph call boxes or any other electric equipment or apparatus shall be erected or installed on Premises without, in each instance, the prior written consent of Landlord. Any antennae so installed without such written consent shall be subject to removal without notice at any time, at the cost of Tenant.

**C. ADJACENT AREAS:** Intentionally Omitted.

**D. PARKING:** Tenant shall have the non-exclusive use of any non-assigned parking space, however, Landlord reserves the right to assign parking spaces on the basis of square footage occupied. In the event that spaces are assigned for Tenant or its employees and Tenant or its employees fail to park their motor vehicles in designated employee parking areas as aforesaid, then upon prior written notice not to be required by Tenant nor given by Landlord more than twice in any calendar year, Landlord at its option shall be entitled to tow the vehicle at the cost and expense of such vehicle owner, any vehicle parked in any area other than those designated as employee parking areas.

**E. WINDOWS AND PROJECTIONS:** Nothing shall be affixed to or projected beyond the outside of the Building by Tenant without the prior written consent of Landlord, in the sole and absolute discretion of Landlord. If Tenant desires and Landlord permits blinds, shades or other form of outside or inside window coverings, they shall be furnished and installed at the expense of Tenant and must be of such shape, color, material and make as are provided by Landlord.

**F. ADVERTISING AND SIGNS:** Unless expressly permitted by Landlord, in writing, no sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed on any part of the outside or inside of the Premises, except on the glass or panels of the doors of the Leased Premises and then only of subject matter and in such color, size, style and material as shall conform to the specifications of Landlord, which permission may be granted in the sole and absolute discretion of Landlord. Landlord reserves the right to remove all other signs or lettering, without notice to Tenant, at the expense of Tenant.

**G. BICYCLES AND ANIMALS:** Unless expressly permitted by Landlord, in writing, no bicycle or other vehicle and no animal shall be brought or permitted to be in the Premises or the Complex or any part thereof. If an area designated for bicycles is provided at the Complex, then Tenant agrees to use such designated area and only for the purpose intended.

LANDLORD'S INITIALS _____
TENANT'S INITIALS _____

- 33 -

**H. MACHINERY:** Unless Landlord gives prior written consent in each and every instance, Tenant shall not install or operate any steam or internal combustion engine, boiler, machinery, refrigerating or heating device or air conditioning apparatus in or about said Premises. All equipment of any electrical or mechanical nature shall be placed in settings which absorb and prevent vibration, noise or annoyance, or the spillage or leakage of fluids, oils or grease on the floors of said Premises.

**I. LOCKS:** Unless expressly permitted by Landlord, in writing, no visible additional locks or similar devices shall be attached to any door or window. Upon termination of this Lease or of Tenant's possession, Tenant shall surrender all keys of said Premises and shall provide Landlord with the then current combinations for any combination locks or safes, cabinets and vaults.

**J. NOISES AND OTHER NUISANCES:** Tenant shall not make or permit any noise, odor, or vapor that is objectionable to Landlord or to other occupants of the Complex to emanate from the Premises, and shall not create or maintain a nuisance therein, and shall not disturb, solicit or canvass any occupant of the Complex, and shall not do any act tending to injure the reputation of the Complex. Tenant shall not install or operate any phonograph, musical instrument, radio or television receiver or similar device in the Complex without prior written approval of Landlord. The use thereof, if permitted, shall be subject to control by Landlord to the end that others shall not be disturbed or annoyed.

**K. SAFES OR HEAVY ARTICLES:** Tenant shall not overload any floor. Safes, furniture and all large articles shall be brought into the Premises or removed therefrom at the Tenant's sole risk and responsibility.

**L. HANDIWORK:** Tenant will not use or allow the Premises or the Complex to be used for any type of auto repair work, painting of any kind, fiberglassing of any kind or woodworking of any kind.

**M. AWNINGS AND COVERINGS:** No awnings, metal bars or metal frame work shall be placed by the Tenant on any windows, any interior location visible from the exterior the Complex, any exterior portions of the Complex or grounds without the prior written consent of the Landlord, in the sole and absolute discretion of Landlord.

H:\_PVT CLIENT\Urso Family Realty 2820\050220\Lease btwn UMarble of the World rso and American Freight FINAL (1-22-14).doc

LANDLORD'S INITIALS
TENANT'S INITIALS

- 34 -