## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*, | Case No. 24-12480 (JTD) |
| Debtors.[1] | (Jointly Administered) |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING STANDING AND AUTHORIZING THE PROSECUTION OF CERTAIN CHALLENGE CLAIMS ON BEHALF OF THE BANKRUPTCY ESTATES

The Official Committee of Unsecured Creditors (the "***Committee***") of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") hereby moves this Court for entry of an order authorizing the Committee to prosecute certain lien challenge claims against the Prepetition Second Lien Secured Parties and Prepetition Second Lien Sidecar Secured

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Parties (each as defined below) on behalf of the bankruptcy estates of the applicable Debtors[2]

and granting related relief (this "***Motion***").    In support of this Motion, the Committee

respectfully states as follows:

## PRELIMINARY STATEMENT

1.        The Committee seeks standing to pursue, prosecute, and resolve, on behalf

of the Debtors' estates, the following claims set forth in the complaint attached hereto as

**Exhibit 1** (as it may be amended) (the "***Proposed Complaint***"): (i) declaratory judgment that

certain property of the applicable Debtors is not subject to the liens and security interests granted

to the Prepetition Second Lien Secured Parties and Prepetition Second Lien Sidecar Secured

Parties; (ii) avoidance of certain unperfected liens and security interests asserted by the

Prepetition Second Lien Secured Parties and Prepetition Second Lien Sidecar Secured Parties

against certain property of the applicable Debtors; and (iii) an order reversing (or otherwise

reserving for further investigation) certain of the other acknowledgements and agreements of the

applicable Debtors set forth in the Final DIP Order (as defined below).[3]

2.        This Motion is filed consistent with paragraph 24 of the Final DIP Order.

The filing of this Motion tolls the Challenge Period pending a resolution hereof under paragraph

24 of the Final DIP Order.    The Proposed Complaint also constitutes an objection, pursuant to

section 502 of title 11 of the U.S. Code, 11 U.S.C. §§ 101 *et seq*. (the "***Bankruptcy Code***") and

Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"),

---

[2]      For purposes herein, the Debtors ***exclude*** Freedom VCM, Inc., Freedom VCM Interco, Inc., Freedom VCM Holdings, LLC, Freedom Receivables II, LLC, Freedom VCM Interco Holdings, Inc., and Freedom VCM Receivables, Inc.

[3]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Final DIP Order.

to the liens and claims asserted by the Prepetition Second Lien Secured Parties and Prepetition Second Lien Sidecar Secured Parties against the applicable Debtors to the extent set forth herein.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. § 1334.  This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 105(a), 1103(c), and 1109(b) of the Bankruptcy Code and Bankruptcy Rules 3007 and 7001.  This Motion is also filed pursuant to paragraph 24 of the Final DIP Order.

## BACKGROUND

### A. General Background

5. On November 3, 2024 (the "***Petition Date***"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court, thereby commencing these chapter 11 cases (the "***Cases***").  The Debtors continue in possession of their property and are operating and managing their businesses as debtors in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

6. On November 19, 2024, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

### B. The Debtors' Prepetition Relationship with the Prepetition Secured Parties

#### 1. Prepetition ABL Facility

7. ***Prepetition ABL Credit Agreement.*** Pursuant to that certain *Third Amended and Restated Loan and Security Agreement*, dated as of March 10, 2021 (as amended, supplemented, or otherwise modified, the "***Prepetition ABL Credit Agreement***," and

together with all other agreements, guarantees, pledge, collateral and security documents in connection therewith, including, without limitation, the Financing Agreements (as defined in the Prepetition ABL Credit Agreement) and the Prepetition ABL Intercreditor Agreement (as defined below), collectively, the "***Prepetition ABL Loan Documents***"), by and among Debtors Franchise Group, Inc., Franchise Group Newco PSP, LLC, Valor Acquisition, LLC, and Franchise Group Newco Intermediate AF, LLC, as borrowers (collectively, the "***Prepetition ABL Borrowers***"), certain subsidiaries of the Prepetition ABL Borrowers, as guarantors (the "***Prepetition ABL Guarantors***," and together with the Prepetition ABL Borrowers, the "***Prepetition ABL Loan Parties***"), JPMorgan Chase Bank, N.A., as agent (in such capacity, the "***Prepetition ABL Agent***"), and the lenders party thereto from time to time (collectively, the "***Prepetition ABL Lenders***," and together with the Prepetition ABL Agent, the "***Prepetition ABL Secured Parties***"), the Prepetition ABL Lenders provided a revolving credit facility (the "***Prepetition ABL Facility***") to the Prepetition ABL Loan Parties.  Pursuant to the Prepetition ABL Loan Documents, each of the Prepetition ABL Guarantors guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition ABL Secured Obligations (as defined below).

