# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 435; 570; 572; 573; 574; 575; 576; 577; 578; 646; 675; and 712** |

## SUPPLEMENTAL ORDER (A) AUTHORIZING DEBTORS TO SELL BY PRIVATE SALE CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, WITH SUCH INTERESTS TO ATTACH TO THE PROCEEDS, AND (B) GRANTING RELATED RELIEF

Upon consideration of the *Motion of Debtors for Entry of Order (A) Authorizing Debtors to Sell by Private Sale Certain Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief* (the "Motion")[2] filed by

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meaning ascribed to such terms in the Motion.

the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") for entry of an order (this "Order"), (a) approving the Private Sale of the Purchased Assets on the terms of the Proposed Order and the Purchase Agreement, a copy of which is attached as Exhibit 3 to the Court's prior order granting the Motion with respect to certain Purchased Assets (the "First Approval Order") [D.I. 712], and (b) granting related relief; and this Court having found that (i) this Court has jurisdiction over the Debtors, their estates, and the property of their estates and to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) this Court may enter a final order consistent with Article III of the United States Constitution, (iii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), (iv) venue of the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409, and (v) no further or other notice of the Motion is required under the circumstances; and this Court having reviewed the Motion and having heard the statements in support of the relief requested in the Motion at a hearing before this Court; and having determined that the legal and factual bases set forth in the Motion and the record of these Chapter 11 Cases establish just cause for the relief granted in this Order; and the objections to assumption and assignment of the unexpired leases of residential real estate set forth on **Exhibit 1** annexed hereto and any other Purchased Assets relating thereto (the "Additional Assumed Leases") having been resolved as set forth below, *provided*, for the avoidance of doubt, that the unexpired lease of residential real estate set forth on **Exhibit 2** annexed hereto (the "Reserved Lease") is not one of the Additional Assumed Leases subject to this Order; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED AND ORDERED THAT:**

1.      The relief requested in the Motion is granted as set forth herein.

2.      Except as provided in paragraph 11 of this Order, all objections to the Motion or relief provided herein with respect to the Additional Assumed Leases that have not been withdrawn, waived, or settled are hereby overruled and denied on the merits.

3.      Except as otherwise provided in this Order, the Purchase Agreement and all of its terms and conditions are hereby approved with respect to the Additional Assumed Leases.  The failure to specifically include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety with respect to the Additional Assumed Leases.

4.      Pursuant to Bankruptcy Code sections 105(a), 363, and 365, Educate, Inc. and each of its direct and indirect subsidiaries that are Debtors (collectively with Educate, Inc., the "Sellers") are authorized and directed to consummate the transactions provided for in the Purchase Agreement with respect to the Additional Assumed Leases, effective immediately upon entry of this Order.

5.      With respect to the Additional Assumed Leases, the Sellers are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be necessary for the purposes of assigning, transferring, granting, conveying and conferring to Purchaser of the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.  For the avoidance of doubt, the

Purchased Assets authorized by this Order shall not include any (i) commercial tort claims, (ii) claims or causes of action pursuant to 11 U.S.C. §§ 544, 547 and 548 and all state law equivalents, or (iii) the Reserved Lease.

6.    With respect to the Additional Assumed Leases, pursuant to Bankruptcy Code section 363(f), the sale of the Purchased Assets is, without need for any action by any party, free and clear of all liens, claims, encumbrances and interests against the Sellers, with such liens, claims, encumbrances, and interests attaching to the proceeds of such sale (the "Sale Proceeds") with the same validity, extent and priority as had attached to such Purchased Assets immediately prior to such sale.  The holder of any valid lien, claim, encumbrance, or interest on any Additional Assumed Leases shall, as of the effective date of such sale, be deemed to have waived and released such lien, claim, encumbrance, or interest thereon, without regard to whether such holder has executed or filed any applicable release, and such lien, claim, encumbrance, or interest shall automatically, and with no further action by any party, attach solely to the Sale Proceeds.  As such, Purchaser shall not have any liability for any liens or claims against, or liabilities of, or any interest in any assets of, any Debtor whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability, vicarious liability, or any other similar theory or applicable state or federal law or remedy in equity) except as expressly provided in the Purchase Agreement with respect to Assumed Liabilities.  All persons or entities holding liens, claims, encumbrances or interests of any kind or nature whatsoever in, to or against the Purchased Assets, or arising from or related to the operation of the Purchased Assets, are hereby and forever barred, estopped, and permanently enjoined from asserting against the Purchaser or any of its successors, assigns or property (including, without limitation, the Purchased Assets) any lien, claim, encumbrance or interest existing, accrued or arising prior to the Closing (as defined below).

Notwithstanding the foregoing, any such holder of such a lien, claim, encumbrance, or interest shall execute and deliver any waivers, releases or other related documentation, as reasonably requested by the Debtors.  Purchaser is not a successor in interest to or continuation of any of the Debtors or their respective estates.  Purchaser represents that it is not, and has never been, an Affiliate (as that term is defined in the Purchase Agreement) of any Debtor, and that it does not intend to sell any of the Purchased Assets to any of the Debtors or their Affiliates after closing of the Private Sale.  The Private Sale does not amount to a consolidation, merger, or de facto merger or Purchaser or any other entity with any Debtor.  Purchaser shall have no successor liability under any theory for the obligations of, any Debtor.  Except as provided in paragraph 6 of this Order, nothing contained in the Purchase Agreement or this Order shall constitute, or otherwise act as, a release of any party.

7.      This Order shall be good and sufficient evidence of the transfer of title in the Additional Assumed Leases to the Purchaser, and the sale consummated pursuant to this Order and the Purchase Agreement shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Additional Assumed Leases sold pursuant to this Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state and federal, state and local officials, and each of such persons and entities is here-by authorized to accept this Order as good and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the sales contemplated hereby.  A certified copy of this Order may be: (a) filed with the appropriate clerk or similar official, (b) recorded with

the applicable recorder of deeds or similar official, and/or (c) filed or recorded with any other governmental agency to evidence the cancellation of any and all liens, claims, encumbrances and interests with respect to the Purchased Assets.

8. This Order and the Purchase Agreement shall be binding and enforceable in all respects upon (a) the Sellers and all successors and assigns of the Sellers, (b) all creditors or interest holders, in each case, whether known or unknown, of the Sellers, (c) the Purchaser and its successors and permitted assigns, and (d) any subsequent trustee appointed in the chapter 11 cases of the Debtors party to the Purchase Agreement or upon conversion of such cases to chapter 7 of the Bankruptcy Code.

9. The Purchase Agreement and each of the transactions contemplated therein were negotiated, proposed, and entered into by the Sellers and Purchaser, in good faith, without collusion, and from arm's length bargaining positions. Purchaser is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. None of the Debtors or Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors. None of the Sellers or Purchaser is entering into the Purchase Agreement or proposing to consummate the Private Sale, fraudulently, or for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia. Further, Purchaser is not an "insider" of the Sellers.

10. Purchaser shall be responsible for the satisfaction of all assumed liabilities set forth

in the Purchase Agreement (the "Assumed Liabilities") with respect to the Additional Assumed Leases, and not for any Excluded Liabilities (as defined in the Purchase Agreement).  Except as provided in the Purchase Agreement or this Order, after the closing of the Private Sale with respect to the Additional Assumed Leases (the "Closing"), the Sellers and their estates shall have no further obligation to fulfill any of the Assumed Liabilities, including those arising under the Additional Assumed Leases, and all holders of such claims against the Sellers are forever prohibited, barred, and estopped from asserting any claims under any Assumed Liabilities including those arising under the Additional Assumed Leases against the Sellers, their successors or assigns, and their estates.

11.     Notwithstanding anything to the contrary in the Purchase Agreement, the assumption and assignment to the Purchaser of the Reserved Lease, and the objection thereto (the "Reserved Objections"), shall be addressed in a further order of this Court.  For the avoidance of doubt, nothing in this Order shall authorize the assumption and assignment of the Reserved Lease to the Purchaser.

12.     The Sellers are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign the Additional Assumed Leases to Purchaser free and clear of any and all liens, claims, encumbrances, or other interests, and to execute and deliver to Purchaser such documents or other instruments as may be reasonably necessary to assign and transfer the Additional Assumed Leases to Purchaser, all as provided in the Purchase Agreement. Upon the assumption and assignment to Purchaser of any Additional Assumed Lease at Closing in accordance with this Order, Purchaser shall succeed to the entirety of the Sellers' rights and obligations in respect of each Additional Assumed Lease so assumed and assigned at Closing. Except as otherwise provided in this Order or the Purchase Agreement, upon payment of any

applicable Cure Amounts, to the extent set forth in section 365(k) of the Bankruptcy Code, the

Sellers shall be relieved from any further liability arising under each Additional Assumed Lease.

13.     All non-Debtor counterparties to each Additional Assumed Lease shall be deemed

to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, section

365(e)(2)(A)(ii) of the Bankruptcy Code, or otherwise, and Purchaser shall enjoy all of the rights

and benefits under each such Additional Assumed Lease as of the applicable effective date of

assumption and assignment without the necessity of obtaining such person's written consent to the

assumption or assignment of such Additional Assumed Lease.  Any non-Debtor counterparty to an

Additional Assumed Lease that is a shopping center lease that has not objected to the assignment

thereof is deemed to consent to such assignment pursuant to section 365(c) of the Bankruptcy

Code.

14.     With respect to each Additional Assumed Lease that is assumed and assigned to

Purchaser at Closing, Purchaser shall pay the applicable Cure Amount set forth in **Exhibit 1** (the

"Assumed Lease Schedule") attached to this Order in the manner set forth in the Purchase

Agreement or this Order, as applicable.  The payment of the Cure Amounts shall be deemed to be

in full satisfaction of and cure all defaults (as that concept is contemplated by section 365 of the

Bankruptcy Code) under the Additional Assumed Leases necessary to effectuate the assumption

by the Debtors and the assignment to Purchaser of such Additional Assumed Leases pursuant to

section 365 of the Bankruptcy Code, and, upon payment in accordance with the preceding

sentence, such Additional Assumed Leases shall be deemed to be in full force and effect, free of

default for such purposes.  To the extent a non-Debtor counterparty to an Additional Assumed

Lease failed to timely object to any proposed Cure Amounts listed in the Assumed Lease Schedule,

the Cure Amounts listed therein have been and shall be deemed to be finally determined and any

such non-Debtor counterparty shall be prohibited, barred, and estopped from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time. Each non-Debtor counterparty to an Additional Assumed Lease is forever prohibited, barred, and estopped from asserting against the Debtors or Purchaser, their affiliates, successors or assigns, or the property of any of them, any default existing as of the date of the hearing on the Motion if such default was not raised or asserted in a timely-filed objection. Purchaser shall, upon payment of the Cure Amounts, be deemed to have provided "adequate assurance of future performance" to the applicable non-Debtor counterparties to Additional Assumed Leases as of the Closing.

15.      There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or to the Debtors as a result of the assumption and assignment of the Additional Assumed Leases.

16.      Notwithstanding anything to the contrary in the Purchase Agreement or this Order, for the avoidance of doubt and as part of the Assumed Liabilities under the Purchase Agreement, as of the entry of this Order, Purchaser has assumed all liabilities and obligations under the Additional Assumed Leases that arise or become due on or after the Closing.

17.      No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction shall apply in any way to the Sale. The Debtors and Purchaser waive, and hereby shall be deemed to have waived, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

18.     **Resolution of Objection Pertaining to Orlando South Location**.  The objection
[D.I. 575] filed by Prologis, L.P. (the "Orlando South Landlord"), the landlord for the Additional
Assumed Lease (the "Orlando South Lease") pertaining to 2105-2193 Viscount Row, Orlando,
Florida 32809 (the "Orlando South Location") is resolved.  Within ninety (90) days following the
assignment of the Orlando South Lease to Purchaser, Purchaser shall: (1) repair the three (3)
restrooms, including installing new toilets, grab bars and a sink; (2) repair the collapsed header in
the back office; and (3) repair the damaged walls in the Orlando South Location.  The cash security
deposit held by the Orlando South Landlord shall be increased from $11,415.82 to $38,102.36
within thirty days after assignment of the Orlando South Lease to Purchaser.  Upon approval of
the assignment of the Orlando South Lease to Purchaser (but not as a condition to closing on the
assumption and assignment of the Orlando South Lease), Purchaser and the Orlando South
Landlord shall enter into an amendment to the Orlando South Lease (i) reflecting the new tenant
entity and (ii) memorializing the repairs and increased security deposit set forth herein.

19.     **Provisions Specific to Chattanooga Location**.  The objection filed by Daniel P.
Hagaman (the "Chattanooga Landlord"), the landlord for the Additional Assumed Lease (the
"Chattanooga Lease") pertaining to 6242 Perimeter Drive, Suite 102, Chattanooga, Tennessee
37421 is resolved.  The Cure Amount for the Chattanooga Lease is $7,500.00.  The Chattanooga
Landlord stipulates and agrees that the Debtors' notice of renewal of the Chattanooga Lease was
timely and effective, thereby extending the current term of the Chattanooga Lease through and
including June 30, 2030.

20.     **Resolution of Belford Objections**.  As set forth on the record at the hearing on the
Motion, the objections (the "Belford Objections") [D.I. 572, 573, 577] filed by the following
landlords have been resolved as set forth in this paragraph 20: (a) 4116 OBT Investments, LLC,

(b) 1230 Zion, LLC, (c) SW 17th Street 1010, LLC, (d) Niagara Falls 778, LLC (the "<u>Niagara Landlord</u>"), (e) Rodi Road 501, LLC, and (f) Merchant 33, LLC (collectively, (a) through (f) are the "<u>Belford Landlords</u>").  The agreed resolution of the Belford Objections is as follows:

- • **Cure Amount**.  Purchaser shall pay the Belford Landlords an aggregate Cure Amount of $300,000 (the "<u>Belford Cure Amount</u>") in respect of all of the Belford Landlords' respective Assumed Leases (the "<u>Belford Leases</u>").  For the avoidance of doubt, after payment of the Belford Cure Amount, Purchaser shall have no further obligation to cure any defaults existing under the Belford Leases as of the date of assumption and assignment thereof, including but not limited to payment of any suppliers of services or materials or discharge of any liens asserted thereby.  Discharge and satisfaction of any liens on any of the Belford Landlords' properties arising from services or materials provided prior the time of assumption and assignment of the Belford Leases shall be the sole responsibility of the applicable Belford Landlord.  Any further allocation of the Belford Cure Amount among the Belford Landlords is within the Belford Landlords' discretion and has no impact on Purchaser's future obligations under or in connection with the Belford Leases.

- • **Withdrawal of Belford Objections**.  The Belford Objections are hereby deemed withdrawn.

- • **Purchase Option**.  Purchaser shall have the right (the "<u>Purchase Option</u>"), but not the obligation, to purchase fee simple title to the real property located at 778 Niagara Falls Boulevard, North Tonawanda, New York (together with all buildings, structures, and other improvements thereon, rights associated therewith, and other appurtenances thereto, the "<u>Niagara Property</u>") and as more fully described on **Exhibit 3** annexed hereto free and clear of liens and other encumbrances from the Niagara Landlord (or, if the Niagara Landlord transfers or has transferred the Niagara Property, such transferee) for two million one hundred thousand dollars in cash.  The Purchase Option must be exercised (and such sale must be closed), if at all, on or before the 90th day after the effective date of assumption and assignment of the Assumed Lease for the Niagara Property to Purchaser, unless otherwise agreed between Purchaser and the Niagara Landlord.  Purchaser shall be responsible for all closing costs in connection with an exercise of the Purchase Option, other than the Niagara Landlord's counsel fees.  For the avoidance of doubt, exercise of the Purchase Option shall not constitute a termination of the Assumed Lease of

the Niagara Property unless and until the closing thereof has occurred.

21.    **Resolution of Lubbock Landlord Objection**.  The informal objection raised by 30X30 34th Street Lubbock Partners, LLC (the "Lubbock Landlord") is resolved as follows:

- The Assumed Lease between the relevant Seller and the Lubbock Landlord (the "Lubbock Lease") shall be deemed amended to exclude the 3,775 square feet of additional space previously added to the Lubbock Lease (the "Additional Premises"), retaining only the 29,610 square feet of space previously rented under the Lubbock Lease (the "Retained Premises").  The existing base rent under the Lubbock Lease of $184,027 per annum shall remain unchanged.  Purchaser and the Lubbock Landlord shall equally share the actual and reasonable costs of constructing a customary demising wall between the Retained Premises and the Additional Premises.

Upon approval of the assignment of the Lubbock Lease to Purchaser (but not as a condition to closing on the assumption and assignment of the Lubbock Lease), Purchaser and the Lubbock Landlord shall enter into an amendment to the Orlando South Lease (i) reflecting the new tenant entity and (ii) memorializing the terms set forth in this paragraph 21.

22.    **Resolution of BMH Objection**.  For the reasons set forth on the record at the hearing on the Motion, the objection filed by Buddy Mac Holdings, LLC ("BMH") [D.I. 578] is overruled, *provided, however*, that all rights of BMH and the Debtors with respect to all other matters in the Debtors' chapter 11 cases are preserved.

23.    **Resolution of Louisville Objection**.  As set forth on the record at the hearing on the Motion, the Cure Amount portion of the informal objection asserted by Lichtefeld Development Trust with respect to the lease (the "Louisville Lease") of the Louisville, Kentucky American Freight location (the "Louisville Property") is hereby resolved as follows:

- Upon assumption and assignment of the Louisville Lease, Purchaser shall pay a cure amount of $1,297.00 in respect of the Louisville Lease.

- As adequate assurance of cure of Sellers' curable nonmonetary defaults under the Louisville Lease, Purchaser shall promptly cause repairs to the Louisville Property to be performed in a workmanlike manner to make the Louisville Property consistent with its intended use under the Louisville Lease. Any dispute over Purchaser's compliance with the foregoing obligation shall be resolved by this Court or any other Court of competent jurisdiction.

The objections of the landlord under the Louisville Lease (the "Louisville Landlord") to the Motion [D.I. 570] as to the lack of adequate assurance and insufficient cure are overruled. The Louisville Landlord has withdrawn its objection with respect to the Debtors' alleged inability to assign the Louisville Lease due to it not being a party to such lease and/or its prior failure to obtain the Louisville Landlord's consent to an earlier assignment.

24.    **Adequate Assurance**. For the reasons set forth on the record at the hearing on the Motion, the Debtors have satisfied their burden under section 365(f)(2)(B) of providing adequate assurance of Purchaser's future performance under the Additional Assumed Leases. All formal and informal objections to the Motion or to assumption and assignment of any Additional Assumed Lease, in each instance to the extent based upon Purchaser's adequate assurance of future performance and not heretofore settled or withdrawn, have been overruled on the merits for the reasons set forth on the record at the hearing.

25.    **Provision Regarding Melbourne Lease**. Purchaser acknowledges that it is assuming all obligations under the Lease for the American Freight location in Melbourne, Florida (the "Melbourne Lease") *cum onere*, and agrees to be bound by all of its obligations arising as a tenant under the Melbourne Lease.

26.    In connection with the Purchased Assets, Purchaser shall continue the Debtors' existing policy concerning the transfer of personally identifiable information upon Closing, as may be modified in accordance with the terms of such policy.

27.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall be effective and enforceable immediately upon entry, and the fourteen (14)-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale and the Debtors and Purchaser intend to close the Sale as soon as practicable.  This Order constitutes a separate order with respect to each Additional Acquired Lease.

28.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order and the Purchase Agreement.

Dated: January 29th, 2025
Wilmington, Delaware

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE