**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC., *et al.*[1] | ) | Case No. 24-12480 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Related to Docket Nos. 435, 570 and 848 |

**SUPPLEMENTAL BRIEF OF 6001 POWERLINE ROAD, LLC IN SUPPORT OF ITS OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF ORDER (A) APPROVING THE PRIVATE SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, WITH SUCH INTERESTS TO ATTACH TO THE PROCEEDS, AND (B) GRANTING RELATED RELIEF**

6001 Powerline Road, LLC ("*6001*") files this supplemental brief at the request of the Court and in further support of its *Objection to the Motion of Debtors for Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief* [Docket No 570] (the "*Objection*"), and requests that the Court deny the relief requested in the *Motion of Debtors for Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015

*Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief* [Docket No 435] (the "*Sale Motion*") to assume and assign the lease of non-residential real property located at 6001 Powerline Road, Fort Lauderdale, Florida 33309 (the "*Property*"). In support, 6001 hereby states as follows:

1. The Court rightly noted that Article VI, Paragraph T of the Lease contains an anti-assignment clause that states:

> Tenant shall not assign, mortgage or encumber this Lease nor sublet or suffer or permit the Premises or any part thereof to be used by others with the prior written consent of Landlord, which consent may be withheld at Landlord's reasonable discretion, in each instance. If Tenant is a corporation, any transfer, sale or other disposition of the controlling stock of the Tenants shall be deemed an assignment of this Lease . . . . If this Lease is assigned or if the Premises or any part thereof is sublet or occupied by anyone other than Tenant whether with or without the written consent of Landlord, Landlord may collect Rent from the assignee, sub-tenant or occupant and apply the net amount collected to the Rents herein reserved, but no assignment, subletting, occupancy or collection shall be deemed a waiver of any covenants or be deemed an acceptance of the assignee, sub-tenant or occupant, or a release of Tenant from any liability hereunder. . . .

2. The clause is clear that the Tenant, American Freight of South Florida, LLC ("*AFSF*" or "*Tenant*"), is prohibited from assigning the Lease without the express written consent of the landlord, and neither the Debtors nor the Purchaser presented any evidence of such written consent.

3. Further, neither the Debtors nor the Purchaser (despite Purchaser's blind assertion in its brief)[2] presented any evidence that 6001, or any predecessor landlord, knew about the transfer of the Lease to American Freight, LLC, one of the Debtors herein ("*AFL*"). However, such evidence, if it did exist, would be irrelevant in any event, because the language of the anti-assignment clause could not be clearer: "If this Lease is assigned or if the Premises or any part

---

[2] It is telling that the Debtors, who bear the burden for prosecuting their request for an assumption and assignment, did not submit any briefing to the Court.

thereof is … occupied by anyone other than Tenant **whether with or without the written consent of Landlord**, Landlord may collect Rent from the … occupant … **but no assignment, subletting, occupancy or collection shall be deemed a waiver of any covenants or be deemed an acceptance of the assignee, sub-tenant or occupant** … ." The anti-assignment clause contemplated knowledge of the new tenant, and still clearly states that without written consent, it is ineffectual.

4. Under Florida law (which controls, pursuant to the terms of the Lease), a contractual right is assignable (with some exceptions inapplicable here) **unless** the parties have validly restricted assignment by contract. *Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co.*, 185 So. 3d 638, 640-641 (Fla. 2d DCA 2016). "All contractual rights are assignable unless the contract prohibits assignment . . ." *One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015) (*quoting Kohl v. Blue Cross & Blue Shield of Fla., Inc.*, 988 So.2d 654, 658 (Fla. 4th DCA 2008). The language of the Lease clearly and unambiguously restricts assignment without written consent, which is not present here. Neither the Debtors nor the Purchaser dispute this.

5. Therefore, the only way the Debtors can assume and assign this Lease is if the Lease was somehow assumed by, but never actually "assigned" to AFL. To circumvent this issue, the Purchaser argues that a merger does not *constitute* an assignment under Florida law, but this argument misses the point. The anti-assignment provision in the Lease clearly contemplates the idea that a merger should be considered an assignment under the terms of the Lease, and that such an assignment is not permitted.

6. The Parties to the Lease specifically considered mergers when crafting the Lease's anti-assignment provision. The plain language of the anti-assignment clause states: "If Tenant is a

corporation, any transfer, sale or other disposition of the controlling stock of the Tenants shall be deemed an assignment of this Lease … ." The purpose of this language is to prevent an "assignment" to another party via a sale or a merger, (*i.e.*, a transfer of the controlling interest of the Tenant's) by specifically deeming such a transfer an "assignment." That is exactly what happened via the merger here.

7. Furthermore, the fact that the corporate entities at issue were LLCs rather than corporations *per se* is an irrelevant distinction for the purposes of the Lease. Ignoring the intent of the parties based on immaterial differences of corporate form renders a result contrary to the obvious intent of the contracting parties.

8. When interpreting contracts, Florida Courts have stated that "the court should reach a contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties" and "should not be interpreted to achieve an absurd result." *Thompson v. C.H.B., Inc.*, 454 So. 2d 55, 57 (Fla. 4th DCA 1984); *Burlington & Rockenback P.A. v. Law Offices of E. Clay Parker,* 160 So. 955, 958 (Fla. 5th DCA 2015) (*citing Specialized Mach. Transp. Inc. v. Westphal*, 872 So. 2d, 424, 426 (5th DCA 2004). The Lease illustrates the Parties' intent that a transfer of the controlling interest of the Tenant should not function as an end-run around the Lease's anti-assignment provisions. That the entities involved were LLCs rather than corporations *per se* should not render the anti-assignment provision ineffective—the Lease should not be interpreted to achieve an absurd result.[3]

---

[3] 6001 also notes that the development, and later proliferation, of the LLC form is a relatively recent development in corporate law. 6001 notes that because of this, interpreting older contracts which refer to corporations (rather than LLCs) to not *include* LLCs may undermine the integrity of the contracts and the intent of the contracting parties.

Furthermore, corporations and LLCs are similar corporate forms with many overlapping features. For examples, LLCs may be taxed as corporations, may be subject to veil piercing, ultra vires

4

9.      Further, even assuming that Purchaser's position is correct, *i.e.,* that merger is not an assignment, the parties to a contract clearly can still contract otherwise, and this would control. The case Purchaser relies upon, *Corporate Express,* is inapposite. That case dealt with the post-merger surviving company's ability to enforce a personal services contract against a third party (former employees). *Corporate Express Office Prods. V. Phillips*, 847 So.2d 406, 408 (Fla. 2003). The contract in question in *Corporate Express* did not include an anti-assignment provision – rather, under Florida law, such personal services contracts are not assignable unless the contract **contains an express assignment provision**. *Id.* at 409-10. The court referred to the longstanding law of corporate mergers, which generally states that "on the date of a merger the surviving corporation becomes 'liable for the debts, contracts and torts' of the former corporation." *Id.* at 413 (*quoting Barnes v. Liebig*, 1 So.2d 247, 253 (Fla. 1941)). The court never addressed the ability of a party to contract otherwise, as the parties <u>expressly</u> did here. That was not an issue in *Corporate Express*.[4]

10.     Rather, the law is clear that a contract may prohibit its assignment by operation of law, if there is language in that contract specifically doing so. *See Star Cellular Tel. Co. v. Baton Rouge CGSA*, 1993 Del. Ch. LEXIS 158 (Del. Ch. July 30, 1993, *aff'd* 647 A.2d 382 (Del. 1994)) (court would not presume that parties intended to prohibit a merger absent contractual language to that effect); *see also, Citizens Bank & Trust Co. v. Barlow Corp.*, 456 A.2d 1283 (Md. 1983) (parties can contract to prohibit assignments by operation of law). The contract here contained

---

action, provide for limited liability—the list continues. The distinction between these forms is academic for the purposes of this issue, and should not be treated as material.
[4] Purchaser's reliance on *Amstone v. Bank of N.Y. Mellon*, 182 So.3d 804 (Fla. Dist. Ct. App. 2016) is equally misplaced. Again, there is no language in the agreement in question (a mortgage) prohibiting assignments.

language which expressly considered a transfer of controlling interest as an assignment, and this overrides any assignment by operation of law.

11. The Parties to the Lease herein contracted for two things: first, that assignments were not permissible without express written consent of the landlord; and second, that any transfer of the controlling interest of the tenant shall be deemed an assignment of this Lease. Under Florida law, parties may contract for such an arrangement, and the assumption of a lease by operation of a merger may be halted by an anti-assignment provision, such the provision here which expressly considers such a merger to be an assignment. That the foregoing language is applied to "corporations" and "stock" rather than LLCs and membership interests is immaterial, and holding that provision ineffective would render an absurd result.

12. The Debtors have no rights under the Lease to assign it, as the anti-assignment provisions of the Lease, which expressly contemplated a merger, override an assumption by merger.

WHEREFORE, 6001 respectfully requests that the Court deny the proposed assumption and assignment of the Lease; and grant such other and further relief as this Court deems appropriate under the circumstances.

Dated: January 31, 2025                                   Respectfully submitted,

**GOLDSTEIN & MCCLINTOCK LLLP**

*/s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk (No. 3320)
500 Silverside Road, Suite 65
Wilmington, DE 19809
Tel: (302) 444-6710
Email: marias@goldmclaw.com

*Counsel for 6001 Powerline Road, LLC*