## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |

### SUPPLEMENTAL DECLARATION OF MATTHEW A. FELDMAN IN FURTHER SUPPORT OF DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF WILLKIE FARR & GALLAGHER LLP AS CO-COUNSEL FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE

I, Matthew A. Feldman, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that, to the best of my knowledge and belief and after reasonable inquiry, I believe the following is true and correct:

1.     I am a member of the firm of Willkie Farr & Gallagher LLP ("Willkie"), which maintains offices for the practice of law at 787 Seventh Avenue, New York, New York 10019, and

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

I am duly authorized to make this declaration (the "<u>Supplemental Declaration</u>") on behalf of Willkie. I am an attorney-at-law, duly admitted to practice in the States of New York, Massachusetts, and Connecticut, the United States District Courts for the Southern and Northern Districts of New York, and the United States District Court for the District of Massachusetts. There are no disciplinary proceedings pending against me.

2. I submit this Supplemental Declaration in further support of *Debtors' Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors,* Nunc Pro Tunc *to the Petition Date* [Docket. No. 474] (the "<u>Application</u>")[2] and to supplement certain disclosures made in my initial declaration in support of the Application [Docket No. 474-2] (the "<u>Initial Declaration</u>"), and in support of the joint reply of the Debtors and Willkie in support of the Application (the "<u>Joint Reply</u>") and response to the objections thereto.[3]

<u>**REPRESENTATION OF CERTAIN PARTIES IN INTEREST**</u>

3. **Connections to the Debtors**. It is my understanding that the United States Trustee (the "<u>UST</u>") has raised questions regarding the terms and subject matter of Willkie's prior and ongoing representations of the Debtors, including (among other things) Willkie's establishment of an exclusionary ethical wall following revelations of alleged misconduct by Mr. Kahn in connection with his personal investment activities unrelated to his role at the Debtors. The following supplemental disclosures are offered to answer those questions to the best of my ability and to further establish a complete record upon which the Application can be decided.

---

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Application or Joint Reply (as defined below), as applicable.

[3] Certain information herein relates to matters (a) contained in Willkie's books and records and/or (b) within the knowledge of other Willkie partners and employees, and is based on the information provided by such persons.

4.      Willkie has served as primary outside counsel to Franchise Group, Inc. ("Franchise Group") and its affiliates since Franchise Group's formation in July 2019. In that role, Willkie has represented Franchise Group in connection with various corporate, regulatory, litigation, and other matters, as described in my Initial Declaration and further described below.

5.      The terms of Willkie's representation of Franchise Group were initially set forth in Willkie's March 2018 engagement letter with Liberty Tax, Inc. ("Liberty Tax"). As described in my Initial Declaration, in 2019, Buddy's combined with Liberty Tax and shortly following the closing of this transaction, Liberty Tax changed its name to Franchise Group, Inc. See Initial Declaration ¶ 18. Accordingly, Franchise Group, Inc. and Liberty Tax are the same legal entity, and the terms of Willkie's original engagement with Liberty Tax continued to govern Willkie's engagement as primary outside counsel to Franchise Group.[4] Franchise Group's Board of Directors and the company's senior management were responsible for selecting Willkie to represent Franchise Group as primary outside counsel. Since the beginning of its engagement by Liberty Tax in 2018, Willkie has reported directly to, and acted under the supervision of, Tiffany McMillan-McWaters, who was the General Counsel of Liberty Tax and became (and remains) the General Counsel of Franchise Group.

6.      On August 27, 2024, Willkie executed a new engagement letter with Franchise Group, effective as of June 1, 2024, which specifically memorializes Willkie's representation of the Debtors in connection with their restructuring and liability management efforts, including in these Chapter 11 Cases. The Engagement Letter is annexed as Exhibit C to the Application. Ms. Tiffany McMillan-McWaters reviewed the Engagement Letter on behalf of Franchise Group and Andrew Laurence ("Mr. Laurence"), Franchise Group's Chief Executive Officer ("CEO"),

---

[4]     As requested by the UST, Willkie has produced a copy of the Liberty Tax engagement letter to the UST (and also to the Prophecy Trust).

executed the letter.

7.      I am aware that the UST has sought additional information regarding the manner in which Willkie was selected to serve as counsel to Franchise Group, including "who selected Willkie to serve in its current capacity as co-counsel." UST Obj. ¶ 14.  As described above, Willkie first represented Liberty Tax, which was renamed as Franchise Group, upon selection by Liberty Tax's then-Board of Directors and senior management.  With respect to its representation of the Debtors in connection with restructuring matters, including in these Chapter 11 Cases, the Debtors' selection of Willkie as counsel occurred in the summer of 2024, well after Mr. Kahn's employment at Franchise Group terminated in January 2024.  Thus, Mr. Kahn had no involvement in the selection of Willkie as the Debtors' restructuring counsel.  As Franchise Group's primary outside counsel for many years, Willkie is deeply familiar with the company's business strategy, operations, financing arrangements, corporate structure, challenges, and opportunities.  Based on my thirty-plus years of experience as a restructuring professional, such knowledge and experience is extremely helpful to debtors when representing them in chapter 11 proceedings, particularly where (as here) the debtors' origins and structure are complex.  It is my understanding that Franchise Group's Board of Directors and senior management likewise valued Willkie's experience and familiarity when selecting Willkie to serve as the Debtors' restructuring counsel.  Over the course of 2024, Willkie was regularly advising Franchise Group regarding its financial and strategic challenges, including potential refinancing transactions.  But, by the summer of 2024, it became apparent that Franchise Group should be considering restructuring alternatives.  Ultimately, Franchise Group's senior management and Board of Directors selected Willkie as restructuring counsel, resulting in the restructuring-specific Engagement Letter.

8.      *Representation of The Vitamin Shoppe in Certain Government Investigations.*  As set forth in my Initial Declaration, in 2020 and 2021, Willkie represented The Vitamin Shoppe (which is owned by Franchise Group) in responding to a grand jury subpoena related to a limited investigation conducted by the Antitrust Division of the Department of Justice (the "DOJ Antitrust Division").  See Initial Declaration ¶ 19(g).  I am aware that the UST has informally requested additional information regarding the nature of Willkie's representation in connection with this matter.  This matter consisted of the DOJ Antitrust Division's investigation into certain potential antitrust issues related to the wages and salaries of employees in certain markets where The Vitamin Shoppe operates.  Following The Vitamin Shoppe's production of responsive documents and information, the DOJ Antitrust Division did not to take any action further to this investigation.  This investigation and the potential antitrust issues were wholly unrelated to these Chapter 11 Cases and wholly unrelated to the Department of Justice's ("DOJ") and Securities and Exchange Commission's ("SEC") investigations of Mr. Kahn.

9.      *Representation of Franchise Group in Badcock Transactions.*  I understand that the UST has inquired regarding Willkie's representation of Franchise Group in connection with certain transactions involving W.S. Badcock.  Those representations included: (i) Franchise Group's acquisition of W.S. Badcock in 2021; (ii) sale and leaseback transactions in 2022 involving the sale of real estate formerly owned by W.S. Badcock, with a concurrent leaseback of such real estate by W.S. Badcock; (iii) various transactions involving the sale of W.S. Badcock consumer receivables in 2022 and 2023; and (iv) Franchise Group's contribution of W.S. Badcock to Conn's, Inc. in 2023.  See Initial Declaration, 19(c), (d).  The consumer receivables transactions involved the sale of receivables to affiliates of B. Riley Financial, Inc. ("BRF").  Willkie did not represent BRF or any of its affiliates in connection with the consumer receivables transactions.

10.     *Representation of Franchise Group in Other Potential Transactions.*  As set forth in my Initial Declaration, Willkie advised Franchise Group on certain transactions that did not proceed, such as the proposed acquisition of Kohl's Inc. in 2022.  See Initial Declaration ¶ 19(f). I am aware that the UST has inquired whether Willkie may have advised Franchise Group regarding other transactions (including the exploration and/or pursuit of potential mergers and acquisitions) such as the Kohl's transaction.  Although Willkie advised Franchise Group from time to time in its consideration of other transactions, other than as disclosed herein or in the Initial Declaration, none materialized and no such potential transactions were comparable regarding the time, resources, and legal expenses invested by Franchise Group in connection with pursuing the Kohl's transaction.

11.     *Representation of Franchise Group in the Gale Matter.*  I am aware that the UST's objection to the Application raises concerns regarding Willkie's representation of the Debtors in connection with Gale et al. v. Vintage Capital Management, LLC et al., Case No. 2024-0726-LWW (Del. Ch. 2024).  See UST Obj. ¶¶ 18, 46.  More particularly, the UST suggests that in representing Franchise Group in connection with that matter, Willkie may be "materially adverse as to those Subordinated Claim Class 10 creditors and, by extension. . . .not disinterested under section 101(14)(C)."  Id. ¶ 46.  While the UST's legal conclusion is addressed (and refuted) in the Joint Reply in support of the Application, I offer the following additional information demonstrating that the apparent factual premise of the UST's objection is, at the very least, incomplete.

12.     Franchise Group is not a defendant in the Gale action.  The lawsuit was filed in July 2024 by certain former public shareholders of Franchise Group.  The lawsuit alleges "breaches of fiduciary duty and related claims stemming from the August 21, 2023 management-led

take-private of the Company, in financial partnership with B. Riley Financial, Inc. and Irradiant Partners." Gale Compl. at 1 (defined terms omitted). Plaintiffs allege that the $30.00 per share that each public shareholder received in the Take-Private Transaction was "unfair" and that certain disclosures in "the Company's Definitive Proxy Statement" and "other public filings" were inaccurate or incomplete. Id. at 2. Neither Franchise Group nor any of its Debtor affiliates is named as a defendant. Rather, the defendants are: (a) Brian Kahn ("Mr. Kahn") and Vintage Capital Management LLC ("Vintage Capital") (Vintage Capital is controlled by Mr. Kahn); (b) Mr. Laurence (Franchise Group's CEO); (c) Matthew Avril (Chairman of the Special Committee of Franchise Group's Board of Directors that evaluated and ultimately approved the Take-Private Transaction); and (d) BRF (which, through certain of its affiliates, became the indirect majority equity holder of Franchise Group via the Take-Private Transaction). Each defendant in the Gale action is represented by separate counsel: Morris, Nichols, Arsht & Tunnell LLP represents Mr. Laurence, Mr. Kahn, and Vintage Capital; Ross Aronstam & Moritz LLP represents Matthew Avril; and Richards, Layton & Finger, P.A. represents BRF.

13.     Thus, Willkie represents Franchise Group in connection with the Gale action solely in Franchise Group's capacity as a ***non-party***. Moreover, Willkie had represented Franchise Group in connection with prior "Section 220" books and records demands served on Franchise Group in 2023 by shareholders of Franchise Group, including the named plaintiffs in the Gale action. The Section 220 demands sought corporate books and records relating to the Take-Private Transaction. Franchise Group, with the assistance of Willkie, made substantial productions to the shareholders in response to their Section 220 demands. The Section 220 matter has since concluded. As further discussed below, infra ¶¶ 34-36, Willkie represented Mr. Kahn and his affiliate, Vintage Capital, in the Take-Private Transaction (with the informed consent of all parties), but: (a) has not provided

legal advice to Mr. Kahn or Vintage Capital in any respect since October 16, 2024; (b) never represented Mr. Kahn or Vintage Capital in the Gale action (which, it bears repeating, was not commenced until long after that transaction was completed); and (c) does not represent any party in the Gale action, each of whom is represented by separate counsel.

14.     As demonstrated by Willkie's representation of Franchise Group in the Section 220 matter, Franchise Group is necessarily indirectly involved with the Gale action, inasmuch as Franchise Group was the company taken private in the Take-Private Transaction.  And Franchise Group may have certain indemnification obligations to directors and officers in connection with claims against such directors and officers related to the Take-Private Transaction.  Willkie has and will continue to represent Franchise Group in that limited capacity to protect Franchise Group's interests.  However, Willkie is not involved in any of the ongoing investigations into potential claims related to the Take-Private Transaction (among certain other transactions) in these Chapter 11 Cases, which are being conducted by separate, independent counsel.  More particularly, Michael Wartell, an independent director of Debtors Freedom VCM Interco, Inc. and Freedom VCM, Inc. (together, the "HoldCo Debtors") has been tasked with overseeing an investigation into whether the HoldCo Debtors' estates possess any potential claims related to the Take-Private Transaction (among certain other transactions).  Mr. Wartell has retained the law firm Akin Gump Strauss Hauer & Feld LLP as special investigation counsel in connection with conducting that investigation.  Moreover, Todd Arden, Christopher Meyer, and John Hartmann, independent directors of certain other Debtors, have retained the law firm Petrillo Klein & Boxer LLP ("Petrillo") in connection with conducting a similar investigation with respect to any potential claims held by any of the Debtors other than the HoldCo Debtors.  Finally, the Official Committee of Unsecured Creditors in these Chapter 11 Cases is conducting its own, separate investigation

into such potential claims.  At the direction of Franchise Group and the other Debtors, Willkie has been cooperating and providing information to each independent investigator.

15.     I believe that the connection between the Take-Private Transaction and these Chapter 11 Cases is that potential claims related to the Take-Private Transaction are being independently investigated, as described above.  I understand that these potential claims are being investigated for the purpose of determining whether the claims should be preserved in a post-chapter 11 litigation trust(s) established under the Plan.  Ultimately, if any potential claims are preserved, a trustee(s) (to be appointed at a later date), with its own independent counsel, will determine whether to pursue the claims for the benefit of the trust's beneficiaries.  Put simply, Willkie has no role, and will have no role, in investigating or prosecuting any potential claims related to the Take-Private Transaction or any other transaction that is subject to the independent investigations.

16.     I am aware that the UST has asserted that the Gale plaintiffs are "Subordinated Claim Class 10 creditors."  UST Obj. ¶ 21.  That is factually incorrect.  None of the Gale plaintiffs have filed a proof of claim in these Chapter 11 Cases and the general bar date for filing proofs of claim has now passed.  Moreover, as noted above, the Gale action does not assert claims against Franchise Group.

17.     I am aware that the UST has expressed concern that Willkie "seeks approval of a plan that would provide Willkie relief from claims relating to its advice rendered to other parties," referring to the potential release of claims relating to Willkie's prepetition work on "the Take-Private Transaction and matters related to Mr. Kahn."  UST Obj. ¶ 19.  This concern is moot.  As set forth in the *Second Amended Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (the "Plan"), which was filed concurrently with this Supplemental Declaration, the Plan

does not provide Willkie with a release from any claims related to prepetition services that Willkie provided.

18.    *Representation of Franchise Group in DOJ & SEC Inquiries*.  As set forth in my Initial Declaration, in 2023, Willkie represented Franchise Group with respect to inquiries from the SEC and DOJ.  See Initial Declaration ¶ 19(h).  I am aware that the UST has requested additional information regarding those representations.

19.    In January 2023, the SEC issued a third-party document subpoena to Franchise Group in connection with an investigation captioned Bristol Advisors, LLC (P-02134).  The subpoena sought production of two categories of documents: (1) "[f]or the period between January 1, 2018 through December 31, 2019, all Documents and Communications Concerning the issuance of Buddy's Newco Series A Convertible Preferred Stock"; and (2) "[t]he Buddy's Disclosure Letter" as defined "in Article IV of the Agreement of Merger and Business Combination Agreement, dated as of July 10, 2019, by and among Liberty, Buddy's, Franchise Group New Holdco, LLC, Franchise Group B merger Sub, LLF, and Vintage RTO, L.P."  Franchise Group had no responsive documents regarding the first category, and promptly produced the Buddy's Disclosure Letter as requested.  At no point did the SEC indicate that the Bristol Advisors, LLC investigation had any connection to even potential misconduct involving Franchise Group or any Franchise Group related personnel, including Mr. Kahn.

20.    In June 2023, Franchise Group received a third-party document subpoena from the DOJ related to its investigation into Prophecy Trading LP and three of Prophecy Trading LP's affiliates.  Willkie represented Franchise Group in connection with responding to this subpoena. The DOJ subpoena sought "documents involving any pledge, assignment, or transfer of FRG or Buddy's Newco preferred stock" to the named Prophecy entities.  The DOJ subpoena also sought

certain categories of documents or communications "between Brian Kahn or any other FRG or Buddy's Newco board member, officer, executive, or employee, and Jeffery Spotts, John Hughes, or any other representative of" the named Prophecy entities. Willkie did not represent Mr. Kahn in connection with responding to this subpoena when it was received; rather, Mr. Kahn was represented by Douglas S. Brooks, of the law firm Libby Hoopes Brooks & Mulvey LLP. The DOJ did not indicate that the subpoena to Franchise Group was in connection with suspected wrongdoing by Mr. Kahn. In July 2023, Franchise Group promptly produced (via Willkie) a small number of documents responsive to the DOJ subpoena.

21.     *November 2023 Charges Against Mr. Hughes Implicating Mr. Kahn.* As set forth in my Initial Declaration, Franchise Group and Willkie first learned of Mr. Kahn's alleged wrongdoing related to Prophecy on or about November 2, 2023, when the federal government announced it had filed a criminal Information and related SEC civil suit against John Hughes. See Initial Declaration ¶ 22. Mr. Hughes was the co-founder, president, and chief compliance officer of Prophecy. The Information referenced (although not by name) Jeffrey Spotts (Prophecy's co-founder and CEO) as unindicted "Co-conspirator 1" and Mr. Kahn (likewise, not by name) as unindicted "Co-conspirator 2." The Information alleged that Hughes, Spotts, and Kahn defrauded Prophecy's investors by, *inter alia*, misrepresenting the nature of Prophecy's investments and concealing Prophecy's investment losses. The Information also alleged that Mr. Kahn was a "sub advisor" to Prophecy and conducted his Prophecy-related activities in his personal capacity, not in his capacity as then-CEO of Franchise Group.

22.     Relatedly, the Information, for the first time, shed light on the purpose of the third-party SEC and DOJ subpoenas issued to Franchise Group in January 2023 and June 2023, respectively. Prophecy was alleged to have misled its investors regarding the personal collateral

posted by its sub-advisors, including Mr. Kahn, and had accepted from Mr. Kahn documents purporting to evidence: (a) Mr. Kahn's ownership of "approximately $125 million of [preferred] stock in a company . . . that Co-conspirator 2 controlled"; and (b) Mr. Kahn's transfer of that stock to Prophecy as collateral.  Information at 9.  Although "Company-2" was not named in the Information, I understand that "Company-2" referred to Buddy's Newco, LLC, which is an indirect subsidiary of Franchise Group that holds Franchise Group's investment in the Buddy's Home Furnishings business.

23.    The Information did not allege—nor, to my knowledge, has the government claimed before or since—that Franchise Group was involved in or aware of the alleged wrongdoing related to Prophecy, including Mr. Kahn's alleged misconduct.  To the contrary, the Information alleged that Mr. Kahn had "created a fake preferred stock agreement" and that the underlying "convertible stock certificates" purporting to evidence Mr. Kahn's ownership stake in Buddy's Newco, LLC "were a complete fabrication."  Information, at 9.  Moreover, prior to that date, Willkie did not represent Mr. Kahn and/or his affiliates in any Prophecy-related matters.

24.    *Willkie Established an Ethical Wall.*  As noted in my Initial Declaration and above, supra ¶¶ 4-5, prior to the November 2, 2023 revelations described above, Willkie was both: (a) Franchise Group's primary outside counsel; and (b) counsel to Mr. Kahn personally, primarily in connection with certain investments by his personal investment entity (Vintage Capital) in certain matters unrelated to Prophecy, the SEC subpoena, or the DOJ subpoena.  See Initial Declaration ¶¶ 23, 27.  Accordingly, Willkie promptly established an internal exclusionary ethical wall.  The wall took effect on November 7, 2023.

25.    Following establishment of the wall, Willkie continued to represent Franchise Group as outside counsel in a variety of matters.  Those matters included continuing to respond to

the DOJ subpoena, along with Petrillo.  Separately, effective November 8, 2023, the then-Board of Directors of Franchise Group—including Mr. Bryant Riley and Mr. Laurence (and not including Mr. Kahn)—engaged Petrillo as independent legal counsel to conduct an internal investigation into whether Franchise Group or any of its executive officers or employees at the time (other than Mr. Kahn) were involved in, or had any knowledge of, Mr. Kahn's alleged misconduct involving Prophecy.  As described in the First Day Declaration, Petrillo investigated the matter for two months, interviewed nine witnesses, and examined approximately 18,000 documents.  The investigation concluded in December 2024, and Mr. Kahn left Franchise Group in January 2024.

26.    Following the conclusions of Petrillo's investigation, Willkie continued to represent Mr. Kahn/Vintage Capital subject to the wall.  Attorneys engaged in those matters: (a) assisted Mr. Kahn's primary personal counsel on the Prophecy investigation (Mr. Brooks); and (b) undertook certain additional matters for Mr. Kahn/Vintage Capital, including in connection with Mr. Kahn's consent to the W.S. Badcock contribution to Conn's Inc. and related amendments to the HoldCo Term Loan Credit Agreement (as defined in the First Day Declaration) and his separation from Franchise Group in January 2024.  Willkie's work in connection with Mr. Kahn's consent to the W.S. Badcock transaction and his separation is described more fully below, infra ¶¶ 41,45.  Willkie's representation of Mr. Kahn/Vintage Capital ended on or about October 16, 2024.

27.    Willkie's exclusionary ethical wall practices are fully consistent with industry and professional standards, and ensure that confidential information for a screened client or matter is not accessible to attorneys on the other side of the wall.  Specifically, Willkie uses a software called Security Policy Manager ("SPM") to create and maintain ethical walls at the firm.  SPM regulates which Willkie attorneys and other personnel can access information stored in iManage,

the firm's document management system.  If an individual is not authorized by SPM to access documents associated with a particular client matter, no documents saved under the matter will be visible in iManage to the individual.  With respect to hard copy documents, Willkie's Records Department confirms via SPM that an individual requesting any document is authorized to access the document and, if so, only then releases the requested document to the individual.  Notices regarding the creation of ethical walls are distributed by email to all Willkie attorneys and, additionally, each Willkie attorney receives periodic reminders of all ethical wall restrictions to which each attorney is subject.

28.    The exclusionary ethical wall thus operated (and continues to operate) to ensure that Franchise Group's confidential information regarding the Prophecy matters was not inadvertently shared with Mr. Kahn/Vintage Capital, and vice-versa.  Moreover, none of the Willkie attorneys that represented Mr. Kahn/Vintage Capital following the wall's creation have had any involvement in Willkie's representation of Franchise Group in connection with its restructuring efforts, including in these Chapter 11 Cases, and remain walled off from such matter in all respects.  Based on a review of billing records, only one Willkie lawyer working on the representation of Mr. Kahn/Vintage Capital after establishment of the wall did any work on any Franchise Group matter after the wall was established.  The lawyer is litigation partner, Mr. Tariq Mundiya, and the matter was the Section 220 demands/Gale matter, in which Willkie represents Franchise Group (not Mr. Kahn/Vintage Capital).  As described above, supra ¶¶ 11-13, that matter was brought by former public shareholders of Franchise Group who claim that the $30.00 per share they received in August 2023 in the Take-Private Transaction was too low.  Mr. Mundiya billed approximately 25.2 hours on that matter, which included the Section 220 demands and the Gale lawsuit.  The Gale complaint, filed in July 2024, includes allegations describing the

14

November 2023 revelations about the Prophecy matter, but is squarely premised on claims regarding disclosures in the Take-Private Transaction.  Accordingly, Mr. Mundiya's work representing Franchise Group in connection with the <u>Gale</u> matter does not relate to the criminal and civil allegations on which Willkie (including Mr. Mundiya) represented Mr. Kahn.  Again, the purpose and function of the ethical wall is to protect the confidential information of each client, and there is no plausible scenario in which Mr. Mundiya's limited work on the <u>Gale</u> matter for Franchise Group would have impaired the wall's efficacy.

29.     Following the establishment of the exclusionary wall, Franchise Group and its counsel, including Willkie, communicated with Mr. Kahn and his counsel on a variety of matters, all in a manner consistent with the exclusionary wall.  Until January 19, 2024, Mr. Kahn remained the CEO of Franchise Group.  For example, given his long-standing relationship with the CEO of Conn's, Inc. and in light of the fact that Mr. Kahn remained the CEO of Franchise Group, the Board of Directors of Freedom VCM Holdings, LLC (excluding Mr. Kahn) determined to permit Mr. Kahn to continue to interact with and negotiate with Conn's, Inc. regarding the W.S. Badcock transaction.  In connection with negotiating that transaction, Franchise Group and Willkie would regularly interact with Mr. Kahn regarding the transaction and the related amendments to the HoldCo Term Loan Credit Agreement.  Following the completion of the transaction, Franchise Group and Willkie interacted with Mr. Kahn regarding the financial status of (and ultimate bankruptcy filing by) Conn's, Inc. and its subsidiaries.  Franchise Group and Willkie also provided periodic updates to Mr. Kahn and his counsel with respect to Franchise Group's interactions with various constituencies regarding the potential impact of the public announcement of his alleged involvement with Prophecy, and coordinated with Mr. Kahn and his counsel in respect of certain communications by Franchise Group to, and the potential impact on Franchise Group that may

arise from, the Prophecy-related allegations.

30.     **Connections to B. Riley Financial, Inc.**   As stated in my Initial Declaration, Willkie has represented, and continues to represent, BRF and certain of its affiliates in connection with litigation matters, including securities class action lawsuits, all of which are unrelated to the Debtors or these Chapter 11 Cases.  See Initial Declaration ¶ 28; see also id. Schedules 2, 3.  BRF and its affiliates are represented in these Chapter 11 Cases by the law firm Richards, Layton & Finger, P.A.

31.     The UST has noted that Willkie appeared for BRF in Calenture, LLC v. B. Riley Financial, Inc., Case No. 21-cv-6087-MKV (S.D.N.Y. 2021).  See UST Obj. ¶ 27,33.  Willkie entered a brief appearance to facilitate BRF's retention of counsel to handle the matter.  The Calenture action was filed in July 2021 by former public shareholders of Franchise Group, seeking disgorgement of BRF profits from the purchase and sale of Franchise Group stock.  Willkie's representation of BRF was limited to filing a letter motion on behalf of BRF requesting an extension of time to respond to the complaint.  The law firm Robbins Alloy Belinfante Littlefield LLC replaced Willkie as BRF's counsel before any responsive pleadings were filed or any other substantive actions in the matter occurred.  Franchise Group was named as a nominal defendant in the action; solely to ensure that all necessary parties were before the Court (no claims were asserted against Franchise Group).  The Calenture action was voluntarily dismissed on November 19, 2021.  All of this occurred years before the Take-Private transaction and the restructuring work.

32.     **Prior Representations of Mr. Kahn/Vintage Capital**.  I am aware that the UST has requested additional information regarding Willkie's representations of Mr. Kahn and his personal investment vehicle (Vintage Capital).  The representations described below are grouped into three time periods: (a) prior to the consummation of the Take-Private Transaction on August

21, 2023; (b) the Take-Private Transaction (and ancillary matters related thereto); and (c) after the

Take-Private Transaction.

33.    *Prior to Take-Private Transaction*.  As disclosed in my Initial Declaration, prior to

the completion of the Take-Private Transaction, Willkie, from time to time, acted as counsel to

Mr. Kahn/Vintage Capital.  The primary areas of such representation were:

- From December 2018 to 2020, Willkie represented Vintage Capital and its affiliates as litigation counsel in connection with the terminated acquisition of Rent-a-Center Inc.  See Initial Declaration ¶ 16.

- In July 2019, Willkie represented Buddy's and Vintage Capital (as the controlling shareholder of Buddy's) in connection with the merger of Liberty Tax and Buddy's, which ultimately led to the formation of Franchise Group.  See id.

- In 2019, 2020, and 2021, Willkie represented Vintage Capital and its affiliates in connection with investments in Red Robin, KVH Industries, and The Vitamin Shoppe, and during such period and thereafter, Willkie advised Mr. Kahn in certain aspects of his investment in the then-public Franchise Group.  See id. ¶ 17.

At the time of such transactions, Vintage Capital was controlled by Mr. Kahn.  Willkie was

selected for these representations by Mr. Kahn.

34.    *Take-Private Transaction and Related Matters*.   As disclosed in my Initial

Declaration, Willkie represented Mr. Kahn/Vintage Capital in connection with the Take-Private

Transaction and related matters further described below.  See id. ¶ 19.  Willkie's representation of

Mr. Kahn/Vintage Capital in the Take-Private Transaction was governed by the terms of the

pre-existing engagement letter between Willkie and Vintage Capital, dated December 20, 2018.

Because Willkie represented Franchise Group in other matters (to be clear, not including the

Take-Private Transaction), Willkie sought and obtained written consent from Franchise Group to

represent Mr. Kahn/Vintage Capital in the Take-Private Transaction.  A copy of such written

consent has been produced to the UST.  It is my understanding that, similar to when a private

equity sponsor acquires a portfolio company, when a public company's executives and/or senior

management team proposes to take the company private, it is not uncommon for: (a) a public company's primary outside counsel to represent the company's executives and/or senior management; (b) the company to use separate counsel; and (c) a special committee of disinterested directors to evaluate the proposed transaction with the aid of still further separate counsel.

35.     That is what occurred in this transaction:  Willkie represented Mr. Kahn/Vintage Capital, Troutman Pepper Sanders & Hamilton LLP represented Franchise Group, and Wachtell, Lipton, Rosen & Katz LLP represented the Special Committee of the Board of Directors of Franchise Group (the "Special Committee").  Counsel for each party negotiated the Agreement and Plan of Merger (i.e., the definitive document related to the Take-Private Transaction); the debt and equity financing documents related to the transaction (including the term loan agreement at the newly formed holding companies that became direct and indirect parent companies of Franchise Group, Inc.); and the relevant subscription documentation and limited liability company agreements for the new holding companies that were created through the transaction.  Willkie also advised Mr. Kahn/Vintage Capital on, among other things, securities law filing obligations (such as amendments to his Schedule 13D), modifications to his margin loan agreement, and required regulatory approvals for the Take-Private Transaction, including under the Hart-Scott-Rodino Antitrust Improvements Act of 1986.  The lenders to the new holding companies created through the Take-Private Transaction, who now compose the Ad Hoc Group of Freedom Lenders in these Chapter 11 Cases, were also represented by sophisticated counsel, including Sheppard Mullin LLP and Davis Polk & Wardwell LLP.

36.     My Initial Declaration disclosed that Willkie had represented Mr. Kahn/Vintage Capital in connection with matters related to the Take-Private Transaction.  See Initial Declaration ¶ 21.  I am aware that the UST has sought additional information in that regard.  Willkie briefly

18

represented Mr. Kahn in Pels v. Avril, Case No. 23 CV H 07 0508 (Ohio C.P. 2023).  Willkie's role was limited to filing a joinder on behalf of Mr. Kahn and attending a short hearing in Ohio with Mr. Kahn's local Ohio counsel.  The joinder was to a pleading filed by Franchise Group in opposition to the plaintiff's motion for a preliminary injunction.  Willkie did not represent BRF, Franchise Group, or any other defendant in the Pels action.  Franchise Group was represented by Taft Stettinius & Hollister LLP and Troutman Pepper Hamilton Sanders LLP.  BRF was represented by Isaac Wiles & Burkholder, LLC and Sullivan & Cromwell LLP.

37.     The plaintiff in the Pels action was a former public stockholder of Franchise Group. The action sought damages against Mr. Kahn, Franchise Group, BRF, and others arising from the alleged negligent misrepresentations and omissions in the proxy statement related to the Take-Private Transaction.  The action also sought to enjoin the consummation of the Take-Private Transaction.  The Pels action was commenced in the General Division of the Court of Common Pleas in Delaware County, Ohio in July 2023 and voluntarily dismissed on August 14, 2023.

38.     As more fully described herein, supra ¶ 14, Willkie has no involvement in investigating potential claims related to the Take Private Transaction in connection with these Chapter 11 Cases.  Rather, potential claims related to the transaction are being independently investigated.

39.     *After the Take-Private Transaction*.  After the Take-Private Transaction was consummated on August 21, 2023, Willkie represented Mr. Kahn/Vintage Capital in connection with the following matters.

40.     As described more fully above, supra ¶¶ 24-25, after implementing the exclusionary ethical wall on November 7, 2023, certain Willkie attorneys represented Mr. Kahn alongside his primary counsel, Mr. Brooks, in connection with the SEC and DOJ investigations into the

Prophecy matters.  Willkie did not represent Mr. Kahn/Vintage Capital on those matters prior to November 7, 2023.

41.    Beyond the disclosures already provided herein, certain Willkie attorneys also represented Mr. Kahn in connection with his separation from Franchise Group and the negotiation and execution of that certain *Consulting Agreement*, dated as of January 19, 2024, by and between Mr. Kahn and Franchise Group (the "Separation Agreement"), pertaining to the separation.  See Initial Declaration ¶ 26.  A separate team of Willkie attorneys operating on the other side of the exclusionary ethical wall represented Franchise Group in connection with these matters.  See id.

42.    Certain Willkie attorneys that are not advising the Debtors in connection with these Chapter 11 Cases also represented Mr. Kahn in connection with his agreement to relinquish certain governance rights conditioned upon the closing of, and to facilitate, a potential securitization transaction involving Franchise Group's Pet Supplies Plus business line.  A separate team of Willkie attorneys operating on the other side of the exclusionary wall represented Franchise Group in connection with this matter.

43.    Finally, Willkie attorneys represented Mr. Kahn in connection with an arbitration matter involving Prophecy investors.  Willkie attorneys also assisted Mr. Kahn in connection with certain disputes between Mr. Kahn and the Prophecy Trust.  None of these attorneys represent the Debtors in these Chapter 11 Cases

44.    Willkie provided these services to Mr. Kahn/Vintage Capital with the knowledge and consent of Franchise Group and in accordance with the exclusionary ethical wall that was, and remains, in effect.  Indeed, minutes from the November 9, 2023 meeting of Franchise Group's Board of Directors expressly note that Mr. Kahn and his counsel, Willkie partner Tariq Mundiya, were in attendance only for the initial portion of the meeting, but other Willkie attorneys (who

were representing Franchise Group) remained.  Moreover, the Board minutes further note that "[p]rior to Messrs.  Kahn and Mundiya leaving the meeting, the Board and other meeting participants agreed that future meetings of the Board regarding the foregoing subjects and related implications on the Company and its subsidiaries would be overseen by the Board without the participation of, or notice to, Mr. Kahn."  There is thus no reasonable dispute that all parties expressly consented—as confirmed in writing by the Board minutes—to Willkie's representations subject to the exclusionary ethical wall.

45.    In connection with Mr. Kahn's agreement to provide his consent to the consummation of the contribution of W.S. Badcock to Conn's, Inc. and the related modifications to HoldCo Term Loan Credit Agreement effected in connection therewith, Freedom VCM Holdings, LLC deposited $15 million into an escrow account held by Willkie, in its capacity as Mr. Kahn's counsel (the "Escrow Amount").  In January 2024, the parties entered into the Separation Agreement that memorialized the terms and conditions of Mr. Kahn's resignation from his role as: (a) a member of the Boards of Directors of Franchise Group and Freedom VCM Holdings, LLC; and (b) the Chief Executive Officer of Franchise Group.  At the same time and in connection with the negotiation and execution of the Separation Agreement, the Escrow Amount was released to Mr. Kahn and he entered into a promissory note made in favor of Freedom VCM Holdings, LLC, pursuant to which Mr. Kahn agreed to repay the Escrow Amount with interest to Freedom VCM Holdings in accordance with the terms thereof.  Willkie's representation of Mr. Kahn in connection with his separation from Franchise Group concluded in January 2024. The Debtors rejected the Separation Agreement in these Chapter 11 Cases.

46.    As noted above and in my Initial Declaration, Willkie has not provided legal advice to Mr. Kahn or Vintage Capital in any respect since October 16, 2024, and Willkie has not, and

will not, represent Mr. Kahn/Vintage Capital in connection with any matters going forward, including in connection with any matters related to the Debtors or these Chapter 11 Cases.  See Initial Declaration ¶ 27.  In 2024, Willkie's representations of Mr. Kahn/Vintage Capital accounted for 0.07% of Willkie's total annual revenue.

47.    **Connections with Liberty Tax.**  I am aware that the UST has sought additional information regarding Willkie's work for Liberty Tax.  As noted above, Franchise Group was the name given to the surviving entity of the July 2019 combination of Buddy's and Liberty Tax, Inc.  In 2021, Franchise Group sold the Liberty Tax business to Nextpoint Financial, Inc. See Initial Declaration ¶ 15.  Liberty Tax has not been affiliated with the Debtors since the closing of such sale transaction.  Since January 2024, Willkie has provided limited services to Liberty Tax under its current ownership (which, again, is entirely separate and distinct from Franchise Group), including providing corporate legal opinions in connection with matters and transactions wholly unrelated to the Debtors or these Chapter 11 Cases.

48.    **Connections with American International Group.**  Following the filing of the Application and the Initial Declaration, the Debtors obtained replacement insurance coverage from certain affiliates of American International Group ("AIG").  Willkie currently represents AIG and certain of its affiliates in connection with a number of insurance regulatory and litigation matters unrelated to the Debtors or these Chapter 11 Cases.  Willkie has not, and will not, represent AIG in connection with the Debtors, these Chapter 11 Cases, or any claims or disputes under the Debtors' policies with AIG or its affiliates.  AIG represented 1.8% of Willkie's revenue in 2021, approximately 1.6% of Willkie's revenue in 2022, and approximately 2.2% of Willkie's revenue in 2023.  Willkie intends to continue to represent AIG on matters unrelated to the Debtors or these Chapter 11 Cases.

## WILLKIE'S COMPENSATION

49.    My Initial Declaration disclosed the payments that Willkie received in the ninety days prior to the Petition Date for services rendered to the Debtors.  I am aware that the UST has sought additional information in this regard, presumably so that it can evaluate whether any such payments may give rise to potential preference liability by Willkie to the Debtors' estates. Additional detail regarding such payments is attached to this Supplemental Declaration as **Exhibit A**.

50.    In my view, all of the payments that Willkie received in the ninety days prior to the Petition Date for services rendered to the Debtors were made by the Debtors in the ordinary course of business.  As stated in my Initial Declaration, Willkie held no retainer as of the Petition Date. See Initial Declaration ¶ 36.  Willkie waived any outstanding fees and expenses that were owed as of the Petition Date, and Willkie therefore is not owed any amounts for prepetition fees and expenses.  Id.  Based on Willkie's review of its books and records as of the date hereof, Willkie believes that the total amount of prepetition fees and expenses that has been waived is $394,690.37.

51.    By reason of the foregoing, I continue to believe that Willkie is eligible for employment and retention by the Debtors pursuant to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code, and the applicable Bankruptcy Rules and Local Rules.

Date:  February 3, 2025

/s/ Matthew A. Feldman
Matthew A. Feldman
Willkie Farr & Gallagher LLP