## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |

### SUPPLEMENTAL DECLARATION OF DAVID ORLOFSKY
### IN SUPPORT OF DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE
### RETENTION AND EMPLOYMENT OF WILLKIE FARR & GALLAGHER LLP AS
### CO-COUNSEL FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE

I, David Orlofsky, pursuant to 28 U.S.C. § 1746, and under penalty of perjury, declare the

following to the best of my knowledge, information, and belief:

1.      I am a Managing Director of AlixPartners, LLP, an affiliate of AP Services LLC

("<u>APS</u>") and an internationally recognized restructuring and turnaround firm.  By order, dated

December 16, 2024, the Court approved (i) APS's employment and retention by the debtors and

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

debtors in possession in the above-captioned cases (collectively, the "Debtors") and (ii) my designation as Chief Restructuring Officer. I have served as the Chief Restructuring Officer of Debtors Freedom VCM Holdings, LLC and its subsidiaries, including Franchise Group, Inc., since October 11, 2024.

2. All facts set forth in this supplemental declaration (the "Supplemental Declaration") are based upon my personal knowledge of the Debtors' operations and financing, information learned from my review of relevant documents, information supplied to me from members of the Debtors' management or the Debtors' advisors, or my opinion based on my knowledge, experience, and information concerning the Debtors' operations and financial condition. If called to testify, I could and would testify competently to the matters set forth in this Supplemental Declaration.

3. I submit this Supplemental Declaration in further support of the *Debtors' Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors,* Nunc Pro Tunc *to the Petition Date* [Docket No. 474] (the "Application")[2] and the *Declaration of David Orlofsky in Support of Debtors' Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors,* Nunc Pro Tunc *to the Petition Date* [Docket No. 474-3] (the "Initial Declaration").

4. The Debtors will suffer significant harm if the Application is denied. As discussed in the Initial Declaration, Willkie represented the Debtors on an ongoing basis for several years preceding the Petition Date. The Debtors have benefitted and are continuing to benefit from Willkie's significant institutional knowledge during these Chapter 11 Cases.

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Application.

5.      Willkie played an integral role in the development of the Debtors' prepetition secured capital structure. Since 2019, Willkie has represented the Debtors with respect to substantially all of their financing transactions.  Willkie negotiated all of the Debtors' prepetition secured credit documentation and has since continually advised the Debtors on their rights and obligations under those documents.  Many of the same Willkie corporate finance lawyers that helped to develop the Debtors' prepetition capital structure have since (i) negotiated the documentation memorializing the Debtors' postpetition financing facility (the "DIP Facility"), (ii) continued to advise the Debtors on their rights and obligations under the DIP Facility and related discussions with the lenders thereunder, and (iii) assisted the Debtors with respect to potential exit financing paths, a workstream that remains ongoing and is anticipated to increase in activity following the Debtors' receipt of bids for their assets on February 3, 2025 (the "Bid Deadline").

6.      In addition, Willkie also advised the Debtors on substantially all of their corporate transactional matters since 2019.  These matters included the acquisitions of all of the businesses that are now the subject of the Debtors' chapter 11 sale process and ongoing advice relating to the Debtors' subsequent ownership.  In the course of those prepetition representations, Willkie became familiar with those businesses, from their general operations to the specifics of their tax planning, employee benefits programs, and insurance policies, among other things.  Willkie also developed extensive knowledge of the strengths and weaknesses of these businesses, which in turn heavily informed the overarching path of these Chapter 11 Cases.   Specifically, Willkie was well-positioned to advise the Debtors in considering the costs and benefits of potentially winding down the American Freight business while simultaneously conducting a going-concern sale process for the remainder of the Debtors' business segments.  Similarly, after the Debtors, in

consultation with their advisors, decided to pursue the parallel liquidation of American Freight, Willkie was uniquely qualified to assist the Debtors in quickly developing and implementing the legal infrastructure to accomplish that liquidation alongside a going concern marketing process for Pet Supplies Plus, The Vitamin Shoppe, and Buddy's.

7.      Accordingly, based on my observations of Willkie's position as described above, I believe Willkie is better equipped than any other law firm to continue advising the Debtors on their financing facilities, the divestiture of their business lines, their continued compliance with the DIP Facility and the Restructuring Support Agreement ("RSA"), the prosecution of their chapter 11 plan, and the culmination of these Chapter 11 Cases generally. Conversely, if Willkie is not retained, it will be necessary to bring on replacement counsel, which, as further described below, will (a) impose significant delay on the Debtors' restructuring process; and (b) deprive the Debtors of Willkie's historical knowledge and experience, both of which would cause significant harm to the Debtors and the estates' stakeholders going forward.

8.      These Chapter 11 Cases have been marked by a high level of complex litigation since their inception. Replacement counsel would be required to assume responsibility for several ongoing disputes and litigation that involve all of the Debtors' key creditor constituents, including the DIP Lenders, the ABL Lenders, the Ad Hoc Group of First Lien Lenders, the Ad Hoc Group of Freedom Lenders, the Unsecured Creditors Committee, and the United States Trustee. These disputes relate to, among other things, the terms of the Debtors' proposed disclosure statement and plan, the Debtors' restructuring strategy, as well as a series of appeals regarding the Court's approval of the Debtors' DIP Facility, bidding procedures, payments to critical vendors, and the Debtors' ability to avail themselves of their exclusivity period under the Bankruptcy Code. All of these disputes and litigations—almost all of which involve time-sensitive discovery and hearing

schedules, and which are each the subject of ongoing, fluid, and in some cases interdependent settlement discussions among the Debtors and the various creditor constituencies—will require significant estate resources to resolve.  Introducing new counsel would exacerbate this situation.  Given the complexity of these workstreams, it is implausible to assume that replacement counsel could adhere to existing schedules; rather, it seems unavoidable that substantial delays would result.

9.      In addition to these material litigation workstreams, replacement counsel would need to assume day-to-day management of these Chapter 11 Cases immediately following the Bid Deadline, which would seriously disrupt the Debtors and challenge their management team at a critical juncture in their bankruptcy.  The Debtors' sale hearing is currently scheduled for February 13, one week after the Court's hearing on the Application.  It is difficult to imagine identifying and hiring replacement counsel on this timeline, let alone envisioning that counsel adequately handling the lead-up to the sale hearing.  For example, at present, the Willkie team is attempting to consensually resolve more than 150 objections to proposed cure amounts related to executory contracts marked for potential assumption in the Debtors' sale processes, certain of which are evolving towards litigation processes (i.e., discovery and hearing scheduling) and which the Debtors realistically cannot resolve in advance of the February 13 sale hearing absent Willkie's continued involvement.

10.     Accordingly, replacing Willkie would require the Debtors to push their currently scheduled February 13 sale hearing and March 18 confirmation hearing by at least several weeks, if not longer—even assuming that replacement counsel were willing and able to devote herculean effort and resources to the transition.  Extending the sale hearing immediately prior to its occurrence would threaten progress made with bidders to date and may signal a lack of stability to

potential buyers.  The Chapter 11 process has been disruptive to operations in that certain vendors have terminated their prepetition exclusivity arrangements and prospective franchisees have cancelled or paused their plans to open new franchises.  Further delays caused by a change in counsel would only exacerbate these types of operational issues.

11.     Moreover, without the consent of the Required Consenting First Lien Lenders, the Debtors will face one or more imminent defaults under their RSA and their DIP Facility as a result of extending their timeline. As it stands, the confirmation hearing has already been delayed by more than six weeks from the original RSA milestone of February 1, and it is not clear that the Required Consenting First Lien Lenders would agree to further extensions necessary to avoid these defaults. Further, absent consent of the Required Supermajority Lenders (as defined in the DIP Facility), the Debtors must emerge from bankruptcy by May 6, 2025, which is the date on which the DIP Facility will mature.  Replacement counsel puts that deadline in serious jeopardy.

12.     Even aside from the complexities created by the ongoing disputes, litigation, and number of parties, the Chapter 11 Cases are inherently large and complex.  Among other things, these Chapter 11 Cases involve more than fifty Debtors with operations and creditors throughout the United States.  Compounding the foregoing are the myriad and distinct issues that have arisen in each of the Debtors' four operating businesses, each of which has its own management team. Willkie has been instrumental in providing day-to-day advice to help each business navigate the chapter 11 process.

13.     Denying Willkie's retention would deprive the Debtors of their counsel of choice at a time when that counsel's historical experience, and the benefits of their ongoing involvement, are needed more than ever due to the complex and highly contentious and litigious nature of these Chapter 11 Cases.  I understand that YCST is available to serve as conflicts counsel in the event

that Willkie recuses itself from representing the Debtors on discrete matters, and I am confident that YCST has the expertise necessary to serve in that role.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

February 3, 2025                                    _/s/ David Orlofsky_____
                                                    David Orlofsky
                                                    Chief Restructuring Officer