**<u>EXHIBIT B</u>**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

FRANCHISE GROUP, INC., *et al.*,[1]

Debtors.

Chapter 11

Case No. ~~24- 12480~~24-12480
(~~JTD~~LSS)

(Jointly Administered)

**Ref. Docket No. 152**

### ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION AND VOTING PROCEDURES, INCLUDING (A) FIXING THE VOTING RECORD DATE, (B) APPROVING THE SOLICITATION PACKAGES AND PROCEDURES FOR DISTRIBUTION, (C) APPROVING THE FORM OF THE BALLOTS AND SOLICITATION MATERIALS AND ESTABLISHING PROCEDURES FOR VOTING, AND (D) APPROVING PROCEDURES FOR VOTE TABULATION; (III) SCHEDULING A CONFIRMATION HEARING AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES; AND (IV) GRANTING RELATED RELIEF

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Upon consideration of the motion (the "Motion") of the Debtors for the entry of an order, (i) approving the *Disclosure Statement for the ~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. ~~655~~●] (as amended, modified, or supplemented from time to time, the "Disclosure Statement"); (ii) approving solicitation and voting procedures with respect to the *~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. ~~654~~●] (as amended, modified, or supplemented from time to time, the "Plan"),[2] including (a) fixing the Voting Record Date, (b) approving the Solicitation Package (as defined below) and procedures for distribution, (c) approving the form of the Ballots (as defined below) and solicitation materials and establishing procedures for voting, and (d) approving procedures for vote tabulation; (iii) scheduling the Confirmation Hearing (as defined below) and establishing related notice and objection procedures; and (iv) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion and the hearing on the Disclosure Statement being deemed adequate; and the Disclosure Statement Hearing Notice constituting good and sufficient notice to all interested parties and no other or further notice needing be provided; and the Court having reviewed the Motion; and upon the record of the hearing; and the Court having found and determined that the legal and factual bases set forth in the Motion and at the hearing establish

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

just cause for the relief granted herein; and that the relief requested in the Motion is in the best interests of the Debtors, its Estate, and creditors; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor; **IT IS HEREBY FOUND THAT:**

A.      The notice of the Motion and the Disclosure Statement Hearing Notice were served as set forth in the Motion, and such notice constitutes good and sufficient notice to all interested parties, complies with Bankruptcy Rules 2002 and 3017, and no other or further notice need be provided.

B.      The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

C.      The form of the ballots (the "Ballots") for ~~the~~ **Classes** 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8 **, 8-B, 8-C, and 11 (the "**Voting Classes**")**, attached hereto as Exhibit 3, is sufficiently consistent with Official Form No. 14, adequately addresses the particular needs of these Chapter 11 Cases, and is appropriate for the Voting Classes to accept or reject the Plan.

D.      The contents and proposed distribution of the Solicitation Package complies with Bankruptcy Rule 3017(d).

E.      Ballots need not be provided to ~~the~~ **Classes 1, 2, 9, 10, and 12 (the "**Non-Voting Classes**")** because the Plan provides that such Classes are either (i) rendered Unimpaired under and, therefore, deemed to have accepted the Plan (without voting), in accordance with section 1126(f) of the Bankruptcy Code, or (ii) Impaired and not entitled to receive or retain any property under the Plan and, therefore, deemed to have rejected the Plan (without voting), in accordance with section 1126(g) of the Bankruptcy Code.

F.      The period within which the Debtors may solicit votes to accept or reject the Plan is a reasonable and adequate period of time for the Voting Classes to make an informed decision to accept or reject the Plan.

G.      The procedures set forth in this **Disclosure Statement** Order for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

H.      The Confirmation Hearing Notice and the Notice of Non-Voting Status, substantially in the forms attached hereto as Exhibit 2 and Exhibit 4, respectively; the procedures provided in this **Disclosure Statement** Order for providing notice to all Creditors, Interest Holders, and parties in interest of the time, date, and place of the Confirmation Hearing and the deadline to object to confirmation of the Plan; and the contents of the Solicitation Package comply with Bankruptcy Rules 2002, 3016, and 3017 and Local Rule 3017-1 and constitute sufficient notice to all interested parties.

I.      In addition to serving the Confirmation Hearing Notice as provided for herein, the Debtors will cause the Confirmation Hearing Notice, as may be modified for publication, to be published once in the national edition of the *New York Times* or other nationally circulated publication within ~~two~~five (~~2~~5) ~~business~~ days of the entry of this **Disclosure Statement** Order, or as soon as reasonably practicable thereafter.  The publication of the Confirmation Hearing Notice will provide sufficient notice to persons who do not otherwise receive the Confirmation Hearing Notice by mail.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED**, as set forth herein.

2. The Disclosure Statement contains adequate information as required by section 1125 of the Bankruptcy Code, and is approved. The Debtors are authorized to distribute, or cause to be distributed, the Disclosure Statement and the Solicitation Package to solicit votes on, and pursue Confirmation of, the Plan.

3. The Disclosure Statement Hearing Notice is approved.

4. The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims, Holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions in Article 12 of the Plan in satisfaction of the requirements of Bankruptcy Rule 3016(c).

5. The procedures set forth below for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

6. The contents of the Solicitation Package and Non-Voting Package, as set forth herein, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties, including, without limitation, Holders of Claims and Interests.

7. The Confirmation Hearing Notice, substantially in the form attached hereto as Exhibit 2, complies with the requirements of Bankruptcy Rules 2002(b), 2002(d), and 3017(d), and is approved.

8. The Ballots, substantially in the form attached hereto as Exhibit 3, are approved.

9. The Notice of Non-Voting Status, substantially in the form attached hereto as Exhibit 4, is approved.

10. The Voting Record Date with respect to Holders of Claims shall be **January ~~13~~31, 2025**. The Voting Record Date shall be used for purposes of determining: (i) the Holders

of Claims or Interests in the Voting Class, who will receive a Solicitation Package and are entitled to vote to accept or reject the Plan; (ii) the Holders of Claims and Interests in the Non-Voting Classes, who will receive a Notice of Non-Voting Status and are not entitled to vote to accept or reject the Plan; (iii) the amount of each Holder's Claim or Interest for solicitation and voting purposes (except as otherwise provided herein); and (iv) whether Claims or Interests have been properly and timely assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee (and not the original Claim or Interest Holder) can vote to accept or reject the Plan as the Holder of a Claim or Interest.  With respect to any transferred Claim or Interest, the transferee shall be entitled to receive (if applicable) a Solicitation Package and cast a Ballot on account of such Claim only if all actions necessary to effectuate the transfer of the Claim or Interest pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date.  In the event a Claim or Interest is transferred after the Voting Record Date, the transferee of such Claim or Interest shall be bound by any vote on the Plan made by the holder of such Claim or Interest as of the Voting Record Date.  Furthermore, where any portion of a single Claim or Interest has been transferred to a transferee, all Holders of any portion of such single Claim or Interest may be treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code. In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim or Interest partially reject and partially accept the Plan, such Ballots may not be counted in the Debtors' discretion.

11.     For the avoidance of doubt, a Holder will only be entitled to receive solicitation materials on account of a Rejection Claim if the Rejection Claim is filed by the Voting Record Date.

12.     Within ~~two~~five (25) ~~business~~ days of the entry of this **Disclosure Statement** Order or as soon as reasonably practicable thereafter (the "Solicitation Date"), the Debtors are authorized to distribute, or cause to be distributed, by first-class mail, to Holders of Claims or Interest in the Voting Classes as of the Voting Record Date a Solicitation Package containing the following:

> a.      the Disclosure Statement, including the Plan and all other Exhibits annexed thereto;
>
> b.      the Disclosure Statement Order (excluding exhibits);
>
> c.      a Ballot and the Voting Instructions;
>
> d.      a pre-addressed, pre-paid return envelope; and
>
> e.      the Confirmation Hearing Notice.

13.     The Debtors are authorized (but not required) to distribute, or cause to be distributed, the Disclosure Statement (together with all exhibits thereto, including the Plan), and the Disclosure Statement Order (excluding exhibits) to the Voting Classes in electronic format on a USB flash drive in lieu of paper format.  Holders of Claims and Interests in the Voting Classes that receive solicitation materials in electronic format may request that the Solicitation Agent provide such materials in paper format and such materials shall be provided at the Debtors' expense.  The Confirmation Hearing Notice, Ballots, and return envelopes contained in the Solicitation Package shall be provided in paper format.

~~14.~~     The Debtors' request for a waiver of the requirement to solicit the votes of Holders of Class 9 Intercompany Claims ~~is granted.~~

~~15.~~ **, Class 10 Subordinated Claims, and** ~~The Debtors' request for a waiver of the requirement to solicit the votes of Holders of~~ Class 12 Existing Intercompany Equity Interests is granted.

~~16. As the Voting Record Date precedes the General Bar Date, the Debtors shall permit any creditor or interest holder that files a valid proof of claim or interest after the Voting Record Date but on or before the General Bar Date (January 23, 2025) that falls within one of the Voting Classes to vote on the Plan on account of such Claim or Interest. The Solicitation Agent shall transmit the appropriate Solicitation Package to such creditors and interest holders as soon as reasonably practicable after the proof of claim or interest that gives rise to the creditor's or interest holder's eligibility to vote is filed, provided that, if the Solicitation Agent previously provided such creditor or interest holder with a Ballot on account of a scheduled claim or interest or a previously filed proof of claim or interest, the Solicitation Agent shall update the creditor's or interest holder's voting amount based on the amended proof of claim or interest, as filed, but shall not be obligated to, and need not, send another Solicitation Package and/or new Ballot to such creditor or interest holder.~~

**15.** **Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, or this Disclosure Statement Order, the Debtors shall cause a Ballot for Classes 6A-6E, as applicable, to be served on all counterparties to Unexpired Leases, including previously rejected Unexpired Leases. Any such party shall be eligible to vote to accept or reject the Plan by the Voting Deadline on account of Claims in an amount equal to the greater of (a) $1.00 and (b) the amount asserted on any Proof of Claim Filed no later than March [●], 2025 (subject to the Debtors' ability to object to the asserted amount).**

**16.** ~~17.~~ The Debtors are authorized (but not required) to distribute, or cause to be distributed, by first-class mail, to all Holders of Claims and Interests in the Non-Voting Classes a

Non-Voting Package, consisting of (i) the Confirmation Hearing Notice; and (ii) the Notice of Non-Voting Status.

**17.** ~~18.~~ The Debtors shall distribute, or cause to be distributed, by first-class mail, a Solicitation Package, excluding a Ballot and return envelope, to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) the Internal Revenue Service; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002.

**18.** ~~19.~~ The Debtors shall cause the Confirmation Hearing Notice, as may be modified for publication, to be published once in the national edition of the *New York Times* or other nationally circulated publication within ~~two~~**five** (**25**) ~~business~~ days of the entry of this **Disclosure Statement** Order, or as soon as reasonably practicable thereafter.

**19.** ~~20.~~ For purposes of serving the Solicitation Package and the Non-Voting Package, the Solicitation Agent is authorized to rely on the address information maintained by the Debtors and provided to the Solicitation Agent as of the Voting Record Date.  The Debtors are not required to mail Solicitation Packages or Non-Voting Packages to creditors (a) who have Claims or Interests that have already been paid in full during the Chapter 11 Cases or (b) whose prior mailings in these Chapter 11 Cases were returned as undeliverable and who have not provided a new forwarding address by the Voting Record Date.

**20.** ~~21.~~ The Debtors shall not be required to distribute a Solicitation Package or Non-Voting Package to the same addresses to which undeliverable Disclosure Statement Hearing Notices were distributed, unless the Debtors are provided with accurate addresses for such entities prior to the Voting Record Date.  Failure to distribute a Solicitation Package or Non-Voting Package to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline or violate Bankruptcy Rule 3017(d).  The Debtors are further

excused from attempting to find better addresses for entities as to whom a Solicitation Package or Non-Voting Package was returned by the United States Postal Service as undeliverable without a forwarding address.

21. 22. The Solicitation Agent is authorized to contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; provided that neither the Debtors nor Solicitation Agent are required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor shall any of them incur any liability for failure to provide such notification.

22. 23. Any requirement to re-mail undeliverable Solicitation Packages, Non-Voting Packages, or other undeliverable solicitation-related notices that were returned marked "undeliverable," "moved—no forwarding address," or otherwise returned, and any obligation for the Debtors or the Solicitation Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages, Non-Voting Packages, or other undeliverable solicitation-related notices, is hereby waived.

23. 24. The deadline by which all Ballots must be properly executed, completed, and actually received by the Solicitation Agent shall be February 14March [●], 2025 at 5:00 p.m. (ET); provided, however, that the Debtors are permitted to extend the Voting Deadline at any time before or after the Voting Deadline, on behalf of any individual voter or the Voting Classes, as the facts and circumstances may require.

24. 25. Ballots will be accepted in paper form or by E-Ballot Portal (as defined below).  Paper Ballots may be delivered by first-class mail postage prepaid, personal delivery, or overnight courier to the Solicitation Agent at the following address:

Franchise Group, Inc.
Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

**25.** ~~26.~~ The Solicitation Agent is also authorized to accept Ballots submitted via electronic, online transmission, solely through a customized online balloting portal accessible on the Debtors' case website to be maintained by the Solicitation Agent (the "E-Ballot Portal"). Holders entitled to vote on the Plan may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the E-Ballot Portal (which allows a Holder to submit an electronic signature). The encrypted data and audit trail created by such electronic submission shall become part of the record of any Ballots submitted in this manner and the creditor's electronic signature shall be deemed to be immediately legally valid and effective. Ballots may be submitted online via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided in the Ballots and at the website landing page so as to be actually received by the Solicitation Agent no later than the Voting Deadline. The E-Ballot Portal shall be the only acceptable means of electronic Ballot submission. Ballots submitted by electronic mail or facsimile, or any other means of electronic submission (other than via the E-Ballot Portal) shall not be accepted. Any failure to follow the voting instructions included with the Ballot may disqualify a Ballot and vote.

**26.** ~~27.~~ Except as otherwise provided herein, each Holder of a Claim or Interest in the Voting Classes shall be entitled to vote the amount of its Claim or Interest as of the Voting Record Date. Solely for purposes of voting on the Plan, and not for the purpose of making Distributions under the Plan on account of a Claim or Interest, and without prejudice to the rights of the Debtors or any other proper party in interest in any other context, including claims

objections, with respect to all Holders of Claims or Interests in the Voting Classes against the

Debtors, the amount of a Claim used to tabulate acceptance or rejection of the Plan shall be as

follows:

a. The amount of the Claim or Interest listed in the Debtors' Schedules; provided that (i) such Claim or Interest is not scheduled as contingent, unliquidated, undetermined, disputed, or in the amount of $0.00, provided, however, that if a Claim or Interest for which no Proof of Claim or Proof of Interest has been timely filed is listed on the Schedules as contingent, unliquidated, or disputed, or if no Claim or Interest amount is specified, such Claim or Interest shall be disallowed for voting purposes only; provided, further, that, if the applicable Bar Date has not yet passed such Claim will be entitled to vote in the amount of $1.00 or 1 equity interest, as applicable, (ii) no Proof of Claim or Interest has been timely filed by the applicable Bar Date (or otherwise deemed timely filed under applicable law), (iii) such Claim or Interest has not been satisfied by the Debtors, or (iv) such Claim or Interest has not been resolved pursuant to a stipulation or order entered by the Court.

b. The undisputed, non-contingent, unpaid, and liquidated amount specified in a Proof of Claim or Interest against the Debtors, timely filed with the Court or the Solicitation Agent by the applicable Bar Date (or otherwise deemed timely filed by the Court under applicable law) to the extent such Proof of Claim or Interest has not been amended or superseded by another Proof of Claim or Interest and is not the subject of an objection filed by February 4[●], 2025 (or, if such Claim or Interest has been resolved pursuant to a stipulation or order entered by the Court, the amount set forth in such stipulation or order).

c. If applicable, the amount temporarily allowed by the Court for voting purposes pursuant to Bankruptcy Rule 3018.  Any motion pursuant to Bankruptcy Rule 3018 seeking to temporarily allow a Claim or Interest for voting purposes must be filed and served in accordance with the Disclosure Statement Order.

d. Except as otherwise provided in subsection (c) hereof, a Ballot cast by an alleged Creditor who has timely filed a Proof of Claim or Interest in a wholly unliquidated, unknown, blank, or uncertain amount or in the amount of $0.00 that is not the subject of a claim objection filed by February 4[●], 2025 shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, and shall be ascribed a value of one dollar ($1.00) for voting purposes only.

e. Except as otherwise provided in subsection (c) hereof, with respect to a Ballot cast by an alleged Creditor who has timely filed a Proof of Claim or Interest, but the Claim or Interest is the subject of a claim or interest objection filed by

**February 4[●], 2025**, the Debtors request, in accordance with Bankruptcy Rule 3018(a), that the Ballot not be counted for voting purposes.

f.   Notwithstanding subsection (e) hereof and except as otherwise provided in subsection (c) hereof, if the Debtors have requested that a Claim or Interest be reclassified, estimated, and/or allowed in a fixed, reduced amount pursuant to a claim or interest objection or estimation proceeding to such Claim or Interest, the Ballot of the Holder of such Claim or Interest shall be counted in the reduced amount requested by the Debtors and/or in the requested classification.

g.   Notwithstanding anything to the contrary contained herein, to the extent that a Holder holds duplicate Claims or Interests in the same Voting Class (by virtue of one or more timely-filed proofs of claim or interest, the Schedules (or a combination of both) or the purchase of duplicate Claims or Interests), such Holder shall be deemed to hold a single Claim or Interest in such Voting Class and may be provided only one Solicitation Package and one Ballot for voting a single Claim or Interest in such Class, regardless of whether the Debtors have objected to such duplicate Claims or Interests.

h.   Notwithstanding anything to the contrary contained herein, with respect to loan Claims in Classes 3, 4, 5, and 7, the Claim amounts for voting purposes only shall be established based on the amounts of the applicable positions held by each claimant, as of the Voting Record Date, as evidenced by the applicable books and records maintained by the Debtors, and/or the applicable administrative agent under the applicable credit facility.  The register of such claimants shall be provided to the Solicitation Agent by the Debtors or administrative agent(s), as applicable, in electronic Microsoft Excel format no later than one (1) Business Day after the Voting Record Date.

27.   28. The following voting procedures and standard assumptions shall be used in tabulating the Ballots:

a.   For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims or Interests held by a single Creditor against the Debtors in a Voting Class will be aggregated as if such Creditor held a single Claim or Interest against the Debtors in the Voting Class, and the votes related to those Claims or Interests shall be treated as a single vote on the Plan; provided, however, that separate Claims or Interests held as of the Petition Date by different entities (even if related, affiliated, or properly and timely assigned or transferred prior to the Voting Record Date) shall not be deemed to be held by a single Creditor pursuant to this provision, and the votes with respect to any such Claims or Interests shall be treated as separate votes on the Plan.

b. Creditors with multiple Claims or Interests within each Voting Class must vote all such Claims or Interests to either accept or reject the Plan, and may not split their vote(s) within the Voting Class. Accordingly, an individual Ballot that partially rejects and partially accepts the Plan on account of multiple Claims or Interests within the Voting Class will not be counted.

c. Each Creditor will be provided a single individual Ballot for all Claims or Interests held by such Creditor in each Voting Class against the Debtors.

d. If a Claim or Interest is transferred after the Voting Record Date, only the Holder of such Claim or Interest as of the Voting Record Date may execute and submit a Ballot to the Solicitation Agent, the transferee of such Claim or Interest shall be bound by any such vote (and the consequences thereof) made by the Holder of such transferred Claim or Interest as of the Voting Record Date, and no "cause" will exist to permit any vote change under Bankruptcy Rule 3018(a).

e. The delivery of a Ballot will be deemed made only when the Solicitation Agent actually receives the executed Ballot or a Ballot is received via electronic mail.

f. Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent properly completed Ballot. If multiple Ballots are received from the same Holder with respect to the same Claim or Interest prior to the Voting Deadline, the last timely received, properly executed Ballot will be deemed to reflect that Holder's intent and will supersede and revoke any Ballot previously received. After the Voting Deadline, no Ballot may be withdrawn or amended without the written consent of the Debtors, with the grant of such consent, absent a contrary order of this Court, being a matter of the Debtors' sole discretion.

g. If a Holder of a Claim or Interest casts multiple Ballots on account of the same Claim or Interest, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

h. Except as otherwise provided in subsection (f) hereof, any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must (i) contain the description of the Claims or Interests to which it relates and the aggregate principal amount represented by such Claims or Interests, (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a

certification that the withdrawing party owns the Claims or Interests and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be actually received by the Solicitation Agent prior to the Voting Deadline. The Debtors expressly reserve the right to contest the validity of any such withdrawals of Ballots.

**28.** ~~29.~~ The following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

a. Any Ballot that fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection, of the Plan;

b. Any Ballot received after the Voting Deadline, except by order of the Bankruptcy Court or if the Debtors have granted an extension of the Voting Deadline, in writing, with respect to such Ballot;

c. Any Ballot containing a vote that the Bankruptcy Court determines was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

d. Any Ballot that is illegible or contains insufficient information to permit the identification of the Claim Holder;

e. Any Ballot cast by an Entity that does not hold a Claim in the Voting Classes;

f. Any unsigned Ballot; and

g. Any Ballot submitted by any means other than as set forth herein and in the Ballots, unless approved by the Debtors in writing or otherwise ordered by the Court.

**29.** ~~30.~~ Any party that wishes to challenge the allowance of its Claim or Interest for voting purposes shall serve on counsel to the Debtors and file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim or Interest in a different amount or classification for purposes of voting to accept or reject the Plan **on or before 4:00 p.m. (ET) on** ~~February 7~~**March [●], 2025**. Any Ballot submitted by a Holder of a Claim or Interest that files a motion pursuant to Bankruptcy Rule 3018(a) shall be counted solely in accordance with the tabulation and other provisions of this **Disclosure Statement** Order, unless

and until the underlying Claim is temporarily allowed by the Court for voting purposes in a different amount, after notice and a hearing.

30. ~~31.~~ The interpretation of all balloting rules and procedures (including the Ballot and the respective instructions thereto) by the Solicitation Agent and the Debtors, unless otherwise directed by the Court, will be final and binding on all parties. The Debtors are authorized to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or its counsel, be unlawful. The Debtors are further authorized to waive or permit the cure of any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any such defects or irregularities must be cured within such time as the Debtors (or the Court) determine. Neither the Debtors nor the Solicitation Agent or any other person shall be under any duty to provide notification of such defects or irregularities or failure to satisfy conditions of delivery nor shall any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Court, delivery of such Ballots shall not be deemed to have been made and such Ballots will be invalid until such defects or irregularities have been cured or waived.

31. ~~32.~~ Kroll shall retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, Kroll is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

32. ~~33.~~ The Debtors and the Solicitation Agent, without further order of the Court, are authorized to determine all questions as to the validity, form, eligibility (including time of

receipt), acceptance, and revocation or withdrawals of Ballots, and, absent a contrary order of the Court, such determinations shall be final and binding.

33. 34. On or before ~~February 19~~March [●], 2025 ~~at 12:00 p.m. (ET)~~, the Solicitation Agent shall file a voting report (the "Voting Report"), verifying the results of its voting tabulations reflecting the votes cast to accept or reject the Plan submitted.  The Voting Report shall, among other things, describe generally every Ballot received by the Solicitation Agent that does not conform to the Voting Instructions or that contains any form of irregularity, including, but not limited to, those Ballots that are late, illegible (in whole or in material part), unidentifiable, lacking signatures, lacking necessary information, or damaged.

34. 35. The Confirmation Hearing will be held on ~~February 21~~March [●], 2025 at [●]~~:00 [●].m.~~ (ET); provided, however, that the Confirmation Hearing may be adjourned from time to time by the Court or the Debtors without further notice to parties other than noting the adjournment in the hearing agenda for the noticed Confirmation Hearing or an announcement in Court at the Confirmation Hearing or any adjourned Confirmation Hearing.

35. 36. Objections to confirmation of the Plan, if any, must (i) be in writing, (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party, (iii) state with particularity the basis and nature of any objection, and (iv) be filed, together with proof of service, with the Court and served so that they are actually received no later than ~~February 14~~March [●], 2025 at 5:00 p.m. (ET) by the following (the "Notice Parties"): (i) proposed co-counsel for the Debtors, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com) and Betsy L. Feldman, Esq. (bfeldman@willkie.com), and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Edmon L.

Morton, Esq. (emorton@ycst.com) and Matthew B. Lunn, Esq. (mlunn@ycst.com); (ii) counsel

to the Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O.

Box 8705, Wilmington, DE 19899, Attn:  Bradford J. Sandler, Esq. (bsandler@pszjlaw.com) and

Colin R. Robinson, Esq. (crobinson@pszjlaw.com), and 780 Third Avenue, 34th Floor, New

York, NY 10017, Attn:  Robert J. Feinstein, Esq. (rfeinstein@pszjlaw.com), Alan J. Kornfeld,

Esq. (akornfeld@pszjlaw.com), and Theodore S. Heckel, Esq. (theckel@pszjlaw.com); (iii) the

Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal

Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J.

Fox, Esq. (timothy.fox@usdoj.gov); (iv) counsel to the DIP Agent, Seward & Kissel LLP, One

Battery Park Plaza, New York, NY 10004, Attn: Gregg Bateman, Esq. (bateman@sewkis.com),

Sagar Patel, Esq. (patel@sewkis.com), and Michael Danenberg, Esq.(danenberg@sewkis.com);

(v) counsel to the DIP Lenders and Ad Hoc Group of First Lien Lenders, (a) Paul Hastings LLP,

200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq.

(jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and

Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (b) Landis Rath & Cobb LLP, 919 N.

Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq.

(landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com); (vi) counsel to the

ABL Lenders, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020,

Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq.

(James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com); (vii) counsel to

the Second Lien Term Loan Lenders, White & Case LLP, 200 S Biscayne Blvd, Miami, FL

33131, Attn:  Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100,

Chicago, IL 60606, Attn: Bojan Guzina, Esq. (bojan.guzina@whitecase.com); and (viii) counsel to the HoldCo Lenders at the address set forth in (vii) above.

36.    37. The Debtors, or any other party supporting confirmation of the Plan, may file responses to any Plan Objection (or any other pleading in support of confirmation of the Plan) on or before ~~February 19~~ March [●], 2025 at 12:00 p.m. (ET).

37.    38. The Plan Supplement shall be filed and served no later than ~~February 7~~ March [●], 2025.

38.    39. Notwithstanding any language to the contrary in the Disclosure Statement, Plan and/or this Order, no provision shall (i) preclude the United States Securities and Exchange Commission ("SEC") from enforcing any of its police or regulatory powers; or, (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding or investigations against any non-debtor person or non-debtor entity in any forum.

39.    To the extent that the ACE American Insurance Company, on its own behalf and on behalf of all of its U.S.-based affiliates and predecessors (collectively, the "ACE Companies"), and/or Federal Insurance Company, on its own behalf and on behalf of all of its U.S.-based affiliates and predecessors (collectively, the "Chubb Companies"), elect to vote and/or opt-in (or opt-out) of any releases in connection with any chapter 11 plan filed by the Debtors, (x) ACE American Insurance Company, on its own behalf and on behalf of all of the ACE Companies, may submit a single consolidated ballot, and (y) Federal Insurance Company, on its own behalf and on behalf of all of the Chubb Companies, may submit a single consolidated ballot and the elections in both or either of such consolidated ballots shall be deemed to apply to each of the ACE Companies and each of the Chubb Companies, respectively.

40.     Notwithstanding anything to the contrary in the Disclosure Statement, Plan and/or this Disclosure Statement Order, in the event that the Debtors elect to proceed with the treatment of Class 3 Claims specified in Section 5.3(a)(i)(B)(y) of the Plan (i.e., issuance of loans under the Take-Back ABL Term Loan Facility): (i) the Debtors shall not commence the Confirmation Hearing until a date no earlier than forty-five (45) days after the date on which the Debtors (in consultation with the Required Consenting First Lien Lenders) or the Required Consenting First Lien Lenders (in consultation with the Debtors) provide written notice to the Prepetition ABL Lenders of (A) the Debtors' election to impose such treatment (which election, whether to impose such treatment or not, shall be with the consent of the Required Consenting First Lien Lenders) and (B) either (x) the proposed terms of the Take-Back ABL Term Loan Facility (which notice shall disclose, at a minimum, all material proposed substantive/non-technical deviations from the terms of the ABL Loan Documents contained in the Take-Back ABL Term Loan Facility, including, without limitation, any proposed substantive/non-technical deviations relating to pricing, maturity, covenants, events of default, and/or security/collateral matters (including, without limitation intercreditor/subordination arrangements)) or (y) all material proposed terms of a new credit agreement for the Take-Back ABL Term Loan Facility, which material proposed terms shall be in the form of a long form term sheet and covenant grid, identify the operative precedent document, and include, without limitation, all terms related to pricing, maturity, covenants, events of default, and security/collateral matters (including, without limitation intercreditor/subordination arrangements)); and (ii) the Debtors, the Required Consenting Term Lenders and Prepetition ABL Agent shall engage in good faith negotiations to reach agreement on a discovery and briefing schedule in

connection with confirmation litigation relating to such treatment (the "Cram-Down Litigation Schedule"), which schedule shall not require the Prepetition ABL Agent and/or Prepetition ABL Lenders to file and serve any Plan Objection until a reasonable amount of time following completion of cram-down related depositions. In the event that the Debtors, the Required Consenting First Lien Lenders and Prepetition ABL Agent cannot agree on a Cram-Down Litigation Schedule, the parties will request that the Court set the Cram-Down Litigation Schedule after notice and an opportunity to be heard. The Prepetition ABL Lenders, the Debtors, and the Consenting First Lien Lenders reserve the right to seek (or oppose) further relief from the Court, including with respect to the Cram-Down Litigation Schedule.

41.    Except as otherwise agreed by the counterparty to the applicable Unexpired Lease, nothing in the Plan or in this Disclosure Statement Order shall modify the Debtors' or Reorganized Debtors' obligation to pay: (1) amounts owed or accruing under an assumed Unexpired Lease that have not yet been billed in accordance with the parties' ordinary course of business, were billed but not yet due as of the Confirmation Date or were not yet required to be billed under the assumed Unexpired Lease as of the Confirmation Date, for rent, common area maintenance, insurance, taxes, and similar charges, and any regular or periodic adjustments and reconciliations of such charges provided for under the terms of the Unexpired Lease, whether accruing or relating to a period prior to or after the effective date of assumption of such Unexpired Lease, to the extent such charges would become due, either in the parties' ordinary course of business or in accordance with the terms of the Unexpired Lease; (2) any percentage rent that has accrued but is not yet due to be paid under an assumed Unexpired Lease; (3) any other

21

**obligations, including indemnification obligations (if any) that arise from claims asserted with respect to or arising from the Debtors' use and occupancy of the premises prior to the Effective Date, for which the Debtors have a duty to indemnify such landlord counterparty pursuant to an assumed Unexpired Lease; (4) any expenses arising under an assumed Unexpired Lease that come due under the Unexpired Lease and that are not in default so as to be included in the Cure Cost that is agreed or consented to by the counterparty to the Unexpired Lease; and (5) any unpaid Cure Costs or post-assumption obligations arising under an assumed Unexpired Lease.**

42. ~~40.~~ The Debtors and the Solicitation Agent are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of, and the relief granted in, this **Disclosure Statement** Order without seeking further order of the Court.

43. ~~41.~~ The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballot(s) and Voting Instructions, the Confirmation Hearing Notice, the Notice of Non-Voting Status, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any materials in the Solicitation Package or Non-Voting Package prior to their distribution.

44. ~~42.~~ Attached hereto as <u>Annex I</u> is a timetable of the significant dates related to solicitation and confirmation of the Plan.

45. ~~43.~~ This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, enforcement, and interpretation of this **Disclosure Statement** Order.

**ANNEX I**

| Dates and Deadlines in Connection with Confirmation | |
|---|---|
| Voting Record Date | ~~2 Business Days before commencement of the Disclosure Statement hearing:~~ January ~~13~~**31**, 2025 |
| Solicitation Date | ~~2 Business~~**5** Days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter |
| Publication Date | ~~2 Business~~**5** Days after entry of the Disclosure Statement Order or as soon as reasonably practicable thereafter |
| Deadline to File Claims Objections for Plan Voting Purposes | February ~~4~~**[●]**, 2025 |
| Deadline to File Plan Supplement | 7 days before Voting Deadline: ~~February 7~~**March [●]**, 2025 |
| Deadline to File Bankruptcy Rule 3018 Motions for Plan Voting Purposes | ~~February 7~~**March [●]**, 2025 at 4:00 p.m. (ET) |
| Voting Deadline | ~~February 14~~**March [●]**, 2025 at 5:00 p.m. (ET) |
| Confirmation Objection Deadline | ~~February 14~~**March [●]**, 2025 at 5:00 p.m. (ET) |
| Deadline for Solicitation Agent to File Plan Voting Report | ~~February 19~~**March [●]**, 2025 ~~at 12:00 p.m. (ET)~~ |
| Deadline to Reply to Plan Objections | ~~February 19~~**March [●]**, 2025 at 12:00 p.m. (ET) |
| Confirmation Hearing | ~~February 21~~**March [●]**, 2025 ~~(subject to the Court's availability~~**at [●] (ET)**) |

# **EXHIBIT 1**

## **Disclosure Statement**

*[Intentionally Omitted]*

**EXHIBIT 2**

**Confirmation Hearing Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~**LSS**) |
| Debtors. | (Jointly Administered) |

**NOTICE OF ORDER (I) APPROVING THE DISCLOSURE
STATEMENT; (II) APPROVING SOLICITATION AND VOTING PROCEDURES,
INCLUDING (A) FIXING THE VOTING RECORD DATE, (B) APPROVING THE
SOLICITATION PACKAGES AND PROCEDURES FOR DISTRIBUTION, (C) APPROVING
THE FORM OF THE BALLOTS AND SOLICITATION MATERIALS AND ESTABLISHING
PROCEDURES FOR VOTING, AND (D) APPROVING PROCEDURES FOR VOTE
TABULATION; (III) SCHEDULING A CONFIRMATION HEARING AND ESTABLISHING
NOTICE AND OBJECTION PROCEDURES; AND (IV) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE THAT:**

1.     ***Approval of the Disclosure Statement.***  At a hearing held on [●], 2025 (the "Disclosure Statement Hearing"), the United States Bankruptcy Court for the District of Delaware (the "Court"), having jurisdiction over the above-captioned Chapter 11 Cases of Franchise Group, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), entered an order [Docket No. ●] (the "Disclosure Statement Order") approving the *Disclosure Statement for the ~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors*, dated as of [●], 2025 and attached as Exhibit 1 to the Disclosure Statement Order (as may be amended, modified, or supplemented from

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

time to time, the "Disclosure Statement") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and authorized the Debtors to solicit votes to accept or reject the ~~First~~Second *Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors*, dated as of [●], 2025 (as may be amended, modified, or supplemented from time to time, the "Plan"), annexed as Exhibit A to the Disclosure Statement. Capitalized terms used but not otherwise defined herein shall the meanings ascribed to such terms in the Plan or Disclosure Statement.

2.     ***Classification of Claims and Interests under the Plan.***  The classification and treatment of Claims and Interests under the Plan is described generally below:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | No | No (deemed to accept) |
| Class 2 | Other Secured Claims | No | No (deemed to accept) |
| Class 3 | Prepetition ABL Loan Claims | Yes | Yes |
| Class 4 | Prepetition First Lien Loan Claims | Yes | Yes |
| Class 5 | Prepetition Second Lien Loan Claims | Yes | Yes |
| Class 6-A | General Unsecured Claims against Franchise Group, Inc. | Yes | Yes |
| Class 6-B | General Unsecured Claims against the American Freight Debtors | Yes | Yes |
| Class 6-C | General Unsecured Claims against the Buddy's Debtors | Yes | Yes |
| Class 6-D | General Unsecured Claims against the PSP Debtors | Yes | Yes |
| Class 6-E | General Unsecured Claims against the Vitamin Shoppe Debtors | Yes | Yes |
| Class 7 | Prepetition HoldCo Loan Claims | Yes | Yes |
| Class 8-A | **Freedom** HoldCo General Unsecured Claims | Yes | Yes |
| **Class 8-B** | **HoldCo Receivables General Unsecured Claims** | **Yes** | **Yes** |
| **Class 8-C** | **TopCo General Unsecured Claims** | **Yes** | **Yes** |
| Class 9 | Intercompany Claims | Yes | No (deemed to reject) |
| Class 10 | Subordinated Claims | Yes | ~~Yes~~No (deemed to reject) |
| Class 11 | Existing TopCo Equity Interests | Yes | Yes |
| Class 12 | Existing Intercompany Equity Interests | Yes | No (deemed to reject) |

3.     ***Deadline for Voting on the Plan.***  The Court has established ~~February 14~~March [●], **2025 at 5:00 p.m. (ET)** (the "Voting Deadline") as the deadline by which Ballots accepting or rejecting the Plan must be actually received by the Solicitation Agent.  To be counted, Ballots must be properly executed, completed, and delivered to the Solicitation Agent at the address provided for herein (in the postage prepaid, preaddressed business reply envelope provided or otherwise by first-class mail postage prepaid, personal delivery, or overnight courier to the Solicitation Agent), or submitted online through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent: https://cases.ra.kroll.com/FRG online, so as to be actually received by the Solicitation Agent no later than the Voting Deadline:

Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

(To arrange personal delivery, email FRGBallots@ra.kroll.com (with "FRG Ballot Delivery" in the subject line) at least 24 hours before arrival at the address above and provide the anticipated date and time of delivery).

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic transmission. Ballots submitted by electronic mail or facsimile or any other means of electronic transmission (other than via the E-Ballot Portal) will not be accepted. Any failure to follow the voting instructions included with the Ballot may disqualify a Ballot and vote. Only Ballots cast by regular mail, overnight courier, or hand delivery or via the E-Ballot Portal will be counted.

4.      Holders of Unimpaired Claims under the Plan (i.e., Class 1 Priority Non-Tax Claims, Class 2 Other Secured Claims) are not entitled to vote on the Plan. Holders of Intercompany Claims (i.e., Class 9), **Subordinated Claims (i.e., Class 10),** and Existing Intercompany Equity Interests ~~under the Plan~~ (i.e., Class 12) are not entitled to vote on the Plan.

5.      *Confirmation Hearing.*  A hearing to consider the confirmation of the Plan and for such other and further relief as may be just or proper (the "Confirmation Hearing") will be held on ~~February 21~~**March [●], 2025 at [●] (ET)** before the Honorable ~~Judge John T. Dorsey~~**Laurie Selber Silverstein**, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, ~~5th~~**6th** Floor, Courtroom ~~5~~**2**, Wilmington, DE 19801. The Confirmation Hearing may be continued by the Debtors from time to time without further notice to holders of Claims or Interests or other parties in interest other than the announcement of the adjourned date(s) at the Confirmation Hearing or any continued hearing or on the applicable hearing agenda or a notice filed with the Bankruptcy Court. The Plan may be modified in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan, and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing. If the Bankruptcy Court enters an order confirming the Plan, section 1141 of the Bankruptcy Code shall become applicable with respect to the Plan and the Plan shall be binding on all parties to the fullest extent permitted by the Bankruptcy Code.

6.      *Deadline for Objections to Confirmation of the Plan.*  Objections, if any, to confirmation of the Plan, must (A) be in writing; (B) state the name, address, and nature of the Claim or Interest of the objecting or responding party; (C) state with particularity the legal and factual basis and nature of any objection or response; and (D) be filed with the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and served on the following parties so as to be actually received **before 5:00 p.m. (ET) on** ~~February 14~~**March [●], 2025:** (a) proposed co-counsel for the Debtors, (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com) and Betsy L. Feldman, Esq. (bfeldman@willkie.com), and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:    Edmon L. Morton, Esq. (emorton@ycst.com) and Matthew B. Lunn, Esq. (mlunn@ycst.com); (b) counsel to the official committee of unsecured creditors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899, Attn: Bradford J. Sandler, Esq. (bsandler@pszjlaw.com) and Colin R. Robinson, Esq. (crobinson@pszjlaw.com), and 780 Third Avenue, 34th Floor, New York, NY 10017, Attn:    Robert J. Feinstein, Esq. (rfeinstein@pszjlaw.com), Alan J. Kornfeld, Esq. (akornfeld@pszjlaw.com), and Theodore S. Heckel, Esq. (theckel@pszjlaw.com); (c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn:

Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); (d) counsel to the DIP Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Gregg Bateman, Esq. (bateman@sewkis.com), Sagar Patel, Esq. (patel@sewkis.com), and Michael Danenberg, Esq.(danenberg@sewkis.com); (e) counsel to the DIP Lenders and Ad Hoc Group of First Lien Lenders, (i) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (ii) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com); (f) counsel to the ABL Lenders, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com); (g) counsel to the Second Lien Term Loan Lenders, White & Case LLP, 200 S Biscayne Blvd, Miami, FL 33131, Attn:  Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100, Chicago, IL 60606, Attn:  Bojan Guzina, Esq. (bojan.guzina@whitecase.com); and (h) counsel to the HoldCo Lenders at the address set forth in (vii) above.

7.    ***Certain Voting Issues.***  Any party that wishes to challenge the allowance of its Claim for voting purposes shall serve on proposed co-counsel to the Debtors and file with the Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such Claim in a different amount or classification for purposes of voting to accept or reject the Plan **on or before 4:00 p.m. (ET) on** ~~**February 7**~~**March [●], 2025**.

8.    ***RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS CONTAINED IN THE PLAN.  ARTICLE 12 OF THE PLAN CONTAINS CERTAIN RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS.  YOU ARE ENCOURAGED TO CAREFULLY REVIEW THE PLAN, INCLUDING THESE PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED, REGARDLESS OF WHETHER OF YOU ARE UNIMPAIRED OR IMPAIRED UNDER THE PLAN.***

9.    ***The release in Section 12.2 of the Plan (the "Debtor Release") binds the Debtors.  The Debtor Release provides:***

**Subject to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective**

Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the ~~take private transaction~~Take-Private Transaction and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; <u>provided</u>, <u>however</u>, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this <u>Article XII.2</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or ~~non-compete~~non-compete obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or (~~4<u>) any OpCo Litigation Claims; or (5</u>) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.

10.     *The release in Section 12.3 of the Plan (the "Third Party Release") binds the "Releasing Parties," which the Plan defines as follows: "collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8, ~~-A, 10~~8-B, 8-C, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in Article XII, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a release opt-out, or do not file an objection to the releases in Article XII of the Plan prior to the deadline to object to confirmation of the Plan; provided that the Consenting First Lien Lenders shall not opt out of the releases set forth in Article XII of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in Article XII of the Plan on or before the deadline to object to confirmation of the Plan. Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties." The Third Party Release provides:*

**Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and ~~subject~~Subject to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan**

Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc. For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

11.     *Additionally, Article 12 of the Plan contains certain provisions regarding exculpation and injunctions. All parties are advised to read Article 12 of the Plan carefully and consult with their own advisors with respect thereto. The text of the relevant provisions of Article 12 of the Plan are as follows:*

**12.4. *Exculpation*.** Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of confirmation and consummation of this Plan, making distributions under this Plan, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including but not limited to the Restructuring Support Agreement; the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or consummation of this Plan; provided, however, that the foregoing provisions of this Exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Exculpation), or gross negligence of such applicable Exculpated Party; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel, to the extent otherwise permitted under applicable non-bankruptcy law, concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing Exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this Article XII.4 shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth above do not exculpate Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates. For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.

**12.5. *Discharge of Claims and Termination of Interests*.** Except as otherwise provided for herein and in the Restructuring Support Agreement, effective as of the Effective Date, with respect to the Non-Liquidating Debtors: (a) the rights afforded in the Plan and the treatment of all Claims and Interests (other than any Existing Intercompany Equity Interests that are reinstated hereunder) shall be in exchange for and in complete

satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property or Estates; (b) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests (other than any Existing Intercompany Equity Interests that are reinstated hereunder) shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.  In accordance with section 1141(d)(3) of the Bankruptcy Code, this Plan does not discharge the American Freight Debtors.  For the avoidance of doubt, in the event of a Plan Equitization Transaction, at the election of the Required Consenting First Lien Lenders in their sole discretion, the existing ABL Credit Agreement (as defined in the Restructuring Support Agreement), and the Prepetition ABL Loan Claims (as defined in the Restructuring Support Agreement), may be reinstated.

**12.6. Injunction.**  Except as otherwise provided herein or for obligations issued pursuant hereto, all Persons or Entities that have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to Exculpation pursuant to Article XII, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties or the property or Estates of the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated or settled pursuant to the Plan.

***Copies of Documents.***  Copies of the Plan, the Disclosure Statement, the Plan Supplement (which will be filed on or before ~~February 7~~**March [●]**, 2025), and the Disclosure Statement Order are, or will be, available for review free of charge at the Debtors' restructuring website:  https://cases.ra.kroll.com/FRG by clicking on the link on the left hand side of the website landing page titled "Plan & Disclosure Statement."  In addition, copies of the Plan are available upon written request to the Debtors' Solicitation Agent:

Franchise Group, Inc. Ballot Processing Center

c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

If you are the holder of a Claim and believe that you are entitled to vote on the Plan, but you did not receive a Solicitation Package, or if you have any questions concerning voting procedures, you should contact the Solicitation Agent electronically at FRGinfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line), in writing to the address above, via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via the "Live Chat" and/or "Contact Us" buttons in the "Info Center" section of the website.

*[Remainder of page intentionally left blank]*

# EXHIBIT 3-A

**Form of Class 3 Ballot**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~**LSS**) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No.** |

## BALLOT FOR CLASS 3 PREPETITION ABL LOAN CLAIMS
## FOR ACCEPTING OR REJECTING THE ~~FIRST~~SECOND AMENDED JOINT CHAPTER 11 PLAN OF FRANCHISE GROUP, INC. AND ITS AFFILIATED DEBTORS

> **TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY ~~FEBRUARY 14~~MARCH [●], 2025 AT 5:00 P.M. (ET).**
>
> **VOTING ON THE PLAN AND THE OPTIONAL OPT-OUT ELECTION ARE LOCATED IN ITEMS 2 AND 3 ON PAGES 3-4**

      This ballot (the "Ballot") is being submitted to you by the debtor and debtor in possession in the above-captioned cases (collectively, the "Debtors") to solicit your vote to accept or reject the *~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as amended, modified or supplemented from time to time, the "Plan") submitted by the Debtors and described in, and attached as Exhibit A, to the related *Disclosure Statement for the ~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as may be amended, modified

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

or supplemented from time to time, the "<u>Disclosure Statement</u>") that was approved by an order [Docket No. ●] (the "<u>Disclosure Statement Order</u>") of the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") and attached as <u>Exhibit 1</u> to the Disclosure Statement Order. The Disclosure Statement describes the Plan and provides information to assist you in deciding how to vote your Ballot. Court approval of the Disclosure Statement does not indicate Court approval of the Plan. If you do not have a Disclosure Statement or Plan you may obtain a copy free of charge on the Debtors' restructuring webpage maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC ("<u>Kroll</u>" or the "<u>Solicitation Agent</u>") at https://cases.ra.kroll.com/<u>FRG</u>. Copies of the Disclosure Statement and Plan are also available: (i) for a fee, on the Court's website, www.deb.uscourts.gov (a PACER account is required); or, at the Debtors' expense, (ii) upon request to the Solicitation Agent via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your Claim has been placed in Class 3 under the Plan.**

**If your Ballot is not actually received by the Solicitation Agent on or before ~~February 14~~March [●], 2025 at 5:00 p.m. (ET) (the "<u>Voting Deadline</u>"), and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.**

**Included in Item 3 of this Class 3 Ballot is an optional Opt-Out election related to the Releases by Holders of Claims set forth in Section 12 of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you Opt-Out of the Releases under the Plan by checking the release Opt-Out box under Item 3 of this Ballot so that it is actually received by the Voting Deadline.**

**You may submit your Ballot in the return envelope provided in your Solicitation Package or online via the Solicitation Agent's E-Ballot Portal, or by regular mail, overnight courier, or hand delivery as follows:**

---

**If by online E-Ballot Portal:**

**Ballots may be submitted via** online submission through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent **by no later than the Voting Deadline.**

To submit a customized, electronic version of your Ballot via the Solicitation Agent's E-Ballot Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#:** _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.
Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in Item 1 of

---

your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

If you choose to submit your Ballot via the E-Ballot Portal, you **SHOULD NOT** also return a hard copy of your Ballot.

Ballots submitted via the E-Ballot Portal will be deemed to contain an immediately legally binding signature.

**Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.**

---

**If by First-Class Mail, Hand Delivery, or Overnight Courier:**
Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

---

## ACCEPTANCE OR REJECTION OF THE PLAN

**Item 1.  Vote Amount**.  For purposes of voting to accept or reject the Plan, as of January ~~13~~31, 2025 (the "Voting Record Date"), the undersigned (the "Claimant") was a holder of a Class 3 Prepetition ABL Loan Claim against the Debtors in the principal amount set forth below.

$_____

**Item 2.  Vote on Plan**.  **CHECK ONE BOX ONLY:**

☐    **ACCEPTS (votes FOR) the Plan**.

☐    **REJECTS (votes AGAINST) the Plan**.

**Item 3.  Releases**.

**IMPORTANT INFORMATION REGARDING THE RELEASES**

**AS A HOLDER OF A CLAIM IN CLASS 3 UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASE CONTAINED IN SECTION 12.3 OF THE PLAN, AS SET FORTH BELOW, IF YOU DO NOT OPT OUT OF OR OBJECT TO THE RELEASE PROVISIONS OF THE PLAN.  YOUR DECISION ON THE ELECTION TO OPT OUT DOES NOT AFFECT WHAT WILL BE AVAILABLE FOR DISTRIBUTION OR THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will become effective.  In determining how to cast your vote on the Plan, it is important to read the provisions

contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Claim(s) you may hold against the Released Parties under the Plan.

The undersigned holder of the Prepetition ABL Claim Loan Claim in Class 3 set forth in Item 1 elects to:

☐ Opt Out of the Third-Party Release.

Specifically, the releases in Sections 12.2 and 12.3 of the Plan provide:

***Debtor Releases.*** *Subject to the outcome of the* ~~*Independent Investigation with respect to the Investigation Related Matters and the*~~ *Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "*__Debtor Release__*") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the* ~~*take-private transaction*~~*Take-Private Transaction and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or*

*other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this Article XII.2 shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or ~~non-compete~~non-compete obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc. For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.*

*<u>Third Party Releases.</u> Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and ~~subject~~Subject to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties,*

*the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set*

*forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc. For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.*

The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:

*<u>Releasing Parties</u>: Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8<u>-A</u>, ~~108~~<u>-B, 8-C</u>, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in <u>Article XII</u>, or (ii) do not vote to accept or reject the Plan, <u>and</u> either do not timely submit a release opt-out, or do not file an objection to the releases in <u>Article XII</u> of the Plan prior to the deadline to object to confirmation of the Plan; <u>provided</u> that the Consenting First Lien Lenders shall not opt out of the releases set forth in <u>Article XII</u> of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in <u>Article XII</u> of the Plan on or before the deadline to object to confirmation of the Plan. <u>Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.</u>*

*<u>Released Parties</u>: Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; ~~and~~ (f) <u>the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g)</u> each of such parties' Related Parties; <u>provided,</u> that no Person or Entity shall be a Released Party ~~unless~~<u>if</u> they ~~are also a Releasing Party~~<u>opt-out of the releases provided for in Article XII of this Plan</u>; <u>provided</u>, further<del>, for the avoidance of doubt</del> <u>that</u>, notwithstanding the foregoing, ~~that Brian Kahn and Prophecy Asset Management LP and each of their Affiliates shall not be included in the definition of "Released Parties." For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn and/or Prophecy Asset Management LP.~~<u>Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without</u>*

*cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve out); (iv) Irradiant Partners LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.*

**Freedom HoldCo Independent Investigation**:  *Any investigation conducted by the Freedom HoldCo Independent Director.*

**Freedom HoldCo Independent Investigation Related Matters**:  *All matters related to any claims, rights and Causes of Action that may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the Freedom HoldCo Independent Investigation.*

~~**Independent Investigation:**  *Any investigation conducted by Petrillo Klein + Boxer, as counsel to the Debtors.*~~

~~**Investigation Related Matters:**  *All matters related to any claims, rights and Causes of Action that the Estates may have against Mr. Brian Kahn, any current or former officer of the Debtors, or any other party arising from, or related to: (a) the Debtor's sale of W.S. Badcock Corporation to Conn's Inc. in December 2023; (b) the take-private transaction completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Debtor Franchise Group, Inc. and the other parties thereto; (c) the acquisition by Debtor Freedom VCM Receivables, Inc. of Debtor Freedom Receivables II, LLC and any receivables transactions undertaken by each of the foregoing, including any potential Avoidance Actions related thereto; (d) any transactions among the Debtors and B. Riley Principal Investments, LLC, B. Riley Financial, Inc., or any of its or their current and former Affiliates; (e) the Debtors' historical transactions and relationship with Mr. Kahn or Prophecy Asset Management LP; and (f) any other matters that may become subject to the Independent Investigation in the future.*~~

**Related Parties:**  *Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and*

*any Person claiming by or through any of them, including such Related Parties'*
*respective heirs, executors, estates, servants, and nominees.*

**Item 4.  Certification**.  By signing this Ballot, the Claimant certifies that:  (i) on the Voting Record Date, it was the holder of the Class 3 Prepetition ABL Loan Claim(s) to which this Ballot pertains or an authorized signatory for such holder; (ii) it has full power and authority to vote to accept or reject the Plan, and execute and return the Ballot; and (iii) it has received a copy of the Disclosure Statement, the Plan, and other solicitation materials.  The undersigned understands that an otherwise properly completed, executed, and timely-returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.  The undersigned also certifies that its vote on the Plan is subject to all the terms and conditions set forth in the Plan and the Disclosure Statement.

[*Remainder of Page Left Intentionally Blank*]

Name of Claimant: _____

**Signature**: _____

Name (if different from Claimant): _____

Title: _____

Address: _____

_____

_____

Email Address: _____

Dated: _____

**Please make sure you have provided all information requested in this Ballot. Please read and follow the instructions set forth above and in the attached Voting Instructions carefully. Please complete, sign, and date this Ballot and return it in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, hand delivery, or overnight courier so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

**Alternatively, you may submit the customized electronic version of your Ballot online via the E-Ballot Portal on the Debtors' restructuring website at https://cases.ra.kroll.com/FRG per instructions provided above so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

## **VOTING INSTRUCTIONS**

1.  In order for your vote to count, you must:

    (i)  In the boxes provided in Item 2 of the Ballot, indicate either acceptance or rejection of the Plan by checking the appropriate box; and

    (ii)  Review and sign the certifications in Item 4 of the Ballot.  Please be sure to sign and date your Ballot.  Your signature is required in order for your vote to be counted.  If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing.  If the Claim is held by an entity, your Ballot must be executed in the name of an authorized signatory.  In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

2.  **To have your vote counted, you must complete, sign, and return this Ballot so that it is actually received by the Solicitation Agent not later than ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

3.  If voting online, submit the customized electronic version of your Class 3 Prepetition ABL Loan Claim Ballot via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page.  Creditors who cast a Ballot via the E-Ballot Portal should NOT also submit a paper Ballot.

4.  If voting by **mail**, return the completed Ballot to the Solicitation Agent in the pre-addressed, pre-paid return envelope enclosed with this Ballot or by regular mail, overnight courier, or hand delivery to:

    Franchise Group, Inc. Ballot Processing Center
    c/o Kroll Restructuring Administration LLC
    850 3rd Avenue, Suite 412
    Brooklyn, NY 11232

    To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

5.  A Ballot submitted by any means other than as set forth above will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

6.  A Ballot that either indicates both an acceptance and rejection of the Plan or fails to indicate either an acceptance or rejection of the Plan, will not be counted.

7.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  A Ballot that partially rejects and partially accepts the Plan will not be counted.

8.  If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect your intent and shall supersede and revoke any earlier received Ballot.  If you cast multiple Ballots on

account of the same Claim, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

9.      Any Ballot that is illegible or that contains insufficient information to permit the identification of the Claimant will not be counted.

10.     This Ballot does not constitute, and shall not be deemed to be, a proof of claim against any of the Debtors or an assertion or admission of a Claim by the Debtors.

11.     **If you wish to have your Claim temporarily allowed for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a) in a different amount or classification, you must file with the Court and serve on proposed co-counsel to the Debtors no later than 4:00 p.m. (ET) on ~~February 7~~March [●], 2025 a motion seeking such temporary allowance and a notice of hearing on such motion.**

12.     It is important that you vote.  The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  If the requisite acceptances are not obtained, the Court nonetheless may, in certain circumstances, confirm the Plan if it finds that the Plan:  (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes voting to reject the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  To confirm a plan over the objection of a dissenting Class, the Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

13.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER SOLICITATION MATERIALS APPROVED BY THE COURT, INCLUDING, WITHOUT LIMITATION, THE DISCLOSURE STATEMENT.

14.     PLEASE RETURN YOUR BALLOT PROMPTLY.

IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THESE VOTING INSTRUCTIONS, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT ELECTRONICALLY AT FRGINFO@RA.KROLL.COM (WITH "FRANCHISE GROUP SOLICITATION INQUIRY" IN THE SUBJECT LINE), IN WRITING TO THE ADDRESS PROVIDED ABOVE OR VIA TELEPHONE AT: (844) 285-4564 (U.S./CANADA, TOLL FREE) OR +1 (646) 937-7751 (INTERNATIONAL).

PLEASE NOTE THAT THE SOLICITATION AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE.  YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

**<u>EXHIBIT 3-B</u>**

**Form of Class 4 Ballot**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~LSS) |
| Debtors. | (Jointly Administered) |

**BALLOT FOR CLASS 4 PREPETITION FIRST LIEN LOAN CLAIMS**
**FOR ACCEPTING OR REJECTING THE ~~FIRST~~SECOND AMENDED JOINT CHAPTER**
**11 PLAN OF FRANCHISE GROUP, INC. AND ITS AFFILIATED DEBTORS**

---

**TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE**
**SOLICITATION AGENT BY ~~FEBRUARY 14~~MARCH [●], 2025 AT 5:00 P.M. (ET)**

**VOTING ON THE PLAN AND THE OPTIONAL OPT-OUT ELECTION ARE**
**LOCATED IN ITEMS 2 AND 3 ON PAGES 3-4**

---

This ballot (the "Ballot") is being submitted to you by the debtor and debtor in possession in the above-captioned cases (collectively, the "Debtors") to solicit your vote to accept or reject the *~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as amended, modified or supplemented from time to time, the "Plan") submitted by the Debtors and described in, and attached as Exhibit A, to the related *Disclosure Statement for the ~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as may be amended, modified or supplemented from time to time, the "Disclosure Statement") that was approved by an order [Docket

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

No. ●] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order.  The Disclosure Statement describes the Plan and provides information to assist you in deciding how to vote your Ballot. Court approval of the Disclosure Statement does not indicate Court approval of the Plan.  If you do not have a Disclosure Statement or Plan you may obtain a copy free of charge on the Debtors' restructuring webpage maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent")  at https://cases.ra.kroll.com/FRG.  Copies of the Disclosure Statement and Plan are also available:  (i) for a fee, on the Court's website, www.deb.uscourts.gov (a PACER account is required); or, at the Debtors' expense, (ii)  upon request to the Solicitation Agent via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your Claim has been placed in Class 4 under the Plan.**

**If your Ballot is not actually received by the Solicitation Agent on or before ~~February 14~~March [●], 2025 at 5:00 p.m. (ET) (the "Voting Deadline"), and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.**

**Included in Item 3 of this Class 4 Ballot is an optional Opt-Out election related to the Releases by Holders of Claims set forth in Section 12 of the Plan.  You are deemed to have consented to the releases by Holders of Claims unless you Opt-Out of the Releases under the Plan by checking the release Opt-Out box under Item 3 of this Ballot so that it is actually received by the Voting Deadline.**

**You may submit your Ballot in the return envelope provided in your Solicitation Package or online via the Solicitation Agent's E-Ballot Portal, or by regular mail, overnight courier, or hand delivery as follows:**

---

**If by online E-Ballot Portal:**

**Ballots may be submitted via** online submission through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent **by no later than the Voting Deadline.**
To submit a customized, electronic version of your Ballot via the Solicitation Agent's E-Ballot Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#**: _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.
Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in Item 1 of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as

---

applicable.

If you choose to submit your Ballot via the E-Ballot Portal, you **SHOULD NOT** also return a hard copy of your Ballot.

Ballots submitted via the E-Ballot Portal will be deemed to contain an immediately legally binding signature.

**Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.**

---

**If by First-Class Mail, Hand Delivery, or Overnight Courier:**
Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

---

**ACCEPTANCE OR REJECTION OF THE PLAN**

**Item 1.  Vote Amount**.  For purposes of voting to accept or reject the Plan, as of January ~~13~~**31**, 2025 (the "<u>Voting Record Date</u>"), the undersigned (the "<u>Claimant</u>") was a holder of a Class 4 Prepetition First Lien Loan Claim against the Debtors in the principal amount set forth below.

$_____

**Item 2.  Vote on Plan**.  CHECK ONE BOX ONLY:

☐      **ACCEPTS (votes FOR) the Plan**.

☐      **REJECTS (votes AGAINST) the Plan**.

**Item 3.  Releases**.

<u>**IMPORTANT INFORMATION REGARDING THE RELEASES**</u>

**AS A HOLDER OF A CLAIM IN CLASS 4 UNDER THE PLAN, YOU ARE DEEMED TO CONSENT TO THE RELEASE CONTAINED IN SECTION 12.3 OF THE PLAN, AS SET FORTH BELOW.  YOUR DECISION ON THE ELECTION TO OPT OUT DOES NOT AFFECT WHAT WILL BE AVAILABLE FOR DISTRIBUTION OR THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will become effective.  In determining how to cast your vote on the Plan, it is important to read the provisions contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Claim(s) you may hold against the Released Parties under the Plan.

3

> The undersigned holder of the Prepetition First Lien Loan Claim in Class 4 set forth in Item 1 elects to:
>
> ☐ Opt Out of the Third-Party Release.

Specifically, the releases in Sections 12.2 and 12.3 of the Plan provide:

***Debtor Releases.*** ***Subject to the outcome of the*** ~~***Independent Investigation with respect to the Investigation Related Matters and the***~~ ***Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "***Debtor Release***") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the*** ~~***take-private transaction***~~***Take-Private Transaction and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties;*** ***provided****,* ***however****, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this***

*Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this <u>Article XII.2</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or ~~non-compete~~<u>non-compete</u> obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) <u>any OpCo Litigation Claims; or (5)</u> any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.*

*<u>Third Party Releases.</u>  Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and ~~subject~~<u>Subject</u> to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys,*

*Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; or (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc. For the avoidance of doubt, none of*

*the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.*

The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:

*Releasing Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8-A, ~~10~~8-B, 8-C, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in Article XII, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a release opt-out, or do not file an objection to the releases in Article XII of the Plan prior to the deadline to object to confirmation of the Plan; provided that the Consenting First Lien Lenders shall not opt out of the releases set forth in Article XII of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in Article XII of the Plan on or before the deadline to object to confirmation of the Plan.  Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.*

*Released Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; ~~and~~ (f) the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g) each of such parties' Related Parties; provided, that no Person or Entity shall be a Released Party ~~unless~~if they ~~are also a Releasing Party~~opt-out of the releases provided for in Article XII of this Plan; provided, further, ~~for the avoidance of doubt~~ that, notwithstanding the foregoing, ~~that Brian Kahn and Prophecy Asset Management LP and each of their Affiliates shall not be included in the definition of "Released Parties."  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn and/or Prophecy Asset Management LP.~~Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve*

7

*out); (iv) Irradiant Partners LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.*

**Freedom HoldCo Independent Investigation**:  **Any investigation conducted by the Freedom HoldCo Independent Director.**

**Freedom HoldCo Independent Investigation Related Matters**:  **All matters related to any claims, rights and Causes of Action that may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the Freedom HoldCo Independent Investigation.**

~~**Independent Investigation:**  **Any investigation conducted by Petrillo Klein + Boxer, as counsel to the Debtors.**~~

~~**Investigation Related Matters:**  **All matters related to any claims, rights and Causes of Action that the Estates may have against Mr. Brian Kahn, any current or former officer of the Debtors, or any other party arising from, or related to: (a) the Debtor's sale of W.S. Badcock Corporation to Conn's Inc. in December 2023; (b) the take-private transaction completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Debtor Franchise Group, Inc. and the other parties thereto; (c) the acquisition by Debtor Freedom VCM Receivables, Inc. of Debtor Freedom Receivables II, LLC and any receivables transactions undertaken by each of the foregoing, including any potential Avoidance Actions related thereto; (d) any transactions among the Debtors and B. Riley Principal Investments, LLC, B. Riley Financial, Inc., or any of its or their current and former Affiliates; (e) the Debtors' historical transactions and relationship with Mr. Kahn or Prophecy Asset Management LP; and (f) any other matters that may become subject to the Independent Investigation in the future.**~~

**Related Parties**:  **Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and any Person claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees.**

**Item 4.  Certification**.  By signing this Ballot, the Claimant certifies that:  (i) on the Voting Record Date, it was the holder of the Class 4 Prepetition First Lien Loan Claim(s) to which this Ballot pertains or an authorized signatory for such holder; (ii) it has full power and authority to vote to accept or reject the Plan, and execute and return the Ballot; and (iii) it has received a copy of the Disclosure Statement, the Plan, and other solicitation materials.  The undersigned understands that an otherwise properly completed, executed, and timely-returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.  The undersigned also certifies that its vote on the Plan is subject to all the terms and conditions set forth in the Plan and the Disclosure Statement.

[*Remainder of Page Left Intentionally Blank*]

Name of Claimant: _____

**Signature**: _____

Name (if different from Claimant): _____

Title: _____

Address: _____

_____

_____

Email Address: _____

Dated: _____

**Please make sure you have provided all information requested in this Ballot. Please read and follow the instructions set forth above and in the attached Voting Instructions carefully. Please complete, sign, and date this Ballot and return it in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, hand delivery, or overnight courier so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

**Alternatively, you may submit the customized electronic version of your Ballot online via the E-Ballot Portal on the Debtors' restructuring website at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

## VOTING INSTRUCTIONS

1.      In order for your vote to count, you must:

   (i)      In the boxes provided in Item 2 of the Ballot, indicate either acceptance or rejection of the Plan by checking the appropriate box; and

   (ii)     Review and sign the certifications in Item 4 of the Ballot.  Please be sure to sign and date your Ballot.  Your signature is required in order for your vote to be counted.  If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing.  If the Claim is held by an entity, your Ballot must be executed in the name of an authorized signatory.  In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

2.      **To have your vote counted, you must complete, sign, and return this Ballot so that it is actually received by the Solicitation Agent not later than ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

3.      If voting online, submit the customized electronic version of your Class 4 Prepetition First Lien Loan Claim Ballot via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page.  Creditors who cast a Ballot via the E-Ballot Portal should NOT also submit a paper Ballot.

4.      If voting by **mail**, return the completed Ballot to the Solicitation Agent in the pre-addressed, pre-paid return envelope enclosed with this Ballot or by regular mail, overnight courier, or hand delivery to:

Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

5.      A Ballot submitted by any means other than as set forth above will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

6.      A Ballot that either indicates both an acceptance and rejection of the Plan or fails to indicate either an acceptance or rejection of the Plan, will not be counted.

7.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  A Ballot that partially rejects and partially accepts the Plan will not be counted.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect your intent and shall supersede and revoke any earlier received Ballot.  If you cast multiple Ballots on

account of the same Claim, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

9.      Any Ballot that is illegible or that contains insufficient information to permit the identification of the Claimant will not be counted.

10.     This Ballot does not constitute, and shall not be deemed to be, a proof of claim against any of the Debtors or an assertion or admission of a Claim by the Debtors.

11.     **If you wish to have your Claim temporarily allowed for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a) in a different amount or classification, you must file with the Court and serve on proposed co-counsel to the Debtors no later than 4:00 p.m. (ET) on ~~February 7~~March [●], 2025 a motion seeking such temporary allowance and a notice of hearing on such motion.**

12.     It is important that you vote.  The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  If the requisite acceptances are not obtained, the Court nonetheless may, in certain circumstances, confirm the Plan if it finds that the Plan:  (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes voting to reject the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. To confirm a plan over the objection of a dissenting Class, the Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

13.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER SOLICITATION MATERIALS APPROVED BY THE COURT, INCLUDING, WITHOUT LIMITATION, THE DISCLOSURE STATEMENT.

14.     PLEASE RETURN YOUR BALLOT PROMPTLY.

IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THESE VOTING INSTRUCTIONS, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT ELECTRONICALLY AT FRGINFO@RA.KROLL.COM (WITH "FRANCHISE GROUP SOLICITATION INQUIRY" IN THE SUBJECT LINE), IN WRITING TO THE ADDRESS PROVIDED ABOVE OR VIA TELEPHONE AT: (844) 285-4564 (U.S./CANADA, TOLL FREE) OR +1 (646) 937-7751 (INTERNATIONAL).

PLEASE NOTE THAT THE SOLICITATION AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE.  YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

**EXHIBIT 3-C**

**Form of Class 5 Ballot**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~**LSS**) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No.** |

**BALLOT FOR CLASS 5 PREPETITION SECOND LIEN LOAN CLAIMS**
**FOR ACCEPTING OR REJECTING THE ~~FIRST~~SECOND AMENDED JOINT CHAPTER**
**11 PLAN OF FRANCHISE GROUP, INC. AND ITS AFFILIATED DEBTORS**

---

**TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE**
**SOLICITATION AGENT BY ~~FEBRUARY 14~~MARCH [●], 2025 AT 5:00 P.M. (ET)**

**VOTING ON THE PLAN AND THE OPTIONAL OPT-OUT ELECTION ARE**
**LOCATED IN ITEMS 2 AND 3 ON PAGES 3-4**

---

This ballot (the "Ballot") is being submitted to you by the debtor and debtor in possession in the above-captioned cases (collectively, the "Debtors") to solicit your vote to accept or reject the *~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as amended, modified or supplemented from time to time, the "Plan") submitted by the Debtors and described in, and attached as Exhibit A, to the related *Disclosure Statement for the ~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as may be amended, modified

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

or supplemented from time to time, the "Disclosure Statement") that was approved by an order [Docket No. ●] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order. The Disclosure Statement describes the Plan and provides information to assist you in deciding how to vote your Ballot. Court approval of the Disclosure Statement does not indicate Court approval of the Plan. If you do not have a Disclosure Statement or Plan you may obtain a copy free of charge on the Debtors' restructuring webpage maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent") at https://cases.ra.kroll.com/FRG. Copies of the Disclosure Statement and Plan are also available: (i) for a fee, on the Court's website, www.deb.uscourts.gov (a PACER account is required); or (ii) at the Debtors' expense, upon request to the Solicitation Agent via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your Claim has been placed in Class 5 under the Plan.**

**If your Ballot is not actually received by the Solicitation Agent on or before ~~February 14~~March [●], 2025 at 5:00 p.m. (ET) (the "Voting Deadline"), and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.**

**Included in Item 3 of this Class 5 Ballot is an optional Opt-Out election related to the Releases by Holders of Claims set forth in Section 12 of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you Opt-Out of the Releases under the Plan by checking the release Opt-Out box under Item 3 of this Ballot so that it is actually received by the Voting Deadline.**

**You may submit your Ballot in the return envelope provided in your Solicitation Package or online via Solicitation Agent's E-Ballot Portal, or by regular mail, overnight courier, or hand delivery as follows:**

---

**If by online E-Ballot Portal:**

**Ballots may be submitted via** online submission through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent **by no later than the Voting Deadline.**

To submit a customized, electronic version of your Ballot via the Solicitation Agent's E-Ballot Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#:** _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in Item 1 of

---

your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

If you choose to submit your Ballot via the E-Ballot Portal, you **SHOULD NOT** also return a hard copy of your Ballot.

Ballots submitted via the E-Ballot Portal will be deemed to contain an immediately legally binding signature.

**Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.**

**If by First-Class Mail, Hand Delivery, or Overnight Courier:**
Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery

## ACCEPTANCE OR REJECTION OF THE PLAN

**Item 1.  Vote Amount**.  For purposes of voting to accept or reject the Plan, as of January ~~13~~**31**, 2025 (the "Voting Record Date"), the undersigned (the "Claimant") was a holder of a Class 5 Prepetition Second Lien Loan Claim against the Debtors in the principal amount set forth below.

$_____

**Item 2.  Vote on Plan**.  **CHECK ONE BOX ONLY:**

☐    **ACCEPTS (votes FOR) the Plan**.

☐    **REJECTS (votes AGAINST) the Plan**.

**Item 3.  Releases**.

**IMPORTANT INFORMATION REGARDING THE RELEASES**

**AS A HOLDER OF A CLAIM IN CLASS 5 UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASE CONTAINED IN SECTION 12.3 OF THE PLAN, AS SET FORTH BELOW, IF YOU DO NOT OPT OUT OF OR OBJECT TO THE RELEASE PROVISIONS OF THE PLAN.  YOUR DECISION ON THE ELECTION TO OPT OUT DOES NOT AFFECT WHAT WILL BE AVAILABLE FOR DISTRIBUTION OR THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will become effective.  In determining how to cast your vote on the Plan, it is important to read the provisions

3

contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Claim(s) you may hold against the Released Parties under the Plan.

---

The undersigned holder of the Prepetition Second Lien Loan Claim in Class 5 set forth in Item 1 elects to:

☐ Opt Out of the Third-Party Release.

---

Specifically, the releases in Sections 12.2 and 12.3 of the Plan provide:

***Debtor Releases.  Subject to the outcome of the*** ~~***Independent Investigation with respect to the Investigation Related Matters and the***~~ ***Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the*** ~~***take-private transaction***~~***Take-Private Transaction and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively)***

*against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this Article XII.2 shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or ~~non-compete~~non-compete obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~(4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.*

*Third Party Releases.  Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and ~~subject~~Subject to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above,*

*each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn,*

*Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; or (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.*

The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:

*Releasing Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8 -A, 108-B, 8-C, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in Article XII, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a release opt-out, or do not file an objection to the releases in Article XII of the Plan prior to the deadline to object to confirmation of the Plan; provided that the Consenting First Lien Lenders shall not opt out of the releases set forth in Article XII of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in Article XII of the Plan on or before the deadline to object to confirmation of the Plan.  Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.*

*Released Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; and (f) the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g) each of such parties' Related Parties; provided, that no Person or Entity shall be a Released Party unlessif they are also a Releasing Partyopt-out of the releases provided for in Article XII of this Plan; provided, further, for the avoidance of doubt that, notwithstanding the foregoing, that Brian Kahn and Prophecy Asset Management LP and each of their Affiliates shall not be included in the definition of "Released Parties."  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn and/or Prophecy Asset Management LP.Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables,*

*Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve out); (iv) Irradiant Partners LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.*

**Freedom HoldCo Independent Investigation:  Any investigation conducted by the Freedom HoldCo Independent Director.**

**Freedom HoldCo Independent Investigation Related Matters:  All matters related to any claims, rights and Causes of Action that may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the Freedom HoldCo Independent Investigation.**

~~**Independent Investigation:  Any investigation conducted by Petrillo Klein + Boxer, as counsel to the Debtors.**~~

~~**Investigation Related Matters:  All matters related to any claims, rights and Causes of Action that the Estates may have against Mr. Brian Kahn, any current or former officer of the Debtors, or any other party arising from, or related to: (a) the Debtor's sale of W.S. Badcock Corporation to Conn's Inc. in December 2023; (b) the take-private transaction completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Debtor Franchise Group, Inc. and the other parties thereto; (c) the acquisition by Debtor Freedom VCM Receivables, Inc. of Debtor Freedom Receivables II, LLC and any receivables transactions undertaken by each of the foregoing, including any potential Avoidance Actions related thereto; (d) any transactions among the Debtors and B. Riley Principal Investments, LLC, B. Riley Financial, Inc., or any of its or their current and former Affiliates; (e) the Debtors' historical transactions and relationship with Mr. Kahn or Prophecy Asset Management LP; and (f) any other matters that may become subject to the Independent Investigation in the future.**~~

**Related Parties:  Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and**

***any Person claiming by or through any of them, including such Related Parties'
respective heirs, executors, estates, servants, and nominees.***

**Item 4.  Certification**.  By signing this Ballot, the Claimant certifies that:  (i) on the Voting Record Date, it was the holder of the Class 5 Prepetition Second Lien Loan Claim(s) to which this Ballot pertains or an authorized signatory for such holder; (ii) it has full power and authority to vote to accept or reject the Plan, and execute and return the Ballot; and (iii) it has received a copy of the Disclosure Statement, the Plan, and other solicitation materials.  The undersigned understands that an otherwise properly completed, executed, and timely-returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.  The undersigned also certifies that its vote on the Plan is subject to all the terms and conditions set forth in the Plan and the Disclosure Statement.

[*Remainder of Page Left Intentionally Blank*]

Name of Claimant: _____

**Signature**: _____

Name (if different from Claimant): _____

Title: _____

Address: _____

_____

_____

Email Address: _____

Dated: _____

**Please make sure you have provided all information requested in this Ballot. Please read and follow the instructions set forth above and in the attached Voting Instructions carefully. Please complete, sign, and date this Ballot and return it in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, hand delivery, or overnight courier so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

**Alternatively, you may submit the customized electronic version of your Ballot online via the E-Ballot Portal on the Debtors' restructuring website at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

## VOTING INSTRUCTIONS

1.      In order for your vote to count, you must:

   (i)      In the boxes provided in Item 2 of the Ballot, indicate <u>either</u> acceptance or rejection of the Plan by checking the appropriate box; and

   (ii)     Review and sign the certifications in Item 4 of the Ballot.  Please be sure to sign and date your Ballot.  Your signature is required in order for your vote to be counted.  If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing.  If the Claim is held by an entity, your Ballot must be executed in the name of an authorized signatory.  In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

2.      **To have your vote counted, you must complete, sign, and return this Ballot so that it is <u>actually</u> <u>received</u> by the Solicitation Agent not later than ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

3.      If voting online, submit the customized electronic version of your Class 5 Prepetition Second Lien Loan Claim Ballot via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page.  Creditors who cast a Ballot via the E-Ballot Portal should NOT also submit a paper Ballot.

4.      If voting by **mail**, return the completed Ballot to the Solicitation Agent in the pre-addressed, pre-paid return envelope enclosed with this Ballot or by regular mail, overnight courier, or hand delivery to:

Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

5.      A Ballot submitted by any means other than as set forth above will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

6.      A Ballot that either indicates both an acceptance and rejection of the Plan or fails to indicate either an acceptance or rejection of the Plan, will not be counted.

7.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  A Ballot that partially rejects and partially accepts the Plan will not be counted.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect your intent and shall supersede and revoke any earlier received Ballot.  If you cast multiple Ballots on

account of the same Claim, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

9.      Any Ballot that is illegible or that contains insufficient information to permit the identification of the Claimant will not be counted.

10.     This Ballot does not constitute, and shall not be deemed to be, a proof of claim against any of the Debtors or an assertion or admission of a Claim by the Debtors.

11.     **If you wish to have your Claim temporarily allowed for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a) in a different amount or classification, you must file with the Court and serve on proposed co-counsel to the Debtors no later than 4:00 p.m. (ET) on ~~February 7~~March [●], 2025 a motion seeking such temporary allowance and a notice of hearing on such motion.**

12.     It is important that you vote.  The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  If the requisite acceptances are not obtained, the Court nonetheless may, in certain circumstances, confirm the Plan if it finds that the Plan:  (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes voting to reject the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  To confirm a plan over the objection of a dissenting Class, the Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

13.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER SOLICITATION MATERIALS APPROVED BY THE COURT, INCLUDING, WITHOUT LIMITATION, THE DISCLOSURE STATEMENT.

14.     PLEASE RETURN YOUR BALLOT PROMPTLY.

IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THESE VOTING INSTRUCTIONS, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT ELECTRONICALLY AT FRGINFO@RA.KROLL.COM (WITH "FRANCHISE GROUP SOLICITATION INQUIRY" IN THE SUBJECT LINE), IN WRITING TO THE ADDRESS PROVIDED ABOVE OR VIA TELEPHONE AT: (844) 285-4564 (U.S./CANADA, TOLL FREE) OR +1 (646) 937-7751 (INTERNATIONAL).

PLEASE NOTE THAT THE SOLICITATION AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE.  YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

## EXHIBIT 3-D

**Form of Class 6-A, 6-B, 6-C, 6-D, and 6-E Ballot**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~LSS) |
| Debtors. | (Jointly Administered) |

**BALLOT FOR CLASS 6 GENERAL UNSECURED CLAIMS AGAINST [●]
FOR ACCEPTING OR REJECTING THE ~~FIRST~~SECOND AMENDED JOINT CHAPTER
11 PLAN OF FRANCHISE GROUP, INC. AND ITS AFFILIATED DEBTORS**

---

**TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE
SOLICITATION AGENT BY ~~FEBRUARY 14~~MARCH [●], 2025 AT 5:00 P.M. (ET)**

**VOTING ON THE PLAN AND THE OPTIONAL OPT-OUT ELECTION ARE
LOCATED IN ITEMS 2 AND 3 ON PAGES 3-4**

---

This ballot (the "Ballot") is being submitted to you by the debtor and debtor in possession in the above-captioned cases (collectively, the "Debtors") to solicit your vote to accept or reject the *~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as amended, modified or supplemented from time to time, the "Plan") submitted by the Debtors and described in, and attached as Exhibit A, to the related *Disclosure Statement for the ~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as may be amended, modified or supplemented from time to time, the "Disclosure Statement") that was approved by an order [Docket

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).   The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

No. ●] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order.  The Disclosure Statement describes the Plan and provides information to assist you in deciding how to vote your Ballot. Court approval of the Disclosure Statement does not indicate Court approval of the Plan.  If you do not have a Disclosure Statement or Plan you may obtain a copy free of charge on the Debtors' restructuring webpage maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent") at https://cases.ra.kroll.com/FRG.  Copies of the Disclosure Statement and Plan are also available:  (i) for a fee, on the Court's website, www.deb.uscourts.gov (a PACER account is required); or, at the Debtors' expense, (ii) upon request to the Solicitation Agent via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your Claim has been placed in Class 6-[●] under the Plan.**

**If your Ballot is not actually received by the Solicitation Agent on or before ~~February 14~~March [●], 2025 at 5:00 p.m. (ET) (the "Voting Deadline"), and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.**

**Included in Item 3 of this Class 6-[●] Ballot is an optional Opt-Out election related to the Releases by Holders of Claims set forth in Section 12 of the Plan.  You are deemed to have consented to the releases by Holders of Claims unless you Opt-Out of the Releases under the Plan by checking the release Opt-Out box under Item 3 of this Ballot so that it is actually received by the Voting Deadline.**

**You may submit your Ballot in the return envelope provided in your Solicitation Package or online via Solicitation Agent's E-Ballot Portal, or by regular mail, overnight courier, or hand delivery as follows:**

---

**If by online E-Ballot Portal:**

**Ballots may be submitted via** online submission through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent **by no later than the Voting Deadline.**

To submit a customized, electronic version of your Ballot via the Solicitation Agent's E-Ballot Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#**:  _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in Item 1 of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as

---

applicable.

If you choose to submit your Ballot via the E-Ballot Portal, you **SHOULD NOT** also return a hard copy of your Ballot.

Ballots submitted via the E-Ballot Portal will be deemed to contain an immediately legally binding signature.

**Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.**

**If by First-Class Mail, Hand Delivery, or Overnight Courier:**

Franchise Group, Inc. Ballot Processing Center

c/o Kroll Restructuring Administration LLC

850 3rd Avenue, Suite 412

Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery

## ACCEPTANCE OR REJECTION OF THE PLAN

**Item 1.  Vote Amount**.  For purposes of voting to accept or reject the Plan, as of January ~~13~~31, 2025 (the "Voting Record Date"), the undersigned (the "Claimant") was a holder of a Class 6-[●] General Unsecured Claim against [●] in the principal amount set forth below.

$_____

**Item 2.  Vote on Plan**.  **CHECK ONE BOX ONLY:**

☐     **ACCEPTS (votes FOR) the Plan**.

☐     **REJECTS (votes AGAINST) the Plan**.

**Item 3.  Releases**.

**IMPORTANT INFORMATION REGARDING THE RELEASES**

**AS A HOLDER OF A CLAIM IN CLASS 6-[●] UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASE CONTAINED IN SECTION 12.3 OF THE PLAN, AS SET FORTH BELOW, IF YOU DO NOT OPT OUT OF OR OBJECT TO THE RELEASE PROVISIONS OF THE PLAN.  YOUR DECISION ON THE ELECTION TO OPT OUT DOES NOT AFFECT WHAT WILL BE AVAILABLE FOR DISTRIBUTION OR THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will become effective.  In determining how to cast your vote on the Plan, it is important to read the provisions contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Claim(s) you may hold against the Released Parties under the Plan.

The undersigned holder of the ~~Prepetition Second Lien Loan~~**General Unsecured** Claim in Class 6-[●] set forth in Item 1 elects to:

☐ Opt Out of the Third-Party Release.

Specifically, the releases in Sections 12.2 and 12.3 of the Plan provide:

*__Debtor Releases.__  Subject to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the__ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "__Debtor Release__") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the ~~take-private transaction__Take-Private Transaction__ and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; __provided__, __however__, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this*

*Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this <u>Article XII.2</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or ~~non-compete~~<u>non-compete</u> obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) <u>any OpCo Litigation Claims; or (5)</u> any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.*

*<u>Third Party Releases.</u>  Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and ~~subject~~<u>Subject</u> to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys,*

*Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; or (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc. For the avoidance of doubt, none of*

*the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.*

The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:

*Releasing Parties: Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8-A, ~~10~~8-B, 8-C, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in __Article XII__, or (ii) do not vote to accept or reject the Plan, __and__ either do not timely submit a release opt-out, or do not file an objection to the releases in __Article XII__ of the Plan prior to the deadline to object to confirmation of the Plan; __provided__ that the Consenting First Lien Lenders shall not opt out of the releases set forth in __Article XII__ of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in __Article XII__ of the Plan on or before the deadline to object to confirmation of the Plan. __Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.__*

*Released Parties: Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; ~~and~~ (f) __the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g)__ each of such parties' Related Parties; __provided__, that no Person or Entity shall be a Released Party ~~unless~~if they ~~are also a Releasing Party~~opt-out of the releases provided for in Article XII of this Plan; __provided__, __further__, ~~for the avoidance of doubt~~ that, notwithstanding the foregoing, ~~that Brian Kahn and Prophecy Asset Management LP and each of their Affiliates shall not be included in the definition of "Released Parties." For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn and/or Prophecy Asset Management LP.__Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve*

*out); (iv) Irradiant Partners LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.*

**Freedom HoldCo Independent Investigation:**  Any investigation conducted by the Freedom HoldCo Independent Director.

**Freedom HoldCo Independent Investigation Related Matters:**  All matters related to any claims, rights and Causes of Action that may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the Freedom HoldCo Independent Investigation.

~~**Independent Investigation:**  Any investigation conducted by Petrillo Klein + Boxer, as counsel to the Debtors.~~

~~**Investigation Related Matters:**  All matters related to any claims, rights and Causes of Action that the Estates may have against Mr. Brian Kahn, any current or former officer of the Debtors, or any other party arising from, or related to: (a) the Debtor's sale of W.S. Badcock Corporation to Conn's Inc. in December 2023; (b) the take-private transaction completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Debtor Franchise Group, Inc. and the other parties thereto; (c) the acquisition by Debtor Freedom VCM Receivables, Inc. of Debtor Freedom Receivables II, LLC and any receivables transactions undertaken by each of the foregoing, including any potential Avoidance Actions related thereto; (d) any transactions among the Debtors and B. Riley Principal Investments, LLC, B. Riley Financial, Inc., or any of its or their current and former Affiliates; (e) the Debtors' historical transactions and relationship with Mr. Kahn or Prophecy Asset Management LP; and (f) any other matters that may become subject to the Independent Investigation in the future.~~

**Related Parties:**  Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and any Person claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees.

**Item 4.  Certification**.  By signing this Ballot, the Claimant certifies that:  (i) on the Voting Record Date, it was the holder of the Class 6 General Unsecured Claim(s) to which this Ballot pertains or an authorized signatory for such holder; (ii) it has full power and authority to vote to accept or reject the Plan, and execute and return the Ballot; and (iii) it has received a copy of the Disclosure Statement, the Plan, and other solicitation materials.  The undersigned understands that an otherwise properly completed, executed, and timely-returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.  The undersigned also certifies that its vote on the Plan is subject to all the terms and conditions set forth in the Plan and the Disclosure Statement.

[*Remainder of Page Left Intentionally Blank*]

Name of Claimant: _____

**Signature**: _____

Name (if different from Claimant): _____

Title: _____

Address: _____

_____

_____

Email Address: _____

Dated: _____

**Please make sure you have provided all information requested in this Ballot. Please read and follow the instructions set forth above and in the attached Voting Instructions carefully. Please complete, sign, and date this Ballot and return it in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, hand delivery, or overnight courier so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

**Alternatively, you may submit the customized electronic version of your Ballot online via the E-Ballot Portal on the Debtors' restructuring website at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

## **VOTING INSTRUCTIONS**

1.      In order for your vote to count, you must:

> (i)      In the boxes provided in Item 2 of the Ballot, indicate either acceptance or rejection of the Plan by checking the appropriate box; and
>
> (ii)     Review and sign the certifications in Item 4 of the Ballot.  Please be sure to sign and date your Ballot.  Your signature is required in order for your vote to be counted.  If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing.  If the Claim is held by an entity, your Ballot must be executed in the name of an authorized signatory.  In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

2.      **To have your vote counted, you must complete, sign, and return this Ballot so that it is actually received by the Solicitation Agent not later than ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

3.      If voting online, submit the customized electronic version of your Class 6-[●] General Unsecured Claim Ballot via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page.  Creditors who cast a Ballot via the E-Ballot Portal should NOT also submit a paper Ballot.

4.      If voting by **mail**, return the completed Ballot to the Solicitation Agent in the pre-addressed, pre-paid return envelope enclosed with this Ballot or by regular mail, overnight courier, or hand delivery to:

> Franchise Group, Inc. Ballot Processing Center
> c/o Kroll Restructuring Administration LLC
> 850 3rd Avenue, Suite 412
> Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

5.      A Ballot submitted by any means other than as set forth above will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

6.      A Ballot that either indicates both an acceptance and rejection of the Plan or fails to indicate either an acceptance or rejection of the Plan, will not be counted.

7.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  A Ballot that partially rejects and partially accepts the Plan will not be counted.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect your intent and shall supersede and revoke any earlier received Ballot.  If you cast multiple Ballots on

account of the same Claim, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

9.  Any Ballot that is illegible or that contains insufficient information to permit the identification of the Claimant will not be counted.

10. This Ballot does not constitute, and shall not be deemed to be, a proof of claim against any of the Debtors or an assertion or admission of a Claim by the Debtors.

11. **If you wish to have your Claim temporarily allowed for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a) in a different amount or classification, you must file with the Court and serve on proposed co-counsel to the Debtors no later than 4:00 p.m. (ET) on ~~February 7~~March [●], 2025 a motion seeking such temporary allowance and a notice of hearing on such motion.**

12. It is important that you vote.  The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  If the requisite acceptances are not obtained, the Court nonetheless may, in certain circumstances, confirm the Plan if it finds that the Plan:  (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes voting to reject the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  To confirm a plan over the objection of a dissenting Class, the Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

13. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER SOLICITATION MATERIALS APPROVED BY THE COURT, INCLUDING, WITHOUT LIMITATION, THE DISCLOSURE STATEMENT.

14. PLEASE RETURN YOUR BALLOT PROMPTLY.

IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THESE VOTING INSTRUCTIONS, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT ELECTRONICALLY AT FRGINFO@RA.KROLL.COM (WITH "FRANCHISE GROUP SOLICITATION INQUIRY" IN THE SUBJECT LINE), IN WRITING TO THE ADDRESS PROVIDED ABOVE OR VIA TELEPHONE AT: (844) 285-4564 (U.S./CANADA, TOLL FREE) OR +1 (646) 937-7751 (INTERNATIONAL).

PLEASE NOTE THAT THE SOLICITATION AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE.  YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

**<u>EXHIBIT 3-E</u>**

**Form of Class 7 Ballot**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~**LSS**) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No.** |

### BALLOT FOR CLASS 7 PREPETITION HOLDCO LOAN CLAIMS
### FOR ACCEPTING OR REJECTING THE ~~FIRST~~**SECOND** AMENDED JOINT CHAPTER
### 11 PLAN OF FRANCHISE GROUP, INC. AND ITS AFFILIATED DEBTORS

---

**TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE
SOLICITATION AGENT BY ~~FEBRUARY 14~~MARCH [●], 2025 AT 5:00 P.M. (ET)**

**VOTING ON THE PLAN AND THE OPTIONAL OPT-OUT ELECTION ARE
LOCATED IN ITEMS 2 AND 3 ON PAGES 3-4**

---

This ballot (the "Ballot") is being submitted to you by the debtor and debtor in possession in the above-captioned cases (collectively, the "Debtors") to solicit your vote to accept or reject the *~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as amended, modified or supplemented from time to time, the "Plan") submitted by the Debtors and described in, and attached as Exhibit A, to the related *Disclosure Statement for the ~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as may be amended, modified

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).   The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

or supplemented from time to time, the "Disclosure Statement") that was approved by an order [Docket No. ●] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order.  The Disclosure Statement describes the Plan and provides information to assist you in deciding how to vote your Ballot. Court approval of the Disclosure Statement does not indicate Court approval of the Plan.  If you do not have a Disclosure Statement or Plan you may obtain a copy free of charge on the Debtors' restructuring webpage maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent") at https://cases.ra.kroll.com/FRG.  Copies of the Disclosure Statement and Plan are also available:  (i) for a fee, on the Court's website, www.deb.uscourts.gov (a PACER account is required); or, at the Debtors' expense (ii) upon request to the Solicitation Agent via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your Claim has been placed in Class 7 under the Plan.**

**If your Ballot is not actually received by the Solicitation Agent on or before ~~February 14~~March [●], 2025 at 5:00 p.m. (ET) (the "Voting Deadline"), and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.**

**Included in Item 3 of this Class 7 Ballot is an optional Opt-Out election related to the Releases by Holders of Claims set forth in Section 12 of the Plan.  You are deemed to have consented to the releases by Holders of Claims unless you Opt-Out of the Releases under the Plan by checking the release Opt-Out box under Item 3 of this Ballot so that it is actually received by the Voting Deadline.**

**You may submit your Ballot in the return envelope provided in your Solicitation Package or online via the Solicitation Agent's E-Ballot Portal, or by regular mail, overnight courier, or hand delivery as follows:**

---

**If by online E-Ballot Portal:**

**Ballots may be submitted via** online submission through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent **by no later than the Voting Deadline.**

To submit a customized, electronic version of your Ballot via the Solicitation Agent's E-Ballot Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#:** _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in Item 1 of

---

your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

If you choose to submit your Ballot via the E-Ballot Portal, you **SHOULD NOT** also return a hard copy of your Ballot.

Ballots submitted via the E-Ballot Portal will be deemed to contain an immediately legally binding signature.

**Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.**

---

**If by First-Class Mail, Hand Delivery, or Overnight Courier:**
Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery

---

## ACCEPTANCE OR REJECTION OF THE PLAN

**Item 1.  Vote Amount**.  For purposes of voting to accept or reject the Plan, as of January ~~13~~31, 2025 (the "Voting Record Date"), the undersigned (the "Claimant") was a holder of a Class 7 **Prepetition** HoldCo Loan Claim against the Debtors in the principal amount set forth below.

$_____

**Item 2.  Vote on Plan.  CHECK ONE BOX ONLY:**

☐  **ACCEPTS (votes FOR) the Plan**.

☐  **REJECTS (votes AGAINST) the Plan**.

**Item 3.  Releases**.

**IMPORTANT INFORMATION REGARDING THE RELEASES**

**AS A HOLDER OF A CLAIM IN CLASS 7 UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASE CONTAINED IN SECTION 12.3 OF THE PLAN, AS SET FORTH BELOW, IF YOU DO NOT OPT OUT OF OR OBJECT TO THE RELEASE PROVISIONS OF THE PLAN.  YOUR DECISION ON THE ELECTION TO OPT OUT DOES NOT AFFECT WHAT WILL BE AVAILABLE FOR DISTRIBUTION OR THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will become effective.  In determining how to cast your vote on the Plan, it is important to read the provisions

contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Claim(s) you may hold against the Released Parties under the Plan.

> The undersigned holder of the **Prepetition** Holdco Loan Claim in Class 7 set forth in Item 1 elects to:
>
> ☐ Opt Out of the Third-Party Release.

Specifically, the releases in Sections 12.2 and 12.3 of the Plan provide:

> ***Debtor Releases.  Subject to the outcome of the*** ~~***Independent Investigation with respect to the Investigation Related Matters and the***~~ ***Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the*** ~~***take-private transaction***~~ ***Take-Private Transaction and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively)***

*against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this Article XII.2 shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or* ~~non-compete~~ non-compete *obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action;* ~~or~~ (4) *any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc. For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.*

*Third Party Releases. Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and* ~~subject~~ Subject *to the outcome of the* ~~Independent Investigation with respect to the Investigation Related Matters and the~~ *Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above,*

*each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn,*

*Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action;* ~~*or*~~ *(4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.*

The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:

*Releasing Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8-A, ~~10~~8-B, 8-C, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in Article XII, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a release opt-out, or do not file an objection to the releases in Article XII of the Plan prior to the deadline to object to confirmation of the Plan; provided that the Consenting First Lien Lenders shall not opt out of the releases set forth in Article XII of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in Article XII of the Plan on or before the deadline to object to confirmation of the Plan.  Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.*

*Released Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; ~~and~~ (f) the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g) each of such parties' Related Parties; provided, that no Person or Entity shall be a Released Party ~~unless~~if they ~~are also a Releasing Party~~opt-out of the releases provided for in Article XII of this Plan; provided, further~~, for the avoidance of doubt~~ that, notwithstanding the foregoing, ~~that Brian Kahn and Prophecy Asset Management LP and each of their Affiliates shall not be included in the definition of "Released Parties."  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn and/or Prophecy Asset Management LP.~~Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables,*

*Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve out); (iv) Irradiant Partners LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.*

**Freedom HoldCo Independent Investigation:**  *Any investigation conducted by the Freedom HoldCo Independent Director.*

**Freedom HoldCo Independent Investigation Related Matters:**  *All matters related to any claims, rights and Causes of Action that may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the Freedom HoldCo Independent Investigation.*

~~**Independent Investigation:**  *Any investigation conducted by Petrillo Klein + Boxer, as counsel to the Debtors.*~~

~~**Investigation Related Matters:**  *All matters related to any claims, rights and Causes of Action that the Estates may have against Mr. Brian Kahn, any current or former officer of the Debtors, or any other party arising from, or related to: (a) the Debtor's sale of W.S. Badcock Corporation to Conn's Inc. in December 2023; (b) the take-private transaction completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Debtor Franchise Group, Inc. and the other parties thereto; (c) the acquisition by Debtor Freedom VCM Receivables, Inc. of Debtor Freedom Receivables II, LLC and any receivables transactions undertaken by each of the foregoing, including any potential Avoidance Actions related thereto; (d) any transactions among the Debtors and B. Riley Principal Investments, LLC, B. Riley Financial, Inc., or any of its or their current and former Affiliates; (e) the Debtors' historical transactions and relationship with Mr. Kahn or Prophecy Asset Management LP; and (f) any other matters that may become subject to the Independent Investigation in the future.*~~

**Related Parties:**  *Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and*

*any Person claiming by or through any of them, including such Related Parties'*
*respective heirs, executors, estates, servants, and nominees.*

**Item 4.  Certification**.  By signing this Ballot, the Claimant certifies that:  (i) on the Voting Record Date, it was the holder of the Class 7 **Prepetition** HoldCo Loan Claim(s) to which this Ballot pertains or an authorized signatory for such holder; (ii) it has full power and authority to vote to accept or reject the Plan, and execute and return the Ballot; and (iii) it has received a copy of the Disclosure Statement, the Plan, and other solicitation materials.  The undersigned understands that an otherwise properly completed, executed, and timely-returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.  The undersigned also certifies that its vote on the Plan is subject to all the terms and conditions set forth in the Plan and the Disclosure Statement.

[*Remainder of Page Left Intentionally Blank*]

Name of Claimant: _____

**Signature**: _____

Name (if different from Claimant): _____

Title: _____ _____

Address: _____

_____

_____

Email Address: _____

Dated: _____

**Please make sure you have provided all information requested in this Ballot. Please read and follow the instructions set forth above and in the attached Voting Instructions carefully. Please complete, sign, and date this Ballot and return it in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, hand delivery, or overnight courier so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

**Alternatively, you may submit the customized electronic version of your Ballot online via the E-Ballot Portal on the Debtors' restructuring website at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

**VOTING INSTRUCTIONS**

1.      In order for your vote to count, you must:

    (i)      In the boxes provided in Item 2 of the Ballot, indicate <u>either</u> acceptance or rejection of the Plan by checking the appropriate box; and

    (ii)     Review and sign the certifications in Item 4 of the Ballot.  Please be sure to sign and date your Ballot.  Your signature is required in order for your vote to be counted.  If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing.  If the Claim is held by an entity, your Ballot must be executed in the name of an authorized signatory.  In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

2.      **To have your vote counted, you must complete, sign, and return this Ballot so that it is <u>actually</u> <u>received</u> by the Solicitation Agent not later than ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

3.      If voting online, submit the customized electronic version of your Class 7 **Prepetition** HoldCo Loan Claim Ballot via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page.  Creditors who cast a Ballot via the E-Ballot Portal should NOT also submit a paper Ballot.

4.      If voting by <u>mail</u>, return the completed Ballot to the Solicitation Agent in the pre-addressed, pre-paid return envelope enclosed with this Ballot or by regular mail, overnight courier, or hand delivery to:

Franchise Group, Inc.
Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

5.      A Ballot submitted by any means other than as set forth above will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

6.      A Ballot that either indicates both an acceptance and rejection of the Plan or fails to indicate either an acceptance or rejection of the Plan, will not be counted.

7.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  A Ballot that partially rejects and partially accepts the Plan will not be counted.

8.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect your intent and shall supersede and revoke any earlier received Ballot.  If you cast multiple Ballots on

account of the same Claim, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

9.    Any Ballot that is illegible or that contains insufficient information to permit the identification of the Claimant will not be counted.

10.    This Ballot does not constitute, and shall not be deemed to be, a proof of claim against any of the Debtors or an assertion or admission of a Claim by the Debtors.

11.    **If you wish to have your Claim temporarily allowed for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a) in a different amount or classification, you must file with the Court and serve on proposed co-counsel to the Debtors no later than 4:00 p.m. (ET) on ~~February 7~~March [●], 2025 a motion seeking such temporary allowance and a notice of hearing on such motion.**

12.    It is important that you vote.  The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  If the requisite acceptances are not obtained, the Court nonetheless may, in certain circumstances, confirm the Plan if it finds that the Plan:  (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes voting to reject the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  To confirm a plan over the objection of a dissenting Class, the Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

13.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER SOLICITATION MATERIALS APPROVED BY THE COURT, INCLUDING, WITHOUT LIMITATION, THE DISCLOSURE STATEMENT.

14.    PLEASE RETURN YOUR BALLOT PROMPTLY.

IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THESE VOTING INSTRUCTIONS, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT ELECTRONICALLY AT FRGINFO@RA.KROLL.COM (WITH "FRANCHISE GROUP SOLICITATION INQUIRY" IN THE SUBJECT LINE), IN WRITING TO THE ADDRESS PROVIDED ABOVE OR VIA TELEPHONE AT: (844) 285-4564 (U.S./CANADA, TOLL FREE) OR +1 (646) 937-7751 (INTERNATIONAL).

PLEASE NOTE THAT THE SOLICITATION AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE.  YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

**EXHIBIT 3-F**

**Form of Class 8-A Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No.** |

**BALLOT FOR CLASS 8-A GENERAL UNSECURED CLAIMS AGAINST ~~HOLDCO ENTITES~~[●]
FOR ACCEPTING OR REJECTING THE ~~FIRST~~SECOND AMENDED JOINT ~~CHAPTER~~ CHAPTER 11 PLAN OF FRANCHISE GROUP, INC. AND ITS AFFILIATED DEBTORS**

---

**TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE
SOLICITATION AGENT BY ~~FEBRUARY 14~~MARCH [●], 2025 ~~at~~AT 5:00 P.M. (ET)**

**VOTING ON THE PLAN AND THE OPTIONAL OPT-OUT ELECTION ARE
LOCATED IN ITEMS 2 AND 3 ON PAGES 3-4**

---

This ballot (the "Ballot") is being submitted to you by the debtor and debtor in possession in the above-captioned cases (collectively, the "Debtors") to solicit your vote to accept or reject the ~~*First*~~*Second* Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as amended, modified or supplemented from time to time, the "Plan") submitted by the Debtors and described in, and attached as Exhibit A, to the related ~~*First*~~*Second* Amended Disclosure Statement for the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

*Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as may be amended, modified or supplemented from time to time, the "Disclosure Statement") that was approved by an order [Docket No. ●] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order. The Disclosure Statement describes the Plan and provides information to assist you in deciding how to vote your Ballot. Court approval of the Disclosure Statement does not indicate Court approval of the Plan. If you do not have a Disclosure Statement or Plan you may obtain a copy free of charge on the Debtors' restructuring webpage maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent") at https://cases.ra.kroll.com/FRG. Copies of the Disclosure Statement and Plan are also available: (i) for a fee, on the Court's website, www.deb.uscourts.gov (a PACER account is required); or, at the Debtors' expense, (ii) upon request to the Solicitation Agent via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your Claim has been placed in Class 8-A under the Plan.**

**If your Ballot is not actually received by the Solicitation Agent on or before ~~February 14~~March [●], 2025 at 5:00 p.m. (ET) (the "Voting Deadline"), and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.**

**Included in Item 3 of this Class 8-A Ballot is an optional Opt-Out election related to the Releases by Holders of Claims set forth in Section 12 of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you Opt-Out of the Releases under the Plan by checking the release Opt-Out box under Item 3 of this Ballot so that it is actually received by the Voting Deadline.**

**You may submit your Ballot in the return envelope provided in your Solicitation Package or online via the Solicitation Agent's E-Ballot Portal, or by regular mail, overnight courier, or hand delivery as follows:**

---

**If by online E-Ballot Portal:**

**Ballots may be submitted via** online submission through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent **by no later than the Voting Deadline.**

To submit a customized, electronic version of your Ballot via the Solicitation Agent's E-Ballot Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#:** _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

---

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in Item 1 of your Ballot. Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

If you choose to submit your Ballot via the E-Ballot Portal, you **SHOULD NOT** also return a hard copy of your Ballot.

Ballots submitted via the E-Ballot Portal will be deemed to contain an immediately legally binding signature.

**Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.**

---

**If by First-Class Mail, Hand Delivery, or Overnight Courier:**
Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery

---

## ACCEPTANCE OR REJECTION OF THE PLAN

**Item 1. Vote Amount**. For purposes of voting to accept or reject the Plan, as of January ~~13~~31, 2025 (the "Voting Record Date"), the undersigned (the "Claimant") was a holder of a Class 8-A General Unsecured ~~Claim~~Claims against ~~the HoldCo Entities~~[●] in the principal amount set forth below.

$_____

**Item 2. Vote on Plan**. CHECK ONE BOX ONLY:

☐        **ACCEPTS (votes FOR) the Plan**.

☐        **REJECTS (votes AGAINST) the Plan**.

**Item 3. Releases**.

**IMPORTANT INFORMATION REGARDING THE RELEASES**

**AS A HOLDER OF A CLAIM IN CLASS 8-A UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASE CONTAINED IN SECTION 12.3 OF THE PLAN, AS SET FORTH BELOW, IF YOU DO NOT OPT OUT OF OR OBJECT TO THE RELEASE PROVISIONS OF THE PLAN. YOUR DECISION ON THE ELECTION TO OPT OUT DOES NOT AFFECT WHAT WILL BE AVAILABLE FOR DISTRIBUTION OR THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will become effective. In determining how to cast your vote on the Plan, it is important to read the provisions

contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Claim(s) you may hold against the Released Parties under the Plan.

---

The undersigned holder of the General Unsecured Claim Against **Freedom** Holdco ~~Entities~~**Debtors** in Class 8-**A** set forth in Item 1 elects to:

☐ Opt Out of the Third-Party Release.

---

Specifically, the releases in Sections 12.2 and 12.3 of the Plan provide:

*__Debtor Releases.__  Subject to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the__~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "__Debtor Release__") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the ~~take-private transaction__~~**Take-Private Transaction** and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively)*

*against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.   The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this Article XII.2 shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or or ~~non-compete~~non-compete obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.   For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.*

*Third Party Releases.  Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and ~~subject~~Subject to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above,*

*each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn,*

*Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; or (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.*

The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:

*Releasing Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8-A, 108-B, 8-C, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in Article XII, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a release opt-out, or do not file an objection to the releases in Article XII of the Plan prior to the deadline to object to confirmation of the Plan; provided that the Consenting First Lien Lenders shall not opt out of the releases set forth in Article XII of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in Article XII of the Plan on or before the deadline to object to confirmation of the Plan.  Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.*

*Released Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; and (f) the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g) each of such parties' Related Parties; provided, that no Person or Entity shall be a Released Party unlessif they are also a Releasing Partyopt-out of the releases provided for in Article XII of this Plan; provided, further, for the avoidance of doubt that, notwithstanding the foregoing, that Brian Kahn and Prophecy Asset Management LP and each of their Affiliates shall not be included in the definition of "Released Parties."  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn and/or Prophecy Asset Management LP.Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables,*

*Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve out); (iv) Irradiant Partners LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.*

**Freedom HoldCo Independent Investigation**:  **Any investigation conducted by the Freedom HoldCo Independent Director.**

**Freedom HoldCo Independent Investigation Related Matters**:  **All matters related to any claims, rights and Causes of Action that may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the Freedom HoldCo Independent Investigation.**

~~**Independent Investigation:  Any investigation conducted by Petrillo Klein + Boxer, as counsel to the Debtors.**~~

~~**Investigation Related Matters:  All matters related to any claims, rights and Causes of Action that the Estates may have against Mr. Brian Kahn, any current or former officer of the Debtors, or any other party arising from, or related to: (a) the Debtor's sale of W.S. Badcock Corporation to Conn's Inc. in December 2023; (b) the take-private transaction completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Debtor Franchise Group, Inc. and the other parties thereto; (c) the acquisition by Debtor Freedom VCM Receivables, Inc. of Debtor Freedom Receivables II, LLC and any receivables transactions undertaken by each of the foregoing, including any potential Avoidance Actions related thereto; (d) any transactions among the Debtors and B. Riley Principal Investments, LLC, B. Riley Financial, Inc., or any of its or their current and former Affiliates; (e) the Debtors' historical transactions and relationship with Mr. Kahn or Prophecy Asset Management LP; and (f) any other matters that may become subject to the Independent Investigation in the future.**~~

**Related Parties**:  **Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and**

*any Person claiming by or through any of them, including such Related Parties'*
*respective heirs, executors, estates, servants, and nominees.*

**Item 4.  Certification**.  By signing this Ballot, the Claimant certifies that:  (i) on the Voting Record Date, it was the holder of the Class 8 **A** General Unsecured Claim(s) against the **Freedom** HoldCo ~~Entities~~**Debtors** to which this Ballot pertains or an authorized signatory for such holder; (ii) it has full power and authority to vote to accept or reject the Plan, and execute and return the Ballot; and (iii) it has received a copy of the Disclosure Statement, the Plan, and other solicitation materials.  The undersigned understands that an otherwise properly completed, executed, and timely-returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.  The undersigned also certifies that its vote on the Plan is subject to all the terms and conditions set forth in the Plan and the Disclosure Statement.

*[Remainder of Page Left Intentionally Blank]*

Name of Claimant: _____

**Signature**: _____

Name (if different from Claimant): _____

Title: _____

Address: _____

_____

_____

Email Address: _____

Dated: _____

**Please make sure you have provided all information requested in this Ballot.  Please read and follow the instructions set forth above and in the attached Voting Instructions carefully.  Please complete, sign, and date this Ballot and return it in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, hand delivery, or overnight courier so that it is actually received by the Solicitation Agent by ~~February 14~~<span style="color:blue">March [●]</span>, 2025 at 5:00 p.m. (ET).**

**Alternatively, you may submit the customized electronic version of your Ballot online via the E-Ballot Portal on the Debtors' restructuring website at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page so that it is actually received by the Solicitation Agent by ~~February 14~~<span style="color:blue">March [●]</span>, 2025 at 5:00 p.m. (ET).**

## **VOTING INSTRUCTIONS**

1. In order for your vote to count, you must:

   (i) In the boxes provided in Item 2 of the Ballot, indicate <u>either</u> acceptance or rejection of the Plan by checking the appropriate box; and

   (ii) Review and sign the certifications in Item 4 of the Ballot.  Please be sure to sign and date your Ballot.  Your signature is required in order for your vote to be counted.  If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing.  If the Claim is held by an entity, your Ballot must be executed in the name of an authorized signatory.  In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

2. **To have your vote counted, you must complete, sign, and return this Ballot so that it is <u>actually</u> <u>received</u> by the Solicitation Agent not later than ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

3. If voting online, submit the customized electronic version of your Class 8-A General Unsecured Claim Against **Freedom** HoldCo ~~Entities~~**Debtors** Ballot via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page. Creditors who cast a Ballot via the E-Ballot Portal should NOT also submit a paper Ballot.

4. If voting by <u>mail</u>, return the completed Ballot to the Solicitation Agent in the pre-addressed, pre-paid return envelope enclosed with this Ballot or by regular mail, overnight courier, or hand delivery to:

   Franchise Group, Inc. Ballot Processing Center
   c/o Kroll Restructuring Administration LLC
   850 3rd Avenue, Suite 412
   Brooklyn, NY 11232

   To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

5. A Ballot submitted by any means other than as set forth above will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

6. A Ballot that either indicates both an acceptance and rejection of the Plan or fails to indicate either an acceptance or rejection of the Plan, will not be counted.

7. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  A Ballot that partially rejects and partially accepts the Plan will not be counted.

8. If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect your intent and shall supersede and revoke any earlier received Ballot.  If you cast multiple Ballots on

account of the same Claim, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

9. Any Ballot that is illegible or that contains insufficient information to permit the identification of the Claimant will not be counted.

10. This Ballot does not constitute, and shall not be deemed to be, a proof of claim against any of the Debtors or an assertion or admission of a Claim by the Debtors.

11. **If you wish to have your Claim temporarily allowed for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a) in a different amount or classification, you must file with the Court and serve on proposed co-counsel to the Debtors no later than 4:00 p.m. (ET) on** ~~February 7~~**March [●], 2025 a motion seeking such temporary allowance and a notice of hearing on such motion.**

12. It is important that you vote. The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). If the requisite acceptances are not obtained, the Court nonetheless may, in certain circumstances, confirm the Plan if it finds that the Plan: (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes voting to reject the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. To confirm a plan over the objection of a dissenting Class, the Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

13. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER SOLICITATION MATERIALS APPROVED BY THE COURT, INCLUDING, WITHOUT LIMITATION, THE DISCLOSURE STATEMENT.

14. PLEASE RETURN YOUR BALLOT PROMPTLY.

IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THESE VOTING INSTRUCTIONS, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT ELECTRONICALLY AT FRGINFO@RA.KROLL.COM (WITH "FRANCHISE GROUP SOLICITATION INQUIRY" IN THE SUBJECT LINE), IN WRITING TO THE ADDRESS PROVIDED ABOVE OR VIA TELEPHONE AT: (844) 285-4564 (U.S./CANADA, TOLL FREE) OR +1 (646) 937-7751 (INTERNATIONAL).

PLEASE NOTE THAT THE SOLICITATION AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE. YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

**EXHIBIT 3-G**

**Form of Class ~~10~~8-B Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~**LSS**) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No.** |

**BALLOT FOR CLASS ~~10 SUBORDINATED~~8-B GENERAL UNSECURED CLAIMS AGAINST [●]**

**FOR ACCEPTING OR REJECTING THE ~~FIRST~~SECOND AMENDED JOINT CHAPTER 11 PLAN OF FRANCHISE GROUP, INC. AND ITS AFFILIATED DEBTORS**

---

**TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY ~~FEBRUARY 14~~MARCH [●], 2025 AT 5:00 P.M. (ET)**

**VOTING ON THE PLAN AND THE OPTIONAL OPT-OUT ELECTION ARE LOCATED IN ITEMS 2 AND 3 ON PAGES 3-4**

---

This ballot (the "Ballot") is being submitted to you by the debtor and debtor in possession in the above-captioned cases (collectively, the "Debtors") to solicit your vote to accept or reject the *~~First~~Second* Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors (as amended, modified or supplemented from time to time, the "Plan") submitted by the Debtors and described in, and attached as Exhibit A, to the related ***Second Amended*** Disclosure Statement for the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

*First Amended* Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors (as may be amended, modified or supplemented from time to time, the "Disclosure Statement") that was approved by an order [Docket No. ●] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order. The Disclosure Statement describes the Plan and provides information to assist you in deciding how to vote your Ballot. Court approval of the Disclosure Statement does not indicate Court approval of the Plan. If you do not have a Disclosure Statement or Plan you may obtain a copy free of charge on the Debtors' restructuring webpage maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent") at https://cases.ra.kroll.com/FRG. Copies of the Disclosure Statement and Plan are also available: (i) for a fee, on the Court's website, www.deb.uscourts.gov (a PACER account is required); or, at the Debtors' ~~expanse~~expense, (ii) upon request to the Solicitation Agent via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your Claim has been placed in Class ~~10~~8-B under the Plan.**

**If your Ballot is not actually received by the Solicitation Agent on or before ~~February 14~~March [●], 2025 at 5:00 p.m. (ET) (the "Voting Deadline"), and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.**

**Included in Item 3 of this Class ~~10~~8-B Ballot is an optional Opt-Out election related to the Releases by Holders of Claims set forth in Section 12 of the Plan. You are deemed to have consented to the releases by Holders of Claims unless you Opt-Out of the Releases under the Plan by checking the release Opt-Out box under Item 3 of this Ballot so that it is actually received by the Voting Deadline.**

**You may submit your Ballot in the return envelope provided in your Solicitation Package or online via the Solicitation Agent's E-Ballot Portal, or by regular mail, overnight courier, or hand delivery as follows:**

---

**If by online E-Ballot Portal:**

**Ballots may be submitted via** online submission through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent **by no later than the Voting Deadline.**

To submit a customized, electronic version of your Ballot via the Solicitation Agent's E-Ballot Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#:** _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

---

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in <u>Item 1</u> of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

If you choose to submit your Ballot via the E-Ballot Portal, you **SHOULD NOT** also return a hard copy of your Ballot.

Ballots submitted via the E-Ballot Portal will be deemed to contain an immediately legally binding signature.

**Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.**

---

**<u>If by First-Class Mail, Hand Delivery, or Overnight Courier</u>:**
Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery

---

**<u>ACCEPTANCE OR REJECTION OF THE PLAN</u>**

**Item 1.  Vote Amount**.  For purposes of voting to accept or reject the Plan, as of January ~~13~~31, 2025 (the "<u>Voting Record Date</u>"), the undersigned (the "<u>Claimant</u>") was a holder of a Class ~~10-Subordinated~~8-B General Unsecured Claim against ~~the Debtors~~[●] in the principal amount set forth below.

$_____

**Item 2.  Vote on Plan.  CHECK ONE BOX ONLY:**

☐        **ACCEPTS (votes FOR) the Plan**.

☐        **REJECTS (votes AGAINST) the Plan**.

**Item 3.  Releases**.

**<u>IMPORTANT INFORMATION REGARDING THE RELEASES</u>**

**AS A HOLDER OF A CLAIM IN CLASS ~~10~~8-B UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASE CONTAINED IN SECTION 12.3 OF THE PLAN, AS SET FORTH BELOW, IF YOU DO NOT OPT OUT OF OR OBJECT TO THE RELEASE PROVISIONS OF THE PLAN.  YOUR DECISION ON THE ELECTION TO OPT OUT DOES NOT AFFECT WHAT WILL BE AVAILABLE FOR DISTRIBUTION OR THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will become

effective.  In determining how to cast your vote on the Plan, it is important to read the provisions contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Claim(s) you may hold against the Released Parties under the Plan.

---

The undersigned holder of the ~~Subordinated~~**General Unsecured** Claim **in** Class ~~108-B~~ set forth in Item 1 elects to:

☐ Opt Out of the Third-Party Release.

---

Specifically, the releases in Sections 12.2 and 12.3 of the Plan provide:

***Debtor Releases.  Subject to the outcome of the*** ~~***Independent Investigation with respect to the Investigation Related Matters and the***~~ ***Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the*** ~~***take-private transaction***~~ ***Take-Private Transaction and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any***

*Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this <u>Article XII.2</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or ~~non-compete~~<u>non-compete</u> obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) <u>any OpCo Litigation Claims; or (5)</u> any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc. For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.*

*<u>Third Party Releases.</u> Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and ~~subject~~<u>Subject</u> to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise*

*modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; or/and (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act*

*or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.*

The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:

*Releasing Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8-A, ~~10~~8-B, 8-C, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in Article XII, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a release opt-out, or do not file an objection to the releases in Article XII of the Plan prior to the deadline to object to confirmation of the Plan; provided that the Consenting First Lien Lenders shall not opt out of the releases set forth in Article XII of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in Article XII of the Plan on or before the deadline to object to confirmation of the Plan.  Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.*

*Released Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; ~~and~~ (f) the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g) each of such parties' Related Parties; provided, that no Person or Entity shall be a Released Party ~~unless~~if they ~~are also a Releasing Party~~opt-out of the releases provided for in Article XII of this Plan; provided, further~~, for the avoidance of doubt~~ that, notwithstanding the foregoing, ~~that Brian Kahn and Prophecy Asset Management LP and each of their Affiliates shall not be included in the definition of "Released Parties."  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn and/or Prophecy Asset Management LP.~~Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley,*

*B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve out); (iv) Irradiant Partners LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.*

**Freedom HoldCo Independent Investigation**:  **Any investigation conducted by the Freedom HoldCo Independent Director.**

**Freedom HoldCo Independent Investigation Related Matters**:  **All matters related to any claims, rights and Causes of Action that may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the Freedom HoldCo Independent Investigation.**

*Related Parties:  Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and any Person claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees.*

**Item 4.  Certification.  By signing this Ballot, the Claimant certifies that:  (i) on the Voting Record Date, it was the holder of the Class 8-B General Unsecured Claim(s) to which this Ballot pertains or an authorized signatory for such holder; (ii) it has full power and authority to vote to accept or reject the Plan, and execute and return the Ballot; and (iii) it has received a copy of the Disclosure Statement, the Plan, and other solicitation materials.  The undersigned understands that an otherwise properly completed, executed, and timely-returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.  The undersigned also certifies that its vote on the Plan is subject to all the terms and conditions set forth in the Plan and the Disclosure Statement.**

[*Remainder of Page Left Intentionally Blank*]

**Name of Claimant:** _____

**Signature:** _____

**Name (if different from Claimant):** _____

**Title:** _____ _____

**Address:** _____

_____

_____

**Email Address:** _____

**Dated:** _____
_____

**Please make sure you have provided all information requested in this Ballot.  Please read and follow the instructions set forth above and in the attached Voting Instructions carefully.  Please complete, sign, and date this Ballot and return it in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, hand delivery, or overnight courier so that it is actually received by the Solicitation Agent by March [●], 2025 at 5:00 p.m. (ET).**

**Alternatively, you may submit the customized electronic version of your Ballot online via the E-Ballot Portal on the Debtors' restructuring website at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page so that it is actually received by the Solicitation Agent by March [●], 2025 at 5:00 p.m. (ET).**

## VOTING INSTRUCTIONS

**15.**　　**In order for your vote to count, you must:**

　　　　(i)　　In the boxes provided in Item 2 of the Ballot, indicate either acceptance or rejection of the Plan by checking the appropriate box; and

　　　　(ii)　　Review and sign the certifications in Item 4 of the Ballot.  Please be sure to sign and date your Ballot.  Your signature is required in order for your vote to be counted.  If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing.  If the Claim is held by an entity, your Ballot must be executed in the name of an authorized signatory.  In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

**16.**　　**To have your vote counted, you must complete, sign, and return this Ballot so that it is actually received by the Solicitation Agent not later than March [●], 2025 at 5:00 p.m. (ET).**

**17.**　　**If voting online, submit the customized electronic version of your Class 8-B General Unsecured Claim Ballot via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page.  Creditors who cast a Ballot via the E-Ballot Portal should NOT also submit a paper Ballot.**

**18.**　　**If voting by mail, return the completed Ballot to the Solicitation Agent in the pre-addressed, pre-paid return envelope enclosed with this Ballot or by regular mail, overnight courier, or hand delivery to:**

**Franchise Group, Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

**To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.**

**19.**　　**A Ballot submitted by any means other than as set forth above will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.**

**20.**　　**A Ballot that either indicates both an acceptance and rejection of the Plan or fails to indicate either an acceptance or rejection of the Plan, will not be counted.**

**21.**　　**You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  A Ballot that partially rejects and partially accepts the Plan will not be counted.**

**22.**　　**If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect your intent and shall supersede and revoke any earlier received Ballot.  If you cast multiple Ballots on account of the same Claim, which are received by the Solicitation Agent**

on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

23. Any Ballot that is illegible or that contains insufficient information to permit the identification of the Claimant will not be counted.

24. This Ballot does not constitute, and shall not be deemed to be, a proof of claim against any of the Debtors or an assertion or admission of a Claim by the Debtors.

25. If you wish to have your Claim temporarily allowed for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a) in a different amount or classification, you must file with the Court and serve on proposed co-counsel to the Debtors no later than 4:00 p.m. (ET) on March [●], 2025 a motion seeking such temporary allowance and a notice of hearing on such motion.

26. It is important that you vote. The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code (the "Bankruptcy Code"). If the requisite acceptances are not obtained, the Court nonetheless may, in certain circumstances, confirm the Plan if it finds that the Plan: (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes voting to reject the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. To confirm a plan over the objection of a dissenting Class, the Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

27. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER SOLICITATION MATERIALS APPROVED BY THE COURT, INCLUDING, WITHOUT LIMITATION, THE DISCLOSURE STATEMENT.

28. PLEASE RETURN YOUR BALLOT PROMPTLY.

IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THESE VOTING INSTRUCTIONS, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT ELECTRONICALLY AT FRGINFO@RA.KROLL.COM (WITH "FRANCHISE GROUP SOLICITATION INQUIRY" IN THE SUBJECT LINE), IN WRITING TO THE ADDRESS PROVIDED ABOVE OR VIA TELEPHONE AT: (844) 285-4564 (U.S./CANADA, TOLL FREE) OR +1 (646) 937-7751 (INTERNATIONAL).

PLEASE NOTE THAT THE SOLICITATION AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE. YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

**EXHIBIT 3-H**

**Form of Class 8-C Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **FRANCHISE GROUP, INC., *et al.*,**[1] | **Case No. 24-12480 (LSS)** |
| **Debtors.** | **(Jointly Administered)** |
| | **Ref. Docket No.** |

**BALLOT FOR CLASS 8-C GENERAL UNSECURED CLAIMS AGAINST FREEDOM VCM HOLDINGS, LLC FOR ACCEPTING OR REJECTING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF FRANCHISE GROUP, INC. AND ITS AFFILIATED DEBTORS**

**TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY MARCH [●], 2025 AT 5:00 P.M. (ET)**

**VOTING ON THE PLAN AND THE OPTIONAL OPT-OUT ELECTION ARE LOCATED IN ITEMS 2 AND 3 ON PAGES 3-4**

This ballot (the "Ballot") is being submitted to you by the debtor and debtor in possession in the above-captioned cases (collectively, the "Debtors") to solicit your vote to accept or reject the *Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as amended, modified or supplemented from time to time, the "Plan") submitted by the Debtors and described in, and attached as Exhibit A, to the related *Second Amended Disclosure Statement for*

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

*the Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as may be amended, modified or supplemented from time to time, the "Disclosure Statement") that was approved by an order [Docket No. ●] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order.  The Disclosure Statement describes the Plan and provides information to assist you in deciding how to vote your Ballot.  Court approval of the Disclosure Statement does not indicate Court approval of the Plan.  If you do not have a Disclosure Statement or Plan you may obtain a copy free of charge on the Debtors' restructuring webpage maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent") at https://cases.ra.kroll.com/FRG.  Copies of the Disclosure Statement and Plan are also available: (i) for a fee, on the Court's website, www.deb.uscourts.gov (a PACER account is required); or, at the Debtors' expense, (ii) upon request to the Solicitation Agent via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

---

**IMPORTANT**

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your Claim has been placed in Class 8-C under the Plan.

If your Ballot is not actually received by the Solicitation Agent on or before March [●], 2025 at 5:00 p.m. (ET) (the "Voting Deadline"), and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.

Included in Item 3 of this Class 8-C Ballot is an optional Opt-Out election related to the Releases by Holders of Claims set forth in Section 12 of the Plan.  You are deemed to have consented to the releases by Holders of Claims unless you Opt-Out of the Releases under the Plan by checking the release Opt-Out box under Item 3 of this Ballot so that it is actually received by the Voting Deadline.

You may submit your Ballot in the return envelope provided in your Solicitation Package or online via the Solicitation Agent's E-Ballot Portal, or by regular mail, overnight courier, or hand delivery as follows:

---

**If by online E-Ballot Portal:**

Ballots may be submitted via online submission through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent by no later than the Voting Deadline.

To submit a customized, electronic version of your Ballot via the Solicitation Agent's E-Ballot Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized, electronic Ballot:

Unique E-Ballot ID#:  _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic

---

transmission will not be counted.

Each Unique E-Ballot ID# is to be used solely in relation to those Claims described in Item 1 of your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

If you choose to submit your Ballot via the E-Ballot Portal, you SHOULD NOT also return a hard copy of your Ballot.

Ballots submitted via the E-Ballot Portal will be deemed to contain an immediately legally binding signature.

Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.

If by First-Class Mail, Hand Delivery, or Overnight Courier:
Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery

**ACCEPTANCE OR REJECTION OF THE PLAN**

**Item 1.  Vote Amount.  For purposes of voting to accept or reject the Plan, as of January 31, 2025 (the "Voting Record Date"), the undersigned (the "Claimant") was a holder of a Class 8-C General Unsecured Claim against Freedom VCM Holdings, LLC in the principal amount set forth below.**

$_____

**Item 2.  Vote on Plan.  CHECK ONE BOX ONLY:**

☐     **ACCEPTS (votes FOR) the Plan.**

☐     **REJECTS (votes AGAINST) the Plan.**

**Item 3.  Releases.**

**IMPORTANT INFORMATION REGARDING THE RELEASES**

**AS A HOLDER OF A CLAIM IN CLASS 8-C UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASE CONTAINED IN SECTION 12.3 OF THE PLAN, AS SET FORTH BELOW, IF YOU DO NOT OPT OUT OF OR OBJECT TO THE RELEASE PROVISIONS OF THE PLAN.  YOUR DECISION ON THE ELECTION TO OPT OUT DOES NOT AFFECT WHAT WILL BE AVAILABLE FOR DISTRIBUTION OR THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

**If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will**

3

become effective.  In determining how to cast your vote on the Plan, it is important to read the provisions contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Claim(s) you may hold against the Released Parties under the Plan.

> **The undersigned holder of the General Unsecured Claim against Freedom VCM Holdings, LLC in Class 8-C set forth in Item 1 elects to:**
>
> ☐ **Opt Out of the Third-Party Release.**

Specifically, the releases in Sections 12.2 and 12.3 of the Plan provide:

*Debtor Releases.  Subject to the outcome of the Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the Take-Private Transaction and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any*

*Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this Article XII.2 shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.*

*Third Party Releases.  Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and Subject to the outcome of the Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to*

*claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action;*

*(4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.*

**The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:**

*Releasing Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8-A, 8-B, 8-C, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in Article XII, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a release opt-out, or do not file an objection to the releases in Article XII of the Plan prior to the deadline to object to confirmation of the Plan; provided that the Consenting First Lien Lenders shall not opt out of the releases set forth in Article XII of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in Article XII of the Plan on or before the deadline to object to confirmation of the Plan. Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.*

*Released Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; (f) the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g) each of such parties' Related Parties; provided, that no Person or Entity shall be a Released Party if they opt-out of the releases provided for in Article XII of this Plan; provided, further that, notwithstanding the foregoing, Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve out); (iv) Irradiant Partners LP and the members of the*

*Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.*

*__Freedom HoldCo__ Independent Investigation:  Any investigation conducted by ~~Petrillo Klein + Boxer, as counsel to the Debtors~~the Freedom HoldCo Independent Director.*

*__Freedom HoldCo Independent__ Investigation Related Matters:  All matters related to any claims, rights and Causes of Action that ~~the Estates may have against Mr. Brian Kahn, any current or former officer of the Debtors, or any other party arising from, or related to: (a) the Debtor's sale of W.S. Badcock Corporation to Conn's Inc. in December 2023; (b) the take private transaction completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Debtor Franchise Group, Inc. and the other parties thereto; (c) the acquisition by Debtor Freedom VCM Receivables, Inc. of Debtor Freedom Receivables II, LLC and any receivables transactions undertaken by each of the foregoing, including any potential Avoidance Actions related thereto; (d) any transactions among the Debtors and B. Riley Principal Investments, LLC, B. Riley Financial, Inc., or any of its or their current and former Affiliates; (e) the Debtors' historical transactions and relationship with Mr. Kahn or Prophecy Asset Management LP; and (f) any~~may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the __Freedom HoldCo__ Independent Investigation ~~in the future~~.*

*__Related Parties__:  Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and any Person claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees.*

**Item 4.  Certification**.  By signing this Ballot, the Claimant certifies that:  (i) on the Voting Record Date, it was the holder of the Class ~~10  Subordinated~~**8-C General Unsecured** Claim(s) **against Freedom VCM Holdings, LLC** to which this Ballot pertains or an authorized signatory for such holder; (ii) it has full power and authority to vote to accept or reject the Plan, and execute and return the Ballot; and (iii) it has received a copy of the Disclosure Statement, the Plan, and other solicitation materials. The undersigned understands that an otherwise properly completed, executed, and timely-returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.  The undersigned also certifies that its vote on the Plan is subject to all the terms and conditions set forth in the Plan and the Disclosure Statement.

[*Remainder of Page Left Intentionally Blank*]

Name of Claimant: _____

**Signature**: _____

Name (if different from Claimant): _____

Title: _____

Address: _____

_____

_____

Email Address: _____

Dated: _____

**Please make sure you have provided all information requested in this Ballot.  Please read and follow the instructions set forth above and in the attached Voting Instructions carefully.  Please complete, sign, and date this Ballot and return it in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, hand delivery, or overnight courier so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

**Alternatively, you may submit the customized electronic version of your Ballot online via the E-Ballot Portal on the Debtors' restructuring website at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

## **VOTING INSTRUCTIONS**

**29.**    ~~1.~~ In order for your vote to count, you must:

(i)    In the boxes provided in Item 2 of the Ballot, indicate <u>either</u> acceptance or rejection of the Plan by checking the appropriate box; and

(ii)    Review and sign the certifications in Item 4 of the Ballot.  Please be sure to sign and date your Ballot.  Your signature is required in order for your vote to be counted.  If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing.  If the Claim is held by an entity, your Ballot must be executed in the name of an authorized signatory.  In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

**30.**    ~~2.~~ **To have your vote counted, you must complete, sign, and return this Ballot so that it is <u>actually</u> <u>received</u> by the Solicitation Agent not later than ~~February 14~~<u>March [●]</u>, 2025 at 5:00 p.m. (ET).**

**31.**    ~~3.~~ If voting online, submit the customized electronic version of your Class ~~10 Subordinated Claim~~<u>8-C General Unsecured Claim against Freedom VCM Holdings, LLC</u> Ballot via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page.  Creditors who cast a Ballot via the E-Ballot Portal should NOT also submit a paper Ballot.

**32.**    ~~4.~~ If voting by **<u>mail</u>**, return the completed Ballot to the Solicitation Agent in the pre-addressed, pre-paid return envelope enclosed with this Ballot or by regular mail, overnight courier, or hand delivery to:

Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

**33.**    ~~5.~~ A Ballot submitted by any means other than as set forth above will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

**34.**    ~~6.~~ A Ballot that either indicates both an acceptance and rejection of the Plan or fails to indicate either an acceptance or rejection of the Plan, will not be counted.

**35.**    ~~7.~~ You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  A Ballot that partially rejects and partially accepts the Plan will not be counted.

**36.**    ~~8.~~ If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect your intent and shall supersede and revoke any earlier received Ballot.  If you cast multiple Ballots on

account of the same Claim, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

**37.**    ~~9.~~ Any Ballot that is illegible or that contains insufficient information to permit the identification of the Claimant will not be counted.

**38.**    ~~10.~~ This Ballot does not constitute, and shall not be deemed to be, a proof of claim against any of the Debtors or an assertion or admission of a Claim by the Debtors.

**39.**    ~~11.~~ **If you wish to have your Claim temporarily allowed for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a) in a different amount or classification, you must file with the Court and serve on proposed co-counsel to the Debtors no later than 4:00 p.m. (ET) on ~~February 7~~March [●], 2025 a motion seeking such temporary allowance and a notice of hearing on such motion.**

**40.**    ~~12.~~ It is important that you vote.  The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  If the requisite acceptances are not obtained, the Court nonetheless may, in certain circumstances, confirm the Plan if it finds that the Plan:  (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes voting to reject the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  To confirm a plan over the objection of a dissenting Class, the Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

**41.**    ~~13.~~ NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER SOLICITATION MATERIALS APPROVED BY THE COURT, INCLUDING, WITHOUT LIMITATION, THE DISCLOSURE STATEMENT.

**42.**    ~~14.~~ PLEASE RETURN YOUR BALLOT PROMPTLY.

IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THESE VOTING INSTRUCTIONS, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT ELECTRONICALLY AT FRGINFO@RA.KROLL.COM (WITH "FRANCHISE GROUP SOLICITATION INQUIRY" IN THE SUBJECT LINE), IN WRITING TO THE ADDRESS PROVIDED ABOVE OR VIA TELEPHONE AT: (844) 285-4564 (U.S./CANADA, TOLL FREE) OR +1 (646) 937-7751 (INTERNATIONAL).

PLEASE NOTE THAT THE SOLICITATION AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE.  YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

**<u>EXHIBIT 3-HI</u>**

**Form of Class 11 Ballot**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~**LSS**) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No.** |

**BALLOT FOR CLASS 11 EXISTING TOPCO EQUITY INTERESTS**
**FOR ACCEPTING OR REJECTING THE ~~FIRST~~SECOND AMENDED JOINT CHAPTER**
**11 PLAN OF FRANCHISE GROUP, INC. AND ITS AFFILIATED DEBTORS**

---

**TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE
SOLICITATION AGENT BY ~~FEBRUARY 14~~MARCH [●], 2025 AT 5:00 P.M. (ET)**

**VOTING ON THE PLAN AND THE OPTIONAL OPT-OUT ELECTION ARE
LOCATED IN ITEMS 2 AND 3 ON PAGES 3-4**

---

This ballot (the "<u>Ballot</u>") is being submitted to you by the debtor and debtor in possession in the above-captioned cases (collectively, the "<u>Debtors</u>") to solicit your vote to accept or reject the *~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as amended, modified or supplemented from time to time, the "<u>Plan</u>") submitted by the Debtors and described in, and attached as <u>Exhibit A</u>, to the related *Disclosure Statement for the ~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as may be amended, modified

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

or supplemented from time to time, the "Disclosure Statement") that was approved by an order [Docket No. ●] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order.  The Disclosure Statement describes the Plan and provides information to assist you in deciding how to vote your Ballot. Court approval of the Disclosure Statement does not indicate Court approval of the Plan.  If you do not have a Disclosure Statement or Plan you may obtain a copy free of charge on the Debtors' restructuring webpage maintained by the Debtors' solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Solicitation Agent") at https://cases.ra.kroll.com/FRG.  Copies of the Disclosure Statement and Plan are also available:  (i) for a fee, on the Court's website, www.deb.uscourts.gov (a PACER account is required); or, at the Debtors' expense, (ii) upon request to the Solicitation Agent via telephone at: (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your Interest has been placed in Class 11 under the Plan.**

**If your Ballot is not actually received by the Solicitation Agent on or before ~~February 14~~March [●], 2025 at 5:00 p.m. (ET) (the "Voting Deadline"), and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan.  If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.**

**Included in Item 3 of this Class 11 Ballot is an optional Opt-Out election related to the Releases by Holders of Claims set forth in Section 12 of the Plan.  You are deemed to have consented to the releases by Holders of Claims unless you Opt-Out of the Releases under the Plan by checking the release Opt-Out box under Item 3 of this Ballot so that it is actually received by the Voting Deadline.**

**You may submit your Ballot in the return envelope provided in your Solicitation Package or online via Solicitation Agent's E-Ballot Portal, or by regular mail, overnight courier, or hand delivery as follows:**

---

**If by online E-Ballot Portal:**

**Ballots may be submitted via** online submission through a dedicated e-balloting portal (the "E-Ballot Portal") accessible at the Debtor's restructuring website maintained by the Solicitation Agent **by no later than the Voting Deadline.**
To submit a customized, electronic version of your Ballot via the Solicitation Agent's E-Ballot Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized, electronic Ballot:**

**Unique E-Ballot ID#:** _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.
Each Unique E-Ballot ID# is to be used solely in relation to those Interests described in Item 1 of

---

your Ballot.  Please complete and submit a Ballot for each Unique E-Ballot ID# you receive, as applicable.

If you choose to submit your Ballot via the E-Ballot Portal, you **SHOULD NOT** also return a hard copy of your Ballot.

Ballots submitted via the E-Ballot Portal will be deemed to contain an immediately legally binding signature.

**Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.**

---

**If by First-Class Mail, Hand Delivery, or Overnight Courier:**
Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery

---

## ACCEPTANCE OR REJECTION OF THE PLAN

**Item 1.  Vote Amount**.  For purposes of voting to accept or reject the Plan, as of January ~~13~~31, 2025 (the "Voting Record Date"), the undersigned (the "Claimant") was a holder of Class 11 Existing Topco Equity Interests against ~~the Debtors~~**Freedom VCM Holdings, LLC** in the amount set forth below.

_____

**Item 2.  Vote on Plan**.  **CHECK ONE BOX ONLY:**

☐    **ACCEPTS (votes FOR) the Plan**.

☐    **REJECTS (votes AGAINST) the Plan**.

**Item 3.  Releases**.

**IMPORTANT INFORMATION REGARDING THE RELEASES**

**AS A HOLDER OF A CLAIM IN CLASS 11 UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASE CONTAINED IN SECTION 12.3 OF THE PLAN, AS SET FORTH BELOW, IF YOU DO NOT OPT OUT OF OR OBJECT TO THE RELEASE PROVISIONS OF THE PLAN.  YOUR DECISION ON THE ELECTION TO OPT OUT DOES NOT AFFECT WHAT WILL BE AVAILABLE FOR DISTRIBUTION OR THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will become effective.  In determining how to cast your vote on the Plan, it is important to read the provisions

contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Interest(s) you may hold against the Released Parties under the Plan.

> The undersigned holder of the Existing Topco Equity Interests in Class 11 set forth in Item 1 elects to:
>
> ☐ Opt Out of the Third-Party Release.

Specifically, the releases in Sections 12.2 and 12.3 of the Plan provide:

> ***Debtor Releases.  Subject to the outcome of the*** ~~***Independent Investigation with respect to the Investigation Related Matters and the***~~ ***Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the*** ~~***take-private transaction***~~ ***Take-Private Transaction and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively)***

*against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this Article XII.2 shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or or ~~non-compete~~non-compete obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc. For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.*

*<u>Third Party Releases.</u> Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and ~~subject~~Subject to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above,*

*each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn,*

*Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; or (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.*

The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:

*Releasing Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8-A, 108-B, 8-C, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in Article XII, or (ii) do not vote to accept or reject the Plan, and either do not timely submit a release opt-out, or do not file an objection to the releases in Article XII of the Plan prior to the deadline to object to confirmation of the Plan; provided that the Consenting First Lien Lenders shall not opt out of the releases set forth in Article XII of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in Article XII of the Plan on or before the deadline to object to confirmation of the Plan.  Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.*

*Released Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; and (f) the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g) each of such parties' Related Parties; provided, that no Person or Entity shall be a Released Party unlessif they are also a Releasing Partyopt-out of the releases provided for in Article XII of this Plan; provided, further, for the avoidance of doubt that, notwithstanding the foregoing, that Brian Kahn and Prophecy Asset Management LP and each of their Affiliates shall not be included in the definition of "Released Parties."  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn and/or Prophecy Asset Management LP.Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables,*

*Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve out); (iv) Irradiant Partners LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.*

**Freedom HoldCo Independent Investigation:  Any investigation conducted by the Freedom HoldCo Independent Director.**

**Freedom HoldCo Independent Investigation Related Matters:  All matters related to any claims, rights and Causes of Action that may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the Freedom HoldCo Independent Investigation.**

~~**Independent Investigation:  Any investigation conducted by Petrillo Klein + Boxer, as counsel to the Debtors.**~~

~~**Investigation Related Matters:  All matters related to any claims, rights and Causes of Action that the Estates may have against Mr. Brian Kahn, any current or former officer of the Debtors, or any other party arising from, or related to: (a) the Debtor's sale of W.S. Badcock Corporation to Conn's Inc. in December 2023; (b) the take-private transaction completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Debtor Franchise Group, Inc. and the other parties thereto; (c) the acquisition by Debtor Freedom VCM Receivables, Inc. of Debtor Freedom Receivables II, LLC and any receivables transactions undertaken by each of the foregoing, including any potential Avoidance Actions related thereto; (d) any transactions among the Debtors and B. Riley Principal Investments, LLC, B. Riley Financial, Inc., or any of its or their current and former Affiliates; (e) the Debtors' historical transactions and relationship with Mr. Kahn or Prophecy Asset Management LP; and (f) any other matters that may become subject to the Independent Investigation in the future.**~~

**Related Parties:  Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and**

> *any Person claiming by or through any of them, including such Related Parties'*
> *respective heirs, executors, estates, servants, and nominees.*

**Item 4.  Certification**.  By signing this Ballot, the Claimant certifies that:  (i) on the Voting Record Date, it was the holder of the Class 11 Existing TopCo Equity Interest(s) to which this Ballot pertains or an authorized signatory for such holder; (ii) it has full power and authority to vote to accept or reject the Plan, and execute and return the Ballot; and (iii) it has received a copy of the Disclosure Statement, the Plan, and other solicitation materials.   The undersigned understands that an otherwise properly completed, executed, and timely-returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.  The undersigned also certifies that its vote on the Plan is subject to all the terms and conditions set forth in the Plan and the Disclosure Statement.

[*Remainder of Page Left Intentionally Blank*]

Name of Claimant: _____

**Signature**: _____

Name (if different from Claimant): _____

Title: _____

Address: _____

_____

_____

Email Address: _____

Dated: _____

**Please make sure you have provided all information requested in this Ballot. Please read and follow the instructions set forth above and in the attached Voting Instructions carefully. Please complete, sign, and date this Ballot and return it in the prepaid, preaddressed business reply envelope provided or otherwise by regular mail, hand delivery, or overnight courier so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

**Alternatively, you may submit the customized electronic version of your Ballot online via the E-Ballot Portal on the Debtors' restructuring website at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page so that it is actually received by the Solicitation Agent by ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

## VOTING INSTRUCTIONS

1. In order for your vote to count, you must:

   (i) In the boxes provided in Item 2 of the Ballot, indicate <u>either</u> acceptance or rejection of the Plan by checking the appropriate box; and

   (ii) Review and sign the certifications in Item 4 of the Ballot. Please be sure to sign and date your Ballot. Your signature is required in order for your vote to be counted. If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing. If the Interest is held by an entity, your Ballot must be executed in the name of an authorized signatory. In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

2. **To have your vote counted, you must complete, sign, and return this Ballot so that it is <u>actually</u> <u>received</u> by the Solicitation Agent not later than ~~February 14~~March [●], 2025 at 5:00 p.m. (ET).**

3. If voting online, submit the customized electronic version of your Class 11 Existing TopCo Equity Interests Ballot via the E-Ballot Portal at https://cases.ra.kroll.com/FRG per instructions provided above and at the website landing page. Creditors who cast a Ballot via the E-Ballot Portal should NOT also submit a paper Ballot.

4. If voting by **mail**, return the completed Ballot to the Solicitation Agent in the pre-addressed, pre-paid return envelope enclosed with this Ballot or by regular mail, overnight courier, or hand delivery to:

   Franchise Group, Inc. Ballot Processing Center
   c/o Kroll Restructuring Administration LLC
   850 3rd Avenue, Suite 412
   Brooklyn, NY 11232

   To arrange hand delivery of your Ballot, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

5. A Ballot submitted by any means other than as set forth above will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

6. A Ballot that either indicates both an acceptance and rejection of the Plan or fails to indicate either an acceptance or rejection of the Plan, will not be counted.

7. You must vote all your Interests within a single Class under the Plan either to accept or reject the Plan. A Ballot that partially rejects and partially accepts the Plan will not be counted.

8. If you cast more than one Ballot voting the same Interest prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect your intent and shall supersede and revoke any earlier received Ballot. If you cast multiple Ballots on

account of the same Interest, which are received by the Solicitation Agent on the same day and at the same time, but which are voted inconsistently, such Ballots shall not be counted.

9. Any Ballot that is illegible or that contains insufficient information to permit the identification of the Claimant will not be counted.

10. This Ballot does not constitute, and shall not be deemed to be, a proof of claim against any of the Debtors or an assertion or admission of an Interest by the Debtors.

11. **If you wish to have your Interest temporarily allowed for purposes of voting on the Plan pursuant to Bankruptcy Rule 3018(a) in a different amount or classification, you must file with the Court and serve on proposed co-counsel to the Debtors no later than 4:00 p.m. (ET) on ~~February 7~~March [●], 2025 a motion seeking such temporary allowance and a notice of hearing on such motion.**

12. It is important that you vote.  The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  If the requisite acceptances are not obtained, the Court nonetheless may, in certain circumstances, confirm the Plan if it finds that the Plan:  (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes voting to reject the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  To confirm a plan over the objection of a dissenting Class, the Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

13. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER SOLICITATION MATERIALS APPROVED BY THE COURT, INCLUDING, WITHOUT LIMITATION, THE DISCLOSURE STATEMENT.

14. PLEASE RETURN YOUR BALLOT PROMPTLY.

IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT OR THESE VOTING INSTRUCTIONS, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT ELECTRONICALLY AT FRGINFO@RA.KROLL.COM (WITH "FRANCHISE GROUP SOLICITATION INQUIRY" IN THE SUBJECT LINE), IN WRITING TO THE ADDRESS PROVIDED ABOVE OR VIA TELEPHONE AT: (844) 285-4564 (U.S./CANADA, TOLL FREE) OR +1 (646) 937-7751 (INTERNATIONAL).

PLEASE NOTE THAT THE SOLICITATION AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE.  YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

## EXHIBIT 4

**Notice of Non-Voting Status**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (~~JTD~~**LSS**) |
| Debtors. | (Jointly Administered) |

## NOTICE OF NON-VOTING STATUS
## TO HOLDERS OF CLASS 1, 2, ~~AND~~ 9 **AND 10** CLAIMS AND HOLDERS OF CLASS 12 INTERESTS

**PLEASE TAKE NOTICE THAT** the debtors and debtors in possession in the in the above-captioned cases (collectively, the "Debtors") submitted the ~~*First*~~*Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* (as amended, modified or supplemented from time to time, the "Plan"),[2] which is described in and attached as Exhibit A to the related *Disclosure Statement for the ~~First~~Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors*, dated as of [●], 2025 (as may be amended, modified or supplemented from time to time, the "Disclosure Statement"), that was approved by an order [Docket No. ●] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order.  The Disclosure Statement Order authorizes the Debtors to solicit votes to accept or reject the Plan from the holders of Claims in the Voting Class (as

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate SP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2]  All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

defined in the Disclosure Statement Order).  Capitalized terms used but not otherwise defined herein shall the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

**YOU ARE OR MIGHT BE THE HOLDER OF CLAIMS IN CLASSES OF UNIMPAIRED CLAIMS DEEMED TO ACCEPT THE PLAN OR OF INTERESTS IN CLASSES OF IMPAIRED CLAIMS DEEMED TO REJECT THE PLAN, THAT, IN EITHER CASE, ARE NOT ENTITLED TO VOTE ON THE PLAN.  THE FOLLOWING IS A SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN FOR PURPOSES OF PLAN VOTING.**

| Class | Claim or Interest | Summary of Treatment |
|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired<br>*Deemed to Accept Plan* |
| 2 | Other Secured Claims | Unimpaired<br>*Deemed to Accept Plan* |
| 3 | Prepetition ABL Loan Claims | Impaired<br>*Entitled to Vote on Plan* |
| 4 | Prepetition First Lien Loan Claims | Impaired<br>*Entitled to Vote on Plan* |
| 5 | Prepetition Second Lien Loan Claims | Impaired<br>*Entitled to Vote on Plan* |
| 6-A | General Unsecured Claims against Franchise Group, Inc. | Impaired<br>*Entitled to Vote on Plan* |
| 6-B | General Unsecured Claims against **the** American Freight **Debtors** | Impaired<br>*Entitled to Vote on Plan* |
| 6-C | General Unsecured Claims against ~~Educate~~ **the Buddy's Debtors** | Impaired<br>*Entitled to Vote on Plan* |
| 6-D | General Unsecured Claims against **the** PSP **Debtors** | Impaired<br>*Entitled to Vote on Plan* |
| 6-E | General Unsecured Claims against **the** Vitamin Shoppe **Debtors** | Impaired<br>*Entitled to Vote on Plan* |
| 7 | **Prepetition** HoldCo Loan Claims | Impaired<br>*Entitled to Vote on Plan* |
| 8-**A** | **Freedom HoldCo** General Unsecured Claims ~~against the HoldCo Entities~~ | Impaired<br>*Entitled to Vote on Plan* |
| **8-B** | **HoldCo Receivables General Unsecured Claims** | **Impaired**<br>***Entitled to Vote on Plan*** |

| Class | Claim or Interest | Summary of Treatment |
|---|---|---|
| **8-C** | **TopCo General Unsecured Claims** | **Impaired**<br>***Entitled to Vote on Plan*** |
| 9 | Intercompany Claims | Impaired<br>***Deemed to Reject*** |
| 10 | Subordinated Claims | Impaired<br>***~~Entitled~~Deemed* to *~~Vote on Plan~~Reject*** |
| 11 | Existing TopCo Equity Interest | Impaired<br>***Entitled to Vote on Plan*** |
| 12 | Existing Intercompany Equity Interests | Impaired<br>***Deemed to Reject*** |

UNDER THE TERMS OF THE PLAN, HOLDERS OF CLAIMS IN CLASSES 1 AND 2 ARE UNIMPAIRED UNDER THE PLAN AND, THEREFORE, PURSUANT TO THE PLAN AND BANKRUPTCY CODE SECTION 1126(f), ARE (I) DEEMED TO HAVE ACCEPTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN.

UNDER THE TERMS OF THE PLAN, HOLDERS OF CLAIMS IN ~~CLASS~~CLASSES 9 AND 10, AND HOLDERS OF INTERESTS IN CLASS 12 ARE IMPAIRED UNDER THE PLAN AND ARE NOT ENTITLED TO RECEIVE OR RETAIN ANY PROPERTY ON ACCOUNT OF THEIR INTERESTS IN THIS CLASS AND, THEREFORE, PURSUANT TO BANKRUPTCY CODE SECTION 1126(g), ARE (I) DEEMED TO HAVE REJECTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN.

*ARTICLE XII OF THE PLAN CONTAINS CERTAIN RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS.  YOU ARE ENCOURAGED TO CAREFULLY REVIEW THE PLAN, INCLUDING THESE PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED, REGARDLESS OF WHETHER OF YOU ARE UNIMPAIRED OR IMPAIRED UNDER THE PLAN.*

PURSUANT TO SECTION 12.3 OF THE PLAN, HOLDERS OF CLAIMS IN CLASSES ~~3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8, 10, and 11~~1 AND 2 UNDER THE PLAN THAT DO NOT FILE AN OBJECTION TO THE RELEASES IN SECTION 12.3 OF THE PLAN PRIOR TO THE DEADLINE TO OBJECT TO CONFIRMATION OF THE PLAN WILL BE DEEMED TO HAVE COMPLETELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED THE RELEASED PARTIES TO THE EXTENT PROVIDED IN SECTION 12.3 OF THE PLAN.

*The release in Section 12.2 of the Plan (the "Debtor Release") binds the Debtors.  The Debtor Release provides:*

Subject to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the ~~take-private transaction~~<u>Take-Private Transaction</u> and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; <u>provided</u>, <u>however</u>, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the

commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release.  Notwithstanding the foregoing, nothing in this <u>Article XII.2</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or ~~non-compete~~<u>non-compete</u> obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; ~~or~~ (4) <u>any OpCo Litigation Claims; or (5)</u> any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

*The release in Section 12.3 of the Plan (the "<u>Third Party Release</u>") binds the "Releasing Parties," which the Plan defines as follows:  "collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee (if any) and each of its members solely in their capacity as members of the Creditors' Committee; (f) all Holders of Claims in Classes 3, 4, 5, 6-A, 6-B, 6-C, 6-D, 6-E, 7, 8<u>-A</u>, ~~108-B, 8-C~~, and 11 that (i) vote to accept or reject the Plan and do not timely submit a release opt-out indicating such Holder's decision not to participate in the releases set forth in <u>Article XII</u>, or (ii) do not vote to accept or reject the Plan, <u>and</u> either do not timely submit a release opt-out, or do not file an objection to the releases in <u>Article XII</u> of the Plan prior to the deadline to object to confirmation of the Plan; <u>provided</u> that the Consenting First Lien Lenders shall not opt out of the releases set forth in <u>Article XII</u> of the Plan; and (g) all unimpaired creditors of the Debtors who do not file an objection to the releases set forth in <u>Article XII</u> of the Plan on or before the deadline to object to confirmation of the Plan.  <u>Holders who were not provided a Ballot or opt-out form and are not listed in clauses (a) through (g) above are not Releasing Parties.</u>"  The Third Party Release provides:*

Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and ~~subject~~<u>Subject</u> to the outcome of the ~~Independent Investigation with respect to the Investigation Related Matters and the~~ Freedom HoldCo Independent Investigation with respect to Freedom HoldCo Independent Investigation Related Matters and Claims and Causes of Action against any Holders of DIP Claims or Prepetition First

Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common laws, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; and/or (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Sale Transaction or assumed pursuant to this Plan or any Sale Transaction or Final Order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any

claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any act or omission, transaction, or other occurrence or circumstances related to Brian Kahn, Prophecy Asset Management LP, or any of their Affiliates; (3) any retained Causes of Action; or (4) any OpCo Litigation Claims; or (5) any Avoidance Actions held by Debtors Freedom Receivables II, LLC and Freedom VCM Receivables, Inc.  For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn or Prophecy Asset Management LP.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

*The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:*

Released Parties:  Collectively, and each solely in its capacity as such: (a) the Debtors, their Estates, and the Post-Effective Debtors; (b) the DIP Agent and the DIP Lenders; (c) the First Lien Credit Agreement Agent; (d) the Consenting First Lien Lenders; (e) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; and (f) the Holders of Claims in Classes 6-A, 6-B, 6-C, 6-D, and 6-E who vote to approve the Plan; and (g) each of such parties' Related Parties; provided, that no Person or Entity shall be a Released Party unless if they are also a Releasing Party opt-out of the releases provided for in Article XII of this Plan; provided, further, for the avoidance of doubt that, notwithstanding the foregoing, that Brian Kahn and Prophecy Asset Management LP and each of their Affiliates shall not be included in the definition of "Released Parties." For the avoidance of doubt, none of the Debtors are Affiliates of Brian Kahn and/or Prophecy Asset Management LP. Released Parties shall not include: (i) former directors of the Debtors; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, and Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this carve out); (iv) Irradiant Partners LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this carve out); and (vi) WFG solely for any prepetition services rendered, provided, further, that, notwithstanding the

**foregoing, any party that contributes to the OpCo Debtor Litigation Trust Escrow Account in an amount agreed to by the Creditors' Committee, in consultation with the Required First Lien Lenders, shall be a Released Party for purposes of releases granted by the OpCo Debtors.**

**Freedom HoldCo Independent Investigation**:  Any investigation conducted by the Freedom HoldCo Independent Director.

**Freedom HoldCo Independent Investigation Related Matters**:  All matters related to any claims, rights and Causes of Action that may be held by or against the Freedom HoldCo Debtors, and all other matters that may become subject to the Freedom HoldCo Independent Investigation.

~~**Independent Investigation**:  Any investigation conducted by Petrillo Klein + Boxer, as counsel to the Debtors.~~

~~**Investigation Related Matters**:  All matters related to any claims, rights and Causes of Action that the Estates may have against Mr. Brian Kahn, any current or former officer of the Debtors, or any other party arising from, or related to: (a) the Debtor's sale of W.S. Badcock Corporation to Conn's Inc. in December 2023; (b) the take-private transaction completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Debtor Franchise Group, Inc. and the other parties thereto; (c) the acquisition by Debtor Freedom VCM Receivables, Inc. of Debtor Freedom Receivables II, LLC and any receivables transactions undertaken by each of the foregoing, including any potential Avoidance Actions related thereto; (d) any transactions among the Debtors and B. Riley Principal Investments, LLC, B. Riley Financial, Inc., or any of its or their current and former Affiliates; (e) the Debtors' historical transactions and relationship with Mr. Kahn or Prophecy Asset Management LP; and (f) any other matters that may become subject to the Independent Investigation in the future.~~

**Related Parties**:  Collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and any Person claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees.

Objections, if any, to confirmation of the Plan, including the releases provided for in Section 12.3 of the Plan, must (i) be in writing; (ii) state the name, address, and nature of the Claim or Interest of the objecting or responding party; (iii) state with particularity the legal and factual basis and nature of any objection or response; and (iv) be filed with the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and served on the following parties so as to be actually received **before 5:00 p.m. (ET) on ~~February 14~~March [●], 2025**: (a) proposed co-counsel for the Debtors, (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Debra M. Sinclair, Esq. (dsinclair@willkie.com) and Betsy L. Feldman, Esq. (bfeldman@willkie.com), and

(ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:    Edmon L. Morton, Esq. (emorton@ycst.com) and Matthew B. Lunn, Esq. (mlunn@ycst.com); (b) counsel to the official committee of unsecured creditors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899, Attn:  Bradford J. Sandler, Esq. (bsandler@pszjlaw.com) and Colin R. Robinson, Esq. (crobinson@pszjlaw.com), and 780 Third Avenue, 34th Floor, New York, NY 10017, Attn:    Robert J. Feinstein, Esq. (rfeinstein@pszjlaw.com), Alan J. Kornfeld, Esq. (akornfeld@pszjlaw.com), and Theodore S. Heckel, Esq. (theckel@pszjlaw.com); (c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); (d) counsel to the DIP Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Gregg Bateman, Esq. (bateman@sewkis.com), Sagar Patel, Esq. (patel@sewkis.com), and Michael Danenberg, Esq.(danenberg@sewkis.com); (e) counsel to the DIP Lenders and Ad Hoc Group of First Lien Lenders, (i) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (ii) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com); (f) counsel to the ABL Lenders, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com); (g) counsel to the Second Lien Term Loan Lenders, White & Case LLP, 200 S Biscayne Blvd, Miami, FL 33131, Attn:    Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100, Chicago, IL 60606, Attn:  Bojan Guzina, Esq. (bojan.guzina@whitecase.com); and (h) counsel to the HoldCo Lenders at the address set forth in (vii) above.

Copies of the Plan, the Disclosure Statement, the Plan Supplement (which will be filed on or before ~~February 7~~**March 4**, 2025), and the Disclosure Statement Order are, or will be, available for review free of charge at https://cases.ra.kroll.com/FRG, by clicking on the link on the left-hand side of the page titled "Plan & Disclosure Statement."  In addition, copies of the Plan are available upon written request to:

Franchise Group, Inc.
Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

Copies of the Plan are also available, at the Debtors' expense, by submitting an inquiry to the Solicitation Agent via telephone at (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

[*Remainder of Page Left Intentionally Blank*]

Dated: [●], 2025
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/_____
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
amielke@ycst.com
sborovinskaya@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Debra M. Sinclair (admitted *pro hac vice*)
Matthew A. Feldman (admitted *pro hac vice*)
Betsy L. Feldman (Del. No. 6410)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
dsinclair@willkie.com
mfeldman@willkie.com
bfeldman@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*