**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>(Jointly Administered)<br><br>Re: D.I. 474, 730, 812<br><br>Hearing Date: Feb. 6, 2025 at 10:00 a.m. |

**SUPPLEMENT TO OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS'
APPLICATION TO RETAIN WILLKIE FARR & GALLAGHER LLP**

Andrew R. Vara, United States Trustee for Regions 3 and 9 ("U.S. Trustee"), by and through his undersigned counsel, supplements his objection to the Debtors' application (the "Application") to employ Willkie Farr & Gallagher LLP ("Willkie") (the "Objection") [D.I. 730], In support, the U.S. Trustee states:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

**PRELIMINARY STATEMENT**

As set forth in the Objection, the Debtors seek to retain Willkie as co-counsel to prosecute these chapter 11 cases notwithstanding the firm's material representations of Brian Kahn ("Mr. Kahn"), the Debtors' former Chief Executive Officer and Director (and the Debtors' former controlling shareholder, and still a substantial minority shareholder), and Mr. Kahn's non-debtor affiliates in matters directly relevant to these chapter 11 estates, including the "Take-Private Transaction" that gave rise to the Debtors' current capital structure, which is presently the subject of pitched litigation. Prior and subsequent to the filing of the Objection, the U.S. Trustee has (i) made informal document and information requests, (ii) propounded a Request for Production to the Debtors, (iii) served a subpoena directed to Mr. Kahn, and (iv) engaged with Willkie regarding the Debtors' proposed retention of the firm. At each turn, the information provided to the U.S. Trustee has called into question the veracity of statements regarding Willkie's connections contained in the Application and the Feldman Declaration.

A.  **Failure to Disclose Breach of Purported Ethical Wall**

1. In the Feldman Declaration, Willkie presented its purported ethical wall as part of its effort to persuade the Court the retention would be permissible—notwithstanding that Willkie represented Mr. Kahn and/or Vintage Capital Management, LLC ("Vintage Capital"), a Kahn-affiliated asset management company, in connection with taking the Debtors private, the Court should permit Willkie to serve as Debtors' counsel in part because, once fraud allegations against Mr. Kahn pertaining to a hedge fund called Prophecy Asset Management LP ("Prophecy") became public after the Take-Private Transaction closed, Willkie erected an ethical wall between the attorneys providing services to Mr. Kahn/his non-debtor affiliates and, separately, the Debtors and

honored that informational barrier; Willkie personnel on the Kahn side of the wall would not be permitted to provide services to the Franchise Group entities:

> Fraud Allegations. As discussed more fully in the First Day Declaration, in November 2023, Mr. Kahn was identified by federal prosecutors as an unindicted co-conspirator in a securities fraud indictment (and by the Securities and Exchange Commission in a related civil complaint) against the former president and chief compliance officer of an unrelated hedge fund, Prophecy Asset Management LP ("Prophecy"), for his alleged involvement in a multi-year fraud that allegedly concealed losses of hundreds of millions of dollars from Prophecy's investors.
>
> ***On November 7, 2023, upon learning of the allegations against Mr. Kahn, Willkie established an exclusionary ethical wall between the teams representing Franchise Group, on one hand, and Mr. Kahn on personal criminal and civil matters, on the other hand.*** The purpose of the ethical wall was and is to ensure that the individuals who have represented Mr. Kahn and/or his affiliates with respect to personal criminal and civil matters (i) are not, and do not become, a part of the team that represents Franchise Group with respect to any matters related to the criminal and civil allegations against Mr. Kahn, and (ii) do not have access to documents created by the team that represents Franchise Group with respect to any matters related to the criminal and civil allegations against Mr. Kahn. ***At all times, Willkie has had separate teams of attorneys dedicated to working on Mr. Kahn's personal criminal and civil matters, on the one hand, and for Franchise Group on any matters related to the criminal and civil allegations against Mr. Kahn, on the other hand.***

Feldman Decl. ¶¶ 22, 23 (emphasis added).

2. The Feldman Declaration describes the purported ethical wall, which was broadly designed to ensure that there was absolutely no overlap between the Willkie personnel who provided (or are providing) services to Mr. Kahn and/or his non-debtor affiliates on one side of the wall, and Willkie personnel providing services to the Debtors on the other. Tariq Mundiya ("Mr. Mundiya"), a Willkie partner who heads the firm's Litigation Department and is a member of the firm's Executive Committee, was part of "the team[] representing … Mr. Kahn on personal criminal and civil matters;" reading the first sentence of paragraph 23 of the Feldman Declaration, Mr. Mundiya should never have been on the Franchise Group side of the wall. *See* Feldman Decl. ¶ 23.

3.  The U.S. Trustee filed his Objection to the Application on January 13, 2025 [D.I. 730].

4.  On January 22, 2025, the U.S. Trustee served a notice of request for production of documents directed to the Debtors [D.I. 812] and a subpoena directed to Mr. Kahn [D.I. 813]. In addition to other documents, the U.S. Trustee specifically requested any billing invoices and/or time records related to the *Gale* class action matter.

5.  On February 3, 2024 Willkie filed the *Supplemental Declaration of Matthew A. Feldman in Further Support of Debtors' Application for an Order Authorizing the Retention and Employment of Willkie Farr & Gallagher, LLP as Co-Counsel to the Debtors,* Nunc Pro Tunc *to the Petition Date* (the "Supplemental Feldman Declaration") [D.I. 889]. While labeled "supplemental," the Supplemental Feldman Declaration is a corrective, material amendment to the Feldman Declaration. Willkie's initial statements regarding the purported ethical wall were inaccurate and left out material facts. Time records dating through October of 2024 produced to the U.S. Trustee prior to the filing of the Feldman Supplemental Declaration showed that Mr. Mundiya billed Franchise Group, Inc. on a matter related to the Take-Private Transaction throughout August, September, and October of 2024 (specifically, the Willkie invoices reference the Delaware General Corporation Law ("DGCL") *Gale* section 220 litigation), while other documents establish that Mr. Mundiya was providing counsel and/or representation on Mr. Kahn's personal behalf after November 7, 2023. For example, Mr. Mundiya copied Mr. Kahn on an email seeking to hold a call with the Prophecy Settlement-related Liquidating Trust 2022-23 (the "Prophecy Trust") on September 25, 2024 (attached hereto as Exhibit A).

6. Once Willkie knew that it was producing records to the U.S. Trustee which showed that Mr. Mundiya was on both sides of the purported ethical wall, Willkie's facts changed, and so did Willkie's argument:

> Based on a review of billing records, only one Willkie lawyer working on the representation of Mr. Kahn/Vintage Capital after establishment of the wall did any work on any Franchise Group matter after the wall was established. The lawyer is litigation partner, Mr. Tariq Mundiya, and the matter was the Section 220 demands/Gale matter, in which Willkie represents Franchise Group (not Mr. Kahn/Vintage Capital). As described above, supra ¶¶ 11-13, that matter was brought by former public shareholders of Franchise Group who claim that the $30.00 per share they received in August 2023 in the Take-Private Transaction was too low. Mr. Mundiya billed approximately 25.2 hours on that matter, which included the Section 220 demands and the Gale lawsuit. ***The Gale complaint, filed in July 2024, includes allegations describing the November 2023 revelations about the Prophecy matter, but is squarely premised on claims regarding disclosures in the Take-Private Transaction. Accordingly, Mr. Mundiya's work representing Franchise Group in connection with the Gale matter does not relate to the criminal and civil allegations on which Willkie (including Mr. Mundiya) represented Mr. Kahn.*** Again, the purpose and function of the ethical wall is to protect the confidential information of each client, and there is no plausible scenario in which Mr. Mundiya's limited work on the Gale matter for Franchise Group would have impaired the wall's efficacy.

Feldman Suppl. Decl. ¶ 28.

7. In short, Willkie now wants this Court to believe that, while the *Gale* complaint mentions "the Prophecy matter," it is "squarely premised upon claims regarding disclosures in the Take-Private Transaction" which are **unrelated** to the "criminal and civil allegations on which Willkie (including Mr. Mundiya) represented Mr. Kahn." Feldman Suppl. Decl. ¶ 28.

8. Paragraph 28 of the Supplemental Feldman Declaration grossly mischaracterizes the *Gale* class action complaint in an apparent effort to minimize Willkie's failure to properly maintain the purported ethical wall. The *Gale* plaintiffs' statements speak for themselves and absolutely confirm that the matter is **related** to the Prophecy-related criminal and civil allegations on which Willkie (including Mr. Mundiya) represented Mr. Kahn. Feldman Decl. ¶ 24 ("From

5

November 2023 through September 2024, Willkie, alongside other counsel, assisted Mr. Kahn in the Prophecy matter, including in document production to the Office of the United States Attorney and in an arbitration matter involving Prophecy investors."). Specifically, the *Gale* plaintiffs allege that Kahn breached his fiduciary duties to Franchise Group equity security holders by failing to disclose material Prophecy-related information in the proxy statement incident to the Take-Private Transaction:

- After the Merger closed in August 2023, Kahn was implicated in a multi-hundred million dollar fraud scheme, which appears to have ties to both Franchise Group-related businesses and B. Riley. The fraud, which pre-dated the Merger, uncovered numerous additional investment ties between Kahn, Vintage, and B. Riley that were never disclosed to Franchise Group stockholders in the Proxy." Gale Class Action Compl. ¶ 6.

- Worse still, Franchise Group did not disclose—and is likely trying to conceal—the fact that B. Riley has aided and abetted Kahn in defrauding investors in the Prophecy fund. Gale Class Action Compl. ¶ 162.

- Kahn managed 86% of the Prophecy investments. He illegally covered up $294 million in lost Prophecy funds. Gale Class Action Compl. ¶ 163.

- In fact, Kahn's impetus for Franchise Group's take-private Merger may have been to avoid public company scrutiny of his fraudulent transactions. The Proxy does not provide information regarding this key issue. Gale Class Action Compl. ¶ 164.

- Also, new details of loans by B. Riley to Kahn show a longer and closer relationship than previously known. They also raise questions about whether Franchise Group should have disclosed more details about some of the loans years ago, when the Company's board included two B. Riley executives as directors. Gale Class Action Compl. ¶ 165.

- B. Riley's loans to Kahn also date back longer than previously known. B. Riley made at least 10 different loans to Kahn and entities he controlled from 2018 through 2023, according to UCC financing statements filed with state agencies in Nevada, Delaware and Florida. The UCC filings do not show the amounts borrowed, but a presentation generated by an investment bank that provided financing to B. Riley as part of the Merger indicated that the principal balance on Kahn's loans was $154 million by mid-2023. The Proxy does not disclose the existence of these loans. Gale Class Action Compl. ¶ 166.

- Kahn has agreed to pay more than $200 million, including cash and Franchise Group stock, to compensate Prophecy's investors. At the same time, Kahn has pledged Franchise Group stock as collateral for a $200 million loan from B. Riley to Vintage. Unsurprisingly, Kahn's

double-pledging of Franchise Group stock also was not disclosed in the Proxy. Gale Class Action Compl. ¶ 167.

- Minority stockholders were not informed of either B. Riley's longtime financing of various Kahn-controlled operations or B. Riley and Kahn's connections to the Prophecy fraud, even though Kahn obviously had knowledge of their relationship and their shared involvement in the fraud. Thus, the Proxy did not adequately show the close ties and sway that B. Riley had with respect to Kahn and Franchise Group. Gale Class Action Compl. ¶ 168.

9. The *Gale* plaintiffs also allege that Kahn, Vintage Capital and the other defendants, in their respective capacities as controlling equity holders, directors, and/or officers of Franchise Group, breached their fiduciary duties to Franchise Group stockholders. Specifically, the plaintiffs alleged that Mr. Kahn, by, *inter alia*, "drafting and disseminating a Proxy that [he] knew or should have known to be misleading and materially incomplete" because it didn't include sufficient disclosure regarding the "Prophecy fraud" – the Prophecy-related criminal and civil allegations against Mr. Kahn. Gale Class Action Compl. ¶ 193 (bracketed text substituted). A copy of the Gale Class Action Complaint is attached as Exhibit B.

10. To effectively represent Franchise Group in connection with the *Gale* matter, the Willkie attorneys involved would have internally investigated the Debtors' diligence efforts in connection with the Take-Private Transaction – a transaction where Willkie, and specifically Mr. Mundiya, represented Kahn and/or Vintage.

11. The Initial Feldman Declaration also stated that "Willkie represented Mr. Kahn in the Take-Private Transaction and related ancillary matters." Feldman Decl. ¶ 21. Only in the Supplemental Declaration did Willkie correct the record, that in fact "Willkie had represented Mr. Kahn/Vintage Capital in connection with matters related to the Take-Private Transaction." Supplemental Decl. ¶ 36.

12. In the Objection, the U.S. Trustee cited Federal Rule of Bankruptcy Procedure 2014(a) and applicable common law governing a proposed professional's disclosure obligations.

7

Willkie failed to disclose two Franchise Group-related connections, as discussed in the Objection: the firm's representation of Mr. Kahn in connection with the *Pels* matter, a concluded Ohio state court action brought by a Franchise Group shareholder seeking to enjoin the Take-Private Transaction from closing, in which Mr. Mundiya was on the signature block of Mr. Kahn's response to the plaintiff's motion for a preliminary injunction; and the *Calenture* matter, a short-swing profit action tied to sales of Franchise Group stock by B. Riley parties (whom Willkie represented in the concluded action) to Mr. Kahn, his spouse, and/or a trust settled by Mr. Kahn.

13.  Willkie's failure to police its purported ethical wall is another item under Federal Rule of Bankruptcy Procedure 2014(a) which warrants denial of the Application and disqualification. The *Gale* plaintiffs made it abundantly clear that, in furtherance of their claims, they were seeking information regarding what Mr. Kahn, Vintage, and the Debtors knew and/or learned about the Prophecy-related fraud during the time between when the Take-Private Transaction was conceived and when the transaction closed. Given his representation of Mr. Kahn and/or Vintage in connection with the Take-Private Transaction and, separately, the *Pels* matter, Mr. Mundiya should never have been on the Franchise Group side of the purported wall.

**B.  Disqualifying Conflict of Interest**

15.  Section 327(a) states:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

16. Courts have defined the "interest adverse" language in 11 U.S.C. § 327(a) as follows:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

*See I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005) (citations omitted); *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005).

17. 11 U.S.C. § 327(c) provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified from employment under this section solely because of such person's employment by or representation of a creditor, unless there is [an] objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

18. The United States Court of Appeals for the Third Circuit has neatly reduced conflicts analysis for attorneys proposed to be retained under 11 U.S.C. § 327(a) to a basic set of principles: actual conflicts of interest require disqualification; potential conflicts of interest may be disqualifying in the exercise of the Court's discretion; and the mere appearance of conflict, without more, is insufficient to disqualify counsel. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).

19. The term "disinterested person" is defined in part as a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). This provision, better known as the "catch-all" provision, "has been held broad enough to include anyone who 'in the slightest degree

9

might have some interest or relationship that might faintly color the independence and impartial attitude required [of estate professionals] by the Code and the Bankruptcy Rules.'" *In re BH & P, Inc.*, 949 F.2d 1300, 1309 (3d Cir. 1991) (internal citations omitted).

20. In *Paul J. Winterhalter, P.C. v. Office of the United States Trustee (In re Harris Agency, LLC)*, 462 B.R. 514 (E.D. Pa. 2011), the United States District Court for the Eastern District of Pennsylvania addressed the competing interests of a closely-held debtor and its principals. 462 B.R. at 523-24. Interests of the principals which may have been aligned with the debtor at one time, were no longer so once the debtor filed its petition, as a debtor "owes 'the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession.'" *Id.* at 524 (quoting *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355 (1985)). "[A]mong the fiduciary obligations of a debtor-in-possession is the duty to protect and conserve property in its possession for the benefit of creditors." *Marvel,* 140 F.3d at 474 (internal quotation marks omitted).

21. Willkie has a disqualifying conflict of interest, regardless of whether that conflict is characterized as "potential" or "actual," due to the firm's pre-petition representation of Mr. Kahn and his non-debtor affiliates. Any attempt to separate Mr. Kahn's pre-petition business dealings, including the Take-Private Transaction (in which Willkie represented Mr. Kahn and/or Vintage Capital), from the origin story of the Debtors' chapter 11 cases is akin to "using a scalpel to carve a bowl of soup." *In re Congoleum Corp.*, 426 F.3d 675, 692 (3d Cir. 2005). Consequently, all advice provided to the Debtors regarding the proposed plan and the firm's representation of the Debtors in these cases, including in negotiation of the RSA, is tainted by Willkie having professional obligations as an attorney to the Debtors and, as well, a duty of loyalty to Mr. Kahn

and his non-debtor affiliates that is not cured by the purported ethical wall and the proposal to use conflicts counsel.

22. For example, counsel for the Debtors in possession has a duty to investigate and pursue affirmative claims and causes of action against Mr. Kahn and his non-debtor affiliates. Willkie has a duty of loyalty to Mr. Kahn and one/more of those non-debtor affiliates by virtue of the firm's pre-petition representation of them in connection with a key matter relating to the Debtors – the Take-Private Transaction. Willkie's proposed solution to its conflicting duties of loyalty to the Debtors' estates and Mr. Kahn is to pass the claims investigation to "conflicts counsel." But proposed section 327(a) counsel's duty of loyalty to the Debtors is non-transferrable, and the section 327(a) engagement cannot be carved up into pieces as a work-around to address Willkie's representation of Mr. Kahn and/or Vintage in the Take-Private Transaction.

C. **Lack of Disinterestedness**

23. Willkie attached a payment history to the Supplemental Feldman Declaration. Suppl. Feldman Decl. Ex. 1. The Supplemental Feldman Declaration attached additional information on payments received in the 90 days prior to the Petition Date, in prior informal responses, the firm identified these on an invoice-by-invoice basis, including the dates on which services were rendered, which is presented in the below material. In reviewing these payments in this fashion including the dates of services rendered, a substantial preference issue is apparent. Specifically of note are the invoices excerpted below, which amount to $307,375.32 in transfers that are facially preferential:

| Invoice Number | Invoice Date | Payment Date | Dates of Service Covered By Invoice | Total Billed | Total Paid |
| --- | --- | --- | --- | --- | --- |
| 12409425 | 4/9/2024 | 8/30/2024 | 3/1/24 – 3/31/24 | $147,111.30 | $147,111.30 |
| 12409426 | 4/9/2024 | 8/16/2024 | 3/1/24 – 3/31/24 | $8,585.85 | $8,585.85 |
| 12409427 | 4/9/2024 | 8/2/2024 | 3/1/24 – 3/31/24 | $46,044.02 | $46,044.02 |
| 12409428 | 4/9/2024 | 8/30/2024 | 3/1/24 – 3/31/24 | $81,596.60 | $81,596.60 |
| 12409429 | 4/9/2024 | 8/30/2024 | 3/1/24 – 3/31/24 | $3,978.18 | $3,978.18 |
| 12409430 | 4/9/2024 | 8/16/2024 | 3/1/24 – 3/31/24 | $637.50 | $637.50 |
| 12409431 | 4/9/2024 | 8/2/2024 | 3/1/24 – 3/31/24 | $19,421.87 | $19,421.87 |

23. The Third Circuit has previously held that counsel which has received preferential transfers is not a "disinterested person." *See In re Pillowtex, Inc.*, 304 F.3d 246, 255 (3d Cir. 2002) ("We hold that when there has been a facially plausible claim of a substantial preference, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination of the preference issue"); *see also United States Trustee v. First Jersey Secs., Inc. (In re First Jersey Secs., Inc.)*, 180 F.3d 504 (3d Cir. 1999). Here, it appears that Willkie's receipt of payments from the Debtors for services rendered that were not within trade terms would be preferential. This is at least $307,375.32, which Willkie must establish is not the subject of avoidance to be employed under section 327(a) and Third Circuit law.

**CONCLUSION**

24. For reasons set forth in detail above, the U.S. Trustee respectfully requests that this Court deny the Application and sustain the Objection.

25. The United States Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Supplemental Objection and Motion, file any appropriate motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

Dated: February 4, 2025
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**

By: */s/ Timothy J. Fox*          .
    Timothy J. Fox, Jr. (DE Bar No. 6737)
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491
    Timothy.Fox@usdoj.gov