# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br>(Jointly Administered)<br><br>Re: Docket Nos. 152, 922, 958, 960, 979 |

## THE AD HOC GROUP OF FREEDOM LENDERS' RENEWED MOTION TO ADJOURN DISCLOSURE STATEMENT HEARING

The Ad Hoc Group of Freedom Lenders (the "**Freedom Lender Group**"),[2] by and through its undersigned counsel, hereby files this renewed motion to adjourn the hearing on the *Debtors' Motion for an Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the*

---

[1] The debtors in these chapter 11 cases (the "**Debtors**"), along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), B. Riley Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home and Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] The Freedom Lender Group is comprised of the entities named in the *Verified Statement of the Ad Hoc Group of Freedom Lenders Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 229], as it may be amended and supplemented from time to time.

*Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 152] (the "**Disclosure Statement Motion**") and respectfully states as follows:

## RENEWED MOTION TO ADJOURN

"Meet the new boss, same as the old boss."

The Who, "*Won't Get Fooled Again*" (Decca Records 1971).

1.       When the Court denied the Debtors' application to retain proposed section 327(a) counsel because the firm was burdened with irreconcilable actual conflicts regarding material issues in these chapter 11 cases, there was hope that this turn of events could give the Debtors—and these chapter 11 cases—a fresh start.

2.       With new unconflicted counsel, the Debtors would have the opportunity to revisit and revise their proposed joint plans, which had been negotiated and drafted by conflicted counsel, and then make conforming changes to their disclosure statement, which had also been drafted by conflicted counsel.

3.       To advance that vision, the day after the Court announced its ruling, the Freedom Lender Group sent a letter to Debtors' remaining counsel, Young Conaway Stargatt & Taylor, LLP, a copy of which is attached hereto as **Exhibit A**.  The letter identified certain issues and concerns regarding the Debtors' proposed joint plans, inter-debtor conflicts and the proposed confirmation timeline, and requested a discussion on these issues.

2

4.      The next day, without any advance discussion with the Freedom Lender Group, Young Conaway informed them that the Debtors had selected Kirkland & Ellis LLP ("**K&E**") as proposed replacement 327(a) counsel (with K&E having just filed a notice of withdrawal of its appearance on behalf of an existing client adverse to the Debtors).  Later that very same day, the Debtors filed their agenda letter for the hearing scheduled for February 19, 2025 indicating that, after a status update, the Debtors intended to continue pursuit of the approval of their existing disclosure statement.  The Freedom Lender Group asked K&E if the Debtors would consent to an adjournment of the hearing on the Disclosure Statement Motion and they declined.

5.      Rather than availing themselves of the opportunity for a refresh, the Debtors have instead instructed their new proposed counsel to put on the boots of its prior conflicted counsel and to keep marching to the tune of the OpCo 1L Group in apparent disregard for the significant obstacles to their overall reorganization strategy.

6.      This dogged recommitment to the prior path forward, despite the selection of new proposed counsel, highlights the fact that the replacement of counsel does not cure the conflicts that continue to burden the board of Franchise Group, Inc. ("**FRG**").[3]  The majority of the members of the FRG board were involved in the Debtors' August 2023 take-private transaction,[4] including most notably, Andrew Laurence, FRG's CEO and the chairman of each Debtor's board,

---

[3]   As Mr. Orlofsky testified, the selection of replacement counsel is "a decision that the board would have to make." February 6, 2025 Hr'g Tr. 168:12-14.

[4]   At least four of FRG's seven current board members were involved in the take-private transaction as follows: (i) Andrew Kaminsky, a current board member, was an Executive Vice President and Chief Administrative Officer at the time of the Take-Private Transaction and received $4,717,871 in cash, equity and other benefits as a result of the take-private transaction; (ii) Tiffany McMillan-McWaters, a current board member and general counsel of the Debtors, was deputy general counsel at the time of the take-private transaction; (iii) Andrew Laurence was an executive vice president at the time of the take-private transaction and received $4,717,688 in cash, equity and other benefits as a result of the take-private transaction; and (iv) Bryant R. Riley at the time of the take-private transaction was Chairman and co-Chief Executive Officer of B. Riley Financial, Inc., which became the equity owner of Freedom VCM Holdings, LLC as a result of the take-private transaction.  *See* Franchise Group, Inc., Proxy Statement (Schedule 14A) 16, 20, 57-58, 104, Schedule A at 74 (June 8, 2023).

3

who describes himself as Mr Kahn's "long-term partner," having worked with him for years.[5] The plan on file would release Mr. Laurence and other officers and directors despite ongoing investigations into their prepetition conduct and the recent disclosures of SEC subpoenas that bring the involvement of FRG (and its officers) in transactions relating to Mr. Kahn's hedge fund, Prophecy Asset Management LP, into question.[6]

7. Given the complexity of the issues regarding the overall structure of the Debtors' proposed joint plans and the manifold topics they address and impact, it is impossible for proposed replacement counsel to perform proper diligence, develop advice regarding what, if any, changes to the joint plans should be considered, and have meaningful, substantive engagement with the Debtors' stakeholders before the February 19 hearing, much less on the day of their proposed engagement. Ignoring that reality creates the appearance that proposed replacement counsel is merely rubber stamping everything done—or not done—by prior conflicted counsel.

8. For example, the Court found that "Willkie cannot draft the portions of the plan that touch upon claims against Mr. Kahn or itself; it would seem, therefore, that Willkie cannot negotiate the terms of the Holdco trust agreement either." Feb. 12, 2025 Hr'g Tr. at 15:4-8. But the Debtors propose to move forward with those portions of their joint plans entirely unchanged. Additionally, the Court found that it was Willkie, and not Petrillo, who "negotiate[d] the provisions of the disclosure statement regarding the [Take-Private] transaction [and] the disposition of the causes of action in the plan." *Id.* at 16:16-19. Yet the Debtors intend to seek approval of their existing disclosure statement without replacement counsel revisiting, much less

---

[5] *See* December 10, 2024 Hr'g Tr. 179:20 – 180:10.

[6] *See Supplemental Declaration of Matthew A. Feldman in Further Support of Debtors' Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors* Nunc Pro Tunc *to the Petition Date* [Docket No. 889] at ¶¶ 19-20 (disclosing that SEC subpoenas were issued to FRG that seek information related to Buddy's, which is an entity disclosed in the DOJ's investigations into Prophecy and its affiliates and Vintage Capital, which Mr. Laurence is a co-owner of).

revising, these disclosures.

9. The Debtors' proposed course of action also runs directly counter to their CRO's sworn testimony that "if Willkie is not retained, it will be necessary to bring on replacement counsel, which...[will] impose significant delay on the Debtors' restructuring process." Docket No. 890 at ¶ 7. Inexplicably, the Debtors now appear to have adopted the opposite approach: rush full speed ahead, without pausing to address the very problems that the Court found required replacement counsel in the first place.

10. Under such circumstances, permitting the Debtors to proceed to seek approval of their disclosure statement on February 19 would further undermine the efficacy of the reorganization process in these chapter 11 cases and would seemingly turn a blind eye to the concerns underlying the Court's decision to deny the engagement of prior proposed counsel.

11. Importantly, the conflicts in these chapter 11 cases go beyond the conflict with Brian Kahn that tainted the Debtors' current joint plans – there are also serious conflicts between the OpCo Debtors and the Holdco Debtors. Significant claims are held by the Holdco Debtors against the OpCo Debtors (and, as some have claimed, vice versa). This cannot be cured by an independent investigation – the HoldCo Debtors are entitled to a vigorous advocate, not an academic analysis.

12. In addition, the Freedom Lender Group has now developed compelling evidence, which will be presented at the hearing on the recently-filed motion for allowance of the OpCo 2L Secured Parties' adequate protection claim, that the HoldCo Debtors' equity in FRG had material value on the Petition Date.[7] And yet, without the benefit of any independent advice, without a

---

[7] *See also* Dec. 10, 2024 Hr'g Tr. at 138:3-8 ("Q: But, in fact, if I am following your logic, there is value to the Freedom HoldCo Lenders in the control rights that come with that stock, right? A: There is control associated with that stock. Q: And that could be valuable. A: Parties may place value on a control.").

valuation of any kind, without having any unconflicted directors, and without even meeting separately, the HoldCo Debtors' board agreed to enter into a Restructuring Support Agreement as demanded by the Opco 1L Group (who have no claims against the HoldCo Debtors or liens on their assets) that contemplates that the HoldCo Debtors' equity interest in FRG will be cancelled without compensation.

13. The HoldCo Debtors are entitled to vigorous advocacy on this issue, which obviously cannot be provided by the OpCo Debtors' counsel who is advocating for the other side of the issue.

14. As the Freedom Lender Group has argued elsewhere, the HoldCo Debtors should have separate, non-conflicted board members with actual decision-making authority. At a minimum, however, separate counsel should be appointed to represent the HoldCo Debtors to, among other things, advise the HoldCo board members as to their independent fiduciary duties to the HoldCo Debtors. Rather than addressing these OpCo/HoldCo conflicts, however, the proposed retention of replacement counsel appears to ignore them.

15. The Debtors' proposed plan and disclosure statement have been materially amended recently. Parties are still digesting these changes. Some issues appear to have been resolved, but there remain serious disclosure deficiencies including (i) the lack of a valuation analysis, (ii) lack of clarity regarding projected recoveries in light of deficiency claims of unstated value, (iii) the failure to file, or even commit to file, the reports of the parties conducting independent investigations for the Debtors, (iv) no description of claims and causes of action the Debtors seek to retain (which could result in their forfeiture) and (v) failure to provide any disclosure regarding the OpCo 2L Secured Parties' adequate protection claim. These, and other issues that would necessitate further modifications, may be addressed through engagement

between and among the parties, but no meaningful engagement has occurred and rushing to a hearing on February 19 would not provide enough time for such engagement.

16. In sum, the Freedom Lender Group believes that the Debtors, and in particular the FRG board, fundamentally misunderstand the import and reasoning of the Court's denial of the Willkie retention application, a decision the Court assuredly did not take lightly. Instead, the Debtors are taking the approach that the transition from their original proposed counsel (who advised on all reorganization decisions and drafted all related documents to date and was then determined to be not disinterested) to new counsel is nothing more than a bump in the road that they can quickly move past. The Debtors' unreflected approach to the situation at hand, choosing to immediately move forward seeking approval of the Disclosure Statement Motion without any further revisions or engagement, is wasteful and should not be permitted. The benefits of adjourning the February 19 hearing on the Disclosure Statement Motion outweigh the costs.

## **CONCLUSION**

17. The Court should adjourn the hearing on the Disclosure Statement Motion to a date to be determined and award such other relief it deems just and proper.

| | |
|---|---|
| Dated: February 17, 2025<br>Wilmington, Delaware | Respectfully submitted,<br><br>**FARNAN LLP**<br><br>*/s/ Michael Farnan*<br>Brian E. Farnan (Bar No. 4089)<br>Michael J. Farnan (Bar No. 5165)<br>919 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 777-0300<br>Facsimile: (302) 777-0301<br>Email: bfarnan@farnanlaw.com<br>           mfarnan@farnanlaw.com<br><br>-and-<br><br>**WHITE & CASE LLP**<br>Thomas Lauria (admitted *pro hac vice*)<br>Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 4900<br>Miami, FL 33131<br>Telephone: (305) 371-2700<br>Facsimile: (305) 358-5744<br>Email: tlauria@whitecase.com<br><br>-and-<br><br>J. Christopher Shore (admitted *pro hac vice*)<br>Andrew Zatz (admitted *pro hac vice*)<br>Samuel P. Hershey (admitted *pro hac vice*)<br>Erin Smith (admitted *pro hac vice*)<br>Brett Bakemeyer (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>Email: cshore@whitecase.com<br>           azatz@whitecase.com<br>           sam.hershey@whitecase.com<br>           erin.smith@whitecase.com<br>           brett.bakemeyer@whitecase.com<br><br>*Counsel to the Ad Hoc Group of Freedom Lenders* |