# EXHIBIT 4

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS AND OPT-IN FORM TO HOLDERS
OF CLASS 1, 2, 9 AND 10 CLAIMS AND HOLDERS OF CLASS 12 INTERESTS**

**PLEASE TAKE NOTICE THAT** the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") submitted the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1015] (as amended, modified or supplemented from time to time, the "Plan"),[2] which is described in and attached as Exhibit A to the related *Disclosure Statement for the Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates*, dated as of February 20, 2025 (as may be amended, modified or supplemented from time to time, the "Disclosure Statement"), that was approved by an order [Docket No. 1014] (the "Disclosure Statement Order") of the United States Bankruptcy Court for the District of Delaware (the "Court") and attached as Exhibit 1 to the Disclosure Statement Order. The Disclosure Statement Order authorizes the Debtors to solicit votes to accept or reject the Plan from the holders of Claims in the Voting Classes (as defined in the Disclosure Statement Order).

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

**YOU ARE OR MIGHT BE THE HOLDER OF A CLAIM OR INTEREST THAT IS UNIMPAIRED AND PRESUMED TO ACCEPT THE PLAN OR IMPAIRED AND DEEMED TO REJECT THE PLAN, THAT, IN EITHER CASE, ARE NOT ENTITLED TO VOTE ON THE PLAN. THE FOLLOWING IS A SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN FOR PURPOSES OF PLAN VOTING.**

| Class | Claim or Interest | Summary of Treatment |
|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired<br>***Presumed to Accept Plan*** |
| 2 | Other Secured Claims | Unimpaired<br>***Presumed to Accept Plan*** |
| 3 | Prepetition ABL Loan Claims | Impaired<br>***Entitled to Vote on Plan*** |
| 4 | Prepetition First Lien Loan Claims | Impaired<br>***Entitled to Vote on Plan*** |
| 5 | Prepetition Second Lien Loan Claims | Impaired<br>***Entitled to Vote on Plan*** |
| 6 | OpCo General Unsecured Claims | Impaired<br>***Entitled to Vote on Plan*** |
| 7 | Prepetition HoldCo Loan Claims | Impaired<br>***Entitled to Vote on Plan*** |
| 8-A | Freedom HoldCo General Unsecured Claims | Impaired<br>***Entitled to Vote on Plan*** |
| 8-B | HoldCo Receivables General Unsecured Claims | Impaired<br>***Entitled to Vote on Plan*** |
| 8-C | TopCo General Unsecured Claims | Impaired<br>***Entitled to Vote on Plan*** |
| 9 | Intercompany Claims | Impaired<br>***Deemed to Reject Plan*** |
| 10 | Subordinated Claims | Impaired<br>***Deemed to Reject Plan*** |
| 11 | Existing TopCo Equity Interests | Impaired<br>***Entitled to Vote on Plan*** |
| 12 | Existing Intercompany Equity Interests | Impaired<br>***Deemed to Reject Plan*** |

**UNDER THE TERMS OF THE PLAN, HOLDERS OF CLAIMS IN CLASSES 1 AND 2 ARE UNIMPAIRED UNDER THE PLAN AND, THEREFORE, PURSUANT TO THE PLAN AND SECTION 1126(f) OF THE BANKRUPTCY CODE, ARE (I) PRESUMED TO HAVE ACCEPTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN.**

**UNDER THE TERMS OF THE PLAN, HOLDERS OF CLAIMS IN CLASSES 9 AND 10, AND HOLDERS OF INTERESTS IN CLASS 12 ARE IMPAIRED UNDER THE PLAN AND ARE NOT ENTITLED TO RECEIVE OR RETAIN ANY PROPERTY ON ACCOUNT OF THEIR INTERESTS IN THIS CLASS AND, THEREFORE, PURSUANT TO SECTION 1126(g) OF THE BANKRUPTCY CODE, ARE (I) DEEMED TO HAVE REJECTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN.**

**IMPORTANT**

**You may submit your Opt-In Form in the return envelope provided in your Solicitation Package or online via the Solicitation Agent's Opt-In Portal, or by regular mail, overnight courier, or hand delivery as follows:**

**If by online Opt-In Portal:**

**Opt-In Forms may be submitted via** online submission through a dedicated Opt-In portal (the "Opt-In Portal") accessible at the Debtors' restructuring website maintained by the Solicitation Agent **by no later than the Opt-In Deadline.**

To submit a customized, electronic version of your Opt-In Form via the Solicitation Agent's Opt-In Portal, visit https://cases.ra.kroll.com/FRG, click on the "Submit Opt-In" section of the website and follow the instructions to submit your electronic Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized, electronic Opt-In Form:**

**Unique Opt-In ID#**: _____

The Opt-In Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each Unique Opt-In ID# is to be used solely in relation to those Interests described in Item 1 of your Opt-In Form. Please complete and submit a Opt-In Form for each Unique Opt-In ID# you receive, as applicable.

If you choose to submit your Opt-In Form via the Opt-In Portal, you **SHOULD NOT** also return a hard copy of your Opt-In Form.

Opt-In Forms submitted via the Opt-In Portal will be deemed to contain an immediately legally binding signature.

**If by First-Class Mail, Hand Delivery, or Overnight Courier:**
Franchise Group, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Opt-In Form, please email FRGBallots@ra.kroll.com (with "Franchise Group Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the address above and provide the expected date and time of delivery.

3

**Item 1. Releases**.

**IMPORTANT INFORMATION REGARDING THE RELEASES**

You are receiving this opt-in form (the "Opt-In Form") because you are or may be a Holder of a Claim that is not entitled to vote on the Plan.  Holders of Claims are deemed to grant the Third-Party Release set forth in this notice solely to the extent a Holder affirmatively opts in to such grant by completing and returning this form in accordance with the directions herein on or before **April 23, 2025, at 5:00 p.m., (ET)** (the "Opt-In Deadline").

**CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE THIRD-PARTY RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE XII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE THIRD-PARTY RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND EQUITY INTERESTS IN THE MANNER DESCRIBED IN THIS BALLOT.**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU MAY ELECT TO GRANT THE RELEASES CONTAINED IN ARTICLE XII OF THE PLAN *IF* YOU CHECK THE BOX BELOW.  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION.  BY DECLINING TO OPT IN TO THE RELEASES SET FORTH IN ARTICLE XII OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE XII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

If the Bankruptcy Court confirms the Plan, as of and subject to the occurrence of the Effective Date, certain release, injunction, and exculpation provisions set forth in Article 12 of the Plan will become effective.  It is important to read the provisions contained in Article 12 of the Plan very carefully so that you understand how such provisions will affect you and any Claim(s) you may hold against the Released Parties under the Plan.

> The undersigned holder of Class 1, 2, 9, or 10 claims, or Class 12 interests elects to:
>
> ☐ Opt In to the Third-Party Release.

**YOU WILL BE DEEMED A RELEASING PARTY IF YOU CHECK THE BOX ABOVE AND RETURN THIS RELEASE OPT-IN FORM BY 5:00 P.M. (ET), ON APRIL 23, 2025.**

The release in Section 12.2 of the Plan (the "Debtor Release") binds the Debtors. The Debtor Release provides:

**Subject to the outcome of the Freedom HoldCo Independent Investigation with respect to any Freedom HoldCo Debtor Released Claims and Claims and Causes of Action belonging to the Freedom HoldCo Debtors against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by Law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "Debtor Release") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in Law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common Laws, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the Take-Private Transaction; and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of this Debtor Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Debtor Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Partial Sale Transaction or assumed pursuant to this Plan or any Partial Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent, authorization or approval of**

**any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this Section 12.2 shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any Causes of Action retained by the Reorganized Debtors; (3) any OpCo Litigation Claims; or (4) any Freedom HoldCo Debtor Litigation Trust Claims.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.**

The release in Section 12.3 of the Plan (the "<u>Third Party Release</u>") binds the "Releasing Parties," (as defined below). Holders who were not provided a Ballot or opt-in form and are not listed in clauses (a) through (h) below are not Releasing Parties." The Third Party Release provides:

**Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, and subject to the outcome of the Freedom HoldCo Independent Investigation with respect to any Freedom HoldCo Debtor Released Claims and Claims and Causes of Action belonging to the Freedom HoldCo Debtors against any Holders of DIP Claims or Prepetition First Lien Loan Claims, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable Law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or**

**unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in Law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common Laws, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out of court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, the New Warrants, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the Take-Private Transaction; and/or (viii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud (except for Avoidance Actions, which are subject to this Third-Party Release), or gross negligence of such applicable Released Party; and/or (ii) the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or any Partial Sale Transaction or assumed pursuant to this Plan or any Partial Sale Transaction or Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; (2) any Causes of Action retained by the Reorganized Debtors; (3) any OpCo Litigation Claims; or (4) any Freedom HoldCo Debtor Litigation Trust Claims.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions**

7

**to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.**

The definitions of certain defined terms in the releases in Section 12.3 are defined in the Plan as follows:

*"Releasing Parties" means, collectively, and each solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent and each DIP Lender; (d) the First Lien Credit Agreement Agent; (e) the Consenting First Lien Lenders; (f) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; (g) all Holders of Claims that elect to opt in to the Third Party-Release contained in the Plan; (h) all Holders of Interests that elect to opt in to the Third-Party Release contained in the Plan; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (i); and (i) each Related Party of each Entity in clause (a) through this clause (i) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan.*

*"Released Parties" means, collectively, and each solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent and each DIP Lender; (d) the First Lien Credit Agreement Agent; (e) the Consenting First Lien Lenders; (f) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; (g) all Holders of Claims that elect to opt in to the Third-Party Release contained in the Plan; (h) all Holders of Interests that elect to opt in to the Third-Party Release contained in the Plan; and (i) each Related Party of each Entity in clause (a) through this clause (i); provided that, notwithstanding the foregoing, Released Parties shall not include: (i) former directors of the Debtors, other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (ii) former employees, including officers, of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date of the Plan; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., and each of their Affiliates and Related Parties (provided, that none of Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, Freedom VCM Receivables, Inc., shall be deemed Affiliates of the Debtors for purposes of this proviso); (iv) Irradiant Partners, LP and the members of the Freedom Lender Group; (v) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their Affiliates and Related Parties (provided, that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates of the Debtors for purposes of this proviso); and (vi) WFG solely for any prepetition services rendered.*

*"Freedom HoldCo Independent Investigation" means any investigation conducted by the Freedom HoldCo Independent Director.*

*"Related Parties" means, collectively, with respect to any Person or Entity, each of, and in each case solely in its capacity as such, such Person's or Entity's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers,*

8

*directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the date of the Restructuring Support Agreement, and any Person claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees.*

**Item 2. Certifications.**

By signing this Opt-In Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)   as of the Voting Record Date of January 31, 2025, either: (i) the Entity is the Holder of a Claim; or (ii) the Entity is an authorized signatory for the Entity that is a Holder of a Claim;

(b)   the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the *Notice of Non-Voting Status and Opt-In Form to Holders of Class 1, 2, 9, and 10 Claims and Holders of Class 12 Interests* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c)   the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class; and

(d)   no other Opt-In Form has been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims, then any such earlier Opt-In Forms are hereby revoked.

Name of Holder: _____
(*print or type*)

Signature: _____

Name of Signatory: _____
(*if other than Holder*)

Title: _____

Address: _____
_____
_____

Telephone Number: _____

Email: _____

Date Completed: _____

***IF YOU HAVE MADE THE OPTIONAL OPT IN ELECTION*, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS ABOVE.**

9

Objections, if any, to confirmation of the Plan, including the releases provided for in Section 12.3 of the Plan, must (1) be in writing; (2) state the name, address, and nature of the Claim or Interest of the objecting or responding party; (3) state with particularity the legal and factual basis and nature of any objection or response; and (4) be filed with the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and served on the following parties so as to be actually received **before 5:00 p.m. (ET) on April 23, 2025**: (a) co-counsel and proposed co-counsel for the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com), Nicole L. Greenblatt, P.C. (nicole.greenblatt@kirkland.com), and Derek I. Hunter (derek.hunter@kirkland.com), Brian J. Nakhaimousa (brian.nakhaimousa@kirkland.com), and Maddison Levine (maddison.levine@kirkland.com); and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Edmon L. Morton, Esq. (emorton@ycst.com) and Matthew B. Lunn, Esq. (mlunn@ycst.com); (b) counsel to the official committee of unsecured creditors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899, Attn: Bradford J. Sandler, Esq. (bsandler@pszjlaw.com) and Colin R. Robinson, Esq. (crobinson@pszjlaw.com), and 780 Third Avenue, 34th Floor, New York, NY 10017, Attn: Robert J. Feinstein, Esq. (rfeinstein@pszjlaw.com), Alan J. Kornfeld, Esq. (akornfeld@pszjlaw.com), and Theodore S. Heckel, Esq. (theckel@pszjlaw.com); (c) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); (d) counsel to the DIP Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Gregg Bateman, Esq. (bateman@sewkis.com), Sagar Patel, Esq. (patel@sewkis.com), and Michael Danenberg, Esq.(danenberg@sewkis.com); (e) counsel to the DIP Lenders and Ad Hoc Group of First Lien Lenders, (i) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (ii) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com); (f) counsel to the ABL Lenders, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com) and Andrew Sorkin, Esq. (andrew.sorkin@lw.com); (g) counsel to the Second Lien Term Loan Lenders, White & Case LLP, 200 S Biscayne Blvd, Miami, FL 33131, Attn: Thomas Lauria, Esq. (tlauria@whitecase.com), and 111 S. Wacker Dr., Suite 5100, Chicago, IL 60606, Attn: Bojan Guzina, Esq. (bojan.guzina@whitecase.com); and (h) counsel to the HoldCo Lenders at the address set forth in (vii) above.

Copies of the Plan, the Disclosure Statement, the Plan Supplement (which will be filed on or before March 13, 2025), and the Disclosure Statement Order are, or will be, available for review free of charge at https://cases.ra.kroll.com/FRG, by clicking on the link on the left-hand side of the page titled "Plan & Disclosure Statement."  In addition, copies of the Plan are available upon written request to:

Franchise Group, Inc.
Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

Copies of the Plan are also available, at the Debtors' expense, by submitting an inquiry to the Solicitation Agent via telephone at (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International), or via email at FRGInfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line).

Dated: [●], 2025
Wilmington, Delaware

/s/ DRAFT

| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **KIRKLAND & ELLIS LLP** |
|---|---|
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Edmon L. Morton (Del. No. 3856) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Matthew B. Lunn (Del. No. 4119) | Nicole L. Greenblatt, P.C. (*pro hac vice* pending) |
| Allison S. Mielke (Del. No. 5934) | Derek I. Hunter (*pro hac vice* pending) |
| Shella Borovinskaya (Del. No. 6758) | |
| Rodney Square | 601 Lexington Avenue |
| 1000 North King Street | New York, New York 10022 |
| Wilmington, Delaware 19801 | Telephone: (212) 446-4800 |
| Telephone: (302) 571-6600 | Facsimile: (212) 446-4900 |
| Facsimile: (302) 571-1253 | Email: joshua.sussberg@kirkland.com |
| Email: emorton@ycst.com | nicole.greenblatt@kirkland.com |
| mlunn@ycst.com | derek.hunter@kirkland.com |
| amielke@ycst.com | |
| sborovinskaya@ycst.com | |

*Co-Counsel to the Debtors
and Debtors in Possession*

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*