## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.,*[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Hearing Date:**<br>**April 3, 2025 at 10:00 a.m. (ET)** |
|  | **Objection Deadline:**<br>**March 14, 2025 at 4:00 p.m. (ET)** |

## MOTION OF DEBTORS FOR ENTRY
## OF AN ORDER (I) EXTENDING THE DEBTORS'
## EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND
## SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121
## OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

as follows in support of this motion:[2]

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) extending the deadline by which the Debtors have the exclusive right to (i) file a chapter 11 plan by 90 days through and including June 2, 2025,[3] (the "Filing Exclusivity Period"), and (ii) solicit votes thereon by 90 days through and including July 31, 2025 (the "Solicitation Exclusivity Period," and together with the Filing Exclusivity Period, the "Exclusivity Periods"), without prejudice to the Debtors' rights to seek further extensions of the Exclusivity Periods, and (b) granting related relief.  Absent the relief requested herein, the Filing Exclusivity Period will expire on March 3, 2025, and the Solicitation Exclusivity Period will expire on May 2, 2025.

## Preliminary Statement

2.      The Debtors are headed to Confirmation on May 12, 2025.  An extension of the Exclusivity Periods is warranted to allow that to happen without the distraction of competing plans.  A complete litigation schedule has been agreed upon.  There is no reason for any party in interest to stand in the way of this extension.  The Consenting First Lien Lenders and the Creditors' Committee are supportive of the relief requested herein.  The Debtors (and the Court) are aware of the Freedom Lender Group's current opposition to the Plan.  The Debtors have asked if the

---

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration").  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1015] (as may be amended, supplemented, or otherwise modified, the "Plan"), as applicable.

[3]    The date that is 90 days after March 3, 2025 is Sunday, June 1, 2025.  By operation of Bankruptcy Rule 9006, the deadline would be extended to the next business day, Monday, June 2, 2025.

Freedom Lender Group is supportive of this extension request (so as to avoid wasteful costs), but have not yet heard back.

3.      These Chapter 11 Cases are undoubtedly large and complex, and the Debtors' efforts in moving these cases forward demonstrate cause for an exclusivity extension.  The Debtors commenced these Chapter 11 Cases with the support of 80% of their First Lien Lenders to pursue and implement a comprehensive restructuring transaction that would maximize value and preserve approximately 12,000 jobs and 2,200 retail locations.  In the first 120 days of these Chapter 11 Cases, the Debtors have secured access to a $750 million debtor-in-possession financing facility, settled with the Creditors' Committee, ran and concluded a marketing process, and obtained approval of the Disclosure Statement and Confirmation schedule.  All of which has come in the face of complete and total opposition from the Freedom Lender Group every step of the way.

4.      As explained by Debtors' counsel at the status conference on February 19, 2025, the Debtors are focused on reorganizing this business for the benefit of all stakeholders, including vendors, employees, and franchisees.  The Debtors have been active in trying to facilitate a commercial settlement of all disputes between the Consenting First Lien Lenders and the Freedom Lender Group, including holding a meeting on February 27, 2025 with the Consenting First Lien Lenders principals and advisors.  Following that meeting, it is the Debtors understanding that the Consenting First Lien Lenders and the Freedom Lender Group principals intend to engage in direct conversations.  A settlement is undoubtedly in the best interest of all parties and the Debtors will continue to drive towards that objective.   But hope is not a strategy.  And while the Debtors will continue to educate and engage the parties on both sides of the aisle, the Debtors will likewise be prepared to push forward in the face of Freedom Lender Group opposition.  This, in and of itself, warrants extension of the Exclusivity Periods.

\*\*\*\*\*

5.      Since the Petition Date, the Debtors obtained important procedural and operational relief, and have put in significant work to try and stabilize their businesses and relationships with employees, vendors, service providers, and other third parties.  Notably, the Debtors received final approval of the DIP Facility and use of cash collateral to address the Debtors' liquidity needs in chapter 11 [Docket No. 414], received authority from the Bankruptcy Court to continue the Debtors' prepetition marketing process pursuant to the Bidding Procedures Order, and established certain key dates and deadlines related thereto, including February 3, 2025, as the deadline by which parties in interest were required to submit binding bids (the "Bid Deadline").  The Debtors also entered into 72 nondisclosure agreements and facilitated extensive diligence with parties in interest in connection therewith, received and evaluated multiple bids, adjourned the Auction (as defined in the Bidding Procedures) twice to provide parties in interest additional time to complete due diligence and submit a Qualified Bid (as defined in the Bidding Procedures), and, after consultation with the Required Consenting First Lien Lenders and the Creditors' Committee, filed a *Notice of Cancellation of Auction* [Docket No. 961] that canceled the Auction and adjourned a sale hearing indefinitely.

6.      In parallel with these efforts, the Debtors spent significant time and resources providing diligence and engaging with the Creditors' Committee and its advisors to bring them up to speed on the development of the Chapter 11 Cases, as well as discussing key issues regarding implementation of the Plan.  Discussions with the Creditors' Committee were frequent, ongoing, and ultimately successful.  On February 3, 2025, the Debtors, the Required Consenting First Lien Lenders, and the Creditors' Committee entered into the Committee Settlement, and on February 12, 2025, the Debtors filed an amended Plan incorporating the terms thereof.

7.     The Debtors have also undertaken a number of additional efforts to ensure a smooth transition of their operations into chapter 11, while leveraging the tools of chapter 11 to improve their go-forward operations.  Specifically, the Debtors have:

- obtained approval of various first-day motions and second-day motions, including, but not limited to, the *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers & Logistics Providers, and 503(b)(9) Claimants; and (II) Granting Related Relief* [Docket No. 410] (the "Critical Vendors Order") and the *Final Order (I) Authorizing Debtors to (A) Pay Certain Prepetition Employment Obligations and Compensation Obligations and (B) Maintain the Compensation Obligations and Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 348] (the "Wages Order");

- addressed questions, concerns, and issues raised by employees, vendors, utility companies, and other parties in interest;

- obtained entry of the Bar Date Order setting the Claims Bar Date to facilitate the timely administration of their claims pool, and began the process of reconciling Claims and Interests as promptly and efficiently as possible [Docket No. 354];

- participated in the meeting of creditors and equity security holders pursuant to section 341 of the Bankruptcy Code, which was adjourned to a later date in consultation with the U.S. Trustee, in accordance with filing the Debtors' Schedules;

- prepared and submitted the Debtors' Schedules on December 24, 2024;

- prepared and filed retention applications for the Debtors' professionals, including AP Services, LLC [Docket No. 450], Petrillo Klein + Boxer LLP [Docket No. 453], Kroll Restructuring Administration LLC [Docket No. 447], Ducera Partners LLC [Docket No. 802], Hilco Real Estate, LLC [Docket No. 449], Young Conaway Stargatt & Taylor, LLP [Docket No 475]; Ernst & Young LLP [Docket No. 669], Deloitte & Touche LLP [Docket No. 670], and plan to file the application to employ Kirkland & Ellis LLP as co-counsel to the Debtors in the near term;

5

- obtained approval to reject numerous onerous Executory Contracts and Unexpired Leases [Docket Nos. 350, 352, 446, 677, 678, 713, 714, 737, 746, 852, 919, 968 and 973];

- obtained entry of the Bidding Procedures Order [Docket No. 444], establishing the Bid Deadline;

- responded to diligence requests from the Creditors' Committee, the Consenting First Lien Lenders, the Freedom Lender Group, and other key stakeholder groups;

- obtained entry of an order extending the deadline for Debtors to assume or reject unexpired leases of non-residential real property [Docket No. 970];

- obtained entry of the order enlarging the period within the Debtors may remove actions [Docket No. 972];

- continued the investigations into estate claims and causes of action;

- filed the Plan [Docket No. 1015] and the Disclosure Statement [Docket No. 1014];

- prepared for and attended hearings in these Chapter 11 Cases;

- coordinated with the U.S. Trustee and the Creditors' Committee to provide requested information on a variety of issues and complied with the reporting requirements under the Bankruptcy Code; and

- engaged meaningfully with key stakeholders regarding the terms of a consensual resolution to these Chapter 11 Cases.

8.    The Debtors have also spent significant time working with Kirkland and Ellis LLP ("Kirkland"), the Debtors' new proposed co-counsel, to get them up to speed following the Bankruptcy Court's entry of an order denying the *Debtors' Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors, Nunc Pro Tunc to the Petition Date [Docket No. 474]* [Docket No. 976] on February 13, 2025.  On February 14, 2025, the Debtors engaged Kirkland in these Chapter 11 Cases.  Since Kirkland's engagement, the Debtors, with the assistance of Kirkland and their other advisors, have actively

engaged their stakeholders, including counsel to the Creditors' Committee, counsel to the Freedom

Lender Group, counsel to the Consenting First Lien Lenders, counsel to the ABL Lenders, counsel

to the Freedom HoldCo Independent Director, and the U.S. Trustee regarding each parties'

respective issues with the Plan and a consensual path forward in these Chapter 11 Cases.

9.      In addition to these efforts, the Debtors have also devoted significant time and

resources throughout these Chapter 11 Cases to address persistent litigation efforts initiated by the

Freedom Lender Group to stall these Chapter 11 Cases.  For example, on November 20, 2024, just

17 days into these Chapter 11 Cases, the Freedom Lender Group filed the *Motion of the Ad Hoc*

*Group of Freedom Lenders for Entry of an Order (I) Terminating Exclusivity in the Holdco*

*Debtors' Cases, (II) Lifting the Automatic Stay in the Holdco Debtors' Cases, or (III) Appointing*

*a Chapter 11 Trustee for the Holdco Debtors* [Docket No. 192] (the "Exclusivity Termination

Motion"), requesting that the Bankruptcy Court (a) terminate the HoldCo Debtors' exclusive

periods to file and solicit votes on a chapter 11 plan, (b) lift the automatic stay in the HoldCo

Debtors' cases to permit the HoldCo Lenders to exercise non-bankruptcy remedies pursuant to

section 362(d) of the Bankruptcy Code, or (c) appoint a chapter 11 trustee.[4]  On December 2, 2024,

the Freedom Lender Group objected to final approval of certain of the Debtors' second-day

motions, including the Bidding Procedures Order, the Critical Vendors Order, and the Final DIP

Order.  After the Bankruptcy Court approved entry of the second-day orders and denied the

Exclusivity Termination Motion, on December 18, 2024, the Freedom Lender Group appealed the

Critical Vendors Order, the Final DIP Order, the Bidding Procedures Order, and the Bankruptcy

---

[4]   The Freedom Lender Group argued that exclusivity should be terminated solely with respect to the HoldCo
     Debtors.  On December 18, 2024, following a hearing on the Exclusivity Termination Motion, the Bankruptcy
     Court denied the relief requested therein.  The reasons for the Bankruptcy Court's denial of the Exclusivity
     Termination Motion at that time are even more compelling now, as the Bankruptcy Court approved the Disclosure
     Statement for all Debtors, who are now marching towards a Confirmation Hearing scheduled for May 12, 2025.

Court's order denying the Exclusivity Termination Motion in the United States District Court for the District of Delaware, which appeals are currently pending.  The Freedom Lender Group also filed the *Objection of the Ad Hoc Group of Freedom Lenders to Debtors' Disclosure Statement Motion* [Docket No. 686], and the Debtors worked diligently with the Freedom Lender Group to address and resolve certain of these issues prior to the Disclosure Statement Hearing.  The Freedom Lender Group has continuously tried to delay the progression of these Chapter 11 Cases, including by attempting to adjourn the second day hearing [Docket No. 194] and the Disclosure Statement Hearing [Docket Nos. 922 and 993].  The Debtors and their advisors have responded to each of these attempts throughout these Chapter 11 Cases, including by filing replies and objections and litigating certain issues at evidentiary hearings.

10.    Despite the Freedom Lender Group's repeated attempts to delay the Debtors' progress towards a value-maximizing outcome during these Chapter 11 Cases, the Debtors continue to engage with the Freedom Lender Group in hopes of reaching a consensual resolution.  On February 20, 2025, the Debtors filed its Plan and related Disclosure Statement to address and narrow many of the issues raised by the Freedom Lender Group.  These revisions include, among other things, establishing a Freedom HoldCo Debtor Litigation Trust for the benefit of Holders of Allowed Claims Against the Freedom HoldCo Debtors, clarifying which Claims and Causes of Action will be preserved and vest in the Freedom HoldCo Debtor Litigation Trust or the OpCo Debtor Litigation Trust, and clarifying the treatment of Intercompany Claims, as applicable.

11.    On February 21, 2025, the Bankruptcy Court entered the *Order (I) Approving the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for*

*Voting, and (D) Approving Procedures for Vote Tabulation, (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures, and (IV) Granting Related Relief* [Docket No. 1019] (the "Disclosure Statement Order").   On February 25, 2025, the Debtors included a notice of the order approving the Disclosure Statement in the national distribution of *The Wall Street Journal*, and on February 28, 2025, the Debtors formally commenced solicitation of the Plan.   Following entry of the Disclosure Statement Order, the Debtors are proceeding towards Confirmation on May 12, 2025, with a corresponding discovery and litigation schedule established in consultation with the Freedom Lender Group.   Therefore, an extension of the Exclusivity Periods will not harm the process or the rights of any parties in interest, but will instead ensure the orderly progression of the Debtors' proposed Plan in accordance with the agreed-upon timeline.

12.     Notwithstanding the substantial progress made to date, significant work remains to proceed with Confirmation of the Plan.   Between now and Confirmation, and during the extended Exclusivity Periods sought by this Motion, the Debtors intend to continue engaging with all stakeholders, including the Freedom Lender Group, to build consensus for the Plan.   Accordingly, extension of the Exclusivity Periods would continue to give the Debtors the "breathing spell" necessary to facilitate negotiations with stakeholders on remaining issues and maximize the value of the Debtors' businesses and creditor recoveries.   Such time will allow the Debtors to confirm a plan with the support of their stakeholders that will ultimately delever the Debtors' balance sheet by approximately $1.4 billion, preserve thousands of jobs, and provide the Debtors with sufficient liquidity to emerge as a going concern.

13.     In light of the foregoing, and in order to promote consensus across the Debtors' creditor constituencies, the Debtors request a 90-day extension of the Exclusivity Periods to file

and solicit approval of a chapter 11 plan so that they may continue to diligently pursue and effectuate a comprehensive resolution to these Chapter 11 Cases.  Based on the current posture of these Chapter 11 Cases, as well as the size and complexity of their businesses, the Debtors believe sufficient cause exists to warrant an extension of the Exclusivity Periods.  The Debtors' ability to build additional support for a Plan that is already supported by holders of at least two-thirds in dollar amount and more than one-half in number of the Prepetition First Lien Loans may be seriously disrupted if exclusivity were terminated and another party, including the Freedom Lender Group, were permitted to file a plan.  An extension of the Exclusivity Periods is in the best interests of the Debtors, their estates, and all stakeholders, as it will allow the Debtors to procure the best recovery for their creditors and help to ensure a successful conclusion to these Chapter 11 Cases.

14.    Accordingly, the Debtors seek a 90-day extension of the Exclusivity Periods to maintain the exclusive right to file a plan until June 2, 2025, and solicit votes thereon until July 31, 2025.  For all of the foregoing reasons and those set forth below, the Debtors respectfully submit that a 90-day extension of exclusivity is appropriate in these circumstances, and request that the Bankruptcy Court approve extension of the Exclusivity Periods.

**Jurisdiction and Venue**

15.    The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Bankruptcy Court in connection with this motion to the

extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

16.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

17.     The statutory and other legal bases for the relief requested herein are sections 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6004, 6006, 6007, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 9006-2, and 9013-1.

### Background

18.     The Debtors are a privately-held operator and acquirer of franchised and franchisable businesses and the premier solution for catapulting franchise brands forward.  With over 100 years of combined franchising and operational expertise, the Debtors provide a first-class environment for operating companies and their associates to thrive by partnering with strong management teams who are committed to growth through franchising.  The Debtors' business segments include a diverse collection of highly recognized, market-leading, and emerging retail brands, including the Vitamin Shoppe, Pet Supplies Plus, American Freight, and Buddy's Home Furnishings.  As of the Petition Date, the Debtors had approximately 2,200 total retail store locations (including both corporate-owned and franchised locations) and approximately 11,900 total employees spanning across the United States.

19.     On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 5, 2024, the Bankruptcy Court entered an order

[Docket No. 88] authorizing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On November 19, 2024, the U.S. Trustee appointed the Creditors' Committee.  On January 15, 2025, the Debtors appointed a fee examiner [Docket No. 747] (the "<u>Fee Examiner</u>").

## **Basis for Relief**

20.    Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.    Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."  Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in this context "in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 521, 533–534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility") (quoting *In re Lake In The Woods*, 10 B.R. 338, 340, 345 (E.D. Mich. 1981)).  Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors.  *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

21.    Courts within the Third Circuit and in other jurisdictions have held that the decision to extend a debtor's exclusive period to file a chapter 11 plan and solicit votes thereon is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case.  *See, e.g.*, *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express*

*One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830,

834 (Bankr. S.D.N.Y. 1987).   In particular, courts examine a number of factors to determine

whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11

plan and thus whether there is "cause" for extension of the Exclusivity Periods.   These factors

include the following:

> (a)    the size and complexity of the case;
>
> (b)    the existence of good-faith progress towards a chapter 11 plan;
>
> (c)    the necessity of sufficient time to negotiate and prepare adequate information to allow a creditor to determine whether to accept such chapter 11 plan;
>
> (d)    whether the debtor is paying its debts as they become due;
>
> (e)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (f)    whether the debtor has made progress negotiating with creditors;
>
> (g)    the length of time a case had been pending;
>
> (h)    whether the debtor is seeking an extension to pressure creditors; and
>
> (i)    whether or not unresolved contingencies exist.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002);

*McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664–65 (identifying the above

factors and noting that courts generally rely on the same factors to determine whether exclusivity

should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

22.    Not all of these factors are relevant to every case, and courts use only the relevant

subset of the above factors to determine whether cause exists to grant an exclusivity extension in

a particular chapter 11 case.  *See, e.g.*, *Express One*, 194 B.R. at 100–101 (identifying four of the

factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press*

*Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to

extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two of the factors in holding that cause existed to extend exclusivity). For example, both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan. H.R. No. 95-595, at 231–232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek . . . [relief] . . . under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); *see also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

23.    As set forth below, these Chapter 11 Cases satisfy the relevant factors and, thus, sufficient "cause" exists to extend the Exclusivity Periods as provided herein. There is ample precedent in this district and others for an initial extension of exclusivity as the Debtors seek here. *See, e.g.*, *In re Accuride Corp.*, No. 24-12289 (JKS) [Docket No. 705] (Bankr. D. Del. Feb. 12, 2025) (granting an initial extension of the exclusive periods by approximately 90 days); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) [Docket No. 692] (Bankr. D. Del. Feb. 6, 2025) (same); *In re Tupperware Brands Corp.*, No. 24-12156 (BLS) [Docket No. 462] (Bankr. D. Del. Jan. 10, 2025) (same); *In re Vyaire Med. Inc.*, No. 24-11217 (BLS) [Docket No. 576] (Bankr. D. Del. Sept. 27, 2024) (same); *In re Express, Inc.*, No. 24-10831 (KBO) [Docket No. 805] (Bankr. D. Del. Sept. 9, 2024) (same).[5]

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' counsel.

I.      **The Debtors' Chapter 11 Cases Are Large and Complex.**

24.     With nearly $2 billion of funded debt obligations, 53 jointly-administered Debtor entities, a complex corporate and capital structure, a vast network of operations spanning four distinct business segments across 2,200 retail store locations, and thousands of parties in interest, including two distinct ad hoc groups of lenders, these Chapter 11 Cases are undoubtedly large and complex.[6]  Since commencing these Chapter 11 Cases, the Debtors have undertaken significant operational initiatives in an effort to stabilize its businesses while also liquidating and winding down its American Freight business segment.  As such, administering these Chapter 11 Cases requires significant input from the Debtors' management team and advisors on a wide range of complicated matters necessary to bring structure and consensus to a large and complex process.  Accordingly, the size and complexity of these Chapter 11 Cases weigh in favor of extending the Exclusivity Periods.

II.     **The Debtors Have Made Good-Faith Progress Towards Conclusion of these Chapter 11 Cases.**

25.     Leading up to and since the Petition Date, the Debtors have made significant progress in negotiating with their stakeholders and administering these Chapter 11 Cases, which warrants an extension of the Exclusivity Periods.  The Debtors commenced these Chapter 11 Cases with support for the restructuring transactions contemplated under the Plan from the Consenting First Lien Lenders.  Among other achievements described herein, the Debtors have (a) obtained final approval of the DIP Facility, (b) undertaken significant efforts to liquidate and winddown the American Freight business, including closing 298 stores, (c) engaged in discussions with certain potential purchasers for a sale of some or substantially all of the Debtors' assets, (d) reached a

---

[6]   On December 17, 2024, Judge Dorsey, in his bench ruling denying the Freedom Lender Group's Exclusivity Termination Motion, noted that "These cases are large and complex cases[.]"  Dec. Hr'g Tr. at 65:13.

settlement with the Creditors' Committee which provides for, among other things, the establishment of the OpCo Debtor Litigation Trust and the transfer of the OpCo Litigation Claims to the OpCo Debtor Litigation Trust for the benefit of Holders of OpCo General Unsecured Claims, (v) negotiated, finalized, and filed the Plan and the Disclosure Statement, (vi) ran a fulsome sale and marketing process for the Debtors' assets, and (vii) obtained approval of the Disclosure Statement and began soliciting acceptances or rejections from Holders of Claims against and Interests in the Debtors with respect to the Plan.  The Debtors have also addressed other matters related to these Chapter 11 Cases, including obtaining first-day and second-day relief to ensure a smooth landing in chapter 11, filing Schedules, establishing a Claims Bar Date, retaining section 327 and ordinary course professionals, establishing interim compensation procedures, and rejecting or moving to reject unnecessary or burdensome Executory Contracts and Unexpired Leases.  The Debtors' substantial progress administering these Chapter 11 Cases weighs in favor of an extension of the Exclusivity Periods.

**III.      The Debtors Are Paying Their Bills as They Come Due.**

26.      Since the Petition Date, the Debtors have paid their undisputed postpetition obligations in the ordinary course or as otherwise provided by Bankruptcy Court order. Importantly the Debtors maintain their ability to continue to pay their bills throughout these Chapter 11 Cases in light of the liquidity provided by the DIP Facility and through the continued use of cash collateral.  Accordingly, this factor weighs in favor of extending the Exclusivity Periods.

**IV.      The Debtors Have Filed a Viable Plan.**

27.      The Debtors filed a Plan with the support of over 80% of their Consenting First Lien Lenders and the Creditors' Committee.  Moreover, in the weeks ahead, the Debtors will continue to engage with all stakeholders to gain additional support for the Plan during the extended

Exclusivity Periods.  Thus, this factor weighs in favor of extending the Exclusivity Periods.  It is not relevant that the Freedom Lender Group claims it will not vote in favor of the Plan, or that it is ready to propose its own plan.[7]  The Debtors are continuing to engage with all interested parties, including the Freedom Lender Group, in good-faith, arm's length negotiations in an effort to reach a global resolution to the Freedom Lender Group's anticipated objections to Confirmation of the Plan, and the Freedom Lender Group will have the opportunity to raise issues with the Plan, as it may be amended or modified in the coming weeks, at Confirmation.  Accordingly, the Debtors assert that the requested extension is warranted under the facts and circumstances of this case.

**V.        These Cases Are Less Than Four Months Old.**

28.        The Debtors' request for an extension of the Exclusivity Periods is the Debtors' first such request and comes less than four months after the Petition Date.  As discussed above, during this short time, the Debtors have accomplished a great deal and continue to work diligently with all stakeholders towards a timely resolution of these Chapter 11 Cases.  The Debtors seek extension of the Exclusivity Periods contemplated herein to conclude discussions with their stakeholders and proceed toward Confirmation of the Plan and emergence from these Chapter 11 Cases in an efficient, organized manner.

---

[7]    *See* Exclusivity Termination Motion ¶¶ 32-34.  Courts are clear that "[d]ispleasure with a plan on file is not one of the enumerated factors, and is not a basis for terminating exclusivity.  Nor, without more, is creditor constituency unhappiness with a debtor's plan proposals, with or without a formal plan on file." *In re Adelphia Communs. Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *see Geriatrics Nursing Home v. First Fid. Bank, N.A. (In re Geriatrics Nursing Home)*, 187 B.R. 128, 134 (D.N.J. 1995) ("This Court is not satisfied that statements made by creditors and parties in interest that they were prepared to offer more favorable plans if the court were to terminate the exclusivity period constitutes sufficient cause to cut short the debtor's window of opportunity opened by Congress."); *see also In re Apex Pharmaceuticals, Inc.,* 203 B.R. 432, 439–41 (N.D. Ind. 1996) (holding that during the debtors' initial exclusive period, courts merely inquire whether "a reasonable possibility of a successful reorganization within a reasonable time" exists).

## VI.        An Extension of the Exclusivity Periods Will Not Pressure Creditors.

29.        The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders.  To the contrary, the Debtors are proposing an extension of exclusivity to continue engaging such creditors in restructuring negotiations while they continue to garner creditor support and solicit acceptance of the Plan, without the distraction and confusion that could be created by multiple competing plans.  All creditor groups have an opportunity to actively participate in these substantive discussions with the Debtors regarding a consensual plan of reorganization.  Throughout these Chapter 11 Cases, the Debtors have had ongoing and transparent communications with their major creditor groups, the Creditors' Committee, the U.S. Trustee, banks, landlords, and potential purchasers, as well as a significant portion of their vendor base.  Furthermore, in light of the scheduled Confirmation Hearing in May, along with the established discovery and litigation schedule with the Freedom Lender Group, it is both appropriate and in the best interest of all stakeholders to extend exclusivity.  Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will benefit the Debtors' estates, their creditors, and all other key parties in interest, and allows the Debtors' proposed Plan to proceed in accordance with the discovery schedule agreed-upon with the Freedom Lender Group.

30.        Moreover, the Debtors seek to maintain exclusivity so parties with competing interests do not hinder the Debtors' efforts to finalize a value-maximizing restructuring.  Extending the Exclusivity Periods will benefit all creditors by preventing the drain on time and resources that inevitably occurs when multiple parties, with potentially diverging interests, vie for the consideration of their own respective plans.  All stakeholders benefit from the continued stability and predictability that a centralized process provides, which can only occur while the Debtors remain the sole potential plan proponents.

31.     An objective analysis of the relevant factors demonstrates that the Debtors are working to facilitate a successful and largely consensual conclusion to these Chapter 11 Cases, and that sufficient cause exists to extend the Exclusivity Periods for an additional 90 days. Accordingly, the Debtors request that the Bankruptcy Court grant the relief requested herein.

<u>**Notice**</u>

32.     The Debtors will provide notice of this motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the Creditors' Committee; (c) counsel to the ABL Lenders; (d) counsel to the Ad Hoc Group of First Lien Lenders; (e) counsel to the Second Lien Term Loan Lenders; (f) counsel to the HoldCo Lenders; (g) counsel to the DIP Agent; (h) counsel to the DIP Lenders; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated: February 28, 2025
Wilmington, Delaware

*/s/  Allison S. Mielke*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:     (302) 571-1253
Email:         emorton@ycst.com
               mlunn@ycst.com
               amielke@ycst.com
               sborovinskaya@ycst.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com
               nicole.greenblatt@kirkland.com
               derek.hunter@kirkland.com

- and -

Mark McKane, P.C.
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:     (415) 439-1500
Email:         mark.mckane@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*