**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC., *et al.,*[1] | ) | Case No. 24-12480 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re:  Docket No. ____** |

**ORDER AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF**
**KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS**
**INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS**
**AND DEBTORS IN POSSESSION EFFECTIVE AS OF FEBRUARY 14, 2025**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (the "Order") authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys effective as of the February 14, 2025, pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

sections 327(a) and 330 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the District of Delaware (the "<u>Local Rules</u>"); and the Court having reviewed the Application, the Declaration of Joshua A. Sussberg, the president of Joshua A. Sussberg, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "<u>Sussberg Declaration</u>"), and the declaration of David Orlofsky, the Chief Restructuring Officer of the Debtors (the "<u>Orlofsky Declaration</u>"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Sussberg Declaration that (a) Kirkland does not hold or represent an interest adverse to the Debtors' estates; and (b) Kirkland is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      The Debtors are authorized to retain and employ Kirkland as their attorneys effective as of February 14, 2025 in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1**.

3.      Kirkland is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter.  Specifically, but without limitation, Kirkland will render the following legal services:

a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      advising the Debtors in connection with any potential sale of assets;

g.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

h.      advising the Debtors regarding tax matters;

i.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

j.      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including:  (i) advising the

3

Debtors on matters related to postpetition financing and the continued use of cash collateral; (ii) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (iii) analyzing the validity of liens against the Debtors' assets; and (iv) advising the Debtors on corporate and litigation matters.

4.      Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court. Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*, both in connection with the Application and the interim and final fee applications to be filed by Kirkland in these chapter 11 cases.

5.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Kirkland's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

6.      Notwithstanding anything contained in the Application, its exhibits, and/or any supporting filings, including the Engagement Letter, the Debtors' rights to object to interim and/or final allowance of Kirkland's fees are fully reserved under the applicable bankruptcy law and the procedures set forth in the *Order (I) Establishing Procedures for Interim Compensation and*

4

*Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 353].

7.      Kirkland shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Kirkland to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

8.      Kirkland shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and counsel to the Creditors' Committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

9.      The Debtors and Kirkland are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

10.      Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

11.      To the extent the Application, the Declarations, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

12.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## EXHIBIT 1

**Engagement Letter**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022
United States

Joshua A. Sussberg, P.C.
To Call Writer Directly:
+1 212 446 4829
joshua.sussberg@kirkland.com

+1 212 446 4800

Facsimile:
+1 212 446 4900

www.kirkland.com

February 14, 2025

Andrew Laurence
President and Secretary
Freedom VCM Holdings, LLC
109 Innovation CT Suite J
Delaware, OH 43015

Re:  Retention to Provide Legal Services

Dear Mr. Laurence:

We are very pleased that you have asked us to represent Freedom VCM Holdings, LLC and only those wholly or partially owned subsidiaries listed in an addendum or supplement to this letter (collectively, "Client") in connection with its restructuring.  Please note, the Firm's representation is only of Client; the Firm does not and will not represent any direct or indirect shareholder, director, officer, partner, employee, affiliate, or joint venturer of Client or of any other entity.

**General Terms.**  This retention letter (this "Agreement") sets forth the terms of Client's retention of Kirkland & Ellis LLP and its affiliates (collectively, the "Firm," "we," "our" or "us") to provide legal services and constitutes an agreement between the Firm and Client (the "Parties"). This Agreement (notwithstanding any guidelines for outside counsel that Client may provide to the Firm) sets forth the Parties' entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters (collectively, the "Engagement"), except where the Parties otherwise agree in writing.

**Fees.**  The Firm will bill Client for fees incurred at its regular hourly rates and in quarterly increments of an hour (or in smaller time increments as otherwise required by a court).  The Firm reserves the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of Client.

Although the Firm will attempt to estimate fees to assist Client in Client's planning if requested, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

February 14, 2025
Page No. 2

**Expenses.**  Expenses related to providing services shall be included in the Firm's statements as disbursements advanced by the Firm on Client's behalf.  Such expenses include photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges.  Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers' or contractors' charges, unless otherwise agreed by the Parties.  By executing this Agreement below, Client agrees to pay for all charges in accordance with the Firm's schedule of charges, a copy of which is attached hereto at Schedule 1, as revised from time to time.

**Billing Procedures.**  The Firm's statements of fees and expenses are typically delivered monthly, but the Firm reserves the right to alter the timing of delivering its statements depending on circumstances.  Client may have the statement in any reasonable format it chooses, but the Firm will select an initial format for the statement unless Client otherwise requests in writing. Depending on the circumstances, however, estimated or summary statements may be provided, with time and expense details to follow thereafter.

**Retainer.**  Client agrees to provide to the Firm a "special purpose retainer" (also known as an "advance payment retainer") as defined in Rule 1.5(d) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein), upon request.  In addition, Client agrees to provide one or more additional special purpose retainer upon request by the Firm so that the amount of any special purpose retainer remains at or above the Firm's estimated fees and expenses.  The Firm may apply the special purpose retainer to any outstanding fees as services are rendered and to expenses as they are incurred.  Client understands and acknowledges that any special purpose retainer is earned by the Firm upon receipt, any special purpose retainer becomes the property of the Firm upon receipt, Client no longer has a property interest in any special purpose retainer upon the Firm's receipt, any special purpose retainer will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any special purpose retainer; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any special purpose retainer held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any special purpose retainer exceeds such fees, expenses, and costs. Client further understands and acknowledges that the use of a special purpose retainer is an integral condition of the Engagement, and is necessary to ensure that:  Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a Restructuring Case; and that in light of the foregoing, the provision of the special purpose retainer is in Client's best interests.  The fact that Client has provided the Firm with a special purpose retainer does not affect Client's right to terminate the client-lawyer relationship.

Please be advised that there is another type of retainer known as a "security retainer," as defined in *Dowling v. Chicago Options Assoc.*, 875 N.E.2d at 1018, and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein).  A security retainer remains the property of the client until the lawyer applies it to charges

February 14, 2025
Page No. 3

for services that are actually rendered and expenses that are incurred. Any unearned funds are then returned to the client. In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses. Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement. Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding. The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the special purpose retainer.

**Termination.** The Engagement may be terminated by either Party at any time by written notice by or to Client. The Engagement will end at the earliest of (a) Client's termination of the Engagement, (b) the Firm's withdrawal, and (c) the substantial completion of the Firm's substantive work. If permission for withdrawal is required by a court, the Firm shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal. If this Agreement or the Firm's services are terminated for any reason, such termination shall be effective only to terminate the Firm's services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of the Firm's active involvement in a particular matter (even if the Firm continues active involvement in other matters on Client's behalf), the Firm will have no further duty to inform Client of future developments or changes in law as may be relevant to such matter. Further, unless the Parties mutually agree in writing to the contrary, the Firm will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which the Firm had been retained.

**Cell Phone and E-Mail Communication.** The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by cell telephone, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client does not wish the Firm to discuss privileged matters on cell telephones with Client or Client's professionals or agents.

The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by unencrypted e-mail, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client wishes to institute a system to encode all e-mail between the Firm and Client or Client's professionals or agents.

**File Retention.** All records and files will be retained and disposed of in compliance with the Firm's policy in effect from time to time. Subject to future changes, it is the Firm's current policy generally not to retain records relating to a matter for more than five years. Upon Client's prior written request, the Firm will return client records that are Client's property to Client prior to their destruction. Although we will return your records (i.e., your client file) to you at any time upon your written request, you agree that your client file will not include our Firm's internal files

February 14, 2025
Page No. 4

including administrative materials, internal communications, and drafts. It is not administratively feasible for the Firm to advise Client of the closing of a matter or the disposal of records. The Firm recommends, therefore, that Client maintain Client's own files for reference or submit a written request for Client's client files promptly upon conclusion of a matter. Notwithstanding anything to the contrary herein, Client acknowledges and agrees that any applicable privilege of Client (including any attorney-client and work product privilege or any duty of confidentiality) (collectively, the "Privileges") belongs to Client alone and not to any successor entity (including without limitation the Client after a change in control or other similar restructuring or non-restructuring transaction (including without limitation a reorganized Client after the effective date of a plan of reorganization), whether through merger, asset or equity sale, business combination, or otherwise, irrespective of whether such transaction occurs in a Restructuring Case or on an out-of-court basis (in each case, a "Transaction")). Client hereby waives any right, title, and interest of such successor entity to all information, data, documents, or communications in any format covered by the Privileges that is in the possession of the Firm ("Firm Materials"), to the extent that such successor entity had any right, title, and interest to such Firm Materials. For the avoidance of doubt, Client agrees and acknowledges that after a Transaction, such successor entity shall have no right to claim or waive the Privileges or request the return of any such Firm Materials; instead, such Firm Materials shall remain in the Firm's sole possession and control for its exclusive use, and the Firm will (a) not waive any Privileges or disclose the Firm Materials, (b) take all reasonable steps to ensure that the Privileges survive and remain in full force and effect, and (c) assert the Privileges to prevent disclosure of any Firm Materials.

    **Data Protection.** You further agree that, if you provide us with personal data, you have complied with applicable data protection legislation and that we may process such personal data in accordance with our Data Transfer and Privacy Policy at www.kirkland.com. We process your personal data in order to (i) carry out work for you; (ii) share the data with third parties such as expert witnesses and other professional advisers if our work requires; (iii) comply with applicable laws and regulations and (iv) provide you with information relating to our Firm and its services.

    **Conflicts of Interest.** As is customary for a law firm of the Firm's size, there are numerous business entities, with which Client currently has relationships, that the Firm has represented or currently represents in matters unrelated to Client.

    Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients. Because Client is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of the Firm's other clients, the possibility exists that one of the Firm's current or future clients may take positions adverse to Client (including litigation or other dispute resolution mechanisms) in a matter in which such other client may have retained the Firm or one of Client's adversaries may retain the Firm in a matter adverse to another entity or person.

    In the event a present conflict of interest exists between Client and the Firm's other clients or in the event one arises in the future, Client agrees to waive any such conflict of interest or other objection that would preclude the Firm's representation of another client (a) in other current or future matters substantially unrelated to the Engagement or (b) other than during a Restructuring Case (as defined below), in other matters related to Client (such representation an "Allowed Adverse Representation"). By way of example, such Allowed Adverse Representations might take

February 14, 2025
Page No. 5

the form of, among other contexts: litigation (including arbitration, mediation and other forms of dispute resolution); transactional work (including consensual and non-consensual merger, acquisition, and takeover situations, financings, and commercial agreements); counseling (including advising direct adversaries and competitors); and restructuring (including bankruptcy, insolvency, financial distress, recapitalization, equity and debt workouts, and other transactions or adversarial adjudicative proceedings related to any of the foregoing and similar matters).

Client also agrees that it will not, for itself or any other entity or person, assert that either (i) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (ii) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation. Client further agrees that any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any of Client's affiliates. Client also agrees that the Firm's representation in the Engagement is solely of Client and that no member or other entity or person related to it (such as a shareholder, parent, subsidiary, affiliate, director, officer, partner, employee, or joint venturer) has the status of a client for conflict of interest purposes.

In addition, if a waiver of a conflict of interest necessary to allow the Firm to represent another client in a matter that is not substantially related to the Engagement is not effective for any reason, Client agrees that the Firm may withdraw from the Engagement. Should that occur, Client will not, for itself or any other entity or person, seek to preclude such termination of services or assert that either (a) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (b) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing such other client or acting on such adverse matter.

It is important that you review this letter carefully and consider all of the advantages and disadvantages of waiving certain conflicts of interests that would otherwise bar the Firm from representing parties with interests adverse to you during the time in which the Firm is representing you. You also understand that because this waiver includes future issues and future clients that are unknown and unknowable at this time, it is impossible to provide you with any more details about those prospective clients and matters. Thus, in choosing to execute this waiver, you have recognized the inherent uncertainty about the array of potential matters and clients the Firm might take on in matters that are adverse to you but have nonetheless decided it is in your interest to waive conflicts of interest regarding the Allowed Adverse Representations and waive rights to prohibit the Firm's potential withdrawal should a conflict waiver prove ineffectual.

The Firm informs Client that certain entities owned by current or former Firm attorneys and senior staff ("attorney investment entities") have investments in funds or companies that may, directly or indirectly, be affiliated with Client, hold investments in Client's debt or equity securities, may be adverse to Client, or conduct commercial transactions with Client (each, a "Passive Holding"). The attorney investment entities are passive and have no management or other control rights in such funds or companies. The Firm notes that other persons may in the future assert that a Passive Holding creates, in certain circumstances, a conflict between the Firm's exercise of its independent professional judgment in rendering advice to Client and the financial interest of Firm attorneys participating in the attorney investment entities, and such other persons

February 14, 2025
Page No. 6

might seek to limit Client's ability to use the Firm to advise Client on a particular matter. While
the Firm cannot control what a person might assert or seek, the Firm believes that the Firm's
judgment will not be compromised by virtue of any Passive Holding. Please let us know if Client
has any questions or concerns regarding the Passive Holdings. By executing this letter, Client
acknowledges the Firm's disclosure of the foregoing.

   **Restructuring Cases**. The Client has commenced a restructuring case under chapter 11
of the U.S. Bankruptcy Code (the "Restructuring Case") in the United States Bankrutpcy Court for
the District of Delaware (the "Bankruptcy Court"). The Firm's ongoing employment by Client is
therefore subject to the approval of the Bankruptcy Court. The Firm will take steps necessary to
prepare the disclosure materials required in connection with the Firm's retention as lead
restructuring counsel. The Firm is undergoing conflicts checks on potentially interested parties as
provided by Client.

   The Firm will prepare a preliminary draft of a schedule describing the Firm's relationships
with certain interested parties (the "Disclosure Schedule"). The Firm will give Client a draft of
the Disclosure Schedule once it is available. Although the Firm believes that these relationships
do not constitute actual conflicts of interest, these relationships must be described and disclosed in
Client's application to the court to retain the Firm.

   If in the Firm's determination a conflict of interest arises in Client's Restructuring Case
requiring separate conflicts counsel, then Client will be required to use separate conflicts counsel
in those matters.

   **No Guarantee of Success.** It is impossible to provide any promise or guarantee about the
outcome of Client's matters. Nothing in this Agreement or any statement by Firm staff or attorneys
constitutes a promise or guarantee. Any comments about the outcome of Client's matter are simply
expressions of judgment and are not binding on the Firm.

   **Consent to Use of Information.** In connection with future materials that, for marketing
purposes, describe facets of the Firm's law practice and recite examples of matters the Firm
handles on behalf of clients, Client agrees that, if those materials avoid disclosing Client's
confidences and secrets as defined by applicable ethical rules, they may identify Client as a client,
may contain factual synopses of Client's matters, and may indicate generally the results achieved.

   **Reimbursement of Fees and Expenses.** Client agrees to promptly reimburse the Firm for
all internal or external fees and reasonable and documented expenses, including the amount of the
Firm's attorney and paralegal time at normal billing rates, as incurred by the Firm in connection
with participating in, preparing for, or responding to any action, claim, objection, suit, or
proceeding brought by or against any third-party that relates to the legal services provided by the
Firm under this Agreement. Without limiting the scope of the foregoing, and by way of example
only, this paragraph extends to all such fees and expenses incurred by the Firm: in responding to
document subpoenas, and preparing for and testifying at depositions and trials; and with respect to
the filing, preparation, prosecution or defense of any applications by the Firm for approval of fees
and expenses in a judicial, arbitral, or similar proceeding. Further, Client understands,
acknowledges, and agrees that in connection with a Restructuring Case, if Client has not objected
to the payment of a Firm invoice or to a Firm fee and expense application, has in fact paid such

February 14, 2025
Page No. 7

invoice, or has approved such fee and expense application, then Client waives its right (and the right of any successor entity as a result of a Transaction or otherwise) to subsequently object to the payment of fees and expenses covered by such invoice or fee application.

**LLP.** Kirkland & Ellis LLP is a limited liability partnership organized under the laws of Illinois, and Kirkland & Ellis International LLP is a limited liability partnership organized under the laws of Delaware. Pursuant to those statutory provisions, an obligation incurred by a limited liability partnership, whether arising in tort, contract or otherwise, is solely the obligation of the limited liability partnership, and partners are not personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such obligation solely by reason of being or so acting as a partner.

**Governing Law**. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof.

**Miscellaneous.** This Agreement sets forth the Parties' entire agreement for rendering professional services. It can be amended or modified only in writing and not orally or by course of conduct. Each Party signing below is jointly and severally responsible for all obligations due to the Firm and represents that each has full authority to execute this Agreement so that it is binding. This Agreement may be signed in one or more counterparts and binds each Party countersigning below, whether or not any other proposed signatory ever executes it. If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable. Any agreement or waiver contained herein by Client extends to any assignee or successor in interest to Client, including without limitation the reorganized Client upon and after the effective date of a plan of reorganization in a Restructuring Case.

This Agreement is the product of arm's-length negotiations between sophisticated parties, and Client acknowledges that it is experienced with respect to the retention of legal counsel. Therefore, the Parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation which provides that ambiguities shall be construed against the drafter (and all similar rules of contract construction or interpretation) shall not apply to this Agreement. The Parties further acknowledge that the Firm is not advising Client with respect to this Agreement because the Firm would have a conflict of interest in doing so, and that Client has consulted (or had the opportunity to consult) with legal counsel of its own choosing. Client further acknowledges that Client has entered into this Agreement and agreed to all of its terms and conditions voluntarily and fully-informed, based on adequate information and Client's own independent judgment. The Parties further acknowledge that they intend for this Agreement to be effective and fully enforceable upon its execution and to be relied upon by the Parties.

\* \* \*

February 14, 2025
Page No. 8

　　　　Please confirm your agreement with the arrangements described in this letter by signing the enclosed copy of this letter in the space provided below and returning it to us.　Please understand that, if we do not receive a signed copy of this letter within twenty-one days, we will withdraw from representing you in this Engagement.

　　　　　　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP

　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　Printed Name:　Joshua A. Sussberg
　　　　　　　　　　　　　　　　　　　Title:　Partner

　　　　Agreed and accepted this 14 day of February, 2025

　　　　　　　　　　　　　　　　Freedom VCM Holdings, LLC

　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　Name:　Andrew Laurence
　　　　　　　　　　　　　　　　Title:　President and Secretary

February 14, 2025
Page No. 9

## **ADDENDUM: List of Client Subsidiaries**

1. Freedom VCM Holdings, LLC

2. Freedom VCM Interco Holdings, Inc.

3. Freedom Receivables II, LLC

4. Freedom VCM Receivables, Inc.

5. Freedom VCM Interco, Inc.

6. Freedom VCM, Inc.

7. Franchise Group, Inc.

8. American Freight FFO, LLC

9. Franchise Group New Holdco, LLC

10. Franchise Group Acquisition TM, LLC

11. Franchise Group Intermediate Holdco, LLC

12. Franchise Group Intermediate L, LLC

13. Franchise Group Intermediate PSP, LLC

14. Franchise Group Newco PSP, LLC

15. PSP Midco, LLC

16. Pet Supplies "Plus", LLC

17. PSP Group, LLC

18. PSP Service Newco, LLC

19. PSP Stores, LLC

20. PSP Subco, LLC

21. WNW Franchising, LLC

22. PSP Franchising, LLC

23. PSP Distribution, LLC

24. WNW Stores, LLC

February 14, 2025
Page No. 10

25. Franchise Group Intermediate V, LLC

26. Franchise Group Newco V, LLC

27. Valor Acquisition, LLC

28. Vitamin Shoppe Industries LLC

29. Vitamin Shoppe Global, LLC

30. Vitamin Shoppe Procurement Services, LLC

31. Vitamin Shoppe Florida, LLC

32. Betancourt Sports Nutrition, LLC

33. Vitamin Shoppe Mariner, LLC

34. Vitamin Shoppe Franchising, LLC

35. Franchise Group Newco Intermediate AF, LLC

36. American Freight Group, LLC

37. American Freight Holdings, LLC

38. American Freight, LLC

39. American Freight Management Company, LLC

40. Franchise Group Intermediate S, LLC

41. Franchise Group Newco S, LLC

42. American Freight Franchising, LLC

43. Home and Appliance Outlet LLC

44. American Freight Outlet Stores, LLC

45. American Freight Franchisor, LLC

46. Franchise Group Intermediate B, LLC

47. Buddy's Newco, LLC

48. Buddy's Franchising and Licensing, LLC

49. Franchise Group Intermediate BHF LLC

February 14, 2025
Page No. 11

    50. Franchise Group Newco BHF, LLC

    51. Franchise Group Intermediate SL, LLC

    52. Franchise Group Newco SL, LLC

    53. Educate, Inc.

**KIRKLAND & ELLIS LLP**

**CLIENT-REIMBURSABLE EXPENSES AND OTHER CHARGES**

*Effective 01/01/2025*

The following outlines Kirkland & Ellis LLP's ("K&E LLP") policies and standard charges for various services performed by K&E LLP and/or by other third parties on behalf of the client which are often ancillary to our legal services. Services provided by in-house K&E LLP personnel are for the convenience of our clients. Given that these services are often ancillary to our legal services, in certain instances it may be appropriate and/or more cost efficient for these services to be outsourced to a third-party vendor. If services are provided beyond those outlined below, pricing will be based on K&E LLP's approximate cost and/or comparable market pricing.

- **Duplicating, Reprographics and Printing**: The following list details K&E LLP's charges for duplicating, reprographics and printing services:

  - Black and White Copy or Print (all sizes of paper):
    - $0.16 per impression for all U.S. offices
    - €0.10 per impression in Munich
    - £0.15 per impression in London
    - HK$1.50 per impression in Hong Kong
    - CNY1.00 per impression in Beijing and Shanghai
  - Color Copy or Print (all sizes of paper):
    - $0.55 per impression
  - Scanned Images:
    - $0.16 per page for black and white or color scans
  - Other Services:
    - CD/DVD Duplicating or Mastering - $7/$10 per CD/DVD
    - Binding - $0.70 per binding
    - Large or specialized binders - $13/$27
    - Tabs - $0.13 per item
    - OCR/File Conversion - $0.03 per page
    - Large Format Printing - $1.00 per sq. ft.

- **Secretarial and Word Processing**: Clients are not charged for secretarial and word processing activities incurred on their matters during standard business hours.

- **Overtime Charges**: Clients will be charged for overtime costs for secretarial and document services work if either (i) the client has specifically requested the after-hours work or (ii) the nature of the work being done for the client necessitates out-of-hours overtime and such work could not have been done during normal working hours. If these conditions are satisfied, costs for related overtime meals and transportation also will be charged.

1

- **Travel Expenses**:  We charge clients our out-of-pocket costs for travel expenses including associated travel agency fees.  We charge coach fares (business class for international flights) unless the client has approved business-class, first-class or an upgrade.  K&E LLP personnel are instructed to incur only reasonable airfare, hotel and meal expenses.  K&E LLP negotiates, uses, and passes along volume discount hotel and air rates whenever practicable.  However, certain retrospective rebates may not be passed along.

- **Catering Charges**:  Clients will be charged for any in-house catering service provided in connection with client matters.

- **Communication Expenses**:  We do not charge clients for telephone calls, conference calls, videoconferences or faxes made from K&E LLP's offices.

  Charges incurred for conference calls, videoconferences, cellular telephones, and calls made from other third-party locations will be charged to the client at the actual cost incurred.  Further, other telecommunication expenses incurred at third-party locations (e.g., phone lines at trial sites, Internet access, etc.) will be charged to the client at the actual cost incurred.

- **Overnight Delivery/Postage**:  We charge clients for the actual cost of overnight and special delivery (e.g., Express Mail, FedEx, and DHL), and U.S. postage for materials mailed on the client's behalf.  K&E LLP negotiates, uses, and passes along volume discount rates whenever practicable.

- **Messengers**:  We charge clients for the actual cost of a third-party vendor messenger.

- **Library Research Services**: Library Research staff provides research and document retrieval services at the request of attorneys, and clients are charged per hour for these services.  Any expenses incurred in connection with the request, such as outside retrieval service or online research charges, are passed on to the client at cost, including any applicable discounts.

- **Online Research Charges**: K&E LLP charges for costs incurred in using third-party online research services in connection with a client matter.  K&E LLP negotiates and uses discounts or special rates for online research services whenever possible and practicable and passes through the full benefit of any savings to the client based on actual usage.

- **Inter-Library Loan Services**: Our standard client charge for inter-library loan services when a K&E LLP library employee borrows a book from an outside source is $25 per title.  There is no client charge for borrowing books from K&E LLP libraries in other cities or from outside collections when the title is part of the K&E LLP collection but unavailable.

- **Off-Site Legal Files Storage**:  Clients are not charged for off-site storage of files unless the storage charge is approved in advance.

- **Electronic Data Storage**:  K&E LLP will not charge clients for costs to store electronic data and files on K&E LLP's systems if the data stored does not exceed 100 gigabytes (GB).  If the data stored for a specific client exceeds 100GB, K&E LLP will charge clients $6.00 per month/per GB for all network data stored until the data is either returned to the client or properly disposed of.  For e-discovery data on the Relativity platform, K&E LLP will also charge clients $6.00 per month/per GB until the data is either returned to the client or properly disposed of.

- **Tax Filings**:  Clients will be charged a fixed fee for certain tax filings. Our standard charge is $400 per Form 8832 election; $250 per Form 83(b) election for the first 20 forms, $100 per form for any additional forms; $1,000 each for Form SS-4 (Foreign); $100 each for Form SS-4 (Domestic); and $75 for each FIRPTA certificate.

- **Calendar Court Services**:  Our standard charge is $25 for a court filing and other court services or transactions.

- **Supplies**:  There is no client charge for standard office supplies.  Clients are charged for special items (e.g., a minute book, exhibit tabs/indexes/dividers, binding, etc.) and then at K&E LLP's actual cost.

- **Contract Attorneys and Contract Non-Attorney Billers**:  If there is a need to utilize a contract attorney or contract non-attorney on a client engagement, clients will be charged a standard hourly rate for these billers unless other specific billing arrangements are agreed between K&E LLP and client.

- **Expert Witnesses, Experts of Other Types, and Other Third Party Consultants**:  If there is a need to utilize an expert witness, expert of other type, or other third party consultant such as accountants, investment bankers, academicians, other attorneys, etc. on a client engagement, clients will be requested to retain or pay these individuals directly unless specific billing arrangements are agreed between K&E LLP and client.

- **Third Party Expenditures**:  Third party expenditures (e.g., corporate document and lien searches, lease of office space at Trial location, IT equipment rental, SEC and regulatory filings, etc.) incurred on behalf of a client, will be passed through to the client at actual cost.  If the invoice exceeds $50,000, it is K&E LLP's policy that wherever possible such charges will be directly billed to the client.  In those circumstances where this is not possible, K&E LLP will seek reimbursement from our client prior to paying the vendor.

Unless otherwise noted, charges billed in foreign currencies are based on current U.S. charges at an appropriate exchange rate.