# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) Case No. 24-12480 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Hearing Date: |
| | ) April 3, 2025 at 10:00 a.m. (ET) |
| | ) |
| | ) Objection Deadline: |
| | ) March 24, 2025 at 4:00 p.m. (ET) |

## DEBTORS' FIFTEENTH OMNIBUS
## MOTION FOR ENTRY OF AN ORDER, PURSUANT TO
## SECTIONS 105(a), 365(a), AND 554 OF THE BANKRUPTCY CODE
## AUTHORIZING THE DEBTORS TO REJECT CERTAIN UNEXPIRED
## EXECUTORY CONTRACTS, EFFECTIVE AS OF THE REJECTION DATE

**ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND ITS EXECUTORY CONTRACT IDENTIFIED ON <u>SCHEDULE 1</u> TO THE ORDER.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (the "Motion"):[2]

### Relief Requested

The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing, but not directing, the Debtors to reject those certain executory contracts set forth on Schedule 1 to the Order (collectively, the "Rejected Executory Contracts"), effective as of March 11, 2025 (the "Rejection Date"). In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1015] (as may be amended, supplemented, or otherwise modified, the "Plan"), as applicable.

2

3.  The statutory and legal predicates for the relief sought herein are sections 105(a), 365, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

4.  The Debtors are a privately held operator and acquirer of franchised and franchisable businesses. As of the Petition Date, the Debtors' business segments included a diverse collection of highly recognized, market-leading, and emerging retail brands, including American Freight, a retail furniture chain selling quality furniture, mattresses, and home appliances. As of the Petition Date, the Debtors had approximately 2,200 total retail store locations (including both corporate-owned and franchised locations), 341 of which were operated by American Freight.

5.  On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 188] (the "Committee"). On January 15, 2025, the Debtors appointed a fee examiner [Docket No. 747] (the "Fee Examiner").

6.  Pursuant to the *Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 351], the Debtors, together with Hilco Merchant Resources, LLC, have implemented and conducted orderly store closing sales (the "Store Closing Sales") at all American Freight store

3

locations and are in the process of winding down the American Freight business.[3] The Store Closing Sales concluded at all store locations on or around December 31, 2024.

7. The Rejected Executory Contracts[4] are comprised of agreements for goods and services that the Debtors no longer need now that the Store Closing Sales are completed. Accordingly, after careful review, the Debtors have determined that the Rejected Executory Contracts are non-essential or otherwise uneconomic. Each of the Rejected Executory Contracts would require the Debtors to incur costs on account of goods and services which no longer provide commensurate benefits to the Debtors, leading the Debtors to conclude that the Rejected Executory Contracts are burdensome to their estates.

### Basis for Relief

8. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). As courts have held, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures*

---

[3] In parallel with the Store Closing Sales, and to ensure that the Debtors maximized the value of American Freight's assets for the Debtors' stakeholders, the Debtors and their advisors solicited interest from potential buyers and acquirors of American Freight's intangible assets, including their intellectual property and interests in unexpired real property leases. On January 10, 2025, the Court entered an order, approving the sale of certain of American Freight's intellectual property and interests in unexpired real property leases (collectively, the "Acquired Assets") to AF Newco I, LLC [Docket No. 712]. For the avoidance of doubt, the Debtors do not seek to reject any agreements that comprise the Acquired Assets.

[4] The inclusion of any executory contract or other agreement on Schedule 1 to the Order is not intended as, nor shall be deemed to constitute, an admission by the Debtors or their estates that such executory contract or other agreement is or is not an unexpired executory contract. The Debtors and their estates reserve any and all rights, claims, and defenses with respect to the characterization of the Rejected Executory Contracts under section 365 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, including, without limitation, any and all rights to argue that the Rejected Executory Contracts do not constitute unexpired executory contracts.

*Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting *2 Collier on Bankruptcy* ¶ 365.01[1] (15th ed. 1993)).

9. The standard applied to determining whether the rejection of an unexpired executory contract should be authorized is the "business judgment" standard. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

10. The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor-in-possession's business judgment to reject an executory contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984), *superseded by statute on other grounds*, Bankruptcy Amendments and Federal Judgeship Act of 1984, sec. 541, § 1113, Pub. L. No. 98-353, 98 Stat. 333 (codified at 11 U.S.C. § 1113); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979);

*In re Riodizio*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

11. Upon finding that the Debtors have exercised their sound business judgment in determining that the rejection of the Rejected Executory Contracts is in the best interests of the Debtors and their estates, the Court should approve the proposed rejection under section 365(a) of the Bankruptcy Code. *See*, *e.g.*, *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired executory contract. *See*, *e.g.*, *Sharon Steel Corp.*, 872 F.2d at 39–40. The Debtors have determined that the Rejected Executory Contracts are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates, and may present burdensome contingent liabilities. Accordingly, the Debtors' decision to reject the Rejected Executory Contracts is an exercise of sound business judgment, and therefore should be approved.

12. To avoid potentially paying any unnecessary expenses related to the Rejected Executory Contracts, the Debtors seek to reject the Rejected Executory Contracts effective as of the Rejection Date. Courts in this district have routinely authorized a debtor's rejection of executory contracts as of the date of the filing of the applicable rejection motion. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004); *see also In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (rejection permitted effective as of the date of the motion or the date the premises surrendered). Generally, courts have permitted retroactive rejection of an

unexpired executory contract when the non-debtor party to the agreement was given definite notice of the intention to reject. *See, e.g.*, *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 21, 2006). A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses. *See NLRB v. Bildisco & Bildisco*, 465 U.S. at 523 (stating that rejection relates back to the petition date); *Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 140 (D. Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject").

13. The facts in the chapter 11 cases and the balance of the equities favor the Debtors' rejection of the Rejected Executory Contracts, effective as of the Rejection Date. Without doing so, the Debtors may incur unnecessary administrative charges for agreements that are not necessary to their business affairs or chapter 11 efforts. The Debtors do not need the Rejected Executory Contracts to conduct their go-forward businesses. To the contrary, the Rejected Executory Contracts represent agreements that no longer serve the Debtors' estates, none of which generate any value or benefit for the Debtors. Indeed, requiring the Debtors to continue to perform under the Rejected Executory Contracts after the Rejection Date could impose onerous obligations on the Debtors and their estates. Without rejecting the Rejected Executory Contracts, the Debtors may incur unnecessary administrative expenses and obligations that are not necessary to their ongoing business operations.

14. Moreover, the counterparties to the Rejected Executory Contracts will not be unduly prejudiced if the Rejected Executory Contracts are rejected effective as of the Rejection Date because, on the Rejection Date, the Debtors have served this Motion on the affected counterparties and/or their agents or representatives by overnight mail and/or electronic mail, as

applicable, thereby advising such counterparties that the Debtors intend to reject the Rejected Executory Contracts effective as of the Rejection Date.

15. In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Executory Contracts under section 365 of the Bankruptcy Code, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors. Accordingly, entry of the Order is appropriate.

**Reservation of Rights**

16. Nothing in the Order or the Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

17. Nothing in the Order or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

18. Nothing in the Order or this Motion shall create, nor is intended to create any rights in favor of or enhance the status of any claim held by any party.


**Notice**

19. Notice of this Motion has been or will be provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel to the HoldCo Lenders; (vii) counsel to DIP Agent; (viii) counsel to the DIP Lenders; and (ix) the counterparties to the Rejected Executory Contracts (by overnight mail and/or electronic mail). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## Conclusion

WHEREFORE, the Debtors request entry of the Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: March 10, 2025
Wilmington, Delaware

*/s/ Allison S. Mielke*

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Edmon L. Morton (Del. No. 3856) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Matthew B. Lunn (Del. No. 4119) | Nicole L. Greenblatt, P.C. (admitted *pro hac vice*) |
| Allison S. Mielke (Del. No. 5934) | Derek I. Hunter (admitted *pro hac vice*) |
| Shella Borovinskaya (Del. No. 6758) | 601 Lexington Avenue |
| Rodney Square | New York, New York 10022 |
| 1000 North King Street | Telephone:  (212) 446-4800 |
| Wilmington, Delaware 19801 | Facsimile:  (212) 446-4900 |
| Telephone:  (302) 571-6600 | Email:  joshua.sussberg@kirkland.com |
| Facsimile:  (302) 571-1253 |           nicole.greenblatt@kirkland.com |
| Email:  emorton@ycst.com |           derek.hunter@kirkland.com |
|         mlunn@ycst.com | |
|         amielke@ycst.com | and - |
|         sborovinskaya@ycst.com | |
| | Mark McKane, P.C. (admitted *pro hac vice*) |
| | 555 California Street |
| | San Francisco, California 94104 |
| | Telephone:  (415) 439-1400 |
| | Facsimile:  (415) 439-1500 |
| | Email:  mark.mckane@kirkland.com |
| *Co-Counsel to the Debtors and Debtors in Possession* | *Proposed Co-Counsel to the Debtors and Debtors in Possession* |