**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>April 3, 2025 at 10:00 a.m. (ET)<br><br>**Objection Deadline:**<br>March 27, 2025 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR
ENTRY OF AN ORDER (I) AUTHORIZING
THE RETENTION AND EMPLOYMENT OF
HILCO DILIGENCE SERVICES, LLC AS FIELD EXAMINER
FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE
AS OF FEBRUARY 10, 2025, (II) WAIVING CERTAIN REQUIREMENTS
IMPOSED BY LOCAL RULE 2016-1, AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application (this "Application"):[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (a) authorizing the retention and employment of Hilco Diligence Services, LLC ("Hilco") so that it may perform field examination services for the Debtors in accordance with that certain letter agreement dated February 10, 2025, by and between the Debtors and Hilco (the "Engagement Agreement"), a copy of which is attached hereto as Exhibit 1 to the Proposed Order; (b) approving the terms of Hilco's employment and retention as set forth in the Engagement Agreement; (c) waiving certain requirements imposed by rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and (d) granting related relief. In support of this Application, the Debtors submit the declaration of Eric W. Kaup, attached hereto as **Exhibit B** (the "Kaup Declaration").

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

3. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-1.

## Background

5. On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 5, 2024, the Court entered an order [Docket No. 88] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). On November 19, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee") [Docket No. 188]. On January 15, 2025, the Court entered an order [Docket No. 747] appointing a fee examiner in these chapter 11 cases.

6. A description of the Debtors' business, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the First Day Declaration, incorporated herein by reference.

## Hilco's Qualifications

7. Hilco is one of the world's largest and most diversified business asset appraisers and valuation advisors and has significant experience in providing field examination, appraisal, and valuation services for a variety of asset classes. The Debtors seek to retain Hilco in particular because of Hilco's familiarity with the Debtors' businesses and assets, qualifications, and substantial experience in restructuring matters. Moreover, Hilco routinely provides field

3

examination services for potential borrowers in connection with both in-court and out-of-court restructurings.

8. For the foregoing reasons, the Debtors believe that Hilco is well qualified to advise the Debtors in an efficient and timely manner, and that the engagement of Hilco is critical to their efforts in these chapter 11 cases and is in the best interests of the Debtors' estates.

**Services to be Provided**[3]

9. Based on Hilco's knowledge and experience with conducting field exams and appraisals in large chapter 11 cases, and because such work is critically important to the Debtors' successful restructuring, including their ability to obtain exit financing for certain of its businesses, the Debtors, in exercising their business judgment, seek the Court's approval for the Debtors to engage and employ Hilco on the terms and conditions set forth in the Engagement Agreement. In accordance with the Engagement Agreement, Hilco will perform field examination services for The Vitamin Shoppe and Pet Supplies Plus (together, the "Prospective Borrowers"), including through the examination of the books, records, and representations of the Prospective Borrowers' management, employees, professionals, and other representatives (collectively, the "Services").

10. The Debtors submit that the Services are necessary for the Debtors' successful reorganization and that Hilco will provide the Services in a cost-effective, efficient, and timely manner, and will not duplicate the services that other professionals will provide to the Debtors in these chapter 11 cases. Specifically, the scope of services to be provided by Hilco under the Engagement Agreement is not duplicative of the services to be provided by other professionals

---

[3] The summary of the Engagement Agreement in this Application is qualified in its entirety by reference to the provisions of the Engagement Agreement. To the extent that there is any discrepancy between the summary contained in the Application and the terms set forth in the Engagement Agreement, the terms of the Engagement Agreement shall govern. Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Engagelent Agreement.

retained in these chapter 11 cases, and Hilco will use reasonable efforts to coordinate with Debtors and the other professionals retained in these chapter 11 cases to avoid any unnecessary duplication of services.[4]

### Professional Compensation[5]

11. Subject to the Court's approval, and pursuant to the terms and conditions of the Engagement Agreement, Hilco and the Debtors have agreed on the terms of compensation and expense reimbursement more fully described in the Engagement Agreement (the "Fee and Expense Structure"). Specifically, the Debtors will pay Hilco a flat fee totaling $125,000 (the "Fee") for the completion of the field examination report (the "Report") and will also reimburse Hilco for its reasonable out-of-pocket costs and expenses (collectively, the "Expenses"). The Debtors propose to pay Hilco the Fee upon completion (but prior to) Hilco's releasing the Report to the Debtors in accordance with the procedures set forth herein and by the Bankruptcy Code.

12. The Debtors submit that the Fee and Expense Structure is fair, reasonable, and advantageous to the Debtors' estates. The Fee appropriately reflects the nature of the Services provided to the Debtors. Moreover, the Fee and Expense Structure, as a whole, is typical for the services provided, which are typically billed via flat fee rather than an hourly basis. The Debtors

---

[4] On November 6, 2024, the Court entered the *Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 132] (the "GOB Order"). The GOB Order authorized the Debtors to assume that certain *Letter Agreement Governing Inventory Disposition*, by and between Hilco Merchant Resources, LLC ("Hilco Merchant Resources"), and Debtor American Freight, LLC (the "Consulting Agreement"). On December 16, 2024, the Court entered the *Order (I) Authorizing the Retention and Employment of Hilco Real Estate, LLC as Real Estate Consultant and Advisor for the Debtors, Effective as of the Petition Date; (II) Waiving Certain Requirements Imposed by Local Rule 2016-2; and (III) Granting Related Relief* [Docket No. 449] (the "Hilco Real Estate Order," and such professional, "Hilco Real Estate"). The scope of services to be provided by Hilco under the Engagement Agreement is distinct and not duplicative of the services approved to be provided by Hilco Merchant Resources or Hilco Real Estate, under the GOB Order and the Hilco Real Estate Order, respectively.

[5] The summary of the Fee and Expense Structure in this Application is qualified in its entirety by reference to the provisions of the Engagement Agreement. To the extent there is any discrepancy between the summary contained in the Application and the terms set forth in the Engagement Agreement, the terms of the Engagement Agreement shall govern.

believe that the Fee and Expense Structure is comparable to compensation generally charged for comparable engagements, both in- and out-of-court, and that the Fee and Expense Structure is otherwise reasonable and market based.

13. Hilco will maintain reasonably detailed records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its Services. However, because (a) it is not the general practice of firms providing field examination services such as Hilco to keep detailed time records similar to those customarily kept by attorneys and (b) Hilco's compensation is based on a flat fee, the Debtors respectfully request that Hilco be excused from: (i) submitting monthly fee statements and interim fee applications and (ii) maintaining hourly time records in connection with the Services to be rendered by Hilco pursuant to the Engagement Agreement. To the extent that Hilco would otherwise be required to submit detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any other guideline regarding the submission and approval of fee applications, the Debtors respectfully request that the Court waive such requirements.

14. To the best of the Debtors' knowledge, information, and belief, other than as set forth herein, Hilco has not received any promises as to compensation in connection with these chapter 11 cases other than as outlined in the Engagement Agreement. Hilco has no agreement with any other entity to share any compensation received with any person other than the principals and the employees of Hilco.

### **Indemnification of Hilco**

15. The Engagement Agreement provides, and the Debtors have agreed to, indemnify Hilco and hold it harmless from and against any and causes of action, demands, losses, claims, damages, liabilities, costs, and expenses, including, without limitation, reasonable legal fees, costs,

and expenses incurred by Hilco arising from, related to, or in any way connected with the Engagement Agreement or the Services contemplated by the Engagement Agreement, except to the extent such causes of action, demands, losses, claims, damages, liabilities, costs, or expenses are finally determined to have been substantially caused by the fraud, gross negligence, or willful misconduct of Hilco.

16. The indemnification provision contained in the Engagement Agreement (the "Indemnification Provision") was fully negotiated between the Debtors and Hilco at arm's length and in good faith as part of the overall compensation payable to Hilco under the Engagement Agreement, and is subject, in its entirety, to the terms of the Proposed Order. Further, the Debtors and Hilco believe the Indemnification Provision is customary and reasonable for similar engagements and reflects the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions. *See, e.g.*, *In re Franchise Group, Inc.*, No. 24-124820 (LSS) (Bankr. D. Del. Dec. 16, 2024); *In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. June 5, 2024); *In re WeWork, Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Feb. 22, 2024); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. July 18, 2023); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 1, 2023); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. June 1, 2023); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 13, 2020).[6]

**Hilco's Disinterestedness**

17. Hilco has informed the Debtors that, as of the date hereof, except as set forth in the Kaup Declaration (including, but not limited to, with respect to Hilco Real Estate), (a) Hilco has

---

[6] Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request of the Debtors' counsel.

7

no connection with the Debtors, their creditors, equity security holders, or other parties in interest in these chapter 11 cases, (b) Hilco does not have or represent any interest adverse to the Debtors' estates, and (c) Hilco (i) is not a creditor, equity security holder, or an insider of any of the Debtors and (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors. In addition, none of the Hilco professionals expected to assist the Debtors in these chapter 11 cases are related or connected to any United States Bankruptcy Judge for the District of Delaware, the U.S. Trustee, or any person employed by the U.S. Trustee. To the best of the Debtors' knowledge, information, and belief, Hilco is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and therefore, Hilco's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

18. During the 90 days before the Petition Date, Hilco did not receive any payments. As of the Petition Date, Hilco was not owed any amounts by the Debtors and does not hold a claim against the Debtors' estates. Hilco has indicated that if it discovers any information that is contrary or pertinent to the statements made in the Kaup Declaration, it will promptly disclose such information to this Court, the Debtors, and the U.S. Trustee. If, for example, the Debtors or Hilco are made aware of any new material facts or relationships, Hilco will provide the Court with supplemental disclosures detailing, among other things, any new potential conflicts between the Debtors and Hilco or other parties in interest.

## Basis for Relief

**I.  The Debtors Should be Permitted to Retain and Employ Hilco on the Terms of the Engagement Agreement Pursuant to Sections 327 and 328 of the Bankruptcy Code.**

19. The Debtors seek approval of the retention and employment of Hilco pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals that "do not hold or represent an interest

adverse to the estate, and that are disinterested persons." As discussed above and in the KaupDeclaration, Hilco satisfies the disinterestedness standard of section 327(a) of the Bankruptcy Code.

20. In addition, the Debtors seek approval of the Engagement Agreement, including the Fee and Expense Structure set forth therein, pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

21. Numerous courts have recognized that Congress intended section 328(a) of the Bankruptcy Code to enable a debtor to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to review if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." *In re Nat'l Gypsum Co.*, 123 F.3d 861, 862–63 (5th Cir. 1997); *see also In re River Foal, Inc.*, 161 B.R. 568, 569 (Bankr. S.D.N.Y. 1993). Courts have approved similar relief in other chapter 11 cases in this district and others. *See, e.g.*, *In re Express, Inc.*, (Bankr. D. Del. June 5, 2024); *In re WeWork, Inc.*, (Bankr. D.N.J. Feb. 22, 2024); *In re Cyxtera Techs., Inc.*, (Bankr. D.N.J. July 18, 2023); *In re Bed Bath & Beyond Inc.*, (Bankr. D.N.J. June 1, 2023); *In re David's Bridal, LLC*, (Bankr. D.N.J. June 1, 2023); *In re Town Sports Int'l, LLC*, (Bankr. D. Del. Oct. 13, 2020).[7]

---

[7] Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request of the Debtors' counsel.

9

22. The Debtors submit that the Fee and Expense Structure set forth in the Engagement Agreement is reasonable under section 328(a) of the Bankruptcy Code in light of: (a) the nature and scope of services to be provided by Hilco; (b) industry practice with respect to the fee structure proposed by Hilco; (c) market rates charged for comparable services both in and out of chapter 11; and (d) Hilco's substantial experience with respect to field examination, valuation, and appraisal issues.

23. Additionally, the terms of the Engagement Agreement were negotiated in good faith and at arm's length between the Debtors and Hilco and reflect the Debtors' evaluation of the value and expertise of the work to be performed by Hilco.

## II.   The Indemnification Provision Is Appropriate.

24. As discussed above, the Debtors and Hilco believe that the Indemnification Provision is customary and reasonable for similar engagements, both out of court and in chapter 11 cases, and reflects the qualifications and limitations on indemnification provisions in this district and others. *See, e.g.*, *In re Franchise Group, Inc.*, (Bankr. D. Del. Dec. 16, 2024); *In re Express, Inc.*, (Bankr. D. Del. June 5, 2024); *In re WeWork, Inc.*, (Bankr. D.N.J. Feb. 22, 2024); *In re Cyxtera Techs., Inc.*, (Bankr. D.N.J. July 18, 2023); *In re Bed Bath & Beyond Inc.*, (Bankr. D.N.J. June 1, 2023); *In re David's Bridal, LLC*, (Bankr. D.N.J. June 1, 2023); *In re Town Sports Int'l, LLC*, (Bankr. D. Del. Oct. 13, 2020).[8]

25. In light of the foregoing, and given the numerous case-specific issues that Hilco might address in performing the Services under the Engagement Agreement, Hilco's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the

---

[8] Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request of the Debtors' counsel.

market prices for Hilco's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Agreement—including the Indemnification Provision—are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

**III.    Waiver of Certain Timekeeping Requirements Is Appropriate.**

26.    Because Hilco's compensation is based on a flat fee, requiring Hilco to maintain and file detailed time records and periodic fee applications in accordance with sections 330 and 331 of the Bankruptcy Code, and in compliance with Bankruptcy Rule 2016 and the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective As of November 1, 2013*, is unnecessary under the circumstances.

27.    As described above, Hilco seeks retention under sections 327(a) and 328(a) of the Bankruptcy Code and will be employed by the Debtors to perform a highly-specialized and discrete task and, accordingly, will not be compensated based upon time and effort expended. Instead, Hilco will receive compensation as a flat fee for delivery of the Report. The Debtors further acknowledge and agree that the ultimate benefit to the Debtors from Hilco's Services likely could not be measured merely by reference to the number of hours to be expended by the Hilco professionals in the performance of such Services. Accordingly, the Debtors request that Hilco be relieved of the requirement to maintain detailed time records or file interim fee applications.

28.    As set forth in the Kaup Declaration, it is standard practice for professionals providing services relating to field examination and appraisal services on a flat-fee basis, rather than on an incremental basis, for such services. Hilco does not otherwise maintain detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis. As such, the Debtors seek relief from having Hilco maintain time

records or file interim fee applications pursuant to Bankruptcy Rule 2016; *provided* that Hilco will file a final fee application with a summary of fees earned and expenses incurred along with a summary of what fees and expenses have been paid. In addition, Hilco will submit invoices to the Debtors, counsel for Debtors, the U.S. Trustee, and counsel to the Creditors' Committee for the payment of compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the terms of the Engagement Agreement when such compensation becomes due and owing and such expenses are incurred. Such parties shall have 14 days to review and dispute any such invoice submitted by Hilco, and if no such disputes are received, without any further order of the Court, the Debtors shall be authorized to pay such Hilco invoices. If an objection is received, the Debtors shall withhold the payment of the portion of the fee that is objected to and promptly pay the remainder. All objections that are not resolved shall be preserved and presented to the Court for determination. Such procedures have been approved between debtors and Hilco by courts in the past. *See, e.g.*, *In re Franchise Group, Inc.*, (Bankr. D. Del. Dec. 16, 2024); *In re Youfit Health Clubs, LLC*, No. 20-12841 (MFW) (Bankr. D. Del. Dec. 3, 2020*); In re RTI Holding Co.*, No. 20-12456 (JTD) (Bankr. D. Del. Nov. 4, 2020); *In re Town Sports Int'l, LLC*, (Bankr. D. Del. Oct. 13, 2020).[9]

29. The proposed arrangement will provide the Court and other parties in interest with sufficient information to monitor the amount and types of services rendered to the Debtors by Hilco and is necessary, and in the best interests of the Debtors, their creditors, and their estates.

---

[9] Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request of the Debtors' counsel.

**IV.     The Retention of Hilco Is Critical to the Debtors' Chapter 11 Efforts.**

30.    The Debtors submit that the retention of Hilco is in the best interests of all parties in interest in these chapter 11 cases.  As set forth above, Hilco has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  Moreover, denial of the relief requested herein will deprive the Debtors from timely receiving the Report, which is necessary for the Debtors to obtain exit financing and successfully restructure its businesses.  If the Debtors were forced to engage an alternative field examiner, such change would mandate the commitment of significant resources to educate a replacement, causing significant delay in these chapter 11 cases and increased cost due to such replacement.  Based on services performed to date, Hilco is integral to the success of the Debtors' chapter 11 cases.

31.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of the Proposed Order authorizing the Debtors to retain and employ Hilco in these chapter 11 cases on the terms described herein and in the Engagement Agreement.

**Notice**

32.    The Debtors will provide notice of this Application to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the Creditors' Committee; (c) counsel to the ABL Lenders; (d) counsel to the Ad Hoc Group of First Lien Lenders; (e) counsel to the Second Lien Term Loan Lenders; (f) counsel to the HoldCo Lenders; (g) counsel to the DIP Agent; (h) counsel to the DIP Lenders; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: March 11, 2025  
      Delaware, Ohio

*/s/ David Orlofsky*  
David Orlofsky  
Chief Restructuring Officer