UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>Jointly Administered<br><br>RE: D.I. 1059 |

**THE SETTLEMENT-RELATED LIQUIDATING TRUST 2022-23'S (I) MOTION PURSUANT TO RULE 3018(A) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR TEMPORARY ALLOWANCE OF CLAIMS FOR PURPOSES OF VOTING TO ACCEPT OR REJECT PLAN; AND (II) RESPONSE TO FIRST OMNIBUS (NON-SUBSTANTIVE) OBJECTION OF THE AD HOC GROUP OF FREEDOM LENDERS TO CERTAIN CLAIMS FILED AGAINST THE HOLDCO DEBTORS**

The Settlement-Related Liquidating Trust 2022-23 (the "Prophecy Trust"), by and through its undersigned counsel, hereby submits this motion for temporary allowance of certain of its claims for purposes of voting to accept or reject the Debtors' proposed chapter 11 plan, pursuant to Fed. R. Bankr. P. 3018(a), and response to the first omnibus objection to claims filed by the Ad

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

1

Hoc Group of Freedom Lenders (the "Motion and Response"). In support of the Motion and Response, the Prophecy Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1. In a transparent attempt to strengthen their negotiating position in these bankruptcy cases and disenfranchise all other creditors of certain "Holdco Debtors[2]," the Ad Hoc Group of Freedom Lenders (the "Freedom Lender Group") has filed a conclusory omnibus objection to all other claims filed against the Holdco Debtors.

2. Under the Solicitation and Voting Procedures approved by this Court in the Disclosure Statement Order, Ballots cast by alleged Claim Holders who have timely filed Proofs of Claim, but whose Claims against the Debtors are the subject of a Claim objection filed by March 6, 2025, will not be counted for voting purposes.[3] Parties that wish to have such Claims estimated for voting purposes may file motions under Fed. R. Bankr. P. 3018(a) seeking temporarily allowance of such Claim for purposes of voting on the Plan on or before March 13, 2025.[4]

3. Bankruptcy Rule 3018(a) expressly permits estimation of claims for plan voting purposes and provides that "[n]otwithstanding [an] objection to a claim or interest, the court after notice and hearing may temporarily allow a claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." While "neither the Bankruptcy Code nor the Bankruptcy Rules provide guidance" with respect to temporary allowance of claims for voting purposes, the touchstone of "any estimation should [be to] ensure that the voting power is

---

[2] For purposes of the Motion and Response, "Holdco Debtors" shall mean Freedom VCM, Inc. and Freedom VCM Interco, Inc.

[3] *Order (I) Approving the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation, (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures, and (IV) Granting Related Relief* [D.I. 1019], at ¶ 27(b) and (e).

[4] *Id.* at ¶ 27(c); *Debtors' Omnibus Nonsubstantive Limited Objection Solely for Voting Purposes Associated with Certain Claims* [D.I. 1060].

2

commensurate with the creditor's economic interests in the case." *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS), 2016 WL 4250681, at *3 (Bankr. D. Del. Aug. 8, 2016) (quoting *In re Quigley Co.*, 346 B.R. 647, 653-54 (Bankr. S.D.N.Y. 2006)).

4. For the reasons more fully set forth below, the Prophecy Trust respectfully submits that this Court should overrule the objection to its claims by the Freedom Lender Group and, in the meantime, accord the Prophecy Trust's Disputed Claims (as the term is defined below) full value for the amount claimed therein for voting purposes pursuant to Rule 3018(a).

## JURISDICTION AND VENUE

5. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Prophecy Trust consents, pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion and Response to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The bases for the relief requested herein are section 1126(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

8.      On November 3, 2024 (the "Petition Date"), Franchise Group, Inc. ("Franchise Group") and numerous affiliates (collectively, the "Debtors"), including the Holdco Debtors, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

9.      On November 19, 2024, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").  *See* D.I. 188.

10.     As detailed further below, the Prophecy Trust holds both equity interests in and affirmative claims against certain of the Debtors including the Holdco Debtors.

**I.      The Prophecy-Related Matters and the Prophecy Trust**

11.     Beginning in January 2015, Prophecy Trading Advisors Master Fund, LP, Prophecy Trading Advisors GP, LLC, Prophecy Trading Advisors International Ltd., Prophecy Trading Advisors, LP, Prophecy Special Opportunities Fund International Ltd., Prophecy Special Opportunities Fund, LP, Prophecy Special Ops GP, LLC, Prophecy Asset Management LP, and Prophecy Portfolio Managers LLC ("Prophecy" or, in reference collectively, "Prophecy Entities," or, in reference to the investment funds, "Prophecy Fund") began serving as investment funds for private and institutional investors.

12.     On November 2, 2023, the Securities and Exchange Commission ("SEC") filed a complaint against John Hughes ("Hughes"), the President and Chief Compliance Officer of Prophecy, charging Hughes with violating certain antifraud provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940 (the "Complaint"). The Department of Justice ("DOJ"), through the U.S. Attorney's Office for the

District of New Jersey, also announced criminal charges against Hughes stemming from the same Prophecy-related activities (the "Indictment") and that Hughes had pleaded guilty to the charges. A copy of the Indictment and the Department of Justice press release are attached hereto as Exhibit "A" and "B," respectively.

13. Brian Kahn, the founder of Franchise Group, Inc., who has been its principal shareholder since its founding and served as Chief Executive Officer until January 2024, was one of two unindicted co-conspirators referred to often in both the Complaint and the Indictment for his alleged involvement in years of fraudulent activities, including the concealment of the Prophecy Fund's losses of hundreds of millions of dollars belonging to the Prophecy investors. *See,* Exhibit A, page 9. The Prophecy Trust was established for the benefit of such investors.

14. The fraud at Prophecy, as outlined in the Indictment, corresponded to a time period during which Kahn was the CEO of the Debtors, exercising complete control over them.

15. In January 2024, as a result of the fallout from the public release of the Complaint and Indictment, Kahn resigned from his roles as: (i) a member of the Boards of Directors of Franchise Group, Inc. and Freedom VCM Holdings, LLC ("Freedom Topco") and (ii) Chief Executive Officer of Franchise Group, and he also relinquished certain governance rights.[5]

16. After Mr. Kahn's departure from his position as Chief Executive Officer, the Debtors elevated Andrew Laurence, a friend and business partner of Mr. Kahn, to the role. Specifically, Mr. Laurence was, during the perpetration of fraud at Prophecy and at all relevant times prior to his promotion with the Debtors, Kahn's partner at Vintage Capital Management—a Kahn-affiliated entity that is accused of wrongdoing with regard to Prophecy.

---

[5] Supplemental Declaration of Matthew A. Feldman in Further Support of Debtors' Application for Order Authorizing the Retention and Employment of Willkie Farr & Gallagher LLP as Co-Counsel for the Debtors, *Nunc Pro Tunc* to the Petition Date [D.I. 889], at ¶ 45.

## II. The Prophecy Trust's Claims and Interests Against the Debtors

17. The Prophecy Trust holds general unsecured claims against the Holdco Debtors as follows:[6]

   a. A claim that could be in excess of $300 million, for cash that is believed to have been diverted from the Prophecy Funds and used by Brian Kahn to leverage and grow the Debtors through the purchase of various retail subsidiaries, including through the 2023 Take Private Transaction; and

   b. Claims arising out of Kahn's diversion of additional funds promised to, and due to Prophecy, which funds were ultimately used to satisfy Debtor-related obligations.

## III. The Objection to the Prophecy Trust's Claims

18. The Freedom Lender Group says that it holds approximately 93% of the obligations under the HoldCo Credit Agreement, the proceeds of which were used to facilitate the Debtors' August 2023 take-private transaction. *See* Claim Objection, at ¶ 2 (citing *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15] (the "First Day Declaration") ¶ 32).

19. The Freedom Lender Group has argued numerous times in pleadings and at hearings that, with regard to the Holdco Debtors, because there are no creditors aside from the Freedom Lender Group, absent a settlement between the Freedom Lender Group and the Debtors, the Debtors will not be able to confirm a plan in these Chapter 11 Cases, because they will not have consenting creditors. *See, e.g.*, *Objection of the Ad Hoc Group of Freedom Lenders to Debtors' Disclosure Statement Motion* [D.I. 686], at ¶ 1 ("The lack of an impaired accepting class

---

[6] The Prophecy Trust holds similar claims against most of the of the Opco and Holdco Debtors, and understands that despite the duplicity of claims, it is entitled to a single recovery. The Disputed Claims are the only two, out of approximately 50, to which an objection has been filed.

6

at the HoldCo Debtors makes the OpCo 1L Group Plan unconfirmable under section 1129(a)(10) of the Bankruptcy Code.").[7] However (and somewhat ironically since the Freedom Lender group is also focused on Brian Kahn's conduct), the Freedom Lender Group forgot about Mr. Kahn's fraud and the claims arising out of the same.

20. Once faced with claims the group convinced itself did not exist, the Freedom Lender Group filed the *First Omnibus (Non-Substantive) Objection of the Ad Hoc Group of Freedom Lenders to Certain Claims Filed Against the Holdco Debtors* [D.I. 1059] (the "Claim Objection"), objecting to all of the unsecured claims filed against the Holdco Debtors. As against the Prophecy Trust, the Freedom Lender Group specifically (and only) objected to the following: (i) Claim No. 1333 against Freedom VCM, Inc.; and (ii) Claim No. 1327 against Freedom VCM Interco, Inc (i.e., the "Disputed Claims").

21. In its Claim Objection, the Freedom Lender Group argues that the Disputed Claims should be disallowed because: (i) the factual recitation in the Indictment does not specifically "identify or relate to the Holdco Debtors"; (ii) "[a]ll of the factual allegations in the indictment relate to events that occurred before the HoldCo Debtors came into existence"; and (iii) "the Prophecy claims are not identified in the HoldCo Debtor Schedules." Claim Objection, at ¶ 9.[8]

22. With respect to the Disputed Claims, the Freedom Lender Group further argues that the Disputed Claims do not have a basis in the relevant debtors' books and records and that the filed proofs of claim and the basis for such claims stated therein are insufficient to constitute prima

---

[7] *See also Motion of the Ad Hoc Group of Freedom Lenders for Entry of an Order (I) Terminating Exclusivity in the Holdco Debtors' Cases, (II) Lifting the Automatic Stay in the Holdco Debtors' Cases, or (III) Appointing a Chapter 11 Trustee for the Holdco Debtors* [D.I. 192], at ¶ 32 ("The HoldCo Debtors have one class of known creditors. No others have been disclosed. Therefore, there will only be one impaired class who can vote. The members of the Freedom Lenders Group will not vote in favor of the Proposed HoldCo Plan, and because they own approximately 93% of the principal amount due on the HoldCo Loans, their rejecting vote will carry the class.").

[8] The Prophecy Trust also questions whether the Disputed Claims are appropriately included in a summary omnibus objection, but foregoes that point for purposes of efficiency in addressing these issues.

7

facie evidence of the validity and amount of the claim under Fed. R. Bankr. P. 3001(f).  *See* Claim Objection, Schedule 1.  Alternatively, the Freedom Lender Group insist that the Prophecy Trust only holds these Disputed Claims against other Debtors.

## ARGUMENT

23. This Court should overrule the Claim Objection as to the Disputed Claims, because the Prophecy Trust's filed Claims are sufficient to constitute prima facie evidence of their validity and because the Freedom Lender Group has failed to meet its burden to overcome the presumption of the prima facie validity of the Disputed Claims.

24. Pending a ruling on the Claim Objection, this Court should grant the Prophecy Trust's motion, pursuant to Rule 3018(a), to approve the Prophecy Trusts' Disputed Claims for purposes of voting.

### I.     The Court Should Overrule the Claim Objection.

25. Pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "A proof of claim executed and filed in accordance with these rules [i.e. the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim."  This is not a high bar for a creditor to meet.  Simple compliance with the Bankruptcy Rules is the only requirement.  See, e.g., In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.").

26. As this Court has previously explained, the standard that a claimant must meet under Bankruptcy Rule 3001(f) may be even lower than the standard applicable under Federal Rule of Civil procedure 12(b)(6):

> In determining whether a proof of claim contains sufficient allegations, a reviewing court will assume the allegations are true and ask whether the facts establish the necessary elements of a claim.  At first blush, this standard sounds like the same

8

> pleading standard that courts apply when reviewing a Rule 12(b) motion to dismiss. Several courts suggest, however, that the proof of claim pleading standard is a "relatively low threshold" that is less burdensome than the federal civil pleading standard. As one court stated, "[a]s long as [a proof of claim provides] fair notice ... and the court can glean an actionable claim from the complaint, the court must entertain the party's case.

In re F-Squared Inv. Mgmt., LLC, 546 B.R. 538, 543–44 (Bankr. D. Del. 2016) (citations omitted).

27. Once a claim is subject to a properly filed and supported objection, the burden shifts. As this Court has explained, "Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure (i.e., includes the facts and documents necessary to support the claim), constitutes prima facie evidence of the validity and amount of the claim. The claim objector must then produce evidence that, 'if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.' At that point, the burden shifts back to the claim holder to prove the validity of the claim by a preponderance of the evidence." In re Revelle, No. 17-11682 (BLS), 2021 WL 3669358, at *2 (Bankr. D. Del. Aug. 18, 2021).

28. The Prophecy Trust has more than met its initial burden under Rule 3001(f) through its attachment of a federal complaint and indictment submitted by the DOJ and agreed to by the indicted defendant under oath before a federal district court. *See, e.g., Allegheny Int'l*, 954 F.2d at 173 ("Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.") (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991); L. King, Collier on Bankruptcy § 502.02, at 502–22 (15th ed. 1991)). As such, its Disputed Claims are prima facie valid.

29. In objecting to the Disputed Claims, the Freedom Lender Group has failed to meet its burden for challenging the Prophecy Trust's prima facie valid Claims. They have not refuted

any of the allegations underlying the Disputed Claims, let alone any allegations that are essential to the legal sufficiency of such Claims. Rather, the Freedom Lender Group simply ignored the factual basis set out with the Disputed Claims. It is also irrelevant that the Holdco Debtors did not schedule the Disputed Claims or otherwise have books and records evidencing the Disputed Claims, as claims such as these rarely are listed in books and records.[9] It is likewise irrelevant to the validity of the Disputed Claims that the Indictment—which contains extensive factual bases for the Disputed Claims but ultimately relates to an indictment of parties other than the Holdco Debtors—does not reference the Holdco Debtors as its connection to FRG is obvious on its face (*See,* Brian Kahn).

30.     In fact, the only real challenge the Freedom Lender Group has made to the Disputed Claims is based on the fact that the Disputed Claims stem from actions pre-dating the formation of the Holdco Debtors. However, that argument fails because there is no law or other action under which the 2023 Take Private Transaction somehow cleansed any of the newly borne entities from claims against their predecessors.

31.     Even if the Freedom Lender Group had refuted any allegations essential to the Disputed Claims, if the burden were to shift back to the Prophecy Trust to prove the validity of the Disputed Claims by a preponderance of the evidence, the uncontroverted facts underlying the Disputed Claims, the alleged fraud perpetrated by Brian Kahn, and the formation of the Holdco Debtors as an outgrowth of such fraud are sufficient to prove the validity of the Disputed Claims by a preponderance of the evidence.[10]

---

[9] It is highly unusual to find claims of fraud, breach of fiduciary duty and other torts on the books of records of any debtor (absent the commencement of litigation), especially when the basis of the claims is the acts of the companies' former CEO.

[10] The Affidavit of Andrew Zatz must be disregarded in its entirety. Mr. Zatz has no personal knowledge about the issues that underlie the Disputed Claims and his "rah-rah" affidavit that simply states that the omnibus objection the affiant and his law firm prepared is correct, serves no purpose and does not factually support any basis for an objection to the Disputed Claims.

32. For these reasons, the Court should overrule the Claim Objection.

**II. The Court Should Allow the Disputed Claims for Purposes of Voting.**

33. Only holders of allowed claims or interests are permitted to vote to accept or reject a chapter 11 plan. 11 U.S.C. § 1126. A claim represented by a timely and properly filed proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Thus, once a party in interest objects to a filed claim, the holder of that claim is not entitled to vote on a chapter 11 plan while the objection is pending. *See* 11 U.S.C. § 1126.

34. Where a claim is not yet allowed (due a pending objection or otherwise), Bankruptcy Courts nevertheless "may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018. The policy behind Bankruptcy Rule 3018(a) is "to prevent possible abuse by plan proponents" who attempt to ensure acceptance of a plan by strategically objecting to the claims of dissenting creditors. *In re Armstrong*, 292 B.R. 678, 686 (10th Cir. B.A.P. 2003). This is exactly such a case, as the Freedom Lender Group have objected to every other claim in their class under the proposed Plan, seeking to hijack control of the Class and, by extension, control of the confirmation proceedings. Rule 3018(a) exists to prevent such abuse of the claim objection process.

35. Moreover, given that the process of claims litigation can be lengthy and highly contested, in practice, the resolution and allowance of claims is frequently unresolved before solicitation and voting on a plan. Bankruptcy Rule 3018(a) "was designed to give all creditors, *even those holding disputed claims*, the opportunity to vote." *In re Century Glove, Inc.*, 88 B.R. 45, 46 (Bankr. D. Del. 1988) (emphasis added). It would be grossly unjust for the Prophecy Trust, or any other party whose claims will be channeled to a Trust under the Plan and subject to objections post-confirmation, to be deprived of the right to vote on the Plan that is creating the

Trust mechanism. It would be even more unjust for the Prophecy Trust to be singularly precluded from voting in connection with the Disputed Claims, merely because it had the unfortunate luck to have claims that interfere with the Freedom Lender Group's grand plans for these cases.

36. The Bankruptcy Court's decision to allow a claim temporarily for voting purposes is discretionary and flexible. *See In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 774 (Bankr. S.D.N.Y. 1996). Bankruptcy Courts also have flexibility to "employ whatever method is best suited to the circumstances of the case" when determining whether and in what amount to allow a claim for voting purposes. *Id.* at 775; *see also In re Frascella Enterprises, Inc.*, 360 B.R. 435, 458 (Bankr. E.D. Pa. 2007). Rule 3018(a) contemplates only a summary estimation proceeding, not a full trial on the merits of the claim. *See, e.g., In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994); In re Zolner, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994).

37. Although the Bankruptcy Code and the Bankruptcy Rules provide no guidance as to how a court should calculate a claim for voting purposes, courts have held that the calculation "should ensure that the voting power is commensurate with the creditor's economic interests in the case." *In re Quigley Co.*, 346 B.R. 647, 654 (Bankr. S.D.N.Y. 2006).

38. When determining whether to temporarily allow a claim, courts may look to (1) the debtor's scheduling of the claim, (2) the proof of claim filed, and (3) the debtor's objection, to determine parties' expectations regarding the amount and nature of the claim to be voted. *In re Stone Hedge Props.*, 191 B.R. 59, 65 (Bankr. M.D. Pa. 1995).

39. Calculation of a claim under Bankruptcy Rule 3018(a), however, is not determinative of or preclusive upon the ultimate validity or amount of the claim or any causes of action before a non-bankruptcy court. *See Quigley*, 346 B.R. at 654.

40. Under the circumstances present here, the Court should exercise its discretion to temporarily allow the Disputed Claims for purposes of voting on the Plan. Allowing the Prophecy Trust to vote the full face value of its Disputed Claims on the Plan comports with the spirit of the Bankruptcy Code as it encourages creditor voting and participation in the reorganization process. *In re Amarex Inc.*, 61 B.R. 301, 303 (Bankr. W.D. Okla. 1985) ("[T]o allow [the disputed claims] to vote on the plans, even though some may be eventually disallowed for purposes of distribution, is more in keeping with the spirit of Chapter 11 which encourages creditor vote and participation in the reorganization process").

41. Moreover, the Disputed Claims are represented by duly and timely filed proofs of claim annexing an addendum setting forth in detail the bases for the Claims. And while it is true that the Debtors may not have scheduled any of the Prophecy Trust's Claims, the Debtors have neither objected to the Prophecy Trust's Claims generally, nor sought to reduce the value of such Claims for voting purposes. *See Debtors' Omnibus Nonsubstantive Limited Objection Solely for Voting Purposes Associated with Certain Claims* [D.I. 1060] (seeking to modify or reduce certain enumerated disputed claims—none of which belong to the Prophecy Trust—solely for purposes of voting to accept or reject the Plan). The Prophecy Trust's Disputed Claims are entitled to temporary allowance for purposes of voting on the Plan.

42. Moreover, the Freedom Lender Group should not be able to succeed in manipulating the claims objection process simply because the Disputed Claims pose an inconvenience to them. In order to avoid such an unjust outcome that Rule 3018 was specifically enacted to prevent, the Court should temporarily allow the Disputed Claims for purposes of voting on the Plan in such amount as the Court determines, in its sound discretion, is appropriate to ensure

that the Prophecy Trust's voting power is commensurate with its economic interests in the case. *See Quigley*, 346 B.R. at 654.

## RESERVATION OF RIGHTS

43. The Prophecy Trust reserves the right to supplement its response to the Claim Objection prior to March 27, 2025, the current expiration of the response period, or any later date for responding to the Claim Objection agreed upon by Freedom Lender Group and the Prophecy Trust or ordered by the Court.

## NO PRIOR REQUEST

44. No prior request for relief sought in this Objection has been made to this or any other court.

## NOTICE

45. Notice of this Motion and Response will be given to (a) the Debtors; (b) the Official Committee of Unsecured Creditors; (c) the Office of the United States trustee for the District of Delaware; (d) the Ad Hoc Group of Freedom Lenders; and (e) all parties entitled to notice pursuant to Local Rule 2002-1(b). The Prophecy Trust submits that no other or further notice is required.

**CONCLUSION**

47. For the reasons set forth above, the Prophecy Trust respectfully requests for this Court to overrule the Claim Objection or, pending resolution of the Claim Objection, Allow the Disputed Claims for purposes of voting on the Plan.

| | |
|---|---|
| Dated: March 13, 2025<br>Wilmington, Delaware | **COZEN O'CONNOR**<br><br>/s/ *Marla S. Benedek*<br>Marla S. Benedek (No. 6638)<br>Kaan Ekiner (No. 5607)<br>1201 North Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone: (302) 295-2000<br>Email: mbenedek@cozen.com<br>Email: kekiner@cozen.com<br><br>-and-<br><br>Brian L. Shaw<br>Cozen O'Connor<br>123 North Wacker Drive, Suite 1800<br>Chicago, IL 60606<br>Telephone: (312) 382-3100<br>Email: bshaw@cozen.com<br><br>*Counsel to the Settlement-related Liquidating Trust 2022-23* |