Lisa S. Bonsall – 044381988
John Stoelker – 032502011
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
*Attorneys for Plaintiff*

FILED
May 13, 2024
Mary K. Costello, P.J. Ch.

| | |
|---|---|
| DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE, ON BEHALF OF THE BENEFIT OF THE REGISTERED HOLDERS OF CITIGROUP COMMERCIAL MORTGAGE SECURITIES INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2015-GC29,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>400 SUCCESS, LLC,<br><br>　　　　　　Defendant. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION:<br>HUDSON COUNTY<br>Docket No. SWC-F-4068-24<br><br>Civil Action<br><br><br>**CONSENT ORDER FOR APPOINTMENT OF RENT RECEIVER** |

THIS MATTER having been opened to the Court by the filing of a Verified Complaint by McCarter & English, LLP, attorneys for Plaintiff Deutsche Bank Trust Company Americas, as Trustee, on behalf of the registered holders of Citigroup Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, Series 2015-GC29 ("Lender"), by and through Midland Loan Services, a division of PNC Bank N.A., as Special Servicer ("Plaintiff"); and the complaint having been served upon Defendant 400 Success, LLC ("Borrower"); and the parties having reached a settlement of the matter and for good and sufficient cause shown:

IT IS, on this 13th day of May, 2024

ORDERED that:

ME1 47921722v.2

1. During the pendency of this action or until entry of an order terminating the receiver, whichever is earlier, effective on the date of this Order, CBRE, Inc. shall be and hereby is appointed receiver (the "Receiver") to take charge of the mortgaged premises that is the subject of this foreclosure action, commonly known as 400 Plaza Drive, Secaucus, New Jersey, Block 227, Lot 7.02 on the tax map of the Town of Secaucus and more particularly described on <u>Exhibit A</u> attached hereto (the "Mortgaged Premises"), and to manage same, and to demand, collect and receive from the tenants in possession of the Mortgaged Premises or any portion thereof, or any person liable therefor, all the rents, issues, revenues and profits related to the Mortgaged Premises that are now due and unpaid or hereafter to become due (the "Rents"); and that the Receiver shall be and hereby is authorized to institute and carry on all legal proceedings necessary for the protection of the Mortgaged Premises or to recover possession of the whole or any part thereof, and to institute, intervene and/or prosecute actions for the collection of the Rents and/or recovery of revenues and profits generated by the Mortgaged Premises and institute summary proceedings for the removal of any tenant or tenants, all in accordance with the terms and provisions of this Consent Order. The Receiver shall have full power to hold, rent, lease, manage, maintain, operate, preserve, protect, market, and otherwise use or permit the use of the Mortgaged Premises.

2. Defendant, its members, partners, agents, servants, representatives and employees, or any party in possession thereof, shall immediately turn over to the Receiver all of the monies now on deposit with them as rent security or utility deposits, including all monies reflected on the March 2024 Security Deposit Ledger provided to Lender by CBRE, Inc. (totaling $92,263.08 in the aggregate) and any security deposit received by Borrower from the State of New Jersey pursuant to that certain Interim Rental Agreement No. 47733, to be held by the Receiver in a separate account in a bank insured by the FDIC, pursuant to the terms and provisions of the lease

ME1 47921722v.2

agreements entered into by the tenants who made such deposits and applicable law. Regarding future lease security deposits, the Receiver shall ensure that any future lease security deposits be held in this separate account opened by the Receiver using the Borrower's Tax Identification Number in a bank insured by the FDIC.

3. Defendant, its members, partners, agents, servants, representatives and employees, or any party in possession thereof, shall immediately, but in any event within five (5) business days of the date hereof, turn over all of the monies now on deposit in any operating accounts, and all Rents collected or held by them, to be used by the Receiver at its discretion for the payment of operating expenses, and which funds are to be held by the Receiver in an account in a bank insured by the FDIC, which account shall be established under the federal taxpayer identification number of Defendant Borrower; however, the foregoing provision shall not constitute a determination as to the ownership of or entitlement to the Rents. The Receiver shall forthwith deposit all moneys received by it at the time it receives the same in a segregated account in a bank insured by the FDIC using the Defendant's Tax Identification Number (the "Operating Account"), and no withdrawals shall be made therefrom except as directed by the Court, or pursuant to this Consent Order, or on a draft or check signed by the Receiver in accordance with the terms of this Consent Order; and the depository at which the Operating Account is held shall send monthly statements of deposits in and withdrawals from the Operating Account, and any other accounts opened in accordance with this Consent Order, to the Receiver, who shall forthwith provide a copy of same to Plaintiff and Defendant; and that the Receiver, after paying the current expenses of the management and care of the Mortgaged Premises, as provided herein, shall retain an aggregate of $5,000 from the moneys which may come into its hands from time to time in the Operating Account and shall remit the balance on the twentieth (20th) of each month to a separate, segregated

account in a bank insured by the FDIC (the "Collateral Account"; together with the Operating Account, the "Accounts") on a monthly basis to be held by the Receiver for the benefit of the Plaintiff. Within five (5) business days of written request by Plaintiff, the Receiver shall disburse to Plaintiff all of the funds in the Collateral Account, or such portion of the funds as is requested by Plaintiff, to be applied to the indebtedness owed under the loan documents. No withdrawals may be made from the Collateral Account other than as expressly provided for by this Consent Order or as directed by an Order of the Court.

4. The Accounts, and all other accounts authorized under this Order may, at the Receiver's election, be established under the federal taxpayer identification number of Defendant Borrower, which shall provide its federal taxpayer identification number for such purpose.

5. In the event the Receiver's cash on hand in the Operating Account is insufficient to enable it to carry out its duties as provided herein, then in such event the Receiver will notify Plaintiff and Plaintiff's counsel in writing of such needed funds along with such supporting documents as the Plaintiff may require to review the Receiver's request, and the Plaintiff may, in its sole and absolute discretion, advance to the Receiver such funds, authorize the use of all or a portion of the funds held in the Collateral Account, or promptly inform the Receiver in writing as to the reasons for withholding such funds. In no event shall the Receiver be obligated to advance any funds to pay any expense or maintenance or other liability of the Mortgaged Premises.

6. The Receiver shall provide to the Plaintiff and counsel for Defendant: (i) the information specified in <u>Exhibit B</u> by no later than the twentieth (20th) of the following month, or annually by March 1 of the following year (as the case may be); and (ii) a budget for the operation of the Mortgaged Premises within thirty (30) days of the date hereof, and thereafter annually by November 1st of each year for the upcoming year.

7. The Receiver is hereby authorized:

(a) to rent or lease any part of the Mortgaged Premises and to enter into other listing agreements for the Mortgaged Premises, provided however, that such leases and listing agreements shall be subject to the prior written approval of Plaintiff. The Receiver is also authorized to utilize its Brokerage Services division as exclusive leasing agent to procure tenants for the Mortgaged Premises in accordance with the terms of its Exclusive Leasing Listing Agreement and to pay commission in accordance with the said agreement without further Court order, subject to Plaintiff's approval of leasing commissions and review of leases as otherwise required under the existing loan documents;

(b) to engage CBRE, Inc. as property manager for the Mortgaged Premises, in accordance with the compensation terms set forth in paragraph 10 hereof. The Receiver is authorized to continue managing the Mortgaged Premises in accordance with the terms of its management agreement and to pay management fees in accordance with the terms hereof without further Court order;

(c) to pay the following from the Operating Account: (i) taxes, including past due taxes to the extent sufficient Rents are collected, municipal assessments and water and sewer charges due thereon; *provided, however*, that Plaintiff shall be authorized to advance funds to pay such taxes and charges directly, as provided under the Loan Document, and the Receiver shall communicate with Plaintiff prior to paying taxes to ensure no double-payment occurs; (ii) all ordinary and necessary and non-recurring costs of operating the Mortgaged Premises up to $10,000 without the prior approval of Plaintiff; and (iii) to the extent any expense exceeds $10,000, the Receiver shall procure bids for review and approval by Plaintiff;

(d) to retain independent legal counsel to assist the Receiver in carrying out its

ME1 47921722v.2

duties as set forth in this Consent Order, provided however, that the selection of counsel and the terms under which such counsel is retained shall be subject to the Plaintiff's approval. Legal fees and costs incurred by the Receiver in performance of its duties shall be as expense of the Mortgaged Premises, provided, however, that Borrower reserves any right(s) it may have to challenge same;

    (e) in the event of an emergency the nature of which renders it impossible or impracticable to provide prior notice and consent, to expend such funds as are necessary to protect the Mortgaged Premises from the Receiver's cash on hand in the Operating Account, provided notice shall be provided to Plaintiff within twenty-four (24) hours, or as soon as possible in light of the nature of the emergency;

    (f) to procure utility accounts in the name of the Receiver; and

    (g) otherwise to do all things necessary for the due care and proper management of the Mortgaged Premises.

Notwithstanding any of the foregoing, the past due and overdue bills and expenses of the Mortgaged Premises as of the date hereof, if any, shall not be the responsibility of the Receiver and may not be paid by the Receiver without the approval of Plaintiff.

  8. The Receiver is authorized, without further approval of the Court, to evaluate the market value of the Mortgaged Premises, list the Mortgaged Premises for sale, conduct a private sale and take all necessary steps to market and sell the Mortgaged Premises, which sale is subject to approval by Plaintiff and confirmation by the Court in accordance with the procedures set forth in Rule 4:65-6.

  9. Regarding insurance for the Mortgaged Premises, either (i) immediately, but in any event within five (5) business days of the date hereof,  Defendant Borrower shall add the Receiver

6

as an additional insured and/or loss payee; or (ii) the Receiver is authorized to determine whether adequate insurance is in place, and if not, to order and pay for such insurance from available funds in the Operating Account; provided that such insurance shall, at a minimum comply with the loan documents.  The Receiver shall be the named insured or be an added named insured.  Plaintiff shall be named as additional named insureds on all such insurance policies.  The Receiver is authorized in its discretion to terminate any existing policies and to procure policies of insurance as are customary for similarly situated properties and as it deems necessary as expense of the Mortgaged Premises.  Any refund or return of an unearned premium shall be paid to the Receiver and be property of receivership estate.  No insurance company shall be permitted to terminate coverage or refuse coverage for the Mortgaged Premises based upon prior unpaid premiums, claims history or because of the appointment of the Receiver pursuant to this Consent Order.  No insurance company may cancel its existing current-paid policy as a result of the appointment of the Receiver, without prior order of this Court.

10. Plaintiff and the Receiver have agreed that Receiver shall be compensated at the rate of $5,300 per month, which amount shall include all fees and compensation for receivership and property management services rendered by CBRE, Inc.

11. Defendant Borrower and its members, agents, servants and employees, or any party in possession thereof, shall, within ten (10) days of the date of this Consent Order, deliver to the Receiver any and all papers and other things affecting the rental or other operation of the Mortgaged Premises or any part or parts thereof that they may have in their possession, including, but not limited to, the following:

    (a) all keys to entrance doors, storage and boiler rooms, etc. of the Mortgaged Premises, including any and all security codes for the Mortgaged Premises;

    (b) all leases or amendments thereto in effect for the tenants and equipment at the Mortgaged Premises, including the ground lease and the calculation of

additional rent charges;

(c) copies of all current rent rolls and tenancy lists relating to the Mortgaged Premises;

(d) a list of any proceedings in any court regarding or relating to leases on the Mortgaged Premises, and copies of any court stipulations for payment for rent or arrearages;

(e) a reconciliation of all security deposits and accounts, and a list setting forth each account number and the name of the depository wherein each account is maintained;

(f) copies of all current financial statements, including, but not limited to, all documentation concerning delinquent tenants at the Mortgaged Premises, operating and capital budgets;

(g) the names and account numbers of all utility companies servicing the Mortgaged Premises, including any deposits posted with utility companies;

(h) all documents containing references to all utility accounts including, but not limited to, electricity, gas, heat, water and telephone service;

(i) copies of all insurance policies in effect for the Mortgaged Premises and any part thereof;

(j) copies of all contracts relating in any way to the Mortgaged Premises, including, but not limited to, contracts with vendors or other service personnel;

(k) a list of suppliers and copies of all contracts currently in force, including service and vendor contracts;

(l) copies of bids for work at the Mortgaged Premises, including bids that are pending or that have been officially engaged;

(m) an employee roster and payroll information;

(n) an equipment and inventory list;

(o) information on pending litigations in any way connected with the Mortgaged Premises;

(p) tax appeals for the Mortgaged Premises;

(q) lease negotiations with tenants of the Mortgaged Premises occurring anytime on or after January 1, 2020 through the present;

(r) building/constructions plans;

8

 (s)  the federal taxpayer identification number of Defendant Borrower; and

 (t)  such other items, records, or documents that the Receiver may reasonably require to lease, manage and maintain the Mortgaged Premises.

12. Defendant furthermore agrees to cooperate in all respects with the Receiver in order to enable the Receiver to collect the Rents and otherwise operate the Mortgaged Premises. Notwithstanding anything to the contrary herein, Defendant shall not be held liable for any acts or omissions of the Receiver, unless such liability arises from acts or omissions of Defendant's conduct.

13. The tenants or other persons in possession of the Mortgaged Premises shall attorn to the Receiver and pay over to the Receiver, within three (3) days of this Consent Order, all Rents due and unpaid or hereafter to become due and unpaid, and said tenants or other persons in possession of the Mortgaged Premises are hereby enjoined and restrained from paying such Rents to Defendant, its members, partners, agents, servants, representatives and employees.

14. Defendant Borrower and its members, partners, agents, servants, representatives and employees are hereby enjoined and restrained from collecting the Rents and from interfering in any manner with the Mortgaged Premises or its possession by the Receiver, including leasing the Mortgaged Premises, or amending, extending or terminating any existing leases for the Mortgaged Premises.  In the event Borrower or any of its members, partners, agents, servants, representatives or employees receives any funds from tenants, or funds otherwise belonging to Borrower, such funds shall immediately be turned over and delivered to the Receiver.

15. All persons now or hereafter in possession of the Mortgaged Premises, or any part thereof, and not holding such possession under valid and existing leases or tenancies, shall forthwith surrender such possession to the Receiver.

16. Without limiting any other rights or immunities the Receiver may have at law or

ME1 47921722v.2

in equity, the Receiver shall have no liability for acts or omissions made by or on behalf of it in its capacity as the Receiver of the Mortgaged Premises, so long as such acts and omissions are made in good faith and without gross negligence.

17. Receiver shall not be responsible for filing any federal, state or local tax returns or undertaking any federal, state or local tax filings for the Mortgaged Premises or for any parties to this action.

18. No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting the suit or action; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

19. The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of Borrower Defendant's creditors because of its duties as Receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with this state's laws.

20. The Receiver and its employees, agents, and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Court's orders.

21. The Receiver, and any party in interest hereto, at any time, on proper notice to the parties who may have appeared in this action, may apply to this Court for further or other instructions and for further powers necessary to enable the Receiver to properly fulfill its duties as Receiver.

22. Nothing in this Order precludes the Receiver from requesting permission from this Court to terminate the Court's appointment as the receiver in this case; provided, however, that Plaintiff shall have not less than 30 days' notice of the hearing on any such request.

23. Upon termination of the receivership, the Receivership shall prepare and file with this Court a final accounting of the monies collected and disbursed by it during its entire tenure as such fiduciary, which final accounting shall be based upon a detailed report of the cash flow activity of the receivership from the inception of the receivership to its termination.

24. The Receiver shall post a bond for the faithful performance of its duties as Receiver, in the amount of XXXXXXXXXXXXXXXXXXXXXXXX two months' rent, with sureties approved by this Court, which bond shall be filed with the Clerk of this Court, or in lieu of such bond, the Receiver may deposit cash in satisfaction of the requirements of the bond.

25. A copy of this Consent Order shall be served on all parties of record via eCourts.

*Mary K. Costello*
HON. Mary K. Costello, P.J. Ch.

WE HEREBY CONSENT TO THE FORM AND ENTRY OF THIS CONSENT ORDER:

**MCCARTER & ENGLISH, LLP**
Attorneys for Plaintiff,
Deutsche Bank Trust Company Americas, as Trustee, on behalf of the registered holders of Citigroup Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, Series 2015-GC29

By: _____
Lisa S. Bonsall, Esq.

Dated: April 22, 2024

**MORRISON COHEN LLP**
Attorneys for Defendant,
400 Success, LLC

By: _____
Y. David Scharf, Esq.

Dated: April 19, 2024

ME1 47921722v.2

## EXHIBIT A
(Legal Description of the Mortgaged Premises)

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Secaucus, County of Hudson, State of New Jersey.

TRACT 1

BEGINNING at a point, said point being the following seven courses from the point of intersection of the new easterly side of Harmon Meadow Boulevard with the northerly side of New Jersey State Highway Route No. #3:

1. North 56 degrees 48 minutes 02 seconds East, 119.48 feet to a point of curvature; thence

2. Along a curve to the left having a radius of 230.00 feet an arc length of 108.38 feet to a point of tangency; thence

3. North 29 degrees 48 minutes 02 seconds East, 429.78 feet to a point; thence

4. North 35 degrees 48 minutes 02 seconds East, 300.00 feet to a point; thence

5. South 54 degrees 11 minutes 58 seconds East, 80.00 feet to a point; thence

6. South 35 degrees 48 minutes 02 seconds West, 20.25 feet to a point; thence

7. South 54 degrees 11 minutes 58 seconds East, 255.78 feet to the point and place of BEGINNING and running; thence

8. North 80 degrees 48 minutes 02 seconds East, 182.54 feet to a point; thence

9. North 35 degrees 48 minutes 02 seconds East, 51.93 feet to a point; thence

10. North 80 degrees 48 minutes 02 seconds East, 265.20 feet to a point on curve; thence

11. Along a curve to the right having a radius of 125.00 feet an arc length of 54.73 feet to a point of tangency; thence

12. South 09 degrees 11 minutes 58 seconds East, 228.99 feet to a point; thence

ME1 47921722v.2

13. South 80 degrees 48 minutes 02 seconds West, 289.00 feet to a point; thence

14. North 09 degrees 11 minutes 58 seconds West, 38.02 feet to a point; thence

15. North 54 degrees 11 minutes 58 seconds West, 293.11 feet to the point and place of BEGINNING.

TRACT 2

Together with and subject to 50 Foot Wide Access Easement (known as Plaza Drive) as set forth in Deed Book 3387 Page 490.
A Restatement of Easement Agreement recorded in Deed Book 3396 Page 131.
A Second Restatement of Easement Agreement as set forth in Deed Book 3596 Page 1.
An Amendment to Second Restatement of Easement Agreement recorded in Deed Book 3824 Page 48
An Agreement Adding Property to Easement Agreement recorded in Deed Book 4667 Page 200.
A Corrected Agreement to Easement Agreement recorded in Deed Book 7488 Page 290.
An Agreement Adding Property to Easement Agreement recorded in Deed Book 8831 Page 665
Agreement Supplementing Reciprocal Construction, Operation and Easement Agreement" dated December 3, 2012 and recorded on December 18, 2012 in the Register's Office in Deed Book 8885, Page 429,
as amended by that certain instrument entitled "Addendum to Agreement Supplementing Reciprocal Construction, Operation and Easement Agreement" dated December 3, 2012 and recorded on January 24, 2013 in the Register's Office in Deed Book 8890, Page 883.

TRACT 3

Together with a Parking Structure Easement to be used in common with others located on a portion of Lot 7.29, Block 227 recorded in Deed 3730 Page 226 and together with the benefits and subject to the burdens of a Second Amendment to Declaration of Easement made between Hartz Mountain Development Corp. and Meadow Park Associates dated 4/9/87 and recorded 4/16/87 in Deed Book 3730, page 226 and Amendment to Second Amendment to Declaration of Easement dated 6/13/96 and recorded 8/29/96 in Deed Book 5035, Page 18., being more described as follows:

BEGINNING at the most westerly corner of the easement hereinafter described, said point being the following courses from the terminus of the fourth course of the original description:

   a) North 80 degrees 48 minutes 02 seconds East, 70.50 feet to a point; thence

13

ME1 47921722v.2

b) North 09 degrees 11 minutes 58 seconds West, 74.21 feet to the point and place of beginning, and running; thence

1. North 80 degrees 48 minutes 02 seconds East, 250.00 feet to a point; thence
2. South 09 degrees 11 minutes 58 seconds East, 370.00 feet to a point; thence
3. South 44 degrees 53 minutes 46 seconds West, 61.73 feet to a point; thence
4. South 80 degrees 48 minutes 02 seconds West, 200.00 feet to a point; thence
5. North 09 degrees 11 minutes 58 seconds West, 406.20 feet to the point and place of BEGINNING.

TRACT 4

Together with and subject to an access easement to be used in common with others over the roadways and driveways located within a portion of Lot 7.29, block 227 recorded in Book 7830 Page 290 and corrected in Deed Book 9009 Page 2007 being more futher described as follows:

BEGINNING at the terminus of the fifth course of the original description, and running; thence
1. South 09 degrees 11 minutes 58 seconds East, 228.00 feet to a point; thence
2. South 80 degrees 48 minutes 02 seconds West 289.00 feet to a point; thence
3. North 09 degrees 11 minutes 58 seconds West, 228.00 feet to a point; thence
4. North 80 degrees 48 minutes 02 seconds East, 289.00 feet along the sixth course of the original description to the point and place of BEGINNING.

Subject to a certain Supplemental Declaration of Rights by Hartz Mountain Development Corp. and Hartz-R7, Inc. dated as of December 3, 2012 and recorded on December 18, 2012 in Deed Book 8885 at page 462.

Together with the benefits and subject to the burdens of a certain Declaration of Service and Access Area Easements (the "Declaration") dated the 1st day of August 2014, recorded in the office of the Hudson County Register on August 8, 2014 in Book 8987 at page 809, providing, among other things, for certain easements and agreements with respect to Genova Drive.

Together with the benefits and subject to the burdens of a certain Declaration And Grant of Construction Easement Agreement dated the 1st day of August, 2014, by HARMON MEADOW PLAZA, INC., a recorded in the office of the Hudson County Register on August 8, 2014 in Book 8987 at page 890, providing, among other things for certain easements and agreements with respect to a proposed parking garage being constructed for the exclusive use of the 500 Plaza Drive premises on proposed lot 5.0307, Block 227, known as 600 Plaza Drive.

14

ME1 47921722v.2

Together with the benefits and subject to the burdens of a certain Declaration of Access Easement (the "Declaration") dated the 1st day of August 2014, by and among Harmon Meadow Plaza, Inc. recorded in the office of the Hudson County Register on August 8, 2014 in Book 8987 at page 860, providing, among other things, for certain easements and agreements with respect to Genova Drive.

Together with and Subject to Easements Agreement as set forth in Deed Book 3387 Page 540.

Together with the rights of utility companies servicing the premises.

The above description is in accordance with a survey made by Dresdner Robin, Hanson Engineering Division dated 10/06/2014 and revised 12/29/2014.

NOTE: Being Lot(s) 7.02, Block 227, Tax Map of the Town of Secaucus, County of Hudson.

NOTE: Lot and Block shown for informational purposes only.

ME1 47921722v.2

# **EXHIBIT B**
(Reporting Requirements)

The Receiver shall provide to Plaintiff and counsel for Defendant, no later than the 20th day of each month for the preceding month, beginning the month following the Receiver's appointment, a report that sets out the material details of the operation of the Mortgaged Premises, including but not limited to:

1. Statement of income and expenses for year to date, broken down by month;

2. Detailed rent roll for the Property showing the occupancy of the Mortgaged Premises;

3. An aged payables report and an aged receivables report for the Mortgaged Premises;

4. A balance sheet with current month compared to prior month;

5. All bank statements and monthly reconciliations; and

6. Such additional information or more frequent reports as Plaintiff may reasonably request.

ME1 47921722v.2