## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>**April 3, 2025, at 10:00 a.m. (ET)** |
| | **Objection Deadline:**<br>**March 27, 2025, at 4:00 p.m. (ET)** |

**MOTION OF ANDREW LAURENCE, MATTHEW AVRIL, BRIAN KAHN, CYNTHIA DUBIN, AND THOMAS HERSKOVITS FOR RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT OF DEFENSE COSTS AND OTHER LOSSES UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES**

Andrew Laurence, Matthew Avril, Brian Kahn, Cynthia Dubin, and Thomas

Herskovits (collectively, the "Movants"), current and former directors and officers of one or more

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 12371 Liberty Way, Virginia Beach, Virginia 23456.

of the above-captioned debtors and debtors in possession (the "Debtors"), by and through their

undersigned counsel, hereby file this motion (this "Motion") and respectfully state as follows:

## **RELIEF REQUESTED**

1.     Messrs. Laurence, Avril and Kahn are defendants in the action pending in

the Court of Chancery of the State of Delaware captioned as *Gale, et al. v. Vintage Cap. Mgmt.,*

*LLC, et al.*, Case No. 2024-0726-LWW (the "Delaware Litigation").   Ms. Dubin and Mr.

Herkovits, along with the other Movants, have incurred professional expenses and costs in

connection with discovery requests in the Delaware Litigation and other inquiries and

investigations relating to their roles as current and/or former directors and officers.  Pursuant to

sections 105(a) and 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), rule

4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-1 of

the Local Rules of Bankruptcy Practice and Procedures for the United States Bankruptcy Court for

the District of Delaware (the "Local Rules"), the Movants respectfully request entry of an order,

substantially in the form attached hereto as **Exhibit A**, confirming that the automatic stay does not

apply to proceeds of the Debtors' directors and officers liability insurance policies, or, in the

alternative, granting immediate relief from the automatic stay, so that the Movants may receive

payments, advances, and/or reimbursements of their defense costs and other amounts, in

connection with the Delaware Litigation or any other Loss (as defined in the D&O Policies)

incurred by the Movants, consistent with their rights under the policies.

## **JURISDICTION**

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware dated as of February 29, 2012.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). In addition, the Movants confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4.      Venue of these Chapter 11 Cases and related proceedings is proper in this district pursuant to a 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

### A. General Background

5.      On July 12, 2024, certain former stockholders of Franchise Group, Inc. (the "Chancery Plaintiffs") commenced the Delaware Litigation against the Messrs. Laurence, Avril and Kahn. The Chancery Plaintiffs assert claims for breach of fiduciary duty in connection with a 2023 take-private transaction, which the plaintiffs assert resulted in an unfair merger process that failed to properly compensate the former stockholders.

6.      On November 3, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. As of the Petition Date, the Delaware Litigation remains pending and is proceeding through discovery.

7.      On November 7, 2024, the Debtors commenced Adversary Proceeding No. 24-50237 in this Court and filed a motion for preliminary injunction [A.D.I. 4] seeking to extend the automatic stay to Mr. Laurence with respect to the Delaware Litigation. On January 7, 2025, the Court entered an order [A.D.I. 11] approving a stipulation between the Debtors and the Chancery Plaintiffs granting the preliminary injunction through March 31, 2025. As a result, the Delaware Litigation is stayed with respect to Mr. Laurence. The Delaware Litigation, however, has not been stayed as to Mr. Avril or Mr. Kahn.

8.     In addition to costs in connection with the Delaware Litigation, the Movants have incurred professional fees and expenses in connection with various formal and informal discovery requests and demands relating to their current or former roles as officers and directors, including in these chapter 11 cases.

**B.   The D&O Policies**

9.     In the ordinary course of business, the Debtors obtained directors and officers liability insurance policies to protect their directors and officers.  Specifically, the Debtors maintain a primary directors and officers liability policy and certain excess layers of D&O insurance.  The primary policy was issued by National Union Fire Insurance Company of Pittsburgh, Pa (the "Primary Insurer"), with an aggregate coverage limit of $5 million (the "Primary Policy").  A copy of the Primary Policy is attached hereto as **Exhibit B**.

10.     The excess layers of D&O insurance (collectively, the "Excess Policies", and together with the Primary Policy, the "D&O Policies") over the $5 million of coverage under the Primary Policy aggregate $30 million of additional insurance from certain insurers (collectively, with the Primary Insurer, the "D&O Insurers") for total insurance coverage provided under the D&O Policies of $35 million. The D&O Policies are detailed below:

| | Coverage | D&O Insurer(s) | Policy Number | Covered Period |
|---|---|---|---|---|
| 1 | D&O – Primary ($5,000,000) | National Union Fire Insurance Company of Pittsburgh, Pa | 01-420-28-24 | August 21, 2023 – April 30, 2025 |
| 2 | D&O – Excess ($5,000,000) | Markel American Insurance Company | MKLM1MXM001065 | August 21, 2023 – April 30, 2025 |
| 3 | D&O – Excess ($5,000,000) | Westchester Fire Insurance Company | G47420994 001 | August 21, 2023 – April 30, 2025 |
| 4 | D&O – Excess ($5,000,000) | Berkshire Hathaway Specialty Insurance Company | 47-EMC-330581-01 | August 21, 2023 – April 30, 2025 |
| 5 | D&O – Excess ($5,000,000) | Allianz Global Risks US Insurance Company | USF04502623 | August 21, 2023 – April 30, 2025 |
| 6 | D&O – Excess ($5,000,000) | Allied World Insurance Company | 0313-9683 | August 21, 2023 – April 30, 2025 |
| 7 | D&O – Excess ($5,000,000) | Endurance American Insurance Company | ADX30043459900 | August 21, 2023 – April 30, 2025 |

11.     The D&O Policies are "claims made"[2] policies.  The D&O Policies generally cover losses that directors and officers incur on account of certain claims asserted during the policy period and provide for advancement of defense costs in connection with such claims and with governmental investigations.[3]  *See generally* Ex. B, Primary Policy.  The D&O Policies ensure that directors and officers will be protected from the financial burden associated with their involvement in, and defense against, covered legal proceedings, up to the applicable limits of liability of the D&O Policies and subject to the terms, conditions, exclusions and limitations of the D&O Policies.

12.     The Primary Policy provides Side A, Side B, and Side C coverage for the "Insureds", as that term is defined in the D&O Policies. *See id.*, *Private D&O Coverage Section*, § 1.  The Insureds include (i) any "Organization," a term defined to include Freedom VCM

---

[2]     Generally, a "claims-made" policy is an agreement by the insurer to indemnify the insured against all claims made during the policy period for alleged acts committed or attempted prior to the policy expiration (or within some other specified period).

[3]     The descriptions of the D&O Policies are provided in summary format only.

Holdings, LLC[4] and its subsidiaries (the "Company"), and (ii) "Insured Persons," which include

any past, present or future directors and/or officers of the Company, including the Movants. *See*

*id.*, *General Terms and Conditions*, § 16; *id.*, *Private D&O Coverage Section*, § 14. The D&O

Policies' Side A coverage provides protection directly to directors and officers where the company

has not indemnified, or will not indemnify, the directors and/or officers.  Side B coverage allows

the Company to receive reimbursement above the Retention (as defined in the Primary Policy)

when it indemnifies a director or officer for covered Losses.  Side C coverage applies to any

covered Loss suffered by the Company. *See id.*, *Private D&O Coverage Section*, § 1.

13.    Each of the Excess Policies with Markel American Insurance Company,

Westchester Fire Insurance Company, Berkshire Hathaway Specialty Insurance Company, Allianz

Global Risks US Insurance Company and Allied World Insurance Company follow the form of

the Primary Policy. The Excess Policies with Allied World Insurance Company and Endurance

American Insurance Company (the "Side A Policies") provide **only** Side A coverage for the

Insured Persons, and the Excess Policy with Endurance American Insurance Company follows the

form of the Excess Policy with Allied World Insurance Company.

14.    Even though the Primary Policy provides Side A, Side B, and Side C

coverage, the Primary Policy includes an "Order of Payments" provision that provides that the

insurer must first provide coverage to the directors and officers under Side A and then, and only

to the extent that the policy limits have not been exhausted, to the Company under Sides B and C.

*See id.*, *Private D&O Coverage Section*, § 3.B, Endorsement No. 16.

15.    The Primary Policy further expressly provides that the "[b]ankruptcy or

insolvency of any Insured [(including the Company)] or of their estates shall not relieve the Insurer

---

[4]    The Primary Policy originally identified Franchise Group, Inc. as the "Named Entity." A subsequent endorsement
to the Primary Policy changed the Named Entity to Freedom VCM Holdings, LLC.

of any of its obligations under this policy.  In such event, the Insurer and each Insured agree to cooperate in any efforts by the Insurer or any Insured to obtain relief for the benefit of the Insured Persons [(*i.e.*, the Movants)] from any stay or injunction applicable to the distribution of the policy proceeds." *See id.*, *General Terms and Conditions*, § 12.

## **BASIS FOR RELIEF REQUESTED**

16.     The automatic stay does not apply to the proceeds of the D&O Policies because they are not property of the Debtors' estates.  Even if the Court were to find that the automatic stay does apply to the D&O Policies' proceeds, cause exists to grant the Movants relief from the automatic stay solely for the purpose of accessing the proceeds.  Therefore, the Court should grant this Motion.

### A.   **The Automatic Stay Does Not Apply.**

17.     Proceeds of the D&O Policies are not property of the estate, and, therefore, the D&O Insurers should be permitted to advance and pay defense costs and other covered Losses on behalf of the Movants.  The automatic stay prohibits "any act to obtain possession of property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a).  Section 541(a) of the Bankruptcy Code provides, in turn, that property of estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).

18.     In determining whether the automatic stay applies to proceeds of the D&O Policies, the "threshold issue" is whether those proceeds are property of the estate.  *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010); *In re World Health Alts., Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007); *In re Allied Digit. Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004).  "If the proceeds are not property of the estate, then [the provider] . . . would not be violating the automatic stay by paying the [the insured persons'] defenses costs" and other covered losses.

*Downey*, 428 B.R. at 602. Whether the policy proceeds are property of the estate, in turn, is "controlled by the language and scope of the [specific] polic[ies] at issue." *In re Allied Digit.*, 306 B.R. at 511. When a D&O policy provides direct coverage to directors and officers, the proceeds of the insurance policy are not property of the estate because the proceeds are payable to the directors and officers and not to the estate. *Id.* at 510.

19.     Here, the proceeds are not property of the Debtors' estates because the Primary Policy is clear that it is first and foremost for the benefit of the Insured Persons, including the Movants. Specifically, the Order of Payments provision requires that coverage be provided to the Insured Persons under Side A before any coverage is afforded to the Company under Sides B and C. Moreover, the Primary Policy requires the Company and D&O Insurers to cooperate in obtaining access for the Insured Persons, including the Movants. And the Side A Policies provide coverage only for the Insured Persons (including the Movants) and not the Company.

20.     The potential for coverage of the Debtors under the Side B and Side C coverage does not alter this conclusion. Where a D&O policy "provides direct coverage to both the debtor and the directors and officers, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other asset from diminution." *In re Downey*, 428 B.R. at 603 (internal quotation omitted). But even where a debtor is also an insured under a D&O policy, courts hold that the proceeds of that D&O policy are not property of the estate if the debtor's potential claim against the policy is speculative or hypothetical. *See, e.g., id.* at 607; *In re World Health Alts.*, 369 B.R. at 810 (noting that courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification either has not occurred, is hypothetical, or speculative") (internal quotation omitted); *In re Allied Digit.*, 306 B.R. at 512

("[W]hen the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.").

21.    Here, paying the Movants' defense costs and other covered losses in connection with the Delaware Litigation and any other covered Losses—consistent with the terms of the D&O Policies—would not have any adverse effect on the Debtors' estates.  As noted above, the Side B coverage provisions apply only to the extent that the Debtors actually indemnify a director or officer for losses on a covered claim above the applicable Retention (as defined in the Primary Policy).  Here, the likelihood that the Debtors will so indemnify the Movants or any other Insured Person—and thereby trigger Insuring Agreement B coverage—is extremely remote.  Upon information and belief, the Debtors do not intend to advance or indemnify their defense costs.  And making the proceeds available to the Movants will reduce or eliminate claims against the estates by the Movants for advancement and indemnification, providing for greater recoveries to other creditors in the chapter 11 cases.  Because indemnification coverage is speculative at best, the Side B coverage provisions do not give the Debtors a property interest in the proceeds of the D&O Policies.

22.    Similarly, the likelihood that the Debtors will have claims for Side C coverage is also extremely unlikely and contractually subordinated to the Movants' right to coverage under the Side A provisions pursuant to the Order of Payments Clause.  Upon information and belief, the Debtors do not have any pending litigation entitled to coverage under the policies.  Accordingly, the Side C coverage provisions are not necessary to protect the assets of the Debtors' estates from diminution, and the Debtors lack a property interest in the proceeds of the D&O Policies.

23.     Thus, to the extent the Debtors could ever incur future Loss (as defined in the Primary Policy) under Side B or C—which appears unlikely—the Debtors would have only a contingent right to proceeds, limited to the extent the non-indemnified Loss incurred by the Movants under Side A did not exceed the Primary Policy's limits of liability. Such speculative and contingent coverage is insufficient to render the policy proceeds property of the Debtors' estates.

24.     This Court's decision in *Downey* is squarely on point.  There, former officers and directors of a Chapter 7 debtor moved for an order that the automatic stay did not preclude their access to proceeds of a D&O insurance policy in connection with a securities action that had been filed against them.  *Downey*, 428 B.R. at 598.  Like the Primary Policy, the debtor's policy in *Downey* provided for Side A, Side B, and Side C coverage.  *Id*. at 604.  This Court granted the directors' and officers' motion, holding that the policy proceeds were not property of the estate. *Id*. at 604-08.

25.     In so holding, this Court relied on an order-of-payments clause under which the debtor's interest in the Side B and Side C coverage was "under all circumstances, junior to Coverage A, which provide[d] direct coverage to the [directors and officers]."  *Id*. at 600-01, 608 (noting that the policy preserved "this chain of priority in the event of bankruptcy").  Noting the established principle that bankruptcy should not expand a debtor's rights "against others beyond what rights existed at the commencement of the case[,]" this Court recognized that the order-of-payments clause "provide[d] a clear chain of priority among the three types of coverage[,]" which was not affected by the bankruptcy filing.  *Id*. at 607 (internal quotation marks omitted).  "This is significant[,]" this Court explained, "because were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have 'greater rights in the [policy proceeds] than the debtor had before filing for bankruptcy.'"  *Id*. at 608 (quoting

*Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. BAP 1997)).  Thus, the Court concluded that the policy proceeds were "not property of the estate" subject to the automatic stay.  *Id.* at 608.

26.    The same reasoning applies here.  The "Order of Payments" clause in the Primary Policy is materially identical to the order-of-payment clause in the policy at issue in *Downey*.  *See* Ex. B, Primary Policy, *Private D&O Coverage Section*, § 3.B, Endorsement No. 16. Outside of bankruptcy, the Debtors' interest in the proceeds of the Primary Policy would be subordinate to the interests of the Movants in the Side A coverage.  Therefore, the Debtors would be granted greater rights in the policy proceeds than they would have had outside of bankruptcy if the policy proceeds were deemed property of the Debtors' estates, contrary to established principles of bankruptcy law.  *See Downey*, 428 B.R. at 608.

27.    For the foregoing reasons, the Court should enter an order confirming that the proceeds of the D&O Policies are not property of the Debtors' estates subject to the automatic stay so that the Movants may have access to the policy proceeds, consistent with their contractual rights.

## B.  <u>The Court Should, in the Alternative, Grant Relief from the Automatic Stay.</u>

28.    Even if the proceeds of the D&O Policies are subject to the automatic stay, the Court should grant relief from the stay so that the Movants can access the policy proceeds to pay for defense costs and other covered losses.

29.    Courts in this and other Circuits routinely grant such relief in cases involving similar policies.  *See, e.g.*, *Downey*, 428 B.R. at 608 (holding in the alternative that, even if the policy proceeds were property of the estate, cause existed to lift the automatic stay); *In re MF Global Holdings Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012) ("Courts in this Circuit and

other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provide direct coverage to the debtor."); *In re Enron Corp.*, No. 01–16034, 2002 WL 1008240, at *2 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.,* 280 B.R. 12, 18–19 (Bankr. D. Mass. 2002) (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under directors and officers insurance policy); *In re Laminate Kingdom, LLC*, No. 07-10279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("Because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers—even though the insurance policies also provided direct coverage to [the] debtor.").

30. Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such property in interest[.]" 11 U.S.C. § 362(d)(1). In considering whether to grant relief from the stay under this provision, the Court should consider (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay" and (2) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor." *Downey*, 428 B.R. at 609.[5] As described below, these factors strongly weigh in favor of lifting the automatic stay.

---

[5] In *Downey*, the court also referenced "[t]he probability of the creditor prevailing on the merits" as a factor in determining whether relief from the automatic stay was appropriate. *Downey*, 428 B.R. at 609. The Movants submit that this factor does not apply here. If the Movants were seeking stay relief to pursue litigation *against* the Debtors, the merits of that litigation would be relevant to whether the automatic stay should be lifted. *See, e.g.*, *In re Continental Airlines*, 152 B.R. 420, 424 (Bankr. D. Del. 1993). But the Movants do not seek to pursue ligation against the Debtors. And the relief that the Movants do seek—access to the proceeds of the D&O Policies, consistent with their terms—is not contingent on the merits of any litigation claim, but instead follows from the plain and unambiguous terms of the D&O Policies.

31. First, there would not be any prejudice to the Debtors or their estates from lifting the stay to allow the D&O Insurers to pay their coverage obligations to the Movants. Even if the Debtors are deemed to have an interest in proceeds of the D&O Policies, that interest would not be impaired by lifting the automatic stay because the Debtors' interest is subordinate to the rights of the Movants and other Insured Persons. *See Laminate*, 2008 WL 1766637, at *3 ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the 'Priority of Payments Endorsement' does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers'] Costs of Defense are paid."). Stated simply, the Debtors would not be prejudiced by being held to the terms of its contract. *See, e.g.*, *In re Continental Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) ("To the extent that such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.") (internal quotation marks and citations omitted). And by making the proceeds available to the Movants, the Debtors will be able to reduce or eliminate claims against the estates by the Movants for advancement and indemnification, providing for greater recoveries to other creditors in the chapter 11 cases. Moreover, upon information and belief, there is no currently pending litigation that entitles the Debtors to coverage under the policies.

32. Second, absent stay relief, the Movants would suffer substantial and potentially irreparable harm. Without the D&O Policy proceeds, the Movants will not have the resources to pay their attorney's fees and other defense costs, including in connection with the Delaware Litigation and these chapter 11 cases, thereby undermining their ability to present an effective defense or protect their rights. The Movants thus "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments." *Downey*, 428 B.R. at 610

(quoting *CyberMedica*, 280 B.R. at 18); *In re Allied Digit.*, 306 B.R. at 514 ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [plaintiff's] claims and may suffer substantial and irreparable harm.").

33.     In short, the balance of equities is not a close question here.  Absent stay relief, the Movants face significant and potentially irreparable harm by being deprived of the critical funds they need—and to which they are unambiguously entitled—to fund any Losses covered by the D&O Policies.  The Movants relied upon the existence and availability of insurance coverage when serving in a fiduciary capacity for the Debtors.  By contrast, the Debtors would not be harmed by lifting the stay because they are not entitled to the proceeds payable to the Movants.

34.     For the foregoing reasons, the Movants respectfully request that the Court enter an Order providing that the automatic stay, to the extent applicable, is lifted to allow the D&O Insurers to advance and/or reimburse the Movants' defense costs and other losses pursuant to the terms and conditions of the D&O Policies.

## **NOTICE**

35.     Notice of this Motion has been given to (i) counsel to the Debtors; (ii) the D&O Insurers; (iii) the Office of the United States Trustee for the District of Delaware; (iv) counsel to the Official Committee of Unsecured Creditors; and (v) all parties entitled to receive notice under Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Movants submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Matthew O. Talmo*
William M. Lafferty (No. 2755)
Thomas W. Briggs, Jr. (No. 4076)
Matthew O. Talmo (No. 6333)
Phillip Reytan (No. 7255)
1201 North Market Street
Wilmington, Delaware  19801
(302) 658-9200
wlafferty@morrisnichols.com
tbriggs@morrisnichols.com
mtalmo@morrisnichols.com
preytan@morrisnichols.com

*Attorneys for Andrew M. Laurence
and Brian Kahn*

*- and -*

WACHTELL, LIPTON, ROSEN & KATZ

*/s/ Ryan A. McLeod*
Ryan A. McLeod (Bar No. 5038)
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RAMcleod@wlrk.com

*Attorneys for Matthew Avril, Cynthia Dubin
and Thomas Herskovits*

*- and -*

ROSS ARONSTAM & MORITZ LLP

*/s/ Adam D. Gold*
Adam D. Gold (Bar No. 6412)
Holly E. Newell (Bar No. 6687)
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
agold@ramllp.com
hnewell@ramllp.com

*Attorneys for Matthew Avril*