**<u>Exhibit B</u>**

**Primary Policy**

This page is intentionally left blank

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.



## National Union Fire Insurance Company of Pittsburgh, Pa.

(the "**Insurer**")

A capital stock company

### Private Company Directors & Officers Liability for PortfolioSelect

POLICY NUMBER: | 01-420-28-24 |     REPLACEMENT OF POLICY NUMBER: | N/A |

### NOTICE

**CERTAIN COVERAGE SECTIONS OF THIS POLICY ARE LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER AS REQUIRED BY THE TERMS OF THE POLICY. COVERED DEFENSE COSTS SHALL REDUCE THE APPLICABLE LIMITS OF LIABILITY AND SUBLIMITS OF LIABILITY AND ARE SUBJECT TO APPLICABLE RETENTIONS. THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION.**

**PLEASE READ THIS POLICY CAREFULLY AND REVIEW IT WITH YOUR INSURANCE AGENT OR BROKER.**

## DECLARATIONS

| | ITEMS | | |
|---|---|---|---|
| 1. | **NAMED ENTITY:** | **Named Entity:** | *FRANCHISE GROUP, INC.* |
| | | **Named Entity Address:** | *109 Innovation Court - Suite J*<br>*Delaware, OH 43015* |
| | | **State of Formation:** | *Delaware* |
| 2. | **POLICY PERIOD:** | **Inception Date:** *August 21, 2023* | **Expiration Date:** *August 21, 2024* |
| | | 12:01 A.M. at the Named Entity Address | |
| 3. | **PREMIUM:** | *$131,075* | |
| 4. | **INSURER:** | | |
| | (a) **Insurer Address:** | *1271 Ave of the Americas, FL 37*<br>*New York, NY 10020-1304* | |
| | (b) **Claims Address:** | *AIG Property Casualty*<br>*Financial Lines Claims*<br>*P.O. Box 25947*<br>*Shawnee Mission, KS 66225* | |
| | (c) **By E-Mail:** | *c-claim@aig.com* | |
| | *Reference the Policy Number and any applicable Coverage Section.* | | |
| 5. | **POLICY AGGREGATE:** | *$5,000,000* | |

*1862292*

© American International Group, Inc. All r

## 6. COVERAGE SUMMARY

### Private Company Directors & Officers Liability

| Limit of Liability: | Separate Limit of Liability: | $5,000,000 | Shared Limit of Liability: | Not Applicable |
|---|---|---|---|---|
| | **Shared Limit of Liability, if any, is shared with:**  *Not Applicable* | | | |
| | **Excess Limit for Executives:** | | | *$1,000,000* |
| Retention: | (i) **Securities Retention:**<br>(ii) All other **Loss** to which a Retention applies: | | | *$250,000*<br>*$250,000* |
| **Continuity Date:** | **Outside Entity Executive** Coverage: Date on which the **Executive** first served as an **Outside Entity Executive** for such **Outside Entity.** | | | |
| | All other Private Company D&O Coverage: | | | *Policy Inception* |
| [X] Auto-Acquisition Subsidiary Coverage | | [ ] Threshold Acquisition Subsidiary Coverage | | |
| Coverage Section Premium: | | | | *$131,075* |

**7. PASSPORT:**    This policy does not serve as a master Passport policy.

Each of the following **Coverage Sections** shall serve as a master Passport policy solely with respect to the coverage provided thereunder:
*Not Applicable*

## 8. TRIA PREMIUM, TAXES AND SURCHARGES
  (a) TRIA Premium                                                            $0

'**TRIA Premium**'  means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act, as amended.  Amount indicated above is included in **Premium.**  A copy of the TRIA disclosure sent with the original quote is attached hereto.

PRODUCER:  *RSG SPECIALTY, LLC*
ADDRESS:   *330 WEST NEWBERRY ROAD*
           *BLOOMFIELD, CT 06002*

*1862292*

® American International Group, Inc. All ri

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

_____
PRESIDENT

_____
SECRETARY

_____
AUTHORIZED REPRESENTATIVE

*1862292*

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *FRANCHISE GROUP, INC.*


Policy Number: *01-420-28-24*
Policy Period Effective Date From: *August 21, 2023*    To: *August 21, 2024*

© 2015 National Association of Insurance Commissioner



**National Union Fire Insurance Company of Pittsburgh, Pa.** ®

A capital stock company

*Private Company Directors & Officers Liability for Portfolio*

**GENERAL TERMS AND CONDITIONS**

**("General Terms and Conditions")**

In consideration of the payment of the premium, and each of their respective rights and obligations in this policy, the **Insureds** and the **Insurer** agree as follows:

1.  TERMS AND CONDITIONS

    These **General Terms and Conditions** shall apply to all **Coverage Sections**, unless any **Coverage Section** states specifically that all or part of these **General Terms and Conditions** shall not apply to such **Coverage Section**. The definitions, terms, conditions and limitations set forth in each **Coverage Section** shall apply only to that particular **Coverage Section**.

2.  RETENTION

    The **Insurer** shall be liable only for the amount of **Loss** arising from each **Claim** or group of **Related Claims** that exceeds the Retention amount stated in Item 6 of the Declarations as applicable to the **Coverage Section** affording coverage to such **Claim** or group of **Related Claims**. Amounts within such Retention shall remain uninsured.

    A single Retention amount shall apply to each **Claim** or group of **Related Claims**. If a **Claim** or a group of **Related Claims** triggers more than one **Coverage Section** all of which are subject to a **Shared Limit of Liability**, the highest applicable Retention amount shall apply to such **Claim** or group of **Related Claims**.

    If a **Claim** or a group of **Related Claims** triggers more than one **Coverage Section** at least one of which is subject to a **Separate Limit of Liability**, the Retention applicable to **Loss** in connection with such **Claim** or group of **Related Claims** under any such **Coverage Section** subject to a **Separate Limit of Liability** shall apply separately to such **Loss**, and the applicable Retention for such **Coverage Section** shall not be satisfied by payments of **Loss** made towards the Retention required under any other **Coverage Section**.

3.  LIMITS OF LIABILITY

    The **Policy Aggregate** is the **Insurer's** maximum liability for all **Loss** under all **Coverage Sections** combined. Under no circumstances shall the **Insurer** be responsible to pay any **Loss** in excess of the **Policy Aggregate**. The term **"Limits of Liability"** refers to the several types of limits provided under this policy, including the **Policy Aggregate**, any **Separate Limits of Liability**, any **Shared Limits of Liability**, and any sublimits of liability set forth in any applicable **Coverage Sections**.

    If **Separate Limits of Liability** are stated in Item 6 of the Declarations, then each such **Separate Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to the applicable **Coverage Section** as stated on the Declarations. Each **Separate Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate** for all **Loss** under this policy and shall in no way serve to increase the **Policy Aggregate** as therein stated.

    If **Shared Limits of Liability** are stated in Item 6 of the Declarations, then each such **Shared Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss**

arising out of all **Claims** first made against the **Insureds** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to all **Coverage Sections** for which such **Shared Limit of Liability** is applicable, as indicated on the Declarations. In the event that the amount stated as a **Shared Limit of Liability** in Item 6 of the Declarations for a **Coverage Section** is less than the amount(s) stated for the other **Coverage Section(s)** with which it shares such **Shared Limit of Liability**, such lesser amount stated in Item 6 shall serve as the limit of liability for all **Loss** in the aggregate under such **Coverage Section**, subject to reduction through any prior payments of **Loss** under such **Shared Limit of Liability**. Each **Shared Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate** for all **Loss** under this policy and shall in no way serve to increase the **Policy Aggregate** as therein stated.

Each sublimit of liability set forth in any **Coverage Section** is the maximum limit of the **Insurer's** liability for all **Loss** in the aggregate under this policy that is subject to that sublimit of liability. All sublimits of liability shall be part of, and not in addition to, the **Policy Aggregate** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability.**

All **Related Claims** that pursuant to the applicable *Notice and Reporting Clause* are considered made or received during the **Policy Period** or **Discovery Period** (if applicable), shall also be subject to the applicable **Limits of Liability** set forth in this policy. Each of the **Limits of Liability** for the **Discovery Period** (if applicable) shall be part of, and not in addition to, each of the corresponding **Limits of Liability** for the **Policy Period.**

**Defense Costs** are not payable by the **Insurer** in addition to the **Limits of Liability. Defense Costs** are part of **Loss** and as such are subject to the **Limits of Liability** for **Loss.**

4. DISCOVERY

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of up to six (6) years following the effective date of such cancellation or nonrenewal ("**Discovery Period**"), upon payment of an **Additional Premium Amount** described in each **Coverage Section**, in which to give written notice to the **Insurer** of: (i) **Claims** first made against an **Insured**; (ii) if provided by a purchased **Coverage Section**, **Pre-Claim Inquiries** first received by an **Insured Person**; and (iii) circumstances of which an **Organization** or an **Insured** shall become aware, in any such case, during the **Discovery Period** and solely with respect to any covered acts, errors, omissions, failures or violations (including but not limited to **Wrongful Acts**, **Privacy Events** and **Security Failures**) occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

In the event of a **Transaction**, the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** with respect to covered acts, errors, omissions, failures or violations (including but not limited to **Wrongful Acts**, **Privacy Events** and **Security Failures**) occurring prior to the effective time of the **Transaction** and otherwise covered by this policy. The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

If the **Named Entity** exercises its right to purchase a **Discovery Period**, that period incepts at the end of the **Policy Period** or, if purchased in the event of a **Transaction**, as of the effective time of such **Transaction.**

The right to purchase a **Discovery Period** shall terminate unless written notice of election, together with any additional premium due, is received by the **Insurer** no later than thirty (30) days after the effective date of the cancellation, nonrenewal or **Transaction.**

Any **Discovery Period** is not cancelable and the additional premium charged is non-refundable in whole or in part. This *Discovery Clause* shall not apply to any cancellation resulting from non-payment of premium.

5.  TRANSACTIONS

In the event of a **Transaction**, this policy shall continue in full force and effect only as to those covered acts, errors, omissions, failures or violations (including but not limited to **Wrongful Acts**, **Privacy Events** and **Security Failures**) occurring prior to the effective time of the **Transaction** and otherwise covered by this policy, and no portion of the premium paid for this policy shall be refundable. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in Clause 4 above.

This policy may not be canceled after the effective time of the **Transaction.**

Notwithstanding the foregoing, this policy may continue in full force and effect as to those covered acts, errors, omissions, failures or violations (including but not limited to **Wrongful Acts**, **Privacy Events** and **Security Failures**) occurring subsequent to the effective time of the **Transaction** and otherwise covered by this policy, if:

(a)    within thirty (30) days subsequent to the effective time of such **Transaction** the **Insurer** has been provided with full particulars of the **Transaction**, the related entity(ies) and any other information requested by the **Insurer**; and

(b)    the **Insurer** waives the restrictions set forth above with respect to such **Transaction** by written endorsement to this policy and the **Named Entity** or its successor has paid any additional premium and accepted any amendments to this policy required by the **Insurer.**

6.  EXTENSIONS

(a) *Worldwide Territory*

The coverage afforded by this policy shall apply anywhere in the world.

(b) *Passport*

If a **Coverage Section** is listed in Item 7 of the Declarations, then such **Coverage Section** and the applicable provisions of these **General Terms and Conditions** shall act as a master policy solely with respect to the coverage provided by such **Coverage Section**. The coverage afforded by such **Coverage Section** shall be provided in conjunction with the Passport foreign underlyer policy issued in each jurisdiction selected by the **Named Entity**. The specific structure of the coverage provided by such **Coverage Section** in conjunction with each Passport foreign underlyer policy is set forth in the Passport Structure Appendix for such **Coverage Section** that is attached to this policy.

(c) *Spousal, Domestic Partner and Legal Representative Extension*

If a **Claim** against an **Insured Person** includes a **Claim** against: (1) the lawful spouse or legally recognized domestic partner of such **Insured Person**; or (2) a property interest of such spouse or domestic partner; and in either such case, such **Claim** arises from any actual or alleged **Wrongful Acts** of such **Insured Person**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner.  This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person** in the event of incompetence, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

7. CANCELLATION

   (a) **By *Named Entity***:  This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer's** authorized agent or to the **Insurer.**

   (b) **By the *Insurer***:  This policy may be canceled by the **Insurer** only in the event of non-payment of premium by delivering to the **Named Entity** by registered, certified or other first class mail, at the **Named Entity Address**, written notice stating when, not less than fifteen (15) days, the cancellation shall be effective.  Proof of mailing or delivery of such notice as aforesaid shall be sufficient proof of notice and this policy shall be deemed canceled as to all **Insureds** at the date and hour specified in such notice.

   (c) **Return of Premium**:  If this policy shall be canceled, the **Insurer** shall retain the pro rata proportion of the premium hereon.

8. RECOVERY OF LIMITS

   In the event the **Insurer** recovers amounts it paid under this policy, the **Insurer** shall reinstate the **Limits of Liability** of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery.  The **Insurer** assumes no duty to seek a recovery of any amounts paid under this policy.

9. NOTICE AND AUTHORITY

   Except for the giving of a notice of **Claim**, which shall be governed by the **Notice and Reporting Clause** of the applicable **Coverage Section**, all notices required under this policy to be given by an **Insured** to the **Insurer** shall be given in writing to the **Insurer** at the **Insurer Address**.  It is agreed that the **Named Entity** shall act on behalf of all **Insureds** with respect to the giving of notice of a **Claim**, **Pre-Claim Inquiry**, **Crisis** or circumstances, the giving and receiving of notice of conditional renewal, premium increase, nonrenewal and cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim**, **Crisis** or circumstance to the **Insurer**, and the exercising or declining to exercise any right to a **Discovery Period.**

10. ASSIGNMENT

   This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer.**

## 11. ACTION AGAINST INSURER

Except as provided in any *Alternative Dispute Resolution Clause* of a **Coverage Section**, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of an **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of such **Insured**, the claimant and the **Insurer.**

Any **Insured** or the legal representative thereof who has secured such judgment or written agreement shall be entitled thereafter to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against an **Insured** or the **Named Entity** to determine an **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured** or by any spouse, domestic partner or legal representative thereof.

## 12. BANKRUPTCY

Bankruptcy or insolvency of any **Insured** or of their estates shall not relieve the **Insurer** of any of its obligations under this policy.

In such event, the **Insurer** and each **Insured** agree to cooperate in any efforts by the **Insurer** or any **Insured** to obtain relief for the benefit of the **Insured Persons** from any stay or injunction applicable to the distribution of the policy proceeds.

## 13. CONFORMANCE TO LAW

In the event that there is an inconsistency between: (i) any period of limitation in this policy relating to the giving of notice of cancellation or discovery/extended reporting election, and (ii) the minimum or maximum period required by applicable law, where such law allows, the Insurer will resolve the inconsistency by applying the notice period that is more favorable to the **Insureds**. Otherwise, the notice period is hereby amended to the extent necessary to conform to applicable law.

Coverage under this policy shall not be provided to the extent prohibited by any law.

## 14. CURRENCY

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 15. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## 16. DEFINITIONS

(a) *Terms Appearing in **Bold** in Each **Coverage Section***

© American International Group, Inc. All rights reserved.
GENERAL TERMS AND CONDITIONS

Terms appearing in **bold** in a **Coverage Section** shall have the meaning and/or value ascribed to them in the *Definitions Clause* of that **Coverage Section**. If a term appearing in **bold** in a **Coverage Section** is not defined in the *Definitions Clause* of that **Coverage Section**, then the meaning and/or value ascribed to such term in the Declarations or below in Clause 16(c) *Definitions of General Applicability* shall apply for purposes of coverage provided under that particular **Coverage Section**.

Certain terms, including without limitation the following, appear in **bold** and are defined in more than one **Coverage Section**: (1) **Claim**; (2) **Crisis**; (3) **Defense Costs**; (4) **Insured**; (5) **Insured Person**; (6) **Loss**; (7) **Pre-Claim Inquiry**; (8) **Privacy Event**; (9) **Related Claim**; (10) **Security Failure**; (11) **Wrongful Act**. Each of these terms shall have the meaning ascribed to the term in a **Coverage Section** in which the term appears, but that meaning shall apply solely for purposes of coverage provided under that particular **Coverage Section**.

(b) *Terms Appearing in **Bold** in These **General Terms and Conditions***

Terms appearing in bold in these **General Terms and Conditions** and not defined below in Clause 16(c) *Definitions of General Applicability* shall have the meaning and/or value ascribed to them in the Declarations or in a particular **Coverage Section** for purposes of coverage provided under that particular **Coverage Section**.

(c) *Definitions of General Applicability*

| | |
|---|---|
| **Continuity Date** | means the date set forth in Item 6 of the Declarations with respect to each **Coverage Section**. |
| **Coverage Section** | means each **Coverage Section** that is purchased by the **Named Entity** as reflected in Item 6 of the Declarations. |
| **E-Consultant Firm** | means a pre-approved e-discovery consulting firm. A list of pre-approved **E-Consultant Firms** is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "e-Consultant Panel Members" link. |
| **E-Discovery** | means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information. |
| **E-Discovery Consultant Services** | means solely the following services performed by an **E-Consultant Firm**: |

(1) assisting the **Insured** with managing and minimizing the internal and external costs associated with **E-Discovery**;

(2) assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost effective **E-Discovery** vendors;

(3) serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the **Insurer** in executing and monitoring the **E-Discovery** strategy; and

(4) such other services provided by the **E-Discovery Consultant Firm** that the **Insured**, **Insurer** and **E-Discovery Consultant Firm** agree are reasonable and necessary given the circumstances of the **Claim**.

 ® American International Group, Inc. All rights reserved.

| | |
|---|---|
| **Enforcement Body** | means: (1) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general), or (2) the enforcement unit of any securities or commodities exchange or other self-regulatory organization. |
| **Foreign Jurisdiction** | means any jurisdiction, other than the United States of America or any of its territories or possessions. |
| **Organization** | means: |
| | (1) the **Named Entity**; |
| | (2) each **Subsidiary**; and |
| | (3) in the event a bankruptcy proceeding shall be instituted by or against any of the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States of America), if any. |
| **Policy Period** | means the period of time from the **Inception Date** to the earlier of the **Expiration Date** or the effective date of cancellation of this policy.  The **Policy Period** incepts and expires as of 12:01 A.M. on such dates at the **Named Entity Address.** |
| **Retroactive Date** | means the date set forth in Item 6 of the Declarations as such for each **Coverage Section.** |
| **Separate Limit of Liability** | means the applicable **Separate Limit of Liability**, if any, stated in Item 6 of the Declarations. |
| **Shared Limit of Liability** | means the applicable **Shared Limit of Liability**, if any, stated in Item 6 of the Declarations, which limit of liability shall be shared between all of the **Coverage Sections** which are listed as being subject to such **Shared Limit of Liability** in the Declarations. |
| **Transaction** | means: |
| | (1) the **Named Entity** consolidating with or merging into another entity such that the **Named Entity** is not the surviving entity, or selling all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; |
| | (2) any person or entity or group of persons or entities acting in concert acquiring **Management Control** of the **Named Entity**; or |
| | (3) any additional meaning ascribed to the term **Transaction** in any **Coverage Section**, but such additional meaning shall apply solely to the coverage provided by such **Coverage Section.** |

[The balance of this page is intentionally left blank.]

## CRISISFUND® APPENDIX

## (WHEN PRIVATE D&O COVERAGE SECTION PURCHASED)

If the **Private D&O Coverage Section** is purchased, the following shall apply to the **CrisisFund Coverage Section**:

I.  DEFINITIONS

(a) **"Crisis"** means one of the following events which, in the good faith opinion of the **Organization**, did cause or is reasonably likely to cause a **Material Effect**:

      1.  Management Crisis:
      The death, incapacity or criminal indictment of any **Executive** of the **Organization**, or any **Employee** on whom the **Organization** maintains key person life insurance.

      2.  Employee Layoffs:
      The public announcement of layoffs of **Employees** of the **Organization.**

      3.  Debt Default:
      The public announcement that the **Organization** had defaulted or intends to default on its debt.

      4.  Bankruptcy:
      The public announcement that the **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Organization**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

      5.  Mass Tort:
      The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

      6.  Regulatory Crisis:
      The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization.**

The descriptions in the headings of the **Crises** are solely for convenience and form no part of the terms and conditions of coverage.

A **Crisis** shall first commence when the **Organization** or any of its **Executives** shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of the time when the **Crisis Firm** advises the **Organization** that the crisis no longer exists or when the **CrisisFund** has been exhausted.

® American International Group, Inc. All righ

(b) "**Crisis Firm**" means any public relations firm, crisis management firm or law firm on the list of approved firms that is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "CrisisFund[®]" link. Any "**Crisis Firm**" may be hired by the **Organization** or its **Executives** or **Employees** to perform **Crisis Services** without further approval by the Insurer.

(c) "**Crisis Loss**" means the following amounts incurred during the pendency of or within 90 days prior to and in anticipation of, the **Crisis**, regardless of whether a **Claim** is ever made against an Insured arising from the **Crisis** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

> (1) amounts for which the **Organization** is legally liable for the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for the **Organization** arising from a **Crisis**; and

> (2) amounts for which the **Organization** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by **Executives**, **Employees** or agents of the **Organization** or the **Crisis Firm**, in connection with the **Crisis.**

(d) "**Crisis Services**" means those services performed by a **Crisis Firm** in advising the **Organization** or any of its **Executives** or **Employees** on minimizing potential harm to the **Organization** arising from the **Crisis**, including but not limited to maintaining and restoring public confidence in the **Organization.**

(e) "**Material Effect**" means the publication of unfavorable information regarding the **Organization** which can reasonably be considered to lessen public confidence in the competence of the **Organization**.  Such publication must in occur in either:

> (1) a daily newspaper of general circulation in the geographic area of the **Organization**, or

> (2) a radio or television news report on an **Organization** received in the geographic area of the **Organization.**

II. <u>EXCLUSIONS</u>

The term **Crisis** shall not include any event relating to:

> 1. any pending or prior litigation as of the **Continuity Date** for the **Private D&O Coverage Section**;

> 2. any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

> 3. the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

® American International Group, Inc. All righ

4. the hazardous properties of nuclear materials.

[The balance of this page is intentionally left blank.]

Ⓥ American International Group, Inc. All righ


**National Union Fire Insurance Company of Pittsburgh, Pa.** ®

A capital stock company

**PRIVATE COMPANY DIRECTORS & OFFICERS LIABILITY**

**("Private D&O Coverage Section")**

**Notice:** Pursuant to Clause 1 of the **General Terms and Conditions**, the **General Terms and Conditions** are incorporated by reference into, made a part of, and are expressly applicable to this **Private D&O Coverage Section**, unless otherwise explicitly stated to the contrary in this **Private D&O Coverage Section.**

In consideration of the payment of the premium, and each of their respective rights and obligations in this policy, the **Insureds** and the **Insurer** agree as follows:

1.  INSURING AGREEMENTS

All coverage granted for **Loss** under this **Coverage Section** is provided solely with respect to (i) **Claims** first made against an **Insured**, and (ii) **Pre-Claim Inquiries** first received by an **Insured Person**, in each such event, during the **Policy Period** or any applicable **Discovery Period** and reported to the **Insurer** as required by this **Coverage Section**. Subject to the foregoing and the other terms, conditions and limitations of this policy, this **Coverage Section** affords the following coverage:

A. *Insured Person Coverage*

This policy shall pay the **Loss** of any **Insured Person** that no **Organization** has indemnified or paid, and that arises from any:

**(1) Claim** (including any **Insured Person Investigation**) made against such **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; or

**(2) Pre-Claim Inquiry**, to the extent that such **Loss** is **Pre-Claim Inquiry Costs.**

B. *Indemnification Of Insured Person Coverage*

This policy shall pay the **Loss** of an **Organization** that arises from any:

**(1) Claim** (including any **Insured Person Investigation**) made against any **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; or

**(2) Pre-Claim Inquiry**, to the extent that such **Loss** is **Pre-Claim Inquiry Costs**;

but only to the extent that such **Organization** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Insured Person.**

C. *Organization Coverage*

This policy shall pay the **Loss** of any **Organization**:

(1) arising from any **Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**;

(2) incurred as **Derivative Investigation Costs**, subject to a $250,000 aggregate sublimit of liability; or

(3) incurred by an **Organization** or on its behalf by any **Executives** of the **Organization** (including through any special committee) as **Defense Costs** in seeking the dismissal of any **Derivative Suit** against an **Insured.**

## 2. EXTENSIONS

### A. *Executive Protection Suite*

**Loss** shall also mean the following items, provided that they arise out of a **Claim**:

**(1) SOX 304 Costs**;

**(2) Extradition Costs**;

**(3) UK Corporate Manslaughter Act Defense Costs**;

**(4) Personal Reputation Expenses**, subject to a $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

**(5) Asset Protection Costs**, subject to a $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

### B. *First Dollar E-Discovery Consultant Services*

For any **Claim**, no Retention shall apply to the first $25,000 in **Defense Costs** incurred as **E-Discovery Consultant Services.**

### C. *Excess Limit of Liability for Executives*

If an **Excess Limit for Executives** is set forth in the Declarations for this **Coverage Section**, then solely with respect to Insuring Agreement A. Insured Person Coverage, **Executives** shall also have access to the **Excess Limit for Executives**, as more fully described in Clause 6. LIMITS OF LIABILITY of this **Coverage Section.**

### D. *Global Liberalization*

For **Loss** from that portion of any **Claim** maintained in a **Foreign Jurisdiction** or to which the law of a **Foreign Jurisdiction** is applied, the **Insurer** shall apply the terms and conditions of this **Coverage Section** as amended to include those of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to **Insureds** in the **Foreign Jurisdiction.** This Global Liberalization Clause shall not apply to any provision of any policy that has worldwide effect, including but not limited to any provision addressing limits of liability (primary, excess or sublimits), retentions, other insurance, non-renewal, duty to defend, defense within or outside limits, taxes, conformance to law or excess liability coverage, any claims made provisions, and any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

## 3. INDEMNIFICATION PROTECTIONS

### A. *Advancement*

© American International Group, Inc. All rights

If for any reason (including but not limited to insolvency) an **Organization** fails or refuses to advance, pay or indemnify covered **Loss** of an **Insured Person** within the applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until either (i) an **Organization** has agreed to make such payments, or (ii) the Retention has been satisfied.  In no event shall any such advancement by the **Insurer** relieve any **Organization** of any duty it may have to provide advancement, payment or indemnification to any **Insured Person.**

Advancement, payment or indemnification of an **Insured Person** by an **Organization** is deemed "failed" if it has been requested by an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within sixty (60) days of such request; and advancement, payment or indemnification by an **Organization** is deemed "refused" if an **Organization** gives a written notice of the refusal to the **Insured Person**.   Advancement, payment or indemnification of an **Insured Person** by an **Organization** shall only be deemed "failed" or "refused" to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from an **Organization**.    Any payment or advancement by the **Insurer** within an applicable Retention shall apply towards the exhaustion of the **Limits of Liability.**

## B.  Order Of Payments

In the event of **Loss** arising from a covered **Claim(s)** and/or **Pre-Claim Inquiry(ies)** for which payment is due under the provisions of this **Coverage Section**, the **Insurer** shall in all events:

(1) First, pay all **Loss** covered under Insuring Agreement A. *Insured Person Coverage* ;

(2) Second, only after payment of **Loss** has been made pursuant to subparagraph (1) above and to the extent that any amount of the applicable **Separate Limit of Liability** or **Shared Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement B. *Indemnification Of Insured Person Coverage*; and

(3) Lastly, only after payment of **Loss** has been made pursuant to subparagraphs (1) and (2) above and to the extent that any amount of the applicable **Separate Limit of Liability** or **Shared Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement C. *Organization Coverage.*

In the event the **Insurer** withholds payment pursuant to subparagraphs (2) and/or (3) above, then the **Insurer** shall, at such time and in such manner as shall be set forth in instructions of the chief executive officer of the **Named Entity**, remit such payment to an **Organization** or directly to or on behalf of an **Insured Person.**

## 4.  EXCLUSIONS

## A. Full Severability Of Exclusions For Insured Persons

In determining whether any of the following Exclusions apply, the **Wrongful Acts** of any **Insured Person** shall not be imputed to any other **Insured**. For Insuring Agreement C. Organization Coverage, only the **Wrongful Acts** of any chief executive officer or chief financial officer (or equivalent position) of an **Organization** shall be imputed to such **Organization.**

## B. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

*(1) Conduct*    arising out of, based upon or attributable to any:

    (a) profit or other advantage to which the **Insured** was not legally entitled;

    (b) deliberate criminal or deliberate fraudulent act by the **Insured**;

    (c) purchase or sale by an **Insured** of securities of the **Organization** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law; or

    (d) payment to any **Insured** of any remuneration without the previous approval of the stockholders of the Organization;

    if established by any final, non-appealable adjudication in any underlying action;

    provided, however:

    (i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and

    (ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred;

*(2) Prior Notice*   or with any **Pre-Claim Inquiry** received by an **Insured Person**, alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Acts** alleged or contained, in any Claim or investigated in any **Pre-Claim Inquiry** that has been reported, or in any circumstances of which notice has been given, under any directors and officers liability insurance policy in force prior to the **Inception Date** of this policy;

| (3) *Pending & Prior Litigation* | alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (a) litigation; or (b) administrative or regulatory proceeding or investigation of which any **Insured** had notice; or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; |
|---|---|
| *(4) Personal Injury* | for emotional distress or mental anguish of any person, or for injury from libel, slander, defamation or disparagement, or a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any **Securities Claim**; |
| (5) *Bodily Injury & Property Damage* | for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, this exclusion shall not apply to **UK Corporate Manslaughter Act Defense Costs** or a **Securities Claim**; |
| (6) *Entity or Individual v. Insured* | that is brought by or on behalf of: (a) any **Insured**; or (b) any **Outside Entity**, or any **Executive** thereof, for the **Wrongful Act(s)** of any **Outside Entity Executive**; provided, however, this exclusion shall not apply: |

(a) to any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by an **Insured Person** in defending any **Claim** against that **Insured Person**;

(b) to any **Derivative Suit** not brought, controlled or materially assisted by any **Organization**, any **Outside Entity** or any **Executive** of the foregoing;

(c) if the **Organization** or **Outside Entity** is the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**), unless the **Claim** is brought, controlled or materially assisted by any **Organization** or **Outside Entity**, the resulting debtor-in-possession (or foreign equivalent) of the debtor **Organization** or **Outside Entity** or any **Executive** of the foregoing;

(d) to any **Claim** brought by or on behalf of any **Executive** who has not served, in the two (2) years prior to such **Claim** being first made, as an **Executive** of, or a consultant for:

    (i) an **Organization** (but only with respect to a **Claim** brought by or on behalf of such **Executive**); or

    (ii) **Outside Entity** (but only with respect to a **Claim** brought by any **Outside Entity** or any **Executive** thereof); or

(e) to any **Claim** brought by or on behalf of an **Executive** of an **Organization** or **Outside Entity Executive** of an **Outside Entity** if such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

*(7) ERISA*

for any violation of responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any similar provisions of any state, local or foreign statutory or common law;

*(8) Compensation & Labor Liability*

(a) for any violation of responsibilities, obligations or duties imposed by the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification (WARN) Act, the Consolidated Omnibus Budget Reconciliation Act (COBRA), the Occupational Safety and Health Act (OSHA), any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign law or amendment to a law; or

(b) alleging, arising out of, based upon or attributable to any of the circumstances described in any of the following:

(i) the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(ii) improper deductions from pay taken by any **Insured** from any **Employee** or purported **Employee**; or

(iii) failure to provide or enforce legally required meal or rest break periods;

*(9) Public Offering*

alleging, arising out of, based upon or attributable to any public offering of securities by an Organization, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such public offering; provided, however, this exclusion shall not apply to:

(a) any purchase or sale of securities exempted pursuant to Section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; provided, however, the Named Entity shall give the Insurer written notice of any public offering exempted pursuant to Section

3(b), together with full particulars and as soon as practicable, but not later than thirty (30) days after the effective date of the public offering;

(b) any public offering of securities (other than a public offering described in subparagraph (a) above), as well as any purchase or sale of such securities subsequent to such public offering, in the event that within thirty (30) days prior to the effective time of such public offering: (i) the **Named Entity** shall give the **Insurer** written notice of such public offering together with full particulars and underwriting information required thereto; and (ii) the **Named** Entity accepts such terms, conditions and additional premium required by the **Insurer** for such coverage. Such coverage is also subject to the **Named Entity** paying when due any such additional premium.  In the event the **Organization** gives written notice with full particulars and underwriting information pursuant to subparagraph (b)(i) above, then the **Insurer** must offer a quote for coverage under this subparagraph; or

(c) any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the **Insured's** preparations to commence an initial public offering (**"IPO"**) and which occurred at any time prior to 12:01 a.m. on the date the initial public offering commences (**"IPO Effective Time"**), including any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the road show; provided, however that the coverage otherwise afforded under this subparagraph (c) shall be deemed to be void ab initio effective the **IPO Effective Time**; provided further, however, that coverage shall not be deemed void ab initio if (i) the **Claim** is first made and reported pursuant to Clause 7(a) of this **Coverage Section** prior to the **IPO Effective Time**, and (ii) a public company directors' and officers' and management liability policy is not applicable to such **Claim**;

**(10) Acquisition of Publicly Traded Entity**

alleging, arising out of, based upon or attributable to the purchase by an **Organization** of securities of a **"Publicly Traded Entity"** in a transaction which resulted, or would result, in such entity becoming an **Affiliate** or a **Subsidiary** of an **Organization**; provided, however, this exclusion shall not apply in the event that within 30 days prior to it becoming an **Affiliate** or **Subsidiary**, the **Named Entity** gives written notice of the transaction to the **Insurer** together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this **Coverage Section** required by the **Insurer** relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to

the transaction. As used herein, **"Publicly Traded Entity"** means any entity the securities of which have previously been subject to a public offering;

*(11) Pollution*

for: (a) any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (b) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, this exclusion shall not apply to:

(i) **Non-Indemnifiable Loss**; or

(ii) **Loss** in connection with a **Securities Claim**;

in all events, other than **Loss** constituting **Clean-up Costs**;

*(12) Captive Insurance Entity*

alleging, arising out of, based upon or attributable to the ownership, management, maintenance or control by the **Organization** of any captive insurance company or entity, including, but not limited, to any **Claim** alleging the insolvency or bankruptcy of the **Named Entity** as a result of such ownership, operation, management or control;

*(13) Employment Practices & Third-Party Violations*

alleging, arising out of, based upon, or attributable to the (a) employment of any individual or any employment practice, including, but not limited to, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim; or (b) the harassment or unlawful discrimination, or the violation of the civil rights of a person relating to such harassment or discrimination; in all cases, whether alleged to be committed against an **Insured Person** or anyone other than an **Insured Person** or applicant for employment with an **Organization** or an **Outside Entity**, including any students, patients, members, customers, vendors and suppliers;

*(14) Commission, Gratuities, Benefits*

alleging, arising out of, based upon, or attributable to:

(a) payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign governmental or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated;

(b) payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, members, principal shareholders, owners or employees, or affiliates (as that term is defined in the Securities Exchange Act of 1934, including any of their officers, directors, agents, owners, partners, representatives, principal shareholders or

employees) of any customers of the **Organization** or any members of their family or any entity with which they are affiliated; or

(c) political contributions, whether domestic or foreign;

(15) *Professional Liability*

alleging, arising out of, based upon or attributable to, directly or indirectly, any **Insured's** performance of or failure to perform professional services for others, or any act(s), error(s) or omission(s) relating thereto; or

(16) *Entity Only Exclusions*

with respect to Coverage C only:

(a) for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, service mark, trade secret or any other intellectual property rights;

(b) for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

(c) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Organization** or any other **Insured** under any express contract or agreement; provided, however, this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement; or

(d) seeking fines or penalties or non-monetary relief against the **Organization**; provided, however, that this exclusion shall not apply to any **Securities Claim.**

## 5. RETENTION

In addition to the provisions of Clause 2. RETENTION of the **General Terms and Conditions**, in no event shall a Retention be applied to the following: (i) **Non-Indemnifiable Loss**; (ii) **Derivative Investigation Costs**; or (iii) the first $25,000 in **Defense Costs** incurred as **E-Discovery Consultant Services.**

## 6. LIMITS OF LIABILITY

In addition to the provisions of Clause 3. LIMITS OF LIABILITY of the **General Terms and Conditions**, each per **Executive** sublimit of liability stated in this **Coverage Section** is the maximum limit of the **Insurer's** liability for all **Loss** of each **Executive** under this **Coverage Section** that is subject to that per **Executive** sublimit of liability.  All sublimits

of liability shall be part of, and not in addition to, the **Policy Aggregate** and any applicable **Separate Limit of Liability**, **Shared Limit of Liability** or **Excess Limit for Executives**. Each per **Executive** sublimit of liability shall be part of, and not in addition to, its corresponding aggregate sublimit of liability.

Notwithstanding anything to the contrary stated above or in Clause 3. LIMITS OF LIABILITY of the **General Terms and Conditions**, if an **Excess Limit for Executives** is set forth in the Declarations for this **Coverage Section**, a separate aggregate limit of liability shall be available to **Executives** for all **Non-Indemnifiable Loss** under Insuring Agreement A. *Insured Person Coverage* arising out of all **Claims** first made against any and all **Executives** during the **Policy Period** or the **Discovery Period** (if applicable). The **Excess Limit for Executives** shall not apply to any other **Coverage Section**, even if a **Shared Limit of Liability** applies to this **Coverage Section**. One **Excess Limit for Executives** shall apply for all **Executives**, no matter how many **Executives** or **Claims** are involved. The **Excess Limit for Executives** is excess of, and shall only apply after the payment in full of: (i) any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **Coverage Section**; and (ii) any other valid and collectible insurance available to the **Executives**, including, without limitation, any insurance which is specifically written as excess over any other limits of liability. The **Excess Limit for Executives** shall continue in force as primary insurance only upon the exhaustion of the limits of liability described in (i) and (ii), above. The term "**Limits of Liability**" shall also refer to the **Excess Limit for Executives.**

7. NOTICE AND REPORTING

Notice hereunder shall be given in writing to the **Insurer** at the **Claims Address** indicated in the Declarations. If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

| | |
|---|---|
| (a) *Reporting a Claim or Pre-Claim Inquiry* | An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this **Coverage Section**: |

(1) notify the **Insurer** in writing of a **Claim** made against an **Insured**; or

(2) if an **Insured** elects to seek coverage for **Pre-Claim Inquiry Costs** in connection with any **Pre-Claim Inquiry**, notify the **Insurer** in writing of that **Pre-Claim Inquiry**;

as soon as practicable after the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim** or **Pre-Claim Inquiry**. In all such events, notification must be provided no later than ninety (90) days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

| | |
|---|---|
| (b) *Relation Back to the First Reported Claim or Pre-Claim Inquiry* | Solely for the purpose of establishing whether any subsequent **Related Claim** was first made or a **Related Pre-Claim Inquiry** was first received during the **Policy Period** or **Discovery Period** (if applicable), if during any such period: |

(1) a **Claim** was first made and reported in accordance with Clause 7(a) above, then any **Related Claim** that is subsequently made against an **Insured** and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time that such previously reported **Claim** was first made; and

(2) a **Pre-Claim Inquiry** was actually first received by an **Insured Person** and reported in accordance with Clause 7(a) above, then:

(i) any **Related Pre-Claim Inquiry** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Pre-Claim Inquiry** first received at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person**; and

(ii) any subsequent **Related Claim** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Claim** first made at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person.**

With respect to any subsequent **Related Pre-Claim Inquiry**, this policy shall not cover **Loss** incurred before such subsequent **Related Pre-Claim Inquiry** is actually received by an **Insured Person**, and with respect to any subsequent **Related Claim**, this policy shall not cover **Loss** incurred before such subsequent **Related Claim** is actually made against an **Insured.**

*(c) Relation Back to Reported Circumstances Which May Give Rise to a Claim*

If during the **Policy Period** or **Discovery Period** (if applicable) an **Organization** or an **Insured Person** becomes aware of and notifies the **Insurer** in writing of circumstances that may give rise to a **Claim** being made against an **Insured** and provides details as required below, then any **Claim** that is subsequently made against an **Insured** that arises from such circumstances and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time of the notification of circumstances for the purpose of establishing whether such subsequent **Claim** was first made during the **Policy Period** or during the **Discovery Period** (if applicable). Coverage for **Loss** arising from any such subsequent **Claim** shall only apply to **Loss** incurred after that subsequent **Claim** is actually made against an **Insured**. In order to be effective, notification of circumstances must specify the facts, circumstances, nature of the alleged **Wrongful Act** anticipated and reasons for anticipating such **Claim**, with full particulars as to dates, persons and entities involved; however, notification that includes a copy of an agreement to toll a statute of limitations shall be presumed sufficiently specific as to the potential **Claims** described within that agreement.

© American International Group, Inc. All righ

8. DISCOVERY PREMIUM

In the event the **Named Entity** or the **Insurer** shall cancel or refuse to renew this **Coverage Section**, the **Additional Premium Amount** for: (a) one year shall be no more than 125% of the **Full Annual Premium**; and (b) two to six years shall be an amount to be determined by the **Insurer**. As used herein, "**Full Annual Premium**" means the premium level in effect for this **Coverage Section** immediately prior to the end of the **Policy Period.**

In the event of a **Transaction**, the **Additional Premium Amount** shall be an amount to be determined by the **Insurer.**

9. DEFENSE AND SETTLEMENT

A. *For Claims And Pre-Claim Inquiries*

| | |
|---|---|
| *(1) No Duty to Defend or Investigate* | The **Insureds** shall defend and contest any **Claim** made against them. The **Insurer** does not assume any duty to defend or investigate. |
| *(2) Right to Tender Defense* | Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of any **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds**. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against the **Insureds** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of the **Insureds** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation thereof sent by the **Insurer** to the **Named Entity**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**. However, the **Insurer** shall not be obligated to defend such **Claim** after the **Policy Aggregate** or any applicable **Separate Limit of Liability**, **Shared Limit of Liability** or **Excess Limit for Executives** has been exhausted. |
| *(3) Advancement* | When the **Insurer** has not assumed the defense of a **Claim** pursuant to subparagraph (2) above of this Clause 9, it shall advance, excess of any applicable Retention, covered **Defense Costs** or **Pre-Claim Inquiry Costs**, respectively, on a current basis, but no later than ninety (90) days after the |

**Insurer** has received itemized bills for those **Defense Costs** or **Pre-Claim Inquiry Costs**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured Person** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured Person** or **Organization** shall not be entitled under this **Coverage Section** to payment of such **Loss**.

(4) *Claims Participation and Cooperation*

The **Insurer** shall have the right, but not the obligation, to fully and effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** or **Pre-Claim Inquiry** that involves, or appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

The failure of any **Insured Person** to give the **Insurer** cooperation and information as required in the preceding paragraph shall not impair the rights of any other **Insured Person** under this **Coverage Section.**

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any **Defense Costs** or **Pre-Claim Inquiry Costs**, without the prior written consent of the **Insurer**. Such consent shall not be unreasonably withheld.

(5) Full Settlement Within Retention/ Consent Waived

If all **Insured** defendants are able to dispose of all **Claims** and/or **Pre-Claim Inquiries** which are subject to one Retention (inclusive of **Defense Costs**) for an amount not exceeding the Retention, then the **Insurer's** consent shall not be required for such disposition.

(6) *Applicability*

This *Defense and Settlement Clause* is not applicable to **Personal Reputation Expenses**. Nevertheless the **Insurer** does not, under this **Coverage Section**, assume any duty to defend.

## B. *Pre-Authorized Securities Defense Attorneys*

The list of approved panel counsel law firms (**"Panel Counsel"**) is accessible through the online directory at [http://www.aig.com/us/panelcounseldirectory](http://www.aig.com/us/panelcounseldirectory) under the "Directors & Officers (Securities Claims)" link.  The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made by the **Insureds** (or, in the event the **Insurer** has assumed the defense pursuant to Clause 9.A.(2) of this **Coverage Section**, the **Insurer**) to conduct the defense of any **Securities Claim** made against such **Insureds**.  With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or  is

otherwise reasonably justifiable.  The list of **Panel Counsel** may be amended from time to time by the **Insurer**.  However, if a firm is removed from the list during the **Policy Period**, the **Insureds** shall be entitled to select such firm to conduct the defense of any **Securities Claim** made against such **Insureds** during the **Policy Period.**

The **Insureds** (or, in the event the **Insurer** has assumed the defense pursuant to Clause 9.A(2) of this **Coverage Section**, the **Insurer**) shall select a **Panel Counsel** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought.  In the event the **Claim** is brought in a jurisdiction not included on the list, **Panel Counsel** shall be selected in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel** which will function as "lead counsel" in conducting the defense of the **Securities Claim**. This Pre-Authorized Securities Defense Attorneys Clause does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim.**

## C.  Pre-Approved E-Consultant Firms

The list of pre-approved **E-Consultant Firms** is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory  under the "e-Consultant Panel Members" link.  The list provides the **Insureds** with a choice of firms from which a selection of an **E-Consultant Firm** shall be made.  Any **E-Consultant Firm** may be hired by an **Insured** to perform **E-Discovery Consultant Services** without further approval by the **Insurer.**

## D.  Allocation

If both **Loss** covered by this **Coverage Section** and **Loss** not covered by this **Coverage Section** are incurred, either because a **Claim** is made against both **Insureds** and others or because a **Claim** includes both covered and uncovered matters, the **Insureds** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation of such amount between covered **Loss** and uncovered **Loss**.  In the event that a determination as to the amount of **Defense Costs** to be advanced under this **Coverage Section** cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable Retention amount which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

## 10.  SUBSIDIARY COVERAGE

## A.  Subsidiary Additions

**(1)** If "Auto-Acquisition Subsidiary Coverage" is selected on the Declarations for this **Coverage Section,** then in addition to the definition of **"Subsidiary"** set forth in Clause 14. DEFINITIONS of this **Coverage Section, Subsidiary** also means any for-profit entity whose securities are not publicly traded of which the **Named Entity**

acquires **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries.**

(2) If "Threshold Acquisition Subsidiary Coverage" is selected on the Declarations for this **Coverage Section**, then in addition to the definition of **"Subsidiary"** set forth in Clause 14. DEFINITIONS of this **Coverage Section**, **Subsidiary** also means any for-profit entity whose securities are not publicly traded: (i) of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and (ii) whose assets amount to:

(a) less than 25% of the total consolidated assets of each and every **Organization** as  reported in the **Named Entity's** audited financial statements as of the **Inception Date** of this policy; or

(b) 25% or more of those total consolidated assets, but such entity shall be a " **Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, whichever expires or ends first (the "**Auto-Subsidiary Period**");

provided that, with respect only to entities described in subparagraph (b) above, the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period.**

The **Insurer** shall extend coverage for any **Subsidiary** described in subparagraph (b) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary.**

## B. Former Subsidiaries

In the event the **Named Entity** loses **Management Control** of a **Subsidiary** during or prior to the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this **Coverage Section** but only with respect to **Claims** for **Wrongful Acts** that occurred or are alleged to have occurred during the time that the **Named Entity** had **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries.**

## C. Scope Of Subsidiary Coverage

Coverage as is afforded under this **Coverage Section** with respect to a **Claim** made against any **Subsidiary** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed during the time that such **Subsidiary** and such **Insured Person** meet the respective definitions of **Subsidiary** and **Insured Person** set forth in this **Coverage Section.**

## 11. APPLICATION AND UNDERWRITING

### A. Application And Reliance

The **Insurer** has relied upon the accuracy and completeness of the statements, warranties and representations contained in the **Application**. All such statements, warranties and representations are the basis for this **Coverage Section** and are to be considered as incorporated into this **Coverage Section.**

### B. Insured Person Coverage Non-Rescindable

Under no circumstances shall the coverage provided by this **Coverage Section** for **Loss** under Insuring Agreement A. Insured Person Coverage be deemed void, whether by rescission or otherwise, once the premium has been paid.

### C. Severability Of The Application

The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application**, no knowledge possessed by any **Organization** or any **Insured Person** shall be imputed to any other **Insured Person.**

If the statements, warranties and representations in the **Application** were not accurate and complete and materially affected either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Coverage Section**, then the **Insurer** shall have the right to void coverage under this **Coverage Section**, ab initio, with respect to:

(1) **Loss** under Insuring Agreement B. Indemnification Of Insured Person Coverage for the indemnification of any **Insured Person** who knew, as of the **Inception Date** of this policy, the facts that were not accurately and completely disclosed; and

(2) **Loss** under Insuring Agreement C. Organization Coverage if any **Insured Person** who is or was a chief executive officer or chief financial officer of the **Named Entity** knew, as of the **Inception Date** of this policy, the facts that were not accurately and completely disclosed.

The foregoing applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure had been provided to the **Insurer** or included within the **Application.**

## 12. PAYMENTS AND OBLIGATIONS OF ORGANIZATIONS AND   OTHERS

### A. Indemnification By Organizations

The **Organizations** agree to indemnify the **Insured Persons** and/or advance **Defense Costs** to the fullest extent permitted by law. If the **Insurer** pays under this **Coverage Section** any indemnification or advancement owed to any **Insured Person** by any **Organization** within an applicable Retention, then that **Organization** shall reimburse   the

**Insurer** for such amounts and such amounts shall become immediately due and payable as a direct obligation of the **Organization** to the **Insurer**.  The failure of an **Organization** to perform any of its obligations to indemnify the **Insured Persons** and/or advance **Defense Costs** under this **Coverage Section** shall not impair the rights of any **Insured Person** under this **Coverage Section.**

## B. *Other Insurance And Indemnification*

Such insurance as is provided by this **Coverage Section** shall apply only as excess over any other valid and collectible directors and officers liability insurance, unless such other insurance is specifically written as excess insurance over the applicable **Separate Limit of Liability**, **Shared Limit of Liability** or **Excess Limit for Executives** provided by this **Coverage Section**. This **Coverage Section** shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this **Coverage Section** may be obligated to pay **Loss**.  Such insurance as is provided by this **Coverage Section** shall apply as primary to any personal "umbrella" excess liability insurance purchased by an **Insured Person.**

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this **Coverage Section**, whether under the Insured Person Coverage or the Indemnification Of Insured Person Coverage, shall be specifically excess of: (a) any indemnification provided by an **Outside Entity**; and (b) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**.  Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other insurance company affiliate thereof ("**Other Policy**") (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required), then the **Insurer's** applicable **Separate Limit of Liability**, **Shared Limit of Liability** or **Excess Limit for Executives** for all **Loss** under this **Coverage Section**, as respects any such **Claim**, shall be reduced by the amount recoverable under such **Other Policy** for loss incurred in connection with such **Claim.**

## C. *Subrogation*

To the extent of any payment under this **Coverage Section**, the **Insurer** shall be subrogated to all of the **Organizations'** and **Insureds'** rights of recovery. Each **Organization** and each **Insured Person** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights, directly or in the name of the **Organization** or any **Insured Person.**

In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this **Coverage Section** unless the Conduct Exclusion applies with regard to such **Insured.**

## 13. ALTERNATIVE DISPUTE RESOLUTION

*ADR Options*                 All disputes or differences which may arise under or   in
                              connection  with this **Coverage Section**, whether arising

before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to an alternative dispute resolution (ADR) process as provided in this Clause. The **Named Entity** may elect the type of ADR process discussed below; provided, however, that absent a timely election, the **Insurer** may elect the type of ADR. In that case, the **Named Entity** shall have the right to reject the **Insurer's** choice of the type of ADR process at any time prior to its commencement, after which, the **Insured's** choice of ADR shall control.

*Mediation*

In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least ninety (90) days shall have elapsed from the date of the termination of the mediation.

*Arbitration*

In the event of arbitration, the decision of the arbitrator(s) shall be final, binding and provided to both parties, and the arbitration award shall not include attorney's fees or other costs.

*ADR Process*

*Selection of Arbitrator(s) or Mediator*: The **Insurer** and the **Named Entity** shall mutually consent to: (i) in the case of arbitration, an odd number of arbitrators which shall constitute the arbitration panel, or (ii) in the case of mediation, a single mediator. The arbitrator, arbitration panel members or mediator must be disinterested and have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the absence of agreement, the **Insurer** and the **Named Entity** each shall select one arbitrator, the two arbitrators shall select a third arbitrator, and the panel shall then determine applicable procedural rules.

*ADR Rules*: In considering the construction or interpretation of the provisions of this policy, the mediator or arbitrator(s) must give due consideration to the general principles of the law of the **State of Formation** of the **Named Entity**. Each party shall share equally the expenses of the process elected. At the election of the **Named Entity**, either choice of ADR process shall be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state reflected in the **Named Entity Address**. The **Named Entity** shall act on behalf of each and every **Insured** under this *Alternative Dispute Resolution Clause*. In all other respects, the **Insurer** and the **Named Entity** shall mutually agree to the procedural rules for the mediation or arbitration. In the absence of such an agreement, after

® American International Group, Inc. All righ

reasonable diligence, the arbitrator(s) or mediator shall specify commercially reasonable rules.

## 14. DEFINITIONS

The following definitions shall apply only for purposes of coverage provided under this **Coverage Section**. Terms appearing in **bold** in this **Coverage Section** but not defined herein shall have the meaning and/or value ascribed to them in the Declarations or in the Definitions Clause of the **General Terms and Conditions.**

**Affiliate** means: (1) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (2) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

**Application** means:

(1) the written statements and representations made by an **Insured** and provided to the **Insurer** during the negotiation of this policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this policy; and

(2) all warranties executed by or on behalf of an **Insured** and provided to the **Insurer** in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time.

**Asset Protection Costs** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

**Claim** means:

(1) a written demand for monetary, non-monetary or injunctive relief, including, but not limited to, any demand for mediation, arbitration or any other alternative dispute resolution process;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or

similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges;

(3) an **Insured Person Investigation**;

(4) a **Derivative Demand**; or

(5) an official request for **Extradition** of any **Insured Person**, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition.**

"**Claim**" shall include any **Securities Claim.**

| | |
|---|---|
| **Cleanup Costs** | means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants.** |
| **Defense Costs** | means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the cost of **E-Discovery Consultant Services** and premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from: |

(1) the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**; or

(2) an **Insured Person** lawfully: (i) opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or (ii) appealing any order or other grant of **Extradition** of that **Insured Person.**

**Defense Costs** shall not include: (a) **Derivative Investigation Costs,** (b) **Pre-Claim Inquiry Costs**, or (c) the compensation of any **Insured Person.**

| | |
|---|---|
| **Derivative Demand** | means a written demand by any shareholder of an **Organization** upon the board of directors (or equivalent management body) of such **Organization** to commence a civil action on behalf of the **Organization** against any **Executive** of the **Organization** for any actual or alleged wrongdoing on the part of such **Executive.** |
| **Derivative Investigation** | means, after receipt by any **Insured** of a **Claim** that is either a **Derivative Suit** or a **Derivative Demand**, any investigation conducted by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent |

management body) or any committee of the board of directors (or equivalent management body), as to how the **Organization** should respond.

| | |
|---|---|
| **Derivative Investigation Costs** | means reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** and incurred by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), in connection with a **Derivative Investigation. Derivative Investigation Costs** shall not include the compensation of any **Insured Person.** |
| **Derivative Suit** | means a lawsuit purportedly brought derivatively on behalf of an **Organization** by a shareholder of such **Organization** against an **Executive** of the **Organization.** |
| **Employee** | means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee. An individual who is leased to the **Organization** shall also be an **Employee**, but only if the **Organization** provides indemnification to such leased individual in the same manner as is provided to the **Organization's** employees. Any other individual who is contracted to perform work for the **Organization**, or who is an independent contractor for the **Organization** shall also be an **Employee**, but only if the **Organization** provides indemnification to such individual in the same manner as that provided to the **Organization's** employees, pursuant to a written contract. |
| **Excess Limit For Executives** | means the amount stated as such in the Declarations for this **Coverage Section.** |
| **Executive** | means any: |

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in subparagraph (1) above, or a member of the senior-most executive body (including, but not limited to, a supervisory board); and

(3) past, present and future General Counsel and Risk Manager

(or equivalent position) of the **Named Entity.**

| | |
|---|---|
| **Extradition** | means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation. |
| **Extradition Costs** | means **Defense Costs** incurred by an **Insured** in lawfully opposing any effort to obtain the **Extradition** of an **Insured Person.** |
| **Foreign Policy** | means the standard executive managerial liability policy (including all mandatory endorsements, if any) approved by the **Insurer** or any of its affiliates to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this **Coverage Section.** If more than one such policy exists, then "**Foreign Policy**" means the standard basic policy form most recently offered for sale for comparable risks by the **Insurer** or any of its affiliates in that **Foreign Jurisdiction.** The term "**Foreign Policy**" shall not include any partnership managerial, pension trust or professional liability coverage. |
| **Insured** | means any: |
| | (1) **Insured Person**; or |
| | (2) **Organization.** |
| **Insured Person** | means any: |
| | (1) **Executive** of an **Organization**; |
| | (2) **Employee** of an **Organization**; or |
| | (3) **Outside Entity Executive.** |
| **Insured Person Investigation** | means any civil, criminal, administrative or regulatory investigation of an **Insured Person**: |
| | (1) once the **Insured Person** is identified in writing by an **Enforcement Body** as a target of an investigation that may lead to a criminal, civil, administrative, regulatory or other enforcement proceeding; |
| | (2) in the case of an investigation by the SEC or any state, local or foreign body with similar regulation or enforcement authority, after the service of a subpoena (or in a **Foreign Jurisdiction**, the equivalent legal process) upon the **Insured Person**; |
| | (3) commenced by the arrest and detainment or incarceration for more than 24 hours of an **Insured Person** by any law |

enforcement authority in a **Foreign Jurisdiction.**

Writings which may identify an **Insured Person** as a target can include a target or "Wells" letter, whether or not labeled as such.

| | |
|---|---|
| **Liberty Protection Costs** | means: |

(1) reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre-**Claim** arrest or confinement to a (i) specified residence or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or

(2) reasonable and necessary premiums (but not collateral) consented to by the **Insurer** and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified amount required by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**, or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization.**

**Loss**                          means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs**, **Derivative Investigation Costs**, **Liberty Protection Costs** and **Pre-Claim Inquiry Costs**; however, "**Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (4) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing subparagraph (4), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this **Coverage Section.**

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to the Conduct Exclusion): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign

Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

**Management Control**

means:

(1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

(2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

**Non-Indemnifiable Loss**

means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization.**

**Outside Entity**

means any: (1) not-for-profit entity; or (2) other entity listed as an **"Outside Entity"** in an endorsement attached to this policy.

**Outside Entity Executive**

means any: (1) **Executive** of an **Organization** who is or was acting at the specific request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy.

In the event of a disagreement between the **Organization** and an **Outside Entity Executive** as to whether such **Insured** was acting "at the specific request or direction of the **Organization**, " this **Coverage Section** shall abide by the determination of the **Organization** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** against such **Outside Entity Executive** is made. In the event no notice of any such determination is given to the **Insurer** within such period, this **Coverage Section** shall apply as if the **Organization** determined that such **Outside Entity Executive** was not acting at the **Organization's** specific request or direction.

**Personal Reputation Crisis**

means any negative statement that is included in any press release or published by any print or electronic media outlet

© American International Group, Inc. All righ

regarding an **Executive** of an **Organization** made during the **Policy Period** by any individual authorized to speak on behalf of an **Enforcement Body.**

| | |
|---|---|
| **Personal Reputation Expenses** | means reasonable and necessary fees, costs and expenses of a **Crisis Firm** (as defined in the CrisisFund® Appendix attached to this policy) retained within 30 days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the adverse effects specifically to such **Executive's** reputation from a **Personal Reputation Crisis.** "**Personal Reputation Expenses**" shall not include any fees, costs or expenses of any **Crisis Firm** incurred by an **Executive** if such **Crisis Firm** is also retained by or on behalf of an **Organization.** |
| **Pollutants** | means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and **Waste.** "**Waste**" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials. |
| **Pre-Claim Inquiry** | means any pre-**Claim**: |

(1) verifiable request for an **Insured Person** of any **Organization**: (a) to appear at a meeting or interview; or (b) produce documents that, in either case, concerns the business of that **Organization** or that **Insured Person's** insured capacities, but only if the request came from any:
(i) **Enforcement Body**; or

(ii) **Organization**, or, on behalf of an **Organization**, by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):

(A) arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Organization** or that **Insured Person's** insured capacities; or

(B) as part of its **Derivative Investigation**; and

(2) arrest or confinement of an **Executive** of an **Organization** to a: (a) specified residence; or (b) secure custodial premises operated by or on behalf of an **Enforcement Body**, in connection with the business of any **Organization** or an **Insured Person's** capacity as an **Executive** or **Employee** of an **Organization.**

"**Pre-Claim Inquiry**" shall not include any routine or regularly

scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in an **Organization's** and/or **Enforcement Body's** normal review or compliance process.

**Pre-Claim Inquiry Costs**

means:

(1) with respect to any **Pre-Claim Inquiry** as defined in subparagraph (1) of the Definition of such term, the reasonable and necessary pre-**Claim** fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Insured Person**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding (i) any compensation of any Insured Person; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of an **Organization**, the requestor or any other third party; and

(2) with respect to any **Pre-Claim Inquiry** as defined in subparagraph (2) of the Definition of such term, any **Liberty Protection Costs.**

**Related Claim**

means a **Claim** alleging, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in another **Claim** made against an **Insured**; or (ii) the subject of a **Pre-Claim Inquiry** received by an **Insured Person.**

**Related Pre-Claim Inquiry**

means a **Pre-Claim Inquiry** involving, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in a **Claim** made against an **Insured**; or (ii) the subject of another **Pre-Claim Inquiry** received by an **Insured Person.**

**Securities Claim**

means a **Claim** made against any **Insured**:

(1) alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

(i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

(ii) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

(2) which is a **Derivative Suit.**

| | |
|---|---|
| **Securities Retention** | means the Retention applicable to **Loss** (including **Pre-Claim Inquiry Costs**) that arises out of (i) a **Securities Claim**, or (ii) **Pre-Claim Inquiry Costs** incurred in response to: (a) a **Pre-Claim Inquiry** by an **Enforcement Body** charged with the regulation of securities, or (b) a **Derivative Investigation.** |
| **SOX 304 Costs** | means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a). |
| **Subsidiary** | means: |

(1) any for-profit entity, whose securities are not publicly traded, of which the **Named Entity** has or had **Management Control** on or before the **Inception Date** of this policy, either directly or indirectly through one or more of its other **Subsidiaries**; and

(2) any not-for-profit entity sponsored exclusively by an **Organization.**

A for-profit entity ceases to be a **Subsidiary** when the **Named Entity** no longer maintains **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**. A not-for-profit entity ceases to be a **Subsidiary** when such entity is no longer sponsored exclusively by an **Organization.**

| | |
|---|---|
| **Transaction** | means, in addition to the definition set forth in the **General Terms and Conditions**, the appointment by any **Enforcement Body** of, or where any **Enforcement Body** assumes the role of, a trustee, receiver, conservator, rehabilitator, liquidator or similar official to take control of, supervise or oversee the **Named Entity**, or to liquidate or sell all or substantially all of the assets of the **Named Entity.** |

**UK Corporate Manslaughter Act Defense Costs**

means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

**Wrongful Act**

means:

(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act:

    (i) with respect to any **Executive** or **Employee** of an **Organization**, by such **Executive** or **Employee** in his or her capacity as such or any matter claimed against such **Executive** or **Employee** solely by reason of his or her status as such;

    (ii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization.**

[The balance of this page is intentionally left blank.]

® American International Group, Inc. All righ

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website and click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                    © American International Group, Inc. All rights reserved.

**ENDORSEMENT#** *1*

This endorsement, effective *12:01AM*        *August 21, 2023*           forms a part of
policy number   *01-420-28-24*
issued to *FRANCHISE GROUP, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NOTICE OF CLAIM
### (REPORTING BY E- MAIL)

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of
     Claim Reporting under this policy, such notice may also be given in writing pursuant
     to the policy's other terms and conditions to the Insurer by email at the following
     email address:

     c- claim@AIG.com

     Your email must reference the policy number for this policy. The date of the
     Insurer's receipt of the emailed notice shall constitute the date of notice.

     In addition to Notice of Claim Reporting via email, notice may also be given to the
     Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947,
     Shawnee Mission, KS 66225 or faxing such notice to (866) 227- 1750.

2.   *Definitions*: For this endorsement only, the following definitions shall apply:

     (a)   "Insurer" means the "Insurer," "Underwriter" or "Company" or other name
           specifically ascribed in this policy as the insurance company or underwriter for
           this policy.

     (b)   "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of
           loss" or other reference in the policy designated for reporting of claims, loss
           or occurrences or situations that may give rise or result in loss under this
           policy.

     (c)   "Policy" means the policy, bond or other insurance product to which this
           endorsement is attached.

3.   This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage
     Section, if any, provided by this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____

AUTHORIZED REPRESENTATIVE

Ⓡ American International Group, Inc. All rights reserved.
*END 001*

<u>ENDORSEMENT#</u> 2

This endorsement, effective *at 12:01AM August 21, 2023*                    forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*


### PRODUCT CLAIM EXCLUSION
### (ENTITY ONLY; SECURITIES CLAIM CARVEBACK; DEFENSE TENDER OPTION NON-APPLICABLE)

### This endorsement modifies the Private D&O Coverage Section.

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows:

1.  Solely with respect to Coverage C of the **Private D&O Coverage Section**, the **Insurer** shall not be liable to make any payments for **Loss** in connection with any **Product Claim(s);** provided however that this exclusion shall not apply to any **Securities Claim**. As used herein, "**Product Claim(s)"** means any **Claim(s)** alleging, arising out of, based upon or attributable to:

    (i)   the use, effects or treatment of any product developed, handled by or manufactured by any **Insured**, including, but not limited to, the rendering of or failure to render, or promotion of or failure to promote, advice as to when or how a product should be used and its possible effects; or

    (ii)  false or deceptive advertising, misrepresentation or unfair or deceptive trade practices in connection with the advertising or labeling of an **Insured's** products or services.

2.  Solely with respect to **Product Claims,** Clause 9.*A.*(2) *Right to Tender Defense* of the **Private D&O Coverage Section** is deleted in its entirety.

3.  Solely with respect to **Product Claims,** in the first sentence of Clause 9.*A.*(3) *Advancement* of the **Private D&O Coverage Section,** the words "When the **Insurer** has not assumed the defense of a **Claim** pursuant to subparagraph (2) above of this Clause 9, it shall advance," are deleted in their entirety and replaced with the words "The **Insurer** shall advance,".

4.  Solely with respect to **Product Claims,** in Clause 9.*B. Pre-Authorized Securities Defense Attorneys* of the **Private D&O Coverage Section,** the parenthetical phrase "(or, in the event the **Insurer** has assumed the defense pursuant to Clause 9.A.(2) of this **Coverage Section,** the **Insurer**)" is deleted in its entirety wherever it appears.

5.  Solely with respect to **Product Claims** and solely with respect to the **Private D&O Coverage Section,** the last sentence of Clause 9. NOTICE AND AUTHORITY of the **General Terms and**

©All rights reserved.
*END 002*

<u>ENDORSEMENT</u># 2    (Continued)

This endorsement, effective *at 12:01AM August 21, 2023*                     forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

**Conditions** is amended by deleting the words "the exercising or declining of the right to tender the defense of a **Claim**, **Crisis** or circumstance to the **Insurer**" in their entirety.

6.  **It** is further understood and agreed that pursuant to this endorsement and notwithstanding any provision to the contrary, the **Insurer** does not have the duty under the **Private D&O Coverage Section** to defend or investigate any **Product Claims** or any obligation to assume the defense of any **Product Claims.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 002*

140935 (06/21)                     2

<u>ENDORSEMENT</u># 3

This endorsement, effective *at 12:01AM August 21, 2023*                    forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CYBER EXCLUSION**
**(SECURITIES CLAIM CARVEBACK)**

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to Insuring Agreement C. *Organization Coverage* of the **Private D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Organization** for a **Security Failure** or **Privacy Event**. Notwithstanding the foregoing, this exclusion shall not apply to any **Securities Claim**.

The following definitions apply to this endorsement:

"**Computer System**" means any (1) computer hardware, software or any components thereof that are linked together through a network of two or more devices accessible through the Internet or internal network or that are connected through data storage or other peripheral devices (including, without limitation, wireless and mobile devices), and are under the ownership, operation or control of, or leased by, an **Organization**; or (2) "cloud computing" or other hosted resources operated by a third party service provider for the use of, or on behalf of, an **Organization**.

"**Confidential Information**" means any personally identifiable information or other third party information in an **Organization**'s care, custody or control or for which an **Organization** is legally responsible, including, but not limited to:
(1) information from which an individual may be uniquely and reliably identified or contacted, including, without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories and passwords;
(2) information concerning an individual that would be considered "nonpublic personal information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (Public Law 106-102, 113 Stat. 1338) (as amended) and its implementing regulations, or protected personal information under any similar federal, state, local or foreign law;
(3) information concerning an individual that would be considered "protected health information" or "electronic protected health information" within the Health Insurance Portability and Accountability Act of 1996 (as amended) (HIPAA) or the Health Information Technology for Economic and Clinical Health Act (HITECH Act), and their

©All rights reserved.
***END 003***

<u>**ENDORSEMENT**</u># 3      (Continued)

This endorsement, effective *at 12:01AM August 21, 2023*                              forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

      implementing regulations, or protected health-related information under any similar federal, state, local or foreign law;

(4) information concerning an individual that would be considered "personal data" or "sensitive personal data" within the meaning of the General Data Protection Regulation (Regulation (EU) 2016/679) (GDPR) and any amendments thereto;

(5) information used for authenticating customers for normal business transactions; or

(6) any third party's trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, records, reports or other item of information that is not available to the general public.

"**Privacy Event**" means any failure to protect **Confidential Information** (whether by "phishing," other social engineering technique or otherwise) including, without limitation, that which could result in an identity theft or other wrongful emulation of the identity of an individual or corporation, or any failure to disclose such an event in violation of any **Security Breach Notice Law**.

"**Security Breach Notice Law**" means any federal, state, local or foreign statute or regulation that requires an entity collecting or storing **Confidential Information** to provide notice of any actual or potential unauthorized access by others to such **Confidential Information**.

"**Security Failure**" means a failure or violation of the security of a **Computer System** including, without limitation, that which results in or fails to mitigate any unauthorized access, unauthorized use, denial of service attack or receipt or transmission of a malicious code. **Security Failure** includes any such failure or violation, resulting from the theft of a password or access code from an **Insured's** premises, the **Computer System**, or an officer, director or employee of an **Organization**.

     ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_signature_

AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 003*

ENDORSEMENT# *4*

This endorsement, effective at *12:01AM*    *August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Product Name: *PortfolioSelect*

### ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided and payment of loss under this policy shall only be made in full compliance with enforceable United Nations economic and trade sanctions and the trade and economic sanction laws or regulations of the European Union and the United States of America, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc. All rights reserved.

*END 004*

**ENDORSEMENT#** *5*

This endorsement, effective at *12:01AM*    *August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*
Product Name: *PortfolioSelect*

### CRISISFUND® Endorsement

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

**I.**

Item 6. **COVERAGE SUMMARY** of the Declarations Page is amended to include:

| CrisisFund® | |
|---|---|
| | |
| Public D&O CrisisFund® Limit of Liability<br>*Shared with Public D&O Limit of Liability* | |
| Private D&O CrisisFund® Limit of Liability<br>*Shared with Private D&O Limit of Liability* | *$50,000* |
| Non-Profit D&O CrisisFund® Limit of Liability<br>*Shared with Non-Profit D&O Limit of Liability* | |
| EPL CrisisFund® Limit of Liability<br>*Shared with EPL Limit of Liability* | |
| FLI CrisisFund® Limit of Liability<br>*Shared with FLI Limit of Liability* | |

**II.**

The following **CrisisFund Coverage Section** is added to the policy:

# CRISISFUND®
## ("CrisisFund Coverage Section")

<u>**Notice**</u>: Pursuant to Clause 1. **TERMS AND CONDITIONS** of the **General Terms and Conditions**, the **General Terms and Conditions** are incorporated by reference into, made a part of, and are expressly applicable to this **CrisisFund Coverage Section**, unless otherwise explicitly stated to the contrary in this **CrisisFund Coverage Section.**

In consideration of the payment of the premium, and each of their respective rights and obligations in this policy, the **Insureds** and the **Insurer** agree as follows:

© American International Group, Inc. All rights reserved.

*END 005*

<u>ENDORSEMENT#</u> *5*    (continued)

## 1. INSURING AGREEMENTS

Solely with respect to a **Crisis** first occurring during the **Policy Period** and reported to the **Insurer** as required by this **Coverage Section**, this **Coverage Section** affords the following coverage:

The **Insurer** shall pay all **Crisis Loss** that an **Insured** incurs solely as a result of a **Crisis**; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.

## 2. OTHER CRISISFUND INSURANCE

In the event that an **Insured** has purchased another insurance policy from the **Insurer** providing similar coverage to this **Coverage Section**, then the highest applicable limit of insurance for such coverage among this policy and such other policies shall apply, and in all circumstances, the **Insurer's** maximum liability for such coverage shall not be greater than the highest limit of insurance for such coverage among all such policies.

## 3. LIMITS OF LIABILITY

In addition to the provisions of Clause 3. LIMITS OF LIABILITY of the **General Terms and Conditions**, the **CrisisFund** is the **Insurer's** maximum liability for all **Crisis Loss** in the aggregate arising from any and all **Crises** first occurring during the **Policy Period**, regardless of the number of **Crises** reported during the **Policy Period**. Each CrisisFund Limit of Liability stated in Item 6 of the Declarations (as amended above) is a **Shared Limit of Liability** to be shared with the respective **Coverage Section** indicated. Each CrisisFund Limit of Liability stated in Item 6 of the Declarations (as amended above) shall apply solely to a **Crisis** as defined in the CrisisFund Appendix for the respective **Coverage Section** with which such CrisisFund Limit of Liability is shared. The **Insurer** shall not be responsible to pay any **Crisis Loss** upon exhaustion of the **Policy Aggregate** or the applicable CrisisFund Limit of Liability stated in Item 6 of the Declarations (as amended above).

## 4. RETENTION

In no event shall a Retention be applied to **Crisis Loss.**

## 5. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Crisis Loss**:

(a)    arising out of, based upon or attributable to any **Crises** related to: (1) any pending or prior litigation as of the **Continuity Date** for this **Coverage Section**; or (2) any act or event which has been reported, or in any circumstances of which notice has been given, under any policy of which this **Coverage Section** is a renewal or replacement or which it may succeed in time.

© American International Group, Inc. All rights reserved.

*END 005*

(b)   arising out of, based upon or attributable to any: (1) presence of **Pollutants**; (2) actual or threatened discharge, dispersal, release or escape of **Pollutants**; or (3) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of **Pollutants.**

## 6. NOTICE AND REPORTING

Notice hereunder shall be given in writing to the **Insurer** at the **Claims Address** indicated in the Declarations. If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this **Coverage Section**, notify the **Insurer** in writing of a **Crisis** as soon as practicable after the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Crisis**. In all such events, notification must be provided no later than 60 days after the end of the **Policy Period.**

## 7. DEFINITIONS

The following definitions shall apply only for purposes of coverage provided under this **Coverage Section**. Terms appearing in **bold** in this **Coverage Section** but not defined herein shall have the meaning and/or value ascribed to them in the Declarations or in the *Definitions Clause* of the **General Terms and Conditions.**

| | |
|---|---|
| **Continuity Date** | means, for each **Crisis** as defined in the CrisisFund Appendix for the respective **Coverage Section** with which the applicable CrisisFund Limit of Liability is shared, the same **Continuity Date** applicable to such **Coverage Section.** |
| **CrisisFund Appendix** | means the appendix or appendices, as applicable, attached to this policy and entitled "CrisisFund Appendix," which is/are hereby incorporated by reference into, made a part of and are expressly applicable to this **CrisisFund Coverage Section**, unless otherwise explicitly stated to the contrary in this **CrisisFund Coverage Section.** |
| **Crisis** | has the meaning as defined in the applicable **CrisisFund Appendix**. A **Crisis** shall first commence when the **Insured** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Insured** that such **Crisis** no longer exists or when the **CrisisFund** has been exhausted. |

© American International Group, Inc. All rights reserved.

*END 005*

**ENDORSEMENT# *5*** (continued)

| | |
|---|---|
| **Crisis Firm** | means any public relations firm, crisis management firm or law firm on the list of approved firms that is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "CrisisFund® " link.  Any **Crisis Firm** may be hired by an **Insured** to perform **Crisis Services** without further approval by the **Insurer.** |
| **Crisis Services** | has the meaning as defined in the applicable **CrisisFund Appendix.** |
| **Crisis Loss** | has the meaning as defined in the applicable **CrisisFund Appendix.** |
| **CrisisFund** | means the **Shared Limit of Liability** stated in Item 6 of the Declarations (as amended above), which shall be the **Insurer's** maximum liability for all **Crisis Loss** in the aggregate arising from any and all **Crises** first occurring during the **Policy Period**, regardless of the number of **Crises** reported during the **Policy Period.** |
| **Insured** | means an **Organization.** |
| **Pollutants** | means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials. |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

℗ American International Group, Inc. All rights reserved.

*END 005*

<u>ENDORSEMENT#</u> *6*

This Endorsement, effective at *12:01AM*    *August 21, 2023*        forms a part of
Policy No:    *01-420-28-24*
Issued To: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PUBLIC OFFERING EXCLUSION AMENDED
### (OFFERINGS, LISTINGS AND COMBINATIONS)

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1. In Clause 4.B. *Exclusions* of the **Private D&O Coverage Section**, paragraph (9) *Public Offering* and paragraph (10) *Acquisition of Publicly Traded Entity* are deleted in their entirety and replaced with the following:

*Public Offering*  alleging, arising out of, based upon or attributable to any public offering of securities or **Listing** by an **Organization**, an **Outside Entity** or an **Affiliate** or alleging a purchase or sale of such securities subsequent to such public offering or **Listing**; provided, however, this exclusion shall not apply to:

(a) any purchase or sale of securities exempted pursuant to Section 3(b) of the Securities Act of 1933.  Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; provided, however, the **Named Entity** shall give the **Insurer** written notice of any public offering exempted pursuant to Section 3(b), together with full particulars and as soon as practicable, but not later than thirty (30) days after the effective date of the public offering;

(b) any public offering of securities (other than a public offering described in subparagraph (a) above), as well as any purchase or sale of such securities subsequent to such public offering, in the event that within thirty (30) days prior to the effective time of such public offering: (i) the **Named Entity** shall give the **Insurer** written notice of such public offering together with full particulars and underwriting information required thereto; and (ii) the **Named Entity** accepts such terms, conditions and additional premium required by the **Insurer** for such coverage. Such coverage is also subject to the **Named Entity** paying when due any such additional premium.  In the event the **Organization** gives written notice with full particulars and underwriting information pursuant to subparagraph (b)(i) above, then the **Insurer** must offer a quote for coverage under this subparagraph; or

(c) any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the **Insured's** preparations to commence an initial public offering ("**IPO**") or **Listing**, and which occurred at any time prior to 12:01 a.m. on the date the **IPO** or **Listing** commences ("**Exch**

**ENDORSEMENT#** *6*

ange Event Effective Time"), including any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the road show of the **IPO** or **Listing**; provided, however that the coverage otherwise afforded under this subparagraph (c) shall be deemed to be void *ab initio* effective the **Exchange Event Effective Time**; provided further, however, that coverage shall not be deemed void *ab initio* if (i) the **Claim** is first made and reported pursuant to Clause 7(a) of this **Coverage Section** prior to the **Exchange Event Effective Time**, and (ii) a public company directors' and officers' and management liability policy is not applicable to such **Claim**;

*Combination with a Publicly Traded Entity*

alleging, arising out of, based upon or attributable to any **Combination** involving the securities of a "**Publicly Traded Entity**"; provided, however, this exclusion shall not apply:

(a) in the event that within 30 days prior to the **Combination**, the **Named Entity** gives written notice of the **Combination** to the **Insurer** together with full particulars and underwriting informa tion required and agrees to any additional premium or amend ment of the provisions of this **Coverage Section** required by the **Insurer** relating to the **Combination**. Further, Coverage as shall be afforded to the **Combination** is conditioned upon the **Named Entity** paying when due any additional premium requi red by the **Insurer** relating to the **Combination**; or

(b) to any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the **Insured's** preparations to commence a **Combination** , and which occured at any time prior to 12:01 a.m. on the date of the **Combination** ("**Combination Effective Time**"), inc luding any **Claim** for **Loss** alleging a **Wrongful Act** which occu red during the road show of the **Combination**; provided, how ever that the coverage otherwise afforded under this subpara grapg (c) shall be deemed to be void ab initio effective the **Combination Effective Time**; provided further, however, that coverage shall not be deemed void ab initio if (i) the **Claim** is first made and reported pursuant to Clause 7(a) of this Cover age Section prior to the **Combination Effective Time**, and (ii) a public company directors' and officers' and management liabil ity policy is not applicable to such **Claim**;

2. Clause 5. RETENTION of the **Private D&O Coverage Section** is amended by adding the following paragraph at the end thereof:

Notwithstanding anything to the contrary in Clause 2. RETENTION of the **General Terms and Conditions**, the applicable Retention amount for all **Loss** in connection with any **Claim** in connection with any **Combination** or **Exchange Activity** shall be *$250,000* amount and not the Retention amount stated in the Declarations or any endorsement relative to this **Coverage Section**. In the event any such **Claim** triggers more than one Retention amount, then the highest applicable Retention amount shall apply to such **Claim**.

*END 006*

**ENDORSEMENT#** *6*

3.    As used in this endorsement,

"**Combination**" means an acquisition, consolidation, merger or other business combination (or proposed acquisition, consolidation, merger or other business combination) involving more than fifty percent (50%) of the outstanding securities or other ownership interest of, or of all or substantially all of the assets of, any entity, involving any **Organization**, **Outside Entity**, or **Affiliate**.

"**Publicly Traded Entity**" means any entity the securities of which have previously been subject to a public offering.

"**Exchange Activity**" means any public offering of securities or **Listing** by an **Organization**, an **Outside Entity** or an **Affiliate** or any purchase or sale of such securities subsequent to such public offering or **Listing.**

"**Listing**" means any listing of any securities of an **Organization**, **Outside Entity**, or **Affiliate** on any stock market or securities exchange.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

<u>ENDORSEMENT#</u> *7*

This endorsement, effective at *12:01AM*    *August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Product Name:  *PortfolioSelect*

### FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT

This endorsement modifies insurance provided by this Policy:

### DISCLOSURE

You should know that where coverage is provided by this Policy for losses resulting from "Certified Acts of Terrorism" (as defined by Section 102 (1) of United States Terrorism Risk Insurance Act), such losses may be partially reimbursed by the United States Government under a formula established by federal law.   However, your Policy may contain other exclusions which might affect your coverage such as, an exclusion for nuclear events.   Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning January 1, 2018; 81% beginning January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "Certified Acts of Terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion in a calendar year and if we have met our insurer deductible, we are not liable for the payment of any portion of the amount of such losses that exceeds $100 billion; and for aggregate insured losses up to $100 billion, we will only pay a pro rata share of such insured losses as determined by the Secretary of the Treasury.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊American International Group, Inc. All rights reserved.

*END 007*

ENDORSEMENT# *8*

This endorsement, effective at *12:01AM*    *August 21, 2023*      forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Product Name: *PortfolioSelect*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
#### (Specified Coverage Sections)

**This endorsement modifies the following Specified Coverage Section(s):**

**Specified Coverage Section(s):**

*Private D&O*

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to the **Specified Coverage Section(s)**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

   (1)    **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Organization**, or discharged or dispersed therefrom;

   (2)    **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Organization**;

   (3)    the furnishing by an **Insured** or the **Organization** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)    **Claims** for damage or other injury to the **Organization** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**; or

B.    (1)    which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or

© American International Group, Inc. All rights reserved.

*END 008*

**ENDORSEMENT#** *8*    (continued)

(2)    with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

**"Hazardous Properties"** include radioactive, toxic or explosive properties.

**"Nuclear facility"** means:

(a) any nuclear reactor;

(b) any equipment or device designed or used for:
(1) separating the isotopes of uranium or plutonium,
(2) processing or utilizing spent fuel, or
(3) handling, processing or packaging wastes;

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear Material"** means source material, special nuclear material or byproduct material.

**"Nuclear Reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Source Material,"** **"Special Nuclear Material,"** and **"Byproduct Material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent Fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

**"Waste"** means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.

© American International Group, Inc. All rights reserved.

*END 008*

**ENDORSEMENT#** *8*    (continued)

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓒ American International Group, Inc. All rights reserved.

*END 008*

<u>ENDORSEMENT</u># 9

This endorsement, effective *at 12:01AM August 21, 2023*                    forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*


**INTELLECTUAL PROPERTY EXCLUSION AMENDED
(SECURITIES CLAIM CARVEBACK)**

**This endorsement modifies the Private D&O Coverage Section.**


In consideration of the premium charged, it is hereby understood and agreed that in Clause 4.B.(16) *Entity Only Exclusions* of the **Private D&O Coverage Section** is amended by deleting subparagraph (a) in its entirety and replacing it with the following:

(a) alleging, arising out of, based upon or attributable to, directly or indirectly, any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, service mark, trade secret, or any other intellectual property rights; provided, however, that this exclusion shall not apply to any **Securities Claim**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


AUTHORIZED REPRESENTATIVE
_____

©All rights reserved.
*END 009*

ENDORSEMENT# *10*

This endorsement, effective at *12:01AM*    *August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*
Product Name: *PortfolioSelect*

## AMEND DEFINITION OF EXECUTIVE
## (INCLUDE ADVISORY BOARD MEMBERS)

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that the definition of **"Executive"** in the **Private D&O Coverage Section** is amended to include members of any advisory committee of the board of directors of the **Organization**, solely in their capacity as such, subject to the following **Continuity Date**: *August 21, 2023*.

It is further understood and agreed that, for the purpose of the applicability of the coverage provided by this endorsement, the **Organization** will be conclusively deemed to have indemnified the persons afforded coverage by this endorsement to the extent that the **Organization** is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Organization**.  The **Organization** hereby agrees to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

It is further understood and agreed that, solely with respect to any additional coverage granted by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** made against any **Executive**:

(1)    alleging, arising out of, based upon or attributable to any pending or prior litigation as of the **Continuity Date** listed above, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation; and

(2)    alleging any **Wrongful Act** occurring prior to the **Continuity Date** listed above, if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc. All rights reserved.

*END 010*

ENDORSEMENT# *11*

This endorsement, effective at *12:01AM     August 21, 2023*     forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*
Product Name: *PortfolioSelect*

## CLAIM DEFINITION AMENDED

## (REQUEST TO TOLL OR WAIVE STATUTE OF LIMITATIONS)

### This endorsement modifies the Private D&O Coverage Section.

In consideration of the premium charged, it is hereby understood and agreed that the
**Private D&O Coverage Section** is amended as follows:

1. In Clause 14. DEFINITIONS, the definition of "**Claim**" shall be amended by adding the
   following subparagraph (6) as follows:

   (6) the receipt by an **Insured** of any written request to toll or waive a period or statute
   of limitations which may be applicable to any **Claim** that may be made for any
   **Wrongful Act** of any **Insured.**

2. In Clause 7. NOTICE AND REPORTING, the last sentence of subparagraph (c), entitled
   "*Relation Back to Reported Circumstances Which May Give Rise to a Claim*," is deleted
   and replaced with the following:

   In order to be effective, notification of circumstances must specify the facts,
   circumstances, nature of the alleged **Wrongful Act** anticipated and reasons for
   anticipating such **Claim**, with full particulars as to dates, persons and entities involved.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc. All rights reserved.

*END 011*

<u>ENDORSEMENT#</u> 12

This endorsement, effective *at 12:01AM August 21, 2023*                         forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ALTERNATIVE DISPUTE RESOLUTION CLAUSE**
**(WAITING PERIOD AMENDED – 60 DAYS)**

**This endorsement amends the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. ALTERNATIVE DISPUTE RESOLUTION of the **Private D&O Coverage Section** is amended by deleting the paragraph entitled, *Mediation*, in its entirety and replacing it with the following:

| | |
|---|---|
| *Mediation* | In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least sixty (60) days shall have elapsed from the date of the termination of the mediation. |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 012*

123739 (03/17)                               1

<u>ENDORSEMENT#</u> *13*

This endorsement, effective at *12:01AM    August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*
Product Name:    *PortfolioSelect*

### DEFENSE AND SETTLEMENT AMENDED
### (VARIABLE DAYS TO ADVANCE DEFENSE COSTS)

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that Clause 9.A.(3) *Advancement* of the **Private D&O Coverage Section** is amended by deleting the first sentence thereof in its entirety and replacing it with the following:

> When the **Insurer** has not assumed the defense of a **Claim** pursuant to subparagraph (2) above of this Clause 9, it shall advance, excess of any applicable Retention, covered **Defense Costs** or **Pre**-**Claim Inquiry Costs**, respectively, on a current basis, but no later than *Ninety (90)* days after the **Insurer** has received itemized bills for those **Defense Costs** or **Pre**-**Claim Inquiry Costs**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◈ American International Group, Inc. All rights reserved.

*END 013*

<u>ENDORSEMENT#</u> 14

This endorsement, effective *at 12:01AM August 21, 2023*                     forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*


**EMPLOYMENT PRACTICES & THIRD-PARTY VIOLATIONS EXCLUSION AMENDED**
**(AGAINST AN INSURED PERSON OR ANY OTHER INDIVIDUAL)**

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that in Clause 4.B. *Exclusions* of the **Private D&O Coverage Section**, Exclusion (13) *Employment Practices & Third-Party Violations* is deleted in its entirety and replaced with the following:

| | | |
|---|---|---|
| (13) | *Employment Practices & Third-Party Violations* | alleging, arising out of, based upon, or attributable to: (a) the employment of any individual or any employment practice, including, but not limited to, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim; or (b) harassment or unlawful discrimination, or the violation of the civil rights of an individual relating to such harassment or discrimination; in all cases, whether alleged to be committed against an **Insured Person** or any other individual; |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 014*

<u>ENDORSEMENT#</u> *15*

This endorsement, effective at *12:01AM*    *August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*
Product Name:    *PortfolioSelect*

### ENTITY OR INDIVIDUAL V. INSURED EXCLUSION AMENDED
### (WHISTLEBLOWER CARVEBACK)

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(6) *Entity or Individual v. Insured Exclusion* of the **Private D&O Coverage Section** is amended by adding the following subparagraph to the end thereof:

(WC)  to any **Executive** engaging in any protected "whistleblower" activity specified in 18 U.S.C. 1514A(a) or any other similar "whistleblower" protection provided under any federal, state, local or foreign securities laws; provided, however, this subparagraph (WC) shall not apply where the actions of any **Executive** includes the filing of any proceeding or voluntarily testifying, voluntarily participating in or voluntarily assisting (other than de minimus assistance) in the filing or prosecution of any proceeding against an **Insured** relating to any violation of any rule or regulation of the Securities and Exchange Commission or any similar provision of any federal, state, local or foreign rule or law relating to fraud against shareholders, other than such actions in connection with a proceeding that is brought by the Securities and Exchange Commission, any similar federal, state, local or foreign regulatory body that regulates securities, or any federal, state, local or foreign law enforcement authority.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc.  All rights reserved.

END 015

<u>**ENDORSEMENT#** 16</u>

This endorsement, effective *at 12:01AM August 21, 2023*                      forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

## ORDER OF PAYMENTS AMENDED
## (WRITTEN REQUEST DELETED)

### This endorsement modifies the Private D&O Coverage Section.

In consideration of the premium charged, it is hereby understood and agreed that Clause 3.*B. Order of Payments* of the **Private D&O Coverage Section** is hereby deleted in its entirety and replaced with the following:

*B. Order Of Payments*

In the event of **Loss** arising from a covered **Claim(s)** and/or **Pre-Claim Inquiry(ies)** for which payment is due under the provisions of this **Coverage Section**, the **Insurer** shall in all events:

(1)    First, pay all **Loss** covered under Insuring Agreement A. *Insured Person Coverage*;

(2)    Second, only after payment of **Loss** has been made pursuant to subparagraph (1) above and to the extent that any amount of the applicable **Separate Limit of Liability** or **Shared Limit of Liability** shall remain available, pay **Loss** covered under Insuring Agreement B. *Indemnification Of Insured Person Coverage*; and

(3)    Lastly, only after payment of **Loss** has been made pursuant to subparagraphs (1) and (2) above and to the extent that any amount of the applicable **Separate Limit of Liability** or **Shared Limit of Liability** shall remain available, pay **Loss** covered under Insuring Agreement C. *Organization Coverage*.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 016*

120666 (11/15)                    1

<u>ENDORSEMENT#</u> *17*

This endorsement, effective at *12:01AM*    *August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*
Product Name: *PortfolioSelect*

## SEVERABILITY OF THE APPLICATION AMENDED
## (NON-RESCINDABLE)

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that Clause 11. APPLICATION AND UNDERWRITING of the **Private D&O Coverage Section** is amended by deleting paragraphs B & C thereof and replacing it with the following:

*B. Non-Rescindable*

Under no circumstances shall the coverage provided by this **Coverage Section** be deemed void, whether by rescission or otherwise, once the premium has been paid.

*C. Severability of the Application*

The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application**, no knowledge possessed by any **Organization** or any **Insured Person** shall be imputed to any other **Insured Person.**

However, if the statements, warranties and representations in the **Application** were not accurate and complete and materially affected either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, no coverage shall be afforded for any **Claim** alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or inaccurate statements, warranties or representations with respect to:

(1) **Loss** of any **Insured Person** who knew, as of the inception date of the **Policy Period**, of such inaccurate or incomplete statements, warranties or representations; and

(2) **Loss** of an **Organization**, if any past or present chief executive officer or chief financial officer of the **Named Entity** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed.

The foregoing applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure had been provided to the **Insurer** or included within the **Application.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc. All rights reserved.

*END 017*

<u>ENDORSEMENT#</u> *18*

This endorsement, effective at *12:01AM*    *August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*
Product Name: *PortfolioSelect*

## CONDUCT EXCLUSIONS AMENDED
## (PERSONAL PROFIT AND FINANCIAL ADVANTAGE)

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(1) *Conduct Exclusion* of the **Private D&O Coverage Section** is deleted in its entirety and replaced with the following:

(1) *Conduct*    arising out of, based upon or attributable to any:

(a) personal profit or other financial advantage to which the **Insured** was not legally entitled;

(b) deliberate criminal or deliberate fraudulent act by the **Insured**;

(c) purchase or sale by an **Insured** of securities of the **Organization** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law; or

(d) payment to any **Insured** of any remuneration without the previous approval of the stockholders of the **Organization**;

if established by any final, non-appealable adjudication in any underlying action;

provided, however:

(i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and

(ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction**   will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc. All rights reserved.

***END 018***

<u>ENDORSEMENT</u># 19

This endorsement, effective *at 12:01AM August 21, 2023*                    forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*


### FRANCHISE EXCLUSION

**This endorsement modifies the Private D&O Coverage Section.**

**I**n consideration of the premium charged, it is hereby understood and agreed that, solely with respect to the **Private D&O Coverage Section:**

1. The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim:**

   (i) brought by or on behalf of any franchisee or any entity or individual having an ownership interest in such franchisee; or

   (ii) alleging, arising out of, based upon or attributable to the purchasing or selling of a franchise and/or the licensing of a franchisee; or

   (iii) alleging, arising out of, based upon or attributable to liability for any act, error or omissions of any franchisee or any officer, director, employee shareholder or owner thereof; or

   (iv) alleging, arising out of, based upon or attributable to **Franchising Services**.

2. As used herein, "**Franchising Services**" means any of the following:

   (i) marketing and solicitation activities undertaken or engaged in by an **Insured** in connection with the offer of sale of franchises pursuant to any franchise agreement or contract;

   (ii) the preparation, registration, renewal or amendment of a Uniform Franchise Offering Circular;

   (iii) duties, obligations or other responsibilities of an **Insured** to franchisees which render the **Insured** liable to the franchisee arising out of third-party claims against the franchisee, including, but not limited to, failure by the **Insured** to monitor compliance with standards, specifications and operating procedures for the franchisees prescribed by the **Insured**;

   (iv) rendering of, or failing to render, services, training, advertising, or other support to franchisees pursuant to the terms of a franchise agreement or contract or as disclosed to franchisees in an offering circular or other disclosure document;

   (v) assistance in:  (a) the selection of a franchise site; or (b) negotiation of a lease for the premises of a franchise;

©All rights reserved.
*END 019*

<u>**ENDORSEMENT**</u># 19      (Continued)

This endorsement, effective *at 12:01AM August 21, 2023*                    forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

    (vi) failure or refusal to approve a sale, transfer or assignment of a franchise or all or part of the assets of a franchise; and

    (vii)    grant of a franchise, or the operation of a franchised operation owned by an **Insured**, which encroaches on an existing franchisee's designated location and/or exclusive area of operation.


      ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 019*

ENDORSEMENT# *20*

This endorsement, effective at *12:01AM*    *August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*
Product Name: *PortfolioSelect*

## ANTITRUST COVERAGE ENDORSEMENT
### (SEPARATE RETENTION, SUBLIMIT OF LIABILITY & COINSURANCE)

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.    In Clause 4.B. *Exclusions* of the **Private D&O Coverage Section**, exclusion (16)(b) is deleted in its entirety.

2.    Clause 5. RETENTION of the **Private D&O Coverage Section** is amended by adding the following paragraph at the end thereof:

Additionally, notwithstanding anything to the contrary in Clause 2. **RETENTION** of the **General Terms and Conditions**, the applicable Retention amount for all **Loss** arising from any **Antitrust Claim** shall be *$500,000* and not the Retention amount stated in the Declarations or any endorsement relative to this **Coverage Section**. In the event a **Claim** triggers more than one Retention amount, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** arising from such **Claim.**

3.    Clause 6. LIMITS OF LIABILITY of the **Private D&O Coverage Section** is amended by adding the following at the end thereof:

**ANTITRUST SUBLIMIT OF LIABILITY**

Notwithstanding anything to the contrary stated above or in Clause 3. LIMITS OF LIABILITY of the **General Terms and Conditions**, the maximum limit of the **Insurer's** liability for all **Loss** under this **Coverage Section** arising out of all **Antitrust Claims** is *$2,500,000* (hereinafter called the **"Antitrust Sublimit of Liability"**). This **Antitrust Sublimit of Liability** shall be part of and not in addition to the **Policy Aggregate** and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **Coverage Section.**

4.    The following Clause is added to the end of the **Private D&O Coverage Section**:

**COINSURANCE CLAUSE FOR ANTITRUST CLAIMS**

This clause only applies to **Antitrust Claims.**

© American International Group, Inc. All rights reserved.

*END 020*

<u>ENDORSEMENT#</u> *20*     (continued)

With respect to (1) **Indemnifiable Loss**; and/or (2) **Loss** of the **Organization**, the **Insurer** shall be liable to pay only *80%* of such **Loss** in excess of the applicable Retention amount, up to any applicable **Separate Limit of Liability**, **Shared Limit of Liability** or sublimit of liability, it being a condition of this insurance that the remaining *20%* of each and every such **Loss** shall be carried by the **Organization** and the **Insureds** at their own risk and be uninsured.

With respect to all **Non-Indemnifiable Loss**, the **Insurer** shall be liable to pay 100% of such **Loss** in excess of the applicable Retention amount, up to any applicable **Separate Limit of Liability**, **Shared Limit of Liability** or sublimit of liability.

5.     As used in this endorsement:

"**Antitrust Claim**" means any **Claim** alleging, arising out of, based upon or attributable to, or in any way involving, either directly or indirectly, antitrust violations, including any violation of the Sherman Antitrust Act, the Clayton Act, the Robinson-Patman Act or any similar federal, state or local statutes or rules. "**Antitrust Claim**" also means any **Claim** alleging, arising out of, based upon or attributable to, or in any way involving, either directly or indirectly, any actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: business competition, unfair trade practices or tortious interference in another's business or contractual relationships; and

"**Indemnifiable Loss**" mean **Loss** for which an **Organization** has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law, contract or the charter, bylaws, operating agreement or similar documents of an **Organization.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓥ American International Group, Inc. All rights reserved.

*END 020*

<u>ENDORSEMENT</u># 21

This endorsement, effective *at 12:01AM August 21, 2023*                    forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRIOR ACTS EXCLUSION WITH RELATION BACK WORDING

**This endorsement modifies the Specified Coverage Section(s).**

In consideration of the premium charged, it is hereby understood and agreed that the **Specified Coverage Section(s)** are amended as follows:

1.   *Prior Acts Exclusion*:  The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** alleging any **Wrongful Act** occurring prior to the **Runoff Time**.  **Loss** arising out of **Interrelated Wrongful Acts** shall be deemed to arise from the first such **Interrelated Wrongful Act**.

2.   *Interrelated Wrongful Act-Relation Back Confirmation*:  In the event **Loss** from any **Claim** against any **Insured** under the **Specified Coverage Section(s)** are excluded from coverage by reason of the application of the foregoing Prior Acts Exclusion, then such **Loss** shall be deemed **Loss** from a **Claim** made against an **Insured** in connection with an **Interrelated Wrongful Act** first occurring prior to the **Runoff Time**.

3.   *Definitions*:

   (a)   **"Runoff Time"** means the effective time of the 08/21/2023.

   (b)   **"Interrelated Wrongful Acts"** mean any **Wrongful Acts** which are the same or related.

   (c)   " **Specified Coverage Section**" means the Private D&O.

   ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 021*

<u>ENDORSEMENT#</u> *22*

This endorsement, effective at *12:01AM*    *August 21, 2023*    forms a part of
Policy number *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Product Name: *PortfolioSelect*

### NOTICE AND REPORTING PROVISION AMENDED
### (POSITIONS AND/OR POST POLICY REPORTING PERIOD)

**This endorsement modifies the Private D&O Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that in Clause 7. NOTICE AND REPORTING of the **Private D&O Coverage Section**, paragraph (a) *Reporting a Claim or Pre-Claim Inquiry* is deleted in its entirety and replaced with the following:

(a) *Reporting a Claim or Pre-Claim Inquiry*

An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy:

(1) notify the **Insurer** in writing of a **Claim** made against an **Insured**; or

(2) if an **Insured** elects to seek coverage for **Pre-Claim Inquiry Costs** in connection with any **Pre-Claim Inquiry**, notify the **Insurer** in writing of that **Pre-Claim Inquiry**;

as soon as practicable after the **Named Entity's** the *CFO or GC* (or equivalent position) first becomes aware of the **Claim** or **Pre-Claim Inquiry**. In all such events, notification must be provided no later than *Ninety (90)* days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc. All rights reserved.

*END 022*

<u>ENDORSEMENT#</u> 23

This endorsement, effective *at 12:01AM August 21, 2023*                          forms a part of
Policy number: *01-420-28-24*
Issued to: *FRANCHISE GROUP, INC.*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*


### E-CONSULTANT FIRM AMENDATORY

**This endorsement modifies the General Terms and Conditions
and all Coverage Sections.**

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any provision to the contrary (including but not limited to any endorsement attached to this policy), the term "**E-Consultant Firm**" as used in the **General Terms and Conditions** and any **Coverage Section** of this policy shall mean any firm hired by the **Insured** (or the **Insured**'s counsel on the **Insured**'s behalf) that is qualified to perform **E-Discovery Consultant Services,** provided that nothing herein shall be deemed a waiver of (or otherwise supersede) any requirements under this policy for the **Insured** to:

(1) attain the prior written consent of the **Insurer** before incurring **Defense Costs** or any other **Loss** of any kind; or

(2) retain an approved **Panel Counsel** law firm.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

©All rights reserved.
*END 023*

139228 (05/23)                                   1

**ENDORSEMENT#** *24*

This endorsement, effective *12:01AM*   *August 21, 2023*   forms a part of
policy number   *01-420-28-24*
issued to *FRANCHISE GROUP, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 113986 | 06/13 | DECLARATIONS (ADMITTED) |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 113989 | 06/13 | GENERAL TERMS AND CONDITIONS |
| 115538 | 06/13 | CRISISFUND APPENDIX (PRIVATE DO COVERAGE SECTION) |
| 115370 | 06/13 | PRIVATE D&O COVERAGE SECTION |
| | 06/08 | SECURITIES CLAIM PANEL COUNSEL LIST |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 140935 | 06/21 | PRODUCT CLAIMS EXCLUSION ENTITY ONLY; SECURITIES CLAIM CARVEBACK; DEFENSE TENDER OPTION NON-APPLICABLE |
| 131757 | 02/19 | CYBER EXCLUSION SECURITIES CLAIM CARVEBACKPRIVATE DO COVERAGE SECTION |
| 119679 | 09/15 | ECONOMIC SANCTIONS ENDORSEMENT |
| 118041 | 07/14 | CRISISFUND ENDORSEMENT |
| 143899 | 06/22 | PUBLIC OFFERING EXCLUSION AMENDED OFFERINGS, LISTINGS AND COMBINATIONS |
| 125595 | 03/17 | FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT |
| 116535 | 11/14 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (SPECIFIED COVERAGE SECTIONS) |
| 141497 | 09/21 | INTELLECTUAL PROPERTY EXCLUSION SECURITIES CLAIM CARVEBACK DO PVT |
| 115790 | 05/14 | AMEND DEFINITION OF EXECUTIVE (INCLUDE ADVISORY BOARD MEMBERS)(PRIVATE D&O COVERAGE SECTION) |
| 122034 | 05/16 | CLAIM DEFINITION AMENDED (REQUEST TO TOLL OR WAIVE STATUTE OF LIMITATIONS) |
| 123739 | 03/17 | ALTERNATIVE DISPUTE RESOLUTION CLAUSE AMENDED (90 TO 60 DAYS) |
| 120668 | 11/15 | DEFENSE AND SETTLEMENT AMENDED (VARIABLE DAYS TO ADVANCE DEFENSE COSTS)(PRIVATE DO) |

Ⓒ American International Group, Inc. All rights reserved.

*END 024*

**ENDORSEMENT#** *24*

This endorsement, effective *12:01AM*    *August 21, 2023*    forms a part of
policy number   *01-420-28-24*
issued to *FRANCHISE GROUP, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 139114 | 10/20 | EMPLOYMENT PRACTICES THIRD-PARTY VIOLATIONS EXCLUSION AMENDED AGAINST AN INSURED PERSON OR ANY OTHER |
| 130733 | 10/18 | ENTITY OR INDIVIDUAL V.  INSURED EXCLUSION AMENDED (WHISTLEBLOWER CARVEBACK) |
| 120666 | 11/15 | ORDER OF PAYMENTS ENDORSEMENT(WRITTEN REQUEST DELETED)(PRIVATE DO) |
| 115791 | 12/15 | SEVERABILITY OF THE APPLICATION AMENDED (NON-RESCINDABLE)(PRIVATE D&O COVERAGE SECTION) |
| 120172 | 07/15 | CONDUCT EXCLUSIONS AMENDED (PERSONAL PROFIT FINANCIAL ADVANTAGE)(PRIVATE DO) |
| 136370 | 04/20 | FRANCHISE EXCLUSION |
| 116805 | 03/15 | ANTITRUST COVERAGE ENDORSEMENT (SEPARATE RETENTION SUBLIMIT OF LIABILITY AND COINSURANCE)(PRIVATE DO) |
| 123603 | 02/17 | PRIOR ACTS EXCLUSION WITH RELATION BACK WORDING (SPECIFIED COVERAGE SECTIONS) |
| 115378 | 06/13 | NOTICE AND REPORTING AMENDED POSITIONS AND OR POST POLICY REPORTING PERIOD |
| 139228 | 05/23 | E-Consultant Firm Amendatory |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc. All rights reserved.

*END 024*



# CLAIM REPORTING FORM

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number:  *01-420-28-24*         Date: _____

Type of Coverage: D&O ———   E&O ———   Fidelity ——— (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

*FRANCHISE GROUP, INC.*

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext _____

eMail: _____ @ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: *RSG SPECIALTY, LLC*

Address: *330 WEST NEWBERRY ROAD, BLOOMFIELD, CT 06002*

Address: _____

Contact: *Chris Bertola*                 Phone: _____

eMail: *chris.bertola@rtspecialty.com*

Send Notice of Claims to:    AIG                  Phone: (888) 602-5246
                             Financial Lines Claims   Fax:   (866) 227-1750
                             P.O. Box 25947        Email: c-Claim@AIG.com
                             Shawnee Mission, KS 66225



# CLAIM REPORTING FORM
# FIDELITY SUPPLEMENTAL

**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number:   01-420-28-24

Date of Discovery: _____   Estimated Amount of loss: _____

Cause of Loss:   Employee Dishonesty _____      Computer Fraud _____

Funds Transfer _____      Robbery/Burglary _____

ID Theft _____      Forgery _____

Client Property _____      In Transit _____

ERISA _____      Credit Card Forgery _____

Other _____      if Other, describe: _____

Send Notice Of Claims To:   AIG              Phone:  (888) 602-5246
Financial Lines Claims   Fax:    (866) 227-1750
P.O. Box 25947           Email:  c-Claim@AIG.com
Shawnee Mission, KS 66225

*centralized Customer Link and Information Management*