# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC., *et al.,*[1] | ) | Case No. 24-12480 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## PLAN SUPPLEMENT FOR THE SIXTH AMENDED JOINT
## CHAPTER 11 PLAN OF FRANCHISE GROUP, INC. AND ITS DEBTOR AFFILIATES[2]

This Plan Supplement contains current drafts of the following documents, each of which remain subject to ongoing review and negotiations among the Debtors and interested parties pursuant to the terms of the Plan, as may be modified, amended, or supplemented from time to time.

| Exhibit | Description |
|---|---|
| A | New Organizational Documents |
| B | Schedule of Retained Causes of Action |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1015] (as modified, amended, or supplemented from time to time, the "Plan").

| | |
|---|---|
| C | Take-Back Debt Documents |
| D | Restructuring Transactions Memorandum |
| E | Rejected Contracts/Lease List |
| F | New ABL Facility Documents |
| G | New Warrants Documentation |
| H | OpCo Debtor Litigation Trust Agreement |
| I | Freedom HoldCo Debtor Litigation Trust Agreement |
| J | Freedom HoldCo Debtor Released Claims Report |

The Debtors reserve all rights, subject to all applicable consultation, approval, and/or consent rights of any applicable counterparties contained or contemplated under the Plan to amend, modify, revise, or supplement all of the documents included herein in accordance with the terms of the Plan.

## Exhibit A

### New Organizational Documents

This **Exhibit A** includes the following New Organizational Documents of the Reorganized Debtors:

Exhibit A(i):  Corporate Governance Term Sheet
Exhibit A(ii):  Identity of New Board and Insider Compensation

Certain documents, or portions thereof, contained in this **Exhibit A** and the Plan Supplement remain subject to continuing review and discussions among the Debtors and interested parties with respect thereto.  The rights of the Debtors are expressly reserved, subject to the terms and conditions set forth in the Plan (including all applicable consultation, consent, and/or approval rights contained or contemplated therein), to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court.

**Exhibit A(i)**

**Corporate Governance Term Sheet**

*Draft*

## Summary of Terms of Governance Documents[1]

Capitalized terms used in this Summary of Terms of Governance Documents (this "<u>Governance Term Sheet</u>") and not otherwise defined herein shall have the meanings given to such terms in the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Affiliated Debtors* [Docket No. 1015] (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Plan</u>").  The terms in this Governance Term Sheet do not purport to be complete and shall not in any way be binding upon the Debtors, any of the Holders of DIP Claims or any of the Holders of Prepetition First Lien Loan Claims (including any member of the Ad Hoc Group), and do not create any legal obligations or commitments on any such Person, unless and until the entry into by the Companies (as defined below) and the Unitholders (as defined below) of definitive documentation with respect to the matters set forth herein.

*THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY PLAN OF REORGANIZATION IN CONTRAVENTION OF APPLICABLE LAW IN ANY JURISDICTION, IT BEING UNDERSTOOD THAT ANY SUCH OFFER OR SOLICITATION, IF ANY, WILL BE MADE ONLY IN COMPLIANCE WITH APPLICABLE PROVISIONS OF SECURITIES, BANKRUPTCY AND/OR OTHER APPLICABLE LAWS. THIS TERM SHEET IS BEING PROVIDED AS A POSSIBLE COMPROMISE AND IS THUS SUBJECT TO FEDERAL RULE OF EVIDENCE 408.*

| | |
|---|---|
| <u>New TopCo</u>: | New TopCo will be a newly formed Delaware limited liability company.[2]  New TopCo and its subsidiaries shall be referred to herein, individually, as a "<u>Company</u>" and, collectively, the "<u>Companies</u>". |
| <u>Parties to New LLC Agreement</u>: | On the Effective Date, New TopCo will enter into a limited liability company agreement (the "<u>New LLC Agreement</u>") with each Person that receives New Common Units (as defined below) in connection with the Plan Equitization Transaction.<br><br>Persons that own or hold New Common Units from time to time are referred to herein, each as a "<u>Unitholder</u>" and, collectively, the "<u>Unitholders</u>". |
| <u>New Common Units</u>: | The New LLC Agreement shall initially provide for the following two classes of limited liability company interests: (i) Class A Voting Common Units ("<u>Class A Common Units</u>"), and (ii) Class B Limited-Voting Common Units ("<u>Class B Common Units</u>"). The Class A Common Units, the Class B Common Units and any other class or series of common limited liability company interests of the Company that are authorized by the New Board (as defined below) from time to time are collectively referred to in this |

---

[1] **Note to Draft**:  The rights and obligations set forth in this Governance Term Sheet are subject to change based on relative *pro forma* equity holdings of the institutions that will receive Class A Common Units pursuant to the Plan.

[2] **Note to Draft**:  The tax classification of New TopCo for U.S. income tax purposes is subject to ongoing discussions among certain members of the Ad Hoc Group.

Governance Term Sheet as the "New Common Units". Class A Common Units will be voting units and will be issued on the Effective Date in accordance with the Plan. References in the Plan to Reorganized Common Equity shall be deemed to be references to the Class A Common Units. Class B Common Units will be limited-voting units and may only be issued from time to time pursuant to awards granted to directors, managers, officers and employees of any of the Companies under a management incentive plan to be adopted by the New Board, as determined by the New Board in its sole discretion.

On and after the Effective Date, none of the New Common Units will be listed for trading on a securities exchange, and none of the Companies will be required to file reports with the United States Securities and Exchange Commission unless it is required to do so pursuant to the Securities Exchange Act of 1934, as amended (the "Exchange Act").

The New Board shall decide whether the New Common Units will be certificated or uncertificated and the identity of the transfer, registrar or other similar agent, if any, for the New Common Units; provided, however, that the Class A Common Units issued on the Effective Date shall be uncertificated.

References herein to any class or series of New Common Units shall apply to limited liability company interests or other equity securities of New TopCo issued to Unitholders in respect of, in exchange for, or in substitution of, such class or series of New Common Units by reason of any reorganization, recapitalization, reclassification, merger, consolidation, spin-off, partial or complete liquidation, unit dividend, split-up, sale of assets, distribution to unitholders or combination of such class or series of New Common Units or any other change in New TopCo's capital structure.

Board of Managers:

The New Board shall consist of seven (7) managers on the Effective Date (each manager on the New Board, a "Manager" and, collectively, the "Managers"). Subject to the other provisions of this Governance Term Sheet, the Managers are to be appointed as follows:

(i)     [●][3]; and

(ii)    the individual then serving as the Chief Executive Officer of New TopCo (the "Chief Executive Officer" and as a Manager, the "CEO Manager"), if any.

---

[3] **Note to Draft**: Provisions relating to the appointment of Managers are subject to ongoing discussions among certain members of the Ad Hoc Group.

Each of the Managers (other than the CEO Manager, but including any Manager appointed to fill any vacancy on the New Board) shall be an Independent Manager.  The term "Independent Manager" means an individual who is not employed by (a) any of the Companies or (b) any of the Unitholders or any of their respective Affiliates (as defined below) as of the time that such person is designated to be a Manager or at any time six (6) months prior to such time.  Notwithstanding anything in the foregoing, with the consent of the Unitholders that collectively own or hold at least [●]%[4] of the issued and outstanding Class A Common Units as of such time, a Manager may be an individual who is not an Independent Manager.

The term "Affiliate" means, with respect to any Person, any other Person that (either directly or indirectly) controls, is controlled by, or is under common control with the specified Person, and shall also include any Related Fund (as defined below) of such Person. The term "Related Fund" means, with respect to any Person, any fund, account or investment vehicle that is controlled, managed or advised by (a) such Person, (b) an Affiliate of such Person or (c) the same investment manager, advisor or subadvisor that controls, manages or advises such Person or an Affiliate of such investment manager, advisor or subadvisor.

The chairperson of the New Board (the "Chairperson") shall be a Manager elected by the New Board.

Managers not employed by any of the Companies, any of the Unitholders or any Affiliates of any of the Unitholders shall receive market-rate compensation from New TopCo, such market-rate compensation to be determined by the Majority Unitholders. Each Manager shall be reimbursed for reasonable and documented out-of-pocket costs and expenses incurred in the performance of his or her duties as a Manager.  The term "Majority Unitholders" means, as of any time of determination, Unitholders that collectively own or hold greater than fifty percent (50.0%) of the issued and outstanding Class A Common Units as of such time of determination; provided, that at any time there are two (2) or more unaffiliated Unitholders that own or hold Class A Common Units, "Majority Unitholders" shall include at least two (2) unaffiliated Unitholders that own or hold Class A Common Units.

The New Board may establish one or more committees of the New Board to exercise the powers of the New Board.  For the avoidance of doubt, no committee shall be authorized to take any action that the New Board could not take itself.

---

[4] **Note to Draft**:  The threshold for approving non-Independent Managers is subject to ongoing discussions among certain members of the Ad Hoc Group.

None of (A) the Unitholders (except any Unitholder that is an employee of any of the Companies, any Unitholder that is a family member of an employee of any of the Companies, or any Unitholder that is controlled by an employee of any of the Companies or any such employee's family members) or (B) the Affiliates of any Unitholders described in <u>clause (A)</u> (except any such Affiliate that is an employee of any of the Companies, any such Affiliate that is a family member of any employee of any of the Companies, or any such Affiliate that is controlled by any employee of any of the Companies or any such employee's family members) (the foregoing Persons, the "<u>Identified Persons</u>") will be subject to any fiduciary or other duty, including any duty relating to the doctrine of corporate (or analogous) opportunity or any other similar doctrines and the New LLC Agreement will provide for a broad corporate (or analogous) opportunity waiver in favor of all Identified Persons. The New LLC Agreement shall provide that the fiduciary duties of the Identified Persons shall be eliminated or limited to the fullest extent permitted by the Delaware Limited Liability Company Act (the "<u>DLLCA</u>").

Nothing contained in the New LLC Agreement shall limit or otherwise impact the ability of any Identified Person (i) to, directly or indirectly, sell or purchase the debt or equity securities of any Person (other than New TopCo) or (ii) from engaging or competing in any line of business.

Each Manager, in his or her capacity as such, shall have the same fiduciary duties as those of a member of a board of directors of a corporation organized under the laws of the State of Delaware; <u>provided</u>, <u>however</u>, the New LLC Agreement shall contain a customary waiver with respect to each of the Managers and, as determined by the New Board, any officers of New TopCo for monetary damages for breach of the duty of care as contemplated by Section 102(b)(7) of the Delaware General Corporation Law to the fullest extent similarly permitted by the DLLCA.

<u>Quorum and Voting</u>:

A quorum for meetings of the New Board will require the attendance of a majority of the Managers then in office. The vote of a majority of the Managers present and entitled to vote at a meeting at which a quorum is present shall be the act of the New Board, unless the express provision of a statute requires a different vote, in which case such express provision shall govern and control. Any Manager or member of any committee of the New Board may participate in any meeting of the New Board or any committee of the New Board (each such meeting, a "<u>Meeting</u>") through the use of any means of communication (including by remote means) by which all persons participating can hear each other at the same time or by any other means permitted by the DLLCA. Any Manager or member of any committee of the New Board participating in any such Meeting by any such means of communication is deemed to be present in person at such Meeting.

-4-

Any action required or permitted to be taken at any meeting of the New Board may be taken without a meeting, without prior notice and without a vote if all members then-serving on the New Board consent in writing.

Removal of Managers:

[Any Manager (other than the CEO Manager) may be removed, with or without cause, by the Majority Unitholders. If for any reason the individual serving as the Chief Executive Officer shall cease to serve as the Chief Executive Officer (whether from termination, resignation, death, disability or otherwise), then (x) such individual shall be automatically removed as a Manager, and (y) the successor Chief Executive Officer, if any, shall be automatically appointed as a Manager when such person becomes the Chief Executive Officer.][5]

Vacancies on the New Board:

[Any vacancy on the New Board resulting from the resignation or removal of a Manager (other than the Chief Executive Officer), or resulting from any such Manager becoming unable to serve on the New Board as a result of death, disability or otherwise, shall be filled with an Independent Manager elected by vote of Unitholders holding a plurality of the votes of the Class A Common Units present in person or represented by proxy at a meeting of Unitholders held for purposes of filling such vacancy (or by the Majority Unitholders acting by written consent). There shall be no cumulative voting for Managers, and the Board shall not be staggered or classified.][6]

Board Meetings:

Regular meetings of the New Board shall be held at such time or times and with such frequencies as may be determined by the New Board. In addition, the Chairperson or any two (2) Managers may call a special meeting of the New Board. Any such regular or special meeting may be done in person or by remote communication.

Subsidiaries:

The composition of the board of directors, board of managers or other governing body of any direct or indirect subsidiary of New TopCo (including any committee thereof) (each, a "Subsidiary Governing Body") shall be comprised of one or more executive employees of any of the Companies or other individuals selected or approved by the New Board that are not employees of any of the Unitholders or any of their respective Affiliates (other than the Companies), except for any direct or indirect subsidiary of New TopCo which is either (i) a limited liability company that is

---

[5] **Note to Draft**: Provisions relating to the removal of Managers are subject to ongoing discussions among certain members of the Ad Hoc Group.

[6] **Note to Draft**: Provisions relating to the filling of vacancies on the New Board are subject to ongoing discussions among certain members of the Ad Hoc Group.

managed by its member(s), (ii) a limited partnership that is managed by its general partner, or (iii) required by Law or contract to have a different composition.

Special Meetings of Unitholders:

Special meetings of the Unitholders may be called by the New Board or at the written request of the Unitholders or group of Unitholders who collectively own or hold at least twenty-five percent (25.0%) of the issued and outstanding Class A Common Units.

Action by written consent of the Unitholders without a meeting shall be permitted. Action by written consent shall require the consent of the Unitholders that own or hold the same percentage of New Common Units that would be required to take the same action at a Unitholder meeting at which all then-issued and outstanding New Common Units entitled to vote thereon were present and voted.

Certain Transactions Requiring Approval of New Board and Majority Unitholders:

None of the Companies shall take any of the actions listed on Schedule A attached hereto without the approval of the New Board and the Majority Unitholders. None of the Companies shall make any distributions or dividends to Unitholders that own or hold Class A Common Units that are not made to such Unitholders (a) on a *pro rata* basis (based on the number of Class A Common Units owned or held by such Unitholders immediately prior to any such distribution or dividend), or (b) in the same form without the written approval of the New Board and each Unitholder that holds Class A Common Units.

Amendments:

Any amendments to the New LLC Agreement will require the approval of the Majority Unitholders.

Notwithstanding the foregoing, no amendment or modification of any provision of the New LLC Agreement (including any amendments made pursuant to or in connection with a merger, consolidation or reorganization of New TopCo, except in connection with a Sale Transaction (as defined below)) relating to:

(i)        "Transfers", "Tag-Along Rights", "Drag-Along Rights", "Preemptive Rights", "Information Rights", "Limitations on Affiliate Transactions" or the definition of "Super-Majority Unitholders" shall, in any such case, be made without the affirmative vote or written consent of the Super-Majority Unitholders (as defined below);

(ii)        the appointment of Managers, the appointment of the Chairperson, the duties of Identified Persons and Managers,

-6-

the removal of Managers, the filling of vacancies on the New Board, or the composition of Subsidiary Governing Bodies shall, in any such case, be made without the affirmative vote or written consent of the Super-Majority Unitholders; and

(iii)    the amendments section of the New LLC Agreement shall be made without the affirmative vote or written consent of the Unitholder(s) or requisite percentage or number of Unitholders that would be required to amend the underlying provision of such New LLC Agreement to which such amendment or modification relates.

In addition, no amendment or modification of any provision of the New LLC Agreement (including any amendments made pursuant to or in connection with a merger, consolidation or reorganization of New TopCo, except in connection with a Sale Transaction) that would materially and adversely affect the rights or materially increase the obligations of any Unitholder set forth in the New LLC Agreement in a manner that is disproportionate in any material respect to the comparable rights and obligations of the Majority Unitholders (without regard to any effect resulting from (x) the individual circumstances of any such Unitholder, (y) the differences in the respective percentages of ownership of New Common Units of the Unitholders or (z) the different classes or series of New Common Units owned by the Unitholders) shall be made without the affirmative vote or written consent of such affected Unitholder; provided, however, that, for the avoidance of doubt, neither the creation of a new class or series of equity interests of New TopCo, nor the issuance of any additional New Common Units or other equity interests of New TopCo, shall be deemed to adversely affect the rights or obligations of any Unitholder.

The term "Super-Majority Unitholders" means, as of any time of determination, Unitholders that collectively own or hold at least 66-2/3% of the issued and outstanding Class A Common Units as of such time; provided, that at any time there are two (2) or more unaffiliated Unitholders that own or hold Class A Common Units, "Super-Majority Unitholders" shall include at least two (2) unaffiliated Unitholders that own or hold Class A Common Units.

Transfers:

New Common Units will be transferable by the holders thereof (a) only in transactions exempt from the registration requirements of the Securities Act and (b) subject to the satisfaction of the following conditions precedent:  (i) delivery to New TopCo of a written notice of such transfer not less than five (5) Business Days prior to such transfer, (ii) delivery to New TopCo of representation letters from the transferor and the transferee (including a representation from the transferee that the transferee is an "accredited investor" as that term is defined in Rule 501 of Regulation D promulgated under the Securities Act (an

"Accredited Investor")), (iii) delivery to New TopCo of an opinion of counsel to the transferor to the effect that such transfer complies with applicable federal and state securities laws (except where the transferor is an Affiliate of the transferee), and (iv) the transferee's execution of a joinder to the New LLC Agreement (unless the transferee is already a party to the New LLC Agreement). Transfers that do not satisfy the foregoing conditions prior to the consummation thereof shall be void *ab initio* and will not be recognized by New TopCo. Any conditions set forth in clause (b) above may be waived by New TopCo.

Any transfer, or series of transfers, of New Common Units (w) that, if consummated, would (1) result in any violation of applicable Law, (2) result in New TopCo having, in the aggregate, 1,000 or more holders of record (as such concept is understood for purposes of Section 12(g) of the Exchange Act) of any class of New Common Units, or 400 or more holders of record (as such concept is understood for purposes of Section 12(g) of the Exchange Act) of any class of New Common Units that are not Accredited Investors, (3) require New TopCo to register any equity interests of New TopCo under the Exchange Act, (4) cause New TopCo to register as an "investment company" under the Investment Company Act of 1940, as amended, (5) cause the underlying assets of New TopCo to be deemed "plan assets" as defined under certain labor regulations or constitute or result in a non-exempt prohibited transaction under Section 406 of the U.S. Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code")[, or (6) cause New TopCo to be treated as a "publicly traded partnership" under Section 7704 of the Code][7], (x) to a Person that is not an Accredited Investor, (y) to a Competitor (as defined below), or (z) to any Person that is the target of any sanctions or is a controlled Affiliate of any such Person, in any such case, will be void *ab initio* and will not be recognized by New TopCo. Subject to applicable law, nothing contained in the New LLC Agreement shall prevent the Unitholders from transferring, hypothecating, pledging or otherwise disposing of New Common Units or their ownership rights in New Common Units for the purpose of effecting margin transactions or in connection with any financing activity or arrangement undertaken by the Unitholders or their Affiliates in the ordinary course of business.

A transfer of New Common Units in a Sale Transaction by a Selling Unitholder (as defined below) or a Dragged Unitholder (as defined below) shall not be subject to the requirements of this "Transfers" section, other than clause (a) above.

---

[7] **Note to Draft**: Subject to resolution on discussions regarding the tax classification of New TopCo for U.S. income tax purposes.

In addition to the foregoing, Class B Common Units will be subject to additional customary transfer restrictions and risks of forfeiture to be set forth in a management incentive plan to be adopted by the New Board and/or any agreement, contract or other instrument or document evidencing or governing an award issued under any such management incentive plan.

The term "Competitor" means, as of any time of determination, (A) any Person that is identified by name on the Restricted List (as defined below) as of such time of determination, which may include one of more Investment Funds (as defined below), (B) any Person that is engaged in competition with any of the Companies as of such time, as reasonably determined by the New Board, and (C) any Person that is an Affiliate of any Person referred to in clause (A) or clause (B) that is reasonably identifiable as an Affiliate of any such Person on the basis of such Affiliate's name; provided, that, (x) solely with respect to clause (A), a Competitor shall not include (I) any Person that is a Unitholder at the time the New Board determines to identify such Person on the Restricted List, or (II) any Affiliate of any Person described in clause (x)(I), which Affiliate is an Investment Fund or any entity that is formed by an Investment Fund and whose only assets are or will be (after giving effect to any proposed or contemplated transfer), directly or indirectly, New Common Units or other securities or indebtedness of any of the Companies, and (y) solely with respect to clause (B), a Competitor shall not include (I) any Investment Fund, or (II) any entity that is formed by an Investment Fund and whose only assets are or will be (after giving effect to any proposed or contemplated transfer), directly or indirectly, New Common Units or other securities or indebtedness of any of the Companies (it being understood that a Person described in clause (y)(I) or clause (y)(II) may be a Competitor under clause (A) or clause (C)).

The term "Restricted List" means a schedule or list of disqualified transferees as determined by the New Board, as such schedule or list may be amended, supplemented, updated or modified from time to time by the New Board.

The term "Investment Fund" means a *bona fide* investment fund or other investment vehicle, such as a hedge fund, private equity fund, an account, a share trust, an investment trust, an investment company, a pension fund, or an insurance company, in each case, the business, operations or assets of which are held for investment purposes and the investments in which are professionally managed.

Preemptive Rights:    New TopCo shall not, and New TopCo shall not cause or permit any of its subsidiaries to, sell or issue additional equity interests (including, for the avoidance of doubt, any options, warrants or

other securities that are convertible into, or exchangeable or exercisable for, New Common Units, limited liability company interests or shares of capital stock) (collectively, "Additional Securities") to any Person (including any then-current Unitholder), other than in a *pro rata* distribution to all Unitholders that own or hold New Common Units of a particular class or series and certain other customary exceptions, unless New TopCo or its applicable subsidiary that is an Accredited Investor (any such Unitholder, a "Preemptive Unitholder") to purchase its *pro rata* portion (calculated on the basis of the Class A Common Units owned or held by such Preemptive Unitholder relative to the Class A Common Units owned or held by all Preemptive Unitholders) of such Additional Securities on the same terms and conditions as each other Preemptive Unitholder. If any of the Preemptive Unitholders do not elect to purchase their respective full *pro rata* portions of the Additional Securities, then the Preemptive Unitholders that have elected to purchase their full *pro rata* portions of the Additional Securities shall be offered the right to purchase any such unpurchased Additional Securities (and such procedure of offering and purchasing Additional Securities shall be repeated until either (x) there are no unpurchased Additional Securities or (y) no Preemptive Unitholders elect to purchase any such unpurchased Additional Securities).

[New TopCo may comply with its obligations described in the immediately preceding paragraph by first selling to (or causing its applicable subsidiary to sell to) one or more Preemptive Unitholders and/or any of their respective Affiliates (each, a "Specified Preemptive Unitholder") all or any portion of the Additional Securities, and, promptly thereafter, offering to sell to the Preemptive Unitholders (other than the Specified Preemptive Unitholders) (each, an "Other Preemptive Unitholder") the number or amount of such Additional Securities the Other Preemptive Unitholders would have been entitled to purchase pursuant to the immediately preceding paragraph as if New TopCo or its applicable subsidiary had not first sold all or the applicable portion of the Additional Securities to the Specified Preemptive Unitholders but rather had offered to sell all of the Additional Securities to all Preemptive Unitholders at the same time in accordance with the immediately preceding paragraph. In the event that any Other Preemptive Unitholder purchases Additional Securities pursuant to any such offer referred to in the immediately preceding sentence and, as a result thereof, the Specified Preemptive Unitholders would not have been permitted to purchase all of the Additional Securities they had purchased if all of the Additional Securities contemplated to be sold had instead been offered to all Preemptive Unitholders at the same time in accordance with the immediately preceding paragraph, then the Specified Preemptive Unitholders shall sell or transfer to New TopCo or its applicable subsidiary, for a price equal to the

-10-

original cost thereof (plus any accrued and unpaid yield or interest thereon, if applicable, but without reducing such cost by any fee or premium received by the Specified Preemptive Unitholders in connection therewith), the excess number or amount of Additional Securities that had been acquired by the Specified Preemptive Unitholders.]

Tag-Along Rights:

If one or more Unitholders (the "Initiating Unitholders") desires to transfer Class A Common Units representing fifty percent (50.0%) or more of the issued and outstanding Class A Common Units to any Person (or group of Persons) (the "Transferee") in any transaction (or series of related transactions) (excluding any transfer of Class A Common Units by an Initiating Unitholder to one or more of its Affiliates and certain other permitted transferees) (a "Tag-Along Transaction"), the Initiating Unitholders must give notice to each other holder of Class A Common Units (the "Tag-Along Sellers") at least ten (10) business days prior to the consummation of such Tag-Along Transaction, setting forth the material terms and conditions of such Tag-Along Transaction, and arrange for each Tag-Along Seller to have the opportunity to include in such Tag-Along Transaction at least a corresponding percentage of Class A Common Units owned or held by such Tag-Along Seller. The tag-along right may be exercised by any Tag-Along Seller delivering a written notice to the Initiating Unitholders (or a designated representative of the Initiating Unitholders) within five (5) business days following receipt of written notice of the proposed Tag-Along Transaction by the Initiating Unitholders.

Tag-Along Sellers shall receive the same form and amount of consideration per Class A Common Unit that is being paid to the Initiating Unitholders in connection with the Tag-Along Transaction, except that if the Initiating Unitholders are given an option as to the form of consideration to be received in exchange for their Class A Common Units, each of the Tag-Along Sellers shall only need to be given the same option with respect to their Class A Common Units.

Notwithstanding anything to the contrary contained in this Governance Term Sheet, holders of Class B Common Units shall not be entitled to tag-along rights in respect of Class B Common Units held by any such holder.

Drag-Along Rights:

If one or more Unitholders that own or hold greater than [●] ([●]%)[8] of the issued and outstanding Class A Common Units (the "Selling Unitholders") decide to effect, approve or otherwise take any action that would cause the occurrence of, or desire to

---

[8] **Note to Draft**: Threshold for exercise of "Drag-Along Rights" is subject to ongoing discussions among certain members of the Ad Hoc Group.

consummate, a Sale Transaction to or with any Person other than the Selling Unitholders or any Affiliates thereof, then New TopCo or the Selling Unitholders will have the right to require all other Unitholders (the "<u>Dragged Unitholders</u>") to, among other things, (i) sell a percentage of their New Common Units corresponding to the aggregate percentage of the New Common Units owned or held by the Selling Unitholders that are proposed to be included in such Sale Transaction; (ii) vote such Dragged Unitholders' New Common Units, whether by proxy, voting agreement or otherwise, in favor of the Sale Transaction and not raise any objection thereto; (iii) enter into agreements with the purchaser in the Sale Transaction on terms and conditions substantially identical to those applicable to the Selling Unitholders; (iv) obtain any required consents; (v) waive and refrain from exercising any appraisal, dissenters or similar rights; (vi) not assert any claim against any of the Companies, any Manager, any member of any committee of the New Board, any member of any Subsidiary Governing Body or any other Unitholder or any Affiliates of any of the foregoing in connection with the Sale Transaction; and (vii) take any and all reasonably necessary action in furtherance of the consummation of the Sale Transaction.

Each Unitholder shall receive, in respect of each New Common Unit to be sold by such Unitholder in the Sale Transaction, the same form and amount of consideration paid in such Sale Transaction that is being paid to each other Unitholder in respect of New Common Units of the same class or series, except that if any Unitholder is given an option as to the form of consideration to be received in exchange for each New Common Unit of any class or series held by such Unitholder, each other Unitholder holding New Common Units of the same class or series need only be given the same option.

Upon the election of the New Board, any Class B Common Units transferred in a Sale Transaction by a Selling Unitholder or a Dragged Unitholder shall immediately and automatically convert into Class A Common Units, subject to any vesting or other requirements of the Management Incentive Plan, upon the consummation of such Sale Transaction.

"<u>Sale Transaction</u>" means the sale, lease, transfer, issuance or other disposition, in one transaction or a series of related transactions, of (i) all or substantially all of the consolidated assets of the Companies (including by or through the issuance, sale, contribution, transfer or other disposition (including by way of reorganization, merger, share or unit exchange, consolidation or other business combination) of at least a majority of the aggregate voting power of the voting securities of any direct and/or indirect subsidiary or subsidiaries of New TopCo if substantially all of the consolidated assets of the Companies are held by such subsidiary or subsidiaries) or (ii) at least a majority of the issued and

-12-

outstanding Class A Common Units (whether directly or indirectly or by way of any merger, share or unit exchange, recapitalization, sale or contribution of equity, tender offer, reclassification, consolidation or other business combination transaction or purchase of beneficial ownership), to (in either case of <u>clause (i)</u> or <u>clause (ii)</u>) any Person or "group" (within the meaning of Section 13(d)(3) or Section 14(d)(2) of the Exchange Act, or any successor provision).

<u>Confidentiality</u>:

Subject to certain customarily permitted disclosures (including (i) disclosures to a Unitholder's advisors and representatives and (ii) disclosures to a *bona fide* prospective transferee of Class A Common Units who executes and delivers to New TopCo a confidentiality agreement substantially in the form of confidentiality agreement attached as an exhibit to the New LLC Agreement), each Unitholder will be required to hold in strict confidence any confidential, business, financial or proprietary information such Unitholder receives regarding any of the Companies, or any confidential, business, financial or proprietary information of any other Unitholder in respect of any of the Companies ("<u>Confidential Information</u>"), whether such Confidential Information is received from any of the Companies, any Manager, another Unitholder, any Affiliate of New TopCo or another Unitholder, or any agents or advisors of any thereof. Such confidentiality obligations shall commence on the Effective Date and end on the first anniversary of the date such Unitholder no longer owns any New Common Units.

In the event that any Unitholder proposes to sell or otherwise transfer any New Common Units to a third party in compliance with the transfer restrictions described in this Governance Term Sheet, such Unitholder may make available to the potential transferee Confidential Information relating to the Companies (including Confidential Information obtained by such Unitholder from any Manager), subject to the prior execution by such potential transferee (excluding any Unitholder) of a confidentiality agreement substantially in the form of confidentiality agreement attached as an exhibit to the New LLC Agreement.

<u>Information Rights</u>:

Prior to New TopCo becoming obligated to file reports under the Exchange Act, subject to the confidentiality provisions referred to above, each Unitholder that holds Class A Common Units (other than Unitholders that are Competitors) shall be entitled to receive (a) annual audited consolidated financial statements of New TopCo within the time frame required for the delivery of such financial statements under the Companies' credit documents as of the Effective Date, (b) quarterly unaudited consolidated financial statements of New TopCo for each of New TopCo's first three fiscal quarters during each fiscal year within the time frame required for the delivery of such financial statements under the

-13-

Companies' credit documents as of the Effective Date, and (c) any information that is posted to the "public" side of the platform for lenders under the Companies' credit documents at substantially the same time as such information is posted to such platform. If New TopCo does not produce consolidated financial statements at the New TopCo level, but does produce consolidated financial statements at the level of one or more of its subsidiaries, then, in lieu of making available such consolidated financial statements of New TopCo, New TopCo shall make available to each Unitholder that holds Class A Common Units (other than Unitholders that are Competitors) the consolidated financial statements of its applicable subsidiary(ies).

At the option of New TopCo, New TopCo may make available the information described above on a password-protected website that is only available to Unitholders that hold Class A Common Units (other than Unitholders that are Competitors) and any actual or prospective *bona fide* transferees of Class A Common Units. As a condition to gaining access to the information posted on such website, a Person may be required to "click through" or take other affirmative action pursuant to which such Person shall (i) acknowledge its confidentiality obligations in respect of such information, (ii) certify its status as a Unitholder that holds Class A Common Units or an actual or prospective *bona fide* transferee of Class A Units, as applicable, and (iii) in the case of any Person that is a Unitholder, confirm and ratify that it is a party to, and bound by all of the terms and provisions of, the New LLC Agreement.

In addition, New TopCo shall hold a quarterly informational telephone conference call once during each fiscal quarter for the Unitholders. During each such quarterly teleconference, New TopCo's or its applicable subsidiaries' officers shall present a narrative overview of the financial statements provided to the Unitholders pursuant to <u>clauses (a)</u> and <u>(b)</u> above.

**Limitations on Affiliate Transactions:**

Any direct or indirect transaction or series of related transactions between any of the Companies, on the one hand, and any Person who, together with its Affiliates, owns or holds five percent (5.0%) or more of the issued and outstanding Class A Common Units or is an Affiliate of any such Person (other than any of the Companies), on the other hand (an "<u>Affiliate Transaction</u>"), involving aggregate payments or other consideration in excess of $1,000,000 per annum shall require the approval of a majority of the Managers that are disinterested with respect to such Affiliate Transaction.

**Registration Rights:**

If New TopCo (or any successor or subsidiary of New TopCo) consummates an underwritten public offering pursuant to an effective registration statement covering the common equity of

-14-

New TopCo (or any successor or subsidiary of New TopCo) ("Company Securities") that results in such Company Securities being listed on a national securities exchange or quoted on the Nasdaq Stock Market (an "IPO"), then the Unitholders shall be entitled to the following registration rights:

*Demand Rights*: Any Unitholder or group of Unitholders (acting together) that own or hold at least five percent (5.0%) of all of the Company Securities that are issued and outstanding as of such time may request that New TopCo effect the registration under the Securities Act for a specified number of "Registrable Securities" (as customarily defined) held by such Unitholder(s).  Subject to certain exceptions, New TopCo will not be required to effect the demand right more than three times.

*Piggyback Registration*:  Any Unitholder shall be entitled to reasonable and customary piggyback registration rights.

Termination of Rights:

The New LLC Agreement (other than "Registration Rights" set forth above) shall terminate upon the consummation of an IPO.

Governing Law and Forum:

Delaware.

-15-

## **Schedule A**

### Actions Requiring Approval of New Board and Majority Unitholders

1.  Consummate any acquisition (by merger, consolidation, or acquisition or disposition of stock or assets) of any business enterprise, business division or business unit in any transaction or series of related transactions for consideration in excess of $300.0 million.

2.  Consummate any initial public offering of securities on a national securities exchange (or comparable non-U.S. securities exchange).

3.  Consummate any Sale Transaction, other than (a) any such Sale Transaction that is consummated as an internal restructuring transaction (including (x) the dissolution, consolidation or merger of any immaterial or dormant Company, or (y) the consolidation, merger or other business combination of any Company with or into an Affiliate of any Company for the purpose of changing the legal domicile of such Company or changing the legal form of such Company), and (b) as set forth in the "Drag-Along Rights" section of the Governance Term Sheet.

**Exhibit A(ii)**

**Identity of New Board and Insider Compensation**

Certain documents, or portions thereof, contained in this **Exhibit A(ii)** and the Plan Supplement remain subject to continuing review and discussions among the Debtors and interested parties with respect thereto. The rights of the Debtors are expressly reserved, subject to the terms and conditions set forth in the Plan (including all applicable consultation, consent, and/or approval rights contained or contemplated therein), to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court.

Pursuant to Article VII of the Plan, as of the Effective Date, the term of the current members of the Boards of each of the Debtors shall expire, such current members shall be deemed to have resigned, and the members for the initial term of the New Boards shall be appointed each in accordance with the applicable New Organizational Documents. Each member of the New Boards of the Reorganized Debtors shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors, and may be replaced or removed in accordance therewith, as applicable.

As of the Effective Date, the New Boards shall be appointed in accordance with the Plan. On the Effective Date, the New Boards shall each consist of [●] ([●]) members, which shall include:

[*To be filed at a later date.*]

**Exhibit B**

**Schedule of Retained Causes of Action**

Review of the Debtors' Causes of Action is ongoing.

The Plan defines this Schedule of Retained Causes of Action as "the schedule of those Causes of Action that shall vest in the Reorganized Debtors on the Effective Date, which will be contained in the Plan Supplement; *provided*, for the avoidance of doubt, that the OpCo Litigation Claims shall vest in the OpCo Debtor Litigation Trust and not in the Reorganized Debtors, and the Freedom HoldCo Debtor Litigation Trust Claims shall vest in the Freedom HoldCo Debtor Litigation Trust and not in the Reorganized Debtors; *provided, further,* that the Causes of Action to vest in the Reorganized Debtors shall be limited to Claims, Causes of Action, counterclaims, or cross claims, that are not otherwise specified as being vested in the OpCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trust, and are against continuing trade partners, vendor counterparties, contractual counterparties, or otherwise relate to the Reorganized Debtors' continued operations." For the avoidance of doubt, nothing in this Plan Supplement modifies this definition in the Plan.

In accordance with section 1123(b) of the Bankruptcy Code, other than with respect to any and all OpCo Litigation Claims and Freedom HoldCo Debtor Litigation Trust Claims, which shall respectively vest in the OpCo Debtor Litigation Trust and the Freedom HoldCo Debtor Litigation Trust pursuant to and in accordance with the Plan, each Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors not previously settled, released, or exculpated under the Plan, whether arising before or after the Petition Date, including, with respect to the Reorganized Debtors, any actions specifically enumerated in this Schedule of Retained Causes of Action (collectively, the "Retained Causes of Action"), and the Reorganized Debtors' rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary, including Article XII thereof.

**No Person or Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the Reorganized Debtors, the OpCo Debtor Litigation Trust, or the Freedom HoldCo Debtor Litigation Trust, as applicable, will not pursue any and all available Causes of Action against them. The Debtors, the Reorganized Debtors, the OpCo Debtor Litigation Trust, and the Freedom HoldCo Debtor Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

**Pursuant to the Plan, on the Effective Date, the Retained Causes of Action of the Debtors shall vest in the Reorganized Debtors.** Other than to the extent constituting Claims or Causes of Action that are otherwise specified as being vested in the OpCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trust pursuant to the Plan, the Retained Causes of Action include among other things, all of the Debtors' Claims (as defined in section 101(5) of the Bankruptcy Code) and Causes of Action (including defenses, counterclaims, and other rights), in each case, relating to the following:

1.      **Claims Related to Insurance Policies**

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

2.      **Claims Related to Taxing Authorities**

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action based in whole or in part upon any and all tax obligations to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, including, without limitation, against or related to all Entities that owe or that may in the future owe money related to tax refunds to the Debtors or the Reorganized Debtors, regardless of whether such Entity is specifically identified in the Plan or in this Plan Supplement.

3.      **Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible Litigation**

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or nonjudicial, regardless of whether such Entity is specifically identified in the Plan, this Plan Supplement, or any amendments thereto.  Without limiting the generality of the foregoing, the Debtors' expressly reserve all Causes of Action against the Entities identified in **<u>Schedule B(i)</u>** attached hereto.

4.      **Claims Related to Contracts and Leases**

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve Causes of Action based in whole or in part upon any and all contracts and leases, joint operating agreements, and similar instruments, to which any of the Debtors or Reorganized Debtors is a party or pursuant to which any of the Debtors or the Reorganized Debtors has any rights whatsoever (regardless of whether such contract or lease is specifically identified in the Plan, this Plan Supplement, or any amendments thereto), including, without limitation, all contracts and leases that are deemed assumed pursuant to the Plan or were previously assumed by the Debtors.   The Claims and Causes of Action reserved include Causes of Action against landlords, vendors, suppliers of goods and services, customers, members, or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deductions owing or improper deductions taken, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual, or regulatory obligations; (c) for failure to fully perform or to condition

2

performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party; (e) for any liens, including mechanics', artisans', materialmens', possessory, or statutory liens held by any one or more of the Debtors and the Reorganized Debtors, as applicable; (f) arising out of environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies, or suppliers of environmental services or goods; (g) for counter-claims and defenses related to any contractual obligations; (h) for any turnover actions arising under section 542 or 543 of the Bankruptcy Code; and (i) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims.  For the avoidance of doubt, the Debtors and the Reorganized Debtors, as applicable, expressly reserve the right to offset any such Claims or Causes of Action against the applicable member's or any other party's service retainer, as applicable.

## 5.    Claims Related to Accounts Receivable and Accounts Payable

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or Reorganized Debtors, regardless of whether such Entity is expressly identified in the Plan, this Plan Supplement, or any amendments thereto. Furthermore, the Debtors expressly reserve all Causes of Action against or related to all Entities who assert or may assert that the Debtors or Reorganized Debtors, as applicable, owe money to such Entities.

## 6.    Claims Related to Deposits or Prepayments, Adequate Assurance, and Other Collateral Postings

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action based in whole or in part upon any and all postings of a security deposits, letters of credit, surety bonds, adequate assurance payment, or any other type of deposit, prepayment, or collateral, regardless of whether such posting of security deposit, surety bonds, letters of credit, adequate assurance payment, or any other type of deposit, prepayment, or collateral is specifically identified in the Plan or in this Plan Supplement.[1]

---

[1]    For the avoidance of doubt, the Debtors reserve all rights with respect to any deposit provided in accordance with the *Final Order (I) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Utility Services, (II) Deeming Utility Companies Adequately Assured of Future Payment, (III) Establishing Procedures for Resolving Objections by Utility Companies and Determining Additional Adequate Assurance of Payment, and (IV) Granting Related Relief* [Docket No. 384] or otherwise provided as "adequate assurance of payment" (as that term is used by section 366 of the Bankruptcy Code).

**7.**     **Claims Related to Liens**

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve all Causes of Action based in whole or in part on any and all liens regardless of whether such liens are specifically identified in the Plan or in this Plan Supplement.

**8.**     **Specified Causes of Action**

Unless otherwise released by the Plan, the Debtors and the Reorganized Debtors, as applicable, expressly reserve the following Causes of Action:

(a) All Causes of Action against A Team Sales, LLC.

**Exhibit B(i)**

**Claims, Defenses, Cross-Claims, and
Counter-Claims Related to Litigation and Possible Litigation**

**Exhibit B(i)**

**Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible Litigation**

| Debtors | Debtor Position | Caption of Suit / Counterparty | Case Number |
|---|---|---|---|
| American Freight Outlet Stores, LLC | Plaintiff | American Freight Outlet Stores, LLC v. Joseph Mori, Global Offices Group, Jane Doe, and John Doe | 1:21-cv-00983 |
| American Freight, LLC<br><br>American Freight Management Company, LLC | Plaintiff | American Freight, LLC *et al.* v. Legacy Furniture Mattress, Gavin Gosik, and Karl Finley | 2:22-cv-2733-SDM-CMV |
| American Freight Outlet Stores, LLC | Plaintiff | American Freight Outlet Stores, LLC v. White Lane, LLC, *et al.* | BCV-24-101968 |

**Exhibit C**

**Take-Back Debt Documents**

*Draft*

**Franchise Group, Inc.**

**Take-Back Debt Facility Term Sheet**

This term sheet (together with all exhibits, annexes, and schedules attached hereto, this "**Term Sheet**") sets forth certain material terms of the proposed Take-Back Debt Facility (as defined below).

Reference is made to the Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates, dated February 20, 2025 [Docket No. 1015] (as may be amended or supplemented from time to time, the "**Plan**"), in the jointly administered chapter 11 cases of such entities that are pending in the United States Bankruptcy Court for the District of Delaware (Case No. 24-12480 (LSS)).

Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Prepetition First Lien Credit Agreement (as defined below) or the Plan, as applicable.

This Term Sheet does not address all terms that would be required in connection with the Take-Back Debt Facility or that will be set forth in the Take-Back Debt Documents (as defined below), which are subject to negotiation and further subject to execution of definitive documents, pleadings and proposed forms of orders, all of which shall be in form and substance acceptable the Required Take-Back Debt Lenders in their sole discretion.

| | |
|---|---|
| **Borrowers** | New TopCo (the "**Lead Borrower**") and any other Reorganized Debtor (as defined in the Plan) designated as a borrower under the Take-Back Debt Facility (together with the Lead Borrower, the "**Borrowers**"). |
| **Guarantors** | Each Reorganized Debtor and any newly formed or acquired Subsidiaries of any Reorganized Debtor from and after the Closing Date (as defined below); provided, that for the avoidance of doubt, each Reorganized Debtor designated as a guarantor under the New ABL Facility shall also be a guarantor under the Take-Back Debt Facility. |
| **Take-Back Debt Agent** | The administrative agent and the collateral agent for the Take-Back Debt Lenders (as defined below) with respect to the Take-Back Debt Facility (in such capacities, the "**Take-Back Debt Agent**") shall be a financial institution selected by, and qualified to perform the duties customarily associated with such roles as determined by, the Required Take-Back Debt Lenders, which shall be reasonably acceptable to the Lead Borrower (it being understood that Wilmington Trust, National Association is acceptable to the Lead Borrower). |
| **Take-Back Debt Lenders** | Certain Lenders under the Prepetition First Lien Credit Agreement and/or one or more of their respective affiliates (each a "**Take-Back Debt Lender**", and collectively, the "**Take-Back Debt Lenders**"). |
| **Prepetition First Lien Facility** | That certain First Lien Credit Agreement, dated as of March 10, 2021, among Franchise Group, Inc., as lead borrower, each of the other borrowers party thereto, each of the other loan parties party thereto, Wilmington Trust, National Association in its capacity as administrative agent and collateral agent, and the lenders party thereto from time to time (as amended, restated, amended and restated, supplemented or otherwise modified from time to time immediately prior to that certain Fourth Amendment to First Lien Credit Agreement, dated as of August 19, 2024, the "**Prepetition First Lien Credit Agreement**"; the |

| | |
|---|---|
| | obligations thereunder and under the other First Lien Loan Documents, the "**First Lien Secured Obligations**") (the "**Prepetition First Lien Facility**"). |
| **Existing ABL Intercreditor Agreement** | That certain Amended and Restated Intercreditor Agreement, dated as of November 22, 2021, among the Lead Borrower, the other Loan Parties from time to time thereto, the ABL Credit Agreement Agent, the First Lien Credit Agreement Agent, the Second Lien Credit Agreement Agent, and the Second Lien Sidecar Credit Agreement Agent (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Existing ABL Intercreditor Agreement**"). |
| **Type and Amount of the Take-Back Debt Facility** | Senior secured term loan credit facility (the "**Take-Back Debt Facility**", and the loans outstanding thereunder, the "**Take-Back Debt Term Loans**") denominated in U.S. dollars in an aggregate principal amount of the maximum amount necessary to ensure that the Reorganized Debtors are in compliance with the Pro Forma Leverage Cap.<br><br>Take-Back Debt Term Loans that are repaid or prepaid may not be reborrowed. |
| **Closing Date** | The credit agreement governing the terms of the Take-Back Debt Facility (the "**Take-Back Debt Credit Agreement**", and together with all security and collateral agreements related thereto, the "**Take-Back Debt Documents**"; the obligations thereunder, the "**Take-Back Debt Secured Obligations**") will become effective on the Effective Date upon satisfaction of all conditions precedent to the effectiveness of the Take-Back Debt Credit Agreement set forth in the Take-Back Debt Documents (the "**Closing Date**"). |
| **Maturity** | The Take-Back Debt Facility shall mature five (5) years after the Closing Date. |
| **Amortization** | None. |
| **Payments and Interest Rates** | As set forth on **Annex I** attached hereto. |
| **Mandatory Prepayments** | Mandatory prepayments of the Take-Back Term Loans shall include (a) 100% of the net cash proceeds of any asset sales outside the ordinary course of business (subject to certain reinvestment rights within a 180-day period) or the occurrence of any casualty event; *provided* that the net cash proceeds received in connection with such asset sale or casualty event, as applicable, is greater than (i) the greater of *$2.5 million* and *1.0% of Consolidated EBITDA* individually or (ii) the greater of *$5 million* and *2.0% of Consolidated EBITDA* in the aggregate in any fiscal year, (b) 100% of the proceeds of debt incurrences (other than debt permitted under the Take-Back Debt Facility) and (c) without duplication, 100% of the net cash proceeds received in connection with the sale by a Borrower to a Subsidiary or a PSP Securitization Entity (as defined in the First Lien Credit Agreement) pursuant to any receivable securitization or "whole" business securitization, including in connection with a Permitted PSP Securitization (as defined in the First Lien Credit Agreement).<br><br>Mandatory prepayments shall be applied toward repayment of the Take-Back Term Loans on a *pro rata* basis and will result in a dollar-for-dollar permanent reduction of then outstanding principal amounts thereof subject to Call |

| | Protections. |
|---|---|
| **Call Protections** | Any mandatory or optional prepayment of the Take-Back Term Loans shall be subject to a prepayment penalty of (a) prior to the first anniversary of closing, 3.0%, (b) prior to the second anniversary of closing, 2.0%, (c) prior to the third anniversary of closing, 1.0%, or (d) thereafter, 0.0%. |
| **Collateral and Priority; Intercreditor Agreement** | The Take-Back Debt Facility shall be secured by the same Collateral securing the Prepetition First Lien Loan Claims pursuant to a customary intercreditor agreement substantially similar to the Existing ABL Intercreditor Agreement (with the same priorities with respect to different classes of collateral as set forth in the Existing ABL Intercreditor Agreement) with modifications to reflect the principal amounts of each of the Take-Back Debt Credit Agreement and the New ABL Credit Agreement and certain other corresponding caps and thresholds after giving effect to the Plan and such other modifications to reflect the "take-back" nature of the debt (such modified agreement, the "**Intercreditor Agreement**"). |
| **Guarantees** | Each Guarantor shall unconditionally guarantee, on a joint and several basis, all Take-Back Debt Secured Obligations arising under or in connection with the Take-Back Debt Facility. |
| **Documentation** | The Take-Back Debt Facility (including the terms and conditions applicable thereto) shall be documented pursuant to and evidenced by (a) the Take-Back Debt Credit Agreement, negotiated in good faith, in form and substance reasonably acceptable to the Required Take-Back Debt Lenders, which shall (i) reflect the terms set forth herein, (ii) reflect the terms of the Plan, as applicable, (iii) have usual and customary provisions for exit financings of this kind and provisions that are necessary to effectuate the financing contemplated hereby, as determined by the Required Take-Back Debt Lenders in good faith and (iv) be substantially based on the Prepetition First Lien Credit Agreement and (b) other legal documentation or instruments as are, in each case, usual and customary for exit financings of this type and/or reasonably necessary to effectuate the financing contemplated hereby, as determined by the Required Take-Back Debt Lenders in good faith (this paragraph, the "**Documentation Principles**"); provided, that, notwithstanding anything herein to the contrary, to the extent the provisions under the New ABL Credit Agreement are more restrictive (i.e., less permissive to the Loan Parties) than the terms of the Take-Back Debt Credit Agreement, the terms of the Take-Back Debt Credit Agreement shall be modified such that those terms are no longer more permissive than the terms of the New ABL Credit Agreement. |
| | Any references in this Term Sheet to customary and/or usual provisions shall mean such provisions that are customary and/or usual in senior secured syndicated term loan exit facilities. |
| **Representations and Warranties** | The Take-Back Debt Documents shall contain usual and customary representations and warranties, subject to the Documentation Principles. |
| **Affirmative and Negative** | The Take-Back Debt Documents shall contain usual and customary affirmative and negative covenants for exit facilities of this type, including limitations on |

| | |
|---|---|
| **Covenants** | non-ordinary course incurrence of indebtedness, liens, dispositions of assets, mergers, restricted payments, investments, fundamental changes, transactions with affiliates, burdensome agreements, and prepayments of debt of the Take-Back Debt Facility, subject to the Documentation Principles; <u>provided</u>, that, without limitation, the requirement that the Take-Back Debt Documents shall include permitted baskets in connection with such covenants as set forth on **Annex II** attached hereto.

For the avoidance of doubt, the Take-Back Debt Documents shall not include any financial maintenance covenants. |
| **Conditions Precedent to Closing** | Closing will be conditioned upon usual and customary conditions precedent, including without limitation, the requirement that the Borrowers have a minimum liquidity of **$[85] million** on a pro forma basis after giving effect to all of the transactions on the Closing Date. |
| **Events of Default** | The Take-Back Debt Documents shall contain usual and customary events of default, subject to the Documentation Principles; <u>provided</u> that such events of default shall include events of default thresholds set forth in **Annex II** attached hereto. |
| **Expenses and Indemnification** | The Take-Back Debt Credit Agreement shall provide for the payment of all reasonable, documented, out-of-pocket costs and expenses of the Take-Back Debt Agent and the Take-Back Debt Lenders.

The Take-Back Debt Credit Agreement shall also provide for customary indemnification by each of the Loan Parties, on a joint and several basis, of each of the Take-Back Debt Lenders (together with their related parties and representatives). |
| **Assignments** | The Take-Back Debt Credit Agreement shall contain assignment provisions that are usual and customary for exit financings of this type and as determined in accordance with the Documentation Principles. |
| **Amendments** | Usual and customary for facilities of this type requiring the consent of the Required Take-Back Debt Lenders, except for amendments customarily requiring approval by adversely affected Take-Back Debt Lenders, including, without limitation, provisions regarding non-pro rata and/or uptiering transactions, under the Take-Back Debt Facility.

"**Required Take-Back Debt Lenders**" shall mean Take-Back Debt Lenders (other than the fronting lender) holding greater than 50.1% of the aggregate amount of commitments in respect of the Take-Back Term Loans. |
| **Governing Law** | This Term Sheet and the Take-Back Debt Documents shall be governed by the laws of the State of New York (except as otherwise set forth therein). |
| **Counsel to the Take-Back Debt Lenders** | Paul Hastings LLP |

**Annex I**

Interest and Certain Payments

| | |
|---|---|
| Interest Rate: | The Take-Back Term Loans shall bear interest at a rate per annum equal to the adjusted SOFR rate (subject to a floor of 0.0%) <u>plus</u> 8.00%; provided that, at the Borrower's election, the Borrower may pay up to 2.00% of the Take-Back Term Loans in kind. |
| Interest Payment Dates: | Interest shall be payable in cash on a quarterly basis in arrears, upon any prepayment due to acceleration and at final maturity. |
| Default Rate: | During the continuance of an event of default, principal, overdue interest, overdue premium and fees and other overdue amounts shall bear interest at 2.00% per annum above the rate otherwise applicable to such obligations. |
| Rate and Payment Basis: | All per annum rates shall be calculated on the basis of a year of 360 days, except that interest computed by reference to the Alternate Base Rate shall be computed on a basis of a year of 365 days (or 366 days in a leap year). All amounts payable under this Term Sheet shall be made in Dollars. |

\*        \*        \*        \*

**Annex II**

Covenant Baskets

| BASKET | TAKE-BACK DEBT CREDIT AGREEMENT |
|---|---|
| **DE MINIMIS THRESHOLDS** | |
| *Excluded Accounts* | Daily balance of less than *$[100,000]* individually or *$2.5 million* in the aggregate. |
| *Excluded Assets* | Including but not limited to real property that is not Material Real Property and commercial tort claims with an individual value of less than *$250,000* and other customary exclusions. |
| *Immaterial Subsidiary* | Not permitted. |
| *Material Indebtedness* | Indebtedness in excess of *$[5] million*. |
| *Material Real Property* | Owned real estate in excess of *$5 million*. |
| *Permitted Subordinated Indebtedness* | Not permitted. |
| *Perfection of Security Interests* | Chattel paper, investment property, certificated securities, letter of credit, commercial tort claim, third party custodian in excess of *$[250,000]* |
| *Permitted Acquisition of Non-Loan Parties* | *None*. Must become a Loan Party. |
| **DEBT / LIENS** | |
| *Capital Lease Debt Basket* | Up to the greater of *$[5] million* and *[2.5]% of Consolidated EBITDA* and any Permitted Refinancing thereof. |
| *General Debt and Lien Baskets* | Up to the greater of *$[5] million* and *[2.5]% of Consolidated EBITDA* but not to exceed *$100 million* at any time. |
| *JV Debt Basket* | Not permitted. |
| *Assumed / Acquired Debt Basket* | Up to the greater of *$[5] million* and *[2.5]% of Consolidated EBITDA*. |
| *Non-Loan Party Debt Basket* | Not permitted. |
| *Capital Lease Sale Leaseback Debt Basket* | Permitted so long as in connection with a permitted sale and leaseback transaction. |
| *New ABL Credit Agreement Debt Basket* | Up to *$[275] million*. |
| *Other Debt Baskets* | Other ordinary course and customary debt baskets to be agreed. |
| *Other Lien Baskets* | Other ordinary course and customary lien baskets to be agreed. |
| **INVESTMENTS, LOANS, ADVANCES, GUARANTEES AND ACQUISITIONS** | |
| *Officer / Director Advance Investment Basket* | Loans and advances to officers, members of the Board and employees of any Borrower and its Subsidiaries for (i) reasonable and customary business-related travel, entertainment, relocation and analogous ordinary business |

| BASKET | TAKE-BACK DEBT CREDIT AGREEMENT |
|---|---|
| | purpose and (ii) in connection with the purchase of equity interests of the Borrower (or any direct or indirect parent thereof). |
| *Non-Loan Party/Foreign Subsidiary and Asset Investment Basket* | Not permitted. |
| *Non-Cash Consideration Investment Basket* | Permitted to the extent consisting of promissory notes and other non-cash consideration received in connection with Dispositions permitted by the asset sales covenant, subject to the prior written consent of the Take-Back Debt Lenders in their sole discretion. |
| *Permitted Acquisition/ Investment Basket* | Unlimited if in connection with a Permitted Acquisition so long as acquired entities/assets become a Loan Party or Collateral, as applicable. |
| *JV Investment Basket* | Not permitted. |
| *Similar Business Investment Basket* | Up to the greater of *$[10] million* and *[4]% of Consolidated EBITDA*. |
| *Sale Leaseback Investment Basket* | Investments arising as a result of a permitted sale and leaseback Transactions are permitted. |
| *PSP Securitization* | Investments permitted to establish a permitted PSP Securitization and any related investments entered into prior to the date any PSP Securitization Entity is redesignated as a Subsidiary. |
| *General Investment Basket* | Subject to no payment or bankruptcy Event of Default, up to the greater of *$[10] million* and *[4]% of Consolidated EBITDA*. |
| *Other Permitted Investment Baskets* | Other ordinary course and customary investment baskets to be agreed. |
| ASSET SALES | |
| *JV Disposition Basket* | Not permitted. |
| *Non-Collateral Disposition Basket* | Not permitted. |
| *Sale and Leaseback Disposition Basket* | Up to the greater of *$[5] million* and *[2.5]% of EBITDA*. |
| *Non-Loan Party Disposition Basket* | Not permitted. |
| *PSP Securitization* | Permitted disposition of equity interests of PSP Securitization Entities. |
| *General Disposition Basket* | Up to the greater of *$[5] million* and *[2.5]% of EBITDA*. |
| *Other Permitted Disposition Baskets* | Other ordinary course and customary disposition baskets to be agreed. |
| SALE AND LEASEBACK TRANSACTIONS | |

| BASKET | TAKE-BACK DEBT CREDIT AGREEMENT |
|---|---|
| *Permitted Sale and Leaseback Transaction* | Up to the greater of *$[5] million* and *[2.5]% of EBITDA*. |
| **RESTRICTED PAYMENTS** | |
| *General RP Basket* | Not permitted. |
| **PERMITTED PAYMENTS OF INDEBTEDNESS** | |
| *Interest and Principal Payment Basket for New ABL Credit Agreement and Second Lien Debt* | *Unlimited* ability to make regularly scheduled interest and principal payments, mandatory offers to repay, repurchase or redeem, mandatory prepayments of principal, premium and interest, and payment of fees, expenses and indemnification obligations, with respect to any Permitted Indebtedness (including, for the avoidance of doubt, Indebtedness arising under the New ABL Credit Agreement and any permitted second lien debt). |
| *Other Permitted Debt Payments* | Other ordinary course and customary debt payment baskets to be agreed. |
| **TRANSACTION WITH AFFILIATES** | |
| *Affiliate Transactions De Minimis Basket* | Affiliate transactions in excess of *$[2.5] million* prohibited unless consisting of (1) on arm's-length terms, (2) furniture sales and assignment of lease agreements, (3) issuances of equity interests of the Borrower or any of its Subsidiaries otherwise permitted under the Prepetition First Lien Credit Agreement, (4) employment or severance arrangements, (5) investments by Affiliates in Indebtedness and preferred Equity of the Borrower and its Subsidiaries, (6) the payment of customary fees, etc. to the Board, officers, and employees in the ordinary course of business, (7) Restricted Payments and Investments made in lieu of Restricted Payments, (8) payment to or from joint ventures in the ordinary course of business or (9) ordinary course transactions with customers, clients, suppliers, contractors, etc. that are Affiliates. |
| *PSP Securitization* | Permitted |
| **OTHER COVENANTS** | |
| *Public Ratings* | The Reorganized Debtors shall use commercially reasonable efforts to obtain within 60 days of the Effective Date a public rating (but not any particular rating) in respect of the Take-Back Debt Facility. |
| *Designation of Securitization Entities (as defined in the First Lien Credit Agreement)* | Permitted. |
| **EVENTS OF DEFAULT** | |
| *Interest Payment Event of Default* | Five (5) business days grace period. |

| BASKET | TAKE-BACK DEBT CREDIT AGREEMENT |
|---|---|
| *General Covenant Event of Default* | Thirty (30) days grace period commencing after notice or knowledge of an Event of Default. |
| *Judgment Event of Default* | In excess of *$[5] million*. |
| *Cross-Default Event of Default* | In excess of *$[5] million*. |

## **Exhibit D**

### **Restructuring Transactions Memorandum**

In accordance with the Plan, the steps set forth in the Restructuring Transactions Memorandum remain subject to modification until the Effective Date.

Certain documents, or portions thereof, contained in this **Exhibit D** and the Plan Supplement remain subject to continuing review and discussions among the Debtors and interested parties with respect thereto.  The rights of the Debtors are expressly reserved, subject to the terms and conditions set forth in the Plan (including all applicable consultation, consent, and/or approval rights contained or contemplated therein), to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court.

Unless otherwise set forth below, the following steps shall occur in the order set forth below.

*Draft*

## Restructuring Transactions Memorandum[1]

This Restructuring Transactions Memorandum sets forth a summary description of the material components of the Restructuring Transactions to be effectuated prior to, on, or following the Effective Date in connection with the *[Sixth] Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1015] (as may be amended, supplemented or modified from time to time, the "Plan"). The Debtors reserve all rights to modify, amend, supplement, or restate any part of this Restructuring Transactions Memorandum as necessary or appropriate, subject to the Definitive Document Consent Rights. Capitalized terms used but not defined herein shall have the definitions set forth in the Plan. In the event of an inconsistency between the Plan and the terms hereof, the terms of the Plan shall control.

The definitive documentation necessary or appropriate to implement the transaction steps set forth herein may include, among other things and without limitation, merger, purchase, sale, assignment, transfer, novation, release, amendment, distribution and/or contribution agreements.

Unless otherwise set forth below, the Restructuring Transactions are intended to be effectuated as follows and in the following order.

### Step 1.

**Prior to the Effective Date**:

    A. A third party forms a new Delaware limited liability company ("Reorganized Franchise Group Parent"), which is intended to be treated as a corporation for U.S. federal income tax purposes.

    B. Immediately after Step 1A, Reorganized Franchise Group Parent forms a new Delaware limited liability company ("Reorganized Franchise Group Intermediate"), which is intended to be treated as a corporation for U.S. federal income tax purposes.

    C. Immediately after Step 1B, Reorganized Franchise Group Intermediate forms a new Delaware limited liability company ("Reorganized Franchise Group Buyer"), which is intended to be treated as a corporation for U.S. federal income tax purposes.

**On the Effective Date:**

    D. Reorganized Franchise Group Parent issues and contributes to Reorganized Franchise Group Intermediate (i) common limited liability company interests of Reorganized Franchise Group Parent ("Senior Reorganized Parent Equity") and (ii) (if applicable) common limited liability company interests of Reorganized Franchise Group Parent that contain a hurdle amount equal to the Initial Strike Price ("Junior Reorganized Parent Equity")[2] (collectively, the "Franchise Group Equity Rights"). The Franchise Group Equity Rights represent 100% of the issued and outstanding Equity Interests of Reorganized Franchise Group Parent.

---

[1] This Restructuring Transactions Memorandum remains subject to further review and comment in all respects. In the event that there are any further amendments to the Plan or changes to the contemplated transaction steps necessary to complete the Plan, then these transaction steps set forth herein will be updated and an amended Restructuring Transactions Memorandum will be filed setting forth such modified transaction steps.

[2] [**Note to Draft**: Junior Reorganized Parent Equity is issued only if Class 5 votes to accept the Plan.]

E. Immediately after Step 1D, Reorganized Franchise Group Intermediate contributes the Franchise Group Equity Rights to Reorganized Franchise Group Buyer. Following this Step 1E, Reorganized Franchise Group Buyer owns 100% of the issued and outstanding Equity Interests of Reorganized Franchise Group Parent, resulting in momentary circular ownership.

*Step 2.*

**On the Effective Date:**

A. Franchise Group, Inc. forms the OpCo Debtor Litigation Trust.

B. The Freedom HoldCo Debtors form the Freedom HoldCo Debtor Litigation Trust.

C. Immediately after Step 2A, the OpCo Debtors transfer the OpCo Debtor Litigation Trust Assets (other than any Junior Reorganized Parent Equity to be contributed in Step 5B, if applicable) to the OpCo Debtor Litigation Trust.

D. Immediately after Step 2B, the Freedom HoldCo Debtors transfer the Freedom HoldCo Debtor Litigation Trust Claims to the Freedom HoldCo Debtor Litigation Trust.

*Step 3.* Franchise Group, Inc. contributes any assets it holds, other than (i) Equity Interests of Franchise Group New Holdco, LLC, (ii) units in the OpCo Debtor Litigation Trust, and (iii) any Cash on hand intended to fund distributions under the Plan, to Franchise Group New HoldCo, LLC, and Franchise Group New HoldCo, LLC assumes the liabilities of Franchise Group, Inc. that are continuing or being Reinstated, solely to the extent applicable and in accordance with the Plan.

*Step 4.* Reorganized Franchise Group Buyer enters into the Exit ABL Facility with the third-party lenders thereunder in accordance with the Plan and receives Cash from the loans made to Reorganized Franchise Group Buyer thereunder.

*Step 5.*

**On the Effective Date, following the prior Steps 1 through 4:**

A. Reorganized Franchise Group Buyer purchases from Franchise Group, Inc., 100% of the Equity Interests of Franchise Group New HoldCo, LLC in exchange for (i) the Franchise Group Equity Rights received by Reorganized Franchise Group Buyer in Step 1E, (ii) the Cash proceeds of the Exit ABL Facility, and (iii) the issuance of the Take-Back Term Loans ((i)-(iii) collectively, the "Franchise Group Purchase Consideration").

**On the Effective Date, following the prior Step 5A:**

B. Franchise Group, Inc. transfers any Junior Reorganized Parent Equity (if applicable) to the OpCo Debtor Litigation Trust.

**On the Effective Date, following the prior Step 5B:**

C. Franchise Group, Inc. distributes the Senior Reorganized Parent Equity, Cash proceeds from the Exit ABL Facility, any Cash on hand, Take-Back Term Loans and the OpCo Debtor Litigation Trust Units to the applicable Holders of Claims under the Plan in full and final satisfaction, settlement, release, and discharge of their Claims pursuant to the Plan.

D. The Holders of Existing Equity Interests of Freedom VCM Holdings, LLC ("TopCo") receive a distribution of Cash on hand, if any, after paying all Allowed Claims against TopCo and following the allocation described in Section 3.6 of the Plan, in complete satisfaction of their Existing TopCo Equity Interests, which are then cancelled.

E. After accounting for the Freedom HoldCo DIP Election, the Freedom HoldCo Debtor Litigation Trust Units shall be transferred to Holders of DIP Claims (if applicable), Holders of Allowed Prepetition HoldCo Loan Claims, and Holders of Allowed Freedom HoldCo General Unsecured Claims to the extent provided in the Plan.

**On the Effective Date, following the prior Step 5C:**

F. Pursuant to this Restructuring Transactions Memorandum [and the Confirmation Order], without any further action, the holders of Senior Reorganized Parent Equity and/or Junior Reorganized Parent Equity (if applicable) immediately following Step 5C, transfer (and shall be deemed to have transferred) such Senior Reorganized Parent Equity and/or Junior Reorganized Parent Equity (if applicable) to Reorganized Franchise Group Topco, LLC, a newly formed Delaware limited liability company, respectively, in exchange for common limited liability company interests of Reorganized Franchise Group Topco, LLC (referred to as the "Reorganized Common Equity" in the Plan) and the New Warrants (if applicable), and shall become parties to the Reorganized Franchise Group Topco, LLC limited liability company agreement.[3]

**Step 6.** Franchise Group, Inc. and any of its direct or indirect parent entities that are Debtors shall be liquidated, dissolved, or otherwise wound down as soon as reasonably practicable following the Effective Date, as determined by the Debtors.

**_General Authority With Respect to Intercompany Claims and Other Restructuring Transactions Steps_:**

At any point following the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, but will not be required to: (i) merge out of existence, liquidate, dissolve, convert into different entity forms, and/or make tax elections; (ii) set off, settle, distribute, contribute, cancel, or release without any distribution with respect to the Intercompany Claims; or (iii) transfer assets, rights, obligations, personnel, and similar items among the Debtors or Reorganized Debtors, as applicable, in each case, in furtherance of the transactions contemplated by the Plan, subject to the applicable consent rights under the Plan and the Restructuring Support Agreement.

---

[3]    [**Note to draft**: Step 5F is subject to further review.]

## Exhibit E

## Rejected Contracts/Lease List[1]

Article X of the Plan provides the following:  Except as otherwise provided herein, any Executory Contracts and Unexpired Leases (i) not previously assumed, (ii) not previously assumed and assigned in accordance with any Partial Sale Transaction or other order approving such assumption and assignment, or (iii) not previously rejected pursuant to an order of the Bankruptcy Court, will be assumed effective as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and the Confirmation Order except any Executory Contract or Unexpired Lease (1) identified on the Rejected Contracts/Lease List  as a contract or lease to be rejected, (2) that is the subject of a separate motion or notice to reject, assume, or assume and assign pending as of the Confirmation Date, or (3) that previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code).

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Debtors' Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective on the occurrence of the Effective Date or, as to rejected Executory Contracts and Unexpired Leases, on such other date as may be identified on the Rejected Contracts/Lease List or other motion or notice to reject by agreement of the affected counterparty to such Executory Contract or Unexpired Lease.

Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party (including the applicable Successful Bidder in the event of a Partial Sale Transaction, if any) on or prior to the Effective Date, shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by agreement of the parties or, other than with respect to non-residential Unexpired Leases, by an order of the Bankruptcy Court.  To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, or increases, accelerates or otherwise alters any obligations, rights or liabilities of the Debtors or the Reorganized Debtors thereunder as a result of, or creates any Lien on any asset or property of the Debtors or the Reorganized Debtors as a result of, the assumption of such Executory Contract or Unexpired Lease or the execution or consummation of any other Restructuring Transaction (including any "change of control" provision), then such provision shall be deemed unenforceable (solely for purposes of the transactions contemplated under this Plan) and modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease, to exercise any other default-related rights with respect thereto, to increase, accelerate or otherwise alter the obligations, rights or liabilities of the Debtors or the Reorganized Debtors thereunder, or create or impose a Lien on any asset or property of the Debtors or the Reorganized Debtors.  For the avoidance of doubt, Confirmation of the Plan shall not be deemed

---

[1]  For the avoidance of doubt, the rejections of the Executory Contracts and Unexpired Leases listed in this **Exhibit E** shall include the rejection of any and all ancillary documents executed in connection with, or as part of, such Executory Contract or Unexpired Lease, including any ancillary document that any counterparty may assert as executory, whether or not such ancillary document is expressly listed herein.

an assignment of any Executory Contract or Unexpired Lease of the Debtors, notwithstanding any change in name, organizational form, or jurisdiction of organization of any Debtor in connection with the occurrence of the Effective Date.

Additionally, <u>Section 10.7</u> of the Plan provides the following:  Neither the exclusion nor inclusion of any contract or lease in the Rejected Contracts/Lease List or Assumed Contracts List, as applicable, nor anything contained in the Plan or Sale Documents, nor the Debtors' delivery of a notice of proposed assumption and proposed Cure Cost to any contract and lease counterparties, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

Certain documents, or portions thereof, contained in this **<u>Exhibit E</u>** and the Plan Supplement remain subject to continuing review and discussions among the Debtors and interested parties with respect thereto.  The rights of the Debtors are expressly reserved, subject to the terms and conditions set forth in the Plan (including all applicable consultation, consent, and/or approval rights contained or contemplated therein), to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court.

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|---|---|---|---|---|---|---|
| 1 | 1 Haul Takes It All | 1 Haul Takes It All<br>500 Catawba Trail<br>Lima, OH 45806 | American Freight, LLC | Contract (Other), dated December 18, 2023 | | 3/31/2025 |
| 2 | 1584 Flatbush Avenue Partners, LLC | 1584 Flatbush Avenue Partners, LLC<br>539 Eastern Parkway Third Floor<br>Brooklyn, NY 11216 | Vitamin Shoppe Industries LLC | Lease, dated February 14, 2015<br><br>1584 Flatbush Ave.<br>Brooklyn, NY 11234 | 0810 | 4/30/2025 |
| 3 | 1st Choice Home Furnishings of Baton Rouge, LLC | 1st Choice Home Furnishings of Baton Rouge, LLC<br>662 Howard Avenue<br>Biloxi, MS 39530 | Buddy's Franchising and Licensing, LLC<br>Franchise Group Inc. | Settlement Agreement and Release,  dated May 10, 2024 | | 4/30/2025 |
| 4 | 1st Choice Home Furnishings of Donaldsonville, LLC | 1st Choice Home Furnishings of Donaldsonville, LLC<br>662 Howard Avenue<br>Biloxi, MS 39530 | Buddy's Franchising and Licensing, LLC<br>Franchise Group Inc. | Settlement Agreement and Release,  dated May 10, 2024 | | 4/30/2025 |
| 5 | A360 Enterprises, LLC | A360 Enterprises, LLC<br>4600 W. 77th Street Suite 295<br>Edina, MN 5543 | Franchise Group. Inc. | Master Subscription and Services Agreement, dated September 19, 2022 | | 3/31/2025 |
| 6 | A360 Enterprises, LLC | A360 Enterprises, LLC<br>4600 W. 77th Street Suite 295<br>Edina, MN 55435 | Franchise Group. Inc. | Digital Accessibility Audit, Remediation Support & QA Testing Statement of Work, dated August 26, 2022 | | 3/31/2025 |
| 7 | AEI National Income Property Fund VII LP | AEI National Income Property Fund VII LP<br>1300 Wells Fargo Place<br>Saint Paul, MN 55101 | Vitamin Shoppe Industries LLC | Guaranty of Lease by VSI, dated January 28, 2022<br><br>4502-4508 West Wendover Avenue<br>Greensboro, NC 27409 | 203 | 3/31/2025 |
| 8 | All Purpose Hauling and Removing LLC | All Purpose Hauling and Removing LLC<br>3218 Lincoln Street<br>Lorain, OH 44052 | American Freight, LLC | Contract (Other), dated March 17, 2022 | | 3/31/2025 |
| 9 | Alturas Metro Towne Center LLC | Alturas Metro Towne Center LLC<br>500 E. Shore Dr, Suite 120<br>Eagle, ID 83616 | Vitamin Shoppe Industries LLC | Lease, dated September 21, 2004<br><br>3033 West Peoria Avenue<br>Phoenix, AZ 85029 | 0210 | 4/30/2025 |
| 10 | American Express Travel Related Services Company, Inc. | American Express Travel Related Services Company, Inc.<br>200 Vesey Street<br>New York, NY 10285 | American Freight, LLC | MSA 01, dated March 31, 2022 | | 3/31/2025 |
| 11 | American First Finance Inc. | American First Finance Inc.<br>8585 N. Stemmons Fwy, Suite N-1000<br>Dallas, TX 75247 | American Freight Outlet Stores, LLC | Referral Agreement, dated July 15, 2022 | | 3/31/2025 |
| 12 | American First Finance Inc. | American First Finance Inc.<br>PO Box 565848<br>Dallas, TX 75356 | American Freight, LLC | Authorized Dealer Agreement, dated July 15, 2022 | | 3/31/2025 |
| 13 | American First Finance Inc. | American First Finance Inc.<br>8585 N. Stemmons Fwy, Suite N-1000<br>Dallas, TX 75247 | American Freight, LLC | Referral Agreement, dated July 15, 2022 | | 3/31/2025 |
| 14 | Angle Gully LLC | Angle Gully LLC<br>c/o Newcastle Retail Management, LLC<br>150 North Michigan Ave.<br>Chicago, IL 60601 | Vitamin Shoppe Industries LLC | Lease, dated December 20, 2014<br><br>3325 N. Ashland Ave.<br>Chicago, IL 60657 | 0756 | 4/30/2025 |
| 15 | Asset Strategies Group, LLC | Asset Strategies Group, LLC<br>501 W Schrock Rd, Suite 201<br>Westerville, OH 43081 | American Freight, LLC | MSA, dated October 24, 2023 | | 3/31/2025 |
| 16 | Asset Strategies Group, LLC | Asset Strategies Group, LLC<br>501 West Schrock Road, Suite 201<br>Westerville, OH 43081 | American Freight, LLC | Lease Management Services Agreement, dated October 24, 2023 | | 3/31/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|------|-------------|---------------------|--------|-------------------|-------|---------------|
| 17 | Assurant Service Protection, Inc. | Assurant Service Protection, Inc.<br>11222 Quail Roost Drive<br>Miami, FL 33157 | American Freight, LLC | Amendment No. 3 to SOW No. 1, dated October 06, 2021 | | 3/31/2025 |
| 18 | Assurant Service Protection, Inc. | Assurant Service Protection, Inc.<br>11222 Quail Roost Drive<br>Miami, FL 33157 | American Freight, LLC | Statement of Work No. 2 to Master Services Agreement - Aftermarket Service Contract Program, dated July 23, 2021 | | 3/31/2025 |
| 19 | Assurant Service Protection, Inc. | Assurant Service Protection, Inc.<br>11222 Quail Roost Drive<br>Miami, FL 33157 | American Freight, LLC | Master Services Agreement, dated July 23, 2021 | | 3/31/2025 |
| 20 | Assurant Service Protection, Inc. | Assurant Service Protection, Inc.<br>11222 Quail Roost Drive<br>Miami, FL 33157 | American Freight, LLC | Amendment No. 2 to SOW No. 1, dated September 23, 2021 | | 3/31/2025 |
| 21 | Atlanticus Services Corporation | Atlanticus Services Corporation<br>Five Concourse Parkway, Suite 300<br>Atlanta, GA 30328 | Franchise Group. Inc. | Reconciliation Agreement, dated May 4, 2022 | | 3/31/2025 |
| 22 | Atlas Security Service, Inc. | Atlas Security Service, Inc.<br>1309 E. Republic Road, Suite B<br>Springfield, MO 65804 | American Freight, LLC | Standard Commercial Security Agreement, dated October 06, 2021 | | 3/31/2025 |
| 23 | Baker Bunch Inc. | Baker Bunch Inc.<br>15348 9th Ave.<br>Phoenix, IL 60426 | American Freight, LLC | Preferred Delivery Services Agreement, dated May 2, 2024 | | 3/31/2025 |
| 24 | bb BHF Stores LLC | bb BHF Stores LLC<br>552 Wisconsin Street<br>San Francisco, CA 94107 | Buddy's Newco, LLC | Sublease Agreement<br><br>5201 Norwood Ave.<br>Jacksonville,  FL 32208<br><br>8807 Lem Turner Rd<br>Jacksonville, FL 32208<br><br>3 1st St NW<br>Moultrie, GA 31768 | 17<br><br>55<br><br>65 | 5/12/2025 |
| 25 | BC Dedliveries LLC | BC Dedliveries LLC<br>1712 Peardale Rd<br>Columbus, OH 43229 | American Freight, LLC | Preferred Delivery Services Agreement, dated May 10, 2024 | | 3/31/2025 |
| 26 | BCDC Portfolio Owner LLC | BCDC Portfolio Owner LLC<br>c/o Oak Street Capital, LLC<br>30 N. LaSalle St., Suite 4140<br>Chicago, IL 60602<br>Attn: Asset Management<br><br>BCDC Portfolio Owner LLC<br>c/o Oak Street Capital, LLC<br>30 N. LaSalle St., Suite 4140<br>Chicago, IL 60602<br>Attn: Heba Elayan<br><br>Kelley Drye & Warren LLP<br>3 World Trade Center<br>175 Greenwich Street<br>New York,  NY 10007<br>Attn: Robert L. LeHane | Franchise Group. Inc. | Unconditional Guaranty of Payment and Performance, dated June 17, 2022 | | 3/31/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|---|---|---|---|---|---|---|
| 27 | BCHQ Owner LLC | BCHQ Owner LLC<br>c/o Oak Street Capital, LLC<br>30 N. LaSalle St., Suite 4140<br>Chicago, IL 60602<br>Attn: Asset Management<br><br>BCHQ Owner LLC<br>c/o Oak Street Capital, LLC<br>30 N. LaSalle St., Suite 4140<br>Chicago, IL 60602<br>Attn: Heba Elayan<br><br>Kelley Drye & Warren LLP<br>3 World Trade Center<br>175 Greenwich Street<br>New York, NY 10007<br>Attn: Robert L. LeHane | Franchise Group. Inc. | Unconditional Guaranty of Payment and Performance, dated August 2, 2022 | | 3/31/2025 |
| 28 | Big Buddy's Moving Company LLC | Big Buddy's Moving Company LLC<br>7870 Axton Rd.<br>Axton, VA 24054 | American Freight, LLC | Preferred Delivery Services Agreement, dated December 29, 2023 | | 3/31/2025 |
| 29 | Big Burns Moving LLC | Big Burns Moving LLC<br>3140 Jackson Dr<br>Holiday, FL 34691 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 14, 2024 | | 3/31/2025 |
| 30 | Bi-Rite Holdings, LLC | Bi-Rite Holdings, LLC<br>662 Howard Avenue<br>Biloxi, MS 39530 | Buddy's Franchising and Licensing, LLC<br>Franchise Group Inc. | Settlement Agreement and Release,  dated May 10, 2024 | | 4/30/2025 |
| 31 | Brown's Moving & Delivery Service LLC | Brown's Moving & Delivery Service LLC<br>623 Steger Drive<br>Duncanville, TX 75116 | American Freight, LLC | Preferred Delivery Services Agreement, dated April 18, 2024 | | 3/31/2025 |
| 32 | Bryn Mawr Plaza Associates | Bryn Mawr Plaza Associates<br>c/o Baker Properties, Inc.<br>One Town Place, Suite 100<br>Bryn Mawr, PA 19010 | Vitamin Shoppe Industries LLC | Lease, dated February 09, 1999<br><br>715 W. Lancaster Ave.<br>Bryn Mawr, PA 19010 | 0049 | 4/30/2025 |
| 33 | Buddy Mac Holdings, LLC | Buddy Mac Holdings, LLC<br>400 E Centre Park Blvd., Suite 101<br>Desoto, TX 75115 | Buddy's Newco, LLC | Sublease Agreement, dated July, 1 2021<br><br>6608 E. Adamo Drive<br>Tampa, FL 33619<br><br>5505 N. Armenia Avenue<br>Tampa, FL 33603<br><br>2514 9th Street West<br>Bradenton, FL 34205<br><br>10015 N. Nebraska Avenue<br>Tampa, FL 33612 | 4<br><br>5<br><br>8<br><br>13 | 5/12/2025 |
| 34 | Buddy's Rollco, LLC | Buddy's Rollco, LLC<br>662 Howard Avenue<br>Biloxi, MS 39530 | Buddy's Franchising and Licensing, LLC<br>Franchise Group Inc. | Settlement Agreement and Release,  dated May 10, 2024 | | 4/30/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|---|---|---|---|---|---|---|
| 35 | Buddy's Northwest, LLC | Buddy's Northwest, LLC<br>c/o Vintage Partners<br>4705 S. Apopka Vineland Road, Suite 210<br>Orlando, FL 32819<br><br>Davis Gillet Mottern & Sims LLC<br>1230 Peachtree Street N.E., Suite 2445<br>Atlanta, GA 30309<br>Attn: Jerry Sims | Buddy's Newco, LLC | Guaranty of Second Amended and Restated Master Lease Agreement by and between Store Master Funding IV, LLC and Buddy's Northwest, LLC, dated November 3, 2015 | | 5/12/2025 |
| 36 | Buxton Company, LLC | Buxton Company, LLC<br>2651 S. Polaris Dr.<br>Fort Worth, TX 76137 | American Freight, LLC | SOW, dated September 05, 2023 | | 4/30/2025 |
| 37 | Care N Errands, LLC | Care N Errands, LLC<br>2345 Maxon Road Extension<br>Schenectady, NY 12308 | American Freight, LLC | Preferred Delivery Services Agreement, dated January 10, 2024 | | 3/31/2025 |
| 38 | Cates Moving LLC | Cates Moving LLC<br>205 Westside Dr.<br>Tullahoma, TN 37388 | American Freight, LLC | Contract (Other), dated January 02, 2024 | | 3/31/2025 |
| 39 | Causeway Square, LLC | Causeway Square, LLC<br>1801 NE 123rd St., Suite 300<br>North Miami, FL 33181 | Vitamin Shoppe Industries LLC | Lease, dated August 10, 2010<br><br>12301 Biscayne Boulevard<br>Miami, FL 33181 | 0355 | 4/30/2025 |
| 40 | Chalet East, Inc. | Chalet East, Inc.<br>22936 NE 15th Place<br>Sammamish, WA 98074<br>Attn: Barbara Blumenthal | Vitamin Shoppe Industries LLC | Lease, dated April 21, 2011<br><br>17980 Redmond Way<br>Redmond, WA 98052-4906 | 1025 | 4/30/2025 |
| 41 | Chuck's Delivery Services LLC | Chuck's Delivery Services LLC<br>1545 W 44th Street<br>Erie, PA 16509 | American Freight, LLC | Preferred Delivery Services Agreement, dated February 27, 2024 | | 3/31/2025 |
| 42 | Concur Technologies, Inc. | Concur Technologies, Inc.<br>62157 COLLECTIONS CENTER DRIVE<br>Chicago, IL 60693 | American Freight, LLC | Order Form for Cloud Services, dated September 29, 2020 | | 4/30/2025 |
| 43 | Connectria, LLC | Connectria, LLC<br>10845 Olive Blvd, Suite 300<br>St. Louis, MO 63141 | American Freight, LLC | Connectria Statement of Work Managed AWS Services, dated March 31, 2023 | | 4/30/2025 |
| 44 | CVB, Inc. (Malouf) | CVB, Inc. (Malouf)<br>1525 West 2960 South<br>Nibley, UT 84321 | American Freight, LLC | Limited Reseller Agreement, dated February 03, 2021 | | 3/31/2025 |
| 45 | Cylindo LLC | Cylindo LLC<br>44 Tehama Street<br>San Francisco, CA 94105 | American Freight, LLC | SOW 01, dated April 01, 2023 | | 4/30/2025 |
| 46 | Cylindo LLC | Cylindo LLC<br>44 Tehama Street<br>San Francisco, CA 94105 | American Freight, LLC | MSA, dated April 01, 2023 | | 4/30/2025 |
| 47 | Daryl Trumpy SP | Daryl Trumpy SP<br>199 Peaks Point<br>Milton, KY 40045 | American Freight, LLC | Preferred Delivery Services Agreement, dated December 29, 2023 | | 3/31/2025 |
| 48 | DMCK Installation Inc. | DMCK Installation Inc.<br>942 N Marquette St<br>Davenport, IA 52804 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 20, 2024 | | 3/31/2025 |
| 49 | DocuSign, Inc | DocuSign, Inc<br>221 Main Street, Suite1000<br>San Francisco, CA 94105 | American Freight Outlet Stores, LLC | SOW, dated October 09, 2024 | | 4/30/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|------|--------------|---------------------|--------|--------------------|-------|----------------|
| 50 | DP Contour, LLC | DP Contour, LLC<br>511 W. French Place<br>San Antonio, TX 78212 | American Freight Franchisor, LLC | Franchise Agreement, dated September 8, 2022 | | 3/31/2025 |
| 51 | DP Contour, LLC | DP Contour, LLC<br>511 W. French Place<br>San Antonio, TX 78212 | American Freight Franchisor, LLC | Development Agreement, dated September 8, 2022 | | 3/31/2025 |
| 52 | Ellis Moving Company | Ellis Moving Company<br>3200 California Ave.<br>Pittsburgh, PA 15212 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 7,2024 | | 3/31/2025 |
| 53 | ENA SOLUTIONS INC. | ENA SOLUTIONS INC.<br>622 5 Avenue S.W., Suite 200<br>City of Calgary, Alberta | American Freight, LLC | ENA Solution Service Contract, dated February 24, 2023 | | 4/30/2025 |
| 54 | enVista Interactive Solutions, LLC | enVista Interactive Solutions, LLC<br>11555 N. Meridian Street, Suite 300<br>Carmel, IN 46032 | American Freight, LLC | Master Software as a Service Agreement, dated September 08, 2016 | | 4/30/2025 |
| 55 | Federal Warranty Service Corporation | Federal Warranty Service Corporation<br>260 Interstate North Circle, SE<br>Atlanta, GA 30339 | American Freight, LLC | Statement of Work No. 2 to Master Services Agreement - Aftermarket Service Contract Program, dated November 12, 2021 | | 3/31/2025 |
| 56 | Federal Warranty Service Corporation | Federal Warranty Service Corporation<br>260 Interstate North Circle, SE<br>Atlanta, GA 30339 | American Freight, LLC | Amendment No. 2 to the Master Services Agreement, dated October 6, 2021 | | 3/31/2025 |
| 57 | Federal Warranty Service Corporation | Federal Warranty Service Corporation<br>260 Interstate North Circle, SE<br>Atlanta, GA 30339 | American Freight, LLC | Master Services Agreement, dated July 23, 2021 | | 3/31/2025 |
| 58 | Federal Warranty Service Corporation | Federal Warranty Service Corporation<br>260 Interstate North Circle, SE<br>Atlanta, GA 30339 | American Freight, LLC | Amendment No. 2 to SOW No. 1, dated August 1, 2023 | | 3/31/2025 |
| 59 | Federal Warranty Service Corporation | Federal Warranty Service Corporation<br>260 Interstate North Circle, SE<br>Atlanta, GA 30339 | American Freight, LLC | Amendment No. 1 to the Master Services Agreement and SOW No. 1, dated September 23, 2021 | | 3/31/2025 |
| 60 | Federal Warranty Service Corporation | Federal Warranty Service Corporation<br>260 Interstate North Circle<br>Atlanta, GA 30339 | American Freight, LLC | Master Services Agreement, dated July 23, 2021 | | 3/31/2025 |
| 61 | Federal Warranty Service Corporation | Federal Warranty Service Corporation<br>260 Interstate North Circle, SE<br>Atlanta, GA 30339 | American Freight, LLC | Amendment No. 3 to SOW No. 1, dated November 27, 2023 | | 3/31/2025 |
| 62 | Federal Warranty Service Corporation | Federal Warranty Service Corporation<br>260 Interstate North Circle, SE<br>Atlanta, GA 30339 | American Freight, LLC | Statement of Work No. 1 to Master Services Agreement Service Contract Program, dated July 23, 2021 | | 3/31/2025 |
| 63 | Fire Movers of Raleigh LLC | Fire Movers of Raleigh LLC<br>401 Point View Court<br>Wilmington, NC 28411 | American Freight, LLC | Preferred Delivery Services Agreement, dated January 29,2024 | | 3/31/2025 |
| 64 | FM Integrated | FM Integrated<br>15974 Frederick Road<br>Woodbine, MD 21797 | American Freight, LLC | Master Services Agreement, dated September 28,2023 | | 3/31/2025 |
| 65 | FreedomPay, Inc. | FreedomPay, Inc.<br>100 Matsonford Road, Building 5, Suite 100<br>Radnor, PA 19087 | American Freight Outlet Stores, LLC | FreedomPay Secure Switching Product Agreement, dated October 05, 2016 | | 4/30/2025 |
| 66 | Full Faith Moving Services, LLC | Full Faith Moving Services, LLC<br>1537 Salt Spring Road<br>Youngstown, OH 44509 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 7, 2024 | | 3/31/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|---|---|---|---|---|---|---|
| 67 | FullContact, Inc. | FullContact, Inc.<br>1580 N. Logan St., Ste. 660, PMB 45057<br>Denver, CO 80203 | American Freight, LLC | FullContact Data Services Agreement, dated December 1,2023 | | 3/31/2025 |
| 68 | Gearhearts Moving & Storage Inc. | Gearhearts Moving & Storage Inc.<br>812 N 7th Ave.<br>Altoona, PA 16601 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 18, 2024 | | 3/31/2025 |
| 69 | Gexa Energy, LP | Gexa Energy, LP<br>601 Travis St., Ste 1400<br>Houston, TX 77002 | American Freight, LLC | Business Electricity Authorization, dated July 08, 2024 | | 3/31/2025 |
| 70 | Granite Telecommunications, LLC | Granite Telecommunications, LLC<br>100 Newport Avenue Extension<br>Quincy, MA 02171 | American Freight, LLC | Master Services Agreement, dated September 30, 2011 | | 4/30/2025 |
| 71 | HAMC College Center LLC | HAMC College Center LLC<br>c/o Colliers International<br>3 Park Plaza, Suite 1200<br>Irvine, CA 92614 | Vitamin Shoppe Industries LLC | Lease, dated November 15, 2007<br><br>28211 Marguerite Parkway<br>Mission Viejo, CA 92692 | 0359 | 4/30/2025 |
| 72 | Herlihy Moving and Storage Inc. | Herlihy Moving and Storage Inc.<br>747 Marietta Rd.<br>Chillicothe, OH 45601 | American Freight, LLC | Contract (Other), dated January 16, 2024 | | 3/31/2025 |
| 73 | HireRight, LLC | HireRight, LLC<br>3349 Michelson Dr, Suite 150<br>Irvine, CA 92612 | American Freight Management Company, LLC | Amendment to Contract, dated December 28, 2022 | | 3/31/2025 |
| 74 | HireRight, LLC | HireRight, LLC<br>3349 Michelson Dr, Suite 150<br>Irvine, CA 92612 | American Freight Management Company, LLC | MSA, dated November 22, 2016 | | 3/31/2025 |
| 75 | Hudson Hot Shots Moving LLC | Hudson Hot Shots Moving LLC<br>8619 Bolton Ave.<br>Hudson, FL 34667 | American Freight, LLC | Contract (Other), dated January 11, 2024 | | 3/31/2025 |
| 76 | Insight Global, LLC | Insight Global, LLC<br>4170 Ashford Dunwoody Road, Suite 250<br>Atlanta, GA 30319 | American Freight, LLC | Amendment to Contract, dated February 08, 2023 | | 4/30/2025 |
| 77 | Insight Global, LLC | Insight Global, LLC<br>4170 Ashford Dunwoody Road, Suite 250<br>Atlanta, GA 30319 | American Freight, LLC | MSA 01, dated June 14, 2019 | | 4/30/2025 |
| 78 | ISG Transportation LLC | ISG Transportation LLC<br>194 Rock Terrace Circle<br>Helena, AL 35080 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 9, 2024 | | 3/31/2025 |
| 79 | Jack Rabbit Transportation, LLC | Jack Rabbit Transportation, LLC<br>505 Frederick Ave<br>Las Vegas, NV 89106 | American Freight, LLC | Contract (Other), dated February 15, 2024 | | 3/31/2025 |
| 80 | Jason's Delivery SP | Jason's Delivery SP<br>7718 Teal Glen Dr.<br>Mooringsport, LA 71060 | American Freight, LLC | Contract (Other), dated January 10, 2024 | | 3/31/2025 |
| 81 | Jenkins Rental LLC | Jenkins Rental LLC<br>2 Steeplechase Trail<br>Longview, TX 75605 | American Freight, LLC | Assignment of Lease Agreement, dated July 10, 2021 | | 3/31/2025 |
| 82 | JJ Global Solutions Corp | JJ Global Solutions Corp<br>6868 Washington Ave. S<br>Eden Prairie, MN 55344 | American Freight, LLC | Contract (Other), dated January 16, 2024 | | 3/31/2025 |
| 83 | JN Harris Enterprises, LLC | JN Harris Enterprises, LLC<br>4624 Warrensville Center Road<br>North Randall, OH 44128 | American Freight, LLC | Contract (Other), dated February 26, 2024 | | 3/31/2025 |
| 84 | Joseph Gazzo | Joseph Gazzo<br>662 Howard Avenue<br>Biloxi, MS 39530 | Buddy's Franchising and Licensing, LLC Franchise Group Inc. | Settlement Agreement and Release,  dated May 10, 2024 | | 4/30/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|---|---|---|---|---|---|---|
| 85 | K&M Moving and Logistics LLC | K&M Moving and Logistics LLC<br>1727 Brookhurst Way<br>Grants Pass, OR 97527 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 6, 2024 | | 3/31/2025 |
| 86 | Kamerade Group, LLC | Kamerade Group, LLC<br>58 Brookfield Lenox Road<br>Tifton, GA 31794 | Buddy's Newco, LLC | Sublease Agreement<br><br>205 N Hutchinson Ave.<br>Adel, GA 31620 | 386 | 5/12/2025 |
| 87 | KAPPA Investments LLC | KAPPA Investments LLC<br>1099 Jefferson Drive West<br>Forest, VA 24551 | Buddy's Newco, LLC | Sublease Agreement<br><br>5205 Fort Avenue<br>Lynchburg, VA 24502 | 1061 | 5/12/2025 |
| 88 | Kin Properties, Inc. | Kin Properties, Inc.<br>185 NW Spanish River Blvd., Suite 100<br>Boca Raton, FL 33431 | Buddy's Newco, LLC | Assignment of Lease, dated October 27, 2014<br><br>4995 W. Colonial Drive<br>Orlando, FL 32808 | 3 | 5/12/2025 |
| 89 | Knight and Day Delivery | Knight and Day Delivery<br>104 Pinewood Sq.<br>Pittsburgh, PA 15235 | American Freight, LLC | Preferred Delivery Services Agreement, dated July 10, 2024 | | 3/31/2025 |
| 90 | Korpack, Inc. | Korpack, Inc.<br>290 Madsen Drive<br>Bloomingdale, IL 60108 | American Freight Outlet Stores, LLC | Procurement Terms and Conditions, dated July 01, 2019 | | 3/31/2025 |
| 91 | Kroll Information Assurance, LLC | Kroll Information Assurance, LLC<br>55 East 52nd Street, 31st Floor<br>New York, NY 10055 | American Freight, LLC | MSA 01, dated August 15, 2022 | | 3/31/2025 |
| 92 | Lahaina Gateway Property Owner, L.P. | Lahaina Gateway Property Owner, L.P.<br>5743 Corsa Avenue, Suite 215<br>Westlake Village, CA 91362 | Vitamin Shoppe Industries LLC | Lease, dated October 14, 2008<br><br>305 Keawe Street<br>Lahaina, HI 96761 | 0397 | 4/30/2025 |
| 93 | Lustig Realty Corp | Lustig Realty Corp<br>312 Washington Street, Suite # 2,<br>Hoboken, NJ 070730 | Vitamin Shoppe Industries LLC | Lease, dated March 7, 2023<br><br>312 Washington Street<br>Hoboken, NJ 7030 | 0894 | 4/30/2025 |
| 94 | M&M Trucking 7 | M&M Trucking 7<br>820 Hawkins Blvd, Ste O<br>El Paso, TX 79915 | American Freight, LLC | Contract (Other), dated December 26, 2023 | | 3/31/2025 |
| 95 | Mason Dixon Movers, LLC | Mason Dixon Movers, LLC<br>4790 Tom Cat Rd.<br>Gadsden, AL 35903 | American Freight, LLC | Preferred Delivery Services Agreement, dated January 1, 2024 | | 3/31/2025 |
| 96 | McGriff Insurance Services, Inc. | McGriff Insurance Services, Inc.<br>4309 Emperor Blvd, Ste 300<br>Durham, NC 27703-8046 | Franchise Group. Inc. | First Amendment to Services Agreement, dated June 1, 2021 | | 3/31/2025 |
| 97 | MDJ Logistica LLC | MDJ Logistica LLC<br>300 Crabapple Lane<br>Beaver Falls, PA 15010 | American Freight, LLC | Preferred Delivery Services Agreement, dated February 29, 2024 | | 3/31/2025 |
| 98 | MEDIA WORKS, LTD. | MEDIA WORKS, LTD.<br>1425 Clarkview Road, Suite 500<br>Baltimore, MD 21209 | American Freight, LLC | Master Services Agreement, dated June 09, 2023 | | 3/31/2025 |
| 99 | MicroStrategy Services Corporation | MicroStrategy Services Corporation<br>1850 Towers Crescent Plaza<br>Tysons Corner, VA 22182 | American Freight, LLC | SOW, dated June 10, 2024 | | 4/30/2025 |
| 100 | Mightee Movers LLC | Mightee Movers LLC<br>102 Arlington Heights Dr.<br>Lynchburg, VA 24501 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 20, 2024 | | 3/31/2025 |
| 101 | Mike Albert, LLC | Mike Albert, LLC<br>90 Lighthouse Point Road<br>Longboat Key, FL 34228 | PSP Stores, LLC | Master Purchase Agreement, dated February 21, 2019 | | 3/31/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|------|-------------|---------------------|--------|-------------------|-------|----------------|
| 102 | Mike Albert, LLC | Mike Albert, LLC<br>90 Lighthouse Point Road<br>Longboat Key, FL 34228 | PSP Stores, LLC | Internal Statement of Work Specified Services, dated July 12, 2023 | | 3/31/2025 |
| 103 | Mike Albert, LLC | Mike Albert, LLC<br>90 Lighthouse Point Road<br>Longboat Key, FL 34228 | PSP Stores, LLC | Internal Statement of Work Specified Services, dated July 29, 2024 | | 3/31/2025 |
| 104 | Milliman, Inc. | Milliman, Inc.<br>150 Clove Rd, 10th Fl<br>Little Falls, NJ 07424 | Franchise Group. Inc. | Services Agreement, dated June 9, 2021 | | 3/31/2025 |
| 105 | MMS Group, LLC | MMS Group, LLC<br>662 Howard Avenue<br>Biloxi, MS 39530 | Buddy's Franchising and Licensing, LLC<br>Franchise Group Inc. | Settlement Agreement and Release,  dated May 10, 2024 | | 4/30/2025 |
| 106 | Moovin & Groovin LLC | Moovin & Groovin LLC<br>2105 Neptune Court<br>Bartlesville, OK 74006 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 9, 2024 | | 3/31/2025 |
| 107 | NISC UBP, LLC | NISC UBP, LLC<br>3131 Technology Drive NW<br>Mandan, ND 58554 | American Freight, LLC | Professional Services Agreement, Utility Bills, dated November 9, 2020 | | 4/30/2025 |
| 108 | NISC UBP, LLC dba Capturis | NISC UBP, LLC dba Capturis<br>3131 Technology Drive NW<br>Mandan, ND 58554 | American Freight, LLC | Confidential Amendment to Professional Services Agreement, dated January 31, 2018 | | 4/30/2025 |
| 109 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>1750 N Tamiami Trail<br>Ft. Myers, FL | | 3/31/2025 |
| 110 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>6100 S. Florida Ave.<br>Lakeland, FL | | 3/31/2025 |
| 111 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>6521 N. Main St.<br>Jacksonville, FL | | 3/31/2025 |
| 112 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>136 Hancock Bridge Parkway<br>Cape Coral, FL | | 3/31/2025 |
| 113 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>1555 E. Hwy 50<br>Clermont, FL | | 3/31/2025 |
| 114 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>3608 Fowler St.<br>Ft. Myers, FL | | 3/31/2025 |
| 115 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>6625 US Hwy 98<br>Lakeland, FL | | 3/31/2025 |
| 116 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>1409 N. Florida Ave.<br>Lakeland, FL | | 3/31/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|------|-------------|---------------------|--------|-------------------|-------|----------------|
| 117 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>2200 MLK Street S.<br>St. Petersburg, FL | | 3/31/2025 |
| 118 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>3213 Apalachee Parkway<br>Tallahassee, FL | | 3/31/2025 |
| 119 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>5435 N 56th St.<br>Tampa, FL | | 3/31/2025 |
| 120 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>12152 W. Colonial Dr.<br>Winter Garden, FL | | 3/31/2025 |
| 121 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>1138 S. Harris St.<br>Sandersville, GA | | 3/31/2025 |
| 122 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>435 S. Main St.<br>Swainsboro, GA | | 3/31/2025 |
| 123 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>100 Atlanta Ave.<br>Lynchburg, VA | | 3/31/2025 |
| 124 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>2623 N. Columbia St.<br>Milledgeville, GA | | 3/31/2025 |
| 125 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>2665 David Blvd.<br>Naples, FL | | 3/31/2025 |
| 126 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>3318 Mercer University Drive<br>Macon, GA | | 3/31/2025 |
| 127 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>1707 Cherokee Ave. SW<br>Cullman, AL | | 3/31/2025 |
| 128 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>1885 Cortez Blvd.<br>Brooksville, FL | | 3/31/2025 |
| 129 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>301 Lowes Dr.<br>Danville, VA | | 3/31/2025 |
| 130 | NNN REIT, LP<br>f/k/a National Retail Properties, LP | NNN REIT, LP<br>450 S. Orange Avenue<br>Orlando, FL 32801<br>Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022<br><br>204 S. Main St.<br>Havana, FL | | 3/31/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|------|-------------|---------------------|--------|-------------------|-------|----------------|
| 131 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 14009 7th Street Dade City, FL | | 3/31/2025 |
| 132 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 1039 Tamiami Trail Port Charlotte, FL | | 3/31/2025 |
| 133 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 421 W. Belt Ave. Bushnell, FL | | 3/31/2025 |
| 134 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 1510 College Ave. E Ruskin, FL | | 3/31/2025 |
| 135 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 1405 Iris Dr. Conyers, GA | | 3/31/2025 |
| 136 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 6377 Oak St. Eastman, GA | | 3/31/2025 |
| 137 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 6621 Memorial Hwy. Tampa, FL | | 3/31/2025 |
| 138 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 1701 Roanoke Rd. Lagrange, GA | | 3/31/2025 |
| 139 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 160 Hampton St. McDonough, GA | | 3/31/2025 |
| 140 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 321 S. Columbia Ave. Rincon, GA | | 3/31/2025 |
| 141 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 1473 N. Wesleyan Blvd. Rocky Mount, NC | | 3/31/2025 |
| 142 | NNN REIT, LP f/k/a National Retail Properties, LP | NNN REIT, LP 450 S. Orange Avenue Orlando, FL 32801 Attn: David G. Byrnes, Jr. | Franchise Group. Inc. | Lease Guarantee, dated March 31, 2022 9909 State Road 52 Hudson, FL | | 3/31/2025 |
| 143 | Oak Forest Group, LTD | Oak Forest Group, LTD P.O. Box 3449 Longview, TX 75606 | American Freight, LLC | Franchise Lease Agreement, dated 03/30/2021, as amended | | 3/31/2025 |
| 144 | ODP Business Solutions, LLC | ODP Business Solutions, LLC 6600 North Military Trail Boca Raton, FL 33496 | American Freight, LLC | ODP Business Solutions Supply Agreement, dated June 30, 2022 | | 3/31/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|---|---|---|---|---|---|---|
| 145 | On Demand Technologies, Inc dba OneRail | On Demand Technologies, Inc dba OneRail<br>8427 Sothpark Circle SE, Ste 200<br>Orlando, FL 32819 | American Freight, LLC | PO or Purchase Agreement, dated June 18, 2024 | | 3/31/2025 |
| 146 | On Demand Technologies, Inc. (d/b/a OneRail) | On Demand Technologies, Inc. (d/b/a OneRail)<br>8427 Southpark Circle SW, Suite 200<br>Orlando, FL 32819 | American Freight, LLC | OneRail / American Freight, LLC Master Services Agreement, dated June 18, 2024 | | 3/31/2025 |
| 147 | OneTrust | OneTrust<br>1200 Abernathy Rd NE, Bldg 600<br>Atlanta, GA 30328 | American Freight, LLC | SOW 01, dated March 06, 2023 | | 4/30/2025 |
| 148 | Onix Networking Corp | Onix Networking Corp<br>485 Lexington Avenue<br>New York, NY 10017 | American Freight, LLC | Amendment to Onix Networking Customer Agreement, dated May 16, 2024 | | 4/30/2025 |
| 149 | Onix Networking Corp | Onix Networking Corp<br>1991 Crocker Road<br>Westlake, OH 44145 | American Freight, LLC | Onix Enterprise Customer Agreement Google Cloud Services, dated May 16, 2024 | | 4/30/2025 |
| 150 | OnPoint Warranty Solutions LLC | OnPoint Warranty Solutions LLC<br>1400 Main St., Suite 132<br>Clarksville, IN 47129 | American Freight, LLC | Master Services Agreement, dated November 17, 2023 | | 3/31/2025 |
| 151 | OSOT Transportation LLC | OSOT Transportation LLC<br>3929 Baumberger Rd<br>Stow, OH 44224 | American Freight, LLC | Contract (Other), dated July 12, 2024 | | 3/31/2025 |
| 152 | Pendleton Expediting, Inc. | Pendleton Expediting, Inc.<br>13201 E Orell Rd.<br>Louisville, KY 40272 | American Freight, LLC | Contract (Other), dated January 31, 2024 | | 3/31/2025 |
| 153 | Races Working Men, RTR Inc. | Races Working Men, RTR Inc.<br>1619 Archer City Hwy 79<br>Wichita Falls, TX 76302 | American Freight, LLC | Contract (Other), dated January 16, 2024 | | 3/31/2025 |
| 154 | Regency Centers Corporation | Regency Centers Corporation<br>c/o Regency Centers Corporation<br>One Independent Drive,  Suite 114<br>Jacksonville, FL 32202-5019 | Vitamin Shoppe Industries LLC | Lease, dated April 05, 2012<br><br>2612 SW Cedar Hills Blvd.<br>Beaverton, OR 97005 | 1029 | 4/30/2025 |
| 155 | Retail Logistics Excellence - RELEX Oy | Retail Logistics Excellence - RELEX Oy<br>Postintaival 7<br>00230 Helsinki, Finland | American Freight, LLC | RELEX Master Service Agreement, dated June 07, 2019 | | 3/31/2025 |
| 156 | RetailNext, Inc | RetailNext, Inc<br>60 S Market, Suite 310<br>San Jose, CA 95113 | American Freight, LLC | SOW, dated May 15, 2023 | | 4/30/2025 |
| 157 | RetailNext, Inc. | RetailNext, Inc.<br>60 S. Market St.<br>San Jose, CA 95113 | American Freight, LLC | Master Services Agreement, dated May 15, 2023 | | 4/30/2025 |
| 158 | Ring Central, Inc. | Ring Central, Inc.<br>20 Davis Drive<br>Belmont, CA 94002 | American Freight, LLC | Master Services Agreement, dated June 20,2018 | | 4/30/2025 |
| 159 | Riskified Inc. | Riskified Inc.<br>220 5th Ave., 2nd Floor<br>New York, NY 10001 | American Freight Outlet Stores, LLC | Software as a Service Agreement, dated March 28, 2019 | | 4/30/2025 |
| 160 | Roe Lawn Care, SP | Roe Lawn Care, SP<br>117 E 11th Street<br>Elmira Heights, NY 14093 | American Freight, LLC | Contract (Other), dated January 03, 2024 | | 3/31/2025 |
| 161 | Rosebud VS Boca One, LLC | Rosebud VS Boca One, LLC<br>c/o Investments Limited,<br>215 North Federal Highway, Suite 1<br>Boca Raton, FL 33432 | Vitamin Shoppe Industries LLC | Lease, dated August 18, 2013<br><br>880 N. Federal Hwy<br>Boca Raton, FL 33432 | 0618 | 4/30/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|---|---|---|---|---|---|---|
| 162 | Shops at Rayford Crossing LLC | Shops at Rayford Crossing LLC<br>c/o Willmann Companies<br>9601 Katy Freeway, Suite 480<br>Houston, TX 77024<br>Attn: Karl D. Willman | PSP Stores, LLC | Lease, dated June 6, 2012<br><br>2927 Riley Fuzzel, Suite 400<br>Spring, TX 77386 | 4646 | 4/30/2025 |
| 163 | SignUp Software, Inc. | SignUp Software, Inc.<br>3500 South DuPont Highway, Suite DN 101<br>Dover, DE 19901 | PSP Group, LLC | Subscription Agreement ExFlow, dated April 1, 2024 | | 3/31/2025 |
| 164 | SignUp Software, Inc. | SignUp Software, Inc.<br>3500 South DuPont Highway, Suite DN 101<br>Dover, DE 19901 | PSP Group, LLC | Subscription Agreement ExFlow Data Capture, dated April 1, 2024 | | 3/31/2025 |
| 165 | SITS, LLC | SITS, LLC<br>35 Olympic Dr<br>South Barrington, IL 60010 | American Freight, LLC | Agreement aand Statement of Work for Security Assessment Services, dated March 6, 2023 | | 4/30/2025 |
| 166 | SK Global Software, LLC | SK Global Software, LLC<br>940 Gemini Street<br>Houston, TX 77058 | PSP Group, LLC | Software License and Support Agreement, dated April 5, 2024 | | 3/31/2025 |
| 167 | Small Movers LLC | Small Movers LLC<br>6178 Howdershell Road<br>Hazelwood, MO 63042 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 8, 2024 | | 3/31/2025 |
| 168 | Solstice Sleep Products, Inc. | Solstice Sleep Products, Inc.<br>3720 W Broad Street<br>Columbus, OH 43228 | American Freight, LLC | Amendment to the Supply Agreement, dated July 1, 2022 | | 4/30/2025 |
| 169 | Spark Communications Group, LLC | Spark Communications Group, LLC<br>P.O. Box 49745<br>Athens, GA 30604 | Franchise Group. Inc. | See.Spark.Go Services Agreement, dated February 1, 2021 | | 3/31/2025 |
| 170 | Spark Data Solutions Inc | Spark Data Solutions Inc<br>26077 Nelson Way, Suite 1102<br>Katy, TX 77494 | American Freight, LLC | MSA, dated June 20, 2023 | | 4/30/2025 |
| 171 | Spark Data Solutions Inc | Spark Data Solutions Inc<br>26077 Nelson Way, Suite 1102<br>Katy, TX 77494 | American Freight, LLC | MSA, dated June 20, 2023 | | 4/30/2025 |
| 172 | SPS Commerce | SPS Commerce<br>333 South Seventh Street, Suite 1000<br>Minneapolis, MN 55402 | American Freight, LLC | SOW, dated January 16, 2024 | | 4/30/2025 |
| 173 | SPS Commerce | SPS Commerce<br>333 South Seventh Street, Suite 1000<br>Minneapolis, MN 55402 | American Freight, LLC | SOW, dated January 16, 2024 | | 4/30/2025 |
| 174 | Starting A New LLC | Starting A New LLC<br>3157 O'Neal Lane<br>Baton Rouge, LA 70816 | American Freight, LLC | Preferred Delivery Services Agreement dated January 19, 2024 | | 3/31/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|------|-------------|---------------------|--------|-------------------|-------|----------------|
| 175 | Store Master  Funding IV, LLC | Store Master  Funding IV, LLC<br>8501 E Princess Drive, Suite 190<br>Scottsdale, AZ 85255 | Buddy's Newco, LLC | Master Lease Agreement, dated September 24, 2013<br><br>6608 E. Adamo Drive<br>Tampa, FL 33619<br><br>10015 N Nebraska Ave.<br>Tampa, FL 33612<br><br>5505 N Armenia Ave.<br>Tampa, FL 33603<br><br>2514 9th St. West<br>Bradenton, FL 34205<br><br>5201 Norwood Ave,<br>Jacksonville, FL 32208<br><br>8807 Lem Turner Rd<br>Jacksonville, FL 32208<br><br>3 1st St NW<br>Moultrie, GA 31768<br><br>5205 Fort Avenue<br>Lynchburg, VA 24502<br><br>205 N Hutchinson Ave.<br>Adel, GA 31620<br><br>408 East Baker Street<br>Plant City, FL 33563<br><br>12709 U.S. HWY 301<br>Dade City, FL 33525<br><br>1569 West HWY 90<br>Lake City, FL 32055<br><br>1097 W Main Street<br>Immokalee, FL 34142 | 4<br><br>5<br><br>8<br><br>13<br><br>17<br><br>55<br><br>65<br><br>1061<br><br>386<br><br>16<br><br>18<br><br>19<br><br>35 | 5/12/2025 |
| 176 | Store Master Funding IV, LLC | Store Master Funding IV, LLC<br>8501 E. Princess Drive, Suite 190<br>Scottsdale, AZ 85255<br><br>Kutak Rock LLP<br>1801 California Street, Suite 3000<br>Denver, CO 80202<br>Attn: Whitney A. Kopicky, Esq. | Buddy's Newco, LLC | Guaranty of Second Amended and Restated Master Lease Agreement by and between Store Master Funding IV, LLC and Buddy's Northwest, LLC, dated November 3, 2015 | | 5/12/2025 |
| 177 | Sugarland Plaza, Inc. | Sugarland Plaza, Inc.<br>802 NW 1st Street<br>South Bay, FL 33493 | Buddy's Newco, LLC | Lease, dated November 29, 2007<br><br>884 W. Sugarland Hwy<br>Clewiston, FL 33440 | 30 | 5/12/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|---|---|---|---|---|---|---|
| 178 | Sun Life Assurance Company of Canada | Sun Life Assurance Company of Canada MetroNorth Retail Center, c/o JLL 3344 Peachtree Road, Suite 1200 Atlanta, GA 30326 | Vitamin Shoppe Industries LLC | Lease, dated September 28, 2013<br><br>103 Commerce Way Woburn, MA 1801 | 0688 | 4/30/2025 |
| 179 | T Voorhees GPL NJ, LLC, T Voorhees BER NJ, LLC, and T Voorhees AMC NJ, LLC | T Voorhees GPL NJ, LLC, T Voorhees BER NJ, LLC, and T Voorhees AMC NJ, LLC 16600 Dallas Parkway, Suite 300 Dallas, TX 75248 | Vitamin Shoppe Industries LLC | Lease, dated August 21, 2015<br><br>148 State Route 73 Voorhees, NJ 8043 | 0724 | 4/30/2025 |
| 180 | TALX Corporation | TALX Corporation 11432 Lackland Road St. Louis, MO 63146 | American Freight Management Company, LLC | MSA, dated April 01, 2022 | | 4/30/2025 |
| 181 | The Home Moving Solutions LLC | The Home Moving Solutions LLC 1209 N Slappey Blvd., Suite B Albany, GA 31701 | American Freight, LLC | Preferred Delivery Services Agreement dated January 4, 2024 | | 3/31/2025 |
| 182 | The Transport Boss LLC | The Transport Boss LLC 9855 E Coronado Dr Baton Rouge, LA 70815 | American Freight, LLC | Contract (Other), dated February 26, 2024 | | 3/31/2025 |
| 183 | The Ultimate Software Group, Inc. | The Ultimate Software Group, Inc. 2000 Ultimate Way Weston, FL 33326 | American Freight Outlet Stores, LLC | Master Terms and Conditions for Procurement of Software Rights and Services, dated February 11, 2016 | | 3/31/2025 |
| 184 | Thomson Reuters Inc. | Thomson Reuters Inc. P.O. Box 115008 Carrolton, TX 75011-5008 | PSP Group, LLC | Multi Year Order Form, dated May 18,2023 | | 3/31/2025 |
| 185 | Tmakit Moving Company, LLC | Tmakit Moving Company, LLC 5860  Russell Topton Rd. Toomsuba, MS 39364 | American Freight, LLC | Contract (Other), dated January 02, 2024 | | 3/31/2025 |
| 186 | Tri-County Movers SP | Tri-County Movers SP PO Box 7716452 Ocala, FL 34477 | American Freight, LLC | Contract (Other), dated February 29, 2024 | | 3/31/2025 |
| 187 | UKG Inc | UKG Inc 2000 Ultimate Way Weston, FL 33326 Attn: General Counsel | American Freight, LLC | Amendment to the Agreement, dated December 31, 2015 | | 3/31/2025 |
| 188 | United Parcel Service, Inc. | United Parcel Service, Inc. 700 W 16th Street Indianapolis, IN 46202 | American Freight, LLC | Amendment to Contract, dated April 25, 2023 | | 3/31/2025 |
| 189 | United Service Protection, Inc. | United Service Protection, Inc. 11222 Quail Roost Drive Miami, FL 33157 | American Freight, LLC | Amendment No. 3 to SOW No. 1, dated November 27, 2023 | | 3/31/2025 |
| 190 | United Service Protection, Inc. | United Service Protection, Inc. 11222 Quail Roost Drive Miami, FL 33157 | American Freight, LLC | Statement of Work No. 2 to Master Services Agreement - Aftermarket Service Contract Program | | 3/31/2025 |
| 191 | United Service Protection, Inc. | United Service Protection, Inc. 11222 Quail Roost Drive Miami, FL 33157 | American Freight, LLC | Amendment No. 2 to the Master Services Agreement, dated October 6, 2021 | | 3/31/2025 |
| 192 | United Service Protection, Inc. | United Service Protection, Inc. 11222 Quail Roost Drive Miami, FL 33157 | American Freight, LLC | Statement of Work No. 1 to Master Services Agreement Service Contract Program, dated July 23, 2021 | | 3/31/2025 |
| 193 | United Service Protection, Inc. | United Service Protection, Inc. 11222 Quail Roost Drive Miami, FL 33157 | American Freight, LLC | Master Services Agreement, dated July 23, 2021 | | 3/31/2025 |
| 194 | United Service Protection, Inc. | United Service Protection, Inc. 11222 Quail Roost Drive Miami, FL 33157 | American Freight, LLC | Amendment No. 2 to SOW No. 1, dated August 1, 2023 | | 3/31/2025 |

| ID # | Counterparty | Counterparty Address | Debtor | Rejected Agreement | Store | Rejection Date |
|------|-------------|---------------------|--------|-------------------|-------|----------------|
| 195 | United Service Protection, Inc. | United Service Protection, Inc.<br>11222 Quail Roost Drive<br>Miami, FL 33157 | American Freight, LLC | Amendment No. 1 to the Master Services Agreement and SOW No. 1, dated September 23, 2021 | | 3/31/2025 |
| 196 | United Service Protection, Inc. | United Service Protection, Inc.<br>11222 Quail Roost Drive<br>Miami, FL 33157 | American Freight, LLC | Master Services Agreement, dated July 23, 2021 | | 3/31/2025 |
| 197 | Vantage One Tax Solutions, Inc. | Vantage One Tax Solutions, Inc.<br>6310 LBJ Freeway<br>Dallas, TX 75240 | American Freight Outlet Stores, LLC | Consulting Agreement for Property Tax Services, dated April 10, 2023 | | 3/31/2025 |
| 198 | Vantage One Tax Solutions, Inc. | Vantage One Tax Solutions, Inc.<br>6310 LBJ Freeway, Ste. 208<br>Dallas, TX 75240 | American Freight, LLC | Consulting Agreement for Property Tax Services, dated April 10, 2023 | | 3/31/2025 |
| 199 | Varis, LLC | Varis, LLC<br>6600 N. Military Tr.<br>Boca Raton, FL 33496 | American Freight, LLC | Master Services Agreement, dated May 20, 2022 | | 4/30/2025 |
| 200 | Ventura Petit LLC and La Cienga Shopping Center Development LLC | Ventura Petit LLC and La Cienga Shopping Center Development LLC<br>2121 Avenue of the Stars, Ste. 1100<br>Los Angeles, CA 90067 | Vitamin Shoppe Industries LLC | Lease, dated January 02, 2012<br><br>16624 Ventura Blvd.<br>Encino, CA 91436 | 0578 | 4/30/2025 |
| 201 | VF9 Matt2, LLC | VF9 Matt2, LLC<br>2330 Ponce de Leon Blvd<br>Coral Gables, FL 33134 | Vitamin Shoppe Industries LLC | Lease, dated January 20, 2010<br><br>4803 Lincoln Highway<br>Matteson, IL 60443 | 472 | 4/30/2025 |
| 202 | White Glove Delivery & Moving LLC | White Glove Delivery & Moving LLC<br>57477 Goodman Dr.<br>Colcord, OK 74338 | American Freight, LLC | Preferred Delivery Services Agreement, dated January 2, 2024 | | 3/31/2025 |
| 203 | Worry Free Moving Inc. | Worry Free Moving Inc.<br>1421 Turnberry Dr<br>Youngstown, OH 44512 | American Freight, LLC | Preferred Delivery Services Agreement, dated March 21, 2024 | | 3/31/2025 |
| 204 | Wrike Inc. | Wrike Inc.<br>9171 Towne Center Drive, Suite 200<br>San Diego, CA 92122, | American Freight, LLC | PO or Purchase Agreement, dated February 07, 2024 | | 3/31/2025 |
| 205 | WSG Arundel One LLC | WSG Arundel One LLC<br>75 Hook Road<br>Bayonne, NJ 07002 | Vitamin Shoppe Industries LLC | Lease, dated November 11, 2003<br><br>7069 Arundel Mills Boulevard<br>Hanover, MD 21076 | 0143 | 4/30/2025 |
| 206 | Xpress Delivery 2U | Xpress Delivery 2U<br>2406 Pine Street<br>Texarkana, TX 75503 | American Freight, LLC | Preferred Delivery Services Agreement, dated April 1, 2024 | | 3/31/2025 |
| 207 | YTC Movers LLC | YTC Movers LLC<br>760 Star Ridge Street<br>Massillon, OH 44646 | American Freight, LLC | Preferred Delivery Services Agreement, dated April 15, 2024 | | 3/31/2025 |
| 208 | ZipRecruiter Inc. | ZipRecruiter Inc.<br>604 Arizona Avenue<br>Santa Monica, CA 90401 | Franchise Group. Inc. | Services Agreement, dated September 20, 2023 | | 3/31/2025 |

## **Exhibit F**

### **New ABL Facility Documents**

This **Exhibit F** includes the following New ABL Facility Documents of the Reorganized Debtors:

Exhibit F(i):  ABL Term Sheet

Certain documents, or portions thereof, contained in this **Exhibit F** and the Plan Supplement remain subject to continuing review and discussions among the Debtors and interested parties with respect thereto.  The rights of the Debtors are expressly reserved, subject to the terms and conditions set forth in the Plan (including all applicable consultation, consent, and/or approval rights contained or contemplated therein), to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court.

**<u>Exhibit F(i)</u>**

**ABL Term Sheet**

*Draft*

### Franchise Group, Inc.

### <u>Exit ABL Facility –Term Sheet</u>

This term sheet (this "<u>Term Sheet</u>") sets forth certain material terms of the proposed Exit ABL Facility (as defined in the Plan referenced below).

Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No. 1015] (as may be amended or supplemented from time to time, the "<u>Plan</u>") or the ABL Loan Documents, as applicable.

This Term Sheet does not address all terms that would be required in connection with the Exit ABL Facility or that will be set forth in the New ABL Facility Documents, which are subject to negotiation and further subject to execution of definitive documents, pleadings and proposed forms of orders, all of which shall be in form and substance acceptable the Required Consenting First Lien Lenders and the requisite ABL Lenders, each in their sole discretion.[1]

| Borrowers | New TopCo (the "<u>Lead Borrower</u>") and any other Reorganized Debtor (as defined in the Plan) designated as a borrower under the Exit ABL Facility (together with the Lead Borrower, the "<u>Borrowers</u>"). |
|---|---|
| Guarantors | Each Reorganized Debtor and any newly formed or acquired Subsidiaries of any Reorganized Debtor from and after the Closing Date (as defined below); <u>provided</u>, that for the avoidance of doubt, each Reorganized Debtor designated as a guarantor under the Take-Back Debt Facility shall also be a guarantor under the Exit ABL Facility. |
| Security | • First lien in substantially all present and after acquired cash, accounts receivable, inventory, and proceeds thereof.<br>• Second lien on all substantially all other assets and capital stock of the Borrowers (behind the Take-Back Debt Facility). |
| Administrative Agent ("<u>Agent</u>") | J.P.Morgan Chase Bank, N.A. |
| Facility | $275 million asset-based credit facility, however if all or substantially all of the assets or Equity Interests of the Vitamin Shoppe Debtors are sold, facility will be downsized to $200 million or less. |
| Purpose | Working capital and general corporate purposes including acquisitions. |
| Closing Date | The New ABL Facility Documents will become effective on the Effective Date upon satisfaction of all conditions precedent (including the Conditions to Exit below) to the effectiveness of the New ABL Credit Agreement set forth in the New ABL Facility Documents (the "<u>Closing Date</u>"). |

| | |
|---|---|
| **Maturity** | Four (4) years after the Closing Date. |
| **L/C Sublimit** | To be determined based on Borrower need. |
| **Drawn Pricing** | Secured Overnight Financing Rate ("SOFR") *plus* 3.25% |
| **Undrawn Pricing** | 0.375% |
| **Borrowing Base** | The sum of:<br><br>• 90% of eligible credit card receivables, plus<br>• 85.0% of eligible trade and franchise accounts receivable (including acceptable franchise accounts receivable for the reorganized Vitamin Shoppe Debtors and PSP Debtors at Agent's discretion, capped at 10% of the Borrowing Base), plus<br>• 90% of appraised net orderly liquidation value of eligible inventory (subject to a 10% combined cap on in-transit inventory and $30 million cap on inventory at Dealer owned/leased stores), less<br>• Reserves. |
| **Financial Covenants** | • Minimum Fixed Charge Coverage Ratio of 1.0x, if Excess Availability is less than the greater of (i) 12.5% of the Borrowing Cap and (ii) $30 million.<br>• Up to 10% of EBITDA from minority held Investments in joint ventures to be included in EBITDA for Fixed Charge Coverage Ratio purposes on a pro rata basis with the interest of the Loan Parties therein. |
| **Cash Dominion** | Springing if certain Events of Default occur or Excess Availability is less than the greater of (i) 12.5% of the Borrowing Cap and (ii) $30 million. |
| **Negative Covenants** | • Unlimited restricted payments, restricted debt payments, and Investments allowed, so long as no default or Event of Default has occurred and the following is satisfied:<br><br>    ○ Excess Availability, both (a) pro forma and (b) pro forma for trailing 90 days, is greater than the greater of (i) 20% of the Borrowing Cap and (ii) $50 million<br><br>    ○ Pro forma Fixed Charge Coverage Ratio greater than 1.0x.<br><br>• Application of proceeds of ABL Priority Collateral in the case of any sale, investment, transfer or other disposition (including securitization of, or disposition of equity or assets of, a business line).<br>• Any disposition or securitization of reorganized PSP Debtors requires ABL lender consent.<br>• No assets of acquired business lines included in Borrowing Base without ABL lender consent.<br><br>    ○ Acquisition of assets relating to franchisees or related businesses / independent operators will be included in the Borrowing Base and are not subject to ABL consent.<br><br>• Updated Borrowing Base Certificates delivered in connection with any |

| | |
|---|---|
| | restricted payments, Investment or sale of assets in the Borrowing Base. |
| **Reporting** | • Standard financial reporting including annual audited financials, monthly and quarterly unaudited financials with quarterly covenant compliance certificates, monthly borrowing base certificates and annual projection model.<br>• Monthly borrowing bases, springing to weekly if Excess Availability is less than the greater of (i) 15.0% of the Borrowing Cap and (ii) $36 million. |
| **Field Exams / Inventory Appraisals** | 1 field exam per annum and 1 inventory appraisal per annum with trip to additional field exams and appraisals if Excess Availability is less than the greater of (i) 20.0% of the Borrowing Cap and (ii) $45 million |
| **Conditions to Exit** | • Occurrence of the effective date of a plan reasonably acceptable to the ABL lenders.<br><br>• Minimum Excess Availability of $50 million at emergence and cash of $35 million.<br><br>• Completion of field exam and inventory appraisal within 90 days after the Closing Date (extendable by Agent in its permitted discretion).<br><br>• ABL Facility and Take-Back Debt Facility syndicates will require a 4-year integrated working model, inclusive of a borrowing base forecast and projected ABL usage.[2] |
| **Other** | Elimination of $15 million in borrowing base reserves in conjunction with the completion of a field exam and inventory appraisal satisfactory to the ABL Lenders. |

---

[2]    Model to include FY'25E by month, and quarterly thereafter.

## Exhibit G

**New Warrants Documentation**

*Draft*

# WARRANTS TERM SHEET

Capitalized terms used but not defined in this Warrants Term Sheet (this "Term Sheet") have the meanings assigned to such terms in the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No. 1015], dated as of February 20, 2025 (the "Plan").[1]

*THIS TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES IN CONTRAVENTION OF APPLICABLE LAW IN ANY JURISDICTION, IT BEING UNDERSTOOD THAT ANY SUCH OFFER, IF ANY, WILL BE MADE ONLY IN COMPLIANCE WITH APPLICABLE PROVISIONS OF SECURITIES, BANKRUPTCY AND/OR OTHER APPLICABLE LAWS. THIS TERM SHEET IS BEING PROVIDED AS A POSSIBLE COMPROMISE AND IS THUS SUBJECT TO FEDERAL RULE OF EVIDENCE 408. THE TERMS SET FORTH HEREIN ARE SUBJECT IN ALL RESPECTS TO THE NEGOTIATION AND (AS MAY BE APPLICABLE) EXECUTION AND DELIVERY BY ALL RELEVANT PARTIES OF LEGALLY BINDING NEW WARRANTS DOCUMENTATION. THIS TERM SHEET DOES NOT INCLUDE ALL OF THE TERMS TO BE INCLUDED IN THE NEW WARRANTS DOCUMENTATION AND SHALL NOT BE BINDING ON ANY PARTY.*

| | |
|---|---|
| **Issuer:** | New TopCo (the "Issuer"). |
| **Holder:** | OpCo Debtor Litigation Trust/OpCo Litigation Trustee (the "Holder"). |
| **Security:** | New warrants (the "Warrants") will be issued on the Effective Date and will be exercisable for a number of units of Reorganized Common Equity ("Reorganized Common Equity Units") equal to 5.0% of the number of Reorganized Common Equity Units that are issued and outstanding on the Effective Date (immediately after giving effect to the consummation of the Restructuring Transactions to occur on or as of the Effective Date and after giving effect to the full exercise of the Warrants), subject to dilution by Reorganized Common Equity to be issued under the Management Incentive Plan. The Reorganized Common Equity Units for which the Warrants are exercisable are referred to in this Term Sheet as the "Warrant Units". |
| **Exercise Price:** | The initial aggregate exercise price (the "Initial Exercise Price") for all of the Warrant Units will be calculated using an equity value of the Reorganized Debtors implied by a total enterprise value equal to the aggregate amount of all Allowed DIP Claims, Allowed Prepetition First Lien Loan Claims, and Allowed Prepetition ABL Loan Claims; provided, however, that the Initial Exercise Price shall increase, on a dollar-for-dollar basis (the |

---

[1] The Warrants may be structured as a different instrument based on the results of tax and structuring discussions among the Debtors and the Ad Hoc Group. Any such different instrument would provide for substantially the same economics as the Warrants as set forth in this Term Sheet, and shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Lenders in their sole discretion.

"Exercise Price Multiplier"), in an amount equal to all of the fees and expenses incurred by any Professional Persons and/or the Ad Hoc Group Advisors related to any litigation initiated by the Freedom Lender Group since the Petition Date, as determined, in good faith, by the Debtors and the Required Consenting First Lien Lenders, including, without limitation, all fees and expenses of the Freedom HoldCo Debtors; provided, further, that for every week that the Confirmation of the Plan is delayed because of litigation brought or initiated by the Freedom Lender Group, the Initial Exercise Price shall be further increased by the lesser of (a) actual costs incurred by the Debtors as a result of the delay (*e.g.*, any resulting value degradation, additional rent payments, overhead, etc.) or (b) an increase of the Exercise Price Multiplier by a simple multiple of 0.25x for every week that the Confirmation of the Plan is delayed beyond the Debtors' current timeline[2], in each case, as determined in good faith by the Debtors and the Required Consenting First Lien Lenders.

The Initial Exercise Price shall be adjusted from time to time after the Effective Date as provided in "Adjustments" below (as so adjusted, the "Exercise Price").

**Exercisability:** The Warrants may be exercised for Warrant Units, at any time and from time to time, in whole or in part, at the option of the Holder. Any exercise of the Warrants shall require payment in full of the aggregate Exercise Price applicable to the Warrant Units issuable upon such exercise, either (i) by wire transfer of immediately available funds to the Issuer in an amount equal to such aggregate Exercise Price or (ii) by instructing the Issuer to withhold from such Warrant Units a number of Warrant Units with an aggregate Fair Market Value (as defined below) equal to such aggregate Exercise Price (any such exercise pursuant to this clause (ii), a "Cashless Exercise"); provided, however, that Cashless Exercise shall only be available in connection with a "Liquidity Event" (to be customarily defined in the New Warrants Documentation). For the avoidance of doubt, upon the consummation of any Liquidity Event, if the then-current Exercise Price exceeds the value of the consideration offered for purchase on an as-converted per-Warrant Unit basis (*i.e.*, the Warrants are calculated as being "out of the money" at the time the transaction is consummated), the Warrants will be cancelled upon the consummation of such Liquidity Event without any consideration provided therefor.

"Fair Market Value" of a Warrant Unit shall be equal to the value of a Reorganized Common Equity Unit implied by the sale price in a Liquidity Event (and if such Liquidity Event is a cash/equity

---

[2]     For calculation purposes, such timeline is in included in the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Affiliated Debtors [Docket No. 655].*

election, as if no such election was made), as reasonably determined by the New Board.

It shall be an express condition to the exercise of the Warrants that the Holder executes and delivers to the Issuer a counterpart of the applicable New Organizational Documents of the Issuer and such other documentation that is required by such New Organizational Documents and applicable Law or that is reasonably requested by the Issuer.

**Issuance:**    The Warrants, and the Warrant Units issuable thereunder, will be exempt from registration under the Securities Act pursuant to section 1145 of the Bankruptcy Code.

**Transfers:**    Neither the Warrants nor any of the Warrant Units issuable thereunder shall be transferable.

**ERISA:**    By accepting a Warrant, the Holder will be deemed to represent that either (i) it does not hold "plan assets" subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code") or (ii) its acquisition, holding and exercise of Warrants will not result in a non-exempt prohibited transaction under ERISA or Section 4975 of the Code.

**Expiration Date:**    The Warrants shall automatically expire and terminate on the earlier to occur of (i) the date that is the five (5) year anniversary of the Effective Date and (ii) the date of the consummation of a Liquidity Event (such earlier date, the "Expiration Date").

**No Equity Owner Rights:**    The Holder shall not have the right to vote on, or to consent to, any matter as an owner or holder of Reorganized Common Equity (including in respect of the election of directors, managers or similar persons), and, until the Warrants are validly exercised, shall not have any other rights or privileges as an owner or holder of Reorganized Common Equity (including rights to receive dividends or other distributions, appraisal or dissenter's rights, rights to receive notice of meetings, votes or consents, or rights to receive or inspect books, records, materials or other information) and, until the Warrants are validly exercised, shall not be deemed an owner or holder of Reorganized Common Equity for any reason whatsoever. The Holder shall not be entitled to any reporting or other information rights, except as may be required by applicable Law.

**Adjustments:**    The Warrants shall be subject to adjustments regarding (x) the Exercise Price and the number of Reorganized Common Equity Units to be issued upon the exercise of the Warrants only for corporate structural events (*e.g.*, recapitalizations, reclassifications, splits, reverse splits, reorganizations, consolidations, mergers, dividends or distributions in the form of

3

Reorganized Common Equity, and similar structural transactions) that are not Liquidity Events. For the avoidance of doubt, the Warrants will not provide for anti-dilution adjustments for dilution by the issuance of Reorganized Common Equity under the Management Incentive Plan.

The Warrants shall not be entitled to anti-dilution provisions (including any economic anti-dilution provisions), other than the adjustments expressly provide for above. In addition, the Warrants shall not be entitled to any adjustments or other protections (including any Black-Scholes value protections) in connection with a Liquidity Event.

**Mandatory Redemption:**     The Warrants will not be subject to mandatory redemption by the Issuer or any other Person. For the avoidance of doubt, any Warrants that have not been exercised on or prior to the Expiration Date shall automatically expire and terminate, with no further action by any Person, including the Holder or the Issuer.

**Amendments**     The New Warrants Documentation may be amended by the affirmative vote of, or a written consent signed by, the Company and the Holder; provided that certain customary amendments shall not require the consent of the Holder.

**Governing Law:**     Delaware

## Exhibit H

**OpCo Debtor Litigation Trust Agreement**

*Draft*

# OPCO DEBTOR LITIGATION TRUST AGREEMENT
## AND DECLARATION OF OPCO DEBTOR LITIGATION TRUST

This OpCo Debtor Litigation Trust Agreement and Declaration of OpCo Debtor Litigation Trust (this "<u>Agreement</u>"), dated as of [●], 2025, is made by and among Franchise Group, Inc. and certain of its affiliated debtors and debtors in possession (together with its debtor affiliates listed on **<u>Schedule 1</u>** attached hereto, the "<u>OpCo Debtors</u>")[1] in the Chapter 11 Cases,[2] and [_____] (the "<u>OpCo Litigation Trustee</u>," and together with the OpCo Debtors, the "<u>Parties</u>," and each, a "<u>Party</u>").

## RECITALS

1. On November 3, 2024 (the "<u>Petition Date</u>"), each of the OpCo Debtors (together, with its affiliated debtors and debtor in possession, the "<u>Debtors</u>") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2]   As set forth in Section 1.2, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan or the Confirmation Order, as applicable, unless otherwise noted.

(the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered under the caption *In re Franchise Group, Inc., et al.*, Case No. 24-12480 (LSS) (Bankr. D. Del.) (the "Chapter 11 Cases").

2.      On November 19, 2024, the Office of the United States Trustee, Region 3 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") to represent the interests of all general unsecured creditors in the Chapter 11 Cases and filed the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 188].

3.      On February 20, 2025, the Debtors filed the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1015] (as amended, supplemented, or otherwise modified from time to time, the "Plan").

4.      On [_____], 2025, the Bankruptcy Court entered an order [Docket No. [●]] (the "Confirmation Order") confirming the Plan, which became effective on [_____], 2025 (the "Effective Date").

5.      Section 7.10 of the Plan provides for the creation of the OpCo Debtor Litigation Trust on the Effective Date in connection and consistent with the Committee Settlement.

6.      The OpCo Debtor Litigation Trust is established for the sole purpose of receiving, holding, administering, liquidating, and distributing the OpCo Debtor Litigation Trust Assets, including the (i) OpCo Debtor Litigation Trust Escrow Account, which includes, for the avoidance of doubt, the OpCo Debtor Litigation Trust Escrow Amount, funded in accordance with the Plan, (ii) OpCo Litigation Claims, and (iii) solely to the extent that the Holders of Claims in Class 5 voted to accept the Plan, the New Warrants, *plus* any additional amounts funded into the OpCo Debtor Litigation Trust Escrow Account following the Effective Date, for the benefit of the

Holders of Allowed OpCo General Unsecured Claims (including, for the avoidance of doubt, any First Lien Deficiency Claims or Second Lien Deficiency Claims).

7.      The OpCo Litigation Trustee shall, subject to any applicable consultation rights set forth in this Agreement:  (i) be the exclusive administrator of the assets of the OpCo Debtor Litigation Trust, including the OpCo Debtor Litigation Trust Assets; and (ii) except as otherwise provided in the Plan or Confirmation Order, have the sole power and authority to (a) reconcile OpCo General Unsecured Claims, including asserting any objections thereto in each case, other than as to the quantum of the First Lien Deficiency Claims, which shall be in an amount consistent with the description in Section 5.4(b) of the Plan), (b) investigate, pursue, prosecute, compromise and/or settle the OpCo Litigation Claims, and (c) distribute the OpCo Debtor Litigation Trust Assets in accordance with the terms of the Plan (including, for the avoidance of doubt, the Committee Settlement incorporated therein) and this Agreement, with no objective or authority to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary and consistent with, the liquidating purpose of the OpCo Debtor Litigation Trust.  Subject to the Conversion of the OpCo Debtor Litigation Trust as described in Section 7.7 hereof, the OpCo Debtor Litigation Trust is intended to be classified for United States federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Revenue Procedure 94-45, 1994-2 C.B. 674, and, thus, as a "grantor trust" within the meaning of Internal Revenue Code sections 671 through 679 for United States federal income tax purposes, other than any OpCo Debtor Litigation Trust Disputed Claims Reserve (as defined herein) treated as a disputed ownership fund ("DOF") or other separate entity.

8.      Pursuant to the Plan, for all United States federal income tax purposes, all parties shall treat the transfer of the OpCo Debtor Litigation Trust Assets to the OpCo Debtor Litigation Trust for the benefit of the Holders of Allowed OpCo General Unsecured Claims (the "OpCo Debtor Litigation Trust Beneficiaries"), whether such Holder's OpCo General Unsecured Claims are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the OpCo Debtor Litigation Trust (but only at such time as actually transferred) as (i) a transfer of the OpCo Debtor Litigation Trust Assets (subject to any obligations relating to such OpCo Debtor Litigation Trust Assets, including, but not limited to, the OpCo Debtor Litigation Trust Expenses) to the OpCo Debtor Litigation Trust Beneficiaries and, to the extent the OpCo Debtor Litigation Trust Assets are allocable to Disputed OpCo General Unsecured Claims (any such OpCo Debtor Litigation Trust Assets allocable to, or retained on account of, Disputed OpCo General Unsecured Claims, including any earnings thereon, the "OpCo Debtor Litigation Trust Disputed Claims Reserve") that are the responsibility of the OpCo Debtor Litigation Trust, acting by and through its agents and representatives, to resolve, to the OpCo Debtor Litigation Trust Disputed Claims Reserve, followed by (ii) the transfer by the OpCo Debtor Litigation Trust Beneficiaries of the OpCo Debtor Litigation Trust Assets (other than the OpCo Debtor Litigation Trust Assets allocable to the OpCo Debtor Litigation Trust Disputed Claims Reserve) to the OpCo Debtor Litigation Trust in exchange for their non-transferable (subject to certain limited exceptions) OpCo Debtor Litigation Trust Units that will entitle the respective holder thereof to its *pro rata* share of the proceeds of the OpCo Debtor Litigation Trust Net Assets (as defined herein).  Accordingly, the OpCo Debtor Litigation Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective shares of the OpCo Debtor Litigation Trust Assets (other than such OpCo Debtor Litigation Trust Assets

as are allocable to the OpCo Debtor Litigation Trust Disputed Claims Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for applicable United States state and local income tax purposes.

9.      The OpCo Debtor Litigation Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

### DECLARATION OF OPCO DEBTOR LITIGATION TRUST

The OpCo Debtors and the OpCo Litigation Trustee enter into this Agreement to effectuate the distribution of the OpCo Debtor Litigation Trust Assets to the OpCo Debtor Litigation Trust Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Section 7.10 of the Plan and Section 2.3.2 of this Agreement, on the Effective Date, all of the OpCo Debtor Litigation Trust Assets shall automatically and irrevocably be transferred to, and vest in or deem to be vested in, the OpCo Debtor Litigation Trust free and clear of all Claims, Liens, Interests, encumbrances, and contractually imposed restrictions, except as otherwise provided in the Plan;

TO HAVE AND TO HOLD unto the OpCo Litigation Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the OpCo Debtor Litigation Trust Assets, are to be held by the OpCo Debtor Litigation Trust and applied on behalf of the OpCo Debtor Litigation Trust by the OpCo Litigation Trustee (such OpCo Litigation Trustee to be a "United States person" within the meaning of Internal Revenue Code section 7701(a)(30) and established within the United States) on the terms and conditions set forth herein and the Plan (including, for the avoidance of doubt, the Committee Settlement incorporated therein), solely for the benefit of the OpCo Debtor Litigation Trust Beneficiaries, as more fully set forth in the Plan and this Agreement, and for no other party.

## ARTICLE I

### RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     <u>Recitals</u>.  The Recitals are incorporated into and made terms of this Agreement.

1.2     <u>Definitions</u>.  All capitalized terms used in this Agreement but not defined herein shall have the meanings set forth in the Plan or the Confirmation Order, as applicable, or as otherwise set forth herein.  For the avoidance of doubt, "OpCo Debtor Litigation Trust Assets" shall mean the OpCo Debtor Litigation Trust Assets (as defined in the Plan) and any and all other property held from time to time by the OpCo Debtor Litigation Trust under this Agreement and any proceeds thereof and earnings thereon.  In addition, as used in this Agreement, the below terms are defined as follows:

1.2.1    "<u>OpCo Debtor Litigation Trust Net Assets</u>" means the OpCo Debtor Litigation Trust Assets *less* the OpCo Debtor Litigation Trust Expenses.

1.2.2    "<u>Reorganized OpCo Debtor(s)</u>" means each of the Reorganized Debtors that were OpCo Debtors prior to the Effective Date of the reorganization pursuant to and under the Plan Equitization Transaction.

1.3     <u>Conflict Among Plan Documents</u>.  In the event of any inconsistency between the Plan, the Confirmation Order, and/or this Agreement, each such document shall have controlling effect in the following rank order:  (i) the Confirmation Order; (ii) the Plan (including, for the avoidance of doubt, the Committee Settlement incorporated herein); and (iii) this Agreement, *provided*, *however*, that to the extent that the Plan and the Confirmation Order are silent as to a particular issue, the terms of the relevant provision of this Agreement shall control so long as not otherwise inconsistent with the clear intent of the Plan and/or the Confirmation Order.

## <u>ARTICLE II</u>

## **ESTABLISHMENT OF OPCO DEBTOR LITIGATION TRUST**

2.1     <u>Effectiveness of Agreement; Name of OpCo Debtor Litigation Trust</u>.  The OpCo Debtors and the OpCo Litigation Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the OpCo Debtor Litigation Trust in furtherance of the compromises and agreements more fully set forth in the Plan.  This Agreement shall become effective on the Effective Date.  The OpCo Debtor Litigation Trust shall be officially known as the "<u>Franchise Group OpCo Litigation Trust</u>."

2.2     <u>Purpose of OpCo Debtor Litigation Trust</u>.  Further to the establishment and purpose of the OpCo Debtor Litigation Trust as declared in Recital 8 of this Agreement, the OpCo Debtor Litigation Trust is established for the primary purpose of collecting, holding, administering, liquidating, and distributing the OpCo Debtor Litigation Trust Assets for the benefit of the OpCo Debtor Litigation Trust Beneficiaries in accordance with the terms and conditions of this Agreement, Treasury Regulations Section 301.7701-4(d), and the Plan (including, for the avoidance of doubt, the Committee Settlement incorporated therein), and with no objective or

authority to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the OpCo Debtor Litigation Trust.

2.3    Transfer of OpCo Debtor Litigation Trust Assets.

2.3.1    Conveyance of OpCo Debtor Litigation Trust Assets.  Pursuant to the Plan, the OpCo Debtors hereby irrevocably grant, release, assign, transfer, convey, and deliver, on behalf of the OpCo Debtor Litigation Trust Beneficiaries, all of such OpCo Debtors' rights, title, and interest in and to the OpCo Debtor Litigation Trust Assets to the OpCo Debtor Litigation Trust as of the Effective Date in trust for the benefit of the OpCo Debtor Litigation Trust Beneficiaries, which shall constitute OpCo Debtor Litigation Trust Assets for all purposes and shall be administered and applied as specified in this Agreement and the Plan.  Upon the transfer of the OpCo Debtor Litigation Trust Assets to the OpCo Debtor Litigation Trust in accordance with the Plan, none of the Debtors or the Reorganized Debtors shall have any further obligations with respect to the Allowed OpCo General Unsecured Claims under the Plan, or the distribution or payment of any proceeds of the OpCo Debtor Litigation Trust Assets to any of the OpCo Debtor Litigation Trust Beneficiaries, except that the OpCo Debtors or the Reorganized OpCo Debtors, as applicable, as reasonably requested by the OpCo Litigation Trustee, shall, from time to time, (i) execute and deliver or cause to be executed and delivered any such documents (in recordable form where necessary or appropriate) and (ii) take or cause to be taken such further commercially reasonable action, in each case as the OpCo Litigation Trustee may reasonably deem necessary or appropriate, to vest in the OpCo Litigation Trust or confirm to the OpCo Litigation Trustee title to and possession of the OpCo Debtor Litigation Trust Assets.  The Reorganized OpCo Debtors shall promptly notify the OpCo Litigation Trustee of (i) any changes to the Initial Strike Price on account of the Strike Price Multiplier, (ii) the occurrence of a "liquidity event" resulting in the

earlier expiration and/or termination of the New Warrants, (iii) any adjustments for splits, reverse splits, and similar structural transactions that are not "liquidity events," and (iv) the initial time at which the New Warrants become exercisable based upon the Initial Strike Price, as may be modified by the Strike Price Multiplier. The OpCo Litigation Trustee shall have no duty to arrange for any of the transfers of any OpCo Debtor Litigation Trust Assets contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and/or the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers. Under no circumstance shall the Debtors, the Reorganized Debtors, the OpCo Debtors, or the Reorganized OpCo Debtors, or any other party be required to contribute any additional assets to or for the benefit of the OpCo Debtor Litigation Trust other than the OpCo Debtor Litigation Trust Assets, except as otherwise set forth in the Plan.

2.3.2    <u>Title to OpCo Debtor Litigation Trust Assets</u>. Pursuant to the Plan, all of the OpCo Debtors' rights, title, and interest in and to the OpCo Debtor Litigation Trust Assets, including all such assets held or controlled by third parties (if any), are hereby irrevocably transferred to, and automatically vested in, or deemed to be automatically vested in, the OpCo Debtor Litigation Trust on the Effective Date and shall comprise assets of the OpCo Debtor Litigation Trust for all purposes, free and clear of all Liens, Claims, encumbrances, Interests, contractually-imposed restrictions, and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the OpCo Debtor Litigation Trust Beneficiaries to establish the OpCo Debtor Litigation Trust. Subject to any applicable consultation rights set forth in this Agreement, the OpCo Debtor Litigation Trust shall be authorized, among other things, to (i) obtain possession or control of, collect, receive, hold, administer, liquidate, and distribute all of the OpCo Debtor Litigation Trust Assets in the possession or control of the OpCo Debtors and/or third

parties, (ii) investigate, pursue, prosecute, compromise, settle, and/or otherwise resolve the OpCo Litigation Claims, which, for the avoidance of doubt, include, but are not limited to, all Causes of Action against the HoldCo Debtors held by the OpCo Debtors in accordance with the Plan, and (iii) other than as provided under the Plan, assert and/or exercise any and all rights, including, without limitation, setoff and recoupment, defenses, counterclaims, and cross-claims, whether arising at law or in equity, of the OpCo Debtors, their Estates, or the Reorganized OpCo Debtors to any claims, Causes of Action, or counterclaims that may be asserted by (a) any and all Persons and/or Entities that are or may become defendants, sued, or a party in or the subject of any lawsuit, proceeding, or litigation in connection with the OpCo Litigation Claims or (b) the Holders of Disputed OpCo General Unsecured Claims.  Without limiting the generality of the foregoing, the OpCo Debtor Litigation Trust shall have the right to (i) invoke section 542 of the Bankruptcy Code to pursue turnover of OpCo Debtor Litigation Trust Assets and (ii) enforce any of provisions of the Plan and/or Confirmation Order against any Persons or Entities that seek or seeks to interfere with the administration of the OpCo Debtor Litigation Trust and/or the OpCo Debtor Litigation Trust Assets.  On the Effective Date, the OpCo Debtor Litigation Trust, acting by and through the OpCo Litigation Trustee, shall be substituted for the OpCo Debtors for all purposes with respect to the OpCo Debtor Litigation Trust Assets and the administration of the OpCo Debtor Litigation Trust Units.  To the extent any law or regulation prohibits the transfer of ownership of any of the OpCo Debtor Litigation Trust Assets from the OpCo Debtors to the OpCo Debtor Litigation Trust and such law is not superseded by the Bankruptcy Code, the OpCo Debtor Litigation Trust's interest in such OpCo Debtor Litigation Trust Assets shall be a Lien upon, and security interest in, such OpCo Debtor Litigation Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2 of this Agreement, and this Agreement shall be deemed a security agreement

granting such Lien upon, and interest therein, without need to file any financing statement(s), mortgage(s), or other documentation evincing such Lien and security interest. By executing this Agreement, the OpCo Litigation Trustee on behalf of the OpCo Debtor Litigation Trust hereby accepts all of such property and Liens (if any) as OpCo Debtor Litigation Trust Assets, to be held in trust for the OpCo Debtor Litigation Trust Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4     <u>Capacity of OpCo Debtor Litigation Trust</u>.  Notwithstanding any state or federal law to the contrary or anything herein, the OpCo Debtor Litigation Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The OpCo Debtor Litigation Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5     <u>Cooperation</u>.  The Reorganized OpCo Debtors shall use commercially reasonable efforts to cooperate with the OpCo Debtor Litigation Trust and the OpCo Litigation Trustee and any professionals retained by the OpCo Debtor Litigation Trust in effecting the transition from the OpCo Debtors or the Reorganized OpCo Debtors, as applicable, to the OpCo Debtor Litigation Trust, of the administration of the OpCo Debtor Litigation Trust Assets; *provided* that neither the OpCo Debtors nor the Reorganized OpCo Debtors shall be required to incur any liability for any fees or expenses (including any indemnification obligations) that may result from any such cooperation. Such cooperation shall include, but not be limited to, using commercially reasonable efforts to identify (i) any evidence and information the OpCo Litigation Trustee reasonably requests in connection with the OpCo Debtor Litigation Trust's investigation, prosecution, other

pursuit, or defense, as applicable, of the OpCo Litigation Claims and objections to Disputed OpCo

General Unsecured Claims, to the extent the Reorganized OpCo Debtors have such evidence

and/or information, and (ii) former employees and Professionals of the OpCo Debtors and current

officers and directors of the Reorganized Debtors (in each case, by providing contact information

if available through commercially reasonable efforts) with knowledge regarding the OpCo

Litigation Claims or Disputed OpCo General Unsecured Claims.  The OpCo Debtors or the

Reorganized OpCo Debtors (or their respective Professionals), as applicable, shall arrange for the

OpCo Litigation Trustee to receive (i) an updated Claims Register of OpCo General Unsecured

Claims from the Claims Agent within thirty (30) days after the Effective Date and, if applicable,

(ii) a register of Holders of any Allowed First Lien Deficiency Claims and any Prepetition Second

Lien Loan Claims (including, without duplication, any Second Lien Deficiency Claims) that are

classified and treated as Class 6 Claims in accordance with the Plan.  Upon reasonable request of

the Ad Hoc Group or its professionals, at the sole cost and expense of the Ad Hoc Group, the OpCo

Litigation Trustee shall provide commercially reasonable access to the Ad Hoc Group and any of

its professionals to retrieve or access data with respect to administration and assets and liabilities

of the OpCo Debtor Litigation Trust, including, without limitation, the Disputed OpCo General

Unsecured Claims, the OpCo General Unsecured Claims, and the OpCo Litigation Claims

(including, without limitation, all Causes of Action against the HoldCo Debtors); *provided* that

neither the OpCo Litigation Trustee nor the OpCo Debtor Litigation Trust shall be required to

incur any liability for any fees or expenses (including any indemnification obligations) that may

result from the provision of any such access to the Ad Hoc Group and any of its professionals.

2.6     Duties of the Debtors and the Reorganized Debtors.  The Debtors and the

Reorganized Debtors, as applicable, shall have no responsibility or obligation with respect to the

OpCo Debtor Litigation Trust or OpCo Debtor Litigation Trust Assets after the Effective Date, other than to comply with Sections 2.3 and 2.5 of this Agreement.

2.7    <u>No Retention of Excess Cash</u>.  Notwithstanding anything in this Agreement to the contrary, but subject to any applicable consultation rights set forth in this Agreement, under no circumstances shall the OpCo Debtor Litigation Trust or the OpCo Litigation Trustee retain Cash in excess of a reasonable amount to meet Claims, expenses, and contingent liabilities or to maintain the value of the OpCo Debtor Litigation Trust Assets during liquidation other than reserves established pursuant to Article III and/or Section 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes and not otherwise required to be distributed to the OpCo Debtor Litigation Trust Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.8    <u>Acceptance by OpCo Litigation Trustee</u>.  The OpCo Litigation Trustee accepts its appointment as OpCo Litigation Trustee of the OpCo Debtor Litigation Trust.

<b><u>ARTICLE III</u></b>

<b>ADMINISTRATION OF OPCO DEBTOR LITIGATION TRUST</b>

3.1    <u>Rights, Powers, and Privileges of OpCo Litigation Trustee Generally</u>.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the Effective Date, the OpCo Litigation Trustee, on behalf of the OpCo Debtor Litigation Trust, may control and exercise authority and dominion over the OpCo Debtor Litigation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the OpCo Debtor Litigation Trust in accordance with the Plan and this Agreement. Subject to any applicable consultation rights set forth in this Agreement, in administering the OpCo Debtor Litigation Trust Assets, the OpCo Litigation Trustee shall, among other things, in an

expeditious but commercially reasonable manner, (i) liquidate and convert to Cash the OpCo Debtor Litigation Trust Assets, (ii) make timely distributions in accordance with this Agreement and the Plan, and (iii) exercise reasonable business judgment and not unduly prolong the OpCo Debtor Litigation Trust's duration.  Notwithstanding anything in the Plan or this Agreement to the contrary, the OpCo Litigation Trustee shall always act consistently with, and not contrary to, the purpose of the OpCo Debtor Litigation Trust as set forth in this Agreement and the Plan.

3.2    Power to Contract.  Subject to any applicable consultation rights set forth in this Agreement, in furtherance of the purpose of the OpCo Debtor Litigation Trust, and except as otherwise specifically restricted in the Plan, the Confirmation Order, or this Agreement, the OpCo Litigation Trustee shall have the right and power on behalf of the OpCo Debtor Litigation Trust and also may cause the OpCo Debtor Litigation Trust to enter into any covenants or agreements binding the OpCo Debtor Litigation Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the OpCo Litigation Trustee to be consistent with, and advisable in, furthering the purpose of the OpCo Debtor Litigation Trust, including, without limitation, with respect to the OpCo Litigation Claims.

3.3    Ultimate Right to Act Based on Advice of Counsel or Other Professionals.  Subject to any applicable consultation rights set forth in this Agreement, nothing in this Agreement shall be deemed to prevent the OpCo Litigation Trustee from taking or refraining to take any action on behalf of the OpCo Debtor Litigation Trust that, based upon the advice of counsel or other professionals, the OpCo Litigation Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the OpCo Litigation Trustee may owe the OpCo Debtor Litigation Trust Beneficiaries or any other Person under the Plan, the Confirmation Order, or this Agreement.

3.4    <u>Powers of OpCo Litigation Trustee</u>.  Without limiting the generality of the above Section 3.1, in addition to the powers granted in the Plan and the Confirmation Order, and those powers set forth herein, at the sole cost and expense of the OpCo Debtor Litigation Trust, the OpCo Litigation Trustee shall have the power to take the following actions on behalf of the OpCo Debtor Litigation Trust and any powers reasonably incidental thereto that the OpCo Litigation Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the OpCo Debtor Litigation Trust, unless otherwise specifically limited or restricted by the Plan, Confirmation Order, or this Agreement and subject to any applicable consultation rights set forth in this Agreement:

3.4.1    hold legal title to the OpCo Debtor Litigation Trust Assets and to any and all rights of the OpCo Debtors (including as Reorganized OpCo Debtors, as applicable) and the OpCo Debtor Litigation Trust Beneficiaries in or arising from the OpCo Debtor Litigation Trust Assets;

3.4.2    receive, maintain, conserve, supervise, prosecute, collect, settle, manage, adjust, invest, protect, enforce, and, where appropriate, cause the OpCo Debtor Litigation Trust to abandon the OpCo Debtor Litigation Trust Assets, including causing the OpCo Debtor Litigation Trust to invest any monies held as OpCo Debtor Litigation Trust Assets in accordance with the terms of Section 3.10 hereof;

3.4.3    cause the OpCo Debtor Litigation Trust to investigate, pursue, litigate, and/or settle the OpCo Litigation Claims (including, but not limited to, all Causes of Action against the HoldCo Debtors);

3.4.4    open and maintain bank accounts or any other accounts on behalf of, or in the name of, the OpCo Debtor Litigation Trust;

3.4.5    cause the OpCo Debtor Litigation Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.4.6    receive, collect, hold, administer, and liquidate any and all of the OpCo Debtor Litigation Trust Assets, including, without limitation, the sale of any OpCo Debtor Litigation Trust Assets;

3.4.7    protect and enforce the rights to the OpCo Debtor Litigation Trust Assets (including, without limitation, the OpCo Litigation Claims) vested in the OpCo Debtor Litigation Trust and the OpCo Litigation Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.4.8    investigate any potential OpCo Litigation Claims (including, but not limited to, all Causes of Action against the HoldCo Debtors) and cause the OpCo Debtor Litigation Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 in relation to the OpCo Litigation Claims;

3.4.9    investigate any OpCo Litigation Claims and review, reconcile, compromise, settle or object to OpCo General Unsecured Claims as set forth in the Plan (other than as to the quantum of the First Lien Deficiency Claims, which shall be in an amount consistent with the description in Section 5.4(b) of the Plan), and cause the OpCo Debtor Litigation Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 in relation to the OpCo Litigation Claims; *provided*, *however*, that the OpCo Debtor Litigation Trust shall not be permitted to seek relief under Bankruptcy Rule 2004 as against (i) the OpCo Debtors or the Reorganized OpCo Debtors, (ii) any current employees, officers, or directors of the Reorganized OpCo Debtors, (iii) the DIP Agent and the DIP Lenders, and (iv) the Ad Hoc First Lien Group;

3.4.10  cause the OpCo Debtor Litigation Trust, if applicable, to exercise the New Warrants at a time chosen by the OpCo Litigation Trustee, in consultation with the Ad Hoc Group, in accordance with the Plan, this Agreement, and the New Warrants Documentation;

3.4.11  cause the OpCo Debtor Litigation Trust to employ or retain professionals, including without limitation, a distribution agent, and other agents, attorneys, financial advisors, independent contractors, and third parties pursuant to this Agreement and pay the reasonable compensation thereof as OpCo Debtor Litigation Trust Expenses;

3.4.12  cause the OpCo Debtor Litigation Trust to pay all of its lawful expenses, debts, charges, taxes, and other liabilities, and make all other payments relating to the OpCo Debtor Litigation Trust Assets as OpCo Debtor Litigation Trust Expenses, solely out of the OpCo Debtor Litigation Trust Assets;

3.4.13  cause the OpCo Debtor Litigation Trust to review, reconcile, investigate, pursue, prosecute, enforce, collect, compromise, settle, abandon, or elect not to pursue all Disputed OpCo General Unsecured Claims and the OpCo Litigation Claims;

3.4.14  calculate, authorize, and make all distributions to the Holders of Allowed OpCo General Unsecured Claims as provided for in, or contemplated by, the Plan and this Agreement;

3.4.15  establish, adjust, and maintain a OpCo Debtor Litigation Trust Disputed Claims Reserve;

3.4.16  cause the OpCo Debtor Litigation Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the OpCo Litigation Trustee has determined, based upon the advice of its agents and/or professionals,

may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.4.17  in reliance upon the Debtors' Schedules and the official Claims Register maintained in the Chapter 11 Cases, review, and, where appropriate, cause the OpCo Debtor Litigation Trust to Allow or object to, OpCo General Unsecured Claims, and supervise and administer the OpCo Debtor Litigation Trust's commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to the Disputed OpCo General Unsecured Claims required to be administered by the OpCo Debtor Litigation Trust in accordance with the Plan;

3.4.18  in reliance upon the Debtors' Schedules and the Claims Register maintained in the Chapter 11 Cases, maintain a register evidencing the OpCo Debtor Litigation Trust Units held by each OpCo Debtor Litigation Trust Beneficiary and, in accordance with Section 3.11 of this Agreement, such register may be the official Claims Register maintained in the Chapter 11 Cases to the extent of any OpCo General Unsecured Claims as reflected thereon;

3.4.19  without limitation of, and as set forth in Section 3.4.14 of this Agreement, cause the OpCo Debtor Litigation Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the OpCo Debtor Litigation Trust, and file tax returns for the OpCo Debtor Litigation Trust as a grantor trust under Internal Revenue Code section 671 and Treasury Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof (subject to the treatment of any portion of the OpCo Debtor Litigation Trust as a DOF or other separate entity), and pay taxes, if any, payable for and on behalf of the OpCo Debtor Litigation Trust, *provided*, *however*, neither the OpCo Debtor Litigation Trust nor the OpCo Litigation Trustee shall have any responsibility or liability

18

in any capacity whatsoever for the filing of Debtors' income tax returns for any period either prior to or after the Effective Date;

3.4.20  cause the OpCo Debtor Litigation Trust to abandon or donate to a charitable organization that qualifies for non-profit status under Internal Revenue Code section 501(c)(3) any OpCo Debtor Litigation Trust Assets that the OpCo Litigation Trustee, in consultation with the Ad Hoc Group, determines to be too impractical to distribute to the OpCo Debtor Litigation Trust Beneficiaries or of inconsequential value to the OpCo Debtor Litigation Trust and the OpCo Debtor Litigation Trust Beneficiaries;

3.4.21  cause the OpCo Debtor Litigation Trust to send annually to OpCo Debtor Litigation Trust Beneficiaries, in accordance with the applicable tax laws, a separate statement stating a OpCo Debtor Litigation Trust Beneficiary's interest in the OpCo Debtor Litigation Trust and its share of the OpCo Debtor Litigation Trust's income, gain, loss, deduction, or credit, and to instruct all such OpCo Debtor Litigation Trust Beneficiaries to report such items on their United States federal tax returns, as applicable;

3.4.22  cause the OpCo Debtor Litigation Trust to seek a determination of tax liability or refund of the OpCo Debtor Litigation Trust (including any OpCo Debtor Litigation Trust Disputed Claims Reserve treated as a DOF (if elected) or other separate entity) under section 505 of the Bankruptcy Code;

3.4.23  cause the OpCo Debtor Litigation Trust to establish such reserves for taxes, assessments and other OpCo Debtor Litigation Trust Expenses as may be necessary and appropriate for the proper operation of matters incident to the OpCo Debtor Litigation Trust;

3.4.24  cause the OpCo Debtor Litigation Trust to purchase and carry all insurance policies that the OpCo Litigation Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.4.25  undertake all administrative functions of the OpCo Debtor Litigation Trust, including overseeing the winding down and termination of the OpCo Debtor Litigation Trust;

3.4.26 exercise, implement, enforce, and discharge all of the applicable and relevant terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.4.27 take all other actions consistent with this Agreement, the Plan, and the Confirmation Order, that the OpCo Litigation Trustee deems reasonably necessary or desirable to administer the OpCo Debtor Litigation Trust.

3.4.28 Notwithstanding anything to the contrary herein, the OpCo Litigation Trustee shall not invest any OpCo Debtor Litigation Trust Assets, proceeds thereof, or any income earned by the OpCo Debtor Litigation Trust unless such investment is permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684.  The OpCo Litigation Trustee shall not be liable for interest or obligated to produce income on any moneys received by the OpCo Debtor Litigation Trust hereunder and held for distribution or payment, except as such interest or other income shall actually be received by the OpCo Litigation Trustee.

3.5    Authority to Pursue the OpCo Litigation Claims.  Subject to any applicable consultation rights set forth in this Agreement, the OpCo Debtor Litigation Trust shall have the right, power, and interest to investigate, review, pursue, reconcile, prosecute, enforce, collect,

compromise, settle, or elect not to pursue the OpCo Litigation Claims, which are set forth in Section 7.10(c)(iii) of the Plan, and, for the avoidance of doubt, include, but are not limited to, all Causes of Action against the HoldCo Debtors.  Except as otherwise provided in the Plan or the Confirmation Order, the OpCo Debtor Litigation Trust shall be vested with, and shall be entitled to assert all setoffs, cross-claims, defenses, and Causes of Action, whether arising at law or in equity, of the OpCo Debtors or the OpCo Debtor Litigation Trust to any counterclaims that may be asserted by any defendant with respect to the OpCo Litigation Claims (other than as to the quantum of the First Lien Deficiency Claims, which shall be in an amount consistent with the description in Section 5.4(b) of the Plan).  The OpCo Debtor Litigation Trust, acting by and through the OpCo Litigation Trustee, shall be the sole representative of the OpCo Debtors' Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the OpCo Litigation Claims.

3.5.1    Except as expressly stated otherwise below, the OpCo Debtor Litigation Trust shall stand in the same position as the OpCo Debtors and their Estates (solely with regard to the OpCo Litigation Claims) as to all evidentiary privileges of any type or nature whatsoever, including attorney-client privilege, the work product privilege or doctrine, any other privilege or immunity attaching to any documents or communications in any form, including electronic data hosted on remote servers, and any other applicable evidentiary privileges of each of the foregoing (collectively, the "Privileges"), and shall succeed to all of the rights of the OpCo Debtors and their Estates (solely with regard to the OpCo Litigation Claims) to preserve or assert any such Privileges, and shall be deemed to be the assignee by each OpCo Debtor and its respective Estate (solely with regard to the OpCo Litigation Claims) of each such Privilege; *provided* that the OpCo Debtor Litigation Trust may not intentionally waive any Privileges in respect of records, documents, or information related to the OpCo Debtor Litigation Trust Assets without the written consent of the

Reorganized Debtors.

3.5.2    Notwithstanding the OpCo Debtors or Reorganized OpCo Debtors providing any privileged information to the OpCo Debtor Litigation Trust or the OpCo Litigation Trustee, such privileged information shall be without waiver in recognition of the joint and/or successor interest in investigating and prosecuting the OpCo Litigation Claims and shall remain privileged.

3.6    <u>Conflicting Litigation Claims</u>.  The Bankruptcy Court shall retain jurisdiction to resolve any conflict that may arise between the OpCo Debtor Litigation Trust and the Freedom HoldCo Debtor Litigation Trust, including with respect to each of their respective rights to pursue any Cause of Action and whether any such Cause of Action constitutes OpCo Litigation Claim or Freedom HoldCo Debtor Litigation Trust Claim.

3.7    <u>Abandonment</u>.  Notwithstanding the foregoing, if, in the OpCo Litigation Trustee's reasonable judgment, in consultation with the Ad Hoc Group, any OpCo Debtor Litigation Trust Asset cannot be monetized or resolved in a commercially reasonable manner or the OpCo Litigation Trustee believes in good faith that such property has inconsequential value to the OpCo Debtor Litigation Trust or the OpCo Debtor Litigation Trust Beneficiaries, the OpCo Litigation Trustee shall have the right to cause the OpCo Debtor Litigation Trust to abandon or otherwise dispose of such property, including by donation of such property to a qualified Internal Revenue Code section 501(c)(3) charitable organization.

3.8    <u>Responsibility for Administration of Claims</u>.  From and after the Effective Date, the OpCo Debtor Litigation Trust shall, subject to any applicable consultation rights set forth in this Agreement, become responsible for administering and paying distributions to Holders of Allowed OpCo General Unsecured Claims.  The OpCo Debtor Litigation Trust, acting by and

through the OpCo Litigation Trustee, shall have the exclusive right after the Effective Date to object to the allowance of any OpCo General Unsecured Claim on any ground (other than as to the quantum of any First Lien Deficiency Claims, which shall be in an amount consistent with the description in Section 5.4(b) of the Plan), to file, withdraw, or litigate to judgment objections to such Claims, to settle or compromise any Disputed OpCo General Unsecured Claims without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the OpCo Debtors and their Estates.  Except as set forth herein or in the Plan, the OpCo Debtor Litigation Trust, acting by and through the OpCo Litigation Trustee, shall also be entitled to assert all of the OpCo Debtors' and their Estates' rights under, without limitation, section 558 of the Bankruptcy Code, and may seek estimation of any OpCo General Unsecured Claims under and subject to section 502(c) of the Bankruptcy Code (other than as to the quantum of the First Lien Deficiency Claims, which shall be in an amount consistent with the description in Section 5.4(b) of the Plan).

3.9    <u>Agents and Professionals</u>.  The OpCo Litigation Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the OpCo Litigation Trustee believes have qualifications necessary to assist in the administration of the OpCo Debtor Litigation Trust, including professionals previously retained by the Debtors or the Creditors' Committee.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the OpCo Litigation Trustee from engaging counsel or other professionals, including the OpCo Litigation Trustee itself or the OpCo Litigation Trustee's firm or their affiliates, to do work for the OpCo Debtor Litigation Trust.  The OpCo Litigation Trustee shall pay the reasonable salaries, fees, and/or expenses of such Persons out of

the OpCo Debtor Litigation Trust Assets in the ordinary course of business as OpCo Debtor Litigation Trust Expenses without the need for Bankruptcy Court approval.

3.10    <u>Safekeeping and Investment of the OpCo Debtor Litigation Trust Assets</u>.    All monies and other assets received by the OpCo Litigation Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the OpCo Debtor Litigation Trust Beneficiaries, but need not be segregated in separate accounts from other OpCo Debtor Litigation Trust Assets, unless and to the extent required by law or the Plan.    Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, neither the OpCo Debtor Litigation Trust nor the OpCo Litigation Trustee shall have any liability for interest or producing income on any monies received by them and held for distribution on account of applicable Allowed OpCo General Unsecured Claims or payment to the OpCo Debtor Litigation Trust Beneficiaries except as such interest shall actually be received by the OpCo Debtor Litigation Trust or the OpCo Litigation Trustee, which shall be distributed as provided herein and in the Plan.    Except as otherwise provided by the Plan, the powers of the OpCo Litigation Trustee to invest any monies held by the OpCo Debtor Litigation Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the OpCo Debtor Litigation Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills or money market funds that invest exclusively in United States Treasury bills and United States Treasury notes; *provided*, *however*, that the scope of permissible investments shall be limited to include only those investments that a "liquidating trust," within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any Internal Revenue Service guidelines, whether set

forth in Internal Revenue Service rulings, Internal Revenue Service pronouncements, or otherwise. For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the OpCo Litigation Trustee shall not be prohibited from engaging in any trade or business on its own account, *provided that* such activity does not interfere or conflict with the OpCo Litigation Trustee's administration of the OpCo Debtor Litigation Trust (including the OpCo Debtor Litigation Trust's status as a "liquidating trust" for tax purposes).

3.11    Maintenance and Disposition of OpCo Debtor Litigation Trust and OpCo Debtor Records.  The OpCo Litigation Trustee shall maintain accurate records of the administration of the OpCo Debtor Litigation Trust Assets, including receipts and disbursements and other activity of the OpCo Debtor Litigation Trust.  The OpCo Debtor Litigation Trust may (at its sole cost and expense), but has no obligation to, engage a claims agent (including, but not limited to, the Debtors' Claims Agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the OpCo Debtor Litigation Trust.  To the extent of any OpCo General Unsecured Claims reflected thereon, the Claims Register may serve as the OpCo Litigation Trustee's register of OpCo Debtor Litigation Trust Units held by OpCo Debtor Litigation Trust Beneficiaries.  The books and records maintained by the OpCo Litigation Trustee and any records of the Debtors transferred to the OpCo Debtor Litigation Trust may be disposed of by the OpCo Litigation Trustee at the later of (i) such time as the OpCo Litigation Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the OpCo Debtor Litigation Trust or the OpCo Debtor Litigation Trust Beneficiaries and (ii) upon the termination and completion of the winding down or dissolution of the OpCo Debtor Litigation Trust.

3.12    Reporting Requirements.    The OpCo Litigation Trustee shall provide the Reorganized Debtors, U.S. Trustee, and the Bankruptcy Court the information and reports they may reasonably request concerning the administration of the OpCo Debtor Litigation Trust.

3.13    No Bond Required; Procurement of Insurance.    Notwithstanding any state or other applicable law to the contrary, the OpCo Litigation Trustee (including any successor OpCo Litigation Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.    The OpCo Litigation Trustee is hereby authorized, but not required, to obtain all reasonable insurance coverage for itself, its agents, representatives, employees, or independent contractors, including, without limitation, coverage with respect to the liabilities, duties, and obligations of the OpCo Litigation Trustee and its agents, representatives, employees, or independent contractors under this Agreement.    The cost of any such insurance coverage shall be an expense of the OpCo Debtor Litigation Trust, constitute OpCo Debtor Litigation Trust Expenses, and be paid out of the OpCo Debtor Litigation Trust Assets.

3.14    Fiduciary and Other Duties.    Notwithstanding anything in the Plan or this Agreement to the contrary, the OpCo Litigation Trustee shall always act in the best interests of the OpCo Debtor Litigation Trust Beneficiaries and in furtherance of the purpose of the OpCo Debtor Litigation Trust as described herein and as set forth in the Plan.    The OpCo Litigation Trustee shall have fiduciary duties to the OpCo Debtor Litigation Trust Beneficiaries consistent with the fiduciary duties that a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her, or its responsibilities accordingly.    Except for obligations expressly imposed on the OpCo Litigation Trustee by this Agreement, to the extent that, at law or in equity, the OpCo Litigation Trustee has duties (including fiduciary duties, other than any fiduciary duties expressly preserved

herein) to the OpCo Debtor Litigation Trust Beneficiaries or to any other person that is a party to or is otherwise bound by this Agreement, such duties are hereby eliminated by this Agreement to the fullest extent permitted by applicable law; *provided*, *however*, that this Agreement does not eliminate the implied contractual covenant of good faith and fair dealing.

## ARTICLE IV

### DISTRIBUTIONS

4.1     <u>Distribution and Reserve of OpCo Debtor Litigation Trust Assets</u>.  Following the transfer of the OpCo Debtor Litigation Trust Assets to the OpCo Debtor Litigation Trust, the OpCo Litigation Trustee shall, subject to any applicable consultation rights expressly set forth in this Agreement, make continuing efforts on behalf of the OpCo Debtor Litigation Trust to collect, liquidate, and distribute all OpCo Debtor Litigation Trust Assets, subject to the reserves deemed necessary by the OpCo Litigation Trustee pursuant to this Agreement, in accordance with the Plan.

4.1.1     <u>Distributions</u>.  The OpCo Litigation Trustee shall make distributions only in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, to Holders of Allowed OpCo General Unsecured Claims to the extent of the OpCo Debtor Litigation Trust Net Assets.  The OpCo Litigation Trustee shall cause the OpCo Debtor Litigation Trust to make distributions, at least annually (other than with respect to any New Warrants or any Reorganized Common Equity issuable upon the exercise thereof), to the OpCo Debtor Litigation Trust Beneficiaries, except the OpCo Debtor Litigation Trust may retain, in consultation with the Ad Hoc Group, an amount of net income and other OpCo Debtor Litigation Trust Assets that is reasonably necessary to meet contingent liabilities, to maintain the OpCo Debtor Litigation Trust Disputed Claims Reserve, and to maintain the value of the OpCo Debtor Litigation Trust Assets pending their liquidation during the term of the OpCo Debtor Litigation Trust or that are

determined to be necessary to pay or be reserved for reasonably incurred or anticipated expenses or claims of the OpCo Debtor Litigation Trust and the OpCo Litigation Trustee, including, but not limited to, the OpCo Debtor Litigation Trust Expenses, and retention of such amount may preclude distributions to OpCo Debtor Litigation Trust Beneficiaries, all in accordance with the terms of the Plan and this Agreement.  The OpCo Debtor Litigation Trust may engage disbursing agents and other Persons as reasonably necessary to assist in making such distributions.  For the avoidance of doubt, no New Warrants (or any Reorganized Common Equity issuable upon the exercise thereof) may be distributed or exercised to the extent that, upon such distribution or exercise, the Reorganized Debtors would be required to register any of their equity interests or other securities (including any Reorganized Common Equity) under the Securities Exchange Act of 1934, as amended.

      4.1.2    <u>Reserves; Pooling of Reserved Funds</u>.  Before any distribution can be made, the OpCo Litigation Trustee shall, in its reasonable discretion, but subject to any applicable consultation rights expressly set forth in this Agreement, establish, supplement, and maintain a reserve in an amount sufficient to meet any and all liabilities and OpCo Debtor Litigation Trust Expenses, including attorneys' fees and expenses and the fees and expenses of other professionals.  In accordance with the Plan and Section 3.4.13 of this Agreement, the OpCo Debtor Litigation Trust may also maintain as necessary one or more reserves (including the OpCo Debtor Litigation Trust Disputed Claims Reserve) with respect to the OpCo General Unsecured Claims required to be administered by the OpCo Debtor Litigation Trust.  For the avoidance of doubt, subject to the Plan and Confirmation Order, the OpCo Litigation Trustee may withhold any distribution pending the OpCo Debtor Litigation Trust's determination of whether to object to any OpCo General Unsecured Claim (other than as to the quantum of the First Lien Deficiency Claims, which shall

be in an amount consistent with the description in Section 5.4(b) of the Plan).  Any such withheld distribution shall become part of a reserve with respect to OpCo General Unsecured Claims and shall be distributed to the appropriate OpCo Debtor Litigation Trust Beneficiary no later than the first Distribution Record Date after a decision is made not to object to the pertinent OpCo General Unsecured Claim or the OpCo General Unsecured Claim becomes Allowed.  The OpCo Litigation Trustee need not maintain any of the OpCo Debtor Litigation Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the OpCo Debtor Litigation Trust; *provided*, *however*, that the OpCo Debtor Litigation Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.3    <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the distributions.  The OpCo Litigation Trustee may, subject to any applicable consultation rights expressly set forth in this Agreement, sell or otherwise dispose of OpCo Debtor Litigation Trust Assets in order to pay such costs.

4.1.4    <u>Right to Rely on Professionals</u>.  Without limitation of the generality of Section 6.6 of this Agreement, in determining the amount of any distribution or reserves, the OpCo Litigation Trustee may rely on, and shall be fully protected in relying on the advice and opinion of, the OpCo Debtor Litigation Trust's attorneys, financial advisors, accountants, or other professionals.

4.2    <u>Withholding from Distributions</u>.  The OpCo Litigation Trustee, in its discretion, may cause the OpCo Debtor Litigation Trust to deduct and withhold from amounts distributable from the OpCo Debtor Litigation Trust to any OpCo Debtor Litigation Trust Beneficiaries any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has

been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such OpCo Debtor Litigation Trust Beneficiary or the OpCo Debtor Litigation Trust, including with respect to the amount to be distributed to such OpCo Debtor Litigation Trust Beneficiary, any amounts received by, collections of, or earnings of the OpCo Debtor Litigation Trust and any proceeds from the OpCo Debtor Litigation Trust Assets. The OpCo Litigation Trustee shall determine such maximum amount to be withheld by the OpCo Debtor Litigation Trust in its sole, reasonable discretion and shall cause the OpCo Debtor Litigation Trust to distribute to the Holder of such Allowed OpCo General Unsecured Claim any excess amount withheld.  The OpCo Litigation Trustee may, if necessary or appropriate to comply with applicable withholding requirements, withhold the entire distribution due to any OpCo Debtor Litigation Trust Beneficiary until such OpCo Debtor Litigation Trust Beneficiary provides the necessary information to comply with any withholding requirements of any governmental unit. All such amounts deducted or withheld and timely paid to the appropriate taxing authority shall be treated as amounts distributed to such OpCo Debtor Litigation Trust Beneficiaries for all purposes of the Plan and this Agreement, to the extent permitted by applicable law.

4.3    Internal Revenue Service Forms.  The OpCo Litigation Trustee may require any Holder of an OpCo General Unsecured Claim to, and each such Holder shall, properly complete and execute the appropriate Internal Revenue Service Form W-8 (including any supporting documents) or Internal Revenue Service Form W-9, or such other documentation, as a prerequisite to receiving any distribution under the Plan or this Agreement.  If a Holder of such OpCo General Unsecured Claim does not provide to the OpCo Litigation Trustee within ninety (90) days of first written request with all documentation that in the OpCo Litigation Trustee's reasonable business judgment is necessary to determine the tax withholding and reporting requirements for such OpCo

General Unsecured Claim, then any current or future distribution on such OpCo General Unsecured Claim shall be deemed forfeited, the underlying OpCo General Unsecured Claim disallowed and expunged in its entirety and the funds shall in respect of such present and future distribution(s) shall revert to the OpCo Debtor Litigation Trust for all purposes, including but not limited to, redistribution to other OpCo Debtor Litigation Trust Beneficiaries, in accordance with the terms of the Confirmation Order, the Plan, and Section 4.4 of this Agreement; *provided*, *however*, that no additional ninety (90) day period under Section 4.4 of this Agreement shall be required to pass before such distributions become unrestricted funds of the OpCo Debtor Litigation Trust.

4.4    <u>Unclaimed and Undeliverable Distributions</u>.  Unclaimed property (including, but not limited to, uncashed checks), together with any distributions to OpCo Debtor Litigation Trust Beneficiaries returned as undeliverable, shall be held by the OpCo Litigation Trustee in an unclaimed property reserve (the "<u>Unclaimed Property Reserve</u>") for a period of ninety (90) days from the date of first issuance, and may be released by the OpCo Litigation Trustee prior to the expiration of such time period if presentation of proper proof by such OpCo Debtor Litigation Trust Beneficiary of its entitlement thereto is presented to the OpCo Litigation Trustee.  After the expiration of the applicable time period set forth in this Section 4.4, all unclaimed property or interest in property otherwise payable to a Holder of an Allowed OpCo General Unsecured Claim or its successors shall revert to the OpCo Debtor Litigation Trust for all purposes including, but not limited to, for redistribution in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  Upon such revesting, the Holder of an Allowed OpCo General Unsecured Claim or its successors with respect to such property shall be cancelled, released, discharged, and forever barred and the Allowed OpCo General Unsecured Claim of any other Holder to such

property or interest in property shall be discharged and forever barred notwithstanding any applicable federal, state or provincial escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an unclaimed distribution to the contrary.

4.5     <u>No Responsibility to Attempt to Locate OpCo Debtor Litigation Trust Beneficiaries</u>.  If a distribution is returned to the OpCo Debtor Litigation Trust as undeliverable, or otherwise remains unclaimed, no further distribution shall be made to a Holder of an applicable Allowed OpCo General Unsecured Claim unless and until such Holder notifies the OpCo Litigation Trustee of such Holder's then-current address and taxpayer identification number.  The OpCo Litigation Trustee may, in its sole discretion, attempt to determine a Holder of an applicable Allowed OpCo General Unsecured Claim's current address or otherwise locate such Holder, but nothing in this Agreement or the Plan shall require the OpCo Litigation Trustee to do so.

4.5.1     <u>Inapplicability of Escheat, Abandoned or Unclaimed Property Laws</u>. Unclaimed property held by the OpCo Debtor Litigation Trust shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, or any state, provincial, or local governmental unit.

4.6     <u>Request for Reissuance</u>.  Distribution checks shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Distribution checks not cashed within such 90-day period shall be treated as unclaimed property that has been held in the Unclaimed Property Reserve as set forth above in Section 4.4.  Requests for reissuance of any check shall be made in writing directly to the OpCo Litigation Trustee by the Holder of the applicable Allowed OpCo General Unsecured Claim that was originally issued such check.  All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks

become unrestricted OpCo Debtor Litigation Trust Assets under Section 4.4 of this Agreement. The Holder of an applicable Allowed OpCo General Unsecured Claim shall bear all the risk that, and shall indemnify and hold the OpCo Debtor Litigation Trust and the OpCo Litigation Trustee harmless against any loss that may arise if, the OpCo Litigation Trustee does not reissue a check promptly after receiving a request for its reissuance.

4.7    <u>Conflicting Claims of OpCo Debtor Trust Units</u>.  If any conflicting claims or demands are made or asserted with respect to the OpCo Debtor Litigation Trust Unit of a OpCo Debtor Litigation Trust Beneficiary, or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the OpCo Litigation Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.7.1    The OpCo Litigation Trustee may, in consultation with the Ad Hoc Group, elect to cause the OpCo Debtor Litigation Trust to make no payment or distribution with respect to the OpCo Debtor Litigation Trust Unit subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands in accordance with Article XIII of the Plan.  Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, neither the OpCo Debtor Litigation Trust nor the OpCo Litigation Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the OpCo Debtor Litigation Trust or OpCo Litigation Trustee be liable for interest on any funds which may be so withheld.

4.7.2    The OpCo Litigation Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the OpCo Litigation Trustee, which agreement shall include a complete release of the OpCo Debtor Litigation Trust and OpCo Litigation Trustee.  Until the OpCo Litigation Trustee receives written notice that one of the conditions of the preceding sentence is met, the OpCo Litigation Trustee may deem and treat as the absolute owner under this Agreement of the OpCo Debtor Litigation Trust Unit in the OpCo Debtor Litigation Trust the OpCo Debtor Litigation Trust Beneficiary identified as the owner of that interest in the books and records maintained by the OpCo Litigation Trustee.  The OpCo Litigation Trustee may deem and treat such OpCo Debtor Litigation Trust Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.8    <u>Limitation on Liability</u>.  Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, in acting or refraining from acting under and in accordance with this the Agreement, the OpCo Litigation Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.9    <u>Priority of Expenses of OpCo Debtor Litigation Trust</u>.  The OpCo Debtor Litigation Trust shall pay or reserve for all necessary OpCo Debtor Litigation Trust Expenses before making any distributions, including but not limited to, any distribution to OpCo Debtor Litigation Trust Beneficiaries.

4.10    <u>Minimum Distributions</u>.  If any distribution under the Plan to the Holder of an

Allowed OpCo General Unsecured Claim would be less than $250.00, the OpCo Debtor Litigation Trust may hold such distribution until the time of a subsequent or final distribution. If the final distribution under the Plan to the Holder of an Allowed OpCo General Unsecured Claim would be less than $250.00, the OpCo Debtor Litigation Trust may cancel such distribution. Any cancelled distributions pursuant to this Section 4.10 shall revert to the OpCo Debtor Litigation Trust for all purposes, including distributions to other Holders of Allowed OpCo General Unsecured Claims.

## ARTICLE V

## OPCO DEBTOR LITIGATION TRUST BENEFICIARIES

5.1    Interest Beneficial Only.  The ownership of a OpCo Debtor Litigation Trust Unit shall not entitle any OpCo Debtor Litigation Trust Beneficiary or the Debtors to any title in or to the OpCo Debtor Litigation Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    Ownership of OpCo Debtor Litigation Trust Beneficial Interests Hereunder.  Each OpCo Debtor Litigation Trust Beneficiary shall own a OpCo Debtor Litigation Trust Unit herein which shall, subject to Article IV of this Agreement and the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan and hereunder.

5.3    Evidence of OpCo Debtor Litigation Trust Beneficial Interest.  Ownership of a OpCo Debtor Litigation Trust Unit in the OpCo Debtor Litigation Trust Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the OpCo Debtor Litigation Trust by the OpCo Litigation Trustee.

5.4    No Right to Accounting.  Except as otherwise provided in this Agreement, neither the OpCo Debtor Litigation Trust Beneficiaries nor their successors, assigns, creditors, nor any

other Person shall have any right to an accounting by the OpCo Litigation Trustee, and the OpCo Litigation Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the OpCo Litigation Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the OpCo Debtor Litigation Trust or as a condition for making any advance, payment, or distribution out of proceeds of OpCo Debtor Litigation Trust Assets.

5.5     <u>No Standing</u>.  Except as expressly provided in this Agreement, a OpCo Debtor Litigation Trust Beneficiary shall not have standing to direct or to seek to direct the OpCo Debtor Litigation Trust or OpCo Litigation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the OpCo Debtor Litigation Trust Assets; *provided*, *however*, that, for the avoidance of doubt, this Section 5.5 shall not prevent a OpCo Debtor Litigation Trust Beneficiary from seeking any appropriate or necessary relief from the Bankruptcy Court.

5.6     <u>Requirement of Undertaking</u>.  The OpCo Litigation Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the OpCo Litigation Trustee for any action taken or omitted by it as OpCo Litigation Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this Section 5.6 shall not apply to any suit by the OpCo Debtor Litigation Trust or OpCo Litigation Trustee.

5.7     <u>Limitation on Transferability</u>.  It is understood and agreed that the OpCo Debtor Litigation Trust Units shall be non-transferable and non-assignable during the term of this Agreement except if transferred by will, intestate succession, if required to be transferred as part

of a liquidation or winding up of a holder, or otherwise by operation of Law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the OpCo Litigation Trustee, and the OpCo Litigation Trustee may continue to cause the OpCo Debtor Litigation Trust to pay all amounts to or for the benefit of the assigning OpCo Debtor Litigation Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The OpCo Litigation Trustee may rely upon such proof without the requirement of any further investigation.

5.8    Exemption from Registration.  The rights of the OpCo Debtor Litigation Trust Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the OpCo Debtor Litigation Trust Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No Party to or beneficiary of this Agreement shall make a contrary or different contention.

5.9    Delivery of Distributions.  Subject to the terms of this Agreement, the OpCo Litigation Trustee shall cause the OpCo Debtor Litigation Trust to make distributions to OpCo Debtor Litigation Trust Beneficiaries in the manner provided in the Plan and in this Agreement.

5.10    Limited Liability.  Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, no provision of this Agreement, the Plan, or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any OpCo Debtor Litigation Trust Beneficiary, shall give rise to any liability of such OpCo Debtor Litigation Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any

Debtor, creditors, successors, representatives, employees, or Holders of Interests of any Debtor, or by any other person. OpCo Debtor Litigation Trust Beneficiaries are deemed to receive the OpCo Debtor Litigation Trust Assets in accordance with the provisions of this Agreement, the Plan, and the Confirmation Order in exchange for their Allowed OpCo General Unsecured Claims as set forth in the Plan without further obligation or liability of any kind, but subject to the provisions of this Agreement.

## ARTICLE VI

### THIRD-PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1    <u>Parties Dealing With the OpCo Litigation Trustee</u>. In the absence of actual knowledge to the contrary, any Person dealing with the OpCo Debtor Litigation Trust or the OpCo Litigation Trustee shall be entitled to rely on the authority of the OpCo Litigation Trustee or any of the OpCo Litigation Trustee's agents to act in connection with the OpCo Debtor Litigation Trust Assets. There is no obligation of any Person dealing with the OpCo Litigation Trustee to inquire into the validity or expediency or propriety of any transaction by the OpCo Litigation Trustee or any agent of the OpCo Litigation Trustee.

6.2    <u>Limitation of OpCo Litigation Trustee Liability</u>. In exercising the rights granted herein, the OpCo Litigation Trustee shall exercise the OpCo Litigation Trustee's best judgment in accordance with its fiduciary duties, to the end that the affairs of the OpCo Debtor Litigation Trust shall be properly managed and the interests of all of the OpCo Debtor Litigation Trust Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, neither the OpCo Litigation Trustee nor any of its respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors,

attorneys, representatives, or disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order of the Bankruptcy Court to be the direct and primary cause of loss, liability, damage, or expense suffered by the OpCo Debtor Litigation Trust.  Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, in no event shall the OpCo Litigation Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including, but not limited to, lost profits) whatsoever, even if the OpCo Litigation Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.  Without limiting the foregoing, the OpCo Litigation Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the OpCo Litigation Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

6.3    No Liability for Acts of Other Persons.  None of the Persons identified in the immediately preceding Section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section.

6.4    No Liability for Acts of Predecessors.  No successor OpCo Litigation Trustee shall be in any way responsible for the acts or omissions of any OpCo Litigation Trustee in office prior to the date on which such successor becomes the OpCo Litigation Trustee, unless a successor OpCo Litigation Trustee expressly assumes such responsibility.

6.5    No Liability for Good Faith Error of Judgment.  Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, The

OpCo Litigation Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally and ultimately determined by a court of competent jurisdiction that the OpCo Litigation Trustee was grossly negligent.

6.6     <u>Reliance by OpCo Litigation Trustee on Documents and Advice of Counsel or Other Persons</u>.  Except as otherwise provided herein, the OpCo Litigation Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.  The OpCo Litigation Trustee also may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in good faith reliance upon the advice of such counsel, agents, or advisors to the extent permitted by law, except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein.

6.7     <u>No Liability For Acts Approved by Bankruptcy Court</u>.  The OpCo Litigation Trustee shall have the right at any time to seek an order from the Bankruptcy Court concerning the administration or disposition of the OpCo Debtor Litigation Trust, OpCo Litigation Claims, OpCo General Unsecured Claims, and OpCo Debtor Litigation Trust Assets required to be administered by the OpCo Debtor Litigation Trust.  Following the entry of any such order of the Bankruptcy Court, the OpCo Litigation Trustee shall not be liable for any act or omission expressly taken in accordance with, and not inconsistent with, any such order, and all such actions or omissions shall be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.8     <u>No Personal Obligation for OpCo Debtor Litigation Trust Liabilities</u>.  Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, Persons dealing with the OpCo Litigation Trustee shall have recourse only to the

OpCo Debtor Litigation Trust Assets to satisfy any liability incurred by the OpCo Litigation Trustee to any such Person in carrying out the terms of this Agreement, and the OpCo Litigation Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     <u>Indemnification</u>.  The OpCo Litigation Trustee and each of its or the OpCo Debtor Litigation Trust's respective accountants, agents, assigns, attorneys, consultants, directors, employees, executors, financial advisors, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, the employees of the OpCo Debtor Litigation Trust, and their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives, affiliate, employer and successors and principals  (each, an "<u>Indemnified Party</u>") shall be indemnified for, and defended and held harmless against, by the OpCo Debtor Litigation Trust solely from the OpCo Debtor Litigation Trust Assets, for any losses, liability, claims, damages, judgment, fine, penalty, claim, demand, settlement, cost, or expenses occurring on or after the Effective Date (including reasonable attorneys' fees and expenses which the Indemnified Party may incur in connection therewith) for any act or omission in their capacity as, or on behalf of, the OpCo Debtor Litigation Trust or OpCo Litigation Trustee in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the OpCo Debtor Litigation Trust or the OpCo Debtor Litigation Trust Beneficiaries, except if such loss, liability, or damage is determined by a Final Order of the Bankruptcy Court to have resulted from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting indemnification.  An act or omission taken by the OpCo Litigation Trustee pursuant to Section 6.7 of this Agreement will be deemed not to constitute gross negligence, willful misconduct, or fraud.

The amounts necessary for the indemnification provided in this Section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this Section) shall be paid by the OpCo Litigation Trustee out of the OpCo Debtor Litigation Trust Assets; *provided*, *however*, that that the OpCo Debtor Litigation Trust shall not be liable to indemnify any Indemnified Party for any act or omission arising out of such Indemnified Party's respective gross negligence, fraud, or willful misconduct as determined by a Final Order of the Bankruptcy Court. The Indemnified Parties shall be entitled to obtain advances from the OpCo Debtor Litigation Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such, except for any actions or omissions arising from their own respective willful misconduct, fraud, or gross negligence; *provided*, *however*, that the Indemnified Parties receiving such advances shall repay the amounts so advanced to the OpCo Debtor Litigation Trust immediately upon the entry of a final, non-appealable judgment or order finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section 6.9 of this Agreement. Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, the OpCo Litigation Trustee shall not be personally liable for the payment of any OpCo Debtor Litigation Trust Expense or claim or other liability of the OpCo Debtor Litigation Trust, and no Person shall look to the OpCo Litigation Trustee personally for the payment of any such expense or liability. Notwithstanding anything herein to the contrary, nothing contained in this Section 6.9 shall require the Debtors or the Reorganized Debtors to indemnify any Indemnified Persons pursuant to this Agreement.

6.9.1    Expense of OpCo Debtor Litigation Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the OpCo Debtor Litigation Trust under this

Section 6.9 shall be expenses of the OpCo Debtor Litigation Trust and constitute OpCo Debtor Litigation Trust Expenses.  The amounts necessary for such indemnification and reimbursement shall be paid by the OpCo Debtor Litigation Trust out of the available OpCo Debtor Litigation Trust Assets after reserving for all actual and anticipated expenses and liabilities of the OpCo Debtor Litigation Trust.  Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, the OpCo Litigation Trustee shall not be personally liable for the payment of any OpCo Debtor Litigation Trust Expenses or claim or other liability of the OpCo Debtor Litigation Trust, and no Person shall look to the OpCo Litigation Trustee or other Indemnified Parties personally for the payment of any such OpCo Debtor Litigation Trust Expenses or liability, unless it is ultimately and finally determined by a court of competent jurisdiction that such payment was the result of fraud, gross negligence, or willful misconduct.

6.10    <u>Confirmation of Survival of Provisions</u>.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the OpCo Litigation Trustee or, as it relates to Section 6.9, an Indemnified Party, or the termination of the OpCo Debtor Litigation Trust or this Agreement, and shall inure to the benefit of the OpCo Litigation Trustee's and the Indemnified Party's(ies') heirs and assigns.

## <u>ARTICLE VII</u>

### TAX MATTERS

7.1    <u>Tax Treatment of OpCo Debtor Litigation Trust</u>.  Pursuant to and in accordance with the Plan, for all United States federal income tax purposes, the Debtors, the OpCo Debtor Litigation Trust Beneficiaries, the OpCo Litigation Trustee, and the OpCo Debtor Litigation Trust

shall treat (i) the OpCo Debtor Litigation Trust as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684 and, thus, as a "grantor trust" within the meaning of Internal Revenue Code sections 671 through 677 consistent with the terms of the Plan (unless the OpCo Debtor Litigation Trust has undergone the Conversion) and (ii) the transfer of the OpCo Debtor Litigation Trust Assets to the OpCo Debtor Litigation Trust as (a) a transfer of the OpCo Debtor Litigation Trust Assets by the OpCo Debtors to the OpCo Debtor Litigation Trust Beneficiaries in satisfaction of their Allowed OpCo General Unsecured Claims (other than any OpCo Debtor Litigation Trust Disputed Claims Reserve treated as a DOF (if elected) or other separate entity), followed by (b) a transfer of such OpCo Debtor Litigation Trust Assets by such OpCo Debtor Litigation Trust Beneficiaries to the OpCo Debtor Litigation Trust in exchange for their *pro rata* OpCo Debtor Litigation Trust Units.  The OpCo Debtor Litigation Trust Beneficiaries shall be treated as the grantors and owners of the OpCo Debtor Litigation Trust for United States federal (and, to the extent permitted, state and local) income tax purposes.

7.2     Annual Reporting and Filing Requirements.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the OpCo Litigation Trustee shall file tax returns (including applicable state, local and foreign tax returns, if any) for the OpCo Debtor Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) to the extent required by applicable law and subject to the treatment of the OpCo Debtor Litigation Trust Disputed Claims Reserve as a DOF or other separate entity.

7.3     Tax Treatment of Reserves for Disputed Claims.  The OpCo Litigation Trustee may, in the OpCo Litigation Trustee's sole discretion, determine the best way to report for United

States tax purposes with respect to the OpCo Debtor Litigation Trust Disputed Claims Reserve, if applicable, including (i) filing a tax election to treat the OpCo Debtor Litigation Trust Disputed Claims Reserve as a DOF or other separate entity within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the OpCo Debtor Litigation Trust (and, to the extent permitted by applicable law, report consistently with the foregoing for United States federal, state, and local income tax purposes) or (ii) electing to report as a separate trust or sub-trust or other entity. If an election is made to report the OpCo Debtor Litigation Trust Disputed Claims Reserve as a DOF or other separate entity, the OpCo Debtor Litigation Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF or other separate entity, including, but not limited to, the filing of a separate federal tax return for the DOF or other separate entity and the payment of federal and/or state income tax due.

7.3.1    If an election is made to report the OpCo Debtor Litigation Trust Disputed Claims Reserve as a DOF or other separate entity, all parties (including the Debtors, the Reorganized Debtors, the OpCo Debtor Litigation Trust, the OpCo Litigation Trustee, and the OpCo Debtor Litigation Trust Beneficiaries) shall be bound by such election and report for United States federal, state, and local income tax purposes consistently with the foregoing. The OpCo Litigation Trustee shall be responsible for payment, out of the OpCo Debtor Litigation Trust Assets, of any taxes (including with respect to earned interest, if any) imposed on the OpCo Debtor Litigation Trust or the OpCo Debtor Litigation Trust Assets, including the OpCo Debtor Litigation Trust Disputed Claims Reserve. In the event, and to the extent, any Cash retained on account of a Disputed OpCo General Unsecured Claim in the OpCo Debtor Litigation Trust Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income

arising from the assets allocable to, or retained on account of, such Disputed OpCo General Unsecured Claims, the OpCo Litigation Trustee may, in its discretion, (i) sell any non-Cash assets relating to such Claim (including any assets distributable as a result of disallowance of such Claim) to pay such taxes or (ii) reimburse the OpCo Debtor Litigation Trust for the payment of such taxes from any subsequent Cash amounts allocable to, or retained on account of such Disputed OpCo General Unsecured Claim (including any Cash distributable by the OpCo Litigation Trustee as a result of disallowance of such Disputed OpCo General Unsecured Claim).

7.4    <u>Valuation of OpCo Debtor Litigation Trust Assets</u>.    As soon as practicable following the Effective Date, but in no event later than the due date for timely filing of the OpCo Debtor Litigation Trust's first United States federal income tax return (taking into account applicable tax filing extensions), the OpCo Litigation Trustee shall determine the fair market value of the OpCo Debtor Litigation Trust Assets as of the Effective Date, based on the OpCo Litigation Trustee's good faith determination and subject in all respects to Section 7.4, and the OpCo Litigation Trustee shall apprise, in writing, the OpCo Debtor Litigation Trust Beneficiaries and the Reorganized OpCo Debtors of such valuation.    The valuation shall be used consistently by all parties (including, without limitation, the Debtors and/or the Reorganized OpCo Debtors, as applicable, the OpCo Debtor Litigation Trust, the OpCo Litigation Trustee, and the OpCo Debtor Litigation Trust Beneficiaries) for all applicable United States federal, state, and local income tax purposes.

7.4.1    In the event the Reorganized OpCo Debtors disagree with the OpCo Litigation Trustee's good faith determination of the valuation of the OpCo Debtor Litigation Trust Assets, the OpCo Litigation Trustee and the Reorganized OpCo Debtors shall attempt to reconcile any such differences.    The valuation agreed to by the Reorganized OpCo Debtors and the OpCo

Litigation Trustee shall be used consistently by all parties for all tax purposes unless otherwise required by a "determination" within the meaning of Section 1313(a) of the Internal Revenue Code (or any equivalent provision of state, local, or non-U.S. law).

7.5    In the event that the OpCo Litigation Trustee determines that the OpCo Debtor Litigation Trust may be required to withhold from amounts distributable from the OpCo Debtor Litigation Trust pursuant to Section 4.2 above, it shall endeavor to promptly notify the relevant OpCo Debtor Litigation Trust Beneficiary.

7.6    Allocations of OpCo Debtor Litigation Trust taxable income among the OpCo Debtor Litigation Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the OpCo Debtor Litigation Trust had distributed all its assets (valued at their tax book value) to the holders of OpCo Debtor Litigation Trust Units, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the OpCo Debtor Litigation Trust.  Similarly, taxable loss of the OpCo Debtor Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining OpCo Debtor Litigation Trust Assets. The tax book value of the OpCo Debtor Litigation Trust Assets for purposes of this Section 7.6 shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

7.7    If, in the reasonable judgment of the OpCo Litigation Trustee, the OpCo Debtor Litigation Trust is expected to survive for a period of more than five (5) years from the Effective

Date, the Parties agree that the OpCo Litigation Trustee, in the exercise of its reasonable discretion, shall either (i) seek to extend the term of the OpCo Debtor Litigation Trust for a reasonable period of time in a manner consistent with Section 9.3 hereof and Revenue Procedure 94-45 § 3.06, or (ii) convert the OpCo Debtor Litigation Trust from a liquidating trust described in Treasury Regulation § 301.7701-4(d) to an investment trust described in Treasury Regulation § 301.7701-4(c), taxable as a grantor trust for U.S. federal income tax purposes under Sections 671 through 679 of the IRC (the process described in this clause (ii), the "Conversion"). In the event of a Conversion, the Parties (x) agree that, unless otherwise required by applicable law, the OpCo Debtor Litigation Trust shall file or cause to be filed any annual or other necessary returns, reports and other forms consistent with the characterization of the converted entity as an investment trust for U.S. federal income tax purposes, (y) shall cooperate to amend this Agreement to reflect such Conversion, and (z) shall take no position on any tax return inconsistent with such treatment.

## ARTICLE VIII

### SELECTION, REMOVAL, REPLACEMENT, AND COMPENSATION OF OPCO LITIGATION TRUSTEE

8.1     Initial OpCo Litigation Trustee.  The OpCo Litigation Trustee has been selected by the Creditors' Committee, in consultation of the Debtors, and has been determined to be reasonably acceptable by the Required Consenting First Lien Lenders, is appointed effective as of the Effective Date, and shall serve as the trustee of the OpCo Debtor Litigation Trust.  The initial trustee of the OpCo Debtor Litigation Trust shall be the OpCo Litigation Trustee.

8.2     Term of Service.  The OpCo Litigation Trustee shall serve until the earliest of (i) the completion of the administration of the OpCo Debtor Litigation Trust Assets and the OpCo Debtor Litigation Trust, including the winding up of the OpCo Debtor Litigation Trust, in accordance with this Agreement and the Plan, (ii) termination and dissolution of the OpCo Debtor Litigation Trust

in accordance with the terms of this Agreement and the Plan, or (iii) the OpCo Litigation Trustee's resignation, death, dissolution, incapacity, liquidation, or removal.  In the event that the OpCo Litigation Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the OpCo Litigation Trustee shall be immediately compensated for all reasonable, documented fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VI of this Agreement shall survive the resignation or removal of any OpCo Litigation Trustee.

8.3     <u>Removal of OpCo Litigation Trustee</u>.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the OpCo Litigation Trustee for cause.  The Bankruptcy Court shall have exclusive jurisdiction to hear and finally determine any dispute arising out of this Section 8.3 except as otherwise provided in the Plan or Confirmation Order.

8.4     <u>Resignation of OpCo Litigation Trustee</u>.  The OpCo Litigation Trustee may resign at any time on written notice to counsel to the Debtors, counsel to the Required Consenting First Lien Lenders, the U.S. Trustee and Bankruptcy Court.  The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court.  In the event of a resignation, the resigning OpCo Litigation Trustee shall file a full and complete accounting of monies and assets received, disbursed, and held during the term of that OpCo Litigation Trustee.

8.5     <u>Appointment of Successor OpCo Litigation Trustee</u>.  Upon the resignation, death, dissolution, incapacity, liquidation, or removal of a OpCo Litigation Trustee, any party in interest (including, in the case of resignation, the OpCo Litigation Trustee) may file a motion in the Bankruptcy Court to appoint a successor trustee.  In the event no party in interest seeks the appointment of a successor OpCo Litigation Trustee, the Bankruptcy Court shall appoint a

successor OpCo Litigation Trustee on its own motion.  Any successor OpCo Litigation Trustee so appointed (i) shall consent to and accept his, her, or its appointment as successor OpCo Litigation Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor OpCo Litigation Trustee, and (ii) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).  Any successor OpCo Litigation Trustee may be appointed to serve only on an interim basis.

8.6     Powers and Duties of Successor OpCo Litigation Trustee.  A successor OpCo Litigation Trustee shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and the Confirmation Order.

8.7     OpCo Debtor Litigation Trust Continuance.  The resignation, death, dissolution, incapacity, liquidation, or removal of the OpCo Litigation Trustee shall not terminate the OpCo Debtor Litigation Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the OpCo Litigation Trustee.

8.8     Compensation of OpCo Litigation Trustee and Costs of Administration.  The OpCo Litigation Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge solely against and solely paid out of the OpCo Debtor Litigation Trust Assets as OpCo Debtor Litigation Trust Expenses.  All costs, expenses, and obligations incurred by the OpCo Litigation Trustee (or professionals who may be employed by the OpCo Litigation Trustee in administering the OpCo Debtor Litigation Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the OpCo Debtor Litigation Trust solely from the OpCo Debtor Litigation Trust Assets prior to any distribution to Holders of applicable Allowed OpCo General Unsecured Claims.

8.9    <u>Appointment of Supplemental OpCo Litigation Trustee</u>.  If the OpCo Litigation Trustee has a conflict or any of the OpCo Debtor Litigation Trust Assets are situated in any state or other jurisdiction in which the OpCo Litigation Trustee is not qualified to act as trustee, the OpCo Litigation Trustee shall, upon written notice to counsel to the Debtors and counsel to the Required Consenting Term Loan Lenders (email being sufficient), nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental OpCo Litigation Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental OpCo Litigation Trustee such security as may be designated by the OpCo Litigation Trustee in its discretion.  In the event the OpCo Litigation Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental OpCo Litigation Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The OpCo Litigation Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental OpCo Litigation Trustee any or all of the rights, powers, privileges, and duties of the OpCo Litigation Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental OpCo Litigation Trustee is acting shall prevail to the extent necessary).  To the extent the Supplemental OpCo Litigation Trustee is appointed by the OpCo Litigation Trustee, the OpCo Litigation Trustee shall require such Supplemental OpCo Litigation Trustee to be answerable to the OpCo Litigation Trustee for all monies, assets, and other property that may be received in connection with the administration of all property.  The OpCo Litigation Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental OpCo Litigation Trustee, with or without cause, and appoint a successor Supplemental OpCo Litigation Trustee at any time by

executing a written instrument declaring such Supplemental OpCo Litigation Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE IX

## DURATION OF OPCO DEBTOR LITIGATION TRUST

9.1     <u>Duration</u>.  Once the OpCo Debtor Litigation Trust becomes effective upon the Effective Date of the Plan, the OpCo Debtor Litigation Trust and this Agreement shall remain and continue in full force and effect until the OpCo Debtor Litigation Trust is terminated in accordance with the terms hereof.

9.2     <u>Termination on Payment of OpCo Debtor Litigation Trust Expenses and Distribution of OpCo Debtor Litigation Trust Assets</u>.  Upon the payment of all OpCo Debtor Litigation Trust Expenses, and the distribution of all OpCo Debtor Litigation Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the OpCo Debtor Litigation Trust shall automatically terminate and dissolve and the OpCo Litigation Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3     <u>Termination after Five Years Unless Extended</u>.  If the OpCo Debtor Litigation Trust has not been previously terminated and dissolved pursuant to Section 9.2 hereof, on the fifth anniversary of the Effective Date, the OpCo Debtor Litigation Trustee shall distribute all of the OpCo Debtor Litigation Trust Assets to the OpCo Debtor Litigation Trust Beneficiaries in accordance with the Plan, and immediately thereafter the OpCo Debtor Litigation Trust shall terminate and the OpCo Litigation Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 9.5 of this Agreement, unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary

(and, in the event of further extension, by order of the Bankruptcy Court upon motion made within the six-month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the OpCo Debtor Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the OpCo Debtor Litigation Trust Assets.

9.4    No Termination by OpCo Debtor Litigation Trust Beneficiaries.  The OpCo Debtor Litigation Trust may not be terminated and dissolved at any time by the OpCo Debtor Litigation Trust Beneficiaries.

9.5    Continuance of OpCo Debtor Litigation Trust for Winding Up; Discharge and Release of OpCo Litigation Trustee.  After the termination of the OpCo Debtor Litigation Trust and solely for the purpose of liquidating and winding up the affairs of the OpCo Debtor Litigation Trust, the OpCo Litigation Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the distribution of the OpCo Debtor Litigation Trust Assets, including all excess reserves, the OpCo Litigation Trustee and the OpCo Debtor Litigation Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  In connection with the foregoing, upon a motion by the OpCo Litigation Trustee, the Bankruptcy Court may enter an order relieving the OpCo Litigation Trustee and its employees, professionals, and agents of any further duties, discharging and releasing the OpCo Litigation Trustee and its employees, professionals, and agents from all liability related to the OpCo Debtor Litigation Trust.

# ARTICLE X

## MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>.    The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>.  All notices to be given to OpCo Debtor Litigation Trust Beneficiaries may be given by email, ordinary mail, or may be delivered personally, at the addresses for such OpCo Debtor Litigation Trust Beneficiaries appearing on the books kept by the OpCo Debtor Litigation Trust.  Any notice or other communication which may be or is required to be given, served, or sent to the OpCo Debtor Litigation Trust shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by email, hand delivery, or facsimile (if receipt is confirmed) addressed as follows:

If to the OpCo Debtor Litigation Trust or the OpCo Litigation Trustee:

[NAME OF OPCO LITIGATION TRUSTEE]
[ADDRESS]
[ADDRESS LINE 2]
[CITY, STATE ZIP CODE]
With a copy to:

[COUNSEL FOR OPCO LITIGATION TRUSTEE]
[ADDRESS]
[CITY, STATE ZIP CODE]
Attn:  [●]
Email:  [●]
Fax:  [●]

or to such other address as may from time to time be provided in written notice by the OpCo Debtor Litigation Trustee.

54

10.2.1  <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws.

10.2.2  <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.2.3  <u>Particular Words</u>.  Reference in this Agreement to any Article or Section is, unless otherwise specified, to that such Article or Section (inclusive of any subsections), as applicable, under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Article or Section of this Agreement.

10.2.4  <u>Execution</u>.  All funds in the OpCo Debtor Litigation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a OpCo Debtor Litigation Trust Beneficiary, and no OpCo Debtor Litigation Trust Beneficiary or any other Person can execute upon, garnish or attach the OpCo Debtor Litigation Trust Assets or the OpCo Litigation Trustee in any manner or compel payment from the OpCo Debtor Litigation Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

10.2.5  <u>Amendment</u>.  This Agreement may be amended by written agreement of the OpCo Litigation Trustee or by order of the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

10.2.6  <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.2.7 <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

10.2.8 <u>Severability</u>.  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

10.2.9 <u>Further Assurances</u>.  Without limitation of the generality of Section 2.4 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan and to consummate the transactions contemplated hereby.

10.2.10    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.2.11    <u>Jurisdiction</u>.    The Bankruptcy Court shall have jurisdiction regarding the Debtors, the Reorganized Debtors, the OpCo Debtor Litigation Trust, the OpCo Litigation Trustee, and the OpCo Debtor Litigation Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the OpCo Debtor Litigation Trust; *provided*, *however*, that this Section 10.2.11 shall not conflict with the provisions of the Plan, including, without limitation, Article XIII of the Plan.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related

matters among the Parties arising out of or related to this Agreement or the administration of the OpCo Debtor Litigation Trust.  The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**FRANCHISE GROUP, INC. AND ITS OPCO DEBTOR AFFILIATES SET FORTH ON <u>EXHIBIT A</u>**

By: _____
     Name:  David Orlofsky
     Title:   Chief Restructuring Officer

[NAME OF OPCO LITIGATION TRUSTEE], not individually, but solely in its capacity as OpCo Litigation Trustee of the Franchise Group OpCo Litigation Trust

By: _____
     Name:  [●]
     Title:  [●]

## Schedule 1

1. FRANCHISE GROUP, INC.
2. AMERICAN FREIGHT FFO, LLC
3. AMERICAN FREIGHT FRANCHISING, LLC
4. AMERICAN FREIGHT FRANCHISOR, LLC
5. AMERICAN FREIGHT GROUP, LLC
6. AMERICAN FREIGHT HOLDINGS, LLC
7. AMERICAN FREIGHT MANAGEMENT COMPANY, LLC
8. AMERICAN FREIGHT OUTLET STORES, LLC
9. AMERICAN FREIGHT, LLC
10. BETANCOURT SPORTS NUTRITION, LLC
11. BUDDY'S FRANCHISING AND LICENSING LLC
12. BUDDY'S NEWCO, LLC
13. EDUCATE, INC.
14. FRANCHISE GROUP ACQUISITION TM, LLC
15. FRANCHISE GROUP INTERMEDIATE B, LLC
16. FRANCHISE GROUP INTERMEDIATE BHF, LLC
17. FRANCHISE GROUP INTERMEDIATE HOLDO, LLC
18. FRANCHISE GROUP INTERMEDIATE L, LLC
19. FRANCHISE GROUP INTERMEDIATE PSP, LLC
20. FRANCHISE GROUP INTERMEDIATE S, LLC
21. FRANCHISE GROUP INTERMEDIATE SL, LLC
22. FRANCHISE GROUP INTERMEDIATE V, LLC
23. FRANCHISE GROUP NEW HOLDCO, LLC
24. FRANCHISE GROUP NEWCO BHF, LLC
25. FRANCHISE GROUP NEWCO INTERMEDIATE AF, LLC
26. FRANCHISE GROUP NEWCO PSP, LLC
27. FRANCHISE GROUP NEWCO S, LLC
28. FRANCHISE GROUP NEWCO SL, LLC
29. FRANCHISE GROUP NEWCO V, LLC
30. HOME & APPLICANCE OUTLET, LLC
31. PET SUPPLIES "PLUS", LLC
32. PSP DISTRIBUTION, LLC
33. PSP FRANCHISING, LLC
34. PSP GROUP, LLCPSP MIDCO, LLC
35. PSP SERVICE NEWCO, LLC
36. PSP STORES, LLC
37. PSP SUBCO, LLC
38. VALOR ACQUISITION, LLC
39. VITAMIN SHOPPE FLORIDA, LLC
40. VITAMIN SHOPPE FRANCHISING, LLC
41. VITAMIN SHOPPE GLOBAL, LLC
42. VITAMIN SHOPPE INDUSTRIES LLC
43. VITAMIN SHOPPE MARINER, LLC
44. VITAMIN SHOPPE PROCUREMENT SERVICES, LLC

45. WNW FRANCHISING, LLC
46. WNW STORES, LLC

## **Exhibit I**

**Freedom HoldCo Debtor Litigation Trust Agreement**

*Draft*

# FREEDOM HOLDCO DEBTOR LITIGATION TRUST AGREEMENT
# AND DECLARATION OF FREEDOM HOLDCO DEBTOR LITIGATION TRUST

This Freedom HoldCo Debtor Litigation Trust Agreement and Declaration of Freedom HoldCo Debtor Litigation Trust (this "Agreement"), dated as of [●], 2025, is made by and among Freedom VCM Interco, Inc. and Freedom VCM, Inc. (collectively, the "Freedom HoldCo Debtors")[1] in the Chapter 11 Cases,[2] and [_____] (the "Freedom HoldCo Debtor Litigation Trustee," and together with the Freedom HoldCo Debtors, the "Parties," and each, a "Party").

## RECITALS

1.      On November 3, 2024 (the "Petition Date"), each of the Freedom HoldCo Debtors (together, with its affiliated debtors and debtor in possession, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2]     As set forth in Section 1.2, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan or the Confirmation Order, as applicable, unless otherwise noted.

(the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered under the caption *In re Franchise Group, Inc., et al.*, Case No. 24-12480 (LSS) (Bankr. D. Del.) (the "Chapter 11 Cases").

2.  On November 19, 2024, the Office of the United States Trustee, Region 3 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") to represent the interests of all general unsecured creditors in the Chapter 11 Cases and filed the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 188].

3.  On February 20, 2025, the Debtors filed the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1015] (as amended, supplemented, or otherwise modified from time to time, the "Plan").

4.  On [_____], 2025, the Bankruptcy Court entered an order [Docket No. [●]] (the "Confirmation Order") confirming the Plan, which became effective on [_____], 2025 (the "Effective Date").

5.  Section 7.11 of the Plan provides for the creation of the Freedom HoldCo Debtor Litigation Trust on the Effective Date.

6.  The Freedom HoldCo Debtor Litigation Trust is established for the sole purpose of receiving, holding, administering, liquidating, and distributing the Freedom HoldCo Debtor Litigation Trust Assets (as defined herein).

7.  The Freedom HoldCo Debtor Litigation Trustee shall:  (i) be the exclusive administrator of the assets of the Freedom HoldCo Debtor Litigation Trust, including the Freedom HoldCo Debtor Litigation Trust Assets; and (ii) except as otherwise provided in the Plan or Confirmation Order, have the sole power and authority to (a) reconcile Prepetition HoldCo Loan Claims and Freedom HoldCo General Unsecured Claims (collectively, the "Freedom HoldCo

Debtor Trust Claims"), including asserting any objections thereto in accordance with the Plan and Confirmation Order, (b) investigate, pursue, prosecute, compromise and/or settle the Freedom HoldCo Debtor Litigation Trust Claims, and (c) distribute the Freedom HoldCo Debtor Litigation Trust Assets in accordance with the terms of the Plan and this Agreement, with no objective or authority to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary and consistent with, the liquidating purpose of the Freedom HoldCo Debtor Litigation Trust.  The Freedom HoldCo Debtor Litigation Trust is intended to be classified for United States federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Revenue Procedure 94-45, 1994-2 C.B. 674, and, thus, as a "grantor trust" within the meaning of Internal Revenue Code sections 671 through 679  for United States federal income tax purposes, other than any Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve (as defined herein) treated as a disputed ownership fund ("DOF") or other separate entity.

8.    Pursuant to the Plan, for all United States federal income tax purposes, all parties shall treat the transfer of the Freedom HoldCo Debtor Litigation Trust Assets to the Freedom HoldCo Debtor Litigation Trust for the benefit of the Holders of Allowed Freedom HoldCo Debtor Trust Claims (collectively, the "Freedom HoldCo Debtor Litigation Trust Beneficiaries"), whether such Holder's Freedom HoldCo Debtor Trust Claims are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the Freedom HoldCo Debtor Litigation Trust (but only at such time as actually transferred) as (i) a transfer of the Freedom HoldCo Debtor Litigation Trust Assets (subject to any obligations relating to such Freedom HoldCo Debtor Litigation Trust Assets, including, but not limited to, the Freedom HoldCo Litigation Trust Expenses (as defined herein)) to the Freedom HoldCo Debtor Litigation Trust

Beneficiaries and, to the extent the Freedom HoldCo Debtor Litigation Trust Assets are allocable to Disputed Freedom HoldCo Debtor Trust Claims (any such Freedom HoldCo Debtor Litigation Trust Assets allocable to, or retained on account of, such Disputed Claims, including any earnings thereon, the "Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve") that are the responsibility of the Freedom HoldCo Debtor Litigation Trust, acting by and through its agents and representatives, to resolve, to the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve, followed by (ii) the transfer by the Freedom HoldCo Debtor Litigation Trust Beneficiaries of the Freedom HoldCo Debtor Litigation Trust Assets (other than the Freedom HoldCo Debtor Litigation Trust Assets allocable to the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve) to the Freedom HoldCo Debtor Litigation Trust in exchange for their Freedom HoldCo Debtor Litigation Trust Units that will entitle the respective holder thereof to its *pro rata* share of the proceeds of the Freedom HoldCo Debtor Litigation Trust Net Assets (as defined herein). Accordingly, the Freedom HoldCo Debtor Litigation Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective shares of the Freedom HoldCo Debtor Litigation Trust Assets (other than such Freedom HoldCo Debtor Litigation Trust Assets as are allocable to the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for applicable United States state and local income tax purposes.

9.      The Freedom HoldCo Debtor Litigation Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF FREEDOM HOLDCO DEBTOR LITIGATION TRUST

The Freedom HoldCo Debtors and the Freedom HoldCo Debtor Litigation Trustee enter into this Agreement to effectuate the distribution of the Freedom HoldCo Debtor Litigation Trust Assets to the Freedom HoldCo Debtor Litigation Trust Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Section 7.11 of the Plan and Section 2.3.2 of this Agreement, on the Effective Date, all of the Freedom HoldCo Debtor Litigation Trust Assets shall automatically and irrevocably be transferred to, and vest in or deem to be vested in, the Freedom HoldCo Debtor Litigation Trust free and clear of all Claims, Liens, Interests, encumbrances, and contractually imposed restrictions, except as otherwise provided in the Plan;

TO HAVE AND TO HOLD unto the Freedom HoldCo Debtor Litigation Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Freedom HoldCo Debtor Litigation Trust Assets, are to be held by the Freedom HoldCo Debtor Litigation Trust and applied on behalf of the Freedom HoldCo Debtor Litigation Trust by the Freedom HoldCo Debtor Litigation Trustee (such Freedom HoldCo Debtor Litigation Trustee to be a "United States person" within the meaning of Internal Revenue Code section 7701(a)(30) and established within the United States) on the terms and conditions set forth herein and the Plan,

solely for the benefit of the Freedom HoldCo Debtor Litigation Trust Beneficiaries, as more fully set forth in the Plan and this Agreement, and for no other party.

# ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     Recitals.  The Recitals are incorporated into and made terms of this Agreement.

1.2     Definitions.  All capitalized terms used in this Agreement but not defined herein shall have the meanings set forth in the Plan or the Confirmation Order, as applicable, or as otherwise set forth herein. As used in this Agreement, the below terms are defined as follows:

1.2.1    "Freedom HoldCo Debtor Litigation Trust Assets" shall mean the Freedom HoldCo Debtor Litigation Trust Claims and any and all other property held from time to time by the Freedom HoldCo Debtor Litigation Trust under this Agreement and any proceeds thereof and earnings thereon.

1.2.2    "Freedom HoldCo Debtor Litigation Trust Expenses" means the reasonable expenses (including any taxes imposed on or payable by the Freedom HoldCo Debtor Litigation Trust and professional fees) incurred by the Freedom HoldCo Debtor Litigation Trust, any professionals retained by the Freedom HoldCo Debtor Litigation Trust, and any additional amount determined to be necessary by the Freedom HoldCo Debtor Litigation Trustee to adequately reserve for the operating expenses of the Freedom HoldCo Debtor Litigation Trust.

1.2.3    "Freedom HoldCo Debtor Litigation Trust Net Assets" means the Freedom HoldCo Debtor Litigation Trust Assets *less* the Freedom HoldCo Debtor Litigation Trust Expenses.

1.2.4    "Post-Effective Date Freedom HoldCo Debtor(s)" means each of the Freedom HoldCo Debtors after the Effective Date of the Plan.

1.3    <u>Conflict Among Plan Documents</u>.  In the event of any inconsistency between the Plan, the Confirmation Order, and/or this Agreement, each such document shall have controlling effect in the following rank order:  (i) the Confirmation Order; (ii) the Plan; and (iii) this Agreement, *provided*, *however*, that to the extent that the Plan and the Confirmation Order are silent as to a particular issue, the terms of the relevant provision of this Agreement shall control so long as not otherwise inconsistent with the clear intent of the Plan and/or the Confirmation Order.

## <u>ARTICLE II</u>

## ESTABLISHMENT OF FREEDOM HOLDCO DEBTOR LITIGATION TRUST

2.1    <u>Effectiveness of Agreement; Name of Freedom HoldCo Debtor Litigation Trust</u>. The Freedom HoldCo Debtors and the Freedom HoldCo Debtor Litigation Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Freedom HoldCo Debtor Litigation Trust in furtherance of the compromises and agreements more fully set forth in the Plan. This Agreement shall become effective on the Effective Date.  The Freedom HoldCo Debtor Litigation Trust shall be officially known as the "<u>Franchise Group Freedom HoldCo Debtor Litigation Trust</u>."

2.2    <u>Purpose of Freedom HoldCo Debtor Litigation Trust</u>.  Further to the establishment and purpose of the Freedom HoldCo Debtor Litigation Trust as declared in Recital 8 of this Agreement, the Freedom HoldCo Debtor Litigation Trust is established for the primary purpose of collecting, holding, administering, liquidating, and distributing the Freedom HoldCo Debtor Litigation Trust Assets for the benefit of the Freedom HoldCo Debtor Litigation Trust Beneficiaries in accordance with the terms and conditions of this Agreement, Treasury Regulations Section 301.7701-4(d), and the Plan, and with no objective or authority to continue or engage in

the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Freedom HoldCo Debtor Litigation Trust.

2.3    Transfer of Freedom HoldCo Debtor Litigation Trust Assets.

2.3.1    Conveyance of Freedom HoldCo Debtor Litigation Trust Assets.  Pursuant to the Plan, the Freedom HoldCo Debtors hereby irrevocably grant, release, assign, transfer, convey, and deliver, on behalf of the Freedom HoldCo Debtor Litigation Trust Beneficiaries, all of such Freedom HoldCo Debtors' rights, title, and interest in and to the Freedom HoldCo Debtor Litigation Trust Assets to the Freedom HoldCo Debtor Litigation Trust as of the Effective Date in trust for the benefit of the Freedom HoldCo Debtor Litigation Trust Beneficiaries, which shall constitute Freedom HoldCo Debtor Litigation Trust Assets for all purposes and shall be administered and applied as specified in this Agreement and the Plan.  Upon the transfer of the Freedom HoldCo Debtor Litigation Trust Assets to the Freedom HoldCo Debtor Litigation Trust in accordance with the Plan, none of the Debtors, the Reorganized Debtors (including, for the avoidance of doubt, the Post-Effective Date Freedom HoldCo Debtors) shall have any further obligations with respect to the Allowed Freedom HoldCo Debtor Trust Claims under the Plan, or the distribution or payment of any proceeds of the Freedom HoldCo Debtor Litigation Trust Assets to any of the Freedom HoldCo Debtor Litigation Trust Beneficiaries, except that the Freedom HoldCo Debtors or the Post-Effective Date Freedom HoldCo Debtors, as applicable, as reasonably requested by the Freedom HoldCo Debtor Litigation Trustee, shall, from time to time, (i) execute and deliver or cause to be executed and delivered any such documents (in recordable form where necessary or appropriate) and (ii) take or cause to be taken such further commercially reasonable action, in each case as the Freedom HoldCo Debtor Litigation Trustee may reasonably deem necessary or appropriate, to vest in the Freedom HoldCo Litigation Trust or confirm to the

Freedom HoldCo Debtor Litigation Trustee title to and possession of the Freedom HoldCo Debtor Litigation Trust Assets. The Freedom HoldCo Debtor Litigation Trustee shall have no duty to arrange for any of the transfers of any Freedom HoldCo Debtor Litigation Trust Assets contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and/or the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers. Under no circumstance shall the Debtors, the Freedom HoldCo Debtors, the Reorganized Debtors (including, for the avoidance of doubt, the Post-Effective Date Freedom HoldCo Debtors), or any other party be required to contribute any additional assets to or for the benefit of the Freedom HoldCo Debtor Litigation Trust other than the Freedom HoldCo Debtor Litigation Trust Assets, except as otherwise set forth in the Plan.

2.3.2    <u>Title to Freedom HoldCo Debtor Litigation Trust Assets</u>. Pursuant to the Plan, all of the Freedom HoldCo Debtors' rights, title, and interest in and to the Freedom HoldCo Debtor Litigation Trust Assets, including all such assets held or controlled by third parties (if any), are hereby irrevocably transferred to, and automatically vested in, or deemed to be automatically vested in, the Freedom HoldCo Debtor Litigation Trust on the Effective Date and shall comprise assets of the Freedom HoldCo Debtor Litigation Trust for all purposes, free and clear of all Liens, Claims, encumbrances, Interests, contractually-imposed restrictions, and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Freedom HoldCo Debtor Litigation Trust Beneficiaries to establish the Freedom HoldCo Debtor Litigation Trust. The Freedom HoldCo Debtor Litigation Trust shall be authorized, among other things, to (i) obtain possession or control of, collect, receive, hold, administer, liquidate, and distribute all of the Freedom HoldCo Debtor Litigation Trust Assets in the possession or control of the Freedom HoldCo Debtors and/or third parties, (ii) investigate, pursue, prosecute, compromise, settle, and/or

otherwise resolve the Freedom HoldCo Debtor Litigation Trust Claims, which, for the avoidance of doubt, shall include any Claims or Causes of Action identified by the Freedom HoldCo Independent Director through the Freedom HoldCo Independent Investigation that were transferred to the Freedom HoldCo Debtor Litigation Trust on the Effective Date and not released or settled in accordance with the Plan and Confirmation Order, and (iii) other than as provided under the Plan, assert and/or exercise any and all rights, including, without limitation, setoff and recoupment, defenses, counterclaims, and cross-claims, whether arising at law or in equity, of the Freedom HoldCo Debtors, their Estates, or the Post-Effective Date Freedom HoldCo Debtors to any claims, Causes of Action, or counterclaims that may be asserted by (a) any and all Persons and/or Entities that are or may become defendants, sued, or a party in or the subject of any lawsuit, proceeding, or litigation in connection with the Freedom HoldCo Debtor Litigation Trust Claims or (b) the Holders of Disputed Freedom HoldCo Debtor Trust Claims.  Without limiting the generality of the foregoing, the Freedom HoldCo Debtor Litigation Trust shall have the right to (i) invoke section 542 of the Bankruptcy Code to p`ursue turnover of Freedom HoldCo Debtor Litigation Trust Assets and (ii) enforce any of provisions of the Plan and/or Confirmation Order against any Persons or Entities that seek or seeks to interfere with the administration of the Freedom HoldCo Debtor Litigation Trust and/or the Freedom HoldCo Debtor Litigation Trust Assets.  On the Effective Date, the Freedom HoldCo Debtor Litigation Trust, acting by and through the Freedom HoldCo Debtor Litigation Trustee, shall be substituted for the Freedom Holdco Debtors for all purposes with respect to the Freedom HoldCo Debtor Litigation Trust Assets and the administration of the Freedom HoldCo Debtor Litigation Trust Units.  To the extent any law or regulation prohibits the transfer of ownership of any of the Freedom HoldCo Debtor Litigation Trust Assets from the Freedom HoldCo Debtors to the Freedom HoldCo Debtor

Litigation Trust and such law is not superseded by the Bankruptcy Code, the Freedom HoldCo Debtor Litigation Trust's interest in such Freedom HoldCo Debtor Litigation Trust Assets shall be a Lien upon, and security interest in, such Freedom HoldCo Debtor Litigation Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2 of this Agreement, and this Agreement shall be deemed a security agreement granting such Lien upon, and interest therein, without need to file any financing statement(s), mortgage(s), or other documentation evincing such Lien and security interest.  By executing this Agreement, the Freedom HoldCo Debtor Litigation Trustee on behalf of the Freedom HoldCo Debtor Litigation Trust hereby accepts all of such property and Liens (if any) as Freedom HoldCo Debtor Litigation Trust Assets, to be held in trust for the Freedom HoldCo Debtor Litigation Trust Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4     Capacity of Freedom HoldCo Debtor Litigation Trust.  Notwithstanding any state or federal law to the contrary or anything herein, the Freedom HoldCo Debtor Litigation Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Freedom HoldCo Debtor Litigation Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5     Cooperation.  The Post-Effective Date Freedom HoldCo Debtors shall use commercially reasonable efforts to cooperate with the Freedom HoldCo Debtor Litigation Trust and the Freedom HoldCo Debtor Litigation Trustee and any professionals retained by the Freedom HoldCo Debtor Litigation Trust in effecting the transition from the Freedom HoldCo Debtors or the Post-Effective Date Freedom HoldCo Debtors, as applicable, to the Freedom HoldCo Debtor

Litigation Trust, of the administration of the Freedom HoldCo Debtor Litigation Trust Assets; *provided* that neither the Freedom HoldCo Debtors nor the Post-Effective Date Freedom HoldCo Debtors shall be required to incur any liability for any fees or expenses (including any indemnification obligations) that may result from any such cooperation.  Such cooperation shall include, but not be limited to, using commercially reasonable efforts to identify (i) any evidence and information the Freedom HoldCo Debtor Litigation Trustee reasonably requests in connection with the Freedom HoldCo Debtor Litigation Trust's investigation, prosecution, other pursuit, or defense, as applicable, of the Freedom HoldCo Debtor Litigation Trust Claims and objections to Disputed Freedom HoldCo Debtor Trust Claims, to the extent the Post-Effective Date Freedom HoldCo Debtors have such evidence and/or information, and (ii) former employees and Professionals of the Freedom HoldCo Debtors and current officers and directors of the Post-Effective Date Freedom HoldCo Debtors (in each case, by providing contact information if available through commercially reasonable efforts) with knowledge regarding the Freedom HoldCo Debtor Litigation Trust Claims or Disputed Freedom HoldCo Debtor Trust Claims.  The Freedom HoldCo Debtors or the Post-Effective Date Freedom HoldCo Debtors (or their respective Professionals), as applicable, shall arrange for the Freedom HoldCo Debtor Litigation Trustee to receive (i) an updated Claims Register of Freedom HoldCo General Unsecured Claims from the Claims Agent within thirty (30) days after the Effective Date and (ii) a register of Holders of any Allowed Prepetition HoldCo Loan Claims.

2.6    <u>Duties of the Debtors and the Reorganized Debtors</u>.   The Debtors and the Reorganized Debtors (including, for the avoidance of doubt, the Post-Effective Date Freedom HoldCo Debtors) shall have no responsibility or obligation with respect to the Freedom HoldCo

Debtor Litigation Trust or Freedom HoldCo Debtor Litigation Trust Assets after the Effective Date, other than to comply with Sections 2.3 and 2.5 of this Agreement.

2.7     <u>No Retention of Excess Cash</u>.  Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Freedom HoldCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trustee retain Cash in excess of a reasonable amount to meet Claims, expenses, and contingent liabilities or to maintain the value of the Freedom HoldCo Debtor Litigation Trust Assets during liquidation other than reserves established pursuant to Article III and/or Section 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes and not otherwise required to be distributed to the Freedom HoldCo Debtor Litigation Trust Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.8     <u>Acceptance by Freedom HoldCo Debtor Litigation Trustee</u>.  The Freedom HoldCo Debtor Litigation Trustee accepts its appointment as Freedom HoldCo Debtor Litigation Trustee of the Freedom HoldCo Debtor Litigation Trust.

## **ARTICLE III**

## **ADMINISTRATION OF FREEDOM HOLDCO DEBTOR LITIGATION TRUST**

3.1     <u>Rights, Powers, and Privileges of Freedom HoldCo Debtor Litigation Trustee Generally</u>.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the Effective Date, the Freedom HoldCo Debtor Litigation Trustee, on behalf of the Freedom HoldCo Debtor Litigation Trust, may control and exercise authority and dominion over the Freedom HoldCo Debtor Litigation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Freedom HoldCo Debtor Litigation Trust in accordance with the Plan and this Agreement.  In administering the

Freedom HoldCo Debtor Litigation Trust Assets, the Freedom HoldCo Debtor Litigation Trustee shall, among other things, in an expeditious but commercially reasonable manner, (i) liquidate and convert to Cash the Freedom HoldCo Debtor Litigation Trust Assets, (ii) make timely distributions in accordance with this Agreement and the Plan, and (iii) exercise reasonable business judgment and not unduly prolong the Freedom HoldCo Debtor Litigation Trust's duration. Notwithstanding anything in the Plan or this Agreement to the contrary, the Freedom HoldCo Debtor Litigation Trustee shall always act consistently with, and not contrary to, the purpose of the Freedom HoldCo Debtor Litigation Trust as set forth in this Agreement and the Plan.

3.2    Power to Contract.  In furtherance of the purpose of the Freedom HoldCo Debtor Litigation Trust, and except as otherwise specifically restricted in the Plan, the Confirmation Order, or this Agreement, the Freedom HoldCo Debtor Litigation Trustee shall have the right and power on behalf of the Freedom HoldCo Debtor Litigation Trust and also may cause the Freedom HoldCo Debtor Litigation Trust to enter into any covenants or agreements binding the Freedom HoldCo Debtor Litigation Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Freedom HoldCo Debtor Litigation Trustee to be consistent with, and advisable in, furthering the purpose of the Freedom HoldCo Debtor Litigation Trust, including, without limitation, with respect to the Freedom HoldCo Debtor Litigation Trust Claims.

3.3    Ultimate Right to Act Based on Advice of Counsel or Other Professionals.  Nothing in this Agreement shall be deemed to prevent the Freedom HoldCo Debtor Litigation Trustee from taking or refraining to take any action on behalf of the Freedom HoldCo Debtor Litigation Trust that, based upon the advice of counsel or other professionals, the Freedom HoldCo Debtor Litigation Trustee determines it is obligated to take or to refrain from taking in the performance of

any duty that the Freedom HoldCo Debtor Litigation Trustee may owe the Freedom HoldCo Debtor Litigation Trust Beneficiaries or any other Person under the Plan, the Confirmation Order, or this Agreement.

3.4     Powers of Freedom HoldCo Debtor Litigation Trustee.  In addition to the powers granted in the Plan and the Confirmation Order, and those powers set forth herein, at the sole cost and expense of the Freedom HoldCo Debtor Litigation Trust, the Freedom HoldCo Debtor Litigation Trustee shall have the power to take the following actions on behalf of the Freedom HoldCo Debtor Litigation Trust and any powers reasonably incidental thereto that the Freedom HoldCo Debtor Litigation Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Freedom HoldCo Debtor Litigation Trust, unless otherwise specifically limited or restricted by the Plan, Confirmation Order, or this Agreement:

3.4.1     hold legal title to the Freedom HoldCo Debtor Litigation Trust Assets and to any and all rights of the Freedom HoldCo Debtors (including as Post-Effective Date Freedom HoldCo Debtors) and the Freedom HoldCo Debtor Litigation Trust Beneficiaries in or arising from the Freedom HoldCo Debtor Litigation Trust Assets;

3.4.2     receive, maintain, conserve, supervise, prosecute, collect, settle, manage, adjust, invest, protect, enforce, and, where appropriate, cause the Freedom HoldCo Debtor Litigation Trust to abandon the Freedom HoldCo Debtor Litigation Trust Assets, including causing the Freedom HoldCo Debtor Litigation Trust to invest any monies held as Freedom HoldCo Debtor Litigation Trust Assets in accordance with the terms of Section 3.10 hereof;

3.4.3     cause the Freedom HoldCo Debtor Litigation Trust to investigate, pursue, litigate, and/or settle the Freedom HoldCo Debtor Litigation Trust Claims;

3.4.4    open and maintain bank accounts or any other accounts on behalf of, or in the name of, the Freedom HoldCo Debtor Litigation Trust;

3.4.5    cause the Freedom HoldCo Debtor Litigation Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.4.6    receive, collect, hold, administer, and liquidate any and all of the Freedom HoldCo Debtor Litigation Trust Assets, including, without limitation, the sale of any Freedom HoldCo Debtor Litigation Trust Assets;

3.4.7    protect and enforce the rights to the Freedom HoldCo Debtor Litigation Trust Assets (including, without limitation, the Freedom HoldCo Debtor Litigation Trust Claims) vested in the Freedom HoldCo Debtor Litigation Trust and the Freedom HoldCo Debtor Litigation Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.4.8    investigate any potential Freedom HoldCo Debtor Litigation Trust Claims and cause the Freedom HoldCo Debtor Litigation Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 in relation to the Freedom HoldCo Debtor Litigation Trust Claims;

3.4.9    investigate any Freedom HoldCo Debtor Litigation Trust Claims and review, reconcile, compromise, settle or object to Freedom HoldCo Debtor Trust Claims in accordance with the Plan and Confirmation Order, and cause the Freedom HoldCo Debtor Litigation Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 in relation to the Freedom HoldCo Debtor Litigation Trust Claims; *provided*, *however*, that the Freedom HoldCo Debtor Litigation Trust shall not be permitted to seek relief

under Bankruptcy Rule 2004 as against (i) the Freedom HoldCo Debtors or the Post-Effective Date Freedom HoldCo Debtors, (ii) any current employees, officers, or directors of the Post-Effective Date Freedom HoldCo Debtors, (iii) the DIP Agent and the DIP Lenders, and (iv) the Ad Hoc First Lien Group;

3.4.10 cause the Freedom HoldCo Debtor Litigation Trust to employ or retain professionals, including without limitation, a distribution agent, and other agents, attorneys, financial advisors, independent contractors, and third parties pursuant to this Agreement and pay the reasonable compensation thereof as Freedom HoldCo Debtor Litigation Trust Expenses, solely out of the Freedom HoldCo Debtor Litigation Trust Assets;

3.4.11 cause the Freedom HoldCo Debtor Litigation Trust to pay all of its lawful expenses, debts, charges, taxes, and other liabilities, and make all other payments relating to the Freedom HoldCo Debtor Litigation Trust Assets as Freedom HoldCo Debtor Litigation Trust Expenses, solely out of the Freedom HoldCo Debtor Litigation Trust Assets;

3.4.12 cause the Freedom HoldCo Debtor Litigation Trust to review, reconcile, investigate, pursue, prosecute, enforce, collect, compromise, settle, abandon, or elect not to pursue all Disputed Freedom HoldCo Debtor Trust Claims;

3.4.13 calculate, authorize, and make all distributions to the Holders of Allowed Freedom HoldCo Debtor Trust Claims as provided for in, or contemplated by, the Plan and this Agreement;

3.4.14 establish, adjust, and maintain a Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve;

3.4.15 cause the Freedom HoldCo Debtor Litigation Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge

17

that the Freedom HoldCo Debtor Litigation Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.4.16 in reliance upon the Debtors' Schedules and the official Claims Register maintained in the Chapter 11 Cases, review, and, where appropriate, cause the Freedom HoldCo Debtor Litigation Trust to Allow or object to, Freedom HoldCo Debtor Trust Claims, and supervise and administer the Freedom HoldCo Debtor Litigation Trust's commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to the Disputed Freedom HoldCo Debtor Trust Claims required to be administered by the Freedom HoldCo Debtor Litigation Trust in accordance with the Plan;

3.4.17 in reliance upon the Debtors' Schedules and the Claims Register maintained in the Chapter 11 Cases, maintain a register evidencing the Freedom HoldCo Debtor Litigation Trust Units held by each Freedom HoldCo Debtor Litigation Trust Beneficiary and, in accordance with Section 3.11 of this Agreement, such register may be the official Claims Register maintained in the Chapter 11 Cases to the extent of any Freedom HoldCo General Unsecured Claims as reflected thereon;

3.4.18 without limitation of, and as set forth in Section 3.4.14 of this Agreement, cause the Freedom HoldCo Debtor Litigation Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Freedom HoldCo Debtor Litigation Trust, and file tax returns for the Freedom HoldCo Debtor Litigation Trust as a grantor trust under Internal Revenue Code section 671 and Treasury Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof (subject to the treatment of any portion of the Freedom HoldCo Debtor Litigation Trust as a DOF

or other separate entity), and pay taxes, if any, payable for and on behalf of the Freedom HoldCo Debtor Litigation Trust, *provided*, *however*, neither the Freedom HoldCo Debtor Litigation Trust nor the Freedom HoldCo Debtor Litigation Trustee shall have any responsibility or liability in any capacity whatsoever for the filing of Debtors' income tax returns for any period either prior to or after the Effective Date;

3.4.19  cause the Freedom HoldCo Debtor Litigation Trust to abandon or donate to a charitable organization that qualifies for non-profit status under Internal Revenue Code section 501(c)(3) any Freedom HoldCo Debtor Litigation Trust Assets that the Freedom HoldCo Debtor Litigation Trustee, determines to be too impractical to distribute to the Freedom HoldCo Debtor Litigation Trust Beneficiaries or of inconsequential value to the Freedom HoldCo Debtor Litigation Trust and the Freedom HoldCo Debtor Litigation Trust Beneficiaries;

3.4.20  cause the Freedom HoldCo Debtor Litigation Trust to send annually to Freedom HoldCo Debtor Litigation Trust Beneficiaries, in accordance with the applicable tax laws, a separate statement stating a Freedom HoldCo Debtor Litigation Trust Beneficiary's interest in the Freedom HoldCo Debtor Litigation Trust and its share of the Freedom HoldCo Debtor Litigation Trust's income, gain, loss, deduction, or credit, and to instruct all such Freedom HoldCo Debtor Litigation Trust Beneficiaries to report such items on their United States federal tax returns, as applicable;

3.4.21  cause the Freedom HoldCo Debtor Litigation Trust to seek a determination of tax liability or refund of the Freedom HoldCo Debtor Litigation Trust (including any Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve treated as a DOF (if elected) or other separate entity) under section 505 of the Bankruptcy Code;

3.4.22 cause the Freedom HoldCo Debtor Litigation Trust to establish such reserves for taxes, assessments and other Freedom HoldCo Debtor Litigation Trust Expenses as may be necessary and appropriate for the proper operation of matters incident to the Freedom HoldCo Debtor Litigation Trust;

3.4.23 cause the Freedom HoldCo Debtor Litigation Trust to purchase and carry all insurance policies that the Freedom HoldCo Debtor Litigation Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.4.24 undertake all administrative functions of the Freedom HoldCo Debtor Litigation Trust, including overseeing the winding down and termination of the Freedom HoldCo Debtor Litigation Trust;

3.4.25 exercise, implement, enforce, and discharge all of the applicable and relevant terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.4.26 take all other actions consistent with this Agreement, the Plan, and the Confirmation Order, that the Freedom HoldCo Debtor Litigation Trustee deems reasonably necessary or desirable to administer the Freedom HoldCo Debtor Litigation Trust.

3.4.27 Notwithstanding anything to the contrary herein, the Freedom HoldCo Debtor Litigation Trustee shall not invest any Freedom HoldCo Debtor Litigation Trust Assets, proceeds thereof, or any income earned by the Freedom HoldCo Debtor Litigation Trust unless such investment is permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684.  The Freedom HoldCo Debtor Litigation Trustee shall not be liable for interest

or obligated to produce income on any moneys received by the Freedom HoldCo Debtor Litigation

Trust hereunder and held for distribution or payment, except as such interest or other income shall

actually be received by the Freedom HoldCo Debtor Litigation Trustee.

3.5     <u>Authority to Pursue the Freedom HoldCo Debtor Litigation Trust Claims</u>.    The

Freedom HoldCo Debtor Litigation Trust shall have the right, power, and interest to investigate,

review, pursue, reconcile, prosecute, enforce, collect, compromise, settle, or elect not to pursue the

Freedom HoldCo Debtor Litigation Trust Claims, which are set forth in Section 7.11 of the Plan.

Except as otherwise provided in the Plan or the Confirmation Order, the Freedom HoldCo Debtor

Litigation Trust shall be vested with, and shall be entitled to assert all setoffs, cross-claims,

defenses, and Causes of Action, whether arising at law or in equity, of the Freedom HoldCo

Debtors or the Freedom HoldCo Debtor Litigation Trust to any counterclaims that may be asserted

by any defendant with respect to the Freedom HoldCo Debtor Litigation Trust Claims.    The

Freedom HoldCo Debtor Litigation Trust, acting by and through the Freedom HoldCo Debtor

Litigation Trustee, shall be the sole representative of the Freedom HoldCo's Debtors' Estates

under section 1123(b)(3) of the Bankruptcy Code with respect to the Freedom HoldCo Debtor

Litigation Trust Claims.

3.5.1    Except as expressly stated otherwise below, the Freedom HoldCo Debtor

Litigation Trust shall stand in the same position as the Freedom HoldCo Debtors and their Estates

(solely with regard to the Freedom HoldCo Debtor Litigation Trust Claims) as to all evidentiary

privileges of any type or nature whatsoever, including attorney-client privilege, the work product

privilege or doctrine, any other privilege or immunity attaching to any documents or

communications in any form, including electronic data hosted on remote servers, and any other

applicable evidentiary privileges of each of the foregoing (collectively, the "<u>Privileges</u>"), and shall

21

succeed to all of the rights of the Freedom HoldCo Debtors and their Estates (solely with regard to the Freedom HoldCo Debtor Litigation Trust Claims) to preserve or assert any such Privileges, and shall be deemed to be the assignee by each Freedom HoldCo Debtor and its respective Estate (solely with regard to the Freedom HoldCo Debtor Litigation Trust Claims) of each such Privilege; *provided* that the Freedom HoldCo Debtor Litigation Trust may not intentionally waive any Privileges in respect of records, documents, or information related to the Freedom HoldCo Debtor Litigation Trust Assets without the written consent of the Post-Effective Date Freedom HoldCo Debtors.

3.5.2    Notwithstanding the Freedom HoldCo Debtors or Post-Effective Date Freedom HoldCo Debtors providing any privileged information to the Freedom HoldCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trustee, such privileged information shall be without waiver in recognition of the joint and/or successor interest in investigating and prosecuting the Freedom HoldCo Debtor Litigation Trust Claims and shall remain privileged.

3.6    <u>Conflicting Litigation Claims</u>.  The Bankruptcy Court shall retain jurisdiction to resolve any conflict that may arise between the Freedom HoldCo Debtor Litigation Trust and the OpCo Litigation Trust, including with respect to each of their respective rights to pursue any Cause of Action and whether any such Cause of Action constitutes OpCo Litigation Claim or Freedom HoldCo Debtor Litigation Trust Claim.

3.7    <u>Abandonment</u>.  Notwithstanding the foregoing, if, in the Freedom HoldCo Debtor Litigation Trustee's reasonable judgment, any Freedom HoldCo Debtor Litigation Trust Asset cannot be monetized or resolved in a commercially reasonable manner or the Freedom HoldCo Debtor Litigation Trustee believes in good faith that such property has inconsequential value to the Freedom HoldCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trust

Beneficiaries, the Freedom HoldCo Debtor Litigation Trustee shall have the right to cause the Freedom HoldCo Debtor Litigation Trust to abandon or otherwise dispose of such property, including by donation of such property to a qualified Internal Revenue Code section 501(c)(3) charitable organization.

3.8     Responsibility for Administration of Claims.  From and after the Effective Date, the Freedom HoldCo Debtor Litigation Trust shall become responsible for administering and paying distributions to Holders of Allowed Freedom HoldCo Debtor Trust Claims.  Subject to the Plan and the Confirmation Order, the Freedom HoldCo Debtor Litigation Trust, acting by and through the Freedom HoldCo Debtor Litigation Trustee, shall have the exclusive right after the Effective Date to object to the allowance of any Freedom HoldCo Debtor Trust Claims on any ground, to file, withdraw, or litigate to judgment objections to such Claims, to settle or compromise any Disputed Freedom HoldCo Debtor Trust Claims without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Freedom HoldCo Debtors and their Estates, if applicable.  Except as set forth herein or in the Plan, the Freedom HoldCo Debtor Litigation Trust, acting by and through the Freedom HoldCo Debtor Litigation Trustee, shall also be entitled to assert all of the Freedom HoldCo Debtors' and their Estates' rights under, without limitation, section 558 of the Bankruptcy Code, and may seek estimation of any Freedom HoldCo Debtor Trust Claims under and subject to section 502(c) of the Bankruptcy Code.

3.9     Agents and Professionals.  The Freedom HoldCo Debtor Litigation Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Freedom HoldCo Debtor Litigation Trustee believes have qualifications necessary to assist in the administration of the Freedom HoldCo Debtor Litigation Trust, including professionals previously retained by the Debtors or the Creditors' Committee.  For

the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Freedom HoldCo Debtor Litigation Trustee from engaging counsel or other professionals, including the Freedom HoldCo Debtor Litigation Trustee itself or the Freedom HoldCo Debtor Litigation Trustee's firm or their affiliates, to do work for the Freedom HoldCo Debtor Litigation Trust.  The Freedom HoldCo Debtor Litigation Trustee shall pay the reasonable salaries, fees, and/or expenses of such Persons out of the Freedom HoldCo Debtor Litigation Trust Assets in the ordinary course of business as Freedom HoldCo Debtor Litigation Trust Expenses without the need for Bankruptcy Court approval.

3.10    Safekeeping and Investment of the Freedom HoldCo Debtor Litigation Trust Assets.  All monies and other assets received by the Freedom HoldCo Debtor Litigation Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Freedom HoldCo Debtor Litigation Trust Beneficiaries, but need not be segregated in separate accounts from other Freedom HoldCo Debtor Litigation Trust Assets, unless and to the extent required by law or the Plan.  Except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of its fiduciary duties expressly preserved herein, neither the Freedom HoldCo Debtor Litigation Trust nor the Freedom HoldCo Debtor Litigation Trustee shall have any liability for interest or producing income on any monies received by them and held for distribution on account of applicable Allowed Freedom HoldCo Debtor Trust Claims or payment to the Freedom HoldCo Debtor Litigation Trust Beneficiaries except as such interest shall actually be received by the Freedom HoldCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trustee, which shall be distributed as provided herein and in the Plan.  Except as otherwise provided by the Plan, the powers of the Freedom HoldCo Debtor Litigation Trustee to invest any monies held by the Freedom HoldCo Debtor Litigation Trust, other than those powers

reasonably necessary to maintain the value of the assets and to further the Freedom HoldCo Debtor Litigation Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills or money market funds that invest exclusively in United States Treasury bills and United States Treasury notes; *provided*, *however*, that the scope of permissible investments shall be limited to include only those investments that a "liquidating trust," within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, Internal Revenue Service pronouncements, or otherwise. For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Freedom HoldCo Debtor Litigation Trustee shall not be prohibited from engaging in any trade or business on its own account, *provided that* such activity does not interfere or conflict with the Freedom HoldCo Debtor Litigation Trustee's administration of the Freedom HoldCo Debtor Litigation Trust (including the Freedom HoldCo Debtor Litigation Trust's status as a "liquidating trust" for tax purposes).

3.11    <u>Maintenance and Disposition of Freedom HoldCo Debtor Litigation Trust and Freedom HoldCo Debtor Records</u>.  The Freedom HoldCo Debtor Litigation Trustee shall maintain accurate records of the administration of the Freedom HoldCo Debtor Litigation Trust Assets, including receipts and disbursements and other activity of the Freedom HoldCo Debtor Litigation Trust.  The Freedom HoldCo Debtor Litigation Trust may (at its sole cost and expense), but has no obligation to, engage a claims agent (including, but not limited to, the Debtors' Claims Agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases

throughout the administration of the Freedom HoldCo Debtor Litigation Trust.  To the extent of

any Freedom HoldCo Debtor Trust Claims reflected thereon, the Claims Register may serve as the

Freedom HoldCo Debtor Litigation Trustee's register of Freedom HoldCo Debtor Litigation Trust

Units held by Freedom HoldCo Debtor Litigation Trust Beneficiaries.  The books and records

maintained by the Freedom HoldCo Debtor Litigation Trustee and any records of the Debtors

transferred to the Freedom HoldCo Debtor Litigation Trust may be disposed of by the Freedom

HoldCo Debtor Litigation Trustee at the later of (i) such time as the Freedom HoldCo Debtor

Litigation Trustee determines that the continued possession or maintenance of such books and

records is no longer necessary for the benefit of the Freedom HoldCo Debtor Litigation Trust or

the Freedom HoldCo Debtor Litigation Trust Beneficiaries and (ii) upon the termination and

completion of the winding down or dissolution of the Freedom HoldCo Debtor Litigation Trust.

3.12    Reporting Requirements.  The Freedom HoldCo Debtor Litigation Trustee shall

provide the Reorganized Debtors (including, for the avoidance of doubt, the Post-Effective Date

Freedom HoldCo Debtors), the U.S. Trustee, and the Bankruptcy Court the information and reports

they may reasonably request concerning the administration of the Freedom HoldCo Debtor

Litigation Trust.

3.13    No Bond Required; Procurement of Insurance.  Notwithstanding any state or other

applicable law to the contrary, the Freedom HoldCo Debtor Litigation Trustee (including any

successor Freedom HoldCo Debtor Litigation Trustee) shall be exempt from giving any bond or

other security in any jurisdiction and shall serve hereunder without bond.  The Freedom HoldCo

Debtor Litigation Trustee is hereby authorized, but not required, to obtain all reasonable insurance

coverage for itself, its agents, representatives, employees, or independent contractors, including,

without limitation, coverage with respect to the liabilities, duties, and obligations of the Freedom

HoldCo Debtor Litigation Trustee and its agents, representatives, employees, or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Freedom HoldCo Debtor Litigation Trust, constitute Freedom HoldCo Debtor Litigation Trust Expenses, and be paid out of the Freedom HoldCo Debtor Litigation Trust Assets.

      3.14   <u>Fiduciary and Other Duties.</u>  Notwithstanding anything in the Plan or this Agreement to the contrary, the Freedom HoldCo Debtor Litigation Trustee shall always act in the best interests of the Freedom HoldCo Debtor Litigation Trust Beneficiaries and in furtherance of the purpose of the Freedom HoldCo Debtor Litigation Trust as described herein and as set forth in the Plan.  The Freedom HoldCo Debtor Litigation Trustee shall have fiduciary duties to the Freedom HoldCo Debtor Litigation Trust Beneficiaries consistent with the fiduciary duties that a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code has to the creditor constituents represented by such committee and shall exercise his, her, or its responsibilities accordingly.  Except for obligations expressly imposed on the Freedom HoldCo Debtor Litigation Trustee by this Agreement, to the extent that, at law or in equity, the Freedom HoldCo Debtor Litigation Trustee has duties (including fiduciary duties, other than any fiduciary duties expressly preserved herein) to the Freedom HoldCo Debtor Litigation Trust Beneficiaries or to any other person that is a party to or is otherwise bound by this Agreement, such duties are hereby eliminated by this Agreement to the fullest extent permitted by applicable law; *provided*, *however*, that this Agreement does not eliminate the implied contractual covenant of good faith and fair dealing.

## **ARTICLE IV**

### **DISTRIBUTIONS**

4.1    <u>Distribution and Reserve of Freedom HoldCo Debtor Litigation Trust Assets</u>. Following the transfer of the Freedom HoldCo Debtor Litigation Trust Assets to the Freedom HoldCo Debtor Litigation Trust, the Freedom HoldCo Debtor Litigation Trustee shall make continuing efforts on behalf of the Freedom HoldCo Debtor Litigation Trust to collect, liquidate, and distribute all Freedom HoldCo Debtor Litigation Trust Assets, subject to the reserves deemed necessary by the Freedom HoldCo Debtor Litigation Trustee pursuant to this Agreement, in accordance with the Plan.

4.1.1    <u>Distributions</u>.  The Freedom HoldCo Debtor Litigation Trustee shall make distributions only in accordance with the terms of the Plan, the Confirmation Order, and this Agreement to Holders of Allowed Freedom HoldCo Debtor Trust Claims to the extent of the Freedom HoldCo Debtor Litigation Trust Net Assets.  The Freedom HoldCo Debtor Litigation Trustee shall cause the Freedom HoldCo Debtor Litigation Trust to make distributions, at least annually, to the Freedom HoldCo Debtor Litigation Trust Beneficiaries, except the Freedom HoldCo Debtor Litigation Trust may retain an amount of net income and other Freedom HoldCo Debtor Litigation Trust Assets that is reasonably necessary to meet contingent liabilities, to maintain the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve, and to maintain the value of the Freedom HoldCo Debtor Litigation Trust Assets pending their liquidation during the term of the Freedom HoldCo Debtor Litigation Trust or that are determined to be necessary to pay or be reserved for reasonably incurred or anticipated expenses or claims of the Freedom HoldCo Debtor Litigation Trust and the Freedom HoldCo Debtor Litigation Trustee, including, but not limited to, the Freedom HoldCo Debtor Litigation Trust Expenses, and retention of such

28

amount may preclude distributions to Freedom HoldCo Debtor Litigation Trust Beneficiaries, all in accordance with the terms of the Plan and this Agreement.  The Freedom HoldCo Debtor Litigation Trust may engage disbursing agents and other Persons as reasonably necessary to assist in making such distributions.

      4.1.2    <u>Reserves; Pooling of Reserved Funds</u>.  Before any distribution can be made, the Freedom HoldCo Debtor Litigation Trustee shall, in its reasonable discretion, establish, supplement, and maintain a reserve in an amount sufficient to meet any and all liabilities and Freedom HoldCo Debtor Litigation Trust Expenses, including attorneys' fees and expenses and the fees and expenses of other professionals.  In accordance with the Plan and Section 3.4.13 of this Agreement, the Freedom HoldCo Debtor Litigation Trust may also maintain as necessary one or more reserves (including the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve) with respect to the Freedom HoldCo Debtor Trust Claims required to be administered by the Freedom HoldCo Debtor Litigation Trust.  For the avoidance of doubt, subject to the Plan and Confirmation Order, the Freedom HoldCo Debtor Litigation Trustee may withhold any distribution pending the Freedom HoldCo Debtor Litigation Trust's determination of whether to object to any Freedom HoldCo Debtor Trust Claims.  Any such withheld distribution shall become part of a reserve with respect to Freedom HoldCo Debtor Trust Claims and shall be distributed to the appropriate Freedom HoldCo Debtor Litigation Trust Beneficiary no later than the first Distribution Record Date after a decision is made not to object to the pertinent Freedom HoldCo Debtor Trust Claim becomes Allowed.  The Freedom HoldCo Debtor Litigation Trustee need not maintain any of the Freedom HoldCo Debtor Litigation Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Freedom HoldCo Debtor Litigation Trust; *provided*, *however*, that the Freedom HoldCo Debtor Litigation

Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

      4.1.3   <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the distributions.  The Freedom HoldCo Debtor Litigation Trustee may sell or otherwise dispose of Freedom HoldCo Debtor Litigation Trust Assets in order to pay such costs.

      4.1.4   <u>Right to Rely on Professionals</u>.  Without limitation of the generality of Section 6.6 of this Agreement, in determining the amount of any distribution or reserves, the Freedom HoldCo Debtor Litigation Trustee may rely on, and shall be fully protected in relying on the advice and opinion of, the Freedom HoldCo Debtor Litigation Trust's attorneys, financial advisors, accountants, or other professionals.

      4.2   <u>Withholding from Distributions</u>.  The Freedom HoldCo Debtor Litigation Trustee, in its discretion, may cause the Freedom HoldCo Debtor Litigation Trust to deduct and withhold from amounts distributable from the Freedom HoldCo Debtor Litigation Trust to any Freedom HoldCo Debtor Litigation Trust Beneficiaries any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Freedom HoldCo Debtor Litigation Trust Beneficiary or the Freedom HoldCo Debtor Litigation Trust, including with respect to the amount to be distributed to such Freedom HoldCo Debtor Litigation Trust Beneficiary, any amounts received by, collections of, or earnings of the Freedom HoldCo Debtor Litigation Trust and any proceeds from the Freedom HoldCo Debtor Litigation Trust Assets.  The Freedom HoldCo Debtor Litigation Trustee shall determine such maximum amount to be withheld by the Freedom HoldCo Debtor Litigation Trust in its sole, reasonable discretion

and shall cause the Freedom HoldCo Debtor Litigation Trust to distribute to the Holder of such Allowed Freedom HoldCo Debtor Trust Claim any excess amount withheld. The Freedom HoldCo Debtor Litigation Trustee may, if necessary or appropriate to comply with applicable withholding requirements, withhold the entire distribution due to any Freedom HoldCo Debtor Litigation Trust Beneficiary until such Freedom HoldCo Debtor Litigation Trust Beneficiary provides the necessary information to comply with any withholding requirements of any governmental unit. All such amounts deducted or withheld and timely paid to the appropriate taxing authority shall be treated as amounts distributed to such Freedom HoldCo Debtor Litigation Trust Beneficiaries for all purposes of the Plan and this Agreement, to the extent permitted by applicable law.

4.3    <u>Internal Revenue Service Forms</u>. The Freedom HoldCo Debtor Litigation Trustee may require any Holder of a Freedom HoldCo Debtor Trust Claim to, and each such Holder shall, properly complete and execute the appropriate Internal Revenue Service Form W-8 (including any supporting documents) or Internal Revenue Service Form W-9, or such other documentation, as a prerequisite to receiving any distribution under the Plan or this Agreement. If a Holder of such Freedom HoldCo Debtor Trust Claim does not provide to the Freedom HoldCo Debtor Litigation Trustee within ninety (90) days of first written request with all documentation that in the Freedom HoldCo Debtor Litigation Trustee's reasonable business judgment is necessary to determine the tax withholding and reporting requirements for such Freedom HoldCo Debtor Trust Claim, then any current or future distribution on such Freedom HoldCo Debtor Trust Claim shall be deemed forfeited, the underlying Freedom HoldCo Debtor Trust Claim disallowed and expunged in its entirety and the funds shall in respect of such present and future distribution(s) shall revert to the Freedom HoldCo Debtor Litigation Trust for all purposes, including but not limited to,

redistribution to other Freedom HoldCo Debtor Litigation Trust Beneficiaries, in accordance with the terms of the Confirmation Order, the Plan, and Section 4.4 of this Agreement; *provided*, *however*, that no additional ninety (90) day period under Section 4.4 of this Agreement shall be required to pass before such distributions become unrestricted funds of the Freedom HoldCo Debtor Litigation Trust.

4.4     <u>Unclaimed and Undeliverable Distributions</u>.  Unclaimed property (including, but not limited to, uncashed checks), together with any distributions to Freedom HoldCo Debtor Litigation Trust Beneficiaries returned as undeliverable, shall be held by the Freedom HoldCo Debtor Litigation Trustee in an unclaimed property reserve (the "<u>Unclaimed Property Reserve</u>") for a period of ninety (90) days from the date of first issuance, and may be released by the Freedom HoldCo Debtor Litigation Trustee prior to the expiration of such time period if presentation of proper proof by such Freedom HoldCo Debtor Litigation Trust Beneficiary of its entitlement thereto is presented to the Freedom HoldCo Debtor Litigation Trustee.  After the expiration of the applicable time period set forth in this Section 4.4, all unclaimed property or interest in property otherwise payable to a Holder of an Allowed Freedom HoldCo Debtor Trust Claim or its successors shall revert to the Freedom HoldCo Debtor Litigation Trust for all purposes including, but not limited to, for redistribution in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  Upon such revesting, the Holder of an Allowed Freedom HoldCo Debtor Trust Claim or its successors with respect to such property shall be cancelled, released, discharged, and forever barred and the Allowed Freedom HoldCo Debtor Trust Claim of any other Holder to such property or interest in property shall be discharged and forever barred notwithstanding any applicable federal, state or provincial escheat, abandoned, or unclaimed

property laws, or any provisions in any document governing the distribution that is an unclaimed distribution to the contrary.

4.5     No Responsibility to Attempt to Locate Freedom HoldCo Debtor Litigation Trust Beneficiaries.   If a distribution is returned to the Freedom HoldCo Debtor Litigation Trust as undeliverable, or otherwise remains unclaimed, no further distribution shall be made to a Holder of an applicable Allowed Freedom HoldCo Debtor Trust Claim unless and until such Holder notifies the Freedom HoldCo Debtor Litigation Trustee of such Holder's then-current address and taxpayer identification number.  The Freedom HoldCo Debtor Litigation Trustee may, in its sole discretion, attempt to determine a Holder of an applicable Allowed Freedom HoldCo Debtor Trust Claim's current address or otherwise locate such Holder, but nothing in this Agreement or the Plan shall require the Freedom HoldCo Debtor Litigation Trustee to do so.

4.5.1    Inapplicability of Escheat, Abandoned or Unclaimed Property Laws. Unclaimed property held by the Freedom HoldCo Debtor Litigation Trust shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, or any state, provincial, or local governmental unit.

4.6     Request for Reissuance.  Distribution checks shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Distribution checks not cashed within such 90-day period shall be treated as unclaimed property that has been held in the Unclaimed Property Reserve as set forth above in Section 4.4.  Requests for reissuance of any check shall be made in writing directly to the Freedom HoldCo Debtor Litigation Trustee by the Holder of the applicable Allowed Freedom HoldCo Debtor Trust Claim that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Freedom HoldCo Debtor Litigation Trust

Assets under Section 4.4 of this Agreement.  The Holder of an applicable Allowed Freedom HoldCo Debtor Trust Claim shall bear all the risk that, and shall indemnify and hold the Freedom HoldCo Debtor Litigation Trust and the Freedom HoldCo Debtor Litigation Trustee harmless against any loss that may arise if, the Freedom HoldCo Debtor Litigation Trustee does not reissue a check promptly after receiving a request for its reissuance.

    4.7    <u>Conflicting Claims of Freedom HoldCo Debtor Litigation Trust Units</u>.  If any conflicting claims or demands are made or asserted with respect to the Freedom HoldCo Debtor Litigation Trust Unit of a Freedom HoldCo Debtor Litigation Trust Beneficiary, or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Freedom HoldCo Debtor Litigation Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

    4.7.1    The Freedom HoldCo Debtor Litigation Trustee may elect to cause the Freedom HoldCo Debtor Litigation Trust to make no payment or distribution with respect to the Freedom HoldCo Debtor Litigation Trust Unit subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands in accordance with Article XIII of the Plan.  Except for any liability arising from the OpCo Litigation Trustee's breach of its fiduciary duties expressly preserved herein, neither the Freedom HoldCo Debtor Litigation Trust nor the Freedom HoldCo Debtor Litigation Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor

shall the Freedom HoldCo Debtor Litigation Trust or Freedom HoldCo Debtor Litigation Trustee be liable for interest on any funds which may be so withheld.

4.7.2    The Freedom HoldCo Debtor Litigation Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Freedom HoldCo Debtor Litigation Trustee, which agreement shall include a complete release of the Freedom HoldCo Debtor Litigation Trust and Freedom HoldCo Debtor Litigation Trustee.  Until the Freedom HoldCo Debtor Litigation Trustee receives written notice that one of the conditions of the preceding sentence is met, the Freedom HoldCo Debtor Litigation Trustee may deem and treat as the absolute owner under this Agreement of the Freedom HoldCo Debtor Litigation Trust Unit in the Freedom HoldCo Debtor Litigation Trust the Freedom HoldCo Debtor Litigation Trust Beneficiary identified as the owner of that interest in the books and records maintained by the Freedom HoldCo Debtor Litigation Trustee.  The Freedom HoldCo Debtor Litigation Trustee may deem and treat such Freedom HoldCo Debtor Litigation Trust Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.8    <u>Limitation on Liability</u>.  Except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of its fiduciary duties expressly preserved herein, in acting or refraining from acting under and in accordance with this the Agreement, the Freedom HoldCo Debtor Litigation Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.9    <u>Priority of Expenses of Freedom HoldCo Debtor Litigation Trust</u>.  The Freedom

HoldCo Debtor Litigation Trust shall pay or reserve for all necessary Freedom HoldCo Debtor Litigation Trust Expenses before making any distributions, including but not limited to, any distribution to Freedom HoldCo Debtor Litigation Trust Beneficiaries.

4.10 <u>Minimum Distributions</u>.  If any distribution under the Plan to a Holder of an Allowed Freedom HoldCo Debtor Trust Claim would be less than $250.00, the Freedom HoldCo Debtor Litigation Trust may hold such distribution until the time of a subsequent or final distribution.  If the final distribution under the Plan to a Holder of an Allowed Freedom HoldCo Debtor Trust Claim would be less than $250.00, the Freedom HoldCo Debtor Litigation Trust may cancel such distribution.  Any cancelled distributions pursuant to this Section 4.10 shall revert to the Freedom HoldCo Debtor Litigation Trust for all purposes, including distributions to other Holders of Allowed Freedom HoldCo Debtor Trust Claims.

4.11    Notwithstanding anything to the contrary contained herein, to the extent the Freedom HoldCo DIP Election is made, (a) any payment or distribution with respect to the Freedom HoldCo Debtor Litigation Trust Assets shall be made, (i) first, to the Holders of Allowed DIP Claims against the Freedom HoldCo Debtor Litigation Trust until such Allowed DIP Claims are paid in full, and (ii) second, to the Holders of Allowed Prepetition HoldCo Loan Claims and Freedom HoldCo General Unsecured Claims; and (b) so long as there are any Allowed DIP Claims against the Freedom Holdco Debtors outstanding, and unless and until all Allowed DIP Claims of the applicable Freedom HoldCo Debtor Litigation Trust Beneficiaries are indefeasibly paid in full in Cash, no distribution or payment of any Freedom HoldCo Debtor Litigation Trust Assets or any proceeds thereof shall be made in respect of any other HoldCo Debtor Litigation Trust Units or any Freedom HoldCo Debtor Litigation Trust Beneficiaries thereof.

## ARTICLE V

**FREEDOM HOLDCO DEBTOR LITIGATION TRUST BENEFICIARIES**

5.1 <u>Interest Beneficial Only</u>.  The ownership of a Freedom HoldCo Debtor Litigation Trust Unit shall not entitle any Freedom HoldCo Debtor Litigation Trust Beneficiary or the Debtors to any title in or to the Freedom HoldCo Debtor Litigation Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2 <u>Ownership of Freedom HoldCo Debtor Litigation Trust Beneficial Interests Hereunder</u>.  Each Freedom HoldCo Debtor Litigation Trust Beneficiary shall own a Freedom HoldCo Debtor Litigation Trust Unit herein which shall, subject to Article IV of this Agreement and the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan and hereunder.

5.3 <u>Evidence of Freedom HoldCo Debtor Litigation Trust Beneficial Interest</u>.  Ownership of a Freedom HoldCo Debtor Litigation Trust Unit in the Freedom HoldCo Debtor Litigation Trust Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Freedom HoldCo Debtor Litigation Trust by the Freedom HoldCo Debtor Litigation Trustee.

5.4 <u>No Right to Accounting</u>.  Except as otherwise provided in this Agreement, neither the Freedom HoldCo Debtor Litigation Trust Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Freedom HoldCo Debtor Litigation Trustee, and the Freedom HoldCo Debtor Litigation Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Freedom HoldCo Debtor Litigation Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Freedom HoldCo Debtor

Litigation Trust or as a condition for making any advance, payment, or distribution out of proceeds of Freedom HoldCo Debtor Litigation Trust Assets.

5.5    <u>No Standing</u>.  Except as expressly provided in this Agreement, a Freedom HoldCo Debtor Litigation Trust Beneficiary shall not have standing to direct or to seek to direct the Freedom HoldCo Debtor Litigation Trust or Freedom HoldCo Debtor Litigation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Freedom HoldCo Debtor Litigation Trust Assets; *provided*, *however*, that, for the avoidance of doubt, this Section 5.5 shall not prevent a Freedom HoldCo Debtor Litigation Trust Beneficiary from seeking any appropriate or necessary relief from the Bankruptcy Court.

5.6    <u>Requirement of Undertaking</u>.  The Freedom HoldCo Debtor Litigation Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Freedom HoldCo Debtor Litigation Trustee for any action taken or omitted by it as Freedom HoldCo Debtor Litigation Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this Section 5.6 shall not apply to any suit by the Freedom HoldCo Debtor Litigation Trust or Freedom HoldCo Debtor Litigation Trustee.

5.7    <u>Limitation on Transferability</u>.  It is understood and agreed that the Freedom HoldCo Debtor Litigation Trust Units shall be non-transferable and non-assignable during the term of this Agreement except if transferred by will, intestate succession, if required to be transferred as part of a liquidation or winding up of a holder, or otherwise by operation of Law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted

to the Freedom HoldCo Debtor Litigation Trustee, and the Freedom HoldCo Debtor Litigation Trustee may continue to cause the Freedom HoldCo Debtor Litigation Trust to pay all amounts to or for the benefit of the assigning Freedom HoldCo Debtor Litigation Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Freedom HoldCo Debtor Litigation Trustee may rely upon such proof without the requirement of any further investigation.

5.8     Exemption from Registration. The rights of the Freedom HoldCo Debtor Litigation Trust Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Freedom HoldCo Debtor Litigation Trust Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No Party to or beneficiary of this Agreement shall make a contrary or different contention.

5.9     Delivery of Distributions. Subject to the terms of this Agreement, the Freedom HoldCo Debtor Litigation Trustee shall cause the Freedom HoldCo Debtor Litigation Trust to make distributions to Freedom HoldCo Debtor Litigation Trust Beneficiaries in the manner provided in the Plan and in this Agreement.

5.10    Limited Liability. Except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of its fiduciary duties expressly preserved herein, no provision of this Agreement, the Plan, or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any Freedom HoldCo Debtor Litigation Trust Beneficiary, shall give rise to any liability of such Freedom HoldCo Debtor Litigation Trust Beneficiary solely in its capacity as

such, whether such liability is asserted by any Debtor, creditors, successors, representatives, employees, or Holders of Interests of any Debtor, or by any other person. Freedom HoldCo Debtor Litigation Trust Beneficiaries are deemed to receive the Freedom HoldCo Debtor Litigation Trust Assets in accordance with the provisions of this Agreement, the Plan, and the Confirmation Order in exchange for their Allowed Freedom HoldCo Debtor Trust Claims as set forth in the Plan without further obligation or liability of any kind, but subject to the provisions of this Agreement.

## ARTICLE VI

## THIRD-PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1    <u>Parties Dealing With the Freedom HoldCo Debtor Litigation Trustee</u>.    In the absence of actual knowledge to the contrary, any Person dealing with the Freedom HoldCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trustee shall be entitled to rely on the authority of the Freedom HoldCo Debtor Litigation Trustee or any of the Freedom HoldCo Debtor Litigation Trustee's agents to act in connection with the Freedom HoldCo Debtor Litigation Trust Assets. There is no obligation of any Person dealing with the Freedom HoldCo Debtor Litigation Trustee to inquire into the validity or expediency or propriety of any transaction by the Freedom HoldCo Debtor Litigation Trustee or any agent of the Freedom HoldCo Debtor Litigation Trustee.

6.2    <u>Limitation of Freedom HoldCo Debtor Litigation Trustee Liability</u>.    In exercising the rights granted herein, the Freedom HoldCo Debtor Litigation Trustee shall exercise the Freedom HoldCo Debtor Litigation Trustee's best judgment in accordance with its fiduciary duties, to the end that the affairs of the Freedom HoldCo Debtor Litigation Trust shall be properly managed and the interests of all of the Freedom HoldCo Debtor Litigation Trust Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of its fiduciary duties

expressly preserved herein, neither the Freedom HoldCo Debtor Litigation Trustee nor any of its respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, or disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order of the Bankruptcy Court to be the direct and primary cause of loss, liability, damage, or expense suffered by the Freedom HoldCo Debtor Litigation Trust.  Except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of its fiduciary duties expressly preserved herein, in no event shall the Freedom HoldCo Debtor Litigation Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including, but not limited to, lost profits) whatsoever, even if the Freedom HoldCo Debtor Litigation Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.  Without limiting the foregoing, the Freedom HoldCo Debtor Litigation Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the Freedom HoldCo Debtor Litigation Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

6.3     No Liability for Acts of Other Persons.  None of the Persons identified in the immediately preceding Section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section.

6.4     No Liability for Acts of Predecessors.  No successor Freedom HoldCo Debtor Litigation Trustee shall be in any way responsible for the acts or omissions of any Freedom HoldCo

Debtor Litigation Trustee in office prior to the date on which such successor becomes the Freedom HoldCo Debtor Litigation Trustee, unless a successor Freedom HoldCo Debtor Litigation Trustee expressly assumes such responsibility.

6.5    <u>No Liability for Good Faith Error of Judgment</u>.  Except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of its fiduciary duties expressly preserved herein, the Freedom HoldCo Debtor Litigation Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally and ultimately determined by a court of competent jurisdiction that the Freedom HoldCo Debtor Litigation Trustee was grossly negligent.

6.6    <u>Reliance by Freedom HoldCo Debtor Litigation Trustee on Documents and Advice of Counsel or Other Persons</u>.  Except as otherwise provided herein, the Freedom HoldCo Debtor Litigation Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties. The Freedom HoldCo Debtor Litigation Trustee also may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in good faith reliance upon the advice of such counsel, agents, or advisors to the extent permitted by law, except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of its fiduciary duties expressly preserved herein.

6.7    <u>No Liability For Acts Approved by Bankruptcy Court</u>.  The Freedom HoldCo Debtor Litigation Trustee shall have the right at any time to seek an order from the Bankruptcy Court concerning the administration or disposition of the Freedom HoldCo Debtor Litigation Trust, Freedom HoldCo Debtor Litigation Trust Claims, Prepetition HoldCo Loan Claims, Freedom HoldCo General Unsecured Claims, and Freedom HoldCo Debtor Litigation Trust Assets

required to be administered by the Freedom HoldCo Debtor Litigation Trust.  Following the entry

of any such order of the Bankruptcy Court, the Freedom HoldCo Debtor Litigation Trustee shall

not be liable for any act or omission expressly taken in accordance with, and not inconsistent with,

any such order, and all such actions or omissions shall be deemed not to constitute fraud, gross

negligence, or willful misconduct.

6.8     No Personal Obligation for Freedom HoldCo Debtor Litigation Trust Liabilities.

Except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of

its fiduciary duties expressly preserved herein, Persons dealing with the Freedom HoldCo Debtor

Litigation Trustee shall have recourse only to the Freedom HoldCo Debtor Litigation Trust Assets

to satisfy any liability incurred by the Freedom HoldCo Debtor Litigation Trustee to any such

Person in carrying out the terms of this Agreement, and the Freedom HoldCo Debtor Litigation

Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification.  The Freedom HoldCo Debtor Litigation Trustee and each of its

or the Freedom HoldCo Debtor Litigation Trust's respective accountants, agents, assigns,

attorneys, consultants, directors, employees, executors, financial advisors, transfer agents,

independent contractors, managers, members, officers, partners, predecessors, principals,

professional persons, the employees of the Freedom HoldCo Debtor Litigation Trust, and their

respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors,

representatives, affiliate, employer and successors and principals  (each, an "Indemnified Party")

shall be indemnified for, and defended and held harmless against, by the Freedom HoldCo Debtor

Litigation Trust solely from the Freedom HoldCo Debtor Litigation Trust Assets, for any losses,

liability, claims, damages, judgment, fine, penalty, claim, demand, settlement, cost, or expenses

occurring on or after the Effective Date (including reasonable attorneys' fees and expenses which

the Indemnified Party may incur in connection therewith) for any act or omission in their capacity as, or on behalf of, the Freedom HoldCo Debtor Litigation Trust or Freedom HoldCo Debtor Litigation Trustee in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Freedom HoldCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trust Beneficiaries, except if such loss, liability, or damage is determined by a Final Order of the Bankruptcy Court to have resulted from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting indemnification.  An act or omission taken by the Freedom HoldCo Debtor Litigation Trustee pursuant to Section 6.7 of this Agreement will be deemed not to constitute gross negligence, willful misconduct, or fraud.  The amounts necessary for the indemnification provided in this Section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this Section) shall be paid by the Freedom HoldCo Debtor Litigation Trustee out of the Freedom HoldCo Debtor Litigation Trust Assets; *provided*, *however*, that that the Freedom HoldCo Debtor Litigation Trust shall not be liable to indemnify any Indemnified Party for any act or omission arising out of such Indemnified Party's respective gross negligence, fraud, or willful misconduct as determined by a Final Order of the Bankruptcy Court.  The Indemnified Parties shall be entitled to obtain advances from the Freedom HoldCo Debtor Litigation Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such, except for any actions or omissions arising from their own respective willful misconduct, fraud, or gross negligence; *provided*, *however*, that the Indemnified Parties receiving such advances shall repay the amounts so advanced to the Freedom HoldCo Debtor

Litigation Trust immediately upon the entry of a final, non-appealable judgment or order finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section 6.9 of this Agreement.  Except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of its fiduciary duties expressly preserved herein, the Freedom HoldCo Debtor Litigation Trustee shall not be personally liable for the payment of any Freedom HoldCo Debtor Litigation Trust Expense or claim or other liability of the Freedom HoldCo Debtor Litigation Trust, and no Person shall look to the Freedom HoldCo Debtor Litigation Trustee personally for the payment of any such expense or liability.  Notwithstanding anything herein to the contrary, nothing contained in this Section 6.9 shall require any of the Debtors or the Reorganized Debtors, as applicable, to indemnify any Indemnified Persons pursuant to this Agreement.

6.9.1    Expense of Freedom HoldCo Debtor Litigation Trust; Limitation on Source of Payment of Indemnification.  All indemnification liabilities of the Freedom HoldCo Debtor Litigation Trust under this Section 6.9 shall be expenses of the Freedom HoldCo Debtor Litigation Trust and constitute Freedom HoldCo Debtor Litigation Trust Expenses.  The amounts necessary for such indemnification and reimbursement shall be paid by the Freedom HoldCo Debtor Litigation Trust out of the available Freedom HoldCo Debtor Litigation Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Freedom HoldCo Debtor Litigation Trust.  Except for any liability arising from the Freedom HoldCo Debtor Litigation Trustee's breach of its fiduciary duties expressly preserved herein, the Freedom HoldCo Debtor Litigation Trustee shall not be personally liable for the payment of any Freedom HoldCo Debtor Litigation Trust Expenses or claim or other liability of the Freedom HoldCo Debtor Litigation Trust, and no Person shall look to the Freedom HoldCo Debtor Litigation Trustee or other

Indemnified Parties personally for the payment of any such Freedom HoldCo Debtor Litigation Trust Expenses or liability, unless it is ultimately and finally determined by a court of competent jurisdiction that such payment was the result of fraud, gross negligence, or willful misconduct.

6.10    <u>Confirmation of Survival of Provisions</u>.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Freedom HoldCo Debtor Litigation Trustee or, as it relates to Section 6.9, an Indemnified Party, or the termination of the Freedom HoldCo Debtor Litigation Trust or this Agreement, and shall inure to the benefit of the Freedom HoldCo Debtor Litigation Trustee's and the Indemnified Party's(ies') heirs and assigns.

## ARTICLE VII

## TAX MATTERS

7.1    <u>Tax Treatment of Freedom HoldCo Debtor Litigation Trust</u>.  Pursuant to and in accordance with the Plan, for all United States federal income tax purposes, the Debtors, the Freedom HoldCo Debtor Litigation Trust Beneficiaries, the Freedom HoldCo Debtor Litigation Trustee, and the Freedom HoldCo Debtor Litigation Trust shall treat (i) the Freedom HoldCo Debtor Litigation Trust as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684 and, thus, as a "grantor trust" within the meaning of Internal Revenue Code sections 671 through 677 consistent with the terms of the Plan and (ii) the transfer of the Freedom HoldCo Debtor Litigation Trust Assets to the Freedom HoldCo Debtor Litigation Trust as (a) a transfer of the Freedom HoldCo Debtor Litigation Trust Assets by the Freedom HoldCo Debtors to the Freedom HoldCo Debtor Litigation Trust Beneficiaries in

satisfaction of their Allowed Freedom HoldCo Debtor Trust Claims (other than any Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve treated as a DOF (if elected) or other separate entity), followed by (b) a transfer of such Freedom HoldCo Debtor Litigation Trust Assets by such Freedom HoldCo Debtor Litigation Trust Beneficiaries to the Freedom HoldCo Debtor Litigation Trust in exchange for their *pro rata* Freedom HoldCo Debtor Litigation Trust Units. The Freedom HoldCo Debtor Litigation Trust Beneficiaries shall be treated as the grantors and owners of the Freedom HoldCo Debtor Litigation Trust for United States federal (and, to the extent permitted, state and local) income tax purposes.

7.2     Annual Reporting and Filing Requirements.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Freedom HoldCo Debtor Litigation Trustee shall file tax returns (including applicable state, local and foreign tax returns, if any) for the Freedom HoldCo Debtor Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) to the extent required by applicable law and subject to the treatment of the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve as a DOF or other separate entity.

7.3     Tax Treatment of Reserves for Disputed Claims.  The Freedom HoldCo Debtor Litigation Trustee may, in the Freedom HoldCo Debtor Litigation Trustee's sole discretion, determine the best way to report for United States tax purposes with respect to the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve, if applicable, including (i) filing a tax election to treat the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve as a DOF or other separate entity within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Freedom HoldCo Debtor Litigation Trust (and, to the extent permitted by applicable law, report consistently with the foregoing for United States federal, state, and local income tax purposes) or (ii) electing to report

as a separate trust or sub-trust or other entity.  If an election is made to report the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve as a DOF or other separate entity, the Freedom HoldCo Debtor Litigation Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF or other separate entity, including, but not limited to, the filing of a separate federal tax return for the DOF or other separate entity and the payment of federal and/or state income tax due.

7.3.1    If an election is made to report the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve as a DOF or other separate entity, all parties (including the Debtors, the Reorganized Debtors (including, for the avoidance of doubt, the Post-Effective Date Freedom HoldCo Debtors), the Freedom HoldCo Debtor Litigation Trust, the Freedom HoldCo Debtor Litigation Trustee, and the Freedom HoldCo Debtor Litigation Trust Beneficiaries) shall be bound by such election and report for United States federal, state, and local income tax purposes consistently with the foregoing.  The Freedom HoldCo Debtor Litigation Trustee shall be responsible for payment, out of the Freedom HoldCo Debtor Litigation Trust Assets, of any taxes (including with respect to earned interest, if any) imposed on the Freedom HoldCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trust Assets, including the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve.  In the event, and to the extent, any Cash retained on account of a Disputed Freedom HoldCo Debtor Trust Claim in the Freedom HoldCo Debtor Litigation Trust Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, such Disputed Freedom HoldCo Debtor Trust Claims, the Freedom HoldCo Debtor Litigation Trustee may, in its discretion, (i) sell any non-Cash assets relating to such Claim (including any assets distributable as a result of disallowance of such Claim) to pay such taxes or

(ii) reimburse the Freedom HoldCo Debtor Litigation Trust for the payment of such taxes from any subsequent Cash amounts allocable to, or retained on account of such Disputed Freedom HoldCo Debtor Trust Claims (including any Cash distributable by the Freedom HoldCo Debtor Litigation Trustee as a result of disallowance of such Disputed Freedom HoldCo Debtor Trust Claim).

7.4    Valuation of Freedom HoldCo Debtor Litigation Trust Assets.    As soon as practicable following the Effective Date, but in no event later than the due date for timely filing of the Freedom HoldCo Debtor Litigation Trust's first United States federal income tax return (taking into account applicable tax filing extensions), the Freedom HoldCo Debtor Litigation Trustee shall determine the fair market value of the Freedom HoldCo Debtor Litigation Trust Assets as of the Effective Date, based on the Freedom HoldCo Debtor Litigation Trustee's good faith determination and subject in all respects to Section 7.4, and the Freedom HoldCo Debtor Litigation Trustee shall apprise, in writing, the Freedom HoldCo Debtor Litigation Trust Beneficiaries and the Post-Effective Date Freedom HoldCo Debtors of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors and/or the Reorganized Debtors, as applicable, the Freedom HoldCo Debtor Litigation Trust, the Freedom HoldCo Debtor Litigation Trustee, and the Freedom HoldCo Debtor Litigation Trust Beneficiaries) for all applicable United States federal, state, and local income tax purposes.

7.4.1    In the event the Reorganized Debtors disagree with the Freedom HoldCo Debtor Litigation Trustee's good faith determination of the valuation of the Freedom HoldCo Debtor Litigation Trust Assets, the Freedom HoldCo Debtor Litigation Trustee and the Post-Effective Date Freedom HoldCo Debtors shall attempt to reconcile any such differences.  The valuation agreed to by the Reorganized Debtors and the Freedom HoldCo Debtor Litigation

Trustee shall be used consistently by all parties for all tax purposes unless otherwise required by a "determination" within the meaning of Section 1313(a) of the Internal Revenue Code (or any equivalent provision of state, local, or non-U.S. law).

7.5    In the event that the Freedom HoldCo Debtor Litigation Trustee determines that the Freedom HoldCo Debtor Litigation Trust may be required to withhold from amounts distributable from the Freedom HoldCo Debtor Litigation Trust pursuant to Section 4.2 above, it shall endeavor to promptly notify the relevant Freedom HoldCo Debtor Litigation Trust Beneficiary.

7.6    Allocations of Freedom HoldCo Debtor Litigation Trust taxable income among the Freedom HoldCo Debtor Litigation Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Freedom HoldCo Debtor Litigation Trust had distributed all its assets (valued at their tax book value) to the holders of Freedom HoldCo Debtor Litigation Trust Units, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Freedom HoldCo Debtor Litigation Trust.  Similarly, taxable loss of the Freedom HoldCo Debtor Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Freedom HoldCo Debtor Litigation Trust Assets. The tax book value of the Freedom HoldCo Debtor Litigation Trust Assets for purposes of this Section 7.6 shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

## ARTICLE VIII

### SELECTION, REMOVAL, REPLACEMENT,
### AND COMPENSATION OF FREEDOM HOLDCO DEBTOR LITIGATION TRUSTEE

8.1     Initial Freedom HoldCo Debtor Litigation Trustee.  The Freedom HoldCo Debtor Litigation Trustee has been selected by the Debtors, in consultation of the DIP Lender and the Freedom Lender Group, is appointed effective as of the Effective Date, and shall serve as the trustee of the Freedom HoldCo Debtor Litigation Trust.  The initial trustee of the Freedom HoldCo Debtor Litigation Trust shall be the Freedom HoldCo Debtor Litigation Trustee.

8.2     Term of Service.  The Freedom HoldCo Debtor Litigation Trustee shall serve until the earliest of (i) the completion of the administration of the Freedom HoldCo Debtor Litigation Trust Assets and the Freedom HoldCo Debtor Litigation Trust, including the winding up of the Freedom HoldCo Debtor Litigation Trust, in accordance with this Agreement and the Plan, (ii) termination and dissolution of the Freedom HoldCo Debtor Litigation Trust in accordance with the terms of this Agreement and the Plan, or (iii) the Freedom HoldCo Debtor Litigation Trustee's resignation, death, dissolution, incapacity, liquidation, or removal.  In the event that the Freedom HoldCo Debtor Litigation Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Freedom HoldCo Debtor Litigation Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VI of this Agreement shall survive the resignation or removal of any Freedom HoldCo Debtor Litigation Trustee.

8.3     Removal of Freedom HoldCo Debtor Litigation Trustee.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Freedom HoldCo Debtor Litigation Trustee for cause.  The Bankruptcy Court shall have exclusive jurisdiction to hear and

finally determine any dispute arising out of this Section 8.3 except as otherwise provided in the Plan or Confirmation Order.

8.4    <u>Resignation of Freedom HoldCo Debtor Litigation Trustee</u>.  The Freedom HoldCo Debtor Litigation Trustee may resign at any time on written notice to counsel to the Debtors, counsel to the Required Consenting First Lien Lenders, the U.S. Trustee and Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court. In the event of a resignation, the resigning Freedom HoldCo Debtor Litigation Trustee shall file a full and complete accounting of monies and assets received, disbursed, and held during the term of that Freedom HoldCo Debtor Litigation Trustee.

8.5    <u>Appointment of Successor Freedom HoldCo Debtor Litigation Trustee</u>.  Upon the resignation, death, dissolution, incapacity, liquidation, or removal of a Freedom HoldCo Debtor Litigation Trustee, any party in interest (including, in the case of resignation, the Freedom HoldCo Debtor Litigation Trustee) may file a motion in the Bankruptcy Court to appoint a successor trustee.  In the event no party in interest seeks the appointment of a successor Freedom HoldCo Debtor Litigation Trustee, the Bankruptcy Court shall appoint a successor Freedom HoldCo Debtor Litigation Trustee on its own motion.  Any successor Freedom HoldCo Debtor Litigation Trustee so appointed (i) shall consent to and accept his, her, or its appointment as successor Freedom HoldCo Debtor Litigation Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor Freedom HoldCo Debtor Litigation Trustee, and (ii) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).  Any successor Freedom HoldCo Debtor Litigation Trustee may be appointed to serve only on an interim basis.

8.6    <u>Powers and Duties of Successor Freedom HoldCo Debtor Litigation Trustee</u>.  A successor Freedom HoldCo Debtor Litigation Trustee shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and the Confirmation Order.

8.7    <u>Freedom HoldCo Debtor Litigation Trust Continuance</u>.  The resignation, death, dissolution, incapacity, liquidation, or removal of the Freedom HoldCo Debtor Litigation Trustee shall not terminate the Freedom HoldCo Debtor Litigation Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Freedom HoldCo Debtor Litigation Trustee.

8.8    <u>Compensation of Freedom HoldCo Debtor Litigation Trustee and Costs of Administration</u>.  The Freedom HoldCo Debtor Litigation Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge solely against and solely paid out of the Freedom HoldCo Debtor Litigation Trust Assets as Freedom HoldCo Debtor Litigation Trust Expenses.  All costs, expenses, and obligations incurred by the Freedom HoldCo Debtor Litigation Trustee (or professionals who may be employed by the Freedom HoldCo Debtor Litigation Trustee in administering the Freedom HoldCo Debtor Litigation Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Freedom HoldCo Debtor Litigation Trust solely from the Freedom HoldCo Debtor Litigation Trust Assets prior to any distribution to Holders of applicable Allowed Freedom HoldCo Debtor Trust Claims.

8.9    <u>Appointment of Supplemental Freedom HoldCo Debtor Litigation Trustee</u>.  If the Freedom HoldCo Debtor Litigation Trustee has a conflict or any of the Freedom HoldCo Debtor Litigation Trust Assets are situated in any state or other jurisdiction in which the Freedom HoldCo

Debtor Litigation Trustee is not qualified to act as trustee, the Freedom HoldCo Debtor Litigation Trustee shall, upon written notice to counsel to the Debtors and counsel to the Required Consenting Term Loan Lenders (email being sufficient), nominate and appoint a Person duly qualified to act as trustee (the "Supplemental Freedom HoldCo Debtor Litigation Trustee") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Freedom HoldCo Debtor Litigation Trustee such security as may be designated by the Freedom HoldCo Debtor Litigation Trustee in its discretion.  In the event the Freedom HoldCo Debtor Litigation Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Freedom HoldCo Debtor Litigation Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Freedom HoldCo Debtor Litigation Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Freedom HoldCo Debtor Litigation Trustee any or all of the rights, powers, privileges, and duties of the Freedom HoldCo Debtor Litigation Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Freedom HoldCo Debtor Litigation Trustee is acting shall prevail to the extent necessary).  To the extent the Supplemental Freedom HoldCo Debtor Litigation Trustee is appointed by the Freedom HoldCo Debtor Litigation Trustee, the Freedom HoldCo Debtor Litigation Trustee shall require such Supplemental Freedom HoldCo Debtor Litigation Trustee to be answerable to the Freedom HoldCo Debtor Litigation Trustee for all monies, assets, and other property that may be received in connection with the administration of all property.  The Freedom HoldCo Debtor Litigation Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Freedom HoldCo Debtor Litigation Trustee, with or without cause, and appoint a successor Supplemental Freedom HoldCo Debtor Litigation Trustee

at any time by executing a written instrument declaring such Supplemental Freedom HoldCo Debtor Litigation Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE IX

## DURATION OF FREEDOM HOLDCO DEBTOR LITIGATION TRUST

9.1    <u>Duration</u>.  Once the Freedom HoldCo Debtor Litigation Trust becomes effective upon the Effective Date of the Plan, the Freedom HoldCo Debtor Litigation Trust and this Agreement shall remain and continue in full force and effect until the Freedom HoldCo Debtor Litigation Trust is terminated in accordance with the terms hereof.

9.2    <u>Termination on Payment of Freedom HoldCo Debtor Litigation Trust Expenses and Distribution of Freedom HoldCo Debtor Litigation Trust Assets</u>.  Upon the payment of all Freedom HoldCo Debtor Litigation Trust Expenses, and the distribution of all Freedom HoldCo Debtor Litigation Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Freedom HoldCo Debtor Litigation Trust shall automatically terminate and dissolve and the Freedom HoldCo Debtor Litigation Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3    <u>Termination after Five Years Unless Extended</u>.  If the Freedom HoldCo Debtor Litigation Trust has not been previously terminated and dissolved pursuant to Section 9.2 hereof, on the fifth anniversary of the Effective Date, the Freedom HoldCo Debtor Litigation Trustee shall distribute all of the Freedom HoldCo Debtor Litigation Trust Assets to the Freedom HoldCo Debtor Litigation Trust Beneficiaries in accordance with the Plan, and immediately thereafter the Freedom HoldCo Debtor Litigation Trust shall terminate and the Freedom HoldCo Debtor Litigation Trustee shall have no further responsibility in connection therewith except to the limited

extent set forth in Section 9.5 of this Agreement, unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court upon motion made within the six-month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Freedom HoldCo Debtor Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Freedom HoldCo Debtor Litigation Trust Assets.

9.4     No Termination by Freedom HoldCo Debtor Litigation Trust Beneficiaries.  The Freedom HoldCo Debtor Litigation Trust may not be terminated and dissolved at any time by the Freedom HoldCo Debtor Litigation Trust Beneficiaries.

9.5     Continuance of Freedom HoldCo Debtor Litigation Trust for Winding Up; Discharge and Release of Freedom HoldCo Debtor Litigation Trustee.  After the termination of the Freedom HoldCo Debtor Litigation Trust and solely for the purpose of liquidating and winding up the affairs of the Freedom HoldCo Debtor Litigation Trust, the Freedom HoldCo Debtor Litigation Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the Freedom HoldCo Debtor Litigation Trust Assets, including all excess reserves, the Freedom HoldCo Debtor Litigation Trustee and the Freedom HoldCo Debtor Litigation Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  In connection with the foregoing, upon a motion by the Freedom HoldCo Debtor Litigation Trustee, the Bankruptcy Court may enter an order relieving the Freedom HoldCo Debtor Litigation Trustee

and its employees, professionals, and agents of any further duties, discharging and releasing the Freedom HoldCo Debtor Litigation Trustee and its employees, professionals, and agents from all liability related to the Freedom HoldCo Debtor Litigation Trust.

## ARTICLE X

## MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>.    The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>.    All notices to be given to Freedom HoldCo Debtor Litigation Trust Beneficiaries may be given by email, ordinary mail, or may be delivered personally, at the addresses for such Freedom HoldCo Debtor Litigation Trust Beneficiaries appearing on the books kept by the Freedom HoldCo Debtor Litigation Trust.  Any notice or other communication which may be or is required to be given, served, or sent to the Freedom HoldCo Debtor Litigation Trust shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by email, hand delivery, or facsimile (if receipt is confirmed) addressed as follows:

> If to the Freedom HoldCo Debtor Litigation Trust or the Freedom HoldCo Debtor Litigation Trustee:
>
> > [NAME OF FREEDOM HOLDCO DEBTOR LITIGATION TRUSTEE]
> > [ADDRESS]
> > [ADDRESS LINE 2]
> > [CITY, STATE ZIP CODE]
> > With a copy to:
> >
> > [COUNSEL FOR FREEDOM HOLDCO DEBTOR LITIGATION TRUSTEE]
> > [ADDRESS]
> > [CITY, STATE ZIP CODE]
> > Attn:  [●]

Email:  [●]
Fax:  [●]

or to such other address as may from time to time be provided in written notice by the Freedom HoldCo Debtor Litigation Trustee.

10.2.1    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws.

10.2.2    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.2.3    <u>Particular Words</u>.  Reference in this Agreement to any Article or Section is, unless otherwise specified, to that such Article or Section (inclusive of any subsections), as applicable, under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Article or Section of this Agreement.

10.2.4    <u>Execution</u>.  All funds in the Freedom HoldCo Debtor Litigation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Freedom HoldCo Debtor Litigation Trust Beneficiary, and no Freedom HoldCo Debtor Litigation Trust Beneficiary or any other Person can execute upon, garnish or attach the Freedom HoldCo Debtor Litigation Trust Assets or the Freedom HoldCo Debtor Litigation Trustee in any manner or compel payment from the Freedom HoldCo Debtor Litigation Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

10.2.5    <u>Amendment</u>.  This Agreement may be amended by written agreement of the Freedom HoldCo Debtor Litigation Trustee or by order of the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

58

10.2.6  <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.2.7  <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

10.2.8  <u>Severability</u>.  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

10.2.9  <u>Further Assurances</u>.  Without limitation of the generality of Section 2.4 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan and to consummate the transactions contemplated hereby.

10.2.10    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.2.11    <u>Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction regarding the Debtors, the Reorganized Debtors (including, for the avoidance of doubt, the Post-Effective Date Freedom HoldCo Debtors), the Freedom HoldCo Debtor Litigation Trust, the Freedom HoldCo Debtor Litigation Trustee, and the Freedom HoldCo Debtor Litigation Trust Assets, including, without limitation, the determination of all disputes arising out of or related to

59

administration of the Freedom HoldCo Debtor Litigation Trust; *provided*, *however*, that this Section 10.2.11 shall not conflict with the provisions of the Plan, including, without limitation, Article XIII of the Plan.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Freedom HoldCo Debtor Litigation Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**FREEDOM VCM INTERCO, INC.**
**FREEDOM VCM, INC.**

By: _____
    Name: [●]
    Title:  [●]

[NAME OF FREEDOM HOLDCO DEBTOR LITIGATION TRUSTEE], not individually, but solely in its capacity as Freedom HoldCo Debtor Litigation Trustee of the Freedom HoldCo Debtor Litigation Trust

By: _____
    Name: [●]
    Title:  [●]

## Exhibit J

**Freedom HoldCo Debtor Released Claims Report**

## Exhibit Regarding Freedom HoldCo Debtor Released Claims[1]

The Freedom HoldCo Debtor Released Claims contained in the Plan, any Plan Supplement or amendments thereto are subject to certain approval rights to the extent provided in the Plan.  Specifically, the Plan provides as follows:

> Article 1.101 of the Plan defines "<u>Freedom HoldCo Debtor Litigation Trust Claims</u>" as:

> collectively, all Claims and Causes of Action belonging to the Freedom HoldCo Debtors, *other than (a) the Freedom HoldCo Debtor Released Claims* and (b) Claims and Causes of Action against (i) Ducera Partners LLC in its capacity as investment banker to the Debtors, (ii) AlixPartners, LLP in its capacity as financial advisor to the Debtors, and (iii) the CRO, which, in each case, shall be released pursuant to the Plan; provided that, for the avoidance of doubt, any Claims and Causes of Action against any of the OpCo Debtors belonging to the Freedom HoldCo Debtors shall continue to be treated as Class 9 Intercompany Claims and shall receive OpCo Debtor Litigation Trust Units on account of such Claims. (emphasis added)

> Article 1.104 of the Plan defines "<u>Freedom HoldCo Debtor Released Claims</u>" as:

> collectively, any Claims and Causes of Action belonging to any of the Freedom HoldCo Debtors against (a) the Independent Directors, (b) the Consenting First Lien Lenders, (c) Andrew M. Laurence, (d) Andrew F. Kaminsky, (e) Eric Seeton, and (f) Tiffany McMillan-McWaters, *unless the Freedom HoldCo Independent Director determines that any such Claims and Causes of Action shall not be settled or released and identifies such Claims and Causes of Action in the Plan Supplement*. For the avoidance of doubt, any such settlement or release shall be subject to approval of the Bankruptcy Court, which approval may come in the form of the Confirmation Order. (emphasis added)

Based on the conclusions of the Freedom HoldCo Independent Investigation with respect to plausible Claims and Causes of Action belonging to the Freedom HoldCo Debtors, and given the lack of consideration to the Freedom HoldCo Debtors presently provided under the Plan in exchange for the release of any such Claims and Causes of Action, the Independent Director has concluded that the following Claims and Causes of Action should not be settled or released at this time:[2]

All Claims and Causes of Action of the Freedom HoldCo Debtors and their Estates against (1) Mr. John Hartmann, (2) Mr. Andrew F. Kaminsky, (3) Mr. Andrew M. Laurence and (4) Ms. Tiffany

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [ECF No. 1015] (the "<u>Plan</u>").

[2] For the avoidance of doubt, the determinations of the Freedom HoldCo Independent Director set forth in this Exhibit are based on the currently proposed terms and conditions of the Plan.  The Freedom HoldCo Independent Director retains the delegation of authority with respect to the subjects of the Freedom HoldCo Independent Investigation, including the continuing right to settle or release any Claims and Causes of Action the Freedom HoldCo Debtors may have against the parties named in this Exhibit as being excluded from the Freedom HoldCo Debtor Released Claims.  Nothing contained in this Exhibit modifies, limits, alters, amends or otherwise changes the Freedom HoldCo Independent Director's delegated powers and authority, including with respect to the ability to settle or release any Claims and Causes of Action.

McMillan-McWaters arising from: (i) the Take-Private Transaction (as such term is defined in the Disclosure Statement); (ii) the alleged relationship and involvement between Brian Kahn and Prophecy Asset Management LP; (iii) certain loans and financial relationships between Brian Kahn, his affiliates and B. Riley Securities, Inc., and its affiliates, including without limitation, the pledging of certain equity securities in the Debtors to secure such loans; (iv) transfers made by the Freedom HoldCo Debtors in connection with or following the Take-Private Transaction (as such term is defined in the Disclosure Statement); and (v) the Freedom HoldCo Debtors' entry into the Restructuring Support Agreement and commencement of their Chapter 11 Cases.

The Freedom HoldCo Independent Investigation, and the determinations set forth in this Exhibit, do not include an opinion on the likelihood of success of any Claims or Causes of Action following formal discovery or trial, or the amount or scope of damages, if any, arising from such Claims or Causes of Action.