# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (LSS) (Jointly Administered) |
| Debtors. | **Re: Docket No. 1144** |

## OBJECTION OF THE AD HOC GROUP OF FREEDOM LENDERS TO MOTION OF ANDREW LAURENCE, MATTHEW AVRIL, BRIAN KAHN, CYNTHIA DUBIN, AND THOMAS HERSKOVITS FOR RELIEF FROM THE AUTOMATIC STAY

The Ad Hoc Group of Freedom Lenders (the "**Freedom Lender Group**"),[2] hereby files

this objection (the "**Objection**") to the *Motion of Andrew Laurence, Matthew Avril, Brian Kahn,*

*Cynth Dubin, and Thomas Herskovits for Relief from the Automatic Stay to the Extent Applicable,*

---

[1]    The debtors in these Chapter 11 Cases (the "**Debtors**"), along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), B. Riley Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home and Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2]    The Freedom Lender Group is comprised of the entities named in the *Verified Statement of the Ad Hoc Group of Freedom Lenders Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 229], as it may be amended and supplemented from time to time.

*to Allow Payment of Defense Costs and Other Losses Under Directors and Officers Insurance Policies* [Docket No. 1144] (the "**Motion**"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      A key issue in these cases is addressing the Debtors' potential claims and causes of action against their current and former directors and officers.  In a tone deaf pleading, certain of those directors and officers (the "**Movants**") filed the Motion that, if granted, would give them unfettered access to the proceeds of the entirety of the Debtors' D&O insurance program, comprising both "ABC" policies (*i.e.*, policies that provide Side A, Side B, and Side C coverage) and "Side A-only" policies, including in connection with the Debtors' chapter 11 cases and the *Gale, et al. v. Vintage Cap. Mgmt., LLC, et al.* case pending in the Court of Chancery of the State of Delaware.  If the Motion is granted, the Movants could significantly, and possibly entirely, deplete the value of the Debtors' D&O policies.

2.      At the same time that the Movants seek stay relief to access the value of these estate assets, one of the Movants – Andrew Laurence – continues to make decisions for the Debtors. These decisions include the pursuit of a plan that would provide nothing other than shares in litigation trusts that can pursue Debtor claims and causes of action against current and former directors and officers (among others) to prepetition unsecured creditors of the OpCo Debtors and prepetition creditors of the HoldCo Debtors.  Such claims and causes of action are based primarily on actions taken by certain of such directors and officers (including Mr. Laurence) in connection with the Debtors' August 2023 take-private transaction.  The Debtors have now disclosed, in their plan supplement, that their independent director has determined that claims and causes of action held by the HoldCo Debtors against Brian Kahn, Andrew Laurence and others in connection with the take-private transaction and other actions are plausible and should not be released.  It defies

2

reason and equity that the Movants (particularly those who are hopelessly conflicted with respect to plan releases) could freely benefit from the Debtors' D&O policies while other stakeholders of the Debtors must wait until a plan is consummated and the litigation trusts are established to receive their own fair share of the proceeds of those policies.

3.      Despite this dynamic, the Movants argue that they would face "significant and potentially irreparable harm" if they are not granted relief from the automatic stay and given unfettered access to the Debtors' D&O policies.  But this argument fails for two reasons that demonstrate that the Movants have failed to establish cause.  First, the Movants fail to mention that there is $10 million of Side A-only coverage that only they, and not the Debtors, have access to that should be utilized by the Movants before chasing D&O policies that the Debtors also have an interest in (totaling $25 million of coverage).  The Movants should not be authorized to seek access to the entirety of the D&O policies shared with the Debtors with this other source of recovery available.  Second, the balancing of the hardships does not weigh in favor of the Movants with respect to the D&O policies shared with the Debtors given that there are a number of indemnity claims asserted by the Movants and direct claims filed by others, in each case against the Debtors that give rise to claims that the Debtors have against the D&O policies.  In light of the Side A-only policies, the Debtors' rights to the proceeds of the other D&O policies should be preserved and outweigh the need for immediate stay relief.

4.      For these reasons, and as discussed in detail below, the Motion should be denied. If the Court disagrees and is inclined to approve the Motion, the Court should impose additional obligations on the Movants to protect the estates' assets, including: (i) prohibiting the Movants from recoveries against any of the D&O Policies until they exhaust the $10 million of Side-A only policies first, (ii) quarterly reporting of any defense-cost draws, and (iii) prior Court approval for

any settlement payment of policy proceeds. These measures would foster transparency and minimize the depletion of the value of the Debtors' D&O policies.

## BACKGROUND

I.    **General Background**

5.    On July 12, 2024, certain former stockholders of Franchise Group, Inc. (the "**Chancery Plaintiffs**") commenced the *Gale* action pending in the Court of Chancery of the State of Delaware (the "**Chancery Litigation**") against Andrew Laurence, Matthew Avril and Brian Kahn. The Chancery Plaintiffs assert claims for breach of fiduciary duty in connection with the Debtors' 2023 take-private transaction (the "**Take-Private Transaction**"), which the Chancery Plaintiffs assert resulted in an unfair merger process that failed to properly compensate the former stockholders.

6.    In addition to being a named defendant in the Chancery Litigation, Brian Kahn, the Debtors' founder and former chief executive officer, was identified by federal prosecutors as an unindicted co-conspirator in a securities fraud indictment related to Prophecy Asset Management LP, an investment fund that Mr. Kahn was a key member and fund manager of. The indictment identified a multi-layer fraud that concealed losses of hundreds of millions of dollars from Prophecy investors. The Debtors concede that "these accusations and investigations also created issues for the Debtors in pursuing prepetition growth strategies, which also contributed to the commencement of these Chapter 11 Cases."[3]

7.    On November 3, 2024 (the "**Petition Date**"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). As of the Petition Date, the Chancery Litigation remained pending and was proceeding through discovery. On

---

[3]    Disclosure Statement (as defined below), Art. V.B.

January 7, 2025, the Court entered an order [A.D.I. 11] approving a stipulation between the Debtors and the Chancery Plaintiffs granting a preliminary injunction extending the Debtors' automatic stay to Mr. Laurence through March 31, 2025. Mr. Laurence remains the Debtors' chief executive officer and serves on the boards of directors of all of the Debtors.[4] The Delaware Litigation has not been stayed as to Mr. Avril or Mr. Kahn.

8.      On February 21, 2025, the Court approved the Debtors' disclosure statement (the "**Disclosure Statement**") with respect to the Debtors' proposed sixth amended plan (the "**Plan**") [Docket No. 1019]. The Plan would provide (i) holders of prepetition unsecured claims against Franchise Group, Inc. ("**FRG**") and its subsidiaries (together with FRG, the "**OpCo Debtors**") and (ii) holders of prepetition claims against Freedom VCM, Inc. and Freedom VCM Interco, Inc. (together, the "**HoldCo Debtors**") with interests in separate litigation trusts holding certain claims and causes of action belonging to the OpCo Debtors and the HoldCo Debtors, respectively.[5] The Disclosure Statement estimates that this would provide prepetition unsecured creditors of the OpCo Debtors with an approximate 1% recovery on their claims and creditors of the HoldCo Debtors with a 0% recovery on their claims.[6]

9.      On March 27, 2025, the Debtors filed a plan supplement [Docket No. 1182] (the "**Plan Supplement**"). Exhibit B of the Plan Supplement states that, under the Plan, the Debtors would retain all claims against their insurance policies post-consummation. The Plan Supplement also provides that, under the Plan, claims and causes of action held by the HoldCo Debtors against certain of the Debtors' current and former officers and directors – John Hartmann, Andrew Kaminsky, Andrew Laurence and Tiffany McMillan-McWaters – related to (among other things)

---

[4]     *See Voluntary Petition for Franchise Group, Inc.* [Dkt. No. 1] at 33-64.

[5]     Disclosure Statement, Art. III.J.

[6]     *Id.* Art. III.D.

the Take-Private Transaction will be preserved in the litigation trust to be established for the HoldCo Debtors' creditors because an independent director of the HoldCo Debtors determined that such claims and causes of action are "plausible" and thus releases for these individuals are not warranted.[7] Brian Kahn would not get releases under the Debtors' proposed Plan and, based on allegations made against him in connection with the Prophecy matter and other facts that have come to light, he is a clear target of claims and causes of action held by the Debtors. Other current and former officers and directors of the Debtors were also involved in the Take-Private Transaction and are, thus, likely subject to viable claims and causes of action held by the Debtors.[8]

## II. The D&O Policies

10.    The Debtors maintain a primary D&O liability policy and certain excess layers of D&O insurance. The primary policy was issued by National Union Fire Insurance Company of Pittsburgh, Pa (the "**Primary Insurer**"), with an aggregate coverage limit of $5 million (the "**Primary Policy**").[9] The Primary Policy provides Side A, Side B, and Side C coverage for the Insureds (as defined in the Primary Policy). The Insureds include (i) any "Organization," a term defined to include Freedom VCM Holdings, LLC and its subsidiaries (the "**Company**")[10] and (ii) "Insured Persons," which include any past, present or future directors and/or officers of the Company.[11]

11.    The excess layers of the Debtors' D&O insurance include (a) four layers of Side A, Side B, and Side C coverage in the aggregate amount of $20 million (collectively, with the Primary

---

[7]    Plan Supplement, Ex. J.

[8]    To the extent any such directors or officers are to be granted releases by the Debtors under the Plan, the Freedom Lender Group intends to object to such releases at confirmation.

[9]    A copy of the Primary Policy is attached as Exhibit B to the Motion.

[10]   A subsequent endorsement to the Primary Policy changed the "Named Entity" from Franchise Group, Inc. to Freedom VCM Holdings, LLC.

[11]   *See* Primary Policy, General Terms and Conditions, § 16; *id.*, Private D&O Coverage Section, § 14.

Policy, the "**ABC Policies**") and (b) two layers of Difference-In-Conditions (DIC) coverage, which provide Side A coverage solely for the insured directors and officers in the aggregate amount of $10 million (Policy Nos. 0313-9683 and ADX30043459900, the "**DIC Policies**," and collectively with the ABC Policies and the Primary Policy, the "**D&O Policies**").[12]  Under the D&O Policies, the Debtors have $25 million of aggregate coverage issued by the Primary Insurer and the other insurers (collectively, the "**D&O Insurers**") while the DIC policies provide Side A coverage solely for the insured individuals, in the aggregate amount of $10 million.

12.    A summary of the D&O Policies is as follows:

| # | Coverage | D&O Insurer | D&O Policy No. | Limit of Liability |
|---|----------|-------------|----------------|--------------------|
| 1. | D&O Primary Side A, B, C Coverage | National Union Fire Insurance Company of Pittsburgh, Pa | 01-420-28-24 | $5 million |
| 2. | D&O Excess Side A, B, C Coverage | Markel American Insurance Company | MKLM1MXM001065 | $5 million |
| 3. | D&O Excess Side A, B, C Coverage | Westchester Fire Insurance Company | G47420994 001 | $5 million |
| 4. | D&O Excess Side A, B, C Coverage | Berkshire Hathaway Specialty Insurance Company | 47-EMC-330581-01 | $5 million |
| 5. | D&O Excess Side A, B, C Coverage | Allianz Global Risks US Insurance Company | USF04502623 | $5 million |
| 6. | D&O Excess Side A Coverage Only | Allied World Insurance Company (DIC) | 0313-9683 | $5 million |
| 7. | D&O Excess Side A Coverage Only | Endurance American Insurance Company (DIC) | ADX30043459900 | $5 million |
| | | | Total: | $35 million |

13.    The ABC Policies' Side A coverage generally provides protection directly to directors and officers where the company has not indemnified, or will not indemnify, the applicable directors and officers. The ABC Policies' Side B coverage generally allows the Company to receive reimbursement when it indemnifies a director or officer for covered losses.

---

[12]    Copies of the two DIC Policies are attached hereto as **Exhibit A** and **Exhibit B**.

The ABC Policies' Side C coverage generally applies to any covered loss suffered by the Company.[13]

14.     The ABC Policies are "burning limits" policies, which means every dollar spent on Side A defense costs directly reduces coverage the Debtors might need under Side B (indemnification) or Side C (entity coverage). Therefore, if the Movants were to recover from the ABC Policies, it would reduce the amount of proceeds potentially recoverable against them by the Debtors.

15.     The DIC Policies cover directors and officers exclusively and expressly provide that the insurers shall pay a loss "if such Non-Indemnified Loss is not paid by any Underlying Insurer for any reason, including due to a DIC Event."[14] A DIC Event includes "any failure or refusal of an Underlying Insurer to pay the Non-Indemnified Loss because the proceeds of the Underlying Policy are subject to . . . the automatic stay under the U.S. Bankruptcy Code."[15] As evidenced by the Movants' proofs of claim filed in these Chapter 11 Cases, the Debtors refused to indemnify the Movants prior to the Petition Date. In light of the imposition of the automatic stay and the fact that the Debtors are still pursuing a plan of reorganization that has not yet been confirmed, the Debtors have continued to fail and refuse to pay the Movants for their defense costs, indemnification claims, or any other causes of action against them.

## III.    Claims Filed Against the Debtors

16.     Each of the Movants has filed a proof of claim against each of the Debtors and such proof of claim asserts a liquidated claim for indemnification of legal expenses associated with,

---

[13]    *See id.*, Private D&O Coverage Section, § 1.

[14]    *See* Ex. A at § 1 (insuring agreement); Ex. B at § II.A (providing the policy is subject to all terms, conditions and limitations of policy no. 0313-9683).

[15]    *See* Ex. A at § 4.e.vi. (definitions); Ex. B at § II.A (providing the policy is subject to all terms, conditions and limitations of policy no. 0313-9683).

among other things, the Chancery Litigation.[16]  Any such indemnification claims, if paid by any of the Debtors, will give such Debtor a claim for proceeds of the ABC Policies.

17.     Further, multiple parties have pending lawsuits against the Debtors as of the Petition Date that could result in the Debtors claims against the ABC Policies.[17]  The agent and lenders under the OpCo Debtors' second lien credit facility and the HoldCo Debtors' credit facility have similarly articulated a number of potential causes of action they have against the Debtors.[18]

## OBJECTION

### I.    The Automatic Stay Applies to Proceeds of the ABC Policies

18.     The Movants incorrectly assert in the Motion that the automatic stay does not apply to proceeds of the ABC Policies.  To the contrary, the proceeds of the ABC Policies are property of the Debtors' estates and, accordingly, the automatic stay bars the Movants from seeking reimbursement and/or payment of their defense costs.

19.     The protections of the automatic stay extend to all property of a debtor's estate.  11 U.S.C. § 362(a).  Section 541 of the Bankruptcy Code defines property of a debtor's estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

20.     Where D&O policies provide direct coverage to both directors and officers and the

---

[16]   *See, e.g.,* Proof of Claim No. 1854 (asserted by Andrew Laurance against FRG); Proof of Claim No. 1866 (asserted by Brian Kahn against FRG); Proof of Claim No. 1458 (asserted by Cynthia Dubin against FRG); Proof of Claim No. 1573 (asserted by Matthew Avril against FRG); Proof of Claim No. 1522 (asserted by Thomas Herskovits against FRG).

[17]   *See, e.g.,* Class Action Complaint at 1, *Popa v. PSP Grp., LLC,* Case No. 2:22-cv-1357 (W.D. Pa. Sept. 22 2022) (alleging insidious privacy intrusions resulting from the clandestine deployment of surveillance software on the internet); Class Action Complaint at 1-2, *Gatto v. PSP Stores, LLC,* Case No. 1:22-cv-6397 (E.D.N.Y. Oct. 21 2022) (seeking unpaid wages, commission, and overtime payments); Consent Decree at 2, *Equal Employment Opportunity Commission v. American Freight Management Company, LLC,* Case No. 2:19-cv-273 (N.D. Ala. Feb. 2 2022) (alleging gender-based discrimination consent decree applicable to all facilities nationwide).

[18]   *See, e.g.* Proofs of Claim Nos. 1847, 1878, 1924, 2107, 2137, 2171.

debtor, proceeds of such policies are property of the estate if depletion of the proceeds would have an adverse effect on the estate. *See In re BSA*, 642 B.R. 573 (Bankr. D. Del. 2022) (finding proceeds of policies are property of estate, where, as here, "[d]epletion of the proceeds of these policies would have an adverse effect on the estate"); *see also In re SN Liquidation, Inc.*, 388 B.R. 579, 584 (Bankr. D. Del. 2008) (finding proceeds of policy were property of estate, where, as here, policy at issue provided coverage to debtors in addition to directors and officers); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 419-20 (Bankr. E.D. Pa. 1995) ("More important, however, is the fact that the Debtor's own liability exposure is also covered by the D&O Policy. Proceeds available for the Debtor's liability exposure are not segregated from the Proceeds available to the directors and officers. Thus, the Debtor is indeed an insured and has a sufficient interest in the Proceeds as a whole to bring them into the estate."). Central to this standard is the principle that a "debtor's interest in the proceeds requires protection from depletion and overrides the interest of the directors and officers." *Boy Scouts*, 642 B.R. at 572-73 (quoting *In re Allied Dig. Techs. Corp.*, 306 B.R. 505, 511 (Bankr. D. Del. 2004)).

21.    Here, because the ABC Policies provide coverage for the Debtors' indemnification obligations and direct corporate liability, every dollar paid to the Movants for "Side A" coverage reduces coverage potentially available to the Debtors. The "burning limits" nature of these policies is precisely the factor courts weigh heavily in finding that the estate has a real, non-speculative interest in the proceeds. *See In re Downey Fin. Corp.*, 428 B.R. 595, 600-01 (Bankr. D. Del. 2010).

22.    The Movants' attempt to distinguish "currently pending vs. future claims" is meritless. *See* Mot. ¶¶ 21-22. Specifically, the Movants erroneously assert that Side B is not triggered solely because the Debtors have not indicated any intention to indemnify them. But a debtor's "duty to indemnify" directors and officers against defense costs is enough to establish the

debtor's interest in the proceeds. *See In re Jasmine, Ltd.*, 258 B.R. 119, 128 (D.N.J. 2000) (holding that a debtor's "duty of indemnification was established and not merely speculative," entitling the debtor to the insurance proceeds as property of the bankruptcy estate); *see also In re Circle K Corp.*, 121 B.R. 257, 261-262 (Bankr. D.Ariz. 1990) (staying a securities action against the directors and officers because the debtor could be required to reimburse the directors and officers if the insurer did not pay them, and there was a possibility of future indemnification claims).

23.    Further, the Movants' argument that there are no pending covered claims against the Debtors is incorrect.  Each of the Movants has filed an indemnification claim against each Debtor.  Such asserted claims have been held to establish actual, live claims that a debtor has against a D&O policy.  *See Boy Scouts,* 642 B.R. at 573 (finding that proceeds of policies were property of estate, when indemnification proofs of claim were submitted and thus "[d]epletion of the proceeds of [the] policies would have an adverse effect on the estate").  Every dollar that the Movants recovers from the ABC Policies for reimbursement of defense costs or otherwise reduces the amount available for the Debtors for indemnification and other claims covered under the policies. *See Downey*, 428 B.R. at 600-01 (explaining how a "wasting" or "burning candle" policy works, where "payment for any Loss covered under the Policy necessarily reduces the amount of proceeds available to cover subsequent Losses").  Further, there are pending direct claims against the Debtors that could be covered under the ABC Policies, as well as potential causes of actions set forth in proofs of claim filed against the Debtors.  These give rise to claims for proceeds of the ABC Policies available to the Debtors that would be depleted if the Motion were granted and, thus, are property of the Debtors' estates that are protected by the automatic stay.[19]

---

[19]    The Movants further argue that the D&O Policies' payment priority provisions contractually subordinate any recovery the Debtors may have against the D&O Policies to the Movants' coverage. *See* Mot. ¶ 26.  Regardless of the payment priority provisions, as discussed below, the coverage under the ABC Policies should remain available for the estates until the Movants have depleted the DIC Policies.

## II.     There is No Cause to Lift the Automatic Stay

24.      The Movants cannot establish "cause" under section 362(d) of the Bankruptcy Code to obtain stay relief to access the ABC Policies because they have $10 million of separate, exclusive coverage available under the DIC Policies.  Section 362(d)(1) of the Bankruptcy Code provides that on request of a party in interest "and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest."  The Movants bear the burden of establishing cause to modify the stay and exercise rights against estate assets.  *Downey*, 428 B.R. at 609.

25.      In evaluating whether cause exists, courts "conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances." *Id.* at 608-09 (quoting *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007)).  Courts routinely apply a three-factor test for determining whether cause exists: (i) prejudice to the debtor or its estate, (ii) hardship to the Movants if the stay remains in place, and (iii) the likelihood of success on the underlying claims. *See id.* at 608-09.  All three factors demonstrate that the Motion should not be granted.

26.      *First*, there would be prejudice to the Debtors' estates if the Motion is granted because the Debtors would lose valuable insurance coverage given the "burning limits" nature of the ABC Policies and the Movants' resulting ability to dissipate the value of the ABC Policies without any oversight or further court authorization.  *Second*, the Movants would not experience hardship if the stay remains in place because they will still have access to the DIC Policies, which – because they are only accessible by directors and officers and not the Debtors themselves – are not subject to the automatic stay.  This provides the Movants with up to $10 million of coverage,

which should be more sufficient until these Chapter 11 Cases resolve themselves (and, if not, the Movants can always come back to the Court).[20] *Third*, the Movants have offered no evidence of the merits of their claims against the ABC Policies (instead arguing that this factor is inapplicable). *See* Mot. ¶ 30 n.5.  Moreover, they have not offered any evidence as to why it is necessary for them to tap the ABC Policies before the DIC Policies, which would not cause any harm to the Debtors' estates.  *See* Apr. 12, 2023 Hr'g Tr. at 52:16–53:16, *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Apr. 13, 2023) [Docket No. 1284] (bench ruling) (Judge Dorsey denying a former CEO's stay relief motion when he failed to substantiate any immediate harm or to show the estate would not be prejudiced by coverage depletion).

27.     Further, given the importance of the ABC Policies to recoveries for creditors in these Chapter 11 Cases, this Court should apply minimal weight to any hardships endured by the Movants by the imposition of the automatic stay, particularly given their complicity in the Take-Private Transaction that gives rise to valuable claims and causes of action.  This is bolstered by the recent conclusion of the HoldCo Debtors' independent director disclosed in the Plan Supplement that there are plausible claims and causes of action against Brian Kahn and Andrew Laurence, among others.  Rather, the balance of the equities clearly favors maintaining the stay in these circumstances.  *See In re Coletta*, 336 F. App'x 202, 205 (3d Cir. 2009) ("The bankruptcy court is given 'wide latitude' to consider [certain] factors and 'to balance the equities when granting relief from the automatic stay.'") (quoting *In re Myers*, 491 F.3d 120, 130 (3d Cir. 2007).

## III.    The Court Should Impose Adequate Safeguards and Obligations on the Movants

28.     For the reasons stated above, the Motion should be denied.  If, however, the Court

---

[20]   Therefore, this case differs significantly from the *Allied Digital* case—on which the Movants rely—where, absent relief from the automatic stay, the court found the individual defendants would be prevented from conducting a "meaningful defense." 306 B.R. at 514.  Here, the Movants would not be prevented from conducting a meaningful defense as they are covered under the DIC Policies and have the right to access the proceeds under those policies.

is inclined to grant the Motion, it should require certain procedural safeguards around the Movants' ability to access proceeds of the ABC Policies. Courts, in considering similar motions, have determined that such oversight conditions are appropriate. *See, e.g.*, *In re Celsius Network LLC*, 652 B.R. 34, 45–46 (Bankr. S.D.N.Y. 2023) (adopting the objectors' proposed requirements of quarterly reporting). Such written quarterly updates should include (1) the name of the individual insured who received advances and/or payments; (2) the nature of the claim(s); (3) the dollar amount of the claim(s) submitted and the amount actually paid; and (4) the amount of liability coverage remaining under the policy. *See In re SVB Fin. Grp.*, No. 23-10367, 2023 Bankr. LEXIS 1339, *802 (Bankr. S.D.N.Y. May 22, 2023) (imposing reporting requirements and requiring court approval before paying out a settlement using insurance proceeds); *In re Licking River Mining, LLC*, No. 14-10201, 2016 Bankr. LEXIS 2211, at *31-32 (Bankr. E.D. Ky. June 6, 2016) (requiring former directors to file a report setting forth the date, amount, and payee of each disbursement within fourteen days of the disbursement); *see generally In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 674 (Bankr. N.D. Ohio 2005) (recognizing that the Bankruptcy Court "has the authority to impose appropriate conditions upon the relief from the automatic stay"). This Court should not give the Movants unrestricted access to proceeds from the D&O Policies. Similarly, this Court should condition any future relief on protections that limit prejudice to the estates, including:

- ***Exhaustion of the DIC Policies***: The Movants should be required to use the $10 million DIC Policies first for the reasons stated above.

- ***Quarterly Reporting***: The Movants should be required to provide written quarterly statements to the Debtors, the Committee, and Freedom Lender Group, disclosing any defense costs incurred and paid. Such reporting ensures transparency and allows parties in interest to monitor the depletion rate.

14

- ***Court Approval for Access to the ABC Policies or Any Settlements***:  The Movants should be required to seek further relief from this Court before utilizing the ABC Policies' proceeds and to pay any settlement of claims using policy proceeds, as the courts in *Celsius* and *SVB* likewise required.

## <u>CONCLUSION</u>

29.     The Court should deny the Motion for the reasons stated herein and grant such other relief as it deems just and proper.

Dated: March 27, 2025
      Wilmington, Delaware

**FARNAN LLP**

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: bfarnan@farnanlaw.com
       mfarnan@farnanlaw.com

-and-

**WHITE & CASE LLP**
Thomas Lauria (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: tlauria@whitecase.com

-and-

J. Christopher Shore (admitted *pro hac vice*)
Andrew Zatz (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
Erin Smith (admitted *pro hac vice*)
Brett Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: cshore@whitecase.com
      azatz@whitecase.com
      sam.hershey@whitecase.com
      erin.smith@whitecase.com
      brett.bakemeyer@whitecase.com

*Counsel to the Ad Hoc Group of Freedom Lenders*