**<u>Exhibit A</u>**

Policy No. 0313-9683

**ALLIED WORLD INSURANCE COMPANY**

---

# EXECUTIVE FORCEFIELD™

## SIDE 'A' DIRECTORS & OFFICERS EXCESS AND
## LEAD DIFFERENCE-IN-CONDITIONS ("DIC") INSURANCE POLICY

**POLICY NUMBER: 0313-9683**
**RENEWAL OF:  New**

NOTICE: EXCEPT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE AFFORDED BY THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST, OR PRE-CLAIM INQUIRIES FIRST RECEIVED BY, THE INSURED PERSONS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD IF APPLICABLE, AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.

THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY THE PAYMENT OF DEFENSE COSTS.

THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.

PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE BROKER.

---

## DECLARATIONS

**ITEM 1:** COMPANY:    Franchise Group, Inc.

ADDRESS:    109 Innovation Court - Suite J

Delaware, OH 43015

**ITEM 2:** POLICY PERIOD:
Inception Date:                    August 21, 2023
Expiration Date:                   August 21, 2024
(above dates at 12:01 a.m. Local Time at the address stated in Item 1

**ITEM 3:** LIMIT OF LIABILITY:         $5,000,000
aggregate for all **Loss** under this Policy, including **Defense Costs**

SINGLE CLAIM LIMIT:          $5,000,000 each **Single Claim**

EXCESS OF TOTAL
UNDERLYING LIMITS OF:       $25,000,000

**ITEM 4:** REINSTATED LIMITS
OF LIABILITY AND
SUBLIMITS OF LIABILITY:

1

**DECLARATIONS** (continued)                    POLICY NO.: **0313-9683**

    A.  FIRST REINSTATEMENT          $5,000,000
    aggregate for all **Loss**, including **Defense Costs**, which are subject to the **First Reinstated Limit**

    B.  SECOND REINSTATEMENT        $5,000,000
    aggregate for all **Loss**, including **Defense Costs**, which are subject to the **Second Reinstated Limit**

    C.  LIMIT FOR
    POLICY ACCESS COSTS            $250,000
    aggregate for all **Policy Access Costs** under this Policy

    D.  SUBLIMIT FOR
    ASSET PROTECTION COSTS         $250,000
    aggregate for all **Asset Protection Costs** under this Policy

    E.  SUBLIMIT FOR
    REPUTATION COSTS              $250,000
    aggregate for all **Reputation Costs** under this Policy

**ITEM 5:**  FOLLOWED POLICY

| Insurer | Policy Number | Limit of Liability | Policy Period |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. | 01-420-28-24 | $5,000,000 | August 21, 2023 to August 21, 2023 |

**ITEM 6:**  PREMIUM:                    $24,920.00

2

DO 00600 00 (11/16)

**DECLARATIONS** (continued)                    POLICY NO.: **0313-9683**

**ITEM 7:  EXTENDED REPORTING PERIOD**

| Financial Impairment | 10 years | No additional premium |
|---|---|---|
| Locally Required | As per local law | No additional premium |
| Change in Control | 1 year<br>3 years<br>6 years<br>10 years | Not more than:<br>100% of Premium<br>125% of Premium<br>175% of Premium<br>200% of Premium |
| Cancellation/Non-Renewal | 1 year<br>3 years<br>6 years<br>10 years | Not more than:<br>75% of Premium<br>125% of Premium<br>175% of Premium<br>200% of Premium |

**ITEM 8:   ADDRESS OF INSURER FOR NOTICES UNDER THIS POLICY**

    A.  Claim-Related Notices:

        E-mail:  AWACUS.FinancialClaims@awac.com
        Fax:      860.284.1307

        ALLIED WORLD INSURANCE COMPANY
        ATTN: CLAIMS DEPARTMENT
        1690 New Britain Ave., Suite 101

        Farmington, CT 06032

    B.  All Other Notices:

        ALLIED WORLD INSURANCE COMPANY
        ATTN: PROFESSIONAL LIABILITY UNDERWRITING
        199 WATER STREET
        NEW YORK, NY 10038

**IN WITNESS WHEREOF**, the Insurer has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____                    _____
          PRESIDENT                                                                          SECRETARY

                      _____
                        AUTHORIZED REPRESENTATIVE

DO 00600 00 (11/16)

Endorsement No.: 1
This endorsement, effective:  August 21, 2023
(at 12:01 a.m. Standard Time at the address of the Company as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0313-9683
Issued to: Franchise Group, Inc.**By:** Allied World Insurance Company

## OHIO AMENDATORY ENDORSEMENT

A.  It is understood and agreed that Definition (o) **"Loss"** of Section **4. DEFINITIONS** is deleted in its entirety and replaced by the following:

    (o)    **"Loss"** means:

        (i)    compensatory damages;

        (ii)    judgments, settlements, pre-judgment and post-judgment interest;

        (iii)    plaintiffs' legal fees;

        (iv)    fines or penalties imposed by law against an **Insured Person**, including but not limited to:

            (a)    civil or criminal fines or penalties pursuant to the Sarbanes-Oxley Act of 2002 including but not limited to Section 308;

            (b)    civil or criminal fines or penalties pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act;

            (c)    civil or criminal fines or penalties assessed pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. 78dd-2(g)(2)(B), or Section 11(1)(a) of the United Kingdom Bribery Act of 2010, Chapter 23, or any statute or law in any other jurisdiction; and

            (d)    civil or criminal fines or penalties pursuant to the Food, Drug and Cosmetic Act;

        (v)    taxes imposed by law upon an **Insured Person** in his or her capacity or status as such or taxes imposed by law upon the **Company** for which **Insured Persons** are legally liable;

        (vi)    taxes imposed upon an **Insured Person** due to any payment of **Loss** by the **Insurer** under this Policy;

        (vii)    **UK Corporate Manslaughter Act Defense Costs**;

        (viii)    **Facilitation Costs**;

        (ix)    **Liberty Protection Costs**;

        (x)    **Policy Access Costs**;

        (xi)    **Mitigation Costs**;

(xii)    **Asset Protection Costs**;

(xiii)   **Reputation Costs**;

(xiv)    **Defense Costs**; and

(xv)     **Pre-Claim Inquiry Costs**.

The insurability of items (iv), (v) and (vi) above shall be determined by the law of the applicable jurisdiction that most favors the insurability of such damages, fines, penalties or taxes. Such applicable jurisdictions shall include, but not be limited to,  the jurisdiction where: (a) the **Claim** for such damages, fines, penalties or taxes was made or brought; (b) the **Wrongful Acts** giving rise to the **Claim** for such damages, fines, penalties or taxes took place; (c) the **Insured Person(s)** who is subject to such damages, fines, penalties or taxes resides or where the **Company** of such **Insured Person(s)** is incorporated or has its principle place of business; and (d) the **Insurer** is incorporated or has its principle place of business. If the **Company** or an **Insured Person** presents a written opinion from legal counsel stating that such damages, fines, penalties or taxes are insurable under the law of such applicable jurisdiction, the **Insurer** shall not challenge that determination. The cost of such opinion shall be borne by the **Insurer**.

The **Insurer** shall not assert that any **Loss** incurred by an **Insured Person** is uninsurable due to the **Insured Person's** actual or alleged violation of:

(i)     Section 11 or 12 of the Securities Act of 1933, as amended, including without limitation such **Loss** of a "controlling person" within the meaning of Section 15 of the Securities Act of 1933, as amended;

(ii)    Section 304 of Sarbanes-Oxley;

(iii)   Section 210 or Section 954 of Dodd-Frank; or

(iv)    the Food, Drug and Cosmetic Act, 21 U.S.C. Section 301, et seq.

However, **Loss** shall not include punitive or exemplary damages.

B.  It is understood and agreed that Paragraph B. and C. of Clause 14. CANCELLATION is deleted in its entirety and replaced by the following:

B.      This Policy also may be cancelled by the **Insurer** but solely due to the non-payment of premium by the **Insured**. The **Insurer** may cancel the Policy by delivering or mailing to the **Company**, and it's agent, by registered mail or by courier, at the last known address, written notice stating the reason for cancellation and when, not less than thirty (30) days thereafter, cancellation shall be effective unless the unpaid premium is paid to the insurer prior to such cancellation effective date.  The mailing of such notice as aforesaid shall be sufficient proof of notice. In the event of such cancellation, the Policy will be deemed terminated as of the date indicated in the **Insurer's** written notice of cancellation to the **Company**.

C.      If the period of limitation relating to the giving of notice of cancellation is prohibited or made void by any law controlling the construction thereof, such period shall be

deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

C.   It is understood and agreed that the following Clause is added to the policy:

**NONRENEWAL**

If the **Insurer** decides not to renew this Policy, the **Insurer** will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal to the **Company**, and it's agent, at the last known address, at least thirty (30) days before the expiration date of the Policy. Proof of mailing of any notice shall be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 2
This endorsement, effective: August 21, 2023
(at 12:01 a.m. Local Time at the address as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0313-9683
Issued to: Franchise Group, Inc.
By: Allied World Insurance Company

## AMEND PREAMBLE

It is understood and agreed that the preamble to this Policy is deleted in its entirety and replaced with the following:

> In consideration of the payment of the premium, *Allied World Insurance Company* (herinafter the **"Insurer"**), the **Company** and the **Insured Persons** agree as follows:

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00723 00 (04/18)

Endorsement No.: 3
This Endorsement, effective: August 21, 2023
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0313-9683
Issued to: Franchise Group, Inc.
By: Allied World Insurance Company

## TRADE AND ECONOMIC SANCTIONS

It is understood and agreed that this Policy is amended as follows:

The Insurer shall not be deemed to provide cover nor be liable to pay any claim or provide any benefit under this Policy to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer to any sanction, prohibition or restriction, including under United Nations resolutions, or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom, or United States of America.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

IL 00052 00 (04/22)

**POLICYHOLDER DISCLOSURE STATEMENT**
**UNDER THE**
**TERRORISM RISK INSURANCE ACT – OHIO**

The Insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the Insured has a right to purchase insurance coverage for losses arising out of an Act of Terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in case of certain air carriers or vessels or the premises of a United States. mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The Insured should read the Act for a complete description of its coverage. The decision to certify or not to certify an event as an Act of Terrorism covered by this law is final and not subject to review.

The Insured should know that where coverage is provided by this policy for losses caused by a Certified Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law. However, the insured's policy may contain other exclusions that might affect coverage, such as an exclusion for nuclear events. Under the formula, the United States generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible that must be met by the Insurer, and which deductible is based on a percentage of the Insurer's direct earned premiums for the year preceding the Act of Terrorism

Be advised that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion. If aggregate insured losses attributable to Acts of Terrorism exceed $100 billion in a Program Year and the Insurer has met its deductible under the Act, the Insurer shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Acts of Terrorism.

Please indicate the selection of the Insured below.

_____    The Insured hereby elects to purchase coverage in accordance with the Act for a premium of $0.00.

_____    The Insured hereby rejects coverage and accepts the exclusion in accordance with the Act.

_____          Franchise Group, Inc.
Signature of Insured


_____          0313-9683
Print/Title


_____
Date



**ALLIED WORLD INSURANCE COMPANY**

_____

## EXECUTIVE FORCEFIELD™
### SIDE 'A' DIRECTORS & OFFICERS EXCESS AND
### LEAD DIFFERENCE-IN-CONDITIONS ("DIC") INSURANCE POLICY

_____

In consideration of the payment of the premium and in reliance upon the **Application**, ALLIED WORLD INSURANCE COMPANY (herein the **"Insurer"**), the **Company** and the **Insured Persons** agree as follows:

**1.    INSURING AGREEMENT**

The **Insurer** shall pay on behalf of the **Insured Persons** the **Non-Indemnified Loss** incurred by the **Insured Persons** arising from:

A.    any **Claim** first made during the **Policy Period** (or Extended Reporting Period, if applicable) against such **Insured Person**; and

B.    any **Pre-Claim Inquiry** first received by an **Insured Person** during the **Policy Period** (or Extended Reporting Period, if applicable),

if such **Non-Indemnified Loss** is not paid by any **Underlying Insurer** for any reason including due to a **DIC Event**.

**2.    EXTENSIONS**

A.    MITIGATION COSTS

The **Insurer** shall pay on behalf of the **Insured Persons** the **Mitigation Costs** that are incurred by the **Insured Persons** and that are reasonably expected to reduce the likelihood or severity of **Non-Indemnified Loss** resulting from a potential **Claim** which would be covered under this Policy.

B.    POLICY ACCESS COSTS

(i)    The **Insurer** shall pay the **Policy Access Costs** on behalf of any **Insured Persons**.

(ii)   **Policy Access Costs** are subject to a Limit of Liability as set forth in Item 4.C of the Declaration. Such Limit of Liability: (a) is the **Insurer's** maximum liability under this Policy for all **Policy Access Costs**; and (b) is not part of, and is in addition to, the Limit of Liability set forth in Item 3 of the Declarations. The Reinstated Limits of Liability shall not apply to **Policy Access Costs**.

C.    ASSET PROTECTION COSTS

(i)    The **Insurer** shall pay the **Asset Protection Costs** on behalf of any **Insured Persons**.

1

(ii)    **Asset Protection Costs** are subject to a Sublimit of Liability as set forth in Item 4.D of the Declarations. Such Sublimit of Liability: (a) is the **Insurer's** maximum liability under this Policy for all **Asset Protection Costs**; and (b) is part of, and not in addition to, the Limit of Liability set forth in Item 3 of the Declarations. The Reinstated Limits of Liability shall not apply to **Asset Protection Costs**.

D.    REPUTATION COSTS

(i)    The **Insurer** shall pay the **Reputation Costs** on behalf of an **Insured Person**, with the **Insurer's** prior written consent (such consent not to be unreasonably withheld or delayed), as a result of a negative public statement made about such **Insured Person** by any **Regulator** during the **Policy Period** (or Extended Reporting Period, if applicable).

(ii)    **Reputation Costs** are subject to a Sublimit of Liability as set forth in Item 4.E of the Declarations. Such Sublimit of Liability: (a) is the **Insurer's** maximum liability under this Policy for all **Reputation Costs**; and (b) is part of, not in addition to, the Limit of Liability set forth in Item 3 of the Declarations. The Reinstated Limits of Liability shall not apply to such **Reputation Costs**.

E.    EXTENDED REPORTING PERIOD: RETIRED INSURED PERSONS

(i)    This Policy shall automatically afford an Extended Reporting Period for any **Insured Person** who ceases to serve in their capacity as such for any reason (other than due to an **Organizational Change**) prior to or during the **Policy Period**, provided that this Policy is either cancelled or is not renewed or replaced, or is renewed or replaced with a policy that does not provide similar coverage for such **Insured Persons**. This Extended Reporting Period shall be for a period of unlimited duration following the effective date of such cancellation, non-renewal or renewal without similar protection.

(ii)    No additional premium shall be charged or payable for this Extended Reporting Period.

F.    EXTENDED REPORTING PERIOD: FINANCIAL IMPAIRMENT

(i)    This Policy shall automatically afford an Extended Reporting Period of ten (10) years from the end of the **Policy Period**, or the effective date of the cancellation or non-renewal of this Policy, in the event the **Financial Impairment** of the entity named in Item 1 of the Declarations occurs during the **Policy Period**, and provided that this Policy is either cancelled or is not renewed or replaced.

(ii)    No additional premium shall be charged or payable for this Extended Reporting Period.

G.    EXTENDED REPORTING PERIOD:  LOCALLY REQUIRED

(i)    The duration of any Extended Reporting Period otherwise afforded under this Policy shall be the longer of the duration otherwise described in this Policy or the **Locally Required Discovery Period** applicable to any **Claim** or **Pre-**

DO 00601 00 (11/16)

       **Claim Inquiry** brought and maintained against an **Insured Person** in a jurisdiction that has such **Locally Required Discovery Period**.

  (ii)    No additional premium shall be charged or payable for this longer Extended Reporting Period.

H.     EXTENDED REPORTING PERIOD:  CHANGE IN CONTROL

If an **Organizational Change** occurs, the **Company** and/or any **Insured Person** shall have the right to purchase an Extended Reporting Period of up to ten (10) years, as of the date the **Organizational Change** takes effect, for an additional premium as stated in Item 7 of the Declarations less the pro-rata proportion of the premium for that portion of the **Policy Period** remaining as of the effective date of the **Organizational Change**. The right to purchase such Extended Reporting Period shall terminate unless the **Insurer** receives notice of such election and payment of the additional premium within sixty (60) days after the end of the **Policy Period**.

I.     EXTENDED REPORTING PERIOD:  CANCELLATION AND NON-RENEWAL

If the Policy is either cancelled or is not renewed or replaced, the **Company** and/or any **Insured Person** shall have the right to purchase an Extended Reporting Period of up to ten (10) years for an additional premium as stated in Item 7 of the Declarations. The right to purchase such Extended Reporting Period shall terminate unless the **Insurer** receives notice of such election and payment of the additional premium within sixty (60) days after the end of the **Policy Period**.

J.     MULTIPLE EXTENDED REPORTING PERIODS

If more than one Extended Reporting Period is afforded or purchased under this Policy, such Extended Reporting Periods shall run concurrently and not sequentially and shall not increase the Limit of Liability or Sublimit of Liability otherwise applicable under this Policy.

K.     SPOUSAL / ESTATES COVERAGE EXTENSIONS

  (i)    This Policy shall afford coverage for any **Claim** or **Pre-Claim Inquiry** against the estates, trusts, estate planning vehicles, heirs, legal representatives or assigns of an **Insured Person** who is dead, incompetent, insolvent or bankrupt to the extent such **Claim** or **Pre-Claim Inquiry**, if brought against the **Insured Person**, would have been covered by this Policy in the absence of such **Insured Person's** death, incompetency, insolvency or bankruptcy.

  (ii)    This Policy shall afford coverage for a **Claim** or **Pre-Claim Inquiry** against an **Insured Person's** lawful spouse or domestic partner (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world, or by a program established by the **Company**) solely by reason of such person's status as an **Insured Person's** lawful spouse or domestic partner, or such person's ownership interest in property which the claimant seeks as recovery. This Coverage Extension shall only apply to the extent such **Claim** or **Pre-Claim Inquiry**, if brought against the **Insured Person**, would have been covered.

**3.**    **FOLLOW FORM CLAUSE**

In the event the terms and conditions of any **Underlying Policy** provides more favorable

3

coverage for an **Insured Person** than is provided by this Policy, then, notwithstanding anything to the contrary herein, this Policy is amended to provide coverage pursuant to such broader terms and conditions; however, the coverage provided by this Policy shall remain subject to the following provisions of this Policy:

> Item 3 of the Declarations (Limit of Liability);
> Item 4 of the Declarations (Reinstated Limits of Liability and Sublimits of Liability);
> Clause 6.      LIMIT OF LIABILITY;
> Clause 7.      NOTICE PROVISIONS;
> Clause 9.      ADVANCEMENT OF COSTS;
> Clause 10.    PARTICIPATION AND COOPERATION;
> Clause 11.    EXTENDED REPORTING PERIOD;
> Clause 12.    SEVERABILITY AND NON-RESCISSION;
> Clause 14.    CANCELLATION;
> Clause 15.    OTHER INSURANCE;
> Clause 21.    SUBROGATION;

> and any specific endorsement(s) to the Policy.

Notwithstanding the above, this Policy shall not cover the **Company** for any **Claim** or **Pre-Claim Inquiry** made against the **Company** or any amounts that the **Company** pays to indemnify, or pays on behalf of, any **Insured Person**.

## 4.    DEFINITIONS

(a)    **"Asset Protection Costs"** means reasonable fees, costs and expenses consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) and incurred by an **Insured Person** to oppose a **Regulator's** efforts to seize or otherwise enjoin such **Insured Person's** personal assets or real property or to obtain the discharge or revocation of a court order entered during the **Policy Period** that in any way impairs the use of such assets or property, provided (i) such **Regulator's** efforts are in connection with a **Claim** or **Pre-Claim Inquiry** otherwise covered under this Policy, and (ii) such fees, costs and expenses are not otherwise covered under this Policy.

(b)    **"Claim"** means any:

(i)    written demand against an **Insured Person** for monetary, non-monetary, injunctive or equitable relief;

(ii)    judicial, civil, administrative, regulatory, supervisory, or disciplinary proceeding against any **Insured Person**, including any third party proceeding, counterclaim or employment tribunal proceeding, or any appeal therefrom;

(iii)    criminal proceeding against any **Insured Person**, including any formal application to a court to prevent the commencement of a criminal proceeding against any such **Insured Person** or any appeal of such proceeding;

(iv)    formal civil, criminal, administrative or regulatory investigation of an **Insured Person** once the **Insured Person** is identified in any writing by a **Regulator** as a target of an investigation that may lead to a criminal, civil, administrative, regulatory or enforcement proceeding (such writing includes a target or "Wells" letter, whether or not labeled as such);

DO 00601 00 (11/16)

(v) arrest and detainment or incarceration for more than twenty-four (24) hours of the **Insured Person** by any law enforcement authority;

(vi) arbitration, mediation or any other alternative dispute resolution proceeding involving a demand or proceeding against or an investigation of an **Insured Person**;

(vii) written request to toll or waive the applicable statute of limitations or contractual time-bar or to otherwise extend the period during which a potential or threatened **Claim** can be brought against an **Insured Person**;

(viii) request for **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**;

for a **Wrongful Act**;

(ix) any other matter not included here that is defined as a claim or equivalent in any **Underlying Policy**; or

(x) any written notice to the **Insurer** by the **Company** or any **Insured Person** prior to the end of the **Policy Period** (or Extended Reporting Period, if applicable) describing circumstances that may reasonably be expected to give rise to a **Claim** as set forth in Clause 7 of this Policy.

**"Claim"** does not include a **Pre-Claim Inquiry**.

(c) **"Company"** means:

(i) the entity named in Item 1 of the Declarations;

(ii) any **Subsidiary**;

(iii) any entity described in (i) or (ii) above as a debtor-in-possession under United States bankruptcy law or similar status in any other jurisdiction;

(iv) any political action group or committee controlled by any entity described in (i) or (ii) above; and

(v) any scholarship fund sponsored or controlled by any entity described in (i) or (ii) above.

(d) **"Defense Costs"** means:

(i) reasonable fees, costs, charges or expenses incurred by an **Insured Person** in the investigation, defense, settlement or appeal of a **Claim** (including attorneys' fees and experts' fees);

(ii) reasonable fees, costs, charges or expenses incurred by an **Insured Person** in opposing, challenging, resisting or defending against any request for, or an effort to obtain, an **Extradition** or appealing any order or other grant of **Extradition** (including attorneys' fees and experts' fees);

(iii) reasonable fees, costs, charges or expenses incurred by an **Insured Person** in response to, preparation for, attendance at or provision of information for an investigation of an **Insured Person**;

(iv)     reasonable fees, costs, charges or expenses incurred by an **Insured Person** to gain or compel access to records, documents or information in connection with a **Claim**, or, at the request of the **Insurer**, to assist the **Insurer** in the investigation, defense, settlement or appeal of a **Claim**; and

(v)     premium for an appeal, attachment or similar bonds, but without any obligation by the **Insurer** to apply for and obtain such bonds.

**"Defense Costs"** does not include:  (i) any salary, wages, compensation or benefits of any **Insured Person** or any overhead expenses of the **Company** or the **Company's** costs for responding to or complying with a request or demand for information, documents or information in connection with any **Claim**; (ii) amounts paid to settle a **Claim**; or (iii) **Pre-Claim Inquiry Costs**.

(e)     **"DIC Event"** means any of the following:

(i)     failure of an **Underlying Insurer** to indemnify any **Insured Person** for the **Non-Indemnified Loss** within forty-five (45) days after such indemnification is requested by, or on behalf of, the **Insured Person**;

(ii)     according to the terms and conditions of the **Underlying Policy**, the **Underlying Insurer** is not liable for the **Non-Indemnified Loss** including where there is an obligation in any **Underlying Policy** to report a **Claim** which has not been satisfied;

(iii)     refusal or denial of any **Underlying Insurer** to provide coverage for any reason to any **Insured Person** for any portion of the **Non-Indemnified Loss** as required under the terms of the **Underlying Policy**;

(iv)     actual, attempted or intended avoidance, rescission or cancellation of any **Underlying Policy** by an **Underlying Insurer**;

(v)     before, during or after the **Policy Period**, any **Underlying Insurer** being subject to a receivership, liquidation, bankruptcy, insolvency, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority;

(vi)     failure or refusal of an **Underlying Insurer** to pay the **Non-Indemnified Loss** because the proceeds of the **Underlying Policy** are subject to an injunction or other order prohibiting such payment or to the automatic stay under the U.S. Bankruptcy Code or any similar state, foreign, local or common law in another country; and

(vii)     failure or refusal of an **Underlying Insurer** to pay the **Non-Indemnified Loss** because the **Underlying Insurer** does not hold a local license or is not authorized in the applicable jurisdiction to underwrite or provide the coverage provided by the **Underlying Policy** in such jurisdiction.

(f)     **"Extradition"** means any process by which an **Insured Person** located in any country is surrendered, or sought to be surrendered, to any other country for trial or otherwise to answer any accusation, for a **Wrongful Act**.

(g)     **"Facilitation Costs"** means the reasonable fees, costs and expenses (including the premium for a bond and the origination fee for a loan) consented to by the **Insurer**

6

(such consent not to be unreasonably withheld or delayed) and incurred by any **Insured Person** to facilitate:

(i) the repayment or return of any compensation, or of any profits from the sale of securities of the **Company**, as requested or required pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") or other similar legislation, common law or any internal policy of the **Company** promulgated thereunder; or

(ii) the repayment or return of any compensation as requested or required pursuant to Section 210 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") or other similar legislation, common law or any internal policy of the **Company** promulgated thereunder.

(iii) the repayment or return of any compensation as requested or required pursuant to the Food, Drug and Cosmetic Act, 21 U.S.C. Section 301, et seq. ("FDA") or other similar legislation, common law or any internal policy of the **Company** promulgated thereunder.

**"Facilitation Costs"** does not include the repayment, return, reimbursement, disgorgement or restitution of any such compensation or profits as described in (i), (ii) or (iii) above.

(h) **"Financial Impairment"** means:

(i) an entity becoming a debtor-in-possession;

(ii) the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate an entity; or

(iii) the filing of a petition, by or on behalf of an entity, under the bankruptcy laws of the United States of America, or any rules or regulations promulgated thereunder, or any similar statutory or common laws in any jurisdiction.

(i) **"Followed Policy"** means the policy set forth in Item 5 of the Declarations.

(j) **"Foreign Jurisdiction"** means any jurisdiction other than the United States, its territories and possessions.

(k) **"Independent Director(s)"** means any past, present or future director, **Manager**, "de facto" director, shadow director or trustee (other than a bankruptcy liquidator, trustee or receiver) of the **Company** or equivalent or comparable position with the **Company**, but only in the event such person:

(i) is not, and never has been, an executive officer or employee of any **Company**; or

(ii) has not been an executive officer or employee of any **Company** in the past three years.

(l) **"Insured Person(s)"** means:

DO 00601 00 (11/16)

(i)     any past, present or future duly elected or appointed director, officer, trustee (other than a bankruptcy liquidator, trustee or receiver), governor, or **Manager** of the **Company**;

(ii)    any past, present or future general counsel, comptroller, "de facto" director, shadow director, risk manager or director of investor relations of the **Company** or any other natural person in an equivalent or comparable position;

(iii)   with respect to any **Company** incorporated or based outside the United States, any natural person in an equivalent or comparable position to those described in (i) or (ii) above in any such other jurisdiction;

(iv)    any person serving as a representative of an entity that serves as a director of the **Company**;

(v)     any prospective director of a **Company** named in any registration statement, prospectus or similar offering document;

(vi)    any other natural person not described in (i), (ii), (iii), (iv) or (v) above who was, now is or shall be a full-time, part-time, seasonal or temporary employee of the **Company**; however, such person is an **Insured Person** only during such time as the **Claim** against such person is also made against, or the **Pre-Claim Inquiry** directed to such person is also directed to, a person described in (i), (ii), (iii), (iv) or (v) above;

(vii)   any past, present or future member of any advisory board or management committee of the **Company**; or

(viii)  any **Outside Entity Insured Person**.

"**Insured Person(s)**" will not be construed to include the **Company** or any other entity.

(m)     "**Liberty Protection Costs**" means:

(i)     reasonable fees, costs and expenses consented to in writing by the **Insurer** (such consent not to be unreasonably withheld or delayed) and incurred by an **Insured Person** in order to lawfully seek the release of such **Insured Person** from any arrest or confinement to a specified residence or a custodial premises, if such arrest or confinement is otherwise a **Claim** or **Pre-Claim Inquiry**; or

(ii)    reasonable premiums (but not collateral) consented to in writing by the **Insurer** (such consent not to be unreasonably withheld or delayed) and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of such **Insured Person** for a specified amount required by a court during the **Policy Period**, if such obligation:

(a)     arises out of a **Wrongful Act**; or

(b)     is incurred by reason of such **Insured Person's** capacity or status as such.

DO 00601 00 (11/16)

(n)     **"Locally Required Discovery Period"** means the minimum period imposed or required by applicable local law during which a **Claim** made against any **Insured Person** can be notified to a policy after the **Policy Period**.

(o)     **"Loss"** means any amount the **Insured Persons** are legally obligated to pay by reason of a **Claim**, including without limitation:

    (i)     compensatory damages;

    (ii)     punitive, aggravated or exemplary damages or the multiple portion of a multiplied damages award;

    (iii)     judgments, settlements, pre-judgment and post-judgment interest;

    (iv)     plaintiffs' legal fees;

    (v)     fines or penalties imposed by law against an **Insured Person**, including but not limited to:

        (a)     civil or criminal fines or penalties pursuant to the Sarbanes-Oxley Act of 2002 including but not limited to Section 308;

        (b)     civil or criminal fines or penalties pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act;

        (c)     civil or criminal fines or penalties assessed pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. 78dd-2(g)(2)(B), or Section 11(1)(a) of the United Kingdom Bribery Act of 2010, Chapter 23, or any statute or law in any other jurisdiction; and

        (d)     civil or criminal fines or penalties pursuant to the Food, Drug and Cosmetic Act;

    (vi)     taxes imposed by law upon an **Insured Person** in his or her capacity or status as such or taxes imposed by law upon the **Company** for which **Insured Persons** are legally liable;

    (vii)     taxes imposed upon an **Insured Person** due to any payment of **Loss** by the **Insurer** under this Policy;

    (viii)     **UK Corporate Manslaughter Act Defense Costs**;

    (ix)     **Facilitation Costs**;

    (x)     **Liberty Protection Costs**;

    (xi)     **Policy Access Costs**;

    (xii)     **Mitigation Costs**;

    (xiii)     **Asset Protection Costs**;

    (xiv)     **Reputation Costs**;

    (xv)     **Defense Costs**; and

DO 00601 00 (11/16)

      (xvi)    **Pre-Claim Inquiry Costs**.

The insurability of items (ii), (v), (vi) and (vii) above shall be determined by the law of the applicable jurisdiction that most favors the insurability of such damages, fines, penalties or taxes. Such applicable jurisdictions shall include, but not be limited to, the jurisdiction where: (a) the **Claim** for such damages, fines, penalties or taxes was made or brought; (b) the **Wrongful Acts** giving rise to the **Claim** for such damages, fines, penalties or taxes took place; (c) the **Insured Person(s)** who is subject to such damages, fines, penalties or taxes resides or where the **Company** of such **Insured Person(s)** is incorporated or has its principle place of business; and (d) the **Insurer** is incorporated or has its principle place of business. If the **Company** or an **Insured Person** presents a written opinion from legal counsel stating that such damages, fines, penalties or taxes are insurable under the law of such applicable jurisdiction, the **Insurer** shall not challenge that determination. The cost of such opinion shall be borne by the **Insurer**.

The **Insurer** shall not assert that any **Loss** incurred by an **Insured Person** is uninsurable due to the **Insured Person's** actual or alleged violation of:

      (i)      Section 11 or 12 of the Securities Act of 1933, as amended, including without limitation such **Loss** of a "controlling person" within the meaning of Section 15 of the Securities Act of 1933, as amended;

      (ii)    Section 304 of Sarbanes-Oxley;

      (iii)   Section 210 or Section 954 of Dodd-Frank; or

      (iv)   the Food, Drug and Cosmetic Act, 21 U.S.C. Section 301, *et seq.*

(p)    **"Management Control"** means: (i) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of the board of directors of a corporation, or the management committee members of a joint venture or the members of the management board of a limited liability company; or (ii) having the right, pursuant to a written contract or the by-laws, charter, operating agreement or similar documents of an entity, to elect, appoint or designate a majority of the board of directors of a corporation, or the management committee of a joint venture, or the management board of a limited liability company.

(q)    **"Manager"** means any natural person who was, now is or shall become:

      (i)      a manager or member of the board of managers, or any functionally equivalent or comparable executive, of a limited liability company; or

      (ii)    a general partner or managing partner, or any functionally equivalent or comparable executive, of a partnership,

including without limitation any such person serving in a management position in such limited liability company or partnership in accordance with such organization's operating agreement or partnership agreement.

(r)    **"Mitigation Costs"** means the reasonable costs, charges, fees and expenses consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) and incurred by an **Insured Person** to reduce the likelihood or severity of any **Non-Indemnifiable Loss** resulting from any potential **Claim** to which this Policy would respond.

10

(s)    **"Non-Indemnified Loss"** means **Loss** incurred by an **Insured Person** for which the **Company** or, if applicable, the **Outside Entity**:

(i)    is neither permitted, nor required, to indemnify or advance;

(ii)    refuses, or is financially unable, to indemnify or advance; or

(iii)    fails, within forty-five (45) days after a request by, or on behalf of, the **Insured Person** to indemnify or advance.

(t)    **"Organizational Change"** means:

(i)    the **Company** named in Item 1 of the Declarations consolidates with or merges into another entity such that such **Company** is not the surviving entity, or sells all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(ii)    any person or entity, or group of persons or entities acting in concert, acquiring **Management Control** of the **Company** named in Item 1 of the Declarations.

(u)    **"Outside Entity"** means:

(i)    any not-for-profit entity, community chest, fund or foundation; or

(ii)    any other entity; or

(iii)    any entity listed as such in an Endorsement to this Policy;

for which an **Insured Person** serves as a director, officer, board observer, trustee, governor or **Manager** (or an equivalent or comparable position) at the request or direction of the **Company**.  Any such **Insured Person** shall be referred to herein as an **"Outside Entity Insured Person."**

(v)    **"Policy Access Costs"** means reasonable fees, costs and expenses consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) and incurred by an **Insured Person** who is a director or officer of the **Company** to investigate and defend against efforts by any other **Insured Person** or any third party (i) to seize or attach this Policy or any **Underlying Policy**, or (ii) to enjoin such director or officer **Insured Person** from gaining access to the Limits of Liability provided by this Policy or any **Underlying Policy**.

(w)    **"Policy Period"** means the period of time from the Inception Date shown in Item 2 of the Declarations to the Expiration Date shown in Item 2 of the Declarations.

(x)    **"Pre-Claim Inquiry"** means:

(i)    any informal investigation of an **Insured Person**;

(ii)    any verifiable request for an **Insured Person**:

(a)    to appear at a meeting, deposition or interview, or to provide a witness statement or other testimony; or

11

(b)       to produce documents or electronic data or records;

but only if any such request is made:

A.    by a **Regulator**;

B.    by or on behalf of a **Company**, by its board of directors (or the equivalent management body) or any committee of, or formed by, the board of directors (or the equivalent management body);

C.    by a court-appointed examiner, trustee, receiver, liquidator, rehabilitator or similar official of the **Company** in any bankruptcy proceeding or state or foreign equivalent by or against the **Company**; or

D.    by any party to any litigation, arbitration or other type of proceeding in which the **Company**, any **Insured Person** and/or any employee of the **Company** is a party;

(iii)    arrest or confinement of an **Insured Person** to a:

(a)    specific residence; or

(b)    custodial premises,

provided such arrest or confinement is otherwise not a **Claim**; or

(iv)    any raid or on-site visit by a **Regulator** that entails the production, review, copying or confiscation of records or interviews of any **Insured Person**;

in connection with the business of a **Company** or such **Insured Person's** capacity or status as such, whether or not such **Insured Person** allegedly committed a **Wrongful Act**.

"**Pre-Claim Inquiry**" does not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit.

(y)    "**Pre-Claim Inquiry Costs**" means the reasonable fees, costs, charges and expenses consented to by the **Insurer** (such consent not to be unreasonably withheld or delayed) and incurred by an **Insured Person**:

(i)    in connection with preparing for and responding to a **Pre-Claim Inquiry** directed to such **Insured Person**, including the cost incurred by such **Insured Person** in attending an interview or meeting or in producing documents in his or her possession; and

(ii)    in lawfully seeking the release of such **Insured Person** from any arrest or confinement as described in Definition (x) (iii).

"**Pre-Claim Inquiry Costs**" does not include:

(a)    any compensation of any **Insured Person**; or

12

(b)    the costs of complying with any formal or informal discovery or other request for documents, records or electronic information in the possession or control of a **Company**, the requesting party or any other third-party.

(z)    **"Prior Allied World DIC Policy"** means the immediately preceding 'Side-A' Directors & Officers DIC Insurance Policy issued by the **Insurer** to the **Company** named in Item 1 of the Declarations, of which this Policy is a direct renewal or replacement.

(aa)    **"Regulator"** means:

    (i)    any federal, state, local or foreign law enforcement authority or other governmental investigative, regulatory or administrative authority or entity (including but not limited to the U.S. Department of Justice, the U.S. Securities and Exchange Commission or any attorney general); or

    (ii)    the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

(bb)    **"Reputation Costs"** means the reasonable fees, costs and expenses charged by any firm that is listed in Appendix A of this Policy and incurred by an **Insured Person** to mitigate the adverse effects to such **Insured Person's** reputation as a result of a negative statement made about him or her by a **Regulator** relating to a **Claim** otherwise covered under this Policy, provided such fees, costs and expenses are not otherwise covered under the Policy.

(cc)    **"Single Claim"** means all **Claims** arising out of, based upon, or attributable to the same facts, circumstances, situations, transactions, events, acts, errors or omissions, or series of related facts, circumstances, situations, transactions, events, acts, errors or omissions.

(dd)    **"Single Claim Limit"** means the Single Claim Limit of Liability stated in Item 3 of the Declarations.

(ee)    **"Subsidiary"** means:

    (i)    any entity deemed to be, or included, as a subsidiary under the **Followed Policy**; or

    (ii)    any entity of which the **Company** has **Management Control**, regardless of any asset threshold stated in the **Followed Policy**.

No additional premium shall be charged by or payable to the **Insurer** with respect to any **Subsidiary** created or acquired during the **Policy Period**.

(ff)    **"UK Corporate Manslaughter Act Defense Costs"** means **Defense Costs** incurred by an **Insured Person** that result from the investigation, adjustment, defense and/or appeal of a **Claim** against a **Company** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute or law in any other jurisdiction.

(gg)    **"Underlying Insurer(s)"** means the insurer(s) that have issued the **Underlying Policies**.

13

(hh)  **"Underlying Policies"** means the underlying policies that provide the Total Underlying Limits as set forth in Item 3 of the Declarations, including without limitation the **Followed Policy** and all other underlying policies expressly excess of the **Followed Policy**.

(ii)  **"Wrongful Act(s)"** means any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, statement, misstatement or misleading statement, or professional service or advice provided to the **Company**, by an **Insured Person** in his or her capacity as such, including as a fiduciary of any employee benefit plan sponsored by the **Company**, or any matter claimed against an **Insured Person** by reason of such capacity or status as such.

## 5.    EXCLUSIONS

A.  This Policy shall not cover any **Loss** in connection with that portion of any **Claim** against an **Insured Person** for: (i) any personal financial profit deliberately gained by such **Insured Person** with actual dishonest purpose and intent if a final and non-appealable adjudication in the underlying action establishes that such **Insured Person** was not legally entitled to and so gained such personal financial profit and that those acts were material to the **Claim**; or (ii) any active and deliberate fraudulent or active and deliberate criminal act by such **Insured Person** if a final and non-appealable adjudication in the underlying action establishes that such active and deliberate fraudulent or active and deliberate criminal act was committed by such **Insured Person** with actual dishonest purpose and intent and that those acts were material to the **Claim**; provided, however, that this Exclusion A. shall not apply to: (a) **Defense Costs**; (b) **Independent Directors**; or (c) any employment-related **Claim**.

Exclusion A. (i) shall not apply to any **Loss** incurred by an **Insured Person** due to such **Insured Person's** actual or alleged violation of Section 11 or 12 of the Securities Act of 1933, as amended, including without limitation such **Loss** of a "controlling person" within the meaning of Section 15 of the Securities Act of 1933, as amended.

For the purpose of determining the applicability of Exclusion A.:

(i)  the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by any **Insured Person** or the **Company** shall not be imputed to any other **Insured Person**; and

(ii)  for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate fraudulent or deliberate criminal act occurred.

B.  This Policy shall not follow any exclusion set forth in any **Underlying Policy**, except to the extent that the **Insured Person** would be entitled to greater recovery under this Policy if the terms of any such underlying exclusion(s) were applied to a specific **Non-Indemnified Loss** that would otherwise be covered under this Policy.

## 6.    LIMIT OF LIABILITY

A.  Liability shall attach to the **Insurer** under this Policy only after the limits of liability, or any applicable sub-limits of liability, of the **Underlying Policies** have been exhausted due to:  (i) the payment of loss covered thereunder by any **Underlying**

14

**Insurer**, any **Insured Person**, and/or any other party; or (ii) any provision of the **Underlying Policy** whereby the limits of such policy are eroded due to any payment under another policy issued by the **Underlying Insurer** or any subsidiary, associate, affiliate or parent thereof. However, if an **Underlying Insurer** does not pay a **Non-Indemnified Loss** for any reason, including due to a **DIC Event**, this Policy shall, subject to its terms, conditions and exclusions, drop down and pay such **Non-Indemnified Loss** on behalf of the **Insured Person(s)** up to the applicable Limit of Liability or Sublimit of Liability of this Policy. In the event one or more **Underlying Insurers** are also obligated to drop down and pay such **Non-Indemnified Loss**, this Policy shall remain excess of the aggregate limit of liability of such **Underlying Insurer(s)**. Nothing contained in this paragraph A. shall be construed to increase the applicable Limit of Liability or Sublimit of Liability of this Policy.

B.      Except in the event that any Reinstated Limit of Liability applies, and subject to any applicable Sublimit of Liability, the Limit of Liability stated in Item 3 of the Declarations is the **Insurer's** maximum liability for all **Loss** arising from all **Claims** first made, and all **Pre-Claim Inquiry Costs** arising from all **Pre-Claim Inquiries** first received, during the **Policy Period** and the Extended Reporting Period (if applicable), combined.

*First Reinstated Limit*

C.      In the event the Limit of Liability stated in Item 3 of the Declarations (the "Limit of Liability") is exhausted due to the payment of **Non-Indemnified Loss** under this Policy, then the Limit of Liability of this Policy shall be reinstated in the amount stated in Item 4.A of the Declarations (the "First Reinstated Limit"). No additional premium shall be charged or payable for the First Reinstated Limit of Liability.

D.      The First Reinstated Limit shall be excess of the original limit of liability and the first reinstated limit of liability under all **Underlying Policies** and the original limit of liability under all insurance policies specifically excess of this Policy.

*Second Reinstated Limit*

E.      In the event that both the Limit of Liability and the First Reinstated Limit are exhausted due to the payment of **Non-Indemnified Loss** under this Policy, then the Limit of Liability of this Policy shall be reinstated for the second time in the amount stated in Item 4.B of the Declarations (the "Second Reinstated Limit"). No additional premium shall be charged or payable for the Second Reinstated Limit of Liability.

F.      The Second Reinstated Limit shall be excess of the original, first reinstated and second reinstated limit of liability under all **Underlying Policies** and the original and first reinstated limit of liablity under all insurance policies specifically excess of this Policy.

*Single Claim Limit*

G.      If a **Single Claim** is subject to more than one Limit of Liability and/or Reinstated Limit under this Policy, the **Insurer's** maximum liability for all **Non-Indemnified Loss** resulting from such **Single Claim** shall not exceed the **Single Claim Limit** stated in Item 3 of the Declarations. Such **Non-Indemnified Loss** shall be allocated to and shall first erode any applicable unexhausted Limit of Liability, then any applicable unexhausted First Reinstated Limit, then any applicable unexhausted

Second Reinstated Limit in the order in which such **Non-Indemnified Loss** is incurred.

*Defense Costs*

H.    **Defense Costs** are part of, and not in addition to, the Limits of Liability of this Policy, and shall reduce and may exhaust such Limits of Liability.

7.    **NOTICE PROVISIONS**

*Reporting Requirements For Claims and Pre-Claim Inquiries*

A.    The **Company** or an **Insured Person** shall give written notice to the **Insurer** of a **Claim** made against an **Insured Person** as soon as reasonably practicable after the general counsel or risk manager (or individuals with equivalent responsibilities) of the entity named in Item 1 of the Declarations receives written notice of the **Claim**. In no event shall such notice be provided later than ninety (90) days after the end of the **Policy Period** (or Extended Reporting Period, if applicable).

B.    If the **Company** or an **Insured Person** elects to seek coverage for **Pre-Claim Inquiry Costs** incurred in connection with a **Pre-Claim Inquiry** first received by an **Insured Person** during the **Policy Period** (or Extended Reporting Period, if applicable), the **Company** or an **Insured Person** shall give written notice to the **Insurer** of such **Pre-Claim Inquiry** during the **Policy Period** or within ninety (90) days after the end of the **Policy Period** (or Extended Reporting Period, if applicable). No coverage is afforded under this Policy for any **Pre-Claim Inquiry Costs** incurred prior to the date the **Pre-Claim Inquiry** is first reported to the **Insurer**.

C.    If notice of a **Claim** is provided to the **Insurer**, but is not provided in accordance with paragraph A. and B. above, the **Insurer** shall not be entitled to deny coverage for such **Pre-Claim Inquiry** or **Claim** based on such late notice unless the **Insurer** can establish that its interests were actually, substantially and materially prejudiced by reason of such noncompliance.

*Reporting Requirements For Notice of Circumstances*

D.    If an **Insured Person** becomes aware of any circumstances reasonably expected to give rise to a **Claim** being made against, or **Pre-Claim Inquiry** being received by, an **Insured Person**, then the **Company** or an **Insured Person** has the option of giving written notice to the **Insurer** of the circumstances including the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim** or **Pre-Claim Inquiry**, with full particulars as to dates, persons and entities involved. In the event such notice is given, any **Claim** or **Pre-Claim Inquiry** that is subsequently made against an **Insured Person** alleging, arising out of, based upon or attributable to such circumstances, shall be deemed to have been made at the time notice of such circumstances was given to the **Insurer**.

*General Reporting Requirements*

E.    Written notice of a **Pre-Claim Inquiry** or a **Claim** shall be given to the **Insurer** at the mailing address or the e-mail address indicated in Item 8.A of the Declarations. All other notices to the **Insurer** under this Policy shall be given to the address indicated in Item 8.B of the Declarations.

DO 00601 00 (11/16)

8.      **RELATED MATTERS**

All **Claims** made, and all **Pre-Claim Inquiries** noticed to the **Insurer** in accordance with Clause 7 above, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions, events, acts, errors or omissions, or series of related facts, circumstances, situations, transactions, events, acts, errors or omissions, shall be deemed to be a single **Claim** first made, and a single **Pre-Claim Inquiry** first received, at the earliest time that any such **Claim** is first made against an **Insured Person** and any such **Pre-Claim Inquiry** is first received by an **Insured Person**.

9.      **ADVANCEMENT OF COSTS**

The **Insurer** shall advance payments for: (i) **Defense Costs** prior to the final disposition of a **Claim**; and (ii) **Pre-Claim Inquiry Costs** prior to the conclusion of a **Pre-Claim Inquiry**. Such payments shall be made on a current basis, but no later than thirty (30) days after the **Insurer** receives the **Insured Person's** request for payment except in those instances when the **Insurer** has denied liability, in which case the **Insurer** shall promptly provide a full written and reasoned explanation of its coverage position.

In the event of any such payments by the **Insurer**, the **Insured Persons** shall repay all such amounts to the **Insurer**, severally according to their respective interests, in the event and to the extent it is finally adjudicated that the **Insured Persons** are not entitled under the terms and conditions of this Policy to such payments; provided however that the **Insurer** shall have no right to the recoupment of **Defense Costs** as respects any conduct described in Exclusion A.

10.     **PARTICIPATION AND COOPERATION**

*General Requirements*

A.      The **Insurer** does not assume any duty to defend or contest any **Claim** or prepare for, and respond to, any **Pre-Claim Inquiry**. However, the **Insurer** shall have the right, but not the duty, to fully and effectively associate with the **Insured Persons**: (i) in the control, investigation, defense and settlement of any **Claim**; and (ii) in preparing for, and responding to, any **Pre-Claim Inquiry**, if any such **Claim** or **Pre-Claim Inquiry** is reasonably likely to cause liability to attach under this Policy. The **Insurer** shall accept as reasonable and necessary the retention of separate legal counsel where there is an actual or potential conflict of interest between any **Insured Persons**.

B.      The **Insured Persons** shall: (i) defend and contest any **Claim** made against them; and (ii) prepare for, and respond to, any **Pre-Claim Inquiry** involving them. The **Insured Persons** shall not admit or assume any liability, enter into any settlement agreement, or stipulate to any judgment without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld delayed or denied; provided however that such consent is not required before: (i) entering into a plea agreement, deferred prosecution agreement or similar resolution of any pending or potential criminal charge; or (ii) reporting to, and subsequently communicating with, the **Company** or any **Regulator** that a breach of law or regulation or policy has or may have occurred.

C.      Except in the circumstances described below, the **Company** and each and every **Insured Person** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require relating to: (i) the defense of any **Claim**; or (ii) the preparation for, and the response to, any **Pre-Claim Inquiry**. However, the failure of the **Company** or any **Insured Person** to give the **Insurer** such cooperation and

17

information shall not prejudice the rights to coverage under this Policy of any other **Insured Person**.

D.     Neither the **Company** nor any **Insured Person** shall cancel or modify any **Underlying Policy** in a manner that would prejudice or alter the **Insurer's** rights and obligations under this Policy.

*Requirements For Insured Persons Potentially Subject to Criminal Sanctions*

E.     In the event any attorney representing an **Insured Person** with regard to any **Claim** which could potentially give rise to a criminal sanction asserts that providing descriptions of their work could prejudice such **Insured Person** (either in the forum in which a **Claim** is made or in any parallel or subsequent proceeding) then the **Insurer** shall agree to accept invoices that identify the case or matter number in relation to which the work was performed and an accounting of the amount of time spent on each task. The **Insured Person**, with the cooperation of their attorney, shall make a good faith effort to provide a general description of the work performed that will allow the **Insurer** to confirm that the fees and costs incurred are reasonable without risking prejudice to the **Insured Person**.

F.     The **Insured Person** shall provide all requested information to the **Insurer** as soon as reasonably practicable once the **Insured Person** is advised by their counsel that the descriptions of legal work or other information regarding the **Claim** can be provided to the **Insurer** without risking prejudice to the **Insured Person**.

## 11.     EXTENDED REPORTING PERIOD

A.     In addition to the Extended Reporting Periods set forth in Clause 2, this Policy shall also follow the provisions of the **Followed Policy** as respects any Extended Reporting Period or Discovery Period, except for any such provisions regarding the applicable premium for any Extended Reporting Period or Discovery Period.

B.     The **Company** or **Insured Persons** shall pay the respective additional premium set forth in Item 7 of the Declarations.

C.     Coverage otherwise afforded under this Policy during any Extended Reporting Period shall apply only for **Wrongful Acts** committed or allegedly committed before inception of the Extended Reporting Period.

## 12.     SEVERABILITY AND NON-RESCISSION

A.     No knowledge or **Wrongful Act** of any **Insured Person** shall be imputed to any other **Insured Person** for any purpose under this Policy.

B.     The **Insurer** irrevocably waives any right it may have to rescind or void coverage under this Policy, in whole or in part, on any grounds.

## 13.     ORGANIZATIONAL CHANGES AND SUSIDIARIES

A.     If an **Organizational Change** occurs during the **Policy Period**, this Policy shall continue in full force and effect. Coverage afforded under this Policy for any **Claim** made, or **Pre-Claim Inquiry** received, after an **Organizational Change** shall only apply to **Wrongful Acts** committed or allegedly committed before the effective date of such **Organizational Change**. This Policy shall not apply to **Wrongful Acts**

DO 00601 00 (11/16)

committed or allegedly committed after the effective date of such **Organizational Change**.

B.     If during the **Policy Period** one or more **Companies** acquires **Management Control** of any entity then such acquired entity shall be a **Subsidiary**, and coverage otherwise afforded under this Policy for a **Claim** made against, or **Pre-Claim Inquiry** received by, an **Insured Person** of any such **Subsidiary** shall apply only if such **Claim** is made or such **Pre-Claim Inquiry** is received after the time such entity becomes a **Subsidiary** under this Policy and if such **Claim** is for **Wrongful Acts** committed or allegedly committed after such date.

C.     All premiums paid or due at the time of such **Organizational Change** will be deemed fully earned.

## 14.    CANCELLATION

A.     This Policy may not be cancelled by the **Company** or an **Insured Person**, except that the **Company** named in Item 1 of the Declarations may cancel this Policy in the event that a financial strength rating is issued (1) below A- by A.M. Best Co., or (2) below BBB by Standard & Poor's Ratings Services, for the **Insurer**. Such **Company** may effect such cancellation of this Policy by mailing prior written notice to the **Insurer** at the address set forth in the Declarations, or by surrender of this Policy to the **Insurer** or its authorized agent. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender, whichever is earlier. In the event of such cancellation, the **Insurer** shall return to such **Company** the unearned pro-rata proportion of the premium as of the effective date of cancellation. Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

B.     This Policy also may be cancelled by the **Insurer** but solely due to the non-payment of premium by the **Insured**. The **Insurer** may cancel the Policy by delivering or mailing to the **Company** named in Item 1 of the Declarations, by registered mail or by courier, at the address set forth in Item 1 of the Declarations, written notice stating when, not less than thirty (30) days thereafter, cancellation shall be effective unless the unpaid premium is paid to the **Insurer** prior to such cancellation effective date. The mailing of such notice as aforesaid shall be sufficient proof of notice. In the event of such cancellation, the Policy will be deemed terminated as of the date indicated in the **Insurer's** written notice of cancellation to the **Company**.

C.     If the period of limitation relating to the giving of notice of cancellation is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 15.    OTHER INSURANCE

Except if a **DIC Event** occurs, the insurance provided by this Policy shall apply only as excess over any other valid and collectible insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this Policy. In addition, except if a **DIC Event** occurs, this Policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim**, or prepare for and respond to a **Pre-Claim Inquiry**, for which this Policy may be obligated to pay **Loss**. However, such insurance as provided by this Policy shall apply as

19

primary to any personal "umbrella" insurance or personal directors' liability insurance.

If **Loss** covered under this Policy is also covered under, but not paid by, any other valid and collectible insurance, this Policy will respond on behalf of the **Insured Person** without regard to such other insurance, subject to the terms, conditions and limitations of this Policy and without prejudice to the **Insurer's** right to recover **Loss** paid under this Policy from the issuers of such other insurance.

16.    **RECOVERY OF LIMITS**

In the event the **Insurer** recovers amounts it has paid under this Policy, the **Insurer** will reinstate the Limit of Liability as set forth in Item 3 of the Declarations to the extent of such recovery, less costs incurred by the **Insurer** in administrating and obtaining such recovery. The **Insurer** assumes no duty to seek a recovery of any amounts it has paid under this Policy.

17.    **TERRITORY**

This Policy shall apply worldwide.

18.    **AUTHORIZATION**

It is agreed that the entity named in Item 1 of the Declarations shall act (unless the **Insurer** is advised expressly in writing to the contrary) on behalf of each and every **Insured Person** with respect to: (i) the receiving of notice of cancellation or non-renewal; (ii) the payment of premiums; (iii) the receipt and acceptance of any endorsements issued to form a part of this Policy; and (iv) the exercising of any right to an Extended Reporting Period.

19.    **ASSIGNMENT**

This Policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

20.    **BANKRUPTCY**

A.    Bankruptcy or insolvency of any **Company** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

B.    It is understood and agreed that the coverage provided under this Policy is intended to protect and benefit the **Insured Persons**. Further, if a bankruptcy, liquidation, reorganization or receivership proceeding involving the **Company** is commenced (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign statute or law (collectively, "Bankruptcy Law") then, in regard to a **Claim** or **Pre-Claim Inquiry** that is covered under this Policy, the **Insurer**, the **Company** and the **Insured Persons** hereby:

   (i)    waive any right to a release of any automatic stay or injunction to the extent it may apply in such proceeding to the Policy or its proceeds under such Bankruptcy Law; and

   (ii)    agree not to oppose or object to any efforts by the **Insurer**, the **Company** or any **Insured Person** to obtain relief from any such stay or injunction.

C.    In the event the **Company** becomes a debtor-in-possession or equivalent status under such Bankruptcy Law, and the aggregate **Loss** under this Policy exceeds the remaining available Limit of Liability hereunder, the **Insurer** shall:

(i)   first pay the **Non-Indemnified Loss** allocable to **Wrongful Acts** that were actually or allegedly caused, committed, or attempted by any **Insured Person** prior to the **Company** becoming a debtor-in-possession or equivalent status, then

(ii)  pay any remaining **Non-Indemnified Loss** allocable to **Wrongful Acts** that were actually or allegedly caused, committed, or attempted by any **Insured Person** after the **Company** became a debtor-in-possession or equivalent status.

## 21.    SUBROGATION

In addition to any right of subrogation existing at law, in equity or otherwise, it is agreed that in the event of any payment by the **Insurer** under this Policy the **Insurer** shall be subrogated to the extent of such payment to all of the **Company's** and the **Insured Person(s)'** rights of recovery, including but not limited to any of the **Insured Person(s)'** rights of recovery against the **Company** for indemnification and any of the **Company's** and the **Insured Person(s)'** rights of recovery against any **Underlying Insurer** that is the cause or subject of a **DIC Event**. The **Company** and the **Insured Person(s)** shall assist the **Insurer** in pursuing and securing the rights of the **Insurer**, including executing all papers and documents necessary for the **Insurer** to effectively bring suit or other form of proceeding in the **Insureds** name. However, the **Insurer** shall not exercise its subrogation rights against an **Insured Person**. The failure of any **Insured Person** or the **Company** to give the **Insurer** such assistance and cooperation shall not impair the rights of any other **Insured Person** under this Policy.

## 22.    BROADER TERMS OF PRIOR DIC POLICY

The **Insurer** shall pay **Non-Indemnified Loss** on behalf of any **Insured Person** in accordance with the terms and conditions of this Policy or the **Prior Allied World DIC Policy**, whichever would provide the greatest recovery to such **Insured Person**; provided, however that (i) any specific endorsements to this Policy shall continue to apply; (ii) the provisions of this paragraph shall not increase the **Insurer's** Limit of Liability of this Policy; and (iii) any provisions within the **Prior Allied World DIC Policy** as respects when any **Claim** is either made and/or reported shall not apply.

## 23.    HEADINGS

The descriptions in the headings and any subheading of this Policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of this Policy's terms or conditions.

DO 00601 00 (11/16)