# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: Chapter 11
*In re:* :
: Case No. 24- 12480 (LSS)
**FRANCHISE GROUP, INC.,** *et al.*,[1] :
: Jointly Administered
:
Debtors. : Re: Docket Nos. 900, 1056, 1078, 1079
---------------------------------------------------------------x

## FEE EXAMINER'S FINAL REPORT REGARDING
## FIRST INTERIM FEE APPLICATION REQUEST OF
## PACHULSKI STANG ZIEHL & JONES LLP

Direct Fee Review LLC ("DFR"), appointed and employed as the Fee Examiner in the above-captioned bankruptcy proceedings and acting in its capacity regarding the First Interim Fee Application Request of Pachulski Stang Ziehl & Jones LLP (the "Firm") for compensation for services rendered and reimbursement of expenses as Counsel for the Official Committee of Unsecured Creditors for the compensation period from November 21, 2024 through January 31,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

2025 ("Fee Application") seeking approval of fees in the amount of $2,743,908.25 and the reimbursement of expenses in the amount of $37,788.22, submits its final report.

## BACKGROUND

1. In performance of audit procedures and in preparation of this report designed to quantify and present factual data relevant to the requested fees, disbursements and expenses contained herein, DFR reviewed the monthly fee statements and the Applications, including each of the billing and expense entries listed in the exhibits to the monthly statements, for compliance with 11 U.S.C. § 330, Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, as amended February 1, 2025 ("Local Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, issued June 11, 2013 ("Guidelines").

2. DFR did not prepare informal memos related to monthly fee applications of the Firm. We have included our questions and issues in an initial report. We have included all responses and any recommended resolutions in this final report.

## DISCUSSION

3. For the compensation period of November 21, 2024 through January 31, 2025 the Firm submitted monthly fee applications in the amount of $2,743,908.25 as actual, reasonable and necessary fees and for expense reimbursement of $37,788.22. We calculated that for the Fee Application period $8,437.50 related to fee application preparation.

4. In discussing our comments on the interim fee application, the Firm voluntarily agreed to reduce their fees and expenses by $27,000.00. We believe that the effect of any reductions for the matters discussed subsequently would have been less than this voluntary reduction. Accordingly, we have no recommendation for further reduction in fees or reimbursement of expenses. We have allocated this as $26,000.00 to fees and $1,000.00 to expenses.

5. We deem it generally acceptable to have a maximum of 3% of total time charged in preparing fee applications. For Firms with more limited involvement, we consider an alternative standard of less than $50,000 in total spent on preparing fee applications. We apply these guidelines on a cumulative basis. We evaluate these charges with consideration to the length of time of the case and the practice experience of the firm. In each application we review every entry for substance and to determine the correct allocation without regard for materiality. We noted that cumulatively through this period the Firm has charged $8,437.50 related to fee applications on a cumulative basis and we have calculated that 0.3% of the fees billed related to fee applications on a cumulative basis. We do not have an objection to the amount of fees charged for fee application preparation in this fee application based upon our review and procedures and we deem the amount to be reasonable.

6. Local Rule 2016-2(d)(iv) requires that time be recorded in increments of $1/10^{th}$ of an hour. We noted that much of the time billed by certain timekeepers listed appeared to have been recorded in units of ½ of an hour. We requested that the Firm advise us of how this impacts the amounts billed and adjust the fees requested appropriately.

7. Our procedures applied to the monthly fee applications for identified entries where charges may have been duplicated. We requested that the Firm review these entries and correct the application if they are found to be duplicates.

8. Our procedures applied to the monthly fee applications identified timekeepers with limited time charged to this estate. We questioned the necessity and value to the estate because of the minimal involvement and we requested that the Firm provide additional information related to the nature and necessity of the roles of these timekeepers.

9. We noted that several of the Firm's professionals attended hearings telephonically during the interim period. Paragraph II.D.5 of the Guidelines provides that "if more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." We requested that the Firm provide further explanation regarding these hearings and why all of these fees are compensable.

10. Our procedures applied to the monthly fee applications identified an entry which appeared to precede the date of the Firm's retention. We requested that the Firm remove this entry if appropriate.

11. We deem nightly lodging costs (including taxes) in excess of $525 for NYC, $350 for Wilmington and $325 for Chicago to be excessive and not reasonable. We requested that the Firm review these charges and reduce any to these limits if it is found to exceed such limits.

12. Also, we noted the overtime meal charges. Consistent with the US Trustee, we deem overtime meal charges in excess of $20.00 per person to be unnecessary and not reasonable. We requested that the Firm review these charges and reduce those to this cap if it they are found to exceed such limits.

13. The US Trustee expects that airline travel should be coach class. We requested that the Firm review a charge for travel and confirm that it complies with this guideline or adjust it appropriately. Also, we request that the Firm remove any agent's or booking fees included in this charge.

14. Similarly, rail travel should be Acela class not first class. We request that the Firm review charges for such travel and confirm that they comply with this guideline or adjust them appropriately. Also, we requested that the Firm remove any agent's or booking fees included in these charges.

15. The time charged for travel in one entry was almost double the time for other timekeepers on the same route on the same date. We requested that the Firm explain the reason for this or adjust the charge appropriately.

16. Activity descriptions shall individually identify all meetings and hearings (conferences and conference by telephone), each participant, the subject(s) of the meeting or hearing (conferences and conference by telephone) and the participant's role; including email. Our procedures applied to the monthly fee applications identified entries with descriptions which did not provide such detail. We requested that the Firm identify the participants referred to as "PSZJ", "counsel to Debtors", "Province", "all hands PSZJ",

"PSZJ team", "UCC professionals", "internal", "litigation professionals", "team", "professionals", "Debtors counsel", "Committee Profs", "Perella", "Akin", "all hands", "other professionals", "interested parties", "Pachulski team", "all parties counsel", "Petrillo" and "PSZJ litigation teams". Also, we reviewed entries that did not identify participants. We requested that the timekeepers provide such participant information for these entries or the Firm may want to withdraw those participants that cannot be identified.

17. All motions shall include complete and detailed activity descriptions; each activity description shall include the type of activity; each activity description shall include the subject matter and shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary. Our procedures applied to the monthly fee applications identified entries with descriptions which we consider vague or insufficient or non-substantive. We requested that the Firm instruct timekeepers to avoid or stop the use of vague activity descriptions such as "work on", "work", "working ", "assist", "follow up", "attend to", "address" and "attention to". Also, we identified vague entries that did not explain the amount of time charged and requested that the Firm provide additional description of the activities to support the time and need.

18. All motions shall include complete and detailed activity descriptions; each activity description shall include the type of activity; each activity description shall include the subject matter and shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary. Our procedures applied to the monthly fee applications identified entries with descriptions which we

consider vague or insufficient or non-substantive. We requested that the Firm provide more description of the subjects for these entries.

19. Local Rule 2016-2(d)(iv) requires that time be recorded in increments of $1/10^{th}$ of an hour. Our procedures applied to the monthly fee applications identified certain time entries where time has been aggregated or "lumped". We requested that the Firm advise the timekeepers of the time reporting unit requirements and adjust the fees appropriately.

20. Pursuant to the Guidelines, administrative or general costs incident to the operation of the applicant's office and not particularly attributable to an individual client or case are not reimbursable. We noted entries that seemed to reflect administrative activity that would not be charged to the estate such as procedures for invoice preparation and review or review for internal error correction such as that for those entries including privileged or confidential information. We requested that the Firm review these entries and confirm that they were necessary for fee application purposes or withdraw any entries for administrative activities.

21. We requested and the Firm provided us with a copy of the invoice for Clas Information Services, Inv. 505807-001.

22. Our review and procedures applied to the monthly fee statements and the applications, including each of the billing entries listed in the exhibits to the monthly statements did not disclose any other material issues or questions.

**CONCLUSION**

23. Regarding the application and the fees and expenses discussed in the previous sections, DFR submits its final report for the First Interim Fee Application Request of Pachulski Stang Ziehl & Jones LLP for compensation for services rendered and reimbursement of expenses as Counsel for the Official Committee of Unsecured Creditors for the compensation period from November 21, 2024 through January 31, 2025 and we recommend the approval of the fees of $2,717,908.25 ($2,743,908.25 minus $26,000.00) and reimbursement of expenses in the amount of $32,788.22 ($37,788.22 minus $1,000.00). The Firm confirmed their agreement with this recommendation.

Respectfully submitted,

**DIRECT FEE REVIEW LLC**
**FEE EXAMINER**

By: _____
W. J. Dryer

24A Trolley Square #1225
Wilmington, DE 19806-3334
Telephone: 415.226.9618
dfr.wjd@gmail.com