## **EXHIBIT C**

**Engagement Letter**

**CHILMARK PARTNERS**

**CONFIDENTIAL**

February 26, 2025

Michael S. Stamer
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036-6745

<u>**Re: Chilmark Terms of Engagement**</u>

Mr. Stamer,

This letter confirms and sets forth the terms and conditions of the engagement (the "<u>Engagement</u>") between Chilmark Partners, LLC ("<u>Chilmark</u>") and Akin Gump Strauss Hauer & Feld LLP ("<u>Akin</u>"), solely in Akin's capacity as counsel to the independent director (the "<u>Independent Director</u>") and sole member of the conflicts committees (each, a "<u>Conflicts Committee</u>") of the boards of directors (each, a "<u>Board</u>") of each of Freedom VCM Interco, Inc. and Freedom VCM, Inc. (together, the "<u>Companies</u>") in connection with Akin's representation of the Independent Director. Upon execution of this letter by each of the parties hereto, this letter will constitute an agreement among Chilmark, Akin, the Companies, and the Independent Director (the "<u>Agreement</u>").

1. <u>Description of Services</u>

Chilmark's work will consist of assisting the Independent Director by researching and evaluating various conflicts issues (the "<u>Conflicts Matters</u>") as directed by the Independent Director, or Akin on behalf of the Independent Director, in connection with the authority delegated to the Independent Director by the Boards on February 15, 2025, and potentially providing testimony as to any of Chilmark's findings. Chilmark agrees to perform its work in consultation with Akin, but Chilmark shall have sole control over the substance of its conclusions and the form and content of its reports.

Should Chilmark be asked to testify by Akin or the Independent Director, Chilmark agrees to make itself available, upon reasonable notice from Akin or the Independent Director, to prepare for and provide testimony at depositions, hearings, trials or otherwise. Chilmark's work will reflect its independent, professional judgment and Chilmark's compensation for the Engagement is in no way contingent on the nature of its findings, the presentation of these findings in testimony, or the outcome of any proceeding.

Chilmark understands that it will participate, at your request and to the extent appropriate, in meetings and discussions with the Companies, other debtor affiliates, creditor constituencies, and their respective professionals to extent such meetings relate to Conflicts Matters.

Freedom VCM Interco, Inc. and Freedom VCM, Inc.
February 26, 2025
Page 2



2. <u>Compensation</u>

While Akin has retained Chilmark on behalf of the Independent Director, the Companies will be solely responsible for the payment of all of Chilmark's fees and expenses as set forth herein and any performance required subject to the indemnification provisions described herein. The Companies agree to use reasonable efforts to obtain prompt authorization from the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") to retain Chilmark on the terms and conditions set forth in this Agreement under provisions of section 328(a) of chapter 11 of title 11 of the United States Code.

Chilmark will periodically furnish the Independent Director with invoices, providing a description of all timekeeper entries and a summary of work performed during the billing period. Chilmark agrees to submit its statements for payments in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Estate Professionals* [Docket No. 353] (the "<u>Interim Compensation Order</u>") and the *Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [Docket No. 747] (the "<u>Fee Examiner Order</u>"). Notwithstanding anything to the contrary herein, any compensation provided for under this Agreement shall be governed by an order of the Bankruptcy Court authorizing Chilmark's retention and the payment of professionals retained in the applicable chapter 11 cases.

By signing this Agreement, the Companies agree to pay Chilmark for services provided under this Agreement at the standard hourly billing rate of the Chilmark personnel as reflected in <u>Annex A</u>, plus an additional amount for any reasonable and necessary out-of-pocket costs that Chilmark may incur in connection with the Engagement. The Independent Director, the Boards, and the Companies understand that our hourly rates are subject to change from time to time and that we will advise them if we are adjusting rates in advance.

Furthermore, the Companies agree to take all necessary steps to obtain funding sufficient to pay all fees and expenses pursuant to this Agreement, including, without limitation, obtaining proceeds from any postpetition financing in accordance with the terms and conditions of the *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 414] and the order that is entered by the Court approving Chilmark's retention.

The Independent Director, or Akin, acting on behalf of the Independent Director, may terminate this Engagement at any time upon one (1) business day's written notice to Chilmark. The Engagement will otherwise terminate upon the completion of Chilmark's services. The Companies acknowledge that the termination of this Agreement shall not relieve them of their obligation to pay all fees and expenses incurred through the effective date of such termination. Furthermore, the indemnification obligations described in this Agreement shall survive any termination of the Engagement.

Notwithstanding anything to the contrary herein, neither Akin nor Chilmark are authorized, nor will either purport to be, an agent of the Companies for any purpose. The Companies have no right to terminate Akin's retention of Chilmark. Payment of Chilmark's fees and expenses by the Companies shall not affect any privileges that may attach to all communications and correspondence between Akin and the Independent

Docusign Envelope ID: 4FBFEDB0-6023-44C4-AA85-798A44888325

Freedom VCM Interco, Inc. and Freedom VCM, Inc.
February 26, 2025
Page 3



Director (and Chilmark), or any work product or analyses prepared by Chilmark for Akin or the Independent Director in connection with this Engagement.

3. Information Provided to Chilmark

Chilmark expects that Akin will furnish or cause to be furnished to Chilmark such information in the possession or control of Akin or the Independent Director as the parties believe appropriate to perform the Engagement. Chilmark will use and rely on such information, without independent verification, and does not assume responsibility for the accuracy or completeness of such information. Chilmark also expects to request information from the Companies, their affiliates, including Franchise Group, Inc. and its subsidiaries, or advisors to the Companies and their affiliates, including Franchise Group and its subsidiaries, as appropriate to perform the Engagement.

4. Attorney Work Product

Chilmark understands that its work will be done at the direction of Akin and the Independent Director to assist Akin in its role as counsel to the Independent Director, and that work performed by Chilmark as part of this Engagement, including, without limitation, any reports Chilmark may prepare, is privileged and confidential and is deemed, to the extent permitted by law, to constitute an attorney work product which Chilmark will not disclose to any other third-party (other than Akin and the Independent Director). It is also understood that Chilmark's work, conclusions, and communications will be covered, to the extent permitted by law, by the attorney-client and attorney work product privileges. Chilmark agrees to do all things necessary to preserve all such privileges and immunities.

Chilmark further understands that any documents prepared or obtained by it are prepared or obtained solely for the use and benefit of Akin in connection with its representation of the Independent Director, and are subject to Akin's right to request that they be delivered into their possession at any time they are still in Chilmark's possession.

5. Indemnification and Limitations on Liability

It is acknowledged and agreed that Chilmark shall have no liability (whether direct or indirect, in contract or tort or otherwise) to the Companies or any of their respective affiliates, creditors, or members for or in connection with the Engagement hereunder except for losses incurred by the Companies that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of Chilmark. In no event shall Chilmark be liable for consequential, special, incidental or punitive loss, damages, or expense (including without limitation lost profits opportunity costs, etc.) even if it has been advised of their possible existence.

By signing this Agreement, the Companies agree to indemnify and hold harmless Chilmark and any of its affiliates, members, principals, agents, employees, consultants or others working for it on the Engagement, for any loss arising from, and any reasonable costs, legal fees or other expenses incurred as a result of defending, any third-party claims brought against Chilmark or any of its affiliates, members, principals, agents, employees, consultants or others working for it on the Engagement in connection with Chilmark's work on the Engagement, excepting only third party claims that are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of Chilmark or those persons working for Chilmark on the Engagement.

Freedom VCM Interco, Inc. and Freedom VCM, Inc.
February 26, 2025
Page 4



### 6. Confidentiality

For purposes of the Engagement, Chilmark will take direction from and report only to the Independent Director, Akin's attorneys, and others designated in writing by Akin. Except as required by law or legal process, all information gained or received by Chilmark during the Engagement will be kept confidential. If Chilmark is potentially required to disclose any such information as a result of a legal or administrative process, Chilmark shall, as soon as reasonably practicable, give Akin written notice of such circumstance and a reasonable opportunity to object before any such disclosure is made.

In the event Chilmark is required to respond to a subpoena related to this Engagement (regardless of whether such subpoena is served during or subsequent to the completion of Chilmark's work), Chilmark shall invoice the Companies with a copy to Akin, for its time, at its standard hourly rates applicable at the time such services are rendered. Chilmark will also invoice for related, reasonable out-of-pocket expenses, including but not limited to, copying charges, courier fees, travel expenses, and attorney fees in connection with the subpoena.

### 7. Miscellaneous

This Agreement is deemed to be made under and shall be interpreted in accordance with the laws of the State of New York, without regard to its conflicts of laws provision.

The invalidity or unenforceability of any provision of this Agreement shall not invalidate or affect the enforceability of any other provision of this Agreement.

This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings, and agreements between the parties. This Agreement shall not be amended or modified except in writing signed by each of the parties. This Agreement shall be binding upon Akin, the Independent Director, the Companies, and Chilmark and their respective successors and assigns, provided that a party may not assign its rights and obligations under this agreement without each other party's written consent.

We look forward to working with you on this matter.

Very truly yours,

Michael Kennedy
Member

Docusign Envelope ID: 4FBFEDB0-6023-44C4-AA85-798A44888325

Freedom VCM Interco, Inc. and Freedom VCM, Inc.
February 26, 2025
Page 5



ACKNOWLEDGED AND AGREED:

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: *Michael S. Stamer*

    Name: Michael S. Stamer

    Title: Partner

Date: 03/18/2025


ACKNOWLEDGED AND AGREED:

**Independent Director of Freedom VCM Interco, Inc. & Freedom VCM, Inc.**

By: *Michael J. Wartell*

    Name: Michael J. Wartell, solely in his capacity as independent director and sole member of the conflicts committees of the boards of directors of each of Freedom VCM Interco, Inc. and Freedom VCM, Inc.

    Title: Independent Director

Date: 03/18/2025


ACKNOWLEDGED AND AGREED:

**Freedom VCM Interco, Inc. & Freedom VCM, Inc.**


By:_____

    Name: Tiffany McMillan-McWaters

    Title: Vice President and Treasurer

Date:_____



Freedom VCM Interco, Inc. and Freedom VCM, Inc.
February 26, 2025
Page 6

**ACKNOWLEDGED AND AGREED:**

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:_____

    Name: Michael S. Stamer

    Title: Partner

Date:_____

**ACKNOWLEDGED AND AGREED:**

**Independent Director of Freedom VCM Interco, Inc. & Freedom VCM, Inc.**

By:_____

    Name: Michael J. Wartell, solely in his capacity as independent director and sole member of the conflicts committees of the boards of directors of each of Freedom VCM Interco, Inc. and Freedom VCM, Inc.

    Title: Independent Director

Date:_____

**ACKNOWLEDGED AND AGREED:**

**Freedom VCM Interco, Inc. & Freedom VCM, Inc.**

By: *T. McMillan-McWaters* (DocuSigned)

    Name: Tiffany McMillan-McWaters

    Title: Vice President and Treasurer

Date: 3/17/2025

Freedom VCM Interco, Inc. and Freedom VCM, Inc.
February 26, 2025
Page 6



*Annex A*

Hourly Billing Rates

| Name | Role | Rate |
|---|---|---|
| David M. Schulte | Managing Member | $1,650 |
| Michael J. Kennedy | Member | $1,275 |
| Aaron S. Taylor | Member | $1,275 |
| Jamie Ellis | Member | $1,020 |
| Various | Associates | $450-550 |