**<u>Exhibit A</u>**

**Proposed Complaint**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.* | Case No. 24-12480 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FRANCHISE GROUP, INC., *et al.*, | Adv. Pro. _____ |
| Plaintiff, | |
| -against- | |
| FREEDOM VCM INTERCO, INC., FREEDOM VCM, INC., ALTER DOMUS US LLC, as HoldCo Term Loan Agent, IRRADIANT SOLUTIONS FUND, L.P., IRRADIANT SOLUTIONS MINI-MASTER FUND, L.P., IFRG INVESTORS II, L.P., IRRADIANT SOLUTIONS FUND II L.P, IFRG INVESTORS III, L.P., IRRADIANT SOLUTIONS MINI-MASTER FUND II, SCSP, CO FINANCE LVS XLI LLC, CO FINANCE II LVS II LLC, RSF XVIII LLC, HVS XXXIV LLC, OC III LVS LXII LP, and DOES 1 – 100, | |
| Defendants. | |

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New HoldCo, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate HoldCo, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

## COMPLAINT AND OBJECTION TO CLAIMS

The Official Committee of Unsecured Creditors (the "Committee" or "Plaintiff"), by its undersigned counsel, derivatively on behalf of debtors Franchise Group, Inc. ("FRG") and each of its direct and indirect Debtor subsidiaries (collectively, the "OpCo Debtors"), as and for its complaint (the "Complaint"), hereby alleges upon knowledge of its own acts and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff seeks avoidance of fraudulent transfers arising from the transfer without consideration of over $55 million in cash from Debtor Franchise Group New HoldCo, LLC ("Franchise Group New HoldCo") to its indirect parent, Debtor Freedom VCM, Inc.  The proceeds of that dividend were used to pay interest to the HoldCo Lenders.[2]  Plaintiff also seeks to recover the value of those transfers from Debtor Freedom VCM, Inc., and from the HoldCo Agent and the HoldCo Lenders to whom those funds were subsequently transferred.

2.      Plaintiff also seeks avoidance of fraudulent transfers made by certain of the OpCo Debtors to the HoldCo Lenders as well as the avoidance of a certain $19.51 million guarantee executed and delivered to the HoldCo Lenders by certain of the OpCo Debtors as a fraudulently incurred obligation.

3.      Finally, Plaintiff objects to the proofs of claim filed by the HoldCo Agent and the HoldCo Lenders to the extent that they (1) seek to recover on account of the HoldCo Facility from any party other than Freedom VCM, Inc., Freedom VCM Interco, Inc., Freedom VCM Holdings, LLC, Freedom Receivables II, LLC, Freedom VCM Interco Holdings, Inc., and Freedom VCM Receivables, Inc.; (2) seek to recover from the Supplement No. 1 Obligors on account of the $19.51 million provided for in the HoldCo Guarantee; or (3) seek to recover for

---

[2]    Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them in the body of the Complaint.

other purported claims, causes of action, and damages for which they have failed to state a claim. Accordingly, this adversary proceeding also constitutes an objection, pursuant to section 502 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to any proofs of claims asserted by the HoldCo Term Loan Agent or any of the HoldCo Lenders against any of the OpCo Debtors.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. § 1334.  This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are sections 502, 544, and 550, of the Bankruptcy Code and Bankruptcy Rules 3007 and 7001.

## THE PARTIES

6.      Plaintiff was appointed by the Office of the United States Trustee for the District of Delaware pursuant to section 1102 of the Bankruptcy Code on November 19, 2024. Plaintiff is vested with, among other things, the powers described in section 1103 of the Bankruptcy Code, including the power to investigate the acts, conduct, assets, liabilities, and financial condition of the Debtors.

7.      Plaintiff brings this action on behalf of the estates of each of the applicable OpCo Debtors pursuant to this Court's *Order Granting the Committee Leave, Standing, and Authority to Commence, Prosecute, and Settle Certain Claims On Behalf of the Opco Debtors' Estates* entered on _____, 2025 [Docket No. __].

8.      Defendant Freedom VCM Interco, Inc. ("Freedom VCM Interco") is a Delaware corporation and a Debtor in these chapter 11 cases (the "Cases").

9.    Defendant Freedom VCM, Inc. (and together with Freedom VCM Interco, the "HoldCo Debtors") is a Delaware corporation and a Debtor in the Cases.

10.    Defendant Alter Domus (US) LLC (the "HoldCo Agent") is the HoldCo Term Loan Agent as that term is defined in the HoldCo Term Loan Credit Agreement.

11.    Defendant Irradiant Solutions Fund, L.P. is a limited partnership organized under the laws of Delaware.

12.    Defendant Irradiant Solutions Mini-Master Fund, L.P. is a limited partnership organized under the laws of Cayman.

13.    Defendant IFRG Investors II, L.P. is a limited partnership organized under the laws of Delaware.

14.    Defendant Irradiant Solutions Fund II, L.P. is a limited partnership organized under the laws of Delaware.

15.    Defendant IFRG Investors III, L.P. is a limited partnership organized under the laws of Delaware.

16.    Defendant Irradiant Solutions Mini-Master Fund II, SCSP is a special limited partnership organized under the laws of Luxembourg.

17.    Defendant CO Finance LVS XLI LLC is a limited liability corporation organized under the laws of Delaware.

18.    Defendant CO Finance II LVS II LLC is a limited liability corporation organized under the laws of Delaware.

19.    Defendant OC III LVS LXII LP is a limited partnership organized under the laws of Delaware.

20.    Defendant RSF XVIII LLC is a limited liability corporation organized under the laws of Delaware.

21.    Defendant HVS XXXIV LLC is a limited liability corporation organized under the laws of Delaware.

22.    Defendants Does 1-100 (together with Irradiant Solutions Fund, L.P., Irradiant Solutions Mini-Master Fund, L.P., IFRG Investors II, L.P., Irradiant Solutions Fund II, L.P., IFRG Investors III, L.P., Irradiant Solutions Mini-Master Fund II, SCSP, CO Finance LVS XLI LLC, OC III LVS LXII LP, RSF XVIII LLC, and HVS XXXIV LLC, the "HoldCo Lenders") are currently unknown lenders under the HoldCo Facility.

## STATEMENT OF FACTS

### A.    General Background

23.    On November 3, 2024 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court, thereby commencing these Cases.  The Debtors continue in possession of their property and are operating and managing their businesses as debtors in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

### B.    The Take Private Transaction

24.    In August, 2023, when FRG was still a publicly traded company, it effectuated a take private transaction (the "Take Private Transaction"), led by Brian Kahn, the former Chief Executive Officer of FRG, whereby Mr. Kahn and other members of FRG management took private control of FRG.  The Take Private Transaction was funded, in part, with a $475 Million facility incurred by the HoldCo Debtors (the "HoldCo Facility").

25.    The HoldCo Debtors and their parent Debtors, Freedom VCM Interco Holdings, Inc., and Freedom VCM Holdings, LLC ("Freedom Topco"), were created as part of the Take Private Transaction.  The HoldCo Debtors have no operations or source of revenues or income (other than dividends), and their main asset is Freedom VCM's 100% equity ownership

of FRG.

## C.    The Debtors' Corporate Structure

26.    Each of the Debtors is privately held.    Prior to the Take Private Transaction, FRG was a publicly traded company with its common shares traded on the Nasdaq Global Select Market under the ticker FRG.    Freedom Topco wholly owns Freedom VCM Interco Holdings, Inc., which, in turn, wholly owns, directly and indirectly, each of the other subsidiaries in the Debtors' corporate structure.

## D.    The Debtors' Prepetition Capital Structure

### 1.    The OpCo Facilities

27.    The OpCo Debtors hold all of the Debtors' tangible assets and operating business segments. As of the Petition Date, the OpCo Debtors were obligated on: (a) a $247.8 million asset-based lending facility which is memorialized in that certain *Third Amended and Restated Loan and Security Agreement*, dated as of March 10, 2021 (as amended, amended and restated, supplemented, or otherwise modified, refinanced, or replaced from time to time prior to the Petition Date, the "ABL Credit Agreement"), (b) a $1.097 million first lien term loan facility which is memorialized in that certain *First Lien Credit Agreement*, dated as of March 10, 2021 (as amended, amended and restated, supplemented, or otherwise modified, refinanced, or replaced from time to time prior to the Petition Date, the "First Lien Term Loan Credit Agreement"), and (c) a $125 million second lien term loan facility which is memorialized in that certain *Second Lien Credit Agreement*, dated as of March 10, 2021 (as amended, amended and restated, supplemented, or otherwise modified, refinanced or replaced from time to time prior to the Petition Date, the "Second Lien Term Loan Agreement").

### 2.    The HoldCo Facility

28.    As noted above, the Take Private Transaction was funded, in part, with the $475 million HoldCo Facility.    The HoldCo Facility is memorialized in that certain *Credit*

*Agreement*, dated as of August 21, 2023 (as amended, amended and restated, supplemented, or otherwise modified, refinanced, or replaced from time to time prior to the Petition Date (the "HoldCo Term Loan Credit Agreement").  Pursuant to the HoldCo Term Loan Credit Agreement, the HoldCo Debtors were required to make quarterly interest payments to the HoldCo Lenders; these interest payments amounted to over $18 million in each of November, 2023, February, 2024, and May, 2024.

29.     None of the Debtors other than the HoldCo Debtors are obligors under the HoldCo Facility, except by virtue of the HoldCo Guarantee described below.  Under the HoldCo Facility, the HoldCo lenders were granted a security interest in substantially all assets of the HoldCo Debtors, which consist principally if not exclusively of  the equity interests in FRG.

E.     **The Transferred Funds**

30.     As noted above, the HoldCo Debtors had and have no operations, and their main asset is Freedom VCM's 100% equity interest in FRG.

31.     Thus, the HoldCo Debtors' ability to make the interest payments required by the HoldCo Facility was dependent on their receipt of dividend payments from their operating subsidiaries.

32.     To that end, on or about the dates set forth below, the HoldCo Debtors' wholly owned indirect subsidiary, Franchise Group New HoldCo made the following three payments in the total amount of $55,616,506.48 (the "Transferred Funds") as dividends to Freedom VCM, Inc.:

| Date of Payment | Amount of Payment |
|---|---|
| November 25, 2023 | $18,669,319.78 |
| February 20, 2024 | $18,553,745.58 |
| May 20, 2024 | $18,393,441.12 |

33.    The Transferred Funds were then transferred from Franchise VCM, Inc. to the HoldCo Agent as follows:

| Date of Payment | Amount of Payment |
|---|---|
| November 25, 2023 | $18,669,319.78 |
| February 21, 2024 | $18,553,745.58 |
| May 21, 2024 | $18,393,441.12 |

34.    After receipt of each payment, the HoldCo Agent disbursed the funds to the HoldCo Lenders.  At each time that the HoldCo Agent received the Transferred Funds and each time that each HoldCo Lender received its *pro rata* portion of the Transferred Funds from the HoldCo Agent, the HoldCo Agent and each HoldCo Lender knew or should have known that (i) the Transferred Funds were transferred as dividends from Franchise Group New HoldCo to Freedom VCM, Inc. in order to make interest payments on the HoldCo Loans, and (ii) at each time that the Transferred Funds were transferred, Franchise Group New HoldCo (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with Franchise Group New HoldCo was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.  The Transferred Funds benefitted the HoldCo Debtors and the HoldCo Lenders and harmed the OpCo Debtors' creditors, and are avoidable as fraudulent transfers as set forth herein.

1.    **The HoldCo Guarantee**

35.    In August 2024, after making a series of dividend payments in prior

periods which were used to pay interest on the HoldCo Facility, the OpCo Debtors did not have sufficient cash to make the interest payments required by the HoldCo Term Loan Credit Agreement, and OpCo Debtors' lenders declined to consent to any further dividend payments to the HoldCo Debtors in order to fund the then required interest payments.  Accordingly, pursuant to that certain Supplement No. 1, dated as of August 19, 2024 (the "Supplement No. 1"), certain of the OpCo Debtors (collectively the "Supplement No. 1 Obligors") obligated under the ABL Credit Agreement, the First Lien Term Loan Credit Agreement, or the Second Lien Term Loan Credit Agreement provided a guarantee (the "HoldCo Guarantee") of the obligations under the HoldCo Term Loan Credit Agreement in an amount not to exceed $19.51 million, and pursuant to that certain Fifth Amendment to the Second Lien Credit Agreement, dated as of August 19, 2024, the HoldCo Debtors agreed to treat the "Secured HoldCo Guarantee Obligations" as "Secured Obligations" (each as defined in the Second Lien Term Loan Credit Agreement).

36.    Upon information and belief, the HoldCo Lenders contend that they have a lien on certain of the OpCo Debtors' property (the "HoldCo Lenders' Purported Lien") on the basis of the HoldCo Guarantee.

37.    The credit facilities at the OpCo Debtors and the HoldCo Facility are entirely separate, and aside from the HoldCo Guarantee provided by the Supplement No. 1 Obligors, each has different obligors.

38.    The Supplement No. 1 Obligors received no consideration for their delivery of the HoldCo Guarantee or the grant of the HoldCo Lenders' Purported Lien.

39.    Although, Supplement No. 1, the HoldCo Guarantee, and the pledge of the assets that ultimately became subject to the HoldCo Lenders Purported Lien (collectively, the "Supplement No. 1 Transferred Property") benefitted the HoldCo Debtors and the HoldCo Lenders, these transactions provided no benefit to the OpCo Debtors and their creditors who previously had no obligations to the HoldCo Lenders.  At the time that the HoldCo Agent and

each HoldCo Lender entered into the HoldCo Guarantee with the Supplement No. 1 Obligors, the HoldCo Debtors, as ultimate parents of the Supplement No. 1 Obligors knew or should have known that each Supplement No. 1 Obligor (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with it was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

40.     Pursuant to section 544(a) of the Bankruptcy Code, Plaintiff asserts the rights of a hypothetical lien creditor as of the Petition Date.  Additionally, Plaintiff alleges for purposes of state fraudulent transfer laws made applicable by section 544(b) of the Bankruptcy Code, that there are unpaid creditors whose claims arose before the challenged transfers were made as well as creditors whose claims arose after the challenged transfers were made

**F.     The HoldCo Lender Proofs of Claim**

41.     On or about January 23, 2025, the HoldCo Agent filed claim number 2137 (the "Agent Proof of Claim") in an amount of not less than $527,654,196.52.

42.     In addition, the following HoldCo Lenders filed the following proofs of claim (together, the "HoldCo Lender Proofs of Claim") against the Debtors on the following dates:

| Claim Number | HoldCo Lender | Date of Filing |
|---|---|---|
| 1924 | Irradiant Solutions Fund, L.P. | January 23, 2025 |
| 1955 | Irradiant Solutions Mini-Master, Fund, L.P. | January 23, 2025 |
| 1961 | IFRG Investors II, L.P. | January 23, 2025 |
| 1977 | Irradiant Solutions Fund II, L.P. | January 23, 2025 |
| 1862 | IFRG Investors III, L.P | January 23, 2025 |
| 2054 | Irradiant Solutions Mini-Master Fund II, SCSP | January 23, 2025 |
| 2106 | Co Finance II LVS II LLC | January 23, 2025 |
| 2110 | OC III LVS LXII LP | January 23, 2025 |

| Claim Number | HoldCo Lender | Date of Filing |
|---|---|---|
| 2098 | RSF XVIII LLC | January 23, 2025 |
| 2107 | HVS XXXIV LLC | January 23, 2025 |

43.    The Agent Proof of Claim and each HoldCo Lender Proof of Claim assert that pursuant to the *Order Authorizing Filing Master Proof of Claim by the Prepetition HoldCo Secured Parties* [Docket No. 801] (the "HoldCo Claim Stipulation"), it is authorized to file a master proof of claim against FRG that will be deemed a proof of claim against all of the Debtors, and that, accordingly, the proof of claim "will be deemed a proof of claim against all of the Debtors." *See, e.g.*, Proof of Claim No. 2137, filed by HoldCo Agent.  Thus, each Holder Lender Proof of Claim, *inter alia*, asserts claims against every OpCo Debtor, regardless of whether the claimant is in privity with any or all of the OpCo Debtors.

## CAUSES OF ACTION

### COUNT 1
### (Against Freedom VCM, Inc.)
### (Avoidance of Transfer of the Transferred Funds to Freedom VCM, Inc.
### 11 U.S.C. §§ 548 and 550)

44.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

45.    At all relevant times, Franchise Group New HoldCo had an interest in the Transferred Funds.

46.    Within two years of the Petition Date, Franchise Group New HoldCo directly or indirectly transferred the Transferred Funds to Freedom VCM, Inc.

47.    Franchise Group New HoldCo received less than reasonably equivalent value from Freedom VCM, Inc. in exchange for the transfer of the Transferred Funds.

48.    Franchise Group New HoldCo transferred the Transferred Funds to Freedom VCM when Franchise Group New HoldCo:  (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for

which any property remaining with Franchise Group New HoldCo was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

49.     Pursuant to 11 U.S.C. § 550, the Transferred Funds are voidable by the Plaintiff.

50.     Accordingly, Plaintiff is entitled to void the transfer of the Transferred Funds and to a monetary judgment against Freedom VCM, Inc. in an amount to be determined at trial, plus interest.

## COUNT 2
### (Against Freedom VCM, Inc.)
### (Avoidance of Transfer of the Transferred Funds to Freedom VCM, Inc. 11 U.S.C. §§ 544 and 550 and 6 Del. C. §§ 1304(a)(2) and 1305(a))

51.     Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

52.     At all relevant times, Franchise Group New HoldCo had an interest in the Transferred Funds.

53.     Within four years of the Petition Date, Franchise Group New HoldCo directly or indirectly transferred the Transferred Funds to Freedom VCM, Inc.

54.     Franchise Group New HoldCo received less than reasonably equivalent value from Freedom VCM, Inc. in exchange for the transfer of the Transferred Funds.

55.     Franchise Group New HoldCo transferred the Transferred Funds to Freedom VCM, Inc. when Franchise Group New HoldCo:  (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with Franchise Group New HoldCo was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

56.     Pursuant to 11 U.S.C. §§ 544 and 550, and 6 Del. C. §§ 1304(a)(2) and 1305(a), Plaintiff is entitled to recover for the benefit of the Debtors' estates the Transferred Funds, or the value of such property, from Freedom VCM, Inc.

57.     Accordingly, Plaintiff is entitled to void the transfer of the Transferred Funds and to a monetary judgment against Freedom VCM, Inc. in an amount to be determined at trial, plus interest.

### COUNT 3
### (Against Freedom VCM, Inc.)
### (Illegal Dividend
### 8 Del. C. §§ 170, 173, and 174)

58.     Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

59.     On or about November 21, 2023, February 21, 2024, and May 20, 2024, Franchise Group New HoldCo transferred the Transferred Funds to Freedom VCM, Inc.

60.     Section 170 of the Delaware General Corporation Law (the "DGCL") provides, in relevant part, that "directors … may declare and pay dividends upon the shares of its capital stock either … [o]ut of its surplus [or] [i]n case there shall be no such surplus, out of its net profits for the fiscal year in which the dividend is declared and/or the preceding fiscal year." 8 Del. C. § 170. Surplus is defined as "[t]he excess, if any, at any given time, of the net assets of the corporation over the amount so determined to be capital." 8 Del. C. § 154. Net assets "means the amount by which total assets exceed total liabilities," and capital for par value stock equals the par value of consideration received for the issuance of such stock. *Id*. Section 173 of the DGCL provides that "[n]o corporation shall pay dividends except in accordance with this chapter." 8 Del. C. §173.

61.     The HoldCo Distributions were each a dividend under Delaware law.

62.    The HoldCo Distributions were each illegal at the time that they were made because, as Freedom VCM, Inc. was aware, Franchise Group New HoldCo lacked the surplus or net profits from which to issue the HoldCo Distributions.

63.    Accordingly, pursuant to Section 174 of the DGCL, Plaintiff is entitled to recover the value of each of the HoldCo Distributions from Defendant Freedom VCM, Inc.

**COUNT 4**
**(Against HoldCo Lenders)**
**(Avoidance of Transfer of the Transferred Funds to**
**the HoldCo Agent and the HoldCo Lenders**
**11 U.S.C. §§ 548 and 550)**

64.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

65.    At all relevant times, Franchise Group New HoldCo had an interest in the Transferred Funds.

66.    Within two years of the Petition Date, Franchise Group New HoldCo directly or indirectly transferred the Transferred Funds to Freedom VCM, Inc.

67.    Thereafter, Freedom VCM, Inc. directly or indirectly transferred the Transferred Funds to the HoldCo Agent and then to the HoldCo Lenders.

68.    Franchise Group New HoldCo received less than reasonably equivalent value from Freedom VCM, Inc. for the transfer of the Transferred Funds.

69.    Franchise Group New HoldCo indirectly or indirectly transferred the Transferred Funds to Freedom VCM, Inc. when Franchise Group New HoldCo: (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with Franchise Group New HoldCo was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

70.     Pursuant to 11 U.S.C. § 550(a)(2), Plaintiff is entitled to recover the value of the Transferred funds from any immediate or mediate transferee of Freedom VCM, Inc.

71.     Accordingly, Plaintiff is entitled to void the transfer of the Transferred Funds and to a monetary judgment against the HoldCo Agent and the HoldCo Lenders in an amount to be determined at trial, plus interest.

**COUNT 5**
**(Against the HoldCo Agent and HoldCo Lenders)**
**(Avoidance of Transfer of the Transferred Funds to the**
**Holdco Agent and the HoldCo Lenders**
**11 U.S.C. §§ 544 and 550 and 6 Del. C. §§ 1304(a)(2) and 1305(a))**

72.     Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

73.     At all relevant times, Franchise Group New HoldCo had an interest in the Transferred Funds.

74.     Within four years of the Petition Date, Franchise Group New HoldCo directly or indirectly transferred the Transferred Funds to Freedom VCM, Inc.

75.     Thereafter, Freedom VCM, Inc. directly or indirectly transferred the Transferred Funds to the HoldCo Agent and then to the HoldCo Lenders.

76.     Franchise Group New HoldCo received less than reasonably equivalent value from Freedom VCM, Inc. in exchange for the transfer of the Transferred Funds.

77.     Franchise Group New HoldCo directly or indirectly transferred the Transferred Funds to Freedom VCM, Inc. when Franchise Group New HoldCo:  (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with Franchise Group New HoldCo was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

78.     Pursuant to 11 U.S.C. §§ 544 and 550(a)(2) and 6 Del. C. §§ 1304(a)(2) and 1305(a), Plaintiff is entitled to recover the value of the Transferred Funds from any immediate or mediate transferee of Freedom VCM, Inc.

79.     Accordingly, Plaintiff is entitled to void the transfer of the Transferred Funds and to a monetary judgment against the HoldCo Agent and the HoldCo Lenders in an amount to be determined at trial, plus interest.

## COUNT 6
### (Against HoldCo Term Loan Agent and the HoldCo Lenders)
### (Avoidance of Supplement No. 1 and
### the HoldCo Guarantee as Fraudulently Incurred Obligations
### 11 U.S.C. §§ 548 and 550)

80.     Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

81.     On or about August 21, 2024, the Supplement No. 1 Obligors entered into Supplement No. 1 and the HoldCo Guarantee contained therein.

82.     Pursuant to section 548(a) of the Bankruptcy Code, the Supplement No. 1 Obligors received less than reasonably equivalent value from the HoldCo Lenders in exchange for entering into Supplement No. 1 and the HoldCo Guarantee.

83.     At the time that  the Supplement  No. 1 Obligors entered into Supplement No. 1 and the HoldCo Guarantee, each Supplement No. 1 Obligor: (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with them was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

84.     Pursuant to section 550 of the Bankruptcy Code, the obligations under Supplement No. 1 and the HoldCo Guarantee are voidable by the Supplement No. 1 Obligors.

85.     Accordingly, Plaintiff is entitled to void such obligations.

**COUNT 7**
**(Against HoldCo Term Loan Agent and the HoldCo Lenders)**
**(Avoidance of Supplement No. 1 and the HoldCo Guarantee**
**as Fraudulently Incurred Obligations**
**11 U.S.C. §§ 544 and 550 and 6 Del. C. §§ 1304(a)(2) and 1305(a))**

86.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

87.    On or about August 21, 2024, the Supplement No. 1 Obligors entered into Supplement No. 1 and the HoldCo Guarantee contained therein.

88.    The Supplement No. 1 Obligors received less than reasonably equivalent value from the HoldCo Lenders in exchange for entering into Supplement No. 1 and the HoldCo Guarantee.

89.    At the time that the Supplement 1 Obligors entered into Supplement No. 1 and the HoldCo Guarantee, each Supplement No. 1 Obligor: (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with them was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

90.    Pursuant to section 11 U.S.C. §§ 544 and 550 and 6 Del. C. §§ 1304(a)(2) and 1305(a), the obligations under Supplement No. 1 and the HoldCo Guarantee are voidable by the Supplement No. 1 Obligors.

91.    Accordingly, Plaintiff is entitled to void such obligations.

**COUNT 8**
**(Against HoldCo Term Loan Agent and the HoldCo Lenders)**
**(Avoidance of Liens in Connection with**
**Supplement No. 1 and the HoldCo Guarantee**
**11 U.S.C. §§ 548 and 550)**

92.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

93.     On or about August 21, 2024, the Supplement No. 1 Obligors entered into Supplement 1 and the HoldCo Guarantee contained therein.

94.     In connection with entering into Supplement No. 1 and the HoldCo Guarantee, the Supplement No. 1 Obligors, directly or indirectly, voluntarily or involuntarily, made transfers and conveyances, and incurred obligations for the benefit of the HoldCo Lenders, including without limitation, the pledges of assets that ultimately became subject to the HoldCo Lenders' Purported Lien.

95.     Pursuant to section 548(a) of the Bankruptcy Code, the Supplement No. 1 Obligors received less than reasonably equivalent value from the HoldCo Lenders in exchange for such transfers, conveyances, and incurrences of obligations for the HoldCo Lenders.

96.     At the time that the Supplement No. 1 Obligors pledged to the HoldCo Lenders the assets that ultimately became subject to the HoldCo Lenders' Purported Lien, each Supplement No. 1 Obligor: (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with them was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

97.     Pursuant to section 550 of the Bankruptcy Code, the pledges that ultimately became subject to the HoldCo Lenders' Purported Lien are voidable by the Supplement No. 1 Obligors.

98.     Accordingly, Plaintiff is entitled to void the pledge of assets that ultimately became subject to the HoldCo Lenders' Purported Lien and to a monetary judgment against the HoldCo Lenders in an amount to be determined at trial, plus interest.

## COUNT 9
**(Against HoldCo Term Loan Agent and the HoldCo Lenders)**
**(Avoidance of Liens in Connection with**
**Supplement No. 1 and the HoldCo Guarantee**
**11 U.S.C. §§ 544 and 550 and 6 Del. C. §§ 1304(a)(2) and 1305(a))**

99.     Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

100.    On or about August 21, 2024, the Supplement No. 1 Obligors entered into Supplement No. 1 and the HoldCo Guarantee.

101.    In connection with entering into Supplement No. 1 and the HoldCo Guarantee, the Supplement No. 1 Obligors, directly or indirectly, voluntarily or involuntarily, made transfers and conveyances, and incurred obligations for the benefit of the HoldCo Lenders, including without limitation, the pledges of assets that ultimately became subject to the HoldCo Lenders' Purported Lien.

102.    The Supplement No. 1 Obligors received less than reasonably equivalent value from the HoldCo Lenders in exchange for such transfers, conveyances, and incurrences of obligations for the HoldCo Lenders.

103.    At the time that the Supplement No. 1 Obligors pledged to the HoldCo Lenders the assets that ultimately became subject to HoldCo Lenders' Purported Lien, each Supplement No. 1 Obligor: (a) was insolvent or became insolvent as a result of such transfers; (b) was engaged in business, or was about to engage in business, for which any property remaining with them was unreasonably small capital; or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

104.    Pursuant to section 550 of the Bankruptcy Code, the pledges that ultimately became subject to the HoldCo Lenders' Purported Lien are voidable by the Supplement No. 1 Obligors.

105.    Accordingly, pursuant to 11 U.S.C. §§ 544 and 550 and 6 Del. C. §§ 1304(a)(2) and 1305(a), Plaintiff is entitled to void the pledge of assets that ultimately became subject to the HoldCo Lenders' Purported Lien and to a monetary judgment against the HoldCo Lenders in an amount to be determined at trial, plus interest.

### COUNT 10
**(Against the HoldCo Debtors)**
**(Avoidance of Transfer of the**
**Supplement No. 1 Transferred Property**
**11 U.S.C. §§ 548 and 550)**

106.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

107.    At all relevant times, the Supplement No. 1 Obligors had an interest in the Supplement No. 1 Transferred Property.

108.    Within two years of the Petition Date, the Supplement No. 1 Obligors directly or indirectly transferred the Supplement No. 1 Transferred Property to the HoldCo Lenders for the benefit of the HoldCo Debtors who otherwise would have defaulted on their obligations under the HoldCo Facility.

109.    Accordingly, the Holder Debtors, directly or indirectly, received the value of Supplement No. 1 Transferred Property that the Supplement No. 1 Obligors initially transferred to the HoldCo Lenders.

110.    The Supplement No. 1 Obligors received less than reasonably equivalent value from the HoldCo Lenders in exchange for the transfer of the Supplement No. 1 Transferred Property.

111.    The Supplement No. 1 Obligors indirectly or indirectly transferred the Supplement No. 1 Transferred Property to the HoldCo Lenders when the Supplement No. 1. Obligors: (a) were  insolvent or became insolvent as a result of such transfers; (b) were engaged in business, or were about to engage in business, for which any property remaining with the

Supplement No. 1 Obligors was unreasonably small capital; or (c) intended to incur, or believed that they would incur, debts beyond its ability to pay as such debts matured.

112.    Pursuant to 11 U.S.C. § 550(a)(2), Plaintiff is entitled to recover the value of the Transferred funds from any immediate or mediate transferee of the HoldCo Lenders.

113.    Accordingly, Plaintiff is entitled to void the transfer of the Transferred Funds and to a monetary judgment against the HoldCo Debtors in an amount to be determined at trial, plus interest.

**COUNT 11**
**(Against the HoldCo Debtors)**
**(Avoidance of Transfer of the**
**Supplement No. 1 Transferred Property**
**11 U.S.C. §§ 544 and 550 and 6 Del. C. §§ 1304(a)(2) and 1305(a))**

114.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

115.    At all relevant times, the Supplement No. 1 Obligors had an interest in the Supplement No. 1 Transferred Property.

116.    Within four years of the Petition Date, the Supplement No. 1 Obligors directly or indirectly transferred the Supplement No. 1 Transferred Property to the HoldCo Lenders for the benefit of the HoldCo Debtors who otherwise would have defaulted on their obligations under the HoldCo Facility.

117.    Accordingly, the HoldCo Debtors, directly or indirectly, received the value of Supplement No. 1 Transferred Property that the Supplement No. 1 Obligors initially transferred to the HoldCo Lenders.

118.    The Supplement No. 1 Obligors received less than reasonably equivalent value from the HoldCo Lenders in exchange for the transfer of the Supplement No. 1 Transferred Property.

119.    The Supplement No. 1 Obligors directly or indirectly transferred the Supplement No. 1 Transferred Property to the HoldCo Lenders when the Supplement No. 1 Obligors:  (a) were insolvent or became insolvent as a result of such transfers; (b) were engaged in business, or were about to engage in business, for which any property remaining with the Supplement No. 1 Obligors was unreasonably small capital; or (c) intended to incur, or believed that they would incur, debts beyond their ability to pay as such debts matured.

120.    Pursuant to 11 U.S.C. §§ 544 and 550(a)(2) and 6 Del. C. §§ 1304(a)(2) and 1305(a), Plaintiff is entitled to recover the value of the Supplement No. 1 Transferred Property from any immediate or mediate transferee of the HoldCo Lenders.

121.    Accordingly, Plaintiff is entitled to void the transfer of the Supplement No. 1 Transferred Property and to a monetary judgment against the HoldCo Debtors in an amount to be determined at trial, plus interest.

### COUNT 12
**(Objection to Agent Proof of Claim)**
**(11 U.S.C. § 502 and Bankruptcy Rules 3007 and 7001)**

122.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

123.    The Agent Proof of Claim asserts that pursuant to the HoldCo Claim Stipulation, the HoldCo Agent is authorized to file a master proof of claim against FRG that "will be deemed a proof of claim against all of the Debtors."

124.    Thus, the Agent Proof of Claim appears to assert claims for the outstanding amounts under the HoldCo Facility against all the Debtors, including the OpCo Debtors, regardless of whether it is in privity with them.

125.    The Agent Proof of Claim also asserts vague and unspecified claims (the "Additional Agent Claims") against the Debtors or an undefined "subset of the Debtors" (1) arising out of the Take Private Transaction; (2) relating to intercompany claims in which there is

no evidence that the Agent or the HoldCo Lenders have any ownership interest; (3) relating to purported conflicts of interest with respect to the HoldCo Debtors (not the HoldCo Agent or the HoldCo Lenders; and (4) relating to purported breaches of duty by the Debtors' officers and directors.

126.    Nothing in the HoldCo Claim Stipulation provides the HoldCo Agent or the HoldCo Lenders with the right to assert claims related to the HoldCo Facility and the HoldCo Guarantee against Debtors that are not obligors pursuant to those instruments.

127.    Accordingly, pursuant to Section 502 of the Bankruptcy Code and Bankruptcy Rules 3007 and 7001, Plaintiff objects to the Agent Proof of Claim to the extent it seeks to recover (1) on account of the HoldCo Facility from any party other than Freedom VCM, Inc., Freedom VCM Interco, Inc., Freedom VCM Holdings, LLC, Freedom Receivables II, LLC, Freedom VCM Interco Holdings, Inc., and Freedom VCM Receivables, Inc. and the OpCo Debtors that are parties to the HoldCo Guarantee and (2) from the Supplement No. 1 Obligors on account of the HoldCo Guarantee.

128.    Plaintiff also objects to the remaining portions of the Agent Proof of Claim on the grounds that they lack adequate specificity and that they fail to state claims upon which relief can be granted.

### COUNT 13
**(Objection to the HoldCo Lender Proofs of Claim)**
**(11 U.S.C. § 502 and Bankruptcy Rules 3007 and 7001)**

129.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

130.    Each HoldCo Lender Proof of Claim asserts that pursuant to the HoldCo Claim Stipulation, the each HoldCo Lender is authorized to file a master proof of claim against FRG that "will be deemed a proof of claim against all of the Debtors."

131.    Thus, each HoldCo Lender Proof of Claim appears to assert claims for the outstanding amounts under the HoldCo Facility against all the Debtors, including the OpCo Debtors, regardless of whether there is any privity with them.

132.    Each HoldCo Lender Proof of Claim also asserts vague and unspecified claims (together, the "<u>Additional Holdco Lender Claims</u>") against the Debtors or an undefined "subset of the Debtors" (1) arising out of the Take Private Transaction; (2) relating to purported conflicts of interest with respect to the HoldCo Debtors (not the HoldCo Agent or the HoldCo Lenders; and (3) relating to purported breaches of duty by the Debtors' officers and directors.

133.    Nothing in the HoldCo Claim Stipulation provides the HoldCo Agent or the HoldCo Lenders with the right to assert claims related to the HoldCo Facility and the HoldCo Guarantee against Debtors that are not obligors pursuant to those instruments.

134.    Accordingly, pursuant to Section 502 of the Bankruptcy Code and Bankruptcy Rules 3007 and 7001, Plaintiff objects to each HoldCo Lender Proof of Claim to the extent it seeks to recover (1) on account of the HoldCo Facility from any party other than Freedom VCM, Inc., Freedom VCM Interco, Inc., Freedom VCM Holdings, LLC, Freedom Receivables II, LLC, Freedom VCM Interco Holdings, Inc., and Freedom VCM Receivables, Inc. and (2) from the Supplement No. 1 Obligors on account of the HoldCo Guarantee.

135.    Plaintiff also objects to the Additional Holdco Lender Claims on the grounds that they lack adequate specificity and that they fail to state claims upon which relief can be granted.

**COUNT 14**
**(Against all Defendants)**
**(Objection to Allowance of Claims Pending Avoidance Actions**
**(11 U.S.C. § 502(d))**

136.    Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

137.    Pursuant to section 502(d) of the Bankruptcy Code, Plaintiff objects to the allowance of any proof of claim filed now or hereafter by any party named as a defendant in the above-captioned adversary proceeding (the "Defendants").

138.    Pursuant to section 502(d) of the Bankruptcy Code, each proof of claim filed by each of the Defendants should be disallowed until the applicable Defendant has paid the amounts and/or returned the property subject to avoidance as set forth in this Complaint.

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court enter an order and judgment:

(1)    On Counts 1 and 2, against the Freedom VCM, Inc., awarding Plaintiff judgment against Freedom VCM, Inc., avoiding the transfer of the Transferred Funds, or alternatively, awarding Plaintiff judgment for the value of the Transferred Funds in an amount to be determined at trial;

(2)    On Count 3, against Freedom VCM, Inc., awarding Plaintiff judgment against Freedom VCM, Inc., for the value of the Transferred Funds in an amount to be determined at trial;

(3)    On Counts 4 and 5 against the HoldCo Agent and the HoldCo Lenders awarding Plaintiff judgment for the value of the Transferred Funds in an amount to be determined at trial;

(4)    On Counts 6 and 7, against the HoldCo Term Loan Agent and the HoldCo Lenders, avoiding Supplement No. 1 and the HoldCo Guarantee as fraudulently incurred obligations;

(5)    On Counts 8 and 9 against the HoldCo Term Loan Agent and the HoldCo Lenders, avoiding the HoldCo Lenders' Purported Lien as a fraudulently incurred obligation;

(6)    On Counts 10 and 11, against the HoldCo Debtors, awarding Plaintiff judgment against the HoldCo Debtors for the value of the Supplement No. 1 Transfers in an amount to be determined at trial;

(7)    On Count 12, against the HoldCo Agent, (1) disallowing the Agent Proof of Claim to the extent it seeks to recover (a)  on account of the HoldCo Facility from any party other than Freedom VCM, Inc., Freedom VCM Interco, Inc., Freedom VCM Holdings, LLC, Freedom Receivables II, LLC, Freedom VCM Interco Holdings, Inc., and Freedom VCM Receivables, Inc. and the OpCo Debtors that are parties to the HoldCo Guarantee and (b) from the Supplement No. 1 Obligors on account of the HoldCo Guarantee; and (2) disallowing the Additional Agent Claims;

(8)     On Count 13 against the HoldCo Lenders, (1) disallowing the each Lender Proof of Claim to the extent it seeks to recover (a) recover on account of the HoldCo Facility from any party other than Freedom VCM, Inc., Freedom VCM Interco, Inc., Freedom VCM Holdings, LLC, Freedom Receivables II, LLC, Freedom VCM Interco Holdings, Inc., and Freedom VCM Receivables, Inc. and the OpCo Debtors that are parties to the HoldCo Guarantee and (b) from the Supplement No. 1 Obligors on account of the HoldCo Guarantee; and (2) disallowing the Additional Lender Claims;

(9)     On Count 14, against all Defendants, awarding Plaintiff judgment against each of the Defendants disallowing any proof of claim that has been or will be filed by any of them pursuant to section 502(d) of the Bankruptcy Code; and

(10)    granting Plaintiff such other and further relief as the Court deems just, proper, and equitable, including the costs and expenses of this action.

Dated: _____, 2025          Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ [DRAFT]*
Bradford J. Sandler, Esq.
Colin R. Robinson, Esq.
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:     (302) 652-4400
Email:           bsandler@pszjlaw.com
                     crobinson@pszjlaw.com

-and-

Robert J. Feinstein, Esq.    (admitted *pro hac vice*)
Alan J. Kornfeld, Esq.       (admitted *pro hac vice*)
Theodore S. Heckel, Esq.    (admitted *pro hac vice*)
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone:    (212) 561-7700
Facsimile:     (212) 561-7777
Email:           rfeinstein@pszjlaw.com
                     akornfeld@pszjlaw.com
                     theckel@pszjlaw.com

*Counsel to the Official Committee*
*of Unsecured Creditors*