IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 1144, 1185, 1187** |

**REPLY IN SUPPORT OF MOTION OF ANDREW LAURENCE, MATTHEW
AVRIL, BRIAN KAHN, CYNTHIA DUBIN, AND THOMAS HERSKOVITS
FOR RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT
APPLICABLE, TO ALLOW PAYMENT OF DEFENSE COSTS AND OTHER
LOSSES UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES**

Andrew Laurence, Matthew Avril, Brian Kahn, Cynthia Dubin, and Thomas

Herskovits (collectively, the "Movants"), current and former directors and officers of one or more

of the above-captioned debtors and debtors in possession (the "Debtors"), by and through their

undersigned counsel, hereby reply (this "Reply") to the *Objection of the Ad Hoc Group of Freedom*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification
numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225),
Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables,
Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC
(0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group
Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco
Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271),
American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group
Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353),
Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor,
LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising
and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC
(9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor
Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin
Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising,
LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group
Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies
"Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398),
WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP
Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC
(7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware,
Ohio 43015.

*Lenders to Motion of Andrew Laurence, Matthew Avril, Brian Kahn, Cynthia Dubin, and Thomas Herskovits for Relief from the Automatic Stay* (D.I. 1185) (the "Freedom Lenders' Objection" filed by the "Freedom Lenders") and the *Joinder of the Official Committee of Unsecured Creditors to Objection of the Ad Hoc Group of Freedom Lenders to Motion of Andrew Laurence, Matthew Avril, Brian Kahn, Cynthia Dubin, and Thomas Herskovits for Relief From the Automatic Stay* (D.I. 1187) (the "Committee Joinder" and together with the Freedom Lenders' Objection, the "Objections"), and in further support of their motion (D.I. 1144) (the "Motion")[2] for relief from the automatic stay, to the extent applicable, to allow payment of defense costs and other losses under the D&O Policies.

## REPLY

1.     In objecting to the Motion, the Freedom Lenders ignore applicable law and the plain language of the Primary Policy to ask this Court to eliminate the Movants' rights to proceeds of insurance policies that exist principally for their benefit.  Most glaring is that the Freedom Lenders ignore the Primary Policy's Order of Payments provision that unequivocally requires payment of the Movants' Losses under Side A before any coverage is afforded to the Debtors under Sides B and C, relegating the provision to a footnote in their objection.  The Primary Policy's plain language is fatal to their position.

2.     Instead, the Freedom Lenders suggest that non-existent or speculative claims provide a basis to rewrite the D&O Policies to give the Debtors' estates greater rights to the policy proceeds than they have in the policies themselves. First, although recognizing that the Debtors are **not** indemnifying the Movants or advancing their defense costs, the Freedom Lenders

---

[2]    Capitalized terms used but not defined herein are used as defined in the Motion or the Freedom Lenders' Objection as applicable.

theorize that there could be Side B coverage if the Debtors reverse course.  The Freedom Lenders

do not suggest that will happen, nor do they mention that the Debtors would first need to satisfy

the $250,000 Retention before such coverage would apply.  Second, the Freedom Lenders further

speculate that there could be Side C coverage for the Debtors' estates based on prepetition lawsuits

filed a year before the policy period and unproven proofs of claim asserted against the Debtors.

3.       The Freedom Lenders' arguments lack merit and should be rejected.  Courts

reviewing policies just like the D&O Policies here have held that the types of contingent and

speculative claims hypothesized by the Freedom Lenders are insufficient to deny directors and

officers access to coverage.  The caselaw the Freedom Lenders rely upon to argue to the contrary

is inapposite and does not change the result.

4.       The Movants are nevertheless amenable to a resolution that preserves the

their rights to the proceeds of the D&O Policies.  As the Movants stated in the Motion and the

Freedom Lenders rely upon heavily, the Side A Policies (which the Freedom Lenders refer to as

the "DIC Policies") provide only Side A coverage.  The Movants are amenable to an order

permitting access to the Side A Policies first, provided that the Movants be permitted to access the

proceeds of the other D&O Policies if the insurers under the Side A Policies do not provide

coverage or the Movants require coverage in excess of the limits of the Side A Policies.  The

Movants are further amenable to periodic reporting of the amount of the proceeds used, but that

requirement should also apply to the Debtors and any estate representative that seeks to use the

proceeds. The Movants do not, however, agree to the requirement that this Court first approve the

use of any proceeds to satisfy a settlement in the Delaware Litigation, because, among other things,

that would allow the Objectors a second bite at the apple to eliminate the Movants' property rights

and there is already an appropriate and mandatory mechanism in the Court of Chancery of the State of Delaware for the approval of any settlement.

5.    For these reasons, and as set forth below and in the Motion, the Court should decline the Objectors' invitation to rewrite the D&O Policies to expand the Debtors' estates' rights to the policy proceeds, and overrule the Objections by enforcing the policies as written.

**A.  The D&O Policies entitle the Movants to access the policy proceeds.**

6.    The proceeds of the D&O Policies are not property of the Debtors' estates, or, alternatively, cause exists to grant the Movants' relief from the automatic stay to access the policy proceeds, because (i) the D&O Policies exist principally for the Movants' benefit as Insured Persons pursuant to the policies' plain language and (ii) any claims to coverage under Sides B and C of the D&O Policies are entirely speculative.

7.    *First*, the plain language of the D&O Policies establishes beyond doubt that the D&O Policies are principally for the benefit of the Movants as Insured Persons.  The Order of Payments provision in the Primary Policy decidedly subordinates the Debtors' interest in the proceeds under Sides B and C to the interests of the Movants in the Side A coverage.  That provision requires the insurer to "[f]irst, pay all Loss covered under Insuring Agreement A," and then, "only after payment of Loss has been made" under Side A, pay Losses covered under Sides B and C.  Primary Policy, *Private D&O Coverage Section*, § 3.B, Endorsement No. 16.  The Order of Payments provision provides a "clear chain of priority among the three types of coverage," and the bankruptcy filing did not expand the Debtors' rights "against others beyond what rights existed at the commencement of the case."  *In re Downey Fin. Corp.*, 428 B.R. 595, 607–08 (Bankr. D. Del. 2010).  Further bolstering the Movants' superior right to coverage under the Order of Payments provision, the Primary Policy also provides that in the event of the Debtors' bankruptcy, "the Insurer and each Insured agree to cooperate in any efforts by the Insurer or any Insured to

4

obtain relief for the benefit of the Insured Persons [(*i.e.*, the Movants)] from any stay or injunction applicable to the distribution of the policy proceeds." *See* Primary Policy, *General Terms and Conditions*, § 12.

8.    To deny the Movants' rights to the proceeds would require the Court to rewrite the D&O Policies to enlarge the Debtors' rights beyond what existed immediately before the Petition Date in contravention of black letter law and the plain language of the policies themselves. *Downey*, 428 B.R. at 608; *accord Mission Prod. Holdings, Inc.* v. *Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) ("The estate cannot possess anything more than the debtor itself did outside bankruptcy."). As a result, this Court has ruled that policy proceeds are not property of the estate or that cause for stay relief exists where policies grant clear priority to Side A coverage. *See, e.g.*, *In re World Health Alts., Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (finding that the relevant insurance proceeds were not property of the estate because they were from the policy's "Coverage A," to which the trustee had no right under the terms of the policy).

9.    ***Second***, the Freedom Lenders' attempts to conjure claims for coverage under Sides B and C of the D&O Policies fail.

10.    The Freedom Lenders expressly acknowledge that "the Debtors have continued to fail and refuse to pay the Movants for their defense costs, indemnification claims, or any other causes of action against them." Freedom Lenders' Obj. ¶ 15. And the Freedom Lenders do not suggest that this is going to change. This should end the inquiry into whether the Debtors are entitled to Side B coverage.

11.    Nevertheless, the Freedom Lenders argue that the proofs of claim asserted by the Movants in these cases could give rise to Side B coverage *if* the claims are paid by the Debtors. *Id.* at ¶ 16. The Freedom Lenders claim that the Debtors' "duty to indemnify" directors

and officers against defense costs is enough to establish the Debtors' interest in the proceeds and that the mere filing of the proofs of claim by the Movants establish claims by the Debtors against the D&O Policies.  These arguments are contrary to applicable law and the D&O Policies and should be rejected.

12.    The Freedom Lenders acknowledge the Debtors are not indemnifying or advancing defense costs to the Movants. [3]  This Court and others have clearly and repeatedly held that the speculative *opportunity* for indemnification is not sufficient to create an estate property interest in the proceeds or deny the Motion.  *See Downey*, 428 B.R. at 606–07 (finding that because indemnification was hypothetical or speculative, the policy's indemnification coverage was not protecting the estate's other assets from diminution and did not create an estate property interest in the proceeds); *In re Worlds Health Alts.*, 369 B.R. at 810 ("Other courts, however, have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification 'either has not occurred, is hypothetical, or speculative.'"); *In re Allied Digit.*, 306 B.R. at 512 ("Lastly, when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.  That is the situation here."); *see also In re Adelphia Comm'ns Corp.*, 298 B.R. 49 (S.D.N.Y. 2003) ("Such argument would be akin to a car owner with collision coverage claiming he has a right to the proceeds from his policy simply because there is a prospective possibility that his car will collide with another tomorrow.").

13.    Additionally, the Primary Policy requires the Debtors to satisfy a $250,000 retention before they are entitled to any coverage under Side B.  *See* Primary Policy, *General*

---

[3]    The Movants were compelled to file proofs of claim as a result of the bar date order (D.I. 354) or else risk waiving their claims against the Debtors (and, it might be argued, the D&O Policies, though for the reasons set forth herein and in the Motion, the proceeds are not property of the estate).  If the Movants had not filed proofs of claim, surely the Freedom Lenders would argue the Movants waived their claims to the D&O Policies.

*Terms and Conditions*, § 1.  This is squarely on point with *Downey*, where the applicable policy

contained a $1 million retention before the Debtors could access the Side B indemnification

coverage.  *Downey*, 342 B.R. at 606.  There, the debtor had already indemnified the insureds in

the amount of $588,000 pre-petition, but the Court held that because the debtor had "still not

exhausted the Policy's $1 million Retention . . . , no indemnification *for which the Debtor would

be entitled to coverage under the Policy* has occurred" and the proceeds were therefore not

property of the Debtor's estate.  *Id.*

14.     Even a cursory review of the out-of-district caselaw cited by the Freedom

Lenders reveals the deficiency of the Freedom Lenders' arguments in claiming that there could be

Side B coverage available here. Both the New Jersey District Court in *In re Jasmine, Ltd.*, 258

B.R. 119 (D.N.J. 2000) and the Arizona Bankruptcy Court in *In re Circle K. Corp.*, 121 B.R. 257

(Bankr. D. Ariz. 1990) considered the debtor's duty to indemnify under wholly different contexts

and different legal standards. The New Jersey District Court in *Jasmine* was considering whether

the Bankruptcy Court appropriately approved a settlement between the debtor and insurance

carrier that resulted in the cancelation of a policy that provided coverage to both the company and

directors and officers. The District Court affirmed the Bankruptcy Court's decision under

Bankruptcy Rule 9019, finding that there could be coverage for the debtor for indemnification

claims in that case such that the debtor had an interest in the proceeds and could enter into the

settlement. Similarly, the Arizona Bankruptcy Court in *Circle K* considered whether there was a

basis to extend the automatic stay under section 105(a) of the Bankruptcy Code to stay securities

litigation against certain directors and officers of the company, ruling that there was because

continued litigation against the non-debtors could result in indemnification claims against the

debtors' insurance policy such that there was an effect on the estate. Neither Court considered

whether directors and officers were entitled to access proceeds of an insurance policy, especially where the policy has a clear order of payments provision.

15.     The Freedom Lenders' arguments that there is potential Side C coverage also fail.  The Freedom Lenders first claim that there are three cases pending as of the Petition Date that entitle the Debtors to Side C coverage.[4]  All three cases were commenced in 2022 before the policy period for the D&O Policies (which is August 21, 2023 – April 30, 2025).  Such litigation could thus not give rise to claims against the current policies.  And to date, the Debtors have not identified any cases or claims that could give rise to Side C coverage.

16.     The Freedom Lenders next baldly assert that there are "potential causes of actions [sic] set forth in proofs of claim filed against the Debtors" that give rise to Side C coverage. This is again pure speculation that this Court routinely rejects in determining that directors and officers may access insurance coverage.  *See Downey*, 428 B.R. at 606–07; *In re Worlds Health Alts.*, 369 B.R. at 810; *In re Allied Digit.*, 306 B.R. at 512.  And to accept the Freedom Lenders' speculation as a basis to deny the Motion would lead to an absurd result.  Every bankruptcy case involves proofs of claim being asserted against the debtor.  To rule that the mere filing of proofs of claim—which are unproven—is a basis to deny coverage would mean that directors and officers could never access coverage under a policy that provides for Sides A, B and C coverage.  And unsurprisingly, the Freedom Lenders do not cite a single case to support such an absurd result.

17.     Just a few weeks ago, Judge Horan considered in *In re SL Liquidation LLC*, whether directors and officers were entitled to relief to access proceeds of a policy substantially

---

[4]    The Freedom Lenders cite the following cases: Class Action Complaint at 1, *Popa v. PSP Grp., LLC*, Case No. 2:22-cv-1357 (W.D. Pa. Sept. 22 2022) (alleging insidious privacy intrusions resulting from the clandestine deployment of surveillance software on the internet); Class Action Complaint at 1-2, *Gatto v. PSP Stores, LLC*, Case No. 1:22-cv-6397 (E.D.N.Y. Oct. 21 2022) (seeking unpaid wages, commission, and overtime payments); Consent Decree at 2, *Equal Employment Opportunity Commission v. American Freight Management Company, LLC*, Case No. 2:19-cv-273 (N.D. Ala. Feb. 2 2022) (alleging gender-based discrimination consent decree applicable to all facilities nationwide).

identical to the Primary Policy here. Just like the Primary Policy, the policy at issue in *SL*

*Liquidation* provided for Side A, B and C coverage, contained an order of payments provision

giving priority to Side A coverage and included a provision that prohibited the debtors from

opposing the motion. *See* Reply, *In re SL Liquidation LLC*, Case No. 23-10207 (TMH) (D.I. 892)

(March 4, 2025). The policy further included a $150,000 self-insured retention that the debtors

were required to satisfy before any Side B coverage was available to the debtors, and the debtors

had not advanced any defense costs or indemnified the movants. Notwithstanding these provisions,

the liquidating trustee argued that the policy proceeds were property of the estate and should be

used to satisfy the claims of the creditor body as a whole, just as the Objectors do here. *See*

Objection, *In re SL Liquidation LLC*, Case No. 23-10207 (TMH) (D.I. 893) (February 21, 2025).

18.    Judge Horan rejected the liquidating trustee's arguments and ruled that the

proceeds were not property of the estate, but even if they were, the directors and officers were

entitled to relief from the automatic stay. Relying on *Downey*, Judge Horan explained:

> And the purpose of the policy is to address exactly this issue where
> the Ds and Os get sued and based upon the policy language, it's clear
> to me that the rights of the Movants here, as directors and officers,
> are primary when it comes to the right of payment.
>
> And, you know, were I to find that in any wasting policy that the Ds
> and Os would have no right to payment or that the policy, therefore,
> is property of the estate, it would undermine the bargain that the
> debtor and the directors and officers entered into in, first of all,
> agreeing for them to serve in those particular roles within the
> company, but also undermine the agreement that they made with the
> insurers as to what the insurers' obligations are under such policies.
>
> ***
>
> And then, even getting past that, I would find that there is ample
> cause from tort relief [sic] from the automatic stay. It is -- the policy
> is the bargain that the directors and officers struck. The prejudice to
> them would far outweigh any prejudice to the estate. They would be
> required to defend an action in which it hasn't been decided yet, but
> they may or may not be liable -- that's something for the Chancery

> Court to decide -- but they would be forced to incur the defense costs
> out-of-pocket.
>
> The prejudice to the estate, if stay relief were not granted, would
> simply be that they would have to live with the terms of the policy
> that binds the estate.

*In re SL Liquidation LLC*, Case No. 23-10207 (TMH) (March 7, 2025), Hr'g Tr. at 13:8-16:8.[5]

19.     Just as in *SL Liquidation*, the issues before the Court here are not a close call. The Court should reject the Objectors' request to rewrite the D&O Policies and overrule the Objections.

**B. The Movants are amenable to certain conditions regarding their access to the policy proceeds.**

20.     The Freedom Lenders rely heavily on the existence of the Side A Policies to argue that the Court should deny the Motion. Although those arguments are baseless, the Movants will agree to access the Side A Policies before accessing the other D&O Policies if the insurers will provide coverage, provided, however, that the Movants be permitted to access any of the D&O Policies in the event the Side A Policy insurers do not provide coverage or the Movants require coverage in excess of the $10 million policy limits.  The existence of the Side A Policies does not alter the Movants' unequivocal, superior interest in the proceeds of the D&O Policies as detailed herein and in the Motion. Further, the Movants understand from the Primary Insurer that it intends to provide coverage and the Movants filed the Motion at the Primary Insurer's request.

21.     The Movants will also agree to periodic reporting, provided that the Debtors and their estates be similarly required to provide such reporting if they seek to access the D&O Policies.  The Movants submit that quarterly reporting on the diminution of insurance proceeds

---

[5]     The transcript of Judge Horan's ruling is attached hereto as **Exhibit A**.

10

from all parties in these chapter 11 cases would benefit the estate and its constituents and promote

transparency for creditors.

22.      But the Freedom Lenders' request that the Movants be required to seek

approval from this Court regarding the use of policy proceeds to effect a settlement of claims

should be rejected.  First, it undermines the ability of the Movants to effectively litigate because

they will not know if they will ultimately have access to the insurance proceeds as the Freedom

Lenders (and other parties) will get another opportunity to object to the Movants' access to the

policy proceeds.  Second, the Freedom Lenders' proposal would impermissibly confer subject

matter jurisdiction on this Court to consider a settlement in a non-bankruptcy action over which

the Court would not otherwise have jurisdiction.

23.      Third and relatedly, the Court of Chancery of the State of Delaware—where

the Delaware Litigation is pending—already has a sufficient process in place for approving

settlements.  The Delaware Litigation is a class action under Rule 23 of the Rules of the Court of

Chancery of the State of Delaware (the "Chancery Court Rules").  Under that rule, a class action

may be settled only if the Court of Chancery approves the terms of the proposed settlement.  Del.

Ch. Ct. R. 23(f)(1).  Notice of the proposed settlement must be provided, and parties have an

opportunity to object to the proposed settlement.  *Id.* at 23(f)(3) & (4). Moreover, the Court of

Chancery in approving a settlement that would bind the class is bound by a standard substantially

similar to the standard undertaken by this Court in evaluating a proposed settlement under

Bankruptcy Rule 9019:

> The Court [of Chancery] may approve a proposed settlement only
> after a hearing and only on finding that it is reasonable after
> considering whether:
>
>     (A) the representative party and class counsel adequately
>         represented the class;

(B) adequate notice of the hearing was provided;

(C) the proposed settlement was negotiated at arms' length; and

(D) the relief provided for the class falls within the range of reasonable results, taking into account:

   (i)   the strength of the claims;

   (ii)  the costs, risks, and delay of trial and appeal;

   (iii) the scope of the release; and

   (iv)  any objections to the proposed [] settlement.

Del. Ch. Ct. R. 23(f)(5); *see also Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (instructing courts to "canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness").  Any settlement the Movants may seek to be paid from the Policies is subject to the foregoing standard. The Movants will agree to file a notice on this Court's docket of any proposed settlement of the Delaware Litigation.  To the extent a party in these chapter 11 cases has standing, they can appear and object to the proposed settlement in the Court of Chancery.  This should be more than sufficient to address the Freedom Lenders' concerns regarding settlement approval.

24.    The cases cited by the Freedom Lenders to support their request for court approval of any settlement are likewise inapposite.  First, the parties in *In re SVB Financial Group*, No. 23-10367, 2023 Bankr. LEXIS 1339 (Bankr. S.D.N.Y. May 22, 2023), agreed to the condition which the Court then effected through an order.  *In re SVB Fin. Grp.*, 2023 LEXIS 1339 at *797. Of course, parties can agree to most anything. And although the Court in *In re Celsius Network LLC*, 652 B.R. 34, 45–46 (Bankr. S.D.N.Y. 2023), did require this condition, the Court expressly acknowledged that it was not aware of any legal authority for imposing the condition. *In re Celsius Network LLC*, 652 B.R. at 47 ("[T]he Committee has not cited any authority [requiring] that a

director or officer must submit to the jurisdiction of a Bankruptcy Court [to] receive the reimbursement of defense costs under a D&O policy.  This is a fair point—neither [party] cite to any precedent where similar restrictions have been imposed.").  Therefore, there simply is no authority on which this Court can condition a settlement of the Delaware Litigation on Bankruptcy Court approval above and beyond the approval already required by Court of Chancery Rule 23, and it would prejudice the Movants if the Court were to do so.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Objections be overruled as set forth herein and grant the relief requested in the Motion and such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Sophie Rogers Churchill*
William M. Lafferty (No. 2755)
Thomas W. Briggs, Jr. (No. 4076)
Matthew O. Talmo (No. 6333)
Sophie Rogers Churchill (No. 6905)
Phillip Reytan (No. 7255)
1201 North Market Street
Wilmington, Delaware  19801
(302) 658-9200
wlafferty@morrisnichols.com
tbriggs@morrisnichols.com
mtalmo@morrisnichols.com
srchurchill@morrisnichols.com
preytan@morrisnichols.com

*Attorneys for Andrew M. Laurence
and Brian Kahn*

*- and -*

WACHTELL, LIPTON, ROSEN & KATZ

*/s/ Ryan A. McLeod*
Ryan A. McLeod (Bar No. 5038)
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RAMcleod@wlrk.com

*Attorneys for Matthew Avril, Cynthia Dubin and Thomas Herskovits*

*- and -*

ROSS ARONSTAM & MORITZ LLP

*/s/ Adam D. Gold*
Adam D. Gold (Bar No. 6412)
Holly E. Newell (Bar No. 6687)
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
agold@ramllp.com
hnewell@ramllp.com

*Attorneys for Matthew Avril*