<u>Exhibit A</u>

                                                                1

1                  UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2

3   IN RE:                        .  Chapter 11
                                   .  Case No. 23-10207 (TMH)
4   SL LIQUIDATION, LLC,           .
    *et al.*,                      .  (Jointly Administered)
5                                  .
                                   .  Courtroom No. 7
6                                  .  824 Market Street
               Debtors.            .  Wilmington, Delaware 19801
7                                  .
                                   .  Friday, March 7, 2025
8   . . . . . . . . . . . . . . .  10:58 a.m.

9
                          TRANSCRIPT OF HEARING
10              BEFORE THE HONORABLE THOMAS M. HORAN
                    UNITED STATES BANKRUPTCY JUDGE
11

12  APPEARANCES:

13  For John Pinson, Costas
    Loukellis, John Arney,
14  Anders Pettersson, Robert
    Remenar, Joseph Ponteri,
15  and Julian Ameler:       Howard A. Cohen, Esquire
                             FOX ROTHSCHILD, LLP
16                           919 North Market Street
                             Suite 300
17                           Wilmington, Delaware 19899

18

19  (APPEARANCES CONTINUED)

20  Audio Operator:          Ian Willoughby, ECRO

21  Transcription Company:   Reliable
                             The Nemours Building
22                           1007 N. Orange Street, Suite 110
                             Wilmington, Delaware 19801
23                           Telephone: (302)654-8080
                             Email: gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording,
25  transcript produced by transcription service.

```
 1  APPEARANCES (CONTINUED):

 2  For the Liquidating
    Trust:                       Jared S. Roach, Esquire
 3                               REED SMITH, LLP
                                 Reed Smith Centre
 4                               225 Fifth Avenue
                                 Pittsburgh, Pennsylvania 15222
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

INDEX

| | | |
|---|---|---|
| MOTIONS: | | PAGE |
| Agenda Item 1: | Motion of John Pinson, Costas Loukellis, John Arney, Anders Pettersson, Robert Remenar, Joseph Ponteri, and Julian Ameler for Relief from the Automatic Stay and Plan Injunction to Pursue Insurance Policy Proceeds [Filed February 7, 2025; Docket No. 890]. | 4 |
| | Court's Ruling: | 13 |

EXHIBITS

| | |
|---|---|
| MOVANTS' EXHIBITS: | PAGE |
| 1 - D&O Insurance policy | 7 |
| Transcriptionist's Certificate | 18 |

1          (Proceedings commenced at 10:58 a.m.)
2                THE CLERK:  All rise.
3                THE COURT:  Good morning, please be seated.
4                MR. COHEN:  Good morning, Your Honor.
5                THE COURT:  Mr. Cohen?
6                MR. COHEN:  Good morning.
7          Howard Cohen, Fox Rothschild; I'm counsel to the
8  movants, who are former directors and officers of Stanadyne,
9  Your Honor.
10         We are here this morning in connection with my
11 clients' motion for relief from the automatic stay or a plan
12 injunction.  The motion, if granted, would allow the carrier,
13 the D&O carrier here, Chubb, to advance defense costs to my
14 clients in connection with the lawsuit brought by them,
15 against them by the liquidating trustee in the Delaware Court
16 of Chancery.
17         Your Honor, I'm going to be brief in my
18 presentation for two reasons:  one, I think my reply brief
19 succinctly sets forth our position, but, two, because I just
20 think the objection fundamentally lacks merit.
21         Your Honor, I don't believe any facts are in
22 dispute here this morning.  Stanadyne purchased the directors
23 and officers policy, insurance policy from Chubb.  The post-
24 confirmation trust has brought suit against my clients in the
25 Court of Chancery seeking to recover on account of this

1 policy.

2 The D&O insurer Chubb, again, has agreed to
3 advance defense costs.  There's no disputes as to coverage
4 here, but Chubb simply asked that my clients simply obtain
5 what it characterized as a "routine comfort order" from this
6 Court.  So, again, that's why we're here today.

7 But, Your Honor, to cut right to the chase, I do
8 believe that the "priority of payments" provision that's set
9 forth in the D&O policy is dispositive here.  Your Honor, I'm
10 not an insurance expert; you probably have more familiarity
11 with insurance issues than I do, but again, standard policy,
12 Side A coverage for the benefit of directors and officers.
13 We have Side B, indemnification for the entity, and Side C,
14 typically securities, but this wasn't a public entity.  But
15 again, we have a "priority of payments" provision that
16 subordinates Sides B and C to those of the directors and
17 officers under Side A here.

18 There's not going to be any -- Side B is not going
19 to be implicated in this case.  And, again, I'm not aware of
20 any issues with Side C, as well, right.  I mean, those, I
21 don't believe there are any claims that could be covered by
22 Side C at this point.

23 So I do believe, you know, and we cite to the
24 <u>Downey</u>, Judge Sontchi's decision in <u>Downey</u>.  We cite to Judge
25 Gross' decision in, I think that was <u>World Health</u> and we have

1 the Allied Digital.  All the precedent in this district comes
2 to the same conclusion when dealing with a "priority of
3 payments" issue.
4     So, why are we here?  We're here because the trust
5 believes that this policy was purchased for its benefit; for
6 the benefit of general unsecured creditors.  That's simply
7 not right.  This policy was purchased for the benefit of the
8 directors and officers.
9     The trustee is no different than any other
10 claimant dealing with a wasting policy here.  To the extent
11 they are a successor to the debtors here, Your Honor, the
12 debtors weren't permitted to object to relief from the stay.
13 I'm not sure the trust is either, but, in any event, they
14 have objected.
15     And the irony here is we're wasting more in
16 defense costs under this policy arguing this than we should
17 be; again, this is a routine motion that is, I don't think,
18 litigated all that often and the courts here in Delaware
19 routinely grant the relief sought here.  So with that, I'm
20 going to yield the podium and reserve any rights for
21 rebuttal.  Thank you.
22     THE COURT: Okay.  Are we introducing any evidence
23 in connection with today's hearing?  Are the policies coming
24 into evidence, is the policy coming in?
25     MR. COHEN: I would -- I have no problem seeking

1  the admission of the D&O policy.  I don't know if -- I don't
2  think there's any dispute that the policy we've attached to
3  our reply is the D&O policy, but I'll refer to Mr. Roach to
4  see if he has any issues.
5             THE COURT:  Okay.
6             Good morning, Mr. Roach, and welcome.  I had the
7  pleasure of admitting to practice *pro hac vice* this morning.
8  It's good to see you.
9             MR. ROACH:  It's nice to see you, Your Honor.
10            For the record, Jared Roach with Reed Smith on
11 behalf of the liquidating trustee who's representing the
12 liquidating trust.  And I appreciate, one, quick entry of my
13 *pro hac* order and, also, the accommodation at the last minute
14 to allow me to appear via Zoom at today's hearing.
15            As to the last question that's pending, there is
16 no objection by the liquidating trustee to the trust --
17 excuse me -- to the policy that is attached as Exhibit A to
18 the reply brief.
19            THE COURT:  Okay.  So the policy is admitted.
20       (Movants' Exhibit 1 received into evidence)
21            MR. ROACH:  Thank you, Your Honor.
22            Again, Jared Roach on behalf of the liquidating
23 trustee.
24            Your Honor, this is not some frivolous objection
25 or something to be taken lightly here.  There are courts that

1  hold that the policy proceeds of this type of policy, a D&O
2  policy, can be property of the estate.  We believe that that
3  should be the case here.  This is a wasting policy, as these
4  types of policies are and every dollar that is spent
5  potentially reduces any recovery that the trust may have, if
6  it's successful, or if there's some other sort of resolution
7  in Chancery Court.
8           We're not saying that we need to be elevated above
9  anyone.  We don't get anything unless there is some sort of
10 outcome that would favor the trust or be agreeable to the
11 trust.
12          There's not -- this also isn't a "zero to sum"
13 game, as counsel suggests, but it's a winner and a loser.
14 Courts do fashion, the burden is fashioned that there can be
15 use of the proceeds both, by in this case -- in the Chancery
16 Court action by the Defendants and the Movants, here in the
17 Bankruptcy Court action, and my client, as well, which, as a
18 backdrop, we think would be the proper outcome here.
19          Counsel spends time in the reply brief arguing
20 that the trust talks about all the harm that it will suffer
21 by not having access to the policy or proceeds thereof,
22 specifically, but also, that the Movants will suffer
23 prejudice.  Well, that's an easy way to solve that.  The
24 Movants can have access to some of the funds now.  It's a
25 (indiscernible) policy, (indiscernible) should have been

1 covered later on, and so --

2     (Recess taken at 11:04 a.m.)

3     (Proceedings resumed at 11:11 a.m.)

4     THE COURT:  Okay.  We're back on the record.

5     Mr. Roach, can you hear me?

6     MR. ROACH:  I can hear you.

7     Can you hear me, Your Honor?

8     THE COURT:  Yes, I can.

9     That may have been a Zoom problem.  One of the

10 many risks of attempting oral argument by Zoom, but we're

11 glad to have you back.

12     Restart wherever you'd like to.  I'm interested in

13 your entire presentation, so...

14     MR. ROACH:  Your Honor, again, Jared Roach with

15 Reed Smith; here, for the trust.

16     Did Your Honor hear the -- well, I would start by

17 saying it's not a "zero to sum" game, that is, where either

18 my client is successful and there is no access to the policy

19 or the Movants are successful and they have complete access

20 to the policy, due to potential detriment of the trust here.

21 There is -- the Court can fashion a remedy and the Court in

22 Minnesota has done so in a case where it gave some access to

23 the Movants to allow them to cover defense costs, as the

24 Movants here request, while also preserving part of the

25 policy that should be, in this case, the trust, be successful

1   in the Chancery Court action, that there's a known recovery,
2   which again, benefits unsecured creditors, here, the trust,
3   who brings this action on behalf of the unsecured creditors
4   or for the distribution of unsecured creditors.  Any money
5   that comes into the estate certainly is paid out, pursuant to
6   the trust agreement, which predominantly is for the unsecured
7   creditors here.
8                So, yes, I would agree with counsel, Mr. Cohen,
9   that there are -- the facts are not in dispute here, you
10  know, and the comfort order is necessary.  We think that to
11  the extent that this is property of the estate and they are
12  seeking relief from stay, they need to meet their burden here
13  and that the trust should be protected from preservation of
14  at least part of the policy.
15               This is a unique case.  These are not necessarily
16  run-of-the-mill because the very parties that are bringing
17  the litigation here also stand to benefit from the policy and
18  need to be protected.
19               So, with that, Your Honor, I would yield the
20  podium, unless Your Honor has any questions.
21               THE COURT:  Well, okay, I mean, there are two
22  issues here.  The first issue is whether the policy are --
23  the proceeds of the policy are property of the estate.  You
24  have a little bit of argument on that in your objection and
25  refer to a batch of cases from other districts, but it

1  strikes me that we have cases that are fairly squarely on
2  point in this district and how would you distinguish this
3  from, for instance, Downey, which I think is really just
4  about as on all fours with this policy and these facts as you
5  could possibly be.  How would you distinguish that?
6              MR. ROACH:  Your Honor, I rely, candidly, on the
7  fact that there needs to be some preservation and, you know,
8  I don't dispute what Judge Sontchi said in the opinion, but,
9  certainly, we can look to fashion a remedy here that would
10 protect the trust and beneficiaries of the trust.
11             THE COURT:  Okay.  And the second issue is, even
12 if I were to find that the proceeds of the policy are not
13 property of the estate, under the policy, the debtor would
14 have been, agreed not to oppose, precisely, this sort of
15 relief that the Movants are seeking today, doesn't the
16 debtors' agreement bind the liquidating trust?
17             MR. ROACH:  Your Honor, it did pass to the trust;
18 that's a correct statement.  We think there's still an
19 overarching benefit and obligation and equity to protect in
20 the trust here, in the interest that the trust has in it.
21             THE COURT:  But the issue here is really about
22 contracts.  I'm not sure that equitable principles can be
23 invoked to -- well, I guess, to undermine the contract and,
24 you know, I think I just have to read the contract, in other
25 words.

```
 1                MR. ROACH:  Understood, Your Honor.
 2                THE COURT:  Okay.  Mr. Cohen, any response?
 3                MR. COHEN:  I will be very brief, Your Honor.
 4                This case is not unique; it's routine, it's
 5   common, it's no different than the other case, cases such as
 6   Downey, that have been brought here in this district.  I just
 7   think there's a fundamental misunderstanding about whose
 8   benefit this D&O policy was purchased for.  It was purchased
 9   for my clients' benefits, not for the trust's benefit.
10                And, yes, the trust has stepped into the shoes of
11   the debtor.  It has no greater rights under the contract than
12   the debtor possessed.  So I think it's crystal clear; relief
13   should be granted.  And I don't believe that it's appropriate
14   to fashion some sort of remedy.  I'm not sure what remedy
15   Mr. Roach is looking for, but I don't think it's appropriate
16   to fashion a remedy that limits my clients' access to the
17   proceeds.  Thank you.
18                THE COURT:  Okay.  All right.
19                I am ready to rule on this.  Well, no.
20                Mr. Cohen, I have a question for you.
21                MR. COHEN:  Yes?
22                THE COURT:  The relief that you're requesting in
23   the motion differs, I think, meaningfully from the proposed
24   relief that I would grant under the proposed order.  In the
25   motion, the Movants seem to be asking that I find that the
```

1  policy, the proceeds of the policy are not property of the
2  estate.  The proposed order doesn't address that issue.
3              What are we asking for?
4              MR. COHEN:  We are asking for the same order
5  that's routinely entered in this district that allows Chubb
6  to advance to my clients', its defense cost under the D&O
7  policy.
8              THE COURT:  Okay.  Here's my ruling.
9              The proceeds of the policy are not property of the
10 debtors' estate and I do find this case to be very similar to
11 Downey and, really, pretty much identical in all the
12 meaningful respects.  The, what we'll call, it's not called
13 it in the policy, but the Side A coverage issue and the
14 "priority of payment" provisions make clear that the insurer
15 has an obligation under that policy to pay the non-
16 indemnified fees of the Movants in connection with responding
17 to the complaint.
18             And that's exactly the situation that they're in
19 and that's precisely what they're asking for.  There's no
20 question they're not being indemnified.
21             And the purpose of the policy is to address
22 exactly this issue where the Ds and Os get sued and based
23 upon the policy language, it's clear to me that the rights of
24 the Movants here, as directors and officers, are primary when
25 it comes to the right of payment.

1   And, you know, were I to find that in any wasting
2 policy that the Ds and Os would have no right to payment or
3 that the policy, therefore, is property of the estate, it
4 would undermine the bargain that the debtor and the directors
5 and officers entered into in, first of all, agreeing for them
6 to serve in those particular roles within the company, but
7 also undermine the agreement that they made with the insurers
8 as to what the insurers' obligations are under such policies.
9   So, I do find that the policy or the proceeds of
10 the policy, rather, are not property of the estate and the
11 Movants can proceed to obtain the coverage that's bargained
12 for under the policy; however, even if I were incorrect about
13 that and found that the proceeds of the policy were property
14 of the estate, the liquidating trustee does not have the
15 contractual right to contest the relief that we're seeking.
16   And there's an endorsement to the policy -- I'm
17 just checking, but I believe it's endorsement 6 -- that
18 provides that the insured or, rather, the organization is the
19 defined term under the policy.  In that case, it's the
20 debtor.  The debtor is agreeing not to oppose or object to
21 any efforts by the company, meaning the insurer; the
22 organization, meaning the debtor or any insured person, in
23 this case, Movants, to obtain relief from any stay or
24 injunction.
25   And the liquidating trustee, as I understand it,

1   has received an assignment of the debtors' rights and
2   obligations under the policy and, therefore, they are bound
3   by endorsement 6 to the policy, which precludes them from
4   objecting to this relief.  So, on that basis, I would also
5   find that the Movants would be entitled to relief from the
6   automatic stay.
7           And then, even getting past that, I would find
8   that there is ample cause from tort relief from the automatic
9   stay.  It is -- the policy is the bargain that the directors
10  and officers struck.  The prejudice to them would far
11  outweigh any prejudice to the estate.  They would be required
12  to defend an action in which it hasn't been decided yet, but
13  they may or may not be liable -- that's something for the
14  Chancery Court to decide -- but they would be forced to incur
15  the defense costs out-of-pocket.
16          The prejudice to the estate, if stay relief were
17  not granted, would simply be that they would have to live
18  with the terms of the policy that binds the estate.
19          And were I to consider the third factor, which is
20  likelihood of success on the merits, I do find that would be
21  neutral here.  I really don't have any basis upon which to
22  understand the merits of the underlying proceeding in
23  Chancery Court.  I know that there's been a complaint.
24  There's been a motion to dismiss.  But to my knowledge,
25  there's been nothing else.  So, for all of those reasons, I

1  would grant relief from the automatic stay if I did find that
2  the proceeds of the policy were not estate property, but to
3  be clear, I do find that they are not.
4              To properly record the ruling of this Court and to
5  make sure that the record is clear, I would ask that the
6  parties agree upon a revised form of order and to submit that
7  under certification of counsel and I will enter that
8  promptly.
9              MR. COHEN:  Thank you, Your Honor.
10             THE COURT:  Okay.
11             MR. ROACH:  Thank you, Your Honor.
12             THE COURT:  Okay.  You're welcome, sir.
13             Anything else for today?
14             MR. COHEN:  Nothing, Your Honor.
15             THE COURT:  Okay, thank you.
16             Well, and thank you all for your appearance.  And
17 it sounds like it was a last-minute thing for you, Mr. Roach,
18 to have to do this argument this morning, so I appreciate you
19 doing so.
20             MR. ROACH:  Thank you, again, for the
21 accommodations, Your Honor; it's greatly appreciated.
22             THE COURT:  Okay.  Well, I was very happy to have
23 you here and I hope to see you again here.
24             MR. ROACH:  Thank you.
25             THE COURT:  Okay.  Thank you, Mr. Roach.

1          Okay.  Thank you, gentlemen.
2          We're adjourned.
3      (Proceedings concluded at 11:24 a.m.)

```
 1                        CERTIFICATION
 2         I certify that the foregoing is a correct
 3  transcript from the electronic sound recording of the
 4  proceedings in the above-entitled matter to the best of my
 5  knowledge and ability.
 6
 7  /s/ William J. Garling                    March 11, 2025
 8  William J. Garling, CET-543
 9  Certified Court Transcriptionist
10  For Reliable
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```