**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 1044, 1099 & 1206** |

**STATEMENT OF THE AD HOC GROUP OF FIRST LIEN LENDERS
WITH RESPECT TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11
PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121
OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The Ad Hoc Group of First Lien Lenders (the "First Lien Group"), by and through its undersigned counsel, hereby submits this statement (this "Statement") with respect to the *Motion of Debtors for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

*(II) Granting Related Relief* [Docket No. 1044] (the "Motion") and response to the *Objection of the Ad Hoc Group of Freedom Lenders to the Debtors' Exclusivity Extension Motion* [Docket No. 1099] (the "Objection") and respectfully states as follows:

**STATEMENT[2]**

1. Given the existence of the Restructuring Support Agreement, the First Lien Group was both surprised and disappointed to learn about the unilateral path forward previewed by Debtors' counsel at the March 17, 2025 status conference. The First Lien Group nevertheless continues to understand (1) the challenging task that the Debtors face in attempting to consensually bridge the still-material divide between the First Lien Group and the Freedom Lender Group, and (2) the Debtors' desire to reduce the aggregate professional expenditure in these Chapter 11 Cases and the related appeals.

2. The First Lien Group is steadfast in its view that the Sixth Amended Plan that has been on file with this Court is confirmable, and it is prepared to demonstrate that the various litigation paths being vigorously pursued by the Freedom Lender Group are without merit. However, the First Lien Group shares the Debtors' concern regarding the high administrative expenses of these Chapter 11 Cases and respects the commentary of each of the judges who have presided over the bankruptcy to date. Accordingly, while a commercial outcome to the various disputes still seems unlikely to materialize, the First Lien Group has elected to once again put its best foot forward to achieve "peace" and has worked collaboratively with the Debtors' management and boards to incorporate a comprehensive settlement proposal into an amended plan of reorganization that will be filed prior to the hearing on the Motion (the "Proposed Settlement").

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Reply or the Objection, as applicable.

3.     The Proposed Settlement, if accepted by the Freedom Lender Group, would short circuit a great deal of the professional fees being spent in these cases and reallocate a meaningful portion of those savings to the Freedom Lender Group. Specifically, the Proposed Settlement provides that holders of Second Lien Loans and HoldCo Loans will receive the following consideration if they vote in favor of the plan (and subject to the specific terms in the amended plan):

- $40 million of value in a mix of cash, equity and warrants;

- a comprehensive intercompany settlement which would, if approved by the boards of the relevant Debtors, result in allocation of additional value for holders of claims against the Freedom HoldCo Debtors; and

- full releases for any prepetition misconduct by the members of the Freedom Lender Group, including, without limitation, for any liability resulting from orchestrating the take private transaction, breaching the Restructuring Support Agreement, and receiving fraudulently transferred dividend payments.

Indeed, pursuant to the Proposed Settlement, holders of Second Lien Loans may receive a recovery with a value of up to ~25% of their claims (notwithstanding the fact that, at current valuations, the First Lien Loans are materially undersecured and undeniably the fulcrum credit).

4.     The First Lien Group is hopeful that by the time of the hearing on the Motion, counsel for the Freedom Lender Group will already have confirmed to Debtors' counsel that their clients will support confirmation of (and vote in favor of) the Plan, thereby mooting the arguments raised in the Objection. However, should the Objection go forward, the First Lien Group respectfully supports and joins in the *Debtors' Reply in Support of the Motion of Debtors for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1206] (the "Reply") and for the following reasons, believes the Motion should be granted.

3

5. The Objection reiterates the arguments that the Freedom Lender Group raised in its request to terminate exclusivity, which were previously denied by this Court. Central to the Objection is the Freedom Lender Group's continued insistence that its members will not vote in favor of the Plan at the Freedom HoldCo Debtors because, among other things, the Plan cancels the prepetition equity interests in FRG for "no consideration," and releases or assigns the Freedom HoldCo Debtors' claims and causes of action that constitute the Freedom Lender Group's "sole source of recovery." (Objection at ¶¶ 3, 13, 19.) Putting aside whether the Freedom Lender Group's arguments are premature confirmation objections, both points are without merit.

6. *First*, cancellation of the existing FRG equity is not governed by the Freedom HoldCo Debtors' plan and is not something on which the HoldCo Lenders would vote to accept or reject. The FRG equity will be cancelled under the OpCo Debtors' plan – and, while the Freedom Lender Group may hold Second Lien Loan claims at the OpCo Debtors, they are not objecting to an extension of exclusivity for the OpCo Debtors (nor, would any such objection be successful).

7. Moreover, as the Debtors' sale process has demonstrated, and as the aggregate evidence at the confirmation hearing will prove, FRG's equity interests have no value, and holders of FRG equity interests are incapable of receiving a recovery under *any* plan of reorganization for FRG. If there appears to be any positive value for the FRG equity interests, the Freedom Lender Group can lodge an objection to the OpCo Debtors' Plan. This is not a proper basis, however, for this Court to terminate exclusivity at the Freedom HoldCo Debtors.

8. It is also unclear why the Freedom Lender Group believes it is appropriate to vote against the Freedom HoldCo Debtors' Plan based on FRG equity treatment in the OpCo Debtors' Plan. Indeed, the First Lien Group is still unsure what the Freedom Lender Group believes should

occur with the presumed worthless equity in any of the OpCo Debtors should the Freedom HoldCo Debtors' exclusivity be terminated, regardless of whether the Freedom HoldCo Debtors maintain exclusivity. The only logical conclusion remains that the Freedom Lender Group hopes to use the threat of utilizing the Freedom HoldCo Debtors' worthless equity as a means of establishing board or restructuring process "control" in order to leverage a recovery for their Second Lien Loans in the OpCo Debtors' plan. However, such an act would be a clear violation of the OpCo Debtors' automatic stay and should not be countenanced by this Court. *See In re Bicoastal Corp.*, 1989 WL 607352, at*5 (Bankr. M.D. Fla. Nov. 21, 1989) (declining to lift the automatic stay where, as here, the creditor seeking such relief "is not a stockholder who desires to obtain control of the management of [the debtor] for the reason stockholders undertake such actions at all, but only to obtain control of the management in order to assure that this promissory note is repaid," and finding therefore that "cause" did not exist to modify the automatic stay); *In re GenCanna Glob. USA, Inc.*, 619 B.R. 364, 369 (Bankr. E.D. Ky. 2020) (finding "a party that abuses its equity voting rights merely to enhance its position as a creditor violates the automatic stay"); *In re Country Estates Nursing Home, Inc.*, 268 B.R. 316, 320-21 (Bankr. D. Mass. 2001) (finding an exercise of voting rights to enforce a lien to collect a debt violates §§ 362(a)(3) and (4)); *cf. In re MTE Holdings LLC,* No. 19-12269 (KBO), Dec. 13, 2019 Tr. at 64:8-14 (Bankr. D. Del. Dec. 19, 2019) (recognizing that, "consistent with applicable case law addressing this issue, including the *Marvel*, *Texas Rangers*, and *Bicoastal*, and *Hutchison* cases, any post-petition attempt of Riverstone to exercise its contractual right to exercise [the debtor's] voting rights is stayed under Section 362(a)(3) of the Bankruptcy Code, as it would be an act to exercise control over property of these estates").[3]

---

[3] A copy of the transcript is annexed hereto as **Exhibit A**.

9. *Second*, the Freedom Lender Group incorrectly complains again that the claims and causes of action belonging to the Freedom HoldCo Debtors are being released or extinguished without the ability for the Freedom Lenders to realize any recoveries. (Objection at ¶ 13.) To the contrary, virtually all of the claims and causes of action belonging to the Freedom HoldCo Debtors will be transferred to and vest in the Freedom HoldCo Debtor Litigation Trust pursuant to the Plan. The narrow set of claims that the Debtors are seeking releases for are those that may exist against a limited number of individuals, namely the current employees of the Debtors who (i) were not directors or officers of the Debtors at the time of the take private transaction, and (ii) after an exhaustive independent investigation were determined to be released and/or settled for consideration.[4]

10. Similarly, the Freedom Lender Group bemoans the fact that the Sixth Amended Plan does not provide a mechanism for funding the Freedom HoldCo Debtor Litigation Trust. (Objection at ¶ 21.) Members of the Freedom Lender Group are always able to offer the Debtors funding for the Freedom HoldCo Debtor Litigation Trust from which they stand to benefit and recover. To date, the First Lien Group is unaware of any such proposal.

11. Finally, in a desperate attempt to relitigate issues already decided by this Court, the Freedom Lender Group again challenges the terms of the DIP Facility that has been approved pursuant to a Final Order, and the Court-approved mechanism to allocate DIP Claims to the

---

[4] The Freedom Lender Group also takes issue with the independence of the director at the Freedom HoldCo Debtors, claiming that Mr. Wartell does not have authority over any conflict matters, and thus any release recommended by Mr. Wartell is tainted. (Objection at ¶¶ 1, 10, 44.) As the Debtors announced on the record at the Disclosure Statement approval hearing, Mr. Wartell's scope has been expanded to cover conflicts related to the Freedom HoldCo Debtors. (*See* Feb. 19, 2025 Hr'g Tr. at 47:13-18, attached hereto as **Exhibit B** (counsel to the Debtors noting that the resolutions and delegation of authority to Mr. Wartell were amended to provide Mr. Wartell with "full delegation" of inter-debtor conflicts).) The Freedom Lender Group, whose counsel was in attendance at the hearing, therefore certainly knows that its concerns over the scope of Mr. Wartell's authority are unfounded.

6

Freedom HoldCo Debtors for actual costs incurred by those Estates.[5] (Objection at ¶¶ 14, 15.) That issue has absolutely no bearing on the Motion and an exclusivity hearing is not the proper forum to relitigate DIP issues that have already been decided.

12. For these reasons, and for the reasons further set forth in the Motion and Reply, the Objection should be overruled and the Motion should be granted.

13. Nothing contained herein shall constitute a waiver of any rights or remedies of the First Lien Group, including, without limitation, the right to: (i) amend, modify, or supplement this Statement; or (ii) raise any other additional arguments at a later date, including at the hearing on the Motion.

[*Remainder of Page Intentionally Left Blank*]

---

[5] The Freedom Lender Group could have, but did not, provide financing on favorable terms to the Freedom HoldCo Debtors. Instead, the Freedom Lender Group proposed that the Freedom HoldCo Debtors incur $7.5 million in obligations, of which $6 million would be used to pay the fees of the Freedom Lender Group's advisors, leaving only $1.5 million to fund the Freedom HoldCo Debtors' bankruptcy cases. Such a proposal was recognized by Judge Dorsey to be untenable and self-serving (and as a result given no credence by the Court), and it was similarly rightfully rejected by the Debtors.

| | |
|---|---|
| Dated: March 31, 2025<br>Wilmington, Delaware | Respectfully submitted,<br><br>**LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Elizabeth A. Rogers (No. 7335)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>Email: landis@lrclaw.com<br>      mcguire@lrclaw.com<br>      erogers@lrclaw.com<br><br>-and-<br><br>**PAUL HASTINGS LLP**<br><br>Jayme T. Goldstein (admitted *pro hac vice*)<br>Daniel A. Fliman (admitted *pro hac vice*)<br>Jeremy D. Evans (admitted *pro hac vice*)<br>Isaac S. Sasson (admitted *pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 318-6000<br>Facsimile: (212) 319-4090<br>Email: jaymegoldstein@paulhastings.com<br>      danfliman@paulhastings.com<br>      jeremyevans@paulhastings.com<br>      isaacsasson@paulhastings.com<br><br>Nicholas A. Bassett (admitted *pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Telephone: (202) 551-1700<br>Facsimile: (202) 551-1705<br>Email: nicholasbassett@paulhastings.com<br><br>*Counsel to the Ad Hoc Group of First Lien Lenders* |