# EXHIBIT A

## Proposed Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.,*[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. __ |

## ORDER APPROVING JOINT STIPULATION
## REGARDING TREATMENT OF ALLOWED PREPETITION
## ABL LOAN CLAIMS AND CONSENSUAL EXIT ABL FACILITY

Upon consideration of the *Joint Stipulation Regarding Treatment of Allowed Prepetition ABL Loan Claims and Consensual Exit ABL Facility* (the "Stipulation"),[2] attached hereto as Exhibit 1, and after due deliberation and sufficient cause for appearing therefor,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Stipulation.

**IT IS HEREBY ORDERED THAT:**

1.      The Stipulation is hereby approved.

2.      The Stipulation shall become effective immediately upon entry of this Order.

3.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Exhibit 1**

**Stipulation**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRANCHISE GROUP, INC., *et al.,*[1] | ) | Case No. 24-12480 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

## JOINT STIPULATION REGARDING TREATMENT OF ALLOWED PREPETITION ABL LOAN CLAIMS AND CONSENSUAL EXIT ABL FACILITY

This stipulation (this "Stipulation") is entered into by and among: (a) the above-captioned debtors and debtors in possession (collectively, the "Debtors"); (b) the Required Consenting First Lien Lenders (as defined in the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No. 1015] (the "Sixth Amended Plan," and as amended, supplemented, or otherwise modified from time to time, the "Plan");[2] (c) JPMorgan Chase

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed in the Sixth Amended Plan or the Disclosure Statement Order, as applicable.

Bank, N.A., as agent (in such capacity, the "Prepetition ABL Agent") pursuant to that certain *Third Amended and Restated Loan and Security Agreement*, dated as of March 10, 2021 (as amended, supplemented, or otherwise modified from time to time), by and among Debtors Franchise Group, Inc., Franchise Group Newco PSP, LLC, Valor Acquisition, LLC, and Franchise Group Newco Intermediate AF, LLC, as borrowers, certain subsidiaries of the Prepetition ABL Borrowers, as guarantors, and together with the Prepetition ABL Borrowers, the Prepetition ABL Agent, and the lenders party thereto from time to time (collectively, the "Prepetition ABL Lenders"); and (d) the Prepetition ABL Lenders.  The Debtors, the Required Consenting First Lien Lenders, the Prepetition ABL Agent, and the Prepetition ABL Lenders are referred to herein, collectively, as the "Parties."

WHEREAS, on November 3, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code before this Court.

WHEREAS, on February 20, 2025, the Debtors filed the Sixth Amended Plan.

WHEREAS, paragraph 5.3(a) of the Sixth Amended Plan provides that Holders of Allowed Prepetition ABL Loan Claims in Class 3 shall receive, in addition to certain proceeds of ABL Priority Collateral, their pro rata share of (a) proceeds of the Exit ABL Facility or (b) loans under the Take-Back ABL Term Loan Facility (the "ABL Plan Treatment").

WHEREAS, on February 21, 2025, the Court entered the *Order (I) Approving the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures, including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving the Procedures for Vote Tabulation, (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures, and (IV) Granting Related Relief* [Docket No. 1019] (the "Disclosure Statement Order").

WHEREAS, paragraph 40 of the Disclosure Statement Order provides, among other things, that the Debtors shall not commence the Confirmation Hearing until a date no earlier than forty-five (45) days after the date on which the Debtors (in consultation with the Required Consenting First Lien Lenders) or the Required Consenting First Lien Lenders (in consultation with the Debtors) provide written notice to the Prepetition ABL Lenders of (a) the Debtors' election to pursue the Take-Back ABL Term Loan Facility and (b) either (x) the proposed terms of the Take-Back ABL Term Loan Facility or (y) all material proposed terms of a new credit agreement for the Take-Back ABL Term Loan Facility. In accordance with the foregoing, the Debtors (in consultation with the Required Consenting First Lien Lenders) delivered a notice of the election to pursue the Take-Back ABL Term Loan Facility (along with an accompanying term sheet with all of the proposed terms thereof) in accordance with paragraph 40 of the Disclosure Statement Order (the "Original Cram-Down Term Sheet") to the Prepetition ABL Agent on January 31, 2025.

WHEREAS, subject to the negotiation and execution of definitive documentation, the Parties have agreed to pursue an Exit ABL Facility to be provided by the existing Holders of Prepetition ABL Claims on the terms set forth in the term sheet attached hereto as **Exhibit A** (the "Consensual Exit ABL Facility").

NOW, THEREFORE, the Parties, by and through their respective undersigned counsel, hereby stipulate and agree as follows:

1.      The Parties agree that they shall negotiate in good faith definitive documentation for the Consensual Exit ABL Facility, which definitive documentation shall be consistent with the term sheet attached hereto as **Exhibit A** and otherwise acceptable to the Parties (the "Definitive Documentation"). Consistent with the foregoing, the Prepetition ABL Lenders confirm that they are supportive of providing exit ABL financing on the terms set forth in **Exhibit A,** subject to

completion of acceptable Definitive Documentation.  The Debtors (with the consent of the Required Consenting First Lien Lenders) hereby elect to pursue the treatment of Prepetition ABL Loan Claims set forth in Section 5.3(a)(ii)(A) of the Sixth Amended Plan, and not Section 5.3(a)(ii)(B); *provided*, that in the event the Prepetition ABL Lenders fail to negotiate in good faith the Definitive Documentation, the Debtors (with the consent of the Required Consenting First Lien Lenders) and the Required Consenting First Lien Lenders (with the consent of the Debtors) each reserve the right to elect to pursue the treatment in Section 5.3(a)(ii)(B) (such election, the "Cram-Down Election") subject to the terms and conditions set forth in this Stipulation; *provided, further*, that any Cram-Down Election shall only be effective upon delivery of written notice to counsel to the Prepetition ABL Agent of such election from the Debtors and/or the Required Consenting First Lien Lenders (with email from counsel to the Debtors and/or Required Consenting First Lien Lenders being sufficient for such purpose).

2.    So long as no Cram-Down Election has been made, and the Plan is otherwise in form and substance acceptable to the Prepetition ABL Agent and the Holders of the Prepetition ABL Claims, the Holders of Prepetition ABL Claims shall vote to accept the Plan and opt in to the Third-Party Release contained therein on or before the Voting Deadline; *provided*, *however*, that, in the event that a Cram-Down Election is made (or the Sixth Amended Plan is otherwise amended in a manner materially adverse to the treatment of the Holders of Prepetition ABL Claims, as determined by the Prepetition ABL Agent, acting reasonably), the Holders of Prepetition ABL Claims:  (a) may object to the Plan prior to an objection deadline to be agreed by the Parties pursuant to a discovery and briefing schedule to be negotiated by the Parties in good faith; (b) change or withdraw their acceptances of the Plan pursuant to Bankruptcy Rule 3018(a); and/or (c) elect not to opt in to the Third-Party Release, in each case subsequent to such votes being cast, and in each case irrespective of any generally applicable deadlines set forth in the Disclosure

Statement Order or otherwise.  In such event, the Parties hereto agree (i) not to raise, directly or indirectly (including through a non-Party), any objection to a request by any Holder of Prepetition ABL Claims to change its vote following a Cram-Down Election and (ii) that "cause" would exist for the requested change or withdrawal within the meaning of Bankruptcy Rule 3018(a).

3.      If the Debtors or the Required Consenting First Lien Lenders make a Cram-Down Election in accordance with paragraph 1 hereof, the Debtors shall adjourn or not commence the portion of the Confirmation Hearing dealing with (i) the ABL Plan Treatment issue(s) and (ii) plan feasibility solely on account of the ABL Treatment Issue(s), until a date no earlier than forty-five (45) days after the date on which the Debtors or the Required Consenting First Lien Lenders provide written notice of (a) the Cram-Down Election in accordance with paragraph 1 hereof and (b) either (i) the proposed terms of the Take-Back ABL Term Loan Facility (which notice shall disclose, at a minimum, all material proposed substantive/non-technical deviations from the terms of the ABL Loan Documents contained in the Take-Back ABL Term Loan Facility, including, without limitation, any proposed substantive/non-technical deviations relating to pricing, maturity, covenants, events of default, and/or security/collateral matters (including, without limitation intercreditor/subordination arrangements)) or (ii) all material proposed terms of a new credit agreement for the Take-Back ABL Term Loan Facility, which material proposed terms shall be in the form of a long form term sheet and covenant grid, identify the operative precedent document, and include, without limitation, all terms related to pricing, maturity, covenants, events of default, and security/collateral matters (including, without limitation intercreditor/subordination arrangements); *provided* that, for the avoidance of doubt, to the extent practicable and with permission of the Court, there shall be no requirement to adjourn the Confirmation Hearing for any matters other than the ABL Plan Treatment issue(s) and plan feasibility solely on account of the ABL Treatment Issue(s).  For the avoidance of doubt, the Debtors and the Required Consenting

5

First Lien Lenders shall be deemed to satisfy the notice requirements of clause (b) above with respect to the terms of the proposed Take-Back ABL Term Loan Facility by either (x) confirming that such terms shall be consistent with the terms set forth in the Original Cram-Down Election Term Sheet previously provided to the Prepetition ABL Agent on January 31, 2025 or (y) providing the Prepetition ABL Agent with a summary of all material proposed substantive/non-technical deviations from the terms set forth in the Original Cram-Down Election Term Sheet.

4.      The Parties reserve all rights with respect to the Allowed amount of Prepetition ABL Claims, the calculation and application of proceeds of ABL Priority Collateral to satisfy such Claims, and related matters concerning allowance and treatment of the Prepetition ABL Claims.

5.      This Stipulation will be binding and effective upon execution by the Parties hereto. This Stipulation may not be amended or modified without the written consent of each of the Parties.

6.      This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

7.      Except as expressly set forth herein, nothing in this Stipulation shall (or shall be deemed to) modify or amend any provision of the Disclosure Statement Order with respect to any of the Parties.

8.      The Court shall retain jurisdiction over all matters related to this Stipulation.

Dated:    April 2, 2025          Respectfully submitted,

**<u>DEBTORS</u>**

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Allison S. Mielke*
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:        emorton@ycst.com
              mlunn@ycst.com
              amielke@ycst.com
              sborovinskaya@ycst.com

*Co-Counsel to the Debtors and Debtors in Possession*

- and -

**KIRKLAND & ELLIS LLP**

*/s/ Joshua A. Sussberg*
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
              nicole.greenblatt@kirkland.com
              derek.hunter@kirkland.com

Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500
Email:        mark.mckane@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

## **REQUIRED CONSENTING FIRST LIEN LENDERS**

### **LANDIS RATH & COBB LLP**

*/s/ Adam G. Landis*

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Elizabeth A. Rogers (No. 7335)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:    (302) 467-4400
Facsimile:    (302) 467-4450
Email:        landis@lrclaw.com
              mcguire@lrclaw.com
              erogers@lrclaw.com

-and-

### **PAUL HASTINGS LLP**

*/s/ Jayme T. Goldstein*

Jayme T.  Goldstein (admitted *pro hac vice*)
Daniel A.  Fliman (admitted *pro hac vice*)
Jeremy D.  Evans (admitted *pro hac vice*)
Isaac S.  Sasson (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:    (212) 318-6000
Facsimile:    (212) 319-4090
Email:        jaymegoldstein@paulhastings.com
              danfliman@paulhastings.com
              jeremyevans@paulhastings.com
              isaacsasson@paulhastings.com

Nicholas A. Bassett (admitted *pro hac vice*)
2050 M Street NW
Washington, DC 20036
Telephone:    (202) 551-1700
Facsimile:    (202) 551-1705
Email:        nicholasbassett@paulhastings.com

*Counsel to the Ad Hoc Group of First Lien Lenders*

**JP MORGAN CHASE BANK, N.A., AS PREPETITION ABL AGENT AND PREPETITION ABL LENDER**

**POTTER ANDERSON & CORROON LLP**

/s/ Jeremy W. Ryan
Jeremy W. Ryan (No. 4057)
Brett M. Haywood (No. 6166)
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone:   (302) 984-6000
Email:       jryan@potteranderson.com
             bhaywood@potteranderson.com

-and-

**LATHAM & WATKINS LLP**

/s/ Andrew Sorkin
Andrew Sorkin (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone:   (212) 906-1200
Email:       andrew.sorkin@lw.com
             nacif.taousse@lw.com

*Counsel to JPMorgan Chase Bank, N.A. as Prepetition ABL Agent and Prepetition ABL Lender*

**OTHER PREPETITION ABL LENDERS**

**Citizens Bank, N.A.**

*/s/ Monirah J. Masud*

Monirah J. Masud
Senior Vice President
Citizens Bank, N.A.
71 South Wacker Drive, 29th Floor
Chicago, IL 60606
Telephone:    (312) 777-3596
Email:          monirah.j.masud@citizensbank.com

-and-

**BMO Bank, N.A.**

*/s/ Jared Price*

Jared Price
Director
BMO Bank, N.A.
320 South Canal Street, Floor 16
Chicago, IL 60606
Telephone:    (708) 553-8170
Email:          jared.price@bmo.com

*Authorized Signatories of Such Prepetition ABL Lenders*

**<u>Exhibit A</u>**

**Consensual Exit ABL Facility Term Sheet**

**Franchise Group, Inc.**

**Exit ABL Facility –Term Sheet**

This term sheet (this "<u>Term Sheet</u>") sets forth certain material terms of the proposed Exit ABL Facility (as defined in the Plan referenced below).

Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No. 1015] (as may be amended or supplemented from time to time, the "<u>Plan</u>") or the ABL Loan Documents, as applicable.

This Term Sheet does not address all terms that would be required in connection with the Exit ABL Facility or that will be set forth in the New ABL Facility Documents, which are subject to negotiation and further subject to execution of definitive documents, pleadings and proposed forms of orders, all of which shall be in form and substance acceptable the Required Consenting First Lien Lenders and the requisite ABL Lenders, each in their sole discretion.[1]

| | |
|---|---|
| **Borrowers** | New TopCo (the "<u>Lead Borrower</u>") and any other Reorganized Debtor (as defined in the Plan) designated as a borrower under the Exit ABL Facility (together with the Lead Borrower, the "<u>Borrowers</u>"). |
| **Guarantors** | Each Reorganized Debtor and any newly formed or acquired Subsidiaries of any Reorganized Debtor from and after the Closing Date (as defined below); <u>provided</u>, that for the avoidance of doubt, each Reorganized Debtor designated as a guarantor under the Take-Back Debt Facility shall also be a guarantor under the Exit ABL Facility. |
| **Security** | <ul><li>First lien in substantially all present and after acquired cash, accounts receivable, inventory, and proceeds thereof.</li><li>Second lien on all substantially all other assets and capital stock of the Borrowers (behind the Take-Back Debt Facility).</li></ul> |
| **Administrative Agent ("<u>Agent</u>")** | J.P.Morgan Chase Bank, N.A. |
| **Facility** | $275 million asset-based credit facility, however if all or substantially all of the assets or Equity Interests of the Vitamin Shoppe Debtors are sold, facility will be downsized to $200 million or less. |
| **Purpose** | Working capital and general corporate purposes including acquisitions. |
| **Closing Date** | The New ABL Facility Documents will become effective on the Effective Date upon satisfaction of all conditions precedent (including the Conditions to Exit below) to the effectiveness of the New ABL Credit Agreement set forth in the New ABL Facility Documents (the "<u>Closing Date</u>"). |

| Maturity | Four (4) years after the Closing Date. |
|---|---|
| L/C Sublimit | To be determined based on Borrower need. |
| Drawn Pricing | Secured Overnight Financing Rate ("SOFR") *plus* 3.25% |
| Undrawn Pricing | 0.375% |
| Borrowing Base | The sum of:<br><br>• 90% of eligible credit card receivables, plus<br>• 85.0% of eligible trade and franchise accounts receivable (including acceptable franchise accounts receivable for the reorganized Vitamin Shoppe Debtors and PSP Debtors at Agent's discretion, capped at 10% of the Borrowing Base), plus<br>• 90% of appraised net orderly liquidation value of eligible inventory (subject to a 10% combined cap on in in-transit inventory and $30 million cap on inventory at Dealer owned/leased stores), less<br>• Reserves. |
| Financial Covenants | • Minimum Fixed Charge Coverage Ratio of 1.0x, if Excess Availability is less than the greater of (i) 12.5% of the Borrowing Cap and (ii) $30 million.<br>• Up to 10% of EBITDA from minority held Investments in joint ventures to be included in EBITDA for Fixed Charge Coverage Ratio purposes on a pro rata basis with the interest of the Loan Parties therein. |
| Cash Dominion | Springing if certain Events of Default occur or Excess Availability is less than the greater of (i) 12.5% of the Borrowing Cap and (ii) $30 million. |
| Negative Covenants | • Unlimited restricted payments, restricted debt payments, and Investments allowed, so long as no default or Event of Default has occurred and the following is satisfied:<br><br>    ○ Excess Availability, both (a) pro forma and (b) pro forma for trailing 90 days, is greater than the greater of (i) 20% of the Borrowing Cap and (ii) $50 million<br><br>    ○ Pro forma Fixed Charge Coverage Ratio greater than 1.0x.<br><br>• Application of proceeds of ABL Priority Collateral in the case of any sale, investment, transfer or other disposition (including securitization of, or disposition of equity or assets of, a business line).<br>• Any disposition or securitization of reorganized PSP Debtors requires ABL lender consent.<br>• No assets of acquired business lines included in Borrowing Base without ABL lender consent.<br><br>    ○ Acquisition of assets relating to franchisees or related businesses / independent operators will be included in the Borrowing Base and are not subject to ABL consent.<br><br>• Updated Borrowing Base Certificates delivered in connection with any |

| | |
|---|---|
| | restricted payments, Investment or sale of assets in the Borrowing Base. |
| **Reporting** | • Standard financial reporting including annual audited financials, monthly and quarterly unaudited financials with quarterly covenant compliance certificates, monthly borrowing base certificates and annual projection model.<br>• Monthly borrowing bases, springing to weekly if Excess Availability is less than the greater of (i) 15.0% of the Borrowing Cap and (ii) $36 million. |
| **Field Exams / Inventory Appraisals** | 1 field exam per annum and 1 inventory appraisal per annum with trip to additional field exams and appraisals if Excess Availability is less than the greater of (i) 20.0% of the Borrowing Cap and (ii) $45 million |
| **Conditions to Exit** | • Occurrence of the effective date of a plan reasonably acceptable to the ABL lenders.<br><br>• Minimum Excess Availability of $50 million at emergence and cash of $35 million.<br><br>• Completion of field exam and inventory appraisal within 90 days after the Closing Date (extendable by Agent in its permitted discretion).<br><br>• ABL Facility and Take-Back Debt Facility syndicates will require a 4-year integrated working model, inclusive of a borrowing base forecast and projected ABL usage.[2] |
| **Other** | Elimination of $15 million in borrowing base reserves in conjunction with the completion of a field exam and inventory appraisal satisfactory to the ABL Lenders. |

---

[2] Model to include FY'25E by month, and quarterly thereafter.