## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*[1] | Case No. 24-12480 (LSS) |
| | Jointly Administered |
| Debtors. | **Hearing Date: May 6, 2025, at 11:30 a.m. ET**<br>**Objection Deadline: April 23, 2025 at 4:00 p.m. ET** |

## MOTION OF GRANITE TELECOMMUNICATIONS, LLC FOR
## ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Granite Telecommunications, LLC ("Granite"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto (the "Proposed Order") allowing and directing payment of its administrative expense claim in the amount of $5,848,302.51 (the "Administrative Claim") arising from services provided by Granite to the above-captioned debtors (the "Debtors") and related charges and fees assessed post-petition and prior to the rejection of their executory contracts with Granite. In support of this

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Motion, Granite relies upon and incorporates by reference the Declaration of Lisamarie McGill in Support of Motion of Granite Telecommunications, LLC for Allowance and Payment of Administrative Expense Claim (the "McGill Declaration"), attached hereto as Exhibit "A", and respectfully states as follows:

## Jurisdiction

1.      This Court has jurisdiction over the above-captioned cases, property of the Debtors' estates, and this Motion pursuant 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.

2.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of this Court (the "Local Rules"), Granite consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Background

5.      On November 3, 2024 (the "Petition Date"), Franchise Group, Inc. ("Franchise Group") and numerous affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

6.      The Debtors remain in possession of their property and continue to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      The above-captioned chapter 11 cases (the "Chapter 11 Cases") are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Directing Joint Administration of Chapter 11 Cases entered by the Court on November 5, 2024, in each of the Chapter 11 Cases. *See* D.I. 88.

8.      Granite is the nation's largest competitive local exchange carrier, providing, at competitive prices, voice and data services to its customers that it obtains from established service providers across North America. Granite offers access solutions tailored to its customers' business needs, and offers its customers consolidated billing and easy portability and management of voice and data services to account for changes in its customers' businesses.

9.      Granite and Debtor American Freight Outlet Stores, LLC ("American Freight") are parties to a pre-petition executory contract executed on or around September 30, 2011, as since amended (the "Contract"),[2] pursuant to which Granite provided and continues to provide voice and data services to American Freight.

10.     For months since the Petition Date, Granite has continued to provide voice and data services to American Freight, communicating regularly with American Freight to ensure payment for services provided by Granite and to handle administrative management of the provision of services under the Contract.

11.     As of the Petition Date, Granite was providing voice and data services to American Freight at approximately three hundred and eighty (380) locations.

---

[2] The Contract includes, but is not limited to, the Master Services Agreement entered into on September 30, 2011, the Adoption Agreement, dated as of August 22, 2018, Amendment 2 to the Master Services Agreement, dated as of July 1, 2019, Amendment 3 to the Master Services Agreement, dated as of December 2019, Amendment 4 to the Master Services Agreement, dated as of January 11, 2022, Amendment 5 to the Master Services Agreement, dated as of August 24, 2022, Amendment 6 to the Master Services Agreement, dated as of April 19, 2023, and Amendment No. 7 to the Master Services Agreement, dated as of October 11, 2024.

12.     Services for all but thirty-four (34) of the American Freight stores were disconnected as of December 31, 2024, at the direction of American Freight. *See* Disconnect Email Thread, 12/2024-3/2025, <u>Exhibit</u> "<u>B</u>".

13.     On March 17, 2025, as a result of American Freight's nonpayment of amounts incurred under the Contract post-petition, Granite sent an adequate assurance request to the Debtors, with the appropriate parties copied, in accordance with the established procedures in these Chapter 11 Cases. *See* Email from K. MacQueen 3.17.25, <u>Exhibit</u> "<u>C</u>"; Email from K. MacQueen 3.20.25, <u>Exhibit</u> "<u>D</u>". Therein, Granite reminded Debtors' counsel that Granite was owed $5,845,263.77 for amounts incurred under the Contract since the Petition Date, $450,201.93 of which had already come due under the net-60 payment terms.

14.     On March 31, 2025, the Debtors, through counsel, informed Granite that they had no intention of paying Granite the vast majority of the post-petition amounts owed to Granite by American Freight in the ordinary course of business. *See* Email from Z. Ben-Shahar, Mar. 31, 2025, <u>Exhibit</u> "<u>E</u>".

15.     After Granite advised the Debtors of its intention to file this Motion, on April 8, 2025, American Freight requested for Granite to disconnect the remaining services at the remaining thirty-four (34) locations. *See* Exhibit B.

16.     As of the date of this filing, American Freight owes $5,848,302.51 to Granite, comprised of the following amounts:

| Account Number | Invoice No. | Invoice Date | Original Invoice Amount | Remaining Invoice Balance |
|---|---|---|---|---|
| 04001072 | 692845830 | 4/1/2025 | $1,880.15 | $1,880.15 |
| 04001072 | 688563635 | 3/1/2025 | $6,787.21 | $6,787.21 |
| 04001072 | 684153994 | 2/1/2025 | $2,019,171.13 | $2,004,188.64 |

4

| 04722562 | 692855492 | 4/1/2025 | $13,689.42 | $13,689.42 |
|----------|-----------|----------|------------|------------|
| 04722562 | 688570886 | 3/1/2025 | $12,139.43 | $12,139.43 |
| 04722562 | 684163946 | 2/1/2025 | $3,371,946.56 | $3,359,415.73 |
| 04722562 | 676978374 | 1/1/2025 | $457,358.63 | $444,827.80 |
| 04722562 | 668242972 | 11/1/2024 | $200,469.13 | $5,374.13 |
| **TOTAL:** | | | | **$5,848,302.51** |

True and correct copies of the above-referenced invoices have been provided to the Debtors contemporaneously with the filing of this motion. Because the invoices are voluminous, true and correct copies of only the summary pages of the outstanding invoices have been attached hereto as <u>Exhibit</u> "<u>F</u>" Such invoices have been partially redacted to protect confidential information regarding the terms of the Granite Contract.

### Relief Requested

17.     By this Motion, Granite seeks entry of an order substantially in the form of the Proposed Order attached hereto: (i) allowing and directing the payment of its Administrative Claim in the amount of $5,848,302.51 pursuant to Section 503(b)(1) of the Bankruptcy Code; and (ii) granting such other and/or further relief as necessary and appropriate.

### Basis for Relief Requested

18.     Section 503(b)(1) of the Bankruptcy Code provides administrative expense priority to "the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1). Determining whether a creditor has an administrative claim is a two-prong test: the expense must have arisen from a post-petition transaction between the creditor and the debtor, and the transaction must have been "actual and necessary" to preserve the estate. *Calpine Corp. v. O'Brien Envtl.*

*Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976*); In re Mid-Am. Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999).

19.    A "judicial gloss" has been applied to the statutory language requiring that administrative expense priority only be according to "actual" and "necessary" costs of preserving the estate, by which courts use a shorthand of requiring a demonstration of "benefit to the estate." *In re MTE Holdings LLC*, 2010 WL 2258270 (Bankr. D. Del. June 2, 2021). *See also In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) ("The word 'benefit' does not itself appear in the text of Section 503(b)(1)(A). Instead, it functions as 'merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been 'necessary' within the meaning of § 503(b)(1)(A).' . . . The benefit does not, however, 'have to be substantial' to qualify.") (citation omitted).

20.    The Delaware Bankruptcy Court has explained that "it is necessary to give administrative claim status to post-petition creditors, in order to encourage them to do business with the debtor." *In re MTE Holdings LLC*, 2021 WL 2258270, at *5-6 (Bankr. D. Del. June 2, 2021) (citing *Pennsylvania Department of environmental Resources v. Tristate Clinical Laboratories*, 178 F.3d 685, 690 (3d Cir. 1999)). "Absent the priority established under § 503, a debtor in possession could not . . . obtain services necessary to its operation as it attempts to reorganize, or wind-down pending ultimate liquidation." *Id.* at *6. In the MTE Holdings case, the debtors did not dispute the invoices underlying a post-petition creditor's administrative claim, but they argued that the work performed by the creditor did not allow the debtors to obtain "increases in profit, revenue or competitive position[.]" *Id*. In response, the Delaware bankruptcy court held:

> The Court rejects this argument. Fairly read, and notwithstanding the language about a creditor's "heavy burden" to show a "benefit to the estate," the caselaw does

not support the proposition that a non-insider third party that provides goods or services to a debtor-in-possession on ordinary commercial terms must prove that receipt of those goods or services led directly to increased profits. None of the cases cited by the parties so holds.

*Id.*

21.     In another case that dealt with a utility contract, *In re Smurfit-Stone Container Corp.*, 425 B.R. 735 (Bankr. D. Del. 2010), the Delaware bankruptcy court held that a debtor must pay the reasonable value of the services received through an executory contract pending assumption or rejection of that contract. The court acknowledged that "[c]ourts in this District have consistently held that administrative expense priority is available to contract parties when the debtor enjoys the benefits of the contract pending assumption or rejection." *Id.* at 741.

22.     Indeed, the United States Supreme Court held thirty years ago that if the debtor continues to reap benefits of a contract before deciding to assume or reject the contract post-petition, the non-debtor gets administrative priority for the reasonable value of goods or services rendered during that time. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984).

23.     Granite is entitled to administrative priority for the costs and expenses it incurred for its post-petition provision of goods and services to American Freight prior to the rejection of the Granite Contract, even though the contract was ultimately rejected. *See In re Klein Sleep Prods., Inc. v. Costich*, 78 F.3d 18, 26 (2d Cir. 1996) (holding that a lease assumed by the Debtors post-petition conferred a benefit on the Debtors even though ultimately the attempted chapter 11 reorganization was converted to a chapter 7 liquidation and "the benefit turned to dust").

24.     While the Debtors may argue that they did not need some or all of the services provided by Granite underlying Granite's Administrative Claim, or that certain individual charges incurred in a given invoice did not independently provide benefit to the Debtors' estates, these are

7

LEGAL\76752369\2

not bases for objecting to Granite's total administrative claim when the Debtors continued to reap the benefits of their Contract with Granite.

25.     Throughout these Chapter 11 Cases, Granite  has patiently worked with American Freight to arrange for payment of post-petition services provided, and has diligently communicated and followed up with the Debtors directly, and eventually through counsel, addressing and reiterating: (i) the monthly charges under the Contract, (ii) the Debtors' obligation to pay for such services as post-petition invoices came due; and (iii) Granite's need to be informed directly, and in writing, if the Debtors wanted Granite to stop providing services at any of the Debtors' commercial premises.

26.     Courts have discretion to determine the timing of payment of administrative expenses, weighing prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors. *See In re Garden Ridge Corp.,* 323 B.R. 136, 143 (Bankr. D. Del. 2005).  In light of the significant amount owed to Granite, Granite requests that this Court require the Debtors to pay Granite's Administrative Claim within thirty (30) days after entry of an order granting this Motion rather than requiring Granite to wait for a distribution under any proposed plan that may be confirmed.

**<u>Reservation of Rights</u>**

27.     By submitting this request for payment of its Administrative Claim, Granite does not waive any rights, remedies, liens, interests, priorities, protections, claims, right to any security, or any other right or rights with respect to any claim that Granite has or may have against the Debtors or any of their affiliates, or any other person or persons.

28.     Additionally, Granite reserves its right to replace, restate, amend, and/or supplement this request for payment of its Administrative Claim at any time and for any reason,

to file additional and further pleadings for additional claims, and to assert any and all other claims, actions, defenses, rights, or remedies of whatever kind or nature that it currently has or may have in the future against the Debtors and/or any subsidiary, affiliate, or successor thereof, or any other person at law or in equity, including but not limited to the right to (a) correct, increase, or amend the claim amounts referred to herein; (b) add or amend any documents or other information, and to describe further the claims asserted herein; (c) seek and/or assert other administrative or other priority claims, (d) seek interest; and (e) assert claims that are otherwise warranted in any related actions.  The filing of this request for payment of administrative expense claims shall not be deemed a waiver of, or other limitation on, any such claims, actions, defenses, rights, or remedies, and such claims, actions, defenses, rights, and remedies are expressly reserved.

29.    The filing of this request for allowance and payment of the Administrative Claim is not intended to be and should not be construed as an election of remedies or waiver of any past, present, or future claims.

30.    Granite specifically reserves and preserves all of its procedural and substantive defenses and rights with respect to any claim or counterclaim that may be asserted against Granite by the Debtors, any of their successors or assigns, or by any bankruptcy trustee for the Debtors' estates.

31.    This Motion for allowance and payment of the Administrative Claim of Granite is without prejudice to any and all rights, claims, and defenses available to Granite under the Bankruptcy Code or otherwise.

## Notice

32.    Notice of this Motion will be given to (a) the Debtors; (b) Debtors' Counsel (c) the United States Trustee; (d) counsel to the Official Committee of Unsecured Creditors; and (e) all

parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002 (the "Service Parties"). Granite submits that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, Granite respectfully requests that the Court enter an order granting the relief requested by this Motion, as well as any additional relief that is just and proper.

Dated:  April 9, 2025

**COZEN O'CONNOR**

*/s/ Marla S. Benedek*
Marla S. Benedek (DE Bar No. 6638)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone:  (302) 295-2000
E-mail: mbenedek@cozen.com

*Attorneys for Creditor Granite*
*Telecommunications, LLC*