# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br>(Jointly Administered)<br><br>Re: Docket No. 1079 |

### RESERVATION OF RIGHTS OF THE AD HOC GROUP OF FREEDOM LENDERS TO THE FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP, AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM NOVEMBER 21, 2024 THROUGH JANUARY 31, 2025

The Ad Hoc Group of Freedom Lenders (the "**Freedom Lender Group**"),[2] by and through its undersigned counsel, hereby file this reservation of rights (the "**Statement**") with respect to the

---

[1] The debtors in these Chapter 11 Cases (the "**Debtors**"), along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), B. Riley Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home and Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing, LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] The Freedom Lender Group is comprised of the entities named in the *Verified Statement of the Ad Hoc Group of Freedom Lenders Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 229], as it may be amended and supplemented from time to time.

*First Interim Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, as Counsel for the Official Committee of Unsecured Creditors for the Period From November 21, 2024 Through January 31, 2025* [Docket No. 1079] (the "**Interim Fee Application**") and respectfully states as follows:

## STATEMENT

1. The Freedom Lender Group files this Statement under the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Estate Professionals* [Docket No. 353] (the "**Interim Compensation Order**") to preserve its right to object to the fees sought in the final fee application of the Official Committee of Unsecured Creditors (the "**Committee**") for its counsel, Pachulski Stang Ziehl & Jones LLP ("**Pachulski**"). Pursuant to the Interim Fee Application, the Committee is seeking interim approval to have "the Debtors" pay Pachulski over $2.7 million in fees and over $37,000 of expenses for the first three months of these chapter 11 cases, none of which were incurred to provide any benefit to Freedom VCM, Inc. and Freedom VCM Interco, Inc. (the "**HoldCo Debtors**"). Further, about half of those fees were incurred in connection with activities that were flatly inconsistent with the Committee's fiduciary duties, as the Committee has been taking actions directly adverse to the HoldCo Debtors and their stakeholders. The Freedom Lender Group files this Statement under the Interim Compensation Order to preserve its rights to object to these fees (and potentially others) in conjunction with the Committee's final fee application for Pachulski.

2. The Committee was appointed on November 19, 2024 at each of the Debtors' estates [Docket No. 188]. The Committee has acknowledged that it has fiduciary duties to the unsecured creditors of all Debtors, including those of the HoldCo Debtors and those of Franchise

Group, Inc. ("**FRG**") and its subsidiaries (collectively with FRG, the "**OpCo Debtors**").[3]

3.  Without an explanation, much less with approval from the Court or the Office of the United States Trustee, the Committee has abandoned the HoldCo Debtors' estates and has taken actions adverse to the Holdco Debtors and their stakeholders.[4] This includes the parties who are the Committees' largest constitutents if the Committee's own (late) valuation is to be believed: the members of the Freedom Lender Group.[5] If the Committee's expert is to be credited, the holders of second lien debt at the OpCo Debtors and first lien debt at the Holdco Debtors are entirely undersecured, meaning that the members of the Freedom Lender Group would represent (i) 73% of unsecured creditors at the OpCo Debtors, (ii) 96% of unsecured creditors at FRG, (iii) 100% of unsecured creditors at the HoldCo Debtors, and (iv) 92% of unsecured creditors at the Debtors in the aggregate.[6] This makes the Freedom Lender Group, by far, the largest unsecured creditor constituency in the Debtors' chapter 11 cases.[7] This state of play also calls into question why the Committee is expending so much estate cash merely to facilitate a judicial foreclosure by the OpCo 1L Lenders, rather than pursuing a path that stops the professional fee burn and simply

---

[3] *See* Dec. 10, 2024 Hr'g Tr. at 292:3-4 (Mr. Feinstein: "The Committee is an estate fiduciary, as to all debtors and all creditors"); Dec. 17, 2024 Hr'g Tr. at 45:8-15 (Mr. Feinstein: "Your Honor, the committee is appointed to represent the creditors of all the estates and we're a fiduciary for creditors of all the estates. . . . We're here to take a holistic view of the case and try to advance the interests of all unsecured creditors.").

[4] *See* Feb. 19, 2025 Hr'g Tr. at 106:22-25, 107:1-14 (Mr. Feinstein representing to the Court that creditors at the OpCo Debtors are the Committee's "only known constituents").

[5] On April 3, 2025, twenty-five days after the deadline for opening expert reports, the Committee served a report regarding valuation of the Debtors' collective estates as of the effective date of the Debtors' proposed plan. That valuation report asserts that the Debtors have no equity in any of their respective assets. The Freedom Lender Group reserves all rights with respect to this valuation dispute.

[6] This is before the assertion of any claims by the HoldCo Debtors against the OpCo Debtors, which the Committee has conceded would be classified as general unsecured claims. Feb. 19, 2025 Hr'g Tr. 128:10-14. The beneficiaries of the HoldCo Debtor's claims against the OpCo Debtors will be the HoldCo Lenders, who have asserted that the avoidance of these claims is "not less than the amount of the HoldCo Loan Claim" (i.e., $514 million). *See*, *e.g.*, Proof of Claim No. 1977.

[7] If the OpCo 1L Lenders are able to successful assert a deficiency claim of their own, that would further reduce the share of the unsecured claims pool made up by holders of general unsecured claims of the OpCo Debtors, the only group the Committee has been advocating for.

3

delivers any unencumbered value of the Debtors to unsecured creditors.

4. The answer seems to be that the Committee has chosen to abandon its largest constituent to curry favor with the Debtors and an ad hoc group of first lien lenders (the "**OpCo 1L Group**") in pursuit of a single objective: control over the claims and causes of action of the OpCo Debtors and the promise of future advisory fees that comes with such control. In its chase for control, the Committee has negotiated away releases for claims and causes of action against certain current officers and directors of the Debtors who a separate independent investigation at the HoldCo Debtors has determined are subject to viable estate claims and causes of action that should not be released. The Committee has also completely ignored, and even taken actions directly adverse to, unsecured creditors of the HoldCo Debtors in derogation of its duties.[8] Taking such actions to support the Debtors and a judicial foreclosure by secured creditors to the detriment of all unsecured creditors of a particular estate (and many others) is inconsistent with what an official committee of unsecured creditors is tasked with generally. Such actions include the following:

5. *First*, the Committee appeared mere hours after it chose Pachulski as its proposed counsel to express support for paying 95% of known prepetition unsecured trade claims in full in cash, whereas the other unsecured creditors are now slated to receive an estimated 1% recovery at

---

[8] *See, e.g.*, *In re Kensington Intern. Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004) ("[A] Creditors Committee owes a fiduciary duty to the unsecured creditors as a whole, not to the individual members."); *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 256 (3d Cir. 2001) ("We have construed §1103(c) as implying a fiduciary duty on the part of members of a creditor's committee, such as the present Unsecured Creditors Committee, toward their constituent members."); *In re Refco Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006) (the members of an official committee owe a fiduciary duty to their constituents—in the case of an official creditors' committee, to "all of the [debtor's] unsecured creditors"); *In re Residential Cap., LLC,* 480 B.R. 550, 559 (Bankr. S.D.N.Y. 2012) ("creditors' committees owe a fiduciary duty to the entire class of creditors represented by such committee and are required to place the collective interest of the class they represent above their own personal stake in the bankruptcy case"); *In re Rapid-Am. Corp.*, No. 13-10687 (SMB), 2018 WL 882398, at *4 (Bankr. S.D.N.Y. Feb. 12, 2018) ("A creditors' committee represents the body of creditors, not individual creditors or sub-groups within its constituency.").

best under the Debtors' proposed plan. In taking this stance, the Committee immediately established that it would be playing favorites in these chapter 11 cases, advocating for the 8% minority of unsecured creditors of the Debtors to the detriment of the other 92%. The Committee attempts to charge the Debtors' estates approximately $33,000 for Pachulski's work in this improper effort under the Interim Fee Application, and the Freedom Lender Group reserves on those fees.

6. *Second*, the Committee filed an objection to the Freedom Lender Group's motion for stay relief at the HoldCo Debtors, termination of exclusivity at the HoldCo Debtors and, in the alternative, appointment of a chapter 11 trustee for the HoldCo Debtors [Docket No. 294]. Despite having fiduciary duties to unsecured creditors of the HoldCo Debtors, the Committee felt it was appropriate to interfere in this dispute and contest relief that was supported by the vast majority of unsecured creditors of those estates and would have benefitted all stakeholders of the HoldCo Debtors if the motion was granted. The Committee then needlessly interfered in the Freedom Lender Group's appeal of the denial of that motion even though it was conflicted in this dispute, which was effectively between the OpCo Debtors and the HoldCo Debtors. Case No. 24-1394 [Docket No. 40]. The Committee attempts to charge the estates approximately $127,000 for Pachulski's work in this improper effort under the Interim Fee Application, and the Freedom Lender Group reserves on those fees.

7. *Third*, the Committee filed a statement in support of the Debtors' motion for postpetition financing that would improperly saddle the HoldCo Debtors with hundreds of millions of dollars of secured administrative priority claims despite receiving no proceeds or other benefit from the proposed facility [Docket No. 377], again demonstrating its willingness to abandon the HoldCo Debtors' unsecured creditors. The Committee attempts to charge the estates

approximately $70,000 for Pachulski's work in this improper effort under the Interim Fee Application, and the Freedom Lender Group reserves on those fees.

8. *Fourth*, the Committee brokered a "settlement" with the Debtors and the OpCo 1L Group without consulting its largest constituent, which provided (among other things) that the Debtors would pursue confirmation of a plan that would create a litigation trust funded with $21 million (after the Committee takes its substantial advisory fees off the top) to pursue the OpCo Debtors' claims and causes of action against the HoldCo Debtors (if any) and third parties who are not released under the Debtors' proposed plan, including the members of the Freedom Lender Group.[9] Under this "settlement," which may provide zero distributable value to unsecured creditors, the Committee would have the power to select the trustee for this litigation trust, whose fees (including those of its chosen counsel) would also come out of the $21 million.[10] The proposed agreement governing the OpCo Debtors' litigation trust would have given the beneficiaries of the litigation trust no power to control what claims and causes of action would be investigated, pursued, or settled, or to replace the trustee unless they can demonstrate cause to this Court.[11] Further, the Committee agreed to support the OpCo Debtors' releases of certain current officers and directors (including John Hartmann, Andrew F. Kaminsky, Mr. Andrew M. Laurence and Tiffany McMillan-McWaters) that Michael Wartell recently determined are subject to legitimate estate claims and causes of action that should not be settled or released (which are based on the same actions that would give rise to FRG's causes of action).[12] The Committee attempts to charge the estate approximately $100,000 for Pachulski's work in this improper effort under the

---

[9] [Docket No. 957] at 17.
[10] *Id.*
[11] [Docket No. 1182] Ex. H (OpCo Debtor Litigation Trust Agreement) Arts. 5.5, 8.3.
[12] *Id.* Ex. J (Freedom HoldCo Debtor Released Claims Report).

Interim Fee Application, and the Freedom Lender Group reserves on those fees.

9.     *Finally*, the Interim Fee Application seeks approval of Pachulski's fees of $815,000 for "bankruptcy litigation" work that, at least in part, was adverse to the interests of certain general unsecured creditors including investigating claims against the Freedom Lender Group that ultimately led to the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting the Committee, Leave, Standing and Authority to Commence, Prosecute and Settle Certain Claims on Behalf of the OpCo Debtors Estates* [Docket No. 1200].  This motion pits one group of the Committees' estates against others, and the Freedom Lender Group reserves on those fees.[13]  The Freedom Lender Group reserves on those fees as well.

10.    The foregoing only covers actions taken during the interim period covered in the Interim Fee Application (i.e., the first three months of the Chapter 11 Cases).  The Committee has taken numerous additional improper actions since (including retaining an expert to provide testimony demonstrating that there is ***no*** value in the Debtors' estates for unsecured creditors) with respect to which the Freedom Lender Group reserves all rights.

11.    In total, in the Interim Fee Application, the Committee seeks to pay Pachulski over $2.7 million of fees and over $37,000 of expenses for work that was not conducted for the benefit of the HoldCo Debtors or their stakeholders and was frequently adverse to their interests, often explicitly.  Further, the Committee seeks to pay Pachulski over $1.3 million in fees for advising the Committee to take actions that were inconsistent with the Committee's fiduciary duties.

12.    Interim fee applications are governed by both sections 330 and 331 of the

---

[13]   *See In re Nutritional Sourcing Corp.*, 398 B.R. 816, 836 (Bankr. D. Del. 2008) (denying confirmation of a plan supported by the debtors and the creditors' committee because the committee breached its fiduciary duty to one group of creditors whose interests "were never voiced" and were not present at the negotiating table).

7

Bankruptcy Code.[14] Section 330 of the Bankruptcy Code requires that the services rendered by a professional provide a benefit to the debtor's estate in order to be eligible for an award of compensation.[15] A court may reduce a professional's fees or expenses when they are disproportionate to the benefit to the estate, even if the court already has approved the professional's retention under sections 327 and 328 of the Bankruptcy Code.[16] The Committee has to date provided no demonstrable value to the Debtors' collective estates in interjecting themselves in the inter-debtor disputes described above and should not be rewarded for this behavior or for abandoning, and taking actions directly adverse to, the HoldCo Debtors and the Committee's largest constituent. The Freedom Lender Group reserves all rights to object to the related fees and expenses of Pachulski when the Committee seeks final approval of them, including on the basis that (i) none of Pachulski's fees should be allocated to the HoldCo Debtors and (ii) none of the Debtors should be required to pay Pachulski's fees and expenses incurred in connection with the Committee's ongoing actions in contravention of its fiduciary duties.

**RESERVATION OF RIGHTS**

13.    The Freedom Lender Group reserves the right to supplement, modify, and/or amend this Statement, and to file additional statements and/or objections with respect to the reasonableness of the fees and expenses sought in the Interim Fee Application in accordance with the Interim Compensation Order, and reserves all rights to object to allowance of same on a final

---

[14]    *See In re ACT Mfg., Inc. Eyeglasses*, 281 B.R. 468, 479 (Bankr. D. Mass. 2002) (section 330 and 331 "are governed by the same standard").

[15]    *See In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997) ("[A professional] whose employment is approved under § 327 and who seeks fees from the estate under § 330 must show that his services were necessary and benefited the estate[.]"); *In re Interstate Sav. Inc.*, 1997 WL 812682, at *3 (Bankr. E.D. Pa. 1997) ("Implicit in any award of compensation from estate assets is the requirement that the services for which compensation is sought benefit the estate."); *In re Sound Radio, Inc.*, 145 B.R. 193, 206 (Bankr. D.N.J. 1992) ("Several decisions have denied fees on the basis that the services did not benefit the estate.").

[16]    *In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995).

basis for any reason.[17] The Freedom Lender Group further reserves its rights to object to any fees documented in other fee applications filed on behalf of any estate professionals. Nothing set forth in this Statement shall constitute a waiver, discharge, or disallowance of any rights, claims, causes of actions, or defenses that the Freedom Lender Group has asserted or may assert against the Committee or any other professional.

[*The remainder of this page has been intentionally left blank*]

---

[17] *See* Interim Compensation Order ¶ 2.j ("Neither (i) the payment or failure to pay, in whole or in part, interim compensation and/or the reimbursement off or the failure to reimburse, in whole or in part, expenses under the Compensation Procedures, nor (ii) the filing of or failure to file an Objection or Additional Objection will bind any party in interest or this Court with respect to the final allowance of applications for payment of compensation and reimbursement of expenses of Estate Professionals. All fees and expenses paid to Estate Professionals under the Compensation Procedures are subject to (x) disgorgement until final allowance by this Court and (y) allocation as among the Debtors' estates based upon the nature of the work performed by such Estate Professionals and the corresponding Debtor estate(s) for which such work is performed.").

Dated: April 9, 2025
       Wilmington, Delaware

**FARNAN LLP**

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: bfarnan@farnanlaw.com
       mfarnan@farnanlaw.com

-and-

**WHITE & CASE LLP**

Thomas Lauria (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: tlauria@whitecase.com

-and-

J. Christopher Shore (admitted *pro hac vice*)
Andrew Zatz (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
Erin Smith (admitted *pro hac vice*)
Brett Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: cshore@whitecase.com
      azatz@whitecase.com
      sam.hershey@whitecase.com
      erin.smith@whitecase.com
      brett.bakemeyer@whitecase.com

*Counsel to the Ad Hoc Group of Freedom Lenders*