# Exhibit A

**Settlement Term Sheet**

*Execution Version*

# FRANCHISE GROUP, INC., ET AL.

## SETTLEMENT TERM SHEET[1]

### April 17, 2025

This term sheet (the "Term Sheet") summarizes the material terms and conditions of a proposed global settlement (the "Settlement") agreed to by the Debtors, the Freedom Lender Group, the Ad Hoc Group consisting of Required Consenting First Lien Lenders, and the Creditors' Committee (collectively, the "Parties"). Nothing contained in the terms of the Settlement, nor the release of any Claims or Causes of Action pursuant to it, is evidence of the merit, or lack of merit, of the released Claims or Causes of Action, nor is it intended to be evidence, or indicative of the merits, of any Claims or Causes of Action against any non-released individual or Entity.

This Term Sheet is for settlement purposes only. This Term Sheet does not purport to summarize all of the terms, conditions, representations, warranties, and other provisions with respect to the Settlement described herein, which are subject to incorporation into an amended Plan (the "Amended Plan"). Other than the terms set forth herein, the Amended Plan must be reasonably acceptable to the Freedom Lender Group and cannot be further amended, supplemented, or otherwise modified without the reasonable consent of the Freedom Lender Group.

| Parties | The Debtors, the Freedom Lender Group, the Ad Hoc Group, and the Creditors' Committee. |
|---|---|
| **Allocation of Enterprise Value; Effective Date Distributions** | On the Effective Date, Holders of Prepetition Second Lien Loan Claims shall receive:<br><br>• $15 million in Cash; <u>provided</u> that any Holders of Prepetition Second Lien Loan Claims other than members of the Freedom Lender Group shall waive their *pro rata* share of such Cash, which shall be reallocated to the members of the Freedom Lender Group; and<br><br>• $25 million of Reorganized Common Equity[2] (including following the consummation of a Partial Sale Transaction for the Vitamin Shoppe Debtors, the net proceeds of which must reduce the DIP Facility or the New ABL Facility on a dollar-for-dollar basis), which shall include customary minority equity protections on account of such equity holdings (*e.g.*, customary preemptive rights on equity issuances, customary piggy-back registration |

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Seventh Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No. 1233] (as modified, amended, or supplemented from time to time, the "Plan").

[2] Such equity ownership to be calculated by dividing $25 million by the reorganized equity value. If there is no Partial Sale Transaction of the Vitamin Shoppe Debtors, the reorganized equity value will be calculated assuming $1.1 billion of total enterprise value *less* net debt as of the Effective Date, which net debt as of the Effective Date shall not exceed $600 million. If there is a Partial Sale Transaction of the Vitamin Shoppe Debtors, the reorganized equity value will be calculated assuming $1.1 billion of total enterprise value *less* the net proceeds from any sale of the Vitamin Shoppe Debtors (which net proceeds, solely for purposes of calculating this deduction, shall be deemed to be no less than $177.25 million) *less* the amount of net debt as of the Effective Date, which net debt as of the Effective Date shall not exceed $445 million. Any payments on account of any Administrative Expense Claims or Cure Costs that are made "as soon as reasonably practicable" after the Effective Date, in lieu of making such payments on the Effective Date, shall be deemed to have been made on the Effective Date for purposes of calculating net debt hereunder.

| | |
|---|---|
| | rights, prohibition on related-party transactions involving consideration in excess of $1 million, unless the approval of a majority of disinterested members of the board of New TopCo is obtained (unless any such transaction is a commercial transaction on an arm's length basis in the ordinary course of business consistent with past practice), *pro rata* distributions with other equity holders that hold the same class of equity and no amendments to the organizational documents of New TopCo that disproportionately and adversely affects a unitholder in any material respect (without regard to any effect resulting from: (x) the individual circumstances of any such unitholder (*e.g.*, tax or regulatory status, etc.); or (y) the differences in the respective percentages of ownership of equity of the unitholder) without the consent of such unitholder). |
| **Intercompany Claims Settlement** | All Claims, including Intercompany Claims, between and among TopCo, the Freedom HoldCo Debtors and the OpCo Debtors are irrevocably settled, waived, and/or released, including but not limited to all Intercompany Claims against the Freedom HoldCo Debtors related to the allocation of DIP Claims on account of Professional Fee Claims, or any other postpetition Administrative Expense Claims against the Freedom HoldCo Debtors. |
| | The DIP Lenders agree to waive their right to assert any DIP Claims against the Freedom HoldCo Debtors; provided, for the avoidance of doubt, that the full amount of their DIP Claims shall still be assertable against the other Debtors. |
| | All Cash belonging to TopCo, consisting of $13.25 million (the "TopCo Cash Allocation"), shall be allocated to the Freedom HoldCo Debtors for contribution to the funding of the Litigation Trust. For the avoidance of doubt, the TopCo Cash Allocation shall not be reduced or netted by any postpetition administrative expenses incurred by or otherwise allocable to the Freedom HoldCo Debtors. |
| **Consolidated Litigation Trust** | On the Effective Date, a consolidated Litigation Trust shall be established pursuant to the Amended Plan with the following assets and governance: |
| | • All non-released Claims and Causes of Action belonging to the Freedom HoldCo Debtors and the OpCo Debtors (other than Claims and Causes of Action that are against continuing trade partners, vendor counterparties, or contractual counterparties of the Reorganized Debtors, in each case, who are subject to a contract or lease that has been assumed or who otherwise are intended by the Reorganized Debtors to have ongoing business dealings with the Reorganized Debtors as of the Effective Date, or counterclaims in response to claims that otherwise relate to the Reorganized Debtors' continued operations, each of which shall be retained by the Reorganized Debtors) shall be assigned to the Litigation Trust.<br>• The Litigation Trust shall pursue only third-party Claims and Causes of Action transferred to the Litigation Trust and not otherwise settled and released pursuant to the Amended Plan for its beneficiaries (the "Permitted Litigation Claims"). Any and all Claims and Causes of Action identified in the report of the Freedom HoldCo Independent Director as actionable against any Released Party are settled and released in full pursuant to the terms of the Amended Plan and are not Permitted Litigation Claims. For the avoidance of doubt, nothing in the Amended Plan, including the definitions of "Permitted Litigation Claims" or "Released Parties" shall be construed to limit the |

|  |  | Litigation Trust's ability to pursue the D&O Liability Insurance Policies with respect to Permitted Litigation Claims.<br>• All Intercompany Claims are settled.<br>• The Litigation Trust beneficiaries shall include: (a) the HoldCo Lenders; (b) the First Lien Lenders on account of any First Lien Deficiency Claims; (c) the Second Lien Lenders on account of any deficiency claim; and (d) Holders of OpCo General Unsecured Claims.<br>• Section 510(b) claims will be separately classified and will not be beneficiaries of the Litigation Trust.<br>• Net recoveries under the Litigation Trust shall be allocated as follows: (i) 58% to Holders of Prepetition HoldCo Loan Claims and Holders of Prepetition Second Lien Loan Claims; (ii) 30% to Holders of Prepetition First Lien Loan Claims; and (iii) 12% to Holders of OpCo General Unsecured Claims.<br>• The Litigation Trustee shall be Lawrence R. Hirsh of LHIRSH, LLC.[3]<br>• The Litigation Trust Advisory Board shall include two designees of the Freedom HoldCo Debtors (which designees shall be selected by the Freedom Lender Group) and one designee of the OpCo Debtors (which designee shall be selected by the Creditors' Committee with the consent of the Required Consenting First Lien Lenders).<br>• The Litigation Trustee, in consultation with the Litigation Trust Advisory Board, shall have sole discretion with respect to the prosecution, funding, and settlement or other resolution of Claims and Causes of Action transferred to the Litigation Trust and the distribution of property of the Litigation Trust, subject to the allocation of beneficial interests set forth above.<br>• Litigation Trust funding shall be comprised of the TopCo Cash Allocation *plus* any consideration remaining from the $21 million allocated to the Litigation Trust pursuant to the Committee Settlement (the "<u>OpCo Cash Allocation</u>" and, together with the TopCo Cash Allocation, the "<u>Litigation Trust Funding</u>"), which OpCo Cash Allocation, for the avoidance of doubt, shall be equal to $21 million *minus* the total amount of fees and expenses (including transaction and success fees) incurred on or after the Petition Date through the Effective Date by all Professional Persons retained by the Creditors' Committee under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5), or any other provision of the Bankruptcy Code, which amount shall include, without limitation, the Professional Fee Escrow Amount for all Professional Persons retained by the Creditors' Committee (it being agreed that all Parties, including the Creditors' Committee, shall take commercially reasonable efforts to ensure that the Professional Fee Claims of the Professional Persons of the Creditors' Committee do not exceed $16 million in total fees and expenses).<br>• The Litigation Trust Agreement shall be acceptable to all Parties, and provide, at a minimum that: (w) the Litigation Trustee shall owe a fiduciary duty of care and loyalty to all beneficiaries of the Litigation Trust (but, for the avoidance of doubt, shall <u>not</u> owe a fiduciary duty to the Debtors or the Reorganized Debtors); (x) all distributions to beneficiaries by the Litigation Trust shall be made on a *pro rata* basis; (y) the Litigation Trust Funding shall be primarily reserved for the costs and expenses (including, any advisor fees |

---

[3] None of Paul Hastings LLP, White & Case LLP or Pachulski Stang Ziehl & Jones LLP shall serve as counsel to the Litigation Trust, the Litigation Trustee, or the Litigation Trust Advisory Board.

| | |
|---|---|
| | and expenses) of the Litigation Trust; provided that, if the Litigation Trustee determines in good faith that the Litigation Trust Funding is no longer necessary to cover such costs and expenses (including, any advisor fees and expenses) of the Litigation Trust, then the Litigation Trustee shall be entitled to distribute the Cash consistent with its fiduciary duties; and (z) the Litigation Trust shall be precluded from raising financing, including any litigation financing, unless such financing is on market terms, and an equal opportunity to participate in such financing is offered on the same terms and on a *pro rata* basis to all holders of beneficial interests in the Litigation Trust. |
| **Releases** | The Amended Plan shall include releases and exculpations on substantially the same terms as in the *Seventh Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No. 1233], provided that such releases shall be modified to incorporate this Settlement, including: (i) to include the individuals identified in the report of the Freedom HoldCo Independent Director and the members of the Freedom Lender Group and their respective Related Parties as Released Parties; (ii) to provide that all releases under the Amended Plan shall be subject to customary carve outs for Claims and Causes of Action arising from willful misconduct, actual fraud, and gross negligence; (iii) to exclude from such releases all advisors of the Debtors not retained by the Debtors as of the Confirmation Date; and (iv) to make any other modifications as may be agreed by the Debtors, the Freedom Lender Group, the Ad Hoc Group and the Creditors' Committee.<br><br>The Litigation Trustee is authorized to pursue any Permitted Litigation Claims, including Claims and Causes Action against former directors, officers, employees, and advisors of the Debtors in accordance with the terms of the Amended Plan and the Litigation Trust Agreement. The Parties agree that the Litigation Trust shall have access to the D&O Liability Insurance Policies in connection with the Litigation Trust's pursuit of Permitted Litigation Claims, and that the releases of the individuals identified in the report of the Freedom HoldCo Independent Director shall not be construed to limit the Litigation Trust's pursuit of the D&O Liability Insurance Policies with respect to Permitted Litigation Claims.<br><br>All Claims and Causes of Action arising prior to the Effective Date between and among the Debtors, the members of Freedom Lender Group, the members of the Ad Hoc Group, and the Creditors' Committee shall be settled and released as of the Effective Date; provided, for the avoidance of doubt, that nothing herein shall settle or release any DIP Claims (except for any DIP Claims against the Freedom HoldCo Debtors, which shall be waived; provided, for the avoidance of doubt, that the full amount of DIP Claims shall still be assertable against the other Debtors), Prepetition HoldCo Loan Claims, Prepetition First Lien Loan Claims, Prepetition Second Lien Loan Claims or OpCo General Unsecured Claims against the Debtors; provided, further, that if Professional Fee Claims of the Professional Persons of the Creditors' Committee exceed $16 million in total fees and expenses, the Freedom Lender Group shall retain the right to object to the Professional Fee Claims of the Professional Persons of the Creditors' Committee. |
| **Other** | The terms of this Settlement are contingent upon the Debtors filing the Amended Plan and (i) each of the members of the Freedom Lender Group (x) irrevocably voting in favor of the Amended Plan (including the mutual releases set forth |

4

| | therein) and opting in to the Third-Party Release (as modified herein) on account of all of their Claims and in all capacities, and (y) withdrawing or permanently staying all litigation related to the Debtors commenced or initiated by the Freedom Lender Group, including, without limitation, (1) all plan-related litigation, (2) the *Motion of OpCo 2L Agent and Ad Hoc Group of Second Lien Lenders for Allowance of a Superpriority Administrative Expense Claim* [Docket No. 978], (3) the appeal of the Final DIP Order in *Freedom Lender Group v. Franchise Group, Inc., et al.*, Case No. 24-1404 (D. Del. 2024), (4) the appeal of the Critical Vendors Order in *Freedom Lender Group v. Franchise Group, Inc., et al.*, Case No. 24-1403 (D. Del. 2024), (5) the appeal of the Bidding Procedures Order in *Freedom Lender Group v. Franchise Group, Inc., et al.*, Case No. 24-1405 (D. Del. 2024), and (6) the appeal of the Exclusivity Termination Order in *Freedom Lender Group v. Franchise Group, Inc., et al.*, Case No. 24-1394 (D. Del. 2024), (ii) the Creditors' Committee withdrawing or permanently staying all litigation related to the Debtors or the Freedom Lender Group commenced or initiated by the Creditors' Committee, including (1) the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Standing and Authorizing the Prosecution of Certain Challenge Claims on Behalf of the Bankruptcy Estates* [Docket No. 855] and (2) the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting the Committee Leave, Standing, and Authority to Commence, Prosecute and Settle Certain Claims on Behalf of the OpCo Debtors' Estates* [Docket No. 1200] and (iii) the Ad Hoc Group (x) irrevocably voting in favor of the Amended Plan (including the mutual releases set forth therein) and opting in to the Third-Party Release (as modified herein) on account of all of their Claims and in all capacities, and (y) withdrawing or permanently staying, or directing the First Lien Credit Agreement Agent to withdraw or permanently stay, all litigation related to the Debtors, the Second Lien Credit Agreement Agent, or the Freedom Lender Group commenced or initiated by the Ad Hoc Group or the First Lien Credit Agreement Agent, including the adversary proceeding filed by the First Lien Credit Agreement Agent against the Second Lien Credit Agreement Agent on March 23, 2025. |
| | The Ad Hoc Group and the Debtors agree that the Amended Plan will be deemed to be the "Plan" under, and as defined in, the Restructuring Support Agreement. |
| | All Parties shall use commercially reasonable efforts to minimize fees and expenses of their respective advisors and to stay all litigation-related work streams; for the avoidance of doubt, the members of the Freedom Lender Group shall be solely responsible for the fees and expenses of the advisors to the Freedom Lender Group. |
| | The Parties agree that no Party shall seek an Administrative Expense Claim related to substantial contribution, pursuant to section 503(b)(3)(D) of the Bankruptcy Code or otherwise. |

[*Signature Pages Follow.*]

IN WITNESS WHEREOF, the Debtors, the Freedom Lender Group, the Ad Hoc Group consisting of Required Consenting First Lien Lenders, and the Creditors' Committee have executed this Term Sheet by signature of their counsel below as of the date and year first written above.

Dated: April 17, 2025

| /s/  Joshua A. Sussberg | /s/  Bradford J. Sandler |
|---|---|
| **KIRKLAND & ELLIS LLP** | **PACHULSKI STANG ZIEHL & JONES LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Bradford J. Sandler, Esq. |
| Joshua A. Sussberg, P.C. (admitted *pro hac vice*) | Colin R. Robinson, Esq. |
| Nicole L. Greenblatt, P.C. (admitted *pro hac vice*) | 919 North Market Street, 17th Floor |
| Derek I. Hunter (admitted *pro hac vice*) | P.O. Box 8705 |
| 601 Lexington Avenue | Wilmington, DE 19899-8705 (Courier 19801) |
| New York, New York 10022 | Telephone:     (302) 652-4100 |
| Telephone:     (212) 446-4800 | Facsimile:     (302) 652-4400 |
| Facsimile:     (212) 446-4900 | Email:             bsandler@pszjlaw.com |
| Email:            joshua.sussberg@kirkland.com | crobinson@pszjlaw.com |
| nicole.greenblatt@kirkland.com | |
| derek.hunter@kirkland.com | -and- |
| | |
| -and- | Robert J. Feinstein, Esq. (admitted *pro hac vice*) |
| | Alan J. Kornfeld, Esq. (admitted *pro hac vice*) |
| Mark McKane, P.C. (admitted *pro hac vice*) | Theodore S. Heckel, Esq. (admitted *pro hac vice*) |
| 555 California Street | 780 Third Avenue, 34th Floor |
| San Francisco, California 94104 | New York, NY 10017 |
| Telephone:     (415) 439-1400 | Telephone:     (212) 561-7700 |
| Facsimile:     (415) 439-1500 | Facsimile:     (212) 561-7777 |
| Email:            mark.mckane@kirkland.com | Email: :          rfeinstein@pszjlw.com |
| | akornfeld@pszjlaw.com |
| *Co-Counsel to the Debtors and Debtors in Possession* | theckel@pszjlaw.com |
| | |
| | *Counsel to the Creditors' Committee* |

[*Signature Page to Settlement Term Sheet*]

| | |
|---|---|
| */s/  Jayme T. Goldstein* | */s/  Thomas Lauria* |
| **PAUL HASTINGS LLP** | **WHITE & CASE LLP** |
| Jayme T. Goldstein (admitted *pro hac vice*) | Thomas Lauria (admitted *pro hac vice*) |
| Daniel A. Fliman (admitted *pro hac vice*) | Southeast Financial Center |
| Jeremy D. Evans (admitted *pro hac vice*) | 200 South Biscayne Boulevard, Suite 4900 |
| Isaac S. Sasson (admitted *pro hac vice*) | Miami, FL 33131 |
| 200 Park Avenue | Telephone: (305) 371-2700 |
| New York, New York 10166 | Facsimile: (305) 358-5744 |
| Telephone: (212) 318-6000 | Email: tlauria@whitecase.com |
| Facsimile: (212) 319-4090 | |
| Email: jaymegoldstein@paulhastings.com | -and- |
| danfliman@paulhastings.com | |
| jeremyevans@paulhastings.com | J. Christopher Shore (admitted *pro hac vice*) |
| isaacsasson@paulhastings.com | Andrew Zatz (admitted *pro hac vice*) |
| | Samuel P. Hershey (admitted *pro hac vice*) |
| -and- | Erin Smith (admitted *pro hac vice*) |
| | Brett Bakemeyer (admitted *pro hac vice*) |
| Nicholas A. Bassett (admitted *pro hac vice*) | 1221 Avenue of the Americas |
| 2050 M Street NW | New York, NY 10020 |
| Washington, DC 20036 | Telephone: (212) 819-8200 |
| Telephone: (202) 551-1700 | Facsimile: (212) 354-8113 |
| Facsimile: (202) 551-1705 | Email: cshore@whitecase.com |
| Email: nicholasbassett@paulhastings.com | azatz@whitecase.com |
| | sam.hershey@whitecase.com |
| | erin.smith@whitecase.com |
| | brett.bakemeyer@whitecase.com |
| | |
| *Counsel to the Ad Hoc Group of First Lien Lenders* | *Counsel to the Freedom Lender Group* |

[*Signature Page to Settlement Term Sheet*]