## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRANCHISE GROUP, INC., *et al.*, | ) Case No. 24-12480 (LSS) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) **Related to Docket Nos. 581, 1019, 1233 and 1312** |

**COMBINED LIMITED OBJECTION OF BERAL, LLLP AND LAUREL LAKES, LLC TO (A) THE DEBTORS' PROPOSED PLAN [D.I. 1312]; AND (B) THE DEBTORS' MOTION FOR ENTRY OF AN ORDER, *INTER ALIA*, AUTHORIZING FRANCHISE GROUP INTERMEDIATE V, LLC TO ENTER INTO AND PERFORM ITS OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT [D.I. 1283]**

Beral LLLP (the "Beral Landlord") and Laurel Lakes, LLC (the "Laurel Landlord," together with Beral, the "Landlords"), by and through their undersigned counsel, hereby file this limited objection to (A) the *Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [D.I. 1312] (as may be further amended, the "Plan") and (A) the *Debtors'*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters are located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

*Motion for Entry of an Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter Into and Perform Its Obligations Under the Asset Purchase Agreement , (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1283] (the "Sale Motion").[2] In support hereof, the Landlords state as follows:

## BACKGROUND

1.    On November 3, 2024, Franchise Group, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") filed voluntary petitions (collectively, the "Chapter 11 Cases") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.    Pursuant to an Agreement of Lease dated July 24, 2024, as such lease may have been amended (the "Laurel Lease") between Laurel Landlord as landlord and debtor Vitamin Shoppe Industries, LLC (the "Debtor") as tenant, the Debtor leases the premises at Laurel Lakes Centre, 14398 Baltimore Avenue, Laurel, MD 20707 (the "Laurel Premises").

3.    The Laurel Lease provides that the Debtor shall not suffer to be created any lien against the Laurel Premises and requires the Debtor to timely obtain the discharge or satisfaction of any such liens. *See* Laurel Lease, § 12.07.

4.    Pursuant to a lease dated July 1, 2010, as amended (the "Beral Lease", together with the Laurel Lakes Lease, the "Leases") between Beral Landlord as landlord and the Debtor as

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the Sale Motion.

55446539.1

tenant, the Debtor leases the premises at 631 Baltimore Boulevard, Westminster, MD 21157 (the "<u>Beral Premises</u>," with the Laurel Premises, the "<u>Premises</u>").

5.    Both the Laurel Premises and the Beral Premises are located in "shopping centers" as that term is used in 11 U.S.C. § 365(b)(3).

6.    On December 30, 2024, the Landlords served and filed the *Limited Objection of Beral, LLLP and Laurel Lakes, LLC to Notice of Possible Assumption and Assignment and Cure Costs with Respect to Executory Contracts and Unexpired Leases* [D.I. 581], which is incorporated by reference herein.

7.    Pursuant to the Beral Lease, the Debtor is responsible for its pro rata portion of "Common Area Costs," including water charges.  *See* Beral Lease, § 6.03.   The amount presently due and owning by the Debtor for water is $974.27 per the invoices attached at **Exhibit A** (the "<u>Water Invoices</u>").

8.    The Leases impose obligations on the Debtor to indemnify the Landlords for, *inter alia*, all expenses including attorneys' fees in connection with any loss of life, personal injury or property damage occasioned in whole or in part by the Debtor or its agents.  *See* Leases, § 7.05.

9.    The Leases also provide that the Debtor must pay its *pro rata* share of any amounts by which real estate taxes or CAM charges exceed the estimated annual amounts, pursuant to an end-of-year reconciliation. *See* Leases, Article 5.

10.    The Leases further provide that the Debtor is responsible for all costs incurred by the Landlords in vindicating their rights under the Leases, including attorney's fees and legal costs. See Leases, § 18.22.  In the course of this bankruptcy case, the Landlords have incurred attorney's fees and costs in order to assert their rights under the Leases.

55446539.1

11.     As detailed in the Landlords' prior limited objection, several subcontractors performing services for the Debtor at the Laurel Premises have attempted to lien, or have asserted the right to file liens against, the Laurel Premises for nonpayment.  Documentation regarding the foregoing, to date is attached hereto at **Exhibit B**.[3]  To date, the Debtors have cooperated with the Laurel Landlord in disputing these subcontractors' claims and alleged rights to lien the Laurel Premises and/or the Laurel Lease, but it is not clear that these parties have agreed to stand down.

## I.       Treatment of the Leases under the Plan

12.     On April 25, 2025, the Debtors filed their proposed Plan.  On February 21, 2025, the Court entered the *Order (I) Approving the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation, (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures, and (IV) Granting Related Relief* [D.I. 1019] and on April 26, 2025 the Court entered the *Order (I) Approving the Form, Content, and Manner of Notice of the Disclosure Statement Supplement, (II) Approving Certain Deadlines and Procedures in Connection with Confirmation, and (III) Granting Related Relief* [D.I. 1322] (collectively, the "Voting Procedures Order"), pursuant to which the Court established, *inter alia*, May 7, 2025 as the Plan Voting Deadline and the Plan Objection Deadline, March 26, 2025 as the deadline to file the Plan Supplement, and May 20, 2025 as the Confirmation Hearing date.

---

[3]      In addition to the documents attached hereto at Exhibit B, the Laurel Landlord understands that Dominguez Construction Company, Inc. also sent a notice of intent to file lien dated December 4, 2024.  A copy of the foregoing notice should be in the Debtors' possession.

13.    Consistent with the Voting Procedures Order, on March 27, 2027, the Debtors filed *Notice of Filing of Plan Supplement* [D.I. 1182] ("Plan Supplement"). The Plan Supplement included a Rejected Contracts/Lease List, which contains a list of executory contracts and unexpired leases intended to be rejected pursuant to the Plan.

14.    The Plan Supplement did not include an Assumed Contracts List, and notwithstanding any provisions in Plan or Voting Procedures Order to the contrary, the Landlords understand that the Debtors do not intend to file such a list.  Rather, pursuant to the Plan, any contracts or leases that are *not* on the Rejected Contracts/Lease List, or that otherwise have not been previously assumed or rejected, will be deemed assumed as of the Effective Date.  *See* Plan, at § 10.1.

15.    The Leases are not reflected on the Rejected Contracts/Lease List and, as such, the Landlords anticipate that the Debtors will assume the Leases as of the Effective Date or attempt to assume and assign the Lease pursuant to the Sale Motion as discussed below.

## II.    The Sale Motion

16.    On April 16, 2025, the Debtors filed the Sale Motion, seeking, *inter alia*, authority to sell the assets related to the Vitamin Shoppe business to TVS Buyer, LLC (the "Buyer"), including the assumption and assignment of certain leases.  The Leases are included the schedule of "Purchased Leases" proposed to be assumed and assigned to the Buyer.  The "Cure Amount" listed for the Laurel Lakes Lease is $2,500.  The "Cure Amount" listed for the Beral Lease is $0.00.

17.    There are several provisions of the proposed order granting the Sale Motion (the "Proposed Sale Order") that are problematic, including:

    a.    The process for the payment of Cure Amounts for Purchased Leases begins at paragraph 23 of the Proposed Sale Order.  While unclear, it appears that

the Proposed Sale Order would permit a lease to be assumed and assigned over a timely Cure Amount objection, but there is no requirement that the Debtors escrow or segregate the full amount of any disputed Cure Amount;

b.    Paragraph 18 of the Proposed Sale Order improperly provides that counterparties to Purchased Leases are "deemed to have consented to the assumption and assignment" of such Purchased Leases;

c.    Paragraph 19 of the Proposed Sale Order improperly purports to enjoin counterparties to Purchased Leases from asserting any claim "arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date;" and

d.    Paragraph 21 of the Proposed Sale Order improperly purports to include an injunction requiring counterparties to Purchased Leases to "expeditiously execute and deliver, upon the reasonable request of the Buyer, and shall not charge the Debtors or the buyers for any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party to effectuate the applicable transfers in connection with the Sale."

## LIMITED OBJECTION

18.    While the Landlords, generally, do not take issue with the assumption or the assumption and assignment of the Leases, the Landlords require certainty that the Plan, any proposed order confirming the Plan (a proposed form of which has not yet been filed) (the "Proposed Confirmation Order"), the Asset Purchase Agreement (the "APA") with the Buyer or the Sale Order will not cut off any rights of the Landlords under the Leases.

55446539.1

19.     A debtor's assumption of a contract or lease must be *cum onere* – including all of the conditions, liabilities and obligations as well as the benefits of such contract or lease. *See N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 531 (1984) (a debtor is required to assume a contract "*cum onere*"); *In re Fleming Companies, Inc.,* 499 F.3d 300, 308 (3d Cir. 2007) (same). As such, the Debtors may not, through language in the Plan, the Proposed Confirmation Order, the Proposed Sale Order or otherwise, modify or eliminate rights otherwise granted to landlords under their leases, including (a) the obligation to satisfy or discharge any liens, including mechanics' liens against the Premises and (b) rights for indemnification or contribution arising against the Debtors under such leases.

20.     In particular, notwithstanding any provision in the Plan, any Proposed Confirmation Order, the APA or the Proposed Sale Order to the contrary, any assumption or assumption and assignment of the Leases by the Debtors must be subject to (a) applicable reciprocal easement agreements (or similar agreements) and other restrictive covenants applicable to the shopping centers, (b) obligations to pay all accruing or accrued but unbilled charges or obligations due under the Leases, including un-billed year-end adjustments and reconciliations, which may come due in the future in accordance with the terms of the Leases, regardless of when they arose, (c) obligations to satisfy or discharge any liens, including mechanics' liens, against the Premises or any improvements or additions thereto; (d) any contractual indemnification obligations to indemnify and hold the Landlords harmless with regard to claims for personal injuries or damages at the leased premises or shopping center that arise from the Debtors' use and occupancy of the premises prior to assumption, but which may not be known to the Landlords as of the time of the assumption, and (e) and any rights of setoff to which the Landlords may be entitled under the Leases.

21.     Insofar as the Plan, any Proposed Confirmation Order, the APA or the Proposed Sale Order contain provisions that appear to improperly cut off these rights and obligations, language should be added to the Proposed Confirmation Order or the Proposed Sale Order to make clear that assumption or assumption and assignment of the Leases is consistent with the terms of the Leases and does not cut off obligations arising thereunder.

22.     To address the Landlords' concerns, the Landlords respectfully request that language similar to the below be added to the Confirmation Order or the Sale Order, as applicable:

> Notwithstanding any provisions to the contrary in the APA or this Sale Order [the Plan or this Confirmation Order], assumption of a Purchased Lease [Assumed Contract] pursuant to the APA [Plan] shall not alter the Buyer's [Debtors' or the Reorganized Debtors'] responsibility for all obligations under such Purchased Lease [Assumed Contract], *cum onere*, including, without limitation, liabilities for any defaults under such Purchased Lease [Assumed Contract], in each case arising or occurring after such assumption, and for payment or performance of any and all obligations under such Purchased Lease [Assumed Contract] arising or occurring after such assumption when due in accordance with the terms of such Purchased Lease [Assumed Contracts] (irrespective of whether such obligations accrued before, on, or after assumption of the Purchased Lease [Assumed Contract]), including with respect to (a) claims for indemnification, (b) obligations to satisfy or discharge any liens, including mechanics' liens, against the Purchased Lease premises or any improvements or additions thereto, and (c) year-end adjustment and reconciliation amounts that become due or accrue after the assignment, in each case subject to the terms and conditions of the Purchased Lease [Assumed Contract], and subject to any defenses provided by such Purchased Contract [Assumed Contract] and applicable non-bankruptcy law and unless otherwise agreed with the counterparty to the Purchased Lease [Assumed Contract].

> Notwithstanding any provisions to the contrary in the APA or this Sale Order [the Plan or this Confirmation Order], all setoff rights of counterparties to such Purchased Leases [Assumed Contracts] and/or its affiliates are fully preserved.

23.     The Landlords further object to the assumption or the assumption and assignment of the Leases absent payment of the correct amounts required to be paid pursuant to 11 U.S.C. § 365(b)(1).  With respect to the Beral Lease, the Debtors owe the Water Invoices.  Through January

- 8 -

27, 2025, the Beral Landlord had agreed to compromise its claims for attorneys' fees at $500. Since that date, the Beral Landlord has incurred additional attorney's fees and costs of $2,291, such that the total amount due for the Beral Landlord under 11 U.S.C. §365(b)(1) is $3,765.27 as of the date of this objection. Redacted copies of the Beral Landlord's legal invoices are attached hereto at **Exhibit C**.

24.      With respect to the Laurel Lease, through January 27, 2025, the Laurel Landlord had agreed to compromise its claims for attorneys' fees at $2,500.  Since that date, the Laurel Landlord has incurred additional attorneys' fees of 13,518.38 (most of which relate to the threatened mechanics' liens), such that the total amount due for the Laurel Lease under 11 U.S.C. §365(b)(1) is $16,018.38 as of the date of this objection.  Copies of the Laurel Landlord's legal invoices are attached hereto at **Exhibit D**.

25.      The Landlords object to any process for the assumption or assumption and assignment of the Leases that would permit the Leases to be assumed or assumed and assigned over the Landlords' Cure Amount objection without requiring the Debtors to escrow or segregate disputed Cure Amounts.  Absent the segregation or escrow of disputed Cure Amounts, there is a risk that the Leases could be assumed or assumed and assigned without complying with 11 U.S.C. §365(b)(1).

26.      The Landlords object to paragraph 18 of the Proposed Sale Order, as parties who filed a response or objection to the Sale Motion should not be deemed to "consent" to any relief inconsistent with their response or objection.

27.      Finally, the Debtors object to the injunctive provisions of paragraph 21 of the Proposed Sale Order.  While the Landlords have no issue with providing reasonable cooperation, they should not be compelled to do so.  Moreover, to the extent any fees or costs are incurred in

cooperating with the Buyer, those fees and costs should be borne by the Debtors or the Buyer and not forced upon the Landlords.

## RESERVATION OF RIGHTS

28.    Nothing contained herein is intended to be, or should be construed as, a waiver by the Landlords of any other rights under the Leases, the Bankruptcy Code, or applicable law.  The Landlords expressly reserve all such rights, including the right to supplement and/or amend this Limited Objection and to assert any additional objections to the proposed assumption, or assumption and assignment, of the Leases.  Further, the Landlords hereby join in any well founded objections filed by any other landlords.

## CONCLUSION

**WHEREFORE**, the Landlords respectfully ask the Court to (a) deny confirmation of the Plan or deny the Sale Motion to the extent the relief requested by the Debtors is inconsistent with this limited objection and (b) grant the Landlords such relief that is just and proper.

Dated:  April 28, 2025

**SAUL EWING LLP**

*/s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6840
Email: mark.minuti@saul.com

*Attorneys for Beral LLLP and Laurel Lakes, LLC*

55446539.1