# Exhibit A

# LEASE EXTENSION & MODIFICATION AGREEMENT

AGREEMENT dated the 28TH day of October, 2004, by and between Walt Whitman Road, LLC the successor to Gerald Kessler c/o Natural Organics, 548 Broadhollow Road, Melville, New York 11747, hereinafter referred to as "Landlord", and Vitamin Shoppe Industries, Inc. with offices at 2101 91st Street, North Bergen, New Jersey 07047, hereinafter referred to as "Tenant".

WHEREAS, Landlord and Tenant entered into a Lease hereinafter referred to as the "Lease", dated *June 1, 1995*, commencing *June 1, 1995* and expiring *May 31, 2005*, for premises known as 191 Walt Whitman Road, Huntington, New York.

WHEREAS, Landlord and Tenant are desirous of extending and modifying the terms and conditions of said Lease for an additional period of Ten (*10*) years commencing *June 1, 2005* and expiring *May 31, 2015* upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants of the parties hereto, it is hereby agreed as follows:

1) The Lease dated *June 1, 1995* is hereby extended for a period of Ten (*10*) years so that the commencement period for the terms and conditions of this Lease Extension and Modification Agreement shall be *June 1, 2005* and will expire on *May 31, 2015*.

2) The Lease is hereby modified to the extent that:
   a. The base minimum rental for the period *June 1, 2005* to *May 31, 2010* shall be the annual sum of *$210,457.32* payable in equal monthly installments of *$17,538.11* on the first day of each month in advance.
   b. The base minimum rental for the period *June 1, 2010* to *May 31, 2015* shall be the annual sum of *$231,503.04* payable in equal monthly installments of *$19,291.92* on the first day of each month in advance.

3) The base year for increase in real estate taxes shall remain at the fiscal year *1995/1996* and the base year for increase in insurance premiums shall remain at the cost of insurance for the year 1995.

4) Tenant acknowledges that it is the existing Tenant at the demised premises, has assumed the obligations of Tenant, pursuant to the Lease, and agrees to continue to occupy the premises herein in its "as is" condition, without any representations by or work performed by Landlord.

5) Except as contained in this Lease Extension and Modification Agreement, in all other respects the aforesaid Lease shall, in all its provisions, remain the same and be incorporated as the Lease for the extended period herein.

6) Tenant shall continue to make its rent payment to GK Real Estate, which is the manager of the property until such time as Landlord notifies Tenant in writing of a different payee for rents.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the undersigned have executed this Lease Extension and Modification Agreement as of date and year first above-written.

WALT WHITMAN ROAD, L.L.C.

By: Gerald Kessler Landlord

VITAMIN SHOPPE INDUSTRIES, INC.

By: [signature] Tenant

Page 13

**STANDARD FORM OF STORE LEASE**
**The Real Estate Board of New York, Inc.**

5/5/80 B

**Agreement of Lease,** made as of this 1st day of June 19 95, between GERALD KESSLER c/o NATURAL ORGANICS, INC., 548 Broadhollow Road, Melville, New York 11747 party of the first part, hereinafter referred to as OWNER, and VITAMIN SHOPPE INDUSTRIES, INC., with offices at 4700 West Side Avenue, North Bergen, New Jersey 07047 party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner the first floor of Premises 191 Walt Whitman Road, Huntington, New York, for retail use only and the second floor for storage only in conjunction with the first floor use. Owner specifically reserves to itself the basement area and the elevator and such area and access thereto is excluded from the lease. Landlord shall grant Tenant access to the basement utility room. Landlord* in the building known as 191 Walt Whitman Road, Huntington, New York in the ~~Borough of~~ County of Suffolk, State of New York, for the term of ten (10) years (or until such term shall sooner cease and expire as hereinafter provided) to commence on the 1st day of June, nineteen hundred and ninety-five, and to end on the 31st day of May, ~~nineteen hundred and~~ two thousand five both dates inclusive, at an annual rental rate of

See Paragraph "43" of Rider to this Lease

*shall not permit the said basement space to be used for cooking or to emit any noxious odors or for a purpose that materially interferes with Tenant's use of the premises leased to it.

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal), and except as otherwise provided in this lease.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby convenant as follows:

**Rent** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy** 2. Tenant shall use and occupy demised premises for retail sale of vitamins and vitamin related items and other retail health related items

**structural and load bearing portions of the building and the HVAC and electrical systems not exclusively servicing the demised premises,

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workman's compensation, general liability, personal and property damage insurance as Owner may reasonably require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within thirty ~~ten~~ days thereafter, after notice at Tenant's expense, by filing the bond required by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner in Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

**Repairs** 4. Except for roof and exterior walls, ** Tenant shall maintain and repair ~~the public portions of~~ the building, both exterior and interior, **** and parking area & driveways ~~except that if~~ Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance and shall cause the same to be operated in a good and workmanlike manner and shall make all repairs thereto necessary to keep same in good order and condition, *** at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminuation of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. The provisions of this article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty which are dealt with in article 9 hereof.

***reasonable wear and tear excepted

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and

****other than those portions of the Building excluded from this lease



COUNTY DEPARTMENT OF HEALTH SERVICES
Approval of Constructed Works
H.D. Ref. No. C04 87-48
Disposal and water supply facilities at this location have been inspected by this Department and are in compliance with these as built plans.
1990 Stephen A. Costa, P.E.
CHIEF OF GENERAL ENGINEERING SERVICES
GUARANTEES INDICATED HEREON SHALL RUN ONLY TO THE PERSON FOR WHOM THE SURVEY IS PREPARED, AND ON HIS BEHALF TO THE TITLE COMPANY, GOVERNMENTAL AGENCY AND LENDING INSTITUTION LISTED HEREON, AND TO THE ASSIGNEES OF THE LENDING INSTITUTION. GUARANTEES ARE NOT TRANSFERABLE TO ADDITIONAL INSTITUTIONS OR SUBSEQUENT OWNERS.
DRAWN M.M.
CHECKED
DATE 5-30-90
SEC.
BLK.
FILE NO.
JOB NO.
BITUM. PAVEMENT - PARKING AREA
PART OF PLOT A
N 7°00'00"E
140.22
SET P.K. NAIL
VITAMIN STORE
BOOK STORE
YOGURT SHOP
1 STORY MASONRY BUILDING
FIRST FLOOR El. 152.03
(RETAIL ESTABLISHMENT)
S 87°50'00"E
N 87°50'00"W
1 STORY CONC. BLOCK BLDG.
SEPTIC TANK
LEACHING POOL
CONC. WALK
PARKING
ASPHALT PAVEMENT
PLANTINGS
125.00
159.72
S 7°00'00"W
140.22
WALT WHTMAN RD.
(N.Y.S. ROUTE 110)
SOUTH BOUND TRAFFIC
4-87-048
ADD SANITARY DATA AUGUST 4, 1990
MAP OF PROPERTY
SITUATED AT
SOUTH HUNTINGTON
TOWN OF HUNTINGTON
SUFFOLK COUNTY, N.Y.
SURVEYED MAY 24, 1990
BALDWIN & CORNELIUS,
CIVIL ENGINEERS & SURVEYORS
PLAINVIEW, L.I., N.Y.
BALDWIN & CORNELIUS, P.C. CORPORATE SEAL 1980 NEW YORK
STATE OF NEW YORK CHARLES F. SCHACK No. 049030 LICENSED LAND SURVEYOR

regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, ~~whether or not~~ arising out of Tenant's ~~use or~~ manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease)*. Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises ~~issued by a body making fire insurance rates applicable to said premises~~ shall be prima facie ~~xxxxxxx~~ evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said premises. *Owner shall comply with applicable laws and ordinances applicable to the building or premises that are structural and are not related to the retail business or its operation.

**Subordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be selfoperative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers reasonably acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default after 5 days notice to Tenant in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant the actual cost to as additional rent therefor. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by Counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire and Other Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner, subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance and also, provided that such a policy can be obtained without additional premiums. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof. See Paragraph 68

**Eminent Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease, but Tenant shall be permitted ** **to make claim for its non-removable trade fixtures and equipment.

**Assignment, Mortgage, Etc.:** 11. Except as otherwise permitted under the lease, Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:** 12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant convenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building***. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

***except for the negligent acts of the Owner, its agents, employees or contractors

**Access to Premises:** 13. Upon reasonable prior notice, except for emergencies, Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the premises, following Tenant's failure to make repairs**** or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are within the walls, Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the

****after 15 day notice to cure except in the event of emergency

Rider to be added if necessary.

right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and may, during said six months period, place upon the premises the usual notice ~~"To Let" and~~ "For Sale" which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the premises,* Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property and such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building may be known. *upon 2 day prior notice except in case of emergency

~~**Vault, Vault Space, Area:** 14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.~~

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of, Articles 2 or 37 hereof, or of, the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations whether or not of record. except as set forth elsewhere in this lease.

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demise premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four per cent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such reletting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above. See Rider

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title II of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the premises within fifteen (15) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen 15 days notice upon Tenant specifying the nature of said default and upon the expiration of said fifteen 15 days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen 15 day period, and if Tenant shall not have diligently commenced curing such default within such fifteen 15 day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written three (3) days notice of cancellation of this lease upon Tenant, and upon the expiration of said three (3) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may on three day notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:** 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such reentry, dispossess and/or expiration. (b) Owner shall use best efforts to re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or convenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as reasonable legal expenses, attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's reasonable judgement, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant or any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner or Tenant from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:** 19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease,* then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten 10 days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages. *after notice and the expiration of the applicable grace or cure period

**No Representations by Owner:** 20. Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are

acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and* agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought. *except as otherwise set forth in this lease

**End of Term:** 21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear** excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holdiay in which case it shall expire at noon on the preceding business day. **and damage by an insured casualty

**Quiet Enjoyment:** 22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession) until after Owner shall have given Tenant written notice that the premises are substantially ready for Tenant's occupancy. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease. Tenant covenants and agrees that such occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except as to the covenant to pay rent. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24. The failure of Owner or Tenant to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by owner of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner or Tenant unless such waiver be in writing signed by Owner or Tenant. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding.

**Inability to Perform:** 26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption in connection with a National Emergency or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency, or when, in the judgement of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice. See Paragraph 52 of Rider

**Water Charges:** 28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measures Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises or any part thereof be supplied with water through a meter through which water is also supplied to other premises Tenant shall pay to Owner as additional rent, on the first day of each month, % ($ ) of the total meter charges, as Tenant's portion. Independently of and in addition to any of the remedies reserved to Owner hereinabove or elsewhere in this lease. Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:** 29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company. Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $ , on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Heat, Cleaning:** 30. [struck-out text] Tenant shall at Tenant's expense, keep demised premises clean and in order, to the reasonable satisfaction to Owner, and if demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect and shall be due and payable when

Space to be filled in or deleted.

rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to ~~such rules and~~ reasonable regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:** 31. Tenant has deposited with Owner the sum of $ 26,100.00 as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent. Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance. ~~Security shall not be interest bearing.~~ *

**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties of their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays (except such portion thereof as is covered by specific hours in Article 30 hereof), Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to H V A C service.

**Adjacent Excavation—Shoring:** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with ~~the~~ reasonable Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within ten (10) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:** 36. Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:** 37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so-called rubber goods shops, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal law §235.00.

**Estoppel Certificate:** 38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, and stating whether or not there exists any defaults by Owner under this lease, and, if so, specifying each such default.

**Successors and Assigns:** 39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns.

Space to be filled in or deleted.

Attached hereto and made a part hereof is a Rider containing Paragraphs "40 through "71".

**In Witness Whereof,** Owner and Tenant have respectively signed ~~and sealed~~ this lease as of the day and year first above written.

*The security deposit shall be placed in a segregated interest-bearing account and the name and account number of such account shall be given to Tenant. Except upon Tenant's default, the interest on said security deposit shall accrue for the benefit of Tenant, except for the administrative fee allowed Owner by law.

Witness for Owner: ............................................ CORP. SEAL

............................................ GERALD KESSLER Landlord [L.S.]

Witness for Tenant: VITAMIN SHOPPE INDUSTRIES, INC. CORP. SEAL

............................................ by: President Tenant [L.S.]

# ACKNOWLEDGMENTS

**CORPORATE OWNER**
**STATE OF NEW YORK,** ss.:
**County of**

On this day of , 19 , before me

personaly came
to me known, who being by me duly sworn, did depose and say that he resides

in :

that he is the of

the corporation described in and which executed the foregoing instrument, as OWNER: that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

.........................................................

**INDIVIDUAL OWNER**
**STATE OF NEW YORK,** ss.:
**County of**

On this day of , 19 , before me

personally came ,

to me known and known to me to be the individual
described in and who, as OWNER, executed the foregoing instrument and acknowledged to me that he executed the same.

.........................................................

**CORPORATE TENANT**
**STATE OF NEW YORK,** ss.:
**County of**

On this day of , 19 , before me

personaly came ,
to me known, who being by me duly sworn, did depose and say that he resides

in ;

that he is the of

the corporation described in and which executed the foregoing instrument, as TENANT; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

.........................................................

**INDIVIDUAL TENANT**
**STATE OF NEW YORK,** ss.:
**County of**

On this day of , 19 , before me

personally came ,

to me known and known to me to be the individual ,
described in and who, as TENANT, executed the foregoing instrument and acknowledged to me that he executed the same.

.........................................................

## RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

**1.** The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

**2.** If the premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

**3.** The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

**4.** Tenant shall not use, keep or permit to be used or kept any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations or interfere in any way with other Tenants or those having business therein.

**5.** No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premises if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises. In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant or Tenants violating this rule. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style acceptable to Owner.

**6.** No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. No Tenant shall lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

**7.** Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulatiohs or the lease of which these Rules and Regulations are a part.

**8.** Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays, and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom any Tenant requests same in writing. Each Tenant shall be responsible for all persons for whom he requests such pass and shall be liable to Owner for all acts of such person.

**9.** Owner shall have the right to prohibit any advertising by any Tenant which, in Owner's opinion, tends to impair the reputation of Owner or its desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

**10.** Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible or explosive fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

**11.** Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in setting sufficient in Owner's judgement to absorb and prevent vibration, noise and annoyance.

# GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached Lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment or, nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached Lease. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the Lease. As a further inducement to Owner to make the Lease Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the Lease or of this guaranty that Owner and the undersigned shall and do waive trial by jury.

.............................................................. Guarantor

Address

Premises

TO

STANDARD FORM OF

Store Lease

The Real Estate Board of New York, Inc.
©Copyright 1979. All Rights Reserved.
Reproduction in whole or in part prohibited.

Dated 19

Rent per Year

Rent per Month

Term
From
To

Drawn by .................. Checked by ..................

Entered by .................. Approved by ..................

RIDER TO LEASE
between

**LANDLORD:** GERALD KESSLER c/o NATURAL ORGANICS, INC., with offices at 548 Broadhollow Road, Melville, New York 11747
**TENANT:** VITAMIN SHOPPE INDUSTRIES, INC.
**PREMISES:** 191 Walt Whitman Road, Huntington, New York
**DATED:** June 1 , 1995

40. Taxes

As and for additional rent hereunder, Tenant shall pay two-thirds of all increases in real estate taxes of every nature and description whatsoever, which shall be levied against the demised premises and the building and land of which the demised premises shall be a part over the fiscal tax year 1995/96 or in the event there be a reduction in taxes, over said taxes as reduced. The taxes aforesaid shall be paid by Tenant as additional rent within thirty (30) days of the date Tenant is billed for same, together with a copy of tax bill. The payments hereunder shall be collectible by the Landlord with the same rights and remedies as apply to the payment of rent and shall be expressly collectible by Landlord with the same recourse and remedy as rent.*

The term "taxes" shall be deemed to include all real estate taxes and assessments, special or otherwise, and sewer levies or rents upon or with respect to the building and the land allocated to it, including all parking areas. If, due to any change in the method of taxation, any franchise, income, profit, sales, rental, use and occupancy or other tax shall be substituted for, or levied against Landlord or any owner of the building and property herein, in lieu of any real estate taxes, assessments or sewer levies or rents upon or with respect to the real property, such tax shall be included in the term "taxes" for the purpose of this lease agreement, and Tenant shall pay two-thirds of all increases in taxes.

41. Insurance

(a) Tenant shall pay to Landlord, as additional rent herein, two-thirds of all increases in the cost of insurance premiums (including liability insurance, fire insurance with extended coverage, vandalism, malicious mischief and rent insurance) for the building and property of which the demised premises forms a part. The insurance aforesaid shall be paid by Tenant as additional rent within ten (10) days of the date Tenant is billed for same. The payments hereunder shall be collectible by the Landlord with the same rights and remedies as apply to the payment of rent and shall be expressly collectible by Landlord with the same recourse and remedy as rent. Landlord will carry casualty insurance for a minimum of 80% of replacement value.

*As to any increase in taxes caused by the Landlord's 485 Business Tax Abatement Program, Tenant shall pay one-half of such taxes.

(b) If, as a result of the use and occupancy of Tenant or of any hazards caused by Tenant, the fire insurance and/or liability insurance premium, payable by the Landlord on the policy covering the entire building of which the demised premises are a part shall increase over the basic minimum premium therefore, the Tenant agrees to reimburse the Landlord for the entire amount of any such increase as shall be directly allocable to the said Tenant's use and occupancy, and the amount of such increase in insurance premiums shall be collectible by the Landlord from the Tenant with the same remedies as of originally reserved as rent hereunder.

(c) The Tenant shall, at its own cost and expense, procure and maintain the following insurance policies during the term of this agreement and that the following provisions shall apply to all of said insurance:

(i) public liability insurance from a reputable company, which may be in the form of an Umbrella Policy, which policy shall be in the sum of not less than Two Million Dollars ($2,000,000.00) for injury to a person or persons, and Five Hundred Thousand Dollars ($500,000.00) property damage, and shall name both Landlord and Tenant as insured thereby; said policy shall be evidenced by a certificate deposited with the Landlord prior to the commencement of the term of this agreement. Upon failure of the Tenant to so deposit said policy on its own application therefore, the Landlord shall have the privilege but not the obligation to procure said insurance on its own application therefore, and the amount of the premium, if paid by the Landlord, shall be due and payable with the rent reserved hereunder, collectible with the same remedies as if originally reserved as rent hereunder. This insurance to be obtained by Tenant shall be deemed the primary insurance in the event of any claims against Tenant and Landlord.

(ii) Insurance against loss or damage to the equipment, fixtures, furnishings and stock in trade belonging to Tenant in and on the demised premises by fire and such other casualties as may be included in the broadest form of coverage from time to time available in an amount equal to their full insurable value. The Tenant shall look to its own insurance as its sole means of recovery for damages to its property and shall not look to the Landlord for recovery or compensation of any kind.

(iii) ~~Insurance against such other hazards and in such amounts as any mortgage lending institution holding a mortgage on the demised premises or the building and or property of which the demised premises forms a part, or mortgage lending institutions generally may, from time to~~

~~time, require in case of similar properties. Upon failure of the Tenant to so deposit said policy, on its own application therefore, the amount of the premium, if paid by the Landlord, shall be due and payable with the rent reserved hereunder, collectible with the same remedies as if originally reserved as rent hereunder.~~

(iv) Plate glass insurance covering the premises herein demised said policy shall name both Landlord and Tenant as insured thereby and the original policy shall be deposited with the Landlord at the commencement of the term of this agreement. Upon the failure of the Tenant to so deposit said policy, the Landlord shall have the privilege, but not the obligation, to procure said insurance on its own application therefore, and the amount of the premium, if paid by the Landlord, shall be due and payable with the rent installment next due and shall be considered as additional rent reserved hereunder, collectible with the same remedies as if originally reserved as rent hereunder. Notwithstanding the provisions of this Paragraph, Tenant may self insure.

(v) All liability policies shall name Landlord, and Tenant as insured parties, and shall, as directed by Landlord, contain a standard mortgage endorsement in favor of the holder of any mortgage which may at any time be a lien upon the demised premises or upon the building and property shall contain an express waiver of any right of subrogation against Landlord and Tenant.

(vi) Such insurance shall be issued by insurers of recognized responsibility, acceptable to the Landlord, licensed to do business in the State of New York for a term of not less than one (1) year in such form as shall be satisfactory to Landlord and shall provide that the insurance will not be cancelled or changed without not less than thirty (30) days prior written notice to Landlord or its designee, as aforesaid.

(vii) Prior to the commencement of the term of this agreement, a Certificate of Insurance providing the insurance coverage in the form required hereunder shall be delivered to Landlord with notation of premiums paid in full or other satisfactory evidence of such payment (unless Landlord requests that any such certificate be delivered to the holder of any mortgage, in which case Tenant shall deliver the certificate to such mortgagee and shall deliver to Landlord a certificate of the insurance carrier certifying that the certificate so delivered has been issued and is in effect and the duration thereof). At least thirty (30) days before any policy shall expire, Tenant shall deliver a replacement policy or certificate to Landlord, with evidence of premium payment in full (or to the mortgagee with a certificate to the Landlord).

(viii) Tenant and Landlord hereby waive all rights to subrogation against the Landlord and Tenant and will obtain a waiver in favor of the Landlord and Tenant in all its insurance. The Certificate of Insurance, furnished by the Tenant to the Landlord, and Landlord to Tenant shall contain a waiver of subrogation clause in favor of the Landlord and Tenant providing there is no additional premium for such waiver. However, Landlord and Tenant each reserve the right to pay such additional premium and obtain a waiver of subrogation.

42. Utilities and Repairs

(a) Except as otherwise provided in this lease, the parties agree that the Tenant shall bear the entire cost and expense of providing each of the following as shall be required in or for the demised premises: heat, hot water, water, janitor service, garbage removal, cleaning, gas, electricity, the pumping, cleaning and/or repair of any septic tank or cesspool or sewer appurtenant to the demised premises. Tenant shall service and maintain the heating plant and air conditioning in the premises and provide repairs and replacements at its own cost and expense and maintain an annual service contract on the heating and air conditioning. Upon the execution of this lease, Tenant shall make arrangements with the utility companies to open service in its own name and make the required security deposits with said utilities.

(b) The Tenant, at its own cost and expense, shall keep in good order and condition the demised premises, make all necessary repairs (including all exterior entrances and the inside and outside of all glass in the doors and windows and window moldings and frames including the equipment and appurtenances thereof) including painting, plastering, decorating, plumbing, heating, air conditioning, and electrical work, and all connections and installations as may be required, without regard to the cause or reason for the need of making such repairs and from whichever source such reason or need may arise, whether out of any conditions inside or outside of the demised premises, or the building of which it is a part,* The exterior walls and roof shall be the responsibility of Landlord except where the repairs are necessitated by the act of the Tenant, its agents, servants, employees or invitees. Tenant shall also maintain and keep in good order and appearance, neat and clean, the landscaping.

(c) Tenant further covenants that Tenant:

(i) will promptly replace, at its own expense, with glass of like kind and quality and plate glass door or window glass of the demised premises which may become cracked or broken;

(ii) will not use or permit the use of any apparatus, or sound reproduction or transmission, or any musical instrument in such manner that the sound so reproduced, transmitted or produced shall be audible beyond the confines of the premises;

*except where the cost of repairs is covered and paid for by an insured casualty.

(iii) will keep all mechanical apparatus free of vibrations and noise which may be transmitted beyond the confines of the premises;

(iv) will not cause or permit noises, objectionable odors or fumes to emanate or be dispelled from the premises;

(v) Tenant shall, at all times, keep the demised premises including the sidewalk area abutting the demised premises, the parking field and driveways clean and free of snow, ice, refuse, rubbish and dirt, and keep same in good order, condition and repair. Tenant shall deposit all its trash, rubbish and garbage in a properly enclosed dumpster of sufficient size and capacity, which dumpster shall be located in an area designated by Landlord. Tenant shall arrange for the regular pick-up at Tenant's expense of said trash and rubbish and shall keep the area at and about the dumpster free and clear of trash, rubbish, litter or debris. In no event shall Landlord be responsible or liable to Tenant in any way whatsoever, including, but not limited to, any loss of business to Tenant by virtue of Landlord's work, alterations or additions to the building or property, its parking field or driveways, which may cause the rerouting of vehicular traffic or the closing of the said parking field for periods during construction and/or alterations. Landlord will use its best efforts to minimize interference with Tenant's use and visibility of the premises and*

(vi) will not, without the consent in writing of Landlord, place or maintain any merchandise or other articles in any vestibule or entry of the premises, on the footwalk adjacent thereto, or elsewhere on the exterior thereof;

(vii) will keep the premises at a temperature sufficiently high to prevent the freezing of water and pipes and fixtures;

(viii) will not use the plumbing facilities for any other purpose than that for which they are constructed and will not permit any foreign substances of any kind to be thrown therein and the expense of repairing any breakage, stoppage, seepage or damage, whether occurring on or off the premises, resulting from a violation of this provision by Tenant or Tenant's employees, agents or invitees shall be borne by Tenant. All required grease traps and other plumbing traps shall be installed and kept clean and operable by Tenant at Tenant's own cost and expense;

(ix) will, notwithstanding anything to this lease to the contrary, be responsible for all repairs and replacements to the demised premises perpetrated by a burglary or attempted burglary, or any illegal or forcible entry into the demised premises whether from the roof or otherwise; except where the cost of repairs is covered and paid for by an insured coverage.

*Landlord shall not construct or place or permit to be constructed or placed any kiosk, structure, improvement or other in the parking area except as required by law.

(x) will make all non-structural repairs, alterations, additions or replacements to the demised premises required by and otherwise comply with any law or ordinance or any order or regulation of any public authority because of Tenant's use of the demised premises, shall procure any licenses and permits required for any such use and shall comply with all valid rules, regulations and recommendations of the Association of Fire Underwriters with respect to the use or occupancy of the premises by Tenant; and Tenant further agrees to supply, maintain, repair and replace, for the demised premises at Tenant's own cost and expense, any fire extinguishers or other fire prevention equipment and safety equipment required by the aforementioned rules, regulations or requirements as determined by Landlord, throughout the term of this lease or any renewal thereof. If capital improvements are made to the structure of the building which benefits the Landlord and which are mandated by law, then Landlord shall share in such exprenditures to the extent that the useful life or depreciable*

(xi) will conduct its business in the premises in all respects in a dignified manner and in accordance with high standards of store operation; and

(xii) will not make or permit to be made any alterations, improvements or additions to the demised premises; except that Tenant, may, with the prior written consent of Landlord, which shall not unreasonably be withheld, make any alterations, improvements or additions to the interior of the demised premises as do not impair the structure of the building and the existing interior improvements or their value, provided that all steps are taken as required by law to avoid the imposition of any mechanic's liens upon the demised premises and the work is performed in accordance with the requirements of any public authority, the Association of Fire Underwriters and Landlord's mortgagee. However, no approval shall be necessary for minor non-structural alterations, decorations or trade fixturing;

(xiii) The Tenant expressly covenants with the Landlord that the demised premises shall be fully equipped and furnished and in operation for business as of the date herein specified for the commencement of the term of this Lease Agreement and shall be open for business at all times during its normal business operation, except for vacation, decoration, alterations, not to exceed two (2) weeks or force majeure.

(xiv) it is specifically understood and agreed that the Tenant shall provide, at its own cost and expense, all lighting fixtures, bulbs and lamps which shall be required in the demised premises and upon the installation and annexation of such lighting fixtures, bulbs and lamps in the demised premises, the same shall immediately be deemed part of the realty and the property of the Landlord solely and exclusively thereafter, unless same are trade fixtures of Tenant.

*life (whichever is shorter) exceeds the full term of this lease. If Landlord is required to share in such expenditures, than Landlord's reasonable consent shall be required prior to such work. Landlord's obligation shall only be to the extent exceeding the term of the lease.

(xv) Tenant must maintain the rear door of the premises as a fire exit door and install an illuminated "exit" light above the door and maintain clear unobstructed passage to the rear for emergency existing. This door is not to be locked during operating business hours.

(xvi) Tenant is strictly forbidden to store wooden skids, boxes, trash or other debris outside the building.

(xvii) Tenant shall comply with all laws, ordinances and regulations pertaining to its operation and obtain all necessary permits, consents and/or approvals, including but not limited to discharge of wastes or materials into the sewers.

43. <u>Base Rent</u>

(a) Tenant shall pay the annual sum of $156,600.00, in equal monthly installments of $13,050.00, payable in advance on the first day of each and every month during the first year of the lease. However, no base rent shall be paid for the first and second months of this lease, June and July, 1995.

(b) Tenant shall pay the annual sum of $161,298.00 in equal monthly installments of $13,441.50 payable in advance on the first day of each and every month during the second year of the lease.

(c) Tenant shall pay the annual sum of $166,136.94 in equal monthly installments of $13,844.74 payable in advance on the first day of each and every month during the third year of the lease.

(d) Tenant shall pay the annual sum of $171,121.04 in equal monthly installments of $14,260.08 payable in advance on the first day of each and every month during the fourth year of the lease.

(e) Tenant shall pay the annual sum of $176,254.67 in equal monthly installments of $14,687.89 payable in advance on the first day of each and every month during the fifth year of the lease.

(f) Tenant shall pay the annual sum of $181,542.30 in equal monthly installments of $15,128.53 payable in advance on the first day of each and every month during the sixth year of the lease.

(g) Tenant shall pay the annual sum of $186,988.57 in equal monthly installments of $15,582.38 payable in advance on the first day of each and every month during the seventh year of the lease.

(h) Tenant shall pay the annual sum of $192,598.22 in equal monthly installments of $16,049.85 payable in advance on the first day of each and every month during the eighth year of the lease.

(i) Tenant shall pay the annual sum of $198,376.16 in equal monthly installments of $16,531.35 payable in advance on the first day of each and every month during the ninth year of the lease.

(j) Tenant shall pay the annual sum of $204,327.44 in equal monthly installments of $17,027.29 payable in advance on the first day of each and every month during the tenth year of the lease.

44. <u>Signs</u>

Tenant's exterior sign is to be located only in the space designated by Landlord and material and colors used will be subject to Landlord's consent not to be unreasonably withheld or delayed.

(a) said sign shall comply with all rules and regulations of any governing authorities having jurisdiction thereof;

(b) no sign may be placed or installed on the roof;

(c) said sign shall be erected only in such place and manner as reasonably prescribed by Landlord and as prescribed by applicable municipal authorities.

(d) said sign shall be installed without damage to the building and removed without damage to the building upon the expiration of the lease herein;

(e) said signs shall be subject to the prior written approval of the Landlord,*it being the intention of the Landlord that the signs to be erected by the Tenant shall be dignified in size, appearance and content; *not to be unreasonably withheld or delayed The tenant's standard colors shall be deemed acceptable.

(f) Tenant shall have the right to place its sign on the existing pylon at its own cost and expense xupxtoxanxareaxnotx toxexceedx70%xofxthexpylonxspacex Landlord reserves the right to a hanging sign beneath the pylon. However, if same cannot be legally used then Tenant agrees to allow a visible sign on the building in a visible location so that the public may be informed of such Tenant, ***

45. <u>Fixtures and Alterations</u>

(a) All fixtures installed by Tenant shall be new or completely reconditioned. Tenant shall not make or cause to be made any alterations, additions or improvements or install or cause to be installed any trade fixtures, exterior signs, floor covering, interior or exterior lighting, plumbing fixtures, shades or awnings or make any changes to the store front without first obtaining Landlord's written approval and consent.** Tenant shall present to the Landlord plans and specifications for such work at the time approval is sought. **not to be unreasonably withheld or delayed.

(b) All alterations, decorations, additions and improvements made by the Tenant, or made by the Landlord on the Tenant's behalf by agreement under this lease or an extension or renewal thereof, including all plumbing, heating, air conditioning and electrical

***said sign not to exceed 2 feet by 2 feet in size plus an arrow and is to be located on the front of the Building at the southerly end. In addition, an additional sign not to exceed 3 feet by 2 feet may be placed over the side door entrance to the basement.

work, fixtures or units, shall be deemed affixed to the property when made and shall belong to Landlord upon the termination or expiration of this Lease Agreement. Alterations, decorations, additions and improvements, plumbing, heating, air conditioning and electrical fixtures and units, shall not be removed from the premises. Upon expiration of this lease, or any renewal term thereof, the Tenant, upon request of Landlord, shall remove all such alterations, decorations, additions and improvements, except plumbing, heating, air conditioning, lighting fixtures and units, and restore the demised premises to its original condition. If the Tenant fails to remove such alterations, decorations, additions and improvements and does not restore the demised premises, then at Landlord's option, any such alterations, decorations, additions and improvements shall either become Landlord's property or Landlord may remove and dispose of them and restore the demised premises and in such event, Tenant shall pay the cost and expense thereof to Landlord as additional rent upon demand. Movable trade fixtures of Tenant may be removed by Tenant except for any plumbing, heating, air conditioning and electrical fixtures and installations and providing there be no damages to the premises. Decorations and movable trade fixtures not to be deemd affixed to the realty.

(c) Tenant shall promptly pay all contractors and materialman so as to minimize the possibility of a lien attaching to the leased premises, and should any such lien be made or filed, Tenant shall bond against and discharge the same within ~~ten~~ thirty (30) days after written request by Landlord.

(d) Tenant will not place or suffer to be placed or maintained on any exterior ~~door,~~ wall ~~or window~~ of the leased premises, any ~~sign,~~ awning or canopy, ~~or advertising matter~~ or other things of any kind, ~~and will not place or maintain any decoration, lettering or advertising matter on the glass of any window or door of the leased premises~~ without first obtaining Landlord's written approval and consent.* Tenant further agrees to maintain such ~~sign,~~ awning, canopy, ~~decoration, lettering, advertising matter~~ or other things as may be approved in good condition and repair at all times. *not to be unreasonably withheld or delayed.

(e) Tenant shall bear the responsibility and cost of obtaining all necessary permits and licenses required by local codes.

46. <u>Payments by Landlord</u>

It is mutually covenanted that if the Landlord shall reasonably pay or be compelled to pay any sum of money or shall reasonably perform any act or be compelled to perform any act, which act shall require the payment of any sum of money by reason of the failure of the Tenant to perform any one or more of the covenants herein

beyond the applicable grace period,
contained, /the sum or sums so paid by the Landlord, together with all interests, costs and damages, shall, after ten (10) days written notice and demand, be added to the rent installment next due and shall be collectible in the same manner and with the same remedies as if originally reserved as rent hereunder. Interest herein shall be charged at 2% per month, however, if any law does not allow said rate, then the interest, pursuant to this paragraph, shall be charged at the maximum legal rate.

47. Subordination

(a) Notwithstanding anything contained herein to the contrary with regard to the subordination of this lease, the parties hereto agree that this lease shall be subordinate to any mortgage now on the property or any mortgage that Landlord may obtain from a bank, insurance company or other lender. That any cancellation or surrender of this lease or any modification hereof which would have the effect of reducing the term or reducing rent payable hereunder or any prepayment or anticipation of rent hereunder without prior written approval of the mortgagee of the Landlord, if any, shall be invalid as to such mortgage. Landlord represents that there is currently no mortgage lien on the building.

(b) If an institution furnishing a mortgage on the demised premises requires a change or changes in this lease as a condition of such financing, and if the Tenant should refuse to agree hereto, the Landlord may terminate this lease any time, provided such changes shall not substantially alter the obligations of the parties each to the other, or to impose on the Tenant any conditions more burdensome than as otherwise exist hereunder.

(c) Landlord shall use his best efforts to obtain a non-disturbance agreement on Tenant's behalf from any future mortgagees.

48. Limit of Landlord's Liability

(a) The Landlord shall not be liable for damage or injury to a person or property unless prior written notice of any defect to the Landlord and sufficient time before such occurrence to have reasonably enabled the Landlord to correct such defect. Nothing herein contained shall impose any obligation on the Landlord to make repairs. The limit of Landlord's liability shall be limited to the extent of Landlord's interest in the real property of which the demised premises forms a part.

(b) Tenant shall look solely to the estate and property of Landlord in the land and buildings* comprising the demised premises for the collection of any judgment (or other judicial process) requiring the payment of money for Landlord in the event of any default or breach by Landlord with respect to any of the terms, covenants and conditions of this Lease to be observed and/or

*and proceeds therefrom

performed by Landlord, and no other property or asset of Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies in the event of a violation by Landlord of any of the above-specified provisions.

(c) The Landlord shall not be held liable for any damages or injury caused by or caused to any of the Tenant's employees, customers, invitees, etc. injured on any equipment, fixtures, machinery, furniture, appliances, etc. at Tenant's demised premises. The Tenant assumes all such liability and holds the Landlord harmless.

49. <u>Tenant's Certification</u>

~~The Tenant does~~ Each party hereby agrees that it will, at any time and from time to time upon ten (10) days' notice by the ~~Landlord~~ party, execute, acknowledge and deliver to the ~~Landlord~~ other party a statement in writing verifying that the lease or the lease as modified, as the case may be, represents the entire agreement between the parties further certifying that no rent has been paid in advance, and further whether there are any existing defenses or offsets which the Tenant or Tenant and* has against the enforcement of the lease by the Landlord. ~~The failure of the Tenant to do so comply with the foregoing shall be construed as authorizing of the Landlord as attorney-in-fact for the Tenant to execute such agreement.~~ *Landlord as the case may be.

50. <u>Failure to Pay Rent Promptly</u>

(a) Any sums of money required to be paid by the Tenant to the Landlord, in addition to the rent herein provided, shall be deemed additional rent and in the event Tenant fails to pay such additional rent, the Landlord shall be entitled to dispossess the Tenant by summary dispossess proceedings or any other remedy available to the Landlord, pursuant to the terms of this lease.

(b) In the event that the Landlord shall have to bring any action or proceedings against Tenant for the recovery of the money damages or for possession of the premises by reason of nonpayment of rent or additional rent by Tenant or by non-performance by Tenant of the terms and conditions of the lease herein or by reason of a breach of the lease herein by Tenant and the Landlord shall incur costs and expenses by reason thereof, such reasonable charges, including legal fees, shall be due and payable from the Tenant as additional rent and shall become immediately due and payable upon the incurment of same providing the Landlord prevails or the case is settled.

(c) There shall be a late charge of 2% of the monthly rent in the event Tenant shall not have paid its rent by the ~~fifth~~ tenth day

of the month. This charge shall be deemed additional rent and added to the rent for the month in which the rent shall be due and the Landlord shall have all rights with respect to said additional rent as it has for nonpayment of all other rent due under the terms of this lease.

~~(d) It is also understood and agreed that in the event the~~ Landlord shall at any time be required to commence summary proceedings for nonpayment of rent and the Tenant shall have failed to pay said rent prior to the return date set forth in the Notice of Petition in said summary proceedings, the Tenant shall thereafter deposit with the Landlord as additional one (1) month's security equal to the last month's rent of the lease term herein. Tenant shall be required to deposit said additional one (1) month's security in each instance in which summary proceedings are commenced for nonpayment of rent. The security deposited pursuant to this provision shall be in addition to any and all other ~~security required to be paid by Tenant under this lease.~~

51. <u>No Representations</u>

There are no representations, warranties, terms of obligations other than those expressed in this agreement. No variation of this lease shall be valid unless in writing and signed by the party to be charged. Any holding over by the Tenant after the term of this lease shall be unlawful and in no manner constitute a renewal or extension of this lease agreement.

52. <u>Notice</u>

Any notice by either party to the other shall be deemed duly given only if in writing and if delivered either personally or if such notice be posted by registered or certified mail, return receipt requested, addressed ~~(a) if~~ to the Tenant, ~~at the demised premises~~ and ~~(b) if~~ to the Landlord, at their ~~its~~ addresses hereinabove stated. If either party admits receipt of such notice, evidence thereof shall not be necessary. Either party shall be privilege to designate a substitute address for the giving of notice to it hereunder, by giving notice of such substitution, in accordance with the provisions of this paragraph. Notices are deemed received three (3) days after mailing. In any summary proceeding notice and/or service shall be deemed sufficient if served at the demised premises with a copy sent to Tenant at its address hereinabove stated.

53. <u>Unenforceability</u>

The invalidity or unenforceability of any portion of the within lease agreement shall in no way affect the validity or enforceability of any other provision hereof.

54.   <u>Typed Provisions Supersede</u>

Wherever in this lease there is any conflict between the provisions of any of the printed portions of the lease and the typewritten portions of the lease, typewritten provisions shall be deemed to supersede the printed provisions.


55.   <u>No Broker</u>

This lease agreement is entered into by the Landlord in reliance upon the express representation by the Tenant that no broker was involved in the transaction herein, and Tenant agrees to indemnify Landlord against and hold Landlord harmless from all claims for brokerage from any other broker (including cost of legal fees in connection therewith).


56.   <u>Acceptance of Rent From Others</u>

The acceptance of rent from any person, association, partnership or corporation other than the Tenant herein named, shall in no way be deemed to establish a tenancy with said person, association, partnership or corporation for making such payment, and shall, in no way, be deemed to relieve the Tenant herein from any and all obligations hereunder except to the extent of the rent paid or performance rendered.


57.   <u>Reletting After Default</u>

It is understood and agreed that in the event of a reletting of the premises by the Landlord after default by the Tenant and eviction of Tenant from the premises or other termination of the lease prior to the termination date thereof, the Tenant shall not be entitled to any portion of the excess rent, if any, which the Landlord may obtain from the new Tenant.   The Tenant, however, shall remain liable for any deficiency.


58.   <u>Premises "As Is"</u>

Tenant leases the demised premises in its existing condition*and Tenant agrees to accept same in its "As Is" condition without any work to be performed by the Landlord.
*broom clean, with all building systems in working order, from any violations and in compliance with all existing laws and regulations including the Americans with Disabilities Act of 1990, as amended.   (However, Tenant completely assumes any liability or responsibility for the lack of elevator facilities which elevator is excluded from this lease).

59. Tenant Obligation For Permits or Licenses

Tenant has the sole responsibility of obtaining all necessary permits of occupancy and doing business or any other permit or licenses required by all local and governmental agencies.

60. Jurisdiction

In any controversy involving Landlord and Tenant under this lease agreement, it is hereby agreed that the Courts of the State of New York, in and for the county of Suffolk, be deemed the jurisdiction for purposes of any controversy involving the lease herein and the Laws of the State of New York shall be applicable.

61. Upon Signing

Upon the signing of the lease herein, Tenant shall give to the Landlord in good funds the first month's rent in the sum of $13,050.00 and two month's rent as security in the sum of $26,100.00. Annually, Tenant shall deposit with Landlord as additional rent additional amounts so that Landlord will always have two month's rent as security.

62. Waivers and Changes

(a) The receipt of rent by the Landlord, with knowledge of any breach of this lease by Tenant or of any default on the part of the Tenant in the observance or performance of any of the conditions or covenants of this lease, shall not be deemed to be a waiver of any provision of this lease except to the extent of the rent paid or performance rendered. No failure on the part of the Landlord to enforce any covenant or provision herein contained, nor any waiver of any right thereunder by the Landlord, unless in writing, shall discharge or invalidate such covenant or provision or affect the right of the Landlord to enforce the same in the event of any subsequent breach or default. The receipt by the Landlord of any rent or any other sum of money paid by the Tenant after the termination, in any manner of the term herein demised, or after the giving by the Landlord of any notice hereunder to effect such termination, shall not reinstate, continue or extend the term herein demised, or destroy, or in any manner impair the efficacy of any such notice of termination as may have been given hereunder by the Landlord to the Tenant prior to the receipt of any such sum of money or other consideration, unless the Landlord shall have so agreed in writing. Neither acceptance of the keys nor any other act or thing done by the Landlord or any agent or employee during the term herein demised shall be deemed to be an acceptance of a surrender of said premises, excepting only an agreement in writing signed by the Landlord accepting or agreeing to accept such a surrender.

(b) This lease may not be changed orally but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

63. Bankruptcy

If Landlord shall not be permitted to terminate this Lease as hereinabove provided because of the provisions of Title 11 of the United States Code relating to bankruptcy, as amended ("Bankruptcy Code") then Tenant as a debtor-in-possession or any trustee for Tenant agrees promptly, within no more than fifteen (15) days upon request by Landlord to the Bankruptcy Court, to assume or reject this Lease, and Tenant on behalf of itself and any trustee agrees not to seek or request any extension or adjournment of any application to assume or reject this Lease by Landlord with such Court. In such event, Tenant or any trustee for Tenant may only assume this Lease if (i) it cures or provides adequate assurance that the trustees will promptly cure any default hereunder (ii) will promptly compensate Landlord for any pecuniary loss to Landlord resulting from Tenant's defaults, and (iii) provides adequate assurance of performance during the fully stated term hereof of all of the terms, covenants and provisions of this Lease to be performed by Tenant. In no event after the assumption of this Lease shall any then existing default remain uncured for a period in excess of the earlier of ten (10) days or the time period set forth herein. Adequate assurance of performance of this Lease, as set forth hereinabove, shall include, without limitation, adequate assurance (1) of the source of Rent reserved hereunder, and (2) the assumption of this Lease will not breach any provision hereunder. In the event of a filing of a petition under the Bankruptcy Code, Landlord shall have no obligation to provide Tenant with any services or utilities unless Tenant shall have paid and be current in all payments of costs, utilities or other charges therefor.

Providing Tenant continues to promptly pay rent and all items of additional rent and complies with the provisions of this Lease, Landlord will not terminate this lease pursuant to the provisions of Paragraph 16 of this Lease.

64. Environmental Matters

Tenant shall not engage in operations upon the premises which involve the generation, manufacture, refining, transportation, treatment, storage, handling or disposal of "hazardous substances" or "hazardous waste" as such terms are defined under applicable federal and state environmental statutes and ordinances, without

the prior written consent of Landlord, which consent shall be at Landlord's sole discretion. Tenant shall not cause or permit to exist, as a result of an intentional or unintentional action or omission on its part, the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances. Upon written request of Landlord or Tenant, Tenant or Landlord shall cooperate with Landlord or Tenant in obtaining evidence of compliance with the Act or any other law, regulation, or order of any governmental authority which cooperation shall include, without limitation, providing affidavits, reports or responses to questions. Landlord represents that he does not know of any or caused any, or shall cause or permit any hazardous substance (as herein defined) to be used, stored, generated or disposed of on, in or from the demised premises or building. Further, Landlord represents to the best of his knowledge, there is no asbestos in the premises.

65. Tenant's Obligation to Maintain a Security System:

Tenant, at its sole cost and expense, must maintain a 24 hour security system for the leased premises with a keypad for the leased premises which is separate and apart from the keypad for the basement area which is part of the security system currently being maintained by Landlord. The additional security system for the leased premises shall be procured solely from the alarm company currently being used by the Landlord, providing the cost thereof is competitive with the going rates of other equally qualified UL rated alarm companies. Tenant, its agents, servants, or employees shall not commit any act or omission which would interfere with the operation of its own security system or the one currently being provided by Landlord for the basement area. In the event that the Landlord's security system shall be activated, Tenant shall permit security personnel access to the leased premises and shall make any necessary repairs to the leased premises from the breach of said security.

66. Amendment to Paragraph 9:

Supplementing Paragraph 9 of the lease and notwithstanding anything to the contrary contained in this lease: (i) if more than twenty-five (25%) percent of the gross leasable area of the building or the premises has been damaged or destroyed during the last eighteen (18) months of the term of this lease, or (ii) if at any time during the term of this lease the premises is damaged by casualty and Owner shall not (a) commence to repair the damage which Owner is required to rebuild pursuant to this lease within one hundred eighty (180) days of the casualty, or if having

commenced, (b) shall not substantially complete repairs within nine months of the casualty, then in the case of (i) Tenant may terminate this lease by giving thirty (30) days notice thereof to Owner, such notice to be given within thirty (30) days of the expiration of the aforesaid periods provided that prior to the expiration of such thirty (30) day period Owner shall not have commenced restoration (in the case of (ii) (a)) or substantially completed restoration (in the case of (ii) (b).

Further, either Landlord or Tenant can require the waiver of subrogation by the other by paying any additional premium required.

67.  Amendment to Paragraph 13:

Paragraph 13 is amended by adding thereto at the end the following language:

The foregoing to the contrary notwithstanding, in performing any act pursuant to the provisions of this ARticle 13, Owner shall use its reasonable efforts to minimize any interference with Tenants business and Owner shall restore the premises subsequent to any work therein to the condition existing prior thereto.

68.  Amendment to Paragraph 30:

Paragraph 30 is hereby amended to add the following:

Tenant shall be entitled to 100% of the parking (area shown on survey attached hereto) up to and until the basement is occupied by Landlord or is rented to a third party at which time Tenant shall be entitled to 75% of the parking available to the building.

Tenant, at Tenant's expense, shall keep the parking lot striped and shall keep the parking lot and sidewalk free from snow, ice, dirt and rubbish.  In addition, Tenant shall make needed ordinary non-structural repairs to the parking lot including pot holes and the sidewalks ("repairs"); provided that Landlord shall pay for the cost of such repairs in excess of the aggregate of $500.00 per lease year for the repairs to the parking lot and $500.00 per lease year for the sidewalk repairs.  Except, Landlord shall not be required to pay the cost of such repairs and Tenant shall pay the full cost of same, where the repairs are not caused by normal wear and tear but by the acts of the Tenant, its agents, servants, employees, contractors, invitees and/or deliverymen.

69. Amendment to Paragraph 40:

Notwithstanding anything contained in Paragraph 40 to the contrary:

(i) Taxes shall not include any interest or penalties imposed thereon by the assessing authority except and only to the extent attributable to Tenant's late payment of Tenant's proportionate share thereof;

(ii) If general or special assessments may be paid in installments over a period of years, only the installments coming due had Owner elected to pay such assessments in installments over the longest period permitted by law during the calendar year in question during the term of this lease, will be included within the taxes which may be charged for such year.

Store #15

70. Amendment to Paragraph 42(a):

Paragraph 42(a) is hereby amended to the extent that with regard to the septic tanks and cesspool servicing the premises, that Tenant shall not be required to keep the systems in working order or ~~and~~ to do the necessary maintenance. In the event the said cesspools or septic tanks need maintenance or replacing, with the need for said replacement not being due to Tenant's failure to properly utilize them ~~maintain same~~, Landlord will*replace or add to them as needed at Landlord's cost and expense. ~~In the event Landlord rents the basement, then for such period as the basement is rented, Landlord will be responsible for one-third of the maintenance costs~~.

*maintain, repair,

71. Assignment and Subletting:

(a) If Tenant desires to assign this lease or sublet the entire premises, as hereinafter provided, Tenant shall, by notice provided in Paragraph 52 of the Rider, advise Landlord of (i) the name and address of the proposed subtenant or assignee; (ii) a description identifying the space to be sublet; (iii) the terms, conditions and consideration of the proposed subletting or assignment; (iv) the nature and character of the business of the proposed subtenant or assignee and of its proposed use of the premises; and (v) current financial information and any other information as Landlord may reasonably request with respect to the proposed subtenant or assignee, and shall offer to Landlord the option:

(i) to terminate this Lease as of the last day of any calendar month of the Term, which day shall be prior to the effective date of such proposed sublease or assignment, after

Landlord's Acceptance Period (as such phrase is hereinafter defined), and to vacate and surrender the Premises to Landlord pursuant to the terms hereof; or

       (ii) to execute a sublease for, or an assignment of, the said space with Landlord on the same terms and conditions as are contained in the proposed sublease or assignment, whereupon Landlord shall have the right, at its sole option, without notice to Tenant, to further assign this lease or sublet all or any portion of the premises upon any terms and conditions it deems proper.

       Landlord shall have thirty (30) business days after the receipt of such offer to accept in writing either or neither of such offers ("Landlord's Acceptance Period").

    (b)   Upon Tenant's due compliance with the aforesaid provisions of this paragraph, and if Landlord shall not accept either of Tenant's aforesaid offers, Landlord shall not unreasonably withhold its consent to the proposed subletting or assignment, provided that (i) such assignee shall execute and deliver to Landlord an assumption agreement wherein it agrees to perform all the obligations of the Tenant under this lease in form appropriate for recording, and provided in the case of a sublease, the subtenant shall execute and deliver to Landlord an agreement wherein it agrees to be subject to all of the terms and conditions of this lease; (ii) no subletting or assignment shall be to a person or entity which does not have a financial standing, be of good character, be engaged in business, or propose to use the sublet premises in a manner not in keeping with the standards for a first-class retail store in the area in which the premises is located and for no other use or purpose other than as set forth in paragraph 2 of this lease; (iii) the subletting shall be subject to all of the obligations of Tenant under this lease; (iv) Landlord shall be furnished with a duplicate original of the sublease or assignment within ten (10) days after the date of its execution; (v) notwithstanding the foregoing, Landlord's disapproval of a proposed assignee or sublessee shall be deemed reasonable if such assignee or sublessee is a business competitor of Landlord.

    (c)   Notwithstanding anything contained in this lease to the contrary, Tenant may without the consent of Landlord (but after notice to Landlord and with delivery to Landlord of a true and complete copy of the instrument of assignment or subletting within ten (10) days of the effective date of the assignment or commencement of the subletting, as the case may be), assign this lease or sublet all or part of the premises (i) to the purchaser of all or substantially all of the assets or stock of Tenant;

(ii) to an entity which is a successor to Tenant by way of merger, consolidation or reorganization; (iii) to the purchaser of at least four (4) stores of Tenant including the premises; (iv) to any affiliate of Tenant ("Affiliate" shall mean any corporation which is wholly owned directly or indirectly by Vitamin Shoppe Industries, Inc.); providing that the assignee or sublessee assumes all the terms and conditions of the lease, that the assignment or subleasing be for the entire premises and that the assignor or sublessor remain liable for the lease; (v) Tenant shall not be in default of this lease uncured within the applicable grace period; (vi) the assignor or sublessor shall not be deemed released from this lease.

Gerald Kessler
**GERALD KESSLER** Landlord

**VITAMIN SHOPPE INDUSTRIES, INC.**

by: ______________________
President Tenant



GK
REAL ESTATE

Vince See

July 30, 1998

The Vitamin Shoppe
4700 Westside Avenue
North Bergen, NJ 07047
Attention: Mr. Jeff Howard

Re: Premises Lease at 191 Walt Whitman Road, Huntington Station, New York

Dear Mr. Howard:

Please be advised that a few issues have recently been brought to my attention:

1. ***Certificate of Insurance*** has expired 6/5/98. Please have an updated COI sent to my attention listing Gerald Kessler as additional insured.

2. ***Alarm System:*** Please provide a new/updated list of contacts for the alarm company in the event of emergency. Previous names and numbers are of former employees, or are no longer in service.

3. ***Landscaping:*** Pursuant to your lease agreement, (Para. No. 42 Utilities and Repairs), I have received complaints that the grounds/landscaping are not being maintained properly. In order for us to respond to the appropriate authorities by July 15th, I will need you to advise what steps will be taken to clean up the landscaping for a neat and clean appearance along with a completion date - no later than July 10th.

4. ***Nardi:*** As you are aware, Gerald Kessler has been served with a Summons & Complaint regarding an incident that happened on the premises. Please provide us with additional details so we may forward this information to our insurance carrier.

5. ***Additional Rent:*** Pursuant to your lease agreement, (Para No. 40 Taxes) please remit the amount of $1,846.46 as additional rent due to the following tax increase. Please remit this payment to my attention within 30 days.

   1995/1996 $21,525.92
   1996/1997 $22,414.38 – Increase over 95/96 $888.46 – Vitamin Shoppe's Responsibility: $592.30
   1997/1998 $23,407.16 – Increase over 95/96 $1,881.24 – Vitamin Shoppe's Responsibility: $1,254.16

I would appreciate your immediate attention to the above matter, as many of the issues are of time sensitive nature. Thank you in advance for your assistance.

Sincerely,

Gerald Kessler Realty

Doris

Doris Kennedy
Agent

Cc: Gerald Kessler

RECEIVED
JUL 6 1998



**VITAMIN SHOPPE INDUSTRIES INC.**

July 22, 1998

**FILE**

GK REAL ESTATE
548 Broadhollow Road
Melville, NY 11747

RE: Premises Lease at 191 Walt Whitman Road, Huntington Station, New York

Dear Ms. Kennedy:

In response to your letter which we are aware should be June 30, 1998, the following information should resolve your open issues.

1) ***Certificate of Insurance*** has been sent by Ms. Darcy A. Peterson at FRENKEL & CO., INC. If you have not received this information please contact her directly at 212-488-0272.

2) ***Alarm System:*** Alarm Company is ELECTRONICS SYSTEMS 516-271-4000

**VITAMIN SHOPPE ALARM CONTACT LIST**

| | | |
|---|---|---|
| **1)** | **Phil Clementi** | **516-427-7871** |
| **2)** | **Brenda Hulak** | **516-732-2248** |
| **3)** | **Fahd Rafiq** | **516-835-5190** |
| **4)** | **Tom Grillea** | **516-931-8063** |
| **5)** | **Mike Lynch** | **908-369-6967** |
| **6)** | **Larry Paul** | **201-914-8900** |

3) ***Landscaping:*** Landscaping was completed on June 23, 1998 and will be continually kept neat and clean in appearance in accordance with our lease agreement.

4) ***Nardi:*** All information has been forwarded to Robert D. Kleppinger at FRENKEL & CO., INC. 212-488-1836

4) ***Additional Rent***: A check in the amount of $1,846.46 is enclosed for the tax increase.

If there is any additional information needed please contact Vincent Cirello at ext. 3065

Sincerely,

Jeffrey J. Howard
President

4700 WESTSIDE AVENUE, NORTH BERGEN, NEW JERSEY 07047
TELEPHONE 201-866-7711 • FACSIMILE 201-866-9513 • E-MAIL www.vitaminshoppe.com

**SECOND LEASE EXTENSION & MODIFICATION AGREEMENT**

AGREEMENT dated the ___ day of May, 2014, by and between WALT WHITMAN ROAD, LLC the successor-in-interest to Gerald Kessler c/o Natural Organics, 548 Broadhollow Road, Melville, New York 11747, hereinafter referred to as "Landlord", and VITAMIN SHOPPE INDUSTRIES INC. with offices at 2101 91st Street, North Bergen, New Jersey 07047, hereinafter referred to as "Tenant".

WHEREAS, Gerald Kessler, as predecessor-in-interest to Landlord and Tenant entered into a Lease hereinafter referred to as the "Original Lease", dated June 1, 1995, which commenced June 1, 1995 and was originally scheduled to expire on May 31, 2005, for premises known as 191 Walt Whitman Road, Huntington, New York (the "Demised Premises");

WHEREAS, Landlord and Tenant entered into a Lease Modification and Extension Agreement dated October 28, 2004, hereinafter referred to as the "First Modification", and together with the Original Lease, hereinafter referred to collectively as the "Lease", whereby, among other things, the term of the Lease was extended through May 31, 2015; and

WHEREAS, Landlord and Tenant are desirous of extending and modifying the terms and conditions of the Lease for an additional period of Ten (10) years commencing June 1, 2015 and expiring May 31, 2025 upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants of the parties hereto, it is hereby agreed as follows:

1) The term of the Lease is hereby extended for a period of Ten (10) years so that the commencement period for the terms and conditions of this Second Lease Extension and Modification Agreement shall be June 1, 2015 and the term of the Lease shall expire on May 31, 2025.

2) The Lease is also hereby modified to the extent that;
   a. The base minimum rental for the period June 1, 2015 through May 31, 2020 shall be the annual sum of $263,304.00, payable in equal monthly installments of $21,942.00 on the first day of each month in advance.
   b. The base minimum rental for the period June 1, 2020 through May 31, 2025 shall be the annual sum of $289,634.04, payable in equal monthly installments of $24,136.17 on the first day of each month in advance.
   c. During the extended term of the Lease, Tenant shall continue to pay all items of additional rent as set forth in the Lease.

3) Tenant acknowledges that it is the existing Tenant at the Demised Premises, has assumed the obligations of Tenant, pursuant to the Lease, and agrees to continue to occupy the premises herein in its "as is" condition.

4) Except as contained in this Second Lease Extension and Modification Agreement, in all other respects the aforesaid Lease shall, in all its provisions, remain the same and be incorporated as the Lease for the extended period herein.

5) Tenant shall make all payments of Rent and additional rent payable to the order of "WALT WHITMAN ROAD, LLC" at the address set forth above, until such time as Landlord notifies Tenant in writing of a different payee.

6) Tenant's updated Notice Address is as follows:

Vitamin Shoppe Industries Inc.
2101 91st Street
North Bergen, New Jersey 07047
Attn: General Counsel

With a copy under separate cover to:

Vitamin Shoppe Industries Inc.
2101 91st Street
North Bergen, New Jersey 07047
Attn: Lease Administration

IN WITNESS HEREOF, and intending to be legally bound hereby, the undersigned have executed this Second Lease Extension and Modification Agreement as of date and year first above-written.

Landlord: WALT WHITMAN ROAD, L.L.C.

By: [signature]
Name: J. Gibbons
Title: President

Tenant: VITAMIN SHOPPE INDUSTRIES INC.

By: [signature]
Name: Brian R. Bootay
Title: VP Real Estate & Development