IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**FRANCHISE GROUP, INC.,** *et al.*,<br><br>Debtors. | ) **Chapter 11**<br>)<br>) **Case No. 24-12480 (JTD)**<br>)<br>) **(Jointly Administered)**<br>)<br>) **Hearing Date: May 6, 2025 at 11:30 AM**<br>) **Objection Date: April 29, 2025 at 4:00 PM**<br>)<br>) **Docket Nos. 583 and 1283**<br>) |

**ORACLE'S RIGHTS RESERVATION REGARDING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING FRANCHISE GROUP INTERMEDIATE V, LLC TO ENTER INTO AND PERFORM ITS OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (II) APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS, AND ENCUMBRANCES, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (IV) GRANTING RELATED RELIEF ("RIGHTS RESERVATION")**

Oracle America, Inc., including in its capacity as successor in interest to Responsys, Inc., CrowdTwist, and Textura ("Oracle"), a creditor and contract counterparty in the above-captioned jointly administered Chapter 11 cases, submits this Rights Reservation regarding the Debtors' Motion for Entry of an Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter Into and Perform Its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief [Dkt. No. 1283] ("Sale Motion") filed by Franchise Group, Inc., et al. ("Debtors").

This Rights Reservation follows *Oracle's Limited Objection To and Reservation of Rights Regarding Debtors' Sale Motion and Related Notice of Possible Assumption and Assignment and Cure Costs With Respect to Executory Contracts* ("Initial Rights Reservation") [Dkt. No. 583]. By

this reference, Oracle hereby incorporates its Initial Rights Reservation as though set forth here in full

## I. INTRODUCTION

1. Oracle filed its Initial Rights Reservation in connection with the (1) *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Dkt. No. 154] ("Initial Sale Motion"); and (2) *Notice of Possible Assumption and Assignment and Cure Costs With Respect to Executory Contracts and Unexpired Leases* [Dkt. No. 487] ("Assumption Notice") in order to preserve its rights with respect to the Debtors' potential assumption and assignment of agreements between the Debtors and Oracle (the "Initial Oracle Agreements"). Oracle raised several issues in its Initial Rights Reservation. Key among them was the lack of specificity regarding the Initial Oracle Agreements the Debtors wished to assume and assign, which rendered Oracle unable to verify the accuracy of the Debtors' proposed cure amount. In addition, at the time the Initial Rights Reservation was filed, no purchaser(s) was identified and only a proposed asset purchase agreement was filed.

2. Since filing the Initial Rights Reservation, the Initial Sale Motion was adjourned indefinitely because the Debtors did not receive any qualified bids. Therefore, Oracle's Initial Rights Reservation was never resolved.

3. In connection with the Sale Motion, as with the Initial Sale Motion, the Debtors are seeking Bankruptcy Court authority to, among other things, assume and assign certain executory

contracts between the Debtors and Oracle. Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment as follows:

4. First, the targeted Oracle agreements are, or pertain to, one or more licenses of intellectual property which may not be assumed or assumed and assigned absent Oracle's consent pursuant to both the underlying license agreements and applicable law.

5. Second, the Sale Motion identifies several Oracle contracts which may be assumed and assigned. The contract descriptions related to the Sale Motion provide additional information from those initially described in the Assumption Notice. However, given the number of Oracle contracts identified, Oracle is reviewing its records to determine the status of the contracts as well as the cure amount. Oracle also reached out to Debtors' counsel to determine the scope of contracts to be assumed and assigned, so the parties have been in discussions over the last several weeks. Once Oracle has a better understanding about the contracts being assumed and assigned, Oracle will be able to determine the correct cure amount. Oracle remains hopeful that the parties will achieve a resolution prior to the hearing on the Sale Motion.

6. Third, at present, no adequate assurance information has been provided for TVS Buyers, LLC ("Purchaser"). Therefore, Oracle is unable to determine whether the Purchaser will be capable of performing under the terms of the contracts which the Debtors seek to assume and assign.

7. Finally, the APA (defined below) contemplates a transition services agreement which may call for the unauthorized shared use of Oracle's licenses, in a manner which is not permitted by the Oracle agreements. Oracle objects to any unauthorized shared use of its licenses.

8. Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume, assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II. FACTUAL BACKGROUND

9. The Debtors filed the above-captioned case on November 3, 2024, and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

10. On November 11, 2024, the Debtors filed their Initial Sale Motion. Pursuant to the Initial Sale Motion, the Debtors sought to sell substantially all, or one or more subsets, of the Debtors' assets. The Debtors reported that they did not receive any qualified bids and on February 12, 2025, the Debtors filed the *Notice of Cancellation of Auction* [Dkt. No. 961]. By this pleading, Debtors cancelled the auction and adjourned the sale hearing indefinitely, but reportedly continued talks with certain parties in interest, including the Purchaser.

11. On April 15, 2025, the Debtors filed the Sale Motion. Pursuant to the Sale Motion, the Debtors are proposing to sell The Vitamin Shoppe to the Purchaser. Attached as Exhibit A to the Sale Motion is the Proposed Sale Order. It includes the list of contracts to be assumed and assigned ("Schedule 1") and identifies nine Oracle Agreements between Vitamin Shoppe Industries, LLC and Oracle America, Inc.[1] ("Oracle Agreements"). The proposed cure amount for the Oracle Agreements is $94,078.87.

12. Attached as Exhibit 1 to the Proposed Sale Order is the Asset Purchase Agreement between the Debtors and the Purchaser ("APA"). The APA contemplates entering into a Transition Services Agreement ("TSA"). The TSA which was to be attached as Exhibit G to the APA was not included. However, in response to a request, the Debtors have provided Oracle with a copy of the TSA, which Oracle is currently reviewing.

---

[1] Schedule 1 also includes Oracle in the contract descriptions for Manhattan Associates and Sparkred, Inc. Oracle is in the process of reviewing its records to determine its interest in these agreements.

### III. ARGUMENT

    **A. The Debtors May Not Assume and Assign to the Purchaser the Oracle Agreements Absent Oracle's Consent Because the Agreements Pertain to One or More Licenses of Intellectual Property.**

13. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

14. Federal law makes non-exclusive copyright licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

15. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment at this time.

### B. The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed and Assigned.

16. The contract descriptions in the Sale Motion provide additional information to that previously provided in the Assumption Notice. However, it is still unclear which contracts are at issue. Oracle and Debtors' counsel are in discussions about which contracts the Debtors intent to assume and assign in connection with the Sale Motion. Oracle hopes to have a better understanding as to the scope of contracts at issue prior to the Sale Motion hearing. However, without further clarification from the Debtors, Oracle is unable to determine whether it is evaluating the same agreements the Debtors seek to assume and assign.

17. In addition, no master agreements are identified. As noted in Oracle's Initial Rights Reservation, it is impermissible for the Debtors to segregate the underlying Oracle license agreement from the corresponding support agreement and master agreement for purposes of assumption and assignment, if that is the Debtors' intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008). An executory contract must be assumed in its entirety and, "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Techs.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)). Under California law[2], made applicable by the Oracle Agreements, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same

---

[2] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.").

6

transaction, they constitute integrated contracts which may not be separately assumed and assigned.

19. To clarify which Oracle contracts the Debtors hope to assume and assign, Oracle requests that the Debtors provide an (1) identification or contract number; (2) date, if not already provided; (3) associated support renewals; and (4) governing license agreement. This information will enable Oracle to evaluate whether the Oracle Agreements are supported, expired, or in default, and, if in payment default, the appropriate cure amount. Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors. Oracle reserves its right to be heard on this issue after the Debtors specify the Oracle Agreements they seek to assume and assign.

### C. The Debtors May Not Have Provided The Correct Cure Amount.

19. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1). The Debtors have identified a $94,078.87 cure amount for one of the Oracle Agreements. However, given the description provided in the Sale Motion, Oracle is unable to determine with certainty which agreements are being assumed and assigned. Once Oracle has a better understanding as to which contracts are being assumed and assigned, it will be able to determine the appropriate cure amount.

20. Therefore, Oracle reserves its right to be heard further regarding the cure, including possible reinstatement fees, if any, until after the contracts the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the correct cure amount.

### D. The Debtors Have Not Provided Adequate Assurance of Future Performance.

21. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1). As of the date of filing this

Rights Reservation, no adequate assurance information has been provided for the Purchaser. Therefore, Oracle is unable to determine whether the Purchaser would be an acceptable customer.

22. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the Purchaser: (1) financial bona fides; (2) confirmation that the Purchaser is not an Oracle competitor; and (3) confirmation that the Purchaser will (a) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle Agreements to be assigned; and, if appropriate (b) enter into an Oracle Master License Agreement. Absent these assurances, Oracle cannot determine the Purchaser's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreements.

23. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

        **E.**    **Oracle's Agreements Do Not Authorize Simultaneous Use By The Debtors and the Eventual Purchaser.**

24. The APA contemplates that undisclosed transitional services will be provided between the Debtors, the Purchaser.

25. Simultaneous use of, and access to, Oracle's licensed software may exceed the scope of the permitted uses under the Oracle Agreements. Such usage would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the Purchaser. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and the Purchaser the right to shared use of the Oracle licenses beyond the licenses' terms. Oracle is in the process of reviewing the TSA and reserves all rights regarding any transitional use, pending Oracle's final review of the same.

## IV. **CONCLUSION**

26. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreements, or any Oracle agreement via the Sale Motion. Oracle reserves its right to be heard further on all issues set forth herein.

| | |
|---|---|
| Dated: April 29, 2025<br>Wilmington, Delaware | **MARGOLIS EDELSTEIN**<br><br>By: _____/s/ James E. Huggett_____<br>James E. Huggett, Esq. (#3956)<br>300 Delaware Avenue, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-1112<br>E-mail: jhuggett@margolisedelstein.com<br><br>Mark F. Magnozzi, Esq.<br>Benjamin Rachelson, Esq.<br>**THE MAGNOZZI LAW FIRM P.C.**<br>23 Green Street, Suite 302<br>Huntington, New York 11743<br>Telephone: (631) 923-2858<br>E-mail: mmagnozzi@magnozzilaw.com<br><br>**BUCHALTER,**<br>**A Professional Corporation**<br>Shawn M. Christianson, Esq.<br>425 Market Street, Suite 2900<br>San Francisco, California 94105<br>Telephone: (415) 227-0900<br>E-mail: schristianson@buchalter.com<br><br>**ORACLE AMERICA, INC.**<br>Peggy Bruggman, Esq.<br>Benjamin Wheeler, Esq.<br>500 Oracle Parkway<br>Redwood City, California 94065<br>Telephone: (650) 506-5200<br>Facsimile: (650) 506-7114<br><br>**Attorneys for Oracle** |