## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 24-12480 (LSS) |
| FRANCHISE GROUP, INC., *et al.*,[1] | (Jointly Administered) |
| Debtors. | Hearing Date: May 6, 2025, at 11:30 a.m. (ET) |
| | Obj. Deadline: April 29, 2025, at 4:00 p.m. (ET) |
| | **Re: Docket No. 1283** |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE CHUBB COMPANIES TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING FRANCHISE GROUP INTERMEDIATE V, LLC TO ENTER INTO AND PERFORM ITS OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (II) APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS, AND ENCUMBRANCES, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company, Federal Insurance Company, Indemnity Insurance Company of North America, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, Pacific Employers Insurance Company and each of their respective U.S.-based affiliates, predecessors, and successors (collectively, and solely in their capacities as insurers of one or more of the above-captioned debtors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this Limited Objection and Reservation of Rights (collectively, the "Objection") to the *Debtors Motion for Entry of an Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter into and Perform its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1283] (the "Motion")[2] and in support of the Objection, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A.    The Bankruptcy Case

1.      On November 3, 2024 (the "Petition Date"), Franchise Group, Inc.  and certain of its affiliates and subsidiaries (collectively, the "Debtors") each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.      On April 16, 2025, the Debtors filed the Motion.

3.      Pursuant to the Motion, the Debtors seek entry of an order which: (a) authorizes and approves the Debtors' entry into and performance under the APA, whereby Debtor Franchise

---

[2]      Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

DM3\11474829.3

Group Intermediate V, LLC has agreed to sell, transfer, convey, assign, and deliver to TVS

Buyer, LLC; (b) authorizes and approves the sale of the Purchased Assets and the Assumed

Liabilities to the Buyer free and clear of any and all Encumbrances, other than Permitted

Encumbrances and Assumed Liabilities; (c) authorizes the assumption and assignment of the

Purchased Contracts and the Purchased Leases; and (d) granting related relief.

4.       Pursuant to the APA at Art. 1.1. "'Excluded Assets' means the following assets,

property, rights and interests of Seller and its Subsidiaries (in each case excluding any Purchased

Assets): … (g) except for the insurance policies described in Section 2.1.1(s), all insurance

policies and all rights and benefits of any nature with respect thereto, including all insurance

recoveries thereunder and rights to assert Claims with respect to such insurance recoveries,

including any directors and officers liability insurance policies…."

5.       Further, Section 2.1.1(s) of the APA provides as follows:

> Upon the terms and subject to the conditions of this Agreement and
> the Ancillary Agreements, at and effective as of the Closing, and
> pursuant to sections 105, 363 and 365 of the Bankruptcy Code,
> Seller shall (or shall cause its applicable Subsidiaries to), sell,
> transfer, convey, assign and deliver to Buyer, and Buyer shall
> purchase, acquire and accept from Seller (or such Subsidiaries), all
> rights, title and interests of Seller or its Subsidiaries in and to all of
> the assets, properties, interests, rights and Claims of Seller and its
> Subsidiaries related to, or used in connection with, the Business
> (other than the Excluded Assets), including the following assets
> related to, or used in connection with, the Business (collectively, the
> "Purchased Assets"), in each case free and clear of any
> Encumbrances (other than Permitted Encumbrances and Assumed
> Liabilities):
>
>                                    ***
>
> (s) the insurance policies set forth on Section 2.1.1(s) of Seller
> Disclosure Schedules ….

6.       The Seller Disclosure Schedules are not attached to the Motion or otherwise

available in the public record.

DM3\11474829.3

B.    <u>**The Insurance Policies**</u>

7.    Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "<u>Policies</u>") to the Debtors as named insureds.

8.    Prior to the Petition Date, the Chubb Companies and the Debtors also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "<u>Insurance Agreements</u>").

9.    Pursuant to certain Policies and Insurance Agreements (the "<u>ACE Insurance Program</u>"), ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company of North America, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, Pacific Employers Insurance Company, and/or certain of their U.S.-based affiliates provide, *inter alia*, certain workers' compensation, excess commercial general liability, commercial general liability, errors and omissions, umbrella excess, automotive liability, accident and death dismemberment, private company, privacy, excess, directors' and officers' liability, environmental, umbrella, professional liability, international advantage, commercial directors' and officers', businessowners, excess directors' and officers' liability, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (collectively, the "<u>ACE Program Obligations</u>").

4

10.     Pursuant to certain other Policies and any agreements related thereto (collectively, the "Federal Insurance Program," and together with the ACE Insurance Program, the "Insurance Programs"),[3] Federal Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, Executive Risk Indemnity Inc., Chubb Insurance Company of New Jersey, and/or certain of their U.S.-based affiliates provide, *inter alia*, certain accident, crime, directors' and officers' liability, fiduciary liability, employment practices liability, kidnap, ransom and extortion liability, automotive liability, workers' compensation, property, package, directors' and officers' excess liability, export package, cargo, umbrella, general liability, accident blanket, excess, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (collectively the "Federal Program Obligations," and together with the ACE Program Obligations, the "Obligations").[4]

11.     The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

12.     Certain of the Obligations are secured by certain collateral, including letters of credit.  The Obligations may also be secured by other letters of credit, trusts, escrows, surety bonds, cash collateral, paid loss deposit funds, or other amounts.

---

[3]     The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Insurance Programs.  Reference is made to the Insurance Programs for a complete description of their terms and conditions.

[4]     The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

## **LIMITED OBJECTION/RESERVATION OF RIGHTS**

13.     At this time, the Chubb Companies cannot determine or confirm whether the Sale proposed in connection with the Motion contemplates or will contemplate the sale or other transfer of all or a portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder).  The Chubb Companies, therefore, object and reserve their rights with respect to the Sale to the extent that the Debtors seek to assume and assign or otherwise transfer either or both of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder, and/or any collateral or security provided by or on behalf of any of the Debtors (or their affiliates or predecessors) to any of the Chubb Companies) to the Buyer.

14.     The Chubb Companies assert that (i) the Insurance Programs must each be assumed and assigned, if at all, as a whole, and, in order to be entitled to any of the rights, benefits, interests and/or proceeds under the Insurance Programs, the Buyer must remain liable for the Obligations thereunder; (ii) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder and/or any collateral or security provided by or on behalf of any of the Debtors (or their affiliates or predecessors)), the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder and/or any collateral or security provided by or on behalf of any of the Debtors (or their affiliates or predecessors)) cannot be assigned or transferred without the consent of the Chubb Companies, which consent has not been sought or given; (iii) the Chubb Companies should not be responsible for determining which entity, as between the Debtors and the Buyer, is entitled to coverage and/or the rights, benefits, interests and/or proceeds under the Insurance Programs; (iv) any proposed cure amounts must be evaluated at the time of assumption; and (v) the Chubb

DM3\11474829.3

Companies have not received adequate assurance of future performance under the Insurance Programs by the Buyer.

15.    The Chubb Companies, therefore, object to the Motion and reserve their rights regarding the proposed Sale to the Buyer to the extent such Sale proposes to improperly treat the Insurance Programs.

## I.    Each of the Insurance Programs and the Obligations Thereunder Are Indivisible.

16.    It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder.  *See Am. S. Ins. Co. v. DLM, LLC*, No. GLR-16-3628, 2017 U.S. Dist. LEXIS 105716, at *14 (D. Md. July 10, 2017) ("If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."); *Tavenner v. United States (In re Vance)*, 298 B.R. 262, 268 (Bankr. E.D. Va. 2003) ("'[A] debtor may not assume the favorable aspects of a contract [ ] and reject the unfavorable aspects of the same contract. . . [.]'") (citation omitted); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. App'x. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. App'x. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, (plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage.") (citations and quotations omitted) (alterations in

7

original); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect.") (citations omitted); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences."); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("The [debtor] . . . may not blow hot and cold.  If he accepts the contract he accepts it *cum onere*.  If he receives the benefits he must adopt the burdens.  He cannot accept one and reject the other.") (internal citations and quotations omitted) (alterations in original); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

17.     It is also well-established that courts cannot alter terms of contracts, and must instead enforce them as written.  *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (stating a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the

parties have included") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

18.     Accordingly, to the extent any of the Insurance Programs (or the rights, benefits, interests, and/or proceeds thereunder and/or any collateral or security provided by or on behalf of any of the Debtors (or their affiliates or predecessors)) are sold, assumed and assigned, or otherwise transferred to the Buyer, the Buyer must also remain liable for the Obligations thereunder.

19.     Moreover, each of the Insurance Programs, which are integrated insurance programs, must be read, interpreted and enforced together.  *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *Allegheny Enters. v. J-W Operating Co.*, No. 10-02539, 2014 U.S. Dist. LEXIS 27998, at *18-19 (M.D. Pa. Mar. 5, 2014) (finding an integrated agreement where several contracts between the same parties govern the parties' relationship as to a particular subject); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non severable agreement" where contracts were between same parties and obligations of each party

are mutually dependent on the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

20.     Accordingly, any sale or other transfer of only a portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) is improper, and any purported transfer of either of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) to the Buyer must be in its entirety.

21.     The Chubb Companies therefore object to the Sale and reserve their rights with respect to any purported assumption and assignment or other transfer of any portion of either of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder and/or any collateral or security provided by or on behalf of any of the Debtors (or their affiliates or predecessors)) in connection with the Motion and the proposed Sale to the Buyer.

## II.     The Insurance Programs Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or <u>Given.</u>

22.     To the extent that the Debtors seek to assign the Insurance Programs in connection with the Motion or the Sale, such assignment cannot occur without the express written consent of the Chubb Companies.

23.     Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

24.     Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits.  Section 365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent.*

*Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

25.     Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment.  11 U.S.C. § 365(c)(1)(A) and (B).

26.     Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it.  *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal prohibition against assignment' to a third party and the non-debtor party to the contract does not consent to assignment.").

27.     Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent.  *See, e.g.*, *Banco Popular v. Kanning*, No. A-13-CV-200 RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (finding that a purported assignment of an insurance policy that did not comply with the express terms of the insurance policy was not enforceable); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, *no pet.*) (where an insurer's express written consent to any transfer of rights under an insurance policy is required by the terms of the policy, failure to evidence the insurer's express written consent renders any purported transfer invalid); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS

11

1898 at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

28.     Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one

---

[5]     Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g).

contracted with.").  Therefore, the Insurance Programs cannot be assigned without the prior written consent of the Chubb Companies.

29.     Further, as a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Programs, the Debtors and the assignee will be required to execute one or more assumption agreements, in form and substance acceptable to the Chubb Companies.  These agreements have not yet been negotiated, let alone executed.

30.     Accordingly, because the Chubb Companies have not consented to any proposed assignment of the Insurance Programs, the Chubb Companies object to any such assignments without their consent, and reserve their rights with respect to any and all such assignments at this time.

**III.    The Chubb Companies Are Not Required to Make Coverage Determinations Between the Debtors and the Buyer.**

31.     As of the date hereof, it is not clear what, if any, portions of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) the Debtors intend to transfer to the Buyer pursuant to the Motion.

32.     While it is improper, as discussed above, to split the Insurance Programs themselves, or to split the rights, benefits, interests and/or proceeds under the Insurance Programs from the Obligations thereunder, any transfer of only a certain (as yet unspecified) portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) in connection with a Sale is likely to result in coverage disputes between the Buyer and the Debtors.

33.     To the extent any portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) is assigned in connection with the Sale, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Buyer, which

entity is entitled to coverage under the Insurance Programs in connection with a particular claim.

Similarly, the Chubb Companies should not be put in the position of determining, as between the

Debtors and the Buyer which entity is entitled to any of rights, benefits, interests and/or proceeds

under the Insurance Programs.

## IV.    Cure Amounts Must Be Evaluated At The Time Of Assumption.

34.    To the extent the Debtors seek to assume and assign all or a portion of either or

both of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder)

pursuant to any Sale, the Debtors must assume and assign each of the Insurance Programs in its

entirety.  Further, as more particularly described in the Insurance Programs, the Debtors are

required to pay the Obligations, and, therefore, amounts may become due and owing under the

Insurance Programs either prior to or after the assumption thereof.

35.    Such Obligations include, but are not limited to, (i) certain outstanding premiums,

(ii) certain installment payments, upcoming post-petition premiums, or other amounts that may

be currently due and/or may become due in the future, and (iii) any collateral and/or security

funding/posting requirements that may exist at the time of assumption pursuant to the terms of

the Insurance Programs (collectively, the "Currently Due Obligations"). [6]

36.    The Chubb Companies also have contingent, unliquidated claims against the

Debtors for the Obligations, given the nature of the Insurance Programs and the Obligations.  By

way of example and not limitation, premiums may be payable at audit under the terms of the

---

[6]    The premium payments are based on the gross amounts due and owing to the Chubb Companies.  Certain portions of premium payments may be attributable to amounts owing on commissions or other amounts accrued under the Insurance Programs, which may reduce the net amounts due and owing to the Chubb Companies. Any collateral requirement calculation is based on a snapshot in time, and does not fully account for, *inter alia*, incurred but not reported claims, claims that are closed but could reopen, and unexpected development of claims. Generally, any such estimate can change at any time and, in certain cases, on a daily basis, as the insured's financial condition changes and/or losses/claims are reported, develop, are reanalyzed, paid by the insurer and/or reimbursed by the insured(s) and/or collateral, and thus must be determined at the time of assumption.

DM3\11474829.3

Insurance Programs, based upon factors as they exist throughout the coverage period.  Therefore, the Chubb Companies have contingent, unliquidated claims against the Debtors for any additional premium that may become due upon completion of audit(s).  By way of further example, as insured claims develop, amounts payable in relation thereto arise at various points in time.

37.    The amounts owed by the Debtors on account of the Obligations may vary from day to day, and are subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies.

38.    Accordingly, any cure amounts must be determined at the time of assumption and, further, as a condition for the assignment of the Insurance Programs, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations, which includes the Currently Due Obligations), whether now existing or hereafter arising, under the Insurance Programs, including, without limitation, paying the Obligations as they become due.

## V.    The Buyer Must Provide Adequate Assurance of Future Performance.

39.    Pursuant to § 365(f)(2) of the Bankruptcy Code, any assignee of a contract must provide adequate assurance of future performance.

40.    The Chubb Companies do not have, and the Debtors have not supplied, any information—much less sufficient information or a reasonable amount of time—to determine if the Buyer would be capable of providing adequate assurance of future performance and whether the Buyer would satisfy the Chubb Companies' credit and underwriting criteria.  Accordingly, the Chubb Companies are unable, at this time, to assess whether the proposed Buyer would satisfy those criteria and reserve all rights with regard to same.

WHEREFORE, the Chubb Companies reserve all of their rights with respect to the Insurance Programs, the Motion, the Sale proposed in connection therewith, and/or any documents relating thereto.

DM3\11474829.3

Dated: April 29, 2025                    Respectfully submitted,

                                         **DUANE MORRIS LLP**


                                         */s/ Drew S. McGehrin*
                                         Drew S. McGehrin, Esq. (DE 6508)
                                         1201 North Market Street, Suite 501
                                         Wilmington, DE 19801
                                         Phone: (302) 657-4900
                                         Fax: (303) 657-4901
                                         Email: DSMcGehrin@duanemorris.com

                                         and

                                         Wendy M. Simkulak, Esquire
                                         Jessica Kenney Bonteque, Esquire
                                         1540 Broadway
                                         New York, NY 10036-4086
                                         Telephone: (212) 692-1036
                                         Fax: (212) 954-5310
                                         Email: wmsimkulak@duanemorris.com
                                         Email: JBonteque@duanemorris.com


                                         *Counsel for the Chubb Companies*