# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (JTD)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 1283; 1293**<br>**Objection Deadline: April 29, 2025 at 4:00 p.m. (ET)** |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CERTAIN LANDLORDS TO DEBTORS' PROPOSED CURE AMOUNTS AND ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES

5Rivers CRE, LLC, Benderson Development Company, Brookfield Properties Retail, Inc., Centerco Realty, Curbline Properties Corp., First Washington Realty, Kite Realty Group, NewMark Merrill Companies, Inc., Nuveen Real Estate, Philips International Holding Corp., Regency Centers, L.P., ShopCore Properties, SITE Centers Corp., and Win Properties, Inc. (each,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

a "Landlord" and, collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP, hereby submit this limited objection (the "Objection") to the potential assumption and assignment of their Leases (as defined below) by the above-captioned debtors (collectively, "Debtors") and the Cure Notice (as defined below). In support of this Objection, Landlords respectfully state as follows:

## PRELIMINARY STATEMENT

1. Landlords do not generally oppose the sale of the Vitamin Shoppe Debtors' assets to a viable, well-capitalized entity that will result in a healthier, go-forward company, but file this objection to ensure that the sale order presented to the Court provides Landlords with adequate assurance of future performance, prompt cure of all defaults, and compensation for losses incurred by the Landlords in connection with those defaults as required by section 365 of the Bankruptcy Code.

2. Specifically, and most importantly, the proposed assigned must comply with all terms of the Leases going forward. Additionally, (i) Debtors or the proposed assignee must cure all monetary and non-monetary defaults under the applicable Lease and compensate the Landlords for any pecuniary losses in connection with such defaults; (ii) Debtors must timely pay all post-petition rent and additional rent due under the Leases; (iii) the assignee must be responsible for all post-closing obligations under the Leases including but not limited to accrued but unbilled charges for common area maintenance, tax, insurance, and year end adjustment for such charges; and (iv) the proposed assignee must provide security for the performance of its obligations under the Leases as may be required by the Landlord pursuant to section 365(l) of the Bankruptcy Code.

3. Many of the issues surrounding cure and the terms of the proposed sale order have been resolved. The Landlords will continue to work with Debtors to address these outstanding issues, but reserve the right to argue them at the hearing if they remain unresolved.

**BACKGROUND**

4. Landlords are the owners or managing agents for the owners of numerous industrial, retail, and shopping center properties located throughout the United States, including the retail space and distribution centers leased by the Debtors pursuant to written leases (each, a "<u>Lease</u>," and, collectively, the "<u>Leases</u>") at the locations listed on **Exhibit 1**, attached hereto (collectively, the "<u>Leased Premises</u>"). Many of the Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code. *See, e.g., In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

5. On November 3, 2024 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief pursuant to chapter the Bankruptcy Code with this Court. The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On April 16, 2025, Debtors filed the *Motion for Entry of an Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter Into and Perform its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "<u>VS Sale Motion</u>").[2] On April 19, 2025, the Debtors filed the *Notice of Filing of Amended Schedule 1 to the Sale Order* ("<u>Cure Notice</u>").[3] The Cure Notice identified contracts that may be assumed and assigned as part of the sale, along with Debtors' proposed cure amount for each of the contracts.

---

[2] Docket No. 1283.

[3] Docket No. 1293.

The Debtors' initial proposed cure amounts for the Leases, as reflected in the Cure Notice, are included on **Exhibit 1**, attached hereto, in the column titled "Debtor Cure Amount."

## OBJECTION

### I.    Debtors Must Satisfy The Correct Cure Amounts Before The Leases Can Be Assigned

7.    Since the filing of the Cure Notice, the Debtors and Landlords have reconciled many of the unpaid pre-petition cure amounts, subject to certain qualifiers mentioned herein. The updated cure amounts for each of the Leases as of April 15, 2025 are set forth on **Exhibit 1**, attached hereto, in the column titled "Corrected Cure Amount," subject to two caveats.

8.    First, as part of their pecuniary losses, the Landlords are entitled to attorneys' fees in connection with Debtors' obligation to cure all monetary defaults under the Leases and attorneys' fees will continue to accrue until and through the closing. The Debtors and Landlords have agreed to determine the full amount outstanding and owing closer to the closing. As a result, the Corrected Cure Amounts include only an estimate of attorneys' fees, and remain subject to further reconciliation as to the amounts that will be included in the final cure amounts as agreed by the parties or determined by the Court.

9.    Second, to the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or Landlords suffer other pecuniary losses with respect to the Leases, Landlords reserve the right to amend the Corrected Cure Amounts to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2023, 2024, and 2025, which have not yet been billed or have not yet become due under the terms of the Leases (the "Adjustment Amounts"). Debtors must be responsible for satisfying all accrued but unbilled obligations under the Leases, including the Adjustment Amounts, if any, when due in accordance with the terms of the Leases, regardless of when such Adjustment Amounts were incurred. Landlords further reserve the right to amend the Corrected Cure Amounts to include

additional amounts that continue to accrue, including non-monetary obligations, and any other obligations that arise and/or become known to Landlords prior to the assumption and assignment of the Leases.

## II. The Leases Must Be Assumed Cum Onere

10. Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption of a shopping center lease "is subject to all the provisions thereof…". 11 U.S.C. § 365(b)(3)(C). Bankruptcy courts have described the assumption of an unexpired lease as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003); *In re Thane, Ltd.*, 586 B.R. 540, 546-49 (Bankr. D. Del. 2018).

11. As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach"). Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign

5

a lease *cum onere* – with all benefits and burdens. *See, e.g., American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

12. Furthermore, Debtors or the proposed assignee must be required to comply with all contractual obligations to indemnify and hold Landlords harmless for events which occurred before assumption and assignment, but which were not known to Landlords as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) Debtors or the proposed assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the applicable Landlord is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

13. Finally, in connection with the assumption and assignment of the Leases, the Landlords request that the proposed assignee be required to execute short-form assumption and assignment agreements putting them in privity with their new Landlords.

**III.    Demand For Security**

14. Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a

>>deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

15. In the ordinary course of business, Landlords typically require security deposits, letters of credit, or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their creditworthiness, financial information and operational history. In connection with the proposed assumption and assignment of the Leases, Landlords reserve the right to demand such security in one of those forms as required by section 365(l) of the Bankruptcy Code from the assignee of the applicable Leases.

### IV. Debtors Must Be Responsible For Timely Payment Of All Post-Petition Rent And Additional Rent Due Under The Leases Until They Are Assumed, Assumed And Assigned, or Rejected

16. Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

>>The [debtor] shall timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 U.S.C. § 365(d)(3).

17. Landlords request that the assumption and assignment of the Leases be conditioned upon Debtors' timely performance of all obligations arising under the Leases before the Leases are assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code, including, without limitation, the payment in full of rent and additional rent on the first day of each month.

**RESERVATION OF RIGHTS AND JOINDER**

18. Landlords reserve the right to amend and/or supplement this Objection on any basis, including, without limitation, by amending the Corrected Cure Amounts and by adding or supplementing objections to the proposed assignment or adequate assurance of future performance information provided by Debtors.

19. To the extent not inconsistent with this Objection, Landlords join in the objections of other landlords and contract counterparties.

**CONCLUSION**

**WHEREFORE**, Landlords respectfully request that the Court enter an order (i) conditioning the assumption and assignment of the Leases pursuant to the VS Sale Motion on (a) Debtors or the proposed assignee promptly paying the cure amounts set forth in the column titled "Corrected Cure Amount" on **Exhibit 1**, attached hereto, plus any additional pecuniary losses suffered by Landlords; (b) the assignee assuming all post-closing obligations under the Leases including but not limited to accrued but unbilled charges for common area maintenance, tax, insurance, and year end adjustment for such charges; (c) the proposed assignee providing security for the performance of its obligations under the Leases as may be required by the Landlord pursuant to section 365(l) of the Bankruptcy Code, and (ii) granting such other and further relief as the Court deems just and proper.

[*signature page follows*]

Dated:  April 29, 2025

**LAW OFFICE OF SUSAN E. KAUFMAN, LLC**

*/s/ Susan E. Kaufman*
Susan E. Kaufman (DE Bar No. 3381)
919 N. Market Street, Suite 460
Wilmington, DE 19801
Tel: (302) 472-7420
Fax: (302) 792-7420
Email: skaufman@skaufmanlaw.com

-and-

**KELLEY DRYE & WARREN LLP**
Robert L. LeHane
Jennifer D. Raviele
Allison B. Selick
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
Email: rlehane@kelleydrye.com
          jraviele@kelleydrye.com
          aselick@kelleydrye.com