## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRANCHISE GROUP, INC., *et al.,*[1] | ) | Case No. 24-12480 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 1269** |

### DEBTORS' OBJECTION
### TO MOTION OF GRANITE TELECOMMUNICATIONS, LLC
### FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby file this objection (this "Objection") in response to the *Motion of Granite*

*Telecommunications, LLC for Allowance and Payment of Administrative Expense Claim*

[Docket No. 1269] (the "Payment Motion")[2] filed by or on behalf of Granite Telecommunications,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Payment Motion.

LLC ("Granite") seeking entry of an order (i) allowing an administrative expense claim against the Debtors arising from asserted postpetition obligations (the "Claim") and (ii) granting other and further relief as necessary and appropriate.  In support of this Objection, the Debtors respectfully state as follows:

## Objection

1.      Granite seeks allowance and payment of an administrative expense claim for certain asserted voice and data services to American Freight (as defined below) but, simply put, there is no basis or evidence supporting that such asserted claim is entitled to administrative priority ahead of other creditors.  Granite's services have been fully disconnected from the Debtors at all but thirty-four (34) of approximately 380 locations since December 31, 2024, and Granite stopped providing voice and data services entirely when Granite was replaced by an alternative provider on or about April 8, 2025.  Of the astonishing $5.8 million that Granite asserts is entitled to administrative status, zero is on account of voice and data services provided to any of the Debtors. Instead, the asserted claim is on account of termination fees arising under a liquidated damages provision of the Contract (as defined below) that accelerate (but do not reduce) the cost to the Debtors.  Granite has no basis for demanding administrative expense priority on account of termination fees for its discontinued contract,[3] which fees provide no benefit to the Debtors' estates (the "Debtors' Estates").  Accordingly, the Court should deny Granite's Payment Motion.

## Background

2.      Franchise Group, Inc., together with its Debtor and non-Debtor affiliates is a privately held operator and acquirer of franchised and franchisable businesses and the premier

---

[3]    The Debtors identified the Contract to be rejected as of April 30, 2025 in the *Plan Supplement for the Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1182].

solution for catapulting franchise brands forward.  With over 100 years of combined franchising and operational expertise, the Debtors provide a first-class environment for operating companies and their associates to thrive by partnering with strong management teams who are committed to growth through franchising.  The Debtors' business segments include a diverse collection of highly recognized, market-leading, and emerging retail brands, including the Vitamin Shoppe, Pet Supplies Plus, American Freight, and Buddy's Home Furnishings.  As of the Petition Date (as defined below), the Debtors had approximately 2,200 total retail store locations (including both corporate-owned and franchised locations) and approximately 11,900 total employees spanning across the United States.

3.      On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 5, 2024, the Court entered an order [Docket No. 88] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On November 19, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 188] (the "Committee").  On January 15, 2025, the Debtors appointed a fee examiner [Docket No. 747].

4.      Prior to the Petition Date, Granite and Debtor American Freight Outlet Stores, LLC ("American Freight") entered into a contract, executed on or around September 30, 2011, as since amended, for Granite to provide telephone, internet, and data services at multiple commercial facilities of the Debtors (the "Contract").

5.      On December 6, 2024, the Court entered the *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section 503(B)(9) of the Bankruptcy Code) and (B) Approving the Form and Manner of Notice Thereof* [Docket No. 354].

6.      On December 31, 2024, at the direction of American Freight, Granite's services to the Debtors were disconnected at all but thirty-four (34) locations.  Beginning March 7, 2025, the Debtors began transitioning the remaining thirty-four (34) locations to an alternate service provider.  On April 8, 2025, Granite disconnected services at the remaining thirty-four (34) American Freight locations per the request of American Freight.  The Debtors paid Granite in the ordinary course for all services it performed prior to disconnection.

7.      Nevertheless, on March 17, 2025, Granite sent the Debtors a notice that asserted postpetition balances and a request for payment from the Debtors in the "full amount duly owed."[4] In this notice, Granite asserted that American Freight owed Granite $5,845,263.77 in postpetition charges, of which $450,201.93 was past due.  While the notice provided a limited breakdown of invoices issued during the postpetition period from November 3, 2024, through January 1, 2025, it failed to indicate that the owed amounts were for termination fees under the Contract.

8.      On March 31, 2025, the Debtors communicated with Granite that American Freight was current on all undisputed postpetition amounts that were due and payable in the ordinary course.  *See* Email from Z. Ben-Shahar, Mar. 31, 2025, Payment Motion Exhibit E [Docket No. 1269].  The Debtors paid approximately $709,176.20 in undisputed postpetition payments in the ordinary course for Granite's ongoing services to the Debtors, including

---

[4]    "Granite has not received payment for these amounts within an appropriate grace period.  Accordingly, Granite respectfully requests disbursement from the Adequate Assurance Account in the full amount duly owed."  *See* Email from K. MacQueen, Mar. 17, 2025, Payment Motion Exhibit C [Docket No. 1269].

$397,182.55 at American Freight.  The Debtors continued to express their intention to work with Granite to resolve ongoing disputes.

9.      The Debtors have engaged in good faith discussions to mutually resolve Granite's concerns regarding postpetition amounts owed.  The Debtors have similarly engaged with a considerable number of vendors, landlords, and service providers, and have been consistently forthright in paying undisputed postpetition administrative expenses in the ordinary course.

10.     Despite ongoing good faith effort by the Debtors to engage and resolve the disputed amounts, Granite filed the Payment Motion on April 9, 2025.

11.     In the Payment Motion, Granite alleges an administrative expense claim of $5,848,302.51.  The $5,848,302.51 asserted is on account of termination fees that arise under an accelerated damages provision of the Contract, allegedly triggered by the Debtors disconnecting Granite's services at certain locations prior to the end of a "service term."  Granite conspicuously does not mention in the Payment Motion that its Claim relates to termination fees, as opposed to services that provided an actual benefit to the Debtors' Estates.

### Argument

12.     The Debtors object to the Payment Motion on two primary grounds.  *First*, Granite has not met its burden that the amount for which it seeks an administrative claim constitutes "actual, necessary costs and expenses" directly benefiting the Debtors' Estates as required by section 503 of the Bankruptcy Code.  *See* 11 U.S.C. § 503(b)(1)(A).  Granite may not rely on "[m]ere allegations, unsupported by evidence" to support its claim.  *Matter of TransAm. Nat. Gas Corp.*, 978 F.2d at 1416.  *Second*, Granite *cannot* meet its burden: Granite's $5,848,392.51 claim is related to termination fees that are categorically not entitled to administrative expense priority. *See, e.g., In re Old Carco LLC,* 424 B.R. 650, 650 (Bankr. S.D.N.Y. 2010) (denying administrative expense priority for contract termination-related payments).

5

**I.    Granite Has Not Put Forth Sufficient Evidence to Support Its Administrative Expense Claim.**

13.    It is well-settled that it is the movant's burden to demonstrate entitlement to an administrative expense claim.  *See In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir 2021) ("The party seeking to recover expenses must carry the heavy burden of demonstrating that such expenses qualify as an administrative expense.") (citing *In re Goody's Fam. Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010)) (internal quotation marks and citation omitted); *In re Valley Media, Inc.*, 279 B.R. 105, 140 (Bank. D. Del. 2002) ("To establish administrative expense priority, the burden is on the claimant to demonstrate that the obligation claimed as an administrative expense (1) arose out of a post-petition transaction with the debtor in possession and (2) directly and substantially benefitted the estate."); *In re Unidigital Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001) ("Claimants who seek payment ahead of other unsecured claims bear the burden of establishing that its claim qualifies for priority status.").  Instead of meeting its burden by showing that the Claim constitutes "actual, necessary costs and expenses of preserving the estate" under section 503(b)(1)(A) of the Bankruptcy Code, Granite instead argues that the requirement of a "benefit" is just a "judicial gloss" or shorthand for testing whether the costs asserted were actually necessary.  Payment Motion ¶ 19.  Granite's attempt to obfuscate the standard does not eliminate its burden.

14.    Section 503(b) of the Bankruptcy Code provides special priority for "actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commission for services rendered after the commencement of the case."  11 U.S.C. § 503(b)(1)(A).  This priority is meant to facilitate a debtor's reorganization efforts and encourage third parties that would otherwise be reluctant to transact business with the debtor in possession.  *See, e.g., In re ASARCO LLC*, 441 B.R. 813, 824 (S.D. Tex. 2010), *aff'd sub nom. In re ASARCO, L.L.C.*,

650 F.3d 593 (5th Cir. 2011) ("The award of administrative expenses for 'actual and necessary' costs . . . provides 'third parties who lend goods or services necessary to the successful reorganization of the debtor's estate with priority claims over those of unsecured creditors.").

15.    Not all of a debtor's postpetition expenses or obligations warrant administrative priority; rather, administrative priority applies only to a select subset of a debtor's overall expenses, and such expenses must be both "actual" and "necessary" to preserve the estate. *See* 11 U.S.C. § 503(b)(1)(A); *In re Unidigital Inc.*, 262 B.R. at 288 ("Determining whether a creditor has an administrative claim is a two-prong test:  the expense must have arisen from a post-petition transaction between the creditor and the debtor, and the transaction must have been 'actual and necessary' to preserve the estate.").  "The words 'actual' and 'necessary' have been construed narrowly:  the debt must benefit [the] estate and its creditors." *Toma Steel Supply, Inc. v. TransAm. Nat. Gas Corp. (Matter of TransAm. Nat. Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992) (internal citations omitted); *see also In re G-I Holdings, Inc.*, 308 B.R. 196, 202 (Bankr. D.N.J. 2004) ("In order for an expense to qualify as 'actual' and 'necessary,' the claim must benefit the estate as a whole.").  Indeed, "[t]here must be an actual concrete benefit to the estate before a claim is allowable as an administrative expense." *In re Grand Union Co.*, 266 B.R. 621, 628 (Bankr. D.N.J. 2001) (quoting *Broad. Corp. of Ga. v. Broadfoot (In re Subscription Tel. of Greater Atlanta)*, 789 F.2d 1530, 1532 (11th Cir. 1986)); *In re Energy Future Holdings Corp.*, 990 F.3d at 741; *see also NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991); *In re Phila. Mortg. Trust*, 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990) ("The services performed which generated the costs and expenses must benefit the debtor-in-possession and not merely further the self-interest of the particular claimant.") (internal quotations omitted); *In re Chateaugay Corp.*, 102 B.R. 335, 353–54 (Bankr. S.D.N.Y. 1989) (explaining that, for equitable considerations

7

between parties, priorities are to be narrowly construed, and "if one claimant is to be preferred over others, the purpose should be clear from the statute.") (internal citation omitted).

16.     In an application for payment of an administrative expense, "the burden of proof is on the claimant to establish that the goods or services provided actually benefited the estate and were necessary to preserve the value of the estate's assets." *See, e.g.*, *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999); *see also Woods v. City Nat. Bank & Trust Co. of Chi.*, 312 U.S. 262, 268 (1941) (explaining that claims for "expenses in connection with the reorganization . . . may be allowed," but that "[t]he claimant . . . has the burden of proving [such claims'] worth"); *Matter of TransAm. Nat. Gas Corp.*, 978 F.2d at 1416 (finding that the burden of proof rests with the claimant, and "[m]ere allegations, unsupported by evidence, are insufficient to rebut the movant's prima facie case"); *In re Hemingway Transp., Inc.*, 954 F.2d 1, 5 (1st Cir. 1992) ("The burden of proving entitlement to priority payment as an administrative expense . . . rests with the party requesting it."); *In re Beverage Canners Intern. Corp.*, 255 B.R. 89, 91 (Bankr. S.D. Fla. 2000) (same).  In this way, the application for administrative expense is unlike the proof of claim, under section 502 of the Bankruptcy Code, where the proof of claim constitutes prima facie evidence of the nature and the amount of the debt which the debtor must rebut.  *See In re New WEI, Inc.*, Case No. 15-02741-TOM-7, 2018 WL 1115200, at *3 (Bankr. N.D. Ala. Feb. 26, 2018).

17.     Creditors bear the burden of establishing for which debtor's estate's benefit the costs were incurred when seeking administrative priority status for its claims.  *See, e.g.*, *In re Hemingway Transp., Inc.*, 954 F.2d at 5 (providing that claimants seeking administrative priority status bear the burden of establishing that their claim so qualifies); *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 659 (Bankr. D. Del. 2003) (same); *In re Unidigital, Inc.*, 262 B.R. at 288

(same); *In re Columbia Gas Syst., Inc.*, 224 B.R. 540, 549 (Bankr. D. Del. 1998) (same); *In re Smith Corona Corp.*, 210 B.R. 243, 245 (Bankr. D. Del. 1997) (same).  This burden is a heavy one for parties seeking administrative priority status and requires "demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate." *In re Exide Techs.*, 601 B.R. 271, 285 (Bankr. D. Del. 2019). *See also* ¶ 13, *supra*.  The benefit to the estate "must run to the debtor in possession and it is typically fundamental to the conduction of its business." *Matter of Cont'l Airlines, Inc.*, 146 B.R. 520, 526 (Bankr. D. Del. Aug. 6, 1992).

18.    Granite has not met and cannot meet its burden.  Granite asserts that it is owed $5,848,302.51 as an administrative expense claim, but the Payment Motion and supporting declaration (the "McGill Declaration") fail to assert *any* basis for the total amount of the Claim being based on Granite providing an actual or potential benefit to the Debtors' Estates, or any metric of potential benefit.  The reason is transparent enough:  the amounts paid on account of services that benefited the estate were undisputed, and these undisputed amounts have already been paid in the ordinary course.  *See* Email from Z. Ben-Shahar, Mar. 31, 2025, Payment Motion Exhibit E [Docket No. 1269].  The remaining balance of $5,848,302.51 is unpaid because it arises on account of termination fees—in other words, contract damages—and should therefore be treated as a general unsecured claim.

19.    In order to cut ahead of other creditors and receive administrative priority on this otherwise unsecured claim, Granite must demonstrate that such amount was incurred in providing an actual and necessary benefit the Debtors' Estates.  Granite makes no such showing of a benefit to the Debtors' Estates, nor even a showing that any of the Claim relates to postpetition services provided to the Debtors to benefit and preserve their estates.  Granite simply thinks it is entitled to cut ahead of other claim holders contrary to bedrock principles of the Bankruptcy Code and

applicable caselaw.  *See In re SemCrude, L.P.*, 399 B.R. 388, 399 (Bankr. D. Del. 2009) ("One of the primary goals—if not the primary goal—of the Code is to ensure that similarly-situated creditors are treated fairly and enjoy an equality of distribution from a debtor absent a compelling reason to depart from this principle").

20.     Moreover, Granite has the burden of showing that the fees for which it seeks administrative priority was necessary to preserve to the Debtors' Estates.  Granite has made no attempt to do so because such fees clearly provided no benefit to the Debtors' Estates.  Therefore, Granite has not provided and cannot provide sufficient evidence to assert that such claim would be accorded administrative priority status.  Accordingly, the Payment Motion fails to establish an allowable claim against the Debtors that would be entitled to administrative priority.  The Debtors thus request that the Court deny the Payment Motion.

**II.     As a Matter of Law, Termination Fees Are Not Entitled to Administrative Expense Priority.**

21.     To determine whether a claim merits administrative priority, a court analyzes whether (a) the liability arose from a transaction with the estate, and (b) such transaction substantially and directly benefitted the estate.  *In re O'Brien Env't. Energy, Inc.*, 181 F.3d at 532–33 (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)).

22.     Administrative priority applies only to a debtor's expenses which are both "actual" and "necessary" to preserve the estate.  *See* 11 U.S.C. § 503(b)(1)(A); *In re Unidigital Inc.*, 262 B.R. at 288 (Bankr. D. Del. 2001).  "The words 'actual' and 'necessary' have been construed narrowly:  the debt must benefit [the] estate and its creditors." *Toma Steel Supply, Inc. v. TransAm. Nat. Gas Corp. (Matter of TransAm. Nat. Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992) (internal citations omitted).  Indeed, "[t]here must be an actual concrete benefit to the estate before a claim is allowable as an administrative expense." *In re Grand Union Co.*, 266 B.R. 621, 628 (Bankr.

D.N.J. 2001) (quoting *Broad. Corp. of Ga. v. Broadfoot (In re Subscription Tel. of Greater Atlanta)*, 789 F.2d 1530, 1532 (11th Cir. 1986)); *In re Phila. Mortg. Trust*, 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990) ("The services performed which generated the costs and expenses must benefit the debtor-in-possession and not merely further the self-interest of the particular claimant.") (internal quotations omitted).  Moreover, the Third Circuit has held that this provision of the Bankruptcy Code "limits recovery to those claims that are actual and necessary [to] prevent[] the estate from being consumed by administrative expenses [] and preserve[] the estate for the benefit of the creditors." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir 2021) (quoting *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 315 (3d Cir. 2011) (internal quotations omitted)).

23.     Granite does not address how its fees associated with service disconnection benefitted the Debtors' Estates in its Payment Motion for one reason:  they do not.  Instead, Granite attempts to distract from its evidentiary burden by insisting that the Debtors cannot use the fact that certain charges did not benefit the Debtors' Estates as a basis to object to Granite's administrative claim.  But this is irrelevant because the claim for which Granite seeks administrative priority is comprised of termination fees which are not entitled to administrative expense priority under any reading of the Bankruptcy Code or applicable caselaw.

24.     The Debtors have had multiple exchanges with Granite explaining that, while the Debtors will pay invoices for postpetition services actually rendered in the ordinary course, termination fees provide no benefit to the Debtors' Estates, and thus are not entitled to administrative priority.  Despite these exchanges, neither Granite's Payment Motion, nor the McGill Declaration, addresses the issue.  Instead, Granite baldly asserts that the Debtors owe approximately $5.8 million in administrative expenses for postpetition voice and data services,

without acknowledging the true nature of the charges.  Because Granite's contract damages claim, comprised of termination fees, provided no benefit to the Debtors' Estates, Granite is not entitled to administrative priority.

25.     In its Payment Motion, Granite cites to *In re MTE Holdings LLC*, 2021 WL 2258270 (Bakr. D. Del. June 2, 2021), in which the court held that creditors can be entitled to administrative claims, even if no increased "profit, revenue, or competitive position" was obtained by the estate.  Payment Motion ¶ 20.  In *MTE Holdings*, however, the debtor did not dispute that the creditor in fact provided services to the debtor post-petition and that the creditor's invoices accurately reflected the value of those services.  Here, Granite's invoices do not relate to services provided to the Debtors at all, but rather to purported termination fees.  *MTE Holdings* is therefore inapposite.

26.     Granite's Payment Motion also relies on *In re Smurfit-Stone Container Corp.*, in which the court held that a debtor must pay the *reasonable value of services received* through an executory contract pending assumption or rejection of that contract.  425 B.R. 735, 741 (Bankr. D. Del. 2010) (emphasis added).  Granite immediately thereafter asserts its $5.8 million claim—which is comprised of termination fees for its discontinued contract—without explanation for how the Claim is for "reasonable value of services received."

27.     Additionally, per Amendment No. 2 to the Master Services Agreement, dated as of July 1, 2019, the formula for calculating early termination fees includes "100% of the monthly recurring charges for the remaining number of months under the then current Service Term," plus various additional costs.  *See* Amendment No. 2 To Master Services Agreement, Attachment 1, Section 2.2.  Thus, Granite's asserted amount is comprised of the acceleration of monthly payments for *future* performance, which is diametrically opposed to the 'reasonable value of

services received' that Granite argues for in its Payment Motion.  Granite relies on *Smurfit* for allowance of administrative priority on account of the reasonable value of services provided prior to contract rejection, but *Smurfit* does not support administrative priority for accelerated payments on account of future services not provided, nor for administrative priority of liquidated contract damages.  425 B.R. at 741–42.  To the contrary, accelerated future payments are general unsecured claims.  *See, e.g., In re Trans World Airlines, Inc.*, 145 F.3d 124 (3d Cir. 1998) ("If [a] lease is rejected, a creditor's claim for the stream of future rental payments due under the now-rejected lease is denied post-petition administrative status and is treated as an unsecured prepetition claim.").  It is hard to see how costs associated with terminating services provide an actual and direct benefit to the Debtors' Estates.  It is simple—they do not.  Granite cannot meet its burden as a matter of law.

28.      In addition to the lack of actual and direct benefit to the Debtors' Estates provided by Granite's termination fees, these costs associated with service disconnection are ineligible for administrative expense priority for yet another reason.  In circumstances where a contract is entered into prepetition and is terminated postpetition, bankruptcy courts regularly find that termination penalties arising from the postpetition termination are prepetition rather than postpetition claims.  *See, e.g., In re Old Carco*, 424 B.R. 650 at 657, 662 (Bankr. S.D.N.Y. 2010) (denying administrative expense priority for payments arising from a contractual termination); *In re Uly-Pak, Inc.*, 128 B.R. 763, 768 (Bankr. S.D. Ill. 1991) (denying administrative expense claim for termination of employment agreement); *In re FBI Distribution Corp.*, 330 F.3d 36, 45 (1st Cir. 2003) (same); *see also Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101–104 (2d Cir. 1986) (stating that "[a] debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate").

13

29.    Similarly, Granite has not established, nor could it, that a postpetition transaction occurred between Granite and the Debtors, as required by section 503(b)(1)(A) of the Bankruptcy Code.  *See In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir 2021) (citations omitted).  This Court has held that "the fact that a pre-petition obligation may be dependent upon the occurrence of a post-petition event does not make the obligation an administrative claim."  *In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 828 (Bankr. D. Del. 2002).  The termination fees asserted by Granite, not unlike claims asserted under indemnification provisions, fail to establish this necessary element of an administrative expense claim.

30.    Here, the amendment providing for the termination fees was entered into in 2019, long before the Petition Date.  *See* Amendment No. 2 To Master Services Agreement, Attachment 1, Section 2.2.  This is not unlike indemnification provisions, which courts consistently find do not provide administrative expense priority for, among other reasons, lack of a postpetition transaction.  *See In re Pinnacle Brands, Inc.*, 259 B.R. 46, 51–52 (Bankr. D. Del. 2001) (holding no postpetition transaction related to indemnification provision based on sale contract executed prepetition, stating "indemnification claim is not premised on any post-petition contract or transaction"); *In re Mid-American Waste Sys. Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999) (finding no postpetition transaction related to indemnification provision which was entered into prepetition and covered the movants for the prepetition period); *Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 188 B.R. 347, 359 (Bankr. S.D.N.Y. 1995) (holding that because the agreement at issue was executed pre-petition, any contractual right to indemnification arising therefrom would be a pre-petition unsecured claim).

31.    Courts have determined that when looking to priority of asserted administrative claims, courts must look to the acts giving rise to the claim, not when they accrued.  *In re Waste*

*Sys. Int'l, Inc.*, 280 B.R. at 828 (citing *In re M. Grp., Inc.*, 268 B.R. 896, 901 (Bankr. D. Del. 2001); *In re Nationwise Automotive, Inc.*, 250 B.R. 900, 903 (Bankr. S.D. Ohio 2000)).  Stated differently, to assert an administrative expense claim, the liability for payment must arise postpetition and a mere right to payment occurring postpetition is insufficient.  *In re G-I Holdings, Inc.*, 308 B.R. at 210 (citing *In re Commercial Fin. Servs. Inc.*, 246 F.3d 1291, 1294 (10th Cir. 2001)).  Where, as here, the obligation arises prepetition and is dependent on an event or occurrence which occurs postpetition, the prepetition obligation does not become an administrative claim.  *Id.* (citing *In re M. Grp.*, 268 B.R. at 901 (it is not determinative that payment was contingent upon post-petition event where liability arose pre-petition)).  Rather, what is of consequence is that the Debtors and Granite agreed prepetition that on the event of early termination certain termination fees would apply.  *See G-I Holdings*, 308 B.R. at 210 ("[T]he Debtor's liability for indemnification or contribution arose at the time the [] Agreement was executed, almost six years before the filing for bankruptcy.").  Accordingly, the occurrence of the event of early termination, purportedly giving rise to the termination fees, relates only to the amount of the claim, not its priority.  *See In re Waste Sys. Int'l, Inc.*, 280 B.R. at 828.

32.    The Contract between Granite and American Freight, and the subsequent amendments contracting for and calculating termination fees, were all entered into in advance of the Petition Date.  Services for all but thirty-four (34) of the American Freight stores were disconnected as of December 31, 2024, and services for the remaining stores were disconnected as of April 8, 2025.  Thus, any obligations for fees for the termination of these services, which provide no benefit to the Debtors, arose under the Contract executed prepetition, and therefore the Claims amount to prepetition rather than postpetition claims and should not be afforded administrative expense priority.

33.     For the reasons stated herein, the Payment Motion should be denied because Granite's claims for termination fees are not entitled to administrative priority status.

### Reservation of Rights

34.     Nothing contained in this Objection or any order granting the relief requested in this Objection, and no action taken by the Debtors pursuant to the relief requested or granted, is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law, including, without limitation, with respect to the Debtors' insurance policies and coverage thereunder and the Claim, or shall waive, impair, prejudice, or otherwise affect any rights, claims, defenses, arguments, or remedies of the Debtors or their estates (or any successors thereto) with respect to such matters, including, without limitation, in any proceedings before this Court or in any other court; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' Estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

### Notice

35.     The Debtors will provide notice of this Objection to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the ABL

16

Lenders; (d) counsel to the Ad Hoc Group of First Lien Lenders; (e) counsel to the Second Lien

Term Loan Lenders; (f) counsel to the HoldCo Lenders; (g) counsel to the DIP Agent; (h) counsel

to the DIP Lenders; (i) counsel to Granite; and (j) any party that is entitled to notice pursuant to

Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no

other or further notice need be given.

[<em>Remainder of Page Intentionally Left Blank</em>]

WHEREFORE, the Debtors respectfully request that the Court deny the Payment Motion and grant the Debtors such other and such other relief as the Court deems appropriate under the circumstances.

Dated:  April 29, 2025
Wilmington, Delaware

*/s/ Matthew B. Lunn*

**YOUNG CONAWAY STARGATT &**
**TAYLOR, LLP**
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:      (302) 571-1253
Email:          emorton@ycst.com
                mlunn@ycst.com
                amielke@ycst.com
                sborovinskaya@ycst.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com
                ngreenblatt@kirkland.com
                derek.hunter@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone:     (415) 439-1400
Facsimile:      (415) 439-1500
Email:          mark.mckane@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*Co-Counsel to the Debtors*
*and Debtors in Possession*