## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1283, 1293** |
| | **Obj. Deadline:  April 29, 2025 at 4:00 p.m. (ET)** |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS OF COMMERCE 9005 LLC AND COMMERCE #9602 LLC TO DEBTORS' PROPOSED CURE AMOUNTS AND ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES

Commerce 9005 LLC f/k/a Commerce Limited Partnership #9005 ("<u>Commerce 9005</u>") and

Commerce #9602 LLC f/k/a Commerce Limited Partnership #9602 ("<u>Commerce 9602</u>" and

together with Commerce 9005, "<u>Commerce</u>"), by and through their undersigned counsel, hereby

submit this limited objection and reservation of rights (this "<u>Objection</u>") to the potential

assumption and assignment of the Leases (as defined below) by the above-captioned debtors

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

(collectively, "Debtors") and the Cure Notice (as defined below). In support of this Objection, Commerce respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Commerce does not generally oppose the sale of the Vitamin Shoppe Debtors' assets but files this Objection to ensure that: (i) the proposed assignee complies with all Lease terms; (ii) all monetary and non-monetary defaults are cured and Commerce is compensated for related losses; (iii) all postpetition rent and additional rent are paid timely; (iv) the assignee assumes all post-closing Lease obligations, including unbilled charges and year-end adjustments; and (v) adequate assurance of future performance is provided.

2.      While Commerce is hopeful that ongoing discussions with the Debtors will continue to be productive, Commerce files this Objection out of an abundance of caution to preserve its rights as to the Leases.

## BACKGROUND

### A.      The Debtors' Bankruptcy Cases

3.      On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

4.      On November 19, 2024, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [D.I. 188].

5.      The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On April 16, 2025, Debtors filed the *Motion for Entry of an Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter Into and Perform its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1283] (the "Sale Motion"). On April 19, 2025, the Debtors filed the *Notice of Filing of Amended Schedule 1 to the Sale Order* [D.I. 1293] ("Cure Notice"). The Cure Notice identified certain contracts (including the Leases) that may be assumed and assigned as part of the sale (the "Proposed Assumption"). The Cure Notice incorrectly lists $0 as the cure amount for each of the Leases.

### B.    The Leases

#### (i)    *The King of Prussia Lease*

7.      Commerce #9005, as landlord, and Debtor Vitamin Shoppe Industries LLC f/k/a Vitamin Shoppe Industries, Inc., as tenant, are parties to that certain *Agreement of Lease* (the "King of Prussia Original Lease") for the lease of certain premises located at 445 West DeKalb Pike, Upper Merion Township, Pennsylvania (the "King of Prussia Premises"), as supplemented by the *First Amendment to Agreement of Lease* dated September 25, 2006 (the "King of Prussia First Amendment") and the *Second Amendment to Agreement of Lease* dated June 7, 2013 (the "King of Prussia Second Amendment" and collectively with the King of Prussia Original Lease and King of Prussia First Amendment, the "King of Prussia Lease").

#### (ii)    *The Mobile Lease*

8.      Commerce 9602, as landlord, and Debtor Vitamin Shoppe Industries LLC f/k/a Vitamin Shoppe Industries, Inc., as tenant, are parties to that certain *Agreement of Lease* (the "Mobile Original Lease") for the lease of certain premises located at 3659 Airport Boulevard,

Mobile, Alabama (the "Mobile Premises" and together with the King of Prussia Premises, the "Premises"), as supplemented by the *First Amendment to Agreement of Lease* dated June 19, 2020 (the "Mobile First Amendment") and the *Second Amendment to Agreement of Lease* dated December 20, 2021 (the "Mobile Second Amendment" and collectively with the Mobile Original Lease and Mobile First Amendment, the "Mobile Lease" and together with the King of Prussia Lease, the "Leases").

### (iii)    *Obligations Under the Leases*

9.      The Leases are unexpired leases of nonresidential real property.  Each of the Premises related to the Leases is within a "shopping center" as that term in used in §365(b)(3) of the Bankruptcy Code.  *See Androse Assocs. of Allaire, LLC v. A&P (In re A&P)*, 472 B.R. 666, 677 (Bankr. S.D.N.Y. 2012); *see also In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086 (3d. Cir. 1990).

10.     Each of the Leases requires Debtor Vitamin Shoppe Industries LLC to make payments of Rent[2] and additional amounts, including, without limitation, taxes, insurance premiums, and late fees (collectively, "Rent").  *See King of Prussia Original Lease*, §§ 2.02, 2.05; Mobile Original Lease, § 2.02.  Rent owed under the Commerce Leases continues to accrue post-Petition Date.

11.     Additionally, each of the Leases contains various maintenance, surrender, and indemnification obligations of Debtor Vitamin Shoppe Industries LLC, as more fully described in each relevant Lease (collectively, the "Non-Monetary Obligations").

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in each applicable Lease described herein or the Sale Motion, as the context requires.   Upon information and belief, the Debtors have copies of the Leases.   The Leases are available upon written request to the undersigned counsel.

12.    Commerce has reconciled the proposed cure amount to the minimum amount owed under each Lease (the "Minimum Cure Amount").    The Minimum Cure Amount for each Lease is set forth below:

| KING OF PRUSSIA LEASE \| MINIMUM CURE AMOUNT | | | | | | |
|---|---|---|---|---|---|---|
| Rent | 2020 Reconciliation | 2021 Reconciliation | 2022 Reconciliation | 2023 Reconciliation | Late Charges | Total |
| $13,290.00 | $6,431.51 | $6,829.72 | $13,947.15 | $192.50 | $1,329.00 | **$41,374.67**[3] |

| MOBILE LEASE \| MINIMUM CURE AMOUNT | | | | | | |
|---|---|---|---|---|---|---|
| 2019 Reconciliation | 2020 Reconciliation | 2021 Reconciliation | 2022 Reconciliation | 2023 Reconciliation | 2024 Reconciliation | Total |
| $12,112.34 | $11,934.69 | $14,835.40 | $16,181.09 | $16,613.22 | $19,692.35 | **$91,369.09** |

13.    The Minimum Cure Amounts set forth above do not include amounts owed for maintenance and/or repairs for any of the Premises, which amounts would also need to be cured prior to any assumption and/or assignment.

## LIMITED OBJECTION AND RESERVATION OF RIGHTS

14.    Commerce does not, in principle, object to the Proposed Sale or Proposed Assumption.    However, to the extent any of the proposed cure amounts identified in the Cure Notice differ from the Minimum Cure Amount for either Lease, the Debtors and/or the Purchaser must agree to pay the Minimum Cure Amount prior to or upon assumption.    Debtors must also provide adequate assurance of future performance.

**A.    The Proposed Cure Amounts Fail to Provide for the Payment of All Obligations Due Under the Leases.**

15.    The Bankruptcy Code generally authorizes a debtor, with bankruptcy court approval, to assume an executory contract or unexpired lease.  Section 365(a) provides, in relevant

---

[3] This amount reflects the total Cure Cost under the King of Prussia Lease after applying an open credit of $645.21.

part, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

16.     Pursuant to section 365(b)(1)(A) of the Bankruptcy Code:

> If there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee . . . cures, or provides adequate assurance that the trustee will promptly cure, such default . . . .

11 U.S.C. § 365(b)(1)(A).

17.     A debtor generally is required to "cure all existing defaults" under an unexpired lease before assumption. *See Spyglass Media Grp., v. Bruce Cohen Prods. (In re Weinstein Co. Holdings, LLC)*, 997 F.3d 497, 505 (3d Cir. 2021). As such, "[c]ure is a critical component of assumption." *In re Thane Inter., Inc.*, 586 B.R. 540, 549 (Bankr. D. Del. 2018). "The language and intent behind § 365 is decisive . . . [and it] was clearly intended to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *Id.* (c*iting In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996)). "If the trustee is to assume a contract or lease, the court will have to ensure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain." *Id.* (citation to legislative history omitted). "[T]he term 'full benefit of his bargain' refers to 'the full amount due' under the contract or lease in question, as opposed to liabilities solely for future performance." *Id.*; *see also In re Handy Andy Home Improvement Centers, Inc.*, 196 B.R. 87, 93 (Bankr. N.D. Ill. 1996) (debtor must cure pre- and post-petition defaults prior to assumption).

18.     The Debtors owe Commerce no less than the Minimum Cure Amount for each Lease as of the filing of this Objection. These amounts, adjusted as necessary to reflect the unpaid obligations under the Leases as of the date of the ProposedAassumption, must be paid as a

condition precedent to the Debtors' assumption and assignment of the Leases under section 365(b)(1)(A) of the Bankruptcy Code.

19.    The Leases also provide for the tenant's payment of certain costs that have accrued but are not yet billed or due, such as costs related to common area maintenance, real estate taxes, utilities, percentage rent, overage rent, reconciliations, and attorneys' fees.  *See* 11 U.S.C. § 365(b)(1)(B); *see also, e.g.*, *In re Child World, Inc.*, 161 B.R. 349 (Bankr. S.D.N.Y. 1993) (indicating that section 365(b)(1)(B) allows for recovery of attorneys' fees based upon the language of the lease).  Debtors are obligated to pay the foregoing costs to cure any defaults. Commerce reserves the right to supplement this Objection prior to any final determination by the Court regarding assumption of the Leases, including the amount and payment required for purposes of cure under Section 365, as rent, attorneys' fees, and other charges continue to accrue.

20.    In the event the Debtors pay the correct Cure Amounts, the Debtors also must assume *all* of the obligations under the Leases—including the obligation to perform all Non-Monetary Obligations.  *See In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part. . . . The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits.").  Thus, Commerce objects to the Proposed Assumption of the Leases to the extent the Debtors purport to assume anything less than all the obligations thereunder, including, without limitation, the following Minimum Cure Amounts:

| Landlord Counterparty | Debtor-Tenant Counterparty | Minimum Cure Amount (USD) |
|---|---|---|
| Commerce 9005 LLC | Vitamin Shoppe Industries LLC | $41,374.67 |
| Commerce #9602 LLC | Vitamin Shoppe Industries LLC | $91,369.09 |

21.     The foregoing Minimum Cure Amounts (and any outstanding Rent) must be satisfied, and the Debtors must assume and assign the entire Leases and comply with the Non-Monetary Obligations thereunder.

**B.      The Debtors or the Purchaser Must Provide Commerce Adequate Assurance of Future Performance Under the Leases.**

22.     Under section 365(f)(2) of the Bankruptcy Code, a trustee or debtor-in-possession may assign an unexpired lease of the debtor only if:

> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

23.     "The statutory requirement of 'adequate assurance of future performance by the assignee' affords 'needed protection to the non-debtor party because the assignment relieves the trustee and the bankruptcy estate from liability for breaches arising after the assignment.'" *In re Fleming Cos.*, 499 F.3d 300, 305 (3d Cir. 2007) (citing *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001)); *see also In re Sanshoe Worldwide Corp.*, 139 B.R. 585, 592 (S.D.N.Y. 1992) (noting that this provision "was primarily designed to protect landlords.").

24.     The phrase adequate assurance of future performance "is to be given a practical and pragmatic construction based upon the facts and circumstances of each case." *Cinicola*, 248 F.3d at 120.   A party's satisfaction with such assurances must be based upon reason and not

be arbitrary or capricious.  *Id.*  In determining whether there has been adequate assurance of future performance of an executory contract, courts have considered the nature of the parties involved, their prior dealings, and the contents of the agreement.   *See, e.g.*, *In re Yardley*, 77 B.R. 643 (Bankr. M.D. Tenn. 1987).    Although a trustee and/or debtor need not provide an absolute guarantee of future performance, it must provide more than speculative plans to constitute adequate assurance.  *Cinicola*, 248 F.3d at 120; *see also In re Washington Cap. Aviation & Leasing*, 156 B.R. 167 (Bankr. E.D. Va. 1993).

25.    As of the date of this Objection, Commerce has not received any adequate assurance information from Purchaser.  Accordingly, Commerce cannot sufficiently determine whether Purchaser has the capacity to perform under the Leases.

### **RESERVATION OF RIGHTS**

26.    Commerce reserves the right to supplement or amend this Objection based upon additional information acquired by Commerce, and to introduce evidence at any hearing related to the chapter 11 cases, the assumption and assignment of the Leases, and/or this Objection. Further, Commerce reserves the right to otherwise amend, supplement, and/or otherwise modify this Objection and its Minimum Cure Amount and/or Rent, and to raise other and further objections to the assumption and assignment or cure amounts with respect to the Leases. Commerce additionally reserves the right to exercise all available remedies under the Leases to obtain possession of the Premises (subject to any applicable procedural limitations imposed by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure), and to assert claims against the Debtors (including, but not limited to, administrative expense claims under sections 365(d)(3) and/or 503(b) of the Bankruptcy Code and claims arising from the rejection of the Leases should

the Debtors later withdraw the proposed assumption or otherwise reject the Leases) at the appropriate time.

27.    Commerce further reserves its rights under with respect to adequate assurance of future performance under  Section 365(b)(3)(A-D) of the Bankruptcy Code.

## <u>CONCLUSION</u>

WHEREFORE, Commerce respectfully requests that the Court (i) predicate any entry of an order approving the Proposed Sale and Proposed Assumption on the Debtors' or Purchaser's (as applicable) (a) satisfaction of cure obligations as those exist at the time of the assumption and assignment and (b) provision of adequate assurance information for Commerce's consideration, and (ii) grant such other and further relief as is just and equitable.

Dated   April 29, 2025
      Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By:    */s/ Jason D. Angelo*
     Jason D. Angelo (No. 6009)
     Cameron A. Capp (No. 7173)
     1201 North Market Street, Suite 1500
     Wilmington, DE 19801
     Telephone:  (302) 778-7500
     Facsimile:  (302) 778-7575
     E-mail:  jangelo@reedsmith.com
          ccapp@reedsmith.com

*Counsel to Commerce 9005 LLC and Commerce #9602 LLC*