**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------

| | |
|---|---|
| In Re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: April 30, 2025 at 4:00 p.m. (ET)[2]**<br>**Hrg. Date: May 6, 2025 at 10:00 a.m. (ET)**<br>**Related to D.I. 1283 and 1293** |

---------------------------------------------------------

## OBJECTION OF BENENSON CAPITAL PARTNERS, LLC, BOSWELL AVENUE I, LLC, DLC MANAGEMENT CORPORATION, INLAND COMMERCIAL REAL ESTATE SERVICES LLC, AND NATIONAL REALTY & DEVELOPMENT CORP., TO THE PROPOSED (I) SALE AND (II) ASSUMPTION/ASSIGNMENT TO TVS BUYER, LLC

Benenson Capital Partners, LLC, Boswell Avenue, I, LLC, DLC Management Corporation, Inland Commercial Real Estate Services LLC, and National Realty & Development Corp., (collectively, the "Landlords"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the (i) *Debtor's Motion for Entry of an Order (I) Authorizing*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] The objection deadline was listed as April 29, 2025, but the TVS Sale Motion was filed on April 16, 2025; per a confirming email from Debtors' counsel, the Landlords' objection deadline is April 30, 2025.

31265899.2

*Franchise Group Intermediate V, LLC to Enter into and Perform its Obligations under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1283] (the "TVS Sale Motion"), and (ii) *Notice of Filing of Amended Schedule 1 to the Sale Order* [D.I. 1293] (the "Cure Notice"), and respectfully represent as follows:

## BACKGROUND

1.      On November 3, 2024 (the "Petition Date"), Franchise Group, Inc., and its debtor affiliates in the above-captioned chapter 11 cases (the "Debtors", and each a "Debtor") filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      Upon information and belief, the Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

3.      The Landlords or their affiliates are parties to unexpired leases of nonresidential real property (the "Leases" and each, a "Lease") of the premises identified in **Exhibit 1** hereto (the "Premises").

4.      The Premises are located within "shopping centers" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the TVS Sale Motion, APA (as defined herein), or Proposed Sale Order (as defined herein).

31265899.2

5.      On November 11, 2024, the Debtors filed their Plan of Reorganization [D.I. 150] and Disclosure Statement [D.I. 151].

6.      On November 11, 2024, the Debtors filed the *Debtors' Motion for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief; and (II) (A) Approving the Sale of the Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [D.I. 154] (the "Sale Procedures Motion"), which sought approval of bidding procedures for the potential sale of substantially all of the Debtors' assets and the ultimate sale of those assets.

7.      On November 20, 2024, the Court entered the *Order (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief; and (II) (A) Approving the Sale of the Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* approving the bidding procedures aspect of the Sale Procedures Motion [D.I. 411] (the "Bidding Procedures Order").

8.      On December 20, 2024, the Debtors filed the *Notice of Possible Assumption and Assignment and Cure Costs with Respect to Executory Contracts and Unexpired Leases* [D.I. 487] ("Initial Cure Notice") in accordance with the Bidding Procedures Order.

31265899.2

9.      On January 3, 2025, the Landlords, among others, filed an objection to the Sale Procedures Motion and the Initial Cure Notice [D.I. 640].

10.     On February 12, 2025, the Debtors filed the *Notice of Cancellation of Auction* [D.I. 961] due to no qualified bids being received by the bid deadline established in the Bidding Procedures Order.

11.     On April 16, 2025, the Debtors filed the TVS Sale Motion [D.I. 1283] proposing the sale of substantially all of The Vitamin Shoppe business to TVS Buyer, LLC ("Buyer") for a purchase price of $193.5 million and assumption of certain liabilities.  Attached to the TVS Sale Motion is an asset purchase agreement between certain of the Debtors and Buyer dated April 15, 2025 (the "APA"), along with a proposed order approving the sale (the "Proposed Sale Order").

12.     On April 19, 2025, the Debtors filed the Cure Notice, which set forth the proposed cure amounts ("Proposed Cure Amounts") for certain of the Leases.[4]

## OBJECTION

*A.      The Proposed Cure Amounts Are Incorrect and/or Subject to Change*

13.     As a condition of any assumption and assignment of the Leases, the Landlords are entitled to have all defaults cured.  11 U.S.C. § 365(b)(1)(A).  The Debtors are currently in default under the Leases for failure to pay rent and other charges currently due and owing.

14.     The Landlords object to the Proposed Cure Amounts to the extent that they do not reflect the correct cure amounts for the Leases as of the date of assumption (the "Correct Cure Amounts").   The Proposed Cure Amounts and the Correct Cure Amounts, exclusive of (i) attorneys' fees and (ii) accrued rent and charges and indemnity obligations, are as listed on

---

[4] No cure amount was proposed with respect to the Lease of The Vitamin Shoppe store with Boswell Avenue I, LLC, indicating that this Lease is not included in the sale transaction, but the Landlord is filing this objection nonetheless.

4

**Exhibit 1** hereto, and **Exhibit 1** also includes detailed statements of certain of the Correct Cure

Amounts.  The Correct Cure Amounts are accurate as of the dates listed in **Exhibit 1** hereto.

      B.      *The Proposed Cure Amounts Do Not Include Attorneys' Fees*

     15.      The Landlords further object to the Proposed Cure Amounts because they do not

include attorneys' fees, which the Landlords are entitled to under the Leases.  Therefore, attorneys'

fees must be included as part of the Landlords' cure amounts as pecuniary losses suffered as a

result of the Debtors' defaults, under Section 365(b)(1)(B).  *See In re Crown Books Corp.*, 269

B.R. 12, 18 (Bankr. D. Del. 2001); *In re Williams*, 2011 Bankr. LEXIS 2463, at *3 (Bankr. D. Del.

June 24, 2011); *see also In re French*, 131 B.R. 138, 141 (Bankr. E.D. Miss. 1991); *Urban Retail

Props. v. Loews Cineplex Entm't Corp.*, 2002 U.S. Dist. LEXIS 6186, at *25-28 (S.D.N.Y. Apr.

8, 2002); *In re Shangra-La, Inc.*, 167 F.3d 843, 849 (4th Cir. 1999); *In re Entm't, Inc.*, 223 B.R.

141, 152-53 (Bankr. N.D. Ill. 1998).

     16.      Attorneys' fees have been accruing post-petition and will continue to increase

through any assumption and assignment of the Leases, and the Landlords may seek to supplement

this Objection by the time of any proposed assumption and assignment with the current amount of

accrued attorneys' fees that will become due and owing.

      C.      *Any Assumption and Assignment Must Be* Cum Onere*, and Any Assignee Must Assume
            Liability for All Obligations for Accrued, but Unbilled or Not Due Rent and Charges
            and Indemnity Obligations*

     17.      It is well settled that a debtor seeking to assume a lease must do so *cum onere*,

accepting both its benefits and burdens.  *See In re Fleming Cos.,* 499 F.3d 300, 308 (3d Cir. 2007)

(quoting *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951).  The requirement that

lease assumptions be *cum onere* applies equally to assignments, as assumption of an unexpired

lease "is a necessary prerequisite to its assignment under § 365." *In re Sunterra Corp.*, 361 F.3d

257, 266 (4th Cir. 2004) (citing 11 U.S.C. § 365(f)(2)).

18.     Therefore, in the event the Debtors seek to assume and assign the Leases to Buyer or any other assignee, the Debtors are first obligated to cure all outstanding defaults under the Leases, including the payment of the Correct Cure Amounts, plus all additional attorneys' fees that accrue through the time of assumption and assignment.

19.     Further, the Debtors have a continuing obligation to pay additional rent and charges, including, but not limited to, adjustments and reconciliations for the Debtors' proportionate share of certain common area maintenance charges, real property taxes, water, insurance premiums and any percentage rent which has accrued, or will accrue under the Leases through any assumption and assignment of the Leases and are not yet due (collectively, "Accrued but Unbilled Rent and Charges").

20.     Additionally, the Proposed Cure Amounts do not include contractual obligations to indemnify the Landlords for events occurring prior to any assumption and assignment of the Leases.  The Leases obligate the Debtors to indemnify and hold the Landlords harmless from and against various claims, liabilities and expenses.  Buyer or any other assignee must assume liability for such obligations (collectively, the "Indemnity Obligations").

21.     The Debtors' obligations to pay Accrued but Unbilled Rent and Charges and to satisfy their Indemnity Obligations are essential to the Landlords' entitlement pursuant to Section 365(b)(1) of the Bankruptcy Code to adequate assurance of future performance and must be assumed by any assignee *cum onere*.  *See In re Interstate Bakeries Corp.*, 167 F.3d 843, 961 (8th Cir. 2014).

22.     Therefore, all of these obligations must be assumed by Buyer or any other assignee as part of any assumption and assignment of the Leases in accordance with the requirement that the Landlords receive adequate assurance of future performance under the Leases.

    D.     *Any Assumption and Assignment Must Be Supported by Adequate Assurance of Future Performance*

23.     Before assuming an unexpired lease that is in default such as the Lease, a debtor must provide adequate assurance of future performance to the landlord.  11 U.S.C. § 365(b)(1).[5]

24.     Bankruptcy Code section 365(b)(3) sets forth additional, heightened requirements for adequate assurance of future performance under a shopping center lease such as the Lease, and states:

> 3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> (A) of the source of rent and other consideration due under such lease … ;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

25.     Pursuant to Section 365 of the Bankruptcy Code, assumption and assignment requires adequate assurance that an assignee has the ability to perform under the terms of the Lease and satisfies the requirements of sections 365(b)(1) and 365(l) of the Bankruptcy Code.  11 U.S.C.

---

[5] Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an … unexpired lease of the debtor, the trustee may not assume such … lease unless, at the time of assumption of such … lease, the trustee - (A) cures, or provides adequate assurance that the trustee will promptly cure such default … (B) compensates, or provides adequate assurance that it will promptly compensate … [the landlord] for any actual pecuniary loss … resulting from such default, and (C) provides adequate assurance of future performance under such … lease."  11 U.S.C. § 365(b)(1).

31265899.2

§§ 365(b)(1), (f)(2), & (l).  Adequate assurance of future performance is determined by the existing factual conditions, and the Court may look to many factors in determining what is necessary to provide adequate assurance of future performance under Section 365(b) of the Bankruptcy Code, including, but not limited to, sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits, or other similar forms of security or guarantee.  *In re Tama Beef Packing, Inc.*, 277 B.R. 407, 411-12 (Bankr. N.D. Iowa 2002); *In re Alipat, Inc.*, 36 B.R. 274, 277-78 (Bankr. E.D. Mo. 1984); *In re Lafayette Radio Elecs. Corp.*, 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981).  Courts also look to the operating experience of the proposed assignee.  *In re Casual Male Corp.*, 120 B.R. 256, 265 (Bankr. D. Mass. 1990); *In re Bygaph, Inc.* 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986); *In re Alipat, Inc.*, 36 B.R. at 277.

26.    The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of proof as to all issues under Section 365. *See In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing, Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).  The Debtors bear the burden of proving the requirements of Section 365(b) as to all issues by a preponderance of the evidence. *See In re PRK Enters., Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999); *see also In re Prestige Motorcar Gallery, Inc.*, 456 B.R. 541, 544 (Bankr. N.D. Fla. 2011) ("the threshold requirement and burden of the trustee is to produce credible evidence that his decision to assume or reject would benefit the estate or result in a successful reorganization."); *In re Widmier*, Case No. 00-40244, 2003 Bankr. LEXIS 2220, at *8 (Bankr. D. Idaho Nov. 18, 2003) ("When the Court granted approval of Debtors' request to assume Creditor's lease under § 365(a), a determination was made by the Court that the assumption benefitted the bankruptcy estate . . . .").

31265899.2

27.     Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided.  *See Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986).

28.     Further, Section 365(l) of the Bankruptcy Code provides:

> If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

29.     The Landlords and Buyer, through counsel, have been in discussions regarding Buyer's adequate assurance of future performance and, as of the filing of this Objection, the Landlords have received answers to certain questions and a projected balance sheet.  The Landlords are still expecting additional adequate assurance information while evaluating the adequate assurance information received thus far and will look to complete their evaluation shortly.

30.     The Landlords reserve their rights to further object to the proposed assumption and assignment of the Leases to Buyer or any other assignee absent identification of the exact proposed assignee, strict compliance with the adequate assurance of future performance requirements of Section 365 of the Bankruptcy Code and the Bidding Procedures Order, and the Landlords having sufficient notice and opportunity to be heard regarding any proposed assumption and assignment. The Landlords also reserve their rights to request appropriate security from Buyer or any other proposed assignee such as a letter of credit, security deposit, and/or guaranty.

*E.    Any Proposed Sale Order Must Incorporate This Objection and Other Points*

31.    The objections raised herein and other concerns of the Landlords must be satisfactorily resolved in the Proposed Sale Order or any other proposed form of sale order.  In particular, the sale order must provide for, among other things, (i) Buyer's assumption of Accrued but Unbilled Rent and Charges and Indemnity Obligations, (ii) the preservation of any easements, reciprocal easement agreements, and other real property interests that run with the land, (iii) not enforcing any anti-assignment lease provisions solely with respect to this sale transaction, and (iv) Bankruptcy Code section 365(k) being inapplicable unless and until a Lease is assumed and assigned and all defaults under that Lease are cured.

32.    The Landlords have the following specific concerns with respect to the Proposed Sale Order:

a.    The sale cannot be free and clear of restrictions on use, leases, subleases, options, rights of use or possession, preferences or any other Encumbrances identified in the Sale Order. Sale Order, p. 2.

b.    The sale cannot be free and clear of, and must be subject to, restrictive covenants and easements including Reciprocal Easement Agreements, Construction Operation and Reciprocal Easement Agreements, Operation and Easement Agreements and other agreements that run with the land.  Sale Order, p. 2.

c.    The APA cannot be binding on creditors or counterparties to purchased contracts and leases. Sale Order, ¶ 14, p. 8. The Landlords also note that there are references to a potential unidentified designee and reserve the right to supplement this Objection with respect thereto. Sale Order, ¶ 7, p. 18-19; APA, § 2.7.4, pp. 29-30.

d.    Non-monetary defaults must be cured in addition to monetary defaults. Sale Order, ¶¶ 19, pp. 24, 25. As referenced above, Accrued but Unbilled Rent and Charges and Indemnity Obligations must be paid when due post-assignment and Buyer must assume the liability for same. Additionally, counterparties cannot be enjoined from asserting defaults and/or claims arising out of indemnity obligations or warranties for acts or occurrences arising prior to or existing as of closing.

e.    To the extent other issues are resolved, the Landlords request that granting the motion exclude objections to cure. Sale Order, ¶ 1, p. 17.

10

f.  Exhibit 1 should not include cure amounts under the Leases to be assumed and assignment prospectively, as they are subject to change. Sale Order, ¶ 14, p. 21.

g.  No lease provisions can be void and of no force and effect. Sale Order, ¶ 15(b), pp. 21-22. Instead, those provisions that prohibit assignment to Buyer can be unenforceable only in connection with the assumption and assignment of the Purchased Contracts and Purchased Leases pursuant to the order. The end of this paragraph should be revised to be consistent Section 365(k) of the Bankruptcy Code to provide that the Debtors shall be relieved from further liability for any breach of such Purchased Contracts and Purchased Leases occurring after such assumption and assignment to Buyer and payment of the Cure Costs and cure of nonmonetary defaults.

h.  Paragraph 18 should be revised to delete the language deeming counterparties to have consented to assumption and assignment. Sale Order, ¶ 18, pp. 23-24.

i.  Paragraph 20 should be revised to relieve the applicable Debtors from liability for breaches occurring after assumption and assignment. Sale Order, ¶ 20, p. 25.

j.  Paragraph 22 should be deleted. Sale Order, ¶ 22, p. 25. Lease amendments cannot be amended without the Landlords' agreement.

k.  The Debtors and DIP Agent should not be able to file, execute, and deliver any release documentation that may impact the Leases or the Landlords absent written consent, Court order, or applicable law permitting it. Sale Order, ¶ 29, p. 27.

l.  The modification, amendment, and/or supplement of the APA without Court order should be limited to immaterial modifications and any modifications, amendments and/or supplements should be filed. Sale Order, ¶ 32, p. 28.

33.  The Landlords and Buyer, through counsel, have been in discussions regarding the Proposed Sale Order and the Landlords intend to continue those discussions following the filing of this Objection.

**RESERVATION OF RIGHTS**

34.  The Landlords reserve their rights to supplement this Objection and make such other and further objections as they deem necessary or appropriate, including with respect to any amended Proposed Cure Amounts, any proposed sale order, and any proposed asset purchase agreement.

31265899.2

35.     The Landlords hereby join any other objections filed by the Debtors' landlords to the extent such objections are not inconsistent with the relief sought herein.

**WHEREFORE**, the Landlords respectfully request that the Court enter an order consistent with this Objection and grant the Landlords such other and further relief as this Court deems just and proper.

31265899.2

Dated: April 30, 2025
      Wilmington, Delaware

**BALLARD SPAHR LLP**

By: _/s/ Laurel D. Roglen_
Leslie C. Heilman, Esq. (DE No. 4716)
Laurel D. Roglen, Esq. (DE No. 5759)
919 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
E-mail: heilmanl@ballardspahr.com
E-mail: roglenl@ballardspahr.com

-and-

**BARCLAY DAMON LLP**

Kevin M. Newman, Esq.
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202-2020
Telephone: (315) 413-7115
E-mail: knewman@barclaydamon.com

Scott L. Fleischer, Esq.
1270 Avenue of the Americas, Suite 501
New York, New York 10020
Telephone: (212) 784-5810
E-mail: sfleischer@barclaydamon.com

Niclas A. Ferland, Esq.
545 Long Wharf Drive, 9th Floor
New Haven, Connecticut 06511
Telephone: (203) 672-2667
E-mail: nferland@barclaydamon.com

*Counsel to Benenson Capital Partners, LLC, Boswell Avenue, I, LLC, DLC Management Corporation, Inland Commercial Real Estate Services LLC, and National Realty & Development Corp.*

13

31265899.2