# EXHIBIT A



Nature's Answer

3/24/2011

## Vitamin Shoppe Purchase Agreement

This Agreement between Vitamin Shoppe Industries Inc., whose corporate headquarters is located at 2101 91st Street, North Bergen, NJ 07047 ("VS") and the undersigned ("Vendor") is entered into in order to facilitate the purchase of goods and merchandise ("Merchandise" or "Product") by VS from Vendor and the parties hereby agree as follows:

1. **Merchandise Purchases.** This Agreement applies to VS's purchases of any and all Merchandise from Vendor, its affiliates and subsidiaries, and supersedes all prior agreements. VS shall order and Vendor shall ship the Merchandise pursuant to the terms herein, which includes by reference the VS Purchase Terms Sheet attached as Exhibit A ("Terms Sheet"), VS's standard Purchase Orders and its Guide to Vender Partnership (the "Guide"). Terms Sheets must be fully completed and executed by both parties and shall remain in effect until amended or terminated by the parties. Merchandise may be sold through VS's national or international channels of distribution. Amendments to a Terms Sheet unless agreed to in writing by a Merchandising officer of VS, any and all of Vendor's terms and conditions which add to, vary from, or conflict with this Agreement, are hereby rejected and are of no legal effect. This Purchase Agreement shall remain in effect until terminated by either party giving ninety (90) days' prior written notice to the other party by certified mail. Termination of this Agreement shall not be effective for any transactions initiated before the effective date of the termination, even if performance of such transactions is to take place after the effective date of termination.

2. **Pricing, Payments, and Deliveries.** Specific terms, discounts, allowances, payment terms and contact information are set forth on the Terms Sheet. Vendor shall provide to VS, the per unit wholesale price and invoice cost to VS for Merchandise, and VS may then issue individual Purchase Orders applying the applicable discounts and allowances; setting the quantities ordered and delivery dates for the Merchandise. Vendor agrees that the prices offered to VS for the Merchandise shall be no higher than the lowest price offered to any other customer of Vendor for similar products. Vendor must provide the VS Category Manager at least 90 days prior written notice of any proposed price increases. Vendor shall be deemed to have irrevocably accepted and agreed to a Purchase Order upon the earlier of Vendor's: (a) acceptance of the Purchase Order; (b) commencement of activities to fulfill the Purchase Order; or (c) failure to object to the Purchase Order within two weeks of issuance. VS shall have the right in its sole discretion to increase, decrease or cancel a Purchase Order as to all or any of the Merchandise upon reasonable notice to Vendor prior to any set delivery date, effective on the date Vendor receives such notice. VS may cancel all or any part of an order that is not received by the Cancel Date on the Purchase Order. Payment terms shall be calculated, based on the later of the invoice date or product receipt date. All freight from the Vendor to VS is FOB Destination, Freight Prepaid. Vendor must arrange that the freight carrier must call and set up an appointment, Vendor is responsible for any delivery notification fees that the freight carrier charges. No fuel charge or pallet charge may be added on to an invoice without the VS Category Manager's written approval.

3. **Assurances.** Vendor represents and warrants to VS in addition to all warranties implied by law, that the Merchandise together with all related packaging, labeling and other printed matter and all related advertisements furnished or authorized by Vendor, shall (a) be free from defects in design, workmanship or materials, including, without limitation, such defects as could create a hazard to life or property; (b) be of merchantable quality and fit and safe for consumer use; (c) be properly stamped, tagged, labeled and marked as may be required, shall have cleared or be exempt from pre-market notification or approval requirements, and be manufactured, packed for shipment, stored and shipped in accordance with applicable standards of Good Manufacturing Practices promulgated under the Food, Drug and Cosmetic Act ("FDC Act"), be marked with the information required by VS, by law or regulation and where required, be registered, all in accordance with applicable federal, state and local laws, and regulations

("Applicable Law"), including but not limited to, any labels, warnings, or information that may be required under the State of California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"); (d) not infringe or encroach upon any party's personal, contractual or proprietary rights, including patent, trademark, trade name, service mark, copyright, right of privacy or trade secret rights; (e) conform to all descriptions presented to VS and all Merchandise specifications; (f) possess all performance qualities and characteristics claimed in advertisements issued or authorized by Vendor; (g) be in conformity with the United States Federal Food, Drug and Cosmetics Act, the United States Federal Trade Commissions Act, the United States Customer Product Safety Act, the United States Federal Hazardous Substances Act, the United States Flammable Fabrics Act, the United States Wool Product Labeling Act, the United States Textile Fiber Products Identification Act and the United States Fair Packaging and Labeling Act to the extent that the Merchandise is covered by those Acts or by any similar Applicable Law; (h) be well within any expiration date indicated on the Merchandise packaging and meet VS's minimum shelf life for products that carry a shelf life; and (i) not be, as of shipment or delivery, adulterated or misbranded within the meaning of the FDC Act, the regulations thereunder or any other Applicable Law, nor shall it be an article which may not, under the provisions of Sections 402, 403, 403B, 413, 601 or 602 of the FDC Act or any other Applicable Law, be introduced into interstate commerce. Vendor shall immediately notify VS if any Merchandise shall become subject to a product concern, warning, withdrawal or recall. Vendor shall provide not less than sixty (60) days prior written notice to the VS Category Manager of any changes in the labeling of any Merchandise or the contents or the formulation thereof. The Merchandise prices and all components thereof, including without limitation all discounts, credit terms, rebates, reductions and additions of any type, as well as all forms of payments, allowances, credits, services, facilities and commissions, whether related to Vendor's sale of the Merchandise that Vendor provides to VS, to the promotion of VS's resale of the Merchandise or to any other aspect of the parties' business relationship, comply with all applicable laws and regulations, including without limitation all sections of the Robinson-Patman act, 15 U.S.C. § 13. In addition, Vendor represents and warrants that all material (including but not limited to promotional and educational material) provided by Vendor with respect to the Merchandise shall be true and correct, and sufficient substantiation shall exist for the same for VS to publish and use the same in its training, marketing and advertising efforts in full compliance with all Applicable Laws. Vendor's representations and warranties herein shall survive the delivery of Merchandise to VS and any resale of Merchandise by VS. Vendor agrees to execute such additional continuing guarantee certificates as may be requested by VS. All such representations and warranties shall survive inspection, tests, acceptance and payment.

4.     **Indemnification.** Vendor shall indemnify, defend and hold harmless VS, its affiliates and customers, and their respective officers, directors, agents and employees, from and against any and all claims, liabilities, losses, damages and expenses (including attorneys' fees and costs, increased and/or punitive awards) which result in whole or in part from (i) any actual or alleged defect in any Merchandise (latent or patent), (ii) the promotion, sale, use or purchase of any Merchandise by VS and/or its direct or indirect customers, and/or (iii) the failure of the Merchandise to comply with any of the Assurances set forth above or any other express, implied or statutory warranties, in any such event whether or not any demand for payment is made to Vendor and/or any lawsuit is actually filed against VS. The defense of any matter shall be by counsel selected by VS. VS shall have the right to refuse or return any Merchandise that does not conform to all of the Assurances set forth above for direct payment by check or electronic fund transfer to VS, including transportation, handling and disposition costs, and any Merchandise that has been seized or condemned shall be deemed to have been returned to Vendor hereunder.

5.     **Insurance.** Vendor represents and warrants that as of the date hereof it maintains, and at all times while it is supplying Merchandise to VS (and for the period thereafter during which any claim may be asserted, at least three years for claims made policies, related to such Merchandise) it shall continue to maintain, a General Liability Insurance Policy to protect Vendor and VS from the liabilities insured against thereunder, which policy contains bodily injury, personal injury, products and completed operations, and advertising injury coverage, and a contractual liability endorsement with no exclusions for product offered to VS. Vendor shall provide and satisfy VS's insurance requirements set forth on Exhibit B hereof, and VS may modify those requirements from time to time upon written notice to Vendor.

6.     **Confidential Information.** VS and Vendor may each (the "Recipient") have access to certain commercially valuable or otherwise proprietary or confidential information relating to the operations, products, sales and business of the other party and their affiliated and related companies or third parties (the "Discloser") including, without limitation, trade secrets, processes, promotional information, item rankings, data and know-how, software programs, techniques, marketing plans, strategies, forecasts, unpublished copyrightable material, consumer lists, personal information with respect to employees, customers or others, sources of supply, prospects or projections, or any other proprietary or confidential matter, ("Confidential Information"). Confidential Information can be contained in any medium, including verbal form, graphic form, machine readable or electronic form, or written or other tangible form, whether or not marked as Confidential. Confidential Information shall exclude any information that: (a) is or becomes part of the public domain through no wrongful act or failure to act on the part of the Recipient, (b) that is rightfully received by Recipient from a third party in possession of it who was not subject to any restrictions on the disclosure of such information; (c) is approved in writing for release by an authorized officer of the Discloser, or; (d) which has been independently developed by

Recipient (as evidenced by its written records) without violation of this Agreement or any rights of the Discloser hereto or (v) required by any governmental authority having jurisdiction over that party asserting a right to obtain such Confidential Information, provided however, that prior to any such disclosure pursuant to this clause (v) the party concerned shall promptly advise the other party in the event of any request by a governmental authority for the request or to seek a protective order or to take other appropriate action to protect the Confidential protective order or to take other appropriate action to protect the Confidential Information. Without limiting the generality of the foregoing, Vendor acknowledges and agrees that any and all of VS's intellectual property and trade secrets, and information relating to any and all aspects of VS's distributing and marketing of Vendor's products are the Confidential Information of the VS. The obligations with respect to Confidential Information shall survive termination of the Agreement for a period of two (2) years. VS and Vendor agree that, except as directed by Discloser, Recipient will not at any time, use for the Recipient's benefit or disclose to any person for any purpose any Confidential Information, or permit any person to use, examine and/or make copies of any documents, files, data or other information sources which contain or are derived from Confidential Information, whether prepared by Recipient or otherwise coming into the Recipient's possession or control, without the prior written permission of Discloser. Recipient shall maintain security procedures and practices sufficient to protect the confidentiality of Confidential Information from unauthorized access, destruction, use modification or disclosure. The parties shall return the Confidential Information and all corresponding files when the Agreement has expired or has been terminated by any party.

7. **Miscellaneous.** This Agreement and any applicable purchase orders shall be governed by and construed in accordance with the laws of the State of New Jersey without giving effect to the choice of law principles of such State. Vendor agrees that the Federal and State courts located in Hudson County, New Jersey shall have the exclusive jurisdiction and venue over any claims or disputes between the parties and EXPRESSLY WAIVES ITS RIGHT TO A JURY TRIAL IN CONNECTION THEREWITH.

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the date and year set forth below.

Vendor: Nature's Answer

By: _____

Printed Name: Edmond Isaghoulian

Title: Director of National Sales

Date: 04-27-2011

Address for Vendor Notices:

75 Commerce Drive

Hauppauge, NY 11788

Buyer: Vitamin Shoppe Industries, Inc.

By: _____

Printed Name: Downs T. Jones

Title: SVP

Date: 7/15/11

# EXHIBIT A
## Purchase Terms Sheet

**Vendor Name:** Nature's Answer
(The name that will show on your invoices and which our Purchase Orders and checks will be made out to.)

**DBA:**

**Brand Name(s):** Nature's Answer, Bio-Strath and Greens Today
Note: Please update brand name The Organic Frog to Greens Today

**Discount(s) from Wholesale:** 25% + 5%

**Payment Terms:** 2% 10 Days NET 30
(Calculated on the latter of receipt of product or receipt of invoice.)

**New Store Support:** Free Fill based on product credit
(To be deducted from open invoices on a monthly basis.) $1638.00

**Customer Return, Damage and Expired Allowance:** 1 % [w. quarterly tru-up if higher]

**First Order Discount:** N/A
(Discount applied to the very first order with a vendor.)

**New Item Discount:** 25% + 10%
(Discount applied to the first order of any item.)

**Markdown Coverage for Vendor Funded Discontinued Product:** 100%

**Lead Time:** 14 days
(Days from receipt of a Purchase Order to when the product is received at The Vitamin Shoppe.)

**EDI:** PO | Invoice | ASN

| Vitamin Shoppe | Vendor Representative |
|---|---|
| Category Manager: Carrie Plumley | Name: Wendy Creager |
| Email: cplumley@vitaminshoppe.com | Title: Northeast Regional Sales Manager |
| Signature / Date: 7-12-11 | Phone: 802-275-8703 |
| | Fax: 802-251-0801 |
| Douglas T. Jones, VP Merchandising | Email: wicreager@gmail.com |
| Signature / Date: 7/15/11 | Website: www.naturesanswer.com |
| | Signature: Wendy Creager |
| | Date: 04-27-2011 |

**Vitamin Shoppe Internal Use Only**

Vendor Number: 36
Date JDA Updated:
Vendor Change:   New   Update
JDA, COI and Vendor Name Match:

CONFIDENTIAL — Julia Mak@kirkland.com - 04/30/2025 02:50 PM — Franchise Group, Inc.

# EXHIBIT A
## Purchase Terms Sheet

### Exhibit A – Terms Sheet Continuation
### Vendor Contact Information

Vendor Full Legal Name for Purchase Orders and Certificates of Insurance. These names must match:

<u>Bio Botanica Inc. & Affiliates, Natural Packaging, Nature's Answer</u>

Type of Organization and Jurisdiction: <u>Dietary Supplement Manufacture</u>

**Principal Place of Business:**

| | |
|---|---|
| Street Address: | <u>75 Commerce Drive</u> |
| City, State, & Zip: | <u>Hauppauge, NY 11788</u> |
| Attention: | <u>Wendy Creager</u> |
| E-mail: | <u>wicreager@gmail.com</u> |

In order to ensure that we have the most up to date contact information, please provide us with an executive contact, a point of contact in EDI\Technology and a main contact.

Executive Responsible for Vendor Compliance Contact Name:  Mr. Mark Gaeta

Title: <u>Chief Operating and Quality Officer Bio-Botanica, Inc. 800-439-2324 Ext. 103</u>
Telephone:

Email address: <u>mgaeta@bio-botanica.com</u>

**Provide EDI Contact Information**

| | |
|---|---|
| EDI Contact Name: | <u>Vivian Spataro</u> |
| Telephone: | <u>631-840-3158</u> |
| E-mail address: | <u>vspataro@bio-botanica.com</u> |

**Invoice Payments should be remitted to the following:**

| | |
|---|---|
| Payable to: | <u>Nature's Answer, Inc.</u> |
| Company: | <u>Nature's Answer, Inc.</u> |
| Street Address: | <u>75 Commerce Drive</u> |
| City, State, & Zip: | <u>Hauppauge, NY 11788</u> |
| Attention: | <u>Accounts Receivable – Lynn Plantamura</u> |
| Phone: | <u>631-840-3108 Ext. 111</u> |

CONFIDENTIAL — Julia.mark@kirkland.com — 04/30/2025 02:50 PM — Julia Markland Franchise Group, Inc.

For quality control issues, overages/shortages and discrepancies please provide us with a point of contact in charge of compliance.

Contact Name and Phone:     Vivian Spataro

Telephone:     631-840-3158

E-mail address:     vspataro@bio-botanica.com

**Vendor's Ship From Point #1**

Company:     Nature's Answer, Inc.

Street Address:     85 Commerce Drive

City, State, & Zip:     Hauppauge, NY 11788

Type of Product:     Dietary Supplements

**Vendor's Ship From Point # 2**

Company:     _____

Street Address:     _____

City, State, & Zip:     _____

Type of Product:     _____

The Vendor Contact Information is Certified By: **Edmond Isaghoulian**

Print Name/Title: **Director of National Sales**     Date: **04-27-2011**

CONFIDENTIAL
julia.mark@kirkland.com
Julia.Mark - 04/30/2025
Franchise Group, Inc. - 04/30/2025 02:50 PM

## Exhibit B
### To Purchase Agreement
### Tier One Minimum Insurance Requirements

1. General Liability providing coverage including but not limited to Products and Completed Operations, Contractual Liability and Personal and Advertising Injury Liability having minimum limits of $3,000,000 per occurrence and a $5,000,000 unimpaired aggregate. During the policy year, the required minimum aggregate of coverage may only be impaired by a maximum of 25% as noted on the insurance company loss runs. If impairment exceeds 25%, then additional coverage must be promptly purchased to achieve and maintain the required unimpaired aggregate.

    [handwritten margin note: 3,000,000]

2. Separate products liability may be provided under a claims made or occurrence coverage form. See termination of coverage below.

3. Certificates of Insurance evidencing coverage for all coverages specified under this agreement for any claims which occurred prior to the termination and for any claim which may occur for 5 years after termination.

4. Termination of coverage
    a. Claims made (i) if claims made coverage is provided and policy is non renewed, cancelled, product is discontinued, or vendor is no longer producing said products then vendor will guarantee the purchase of a 5 year tail providing a retro date to inception of first claims made policy. (ii) In addition product liability runoff must be purchased for 5 years providing coverage for any product claims which occur within the 5 years after the policy was discontinued and a tail policy was purchased.

    b. Occurrence made – If the policy is non renewed, cancelled and an occurrence insurance policy is not purchased going forward, an additional 5 years from date previous policy was terminated runoff Liability coverage must be provided through a product runoff liability policy. (see a (ii) above)

5. All **excluded** products or products containing excluded ingredients not covered by policy, must be listed on certificate of insurance OR the certificate should specifically state that there are no products being sold to Vitamin Shoppe that are excluded from coverage or contain ingredients that are excluded from coverage.

6. Certificate holder must be named as an additional insured on the General Liability coverage, and if the certificate contains any additional insured disclaimer language, an actual copy of the issued additional insured endorsement MUST accompany your certificate of insurance.

7. Certificates must have the following phrase struck from the Cancellation text: "endeavor to".

8. Certificates must have the following phrase struck from the Cancellation text: "but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives.'

9. All deductibles, self-insured retentions and claims-made retroactive dates must be noted on the certificate and there is a maximum of $100,000.

10. All certificates must provide for at least 30 days notice of cancellation.

11. Certificates must bear an authorized signature that is handwritten, mechanically written, or stamped.

12. All of the above coverages must be written by a carrier with a minimum A.M. Best rating of A- or better AND a financial size classification of VIII or higher.

13. Advertisers/Multimedia Liability coverage must be provided with a minimum limit of $1,000,000.

14. Certificate should show that vendors Insurance is Primary and Non Contributory

DO NOT send your certificate directly to Vitamin Shoppe.
Email the completed certificate to the following address: riskworks-vsi-2@exigis.net
If this sheet cannot be emailed, please fax it to (201) 977-2901.
Send a copy of the certificate to the applicable Vitamin Shoppe Merchandise Assistant or Category Manager.

Certificate Holder: (must be EXACTLY as shown): Vitamin Shoppe, Inc., Vitamin Shoppe Industries Inc., VS Direct Inc. and all Subsidiaries, Affiliated Companies and Directors c/o EXIGIS, LLC.