**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.,*[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. 1283** |

**DECLARATION OF DAVID ORLOFSKY**
**IN SUPPORT OF DEBTORS' MOTION FOR ENTRY**
**OF AN ORDER (I) AUTHORIZING FRANCHISE GROUP**
**INTERMEDIATE V, LLC TO ENTER INTO AND PERFORM**
**ITS OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT,**
**(II) APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR**
**OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS, AND ENCUMBRANCES,**
**(III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

I, David Orlofsky, Chief Restructuring Officer ("CRO") of Freedom VCM Holdings, LLC

and Franchise Group, Inc., being duly sworn, hereby declare under penalty of perjury as follows:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

1.      I am a Partner and Managing Director of AlixPartners, LLP, an affiliate of AP Services LLC ("APS") and an internationally recognized restructuring and turnaround firm. By order, dated December 16, 2024, the Court approved (a) APS's employment and retention by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") and (b) my designation as CRO.  I have served as the CRO of Debtors Freedom VCM Holdings, LLC and Franchise Group, Inc. since October 11, 2024.  I have over 25 years of experience in financial restructuring, interim management, turnaround, and management consulting experience across a wide variety of industries, including, but not limited to, the retail and real-estate industries. I am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

2.      I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter into and Perform Its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket  No. 1283] (the "Motion").[2]

3.      On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

---

[2]   Capitalized terms used but not defined in this Declaration have the meanings ascribed to them in the Motion, the APA (as defined in the Motion), the *Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No. 1312] (as may be amended, modified, or supplemented from time to time, the "Plan"), or the D*eclaration of Christopher Grubb in Support of Debtors' Motion for Entry of an Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter into and Perform Its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Grubb Declaration"), filed contemporaneously herewith, as applicable.

On the Petition Date, I submitted the *Declaration of David Orlofsky in Support of Debtors'*
*Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration") to
provide the Court and other parties in interest with an overview of the Debtors' businesses and to
describe the circumstances compelling the commencement of these chapter 11 cases.

4.       All facts set forth in this Declaration are based upon my personal knowledge of the
Debtors' operations and financing, information learned from my review of relevant documents,
information supplied to me from members of the Debtors' management or the Debtors' advisors,
or my opinion based on my knowledge, experience and information concerning the Debtors'
operations and financial condition.  If called to testify, I could and would testify competently to
the matters set forth in this Declaration.

### The Proposed Sale

5.       As described in greater detail in the Motion, prior to the Petition Date, the Debtors
explored a range of potential strategic and operational measures to better position the Debtors for
sustainable growth and improve their strained liquidity position.  Among other things, in April
2023, the Debtors engaged Jefferies LLC first to gauge market interest and undertake a broad
search for any potential buyers in connection with a potential sale of The Vitamin Shoppe ("TVS")
business and, later, to run a formal marketing and sale process in connection therewith.  However,
despite the foregoing, no actionable proposals were received with respect to a potential going
concern sale of TVS.

6.       After the Petition Date, on November 4, 2024, Ducera Partners LLC, the Debtors'
investment banker, commenced a formal marketing process for the sale of some or substantially
all of the Debtors' assets, including TVS (the "Marketing Process").  While the Marketing Process
did not yield an actionable proposal for a sale of all of the Debtors' business segments in whole,
as described in greater detail in the Grubb Declaration, the Debtors received an indication of

interest from Performance Investment Partners, LLC ("PIP"), a party affiliated with TVS Buyer, LLC (the "Buyer")[3], prior to the February 3, 2025 Bid Deadline that the Debtors believed was potentially value-maximizing and worthy of pursuit.

7.      Over the next several weeks, the Debtors and their advisors continued to engage with certain parties in interest, including the Buyer, in an effort to develop a value-maximizing bid for certain of the Debtors business segments, including TVS.  Ultimately, after weeks of extensive, arm's length, good faith negotiations, the Debtors and the Buyer reached an agreement in principle on a value-maximizing sale transaction for substantially all of the assets of TVS, and, on April 15, 2025, the Debtors and the Buyer entered into the APA.

8.      Pursuant to the APA, the Buyer will purchase the Purchased Assets free and clear of any Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) in exchange for, among other things, (a) the assumption of the Assumed Liabilities and (b) a cash payment of $193.5 million (the "Purchase Price"), subject to the post-closing adjustment process as set forth in the APA and Court approval.

### The Sale Represents a Sound Exercise of the Debtors' Business Judgment

9.      I believe that the Transactions are reasonable and appropriate, value-maximizing, and in the best interests of the Debtors, their estates, and their creditors.  I also believe that the Sale is a sound exercise of the Debtors' business judgment.  First, the Sale is necessary to preserve and support the Debtors' core business—selling TVS will allow the Debtors to focus their efforts on the Debtors' other business lines, and specifically on implementing a long-term, value-maximizing business plan for their other business segments.  The sale of the Purchased Assets will allow the

---

[3]    TVS Buyer, LLC was created by Kingswood Capital Management, LP as part of this Transaction.  Subject to Court approval, TVS Buyer, LLC will be the entity that owns all the Purchased Assets and the Assumed Liabilities following the Closing.

Debtors to avoid incurring additional operating and lease expenses associated with the Purchased Leases, and thereby preserve value for the Debtors' estates and all stakeholders.  Second, the TVS business was failing to meet the Debtors' profitability targets.  Accordingly, the value generated by the Sale, which represents the highest or otherwise best offer for the Purchased Assets following a robust market process, outweighs any potential future benefits of maintaining the Purchased Assets.

10.    I understand that the Sale was evaluated and approved by the Debtors in consultation with their advisors, the Creditor's Committee, the Second Lien Term Loan Lenders, and the Prepetition First Lien Lenders, along with potential alternatives to the Sale.  I believe that the Debtors' decision to enter into the APA and pursue and consummate the Sale constitutes a proper exercise of the fiduciary duties of the Debtors and their respective directors, managers, and officers.  I also understand that the board of directors of Freedom VCM Holdings, LLC and Franchise Group, Inc., including the special committees comprised thereunder, determined that the Transactions were value-maximizing.

11.    Notably, the Debtors and the Buyer have negotiated a Transition Services Agreement that provides for the continuation of key services previously performed by the Debtors, and supports a smooth transition of customers and services from the Debtors to the Buyer. Accordingly, I believe that the Debtors will be able to consummate the Transactions with minimal disruption to customer operations, which would otherwise adversely impact the Debtors' general unsecured stakeholders, among others.  For these reasons, and the other reasons provided herein, I believe that the Sale aligns with the Debtors' business objectives and is in the best interest of the Debtors, their estates, and their stakeholders.

**The Sale Terms Should be Approved**

12.     I believe that the Debtors and the Buyer negotiated the APA and each of the Transactions at arms' length, in good faith, and without collusion.  The Debtors did not enter into the APA for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.  I do not believe that the Debtors or the Buyer have engaged in any conduct that would cause or permit the APA to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

13.     Finally, it is my understanding that neither the Buyer, nor any of its affiliates, are a successor to any of the Debtors or their estates, and none of the Transactions amounts to a consolidation, merger, or de factor merger of the Buyer or any of its affiliates with or into any of the Debtors.  I understand that (a) the Buyer in no way induced or caused any chapter 11 filing by the Debtors, (b) all payments to be made by the Buyer in connection with the Sale have been disclosed, and (c) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets.  I believe that the Buyer is consummating the Sale in good faith and is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code.  I also understand that the Buyer is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

**Conclusion**

14.     For the foregoing reasons, I believe that entering into the APA and consummating the Sale of the Purchased Assets on the terms set forth in the APA is fair and reasonable, is in the best interests of the Debtors and their estates, and represents a sound exercise of the Debtors' business judgment.

*[Signature Page Follows]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information, and belief.

Dated:  May 2, 2025                                      */s/ David Orlofsky*
                                               David Orlofsky
                                               Chief Restructuring Officer