# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) ) | Case No. 24-12480 (LSS) |
| Debtors. | ) ) ) | (Jointly Administered) |
|  | ) | **Re: Docket Nos. 1098, 1059** |

## DEBTORS' OBJECTION TO THE SETTLEMENT-RELATED LIQUIDATING TRUST 2022-23'S MOTION PURSUANT TO RULE 3018(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR TEMPORARY ALLOWANCE OF CLAIMS FOR PURPOSES OF VOTING TO ACCEPT OR REJECT PLAN

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this objection (this "Objection")[2] to *The Settlement-Related Liquidating Trust 2022-23's (I) Motion Pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure for*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement Order (as defined below) or the *Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1312] (as amended, modified, supplemented, the "Plan"), as applicable.

33147153.6

*Temporary Allowance of Claims for Purposes of Voting to Accept or Reject Plan; and (II) Response to First Omnibus (Non-Substantive) Objection of the Ad Hoc Group of Freedom Lenders to Certain Claims Filed Against the Holdco Debtors* [Docket No. 1098] (the "3018 Motion") filed by the Settlement-Related Liquidating Trust 2022-23 (the "Prophecy Trust") seeking entry of an order allowing and according full value for the amounts claimed by the Prophecy Trust for voting purposes. In support of this Objection, the Debtors respectfully state as follows:

### Preliminary Statement

1. The Prophecy Trust has filed proofs of claim against the HoldCo Debtors in the Chapter 11 Cases that even the Prophecy Trust concedes are speculative and unliquidated.[3] Pursuant to the voting and tabulation procedures approved by this Court, the Prophecy Trust's claims should be afforded the same treatment provided to all other unliquidated litigation claims that have not yet been tested on the merits or reduced to a judgment—they should each be valued at $1.00 for voting purposes.[4] The Prophecy Trust has not established that a departure from this practice is warranted, and given the size of the Prophecy Trust's asserted claims—more than $300 million—such a departure would significantly prejudice other creditors by unfairly and prematurely providing the Prophecy Trust with outsize influence over the confirmation process. Therefore, the 3018 Motion should be denied.[5]

---

[3] The Prophecy Trust asserts that "[t]he Prophecy Trust holds a claim, ***in an unknown amount, but which could be*** in excess of $300 million." Proofs of Claim 1327 & 1333, at 5 (emphasis added).

[4] *See* Disclosure Statement Order, at ¶ 27(c), (d), (f).

[5] While this Objection specifically addresses the claims at issue in the 3018 Motion, the Debtors anticipate seeking relief as to all of the Prophecy Trust's filed proofs of claims on the bases that, among other reasons, such claims should be disallowed for failure to state a claim and should be subordinated to general unsecured claims pursuant to section 510(b) of the Bankruptcy Code (as defined below).

**Jurisdiction and Venue**

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 105(a) and 510(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1.

**Background**

A. **General Background**

5. The Debtors are a privately held operator and acquirer of franchised and franchisable businesses and the premier solution for catapulting franchise brands forward. With over 100 years of combined franchising and operational expertise, the Debtors provide a first-class environment for operating companies and their associates to thrive by partnering with strong management teams who are committed to growth through franchising. The Debtors' business segments include a diverse collection of highly recognized retail brands, including The Vitamin Shoppe, Pet Supplies Plus, American Freight, and Buddy's Home Furnishings. As of the Petition

Date (as defined below), the Debtors had approximately 2,200 total retail store locations (including both corporate-owned and franchised locations) and approximately 11,900 total employees spanning across the United States.

6. On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 5, 2024, the Court entered an order [Docket No. 88] authorizing the procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. On November 19, 2024, the U.S. Trustee appointed the Creditors' Committee [Docket No. 188]. On January 15, 2025, the Debtors appointed a fee examiner [Docket No. 747].

**B. Tabulation and Voting Procedures**

7. On February 21, 2025, the Court entered an order [Docket No. 1019] (the "Disclosure Statement Order"), (a) approving certain solicitation and voting procedures (the "Solicitation and Voting Procedures"), including (i) fixing the Voting Record Date, (ii) approving the Solicitation Packages and distribution procedures, and (iii) approving the form of the Ballots and solicitation materials and establishing procedures for voting, and tabulation, (b) scheduling a confirmation hearing and establishing notice and objection procedures, and (c) granting related relief.

8. The Solicitation and Voting Procedures set forth a process for valuing Claims solely for purposes of voting on the Plan and not for the purpose of making distributions under the Plan, and without prejudice to the rights of the Debtors or any other party in interest in any other context. As relevant here, the procedures provide that, unless temporarily allowed in a different amount under Bankruptcy Rule 3018, "a Ballot cast by an alleged Holder who has timely filed a Proof of

33147153.6

4

Claim in a wholly unliquidated, unknown, blank, or uncertain amount or in the amount of $0.00 that is not the subject of a Claim objection filed by March 6, 2025 shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, and shall be ascribed a value of one dollar ($1.00) for voting purposes only." Disclosure Statement Order at ¶ 27(d).

### C. The Prophecy Trust's Claims

9. The Prophecy Trust's claims against the Debtors are based on allegations that the Debtors' former Chief Executive Officer, Brian Kahn ("Kahn"), fraudulently diverted funds from Prophecy Asset Management LP ("Prophecy"), a hedge fund managed by Kahn, to the Debtors. Prophecy collapsed in March 2020, and Kahn is alleged to have generated most of its investors' losses. Thereafter, Prophecy investors initiated a lawsuit against Kahn, alleging that Kahn diverted Prophecy money to, among other things, (a) help build his controlling stake in Franchise Group, Inc. ("FRG") and (b) facilitate FRG's take-private transaction.

10. The Prophecy Trust was established, by agreement of certain interested parties, for the benefit of the Prophecy investors and it purportedly holds equity interests in certain of the Debtors.[6] 3018 Motion at ¶¶ 10, 13; Proof of Claim No. 1218 at 5; *see also Objection of the Settlement-Related Liquidating Trust 2022-23 to the Debtors' Application for an Order Authorizing the Retention and Employment of Willkie Farr & Gallaher LLP as Co-Counsel for the Debtors,* Nunc Pro Tunc *to the Petition Date* [Docket No. 642] at ¶ 14.

11. The Prophecy Trust has filed Proofs of Claim in the Chapter 11 Cases, asserting two theories of recovery against the Debtors, in relation to the fraud perpetrated by and through Prophecy:

---

[6] Such interests have never conclusively been established and documented.

(a) a claim for damages "for the 'issuance' of fake, backdated preferred stock of Buddy's [Newco LLC]," which stock was purportedly used as collateral to secure additional investments; and

(b) a claim, "in an unknown amount, but which could be in excess of $300 million, for cash that is believed to have been diverted from the Prophecy Funds and used by Brian Kahn to leverage and grow the Debtors through the purchase of various retail subsidiaries."

*See, e.g.*, Proof of Claim Nos. 1218, 1327, & 1333.

12. As of the date hereof, the Prophecy Trust's claims are mere allegations against the Debtors that have never been litigated, let alone reduced to a judgment, as the Prophecy Trust appears to concede.[7]

## Argument

### I. The Prophecy Trust's Claims Should Be Valued at $1.00 for Voting Purposes.

13. The principal purpose of Bankruptcy Rule 3018 is to "give all creditors, even those holding disputed claims, the opportunity to vote . . . ." *In re Century Glove, Inc.*, 88 B.R. 45, 46 (Bankr. D. Del. 1988). Bankruptcy courts have wide discretion to select an estimation methodology best suited to the particular circumstances of the case, so long as such procedure is consistent with the fundamental policy of chapter 11. *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003). However, the Court must be mindful that "the procedure is consistent with fundamental bankruptcy policies, which require speed and efficiency." *In re Pac. Sunwear of Cal.*, 2016 WL 4250681, at *3 (Bankr. D. Del. Aug. 8, 2016). In light of the bankruptcy policies of speed and efficiency, bankruptcy courts in this district routinely allow in nominal amounts contingent and/or unliquidated claims for voting purposes. *See, e.g.*, *In re Panda Temple Power, LLC*, Case No. 17-10839 [Docket No. 242] (LSS) (Bankr. D. Del. June 29, 2017)

---

[7] *See generally* 3018 Motion at ¶¶ 33–35 (generally discussing the procedure for temporarily allowing disputed, unliquidated, or other unresolved claims in advance of confirmation and advocating for the temporary allowance of the Disputed Claims as they are, in fact, unliquidated).

(temporarily allowing such claims for voting purposes in the amount of $1.00); *In re FKF Madison Grp. Owner LLC*, Case No. 10-11867 [Docket No. 1078] (KG) (Bankr. D. Del. Feb. 24, 2012) (same); *In re Visteon Corp.*, Case No. 09-11786 [Docket No. 3491] (CSS) (Bankr. D. Del. June 28, 2010) (same).

14. The Prophecy Trust agrees on the standard to be applied for allowing contingent and/or liquidated claims for voting purposes and its underlying rationale. *See e.g.*, 3018 Motion at ¶¶ 34–37. Therefore, the only issue before the Court is to determine what amount the Prophecy Trust's claims should be valued for purposes of voting on the Plan. In determining the appropriate value, the Court need look no further than the Solicitation and Voting Procedures, which apply to all creditors' claims in the Chapter 11 Cases, and are standard procedures that are routinely approved in this district and others.

15. The Solicitation and Voting Procedures generally provide that "a Ballot cast by an alleged Holder who has timely filed a Proof of Claim in a wholly unliquidated, unknown, blank, or uncertain amount or in the amount of $0.00" shall be ascribed a value of $1.00 for voting purposes only. Disclosure Statement Order at ¶ 27(d). Valuing the Prophecy Trust's claims at $1.00 for voting purposes furthers the purpose of Bankruptcy Rule 3018 as articulated by the Prophecy Trust in the 3018 Motion, and is consistent with the Debtors' Solicitation and Voting Procedures because allowing for purposes of voting a wholly unliquidated claim in the amount of $300 million would prematurely and unfairly elevate the Prophecy Trust's influence over the process for confirming the Debtors' Plan, prejudicing other parties and similarly situated creditors—the exact outcome that the Solicitation and Voting Procedures and Bankruptcy Rule 3018 are intended to prevent. As the Prophecy Trust cannot—and did not—provide any basis for why its unliquidated claims should be treated any differently than those of other similarly situated

creditors, the Debtors request that the 3018 Motion be denied, and that the Prophecy Trust's claims be valued at $1.00 for voting purposes.

II. **The Prophecy Trust's Claims Are Unlikely to be Meritorious and/or Should Be Subordinated to General Unsecured Claims Pursuant to Section 510(b) of the Bankruptcy Code.**

16. As noted above, the Court has broad discretion in selecting an estimation methodology best suited to the particular circumstances of the case, so long as such procedure is consistent with the fundamental policy of chapter 11. *In re Adelphia*, 341 B.R. at 422. Here, in determining that the Prophecy Trust's claims should be estimated at $1.00 for purposes of voting, the Court should consider that not only are the Prophecy Trust's claims wholly unliquidated, they are also unlikely to be meritorious as against the Debtors and should be subordinated to the recoveries of Allowed General Unsecured Claims in the Chapter 11 Cases.

17. First, the Prophecy Trust has filed claims against the Debtors and their Estates based on allegations of Kahn's wrongdoing—not the Debtors'. Accordingly, the Prophecy Trust has failed to state a claim against the Debtors' and their Estates for, among other things, diversion of Prophecy funds. *See In re U Lock, Inc.*, No. 24-1163, 2025 WL 303065, at *2 (3d Cir. Jan. 27, 2025) ("bare bones" claim was insufficient to meet initial burden of proof); *In re Energy Future Holdings Corp.*, 785 F. App'x 945, 947 (3d Cir. 2019) (claimant's initial burden of proof was not satisfied where, "at no point . . . did [claimant] identify any cause of action that he possessed against [the debtor]. Instead, he alleged only that his bonds lost value, which, standing alone, does not state a viable cause of action"); *Payne ex rel. L.L. v. Lampe (In re Lampe)*, 665 F.3d 506, 514 (3d Cir. 2011) ("[A] proof of claim that alleges sufficient facts to support liability satisfies the claimant's initial obligation to proceed, after which the burden shifts to the objector to produce sufficient evidence to negate the prima facie validity of the filed claim."). In support of its claims, the Prophecy Trust has appended an indictment listing Kahn as an unindicted coconspirator, which

33147153.6

8

does not articulate any theory that the Debtors diverted funds from Prophecy. Therefore, the Prophecy Trust has failed to show such claims are likely to be meritorious.[8]

18. Second, the Prophecy Trust's claims are brought on account of damages arising from the purchase or sale of securities, and should be subordinated to the recoveries of General Unsecured Claims under the Plan pursuant to section 510(b) of the Bankruptcy Code.

19. Section 510(b) of the Bankruptcy Code provides that:

> "[A] claim arising from recission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security . . . ."

11 U.S.C. § 510(b).

20. Accordingly, for a claim to be subordinated under section 510(b) of the Bankruptcy Code, it must arise from "a purchase or sale of a security" or be for damages arising from the purchase or sale of a security. 11 U.S.C. § 510(b). The term "security" is defined broadly under the Bankruptcy Code and includes, among other things, "stock." 11 U.S.C. § 101(49)(A)(ii); *see also* 11 U.S.C. § 101(49)(A) (listing the fifteen things included in the definition of "security" under the Bankruptcy Code). Under Third Circuit case law, "[f]or a claim to 'arise from the purchase or sale of . . . a security,' there must . . . be some nexus or causal relationship between the claim and the sale of the security." *Baroda Hill Invs., Inc. v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133, 138 (3d Cir. 2002). Third Circuit courts have relied on a "but-for" causation test to determine whether the appropriate causal relationship exists. *In re Telegroup*, 281 F.3d at 138 (finding "§ 510(b) is reasonably read to encompass the claims [that] would not have arisen but for

---

[8] The Debtors anticipate objecting to the Prophecy Trust's claims on at least that basis for purposes of distributions under the Plan.

the purchase of [debtor's] stock and allege a breach of a provision of the stock purchase agreement"); *see also Frankun v. Int'l Wireless Communs. Holdings, Inc. (In re Int'l Wireless Communs. Holdings, Inc.)*, 68 F. App'x 275, 278 (3d Cir. 2003) (subordinating claim under section 510(b) where claimant would not have filed proof of claim "but for" their purchase of debtor's shares); *In re RTI Holding Co. LLC*, Case No. 20-12456, 2021 WL 3409802, at *3 (Bankr. D. Del. Aug. 4, 2021) (finding claims would not exist but for claimants' status as shareholders).

21. Additionally, the scope of 510(b) is not limited to securities of a debtor—rather, it applies also to securities issued by *an affiliate* of the debtor. *See In re Med Diversified, Inc.*, 461 F.3d 251, 258-59 (2d Cir. 2006). The Bankruptcy Code defines "affiliate" as an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor" or a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor," with enumerated exceptions. *See* 11 U.S.C. § 101(2). Courts interpret "affiliate" broadly in the context of section 510(b) of the Bankruptcy Code and agree that if an entity controls both the debtor and another unrelated corporation, the unrelated corporation is considered an affiliate of the debtor.[9]

22. The universe of claims that are subject to subordination under section 510(b) of the Bankruptcy Code is vast, including claims for fraud and breach of contract. *See In re Syntax-*

---

[9] *See, e.g., In re Petroleum Tank Lines, Inc.*, 10 B.R. 286, 288 (Bankr. W.D.N.Y. 1981) (holding that a debtor is the affiliate of another corporation when both are controlled by the same person); *In re 22 Acquisition Corp.*, No. 03-3059, 2004 WL 870813, at *5 (E.D. Pa. Mar. 23, 2004) ("A debtor is the affiliate of another corporation when control of both is in the same person" (citing *id.*)); *In re Holly Hill Med. Ctr., Inc.*, 53 B.R. 412, 413 (Bankr. M.D. Fla. 1985) ("Overall, it appears that the courts have interpreted 11 U.S.C. § 101(2)(B) to mean that where one person controls both the debtor and another corporation, that 'non-related' corporation is an affiliate of the debtor.").

*Brillian Corp.*, 551 B.R. 156, 158 (Bankr. D. Del. 2016) ("[S]hareholders of companies that file for bankruptcy relief often (and perhaps typically) see their interests wiped out."). This is true even where the shareholders purchased their shares in reliance upon fraudulent or misleading information. *Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 281 F.3d 1173, 1177 (10th Cir. 2002) ("[A] fraud claim arising from the purchase or sale of a security is treated not as a general unsecured claim but rather as a claim 'below or equivalent to the rights afforded by the underlying security.'" (citation omitted)); *In re Enron Corp.*, 341 B.R. 141, 162 (Bankr. S.D.N.Y. 2006) ("[C]laims for breach of contract related to stock options are claims 'arising from' the purchase of a security and should be subordinated . . . ."). Subordination also applies to claims based on securities that are never actually issued, because the claimant accepted the risk allocation of equity. *See In re Med Diversified, Inc.*, 461 F.3d 251, 258-59 (2d Cir. 2006).

23. Section 510(b) of the Bankruptcy Code is based on the public policy that shareholders take on more risk than general creditors. *See Telegroup*, 281 F.3d at 141 ("Section 510(b) thus represents a Congressional judgment that, as between shareholders and general unsecured creditors, it is shareholders who should bear the risk of illegality in the issuance of stock in the event the issuer enters bankruptcy.").

24. The Prophecy Trust's claims satisfy the requirements under section 510(b) of the Bankruptcy Code. The alleged injury upon which the Prophecy Trust's claims is based directly relates to the equity interests in the Prophecy Funds that the trust beneficiaries purchased, and the Prophecy Trust's subsequent purported investment in the equity of the Debtors. Therefore, the Prophecy Trust's only economic relationship with the Debtors is through intended equity investments in certain of the Debtors. What the Prophecy Trust's beneficiaries purportedly bargained for was equity in Buddy's and FRG, and the injury suffered by the Prophecy Trust's

beneficiaries was on account of their expectations to purchase and own equity in the Debtors. In other words, but for the actual or intended purchase of the equity interests in Buddy's and FRG, the Prophecy Trust's claims against the Debtors would not exist. *See, e.g., In re RTI Holding Co.*, LLC, No. 20-12456, 2021 WL 3409802, at *4-5 (Bankr. D. Del. Aug. 4, 2021) (finding that claimants were seeking to recover equity investments for purchase of shares of debtors, which is what section 510(b) intends to prevent, and therefore their claims were subordinated to further policy goals of section 510(b)). Section 510(b) of the Bankruptcy Code therefore commands that the Prophecy Trust's claims be subordinated, and the 3018 Motion should be denied.

## Reservation of Rights

25.     Nothing contained in this Objection or any order granting the relief requested in this Objection, and no action taken by the Debtors pursuant to the relief requested or granted, is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law, including, without limitation, with respect to the Debtors' insurance policies and coverage thereunder and the Claim, or shall waive, impair, prejudice, or otherwise affect any rights, claims, defenses, arguments, or remedies of the Debtors or their Estates (or any successors thereto) with respect to such matters, including, without limitation, in any proceedings before this Court or in any other court; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest

in, or other encumbrance on property of the Debtors' Estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## Notice

26. The Debtors will provide notice of this Objection to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the ABL Lenders; (d) counsel to the Ad Hoc Group of First Lien Lenders; (e) counsel to the Second Lien Term Loan Lenders; (f) counsel to the HoldCo Lenders; (g) counsel to the DIP Agent; (h) counsel to the DIP Lenders; (i) counsel to the Prophecy Trust; and (j) any party that is entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court deny the 3018 Motion and grant the Debtors such other and such other relief as the Court deems appropriate under the circumstances.

Dated: May 5, 2025
Wilmington, Delaware

/s/ Allison S. Mielke

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 571-6600
Facsimile:   (302) 571-1253
Email:   emorton@ycst.com
  mlunn@ycst.com
  amielke@ycst.com
  sborovinskaya@ycst.com

*Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   jsussberg@kirkland.com
  ngreenblatt@kirkland.com
  derek.hunter@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone:   (415) 439-1400
Facsimile:   (415) 439-1500
Email:   mark.mckane@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*