**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: | Chapter 11 |
|---|---|
| FRANCHISE GROUP, INC. *et al.*,[1] | Case No. 24-12480 (JTD) |
| Debtors. | (Jointly Administered) |

**OBJECTION AND RESERVATION OF RIGHTS OF PENTEX FRANCHISEES TO EIGHTH AMENDED JOINT CHAPTER 11 PLAN OF FRANCHISE GROUP, INC. AND ITS DEBTOR AFFILIATES**

Pentex RTO, LLC, EightSixThree RTO, LLC, Pentex Top Left, LLC and Pentex 1848, LLC (individually or collectively, as applicable, "Pentex" or "Franchisee(s)") by and through their undersigned counsel, respectfully submit this objection (this "Objection") to the *Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [D.I. 1312] (the "Eighth Amended Plan") filed by the above-captioned Debtors (the "Debtors" or "Franchise Group"). In support of its Objection, Pentex states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); ValorAcquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

**PRELIMINARY STATEMENT**

1. In connection with their Eighth Amended Plan, the Debtors seek to assume the Franchise Agreement (as defined below) entered into between Debtor Buddy's Franchising and Licensing LLC (the "Franchisor "or "Buddy's Franchising") and Pentex, which governs the parties' franchisor-franchisee relationship and respective rights and obligations related to seventy-three (73) Buddy's branded stores operated by Pentex. However, the Debtors are in default under the Franchise Agreement. These defaults include material incurable breaches of non-competition provisions that are essential elements of Pentex's bargained-for rights under the Franchise Agreement. Therefore, the Franchise Agreement cannot be assumed under the Eighth Amended Plan.

2. Even assuming that the Franchise Agreement could be assumed notwithstanding these material incurable breaches, the actual cure amounts due to Pentex consist of any accrued but unpaid Section 7 Claim (as defined below), plus all additional amounts (which Pentex asserts are at least $13 million) that are due as damages based upon the Franchisor's breaches of the Franchise Agreement. All such cure amounts must be paid before the Debtors may assume the Franchise Agreement. Additionally, to the extent the Franchise Agreement can be assumed, it must be assumed in its entirety without amendment.

**RELEVANT BACKGROUND**

3. On November 3, 2024 (the "Petition Date"), the above-captioned Debtors, including Buddy's Franchising, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

4. The Debtors privately hold and operate franchised businesses. Their collection of brands and business segments includes, among others, Buddy's Home Furnishings ("Buddy's") and American Freight ("American Freight").

**A.    The Franchise Agreements with Pentex.**

5. Pentex is one of the largest franchisees of Buddy's, currently operating seventy-three (73) stores. The rights and obligations of the parties related to sixty-three (63) of those stores are governed by that certain *Franchise Agreement* entered into on December 1, 2017, and that certain *Addendum to the Franchise Agreement* entered into on December 1, 2017 (as may be amended from time to time, the "2017 Franchise Agreement").

6. The following additional Franchise Agreements, together with all related Addendums, amendments and exhibits, govern the parties' relationship related to the other ten (10) Buddy's stores operated by Pentex: (i) *Franchise Agreement* entered into on June 5, 2019 for Stores 1065, 1067, 1068, 1069, and 1079; (ii) *Franchise Agreement* entered into on August 10, 2020 for Store 368; (iii) *Franchise Agreement* entered into on December 2, 2021 for Store 513 and 445; and (iv) *Franchise Agreement* entered into on March 1, 2022 for Store 106 (collectively, together with the 2017 Franchise Agreement, and all respective amendments, modifications, addendums and related documents, the "Franchise Agreement").[2]

7. The Franchise Agreement serves as a single franchise agreement for all Retail Businesses (as defined in the Franchise Agreement) owned and operating by Pentex as wells as those subsequently acquired and/or developed by Pentex (collectively, the current and future Retail

---

[2] An additional Franchise Agreement was entered into on July 29, 2021 for Store 105. Store 105 has closed, and the July 2021 Agreement has been terminated. Accordingly, this Franchise Agreement cannot be assumed.

Businesses owned and operated by Pentex are referred to as the "<u>Pentex Franchised Businesses</u>").[3] *See* 2017 Franchise Agreement, ¶ C.

8. For the vast majority of stores, the term of the Franchise Agreement is 10 years, which commenced in of December 2017 and would, in the absence of earlier termination due to the Franchisor's breaches, expire in December 2027.

### 1) Non-Compete Provision of the Franchise Agreement

9. The Franchise Agreement restricts the ability of the Franchisor and its affiliates to open competing business within the Franchisee's established territories. Under the Franchise Agreement, "Territory" means the geographic area assigned to each Pentex Franchised Businesses. *See* 2017 Franchise Agreement, Section 1(g). The Territories of the Pentex Franchised Businesses range from a two to ten mile radius from each store address. *See* 2017 Franchise Agreement, Exhibit A.

10. The Franchise Agreement expressly precludes the Franchisor from establishing "either a company-owned or franchised Buddy's Retail Business location within the Territory under the Trademarks…." *See* Franchise Agreement, Section 2(b). Furthermore, the Franchise Agreement expressly precludes the Franchisor or its affiliates from operating any "Competitive Business" within any of Pentex's Territories. *See* Franchise Agreement, Section 2(d)(ii) ("[Franchisee] acknowledge[s] and agrees that *[Franchisor] and [its] affiliates* may . . . operate and grant to others the right to operate retail businesses or any other business, *other than a Competitive Business*, at any location (including within the Territory) . . ." (emphasis added). "Competitive Business" is defined to include "any rent-to-own, rental purchase, lease purchase or

---

[3] The relevant provisions of the 2017 Franchise Agreement are substantively similar or identical to all of the other Franchise Agreements between Franchisor and Pentex.

other business that leases, rents, sells or distributes home furnishings, electronics or appliances through any channel, including, without limitation, business conducted by means of retail outlets, internet or direct marketing." *See* Franchise Agreement, Section 1(d).

11. Furthermore, pursuant to Section 28(d) of the Franchise Agreement's Addendum, the parties agreed that "neither [Franchisor] nor our subsidiaries, will operate a Competitive Business within the protected territory of any Pentex Franchised Business' Authorized Location."

**2) Section 7 Claims**

12. The Franchise Agreement provides for a certain amounts to be payable by the Franchisor to Pentex on a quarterly basis. *See* 2017 Franchise Agreement Addendum, Section 7. Franchisor's payment obligation under Section 7 of the Franchise Agreement Addendum (the "Section 7 Claim"), which accrues on an ongoing basis and becomes payable on a quarterly basis, shall be included in any cure amount.

**A.    Franchisor's Breaches of the Franchise Agreement.**

13. In or about February 2020, an affiliate of Buddy's Franchising acquired American Freight. *See* Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings [D.I. 15] at ¶ 20. As a result, an affiliate of Buddy's Franchising became the owner of numerous American Freight stores within the Territories of numerous Pentex Franchised Businesses. These American Freight stores constituted Competitive Businesses as defined by the Franchise Agreement, resulting in a breach of Section 2(d)(ii) of the Franchise Agreement, which prohibited the Franchisor or its affiliates from operating any Competitive Business within a Pentex Territory.

14. Specifically, Franchisor's affiliates operated at least thirteen (13) American Freight Competitive Businesses within or in proximity to the following Pentex Territories:

    i. Store 104 – 3601 Pecan St., McAllen TX
    ii. Store 80 – McAllen TX
    iii. Store 91 - Pharr TX
    iv. Store 445 - Corpus Christie TX
    v. Store 1045 - San Antonio TX
    vi. Store 1063 - San Antonio TX
    vii. Store 106 - Bellmead TX
    viii. Store 393 - Waco TX
    ix. Store 570 - Houston TX
    x. Store 1043 - Houston TX
    xi. Store 573 - Houston TX
    xii. Store 622 - Mesa AZ
    xiii. Store 352 - Tacoma WA

15. During these bankruptcy cases, the Franchisor's debtor-affiliates have engaged in store closing and liquidation sales for their American Freight store locations, including those within the Pentex territories. *See Interim Order and Final Orders Approving Procedures for Store Closing Sales* [D.I. 132 and 351]. Pursuant to these liquidation sales, the Franchisor's affiliates have sold competing merchandise of the same type sold by Pentex in its Buddy's stores, for below-cost liquidation values. This competition, in breach of the Franchise Agreement, occurred during the holiday months during which Buddy's stores rely on increased sales.

16. Pentex has been materially damaged by the Franchisor's breaches of the Franchise Agreement. The Pentex Franchisees have filed proofs of claim asserting breach of contract damages in the collective amount of at least $13 million (the "Breach Claims").

B. **The Bankruptcy Case.**

17. On November 11, 20254, the Debtors filed Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors. [DI 150]

18. On November 11, 2024, the Debtors filed Debtors Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief. [D.I. 154]

19. On December 16, 2024, the Court entered the Order (REVISED) (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief (the "Bidding Procedures Order") [D.I. 444].

20. On December 20, 2024, in accordance with the Bidding Procedures Order, the Debtors filed the Cure Notice, which indicates that the Debtors may potentially seek to assume and assign the Pentex Franchise Agreement related to each of the Buddy's stores operated by Pentex. *See* Cure Notice, Exhibit A-4, pp. 12-15.

21. On January 3, 2025, the Debtors filed the First Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors. [D.I. 654].

22. On January 8, 2025, Pentex filed the Objection, Joinder and Reservation of Rights of Pentex Franchisees to Notice of Possible Assumption and Assignment and Cure Costs with Respect to Executory Contracts and Unexpired Leases. [D.I. 683].

23. On February 3, 2025, the Debtors filed the Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors. [D.I. 894].

24. On February 5, 2025, the Debtors filed Third Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors. [D.I. 925].

25. On February 12, 2025, the Debtors filed the Fourth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors. [D.I. 957].

26. On February 18, 2025, the Debtors filed the Fifth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates. [D.I. 996].

27. On February 20, 2025, the Debtors filed the Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates. [D.I. 1015].

28. On April 3, 2025, the Debtors filed the Seventh Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates. [D.I. 1233].

29. On April 25, 2025, the Debtors filed the Eighth Amended Plan. [D.I. 1312].

30. The Eighth Amended Plan provides for a Plan Equitization Transaction with a possibility of consummating a Partial Sale Transaction. *See id.*, Section 7.2.

31. Pursuant to the Eighth Amended Plan, assumed contracts shall revest in and be fully enforceable by the applicable Reorganized Debtor (as defined in the Eighth Amended Plan) in accordance with their terms, except as such terms by have been modified by agreement of the parties or by order of the Bankruptcy Court. *See id.*

32. On April 30, 2025, the Debtors filed their Plan Supplement to the Eight Amended Plan, which included the Assumed Contracts List as Exhibit K. The Assumed Contract List includes the Pentex Franchise Agreement for each of the stores currently operated by Pentex. Accordingly, as part of the Eighth Amended Plan, the Debtors seek to assume the Franchise Agreement. *See id.*, Section 10.1.

**OBJECTION**

33. Pentex objects to the Eighth Amended Plan with respect to the proposed assumption of the Franchise Agreement. As set forth below, the Franchise Agreement cannot be assumed due to incurable material defaults. To the extent that the Franchise Agreement could be assumed through the Eighth Amended Plan, the Franchisor must pay cure amounts in the amount of the Breach Claims, plus any unpaid Section 7 Claim and other amounts due thereunder.

I. **The Franchise Agreement Cannot be Assumed Through the Eighth Amended Plan Due to Incurable Material Defaults.**

34. The Franchise Agreement cannot be assumed pursuant to the Eighth Amended Plan due to the existence of incurable material defaults. Pursuant to 11 U.S.C. § 365(b)(1)(A), a debtor-in-possession must cure, or provide adequate assurance of the prompt cure of any default, in order to assume an executory contract. However, material nonmonetary defaults must also be cured, and if such defaults are incurable—as is the case with past events that cannot be changed—they preclude the debtor-in-possession from assuming an executory contract. *See In re Vitanza*, Case No. 98-19611DWS, 1998 Bankr. LEXIS 1497, at *82-84 (Bankr. E.D. Pa. Nov. 13, 1998); *In re New Breed Realty Enters.*, 278 B.R. 314, 320 (Bankr. E.D.N.Y. 2002); *In re Lee West Enterprises, Inc.*, 179 B.R. 204, 208 (Bankr. C.D. Cal. 1995); *In re Fleming Companies, Inc.*, 499 F.3d 300, 302 (3d Cir. 2007) (affirming bankruptcy court's decision to deny a request to excise a provision which would have required the assignee to supply groceries to the non-debtor from a specific location).

35. In the instant case, the Franchisor breached the Franchise Agreement's non-competition provision due to the Franchisee Group's operation of competing American Freight stores within Pentex's Territories. In entering into the Franchise Agreement, the Franchisor and Pentex agreed that in exchange for Pentex's payment of franchise and royalty fees and other


performance of its obligations, the Franchisor and its affiliates would abide by their obligations, including the critical obligation not to damage the Franchisee's business by operating Competitive Businesses within Pentex's Territory. These protections afforded by Franchisee in the Franchise Agreement go to the very essence of the parties' relationship.

36. By the plain meaning of 11 U.S.C. § 365(b)(1)(A), an executory contract in which the debtor committed an incurable default may not be assumed. Additionally, case law confirms that an incurable non-monetary default acts as a bar to assumption when such default is material or caused substantial economic detriment. *See In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990).

37. As discussed by the court in *In re New Breed Enterprises, Inc.*—

> [T]he Third Circuit articulated a standard which may be applied to determine whether the existence of an incurable non-monetary default precludes assumption of an executory contract or unexpired lease. [In *Joshua Slocum*], the court noted with approval the concept that "the [bankruptcy] court does retain some discretion in determining that lease provisions . . . may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets." *Joshua Slocum,* 922 F.2d at 1092 (*citing In re Mr. Grocer, Inc.,* 77 B.R. 349, 354 (Bankr. D.N.H.1987)). The Third Circuit found in *Joshua Slocum* that a provision in a shopping center lease, allowing for the termination of the lease if certain minimum sales figure were not realized, was "material in the sense that it goes to the very essence of the contract, i.e., the bargained for exchange," and that it was "also reflective of the economic terms of the lease agreement governing occupancy." *Joshua Slocum,* 922 F.2d at 1092.

278 B.R. at 321-22.

38. The Franchisor's breaches of the non-competition provision of the Franchise Agreement Territory Provision are "historical facts" and constitute incurable defaults that preclude assumption under Section 365 of the Bankruptcy Code. *See id*. Pre-petition, the Franchisor has materially, incurably, breached the Franchise Agreement by permitting its' affiliates operation of Competitive Businesses in the Pentex Territories. Pentex has been damaged by the Debtors'

violation of the Territory Provision. Therefore, the assumption of the Franchise Agreement pursuant to the Eighth Amended Plan must be denied.

## II. Even if the Debtors Could Assume the Franchise Agreement, the Debtors Owe a Cure Amount Related to Any Accrued but Unpaid Section 7 Claim and Other Damages.

39. Even if this Court allows the Debtors to assume the Franchise Agreement despite the Debtors' breaches, the Debtors, pursuant to Section 365(b)(1) of the Bankruptcy Code, must cure all outstanding amounts owed under the assumed Franchise Agreement in full and provide adequate assurance of future performance prior to assuming such contracts. *See In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 318 (2003) ("In other words, the debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement.").

40. To the extent that the Court finds that the Franchise Agreement can be assumed notwithstanding material incurable breaches, then such default must be cured through the payment of money damages. Pentex asserts that its damages resulting from Franchisor's breach of the Franchise Agreement are at least $13,000,000, which amount consists of its estimates of direct damages, consequential damages and lost profits due to the impermissible Competing Businesses operated by Franchise group within Pentex's Territories. Additionally, the Franchisor is obligated to Pentex for its Section 7 Claim that has accrued but remains unpaid at the time of assumption.

41. These amounts, as well as all other amount owing to Pentex that accrue through the date of assumption, must be paid in full in connection with any permitted assumption of the Franchise Agreement on the Effective Date pursuant to the Eighth Amended Plan. *See id.*, Section 10.2.

**III.    To the Extent the Franchise Agreement can be Assumed, it Must be Assumed in its Entirety Without Amendment, and Adequate Assurance of Future Performance Must be Provided.**

42.    In the event that the Court finds that the Franchise Agreement can be assumed pursuant to the Eighth Amended Plan, which Pentex disputes, the Franchise Agreement must be assumed in its entirety without amendment. A decision to assume or reject an executory contract is "an all or nothing proposition." *Schlumberger Resource Management Serv., Inc. v. Cellnet Data Sys., Inc. (In re Cellnet Data Sys., Inc.)*, 327 F.2d 242, 249 (3d Cir. 2003). Thus, if a debtor assumes a contract, it must do so with all the benefits, as well as the burdens. *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 183 (Bankr. E.D. Pa. 2010) (holding that the debtor "must either assume the whole contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits"). The assumption of an executory contract does not give the debtor or the assignee the ability or the right to modify the terms of the agreement being assumed and assigned. *See e.g. Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001); *see also In re Federal-Mogul Global, Inc.*, Case No. 05-2423, 2007 U.S. App. LEXIS 6120, at *9 (3d Cir. Mar. 15, 2007) (explaining that the debtor is not able to modify obligations in contract assumed and assigned pursuant to Section 365 of the Bankruptcy Code). Accordingly, if the Franchisor seeks to assume the Franchise Agreement, it must do so in its entirety, without amendment.

**RESERVATIONS OF RIGHTS**

43.    Pentex reserves the right to amend or supplement this Objection in all respects, including (i) to assert all additional amounts become owed to it between the date hereof and the date of any assumption of the Franchise Agreement that otherwise must be cured under Section

365(b)(1)(A) of the Bankruptcy Code; and (ii) to supplement with respect to facts subsequently discovered.

44.     Pentex further reserves its rights with respect to the specific agreements listed in the Debtors' Assumed Cure List attached as Exhibit K to the Plan Supplement to the Eighth Amended Plan (D.I. 1371).  For example, the Assumed Cure List lists the Franchise Agreement as an assumed contract for numerous stores, including previously closed Store 360, while also listing a Termination and Release dated August 1, 2024 related to Store 360 as an assumed contract.  Accordingly, Pentex objects to any proposed assumption of any agreements that were previously terminated or which are not executory, and reserves all related rights.

45.     Pentex is also a sub-tenant under the *Second Amended and Restated Master Lease Agreement* dated November 3, 2015 (the "Master Lease"), and entered into by Store Master Funding IV, LLC, as landlord/lessor, and Buddy's Northwest, LLC as lessee/sub-landlord.  Pentex's relationship as sub-tenant of Buddy's Northwest, LLC is memorialized through a *Sublease Agreement* dated December 1, 2017, and a *Consent to Sublease Agreement* dated February 20, 2018.  These agreements are not included among the contracts and leases listed in the Assumed Contracts List.  However, the Debtors do propose to reject a related *Guaranty* of the Master Lease executed by Debtor Buddy's Newco, LLC in favor of Store master Funding IV, LLC.  See D.I. 1371 at Exhibit E (Rejected Contracts List), ID #74.  Pentex reserves all of its rights related to the Master Lease, sublease and related agreements.

46.     Pentex reserves all rights to raise additional objections to any attempt to have the Franchise Agreement assumed at a later date.  Pentex further reserves all rights it has under the Franchise Agreement, the orders related to any proposed sale of the Debtors' assets including the

Franchise Agreement, and applicable law, including, but not limited to, its rights to seek adequate protection and/or relief from the automatic stay.

## **CONCLUSION**

**WHEREFORE,** Pentex respectfully requests that this Court enter an Order: (a) sustaining this Objection; (b) modifying any order, schedule or other operative document approving or confirming the Eighth Amended Plan to provide that the Pentex Franchise Agreement are not assumed; and (c) granting such other, further, and different relief as this Court deems just and proper.

Dated: May 6, 2025                                    **BURR & FORMAN LLP**

*/s/ J. Cory Falgowski*
J. Cory Falgowski (No. 4546)
222 Delaware Avenue, Suite 1030
Wilmington, DE 19801
Telephone: 302-830-2312
Email: jfalgowski@burr.com

*Counsel for Pentex Franchisees*