## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) | Case No. 24-12480 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket Nos. 1283, 1293, 1391, 1408** |
|  | ) |  |

### ORDER (I) AUTHORIZING FRANCHISE GROUP INTERMEDIATE V, LLC TO ENTER INTO AND PERFORM ITS OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (II) APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS, AND ENCUMBRANCES, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

Upon the *Debtors' Motion for Entry of an Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter into and Perform its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

*Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Sale Order"):  (a) authorizing and approving the Debtors' entry into and performance under the APA, substantially in the form attached hereto as **Exhibit 1**; (b) authorizing and approving the sale of the Purchased Assets free and clear of any and all mortgages, liens (statutory or otherwise, including as defined in section 101(37) of the Bankruptcy Code), claims, licenses, sublicenses, pledges, security interests, charges, hypothecations, restrictions (including restrictions on transfer or use), claims of ownership, leases, subleases, options, rights of use or possession, preferences, encroachments, restrictive covenants, rights of first offer or refusal, title or survey defects, or other encumbrances or similar restrictions of any kind (collectively, the "Encumbrances"), except Permitted Encumbrances and Assumed Liabilities; (c) authorizing the assumption and assignment of the Purchased Contracts and the Purchased Leases; and (d) granting related relief, all as more fully set forth in the Motion;  and upon consideration of the *Declaration of Christopher Grubb, In Support Of Debtors' Motion For Entry Of An Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter Into and Perform its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment Of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the APA, the *Seventh Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1233], or the *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 414] (the "Final DIP Order"), as applicable.

[Docket No. 1389] (the "Grubb Declaration") and the *Declaration of David Orlofsky In Support Of Debtors' Motion For Entry Of An Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter Into and Perform its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment Of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1390] (the "Orlofsky Declaration"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that sufficient cause exists for the relief set forth herein; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, at a hearing before this Court (the "Sale Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND, CONCLUDED, AND DETERMINED THAT**:

I.        **Jurisdiction, Venue, and Final Order.**

A.        This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

B.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.        The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1, 6004-1, and 9013-1.

D.        This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), any other applicable Bankruptcy Rules or Local Rules, and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

E.        The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

II.       **Notice of the APA, the Sale, and the Sale Hearing.**

F.        As evidenced by the affidavits of service filed with the Court [Docket Nos. 685, 735, 907, 1008, 1349, and 1351] due, proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise be heard regarding, the Motion, the APA, the Sale, the Sale Hearing, this Sale Order, the assumption and assignment of the Purchased Contracts and

the Purchased Leases, and the Cure Schedule (as defined herein) was provided to all parties entitled

thereto in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy

Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1(b) and 6004-3.  No other or

further notice of, other opportunity to object to, or other opportunity to be heard regarding the

Motion or the entry of this Sale Order need be given to any entity.

**III.      Disclosures.**

G.      The disclosures made by the Debtors in the Motion and related documents filed

with the Court concerning the Sale are sufficient under the circumstances.

**IV.      Good Faith of the Debtors and the Buyer**.

H.      The Sale and the Transactions, including, but not limited to, the marketing and sale

process engaged in by the Debtors and the Buyer and entry into the APA, are non-collusive, in

good faith, from arm's-length bargaining positions, and substantively and procedurally fair to all

parties in interest.  Neither the Debtors nor the Buyer have engaged in any conduct that would

cause or permit the APA or the Sale to be avoided, or for any costs or damages to be imposed,

under section 363(n) of the Bankruptcy Code.

I.      As further described in the Motion, the Grubb Declaration, the Orlofsky

Declaration, and as demonstrated by (a) any testimony and other evidence proffered or adduced at

the Sale Hearing, if any, and (b) the arguments and representations of counsel made on the record

at the Sale Hearing, if any, substantial marketing efforts and a competitive sale process were

conducted and, among other things, (i) the Buyer in no way induced or caused any chapter 11

filing by the Debtors, (ii) all payments to be made by the Buyer in connection with the Sale have

been disclosed, and (iii) the Buyer recognized that the Debtors were free to deal with any other

party interested in acquiring the Purchased Assets.  The Buyer is consummating the Sale in good

faith and is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code

and is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy Code). The Buyer has proceeded in good faith in all respects in connection with the Sale. The Buyer is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

**V.      Highest or Otherwise Best Offer.**

J.      The Debtors have adequately marketed the Purchased Assets and the marketing process with respect to the Purchased Assets afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The APA, including the form and total consideration to be realized by the Seller under the APA, (a) constitutes the highest and best offer for the Purchased Assets, (b) is fair and reasonable, and (c) is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest. No other person, entity, or group of entities has presented, and it is unlikely that any entity or group of entities would present in a reasonable time frame, a higher or otherwise better offer to purchase the Purchased Assets, including the Permitted Encumbrances and Assumed Liabilities, for greater economic value and/or on better terms to the Debtors' estates than the Buyer.

**VI.     Business Justification; Fiduciary Duties.**

K.      Good and sufficient reasons for approval of the Motion and the Transactions to be consummated in connection therewith have been articulated by the Debtors, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications and (b) compelling circumstances for the Sale outside of the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a chapter 11 plan, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' assets and estates. The Debtors' decision to enter into the APA and pursue and consummate the Sale constitutes a proper exercise

of the fiduciary duties of the Debtors and their respective directors, managers, and officers.  The Sale must be approved and consummated promptly to maximize the value of the Debtors' estates. Time is of the essence in consummating the Sale.  Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.  The consummation of the Sale and the assumption and assignment of the Purchased Contracts and the Purchased Leases are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Purchased Contracts and the Purchased Leases to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Purchased Contracts and the Purchased Leases is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, subject to the requirements applicable to any Disputed Contracts (as defined below) set forth in this Sale Order and in the APA.  The Purchased Contracts and the Purchased Leases being assigned to the Buyer are an integral part of the Sale and, accordingly, their assumption and assignment is reasonable and an enhancement to the value of the Debtors' estates.

**VII.     No Fraudulent Transfer.**

L.     The total consideration provided by the Buyer to the Seller pursuant to the APA for the Purchased Assets (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Purchased Assets, and (c) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, the District of Columbia,

7

and any foreign country and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law.

**VIII.      No Merger.**

M.      Neither the Buyer nor any of its affiliates are a mere continuation of the Seller or any other Debtor or their estates and there is no continuity of enterprise or common identity between the Buyer or any of its affiliates, on the one hand, and the Seller or any other the Debtors, on the other hand.  Neither the Buyer nor any of its affiliates are holding themselves out to the public as a continuation of the Seller or any other Debtor.  Neither the Buyer nor any of its affiliates are successors to the Seller or any other Debtor or their estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates with or into Seller or any other Debtor.

**IX.      Binding Agreement.**

N.      The APA is a valid and binding contract between the Seller and the Buyer and shall be enforceable pursuant to its terms.  The APA and the Sale itself, and the consummation thereof, shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, their estates, and any chapter 7 or chapter 11 trustee appointed with respect to any of the Debtors, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.  The terms and provisions of this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their affiliates, their estates, all creditors of and holders of equity interests in any Debtor, any holders of Encumbrances (whether known or unknown) in, against, or on all or any portion of the Purchased Assets, all counterparties to the Purchased Contracts and the Purchased Leases, the Buyer, designees, successors, and assigns of the Buyer, the Purchased Assets, and any trustees, examiners, or receivers, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon the conversion of any of the Debtors' cases to a case under

chapter 7 of the Bankruptcy Code (collectively, the "<u>Bound Parties</u>").  The terms and provisions of the APA shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their affiliates, their estates, the Buyer, designees, successors, and assigns of the Buyer, and any trustees, examiners, or receivers, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon the conversion of any of the Debtors' cases to a case under chapter 7 of the Bankruptcy Code. The provisions of this Sale Order and the terms and provisions of the APA shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors, dismissing these chapter 11 cases, or converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.  The rights and interests granted pursuant to this Sale Order and the APA shall continue in these or any superseding cases and shall be binding upon the applicable Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized to perform under the APA and this Sale Order without the need for further order of the Court.

**X.**      **No *Sub Rosa* Plan**.

O.      The Sale and the Transactions do not constitute a *sub rosa* chapter 11 plan.  The consummation of the Sale outside of a chapter 11 plan pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for any of the Debtors.

**XI.**      **Validity of Transfer**.

P.      The APA was not entered, and the Sale is not being consummated for, the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of

the United States, any state, territory, possession, the District of Columbia, or any foreign country or other applicable law. None of the Debtors or the Buyer is entering into the APA or consummating the Sale fraudulently for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims or otherwise an improper purpose.

Q.     The applicable Debtor or Debtors are the sole and lawful owners of the Purchased Assets. The Purchased Assets constitute property of the Debtors' estates, DIP Collateral, and Prepetition First Lien Collateral, and good title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets to the Buyer will be, as of the Closing Date, a legal, valid, and effective transfer of the Purchased Assets, which transfer vests or will vest the Buyer with all right, title, and interest of the applicable Debtor or Debtors to the Purchased Assets free and clear of all Encumbrances relating to, accruing, or arising any time prior to the Closing Date, in each case, other than any Assumed Liabilities or Permitted Encumbrances.

R.     Subject to the entry of this Sale Order, the Seller: (a) has full requisite corporate or other organizational power and authority to execute, deliver, and perform its obligations under the APA and all other documents contemplated thereby; and (b) has taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of its obligations under the APA and to consummate the Sale, including as required by its organizational documents, and, upon execution thereof, the APA and the related documents were or will be duly and validly executed and delivered by the Seller and enforceable against the Seller in accordance with their terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, constituted, or will constitute, a valid and binding obligation of the Seller. No government, regulatory, or other consents or approvals, other than

those expressly provided for in the APA, the Restructuring Support Agreement, the Final DIP Order, and the DIP Credit Agreement, were required for the execution, delivery, and performance by the Seller of the APA or the consummation of the Sale and Transactions contemplated thereby. No consents or approvals of the Seller, other than those expressly provided for in the APA, this Sale Order, or the DIP Credit Agreement are required for the Seller to consummate the Sale.

**XII.        Section 363(f) of the Bankruptcy Code is Satisfied.**

S.        The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full such that, other than the Assumed Liabilities and Permitted Encumbrances,[3] the Sale and any purchase of the Purchased Assets will be free and clear of any Encumbrances.

T.        The Buyer would not have entered into the APA and would not consummate the Transactions if (a) the sale and/or transfer of the Purchased Assets to the Buyer was not free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) or (b) the Buyer would, or in the future could, be liable for any such Encumbrances (other than Assumed Liabilities and Permitted Encumbrances).

U.        The applicable Debtor or Debtors may transfer or sell the Purchased Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Subject to the terms and conditions of this Sale Order, all holders of Encumbrances (except to the extent that such Encumbrances are Permitted Encumbrances or Assumed Liabilities) are adequately protected by either (a) having their Encumbrances, if any, in each instance against the Debtors, their estates, or the Purchased Assets,

---

[3]    For the avoidance of doubt, Permitted Encumbrances include Encumbrances on leased real property underlying the Purchased Leases, including, among other things, restrictions on use, lease, subleases, options, rights of use or possession, and preferences provided thereunder, easements and other agreements that run with the land.

attach to the net cash proceeds of the Purchase Price ultimately attributable to the Purchased Assets in which such creditor alleges Encumbrances in the same order of priority, with the same validity, force, and effect that such Encumbrances had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto, or (b) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

V.      Those holders of Encumbrances who did not object or who withdrew their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

**XIII.     Cure Costs and Adequate Assurance of Future Performance.**

W.      Under the circumstances, the Debtors have demonstrated that assuming and assigning the Purchased Contracts and the Purchased Leases in connection with the Sale is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of the Debtors' estates, for the reasons set forth in the Motion and this Sale Order. Assumption and assignment of the Purchased Contracts and the Purchased Leases to the Buyer is necessary and appropriate under the circumstances, is integral to the Debtors' overall restructuring efforts, and the Buyer has demonstrated that it can reasonably carry on the obligations under the Purchased Contracts and the Purchased Leases.

X.      The assumption and assignment of the Purchased Contracts and the Purchased Leases listed in the APA pursuant to the terms of this Sale Order is integral to the APA, does not constitute unfair discrimination, and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of sound and prudent business judgment by the Debtors.  Subject to the terms and conditions of the APA, the applicable Debtor or Debtors shall, (a) to the extent necessary, cure or provide adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Purchased Contracts and the

Purchased Leases within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (b) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Purchased Contracts and the Purchased Leases within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  The applicable Debtor's or Debtors' payment or otherwise cure of all defaults or other obligations of the applicable Debtor or Debtors under the Purchased Contracts and the Purchased Leases arising or accruing prior to the Closing Date, or otherwise required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Purchased Contracts and the Purchased Leases that are listed on **Schedule 1** attached hereto (as may be amended or modified from time to time, the "Cure Schedule," and the related costs, collectively,  the "Cure Costs") in accordance with the terms of the APA, the Buyer's promise to perform the obligations under the Purchased Contracts and the Purchased Leases, and the evidence provided to counterparties of the Purchased Contracts and the Purchased Leases, as applicable, that the Buyer has the ability to perform, and intends to perform, its future obligations under the Purchased Contracts and/or Purchased Leases upon the assumption, shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Purchased Contracts and Purchased Leases.

Y.      On, prior to, or after the Closing Date, as applicable (but in any event, no later than five (5) business days following the Closing Date or as soon as reasonable practicable thereafter), the applicable Debtor or Debtors shall pay the Cure Costs for the Purchased Contracts and the Purchased Leases and cure any and all other defaults and breaches under the Purchased Contracts

and the Purchased Leases to the extent required under section 365 of the Bankruptcy Code; *provided, however*, that the applicable Debtor or Debtors shall not pay any Cure Costs on account of any Purchased Contract or Purchased Lease for which there is an unresolved objection by a non-Debtor counterparty to the Cure Costs or other dispute as to the assumption or assignment of such Contract or Lease (such contract or lease, a "Disputed Contract" or "Disputed Lease").  With respect to each Purchased Contract or Purchased Lease that is a Disputed Contract or Disputed Lease, on the date that is five (5) business days after the date on which (a) the Cure Costs with respect to such Purchased Contract or Purchased Lease have been consensually agreed or (b) the Court has entered an order fixing such Cure Costs, or as soon as reasonably practical thereafter, the applicable Debtor or Debtors shall pay such Cure Costs, upon which such Purchased Contracts and/or Purchased Leases, as applicable, shall be deemed assumed by the applicable Debtor or Debtors and assigned to the Buyer.  Notwithstanding anything to the contrary in this Sale Order, the Debtors reserve the right to amend **Schedule 1** in their discretion to remove a Disputed Contract or a Disputed Lease prior to the later of (a) the Closing Date and (b) five (5) days after the date on which the Bankruptcy Court determines that the Cure Costs with respect to any Purchased Contract or Purchased Lease is greater than the amount set forth on **Schedule 1** (or, in either case, such later date as may be agreed with a counterparty); *provided* that the Debtors shall give prompt notice of any such amendment to any affected counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.  For the avoidance of doubt, Disputed Contracts and/or Disputed Leases shall not be assumed and/or assigned on the Closing Date and will not be assumed and/or assigned until the cure dispute is resolved and the Cure Costs have been paid by the Debtor.

Z.      Under the circumstances, the Debtors have demonstrated that assuming and assigning the Purchased Contracts and the Purchased Leases in connection with the Sale as of the Closing Date is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of the Debtors' estates, for the reasons set forth in the Motion, the Grubb Declaration, the Orlofsky Declaration, and on the record at the Sale Hearing, including, without limitation, because the assumption and assignment of the Purchased Contracts and the Purchased Leases in connection with the Sale is a material component to the overall consideration provided by the Buyer and will maintain the ongoing business operations of the Debtors, limit the losses of counterparties to Purchased Contracts and Purchased Leases, and maximize the distribution to creditors of the Debtors.

AA.     The assignment of the Purchased Contracts and the Purchased Leases is necessary and appropriate under the circumstances in connection with the Sale, is integral to the Debtors' overall restructuring efforts, and the Buyer has demonstrated that it can reasonably carry on the obligations under the Purchased Contracts and the Purchased Leases.

**XIV.        Compelling Circumstances for an Immediate Sale.**

BB.     Good and sufficient reasons for approval of the APA and the Sale have been articulated.  The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications for approving the APA and (b) compelling circumstances for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the Sale with the Buyer is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize distributions to creditors.

CC.    The Debtors have articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rules 6004(h), 6006(d), and 7062.

**XV.    Buyer Expense Reimbursement.**

DD.    Approval of the Buyer Expense Reimbursement in an amount not to exceed $3 million, solely to the extent contemplated in the APA, is in the best interests of the Debtors' estates and their creditors.  The Buyer Expense Reimbursement is:  (a) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Buyer; (b) reasonable and appropriate in light of (i) the size and nature of the Sale contemplated by the APA, (ii) the commitments that have been made by the Buyer, and (iii) the efforts that have been expended by the Buyer; and (c) an essential inducement to, and condition of, the Buyer's entry into the APA. As such, the Debtors' agreement to pay the Buyer Expense Reimbursement solely to the extent contemplated in and subject to the terms of the APA is a valid exercise of the Debtors' business judgment.

**XVI.    Consent and Waiver.**

EE.    Section 6.05(k) of the DIP Credit Agreement and paragraph 8(b) of the Final DIP Order provide that the Debtors are not permitted to sell, transfer, lease, or otherwise dispose of any assets, including any Equity Interests (as defined in the DIP Credit Agreement) owned by the Debtors, unless such Disposition (as defined in the DIP Credit Agreement) is made in connection with a Sufficient Bid (as defined in the DIP Credit Agreement) or otherwise with the prior written consent of the Required Supermajority Lenders (as defined in the DIP Credit Agreement). Additionally, section 8.12 of the DIP Credit Agreement, section 8.12 of the Prepetition First Lien Credit Agreement, and paragraph 28 of the Final DIP Order provide that (a) the DIP Agent or its designee (in each case, acting at the direction of the Required DIP Lenders) has the unqualified right to credit bid up to the full amount of the DIP Obligations in any sale of all or any portion of

the DIP Collateral, and (b) the Prepetition First Lien Agent or its designee (in each case, acting at the direction of Prepetition First Lien Lenders constituting "Required Lenders" under, and as defined in, the Prepetition First Lien Credit Agreement) has the unqualified right to credit bid up to the full amount of the Prepetition First Lien Secured Obligations in any sale of all or any portion of the Prepetition First Lien Collateral.

FF.    At the request of the Buyer and the applicable Debtors, on April 15, 2025, the DIP Agent, acting at the direction of the Required DIP Lenders, the Prepetition First Lien Agent, acting at the direction of the Required Lenders, the DIP Lenders (constituting Required Supermajority Lenders under the DIP Credit Agreement), and the Prepetition First Lien Lenders (constituting Required Lenders under the Prepetition First Lien Credit Agreement) executed and delivered to the Buyer a consent and waiver agreement (the "Consent and Waiver Agreement"), pursuant to which, among other things, and subject to the terms and conditions therein, (a) the Required Supermajority Lenders consented to the Sale pursuant to section 6.05(k) of the DIP Credit Agreement and paragraph 8(b) of the Final DIP Order and (b) the Required DIP Lenders under the DIP Credit Agreement and the Required Lenders under the Prepetition First Lien Credit Agreement agreed to waive the applicability of section 8.12 of the DIP Credit Agreement, section 8.12 of the Prepetition First Lien Credit Agreement, and paragraph 28 of the Final DIP Order in connection with the Sale; *provided* that (i) the DIP Liens and the Prepetition First Lien Liens attach to the proceeds of the Sale with the same priority as existed prior to the Sale and retain the same validity, force, and effect that existed prior to the Sale and (ii) the proceeds of the Sale shall be distributed in accordance with the DIP Credit Agreement and the Final DIP Order, unless otherwise requested or elected by the Required DIP Lenders.

GG.    The Consent and Waiver Agreement is a material component to the overall consideration provided by the Seller to the Buyer and is appropriate under the circumstances of the Sale.  The Buyer would not have entered into the APA without the Consent and Waiver Agreement, thereby adversely affecting the Debtors, their estates, and their creditors.  The Consent and Waiver Agreement was thus a material inducement to the Buyer agreeing to (a) enter into the APA, (b) purchase the Purchased Assets for the Purchase Price, and (c) consummate the Sale and the Transactions.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

**I.      General Provisions.**

1.      The Motion is granted and approved to the extent indicated herein, and entry into and performance under, and in respect of, the APA, and the consummation of the Sale contemplated thereby, is authorized as set forth in this Sale Order.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference) or by stipulation filed with the Court, and all reservations of rights included in such objections, are hereby denied and overruled on the merits with prejudice; *provided*, however to the extent the Debtors and an applicable non-Debtor contract counterparty to a Disputed Contract or Disputed Lease, after consultation with the Buyer, have agreed to treat the Sale Hearing as a status conference with respect to an Assignment Objection, such Assignment Objection is preserved.  Those parties who did not object or who withdrew their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code to the relief granted herein.

3.      Notice of the Motion and Sale Hearing was adequate, appropriate, fair, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014.

## II.      Approval of the APA.

4.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) perform, consummate, implement, and close the Sale pursuant to and in accordance with the terms and conditions of, and as contemplated in, the APA and this Sale Order and (b) execute and deliver, perform under, consummate, implement, and fully close the APA, including the assumption and assignment to the Buyer of the Purchased Contracts and the Purchased Leases, together with all other additional instruments and documents that may be necessary or desirable to implement the APA and the Sale, without any further corporate action or order of the Court.

5.      Subject only to the restrictions set forth in this Sale Order and the APA, the Debtors and the Buyer are hereby authorized to take any and all actions as may be necessary or desirable to implement the Sale.

6.      This Sale Order and the terms and provisions of the APA shall be binding in all respects upon the Bound Parties.  The APA shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their equity holders, or any trustees, examiners, or receivers. Any trustee appointed in these cases (including a chapter 7 trustee, if applicable) shall be and hereby is authorized to operate the businesses of the Debtors to the fullest extent necessary to permit compliance with the terms of this Sale Order.  This Sale Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Buyer, and the respective successors and assigns of each of the foregoing (including the Buyer's designees, if any).

III.        **Transfer of the Purchased Assets.**

7.        Subject only to the terms of this Sale Order, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets to the Buyer in accordance with the terms of the APA.  Such transfer shall constitute a legal, valid, binding, and effective transfer of all such Purchased Assets and shall vest the Buyer with title to the Purchased Assets.  Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be sold free and clear of all Encumbrances of any kind or nature whatsoever, other than Permitted Encumbrances and Assumed Liabilities.  Any and all valid and perfected Encumbrances shall attach to the net proceeds of the Sale ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms thereof, after application of the net proceeds in accordance with this Sale Order, with the same validity, force, and effect, and in the same order of priority, which such Encumbrances had prior to the Sale, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

8.        The Debtors are hereby authorized to take any and all actions necessary to consummate the APA, including any actions that otherwise would require further approval by shareholders, members, or their board of directors, as the case may be, without the need of obtaining such approvals.

9.        The sale of the Purchased Assets to the Buyer pursuant to the APA and the consummation of the Transactions do not require any consents other than as specifically provided for in the APA, the Restructuring Support Agreement, the Final DIP Order, and the DIP Credit Agreement.  Each and every foreign and domestic federal, provincial, territorial, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions.  A certified copy of this

Sale Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, province, or local authority to act to cancel any of the Encumbrances, and any other encumbrances of record, except for the Permitted Encumbrances and Assumed Liabilities.

10.    If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances on or in all or any portion of the Purchased Assets (other than statements or documents with respect to Permitted Encumbrances or Assumed Liabilities) has not delivered, or refused to deliver, to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary for the purpose of documenting the release of all Encumbrances which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors and the Buyer are hereby authorized, on behalf of the Debtors, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets.  The Debtors and the Buyer are each authorized to file a copy of this Sale Order in any court where the person or entity filed the statements, documents, or agreements evidencing such Encumbrances, which, upon filing, shall be conclusive evidence of the release and termination of all such Encumbrances.

11.    This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, foreign or domestic federal, state, provincial, territorial, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title

in or to any lease, and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions, including the Sale.  The Purchased Assets are sold free and clear of any reclamation rights.

12.    Except for as provided in the APA and this Sale Order, after the Closing Date, the Debtors shall have no further liability with respect to the Purchased Assets.

**IV.    Assumption and Assignment of Purchased Contracts and Purchased Leases.**

13.    The applicable Debtor or Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, in accordance with the terms of the APA and this Sale Order, the Purchased Contracts and the Purchased Leases identified on **Exhibit 1** to this Sale Order (as may be amended or modified from time to time in accordance with the terms of this Sale Order and the APA) free and clear of all Encumbrances (other than the Assumed Liabilities and Permitted Encumbrances) effective as of the Closing Date or such other date after the Closing Date, subject to the terms of the APA and this Sale Order, or as otherwise provided by a separate order of this Bankruptcy Court, and (b) execute and deliver to the Buyer such documents or other instruments as the Buyer deems may be necessary to assign and transfer the Purchased Contracts and the Purchased Leases to the Buyer.

14.    With respect to the Purchased Contracts and the Purchased Leases:  (a) the applicable Debtor or Debtors may assume each of the Purchased Contracts and the Purchased Leases in accordance with section 365 of the Bankruptcy Code; (b) the applicable Debtor or Debtors may assign each of the Purchased Contracts and the Purchased Leases to the Buyer in accordance with sections 363 and 365 of the Bankruptcy Code, this Sale Order, and the APA, and any provisions in any of the Purchased Contracts and the Purchased Leases that prohibit or condition the assignment of such Purchased Contracts and Purchased Leases or allow the party to

such Purchased Contract and Purchased Lease to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Purchased Contract and Purchased Lease, constitute unenforceable anti-assignment provisions which are of no force and effect solely with respect to the transactions contemplated by this Sale Order and the APA; (c) subject to the applicable Debtor's or Debtors' payment of Cure Costs, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the applicable Debtor or Debtors and assignment to the Buyer of each Purchased Contract and Purchased Lease have been satisfied; and (d) the Purchased Contracts and the Purchased Leases (upon satisfaction of the Cure Costs) shall be transferred and assigned to, and following the Closing Date, or such other date after the Closing Date, as applicable, remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any such Purchased Contract or Purchased Lease (including those of the type described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions, or that purports to prohibit, restrict, or condition, such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts and Purchased Leases after such assumption and assignment to the Buyer.

15.    Assignment Objections were to be filed with the Court by no later than (a) April 29, 2025, (b) for any Purchased Contract or Purchased Lease added to **Schedule 1** after April 15, 2025, 14 days after service of the notice to such Purchased Contract or Purchased Lease counterparty, or (c) such other date as may be agreed to by the Debtors after consultation with the Buyer.  If a counterparty to a Purchased Contract or Purchased Lease failed to properly and timely file and serve an Assignment Objection in accordance with the Motion, the counterparty is hereby forever barred from asserting any objection with regard to the assumption or assignment of its

Purchased Contract or Purchased Lease, as applicable, and notwithstanding anything to the contrary in the Purchased Contract or the Purchased Lease or any other document, the Cure Costs set forth in the Cure Schedule shall be the only amount necessary to cure outstanding defaults under the applicable Purchased Contract or Purchased Lease under section 365 of the Bankruptcy Code.  If no Assignment Objection has been filed, or an Assignment Objection has been properly filed but has been resolved by the parties or determined by the Court, this Sale Order shall serve as approval of the assumption and assignment of the applicable Purchased Contract or Purchased Lease to the Buyer without need for a further notice of order.  If an Assignment Objection has been properly filed with respect to a Purchased Contract or Purchased Lease and is not resolved by the parties or determined by the Court prior to the Closing Date, the Seller's assumption and assignment of such Purchased Contract or Purchased Lease shall be subject to the requirements applicable to Disputed Contracts set forth in the APA.  To the extent any properly-filed Assignment Objection has not been resolved prior to or at the Sale Hearing (consensually, by court order, withdrawal or otherwise), the Debtors and the applicable non-Debtor contract counterparty (after consultation with the Buyer) may agree to treat the Sale Hearing as only a status conference with respect to such Assignment Objection.

16.    The pendency of a dispute relating to a particular Purchased Contract and Purchased Lease shall not delay the assumption and assignment of any other Purchased Contract and Purchased Lease or the Closing.  Upon the effective date of the assignment of any Purchased Contract and Purchased Lease, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of each Purchased Contract and Purchased Lease.  To the extent provided in the APA, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

17.     Each Purchased Contract and Purchased Lease counterparty is deemed to have consented to the assumption and assignment of such Purchased Contract and Purchased Lease, subject to resolution of any cure disputes (if any) subsequent to the Closing Date, as applicable, and the Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to each such Purchased Contract and Purchased Lease pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

18.     Upon the applicable Debtor's or Debtors' assignment of the Purchased Contracts and Purchased Leases to the Buyer under the provisions of this Sale Order, any additional orders of this Court, and the applicable Debtor's or Debtors' payment of any Cure Costs pursuant to the terms hereof or the APA and the applicable Debtor's or Debtors' resolution of any default arising from a failure to perform nonmonetary obligations to the extent required under the Bankruptcy Code, no default shall exist under any Purchased Contract and Purchased Lease, and no counterparty to any Purchased Contract and Purchased Lease shall be permitted (a) to declare a default under such Purchased Contract and Purchased Lease or (b) to otherwise take action against the Debtors, the Reorganized Debtors, or the Buyer as a result of any Debtors' financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Purchased Contract and/or Purchased Lease, as applicable.  Each non-Debtor party to a Purchased Contract and Purchased Lease hereby is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Buyer, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, or, against the Buyer, any counterclaim, defense, setoff, or any other Claim asserted or assertable against the Debtors and (ii) imposing or charging against the Buyer or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the

applicable Debtor's or Debtors' assumption and assignment of the Purchased Contracts and the Purchased Leases to the Buyer. Any provision in any Purchased Contract or Purchased Lease that purports to declare a breach, default, or termination as a result of a change of control of the Purchased Assets is hereby deemed unenforceable under section 365(f) of the Bankruptcy Code solely with respect to the Transactions contemplated by this Sale Order and the APA. To the extent that any counterparty to a Purchased Contract and/or Purchased Lease was notified of the Cure Costs (or the absence thereof) and failed to object to such Cure Costs (or the absence thereof) with respect to a Purchased Contract and/or Purchased Lease, as applicable, such counterparty shall be deemed to have consented to such Cure Costs (or the absence thereof) and is deemed to have waived any right to assert or collect or enforce any Cure Costs that may arise or have arisen prior to or as of the Closing.

19.     On the Closing Date, or such other date after the Closing Date (and upon satisfaction of the Cure Costs) as provided in this Sale Order and the APA, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Purchased Contract and Purchased Lease and the applicable Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Purchased Contract and the Purchased Lease. There shall be no rent or other payment accelerations, assignment fees, increases, or any similar fees, costs, or expenses charged to the Debtors or to the Buyer as a result of the assumption and assignment of the Purchased Contracts and the Purchased Leases.

20.     Notwithstanding anything to the contrary in this Sale Order or the APA, after the Closing Date, the Buyer shall be responsible for: (i) paying year-end adjustment and reconciliation amounts that become due or accrue after the Closing Date (and shall be entitled to receive any credits therefor), (ii) paying all amounts that become due after the Closing Date under the

Purchased Leases, including, but not limited to, royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, promotion funds, percentage rent or any other remaining obligations that may have accrued prior to the Closing Date that are unbilled, not yet due or subject to further adjustment as of the Closing Date (if any) pursuant to, and in accordance with, the terms of the Purchased Leases, and (iii) complying with all terms of the Purchased Leases, including, but not limited to, maintenance, repair obligations, and indemnification obligations pursuant to, and if applicable under, the Purchased Leases, and (iv) paying any deductibles or self-insured retention amount (except to the extent the applicable Debtor has already satisfied any such insurance deductibles or self-insured retention amount), to the extent the Buyer relies on the Debtors' existing insurance coverage to satisfy indemnification obligations arising under, and in accordance with, the Purchased Leases related to indemnification for pre-Closing Date events or occurrences.

21.     All counterparties to the Purchased Contracts and Purchased Leases shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, *provided*, that to the extent that the Buyer and any counterparty to a Purchased Contract and/or Purchased Lease enter into a separate written agreement (which may be by email) with respect to the foregoing, such agreement shall govern with respect to the rights and obligations of the Buyer and such counterparty.

22.     For the avoidance of doubt, any amendments to the Purchased Leases entered into by the Debtors prior to the Closing Date that provide that such amendment shall be effective upon the assumption of such amendment pursuant to a chapter 11 plan shall be deemed effective as of the assumption of such Purchased Lease pursuant to the terms of this Sale Order and the APA.

23.     The assumption and assignment of each of the Purchased Contracts and Purchased Leases is made in good faith under sections 363(b) and 363(m) of the Bankruptcy Code and is entitled to the protections thereof.

**V.        Buyer Expense Reimbursement.**

24.     The Buyer Expense Reimbursement is appropriate under the circumstances and is hereby approved.  The Debtors, in an exercise of their reasonable business judgment and their fiduciary duties, are hereby authorized to pay the Buyer Expense Reimbursement in accordance with the APA without further order of this Court solely to the extent required pursuant to section 8.1 of the APA.

**VI.       Use of Proceeds.**

25.     Notwithstanding anything to the contrary set forth herein, in accordance with the Final DIP Order, the DIP Loan Documents, the Prepetition ABL Loan Documents, the Prepetition ABL Intercreditor Agreement, and the Prepetition First Lien Loan Documents, on the Closing Date, the Debtors shall transfer, or cause to be transferred, the proceeds generated from the Sale of (a) the Purchased Assets constituting ABL Priority Collateral or ABL Priority DIP Collateral to the Prepetition ABL Agent for permanent application against the Prepetition ABL Secured Obligations (including the ABL Adequate Protection Claims, if any) and (b) all other Purchased Assets to the DIP Agent for permanent application against the DIP Obligations unless otherwise requested or elected by the Required DIP Lenders (in the case of clause (b)).  For the avoidance of doubt, all rights of the Prepetition ABL Agent and the DIP Agent with respect to the allocation of proceeds of the Sale in accordance with the foregoing are expressly preserved.

**VII.      Prohibition of Actions Against the Buyer**.

26.     All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed to or by the

Buyer pursuant to the APA are hereby directed to surrender possession of those portions of the Assets to the Buyer on the Closing Date.  Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the applicable Debtor or Debtors to sell and/or transfer the Purchased Assets to the Buyer in accordance with the terms of the APA and this Sale Order.

27.    To the maximum extent permitted by law, in accordance with the APA, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "<u>Licenses</u>") of the applicable Debtor or Debtors with respect to the Purchased Assets and the Sale.  To the extent the Buyer cannot operate under any Licenses in accordance with the previous sentence, such Licenses shall be in effect while the Buyer, with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Buyer.

28.    Notwithstanding anything in this Sale Order, subject to section 525(a) of the Bankruptcy Code, no governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may revoke, suspend any right, license, trademark, or other permission relating to the use of the Purchased Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these chapter 11 cases, the conduct of the Sale, or the consummation of the Transactions.

**VIII.    Other Provisions.**

29.    The Debtors and the DIP Agent are authorized to prepare and file, execute, and deliver any applicable UCC termination statement or other release documentation pursuant to this Sale Order.

30.     This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating the contrary, the terms and provisions of this Sale Order shall be immediately effective and enforceable upon its entry, any applicable stay of the effectiveness and enforceability of this Sale Order is hereby waived, and the Debtors and the Buyer are authorized to close the Sale immediately upon entry of this Sale Order.

31.     The failure to specifically include any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized in its entirety; *provided* that this Sale Order shall govern if there is any inconsistency between such agreements, as applicable, and this Sale Order.

32.     The APA and any related documents or other instruments may, with the consent of the Required DIP Lenders under the DIP Credit Agreement and the Required Lenders under the Prepetition First Lien Credit Agreement (such consents not to be unreasonably withheld), be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; *provided,* however that the Debtors shall file a notice with the Court of any modifications, amendments, or supplements that have a material adverse effect on the Debtors' estates or their creditors and affected parties will have a reasonable opportunity to object.

33.     During the pendency of these chapter 11 cases, the Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto and any waivers and consents thereunder, and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the applicable Debtor or Debtors to the Buyer, and to adjudicate, if necessary, any and

all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to:  (a) compel delivery of the Purchased Assets to the Buyer; (b) interpret, implement, and enforce the provisions of this Sale Order; and (c) protect the Buyer against any Encumbrances (other than the Assumed Liabilities or Permitted Encumbrances) with respect to the applicable Debtor or Debtors or the Purchased Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale.

34.     Notwithstanding the relief granted in this Sale Order and any actions taken pursuant to such relief, nothing in this Sale Order shall be deemed:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Sale Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) a rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity,

or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) to otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code to reject any executory contract or unexpired lease.

35.    **Texas Taxing Authorities**.  For the avoidance of doubt, and notwithstanding anything to the contrary in this Sale Order or the APA in connection with the sale of the Purchased Assets, to the extent any of the Debtors' personal property in Texas subject to any post-petition taxes held by any of the Texas Taxing Authorities[4] is to be sold, the Buyer (including its successors or assigns if applicable) assumes the 2025 tax liability (the "2025 Post-Petition Taxes") and shall

---

[4]    The Texas Taxing Authorities include all entities represented by Perdue Brandon Fielder Collins & Mott LLP, Linebarger Goggan Blair & Sampson LLP and McCreary Veselka Bragg & Allen including but not limited to: Anderson County, Bell County Tax Appraisal District, Bowie Central Appraisal District, Brazos County, Burnet Central Appraisal District, Cherokee County, Cherokee County Appraisal District, Coryell County, Denton County (including City of Denton, Denton ISD, City of Lewisville), Guadalupe County, Hays County, Henderson County, Jasper County Tax Units (Jasper ISD), City of Waco et al, Midland Central Appraisal District, Pine Tree ISD, Taylor County Central Appraisal District, Terry County Appraisal District, Williamson County, Randall County Tax Office, Potter County Tax Office, Kerrville Independent School District, Copperas Cove Independent School District, Lubbock Central Appraisal District, Midland County, Brownsville Independent School District, Brazoria County, et al, Brazoria County, MUD #34, Clear Creek Independent School District, Spring Independent School District, Harris County Water Control District #110, City of Houston, Alief Independent School District, Spring Branch Independent School District, Pasadena Independent School District, Klein Independent School District, Baybrook Municipal Utility District 1, Humble Independent School District, Harris County Municipal Utility District 186, Harris County Water Control District #145, West Harris County Municipal Utility District 6, Harris County Municipal Utility District 70, City of Southside Place, Harris County Municipal Utility District 367, Nottingham County Municipal Utility District, Harris County Municipal Utility District 168, Tomball Independent School District, City of Tomball, City of Montgomery, Magnolia Independent School District, Montgomery County Municipal Utility District 95, Carrollton-Farmers Branch Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Wichita County Tax Office, Nacogdoches County CAD, et al., Titus County Appraisal District, et al., Tyler Independent School District, Fort Bend Independent School District, Cinco Southwest Municipal Utility District #95, Fort Bend County Levee Improvement District #136, Fort Bend County Municipal Utility District #3, City of Allen, Allen Independent School District, Bexar County, City of Carrollton, Cypress-Fairbanks Independent School District, Dallas County, Deer Park Independent School District, City of El Paso, Ellis County, Fort Bend County, City of Frisco, Grayson County, Gregg County, Harris County Emergency Service District No. 08, Harris County Emergency Service District No. 09, Harris County Emergency Service District No. 11, Harris County Emergency Service District No. 16, Harris County Emergency Service District No. 48, Hays CISD, Hidalgo County, Hopkins County, City of Houston, Houston Community College System, Houston Independent School District, Irving Independent School District, Jefferson County, Katy Independent School District, Kaufman County, Kerr County, Lewisville Independent School District, Lone Star College System, City of McAllen, McLennan County, Montgomery County, Navarro County, Northwest Independent School District, Nueces County, Parker CAD, City of Pasadena, City of Prosper, Prosper Independent School District, Rockwall CAD, San Patricio County, Smith County, City of Sulphur Springs, Sulphur Springs Independent School District, Tarrant County, Tom Green CAD, Wise County and City of Wylie.

be responsible for paying the 2025 Post-Petition Taxes in full, in the ordinary course of business, when due.  If not timely paid, the Texas Taxing Authorities may proceed with nonbankruptcy collections against the Buyer without leave or approval of the Court.  In the event of any proration of 2025 Post-Petition Taxes attributable to periods of ownership between the Debtors and the Buyer, any dispute regarding such proration shall not affect either the Debtors' or the Buyer's responsibility (as provided for in this Sale Order) to pay the 2025 Post-Petition Taxes.  The Texas Taxing Authorities shall retain their respective liens against the Purchased Assets, as applicable, until the 2025 Post-Petition Taxes are paid in full, including any applicable penalties or interest.

36.    The Debtors, including their respective officers, employees, and agents, and the Buyer are authorized to take all actions necessary to effectuate the relief granted pursuant to this Sale Order in accordance with the Motion.

37.    The headings in this Sale Order are for purposes of reference and shall not limit or otherwise affect the meaning of the Sale Order.

**Dated: May 7th, 2025**
**Wilmington, Delaware**

33

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**