## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*, | Case No. 24-12480 (LSS) |
| Debtors.[1] | (Jointly Administered) |

## OBJECTION AND RESERVATION OF RIGHTS OF BRIAN KAHN AND LAUREN KAHN JT TEN TO CONFIRMATION OF EIGHTH AMENDED JOINT CHAPTER 11 PLAN OF FRANCHISE GROUP, INC. AND ITS DEBTOR AFFILIATES

Brian Kahn and Lauren Kahn JT TEN[2] (the "TopCo Objectors"), by and through their undersigned counsel, hereby file this objection and reservation of rights (the "Objection") to the *Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1312] (the "Eighth Amended Plan"),[3] and respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] The TopCo Objectors hold their interests as joint tenants by the entirety.

[3] Capitalized terms used but not defined in this Objection shall have the meanings ascribed to them in the Plan.

## PRELIMINARY STATEMENT

1.      The TopCo Objectors are the largest equity holders of Freedom VCM Holdings, LLC ("TopCo"), one of the Debtors in these jointly administered cases.

2.      Brian Kahn also filed a proof of claim (Claim No. 1823) against TopCo[4] for the unsecured amount of $322,377.53, making him both an equity holder and unsecured creditor of TopCo.

3.      TopCo is unlike the other Debtors in these cases because it has considerable assets (approximately $13.25 million in cash) and minimal (if any) liabilities. TopCo thus presents the exceedingly rare situation in bankruptcy where equity holders are entitled to receive distributions on account of their interests. But that is not what the Eighth Amended Plan that the Debtors filed and now seek to confirm provides.

4.      In the Eighth Amended Plan—which expressly does *not* provide for substantive consolidation of the Debtors' estates—the Debtors propose taking all of TopCo's cash to fund the Litigation Trust, which will pursue claims and causes of action and seek to recover value to fund distributions to creditors of Debtors other than TopCo. What's more, the Eighth Amended Plan provides no recovery to any holders of claims or interests in any of the classes that are potentially applicable to TopCo and specifies that all such classes are not entitled to vote and are deemed to reject the Eighth Amended Plan.

5.      The treatment of TopCo equity holders outlined in the Eighth Amended Plan came as a shock. Each of the *eight* prior iterations of the Debtors' plan properly accounted for the fact that TopCo has assets in excess of its liabilities by treating TopCo equity holders as impaired,

---

[4] Brian Kahn filed identical proofs of claim against all the Debtors for indemnification of legal fees and expenses and other obligations owed by the Debtors.

allowing them to vote, and providing that they would receive distributions equal to their *pro rata* share of TopCo's cash after payment of its agreed upon portion of the administrative expenses for these cases. Every prior iteration of the Debtors' plan also provided that unsecured creditors (if any) of TopCo were impaired, entitled to vote, and subject to the same essential treatment.

6.    As explained in this Objection, the Debtors' eleventh-hour changes have rendered the Eighth Amended Plan unconfirmable in two important respects.

7.    *First*, the Debtors cannot satisfy the best interests test under section 1129(a)(7) with respect to TopCo because holders of TopCo claims and equity interests would receive distributions in a hypothetical chapter 7 liquidation, whereas under the Eighth Amended Plan they are not entitled to receive any distributions, despite that TopCo has substantial cash and practically no liabilities.

8.    *Second*, because the Debtors structured the Eighth Amended Plan to prevent any holders of TopCo claims or interests from voting, there is no—and cannot be any—impaired accepting TopCo class, as required by section 1129(a)(10).

9.    The Debtors' inability to meet their burden to demonstrate compliance with the requirements of section 1129(a)(7) and (a)(10) requires the Court to deny confirmation of the Eighth Amended Plan.

## **BACKGROUND**

10.    On November 3, 2024 (the "Petition Date"), Franchise Group, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

**A.  TopCo's Assets and Liabilities**

11.     On December 24, 2024, the Debtors filed the *Schedule of Assets and Liabilities* (the "TopCo Schedules") and *Statement of Financial Affairs* (the "TopCo SOFA") for Topco [Docket No. 536].

12.     The TopCo SOFA accurately reflects that the TopCo Objectors, as joint tenants by the entirety, hold 25.14% of TopCo's equity interests—more than any other TopCo equity interest holder.

13.     Schedule A/B of the TopCo Schedules reflects that, as of the Petition Date, TopCo had $13,247,472.08 in a bank account with JPMorgan Chase, among other assets.

14.     Schedules D and E/F of the TopCo Schedules reflect that, as of the Petition Date, TopCo did not have any prepetition secured claims, priority unsecured claims, or nonpriority unsecured claims.

15.     The Summary of Assets and Liabilities included with the TopCo Schedules confirms that, as of the Petition Date, TopCo had $28,772,673.93 in assets and $0.00 in liabilities.

**B.  Prior Iterations of the Debtors' Plan**

16.     Prior to the Eighth Amended Plan, the treatment of holders of TopCo equity interests in each iteration of the plan was essentially identical. Holders of TopCo equity interests were impaired, entitled to vote on the plan, and would receive their share of TopCo's cash after payment of Topco's allocable share of the Debtors' restructuring expenses[5] and distributions to any holders of allowed claims against TopCo.[6]

---

[5] Each prior version of the plan contained identical language describing the allocation: "Payment of any fees or expenses (including any director, officer, and manager fees, to the extent applicable) allocable to Freedom VCM Holdings, LLC with respect to the restructuring (including the Restructuring Transactions) or administration of the Chapter 11 Cases shall be conditioned upon an allocation among Freedom VCM Holdings, LLC and the other Debtors to be agreed upon in good faith between the Debtors and the Required Consenting First Lien Lenders."

[6] As set forth above, there were no anticipated prepetition claims against TopCo.

17.    The specific treatment of holders of TopCo equity interests set forth in all eight prior versions of the Debtors' plan is as follows:

| Plan Iteration | Status | Voting Rights | Treatment |
|---|---|---|---|
| Original Filed 11/11/2024 [Docket No. 150] | Impaired | Entitled to Vote | § 5.14(a): "its *pro rata* share of Cash (if any) held by TopCo following all distributions required under this Plan and the allocation described in Section 3.3(c) hereof" |
| Amended Filed 1/3/2025 [Docket No. 654] | Impaired | Entitled to Vote | § 5.15(a): "its *pro rata* share of Cash (if any) held by TopCo following the allocation described in Section 3.3(c) hereof" |
| Second Amended Filed 2/3/2025 [Docket No. 894] | Impaired | Entitled to Vote | § 5.15(a): "its *pro rata* share of Cash (if any) held by TopCo following the allocation described in Section 3.3(c) hereof" |
| Third Amended 2/5/2025 [Docket No. 925] | Impaired | Entitled to Vote | § 5.17(a): "its *pro rata* share of Cash (if any) held by TopCo following all distributions required under this Plan and the allocation described in Section 3.3(c) hereof" |
| Fourth Amended Filed 2/12/2025 [Docket No. 957] | Impaired | Entitled to Vote | § 5.17(a): "its *pro rata* share of Cash (if any) held by TopCo after paying all Allowed Claims against TopCo and following the allocation described in Section 3.3(c) hereof" |
| Fifth Amended Filed 2/18/2025 [Docket No. 996] | Impaired | Entitled to Vote | § 5.13(a): "its *pro rata* share of Cash (if any) held by TopCo after paying all Allowed Claims against TopCo and following the allocation described in Section 3.6 hereof" |
| Sixth Amended Filed 2/20/2025 [Docket No. 1015] | Impaired | Entitled to Vote | § 5.13(a): "its *pro rata* share of Cash (if any) held by TopCo after paying all Allowed Claims against TopCo and following the allocation described in Section 3.6 hereof" |
| Seventh Amended Filed 04/03/2025 [Docket No. 1015] | Impaired | Entitled to Vote | § 5.13(a): "its *pro rata* share of Cash (if any) held by TopCo after paying all Allowed Claims against TopCo and following the allocation described in Section 3.6 hereof" |

18.    Consistent with the TopCo Schedules, all versions of the Debtors' disclosure statement that accompanied the prior iterations of their proposed plan that classified TopCo General Unsecured Claims projected there being $0 of such claims [Docket Nos. 895, 926, 958, 995, 1014].

### C. The Eighth Amended Plan

19.       On April 25, 2025, the Debtors filed the Eighth Amended Plan.

20.       Section 5.13 of the Eighth Amended Plan drastically changed the treatment of holders of TopCo equity interests by stripping them of their ability to vote and providing that "all Existing TopCo Equity Interests shall be canceled, released, and extinguished, and each Holder of an Allowed Existing TopCo Equity Interest shall not receive or retain any property or distributions under this Plan on account of such Allowed Existing TopCo Equity Interests."[7]

21.       Additionally, under section 1.231 of the Eighth Amended Plan, TopCo's approximately $13.25 million in unencumbered cash—against which TopCo has minimal unsecured liabilities to satisfy—became the TopCo Cash Allocation, which, as described in the Disclosure Statement Supplement for the Eighth Amended Plan [Docket No. 1322-1], "shall be allocated to the Freedom HoldCo Debtors for contribution to the funding of the Litigation Trust."

22.       Put differently, under the Eighth Amended Plan, the cash at TopCo that previously was available for distribution to the holders of TopCo claims and equity interests was redirected to the Litigation Trust for the benefit of the holders of Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, Allowed Prepetition HoldCo Loan Claims, Allowed OpCo General Unsecured Claims, the Allowed Freedom HoldCo General Unsecured Claims, which are the only parties entitled to receive Litigation Trust Units Allocations under the terms of the Eighth Amended Plan. *See* Eighth Amended Plan §§ 1.109, 1.138, 1.170, 1.174. The holders of TopCo claims and equity interests therefore stand to receive nothing from the Liquidation Trust in exchange for the TopCo Cash Allocation.

---

[7] Section 5.10 of the Eighth Amended Plan provided essentially the same treatment for TopCo General Unsecured Claims.

23. Notwithstanding that it provides for the use of TopCo's cash to fund distributions to the other Debtors' creditors, the Eighth Amended Plan is explicit in several places that it does not contemplate or provide for substantive consolidation of any of the Debtors' estates.

24. *First*, the introductory section of the Eighth Amended Plan explains that it is being jointly proposed solely for administrative convenience and should be viewed as a separate plan for each of the Debtors:

> Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classification of Claims and Interests set forth in Article IV of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable and set forth herein. The Plan does not contemplate substantive consolidation of any of the Debtors.

25. *Second*, section 4.1 of the Eighth Amended Plan provides that "[t]his Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors."

26. *Third*, section 6.2 of the Plan provides that "[a]ll votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code."

27. *Fourth*, section 7.1 of the Eighth Amended Plan provides:

> The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof. Nothing in this Plan shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor.

28. On April 26, 2025, the Court entered the *Order (I) Approving the Form, Content, and Manner of Notice of the Disclosure Statement Supplement, (II) Approving Certain Deadlines and Procedures in Connection with Confirmation, and (III) Granting Related Relief* [Docket No.

1322], authorizing the Debtor to solicit votes on the Eighth Amended Plan and seek confirmation at a hearing scheduled for May 20, 2025.

## OBJECTION

29.     "The plan proponent bears the burden of establishing the plan's compliance with each of the requirements set forth in § 1129(a), while the objecting parties bear the burden of producing evidence to support their objections." *In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003).

30.     The Court cannot confirm the Eighth Amended Plan because the Debtors cannot meet their burden to prove that, with respect to TopCo, the Eighth Amended Plan satisfies the requirements of section 1129(a)(7) and (a)(10) of the Bankruptcy Code.

### I.     The Eighth Amended Plan Fails the Best Interests Test as Applied to TopCo

31.     Where any class of claims or interests is impaired under the plan, section 1129(a)(7)(A) of the Bankruptcy Code requires that "each holder of a claim or interest of such class (i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."

32.     "Section 1129(a)(7) guarantees that creditors and equity holders receiving less than a full recovery under the terms of a chapter 11 plan recover at least what they would have in a chapter 7 liquidation." *In re Nortel Networks, Inc.*, 522 B.R. 491, 506 (Bankr. D. Del. 2014); *see In re Boy Scouts of Am. & Delaware BSA, LLC*, 650 B.R. 87, 158 (D. Del. 2023) ("Section 1129(a)(7), known as the 'best interest of creditors test,' is a protection for individual creditors whose claims are impaired.").

33.     The Debtors, as the proponents of the Eighth Amended Plan, bear the burden of proving by a preponderance of the evidence that the Plan satisfies the requirements of section 1129(a)(7). *See In re W.R. Grace & Co.*, 475 B.R. 34, 142 (D. Del. 2012) ("Under the best interest of the creditors test, the plan proponent bears the burden of proof to establish by a preponderance of the evidence that its plan is within the creditors' best interests.").'

34.     Here, because the holders of TopCo claims and equity interests stand to receive nothing, for the Eighth Amended Plan to pass muster under section 1129(a)(7), TopCo would have to have no liquidation value. This is squarely at odds with the reality of the case—*i.e.*, TopCo having few, if any, creditors—and every earlier version of the Debtors' proposed plan.

35.     The most recent liquidation analysis proffered by the Debtors is the one included with the *Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 958], which the Debtors filed on February 12, 2025.

36.     That liquidation analysis purports to show that TopCo unsecured creditors and equity holders would receiving nothing in a hypothetical chapter 7 liquidation because all of TopCo's assets would be used to pay $788.5 million in DIP Claims.[8] However, the Debtors' liquidation analysis is predicated on plainly false assumptions that vitiate its reliability for purposes of demonstrating that the Eighth Amended Plan satisfies section 1129(a)(7) with respect to TopCo.

37.     Specifically, the Debtors' liquidation analysis assumes that TopCo would be primarily and jointly and severally liable for the full amount of DIP Claims:

> The Liquidation Analysis assumes that in a Chapter 7 liquidation, DIP Claims would remain outstanding and would have to be satisfied in Cash. The Liquidation Analysis also assumes that in a Chapter 7 liquidation, each Borrower and Guarantor (as defined in the Final DIP Order) would be jointly and severally liable with respect to the DIP Claims. The Liquidation Analysis also assumes that in a Chapter

---

[8] To the extent that the Debtors contend that there are other claims against TopCo, they have not articulated what those claims are in any version of the plan, disclosure statement, or supplements that the Debtors have filed in these cases to date.

7 liquidation, the total available net distributable proceeds would not be sufficient to provide Holders of DIP Claims with a par recovery. The Liquidation Analysis does not adjust projected recoveries on DIP Claims in a Chapter 7 liquidation with respect to any Debtor on account of marshaling provisions provided in the Final DIP Order.

38.    The Debtors' assumptions cannot be squared with the terms of the Final DIP Order [Docket No. 414].

39.    *First*, the Final DIP Order caps TopCo's liability as a guarantor for DIP Claims to the amount of New Money DIP Loans, which can at most total approximately $250 million—far less than the $788.5 million exposure that the Debtors assumed for TopCo in the liquidation analysis.

40.    *Second*, section 33 of the Final DIP Order provides that TopCo's assets are third in line for satisfaction of the limited portion of DIP Claims for which it is responsible—*i.e.*, after exhaustion of (1) "DIP Collateral comprised of Unencumbered Property of all DIP Loan Parties (other than Debtor Freedom VCM Holdings, LLC)" and (2) "all other DIP Collateral of all DIP Loan Parties (other than Debtor Freedom VCM Holdings, LLC)."

41.    *Third*, section 32(b) of the Final DIP Order provides that "the terms and provisions of this Final Order and the DIP Loan Documents (including, without limitation, all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the DIP Secured Parties and the Prepetition Secured Parties under this Final Order and the DIP Loan Documents), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties-in-interest, and shall be governed by the original provisions of this Final Order and maintain their priorities as set forth in this Final Order, and shall not be modified, impaired, or discharged by, entry of any order that may be entered . . . converting any or all of the Chapter 11 Cases to a case (or cases) under chapter 7 of the Bankruptcy Code."

42.     Taken together, these provisions of the Final DIP Order make clear that, contrary to the faulty assumptions in the Debtors' liquidation analysis, TopCo would not be subject to the full amount of DIP Claims because its liability is limited to the extent of New Money DIP Claims and even those claims would first have to be satisfied by other Debtors' collateral before TopCo is required to pay dollar one. Moreover, the survival provision of the Final DIP Order ensures that TopCo's liability for DIP Claims would remain limited to this extent even if these cases were converted to liquidation cases under chapter 7 of the Bankruptcy Code.

43.     In sum, the Debtors cannot meet their burden to establish that the Eighth Amended Plan satisfies the best interests test under section 1129(a)(7) because TopCo's liquidation analysis relies on deeply flawed and unsupported assumptions that undermine its credibility and accuracy. Accordingly, the Court should deny confirmation of the Eighth Amended Plan.

## II.     The Eighth Amended Plan Does Not Have an Impaired Accepting Class as Applied to TopCo

44.     Section 1129(a)(10) of the Bankruptcy Code provides the following requirement for plan confirmation: "If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."

45.     In multi-debtor cases involving a joint plan that does not provide for substantive consolidation, such as the Debtors' jointly administered cases and the Eighth Amended Plan here, the requirements of section 1129(a)(10) must be satisfied on a "per debtor" basis and not on a "per plan" basis. *See In re Trib. Co.*, 464 B.R. 126, 180–84 (Bankr. D. Del. 2011) ("I find nothing ambiguous in the language of § 1129(a)(10), which, absent substantive consolidation or consent, must be satisfied by each debtor in a joint plan."); *see also In re Consol. Land Holdings, LLC*, No. 6:19-BK-04760-KSJ, 2021 WL 3701799, at *6 (Bankr. M.D. Fla. Aug. 20, 2021) ("[A]bsent

substantive consolidation, the subsections of § 1129(a) must be satisfied by *each* Debtor."); *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 302–03 (Bankr. D. Del. 2011) ("Although the Debtors collectively have 103 Inns and related assets and many creditors, Mezz II has only one creditor and one asset. Mezz II cannot confirm a plan over Colony's objection because it could get no accepting class. Therefore, in the absence of substantive consolidation, Mezz II does not have any chance of confirming a plan.").

46.    As noted above, the Eighth Amended Plan does not provide for substantive consolidation of the Debtors' estates. To the contrary, the Debtors are explicit in the Eighth Amended Plan that it is "proposed jointly for administrative purposes," "constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code," "does not contemplate substantive consolidation of any of the Debtors," and that "[a]ll votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code." Accordingly, the Debtors are required to demonstrate that the Eighth Amended Plan satisfies the requirements of section 1129(a)(10) as to each of the Debtors, including TopCo.[9]

47.    As currently structured and applied to TopCo, the Eighth Amended Plan could never satisfy the impaired accepting class requirement of section 1129(a)(10) because all of the classes of claims and interests potentially applicable to TopCo—*i.e.*, Class 8-C (TopCo General

---

[9] The requirements of section 1129(a)(10) apply notwithstanding the Debtors' intentions, as set forth in section 6.3 of the Eighth Amended Plan, to seek confirmation through a cramdown under section 1129(b). *See In re All Land Invs., LLC*, 468 B.R. 676, 689 (Bankr. D. Del. 2012) ("Before a debtor can use the "cram down" provisions to achieve plan confirmation over the objection of impaired classes, it must satisfy § 1129(a)(10) by garnering a vote in favor of the plan by at least one class of impaired claims.").

Unsecured Claims),[10] Class 9 (Intercompany Claims),[11] and Class 11 (Existing TopCo Equity Interests)—are not entitled to vote on the Plan.

48.     Section 4.1 of the Eighth Amended Plan makes clear that classes of claims and interests apply to each Debtor only to the extent that holders of qualifying claims or interests actually exist to populate those classes: "A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes." Under the terms of the Eighth Amended Plan, none of the classes of claims or interests that are impaired but entitled to vote apply to TopCo because such claims or interests do not exist against TopCo.[12]

49.     In sum, the Debtors cannot meet their burden to establish that the Eighth Amended Plan satisfies 1129(a)(10) because no impaired class of claims or interests applicable to TopCo has voted to accept. Confirmation of the Eighth Amended Plan should therefore be denied.

---

[10] As noted above, the Debtor have consistently projected in their disclosure statements that there are no TopCo General Unsecured Claims.

[11] As noted above, the TopCo Schedules do not reflect any liabilities of TopCo, including any potential Intercompany Claims that would make Class 9 applicable to TopCo. Even if such claims did exist, the treatment provided for Class 9 under section 5.11(a) of the Eighth Amended Plan is that "any and all Intercompany Claims shall, at the option of the Debtors and the Required Consenting First Lien Lenders, either be (A) Reinstated or (B) set off, settled, discharged, contributed, canceled, released, without any distribution on account of such Intercompany Claims, or otherwise addressed." Section 5.11(b) clear that Class 9 will be either unimpaired and deemed to accept to Plan or wholly impaired and deemed to reject the Plan: "Holders of Allowed Intercompany Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan, and will not be solicited with respect to such Allowed Intercompany Claims." Either way, Class 9 cannot be an impaired accepting class, as required by section 1129(a)(10).

[12] The impaired classes of claims or interests entitled to vote on the Eighth Amended Plan are Class 3 (Prepetition ABL Loan Claims), Class 4 (Prepetition First Lien Loan Claims), Class 5 (Prepetition Second Lien Loan Claims), Class 6 (General Unsecured Claims against the OpCo Debtors), Class 7 (Prepetition HoldCo Loan Claims), Class 8-A (Freedom HoldCo General Unsecured Claims), and Class 8-B (HoldCo Receivables General Unsecured Claims).

## RESERVATION OF RIGHTS

50.    The TopCo Objectors expressly reserve their rights to amend, modify, or supplement this Objection in any way, including with respect to any further amendments, modifications, or supplements to the Eighth Amended Plan that any party may propose. This Objection is not, nor shall it be deemed to be, (a) a waiver or release of the TopCo Objectors' rights against any person, entity, or property; (b) an election of remedies; or (c) a waiver or release of any claims or interests that are currently owing and not identified in this Objection and/or claims or interests that may become due and owing to the TopCo Objectors subsequent to the filing of this Objection.

**WHEREFORE**, the TopCo Objectors respectfully request that the Court enter an order: (i) sustaining their objections to the Eighth Amended Plan; (ii) denying confirmation of the Eighth Amended Plan; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: May 7, 2025

**BODELL BOVE, LLC**

*/s/ Bruce W. McCullough*
Bruce W. McCullough (Bar No. 3112)
1225 N. King Street, Suite 1000
Wilmington, Delaware 19801
Tel: (302) 655-6749
bmccullough@bodellbove.com

-and-

**KUDMAN TRACHTEN ALOE POSNER LLP**
Paul H. Aloe (*pro hac vice* pending)
David N. Saponara (*pro hac vice* pending)
488 Madison Avenue, 23rd Floor
New York, New York 10022
Tel: (212) 868-1010
paloe@kudmanlaw.com
dsaponara@kudmanlaw.com

*Counsel for Brian Kahn and Lauren Kahn JT TEN*

## CERTIFICATE OF SERVICE

I, Bruce W. McCullough, hereby certify that on May 7, 2025, a true and correct copy of the foregoing was served upon those parties registered to receive electronic notices via the Court's CM/ECF electronic noticing system and to the following persons via email:

(i)     co-counsel for the Debtors, (A) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com), Nicole L. Greenblatt, P.C. (nicole.greenblatt@kirkland.com), Derek I. Hunter (derek.hunter@kirkland.com), Brian J. Nakhaimousa (brian.nakhaimousa@kirkland.com), and Maddison Levine (maddison.levine@kirkland.com); and (B) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Edmon L. Morton, Esq. (emorton@ycst.com) and Matthew B. Lunn, Esq. (mlunn@ycst.com);

(ii)    counsel to the Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899, Attn: Bradford J. Sandler, Esq. (bsandler@pszjlaw.com) and Colin R. Robinson, Esq. (crobinson@pszjlaw.com); and 780 Third Avenue, 34th Floor, New York, NY 10017, Attn: Robert J. Feinstein, Esq. (rfeinstein@pszjlaw.com), Alan J. Kornfeld, Esq. (akornfeld@pszjlaw.com), and Theodore S. Heckel, Esq. (theckel@pszjlaw.com);

(iii)   (iii) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov);

(iv)    counsel to the DIP Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Gregg Bateman, Esq. (bateman@sewkis.com), Sagar Patel, Esq. (patel@sewkis.com), and Michael Danenberg, Esq.(danenberg@sewkis.com);

(v)     counsel to the DIP Lenders and Ad Hoc Group of First Lien Lenders, (A) Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Jayme Goldstein, Esq. (jaymegoldstein@paulhastings.com), Jeremy Evans, Esq. (jeremyevans@paulhastings.com), and Isaac Sasson, Esq. (isaacsasson@paulhastings.com), and (B) Landis Rath & Cobb LLP, 919 N. Market Street Suite 1800, Wilmington, DE 19317, Attn: Adam G. Landis, Esq. (landis@lrclaw.com) and Matthew McGuire, Esq. (mcguire@lrclaw.com);

(vi)    counsel to the ABL Lenders, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Jennifer Ezring, Esq. (Jennifer.Ezring@lw.com), James Ktsanes, Esq. (James.Ktsanes@lw.com), and Andrew Sorkin, Esq. (andrew.sorkin@lw.com);

(vii)   counsel to the Second Lien Term Loan Lenders, White & Case LLP, 200 S Biscayne Blvd, Miami, FL 33131, Attn: Thomas Lauria, Esq. (tlauria@whitecase.com), and 1221 Avenue of the Americas, New York, NY 10020, Attn: Andrew Zatz, Esq. (andrew.zatz@whitecase.com); and

(viii)    counsel to the HoldCo Lenders at the address set forth in (vii) above.

/s/ *Bruce W. McCullough*
Bruce W. McCullough (Bar No. 3112)