# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) | Case No. 24-12480 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 1182, 1312, 1371** |
| | ) | |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF STORE MASTER FUNDING IV, LLC TO EIGHTH AMENDED JOINT CHAPTER 11 PLAN OF FRANCHISE GROUP, INC AND ITS DEBTOR AFFILIATES

STORE Master Funding IV, LLC ("STORE"),[2] by and through its undersigned counsel, hereby files this limited objection and reservation of rights (the "Objection") to the *Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [D.I. 1312] (as may be further amended or modified, the "Plan") and in support thereof, respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

[2] Capitalized terms used but not otherwise defined in this Objection have the meanings given to such terms in the Master Lease, Guaranty, or Plan, as the context requires.

**BACKGROUND**

1. STORE and debtor Buddy's Newco, LLC ("Buddy's Newco") are parties to that certain *Master Lease Agreement* dated September 24, 2013 (the "Original Master Lease"),[3] which includes 10 properties in Florida, 2 properties in Georgia, and 1 property in Virginia (collectively, the "Premises"). Buddy's Newco subleases 10 of the 13 Premises to third party subtenants pursuant to various sublease agreements (collectively, the "Subleases"), while 3 of the Premises are corporate stores operated by Buddy's Newco.

2. STORE and Buddy's Newco also are party to that certain *Second Amended and Restated Unconditional Guaranty of Payment and Performance* (the "Guaranty"), effective as of November 3, 2015, for the benefit of STORE, and its *Second Amended and Restated Master Lease Agreement*, effective as of November 3, 2015, with non-debtor entity Buddy's Northwest, LLC, which includes 6 properties located in Washington.

3. On November 3, 2024 (the "Petition Date"), Franchise Group, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. in the United States Bankruptcy Court for the District of Delaware (the "Court"), thereby commencing the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases").

4. On January 23, 2025, STORE timely filed (i) proof of claim # 1983 against Buddy's Newco in the amount of not less than $6,834,490.73 for amounts due under the Guaranty; and

---

[3] The Master Lease has been amended and amended and restated several times, including on (i) September 9, 2014 (*Amended and Restated Master Lease Agreement*); (ii) December 12, 2014 (*Second Amended and Restated Master Lease*) ("2nd A&R Master Lease"); (iii) September 1, 2015 (*First Amendment to Second Amended and Restated Master Lease*); and (iv) December 28, 2017 (*Second Amendment to Second Amended and Restated Master Lease*). The foregoing, together with the Original Master Lease, is referred to collectively herein as the "Master Lease." The initial term of the Master Lease expires on September 30, 2028.

(ii) proof of claim # 2028 against Buddy's Newco in the amount of not less than $6,740.84 representing pre-petition rent due under the Master Lease as of the Petition Date.

5.      On April 30, 2025, the Debtors filed the *Amended Plan Supplement* [D.I. 1371] (the "Plan Supplement") for the Plan, which included the Rejected Contracts/Lease List as Exhibit E. The Rejected Contracts/Lease List includes both the Master Lease, the Guaranty, and all but 1 of the applicable Subleases. *See* D.I. 1371-2. Debtors request that the Master Lease and Subleases be deemed rejected as of May 20, 2025.

## LIMITED OBJECTION

6.      Neither the Plan nor the Plan Supplement contain procedures governing the rejection of Unexpired Leases or the abandonment of personal property at the premises subject to such rejected agreements. Thus, STORE and similarly situated lessors are left in the dark on critical issues, including, without limitation, the effectiveness of rejection, surrender of the Premises, and abandonment of personal property of the Debtors or other third parties. The Court should require the Debtors to remedy these deficiencies and expressly preserve STORE's rights under the Master Lease, the Subleases, and applicable law by including language in an amended version of the Plan and/or the Confirmation Order that directly addresses such issues.

7.      Among other things, the Plan and Confirmation Order should make clear that the Master Lease and Subleases are not impacted by the Debtors' rejection of the Master Lease or the Subleases. To preserve its rights under the Master Lease and Subleases, the Plan and Confirmation order should include language that rejection of the Master Lease and Subleases by the Debtors shall not (a) prejudice or in any way alter or effect STORE's rights thereunder including, without limitation, the right to enforce a subtenant's agreement to attorn to STORE upon STORE's election to assume the applicable Sublease, or (b) effect a termination of the applicable rejected Sublease.

Moreover, all of STORE's rights, claims, and remedies under the Master Lease, Subleases, ancillary agreements, and applicable law should be expressly preserved.

8. Additionally, because no procedures regarding the rejection of unexpired leases or abandonment of personal property have been approved in these Chapter 11 Cases, the Court should require Debtors to include such procedures in the Plan and the Confirmation Order. The rejection of a lease of non-residential real property should not become effective prior to the date that the debtor unequivocally surrenders possession of the leasehold premises to the applicable landlord. Therefore, the Debtors should be required to insert the language in the Plan and Confirmation Order providing that the effective date of the rejection of Unexpired Leases of non-residential real property is the later of (a) the proposed effective date of the rejection set forth in the Rejected Contracts/Lease List; (b) the date on which the applicable Debtor surrenders in writing (including via email) the premises to the landlord in accordance with the requirements of the applicable lease and returns the keys, key codes, or security codes, as applicable (or certifies in writing that the landlord is authorized to change the locks); and (c) such other date to which the Debtors and the applicable landlord have agreed to or as the Court may order.

9. Similarly, the Court should require the Debtors to include language in both the Plan and Confirmation Order with respect to the abandonment of personal property by the Debtors at the Premises. Among other things, the Plan and Confirmation Order should make clear that (i) Debtors may remove or abandon any of their personal property, including any fixtures, furniture and equipment, at any leased premises on or before the effective date of rejection, (ii) thereafter, absent timely objection, all such property remaining at any leased premises shall be deemed abandoned and free and clear of all liens, claims, encumbrances, or interests, and (iii) landlords may thereafter utilize and/or dispose of such property without further notice or liability to the

Debtors or any third parties (and, to the extent applicable, the automatic stay is modified to allow such disposition); *provided* that any claims related to costs incurred by landlords in removing, disposing, or storing any abandoned property shall be entitled to administrative priority status.

10. Finally, the Plan and Confirmation Order should expressly require the Debtors to pay rent and other obligations (including, without limitation, Base Monthly Rental, Additional Rental, Late Charges, Default Interest, and other amounts due under the Master Lease) through and including the effective date of rejection. Additionally, the Master Lease sets forth numerous requirements regarding the Debtors' surrender of the Premises to STORE. These requirements include, among other things, removing the Debtors' personal property located at the Premises. *See* 2nd A&R Master Lease, § 3.04. Accordingly, the Plan and Confirmation Order should require the Debtors to comply with all terms, conditions, and covenants of the Master Lease through and including the effective date of rejection.

## RESERVATION OF RIGHTS

11. STORE expressly reserves its right to amend and/or supplement this Objection, including, without limitation, to supplement this Objection with additional facts and/or arguments (including with respect to the propriety of the Debtors' rejection of the Master Lease and/or Subleases) and to present such evidence and arguments at the hearing on Plan Confirmation. STORE further reserves its rights to assert administrative and other rejection damage claims in these Chapter 11 Cases, including, without limitation, administrative claims arising from damages resulting from Debtors' vacating and surrendering the Premises to STORE.

## JOINDER

12. STORE hereby joins in any objections to Plan Confirmation filed by counterparties to Executory Contracts and Unexpired Leases to the extent not inconsistent with this Objection.

## **CONCLUSION**

**WHEREFORE**, STORE respectfully requests that the Court: (a) sustain this Objection; (b) direct the Debtors to insert language in the Plan and Confirmation Order expressly preserving STORE's rights under the Master Lease and related Subleases and providing reasonable procedures regarding rejection of Unexpired Leases and abandonment of personal property; (c) provide STORE an administrative claim to the extent that STORE incurs any expense or incurs any liability as a result of the Debtors or third parties claiming an interest in any abandoned personal property left behind at the Premises or any damages resulting from the Debtors not leaving the Premises in the condition required under the Master Lease; (d) direct the Debtors to continue performing under the terms of the Master Lease up to and through the effective date of the Master Lease rejection, including, without limitation, with respect to vacating the Premises and (e) grant STORE such other relief as is appropriate.

[*Remainder of Page Intentionally Left Blank*]

Dated: May 7, 2025  
       Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Jason D. Angelo*  
Jason D. Angelo (No. 6009)  
1201 North Market Street, Suite 1500  
Wilmington, DE 19801  
Telephone: +1.302.778.7500  
Facsimile: +1.302.778.7575  
E-mail: jangelo@reedsmith.com

- and -

Keith M. Aurzada, Esq.  
Dylan T. F. Ross, Esq.  
**REED SMITH LLP**  
2850 North Harwood Street, Suite 1500  
Dallas, TX 75201  
Telephone: +1.469.680.4200  
Facsimile: +1.469.680.4299  
E-mail: kaurzada@reedsmith.com  
E-mail: dylan.ross@reedsmith.com

*Counsel to STORE Master Funding IV, LLC*