# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>Jointly Administered |

**DECLARATION OF AMANDA CHRISTOFORO IN SUPPORT OF MOTION OF**
**GRANITE TELECOMMUNICATIONS, LLC FOR ALLOWANCE**
**AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

I, Amanda Christoforo, under penalty of perjury, declare as follows:

1.      I am above the age of eighteen (18) years, competent to make this declaration, and

do so based on my personal knowledge and the facts stated herein.

2.      I am the Director of Invoice Audit and Reporting for Granite Telecommunications,

LLC ("Granite"), and I have served in this role for about four (4) years.  I have been an employee

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

of Granite for fourteen (14) years. Prior to my promotion to my current role, I served in supervisory positions for Invoice Auditing and Reporting for approximately five (5) years. Prior to that I worked on Granite's rebill team in various roles for approximately five (5) years.

3.      I submit this declaration in support of the Motion of Granite Telecommunications, LLC for Allowance and Payment of Administrative Expense Claim.[2]

4.      Granite is the nation's largest competitive local exchange carrier, providing, at competitive prices, voice and data services to its customers that it obtains from established service providers across North America.  Granite offers access solutions tailored to its customers' business needs, and offers its customers consolidated billing and easy portability and management of voice and data services to account for changes in its customers' businesses.

5.      As the Director of Invoice Audit and Reporting, I audit invoices issued to customers and verify the accuracy of the amounts billed therein under relevant contractual provisions, generate data and information from internal databases to answer customer concerns and inquiries related to billing, and assist Granite with adherence to contractual obligations and governing financial regulations through the billing for voice and data services.

6.      Granite and American Freight are parties to a pre-petition executory contract executed on or around September 30, 2011, as since amended (the "Contract"),[3] pursuant to which Granite provided voice and data services to American Freight both pre-petition and post-petition.

7.      On or around October 11, 2024, American Freight induced Granite to enter into Amendment No. 7 to the Master Services Agreement, extending the terms for the broadband and

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[3] The Contract includes, but is not limited to, the Master Services Agreement entered into on September 30, 2011, the Adoption Agreement, dated as of August 22, 2018, Amendment No. 2 to the Master Services Agreement, dated as of July 1, 2019, Amendment No. 3 to the Master Services Agreement, dated as of December 2019, Amendment No. 4 to the Master Services Agreement, dated as of January 11, 2022, Amendment No. 5 to the Master Services Agreement, dated as of August 24, 2022, Amendment No. 6 to the Master Services Agreement, dated as of April 19, 2023, and Amendment No. 7 to the Master Services Agreement, dated as of October 11, 2024.

2

access services by one year, to have a termination date of April 30, 2028 rather than April 30, 2027.

8.      Both pre-petition and post-petition, Granite provided critical voice and data products and services to American Freight at prices that enabled American Freight to save hundreds of thousands of dollars. Granite was able to save American Freight this much money because of Granite's position as a competitive local exchange carrier ("CLEC") for telecommunications services and as an aggregator of other voice and data products and services. In both cases, services are often provided by an underlying network provider, such as an incumbent local exchange carrier ("ILEC") like AT&T or Verizon, or an operator of a coaxial cable network like Comcast or Spectrum.  Granite provides value to its customers by aggregating the footprints of the underlying network providers so that it can provide nationwide, carrier agnostic service to any location, while also leveraging its relationships with the underlying carriers to deliver superior value.  For a nationwide multi-location business like American Freight, the benefits of procuring services on Granite's platform are considerable.

9.      For certain services—especially broadband and access services—Granite typically enters into long term contracts with the underlying network providers in order to secure lower monthly recurring charge pricing for its end user customers, like American Freight.  These long term contracts also introduce risk, for Granite is liable to its underlying providers for ETFs if the services are disconnected prior to the end of the service term.  To mitigate this risk, Granite's contracts with its end user customers to provide for the customer to pay ETFs to Granite in the event services are disconnected before the end of the applicable service term.  This is the ordinary practice for carriers in Granite's position, and it was the case in Granite's relationship with American Freight. American Freight agreed to years-long term periods for its broadband and

access services from Granite in order to take advantage of the low monthly service charges such arrangements offered. Granite would not offer these business terms to its customers if it could charge ETFs upon disconnection of services.

10.     In connection with Granite's Motion, I analyzed all post-petition invoices issued to American Freight, including the post-petition portions of the November 1, 2024 invoices issued with regard to American Freight Account Nos. 04001072 and 04722562, as well as the invoices for both accounts issued on December 1, 2024, January 1, 2025, February 1, 2025, March 1, 2025, and April 1, 2025.

11.     As of the Petition Date, Granite was providing voice and data services to American Freight at approximately three hundred and eighty (380) locations.

12.     The Debtors requested services at all but thirty-four (34) of the American Freight stores to be disconnected as of December 31, 2024.  *See* Motion, Exhibit "B".

13.     On April 8, 2025, American Freight requested for Granite to disconnect the remaining services at the remaining thirty-four (34) locations. *See id.*

14.     As of April 30, 2025, the Debtors continue to owe $5,847,701.49 to Granite, comprised of the following amounts:

4

| Account Number | Invoice No. | Invoice Date | Original Invoice Amount | Remaining Invoice Balance |
|---|---|---|---|---|
| 04001072 | 692845830 | 4/1/2025 | $1,880.15 | $1,880.15 |
| 04001072 | 688563635 | 3/1/2025 | $6,787.21 | $6,787.21 |
| 04001072 | 684153994 | 2/1/2025 | $2,019,171.13 | $2,004,188.64 |
| 04722562 | 692855492 | 4/1/2025 | $13,689.42 | $13,689.42 |
| 04722562 | 688570886 | 3/1/2025 | $12,139.43 | $11,538.41 |
| 04722562 | 684163946 | 2/1/2025 | $3,371,946.56 | $3,359,415.73 |
| 04722562 | 676978374 | 1/1/2025 | $457,358.63 | $444,827.80 |
| 04722562 | 668242972 | 11/1/2024 | $200,469.13 | $5,374.13 |
| **TOTAL:** | | | | **$5,847,701.49** |

15.     Having reviewed the American Freight accounts listed in the above chart and all invoices underlying such chart, I attest that the amounts charged to American Freight in such invoices were proper and according to the terms of the Contract between Granite and American Freight, and the cited "Remaining Invoice Balance" for each invoice is correct.

16.     Granite's $5,847,701.49[4] Administrative Claim contains: (i) remaining unpaid service charges and taxes thereon ($24,878.69), (ii) remaining unpaid one-time charges, including, but not limited to, as-needed service charges (such as equipment maintenance and other on-site work) and the direct costs of disconnecting services ($39,956.29); (iii) Early Termination Fees ("ETFs") assessed upon the disconnection of services at any given location ($3,974,195.87); (iv) accelerated network integration charges ($20,989.70); and (v) fees related to American

---

[4] Debtors made a payment of 601.02 on April 10, 2025, after the filing of the original administrative claim.

LEGAL\77494248\1

Freight's failure to return Granite's equipment post-petition ($1,787,680.94). All of these charges were actually incurred under the Contract post-petition and pre-rejection.

17.   From the Petition Date through the filing of the Motion, American Freight incurred $394,698.60 in regular, recurring monthly charges for voice and data services provided and Granite equipment rented, as well as $27,362.64 in related taxes, for a total of $422,061.24. American Freight has paid Granite only $397,783.57 post-petition. This leaves an outstanding balance on strictly service-related charges of $24,878.69 that are both contractual obligations of the debtors and administrative priority claims for actual, necessary services rendered to the Debtor's estate.

18.   I have analyzed the services provided to American Freight and monthly charges associated therewith, and compared the monthly recurring charges under the agreed term as of the Petition Date (through April 2028, as agreed in Amendment No. 7 to the Master Services Agreement) to the monthly recurring charges that Granite would have otherwise charged if Granite were providing these service on a month-to-month basis.  I completed this analysis because the amounts charged for the services under the agreed term are discounted rates provided in exchange for American Freight's agreement to receive such services for multiple years. The rates that would be charged under a month-to-month agreement accurately account for the true value of the services provided Through my analysis, I determined that—had Granite and American Freight operated under a month-to-month agreement, with no discounts applied to the cost of the voice and data services—Granite would have charged American Freight an additional $246,153.28 post-petition in monthly recurring charges for services alone.

19.   Unpaid one-time charges in the amount of $39,956.29 include: (i) $7,724.70 in as-needed one-time charges, including on-site labor and dispatch of technicians; (ii) $8,232.10 in

6

unpaid post-petition but pre-rejection amortized network integration ("NI") labor costs; (iii) $199 in carrier dispatch fees charged as a result of Granite not being allowed in the building when it arrived to complete labor; (iv) $295.85 in post-petition shipping charges; (v) $19,268.21 in fees and expenses of disconnecting services; and (vi) $4,236.43 in consolidated billing fees.

20.     I have also analyzed the charges for equipment provided on a rental basis to American Freight.  The total monthly rental cost for all equipment was $29,162.15.

21.     Had all equipment issued to American Freight continued billing between November 3, 2024 and April 30, 2025, the total amount that would have been billed for equipment would have been $174,229.55.  Factoring in amounts that American Freight paid post-petition towards monthly rental of equipment, the total amount that would have been billed for all equipment that American Freight has not paid for post-petition would be $104,881.28.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 12, 2025                              /s/  Amanda Christoforo
                                                  Amanda Christoforo
                                                  Director of Invoice Audit and Reporting
                                                  Granite Telecommunications, LLC
                                                  1 Heritage Drive
                                                  Quincy, MA 02171

7