**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 1430 & 1457** |

**AD HOC GROUP OF FIRST LIEN LENDERS' JOINDER TO
DEBTORS' MEMORANDUM OF LAW (I) IN SUPPORT OF AN ORDER
(A) CONFIRMING THE NINTH AMENDED JOINT CHAPTER 11 PLAN OF
FRANCHISE GROUP, INC. AND ITS DEBTOR AFFILIATES AND
(B) APPROVING THE GLOBAL SETTLEMENT AND RELEASE OF CLAIMS AND
CAUSES OF ACTION BY AND AMONG THE GLOBAL SETTLEMENT PARTIES,
AND (II) OMNIBUS REPLY TO OBJECTIONS THERETO**

The Ad Hoc Group of First Lien Lenders (the "First Lien Group"), by and through its undersigned counsel, hereby files this joinder (this "Joinder and Reply") to the *Debtors' Memorandum of Law (I) in Support of an Order (A) Confirming the Ninth Amended Joint Chapter*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

*11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (B) Approving the Global Settlement and Release of Claims and Causes of Action by and Among the Global Settlement Parties, and (II) Omnibus Reply to Objections Thereto* [Docket No. 1457] (the "Debtors' Memorandum and Reply") and reply to the *Objection and Reservation of Rights of Brian Kahn and Lauren Kahn JT TEN to Confirmation of Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1430] (the "Kahn Objection"), and respectfully states as follows:[2]

**JOINDER AND REPLY**

1. The First Lien Group hereby joins in the Debtors' Memorandum and Reply and incorporates by reference the arguments therein as if fully set forth herein.

2. As this Court is well aware, the Plan is the product of more than six months of hard-fought litigation and negotiations. Due to significant efforts of the Debtors and their key stakeholders, we are now at the precipice of an outcome that none of the major case constituencies would have thought possible just six weeks ago; the Debtors have consensually resolved nearly all issues related to Confirmation, save for two. One of these objections, which the First Lien Group addresses herein, is an objection from Brian Kahn—an out of the money equity holder currently under investigation by the Securities and Exchange Commission and Department of Justice for fraud whose orchestration of the Take-Private Transaction directly led to this value-destructive bankruptcy case—and his wife and joint tenant in the entirety (together, the "Kahns"). For the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or the Debtors' Memorandum and Reply, as applicable.

reasons set forth herein, and in the Debtors' Memorandum and Reply, the Kahn Objection lacks merit and should be overruled.[3]

3.  In the Kahn Objection, the Kahns oppose Confirmation of the Plan, solely at TopCo. They argue that, as to TopCo, the Plan fails to comply with sections 1129(a)(7) and 1129(a)(10) of the Bankruptcy Code. The Kahn Objection lacks merit for the following reasons:

4.  *First*, section 1129(a)(10) of the Bankruptcy Code is not implicated at TopCo and, even if it were, the Kahns lack standing to raise such an objection. By its express terms, section 1129(a)(10) of the Bankruptcy Code applies only if there is an impaired "class of claims" under a plan. *See* 11 U.S.C. § 1129(a)(10) ("***If a class of claims is impaired under the plan***, at least one ***class of claims*** that is impaired under the plan has accepted the plan . . . .") (emphasis added). Thus, where there is *no* impaired class of claims, section 1129(a)(10) does not require an impaired accepting class. *Cf. In re Heaven's Landing, LLC*, 649 B.R. 812, 827 (Bankr. N.D. Ga. 2023) (finding Bankruptcy Code sections 1129(a)(8) and (a)(10) were met where, as here, there was no impaired class of creditors for purposes of section 1129(a)(10)).

5.  As the Kahn Objection concedes, the Debtors' liquidation analysis and schedules reflect no general unsecured claims existing at TopCo; indeed, the Kahn Objection is premised on the Kahns's purported right to a recovery, as equity holders, given that TopCo has no creditors.[4] (*See* Kahn Objection at ¶¶ 18, 36, 47.) The absence of impaired Claims at TopCo negates the need

---

[3] The other outstanding objection is from certain franchisees who hope to take advantage of the Debtors' bankruptcy filing to manufacture a basis to avoid obligations in their franchise agreements. As the Debtors' Memorandum and Reply makes clear, although disguised as a confirmation objection, at its core, the franchisees object to Cure Costs that can, and should, be dealt with outside of the Confirmation process. The First Lien Group understands that the Debtors are in the process of trying to consensually resolve the objection with language added to the Confirmation Order, and reserves all rights with regards to the same.

[4] The evidence at the Confirmation Hearing will show that Mr. Kahn's Proof of Claim was improperly filed against TopCo, and is properly a Claim against Debtor Franchise Group, Inc. And, as the Kahn Objection concedes, there are no valid General Unsecured Claims against TopCo. (*See* Kahn Objection at ¶¶ 18, 36, 47.)

for an impaired accepting Class under section 1129(a)(10).[5]  In any event, the Kahns, as equity holders, do not have grounds to raise a section 1129(a)(10) objection.  Section 1129(a)(10) only provides protections to an impaired "class of claims" and the Kahns lack standing to oppose Confirmation based on this provision of the Bankruptcy Code.  Therefore, the Kahn Objection based on section 1129(a)(10) should be overruled.

6.      *Second*, the Kahns' arguments that the Plan for TopCo fails the best interests test in section 1129(a)(7) likewise fails because the Kahns have not identified any circumstances whatsoever in which their TopCo Equity Interests—or Claims, to the extent they exist (and to be clear, they do not)—could recover more through a hypothetical liquidation than under the Plan.

7.      The Kahns accuse the Debtors of misapplying the Final DIP Order in connection with their liquidation analysis.  Under the Final DIP Order, if the value of the non-TopCo assets is sufficient to repay the DIP Facility in full, then those assets must be used to repay the DIP Claims, leaving TopCo's assets to pay TopCo's stakeholders.  Conversely, if the value of the non-TopCo assets is insufficient to repay the DIP Facility in full, then TopCo's assets must be used to pay the DIP Claims ahead of TopCo's stakeholders.  The Kahns take aim at the fact that the Debtors' liquidation analysis regards the DIP Facility as paid in full when the entire DIP Facility amount (approximately $788.5 million) is repaid.  They argue instead that, for purposes of the foregoing, the DIP Facility is paid in full when only the new money portion of the DIP Facility (which they incorrectly state is $250 million[6]) is repaid.  As such, the Kahns contend that the Debtors'

---

[5]  The Plan expressly provides that "[a]ny Class of Claims or Equity Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed under Bankruptcy Rule 3018 shall be deemed ***eliminated*** from [the] Plan for purposes of voting to accept or reject [the] Plan and for purposes of determining acceptance or rejection of [the] Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code."  (*See* Plan at § 6.5 (emphasis added).)

[6]  The Kahn Objection incorrectly asserts that there are only $250 million in outstanding DIP Claims at TopCo. (*See* Kahn Objection at ¶ 39.)  The Kahn Objection ignores that TopCo guaranteed the full amount of New Money DIP Loans, including any associated "interest, fees, reimbursement, indemnity and other amounts owed in respect

4

liquidation analysis is flawed because it assumes an improperly high hurdle of DIP Claim recoveries as standing ahead of TopCo stakeholders. (*See* Kahn Objection at ¶ 42.)

8.  The Kahn Objection is premised on a fundamental misreading of the Final DIP Order. While it is true that TopCo's guaranty under the DIP Facility is limited to the new money portion of the DIP Facility, paragraph 33 of the Final DIP Order has no such limitation. To the contrary, that provision makes the TopCo assets available to ensure that "the DIP Obligations" (i.e., the full $788.5 million) are repaid in full. (Final DIP Order at ¶ 33 ("Notwithstanding anything to the contrary herein, with respect to Debtor Freedom VCM Holdings, LLC, ***the DIP Obligations*** shall be repaid, first, from DIP Collateral comprised of Unencumbered Property of all DIP Loan Parties (other than Debtor Freedom VCM Holdings, LLC), second, from all other DIP Collateral of all DIP Loan Parties (other than Debtor Freedom VCM Holdings, LLC), and third, from assets at Debtor Freedom VCM Holdings, LLC.") (emphasis added).)

9.  In any event, the Kahn Objection misses a critical point: in a hypothetical liquidation, the proceeds from non-TopCo assets would be insufficient to repay even just the new money portion of the DIP Facility. As the evidence at the Confirmation Hearing will show, in a hypothetical liquidation the non-TopCo asset proceeds would yield less than the approximately $280 million needed to repay the new money portion of the DIP Facility (accounting for fees, interests, and other costs) and, therefore, the TopCo assets, including the approximately $13.25 million of Cash, would be utilized to repay the DIP Facility. Accordingly, even under the Kahns' flawed reading of the Final DIP Order, TopCo stakeholders would never receive any liquidation recoveries.

---

thereof." (Final DIP Order ¶¶ 2(b).) Thus, as the evidence at the Confirmation Hearing will show, TopCo is obligated to the DIP Lenders for approximately $280 million in DIP obligations.

10. Moreover, even if the non-TopCo liquidation proceeds were sufficient to repay the DIP Facility in full (and they would not be), the Kahns still would not be entitled to distributions from TopCo assets. Under the Plan, TopCo's Cash is transferred down to the HoldCo Debtors as part of a Global Settlement[7] that settles key case issues such as: (1) allocation of Professional Fee Claims that TopCo would otherwise be obligated to pay; and (2) Intercompany Claims to avoid certain intercompany transfers from the other Debtors to TopCo, which funded the $13.25 million in Cash. As the evidence at the Confirmation Hearing will show, the Intercompany Claims combined with the Professional Fee Claims allocable to TopCo would far exceed the amount of Cash held at TopCo and would eliminate any recovery to TopCo stakeholders in a hypothetical liquidation.

11. For these reasons, and the reasons stated in the Debtors' Memorandum and Reply, the Plan satisfies the best interests test of section 1129(a)(7) and should be confirmed.

## CONCLUSION

12. The First Lien Group reserves the right to supplement and amend this Joinder and Reply, to seek discovery with respect to the same, and to introduce evidence at the Confirmation Hearing, and expressly reserves all rights under applicable law and otherwise.

13. Nothing contained herein shall constitute a waiver of any rights or remedies of the First Lien Group, including, without limitation, the right to: (i) amend, modify, or supplement this Joinder and Reply; or (ii) raise any other additional arguments at a later date, including at the Confirmation Hearing.

---

[7] Critically, nowhere in the Kahn Objection do the Kahns object to the Global Settlement or its component parts.

**WHEREFORE** the First Lien Group respectfully requests that this Court confirm the Plan, deny the Objections in their entireties, and grant such other and further relief as the Court finds just and appropriate.

[*Remainder of Page Intentionally Left Blank*]

| | |
|---|---|
| Dated: May 14, 2025<br>Wilmington, Delaware | Respectfully submitted,<br><br>**LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Elizabeth A. Rogers (No. 7335)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>Email: landis@lrclaw.com<br>       mcguire@lrclaw.com<br>       erogers@lrclaw.com<br><br>-and-<br><br>**PAUL HASTINGS LLP**<br>Jayme T. Goldstein (admitted *pro hac vice*)<br>Daniel A. Fliman (admitted *pro hac vice*)<br>Jeremy D. Evans (admitted *pro hac vice*)<br>Isaac S. Sasson (admitted *pro hac vice*)<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 318-6000<br>Facsimile: (212) 319-4090<br>Email: jaymegoldstein@paulhastings.com<br>       danfliman@paulhastings.com<br>       jeremyevans@paulhastings.com<br>       isaacsasson@paulhastings.com<br><br>Nicholas A. Bassett (admitted *pro hac vice*)<br>2050 M Street NW<br>Washington, DC 20036<br>Telephone: (202) 551-1700<br>Facsimile: (202) 551-1705<br>Email: nicholasbassett@paulhastings.com<br><br>*Counsel to the Ad Hoc Group of First Lien Lenders* |