**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) ) ) | Case No. 24-12480 (LSS) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF CHRISTOPHER GRUBB
IN SUPPORT OF AN ORDER (I) CONFIRMING THE NINTH
AMENDED JOINT CHAPTER 11 PLAN OF FRANCHISE GROUP, INC.
AND ITS DEBTOR AFFILIATES AND (II) GRANTING RELATED RELIEF**

I, Christopher Grubb, hereby declare under penalty of perjury:

**Background and Qualifications**

1. I am a Partner at Ducera Partners LLC (together with its affiliates, "Ducera"), an investment banking firm located at 11 Times Square, New York, NY 10036. Ducera specializes

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

in providing capital structure and restructuring advice to companies, creditors, and investors. Ducera provides a broad range of corporate and financial services to its clients, including: (a) general corporate advice; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; and (d) private placements. Ducera and its senior professionals have extensive experience in rendering investment banking services to financially distressed companies in reorganization proceedings and complex financial restructurings, both in and out of court.

2. I have close to 20 years of restructuring-related experience as a trusted advisor to leading companies on a wide range of complex corporate finance transactions. Since joining Ducera in 2023, I have provided investment banking expertise, including with respect to marketing and sale transactions, to financially distressed companies, and to creditors and strategic investors in distressed and special situations engagements. I currently serve as a Partner at Ducera, where I specialize in providing financial advice to leading and distressed companies, creditors groups, and other parties of interest in a range of complex and transformative corporate finance transactions, including financial restructurings, mergers and acquisitions, and court-supervised insolvency proceedings. Prior to joining Ducera, I was an investment banker at Greenhill & Co. for over 17 years, where I served as Managing Director, member of the Management Committee and member of the Fairness Committee for over 10 years, advising companies and other stakeholders on special situation restructuring and mergers and acquisitions engagements. Prior to that time, I was an investment banker at UBS. I hold a Bachelor of Science degree in Operations Research and Industrial Engineering from Cornell University, a Master of Business Administration from Columbia Business School, and I am a CFA Charterholder.

3. I submit this declaration ("Declaration") in support of confirmation of the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No.

1454] (as modified, amended, or supplemented from time to time in accordance with its terms, the "Plan").[2]

4. In my capacity as investment banker to the Debtors, I am familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I have assisted the Debtors in a variety of tasks, including working directly with the Debtors' management team and key business personnel—including, but not limited to, members of the finance, legal, and human resources groups—to evaluate the Debtors' liquidity requirements, general operations, and strategic restructuring considerations.

5. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge or information that I have received from employees of Ducera working directly with me or under my supervision, direction, or control, my discussions with members of the Debtors' management team and the Debtors' advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, as described below, or my opinions based upon my experience and knowledge as an investment banking professional. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis. I am over the age of 18 years and am authorized to submit this Declaration on behalf of the Debtors.

### Debtors' Retention of Ducera

6. Prior to the Petition Date, the Debtors engaged Ducera to assist the Company in connection with its restructuring initiatives. Ducera's retention later expanded to include the marketing of the Debtors' American Freight business, and then further expanded to include advising the Debtors on the marketing and sale of the Debtors' other business segments, including

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

The Vitamin Shoppe ("TVS"), Pet Supplies Plus, and Buddy's Home Furnishings (collectively, the "OpCos").

7. The Debtors also engaged Ducera to, among other things, familiarize itself with the Debtors' business, operations, financial condition, financial statements, business plans, forecasts, and capital structure; analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity; assist in the evaluation of the Debtors' valuation, debt capacity, and alternative capital structures in light of its projected cash flow; and provide other advisory services as are customarily provided in connection with a transaction, including a restructuring of the Debtors' existing obligations (the "Restructuring").

8. In connection with the Restructuring, Ducera: (a) analyzed various transaction scenarios, the potential impact of these scenarios on the value of the Debtors, and the recoveries of those stakeholders impacted by the Restructuring; (b) provided strategic advice with regard to restructuring or refinancing the Debtors' existing obligations; (c) provided financial advice and assistance to the Debtors in implementing the Restructuring; (d) assisted the Debtors in negotiations with entities and groups affected by the Restructuring; and (e) undertook a comprehensive process to explore a potential sale of some or all of the OpCos.

## Valuation Analysis & Opinions

9. At the Debtors' request, Ducera performed a valuation analysis of the Debtors on a post-reorganization basis (the "Valuation Analysis"). The Valuation Analysis is based on the financial projections and information provided by the Debtors' management and advisors, and other available information described below. It is my opinion that the estimated total enterprise value of the Reorganized Debtors as of an assumed Effective Date of May 31, 2025 is between

approximately $823 million and $1,023 million (the "<u>Enterprise Value</u>").[3]  I further conclude that the estimated Enterprise Value is not greater than the amount of secured claims outstanding on the Petition Date.

I.      **Information Considered.**

10.     In preparing the Valuation Analysis, Ducera, among other things: (a) reviewed the Debtors' historical financial information for recent years and interim periods; (b) reviewed the Debtors' actual financials and projected financials; (c) reviewed the Debtors' financial and operating data, including the projected financial and operating data, and considered certain economic and industry information relevant to the OpCos; (d) discussed the Debtors' past and current business, ongoing operations, and current financial condition and financial projections with members of the Debtors' management teams (including their views on the amounts, timing, risks, achievability, and uncertainties of attaining such projections); (e) performed a comprehensive marketing process for the sale of the OpCos' assets, and considered non-binding proposals received for an acquisition of some, all, or substantially all of the Debtors' assets; (f) reviewed publicly available financial data for, and considered the market value of, public companies that Ducera deemed generally relevant in analyzing the value of the Debtors and each OpCo; (g) reviewed the financial terms, to the extent publicly available, of selected comparable business combination transactions; and (h) performed such other studies, analyses, and examinations and considered such other factors which Ducera believed to be appropriate.  The Debtors' valuation assumes the Partial Sale Transaction is consummated prior to the Effective Date, and is thus not included in the Enterprise Value range.

---

[3]   The Enterprise Value assumes the Partial Sale Transaction is consummated prior to the Effective Date, and is thus not included in the valuation.

11. Ducera assumed and relied upon the accuracy and completeness of all financial and other information furnished to it by the Debtors' management and other parties, as well as publicly available information.

## II. Valuation Methodologies.

12. The Valuation Analysis contains the estimated Enterprise Value of the Reorganized Debtors (and assumes the Partial Sale Transaction will be consummated prior to the Effective Date). In preparing the Valuation Analysis, Ducera considered a variety of financial analysis methodologies, including: (a) a public peers analysis based on earnings before interest, taxes, depreciation, and amortization ("EBITDA"), and EBITDA multiples; (b) a discounted cash flow analysis; and (c) a precedent transaction analysis based on EBITDA and EBITDA multiples. As an additional reference point, Ducera also considered the comprehensive sale and marketing process that solicited bids for all or some of the Debtors' assets and the subsequently negotiated Partial Sale Transaction of TVS.[4] Ducera performed its analyses with respect to the Debtors (as a whole) as well as on a "sum-of-the-parts" basis, by aggregating the implied valuation of each OpCo and corporate overhead expenses.

13. The public peers analysis estimates the value of a company relative to publicly traded companies with similar business and financial characteristics. Ducera selected a set of publicly traded companies that I believe exhibit sufficiently similar business and financial characteristics to the Debtors and OpCos. Criteria for the selected reference group included, among other relevant characteristics, similarity in operations, business model, enterprise value,

---

[4] Additional information regarding the Debtors' sale and marketing process can be found in the Disclosure Statement and the *Declaration of Christopher Grubb in Support of Debtors' Motion for Entry of an Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter into and Perform its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1289].

channel mix, types of products and services, geographic footprint, growth and margin dynamics, customer base, and size of operations. Ducera considered industry benchmarking, operating metrics, and multiples of fiscal year 2024 and fiscal year 2025 EBITDA to estimate the total enterprise value of the Debtors, based on publicly traded peers operating in industries and sectors where the Debtors and OpCos compete and maintain operations.

14. The discounted cash flow analysis estimates the value of a company by calculating the present value of expected future cash flows to be generated by that company. Ducera used financial projections (the "Financial Projections") developed by management to conduct the discounted cash flow analysis and, where appropriate, incorporated certain lease-related cost savings, as identified by the Debtor's advisor, Hilco Real Estate. Under this methodology, projected future cash flows are discounted by the weighted average cost of capital, which reflects the estimated rate of return required by debt and equity investors to invest in the business. The enterprise value of a company is determined by calculating the present value of such company's projected unlevered free cash flows, plus an estimate of the value of the company beyond the projection period, known as a terminal value. The terminal value was derived by Ducera using the unlevered, after-tax free cash flow that the Debtors were forecasted to generate over the projection period from 2025 to 2029, with certain adjustments, applying exit adjusted EBITDA multiples of 6.0x – 7.0x, 3.5x – 4.5x, 4.5x – 5.5x, 5.0x – 6.0x, and 4.5x – 5.5x for Pet Supplies Plus, TVS, Buddy's Home Furnishings, corporate overhead costs, and the Debtors (as a whole), respectively, to fiscal year 2029 adjusted EBITDA, and discounting the resulting terminal value to the present value as of the Effective Date.

15. Ducera evaluated precedent M&A transactions of businesses with characteristics reasonably similar to the Debtors and OpCos to determine an appropriate valuation range for the

Debtors. Factors determining whether a target company was reasonably similar to the Debtors included business operations, financial profile, and industry. Ducera considered, among other things, when the precedent M&A transaction was completed, whether the precedent transaction involved companies headquartered in the U.S. or Canada; whether the target company operated in the retail trade or wholesale nondurables industry; the deal value; and whether the target maintained brick-and-mortar retail stores.

16. Ducera evaluated the Debtors' sale and marketing process in connection with its efforts to obtain Qualified Bids (as defined in the Bidding Procedures Order) for the purchase of some, all, or substantially all of the Debtors' assets. The marketing process was conducted by the Debtors and their advisors, including Ducera. Approximately 260 parties, including both financial and strategic parties, were contacted during this marketing process and invited to submit a bid. Despite these efforts, no Qualified Bids were received by the February 3, 2025 bid deadline.[5] In connection with the Valuation Analysis, Ducera considered the enterprise values implied by initial indications of interest and formal indications of interest received from potential buyers during this marketing process. Ducera also considered the subsequently negotiated sale of TVS.

17. After review and analysis of the above-mentioned methodologies, Ducera utilized the Debtors' Financial Projections as the basis for applying these approaches and ultimately deriving the applicable range of Enterprise Value.

---

[5] A "Qualified Bid" means a bid that is submitted in writing by an Acceptable Bidder (as defined in the bidding procedures approved by the Bankruptcy Court on December 16, 2024 [Docket No. 444] (the "Bidding Procedures")) by the February 3, 2025 bid deadline and is determined, in the Debtors' business judgment, to comply with all of the requirements enumerated in section IV of the Bidding Procedures.

**Conclusion**

18.     Based on the work Ducera performed and the information and methodologies applied, it is my opinion that the estimated Enterprise Value of the Reorganized Debtors as of the assumed Effective Date of May 31, 2025 is approximately $823 million to $1,023 million. Based on my work completed and described above, and discussions with the management of the Debtors and the Debtors' other advisors, I conclude that this estimated Enterprise Value as of the assumed Effective Date is not greater than the amount of secured claims outstanding on the Petition Date.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  May 14, 2025                                  /s/ *Christopher Grubb*
                                                      Christopher Grubb
                                                      Partner
                                                      Ducera Partners LLC