## EXHIBIT A

**Proposed Confirmation Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRANCHISE GROUP, INC., *et al.,*[1] | ) Case No. 24-12480 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No.___** |
| | ) |

# FINDINGS OF FACT, CONCLUSIONS
# OF LAW, AND ORDER (I) CONFIRMING
# THE NINTH AMENDED JOINT CHAPTER 11 PLAN OF
# FRANCHISE GROUP, INC. AND ITS DEBTOR AFFILIATES AND
# (II) APPROVING THE GLOBAL SETTLEMENT AND RELEASE OF CLAIMS
# AND CAUSES OF ACTION BY AND AMONG THE GLOBAL SETTLEMENT PARTIES

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"),

having:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] Capitalized terms used but not otherwise defined herein (this "<u>Confirmation Order</u>") shall have the meanings ascribed to them later in this Confirmation Order or in the Plan (as defined herein). The rules of interpretation set forth in <u>Article I</u> of the Plan shall apply to this Confirmation Order.

a.      entered into that certain Restructuring Support Agreement, dated as of November 1, 2024, by and among the Debtors and the Consenting First Lien Lenders (as may be amended from time to time in accordance with its terms, the "<u>Restructuring Support Agreement</u>");

b.      commenced, on November 3, 2024 (the "<u>Petition Date</u>"), these chapter 11 cases (these "<u>Chapter 11 Cases</u>") by Filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>");

c.      Filed, on November 4, 2024, the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "<u>First Day Declaration</u>");

d.      continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

e.      Filed, on November 11, 2024, (a) the *Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 150], (b) the *Disclosure Statement for the Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 151], and (c) the *Debtors' Motion for an Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 152] (the "<u>Disclosure Statement Motion</u>");

f.      obtained, on December 6, 2024, entry of (a) the *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and (B) Approving the Form and Manner of Notice Thereof* [Docket No. 354] (the "<u>Bar Date Order</u>") and (b) the *Final Order (I) Authorizing Debtors to (A) Pay Certain Prepetition Employment Obligations and Compensation Obligations and (B) Maintain the Compensation Obligations and Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 348];

g.      obtained, on December 11, 2024, entry of (a) the *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 414] (the "<u>Final DIP Order</u>") and (b) the *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers & Logistics Providers, and 503(b)(9) Claimants; and (II) Granting Related Relief* [Docket No. 410];

2

h.        obtained, on December 16, 2024, entry of the *Order (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief* [Docket No. 444] (the "<u>Bidding Procedures Order</u>");

i.        caused, on December 19, 2024, the Sale Hearing Notice (as defined in the Bidding Procedures Order) to be published in the *New York Times* (National Edition), as evidenced by the *Certificate of Publication* [Docket No. 593];

j.        Filed, on January 3, 2025, (a) the *First Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 654] and (b) the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 655];

k.        Filed, on February 3, 2025, (a) the *Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 894] and (b) the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 895];

l.        Filed, on February 4, 2025, the *Notice of Adjournment of Auction* [Docket No. 916];

m.        Filed, on February 5, 2025, (a) the *Third Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 925] and (b) the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 926];

n.        Filed, on February 10, 2025, the *Notice of Further Adjournment of Auction* [Docket No. 948];

o.        Filed, on February 12, 2025, (a) the *Fourth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 957] and (b) the *Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 958];

p.        Filed, on February 12, 2025, the *Notice of Cancellation of Auction* [Docket No. 961];

q.        Filed, on February 18, 2025, (a) the *Fifth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 996] and (b) the *Disclosure Statement for the Fifth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 995];

r.        Filed, on February 20, 2025, (a) the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1015] and (b) the *Disclosure Statement for the Sixth Amended Joint Chapter 11 Plan of Franchise*

*Group, Inc. and Its Debtor Affiliates* [Docket No. 1014] (as amended, supplemented, or modified from time to time, the "<u>Disclosure Statement</u>");

s.     obtained, on February 21, 2025, entry of the *Order (I) Approving the Disclosure Statement; (II) Approving the Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 1019] (the "<u>Disclosure Statement Order</u>"), following a hearing (the "<u>Disclosure Statement Hearing</u>"), which, among other things, approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code, the solicitation and voting procedures (the "<u>Voting Procedures</u>"), the Confirmation Hearing Notice, and other related forms and ballots (the foregoing materials, collectively, the "<u>Solicitation Package</u>");

t.     caused the Solicitation Package and the *Notice of Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* (the "<u>Confirmation Hearing Notice</u>") to be distributed on or before February 28, 2025, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1383] (the "<u>Solicitation Affidavit</u>");

u.     Filed and caused to be served, on February 21, 2025, the Confirmation Hearing Notice [Docket No. 1021], and caused the Confirmation Hearing Notice to be published on the Debtors' case website;

v.     caused, on February 25, 2025, the Confirmation Hearing Notice to be published in *The Wall Street Journal* as evidenced by the *Affidavit of Publication in the Wall Street Journal* [Docket No. 1030] (the "<u>Publication Affidavit</u>");

w.     Filed and caused to be served, on March 27, 2025, the *Notice of Filing of Plan Supplement* [Docket No. 1182] (as amended, modified, or supplemented from time to time, the "<u>Initial Plan Supplement</u>"), as evidenced by the *Affidavit of Service* [Docket No. 1311];

x.     Filed, on April 3, 2025, the *Seventh Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1233];

y.      obtained, on April 7, 2025, entry of the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1253], extending the Debtors' exclusive period to file a chapter 11 plan and solicit acceptances thereof to June 2, 2025, and July 31, 2025, respectively;

z.      Filed, on April 17, 2025, the *Notice of Global Settlement* [Docket No. 1290];

aa.    Filed, on April 25, 2025, the (a) *Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1312] (the "Eighth Amended Plan") and (b) the *Disclosure Statement Supplement for the Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1314] (as amended, supplemented, or modified from time to time, the "Disclosure Statement Supplement");

bb.    obtained, on April 26, 2025, entry of the *Order (I) Approving the Form, Content, and Manner of Notice of the Disclosure Statement Supplement, (II) Approving Certain Deadlines and Procedures in Connection with Confirmation, and (III) Granting Related Relief* [Docket No. 1322] (the "Disclosure Statement Supplement Order," and together with the Disclosure Statement Order, the "Disclosure Statement Orders"), which, among other things, approved (a) the Disclosure Statement Supplement as containing adequate information under section 1125 of the Bankruptcy Code, (b) certain modified dates and deadlines in connection with Confirmation, and (c) the distribution of a supplemental solicitation package containing the Disclosure Statement Supplement and the Eighth Amended Plan (together, the "Supplemental Solicitation Package");

cc.    caused the Supplemental Solicitation Package to be distributed on or before April 29, 2025, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the Disclosure Statement Supplement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1448] (the "Disclosure Statement Supplement Affidavit," and together with the Solicitation Affidavit and the Publication Affidavit, the "Affidavits");

dd.    Filed and caused to be served, on April 30, 2025, the *Notice of Filing of Amended Plan Supplement* [Docket No. 1371] (the "First Amended Plan Supplement," and together with the Initial Plan Supplement, the "Plan Supplement"), as evidenced by the *Certificate of Service* [Docket No. 1444];

ee.    obtained, on May 7, 2025, entry of the *Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter into and Perform Its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1429] (the "Sale Order");

ff.    Filed, on May 14, 2025, the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1454] (as amended, modified, or supplemented from time to time the "Plan"), attached hereto as **Exhibit A**;

gg.    Filed, on May 14, 2025, the *Debtors' Memorandum of Law (I) In Support of an Order (A) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (B) Approving the Global Settlement and Release of Claims and Causes of Action by and Among the Global Settlement Parties, and (II) Omnibus Reply to Objections Thereto* [Docket No. 1457] (the "Confirmation Brief");

hh.    caused to be Filed on May 14, 2025, the *Declaration of Craig Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1458] (as may be amended, modified, or supplemented from time to time, the "Voting Report");

ii.    Filed, on May 14, 2025, (a) the *Declaration of David Orlofsky in Support of an Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1465] (the "Orlofsky Confirmation Declaration"), (b) the *Declaration of Christopher Grubb in Support of an Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1466] (the "Grubb Confirmation Declaration"), (c) the *Declaration of Christopher P. Meyer in Support of and Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1467] (the "Meyer Confirmation Declaration"), (d) the *Declaration of Michael J. Wartell in Support of the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1468] (the "Wartell Confirmation Declaration"), and (e) the *Declaration of Jeffrey W. Kopa in Support of an Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1471] (the "Kopa Confirmation Declaration," and together with the Orlofsky Confirmation Declaration, the Grubb Confirmation Declaration, the Meyer Confirmation Declaration, and the Wartell Confirmation Declaration, the "Confirmation Declarations"); and

jj.    Filed, on May 14, 2025, the *Debtors' Second Omnibus (Nonsubstantive) Objection to Proofs of Claim* [Docket No. 1478] (the "TopCo Claims Objection").

This Bankruptcy Court having:

a.    entered, on February 21, 2025, the Disclosure Statement Order;

b.    entered, on April 26, 2025, the Disclosure Statement Supplement Order;

c.       set May 7, 2025, at 5:00 p.m. (prevailing Eastern Time) as the deadline to vote to accept or reject the Plan (the "Voting Deadline");

d.       set May 7, 2025, at 5:00 p.m. (prevailing Eastern Time) as the deadline for Filing objections to the Plan (the "Objection Deadline");

e.       set May 20, 2025, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

f.       considered the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting Report, the Confirmation Hearing Notice, and the Affidavits;

g.       reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Articles XII and XV of the Plan;

h.       considered the Restructuring Transactions and the Global Settlement incorporated and described in the Plan, including in the Plan Supplement;

i.       held the Confirmation Hearing;

j.       heard the statements and arguments made by counsel and parties in interest in respect of Confirmation;

k.       considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding Confirmation and having admitted the same into evidence at the Confirmation Hearing;

l.       overruled, including for any reasons stated on the record of the Confirmation Hearing, any and all objections to Confirmation or approval of the Global Settlement, and all statements and reservations of rights not consensually resolved, waived, settled, or withdrawn unless otherwise indicated herein or on the record at the Confirmation Hearing; and

m.      considered the pleadings and other documents Filed and all evidence and arguments proffered or otherwise presented at or with respect to the Confirmation Hearing.

NOW, THEREFORE, the Bankruptcy Court having found that the Confirmation Hearing Notice and the opportunity for any party in interest to object to Confirmation or approval of the Global Settlement have been adequate and appropriate as to all parties affected or to be affected by the Plan and the Restructuring Transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in

the documents Filed in support of Confirmation and the Global Settlement, and all evidence proffered or adduced by counsel at the Confirmation Hearing, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of Law, and orders:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Findings of Fact and Conclusions of Law**

1.     The findings of fact and the conclusions of Law set forth and incorporated in this Confirmation Order and on the record of the Confirmation Hearing (which are incorporated into this Confirmation Order by this reference) constitute the Bankruptcy Court's findings of fact and conclusions of Law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of Law, shall also constitute a conclusion of Law.  Each conclusion of Law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.     Jurisdiction, Venue, and Core Proceeding**

2.     The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be approved and confirmed.  Venue is proper before the Bankruptcy Court pursuant to sections 1408 and 1409 of the Judicial Code.  Confirmation of the Plan and

approval of the Global Settlement are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

**C.      Eligibility for Relief**

3.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of These Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by Filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On November 5, 2024, the Bankruptcy Court entered the *Order Authorizing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 88] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 15, 2025, the Debtors appointed a fee examiner [Docket No. 747].

**E.      Creditors' Committee Appointment**

5.      On November 19, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 188].

**F.      Objections**

6.      Any resolution of objections to Confirmation or approval of the Global Settlement explained on the record at the Confirmation Hearing is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with

respect to unresolved Cure Costs), if any, related to Confirmation or approval of the Global Settlement are overruled on the merits.

**G.      Plan Supplement**

7.      The documents identified in the Plan Supplement were Filed as required and notice of such documents was (a) appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and (b) in compliance with the provisions of the Plan, the Disclosure Statement Orders, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth therein), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date in accordance with the terms of the Plan, this Confirmation Order, the Sale Order, the Bankruptcy Code, and the Bankruptcy Rules.

**H.      Disclosure Statement Order**

8.      On February 21, 2025, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) fixed the Voting Record Date as January 31, 2025, (c) approved the Solicitation Package and procedures for distribution thereof, (d) approved the form of the Ballots (as defined

in the Disclosure Statement), (e) approved the Voting Procedures, and (f) set the Confirmation Hearing and established related notice and objection procedures.

9.      On April 26, 2025, the Bankruptcy Court entered the Disclosure Statement Supplement Order, which, among other things, (a) approved the Disclosure Statement Supplement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) approved certain modified dates and deadlines, including May 7, 2025, at 5:00 p.m. (prevailing Eastern Time) as the Objection Deadline and the Voting Deadline, and May 20, 2025, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing, and (c) approved the distribution of the Supplemental Solicitation Package. The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims or Equity Interests in the Voting Classes to have made an informed decision to accept or reject the Plan.

**I.      Solicitation and Notice**

10.     The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

11.     As described in the Voting Report, the Solicitation Package and the Supplemental Solicitation Package were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Orders.  The solicitation of votes on the Plan complied with the Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with sections 1125 and 1126 and all other applicable

sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, Laws, and regulations.

12.     As described in the Voting Report and the Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for Filing and serving objections to Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable Law and rules, and no other or further notice is or shall be required.

**J.      Service of Opt-In Form**

13.     The process described in the Voting Report that the Debtors and the Claims Agent followed to identify the relevant parties on which to serve the applicable Ballot or notice of non-voting status and Opt-In Form (as defined in the Disclosure Statement) and to distribute the notice of non-voting status and Opt-In Form (a) is consistent with practices used in other complex chapter 11 cases and (b) was reasonably calculated to ensure that each Holder of Claims and Equity Interests in each Class was informed of its ability to opt in to the Third-Party Release and the ramifications for electing not to timely do so.  For the avoidance of doubt, any party that elected in the Ballot or Opt-In Form to opt in to the Third-Party Release and timely submitted such election to the Claims Agent in accordance with the Voting Procedures or the notice of non-voting status, as applicable, prior to any deadline to submit a Ballot, whether under any original or extended deadline, shall be a Released Party and a Releasing Party under the Plan.

**K.      Voting Report**

14.     Prior to the Confirmation Hearing, the Debtors Filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and

conducted in accordance with the Disclosure Statement Orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, Laws, and regulations.

15.     As set forth in the Plan, Holders of Claims in Classes 3, 4, 5, 6, 7, 8-A, and 8-B (collectively, the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Voting Procedures.  In addition, Holders of Claims in Classes 1 and 2 are Unimpaired and conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Depending on whether such Claims and Equity Interests are reinstated or canceled and released without any distribution an account of such Claims or Equity Interests, Holders of Claims and Equity Interests in Classes 9 and 12 are either Unimpaired or Impaired and will be either conclusively deemed to have accepted or conclusively deemed to have rejected the Plan, and in either scenario are not entitled to vote on the Plan.  Holders of Claims and Equity Interests in Classes 10 and 11 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.  Lastly, Class 8-C is vacant, and as such, is deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

16.     As evidenced by the Voting Report, Class 3 (Prepetition ABL Loan Claims), Class 4 (Prepetition First Lien Loan Claims), Class 5 (Prepetition Second Lien Loan Claims), certain subclasses of Class 6 (OpCo General Unsecured Claims),[3] Class 7 (Prepetition HoldCo Loan Claims), Class 8-A (Freedom HoldCo General Unsecured Claims), and Class 8-B (HoldCo

---

[3]     Class 6 voted to reject the Plan with respect to Debtor entities American Freight FFO, LLC, American Freight Franchising, LLC, American Freight Group, LLC, American Freight Management Company, LLC, American Freight Outlet Stores, LLC, Buddy's Franchising and Licensing LLC, Buddy's Newco, LLC, American Freight Franchisor, LLC, American Freight Holdings, LLC, Franchise Group Intermediate B, LLC, and Franchise Group Intermediate Holdco, LLC.

Receivables General Unsecured Claims) voted to accept the Plan in sufficient number and in a sufficient amount to constitute accepting Classes.

**L.    Bankruptcy Rule 3016**

17.    The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately Filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.    Burden of Proof**

18.    The Debtors, as proponents of the Plan and the Global Settlement, have met their burden of proving the applicable elements of sections 1123, 1129(a), and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable, by a preponderance of the evidence or the applicable evidentiary standard for Confirmation of the Plan and approval of the Global Settlement.

**N.    Modifications to Plan**

19.    Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan after solicitation of the Plan, as reflected in the Plan or in this Confirmation Order (including any modifications announced on the record of the Confirmation Hearing) (collectively, the "Plan Modifications"), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim under the Plan.  After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of

votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such Plan Modifications shall be binding and shall apply with respect to the Plan.  All Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Equity Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

**O.    Approval of the Global Settlement**

20.    The Plan embodies the terms of a global settlement (the "Global Settlement") by and among the Debtors, the Creditors' Committee, the Ad Hoc Group consisting of Required Consenting First Lien Lenders, and the Freedom Lender Group (collectively, the "Global Settlement Parties").  The terms of Global Settlement represent a good-faith compromise and settlement of numerous issues and disputes between and among the Global Settlement Parties.  Specifically, pursuant to the Global Settlement, all Intercompany Claims between and among TopCo, the Freedom HoldCo Debtors, the OpCo Debtors, and all other Debtors shall be settled, waived, and/or released, including but not limited to (a) all Intercompany Claims by and between the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors, (b) the allocation of Professional Fee Claims among the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors, and (c) the allocation of approximately $13.25 million in Cash from TopCo to the funding of the Litigation Trust.  The Global Settlement is designed to achieve a reasonable, effective, and value-maximizing resolution of the Chapter 11 Cases.  Entry of this Confirmation

Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the Global Settlement pursuant to Bankruptcy Rule 9019 with respect to each of the Debtors and, among other things, the full and final settlement and release of any Claims and Causes of Actions identified in the Freedom HoldCo Independent Director Report as actionable against any Released Party; provided that the releases of the individuals identified in the Freedom HoldCo Independent Director Report shall not be construed to limit the Litigation Trust's pursuit of the D&O Liability Insurance Policies with respect to Permitted Litigation Claims.

**P.      Approval of the New ABL Facility and the Take-Back Debt Facility**

21.      The New ABL Facility and the Take-Back Debt Facility are (a) essential elements of the Plan, (b) necessary for Confirmation and the consummation of the Plan, and (c) critical to the overall success and feasibility of the Plan and the operations of the Reorganized Debtors. The economic terms of the New ABL Facility and the Take-Back Debt Facility are contained in the Plan Supplement. Entry into both the New ABL Facility and the Take-Back Debt Facility is in the best interests of the Debtors, their Estates, and all Holders of Claims or Equity Interests. The Debtors have exercised reasonable business judgment in determining to enter into both the New ABL Facility and the Take Back Debt Facility and have provided sufficient and adequate notice of the material terms of the New ABL Facility and the Take-Back Debt Facility in the Plan Supplement. The terms and conditions of the New ABL Facility and the Take-Back Debt Facility, as described in the Plan Supplement, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with fiduciary duties, are supported by reasonably equivalent value and fair consideration, and have been negotiated in good faith and at arm's length. Any credit extended, loans made or deemed made, Liens granted, or fees paid or to be paid pursuant to the New ABL Facility and the Take-Back Debt Facility, as applicable, are deemed to have been extended, issued, granted, and made or deemed made in good faith and for legitimate business

purposes, shall not be subject to recharacterization for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other avoidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law.  Each party to the New ABL Facility and the Take-Back Debt Facility, as applicable, may rely upon the provisions of this Confirmation Order in closing the New ABL Facility and the Take-Back Debt Facility, as applicable.

**Q.    Issuance of Reorganized Common Equity**

22.    On the Effective Date, subject to the terms and conditions of the Plan, New TopCo shall be authorized to issue the Reorganized Common Equity to Holders of Prepetition First Lien Loan Claims, Holders of Allowed Prepetition Second Lien Loan Claims, and certain Holders of DIP Claims, pursuant to the terms and conditions of the Plan, the New Organizational Documents, and the DIP Credit Agreement, which terms shall be deemed valid, binding, and enforceable against each Entity receiving Reorganized Common Equity.  The issuance of Reorganized Common Equity pursuant to the Plan is authorized without the need for further limited liability company or corporate action and without any further action by any Holder of a Claim or Equity Interest, and all of the Reorganized Common Equity issued or issuable pursuant to the Plan shall be duly authorized, validly issued, fully paid, and nonassessable, shall not be subject to recharacterization for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other avoidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law.  Each distribution and issuance referred to in Article VII of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents.  Any Entity's acceptance of Reorganized Common Equity shall be deemed as its agreement to the New

Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms.

**R.    Litigation Trust**

23.    As set forth in <u>Section 7.10</u> of the Plan, in connection with the Global Settlement, on the Effective Date, (a) the applicable Debtors shall execute the Litigation Trust Agreement and shall take such steps as necessary to establish the Litigation Trust in accordance with the terms of the Plan (including the Plan Supplement and the Litigation Trust Agreement contained therein) and the beneficial interests therein shall be for the benefit of (i) Holders of Allowed Prepetition First Lien Loan Claims, (ii) Holders of Allowed Prepetition Second Lien Loan Claims, (iii) Holders of Allowed OpCo General Unsecured Claims, (iv) Holders of Allowed Freedom HoldCo General Unsecured Claims, and (v) Holders of Allowed Prepetition HoldCo Loan Claims, with each such party being a beneficiary of the Litigation Trust, and (b) the applicable Debtors shall irrevocably transfer, cause to be transferred, and shall be deemed to have irrevocably transferred, all of their rights, title and interest in the Litigation Trust Assets to the Litigation Trust for the benefit of all beneficiaries of the Litigation Trust in accordance with the terms of the Plan and the Litigation Trust Agreement.  Pursuant to section 1141 of the Bankruptcy Code, such Litigation Trust Assets shall automatically vest in the Litigation Trust free and clear of all Claims, Liens, encumbrances, or interests, except as otherwise set forth in the Plan or the Litigation Trust Agreement.

24.    The (a) establishment, purpose, and administration of the Litigation Trust, (b) appointment, rights, and powers, of the Litigation Trustee and the Litigation Trust Advisory Board, and (c) treatment of the Litigation Trust for federal income tax purposes, among other things, shall be governed by the Litigation Trust Agreement.  On and after the Effective Date, the Litigation Trustee shall be authorized, in accordance with the terms of the Plan and the Litigation

Trust Agreement, to take such other actions as may be necessary or desirable to make any distributions on account of any Litigation Trust Assets.  The granting of the Litigation Trust Units shall not be subject to recharacterization for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other avoidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law.  The Litigation Trustee, in consultation with the Litigation Trust Advisory Board, shall have the sole discretion with respect to the prosecution, funding, and settlement or other resolution of the Permitted Litigation Claims and the distribution of property of the Litigation Trust, subject to the Litigation Trust Units Allocations and the terms of the Plan and the Litigation Trust Agreement.

25.    [To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy Law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Reorganized Debtors on behalf of the Litigation Trust.  The Litigation Trustee shall be deemed to have been designated as a representative of the Reorganized Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Reorganized Debtors for the benefit of the Litigation Trust Beneficiaries, including any Litigation Trust Assets deemed to have been retained by the Reorganized Debtors on behalf of the Litigation Trust until such transfer restrictions are removed or the Reorganized Debtors receive or become entitled to receive the net proceeds of such Litigation Trust Assets that can be distributed.]

S.    **Compliance with the Bankruptcy Code (11 U.S.C. § 1127)**

26.    The Debtors have complied with section 1127 of the Bankruptcy Code with respect to the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**T.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

27.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

    **a)     Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

28.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

      **i)     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

29.     The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. Article IV of the Plan provides for the separate classification of Claims and Equity Interests into 14 Classes based on differences in the legal nature or priority of such Claims and Equity Interests (other than DIP Claims, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims, each of which are addressed in Article III of the Plan and are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Equity Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests

within that Class.  The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii)    Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).

30.    The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article IV of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired.  Article IV of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 3, 4, 5, 6, 7, 8-A, 8-B, 8-C, 10, and 11.  Holders of Claims and Equity Interests in Classes 10 and 11 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.  Holders of Claims and Equity Interests in Classes 9 and 12 are deemed to have accepted or deemed to have rejected the Plan depending on whether such Claims and Equity Interests are reinstated or canceled and released without any distribution an account of such Claims or Equity Interests.  Class 8-C contains no Claims and is therefore vacant.  As such, Class 8-C shall be eliminated from the Plan for purposes of voting to accept or reject the Plan, and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### iii)    No Discrimination (11 U.S.C. § 1123(a)(4)).

31.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article IV of the Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### iv)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

32.    The provisions of the Plan, including Article VII thereof, together with the exhibits and attachments thereto (including the Plan Supplement), satisfy the requirements of

section 1123(a)(5) of the Bankruptcy Code and provide in detail the adequate and proper means for the implementation of the Plan, including, among other things:  (a) the good faith compromise and settlement of Claims and Equity Interests in connection with the Global Settlement; (b) the authorization for the Debtors, the Reorganized Debtors, or New TopCo, as applicable, to take all actions necessary to effectuate the Plan and the Restructuring Transactions, including, without limitation, the Plan Equitization Transaction and the Partial Sale Transaction; (c) the funding and sources for distributions under the Plan, including Cash; (d) the consummation of the New ABL Facility; (e) the consummation of the Take-Back Debt Facility; (f) the issuance and distribution of Reorganized Common Equity; (g) the adoption of the New Organizational Documents; (h) the consummation of various corporate or other similar transaction steps necessary to implement the new corporate and organizational structure upon emergence; (i) the formation of the Litigation Trust, the execution of the Litigation Trust Agreement, the appointment of the Litigation Trustee and the Litigation Trust Advisory Board, and the transfer of the Litigation Trust Assets, including the Permitted Litigation Claims and the Litigation Trust Escrow Amount, to the Litigation Trust; (j) the authorization, approval, and entry into corporate actions under the Plan; (k) the creation of the Professional Fee Escrow Account; (l) the appointment of the New Boards; (m) the adoption and implementation of the Management Incentive Plan; (n) the preservation and vesting of the Reorganized Debtors' Retained Causes of Action in the Reorganized Debtors; (o) the preservation of the D&O Liability Insurance Policies in accordance with the terms set forth in the Plan; (p) except as otherwise set forth in the Plan, the continued corporate existence of the Debtors; (q) the cancellation of existing agreements and Equity Interests; (r) the assumption of certain employment obligations; and (s) the effectuation and implementation of further transactions contemplated by the Plan, including as may be necessary or appropriate to Reinstate Claims or

Equity Interests or render Claims or Equity Interests Unimpaired, as provided for under the Plan. In addition to these core transactions, the Plan sets forth the other critical mechanics of the Debtors' emergence, such as the vesting of Estate assets in the Reorganized Debtors, the assumption of Executory Contracts and Unexpired Leases, and the settlement of certain Claims and Equity Interests.  The precise terms governing the execution of certain of these transactions are set forth in the applicable Definitive Documents or forms of agreements included in the Plan Supplement. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

**v)     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**

33.     The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code because <u>Article VII</u> of the Plan and the New Organizational Documents prohibit the issuance of new non-voting equity securities to the extent prohibited under section 1123(a)(6) of the Bankruptcy Code and provide for an appropriate distribution of voting power among the classes of securities possessing voting power.  To the extent the beneficial interests in the Litigation Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities Laws, such beneficial interests shall not be non-voting equity securities.    Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

**vi)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).**

34.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. <u>Article VII</u> of the Plan provides that, as of the Effective Date, the members of each of the Debtors' existing boards shall be deemed to have resigned from such board, and all of the initial members of the New Boards shall be appointed in accordance with the New Organizational Documents. The initial members of the New Boards were identified in <u>Exhibit A</u> of the Plan Supplement [Docket No. [●]].  Each such member of the New Boards shall serve from and after the Effective

23

Date pursuant to the terms of the applicable New Organizational Documents or the applicable Organizational Documents of such Reorganized Debtor or New TopCo, as applicable, and may be replaced or removed in accordance therewith, as applicable.

35.    The foregoing manner of selection of the officers, directors, or trustees (or any successor of any officer, director, or trustee) of the Reorganized Debtors is consistent with the interests of all Holders of Claims and Equity Interests and with public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### vii)    Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

36.    The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

### (a)    Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).

37.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Article X of the Plan provides that any Executory Contracts and Unexpired Leases (a) not previously assumed, (b) not previously assumed and assigned in accordance with the Sale Order or other order approving such assumption and assignment, (c) not previously rejected pursuant to an order of the Bankruptcy Court, and (d) identified on the Assumed Contracts List will be assumed effective as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and the Confirmation Order, except any Executory Contract or Unexpired Lease (i) identified on the Rejected Contracts/Lease List, (ii) that is the subject of (A) a separate motion or notice to reject, assume, or assume and assign or a Cure Dispute that is pending as of the Confirmation Date or (B) an order of the Bankruptcy Court that is not yet a Final Order, (iii) that previously expired or terminated pursuant to its own terms (disregarding any terms

the effect of which is invalidated by the Bankruptcy Code), (iv) of the American Freight Debtors that is not otherwise assumed or included on the Assumed Contracts List, (v) that, in the event the Partial Sale Transaction is consummated prior to the Effective Date, relates to the Vitamin Shoppe Debtors, and is not otherwise assumed pursuant to the Sale Order or included on the Assumed Contracts List, (vi) that, in the event the Partial Sale Transaction is not consummated prior to the Effective Date, relates to the Vitamin Shoppe Debtors, is not listed on Schedule 1 of the Sale Order, or (vii) of Franchise Group, Inc. that is not otherwise assumed, assumed and assigned, or included on the Assumed Contracts List.  For the avoidance of doubt, except as otherwise set forth in the Plan or as included on the Assumed Contracts List, all Executory Contracts and Unexpired Leases of the American Freight Debtors, Franchise Group, Inc., and, in the event that the Partial Sale Transaction is consummated prior to the Effective Date, the Vitamin Shoppe Debtors shall be rejected as of the Effective Date.

38.    In the event the Partial Sale Transaction is consummated prior to the Effective Date, to the extent assumption has not already occurred, the Assumed Contracts to be assumed and assigned in connection with such Partial Sale Transaction will be assumed (unless previously assumed pursuant to a separate order of the Bankruptcy Court) and assigned to the Buyer pursuant to the Sale Order in accordance with the applicable Sale Documents.  In the event the Partial Sale Transaction is not consummated prior to the Effective Date, the Debtors shall assume the Executory Contracts and Unexpired Leases of the Vitamin Shoppe Debtors included on Schedule 1 of the Sale Order, except to the extent any such Executory Contracts or Unexpired Leases (a) are listed on the Rejected Contracts/Leases List or (b) were previously assumed pursuant to a separate order of the Bankruptcy Court.

39.     Notwithstanding anything to the contrary in the Plan and in the Restructuring Support Agreement, the Debtors or the Reorganized Debtors, as applicable, subject to the Definitive Document Consent Rights, reserve the right to amend or supplement the Rejected Contracts/Lease List in their discretion prior to the later of (a) the Effective Date and (b) seven (7) days after the date on which the Bankruptcy Court determines that, with respect to an Executory Contract subject to a Cure Dispute, the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List (or, in either case, such later date as may be agreed with a counterparty); provided that the Debtors shall give prompt notice of any such amendment or supplement to any affected counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.

40.     Neither the exclusion nor inclusion of any contract or lease in the Rejected Contracts/Lease List or Assumed Contracts List, as applicable, nor anything contained in the Plan or the Sale Documents, nor the Debtors' delivery of a notice of the proposed assumption and proposed Cure Cost to any contract and lease counterparties set forth in the Assumed Contracts List (which was Filed with the Plan Supplement), shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.  If there is a dispute regarding a Debtor's or Reorganized Debtor's liability under an assumed Executory Contract or Unexpired Lease, the Reorganized Debtors shall be authorized to move to have such dispute heard

26

by the Bankruptcy Court pursuant to Article XIII of the Plan.  If the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List, the Debtors shall have the right to reject such Executory Contract or Unexpired Lease, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

41.    The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Equity Interests, and other parties in interest in these Chapter 11 Cases.

**(b)    Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

42.    **Compromise and Settlement.**  Pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, as applicable, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, Causes of Action, or controversies (a) belonging to the Debtors or the Debtors' Estates as set forth in the Plan and (b) by and among the Debtors, the Creditors' Committee, the Freedom Lender Group, the DIP Lenders, and the Ad Hoc Group consisting of Required Consenting First Lien Lenders.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Equity Interests, Causes of Action, and controversies belonging to the Debtors or the Debtors' Estates pursuant to section 1123 of the Bankruptcy Code and, with respect to the Global Settlement by and among the Global Settlement Parties, pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code.

The entry of this Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims, Equity Interests, Causes of Action, or controversies, and the Bankruptcy Court's finding that all such compromises or settlements are:  (i) in the best interest of the Debtors, the Reorganized Debtors, and their respective Estates, and of Holders of Claims or Equity Interests; and (ii) fair, equitable, and reasonable.

43.    **Approval of the Global Settlement**.    Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of these Chapter 11 Cases, this Confirmation Order constitutes the Bankruptcy Court's approval of the Global Settlement embodied in the Plan and this Confirmation Order (including, for the avoidance of doubt, with respect to TopCo), because, among other things:  (a) the Global Settlement reflects a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent the Global Settlement, there is a likelihood of complex and protracted litigation involving the attendant expense, inconvenience, and delay that have a possibility to derail the Debtors' chapter 11 objectives and efforts; (c) each of the parties supporting the Global Settlement is represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) the Global Settlement is the product of arm's-length bargaining and good-faith negotiations between sophisticated parties; and (e) the Global Settlement is fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors, their respective Estates and property, creditors, and other parties in interest, will maximize the value of the Estates, and are essential to the successful implementation of the Plan.  Based on the foregoing, the Global Settlement satisfies

the requirements of applicable Third Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

44.    **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Section 12.2 of the Plan (the "Debtor Release").  The Debtor Release is an essential component of the Plan.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is given and made after due notice and opportunity for hearing.  The Debtor Release is approved.

45.    The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith, arm's-length negotiations between sophisticated parties that had representation from able counsel and advisors.  The Debtor Release was critical to obtaining support for the Plan and the Global Settlement contained therein.  The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' successful emergence from chapter 11.  For instance, the Debtors' current directors, officers, and other agents retained as the Confirmation Date, as well as the creditors' professionals and other agents, have been instrumental in negotiating, formulating, and implementing the Restructuring Transactions contemplated under the Plan, including the Global Settlement embodied therein.

46.    Each of the Released Parties share a common goal with the Debtors in seeing the Plan confirmed and implementing the transactions contemplated thereby.  The record shows that the releases relating to the Debtors' current and former directors, officers, and managers (except for any of the Debtors' former directors, officers, or managers who are Excluded Parties) are

appropriate because the Debtors' directors, officers, and managers share an identity of interest with the Debtors, have supported and made substantial contributions to the success of the Plan and these Chapter 11 Cases, and because the Debtors will assume certain indemnification obligations of certain of the foregoing parties under the Plan that will be honored by the Reorganized Debtors in accordance with the terms of the Plan.  The evidence, including the Meyer Confirmation Declaration and the Wartell Confirmation Declaration, establishes that the Debtors conducted a thorough analysis of the Claims and Causes of Action in determining to grant the Debtor Release, and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

47.    Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, the Reorganized Debtors, and all Holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; (f) appropriately tailored under the facts and circumstances of these Chapter 11 Case; and (g) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

48.    **Releases by Holders of Claims and Equity Interests.**  Consistent with (a) sections 157 and 1334(a) and (b) of title 28 of the United States Code and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional

adjudicatory authority to approve the release set forth in <u>Section 12.3</u> of the Plan (the "<u>Third-Party Release</u>").  The Third-Party Release (solely with respect to the Releasing Parties) is given and made after due notice and opportunity for hearing.  The Third-Party Release is approved.

49.      The Third-Party Release (solely with respect to the Releasing Parties) is consensual with respect to the Releasing Parties.  The Ballots sent to all Holders of Claims and Equity Interests entitled to vote, the non-voting status notices and Opt-In Forms sent to Holders of Claims and Equity Interests not entitled to vote, and the Confirmation Hearing Notice sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan. Additionally, Holders of Claims or Equity Interests who elected to grant the Third-Party Release demonstrated their affirmative consent by returning, as applicable, an Opt-In Form or Ballot with the optional box checked to indicate that such Holder wishes to grant such Third-Party Release. Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to Confirmation of the Plan, the opportunity to opt in to the Third-Party Release, the opportunity to object to the Plan and the Third-Party Release contained therein, and were properly informed that Holders of Claims against or Equity Interests in the Debtors were being given the opportunity to opt in to the release of all Claims and Cause of Action against the Debtors and the Released Parties.  Additionally, the release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the non-voting status notices, and the Opt-In Forms.  Thus, the Third-Party Release is consensual as to those Releasing Parties that did not specifically and timely object.

50.      **Exculpation.**  Consistent with (a) sections 157 and 1334(a) and (b) of title 28 of the United States Code and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in

Section 12.4 of the Plan (the "Exculpation").  The Exculpation is an integral part of the Debtors'
overall restructuring efforts and is an essential element of the Plan.  The evidence before the
Bankruptcy Court demonstrates that the Exculpation was critical to the parties' willingness to
support the Debtors' chapter 11 efforts, these parties would not have been so inclined to participate
in the Plan process without the promise of exculpation, and such parties did so in reliance upon
the protections afforded in the Exculpation.  The Exculpation appropriately affords protection to
the Exculpated Parties who constructively participated in and contributed to the Debtors' chapter
11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored
to protect the Exculpated Parties from inappropriate litigation.

51.    **Discharge of Claims and Termination of Equity Interests.**  Except as otherwise
provided for in the Plan, effective as of the Effective Date, with respect to the
Non-Liquidating Debtors:  (a) the rights afforded in the Plan and the treatment of all Claims and
Equity Interests (other than any Existing Intercompany Equity Interests that are Reinstated
thereunder) shall be in exchange for and in complete satisfaction, discharge, and release of all
Claims and Equity Interests of any nature whatsoever, including any interest accrued on such
Claims from and after the Petition Date, against the Debtors or any of their assets, property or
Estates; (b) the Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether
any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims
and Equity Interests (other than any Existing Intercompany Equity Interests that are Reinstated
thereunder) shall be satisfied, discharged, and released in full, and the Debtors' liability with
respect thereto shall be extinguished completely, including any liability of the kind specified under
section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting
against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns,

and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the American Freight Debtors and, in the event the Partial Sale Transaction is consummated prior to the Effective Date, the Vitamin Shoppe Debtors.

52.    **Injunction.** Section 105(a) and sections 1123(b)(3) and (b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in <u>Section 12.6</u> of the Plan (collectively, the "<u>Injunction</u>"), and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code. The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release (solely with respect to the Releasing Parties), and the Exculpation provisions in <u>Article XII</u> of the Plan. The Injunction is appropriately tailored to achieve those purposes.

53.    **Setoffs and Recoupment.** Except as otherwise provided in the Plan or in the Plan Supplement, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 thereof), applicable bankruptcy or non-bankruptcy Law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that the applicable Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); <u>provided</u> that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the applicable Reorganized Debtor, of any such claims, rights, and Causes of Action. In no event shall

any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Causes of Action of the Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or Proof of Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

54.     Notwithstanding any provisions to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, all setoff rights of counterparties to Assumed Contracts and/or their Affiliates, if available under applicable Law and the Assumed Contract, are fully preserved, including, but not limited to:  (a) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Assumed Contract with the Debtors, or any successors to the Debtors, under the Plan; (b) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (c) assertion of rights of setoff or recoupment, if any, as a defense to any Claim.

55.     **Release of Liens.**  Except as otherwise provided in the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its

successors and assigns.  Any Holder of a Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any Collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and Filing or recording of such releases.  The presentation or Filing of this Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

56.    To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or any administrative agent, collateral agent, or indenture trustee under any Take-Back Debt Facility (at the expense of the Debtors or the Reorganized Debtors, as applicable) that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of Uniform Commercial Code termination statements, deposit account control agreement terminations, and any other applicable filings or recordings, and the Reorganized Debtors shall be entitled to file Uniform Commercial Code terminations or to make any other such filings or recordings on such Holder's behalf.

**viii.    Additional Plan Provisions (11 U.S.C. § 1123(b)(6))**

57.    The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**ix.    Cure of Defaults (11 U.S.C. § 1123(d)).**

58.    <u>Article X</u> of the Plan provides for the satisfaction of Cure Costs associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such Executory Contract or Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan (it being understood that, in the event the Partial Sale Transaction is consummated prior to the Effective Date, the terms of any Sale Documents and the Sale Order shall govern the cure of defaults, assumption and assignment, and compliance with section 365 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases assumed and assigned pursuant to such Sale Documents and Sale Order), the Debtors shall pay any Cure Costs, if monetary, in full in Cash either (a) on the Effective Date or as soon as reasonably practicable thereafter or, (b) in the event of a Cure Dispute, and following resolution of such Cure Dispute (either consensually or through judicial decision), upon the later of (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) seven (7) days after the date on which such Cure Dispute has been resolved.  The Debtors and the Reorganized Debtors, as applicable, reserve the right at any time (including, with respect to the Reorganized Debtors, after the Effective Date) to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute.  If the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List, the Debtors or the Reorganized Debtors, as applicable, shall have the right to reject

such Executory Contract or Unexpired Lease by amending the Rejected Contracts/Lease List to include such Executory Contract or Unexpired Lease and providing prompt notice of any such amendment to any applicable counterparty, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

59.     Any Cure Disputes will be determined in accordance with the procedures set forth in <u>Article X</u> of the Plan and applicable bankruptcy and non-bankruptcy Law.  As such, the Plan provides that the Debtors will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**b)  The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

60.     The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128 of the Bankruptcy code, and Bankruptcy Rules 3017, 3018, and 3019.

61.     The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Disclosure Statement Order approving, among other things, the Solicitation Package and the Voting Procedures.

62.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Orders, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable

rules, Laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in <u>Section 12.4</u> of the Plan.

### c) Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).

63.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and the Restructuring Transactions (and all documents necessary to effectuate the Plan (including the Plan Supplement)) in good faith and not by any means forbidden by Law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the Filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were Filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the record of the Disclosure Statement Hearing, the Disclosure Statement Supplement, the record of the Confirmation Hearing, and all the other proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

64.     The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders and parties in interest in these Chapter 11 Cases including, but not limited to: (a) the Creditors' Committee; (b) the DIP Lenders; (c) the Ad Hoc Group consisting of Required Consenting First Lien Lenders; (d) the Freedom Lender Group; and (e) the ABL Lenders.  Further, the Global Settlement and the Plan's exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105,

1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code.  Accordingly,

the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**d)  Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

65.    Payments made or to be made by the Debtors for services or for costs and expenses

incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and

incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the

Bankruptcy Court as reasonable.    The Plan, therefore, satisfies the requirements of

section 1129(a)(4) of the Bankruptcy Code.

**e)  Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

66.    The Plan sets forth the process for appointment of the members of the New Boards,

and the identities of the members the New Boards were disclosed (to the extent known) in the Plan

Supplement.  The Plan sets forth the process for appointment of the Litigation Trustee, and the

identity of the initial Litigation Trustee was disclosed in the Plan Supplement.  The appointment

to, or continuance in, office of the applicable persons is consistent with public policy.

Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy

Code.

**f)  No Rate Changes (11 U.S.C. § 1129(a)(6)).**

67.    The Plan does not contain any rate changes subject to the jurisdiction of any

governmental regulatory commission and will not require governmental regulatory approval.

Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**g)  Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

68.    The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing

establishes that each Holder of Allowed Claims or Equity Interests in each Class will recover as

much or more value under the Plan on account of such Claim or Equity Interest, as of the Effective

Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective

Date under chapter 7 of the Bankruptcy Code. The Liquidation Analysis (as defined in the

Disclosure Statement and attached as Exhibit B thereto), and the other evidence related thereto, as

supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, (a) are

reasonable, persuasive, and credible as of the dates such analysis or evidence was prepared,

presented, or proffered, (b) utilize reasonable and appropriate methodologies and assumptions,

(c) have not been controverted by other evidence, and (d) establish that Holders of Allowed Claims

and Equity Interests in each Class will recover at least as much under the Plan on account of such

Claim or Equity Interest, as of the Effective Date, as such Holder would receive if the Debtors

were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

69.     Classes 3, 4, 5, 6 (at certain Debtors), 7, 8-A, and 8-B voted in favor of

Confirmation, and Holders of Claims and Equity Interests in all Impaired Classes will recover at

least as much as a result of the confirmation of the Plan as they would in a hypothetical chapter

7 liquidation. Moreover, the Liquidation Analysis demonstrates that, with respect to TopCo,

Holders of Class 8-C Claims (if any) would receive no recovery in a hypothetical chapter

7 liquidation because Tranche A DIP Claims (which, for the avoidance of doubt, include all DIP

Obligations on account of the New Money DIP Loans, including the Backstop Premium, the

Commitment Premium, and the Exit Premium (each as defined in the Final DIP Order)) have

priority under the Final DIP Order with respect to TopCo and must be paid in full before any

distribution can be made to Class 8-C. Accordingly, the Debtors have demonstrated that the Plan

is in the best interests of their creditors, and the Plan satisfies the requirements of

section 1129(a)(7) of the Bankruptcy Code.

h)  **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

70.    The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  As evidenced by the Voting Report, each of the Voting Classes have voted to accept the Plan, with the exception of certain Debtor entities in Class 6.  Class 9 (Intercompany Claims) and Class 12 (Intercompany Interests) are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan, or Impaired and deemed to have rejected the Plan, depending on whether Claims and Equity Interests in Class 9 and Class 12 are reinstated or canceled and released without any distribution an account of such Claims or Equity Interests.  Class 8-C (TopCo General Unsecured Claims) is vacant, and as such, is deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  Class 10 (Subordinated Claims) and Class 11 (Existing TopCo Equity Interests) are Impaired Classes that will not receive or retain any property under the Plan on account of the Claim or Interest in each such Class, are not entitled to vote on the Plan, and are deemed to have rejected the Plan (collectively, together with Class 9 and Class 12 as applicable, the "Deemed Rejecting Classes").  To the extent a Class contains Claims or Equity Interests eligible to vote, and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed to have accepted the Plan.  Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to have rejected the Plan.

**i) "Cram Down" Requirements (11 U.S.C. § 1129(b)).**

71.    Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) of the Bankruptcy Code have been met.  *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes.  The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Equity Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Equity Interest and (b) no Holder of a Claim or Equity Interest in a Class senior to such Class is receiving more than 100 percent on account of its Claim or Equity Interest.  Accordingly, the Plan is fair and equitable to all Holders of Claims and Equity Interests in the Deemed Rejecting Classes. *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated creditors and Equity Interest Holders will receive substantially similar treatment on account of their Claims and Equity Interests irrespective of Class.  *Finally*, Holders of Claims in the Voting Classes voted to accept the Plan in sufficient number and in sufficient amount to constitute impaired accepting classes under the Bankruptcy Code.  The Plan may therefore be confirmed even though not all Impaired Classes have voted to accept the Plan.

**j) Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

72.    The treatment of DIP Claims, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims under <u>Article III</u> of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k)  Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

73.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, all Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).  Additionally, as set forth in the Voting Report, the Classes that are not entitled to receive or retain any property under the Plan are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Further, Class 8-C (TopCo General Unsecured Claims) is vacant and there are no valid General Unsecured Claims at TopCo.  Accordingly, because there are no Class 8-C Claims at TopCo, and all other Claims at TopCo are Unimpaired, section 1129(a)(10) is not applicable with respect to the Plan at TopCo and/or the Debtors have otherwise satisfied section 1129(a)(10) of the Bankruptcy Code as it relates to TopCo.

**l)   Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

74.      The evidence proffered or adduced at or prior to the Confirmation Hearing and in the Confirmation Declarations and the Confirmation Brief: (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Reorganized Debtors, as applicable, will have sufficient funds available to meet their obligations under the Plan.  The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**m) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

75.      <u>Article III</u> of the Plan provides for the payment of all fees due and payable by the Debtors pursuant to section 1930(a) of title 28 of the United States Code on the Effective Date,

and after the Effective Date, each of the Reorganized Debtors (or the Disbursing Agent acting on behalf of each of the Reorganized Debtors) shall pay any and all applicable U.S. Trustee Fees in full in Cash when due and payable.  The Debtors and the Reorganized Debtors shall remain obligated to pay any applicable U.S. Trustee Fees until the earliest of the closure, dismissal, or conversion to a case under chapter 7 of the Bankruptcy Code of the case of that particular Debtor for whom the Debtors or the Reorganized Debtors, as applicable, is responsible.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**n) Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), 1129(a)(14), (15), and (16)).**

76.    The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o) Only One Plan (11 U.S.C. § 1129(c)).**

77.    Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p) Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

78.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q) Not a Small Business Case (11 U.S.C. § 1129(e)).**

79.    These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r) Satisfaction of Confirmation Requirements.**

80.    Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**U.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

81.    Each of the conditions precedent to the Effective Date, as set forth in <u>Section 11.2</u> of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with <u>Section 11.3</u> of the Plan.

**V.    Implementation**

82.    The Plan, including all documents contained in the Plan Supplement and all other relevant and necessary documents, have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors, their Estates, and the Reorganized Debtors, as applicable, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local Law.  The documents and agreements are essential elements of the Plan and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The Debtors and the Reorganized Debtors, as applicable, are authorized, without any further notice to or action, order, or approval of the Bankruptcy Court, to finalize, execute, and deliver all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

**W.    Good-Faith Solicitation (11 U.S.C. § 1125(e)**

83.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The

Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to act in good faith.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code, and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in <u>Section 12.4</u> of the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## X.    Executory Contracts and Unexpired Leases

84.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan, the Plan Supplement, or the Sale Documents.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Equity Interests, and other parties in interest in these Chapter 11 Cases.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

**Y.      Findings of Fact and Conclusions of Law**

85.      The above-referenced findings of fact and conclusions of Law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of Law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of Law, it is deemed so, and vice versa.

**Z.      Confirmation of the Plan**

86.      The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code.  The Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Reorganized Debtors and the Litigation Trustee, as applicable, are hereby approved and authorized.  The Debtors, the Reorganized Debtors, and the Litigation Trustee, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including, without limitation, entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan (including the consent rights contained therein).  The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

87.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

## AA.    Approval of Global Settlement

88.     Following good faith and arm's length negotiations, in exchange for the releases and other valuable consideration provided for in the Plan, the Global Settlement Parties agreed to the Global Settlement.  The Global Settlement provides significant value to the Debtors and their Estates, favorably resolves and avoids potential protracted expensive and uncertain litigation, and enables a prompt and efficient reorganization of the Debtors through the Plan.  Pursuant to the Global Settlement, all Intercompany Claims between and among, TopCo, the Freedom HoldCo Debtors, the OpCo Debtors, and all other Debtors, shall be settled, waived, and/or released, including but not limited to (a) all Intercompany Claims by and between the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors, (b) the allocation of Professional Fee Claims among the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors, and (c) the allocation of approximately $13.25 million in Cash from TopCo to the funding of the Litigation Trust.  The Global Settlement is integral to the development and implementation of the Plan.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Global Settlement, including, for the avoidance of doubt, (i) approval of the releases provided by the Freedom HoldCo Debtors with respect to any Claims or Causes of Action previously identified or preserved by the Freedom HoldCo Independent Director as actionable, (ii) the contribution of approximately $13.25 million in Cash to the funding of the Litigation Trust, and (iii) the release of all Intercompany Claims between and among TopCo,

the Freedom HoldCo Debtors, the OpCo Debtors, and all other Debtors, including the allocation of Professional Fee Claims among the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors.  The Global Settlement is in the best interests of the Debtors, their Estates, Holders of Claims and Equity Interests, and other parties in interest, and is fair, equitable, and reasonable.

89.   The compromises and settlements set forth in the Global Settlement exceed the lowest point in the range of reasonableness.  The benefits and consideration that the Debtors are to provide under the Global Settlement are fair, equitable and adequate consideration for the releases and other consideration the Debtors are to receive under the Global Settlement and constitute reasonably equivalent value therefor, and the transfers contemplated by the Global Settlement are not subject to avoidance under any applicable law or in equity.

90.   The Debtors and the Reorganized Debtors, as applicable, are authorized and directed to make the distributions and transfers contemplated by the Plan in connection with the Global Settlement.

**BB.   Objections Overruled**

91.   To the extent that any objections (including any reservations of rights, joinders, or statements contained therein) to Confirmation or approval of the Global Settlement have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights, joinders, or statements contained therein), except with respect to unresolved Cure Disputes and objections to the assumption or rejection of Executory Contracts and Unexpired Leases, if any, are hereby overruled in their entirety and on the merits in all respects.

92.     All objections to Confirmation or approval of the Global Settlement not Filed and served prior to the Objection Deadline set forth in the Confirmation Hearing Notice or other notices Filed with the Bankruptcy Court (in each case, as may have been extended by the Debtors), if any, are deemed waived and shall not be considered by the Bankruptcy Court.

**CC.    Solicitation**

93.     The solicitation of votes on the Plan complied with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and was appropriate and satisfactory and is approved in all respects.

**DD.    Deemed Acceptance of Plan as Modified**

94.     The Debtors modified the Plan since the commencement of solicitation to incorporate the terms of the Global Settlement and address certain concerns raised by parties in interest.   The Plan Modifications comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Moreover, the Debtors' key constituents affected by such modifications support these changes.  In addition, the Debtors served the Disclosure Statement Supplement on all Holders of Claims and Equity Interests who received a Solicitation Package, providing notice of the key information concerning the Global Settlement, the Plan Modifications in connection therewith, and the extension of the Voting Deadline.  Accordingly, no additional solicitation or disclosure was required on account of the Plan Modifications and all Holders of Claims and Equity Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended. No Holder of a Claim or Equity Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

**EE.    Means for Implementation of the Plan**

95.    The provisions governing the means for implementation of the Plan set forth in Article VII of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to take all actions reasonably necessary to implement the Plan on the terms set forth in Article VII.  Upon the Effective Date, the Debtors or the Reorganized Debtors, as applicable, are authorized to make the payments or other distributions set forth in Article III and Article V of the Plan.

**FF.    Incorporation by Reference**

96.    The terms of the Plan, the Plan Supplement, all exhibits thereto, this Confirmation Order, the Definitive Documents, and all other relevant and necessary documents constitute essential elements of the Plan and shall, on and after the Effective Date, be binding in all respects upon, and shall inure to the benefit of, the Debtors, their Estates and their creditors and equity holders, and their respective successors and assigns, non-Debtor Affiliates, any affected third parties, all Holders of Equity Interests, all Holders of any Claims, whether known or unknown, including, but not limited to, all contract counterparties, leaseholders, Governmental Units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar Entities for the Debtors, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and each of their respective Affiliates, successors, and assigns.

**GG.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

97.    The release, exculpation, injunction, and related provisions set forth in Article XII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date

without further action or notice by this Bankruptcy Court, any of the parties subject to such

provisions, or any other party, including, but not limited to:

a. **Liens**.  The release of Liens provisions set forth in <u>Section 12.8</u> of the Plan are hereby approved.

b. **Releases by the Debtors**.  The Debtor Release provisions set forth in <u>Section 12.2</u> of the Plan are hereby approved.

c. **Third-Party Releases**.  The Third-Party Release provisions set forth in <u>Section 12.3</u> of the Plan are hereby approved.

d. **Exculpation**.  The Exculpation provisions set forth in <u>Section 12.4</u> of the Plan are hereby approved.

e. **Injunction**.  The Injunction provisions set forth in <u>Section 12.6</u> of the Plan are hereby approved.

**HH.    Classifications of Claims and Equity Interests**

98.    The terms of the Plan shall govern the classification of Claims and Equity Interests

for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots

tendered to or returned by the Holders of Claims or Equity Interests in connection with voting on

the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do

not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual

classification of Claims and Equity Interests under the Plan for distribution purposes; (c) may not

be relied upon by any Holder of a Claim or Equity Interest as representing the actual classification

of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be

binding on the Debtors except for voting purposes.

**II.    Plan Supplement**

99.    The documents contained in the Plan Supplement, and any amendments,

modifications, and supplements thereto, and all documents and agreements introduced into

evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments

thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors, the Reorganized Debtors, the Litigation Trustee, and their successors are authorized when they are finalized, executed, and delivered.  Without further order or authorization of this Bankruptcy Court, the Debtors, the Reorganized Debtors, the Litigation Trustee, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan and this Confirmation Order.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

**JJ.    Restructuring Transactions**

100.    Before, on, and after the Effective Date, the applicable Debtors or the Reorganized Debtors or New TopCo, as applicable, may, consistent with the terms of the Restructuring Support Agreement, enter into any transaction and take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions (including any transactions described in, approved by, contemplated by, or necessary to effectuate the Plan), that are consistent with and pursuant to the terms and conditions of the Plan (including the Global Settlement), including, as applicable:   (a) the execution and delivery of appropriate agreements or other documents of reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable Law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of incorporation, merger,

migration, consolidation, or other Organizational Documents with the appropriate governmental authorities pursuant to applicable Law; (d) the execution, delivery, and filing, if applicable, of the New Organizational Documents and the Take-Back Debt Documents; (e) the execution, delivery, and filing, if applicable, of the New ABL Facility; (f) such other transactions that are required to effectuate the Restructuring Transactions, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; and (g) all other actions that the Reorganized Debtors reasonably determine, in consultation with the Required Consenting First Lien Lenders, are necessary or appropriate, including making filings or recordings that may be required by applicable Law.

101.    In the event the Partial Sale Transaction is consummated prior to the Effective Date, the Sale Proceeds shall be used to reduce the DIP Facility and/or the ABL Loans in accordance with the terms of the Sale Order, the DIP Credit Agreement, the Final DIP Order, the ABL Loan Documents, and the Prepetition ABL Intercreditor Agreement, as applicable; provided that, for the avoidance of doubt, all rights of the ABL Credit Agreement Agent and the DIP Agent with respect to the allocation of the Sale Proceeds in accordance with the foregoing are expressly preserved. For the avoidance of doubt, the Assumed Liabilities (as defined under the Asset Purchase Agreement) shall be the sole responsibility of the Buyer even if such Claim is Allowed against the Debtors, and such Claims shall have no recovery from the Debtors under the terms of the Plan.

102.    Notwithstanding anything to the contrary in the Store-Closing and Liquidation Sales Order, the Debtors and the Reorganized Debtors, as applicable, are authorized to take any actions that may be necessary or appropriate to wind down and/or dissolve the Estates of the American Freight Debtors and, in the event the Partial Sale Transaction is consummated prior to the Effective Date, the Vitamin Shoppe Debtors.  The Debtors and the Reorganized Debtors, as

applicable, are authorized to dispose, sell, liquidate, and/or otherwise dispose of any remaining property owned by the American Freight Debtors and, after taking into effect the Partial Sale Transaction in the event it is consummated prior to the Effective Date, the Vitamin Shoppe Debtors.

**KK.    Continued Corporate Existence in Certain Debtors; Vesting of Assets; Dissolution of Certain Debtors**

103.    Except as otherwise provided in the Plan, the Plan Supplement, or as otherwise may be agreed between the Debtors and the Required Consenting First Lien Lenders, each of the Debtors, as Reorganized Debtors, and New TopCo, shall continue to exist on and after the Effective Date as a separate legal Entity with all of the powers available to such legal Entity under and in accordance with the applicable Laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the New Organizational Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable Law.  On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor or New TopCo (including as a Holder of Reorganized Common Equity), each of the Reorganized Debtors and New TopCo, as applicable (and in consultation with the Required Consenting First Lien Lenders), may take such action as permitted by applicable Law and such Reorganized Debtor's or New TopCo's New Organizational Documents, as such Reorganized Debtor or New TopCo, as applicable, may determine is reasonable and appropriate, including, but not limited to, causing:  (a) a Reorganized Debtor or New TopCo to be merged with and into another Reorganized Debtor, or a subsidiary and/or Affiliate of a Reorganized Debtor or New TopCo; (b) a Reorganized Debtor or New TopCo to be dissolved; (c) the conversion of a Reorganized Debtor or New TopCo from one Entity type to another Entity type; (d) the legal name of a Reorganized Debtor or New TopCo to be changed;

(e) the closure of a Reorganized Debtor's or New TopCo's Chapter 11 Case on the Effective Date or any time thereafter; or (f) the reincorporation of a Reorganized Debtor or New TopCo under the Law of jurisdictions other than the Law under which the Debtor currently is incorporated.

104.    Except as otherwise provided in the Plan, this Confirmation Order, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or the Plan Supplement, on the Effective Date, all property of the Estates, wherever located, including the Reorganized Debtors' Retained Causes of Action (but not the Permitted Litigation Claims) and any property, wherever located, acquired by the Debtors under or in connection with the Plan, shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, charges, other encumbrances, and Equity Interests, except for those Claims, Liens, charges, other encumbrances, and Equity Interests arising from or related to the Take-Back Debt Documents or the New ABL Facility Documents.  On and after the Effective Date, except as otherwise provided in the Plan or in this Confirmation Order, each applicable Reorganized Debtor and New TopCo may operate its business(es) and may use, acquire, and dispose of property, wherever located, and each Reorganized Debtor and New TopCo, as applicable, may prosecute, compromise or settle any Claims (including any Administrative Expense Claims and excluding any Permitted Litigation Claims), Equity Interests, and the Reorganized Debtors' Retained Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the Reorganized Debtors and New TopCo may pay the charges that they incur on or after the Effective Date, if any, for Professional Persons' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.  Anything in the Plan to the contrary notwithstanding, any Unimpaired Claims against a Debtor shall remain the obligations solely of such Debtor or such

Reorganized Debtor and shall not become obligations of any other Debtor, Reorganized Debtor, New TopCo, or the Litigation Trust by virtue of the Plan, the Chapter 11 Cases, or otherwise.

**LL.    Preservation of Causes of Action**

105.    In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all of the Reorganized Debtors' Retained Causes of Action, whether arising before or after the Petition Date.  The Reorganized Debtors' rights to commence, prosecute, or settle the Reorganized Debtors' Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary.

106.    In accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Permitted Litigation Claims of the Debtors and their Estates, whether arising before or after the Petition Date.  The Litigation Trust's rights to commence, prosecute, or settle the Permitted Litigation Claims shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary.

107.    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Disclosure Statement Supplement to any Reorganized Debtors' Retained Cause of Action or Permitted Litigation Claim against it as any indication that the Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, will not pursue any and all available Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claim against it.  The Debtors, the Reorganized Debtors, and the Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims against any Entity.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled

in the Plan or a Final Order, the Reorganized Debtors or the Litigation Trust, as applicable, expressly reserve all Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims for later adjudication.

108.    The Reorganized Debtors and the Litigation Trust, as applicable, reserve and shall retain such Reorganized Debtors' Retained Causes of Action and Permitted Litigation Claims, respectively, notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Reorganized Debtors' Retained Causes of Action against any Entity shall vest in the Reorganized Debtors and any Permitted Litigation Claims against any Entity shall vest in the Litigation Trust.  The applicable Reorganized Debtors or the Litigation Trust, through their respective authorized agents or representatives, shall retain and may exclusively enforce any and all such Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims, as applicable.  The Reorganized Debtors or the Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims, respectively, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court except as otherwise released in the Plan.

**MM.  Indemnification Provisions in Organizational Documents**

109.    On and as of the Effective Date, all indemnification obligations of the Debtors that are in place as of the Petition Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, or otherwise) for the current directors, officers, and managers of the Debtors, as well as the attorneys, accountants, investment bankers, and other

professionals of, or acting on behalf of, the Debtors, as applicable, shall be assumed by the applicable Debtor or assumed and assigned by the applicable Debtor and remain in full force and effect after the Effective Date, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose, as applicable; <u>provided</u> that, notwithstanding the foregoing, any indemnification obligations of the Debtors on account of any Permitted Litigation Claims that are transferred to the Litigation Trust or on account of any Claims or Causes of Action that are not being released pursuant to the Plan shall, in each case, not be assumed or assumed and assigned and, in each case, such indemnification obligations and related agreements and documents shall be deemed rejected under the Plan.

**NN.    Sources for Cash Distributions under the Plan**

110.    The Debtors shall fund Cash distributions under the Plan with Cash on hand, including Cash from operations, the American Freight Liquidation Proceeds, the Sale Proceeds, and the proceeds of the DIP Facility.  Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors or the Disbursing Agent in accordance with <u>Article VIII</u> of the Plan.

111.    From and after the Effective Date, subject to any applicable limitations set forth in any agreement entered into on or after the Effective Date (including, without limitation, the New Organizational Documents, the New ABL Facility Documents, and the Take-Back Debt Documents), the Reorganized Debtors shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of managers or directors, as applicable (or other applicable governing bodies), of the applicable Reorganized Debtors deem appropriate.

112.    The distribution of the Prepetition Second Lien Loan Cash Consideration shall be subject to the Prepetition Second Lien Loan Cash Consideration Waiver and the Second Lien Credit Agreement Agent's rights in priority of payment in its capacity as administrative agent and

collateral agent for the Second Lien Lenders pursuant to the Second Lien Credit Agreement.  On the Effective Date, the Second Lien Credit Agreement Agent shall cause the reasonable and documented fees and expenses of the Second Lien Credit Agreement Agent required to be reimbursed under the Second Lien Credit Agreement to be paid to the applicable professionals with proceeds of the Prepetition Second Lien Loan Cash Consideration and prior to making any further distributions on account of the Prepetition Second Lien Loan Claims. Other than the payments described in this paragraph 112, the Second Lien Lenders shall have no further obligation or liability to the Prepetition Second Lien Credit Agreement Agent in connection with the Petition Second Lien Credit Agreement.

**OO.    Take-Back Debt Facility**

113.    On the Effective Date, the Reorganized Debtors shall enter into the Take-Back Debt Facility in the maximum amount necessary to ensure that the Reorganized Debtors are in compliance with the Pro Forma Leverage Cap, which will be made up of a first-lien term loan consisting of certain DIP Claims arising from the Tranche A DIP Loans and the Tranche B DIP Loans, in each case as of the Effective Date, and each being consistent with the terms and conditions set forth in the Restructuring Support Agreement.

114.    On the Effective Date, the agreements with respect to the Take-Back Debt Facility shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Take-Back Debt Facility are being extended, and shall be deemed to have been extended, in good faith, following arm's length negotiations, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any

other applicable non-bankruptcy Law.  On the Effective Date, all of the Liens and security interests to be granted in connection with the Take-Back Debt Facility (a) shall be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the Collateral granted in accordance with the Take-Back Debt Facility, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under in connection with the Take-Back Debt Facility, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law.  The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other Law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

115.    Notwithstanding the foregoing, the Collateral granted pursuant to the Take-Back Debt Facility shall include, and such Liens shall attach to, (a) all proceeds of the Debtors' or Reorganized Debtors' real property leases and (b) all leases that do not prohibit or restrict the attachment of such liens; provided, however, to the extent that a lease prohibits or restricts attachment of a Lien to such lease itself or to the leased premises pursuant to its terms, such Liens

shall attach to the proceeds of such lease but shall not attach to such lease itself or the leased premises, as applicable. Nothing herein, in the Plan, or in the Take-Back Debt Documents shall authorize the Reorganized Debtors to violate the terms of Unexpired Leases assumed pursuant to the Plan after the Effective Date, including, but not limited to, by providing the Take-Back Debt Agent access to any leased premises of the Reorganized Debtors other than in accordance with applicable non-bankruptcy Law or as otherwise provided for in the applicable Unexpired Lease.

116.    Any Holder entitled to receive Take-Back Term Loans under the Plan may designate that all or a portion of such Holder's share of the Take-Back Term Loans to be distributed as part of the treatment of such Holder's Allowed Claims, be registered in the name of, and delivered to, its designee by delivering notice thereof to counsel to the Debtors and to the Claims Agent in accordance with such procedures for such designations and/or delivery that the Debtors or the Reorganized Debtors, as applicable, may establish in accordance with the Plan.

**PP.    New ABL Facility**

117.    On the Effective Date, the agreements with respect to the New ABL Facility shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New ABL Facility are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law. On the Effective Date, all of the Liens and security interests to be granted in connection with the New ABL Facility (a) shall be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the Collateral granted in accordance with the New ABL Facility, (c) shall be deemed automatically

perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under in connection with the New ABL Facility, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law.  The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other Law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

118.    Notwithstanding the foregoing, the Collateral granted pursuant to the New ABL Facility shall include, and such Liens shall attach to, (a) all proceeds of the Debtors' or Reorganized Debtors' real property leases and (b) all leases that do not prohibit or restrict the attachment of such liens; provided, however, to the extent that a lease prohibits or restricts attachment of a Lien to such lease itself or to the leased premises pursuant to its terms, such Liens shall attach to the proceeds of such lease but shall not attach to such lease itself or the leased premises, as applicable.  Nothing herein, in the Plan, or in the New ABL Facility Documents shall authorize the Reorganized Debtors to violate the terms of Unexpired Leases assumed pursuant to the Plan after the Effective Date, including, but not limited to, by providing the New ABL Facility

Agent access to any leased premises of the Reorganized Debtors other than in accordance with applicable non-bankruptcy Law or as otherwise provided for in the applicable Unexpired Lease.

**QQ.    Reorganized Debtors' Ownership**

119.    On the Effective Date, in accordance with the terms of the Plan and the Restructuring Transactions Memorandum and as further set forth in the Plan Supplement, New TopCo shall issue and deliver all of the Reorganized Common Equity to Holders of Allowed Prepetition First Lien Loan Claims, Holders of Allowed Prepetition Second Lien Loan Claims, and certain Holders of DIP Claims pursuant to the terms and conditions of the Plan, the New Organizational Documents, and the DIP Credit Agreement.  The issuance of Reorganized Common Equity pursuant to the Plan is authorized without the need for further limited liability company or corporate action and without any further action by any Holder of a Claim or Equity Interest, and all of the Reorganized Common Equity issued or issuable pursuant to the Plan shall be duly authorized, validly issued, fully paid, and nonassessable.

120.    Any Holder of an Allowed Prepetition First Lien Loan Claim, Allowed Prepetition Second Lien Loan Claim, or Allowed DIP Claim may designate that all or a portion of such Holder's *pro rata* share of the Reorganized Common Equity to be distributed as part of the treatment of such Allowed Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, or Allowed DIP Claims, as applicable, be registered in the name of, and delivered to, its designee by delivering notice thereof to the Debtors and/or by the designee delivering notice thereof to the Claims Agent in accordance with such other procedures for such designations and/or delivery that the Debtors or the Reorganized Debtors, as applicable, may establish in accordance with the Plan.

**RR.    Litigation Trust**

121.    On the Effective Date, (a) the Litigation Trust shall be formed and established pursuant to the Plan and the Litigation Trust Agreement and become effective and administered in accordance with the terms of the Plan and the Litigation Trust Agreement, (b) Lawrence R. Hirsh shall be appointed as the initial Litigation Trustee and the Litigation Trustee shall be vested with the rights and powers set forth in the Plan and the Litigation Trust Agreement, (c) [●], [●], and [●], shall be appointed as members of the Litigation Advisory Board, and (d) the OpCo Debtors and the Freedom HoldCo Debtors shall be deemed to have irrevocably transferred to the Litigation Trust all of their rights, title, and interests in the Litigation Trust Assets free and clear of all Claims, Liens, encumbrances, or interests, except as otherwise set forth in the Plan.  The Litigation Trust, the Litigation Trustee, and the Litigation Trust Advisory Board shall be authorized and entitled to take the actions set forth in, and in each case in accordance with, the Plan and the Litigation Trust Agreement.

122.    The Litigation Trust shall be administered by the Litigation Trustee in accordance with the Plan and the Litigation Trust Agreement and the Litigation Trustee, in consultation with the Litigation Trust Advisory Board, shall have sole discretion with respect to the prosecution, funding, and settlement or other resolution of the Permitted Litigation Claims and the distribution of the Litigation Trust Assets, consistent with the Litigation Trust Units Allocations and the terms of the Litigation Trust Agreement and the Plan.  The Litigation Trustee shall be authorized, in accordance with the terms of the Plan and the Litigation Trust Agreement, to take such other actions as may be necessary or desirable to make any distributions to holders of Litigation Trust Units on account of any Litigation Trust Assets.

123.    Solely to the extent necessary and in furtherance of the Litigation Trustee Duties, following the Effective Date, the Litigation Trustee shall be deemed to be a judicial substitute for

the Reorganized Debtors as the party in interest in the Chapter 11 Cases, consistent with section 1123(b)(3)(B) of the Bankruptcy Code. The Litigation Trust shall be entitled to enjoy the benefits of section 108(a) of the Bankruptcy Code and shall be deemed to be a trustee (as that term is used in section 108(a)of the Bankruptcy Code) for purposes of commencing, prosecuting, or settling the Permitted Litigation Claims.

124.    Any and all Litigation Trust Units shall be non-transferable and non-assignable during the term of the Litigation Trust Agreement other than if transferred by will, intestate succession, if required to be transferred as part of a liquidation or winding up of a holder, or otherwise by operation of Law. In addition, any and all Litigation Trust Units, to the extent such units may be deemed "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state or local securities Laws, will not be registered pursuant to the Securities Act or any applicable state or local securities Laws and will be issued under an exemption to the federal securities Laws pursuant to section 1145 of the Bankruptcy Code and will be exempt from the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

**SS.    Exemption from Registration Requirements**

125.    To the fullest extent permitted by section 1145(a) of the Bankruptcy Code, the offering, issuance, and distribution of any securities, including the Reorganized Common Equity, in exchange for Claims pursuant to Article III or Article V of the Plan, shall be exempt from, among other things, the registration requirements of the Securities Act and any other applicable U.S. state or local Laws requiring registration prior to the offering, issuance, distribution, or sale of securities pursuant to section 1145 of the Bankruptcy Code (except with respect to an Entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code). Except as otherwise provided in the Plan or the governing certificates or instruments, any and all such

Reorganized Common Equity so issued under the Plan (a) will not be "restricted securities" (as defined in Rule 144(a)(3) under the Securities Act) and (b) will be freely tradable and transferable under the Securities Act by the recipients thereof that are not, and have not been within ninety (90) days of such transfer, an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the Debtors, the Reorganized Debtors or New TopCo, in each case, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, (ii) compliance with applicable securities Laws and any rules and regulations, including those of the United States Securities and Exchange Commission (the "SEC") or U.S. state or local securities Laws, if any, applicable at the time of any future transfer of such securities or instruments, and (iii) any restrictions in the New Organizational Documents of New TopCo.

126.    Notwithstanding anything to the contrary in the Plan or the Restructuring Support Agreement, no Entity (including DTC or any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether issuance of the Reorganized Common Equity is exempt from registration and/or eligible for book-entry delivery, settlement, and depository (to the extent applicable).  Any transfers of assets or Equity Interests effected (including with respect to the Reorganized Common Equity), or any obligations incurred through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.

## TT.    Organizational Documents

127.    The Reorganized Debtors or New TopCo, as applicable, shall enter into such agreements and/or amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan and the Bankruptcy Code, which shall:  (a) contain

terms consistent with the Plan Supplement and the Global Settlement; and (b) authorize the issuance, distribution, and reservation of the Reorganized Common Equity to the Entities entitled to receive such issuances, distributions, and reservations, as applicable under the Plan.  The New Organizational Documents will be deemed to be modified to prohibit (to the extent they do not include a provision prohibiting) the issuance of non-voting equity securities, pursuant to and solely to the extent required under section 1123(a)(6) of the Bankruptcy Code.  Without limiting the generality of the foregoing, as of the Effective Date, the Reorganized Debtors and New TopCo shall be governed by the New Organizational Documents applicable to it.  On or immediately before the Effective Date, each Debtor, each Reorganized Debtor, and New TopCo, as applicable, will file its respective New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable Laws of its state of incorporation or formation, to the extent required under the Plan or applicable nonbankruptcy Law for such New Organizational Documents to become effective.  After the Effective Date, the Reorganized Debtors and New TopCo may amend and restate the formation, incorporation, organizational, and constituent documents, as applicable, as permitted by the Laws of its respective jurisdiction of formation or incorporation, as applicable, and the terms of such documents.

128.    As a condition to receiving the Reorganized Common Equity, Holders of Allowed Prepetition First Lien Loan Claims, Holders of Allowed DIP Claims, and Holders of Allowed Prepetition Second Lien Loan Claims, and/or any of their respective designees for receipt of Reorganized Common Equity, will be required to execute and deliver the applicable New Organizational Documents for New TopCo.  For the avoidance of doubt, any Entity's or Person's receipt of Reorganized Common Equity under, or as contemplated by, the Plan shall be deemed as

its agreement to the applicable New Organizational Documents for New TopCo, and such Entities and Persons shall be deemed signatories to the applicable New Organizational Documents for New TopCo without further action required on their part (solely in their capacity as members of New TopCo). The New Organizational Documents for New TopCo will be effective as of the Effective Date and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each recipient of Reorganized Common Equity will be bound thereby in all respects even if such recipient has not actually executed and delivered a counterpart thereof.

**UU.    Exemption from Certain Transfer Taxes and Recording Fees**

129.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any issuance, transfers, or exchanges (whether from a Debtor to a Reorganized Debtor or to any other Entity) of any securities (including the Reorganized Common Equity) or any makings or deliveries of instruments of transfer pursuant to or in connection with the Plan (including, if applicable, the Partial Sale Transaction) shall not be subject to any tax under any law imposing a stamp tax or similar tax. All appropriate state or local government officials, agents or filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall be authorized to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

**VV.    Other Tax Matters**

130.    From and after the Effective Date, the Reorganized Debtors, including New TopCo, shall be authorized to make and to instruct any of their subsidiaries to make any elections available to them under applicable Law with respect to the tax treatment of the Restructuring Transactions as specified in the Restructuring Transactions Memorandum.

131.    The Debtors will cooperate with any advisors selected by the Required Consenting First Lien Lenders in respect of all tax structuring matters.  The Reorganized Debtors shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

## WW.    Cancellation of Securities and Agreements

132.    Except for the purpose of evidencing a right to distribution under the Plan, and except as otherwise set forth in the Plan or in the Restructuring Transactions Memorandum, on the Effective Date, all agreements, including all intercreditor agreements, instruments, and other documents directly or indirectly evidencing, related to, or connected with any Claim, other than certain Intercompany Claims and Existing Intercompany Equity Interests, as expressly set forth in the Plan, and any rights of any Holder in respect thereof, shall be deemed canceled, discharged, and of no force or effect without further act or action under any applicable agreement, Law, regulation, order, or rule.  The holders of or parties to such canceled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation or the cancellation thereof, except the rights provided for in the Plan. Notwithstanding anything to the contrary in the Plan, this Confirmation Order, and in the Restructuring Support Agreement, each of the DIP Credit Agreement, the First Lien Credit Agreement, the Second Lien Credit Agreement, and the HoldCo Credit Agreement shall continue in effect solely to the extent necessary to:  (a) permit Holders of the DIP Claims, Prepetition First Lien Loan Claims, Prepetition Second Lien Loan Claims, and Prepetition HoldCo Loan Claims to receive distributions under the Plan on account of such respective Claims; and (b) preserve all rights of (i) the Second Lien Lenders with respect to the Second Lien Credit Agreement Agent and vice versa and (ii) the HoldCo Lenders with respect to the HoldCo Credit Agreement Agent and

vice versa, in each case with respect to any rights or obligation to compensation, indemnification, expense reimbursement, or contribution, or any other claim or entitlement, in each case that they may have under such agreements that survive termination of such agreements against any entity that is not a Debtor or a Reorganized Debtor, and otherwise in accordance with the terms of the Plan.  Except as provided pursuant to the Plan, upon satisfaction of the DIP Claims, the Prepetition First Lien Loan Claims, the Prepetition Second Lien Loan Claims, and the Prepetition HoldCo Loan Claims, respectively (and as the case may be), each of the DIP Credit Agreement Agent, the First Lien Credit Agreement Agent, the Second Lien Credit Agreement Agent, and the HoldCo Credit Agreement Agent, respectively (and as the case may be), shall be discharged of all of their respective obligations associated with the DIP Credit Agreement, the First Lien Credit Agreement, the Second Lien Credit Agreement, and the HoldCo Credit Agreement, respectively (and as the case may be) and the Litigation Trust Units and the Reorganized Common Equity will be held by the recipients thereof directly.

133.    On the Effective Date, except as otherwise specifically provided for in the Plan (including in the Restructuring Transactions Memorandum):  (a) the obligations of the Debtors under any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, call, put, award, commitment, registration rights, preemptive right, right of first refusal, right of first offer, co-sale right, investor rights, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan, if any) shall be canceled, terminated, and of no further force or effect solely as to the Debtors, without further act or action, and the Debtors and the

Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, calls, puts, awards, commitments, registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights, investor rights, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan, if any) shall be automatically and fully released and discharged.

## XX.    Boards; Management

134.    As of the Effective Date, the members of each of the Boards shall be deemed to have resigned from such Board.  Subject to the terms of the applicable New Organizational Documents, on the Effective Date, the New Boards shall be established and new members of the New Boards appointed.  The initial members of the New Boards shall consist of those individuals identified in the Plan Supplement.  Unless reappointed, the members of the Boards prior to the Effective Date shall have no continuing obligations to any of the Reorganized Debtors or to New TopCo on and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor or New TopCo on the Effective Date.  Commencing on the Effective Date, the members of the New Boards shall serve pursuant to the terms of the applicable New Organizational Documents or the applicable Organizational Documents of such Reorganized Debtor or New TopCo, as applicable, and may be replaced or removed in accordance therewith, as applicable.

135.    As of the Effective Date, the individuals who will serve in certain senior management positions of the Reorganized Debtors shall consist of those individuals set forth in the Plan Supplement.

**YY.    Director and Officer Insurance Policies; other Insurance Policies**

136.    In accordance with the Plan:  (a) on the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto, which "tail policy" shall not be otherwise terminated or reduced) in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; provided that any indemnity obligations that would otherwise be assumed by the foregoing assumption of the D&O Liability Insurance Policies shall be governed as provided elsewhere in the Plan and shall not be deemed to be assumed with assumption of such D&O Liability Insurance Policies; (b) the Debtors and the Reorganized Debtors, as applicable, shall retain the ability to supplement such D&O Liability Insurance Policies as the Debtors or the Reorganized Debtors, as applicable, may deem necessary; and (c) for the avoidance of doubt, entry of this Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of each of the unexpired D&O Liability Insurance Policies.

137.    For the avoidance of doubt, on and after the Effective Date, each of the Reorganized Debtors shall be authorized to purchase a directors' and officers' liability insurance policy for the benefit of their respective directors, members, trustees, officers, and managers in the ordinary course of business.

138.    Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder.  Unless otherwise

provided in the Plan or on the Assumed Contracts List or Rejected Contracts/Lease List, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

139.    Nothing in the Plan, the Plan Supplement, the Disclosure Statement, this Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (a) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (b) alters or modifies the duty, if any, that the insurers or third-party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or the purchaser, solely to the extent assumed and assigned to the purchaser under an asset purchase agreement) or draw on any Collateral or security therefor.  For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to File or serve a Cure Dispute or a request, application, Claim, Proof of Claim, or motion for payment and shall not be subject to any claims Bar Date or similar deadline governing Cure Costs or Claims.

**ZZ.    No Action Required; Corporate Action**

140.    No action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions (subject, in each case, to any consent rights set forth or incorporated therein), or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Plan Supplement.  On the Effective Date, the New Organizational Documents and any other applicable amended and

restated corporate Organizational Documents of each of the Reorganized Debtors and New TopCo shall be deemed authorized in all respects.  On the Effective Date, all actions contemplated by the Plan (including any transaction described in, or contemplated by, the Restructuring Transactions Memorandum) and the Restructuring Transactions shall be deemed authorized and approved in all respects, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

141.    Any action under the Plan to be taken by or required of the Debtors, the Reorganized Debtors or New TopCo, including the adoption or amendment of certificates of formation, incorporation and bylaws, the issuance of securities and instruments, or the selection of officers or directors shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors', the Reorganized Debtors', or New TopCo's equity holders, sole members, boards of directors or boards of managers, or similar body, as applicable.

142.    On or (as applicable) before the Effective Date, the appropriate officers of the Debtors, the Reorganized Debtors, or New TopCo, as applicable, shall be authorized and, as applicable, directed to issue, execute, deliver, acknowledge, file, and/or record, as applicable, such securities, documents, contracts, instruments, releases and other agreements and take such other action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Debtors, the Reorganized Debtors, and New TopCo, as applicable, without the necessity of any further Bankruptcy Court, corporate, limited liability company, board, or member approval or action.  In addition, the selection of the Persons who will serve as the initial directors, officers, and managers of the Reorganized Debtors and New TopCo as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board

of managers, or equity holders of the applicable Reorganized Debtor or New TopCo and each shall serve from and after the Effective Date pursuant to and in accordance with the terms of the applicable New Organizational Documents and other applicable documents until such director, officer, or manager resigns or is removed or terminated in accordance with the applicable New Organizational Documents and other applicable documents.

## AAA.  Additional Transactions Authorized Under the Plan

143.    On or prior to the Effective Date, the Debtors, with the consent of the Required Consenting First Lien Lenders, shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims or Equity Interests or render Claims or Equity Interests Unimpaired, as provided for under the Plan.

## BBB.  Treatment of Executory Contracts and Unexpired Leases

144.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article X of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

145.    On the Effective Date, except as otherwise provided in the Plan, any Executory Contracts and Unexpired Leases (a) not previously assumed, (b) not previously assumed and assigned in accordance with the Sale Order or other order approving such assumption and assignment, (c) not previously rejected pursuant to an order of the Bankruptcy Court, and (d) identified on the Assumed Contracts List will be assumed effective as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and this Confirmation Order, except any Executory Contract or Unexpired Lease (i) identified on the Rejected Contracts/Lease List, (ii) that is the subject of (A) a separate motion or notice to reject, assume, or assume and assign or a Cure Dispute that is pending as of the Confirmation Date or (B) an order of the Bankruptcy Court

that is not yet a Final Order, (iii) that previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code), (iv) of the American Freight Debtors that is not otherwise assumed or included on the Assumed Contracts List, (v) that, in the event the Partial Sale Transaction is consummated prior to the Effective Date, relates to the Vitamin Shoppe Debtors, and is not otherwise assumed pursuant to the Sale Order or included on the Assumed Contracts List, (vi) that, in the event the Partial Sale Transaction is not consummated prior to the Effective Date, relates to the Vitamin Shoppe Debtors, is not listed on Schedule 1 of the Sale Order, or (vii) of Franchise Group, Inc. that is not otherwise assumed, assumed and assigned, or included on the Assumed Contracts List.  For the avoidance of doubt, except as otherwise set forth in the Plan or as included on the Assumed Contracts List, all Executory Contracts and Unexpired Leases of the American Freight Debtors, Franchise Group, Inc., and, in the event the Partial Sale Transaction is consummated prior to the Effective Date, the Vitamin Shoppe Debtors shall be rejected as of the Effective Date.

146.    Entry of this Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Debtors' Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective on the occurrence of the Effective Date or, as to rejected Executory Contracts and Unexpired Leases, on such other date as may be identified on the Rejected Contracts/Lease List or other motion or notice to reject by agreement of the affected counterparty to such Executory Contract or Unexpired Lease; provided that neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtor's authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases to the Buyer pursuant to the Asset Purchase Agreement and any related documents relating to the Partial Sale Transaction.

147.    Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party (including the Buyer pursuant to the Partial Sale Transaction) on or prior to the Effective Date, shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by agreement of the parties or, other than with respect to non-residential Unexpired Leases, by an order of the Bankruptcy Court.

148.    Except as otherwise provided in the Plan or this Confirmation Order or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

149.    To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, increases, accelerates or otherwise alters any obligations, rights, or liabilities of the Debtors or the Reorganized Debtors thereunder as a result of, gives rise to any rights or benefits to any non-Debtor party to any such Executory Contract or Unexpired Lease, or creates any Lien on any asset or property of the Debtors or the Reorganized Debtors as a result of, the assumption of such Executory Contract or Unexpired Lease or the execution or consummation of the Plan or any other Restructuring Transaction

(including any change of control, sale of business, assignment, vesting, termination, acceleration, or similar provisions therein), then such provision shall be deemed unenforceable and modified (solely for purposes of the transactions contemplated under the Plan) such that the transactions contemplated by the Plan or any other Restructuring Transaction shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease, to exercise any other default-related rights with respect thereto, to increase, accelerate or otherwise alter the obligations, rights, or liabilities of the Debtors or the Reorganized Debtors thereunder, to be entitled to any rights or benefits thereunder, or create or impose a Lien on any asset or property of the Debtors or the Reorganized Debtors.  For the avoidance of doubt, Confirmation shall not be deemed an assignment of any Executory Contract or Unexpired Lease of the Debtors, notwithstanding any change in name, organizational form, or jurisdiction of organization of any Debtor in connection with the occurrence of the Effective Date.

150.    Any change of control provision in (a) any Unexpired Lease of non-residential real property shall be unenforceable solely in connection with (i) the assumption of such Unexpired Lease and (ii) the Restructuring Transactions, to the extent that any change of control provision would be triggered by the assumption of such Unexpired Lease or the consummation of Restructuring Transactions, and (b) any contract, agreement, or other document of the Debtors, including any Executory Contract or Unexpired Lease (except as specified in the foregoing clause (a)) assumed by the Debtors, shall be deemed modified in accordance with section 365 of the Bankruptcy Code such that assumption of such agreement and consummation of the transactions contemplated by the Plan shall not (either alone or in combination with any other condition, event, circumstance or occurrence) (i) be prohibited, restricted, or conditioned on account of such provision or require any consent thereunder, (ii) breach or result in the

modification or termination of such Executory Contract or Unexpired Lease (other than Unexpired Leases for non-residential real property), (iii) result in any penalty or other fees or payments, accelerated or increased obligations, renewal or extension conditions, or any other entitlement in favor of such non-Debtor party thereunder, including for the avoidance of doubt any penalty or other fees or payments, accelerated or increased obligations, renewal or extension conditions that are triggered upon or after the occurrence of (either alone or in combination with any other condition, event, circumstance or occurrence) a change of control (or term with similar effect), or (iv) entitle the non-Debtor party thereto to do or impose any of the foregoing or otherwise exercise any other default-related rights or remedies with respect thereto.  For the avoidance of doubt, any Executory Contract or Unexpired Lease assumed pursuant to the Plan or otherwise may not be terminated on account of such assumption or on account of the Plan, the transactions contemplated therein, or any change of control or ownership interest composition or entity conversion that may occur at any time before, on, or in connection with the Effective Date.  The Reorganized Debtors may rely on the Plan and this Confirmation Order as a complete defense to any action by a party to an assumed Executory Contract or Unexpired Lease to terminate such Executory Contract or Unexpired Lease on account of such assumption or on account of the Plan, the transactions contemplated therein, or any change of control or ownership interest composition that may occur at any time before or on the Effective Date.  Each Executory Contract or Unexpired Lease (including any amendments thereto entered into after the Petition Date and prior to the Effective Date) assumed pursuant to Article X of the Plan shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of this Bankruptcy Court authorizing and providing for its assumption, or applicable Law.

151.    Notwithstanding anything to the contrary in the Plan (other than Section 10.8 thereof) and in the Restructuring Support Agreement, except as otherwise agreed to by the Debtors and the counterparties to an Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, subject to the Definitive Document Consent Rights, are authorized to amend or supplement the Rejected Contracts/Lease List in their discretion, prior to the later of (a) the Effective Date and (b) seven (7) days after the date on which the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List (or, in either case, such later date as may be agreed with a counterparty); provided that the Debtors shall give prompt notice of any such amendment or supplement to any affected counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.  For the avoidance of doubt, with respect to any Unexpired Lease for nonresidential real property, the Debtors shall timely perform all of their obligations under the Unexpired Lease as required by section 365(d)(3) of the Bankruptcy Code until such Unexpired Lease has been rejected or assumed pursuant to the Plan.

152.    Any guaranty of an Unexpired Lease that is assumed pursuant to the Plan, this Confirmation Order, or any other order of the Bankruptcy Court shall remain in full force and effect as of the Effective Date, unless otherwise agreed in writing by the Debtors or the Reorganized Debtors and the applicable counterparty.

153.    Notwithstanding anything in the Plan to the contrary, upon assumption of an Unexpired Lease, unless waived or otherwise modified by any amendment to such Unexpired Lease mutually agreed to by the applicable counterparty and the Debtor(s) or the Reorganized Debtor(s), as applicable, shall be obligated to pay or perform on the date upon which such obligations become due in the ordinary course any accrued but unbilled and not yet due to be paid

or performed obligations under such assumed Unexpired Lease as of the applicable deadline to File objections or disputes to the Cure Costs for such Unexpired Lease, including, but not limited to, common area maintenance charges, taxes, year-end adjustments, indemnity obligations, and repair and maintenance obligations, regardless of whether such obligations arose before or after the Effective Date; provided that all rights of the parties to any such assumed Unexpired Lease to dispute amounts asserted thereunder are fully preserved.

### CCC.  Abandoned Property

154.    The Debtors or the Reorganized Debtors, as applicable, are authorized to abandon, and are deemed to have abandoned, any remaining personal property (including, without limitation, any furniture, fixtures, and equipment) located on the Debtors' leased premises associated with a rejected Unexpired Lease on the effective date of the rejection of such Unexpired Lease (the "Rejection Date") and such property shall be abandoned free and clear of any liens, claims, and encumbrances; provided that (a) the Debtors or the Reorganized Debtors, as applicable, are not authorized to abandon, and are directed to remove any hazardous materials as defined under applicable Law from any leased premises as and to the extend they are required to do so by applicable Law and (b) to the extent the Debtors or the Reorganized Debtors, as applicable, seek to abandon personal property that contains any "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Debtors' employees and/or customers, or any other individual, the Debtors or the Reorganized Debtors, as applicable, shall remove such information from such personal property prior to its abandonment.  Any personal property of the Debtors or the Reorganized Debtors, as applicable, remaining on any leased premises associated with a rejected Unexpired Lease after the Rejection Date shall be deemed abandoned by the Debtors or the Reorganized Debtors, as applicable, pursuant to section 554 of the Bankruptcy Code without

any further notice to or action, order, or approval of the Bankruptcy Court, and the applicable counterparties to such Unexpired Leases shall be permitted, in their sole discretion, to sell, utilize, and/or dispose of any such abandoned property without notice or liability to the Debtors, the Reorganized Debtors, or any third parties and, to the extent applicable, the automatic stay pursuant section 362 of the Bankruptcy Code is modified to allow such disposition.  The rights of the applicable counterparties to such Unexpired Leases to assert Claims for the disposition, removal, or storage of any abandoned property are reserved, as are all parties' rights to object to such Claims.

**DDD.  Professional Fee Escrow Account**

155.    No later than the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professional Persons.  No Liens, Claims, or Equity Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors, as applicable, on the Effective Date.  The amount of Professional Fee Claims owing to the Professional Persons shall be paid in Cash to such Professional Persons by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all such Allowed amounts owing to Professional Persons have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, approval, or order of the Bankruptcy Court.

### EEE.   Post-Effective Date Fees and Expenses

156.    Upon the Effective Date, any requirement that Professional Persons comply with sections 327-331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional Person in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### FFF.   U.S. Trustee Fees and Related Reporting Obligations

157.    All U.S. Trustee Fees that are due and owing as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  The Debtors shall File all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Reorganized Debtors shall File with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  After the Effective Date, each of the Reorganized Debtors (or the Disbursing Agent acting on behalf of each of the Reorganized Debtors) shall pay any and all applicable U.S. Trustee Fees in full in Cash when due and payable.  The Reorganized Debtors shall remain obligated to pay any applicable U.S. Trustee Fees until the earliest of the closure, dismissal, or conversion to a case under chapter 7 of the Bankruptcy Code of the case of that particular Debtor for whom the Debtors or the Reorganized Debtors, as applicable, is responsible.  The U.S. Trustee shall not be treated as providing any release under the Plan.  U.S. Trustee Fees are Allowed.  The U.S. Trustee shall not be required to File any Proof of Claim or any request for administrative expense for U.S. Trustee Fees.

### GGG.  Provisions Governing Distributions

158.    The procedures governing distributions contained in <u>Article VIII</u> of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the distributions under the Plan shall be made by the Disbursing Agent.

**HHH.  Procedures for Resolving Claims**

159.    The procedures for resolving Disputed, contingent, and unliquidated claims or equity interests contained in <u>Article IX</u> of the Plan shall be, and hereby are, approved in their entirety.

**III.    Dissolution of Creditors' Committee**

160.    The Creditors' Committee shall be automatically dissolved on the Effective Date and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases under the Bankruptcy Code, except for purposes of Filing applications for Professional Person compensation in accordance with the Plan. The Reorganized Debtors and the Litigation Trust shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

**JJJ.    Conditions Precedent to the Effective Date**

161.    The provisions governing the conditions precedent to the Effective Date set forth in <u>Section 11.2</u> of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms.

**KKK.  Retention of Jurisdiction**

162.    The provisions governing the retention of jurisdiction set forth in <u>Article XIII</u> of the Plan shall be, and hereby are, approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain exclusive jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in <u>Article XIII</u> of the Plan.

**LLL.  Binding Effect**

163.    Subject to <u>Section 11.5</u> of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

**MMM.        Filing of Additional Documents**

164.    Subject to the terms and conditions of the Restructuring Support Agreement and the Plan, on or before substantial consummation of the Plan, the Debtors shall File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.  The Claims Agent is authorized to destroy all paper/hardcopy records related to this matter two (2) years after the Effective Date has occurred.

**NNN.  Provisions Regarding the Texas Comptroller and TWC**

165.    Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the Texas Comptroller of Public Accounts (the "<u>Texas Comptroller</u>") and the Texas Workforce Commission (the "<u>TWC</u>") reserve the following rights:  (a) any statutory or common Law setoff rights in accordance with section 533 of the Bankruptcy Code; (b) any rights to pursue any non-Debtor third parties for tax debts or claims; (c) the payment of interest on the Texas Comptroller's and the TWC's Allowed Administrative Expense Claims, if any; (d) to the extent

that interest is payable with respect to any Allowed Administrative Expense Claim, Priority Tax Claim, or Secured Claim of the Texas Comptroller or the TWC, payment of the statutory rate of interest pursuant to Texas Tax Code § 111.060; and (e) the Texas Comptroller and the TWC are not required to File a motion or application for payment of Administrative Expense Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code.

166.    Should the Reorganized Debtors fail to make any payments as required in the Plan or this Confirmation Order, or remain current on post-petition and/or post-confirmation ordinary course tax reporting and payment obligations, the Texas Comptroller and the TWC shall provide written notice of that default to the Reorganized Debtors and their counsel advising of that default and providing a period of twenty-one (21) days to cure the default.  In the event the default is not cured within twenty-one (21) days, the Texas Comptroller or the TWC may pursue all rights and remedies available under applicable Texas Law to collect the full amount of all taxes, penalties, and interest owed.

**OOO.  Provisions Regarding Omni**

167.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, Proof of Claim No. 2702 (the "Omni POC") Filed by Omni Hotels Management Corporation as agent for Frisco Silver Star Hotel Company, LLC d/b/a Omni Frisco Hotel at The Star ("Omni") on March 21, 2025, shall be timely Filed; provided that the Debtors and the Reorganized Debtors, as applicable, reserve, on behalf of themselves and the Litigation Trustee, as applicable, (a) all rights and defenses with respect to any Claim(s), if any, held by Omni that are covered by the Omni POC and (b) the ability to object to any such Claim(s) on any basis except on the basis that the Omni POC was not timely Filed; provided further that nothing in this paragraph shall be deemed an admission as to this amount, basis for, nature, validity, priority, or enforceability of any such Claim(s).

**PPP.    Provisions Regarding Richard Grigsby**

168.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, Proof of Claim No. 2707 (the "Grigsby POC") Filed by Richard Grigsby ("Grigsby") on March 31, 2025 shall be deemed timely Filed; provided that the Debtors and the Reorganized Debtors, as applicable, reserve, on behalf of themselves and the Litigation Trustee, as applicable, (a) all rights and defenses with respect to any Claim(s), if any, held by Grigsby that are covered by the Grigsby POC, and (b) the ability to object to any such Claim(s) on any basis except on the basis that the Grigsby POC was not timely Filed; provided, further, that nothing in this paragraph 168 shall be deemed (i) an admission as to the amount, basis for, nature, validity, priority, or enforceability of any such Claim(s), or (ii) to alter or otherwise modify coverage, if any, under any of the Debtors' insurance policies.  All parties' rights and defenses under applicable non-bankruptcy Law and the Bankruptcy Code with respect to the foregoing, including with respect to the right to seek relief from the Bankruptcy Court with respect to Section 12.6 of the Plan, are fully preserved.

**QQQ.  Provisions Regarding the SEC**

169.    Notwithstanding any language to the contrary in the Plan, the Disclosure Statement, and/or this Confirmation Order, no provision shall (a) preclude the SEC from enforcing its police or regulatory powers or (b) enjoin, limit, impair, or delay the SEC from commencing or continuing any Claims, Causes of Action, proceedings, or investigations against any non-Debtor Person or non-Debtor Entity in any forum; provided that nothing in the Plan, the Disclosure Statement, or this Confirmation Order shall alter any legal or equitable rights of the Debtors, the Reorganized Debtors, the Released Parties, or other non-Debtor Persons or non-Debtor Entities with respect to any such Claim, liability, Cause of Action, investigation, action, or proceeding, if any.

**RRR.  Provisions Regarding Assumed Contracts**

170.    Notwithstanding anything to the contrary contained in the Plan, the Plan Supplement, or this Confirmation Order, upon assumption or assumption and assignment of any Assumed Contract pursuant to the Plan, the Debtors, the Reorganized Debtors, or assignee, as applicable, shall be responsible for all obligations under such Assumed Contract, *cum onere*, including, without limitation, liabilities (if any) for any defaults under such Assumed Contract, in each case arising or occurring after such assumption or assumption and assignment, and for payment or performance of any and all obligations under such Assumed Contract arising or occurring after such assumption or assumption and assignment when due in accordance with the terms of such Assumed Contract (irrespective of whether such obligations arose, occurred, or accrued before, on, or after the assumption or assumption and assignment of such Assumed Contract), including with respect to, if applicable, (a) claims for indemnification, (b) obligations to satisfy or discharge any Liens, including mechanics' Liens, against the premises where any assumed Unexpired Lease is located or any improvements or additions thereto, (c) year-end adjustment and reconciliation amounts that become due on or after the Effective Date of the Plan, including for royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, repairs and replacements, promotional funds, and percentage rent (if applicable under the terms of the Assumed Contract), and (d) the Debtors shall maintain insurance coverage required under the Unexpired Leases and will continue to satisfy indemnification obligations arising under the Unexpired Leases (if any), including with regard to pre-Effective Date events or occurrences.

171.    Notwithstanding any provisions to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, all setoff rights of counterparties to Assumed Contracts and/or their affiliates are fully preserved.

**SSS.    Provisions Regarding Certain Government Matters**

172.    As to the United States of America (the "<u>United States</u>"), nothing in the Plan or this Confirmation Order shall:  (a) discharge, release, enjoin, bar, impair, or otherwise preclude any Claim of the United States not subject to the Governmental Bar Date; (b) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Reorganized Debtors, or any non-Debtor; (c) be interpreted to set Cure Costs or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements, or other interests; (d) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors, as applicable, and such rights and defenses are expressly preserved, subject to section 553 of the Bankruptcy Code; (e) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy Law; or (g) relieve any party from compliance with all licenses and permits issued by Governmental Units in accordance with non-bankruptcy Law.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall bar the Internal Revenue Service (the "<u>IRS</u>") from exercising its nonbankruptcy rights to offset any request for a tax refund for a tax period ending prior to the Petition Date against any prepetition claims of the United States government against any of the Debtors to the extent permitted by the Bankruptcy Code.

173.    Nothing in the Plan or this Confirmation Order shall release, satisfy, discharge, or enjoin the collection of any Claim against any entity, including, but not limited to, the Debtors by or on behalf of the United States for any liability arising (a) out of a postpetition tax period for which a return has not been filed or (b) as a result of a pending audit or audit that may be performed with respect to any postpetition tax period.  Furthermore, nothing shall enjoin the United States

from amending any Claim against any Debtor with respect to any tax liability (i) arising out of a postpetition tax period for which a tax return has not been filed or (ii) from a pending audit or audit that may be performed with respect to any postpetition tax period.  Any liability arising (A) out of a postpetition tax period for which a return has not been filed or (B) as a result of a pending audit or audit which may be performed with respect to any postpetition tax period shall be paid in accordance with the terms of the Plan applicable to Claims of same priority as those liabilities, to the extent such liabilities are Allowed pursuant to section 1129 (a)(9) of the Bankruptcy Code.

174.    If the Reorganized Debtors do not timely object to the Priority Tax Claims in accordance with the Plan, such Priority Tax Claims shall be deemed Allowed Priority Tax Claims under the Plan.  Except as explicitly set forth herein, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors and the Reorganized Debtors, as applicable, shall pay any Allowed Priority Tax Claims consistent with section 1129(a)(9)(C) of the Bankruptcy Code and the IRS shall not be required to File a motion or application for payment of Administrative Expense Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code.

**TTT.  Provisions Regarding the D&O Stay Relief Order**

175.    Notwithstanding anything to the contrary in the Plan or the Plan Supplement, nothing herein or in the Plan or the Plan Supplement alters or supersedes the relief granted in the *Order Granting Motion of Andrew Laurence, Matthew Avril, Brian Kahn, Cynthia Dubin, and Thomas Herskovitz for Relief from the Automatic Stay to the Extent Applicable, to Allow Payment of Defense Costs and Other Losses Under Directors and Officers Insurance Policies* [Docket No. 1256] (as such order may be amended, modified, or supplemented, the "D&O Stay Relief Order"), and such order remains in full force and effect.  For the avoidance of doubt, the D&O Liability Insurance Policies, subject to the terms and conditions thereof, provide coverage for those insured persons covered by such policies (collectively, the "Insureds") for the remaining term of

such policies and runoff or tail coverage, if applicable, after the Effective Date to the fullest extent permitted by such D&O Liability Insurance Policies, the Plan, the Plan Supplement, the D&O Stay Relief Order, and applicable Law.  On and after the Effective Date, the Debtors, the Reorganized Debtors, or the Litigation Trustee, as applicable, shall not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies, and Insureds shall be entitled to the full benefits permitted by any such D&O Liability Insurance Policies and applicable Law for the full term of such policies, _provided_ that any indemnity obligations of the Debtors or the Reorganized Debtors that would otherwise be assumed by the foregoing assumption of the D&O Liability Insurance Policies shall be governed as provided in the Plan and shall not be deemed to be assumed with assumption of such D&O Liability Insurance Policies.  Except as expressly provided in the D&O Stay Relief Order, Confirmation and effectiveness of the Plan will not discharge, enjoin, impair, affect, or otherwise modify any rights of the Insureds or any other beneficiaries under the D&O Liability Insurance Policies, including policy nos. 01-685-80-72, ELU186333-22, NHS702418, HN-0303-6891-103022, and DOX30012847801 and 01-760-24-67. All rights of the Insureds, the Debtors, and the Reorganized Debtors, as applicable, with respect to the D&O Liability Insurance Policies are expressly preserved to the fullest extent permissible by applicable Law and the applicable D&O Liability Insurance Policies.  Notwithstanding anything to the contrary herein, the Litigation Trust shall retain the ability to pursue the D&O Liability Insurance Policies with respect to Permitted Litigation Claims.

**UUU.  Provisions Regarding Texas Taxing Authorities**

176.    For the avoidance of doubt and notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors shall pay all postpetition ad valorem tax liabilities owing

to the Texas Taxing Authorities[4] in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the Texas Taxing Authorities to File an Administrative Expense Claim and/or request for payment. If the Debtors fail to pay the said ad valorem taxes by the statutory delinquency date, penalties and interest properly charged under the Texas Property Tax Code shall accrue and be due thereon, subject to any applicable limitation in the Bankruptcy Code. To the extent that any of the Texas Taxing Authorities have valid, perfected, and unavoidable tax Liens on account of 2025 ad valorem tax liabilities, such tax Liens shall remain attached with the same priority to the Debtors' property, or

---

[4]  The "Texas Taxing Authorities" are all entities represented by Perdue Brandon Fielder Collins & Mott LLP, Linebarger Goggan Blair & Sampson LLP and McCreary Veselka Bragg & Allen including but not limited to: Anderson County, Bell County Tax Appraisal District, Bowie Central Appraisal District, Brazos County, Burnet Central Appraisal District, Cherokee County, Cherokee County Appraisal District, Coryell County, Denton County (including City of Denton, Denton ISD, City of Lewisville), Guadalupe County, Hays County, Henderson County, Jasper County Tax Units (Jasper ISD), City of Waco et al, Midland Central Appraisal District, Pine Tree ISD, Taylor County Central Appraisal District, Terry County Appraisal District, Williamson County, Randall County Tax Office, Potter County Tax Office, Kerrville Independent School District, Copperas Cove Independent School District, Lubbock Central Appraisal District, Midland County, Brownsville Independent School District, Brazoria County, et al, Brazoria County, MUD #34, Clear Creek Independent School District, Spring Independent School District, Harris County Water Control District #110, City of Houston, Alief Independent School District, Spring Branch Independent School District, Pasadena Independent School District, Klein Independent School District, Baybrook Municipal Utility District 1, Humble Independent School District, Harris County Municipal Utility District 186, Harris County Water Control District #145, West Harris County Municipal Utility District 6, Harris County Municipal Utility District 70, City of Southside Place, Harris County Municipal Utility District 367, Nottingham County Municipal Utility District, Harris County Municipal Utility District 168, Tomball Independent School District, City of Tomball, City of Montgomery, Magnolia Independent School District, Montgomery County Municipal Utility District 95, Carrollton-Farmers Branch Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Wichita County Tax Office, Nacogdoches County CAD, et al., Titus County Appraisal District, et al., Tyler Independent School District, Fort Bend Independent School District, Cinco Southwest Municipal Utility District #95, Fort Bend County Levee Improvement District #136, Fort Bend County Municipal Utility District #3, City of Allen, Allen Independent School District, Bexar County, City of Carrollton, Cypress-Fairbanks Independent School District, Dallas County, Deer Park Independent School District, City of El Paso, Ellis County, Fort Bend County, City of Frisco, Grayson County, Gregg County, Harris County Emergency Service District No. 08, Harris County Emergency Service District No. 09, Harris County Emergency Service District No. 11, Harris County Emergency Service District No. 16, Harris County Emergency Service District No. 48, Hays CISD, Hidalgo County, Hopkins County, City of Houston, Houston Community College System, Houston Independent School District, Irving Independent School District, Jefferson County, Katy Independent School District, Kaufman County, Kerr County, Lewisville Independent School District, Lone Star College System, City of McAllen, McLennan County, Montgomery County, Navarro County, Northwest Independent School District, Nueces County, Parker CAD, City of Pasadena, City of Prosper, Prosper Independent School District, Rockwall CAD, San Patricio County, Smith County, City of Sulphur Springs, Sulphur Springs Independent School District, Tarrant County, Tom Green CAD, Wise County, and City of Wylie.

proceeds from the sale thereof, until the applicable 2025 ad valorem tax liabilities thereon have been fully paid, including any postpetition penalties and interest to the extent permitted by the Bankruptcy Code.  The Texas Taxing Authorities' lien priority shall not be primed or subordinated by any exit financing approved by the Bankruptcy Court in conjunction with the Confirmation of this Plan or otherwise to the extent the Texas Taxing Authorities' Liens arose in the ordinary course of business and are granted priority over any other Liens pursuant to applicable non-bankruptcy Law.  Notwithstanding any of the foregoing, all parties' rights to object to the priority, validity, amount, and extent of the claims and tax Liens asserted by the Texas Taxing Authorities are fully preserved.

## VVV.  Provisions Regarding Tempur Sealy

177.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the rights of Temper Sealy International, Inc. and its affiliates to assert any right of setoff or recoupment that they may have under any agreement with the Debtors and applicable Law are fully preserved, including, but not limited to, the assertion of rights of setoff or recoupment in connection with Claims reconciliation or as a defense to any Claim or Cause of Action, if any, by the Debtors, the Reorganized Debtors, any successors to the Debtors, or the Litigation Trustee, as applicable.

## WWW.        [Provisions Regarding the Chubb Companies]

178.    Notwithstanding anything to the contrary in the Plan (including, without limitation and for the avoidance of doubt, Sections 7.5, 7.19, 7.22, 8.17, and 10.8 thereof), the Plan Supplement, this Confirmation Order (including, without limitation and for the avoidance of doubt, any provisions in this Confirmation Order that correspond to and/or restate any of the foregoing Plan provisions), any other Definitive Document, the Bar Date Order, any notice pursuant to the Bar Date Order or any Claim objection, any other document related to any of the foregoing, or any

other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, purports to limit or impact a setoff or recoupment right, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases under the Plan or this Confirmation Order):

(a)     on the Effective Date, the Reorganized Debtors shall assume all insurance policies issued by ACE American Insurance Company and/or any of its U.S.-based affiliates and the predecessors and successors (collectively, and solely in their capacities as insurers and/or third-party administrators of one or more of the Debtors, the "Chubb Companies") to or that provide coverage to any of the Debtors (or any of their predecessors) at any time and for all lines of coverage, all extensions and/or renewals thereof, and all agreements, documents, or instruments related thereto (each as amended, modified, or supplemented and including any exhibit or addenda thereto, collectively, the "Chubb Insurance Program") in their entirety, pursuant to sections 105 and 365 of the Bankruptcy Code, and the Chubb Insurance Program shall continue in full force and effect unaltered thereafter in accordance with its terms; provided that, for the avoidance of doubt, the Chubb Insurance Program shall not include any insurance policies with the Debtors issued by the Chubb Companies that have expired and/or terminated pursuant to their terms;

(b)     on and after the Effective Date, the Reorganized Debtors shall be liable for their and all of the Debtors' obligations under the Chubb Insurance Program, regardless of whether any such obligations arise or become due before, on, or after the Effective Date, without the need or requirement for the Chubb Companies to File or serve any objection to a notice of proposed Cure Cost (or lack of such notice) or File or serve a request, motion, or application for payment of such obligations, or Proof of Claim, Cure Cost, serve a cure objection, or Administrative Expense Claim; but in each case subject to the Debtors' or Reorganized Debtors' (as applicable) rights and defenses under the Chubb Insurance Program and/or applicable non-bankruptcy Law;

(c)     nothing (i) alters, modifies, supplements, changes, expands, diminishes, releases or otherwise amends the terms and conditions of (or the coverage provided by) the Chubb Insurance Program, or the rights, duties, obligations, and defenses of the Chubb Companies, the Debtors, the Reorganized Debtors, the insureds, or any other individual or Entity, as applicable, under the Chubb Insurance Program, including (A) the Chubb Companies' setoff or

95

recoupment rights under the Chubb Insurance Program (subject to the terms thereto and/or applicable non-bankruptcy Law) against the Debtors and/or the Reorganized Debtors, and/or (B) the Chubb Companies' interest in (including any security interests in and Liens on) any and all letters of credit, Cash, trusts, accounts, credits, and other collateral and security provided or held by the Chubb Companies in relation to the Chubb Insurance Program, or (ii) alters or modifies the duty, if any, that the Chubb Companies have to pay claims covered by the Chubb Insurance Program and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any collateral or security therefor;

(d)     nothing shall permit or otherwise effect a sale, assignment, or any other transfer of the Chubb Insurance Program and/or any rights, proceeds, benefits, claims, rights to payments, or recoveries under or relating thereto without the prior express written consent of the Chubb Companies; and

(e)     on and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article XII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against the Chubb Companies under applicable non-bankruptcy Law to proceed with their claims; (ii) the Chubb Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against the Chubb Companies under applicable non-bankruptcy Law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article XII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (iii) the Chubb Companies to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the insureds including the Debtors (and the Reorganized Debtors, as applicable) and/or apply such proceeds to the obligations of insureds including the Debtors (and the Reorganized Debtors, as applicable) under the Chubb Insurance Program, provided that, for the avoidance of doubt, all of the Chubb Companies', the Debtors', and the Reorganized Debtors' rights with respect to the foregoing pursuant to the Chubb Insurance Program and/or applicable non-bankruptcy Law shall be unaltered and preserved; and (iv) the Chubb Companies to cancel any insurance policy, that is part of the

Chubb Insurance Program, and take other actions relating to the Chubb Insurance Program (including effectuating a setoff and/or any recoupment or subrogation rights or claims, all of which are specifically preserved), in each case in accordance with the applicable terms of the Chubb Insurance Program and/or applicable non bankruptcy Law.

## XXX.  Provisions Regarding Applicable Landlords

179.   Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Reorganized Debtors shall provide the Applicable Landlords[5] at least five (5) days' notice prior to the removal from the Claims Register of any Applicable Landlords' Claims which are disallowed or expunged pursuant to the Plan as a result of such Claims not being timely Filed or as a result of any Cure Costs being fully paid.

180.   Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing herein shall permit the Debtors or the Reorganized Debtors, as applicable, to assign any Unexpired Leases of the Applicable Landlords except as provided for under sections 365(a) and 1123 of the Bankruptcy Code.  After the Effective Date, the Debtors shall provide the Applicable Landlords notice to the extent required by the terms of the applicable Unexpired Leases in the event of any "change or control" or assignment of such Unexpired Leases, including as a result of or in connection with any Restructuring Transaction.

## YYY.  Provisions Regarding Buddy Mac Holdings, LLC

181.   Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing herein shall modify any assumed Executory Contracts with Buddy Mac Holdings, LLC or

---

[5]   "Applicable Landlords" means ARC CPFAYNC001, LLC, ARC MCLVSNV001, LLC, ARC TSKCYMO001, LLC, ARG LSSALMD001, LLC, Acadia Realty Trust, BMA Springhurst LLC, Brixmor Operating Partnership LP, Continental Realty Corporation, Deutsche Asset & Wealth Management, Federal Realty OP LP, FR Grossmont, LLC, Prime/FRIT Mission Hills, LLC, Gerrity Group, LLC, Great Hills Retail, Inc., RD Management LLC, Ritchie Interchange, LLC, Realty Income Corporation, Macerich Company, The Sterling Organization, LLC, Urban Edge Properties, LP, Northlake Village Owner, LLC, PF Portfolio 2, LP, and River Oaks El Mercado, LLC.

any of its direct or indirect subsidiaries (collectively, "BMH," and such Executory Contracts, collectively, the "Buddy Mac Agreements") to eliminate any prohibitions in any Buddy Mac Agreement regarding a change of control or assignment provision, if any, other than with respect to the Restructuring Transactions contemplated under the Plan.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, to the extent the Debtors reject any Buddy Mac Agreement after the Effective Date in accordance with the Plan, including following the determination or resolution of a Cure Dispute, any such rejection shall be deemed to be effective as of the earlier of a date agreed to by the parties or ten (10) days after the date that notice is first provided to BMH of such rejection (notice by email to the following address shall suffice: ian@macfamco.com, with a copy to matthew.ward@wbd-us.com).  Notwithstanding anything to the contrary in Article XIII(a) of the Plan, the Bankruptcy Court shall not exercise jurisdiction after the Effective Date with respect to any matters solely related to the parties' contractual obligations under any Buddy Mac Agreement, which, for the avoidance of doubt, shall not include any matters related to the Plan, these Chapter 11 Cases, adjudication of, assumption, assumption and assignment, or rejection of any Buddy Mac Agreements or Cure Disputes, unless the Bankruptcy Court otherwise has jurisdiction over such matter pursuant to applicable Law and declines to abstain.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, except as agreed to by the Debtors and BMH, each assumed Buddy Mac Agreement shall include all fully integrated modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests or rights.

182.     Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the rights of the Debtors, the Reorganized Debtors, and each of their successors and assigns, as applicable, and BMH are preserved with respect to arguing the applicability of non-bankruptcy Law in determining the effects of rejecting any Buddy Mac Agreement, including each party's rights and obligations thereunder.  For the avoidance of doubt, BMH's objection to the Debtors' assumption of the franchise agreements for store 13 (the "Store 13 Franchise Agreement"), as set forth in the BMH Objection, constitutes a Cure Dispute and all parties' rights are preserved with respect to such Cure Dispute.  The Store 13 Franchise Agreements shall not be assumed and assigned until such Cure Dispute is resolved, including the cure of any nonmonetary defaults under the Store 13 Franchise Agreements to the extent required by the Bankruptcy Court and under the Bankruptcy Code.  The Debtors' and the Reorganized Debtors' rights are reserved to reject the Store 13 Franchise Agreements in accordance with the Plan and this Confirmation Order, including, without limitation, in the event the Bankruptcy Court determines that the Allowed Cure Cost with respect to the Store 13 Franchise Agreements is greater than the amount set forth in the Assumed Contracts List and/or the Bankruptcy Court determines that the Store 13 Franchise Agreement may not be assumed.

**ZZZ.   Provisions Regarding STORE**

183.     Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the rejection of the *Master Lease Agreement* dated September 24, 2013 between STORE Master Funding IV, LLC ("STORE") and Buddy's Newco, LLC (such lease, and any ancillary documents executed in connection therewith or pursuant thereto, the "Master Lease") and certain sublease agreements associated therewith (collectively, with any ancillary documents executed in connection therewith or pursuant thereto, the "Subleases") shall not (a) prejudice, modify, or impair any of STORE's rights thereunder, including, without limitation, STORE's rights to enforce

99

a subtenant's agreement to attorn to STORE upon STORE's election to assume the applicable Sublease, or (b) constitute or be deemed to effect a termination of the Master Lease or any applicable Sublease.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the rights, claims, and remedies of the Debtors, the Reorganized Debtors, subtenants, if any, STORE, and each of their respective successors and assigns, as applicable, are reserved with respect to any rights, claims, or defenses under the Master Lease and the Subleases, as applicable, and applicable Law.  For the avoidance of doubt, in accordance with section 365 of the Bankruptcy Code, the Debtors shall remain obligated to perform all obligations under the Master Lease until the Master Lease has been deemed rejected or assumed pursuant to the Plan as approved by the Bankruptcy Court.

184.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the effective date of the Debtors' rejection of the Master Lease or any applicable Sublease (if any) shall be the later of (a) the proposed effective date of the rejection of the Master Lease or any applicable Sublease as set forth in the Rejected Contracts/Lease List, (b) the date upon which the applicable Debtor surrenders in writing to STORE (including via email) the leased premises associated with the Master Lease and returns the keys, key codes, or security codes, as applicable (or certifies in writing that STORE is authorized to change the locks), and (c) such other date to which the Debtors and STORE agree to or as otherwise ordered by the Bankruptcy Court.

**AAAA.        Reservation of Rights**

185.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until the Bankruptcy Court enters this Confirmation Order.  None of the Filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Equity Interests prior to the Effective Date.

**BBBB. Severability**

186.    If, prior to the entry of this Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

187.    Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent and the Required Consenting First Lien Lenders' consent; and (c) nonseverable and mutually dependent.

**CCCC.        Governmental Approvals Not Required**

188.    Except as otherwise specifically provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the Laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and the Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

**DDDD.** **Recording**

189.    The Debtors and Reorganized Debtors, as applicable, hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax.  Such notice shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers.

**EEEE.** **Inconsistency**

190.    In the event of an inconsistency between the Plan, the Disclosure Statement, and the Disclosure Statement Supplement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in this Confirmation Order).   In the event of an inconsistency between this Confirmation Order and the Plan, the Disclosure Statement, or the Disclosure Statement Supplement, this Confirmation Order shall control.

**FFFF.** **Documents, Mortgages, and Instruments**

191.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

**GGGG.** **Substantial Consummation**

192.    Substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

**HHHH.**     **Effect of Failure of Conditions**

193.     If all of the conditions to effectiveness have not been satisfied or duly waived and the Effective Date has not occurred on or before the first Business Day that is more than thirty (30) days after the Confirmation Date, or by such later date as set forth by the Debtors in a notice Filed with the Bankruptcy Court prior to the expiration of such period, then the Debtors, with the consent of the Required Consenting First Lien Lenders, may File a motion to vacate this Confirmation Order.  Notwithstanding the Filing of such a motion, this Confirmation Order shall not be vacated if all of the conditions to consummation set forth in <u>Section 11.1</u> and <u>Section 11.2</u> of the Plan are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If this Confirmation Order is vacated pursuant to <u>Section 11.4</u> of the Plan, the Plan shall be null and void in all respects, this Confirmation Order shall be of no further force or effect, no distributions under the Plan shall be made, the Debtors and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Equity Interests, or any other Entity; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor or any other Person with respect to any matter set forth in the Plan.

**IIII.**   **Modifications or Amendments**

194.     The provisions governing the modification, revocation, or withdrawal of the Plan set forth in <u>Article XIV</u> of the Plan shall be, and hereby are, approved in their entirety.  The Debtors, subject to the consent requirements set forth in the Plan and the Restructuring Support

Agreement and subject to section 1127 of the Bankruptcy Code, may modify or amend the Plan
Supplement until the occurrence of the Effective Date.

**JJJJ.  Debtors' Actions Post-Confirmation Through the Effective Date**

195.    During the period from entry of this Confirmation Order through and until the
Effective Date, each of the Debtors shall continue to operate their business as a debtor in
possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy
Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court
that is in full force and effect.  During such period, the Debtors and all other parties in interest
under the Plan are authorized to execute such documents, agreements, or filings that are
contemplated by the Plan, the Plan Supplement, or the Restructuring Transactions without any
further order of this Bankruptcy Court or corporate action, and to take any actions necessary or
advisable or appropriate to implement the documents, agreements, or filings that are contemplated
by the Plan, the Plan Supplement, or the Restructuring Transactions, in each case subject to the
terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan,
upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting
obligations arising under any order of the Bankruptcy Court entered in connection with any of the
First Day Pleadings (as defined in the First Day Declaration).

**KKKK.        Notice of Confirmation and Effective Date**

196.    In accordance with Bankruptcy Rules 2002 and 3020(c), within five (5) Business
Days of the Effective Date, the Reorganized Debtors shall cause the notice of Confirmation and
occurrence of the Effective Date, substantially in the form attached hereto as **<u>Exhibit B</u>**
(the "<u>Notice of Effective Date</u>"), to be served on all known Holders of Claims and Equity Interests
and the Bankruptcy Rule 2002 service list.  Notwithstanding the foregoing, no service of the Notice
of Effective Date or of any kind shall be required to be mailed or made upon any Entity to whom

the Debtors mailed the Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors or the Reorganized Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Further, the Debtors and the Reorganized Debtors, as applicable, shall only be required to serve Holders who have not Filed a Proof of Claim in these Chapter 11 Cases with the Notice of Effective Date to the extent that such Holders have active electronic mail addresses for such Holders.  In addition, no later than five (5) Business Days after the Effective Date, the Debtors and the Reorganized Debtors, as applicable, shall cause the Notice of Effective Date, modified for publication, to be published on one occasion in *The New York Times* (national edition) or another similar nationally circulated news publication.  The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

## LLLL. Headings

197.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

## MMMM.    Final Order and Waiver of Stay

198.    For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately, be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

**<u>Exhibit A</u>**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |

**NINTH AMENDED JOINT CHAPTER 11 PLAN OF**
**FRANCHISE GROUP, INC. AND ITS DEBTOR AFFILIATES**

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:    emorton@ycst.com
         mlunn@ycst.com
         amielke@ycst.com
         sborovinskaya@ycst.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)

601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com
         nicole.greenblatt@kirkland.com
         derek.hunter@kirkland.com

- and -

Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500
Email:    mark.mckane@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

Dated:  May 14, 2025

---

1    The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a) PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

## <u>TABLE OF CONTENTS</u>

**ARTICLE I. DEFINITIONS AND INTERPRETATION** ...........................................................**3**

A.  Definitions..................................................................................................3
B.  Interpretation; Application of Definitions and Rules of Construction..............................28
C.  Appendices and Plan Documents....................................................................29
D.  Definitive Document Consent Rights. ..............................................................29
E.  Nature of the Restructuring Transactions. .........................................................30

**ARTICLE II. CERTAIN INTERCREDITOR AND INTER-DEBTOR ISSUES** .................**30**

2.1.  Settlement of Certain Intercreditor and Inter-Debtor Issues.............................30
2.2.  Formation of Debtor Groups for Convenience Purposes..................................30

**ARTICLE III. DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, U.S. TRUSTEE FEES, AND PRIORITY TAX CLAIMS**..................................................................................................................**30**

3.1.  DIP Claims.............................................................................................31
3.2.  Administrative Expense Claims.................................................................32
3.3.  Professional Fee Claims...........................................................................33
3.4.  Priority Tax Claims.................................................................................34
3.5.  U.S. Trustee Fees and Related Reporting Obligations. ..................................35

**ARTICLE IV. CLASSIFICATION OF CLAIMS AND INTERESTS**..................................**36**

4.1.  Classification of Claims and Equity Interests. ............................................36
4.2.  Unimpaired Classes of Claims. ................................................................37
4.3.  Impaired Classes of Claims. ....................................................................37
4.4.  Separate Classification of Other Secured Claims. .......................................38

**ARTICLE V. TREATMENT OF CLAIMS AND EQUITY INTERESTS** ...........................**38**

5.1.  Priority Non-Tax Claims (Class 1). ..........................................................38
5.2.  Other Secured Claims (Class 2). ..............................................................39
5.3.  Prepetition ABL Loan Claims (Class 3). ....................................................40
5.4.  Prepetition First Lien Loan Claims (Class 4). .............................................40
5.5.  Prepetition Second Lien Loan Claims (Class 5). ..........................................41
5.6.  OpCo General Unsecured Claims (Class 6)................................................41
5.7.  Prepetition HoldCo Loan Claims (Class 7). ...............................................42
5.8.  Freedom HoldCo General Unsecured Claims (Class 8-A). ............................42
5.9.  HoldCo Receivables General Unsecured Claims (Class 8-B). ........................42
5.10.  TopCo General Unsecured Claims (Class 8-C)...........................................43
5.11.  Intercompany Claims (Class 9). ..............................................................43
5.12.  Subordinated Claims (Class 10)..............................................................43
5.13.  Existing TopCo Equity Interests (Class 11)...............................................44
5.14.  Existing Intercompany Equity Interests (Class 12). ....................................44

**ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS** ................................................................................................**44**

6.1.   Class Acceptance Requirement ........................................................................ 44
6.2.   Tabulation of Votes on a Non-Consolidated Basis. .......................................... 45
6.3.   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown." ..... 45
6.4.   Voting Classes; Deemed Acceptance or Rejection by Non-Voting Classes. ......... 45
6.5.   Vacant and Abstaining Classes. ..................................................................... 45
6.6.   Controversy Concerning Impairment. ............................................................. 46
6.7.   Special Provision Governing Unimpaired Claims. ........................................... 46

**ARTICLE VII. MEANS FOR IMPLEMENTATION OF THE PLAN** ...............................**46**

7.1.   Non-Substantive Consolidation. .................................................................... 46
7.2.   Plan Equitization Transaction. ..................................................................... 46
7.3.   Partial Sale Transaction. .............................................................................. 47
7.4.   Continued Corporate Existence in Certain Debtors; Vesting of Assets; Dissolution of Certain Debtors. ............................................................... 47
7.5.   Indemnification Provisions in Organizational Documents. ............................... 49
7.6.   Sources for Cash Distributions under this Plan. ............................................. 50
7.7.   Take-Back Debt Facility. .............................................................................. 50
7.8.   New ABL Facility. ....................................................................................... 51
7.9.   Reorganized Debtors' Ownership. ................................................................. 52
7.10.  Litigation Trust. .......................................................................................... 52
7.11.  Exemption from Registration Requirements. ................................................. 58
7.12.  Organizational Documents. .......................................................................... 58
7.13.  Exemption from Certain Transfer Taxes and Recording Fees .......................... 59
7.14.  Other Tax Matters. ...................................................................................... 60
7.15.  Cancellation of Existing Securities and Agreements. ...................................... 60
7.16.  Boards. ....................................................................................................... 61
7.17.  Management. ............................................................................................... 61
7.18.  Directors and Officers Insurance Policies ..................................................... 61
7.19.  Corporate Action. ........................................................................................ 62
7.20.  Comprehensive Settlement of Claims and Controversies; Termination of Subordination Rights. ..................................................................... 63
7.21.  Additional Transactions Authorized Under this Plan. ...................................... 63
7.22.  Insurance Policies. ....................................................................................... 64

**ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS** ....................................**64**

8.1.   Distributions ............................................................................................... 64
8.2.   No Postpetition Interest on Claims. .............................................................. 64
8.3.   Date of Distributions. .................................................................................. 64
8.4.   Distribution Record Date. ............................................................................ 65
8.5.   Disbursing Agent. ........................................................................................ 65
8.6.   Delivery of Distribution. .............................................................................. 66

8.7.    Unclaimed Property. ................................................................................67
8.8.    Satisfaction of Claims. ............................................................................67
8.9.    Manner of Payment Under Plan. ..............................................................67
8.10.   De Minimis Cash Distributions. ..............................................................67
8.11.   Distributions on Account of Allowed Claims Only...................................67
8.12.   Fractional Shares. ....................................................................................68
8.13.   No Distribution in Excess of Amount of Allowed Claims. .......................68
8.14.   Foreign Currency Exchange Rate. ...........................................................68
8.15.   Setoffs and Recoupments.........................................................................68
8.16.   Withholding and Reporting Requirements. ..............................................68
8.17.   Claims Payable by Third Parties..............................................................69

**ARTICLE IX. PROCEDURES FOR RESOLVING CLAIMS ...............................69**

9.1.    Disputed Claims Process...........................................................................69
9.2.    Allowance of Claims.................................................................................70
9.3.    Claims Administration Responsibilities. ..................................................70
9.4.    Objections to Claims.................................................................................71
9.5.    Adjustment to Claims or Equity Interests without Objection.....................71
9.6.    No Distributions Pending Allowance. ......................................................71
9.7.    Distributions After Allowance. .................................................................71

**ARTICLE X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........72**

10.1.   Assumption and Rejection of Executory Contracts and Unexpired Leases. ...................72
10.2.   Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ...................73
10.3.   Claims Based on Rejection of Executory Contracts and Unexpired Leases. ...................75
10.4.   Contracts and Leases Entered into After the Petition Date.........................76
10.5.   Modifications, Amendments, Supplements, or Other Agreements. ............76
10.6.   Nonoccurrence of Effective Date...............................................................76
10.7.   Reservation of Rights.................................................................................76
10.8.   Employee Compensation and Benefits. .....................................................77

**ARTICLE XI. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN............................................................................................................78**

11.1.   Conditions Precedent to Confirmation......................................................78
11.2.   Conditions Precedent to the Effective Date...............................................78
11.3.   Satisfaction and Waiver of Conditions Precedent. ....................................80
11.4.   Effect of Failure of Conditions. ...............................................................81
11.5.   Binding Effect............................................................................................81
11.6.   Substantial Consummation. ......................................................................81

**ARTICLE XII. RELEASE, INJUNCTION, AND RELATED PROVISIONS.....................82**

12.1.   Discharge of Claims and Termination of Certain Equity Interests; Compromise and Settlement of Claims, Certain Equity Interests, and Controversies....................82
12.2.   Releases by the Debtors. ...........................................................................83

12.3.    Third-Party Release. ...................................................................................84
12.4.    Exculpation. ...............................................................................................86
12.5.    Discharge of Claims and Termination of Equity Interests........................87
12.6.    Injunction. ..................................................................................................88
12.7.    Setoffs and Recoupment. ...........................................................................88
12.8.    Release of Liens. ........................................................................................89

**ARTICLE XIII. RETENTION OF JURISDICTION** ..............................................**90**

**ARTICLE XIV. MISCELLANEOUS PROVISIONS** ...............................................**92**

14.1.    Dissolution of Creditors' Committee..........................................................92
14.2.    Termination of Professional Persons. .........................................................92
14.3.    Modifications and Amendments. ................................................................92
14.4.    Revocation or Withdrawal of this Plan. .....................................................93
14.5.    Allocation of Distributions under this Plan Between Principal and Equity Interest..........94
14.6.    Severability. ...............................................................................................94
14.7.    Governing Law. ..........................................................................................94
14.8.    Section 1125(e) of the Bankruptcy Code. ..................................................94
14.9.    Inconsistency..............................................................................................95
14.10.   Time. ...........................................................................................................95
14.11.   Reference to Monetary Figures...................................................................95
14.12.   Exhibits. .....................................................................................................95
14.13.   Reservation of Rights..................................................................................95
14.14.   Successors and Assigns...............................................................................95
14.15.   Notices. .......................................................................................................96
14.16.   Filing of Additional Documents. ...............................................................97
14.17.   Closing of Chapter 11 Cases. .....................................................................98
14.18.   Tax Matters. ...............................................................................................98

**ARTICLE XV. GLOBAL SETTLEMENT** ...............................................................**98**

## INDEX OF EXHIBITS

EXHIBIT I    Global Settlement Term Sheet

## NINTH AMENDED JOINT CHAPTER 11 PLAN OF
## FRANCHISE GROUP, INC. AND ITS DEBTOR AFFILIATES

Franchise Group, Inc. and each of the debtors and debtors-in-possession in the above-captioned cases (each, a "<u>Debtor</u>," and collectively, the "<u>Debtors</u>") propose this joint chapter 11 plan of reorganization (as amended, supplemented, or otherwise modified from time to time, this "<u>Plan</u>") for the resolution of the outstanding Claims against, and Equity Interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in <u>Article I</u> of this Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Equity Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classification of Claims and Equity Interests set forth in <u>Article IV</u> of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable and set forth herein. The Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made to the Disclosure Statement and Disclosure Statement Supplement for discussion of the Debtors' history, businesses, results of operations, historical financial information, projections, and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.

**The Non-Liquidating Debtors are pursuing the Plan Equitization Transaction, all as described in further detail in the Disclosure Statement and the Disclosure Statement Supplement, as applicable.**

**The American Freight Debtors are pursuing Store-Closing and Liquidation Sales, all as described in further detail in the Disclosure Statement. Following the Store-Closing and Liquidation Sales, the American Freight Debtors will be wound down. The proceeds of the Store-Closing and Liquidation Sales shall be distributed in accordance with the applicable provisions of this Plan.**

This Plan provides for and implements a Global Settlement, as incorporated into this Plan and embodied in the Global Settlement Term Sheet, annexed hereto as **Exhibit I**, by and among the Global Settlement Parties. Pursuant to the Global Settlement, the Global Settlement Parties have agreed to the terms of this Plan, including the treatment of Claims and Equity Interests and releases of Claims and Causes of Action set forth herein.

This Plan serves as a motion to approve the Global Settlement pursuant to Bankruptcy Rule 9019. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises and settlements provided for in the Global Settlement, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Holders of Claims and Equity Interests, and other parties in interest, and are fair, equitable, and reasonable.

ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN, THE DISCLOSURE STATEMENT, AND THE DISCLOSURE STATEMENT SUPPLEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD REVIEW THE SECURITIES LAW RESTRICTIONS AND NOTICES SET FORTH IN THIS PLAN (INCLUDING WITHOUT LIMITATION, UNDER <u>ARTICLE VII</u> HEREOF) IN FULL.

THE ISSUANCE OF ANY SECURITIES REFERRED TO IN THIS PLAN SHALL NOT CONSTITUTE AN INVITATION OR OFFER TO SELL, OR THE SOLICITATION OF ANY INVITATION OR OFFER TO BUY, ANY SECURITIES IN CONTRAVENTION OF APPLICABLE LAW IN ANY JURISDICTION.  NO ACTION HAS BEEN TAKEN, NOR WILL BE TAKEN IN ANY JURISDICTION THAT WOULD PERMIT A PUBLIC OFFERING OF ANY SECURITIES REFERRED TO IN THIS PLAN (OTHER THAN SECURITIES ISSUED PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE IN A DEEMED PUBLIC OFFERING) IN ANY JURISDICTION WHERE SUCH ACTION FOR THAT PURPOSE IS REQUIRED.

# ARTICLE I.
# DEFINITIONS AND INTERPRETATION

## A.    Definitions.

As used in this Plan, capitalized terms have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

**1.1.**    "*ABL Credit Agreement*" means that certain Third Amended and Restated Loan and Security Agreement, dated as of March 10, 2021, among Franchise Group, Inc., as a borrower, the other borrowers and guarantors party thereto, the ABL Credit Agreement Agent, and the lenders party thereto from time to time, as amended, restated, amended or restated, supplemented, or otherwise modified from time to time.

**1.2.**    "*ABL Credit Agreement Agent*" means JPMorgan Chase Bank, N.A., together with its successors, assigns, or any replacement agent appointed pursuant to the terms of the ABL Credit Agreement, in its capacity as administrative agent and collateral agent for the lenders under the ABL Credit Agreement.

**1.3.**    "*ABL Lenders*" means, collectively, and as of the relevant time, those lenders that are party to the ABL Credit Agreement.

**1.4.**    "*ABL Loan Documents*" means the ABL Credit Agreement and any Financing Agreements (as defined in the ABL Credit Agreement).

**1.5.**    "*ABL Loans*" means, collectively, the loans arising under or pursuant to the ABL Credit Agreement.

**1.6.**    "*ABL Priority Collateral*" means any Collateral securing the obligations arising under the ABL Credit Agreement.

**1.7.**    "*Ad Hoc Group*" means that certain ad hoc group of certain Consenting First Lien Lenders, represented by, among others, Paul Hastings LLP, Landis Rath & Cobb LLP, and Lazard Frères & Co., as may be reconstituted from time to time.

**1.8.**    "*Ad Hoc Group Advisors*" means, collectively, (a) Paul Hastings LLP, as counsel to the Ad Hoc Group, (b) Lazard Frères & Co., as financial advisor to the Ad Hoc Group, (c) Landis Rath & Cobb LLP, as Delaware counsel to the Ad Hoc Group, and (d) such other professionals that may be retained by or on behalf of the Ad Hoc Group (including the retention of any such professional made by Paul Hastings LLP), solely in the case referred to in this clause (d), with the consent of the Debtors.

**1.9.**    "*Administrative Bar Date*" means the applicable deadline by which all requests for Administrative Expense Claims must be Filed and served on the Debtors, which shall be the first Business Day that is or follows the date that is thirty (30) days after the Effective Date; provided that Filing a request for payment of Administrative Expense Claims is not required where the Plan, the Bankruptcy Code, or a Final Order does not require such Filing.

**1.10.**    "*Administrative Expense Claim*" means a Claim (other than any DIP Claim) for costs and expenses of administration of the Chapter 11 Cases Allowed under sections 503(b), 507(a)(2), 507(b), or, if applicable, 1114(e)(2) of the Bankruptcy Code, including, but not limited to:  (a) any actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services, and payments for inventories, leased equipment, and premises); (b) compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331, 363, or 503(b) of the Bankruptcy Code to the extent incurred on or before the Effective Date; (c) all U.S. Trustee Fees; (d) any 503(b)(9) Claims; and (e) any Claims that have been designated "Administrative Expense Claims" by Final Order of the Bankruptcy Court.

**1.11.**    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity were a debtor in a case under the Bankruptcy Code.  For the avoidance of doubt, none of (a) Conn's, Inc., (b) B. Riley Financial, Inc., and (c) each of their respective Affiliates (excluding Freedom VCM Holdings, LLC and its subsidiaries) shall be "Affiliates" of the Debtors for purposes of this Plan.

**1.12.**    "*Allowed*" means, with respect to a Claim or Equity Interest under this Plan, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim or Proof of Equity Interest Filed by the Bar Date or a request for payment of an Administrative Expense Claim Filed by the Administrative Bar Date, as applicable (or for which Claim or Equity Interest a Proof of Claim or Proof of Equity Interest is not required to be Filed under the Plan, the Bankruptcy Code, the Bar Date Order, or a Final Order, including the Interim DIP Order and Final DIP Order); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim or Proof of Equity Interest, as applicable, has been timely Filed; (c) a Claim allowed in any stipulation that is approved by the Bankruptcy Court by a Final Order; (d) a Claim allowed pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; or (e) a Claim allowed pursuant to the Plan or a Final Order, including the Interim DIP Order and Final DIP Order; underlined provided that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Confirmation Order, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim or Proof of Equity Interest is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Unless expressly waived by the Plan, the Allowed amount of Claims or Equity Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable.  For the avoidance of doubt, a Proof of Claim or Proof of Equity Interest Filed after the Bar Date or a request for payment of an Administrative Expense Claim Filed after the Administrative Bar Date, as

4

applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

**1.13.**    "*American Freight Debtors*" means, collectively, Franchise Group Newco Intermediate AF, LLC and each of Franchise Group Newco Intermediate AF, LLC's direct and indirect subsidiaries.

**1.14.**    "*American Freight Liquidation Proceeds*" means net Cash proceeds generated by the sale, lease, liquidation, or other disposition of property owned by the American Freight Debtors.

**1.15.**    "*Asset Purchase Agreement*" means that certain Asset Purchase Agreement, dated as of April 15, 2025 (together with all schedules, exhibits, and ancillary documents related thereto, and as may be amended, supplemented, or modified from time to time), by and between Franchise Group Intermediate V, LLC and TVS Buyer, LLC or such other definitive agreement for the sale of all of the assets of the Vitamin Shoppe Debtors, as applicable.

**1.16.**    "*Assumed Contracts*" means those Executory Contracts and Unexpired Leases that shall be assumed by the Non-Liquidating Debtors.

**1.17.**    "*Assumed Contracts List*" means the list or lists of Assumed Contracts, which are included in the Plan Supplement and provide for proposed Cure Costs, as applicable, as may be amended or supplemented up to and including the Effective Date.

**1.18.**    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims, Causes of Actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Actions, or remedies under chapter 5 and section 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common Law, including fraudulent transfer Laws.

**1.19.**    "*Ballot*" means the form distributed by the Debtors or the Claims Agent to Holders of Impaired Claims entitled to vote on this Plan on which the acceptance or rejection of this Plan is to be indicated.

**1.20.**    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

**1.21.**    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

**1.22.**    "*Bankruptcy Rules*" means (a) the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, (b) the Local Rules, and (c) any chambers rules of the Bankruptcy Court.

**1.23.**    "*Bar Date*" means the applicable date established by the Bar Date Order by which respective Proofs of Claim and Proofs of Equity Interest must be Filed.

**1.24.**  "*Bar Date Order*" means the *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising under 503(b)(9) of the Bankruptcy Code) and (B) Approving the Form and Manner of Notice Thereof* [Docket No. 354], entered by the Bankruptcy Court on December 6, 2024.

**1.25.**  "*Bidding Procedures Order*" means the *Order (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief* [Docket No. 444], entered by the Bankruptcy Court on December 16, 2024.

**1.26.**  "*Boards*" means, collectively, the applicable boards of directors or other governing bodies of the Debtors or Reorganized Debtors, as applicable.

**1.27.**  "*Business Day*" means any day other than a Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or a day on which commercial banks are authorized to close under the Laws of, or are in fact closed for general business in, the state of New York.

**1.28.**  "*Buyer*" means the "Buyer" under and as defined in the Sale Documents.

**1.29.**  "*Cash*" means cash and cash equivalents, including bank deposits, checks, and the equivalents thereof, in the legal tender of the United States of America.

**1.30.**  "*Cash Sale Proceeds*" means the Sale Proceeds that are Cash.

**1.31.**  "*Causes of Action*" means collectively, any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on or after the Petition Date, in contract or in tort, in Law or in equity or pursuant to any other theory of Law (including under any state or federal securities laws).  Causes of Action also include:  (a) Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (b) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (c) any Avoidance Actions.

**1.32.**  "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

**1.33.**  "*Claim*" means any claim as defined in section 101(5) of the Bankruptcy Code against any Debtor or property of any Debtor, including any Claim arising after the Petition Date.

**1.34.** "*Claims Agent*" means Kroll Restructuring Administration LLC in its capacity as noticing, claims, and solicitation agent for the Debtors.

**1.35.** "*Claims Objection Deadline*" means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, or in the case of an Administrative Expense Claim, 60 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such Claims.

**1.36.** "*Claims Register*" means the official register of Claims maintained by the clerk of the Bankruptcy Court or the Claims Agent.

**1.37.** "*Class*" means a class of Claims or Equity Interests established under Article IV of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.38.** "*Collateral*" means, at any time, any assets and any property of the Debtors or Reorganized Debtors, as applicable, wherever located, whether real, personal or mixed, or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim.

**1.39.** "*Confirmation*" means the Bankruptcy's Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

**1.40.** "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.41.** "*Confirmation Hearing*" means a hearing to be held by the Bankruptcy Court regarding Confirmation of this Plan (as may be amended pursuant to Section 14.3 of this Plan), as such hearing may be adjourned or continued from time to time.

**1.42.** "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, as may be amended, modified, or supplemented from time to time, which shall be subject to the Definitive Document Consent Rights and shall be reasonably acceptable to the Global Settlement Parties.

**1.43.** "*Consenting First Lien Lenders*" means, collectively, as of the relevant time, those First Lien Lenders that are party to the Restructuring Support Agreement.

**1.44.** "*Creditors' Committee*" means the statutory committee of unsecured creditors, appointed in the Chapter 11 Cases in accordance with section 1102 of the Bankruptcy Code, as identified in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 188], Filed by the U.S. Trustee on November 19, 2024, as the same may be reconstituted from time to time.

**1.45.** "*Critical Vendors Order*" means the *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers & Logistics Providers, and 503(b)(9) Claimants; and (II) Granting Related Relief* [Docket No. 410], entered by the Bankruptcy Court on December 11, 2024.

**1.46.** "*CRO*" means David Orlofsky, as Chief Restructuring Officer of Freedom VCM Holdings, LLC and Franchise Group, Inc.

**1.47.** "*Cure Cost*" means (a) all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) and (b) to the extent required to be cured by the Bankruptcy Code, other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code.

**1.48.** "*Cure Dispute*" has the meaning set forth in Section 10.2 of this Plan.

**1.49.** "*D&O Liability Insurance Policies*" means, collectively, all insurance policies (including any "tail policies" and all agreements, documents, or instruments related thereto) issued at any time to or providing coverage to any of the Debtors for current or former directors', managers', employees', and/or officers' liability.

**1.50.** "*Debtor*" has the meaning set forth in the preamble.

**1.51.** "*Debtor Release*" has the meaning set forth in Section 12.2 of this Plan.

**1.52.** "*Debtor Releasing Party*" means any Releasing Party that is a Debtor.

**1.53.** "*Definitive Document Consent Rights*" means the documentation principles set forth in Section I.D. hereof.

**1.54.** "*Definitive Documents*" has the meaning set forth in the Restructuring Support Agreement.

**1.55.** "*DIP Agent*" means the administrative and collateral agent for the DIP Lenders with respect to the DIP Facility, which shall be either (a) Wilmington Trust, National Association or (b) another financial institution selected by, and qualified to perform the duties customarily associated with such roles as determined by, the Required DIP Lenders and reasonably acceptable to Franchise Group, Inc.

**1.56.** "*DIP Backstop Premium*" has the meaning set forth in the DIP Credit Agreement.

**1.57.** "*DIP Budget*" means the 13-week cash flow projection in form and substance acceptable to the Required DIP Lenders, reflecting (a) the loan parties under the DIP Credit Agreement's anticipated Cash receipts and disbursements for each calendar week during the period from the week in which the Petition Date occurs through and including the end of the thirteenth calendar week thereafter and (b) a professional fee accrual budget with respect to the anticipated fees and expenses to be incurred by Professional Persons during the 13-week period.

**1.58.** "*DIP Claims*" means, collectively, all Claims of the DIP Agent and/or the DIP Lenders related to, arising under, or in connection with the Interim DIP Order, the Final DIP Order and the DIP Documents, including, without limitation, Claims for all principal amounts outstanding, interest, fees, reasonable and documented expenses (including the reasonable and

documented expenses of counsel as set forth in the DIP Credit Agreement), costs and other charges of the DIP Agent and the DIP Lenders in respect of the obligations of the Debtors arising under the DIP Credit Agreement, including, without limitation, the Tranche A DIP Loan Claims and the Tranche B DIP Loan Claims.

1.59. "*DIP Credit Agreement*" means the Senior Secured Super-Priority Priming Term Loan Debtor-in-Possession Credit Agreement, dated as of November 7, 2024, by and among the Debtors and the DIP Lenders, as the same may be modified, amended or supplemented from time to time, in accordance with the terms thereof (and including any and all documents and instruments executed in connection therewith).

1.60. "*DIP Documents*" means collectively, the DIP Motion, the DIP Orders, the DIP Credit Agreement, and any other agreements, documents, and instruments delivered or entered into in connection therewith, including, without limitation, any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, as any of the foregoing may be amended, modified, or supplemented from time to time in accordance with the terms hereof, each of which shall be subject to the Definitive Document Consent Rights.

1.61. "*DIP Equitization*" has the meaning set forth in Section 3.1 of this Plan.

1.62. "*DIP Facility*" means the debtor-in-possession financing facility on the terms and conditions set forth in the DIP Credit Agreement.

1.63. "*DIP Lenders*" means, collectively, and as of the relevant time, those lenders that are party to the DIP Credit Agreement.

1.64. "*DIP Loans*" means, together, the Tranche A DIP Loans and the Tranche B DIP Loans.

1.65. "*DIP Motion*" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 51], Filed by the Debtors on November 4, 2024.

1.66. "*DIP Orders*" means, as applicable, the Interim DIP Order and Final DIP Order approving, among other things, the terms of the DIP Facility and the DIP Credit Agreement.

1.67. "*DIP Premium Conversion*" means the conversion by (a) any Holder of DIP Claims (and/or one or more Related Funds of such Holder, to the extent such Related Funds are Holders of DIP Claims) that received a DIP Backstop Premium or Commitment Premium (as defined in the DIP Credit Agreement) as of closing of the DIP syndication process, and (b) any Holder of DIP Claims that receives an Exit Premium (as defined in the DIP Credit Agreement), of its DIP Backstop Premium, Commitment Premium, and/or its Exit Premium, as applicable, into Reorganized Common Equity at a 25% discount to total equity value of the Reorganized Debtors as set forth in the Disclosure Statement and/or the Plan Supplement.

**1.68.**    "*Disallowed*" means a finding or conclusion of Law of the Bankruptcy Court in a Final Order, or provision in the Confirmation Order, disallowing a Claim or Equity Interest.

**1.69.**    "*Disbursing Agent*" means the Reorganized Debtors or the Entity designated by the Reorganized Debtors to make distributions under this Plan; <u>provided</u> that, for purposes of making distributions to holders of Litigation Trust Units, the Disbursing Agent shall be the Litigation Trustee.

**1.70.**    "*Disclosure Statement*" means the *Disclosure Statement for the Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No. 1014], including all exhibits and schedules annexed thereto or referred to therein (in each case, as it or they may be amended, modified, or supplemented from time to time with the consent of the Global Settlement Parties and subject to the Definitive Document Consent Rights).

**1.71.**    "*Disclosure Statement Hearing*" means a hearing held by the Bankruptcy Court on February 19, 2025 to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code.

**1.72.**    "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court approving the Disclosure Statement [Docket No. 1019].

**1.73.**    "*Disclosure Statement Supplement*" means the *Disclosure Statement Supplement for the Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates*, a copy of which is attached as <u>Exhibit A</u> to the Disclosure Statement Supplement Order.

**1.74.**    "*Disclosure Statement Supplement Order*" means the *Order (I) Approving the Form, Content, and Manner of Notice of the Disclosure Statement Supplement, (II) Approving Certain Deadlines and procedures in Connection with Confirmation, and (II) Granting Related Relief* [Docket No. 1322].

**1.75.**    "*Disputed*" means, as to a Claim or an Equity Interest, a Claim or an Equity Interest: (a) that is not Allowed; (b) that is not Disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or Proof of Equity Interest, or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

**1.76.**    "*Distribution Record Date*" means the date for purposes of determining which Holders of Allowed Claims are eligible to receive distributions under the Plan, which date shall be the Confirmation Date, or such other date as shall be agreed by the Debtors and the Required Consenting First Lien Lenders, in consultation with the other Global Settlement Parties; <u>provided</u>, further that the Distribution Record Date shall not apply to any securities of the Debtors deposited with DTC, the holders of which shall receive a distribution in accordance with the customary procedures of DTC.

**1.77.**    "*DTC*" means The Depository Trust Company.

**1.78.**    "*Effective Date*" means the date specified by the Debtors in a notice Filed with the Bankruptcy Court as the date on which this Plan shall take effect, which date shall be the first

Business Day on which all of the conditions set forth in <u>Section 11.2</u> of this Plan have been satisfied or waived in accordance with <u>Section 11.3</u> of this Plan, and no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter; <u>provided</u> that, the Reorganized Common Equity and the Take-Back Term Loans shall be issued on the Effective Date.

      **1.79.**  "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

      **1.80.**  "*Equity Interest*" means collectively, the shares (or any class thereof) of capital stock (including common stock and preferred stock), limited liability company interests, and any other equity, ownership, membership, profit interests, or phantom equity of or in any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of capital stock (including common stock and preferred stock), limited liability company interests, or other equity, ownership, membership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

      **1.81.**  "*Estate*" means, as to each Debtor, the estate created in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

      **1.82.**  "*Estate Professional(s)*" means any Professional Person(s) retained by the Estates.

      **1.83.**  "*Excluded Parties*" has the meaning set forth in <u>Section 1.191</u> of this Plan.

      **1.84.**  "*Exculpated Parties*" means, collectively, and in each case, solely in their respective capacities as such:  (a) the Debtors, (b) the Debtors' directors and officers who served at any time between the Petition Date and the Effective Date, (c) the Creditors' Committee, (d) the members of the Creditors' Committee and the individuals who served on the Creditors' Committee on behalf of each member in their capacities as such, (e) the Professional Persons, (f) as to all Debtors who are limited liability companies, their members, and (g) with respect to each of the foregoing in clauses (a) and (c), solely to the extent they are Estate fiduciaries, and without duplication of parties otherwise set forth above, each such Entity's current and former Affiliates, and each such Entity's and its current and former Affiliates' current and former subsidiaries, officers, directors (including any sub-committee of directors), managers, principals, members (including ex officio members and managing members), employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such on or before the Petition Date and prior to or on the Effective Date; <u>provided</u> that, for purposes of the foregoing clause (g), any "former" party shall only be treated as an "Exculpated Party" to the extent they acted as an Estate fiduciary after the Petition Date; <u>provided</u> that, notwithstanding the foregoing, Brian Kahn and Prophecy Asset Management LP, Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, WFG and each of their respective Related Parties and Affiliates (other than any officers, directors, or employees of the Debtors that acted as an Estate fiduciary after the Petition Date), shall not be included in the definition of Exculpated Parties and, for the avoidance of doubt, none of such parties shall be considered Affiliates of the Debtors for purposes of this proviso.

**1.85.** "*Exculpation*" means the exculpation provision set forth in Section 12.4 of this Plan.

**1.86.** "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

**1.87.** "*Existing ABL Intercreditor Agreement*" means that certain Amended Intercreditor Agreement, dated as of November 22, 2021, among the ABL Credit Agreement Agent, the First Lien Credit Agreement Agent, the Second Lien Credit Agreement Agent, Franchise Group, Inc., Valor Acquisition, LLC, Franchise Group Newco Intermediate AF, LLC Pet Supplies "Plus", LLC, as borrowers, the other borrowers from time to time party thereto, and the other loan parties from time to time party thereto, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

**1.88.** "*Existing Equity Interests*" means, collectively, Equity Interests existing immediately prior to the Effective Date.

**1.89.** "*Existing First Lien/Second Lien Intercreditor Agreement*" means that certain Amended and Restated First Lien/Second Lien Intercreditor Agreement, dated as of November 22, 2021, among the First Lien Credit Agreement Agent (as successor to JPMorgan Chase Bank, N.A.), the Second Lien Credit Agreement Agent, Franchise Group, Inc., the other grantors referred to therein, and the other parties from time to time party thereto, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

**1.90.** "*Existing Intercompany Equity Interests*" means, collectively, any Existing Equity Interests in a Debtor or a subsidiary of a Debtor that are owned or held by another Debtor.

**1.91.** "*Existing TopCo Equity Interests*" means, collectively, any Existing Equity Interests in TopCo.

**1.92.** "*Exit ABL Facility*" means an exit asset based loan facility provided by third parties acceptable to the Debtors and the Required Consenting First Lien Lenders, in an amount necessary to refinance all Allowed Prepetition ABL Loan Claims outstanding under the existing ABL Credit Agreement minus any amounts distributed under clause (i) of Section 5.3(a) of this Plan, upon such terms and conditions acceptable to the Required Consenting First Lien Lenders and the Debtors.

**1.93.** "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or the Claims Agent.

**1.94.** "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 414], entered by the Bankruptcy Court on December 11, 2024.

**1.95.** "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing thereof has been timely sought, or, if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied, or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be Filed with respect to such order or judgment.

**1.96.** "*First Lien Credit Agreement*" means that certain First Lien Credit Agreement, dated as of March 10, 2021, among Franchise Group, Inc., as lead borrower, the other borrowers and guarantors party thereto, the First Lien Credit Agreement Agent, and the lenders party thereto from time to time, as amended, restated, amended or restated, supplemented, or otherwise modified from time to time.

**1.97.** "*First Lien Credit Agreement Agent*" means Wilmington Trust, National Association (as successor to JPMorgan Chase Bank, N.A.), in its capacity as successor administrative agent and successor collateral agent for the First Lien Lenders.

**1.98.** "*First Lien Lenders*" means, collectively, beneficial holders of, or investment advisors, sub-advisors or managers of discretionary funds, accounts or sub-accounts that beneficially hold, Prepetition First Lien Loan Claims.

**1.99.** "*First Lien Loan Documents*" means, collectively, the "Loan Documents" as defined in the First Lien Credit Agreement.

**1.100.** "*Freedom HoldCo Debtor(s)*" means, collectively and individually, Freedom VCM Interco, Inc. and Freedom VCM, Inc.

**1.101.** "*Freedom HoldCo Debtor Litigation Trust Claims*" means, collectively, all Claims and Causes of Action against non-Debtors belonging to any or all of the Freedom HoldCo Debtors, other than (a) Claims and Causes of Action that are released pursuant to Section 12.2 of this Plan and (b) the Reorganized Debtors' Retained Causes of Action.

**1.102.** "*Freedom HoldCo General Unsecured Claim*" means any General Unsecured Claim against any of the Freedom HoldCo Debtors.

**1.103.** "*Freedom HoldCo Independent Director*" means Michael Wartell, as independent director appointed to the board of directors at each Freedom HoldCo Debtor.

**1.104.**  "*Freedom HoldCo Independent Director Report*" means the report issued by the Freedom HoldCo Independent Director regarding the Freedom HoldCo Independent Investigation, the conclusions of which were included as <u>Exhibit J</u> to the *Plan Supplement for the Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1182].

**1.105.**  "*Freedom HoldCo Independent Investigation*" means any investigation conducted by the Freedom HoldCo Independent Director.

**1.106.**  "*Freedom Lender Group*" means, collectively, the lenders identified in the *Verified Statement of the Ad Hoc Group of Freedom Lenders Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedures* [Docket No. 229], Filed November 22, 2024, as may be amended or supplemented from time to time.

**1.107.**  "*General Unsecured Claim*" means any unsecured Claim, other than an Administrative Expense Claim, a DIP Claim, a Priority Non-Tax Claim, a Priority Tax Claim, a Professional Fee Claim, a Secured Claim, an Intercompany Claim, or a Subordinated Claim, including, without limitation, Claims arising from the rejection of Executory Contracts and Unexpired Leases, and Claims arising from any litigation or other court, administrative or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by, a Debtor in connection therewith.  For the avoidance of doubt, a "General Unsecured Claim" excludes any Equity Interests.

**1.108.**  "*General Unsecured Creditors Litigation Trust Allocation*" means 12% of the Litigation Trust Units, which shall be distributed to Holders of Allowed OpCo General Unsecured Claims (excluding, for the avoidance of doubt, any Litigation Trust Units allocated to the Holders of Prepetition First Lien Loan Claims or Holders of Prepetition Second Lien Loan Claims) and the Holders of Allowed Freedom HoldCo General Unsecured Claims, and which shall entitle the Holders of Allowed OpCo General Unsecured Claims and Holders of Allowed Freedom HoldCo General Unsecured Claims, in the aggregate, to receive 12% of the net proceeds of the Litigation Trust.

**1.109.**  "*Global Settlement*" means the settlement agreed to by the Debtors, the Creditors' Committee, the Ad Hoc Group consisting of Required Consenting First Lien Lenders, and the Freedom Lender Group, and embodied in the Global Settlement Term Sheet, which settlement resolves various disputes, provides valuable consideration to the Debtors and the Estates, and grants certain releases on the terms and conditions provided for therein, as incorporated into this Plan; <u>provided</u> that such terms shall become binding on the Global Settlement Parties solely in the event the Global Settlement Conditions are satisfied or waived.

**1.110.**  "*Global Settlement Conditions*" means the following conditions precedent to the effectiveness of the Global Settlement:  (a) Confirmation of the Plan with respect to each of the Debtors; (b) each of the members of the Freedom Lender Group (i) irrevocably voting in favor of this Plan (including the mutual releases set forth herein) and opting in to the Third-Party Release on account of all of their Claims and in all capacities and (ii) withdrawing or permanently staying all litigation related to the Debtors commenced or initiated by the Freedom Lender Group, including, without limitation (A) all litigation related to the Plan and/or Confirmation, (B) the *Motion of OpCo 2L Agent and Ad Hoc Group of Second Lien Lenders for Allowance of a*

*Superpriority Administrative Expense Claim* [Docket No. 978], (C) the appeal of the Final DIP Order in *Freedom Lender Group v. Franchise Group, Inc., et al*, Case No. 24-1404 (D. Del. 2024), (D) the appeal of the Critical Vendors Order in *Freedom Lender Group v. Franchise Group, Inc., et al.*, Case No. 24-1403 (D. Del. 2024), (E) the appeal of the Bidding Procedures Order in *Freedom Lender Group v. Franchise Group, Inc., et al.*, Case No. 24-1405 (D. Del. 2024), and (F) the appeal of the Order Denying Exclusivity Termination in *Freedom Lender Group v. Franchise Group, Inc., et al.*, Case No. 24-1394 (D. Del. 2024); (c) the Creditors' Committee withdrawing or permanently staying all litigation related to the Debtors or the Freedom Lender Group commenced or initiated by the Creditors' Committee, including (A) the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Standing and Authorizing the Prosecution of Certain Challenge Claims on Behalf of the Bankruptcy Estates* [Docket No. 855] and (B) the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting the Committee Leave, Standing, and Authority to Commence, Prosecute and Settle Certain Claims on Behalf of the OpCo Debtors' Estates* [Docket No. 1200]; and (d) the Ad Hoc Group (i) irrevocably voting in favor of the Plan (including the mutual releases set forth herein) and opting in to the Third-Party Release on account of all of their Claims and in all capacities, and (ii) withdrawing or permanently staying, or directing the First Lien Credit Agreement Agent to withdraw or permanently stay, all litigation related to the Debtors, the Second Lien Credit Agreement Agent, or the Freedom Lender Group commenced or initiated by the Ad Hoc Group or the First Lien Credit Agreement Agent, including the adversary proceeding Filed by the First Lien Credit Agreement Agent against the Second Lien Credit Agreement Agent on March 23, 2025.

**1.111.** "*Global Settlement Parties*" means, collectively, the Debtors, the Creditors' Committee, the Ad Hoc Group consisting of Required Consenting First Lien Lenders, and the Freedom Lender Group.

**1.112.** "*Global Settlement Term Sheet*" means that certain term sheet setting forth the material terms of the Global Settlement, as agreed to by the Global Settlement Parties and incorporated into this Plan, dated April 17, 2025, which is attached as <u>Exhibit A</u> to the *Notice of Global Settlement* [Docket No. 1290]. A copy of the Global Settlement Term Sheet is annexed hereto as **<u>Exhibit I</u>**.

**1.113.** "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

**1.114.** "*HoldCo Credit Agreement*" means that certain Credit Agreement, dated as of August 21, 2023, among Freedom VCM, Inc., as borrower, Freedom VCM Interco, Inc., as holdings, the HoldCo Credit Agreement Agent, and the lenders party thereto from time to time, as amended, restated, amended or restated, supplemented, or otherwise modified from time to time.

**1.115.** "*HoldCo Credit Agreement Agent*" means Alter Domus (US) LLC, in its capacity as administrative agent and collateral agent for the HoldCo Lenders.

**1.116.** "*HoldCo Debtor(s)*" means, collectively and individually, Freedom VCM Holdings, LLC, each HoldCo Receivables Debtor, and each Freedom HoldCo Debtor.

**1.117.** "*HoldCo Lenders*" means, collectively, beneficial holders of, or investment advisors, sub-advisors or managers of discretionary funds, accounts or sub-accounts that beneficially hold, Prepetition HoldCo Loan Claims.

**1.118.** "*HoldCo Receivables Debtor(s)*" means, collectively and individually, Freedom VCM Interco Holdings, Inc., Freedom Receivables II, LLC, and Freedom VCM Receivables, Inc.

**1.119.** "*HoldCo Receivables General Unsecured Claim*" means any General Unsecured Claim against any of the HoldCo Receivables Debtors.

**1.120.** "*Holder*" means any Entity or Person holding a Claim against or an Equity Interest in any Debtor, as applicable.

**1.121.** "*Impaired*" means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.122.** "*Implied Common Equity Value*" means, (a) if the closing of the Partial Sale Transaction has not been consummated as of the Effective Date, $1.1 billion minus the net debt of New TopCo and its subsidiaries as of the Effective Date, provided that, such net debt as of the Effective Date shall not exceed $600 million, and (b) if the closing of the Partial Sale Transaction has been consummated as of the Effective Date, $1.1 billion minus each of (i) the net proceeds from the Partial Sale Transaction received by the Debtors as of the Effective Date (which, for purposes of calculating this deduction, shall not be less than $177.25 million) and (ii) the amount of net debt of New TopCo and its subsidiaries (other than the Vitamin Shoppe Debtors) as of the Effective Date; provided that, such net debt as of the Effective Date shall not exceed $445 million. For purposes of calculating the amount of net debt for purposes of calculating Implied Common Equity Value, any payments on account of any Administrative Expense Claims or Cure Costs that are made "as soon as reasonably practicable" after the Effective Date (excluding any administrative costs that have been assumed by the Buyer in the Partial Sale Transaction) in lieu of making such payments on the Effective Date shall be deemed to have been made on the Effective Date.

**1.123.** "*Independent Directors*" means, collectively, Todd Arden, John Hartmann, Christopher P. Meyer, and Michael Wartell, each in their capacities as members of the board of directors of any of the Debtors.

**1.124.** "*Intercompany Claim*" means any Claim, Cause of Action, or remedy held by or asserted against a Debtor by another Debtor. For the avoidance of doubt, the meaning of "Intercompany Claims" includes any postpetition Administrative Expense Claims that could be asserted between any of the Freedom HoldCo Debtors, on the one hand, and any of the other Debtors, on the other hand, including any Claims on account of Professional Fee Claims.

**1.125.** "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the*

*Automatic Stay, and (V) Granting Related Relief* [Docket No. 134], entered by the Bankruptcy Court on November 7, 2024.

1.126. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

1.127. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.128. "*Litigation Trust*" means the trust to be established on the Effective Date to administer the Permitted Litigation Claims.

1.129. "*Litigation Trust Advisory Board*" means a three-person oversight committee which shall have oversight over the Litigation Trust in accordance with the Litigation Trust Agreement and which shall be appointed as follows: (a) two designees of the Freedom HoldCo Debtors (which designees shall be selected by the Freedom Lender Group) and (b) one designee of the OpCo Debtors (which designee shall be selected by the Creditors' Committee with the consent of the Required Consenting First Lien Lenders). The identities of the members of the Litigation Trust Advisory Board shall be set forth in the Plan Supplement.

1.130. "*Litigation Trust Agreement*" means that certain agreement entered into no later than the Effective Date, which shall be in form and substance acceptable to the Global Settlement Parties, setting forth, among other things, the terms and conditions for the establishment of the Litigation Trust and the appointment of the Litigation Trustee.

1.131. "*Litigation Trust Assets*" means, collectively, (a) the Litigation Trust Escrow Account and (b) the Permitted Litigation Claims, plus any additional amounts funded into the Litigation Trust Escrow Account following the Effective Date.

1.132. "*Litigation Trust Escrow Account*" means an account funded and paid to the Litigation Trust by the Debtors and other parties (if applicable) with Cash no later than the Effective Date in an amount equal to the Litigation Trust Escrow Amount.

1.133. "*Litigation Trust Escrow Amount*" means the aggregate amount equal to (a) (i) $21 million minus (ii) the total amount of fees and expenses (including transaction and success fees, if any) incurred on or after the Petition Date through the Effective Date by all Professional Persons retained by the Creditors' Committee under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5), or any other provision of the Bankruptcy Code, which amount shall include, without limitation, the Professional Fee Escrow Amount for all Professional Persons retained by the Creditors' Committee (it being agreed that all Global Settlement Parties, including the Creditors' Committee, shall take commercially reasonable efforts to ensure that the Professional Fee Claims of the Professional Persons of the Creditors' Committee do not exceed $16 million in total fees and expenses), plus (b) the TopCo Cash Allocation; provided that, for the avoidance of doubt, the TopCo Cash Allocation shall not be reduced or netted by any postpetition Administrative Expense Claims that may be incurred by or otherwise allocable to the Freedom HoldCo Debtors.

**1.134.** "*Litigation Trust Expenses*" means the reasonable and documented fees and expenses incurred by the Litigation Trust (including any taxes imposed on or payable by the Litigation Trust and professional fees), any professionals retained by the Litigation Trust, and any additional amount determined to be necessary by the Litigation Trustee to adequately reserve for the operating expenses of the Litigation Trust that shall be paid out of the Litigation Trust Escrow Account.

**1.135.** "*Litigation Trust Units*" means, collectively, the non-certificated beneficial interests in the Litigation Trust granted to each Holder of Allowed Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, Allowed OpCo General Unsecured Claims, Allowed Freedom HoldCo General Unsecured Claims, and Allowed Prepetition HoldCo Loan Claims, which shall entitle each such Holder to a *pro rata* share of the proceeds of the Litigation Trust Assets net of the Litigation Trust Expenses, subject to the applicable Litigation Trust Units Allocations and the terms of the Plan and the Litigation Trust Agreement.

**1.136.** "*Litigation Trust Units Allocations*" means, collectively, (a) the Prepetition First Lien Loan Claims Litigation Trust Allocation, (b) the General Unsecured Creditors Litigation Trust Allocation, and (c) the Prepetition OpCo 2L/HoldCo Loan Claims Litigation Trust Allocation.

**1.137.** "*Litigation Trustee*" means the Person or Entity (or any successor thereto) who or which, on and after the Effective Date, shall have the rights, powers, and duties as set forth in this Plan and the Litigation Trust Agreement.

**1.138.** "*Litigation Trustee Duties*" has the meaning set forth in <u>Section 7.10(b)(i)</u> of this Plan.

**1.139.** "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.140.** "*Management Incentive Plan*" means, to the extent applicable, any management incentive plan of the Reorganized Debtors, which shall be implemented by the New Board.

**1.141.** "*New ABL Credit Agreement*" means the loan agreement memorializing the New ABL Facility, the material terms of which shall be included in the Plan Supplement, and which shall be entered into by one or more of the Reorganized Debtors, the New ABL Credit Agreement Agent, and the New ABL Facility Lenders.

**1.142.** "*New ABL Credit Agreement Agent*" means the administrative agent under the New ABL Credit Agreement, together with its successors, assigns, or any replacement agent appointed pursuant to the terms of the New ABL Credit Agreement.

**1.143.** "*New ABL Facility*" means, as applicable, the Take-Back ABL Term Loan Facility, and the Exit ABL Facility, each in accordance with the terms of the New ABL Facility Documents.

**1.144.** "*New ABL Facility Documents*" means, collectively, the New ABL Credit Agreement and any other agreements or documents related to or executed in connection with the New ABL Facility, including any amendments, modifications, supplements thereto in accordance

with the terms thereof; _provided_ that with the consent of the ABL Credit Agreement Agent and, unless expressly provided otherwise herein or in the New ABL Facility Documents, all ABL Loan Documents shall be deemed to be New ABL Facility Documents.

**1.145.** "*New ABL Facility Lenders*" means the lenders party to the New ABL Credit Agreement.

**1.146.** "*New Board*" means the initial board of directors or similar governing body of the Reorganized Debtors (excluding any governing body that is the member(s) of any Reorganized Debtor that is a limited liability company).

**1.147.** "*New Organizational Documents*" means, collectively, the new Organizational Documents of the Reorganized Debtors (including New TopCo), to be entered into on the Effective Date, including certificates of incorporation, limited liability company agreements, stockholders or shareholders agreements, operating agreements, equity subscription or purchase agreements, charters or by-laws, which shall be consistent in all material respects with the Restructuring Support Agreement, include customary minority equity protections consistent with the Global Settlement Term Sheet, and otherwise shall be subject to the Definitive Document Consent Rights.

**1.148.** "*New TopCo*" means Franchise Group, Inc. or any other Entity designated as such (including, for the avoidance of doubt, any limited liability company) that will, directly or indirectly, own 100% of the Equity Interests in, or substantially all of the assets of, Franchise Group, Inc. or any of its subsidiaries upon consummation of the Restructuring Transactions, as mutually agreed by the Debtors and the Required Consenting First Lien Lenders.

**1.149.** "*Non-Debtor Releasing Party*" means any Releasing Party that is not a Debtor.

**1.150.** "*Non-Liquidating Debtor(s)*" means any Debtor other than the American Freight Debtors and, if the Partial Sale Transaction is consummated prior to the Effective Date, the Vitamin Shoppe Debtors.

**1.151.** "*OpCo Debtor(s)*" means any particular Debtor other than any HoldCo Debtor.

**1.152.** "*OpCo Debtor Litigation Trust Claims*" means, collectively, all Claims and Causes of Action against non-Debtors belonging to any or all of the OpCo Debtors, other than (a) Claims and Causes of Action that are released pursuant to Section 12.2 of this Plan and (b) the Reorganized Debtors' Retained Causes of Action.

**1.153.** "*OpCo General Unsecured Claim(s)*" means, collectively, any General Unsecured Claim against the OpCo Debtors in Class 6.

**1.154.** "*Order Denying Exclusivity Termination*" means the *Order Denying Motion of the Ad Hoc Group of Freedom Lenders Seeking Entry of an Order (I) Terminating Exclusivity in the HoldCo Debtors' Cases, (II) Lifting the Automatic Stay in the HoldCo Debtors' Cases, or (III) Appointing Chapter 11 Trustee for the HoldCo Debtors* [Docket No. 460], entered by the Bankruptcy Court on December 18, 2024.

**1.155.** "*Organizational Documents*" means, collectively, with respect to any Person other than a natural person, the documents by which such Person was organized or formed (such as a certificate of incorporation, certificate of formation, certificate of limited partnership, or articles of organization) or which relate to the internal governance of such Person (such as by-laws or a partnership agreement, or an operating, limited liability company or members agreement).

**1.156.** "*Other Secured Claim*" means any Secured Claim against a Debtor other than a Prepetition First Lien Loan Claim, DIP Claim, or Prepetition Second Lien Loan Claim or any Prepetition HoldCo Loan Claim.

**1.157.** "*Partial Sale Transaction*" means the sale of substantially all of the assets of the Vitamin Shoppe Debtors pursuant to the terms of the Asset Purchase Agreement and the Sale Order.

**1.158.** "*Partial Sale Transaction Debtor(s)*" means the Vitamin Shoppe Debtors.

**1.159.** "*Permitted Litigation Claims*" means the Freedom HoldCo Debtor Litigation Trust Claims and the OpCo Debtor Litigation Trust Claims, including, for the avoidance of doubt, any Claims and Causes of Action belonging to the OpCo Debtors and the Freedom HoldCo Debtors against the Excluded Parties.  For the avoidance of doubt, the Permitted Litigation Claims shall not include any Claims and Causes of Action identified in the Freedom HoldCo Independent Director Report as actionable against any Released Party, which shall be settled and released in full pursuant to the terms of this Plan.

**1.160.** "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.161.** "*Petition Date*" means November 3, 2024, the date on which the Debtors commenced the Chapter 11 Cases.

**1.162.** "*Plan*" means this joint chapter 11 plan proposed by the Debtors, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Restructuring Support Agreement, the Global Settlement, and the terms hereof.  If the Plan is withdrawn as the Plan for a particular Debtor, the defined term "Plan" shall not include the plan of reorganization or liquidation for such Debtor in its Chapter 11 Case where the context otherwise requires.

**1.163.** "*Plan Documents*" means, collectively, the documents, other than this Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of this Plan, including the documents to be included in the Plan Supplement and any and all exhibits to this Plan and the Disclosure Statement, each of which shall be subject to consent rights set forth herein and the Definitive Document Consent Rights.

**1.164.** "*Plan Equitization Transaction*" means the equitization of all Allowed Prepetition First Lien Loan Claims into 100% of Reorganized Common Equity (subject to dilution from (a) the DIP Premium Conversion, if applicable, (b) the DIP Equitization, and (c) the Prepetition Second Lien Loan Equity Allocation), as further set forth in the Restructuring Support Agreement and this Plan.

**1.165.** "*Plan Supplement*" means any compilation of documents and forms of documents (including term sheets), agreements, schedules, and exhibits to the Plan, which may be amended from time to time, including (a) the New Organizational Documents, (b) the Schedule of Retained Causes of Action, (c) the Take-Back Debt Documents, (d) the Restructuring Transactions Memorandum, (e) the Rejected Contracts/Lease List, (f) to the extent known, the identity of the known members of the New Board and the nature and compensation for any director who is an "insider" under the Bankruptcy Code, (g) the New ABL Facility Documents, (h) the Litigation Trust Agreement, (i) the Assumed Contracts List, and (j) any and all other documents necessary to effectuate the Restructuring Transactions or that are contemplated by the Plan, which shall be Filed by the Debtors prior to the Confirmation Hearing, and additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, each of which shall be consistent with the Global Settlement Term Sheet and shall otherwise be subject to the Definitive Document Consent Rights; <u>provided</u> that, notwithstanding the foregoing, the terms of the Litigation Trust Agreement shall be acceptable to each of the Global Settlement Parties.

**1.166.** "*Prepetition ABL Loan Claims*" means any Claim on account of ABL Loans arising under or pursuant to the ABL Credit Agreement or the other ABL Loan Documents.

**1.167.** "*Prepetition First Lien Loan Claims*" means any Claim on account of Prepetition First Lien Loans arising under or pursuant to the First Lien Credit Agreement or the other First Lien Loan Documents.

**1.168.** "*Prepetition First Lien Loan Claims Litigation Trust Allocation*" means 30% of the Litigation Trust Units, which shall be distributed *pro rata* to Holders of Prepetition First Lien Loan Claims, and which shall entitle the Holders of Allowed Prepetition First Lien Loan Claims, in the aggregate, to receive 30% of the net proceeds of the Litigation Trust.

**1.169.** "*Prepetition First Lien Loans*" means, collectively, the term loans arising under or pursuant to the First Lien Credit Agreement.

**1.170.** "*Prepetition HoldCo Loan Claims*" means any Claim on account of Prepetition HoldCo Loans arising under or pursuant to the HoldCo Credit Agreement.

**1.171.** "*Prepetition HoldCo Loans*" means, collectively, the term loans arising under or pursuant to the HoldCo Credit Agreement.

**1.172.** "*Prepetition OpCo 2L/HoldCo Loan Claims Litigation Trust Allocation*" means 58% of the Litigation Trust Units, which shall be distributed *pro rata* to the Holders of Allowed Prepetition Second Lien Loan Claims and Holders of Allowed Prepetition HoldCo Loan Claims, and which shall entitle Holders of Allowed Prepetition Second Lien Loan Claims and Holders of Allowed Prepetition HoldCo Loan Claims, in the aggregate, to receive 58% of the net proceeds of the Litigation Trust.

**1.173.** "*Prepetition Second Lien Loan Cash Consideration*" means Cash in an amount equal to $15 million; <u>provided</u> that, pursuant to the Global Settlement, any Holders of Prepetition Second Lien Loan Claims who are not members of the Freedom Lender Group agree to waive their share of Prepetition Second Lien Loan Cash Consideration, which amounts shall be re-allocated

*pro rata* to members of the Freedom Lender Group on account of their Prepetition Second Lien Loan Claims (the "Prepetition Second Lien Loan Cash Consideration Waiver").

**1.174.** "*Prepetition Second Lien Loan Cash Consideration Waiver*" has the meaning set forth in Section 1.173 of this Plan.

**1.175.** "*Prepetition Second Lien Loan Claims*" means any Claim on account of term loans arising under or pursuant to the Second Lien Credit Agreement.

**1.176.** "*Prepetition Second Lien Loan Equity Allocation*" means the resulting percentage of Reorganized Common Equity determined from the quotient of (a) $25 million *divided* by (b) the Implied Common Equity Value.

**1.177.** "*Priority Non-Tax Claim*" means any Claim, other than a DIP Claim, an Administrative Expense Claim, a Professional Fee Claim, or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.178.** "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.179.** "*Priority Tax Claims Bar Date*" means the date that is 180 days after the Petition Date.

**1.180.** "*Pro Forma Leverage Cap*" has the meaning set forth in Section 3.1 of this Plan.

**1.181.** "*Professional Fee Claim*" means any Claim by a Professional Person for compensation for services rendered or reimbursement of expenses incurred by such Professional Person on or after the Petition Date through and including the Confirmation Date under sections 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court, including in connection with final fee applications of such Professional Persons.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional Person's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

**1.182.** "*Professional Fee Escrow Account*" means an account funded by the Debtors with Cash no later than the Effective Date in the amount equal to the Professional Fee Escrow Amount.

**1.183.** "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professional Persons have incurred or will incur in rendering services in connection with the Chapter 11 Cases prior to and as of the Effective Date, which shall be estimated pursuant to the method set forth in Article III of this Plan.

**1.184.** "*Professional Person(s)*" means any Persons (a) retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to an order of the Bankruptcy Court, or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.185.** "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

**1.186.** "*Proof of Equity Interest*" means a proof of Equity Interest Filed against any of the Debtors in the Chapter 11 Cases.

**1.187.** "*Reinstate*" means with respect to Claims or Equity Interests, that the Claim or Equity Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.  "Reinstated" and "Reinstatement" shall have correlative meanings.

**1.188.** "*Rejected Contracts/Lease List*" means the list (as determined by the Debtors) of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto), if any, that will be rejected pursuant to the Plan.

**1.189.** "*Related Funds*" means, with respect to any Person, any fund, account or investment vehicle that is controlled, advised or managed by (a) such Person, (b) an Affiliate of such Person, or (c) the same investment manager, advisor or subadvisor that controls, advises or manages such Person or an Affiliate of such investment manager, advisor or subadvisor.

**1.190.** "*Related Parties*" means, collectively, with respect to any Person or Entity, each of, and in each case solely in its capacity as such, such Person's or Entity's predecessors, successors, assigns and present and former Affiliates (whether by operation of Law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory or subcommittee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, and, solely with respect to the Debtors, in each case acting in such capacity at any time on or after November 1, 2024, and any Person claiming by or through any of them, including such Related Parties' respective heirs, executors, estates, servants, and nominees.

**1.191.** "*Released Parties*" means, collectively, and each solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Ad Hoc Group; (d) the DIP Agent and each DIP Lender; (e) the First Lien Credit Agreement Agent; (f) the Second Lien Credit Agreement Agent and the HoldCo Credit Agreement Agent; (g) Consenting First Lien Lenders; (h) the Creditors' Committee and each of its members solely in their capacities as members of the Creditors' Committee; (i) the members of the Freedom Lender Group; (j) the officers (including, without limitation, the CRO), directors (including, without limitation the Independent Directors), management, employees, and advisors of the Debtors who are retained by the Debtors as of the Confirmation Date (including Andrew M. Laurence, Andrew F. Kaminsky, Eric Seeton, and Tiffany McMillan-McWaters); (k) the former employees and directors of the Debtors that were terminated without cause between February 3, 2025 and the Effective Date of the Plan; (l) all Estate Professionals retained as of the Confirmation Date; (m) all Holders of Claims that elect to opt in to the Third-Party Release contained in the Plan; (n) all Holders of Equity Interests that elect to opt in to the Third-Party Release contained in the Plan; and (o) each Related Party of each Entity in clause (a) through clause (n); <u>provided</u> that, notwithstanding the foregoing, Released Parties shall not include:  (i) former directors of the Debtors, other than those terminated without cause

between February 3, 2025 and the Effective Date; (ii) former employees, including officers of the Debtors other than those terminated without cause between February 3, 2025 and the Effective Date; (iii) Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, and each of their respective Affiliates and Related Parties (other than any of the officers, directors, or employees of the Debtors that are retained or employed by the Debtors as of the Confirmation Date) (provided that none of Bryant Riley, B. Riley Financial, Inc., and B. Riley Receivables II, LLC, shall be deemed Affiliates or Related Parties of the Debtors for purposes of this proviso); (iv) Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, Prophecy Asset Management LP, and each of their respective Affiliates and Related Parties (other than any of the officers, directors, or employees of the Debtors that are retained or employed by the Debtors as of the Confirmation Date) (provided that none of Brian Kahn, Lauren Kahn, Vintage Capital Management LLC, and Prophecy Asset Management LP, shall be deemed Affiliates or Related Parties of the Debtors for purposes of this proviso); and (v) any advisors previously retained by the Debtors that are not retained as of the Confirmation Date (including, without limitation, (A) WFG, (B) Troutman Pepper Locke LLP, (C) Wachtell, Lipton, Rosen & Katz, and (D) Jefferies, LLC, and each of their respective members, partners, employees, consultants, contractors, financial or other advisors, Affiliates, or Related Parties (provided that none of WFG, Troutman Pepper Locke LLP, Wachtell, Lipton, Rosen & Katz, and Jefferies, LLC shall be deemed Affiliates or Related Parties of the Debtors for purposes of this proviso)) (the parties listed in (i) through (v) of this proviso, collectively, the "Excluded Parties").

1.192. "*Releasing Parties*" means, collectively, and each solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent and each DIP Lender; (d) the First Lien Credit Agreement Agent; (e) the Second Lien Credit Agreement Agent and the HoldCo Credit Agreement Agent; (f) the Consenting First Lien Lenders; (g) the Creditors' Committee and each of its members solely in their capacity as members of the Creditors' Committee; (h) the Second Lien Credit Agreement Agent; (i) the members of the Freedom Lender Group; (j) all Holders of Claims that elect to opt in to the Third-Party Release contained in the Plan; (k) all Holders of Equity Interests that elect to opt in to the Third-Party Release contained in the Plan; (l) each current and former Affiliate of each Entity in clause (a) through clause (k) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan; and (m) each Related Party of each Entity in clause (a) through clause (k) for which an Entity in clause (a) through (k) is legally entitled to bind such Related Party to the releases contained in the Plan. For the avoidance of doubt, notwithstanding anything to the contrary in the Plan, the Excluded Parties shall not be Releasing Parties unless they elect to opt in to the Third-Party Release contained in the Plan.

1.193. "*Reorganized Common Equity*" means the common Equity Interests of New TopCo authorized under the New Organizational Documents of the Reorganized Debtors and issued and/or distributed on the Effective Date in accordance with this Plan.

1.194. "*Reorganized Debtor(s)*" means, on or after the Effective Date, the Debtors, as reorganized pursuant to and under the Plan Equitization Transaction, or any successors thereto, by merger, consolidation, reorganization or otherwise, as the case may be, including New TopCo and any Non-Liquidating Debtors that are reorganized pursuant to and under the Plan Equitization Transaction following the consummation of the Partial Sale Transaction.

**1.195.** "*Reorganized Debtors' Retained Causes of Action*" has the meaning set forth in Section 1.206 of this Plan.

**1.196.** "*Required Consenting First Lien Lenders*" means, collectively, as of the relevant date, Consenting First Lien Lenders that are members of the Ad Hoc Group holding, collectively, in excess of 66 2/3% of the aggregate outstanding principal amount of Prepetition First Lien Loans that are held by Consenting First Lien Lenders that are members of the Ad Hoc Group at such time.

**1.197.** "*Required DIP Lenders*" means the "Required Lenders" as defined in the DIP Credit Agreement.

**1.198.** "*Restructuring Expenses*" means all reasonable and documented fees, costs, and expenses of each of the Ad Hoc Group Advisors.

**1.199.** "*Restructuring Support Agreement*" means the Restructuring Support Agreement, dated as of November 1, 2024, inclusive of all exhibits and schedules thereto, by and among the Debtors, the Consenting First Lien Lenders, and any other Person that may become a party to such agreement pursuant to its terms, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time in accordance with its terms.

**1.200.** "*Restructuring Transactions*" means the transactions described in Article VII of the Plan and the Restructuring Transactions Memorandum (including, for the avoidance of doubt, the Plan Equitization Transaction and Partial Sale Transaction).

**1.201.** "*Restructuring Transactions Memorandum*" means a document to be included in the Plan Supplement that will set forth the material components of the applicable Restructuring Transactions, including a summary of any transaction steps necessary to complete the Plan, and shall otherwise be in form and substance acceptable to the applicable Debtors and the Required Consenting First Lien Lenders, each in their sole discretion.

**1.202.** "*Sale Documents*" means, collectively, the Asset Purchase Agreement and any other agreements, instruments, pleadings, orders and related documents.

**1.203.** "*Sale Order*" means the *Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter into and Perform Its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1429], entered by the Bankruptcy Court on May 7, 2025.

**1.204.** "*Sale Proceeds*" means all proceeds from consummation of the Partial Sale Transaction, that are distributable or payable to the Estates, which proceeds shall consist of Cash.

**1.205.** "*Sale Process*" means the sale process conducted in accordance with the Bidding Procedures Order.

**1.206.** "*Schedule of Retained Causes of Action*" means the schedule of those Causes of Action that shall vest in the Reorganized Debtors on the Effective Date, which will be contained in the Plan Supplement; provided, for the avoidance of doubt, that the Permitted Litigation Claims shall vest in the Litigation Trust and not in the Reorganized Debtors; provided, further, that the following Claims and Causes of Action shall vest in the Reorganized Debtors and shall not be Permitted Litigation Claims: any Claims, Causes of Action, counterclaims, or cross-claims, that are against continuing trade partners, vendor counterparties, or contractual counterparties of the Reorganized Debtors, in each case, who are subject to a contract or lease that has been assumed or who otherwise are intended by the Reorganized Debtors to have ongoing business dealings with the Reorganized Debtors as of the Effective Date, or counterclaims in response to claims that otherwise relate to the Reorganized Debtors' continued operations (such Claims and Causes of Action, collectively, the "Reorganized Debtors' Retained Causes of Action").

**1.207.** "*Schedules*" means, collectively, the schedules of assets and liabilities, the schedules of Executory Contracts and Unexpired Leases, the Schedule of Retained Causes of Action, and the statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

**1.208.** "*Second Lien Credit Agreement*" means that certain Second Lien Credit Agreement, dated as of March 10, 2021, among Franchise Group, Inc., and the other borrowers and guarantors party thereto, the Second Lien Credit Agreement Agent, and the lenders party thereto from time to time, as amended, restated, amended or restated, supplemented, or otherwise modified from time to time.

**1.209.** "*Second Lien Credit Agreement Agent*" means Alter Domus (US) LLC, in its capacity as administrative agent and collateral agent for the Second Lien Lenders.

**1.210.** "*Second Lien Lenders*" means, collectively, beneficial holders of, or investment advisors, sub-advisors or managers of discretionary funds, accounts or sub-accounts that beneficially hold, Prepetition Second Lien Loan Claims.

**1.211.** "*Secured Claim*" means a Claim: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim Holder's interest in such Collateral as of the Confirmation Date; (b) to the extent that the Holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code; or (c) otherwise Allowed pursuant to the Plan or order of the Bankruptcy Court as a secured Claim.

**1.212.** "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

**1.213.** "*SIR*" has the meaning set forth in Section 8.17 of this Plan.

**1.214.** "*Store-Closing and Liquidation Sales*" means, collectively, the going out of business sales and store closing procedures at the American Freight Debtors on the terms and conditions set forth in the Store-Closing and Liquidation Sales Documents and the Plan.

**1.215.** "*Store-Closing and Liquidation Sales Documents*" means the Store-Closing and Liquidation Sales Orders and all documents or pleadings necessary or desirable to facilitate the Store-Closing and Liquidation Sales, each of which shall be subject to the Definitive Document Consent Rights.

**1.216.** "*Store-Closing and Liquidation Sales Orders*" means, collectively, (a) the *Interim Order I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 132], entered by the Bankruptcy Court on November 6, 2024, and (b) the *Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 351], entered by the Bankruptcy Court on December 6, 2024.

**1.217.** "*Subordinated Claim*" means any prepetition Claim that is subject to subordination pursuant to sections 510(b)–(c) of the Bankruptcy Code or otherwise.

**1.218.** "*Take-Back ABL Term Loan Facility*" means a take-back debt asset-backed term facility with an aggregate principal amount equal to the Allowed amount of the Prepetition ABL Loan Claims minus any amounts distributed under clause (i) of Section 5.3(a) of this Plan, which facility shall (a) be secured by the same Collateral securing the Prepetition ABL Loan Claims with the same priorities as set forth in the ABL Loan Documents (including the Existing ABL Intercreditor Agreement), (b) mature within six (6) years of the Effective Date, and (c) bear an interest rate to be established by the Required Consenting First Lien Lenders and the Debtors, or otherwise set forth by the Bankruptcy Court.

**1.219.** "*Take-Back Debt Agent*" means the administrative and collateral agent for the Take-Back Debt Lenders under the Take-Back Debt Documents, or any successor administrative agents thereunder.

**1.220.** "*Take-Back Debt Credit Agreement*" means the credit agreement governing or evidencing the Take-Back Debt Facility to be entered into on the Effective Date by and among the Reorganized Debtors, the guarantors from time to time party thereto, the Take-Back Debt Lenders, the Take-Back Debt Agent, and the other Entities party thereto from time to time.

**1.221.** "*Take-Back Debt Documents*" means the Take-Back Debt Credit Agreement, together with any other agreements and documents executed or delivered in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, each of which shall be subject to the Definitive Document Consent Rights.

**1.222.** "*Take-Back Debt Facility*" means the take-back debt financing facility on the terms and conditions set forth in the Restructuring Support Agreement.

**1.223.** "*Take-Back Debt Lenders*" means the lenders party to the Take-Back Debt Credit Agreement.

**1.224.** "*Take-Back Term Loans*" means the term loans arising under or pursuant to the Take-Back Debt Credit Agreement.

**1.225.** "*Take-Private Transaction*" shall have the meaning set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15], Filed November 4, 2024.

**1.226.** "*Third-Party Release*" has the meaning set forth in <u>Article XII</u> of this Plan.

**1.227.** "*TopCo*" means Freedom VCM Holdings, LLC.

**1.228.** "*TopCo Cash Allocation*" means all Cash belonging to TopCo, consisting of approximately $13.25 million.

**1.229.** "*TopCo General Unsecured Claim*" means any General Unsecured Claim against TopCo.

**1.230.** "*Tranche A DIP Loan Claims*" means, collectively, Claims arising on account of the Tranche A DIP Loans.

**1.231.** "*Tranche A DIP Loans*" means, collectively, the new money first-out delayed-draw term loans arising under or pursuant to the DIP Credit Agreement.

**1.232.** "*Tranche B DIP Loan Claims*" means, collectively, Claims arising on account of the Tranche B DIP Loans.

**1.233.** "*Tranche B DIP Loans*" means, collectively, the second-out roll up facility arising under or pursuant to the DIP Credit Agreement.

**1.234.** "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

**1.235.** "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**1.236.** "*Unexpired Lease*" means a lease of non-residential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

**1.237.** "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**1.238.** "*Vitamin Shoppe Debtors*" means Franchise Group Intermediate V, LLC and each of its direct and indirect subsidiaries.

**1.239.** "*WFG*" means Willkie Farr & Gallagher LLP.

**B.    *Interpretation; Application of Definitions and Rules of Construction.***

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan.  The words "herein," "hereof," "hereto," "hereunder," and other

words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein.  The use of "include" or "including" is without limitation, whether stated or not.  Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  Any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented.  References to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Equity Interests," "Holders of Equity Interests," "Disputed Equity Interests," and the like, as applicable.  Subject to the provisions of any contracts, certificates or articles of incorporation, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal Law, including the Bankruptcy Code and the Bankruptcy Rules.  The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns.  Any reference to directors or board of directors includes managers, managing members or any similar governing body, as the context requires, and references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable limited liability company Laws.

### C.      Appendices and Plan Documents.

All Plan Documents and appendices to this Plan are incorporated into this Plan by reference and are a part of this Plan as if set forth in full herein.  The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Equity Interests may inspect a copy of the Plan Documents, once Filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or, free of charge, via the Debtors' restructuring website maintained by the Claims Agent at https://cases.ra.kroll.com/FRG, or obtain a copy of any of the Plan Documents, at the Debtors' expense, by a written request sent to the Claims Agent at the following mailing or email addresses or by calling the Claims Agent at the following telephone numbers:

Franchise Group, Inc.
Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232
(844) 285-4564 (U.S./Canada, Toll-Free); +1 (646) 937-7751 (International, Toll)
FRGInfo@ra.kroll.com

### D.      Definitive Document Consent Rights.

Notwithstanding anything to the contrary in this Plan, certain of the Definitive Documents remain subject to negotiation and completion, as applicable.  Upon completion, the Definitive

Documents and every other document, deed, agreement, filing, notification, letter or instrument related to the Restructuring Transactions shall contain terms, conditions, representations, warranties, and covenants consistent in all material respects with the terms of the Restructuring Support Agreement and the Global Settlement, and shall otherwise be in form and substance acceptable to the Debtors and the Required Consenting First Lien Lenders in their sole discretion, except in each case as otherwise specified in this Plan, the applicable Definitive Document, or the Confirmation Order.

### E.    Nature of the Restructuring Transactions.

The Restructuring Transactions will be consummated (a) on the terms and conditions set forth in this Plan and the Plan Documents and (b) pursuant to Confirmation of this Plan in the Chapter 11 Cases.

## ARTICLE II.
## CERTAIN INTERCREDITOR AND INTER-DEBTOR ISSUES

### 2.1.    Settlement of Certain Intercreditor and Inter-Debtor Issues.

The treatment of Claims and Equity Interests under this Plan represents, among other things, the settlement and compromise of certain potential intercreditor and inter-Debtor disputes.

### 2.2.    Formation of Debtor Groups for Convenience Purposes.

The Plan groups the Debtors together solely for purposes of describing treatment under the Plan, Confirmation of the Plan and making distributions under this Plan in respect of Claims against and Equity Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, nor cause the transfer of any assets or the assumption of any liabilities; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal Entities.

## ARTICLE III.
## DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS,
## PROFESSIONAL FEE CLAIMS, U.S. TRUSTEE FEES, AND PRIORITY TAX CLAIMS

The Plan constitutes a joint chapter 11 plan for all of the Debtors.  All Claims and Equity Interests, except DIP Claims, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims, are placed in the Classes set forth in Article IV.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims have not been classified, and the Holders thereof are not entitled to vote on this Plan, and thus are excluded from the Classes of Claims and Equity Interests set forth in Article IV.

A Claim or Equity Interest is placed in a particular Class only to the extent that any portion of such Claim or Equity Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of

such other Classes. A Claim or Equity Interest is placed in a particular Class for all purposes, including voting, Confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. However, a Claim or Equity Interest is placed in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest and has not been paid, released, or otherwise settled prior to the date of such distribution.

**3.1.** ***DIP Claims.***

On the Effective Date, (a) each Holder of DIP Claims (and/or one or more Related Funds of such Holder, to the extent such Related Funds are Holders of DIP Claims) that received a DIP Backstop Premium or Commitment Premium (as defined in the DIP Credit Agreement) as of closing of the DIP syndication process, and (b) each Holder of DIP Claims that receives an Exit Premium (as defined in the DIP Credit Agreement) shall be entitled to elect, at its sole discretion, to convert such DIP Backstop Premium, Commitment Premium and/or Exit Premium into Reorganized Common Equity at a 25% discount to total equity value of the Reorganized Debtors as set forth in the Disclosure Statement and/or the Plan Supplement, which total equity value shall be reduced, if applicable, for purposes of calculating this discount by the net proceeds from the Partial Sale Transaction received by the Debtors as of the Effective Date (which, for purposes of calculating this deduction, shall not be less than $177.25 million).

On the Effective Date, the DIP Claims shall be Allowed in the full amount outstanding under the DIP Credit Agreement and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable Law or regulation by any Person; provided that, in accordance with the Global Settlement, any and all DIP Claims that could have been allocated to or asserted against the Freedom HoldCo Debtors shall be irrevocably settled, waived, and/or released on the Effective Date; provided, further, that (for the avoidance of doubt) the full amount of the DIP Claims shall be assertable against the other Debtors. In full satisfaction, settlement, release and discharge of the Allowed DIP Claims, on the Effective Date, (a) if the Partial Sale Transaction is not consummated prior to the Effective Date, (i) first, all Allowed DIP Claims arising from Tranche A DIP Loans (other than those Tranche A DIP Loans that are converted into Reorganized Common Equity pursuant to the DIP Premium Conversion) shall be converted into Take-Back Term Loans, on a dollar-for-dollar basis; (ii) second, the Allowed DIP Claims arising from Tranche B DIP Loans shall be converted into Take-Back Term Loans, ratably, on a dollar-for-dollar basis in an amount necessary to cause the Reorganized Debtors to have pro forma net debt of no greater than $600 million as of the Effective Date after giving effect to the Restructuring Transactions (the "Pro Forma Leverage Cap"), and (iii) third, any Allowed DIP Claims that remain outstanding after giving effect to the transactions contemplated in clauses (i) and (ii) hereof shall be converted into Reorganized Common Equity at a 25% discount to total equity value of the Reorganized Debtors as set forth in the Disclosure Statement and/or the Plan Supplement (the "DIP Equitization"), and (b) if the Partial Sale Transaction is consummated prior to the Effective Date, (i) first, all Allowed DIP Claims or the Allowed Prepetition ABL Loan Claims allocable to the applicable Partial Sale Transaction Debtors shall be indefeasibly paid in full in Cash or reduced, as applicable, from the applicable net Sale Proceeds, and (ii) second, any Allowed DIP Claims that remain outstanding after giving effect to the transactions contemplated in clause (b)(i) hereof shall

be treated in accordance with the foregoing clause (a) hereof; provided, however, that for purposes of this clause (b), (x) the Pro Forma Leverage Cap shall be no greater than $445 million,[2] and (y) the DIP Claims shall be converted into Reorganized Common Equity at a 25% discount to total equity value of the Reorganized Debtors as set forth in the Disclosure Statement and/or the Plan Supplement, reduced by the net proceeds from the Partial Sale Transaction received by the Debtors as of the Effective Date (which, for purposes of calculating this deduction, shall not be less than $177.25 million).[3]

Upon payment in full or satisfaction of all Allowed DIP Claims in accordance with the terms of this Plan, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect.

**3.2.** *Administrative Expense Claims.*

(a)    Time for Filing Administrative Expense Claims.

The Holder of an Administrative Expense Claim, other than DIP Claims, Intercompany Claims, or U.S. Trustee fees that accrued on or before the Effective Date other than in the ordinary course of business must File with the Bankruptcy Court and serve on the Reorganized Debtors or proof of such Administrative Expense Claim no later than the Administrative Bar Date.  Such proof of Administrative Expense Claim must include at a minimum: (1) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim, and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (2) the name of the Holder of the Administrative Expense Claim; (3) the asserted amount of the Administrative Expense Claim; (4) the basis of the Administrative Expense Claim; and (5) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED.  IF FOR ANY REASON ANY SUCH ADMINISTRATIVE EXPENSE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

The Debtors or the Reorganized Debtors, as applicable, in consultation with the Required Consenting First Lien Lenders, may settle Administrative Expense Claims in the ordinary course of business without further Bankruptcy Court approval.  The Debtors or the Reorganized Debtors, as applicable, may also choose to object to any Administrative Expense Claim (other than a Cure Cost, which will be addressed pursuant to Section 10.2 of this Plan) no later than the Claims

---

[2]    It is currently contemplated that there will be $405 million in net debt as of the Effective Date.

[3]    For purposes of calculating the amount of net debt for purposes of calculating the Pro Forma Leverage Cap in either of clause (a) or clause (b), any payments on account of any Administrative Expense Claims or Cure Costs that are made "as soon as reasonably practicable" after the Effective Date (excluding any administrative costs that have been assumed by the Buyer in the Partial Sale Transaction) in lieu of making such payments on the Effective Date shall be deemed to have been made on the Effective Date.

Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or the Reorganized Debtors, as applicable (or other party with standing) object to a timely-Filed and properly served Administrative Expense Claim, such Administrative Expense Claim will be deemed Allowed in the amount requested after expiration of the Claims Objection Deadline (as may be extended). In the event that the Debtors or the Reorganized Debtors, as applicable, object to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Expense Claim should be Allowed and, if so, in what amount.

Notwithstanding anything to the contrary contained herein, the Global Settlement Parties hereby agree that no Global Settlement Party may seek an Administrative Expense Claim related to substantial contribution, pursuant to section 503(b)(3)(D) of the Bankruptcy Code or otherwise.

(b)     Treatment of Administrative Expense Claims.

Except with respect to Administrative Expense Claims that are Professional Fee Claims, and except to the extent that a Holder of an Allowed Administrative Expense Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall be paid in full in Cash: (i) if such Administrative Expense Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as reasonably practicable thereafter); (ii) if such Administrative Expense Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Expense Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) if such Allowed Administrative Expense Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, to the extent consistent with the DIP Budget, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Expense Claim without any further action by the Holder of such Allowed Administrative Expense Claim; (iv) at such time and upon such terms as may be agreed upon by such Holder and the Debtor; or (v) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

**3.3.    *Professional Fee Claims.***

(a)     Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from funds held in the Professional Fee Escrow Account. The Reorganized Debtors shall establish the Professional Fee Escrow Account in trust for the Professional Persons and fund such account with Cash equal to the Professional Fee Escrow Amount on the Effective Date.

(b)     Professional Fee Escrow Account.

No later than the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professional Persons.  No Liens, Claims, or Equity Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors, as applicable, on the Effective Date.   The amount of Professional Fee Claims owing to the Professional Persons shall be paid in Cash to such Professional Persons by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.   When all such Allowed amounts owing to Professional Persons have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, approval, or order of the Bankruptcy Court.

(c)     Professional Fee Escrow Amount.

Professional Persons shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such estimates to the Debtors no later than three (3) Business Days before the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional Person's final request for payment of Filed Professional Fee Claims.  If a Professional Person does not provide an estimate, the Debtors or the Reorganized Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional Person.

(d)     Post-Effective Date Fees and Expenses.

Upon the Effective Date, any requirement that Professional Persons comply with sections 327-331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional Person in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**3.4.**     *Priority Tax Claims.*

(a)     Time for Filing Priority Tax Claims.

The Holder of a Priority Tax Claim must File with the Bankruptcy Court and serve on the Reorganized Debtors, the Claims Agent, and the U.S. Trustee, proof of such Priority Tax Claim by the Priority Tax Claims Bar Date.  Such proof of Priority Tax Claim must include at a minimum: (1) the name of the applicable Debtor that is purported to be liable for the Priority Tax Claim and if the Priority Tax Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (2) the name of the Holder of the Priority Tax Claim; (3) the asserted amount of the Priority Tax Claim; (4) the basis of the Priority Tax Claim; and (5) supporting documentation for the Priority Tax Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF PRIORITY TAX CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH**

**CLAIM BEING FOREVER BARRED AND DISCHARGED. IF FOR ANY REASON ANY SUCH PRIORITY TAX CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

(b)    <u>Treatment of Priority Tax Claims</u>.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in consultation with the Required Consenting First Lien Lenders, each Holder of an Allowed Priority Tax Claim shall receive, in exchange for full and final satisfaction, settlement, release, and the discharge of each Allowed Priority Tax Claim, either:  (a) on the Effective Date or as soon as reasonably practicable, Cash in an amount equal to such Claim; or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the Holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); <u>provided</u> that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due; <u>provided</u>, <u>further</u>, that (i) notwithstanding any provision of the Plan or the Restructuring Support Agreement to the contrary, subject to clause (ii) below, any Claim on account of a "use tax" assessed or assessable under applicable state Law shall be assumed by and Reinstated against the applicable Reorganized Debtor and (ii) if the Partial Sale Transaction is consummated prior to the Effective Date, any Allowed Priority Tax Claim that has been expressly assumed by a Buyer under the Sale Documents shall not be an obligation of the Debtors.  On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable Law, regulation, order or rule, or the vote, consent, authorization or approval of any Person.

**3.5.    *U.S. Trustee Fees and Related Reporting Obligations.***

All U.S. Trustee Fees that are due and owing as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall File all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Reorganized Debtors shall File with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  After the Effective Date, each of the Reorganized Debtors (or the Disbursing Agent acting on behalf of each of the Reorganized Debtors) shall pay any and all applicable U.S. Trustee Fees in full in Cash when due and payable.  The Reorganized Debtors shall remain obligated to pay any applicable U.S. Trustee Fees until the earliest of the closure, dismissal, or conversion to a case under Chapter 7 of the Bankruptcy Code of the case of that particular Debtor for whom the Debtors or the Reorganized Debtors, as applicable, is responsible. The U.S. Trustee shall not be treated as providing any release under the Plan. U.S. Trustee Fees are Allowed.  The U.S. Trustee shall not be required to File any Proof of Claim or any request for administrative expense for U.S. Trustee Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

# ARTICLE IV.
## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1.** *Classification of Claims and Equity Interests.*

Except for the Claims addressed in Article III hereof or as otherwise set forth herein, all Claims and Equity Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Equity Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Equity Interest qualifies within the description of such other Classes. A Claim or an Equity Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Equity Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under this Plan.

The classification of Claims against and Equity Interests in the Debtors pursuant to this Plan is as follows:

| Class | Claims and Equity Interest | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Prepetition ABL Loan Claims | Impaired | Entitled to Vote |
| Class 4 | Prepetition First Lien Loan Claims | Impaired | Entitled to Vote |
| Class 5 | Prepetition Second Lien Loan Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims against the OpCo Debtors | Impaired | Entitled to Vote |
| Class 7 | Prepetition HoldCo Loan Claims | Impaired | Entitled to Vote |
| Class 8-A | Freedom HoldCo General Unsecured Claims | Impaired | Entitled to Vote |
| Class 8-B | HoldCo Receivables General Unsecured Claims | Impaired | Entitled to Vote |
| Class 8-C | TopCo General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

36

| Class | Claims and Equity Interest | Status | Voting Rights |
|---|---|---|---|
| Class 9 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 11 | Existing TopCo Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 12 | Existing Intercompany Equity Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |

The Plan consolidates certain Claims against all Debtors solely for purposes of voting and Confirmation. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Expense Claims, DIP Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims as described in Article III.

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**4.2.** *Unimpaired Classes of Claims.*

The following Classes of Claims are Unimpaired and, therefore, deemed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code:

    (a)    Class 1: Class 1 consists of all Priority Non-Tax Claims.

    (b)    Class 2: Class 2 consists of all Other Secured Claims.

**4.3.** *Impaired Classes of Claims.*

The following Classes of Claims are Impaired and entitled to vote on this Plan:

    (a)    Class 3: Class 3 consists of all Prepetition ABL Loan Claims.

    (b)    Class 4: Class 4 consists of all Prepetition First Lien Loan Claims.

    (c)    Class 5: Class 5 consists of all Prepetition Second Lien Loan Claims.

    (d)    Class 6: Class 6 consists of all OpCo General Unsecured Claims.

(e)    Class 7:  Class 7 consists of all Prepetition HoldCo Loan Claims.

(f)    Class 8-A:  Class 8-A consists of all Freedom HoldCo General Unsecured Claims.

(g)    Class 8-B:   Class 8-B consists of all HoldCo Receivables General Unsecured Claims.

The following Classes of Claims and Equity Interests are Impaired and are not entitled to vote on this Plan:

(a)    Class 8-C:  Class 8-C consists of all TopCo General Unsecured Claims.

(b)    Class 10:  Class 10 consists of all Subordinated Claims.

(c)    Class 11:  Class 11 consists of all Existing TopCo Equity Interests.

The following Classes of Claims and Equity Interests are Impaired or Unimpaired and are not entitled to vote on this Plan:

(a)    Class 9:  Class 9 consists of all Intercompany Claims.

(b)    Class 12:  Class 12 consists of all Existing Intercompany Equity Interests.

**4.4.    *Separate Classification of Other Secured Claims.***

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any additional Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving distributions under this Plan.

## ARTICLE V.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**5.1.    *Priority Non-Tax Claims (Class 1).***

(a)    <u>Treatment</u>:  The legal, equitable and contractual rights of the Holders of Allowed Priority Non-Tax Claims are unaltered by the Plan.  In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Priority Non-Tax Claim, except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a lesser treatment, on the Effective Date, each Holder of an Allowed Priority Non-Tax Claim shall receive (at the election of the Debtors in consultation with the Required Consenting First Lien Lenders):  (i) Cash in an amount equal to such Allowed Claim or in the ordinary course of business as and when due; or (ii) such other treatment that will render such Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.  If the Partial Sale Transaction is consummated prior to the Effective Date, any Allowed Priority Non-Tax Claim that has been expressly assumed by the Buyer under the applicable Sale Documents shall not be an obligation of the Debtors.

(b)    <u>Voting</u>:  Priority Non-Tax Claims are not Impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Priority Non-Tax Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

### 5.2.    *Other Secured Claims (Class 2).*

(a)    <u>Treatment</u>:  The legal, equitable and contractual rights of the Holders of Allowed Other Secured Claims are unaltered by the Plan.  In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Other Secured Claim, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a different treatment, on the Effective Date each Holder of an Allowed Other Secured Claim shall receive:  (i) Cash in an amount equal to such Allowed Claim; or (ii) such other treatment that will render such Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that, to the extent consistent with the DIP Budget, Other Secured Claims incurred by a Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, without further notice to or order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that if the Partial Sale Transaction is consummated prior to the Effective Date, any Other Secured Claim that has been expressly assumed by the Buyer under the applicable Sale Documents shall not be an obligation of the Debtors.

Each Holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final satisfaction of such Allowed Other Secured Claim is made as provided herein.  Upon the full payment or other satisfaction of each Allowed Other Secured Claim in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order or rule or the vote, consent, authorization or approval of any Person and the Holder of such Claims shall deliver to the Debtors or Reorganized Debtors, as applicable, any Collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Claims that may be reasonably required to terminate any related financing statements, guaranties, or *lis pendens*, or similar interests or documents.  Furthermore, upon full payment or other satisfaction of the foregoing Claims, on or after the Effective Date the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, or evidence the release of any and all guaranties, pledges, and other security interests with respect to such Claims, including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any guaranties, mortgages, deeds of trust, Liens, pledges, and other security interests, including, without limitation, UCC-3 termination statements.

(b)    <u>Deficiency Claims</u>:  To the extent that the value of the Collateral securing any Other Secured Claim is less than the Allowed amount of such Other Secured Claim, the undersecured portion of such Allowed Claim shall be treated for all purposes under this Plan as a General Unsecured Claim, only as applicable, and shall be classified and treated as a Class 6 Claim or Class 8-A Claim, Class 8-B Claim, or Class 8-C Claim, only as applicable.

(c)    <u>Voting</u>:  The Other Secured Claims are not Impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Other Secured Claims.

### 5.3.    *Prepetition ABL Loan Claims (Class 3).*

(a)    <u>Treatment</u>:  On the Effective Date, the Prepetition ABL Loan Claims shall be Allowed under this Plan in the amount of $248.7 million plus interest, fees, costs, charges, and other amounts arising under or in connection with the Prepetition ABL Loan Claims (including, without limitation, any reimbursement obligations under outstanding letters of credit), and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable Law or regulation by any Person.  In full and final satisfaction, compromise, settlement, release, and discharge of each Prepetition ABL Loan Claim, except to the extent that the ABL Credit Agreement Agent or a Holder of a Prepetition ABL Loan Claim agrees to different treatment with respect to such Holder's Claim, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Prepetition ABL Loan Claim shall receive its *pro rata* share of (i) the American Freight Liquidation Proceeds and Cash Sale Proceeds, as applicable, resulting from the sale of any ABL Priority Collateral, including as a result of the Partial Sale Transaction, if applicable, and (ii) (A) proceeds of the Exit ABL Facility, or (B) loans under the Take-Back ABL Term Loan Facility, in each case in an amount equal to the amount of the Prepetition ABL Loan Claims <u>minus</u> any amounts to be distributed under clause (i) hereunder.

(b)    <u>Voting</u>:  The Prepetition ABL Loan Claims are Impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Prepetition ABL Loan Claims.

### 5.4.    *Prepetition First Lien Loan Claims (Class 4).*

(a)    <u>Treatment</u>:  On the Effective Date, the Prepetition First Lien Loan Claims shall be Allowed under this Plan in the amount set forth in the Final DIP Order (less any amounts converted into Roll Up DIP Loans (as defined in the Final DIP Order)), and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable Law or regulation by any Person.  In full and final satisfaction, compromise, settlement, release, and discharge of each Prepetition First Lien Loan Claim, except to the extent that the First Lien Credit Agreement Agent or a Holder of a Prepetition First Lien Loan Claim agrees to less favorable treatment with respect to such Holder's Claim, on the Effective Date, each Holder of an Allowed Prepetition First Lien Loan Claim shall receive, subject to the terms of this Plan, payment of all outstanding unreimbursed fees and expenses, if any, and its *pro rata* share of (i) American Freight Liquidation Proceeds and Cash Sale Proceeds, as applicable, resulting from the sale of any Term Loan Priority Collateral (as defined in the Existing ABL Intercreditor Agreement), including as a result of the Partial Sale Transaction, if applicable, (ii) 100% of the Reorganized Common Equity (subject to

dilution by (1) the DIP Premium Conversion, (2) the DIP Equitization, and (3) the Prepetition Second Lien Loan Equity Allocation), and (iii) the Prepetition First Lien Loan Claims Litigation Trust Allocation.

(b)     Voting:  The Prepetition First Lien Loan Claims are Impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Prepetition First Lien Loan Claims.

### 5.5.    *Prepetition Second Lien Loan Claims (Class 5).*

(a)     Treatment:  On the Effective Date, the Prepetition Second Lien Loan Claims shall be Allowed under this Plan in the amount set forth in the Final DIP Order, and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable Law or regulation by any Person.  In full and final satisfaction, compromise, settlement, release, and discharge of each Prepetition Second Lien Loan Claims, except to the extent that a Holder of a Prepetition Second Lien Loan Claim agrees to less favorable treatment (including, for the avoidance of doubt, pursuant to the Prepetition Second Lien Loan Cash Consideration Waiver) on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Prepetition Second Lien Loan Claim shall receive its *pro rata* share of (i) the Prepetition OpCo 2L/HoldCo Loan Claims Litigation Trust Allocation, (ii) the Prepetition Second Lien Loan Cash Consideration (subject to the Prepetition Second Lien Loan Cash Consideration Waiver), and (iii) Reorganized Common Equity in an amount equal to the Prepetition Second Lien Loan Equity Allocation.  The Holders of Prepetition Second Lien Loan Claims shall be entitled to receive, retain, and not turn over the distributions described herein (subject to the Prepetition Second Lien Loan Cash Consideration Waiver) notwithstanding anything in the Existing First Lien/Second Lien Intercreditor Agreement to the contrary.

(b)     Voting:  The Prepetition Second Lien Loan Claims are Impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Prepetition Second Lien Loan Claims.

### 5.6.    *OpCo General Unsecured Claims (Class 6).*

(a)     Treatment:  In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed OpCo General Unsecured Claim, except to the extent that a Holder of a OpCo General Unsecured Claim agrees to less favorable treatment, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed OpCo General Unsecured Claim shall receive its *pro rata* share of the General Unsecured Creditors Litigation Trust Allocation.

(b)     Voting:  The OpCo General Unsecured Claims are Impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such OpCo General Unsecured Claims at the applicable OpCo Debtors.

**5.7.**    ***Prepetition HoldCo Loan Claims (Class 7).***

(a)    <u>Treatment</u>:  On the Effective Date, the Prepetition HoldCo Loan Claims shall be Allowed under this Plan in the amount of $514.8 million plus interest, fees, costs, charges, and other amounts arising under or in connection with the Prepetition HoldCo Loan Claims, and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable Law or regulation by any Person.  In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Prepetition HoldCo Loan Claim, except to the extent that a Holder of a Prepetition HoldCo Loan Claim agrees to less favorable treatment, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Prepetition HoldCo Loan Claim shall receive its *pro rata* share of the Prepetition OpCo 2L/HoldCo Loan Claims Litigation Trust Allocation.

(b)    <u>Voting</u>:  The Prepetition HoldCo Loan Claims are Impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Prepetition HoldCo Loan Claims.

**5.8.**    ***Freedom HoldCo General Unsecured Claims (Class 8-A).***

(a)    <u>Treatment</u>:  In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Freedom HoldCo General Unsecured Claim, except to the extent that a Holder of a Freedom HoldCo General Unsecured Claim agrees to less favorable treatment, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Freedom HoldCo General Unsecured Claim shall receive its *pro rata* share of the General Unsecured Creditors Litigation Trust Allocation.

(b)    <u>Voting</u>:  The Freedom HoldCo General Unsecured Claims are Impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited with respect to such Freedom HoldCo General Unsecured Claims.

**5.9.**    ***HoldCo Receivables General Unsecured Claims (Class 8-B).***

(a)    <u>Treatment</u>:  In full and final satisfaction, compromise, settlement, release, and discharge of each Allowed HoldCo Receivables General Unsecured Claim, except to the extent that a Holder of an Allowed HoldCo Receivables General Unsecured Claim agrees to less favorable treatment on account of its Claim, on the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed HoldCo Receivables General Unsecured Claim shall receive its *pro rata* share of Cash, if any, held by the HoldCo Receivables Debtors.  If there is no Cash held at the HoldCo Receivables Debtors after paying all Claims in Class 8-B that are senior or structurally senior to the Allowed HoldCo Receivables General Unsecured Claims, if applicable, then such Holder of a HoldCo Receivables General Unsecured Claim shall receive no consideration on account of its HoldCo Receivables General Unsecured Claim.

(b)    <u>Voting</u>:  The HoldCo Receivables General Unsecured Claims are Impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of

such Holders will be solicited with respect to such HoldCo Receivables General Unsecured Claims.

**5.10.** ***TopCo General Unsecured Claims (Class 8-C).***

(a)    <u>Treatment</u>:  On the Effective Date, all TopCo General Unsecured Claims shall be canceled, released, discharged, and extinguished, and shall be of no further force or effect, and Holders of TopCo General Unsecured Claims shall not receive any distribution or consideration on account of such TopCo General Unsecured Claims.

(b)    <u>Voting</u>:  The TopCo General Unsecured Claims are Impaired Claims. Holders of Allowed TopCo General Unsecured Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan, and will not be solicited with respect to such Allowed TopCo General Unsecured Claims.

**5.11.** ***Intercompany Claims (Class 9).***

(a)    <u>Treatment</u>:  On or after the Effective Date, or as soon as practicable thereafter, any and all Intercompany Claims shall, at the option of the Debtors and the Required Consenting First Lien Lenders, either be (A) Reinstated or (B) set off, settled, discharged, contributed, canceled, released, without any distribution on account of such Intercompany Claims, or otherwise addressed.  To the extent any Intercompany Claim is Reinstated, or otherwise adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid or continued as of the Effective Date, any such transaction may be effected on or after the Effective Date without any further action by the Bankruptcy Court, act or action under applicable Law, regulation, order or rule or the vote, consent, authorization or approval of any Person. Notwithstanding anything to the contrary contained herein, pursuant to the Global Settlement, on the Effective Date, all Intercompany Claims between and among the Freedom HoldCo Debtors, on the one hand, and the other Debtors on the other, shall be settled, discharged, canceled, and released without any distribution on account of such Intercompany Claims.

(b)    <u>Voting</u>:  The Intercompany Claims are Reinstated or Impaired if the Allowed Intercompany Claims are canceled.  Holders of Allowed Intercompany Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan, and will not be solicited with respect to such Allowed Intercompany Claims.

**5.12.** ***Subordinated Claims (Class 10).***

(a)    <u>Treatment</u>:  Each Holder of a Subordinated Claim shall receive no distribution or recovery on account of its Subordinated Claim.

(b)    <u>Voting</u>: The Subordinated Claims are Impaired Claims.  In accordance with section 1126(g) of the Bankruptcy Code, the Holders of Allowed Subordinated Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan,

and the votes of such Holders will not be solicited with respect to such Allowed Subordinated Claims.

### 5.13. *Existing TopCo Equity Interests (Class 11).*

(a)     Treatment:  On the Effective Date, all Existing TopCo Equity Interests shall be canceled, released, and extinguished, and each Holder of an Allowed Existing TopCo Equity Interest shall not receive or retain any property or distributions under this Plan on account of such Allowed Existing TopCo Equity Interests.

(b)     Voting:  The Existing TopCo Equity Interests are Impaired Equity Interests. Holders of Allowed Existing TopCo Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan, and will not be solicited with respect to such Allowed Existing TopCo Equity Interests.

### 5.14. *Existing Intercompany Equity Interests (Class 12).*

(a)     Treatment:  Subject to the Restructuring Transactions Memorandum, each Allowed Existing Intercompany Equity Interest shall be, at the option of the applicable Debtor or Reorganized Debtor, either (i) Reinstated or (ii) set off, settled, distributed, contributed, canceled, and released without any distribution on account of such Existing Intercompany Equity Interests, or otherwise addressed at the option of the Reorganized Debtors and the Required Consenting First Lien Lenders.

(b)     Voting:  The Existing Intercompany Equity Interests are Reinstated or Impaired if the Allowed Existing Intercompany Equity Interests are canceled.  Holders of Allowed Existing Intercompany Equity Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Existing Intercompany Equity Interests.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
## REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

### 6.1. *Class Acceptance Requirement.*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Holders of the Allowed Claims in such Class that have voted on the Plan.  A Class of Equity Interests that is entitled to vote on the Plan has accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of Allowed Equity Interests of such Class that have voted on the Plan.

**6.2.** **_Tabulation of Votes on a Non-Consolidated Basis._**

All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code.

**6.3.** **_Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."_**

Because certain Classes are deemed to have rejected this Plan or may vote to reject the Plan, the Debtors will request Confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes.  Subject to Section 14.3 and Section 14.4 of this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Document as to any particular Debtor, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.  Subject to Section 14.3 and Section 14.4 of this Plan, the Debtors also reserve the right to request Confirmation of the Plan, as it may be modified, supplemented or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

**6.4.** **_Voting Classes; Deemed Acceptance or Rejection by Non-Voting Classes._**

If a Class contains Claims or Equity Interests eligible to vote and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

Claims in Classes 1 and 2 are Unimpaired under this Plan and Holders of Claims or Equity Interests in such Classes are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Classes 1 and 2 are not entitled to vote to accept or reject this Plan.

Claims or Equity Interests in Classes 8C, 10, and 11 are Impaired and shall receive no distributions under this Plan and Holders of Claims or Equity Interests in such Classes are, therefore, conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Claims or Equity Interests in Classes 8C, 10, and 10 are not entitled to vote on this Plan and votes of such Holders shall not be solicited.

Claims or Equity Interests in Classes 9 and 12 are Reinstated or Impaired if the Claims or Equity Interests in such Classes are canceled and are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code or deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Claims or Equity Interests in Classes 9 and 12 are not entitled to vote on this Plan and votes of such Holders shall not be solicited.

**6.5.** **_Vacant and Abstaining Classes._**

Any Class of Claims or Equity Interests that is not occupied as of the commencement of the Confirmation Hearing by a Claim or Equity Interest eligible to vote shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining

45

acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  Moreover, any Class of Claims or Equity Interests that is occupied as of the commencement of the Confirmation Hearing by a Claim or Equity Interest eligible to vote, but as to which no vote is cast, shall be presumed to accept this Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 6.6.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claim or Equity Interest (or any Class of Claims or Equity Interests) is Impaired under this Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or prior to the Confirmation Date, absent consensual resolution of such controversy among the Debtors and the complaining Entity or Entities, in consultation with the other Global Settlement Parties.

### 6.7.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan, nothing under this Plan or the Plan Supplement shall affect the rights of the Debtors or the Reorganized Debtors, as applicable, regarding any Unimpaired Claims, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1.    *Non-Substantive Consolidation.*

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof.  Nothing in this Plan shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor.  Additionally, claimants holding Claims and Equity Interests against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim or separate Equity Interest, as applicable, against each Debtor's Estate; provided, however, that no Holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus postpetition interest, if and to the extent provided in this Plan), and such Claims will be administered and treated in the manner provided in this Plan.

### 7.2.    *Plan Equitization Transaction.*

Before, on, and after the Effective Date, the applicable Debtors or the Reorganized Debtors or New TopCo, as applicable, may, consistent with the terms of the Restructuring Support Agreement, enter into any transaction and take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions (including any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan), that are consistent with and pursuant to the terms and conditions of the Plan (including the Global Settlement), including, as applicable:  (a) the execution and delivery of appropriate agreements or other documents of reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable

46

Law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of incorporation, merger, migration, consolidation, or other Organizational Documents with the appropriate governmental authorities pursuant to applicable Law; (d) the execution, delivery, and filing, if applicable, of the New Organizational Documents and the Take-Back Debt Documents; (e) the New ABL Facility; (f) such other transactions that are required to effectuate the Restructuring Transactions, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; and (g) all other actions that the Reorganized Debtors reasonably determine, in consultation with the Required Consenting First Lien Lenders, are necessary or appropriate, including making filings or recordings that may be required by applicable Law.  For the purposes of effectuating this Plan, none of the Restructuring Transactions contemplated herein shall constitute a "change of control" or "assignment" (or terms with similar effect) under, or any other transaction or matter that would result in a violation, breach, or default under, or increase, accelerate, or otherwise alter any obligations, rights or liabilities of the Debtors, the Reorganized Debtors or New TopCo under, or result in the creation or imposition of a Lien upon any property or asset of the Debtors, the Reorganized Debtors or New TopCo pursuant to, any agreement, contract, or document of the Debtors, and any consent or advance notice required under any agreement, contract, or document of the Debtors shall be deemed satisfied by Confirmation.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.  The Confirmation Order shall authorize the Debtors and the Reorganized Debtors, as applicable, to undertake the Plan Equitization Transaction contemplated by the Plan and other Definitive Documents.

### 7.3.    *Partial Sale Transaction.*

If the Partial Sale Transaction is consummated prior to the Effective Date, the Sale Proceeds shall be used to reduce the DIP Facility and/or the ABL Loans in accordance with the terms of the Sale Order, the DIP Credit Agreement, the Final DIP Order, the ABL Loan Documents, and the Prepetition ABL Intercreditor Agreement, as applicable.  For the avoidance of doubt, the Assumed Liabilities (as defined under the Asset Purchase Agreement) shall be the sole responsibility of the Buyer even if such Claim is Allowed against the Debtors, and such Claims shall have no recovery from the Debtors under the terms of the Plan.

### 7.4.    *Continued Corporate Existence in Certain Debtors; Vesting of Assets; Dissolution of Certain Debtors.*

(a)    <u>General</u>.  Except as otherwise provided in this Plan or as otherwise may be agreed between the Debtors and the Required Consenting First Lien Lenders, each of the Debtors, as Reorganized Debtors, and New TopCo, shall continue to exist on and after the Effective Date as a separate legal Entity with all of the powers available to such legal Entity under and in accordance with the applicable Laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the New Organizational Documents, without prejudice to any right

to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable Law.  On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor or New TopCo (including as a Holder of Reorganized Common Equity), each of the Reorganized Debtors and New TopCo, as applicable (and in consultation with the Required Consenting First Lien Lenders), may take such action as permitted by applicable Law and such Reorganized Debtor's or New TopCo's New Organizational Documents, as such Reorganized Debtor or New TopCo, as applicable, may determine is reasonable and appropriate, including, but not limited to, causing:  (a) a Reorganized Debtor or New TopCo to be merged with and into another Reorganized Debtor, or a subsidiary and/or Affiliate of a Reorganized Debtor or New TopCo; (b) a Reorganized Debtor or New TopCo to be dissolved; (c) the conversion of a Reorganized Debtor or New TopCo from one Entity type to another Entity type; (d) the legal name of a Reorganized Debtor or New TopCo to be changed; (e) the closure of a Reorganized Debtor's or New TopCo's Chapter 11 Case on the Effective Date or any time thereafter; or (f) the reincorporation of a Reorganized Debtor or New TopCo under the Law of jurisdictions other than the Law under which the Debtor currently is incorporated.

(b)     Vesting of Assets.    Except as otherwise provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property of the Estates, wherever located, including the Reorganized Debtors' Retained Causes of Action (but not the Permitted Litigation Claims) and any property, wherever located, acquired by the Debtors under or in connection with this Plan, shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, charges, other encumbrances and Equity Interests, except for those Claims, Liens, charges, other encumbrances and Equity Interests arising from or related to the Take-Back Debt Documents or the New ABL Facility Documents.  On and after the Effective Date, except as otherwise provided in this Plan or in the Confirmation Order, each applicable Reorganized Debtor and New TopCo may operate its business(es) and may use, acquire and dispose of property, wherever located, and each Reorganized Debtor and New TopCo, as applicable, may prosecute, compromise or settle any Claims (including any Administrative Expense Claims and excluding any Permitted Litigation Claims), Equity Interests and Reorganized Debtors' Retained Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the Reorganized Debtors and New TopCo may pay the charges that they incur on or after the Effective Date, if any, for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.  Anything in this Plan to the contrary notwithstanding, any Unimpaired Claims against a Debtor shall remain the obligations solely of such Debtor or such Reorganized Debtor and shall not become obligations of any other Debtor, Reorganized Debtor, the Litigation Trust, or New TopCo by virtue of this Plan, the Chapter 11 Cases, or otherwise.

(c)     Preservation of Causes of Action.    In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Reorganized Debtors' Retained Causes of Action, whether arising before or after the Petition Date.  The Reorganized Debtors' rights to commence, prosecute, or settle the Reorganized Debtors' Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary.

In accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Permitted Litigation Claims of the Debtors and their Estates, whether arising before or after the Petition Date. The Litigation Trust's rights to commence, prosecute, or settle the Permitted Litigation Claims shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Disclosure Statement Supplement to any Reorganized Debtors' Retained Cause of Action or Permitted Litigation Claim against it as any indication that the Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, will not pursue any and all available Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claim against it. The Debtors, the Reorganized Debtors, and the Litigation Trust expressly reserve all rights to prosecute any and all Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims against any Entity (other than the Causes of Action released under the Plan and subject to the Exculpations contained herein). Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors or the Litigation Trust, as applicable, expressly reserve all Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such retained Causes of Action upon, after, or as a consequence of the Confirmation of the Plan.

The Reorganized Debtors and the Litigation Trust, as applicable, reserve and shall retain such Reorganized Debtors' Retained Causes of Action and Permitted Litigation Claims notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Reorganized Debtors' Retained Causes of Action against any Entity shall vest in the Reorganized Debtors and any Permitted Litigation Claims against any Entity shall vest in the Litigation Trust. The applicable Reorganized Debtors or the Litigation Trust, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims, as applicable. The Reorganized Debtors or the Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims, respectively, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court except as otherwise released in this Plan.

**7.5.    *Indemnification Provisions in Organizational Documents.***

On and as of the Effective Date, all indemnification obligations of the Debtors that are in place as of the Petition Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements or otherwise) for the current directors, officers and managers of the Debtors, as well as the attorneys, accountants, investment bankers, and other

professionals of, or acting on behalf of, the Debtors, as applicable, shall be assumed by the applicable Debtor or assumed and assigned by the applicable Debtor and remain in full force and effect after the Effective Date, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose, as applicable; provided that, notwithstanding the foregoing, any indemnification obligations of the Debtors on account of any Permitted Litigation Claims that are transferred to the Litigation Trust or on account of any Claims or Causes of Action that are not being released pursuant to the Plan shall, in each case, not be assumed or assumed and assigned and, in each case, such indemnification obligations and related agreements and documents shall be deemed rejected under this Plan.

### 7.6. *Sources for Cash Distributions under this Plan.*

The Debtors shall fund Cash distributions under the Plan with Cash on hand, including Cash from operations, the American Freight Liquidation Proceeds, the Sale Proceeds, and the proceeds of the DIP Facility.  Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors or the Disbursing Agent in accordance with Article VIII.

From and after the Effective Date, subject to any applicable limitations set forth in any agreement entered into on or after the Effective Date (including, without limitation, the New Organizational Documents, the New ABL Facility Documents, and the Take-Back Debt Documents), the Reorganized Debtors shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of managers or directors, as applicable (or other applicable governing bodies), of the applicable Reorganized Debtors deem appropriate.

### 7.7. *Take-Back Debt Facility.*

On the Effective Date, the Reorganized Debtors shall enter into a Take-Back Debt Facility in the maximum amount necessary to ensure that the Reorganized Debtors are in compliance with the Pro Forma Leverage Cap, which will be made up of, as further set forth below, a first-lien term loan consisting of all DIP Claims arising from the Tranche A DIP Loans, and certain DIP Claims arising from the Tranche B DIP Loans, in each case as of the Effective Date, and each being consistent with the terms and conditions set forth in the Restructuring Support Agreement.

Confirmation of the Plan shall be deemed to constitute approval by the Bankruptcy Court of the Take-Back Debt Facility and related agreements (including all transactions contemplated thereby, such as any supplementation or additional syndication of the Take-Back Debt Facility, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and, subject to the occurrence of the Effective Date, authorization for the applicable Reorganized Debtors to enter into and perform their obligations in connection with the Take-Back Debt Facility, pursuant to the terms and conditions of the Restructuring Support Agreement.

On the Effective Date, the agreements with respect to the Take-Back Debt Facility shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the

Take-Back Debt Facility are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law. On the Effective Date, all of the Liens and security interests to be granted in connection with the Take-Back Debt Facility (1) shall be granted, (2) shall be legal, binding, and enforceable Liens on, and security interests in, the Collateral granted in accordance with the Take-Back Debt Facility, (3) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under in connection with the Take-Back Debt Facility, and (4) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law. The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other Law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

Any Holder entitled to receive Take-Back Term Loans hereunder may designate that all or a portion of such Holder's share of the Take-Back Term Loans to be distributed as part of the treatment of such Holder's Allowed Claims, be registered in the name of, and delivered to, its designee by delivering notice thereof to counsel to the Debtors and to the Claims Agent at least five (5) Business Days prior to the Effective Date.

### 7.8.    *New ABL Facility.*

Confirmation of the Plan shall be deemed to constitute approval by the Bankruptcy Court of the New ABL Facility and related agreements (including all transactions contemplated thereby, such as any supplementation or additional syndication of the New ABL Facility, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and, subject to the occurrence of the Effective Date, authorization for the applicable Reorganized Debtors to enter into and perform their obligations in connection with the New ABL Facility, pursuant to the terms and conditions of the Restructuring Support Agreement.

On the Effective Date, the agreements with respect to the New ABL Facility shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New ABL Facility are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the

Bankruptcy Code or any other applicable non-bankruptcy Law.  On the Effective Date, all of the Liens and security interests to be granted in connection with the New ABL Facility (1) shall be granted, (2) shall be legal, binding, and enforceable Liens on, and security interests in, the Collateral granted in accordance with the New ABL Facility, (3) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under in connection with the New ABL Facility, and (4) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law.  The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other Law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

### 7.9.    *Reorganized Debtors' Ownership.*

On the Effective Date, in accordance with the terms of the Plan and the Restructuring Transactions Memorandum and as further set forth in the Plan Supplement, New TopCo shall issue and deliver all of the Reorganized Common Equity to Holders of Prepetition First Lien Loan Claims, Holders of Allowed Prepetition Second Lien Loan Claims, and certain Holders of DIP Claims, pursuant to the terms and conditions of this Plan, the New Organizational Documents and the DIP Credit Agreement.  The issuance of Reorganized Common Equity pursuant to the Plan is authorized without the need for further limited liability company or corporate action and without any further action by any Holder of a Claim or Equity Interest, and all of the Reorganized Common Equity issued or issuable pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Any Holder of an Allowed Prepetition First Lien Loan Claim, Allowed Prepetition Second Lien Loan Claim, or Allowed DIP Claim may designate that all or a portion of such Holder's *pro rata* share of the Reorganized Common Equity to be distributed as part of the treatment of such Allowed Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, or Allowed DIP Claims, as applicable, be registered in the name of, and delivered to, its designee by delivering notice thereof to the Debtors and/or by the designee delivering notice thereof to the Claims Agent in accordance with such other procedures for such designations and/or delivery that the Debtors or the Reorganized Debtors, as applicable, may establish in accordance with the Plan. Any such designee shall be an "accredited investor" as such term is defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

### 7.10.    *Litigation Trust.*

(a)    <u>General</u>.  In connection with the Global Settlement, on the Effective Date, (i) the OpCo Debtors and the Freedom HoldCo Debtors shall execute the Litigation Trust Agreement and

shall take such steps as necessary to establish the Litigation Trust in accordance with the terms of the Plan and the beneficial interests therein shall be for the benefit of (A) Holders of Prepetition First Lien Loan Claims, (B) Holders of Allowed Prepetition Second Lien Loan Claims, (C) Holders of Allowed OpCo General Unsecured Claims, (D) Holders of Allowed Freedom HoldCo General Unsecured Claims, and (E) Holders of Allowed Prepetition HoldCo Loan Claims, with each such party in clauses (A) through (E) being a beneficiary of the Litigation Trust, and (ii) the OpCo Debtors and the Freedom HoldCo Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Litigation Trust all of their rights, title and interest in the Litigation Trust Assets for the benefit of all beneficiaries of the Litigation Trust in accordance with the terms of this Plan and the Litigation Trust Agreement. Pursuant to section 1141 of the Bankruptcy Code, such Litigation Trust Assets shall automatically vest in the Litigation Trust free and clear of all Claims, Liens, encumbrances, or interests, except as otherwise set forth in this Plan.

The (i) establishment, purpose, and administration of the Litigation Trust, (ii) appointment, rights, and powers, of the Litigation Trustee, and (iii) treatment of the Litigation Trust for federal income tax purposes, among other things, shall be governed by the Litigation Trust Agreement. On and after the Effective Date, the Litigation Trustee shall be authorized, in accordance with the terms of this Plan and the Litigation Trust Agreement, to take such other actions as may be necessary or desirable to make any distributions on account of any Litigation Trust Assets.

In furtherance of this section of the Plan: (i) it is intended that the Litigation Trust be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code to the Holders of Allowed Prepetition First Lien Loan Claims, the Holders of Allowed Prepetition Second Lien Loan Claims, Holders of Allowed OpCo General Unsecured Claims, Holders of Allowed Freedom HoldCo General Unsecured Claims, and Holders of Allowed Prepetition HoldCo Loan Claims, consistent with the terms of the Plan, and accordingly, all assets held by the Litigation Trust are intended to be deemed for United States federal income tax purposes to have been distributed by the Debtors or the Reorganized Debtors, as applicable, to the Holders of Allowed Prepetition First Lien Loan Claims, the Holders of Allowed Prepetition Second Lien Loan Claims, Holders of Allowed OpCo General Unsecured Claims, Holders of Allowed Freedom HoldCo General Unsecured Claims, and Holders of Allowed Prepetition HoldCo Loan Claims, as applicable, and then contributed by such Holders of Allowed Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, Allowed OpCo General Unsecured Claims, Allowed Freedom HoldCo General Unsecured Claims, and Allowed Prepetition HoldCo Loan Claims to the Litigation Trust in exchange for their interest in the Litigation Trust, and accordingly, the Holders of Allowed Prepetition First Lien Loan Claims, the Holders of Allowed Prepetition Second Lien Loan Claims, Holders of Allowed OpCo General Unsecured Claims, Holders of Allowed Freedom HoldCo General Unsecured Claims, and the Holders of Allowed Prepetition HoldCo Loan Claims shall be treated as the grantors and owners of their respective shares of the Litigation Trust Assets; (ii) the sole purpose of the Litigation Trust shall be the liquidation and distribution of the net assets of the Litigation Trust in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business; (iii) all parties (including, without limitation, the Debtors, the Reorganized Debtors, the Holders of Allowed Prepetition First Lien Loan Claims

receiving interests in the Litigation Trust, the Holders of Allowed Prepetition Second Lien Loan Claims receiving interests in the Litigation Trust, the Holders of Allowed OpCo General Unsecured Claims receiving interests in the Litigation Trust, the Holders of Allowed Freedom HoldCo General Unsecured Claims receiving interests in the Litigation Trust, Holders of Allowed Prepetition HoldCo Loan Claims receiving interests in the Litigation Trust, and the Litigation Trustee) shall report consistently with such treatment described in provisos (i) and (ii) of this paragraph; (iv) all parties (including, without limitation, the Debtors, the Reorganized Debtors, the Holders of Allowed Prepetition First Lien Loan Claims receiving interests in the Litigation Trust, the Holders of Allowed Prepetition Second Lien Loan Claims receiving interests in the Litigation Trust, the Holders of Allowed OpCo General Unsecured Claims receiving interests in the Litigation Trust, the Holders of Allowed Freedom HoldCo General Unsecured Claims receiving interests in the Litigation Trust, the Holders of Allowed Prepetition HoldCo Loan Claims receiving interests in the Litigation Trust, and the Litigation Trustee) shall report consistently with the valuation of the assets transferred to the Litigation Trust as determined by the Litigation Trustee (or its designee); (v) the Litigation Trustee shall be responsible for filing all applicable tax returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (vi) the Litigation Trustee shall annually send to each Holder of an interest in the Litigation Trust a separate statement regarding such Holder's share of items of income, gain, loss, deduction, or credit (including receipts and expenditures) of the trust as relevant for United States federal income tax purposes.

Subject to definitive guidance from the United States Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the United States Internal Revenue Service upon audit if not contested by the Litigation Trustee), the Litigation Trustee may timely elect to (i) treat any portion of the Litigation Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable Law, report consistently with the foregoing for United States state and local income tax purposes.  If a "disputed ownership fund" election is made, (i) the portion of the Litigation Trust assets allocated to the disputed ownership fund will be subject to entity-level taxation and (ii) all parties (including, without limitation, the Debtors, Holders of Allowed Prepetition First Lien Loan Claims receiving interests in the Litigation Trust, Holders of Allowed OpCo General Unsecured Claims receiving interests in the Litigation Trust, Holders of Allowed Prepetition Second Lien Loan Claims receiving interests in the Litigation Trust, Holders of Allowed Freedom HoldCo General Unsecured Claims receiving interests in the Litigation Trust, Holders of Allowed Prepetition HoldCo Loan Claims receiving interests in the Litigation Trust, and the Litigation Trustee) shall report for United States federal (and applicable state and local) income tax purposes consistently with the foregoing.  Any taxes (including with respect to earned interest, if any) imposed on the Litigation Trust, including as a result of an election to be treated as a "disputed ownership fund" shall be paid out of the assets of the Litigation Trust (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).  The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

(b)      Litigation Trustee.

(i)      *Appointment; Duties*.  The Person who initially will serve as the Litigation Trustee shall be Lawrence R. Hirsh of LRHIRSH, LLC; provided that, if Lawrence R. Hirsh cannot serve as the Litigation Trustee on the Effective Date for any reason, the initial Litigation Trustee shall be an individual selected by the Freedom Lender Group with the reasonable consent of the Ad Hoc Group and the Creditors' Committee. On or after the Effective Date, the Litigation Trustee shall assume all of its obligations, powers and authority under the Litigation Trust Agreement to (x) reconcile OpCo General Unsecured Claims and Freedom HoldCo General Unsecured Claims, and (y) investigate, pursue, litigate and/or settle Permitted Litigation Claims that are transferred to the Litigation Trust (collectively, the "Litigation Trustee Duties") in consultation with the Litigation Trust Advisory Board.   The Litigation Trustee, in consultation with the Litigation Trust Advisory Board, shall have the sole discretion with respect to the prosecution, funding, and settlement or other resolution of the Permitted Litigation Claims and the distribution of property of the Litigation Trust, subject to the Litigation Trust Units Allocations and the terms of the Litigation Trust Agreement and the Plan.  The Litigation Trustee shall be subject to the oversight of the Litigation Trust Advisory Board in accordance with the Plan and the Litigation Trust Agreement.

(ii)     *Litigation Trustee*.   The Litigation Trustee shall have such qualifications and experience as are sufficient to enable the Litigation Trustee to perform its obligations under this Plan and under the Litigation Trust Agreement, and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Litigation Trust Agreement.   Solely to the extent necessary and in furtherance of the Litigation Trustee Duties, following the Effective Date, the Litigation Trustee shall be deemed to be a judicial substitute for the Reorganized Debtors as the party in interest in the Chapter 11 Cases, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.  The Litigation Trustee shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers, including upon advice of counsel, unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct; provided that, notwithstanding the foregoing, the Litigation Trustee shall owe a fiduciary duty of care and loyalty to all beneficiaries of the Litigation Trust (but, for the avoidance of doubt, the Litigation Trustee shall not owe a fiduciary duty to the Debtors or the Reorganized Debtors).

(iii)    *Resignation, Death or Removal*.  The Litigation Trustee may be removed by the Bankruptcy Court upon application by any party in interest for cause shown.  In the event of the resignation or removal, liquidation, dissolution, death or incapacity of the Litigation Trustee, the Litigation Trust Advisory Board shall designate another Person to become the Litigation Trustee and thereupon the successor Litigation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor.

(c)      Litigation Trust Agreement.

(i)      *Provisions of Agreement and Order*.   The Litigation Trust Agreement and the Confirmation Order shall provide that neither the Reorganized Debtors

(except as expressly set forth in the Litigation Trust Agreement) nor their respective boards of directors, managements, employees and professionals shall have any liability for any action taken or omitted to be taken by the Litigation Trustee in performing the Litigation Trustee Duties and all Persons are enjoined from pursuing any Claims against the foregoing pursuant to this Plan on account of any such action taken or omitted to be taken.

(ii)     The Litigation Trust Agreement will be Filed with the Plan Supplement and will provide for, among other things: (1) the transfer of the Litigation Trust Assets to the Litigation Trust; (2) the payment of Litigation Trust Expenses from the Litigation Trust Assets; (3) distributions of the net proceeds of the Litigation Trust Assets to Holders of Allowed Prepetition First Lien Loan Claims, Holders of Allowed Prepetition Second Lien Loan Claims, Holders of Allowed OpCo General Unsecured Claims, Holders of Allowed Freedom HoldCo General Unsecured Claims, and Holders of Allowed Prepetition HoldCo Loans Claims, shall be made on a *pro rata* basis subject to the Litigation Trust Unit Allocations, provided that, for the avoidance of doubt, no Holder shall be entitled to receive a distribution on account of any recoveries from Permitted Litigation Claims where such Holder is the defendant in connection with such Permitted Litigation Claims; (4) reasonable access to the Debtors' books and records; (5) that Lawrence R. Hirsh of LRHIRSH, LLC shall serve as the initial Litigation Trustee; (6) the terms of the Litigation Trustee's engagement; (7) reasonable and customary provisions that allow for limitation of liability and indemnification of the Litigation Trustee and its professionals by the Litigation Trust; provided that any such indemnification shall be the sole responsibility of the Litigation Trust and payable solely from the Litigation Trust Assets; provided, further, that notwithstanding the foregoing, the Litigation Trustee shall owe a fiduciary duty of care and loyalty to all beneficiaries of the Litigation Trust; (8) the Litigation Trust Escrow Amount shall be reserved for the Litigation Trust Expenses; provided that, if the Litigation Trustee determines in good faith that the Litigation Trust Escrow Amount is no longer necessary to cover the Litigation Trust Expenses, then the Litigation Trustee shall be entitled to distribute such Cash consistent with its fiduciary duties; (9) the Litigation Trust shall be precluded from raising financing, including any litigation financing, unless such financing is on market terms, and an equal opportunity to participate in such financing is offered on the same terms and on a *pro rata* basis to all holders of beneficial interests in the Litigation Trust; and (10) the term and dissolution of the Litigation Trust. Following the Effective Date, the Litigation Trustee shall be responsible for all decisions and duties with respect to the Litigation Trustee Duties, except as otherwise provided in the Plan, the Confirmation Order, or the Litigation Trust Agreement.

(iii)     In accordance with the Global Settlement, the Litigation Trust Advisory Board shall be comprised of two designees of the Freedom HoldCo Debtors (which designees shall be selected by the Freedom Lender Group) and one designee of the OpCo Debtors (which designee shall be selected by the Creditors' Committee with the consent of the Required Consenting First Lien Lenders) to consult the Litigation Trustee with respect to the prosecution, funding, and settlement or other resolution of Permitted Litigation Claims and the distribution of Litigation Trust Assets; provided that the Litigation Trust Units shall be allocated in accordance with the Litigation Trust Units Allocation.

(iv)    *Permitted Litigation Claims*.  The (a) Freedom HoldCo Debtor Litigation Trust Claims and (b) the OpCo Debtor Litigation Trust Claims shall be transferred to the Litigation Trust by the OpCo Debtors and the Freedom HoldCo Debtors (and, for the avoidance of doubt, are not being released pursuant to this Plan).  For the further avoidance of doubt, any and all Claims and Causes of Action identified in the Freedom HoldCo Independent Director Report against any Released Party shall be settled and released in full and are not Permitted Litigation Claims.  For the further avoidance of doubt, nothing herein, including the definition of Permitted Litigation Claims or Released Parties shall be construed to limit the Litigation Trust's ability to pursue the D&O Liability Insurance Policies with respect to Permitted Litigation Claims.

(d)    Litigation Trust Funding.  On the Effective Date, the Debtors and other parties (if applicable) shall fund the Litigation Trust Escrow Account in an amount equal to the Litigation Trust Escrow Amount; provided that the TopCo Cash Allocation shall not be reduced or netted by any postpetition Administrative Expense Claims incurred by or otherwise allocable to the Freedom HoldCo Debtors.  The Litigation Trust Escrow Amount shall automatically and irrevocably vest in the Litigation Trust free and clear of all Claims, Liens, encumbrances, or interests.  The Litigation Trust Escrow Amount shall be used for the administration of the Litigation Trust, to pay Litigation Trust Expenses, and to pursue the Permitted Litigation Claims.  For the avoidance of doubt, the Litigation Trust Escrow Amount shall be primarily reserved for Litigation Trust Expenses; provided that, if the Litigation Trustee determines in good faith that the Litigation Trust Escrow Amount is no longer necessary to cover the Litigation Trust Expenses, then the Litigation Trustee shall be entitled to distribute such Cash consistent with its fiduciary duties and as set forth in the Litigation Trust Agreement.  The Litigation Trust shall be precluded from raising financing, including any litigation financing, unless such financing is on market terms, and an equal opportunity to participate in such financing is offered on the same terms and on a *pro rata* basis to all beneficial holders of Litigation Trust Units.  All proceeds from the pursuit of the Permitted Litigation Claims shall be used by the Litigation Trustee to pay the Litigation Trust Expenses, pursuit of the Permitted Litigation Claims, and distribution to Holders of Allowed Prepetition Second Lien Loan Claims, Holders of Allowed Prepetition First Lien Loan Claims, Holders of Allowed OpCo General Unsecured Claims, Holders of Allowed Freedom HoldCo General Unsecured Claims, and Holders Allowed Prepetition HoldCo Loan Claims.  The Litigation Trustee, on behalf of the Litigation Trust, may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the Litigation Trust Assets in accordance with this Plan and the Litigation Trust Agreement; provided that none of Paul Hastings LLP, White & Case LLP, or Pachulski Stang Ziehl & Jones LLP shall serve as counsel to the Litigation Trust, the Litigation Trustee, or the Litigation Trust Advisory Board.

(e)    Litigation Trust Units.  Any and all Litigation Trust Units shall be non-transferable other than if transferred by will, intestate succession, if required to be transferred as part of a liquidation or winding up of a holder, or otherwise by operation of Law.  In addition, any and all Litigation Trust Units, to the extent such units may be deemed "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state or local securities Laws, will not be registered pursuant to the Securities Act or any applicable state or local securities Law pursuant to section 1145 of the Bankruptcy Code, to the extent

permitted and available, and will be exempt from the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

(f)    Litigation Trust Advisory Board.  On the Effective Date, the Litigation Trust Advisory Board shall be vested with the authority and responsibility to (i) monitor and oversee the administration of the Litigation Trust, (ii) monitor and oversee the activities and performance of the Litigation Trustee, and (iii) perform such other tasks as are set forth in the Plan, the Confirmation Order, and the Litigation Trust Agreement.

### 7.11.    *Exemption from Registration Requirements.*

The offering, issuance, and distribution of any securities, including the Reorganized Common Equity, in exchange for Claims pursuant to Article III or Article V of the Plan, shall be exempt from, among other things, the registration requirements of the Securities Act and any other applicable U.S. state or local Laws requiring registration prior to the offering, issuance, distribution, or sale of securities pursuant to section 1145 of the Bankruptcy Code (except with respect to an Entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code) to the extent permitted and available.  Except as otherwise provided in the Plan or the governing certificates or instruments, any and all such Reorganized Common Equity so issued under the Plan (a) will not be "restricted securities" (as defined under the Securities Act), and (b) will be freely tradable and transferable under the Securities Act by the recipients thereof that are not, and have not been within ninety (90) days of such transfer, an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the Debtors, the Reorganized Debtors or New TopCo, in each case, subject to (x) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, (y) compliance with applicable securities Laws and any rules and regulations, including those of the United States Securities and Exchange Commission or U.S. state or local securities Laws, if any, applicable at the time of any future transfer of such securities or instruments, and (z) any restrictions in the New Organizational Documents of New TopCo.

Notwithstanding anything to the contrary in the Plan or the Restructuring Support Agreement, no Entity (including DTC or any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether issuance of the Reorganized Common Equity is exempt from registration and/or eligible for book-entry delivery, settlement, and depository (to the extent applicable).

### 7.12.    *Organizational Documents.*

The Reorganized Debtors or New TopCo, as applicable, shall enter into such agreements and/or amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan and the Bankruptcy Code, which shall:  (1) contain terms consistent with the Plan Supplement and the Global Settlement; and (2) authorize the issuance, distribution, and reservation of the Reorganized Common Equity to the Entities entitled to receive such issuances, distributions and reservations, as applicable under the Plan.   The New Organizational Documents will be deemed to be modified to prohibit (and will include a provision prohibiting) the issuance of non-voting equity securities, pursuant to and solely to the extent

required under section 1123(a)(6) of the Bankruptcy Code.  Without limiting the generality of the foregoing, as of the Effective Date, the Reorganized Debtors and New TopCo shall be governed by the New Organizational Documents applicable to it.  On or immediately before the Effective Date, each Debtor, each Reorganized Debtor and New TopCo, as applicable, will file its respective New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable Laws of its state of incorporation or formation, to the extent required under this Plan or applicable non-bankruptcy Law for such New Organizational Documents to become effective.  After the Effective Date, the Reorganized Debtors and New TopCo may amend and restate the formation, incorporation, organizational, and constituent documents, as applicable, as permitted by the Laws of its respective jurisdiction of formation or incorporation, as applicable, and the terms of such documents.

As a condition to receiving the Reorganized Common Equity, Holders of Allowed Prepetition First Lien Loan Claims, Holders of Allowed DIP Claims, and Holders of Allowed Prepetition Second Lien Loan Claims, and/or any of their respective designees for receipt of Reorganized Common Equity, will be required to execute and deliver the applicable New Organizational Documents for New TopCo.  For the avoidance of doubt, any Entity's or Person's receipt of Reorganized Common Equity under, or as contemplated by, the Plan shall be deemed as its agreement to the applicable New Organizational Documents for New TopCo, and such Entities and Persons shall be deemed signatories to the applicable New Organizational Documents for New TopCo without further action required on their part (solely in their capacity as members of New TopCo).  The New Organizational Documents for New TopCo will be effective as of the Effective Date and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each recipient of Reorganized Common Equity will be bound thereby in all respects even if such recipient has not actually executed and delivered a counterpart thereof.

### 7.13.  *Exemption from Certain Transfer Taxes and Recording Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to or in connection with the Plan (including the Partial Sale Transaction), including:  (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any U.S. federal, state or local document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate U.S. federal, state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments

of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, this Plan.

**7.14.   *Other Tax Matters.***

From and after the Effective Date, the Reorganized Debtors including New TopCo, shall be authorized to make and to instruct any of their wholly-owned subsidiaries to make any elections available to them under applicable Law with respect to the tax treatment of the Restructuring Transactions as specified in the Restructuring Transactions Memorandum.

**7.15.   *Cancellation of Existing Securities and Agreements.***

Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth in this Plan or in the Restructuring Transactions Memorandum, on the Effective Date, all agreements, including all intercreditor agreements, instruments, and other documents directly or indirectly evidencing, related to or connected with any Claim, other than certain Intercompany Claims and Existing Intercompany Equity Interests, as expressly set forth in the Plan, and any rights of any Holder in respect thereof, shall be deemed canceled, discharged and of no force or effect without further act or action under any applicable agreement, Law, regulation, order, or rule.   The holders of or parties to such canceled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for in this Plan. Notwithstanding anything to the contrary herein and in the Restructuring Support Agreement, each of the DIP Credit Agreement, First Lien Credit Agreement, the Second Lien Credit Agreement, and the HoldCo Credit Agreement shall continue in effect solely to the extent necessary to: (a) permit Holders of the DIP Claims, Prepetition First Lien Loan Claims, Prepetition Second Lien Loan Claims and Prepetition HoldCo Loan Claims to receive distributions under this Plan on account of such respective Claims; and (b) preserve all rights of (i) the Second Lien Lenders with respect to the Second Lien Credit Agreement Agent and vice versa and (ii) the HoldCo Lenders with respect to the HoldCo Credit Agreement Agent and vice versa, in each case with respect to any rights or obligation to compensation, indemnification, expense reimbursement, or contribution, or any other claim or entitlement, in each case that they may have under such agreements that survive termination of such agreements against any entity that is not a Debtor or a Reorganized Debtor, and otherwise in accordance with the terms of this Plan.   Except as provided pursuant to this Plan, upon satisfaction of the DIP Claims, Prepetition First Lien Loan Claims, the Prepetition Second Lien Loan Claims and the Prepetition HoldCo Loan Claims, respectively (and as the case may be), each of the DIP Credit Agreement, First Lien Credit Agreement Agent, the Second Lien Credit Agreement Agent and the HoldCo Credit Agreement Agent, respectively (and as the case may be), shall be discharged of all of their respective obligations associated with the DIP Credit Agreement, First Lien Credit Agreement, the Second Lien Credit Agreement, and the HoldCo Credit Agreement, respectively (and as the case may be).

On the Effective Date, except as otherwise specifically provided for in this Plan (including in the Restructuring Transactions Memorandum):   (a) the obligations of the Debtors under any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, call, put, award, commitment, registration rights, preemptive right, right of first refusal, right of first offer, co-sale right, investor rights, or other instrument or document directly or indirectly evidencing or

creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of or ownership interest in the Debtors that are specifically Reinstated pursuant to this Plan, if any) shall be canceled, terminated and of no further force or effect solely as to the Debtors, without further act or action, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, calls, puts, awards, commitments, registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights, investor rights, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of or ownership interest in the Debtors that are specifically Reinstated pursuant to this Plan, if any) shall be automatically and fully released and discharged.

### 7.16.    *Boards.*

As of the Effective Date, the members of each of the Boards shall be deemed to have resigned from such Board.  Subject to the terms of the Restructuring Support Agreement and the applicable New Organizational Documents, on the Effective Date, the New Boards shall be established and new members of the New Boards appointed.  The initial members of the New Boards shall consist of those individuals identified in the Plan Supplement to be Filed with the Bankruptcy Court at or before the Confirmation Hearing.  Unless reappointed, the members of the Boards prior to the Effective Date shall have no continuing obligations to any of the Reorganized Debtors or to New TopCo on and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor or New TopCo on the Effective Date.  Commencing on the Effective Date, the members of the New Boards shall serve pursuant to the terms of the applicable New Organizational Documents or the applicable Organizational Documents of such Reorganized Debtor or New TopCo, as applicable, and may be replaced or removed in accordance therewith, as applicable.

### 7.17.    *Management.*

As of the Effective Date, the individuals who will serve in certain senior management positions of the Reorganized Debtors shall consist of those individuals set forth in the Plan Supplement.

### 7.18.    *Directors and Officers Insurance Policies.*

In accordance with the Plan, (a) on the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto, which "tail policy" shall not be otherwise terminated or reduced) in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; provided that any indemnity obligations that would otherwise be assumed by the foregoing

assumption of the D&O Liability Insurance Policies shall be governed as provided elsewhere in this Plan and shall not be deemed to be assumed with assumption of such D&O Liability Insurance Policies; (b) the Debtors and the Reorganized Debtors, as applicable, shall retain the ability to supplement such D&O Liability Insurance Policies as the Debtors or Reorganized Debtors, as applicable, may deem necessary; and (c) for the avoidance of doubt, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of each of the unexpired D&O Liability Insurance Policies.

For the avoidance of doubt, on and after the Effective Date, each of the Reorganized Debtors shall be authorized to purchase a directors' and officers' liability insurance policy for the benefit of their respective directors, members, trustees, officers, and managers in the ordinary course of business.

### 7.19.  *Corporate Action.*

(a)     On the Effective Date, the New Organizational Documents and any other applicable amended and restated corporate Organizational Documents of each of the Reorganized Debtors and New TopCo, shall be deemed authorized in all respects.  On the Effective Date, all actions contemplated by this Plan (including any transaction described in, or contemplated by, the Restructuring Transactions Memorandum) and the Restructuring Transactions shall be deemed authorized and approved in all respects, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

(b)     Any action under the Plan to be taken by or required of the Debtors, the Reorganized Debtors or New TopCo, including the adoption or amendment of certificates of formation, incorporation and by-laws, the issuance of securities and instruments, or the selection of officers or directors shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors', the Reorganized Debtors' or New TopCo's equity holders, sole members, boards of directors or boards of managers, or similar body, as applicable.

(c)     On or (as applicable) before the Effective Date, the appropriate officers of the Debtors, the Reorganized Debtors or New TopCo, as applicable, shall be authorized and, as applicable, directed to issue, execute, deliver, acknowledge, file, and/or record, as applicable, such securities, documents, contracts, instruments, releases and other agreements and take such other action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Debtors, the Reorganized Debtors and New TopCo, as applicable, without the necessity of any further Bankruptcy Court, corporate, limited liability company, board, or member approval or action.  In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors and New TopCo as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or equity holders of the applicable Reorganized Debtor or New TopCo and each shall serve from and after the Effective Date pursuant to and in accordance with the terms of the applicable New Organizational Documents and other applicable documents until such director, officer, or manager resigns or is removed or terminated in accordance with the applicable New Organizational Documents and other applicable documents.

(d)    The authorizations, approvals and directives contemplated by this Section 7.19 shall be effective notwithstanding any requirements under non-bankruptcy Law.

**7.20.    *Comprehensive Settlement of Claims and Controversies; Termination of Subordination Rights.***

(a)    Pursuant to section 1123 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims, Equity Interests, Causes of Action, or controversies (i) belonging to the Debtors or the Debtors' Estates as set forth in the Plan and (ii) by and among the Debtors, the Creditors' Committee, the Freedom Lender Group, the DIP Lenders, and the Consenting First Lien Lenders.  This Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Equity Interests, Causes of Action, and controversies belonging to the Debtors or the Debtors' Estates pursuant to section 1123 of the Bankruptcy Code and, with respect to the compromise and settlement by and among the Debtors, the Creditors' Committee, the Freedom Lender Group, the DIP Lenders, and the Consenting First Lien Lenders, Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims, Equity Interests, Causes of Action, or controversies and the Bankruptcy Court's finding that all such compromises or settlements are:  (i) in the best interest of the Debtors, the Reorganized Debtors, and their respective Estates and property, and of Holders of Claims or Equity Interests; and (ii) fair, equitable and reasonable.

(b)    Except as provided herein, the classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code or otherwise, and any and all such rights against the Debtors and/or their Estates are terminated pursuant to the Plan.  Pursuant to section 510 of the Bankruptcy Code, the Debtors, or the Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Equity Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

(c)    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the Global Settlement and the full and final settlement and release of any Claims and Causes of Actions identified in the Freedom HoldCo Independent Director Report as actionable against any Released Party; <u>provided</u> that the releases of the individuals identified in the Freedom HoldCo Independent Director Report shall not be construed to limit the Litigation Trust's pursuit of the D&O Liability Insurance Policies with respect to Permitted Litigation Claims.

**7.21.    *Additional Transactions Authorized Under this Plan.***

On or prior to the Effective Date, the Debtors, with the consent of the Required Consenting First Lien Lenders, shall be authorized to take any such actions, as may be necessary or appropriate

to Reinstate Claims or Equity Interests or render Claims or Equity Interests Unimpaired, as provided for under this Plan.

**7.22.    *Insurance Policies.***

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder.  Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

Nothing in this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or the purchaser, solely to the extent assumed and assigned to the purchaser under an asset purchase agreement) or draw on any Collateral or security therefor.  For the avoidance of doubt, insurers and third party administrators shall not need to nor be required to File or serve a Cure Dispute or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims Bar Date or similar deadline governing cure amounts or Claims.

For the avoidance of doubt, all of the Debtors' D&O Liability Insurance Policies shall be governed by <u>Section 7.5</u> and <u>Section 7.18</u> of this Plan and not this <u>Section 7.22</u>.

**ARTICLE VIII.**
**<u>PROVISIONS GOVERNING DISTRIBUTIONS</u>**

**8.1.    *Distributions.***

Except as otherwise provided herein, the Disbursing Agent shall make all distributions under this Plan to the applicable Holders of Allowed Claims in accordance with the terms of this Plan.

**8.2.    *No Postpetition Interest on Claims.***

Except with respect to Allowed DIP Claims and the Prepetition First Lien Loan Claims and unless otherwise specifically provided for in the Confirmation Order or required by applicable bankruptcy Law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

**8.3.    *Date of Distributions.***

Unless otherwise provided in this Plan, on the Effective Date (or, if a Claim or Equity Interest is not an Allowed Claim or Allowed Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest, or as soon

as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Equity Interest shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests (as applicable) in the applicable Class; provided that the manner of distributions to Holders of Allowed Prepetition First Lien Loan Claims, Holders of Allowed OpCo General Unsecured Claims, Holders of Allowed Prepetition Second Lien Loan Claims, Holders of Allowed Freedom HoldCo General Unsecured Claims, and Holders of Allowed Prepetition HoldCo Loan Claims, solely with respect to their ratable share of Litigation Trust Units, shall be in the sole discretion of the Litigation Trustee after reserving for Disputed Claims and expenses of the Litigation Trust as the Litigation Trustee deems necessary and appropriate, subject to the terms of this Plan and the Litigation Trust Agreement.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Equity Interests, distributions on account of any such Disputed Claims or Disputed Equity Interests shall be made pursuant to the provisions set forth in Article IX hereof.

### 8.4. *Distribution Record Date.*

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders listed on the Claims Register as of the close of business on the Distribution Record Date (or the designees of such Holders, as applicable).  Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date.  Additionally, with respect to payment of any Cure Costs or any Cure Disputes in connection with the assumption and/or assignment of the Debtors' Executory Contracts and Unexpired Leases, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a Cure Costs.  For the avoidance of doubt, the Distribution Record Date shall not apply to any securities of the Debtors deposited with DTC, the Holders of which shall receive a distribution in accordance with the customary procedures of DTC.

### 8.5. *Disbursing Agent.*

(a)    Powers of Disbursing Agent.  The Disbursing Agent shall be empowered to:  (i) effectuate all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable distributions under this Plan or payments contemplated hereby in respect of the Reorganized Debtors; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    Expenses Incurred by the Disbursing Agent On or After the Effective Date. Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Reorganized Debtors (solely if the Disbursing Agent is not the Reorganized Debtors), the amount

of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorney and other professional fees and expenses) of the Disbursing Agent shall be paid in Cash and will not be deducted from distributions under this Plan made to Holders of Allowed Claims by the Disbursing Agent.  The foregoing fees and expenses shall be paid in the ordinary course, upon presentation of invoices to the Reorganized Debtors and without the need for approval by the Bankruptcy Court.  In the event that the Disbursing Agent and the Reorganized Debtors are unable to resolve a dispute with respect to the payment of the Disbursing Agent's fees, costs and expenses, the Disbursing Agent may elect to submit any such dispute to the Bankruptcy Court for resolution.

(c)     Bond.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors. Furthermore, any such Entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

(d)     Cooperation with Disbursing Agent.  The Reorganized Debtors shall use all commercially reasonable efforts to provide the Disbursing Agent with the amount of Claims and the identity and addresses of Holders of Claims, in each case, that are entitled to receive distributions under this Plan, as set forth in the Debtors' or the applicable Reorganized Debtors' books and records.  The Reorganized Debtors will cooperate in good faith with the Disbursing Agent to comply with the withholding and reporting requirements outlined in Section 8.16 of this Plan.

### 8.6.    *Delivery of Distribution.*

Subject to the provisions contained in this Article VIII, with respect to distributions required to be made to Holders of Allowed Claims by the Reorganized Debtors or Disbursing Agent under this Plan, the Disbursing Agent will, subject to Bankruptcy Rule 9010, make all distributions under this Plan or payments to any Holder of an Allowed Claim as and when required by this Plan at:  (a) the address of such Holder on the books and records of the Debtors or their agents; or (b) the address in any written notice of address change delivered to the Debtors or the Disbursing Agent, including any addresses included on any Filed Proofs of Claim or transfers of Claim Filed with the Bankruptcy Court.  In the event that any distribution under this Plan to any such Holder is returned as undeliverable, no distribution or payment to such Holder shall be made unless and until the Disbursing Agent has been notified of the then current address of such Holder, at which time or as soon as reasonably practicable thereafter such distribution under this Plan shall be made to such Holder without interest; provided, however, that such distributions under this Plan or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from:  (i) the Effective Date and (ii) the date that such Holder's Claim is first Allowed.  Notwithstanding the foregoing, all distributions to be made on account of (w) the Prepetition ABL Loan Claims shall be delivered to the ABL Credit Agreement Agent for the benefit of itself and the ABL Lenders in accordance with the terms of the ABL Credit Agreement, (x) the Prepetition First Lien Loan Claims shall be delivered to the First Lien Credit Agreement Agent for the benefit of itself and the First Lien Lenders in accordance with the terms

66

of the First Lien Credit Agreement, (y) the Prepetition Second Lien Loan Claims shall be delivered to the Second Lien Credit Agreement Agent for the benefit of itself and the Second Lien Lenders in accordance with the terms of the Second Lien Credit Agreement, and (z) the Prepetition HoldCo Loan Claims shall be delivered to the HoldCo Credit Agreement Agent for the benefit of itself and the HoldCo Lenders in accordance with the terms of the HoldCo Credit Agreement.

### 8.7.    *Unclaimed Property.*

Ninety (90) days from the later of (a) the Effective Date and (b) the date that such Holder's Claim is first Allowed, all unclaimed property, wherever located, or interests in property distributable hereunder on account of such Claim shall revert to the applicable Reorganized Debtor or its successor or assign and automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or estate escheat, abandoned, or unclaimed property Laws to the contrary), and any Claim or right of the Holder of such Claim to such property, wherever located, or interest in property shall be discharged and forever barred. The Reorganized Debtors and the Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records, and the Proofs of Claim Filed against the Debtors, as reflected on the Claims Register maintained by the Claims Agent.  Further, for administrative convenience, any Holder of an Allowed Claim may affirmatively reject the receipt of any distribution, including the distribution of any Reorganized Common Equity, after the Distribution Record Date and prior to the Effective Date.

### 8.8.    *Satisfaction of Claims.*

Unless otherwise specifically provided herein, any distributions under this Plan and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

### 8.9.    *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of the Reorganized Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors or the applicable Reorganized Debtor, as the case may be.

### 8.10.    *De Minimis Cash Distributions.*

None of the Reorganized Debtors or the Disbursing Agent shall have any obligation to make a distribution that is less than $250.00 in Cash.

### 8.11.    *Distributions on Account of Allowed Claims Only.*

Notwithstanding anything herein and in the Restructuring Support Agreement to the contrary, no distribution under this Plan shall be made on account of a Claim until such Claim becomes an Allowed Claim.

### 8.12. *Fractional Shares.*

No fractional interests shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution would otherwise result in the issuance of a number of interests that is not a whole number, the actual distribution of interests shall be rounded as follows: (a) fractions of one-half (1/2) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (1/2) shall be rounded to the next lower whole number with no further payment therefore. The total number of authorized interests to be distributed shall be adjusted as necessary to account for the foregoing rounding. For distribution purposes (including rounding), DTC will be treated as a single Holder, if applicable.

### 8.13. *No Distribution in Excess of Amount of Allowed Claims.*

Notwithstanding anything herein and in the Restructuring Support Agreement to the contrary, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution under this Plan of a value in excess of the Allowed amount of such Claim.

### 8.14. *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)* on the Effective Date.

### 8.15. *Setoffs and Recoupments.*

Except as expressly provided in this Plan and except with respect to the Secured Claims, the Reorganized Debtors may, pursuant to sections 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy Law, setoff and/or recoup against any distributions under this Plan to be made on account of any Allowed Claim, any and all claims, rights and Causes of Action that the applicable Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (a) agreed in amount between the applicable Reorganized Debtor and the Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or any of their respective successors of any and all claims, rights and Causes of Action that such Persons or any of their respective successors may possess against the applicable Holder.

### 8.16. *Withholding and Reporting Requirements.*

In connection with this Plan and all distributions under this Plan hereunder, the Reorganized Debtors, the Litigation Trust, the Disbursing Agent and any Claims Agent shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, provincial, local or foreign taxing authority, and all distributions under this Plan hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors, the Litigation Trust, the Disbursing Agent and any Claims Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting

requirements, including requiring a Holder of a Claim to submit appropriate tax and withholding certifications.  Notwithstanding any other provision of this Plan:  (a) each Holder of an Allowed Claim that is to receive a distribution under this Plan under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations on account of such distribution; and (b) no distributions under this Plan shall be required to be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtors, the Litigation Trust, the Disbursing Agent or the Claims Agent, as applicable, for the payment and satisfaction of such tax obligations or has, to their satisfaction, established an exemption therefrom.

### 8.17.  *Claims Payable by Third Parties.*

To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  If an applicable insurance policy has a self-insured retention ("SIR") or a deductible, the Holder of an Allowed Claim that is payable pursuant to such insurance policy, upon the Allowance of such Claim, shall have an Allowed General Unsecured Claim against the applicable Debtor's Estate up to the amount of the SIR or deductible amount that may be established upon the liquidation of the Claim, and such Holder's recovery from the Debtors or the Reorganized Debtors, as applicable, shall be solely in the form of its distribution on account of such Allowed General Unsecured Claim under the Plan.  Such SIR shall be considered satisfied pursuant to the Plan through allowance of the General Unsecured Claim solely in the amount of the applicable SIR, if any; provided, however, that nothing herein obligates the Debtors, the Reorganized Debtors, the Litigation Trustee, or any of their successors or assigns to satisfy any SIR under any insurance policy, including any D&O Liability Insurance Policies.  Any recovery on account of the Claim in excess of the SIR or the deductible established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof.  For the avoidance of doubt, nothing herein or in the Confirmation Order shall modify or impair any of the Debtors' insurers' rights to be reimbursed or paid in the ordinary course according to the terms of the applicable insurance policy, including, without limitation, with respect to any amounts owed to the Debtors' insurers under an applicable SIR.  Nothing in this Plan shall be construed to limit, extinguish, expand, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy.  Nothing herein relieves any Entity from the requirement to timely File a Proof of Claim by the applicable Bar Date.

### ARTICLE IX.
### PROCEDURES FOR RESOLVING CLAIMS

### 9.1.  *Disputed Claims Process.*

Except as otherwise provided herein, the Debtors and the Reorganized Debtors shall have the authority to (a) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a Claim subject to any Proof of Claim that is Filed is Allowed and (b) File,

settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan, including, for the avoidance of doubt, as permitted under <u>Section 9.4</u>. **Except as otherwise provided herein, all Proofs of Claim that are not timely Filed by the applicable Bar Date or that have not otherwise been Allowed pursuant to this Plan or a Final Order shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or any Reorganized Debtor, as applicable, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.**

### 9.2. *Allowance of Claims.*

On and after the Effective Date and subject to the terms of this Plan, each of the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim (other than Permitted Litigation Claims, Prepetition First Lien Loan Claims, Prepetition Second Lien Loan Claims, OpCo General Unsecured Claims, Freedom HoldCo General Unsecured Claims, and Prepetition HoldCo Loan Claims) or Equity Interest immediately prior to the Effective Date. The Reorganized Debtors may affirmatively determine to deem Unimpaired any Allowed Claims to the same extent such Claims would be allowed under applicable non-bankruptcy Law. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Allowed Equity Interest unless and until such Claim or Equity Interest (a) is deemed Allowed under this Plan or pursuant to the Bankruptcy Code or (b) the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases Allowing such Claim or Equity Interest.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, or that has not otherwise been Allowed pursuant to this Plan or a Final Order, is not Allowed, which shall be reflected in the Claims Register, without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

### 9.3. *Claims Administration Responsibilities.*

Except as otherwise specifically provided in this Plan (including without limitation <u>Section 9.4</u>), after the Effective Date, the Reorganized Debtors or the Litigation Trustee, as applicable, shall have the authority: (a) to File, withdraw, or litigate to judgment, objections to Claims or Equity Interests; (b) to settle or compromise any Disputed Claim or Disputed Equity Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Disputed Equity Interest, including the Causes of Action retained pursuant to this Plan.

**9.4.**     *Objections to Claims.*

Other than with respect to Professional Fee Claims, only the Reorganized Debtors or New TopCo shall be entitled to object to Claims (other than Prepetition First Lien Loan Claims, Prepetition Second Lien Loan Claims, OpCo General Unsecured Claims, Freedom HoldCo General Unsecured Claims, and Prepetition HoldCo Loan Claims) on and after the Effective Date, except that nothing herein shall be understood to waive the Reorganized Debtors' or New TopCo's right to argue that a Claim Filed against the Debtors or the Reorganized Debtors has been discharged under the Plan.  Only the Litigation Trust shall be entitled to object to OpCo General Unsecured Claims and Freedom HoldCo General Unsecured Claims on and after the Effective Date.  Any objections to Claims (other than Administrative Expense Claims) shall be served and Filed on or before the Claims Objection Deadline, as such deadline may be extended from time to time.  From and after the Effective Date, either (a) the Reorganized Debtors, in consultation with the Required Consenting First Lien Lenders or (b) the Litigation Trust, as applicable, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

**9.5.**     *Adjustment to Claims or Equity Interests without Objection.*

Any duplicate Claim or Equity Interest or any Claim or Equity Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged (including pursuant to the Plan) on the Claims Register by the Reorganized Debtors or the Disbursing Agent without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Equity Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

**9.6.**     *No Distributions Pending Allowance.*

If an objection to a Claim is Filed as set forth in Section 9.4 of this Plan, except as otherwise agreed by the Reorganized Debtors, in consultation with the Required Consenting First Lien Lenders, if any portion of a Claim (other than a Professional Fee Claim) is a Disputed Claim, no payment or distribution (partial or otherwise) provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**9.7.**     *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Equity Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Equity Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Equity Interest.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1.** *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

In the event the Partial Sale Transaction is consummated prior to the Effective Date, to the extent assumption has not already occurred, the Assumed Contracts to be assumed and assigned in connection with such Partial Sale Transaction will be assumed (unless previously assumed pursuant to a separate order of the Bankruptcy Court) and assigned to the Buyer pursuant to the Sale Order in accordance with the applicable Sale Documents.  In the event the Partial Sale Transaction is not consummated prior to the Effective Date, the Debtors shall assume the Executory Contracts and Unexpired Leases of the Vitamin Shoppe Debtors included on Schedule 1 of the Sale Order except to the extent any such Executory Contracts or Unexpired Leases (a) are listed on the Rejected Contracts/Leases List or (b) were previously assumed pursuant to a separate order of the Bankruptcy Court.

Except as otherwise provided herein, any Executory Contracts and Unexpired Leases (a) not previously assumed, (b) not previously assumed and assigned in accordance with the Sale Order or other order approving such assumption and assignment, (c) not previously rejected pursuant to an order of the Bankruptcy Court, and (d) identified on the Assumed Contracts List will be assumed effective as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and the Confirmation Order, except any Executory Contract or Unexpired Lease (i) identified on the Rejected Contracts/Lease List, (ii) that is the subject of (A) a separate motion or notice to reject, assume, or assume and assign or a Cure Dispute that is pending as of the Confirmation Date or (B) an order of the Bankruptcy Court that is not yet a Final Order, (iii) that previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code), (iv) of the American Freight Debtors that is not otherwise assumed or included on the Assumed Contracts List, (v) that, in the event the Partial Sale Transaction is consummated prior to the Effective Date, relates to the Vitamin Shoppe Debtors and is not otherwise assumed pursuant to the Sale Order or included on the Assumed Contracts List, (vi) that, in the event the Partial Sale Transaction is not consummated prior to the Effective Date, relates to the Vitamin Shoppe Debtors, is not listed on Schedule 1 of the Sale Order, or (vii) of Franchise Group, Inc. that is not otherwise assumed or included on the Assumed Contracts List.  For the avoidance of doubt, except as otherwise set forth herein or as included on the Assumed Contracts List, all Executory Contracts and Unexpired Leases of the American Freight Debtors, Franchise Group, Inc., and, in the event the Partial Sale Transaction is consummated prior to the Effective Date, the Vitamin Shoppe Debtors shall be rejected as of the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Debtors' Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective on the occurrence of the Effective Date or, as to rejected Executory Contracts and Unexpired Leases, on such other date as may be identified on the Rejected Contracts/Lease List or other motion or notice to reject by agreement of the affected counterparty to such Executory Contract or Unexpired Lease.

Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party (including the Buyer pursuant to the Partial Sale Transaction) on or prior to the Effective Date, shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by agreement of the parties or, other than with respect to non-residential Unexpired Leases, by an order of the Bankruptcy Court.  To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, increases, accelerates or otherwise alters any obligations, rights or liabilities of the Debtors or the Reorganized Debtors thereunder as a result of, gives rise to any rights or benefits to any non-Debtor party to any such Executory Contract or Unexpired Lease, or creates any Lien on any asset or property of the Debtors or the Reorganized Debtors as a result of, the assumption of such Executory Contract or Unexpired Lease or the execution or consummation of the Plan or any other Restructuring Transaction (including any change of control, sale of business, assignment, vesting, termination, acceleration, or similar provisions therein), then such provision shall be deemed unenforceable and modified (solely for purposes of the transactions contemplated under this Plan) such that the transactions contemplated by the Plan or any other Restructuring Transaction shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease, to exercise any other default-related rights with respect thereto, to increase, accelerate or otherwise alter the obligations, rights or liabilities of the Debtors or the Reorganized Debtors thereunder, to be entitled to any rights or benefits thereunder, or create or impose a Lien on any asset or property of the Debtors or the Reorganized Debtors.  For the avoidance of doubt, Confirmation of the Plan shall not be deemed an assignment of any Executory Contract or Unexpired Lease of the Debtors, notwithstanding any change in name, organizational form, or jurisdiction of organization of any Debtor in connection with the occurrence of the Effective Date.

Notwithstanding anything to the contrary herein (other than Section 10.8 of this Plan) and in the Restructuring Support Agreement, except as otherwise agreed to by the Debtors and any applicable counterparty to an Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, subject to the Definitive Document Consent Rights, reserve the right to amend or supplement the Rejected Contracts/Lease List in their discretion, prior to the later of (a) Effective Date and (b) seven (7) days after the date on which the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List (or, in either case, such later date as may be agreed with a counterparty); provided that the Debtors shall give prompt notice of any such amendment or supplement to any affected counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.

### 10.2. *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Notwithstanding anything to the contrary herein and in the Restructuring Support Agreement, in the event the Partial Sale Transaction is consummated prior to the Effective Date, the terms of any Sale Documents and the Sale Order shall govern the cure of defaults, assumption and assignment, and compliance with section 365 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases assumed and assigned pursuant to such Sale Documents and Sale Order.

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure Costs that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors on the Assumed Contracts List to a counterparty must be Filed, served, and actually received by the Debtors on or before fourteen (14) days after such notice (together with any outstanding objections to the amount proposed on the Assumed Contracts List, a "Cure Dispute"). Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor, Reorganized Debtor, or Buyer, without the need for any objection by the Debtors or the Reorganized Debtors or any other party in interest, or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure Costs shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the applicable Cure Costs; provided, however, that nothing herein shall prevent (if applicable) the Reorganized Debtors or the Buyer from paying any Cure Costs despite the failure of the relevant counterparty to File such request for payment of such Cure Costs. The Reorganized Debtors also may settle any Cure Costs without any further notice to or action, order, or approval of the Bankruptcy Court. In the event that a non-Debtor contract counterparty Files a timely Cure Dispute and the Debtors and such counterparty cannot resolve such Cure Dispute, the Cure Dispute shall be heard on at least seven (7) days' notice to the applicable non-Debtor contract counterparty, or such date as the parties agree, subject to the Bankruptcy Court's calendar. Any objection by a contract or lease counterparty to (a) the ability of the applicable Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assumed and assigned, or (b) any other matter pertaining to the proposed assumption or proposed assumption and assignment must be Filed, served, and actually received by the Debtors by the date on which objections to Confirmation of the Plan are due. The Reorganized Debtors may settle any Cure Dispute without any further notice to or action, order, or approval of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or proposed assumption and assignment of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption or assumption and assignment, as applicable.

Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such Executory Contract or Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan, the Debtors shall pay any Cure Costs, if monetary, in full in Cash either (a) on the Effective Date or as soon as reasonably practicable thereafter, or (b) in the event of a Cure Dispute, and following resolution of such Cure Dispute (either consensually or through judicial decision), upon the later of (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) seven (7) days after the date on which such Cure Dispute has been resolved. The Debtors and the Reorganized Debtors, as applicable, reserve the right at any time (including, with respect to the Reorganized Debtors, after the Effective Date) to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute. If the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List, the Debtors or the Reorganized Debtors, as applicable, shall have the right to reject such Executory Contract or Unexpired Lease by amending the Rejected Contracts/Lease List to include such Executory Contract or Unexpired Lease and providing prompt notice of any such amendment to any applicable counterparty, in which case such Executory Contract or Unexpired Lease will be

deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan and payment or performance of the applicable Cure Costs shall result in the full release and satisfaction of any Claims and defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, under any assumed Executory Contract or Unexpired Lease arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure Cost has been fully paid pursuant to this <u>Section 10.2</u>, shall be deemed Disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that nothing herein shall affect the allowance of any Claims or any Cure Costs agreed to by the Debtors in any written agreement amending or modifying any Executory Contract or Unexpired Lease prior to the assumption of such Executory Contract or Unexpired Lease pursuant to this Plan or otherwise.**

To the extent applicable, rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases and the Debtors are entitled to all the rights provided under section 365 of the Bankruptcy Code.

### 10.3. *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases under this Plan must be Filed with the Claims Agent within thirty (30) days after the date of the effectiveness of the rejection of the applicable Executory Contract or Unexpired Lease. **Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely Filed shall be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their respective property without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged notwithstanding anything in a Proof of Claim to the contrary, unless otherwise ordered by the Bankruptcy Court.** All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with <u>Article V</u> of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

### 10.4.    *Contracts and Leases Entered into After the Petition Date.*

The Debtors or Reorganized Debtors, and, to the extent assigned to the Buyer pursuant to the Partial Sale Transaction, the Buyer, as applicable, will perform under any contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by any Debtor, and will be liable thereunder in the ordinary course of business.

### 10.5.    *Modifications, Amendments, Supplements, or Other Agreements*.

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 10.6.    *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### 10.7.    *Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease in the Rejected Contracts/Lease List or Assumed Contracts List, as applicable, nor anything contained in the Plan or Sale Documents, nor the Debtors' delivery of a notice of the proposed assumption and proposed Cure Cost to any contract and lease counterparties set forth in the Assumed Contracts List shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease. If there is a dispute regarding a Debtor's or Reorganized Debtor's liability under an assumed Executory Contract or Unexpired Lease, the Reorganized Debtors shall be authorized to move to have such dispute heard by the Bankruptcy Court pursuant to <u>Article XIII</u>. If the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List, the Debtors shall have the right to reject such Executory Contract or Unexpired Lease, in which case such

Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

**10.8.** ***Employee Compensation and Benefits.***

Subject to the provisions of the Plan, the Sale Order, or any applicable Sale Documents, all compensation and benefits agreements, plans, programs, and arrangements shall be treated as Executory Contracts.

At the direction of the Required Consenting First Lien Lenders, all compensation and benefits agreements, plans, programs, and arrangements shall be rejected, assumed or assumed and assigned on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. For the avoidance of doubt, all equity or equity-based (including phantom equity) compensation or benefits agreements, plans, programs, and arrangements (including each provision in any Executory Contract that provides for any such compensation or benefits) shall be treated as Existing TopCo Equity Interests under the Plan and shall be deemed rejected.

The Debtors or the Reorganized Debtors, as applicable, will assume, assume and assign, or reject the existing benefits and compensation agreements, plans, programs, and arrangements with the current members of the senior management team of the Debtors, or will enter into new benefits and compensation arrangements with the current members of the senior management team of the Debtors who agree to such new arrangements, in either case on the Effective Date, which assumption, assumption and assignment, rejection or new arrangements shall be at the direction of the Required Consenting First Lien Lenders.

Confirmation of the Plan, the consummation of any of the Restructuring Transactions, or any assumption or assumption and assignment of compensation and benefits agreements, plans, programs, or arrangements pursuant to the terms herein shall not be deemed to trigger any applicable change of control, sale of business, assignment, vesting, termination, acceleration or similar provisions in any compensation and benefits agreements, plans, programs, or arrangements. No counterparty shall have rights under any compensation or benefits agreement, plan, program, or arrangement assumed or assumed and assigned pursuant to the Plan other than those applicable immediately prior to such assumption or assumption and assignment.

The New Board shall adopt and implement one or more Management Incentive Plans, in each case structured to incentivize operating performance and align economic interests on terms and conditions acceptable to the New Board and the Required Consenting First Lien Lenders. The form of the awards under each Management Incentive Plan, if applicable (*i.e.*, options, restricted stock or units, appreciation rights, phantom units, Cash bonuses, etc.), the participants in such Management Incentive Plan, the allocations of the awards to such participants (including the amount of allocations and the timing of the grant of the awards), and the terms and conditions of the awards (including vesting, exercise prices, base values, hurdles, forfeiture, repurchase rights and transferability) shall be determined by the New Board in its sole discretion. All existing long-term incentive plans of Franchise Group's direct or indirect subsidiaries shall be deemed rejected.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

**11.1.** *Conditions Precedent to Confirmation.*

Confirmation of this Plan is subject to the satisfaction or waiver of the following conditions:

(a)    the DIP Orders shall be in full force and effect;

(b)    the Debtors shall have paid in full in Cash (or the Debtors shall pay in full in Cash substantially contemporaneously with consummation of the Restructuring Transactions) all Restructuring Expenses incurred or estimated to be incurred, through the proposed Confirmation Date in accordance with the DIP Orders;

(c)    the Plan Supplement and all of the schedules, documents, and exhibits contained therein (including an updated Litigation Trust Agreement consistent with the terms of this Plan and the Global Settlement) shall have been Filed in a manner consistent in all material respects with the Plan;

(d)    entry of the Confirmation Order; and

(e)    the Restructuring Support Agreement, the DIP Facility, and the DIP Orders, shall not have been terminated in accordance with its respective terms, and there shall not have occurred and be continuing any event, act, or omission that, but for the expiration of time, would permit the Required Consenting First Lien Lenders to terminate the Restructuring Support Agreement, the DIP Orders (including, for the avoidance of doubt, the occurrence of any "Event of Default" under the DIP Facility), or the DIP Facility in accordance with its respective terms upon the expiration of such time.

**11.2.** *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to the satisfaction or waiver of the following conditions:

(a)    the Disclosure Statement Order, the Disclosure Statement Supplement Order, and the Confirmation Order having become Final Orders in the Chapter 11 Cases, which shall not have been stayed, reversed, vacated, amended, supplemented or otherwise modified, unless otherwise agreed by the Debtors and the Global Settlement Parties;

(b)    the DIP Orders having become Final Orders in the Chapter 11 Cases, which shall not have been stayed, reversed, vacated, amended, supplemented, or otherwise modified, unless otherwise agreed by the Debtors and the Required Consenting First Lien Lenders;

(c)    no court of competent jurisdiction or other competent governmental or regulatory authority having issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan;

(d)       each of the applicable Plan Documents having been executed, delivered, acknowledged, and/or Filed, as applicable, by the Entities and Persons intended to be parties thereto and effectuated and remain in full force and effect, and any conditions precedent related thereto or contained therein having been satisfied before or contemporaneously with the occurrence of the Effective Date or otherwise waived in accordance with such applicable Plan Documents;

(e)       any non-technical and/or immaterial amendments, modifications or supplements to the Plan having been acceptable to the Debtors and the Required Consenting First Lien Lenders, in consultation with the other Global Settlement Parties, except as otherwise provided in Section 14.3 of this Plan;

(f)       each of the offers, issuances, sales, and/or deliveries of Reorganized Common Equity in connection with the Restructuring Transactions shall be exempt from the registration and prospectus delivery requirements of the Securities Act, no proceeding by any Governmental Unit or other Entity or Person that alleges that any such offer, issuance, sale and/or delivery is not exempt from the registration and prospectus delivery requirements of the Securities Act shall be pending on the Effective Date, and no such proceeding shall be threatened in writing or instituted by any Governmental Unit on or prior to the Effective Date;

(g)       the Restructuring Support Agreement, the DIP Facility, and the DIP Orders, having not been terminated in accordance with its respective terms, and there having not occurred and been continuing any event, act, or omission that, but for the expiration of time, would permit the Required Consenting First Lien Lenders to terminate the Restructuring Support Agreement, the DIP Orders (including, for the avoidance of doubt, the occurrence of any "Event of Default" under the DIP Facility), or the DIP Facility in accordance with its respective terms upon the expiration of such time;

(h)       all of the actions set forth in the Restructuring Transactions Memorandum, as applicable, having been completed and implemented;

(i)       there not having been instituted or threatened to be instituted any action, proceeding, application, claim, counterclaim, or investigation (whether formal or informal) by any Governmental Unit (x) making illegal, enjoining, or otherwise prohibiting the consummation of the Restructuring Transaction contemplated herein, in the Restructuring Support Agreement, and in the Plan Documents or (y) imposing a material award, claim, injunction, fine or penalty that, in each case, both (1) is not dischargeable, as determined by the Bankruptcy Court in the Confirmation Order, and (2) has a material adverse effect on the financial condition or operations of the Reorganized Debtors, taken as whole;

(j)       the Debtors having obtained all authorizations, consents and regulatory approvals, if any, required to be obtained, and having filed all notices and reports, if any, required to be filed, including with any Governmental Unit, by the Debtors in connection with this Plan's effectiveness, in each case, as may be required by a Governmental Unit;

(k)       the Reorganized Common Equity to be issued and/or delivered on the Effective Date having been validly issued by New TopCo, having been fully paid and non-assessable, and being free and clear of all taxes, Liens and other encumbrances, pre-emptive rights,

rights of first refusal, subscription rights and similar rights, except for any restrictions on transfer as may be imposed by (i) applicable securities Laws and (ii) the New Organizational Documents of New TopCo;

(l)     all conditions precedent to the effectiveness of the Litigation Trust Agreement having been satisfied or duly waived by the party whose consent is required thereunder, and the Litigation Trust Agreement shall be in full force and effect;

(m)     the Litigation Trust Escrow Amount shall have been paid to the Litigation Trust;

(n)     all conditions precedent to the effectiveness of the Take-Back Debt Credit Agreement having been satisfied or duly waived by the party whose consent is required thereunder, and the Take-Back Debt Credit Agreement shall be in full force and effect;

(o)     all conditions precedent to the effectiveness of the New ABL Facility having been satisfied or duly waived by the party whose consent is required thereunder, and the New ABL Facility shall be in full force and effect;

(p)     all requisite filings with any Governmental Unit and third parties having become effective, and all such Governmental Unit and third parties having approved or consented to the Restructuring Transactions, to the extent required;

(q)     any and all requisite regulatory approvals, KYC requirements, and any other authorizations, consents, rulings, or documents required to implement and effectuate the Restructuring Transactions having been obtained;

(r)     all accrued and unpaid Restructuring Expenses having been paid in full in Cash by the Debtors, consistent with the terms of this Plan; and

(s)     the following documents being in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions, and not having been, as applicable, stayed, modified, reversed, vacated, subject to any pending appeal, and/or terminated prior to the Effective Date: (i) the New Organizational Documents; (ii) the Sale Order; (iii) the Exit ABL Facility; (iv) the Take-Back Debt Credit Agreement; (v) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring Transactions; and (vi) all other documents necessary to consummate a transaction of the type contemplated by this Plan to the extent not otherwise listed above.

For the avoidance of doubt, the conditions precedent to the Effective Date enumerated above shall apply to each Debtor on an individual basis (and may be satisfied and/or waived on an individual basis), and the Effective Date for any individual Debtor may occur prior to the Effective Date of any other individual Debtor.

### 11.3.    *Satisfaction and Waiver of Conditions Precedent.*

Except as otherwise provided herein, any actions taken on the Effective Date shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred

prior to the taking of any other such action.  Any of the conditions set forth in <u>Section 11.1</u> and <u>Section 11.2</u> of this Plan may be waived in whole or part upon agreement by the Global Settlement Parties, and as the case may be, without notice, leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  The failure to assert the non-satisfaction of any such conditions shall not be deemed a waiver of any other rights hereunder, and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

### 11.4.    *Effect of Failure of Conditions.*

If all of the conditions to effectiveness have not been satisfied (as provided in <u>Section 11.1</u> and <u>Section 11.2</u> hereof) or duly waived (as provided in <u>Section 11.3</u> hereof) and the Effective Date has not occurred on or before the first Business Day that is more than thirty (30) days after the Confirmation Date, or by such later date as set forth by the Debtors in a notice Filed with the Bankruptcy Court prior to the expiration of such period, then the Debtors, with the consent of the Required Consenting First Lien Lenders, may File a motion to vacate the Confirmation Order. Notwithstanding the Filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to consummation set forth in <u>Section 11.1</u> and <u>Section 11.2</u> hereof are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant to this <u>Section 11.4</u>, this Plan shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no distributions under this Plan shall be made, the Debtors and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims or Equity Interests, or any other Entity; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor or any other Person with respect to any matter set forth in the Plan.

### 11.5.    *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan.

### 11.6.    *Substantial Consummation.*

Substantial consummation of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

# ARTICLE XII.
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

**12.1.** ***Discharge of Claims and Termination of Certain Equity Interests; Compromise and Settlement of Claims, Certain Equity Interests, and Controversies.***

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Equity Interests and Claims (other than any Existing Intercompany Equity Interests that are Reinstated hereunder) of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtors, the Reorganized Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Proof of Equity Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim is Allowed; or (3) the Holder of such Claim or Equity Interest has accepted the Plan. Except as otherwise provided herein (and unless a Court of competent jurisdiction otherwise determines that a default is incurable), any default by the Debtors with respect to any Claim that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests (other than any Existing Intercompany Equity Interests that are Reinstated hereunder) subject to the Effective Date occurring, except as otherwise expressly provided in the Plan. For the avoidance of doubt, (a) nothing in this Section 12.1 shall affect the rights of Holders of Claims to seek to enforce the Plan, including the distributions to which Holders of Allowed Claims are entitled under the Plan, and (b) notwithstanding any other Plan provision or provision in the Restructuring Support Agreement to the contrary, in the event the Partial Sale Transaction is consummated prior to the Effective Date, the Partial Sale Transaction Debtors shall not receive a discharge, pursuant to section 1141(d)(3) of the Bankruptcy Code.

In consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Allowed Equity Interest, or any distribution to be made on account of such Allowed Claim or Allowed Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the

Reorganized Debtors may compromise and settle any Claims against the Debtors and their Estates, as well as claims and Causes of Action against other Entities.

### 12.2. *Releases by the Debtors.*

Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtor Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release, to the maximum extent permitted by Law, to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Debtor Releasing Parties) and their respective assets and properties (the "<u>Debtor Release</u>") from any and all claims, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in Law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common Laws, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the Take-Private Transaction; (viii) the Global Settlement; and/or (ix) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan, in each case, that such Debtor Releasing Party would have been legally entitled to assert (whether individually, collectively, or on behalf of any Holder of a Claim or Equity Interest) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; <u>provided</u>, <u>however</u>, that the foregoing provisions of this Debtor Release shall not (i) operate to waive or release any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party; (ii) be construed to limit the Litigation Trust's ability to pursue the D&O Liability Insurance Policies with respect to the Permitted Litigation Claims; and/or (iii) operate to waive or release the rights of such Debtor Releasing Party or the Reorganized Debtors to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered

under or in connection with this Plan or the Partial Sale Transaction or assumed pursuant to this Plan or the Partial Sale Transaction or assumed pursuant to Final Order of the Bankruptcy Court. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this **Section 12.2** shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein; or (2) the Reorganized Debtors' Retained Causes of Action. Notwithstanding anything to the contrary herein, the Claims and Causes of Action identified in the Freedom HoldCo Independent Director Report as actionable against any Released Party shall be released and settled in full and no such Claims or Causes of Action shall be retained by the Reorganized Debtors or transferred to the Litigation Trust. For the avoidance of doubt, the releases set forth herein do not release the Permitted Litigation Claims.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

12.3.    *Third-Party Release.*

Notwithstanding anything contained in the Plan or the Restructuring Support Agreement to the contrary, pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, effective as of the Effective Date, to the fullest extent permitted by applicable Law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party, on behalf of itself and any other Persons

that might seek to claim under or through such Non-Debtor Releasing Party, including any Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, Representatives, consultants, and agents, will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full release to each of the Released Parties (and each such Released Party so released shall be deemed forever released by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third-Party Release") from any and all Claims, Equity Interests, Causes of Action (including Avoidance Actions), and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in Law, at equity or otherwise, whether for tort, contract, violations of federal or state statutory or common Laws, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of the Debtors, including, without limitation, (i) the Debtors' in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions among the Debtors, the Chapter 11 Cases, the Disclosure Statement, this Plan, the Restructuring Support Agreement, the Definitive Documents, or the Sale Process; (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan; (iii) the business or contractual arrangements between any Debtor and any Released Parties; (iv) the negotiation, formulation or preparation of the Restructuring Support Agreement, this Plan, the Disclosure Statement, the Plan Supplement, the Definitive Documents, any Sale Documents, the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, or any agreements, instruments or other documents related to any of the foregoing; (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases; (vi) the purchase, sale, or rescission of the purchase or sale of any Equity Interest of the Debtors or the Reorganized Debtors; (vii) the Take-Private Transaction; (viii) the Global Settlement; and/or (ix) the Confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third-Party Release shall not (i) operate to waive or release any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party; (ii) be construed to limit the Litigation Trust's ability to pursue the D&O Liability Insurance Policies with respect to the Permitted Litigation Claims; (iii) waive or release the rights of such Non-Debtor Releasing Party to enforce this Plan, any Sale Documents and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or the Partial Sale Transaction or assumed pursuant to this Plan or the Partial Sale Transaction or Final Order of the Bankruptcy Court; and/or (iv) waive or release any rights of (A) the Second Lien Lenders with respect to the Second Lien Credit Agreement Agent and vice versa and (B) the HoldCo Lenders with respect to the HoldCo Credit Agreement Agent and vice versa, in each case with respect to any rights or obligation to compensation, indemnification, expense reimbursement, or contribution, or any other claim

or entitlement, in each case that they may have under such agreements that survive termination of such agreements against any entity that is not a Debtor or a Reorganized Debtor, and otherwise in accordance with the terms of this Plan, which rights are excluded from the Third-Party Release and shall be preserved in all respects.  The foregoing release shall be effective as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent, authorization or approval of any Person, and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this Third-Party Release.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (1) any obligations arising on or after the Effective Date of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan as set forth herein;  or (2) the Reorganized Debtors' Retained Causes of Action. Notwithstanding anything to the contrary herein, the Claims and Causes of Action identified in the Freedom HoldCo Independent Director Report as actionable against any Released Party shall be released by the Non-Debtor Releasing Parties and settled in full, and no such Claims or Causes of Action shall be retained by the Non-Debtor Releasing Parties, the Reorganized Debtors, or transferred to the Litigation Trust.

Each Releasing Party shall retain all of its rights and remedies with respect to any non-Debtor that is not a Released Party pursuant to this Section 12.3 notwithstanding the discharge of its Allowed Claims and/or Equity Interests hereunder or its acceptance or receipt of the distributions set forth herein.

### 12.4. *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable Law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to: the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making distributions under this Plan, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including but not limited to the Restructuring Support Agreement; the formulation, preparation, dissemination, negotiation, entry into, or Filing of, as applicable the DIP Documents (including with respect to the DIP Loans), the Take-Back Debt Facility, the New ABL Facility, or any agreements, instruments or other documents related to any of the foregoing; or any other postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure

Statement or Confirmation or consummation of this Plan; <u>provided</u>, <u>however</u>, that the foregoing provisions of this Exculpation shall not: (i) operate to waive or release any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party; and/or (ii) operate to waive or release the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel, to the extent otherwise permitted under applicable non-bankruptcy Law, concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions. The foregoing Exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent, authorization or approval of any Person. Notwithstanding the foregoing, nothing in this <u>Section 12.4</u> shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the Exculpations set forth above do not exculpate Brian Kahn, Prophecy Asset Management LP, Bryant Riley, B. Riley Financial, Inc., B. Riley Receivables II, LLC, WFG, or any of their Affiliates or Related Parties (other than any officers, directors, or employees of the Debtors that acted as an Estate fiduciary after the Petition Date).

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

### 12.5. *Discharge of Claims and Termination of Equity Interests.*

Except as otherwise provided for herein, effective as of the Effective Date, with respect to the Non-Liquidating Debtors: (a) the rights afforded in the Plan and the treatment of all Claims and Equity Interests (other than any Existing Intercompany Equity Interests that are Reinstated hereunder) shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property or Estates; (b) the Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests (other than any Existing Intercompany Equity Interests that are Reinstated hereunder) shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of

the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.   In accordance with section 1141(d)(3) of the Bankruptcy Code, this Plan does not discharge the American Freight Debtors.

### 12.6. *Injunction.*

Except as otherwise provided herein or for obligations issued pursuant hereto, all Persons or Entities that have held, hold, or may hold Claims or Equity Interests that have been released, discharged, or are subject to Exculpation pursuant to <u>Section 12.4</u>, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties or the property or Estates of the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Equity Interests unless such setoff was formally asserted in a timely Filed Proof of Claim or such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated or settled pursuant to the Plan.

### 12.7. *Setoffs and Recoupment.*

Except as otherwise provided herein or in the Plan Supplement, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy Law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that the applicable Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); <u>provided</u> that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor, of any such claims, rights, and Causes of Action.  In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Causes of Action of the Debtors or the

Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or Proof of Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

Notwithstanding anything to the contrary herein, nothing in this Plan or the Confirmation Order shall modify the rights of the Debtors, the Reorganized Debtors, or any current or former counterparty to an Unexpired Lease or Executory Contract with the Debtors, as applicable, to assert any right of setoff or recoupment, if any, that such party may have under applicable bankruptcy Law or non-bankruptcy Law, including, but not limited to, the ability to (a) setoff or recoup a security deposit, if any, held pursuant to the terms of an Unexpired Lease or Executory Contract, as applicable, (b) assert rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (c) assert rights of setoff or recoupment, if any, as a defense to any Claim or Causes of Action held by or against the Litigation Trustee, the Debtors or the Reorganized Debtors, or any of its or their successors, as applicable.

### 12.8.  *Release of Liens.*

Except as otherwise provided in the Confirmation Order, herein or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.  Any Holder of a Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any Collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and Filing or recording of such releases.  The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors or any administrative agent, collateral agent or indenture trustee under any Take-Back Debt Facility (at the expense of the Debtors or Reorganized Debtors, as applicable) that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of Uniform Commercial Code termination statements, deposit account control agreement terminations, and any other applicable filings or recordings, and the Reorganized Debtors shall be entitled to file

Uniform Commercial Code terminations or to make any other such filings or recordings on such Holder's behalf.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     To hear and determine any matters related to (a) applications for the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which a Debtor is party or with respect to which a Debtor may be liable and any Claims and Cure Disputes resulting therefrom; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article X hereof, the Assumed Contracts List or the Rejected Contracts/Leases List; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending or commenced on the Effective Date;

(c)     To hear and resolve any disputes arising from or relating to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)     To ensure that distributions under this Plan to Holders of Allowed Claims are accomplished as provided herein, including resolving any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions;

(e)     To adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated herein;

(f)     To consider Claims or the allowance, disallowance, classification, priority, compromise, estimation, secured or unsecured status, or payment of any Claim, including any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(g)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(h)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i)      To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, the Disclosure Statement Supplement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j)      To hear and determine all Professional Fee Claims;

(k)      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any Sale Documents, or any agreement, instrument, or other document governing or relating to any of the foregoing; provided that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement shall be governed in accordance with the provisions of such documents;

(l)      To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or Confirmation Order or to maintain the integrity of this Plan following consummation;

(m)      To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)      To hear and determine all disputes relating to or arising out of the administration of the Litigation Trust;

(o)      To hear and determine all disputes involving the existence, nature, scope, or enforcement of the discharge, exculpations, releases, and injunction provisions contained in the Plan;

(p)      To enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(q)      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(r)      To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(s)      To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement Hearing, the Confirmation Hearing, the Administrative Bar Date, or the deadline for responding or objecting to a Cure Cost, for the purpose of determining whether a Claim or Equity Interest is discharged hereunder, or for any other purpose;

(t)     To enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed reversed, revoked, or vacated;

(u)     To adjudicate any and all disputes arising from or relating to distributions under or pursuant to this Plan;

(v)     To recover all assets of the Debtors and property of the Estates, wherever located; and

(w)     To enter a final decree closing each of the Chapter 11 Cases.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Article XIII shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### 14.1.    *Dissolution of Creditors' Committee.*

The Creditors' Committee shall be automatically dissolved on the Effective Date and all members, employees or agents thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases under the Bankruptcy Code, except for purposes of Filing applications for Professional Person compensation in accordance with this Plan.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

### 14.2.    *Termination of Professional Persons.*

On the Effective Date, the engagement of each Professional Person retained by the Debtors and the Creditors' Committee shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute their respective Professional Fee Claims and represent their respective constituents with respect to applications for allowance and payment of such Professional Fee Claims, and the Reorganized Debtors shall be responsible for the reasonable and documented fees, costs and expenses associated with the prosecution of such Professional Fee Claims.  Nothing herein shall preclude any Reorganized Debtor from engaging a former Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

### 14.3.    *Modifications and Amendments.*

Subject to the terms and conditions of the Restructuring Support Agreement and this Plan, this Plan may be amended, modified, or supplemented by the Debtors, with the consent of the Required Consenting First Lien Lenders and reasonable consent of the Freedom Lender Group, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by Law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as

otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not adversely affect the treatment of Holders of Allowed Claims and Allowed Equity Interests pursuant to this Plan, the Debtors may make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.  With the consent of the Required Consenting First Lien Lenders and in consultation with the Freedom Lender Group, the Debtors may make technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that, such technical adjustments and modifications are immaterial or do not adversely affect the treatment of Holders of Claims or Equity Interests under the Plan.  Subject to the restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to alter, amend, or modify the Plan, with the consent of the Required Consenting First Lien Lenders and the reasonable consent of the Freedom Lender Group, with respect to such Debtor one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or to remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, the Disclosure Statement Supplement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

### 14.4.   *Revocation or Withdrawal of this Plan.*

Subject to the terms and conditions of the Restructuring Support Agreement and the Global Settlement, each of the Debtors expressly reserve its respective rights to revoke or withdraw the Plan as to any particular Debtor, one or more times, prior to the Effective Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, in accordance with the preceding sentence, prior to the Effective Date as to any or all of the Debtors, or if Confirmation or consummation as to any or all of the Debtors does not occur, then, with respect to such Debtors: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Person; and (d) all procedural and substantive rights of any of the Debtors or any other Person (including each of the Global Settlement Parties) shall be preserved, including with respect to (i) all litigation rights (including the Global Settlement Conditions), (ii) any plan-related issues (including with respect to an appropriate schedule for any alternative plan confirmation), and (iii) any of the factual, valuation or other assertions set forth in the Disclosure Statement or the Disclosure Statement Supplement.

**14.5.    *Allocation of Distributions under this Plan Between Principal and Equity Interest.***

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall for U.S. federal (and applicable state and local) income tax purposes be allocated first to the principal amount of the Claim and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts (but solely to the extent that such other amount is an allowable portion of such Allowed Claim).

**14.6.    *Severability.***

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent and the Required Consenting First Lien Lenders' consent; and (3) nonseverable and mutually dependent.

**14.7.    *Governing Law.***

Except to the extent that the Bankruptcy Code or other U.S. federal Law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the Laws of the State of New York, without giving effect to the principles of conflict of Laws thereof to the extent such principles would result in the application of the Laws of any other jurisdiction.

**14.8.    *Section 1125(e) of the Bankruptcy Code.***

The Debtors have, and upon Confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the Bankruptcy Code, and the Debtors, and the Consenting First Lien Lenders (and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys) participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

### 14.9.  *Inconsistency.*

In the event of an inconsistency between this Plan, the Disclosure Statement, and the Disclosure Statement Supplement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and this Plan, the Disclosure Statement, or the Disclosure Statement Supplement, the Confirmation Order shall control.

### 14.10.  *Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Subject to the requirements of the Restructuring Transactions Memorandum, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

### 14.11.  *Reference to Monetary Figures.*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### 14.12.  *Exhibits.*

All exhibits to this Plan (including, without limitation, all documents Filed with the Plan Supplement and all exhibits and ancillary agreements thereto) are incorporated and are a part of this Plan as if set forth in full herein.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

### 14.13.  *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Equity Interests prior to the Effective Date.

### 14.14.  *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**14.15.   *Notices.***

All notices, demands, or requests in connection with the Plan shall be in writing (including by facsimile or electronic mail transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile or electronic mail transmission, when received and telephonically confirmed, addressed as follows:

(a)     if to the Debtors:

Franchise Group, Inc.
2371 Liberty Way,
Virginia Beach, VA 23456
Attention: Tiffany McMillan-McWaters
E-mail address:        tmcwaters@franchisegrp.com

with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:    Joshua A. Sussberg, P.C., Nicole L. Greenblatt, P.C.,
Derek I. Hunter, Maddison Levine, and Brian Nakhaimousa
E-mail address:        jsussberg@kirkland.com;
                      nicole.greenblatt@kirkland.com;
                      derek.hunter@kirkland.com;
                      maddison.levine@kirkland.com
                      brian.nakhaimousa@kirkland.com

(b)     if to a Consenting First Lien Lender:

c/o Paul Hastings LLP
200 Park Avenue
New York, NY 10166
Attention:  Jayme Goldstein; Jeremy Evans; Isaac Sasson
E-mail address:        jaymegoldstein@paulhastings.com;
                      jeremyevans@paulhastings.com;
                      isaacsasson@paulhastings.com

(c)     if to the Creditors' Committee:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Attention:  Bradford J. Sandler, Esq. and Colin R. Robinson, Esq.
E-mail address:        bsandler@pszjlaw.com;

crobinson@pszjlaw.com;

-and-

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Attention:  Robert J. Feinstein, Esq., Alan J. Korfeld, Esq., and
Theodore S. Heckel, Esq., Esq.
E-mail address:          rfeinstein@pszjlaw.com;
                         akornfeld@pszjlaw.com;
                         theckel@pszjlaw.com

(d)     if to the Freedom Lender Group:

White & Case LLP
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Attention:  Thomas Lauria
E-mail address:          tlauria@whitecase.com

-and-

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Attention:  J. Christopher Shore, Andrew Zatz, Samuel P. Hershey,
Erin Smith, and Brett Bakemeyer
E-mail address:          cshore@whitecase.com;
                         azatz@whitecase.com;
                         shershey@whitecase.com
                         erin.smith@whitecase.com;
                         brett.bakemeyer@whitecase.com

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

### 14.16.  *Filing of Additional Documents.*

Subject to the terms and conditions of the Restructuring Support Agreement and this Plan, on or before substantial consummation of the Plan, the Debtors shall File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors,

as applicable, and all Holders of Claims receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

The Claims Agent is authorized to destroy all paper/hardcopy records related to this matter two (2) years after the Effective Date has occurred.

### 14.17. *Closing of Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases except for one of the Chapter 11 Cases, as determined by the Reorganized Debtor, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Case.

### 14.18. *Tax Matters.*

The Debtors will cooperate with any advisors selected by the Required Consenting First Lien Lenders in respect of all tax structuring matters. The Reorganized Debtors shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

## ARTICLE XV.
## GLOBAL SETTLEMENT

Following good faith and arm's length negotiations, in exchange for the releases and other valuable consideration provided for in this Plan, the Global Settlement Parties have agreed to the settlement provided for in the Global Settlement. The Global Settlement provides significant value to the Debtors and their Estates, favorably resolves and avoids potential protracted expensive and uncertain litigation, and enables a prompt and efficient reorganization of the Debtors through this Plan. The Global Settlement is integral to the development and implementation of this Plan. The Plan, taken together with the Disclosure Statement and Disclosure Statement Supplement, shall serve as a motion to approve the Global Settlement, including, for the avoidance of doubt, approval of the releases provided by the Freedom HoldCo Debtors with respect to any Claims or Causes of Action previously identified or preserved by the Freedom HoldCo Independent Director, pursuant to Bankruptcy Rule 9019. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromises and settlements provided for in the Global Settlement, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, Holders of Claims and Equity Interests, and other parties in interest, and are fair, equitable, and reasonable.

[*Remainder of Page Intentionally Left Blank*]

Dated: May 14, 2025
       Wilmington, Delaware

Respectfully submitted,

**FRANCHISE GROUP, INC.,** on behalf of itself and its affiliated Debtors

By: /s/ *Andrew Laurence*
Name: Andrew Laurence
Title: Chief Executive Officer

# <u>Exhibit I</u>

**Global Settlement Term Sheet**

[Filed at Docket No. 1290]

## **Exhibit B**

**Notice of Effective Date**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) | Case No. 24-12480 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF (I) ENTRY OF CONFIRMATION ORDER, (II) OCCURRENCE OF EFFECTIVE DATE, AND (III) RELATED BAR DATES

**PLEASE TAKE NOTICE THAT** on [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") confirmed the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. [●]] (the "Plan"),[2] which was attached as Exhibit A to the *Findings of Fact, Conclusions of Law, and Order Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. [●]] (the "Confirmation Order").

**PLEASE TAKE FURTHER NOTICE THAT** the Effective Date occurred on **[●], 2025**.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article X of the Plan, unless otherwise wise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in Plan.

to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be Filed with the Claims Agent within thirty (30) days after the date of the effectiveness of the rejection of the applicable Executory Contract or Unexpired Lease.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with <u>Article V</u> of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

**PLEASE TAKE FURTHER NOTICE THAT**, except as otherwise provided by this Confirmation Order, the Plan, or a Final Order of the Bankruptcy Court, the deadline for filing requests for payment of Administrative Expense Claims shall be **[●], 2025** (the "<u>Administrative Bar Date</u>"), which is the first Business Day that is thirty (30) days after the Effective Date.  If a Holder of an Administrative Expense Claim (other than DIP Claims or U.S. Trustee Fees) that is required to, but does not, file and serve a request for payment of such Administrative Expense Claim by the Administrative Bar Date, such Administrative Expense Claim shall be forever barred and discharged.  If for any reason any such Administrative Expense Claims is incapable of being forever barred and disallowed, then the Holder of such Claim shall in no event have recourse to any property to be distributed pursuant to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Plan, the deadline to file final requests for payment of Professional Fee Claims is **[●], 2025** (the "<u>Professional Fee Application Deadline</u>"), which is the first Business Day that is forty-five (45) days after the Effective Date.  All professionals must file final requests for payment of Professional Fee Claims by no later than the Professional Fee Application Deadline to receive final approval of the fees and expenses incurred in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan and its provisions are binding on the Debtors, any Holder of a Claim or Equity Interest and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Plan, this Confirmation Order, and other documents and materials Filed in these Chapter 11 Cases may be obtained at no charge from the Debtors' Claims Agent by (a) visiting the Debtors' restructuring website at <u>https://cases.ra.kroll.com/FRG</u>, (b) writing to:  Franchise Group, Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232, (c) emailing FRGinfo@ra.kroll.com (with "Franchise Group Solicitation Inquiry" in the subject line), or (d) calling the Debtors' Claims Agent at (844) 285-4564 (U.S./Canada toll free) or +1 (646) 937-7751 (International).  You may also obtain copies of any pleadings Filed in these Chapter 11 Cases for a fee via PACER at: https://ecf.deb.uscourts.gov/.

Dated:  [●], 2025
Wilmington, Delaware

| /s/ DRAFT | |
| --- | --- |
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Allison S. Mielke (Del. No. 5934)
Shella Borovinskaya (Del. No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253
Email:          emorton@ycst.com
                mlunn@ycst.com
                amielke@ycst.com
                sborovinskaya@ycst.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                nicole.greenblatt@kirkland.com
                derek.hunter@kirkland.com

- and -

Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone:     (415) 439-1400
Facsimile:     (415) 439-1500
Email:          mark.mckane@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*Co-Counsel to the Debtors*
*and Debtors in Possession*