**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: May 20, 2025, at 10:00 a.m. (ET)<br>Obj. Deadline: May 7, 2025, at 5:00 p.m. (ET)[2]<br><br>**Re: Docket No. 1371, 1454, 1481** |

**LIMITED OBJECTION OF THE CHUBB COMPANIES TO NINTH AMENDED JOINT
CHAPTER 11 PLAN OF FRANCHISE GROUP, INC.
AND ITS DEBTOR AFFILIATES**

ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Westchester

Surplus Lines Insurance Company, Federal Insurance Company, Indemnity Insurance Company

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] The Chubb Companies objection deadline was extended to May 16, 2025, at 12:00 p.m. (ET).

of North America, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, Pacific Employers Insurance Company and each of their respective U.S.-based affiliates, predecessors, and successors (collectively, and solely in their capacities as insurers of one or more of the above-captioned debtors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this limited objection (the "Limited Objection") to the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1454] (the "Plan"),[3] and in support of the Limited Objection, the Chubb Companies respectfully state as follows:

**BACKGROUND**

    **A.**    **The Bankruptcy Case**

1. On November 3, 2024 (the "Petition Date"), Franchise Group, Inc. and certain of its affiliates and subsidiaries (collectively, the "Debtors") each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. On November 11, 2024, the Debtors filed the initial versions of the Plan [Docket No. 150] and of the *Disclosure Statement for the Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 151] (as has been and may be further amended, the "Disclosure Statement").[4]

3. On February 21, 2025, the Court entered *the Order (WITH EDITS) (I) Approving The Disclosure Statement, (II) Approving The Solicitation And Voting Procedures, Including (A)*

---

[3]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

[4]     Amended versions of the Plan filed at Docket Nos. 654, 894, 925, 957, 995, 1014, 1233, 1312 and amended versions of the Disclosure Statement were filed at Docket Nos. 655, 895, 926, 958, 996, and 1015.

*Fixing The Voting Record Date, (B) Approving The Solicitation Packages And Procedures For Distribution, (C) Approving The Form Of The Ballots And Solicitation Materials And Establishing Procedures For Voting, And (D) Approving Procedures For Vote Tabulation, (III) Scheduling A Confirmation Hearing And Establishing Notice And Objection Procedures, And (IV) Granting Related Relief* [Docket No. 1019] (the "DS Order"), which, *inter alia*, conditionally approved the version of the Disclosure Statement attached to the DS Order as Exhibit 1.

4. On April 26, 2025, the Court entered the *Order (I) Approving the Form, Content, and Manner of Notice of the Disclosure Statement Supplement, (II) Approving Certain Deadlines and Procedures in Connection with Confirmation, and (III) Granting Related Relief*.

5. On April 30, 2025, the Debtors filed the *Notice of Filing of Amended Plan Supplement* [Docket No. 1371] (the "Plan Supplement"). No part of the Insurance Programs (as defined below) currently appear to be listed on the Rejected Contracts/Lease List or the Assumed Contracts List.

6. On May 14, 2025, the Debtors filed the current version of the Plan.

7. Also on May 14, 2025, the Debtors filed the *Proposed Findings of Fact and Conclusions of Law* [Docket No. 1481], which included paragraph 178, with regard to the treatment of the Insurance Programs (defined below) in brackets, thereby the Chubb Companies file this Limited Objection to preserve and reserve their rights.

**B.      The Insurance Programs**

8. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors as named insureds.

9. Prior to the Petition Date, the Chubb Companies and the Debtors also entered into certain written agreements in connection with the Policies (as renewed, amended, modified,

endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

10. Pursuant to certain Policies and Insurance Agreements (the "ACE Insurance Program"), ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company of North America, ACE Property & Casualty Insurance Company, Westchester Fire Insurance Company, Pacific Employers Insurance Company, and/or certain of their U.S.-based affiliates provide, inter alia, certain workers' compensation, excess commercial general liability, commercial general liability, errors and omissions, umbrella excess, automotive liability, accident and death dismemberment, private company, privacy, excess, directors' and officers' liability, environmental, umbrella, professional liability, international advantage, commercial directors' and officers', businessowners, excess directors' and officers' liability, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (collectively, the "ACE Program Obligations").

11. Pursuant to certain other Policies and any agreements related thereto (collectively, the "Federal Insurance Program," and together with the ACE Insurance Program, the "Insurance Programs"), Federal Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, Executive Risk Indemnity Inc., Chubb Insurance Company of New Jersey, and/or certain of their U.S.-based affiliates provide, inter alia, certain accident, crime, directors' and

officers' liability, fiduciary liability, employment practices liability, kidnap, ransom and extortion liability, automotive liability, workers' compensation, property, package, directors' and officers' excess liability, export package, cargo, umbrella, general liability, accident blanket, excess, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (collectively the "Federal Program Obligations," and together with the ACE Program Obligations, the "Obligations").

12. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

13. Certain of the Obligations are secured by certain collateral, including letters of credit. The Obligations may also be secured by other letters of credit, trusts, escrows, surety bonds, cash collateral, paid loss deposit funds, or other amounts.

**C.    The Plan**

14. The Plan purports to provide for the assumption of the Debtors' insurance policies, but without specifically providing for the cure of any defaults thereunder or clearly addressing that all of the Debtors' insurance obligations prepetition and post-petition shall be an obligation of the Reorganized Debtors after the Effective Date. *See* Plan at Sections 7.18 and 7.22.

15. With respect to insurance policies generally, the Plan provides:

> Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder. Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and

>instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors. Nothing in this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or the purchaser, solely to the extent assumed and assigned to the purchaser under an asset purchase agreement) or draw on any Collateral or security therefor.
>
>For the avoidance of doubt, insurers and third party administrators shall not need to nor be required to File or serve a Cure Dispute or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims Bar Date or similar deadline governing cure amounts or Claims. For the avoidance of doubt, all of the Debtors' D&O Liability Insurance Policies shall be governed by Section 7.5 and Section 7.18 of this Plan and not this Section 7.22.

Plan at Section 7.22.

>16. With respect to directors' and officers' insurance policies, the Plan provides:
>
>>In accordance with the Plan, (a) on the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto, which "tail policy" shall not be otherwise terminated or reduced) in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; provided that any indemnity obligations that would otherwise be assumed by the foregoing assumption of the D&O Liability Insurance Policies shall be governed as provided elsewhere in this Plan and shall not be deemed to be assumed with assumption of such D&O Liability Insurance Policies; (b) the Debtors and the Reorganized Debtors, as applicable, shall retain the ability to supplement such D&O Liability Insurance Policies as the Debtors or Reorganized Debtors, as applicable, may deem necessary; and (c) for the avoidance of doubt, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of each of the unexpired D&O

> Liability Insurance Policies. For the avoidance of doubt, on and after the Effective Date, each of the Reorganized Debtors shall be authorized to purchase a directors' and officers' liability insurance policy for the benefit of their respective directors, members, trustees, officers, and managers in the ordinary course of business.

Plan at Section 7.18.

17. The Plan further provides with regard to certain indemnification provisions, as follows:

> On and as of the Effective Date, all indemnification obligations of the Debtors that are in place as of the Petition Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements or otherwise) for the current directors, officers and managers of the Debtors, as well as the attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors, as applicable, shall be assumed by the applicable Debtor or assumed and assigned by the applicable Debtor and remain in full force and effect after the Effective Date, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose, as applicable; provided that, notwithstanding the foregoing, any indemnification obligations of the Debtors on account of any Permitted Litigation Claims that are transferred to the Litigation Trust or on account of any Claims or Causes of Action that are not being released pursuant to the Plan shall, in each case, not be assumed or assumed and assigned and, in each case, such indemnification obligations and related agreements and documents shall be deemed rejected under this Plan.

Plan at Section 7.5.

18. The Plan further provides in Section 8.17, with regard to self-insured retentions and deductibles, as follows:

> If an applicable insurance policy has a self-insured retention ("SIR") or a deductible, the Holder of an Allowed Claim that is payable pursuant to such insurance policy, upon the Allowance of such Claim, shall have an Allowed General Unsecured Claim against the applicable Debtor's Estate up to the amount of the SIR or deductible amount that may be established upon the liquidation of the Claim, and such Holder's recovery from the Debtors or the Reorganized Debtors, as applicable, shall be solely in the form of its distribution on account of such Allowed General Unsecured Claim under the

> Plan. Such SIR shall be considered satisfied pursuant to the Plan through allowance of the General Unsecured Claim solely in the amount of the applicable SIR, if any; provided, however, that nothing herein obligates the Debtors, the Reorganized Debtors, the Litigation Trustee, or any of their successors or assigns to satisfy any SIR under any insurance policy, including any D&O Liability Insurance Policies. Any recovery on account of the Claim in excess of the SIR or the deductible established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof.

***

Plan at Section 8.17.

19. The Plan further provides in Section 10.8, with regard to employee compensation and benefits, as follows:

> Subject to the provisions of the Plan, the Sale Order, or any applicable Sale Documents, all compensation and benefits agreements, plans, programs, and arrangements shall be treated as Executory Contracts.
>
> At the direction of the Required Consenting First Lien Lenders, all compensation and benefits agreements, plans, programs, and arrangements shall be rejected, assumed or assumed and assigned on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. For the avoidance of doubt, all equity or equity-based (including phantom equity) compensation or benefits agreements, plans, programs, and arrangements (including each provision in any Executory Contract that provides for any such compensation or benefits) shall be treated as Existing TopCo Equity Interests under the Plan and shall be deemed rejected.
>
> The Debtors or the Reorganized Debtors, as applicable, will assume, assume and assign, or reject the existing benefits and compensation agreements, plans, programs, and arrangements with the current members of the senior management team of the Debtors, or will enter into new benefits and compensation arrangements with the current members of the senior management team of the Debtors who agree to such new arrangements, in either case on the Effective Date, which assumption, assumption and assignment, rejection or new arrangements shall be at the direction of the Required Consenting First Lien Lenders.

> Confirmation of the Plan, the consummation of any of the Restructuring Transactions, or any assumption or assumption and assignment of compensation and benefits agreements, plans, programs, or arrangements pursuant to the terms herein shall not be deemed to trigger any applicable change of control, sale of business, assignment, vesting, termination, acceleration or similar provisions in any compensation and benefits agreements, plans, programs, or arrangements. No counterparty shall have rights under any compensation or benefits agreement, plan, program, or arrangement assumed or assumed and assigned pursuant to the Plan other than those applicable immediately prior to such assumption or assumption and assignment.

***

Plan at Section 10.8.

20. The Plan further contains provisions that contemplate the payment of certain claims by the Debtors' insurers. *See, e.g.*, Plan at Section 8.17 (stating that distributions under the Plan shall not be made on account of an allowed claim payable pursuant to one of the Debtors' insurance policies until the holder of such claim "has exhausted all remedies with respect to such insurance policy" and that distributions to holders of allowed claims shall be in accordance with the provisions of any applicable insurance policy).

## **OBJECTION**

21. The Chubb Companies object to the Plan[5] on the grounds that (I) while it appears that the Debtors seek to retain the benefits of the Insurance Programs (*see, e.g.*, Plan at Section

---

[5] This Limited Objection focuses on the Chubb Companies' objections to the Plan. As for the Disclosure Statement, section 1125 of the Bankruptcy Code provides that a plan proponent may not solicit acceptance or rejection of a plan unless, before such solicitation, the plan proponent transmits to the parties to be solicited the plan and a disclosure statement containing "adequate information," as defined in section 1125(a) of the Bankruptcy Code, which has been approved by the bankruptcy court after notice and a hearing. *See* 11 U.S.C. § 1125(b). A disclosure statement contains "adequate information" if it provides information concerning the proposed plan of a kind and in sufficient detail that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. *See* 11 U.S.C. § 1125(a). Courts consistently refuse to approve disclosure statements that lack the information that a "reasonable hypothetical investor" would require to make an informed decision about the proposed plan. *See, e.g.*, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417-18 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988); *In re Route 202 Corp.*, 37 B.R. 367, 375 76 (Bankr. E.D. Pa. 1984); *In re Fierman*, 21 B.R.

7.18 (relating to directors' and officers' liability insurance policies), Section 7.22 (relating to insurance policies), Section 8.17 (relating to payment of claims by the Debtors' insurers), and Section 10.8 (which may cover workers' compensation plans and programs)), the Plan fails to adequately address the fact that, in order to do so, the Debtors' successors must remain liable for the Obligations under the Insurance Programs; (II) the terms of the Insurance Programs cannot be altered through the Plan; and (III) the Plan must provide that workers' compensation and direct action claims must continue in the ordinary course.

I. **The Debtors' Successors Cannot Continue To Receive The Benefits Of The Insurance Programs Without Remaining Liable For The Obligations Thereunder.**

22. As set forth above, the Debtors appear to seek to retain the benefits of their insurance policies; however, the Plan fails to adequately address the treatment of the Debtors' obligations under their insurance policies.

23. To the contrary, the Plan contains provisions which provide for the release of liens, the vesting of assets in the Debtors' successors free and clear of liens, releases of certain third-parties, and exculpation and injunctions against certain actions. *See, e.g.*, Plan at Art. XII.

24. It is well-established that debtors (and their successors) cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its

---

314 (Bankr. E.D. Pa. 1982); *In re E. Redley Corp.*, 16 B.R. 429 (Bankr. E.D. Pa. 1982); *In re Civitella*, 15 B.R. 206 (Bankr. E.D. Pa. 1981).  In this case, the Chubb Companies cannot determine with complete certainty how the Debtors propose to treat the Insurance Programs and the Chubb Companies' claims thereunder and, therefore, object to the Disclosure Statement and final approval thereof on this basis.

burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."); *see also Quantum Diversified Holdings, Inc. v. Wienheimer (In re Escarent Entities, L.P.)*, 423 F. App'x 462, 466 (5th Cir. 2011) ("[I]t is well-settled that an executory contract cannot be assumed in part and rejected in part.")

...

(citing *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996)); *In re Aneco Elec. Constr.*, 326 B.R. at 202; *In re University Medical Center*, 973 F.2d 1065, 1075 (3d Cir. 1992), reh'g en banc denied, 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "(a)ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *AGV Productions, Inc. v. Metro Goldwyn-Mayer, Inc.*, 115 F. Supp.2d 378, 391 (S.D.N.Y. 2000) (citing cases); *In re Morande Enters.*, 335 B.R. 188, 192 (Bankr. M.D. Fla. 2005) (citation omitted) (stating that the "law is clear that an executory contract may not be assumed in part and rejected in part"); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "(i)t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed cum onere'"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part").

25. Moreover, each of the Insurance Programs is an integrated insurance program and therefore must be read, interpreted and enforced in its entirety.[6] *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory

---

[6] The Chubb Companies reserve the right to object to the treatment of the Policies and any related insurance agreements as executory if the Debtors seek to reject any such contracts.

contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

26.     Accordingly, the Plan must be clarified to provide that, to the extent that the Debtors or their successors seek to retain the benefits of any portion of the Insurance Programs, the entirety of each of the Insurance Programs shall be assumed by the Debtors' successors, and the Debtors' successors shall remain liable in full for all of the Obligations arising under the Insurance Programs.

## II.     **The Plan Should Clearly Provide That Nothing Modifies, Alters Or Impairs The Insurance Programs.**

27.     Neither the Debtors nor this Court can rewrite the Insurance Programs, but rather, the Insurance Programs must be enforced as written.  *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (citation omitted); *Ally Financial Inc., v.*

*Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

28. However, as noted above, the Plan contains provisions that provide for the release of liens, the vesting of assets in the Debtors' successors free and clear of liens, releases of certain third parties, and exculpation and injunctions against certain actions. *See, e.g.*, Plan at Art. XII.

29. While the Plan purports to provide that nothing in the Plan or the Confirmation Order alters the rights and obligations of the Debtors' insurers under the insurance policies, modifies the coverages or benefits provided under the insurance policies and the conditions thereof, or diminishes the enforceability of the insurance policies, *see* Plan at Section 7.22., various provisions of the Plan, including, but not limited to, those provisions cited above, could in fact modify insurance policies and insurers' rights and defenses thereunder.

30. The Plan must therefore clarify that nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order or any other document related to the foregoing, including, but not limited to, those provisions identified above, shall modify, alter or impair the

Insurance Programs, including the rights and obligations of the Chubb Companies and the Debtors thereunder, as well as the coverage provided thereunder.

### 1. Improper treatment of self-insured retentions and deductibles.

31. The proposed treatment of self-insured retentions and deductibles in Section 8.17 of the Plan (quoted above) is improper for at least two reasons.

32. First, both Plan fails to make any distinction between prepetition or postpetition insured claims. Postpetition insured claims and the Debtors' obligations in connection with such claims constitute and give rise to administrative expense claims. Therefore, it is improper for the Plan to provide that "the amount of the SIR or deductible" arising in connection with any insured claim shall only be paid by the allowance of a general unsecured claim.

33. Second, the Plan also fails to make any distinction between self-insured retentions and deductibles. However, there are key differences between these two types of insurance obligations:

- Under a self-insured retention policy, the insured pays the self-insured retention directly to the third party claimant. The insurer does not pay within the self-insured retention.

- Under a deductible policy, the insurer pays the claim (including amounts within the deductible) directly to the third party claimant (up to the aggregate limit of the applicable policy).

*See, e.g.*, *In re September 11th Liability Ins. Coverage Cases*, 458 F. Supp. 2d 104, 118 n. 10 (S.D.N.Y. 2006). Accordingly, because the amount of an insured claim falling within an applicable deductible is paid to the claimant by the insurer pursuant to the terms of the applicable insurance policy, it is improper for the Plan to purportedly grant the insured claimant an allowed claim for the deductible amount.

34. Accordingly, the Plans must clarify that nothing therein or in any of the documents related thereto, shall modify, alter or impair the Insurance Programs, including the rights and obligations of the Chubb Companies, the Debtors, and/or any other entities thereunder.

### III. The Plan Must Provide That Workers' Compensation Claims and Direct Action Claims Must Continue In The Ordinary Course.

35. The Plan does not provide for the handling of workers' compensation claims and direct action claims.

36. Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan. *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

37. Accordingly, the Plan must clarify that workers' compensation and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and relatedly, that the Chubb Companies may continue to so administer, handle, defend, settle, and/or pay such covered claims in the ordinary course, and pursuant to the terms of the Insurance Programs and applicable non-bankruptcy law.

**RESERVATION OF RIGHTS**

38. The Chubb Companies specifically reserve all of their rights with respect to the Insurance Programs and their right to assert additional objections to the Plan.

WHEREFORE, the Chubb Companies respectfully request that this Court: (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the clarifications requested herein; and (b) grant such other relief as the Court deems appropriate.

Dated: May 16, 2025

Respectfully submitted,

*/s/ Drew S. McGehrin*
Drew S. McGehrin, Esquire (DE Bar No. 6508)
DUANE MORRIS LLP
1201 North Market Street, Suite 501
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
Email: DSMcGehrin@duanemorris.com

-and-

Wendy M. Simkulak, Esquire
Jessica Kenney Bonteque, Esquire
1540 Broadway
New York, NY 10036-4086
Telephone: (212) 692-1036
Fax: (212) 954-5310
Email: JBonteque@duanemorris.com

*Counsel for the Chubb Companies*