# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) Case No. 24-12480 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## AMENDED DECLARATION OF CHRISTOPHER P. MEYER
## IN SUPPORT OF AN ORDER (I) CONFIRMING THE NINTH
## AMENDED JOINT CHAPTER 11 PLAN OF FRANCHISE GROUP, INC.
## AND ITS DEBTOR AFFILIATES AND (II) GRANTING RELATED RELIEF

I, Christopher P. Meyer, hereby declare under penalty of perjury:

1. I am an Independent Director of Franchise Group, Inc. and Freedom VCM Holdings, LLC ("TopCo"), two of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors").

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

2. I submit this declaration (this "Declaration") in support of confirmation of the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* (the "Plan") [Docket 1454].[2]

3. Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, and information supplied to me by Petrillo and the Debtors' managers and advisors.

4. This Declaration provides a summary of the (a) OpCo Independent Investigation performed under the supervision of three independent directors of Franchise Group, Inc. ("FRG" or the "Company"), including myself, Todd Arden, and John Hartmann (together, the "Independent Directors"), in connection with the restructuring of FRG and (b) terms of certain settlements reached between and among various parties to these bankruptcy proceedings.

5. The OpCo Independent Investigation concluded that the Debtor Release of the FRG Managers contemplated under the Plan is warranted under the circumstances. The aforementioned settlements further underscore this conclusion.

## SCOPE OF INVESTIGATION

**A.    The 2023 Investigation**

6. Petrillo Klein + Boxer LLP ("Petrillo") was originally engaged in November 2023 to conduct an investigation (the "2023 Investigation") on behalf of the Board of FRG in the wake of allegations that Brian Kahn, then Chief Executive Officer of FRG, was complicit in investment fraud involving an asset manager called Prophecy Asset Management LP ("Prophecy").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them later in this Declaration, in the *Debtors' Memorandum of Law (I) in Support of an Order (A) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (B) Approving the Global Settlement and Release of Claims and Causes of Action By and Among the Global Settlement Parties, and (II) Omnibus Reply to Objections Thereto* [Docket No. 1457], or the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [Docket No. 1454] (as modified, amended, or supplemented from time to time, the "Plan"), as applicable.

2

7. The scope of the 2023 Investigation was to evaluate whether the available evidence indicated any involvement by FRG in the conduct alleged in *United States v. John Hughes*, 3:23-cr-00867-MAS (D.N.J. Nov. 2, 2023) ("Information"), and *SEC v. John Hughes*, No. 3:23-cv-21816 (D.N.J. Nov. 2, 2023) ("SEC Complaint," and together, the "Alleged Prophecy Conduct"), which implicated Brian Kahn in alleged investment fraud and potential legal exposure of FRG.

8. Petrillo made three principal findings in their report (the "2023 Investigation Report"): (a) there was no evidence of FRG complicity in the Alleged Prophecy Conduct; (b) Kahn's involvement with Prophecy occurred outside the scope of his roles as FRG's Chief Executive Officer and a member of its Board; and (c) because Kahn's Prophecy activities occurred outside the scope of his roles at FRG, they could not be imputed to FRG, which should foreclose criminal or forfeiture-related liability for FRG.

**B.     The OpCo Independent Investigation**

9. On October 22, 2024, Petrillo was engaged by the Independent Directors to undertake a second investigation in connection with an anticipated restructuring of FRG. On November 3, 2024 ("Petition Date"), FRG and the other Debtors each filed a voluntary chapter 11 petition. By an order dated December 17, 2024, the Court approved the retention of Petrillo to serve as Special Counsel to the Debtors to render professional services at the direction of the Independent Directors, effective as of the Petition Date, consistent with the scope of the Independent Directors' investigative mandate ("OpCo Independent Investigation").

10. The initial scope of the OpCo Independent Investigation was to: (a) undertake a review of the sale of W.S. Badcock Corporation ("Badcock") to Conn's, Inc. ("Conn's"); the management-led acquisition of FRG in August 2023 (the "Management Buyout"); the August 2023 sale of B. Riley Receivables II, LLC ("BRRII") to an affiliate of TopCo, and other transactions

between FRG and B. Riley Financial, Inc. ("B. Riley"); the Company's transactions and relationship with its former Chief Executive Officer and controlling shareholder, Brian Kahn; and other transactions related to the foregoing or otherwise deemed material by the Independent Directors; and in the case of the above transactions, contemporaneous evidence of the Company's financial condition, and (b) evaluate the appropriateness of any releases of the Company's directors and officers in a potential chapter 11 filing and plan of reorganization by the Company or a potential out-of-court restructuring.

11. Following the initiation of a separate investigation by an independent director of the Boards of the Freedom HoldCo Debtors concerning the appropriateness of releases for directors and officers of entities situated above FRG in the corporate structure, the scope of the OpCo Independent Investigation was narrowed to evaluate the appropriateness of releases for directors and officers of the operating company, FRG.

12. In early February 2025, Petrillo was advised by then-proposed Debtors' counsel, Willkie, Farr & Gallagher LLP ("Willkie"), that an agreement in principle had been reached between FRG and the Creditors' Committee. Following additional discussions with Debtors' counsel and the Independent Directors, Petrillo was directed to cease further work on the OpCo Independent Investigation.

13. In early March 2025, after discussions with new proposed Debtors' counsel, Kirkland & Ellis LLP, the OpCo Independent Investigation resumed with a focus on evaluating the appropriateness of releases for the following directors and officers of FRG (collectively, the "FRG Managers"): Andrew Laurence (President, Chief Executive Officer, and Director), Andrew Kaminsky (Executive Vice President, Chief Administrative Officer and Director), Tiffany McMillan-McWaters (General Counsel and Director), and Eric Seeton (Chief Financial Officer).

14. To fulfill this mandate, Petrillo, in consultation with the Independent Directors, evaluated the roles played by the FRG Managers principally in connection with the following: the management-led acquisition of FRG in August 2023; transactions between FRG and B. Riley; the sale of Badcock to Conn's; and distributions made by FRG, including dividend payments and share repurchases. The Independent Directors also evaluated information pertaining to FRG's financial circumstances for certain periods. The Independent Directors further evaluated potential breach of fiduciary duty claims related to the foregoing, including with regard to potential fraudulent transfers.

**INVESTIGATIVE STEPS**

**A.     Document Collection**

15. The Independent Directors, through Petrillo, requested documents from FRG and certain of its current directors and officers including Andrew Laurence, Andrew Kaminsky, Eric Seeton, Tiffany McMillan-McWaters, Bryant Riley, Todd Evans, Scott Harvey, and Lee Wright. The Independent Directors, through Petrillo, also requested documents from certain former FRG directors and officers including Matthew Avril, Patrick Cozza, Cynthia Dubin, Lisa Fairfax, Thomas Herskovits, Lawrence Miller, G. William Minner, Jason Mattes, Gary Rich, Nanhi Singh, and from B. Riley and Jefferies LLC ("Jefferies").

16. Documents were collected from FRG, Todd Evans, Eric Seeton, Thomas Herskovits, Nanhi Singh, Andrew Laurence, Brian Kahn, B. Riley, and Jefferies. The following individuals reported that they did not possess responsive documents in their personal custody: Patrick Cozza, Scott Harvey, Andrew Kaminsky, Jason Mattes, Tiffany McMillan-McWaters, Lawrence Miller, and Lee Wright. The following individuals declined, in some instances through counsel, to respond or produce documents: Cynthia Dubin, Matthew Avril, Gary Rich, Lisa Fairfax, and G. William Minner.

17. Petrillo collected documents consisting of, or relating to: (a) board minutes, written consents, resolutions, and related materials for the Company; (b) SEC filings of FRG, B. Riley, Conn's,

Kahn, Vintage Capital Management, LLC ("Vintage") and Liberty Tax, Inc. ("Liberty Tax"); (c) FRG governance documents; (d) formation and governance documents for the Freedom HoldCo Debtors; (e) transaction files for the November 2021 Badcock purchase, the Management Buyout, the August 2023 purchase of BRRII by an affiliate of TopCo, and the December 2023 sale of Badcock; (f) proxy demand materials, including materials produced under Section 220 of the Delaware General Corporation Law; (g) FRG - B. Riley transactions; (h) company organizational charts; (i) certain transactions between FRG and Kahn; (j) FRG earnings call transcripts; (k) FRG share buybacks and dividends; (l) data room files for the Management Buyout; (m) Badcock sale-leaseback arrangements; (n) Badcock Fortiva financing; (o) FRG's equity incentive plan; (p) corporate fund flows; (q) FRG financial projections; (r) credit rating agency reports; (s) transactions between B. Riley and Kahn; (t) credit facility agreements entered into by each of FRG and VCM Inc.; (u) audited and unaudited financial statement information related to FRG and the Freedom HoldCo Debtors; (v) various press coverage; (w) complaints filed in litigation proceedings involving B. Riley, Vintage, and others; (x) FRG emails, corporate OneDrive, and SharePoint files identified primarily through the application of search terms to various custodial files; and (y) text messages and personal email and other files collected from certain individuals.

**B.    Interviews**

18.    The following individuals were interviewed in connection with the OpCo Independent Investigation: Ryan Mash (Jefferies Managing Director); Bryant Riley (B. Riley Chairman and Co-Chief Executive Officer); Brian Kahn (FRG Chief Executive Officer and Director (Former)); Andrew Laurence (FRG President, Chief Executive Officer and Director), Andrew Kaminsky (FRG Executive Vice President, Chief Administrative Officer and Director); Tiffany McMillan- McWaters (FRG General Counsel and Director); Eric Seeton (FRG Chief Financial Officer); Todd Evans (FRG Chief Franchising Officer); Thomas Will (FRG Director FP&A); Kyle

Scholes (FRG Sr. Accounting Manager); Jeff Seghi (American Freight Chief Financial Officer); Dan McNamara (Pet Supplies Plus Chief Financial Officer); Lee Wright (Vitamin Shoppe Chief Executive Officer); and Jemma Lawrance (Buddy's Home Furnishings Controller).

19. Petrillo engaged in discussions with Willkie and Troutman Pepper Locke LLP in connection with various topics relevant to the OpCo Independent Investigation. Petrillo also retained a subject matter expert in Delaware corporate law and governance and a financial advisor.

20. The Independent Directors evaluated whether the evidence supports potential claims by FRG against the FRG Managers, including with respect to: self-dealing, breaches of fiduciary duty, disclosure violations, fraudulent transfers, violations of Delaware General Corporation Law, and other violations of law.

## SUMMARY OF INVESTIGATION AND FINDINGS

**A.     The FRG Managers**

21. Andrew Laurence is a longtime associate of Kahn. Starting in 2009, Laurence and Kahn began working together handling various investments, some of which were made through Vintage, an investment vehicle founded and managed by Kahn. Laurence held a minority interest in Vintage. Once FRG was formed, Laurence served as both an Executive Vice President, and, until May 2021, a member of its Board of Directors. Laurence re-joined the FRG Board and joined the Freedom HoldCo Debtors' Boards following completion of the Management Buyout and then became Chief Executive Officer of FRG following Kahn's departure from the Company in January 2024.

22. Andrew Kaminsky has served as FRG's Executive Vice President and Chief Administrative Officer since October 2019. In January 2024, Kaminsky began serving as a Director of TopCo, VCM Inc. and Interco Inc. In August 2024, Kaminsky began serving as a Director of FRG.

23. Tiffany McMillan-McWaters held various in-house legal roles at FRG over the years and now serves as FRG's General Counsel. In January 2024, McMillan-McWaters began serving as

7

a Director of TopCo, VCM Inc., and Interco Inc. In August 2024, McMillan-McWaters began serving as a Director of FRG.

24. Eric Seeton has served as FRG's Chief Financial Officer since October 2019.

**B. Findings Related to the Duty of Loyalty and Good Faith**

25. The OpCo Independent Investigation has uncovered no evidence that any FRG Manager engaged in a self-interested transaction from which he or she benefitted, or stood to benefit financially, other than through a benefit devolving upon all stockholders generally.

26. The OpCo Independent Investigation has uncovered no evidence indicating that any FRG Manager failed to act in good faith, consciously disregarded his or her duties, or acted with an intent to violate the law.

27. In addition, the FRG Managers neither served on FRG's Board during the Management Buyout nor otherwise exercised decision-making authority with respect to the transaction. Seeton has never served on FRG's Board. Kaminsky and McMillan-McWaters were first appointed to FRG's Board in August 2024. Laurence had served on FRG's Board but stepped down in May 2021 and was not reappointed as a director until after the Management Buyout had closed.

28. Based on these findings and all of the work performed by the Independent Directors, the OpCo Independent Investigation concluded that the Debtor Release of the FRG Managers contemplated under the Plan is warranted under the circumstances. Consistent with this conclusion, on March 26, 2025, the Independent Directors issued a report (the "<u>OpCo Independent Investigation Report</u>") detailing the findings and conclusions of the OpCo Independent Investigation and the Independent Directors' recommendation regarding the releases in the Plan.

## THE INTERCOMPANY AND GLOBAL CHAPTER 11 SETTLEMENT

29. As the OpCo Independent Investigation was in process, the Freedom HoldCo Independent Director and sole member of the Conflicts Committee issued the Freedom HoldCo

Independent Director Report, which concluded that certain claims and causes of action belonging to the Freedom HoldCo Debtors should not be released as of the date thereof, given, among other things, the lack of consideration provided to the Freedom HoldCo Debtors under the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 1014].

30.     Following the release of the Freedom HoldCo Independent Director Report and in parallel with the finalization of the OpCo Independent Investigation, the Independent Directors were involved in ongoing negotiations and discussions regarding the settlement of intercompany issues and claims among the Debtors.  Specifically, in March 2025, the Debtors presented a potential framework for an intercompany settlement of claims between the OpCo Debtors and the Freedom HoldCo Debtors.

31.     Over the course of the next several weeks, the Special Committee and the Conflicts Committee met regularly with their advisors, engaged in around the clock, hard-fought, good-faith negotiations at arm's length, exchanged multiple draft term sheets, held multiple Board meetings to discuss and evaluate the terms of a settlement, and met together via video conference to address and settle claims they could assert in exchange for mutually beneficial and valuable consideration.  These negotiations ultimately resulted in an agreement on the terms of a settlement by and among the OpCo Debtors, the Freedom HoldCo Debtors, and TopCo (the "Intercompany Settlement") in early April 2025.

32.     Pursuant to the Intercompany Settlement, each of the Debtors agreed to, among other things, resolve any and all disputes by and among the OpCo Debtors, the Freedom HoldCo Debtors, and TopCo in exchange for, among other things:  (a) additional consideration for the members of the Freedom Lender Group, (b) mutual releases as provided in (and subject to the limitations set forth in) the Plan; (c) the transfer of certain claims and causes of action that are not released under the Plan to

a combined Litigation Trust; and (d) the allocation of approximately $13.25 million in Cash from TopCo to the Litigation Trust Escrow Account.

33. Based on the terms of the Intercompany Settlement, the Special Committee determined that, in their business judgment, it was in the best interests of the OpCo Debtors and TopCo to agree to the Intercompany Settlement.

34. However, this Intercompany Settlement was not yet supported by certain of the Debtors' creditor constituencies, including the Freedom Lender Group and the Ad Hoc Group. Thereafter, the Debtors worked with the Ad Hoc Group and the Freedom Lender Group to build on the Intercompany Settlement and resolve various additional claims and causes of action between the Debtors, the Ad Hoc Group, consisting of the Required Consenting First Lien Lenders, the Creditors' Committee, and the Freedom Lender Group (collectively, the "Global Settlement Parties") to achieve global support for settlement of the Debtors' Plan. On or about April 17, 2025, the Global Settlement Parties agreed to a proposed global settlement ("Global Settlement").

35. The Global Settlement incorporated the terms of the Intercompany Settlement. Further, the Global Settlement provided the following:

- settles all pending litigation and potential litigation between the Global Settlement Parties, including (a) appeals of various first and second day orders, (b) alleged fraudulent transfer claims against the Freedom HoldCo Debtors, (c) alleged fraudulent transfer claims against TopCo, and (d) the allocation professional fees between the Freedom HoldCo Debtors and the OpCo Debtors, and (e) an objection to Confirmation of the Plan;

- establishes a consolidated Litigation Trust;

- resolves issues related to the funding of the Litigation Trust, issues related to the prosecution of overlapping claims among multiple trusts, and allocation of recoveries among trust beneficiaries; and

- provides for the release of actionable claims of the individuals identified by the Freedom HoldCo Independent Director Report.

36. The Global Settlement also provides for releases on the terms set forth in the Plan. In particular, the Plan provides for releases by the Debtors, as of the Effective Date, of, among other things, certain claims, rights, and causes of action that the Debtors and the Reorganized Debtors may have against the Released Parties, including the FRG Managers (the "<u>Debtor Release</u>"). The Debtor Release was negotiated in connection with the other terms of the Plan and the Global Settlement.

37. When it comes to the FRG Managers, they have made substantial contributions to the Debtors' Estates. In particular, they have been instrumental in negotiating, formulating, and implementing the Restructuring Transactions contemplated under the Global Settlement and Plan. As part of these efforts, they have contributed substantial time and effort—in addition to their daily responsibilities—to the Debtors' Estates and restructuring efforts. As noted above, the OpCo Independent Investigation did not identify any claims that could be asserted against the FRG Managers.

38. This Global Settlement marks a significant compromise of complex and unique issues, including the end of value-destructive litigation, integral to the support and Confirmation of the Debtors' Chapter 11 Cases and the Debtors' successful and prompt emergence from bankruptcy. The Global Settlement is reasonable and beneficial in light of the individual claims being released and the significant benefits from a global resolution of all intercompany litigation. Moreover, the Global Settlement avoids draining the Debtors' Estate resources to the detriment of their Estates, as protracted litigation would likely deplete millions more from the Debtors' Estates that could otherwise be distributed to the Debtors' creditors (as provided under the Global Settlement), and instead maximizes recoveries for all of the Debtors' stakeholders. Accordingly, the Special Committee determined, based on their business judgment, that it was in the best interests of the OpCo Debtors and TopCo to agree to the Global Settlement and to support the Plan.

## **CONCLUSION**

39. Based on the foregoing, it is the judgment of the Independent Directors that the Plan, which includes releases for each of the FRG Managers for Estate claims and causes of action, should be Confirmed.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: May 17, 2025
New York, New York

　　　　　　　　　　　　　　　　　　*/s/ Christopher P. Meyer*
　　　　　　　　　　　　　　　　　　Christopher P. Meyer
　　　　　　　　　　　　　　　　　　Independent Director of Franchise Group, Inc and Freedom VCM Holdings, LLC