## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., et. al., | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Dkt. No. 435** |

### MEMORANDUM OPINION
### (6001 Powerline Road, City of Ft. Lauderdale, Florida)

**General Background**

On December 13, 2024, Franchise Group, Inc. filed its motion seeking approval of
the sale of what it termed certain of "American Freight's assets."[1]  Among those was a
request to assume and assign to AF Newco I, LLC ("Purchaser") certain nonresidential real
estate leases.  At issue here is the sole unresolved objection filed by 6001 Powerline Road,
LLC ("Landlord").[2]

I held an evidentiary hearing on January 21, 2025.  There was no live witness
testimony.  The Lease as well as ten exhibits were admitted and/or considered.[3]  At the

---

[1] Mot. of Debtors for Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets
Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds,
and (B) Granting Related Relief, ECF No. 435 at 2.

[2] The Court approved the sale, generally, on January 10, 2025.  Order (A) Authorizing Debtors to
Sell by Private Sale Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances,
with Such Interests to Attach to the Proceeds, and (B) Grating Related Relief, ECF No. 712.

[3] Decl. of Andrew Behlmann in Further Supp. of Mot. of Debtors for Entry of Order (A) Approving
the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances
with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief, ECF No. 775
("Behlmann Decl.") and Suppl. Decl. of Andrew Behlmann in Further Supp. of Mot. of Debtors for
Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets Free and Clear of Liens,
Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related
Relief, ECF No. 787 ("Suppl. Behlmann Decl.") contain Exhibits 5-14, which I admitted.

conclusion of the hearing, the parties offered, and I required, post-hearing briefing. I have now reviewed those submissions.[4] For the reasons set forth herein, I deny the Motion as it relates to the request to assume and assign the Lease (defined below).


**Factual Findings**

On February 1, 2014, Landlord's predecessor, MARBLE OF THE WORLD, INC., a Florida corporation, entered into a sub-lease agreement ("Lease") with American Freight of South Florida, LLC, a Florida entity, with respect to certain premises located at 6001 Powerline Road, City of Ft. Lauderdale, County of Broward, Florida 33309 ("Premises"). As relevant here, Article VI of the Lease contains a provision generally prohibiting assignment without consent and with one exception:

> T. ASSIGNMENT: Tenant shall not assign, mortgage or encumber this Lease nor sublet or suffer or permit the Premises or any part thereof to be used by others without the prior written consent of Landlord, which consent may be withheld at Landlord's reasonable discretion, in each instance. If Tenant is a corporation, any transfer, sale or other disposition of the controlling stock of the Tenants shall be deemed an assignment of this Lease provided, however, that if the stock of such corporation is regularly traded on any recognized securities market; the transfer of stock will not be prohibited hereby. If this Lease is assigned or if the Premises or any part thereof, is sublet or occupied by anyone other than Tenant whether with or without the written consent of Landlord, Landlord may collect Rent from the assignee, sub-tenant or occupant and apply the net amount collected to the Rents herein reserved, but no assignment, subletting, occupancy or collection shall be deemed a waiver of any covenants or be deemed an acceptance of the assignee, sub-tenant or occupancy, or a release of Tenant from any liability hereunder.[5]

---

[4] Suppl. Br. of Purchaser in Supp. of Debtors' Mot. to Approve Private Sale (Fort Lauderdale Merger-Assignment Issue), ECF No. 848 ("Purchaser's Suppl. Br."); Suppl. Br. of 6001 Powerline Road, LLC in Supp. of Its Obj. to Mot. of Debtors for Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief, ECF No. 884.

[5] Notice of Filing of Ex. A to Obj. of 6001 Powerline Road, LLC to Mot. of Debtors for Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims,

On December 30, 2014, American Freight of South Florida, LLC filed Articles of Conversion in the state of Florida and then became a Delaware limited liability company on January 1, 2015.[6]  On October 1, 2017, American Freight of South Florida, LLC merged into American Freight, Inc., another Delaware entity.[7]  Finally, American Freight, Inc. converted to a Delaware limited liability company, American Freight, LLC, on February 25, 2020.[8]

American Freight, LLC ("Debtor") filed its bankruptcy case on November 3, 2024.[9] It is undisputed that Debtor currently occupies the Premises.  There is no evidence that American Freight of South Florida, LLC, American Freight, Inc. or Debtor sought Landlord's consent to assign the Lease.

**Parties' Arguments**

Landlord's argument is straightforward.  It argues that Debtor is not the named tenant on the Lease, that the Lease does not permit an assignment without its consent, which it did not give, and Debtor, therefore, has no leasehold interest to assume or assign.

Debtor argues that, under Florida law, the multiple conversions of corporate form do not implicate the anti-assignment clause in the Lease.  It cites to *Corporate Express Office*

---

and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief, ECF No. 780, Ex. A 13.

[6] Behlmann Decl. Ex. B.

[7] Behlmann Decl. Ex. C.

[8] Behlmann Decl. Ex. D.

[9] Case No. 24-12527.

*Products*[10] for the proposition that Debtor is a continuing entity such that the assignment clause in the Lease is not implicated.

**Burden of Proof**

It is uncontroversial that a debtor may only assume and assign a lease to which it is a party or in which it has some interest. Accordingly, the burden of proof is on Debtor—or, here, Purchaser[11]—to show that the Lease may be assumed and assigned.[12]

*Discussion*

Initially, there is some disagreement over the relevant state law. The Lease provides that Florida law governs.[13] No party has provided me with a reason to disregard the parties' choice of law—this is a sublease entered into by two Florida entities for space located in Florida. The Lease, therefore, will be interpreted under Florida law.[14]

"In Florida, the general rules of contract construction apply to the construction of a commercial lease contract."[15] The intent of the parties is deduced from the language of the agreement; when unambiguous, the question is "not what intention existed in the minds of

---

[10] *Corp. Express Off. Prods., Inc. v. Phillips*, 847 So. 2d 406 (Fla. 2003).

[11] Debtor did not present at the hearing; rather, Purchaser presented the evidence and made argument.

[12] *Stanley Jacobs Prod., Inc. v. 9472541 Canada Inc. (In re Thane Int'l, Inc.)*, 586 B.R. 540, 546 (Bankr. D. Del. 2018) (holding that the debtor has the burden to comply with § 365).

[13] Lease 21 ("This Lease shall be construed in accordance with and governed by the Laws of the State of Florida.").

[14] *See Welded Constr., L.P. v. The Williams Cos., Inc. (In re Welded Constr., L.P.)*, 609 B.R. 101, 129 (Bankr. D. Del. 2019).

[15] *In re Phillip Watts Enters., Inc.*, 186 B.R. 735, 738 (Bankr. N.D. Fla. 1995) (citing *Stemmler v. Moon Jewelry Co., Inc.*, 139 So. 2d 150 (Fla. Dist. Ct. App. 1962)).

the parties, but what intention is expressed by the language used."[16] Unless the parties

otherwise agree, the right to assign a lease is incidental to the lease.[17] Contractual

"[p]rovisions restricting the power of the lessee to transfer his term are traditionally

construed very strictly and in favor of alienation to the greatest extent possible."[18]

    As set forth below, however, the effect of the entity changes is governed by the law of

the state under which it is organized at the time of the entity change as set forth in their

respective statutes.

### A. The Entity Changes: Florida limited liability company to Delaware limited liability company

    American Freight of South Florida, LLC converted from a Florida limited liability

company to a Delaware limited liability company. This conversion occured in two steps

governed respectively by Florida and Delaware law.

    First, on December 30, 2014, American Freight of South Florida, LLC filed Articles

of Conversion with the Florida Secretary of State.[19] By these Articles of Conversion, it

converted from a Florida limited liability company into a Delaware limited liability

company with that same name (i.e., American Freight of South Florida, LLC). This

conversion is permitted by Florida law as reflected in Florida statute.[20] The "conversion

---

[16] *Stokes v. Victory Land Co.*, 128 So. 408, 410 (Fla. 1930); *Donnelly v. Marriott Corp.*, 266 So. 2d 183, 184 (Fla. Dist. Ct. App. 1972).

[17] *Frissell v. Nichols*, 114 So. 431, 434 (Fla. 1927); *Fernandez v. Vazquez*, 397 So. 2d 1171, 1172 (Fla. Dist. Ct. App. 1981).

[18] *Great S. Aircraft Corp. v. Kraus*, 132 So. 2d 608, 609 (Fla. Dist. Ct. App. 1961).

[19] Behlmann Decl. Ex. B.

[20] Fla. Stat. § 605.1041(1)(b) (2025) ("a domestic limited liability company may become . . . [a] foreign entity that is a limited liability company . . . ."). *See id.* § 605.0102(25) (defining "'foreign,' with respect to an entity" as "an entity whose jurisdiction of formation is a jurisdiction other than

does not require the entity to wind up its affairs and does not constitute or cause the dissolution of the entity."[21] Thus, the conversion does not give to third parties any rights that those third parties "would otherwise have upon a dissolution, liquidation, or winding up of the converting entity."[22] Notwithstanding this conversion, American Freight of South Florida, LLC remained intact as it exited Florida.

Second, on January 1, 2015, American Freight of South Florida, LLC was formed in Delaware.[23] Once those filings are effective, that foreign limited liability company "shall be converted into a domestic limited liability company . . . ."[24] The resulting Delaware limited liability company is deemed to have existed as of the date the foreign limited liability company was formed.[25] The new entity is, under Delaware law, the same entity without interruption.[26] To emphasize the continuity of the entity, the converting entity's property

---

this state."). The Florida limited liability company must approve "a plan of conversion" and file "articles of conversion . . . ." *Id.* §§ 605.1042(1); 605.1045(1).

[21] *Id.* § 605.1046(7).

[22] *Id.* § 605.1046(2).

[23] *See* Behlmann Decl. Ex. C. Delaware law requires a converting "foreign limited liability company" to file similar documents, including a certificate of conversion. Del. Code Ann. tit. 6, § 18-214(b) (2025). *See id.* § 18-101(6) (defining "[f]oreign limited liability company" as "a limited liability company formed under the laws of any state or under the laws of any foreign country or foreign jurisdiction.").

[24] *Id.* § 18-214(d). *See id.* § 18-101(8) (defining "domestic limited liability company" as "a limited liability company formed under the laws of the State of Delaware. . . .").

[25] *See id.* § 18-214(d) ("the existence of the limited liability company shall be deemed to have commenced on the date the other entity commenced its existence in the jurisdiction in which the other entity was first created, formed, incorporated or otherwise came into being.").

[26] *See id.* § 18-214(g) ("for all purposes of the laws of the State of Delaware, the converting other entity shall not be required to wind up its affairs . . . and the conversion shall not be deemed to constitute a dissolution of such other entity. . . . the limited liability company shall be deemed to be the same entity as the converting other entity and the conversion shall constitute a continuation of

"remain[s] vested" in the Delaware limited liability company; there is no transfer of property.[27]

As applied here, when American Freight of South Florida, LLC converted from a Florida limited liability company to a Delaware limited liability company, there remained a single entity throughout the transition. The entity did not wind up under Florida law, and the subsequent Delaware entity was deemed to have existed as of the date the entity came into existence under Florida law. Because only one entity is deemed to have existed, no property transferred between the two entities. Therefore, no assignment of the Lease under Article VI.T took place on account of the conversion. American Freight of South Florida, LLC (the Delaware limited liability company), was the tenant under the Lease as of February 1, 2014.

### B. The Entity Changes: Delaware limited liability company to Delaware corporation

On October 1, 2017, American Freight of South Florida, LLC (the Delaware limited liability company) merged into American Freight, Inc., another Delaware entity.[28]

---

the existence of the converting entity in the form of a domestic limited liability company."). *See also Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 341 (3d Cir. 2013).

[27] Del. Code Ann. tit. 6, § 18-214(f) provides that:
When any conversion shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of the other entity that has converted, and all property, real, personal and mixed . . . as well as all other things and causes of action belonging to such other entity, shall remain vested in the domestic limited liability company to which such other entity has converted and shall be the property of such domestic limited liability company, and the title to any real property vested by deed or otherwise in such other entity shall not revert or be in any way impaired by reason of this chapter . . . . The rights, privileges, powers and interests in property of the other entity . . . shall not be deemed, as a consequence of the conversion, to have been transferred to the domestic limited liability company to which such other entity has converted for any purpose of the laws of the State of Delaware.

[28] Behlmann Decl. Ex. C.

Delaware law allows a "domestic limited liability company" to "convert to a corporation . . . ."[29] The result of this change in corporate form is the same: only one entity exists through the process.[30] As before, since there is continuity of the single entity throughout, there is no transfer of property.[31]

As applied here, once again, because a single entity exists through the conversion from a Delaware limited liability company to a Delaware corporation, no transfer of property occurs. Because no property or rights are transferred, the Lease was not assigned and thus did not run afoul of Article VI.T on account of the conversion. As of October 1, 2017, American Freight, Inc. was the tenant under the Lease.

---

[29] Del. Code Ann. tit. 6, § 18-216(a). Delaware law also provides a mechanism for "a limited liability company" to "convert to a corporation of this State . . . ." Del. Code Ann. tit 8 § 265(a)-(b) (2025). The result is the same under either section.

[30] Del. Code Ann. tit. 6, § 18-216(c) provides that "the conversion of a domestic limited liability company to another entity . . . shall not require such limited liability company to wind up its affairs . . . and the conversion shall not constitute a dissolution of such limited liability company. When a limited liability company has converted to another entity or business form pursuant to this section, for all purposes of the laws of the State of Delaware, the other entity or business form shall be deemed to be the same entity as the converting limited liability company and the conversion shall constitute a continuation of the existence of the limited liability company in the form of such other entity or business form."

[31] Id. § 18-216(h):
When any conversion shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of the limited liability company that has converted, and all property, real, personal and mixed . . . as well as all other things and causes of action belonging to such limited liability company, shall remain vested in the other entity or business form to which such limited liability company has converted and shall be the property of such other entity or business form, and the title to any real property vested by deed or otherwise in such limited liability company shall not revert or be in any way impaired by reason of this chapter . . . . The rights, privileges, powers and interests in property of the limited liability company that has converted . . . shall not be deemed, as a consequence of the conversion, to have been transferred to the other entity or business form to which such limited liability company has converted for any purpose of the laws of the State of Delaware.

## C. *The Entity Changes: Delaware corporation to Delaware limited liability company*

On February 25, 2020, American Freight, Inc. converted into American Freight, LLC, a Delaware limited liability company. As set forth in its Certificate of Conversion, "[a]ll outstanding shares of capital stock of American Freight, Inc. [were] converted into membership interests in American Freight, LLC."[32]

As before, Delaware law similarly allows the converting corporation to persist through the transition: "the converting corporation shall not be required to wind up its affairs . . . and the conversion shall not constitute a dissolution of such corporation."[33] And "the other entity . . . shall, for all purposes of the laws of the State of Delaware, be deemed to be the same entity as the corporation."[34] Again, all property "shall remain vested" in the converted entity, including title to real property, with no property having been deemed

---

[32] Suppl. Behlmann Decl. 3.

[33] Del. Code Ann. tit. 8, § 266(f). Delaware law expressly permits this conversion. *See id.* § 266(g) ("In connection with a conversion of a domestic corporation to another entity pursuant to this section, shares of the stock of the corporation of this State which is to be converted may be exchanged for or converted into cash, property, or shares of stock, rights or securities of, or interests in, the entity to which the corporation of this State is being converted or . . . exchanged for or converted into cash, property, shares of stock, rights or securities of, or interests in, another domestic corporation or other entity or . . . be cancelled.").

[34] *Id.* § 266(h). The full statute provides that:
[w]hen a corporation has been converted to another entity or business form pursuant to this section, the other entity or business form shall, for all purposes of the laws of the State of Delaware, be deemed to be the same entity as the corporation. When any conversion shall have become effective under this section, for all purposes of the laws of the State of Delaware, all of the rights, privileges and powers of the corporation that has converted, and all property, real, personal and mixed . . . as well as all other things and causes of action belonging to such corporation, shall remain vested in the other entity or business form to which such corporation has converted and shall be the property of such other entity or business form, and the title to any real property vested by deed or otherwise in such corporation shall not revert or be in any way impaired by reason of this chapter . . . . The rights, privileges, powers and interest in property of the corporation that has converted . . . shall not be deemed, as a consequence of the conversion, to have been transferred to the other entity or business form to which such corporation has converted for any purpose of the laws of the State of Delaware.

transferred between the entities "for any purpose of the laws of the state of Delaware."[35]

Thus, as before, the mere conversion of the form of the entity does not, in itself, constitute a

transfer of property.[36]

But, unlike with the previous changes in entity form, the analysis does not end here.

Article VI.T also provides that

> [i]f Tenant is a corporation, any transfer, sale or other disposition of the
> controlling stock of the Tenants shall be deemed an assignment of this Lease
> provided, however, that if the stock of such corporation is regularly traded on
> any recognized securities market; the transfer of stock will not be prohibited
> hereby.[37]

This deemed assignment provision has nothing to do with a change in corporate form.

Instead, it addresses a disposition of the controlling stock of a corporation. Accordingly,

Purchaser bears the burden to show that there was no disposition of the controlling stock of

American Freight, Inc. or that at the time of any disposition, the stock was regularly traded

on a recognized securities market.

Anti-assignment provisions are construed narrowly under Florida law, but I am to

give effect to the unambiguous terms of the agreement. In doing so, while I seek to divine

the intent of the parties, a provision that "may have existed in the minds of the parties but

was not reflected in the written lease" does not control because "the intention of the parties

is to be obtained from the unambiguous terms of the contract . . . ."[38] The conversion of

100% of the stock of American Fright, Inc. into membership interests in American Freight,

---

[35] *Id.*

[36] *Id. See also Branmar Theatre Co. v. Branmar, Inc.*, 264 A.2d 526, 528 (Del. Ch. 1970) ("transfer of stock of a corporate lessee is ordinarily not a violation of a clause prohibiting assignment . . . .").

[37] Lease 13.

[38] *Sisco v. Rotenberg*, 104 So. 2d 365, 368 (Fla. 1958).

LLC necessarily constitutes a disposition of controlling stock in the corporation. Further, Purchaser presented no evidence showing that American Freight, Inc.'s stock was publicly traded such that the exception might apply. Accordingly, unless Purchaser's other arguments prevail, Debtor was not the tenant as of February 25, 2020. It, therefore, cannot assume or assign the Lease.

### D. *Purchaser's Remaining Arguments*

Purchaser next argues that Landlord "has been aware of the merger of [American Freight of South Florida, LLC] into [American Freight, Inc.] for at least six years, and likely longer. . . . but has chosen to say nothing while continuing to collect rent from [American Freight, Inc.], and later [Debtor]."[39] Even if I were to accept this as true, Purchaser's conclusions do not follow. First, Purchaser cites Delaware's limitations period for bringing an action for default under a lease contract, but as I have already determined, Florida law governs the Lease. Second, Purchaser makes passing references to the defenses of laches and equitable estoppel, but fails to assert them properly under Florida law, much less adduce the "clear and positive" evidence required to prove latches.[40] Third, anticipating the possibility of an unconsented-to assignment, the Lease allows Landlord to continue to

---

[39] Joint Reply of Debtors and AF Newco, I LLC in Supp. of Mot. of Debtors for Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief, ECF No. 773 ¶ 19.

[40] *See U.S. Bank Home Mortg. v. Boivin*, 403 So. 3d 421, 426 (Fla. Dist. Ct. App. 2025) ("Laches is an affirmative defense, and the burden of proof is on the party asserting it; it must, moreover, be proved by very clear and positive evidence.") (quoting *Gratkowsi v. ASI Preferred Ins. Corp.*, 351 So. 3d 1216, 1221 (Fla. 2d DCA 2022)); *State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004) (explaining the elements of equitable estoppel).

collect rent from an occupant without that collection being deemed an acceptance of the occupant.[41]

Purchaser also argues that, under Florida law, the effect of the conversions does not implicate the anti-assignment clause.[42]  That may be so (as it is in Delaware), but Purchaser does not discuss and cites no cases addressing the disposition of the controlling stock. Further, the cases Purchaser cites are distinguishable.  *Corporate Express Office Products, Inc. v. Phillips* concerns whether the contractual right to enforce a noncompete agreement passes to a successor corporation.[43]  Indeed, as I do, the court looks to relevant statutory provisions (in that case, Florida's statutes governing non-compete agreements, which do not prevent assignments), relevant corporate statutes and caselaw in concluding that the surviving corporation in a merger can enforce a non-compete agreement against an employee of the merged corporation.  Nowhere, however, does the court consider the effect of a provision similar to Article VI.T of the Lease on the ability to enforce the contract.[44]

---

[41] Lease 13.

[42] *See* Purchaser's Suppl. Br. ¶ 19 (The conversions of the entities do not implicate the anti-assignment clause because, under Florida law, "no assignment occurred" as the entities changed form.).

[43] 847 So. 2d 406 (Fla. 2003).

[44] *Amstone v. Bank of New York Mellon* is similarly inapposite.  182 So. 3d 804 (Fla. Dist. Ct. App. 2016) (holding that a mortgagee had standing to pursue foreclosure after merging with the original mortgagee without any discussion of an anti-assignment provision).

**Conclusion**

For the foregoing reasons, Purchaser has not met its burden of proof to show the
Lease can be assumed and assigned. The parties should confer and present a form of Order.

Dated: May 21, 2025

Laurie Selber Silverstein
United States Bankruptcy Judge