IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| In re: | ) Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) Case No. 24-12480 (LSS) |
| Debtors. | ) (Jointly Administered) |
|   | ) **Hearing Date:** June 17, 2025 at 10:30 a.m. (ET) |
|   | ) **Objection Deadline:** June 10, 2025 at 4:00 p.m. (ET) |

**DEBTORS' SIXTEENTH OMNIBUS
MOTION FOR ENTRY OF AN ORDER, PURSUANT TO
SECTIONS 105(a), 365(a), AND 554 OF THE BANKRUPTCY CODE
AUTHORIZING THE DEBTORS TO (I) REJECT CERTAIN UNEXPIRED
LEASES, EFFECTIVE AS OF THE REJECTION DATE; AND
(II) ABANDON PERSONAL PROPERTY**

> **ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE ITS
> NAME AND ITS LEASE IDENTIFIED ON SCHEDULE 1
> TO THE ORDER.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing, but not directing, the Debtors to (i) reject those certain unexpired leases set forth on Schedule 1 to the Order (collectively, the "Rejected Leases"), effective as of May 31, 2025 (the "Rejection Date"), and (ii) abandon, effective as of the Rejection Date, any personal property of the Debtors, including, but not limited to, furniture, fixtures, inventory, and equipment (collectively, the "Personal Property") that remains, as of the Rejection Date, on any of the Rejected Premises (as defined below). In support of this Motion, the Debtors respectfully represent as follows:

**Jurisdiction and Venue**

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot

---

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1454], as applicable.

enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief sought herein are sections 105(a), 365, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

**I.  General**

5. On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [Docket No. 188] (the "Committee"). On January 15, 2025, the Debtors appointed a fee examiner [Docket No. 747].

**II.  The Rejected Leases**

6. The Debtors are a privately held operator and acquirer of franchised and franchisable businesses. As of the Petition Date, the Debtors' business segments included a diverse collection of highly recognized, market-leading, and emerging retail brands, including American Freight, a retail furniture chain selling quality furniture, mattresses, and home appliances. As of the Petition Date, the Debtors had approximately 2,200 total retail store locations (including both corporate-owned and franchised locations), 341 of which were operated by American Freight.

7. Pursuant to the *Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 351], the Debtors, together with Hilco Merchant Resources, LLC, conducted orderly store closing sales (the "Store Closing Sales") at all American Freight store locations, which concluded at all store locations other than those sold to the Purchaser (defined below) on or around December 31, 2024. The Debtors are in the process of winding down the American Freight business other than with respect to the locations sold to the Purchaser (defined below).

8. In parallel with the Store Closing Sales, to ensure that the Debtors maximized the value of American Freight's assets for the Debtors' stakeholders, the Debtors and their advisors solicited interest from potential buyers and acquirors of American Freight's intangible assets, including American Freight's interest in unexpired real property leases. Those efforts resulted in an offer from AF NewCo I, LLC (the "Purchaser") to purchase certain of American Freight's unexpired real property leases and other assets, subject to the Bankruptcy Court's approval. Accordingly, on December 13, 2025, the Debtors filed the *Motion of Debtors for Entry of Order (A) Approving the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with such Interests to Attach to the Proceeds, and (B) Granting Related Relief* [Docket No. 435] (the "Private Sale Motion"), seeking, among other things, to assume and assign to the Purchaser a non-residential real property lease (the "6001 Powerline Lease") for the premises located at 6001 Powerline Road, Fort Lauderdale, FL 33309, to which 6001 Powerline Road, LLC objected.

9. On January 21, 2025, the Bankruptcy Court held a hearing to consider approval of the Private Sale Motion[3] and took under advisement the issue of whether the Debtors could assume and assign the 6001 Powerline Lease to the Purchaser.

10. On May 21, 2025, the Bankruptcy Court issued the *Memorandum Opinion (6001 Powerline Road, City of Ft. Lauderdale, Florida)* [Docket No. 1549] (the "Opinion") denying the Debtors' request to assume and assign the 6001 Powerline Lease to the Purchaser. Notwithstanding certain of the Bankruptcy Court's findings in the Opinion, namely, that American Freight, LLC is not a tenant under the 6001 Powerline Lease and, therefore, cannot assume or assign the 6001 Powerline Lease, through this Motion, the Debtors are seeking to reject the 6001 Powerline Lease out of an abundance of caution. The Debtors and their estates reserve all rights, claims, causes of action, and defenses with respect to the 6001 Powerline Lease.

11. The Rejected Leases—the 6001 Powerline Lease and the Rejected Lease for space located at 2301A Mountain Industrial Blvd. Tucker, GA 30084—are comprised of store spaces that American Freight does not use or occupy now that the Store Closing Sales are completed and the Private Sale Motion with respect to the assumption and assignment of the 6001 Powerline Lease has been denied. Accordingly, the Debtors have determined that the Rejected Leases are not necessary to the Debtors' business affairs, are not otherwise beneficial to their estates, and present burdensome contingent liabilities.[4]

---

[3] On January 10, 2025, the Bankruptcy Court entered the *Order (A) Authorizing Debtors to Sell by Private Sale Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds and (B) Granting Related Relief* [Docket No. 712] and, on January 29, 2025, the Bankruptcy Court entered the *Supplemental Order (A) Authorizing Debtors to Sell by Private Sale Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds and (B) Granting Related Relief* [Docket No. 864], thereby approving the assumption and assignment of all of the leases subject to the relief requested in the Private Sale Motion with the exception of the 6001 Powerline Lease.

[4] The inclusion of any lease on Schedule 1 to the Order is not intended as, nor shall be deemed to constitute, an admission by the Debtors or their estates that such lease or other agreement is or is not an unexpired lease. The Debtors and their estates reserve any and all rights, claims, and defenses with respect to the characterization of

**III.     Abandonment of Any Personal Property at the Rejected Premises**

12.     In connection with the Rejected Leases, it is possible that some Personal Property that was not liquidated during the Store Closing Sales[5] will remain on the premises listed on <u>Schedule 1</u> to the Order (the "<u>Rejected Premises</u>") as of the Rejection Date.  Relative to its value, the Debtors expect that any remaining Personal Property will be difficult or expensive to remove and/or store, such that the economic benefits of removing and/or storing some or all of the Personal Property will be exceeded by the attendant costs thereof.  Therefore, in connection with abandoning and surrendering the Rejected Premises as of the Rejection Date, the Debtors intend to abandon the Personal Property and request the Bankruptcy Court's approval to do so effective as of the Rejection Date.

**Basis for Relief**

**I.     Rejection of the Rejected Leases as of the Rejection Date Reflects the Debtors' Sound Business Judgment.**

13.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in--possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  As courts have held, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting *2 Collier on Bankruptcy* ¶ 365.01[1] (15th ed. 1993)).

---

the Rejected Leases under section 365 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, including, without limitation, any and all rights to argue that the Rejected Leases do not constitute unexpired leases.

[5]   Upon information and belief, the Purchaser may have abandoned certain of its assets at the space leased pursuant to the 6001 Powerline Lease.  The Debtors reserve all rights with respect thereto.

14. The standard applied to determining whether the rejection of an unexpired lease should be authorized is the "business judgment" standard. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"); *see also In re Tayfur,* 599 F. App'x 44, 49–50 (3d Cir. 2015) (extending the standard articulated in *Sharon Steel* to unexpired leases). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

15. The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor-in-possession's business judgment to reject a lease. *See, e.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984), *superseded by statute on other grounds*, Bankruptcy Amendments and Federal Judgeship Act of 1984, sec. 541, § 1113, Pub. L. No. 98-353, 98 Stat. 333 (codified at 11 U.S.C. § 1113); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Riodizio*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

16. Upon finding that the Debtors have exercised their sound business judgment in determining that the rejection of the Rejected Leases is in the best interests of the Debtors and their estates, the Bankruptcy Court should approve the proposed rejection under section 365(a) of the Bankruptcy Code. *See*, *e.g.*, *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease. *See*, *e.g.*, *Sharon Steel Corp.*, 872 F.2d at 39–40. The Debtors have determined that the Rejected Leases are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates, and may present burdensome contingent liabilities. Accordingly, the Debtors' decision to reject the Rejected Leases is an exercise of sound business judgment, and therefore should be approved.

17. To avoid potentially paying any unnecessary expenses related to the Rejected Leases, the Debtors seek to reject the Rejected Leases effective as of the Rejection Date. Courts in this district have routinely authorized a debtor's rejection of unexpired leases and executory contracts as of the date of the filing of the applicable rejection motion. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004); *see also In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (rejection permitted effective as of the date of the motion or the date the premises surrendered). Generally, courts have permitted retroactive rejection of an unexpired lease when the non-debtor party to the agreement was given definite notice of the intention to reject. *See*, *e.g.*, *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 21, 2006). A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition

administrative or other expenses. *See NLRB v. Bildisco & Bildisco*, 465 U.S. at 523 (stating that rejection relates back to the petition date); *Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 140 (D. Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 37-38 (S.D.N.Y. 1995) (affirming bankruptcy court's retroactive approval of lease rejection).

18. The facts in the chapter 11 cases and the balance of the equities favor the Debtors' rejection of the Rejected Leases, effective as of the Rejection Date. Without doing so, the Debtors may incur unnecessary administrative charges for leases that are not necessary to their business affairs or chapter 11 efforts. The Debtors do not need the Rejected Leases to conduct their go-forward businesses. To the contrary, the Rejected Leases are comprised of leases for American Freight stores that are now closed, none of which will generate any value or benefit for the Debtors. Indeed, requiring the Debtors to continue to perform under the Rejected Leases after the Rejection Date could impose onerous obligations on the Debtors and their estates. Without rejecting the Rejected Leases, the Debtors may incur unnecessary administrative expenses and obligations that are not necessary to their ongoing business operations.

19. Moreover, the counterparties to the Rejected Leases will not be unduly prejudiced if the Rejected Leases are rejected effective as of the Rejection Date because, on the Rejection Date, the Debtors have served this Motion on the affected counterparties and/or their agents or representatives by overnight mail and/or electronic mail, as applicable, thereby advising such counterparties that the Debtors intend to reject the Rejected Leases effective as of the Rejection Date.

20. In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Leases under section 365 of the Bankruptcy Code, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors. Accordingly, entry of the Order is appropriate.

## II. Authorizing the Debtors to Abandon Any Personal Property Remaining at the Rejected Premises as of the Petition Date Is Appropriate.

21. In the event that any Personal Property remains on the Rejected Premises as of the Rejection Date, the Debtors request authority to abandon that Personal Property (collectively, the "Abandoned Personal Property"), pursuant to section 554(a) of the Bankruptcy Code, effective as of the Rejection Date.

22. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety, and the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank,* 474 U.S. 494, 501 (1986). Neither of these limitations is relevant in this case.

23. The Debtors submit that the Abandoned Personal Property is of inconsequential value and expensive or burdensome to the Debtors' estates to remove. Among other things, the Debtors believe that the cost of retrieving, storing, marketing, and reselling the Abandoned Personal Property—to the extent there is any Abandoned Personal Property belonging to the Debtors in the Rejected Premises—outweighs any recovery that the Debtors and their estates could reasonably hope to attain for such Abandoned Personal Property. Moreover, the Debtors have

determined that the Abandoned Personal Property does not pose a threat to public health or safety. As a result, the Debtors have determined, in their business judgment, that the abandonment of any such Abandoned Personal Property, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors.

## Reservation of Rights

24. Nothing in the Order or the Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

25. Nothing in the Order or this Motion shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of any Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

26. Nothing in the Order or this Motion shall create, nor is intended to create any rights in favor of or enhance the status of any claim held by any party.

## Notice

27. Notice of this Motion has been or will be provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel to the

HoldCo Lenders; (vii) counsel to DIP Agent; (viii) counsel to the DIP Lenders; and (ix) the counterparties to the Rejected Leases and their counsel, if known (by overnight mail and/or electronic mail).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

**Conclusion**

WHEREFORE, the Debtors request entry of the Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: May 31, 2025
Wilmington, Delaware

 /s/ Shella Borovinskaya

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Edmon L. Morton (Del. No. 3856) <br> Matthew B. Lunn (Del. No. 4119) <br> Allison S. Mielke (Del. No. 5934) <br> Shella Borovinskaya (Del. No. 6758) <br> Rodney Square <br> 1000 North King Street <br> Wilmington, Delaware 19801 <br> Telephone:  (302) 571-6600 <br> Facsimile:  (302) 571-1253 <br> Email:  emorton@ycst.com <br> mlunn@ycst.com <br> amielke@ycst.com <br> sborovinskaya@ycst.com | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) <br> Nicole L. Greenblatt, P.C. (admitted *pro hac vice*) <br> Derek I. Hunter (admitted *pro hac vice*) <br> 601 Lexington Avenue <br> New York, New York 10022 <br> Telephone:  (212) 446-4800 <br> Facsimile:  (212) 446-4900 <br> Email:  joshua.sussberg@kirkland.com <br> nicole.greenblatt@kirkland.com <br> derek.hunter@kirkland.com <br> <br> and - <br> <br> Mark McKane, P.C. (admitted *pro hac vice*) <br> 555 California Street <br> San Francisco, California 94104 <br> Telephone:  (415) 439-1400 <br> Facsimile:  (415) 439-1500 <br> Email:  mark.mckane@kirkland.com |
| *Co-Counsel to the Debtors and Debtors in Possession* | *Co-Counsel to the Debtors and Debtors in Possession* |