## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FRANCHISE GROUP, INC., *et al.,*[1] | ) | Case No. 24-12480 (LSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 1454** |
| | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) CONFIRMING THE NINTH AMENDED JOINT CHAPTER 11 PLAN OF FRANCHISE GROUP, INC. AND ITS DEBTOR AFFILIATES AND (II) APPROVING THE GLOBAL SETTLEMENT AND RELEASE OF CLAIMS AND CAUSES OF ACTION BY AND AMONG THE GLOBAL SETTLEMENT PARTIES

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722).  The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] Capitalized terms used but not otherwise defined herein (this "Confirmation Order") shall have the meanings ascribed to them later in this Confirmation Order or in the Plan (as defined herein).  The rules of interpretation set forth in Article I of the Plan shall apply to this Confirmation Order.

a.    entered into that certain Restructuring Support Agreement, dated as of November 1, 2024, by and among the Debtors and the Consenting First Lien Lenders (as may be amended from time to time in accordance with its terms, the "Restructuring Support Agreement");

b.    commenced, on November 3, 2024 (the "Petition Date"), these chapter 11 cases (these "Chapter 11 Cases") by Filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

c.    Filed, on November 4, 2024, the *Declaration of David Orlofsky in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration");

d.    continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

e.    Filed, on November 11, 2024, (a) the *Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 150], (b) the *Disclosure Statement for the Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 151], and (c) the *Debtors' Motion for an Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 152];

f.    obtained, on December 6, 2024, entry of (a) the *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and (B) Approving the Form and Manner of Notice Thereof* [Docket No. 354] (the "Bar Date Order") and (b) the *Final Order (I) Authorizing Debtors to (A) Pay Certain Prepetition Employment Obligations and Compensation Obligations and (B) Maintain the Compensation Obligations and Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 348];

g.    obtained, on December 11, 2024, entry of (a) the *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 414] (the "Final DIP Order") and (b) the *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers & Logistics Providers, and 503(b)(9) Claimants; and (II) Granting Related Relief* [Docket No. 410];

h.      obtained, on December 16, 2024, entry of the *Order (I) (A) Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Granting Related Relief* [Docket No. 444] (the "Bidding Procedures Order");

i.      caused, on December 19, 2024, the Sale Hearing Notice (as defined in the Bidding Procedures Order) to be published in the *New York Times* (National Edition), as evidenced by the *Certificate of Publication* [Docket No. 593];

j.      Filed, on January 3, 2025, (a) the *First Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 654] and (b) the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 655];

k.      Filed, on February 3, 2025, (a) the *Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 894] and (b) the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 895];

l.      Filed, on February 4, 2025, the *Notice of Adjournment of Auction* [Docket No. 916];

m.      Filed, on February 5, 2025, (a) the *Third Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 925] and (b) the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 926];

n.      Filed, on February 10, 2025, the *Notice of Further Adjournment of Auction* [Docket No. 948];

o.      Filed, on February 12, 2025, (a) the *Fourth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 957] and (b) the *Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Affiliated Debtors* [Docket No. 958];

p.      Filed, on February 12, 2025, the *Notice of Cancellation of Auction* [Docket No. 961];

q.      Filed, on February 18, 2025, (a) the *Fifth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 996] and (b) the *Disclosure Statement for the Fifth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 995];

r.      Filed, on February 20, 2025, (a) the *Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1015] and (b) the *Disclosure Statement for the Sixth Amended Joint Chapter 11 Plan of Franchise*

*Group, Inc. and Its Debtor Affiliates* [Docket No. 1014] (as amended, supplemented, or modified from time to time, the "Disclosure Statement");

s.      obtained, on February 21, 2025, entry of the *Order (I) Approving the Disclosure Statement; (II) Approving the Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 1019] (the "Disclosure Statement Order"), following a hearing (the "Disclosure Statement Hearing"), which, among other things, approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code, the solicitation and voting procedures (the "Voting Procedures"), the Confirmation Hearing Notice, and other related forms and ballots (the foregoing materials, collectively, the "Solicitation Package");

t.      caused the Solicitation Package and the *Notice of Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Voting Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Solicitation Materials and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* (the "Confirmation Hearing Notice") to be distributed on or before February 28, 2025, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1383] (the "Solicitation Affidavit");

u.      Filed and caused to be served, on February 21, 2025, the Confirmation Hearing Notice [Docket No. 1021], and caused the Confirmation Hearing Notice to be published on the Debtors' case website;

v.      caused, on February 25, 2025, the Confirmation Hearing Notice to be published in *The Wall Street Journal* as evidenced by the *Affidavit of Publication in the Wall Street Journal* [Docket No. 1030] (the "Publication Affidavit");

w.      Filed and caused to be served, on March 27, 2025, the *Notice of Filing of Plan Supplement* [Docket No. 1182] (as amended, modified, or supplemented from time to time, the "Initial Plan Supplement"), as evidenced by the *Affidavit of Service* [Docket No. 1311];

x.      Filed, on April 3, 2025, the *Seventh Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1233];

y.  obtained, on April 7, 2025, entry of the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1253], extending the Debtors' exclusive period to file a chapter 11 plan and solicit acceptances thereof to June 2, 2025, and July 31, 2025, respectively;

z.  Filed, on April 17, 2025, the *Notice of Global Settlement* [Docket No. 1290];

aa.  Filed, on April 25, 2025, the (a) *Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1312] (the "Eighth Amended Plan") and (b) *Disclosure Statement Supplement for the Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1314] (as amended, supplemented, or modified from time to time, the "Disclosure Statement Supplement");

bb.  obtained, on April 26, 2025, entry of the *Order (I) Approving the Form, Content, and Manner of Notice of the Disclosure Statement Supplement, (II) Approving Certain Deadlines and Procedures in Connection with Confirmation, and (III) Granting Related Relief* [Docket No. 1322] (the "Disclosure Statement Supplement Order," and together with the Disclosure Statement Order, the "Disclosure Statement Orders"), which, among other things, approved (a) the Disclosure Statement Supplement as containing adequate information under section 1125 of the Bankruptcy Code, (b) certain modified dates and deadlines in connection with Confirmation, and (c) the distribution of a supplemental solicitation package containing the Disclosure Statement Supplement and the Eighth Amended Plan (together, the "Supplemental Solicitation Package");

cc.  caused the Supplemental Solicitation Package to be distributed on or before April 29, 2025, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the Disclosure Statement Supplement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1448] (the "Disclosure Statement Supplement Affidavit," and together with the Solicitation Affidavit and the Publication Affidavit, the "Affidavits");

dd.  Filed and caused to be served, on April 30, 2025, the *Notice of Filing of Amended Plan Supplement* [Docket No. 1371] (the "First Amended Plan Supplement"), as evidenced by the *Certificate of Service* [Docket No. 1444];

ee.  obtained, on May 7, 2025, entry of the *Order (I) Authorizing Franchise Group Intermediate V, LLC to Enter into and Perform Its Obligations Under the Asset Purchase Agreement, (II) Approving the Sale of Certain Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (III) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1429] (the "Sale Order");

ff.    Filed, on May 14, 2025, the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1454] (as amended, modified, or supplemented from time to time the "Plan"[3]), attached hereto as **Exhibit A**;

gg.    Filed, on May 14, 2025, the *Debtors' Memorandum of Law (I) In Support of an Order (A) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (B) Approving the Global Settlement and Release of Claims and Causes of Action by and Among the Global Settlement Parties, and (II) Omnibus Reply to Objections Thereto* [Docket No. 1457] (the "Confirmation Brief");

hh.    Filed on May 14, 2025, the *Declaration of Craig Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Sixth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1458] (as may be amended, modified, or supplemented from time to time, the "Voting Report");

ii.    Filed, on May 14, 2025, (a) the *Declaration of David Orlofsky in Support of an Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1465] (the "Orlofsky Confirmation Declaration"), (b) the *Declaration of Christopher Grubb in Support of an Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1466] (the "Grubb Confirmation Declaration"), (c) the *Declaration of Christopher P. Meyer in Support of and Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1467], (d) the *Declaration of Michael J. Wartell in Support of the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1468] (the "Wartell Confirmation Declaration"), and (e) the *Declaration of Jeffrey W. Kopa in Support of an Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1471] (the "Kopa Confirmation Declaration,");

jj.    Filed, on May 14, 2025, the *Debtors' Second Omnibus (Nonsubstantive) Objection to Proofs of Claim* [Docket No. 1478];

kk.    Filed, on May 17, 2025, the *Amended Declaration of Christopher P. Meyer in Support of and Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Granting Related Relief* [Docket No. 1514] (the "Meyer Confirmation Declaration," and together with the Orlofsky Confirmation Declaration, the Grubb Confirmation Declaration, the

---

[3]    For the avoidance of doubt, nothing in this Confirmation Order is intended to limit or restrict TopCo's ability to seek Confirmation of the Plan (or an alternative chapter 11 plan) with respect to TopCo pursuant to a separate or supplemental order, as applicable.

Wartell Confirmation Declaration, and the Kopa Confirmation Declaration, the "Confirmation Declarations");

ll.     Filed and caused to be served, on May 19, 2025, the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 1518] (the "Second Amended Plan Supplement," and together with the Initial Plan Supplement and the First Amended Plan Supplement, the "Plan Supplement")], as evidenced by the *Affidavit of Service* [Docket No. 1541]; and

mm.    Filed and caused to be served, on May 21, 2025, the *Notice of the Occurrence of Sale Closing on May 19, 2025* [Docket No. 1554].

This Bankruptcy Court having:

a.      entered, on February 21, 2025, the Disclosure Statement Order;

b.      entered, on April 26, 2025, the Disclosure Statement Supplement Order;

c.      set May 7, 2025, at 5:00 p.m. (prevailing Eastern Time) as the deadline to vote to accept or reject the Plan and opt in to the Third-Party Releases (the "Voting Deadline");

d.      set May 7, 2025, at 5:00 p.m. (prevailing Eastern Time) as the deadline for Filing objections to the Plan (the "Objection Deadline");

e.      set May 20, 2025, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

f.      considered the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting Report, the Confirmation Hearing Notice, and the Affidavits;

g.      reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Articles XII and XV of the Plan;

h.      considered the Restructuring Transactions and the Global Settlement incorporated and described in the Plan, including in the Plan Supplement;

i.      held the Confirmation Hearing;

j.      heard the statements and arguments made by counsel and parties in interest in respect of Confirmation;

k.      considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding Confirmation and having admitted the same into evidence at the Confirmation Hearing;

l.      overruled, including for any reasons stated on the record of the Confirmation Hearing, any and all objections to Confirmation of the Plan with respect to all Debtors except for TopCo (collectively, the "<u>Confirmation</u> Debtors") and approval of the Global Settlement, and all statements and reservations of rights not consensually resolved, waived, settled, or withdrawn unless otherwise indicated herein or on the record at the Confirmation Hearing;

m.     considered the pleadings and other documents Filed and all evidence and arguments proffered or otherwise presented at or with respect to the Confirmation Hearing; and

n.      issued, at a hearing on May 28, 2025, at 3:00 p.m. (prevailing Eastern Time), a bench ruling to confirm the Plan with respect to the Confirmation Debtors and approve the Global Settlement with respect to all Debtors (including TopCo).

NOW, THEREFORE, the Bankruptcy Court having found that the Confirmation Hearing Notice and the opportunity for any party in interest to object to Confirmation or approval of the Global Settlement have been adequate and appropriate as to all parties affected or to be affected by the Plan and the Restructuring Transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents Filed in support of Confirmation of the Plan (with respect to the Confirmation Debtors) and approval of the Global Settlement, and all evidence proffered or adduced by counsel at the Confirmation Hearing, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of Law, and orders:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Findings of Fact and Conclusions of Law**

1.     The findings of fact and the conclusions of Law set forth and incorporated in this Confirmation Order and on the record of the Confirmation Hearing (which are incorporated into this Confirmation Order by this reference) constitute the Bankruptcy Court's findings of fact and

conclusions of Law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of Law, shall also constitute a conclusion of Law. Each conclusion of Law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

2. As set forth by the Bankruptcy Court at a hearing regarding Confirmation of the Plan held on May 28, 2025, at 3:00 p.m. (prevailing Eastern Time), the Plan is confirmed with respect to the Confirmation Debtors (*i.e.*, all Debtors except for TopCo) and the Global Settlement is approved with respect to all Debtors, including TopCo. As set forth herein, the Debtors (including TopCo) are authorized to take all actions as may be necessary or appropriate to effectuate the Global Settlement, including, without limitation, the contribution of the TopCo Cash Allocation by TopCo to the Litigation Trust, without the need for further approval by the Bankruptcy Court.

**B.    Jurisdiction, Venue, and Core Proceeding**

3. The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be approved and confirmed. Venue is proper before the Bankruptcy Court pursuant to sections 1408 and 1409 of the Judicial Code. Confirmation of the Plan and approval of the Global Settlement are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

**C.    Eligibility for Relief**

4.    The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.    Commencement and Joint Administration of These Chapter 11 Cases**

5.    On the Petition Date, the Debtors commenced these Chapter 11 Cases by Filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On November 5, 2024, the Bankruptcy Court entered the *Order Authorizing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 88] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 15, 2025, the Debtors appointed a fee examiner [Docket No. 747].

**E.    Creditors' Committee Appointment**

6.    On November 19, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 188].

**F.    Objections**

7.    Any resolution of objections to Confirmation or approval of the Global Settlement explained on the record at the Confirmation Hearing is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved Cure Disputes and objections to the assumption or rejection of Executory Contracts and Unexpired Leases), if any, related to Confirmation with respect to the Confirmation

Debtors or approval of the Global Settlement with respect to all Debtors are overruled on the merits.

**G.      Plan Supplement**

8.      The documents identified in the Plan Supplement were Filed as required and notice of such documents was (a) appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and (b) in compliance with the provisions of the Plan, the Disclosure Statement Orders, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth therein), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date in accordance with the terms of the Plan, this Confirmation Order, the Sale Order, the Bankruptcy Code, and the Bankruptcy Rules.

**H.      Disclosure Statement Orders**

9.      On February 21, 2025, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) fixed the Voting Record Date as January 31, 2025, (c) approved the Solicitation Package and procedures for distribution thereof, (d) approved the form of the Ballots (as defined

in the Disclosure Statement), (e) approved the Voting Procedures, and (f) set the Confirmation Hearing and established related notice and objection procedures.

10.    On April 26, 2025, the Bankruptcy Court entered the Disclosure Statement Supplement Order, which, among other things, (a) approved the Disclosure Statement Supplement, (b) approved certain modified dates and deadlines, including May 7, 2025, at 5:00 p.m. (prevailing Eastern Time) as the Objection Deadline and the Voting Deadline, and May 20, 2025, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing, and (c) approved the distribution of the Supplemental Solicitation Package.  The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims or Equity Interests in the Voting Classes to have made an informed decision to accept or reject the Plan.

**I.    Solicitation and Notice**

11.    The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

12.    As described in the Voting Report, the Solicitation Package and the Supplemental Solicitation Package were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Orders.  The solicitation of votes on the Plan complied with the Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with sections 1125 and 1126 and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, Laws, and regulations.

13.     As described in the Voting Report and the Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for Filing and serving objections to Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable Law and rules, and no other or further notice is or shall be required.

**J.     Service of Opt-In Form**

14.     The process described in the Voting Report that the Debtors and the Claims Agent followed to identify the relevant parties on which to serve the applicable Ballot or notice of non-voting status and Opt-In Form (as defined in the Disclosure Statement) and to distribute the notice of non-voting status and Opt-In Form (a) is consistent with practices used in other complex chapter 11 cases and (b) was reasonably calculated to ensure that each Holder of Claims and Equity Interests in each Class was informed of its ability to opt in to the Third-Party Release and the ramifications for electing not to timely do so.  For the avoidance of doubt, any party that elected in the Ballot or Opt-In Form to opt in to the Third-Party Release and timely submitted such election to the Claims Agent in accordance with the Voting Procedures or the notice of non-voting status, as applicable, prior to any deadline to submit a Ballot, whether under any original or extended deadline, shall be a Released Party and a Releasing Party under the Plan.

**K.     Voting Report**

15.     Prior to the Confirmation Hearing, the Debtors Filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Disclosure Statement Orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, Laws, and regulations.

16.     As set forth in the Plan, Holders of Claims in Classes 3, 4, 5, 6, 7, 8-A, and 8-B (collectively, the "Voting Classes") for each of the Confirmation Debtors were eligible to vote on the Plan pursuant to the Voting Procedures.  In addition, Holders of Claims in Classes 1 and 2 are Unimpaired and conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Depending on whether such Claims and Equity Interests are reinstated or canceled and released without any distribution an account of such Claims or Equity Interests, Holders of Claims and Equity Interests in Classes 9 and 12 are either Unimpaired or Impaired and will be either conclusively deemed to have accepted or conclusively deemed to have rejected the Plan, and in either scenario are not entitled to vote on the Plan.  Holders of Claims in Class 10 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

17.     As evidenced by the Voting Report, Class 3 (Prepetition ABL Loan Claims), Class 4 (Prepetition First Lien Loan Claims), Class 5 (Prepetition Second Lien Loan Claims), certain subclasses of Class 6 (OpCo General Unsecured Claims),[4] Class 7 (Prepetition HoldCo Loan Claims), Class 8-A (Freedom HoldCo General Unsecured Claims), and Class 8-B (HoldCo Receivables General Unsecured Claims) voted to accept the Plan in sufficient number and in a sufficient amount to constitute accepting Classes.

**L.    Bankruptcy Rule 3016**

18.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately Filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

---

[4]   Class 6 voted to reject the Plan with respect to Debtor entities American Freight FFO, LLC, American Freight Franchising, LLC, American Freight Group, LLC, American Freight Management Company, LLC, American Freight Outlet Stores, LLC, Buddy's Franchising and Licensing LLC, Buddy's Newco, LLC, American Freight Franchisor, LLC, American Freight Holdings, LLC, Franchise Group Intermediate B, LLC, and Franchise Group Intermediate Holdco, LLC.

**M.    Burden of Proof**

19.    The Debtors, as proponents of the Plan and the Global Settlement, have met their burden of proving the applicable elements of sections 1123, 1129(a), and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable, by a preponderance of the evidence or the applicable evidentiary standard for Confirmation of the Plan (with respect to the Confirmation Debtors) and approval of the Global Settlement (with respect to all Debtors).

**N.    Modifications to the Plan**

20.    Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan after solicitation of the Plan, as reflected in the Plan or in this Confirmation Order (including any modifications announced on the record of the Confirmation Hearing) (collectively, the "Plan Modifications"), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim under the Plan.  After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such Plan Modifications shall be binding and shall apply with respect to the Plan.  All Holders of Claims

who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Equity Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

O.    **Approval of the Global Settlement**

21.    The Plan embodies the terms of a global settlement (the "Global Settlement") by and among the Debtors (including TopCo), the Creditors' Committee, the Ad Hoc Group consisting of Required Consenting First Lien Lenders, and the Freedom Lender Group (collectively, the "Global Settlement Parties").  The terms of the Global Settlement represent a good-faith compromise and settlement of numerous issues and disputes between and among the Global Settlement Parties.  Specifically, pursuant to the Global Settlement, all Intercompany Claims between and among TopCo, the Freedom HoldCo Debtors, the OpCo Debtors, and all other Debtors shall be settled, waived, and/or released, including but not limited to (a) all Intercompany Claims by and between the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors, (b) the allocation of Professional Fee Claims among the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors, and (c) the allocation of approximately $13.25 million in Cash from TopCo to the funding of the Litigation Trust; provided that (without limiting the releases of the Released Parties) there shall not be any third-party beneficiaries of the inter-Debtor releases.  The release and waiver of Intercompany Claims against TopCo shall not impair the Litigation Trust's rights or ability to commence, prosecute, or settle any Permitted Litigation Claims against any party that is not released under the Plan, including a subsequent transferee of an Avoidance Action from another Debtor to TopCo.  The Global Settlement is designed to achieve a reasonable, effective, and value-maximizing resolution of the Chapter 11 Cases.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, as of

the Effective Date, of the Global Settlement pursuant to Bankruptcy Rule 9019 with respect to each of the Debtors (including TopCo) and, among other things, the full and final settlement and release of any Claims and Causes of Actions identified in the Freedom HoldCo Independent Director Report as actionable against any Released Party; <u>provided</u> that the releases of the individuals identified in the Freedom HoldCo Independent Director Report shall not be construed to limit the Litigation Trust's pursuit of the D&O Liability Insurance Policies with respect to Permitted Litigation Claims. Pursuant to the Global Settlement, TopCo shall transfer or cause to be transferred, directly or indirectly, the TopCo Cash Allocation (defined in the Plan as all Cash belonging to TopCo, consisting of approximately $13.25 million) to the Litigation Trust Escrow Account, and such funds shall vest in the Litigation Trust free and clear of all Claims, Liens, encumbrances, or interests. Pursuant to the Global Settlement, no Holder of any Claims (if any) or Equity Interests in TopCo shall have or retain any right, entitlement, or interest to the TopCo Cash Allocation.

**P.     Approval of the New ABL Facility and the Take-Back Debt Facility**

22.     The New ABL Facility and the Take-Back Debt Facility are (a) essential elements of the Plan, (b) necessary for Confirmation and the consummation of the Plan by the Confirmation Debtors, and (c) critical to the overall success and feasibility of the Plan and the operations of the Reorganized Debtors.[5] The economic terms of the New ABL Facility and the Take-Back Debt Facility are contained in the Plan Supplement. Entry into both the New ABL Facility and the Take-Back Debt Facility is in the best interests of the Debtors, their Estates, and all Holders of Claims or Equity Interests. The Debtors have exercised reasonable business judgment in determining to enter into both the New ABL Facility and the Take Back Debt Facility and have

---

[5]     TopCo shall not be a Reorganized Debtor for purposes of this Confirmation Order.

provided sufficient and adequate notice of the material terms of the New ABL Facility and the Take-Back Debt Facility in the Plan Supplement.  The terms and conditions of the New ABL Facility and the Take-Back Debt Facility, as described in the Plan Supplement, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with fiduciary duties, are supported by reasonably equivalent value and fair consideration, and have been negotiated in good faith and at arm's length.  Any credit extended, loans made or deemed made, Liens granted, or fees paid or to be paid pursuant to the New ABL Facility and the Take-Back Debt Facility, as applicable, are deemed to have been extended, issued, granted, and made or deemed made in good faith and for legitimate business purposes, shall not be subject to recharacterization for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other avoidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law.  Each party to the New ABL Facility and the Take-Back Debt Facility, as applicable, may rely upon the provisions of this Confirmation Order in closing the New ABL Facility and the Take-Back Debt Facility, as applicable.

**Q.     Issuance of Reorganized Common Equity**

23.     On the Effective Date, subject to the terms and conditions of the Plan, New TopCo shall be authorized to issue the Reorganized Common Equity to Holders of Prepetition First Lien Loan Claims, Holders of Allowed Prepetition Second Lien Loan Claims, and certain Holders of DIP Claims, pursuant to the terms and conditions of the Plan, the New Organizational Documents, and the DIP Credit Agreement, which terms shall be deemed valid, binding, and enforceable against each Entity receiving Reorganized Common Equity.  The issuance of Reorganized Common Equity pursuant to the Plan is authorized without the need for further limited liability company or corporate action and without any further action by any Holder of a Claim or Equity Interest, and all of the Reorganized Common Equity issued or issuable pursuant to the Plan shall

be duly authorized, validly issued, fully paid, and nonassessable, shall not be subject to recharacterization for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other avoidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law.  Each distribution and issuance referred to in <u>Article VII</u> of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents.  Any Entity's acceptance of Reorganized Common Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms.

**R.    Litigation Trust**

24.    As set forth in <u>Section 7.10</u> of the Plan, in connection with and pursuant to the Global Settlement, on the Effective Date of the Confirmation Debtors, (a) the applicable Confirmation Debtors shall execute the Litigation Trust Agreement and shall take such steps as necessary to establish the Litigation Trust in accordance with the terms of the Plan (including the Plan Supplement and the Litigation Trust Agreement contained therein) and the beneficial interests therein shall be for the benefit of (i) Holders of Allowed Prepetition First Lien Loan Claims, (ii) Holders of Allowed Prepetition Second Lien Loan Claims, (iii) Holders of Allowed OpCo General Unsecured Claims, (iv) Holders of Allowed Freedom HoldCo General Unsecured Claims, and (v) Holders of Allowed Prepetition HoldCo Loan Claims, with each such party being a beneficiary of the Litigation Trust, and (b) the applicable Debtors, including TopCo, shall irrevocably transfer, cause to be transferred, and shall be deemed to have irrevocably transferred, all of their rights, title and interest in the Litigation Trust Assets to the Litigation Trust for the benefit of all beneficiaries of the Litigation Trust in accordance with the terms of the Plan, the

Litigation Trust Agreement, and the Global Settlement.  Pursuant to the Global Settlement, TopCo shall transfer or cause to be transferred to the Litigation Trust, directly or indirectly, the TopCo Cash Allocation, which amount shall be funded by TopCo to the Litigation Trust Escrow Account and vest in the Litigation Trust free and clear of all Claims, Liens, encumbrances, or interests. Pursuant to sections 363 and 1141 of the Bankruptcy Code, as applicable, and Bankruptcy Rule 9019, such Litigation Trust Assets shall automatically vest in the Litigation Trust free and clear of all Claims, Liens, encumbrances, or interests, except as otherwise set forth in the Plan or the Litigation Trust Agreement.

25.    The (a) establishment, purpose, and administration of the Litigation Trust, (b) appointment, rights, and powers, of the Litigation Trustee and the Litigation Trust Advisory Board, and (c) treatment of the Litigation Trust for federal income tax purposes, among other things, shall be governed by the Litigation Trust Agreement.  On and after the Effective Date, the Litigation Trustee shall be authorized, in accordance with the terms of the Plan and the Litigation Trust Agreement, to take such other actions as may be necessary or desirable to make any distributions on account of any Litigation Trust Assets.  The granting of the Litigation Trust Units shall not be subject to recharacterization for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other avoidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law.  The Litigation Trustee, in consultation with the Litigation Trust Advisory Board, shall have the sole discretion with respect to the prosecution, funding, and settlement or other resolution of the Permitted Litigation Claims and the distribution of property of the Litigation Trust, subject to the Litigation Trust Units Allocations and the terms of the Plan and the Litigation Trust Agreement.

26.     To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy Law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Reorganized Debtors on behalf of the Litigation Trust.  The Litigation Trustee shall be deemed to have been designated as a representative of the Reorganized Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Reorganized Debtors for the benefit of the Litigation Trust Beneficiaries, including any Litigation Trust Assets deemed to have been retained by the Reorganized Debtors on behalf of the Litigation Trust until such transfer restrictions are removed or the Reorganized Debtors receive or become entitled to receive the net proceeds of such Litigation Trust Assets that can be distributed.

**S.     Compliance with the Bankruptcy Code (11 U.S.C. § 1127)**

27.     The Debtors have complied with section 1127 of the Bankruptcy Code with respect to the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**T.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

28.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code except as set forth herein with respect to TopCo.

**a)     Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

29.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

i)      **Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

30.      The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. Article IV of the Plan provides for the separate classification of Claims and Equity Interests into 14 Classes based on differences in the legal nature or priority of such Claims and Equity Interests (other than DIP Claims, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims, each of which are addressed in Article III of the Plan and are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan. The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Equity Interests. In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

ii)      **Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).**

31.      The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article IV of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired. Article IV of the Plan also specifies the treatment of each Impaired Class under the Plan with respect to the Confirmation Debtors, which are Classes 3, 4, 5, 6, 7, 8-A, 8-B, and 10. Holders of Claims in Class 10 are Impaired under the Plan and are conclusively deemed to have rejected the Plan. Holders of Claims and Equity Interests in Classes 9 and 12 are deemed to have accepted or deemed

to have rejected the Plan depending on whether such Claims and Equity Interests are reinstated or canceled and released without any distribution an account of such Claims or Equity Interests.

### iii)    No Discrimination (11 U.S.C. § 1123(a)(4)).

32.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article IV of the Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### iv)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

33.    The provisions of the Plan, including Article VII thereof, together with the exhibits and attachments thereto (including the Plan Supplement), satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code and provide in detail the adequate and proper means for the implementation of the Plan, including, among other things:  (a) the good faith compromise and settlement of Claims and Equity Interests in connection with the Global Settlement; (b) the authorization for the Debtors, the Reorganized Debtors, or New TopCo, as applicable, to take all actions necessary to effectuate the Plan and the Restructuring Transactions, including, without limitation, the Plan Equitization Transaction and the Partial Sale Transaction; (c) the funding and sources for distributions under the Plan, including Cash; (d) the consummation of the New ABL Facility; (e) the consummation of the Take-Back Debt Facility; (f) the issuance and distribution of Reorganized Common Equity; (g) the adoption of the New Organizational Documents; (h) the consummation of various corporate or other similar transaction steps necessary to implement the new corporate and organizational structure upon emergence; (i) the formation of the Litigation Trust, the execution of the Litigation Trust Agreement, the appointment of the Litigation Trustee and the Litigation Trust Advisory Board, and the transfer of the Litigation Trust Assets, including

the Permitted Litigation Claims and the Litigation Trust Escrow Amount, to the Litigation Trust (including the transfer by TopCo of the TopCo Cash Allocation to the Litigation Trust pursuant to the Global Settlement); (j) the authorization, approval, and entry into corporate actions under the Plan; (k) the creation of the Professional Fee Escrow Account; (l) the appointment of the New Boards; (m) the preservation and vesting of the Reorganized Debtors' Retained Causes of Action in the Reorganized Debtors; (n) the preservation of the D&O Liability Insurance Policies in accordance with the terms set forth in the Plan; (o) except as otherwise set forth in the Plan, the continued corporate existence of the Debtors; (p) the cancellation of existing agreements and Equity Interests; (q) the assumption of certain employment obligations; and (r) the effectuation and implementation of further transactions contemplated by the Plan, including as may be necessary or appropriate to Reinstate Claims or Equity Interests or render Claims or Equity Interests Unimpaired, as provided for under the Plan.  In addition to these core transactions, the Plan sets forth the other critical mechanics of the Debtors' emergence, such as the vesting of Estate assets of the Confirmation Debtors in the Reorganized Debtors, the assumption of Executory Contracts and Unexpired Leases, and the settlement of certain Claims and Equity Interests.  The precise terms governing the execution of certain of these transactions are set forth in the applicable Definitive Documents or forms of agreements included in the Plan Supplement.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

> **v)**    **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**

34.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code because Article VII of the Plan and the New Organizational Documents prohibit the issuance of new non-voting equity securities to the extent prohibited under section 1123(a)(6) of the Bankruptcy Code and provide for an appropriate distribution of voting power among the classes of securities possessing voting power.  To the extent the beneficial interests in the Litigation Trust

are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities Laws, such beneficial interests shall not be non-voting equity securities.    Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### vi)    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

35.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article VII of the Plan provides that, as of the Effective Date, the members of each of the Debtors' existing boards shall be deemed to have resigned from such board, and all of the initial members of the New Boards shall be appointed in accordance with the New Organizational Documents. The initial members of the New Boards were identified in Exhibit A of the Plan Supplement [Docket No. 1518].  Each such member of the New Boards shall serve from and after the Effective Date pursuant to the terms of the applicable New Organizational Documents or the applicable Organizational Documents of such Reorganized Debtor or New TopCo, as applicable, and may be replaced or removed in accordance therewith, as applicable.

36.    The foregoing manner of selection of the officers, directors, or trustees (or any successor of any officer, director, or trustee) of the Reorganized Debtors is consistent with the interests of all Holders of Claims and Equity Interests and with public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### vii)    Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

37.    The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

(a)     **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).**

38.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Article X of the Plan provides that any Executory Contracts and Unexpired Leases of the Confirmation Debtors (a) not previously assumed, (b) not previously assumed and assigned in accordance with the Sale Order or other order approving such assumption and assignment, (c) not previously rejected pursuant to an order of the Bankruptcy Court, and (d) identified on the Assumed Contracts List will be assumed effective as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and the Confirmation Order, except any Executory Contract or Unexpired Lease (i) identified on the Rejected Contracts/Lease List, (ii) that is the subject of (A) a separate motion or notice to reject, assume, or assume and assign or a Cure Dispute that is pending as of the Confirmation Date or (B) an order of the Bankruptcy Court that is not yet a Final Order, (iii) that previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code), (iv) of the American Freight Debtors that is not otherwise assumed or included on the Assumed Contracts List, (v) that relates to the Vitamin Shoppe Debtors, and is not otherwise assumed pursuant to the Sale Order or included on the Assumed Contracts List, or (vi) of Franchise Group, Inc. that is not otherwise assumed, assumed and assigned, or included on the Assumed Contracts List.  For the avoidance of doubt, except as otherwise set forth in the Plan or as included on the Assumed Contracts List, all Executory Contracts and Unexpired Leases of the American Freight Debtors, Franchise Group, Inc., and the Vitamin Shoppe Debtors shall be rejected as of the Effective Date.

39.     To the extent assumption has not already occurred, the Assumed Contracts to be assumed and assigned in connection with the Partial Sale Transaction will be assumed (unless

previously assumed pursuant to a separate order of the Bankruptcy Court) and assigned to the Buyer pursuant to the Sale Order in accordance with the applicable Sale Documents.

40.    Notwithstanding anything to the contrary in the Plan and in the Restructuring Support Agreement, except as otherwise agreed to by the Confirmation Debtors and any applicable counterparty to an Unexpired Lease, the Confirmation Debtors or the Reorganized Debtors, as applicable, subject to the Definitive Document Consent Rights, reserve the right to amend or supplement the Rejected Contracts/Lease List in their discretion prior to the later of (a) the Effective Date and (b) seven (7) days after the date on which the Bankruptcy Court determines that, with respect to an Executory Contract subject to a Cure Dispute, the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List (or, in either case, such later date as may be agreed with a counterparty); provided that the Confirmation Debtors shall give prompt notice of any such amendment or supplement to any affected counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.

41.    Neither the exclusion nor inclusion of any contract or lease in the Rejected Contracts/Lease List or Assumed Contracts List, as applicable, nor anything contained in the Plan or the Sale Documents, nor the Confirmation Debtors' delivery of a notice of the proposed assumption and proposed Cure Cost to any contract and lease counterparties set forth in the Assumed Contracts List (which was Filed with the Plan Supplement), shall constitute an admission by the Confirmation Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Confirmation Debtors or Reorganized Debtors, as applicable, shall have forty-five

(45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.  If there is a dispute regarding a Confirmation Debtor's or Reorganized Debtor's liability under an assumed Executory Contract or Unexpired Lease, the Reorganized Debtors shall be authorized to move to have such dispute heard by the Bankruptcy Court pursuant to Article XIII of the Plan.  If the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List, the Confirmation Debtors shall have the right to reject such Executory Contract or Unexpired Lease, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

42.     The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Equity Interests, and other parties in interest in these Chapter 11 Cases.

43.     For the avoidance of doubt, nothing herein shall alter or modify TopCo's rights to assume, assume and assign, or reject any Executory Contracts of TopCo (if any) pursuant to section 365(a) of the Bankruptcy Code.

**(b)     Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

44.     **Compromise and Settlement.**  Pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, as applicable, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, Causes of Action, or controversies (a) belonging to

the Debtors or the Debtors' Estates as set forth in the Plan (including, for the avoidance of doubt, TopCo) and (b) by and among the Debtors, the Creditors' Committee, the Freedom Lender Group, the DIP Lenders, and the Ad Hoc Group consisting of Required Consenting First Lien Lenders. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Equity Interests, Causes of Action, and controversies belonging to the Debtors or the Debtors' Estates pursuant to section 1123 of the Bankruptcy Code and, with respect to the Global Settlement by and among the Global Settlement Parties (including, for the avoidance of doubt, TopCo), pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code. The entry of this Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date of the Confirmation Debtors, of the compromise or settlement of all such Claims (including all Intercompany Claims held by and among TopCo and all other Debtors), Equity Interests, Causes of Action (including all Causes of Action held by and among TopCo and the other Global Settlement Parties), or controversies, and the Bankruptcy Court's finding that all such compromises or settlements are:  (i) in the best interest of the Debtors, the Reorganized Debtors, and their respective Estates, as applicable, and of Holders of Claims or Equity Interests; and (ii) fair, equitable, and reasonable.

45.    **Approval of the Global Settlement**.  Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of these Chapter 11 Cases, this Confirmation Order constitutes the Bankruptcy Court's approval of the Global Settlement embodied in the Plan and this Confirmation Order (including, for the avoidance of doubt, with respect to TopCo and the mutual release of the Global Settlement Parties contemplated therein), because, among other things:  (a) the Global Settlement reflects a reasonable balance

between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes, including with respect to TopCo, and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent the Global Settlement, there is a likelihood of complex and protracted litigation involving the attendant expense, inconvenience, and delay that have a possibility to derail the Debtors' chapter 11 objectives and efforts; (c) each of the parties supporting the Global Settlement is represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) the Global Settlement is the product of arm's-length bargaining and good-faith negotiations between sophisticated parties; and (e) the Global Settlement is fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors, their respective Estates and property, creditors, and other parties in interest, will maximize the value of the Estates, and are essential to the successful implementation of the Plan.  Based on the foregoing, the Global Settlement satisfies the requirements of applicable Third Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

46.     **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Section 12.2 of the Plan (the "Debtor Release").  The Debtor Release is an essential component of the Plan.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is given and made after due notice and opportunity for hearing.  The Debtor Release is approved.

47.     The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of good-faith, arm's-length negotiations between sophisticated parties that had

representation from able counsel and advisors.  The Debtor Release was critical to obtaining support for the Plan and the Global Settlement contained therein.  The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' successful emergence from chapter 11.  For instance, the Debtors' current directors, officers, and other agents retained as of the Confirmation Date, as well as the creditors' professionals and other agents, have been instrumental in negotiating, formulating, and implementing the Restructuring Transactions contemplated under the Plan, including the Global Settlement embodied therein.

48.    Each of the Released Parties share a common goal with the Debtors in seeing the Plan confirmed and implementing the transactions contemplated thereby.  The record shows that the releases relating to the Debtors' current and former directors, officers, and managers (except for any of the Debtors' former directors, officers, or managers who are Excluded Parties) are appropriate because the Debtors' directors, officers, and managers share an identity of interest with the Debtors, have supported and made substantial contributions to the success of the Plan and these Chapter 11 Cases, and because the Debtors will assume certain indemnification obligations of certain of the foregoing parties under the Plan that will be honored by the Reorganized Debtors in accordance with the terms of the Plan.  The evidence, including the Meyer Confirmation Declaration and the Wartell Confirmation Declaration, establishes that the Debtors conducted a thorough analysis of the Claims and Causes of Action in determining to grant the Debtor Release, and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

49.    Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the

related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, the Reorganized Debtors, and all Holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; (f) appropriately tailored under the facts and circumstances of these Chapter 11 Cases; and (g) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

50.  **Releases by Holders of Claims and Equity Interests.**  Consistent with (a) sections 157 and 1334(a) and (b) of title 28 of the United States Code and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Section 12.3 of the Plan (the "Third-Party Release").  The Third-Party Release (solely with respect to the Releasing Parties) is given and made after due notice and opportunity for hearing.   The Third-Party Release is approved solely with respect to the Confirmation Debtors.

51.  The Third-Party Release (solely with respect to the Releasing Parties) is consensual with respect to the Releasing Parties.  The Ballots sent to all Holders of Claims and Equity Interests entitled to vote, the non-voting status notices and Opt-In Forms sent to Holders of Claims and Equity Interests not entitled to vote, and the Confirmation Hearing Notice sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan. Additionally, Holders of Claims or Equity Interests who elected to grant the Third-Party Release demonstrated their affirmative consent by returning, as applicable, an Opt-In Form or Ballot with

the optional box checked to indicate that such Holder wishes to grant such Third-Party Release. Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to Confirmation of the Plan, the opportunity to opt in to the Third-Party Release, the opportunity to object to the Plan and the Third-Party Release contained therein, and were properly informed that Holders of Claims against or Equity Interests in the Debtors were being given the opportunity to opt in to the release of all Claims and Cause of Action against the Debtors and the Released Parties.  Additionally, the release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the non-voting status notices, and the Opt-In Forms.  Thus, the Third-Party Release is consensual as to those Releasing Parties that did not specifically and timely object.

52.    **Exculpation.**  Consistent with (a) sections 157 and 1334(a) and (b) of title 28 of the United States Code and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Section 12.4 of the Plan (the "Exculpation").  The Exculpation is an integral part of the Debtors' overall restructuring efforts and is an essential element of the Plan.  The evidence before the Bankruptcy Court demonstrates that the Exculpation was critical to the parties' willingness to support the Debtors' chapter 11 efforts, these parties would not have been so inclined to participate in the Plan process without the promise of exculpation, and such parties did so in reliance upon the protections afforded in the Exculpation.  The Exculpation appropriately affords protection to the Exculpated Parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

53.     **Discharge of Claims and Termination of Equity Interests.**  Except as otherwise provided for in the Plan, effective as of the Effective Date of the Confirmation Debtors, with respect to the Non-Liquidating Debtors that constitute Confirmation Debtors:  (a) the rights afforded in the Plan and the treatment of all Claims and Equity Interests (other than any Existing Intercompany Equity Interests that are Reinstated thereunder) shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property or Estates; (b) the Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests (other than any Existing Intercompany Equity Interests that are Reinstated thereunder) shall be satisfied, discharged, and released in full, and the Confirmation Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Confirmation Debtors, the Confirmation Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the American Freight Debtors and the Vitamin Shoppe Debtors.

54.     **Injunction.**  Section 105(a) and sections 1123(b)(3) and (b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in <u>Section 12.6</u> of the Plan (collectively, the "<u>Injunction</u>"), and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the Plan and is necessary

to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release (solely with respect to the Releasing Parties), and the Exculpation provisions in <u>Article XII</u> of the Plan.  The Injunction is appropriately tailored to achieve those purposes.

55.    **Setoffs and Recoupment.**  Except as otherwise provided in the Plan or in the Plan Supplement, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 thereof), applicable bankruptcy or non-bankruptcy Law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that the applicable Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); <u>provided</u> that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the applicable Reorganized Debtor, of any such claims, rights, and Causes of Action.  In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Causes of Action of the Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or Proof of Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

56.    Notwithstanding any provisions to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, all setoff rights of counterparties to Assumed Contracts and/or their Affiliates, if available under applicable Law and the Assumed Contract, are fully preserved,

including, but not limited to: (a) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Assumed Contract with the Confirmation Debtors, or any successors to the Confirmation Debtors, under the Plan; (b) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (c) assertion of rights of setoff or recoupment, if any, as a defense to any Claim.

57. **Release of Liens.** Except as otherwise provided in the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Confirmation Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns. Any Holder of a Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any Collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and Filing or recording of such releases. The presentation or Filing of this Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

58.     To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or any administrative agent, collateral agent, or indenture trustee under any Take-Back Debt Facility (at the expense of the Debtors or the Reorganized Debtors, as applicable) that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of Uniform Commercial Code termination statements, deposit account control agreement terminations, and any other applicable filings or recordings, and the Reorganized Debtors shall be entitled to file Uniform Commercial Code terminations or to make any other such filings or recordings on such Holder's behalf.

**viii.    Additional Plan Provisions (11 U.S.C. § 1123(b)(6))**

59.     The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**ix.    Cure of Defaults (11 U.S.C. § 1123(d)).**

60.     Article X of the Plan provides for the satisfaction of Cure Costs associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such Executory Contract or Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan (it being understood that the terms of any Sale Documents and the Sale Order shall govern the cure of defaults, assumption and assignment, and compliance with section 365 of the Bankruptcy Code with respect to any Executory Contracts or

Unexpired Leases assumed and assigned pursuant to such Sale Documents and Sale Order), the Debtors shall pay any Cure Costs, if monetary, in full in Cash either (a) on the Effective Date or as soon as reasonably practicable thereafter or, (b) in the event of a Cure Dispute, and following resolution of such Cure Dispute (either consensually or through judicial decision), upon the later of (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) seven (7) days after the date on which such Cure Dispute has been resolved.  The Debtors and the Reorganized Debtors, as applicable, reserve the right at any time (including, with respect to the Reorganized Debtors, after the Effective Date) to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute.  If the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List, the Debtors or the Reorganized Debtors, as applicable, shall have the right to reject such Executory Contract or Unexpired Lease by amending the Rejected Contracts/Lease List to include such Executory Contract or Unexpired Lease and providing prompt notice of any such amendment to any applicable counterparty, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

61.     Any Cure Disputes will be determined in accordance with the procedures set forth in Article X of the Plan and applicable bankruptcy and non-bankruptcy Law.  As such, the Plan provides that the Debtors will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**b)  The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

62.     The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including

sections 1122, 1123, 1124, 1125, 1126, and 1128 of the Bankruptcy Code, and Bankruptcy Rules 3017, 3018, and 3019.

63.     The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Disclosure Statement Order approving, among other things, the Solicitation Package and the Voting Procedures.

64.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Orders, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, Laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in <u>Section 12.4</u> of the Plan.

### c)  Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).

65.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and the Restructuring Transactions (and all documents necessary to effectuate the Plan (including the Plan Supplement)) in good faith and not by any means forbidden by Law.   In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the Filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.   Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were Filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates.   The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the record of the Disclosure Statement Hearing, the Disclosure Statement Supplement, the record of the

Confirmation Hearing, and all the other proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

66.     The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders and parties in interest in these Chapter 11 Cases including, but not limited to: (a) the Creditors' Committee; (b) the DIP Lenders; (c) the Ad Hoc Group consisting of Required Consenting First Lien Lenders; (d) the Freedom Lender Group; and (e) the ABL Lenders.  Further, the Global Settlement and the Plan's exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**d)  Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

67.     Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.   The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**e)  Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

68.     The Plan sets forth the process for appointment of the members of the New Boards, and the identities of the members the New Boards were disclosed (to the extent known) in the Plan Supplement.  The Plan sets forth the process for appointment of the Litigation Trustee, and the identity of the initial Litigation Trustee was disclosed in the Plan Supplement.  The appointment to, or continuance in, office of the applicable persons is consistent with public policy.

Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

### f)  No Rate Changes (11 U.S.C. § 1129(a)(6)).

69.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

### g)  Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).

70.    The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing establishes that each Holder of Allowed Claims or Equity Interests in each Class will recover as much or more value under the Plan on account of such Claim or Equity Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis (as defined in the Disclosure Statement and attached as <u>Exhibit B</u> thereto), and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, (a) are reasonable, persuasive, and credible as of the dates such analysis or evidence was prepared, presented, or proffered, (b) utilize reasonable and appropriate methodologies and assumptions, (c) have not been controverted by other evidence, and (d) establish that Holders of Allowed Claims and Equity Interests in each Class will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

71.    Classes 3, 4, 5, 6 (at certain Debtors), 7, 8-A, and 8-B voted in favor of Confirmation, and Holders of Claims and Equity Interests in all Impaired Classes will recover at least as much as a result of the Confirmation of the Plan as they would in a hypothetical

chapter 7 liquidation.  Moreover, the Liquidation Analysis demonstrates that, with respect to TopCo, Holders of Class 8-C Claims (if any) would receive no recovery in a hypothetical chapter 7 liquidation because, among other things, Tranche A DIP Claims (which, for the avoidance of doubt, include all DIP Obligations on account of the New Money DIP Loans, including the Backstop Premium, the Commitment Premium, and the Exit Premium (each as defined in the Final DIP Order)) have priority under the Final DIP Order with respect to TopCo and must be paid in full before any distribution can be made to Class 8-C.  Accordingly, the Debtors have demonstrated that the Plan is in the best interests of their creditors, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**h)  Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

72.    The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  As evidenced by the Voting Report, each of the Voting Classes have voted to accept the Plan, with the exception of certain Debtor entities in Class 6.  Class 9 (Intercompany Claims) and Class 12 (Intercompany Interests) are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan, or Impaired and deemed to have rejected the Plan, depending on whether Claims and Equity Interests in Class 9 and Class 12 are reinstated or canceled and released without any distribution an account of such Claims or Equity Interests.  Class 10 (Subordinated Claims) is an Impaired Class that will not receive or retain any property under the Plan on account of the Claims in such Class, is not entitled to vote on the Plan, and is deemed to have rejected the Plan (collectively, together with Class 9 and Class 12 as applicable, the "Deemed Rejecting Classes").  To the extent a Class contains Claims or Equity Interests eligible to vote, and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the

Plan, such Class shall be deemed to have accepted the Plan.  As set forth below, the Confirmation

Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the

Claims that have rejected or are deemed to have rejected the Plan.

### i)  "Cram Down" Requirements (11 U.S.C. § 1129(b)).

73.    Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to

reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code

with respect to the Confirmation Debtors.  *First*, all of the requirements of section 1129(a) of the

Bankruptcy Code other than section 1129(a)(8) of the Bankruptcy Code have been met.  *Second*,

the Plan is fair and equitable with respect to the Deemed Rejecting Classes.  The Plan has been

proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim

or Equity Interest that is junior to each such Class will receive or retain any property under the

Plan on account of such junior Claim or Equity Interest and (b) no Holder of a Claim or Equity

Interest in a Class senior to such Class is receiving more than 100 percent on account of its Claim

or Equity Interest.  Accordingly, the Plan is fair and equitable to all Holders of Claims and Equity

Interests in the Deemed Rejecting Classes.  *Third*, the Plan does not discriminate unfairly with

respect to the Deemed Rejecting Classes because similarly situated creditors and Equity Interest

Holders will receive substantially similar treatment on account of their Claims and Equity Interests

irrespective of Class.  *Finally*, Holders of Claims in the Voting Classes voted to accept the Plan in

sufficient number and in sufficient amount to constitute impaired accepting classes under the

Bankruptcy Code.  The Plan may therefore be confirmed with respect to the Confirmation Debtors

even though not all Impaired Classes have voted to accept the Plan.

**j) Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

74.     The treatment of DIP Claims, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k) Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

75.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code with respect to the Confirmation Debtors.  As set forth in the Voting Report, all Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).  Additionally, as set forth in the Voting Report, the Classes that are not entitled to receive or retain any property under the Plan are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**l) Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

76.     The evidence proffered or adduced at or prior to the Confirmation Hearing and in the Confirmation Declarations and the Confirmation Brief: (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Reorganized Debtors, as applicable, will have sufficient funds available to meet their obligations under the Plan.  The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**m) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

77.    Article III of the Plan provides for the payment of all fees due and payable by the Debtors pursuant to section 1930(a) of title 28 of the United States Code on the Effective Date, and after the Effective Date, each of the Reorganized Debtors (or the Disbursing Agent acting on behalf of each of the Reorganized Debtors) shall pay any and all applicable U.S. Trustee Fees in full in Cash when due and payable.  The Debtors and the Reorganized Debtors shall remain obligated to pay any applicable U.S. Trustee Fees until the earliest of the closure, dismissal, or conversion to a case under chapter 7 of the Bankruptcy Code of the case of that particular Debtor for whom the Debtors or the Reorganized Debtors, as applicable, is responsible.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**n) Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), 1129(a)(14), (15), and (16)).**

78.    The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o) Only One Plan (11 U.S.C. § 1129(c)).**

79.    Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p) Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

80.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q) Not a Small Business Case (11 U.S.C. § 1129(e)).**

81.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r) Satisfaction of Confirmation Requirements.**

82.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**U.      Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

83.     Each of the conditions precedent to the Effective Date, as set forth herein or in Section 11.2 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section 11.3 of the Plan.

**V.      Implementation**

84.     The Plan, including all documents contained in the Plan Supplement and all other relevant and necessary documents, have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors, their Estates, and the Reorganized Debtors, as applicable, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local Law.  The documents and agreements are essential elements of the Plan and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The Debtors and the Reorganized Debtors, as applicable, are authorized, without any further notice to or action, order, or approval of the Bankruptcy Court, to finalize, execute, and deliver all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

**W.      Good-Faith Solicitation (11 U.S.C. § 1125(e))**

85.      The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to act in good faith.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code, and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in <u>Section 12.4</u> of the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**X.      Executory Contracts and Unexpired Leases**

86.      Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan, the Plan Supplement, or the Sale Documents.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Equity Interests, and other parties in interest in these Chapter 11 Cases; <u>provided</u> that, notwithstanding anything to the contrary herein or in the Plan,

any compensation and benefits agreement, plan, program, and arrangement shall be treated as an Executory Contract to the extent such compensation and benefits agreement, plan, program, and arrangement is an executory contract under applicable Law.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

**Y.    Findings of Fact and Conclusions of Law**

87.    The above-referenced findings of fact and conclusions of Law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of Law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of Law, it is deemed so, and vice versa.

**Z.    Confirmation of the Plan**

88.    The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, shall be, and hereby is, confirmed with respect to the Confirmation Debtors under section 1129 of the Bankruptcy Code.  The Confirmation Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Reorganized Debtors and the Litigation Trustee, as applicable, are hereby approved and authorized.  The Confirmation Debtors, the Reorganized Debtors, and the Litigation Trustee, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including, without limitation, entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the

Confirmation Debtors in their business judgment subject to the terms and conditions of the Plan (including the consent rights contained therein). The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

89.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety with respect to the Confirmation Debtors.

## AA.    Approval of Global Settlement

90.     Following good-faith and arm's-length negotiations, in exchange for the releases and other valuable consideration provided for in the Plan, the Global Settlement Parties agreed to the Global Settlement. The Global Settlement provides significant value to the Debtors (including TopCo) and their Estates, favorably resolves and avoids potential protracted expensive and uncertain litigation, and enables a prompt and efficient reorganization of the Confirmation Debtors through the Plan. Pursuant to the Global Settlement, all Intercompany Claims between and among, TopCo, the Freedom HoldCo Debtors, the OpCo Debtors, and all other Debtors, shall be settled, waived, and/or released, including but not limited to (a) all Intercompany Claims by and between the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors, (b) the allocation of Professional Fee Claims among the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors, and (c) the allocation of approximately $13.25 million in Cash from TopCo to the funding of the Litigation Trust; provided that (without limiting the releases of the Released Parties) there shall not be any third-party beneficiaries of the inter-Debtor releases. The Global Settlement is integral to the development and implementation of the Plan. Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule

9019, of the Global Settlement, including, for the avoidance of doubt, (i) approval of the releases provided by the Freedom HoldCo Debtors with respect to any Claims or Causes of Action previously identified or preserved by the Freedom HoldCo Independent Director as actionable, (ii) the contribution of approximately $13.25 million in Cash to the funding of the Litigation Trust, (iii) the release of all Intercompany Claims between and among TopCo, the Freedom HoldCo Debtors, the OpCo Debtors, and all other Debtors, including the allocation of Professional Fee Claims among the OpCo Debtors, the Freedom HoldCo Debtors, TopCo, and all other Debtors, and (iv) approval of the mutual releases provided by the Global Settlement Parties (including TopCo).  The release and waiver of Intercompany Claims against TopCo shall not impair the Litigation Trust's rights or ability to commence, prosecute, or settle any Permitted Litigation Claims against any party that is not released under the Plan, including a subsequent transferee of an Avoidance Action from another Debtor to TopCo.  The Global Settlement is in the best interests of the Debtors, their Estates, Holders of Claims and Equity Interests, and other parties in interest, and is fair, equitable, and reasonable.

91.    The compromises and settlements set forth in the Global Settlement exceed the lowest point in the range of reasonableness.  The benefits and consideration that the Debtors are to provide under the Global Settlement are fair, equitable, and adequate consideration for the releases and other consideration the Debtors are to receive under the Global Settlement and constitute reasonably equivalent value therefor, and the transfers contemplated by the Global Settlement are not subject to avoidance under any applicable Law or in equity.

92.    The Debtors (including TopCo) and the Reorganized Debtors, as applicable, are authorized and directed to make the distributions and transfers contemplated by the Plan in connection with the Global Settlement.

**BB.     Objections Overruled**

93.     To the extent that any objections (including any reservations of rights, joinders, or statements contained therein) to Confirmation with respect to the Confirmation Debtors or approval of the Global Settlement have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights, joinders, or statements contained therein), except with respect to unresolved Cure Disputes and objections to the assumption or rejection of Executory Contracts and Unexpired Leases, if any, are hereby overruled in their entirety and on the merits in all respects.

94.     All objections to Confirmation (with respect to the Confirmation Debtors) or approval of the Global Settlement (with respect to all Debtors) not Filed and served prior to the Objection Deadline set forth in the Confirmation Hearing Notice or other notices Filed with the Bankruptcy Court (in each case, as may have been extended by the applicable Debtors), if any, are deemed waived and shall not be considered by the Bankruptcy Court.

**CC.     Solicitation**

95.     The solicitation of votes on the Plan complied with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and was appropriate and satisfactory and is approved in all respects.

**DD.     Deemed Acceptance of Plan as Modified**

96.     The Debtors modified the Plan since the commencement of solicitation to incorporate the terms of the Global Settlement and address certain concerns raised by parties in interest.   The Plan Modifications comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.   Moreover, the Debtors' key constituents affected by such modifications support these changes.   In addition, the Confirmation Debtors served the Disclosure Statement

Supplement on all Holders of Claims and Equity Interests who received a Solicitation Package, providing notice of the key information concerning the Global Settlement, the Plan Modifications in connection therewith, and the extension of the Voting Deadline. Accordingly, no additional solicitation or disclosure was required on account of the Plan Modifications and all Holders of Claims and Equity Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended. No Holder of a Claim or Equity Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

### EE.    Means for Implementation of the Plan

97.    The provisions governing the means for implementation of the Plan set forth in Article VII of the Plan shall be, and hereby are, approved in their entirety. The Confirmation Debtors are authorized to take all actions reasonably necessary to implement the Plan on the terms set forth in Article VII. Upon the Effective Date, the Confirmation Debtors or the Reorganized Debtors, as applicable, are authorized to make the payments or other distributions set forth in Article III and Article V of the Plan.

98.    Notwithstanding anything to the contrary herein, TopCo is authorized to take any actions that may be necessary or appropriate to effectuate the Global Settlement and any transactions contemplated thereby.

### FF.    Incorporation by Reference

99.    The terms of the Plan, the Plan Supplement, all exhibits thereto, this Confirmation Order, the Definitive Documents, and all other relevant and necessary documents constitute essential elements of the Plan and shall, on and after the Effective Date, be binding in all respects upon, and shall inure to the benefit of, the Confirmation Debtors, their Estates and their creditors and equity holders, and their respective successors and assigns, non-Confirmation Debtor

Affiliates (including TopCo), any affected third parties, all Holders of Equity Interests, all Holders of any Claims, whether known or unknown, including, but not limited to, all contract counterparties, leaseholders, Governmental Units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar Entities for the Confirmation Debtors, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and each of their respective Affiliates, successors, and assigns.

**GG.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

100.    The release, exculpation, injunction, and related provisions set forth in <u>Article XII</u> of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the parties subject to such provisions, or any other party, including, but not limited to:

a.    **Liens**.  The release of Liens provisions set forth in <u>Section 12.8</u> of the Plan are hereby approved.

b.    **Releases by the Confirmation Debtors**.  The Debtor Release provisions set forth in <u>Section 12.2</u> of the Plan are hereby approved.

c.    **Third-Party Releases**.  The Third-Party Release provisions set forth in <u>Section 12.3</u> of the Plan are hereby approved.

d.    **Exculpation**.  The Exculpation provisions set forth in <u>Section 12.4</u> of the Plan are hereby approved.

e.    **Injunction**.  The Injunction provisions set forth in <u>Section 12.6</u> of the Plan are hereby approved.

**HH.    Classifications of Claims and Equity Interests**

101.    The terms of the Plan shall govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots

tendered to or returned by the Holders of Claims or Equity Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Equity Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on the Confirmation Debtors except for voting purposes.

## II.    Plan Supplement

102.    The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Confirmation Debtors, the Reorganized Debtors, the Litigation Trustee, and their successors are authorized when they are finalized, executed, and delivered. Without further order or authorization of this Bankruptcy Court, the Confirmation Debtors, the Reorganized Debtors, the Litigation Trustee, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan and this Confirmation Order. Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

**JJ.**    **Restructuring Transactions**

103.    Before, on, and after the Effective Date, the applicable Confirmation Debtors or the Reorganized Debtors or New TopCo, as applicable, may, consistent with the terms of the Restructuring Support Agreement, enter into any transaction and take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions (including any transactions described in, approved by, contemplated by, or necessary to effectuate the Plan), that are consistent with and pursuant to the terms and conditions of the Plan (including the Global Settlement), including, as applicable:   (a) the execution and delivery of appropriate agreements or other documents of reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable Law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of incorporation, merger, migration, consolidation, or other Organizational Documents with the appropriate governmental authorities pursuant to applicable Law; (d) the execution, delivery, and filing, if applicable, of the New Organizational Documents and the Take-Back Debt Documents; (e) the execution, delivery, and filing, if applicable, of the New ABL Facility; (f) such other transactions that are required to effectuate the Restructuring Transactions, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; and (g) all other actions that the Reorganized Debtors reasonably determine, in consultation with the Required Consenting First Lien Lenders, are necessary or appropriate, including making filings or recordings that may be required by applicable Law.

104.    The Sale Proceeds shall be used to reduce the DIP Facility and/or the ABL Loans in accordance with the terms of the Sale Order, the DIP Credit Agreement, the Final DIP Order,

the ABL Loan Documents, and the Prepetition ABL Intercreditor Agreement, as applicable; provided that, for the avoidance of doubt, all rights of the ABL Credit Agreement Agent and the DIP Agent with respect to the allocation of the Sale Proceeds in accordance with the foregoing are expressly preserved.  For the avoidance of doubt, the Assumed Liabilities (as defined under the Asset Purchase Agreement) shall be the sole responsibility of the Buyer even if such Claim is Allowed against the Confirmation Debtors, and such Claims shall have no recovery from the Confirmation Debtors under the terms of the Plan.

105.    Notwithstanding anything to the contrary in the Store-Closing and Liquidation Sales Order, the Confirmation Debtors and the Reorganized Debtors, as applicable, are authorized to take any actions that may be necessary or appropriate to wind down and/or dissolve the Estates of the American Freight Debtors and the Vitamin Shoppe Debtors.  The Confirmation Debtors and the Reorganized Debtors, as applicable, are authorized to sell, liquidate, and/or otherwise dispose of any remaining property owned by the American Freight Debtors and, after taking into effect the Partial Sale Transaction, the Vitamin Shoppe Debtors.

## KK.    Continued Corporate Existence in Certain Confirmation Debtors; Vesting of Assets; Dissolution of Certain Confirmation Debtors

106.    Except as otherwise provided in the Plan, the Plan Supplement, or as otherwise may be agreed between the Confirmation Debtors and the Required Consenting First Lien Lenders, each of the Confirmation Debtors, as Reorganized Debtors, and New TopCo, shall continue to exist on and after the Effective Date as a separate legal Entity with all of the powers available to such legal Entity under and in accordance with the applicable Laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the New Organizational Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable Law.  On or after the Effective Date, without prejudice to the

rights of any party to a contract or other agreement with any Reorganized Debtor or New TopCo (including as a Holder of Reorganized Common Equity), each of the Reorganized Debtors and New TopCo, as applicable (and in consultation with the Required Consenting First Lien Lenders), may take such action as permitted by applicable Law and such Reorganized Debtor's or New TopCo's New Organizational Documents, as such Reorganized Debtor or New TopCo, as applicable, may determine is reasonable and appropriate, including, but not limited to, causing: (a) a Reorganized Debtor or New TopCo to be merged with and into another Reorganized Debtor, or a subsidiary and/or Affiliate of a Reorganized Debtor or New TopCo; (b) a Reorganized Debtor or New TopCo to be dissolved; (c) the conversion of a Reorganized Debtor or New TopCo from one Entity type to another Entity type; (d) the legal name of a Reorganized Debtor or New TopCo to be changed; (e) the closure of a Reorganized Debtor's or New TopCo's Chapter 11 Case on the Effective Date or any time thereafter; or (f) the reincorporation of a Reorganized Debtor or New TopCo under the Law of jurisdictions other than the Law under which the Confirmation Debtor currently is incorporated.

107.    Except as otherwise provided in the Plan, this Confirmation Order, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or the Plan Supplement, on the Effective Date, all property of the Confirmation Debtors' Estates, wherever located, including the Reorganized Debtors' Retained Causes of Action (but not the Permitted Litigation Claims) and any property, wherever located, acquired by the Confirmation Debtors under or in connection with the Plan, shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, charges, other encumbrances, and Equity Interests, except for those Claims, Liens, charges, other encumbrances, and Equity Interests arising from or related to the Take-Back Debt Documents or the New ABL Facility

Documents.  On and after the Effective Date, except as otherwise provided in the Plan or in this Confirmation Order, each applicable Reorganized Debtor and New TopCo may operate its business(es) and may use, acquire, and dispose of property, wherever located, and each Reorganized Debtor and New TopCo, as applicable, may prosecute, compromise or settle any Claims (including any Administrative Expense Claims and excluding any Permitted Litigation Claims), Equity Interests, and the Reorganized Debtors' Retained Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the Reorganized Debtors and New TopCo may pay the charges that they incur on or after the Effective Date, if any, for Professional Persons' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.  Anything in the Plan to the contrary notwithstanding, any Unimpaired Claims against a Confirmation Debtor shall remain the obligations solely of such Confirmation Debtor or such Reorganized Debtor and shall not become obligations of any other Confirmation Debtor, Reorganized Debtor, New TopCo, or the Litigation Trust by virtue of the Plan, the Chapter 11 Cases, or otherwise.  For the avoidance of doubt, no obligations or Claims against TopCo shall become obligations of the Confirmation Debtors, any Reorganized Debtor, or New TopCo, and any Claims or obligations against TopCo shall remain solely the obligation of TopCo after the Effective Date of the Plan with respect to the Confirmation Debtors.

## LL.  Preservation of Causes of Action

108.    In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all of the Reorganized Debtors' Retained Causes of Action, whether arising before or after the Petition Date.  The Reorganized Debtors' rights to commence, prosecute, or settle the Reorganized

Debtors' Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary.

109.    In accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Permitted Litigation Claims of the Confirmation Debtors and their Estates, whether arising before or after the Petition Date.  The Litigation Trust's rights to commence, prosecute, or settle the Permitted Litigation Claims shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary.

110.    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Disclosure Statement Supplement to any Reorganized Debtors' Retained Cause of Action or Permitted Litigation Claim against it as any indication that the Confirmation Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, will not pursue any and all available Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claim against it.  The Confirmation Debtors, the Reorganized Debtors, and the Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims against any Entity.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors or the Litigation Trust, as applicable, expressly reserve all Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims for later adjudication.

111.    The Reorganized Debtors and the Litigation Trust, as applicable, reserve and shall retain such Reorganized Debtors' Retained Causes of Action and Permitted Litigation Claims, respectively, notwithstanding the rejection or repudiation of any Executory Contract or Unexpired

Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Reorganized Debtors' Retained Causes of Action against any Entity shall vest in the Reorganized Debtors and any Permitted Litigation Claims against any Entity shall vest in the Litigation Trust.  The applicable Reorganized Debtors or the Litigation Trust, through their respective authorized agents or representatives, shall retain and may exclusively enforce any and all such Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims, as applicable.  The Reorganized Debtors or the Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Reorganized Debtors' Retained Causes of Action or Permitted Litigation Claims, respectively, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court except as otherwise released in the Plan.

**MM.    Indemnification Provisions in Organizational Documents**

112.    On and as of the Effective Date, all indemnification obligations of the Confirmation Debtors that are in place as of the Petition Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, or otherwise) for the current directors, officers, and managers of the Confirmation Debtors, as well as the attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Confirmation Debtors, as applicable, shall be assumed by the applicable Confirmation Debtor or assumed and assigned by the applicable Confirmation Debtor and remain in full force and effect after the Effective Date, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose, as applicable; _provided_ that, notwithstanding the foregoing, any indemnification obligations of the Confirmation Debtors on account of any Permitted Litigation Claims that are transferred to the Litigation Trust or on

account of any Claims or Causes of Action that are not being released pursuant to the Plan shall, in each case, not be assumed or assumed and assigned and, in each case, such indemnification obligations and related agreements and documents shall be deemed rejected under the Plan.

**NN.    Sources for Cash Distributions under the Plan**

113.    The Confirmation Debtors shall fund Cash distributions under the Plan with Cash on hand, including Cash from operations, the American Freight Liquidation Proceeds, the Sale Proceeds, and the proceeds of the DIP Facility.  Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors or the Disbursing Agent in accordance with Article VIII of the Plan.

114.    From and after the Effective Date, subject to any applicable limitations set forth in any agreement entered into on or after the Effective Date (including, without limitation, the New Organizational Documents, the New ABL Facility Documents, and the Take-Back Debt Documents), the Reorganized Debtors shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of managers or directors, as applicable (or other applicable governing bodies), of the applicable Reorganized Debtors deem appropriate.

115.    The distribution of the Prepetition Second Lien Loan Cash Consideration shall be subject to (a) the Prepetition Second Lien Loan Cash Consideration Waiver, (b) the Second Lien Credit Agreement Agent's rights in priority of payment in its capacity as administrative agent and collateral agent for the Second Lien Lenders pursuant to the Second Lien Credit Agreement, and (c) the right of the Second Lien Credit Agreement Agent, as acknowledged hereby, to pay the fees and expenses of the HoldCo Credit Agreement Agent from the Prepetition Second Lien Loan Cash Consideration.  On the Effective Date, the Second Lien Credit Agreement Agent shall cause the reasonable and documented fees and expenses of (i) the Second Lien Credit Agreement Agent

required to be reimbursed under the Second Lien Credit Agreement and (ii) the HoldCo Credit Agreement Agent required to be reimbursed under the HoldCo Credit Agreement in any amount not to exceed $40,000 to be paid from the proceeds of the Prepetition Second Lien Loan Cash Consideration prior to making any further distributions on account of the Prepetition Second Lien Loan Claims to the Second Lien Lenders.  Other than the payments described in this paragraph 115 and the rights and obligations that survive the Plan as set forth in paragraph 135 of this Confirmation Order, the Second Lien Lenders shall have no further obligation or liability to the Prepetition Second Lien Credit Agreement Agent or its professionals in connection with the Prepetition Second Lien Credit Agreement.

**OO.    Take-Back Debt Facility**

116.    On the Effective Date, the Reorganized Debtors shall enter into the Take-Back Debt Facility in the maximum amount necessary to ensure that the Reorganized Debtors are in compliance with the Pro Forma Leverage Cap, which will be made up of a first-lien term loan consisting of certain DIP Claims arising from the Tranche A DIP Loans and the Tranche B DIP Loans, in each case as of the Effective Date, and each being consistent with the terms and conditions set forth in the Restructuring Support Agreement.

117.    On the Effective Date, the agreements with respect to the Take-Back Debt Facility shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Take-Back Debt Facility are being extended, and shall be deemed to have been extended, in good faith, following arm's length negotiations, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any

other applicable non-bankruptcy Law.  On the Effective Date, all of the Liens and security interests to be granted in connection with the Take-Back Debt Facility (a) shall be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the Collateral granted in accordance with the Take-Back Debt Facility, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under in connection with the Take-Back Debt Facility, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law.  The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other Law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

118.    Notwithstanding the foregoing, the Collateral granted pursuant to the Take-Back Debt Facility shall include, and such Liens shall attach to, (a) all proceeds of the Confirmation Debtors' or Reorganized Debtors' real property leases and (b) all leases that do not prohibit or restrict the attachment of such Liens; provided, however, to the extent that a lease prohibits or restricts attachment of a Lien to such lease itself or to the leased premises pursuant to its terms,

such Liens shall attach to the proceeds of such lease but shall not attach to such lease itself or the leased premises, as applicable. Nothing herein, in the Plan, or in the Take-Back Debt Documents shall authorize the Reorganized Debtors to violate the terms of Unexpired Leases assumed pursuant to the Plan after the Effective Date, including, but not limited to, by providing the Take-Back Debt Agent access to any leased premises of the Reorganized Debtors other than in accordance with applicable non-bankruptcy Law or as otherwise provided for in the applicable Unexpired Lease.

119.    Any Holder entitled to receive Take-Back Term Loans under the Plan may designate that all or a portion of such Holder's share of the Take-Back Term Loans to be distributed as part of the treatment of such Holder's Allowed Claims, be registered in the name of, and delivered to, its designee by delivering notice thereof to counsel to the Debtors and to the Claims Agent in accordance with such procedures for such designations and/or delivery that the Confirmation Debtors or the Reorganized Debtors, as applicable, may establish in accordance with the Plan.

**PP.    New ABL Facility**

120.    On the Effective Date, the agreements with respect to the New ABL Facility shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New ABL Facility are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law. On the Effective Date, all of the Liens and security interests to be granted in connection with the New ABL Facility (a) shall be

granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the Collateral granted in accordance with the New ABL Facility, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted in connection with the New ABL Facility, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law. The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other Law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

121.    Notwithstanding the foregoing, the Collateral granted pursuant to the New ABL Facility shall include, and such Liens shall attach to, (a) all proceeds of the Confirmation Debtors' or Reorganized Debtors' real property leases and (b) all leases that do not prohibit or restrict the attachment of such Liens; provided, however, to the extent that a lease prohibits or restricts attachment of a Lien to such lease itself or to the leased premises pursuant to its terms, such Liens shall attach to the proceeds of such lease but shall not attach to such lease itself or the leased premises, as applicable. Nothing herein, in the Plan, or in the New ABL Facility Documents shall

authorize the Reorganized Debtors to violate the terms of Unexpired Leases assumed pursuant to the Plan after the Effective Date, including, but not limited to, by providing the New ABL Facility Agent access to any leased premises of the Reorganized Debtors other than in accordance with applicable non-bankruptcy Law or as otherwise provided for in the applicable Unexpired Lease.

## QQ.    Reorganized Debtors' Ownership

122.    On the Effective Date, in accordance with the terms of the Plan and the Restructuring Transactions Memorandum and as further set forth in the Plan Supplement, New TopCo shall issue and deliver all of the Reorganized Common Equity to Holders of Allowed Prepetition First Lien Loan Claims, Holders of Allowed Prepetition Second Lien Loan Claims, and certain Holders of DIP Claims pursuant to the terms and conditions of the Plan, the New Organizational Documents, and the DIP Credit Agreement.  The issuance of Reorganized Common Equity pursuant to the Plan is authorized without the need for further limited liability company or corporate action and without any further action by any Holder of a Claim or Equity Interest, and all of the Reorganized Common Equity issued or issuable pursuant to the Plan shall be duly authorized, validly issued, fully paid, and nonassessable.

123.    Any Holder of an Allowed Prepetition First Lien Loan Claim, Allowed Prepetition Second Lien Loan Claim, or Allowed DIP Claim may designate that all or a portion of such Holder's *pro rata* share of the Reorganized Common Equity to be distributed as part of the treatment of such Allowed Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, or Allowed DIP Claims, as applicable, be registered in the name of, and delivered to, its designee by delivering notice thereof to the Confirmation Debtors and/or by the designee delivering notice thereof to the Claims Agent in accordance with such other procedures for such designations and/or delivery that the Confirmation Debtors or the Reorganized Debtors, as applicable, may establish in accordance with the Plan.

**RR.    Litigation Trust**

124.    On the Effective Date of the Confirmation Debtors, (a) the Litigation Trust shall be formed and established pursuant to the Plan and the Litigation Trust Agreement and become effective and administered in accordance with the terms of the Plan and the Litigation Trust Agreement, (b) Lawrence R. Hirsh shall be appointed as the initial Litigation Trustee and the Litigation Trustee shall be vested with the rights and powers set forth in the Plan and the Litigation Trust Agreement, (c) the identities of the members of the Litigation Advisory Board shall be set forth in the Plan Supplement, and (d) the OpCo Debtors, the Freedom HoldCo Debtors, and TopCo shall be deemed to have irrevocably transferred to the Litigation Trust all of their rights, title, and interests in the Litigation Trust Assets free and clear of all Claims, Liens, encumbrances, or interests, except as otherwise set forth in the Plan.  The Litigation Trust, the Litigation Trustee, and the Litigation Trust Advisory Board shall be authorized and entitled to take the actions set forth in, and in each case in accordance with, the Plan and the Litigation Trust Agreement. Notwithstanding anything to the contrary herein, pursuant to the Global Settlement, TopCo shall transfer or cause to be transferred to the Litigation Trust, directly or indirectly, the TopCo Cash Allocation, which amount shall be funded by TopCo to the Litigation Trust Escrow Account and vest in the Litigation Trust free and clear of all Claims, Liens, encumbrances, or interests.

125.    The Litigation Trust shall be administered by the Litigation Trustee in accordance with the Plan and the Litigation Trust Agreement and the Litigation Trustee, in consultation with the Litigation Trust Advisory Board, shall have sole discretion with respect to the prosecution, funding, and settlement or other resolution of the Permitted Litigation Claims and the distribution of the Litigation Trust Assets, consistent with the Litigation Trust Units Allocations and the terms of the Litigation Trust Agreement and the Plan.  The Litigation Trustee shall be authorized, in accordance with the terms of the Plan and the Litigation Trust Agreement, to take such other

actions as may be necessary or desirable to make any distributions to holders of Litigation Trust Units on account of any Litigation Trust Assets.

126.    Solely to the extent necessary and in furtherance of the Litigation Trustee Duties, following the Effective Date, the Litigation Trustee shall be deemed to be a judicial substitute for the Reorganized Debtors as the party in interest in the Chapter 11 Cases, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.  The Litigation Trust shall be entitled to enjoy the benefits of section 108(a) of the Bankruptcy Code and shall be deemed to be a trustee (as that term is used in section 108(a) of the Bankruptcy Code) for purposes of commencing, prosecuting, or settling the Permitted Litigation Claims.

127.    Any and all Litigation Trust Units shall be non-transferable and non-assignable during the term of the Litigation Trust Agreement other than if transferred by will, intestate succession, if required to be transferred as part of a liquidation or winding up of a holder, or otherwise by operation of Law.  In addition, any and all Litigation Trust Units, to the extent such units may be deemed "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state or local securities Laws, will not be registered pursuant to the Securities Act or any applicable state or local securities Laws and will be issued under an exemption to the federal securities Laws pursuant to section 1145 of the Bankruptcy Code and will be exempt from the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

**SS.    Exemption from Registration Requirements**

128.    To the fullest extent permitted by section 1145(a) of the Bankruptcy Code, the offering, issuance, and distribution of any securities, including the Reorganized Common Equity, in exchange for Claims pursuant to Article III or Article V of the Plan, shall be exempt from, among other things, the registration requirements of the Securities Act and any other applicable

U.S. state or local Laws requiring registration prior to the offering, issuance, distribution, or sale of securities pursuant to section 1145 of the Bankruptcy Code (except with respect to an Entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code).  Except as otherwise provided in the Plan or the governing certificates or instruments, any and all such Reorganized Common Equity so issued under the Plan (a) will not be "restricted securities" (as defined in Rule 144(a)(3) under the Securities Act) and (b) will be freely tradable and transferable under the Securities Act by the recipients thereof that are not, and have not been within ninety (90) days of such transfer, an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the Confirmation Debtors, the Reorganized Debtors, or New TopCo, in each case, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, (ii) compliance with applicable securities Laws and any rules and regulations, including those of the United States Securities and Exchange Commission (the "SEC") or U.S. state or local securities Laws, if any, applicable at the time of any future transfer of such securities or instruments, and (iii) any restrictions in the New Organizational Documents of New TopCo.

129.    Notwithstanding anything to the contrary in the Plan or the Restructuring Support Agreement, no Entity (including DTC or any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether issuance of the Reorganized Common Equity is exempt from registration and/or eligible for book-entry delivery, settlement, and depository (to the extent applicable).  Any transfers of assets or Equity Interests effected (including with respect to the Reorganized Common Equity), or any obligations incurred through the Restructuring Transactions

are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.

**TT.    Organizational Documents**

130.    The Reorganized Debtors or New TopCo, as applicable, shall enter into such agreements and/or amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan and the Bankruptcy Code, which shall:  (a) contain terms consistent with the Plan Supplement and the Global Settlement; and (b) authorize the issuance, distribution, and reservation of the Reorganized Common Equity to the Entities entitled to receive such issuances, distributions, and reservations, as applicable under the Plan.  The New Organizational Documents will be deemed to be modified to prohibit (to the extent they do not include a provision prohibiting) the issuance of non-voting equity securities, pursuant to and solely to the extent required under section 1123(a)(6) of the Bankruptcy Code.  Without limiting the generality of the foregoing, as of the Effective Date, the Reorganized Debtors and New TopCo shall be governed by the New Organizational Documents applicable to it.  On or immediately before the Effective Date, each Confirmation Debtor, each Reorganized Debtor, and New TopCo, as applicable, will file its respective New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable Laws of its state of incorporation or formation, to the extent required under the Plan or applicable nonbankruptcy Law for such New Organizational Documents to become effective.  After the Effective Date, the Reorganized Debtors and New TopCo may amend and restate the formation, incorporation, organizational, and constituent documents, as applicable, as permitted by the Laws of its respective jurisdiction of formation or incorporation, as applicable, and the terms of such documents.

131.    As a condition to receiving the Reorganized Common Equity, Holders of Allowed Prepetition First Lien Loan Claims, Holders of Allowed DIP Claims, and Holders of Allowed Prepetition Second Lien Loan Claims, and/or any of their respective designees for receipt of Reorganized Common Equity, will be required to execute and deliver the applicable New Organizational Documents for New TopCo.  For the avoidance of doubt, any Entity's or Person's receipt of Reorganized Common Equity under, or as contemplated by, the Plan shall be deemed as its agreement to the applicable New Organizational Documents for New TopCo, and such Entities and Persons shall be deemed signatories to the applicable New Organizational Documents for New TopCo without further action required on their part (solely in their capacity as members of New TopCo).  The New Organizational Documents for New TopCo will be effective as of the Effective Date and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each recipient of Reorganized Common Equity will be bound thereby in all respects even if such recipient has not actually executed and delivered a counterpart thereof.

**UU.    Exemption from Certain Transfer Taxes and Recording Fees**

132.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any issuance, transfers, or exchanges (whether from a Confirmation Debtor to a Reorganized Debtor or to any other Entity) of any securities (including the Reorganized Common Equity) or any makings or deliveries of instruments of transfer pursuant to or in connection with the Plan (including the Partial Sale Transaction) shall not be subject to any tax under any law imposing a stamp tax or similar tax.  All appropriate state or local government officials, agents or filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and

shall be authorized to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

## VV. Other Tax Matters

133.    From and after the Effective Date, the Reorganized Debtors, including New TopCo, shall be authorized to make and to instruct any of their subsidiaries to make any elections available to them under applicable Law with respect to the tax treatment of the Restructuring Transactions as specified in the Restructuring Transactions Memorandum.

134.    The Confirmation Debtors will cooperate with any advisors selected by the Required Consenting First Lien Lenders in respect of all tax structuring matters.  The Reorganized Debtors shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Confirmation Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

## WW. Cancellation of Securities and Agreements

135.    Except for the purpose of evidencing a right to distribution under the Plan, and except as otherwise set forth in the Plan or in the Restructuring Transactions Memorandum, on the Effective Date, all agreements, including all intercreditor agreements, instruments, and other documents directly or indirectly evidencing, related to, or connected with any Claim, other than certain Intercompany Claims and Existing Intercompany Equity Interests, as expressly set forth in the Plan, and any rights of any Holder in respect thereof, shall be deemed canceled, discharged, and of no force or effect without further act or action under any applicable agreement, Law, regulation, order, or rule.  The holders of or parties to such canceled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation or the cancellation thereof, except the rights provided for in the Plan. Notwithstanding anything to the contrary in the Plan, this Confirmation Order, and in the

Restructuring Support Agreement, each of the DIP Credit Agreement, the First Lien Credit Agreement, the Second Lien Credit Agreement, and the HoldCo Credit Agreement shall continue in effect solely to the extent necessary to:  (a) permit Holders of the DIP Claims, Prepetition First Lien Loan Claims, Prepetition Second Lien Loan Claims, and Prepetition HoldCo Loan Claims to receive distributions under the Plan on account of such respective Claims; and (b) preserve all rights of (i) the Second Lien Lenders with respect to the Second Lien Credit Agreement Agent and vice versa and (ii) the HoldCo Lenders with respect to the HoldCo Credit Agreement Agent and vice versa, in each case with respect to any rights or obligation to compensation, indemnification, expense reimbursement, or contribution, or any other claim or entitlement, in each case that they may have under such agreements that survive termination of such agreements against any entity that is not a Confirmation Debtor or a Reorganized Debtor, and otherwise in accordance with the terms of the Plan.  Except as provided pursuant to the Plan, upon satisfaction of the DIP Claims, the Prepetition First Lien Loan Claims, the Prepetition Second Lien Loan Claims, and the Prepetition HoldCo Loan Claims, respectively (and as the case may be), each of the DIP Credit Agreement Agent, the First Lien Credit Agreement Agent, the Second Lien Credit Agreement Agent, and the HoldCo Credit Agreement Agent, respectively (and as the case may be), shall be discharged of all of their respective obligations associated with the DIP Credit Agreement, the First Lien Credit Agreement, the Second Lien Credit Agreement, and the HoldCo Credit Agreement, respectively (and as the case may be) and the Litigation Trust Units and the Reorganized Common Equity will be held by the recipients thereof directly.

136.    On the Effective Date, except as otherwise specifically provided for in the Plan (including in the Restructuring Transactions Memorandum):  (a) the obligations of the Confirmation Debtors under any certificate, share, note, bond, agreement, indenture, purchase

right, option, warrant, call, put, award, commitment, registration rights, preemptive right, right of first refusal, right of first offer, co-sale right, investor rights, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Confirmation Debtors giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of or ownership interest in the Confirmation Debtors that are specifically Reinstated pursuant to the Plan, if any) shall be canceled, terminated, and of no further force or effect solely as to the Confirmation Debtors, without further act or action, and the Confirmation Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Confirmation Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, calls, puts, awards, commitments, registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights, investor rights, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Confirmation Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of or ownership interest in the Confirmation Debtors that are specifically Reinstated pursuant to the Plan, if any) shall be automatically and fully released and discharged.

## XX.    Boards; Management

137.    As of the Effective Date, the members of each of the Boards of the Confirmation Debtors shall be deemed to have resigned from such Board.  Subject to the terms of the applicable New Organizational Documents, on the Effective Date, the New Boards shall be established and new members of the New Boards appointed.  The initial members of the New Boards shall consist of those individuals identified in the Plan Supplement.  Unless reappointed, the members of the

Boards of the Confirmation Debtors prior to the Effective Date shall have no continuing obligations to any of the Reorganized Debtors or to New TopCo on and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Confirmation Debtor or New TopCo on the Effective Date.  Commencing on the Effective Date, the members of the New Boards shall serve pursuant to the terms of the applicable New Organizational Documents or the applicable Organizational Documents of such Reorganized Debtor or New TopCo, as applicable, and may be replaced or removed in accordance therewith, as applicable.

138.    As of the Effective Date, the individuals who will serve in certain senior management positions of the Reorganized Debtors shall consist of those individuals set forth in the Plan Supplement.

## YY.    Director and Officer Insurance Policies; other Insurance Policies

139.    In accordance with the Plan:  (a) on the Effective Date, the Confirmation Debtors or Reorganized Debtors, as applicable, shall be deemed to have assumed all of the Confirmation Debtors' D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto, which "tail policy" shall not be otherwise terminated or reduced) in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; provided that any indemnity obligations that would otherwise be assumed by the foregoing assumption of the D&O Liability Insurance Policies shall be governed as provided elsewhere in the Plan and shall not be deemed to be assumed with assumption of such D&O Liability Insurance Policies; (b) the Confirmation Debtors and the Reorganized Debtors, as applicable, shall retain the ability to supplement such D&O Liability Insurance Policies as the Confirmation Debtors or the Reorganized Debtors, as applicable, may deem necessary; and (c) for

the avoidance of doubt, entry of this Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of each of the unexpired D&O Liability Insurance Policies.

140.    For the avoidance of doubt, on and after the Effective Date, each of the Reorganized Debtors shall be authorized to purchase a directors' and officers' liability insurance policy for the benefit of their respective directors, members, trustees, officers, and managers in the ordinary course of business.

141.    Each of the Confirmation Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder. Unless otherwise provided in the Plan or on the Assumed Contracts List or Rejected Contracts/Lease List, on the Effective Date, (a) the Confirmation Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

142.    Nothing in the Plan, the Plan Supplement, the Disclosure Statement, this Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening) (a) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (b) alters or modifies the duty, if any, that the insurers or third-party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Confirmation Debtors (or the purchaser, solely to the extent assumed and assigned to the purchaser under an asset purchase agreement) or draw on any Collateral or security therefor.  For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to File or serve a Cure Dispute or

a request, application, Claim, Proof of Claim, or motion for payment and shall not be subject to any Claims Bar Date or similar deadline governing Cure Costs or Claims.

**ZZ.    No Action Required; Corporate Action**

143.    No action of the respective directors, equity holders, managers, or members of the Confirmation Debtors is required to authorize the Confirmation Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions (subject, in each case, to any consent rights set forth or incorporated therein), or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Plan Supplement.  On the Effective Date, the New Organizational Documents and any other applicable amended and restated corporate Organizational Documents of each of the Reorganized Debtors and New TopCo shall be deemed authorized in all respects.  On the Effective Date, any transition services agreements, agency agreements, or similar agreements or arrangements among any of the Reorganized Debtors and/or New TopCo shall be deemed authorized in all respects.  On the Effective Date, all actions contemplated by the Plan (including any transaction described in, or contemplated by, the Restructuring Transactions Memorandum) and the Restructuring Transactions shall be deemed authorized and approved in all respects, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

144.    Any action under the Plan to be taken by or required of the Confirmation Debtors, the Reorganized Debtors, or New TopCo, including the adoption or amendment of certificates of formation, incorporation and bylaws, the issuance of securities and instruments, or the selection of officers or directors shall be authorized and approved in all respects, without any requirement of further action by any of the Confirmation Debtors', the Reorganized Debtors', or New TopCo's

equity holders, sole members, boards of directors or boards of managers, or similar body, as applicable.

145.    On or (as applicable) before the Effective Date, the appropriate officers of the Confirmation Debtors, the Reorganized Debtors, or New TopCo, as applicable, shall be authorized and, as applicable, directed to issue, execute, deliver, acknowledge, file, and/or record, as applicable, such securities, documents, contracts, instruments, releases and other agreements and take such other action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Confirmation Debtors, the Reorganized Debtors, and New TopCo, as applicable, without the necessity of any further Bankruptcy Court, corporate, limited liability company, board, or member approval or action.  In addition, the selection of the Persons who will serve as the initial directors, officers, and managers of the Reorganized Debtors and New TopCo as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or equity holders of the applicable Reorganized Debtor or New TopCo and each shall serve from and after the Effective Date pursuant to and in accordance with the terms of the applicable New Organizational Documents and other applicable documents until such director, officer, or manager resigns or is removed or terminated in accordance with the applicable New Organizational Documents and other applicable documents.

146.    Notwithstanding anything to the contrary herein, on or after the Effective Date of the Plan with respect to the Confirmation Debtors, TopCo shall be authorized to take all actions necessary to effectuate the terms of the Global Settlement as contemplated by the Plan (including any transactions described in, or contemplated by, the Restructuring Transactions Memorandum), including, without limitation, the contribution of the TopCo Cash Allocation to the Litigation

Trust, without any requirement or further action by the board of managers or equity holders of TopCo, as applicable, or approval of the Bankruptcy Court.  Without limiting the generality of the foregoing, all actions contemplated by the Global Settlement as set forth in the Plan and this Confirmation Order shall be deemed authorized and approved by the Bankruptcy Court in all respects, and all such actions taken or caused to be taken by TopCo or the Confirmation Debtors, as applicable, shall be deemed to have been authorized and approved by the Bankruptcy Court.

**AAA.  Additional Transactions Authorized Under the Plan**

147.    On or prior to the Effective Date, the Confirmation Debtors, with the consent of the Required Consenting First Lien Lenders, shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims or Equity Interests or render Claims or Equity Interests Unimpaired, as provided for under the Plan.

**BBB.  Treatment of Executory Contracts and Unexpired Leases**

148.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article X of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety; provided that, notwithstanding anything to the contrary herein or in the Plan, any compensation and benefits agreement, plan, program, and arrangement shall be treated as an Executory Contract to the extent such compensation and benefits agreement, plan, program, and arrangement is an executory contract under applicable Law.

149.    On the Effective Date, except as otherwise provided in the Plan, any Executory Contracts and Unexpired Leases of the Confirmation Debtors (a) not previously assumed, (b) not previously assumed and assigned in accordance with the Sale Order or other order approving such assumption and assignment, (c) not previously rejected pursuant to an order of the Bankruptcy

Court, and (d) identified on the Assumed Contracts List will be assumed effective as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and this Confirmation Order, except any Executory Contract or Unexpired Lease (i) identified on the Rejected Contracts/Lease List, (ii) that is the subject of (A) a separate motion or notice to reject, assume, or assume and assign or a Cure Dispute that is pending as of the Confirmation Date or (B) an order of the Bankruptcy Court that is not yet a Final Order, (iii) that previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code), (iv) of the American Freight Debtors that is not otherwise assumed or included on the Assumed Contracts List, (v) that relates to the Vitamin Shoppe Debtors, and is not otherwise assumed pursuant to the Sale Order or included on the Assumed Contracts List, or (vi) of Franchise Group, Inc. that is not otherwise assumed, assumed and assigned, or included on the Assumed Contracts List.  For the avoidance of doubt, except as otherwise set forth in the Plan or as included on the Assumed Contracts List, all Executory Contracts and Unexpired Leases of the American Freight Debtors, Franchise Group, Inc., and the Vitamin Shoppe Debtors shall be rejected as of the Effective Date.

150.    Entry of this Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Confirmation Debtors' Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective on the occurrence of the Effective Date or, as to rejected Executory Contracts and Unexpired Leases, on such other date as may be identified on the Rejected Contracts/Lease List or other motion or notice to reject by agreement of the affected counterparty to such Executory Contract or Unexpired Lease; provided that neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts

and Unexpired Leases to the Buyer pursuant to the Asset Purchase Agreement and any related documents relating to the Partial Sale Transaction.

151.    Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party (including the Buyer pursuant to the Partial Sale Transaction) on or prior to the Effective Date, shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by agreement of the parties or, other than with respect to non-residential Unexpired Leases, by an order of the Bankruptcy Court.

152.    Except as otherwise provided in the Plan or this Confirmation Order or agreed to by the Confirmation Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.    Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Confirmation Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

153.    Except as provided in paragraphs 118 and 121 of this Confirmation Order, to the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, increases, accelerates or otherwise alters any obligations, rights, or liabilities of the Confirmation Debtors or the Reorganized Debtors

thereunder as a result of, gives rise to any rights or benefits to any non-Debtor party to any such Executory Contract or Unexpired Lease, or creates any Lien on any asset or property of the Confirmation Debtors or the Reorganized Debtors as a result of, the assumption of such Executory Contract or Unexpired Lease or the execution or consummation of the Plan or any other Restructuring Transaction (including any change of control, sale of business, assignment, vesting, termination, acceleration, or similar provisions therein), then such provision shall be deemed unenforceable and modified (solely for purposes of the transactions contemplated under the Plan) such that the transactions contemplated by the Plan or any other Restructuring Transaction shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease, to exercise any other default-related rights with respect thereto, to increase, accelerate or otherwise alter the obligations, rights, or liabilities of the Confirmation Debtors or the Reorganized Debtors thereunder, to be entitled to any rights or benefits thereunder, or create or impose a Lien on any asset or property of the Confirmation Debtors or the Reorganized Debtors.  For the avoidance of doubt, Confirmation shall not be deemed an assignment of any Executory Contract or Unexpired Lease of the Confirmation Debtors, notwithstanding any change in name, organizational form, or jurisdiction of organization of any Confirmation Debtor in connection with the occurrence of the Effective Date.

154.    Any change of control provision in (a) any Unexpired Lease of non-residential real property shall be unenforceable solely in connection with (i) the assumption of such Unexpired Lease and (ii) the Restructuring Transactions, to the extent that any change of control provision would be triggered by the assumption of such Unexpired Lease or the consummation of Restructuring Transactions, and (b) any contract, agreement, or other document of the Confirmation Debtors, including any Executory Contract or Unexpired Lease (except as specified

in the foregoing clause (a)) assumed by the Confirmation Debtors, shall be deemed modified in accordance with section 365 of the Bankruptcy Code such that assumption of such agreement and consummation of the transactions contemplated by the Plan shall not (either alone or in combination with any other condition, event, circumstance or occurrence) (i) be prohibited, restricted, or conditioned on account of such provision or require any consent thereunder, (ii) breach or result in the modification or termination of such Executory Contract or Unexpired Lease (other than Unexpired Leases for non-residential real property), (iii) result in any penalty or other fees or payments, accelerated or increased obligations, renewal or extension conditions, or any other entitlement in favor of such non-Debtor party thereunder, including for the avoidance of doubt any penalty or other fees or payments, accelerated or increased obligations, renewal or extension conditions that are triggered upon or after the occurrence of (either alone or in combination with any other condition, event, circumstance or occurrence) a change of control (or term with similar effect), or (iv) entitle the non-Debtor party thereto to do or impose any of the foregoing or otherwise exercise any other default-related rights or remedies with respect thereto. For the avoidance of doubt, any Executory Contract or Unexpired Lease assumed pursuant to the Plan or otherwise may not be terminated on account of such assumption or on account of the Plan, the transactions contemplated therein, or any change of control or ownership interest composition or entity conversion that may occur at any time before, on, or in connection with the Effective Date. The Reorganized Debtors may rely on the Plan and this Confirmation Order as a complete defense to any action by a party to an assumed Executory Contract or Unexpired Lease to terminate such Executory Contract or Unexpired Lease on account of such assumption or on account of the Plan, the transactions contemplated therein, or any change of control or ownership interest composition that may occur at any time before or on the Effective Date. Each Executory Contract

or Unexpired Lease (including any amendments thereto entered into after the Petition Date and prior to the Effective Date) assumed pursuant to Article X of the Plan shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as may be deemed unenforceable or modified (each solely for purposes of the transactions contemplated under this Plan) by any order of this Bankruptcy Court authorizing and providing for its assumption, or applicable Law.

155.    Notwithstanding anything to the contrary in the Plan (other than Section 10.8 thereof) and in the Restructuring Support Agreement, except as otherwise agreed to by the Confirmation Debtors and the counterparties to an Unexpired Lease, the Confirmation Debtors or Reorganized Debtors, as applicable, subject to the Definitive Document Consent Rights, are authorized to amend or supplement the Rejected Contracts/Lease List in their discretion, prior to the later of (a) the Effective Date and (b) seven (7) days after the date on which the Bankruptcy Court determines that the Allowed Cure Cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Assumed Contracts List (or, in either case, such later date as may be agreed with a counterparty); provided that the Confirmation Debtors shall give prompt notice of any such amendment or supplement to any affected counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.  For the avoidance of doubt, with respect to any Unexpired Lease for nonresidential real property, the Confirmation Debtors shall timely perform all of their obligations under the Unexpired Lease as required by section 365(d)(3) of the Bankruptcy Code until such Unexpired Lease has been rejected or assumed pursuant to the Plan.

156.    Any guaranty of an Unexpired Lease that is assumed pursuant to the Plan, this Confirmation Order, or any other order of the Bankruptcy Court shall remain in full force and

effect as of the Effective Date, unless otherwise agreed in writing by the Confirmation Debtors or the Reorganized Debtors and the applicable counterparty.

157.    Notwithstanding anything in the Plan to the contrary, upon assumption of an Unexpired Lease, unless waived or otherwise modified by any amendment to such Unexpired Lease mutually agreed to by the applicable counterparty and the Confirmation Debtor(s) or the Reorganized Debtor(s), as applicable, the Confirmation Debtor(s) or the Reorganized Debtor(s), as applicable, shall be obligated to pay or perform on the date upon which such obligations become due in the ordinary course any accrued but unbilled and not yet due to be paid or performed obligations under such assumed Unexpired Lease as of the applicable deadline to File objections or disputes to the Cure Costs for such Unexpired Lease, including, but not limited to, common area maintenance charges, taxes, year-end adjustments, indemnity obligations, and repair and maintenance obligations, regardless of whether such obligations arose before or after the Effective Date; provided that all rights of the parties to any such assumed Unexpired Lease to dispute amounts asserted thereunder are fully preserved.

158.    For the avoidance of doubt, except as expressly provided in this Confirmation Order or as otherwise agreed upon between the Confirmation Debtors and such landlord, nothing in this Confirmation Order, the Plan, or the Plan Supplement, shall affect, modify, waive, limit, or expand upon the rights of any landlord with respect to outstanding letters of credit, security deposits, or surety bonds securing an obligation under an Unexpired Lease (whether such Unexpired Lease is assumed or rejected under the Plan or otherwise).

**CCC. Abandoned Property**

159.    The Confirmation Debtors or the Reorganized Debtors, as applicable, are authorized to abandon, and are deemed to have abandoned, any remaining personal property (including, without limitation, any furniture, fixtures, and equipment) located on the Confirmation

Debtors' leased premises associated with a rejected Unexpired Lease on the effective date of the rejection of such Unexpired Lease (the "Rejection Date") and such property shall be abandoned free and clear of any liens, claims, and encumbrances; provided that (a) the Confirmation Debtors or the Reorganized Debtors, as applicable, are not authorized to abandon, and are directed to remove any hazardous materials as defined under applicable Law from any leased premises as and to the extend they are required to do so by applicable Law and (b) to the extent the Confirmation Debtors or the Reorganized Debtors, as applicable, seek to abandon personal property that contains any "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Confirmation Debtors' employees and/or customers, or any other individual, the Confirmation Debtors or the Reorganized Debtors, as applicable, shall remove such information from such personal property prior to its abandonment.  Any personal property of the Confirmation Debtors or the Reorganized Debtors, as applicable, remaining on any leased premises associated with a rejected Unexpired Lease after the Rejection Date shall be deemed abandoned by the Confirmation Debtors or the Reorganized Debtors, as applicable, pursuant to section 554 of the Bankruptcy Code without any further notice to or action, order, or approval of the Bankruptcy Court, and the applicable counterparties to such Unexpired Leases shall be permitted, in their sole discretion, to sell, utilize, and/or dispose of any such abandoned property without notice or liability to the Confirmation Debtors, the Reorganized Debtors, or any third parties and, to the extent applicable, the automatic stay pursuant section 362 of the Bankruptcy Code is modified to allow such disposition.  The rights of the applicable counterparties to such Unexpired Leases to assert Claims for the disposition, removal, or storage of any abandoned property are reserved, as are all parties' rights to object to such Claims.

### DDD.  Professional Fee Escrow Account

160.    The Professional Persons of the Creditors' Committee shall be deemed to have estimated their Professional Fee Escrow Amount at $21 million minus any amounts paid to the Professional Persons of the Creditors' Committee prior to the Effective Date (the "Committee Reserve Amount").  The Debtors' funding of the Committee Reserve Amount to the Professional Fee Escrow Account, in addition to the funding of the TopCo Cash Allocation, shall fulfill the Debtors' obligations under the Plan to fund the Litigation Trust Escrow Amount to the Litigation Trust.  No later than the Effective Date, the Confirmation Debtors or the Reorganized Debtors, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professional Persons, and, with respect to the Committee Reserve Amount, for the Litigation Trust and the Professional Persons of the Committee, as applicable.  No Liens, Claims, or Equity Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Such funds shall not be considered property of the Estates of the Confirmation Debtors or the Reorganized Debtors, as applicable, on the Effective Date.  The amount of Professional Fee Claims owing to the Professional Persons shall be paid in Cash to such Professional Persons by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all such Allowed amounts owing to Professional Persons other than Professional Persons of the Creditors' Committee have been paid in full, any remaining amount in the Professional Fee Escrow Account reserved for such Professional Persons shall promptly be transferred to the Reorganized Debtors without any further notice to or action, approval, or order of the Bankruptcy Court.  When all such Allowed amounts owing to Professional Persons of the Creditors' Committee have been paid in full, Cash in the Professional Fee Escrow Account equal to the Committee Reserve Amount

minus Allowed amounts paid to Professional Persons of the Creditors' Committee shall promptly be transferred to the Litigation Trust without any further notice to or action, approval, or order of the Bankruptcy Court.  For the avoidance of doubt, this paragraph is not intended to, and shall not be deemed to modify, the Litigation Trust Escrow Amount (as that term is used in the Plan).

### EEE.   Post-Effective Date Fees and Expenses

161.    Upon the Effective Date, any requirement that Professional Persons comply with sections 327-331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Confirmation Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional Person in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### FFF.   U.S. Trustee Fees and Related Reporting Obligations

162.    All U.S. Trustee Fees that are due and owing as of the Effective Date shall be paid by the Confirmation Debtors in full in Cash on the Effective Date.  The Confirmation Debtors shall File all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Reorganized Debtors shall File with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  After the Effective Date, each of the Reorganized Debtors (or the Disbursing Agent acting on behalf of each of the Reorganized Debtors) shall pay any and all applicable U.S. Trustee Fees in full in Cash when due and payable.  The Reorganized Debtors shall remain obligated to pay any applicable U.S. Trustee Fees until the earliest of the closure, dismissal, or conversion to a case under chapter 7 of the Bankruptcy Code of the case of that particular Confirmation Debtor for whom the Confirmation Debtors or the Reorganized Debtors, as applicable, is responsible.  The U.S. Trustee shall not be treated as providing any release under the Plan.  U.S. Trustee Fees are Allowed.  The U.S. Trustee

shall not be required to File any Proof of Claim or any request for administrative expense for U.S. Trustee Fees.

**GGG.  Provisions Governing Distributions**

163.    The procedures governing distributions contained in <u>Article VIII</u> of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the distributions under the Plan shall be made by the Disbursing Agent. Notwithstanding anything to the contrary herein, in the Plan, or in any registration procedures, any reallocations of distributions under the Plan among Holders of Claims or Equity Interests by the Confirmation Debtors or the Disbursing Agent based upon instructions from such Holders of Claims or Equity Interests are hereby approved and authorized as if they were distributions to the Holders of Claims or Equity Interests under the Plan and any such distributions shall be governed by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents, and at the expiration of ninety (90) days from the Effective Date, to the extent any distribution or payment is undeliverable pursuant to the Plan, including with respect to the delivery of such distribution or payment to or by the ABL Credit Agreement Agent, the First Lien Credit Agreement Agent, the Second Lien Credit Agreement Agent, and the Holdco Credit Agreement Agent, as may be applicable, any such distributions or payments under the Plan (whether or not with respect to Cash, Reorganized Common Equity, Take-Back Term Loans, or the Exit ABL Facility) shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property Laws to the contrary) and, to the extent such unclaimed distribution is comprised of Reorganized Common Equity, such interests of Reorganized Common Equity shall be canceled.  For the avoidance of doubt, any

Litigation Trust Units that may be deemed unclaimed property under section 347(b) of the Bankruptcy Code shall revert to the Litigation Trust or such other Person as set forth in the Litigation Trust Agreement. Upon any reversion or revesting, the Claim of the Holder or its successors (including any designees) with respect to such property shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws, or any provisions in any document governing such property to the contrary.

**HHH. Procedures for Resolving Claims**

164.    The procedures for resolving Disputed, contingent, and unliquidated Claims or Equity Interests of the Confirmation Debtors contained in <u>Article IX</u> of the Plan shall be, and hereby are, approved in their entirety.

**III.    Dissolution of Creditors' Committee**

165.    The Creditors' Committee shall be automatically dissolved on the Effective Date of the Confirmation Debtors and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases (including with respect to TopCo) under the Bankruptcy Code, except for purposes of Filing applications for Professional Person compensation in accordance with the Plan. The Reorganized Debtors and the Litigation Trust shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

**JJJ.    Conditions Precedent to the Effective Date**

166.    The provisions governing the conditions precedent to Confirmation and the Effective Date set forth in <u>Article XI</u> of the Plan shall be, and hereby are, approved in their entirety, subject to satisfaction or waiver of such provisions pursuant to their terms. The Confirmation

Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms.

167.     For the avoidance of doubt, the Confirmation Debtors shall have paid in full in Cash (or the Confirmation Debtors shall pay in full in Cash substantially contemporaneously with consummation of the Restructuring Transactions), in accordance with the DIP Orders, all reasonable and documented fees, costs, and expenses incurred or estimated to be incurred through the proposed Effective Date by the First Lien Credit Agreement Agent, Seward & Kissel LLP, as counsel to the First Lien Credit Agreement Agent, and Blank Rome LLP, as Delaware counsel to the First Lien Credit Agreement Agent.

**KKK.  Retention of Jurisdiction**

168.     The provisions governing the retention of jurisdiction set forth in Article XIII of the Plan shall be, and hereby are, approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain exclusive jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases (including with respect to TopCo), as set forth in Article XIII of the Plan.

**LLL.  Binding Effect**

169.     Subject to Section 11.5 of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Confirmation Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

**MMM.**        **Filing of Additional Documents**

170. Subject to the terms and conditions of the Restructuring Support Agreement and the Plan, on or before substantial consummation of the Plan, the Confirmation Debtors shall File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Confirmation Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.  The Claims Agent is authorized to destroy all paper/hardcopy records related to this matter two (2) years after the Effective Date has occurred.

**NNN.  Provisions Regarding the Texas Comptroller and TWC**

171. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the Texas Comptroller of Public Accounts (the "Texas Comptroller") and the Texas Workforce Commission (the "TWC") reserve the following rights:  (a) any statutory or common Law setoff rights in accordance with section 533 of the Bankruptcy Code; (b) any rights to pursue any non-Debtor third parties for tax debts or claims; (c) the payment of interest on the Texas Comptroller's and the TWC's Allowed Administrative Expense Claims, if any; (d) to the extent that interest is payable with respect to any Allowed Administrative Expense Claim, Priority Tax Claim, or Secured Claim of the Texas Comptroller or the TWC, payment of the statutory rate of interest pursuant to Texas Tax Code § 111.060; and (e) the Texas Comptroller and the TWC are not required to File a motion or application for payment of Administrative Expense Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code.

172.    Should the Reorganized Debtors fail to make any payments as required in the Plan or this Confirmation Order, or remain current on post-petition and/or post-confirmation ordinary course tax reporting and payment obligations, the Texas Comptroller and the TWC shall provide written notice of that default to the Reorganized Debtors and their counsel advising of that default and providing a period of twenty-one (21) days to cure the default.  In the event the default is not cured within twenty-one (21) days, the Texas Comptroller or the TWC may pursue all rights and remedies available under applicable Texas Law to collect the full amount of all taxes, penalties, and interest owed.

## OOO. Provisions Regarding Omni

173.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, Proof of Claim No. 2702 (the "Omni POC") Filed by Omni Hotels Management Corporation as agent for Frisco Silver Star Hotel Company, LLC d/b/a Omni Frisco Hotel at The Star ("Omni") on March 21, 2025, shall be timely Filed; provided that the Confirmation Debtors and the Reorganized Debtors, as applicable, reserve, on behalf of themselves and the Litigation Trustee, as applicable, (a) all rights and defenses with respect to any Claim(s), if any, held by Omni that are covered by the Omni POC and (b) the ability to object to any such Claim(s) on any basis except on the basis that the Omni POC was not timely Filed; provided further that nothing in this paragraph shall be deemed an admission as to this amount, basis for, nature, validity, priority, or enforceability of any such Claim(s).

## PPP.  Provisions Regarding Richard Grigsby

174.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, Proof of Claim No. 2707 (the "Grigsby POC") Filed by Richard Grigsby ("Grigsby") on March 31, 2025 shall be deemed timely Filed; provided that the Confirmation Debtors and the Reorganized Debtors, as applicable, reserve, on behalf of themselves and the Litigation Trustee,

as applicable, (a) all rights and defenses with respect to any Claim(s), if any, held by Grigsby that are covered by the Grigsby POC, and (b) the ability to object to any such Claim(s) on any basis except on the basis that the Grigsby POC was not timely Filed; provided, further, that nothing in this paragraph 174 shall be deemed (i) an admission as to the amount, basis for, nature, validity, priority, or enforceability of any such Claim(s), or (ii) to alter or otherwise modify coverage, if any, under any of the Confirmation Debtors' insurance policies.  All parties' rights and defenses under applicable non-bankruptcy Law and the Bankruptcy Code with respect to the foregoing, including with respect to the right to seek relief from the Bankruptcy Court with respect to Section 12.6 of the Plan, are fully preserved.

### QQQ.  Provisions Regarding the SEC

175.    Notwithstanding any language to the contrary in the Plan, the Disclosure Statement, and/or this Confirmation Order, no provision shall (a) preclude the SEC from enforcing its police or regulatory powers or (b) enjoin, limit, impair, or delay the SEC from commencing or continuing any Claims, Causes of Action, proceedings, or investigations against any non-Debtor Person or non-Debtor Entity in any forum; provided that nothing in the Plan, the Disclosure Statement, or this Confirmation Order shall alter any legal or equitable rights of the Confirmation Debtors, the Reorganized Debtors, the Released Parties, or other non-Debtor Persons or non-Debtor Entities with respect to any such Claim, liability, Cause of Action, investigation, action, or proceeding, if any.

### RRR.  Provisions Regarding Assumed Contracts

176.    Notwithstanding anything to the contrary contained in the Plan, the Plan Supplement, or this Confirmation Order, upon assumption or assumption and assignment of any Assumed Contract pursuant to the Plan, the Confirmation Debtors, the Reorganized Debtors, or assignee, as applicable, shall be responsible for all obligations under such Assumed Contract, *cum*

*onere*, including, without limitation, liabilities (if any) for any defaults under such Assumed Contract, in each case arising or occurring after such assumption or assumption and assignment, and for payment or performance of any and all obligations under such Assumed Contract arising or occurring after such assumption or assumption and assignment when due in accordance with the terms of such Assumed Contract (irrespective of whether such obligations arose, occurred, or accrued before, on, or after the assumption or assumption and assignment of such Assumed Contract), including with respect to, if applicable, (a) claims for indemnification, (b) obligations to satisfy or discharge any Liens, including mechanics' Liens, against the premises where any assumed Unexpired Lease is located or any improvements or additions thereto, (c) year-end adjustment and reconciliation amounts that become due on or after the Effective Date of the Plan, including for royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, repairs and replacements, promotional funds, and percentage rent (if applicable under the terms of the Assumed Contract), and (d) the Confirmation Debtors shall maintain insurance coverage required under the Unexpired Leases and will continue to satisfy indemnification obligations arising under the Unexpired Leases (if any), including with regard to pre-Effective Date events or occurrences.

177.    Notwithstanding any provisions to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, all setoff rights of counterparties to Assumed Contracts and/or their affiliates are fully preserved.

**SSS.    Provisions Regarding Certain Government Matters**

178.    As to the United States of America (the "<u>United States</u>"), nothing in the Plan or this Confirmation Order shall: (a) discharge, release, enjoin, bar, impair, or otherwise preclude any Claim of the United States not subject to the Governmental Bar Date; (b) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Confirmation

Debtors, the Reorganized Debtors, or any non-Debtor; (c) be interpreted to set Cure Costs or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements, or other interests; (d) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Confirmation Debtors or the Reorganized Debtors, as applicable, and such rights and defenses are expressly preserved, subject to section 553 of the Bankruptcy Code; (e) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy Law; or (f) relieve any party from compliance with all licenses and permits issued by Governmental Units in accordance with non-bankruptcy Law.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall bar the Internal Revenue Service (the "IRS") from exercising its nonbankruptcy rights to offset any request for a tax refund for a tax period ending prior to the Petition Date against any prepetition claims of the United States government against any of the Confirmation Debtors to the extent permitted by the Bankruptcy Code.

179.    Nothing in the Plan or this Confirmation Order shall release, satisfy, discharge, or enjoin the collection of any Claim against any entity, including, but not limited to, the Confirmation Debtors by or on behalf of the United States for any liability arising (a) out of a postpetition tax period for which a return has not been filed or (b) as a result of a pending audit or audit that may be performed with respect to any postpetition tax period.  Furthermore, nothing shall enjoin the United States from amending any Claim against any Confirmation Debtor with respect to any tax liability (i) arising out of a postpetition tax period for which a tax return has not been filed or (ii) from a pending audit or audit that may be performed with respect to any

postpetition tax period.  Any liability arising (A) out of a postpetition tax period for which a return has not been filed or (B) as a result of a pending audit or audit which may be performed with respect to any postpetition tax period shall be paid in accordance with the terms of the Plan applicable to Claims of same priority as those liabilities, to the extent such liabilities are Allowed pursuant to section 1129 (a)(9) of the Bankruptcy Code.

180.    If the Reorganized Debtors do not timely object to the Priority Tax Claims in accordance with the Plan, such Priority Tax Claims shall be deemed Allowed Priority Tax Claims under the Plan.  Except as explicitly set forth herein, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Confirmation Debtors and the Reorganized Debtors, as applicable, shall pay any Allowed Priority Tax Claims consistent with section 1129(a)(9)(C) of the Bankruptcy Code and the IRS shall not be required to File a motion or application for payment of Administrative Expense Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code.

**TTT.  Provisions Regarding the D&O Stay Relief Order**

181.    Notwithstanding anything to the contrary in the Plan or the Plan Supplement, nothing herein or in the Plan or the Plan Supplement alters or supersedes the relief granted in the *Order Granting Motion of Andrew Laurence, Matthew Avril, Brian Kahn, Cynthia Dubin, and Thomas Herskovitz for Relief from the Automatic Stay to the Extent Applicable, to Allow Payment of Defense Costs and Other Losses Under Directors and Officers Insurance Policies* [Docket No. 1256] (as such order may be amended, modified, or supplemented, the "D&O Stay Relief Order"), and such order remains in full force and effect.  For the avoidance of doubt, the D&O Liability Insurance Policies, subject to the terms and conditions thereof, provide coverage for those insured persons covered by such policies (collectively, the "Insureds") for the remaining term of such policies and runoff or tail coverage, if applicable, after the Effective Date to the fullest extent permitted by such D&O Liability Insurance Policies, the Plan, the Plan Supplement, the

D&O Stay Relief Order, and applicable Law.  On and after the Effective Date, the Confirmation

Debtors, the Reorganized Debtors, or the Litigation Trustee, as applicable, shall not terminate or

otherwise reduce the coverage under any of the D&O Liability Insurance Policies, and Insureds

shall be entitled to the full benefits permitted by any such D&O Liability Insurance Policies and

applicable Law for the full term of such policies, provided that any indemnity obligations of the

Confirmation Debtors or the Reorganized Debtors that would otherwise be assumed by the

foregoing assumption of the D&O Liability Insurance Policies shall be governed as provided in

the Plan and shall not be deemed to be assumed with assumption of such D&O Liability Insurance

Policies.  Except as expressly provided in the D&O Stay Relief Order, Confirmation and

effectiveness of the Plan will not discharge, enjoin, impair, affect, or otherwise modify any rights

of the Insureds or any other beneficiaries under the D&O Liability Insurance Policies, including

policy nos. 01-685-80-72, ELU186333-22, NHS702418, HN-0303-6891-103022, and

DOX30012847801 and 01-760-24-67.  All rights of the Insureds, TopCo, the Confirmation

Debtors, and the Reorganized Debtors, as applicable, with respect to the D&O Liability Insurance

Policies are expressly preserved to the fullest extent permissible by applicable Law and the

applicable D&O Liability Insurance Policies.  Notwithstanding anything to the contrary herein,

the Litigation Trust shall retain the ability to pursue the D&O Liability Insurance Policies with

respect to Permitted Litigation Claims.

## UUU.  Provisions Regarding Texas Taxing Authorities

182.    For the avoidance of doubt and notwithstanding anything to the contrary in the Plan

or this Confirmation Order, the Confirmation Debtors shall pay all postpetition ad valorem tax

liabilities owing to the Texas Taxing Authorities[6] in the ordinary course of business as such tax

---

6    The "Texas Taxing Authorities" are all entities represented by Perdue Brandon Fielder Collins & Mott LLP,
     Linebarger Goggan Blair & Sampson LLP and McCreary Veselka Bragg & Allen including but not limited to:

debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the

Texas Taxing Authorities to File an Administrative Expense Claim and/or request for payment.  If

the Confirmation Debtors fail to pay the said ad valorem taxes by the statutory delinquency date,

penalties and interest properly charged under the Texas Property Tax Code shall accrue and be due

thereon, subject to any applicable limitation in the Bankruptcy Code.  To the extent that any of the

Texas Taxing Authorities have valid, perfected, and unavoidable tax Liens on account of 2025 ad

valorem tax liabilities, such tax Liens shall remain attached with the same priority to the

Confirmation Debtors' property, or proceeds from the sale thereof, until the applicable 2025 ad

valorem tax liabilities thereon have been fully paid, including any postpetition penalties and

---

Anderson County, Bell County Tax Appraisal District, Bowie Central Appraisal District, Brazos County, Burnet Central Appraisal District, Cherokee County, Cherokee County Appraisal District, Coryell County, Denton County (including City of Denton, Denton ISD, City of Lewisville), Guadalupe County, Hays County, Henderson County, Jasper County Tax Units (Jasper ISD), City of Waco et al, Midland Central Appraisal District, Pine Tree ISD, Taylor County Central Appraisal District, Terry County Appraisal District, Williamson County, Randall County Tax Office, Potter County Tax Office, Kerrville Independent School District, Copperas Cove Independent School District, Lubbock Central Appraisal District, Midland County, Brownsville Independent School District, Brazoria County, et al, Brazoria County, MUD #34, Clear Creek Independent School District, Spring Independent School District, Harris County Water Control District #110, City of Houston, Alief Independent School District, Spring Branch Independent School District, Pasadena Independent School District, Klein Independent School District, Baybrook Municipal Utility District 1, Humble Independent School District, Harris County Municipal Utility District 186, Harris County Water Control District #145, West Harris County Municipal Utility District 6, Harris County Municipal Utility District 70, City of Southside Place, Harris County Municipal Utility District 367, Nottingham County Municipal Utility District, Harris County Municipal Utility District 168, Tomball Independent School District, City of Tomball, City of Montgomery, Magnolia Independent School District, Montgomery County Municipal Utility District 95, Carrollton-Farmers Branch Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Wichita County Tax Office, Nacogdoches County CAD, et al., Titus County Appraisal District, et al., Tyler Independent School District, Fort Bend Independent School District, Cinco Southwest Municipal Utility District #95, Fort Bend County Levee Improvement District #136, Fort Bend County Municipal Utility District #3, City of Allen, Allen Independent School District, Bexar County, City of Carrollton, Cypress-Fairbanks Independent School District, Dallas County, Deer Park Independent School District, City of El Paso, Ellis County, Fort Bend County, City of Frisco, Grayson County, Gregg County, Harris County Emergency Service District No. 08, Harris County Emergency Service District No. 09, Harris County Emergency Service District No. 11, Harris County Emergency Service District No. 16, Harris County Emergency Service District No. 48, Hays CISD, Hidalgo County, Hopkins County, City of Houston, Houston Community College System, Houston Independent School District, Irving Independent School District, Jefferson County, Katy Independent School District, Kaufman County, Kerr County, Lewisville Independent School District, Lone Star College System, City of McAllen, McLennan County, Montgomery County, Navarro County, Northwest Independent School District, Nueces County, Parker CAD, City of Pasadena, City of Prosper, Prosper Independent School District, Rockwall CAD, San Patricio County, Smith County, City of Sulphur Springs, Sulphur Springs Independent School District, Tarrant County, Tom Green CAD, Wise County, and City of Wylie.

interest to the extent permitted by the Bankruptcy Code.  The Texas Taxing Authorities' lien priority shall not be primed or subordinated by any exit financing approved by the Bankruptcy Court in conjunction with the Confirmation of this Plan or otherwise to the extent the Texas Taxing Authorities' Liens arose in the ordinary course of business and are granted priority over any other Liens pursuant to applicable non-bankruptcy Law.  Notwithstanding any of the foregoing, all parties' rights to object to the priority, validity, amount, and extent of the claims and tax Liens asserted by the Texas Taxing Authorities are fully preserved.

**VVV.  Provisions Regarding Tempur Sealy**

183.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the rights of Temper Sealy International, Inc. and its affiliates to assert any right of setoff or recoupment that they may have under any agreement with the Confirmation Debtors and applicable Law are fully preserved, including, but not limited to, the assertion of rights of setoff or recoupment in connection with Claims reconciliation or as a defense to any Claim or Cause of Action, if any, by the Confirmation Debtors, the Reorganized Debtors, any successors to the Confirmation Debtors, or the Litigation Trustee, as applicable.

**WWW.        Provisions Regarding the Chubb Companies**

184.    Notwithstanding anything to the contrary in the Plan (including, without limitation and for the avoidance of doubt, Sections 7.5, 7.19, 7.22, 8.17, and 10.8 thereof), the Plan Supplement, this Confirmation Order (including, without limitation and for the avoidance of doubt, any provisions in this Confirmation Order that correspond to and/or restate any of the foregoing Plan provisions), any other Definitive Document, the Bar Date Order, any notice pursuant to the Bar Date Order or any Claim objection, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, purports to limit or impact a setoff or recoupment right,

grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases under the Plan or this Confirmation Order):

(a) on the Effective Date, the Reorganized Debtors shall assume (i) all of the insurance policies issued by the Chubb Companies[7] with an unexpired term (including for all lines of coverage and all extensions and/or renewals thereof) that currently provide coverage to the Confirmation Debtors or their predecessors (collectively, the "Current Chubb Policies"), and (ii) all agreements, documents, or instruments related thereto (collectively, and together with the Current Chubb Policies, each as amended, modified, or supplemented, and including any exhibit or addenda thereto, collectively, the "Chubb Insurance Program"); provided, however, for the avoidance of doubt, the Confirmation Debtors shall not assume any insurance policies with the Confirmation Debtors issued by the Chubb Companies that have expired and/or terminated pursuant to their terms (any such expired Chubb Insurance Policies, collectively, the "Expired Chubb Policies," and together with the Current Chubb Policies, the "Chubb Insurance Policies");

(b) on and after the Effective Date, the Expired Chubb Policies shall ride through these Chapter 11 Cases unaltered and continue in full force and effect unaltered thereafter in accordance with the terms and conditions thereof and applicable non-bankruptcy Law; provided, however, that for the avoidance of doubt, all monetary obligations shall be treated as provided in subsection (c) hereof;

(c) on and after the Effective Date, the Reorganized Debtors shall be liable for their and all of the Confirmation Debtors' obligations under the Chubb Insurance Program and the Expired Chubb Policies, regardless of whether any such obligations arise or become due before, on, or after the Effective Date, without the need or requirement for the Chubb Companies to File or serve any objection to a notice of proposed Cure Cost (or lack of such notice) or File or serve a request, motion, or application for payment of such obligations, or Proof of Claim, Cure Cost, serve a Cure Objection, or Administrative Expense Claim; but in each case subject to the Confirmation Debtors' or Reorganized Debtors' (as applicable) rights and defenses under the Chubb Insurance Program and/or applicable non-bankruptcy Law.  For the avoidance of doubt, the Reorganized Debtors' and the Confirmation Debtors' monetary

---

[7] The term "Chubb Companies" shall mean ACE American Insurance Company and/or any of its U.S.-based affiliates and the predecessors and successors, collectively, and solely in their capacities as insurers and/or third-party administrators of one or more of the Confirmation Debtors.

obligations, as applicable, with regard to (i) a covered claim under an Expired Chubb Policy for a date of loss after the Petition Date but prior to the expiration or termination of the applicable Expired Chubb Policy or (ii) any covered claim under a Current Chubb Policy shall be satisfied by the Reorganized Debtors in the ordinary course in full dollars pursuant to the applicable Chubb Insurance Policy, the Chubb Insurance Program, and/or applicable non-bankruptcy Law (or prior to the Effective Date, bankruptcy Law, if applicable and provided such is in accordance with this paragraph 184); provided, further, that, for the avoidance of doubt, all of the Chubb Companies' rights against or interest in (including any valid, enforceable, perfected, and non-avoidable security interests in and Liens on) any and all letters of credit, Cash, trusts, accounts, credits, and other collateral and security provided to or held by the Chubb Companies in relation to the Chubb Insurance Program and/or the Expired Chubb Policies (collectively, the "Chubb Collateral") are specifically reserved and preserved; provided, however, that Reorganized Debtors' and the Confirmation Debtors' monetary obligations, as applicable, with regard to any claim covered under a Chubb Insurance Policy where the date of loss occurred prior to the Petition Date (a "Prepetition Covered Loss") shall be satisfied first by setting off, using, or otherwise applying (in full dollars) the Chubb Collateral to such amounts in accordance with the terms and conditions of the Chubb Insurance Program and Expired Chubb Policies, as applicable, and applicable non-bankruptcy Law (or prior to the Effective Date, bankruptcy Law, if applicable and provided such is in accordance with this paragraph 184); provided, further, that to the extent that the Chubb Companies believe they have a Claim against the Confirmation Debtors that becomes liquidated, due, and owing related to a Prepetition Covered Loss that is not satisfied by the Chubb Collateral, the Chubb Companies shall be permitted to amend their Proof of Claims, (Claim Nos. 1264 and 1279) (the "Chubb Claims"), as applicable, to reflect such liquidated amount, and such claims shall be treated as General Unsecured Claims; provided, further, at any time after the Effective Date the Chubb Companies may draw down on any letter of credit that is Chubb Collateral and hold the proceeds thereof as security for the obligations of the insureds including the Confirmation Debtors (and the Reorganized Debtors, as applicable) and/or apply such proceeds to the obligations of the insureds, including the Confirmation Debtors (and the Reorganized Debtors, as applicable), under the Chubb Insurance Program and any Expired Chubb Policies, as applicable, in such order as the Chubb Companies may determine in accordance with the Chubb Insurance Program and Expired Chubb Policies, as applicable, and applicable non-bankruptcy Law; provided, further,

that all parties' rights pursuant to the Chubb Insurance Program, the Chubb Expired Policies, and/or applicable non-bankruptcy Law and, if applicable, bankruptcy Law, with respect to the Chubb Claims are reserved and preserved; provided, however, for the avoidance of doubt, no party may object to or challenge the Chubb Claims on any basis that is inconsistent with the treatment outlined in this paragraph;

(d)     except as expressly provided in this paragraph 184, nothing (i) alters, modifies, supplements, changes, expands, diminishes, releases or otherwise amends the terms and conditions of (or the coverage provided by) the Chubb Insurance Program or the Expired Chubb Policies, or the rights, duties, obligations, and defenses of the Chubb Companies, the Confirmation Debtors, the Reorganized Debtors, the insureds, or any other individual or Entity, as applicable, under the Chubb Insurance Program or the Expired Chubb Policies, including (A) the Chubb Companies' setoff or recoupment rights under the Chubb Insurance Program and/or the Chubb Insurance Policies (subject to the terms thereto and/or applicable non-bankruptcy Law) against the Confirmation Debtors and/or the Reorganized Debtors, and/or (B) the Chubb Companies' interest in Chubb Collateral, or (ii) alters or modifies the duty, if any, that the Chubb Companies have to pay claims covered by the Chubb Insurance Policies and their right to seek payment or reimbursement from the Confirmation Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any Chubb Collateral;

(e)     nothing shall permit or otherwise effect a sale, assignment, or any other transfer of the Chubb Insurance Program or the Expired Chubb Policies, as applicable, and/or any rights, proceeds, benefits, claims, rights to payments, or recoveries under or relating thereto without the prior express written consent of the Chubb Companies; and

(f)     on and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article XII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against the Chubb Companies under applicable non-bankruptcy Law to proceed with their claims; (ii) the Chubb Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against the Chubb Companies under applicable non-bankruptcy Law, or an order has been entered by the Bankruptcy Court granting a claimant relief

from the automatic stay or the injunctions set forth in <u>Article XII</u> of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (iii) the Chubb Companies to draw against any or all of Chubb Collateral provided by or on behalf of the Confirmation Debtors (or the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the insureds including the Confirmation Debtors (and the Reorganized Debtors, as applicable) and/or apply such proceeds to the obligations of insureds including the Confirmation Debtors (and the Reorganized Debtors, as applicable) under the Chubb Insurance Program or the Chubb Insurance Policies, in each case, to the extent the Chubb Companies have valid, enforceable, perfected, and non-avoidable security interests in and Liens on any such Chubb Collateral, as applicable, and, for the avoidance of doubt, the drawing on any letters of credit shall be subject to the terms of such letters of credit, as applicable; <u>provided</u> that, for the avoidance of doubt, all of the Chubb Companies', the Confirmation Debtors', and the Reorganized Debtors' rights with respect to the foregoing pursuant to the Chubb Insurance Program, the Chubb Insurance Policies (including the Expired Chubb Policies and, for the avoidance of doubt, any Chubb Collateral), and/or applicable non-bankruptcy Law shall be unaltered and preserved; and (iv) the Chubb Companies to cancel any insurance policy that is part of the Chubb Insurance Program, and take other actions relating to the Chubb Insurance Program and the Chubb Insurance Policies (including effectuating a setoff and/or any recoupment or subrogation rights or claims, all of which are specifically preserved), in each case in accordance with the applicable terms of the Chubb Insurance Program and the Chubb Insurance Policies and/or applicable non-bankruptcy Law.

Notwithstanding anything to the contrary in this paragraph 184: (i) the Reorganized Debtors shall not be deemed to have assumed any obligation to provide defense and indemnification to any director or officer that would entitle such individuals to any Claim against, or satisfaction from, any Reorganized Debtors, other than (A) from insurance proceeds, if any, that may be available under any applicable D&O Liability Insurance Policies or (B) as such obligations are expressly provided for in the Plan, including pursuant to sections 7.5 and 7.18 thereof; <u>provided</u>, <u>however</u>, notwithstanding the immediately foregoing, coverage for defense and indemnity under any D&O Liability Insurance Policies issued by the Chubb Companies shall remain pursuant and subject to

the terms and conditions of any applicable D&O Liability Insurance Policy and any claim that the

Chubb Companies may have against the Confirmation Debtors or the Reorganized Debtors, as

applicable, on account of any such claim shall be treated as provided in this paragraph 184; and

(ii) nothing in this paragraph shall prevent the Chubb Companies from administering, handling,

settling, or paying such defense and indemnification claims in the ordinary course and in full

dollars, subject to the terms and conditions of any applicable Chubb Insurance Policy.  For the

avoidance of doubt, this paragraph 184 only applies to the Chubb Insurance Program and Chubb

Expired Policies, claims arising therefrom, and claims covered thereunder.

## XXX.  Provisions Regarding Applicable Landlords

185.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order,

the Reorganized Debtors shall provide the Applicable Landlords[8] at least five (5) days' notice prior

to the removal from the Claims Register of any Applicable Landlords' Claims which are

disallowed or expunged pursuant to the Plan as a result of such Claims not being timely Filed or

as a result of any Cure Costs being fully paid.

186.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order,

nothing herein shall permit the Confirmation Debtors or the Reorganized Debtors, as applicable,

to assign any Unexpired Leases of the Applicable Landlords except as provided for under

sections 365(a) and 1123 of the Bankruptcy Code.  After the Effective Date, the Confirmation

Debtors shall provide the Applicable Landlords notice to the extent required by the terms of the

---

[8]    "Applicable Landlords" means ARC CPFAYNC001, LLC, ARC MCLVSNV001, LLC, ARC TSKCYMO001, LLC, ARG LSSALMD001, LLC, Acadia Realty Trust, BMA Springhurst LLC, Brixmor Operating Partnership LP, Continental Realty Corporation, Deutsche Asset & Wealth Management, Federal Realty OP LP, FR Grossmont, LLC, Prime/FRIT Mission Hills, LLC, Gerrity Group, LLC, Great Hills Retail, Inc., RD Management LLC, Ritchie Interchange, LLC, Realty Income Corporation, Macerich Company, The Sterling Organization, LLC, Urban Edge Properties, LP, Northlake Village Owner, LLC, PF Portfolio 2, LP, River Oaks El Mercado, LLC, IREIT Pittsburgh Settlers Ridge, L.L.C., CRI New Albany Square LLC, Grove City Plaza LP, and Northridge Crossing L.P.

applicable Unexpired Leases in the event of any "change or control" or assignment of such Unexpired Leases, including as a result of or in connection with any Restructuring Transaction.

**YYY.  Provisions Regarding Buddy Mac Holdings, LLC**

187.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing herein shall modify any assumed Executory Contracts with Buddy Mac Holdings, LLC or any of its direct or indirect subsidiaries (collectively, "<u>BMH</u>," and such Executory Contracts, collectively, the "<u>Buddy Mac Agreements</u>") to eliminate any prohibitions in any Buddy Mac Agreement regarding a change of control or assignment provision, if any, other than with respect to the Restructuring Transactions contemplated under the Plan.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, to the extent the Confirmation Debtors reject any Buddy Mac Agreement after the Effective Date in accordance with the Plan, including following the determination or resolution of a Cure Dispute, any such rejection shall be deemed to be effective as of the earlier of a date agreed to by the parties or ten (10) days after the date that notice is first provided to BMH of such rejection (notice by email to the following address shall suffice: ian@macfamco.com, with a copy to matthew.ward@wbd-us.com).  Notwithstanding anything to the contrary in <u>Article XIII(a)</u> of the Plan, the parties agree that the Bankruptcy Court shall not exercise jurisdiction after the Effective Date with respect to any matters related to the parties' contractual obligations under any Buddy Mac Agreement, unless such contractual matters need to be addressed by the Bankruptcy Court as relating to the Plan, these Chapter 11 Cases, or the adjudication of assumption, assumption and assignment, or rejection issues or Cure Disputes, unless the Bankruptcy Court otherwise has jurisdiction over such matters pursuant to applicable Law and declines to abstain.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, except as agreed to by the Confirmation Debtors and BMH, each assumed Buddy Mac Agreement shall include all fully integrated modifications, amendments, supplements,

restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests or rights.

188.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the rights of the Confirmation Debtors, the Reorganized Debtors, and each of their successors and assigns, as applicable, and BMH are preserved with respect to arguing the applicability of non-bankruptcy Law in determining the effects of rejecting any Buddy Mac Agreement, including each party's rights and obligations thereunder.  For the avoidance of doubt, BMH's objection to the Confirmation Debtors' assumption of the franchise agreements for store 13 (the "Store 13 Franchise Agreement"), as set forth in the BMH Objection, constitutes a Cure Dispute and all parties' rights are preserved with respect to such Cure Dispute.  The Store 13 Franchise Agreements shall not be assumed and assigned until such Cure Dispute is resolved, including the cure of any nonmonetary defaults under the Store 13 Franchise Agreements to the extent required by the Bankruptcy Court and under the Bankruptcy Code.  The Confirmation Debtors' and the Reorganized Debtors' rights are reserved to reject the Store 13 Franchise Agreements in accordance with the Plan and this Confirmation Order, including, without limitation, in the event the Bankruptcy Court determines that the Allowed Cure Cost with respect to the Store 13 Franchise Agreements is greater than the amount set forth in the Assumed Contracts List and/or the Bankruptcy Court determines that the Store 13 Franchise Agreement may not be assumed.

## ZZZ.  Provisions Regarding STORE

189.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the rejection of the *Master Lease Agreement* dated September 24, 2013 between STORE Master Funding IV, LLC ("STORE") and Buddy's Newco, LLC (such lease, and any ancillary documents executed in connection therewith or pursuant thereto, the "Master Lease") and certain sublease

agreements associated therewith (collectively, with any ancillary documents executed in connection therewith or pursuant thereto, the "Subleases") shall not (a) prejudice, modify, or impair any of STORE's rights thereunder, including, without limitation, STORE's rights to enforce a subtenant's agreement to attorn to STORE upon STORE's election to assume the applicable Sublease, or (b) constitute or be deemed to effect a termination of the Master Lease or any applicable Sublease. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the rights, claims, and remedies of the Confirmation Debtors, the Reorganized Debtors, subtenants, if any, STORE, and each of their respective successors and assigns, as applicable, are reserved with respect to any rights, claims, or defenses under the Master Lease and the Subleases, as applicable, and applicable Law. For the avoidance of doubt, in accordance with section 365 of the Bankruptcy Code, the Confirmation Debtors shall remain obligated to perform all obligations under the Master Lease until the Master Lease has been deemed rejected or assumed pursuant to the Plan as approved by the Bankruptcy Court.

190.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the effective date of the Confirmation Debtors' rejection of the Master Lease or any applicable Sublease (if any) shall be the later of (a) the proposed effective date of the rejection of the Master Lease or any applicable Sublease as set forth in the Rejected Contracts/Lease List, (b) the date upon which the applicable Confirmation Debtor surrenders in writing to STORE (including via email) the leased premises associated with the Master Lease and returns the keys, key codes, or security codes, as applicable (or certifies in writing that STORE is authorized to change the locks), and (c) such other date to which the Confirmation Debtors and STORE agree to or as otherwise ordered by the Bankruptcy Court.

**AAAA.**          **Provisions Regarding Pentex**

191.     The Pentex objection [Docket No. 1419] (the "Pentex Objection") filed by Pentex RTO, LLC, EightSixThree RTO, LLC, Pentex Top Left, LLC and Pentex 1848, LLC (individually or collectively, as applicable, "Pentex") asserts certain objections, including a Cure Dispute. Notwithstanding anything in the Plan, this Confirmation Order, or any other document to the contrary, all parties' rights are reserved with respect to such Pentex Objection.  Further, for the avoidance of doubt, any franchise agreement subject to the Pentex Objection (collectively, the "Pentex Franchise Agreements") shall not be assumed and/or assumed and assigned until such Pentex Objection is resolved by further order of the Bankruptcy Court or written agreement of the parties.  On or prior to the Effective Date, the Confirmation Debtors shall provide Pentex with notice of their intention to assume or reject the Pentex Franchise Agreements (in whole or in part), and, to the extent the Pentex Objection is not resolved prior to the Effective Date, the Confirmation Debtors and Pentex shall meet and confer in good faith to reach agreement on a discovery and briefing schedule and hearing date in connection with the resolution of the Pentex Objection.  In the event the Confirmation Debtors and Pentex cannot reach a consensual resolution, the parties will request the Bankruptcy Court set a litigation schedule after notice and opportunity to be heard and all parties' rights are reserved to seek further relief from the Bankruptcy Court with respect thereto.  Notwithstanding any of the foregoing, the Confirmation Debtors' and the Reorganized Debtors' rights are fully reserved to reject the Pentex Franchise Agreements in accordance with the Plan and this Confirmation Order, including, without limitation, in the event the Bankruptcy Court determines that the Allowed Cure Cost with respect to the Pentex Franchise Agreements is greater than the amount set forth in the Assumed Contracts List.

**BBBB. Provisions Regarding Heritage Seymour**

192.    Confirmation Debtor PSP Distribution, LLC ("<u>Tenant</u>") leases warehouse space at 1510 E. 4th Street Road, Seymour, Indiana from Heritage Seymour I, LLC and Heritage Seymour II, LLC (together, "<u>Landlord</u>") pursuant to that certain *Amended and Restated Building Lease* dated October 14, 2021, as amended from time to time (the "<u>PSP Lease</u>"), which was guaranteed by Confirmation Debtor PSP Stores LLC ("<u>Guarantor</u>").  Tenant and Guarantor agree that the PSP Lease, as amended by, among other things, the *Second Amendment to the Amended and Restated Building Lease* executed on May 16, 2025 (the "<u>Second PSP Lease Amendment</u>"), shall be assumed under the Plan.  Notwithstanding any contrary provision(s) of the Plan and/or this Confirmation Order, all rights and obligations of Tenant and Landlord under the Lease (including those rights and obligations under the Second PSP Lease Amendment) shall remain in full force and effect, unaffected by the Plan and/or this Confirmation Order.

**CCCC.        Reservation of Rights**

193.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until the Bankruptcy Court enters this Confirmation Order.  None of the Filing of the Plan, any statement or provision contained herein, or the taking of any action by the Confirmation Debtors with respect to the Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Confirmation Debtors with respect to any Claims or Equity Interests prior to the Effective Date.

**DDDD.        Severability**

194.    If, prior to the entry of this Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Confirmation Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the

original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

195.    Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Confirmation Debtors' consent and the Global Settlement Parties' consent; and (c) nonseverable and mutually dependent.

## EEEE. Governmental Approvals Not Required

196.    Except as otherwise specifically provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the Laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and the Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

## FFFF. Recording

197.    The Confirmation Debtors and Reorganized Debtors, as applicable, hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar

tax.  Such notice shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers.

## GGGG.    Inconsistency

198.    In the event of an inconsistency between the Plan, the Disclosure Statement, and the Disclosure Statement Supplement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in this Confirmation Order).  In the event of an inconsistency between this Confirmation Order and the Plan, the Disclosure Statement, or the Disclosure Statement Supplement, this Confirmation Order shall control.

## HHHH.    Documents, Mortgages, and Instruments

199.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

## IIII.    Substantial Consummation

200.    Substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## JJJJ.    Effect of Failure of Conditions

201.    If all of the conditions to effectiveness have not been satisfied or duly waived and the Effective Date has not occurred on or before the first Business Day that is more than thirty (30) days after the Confirmation Date, or by such later date as set forth by the Confirmation Debtors in a notice Filed with the Bankruptcy Court prior to the expiration of such period, then the Confirmation Debtors, with the consent of the Required Consenting First Lien Lenders, may File

a motion to vacate this Confirmation Order.  Notwithstanding the Filing of such a motion, this Confirmation Order shall not be vacated if all of the conditions to consummation set forth in Section 11.1 and Section 11.2 of the Plan are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If this Confirmation Order is vacated pursuant to Section 11.4 of the Plan, the Plan shall be null and void in all respects, this Confirmation Order shall be of no further force or effect, no distributions under the Plan shall be made, the Confirmation Debtors and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in the Confirmation Debtors; (b) prejudice in any manner the rights of the Confirmation Debtors, any Holders of Claims or Equity Interests, or any other Entity; or (c) constitute an admission, acknowledgment, offer or undertaking by any Confirmation Debtor or any other Person with respect to any matter set forth in the Plan.

## KKKK.    Modifications or Amendments

202.    The provisions governing the modification, revocation, or withdrawal of the Plan set forth in Article XIV of the Plan shall be, and hereby are, approved in their entirety.  The Confirmation Debtors, subject to the consent requirements set forth in the Plan and the Restructuring Support Agreement and subject to section 1127 of the Bankruptcy Code, may modify or amend the Plan Supplement until the occurrence of the Effective Date.

## LLLL. Confirmation Debtors' Actions Post-Confirmation Through the Effective Date

203.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Confirmation Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the

Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Confirmation Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Restructuring Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Restructuring Transactions, in each case subject to the terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Confirmation Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings (as defined in the First Day Declaration).

**MMMM.**      **Notice of Confirmation and Effective Date**

204.      In accordance with Bankruptcy Rules 2002 and 3020(c), within five (5) Business Days of the Effective Date, the Reorganized Debtors shall cause the notice of Confirmation and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Notice of Effective Date"), to be served on all known Holders of Claims and Equity Interests and the Bankruptcy Rule 2002 service list.  Notwithstanding the foregoing, no service of the Notice of Effective Date or of any kind shall be required to be mailed or made upon any Entity to whom the Confirmation Debtors mailed the Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Confirmation Debtors or the Reorganized Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Further, the Confirmation Debtors and the Reorganized Debtors, as applicable, shall only

be required to serve Holders who have not Filed a Proof of Claim in these Chapter 11 Cases with the Notice of Effective Date to the extent that such Holders have active electronic mail addresses for such Holders.  In addition, no later than five (5) Business Days after the Effective Date, the Confirmation Debtors and the Reorganized Debtors, as applicable, shall cause the Notice of Effective Date, modified for publication, to be published on one occasion in *The New York Times* (national edition) or another similar nationally circulated news publication.  The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

**NNNN.       Headings**

205.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**OOOO.       Final Order and Waiver of Stay**

206.    For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately, be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Confirmation Debtors are authorized to consummate the Plan; provided that the Debtors shall not consummate the Plan or the Global Settlement before June 5, 2025.

**Dated: June 2nd, 2025**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**