# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FRANCHISE GROUP, INC., *et al.*,[1] | ) Case No. 24-12480 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date:** |
| | ) June 17, 2025 at 10:30 a.m.(ET) |
| | ) |
| | ) **Objection Deadline:** |
| | ) June 10, 2025 at 4:00 p.m. (ET) |

## DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER (I) EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

as follows in support of this motion (this "Motion"):[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) extending the deadline by which the Debtors have the exclusive right to (i) file a chapter 11 plan by 90 days through and including September 1, 2025,[3] (the "Filing Exclusivity Period"), and (ii) solicit votes thereon by 90 days through and including October 29, 2025 (the "Solicitation Exclusivity Period," and together with the Filing Exclusivity Period, the "Exclusivity Periods"), without prejudice to the Debtors' rights to seek further extensions of the Exclusivity Periods, and (b) granting related relief. Absent the relief requested herein, the Filing Exclusivity Period will expire on June 2, 2025, and the Solicitation Exclusivity Period will expire on July 31, 2025.

**Preliminary Statement**

2. On April 7, 2025, the Bankruptcy Court entered the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 1253] (the "First Exclusivity Order") extending the Debtors' Exclusivity Periods through and including June 2, 2025, for filing a chapter 11 plan, and July 31, 2025, for soliciting votes on a chapter 11 plan, without prejudice to the Debtors' ability to further extend the Exclusivity Periods. By this Motion, the Debtors seek a further extension to ensure that the Debtors can emerge from chapter 11 expeditiously without distraction from other potential competing plans.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them later in this Motion or in the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1454] (as may be amended, supplemented, or otherwise modified, the "Plan"), as applicable.

[3] The date that is 90 days after June 2, 2025 is Sunday, August 31, 2025. By operation of Bankruptcy Rule 9006, the deadline would be extended to the next business day, Monday, September 1, 2025.

3. Since entry of the First Exclusivity Order, the Debtors have made substantial progress in these chapter 11 cases. Notably, the Debtors reached a comprehensive Global Settlement with the Ad Hoc Group, the Freedom Lender Group, and the Creditors' Committee, as further detailed herein, secured overwhelming support for the Plan from the Voting Classes (as defined in the Disclosure Statement Supplement Order) (with the exception of certain Debtor entities in Class 6), successfully closed the Partial Sale Transaction, participated in hearings before the Bankruptcy Court to consider Confirmation of the Plan, and obtained entry of the *Findings of Fact, Conclusions of Law, and Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Approving the Global Settlement and Release of Claims and Causes of Action By and Among the Global Settlement Parties* [Docket No. 1596] (the "Confirmation Order") on June 2, 2025, approving the Global Settlement and confirming the Plan for all Debtors other than TopCo (collectively, the "Confirmation Debtors").

4. The Debtors are currently working towards emerging from chapter 11 with respect to the Confirmation Debtors on or after June 5, 2025, and are evaluating the best path forward with respect to TopCo, including potentially seeking confirmation of a plan for TopCo. As the Debtors will not emerge from chapter 11 prior to the current expiration of the Filing Exclusivity Period, the Debtors are seeking a further extension of the Exclusivity Periods out of an abundance of caution to preserve the momentum of the chapter 11 cases and safeguard the meaningful progress achieved to date. This extension is necessary to ensure that the Debtors stay on track to emerge from chapter 11 on a timeline that is in the best interests of the Debtors' estates, without the risk of delay, disruption, and additional costs that could follow an expiration of the Exclusivity Periods. A 90-day extension of the Exclusivity Periods is therefore appropriate and will not prejudice any

parties in interest.  The Ad Hoc Group, the Freedom Lender Group, and the Creditors' Committee are supportive of the relief requested herein.

5.     There is no question that these chapter 11 cases have progressed meaningfully toward conclusion since entry of the First Exclusivity Order.  Specifically, the Debtors have spent significant time and resources:

- addressing questions, concerns, and issues raised by employees, vendors, utility companies, and other parties in interest;

- participating in the second meeting of creditors and equity security holders pursuant to section 341 of the Bankruptcy Code;

- preparing and submitting amended Schedules on April 28, 2025;

- responding to diligence requests from the Creditors' Committee, the Ad Hoc Group, the Freedom Lender Group, and other key stakeholder groups;

- obtaining entry of the second order enlarging the period within the Debtors may remove actions [Docket No. 1532];

- concluding the investigations into estate claims and causes of action, as evidenced by the Freedom HoldCo Independent Director Report [Docket No. 1186];

- negotiating and finalizing the Global Settlement with the Global Settlement Parties, as reflected in the Plan;

- preparing and receiving approval to distribute the Disclosure Statement Supplement pursuant to the Global Settlement;

- filing the *Notice of Filing of Amended Plan Supplement* [Docket No. 1371] on April 30, 2025 and the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 1518] on May 19, 2025 (collectively, the "Plan Supplement"), which included, among other things, drafts or final versions of:  (a) New Organizational Documents; (b) Schedule of Retained Causes of Action; (c) Take-Back Debt Documents; (d) Restructuring Transactions Memorandum; (e) Rejected Contracts/Lease List; (f) New ABL Facility Documents; (g) Freedom HoldCo Debtor Released Claims Report; (h) Litigation Trust Agreement; and (i) Assumed Contracts List;

4

- soliciting votes on the Plan and securing overwhelming support of the Plan from the Voting Classes (with the exception of certain Debtor entities in Class 6);

- closing the Partial Sale Transaction on May 19, 2025 for approximately $193.5 million [Docket No. 1554];

- resolving 17 formal objections and 14 informal responses to the Plan following commencement of solicitation and prior to the Confirmation Hearing;

- obtaining entry of the Confirmation Order approving the Global Settlement for all Debtors and Confirmation of the Plan for the Confirmation Debtors on June 2, 2025; and

- coordinating with the U.S. Trustee and the Creditors' Committee to provide requested information on a variety of issues and complied with the reporting requirements under the Bankruptcy Code.

6. Each of these achievements *in addition* to the tasks completed in advance of entry of the First Exclusivity Order demonstrate the Debtors' efforts to maximize the value of their estates and materially progress these proceedings in a comprehensive and efficient manner. An extension of the Exclusivity Periods will allow the Debtors to complete their restructuring and emerge from chapter 11 with broad stakeholder support, effectuate a deleveraging of approximately $1.55 billion, settle all Intercompany Claims among TopCo, the Freedom HoldCo Debtors, and the OpCo Debtors, preserve thousands of jobs, and ensure the Debtors have sufficient liquidity to emerge as a going concern.

7. Based on the current posture of these chapter 11 cases, as well as the size and complexity of their businesses, the Debtors believe sufficient cause exists to warrant an extension of the Exclusivity Periods. An extension of the Exclusivity Periods is in the best interests of the Debtors, their estates, and all stakeholders, as it will allow the Debtors to procure the best recovery for their creditors and help to ensure a successful conclusion to these chapter 11 cases. Accordingly, the Debtors seek a 90-day extension of the Exclusivity Periods to maintain the

exclusive right to file a plan until September 1, 2025, and solicit votes thereon until October 29, 2025. For all of the foregoing reasons and those set forth below, the Debtors respectfully submit that a 90-day extension of exclusivity is appropriate in these circumstances, and request that the Bankruptcy Court approve extension of the Exclusivity Periods.

**Jurisdiction, Venue, and Background**

8. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory and other legal bases for the relief requested herein are sections 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6004, 6006, 6007, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 9006-2, and 9013-1.

11. On November 3, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code. On November 5, 2024, the Bankruptcy Court entered an order [Docket No. 88] authorizing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. On November 19, 2024, the U.S. Trustee appointed the Creditors' Committee. On January 15, 2025, the Debtors appointed a fee examiner [Docket No. 747].

**Basis for Relief**

12.  Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here. Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in this context "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 521, 533–534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility") (quoting *In re Lake In The Woods*, 10 B.R. 338, 340, 345 (E.D. Mich. 1981)). Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

13.  Courts within the Third Circuit and in other jurisdictions have held that the decision to extend a debtor's exclusive period to file a chapter 11 plan and solicit votes thereon is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See, e.g., First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D.

Del. 1986); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).  In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods.  These factors include the following:

(a) the size and complexity of the case;

(b) the existence of good-faith progress towards a chapter 11 plan;

(c) the necessity of sufficient time to negotiate and prepare adequate information to allow a creditor to determine whether to accept such chapter 11 plan;

(d) whether the debtor is paying its debts as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress negotiating with creditors;

(g) the length of time a case had been pending;

(h) whether the debtor is seeking an extension to pressure creditors; and

(i) whether or not unresolved contingencies exist.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664–65 (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

14. Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case.  *See, e.g.*, *Express One*, 194 B.R. at 100–101 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press*

8

*Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two of the factors in holding that cause existed to extend exclusivity). For example, both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan. H.R. No. 95-595, at 231–232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek . . . [relief] . . . under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); *see also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

15. As set forth below, these chapter 11 cases satisfy the relevant factors and, thus, sufficient "cause" exists to extend the Exclusivity Periods as provided herein. There is ample precedent in this district and others for a second extension of exclusivity as the Debtors seek here. *See, e.g.*, *In re Tupperware Brands Corp.,* No. 24-12156 (BLS) (Bankr. D. Del. April 14, 2025) (granting a second extension of the exclusivity period by 90 days); *In re WOM S.A.*, Case No. 24-10628 (KBO) (Bankr. D. Del. Jan. 16, 2025) (granting a second extension of the exclusivity period by approximately 80 days); *In re Number Holdings, Inc.*, Case No. 24-10719 (JKS) (Bankr. D. Del. Nov. 20, 2024) (granting a second extension of the exclusivity periods by approximately 90 days); *In re UpHealth Holdings, Inc.*, No., 23-11746 (LSS) (Bankr. D. Del. June 4, 2024)

(same); *In re Burgess Biopower, LLC*, Case No. 24-10235 (LSS) (Bankr. D. Del. Sep. 6, 2024) (same).[4]

## I. The Debtors' Chapter 11 Cases Are Large and Complex.

16. With nearly $2 billion of funded debt obligations, 53 jointly-administered Debtor entities, a complex corporate and capital structure, a vast network of operations spanning four distinct business segments across 2,200 retail store locations as of the Petition Date, and thousands of parties in interest, including two distinct ad hoc groups of lenders, these chapter 11 cases are undoubtedly large and complex, which this Bankruptcy Court has recognized previously.[5] Administering these chapter 11 cases requires significant input from the Debtors' management team and advisors on a wide range of complicated matters necessary to bring structure and consensus to a large and complex process. Accordingly, the size and complexity of these chapter 11 cases weigh in favor of extending the Exclusivity Periods.

## II. The Debtors Have Made Good-Faith Progress Towards Conclusion of these Chapter 11 Cases.

17. Leading up to and since the Petition Date, the Debtors have made significant progress in negotiating with their stakeholders and administering these chapter 11 cases, which warrants an extension of the Exclusivity Periods. The Debtors commenced these chapter 11 cases with extremely limited liquidity and have achieved Confirmation of their Plan with respect to the

---

[4] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' counsel.

[5] On December 17, 2024, Judge Dorsey, in his bench ruling denying the *Motion of the Ad Hoc Group of Freedom Lenders for Entry of an Order (I) Terminating Exclusivity in the HoldCo Debtors' Cases, (II) Lifting the Automatic Stay in the HoldCo Debtors' Cases, or (III) Appointing a Chapter 11 Trustee for the HoldCo Debtors* [Docket No. 192], noted that "These cases are large and complex cases[.]" Dec. Hr'g Tr. at 65:13. *See also* Tr. of Hr'g Held Apr. 7, 2025 at 9:11–19 ("... I disagree that I cannot consider, at all, the interrelationship between and among all of the Debtors' bankruptcy cases in the exclusivity context; for example, there are intercompany claims and many debtors may hold the same or similar causes of action"); *In re Franchise Group, Inc.*, No. 24-12480 (LSS) (Bankr. D. Del. Apr. 7, 2025) [Docket No. 1253].

10

Confirmation Debtors in approximately seven months. The Debtors moved expeditiously through these chapter 11 cases conducting a robust investigation regarding certain claims, negotiating with the Global Settlement Parties to achieve the Global Settlement, and actively engaging in a comprehensive marketing process to market check the now-consummated value-maximizing Partial Sale Transaction.

18. In the weeks ahead, the Debtors will continue to engage with their stakeholders to consummate the Plan with respect to the Confirmation Debtors and determine the best path forward with respect to TopCo, including potentially seeking confirmation of a plan for TopCo. The Debtors' substantial progress administering these chapter 11 cases weighs in favor of an extension of the Exclusivity Periods

### III. The Debtors Are Paying Their Bills as They Come Due.

19. Since the Petition Date, the Debtors have paid their undisputed postpetition obligations in the ordinary course or as otherwise provided by Bankruptcy Court order. Importantly the Debtors maintain their ability to continue to pay their bills throughout these chapter 11 cases in light of the liquidity provided by the DIP Facility and through the continued use of cash collateral. Accordingly, this factor weighs in favor of extending the Exclusivity Periods.

### IV. The Debtors Have Filed a Viable Plan.

20. The Bankruptcy Court has already confirmed the Plan with respect to the Confirmation Debtors. The Plan enjoys overwhelming support from the Voting Classes (with the exception of certain Debtor entities in Class 6) and is thus clearly viable. While the Plan was not confirmed as to TopCo, the Debtors are working with their stakeholders to determine the best path forward with respect to TopCo, including potentially seeking confirmation of a plan for TopCo.

**V.     These Cases Are Less Than Seven Months Old.**

21.     The Debtors' request for an extension of the Exclusivity Periods is the Debtors' second such request and comes less than seven (7) months after the Petition Date.  As discussed above, during this time, the Debtors have accomplished a great deal, including achieving the Global Settlement and Confirmation of the Plan with respect to the Confirmation Debtors, and continue to work diligently with all stakeholders towards consummating the Plan and Confirming a Plan with respect to TopCo.  The Debtors seek extension of the Exclusivity Periods contemplated herein to conclude discussions with their stakeholders and proceed towards emergence from these chapter 11 cases in an efficient, organized manner.

**VI.    An Extension of the Exclusivity Periods Will Not Pressure Creditors.**

22.     The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders.  The Debtors have been diligently moving these chapter 11 cases forward.  The Debtors seek an extension of the Exclusivity Periods to ensure that the Plan goes effective prior to the expiration of the Exclusivity Periods.  Thus, the Debtors' request for an extension to the Exclusivity Periods is not requested for the impermissible purpose of pressuring creditors to agree to a plan of reorganization.  To the contrary, the Debtors' request for an extension of the Exclusivity Periods is supported by their key stakeholders, including the Ad Hoc Group, the Freedom Lender Group, and the Creditors' Committee.

23.     An objective analysis of the relevant factors demonstrates that the Debtors are working to facilitate a successful and largely consensual conclusion to these chapter 11 cases, and that sufficient cause exists to extend the Exclusivity Periods for an additional 90 days.  Accordingly, the Debtors request that the Bankruptcy Court grant the relief requested herein.

**Notice**

24.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the Creditors' Committee; (c) counsel to the ABL Lenders; (d) counsel to the Ad Hoc Group of First Lien Lenders; (e) counsel to the Second Lien Term Loan Lenders; (f) counsel to the HoldCo Lenders; (g) counsel to the DIP Agent; (h) counsel to the DIP Lenders; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated: June 2, 2025
Wilmington, Delaware

*/s/ Allison S. Mielke*

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Edmon L. Morton (Del. No. 3856) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Matthew B. Lunn (Del. No. 4119) | Nicole L. Greenblatt, P.C. (admitted *pro hac vice*) |
| Allison S. Mielke (Del. No. 5934) | Derek I. Hunter (admitted *pro hac vice*) |
| Shella Borovinskaya (Del. No. 6758) | 601 Lexington Avenue |
| Rodney Square | New York, New York 10022 |
| 1000 North King Street | Telephone: (212) 446-4800 |
| Wilmington, Delaware 19801 | Facsimile: (212) 446-4900 |
| Telephone: (302) 571-6600 | Email: joshua.sussberg@kirkland.com |
| Facsimile: (302) 571-1253 | nicole.greenblatt@kirkland.com |
| Email: emorton@ycst.com | derek.hunter@kirkland.com |
| mlunn@ycst.com | |
| amielke@ycst.com | - and - |
| sborovinskaya@ycst.com | |
| | Mark McKane, P.C. (admitted *pro hac vice*) |
| | 555 California Street |
| | San Francisco, California 94104 |
| | Telephone: (415) 439-1400 |
| | Facsimile: (415) 439-1500 |
| | Email: mark.mckane@kirkland.com |
| *Co-Counsel to the Debtors and Debtors in Possession* | *Co-Counsel to the Debtors and Debtors in Possession* |