IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC., *et al.*,[1]<br><br>Debtors.[2] | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>September 10, 2025 at 10:00 a.m. (ET)<br><br>**Objection Deadline:**<br>July 23, 2025 at 4:00 p.m. (ET) |

## APPLICATION OF AP SERVICES, LLC FOR APPROVAL OF COMPLETION FEE

AP Services, LLC ("APS") hereby moves the Court (as defined below) by this application (this "Application"), for entry of an order in substantially the form attached hereto as **Exhibit A**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] On June 6, 2025, every Debtor except Freedom VCM Holdings, LLC emerged from these chapter 11 cases and is now a reorganized debtor. *See Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Bar Dates* [Docket No. 1605].

(the "Proposed Order"), allowing and authorizing the payment of a completion fee to APS in the amount of $1,000,000 (the "Completion Fee") in accordance with the Engagement Letter, attached hereto as **Exhibit B** (the "Engagement Letter"), dated as of October 11, 2024, by and between the above-captioned reorganized debtors and debtors in possession (collectively, the "Debtors") and APS.  Prior to the Petition Date (as defined below), David Orlofsky, a Managing Director and Authorized Representative of APS, was engaged as the Debtors' Chief Restructuring Officer ("CRO") and, together with the APS team, has provided experienced guidance, leadership and assistance to the Debtors in connection with the Debtors' restructuring.  In furtherance of this Application, APS respectfully submits the *Declaration of David Orlofsky in Support of the Application of AP Services, LLC for Approval of a Completion Fee*, attached hereto as **Exhibit C**, and further represents, as follows:

## Jurisdiction and Venue

1. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105, 330, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2016-1.

**Background and Retention of APS**

4. Prior to the asset sales discussed herein, the Debtors and certain of their non-debtor affiliates (collectively, the "Company") operated as a diversified holding company with a portfolio of nationally recognized franchise and specialty retail brands, including Pet Supplies Plus, The Vitamin Shoppe, American Freight, and Buddy's Home Furnishings. Debtor Franchise Group, Inc., the Company's corporate parent, pursued an acquisition-driven growth strategy and managed a mix of Company-operated and franchised locations across its platform. At its peak, the Company oversaw thousands of retail locations across the United States.

5. In the period leading up to its bankruptcy filing, the Company faced growing financial and operational stress stemming from an over-leveraged capital structure, underperforming assets, and inflationary and macroeconomic pressures. The Company was further challenged by industry-specific disruptions, including declining foot traffic in certain retail categories and margin compression from supply chain and labor cost inflation. Despite efforts to stabilize performance, the Company's capital structure became unsustainable and required a comprehensive restructuring.

6. In June 2024, the Company began to explore strategic alternatives, including restructuring transactions, settlements, or reorganization, and engaged legal and financial advisors to begin contingency planning for a chapter 11 process. In furtherance of these efforts, the Company also commenced a marketing process for certain of its brands and otherwise prepared for in-court restructuring scenarios.

7. On November 3, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") in the Court. As of the Petition Date, the Debtors had approximately $2.0 billion in funded debt obligations.

8. On November 19, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases [Docket No. 188] (the "Committee").

9. On November 26, 2024, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing the (I) Retention of AP Services, LLC, (II) Designation of David Orlofsky as Chief Restructuring Officer, Effective as of the Petition Date, and (III) Granting Related Relief* [Docket No. 251] (the "Retention Motion").[3]

10. On December 16, 2024, this Court entered the *Order Authorizing the (I) Retention of AP Services, LLC, (II) Designation of David Orlofsky as Chief Restructuring Officer, Effective as of the Petition Date, and (III) Granting Related Relief* [Docket No. 450], authorizing the engagement of APS to provide interim management services to the Debtors in connection with the Chapter 11 Cases.

**Completion Fee Terms**

11. The Engagement Letter and Retention Motion provide that, in addition to hourly fees for which APS is paid, APS shall be compensated for its efforts by payment of the Completion Fee.

12. Under the Engagement Letter, a "Restructuring" shall mean any restructuring, reorganization, rescheduling and/or recapitalization (whether or not implemented through a

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Retention Motion or Engagement Letter, as applicable.

4

bankruptcy filing) of all or substantially all of the Debtors' material outstanding indebtedness (including bank debt and any other on and off-balance sheet indebtedness) in each case, other than a liquidation.

13. The Engagement Letter and Retention Motion provide that APS shall be entitled to receive a Completion Fee as follows:

    a. A completion fee in the amount of $2.5 million upon the consummation of a Restructuring in which either (i) none of the Company entities commence voluntary chapter 11 cases or (ii) only Company entities other than PSP, VSI, and Buddy's commence voluntary chapter 11 cases;

    b. A completion fee in the amount of $2.0 million upon the consummation of a restructuring in which all of the debtor entities commence voluntary chapter 11 cases and the court confirms a chapter 11 plan within 90 days of the commencement date;

    c. A completion fee in the amount of $1.5 million upon the consummation of a restructuring in which all of the debtor entities commence voluntary chapter 11 cases and the court confirms a chapter 11 plan within 91-180 days of the commencement date; or

    d. A completion fee in the amount of $1.0 million upon the consummation of a restructuring in which all of the debtors' entities commence voluntary chapter 11 cases and the court confirms a chapter 11 plan within 181 or more days of the commencement date.

14. The Completion Fee is intended to compensate APS not only for taking a leadership role in these Chapter 11 Cases, but also to incentivize APS to drive the efficient and successful prosecution of the Chapter 11 Cases in challenging circumstances, thereby preserving and maximizing the value of the Debtors' estates. The Completion Fee was negotiated as a part of the overall fee and expense structure agreed to in the Engagement Letter and was approved by this Court.

15. APS earned the Completion Fee pursuant to condition (d), as provided in paragraph 13, above, following confirmation, on June 2, 2025, of the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1596]. As described in detail

below, APS played a central leadership role in navigating the Debtors through their Chapter 11 Cases, resulting in a successful restructuring that preserved enterprise value, reduced liabilities, and positioned the Company for long-term success. Accordingly, payment of the Completion Fee is appropriate and justified.

## Basis for Relief

16. APS performed critical and value-maximizing services, both prior to and during these Chapter 11 Cases, that were essential to stabilizing the Debtors, avoiding value destruction, and achieving a successful reorganization. As such, APS's efforts warrant an award of compensation beyond the amount that results from payment of hourly fees and simple application of the lodestar approach.

17. In July 2024, AlixPartners, LLP ("<u>AlixPartners</u>")[4] was hired as the Debtors' financial advisor to assist with navigating significant financial and operational headwinds. At that time, the Company faced an unsustainable capital structure, underperforming assets, and sector-specific market challenges across its portfolio of retail brands. Under its initial mandate, AlixPartners supported the Company in developing and refining liquidity forecasting and reporting processes, including rolling 13-week cash flow models and funding needs analyses. AlixPartners also advised the Company on short- and long-term liquidity planning, business plan development, performance improvement opportunities, and the evaluation of strategic and restructuring alternatives. These efforts were instrumental in stabilizing the Company's financial position and preparing for a potential in-court restructuring.

18. As the Company's situation progressed and an in-court restructuring became more likely, the Company concluded that experienced, hands-on leadership was essential to navigating

---

[4] APS is an affiliate of AlixPartners.

the operational and stakeholder complexity of a chapter 11 filing. Accordingly, the engagement shifted to an interim management engagement through APS, an affiliate of AlixPartners. David Orlofsky, a Managing Director and Authorized Representative of APS, was appointed CRO, and APS assumed day-to-day leadership of key financial, operational, and strategic workstreams. Mr. Orlofsky functioned as the central architect and executor of the Debtors' restructuring strategy leading all aspects of planning, coordination, and stakeholder engagement. His leadership ensured a smooth, value-preserving transition into chapter 11, including execution of the sale strategy and management of multi-stakeholder negotiations.

19. Under Mr. Orlofsky's direction, APS was instrumental in negotiating and securing a $250 million debtor-in-possession ("DIP") financing facility from the Company's first-lien lenders. The APS team led the development of sophisticated financial forecasts, collaborated closely with the CFO and treasury team, and managed a complex due diligence process involving multiple lender constituencies. The DIP facility, which included both new money and a structured roll-up, provided the critical liquidity required to maintain uninterrupted operations and supported franchisee confidence throughout the restructuring.

20. APS also played a central role in negotiating a restructuring support agreement ("RSA") among the Debtors and holders of approximately 80% of the Debtors' first-lien debt. The RSA formed the cornerstone of the Debtors' restructuring strategy, providing for a debt-for-equity swap that converted first-lien claims into 100% of the equity in the reorganized company. This transaction materially deleveraged the Company's balance sheet, preserved going-concern value, and created a path toward operational viability and operational continuity.

21. In connection with the RSA, APS coordinated with the Debtors' legal and financial advisors, negotiated terms with key creditor constituencies, and led the financial analysis and

business planning efforts that enabled consensus. The RSA also provided a framework for the orderly wind-down of American Freight, the sale of substantially all of The Vitamin Shoppe's assets, and the preservation and future growth of the Company's Pet Supplies Plus and Buddy's Home Furnishings brands.

22. Throughout the chapter 11 process, APS continued to oversee operational stability, manage liquidity and stakeholder relationships, and support the Debtors' execution of value-maximizing transactions. Notably, alongside the Debtors' management and investment banker, APS played a significant role in supporting and advancing the successful sale of substantially all of the assets of The Vitamin Shoppe to Kingswood Capital Management and Performance Investment Partners for $193.5 million—a critical milestone that generated liquidity and enabled meaningful progress toward plan confirmation. APS also oversaw the structured wind-down of American Freight, ensuring a controlled, value-accretive exit from that business.

23. On June 2, 2025, the Court confirmed the Debtors' chapter 11 plan of reorganization [Docket No. 1596], and on June 6, 2025, the Debtors, except Debtor Freedom VCM Holdings, LLC, successfully emerged from bankruptcy [Docket No. 1605]. APS's guidance ensured that the Debtors exited with a streamlined brand portfolio, a significantly improved capital structure, and a sharpened operational focus.

24. The results achieved under APS's leadership are substantial:

- A debt-for-equity swap that eliminated unsustainable leverage;
- A $250 million DIP financing facility that enabled uninterrupted operations;
- The successful divestiture of The Vitamin Shoppe;
- An orderly wind-down of American Freight;
- Continuity of operations across all core brands;

- Preserved franchise relationships;

- Sustained employment for numerous stakeholders; and

- A value-preserving exit from chapter 11.

25. These outcomes are a result of APS's strategic leadership, financial expertise, and ability to forge consensus among diverse and often competing stakeholders.

26. The Completion Fee is both earned and warranted. APS fully satisfied the conditions set forth in the Engagement Letter for earning the Completion Fee, including the confirmation of a chapter 11 plan more than 181 days after the Petition Date. APS not only met the contractual requirements, but also delivered results that materially enhanced creditor recoveries and preserved substantial enterprise value. Courts routinely recognize the appropriateness of completion fees in similarly complex cases when they reflect superior performance and demonstrable results, as is clearly the case here.

27. The quantitative results and value-accretive actions described above provide ample justification for allowance of the Completion Fee under the most rigorous of judicial standards. As a result of Mr. Orlofsky's and APS's efforts, the Debtors were able to consummate a successful reorganization and exit chapter 11 as a viable, de-levered enterprise. The Completion Fee should be granted, as it is not only contractually earned, but also supported by the extraordinary outcomes APS delivered.

**Legal Standard**

28. Section 363(b)(1) provides, in relevant part, that the trustee or debtor in possession, "after notice and a hearing may use, sell, or lease, other than in the ordinary course of business property of the estate. . . ." 11 U.S.C. §363(b)(1). Furthermore, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

29. The standard for reasonableness under section 330 of the Bankruptcy Code is measured by a marketplace comparison. *See In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 1030421, at *6 (Bankr. S.D.N.Y. Apr. 12, 2006) (stating that the standard for a success fee awarded to a chief restructuring officer or top management is "a reasonable amount as established by the relevant marketplace."); *see also* 11 U.S.C. §330(a)(3)(F) ("In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including . . . whether he compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.").

30. Completion fees are normal parts of compensation for turnaround firms and management restructuring consulting firms and are standard for APS's engagements of this type,

both inside and outside of bankruptcy courts.[5]  Indeed, APS and other similar firms price their engagements to include completion fees as part of the total compensation packages for such engagements.  Thus, APS and other turnaround and management restructuring firms rely upon and consider the negotiated completion fee when accepting engagements.

31.  Completion fees are typical in restructuring cases because clients appreciate an approach that aligns the interests of the client with the interests of its advisor.  In colloquial terms, completion fees demonstrate that a turnaround firm, such as APS, has "skin in the game" along with the company undergoing the turnaround.  This alignment of interests inures to the overall benefit of a debtor, as well as its estate and creditors.  Without that demonstrated alignment of interests, such a client might be reluctant to reach out for critical leadership and specialized guidance from seasoned turnaround and management restructuring firms like APS.  As a result, the absence of specialized top-management leadership would decrease the likelihood of a successful outcome of that client's bankruptcy.  Similarly, completion fees are a vital and inseparable component of the overall compensation model for turnaround and crisis management firms like APS, and denial of such fees in cases such as these, where the concrete achievement of the stated goal outlined at the outset of APS's engagement has occurred (confirmation of the Debtors' chapter 11 plan), would ill-serve restructurings generally and potentially produce undesirable results.  Some firms would simply decline challenging engagements and others would adjust their compensation model by increasing their monthly and/or hourly fees.[6]  In recognition

---

[5]  While completion fees for lawyers and accountants are rarely sought or granted, completion fees are a standard component of compensation for turnaround management, restructuring and consulting firms and investment banking firms.  APS is neither a law firm nor an accounting firm.  APS is, among other things, a firm that specializes in supplying senior executives on an interim basis to financially troubled companies.  As such, payment of the Completion Fee to APS is consistent with industry practice in and out of bankruptcy cases.

[6]  The former is not an acceptable result, as it would deny distressed companies the necessary services of firms like APS that specialize in supplying senior executives to financially troubled companies and that have earned a

11

of these realities, courts routinely authorize and approve the payment of completion fees upon a clear and demonstrable showing of management expertise that is transformative, in terms of business viability, capital structure fit and value generation.  This reasoning is precisely applicable to the engagement of APS by the Debtors in these Chapter 11 Cases.

32. It is common in the marketplace to compensate restructuring advisors with both a salary component, based on hours worked, and a performance-based fee.  As the Bankruptcy Court in the Southern District of Ohio held in *In re Cardinal Indus., Inc.*, in awarding the chapter 11 operating trustee a fee of $2.1 million plus an additional 50,000 shares of stock:

> [P]erformance-based or success-factor bonuses are a normal part of compensation arrangements for management restructure consultants and . . . such bonuses generally far exceed the time value of the consultant's services on a lodestar basis.  Indeed, the time value component is referred to as the base salary, apparently payable to the consultant even if success is not achieved.

151 B.R. 843, 847 (Bankr. S.D. Ohio 1993).  *See also*, *In re Busy Beaver Bldg. Ctr., Inc.*, 19 F.3d 833 (3d Cir. 1993) (explaining that the basis for requested compensation should be based on the market rate that professional would charge and collect from a client in a non-bankruptcy setting); *In re UDC Homes, Inc.*, 203 B.R. 218 (Bankr. D. Del. 1996) (same).

33. Courts review transaction fees or completion fees under the "reasonableness standard" of section 330 of the Bankruptcy Code.  *See In re Nw. Airlines Corp.*, 400 B.R. 393, 395 (Bankr. S.D.N.Y. 2009); *In re XO Commc'ns, Inc.*, 398 B.R. 106, 110 (Bankr. S.D.N.Y. 2008).  In considering a completion fee, courts consider (a) whether the financial advisor's services were necessary and beneficial to the debtors' estates at the time the services were rendered; and

---

national and international reputation for their expertise in financial reorganizations and restructurings of troubled companies.  The latter also is not a desirable result, as it would needlessly result in increased fees during the pendency of the case, without such fees being tied to performance-based criteria and the outcome of the case itself (measuring success against alternative outcomes and relative distributable value yields).

(b) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases outside of bankruptcy. *XO Commc'ns*, 398 B.R. at 113. In determining the reasonableness of a completion fee and whether the services were necessary and beneficial to the debtor's estate, courts will look "at the nexus between what was achieved, *i.e.*, the restructuring of the debt, and the impact of the advisor's effort in that regard." *Id*. at 116; *see also In re Residential Cap., LLC*, 504 B.R. 358, 367 (Bankr. S.D.N.Y. (2014).

34.     When Congress passed the Bankruptcy Reform Act of 1978, it decided to remove the "spirit of frugality" as a factor in bankruptcy fees.  The standard is now the cost of comparable services in a non-bankruptcy setting.  Inasmuch as completion fees or performance fees are a normal part of the fee structures of APS and other turnaround and management restructuring firms, both within and outside of bankruptcy, approval of the Completion Fee is appropriate to assure comparable compensation for comparable services.

35.     Recent bankruptcy cases involving performance-based fees awarded to APS and AlixPartners serving as interim management include the following:[7]

- Big Lots, Inc., a chapter 11 case in the District of Delaware before Judge J. Kate Stickles.  In 2025, AlixPartners was awarded a completion fee of $500,000.  [Case No. 24-11967, Docket No. 2353].
- Vyaire Medical, Inc., a chapter 11 case in the District of Delaware before Judge Brendan L. Shannon.  In 2024, AlixPartners was awarded a completion fee of $1,000,000.  [Case No. 24-11217, Docket No. 844].
- Careismatic Grp. Inc., a chapter 11 case in the District of New Jersey before Judge Vincent F. Papalia.  In 2024, AlixPartners was awarded a completion fee of $1,500,000.  [Case No. 24-10569, Docket No. 109].
- AeroTech Miami Inc. d/b/a iAero Tech, a chapter 11 case in the Southern District of Florida before Judge Robert A. Mark.  In 2024, AlixPartners was awarded a completion fee of $340,094.26.  [Case No. 23-17503, Docket No. 745].

---

[7]     Additional examples are available upon request.

13

- Cyxtera Techs., Inc., a chapter 11 case in the District of New Jersey before Judge John K. Sherwood. In 2024, AlixPartners was awarded a completion fee of $2,000,000. [Case No. 23-14853, Docket No. 944].

- Cineworld Grp. plc, a chapter 11 case in the Southern District of Texas before Judge Marvin Isgur. In 2023, AlixPartners was awarded a completion fee of $2,506,934. [Case No. 23-90267 (previously Case No. 23-90168), Docket No. 47].

- Bed Bath & Beyond Inc., a chapter 11 case in the District of New Jersey before Judge Vincent F. Papalia. In 2023, AlixPartners was awarded a completion fee of $750,000. [Case No. 23-13359, Docket No. 2411].

- Avaya, Inc., a chapter 11 case in the Southern District of Texas before David R. Jones. In 2023, AlixPartners was awarded a completion fee of $2,875,000. [Case No. 23-90088, Docket No. 440].

- Carlson Travel, Inc., a chapter 11 case in the Southern District of Texas before Marvin Isgur. In 2022, AlixPartners was awarded a success fee of $500,000. [Case No. 21-90017, Docket No. 274].

- Southland Royalty Co. LLC, a chapter 11 case in the District of Delaware before Karen B. Owens. In 2021, AlixPartners was awarded a success fee of $1,000,000. [Case No. 20-10158, Docket No. 1879].

- NPC Int'l, Inc., a chapter 11 case in the Southern District of Texas before David R. Jones. In 2021, AlixPartners was awarded a restructuring fee of $1,500,000. [Case No. 20-33353, Docket No. 1655].

- Noble Corp. PLC, a chapter 11 case in the Southern District of Texas before David R. Jones. In 2021, AlixPartners was awarded a success fee of $1,750,000. [Case No. 20-33826, Docket No. 999].

- Tailored Brands, Inc., a chapter 11 case in the Southern District of Texas before Marvin Isgur. In 2021, AlixPartners was awarded a success fee of $500,000. [Case No. 20-33900, Docket No. 1648].

36. In short, completion fees are an ordinary component of compensation for firms such as APS, which provided interim management services to the Debtors, and may be approved on that basis. The services provided by APS resulted in tangible, measurable and significant incremental value to the Debtors, their lenders and their estates.

37. The leadership and contributions of Mr. Orlofsky and APS were key enablers of the outcome and recovery within these Chapter 11 Cases. As such, the amount of the Completion Fee in these Chapter 11 Cases is reasonable and should be approved.

**Notice**

38. The Debtors will provide notice of this Application to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the ABL Lenders; (iv) counsel to the Ad Hoc Group of First Lien Lenders; (v) counsel to the Second Lien Term Loan Lenders; (vi) counsel to the HoldCo Lenders; (vii) counsel to the DIP Agent; (viii) counsel to the DIP Lenders; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**Conclusion**

WHEREFORE, APS respectfully requests that this Court enter the Proposed Order, awarding APS the Completion Fee in the amount of $1,000,000, and such other or further relief as is just or appropriate.

Dated this 2nd day of July 2025.                AP Services, LLC


                                                /s/ *David Orlofsky*
                                                Name: David Orlofsky
                                                Authorized Representative