## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| FRANCHISE GROUP, INC., *et al.*,[1] | Case No. 24-12480 (LSS) |
| Debtors. | (Jointly Administered) |
|  | <u>**Obj. Deadline**</u>: July 15, 2025 at 4:00 p.m. (ET)<br><u>**Hearing Date**</u>: July 22, 2025 at 10:00 a.m. (ET) |

## THE GAZZO PARTIES' MOTION FOR AN
## ORDER (I) DETERMINING ESCROWED FUNDS TO BE
## NON-ESTATE PROPERTY AND COMPELLING DISBURSEMENT; (II) GRANTING,
## IN THE ALTERNATIVE, AN ADMINISTRATIVE EXPENSE CLAIM AND
## PAYMENT FROM ESCROWED FUNDS; AND (III) GRANTING RELATED RELIEF

Joseph Gazzo, MMS Group, LLC, Bi-Rite Holdings, LLC, Buddy's Rollco LLC, 1st

Choice Home Furnishings of Donaldsonville, L.L.C., and 1st Choice Home Furnishings of Baton

Rouge, L.L.C., (collectively, the "<u>Gazzo Parties</u>") hereby file this motion (this "<u>Motion</u>") for entry

of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>") (i)

determining that the Escrowed Funds (defined below) are not estate property and compelling the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260); Franchise Group Newco BHF, LLC (4123); Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising , LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 109 Innovation Court, Suite J, Delaware, Ohio 43015.

Escrow Agent (defined below) to disburse such funds to the Gazzo Parties; (ii) granting, in the alternative, an administrative expense claim to the Gazzo Parties and ordering Buddy's Franchising and Licensing, LLC ("Buddy's") and Franchise Group Inc. ("FRG" and, collectively with Buddy's, the "Obligated Debtors") to immediately pay such claim from the Escrowed Funds; and (iii) granting related relief.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012 . Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief sought herein are sections 105(a), 365, 503, 507 and 541 of title 11 of the United States Code (the "Bankruptcy Code").

3.      In accordance with Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Gazzo Parties consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

## RELEVANT BACKGROUND

**A.      The Gazzo Parties and Obligated Debtors' Pre-Petition Relationship, Settlement Agreement and Escrow Agreement**

4.      Dating back to 2012, certain of the Gazzo Parties and Buddy's were parties to franchise agreements, by which certain of the Gazzo Parties operated eight Buddy's store locations as a franchisee.

2

5.      On November 29, 2022, MMS Group, LLC ("MMS") filed a Demand for Arbitration with the American Arbitration Association ("AAA"), naming Buddy's, Brian R. Kahn, and FRG as Respondents (the "MMS Arbitration Proceeding").  In the MMS Arbitration Proceeding, MMS asserted five claims against the Obligated Debtors and Mr. Kahn, as applicable, for violating the exclusive territorial rights granted to MMS under the applicable franchise agreement.  Specifically, MMS asserted claims for violation of the Florida Deceptive and Unfair Trade Practices Act, breach of contract, wrongful refusal to renew the franchise agreement, and tortious interference.  In response, the Obligated Debtors and Mr. Kahn asserted counterclaims against MMS, including a claim that MMS violated its franchise agreement's post-termination non-competition covenant.

6.      On May 10, 2023, Buddy's filed a Demand for Arbitration with AAA, naming certain of the Gazzo Parties—namely, Joseph Gazzo, Bi-Rite Holdings, LLC, and Buddy's Rollco LLC—as Respondents (the "Buddy's Arbitration Proceeding" and, collectively with the MMS Arbitration Proceeding, the "Arbitration Proceedings").  Additionally, Buddy's asserted counterclaims against MMS in the MMS Arbitration Proceeding, and Joseph Gazzo, Bi-Rite Holdings, LLC, and Buddy's Rollco LLC asserted counterclaims against Buddy's in the Buddy's Arbitration Proceeding.

7.      In order to avoid the costs and uncertainties of further litigation, and without any party admitting any liability or fault, the parties settled the Arbitration Proceedings and related disputes by execution of that certain Settlement Agreement and Release, dated May 10, 2024 (the "Settlement Agreement"),[2] by and between the Gazzo Parties, on the one hand, and the Obligated Debtors, on the other hand.  The central terms of the Settlement Agreement are:

---

[2] A copy of the Settlement Agreement is attached hereto as **Exhibit B**.

a) The franchise agreements between Buddy's and the relevant Gazzo Party entities were terminated. Settlement Agreement, ¶ 1.

b) The parties were required to submit a joint motion to the AAA requesting entry of a Stipulated Award and Injunction in the MMS Arbitration Proceeding, as well as file, in a court of competent jurisdiction, a motion or other pleading for an order confirming the Stipulated Award and Injunction.[3] *Id.*, ¶ 2.

c) For the locations identified, the Gazzo Parties were obligated to honor the non-competition provisions from the relevant Franchise Agreements as if such provisions remained in full force and effect after termination for one year from the Execution Date (as defined in the Settlement Agreement as May 10, 2024). *Id.*, ¶ 2.

d) The Gazzo Parties were bound to certain revised non-competition provisions for the Biloxi Location (as defined in the Settlement Agreement). *Id.*, ¶¶ 2, 6.

e) 

*Id.*, ¶ 8.

8.    The Gazzo Parties and the Obligated Debtors entered in that certain Escrow Agreement, dated June 3, 2024 (the "<u>Escrow Agreement</u>"), with the Arbitrator, John Barkett, Esq., as the escrow agent (the "<u>Escrow Agent</u>").[4] Pursuant to the Escrow Agreement, there are three

---

[3] The Stipulated Award and Injunction was entered on May 31, 2024. On November 20, 2024, the U.S. District Court for the Middle District of Florida, upon request of the Obligated Debtors, entered an order confirming the Stipulated Award and Injunction. *See* Case No. 6:24-cv-1329-GAP-LHP (M.D. Fla. Nov. 20, 2024) at Docket No. 14 (the "<u>Middle District of Florida Order</u>"). A copy of the Middle District of Florida Order with the Stipulated Award and Injunction attached as Exhibit 1 is attached hereto as **<u>Exhibit C</u>**.

[4] A copy of the Escrow Agreement is attached hereto as **<u>Exhibit D</u>**. Although the Escrow Agreement was executed by the Gazzo Parties and the Obligated Debtors, it appears that the Escrow Agent did not execute the Escrow Agreement. Based on the conduct of the parties, however, including that of the Escrow Agent, it is clear that the Escrow Agent agreed to the Escrow Agreement and the parties operated as if the Escrow Agreement was fully executed. For example, the Escrow Agent entered into an escrow agreement with Citibank, N.A. on May 30, 2024, which was fully executed, whereby the Escrow Agent represented that he had been appointed as the escrow agent in connection with the settlement between the Gazzo Parties and the Obligated Debtors. *See* Escrow Agreement by and between John M. Barkett and Citibank, N.A., dated May 30, 2024, attached hereto as **Exhibit E** further evidencing that the parties believed and understood that

ways that the Escrow Agent is authorized to disburse ██████████ (the "Escrowed

Funds") deposited into the escrow account (the "Escrow Account") as described in the Settlement

Agreement:

> (a) Joint Instructions. Upon delivery to Escrow Agent of joint written instructions by authorized representatives of the Gazzo Parties and the Respondent Parties (which may include emails from counsel for the Parties) specifying that all or a certain portion of the Escrowed Funds shall be paid to a Party in accordance with the terms and conditions of Paragraph 8 of the Settlement Agreement between the Gazzo Parties and the Respondent Parties; or
>
> (b) Court Order. By order of a court in a final, non-appealable judgment, or
>
> (c) To the Registry of the Court. Into the registry of the court in accordance with Paragraph 6, below.

Escrow Agreement, ¶ 3.

9.     ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

### B.     The Bankruptcy Cases

10.    On November 3, 2024 (the "Petition Date"), the above-captioned debtors and

debtors in possession (collectively and including the Obligated Debtors, the "Debtors") filed

---

the Escrow Agreement was agreed to by the parties, fully executed, and operative.

voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States
Bankruptcy Court for the District of Delaware (this "Court").

11.    The Debtors continue to operate their businesses and manage their properties as
debtors and debtors in possession pursuant to section 11 U.S.C. §§ 1107(a) and 1108. No trustee
or examiner has been appointed in these chapter 11 cases.

12.    On May 14, 2025, the Debtors filed the *Ninth Amended Joint Chapter 11 Plan Of
Franchise Group, Inc. And Its Debtor Affiliates* (D.I. 1454) (the "Plan").[5]

13.    On May 19, 2025, the Debtors filed the *Second Amended Plan Supplement For The
Ninth Amended Joint Chapter 11 Plan Of Franchise Group, Inc. And Its Debtor Affiliates* (D.I.
1518) (the "Second Amended Plan Supplement").  The Second Amended Plan Supplement lists
the Settlement Agreement with each of the Gazzo Parties as a rejected Executory Contract on the
Rejected Contracts/Lease List.  *See* Second Amended Plan Supplement, Exhibit E.  The Second
Amended Plan Supplement did not list the Escrow Agreement as a rejected Executory Contract.
*See id*.

14.    On May 20, 2025, the Court held a Plan confirmation hearing.  On May 28, 2025,
the Court issued a bench ruling, confirming the Plan as to all Debtors except for Freedom VCM
Holdings, LLC.  On June 2, 2025, the Court entered the *Findings Of Fact, Conclusions Of Law,
And Order (I) Confirming The Ninth Amended Joint Chapter 11 Plan Of Franchise Group, Inc.
And Its Debtor Affiliates And (II) Approving The Global Settlement And Release Of Claims And
Causes Of Action By And Among The Global Settlement Parties* (D.I. 1596) (the "Confirmation
Order").

---

[5] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

15.    On June 6, 2025, the Debtors filed the *Third Amended Plan Supplement* (D.I. 1064) (the "Third Amended Plan Supplement").  The Third Amended Plan Supplement did not change the treatment of the Settlement Agreement with each of the Gazzo Parties as rejected Executory Contracts, nor did it list the Escrow Agreement as a rejected Executory Contract.  *See* Third Amended Plan Supplement, Exhibit E.

16.    On June 6, 2025, the Debtors filed the *Notice Of (I) Entry Of Confirmation Order, (II) Occurrence Of Effective Date, And (III) Related Bar Dates* (D.I. 1605) (the "Effective Date Notice"), announcing the Plan's Effective Date as June 6, 2025 (the "Effective Date").[6]

17.    As to the assumption or rejection of Executory Contracts, the Plan provides the following:

a) Executory Contracts identified on the Rejected Contracts/Lease List will be rejected.  *See* Plan, ¶ 10.1.

b) The Plan operates as a default assumption of an Executory Contract, as long as the Executory Contract does not fall into one of the identified carve-out categories: "Except as otherwise provided herein, any Executory Contracts and Unexpired Leases (a) not previously assumed, (b) not previously assumed and assigned in accordance with the Sale Order or other order approving such assumption and assignment, (c) not previously rejected pursuant to an order of the Bankruptcy Court, and (d) identified on the Assumed Contracts List will be assumed effective as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code and the Confirmation Order, except any Executory Contract or Unexpired Lease (i) identified on the Rejected Contracts/Lease List, (ii) that is the subject of (A) a separate motion or notice to reject, assume, or assume and assign or a Cure Dispute that is pending as of the Confirmation Date or (B) an order of the Bankruptcy Court that is not yet a Final Order, (iii) that previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code), (iv) of the American Freight Debtors that is not otherwise assumed or included on the Assumed Contracts List, (v) that, in the event the Partial Sale Transaction is

---

[6] The Effective Date Notice includes a deadline by which to file proofs of claim with respect to claims arising from the rejection of Executory Contracts pursuant to the Plan or Confirmation Order of thirty (30) days after the date of the effectiveness of the rejection of the applicable Executory Contract. *See* D.I. 1605.  With a rejection effective date of June 6, 2025 for the Settlement Agreement, any such rejection claims related to the rejection of the Settlement Agreement are due by July 7, 2025 (30 days after the June 6, 2025 rejection date is Sunday, July 6, 2025; therefore, Bankruptcy Rule 9006(a)(1)(C) operates to extend the deadline to the next business day of July 7, 2025).  Should the Court deny the Gazzo Parties' relief sought in this Motion, this Motion should be deemed to constitute a rejection damages claim related to the outstanding payment of ███████ pursuant to the Settlement Agreement.

consummated prior to the Effective Date, relates to the Vitamin Shoppe Debtors and is not otherwise assumed pursuant to the Sale Order or included on the Assumed Contracts List, (vi) that, in the event the Partial Sale Transaction is not consummated prior to the Effective Date, relates to the Vitamin Shoppe Debtors, is not listed on Schedule 1 of the Sale Order, or (vii) of Franchise Group, Inc. that is not otherwise assumed or included on the Assumed Contracts List. For the avoidance of doubt, except as otherwise set forth herein or as included on the Assumed Contracts List, all Executory Contracts and Unexpired Leases of the American Freight Debtors, Franchise Group, Inc., and, in the event the Partial Sale Transaction is consummated prior to the Effective Date, the Vitamin Shoppe Debtors shall be rejected as of the Effective Date." *Id*.

c) "Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Debtors' Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective on the occurrence of the Effective Date or, as to rejected Executory Contracts and Unexpired Leases, on such other date as may be identified on the Rejected Contracts/Lease List or other motion or notice to reject by agreement of the affected counterparty to such Executory Contract or Unexpired Lease." *Id*.

18.    The Third Amended Plan Supplement does not list a different effective rejection date for the rejection of the Settlement Agreement.  Therefore, pursuant to section 10.1 of the Plan and Exhibit E to the Third Amended Plan Supplement, rejection of the Settlement Agreement was effective as of the Effective Date of June 6, 2025.

19.    Pursuant to the Plan and, in light of its absence from the Rejected Contracts/Lease List in the Third Amended Plan Supplement, the Escrow Agreement was arguably assumed by Obligated Debtor Buddy's.[7]

## RELIEF REQUESTED

By this Motion, the Gazzo Parties request entry of the Proposed Order (i) determining that the Escrowed Funds are not estate property and compelling the Escrow Agent to disburse such funds to the Gazzo Parties; (ii) granting, in the alternative, an administrative expense claim to the

---

[7] Obligated Debtor FRG is also a party to the Escrow Agreement but the Plan operated to reject all Executory Contracts with FRG that were not specifically included on the Assumed Contracts List (which the Escrow Agreement was not).

Gazzo Parties and ordering the Obligated Debtors to immediately pay such claim from the Escrowed Funds; and (iii) granting related relief.

## BASIS OF RELIEF

**A.      The Escrowed Funds Are Not Property of the Obligated Debtors' Estates and Must be Paid to the Gazzo Parties Pursuant to the Settlement and Escrow Agreements.**

20.      Section 541 of the Bankruptcy Code governs what property and interests become property of a debtor's estate upon a bankruptcy filing. *See generally* 11 U.S.C. § 541. Specifically, section 541 provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" is estate property, but that:

> [p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

11 U.S.C. § 541(a)(1), (d). What constitutes a debtor's property interest is governed by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979).

21.      Here, the Escrowed Funds are subject to the Escrow Agreement, which is governed by Florida law. *See* Escrow Agreement, ¶17.

> Under Florida law, "legal title to property placed in an escrow account remains with the grantor until the occurrence of the condition specified in the escrow agreement." *Dickerson v. Central Fla. Radiation Oncology Group,* 225 B.R. 241, 244 (M.D.Fla.1998) (citing *In the Matter of Berkley Multi-Units, Inc.*, 69 B.R. 638, 641 (Bankr.M.D.Fla.1987)). Nonetheless, "**funds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate.**" *In re S.E.L. Maduro,* 205 B.R 987, 990-91 (Bankr.S.D.Fla.1997) (citing *In re AGSY, Inc*., 120 B.R. 313, 317-20 (Bankr.S.D.N.Y.1990)).

*Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1197-98 (11th Cir. 2001) (internal footnote omitted) (emphasis added); *see also Feltman v. Board of County Comm'rs (In re S.E.L. Madura (Fla.))*, 205 B.R. 987, 990-991 (Bankr. S.D. Fla. 1997) (citing *Dynasty Express*

*Corp. d/b/a/ General Rent-A-Car v. Eric C. Kurtzman, et. al. (In re Agsy)*, 120 Bankr. 313, 317-320 (Bankr. S.D.N.Y. 1990) ("It is true that under Florida law, funds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate.").

22.     Additionally, "the 'estate succeeds to only such title and rights in the property as the debtor had at the time the petition was filed.'" *In re Agsy*, 120 B.R. at 318 (citing *In re N.S. Garrott & Sons*, 772 F.2d 462, 467 (8th Cir. 1985)); *see also* 5 COLLIER ON BANKRUPTCY P 541.09 (16th 2025) ("Estate property is confined to the rights conferred upon the debtor by the escrow agreement, not property rights in the assets escrowed.").[8]

23.     Here, the Escrowed Funds are not estate property.  As a result, and in conjunction with the provisions of the Escrow Agreement, this Court should order the Escrow Agent to disburse ███████  in the Escrowed Funds to the Gazzo Parties.  While the Obligated Debtors funded the Escrow Account, the Escrowed Funds were deposited for the benefit of the Gazzo Parties in light of the settlement terms to resolve the parties' Arbitration Proceedings.  The Obligated Debtors had no right to the return of any portion of the ██████ remaining in Escrowed Funds, unless and until there was a material breach of the Non-Compete Obligations or other term of the Settlement Agreement prior to the end of the Expiration Date.  The Escrowed Funds were unequivocally deposited into the Escrow Account for the benefit of the Gazzo Parties pursuant to the Settlement Agreement with such Escrowed Funds being designated for the Gazzo Parties upon completion of the Non-Compete Obligations.  The Obligated Debtors have no authority to otherwise deny the payment of the Escrowed Funds to the Gazzo Parties after the Expiration Date.  The Obligated

---

[8] *But see contra. In re Cypress Health Sys. Fla., Inc.,*  536 B.R. 334 (Bankr. N.D. Fla. 2015) (finding that escrowed funds were estate property where escrow was funded by prospective buyer three years before debtor's bankruptcy filing and the terms of the prospective buyer's and debtor's letter of intent and escrow agreement provided that the escrowed funds reverted permanently to the debtor if the sale was not closed within 90 days (and sale never closed)).

Debtors should not be entitled to assert otherwise now that the Gazzo Parties have fully performed under the Settlement Agreement.

24.    The decision in *In re Palm Beach Heights Dev. & Sales Corp.*, 52 B.R. 181 (Bankr. S.D. Fla. 1985), is informative.    In *Palm Beach*, the debtor sold home sites and promised improvements, such as roads and drainage canals, to home site purchasers.    *See id.* at 182.    Related to its business, the debtor and the Florida Division of Land Sales entered into an improvement trust agreement that required the debtor to deposit funds in an improvement trust account with such funds to assure the completion of the land improvements.    *See id.*    Ultimately, the land could not be built on; therefore, the buyers did not get the benefit of their purchase agreements and the Florida Division instituted a pre-petition action to obtain the improvement trust account funded by the debtor for the benefit of the buyers.    *See id.* at 182-83.    After filing for bankruptcy, the debtor argued that the funds in the improvement account were estate property and should be used for the debtors' operations and to fund payment of its administrative claims and plan of reorganization. *See id.* at 183.    The bankruptcy court held that the improvement account funds were not estate property because the account:

> is a trust or escrow to assure the completion of the road and drainage improvements on the property and only upon completion of the improvements, would debtor have any interest in the fund. **Any claim, contingency or chose in action against the trust fund is the property of the estate but the fund itself is not.** The debtor may not have any part of said fund until such time as the debtor establishes that all prior claims in the fund have been paid and that a residuum remains to which it is entitled.

*Id.* (emphasis added); *see also Hayim v. Goetz (In re SOL, LLC)*, 419 B.R. 498, 505-06 (Bankr. S.D. Fla. 2009) ("[I]t is the claim that is the property of the estate and not the fund that the Debtor is holding in escrow. <u>See</u> *In re Palm Beach Heights Development & Sales Corp.*, 52 B.R. 181, 183 (Bankr. S.D. Fla. 1985) ('Any claim, contingency or chose in action against the trust fund is the property of the estate but the fund itself is not.'); *In re Carousel International Corporation*, 89

11

F.3d 359, 362 (7th Cir. 1996) (when estate stakes a claim, the property of the estate is the claim of ownership -- not the thing to which the estate lays claim until the claim is adjudicated or resolved by the parties).").

25.     The Court should make a similar determination under the facts of this case.  The Escrowed Funds are not property of the estates because the funds were deposited to assure performance of the Gazzo Parties' Non-Compete Obligations.  Any property interest of the Obligated Debtors' estates in the Escrow Account is merely a claim, contingency or chose in action against the Escrow Account for the contingency where the Gazzo Parties failed to perform under the Settlement Agreement—not in the Escrowed Funds themselves.

26.     The Escrow Agreement authorizes the Escrow Agent to disburse Escrowed Funds pursuant to a final, non-appealable order of a court.[9]  *See* Escrow Agreement, ¶ 3.  In light of the Escrowed Funds not being estate property and the Gazzo Parties' completed performance of the Non-Compete Obligations and adherence to the Settlement Agreement's other terms, the Gazzo Parties respectfully request that the Court direct the Escrow Agent to distribute ▇▇▇ of the Escrowed Funds to the Gazzo Parties pursuant to the Escrow Agreement and the Settlement Agreement.

**B.     The Gazzo Parties are Entitled to an Administrative Expense Claim for Performance of Non-Compete Obligations Prior to Effective Date of the Settlement Agreement's Rejection.**

27.     Section 503 of the Bankruptcy Code provides, in relevant part, that "there shall be allowed administrative expenses" for "the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A).  Section 507(a)(2) of the Bankruptcy Code further provides

---

[9] Regardless of whether the Escrow Agreement was assumed by Buddy's (as is the Gazzo Parties' position), is deemed rejected by FRG as of the Effective Date or is a non-executory contract, this Court can still enter an order authorizing the Escrow Agent to disburse the Escrowed Funds to the Gazzo Parties pursuant to, among the other arguments in this Motion, Paragraph 3(b) of the Escrow Agreement, which permits the Escrow Agent to disburse the Escrowed Funds pursuant to a court order.

that administrative expense claims allowed under section 503(b) have first priority.  *See* 11 U.S.C. § 507(a)(2).  To qualify as an administrative expense, an expense "must arise from a [post-petition] transaction with the debtor-in-possession" and "must be beneficial to the debtor-in-possession in the operation of the business." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314-15 (3rd Cir. 2011); *see also Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) (noting that, to establish a priority claim under section 503(b)(1)(A) of the Bankruptcy Code, the debt must arise post-petition and benefit the estate) (citations omitted).

28.    With respect to an administrative claim asserted by an executory contract counterparty, "[i]f the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, . . . which, depending on the circumstances of a particular contract, may be what is specified in the contract, . . . .  *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531-532 (internal citations omitted).  "Courts in this district have consistently held that administrative expense priority is available to contract parties when the debtor enjoys the benefits of the contract pending assumption or rejection." *In re ID Liquidation One, LLC*, 503 B.R. 392, 399 (Bankr. D. Del. 2013) (citing *In re Smurfit-Stone* Container Corp., 425 B.R. 735, 741 (Bankr. D. Del. 2010) (citing *In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 607 (Bankr. D. Del. 2008); *In re Continental Airlines, Inc.*, 146 B.R. 520, 526-27 (Bankr. D. Del. 1992))); *see also Compass Bank v. N. Am. Petroleum Corp. USA (In re N. Am. Petroleum Corp. USA)*, 445 B.R. 382, 400 (Bankr. D. Del. 2011) ("In the context of executory contracts, a non-debtor party to an executory contract is entitled to administrative expenses equal to the value of any post-petition benefit conferred on the estate prior to assumption or rejection of that contract.").

13

29.     Additionally, even though an administrative expense claim under section 503(b) of the Bankruptcy Code requires a post-petition transaction, "a claimant's performance of a pre-petition contract, and a debtor's acceptance of that performance, can establish a post-petition transaction." *Goody's Family Clothing, Inc. v. Mountaineer Prop. Co. II, LLC (In re Goody's Family Clothing, Inc.)*, 401 B.R. 656, 671 (D. Del. 2009).

30.     When determining the amount of an executory contract counterparty's administrative expense claim based on the reasonable value of services provided while awaiting the debtor's assumption or rejection determination:

> Under the *Bildisco* "reasonable value of services" standard, there is a presumption that the contract terms and rate represent the reasonable value of the services or goods provided under the contract. *Smurfit-Stone*, 425 B.R. at 741 (citing *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003) ("There is an initial assumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate.")). This presumption can be overcome if the objecting party provides "'convincing evidence to the contrary.'" *Smurfit-Stone*, 425 B.R. at 741 (quoting *In re Washington-St. Tammany Electric Cooperative, Inc.*, 111 B.R. 555, 559 (Bankr. E.D. La. 1989)); *but see Bernard Technologies*, 342 B.R. at 177-78 (holding that the terms of an employment contract are not entitled to presumptive reasonableness where the contract was ultimately rejected).

*In re ID Liquidation One, LLC*, 503 B.R. at 399-400.

31.     There can be no question that the Gazzo Parties provided a post-petition benefit to the Debtors by strictly abiding by their Non-Compete Obligations under the Settlement Agreement.  If the Non-Compete Obligations were not valuable to the Obligated Debtors' business, the Non-Compete Obligations would not have been negotiated for in the first place. Furthermore, if the Non-Compete Obligations were not valuable to the Obligated Debtors, then the Obligated Debtors could have—and should have—rejected the Settlement Agreement at the outset of these chapter 11 cases so as not to incur an administrative expense obligation to the Gazzo Parties.  Instead, the Obligated Debtors did not reject the Settlement Agreement until entry of the

14

Confirmation Order, which rejection was not effective until June 6, 2025.  However, from the Petition Date through the Expiration Date of the Non-Compete Obligations on May 10, 2025— while awaiting the Obligated Debtors' rejection decision—the Gazzo Parties honored their Non-Compete Obligations and fully performed under the Settlement Agreement.

32.     Pursuant to established Supreme Court case law—as applied in this District—the Gazzo Parties are entitled to an administrative expense claim in the amount of the reasonable value of the services performed while awaiting the Obligated Debtors' decision to assume or reject the Settlement Agreement.  Here, the presumption of the contract terms from the Settlement Agreement should control.  Pursuant to the Settlement Agreement, the Obligated Debtors agreed that the value of the performance of the Gazzo Parties' Non-Compete Obligations was ██████.  Now that the Gazzo Parties have fully performed the Non-Compete Obligations, they are entitled to allowance and payment of an administrative expense claim in the amount of ██████—which should be paid from the Escrowed Funds.

## NOTICE

33.     Notice of this Motion will be provided to: (a) the Debtors; (b) the Office of the U.S. Trustee for the District of Delaware; (c) the Official Committee of Unsecured Creditors; (d) the Escrow Agent;  and (e) any party that requests service pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Gazzo Parties submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Gazzo Parties respectfully request the entry of the Proposed Order (i) determining that the Escrowed Funds are not estate property and compelling the Escrow Agent to disburse such funds to the Gazzo Parties; (ii) granting, in the alternative, an administrative expense claim to the Gazzo Parties and ordering the Obligated

Debtors to immediately pay such claim from the Escrowed Funds; and (iii) granting such further

relief as may be appropriate.

**WOMBLE BOND DICKINSON (US) LLP**

Dated:  July 7, 2025
Wilmington, Delaware

By: */s/ Marcy J. McLaughlin Smith*

Matthew P. Ward (Del. Bar No. 4471)
Lisa Bittle Tancredi (Del. Bar No. 4657)
Marcy J. McLaughlin Smith (Del. Bar No. 6184)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
        lisa.tancredi@wbd-us.com
        marcy.smith@wbd-us.com

*Counsel for the Gazzo Parties*