## EXHIBIT B

**Settlement Agreement**

**AMERICAN ARBITRATION ASSOCIATION**

Case Nos.: 01-22-0004-9922 and 01-23-0002-1135

| |
|---|
| MMS GROUP, LLC, <br><br> *Claimant*, <br><br> v. <br><br> BUDDY'S FRANCHISING AND LICENSING LLC and FRANCHISE GROUP INC., <br><br> *Respondents.* <br><br> BUDDY'S FRANCHISING AND LICENSING LLC, <br><br> *Claimant*, <br><br> v. <br><br> JOSEPH GAZZO III a/k/a JOSEPH GAZZO, BI-RITE HOLDINGS, LLC and BUDDY'S ROLLCO LLC, <br><br> *Respondents*. |

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement (the "Agreement") is made as of the date all parties to this Agreement have executed the Agreement (the "Execution Date"), by and between Joseph Gazzo, MMS Group, LLC, Bi-Rite Holdings, LLC, Buddy's Rollco LLC, 1st Choice Home Furnishings of Donaldsonville, L.L.C., and 1st Choice Home Furnishings of Baton Rouge, L.L.C. (the "Gazzo Parties") on the one hand, and Buddy's Franchising and Licensing LLC and Franchise Group Inc. (the "Respondent Parties") on the other hand. (The Gazzo Parties and the Respondent Parties are referred to collectively as the "Parties", and each as a "Party").

**RECITALS**

A.      WHEREAS, on November 29, 2022, MMS Group, LLC ("MMS") filed a Demand for Arbitration with the American Arbitration Association ("AAA"), naming Buddy's Franchising

1

and Licensing LLC ("Buddy's"), Brian R. Kahn, and Franchise Group Inc. ("FRG") as Respondents (the "MMS Arbitration Proceeding");

B.  WHEREAS, on May 10, 2023, Buddy's filed a Demand for Arbitration with AAA, naming Joseph Gazzo ("Gazzo"), Bi-Rite Holdings, LLC, and Buddy's Rollco LLC as Respondents (the "Buddy's Arbitration Proceeding");

C.  WHEREAS, Buddy's asserted counterclaims against MMS in the MMS Arbitration Proceeding, and Gazzo, Bi-Rite Holdings, LLC, and Buddy's Rollco LLC asserted counterclaims against Buddy's in the Buddy's Arbitration Proceeding;

D.  WHEREAS, each Party denies liability for any of the claims asserted against that Party in the MMS Arbitration Proceeding or in the Buddy's Arbitration Proceeding (together, the "Arbitration Proceedings");

E.  WHEREAS, W.S. Badcock LLC and American Freight, LLC commenced a federal lawsuit, and Vintage Capital Management, LLC commenced a state lawsuit in Florida State court, to quash the arbitration subpoenas issued to them in the MMS Arbitration Proceeding (together, the "Non-Party Subpoena Cases"), which remain pending and disputed; and

F.  WHEREAS, in order to avoid the costs and uncertainties of further litigation, and without any Party admitting any liability or fault, the Parties desire to settle and resolve the Arbitration Proceedings and related disputes upon the terms set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which all Parties acknowledge, the Parties agree as follows:

1.  <u>Termination of Agreements.</u> Upon the Execution Date, the Parties agree that all agreements in place between the Parties before the Execution Date, including without limitation the following Franchise Agreements ("Franchise Agreements"), are immediately terminated and that the Parties have no continuing rights pursuant to those Franchise Agreements except as stated in this Agreement:





Notwithstanding the foregoing, the Parties remain bound by: (i) all releases executed by a Party or Parties in favor of any other Party or Parties, and (ii) post-termination covenants under the Franchise Agreements, including without limitation the non-competition covenants (except as modified below), the obligation to cease using and return any Confidential Information of Buddy's, and the obligation to cease using Buddy's trademarks.

2. <u>Non-Competition Covenants and Stipulated Injunction.</u> Contemporaneously with their execution of this Agreement, the Parties shall sign the Joint Motion (the "Joint Motion") (attached as Exhibit A hereto) with AAA requesting that the Panel in the MMS Arbitration Proceeding enter the Stipulated Award and Injunction attached as *Exhibit 1* to the Joint Motion. The Parties shall file the Stipulated Award and Injunction with the Panel within three business days of the Execution Date. The Parties stipulate and agree that AAA has jurisdiction to enter the Stipulated Award and Injunction. Within five business days after AAA enters the Stipulated Award and Injunction, the Parties shall file, in a court (or, if necessary, courts) of competent jurisdiction, a motion, and any other necessary papers, for an order confirming the Stipulated Award and Injunction. The Parties agree that such court(s) shall have jurisdiction over any disputes arising from violation of the non-competition covenants under this paragraph, including authority to adjudicate contempt proceedings. If, for any reason, such court(s) does not accept jurisdiction, or does not confirm the Stipulated Award and Injunction, then AAA Chair Harold Bruno shall have authority to enforce the Stipulated Award and Injunction, including through sanctions against the Gazzo Parties for contempt should they violate the Stipulated Award and Injunction. Regardless of whether AAA enters the Stipulated Award and Injunction, or whether any court(s) confirm(s) the Stipulated Award and Injunction or otherwise accept(s) jurisdiction over disputes arising from the non-competition covenants under this paragraph, the Gazzo Parties covenant that they shall adhere to the following non-competition covenants:

For each of the Locations identified in Paragraph 1 above other than the ▮▮▮ (the non-compete obligations for the ▮▮▮ are set forth in Paragraph 6 hereof), the Gazzo Parties agree to honor the non-competition provisions, as set forth in the respective Franchise Agreements, as if those provisions of the Franchise Agreements remained in full force and effect,

3

except that the Gazzo Parties' non-competition obligations shall apply for a one-year period from the Execution Date, and shall apply to a 25-mile radius surrounding each applicable Location.

3. <u>Closing and Liquidation of</u> ▮▮▮▮▮ Within 30 days of the Execution Date, the Gazzo Parties shall close the ▮▮▮▮▮ including taking down its website and destroying any Buddy's signage and references to Buddy's, including all store trade dress and decals on delivery vehicles. The Gazzo Parties shall stop operating the ▮▮▮▮▮ as a business offering legally documented transactions under which tangible property is leased in exchange for a weekly or monthly payment, with the option to purchase at some point during the agreement ("RTO Business") immediately upon the Execution Date. Within 60 days of the Execution Date, the Gazzo Parties shall use their best efforts to liquidate (including liquidation of all assets and all rent-to-own contracts ("RTO contracts")) the ▮▮▮▮▮. In liquidating such assets and RTO contracts, the Gazzo Parties shall not sell or transfer any assets or RTO contracts to any relatives or agents of, or entities affiliated with, Gazzo. Contemporaneously with the entry of the Stipulated Award and Injunction (attached hereto as *Exhibit A*), ▮▮▮▮▮ Gazzo will utilize his best efforts in liquidating the RTO contracts ▮▮▮▮▮ and the Gazzo Parties otherwise honor their non-compete obligations under Paragraph 2 above. During the non-compete term stated in Paragraph 2 above, the Gazzo Parties shall not enter into any new RTO contracts with any customers. On the Execution Date, the Gazzo Parties must provide Buddy's with a list, in spreadsheet format, of all existing RTO contracts including the remaining term on each.

4



5. **Early Termination of Franchise Agreements, Closing, and Liquidation for** ▓▓▓▓. Within 30 days of the Execution Date, the Gazzo Parties shall close the ▓▓▓▓ the ▓▓▓▓, and the ▓▓▓▓, including taking down their websites, and destroying all Buddy's signage and references to Buddy's, including all store trade dress and decals on delivery vehicles. The Gazzo Parties shall stop operating the ▓▓▓▓, the ▓▓▓▓, and the ▓▓▓▓ as an RTO Business immediately upon the Execution Date. Within 60 days of the Execution Date, the Gazzo Parties shall use their best efforts to liquidate (including liquidation of all assets and all RTO contracts) the ▓▓▓▓, the ▓▓▓▓, and the ▓▓▓▓. In liquidating such assets and RTO contracts, the Gazzo Parties shall not sell or transfer any assets or RTO contracts to any relatives or agents of, or entities affiliated with, Joseph Gazzo. Contemporaneously with entry of the Injunctive Order (attached as Exhibit A), ▓▓▓▓ Gazzo will utilize his best effort in liquidating the RTO contracts and other assets ▓▓▓▓ and the Gazzo Parties otherwise honor their non-compete obligations under Paragraph 2 above. During the noncompete term stated in Paragraph 2 above, the Gazzo Parties shall not enter into any new RTO contracts with customers. On the Execution Date, the Gazzo Parties must provide Buddy's with a list of all existing RTO contracts including the remaining term on each.

6. **Early Termination of** ▓▓▓▓ **and Conversion to Retail Business.** ▓▓▓▓

5



7. <u>Inspection and Audit Rights.</u> The Gazzo Parties agree that Buddy's will have inspection and audit rights, as more specifically set forth in this Paragraph 7,

8. Compensation.

9.

6



11. <u>Dismissal of Arbitration Proceedings.</u>  The Parties shall file a stipulation of dismissal in each of the Arbitration Proceedings in the form of *Exhibit D*, attached hereto, promptly after the Execution Date, and shall file any other documents necessary to dismiss the Arbitration Proceedings with prejudice, with each of the Parties to the Arbitration Proceedings to bear their own respective costs and attorneys' fees.





14. <u>Return or Destruction of Confidential Information.</u> Within thirty (30) days of the Execution Date, each Party that possesses Confidential Information (as defined in protective order in effect in the Arbitration Proceedings) of another Party that was produced during the Arbitration Proceedings shall use best efforts to return, delete or destroy such Confidential Information. Each Party shall certify in writing to the other side that it has returned, deleted, or destroyed any Confidential Information within thirty (30) days of the Execution Date.

For each of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Gazzo Parties shall ensure that any documents with Personal Identifiable Information ("PII") on them are shredded or otherwise destroyed sufficiently such that the PII could not be recovered or otherwise available to third parties. For purposes of this Agreement, PII means the following:

a. An individual's first name or first initial and last name in combination with any one or more of the following data elements for that individual:

(I) A social security number;

(II) A driver license or identification card number, passport number, military identification number, or other similar number issued on a government document used to verify identity;

(III) A financial account number or credit or debit card number, in combination with any required security code, access code, or password that is necessary to permit access to an individual's financial account;

(IV) Any information regarding an individual's medical history, mental or physical condition, or medical treatment or diagnosis by a health care professional; or

(V) An individual's health insurance policy number or subscriber identification number and any unique identifier used by a health insurer to identify the individual.

b. A consumer or customer's user name or e-mail address, in combination with a password or security question and answer that would permit access to an online account

15. <u>No Admission of Liability.</u>  This Agreement is not evidence of the existence or absence of any claim, counterclaim, or cause of action.  Each of the Parties understands and agrees that this Agreement does not constitute, and should not be construed as, an admission of liability or an admission as to the merits of the any claim by any of the Parties to this Agreement.

16. <u>No Interpretation in Favor of Any Party.</u>  In the event that any court or tribunal is called upon to interpret this Agreement, no Party shall be deemed to have drafted this Agreement, nor may any Party offer in evidence or otherwise use, for purposes of suggesting any interpretation of this Agreement, any prior drafts of this Agreement.  The language used in this Agreement is the language chosen by the Parties to express their mutual intent, and no rule of construction shall apply against any Party.

17. <u>Consideration.</u>  Each Party acknowledges and agrees that the consideration received in connection with this Agreement is fair, adequate, and substantial and consists only of the terms set forth in this Agreement.

18. <u>Benefit.</u>  This Agreement shall apply to, be binding on, and inure to the benefit of the Parties and their respective successors, heirs and assigns.

19. <u>Headings, Pronouns, Singular/Plural Interpretation.</u>  The headings in this Agreement are for convenience and identification only and are in no way intended to describe, interpret, or limit the scope, extent, or intent of this Agreement or any provision thereof.  All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular, or plural, wherever the context of the Agreement so requires. References to Party or Parties herein shall be interpreted as singular and/or plural as the context of the reference dictates.

20. <u>Authorization.</u>  The Parties hereby represent, warrant and state that all legal action necessary for the effectuation and execution of this Agreement has been validly taken or will be taken consistent with the terms herein and that the individuals whose signatures appear below are duly authorized to execute this instrument on their respective Parties' behalf.

21. <u>Execution and Counterparts.</u>  This Agreement may be executed, including by electronic signature, simultaneously in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  A signature delivered by facsimile or email shall be effective as an original.

22. <u>Entire Agreement.</u>  This Agreement, and the contemporaneously executed agreements referenced herein, constitute the entire agreement among the Parties with respect to the subject matter of this Agreement.  In executing this Agreement, no Party is relying or acting on any promise, inducement, or agreement not expressed in such agreements. This Agreement supersedes any conflict with any contemporaneously executed agreement.

23. <u>Modification.</u> This Agreement cannot be changed, modified, or amended except by a written instrument signed by the Parties.

24. <u>Governing Law.</u>  This Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of Florida, and, except as to any disputes addressed in Paragraph 7 above, all disputes concerning this Agreement shall be litigated in a court of competent jurisdiction in the state of Florida.

25. <u>Acknowledgments.</u>  The Parties acknowledge that they have read this Agreement, that they have been afforded sufficient time to understand the terms and effects of this Agreement, that they have had the opportunity to consult with their own counsel to advise them regarding the terms and effects of this Agreement prior to executing this Agreement, that they voluntarily are entering into and executing this Agreement, and that no Party, or agent or representative of any Party, has made any representations inconsistent with the terms and effects of this Agreement.

**[Remainder of Page Intentionally Left Blank; Signature Page to Follow]**

SO AGREED:

Dated: May 10, 2024 | 2:14 PM PDT

*Joseph Gazzo*
330484E1259342E...

JOSEPH GAZZO

Dated: May 10, 2024 | 2:14 PM PDT

*Joseph Gazzo*
330484E1259342E...

MMS GROUP, LLC, BY ITS AUTHORIZED REPRESENTATIVE, JOSEPH GAZZO

Dated: May 10, 2024 | 2:14 PM PDT

*Joseph Gazzo*
330484E1259342E...

BI-RITE HOLDINGS, LLC, BY ITS AUTHORIZED REPRESENTATIVE, JOSEPH GAZZO

Dated: May 10, 2024 | 2:14 PM PDT

*Joseph Gazzo*
330484E1259342E...

BUDDY'S ROLLCO LLC, BY ITS AUTHORIZED REPRESENTATIVE, JOSEPH GAZZO

Dated: May 10, 2024 | 2:14 PM PDT

*Joseph Gazzo*
330484E1259342E...

1ST CHOICE HOME FURNISHINGS OF DONALDSONVILLE, L.L.C., BY ITS AUTHORIZED REPRESENTATIVE, JOSEPH GAZZO

Dated: May 10, 2024 | 2:14 PM PDT

*Michael Bennett*
A832ABE9C34343C...

BUDDY'S FRANCHISING AND LICENSING LLC, BY ITS AUTHORIZED REPRESENTATIVE,

_____

Dated: May 10, 2024 | 2:14 PM PDT

*Andrew Laurence*
C5B5C40AB200409...

FRANCHISE GROUP INC., BY ITS AUTHORIZED REPRESENTATIVE, Andrew Laurence

11