## EXHIBIT B

## Litigation Trust Agreement

*Execution Version*

# LITIGATION TRUST AGREEMENT
# AND DECLARATION OF LITIGATION TRUST

This Litigation Trust Agreement and Declaration of Litigation Trust (this "<u>Agreement</u>"), dated as of June 6, 2025, is made by and among Freedom VCM, Inc., Freedom VCM Interco, Inc. (together with Freedom VCM, Inc., the "<u>Freedom HoldCo Debtors</u>"), Franchise Group, Inc. and its subsidiary debtors and debtors in possession listed on **Schedule 1** attached hereto (the "<u>OpCo Debtors</u>")[1] in the Chapter 11 Cases,[2] Lawrence R. Hirsh (the "<u>Initial Litigation Trustee</u>" and together with any successor trustee appointed in accordance with the terms hereof, the "<u>Litigation Trustee</u>"),[3] and Robert LeHane, Michael Schwarzmann, and Seth Zeleznik, as members of the committee which shall have oversight over the litigation trust contemplated by

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are Franchise Group, Inc. (1876), Freedom VCM Holdings, LLC (1225), Freedom VCM Interco Holdings, Inc. (2436), Freedom Receivables II, LLC (4066), Freedom VCM Receivables, Inc. (0028), Freedom VCM Interco, Inc. (3661), Freedom VCM, Inc. (3091), Franchise Group New Holdco, LLC (0444), American Freight FFO, LLC (5743), Franchise Group Acquisition TM, LLC (3068), Franchise Group Intermediate Holdco, LLC (1587), Franchise Group Intermediate L, LLC (9486), Franchise Group Newco Intermediate AF, LLC (8288), American Freight Group, LLC (2066), American Freight Holdings, LLC (8271), American Freight, LLC (5940), American Freight Management Company, LLC (1215), Franchise Group Intermediate S, LLC (5408), Franchise Group Newco S, LLC (1814), American Freight Franchising, LLC (1353), Home & Appliance Outlet, LLC (n/a), American Freight Outlet Stores, LLC (9573), American Freight Franchisor, LLC (2123), Franchise Group Intermediate B, LLC (7836), Buddy's Newco, LLC (5404), Buddy's Franchising and Licensing LLC (9968), Franchise Group Intermediate V, LLC (5958), Franchise Group Newco V, LLC (9746), Franchise Group Intermediate BHF, LLC (8260), Franchise Group Newco BHF, LLC (4123), Valor Acquisition, LLC (3490), Vitamin Shoppe Industries LLC (3785), Vitamin Shoppe Global, LLC (1168), Vitamin Shoppe Mariner, LLC (6298), Vitamin Shoppe Procurement Services, LLC (8021), Vitamin Shoppe Franchising, LLC (8271), Vitamin Shoppe Florida, LLC (6590), Betancourt Sports Nutrition, LLC (0470), Franchise Group Intermediate PSP, LLC (5965), Franchise Group Newco PSP, LLC (2323), PSP Midco, LLC (6507), Pet Supplies "Plus", LLC (5852), PSP Group, LLC (5944), PSP Service Newco, LLC (6414), WNW Franchising, LLC (9398), WNW Stores, LLC (n/a), PSP Stores, LLC (9049), PSP Franchising, LLC (4978), PSP Subco, LLC (6489), PSP Distribution, LLC (5242), Franchise Group Intermediate SL, LLC (2695), Franchise Group Newco SL, LLC (7697), and Educate, Inc. (5722). The Debtors' headquarters is located at 2371 Liberty Way, Virginia Beach, Virginia 23456.

[2] As set forth in Section 1.2, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan or the Confirmation Order, as applicable, unless otherwise noted.

[3] If Lawrence Hirsh cannot serve as Litigation Trustee on the Effective Date for any reason, Initial Litigation Trustee will be an individual selected by the Freedom Lender Group, with the reasonable consent of the Ad Hoc Group and the Creditors' Committee.

this Agreement (the "Litigation Trust Advisory Board," and, together with the Freedom HoldCo Debtors, the OpCo Debtors, and the Litigation Trustee, the "Parties," and each, a "Party").

## RECITALS

1. On November 3, 2024 (the "Petition Date"), each of the Freedom HoldCo Debtors and the OpCo Debtors (together, with their affiliated debtors and debtors in possession, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered under the caption *In re Franchise Group, Inc., et al.*, Case No. 24-12480 (LSS) (Bankr. D. Del.) (the "Chapter 11 Cases").

2. On November 19, 2024, the Office of the United States Trustee, Region 3 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") to represent the interests of all general unsecured creditors in the Chapter 11 Cases and filed the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 188].

3. On April 25, 2025, the Debtors filed the *Eighth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates* [Docket No. 1312] (as amended, supplemented, or otherwise modified from time to time, the "Plan"). The Plan incorporates the terms of a Global Settlement that includes, among other things, the Litigation Trust Units Allocations, which is comprised of (a) the Prepetition First Lien Loan Claims Litigation Trust Allocation, (b) the General Unsecured Creditors Litigation Trust Allocation, and (c) the Prepetition OpCo 2L/HoldCo Loan Claims Litigation Trust Allocation. Pursuant to the Litigation Trust Units Allocations, the Litigation Trust Units shall be distributed as follows: 58% to Holders of Allowed Prepetition Second Lien Loan Claims and Allowed Prepetition HoldCo

Loan Claims, 30% to the Holders of Allowed Prepetition First Lien Loan Claims, and 12% to Holders of Allowed Freedom HoldCo General Unsecured Claims and Allowed OpCo General Unsecured Claims (excluding, for the avoidance of doubt, any Litigation Trust Units allocated to the Holders of Allowed Prepetition First Lien Loan Claims or Holders of Allowed Prepetition Second Lien Loan Claims), collectively.

4.                  On June 2, 2025, the Bankruptcy Court entered an order [Docket No. 1596] (the "Confirmation Order") confirming the Plan, which became effective on June 6, 2025 (the "Effective Date").

5.      Section 7.10 of the Plan provides for the creation of the Litigation Trust on the Effective Date in connection and consistent with the Global Settlement.

6.      The Litigation Trust is established for the sole purpose of receiving, holding, administering, liquidating, and distributing the Litigation Trust Assets, including the (i) Litigation Trust Escrow Account, which includes, for the avoidance of doubt, the Litigation Trust Escrow Amount, funded in accordance with the Plan, and (ii) Permitted Litigation Claims, *plus* any additional amounts funded into the Litigation Trust Escrow Account following the Effective Date, for the benefit of the Holders of Allowed Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, Allowed Prepetition HoldCo Loan Claims, Allowed OpCo General Unsecured Claims, and Allowed Freedom HoldCo General Unsecured Claims (collectively, the "Litigation Trust Beneficiaries").

7.      The Litigation Trustee shall, in consultation with the Litigation Trust Advisory Board and in accordance with the terms hereof: (i) be the exclusive administrator of the assets of the Litigation Trust, including the Litigation Trust Assets; and (ii) except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, have the power and authority to (a) reconcile

OpCo General Unsecured Claims and Freedom HoldCo General Unsecured Claims, including asserting any objections thereto in each case, *provided, however,* that all parties in interest shall also have the right to object to any General Unsecured Claim or join in any objection by the Litigation Trust or any other party, (b) investigate, pursue, prosecute, compromise and/or settle the Permitted Litigation Claims, and (c) distribute the Litigation Trust Assets in accordance with the terms of the Plan (including the Global Settlement incorporated therein) and this Agreement, in each case with no objective or authority to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary and consistent with, the liquidating purpose of the Litigation Trust.  Subject to the Conversion of the Litigation Trust as described in Section 8.7 hereof, the Litigation Trust is intended to be classified for United States federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Revenue Procedure 94-45, 1994-2 C.B. 674, and, thus, as a "grantor trust" within the meaning of Internal Revenue Code sections 671 through 679 for United States federal income tax purposes, other than any Litigation Trust Disputed Claims Reserve (as defined herein) treated as a disputed ownership fund ("DOF") or other separate Entity.

8.            Pursuant to the Plan, for all United States federal income tax purposes, all parties shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, whether such Holder's Claims are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the Litigation Trust (but only at such time as actually transferred) as (i) a transfer of the Litigation Trust Assets (subject to any obligations relating to such Litigation Trust Assets, including, but not limited to, the Litigation Trust Expenses) to the Litigation Trust Beneficiaries and, to the extent the Litigation

Trust Assets are allocable to Disputed General Unsecured Claims that are the responsibility of the Litigation Trust, acting by and through its agents and representatives, to resolve, to the Litigation Trust Disputed Claims Reserve (as defined herein), followed by (ii) the transfer by the Litigation Trust Beneficiaries of the Litigation Trust Assets (other than the Litigation Trust Assets allocable to the Litigation Trust Disputed Claims Reserve) to the Litigation Trust in exchange for their non-transferable (subject to certain limited exceptions) Litigation Trust Units that will entitle the respective holder thereof to its *pro rata* share of the proceeds of the Litigation Trust Assets *less* the Litigation Trust Expenses (the "Litigation Trust Net Assets").  Accordingly, the Litigation Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets (other than such Litigation Trust Assets as are allocable to the Litigation Trust Disputed Claims Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable Law, for applicable United States state and local income tax purposes.

9.        The Litigation Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local Laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

<u>**DECLARATION OF LITIGATION TRUST**</u>

The Freedom HoldCo Debtors, the OpCo Debtors, the Litigation Trustee, and the members of the Litigation Trust Advisory Board enter into this Agreement to effectuate the distribution of the Litigation Trust Net Assets to the Litigation Trust Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Section 7.10 of the Plan and Section 2.3.2 of this Agreement, on the Effective Date, all of the Litigation Trust Assets shall automatically and irrevocably be transferred to, and vest in or deem to be vested in, the Litigation Trust free and clear of all Claims, Liens, Interests, encumbrances, and contractually imposed restrictions, except as otherwise provided in the Plan;

TO HAVE AND TO HOLD unto the Litigation Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Litigation Trust Assets are to be held by the Litigation Trust and applied on behalf of the Litigation Trust by the Litigation Trustee (such Litigation Trustee to be a "United States person" within the meaning of Internal Revenue Code section 7701(a)(30) and established within the United States) on the terms and conditions set forth herein and the Plan (including, for the avoidance of doubt, the Global Settlement incorporated therein), solely for the benefit of the Litigation Trust Beneficiaries, as more fully set forth in the Plan and this Agreement, and for no other party.

<u>**ARTICLE I**</u>

**RECITALS, PLAN DEFINITIONS, OTHER
DEFINITIONS, INTERPRETATION, AND CONSTRUCTION**

1.1     <u>Recitals</u>.  The Recitals are incorporated into and made terms of this Agreement.

1.2     <u>Definitions</u>.  All capitalized terms used in this Agreement but not defined herein shall have the meanings set forth in the Plan or the Confirmation Order, as applicable, or as otherwise set forth herein.  For the avoidance of doubt, the "<u>Litigation Trust Assets</u>" shall mean

the Litigation Trust Assets (as defined in the Plan) and any and all other property held from time to time by the Litigation Trust under this Agreement and any proceeds thereof and earnings thereon.

1.3     <u>Conflict Among Plan Documents</u>.  In the event of any inconsistency between the Plan, the Confirmation Order, and/or this Agreement, each such document shall have controlling effect in the following rank order:  (i) the Confirmation Order; (ii) the Plan (including, for the avoidance of doubt, the Global Settlement incorporated herein); and (iii) this Agreement; *provided*, *however*, that to the extent that the Plan and the Confirmation Order are silent as to a particular issue, the terms of the relevant provision of this Agreement shall control so long as not otherwise inconsistent with the clear intent of the Plan and/or the Confirmation Order.

## ARTICLE II

## ESTABLISHMENT OF LITIGATION TRUST

2.1     <u>Effectiveness of Agreement; Name of Litigation Trust</u>.  The Freedom HoldCo Debtors, the OpCo Debtors and the Litigation Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Litigation Trust in furtherance of the compromises and agreements more fully set forth in the Plan.  This Agreement shall become effective on the Effective Date.  The Litigation Trust shall be officially known as the "<u>Franchise Group Litigation Trust</u>."

2.2     <u>Purpose of Litigation Trust</u>.  Further to the establishment and purpose of the Litigation Trust as declared in Recital 8 of this Agreement, the Litigation Trust is established for the primary purpose of collecting, holding, administering, liquidating, and distributing the Litigation Trust Assets for the benefit of the Litigation Trust Beneficiaries in accordance with the terms and conditions of this Agreement, Treasury Regulations Section 301.7701-4(d), and the Plan

(including, for the avoidance of doubt, the Global Settlement incorporated therein), and with no objective or authority to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.

2.3     Transfer of Litigation Trust Assets.

2.3.1     Conveyance of Litigation Trust Assets.  Pursuant to the Plan, the Freedom HoldCo Debtors and the OpCo Debtors hereby irrevocably grant, release, assign, transfer, convey, and deliver, on behalf of the Litigation Trust Beneficiaries, all of such Debtors' rights, title, and interest in and to the Litigation Trust Assets to the Litigation Trust as of the Effective Date in trust for the benefit of the Litigation Trust Beneficiaries, which shall constitute Litigation Trust Assets for all purposes and shall be administered and applied as specified in this Agreement and the Plan. Upon the transfer of the Litigation Trust Assets to the Litigation Trust in accordance with the Plan, none of the Debtors or the Reorganized Debtors shall have any further obligations with respect to the distribution or payment of any proceeds of the Litigation Trust Assets to any of the Litigation Trust Beneficiaries, except that the Debtors or the Reorganized Debtors, as applicable, as reasonably requested by the Litigation Trustee, shall, at the Litigation Trust's sole cost and expense, from time to time, (i) execute and deliver or cause to be executed and delivered any such documents (in recordable form where necessary or appropriate) and (ii) take or cause to be taken such further commercially reasonable action, in each case as the Litigation Trustee may reasonably deem necessary or appropriate, to vest in the Litigation Trust or confirm to the Litigation Trustee title to and possession of the Litigation Trust Assets; *provided* that neither the Debtors nor Reorganized Debtors shall be required to incur any unreimbursed liability for any fees or expenses (including any indemnification obligations) in connection with such actions.  The Litigation Trustee shall have no duty to arrange for any of the transfers of any Litigation Trust Assets

contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and/or the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.  Under no circumstance shall the Debtors, the Reorganized Debtors, or any other party be required to contribute any additional assets to or for the benefit of the Litigation Trust other than the Litigation Trust Assets, except as otherwise set forth in the Plan.

2.3.2    <u>Title to Litigation Trust Assets</u>.  Pursuant to the Plan, all of the Freedom HoldCo Debtors' and the OpCo Debtors' rights, title, and interest in and to the Litigation Trust Assets, including all such assets held or controlled by third parties (if any), are hereby irrevocably transferred to, and automatically vested in, or deemed to be automatically vested in, the Litigation Trust on the Effective Date and shall comprise assets of the Litigation Trust for all purposes, free and clear of all Liens, Claims, encumbrances, Interests, contractually-imposed restrictions, and other interests, and such transfer is on behalf of the Litigation Trust Beneficiaries to establish the Litigation Trust.  Subject to any applicable consultation rights set forth in this Agreement, the Litigation Trust shall be authorized, among other things, to (i) obtain possession or control of, collect, receive, hold, administer, liquidate, and distribute all of the Litigation Trust Assets, (ii) investigate, pursue, prosecute, compromise, settle, and/or otherwise resolve the Permitted Litigation Claims, and (iii) other than as provided under the Plan, assert and/or exercise any and all rights, including, without limitation, setoff and recoupment, defenses, counterclaims, and cross-claims, whether arising at law or in equity, of the Freedom HoldCo Debtors, the OpCo Debtors, or their respective Estates to any claims, Causes of Action, or counterclaims that may be asserted by (a) any and all Persons and/or Entities that are or may become defendants, sued, or a party in or the subject of any lawsuit, proceeding, or litigation in connection with the Permitted Litigation Claims or (b) the Holders of Disputed OpCo General Unsecured Claims or Freedom

HoldCo General Unsecured Claims.  Without limiting the generality of the foregoing, the Litigation Trust shall have the right to (i) invoke section 542 of the Bankruptcy Code to pursue turnover of Litigation Trust Assets and (ii) enforce any of provisions of the Plan and/or Confirmation Order against any Persons or Entities that seek or seeks to interfere with the administration of the Litigation Trust and/or the Litigation Trust Assets.  On the Effective Date, the Litigation Trust, acting by and through the Litigation Trustee, shall be substituted for the Freedom HoldCo Debtors and the OpCo Debtors for all purposes with respect to the Litigation Trust Assets and the administration of the Litigation Trust Units.  To the extent any Law or regulation prohibits the transfer of ownership of any of the Litigation Trust Assets from the Freedom HoldCo Debtors and/or the OpCo Debtors to the Litigation Trust and such Law is not superseded by the Bankruptcy Code, the Litigation Trust's interest in such Litigation Trust Assets shall be a Lien upon, and security interest in, such Litigation Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2 of this Agreement, and this Agreement shall be deemed a security agreement granting such Lien upon, and interest therein, without need to file any financing statement(s), mortgage(s), or other documentation evincing such Lien and security interest.  By executing this Agreement, the Litigation Trustee on behalf of the Litigation Trust hereby accepts all of such property and Liens (if any) as Litigation Trust Assets, to be held in trust for Litigation Trust Beneficiaries, subject to the terms of this Agreement, the Confirmation Order, and the Plan.

2.4    <u>Litigation Trust Funding</u>.  On the Effective Date, the Litigation Trust Escrow Account shall be funded with the Litigation Trust Escrow Amount.  The Litigation Trust Escrow Amount shall be used for the administration of the Litigation Trust, to pay Litigation Trust

Expenses, and to pursue the Permitted Litigation Claims.  The Litigation Trust Escrow Amount shall be primarily reserved for Litigation Trust Expenses.

2.5     <u>Capacity of Litigation Trust</u>.  Notwithstanding any state or federal Law to the contrary or anything herein, the Litigation Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Litigation Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.6     <u>Cooperation</u>.  On or after the Effective Date, at the sole cost and expense of the Litigation Trust, the Reorganized Debtors shall use commercially reasonable efforts to cooperate with the Litigation Trust and the Litigation Trustee and any professionals retained by the Litigation Trust in effecting the transition from the Reorganized Debtors to the Litigation Trust and of the administration of the Litigation Trust Assets; *provided* that the Reorganized Debtors shall not be required to incur any unreimbursed liability for any fees or expenses (including any indemnification obligations) that may result from any such cooperation.  Such cooperation shall include, but not be limited to, from and after the Effective Date, using commercially reasonable efforts to identify and make available (i) any evidence and information the Litigation Trustee reasonably requests in connection with the Litigation Trust's investigation, prosecution, other pursuit, or defense, as applicable, of the Permitted Litigation Claims and objections to Disputed OpCo General Unsecured Claims and Disputed Freedom HoldCo General Unsecured Claims, to the extent the Reorganized Debtors have such evidence and/or information and such evidence and/or information has not already been provided to the Litigation Trust by the Debtors, (ii) to the

extent known by the Reorganized Debtors, the identity and contact information of the former officers, directors, and employees and Professionals of the Debtors who may have knowledge regarding the Permitted Litigation Claims, Disputed OpCo General Unsecured Claims, or Disputed Freedom HoldCo General Unsecured Claims; and (iii) current officers, directors, and employees of the Reorganized Debtors that the Litigation Trustee, in consultation with the Reorganized Debtors, determines may have knowledge regarding the Permitted Litigation Claims, Disputed OpCo General Unsecured Claims, or Disputed Freedom HoldCo General Unsecured Claims, subject to (a) consultation and cooperation between the Reorganized Debtors and the Litigation Trustee regarding the reasonable availability of such individuals and (b) counsel for the Reorganized Debtors and the current officer, director or employee having the right to attend and participate in any meetings, discussions, or communications; *provided* that, the Litigation Trust shall be responsible to pay fifty percent (50%) of the reasonable and documented fees and expenses of counsel to the Reorganized Debtors in connection with the Reorganized Debtors exercising its rights under this section 2.6(b) (which shall, in each case, constitute Litigation Trust Expenses hereunder).

2.6.1    Prior to the Effective Date, the Debtors shall, at the cost and expense of the Debtors, and on or after the Effective Date, the Reorganized Debtors shall, at the sole cost and expense of the Litigation Trust (which shall, in each case, constitute Litigation Trust Expenses hereunder), use commercially reasonable efforts to preserve (including through device imaging)

and provide to the Litigation Trust the following: (a) all documents,[4] communications,[5] and other information (or copies thereof) (collectively, "Information") provided to Petrillo Klein + Boxer LLP or Akin Gump Strauss Hauer & Feld LLP in connection with the Freedom HoldCo Independent Investigation and the independent investigations conducted by Petrillo Klein + Boxer LLP, as well as complete and unredacted versions of the reports prepared by the Freedom HoldCo Independent Director and Petrillo Klein + Boxer LLP (which unredacted reports may be provided to the Litigation Trustee and the members of the Litigation Trust Advisory Board on a confidential basis), (b) all Information produced, or that are otherwise ready to be produced, by the Debtors in discovery in the Chapter 11 Cases, and (c) such other Information relating to the Permitted Litigation Claims in the possession, custody and control of the Reorganized Debtors that the Reorganized Debtors and the Litigation Trust may agree upon after conferring in good faith,

---

[4]    For the avoidance of doubt, for the purposes of this Section 2.6, "documents" shall include any printed, written, typed, recorded, transcribed, taped, photographic, or graphic mater, in draft or final form, including, but not limited to: any letter, correspondence, or Communication of any sort; photograph; sound recording; video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, or cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, Bloomberg messages, discussion, interview, meeting, conference, investigation, negotiation, act, or activity; projection, work paper, or draft; computer or computer network output or input, portable storage devices, e-mail, magnetic and/or optical medias, archived or back up data on any of these medias on the cloud or otherwise, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice, or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, or press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, register, canceled check, deposit slip, charge slip, tax return (income or other), requisition, file, study, graph, or tabulation, and any and all other writings and recordings of whatever nature, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonable usable form; including, without limitation, all things meeting the definition of "documents" or "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definition of "writing" or "recording" set forth in Rule 1001 of the Federal Rules of Evidence. Any document with any marks such as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is a separate document within the meaning of this term.

[5]    For the avoidance of doubt, for purposes of this Section 2.6, "communications" shall include any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more Persons, by or to whomsoever made, and including without limitation, correspondence, documents, conversations, dialogues, discussions, e-mail, interviews, text messages, consultations, agreements, and other understandings.

*provided* that the Reorganized Debtors shall preserve all Information subject to existing litigation holds, which shall remain in effect; *provided further* that, notwithstanding anything to the contrary herein, the Reorganized Debtors shall not be required to (i) incur any liability for any fees or expenses (including any indemnification obligations) that may result from any such preservation or production and any documented costs and expenses incurred by the Reorganized Debtors in connection therewith shall be borne or promptly reimbursed by Litigation Trust (which shall, in each case, constitute Litigation Trust Expenses hereunder), or (ii) take any actions in connection with any of the Reorganized Debtor's cooperation obligations hereunder that the Reorganized Debtors reasonably determine would harm the merits of, create defenses to, or otherwise prejudice the Reorganized Debtors' Retained Causes of Action following good-faith consultation and coordination between the Reorganized Debtors and the Litigation Trustee or subject to any further court order requiring production.[6]

2.6.2    The Reorganized Debtors (or their respective Professionals) shall arrange for the Litigation Trustee to receive (i) an updated Claims Register of OpCo General Unsecured Claims and Freedom HoldCo General Unsecured Claims from the Claims Agent within thirty (30) days after the Effective Date and, if applicable, (ii) a register of Holders of any Prepetition First Lien Loan Claims, any Prepetition Second Lien Loan Claims, and any Prepetition HoldCo Loan Claims.

2.7    <u>Duties of the Debtors and the Reorganized Debtors</u>.    The Debtors and the Reorganized Debtors, as applicable, shall have no responsibility or obligation with respect to the Litigation Trust or Litigation Trust Assets after the Effective Date, other than to comply with

---

[6]    Capitalized terms in Section 2.6 not otherwise defined in the Plan or Confirmation Order, as set forth in Section 1.2, shall have the meanings ascribed to them in the Disclosure Statement [Docket No. 151].

Sections 2.3 and 2.6 of this Agreement.  To the extent the Reorganized Debtors are obligated to take any action pursuant to this Agreement, unless otherwise expressly set forth herein, the Reorganized Debtors shall only be required to use commercially reasonable efforts in taking such action and the Reorganized Debtors shall not be required to take any such action if the Reorganized Debtors reasonably believe that taking such action will materially burden the Reorganized Debtors, their employees, and/or their operations; *provided* that, prior to making such a determination, the Reorganized Debtors shall coordinate and consult with the Litigation Trustee, in good faith, regarding such burden or subject to any further court order requiring production.  For the avoidance of doubt, the Reorganized Debtors shall not be required to incur any liability for any fees or expenses (including any indemnification obligations) that may result from such compliance and any documented costs and expenses incurred by the Reorganized Debtors in connection therewith shall be borne or promptly reimbursed by Litigation Trust (which shall, in each case, constitute Litigation Trust Expenses hereunder).

      2.8    <u>No Retention of Excess Cash</u>.  Notwithstanding anything in this Agreement to the contrary, but subject to any applicable consultation rights set forth in this Agreement, under no circumstances shall the Litigation Trust or the Litigation Trustee retain Cash in excess of a reasonable amount to meet Claims, expenses (including any litigation expenses incurred in connection with prosecuting the Permitted Litigation Claims), and contingent liabilities or to maintain the value of the Litigation Trust Assets during liquidation other than reserves established pursuant to Article III and/or Section 5.1.1 of this Agreement, and shall distribute all amounts not required to be retained for such purposes and not otherwise required to be distributed to the Litigation Trust Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.9     <u>Acceptance by Litigation Trustee</u>.  The Litigation Trustee accepts its appointment as Litigation Trustee of the Litigation Trust.

2.10     <u>Appointment of the Litigation Trust Advisory Board</u>.   The members of the Litigation Trust Advisory Board are hereby appointed, effective as of the Effective Date, pursuant to the terms and conditions set forth in Section 4.1 of this Agreement.

2.11     <u>Privileges</u>.

2.11.1  All attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "<u>Privileges</u>") held by any one or more of the applicable Debtors (including any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their respective predecessors) related to the Litigation Trust Assets are hereby transferred and assigned to the Litigation Trust.  The Debtors and/or the Reorganized Debtors shall not withhold any Information required to be provided to the Litigation Trustee under this Agreement on the basis that it is subject to any Privileges.  Information transferred by the Debtors and/or the Reorganized Debtors that is subject to such Privileges (the "<u>Transferred Privileged Information</u>") shall include documents and information of all manners, whether oral, written, or digital, and whether or not previously disclosed or discussed.  For the avoidance of doubt, the Privileges shall include any right to preserve or enforce a privilege that arises from any joint defense, common interest, or similar agreement involving any of the Debtors.

2.11.2  The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information in the Litigation Trust, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the benefit of the Litigation Trust and the Litigation Trust Beneficiaries.  The Litigation Trust shall have the authority and discretion

16

to maintain the Privileges and keep the Transferred Privileged Information confidential or waive any Privileges and/or disclose and/or use in litigation or any proceeding any or all of the Transferred Privileged Information; *provided, however,* that the Litigation Trust may not, without good-faith consultation and coordination between the Litigation Trustee and the Reorganized Debtors, (i) waive any Privileges in respect of Transferred Privileged Information, or (ii) use or disclose any Transferred Privileged Information.    The Reorganized Debtors may not make disclosure in a manner that could effectuate a waiver of any Privileges in respect of Transferred Privileged Information without good-faith consultation and coordination between the Litigation Trustee and the Reorganized Debtors.  If the Litigation Trustee or the Reorganized Debtors object to an action proposed to be taken by the other with regard to records, documents, or information related to the Litigation Trust Assets that are covered by the Privileges (or a disclosure that would result in a waiver), the parties shall be permitted to raise the issue with the Bankruptcy Court.  The objecting party shall bear the burden of proof.  Each of the parties shall bear its own costs and expenses, including attorneys' fees, incurred in connection with such dispute.  Notwithstanding anything to the contrary contained herein, nothing in this Agreement shall operate as a waiver of any privileges held and retained by the Reorganized Debtors, including, but not limited to, the Privileges that are transferred to the Litigation Trust hereunder.

## **ARTICLE III**

## **ADMINISTRATION OF LITIGATION TRUST**

3.1    <u>Rights, Powers, and Privileges of Litigation Trustee Generally</u>.    Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the Effective Date, the Litigation Trustee, on behalf of the Litigation Trust, may, subject to the oversight of the Litigation Trust Advisory Board, control and exercise authority and dominion over the Litigation

Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Litigation Trust in accordance with the Plan and this Agreement. Subject to the oversight of the Litigation Trust Advisory Board set forth herein, in administering the Litigation Trust Assets, the Litigation Trustee shall, among other things, in an expeditious but commercially reasonable manner, (i) liquidate and convert to Cash the Litigation Trust Assets, (ii) make timely distributions in accordance with this Agreement and the Plan, and (iii) exercise reasonable business judgment and not unduly prolong the Litigation Trust's duration. Notwithstanding anything in the Plan or this Agreement to the contrary, the Litigation Trustee shall always act consistently with, and not contrary to, the purpose of the Litigation Trust as set forth in this Agreement and the Plan.

3.2     Power to Contract.   In consultation with the Litigation Trust Advisory Board, in furtherance of the purpose of the Litigation Trust, and except as otherwise specifically restricted in the Plan, the Confirmation Order, or this Agreement, the Litigation Trustee shall have the right and power on behalf of the Litigation Trust and also may cause the Litigation Trust to enter into any covenants or agreements binding the Litigation Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Litigation Trustee to be consistent with, and advisable in, furthering the purpose of the Litigation Trust, including, without limitation, with respect to the Permitted Litigation Claims.

3.3     Ultimate Right to Act Based on Advice of Counsel or Other Professionals.   In consultation with the Litigation Trust Advisory Board, nothing in this Agreement shall be deemed to prevent the Litigation Trustee from taking or refraining to take any action on behalf of the Litigation Trust that, based upon the advice of counsel or other professionals, the Litigation Trustee determines it is obligated to take or to refrain from taking in the performance of any duty

that the Litigation Trustee may owe the Litigation Trust Beneficiaries or any other Person under the Plan, the Confirmation Order, or this Agreement.

      3.4    <u>Powers of Litigation Trustee</u>.  Without limiting the generality of the above Section 3.1, in furtherance of, consistent with, and unless otherwise specifically limited or restricted by the purpose, terms, and conditions of the Plan, the Confirmation Order, or this Agreement, the Litigation Trustee shall, in consultation with the Litigation Trust Advisory Board, in addition to the powers granted in the Plan and the Confirmation Order, and those powers set forth herein, at the sole cost and expense of the Litigation Trust, have the power to take the following actions on behalf of the Litigation Trust and any powers reasonably incidental thereto that the Litigation Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Litigation Trust:

      3.4.1   hold legal title to the Litigation Trust Assets and to any and all rights of the Freedom HoldCo Debtors and the OpCo Debtors (including as Reorganized Debtors, as applicable) and the Litigation Trust Beneficiaries in or arising from the Litigation Trust Assets;

      3.4.2   receive, maintain, conserve, supervise, prosecute, collect, settle, manage, adjust, invest, protect, enforce, and, where appropriate, cause the Litigation Trust to abandon the Litigation Trust Assets, including causing the Litigation Trust to invest any monies held as Litigation Trust Assets in accordance with the terms of Section 3.9 hereof;

      3.4.3   cause the Litigation Trust to investigate, pursue, litigate, and/or settle the Permitted Litigation Claims;

      3.4.4   open and maintain bank accounts or any other accounts on behalf of, or in the name of, the Litigation Trust;

3.4.5    cause the Litigation Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.4.6    receive, collect, hold, administer, and liquidate any and all of the Litigation Trust Assets, including, without limitation, the sale of any Litigation Trust Assets;

3.4.7    protect and enforce the rights to the Litigation Trust Assets (including, without limitation, the Permitted Litigation Claims) vested in the Litigation Trust and the Litigation Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.4.8    investigate any potential Permitted Litigation Claims and cause the Litigation Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 in relation to the Permitted Litigation Claims;

3.4.9    investigate any Permitted Litigation Claims and review, reconcile, compromise, settle or object to OpCo General Unsecured Claims and Freedom HoldCo General Unsecured Claims as set forth in the Plan, and cause the Litigation Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 in relation to the Permitted Litigation Claims; *provided*, *however*, that the Litigation Trust shall not be permitted to seek relief under Bankruptcy Rule 2004 as against (i) any current employees, officers, or directors of the Reorganized Debtors, (ii) the DIP Agent and the DIP Lenders, (iii) the Freedom Lender Group, and (iv) the Ad Hoc Group;

3.4.10 cause the Litigation Trust to employ or retain professionals, including without limitation, a distribution agent, and other agents, attorneys, financial advisors, independent contractors, and third parties pursuant to this Agreement and pay the reasonable compensation

thereof as Litigation Trust Expenses; *provided, however*, that none of Paul Hastings LLP, White & Case LLP or Pachulski Stang Ziehl & Jones LLP shall serve as counsel to the Litigation Trust, the Litigation Trustee, or the Litigation Trust Advisory Board;

3.4.11  cause the Litigation Trust to pay all of its lawful expenses, debts, charges, taxes, and other liabilities, and make all other payments relating to the Litigation Trust Assets as Litigation Trust Expenses, solely out of the Litigation Trust Assets;

3.4.12  cause the Litigation Trust to review, reconcile, investigate, pursue, prosecute, enforce, collect, compromise, settle, abandon, or elect not to pursue all Disputed OpCo General Unsecured Claims, Disputed Freedom HoldCo General Unsecured Claims and the Permitted Litigation Claims;

3.4.13  calculate, authorize, and make all distributions to holders of Litigation Trust Units as provided for in, or contemplated by, the Plan and this Agreement;

3.4.14  establish, adjust, and maintain a Litigation Trust Disputed Claims Reserve;

3.4.15  cause the Litigation Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Litigation Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such distribution under the income tax or other Laws of the United States or of any state or political subdivision thereof;

3.4.16  in reliance upon the Debtors' Schedules and the official Claims Register maintained in the Chapter 11 Cases, review, and, where appropriate, cause the Litigation Trust to Allow or object to OpCo General Unsecured Claims or Freedom HoldCo General Unsecured Claims, and supervise and administer the Litigation Trust's commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to the Disputed OpCo General

Unsecured Claims and Disputed Freedom HoldCo General Unsecured Claims permitted to be administered by the Litigation Trust in accordance with the Plan; *provided, however,* that the Litigation Trustee shall not be permitted to object to any Prepetition First Lien Loan Claims, Prepetition Second Lien Loan Claims, or Prepetition HoldCo Loan Claims;

3.4.17  in reliance upon the Debtors' Schedules and the Claims Register maintained in the Chapter 11 Cases, maintain a register evidencing the Litigation Trust Units held by each Litigation Trust Beneficiary and, in accordance with Section 3.10 of this Agreement, such register may be the official Claims Register maintained in the Chapter 11 Cases;

3.4.18  without limitation of, and as set forth in Section 3.4.15 of this Agreement, cause the Litigation Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Litigation Trust, and file tax returns for the Litigation Trust as a grantor trust under Internal Revenue Code section 671 and Treasury Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VIII hereof (subject to the treatment of any portion of the Litigation Trust as a DOF or other separate Entity), and pay taxes, if any, payable for and on behalf of the Litigation Trust; *provided*, *however*, neither the Litigation Trust nor the Litigation Trustee shall have any responsibility or liability in any capacity whatsoever for the filing of Debtors' income tax returns for any period either prior to or after the Effective Date;

3.4.19  cause the Litigation Trust to abandon or donate to a charitable organization that qualifies for non-profit status under Internal Revenue Code section 501(c)(3) any Litigation Trust Assets that the Litigation Trustee, in consultation with the Litigation Trust Advisory Board, determines to be too impractical to distribute to the Litigation Trust Beneficiaries or of inconsequential value to the Litigation Trust and the Litigation Trust Beneficiaries;

3.4.20  cause the Litigation Trust to send annually to Litigation Trust Beneficiaries, in accordance with the applicable tax Laws, a separate statement stating a Litigation Trust Beneficiary's interest in the Litigation Trust and its share of the Litigation Trust's income, gain, loss, deduction, or credit, and to instruct all such Litigation Trust Beneficiaries to report such items on their United States federal tax returns, as applicable;

3.4.21  cause the Litigation Trust to seek a determination of tax liability or refund of the Litigation Trust (including any Litigation Trust Disputed Claims Reserve treated as a DOF (if elected) or other separate Entity) under section 505 of the Bankruptcy Code;

3.4.22  cause the Litigation Trust to establish such reserves for taxes, assessments and other Litigation Trust Expenses as may be necessary and appropriate for the proper operation of matters incident to the Litigation Trust;

3.4.23  cause the Litigation Trust to purchase and carry all insurance policies that the Litigation Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.4.24  undertake all administrative functions of the Litigation Trust, including overseeing the winding down and termination of the Litigation Trust;

3.4.25  exercise, implement, enforce, and discharge all of the applicable and relevant terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.4.26  take all other actions consistent with this Agreement, the Plan, and the Confirmation Order, that the Litigation Trustee deems reasonably necessary or desirable to administer the Litigation Trust.

3.4.27  Notwithstanding anything to the contrary herein, the Litigation Trustee shall not invest any Litigation Trust Assets, proceeds thereof, or any income earned by the Litigation Trust unless such investment is permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684.  The Litigation Trustee shall not be liable for interest or obligated to produce income on any moneys received by the Litigation Trust hereunder and held for distribution or payment, except as such interest or other income shall actually be received by the Litigation Trustee.

3.5    Limitations on Power and Authority of Litigation Trustee.  Notwithstanding anything to the contrary contained herein, the Litigation Trustee shall not have the authority to (i) take any action in contravention of the Plan, the Confirmation Order, or this Agreement; (ii) take any action that would make it impossible to carry on the activities of the Litigation Trust; (iii) possess property of the Litigation Trust or assign the Litigation Trust's rights in specific property for any purpose other than as provided herein; (iv) raise any financing, including any litigation financing, unless such financing is on market terms, and an equal opportunity to participate in such financing is offered on the same terms and on a *pro rata* basis to all Litigation Trust Beneficiaries; or (v) make any distribution to Litigation Trust Beneficiaries, unless such distributions are made on *pro rata* basis subject to the Litigation Trust Units Allocations.

3.6    Authority to Pursue the Permitted Litigation Claims.  In consultation with the Litigation Trust Advisory Board, the Litigation Trust shall have sole and absolute discretion with respect to the right, power, and interest to investigate, review, pursue, reconcile, prosecute, enforce, collect, compromise, settle, or elect not to pursue the Permitted Litigation Claims.  Except

as otherwise provided in the Plan or the Confirmation Order, the Litigation Trust shall be vested with, and shall be entitled to assert all setoffs, cross-claims, defenses, and Causes of Action, whether arising at law or in equity, of the Freedom HoldCo Debtors, the OpCo Debtors or the Litigation Trust to any counterclaims that may be asserted by any defendant with respect to the Permitted Litigation Claims. The Litigation Trust, acting by and through the Litigation Trustee, shall be the sole representative of the Freedom HoldCo Debtors' and OpCo Debtors' Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Permitted Litigation Claims.

3.6.1    Notwithstanding the Debtors or Reorganized Debtors providing any privileged information to the Litigation Trust or the Litigation Trustee, such privileged information shall be without waiver in recognition of the joint and/or successor interest in investigating and prosecuting the Permitted Litigation Claims and shall remain privileged.

3.6.2    The Litigation Trustee will exercise its reasonable business judgment in prosecuting the causes of action held by the Litigation Trust. Except as otherwise expressly set forth in this Agreement, the Litigation Trustee, in consultation with the Litigation Trust Advisory Board, shall have sole discretion with respect to the prosecution, settlement, or other resolution of Permitted Litigation Claims as it determines are in the best interests of the holders of the Litigation Trust Units and consistent with its fiduciary duties and the purposes of the Litigation Trust, and shall have no liability for the outcome of its decision.

3.7    <u>Responsibility for Administration of Claims</u>. From and after the Effective Date, the Litigation Trust shall, subject to any applicable consultation rights set forth in this Agreement, become responsible for administering and paying distributions to Holders of Litigation Trust Units *on a pro rata* basis, subject to the Litigation Trust Units Allocation. The Litigation Trust, acting by and through the Litigation Trustee, shall have the right after the Effective Date to object to the

25

allowance of any OpCo General Unsecured Claim or Freedom HoldCo General Unsecured Claim on any ground, to file, withdraw, or litigate to judgment objections to such Claims, to settle or compromise any Disputed OpCo General Unsecured Claims or Freedom HoldCo General Unsecured Claims without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Freedom HoldCo Debtors, the OpCo Debtors, and their respective Estates; *provided* that the Litigation Trust shall consult with the Reorganized Debtors prior to taking such action to the extent such action may have an adverse impact on the Reorganized Debtors' Retained Causes of Action.  Except as set forth herein or in the Plan, the Litigation Trust, acting by and through the Litigation Trustee, shall also be entitled to assert all of the Freedom HoldCo Debtors', the OpCo Debtors', and their respective Estates' rights under, without limitation, section 558 of the Bankruptcy Code, and may seek estimation of any OpCo General Unsecured Claims or Freedom HoldCo General Unsecured Claims under and subject to section 502(c) of the Bankruptcy Code.

3.8   <u>Agents and Professionals</u>.  Subject to Section 3.5.3 and this Section 3.8, the Litigation Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Litigation Trustee believes have qualifications necessary to assist in the administration of the Litigation Trust.  For the avoidance of doubt, and without limitation of applicable Law, nothing in this Agreement (other than Section 3.5.3 and this Section 3.8) shall limit the Litigation Trustee from engaging counsel or other professionals, including the Litigation Trustee itself or the Litigation Trustee's firm or their affiliates, to do work for the Litigation Trust; *provided* that, none of Paul Hastings LLP, White & Case LLP or Pachulski Stang Ziehl & Jones LLP shall serve as counsel to the Litigation Trust, the Litigation Trustee, or the Litigation Trust Advisory Board.  The Litigation Trustee shall pay the

reasonable salaries, fees, and/or expenses of such Persons out of the Litigation Trust Assets in the ordinary course of business as Litigation Trust Expenses without the need for Bankruptcy Court approval.

3.9    <u>Safekeeping and Investment of the Litigation Trust Assets</u>.  All monies and other assets received by the Litigation Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Litigation Trust Beneficiaries, but need not be segregated in separate accounts from other Litigation Trust Assets, unless and to the extent required by Law or the Plan.  Except for any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, neither the Litigation Trust nor the Litigation Trustee shall have any liability for interest or producing income on any monies received by them and held for distribution on account of the Litigation Trust Beneficiaries except as such interest shall actually be received by the Litigation Trust or the Litigation Trustee, which shall be distributed as provided herein and in the Plan.  Except as otherwise provided by the Plan, the powers of the Litigation Trustee to invest any monies held by the Litigation Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Litigation Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills or money market funds that invest exclusively in United States Treasury bills and United States Treasury notes; *provided*, *however*, that the scope of permissible investments shall be limited to include only those investments that a "liquidating trust," within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, Internal Revenue Service pronouncements, or otherwise.  For the

avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Litigation Trustee shall not be prohibited from engaging in any trade or business on its own account, *provided that* such activity does not interfere or conflict with the Litigation Trustee's administration of the Litigation Trust (including the Litigation Trust's status as a "liquidating trust" for tax purposes).

3.10    <u>Maintenance and Disposition of Litigation Trust and Debtor Records</u>.    The Litigation Trustee shall maintain accurate records of the administration of the Litigation Trust Assets, including receipts and disbursements and other activity of the Litigation Trust.    The Litigation Trust may (at its sole cost and expense), but has no obligation to, engage a claims agent (including, but not limited to, the Debtors' Claims Agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Litigation Trust.  To the extent of any General Unsecured Claims reflected thereon, the Claims Register may serve as the Litigation Trustee's register of Litigation Trust Units held by Litigation Trust Beneficiaries.  The books and records maintained by the Litigation Trustee and any records of the Debtors transferred to the Litigation Trust may be disposed of by the Litigation Trustee at the later of (i) such time as the Litigation Trustee, in consultation with the Litigation Trust Advisory Board, determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Litigation Trust or the Litigation Trust Beneficiaries and (ii) upon the termination and completion of the winding down or dissolution of the Litigation Trust.

3.11    <u>Reporting Requirements</u>.  The Litigation Trustee shall provide the Reorganized Debtors, U.S. Trustee, the Litigation Trust Advisory Board, and the Bankruptcy Court the information and reports they may reasonably request concerning the administration of the Litigation Trust.

3.12    <u>No Bond Required; Procurement of Insurance</u>.  Notwithstanding any state or other applicable Law to the contrary, the Litigation Trustee (including any successor Litigation Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Litigation Trustee is hereby authorized, but not required, to obtain all reasonable insurance coverage for itself, the Litigation Trust Advisory Board, or their respective agents, representatives, employees, or independent contractors, including, without limitation, coverage with respect to the liabilities, duties, and obligations of the Litigation Trustee and its agents, representatives, employees, or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Litigation Trust, constitute Litigation Trust Expenses, and be paid out of the Litigation Trust Assets.

3.13    <u>Fiduciary and Other Duties</u>.  The Litigation Trustee shall have fiduciary duties (including the duties of care and loyalty) to the Litigation Trust Beneficiaries (which shall not include, for the avoidance of doubt, the Debtors or the Reorganized Debtors); *provided*, *however*, that the Litigation Trustee shall not owe fiduciary obligations to the Debtors, the Reorganized Debtors, or any defendants of Permitted Litigation Claims in their capacities as such, it being the intent of such fiduciary duties to ensure that the Litigation Trustee's obligations are to maximize the value of the Litigation Trust Assets, including the Permitted Litigation Claims (consistent with their duties of care and loyalty).  In all circumstances, notwithstanding anything in the Plan or this Agreement to the contrary, the Litigation Trustee shall always act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.  This Agreement does not eliminate the implied contractual covenant of good faith and fair dealing.

## **<u>ARTICLE IV</u>**

## **THE LITIGATION TRUST ADVISORY BOARD**

4.1     Appointment of the Litigation Trust Advisory Board.  On or prior to the Effective Date, a three-person Litigation Trust Advisory Board shall be appointed and include: (i) two designees of the Freedom HoldCo Debtors (which designees shall be selected by the Freedom Lender Group) and (ii) one designee of the OpCo Debtors (which designee shall be selected by the Creditors' Committee with the consent of the Required Consenting First Lien Lenders) (each designee, a "Member").  The initial Members of the Litigation Trust Advisory Board are Parties to this Agreement.  No Member of the Litigation Trust Advisory Board shall be the Litigation Trustee.

4.2     Authority and Responsibilities.

4.2.1    The Litigation Trust Advisory Board shall have the authority and responsibility to (i) monitor and oversee the administration of the Litigation Trust, (ii) monitor and oversee the activities and performance of the Litigation Trustee, (iii) designate another Person to become the Litigation Trustee in the event of the resignation or removal for Cause (as defined in Section 9.3 herein), liquidation, dissolution, death, or incapacity of the Litigation Trustee in accordance with Section 9.5 hereof, and (iv) perform such other tasks as expressly set forth in the Plan, the Confirmation Order, and this Agreement.

4.2.2    The Litigation Trust Advisory Board shall, as and when requested by the Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Litigation Trustee as to the administration and management of the Litigation Trust in accordance with the Plan, the Confirmation Order, and this Agreement.

4.3     Regular Meetings of the Litigation Trust Advisory Board.  The first meeting of the Litigation Trust Advisory Board shall occur no later than thirty (30) calendar days after the

Effective Date.  Meetings of the Litigation Trust Advisory Board are to be held at least quarterly.

4.4    <u>Special Meetings of the Litigation Trust Advisory Board</u>.  Special meetings of the Litigation Trust Advisory Board may be held whenever and wherever called for by any Member; *provided* that notice of any such special meeting shall be duly given in writing no less than 48 hours prior to such special meeting (such notice being subject to waiver by the Members).

4.5    <u>Litigation Trust Advisory Board's Action Without a Meeting</u>.  Any action required or permitted to be taken by the Litigation Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Trust Advisory Board as evidenced by a written consent describing the action taken, signed by all Members.

4.6    <u>Regular Meetings of the Litigation Trustee and the Litigation Trust Advisory Board</u>.  Meetings of the Litigation Trustee and the Litigation Trust Advisory Board are to be held with such frequency and at such place as the Litigation Trustee and the Litigation Trust Advisory Board may determine in their sole discretion, but in no event shall such meetings be held less frequently than quarterly.

4.7    <u>Special Meetings of the Litigation Trustee and the Litigation Trust Advisory Board</u>.  Special meetings of the Litigation Trustee and the Litigation Trust Advisory Board may be held whenever and wherever called for by the Litigation Trustee or any Member; *provided* that notice of any such special meeting shall be duly given in writing no less than 48 hours prior to such special meeting (such notice being subject to waiver by the Litigation Trustee and the Members).

4.8    <u>Manner of Acting</u>.

4.8.1    A majority of the total number of Members of the Litigation Trust Advisory Board then in office shall constitute a quorum for the transaction of business at any meeting of the Litigation Trust Advisory Board; *provided, however,* that a quorum any meeting of the Litigation

Trust Advisory Board will require the attendance of the Member designated by the OpCo Debtors pursuant to their designation right (subject to the applicable consent rights).  The affirmative vote of a majority of the votes of all Members present and entitled to vote at a meeting of the Litigation Trust Advisory Board at which a quorum is present shall be the act of the Litigation Trust Advisory Board, except as otherwise required by Law or as provided in this Agreement.  In the absence of a quorum at any meeting of the Litigation Trust Advisory Board, a majority of the votes of the Members present and entitled to vote may adjourn the meeting from time to time without further notice, other than announcement at the meeting, until a quorum shall be present.  Each Member shall have one (1) vote on all matters submitted to the Litigation Trust Advisory Board for the vote, consent or approval of the Litigation Trust Advisory Board (other than matters for which such Member is not entitled to vote, as expressly set forth in this Agreement).

4.8.2    Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference or similar communications equipment by means of which all Persons participating in the meeting may hear each other.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by e-mail or individual communications by the Litigation Trustee and each Member.

4.8.3    Any Member who is present and entitled to vote at a meeting of the Litigation Trust Advisory Board (including any meeting of the Litigation Trustee and the Litigation Trust Advisory Board) when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Advisory Board, unless: (i) such Member of the Litigation Trust Advisory Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention

from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Litigation Trust Advisory Board before its adjournment.  The right of dissent or abstention is not available to any Member of the Litigation Trust Advisory Board who votes in favor of the action taken.

4.8.4    Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member of the Litigation Trust Advisory Board shall report to the Litigation Trust Advisory Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Litigation Trust Units).  A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Litigation Trust (i) shall be deemed to be a "Conflicted Member" who shall not be entitled to vote or take part in any action with respect to such matter or issue, (ii) the vote or action with respect to such matter or issue shall be undertaken only by Members of the Litigation Trust Advisory Board who are not Conflicted Members; and (iii) notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members of the Litigation Trust Advisory Board who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Litigation Trust Advisory Board; *provided* that a Member shall not be deemed to be a Conflicted Member with respect to a particular matter or issue if such Member merely has an economic interest in the outcome of such matter or issue solely as a holder of Litigation Trust Units.

4.8.5    The Members of the Litigation Trust Advisory Board shall have the

authority to designate any Person to act on their behalf, including, without limitation, to attend, participate in and vote at meetings of the Litigation Trust Advisory Board.

4.8.6    Compensation.  Unless determined by the Litigation Trust Advisory Board, no Member shall be entitled to compensation in connection with his/her service to the Litigation Trust Advisory Board.

4.9    Reimbursement of Expenses.  The Litigation Trust shall reimburse all reasonable and documented out-of-pocket expenses incurred by the Members of the Litigation Trust Advisory Board in connection with the performance of each of their duties hereunder and shall reimburse all such Members for any and all losses, liabilities, expenses, or damages that such Members may, in good faith and without willful misconduct, gross negligence, or fraud, sustain in the exercise and performance of any of the powers and duties of the Litigation Trust Advisory Board under this Agreement.

4.9.1    The Litigation Trust Advisory Board shall have no obligation or responsibility to retain, engage or consult any attorneys, professionals or other advisors, and in the event the Litigation Trust Advisory Board elects to retain, engage or consult any such persons, the Litigation Trust shall have no obligation to pay any of the fees, costs or expenses of such persons, except that the Litigation Trust shall pay an amount jointly agreed by the Litigation Trustee and the unanimous vote of the Litigation Trust Advisory Board for the fees, costs or expenses of any attorneys engaged by unanimous vote of the Litigation Trust Advisory Board at reasonable rates to advise the Litigation Trust Advisory Board on its rights and responsibilities under this Agreement; *provided, however*, that none of Paul Hastings LLP, White & Case LLP or Pachulski Stang Ziehl & Jones LLP shall serve as counsel to the Litigation Trust Advisory Board.

4.9.2    The Litigation Trust Advisory Board shall have the right to cause the

Litigation Trust to purchase insurance coverage with respect to the liabilities and obligations of its Members under this Agreement, except to the extent that such liabilities and obligations are covered by other insurance applicable to the service of such Members of the Litigation Trust Advisory Board.

4.10    Tenure of the Members of the Litigation Trust Advisory Board.  The authority of the Members of the Litigation Trust Advisory Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Section 10.3.  The Members will serve until such Member's successor is duly appointed or until such Member's earlier resignation, removal, death (in the case of a Member that is a natural Person), or dissolution (in the case of a Member that is not a natural Person).

4.11    Resignation of the Members of the Litigation Trust Advisory Board.  A Member may resign by giving not less than thirty (30) days' prior written notice of resignation to the Litigation Trustee and the other Members.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice and (ii) the appointment of a successor.

4.12    Removal of the Members of the Litigation Trust Advisory Board.  A Member may be removed from the Litigation Trust Advisory Board for Cause by motion in the Bankruptcy Court made either by (a) the Litigation Trustee;(b) any Litigation Trust Beneficiary, or (c) *sua sponte* by the Bankruptcy Court.

4.13    Appointment of a Successor Member of the Litigation Trust Advisory Board.

4.13.1  In the event of a vacancy on the Litigation Trust Advisory Board (whether by resignation, removal, death or dissolution), the Litigation Trust Beneficiary that originally appointed the vacating Member shall be entitled to appoint a Person or Entity as a successor to the vacating Member; *provided*, that the Ad Hoc Group will be substituted for the Creditors'

Committee for this purpose after the Creditors' Committee is disbanded pursuant to the Plan.

4.13.2  Immediately upon the appointment of any successor Member, all rights, powers, duties, authority and privileges of the predecessor Member hereunder will be vested in and undertaken by the successor Member without any further act, and such successor Member will not be liable personally for any act or omission of the predecessor Member.

4.13.3  Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Litigation Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound hereto, and thereupon the successor Member without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the predecessor Member.

4.14   <u>Confidentiality</u>.  Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person or Entity to which any of the Litigation Trust Assets relates or of which such Member has become aware in their capacity as Member of the Litigation Trust Advisory Board, until (i) such information is made public other than by disclosure by such Member in violation of this Agreement; (ii) the Litigation Trust is required by Law to disclose such information (in which case the Litigation Trust shall provide the relevant Person or Entity reasonable advance notice and an opportunity to protect his, her, or its rights); or (iii) the Litigation Trust obtains a waiver of such confidentiality from the applicable Person or Entity; *provided, however,* notwithstanding the foregoing, upon reasonable request, the Ad Hoc Group (and it counsel) and the Freedom Lender Group (and its counsel) shall be entitled to receive any reasonable information that it may request relating to the Litigation Trust

and the Litigation Trust Assets, and the Member designated by the OpCo Debtors and the Members designated by the Freedom HoldCo Debtors, respectively, may disclose any information relating to the Litigation Trust and the Litigation Trust Assets on a confidential basis to the Ad Hoc Group (and/or its counsel) and the Freedom Lender Group (and/or its counsel), respectively, and shall have the right to confer on a confidential basis with the Ad Hoc Group (and/or its counsel) and the Freedom Lender Group (and/or its counsel), respectively, regarding the same.

## ARTICLE V

## DISTRIBUTIONS

5.1    <u>Distribution and Reserve of Litigation Trust Assets</u>.  Following the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trustee shall, in consultation with the Litigation Trust Advisory Board, make continuing efforts on behalf of the Litigation Trust to collect, liquidate, and distribute all Litigation Trust Assets, subject to the reserves deemed necessary by the Litigation Trustee pursuant to this Agreement, in accordance with the Plan.

5.1.1    <u>Distributions</u>.  The Litigation Trustee shall make distributions to the extent of the Litigation Trust Net Assets, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, to Holders of Allowed Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, Allowed Prepetition HoldCo Loan Claims, Allowed OpCo General Unsecured Claims, and Allowed Freedom HoldCo General Unsecured Claims, on a *pro rata* basis and subject to the Litigation Trust Units Allocations.  The Litigation Trustee, in consultation with the Litigation Trust Advisory Board, shall cause the Litigation Trust to make distributions to Litigation Trust Beneficiaries at least annually but as often as reasonably possible, so long as the Litigation Trustee determines, in good faith, that the retention of certain of the Litigation Trust Assets, including the Litigation Trust Escrow Amount, is no longer necessary to

(i) meet contingent liabilities, (ii) maintain the Litigation Trust Disputed Claims Reserve, (iii) maintain the value of the Litigation Trust Assets pending their liquidation during the term of the Litigation Trust, or (iv) pay or be reserved for reasonably incurred or anticipated expenses or claims of the Litigation Trust and the Litigation Trustee, including, but not limited to, the Litigation Trust Expenses.  The retention of such amount may preclude distributions to Litigation Trust Beneficiaries in accordance with the terms of the Plan and this Agreement.  The Litigation Trust may engage disbursing agents and other Persons as reasonably necessary to assist in making such distributions.

      5.1.2  <u>No Payment Over the Full Amount</u>.  In no event shall the Holder of an Allowed Claim receive distributions on account of its Allowed Claim for more than the full payment on account of such Claim.

      5.1.3  <u>Reserves; Pooling of Reserved Funds</u>.  Before any distribution can be made, the Litigation Trustee shall, in its reasonable discretion, but subject to any applicable consultation and/or consent rights expressly set forth in this Agreement, establish, supplement, and maintain a reserve in an amount sufficient to meet any and all liabilities and Litigation Trust Expenses, including attorneys' fees and expenses and the fees and expenses of other professionals.  In accordance with the Plan and Section 3.4.14 of this Agreement, the Litigation Trust may also maintain as necessary one or more reserves (including the Litigation Trust Disputed Claims Reserve) with respect to the OpCo General Unsecured Claims and Freedom HoldCo General Unsecured claims required to be administered by the Litigation Trust.  For the avoidance of doubt, subject to the Plan and Confirmation Order, the Litigation Trustee may withhold any distribution pending the Litigation Trust's determination of whether to object to any OpCo General Unsecured Claim or Freedom HoldCo General Unsecured Claim.  Any such withheld distribution shall

become part of a reserve (the "Litigation Trust Disputed Claims Reserve") and shall be distributed to the appropriate Litigation Trust Beneficiary no later than the first Distribution Record Date after a decision is made not to object to the pertinent General Unsecured Claim or such General Unsecured Claim becomes Allowed.  The Litigation Trustee need not maintain any of the Litigation Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Litigation Trust; *provided*, *however*, that the Litigation Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

5.1.4    Distributions Net of Reserves and Costs.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the distributions.  The Litigation Trustee may, subject to any applicable consultation and/or approval rights expressly set forth in this Agreement, sell or otherwise dispose of Litigation Trust Assets in order to pay such costs.  The Litigation Trust Escrow Amount shall be primarily reserved for the costs and expenses (including, any advisor fees and expenses) of the Litigation Trust; *provided,* that, if the Litigation Trustee, in consultation with the Litigation Trust Advisory Board, determines in good faith that the Litigation Trust Escrow Amount is no longer necessary to cover such costs and expenses (including, any advisor fees and expenses) of the Litigation Trust, then the Litigation Trustee shall be entitled to distribute the Cash to Litigation Trust Beneficiaries in accordance with the terms of this Agreement and consistent with its fiduciary duties.

5.1.5    Right to Rely on Professionals.  Without limitation of the generality of Section 7.6 of this Agreement, in determining the amount of any distribution or reserves, the Litigation Trustee may rely on, and shall be fully protected in relying on the advice and opinion of, the Litigation Trust's attorneys, financial advisors, accountants, or other professionals.

5.2    <u>Withholding from Distributions</u>.  The Litigation Trustee, in its discretion, may cause the Litigation Trust to deduct and withhold from amounts distributable from the Litigation Trust to any Litigation Trust Beneficiaries any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any Law, regulation, rule, ruling, directive, or other governmental requirement on such Litigation Trust Beneficiary or the Litigation Trust, including with respect to the amount to be distributed to such Litigation Trust Beneficiary, any amounts received by, collections of, or earnings of the Litigation Trust and any proceeds from the Litigation Trust Assets.  The Litigation Trustee shall determine such maximum amount to be withheld by the Litigation Trust in its sole, reasonable discretion and shall cause the Litigation Trust to distribute to such Litigation Trust Beneficiary any excess amount withheld.  The Litigation Trustee may, if necessary or appropriate to comply with applicable withholding requirements, withhold the entire distribution due to any Litigation Trust Beneficiary until such Litigation Trust Beneficiary provides the necessary information to comply with any withholding requirements of any governmental unit.  All such amounts deducted or withheld and timely paid to the appropriate taxing authority shall be treated as amounts distributed to such Litigation Trust Beneficiaries for all purposes of the Plan and this Agreement, to the extent permitted by applicable Law.

5.3    <u>Internal Revenue Service Forms</u>.  The Litigation Trustee may require the Holder of a Claim entitling the Holder to receive a Litigation Trust Unit to, and each such Holder shall, properly complete and execute the appropriate Internal Revenue Service Form W-8 (including any supporting documents) or Internal Revenue Service Form W-9, or such other documentation, as a prerequisite to receiving any distribution under the Plan or this Agreement.  If a Holder of such Claim does not provide to the Litigation Trustee within ninety (90) days of first written request

with all documentation that in the Litigation Trustee's reasonable business judgment is necessary to determine the tax withholding and reporting requirements for such Claim, then any current or future distribution on such Claim shall be deemed forfeited, and the underlying Claim and the funds shall in respect of such present and future distribution(s) shall revert to the Litigation Trust for all purposes, including but not limited to, redistribution to other Litigation Trust Beneficiaries, in accordance with the terms of the Confirmation Order, the Plan, and Section 5.4 of this Agreement; *provided*, *however*, that no additional ninety (90) day period under Section 5.4 of this Agreement shall be required to pass before such distributions become unrestricted funds of the Litigation Trust.

   5.4 <u>Unclaimed and Undeliverable Distributions</u>.  Unclaimed property (including, but not limited to, uncashed checks), together with any distributions to Litigation Trust Beneficiaries returned as undeliverable, shall be held by the Litigation Trustee in an unclaimed property reserve (the "<u>Unclaimed Property Reserve</u>") for a period of ninety (90) days from the date of first issuance, and may be released by the Litigation Trustee prior to the expiration of such time period if presentation of proper proof by such Litigation Trust Beneficiary of its entitlement thereto is presented to the Litigation Trustee.  After the expiration of the applicable time period set forth in this Section 5.4, all unclaimed property or interest in property otherwise payable to a Holder of a Litigation Trust Unit or its successors shall revert to the Litigation Trust for all purposes including, but not limited to, for redistribution in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  Upon such revesting, the Holder's Allowed Claim entitling such Holder to Litigation Trust Units shall be cancelled, released, discharged and forever barred and the Allowed Claim of any other Holder to such property or interest in property shall be discharged and forever barred notwithstanding any applicable federal, state or provincial escheat, abandoned,

or unclaimed property Laws, or any provisions in any document governing the distribution that is an unclaimed distribution to the contrary.

5.5     No Responsibility to Attempt to Locate Litigation Trust Beneficiaries.    If a distribution is returned to the Litigation Trust as undeliverable, or otherwise remains unclaimed, no further distribution shall be made to a Holder of an applicable Allowed Claim unless and until such Holder notifies the Litigation Trustee of such Holder's then-current address and taxpayer identification number.  The Litigation Trustee may, in its sole discretion, attempt to determine a Holder of an applicable Allowed Claim's current address or otherwise locate such Holder, but nothing in this Agreement or the Plan shall require the Litigation Trustee to do so.

5.5.1     Inapplicability of Escheat, Abandoned or Unclaimed Property Laws. Unclaimed property held by the Litigation Trust shall not be subject to the escheat, abandoned or unclaimed property Laws of the United States, or any state, provincial, or local governmental unit.

5.6     Request for Reissuance.  Distribution checks shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Distribution checks not cashed within such 90-day period shall be treated as unclaimed property that has been held in the Unclaimed Property Reserve as set forth above in Section 5.4.  Requests for reissuance of any check shall be made in writing directly to the Litigation Trustee by the Holder of the applicable Allowed Claim that was originally issued such check.  All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Litigation Trust Assets under Section 5.4 of this Agreement.  The Holder of an Allowed Claim shall bear all the risk that, and shall indemnify and hold the Litigation Trust, the Litigation Trustee, and the Litigation Trust Advisory Board harmless against any loss that may arise if, the Litigation Trustee does not reissue a check promptly after receiving a request for its reissuance.

5.7     <u>Conflicting Claims of Litigation Trust Units</u>.  If any conflicting claims or demands are made or asserted with respect to the Litigation Trust Unit of a Litigation Trust Beneficiary, or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Litigation Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

5.7.1     The Litigation Trustee may, in consultation with the Litigation Trust Advisory Board, elect to cause the Litigation Trust to make no payment or distribution with respect to the Litigation Trust Unit subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands in accordance with Article XIII of the Plan. Except for any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, neither the Litigation Trust, nor the Litigation Trustee, nor the Litigation Trust Advisory Board shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Litigation Trust, Litigation Trustee, or the Litigation Trust Advisory Board be liable for interest on any funds which may be so withheld.

5.7.2     The Litigation Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Litigation Trustee, which agreement shall include a complete release of the Litigation Trust and Litigation Trustee.  Until the Litigation Trustee receives written notice that one of the conditions of the

preceding sentence is met, the Litigation Trustee may deem and treat as the absolute owner under this Agreement of the Litigation Trust Units in the Litigation Trust the Litigation Trust Beneficiary identified as the owner of that interest in the books and records maintained by the Litigation Trustee.  The Litigation Trustee may deem and treat such Litigation Trust Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

5.8    <u>Limitation on Liability</u>.    Except for any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, in acting or refraining from acting under and in accordance with this the Agreement, the Litigation Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VII of this Agreement.

5.9    <u>Priority of Expenses of Litigation Trust</u>.  The Litigation Trust shall pay or reserve for all necessary Litigation Trust Expenses before making any distributions, including but not limited to, any distribution to Litigation Trust Beneficiaries.

5.10    <u>Minimum Distributions</u>.  If any distribution under the Plan to the Holder of an Allowed Claim would be less than $250.00, the Litigation Trust may hold such distribution until the time of a subsequent or final distribution.  If the final distribution under the Plan to the Holder of an Allowed Claim would be less than $250.00, the Litigation Trust may cancel such distribution. Any cancelled distributions pursuant to this Section 5.10 shall revert to the Litigation Trust for all purposes, including distributions to other Holders of Allowed Claims.

## ARTICLE VI

## LITIGATION TRUST BENEFICIARIES

6.1    Interest Beneficial Only.  The ownership of a Litigation Trust Unit shall not entitle any Litigation Trust Beneficiary or the Debtors to any title in or to the Litigation Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

6.2    Ownership of Litigation Trust Beneficial Interests Hereunder.  Each Litigation Trust Beneficiary shall own a Litigation Trust Unit herein which shall, subject to Article V of this Agreement and the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan and hereunder.

6.3    Evidence of Litigation Trust Beneficial Interest.  Ownership of a Litigation Trust Unit shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Litigation Trust by the Litigation Trustee.

6.4    No Right to Accounting.  Except as otherwise provided in this Agreement, neither the Litigation Trust Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Litigation Trustee, and the Litigation Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Litigation Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for making any advance, payment, or distribution out of proceeds of Litigation Trust Assets.

6.5    Requirement of Undertaking.  The Litigation Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Litigation Trustee for any action taken or omitted by it as Litigation Trustee,

the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this Section 6.5 shall not apply to any suit by the Litigation Trust or Litigation Trustee.

6.6    <u>Limitation on Transferability</u>.  It is understood and agreed that the Litigation Trust Units shall be non-transferable and non-assignable during the term of this Agreement except if transferred by will, intestate succession, if required to be transferred as part of a liquidation or winding up of a holder, or otherwise by operation of Law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Litigation Trustee, and the Litigation Trustee may continue to cause the Litigation Trust to pay all amounts to or for the benefit of the assigning Litigation Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Litigation Trustee may rely upon such proof without the requirement of any further investigation.

6.7    <u>Exemption from Registration</u>.  The rights of the Litigation Trust Beneficiaries arising under this Agreement may be deemed "securities" under applicable Law.  However, such rights have not been defined as "securities" under the Plan because (i) the Parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Litigation Trust Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No Party to or beneficiary of this Agreement shall make a contrary or different contention.

6.8    <u>Delivery of Distributions</u>.  Subject to the terms of this Agreement, the Litigation Trustee shall cause the Litigation Trust to make distributions to Litigation Trust Beneficiaries in the manner provided in the Plan and in this Agreement.

6.9    <u>Limited Liability</u>.  Except for any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, any breach of the terms of this Agreement, or any claim or cause of action for fraud, willful misconduct, or gross negligence, no provision of this Agreement, the Plan, or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any Litigation Trust Beneficiary, shall give rise to any liability to such Litigation Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, creditors, successors, representatives, employees, or Holders of Interests of any Debtor, or by any other Person.  Litigation Trust Beneficiaries are deemed to receive the Litigation Trust Assets in accordance with the provisions of this Agreement, the Plan, and the Confirmation Order in exchange for their Allowed Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, Allowed Prepetition HoldCo Loan Claims, Allowed OpCo General Unsecured Claims, and Allowed Freedom HoldCo General Unsecured Claims, as applicable, as set forth in the Plan without further obligation or liability of any kind, but subject to the provisions of this Agreement.

## **ARTICLE VII**

## **THIRD-PARTY RIGHTS AND LIMITATION OF LIABILITY**

7.1    <u>Parties Dealing with the Litigation Trustee</u>.  In the absence of actual knowledge to the contrary, any Person dealing with the Litigation Trust or the Litigation Trustee shall be entitled to rely on the authority of the Litigation Trustee or any of the Litigation Trustee's agents to act in connection with the Litigation Trust Assets.  There is no obligation of any Person dealing with the Litigation Trustee to inquire into the validity or expediency or propriety of any transaction by the Litigation Trustee or any agent of the Litigation Trustee.

7.2    <u>Limitation of Litigation Trustee Liability</u>.  In exercising the rights granted herein, the Litigation Trustee shall exercise its best judgment in accordance with its fiduciary duties, to the end that the affairs of the Litigation Trust shall be properly managed and the interests of all of the Litigation Trust Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, other than any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, neither the Litigation Trustee nor any of its respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, or disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of Law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Litigation Trust.  Other than any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, in no event shall the Litigation Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including, but not limited to, lost profits) whatsoever, even if the Litigation Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.  Without limiting the foregoing, the Litigation Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the Litigation Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

7.3    <u>No Liability for Acts of Other Persons</u>.  None of the Persons identified in the immediately preceding Section 7.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section.

7.4    <u>No Liability for Acts of Predecessors</u>.  No successor Litigation Trustee shall be in any way responsible for the acts or omissions of any Litigation Trustee in office prior to the date on which such successor becomes the Litigation Trustee, unless a successor Litigation Trustee expressly assumes such responsibility.

7.5    <u>No Liability for Good Faith Error of Judgment</u>.  Except for any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, the Litigation Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally and ultimately determined by a court of competent jurisdiction that the Litigation Trustee was grossly negligent.

7.6    <u>Reliance by Litigation Trustee on Documents and Advice of Counsel or Other Persons</u>.  Except as otherwise provided herein, the Litigation Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.  The Litigation Trustee also may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in good faith reliance upon the advice of such counsel, agents, or advisors to the extent permitted by Law, except for any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein.

7.7    <u>No Liability For Acts Approved by Bankruptcy Court</u>.  The Litigation Trustee shall have the right at any time to seek an order from the Bankruptcy Court concerning the

administration or disposition of the Litigation Trust, Permitted Litigation Claims, OpCo General Unsecured Claims, Freedom HoldCo General Unsecured Claims, and Litigation Trust Assets required to be administered by the Litigation Trust.  Following the entry of any such order of the Bankruptcy Court, the Litigation Trustee shall not be liable for any act or omission expressly taken in accordance with, and not inconsistent with, any such order, and all such actions or omissions shall be deemed not to constitute fraud, gross negligence, or willful misconduct.

7.8    <u>No Personal Obligation for Litigation Trust Liabilities</u>.  Except for any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, Persons dealing with the Litigation Trustee shall have recourse only to the Litigation Trust Assets to satisfy any liability incurred by the Litigation Trustee to any such Person in carrying out the terms of this Agreement, and the Litigation Trustee shall have no personal, individual obligation to satisfy any such liability.

7.9    <u>Indemnification</u>.  The Litigation Trustee, the Litigation Trust Advisory Board, and each of their or the Litigation Trust's respective accountants, agents, assigns, attorneys, consultants, directors, employees, executors, financial advisors, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, the employees of the Litigation Trust, and their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives, affiliate, employer and successors and principals  (each, an "<u>Indemnified Party</u>") shall be indemnified for, and defended and held harmless against, by the Litigation Trust solely from the Litigation Trust Assets, for any losses, liability, claims, damages, judgment, fine, penalty, claim, demand, settlement, cost, or expenses occurring on or after the Effective Date (including reasonable attorneys' fees and expenses which the Indemnified Party may incur in connection therewith) for any act or omission in their capacity

as, or on behalf of, the Litigation Trust or Litigation Trustee in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Litigation Trust or the Litigation Trust Beneficiaries, except if such loss, liability, or damage is ultimately and finally determined by a court of competent jurisdiction to have resulted from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting indemnification.  An act or omission taken by the Litigation Trustee pursuant to Section 7.7 of this Agreement will be deemed not to constitute gross negligence, willful misconduct, or fraud.  The amounts necessary for the indemnification provided in this Section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this Section) shall be paid by the Litigation Trustee out of the Litigation Trust Assets; *provided*, *however*, that that the Litigation Trust shall not be liable to indemnify, (x) the Litigation Trustee for any breach of its fiduciary duty set forth herein, or (y) any Indemnified Party for any act or omission arising out of such Indemnified Party's respective gross negligence, fraud, or willful misconduct as is ultimately and finally determined by a court of competent jurisdiction.  The Indemnified Parties shall be entitled to obtain advances from the Litigation Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such, except for any actions or omissions arising from their own respective willful misconduct, fraud, or gross negligence; *provided*, *however*, that the Indemnified Parties receiving such advances shall repay the amounts so advanced to the Litigation Trust immediately upon the entry of a final, non-appealable judgment or order finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section 7.9 of this Agreement.  Except for any liability

arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, the Litigation Trustee shall not be personally liable for the payment of any Litigation Trust Expense or claim or other liability of the Litigation Trust, and no Person shall look to the Litigation Trustee personally for the payment of any such expense or liability.  Notwithstanding anything herein to the contrary, nothing contained in this Section 7.9 shall require the Debtors, the Reorganized Debtors, or any Litigation Trust Beneficiary to indemnify any Indemnified Persons pursuant to this Agreement.

7.9.1    Expense of Litigation Trust; Limitation on Source of Payment of Indemnification.  All indemnification liabilities of the Litigation Trust under this Section 7.9 shall be expenses of the Litigation Trust and constitute Litigation Trust Expenses.  The amounts necessary for such indemnification and reimbursement shall be paid by the Litigation Trust out of the available Litigation Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Litigation Trust.  Except for any liability arising from the Litigation Trustee's breach of its fiduciary duties expressly preserved herein, the Litigation Trustee shall not be personally liable for the payment of any Litigation Trust Expenses or claim or other liability of the Litigation Trust, and no Person shall look to the Litigation Trustee or other Indemnified Parties personally for the payment of any such Litigation Trust Expenses or liability, unless it is ultimately and finally determined by a court of competent jurisdiction that such payment was the result of fraud, gross negligence, or willful misconduct.

7.10    Limitation of Liability of the Reorganized Debtors.  Except as expressly provided in this Agreement, the Reorganized Debtors and each of their respective boards of directors, management, employees, and professionals shall have no liability for any action taken or omitted to be taken by the Litigation Trustee in performing its duties under this Agreement.

7.11    <u>Confirmation of Survival of Provisions</u>.    Without limitation in any way of any provision of this Agreement, the provisions of this Article VII shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Litigation Trustee or, as it relates to Section 7.9, an Indemnified Party, or the termination of the Litigation Trust or this Agreement, and shall inure to the benefit of the Litigation Trustee's and each Indemnified Party's heirs and assigns.

## <u>ARTICLE VIII</u>

## **TAX MATTERS**

8.1    <u>Tax Treatment of Litigation Trust</u>.    Pursuant to and in accordance with the Plan, for all United States federal income tax purposes, the Debtors, the Litigation Trust Beneficiaries, the Litigation Trustee, and the Litigation Trust shall treat (i) the Litigation Trust as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684 and, thus, as a "grantor trust" within the meaning of Internal Revenue Code sections 671 through 677 consistent with the terms of the Plan (unless the Litigation Trust has undergone the Conversion (as defined herein)) and (ii) the transfer of the Litigation Trust Assets to the Litigation Trust as (a) a transfer of the Litigation Trust Assets by the Freedom HoldCo Debtors and the OpCo Debtors to the Litigation Trust Beneficiaries in satisfaction of their Allowed Prepetition First Lien Loan Claims, Allowed Prepetition Second Lien Loan Claims, Allowed Prepetition HoldCo Loan Claims, Allowed OpCo General Unsecured Claims, and Allowed Freedom HoldCo General Unsecured Claims, as applicable (other than any Litigation Trust Disputed Claims Reserve treated as a DOF (if elected) or other separate Entity), followed by (b) a transfer of such Litigation Trust Assets by such Litigation Trust Beneficiaries to the Litigation Trust in exchange for their *pro rata*

share of Litigation Trust Units (subject to the Litigation Trust Units Allocations). The Litigation Trust Beneficiaries shall be treated as the grantors and owners of the Litigation Trust for United States federal (and, to the extent permitted, state and local) income tax purposes.

8.2    <u>Annual Reporting and Filing Requirements</u>. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Litigation Trustee shall file tax returns (including applicable state, local and foreign tax returns, if any) for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) to the extent required by applicable Law and subject to the treatment of the Litigation Trust Disputed Claims Reserve as a DOF or other separate Entity.

8.3    <u>Tax Treatment of Reserves for Disputed Claims</u>. The Litigation Trustee may, in the Litigation Trustee's sole discretion, determine the best way to report for United States tax purposes with respect to the Litigation Trust Disputed Claims Reserve, if applicable, including (i) filing a tax election to treat the Litigation Trust Disputed Claims Reserve as a DOF or other separate Entity within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Litigation Trust (and, to the extent permitted by applicable Law, report consistently with the foregoing for United States federal, state, and local income tax purposes) or (ii) electing to report as a separate trust or sub-trust or other entity. If an election is made to report the Litigation Trust Disputed Claims Reserve as a DOF or other separate entity, the Litigation Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF or other separate entity, including, but not limited to, the filing of a separate federal tax return for the DOF or other separate entity and the payment of federal and/or state income tax due.

8.3.1    If an election is made to report the Litigation Trust Disputed Claims Reserve as a DOF or other separate Entity, all parties (including the Debtors, the Reorganized Debtors, the Litigation Trust, the Litigation Trustee, and the Litigation Trust Beneficiaries) shall be bound by such election and report for United States federal, state, and local income tax purposes consistently with the foregoing.  The Litigation Trustee shall be responsible for payment, out of the Litigation Trust Assets, of any taxes (including with respect to earned interest, if any) imposed on the Litigation Trust or the Litigation Trust Assets, including the Litigation Trust Disputed Claims Reserve.  In the event, and to the extent, any Cash retained on account of a Disputed General Unsecured Claim in the Litigation Trust Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, such Disputed General Unsecured Claims, the Litigation Trustee may, in its discretion, (i) sell any non-Cash assets relating to such Claim (including any assets distributable as a result of disallowance of such Claim) to pay such taxes or (ii) reimburse the Litigation Trust for the payment of such taxes from any subsequent Cash amounts allocable to, or retained on account of such Disputed General Unsecured Claim (including any Cash distributable by the Litigation Trustee as a result of disallowance of such Disputed General Unsecured Claim).

8.4    <u>Valuation of Litigation Trust Assets</u>.  As soon as practicable following the Effective Date, but in no event later than the due date for timely filing of the Litigation Trust's first United States federal income tax return (taking into account applicable tax filing extensions), the Litigation Trustee shall determine the fair market value of the Litigation Trust Assets as of the Effective Date, based on the Litigation Trustee's good faith determination and subject in all respects to Section 8.4, and the Litigation Trustee shall apprise, in writing, the Litigation Trust Beneficiaries and the Reorganized Debtors of such valuation.  The valuation shall be used

consistently by all parties (including, without limitation, the Debtors and/or the Reorganized Debtors, as applicable, the Litigation Trust, the Litigation Trustee, and the Litigation Trust Beneficiaries) for all applicable United States federal, state, and local income tax purposes.

8.4.1    In the event the Reorganized Debtors disagree with the Litigation Trustee's good faith determination of the valuation of the Litigation Trust Assets, the Litigation Trustee and the Reorganized Debtors shall attempt to reconcile any such differences.  The valuation agreed to by the Reorganized Debtors and the Litigation Trustee shall be used consistently by all parties for all tax purposes unless otherwise required by a "determination" within the meaning of Section 1313(a) of the Internal Revenue Code (or any equivalent provision of state, local, or non-U.S. Law).

8.5    In the event that the Litigation Trustee determines that the Litigation Trust may be required to withhold from amounts distributable from the Litigation Trust pursuant to Section 5.2 above, it shall endeavor to promptly notify the relevant Litigation Trust Beneficiary.

8.6    Allocations of Litigation Trust taxable income among the Litigation Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value) to the holders of Litigation Trust Units, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust.  Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets.  The tax book value of the Litigation Trust Assets for purposes of this Section 8.6 shall equal their fair market value on the

Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

8.7     If, in the reasonable judgment of the Litigation Trustee, the Litigation Trust is expected to survive for a period of more than five (5) years from the Effective Date, the Parties agree that the Litigation Trustee, in the exercise of its reasonable discretion, shall either (i) seek to extend the term of the Litigation Trust for a reasonable period of time in a manner consistent with Section 10.3 hereof and Revenue Procedure 94-45 § 3.06, or (ii) convert the Litigation Trust from a liquidating trust described in Treasury Regulation § 301.7701-4(d) to an investment trust described in Treasury Regulation § 301.7701-4(c), taxable as a grantor trust for U.S. federal income tax purposes under Sections 671 through 679 of the IRC (the process described in this clause (ii), the "Conversion").  In the event of a Conversion, the Parties (x) agree that, unless otherwise required by applicable Law, the Litigation Trust shall file or cause to be filed any annual or other necessary returns, reports and other forms consistent with the characterization of the converted entity as an investment trust for U.S. federal income tax purposes, (y) shall cooperate to amend this Agreement to reflect such Conversion, and (z) shall take no position on any tax return inconsistent with such treatment.

## ARTICLE IX

### SELECTION, REMOVAL, REPLACEMENT,
### AND COMPENSATION OF LITIGATION TRUSTEE

9.1     Initial Litigation Trustee.  The Initial Litigation Trustee is appointed effective as of the Effective Date, and shall serve as the trustee of the Litigation Trust.  The initial trustee of the Litigation Trust shall be the Initial Litigation Trustee.

9.2     Term of Service.  The Litigation Trustee shall serve until the earliest of (i) the completion of the administration of the Litigation Trust Assets and the Litigation Trust, including the winding up of the Litigation Trust, in accordance with this Agreement and the Plan, (ii) termination and dissolution of the Litigation Trust in accordance with the terms of this Agreement and the Plan, or (iii) the Litigation Trustee's resignation, death, dissolution, incapacity, liquidation, or removal.   In the event that the Litigation Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Litigation Trustee shall be immediately compensated for all reasonable, documented fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced.  The provisions of Article VI of this Agreement shall survive the resignation or removal of any Litigation Trustee.

9.3     Removal of Litigation Trustee.  Any party in interest (including the Litigation Trust Advisory Board), with notice and a hearing before the Bankruptcy Court, may seek removal of the Litigation Trustee for Cause (as defined below).  As used herein, "Cause" shall mean the Litigation Trustee's (A) commission of an act of fraud, theft or embezzlement during the performance its duties hereunder; (B) conviction of a felony with all appeals having been exhausted or appeal periods lapsed; (C) gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of its duties hereunder; (D) commission of any negligence, even if not rising to the level of gross negligence, that risks materially adversely affecting the value or successful liquidation and distribution of the Litigation Trust Assets; or (E) violation of the provisions of this Agreement, the Plan, or the Confirmation Order.  Such removal shall become effective on the date action is taken.  The Bankruptcy Court shall have exclusive jurisdiction to hear and finally determine any dispute arising out of this Section 9.3 except as otherwise provided in the Plan or Confirmation Order.

9.4    <u>Resignation of Litigation Trustee</u>.  The Litigation Trustee may resign at any time on thirty (30) days' written notice to the Litigation Trust Advisory Board, counsel to the Debtors, counsel to the Ad Hoc Group, counsel to the Freedom Lender Group, the U.S. Trustee, and the Bankruptcy Court.  The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court.  In the event of a resignation, the resigning Litigation Trustee shall file a full and complete accounting of monies and assets received, disbursed, and held during the term of that Litigation Trustee.

9.5    <u>Appointment of Successor Litigation Trustee</u>.  Upon the resignation, death, dissolution, incapacity, liquidation, or removal of a Litigation Trustee, a successor trustee shall be selected by the Litigation Trust Advisory Board by majority vote of the Members or at a meeting of the Litigation Trust Advisory Board called for of replacing the Litigation Trustee, *provided* that the successor trustee shall be reasonably acceptable to holders of a majority of Prepetition First Lien Loan Claims.  Any successor Litigation Trustee so appointed (i) shall consent to and accept his, her, or its appointment as successor Litigation Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor Litigation Trustee, and (ii) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).  Any successor Litigation Trustee may be appointed to serve only on an interim basis.

9.6    <u>Powers and Duties of Successor Litigation Trustee</u>.  A successor Litigation Trustee shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and the Confirmation Order.

9.7     <u>Litigation Trust Continuance</u>.    The resignation, death, dissolution, incapacity, liquidation, or removal of the Litigation Trustee shall not terminate the Litigation Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Litigation Trustee.

9.8     <u>Compensation of Litigation Trustee and Costs of Administration</u>.    The Litigation Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge solely against and solely paid out of the Litigation Trust Assets as Litigation Trust Expenses.    All costs, expenses, and obligations incurred by the Litigation Trustee (or professionals who may be employed by the Litigation Trustee in administering the Litigation Trust, in carrying out its other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Litigation Trust solely from the Litigation Trust Assets.

9.9     <u>Appointment of Supplemental Litigation Trustee</u>.    If the Litigation Trustee has a conflict or any of the Litigation Trust Assets are situated in any state or other jurisdiction in which the Litigation Trustee is not qualified to act as trustee, the Litigation Trustee shall, upon written notice to counsel to the Debtors, counsel to the Ad Hoc Group (email being sufficient), and counsel to the Freedom Lender Group (email being sufficient), nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Litigation Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Litigation Trustee such security as may be designated by the Litigation Trustee in its reasonable discretion.    In the event the Litigation Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Litigation Trustee to handle any such matter, the Bankruptcy Court, with notice and a hearing, may do so.    The Litigation Trustee or the Bankruptcy Court, as applicable, may confer

upon such Supplemental Litigation Trustee any or all of the rights, powers, privileges, and duties of the Litigation Trustee hereunder, subject to the conditions and limitations of this Agreement, the Plan, and the Confirmation Order, except as modified or limited by the Laws of the applicable state or other jurisdiction (in which case, the Laws of the state or other jurisdiction in which such Supplemental Litigation Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental Litigation Trustee is appointed by the Litigation Trustee, the Litigation Trustee shall require such Supplemental Litigation Trustee to be answerable to the Litigation Trustee for all monies, assets, and other property that may be received in connection with the administration of all property. The Litigation Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Litigation Trustee, with or without cause, and appoint a successor Supplemental Litigation Trustee at any time by executing a written instrument declaring such Supplemental Litigation Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE X

### DURATION OF DEBTOR LITIGATION TRUST

10.1    <u>Duration</u>.  Once the Litigation Trust becomes effective upon the Effective Date of the Plan, the Litigation Trust and this Agreement shall remain and continue in full force and effect until the Litigation Trust is terminated in accordance with the terms hereof.

10.2    <u>Termination on Payment of Litigation Trust Expenses and Distribution of Litigation Trust Assets</u>.  Upon the payment of all Litigation Trust Expenses, and the distribution of all Litigation Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Litigation Trust shall automatically terminate and dissolve and the Litigation Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant Law.

10.3    <u>Termination after Five Years Unless Extended</u>.  If the Litigation Trust has not been previously terminated and dissolved pursuant to Section 10.2 hereof, on the fifth anniversary of the Effective Date, the Litigation Trustee shall distribute all of the Litigation Trust Assets to the Litigation Trust Beneficiaries in accordance with the Plan, and immediately thereafter the Litigation Trust shall terminate and the Litigation Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 10.5 of this Agreement, unless the Litigation Trust Advisory Board within the six-month period before such fifth anniversary (and, in the event of further extension, within the six-month period before the end of the preceding extension) determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Trust Assets.

10.4    <u>No Termination by Litigation Trust Beneficiaries</u>.  The Litigation Trust may not be terminated and dissolved at any time by the Litigation Trust Beneficiaries.

10.5    <u>Continuance of Litigation Trust for Winding Up; Discharge and Release of Litigation Trustee</u>.  After the termination of the Litigation Trust and solely for the purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the distribution of the Litigation Trust Assets, including all excess reserves, the Litigation Trustee and the Litigation Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  In connection with the foregoing, upon a motion by the Litigation Trustee, the Bankruptcy Court may enter an order relieving the

Litigation Trustee and its employees, professionals, and agents of any further duties, discharging and releasing the Litigation Trustee and its employees, professionals, and agents from all liability related to the Litigation Trust.

## ARTICLE XI

## MISCELLANEOUS

11.1    <u>Cumulative Rights and Remedies</u>.    The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.2    <u>Notices</u>.  All notices to be given to Litigation Trust Beneficiaries may be given by email, ordinary mail, or may be delivered personally, at the addresses for such Litigation Trust Beneficiaries appearing on the books kept by the Litigation Trust.    Any notice or other communication which may be or is required to be given, served, or sent to the Litigation Trust shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by email, hand delivery, or facsimile (if receipt is confirmed) addressed as follows:

> If to the Litigation Trust or the Litigation Trustee:
>
> Lawrence Hirsh
> c/o LRHirsh, LLC
>
> With a copy to:
> Raines Feldman Littrell LLP
> c/o Hamid Rafatjoo
> 4675 MacArthur Ct, Suite 1550
> Newport Beach, CA 92660
> hrafatjoo@raineslaw.com
> meckard@raineslaw.com
> dforsh@raineslaw.com

or to such other address as may from time to time be provided in written notice by the Litigation Trustee.

11.2.1 <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws.

11.2.2 <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

11.2.3 <u>Particular Words</u>.  Reference in this Agreement to any Article or Section is, unless otherwise specified, to that such Article or Section (inclusive of any subsections), as applicable, under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Article or Section of this Agreement.

11.2.4 <u>Execution</u>.  All funds in the Litigation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Litigation Trust Beneficiary, and no Litigation Trust Beneficiary or any other Person can execute upon, garnish or attach the Litigation Trust Assets or the Litigation Trustee in any manner or compel payment from the Litigation Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

11.2.5 <u>Amendment</u>.  This Agreement may be amended by written agreement of the Litigation Trustee (in consultation with the Litigation Trust Advisory Board), the Ad Hoc Group, and the Freedom Lender Group (which, in each case, may be provided by email from counsel), or by order of the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

11.2.6 <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.2.7  <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

11.2.8  <u>Severability</u>.  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

11.2.9  <u>Further Assurances</u>.  Without limitation of the generality of Section 2.6 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan and to consummate the transactions contemplated hereby.

11.2.10  <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

11.2.11  <u>Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction regarding the Debtors, the Reorganized Debtors, the Litigation Trust, the Litigation Trustee, and the Litigation Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Litigation Trust; *provided*, *however*, that this Section 11.2.11 shall not conflict with the provisions of the Plan, including, without limitation, Article XIII of the Plan.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or

related to this Agreement or the administration of the Litigation Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**FREEDOM VCM, INC.**

By: _____

Name:  David Orlofsky

Title:   Authorized Signatory

**FREEDOM VCM INTERCO, INC.**

By: _____

Name:  David Orlofsky

Title:   Authorized Signatory

[*Signature Page to Litigation Trust Agreement*]

**FRANCHISE GROUP, INC. AND ITS OPCO DEBTOR AFFILIATES SET FORTH ON <u>SCHEDULE 1</u>**

By: _____

Name:  David Orlofsky
Title:   Authorized Signatory

[*Signature Page to Litigation Trust Agreement*]

Lawrence Hirsh, not individually, but solely in its capacity as Litigation Trustee of the Franchise Group Litigation Trust

By: _____

Name:  Lawrence Hirsh

## Schedule 1

1. FRANCHISE GROUP, INC.
2. AMERICAN FREIGHT FFO, LLC
3. AMERICAN FREIGHT FRANCHISING, LLC
4. AMERICAN FREIGHT FRANCHISOR, LLC
5. AMERICAN FREIGHT GROUP, LLC
6. AMERICAN FREIGHT HOLDINGS, LLC
7. AMERICAN FREIGHT MANAGEMENT COMPANY, LLC
8. AMERICAN FREIGHT OUTLET STORES, LLC
9. AMERICAN FREIGHT, LLC
10. BETANCOURT SPORTS NUTRITION, LLC
11. BUDDY'S FRANCHISING AND LICENSING LLC
12. BUDDY'S NEWCO, LLC
13. EDUCATE, INC.
14. FRANCHISE GROUP ACQUISITION TM, LLC
15. FRANCHISE GROUP INTERMEDIATE B, LLC
16. FRANCHISE GROUP INTERMEDIATE BHF, LLC
17. FRANCHISE GROUP INTERMEDIATE HOLDCO, LLC
18. FRANCHISE GROUP INTERMEDIATE L, LLC
19. FRANCHISE GROUP INTERMEDIATE PSP, LLC
20. FRANCHISE GROUP INTERMEDIATE S, LLC
21. FRANCHISE GROUP INTERMEDIATE SL, LLC
22. FRANCHISE GROUP INTERMEDIATE V, LLC
23. FRANCHISE GROUP NEW HOLDCO, LLC
24. FRANCHISE GROUP NEWCO BHF, LLC
25. FRANCHISE GROUP NEWCO INTERMEDIATE AF, LLC
26. FRANCHISE GROUP NEWCO PSP, LLC
27. FRANCHISE GROUP NEWCO S, LLC
28. FRANCHISE GROUP NEWCO SL, LLC
29. FRANCHISE GROUP NEWCO V, LLC
30. HOME & APPLIANCE OUTLET, LLC
31. PET SUPPLIES "PLUS", LLC
32. PSP DISTRIBUTION, LLC
33. PSP FRANCHISING, LLC
34. PSP GROUP, LLC
35. PSP MIDCO, LLC
36. PSP SERVICE NEWCO, LLC
37. PSP STORES, LLC
38. PSP SUBCO, LLC
39. VALOR ACQUISITION, LLC
40. VITAMIN SHOPPE FLORIDA, LLC
41. VITAMIN SHOPPE FRANCHISING, LLC
42. VITAMIN SHOPPE GLOBAL, LLC
43. VITAMIN SHOPPE INDUSTRIES LLC
44. VITAMIN SHOPPE MARINER, LLC

45. VITAMIN SHOPPE PROCUREMENT SERVICES, LLC
46. WNW FRANCHISING, LLC
47. WNW STORES, LLC