**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FRANCHISE GROUP, INC.,[1]<br><br>    Reorganized Debtor.<br><br><br><br>FRANCHISE GROUP, INC.,<br><br>    Plaintiff,<br>v.<br><br>AF NEWCO I, LLC<br><br>    Defendant. | Chapter 11<br><br>Case No. 24-12480 (LSS)<br><br><br><br>Adv. Pro. No. 25-[●] (LSS) |

**ADVERSARY COMPLAINT**

Plaintiff Franchise Group, Inc. (the "Reorganized Debtor" and, collectively with its affiliated reorganized debtors before the effective date of the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates*,[2] "FRG" or, as applicable, the "Reorganized Debtors" or the "Debtors") bring this Complaint against Defendant AF Newco I, LLC ("AF Newco" or "Defendant").

---

[1] The last four digits of Franchise Group, Inc.'s federal tax identification number are 1876. The mailing address for Franchise Group, Inc. is 2371 Liberty Way, Virginia Beach, Virginia 23456. For purposes of this complaint (this "Complaint"), the term "Reorganized Debtors" or "Debtors" includes Franchise Group, Inc. and certain reorganized debtor affiliates, a complete list of which, including the last four digits of their federal tax identification numbers and addresses, may be obtained on the website of the Reorganized Debtors' claims and noticing agent, at https://cases.ra.kroll.com/FRG/. All of the motions, contested matters, and adversary proceedings that remained open as of the closing of any of the Reorganized Debtors' cases, or that are opened after the date thereof, are administered in the remaining chapter 11 case of Franchise Group, Inc., Case No. 24-12480 (LSS).

[2] Hereafter referred to as the "Plan".

## INTRODUCTION

1. Pursuant to that certain *Asset Purchase Agreement*, dated December 13, 2024 (the "APA"), the *Order (A) Authorizing Debtors to Sell by Private Sale Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief* [Main Case, Docket No. 712], and the *Supplemental Order (A) Authorizing Debtors to Sell by Private Sale Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, with Such Interests to Attach to the Proceeds, and (B) Granting Related Relief* [Main Case, Docket No. 864] (together, the "Sale Orders"), AF Newco acquired certain of the American Freight Debtors' assets (the "Transaction").

2. At the sale hearing held on January 21, 2025 (the "Sale Hearing"), Michael Piper—who co-led the acquisition of American Freight on behalf of AF Newco—testified that Brian Kahn was not a current owner or investor in AF Newco, and that Mr. Piper did not anticipate Brian Kahn becoming an owner or investor in AF Newco. Similarly, Mr. Piper also testified that neither he nor AF Newco had any present or anticipated business dealings with Brian Kahn.

3. These representations were critically important given the scrutiny and litigation surrounding Brian Kahn's conduct. Brian Kahn is the former Chief Executive Officer ("CEO") of the Reorganized Debtors and left his position after it was publicly revealed that he was an unindicted coconspirator in a securities fraud investigation. Additionally, during his time as CEO, he led a take-private transaction that has been challenged by certain creditors and remains subject to potential further litigation.

4. Despite Mr. Piper's testimony, it has since come to light that Mr. Kahn is now involved in AF Newco's operations. Indeed, based upon information and belief, Brian Kahn is purportedly the CEO of AF Newco, and his management decisions have included hiring his sister.

Thus, far from having no involvement in AF Newco, Brian Kahn appears to have **control** over the company.

5. Coinciding with the above events, AF Newco has engaged in conduct that has complicated and threatened the Reorganized Debtors' ability to operate and obtain a fresh start following their emergence from bankruptcy.

6. For example, FRG and its subsidiaries have always stored documents and data on a system maintained by American Freight, and that arrangement continued after the Transaction. Despite this arrangement, in late June 2025, AF Newco restricted access to—and then threatened to delete entirely—the Reorganized Debtors' documents and data. In addition to the business disruption caused by these actions, the documents AF Newco threatened to delete were the very documents the Reorganized Debtors are required to preserve pursuant to a Court order[3] and a document preservation notice issued by the Securities and Exchange Commission ("SEC")—and included documents that relate to claims that might be pursued **against Brian Kahn**. Given the consequences, the Reorganized Debtors took immediate action and expended significant resources in their efforts to prevent AF Newco from restricting access to or deleting the Reorganized Debtors' documents and data. Such efforts included (i) the preparation of a file-ready adversary complaint and motion for a temporary restraining order, and (ii) repeated, desperate, last-minute appeals to Velosio and Stratos Cloud Alliance—the firms managing the Debtors' business—that they not delete the data (which was set to occur given AF Newco's actions). It was only after such efforts

---

[3] On June 2, 2025, the Court entered the *Findings of Fact, Conclusion of Law, and Order (I) Confirming the Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and Its Debtor Affiliates and (II) Approving the Global Settlement and Release of Claims and Causes of Action By and Among the Global Settlement Parties* [Main Case, Docket No. 1596] (the "Confirmation Order") confirming the Plan and authorizing the creation of that certain Litigation Trust (as defined in the Plan), pursuant to that certain Litigation Trust Agreement and Declaration of Litigation Trust, dated June 6, 2025 (the "Litigation Trust Agreement"). Pursuant to the Litigation Trust Agreement, the Reorganized Debtors are *required* to preserve certain data related to investigations that took place during the chapter 11 cases. *See* Litigation Trust Agreement § 2.6.1.

that AF Newco ultimately agreed not to delete the Reorganized Debtors' data and documents and restore their access to the system.

7. Although AF Newco eventually agreed to restore the Reorganized Debtors' access to their data, the Reorganized Debtors have been attempting to work with AF Newco to ensure that such documents are properly preserved and this situation is avoided in the future. But these efforts have been unsuccessful—primarily because AF Newco has been largely unresponsive to the Reorganized Debtors' requests—leaving the Reorganized Debtors in a precarious situation where their data could be deleted at any point. Indeed, despite the Reorganized Debtors' efforts to resolve these issues cooperatively, most of the time they have been met with silence or empty promises from AF Newco.

8. Most notably, for over one month, AF Newco had been promising to provide FRG with a draft amendment and extension to the TSA. But AF Newco dragged its feet, repeatedly promising but failing to provide any draft, claiming that it will be provided "tomorrow [on July 2]," "this morning [on July 4]," "tomorrow [on July 10]", and "this week [on July 22]." Finally, on August 5, 2025, AF Newco sent a draft agreement that bore no resemblance to the Parties' prior agreement. That same day, FRG informed AF Newco that the draft agreement was not acceptable.

9. Nine days later, on August 14, 2025, AF Newco sent FRG a revised version of a draft agreement. FRG provided its comments to that agreement within twenty-four hours. AF Newco then waited until August 25, 2025—another ten days—to provide its mark-up. Notwithstanding AF Newco's repeated delays, FRG continued to negotiate with AF Newco in good faith and provided its edits the following day.

10. Since that point in time, AF Newco's delay tactics and unresponsiveness have continued—AF Newco has failed to provide a mark-up notwithstanding having more than ample

time. Indeed, more than three weeks have elapsed since AF Newco said it would provide an agreement that would address the Parties' outstanding issues. FRG has not received a response, leaving it with no choice but to commence this litigation.

11. Worse still, while AF Newco has been unwilling to engage cooperatively on the above, additional problems with AF Newco have persisted. In addition, AF Newco has breached a May 28, 2025 oral agreement to perform certain services, including by failing to perform certain payroll and tax related obligations.

12. At this point, AF Newco has made it clear that it is unwilling to abide by its promises and the terms of its prior agreement and yet, at the same time, has stopped responding to its contractual counterparty and refuses to engage on the terms of a new agreement. As a result, FRG is forced to bring this action against AF Newco for breaching its contractual obligations to provide specified services as discussed in greater detail below. FRG further requests that AF Newco be ordered to specifically perform its contractual obligations.

## JURISDICTION AND VENUE

13. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 because this is a civil proceeding arising in or related to the chapter 11 cases. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and this adversary proceeding in this District is proper under 28 U.S.C. §§ 1408 and 1409.

14. Additionally, pursuant to the TSA, FRG and AF Newco (the "Parties") "irrevocably and unconditionally consent[ed] to the exclusive jurisdiction of the Bankruptcy Court for any action, suit, or Proceeding" arising out of the TSA. *See* TSA § 8.11.

15. Pursuant to Rules 7008-1 and 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Plaintiffs consent to the entry of a final order or judgment by the Court if it later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PARTIES

16. Plaintiffs are the Reorganized Debtors.

17. Defendant is AF Newco, a corporation organized under the laws of Delaware.

## BACKGROUND

A. *AF Newco Acquires Certain American Freight Assets*

18. FRG is a privately held company that operates franchisable businesses that currently include two retail brands: Pet Supplies Plus and Buddy's Home Furnishings ("Buddy's") and previously included The Vitamin Shoppe and American Freight.

19. On November 4, 2024, FRG and the Reorganized Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

20. In connection with the bankruptcy proceedings, American Freight filed a store closure motion that resulted in the closing of all American Freight store locations and the winding down and liquidation of American Freight [Main Case, Docket Nos. 14, 132 & 351].

21. Prior to confirmation of the Plan, on December 13, 2024, FRG and AF Newco entered into the APA and, on January 10, 2025 and January 29, 2025, the Court entered the Sale Orders, pursuant to which AF Newco acquired certain of American Freight's assets, including certain intellectual property and leases for thirty-one store locations.

22. The group that purchased American Freight was led by Michael Piper and Brent Turner. At the Sale Hearing held on January 21, 2025, Michael Piper testified that Brian Kahn

was neither presently nor anticipated to be an owner or investor in AF Newco and that neither he nor AF Newco had present or anticipated business dealings with Brian Kahn.

B.   *AF Newco Attempts to Delete All of the Reorganized Debtors' Documents and Data*

23.  FRG's documents and data for all of its subsidiaries were always stored on a system maintained by American Freight and continued to be stored on that system after the Sale Hearing.

24.  Under the TSA, AF Newco agreed to continue hosting FRG's documents and data (with FRG agreeing to pay all related expenses). Despite this agreement, in June 2025, AF Newco ordered Velosio—the Microsoft Dynamics and cloud solutions consulting firm managing its D365 license—to terminate FRG's D365 license and destroy FRG's documents and data, including the materials FRG is legally obligated to preserve pursuant to the Confirmation Order and a document preservation notice issued by the SEC.

25.  When FRG questioned why AF Newco would make such threats, Michael Piper presented an ultimatum to Andrew Kaminsky, Chief Administrative Officer of FRG, in an email dated July 1, 2025: AF Newco was "willing to help" FRG and grant it access to the D365 environment only if FRG would "help him" in return. The "help" Michael Piper demanded was FRG's agreement to sell to AF Newco two store locations owned by Buddy's. FRG, however, could not, and did not, acquiesce to that demand because, among other things, it would violate FRG's franchise agreement with Buddy's.

26.  Given the irreparable harm AF Newco's actions would have on FRG, FRG drafted an emergency adversary complaint and motion for a temporary restraining order. It was only after sharing this motion with AF Newco—and spending a significant amount of time and expense trying to resolve this issue through other avenues—that FRG was able to convince AF Newco to restore FRG's access to its data and documents.

C.   *AF Newco's Breach of Contract*

27. In connection with the APA, Educate, Inc.—a subsidiary of FRG—and AF Newco entered into the TSA, effective as of January 13, 2025. The TSA contained a variety of provisions to ensure the smooth and seamless sale of American Freight from FRG to AF Newco.

28. As the Parties were negotiating an amendment to the TSA, on or around May 28, 2025, Andrew Kaminsky (on behalf of FRG) and Michael Gray (on behalf of AF Newco as Chief Stores Officer) reached an oral agreement on certain terms. Pursuant to that agreement, the Parties agreed to the following: (i) the terms of the TSA would continue to apply, with AF Newco and FRG each still required to perform in accordance with their obligations under that agreement; (ii) AF Newco would provide "reverse services" to FRG, including continuing to host and provide access to FRG's IT environments and the documents and data referenced herein; (iii) AF Newco would promptly transfer to FRG any information, correspondence, invoices, or claims-related documents related to FRG or its affiliates; and (iv) AF Newco would provide final wind down services of payroll and human resource services.

29. AF Newco has not held up its end of the bargain. Specifically, AF Newco has not complied with its winddown obligations. As a result, FRG has received numerous late notices for its payroll obligations. By way of example, these include an outstanding payroll true up report owed to the State of Ohio, and an outstanding employee reporting obligations owed to the State of South Carolina, among others. AF Newco ignored FRG's email regarding these notices and outstanding obligations. FRG has no reason to believe these notices and similar notices will cease until AF Newco meets its obligations to assist in resolving these matters.

30. FRG has also received hundreds of lien notices and other notices from various governmental entities regarding unpaid and owed taxes. By way of example, these notices include

the following: A Q4 2024 payroll tax report for the Commonwealth of Virginia, unpaid unemployment taxes owed to the State of Ohio, unpaid withholding taxes owed to the State of Louisiana, and unpaid withholding taxes owed to the Commonwealth of Massachusetts. AF Newco did not respond when FRG emailed regarding these notices and unpaid taxes. FRG has no reason to believe the liens and notices will cease until AF Newco meets its obligations and assists in making these filings, as promised.

## COUNT I:

## BREACH OF CONTRACT

31. FRG realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

32. FRG and AF Newco entered a valid, enforceable oral contract on or about May 28, 2025, under which the Parties agreed that (i) the terms of the TSA would continue to apply, with AF Newco and FRG each still required to perform in accordance with their obligations under that agreement; (ii) AF Newco would provide "reverse services" to FRG, including continuing to host and provide access to FRG's IT environments and the documents and data referenced herein; (iii) AF Newco would promptly transfer to FRG any information, correspondence, invoices, or claims-related documents related to FRG or its affiliates; and (iv) AF Newco would provide final wind down services of payroll and human resource services. In exchange, FRG would provide payment for the IT environments for use by both Parties, reimburse costs and expenses associated with document transfers, and provide payment for the UKG payroll and HRIS services for use by both Parties.

33. The agreed upon services could be completed within twelve months, and AF Newco, pursuant to the agreement, performed under the oral contract until early July when it

refused to allow FRG access to Microsoft Dynamics 365 and threatened to allow all of FRG's financial and vendor data to be destroyed.

34. Among other things, AF Newco materially breached the oral contract when it, in or around mid-July 2025, failed to cooperate with FRG by assisting in the wind down of payroll and HRIS services.

35. FRG has suffered and will continue to suffer damages as a direct and proximate result of AF Newco's material breach of the oral contract. AF Newco's breach has caused and will continue to cause harm to FRG, including damages related to FRG's payroll and other tax obligations.

36. FRG is entitled to damages in an amount to be determined at trial, including but not limited to, the loss of the benefit of the bargain in connection with the oral contract.

37. FRG, at all relevant times, has complied with, has fully performed all of their material obligations under, and is ready, willing, and able to continue performing under the oral contract.

38. AF Newco is able but chooses not to perform its obligations under the oral contract.

39. FRG is also entitled to specific performance under the contract because damages are insufficient to provide full and complete relief where AF Newco has an obligation to cooperate in the winding down of UKG payroll and HRIS services, and its failure to perform has caused and will continue to cause FRG to receive tax levies and unpaid tax notices.

## COUNT II:

### DECLARATORY JUDGMENT

40. FRG realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

41. The Parties have a real, substantial dispute regarding their respective legal rights and obligations owed pursuant to the oral agreement reached on or around May 28, 2025 between Andrew Kaminsky (on behalf of FRG) and Michael Gray (on behalf of AF Newco).

42. FRG brings this action to enforce its rights pursuant to that oral agreement.

43. AF Newco has refused to comply with its oral agreement—including certain payroll and wind down obligations—which has caused and will continue to cause harm to FRG.

44. Among other things, AF Newco's breach of the oral agreement has caused FRG to receive numerous late notices for payroll obligations and hundreds of lien notices and other notices from various governmental entities regarding unpaid and owed taxes. FRG expects to continue receiving similar notices unless and until AF Newco complies with its oral agreement. This dispute is thus ripe for declaratory judgment.

45. FRG is entitled to and requests a declaratory judgment that the oral agreement reached between FRG and AF Newco on or around May 28, 2025 is a valid and enforceable agreement.

## COUNT III:

### SPECIFIC PERFORMANCE

46. FRG realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

47. The oral agreement reached on or around May 28, 2025 between FRG and AF Newco is a binding and enforceable contract.

48. FRG has at all times complied with its obligations under the Parties' oral agreement, and it is able, willing, and ready to continue complying with that agreement.

49. AF Newco is required to—but has not—performed fully under the Parties' agreement. Specifically, AF Newco has failed to perform certain payroll and wind down services. AF Newco also threatened and took steps to delete data and documents that FRG is obligated to preserve, in breach of the Parties' agreement.

50. FRG has suffered and will continue to suffer irreparable harm as a result of AF Newco's breach of contract, including the receipt of payroll and lien notices from various state authorities.

51. FRG is thus entitled to a judgment directing AF Newco to specifically perform its obligations under the Parties' oral agreement, including requiring AF Newco to assist in the final wind down of payroll and HRIS services, continue providing hosting services, and submit appropriate tax documents to the respective authorities.

## **PRAYER FOR RELIEF**

WHEREFORE, FRG respectfully requests the following relief:

A. That the Court enter a judgment that AF Newco breached its contract with FRG;

B. That the Court award such damages as can be reasonably determined resulting from AF Newco's breach of the Parties' contract;

C. That the Court compel specific performance of AF Newco's contractual obligations, including by requiring AF Newco to assist in the final wind down of payroll and HRIS

services, continue to provide hosting services, and submit appropriate tax documents to the respective authorities;

  D. That the Court enter a judgment declaring that the oral agreement between FRG and AF Newco is valid and enforceable;

  E. That the Court award FRG prejudgment and post-judgment interest on any award; and

  F. That the Court award FRG any and all other relief as the Court deems just and proper.

*[Signature Page Follows]*

Dated: September 24, 2025
Wilmington, Delaware

/s/ Shella Borovinskaya

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **KIRKLAND & ELLIS LLP** <br> **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Edmon L. Morton (Del. No. 3856) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Matthew B. Lunn (Del. No. 4119) | Nicole L. Greenblatt, P.C. (admitted *pro hac vice*) |
| Allison S. Mielke (Del. No. 5934) | Derek I. Hunter (admitted *pro hac vice*) |
| Shella Borovinskaya (Del. No. 6758) | 601 Lexington Avenue |
| Rodney Square | New York, New York 10022 |
| 1000 North King Street | Telephone: (212) 446-4800 |
| Wilmington, Delaware 19801 | Facsimile: (212) 446-4900 |
| Telephone: (302) 571-6600 | Email: joshua.sussberg@kirkland.com |
| Facsimile: (302) 571-1253 | nicole.greenblatt@kirkland.com |
| Email: emorton@ycst.com | derek.hunter@kirkland.com |
| mlunn@ycst.com | |
| amielke@ycst.com | - and - |
| sborovinskaya@ycst.com | |
| | Mark McKane, P.C. (admitted *pro hac vice*) |
| | 555 California Street |
| | San Francisco, California 94104 |
| | Telephone: (415) 439-1400 |
| | Facsimile: (415) 439-1500 |
| | Email: mark.mckane@kirkland.com |
| *Co-Counsel to the Reorganized Debtor* | *Co-Counsel to the Reorganized Debtor* |