**EXHIBIT B**

10705898.2



**RAINES FELDMAN LITTRELL LLP**

30 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
Main: 312.704.9400

mlasky@raineslaw.com
www.raineslaw.com

November 21, 2025

<u>VIA E-MAIL</u>

patrickcozza@gmail.com
Patrick Cozza
Former Director of Franchise Group, Inc.

    Re:    Litigation Trust Investigation Concerning *In re Franchise Group, Inc., et al.* (collectively, the "**Debtors**"), No. 24-12480 (LSS) (Bankr. D. Del.)

Dear Mr. Cozza,

    This firm represents Lawrence R. Hirsh, as the Litigation Trustee of the Litigation Trust created pursuant to the confirmed *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliate*s in the above-referenced chapter 11 cases (the "**Plan**"). As Litigation Trustee, Mr. Hirsh is responsible for, among other things, investigating and resolving certain potential litigation claims for the benefit of the Debtors' creditors, all as described in the Plan.

    In furtherance of his investigation, Mr. Hirsh is in the process of seeking the production of documents and other materials from certain persons, such as yourself, who may possess relevant information. By this letter, the Litigation Trustee hereby requests that you produce certain documents and other materials as set forth below.

    Any Documents (as defined below) that are responsive to the Requests herein should be collected directly from everywhere you have access, or where you have a right to demand access, and produced. That includes, without limitation, your personal e-mail, personal computer, and phone devices (including text messages, and other communication apps such as WhatsApp, Telegram, and Signal).

    To avoid duplication, Mr. Hirsh is not seeking documents that you already provided to Mr. Michael J. Wartell in connection with his prior investigation. However, it is our understanding that you did not produce Documents to Mr. Wartell or his counsel, Akin Gump Strauss Hauer & Feld LLP.

Patrick Cozza
November 21, 2025
Page 2

If you are represented by counsel in connection with the Debtors, the Bankruptcy Cases or the Litigation Trustee's investigation, I request that you please forward this letter to counsel and direct them to contact me as soon as possible.

I further request that you accept this letter as an informal document request and agree to fully comply with it as if you were being served with a subpoena. If you are not amenable to this, please let me know immediately. If we do not hear from you by December 5, 2025, we may seek the Bankruptcy Court's intervention on this matter, but we wish to avoid that course of action. In furtherance of Mr. Hirsh's investigation on behalf of the Litigation Trust, we request that you produce the following categories of Documents for the period of January 1, 2019 through November 3, 2024, unless otherwise specified (the "**Requests**").

## DEFINITIONS

As used herein with respect to the Requests, capitalized terms have the meanings set forth above or as follows:

"**American Freight**" means American Freight Group, Inc., along with its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

"**Badcock**" means W.S. Badcock Corporation, along with its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

"**Badcock Acquisition**" means FRG's acquisition of Badcock in 2021.

"**Badcock Sale/Leaseback Transactions**" means FRG's sale leaseback transactions of Badcock retail stores in Q1 2022 and distribution centers and headquarters in Q2 2022, including FRG's lease guarantee agreements related to the sale leaseback.

"**Badcock A/R Sales**" means the sale of certain accounts receivables of Badcock to B. Riley pursuant to a Master Receivables Purchase Agreement in 2021 and in 2022.

"**B. Riley Receivables Acquisition**" means Freedom VCM Receivables, Inc.'s purchase of B. Riley Receivables II, LLC in 2023.

"**Badcock Sale**" means FRG's sale of W.S. Badcock Corporation to Conn's, Inc. in exchange for stock in 2023 (including the sale of receivables).

"**Board Member(s)**" means any person who has ever served as a director on the board of directors for Franchise Group, Inc., Freedom VCM Interco, Inc. and/or Freedom VCM, Inc.

"**B. Riley**" means B. Riley Financial, Inc., including B. Riley Principal Investments, LLC, B. Riley, Inc., Bryant Riley, and B. Riley Receivables II, LLC, along with their respective predecessors, successors, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on their behalf.

"**Buddy's**" means Buddy's Home Furnishings, Inc., including its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

"**Communication**" means the transmittal of information (in the form of facts, thoughts, ideas, inquiries, opinions, data, or otherwise) and includes any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, voice messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, GroupMe, WeChat, Signal, Dust, Slack, Proton, QQ, or similar applications, memoranda, letters, reports, presentations, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind. A Request for Documents concerning any Communication among or between specified parties includes a Request for any Communication among or between such parties, whether or not such Communication included or was directed to any other Person.

"**Documents**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents" or "electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), and includes audio files, electronic text, e-mail message (including draft and deleted e-mail messages and all attachments to any e-mail message), text messages, spreadsheets, Communications, and other computerized data (together with all ancillary

Patrick Cozza
November 21, 2025
Page 4

agreements and Documents related thereto). This includes any written, recorded, or graphic matter, in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices, or any other media and includes papers, letters, envelopes, telegrams, cables, messages, correspondence, memoranda, notes, e-mail, text messages, instant messages (including messages sent using Slack, Signal, WhatsApp or other similar application), proposals, offers, reports, studies, agreements, meeting minutes, resolutions, agendas and memorials, evaluations, projections, analyses, estimates, presentations, opinions, plan (including business plans), financing statement, exhibits, notices, press releases, budgets, comparisons, valuations, books, accounts, checks, audio and video recordings, pleadings, testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, lists, logs, publications, notices, diagrams, instructions, diaries, orders, or other agreement or other Document entered into or filed in connection therewith, or notes of oral Communications, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions of drafts thereof, whether used or not. A request for all Documents concerning a particular subject matter includes within its scope all Communications concerning that subject matter. A draft or non-identical copy is a separate Document within the meaning of this term.

"**Freedom Entities**" means Freedom VCM InterCo., Inc., Freedom VCM, Inc., and their respective, as applicable, predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

"**FRG**" means Franchise Group, Inc., including, as applicable, its predecessors (including Liberty Tax, Inc.), successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

"**FRG Stock Buybacks**" means any transaction in which FRG bought back shares of Franchise Group, Inc. (or its successor) stock during the period of 2019 to 2025.

"**Kahn Pledges**" means the pledge(s) of Brian Kahn, Lauren Kahn and/or Vintage Capital Management LLC in his/her/its stake(s) in FRG to B. Riley as collateral.

"**Pathlight Transaction**" means FRG's increase of the amount of securitized Badcock receivables using the Pathlight Credit Facility.

"**Pet Supplies Plus**" means Pet Supplies Plus, LLC, including, as applicable, its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

"**Prophecy Asset Management Fraud Allegations**" means the transactions among Prophecy Asset Management on the one hand and Brian Kahn and/or Vintage Capital Management LLC on the other hand that were a subject of the SEC complaint relating to the fraud allegations concerning Prophecy Asset Management.

"**Sylvan Learning**" means Sylvan Learning, Inc., including, as applicable, its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

"**Take-Private Transaction**" means the take private transaction (management led acquisition of FRG) completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Franchise Group, Inc. and the other parties thereto.

"**Tax Receivable Agreement**" means an agreement whereby a company agrees to share the economic benefits from certain tax savings with another party.

"**Transfer**" has the meaning set forth in Section 101(54) of title 11 of the United States Code.

"**Vitamin Shoppe**" means Vitamin Shoppe Industries LLC, including, as applicable, its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

REQUESTS

1. To the extent not otherwise provided in response to the Requests below, all text messages, instant messages (including but not limited to WhatsApp, Telegram, Signal, Microsoft Teams, and Slack), emails (other than @franchisegrp.com emails), or other communications concerning the Debtors.

Patrick Cozza
November 21, 2025
Page 6

    2.    To the extent not otherwise provided in response to the Requests below, all notes, drafts, summaries, or compilations of notes or memoranda concerning the Debtors, including those stored electronically (e.g., in Microsoft OneNote, Evernote, Apple Notes, Google Keep, or similar applications).

    3.    All Documents concerning Kahn Pledges, including but not limited to any negotiations leading up to the execution of each of those documents, and any notifications regarding the existence of such pledges.

    4.    All Documents concerning Debtors' business dealings with B. Riley.

    5.    All Documents concerning the Badcock Acquisition.

    6.    All Documents concerning the Badcock Sale/Leaseback Transactions.

    7.    All Documents concerning the Badcock A/R Sales.

    8.    All Documents concerning the B. Riley Receivables Acquisition.

    9.    All Documents concerning the Badcock Sale or other efforts to sell Badcock.

    10.    All Documents concerning efforts to value the receivables sold in the Badcock A/R Sales.

    11.    All Documents concerning any evaluation of alternatives to the B. Riley Receivables Acquisition.

    12.    All Documents concerning (a) Brian Kahn (as Management Investor Member) obtaining certain consent rights under the Amended and Restated LLC Agreement of Freedom VCM Holdings, LLC (Section 6.4), dated August 21, 2023 in connection with the Take Private Transaction and (b) FRG's negotiation and determination to pay Brian Kahn up to $15 million in exchange for his consent to the Badcock Sale..

    13.    All Documents concerning efforts to obtain Brian Kahn's consent to the Badcock Sale, including the Unsecured Promissory Note between Brian Kahn and Freedom VCM Holdings, Inc.

    14.    All documents concerning cash or other consideration paid to FRG directors, officers, and/or employees in connection with the Take-Private Transaction, including any sales of FRG stock.

15. All Documents concerning FRG Stock Buybacks including concerning any related flow of funds (or distribution of funds received) in connection with the Take Private Transaction, and any post-closing strategy or attempts to deleverage FRG.

16. All Documents concerning any Transfers made by any of the Debtors to you or other officers, directors or shareholders (including to any direct or indirect parent entities of FRG), including all repayments, bonuses (including retention bonuses), dividends, and/or distributions (but excluding payments of any ordinary course base salary).

17. All Documents concerning any potential breaches of fiduciary duty, self-dealing, fraudulent transfers, or other legal violations by FRG's directors, officers, or other fiduciaries.

18. All Documents concerning the finances of Vitamin Shoppe and/or the Debtors' intention or attempt to sell Vitamin Shoppe, including any projections or valuations.

19. All Documents concerning the finances of Buddy's and/or the Debtors' intention or attempt to sell Buddy's, including any projections or valuations.

20. All Documents concerning the finances of American Freight and/or the Debtors' intention or attempt to sell American Freight, including any projections or valuations.

21. All Documents concerning the finances of Pet Supplies Plus and/or the Debtors' intention or attempt to sell Pet Supplies Plus, including any projections or valuations.

22. All Documents concerning the financial condition of FRG.

23. All documents concerning the financial condition of the Freedom Entities

24. All Documents concerning any management projections for FRG and/or the Freedom Entities.

25. All Documents concerning the Freedom Entities' entry into the Restructuring Support Agreement, dated as of November 1, 2024 (inclusive of all exhibits and schedules thereto), by and among the Debtors and the Consenting

Patrick Cozza
November 21, 2025
Page 8

First Lien Lenders (as defined in the Plan), and/or decision to commence the Debtors' chapter 11 cases.

      26.    All Documents concerning payments during September 1, 2023 to December 31, 2023 from the Freedom Entities to, or on account of, Freedom VCM holdings LLC or Freedom VCM InterCo Holdings, Inc., including any payments to PCS Atlas Holdings LLC and TD Ameritrade Clearing, Inc.

      27.    All Documents concerning any Tax Receivable Agreement to which FRG or any Freedom Entities is a party, including relating to any payments made pursuant to such agreement.

      28.    All Documents concerning the Prophecy Asset Management Fraud Allegations.

      29.    All Documents concerning the Take-Private Transaction.

      30.    All Documents concerning FRG's February, 2024 sale of Sylvan Learning.

      Please note that copies of the documents referenced above, and all other documents filed in the above-captioned cases, are available without charge at https://cases.ra.kroll.com/FRG/.

      If you are unable or unwilling to produce Documents in response to any of the Requests, of if you have any questions or concerns regarding anything stated herein, or concerning any of the Requests, please let me know as soon as possible the reason for this inability or unwillingness so that we can meet and confer about any outstanding issues.

      We are happy to coordinate with you regarding the means by which you can provide us with documents in response to the Requests. To the extent that you have retained a significant numbers of documents pertaining to the above, we are prepared to meet and confer regarding the Requests to ensure this process is not overly burdensome.

      We reserve the right to further supplement these Requests if more information is learned during our investigation necessitating such supplementation. We may also request the opportunity to interview you as part of our investigation.

Mr. Hirsh reserves all rights with respect to the Requests and Documents produced or to be produced and to take such action as appropriate to protect the interest and integrity of his investigation.

Sincerely,

Matthew R. Lasky
of Raines Feldman Littrell LLP