## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWAR

In re <u>Franchise Group, Inc. et al.</u>       Case No. 24-12480 -LSS
         Debtors

Chapter 11

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A BANRUPTCY CASE

To: Patrick Cozza at 230 Clarkson Ln, Vero Beach, FL 32963

☒ Production: YOU ARE COMMANDED to produce at the time, date and places set forth below the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**PLEASE SEE ATTACHED REQEST FOR PRODUCTION OF DOCUMENTS**

| PLACE | DATE AND TIME |
|---|---|
| Raines Feldman Littrell LLP<br>Attn: Thomas J. Francella, Jr.<br>824 North Market Street, Suite 805<br>Wilmington, DE 19081 | March 24, 2026 at 12:00 p.m.(ET) |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: March 10, 2026

CLERK OF COURT

OR

_____      /s/ *Thomas J. Francella, Jr.* (No. 3835)
*Signature of Clerk or Deputy Clerk*     *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *Lawrence R. Hirsh, as the Litigation Trustee of the Litigation Trust*, who issues or requests this subpoena, are:

Thomas J. Francella, Jr., Raines Feldman Littrell LLP, 824 North Market Street, Suite 805, Wilmington, DE 19801; (302) 772-5803; tfrancella@raineslaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

10741751.1

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____  on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

    I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

10741751.1

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
 (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

---

# DOCUMENT REQUESTS

## A. DEFINITIONS

The following definitions of terms apply to all Requests. All words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. The following rules of construction shall apply to all Requests:

    a. the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope;

    b. the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope;

    c. "**including**" shall not be construed as limiting any Request, and shall mean the same as "including, but not limited to"; and

    d. "**any**" and "**each**" shall be construed to include and encompass "**all**", and the use of the singular form of any word includes the plural and *vice versa*; and

    e. any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (including any of the Debtors) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other Person (as defined below) acting or purporting to act on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

10705898.2

2. "**American Freight**" means American Freight Group, Inc., along with its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

3. "**Badcock**" means W.S. Badcock Corporation, along with its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

4. "**Badcock Acquisition**" means FRG's acquisition of Badcock in 2021.

5. "**Badcock Sale/Leaseback Transactions**" means FRG's sale leaseback transactions of Badcock retail stores in Q1 2022 and distribution centers and headquarters in Q2 2022, including FRG's lease guarantee agreements related to the sale leaseback.

6. "**Badcock A/R Sales**" means the sale of certain accounts receivables of Badcock to B. Riley pursuant to a Master Receivables Purchase Agreement in 2021 and in 2022.

7. "**B. Riley Receivables Acquisition**" means Freedom VCM Receivables, Inc.'s purchase of B. Riley Receivables II, LLC in 2023.

8. "**Badcock Sale**" means FRG's sale of W.S. Badcock Corporation to Conn's, Inc. in exchange for stock in 2023 (including the sale of receivables).

9. "**Board Member(s)**" means any person who has ever served as a director on the board of directors for Franchise Group, Inc., Freedom VCM Interco, Inc. and/or Freedom VCM, Inc.

10. "**B. Riley**" means B. Riley Financial, Inc., including B. Riley Principal Investments, LLC, B. Riley, Inc., Bryant Riley, and B. Riley Receivables II, LLC, along with their

respective predecessors, successors, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on their behalf.

11. "**Buddy's**" means Buddy's Home Furnishings, Inc., including its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

12. "**Communication**" means the transmittal of information (in the form of facts, thoughts, ideas, inquiries, opinions, data, or otherwise) and includes any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, voice messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, GroupMe, WeChat, Signal, Dust, Slack, Proton, QQ, or similar applications, memoranda, letters, reports, presentations, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind. A Request for Documents concerning any Communication among or between specified parties includes a Request for any Communication among or between such parties, whether or not such Communication included or was directed to any other Person.

13. "**Documents**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents" or "electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A) and includes audio files, electronic text, e-mail message (including draft and deleted e-mail messages and all attachments to any e-mail message), text messages, spreadsheets, Communications, and other computerized data (together with all ancillary

agreements and Documents related thereto). This includes any written, recorded, or graphic matter, in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices, or any other media and includes papers, letters, envelopes, telegrams, cables, messages, correspondence, memoranda, notes, e-mail, text messages, instant messages (including messages sent using Slack, Signal, WhatsApp or other similar application), proposals, offers, reports, studies, agreements, meeting minutes, resolutions, agendas and memorials, evaluations, projections, analyses, estimates, presentations, opinions, plan (including business plans), financing statement, exhibits, notices, press releases, budgets, comparisons, valuations, books, accounts, checks, audio and video recordings, pleadings, testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, lists, logs, publications, notices, diagrams, instructions, diaries, orders, or other agreement or other Document entered into or filed in connection therewith, or notes of oral Communications, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions of drafts thereof, whether used or not. A request for all Documents concerning a particular subject matter includes within its scope all Communications concerning that subject matter. A draft or non-identical copy is a separate Document within the meaning of this term.

14. "**Freedom Entities**" means Freedom VCM InterCo., Inc., Freedom VCM, Inc., and their respective, as applicable, predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

15. "**FRG**" means Franchise Group, Inc., including, as applicable, its predecessors (including Liberty Tax, Inc.), successors, direct or indirect subsidiaries, principals, employees,

agents, representatives, or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

16. "**FRG Stock Buybacks**" means any transaction in which FRG bought back shares of Franchise Group, Inc. (or its successor) stock during the period of 2019 to 2025.

17. "**Kahn Pledges**" means the pledge(s) of Brian Kahn, Lauren Kahn and/or Vintage Capital Management LLC in his/her/its stake(s) in FRG to B. Riley as collateral.

18. "**Pathlight Transaction**" means FRG's increase of the amount of securitized Badcock receivables using the Pathlight Credit Facility.

19. "**Pet Supplies Plus**" means Pet Supplies Plus, LLC, including, as applicable, its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

20. "**Plan**" means the *Ninth Amended Joint Chapter 11 Plan of Franchise Group, Inc. and its Debtor Affiliates* [D.I. 1596-1]

21. "**Prophecy Asset Management Fraud Allegations**" means the transactions among Prophecy Asset Management on the one hand and Brian Kahn and/or Vintage Capital Management LLC on the other hand that were a subject of the SEC complaint relating to the fraud allegations concerning Prophecy Asset Management.

22. "**Sylvan Learning**" means Sylvan Learning, Inc., including, as applicable, its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

23. "**Take-Private Transaction**" means the take private transaction (management led acquisition of FRG) completed by the Debtors in August 2023 pursuant to, among others, that certain Agreement and Plan of Merger, dated as of May 10, 2023, by and among Franchise Group, Inc. and the other parties thereto.

24. "**Tax Receivable Agreement**" means an agreement whereby a company agrees to share the economic benefits from certain tax savings with another party.

25. "**Transfer**" has the meaning set forth in Section 101(54) of title 11 of the United States Code.

26. "**Vitamin Shoppe**" means Vitamin Shoppe Industries LLC, including, as applicable, its predecessors, successors, direct or indirect subsidiaries, principals, employees, agents, representatives, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

27. "**You**" or "**Your**" means Lisa Fairfax and includes each of your agents, representatives, attorneys and advisors.

## INSTRUCTIONS

1. The preceding definitions apply to these Instructions and each of the succeeding Requests. Capitalized terms not defined herein have the meanings given to them in the Plan.

2. You are required to produce all responsive Documents in Your possession, custody, or control, wherever located, including those in the custody of Your representatives, agents, professionals, affiliates, or anyone acting on your behalf. If no Document exists that is responsive to a particular request, You must state so in writing.

3. These Requests are continuing requests pursuant to the Bankruptcy Rules. You must supplement any production of Documents that are received, discovered, or created after any

of your responses to the Requests, or that are otherwise within Your possession, custody, or control, wherever located, including those in the custody of Your representatives, agents, professional, affiliates, or anyone acting on your behalf.

4.      If You object to any part of any Request, You must produce all Documents that are responsive to the portions of the Request to which You do not object.  You also must state the nature of, and grounds for, the objection.

5.      If You cannot comply with any Request in full, You must comply to the fullest extent possible, and You should provide an explanation as to why full compliance is not possible.

6.      If You assert a claim of privilege or any other grounds for withholding in objecting to a Request and withhold a responsive Document on this basis, You must provide a withholding log setting forth (a) the nature of the privilege being claimed, (b) the type of Document being withheld, (c) the general subject matter of the Document, (d) the date of the Document, and (e) such other information sufficient to permit evaluation of the claim of privilege or other asserted basis for withholding, including, where appropriate, the author of the Document, the title or subject line of the Document, the addressee of the Document, and, where not apparent, the relationship of the author and the addressee to each other.

7.      If a Document contains both privileged and non-privileged material, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If a party asserts a privilege to part of the material contained in a Document, the party asserting the privilege must clearly indicate the portions as to which it claims the privilege.  When a Document has been redacted or altered in any fashion, you must identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration,

and the Person performing the redaction or alteration. Any redaction must be clearly visible on the redacted Documents.

8.  All Documents produced in electronic format shall be in their native format and shall be OCR (Optical Character Recognition) capable.

9.  Additional special processing of certain electronically stored information shall be as follows: Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be produced in native format. A placeholder TIFF image shall be created, Bates numbered, and the produced Excel file shall be renamed to match the Bates number on its corresponding placeholder page. The exception shall be for redacted spreadsheets which shall be produced in TIFF format. Images for the redacted spreadsheets shall display the content in the same manner as if it were printed. The extractable metadata and text shall be provided for native files, and OCR will be provided for the un-redacted portions of the Documents. In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as-is.

10. If any Document called for by these Requests has been destroyed or discarded, you must identify that Document in writing by providing the following information: (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the Document's date, subject matter, number of pages, and attachments or appendices; (d) all Persons to whom the Document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the Persons who authorized and carried out such destruction or discard; and (g) whether any copies of the Document presently exist and, if so, the name of the custodian of each copy.

11. Unless otherwise specified, the Document Requests seek Documents dated, created, or otherwise obtained on or between January 1, 2019, and November 3, 2024.

## DOCUMENT REQUESTS

1. To the extent not otherwise provided in response to the Requests below, all text messages, instant messages (including but not limited to WhatsApp, Telegram, Signal, Microsoft Teams, and Slack), emails (other than @franchisegrp.com emails), or other communications concerning the Debtors.

2. To the extent not otherwise provided in response to the Requests below, all notes, drafts, summaries, or compilations of notes or memoranda concerning the Debtors, including those stored electronically (e.g., in Microsoft OneNote, Evernote, Apple Notes, Google Keep, or similar applications).

3. All Documents concerning Kahn Pledges, including but not limited to any negotiations leading up to the execution of each of those documents, and any notifications regarding the existence of such pledges.

4. All Documents concerning Debtors' business dealings with B. Riley.

5. All Documents concerning the Badcock Acquisition.

6. All Documents concerning the Badcock Sale/Leaseback Transactions.

7. All Documents concerning the Badcock A/R Sales.

8. All Documents concerning the B. Riley Receivables Acquisition.

9. All Documents concerning the finances of Badcock and/or the Debtors' intention or attempt to sell Badcock or accounts receivable belonging to Badcock, including any projections, valuations, and/or monthly financial reports.

10. All Documents concerning efforts to value the receivables sold in the Badcock A/R Sales.

11. All Documents concerning any evaluation of alternatives to the B. Riley Receivables Acquisition.

12. All Documents concerning (a) Brian Kahn (as Management Investor Member) obtaining certain consent rights under the Amended and Restated LLC Agreement of Freedom VCM Holdings, LLC (Section 6.4), dated August 21, 2023 in connection with the Take Private Transaction and (b) FRG's negotiation and determination to pay Brian Kahn up to $15 million in exchange for his consent to the Badcock Sale.

13. All Documents concerning efforts to obtain Brian Kahn's consent to the Badcock Sale, including the Unsecured Promissory Note between Brian Kahn and Freedom VCM Holdings, Inc.

14. All documents concerning cash or other consideration paid to FRG directors, officers, and/or employees in connection with the Take-Private Transaction, including any sales of FRG stock.

15. All Documents concerning FRG Stock Buybacks including concerning any related flow of funds (or distribution of funds received) in connection with the Take Private Transaction, and any post-closing strategy or attempts to deleverage FRG.

16. All Documents concerning any Transfers made by any of the Debtors to you or other officers, directors or shareholders (including to any direct or indirect parent entities of FRG), including all repayments, bonuses (including retention bonuses), dividends, and/or distributions (but excluding payments of any ordinary course base salary).

17. All Documents concerning any potential breaches of fiduciary duty, self-dealing, fraudulent transfers, or other legal violations by FRG's directors, officers, or other fiduciaries.

18. All Documents concerning the finances of Vitamin Shoppe and/or the Debtors' intention or attempt to sell Vitamin Shoppe, including any projections or valuations.

19. All Documents concerning the finances of Buddy's and/or the Debtors' intention or attempt to sell Buddy's, including any projections or valuations.

20. All Documents concerning the finances of American Freight and/or the Debtors' intention or attempt to sell American Freight, including any projections, valuations **and/or monthly financial reports**.

21. All Documents concerning the finances of Pet Supplies Plus and/or the Debtors' intention or attempt to sell Pet Supplies Plus, including any projections or valuations.

22. All Documents concerning the financial condition of FRG.

23. All documents concerning the financial condition of the Freedom Entities.

24. All Documents concerning any management projections for FRG and/or the Freedom Entities.

25. All Documents concerning the Freedom Entities' entry into the Restructuring Support Agreement, dated as of November 1, 2024 (inclusive of all exhibits and schedules thereto), by and among the Debtors and the Consenting First Lien Lenders (as defined in the Plan), and/or decision to commence the Debtors' chapter 11 cases.

26. All Documents concerning payments during September 1, 2023 to December 31, 2023 from the Freedom Entities to, or on account of, Freedom VCM holdings LLC or Freedom VCM InterCo Holdings, Inc., including any payments t PCS Atlas Holdings LLC and TD Ameritrade Clearing, Inc.

10705898.2

27. All Documents concerning any Tax Receivable Agreement to which FRG or any Freedom Entities is a party, including relating to any payments mad pursuant to such agreement.

28. All Documents concerning the Prophecy Asset Management Fraud Allegations.

29. All Documents concerning the Take-Private Transaction.

30. All Documents concerning FRG's February, 2024 sale of Sylvan Learning.