# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| FRANCHISE GROUP, INC.,[1] | ) Case No. 24-12480 (LSS) |
| Reorganized Debtor. | ) Re: Docket No. 1963 |

### SUPPLEMENTAL DECLARATION OF DANIEL KELSALL IN SUPPORT OF REORGANIZED DEBTOR'S SIXTH (6TH) OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS[2]

Pursuant to 28 U.S.C. § 1746, I, Daniel Kelsall, hereby declare as follows under penalty of perjury:

1.  I am a Partner at AlixPartners, LLP ("AlixPartners"), an affiliate of AP Services LLC, which was previously retained as restructuring advisor to the Reorganized Debtors. Consistent with the Court's request at the hearing held on February 18, 2026 (the "Hearing"), I submit this declaration (this "Supplemental Declaration") to supplement the Kelsall Declaration, which was attached as Exhibit 1 to the *Reorganized Debtor's Sixth (6th) Omnibus (Substantive) Objection to Claims* [Docket No. 1963] (the "Sixth Omnibus Claims Objection"), and provide the

---

[1] The last four digits of Franchise Group, Inc.'s federal tax identification number are 1876. The mailing address for Franchise Group, Inc. is 5835 NW 21st Way, Suite 200, Boca Raton, FL 33496. The term "Reorganized Debtors" includes Franchise Group, Inc. and certain reorganized debtor affiliates, a complete list of which, including the last four digits of their federal tax identification numbers and addresses, may be obtained on the website of the Reorganized Debtors' claims and noticing agent, at https://cases.ra.kroll.com/FRG/. All of the motions, contested matters, and adversary proceedings that remained open as of the closing of any of the Reorganized Debtors' cases, or that are opened after the date thereof, are administered in the remaining chapter 11 case of Franchise Group, Inc., Case No. 24-12480 (LSS).

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Sixth Omnibus Claims Objection.

Court with additional information regarding certain proofs of claim assigned numbers 18, 128, 457, and 2811 (collectively, the "Disputed Claims").[3]

2.    The Disputed Claims assert liabilities against Debtor American Freight, LLC and American Freight Outlet Stores, LLC (together, "American Freight").[4] American Freight operated a chain of stores offering customers furniture, mattresses, and appliances at affordable prices. At the outset of the Chapter 11 Cases, American Freight operated 357 store locations across the country, including 344 company-owned locations and 13 franchise-operated locations. However, after unsuccessful prepetition marketing efforts, the Debtors determined at the outset of the Chapter 11 Cases to proceed with the orderly liquidation and wind down of the American Freight business through going out of business sales and store closing processes, which were consummated in the early months of the Chapter 11 Cases. *See* Docket Nos. 14, 132, & 351. As a result of its wind down and store closing efforts, American Freight substantially limited new inventory purchases around the time of the commencement of the Chapter 11 Cases.

3.    Historically, and prior to a take-private transaction that occurred in 2023, the Debtors, including American Freight, were publicly held companies that maintained their books and records in accordance with U.S. generally accepted accounting principles and were subject to annual audit. To comply with their public reporting obligations, the Debtors retained an internationally recognized accounting firm to perform annual audits of the Debtors' books and records, which included evaluating the Debtors' processes for recording transactions. Certain of

---

[3] Upon further review of the Debtors' books and records, the Debtors determined that the amounts asserted as entitled to priority under section 503(b)(9) of the Bankruptcy Code in connection with Claim No. 96 have been, or will be, satisfied in full and, therefore, withdraw the Objection thereto and will address such claim accordingly.

[4] Claim No. 128 was filed in the chapter 11 case of Debtor Franchise Group, Inc. and is subject to the *Reorganized Debtor's Eighth (8th) Omnibus (Non-Substantive) Objection to Claims* [Docket No. 1976], by which the Debtors have alleged that Claim No. 128 is wrongly asserted against Franchise Group, Inc. and should rather be asserted against American Freight, LLC.

the Debtors, including American Freight, continued to be audited through 2024 (as a condition of their credit agreement), even after they no longer had public reporting obligations.

4. American Freight's accounting practices were implemented and supervised by an accounting staff who received, reconciled, and recorded invoices in the ordinary course of business and maintained such records to ensure timely payment of accounts payable and for generating the Debtors' financial statements. In the ordinary course of business, American Freight's accounting staff would log invoices received from vendors in the Debtors' accounts payable system (the "AP System"), which was a software accounting management system. When reconciling proofs of claim filed in the Chapter 11 Cases, the Debtors reviewed their books and records, including the AP System, for all unpaid American Freight invoices. In the ordinary course of business, American Freight would not have received goods without a subsequent corresponding invoice from an applicable vendor. If the Debtors did not receive an invoice from a vendor, such invoice would not be recorded in the AP System, and the Debtors would have no record of any such transaction. Where the Debtors do not have a record of an invoice in the AP System, the Reorganized Debtor has reasonably determined, based on the Debtors' historical recording practices, that any such corresponding goods were not received or obtained within twenty days of the Petition Date (October 14, 2024–November 3, 2024 (the "503(b)(9) Period")).

A. **Elbi of America, d/b/a NDA Distributors**

5. Elbi of America, d/b/a NDA Distributors ("Elbi"), a manufacturer of certain water storage, heating and treatment systems and related parts, filed Claim No. 18 (the "Elbi Claim"), pursuant to which Elbi asserted a claim arising under section 503(b)(9) of the Bankruptcy Code in the total amount of $81,142.82. Elbi submitted various statements in support of its claim (collectively, the "Elbi Statements"), listing more than 384 invoices for goods. All 384 invoices

listed in the Elbi Statements were marked with a date of November 1, 2024. Elbi provided no indication as to whether such listed date was intended to represent an order date, invoice date, date of delivery or otherwise, and the Reorganized Debtor has determined that such date <u>does</u> <u>not</u> reflect the invoice date or date of delivery or receipt by American Freight of corresponding goods because in all instances where the Reorganized Debtor has confirmed the date of an invoice listed on the Elbi Statements, such invoices neither have an invoice date of November 1, 2024 or a delivery date of November 1, 2024. Elbi did not provide the underlying invoices referenced in the Elbi Statements to substantiate the Elbi Claim.

6. Through the Sixth Omnibus Claims Objection, the Reorganized Debtor sought to reclassify $42,988.30 of the Elbi Claim to a general unsecured claim. After consulting the Debtors' books and records, the Reorganized Debtor was able to reconcile 351 of the 384 invoices reflected on the Elbi Statements with records maintained in the AP System. Of these 351 invoices, the Reorganized Debtor does not contest that 157 invoices, totaling $34,916.50, support a claim entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code. However, the Debtors' books and records reflect that (a) $40,567.04 of the Elbi Claim corresponds to invoices that were received by the Debtors prior to the 503(b)(9) Period, and (b) there is no record of the Debtors having ever received $5,659.28 of goods subject to the Elbi Claim.[5] In the ordinary course of business, American Freight received invoices subsequent to a delivery of goods. Accordingly, the Reorganized Debtor has reasonably determined that such goods were not received within the 503(b)(9) Period and the claims asserted in connection therewith should not be afforded priority under section 503(b)(9) of the Bankruptcy Code. For these reasons, I believe the Elbi Claim should be reclassified as follows: $34,916.50 of the Elbi Claim should be afforded priority under section

---

[5] This amount reflects the total of the 33 invoices listed on the Elbi Statements but not recorded in the AP System.

503(b)(9) of the Bankruptcy Code, and $46,226.32 should be reclassified as a general unsecured claim.[6]

### B. CVB, Inc. d/b/a Malouf Fine Linens

7. CVB, Inc., d/b/a Malouf Fine Linens, a mattress and bedding retail chain, filed Claim No. 128 (the "CVB Claim") for $346,747.00, asserting that $36,798.00 of such claim is entitled to priority under section 503(b)(9) of the Bankruptcy Code.[7] After consulting the Debtors' books and records, the Reorganized Debtor confirmed that the Debtors cancelled purchase order identified as PO00935697 and, accordingly, never received the goods subject to Invoice No. 21313347, dated October 25, 2024, in the amount of $8,531.00. After further consulting the Debtors' books and records, the Reorganized Debtor identified the remaining invoices comprising the balance of the CVB Claim in the amount of $28,267.00 in the AP System and believes that the amount asserted therein is properly characterized as being entitled to priority under section 503(b)(9) of the Bankruptcy Code.[8] Therefore, for the reasons described above, I believe that the CVB Claim should properly be reclassified as follows: $28,267.00 should be afforded priority

---

[6] The Sixth Omnibus Claims Objection seeks only to reclassify the balance of the Elbi Claim that does not reflect the value of goods received within the 503(b)(9) Period. In accordance with Local Rule 3007-1(e)(iv), the Litigation Trust may seek to object to the Elbi Claim on the basis that the Debtors have no liability for such claim. Additionally, the Reorganized Debtor reserves the right to further object to reclassify $3,238.02 asserted as entitled to priority under section 503(b)(9) of the Bankruptcy Code, which amount was not sought to be reclassified in the Sixth Omnibus Claims Objection. For the avoidance of doubt, the Supplemental Proposed Order (as defined below) seeks to reclassify only $42,988.30 of the Elbi Claim consistent with the Sixth Omnibus Claims Objection.

[7] Upon information and belief CVB, Inc. was the subject of an involuntary chapter 7 filing in the United States Bankruptcy Court for the District of Utah, Case No. 25-24249, which case was dismissed on February 24, 2026.

[8] Upon further review of their books and records, the Debtors reduced the amount of the CVB Claim sought to be reclassified to a general unsecured claim and will submit a revised Reclassified Claims Schedule with a supplemental proposed order (the "Supplemental Proposed Order") contemporaneously herewith.

under section 503(b)(9) of the Bankruptcy Code and $8,531.00 should be reclassified as a general unsecured claim.[9]

### C. Field Manufacturing Corporation

8.  Field Manufacturing Corporation, a purveyor of custom store fixtures and sign holders, filed Claim No. 457 (the "Field Manufacturing Claim") for $41,394.48, asserting that $38,264.08 is entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code in connection with Invoice Nos. 289817–19.  Through the Sixth Omnibus Objection, the Reorganized Debtor sought to reclassify this claim as a general unsecured claim.  After further consulting the Debtors' books and records, the Reorganized Debtor identified Invoice No. 289819 in the AP System and believes that the $184.20 amount asserted therein is properly characterized as being entitled to priority under section 503(b)(9) of the Bankruptcy Code.[10]  The Reorganized Debtor reviewed the AP System and determined that there is no record of Invoice Nos. 289817 or 289818, and the goods subject thereto are not reflected as having been received in the Debtors' books and records. As detailed above, if the Debtors had received such invoices or such goods, American Freight would have ordinarily recorded such invoices in their AP System.  Because such invoices are not recorded in the Debtors' books and records, the Reorganized Debtor reasonably believes that such goods were never received.  Therefore, for the reasons described above, I believe that $184.20 of the Field Manufacturing Claim should be afforded priority under section 503(b)(9)

---

[9] The Sixth Omnibus Claims Objection seeks only to reclassify the balance of the CVB Claim that does not reflect the value of goods received within the 503(b)(9) Period.  In accordance with Local Rule 3007-1(e)(iv), the Litigation Trust may seek to object to the CVB Claim on the basis that the Debtors have no liability for such claim.

[10] These changes will be reflected in the Supplemental Proposed Order.

of the Bankruptcy Code, and the $38,079.88 balance should be reclassified as a general unsecured claim.[11]

### D. Living Style (Singapore) Pte. Limited

9. Living Style (Singapore) Pte. Limited ("Living Style"), a manufacturer based in Singapore, filed Claim No. 2811 (the "Living Style Claim") for $1,854.330.42, with a supporting schedule (the "Living Style Supporting Schedule") that lists 72 invoices and purchase orders, of which Living Style asserts that $719,006.52 is entitled to priority under section 503(b)(9) of the Bankruptcy Code based on a purported shipping date that occurred within the 503(b)(9) Period. The underlying invoices are not attached to the Living Style Claim. Through the Sixth Omnibus Claims Objection, the Reorganized Debtor sought to reclassify $531,807.42 of such claim to a general unsecured claim. After reviewing the Debtors' books and records, the Reorganized Debtor determined that 58 of the 72 invoices, totaling $526,615.42, were for goods that the Debtors expressly rejected—and did not accept receipt of—upon arrival at port. In the Living Style Claim, Living Style included a "salvage value" in its supporting documentation, indicating (upon information and belief) that such goods were returned and potentially resold or otherwise liquidated. Additionally, the Reorganized Debtor reviewed the AP System and determined that there is no record of one invoice totaling $5,192.00, and the goods subject thereto are not reflected as having been received in the Debtors' books and records. As these goods were not received within the 503(b)(9) Period, the claims associated therewith should not be afforded priority under section 503(b)(9) of the Bankruptcy Code.

---

[11] The Sixth Omnibus Claims Objection seeks only to reclassify the balance of the Field Manufacturing Claim that does not reflect the value of goods received within the 503(b)(9) Period. In accordance with Local Rule 3007-1(e)(iv), the Litigation Trust may seek to object to the Field Manufacturing Claim on the basis that the Debtors have no liability for such claim.

10. The Reorganized Debtor does not object to the balance of the Living Style Claim in the amount of $187,199.10. For these reasons, I believe $187,199.10 of the remaining 13 invoices in the Living Style Supporting Schedule comprise claims that are entitled to priority under section 503(b)(9) of the Bankruptcy Code and the balance of the Living Style Claim ($531,807.42) should be reclassified as a general unsecured claim.[12]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 13, 2026

/s/ Daniel Kelsall
Daniel Kelsall
Partner
AlixPartners, LLP

---

[12] The Sixth Omnibus Claims Objection seeks only to reclassify the balance of the Living Style Claim that does not reflect the value of goods received within the 503(b)(9) Period. In accordance with Local Rule 3007-1(e)(iv), the Litigation Trust may seek to object to the Living Style Claim on the basis that the Debtors have no liability for such claim.