        8.     ***Prepetition ABL Secured Obligations.***  The Debtors have stipulated that, as of the Petition Date, the Prepetition ABL Loan Parties were indebted to the Prepetition ABL Secured Parties, on a joint and several basis, in the aggregate amount of not less than **$261.3 million** on account of principal amounts outstanding under the Prepetition ABL Facility (including issued letters of credit), *plus* accrued but unpaid interest (including default interest, if applicable) thereon, *plus* all fees, costs, expenses and reimbursement obligations, including all "Obligations" (as defined in the Prepetition ABL Credit Agreement), and all other amounts that

4

may be due or owing under the Prepetition ABL Loan Documents (collectively, the "***Prepetition ABL Secured Obligations***").

9.      ***Prepetition ABL Liens.***  The Debtors have stipulated that, pursuant to the Prepetition ABL Loan Documents, each of the Prepetition ABL Loan Parties granted to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, valid and properly perfected continuing liens and security interests in (the "***Prepetition ABL Liens***") substantially all of the assets of the Prepetition ABL Loan Parties, including, without limitation, all "Collateral" (as defined in the Prepetition ABL Credit Agreement) (collectively, the "***Prepetition ABL Collateral***") and the "ABL Priority Collateral" (as defined in the Prepetition ABL Intercreditor Agreement).

### 2.      Prepetition First Lien Facility

10.      ***Prepetition First Lien Credit Agreement.***  Pursuant to that certain *First Lien Credit Agreement*, dated as of March 10, 2021 (as amended, supplemented or otherwise modified, the "***Prepetition First Lien Credit Agreement***," and together with all other agreements, guarantees, pledge, collateral and security documents in connection therewith, including, without limitation, the Loan Documents (as defined in the Prepetition First Lien Credit Agreement) and the Prepetition Intercreditor Agreements (as defined below), collectively, the "***Prepetition First Lien Loan Documents***"), by and among Debtors Franchise Group, Inc., Franchise Group Newco PSP, LLC, Valor Acquisition, LLC, and Franchise Group Newco Intermediate AF, LLC, as borrowers (collectively, the "***Prepetition First Lien Borrowers***"), certain subsidiaries of the Prepetition First Lien Borrowers, as guarantors (collectively, the "***Prepetition First Lien Guarantors***," and together with the Prepetition First Lien Borrowers, collectively,  the "***Prepetition First Lien Loan Parties***"),  Wilmington Trust, National

Association, as administrative agent and collateral agent (in such capacities, the "***Prepetition First Lien Agent***"), and the lenders party thereto from time to time (collectively, the "***Prepetition First Lien Lenders***," and together with the Prepetition First Lien Agent, the "***Prepetition First Lien Secured Parties***"), the Prepetition First Lien Lenders provided a term loan credit facility (the "***Prepetition First Lien Facility***") to the Prepetition First Lien Loan Parties.  Pursuant to the Prepetition First Lien Loan Documents, each of the Prepetition First Lien Guarantors guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition First Lien Secured Obligations (as defined below).

11.    ***Prepetition First Lien Secured Obligations.***  The Debtors have stipulated that, as of the Petition Date, the Prepetition First Lien Loan Parties were indebted to the Prepetition First Lien Secured Parties, on a joint and several basis, in the aggregate amount of not less than **$1,131.8 million** on account of principal amounts (including capitalized interest added thereto) outstanding under the Prepetition First Lien Facility, *plus* accrued but unpaid interest (including default interest, if applicable) thereon, *plus* all fees, costs, expenses and reimbursement obligations, including all "Secured Obligations" (as defined in the Prepetition First Lien Credit Agreement) and all other amounts that may be due or owing under the Prepetition First Lien Loan Documents (collectively, the "***Prepetition First Lien Secured Obligations***").

12.    ***Prepetition First Lien Liens***.  The Debtors have stipulated that, pursuant to the Prepetition First Lien Loan Documents, the Prepetition First Lien Loan Parties granted to the Prepetition First Lien Agent, for the benefit of itself and the other Prepetition First Lien Secured Parties, properly perfected continuing liens and security interests in (collectively, the "***Prepetition First Lien Liens***") substantially all of the assets of the Prepetition First Lien Loan

Parties, including, without limitation, all "Collateral" (as defined in the Prepetition First Lien Credit Agreement) (the "***Prepetition First Lien Collateral***") and the "Term Loan Priority Collateral" (as defined in the Prepetition ABL Intercreditor Agreement).

**3.     Prepetition Second Lien Facility**

13.     ***Prepetition Second Lien Credit Agreement.***   Pursuant to that certain *Second Lien Credit Agreement*, dated as of March 10, 2021 (as amended, supplemented or otherwise modified, the "***Prepetition Second Lien Credit Agreement****,*" and together with all other agreements, guarantees, pledge, collateral and security documents in connection therewith, including, without limitation, the Loan Documents (as defined in the Prepetition Second Lien Credit Agreement) and the Prepetition Intercreditor Agreements (as defined below), collectively, the "***Prepetition Second Lien Loan Documents***"), by and among Debtors Franchise Group, Inc., Franchise Group Newco PSP, LLC, Valor Acquisition, LLC, and Franchise Group Newco Intermediate AF, LLC, as borrowers (collectively, the "***Prepetition Second Lien Borrowers***"), certain subsidiaries of the Prepetition Second Lien Borrowers, as guarantors (collectively, the "***Prepetition Second Lien Guarantors****,*" and together with the Prepetition Second Lien Borrowers, collectively, the "***Prepetition Second Lien Loan Parties***"), Alter Domus (US) LLC, as administrative agent and collateral agent (in such capacities, the "***Prepetition Second Lien Agent***"), and the lenders party thereto from time to time (collectively, the "***Prepetition Second Lien Lenders****,*" and together with the Prepetition Second Lien Agent, the "***Prepetition Second Lien Secured Parties***"), the Prepetition Second Lien Lenders provided a term loan credit facility (the "***Prepetition Second Lien Facility***") to the Prepetition Second Lien Loan Parties.  Pursuant to the Prepetition Second Lien Loan Documents, each of the Prepetition Second Lien Guarantors

guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition Second Lien Secured Obligations (as defined below).

14.      ***Prepetition Second Lien Secured Obligations.***    The Debtors have stipulated that, as of the Petition Date, the Prepetition Second Lien Loan Parties were indebted to the Prepetition Second Lien Secured Parties, on a joint and several basis, in the aggregate amount of not less than **$125.0 million** on account of principal amounts outstanding under the Prepetition Second Lien Facility, *plus* **$19.5 million** outstanding on account of the Prepetition Second Lien Loan Parties' guaranty of the Secured Holdco Guarantee Obligations (as defined in the Prepetition Second Lien Credit Agreement) pursuant to that certain *Supplement No. 1 to the Guarantee Agreement*, dated as of August 19, 2024, and that certain *Fifth Amendment to Second Lien Credit Agreement*, dated as of August 19, 2024, *plus* all fees, costs, expenses and reimbursement obligations, including all "Secured Obligations" (as defined in the Prepetition Second Lien Credit Agreement) and all other amounts that may be due or owing under the Prepetition Second Lien Loan Documents (the "***Prepetition Second Lien Secured Obligations***").

15.      ***Prepetition Second Lien Liens.***    The Debtors have stipulated that, pursuant to the Prepetition Second Lien Loan Documents, the Prepetition Second Lien Loan Parties granted to the Prepetition Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Secured Parties, properly perfected continuing liens and security interests in (collectively, the "***Prepetition Second Lien Liens***") substantially all of the assets of the Prepetition Second Lien Loan Parties, including, without limitation, all "Collateral" (as defined in the Prepetition Second Lien Credit Agreement) (the "***Prepetition Second Lien Collateral***") and the "Term Loan Priority Collateral" (as defined in the Prepetition ABL Intercreditor Agreement).

4.      **Prepetition Second Lien Sidecar Facility**

16.      ***Prepetition Second Lien Sidecar Credit Agreement.***    Pursuant to that certain *Sidecar Pari Passu Second Lien Credit Agreement*, dated as of August 21, 2023 (as amended, supplemented or otherwise modified, the "***Prepetition Second Lien Sidecar Credit Agreement***," and together with all other agreements, guarantees, pledge, collateral and security documents in connection therewith, including, without limitation, and the Loan Documents (as defined in the Prepetition Second Lien Sidecar Credit Agreement), collectively, the "***Prepetition Second Lien Sidecar Loan Documents***"), by and among Debtors Franchise Group, Inc., Franchise Group Newco PSP, LLC, Valor Acquisition, LLC, and Franchise Group Newco Intermediate AF, LLC, as borrowers (collectively, the "***Prepetition Second Lien Sidecar Borrowers***"), certain subsidiaries of the Prepetition Second Lien Sidecar Borrowers, as guarantors (collectively, the "***Prepetition Second Lien Sidecar Guarantors***", and together with the Prepetition Second Lien Sidecar Borrowers, collectively, the "***Prepetition Second Lien Sidecar Loan Parties***"), Alter Domus (US) LLC, as administrative agent and collateral agent (in such capacities, the "***Prepetition Second Lien Sidecar Agent***"), and the lenders party thereto from time to time (collectively, the "***Prepetition Second Lien Sidecar Lenders***," and together with the Prepetition Second Lien Sidecar Agent, the "***Prepetition Second Lien Sidecar Secured Parties***"), the Prepetition Second Lien Sidecar Lenders provided a term loan credit facility (the "***Prepetition Second Lien Sidecar Facility***") to the Prepetition Second Lien Sidecar Loan Parties.    Pursuant to the Prepetition Second Lien Sidecar Loan Documents, each of the Prepetition Second Lien Sidecar Guarantors guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition Second Lien Sidecar Secured Obligations (as defined below).

17.     ***Prepetition Second Lien Sidecar Secured Obligations.***  As of the Petition Date, the Prepetition Second Lien Sidecar Loan Parties were justly and lawfully indebted to the Prepetition Second Lien Sidecar Secured Parties, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of **$0.00** on account of all amounts outstanding under the Prepetition Second Lien Sidecar Facility inclusive of all "Secured Obligations" (as defined in the Prepetition Second Lien Sidecar Credit Agreement) and all other amounts that may be due or owing under the Prepetition Second Lien Sidecar Loan Documents (collectively, the "***Prepetition Second Lien Sidecar Secured Obligations***").

18.     ***Prepetition Second Lien Sidecar Liens.*** Pursuant to the Prepetition Second Lien Sidecar Loan Documents, the Prepetition Second Lien Sidecar Loan Parties granted to the Prepetition Second Lien Sidecar Agent, for the benefit of itself and the other Prepetition Second Lien Sidecar Secured Parties, properly perfected continuing liens and security interests in (collectively, the "***Prepetition Second Lien Sidecar Liens***") substantially all of the assets of the Prepetition Second Lien Sidecar Loan Parties, including, without limitation, all "Collateral" (as defined in the Prepetition Second Lien Sidecar Credit Agreement) (the "***Prepetition Second Lien Sidecar Collateral***") and the "Term Loan Priority Collateral" (as defined in the Prepetition ABL Intercreditor Agreement).

19.     For purposes herein, the following definitions apply:

"***Prepetition Agents***" means the Prepetition ABL Agent, the Prepetition First Lien Agent, the Prepetition Second Lien Agent and the Prepetition Second Lien Sidecar Agent, in their respective capacities as such.

"***Prepetition Collateral***" means the Prepetition ABL Collateral, the Prepetition First Lien Collateral, the Prepetition Second Lien Collateral, and the Prepetition Second Lien Sidecar Collateral, respectively.

"*Prepetition Liens*" means the Prepetition ABL Liens, the Prepetition First Lien Liens, the Prepetition Second Lien Liens, and the Prepetition Second Lien Sidecar Liens, respectively.

"*Prepetition Loan Documents*" means the Prepetition ABL Loan Documents, the Prepetition First Lien Loan Documents, the Prepetition Second Lien Loan Documents, and the Prepetition Second Lien Sidecar Loan Documents, respectively.

"*Prepetition Loan Parties*" means the Prepetition ABL Loan Parties, the Prepetition First Lien Loan Parties, the Prepetition Second Lien Loan Parties, and the Prepetition Second Lien Sidecar Loan Parties, respectively.

"*Prepetition Secured Obligations*" means the Prepetition ABL Secured Obligations, the Prepetition First Lien Secured Obligations, the Prepetition Second Lien Secured Obligations, and the Prepetition Second Lien Sidecar Secured Obligations, respectively.  The Prepetition Secured Obligations *exclude* the Freedom Debtor Obligations.

"*Prepetition Secured Parties*" means the Prepetition ABL Secured Parties, the Prepetition First Lien Secured Parties, the Prepetition Second Lien Secured Parties, and the Prepetition Second Lien Sidecar Secured Parties, in their respective capacities as such.

### 5.    Prepetition Intercreditor Agreements

20.    The Prepetition ABL Agent, the Prepetition First Lien Agent, the Prepetition Second Lien Agent and the Prepetition Second Lien Sidecar Agent are party to that certain *Amended and Restated Intercreditor Agreement*, dated as of November 22, 2021 (as amended, supplemented or otherwise modified, the "*Prepetition ABL Intercreditor Agreement*"), which sets forth the relative payment and lien priorities and other rights and remedies of the Prepetition ABL Secured Parties, on the one hand, and the Prepetition First Lien Secured Parties, the Prepetition Second Lien Secured Parties and the Prepetition Second Lien Sidecar Secured Parties, on the other hand, with respect to "Common Collateral" (as defined in the Prepetition ABL Intercreditor Agreement).  Pursuant to the Prepetition ABL Intercreditor Agreement, the parties thereto agreed, among other things: (a) that the Prepetition ABL Liens on the ABL Priority Collateral are senior to the Prepetition First Lien Liens, Prepetition Second Lien Liens, and Prepetition Second Lien Sidecar Liens on such collateral, and (b) that the Prepetition First Lien Liens, Prepetition Second Lien Liens, and Prepetition Second Lien Sidecar

Liens on the Term Loan Priority Collateral are senior to the Prepetition ABL Liens on such collateral.

21.     The Prepetition First Lien Agent, the Prepetition Second Lien Agent and the Prepetition Second Lien Sidecar Agent are party to that certain *Amended and Restated First Lien/Second Lien Intercreditor Agreement*, dated as of November 22, 2021 (as amended, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date in accordance with the terms thereof, the "***Prepetition 1L/2L Intercreditor Agreement***," and together with the Prepetition ABL Intercreditor Agreement, collectively, the "***Prepetition Intercreditor Agreements***"), which sets forth the relative payment and lien priorities and other rights and remedies of the Prepetition First Lien Secured Parties, on the one hand, and the Prepetition Second Lien Secured Parties and the Prepetition Second Lien Sidecar Secured Parties, on the other hand, with respect to "Common Collateral" (as defined in the Prepetition 1L/2L Intercreditor Agreement).

**C.     The Final DIP Order, Challenge Deadline, and Unencumbered Assets**

22.     On December 11, 2024, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. **414**] (the "***Final DIP Order***").  The Final DIP Order, among other things, set a Challenge Deadline of, as to the Committee, seventy (70) calendar days after the Committee was appointed (i.e., January 28, 2025), by which the Committee could assert a Challenge with respect to the

applicable Debtors' various stipulations, waivers, and admissions in favor of the Prepetition Secured Parties under the Final DIP Order.

23.     By separate stipulation filed with the Court, the Committee, the Required Lenders under the Prepetition First Lien Facility, and the Prepetition ABL Agent have agreed to extend the Challenge Deadline for the Committee with respect to certain identified Challenges.

24.     Based on the Committee's investigation to date, the Prepetition Second Lien Collateral and Prepetition Second Lien Sidecar Collateral securing the Prepetition Second Lien Secured Obligations and Prepetition Second Lien Sidecar Secured Obligations does not include, and/or the Prepetition Second Lien Secured Parties and Prepetition Second Lien Sidecar Secured Parties do not have a perfected or otherwise enforceable security interest in, the following assets of the applicable Debtors[4] or the proceeds thereof, as of the Petition Date:  (a) any leased or owned real estate or any fixtures located thereon; (b) any commercial tort claims; (c) any money or currency, *provided that*, the Prepetition Second Lien Collateral and Prepetition Second Lien Sidecar Collateral does include money or currency that constitutes the identifiable proceeds of other Prepetition Second Lien Collateral or Prepetition Second Lien Sidecar Collateral; (d) any deposit accounts at any bank or financial institution that are not subject to a valid and enforceable control agreement in favor of the Prepetition Second Lien Secured Parties and Prepetition Second Lien Sidecar Secured Parties, *provided that*, the Prepetition Second Lien Collateral and Prepetition Second Lien Sidecar Collateral does include funds in deposit accounts that constitute the identifiable proceeds of other Prepetition Second Lien Collateral or Prepetition Second Lien Sidecar Collateral; (e) any insurance policies relating to director & officer or management liability or otherwise; (f) any licenses or permits that cannot be pledged under

---

[4]     Debtors Franchise Group Intermediate L, LLC, WNW Franchising, LLC, and WNW Stores, LLC are not obligors or pledgors with respect to the Prepetition Secured Obligations.

applicable non-bankruptcy law or regulation; and (g) any Excluded Assets (as defined in the Prepetition Second Lien Loan Documents or Prepetition Second Lien Sidecar Loan Documents). The foregoing assets described in subparagraphs (a) through (g) are the "***Unencumbered Assets***."

25.     The Committee hereby asserts a Challenge as to those items identified as the Unencumbered Assets above.  The Committee submits that there is no evidentiary basis for a finding that the Prepetition Second Lien Secured Parties and Prepetition Second Lien Sidecar Secured Parties have a valid, perfected lien, claim, or interest in any of the Unencumbered Assets and any inconsistent finding should be stricken from the Final DIP Order.

**D.     Reserved Matters**

26.     In addition, the Committee reserves rights to contest the following matters (together, the "***Reserved Matters***"): (i) the allowance of any interest (or default rate interest) paid or accrued under the Prepetition Second Lien Loan Documents or Prepetition Second Lien Sidecar Loan Documents; (ii) the accuracy of the calculation of the amount of any principal, interest, fees, costs or charges paid or accrued under the Prepetition Second Lien Loan Documents or Prepetition Second Lien Sidecar Loan Documents; (iii) the reasonableness pursuant to section 506(b) of the Bankruptcy Code of the amounts of any fees, costs or charges to the extent provided for under the Prepetition Second Lien Loan Documents or Prepetition Second Lien Sidecar Loan Documents, and (iv) any adequate protection or diminution claim that may be asserted by the Prepetition Second Lien Agent, Prepetition Second Lien Sidecar Agent, or any individual lender against the applicable Debtors' estates.[5]

---

[5]     The Committee is continuing to investigate and reserves all rights to assert that the Debtors' guarantee of the Freedom Debtor Obligations totaling $19.5 million on account of the Prepetition Second Lien Loan Parties' guaranty of the Secured Holdco Guarantee Obligations (as defined in the Prepetition Second Lien Credit Agreement) pursuant to that certain *Supplement No. 1 to the Guarantee Agreement*, dated as of August 19,

27.     The Committee further submits that none of the applicable Debtors' various acknowledgments, waivers, and stipulations in the Final DIP Order at paragraph G should have any impact on any rights, claims, defenses, offsets, or causes of action that the Committee or any of the applicable Debtors' estates may have against the Prepetition Second Lien Agent and Prepetition Second Lien Sidecar Agent on behalf of the Prepetition Second Lien Secured Parties and Prepetition Second Lien Sidecar Secured Parties, respectively, with respect to the Reserved Matters or otherwise unrelated to the Prepetition Second Lien Loan Documents and the obligations thereunder or the Prepetition Second Lien Sidecar Loan Documents and the obligations thereunder.

28.     The Committee objects to the liens and claims asserted by the Prepetition Second Lien Agent or Prepetition Second Lien Sidecar Agent on behalf of the Prepetition Second Lien Secured Parties or Prepetition Second Lien Sidecar Secured Parties, respectively, to the extent inconsistent with the foregoing.  The Committee therefore files this Motion, and seeks standing to file the Proposed Complaint (as it may be amended), in order to preserve its rights under the Final DIP Order.

## **RELIEF REQUESTED**

29.     By this Motion, pursuant to sections 105(a), 1103(c), and 1109 of the Bankruptcy Code, the Committee seeks entry of an order (attached hereto as **Exhibit 2**) authorizing it to prosecute the causes of action set forth in the Proposed Complaint and granting related relief.  No prior request for the relief sought in this Motion has been made to this Court.

---

2024, and that certain *Fifth Amendment to Second Lien Credit Agreement*, dated as of August 19, 2024, is avoidable as a fraudulent transfer.  All such rights are deemed Reserved Matters hereunder.

**BASIS FOR RELIEF**

A.    **Legal Standard to Establish Standing**

30.    The Bankruptcy Code provides that a committee may "perform such . . . services as are in the interest of those represented."  11 U.S.C. § 1103(c)(5).  The Bankruptcy Code also allows a party in interest, including a creditors' committee, to be heard on any issue in a chapter 11 case.  *See* 11 U.S.C. § 1109(b).  Moreover, section 105(a) empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  *See* 11 U.S.C. § 105(a).

31.    The Third Circuit, in common with the majority of circuits reaching the issue,[6] has held that derivative standing is available to a creditors' committee to pursue estate claims when it shows that a debtor in possession "unreasonably refuses" to do so.  *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) (en banc) (derivative standing appropriate if the debtor unreasonably refuses to pursue a fraudulent transfer action); *accord Infinity Investors Ltd. v. Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141, 144-45 (D. Del. 2004) ("The Third Circuit expressed its agreement with approaches taken by the Second and Seventh Circuits;" denial of derivative standing reversed); *Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.)*, 326 B.R. 532 (W.D. Pa. 2005) (retroactive approval of derivative standing and adversary proceeding by committee).

32.    To establish derivative standing, the Committee must show that the Debtors unreasonably refuse to bring an action that would benefit the estate.  *Cybergenics*, 330

---

[6]    Cases from the following circuits support the bankruptcy court's authority to grant derivative standing: *Smart World Techs., LLC v. Juno Online Servs. Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176 (2d Cir. 2005); *Louisiana World Exposition v. Federal Ins. Co.*, 858 F. 2d 233, 247-52 (5th Cir. 1988); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving Ltd. (In re Gibson Group, Inc.)*, 66 F. 3d 1436, 1440-46 (6th Cir. 1995); *Fogel v. Zell*, 221 F. 3d 955, 965 (7th Cir. 2000); *PW Enterprises, Inc. v. North Dakota Racing Comm. (In re Racing Servs., Inc.)*, 540 F. 3d 892, 898 (8th Cir. 2008); and *Avalanche Maritime, Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F. 3d 1029, 1031 (9th Cir. 1999).

F. 3d at 568.  Although the Third Circuit has not specified procedural requirements for allowing derivative standing, it expressed approval of the approaches taken by the Second and Seventh Circuits.  *Cybergenics*, 330 F. 3d at 566-67.  These courts and others have generally recognized derivative standing upon a showing that: (1) the claims are colorable; (2) the debtor has unjustifiably refused to pursue the claim; and (3) the bankruptcy court has granted permission to initiate the action on behalf of the estate.  *In re Yes! Entm't Corp.*, 316 B.R. at 145 (citing recognized factors); *In re Nat'l Forge Co.*, 326 B.R. at 543 (same).

33.     As set forth below, the Committee satisfies each of the foregoing elements.

**B.      The Proposed Claims Are Colorable**

34.     Whether a party has asserted a colorable claim for purposes of derivative standing is a legal question, requiring the same analysis that would be undertaken upon a motion to dismiss.  The Court must accept all well-pleaded facts as true, draw all inferences from such facts in the light most favorable to the plaintiff, and determine as a matter of law whether a claim is sufficiently pled.  *Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy, LLC)*, 527 B.R. 169, 173 (D. Del. 2015) (derivative standing review; quoting Twombly for the proposition that there is no probability requirement at the pleading stage but there must be sufficient facts to expect that discovery will reveal supporting evidence of claims).

35.     Notwithstanding the Debtors' acknowledgments, waivers, and stipulations in the Final DIP Order, the Committee has investigated and concluded that the Prepetition Second Lien Collateral under the Prepetition Second Lien Loan Documents and Prepetition Second Lien Sidecar Collateral under the Prepetition Second Lien Sidecar Loan Documents and the ancillary documents thereto does not include, and/or the Prepetition Second Lien Agent or Prepetition Second Lien Sidecar Agent on behalf of the Prepetition Second Lien Secured Parties

or Prepetition Second Lien Sidecar Secured Parties, respectively, has failed to perfect its asserted liens, claims, and interests in, the Unencumbered Assets. As demonstrated by the Proposed Complaint, the Committee seeks declaratory relief regarding, and the avoidance of, the Prepetition Second Lien Secured Parties' and Prepetition Second Lien Sidecar Secured Parties' asserted liens and security interests against the Unencumbered Assets. The Committee also seeks declaratory relief preserving rights as to certain Reserved Matters. The Committee believes that each of these claims is viable and would survive a motion to dismiss. These colorable claims are asserted after substantial time and resources have been devoted by the Committee and its professionals on due diligence.

**C.    The Debtors Unjustifiably Refuse to Pursue the Claims**

36.    As the Third Circuit emphasized, the critical inquiry is whether the Debtors have unreasonably or unjustifiably refused to bring the claims. *Cybergenics*, 330 F. 3d at 553 ("We believe that … bankruptcy courts' equitable powers enable them to authorize such [derivative] suits as a remedy in cases where a debtor-in-possession unreasonably refuses to pursue an avoidance claim."); 330 F. 3d at 568 ("The problem at bar is that the intended system broke down. The Debtor refused to bring an action that the Bankruptcy Court found would benefit the estate, and thereby violated its fiduciary duty to maximize the estate's value.").

37.    Here, pursuant to the Final DIP Order, the Debtors stipulated that, among other matters, the Prepetition Second Lien Agent and Prepetition Second Lien Sidecar Agent on behalf of the Prepetition Second Lien Secured Parties or Prepetition Second Lien Sidecar Secured Parties, respectively, have liens on, or security interests in, some or all of the Unencumbered Assets. The Committee disputes these stipulations and should be permitted to assert a proper challenge with respect thereto because the Debtors are unable or unwilling to do so. Moreover, the Final DIP Order specifically contemplates that an objection to the liens and

18

claims of the Prepetition Second Lien Agent or Prepetition Second Lien Sidecar Agent on behalf of the Prepetition Second Lien Secured Parties or Prepetition Second Lien Sidecar Secured Parties, respectively, may be asserted prior to the Challenge Deadline. The Committee is therefore fulfilling its statutory duties consistent with the Bankruptcy Code and the Final DIP Order by investigating and pursuing the declaratory relief and avoidance claims encompassed in the Proposed Complaint.

38.     The Committee proposes declaratory relief and avoidance claims that preserve substantial assets for the benefit of the estates. Derivative standing is warranted because the Debtors have relinquished their ability to assert the claims proposed herein, leaving the interests of creditors unprotected.

39.     The potential of preserving the Unencumbered Assets for the benefit of unsecured creditors outweighs any possible prejudice or delay to the Prepetition Second Lien Agent and Prepetition Second Lien Sidecar Agent. Accordingly, the Committee's proposed action satisfies the Fifth Circuit's unjustified refusal calculus and the Committee should be granted derivative standing.

**D.     The Committee Seeks Court Authority for Derivative Standing**

40.     Under *Cybergenics*, a committee may be granted derivative standing to pursue claims on behalf of the bankruptcy estate where the debtor has unreasonably refused to bring such claims. Derivative standing is conditioned upon the bankruptcy court's permission, based on its equitable powers and ability to implement flexible remedies. *Cybergenics*, 330 F. 3d at 568-69 (Congress anticipated court's use of equitable powers as a gatekeeper when the trustee [or debtor] is delinquent).

41.     The Committee brings this Motion to request permission from the Court to pursue colorable claims for the benefit of the estates.

## **CONCLUSION**

42.     Based upon the foregoing, the Committee should be granted standing to file and prosecute the claims set forth in the Proposed Complaint.

## **NO PRIOR REQUEST**

43.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Committee respectfully requests that this Court: (i) enter an order authorizing the Committee to prosecute the causes of action set forth in the Proposed Complaint; and (ii) grant such other and further relief to the Committee as the Court may deem proper.

Dated:    January 28, 2025            Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Bradford J. Sandler*
Bradford J. Sandler, Esq.
Colin R. Robinson, Esq.
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400
Email:       bsandler@pszjlaw.com
             crobinson@pszjlaw.com

-and-

Robert J. Feinstein, Esq.    (admitted *pro hac vice*)
Alan J. Kornfeld, Esq.       (admitted *pro hac vice*)
Theodore S. Heckel, Esq.     (admitted *pro hac vice*)
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:   (212) 561-7700
Facsimile:   (212) 561-7777
Email:       rfeinstein@pszjlaw.com
             akornfeld@pszjlaw.com
             theckel@pszjlaw.com

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors*